**Consolidated Case Nos. 25-3552 and 25-3800**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.,

**Plaintiff-Appellant**,

v.

R. JOHN TAYLOR, an individual, CONNIE TAYLOR HENDERSON, an individual, JAMES BECK, an individual, MICHAEL W. CASHMAN, SR., an individual, CROP USA INSURANCE AGENCY, INC., an Idaho corporation, CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company, AIA SERVICES CORPORATION, an Idaho corporation, AND AIA INSURANCE, INC., an Idaho corporation,

**Defendants-Appellees**,

and

Reed J. Taylor, an individual,

**Third-Party Defendant-Appellee.**

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO,
CHIEF DISTRICT COURT JUDGE DAVID C. NYE, PRESIDING

---

**APPELLANT'S EXCERPTS OF THE RECORD – VOLUME - 1**

---

| | |
|---|---|
| Roderick C. Bond | Andrew Schwam |
| Roderick Bond Law Office, PLLC | Andrew Schwam Law Firm |
| 10900 NE 4th St., Suite 2300 | 705 SW Fountain St. |
| Bellevue, WA 98004 | Pullman, WA 99163-2128 |
| Tel: (425) 591-6903 | Tel: (208) 874-3684 |
| Email: rod@roderickbond.com | Email: amschwam@turbonet.com |
| Attorney for Appellant | Attorney for Appellant |

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DONNA TAYLOR,<br><br>                    Plaintiff,<br><br>          v.<br><br>HAWLEY TROXELL ENNIS & HAWLEY LLP, GARY D. BABBITT, RICHARD A. RILEY, D. JOHN ASHBY, MICHAEL W. CASHMAN SR., JAMES BECK, R. JOHN TAYLOR, CROP USA INSURANCE AGENCY INC., AIA SERVICES CORPORATION, and AIA INSURANCE, INC.,<br><br>                    Defendants. | Case No. 1:10-cv-00404-LMB<br><br>**ORDER** |

Plaintiff Donna J. Taylor brings this derivative action, alleging to be the sole owner of Series A Preferred shares and the beneficial owner of over 9,000 common shares of AIA Services Corporation. Taylor claims that Defendants committed a number of acts of corporate malfeasance resulting in millions of dollars of revenue being deprived from shareholders.

Plaintiff has named AIA Insurance, AIA Services, Crop USA Insurance, and members of their Board of Directors. Plaintiff has also named Hawley, Troxell, Ennis, & Hawley and three of their attorneys, personally, in connection with Plaintiffs claims under the RICO Act. Both the AIA Defendants and Hawley Troxell Defendants have filed motions to dismiss. (Docket Nos. 12, 16).

ORDER - 1 -

Defendants' motions center on the fact that Taylor and Taylor's ex-husband have several related cases in various stages of litigation.  The thrust of both motions is that because of that litigation, this court should abstain from exercising jurisdiction until the state court actions are resolved.  Essentially, they are both asking that the case be dismissed without prejudice, or stayed until the state court proceedings are finalized.

Taylor argues that the abstention doctrine does not apply because the state court actions have either been terminated or are not related enough.  Rather, Taylor asserts that the facts of this case are an independent cause of action despite the apparent relation to the other actions.

The *Colorado River* doctrine controls when deciding whether a district court should stay or dismiss a federal suit pending the resolution of a parallel state court proceeding.  *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  Abstention pursuant to Colorado River is discretionary.  *See Reinhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999) (considering Colorado River doctrine sua sponte despite parties' arguments addressing only Younger abstention).

In considering its exercise, the court "is not to find some substantial reason for the exercise of federal jurisdiction . . . ; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the surrender of the jurisdiction."  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26 (1983)).

Unlike other jurisdictions, the Ninth Circuit does not require exact parallelism between the federal and state actions and only requires substantial similarity between the actions.  *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) (affirming *Colorado River* abstention to

ORDER - 2 -

prevent piecemeal litigation, because the "state case has progressed far beyond" the federal case, the actions were substantially similar, and the state court could adequately protect the plaintiff's rights).  The existence of a parallel or duplicative state action alone is insufficient to justify dismissing or staying a federal action. To abstain under Colorado River, courts examine the following factors: 1) whether the state court or federal court first assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which the forums obtained jurisdiction; 5) whether federal or state law controls the decision on the merits; and 6) whether the state court can adequately protect the rights of the parties.  *Moses H. Cone*, 460 U.S. at 23-24, 26-27; *Colorado River*, 424 U.S. at 818-19;  *40235 Washington Street Corp. v. Lusardi*, 976 F.2d 587, 588 (9th Cir. 1992).  The *Colorado River* factors are not a "mechanical checklist," but require careful balancing by the district court.  *Moses H. Cone*, 460 U.S. at 16.  "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Id*.

Here, there are several related and over-lapping cases in various stages of litigation in state court, *Reed Taylor v. AIA, et al*., CV07-00208 ("Underlying case"), *Donna Taylor v. R. John Taylor, et al.*, CV08-1150,  *Reed Taylor v. McNichols, et al.*, CV08-1763, *Reed Taylor v. HTEH, et al.*, CV08-1765 ("HTEH I"), *Reed Taylor v. HTEH, et al.*, CV-OC-0918868 ("HTEH II"), *Donna Taylor v. AIA, et al.*, CV09-02470.  The parties, facts, evidence and proceedings in these matters all intertwine with the instant case that make them substantially similar.

To varying degrees, every Colorado River factor weighs in favor of abstention.  Most notably, avoiding piecemeal litigation and the fact that the underlying action was filed over year before this federal action, and is well into the appeal stages, weigh most heavily in favor of

ORDER - 3 -

abstention.  Resolution of the previously filed claims will likely affect Plaintiff's claims, raising the possibility of inconsistent judgements.

Therefore, after careful consideration of the well made arguments of counsel, and a thorough examination of the record before the court, a stay in the above-captioned action is appropriate pending resolution of the state actions, particularly *Reed Taylor v. AIA et al*, and *Donna Taylor v. John Taylor*.

ORDER

Accordingly, it is HEREBY ORDERED:

1.      The Motions to Dismiss (Docket Nos. 12 and 16) are GRANTED IN PART and DENIED IN PART.

    a.      The above-captioned matter is STAYED pending rulings on the referenced state actions.



DATED:  **June 29, 2011**.

Honorable Larry M. Boyle
United States Magistrate Judge

**ORDER - 4 -**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual; DONNA J. TAYLOR, an individual and the Personal representative of the Estate of Sarah Taylor; WHO ARE SHAREHOLDERS BRINGING THIS ACTION ON BEHALF OF AND/OR IN THE RIGHT OF AIA SERVICES CORPORATION AND ITS WHOLLY OWNED SUBSIDIARY AIA INSURANCE, INC.,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership, GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual, RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; and AIA INSURANCE, INC., an Idaho corporation;<br><br>　　　　　　Defendants. | Case No. 1:10-cv-00404-CWD<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**HAWLEY TROXELL DEFENDANTS' MOTION TO DISMISS PURSUANT TO 12(b)(1) (Dkt. 138);**<br><br>**PLAINTIFFS' MOTION TO AMEND AND/OR DISMISS PARTIES WITHOUT PREJUDICE (DKT. 139);**<br><br>**THIRD PARTY GEMCAP LENDING I, LLC'S MOTION TO INTERVENE AND SEAL (DKT. 141); and**<br><br>**PLAINTIFFS' MOTION TO STRIKE (DKT. 169)** |

**MEMORANDUM DECISION AND ORDER - 1**

## INTRODUCTION

Pending before the Court are four motions: (1) Hawley Troxell Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) (Dkt. 138); (2) Plaintiffs' Motion to Amend, or alternatively, Motion to Voluntarily Dismiss Parties (Dkt. 139); (3) Third Party GemCap Lending I, LLC's Motion to Intervene and Seal (Dkt. 141); and (4) Plaintiff's Motion to Strike (Dkt. 169). The Court heard oral argument from the parties and the proposed intervenor GemCap Lending I, LLC, on October 24, 2016. After review of the record, consideration of the parties' arguments and relevant legal authorities, and otherwise being fully advised, the Court issues the following memorandum decision and order.

## PROCEDURAL BACKGROUND

This is a shareholder's derivative action, the Court's jurisdiction over which is based upon diversity of citizenship.[1] Although the complaint was filed nearly six years ago, the case has yet to proceed beyond its initial stages. After taking a detour to the United States Court of Appeals for the Ninth Circuit, the Court conducted both a status conference and a scheduling conference on March 7 and 24, 2016 (Dkt. 112, 118, 126), with the goal of determining the operative complaint and moving this litigation forward. Unable to stipulate to a litigation plan in advance of the March 24, 2016 scheduling conference, the Court ordered the parties to meet and confer in person to develop a workable litigation plan. However, the meet and confer did not result in a litigation plan;

---

[1] The Court originally had federal question jurisdiction also, as Plaintiffs' original and first amended complaint alleged a RICO claim against the AIA Defendants. The Second Amended Complaint and the proposed third amended complaint do not assert any federal claims.

**MEMORANDUM DECISION AND ORDER - 2**

instead, the parties agreed to postpone their litigation plan until after Plaintiffs filed their motion for leave to amend their complaint.

On May 27, 2016, Plaintiffs filed their motion for leave to amend. (Dkt. 130.) In the proposed Second Amended Complaint, Plaintiffs sought to add Connie Taylor Henderson and JoLee Duclos, two additional shareholders/officers of the AIA entities, as individual defendants, and Donna Taylor as the personal representative of the Estate of Sarah Taylor as a plaintiff. The existing Defendants filed notices of non-opposition to Plaintiffs' motion. (Dkt. 133, 134.) On June 20, 2016, after the Court granted leave, Plaintiffs filed their Second Amended Complaint. (Dkt. 137.)

On June 21, 2016—one day after Plaintiffs filed their Second Amended Complaint—the Hawley Troxell Defendants filed a motion seeking to dismiss the new complaint for lack of diversity jurisdiction.[2] (Dkt. 138.) In response, on July 15, 2016, Plaintiffs filed a motion for leave to amend their complaint, or alternatively, to dismiss the non-diverse parties to cure the jurisdiction issue raised by the Hawley Troxell Defendants' motion to dismiss.[3]

---

[2] The Court would have expected (and expects in the future) grounds for dismissal to have been raised in response to the motion to amend instead of misleading representations that Defendants did not oppose Plaintiffs' motion to amend. The notices of non-opposition were not consistent with Rule 1. *See* Fed. R. Civ. P. 1. 2015 Comm. Note. ("[D]iscussions of ways to improve the administration of civil justice regularly include pleas to discourage over-use, misuse, and *abuse of procedural tools that increase cost and result in delay*.") (emphasis added).

[3] During the hearing on October 24, 2016, the parties to this motion practice that has prolonged the proceedings, explained that, for some unknown reason, diversity jurisdiction was not discussed during any of the parties' conferences when the goal was determining the operative pleading.

**MEMORANDUM DECISION AND ORDER - 3**

In the Second Amended Complaint (Dkt. 137), the parties to this litigation consist of the following: Plaintiffs Dale Miesen[4] and Donna Taylor as the minority shareholders of Defendant AIA Services Corporation, the alleged wronged corporation. Dale Miesen is a citizen of Texas and Donna Taylor is a citizen of Washington. Donna Taylor is named also as the personal representative of the Estate of Sarah Taylor (Donna Taylor's deceased daughter)—the citizenship of Sarah Taylor's estate is Idaho.

There are two groups of Defendants. The first group consists of AIA Services Corporation, AIA Insurance, Inc.,  Crop USA Insurance Agency, Inc., and several controlling shareholders and officers of those entities, including: R. John Taylor, James Beck, Michael Cashman, Connie Taylor Henderson and JoLee Duclos.[5] Each entity is an Idaho corporation. John Taylor is a citizen of Idaho, James Beck and Michael Cashman are citizens of Minnesota, and Connie Taylor Henderson and JoLee Duclos are citizens of Washington. The second group consists of the law firm Hawley Troxell Ennis & Hawley, LLP, and several of its attorneys who represent the AIA entities and Crop USA.[6] The Hawley Troxell Defendants are all citizens of Idaho.

Two additional motions were filed after the motion to dismiss and motion to amend, unrelated to the diversity jurisdiction issue. On July 18, 2016, third-party

---

[4] Dale Miesen was named as a Plaintiff initially in the original complaint. He was not, however, named in the caption of the First Amended Complaint. (Dkt. 23.)

[5] The Court collectively refers to these Defendants as the "AIA Defendants," unless otherwise indicated. AIA Services Corporation and AIA Insurance, Inc.  are not currently represented. During the status conference on March 7, 2016, the parties represented that the AIA entities are merely nominal as Plaintiffs have not asserted any claims against them.

[6] The Court collectively refers to these Defendants as the "Hawley Troxell Defendants."

**MEMORANDUM DECISION AND ORDER - 4**

GemCap, filed a motion to intervene and seal a Settlement Agreement, filed by Plaintiffs with a declaration from Plaintiffs' counsel regarding the status of counsels' conferences. (Dkt. 141.) On September 5, 2016, Plaintiffs filed a motion to strike several documents related to GemCap's motion. (Dkt. 169.)

To most efficiently discuss and resolve the four motions before the Court, the Court will address the motions in reverse chronological order in which they were filed, beginning with Plaintiffs' motion to strike.

## DISCUSSION

### I. Plaintiffs' Motion to Strike (Dkt. 169)

Plaintiffs seek an order striking: (1) the AIA Defendants' untimely notice of non-opposition to GemCap's motion to intervene and seal; (2) an email attached as an exhibit to a declaration filed in support of GemCap's motion to intervene and seal, and portions of GemCap's reply brief that reference the email; (3) GemCap's notice of supplemental authority in support of its motion to intervene and seal; and (4) a standing argument raised for the first time by the Hawley Troxell Defendants in their reply memorandum filed in support of their motion to dismiss. For the following reasons, the Court will deny the entirety of Plaintiffs' requests.

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *SidneyVinstein v. A.H. Robins Co.*, 697

**MEMORANDUM DECISION AND ORDER - 5**

F.2d 880, 885 (9th Cir. 1983). However, Rule 12(f) motions are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp. 2d 1101, 1152 (C.D. Cal.2003).

The Court has broad discretion in disposing of motions to strike. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993) *rev'd on other grounds* 510 U.S. 517 (1994). The Court construes motions to strike in the light most favorable to the nonmoving party and will deny the motion if the challenged defenses have "'any relation to the subject matter of the controversy, could be held to in any manner defeat the plaintiff's claim, or if it fairly presents any question of fact or law.'" *United States v. 45.43 Acres of Land Situate in Ada County, Idaho*, 2009 WL 1605127 (D. Idaho June 4, 2009) (quoting *United States v. Articles of Food ... Clover Club Potato Chips*, 67 F.R.D. 419, 421 (D. Idaho 1975)); *See also McBurney v. Lowe's Home Centers, LLC*, 2014 WL 2993087 (D. Idaho July 2, 2014) (denying motion to strike attacking affirmative defenses and qualified denials in the defendant's answers).

Here, as explained more fully below, the materials Plaintiffs seek to strike are not contained within a pleading or otherwise do not qualify as an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

First, while the AIA Defendants' notice of non-opposition to GemCap's motion to intervene was untimely filed, the notice was brief, and simply and concisely stated the AIA Defendants' position on GemCap's motion. To the extent any the AIA Defendants offered any argument in the notice of non-opposition, the Court did not consider it in its

**MEMORANDUM DECISION AND ORDER - 6**

decision on the motion to intervene and seal. There is no basis to strike the notice.

Second, the email included in support of the reply to GemCap's motion to intervene and seal was not properly authenticated through counsel for GemCap's declaration. However, the email purportedly was sent by Plaintiffs' counsel to other counsel in this case and thus, likely could be authenticated if the email was pertinent to any issue presented with GemCap's motion to intervene and seal—which the Court finds it is not. However, Plaintiffs have not provided a sufficient basis for the Court to strike the email (and the arguments which reference the email) from the record.

Third, with regard to the notice of supplemental authority, because the Court is permitted to accept supplemental authority on any point, should the Court deem it relevant,[7] it will not to strike the notice.[8]

Fourth, and with regard to the standing arguments raised by the Hawley Troxell Defendants for the first time in their reply in support of their motion to dismiss, the Court will deny Plaintiffs' request as moot. The standing issue is not before the Court in connection with Defendants' motion to dismiss. Further, the motion to dismiss will be denied as moot, as explained below.

## II. GemCap's Motion to Intervene and Seal (Dkt. 141)

GemCap seeks to intervene in this litigation for the limited purpose of requesting an order sealing a settlement agreement related to separate litigation between GemCap

---

[7] Proceedings in which the other courts sealed the very document GemCap seeks to seal have some relevance herein.

[8] GemCap alternatively could have requested this material be judicially noticed pursuant to Fed. R. Evid. 201.

**MEMORANDUM DECISION AND ORDER - 7**

and various AIA Defendants, filed in this lawsuit by Plaintiffs.[9] (Dkt. 128 at 21-48.)

Neither Plaintiffs nor Defendants oppose GemCap's motion to intervene; thus, finding

intervention appropriate pursuant to Fed. R. Civ. P. 24(b), the Court will grant GemCap's

motion in this regard.

Not all parties agree, however, that the Settlement Agreement should be sealed

from public access. GemCap argues the Court should seal the Settlement Agreement

because its publication may cause particularized harm to GemCap. Specifically, GemCap

contends the Settlement Agreement contains plans for potential future litigation and

reveals some of GemCap's private business practices.[10] Plaintiffs and the Hawley Troxell

Defendants[11]contend GemCap has not met its burden of showing particularized harm.

They argue the Settlement Agreement should not be sealed because the substance of the

Settlement Agreement contains facts relevant and critical to the present litigation. In

addition, Plaintiffs and the Hawley Troxell Defendants argue it is not necessary to seal

the Settlement Agreement because it has been open to public access for several months,

and thus, has lost any confidentiality it previously may have been afforded.

---

[9] The Settlement Agreement is between GemCap and several entities and persons—including John Taylor, AIA Insurance, and AIA Services Corporation. The Settlement Agreement was filed in the United States District Court for the Central District of California in *GemCap Lending I, LLC v. Crop USA Insurance Agency et al.*, No, 2:13-cv-05504-SOJ-MAN (C.D. Cal). Plaintiffs are not parties to the Settlement Agreement, but appear to have obtained the Settlement Agreement during a limited period when the Agreement was not under seal in some other matter.

[10] GemCap does not reference any specific provision, term, or party to the Settlement Agreement in its argument in support of particularized harm. However, specific examples of particularized harm would likely require GemCap to discuss the terms of the Settlement Agreement in detail, which could likely be a breach of the confidentiality agreement.

[11] The AIA Defendants do not oppose GemCap's request to seal the Settlement Agreement. (Dkt. 167.)

**MEMORANDUM DECISION AND ORDER - 8**

Court proceedings and records are generally open to the public. S*ee, e.g., Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597 (1978); *Assoc. Press v. U.S. Dist. Court for Cent. Dist. of California,* 705 F.2d 1143, 1145 (9th Cir.1983) ("We thus find that the public and press have a first amendment right of access to pretrial documents in general."). This right of access is "grounded in the First Amendment and in common law." *CBS, Inc. v. U.S. Dist. Court for Cent. Dist. of California,* 765 F.2d 823, 825 (9th Cir.1985) (citing *Assoc. Press,* 705 F.2d at 1145). Such a general rule for access applies in civil cases. *See, e.g., Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 386 n. 15 (1979).

The point of open proceedings and records is, in part, that such matters "should take place under the public eye" because "it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." *Cowley v. Pulsifer,* 137 Mass. 392, 394 (1884) (Holmes, J.). This interest extends beyond oversight of the judiciary: "The public has a right, and even a responsibility ... to monitor the activities and performance of their own government and use this information to implement change if needed." *Skinner v. Uphoff,* 2005 WL 4089333, at *3 (D.Wyo. Sept. 27, 2005).

To overcome the presumption that a court filing should not be sealed, the party seeking to seal must "articulate compelling reasons supported by specific factual findings." *Kamakana v. City and County of Honolulu,* 447 F.3d 1172, 1178 (9th Cir.2006) (citations omitted). A decision to seal records cannot be based on "hypothesis or conjecture" in place of the required compelling reasons. *Id.* at 1179 (citation omitted).

**MEMORANDUM DECISION AND ORDER - 9**

Generally, compelling reasons "exist when such court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* (Internal quotation and citation omitted). The "mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* at 1178.

The Court finds that, here, GemCap has sufficiently articulated particularized harm that may result if the Settlement Agreement is not sealed. The Settlement Agreement is an active, living document in which the contractual obligations of the parties are still being administered. The Settlement Agreement reveals insight into GemCap's business practices and strategies for future litigation, including preservation over certain claims and GemCap's valuation of those claims. If this information is exposed to the entities GemCap may pursue, it could interfere with GemCap's ability to negotiate and reach settlement with those parties, and has the potential to lead to protracted, complicated, and expensive litigation. As such, GemCap has sufficiently established that it could suffer particularized harm if the Settlement Agreement remains publicly available.

Further, the Court finds prejudice would not result on behalf of Plaintiffs or the Hawley Troxell Defendants if the Settlement Agreement is sealed, given all parties in this litigation and the Court would still have access to the Settlement Agreement. Moreover, it is both persuasive and relevant that other courts, including the United States Court of Appeals for the Ninth Circuit, have sealed or provisionally sealed the very document

**MEMORANDUM DECISION AND ORDER - 10**

GemCap seeks to seal in this action. *See Donna Taylor v. Crop USA Ins. Agency, Inc, et al*, No. 15-55332 (9th Cir.) (Dkt. 49, 56) (provisionally sealing Settlement Agreement until resolution of motion to un-seal; oral argument set for February of 2017); *Gemcap Lending I LLC v. Crop USA Insurance Agency Inc et al*, No. 2:13-cv-05504-SJO-MAN (C.D. Cal) (Dkt. 272, 273); Missouri Crop, LLC., et al v. CGB Diversified Services, Inc., et al, No. 2:15-00024-ERW (E. D. Mo) (Dkt. 81); *AIA Services Corporation An Idaho Corporation vs. Washington Bank Properties,* No. CV-2011-01927 (Idaho 2nd. Dist.).

Accordingly, for the reasons stated above, the Court will grant GemCap's motion to seal. The Settlement Agreement will remain under seal until further order of the Court. In addition, the parties are encouraged to discuss whether a stipulation to a protective order would be appropriate in this litigation, especially if GemCap is added as a Defendant as suggested by Plaintiffs and the Hawley Troxell Defendants.

**III. Plaintiffs' Motion to Amend, or alternatively, Voluntarily Dismiss Parties (Dkt. 139)**

Plaintiffs' motion makes alternative requests, either of which, if granted, would cure the issue raised by Defendants in their motion to dismiss regarding diversity of citizenship jurisdiction. (Dkt. 139.) Specifically, Plaintiffs seek leave of court to amend their complaint (again) to remove the non-diverse parties added to this action in their Second Amended Complaint: Defendants Connie Taylor Henderson and JoLee Duclos, and Plaintiff Donna Taylor in her capacity as personal representative for the Estate of Sarah Taylor. Alternatively, Plaintiffs seek dismissal without prejudice of all the non-diverse parties, or merely dismissal of Donna Taylor as a party, in both her personal and

**MEMORANDUM DECISION AND ORDER - 11**

representative capacities. The last option (dismissing Donna Taylor only) is Plaintiffs'

preferred approach, as represented by Plaintiffs' counsel at the time of the hearing on

these motions. For the following reasons, the Court will grant Plaintiffs' motion to

dismiss Donna Taylor as a party Plaintiff in both her personal and representative

capacities, and will deny all other aspects of Plaintiffs' motion.

Federal Rule of Civil Procedure 41(a)(2) allows a plaintiff, pursuant to an order of

the Court, and subject to any terms and conditions the Court deems proper, to request

dismissal of an action without prejudice at any time. A motion for voluntary dismissal

under Rule 41(a)(2) "is addressed to the sound discretion of the district court, and its

order will not be reversed unless [it] has abused its discretion." *Hamilton v. Firestone

Tire & Rubber Co.,* 679 F.2d 143, 145 (9th Cir.1982). Further, "[a] district court should

grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show

that it will suffer some plain legal prejudice as a result." *Smith v. Lenches,* 263 F.3d 972,

975 (9th Cir.2001) (footnote omitted); *see also Westlands Water Dist. v. United States,*

100 F.3d 94, 96 (9th Cir.1996).

The Court finds dismissal of Donna Taylor as a party in both her personal and

representative capacities would not result in any undue prejudice to Defendants.

Dismissal without prejudice of Donna Taylor as a party plaintiff from the Second

Amended Complaint will cure the diversity jurisdiction issue raised by the Hawley

Troxell Defendants' motion to dismiss. In addition, dismissal of Donna Taylor is

consistent with the spirit of Fed. R. Civ. P. 1, as it allows all dispensable and

**MEMORANDUM DECISION AND ORDER - 12**

indispensable Defendants to remain in this single litigation.[12] *See* Fed. R. Civ. P. 1 (The Rules "should be construed, administered, and employed by the court *and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding.")(emphasis added); *see also Bankers Trust Co. v. Mallis*, 435 U.S. 381, 386–87 (1978) ("The Federal Rules of Civil Procedure are to be 'construed to secure the just, speedy, and inexpensive determination of every action.'"); *see also Commercial Cable Staffs' Ass'n v. Lehman*, 107 F.2d 917, 922 (2d Cir. 1939)(the spirit of the Rule "aims to view matters in their entirety, and not by separate bits, and also to put an end to litigation as promptly and completely as possible").

Accordingly, the Court will grant Plaintiffs' motion to dismiss Donna Taylor in both her representative and personal capacities, without prejudice. Because the dismissal of Donna Taylor as a party cures the diversity of citizenship issue raised by the Hawley Troxell Defendants in their motion to dismiss, the Court will deny their motion as moot.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) The Hawley Troxell Defendants' Motion to Dismiss (Dkt. 138) is **DENIED as moot;**

2) Plaintiffs' motion to voluntarily dismiss Donna Taylor, without prejudice, (Dkt. 139) is **GRANTED**. Plaintiffs' motion is **denied in all other respects;**

---

[12] During the hearing, Plaintiffs raised their intent to amend to name GemCap as a Defendant. Accordingly, the Court will set a deadline for amendment of pleadings in its order below.

**MEMORANDUM DECISION AND ORDER - 13**

3)  GemCap Lending I, LLC's Motion to Intervene and Seal (Dkt. 141) is **GRANTED;** The **Clerk of the Court is directed to seal** the Settlement Agreement located at Docket No. 128, pages 21 through 48, until further order of the Court;

4)  Plaintiffs' Motion to Strike (Dkt. 169) is **DENIED;**

5)  **Plaintiffs' deadline to file a motion to amend pleadings or join parties is November 4, 2016**, and any proposed amended complaint must comply with Dist. Idaho. L. R. 15.1;

6)  The parties must, if they have not already done so, set a date for the exchange of **initial disclosures** pursuant to Fed. R. Civ. P. 26. The parties must **meet and confer** *on or before* **November 21, 2016** to discuss a discovery plan. Plaintiffs must submit the discovery plan no later than **November 25, 2016.** The undersigned's law clerk will email a model litigation and discovery plan to the attorneys for the parties; and

7)  A **telephonic scheduling and status conference** is set for **November 30, 2016** at 10:00 a.m. MST. Plaintiffs to initiate the call, once all parties are on the line, connect to the Courtroom at (208) 334-9945.

Dated: **October 31, 2016**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 14**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, A SHAREHOLDER BRINGING THIS ACTION ON BEHALF OF AND/OR IN THE RIGHT OF AIA SERVICES CORPORATION AND ITS WHOLLY OWNED SUBSIDIARY AIA INSURANCE, INC.; | Case No. 1:10-cv-00404-CWD |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE:** |
| v. | **MOTION TO AMEND AND SUPPLEMENT COMPLAINT (DKT. 182); AND** |
| CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation, | **MOTION TO STRIKE DECLARATION OF RICHARD T. MCDERMOTT (DKT. 196)** |
| Defendants, | |
| and | |
| GEMCAP LENDING I, LLC, | |
| Limited Defendant-Intervenors. | |

**MEMORANDUM DECISION AND ORDER - 1**

## INTRODUCTION

Pending before the Court are two motions: (1) Plaintiff's Motion to Amend and Supplement the Complaint (Dkt. 182); and (2) Defendants' Motion to Strike the Declaration of Richard T. McDermott (Dkt. 196). The Court heard oral argument from Plaintiff and the Defendants[1] on March 13, 2017. After review of the record, consideration of the parties' arguments and relevant legal authorities, and otherwise being fully advised, the Court issues the following memorandum decision and order.

## PROCEDURAL BACKGROUND

Plaintiff Dale Miesen is the representative shareholder[2] who brings this derivative action on behalf of himself and other AIA Services Corporation shareholders. On May 27, 2016, Miesen filed a motion for leave to amend. (Dkt. 130.) In the proposed second amended complaint, Miesen sought to add Connie Taylor Henderson and JoLee Duclos, two additional shareholders/officers of the AIA entities, as individual defendants. On June 20, 2016, after the Court granted leave, Miesen filed his Second Amended Complaint. (Dkt. 137.)

During the period between filing his motion for leave to amend the complaint for a second time, and filing the Second Amended Complaint, Miesen served a shareholder derivative demand letter on the AIA board of directors on June 13, 2016. (Dkt. 186-1.)

---

[1] The Court collectively refers to CropUSA Insurance Agency, Inc., John Taylor, Michael Cashman, James Beck, Connie Henderson, and JoLee Duclos as "Defendants" for the purposes of this motion unless indicated otherwise. The other set of defendants in this action (the Hawley Troxell Defendants) do not oppose the motion to amend or the motion to strike.

[2] Although Miesen was added as the sole shareholder plaintiff in this derivative action on October 31, 2016 (Dkt. 178), to avoid confusion, the Court refers to Miesen and not to the previously named plaintiffs.

**MEMORANDUM DECISION AND ORDER - 2**

The 11-page demand listed 44 claims for the board to investigate and pursue. Among others, the list included:

- Allegations that the loan and settlement agreement between GemCap Lending, the CropUSA entities, and the AIA entities (as guarantor) was unlawfully unauthorized by the AIA board of directors. Miesen sought to have the loan and settlement agreements declared illegal and to recover the funds and/or property that was transferred and paid to GemCap pursuant to those agreements.  He alleged also that GemCap aided and abetted the AIA directors in committing non-specific torts against AIA. (*Id.* at ¶¶ 2-6.)

- Allegations against the Combined Defendants for torts committed against AIA (including: breaches of fiduciary duties and fraud). Miesen sought disgorgement of the Controlling AIA Defendants' compensation, consulting fees, salaries, benefits, etc., derived from AIA. (*Id.* at ¶¶ 7-8.)

- Allegations against the Controlling AIA Defendants for allowing John Taylor to operate AIA for his benefit and/or to assist AIA in funding the operation of entities owned by the Controlling Defendants. (*Id.* at ¶ 15.)

- Allegations against Combined Defendants for taking action violating AIA's amended articles of incorporation, violating AIA's bylaws, violating statutory and common law, and committing torts against AIA. Examples of these torts and "the covering up of these torts" can be found in the Second Amended Complaint. (*Id.* at ¶ 19.)

**MEMORANDUM DECISION AND ORDER - 3**

- Allegations against the Controlling AIA Defendants for all damages incurred or paid by AIA for attempting to effectuate a reverse stock split to eliminate the minority common shareholders of AIA, in violation of AIA's articles of incorporation, bylaws, and the Idaho Code. (*Id.* at ¶ 21.)

On August 23, 2016, Miesen served another demand letter on the board. (Dkt. 186-2.) This 13-page demand listed 58 claims for the board to investigate and pursue. Among others, the list included:

- Allegation that John Taylor's action of amending AIA's bylaws without approval from disinterested directors or shareholders was unlawful. (*Id.* at ¶ 2.)

- Allegation of unlawful issuance of 7,500 Series A Preferred Shares to John Taylor; according to the bylaws, before the alleged unlawful amendment, these shares could only be issued to minority shareholder Donna Taylor. (*Id.* at ¶ 3.)

- Allegations against the Controlling AIA Defendants for the property transferred to AIA from John Taylor without disinterested approval. Miesen asked the board to rescind such actions based on conflicts of interest and to pursue monetary damages for the debts assumed for such property. (*Id.* at ¶¶ 4-6.)

- Allegation that the Controlling AIA Defendants breached their fiduciary duties by accruing attorney's fees related to litigation against Donna Taylor

MEMORANDUM DECISION AND ORDER - 4

in an amount disproportional to and in excess of what AIA allegedly owes to Donna Taylor. (*Id.* at ¶7-8.)

On September 12, 2016, AIA President, John Taylor,[3] responded to Miesen's two demand letters, collectively. (Dkt. 186-3.) The response states in relevant part:

> [T]he boards of directors of AIA Services Corporation and AIA Insurance, Inc. (the "Boards"), have determined not to take any action in response to the Demand Letters.
>
> The Boards have rejected your Demand Letters because they do not provide a coherent description of the wrongful transactions for which you seek a remedy. The scope of the conduct described in the Demand Letters is so broad they are impossible to address in any meaningful way….

(*Id.*)

On October 24, 2016, after Miesen served the two additional demand letters on the AIA board of directors and received the above response, Miesen's counsel indicated to the Court during a hearing that he intended to file a third motion for leave to amend to include new claims and to add intervenors GemCap[4] as a party defendant. The Court re-set the deadline to file a motion for leave to amend or join parties for November 4, 2016. (Dkt. 178.)

Miesen filed the instant motion seeking leave to file a third amended complaint on October 31, 2016. With Miesen's reply memorandum in support of his motion, he filed

---

[3]According to Miesen, at the time he served both demand letters, John Taylor was the only remaining AIA board member.

[4] GemCap was permitted to intervene on October 31, 2016, for the limited purpose to seal the settlement agreement document. (Dkt. 178.) GemCap is a proposed new defendant to this action, however.

MEMORANDUM DECISION AND ORDER - 5

the Declaration of Richard McDermott, an attorney and professor who specializes in corporate finance law. Defendants filed a motion to strike McDermott's declaration.

## DISCUSSION

Miesen seeks leave to amend the second amended complaint to clarify facts, add new claims, and add two new defendants: GemCap and CropUSA Insurance Services, LLC.[5] Defendants oppose the motion on several grounds, including futility, undue delay, bad faith, and prejudice. The Court will address Defendants' motion to strike before addressing Miesen's motion to amend.

### MOTION TO STRIKE MCDERMOTT DECLARATION (DKT. 196)

Defendants seek to strike from the record the Declaration of Richard T. McDermott filed with Miesen's reply in support of his motion to amend. (Dkt. 196-6.) Specifically, Defendants argue McDermott's declaration is inadmissible because: (1) it contains legal conclusions; (2) it fails to state whether McDermott reviewed Idaho law or federal law regarding the issues before the Court; and (3) expert witness testimony is premature and inappropriate for the Court's consideration on the futility argument Defendants make in opposition to the proposed third amended complaint.

To better understand Defendants' motion, the Court will first set forth the relevant details of McDermott's declaration and applicable standards of law before discussing the substance of the motion to strike.

---

[5] CropUSA Insurance Agency is currently a named party defendant—CropUSA Services, LLC, is a separate entity, and has yet to be added as a party defendant. CropUSA Insurance Agency and CropUSA Insurances Services are referred to collectively in the proposed third amended complaint as "CropUSA." (Dkt. 182-2 at ¶ 11.) It follows the causes of action alleged against CropUSA (Counts II, IV, V, VII, and VIII) are alleged against both CropUSA entities.

**MEMORANDUM DECISION AND ORDER - 6**

### A. McDermott Declaration

Miesen retained attorney and law professor, Richard T. McDermott, to provide expert testimony regarding the functions and responsibilities of the corporate defendants and officers in this lawsuit. (Dkt. 194-6 at 2.)

In reaching the opinions he states in his declaration, McDermott reviewed documents produced in the various related lawsuits involving one or more of the defendants in this lawsuit. (*Id.* at 5.) He reviewed AIA's articles of incorporation and restated bylaws and the amendments thereto. He reviewed the annual reports for AIA Services and AIA Insurance and the derivative demand letters that Miesen's attorney served on the AIA entities' board of directors, dated June 13, 2016, and August 23, 2016. He reviewed also John Taylor's response letter to Miesen's counsel dated September 12, 2016.

Upon review of the documents, McDermott provided the following four opinions in his declaration:

> 21. In all my years of practice and experience, I have never seen such wide-spread corporate malfeasance and inappropriate conduct as was committed by the defendants in this lawsuit and/or covered up by them as demonstrated by the documents that I have reviewed. While the defendants John Taylor, Connie Taylor, James Beck, Michael Cashman, Sr., JoLee Duclos and CropUSA Insurance Agency, complain about the length of Dale Miesen's Proposed Amended Complaint in this lawsuit, I believe that the length of the complaint is necessary to cover the substantial history of facts and the claims at issue in this lawsuit.
>
> 22. In my opinion, the two Derivative Demand Letters at issue in the pending motion, Dkt. 186-1 and 186-2, more than sufficiently state the required names, facts, causes of action and relief that I would expect to see, and have seen, in derivative demand letters provided to boards of directors for claims against the parties named in the Proposed Third Amended Complaint. I am

**MEMORANDUM DECISION AND ORDER - 7**

familiar with and/or have knowledge of, the transactions and items identified in the Derivative Demand Letters. It is disingenuous for John Taylor, as the sole purported director and officer for AIA Services and AIA insurance, to state that he lacks information as to any of the detailed items in the Derivative Demand Letters as he was directly or indirectly involved with each of the items listed in the Derivative Demand Letters.

23.  Because of John Taylor's conflicts of interest by way of involvement in the various items listed in the Derivative Demand Letters (including through ownership in Crop USA Insurance Agency, AIA Services, Pacific Empire Radio, and in other entities listed in the Derivative Demand Letters and/or his involvement in the items listed in the Derivative Demands), John Taylor was unable to respond on behalf of AIA Services and AIA Insurance to the Derivative Demands or make any decisions whether to pursue the claims listed in the Derivative Demands based upon his conflicts of interest and his bad faith conduct. Those same conflicts of interest, together with the acts of placing their own self-interests ahead of the best interests of AIA Services and AIA Insurance, apply to virtually all of the breach of fiduciary duty claims in this lawsuit (and possibly every one of them) thereby resulting in the business judgment rule having no application to the Individual Defendants during the applicable times that they owed fiduciary duties as officers and/or directors and/or controlling shareholders of AIA Services or AIA Insurance as alleged in the Proposed Third Amended Complaint. Moreover, the Individual AIA Defendants have not acted in good faith with respect to the transactions and the acts at issue in the Proposed Third Amended Complaint.

24. As I mentioned above, I will be prepared to render opinions as to the breaches of fiduciary duties and related conduct of each of the defendants in this lawsuit (including the Hawley Troxell Defendants), together with opinions regarding proximate causation. I am informing the Court of these facts so that the Court understands the causes of action and the damages at issue in this lawsuit are substantiated.

(*Id.* at 6.)

## B.  Legal Standard

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is

**MEMORANDUM DECISION AND ORDER - 8**

to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). However, Rule 12(f) motions are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp. 2d 1101, 1152 (C.D. Cal. 2003).

The Court has broad discretion in disposing of motions to strike. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993) *rev'd on other grounds* 510 U.S. 517 (1994). The Court construes motions to strike in the light most favorable to the nonmoving party and will deny the motion if the material sought to be stricken has "any relation to the subject matter of the controversy, could be held to in any manner defeat the plaintiff's claim, or if it fairly presents any question of fact or law." *United States v. 45.43 Acres of Land Situate in Ada County, Idaho*, 2009 WL 1605127 (D. Idaho June 4, 2009) (internal quotations omitted).

### C. Legal Conclusions Will Not Be Considered

Defendants contend McDermott's declaration is inadmissible because it contains legal conclusions regarding whether the proposed third amended complaint is too lengthy, whether the derivative demands were sufficient, and whether the CropUSA Defendants engaged in "corporate malfeasance and inappropriate conduct." Miesen concedes that McDermott's declaration should not be considered for any legal conclusions contained therein, agreeing that these are for the Court to determine.

**MEMORANDUM DECISION AND ORDER - 9**

"Testimony offered solely for the purpose of answering legal questions within the province of the Court is inadmissible." *See Stinker Stores, Inc. v. Nationwide Agribusiness Ins. & Order Co.*, No. CV 08-370-LMB, 2010 U.S. Dist. LEXIS 31643, at *13 (D. Idaho Mar. 31, 2010). Paragraph 21 and portions of Paragraphs 22 and 23 of McDermott's declaration contain legal conclusions. Accordingly, the Court will not consider them in its consideration of and determination of Miesen's motion for leave to amend.

### D.  No Requirement to Provide Basis of Law

Defendants assert that, although McDermott discusses his experience at length in his declaration, he failed state whether he reviewed Idaho law or federal law regarding the issues before the Court, and, therefore, his opinions are not based upon reliable facts and data, as required by Federal Rule of Evidence 702.[6]

While this argument may be appropriate to raise regarding the foundation for and admissibility of McDermott's opinions during summary judgment proceedings or at trial, it is not relevant in the context of Miesen's instant motion to amend. The Court needs not

---

[6] Fed. R. Evid. 702 provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) The testimony is based on sufficient facts or data;
> >
> > (c) The testimony is a product of reliable principles and methods; and
> >
> > (d) The expert reliably applied the principles and methods to the facts of the case.

**MEMORANDUM DECISION AND ORDER - 10**

address this argument, especially given the Court's finding below that McDermott's opinions, to the extent they appear to suggest or guide whether the Court should allow leave to amend, and thus, will not be considered.

### E. Expert Witness Testimony is Premature at this Juncture

Defendants contend that, because the issue before the Court pertains to whether Miesen satisfied the pleading and procedural requirements for filing a third amended complaint, expert witness testimony is inappropriate at this stage in the litigation. In response, Miesen contends the declaration was submitted not to rebut Defendants' futility arguments, but for the purpose of rebutting Defendants' allegations of bad faith, undue delay, and prejudice.

The Court agrees, in part, with Defendants that it is inappropriate for the Court to consider McDermott's declaration as to whether the newly alleged claims are futile. The futility analysis is similar to the analysis required in a Fed. R. Civ. P. 12(b)(6) motion to dismiss, in which it is impermissible to consider documents outside the pleadings without converting the motion into a motion for summary judgment. Accordingly, the Court will not consider McDermott's declaration in determining whether the proposed amended complaint is futile. However, with regard to the Court's determination as to whether the motion to file the amended complaint was made in bad faith, the Court may consider Paragraph 24 of McDermott's declaration along with the portions of Paragraphs 22 and 23 that do not invade the province of the Court, for whatever weight the Court determines the statements should receive.

**MEMORANDUM DECISION AND ORDER - 11**

**MOTION TO AMEND AND SUPPLEMENT COMPLAINT (DKT. 182)**

Miesen seeks leave to amend his complaint for a third time pursuant to Fed. R. Civ. P. 15(a)(2) and (d). Specifically, Miesen seeks to amend his complaint to clarify factual allegations and to assert additional claims, including claims that continue to accrue or that were discovered after the Second Amended Complaint was filed. He seeks also to add two new party defendants: GemCap and CropUSA Insurance Services, LLC. Defendants object to all aspects of Miesen's motion, specifically arguing that the Court should deny the motion to amend because the new allegations are futile, the motion was made in bad faith, amendment would cause undue delay, and amendment would result in prejudice to Defendants.  For the reasons that follow, the Court will grant in part, and deny in part, Miesen's motion for leave to file a third amended complaint.

## I.  Standards of Law

### A.  Motion to Amend—Fed. R. Civ. P. 15(a)(2)

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, while the decision to grant leave to amend is within the Court's discretion, the Court "must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits rather than on the pleadings or technicalities." *U.S. v. Webb,* 655 F.2d 977, 979 (9th Cir.1981). This "policy of favoring amendments to pleadings should be applied with extreme liberality." *Id.* (internal quotation marks omitted).

To determine "whether justice requires granting leave to amend," courts consider "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to

**MEMORANDUM DECISION AND ORDER - 12**

cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 538 (9th Cir.1989) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). "Generally, this determination should be performed with all inferences in favor of granting the motion." *Griggs v. Pace Am. Group, Inc.,* 170 F.3d 877, 880 (9th Cir.1999) (citing *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987)). Prejudice to the opposing party is the most important consideration. *Jackson v. Bank of Hawaii,* 902 F.2d 1385, 1387 (9th Cir.1990) (*citing Zenith Radio Corp. v. Hazeltine Research Inc.,* 401 U.S. 321, 330–31 (1971)).

## II. Futility of New Claims

Defendants raise several arguments in support of their contention that amendment of the newly added claims would be futile. First, Defendants contend that amendment should not be permitted because Miesen failed to obtain board action through a proper demand letter. Second, Defendants contend Miesen's breach of fiduciary duty claim against the Defendants is futile because the proposed amended complaint fails to "plead around" the presumption that the AIA directors acted within their permissible business judgment. Finally, Defendants argue that Miesen's fraud, conspiracy to commit fraud, and statutory relief claims fail to state causes of action upon which relief may be granted. The Court will address each argument in turn.

### A. Adequacy of the Demand Letters

Defendants contend the June 13, 2016 and August 23, 2016 demand letters are substantively inadequate for the following three reasons: (1) the letters, taken together,

MEMORANDUM DECISION AND ORDER - 13

were not an "earnest and sincere" effort to help the AIA board remedy the shareholders' concerns; (2) the letters failed to specifically identify the alleged wrongdoers; and (3) the letters failed to provide sufficient information about the claims to assist the board in determining whether litigation would have been successful. Defendants argue that, because the demand letters were not adequate, the Court should deny Miesen's motion to amend.

"A shareholder seeking to vindicate the interests of a corporation through a derivative suit must first demand action from the corporation's directors or plead with particularity the reasons why such demand would have been futile." *In re Silicon Graphics,* 183 F.3d at 989 (citing Fed. R. Civ. P. 23.1). The intent of the derivative demand ensures "the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 101 (1991).

"Rule 23.1 is only a procedural requirement empowering federal courts to determine from the pleadings whether the demand requirement has been met." *Stoner v. Walsh*, 772 F. Supp. 790, 795 (S.D.N.Y. 1991). "Because the demand requirement allocates the power of controlling corporate litigation between individual shareholders and directors, the adequacy of the demand…is a creature of state law." *Id.* (citing *Kamen,* 500 U.S. at 98-99). AIA Services Corporation, AIA Insurance Inc., and CropUSA Insurance Agency, Inc. are all Idaho corporations, thus, the Court will look to Idaho law to determine the adequacy of the June 13, 2016, and August 23, 2016 demand letters.

MEMORANDUM DECISION AND ORDER - 14

Idaho Code Section 30-29-742 provides that no shareholder may commence a derivative proceeding until:

> (1) A written demand has been made upon the corporation to take suitable action; and
>
> (2) Ninety (90) days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety (90) day period.

The Idaho statute provides no instruction on how to determine whether the content of the demand is adequate. However, the Idaho Supreme Court in *McCann v. McCann*, 61 P.3d 585, 592 (Idaho 2002), cited to 19 Am. Jur. 2d *Corporations* § 2278, 173–74 (1986) for guidance on determining the adequacy of a demand letter:

> The demand on the directors need not assume a particular form nor need it be made in any special language. However, the stockholder must make an earnest and sincere, and not a feigned or simulated, effort to induce the directors to take remedial action in the corporate name. Statements should be presented to the directors showing the wrong complained of, accompanied by sufficient responsible data which will enable the directors to determine whether litigation could be engaged in with some hope of success. The shareholder must state facts, not mere general charges and conclusions.
>
> The demand should give the directors a fair opportunity to initiate the action which the shareholder wants to undertake, and name the potential defendants, as well as the shareholder making the demand.

The Court will address Defendants' three arguments separately below.

### 1. Earnest and Sincere

Without providing any legal authority, Defendants contend the shareholders' demand letters were not "earnest and sincere" efforts to help the AIA board remedy the shareholders' alleged concerns. Rather than attempt to alert the board to discrete issues

MEMORANDUM DECISION AND ORDER - 15

1-ER-34

for investigation, Defendants argue the demand letters read as if Miesen's counsel viewed the demand requirement as a formality, listing every conceivable claim AIA might consider asserting against any conceivable defendant. In support of this allegation, Defendants point out that, on September 12, 2016, the board informed Miesen's counsel in writing that his demand letters were "too nebulous" to enable the board to investigate the alleged claims. Defendants argue that, rather than attempt to clarify the grounds for his allegations, Miesen's counsel chose to file the motion to amend.

The Court finds the demand letters demonstrate an earnest and sincere effort to inform the AIA board of directors of the alleged wrongdoing. To argue that Miesen could have attempted to clarify his allegations is disingenuous, considering AIA itself did not ask for clarifications. Because no follow up was requested by AIA, Miesen was left with no alternative, other than to file suit.

### 2.  Identification of Wrongdoers

Defendants argue that, instead of identifying individual wrongdoers, the demand letters were written to "provide an open universe of potential defendants to this lawsuit." For instance, Defendants assert the letters' references to "Combined Defendants" and "agents of AIA" consist of a group of people, numbering in the thousands. In addition, Defendants note that some of the numbered paragraphs in the demand letters refer to no potential defendant, and other paragraphs are directed at certain people plus "any other parties" that may have taken part in the alleged wrongdoings.

The Ninth Circuit considered the issue of whether a demand letter sufficiently identified alleged wrongdoers in *Simmonds v. Credit Suisse Sec.(USA) LLC*, 638 F.3d

**MEMORANDUM DECISION AND ORDER - 16**

1072, 1092-93 (9th Cir. 2011), *vacated and remanded on other grounds,* 566 U.S. 221, 221 (2012). The demand letters in *Simmonds* identified wrongdoers as "the Company's IPO underwriters, in addition to certain of its officers, directors and principal shareholders, as identified in the IPO prospectus." *Id.* The Ninth Circuit, albeit recognizing it was a close call, affirmed the district court's decision that the "demand letters sufficiently identif[ied] the alleged wrongdoers" because the letters "identified a closed set of alleged wrongdoers."[7] *Id.*

Upon close review of both demand letters and the allegations made therein, the Court finds that the majority of the allegations sufficiently identify the alleged wrongdoer(s) or a closed set of alleged wrongdoers associated with each allegation. In the beginning of each letter, Miesen identifies individuals and defines the groups of alleged wrongdoers.[8] For instance, when Miesen referred to "Controlling AIA Defendants," he

---

[7] In contrast, Defendants citied to the Court of Appeals for the Third Circuit decision, *Shlensky v. Dorsey*, 574 F.2d 131, 141 (3d Cir. 1978). There, the demand letter requested the board to take action against "responsible individuals;" the letter did not specifically identify any alleged wrongdoer by name. *Id.* The Third Circuit affirmed the direct court's finding that, the letter was "completely lacking in the specificity which would give the directors a fair opportunity to initiate the action…which it is the purpose of the demand requirement of the rule to provide. *Id.* (citing 3B Moore's Federal Practice pp. 23.1-81 to 23.1-82 (2d ed. 1977)). This Court applies Ninth Circuit authority and is under no obligation to apply the law from another circuit. Because *Simmonds* is current, on point, Ninth Circuit authority, the Court declines to consider the Third Circuit's decision in *Shlensky*.

[8] Both letters set forth the following:

> For purposes of this derivative demand, the following terms shall apply: (a) "AIA" means AIA Services Corporation and its wholly owned subsidiary AIA Insurance; (b) "CropUSA" means CropUSA Insurance Agency, Inc. and CropUSA Insurance Services, LLC; (c) "John" means R. John Taylor and his spouse as to any property transferred to such spouse, together with any entities partially or wholly owned by him (including Green Leaf RE, Reinsurance Partners, Weskan Agency, Pacific Empire Holdings, Sound Insurance and other entities); (d) "Connie" means Connie Taylor, Connie Taylor Henderson, and Connie Wright Henderson and her spouse as to any property transferred to such spouse; (e) "Beck" means James Beck and his spouse as to any property transferred to such spouse; (f) "Cashman" means Michael W. Cashman, Sr. and his spouse as to any property transferred to such spouse; (g) "Duclos" means JoLee K. Duclos and her spouse as to any property transferred to such spouse; (h) "Hawley Troxell" means Hawley Troxell Ennis & Hawley LLP and the applicable present and former attorneys at Hawley Troxell (including, without

**MEMORANDUM DECISION AND ORDER - 17**

was referring to John Taylor, Connie Henderson, James Beck, Michael Cashman and JoLee Duclos. (Dkt. 186-2.) And, when he referred to "Combined Defendants," he was referring to all parties named in the derivative demand except for the AIA entities. (*Id.*) The Court finds these groups sufficiently identify closed, albeit large, sets of alleged wrongdoers.

A few of the allegations identify an individual or set of wrongdoers, but include also allegations against "any other responsible party."[9] While the Court agrees that the clause "any other responsible party" opens the set of alleged wrongdoers to an infinite possibility of wrongdoers, allegations containing that clause were asserted in only seven of the one hundred and two total allegations asserted between the two demand letters.[10] Defendants could have requested clarification for these seven allegations in their response letter, but chose not to do so. In addition, Miesen's proposed third amended

---

limitation, D. John Ashby, Gary Babbitt and Richard A. Riley); (i) "Pacific Empire Radio" means Pacific Empire Radio Corporation; (j) "GemCap" means GemCap Lending I, LLC, together with all of its applicable officer(s) and agents; (k) "Combined Defendants" means all of the foregoing parties except as to AIA (but includes attorneys, law firms and agents of AIA), but "Combined Defendants may include or not include Hawley Troxell and/or Pacific Empire Radio to the extent applicable based on certain facts and circumstances and/or when such facts and circumstance occurred; and (l) "Controlling AIA Defendants" means John, Connie, Beck, Cashman and Duclos. For each of the foregoing terms which define more than one party, each such term shall also mean any one or more of the defined parties for purposes of demanding in the alternative.

(Dkt. 186-2.)

[9] For example, in the August 23, 2016 demand letter, allegation no. 29 identifies the wrongdoers as: "The Controlling AIA Defendants and *any other responsible party* for all damages relating to all payments made directly or indirectly from AIA to the attorneys and law firms of Hawley Troxell…." (Dkt. 186-2 at 8 (emphasis added).

[10] In the June 13, 2016 demand letter, Miesen refers to "any other parties" or "any other responsible parties" in three out of the 44 allegations asserted. *See* Dec. John Taylor, Ex. A., ¶¶ 14, 16, 18. (Dkt. 186-1 at 5-6.) In the August 23, 2016 demand letter, Miesen refers to "any other parties" in four out of the 58 allegations asserted. *See Id.*, at Ex. B., ¶¶ 27, 29, 31, 36. (Dkt. 186-2 at 7-8, 10.)

**MEMORANDUM DECISION AND ORDER - 18**

complaint names as defendants only those persons and entities who were specifically identified in the closed set of wrongdoers.

Upon consideration of the purpose for the demand letter requirement—to provide the board with the opportunity to make a good faith investigation into the claims of wrongdoing—the Court finds Miesen's use of "any other responsible party," in only a fraction of the demand letter allegations, had little to no impact on the AIA board of director's opportunity to investigate the allegations asserted in the demand letters.

### 3. Sufficient Information about the Claims

Defendants argue generally, without pointing to any specific demand allegation, that all the allegations are insufficient because Miesen included them "by way of example,"[11] and because the subject matters of the allegations are too broad for a board to determine what claims to investigate. The Court respectfully disagrees.

The demand letter "must state facts, not mere general conclusions." *McCann*, 61 P.3d at 592 (quoting 19 Am. Jur. 2d *Corporations* § 2278, 173–74 (1986)). "In most instances, the shareholder need not specify his legal theory, every fact in support of that theory, or the precise quantum of damages." *Allison on Behalf of Gen. Motors Corp. v.*

---

[11] In both demand letters, the first allegation provides in relevant part: [The Shareholders] hereby demand that all possible claims and legal action be immediately taken in a court of law on behalf of AIA as follows:

> Pursue all possible claims and defenses, and seek the maximum possible damages, against the Combined Defendants, including, without limitation, all possible tort claims…contract claims, declaratory relief, injunctive relief, and punitive damages based on all acts, omissions, concealments, and failure to disclose. Without limiting the foregoing and so there is no confusion…*more specific examples are included below and demand is hereby made to take action against those parties and any other Combined Defendants to recover damages on any of such specific examples.*

(Dkt. 186-1 at 2; 186-2 at 2) (emphasis added). The "examples" referred to in the letters consist of the 100 allegations listed thereafter.

**MEMORANDUM DECISION AND ORDER - 19**

*Gen. Motors Corp.*, 604 F. Supp. 1106, 1117 (D. Del. 1985). "Decisions as to how and on what theory the corporation will pursue wrongdoers are the proper province of the Board of Directors."[12] *Id.*

Because the Defendants fail to point to specific allegations that lack sufficient information, and because the AIA board of directors failed to request from the shareholders clarification on any of the allegations in their response to the demand letters, the Court will not go through the one hundred and two allegations to determine the sufficiency of each one. Upon review of the demand letters, generally, the Court observes that the letters may not include every single fact necessary to support the allegations or provide a precise quantum of damages. However, the allegations (especially those made in the second demand letter) were sufficiently detailed to provide the AIA board of directors the opportunity to make a good faith investigation into the following claims: breach of fiduciary duty; aiding and abetting breaches of fiduciary duties; fraud; aiding and abetting fraud; conspiracy to commit fraud; and, breach of contract. Therefore, the Court finds the content of Miesen's demand letters constituted a sufficient demand on the AIA board of directors.

---

[12] Defendants cited *Stoner v. Walsh*, 772 F. Supp. 790, 797 (S. D. N. Y. 1991), for the proposition that the shareholders' demand letters were insufficient because the letters did not describe with particularity the company's potential causes of action. Defendants' reliance on *Stoner* is misplaced. The district court in *Stoner* observed only that the demand letters lacked "any specificity the causes of action available to the corporation or those persons potentially liable." *Id.* However, the court did not rule on the sufficiency of those claims. *Id.* Instead, the court determined certain allegations that were made in the complaint were missing from the demand letter, and thus, dismissed those claims. *Id.*

**MEMORANDUM DECISION AND ORDER - 20**

### B. Breach of Fiduciary Duty (Count I)

Defendants allege that overcoming the business judgment rule is a substantive element of proving a director breached his fiduciary duty to the corporation. As such, Defendants argue that Miesen's breach of fiduciary duty claim is futile, as his proposed third amended complaint does not allege sufficient facts to establish breach of a fiduciary duty against the Defendants. In reply, Miesen argues the alleged conflicts of interests of AIA's sole board member, John Taylor, if taken as true, sufficiently articulate a breach of fiduciary duty claim against Defendants. For the reasons that follow, the Court finds application of the business judgment rule is inappropriate at this stage in the litigation and that Miesen's claim is sufficiently plead.

Pursuant to Idaho law, "[e]ach member of the board of directors, when discharging the duties of a director, shall act…[i]n good faith; and…[i]n a manner the director reasonably believes to be in the interests of the corporation." Idaho Code § 30-29-830. This fiduciary duty is owed by the director to both the corporation and its shareholders. *Weatherby v. Weatherby Lumber Co.,* 492 P.2d 43, 45 (Idaho 1972). To assert a breach of fiduciary duty claim against a director, a shareholder must prove that liability is not limited by the corporation's articles of incorporation, and also, that the director's conduct consisted of or was the result of:

(i)     Action not in good faith; or

(ii)    A decision:

    (A) That the director did not reasonably believe to be in the best interests of the corporation; or

MEMORANDUM DECISION AND ORDER - 21

(B) As to which the director was not informed to an extent the director reasonably believed appropriate in the circumstances; or

(iii) [A result of a] lack of objectivity due to the director's familial, financial, or business relationship with, or a lack of independence due to the director's domination or control by, another person having a material interest in the challenged conduct…; or

….

(v) Receipt of a financial benefit to which the director was not entitled….

I.C. § 30-29-831.

Idaho case law recognizes the business judgment rule, which "immunizes the good faith acts of directors when the directors are acting within the powers of the corporation and within the exercise of their honest business judgment." *McCann v. McCann*, 275 P.3d 824, 830 (Idaho 2012). However, "rebuttal of the business judgment rule is not an element of [breach of fiduciary duty]." *F.D.I.C. v. Coleman*, No. 1:14-CV-00310-CWD, 2015 WL 476234, at *9 (D. Idaho Feb. 5, 2015).

Due to the fact dependent nature of the business judgment rule, the Court in *F.D.I.C. v. Coleman*, found the rule was not appropriate for consideration on a motion to dismiss for failure to state a claim, because the record at that stage in the litigation was insufficient to determine whether the rule applied to the corporate defendant's conduct. *Id.* at 10 (citing *McCann*, 275 P.3d at 830 ("actions may fall under the business judgment rule, but those are issues of fact.")); *see FDIC v. Willetts,* No. 11–CV–165–BO, 2014 WL 4828330, at *4 (E. D. N. C. Sept. 11, 2014) ("At [the motion to dismiss] stage, the Court could not know whether the business judgment rule shielded defendants' liability absent further factual development and declined to dismiss the case.").

**MEMORANDUM DECISION AND ORDER - 22**

Here, the parties dispute whether Defendants' conduct fell within the reasonable exercise of their honest business judgment. Miesen alleges in his proposed third amended complaint at least three instances where AIA's director, John Taylor, failed to comply with AIA's bylaws and articles of incorporations and to otherwise act in good faith: (1) John Taylor's transfer and valuation of real estate to AIA without disinterested approval; (2) John Taylor's amendment of AIA bylaws to allow issuance of Series A Preferred Shares to himself, without disinterested approval; and (3) corporate waste permitted by John Taylor for allowing excessive litigation fees disproportionate to liability at stake to accrue.

Although this case has been pending for over seven years, litigation is still in its early stages as discovery has yet to commence.[13] As a consequence, the record is insufficient for the Court to determine whether the business judgment rule applies to each instance of purported liability as alleged against the Defendants. Even so, at this juncture, in determining whether Miesen's breach of fiduciary duty claim states a cause of action, the Court must consider the non-conclusory allegations in the proposed third amended complaint as true. So construed, Miesen has stated a plausible claim for breach of fiduciary duty against Defendants. Accordingly, the Court finds Miesen's breach of fiduciary duty claim is not futile.

---

[13] During the hearing, counsel for Miesen indicated he has yet to receive any records from the Defendants. (Dkt. 208 at 43.)

**MEMORANDUM DECISION AND ORDER - 23**

### C. Fraud, Concealment, and Constructive Fraud (Count IV)

Defendants contend Miesen's newly alleged fraud and constructive fraud allegations against them fail to satisfy the particularity requirement in Rule 9(b) of the Federal Rules of Procedure, because the allegation does not set forth specific events or communications where the AIA board of directors lied to its shareholders. In addition, Defendants allege Miesen has failed to show how both CropUSA and GemCap (the newly proposed party defendants who are also named under Miesen's fraud claim) could have concealed anything from AIA or its shareholders.

Under Idaho law, actual fraud consists of nine elements that a plaintiff must prove by clear and convincing evidence. A plaintiff must show: (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury. *Doe v. Boy Scouts of Am.*, 356 P.3d 1049, 1054 (Idaho 2015).

A party alleging constructive fraud must plead that there was a duty of trust and confidence between plaintiff and the defendant, the duty was breached, and (1) the defendant made a statement or representation of fact; (2) its falsity; (3) its materiality; (3) the hearer's ignorance of the falsity of the statement; (5) the reliance by the hearer; (6) justifiable reliance; and (7) resultant injury. *Id.* at 1055.

"Fraud claims must satisfy the heightened pleading requirements of Rule 9(b), which provides, in relevant part, that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *Klein v. Capital One*

**MEMORANDUM DECISION AND ORDER - 24**

*Fin. Corp.*, No. 4:10-CV-00629-EJL, 2011 WL 3270438, at \*3 (D. Idaho July 29, 2011) (citing Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir.2009)). In essence, Rule 9(b) requires the plaintiff to allege in his complaint "the who, what, where, when, and how" of the alleged fraudulent conduct," *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading." *In re Glenfed, Inc. Sec. Litg.,* 42 F.3d 1541, 1548 (9th Cir. 1994.) "The purpose of [Rule 9(b)] is to ensure that defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations." *Concha v. London,* 62 F.3d 1493, 1502 (9th Cir. 1995).

The Court will discuss Miesen's fraud claim against Defendants and the newly proposed defendants separately below.

### 1. Fraud as alleged against Defendants

The fraud claim as to Defendants consists of a series of ongoing events where former AIA directors, and current director John Taylor, allegedly made false representations to AIA board members. The proposed third amended complaint alleges that, in 1999, AIA Services, then under the control of the AIA Defendants, began selling crop insurance through a wholly owned subsidiary, CropUSA. (Dkt. 182-2 at ¶ 46.) Minutes from a January 10, 2001 CropUSA shareholder meeting indicate AIA Services and CropUSA agreed that AIA Services would no longer operate CropUSA as a subsidiary. (*Id.* at ¶ 53.) Allegedly, the minutes from the same meeting outlined John Taylor's plan "to exploit the assets of AIA for the benefit of CropUSA." (*Id.* at ¶ 57.)

**MEMORANDUM DECISION AND ORDER - 25**

Specifically, the minutes revealed that CropUSA authorized its officers to: (1) execute a Master Marketing Agreement with AIA insurance that allowed CropUSA access to AIA customer lists and trade secrets; and (2) execute a Management Agreement with AIA wherein AIA agreed to provide management and administrative support to CropUSA without charge. (*Id.* at ¶ ¶ 58, 59.)

The proposed amended complaint alleges that the January 10, 2001 meeting minutes for CropUSA were concealed from AIA and its shareholders. (*Id.* at ¶ 54.) It alleges "[t]here was no decision, nor ha[d] there ever been a decision, on the part of AIA Services to discontinue the subsidiary status of CropUSA." (*Id.*) In addition, "[n]one of the preferred or common shareholders of AIA Services (other than those present at the January 10, 2001 [CropUSA] meeting) were given notice of or the opportunity to approve or oppose this corporate action; instead, it was concealed from them and AIA." (*Id.* at ¶ 55.)

On February 27, 2001, John Taylor sent a letter to AIA shareholder Donna Taylor indicating that "AIA is developing a new crop insurance program through a new company called CropUSA." (*Id.* at ¶ 56.)  He indicated, "[t]he costs of putting the CropUSA program together have been paid. AIA now needs to launch five new territories next Month." (*Id.*) The proposed third amended complaint alleges the February 27, 2001 letter represented that "CropUSA was a subsidiary of AIA and was being operated for the benefit of AIA and implicitly also for AIA Services' innocent minority shareholders (which included Donna Taylor)." (*Id.*) Miesen alleges this representation to AIA was false, and John Taylor knew it was false. (*Id.*)

**MEMORANDUM DECISION AND ORDER - 26**

The proposed third amended complaint alleges further that, a few years later, to boost CropUSA's balance sheet, the Defendants devised a scheme to transfer over $1.5 million from AIA to CropUSA. (Dkt. 182-2 at ¶ 74.) Specifically, in August of 2004, AIA received a payment of $1,510,693 from Trustmark; however, instead of depositing the money into the AIA account, John Taylor deposited the payment in an account named "AIA Insurance Inc. CropUSA." (*Id.* at ¶ 75.) The address associated with that account is John Taylor's personal address. (*Id.*) Shortly after this transaction, John Taylor transferred $1,510,693 to CropUSA's account. (*Id.* at ¶ 76.) To disguise this transaction from AIA shareholders, Miesen alleges Defendants characterized the transaction as "an alleged purchase by AIA Insurance of Series C Preferred Shares in its parent corporation, AIA Services" for the purported value of $1,510,693. (*Id.*) AIA and its shareholders were allegedly never given notice of the 2004 stock transaction, nor were any proper board or shareholder meetings held to approve the transaction. (*Id.* at ¶ 82.)

The proposed third amended complaint alleges that, to create a plausible explanation for the transfer, CropUSA produced a document designated as a "Consent in Lieu of Meeting" dated August 26, 2004. Miesen alleges this document is fraudulent because it was created the following year to retroactively "deceive auditors who questioned the validity of the transaction." (*Id.* at ¶ 78.) The proposed third amended complaint alleges that "CropUSA carried these Series C Preferred Shares in AIA Services on its books with a value of $21,693, which means that CropUSA realized a gain of $1,489,000 on this purported sale." (Dkt. 182-2 at ¶ 80.)

**MEMORANDUM DECISION AND ORDER - 27**

Having considered the above in connection with the entirety of the proposed third amended complaint, the Court finds Miesen's allegations of "fraud/fraudulent concealment/constructive fraud," as alleged against the Defendants satisfies Rule 9(b)'s particularity requirement. The proposed third amended complaint contains particulars as to the nature of the alleged false misrepresentations made by the AIA directors, the approximate date of those misrepresentations, and the damage that resulted to shareholders from reliance on those misrepresentations. Moreover, these facts satisfy Rule 9(b)'s purpose to ensure Defendants have adequate notice of the specific conduct alleged against them.

### 2. Fraud as alleged against CropUSA and GemCap

Defendants allege the proposed third amended complaint does not state a cause of action for fraud against CropUSA and GemCap, because it does not contain any purported facts supporting the allegation that CropUSA or GemCap concealed anything from AIA. The Court agrees.

The proposed third amended complaint alleges the following in its allegation of fraud:

> The Controlling AIA Defendants, CropUSA and GemCap concealed from AIA that they had AIA unlawfully and improperly entered into the Guarantees, Settlement Agreements and related agreements and instruments, together with unlawfully transferring property and making payments under those unlawful agreements and instruments.

(¶ 214.)

This allegation against CropUSA and GemCap, even when read together with the purported facts in the proposed third amended complaint, fails to set forth the elements

**MEMORANDUM DECISION AND ORDER - 28**

for a claim of fraud or constructive fraud, let alone setting them forth with particularity. Specifically, with regard to fraud, Miesen has failed to set forth facts indicating that CropUSA or GemCap made material misrepresentations to AIA and its shareholders. And, with regard to constructive fraud, the proposed third amended complaint fails to allege facts to otherwise support that CropUSA or GemCap owed a fiduciary duty to AIA or its shareholders,[14] or that CropUSA or GemCap breached that duty.

### D. Conspiracy to Commit Fraud (Count V)

Defendants contend Miesen failed to plead with particularity, or at all, that there was a plan or agreement between AIA Defendants, CropUSA, and GemCap to defraud AIA and its shareholders.[15]

The Idaho Supreme Court has provided the following regarding civil conspiracy claims:

> A civil conspiracy that gives rise to legal remedies exists only if there is an agreement between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner. Civil conspiracy is not, by itself, a claim for relief. The essence of a cause of action for civil conspiracy is the civil wrong committed as the objective of the conspiracy, not the conspiracy itself.

*Mannos v. Moss*, 155 P.3d 1166, 1174 (Idaho 2007) (citing *McPheters v. Maile,* 64 P.3d 317, 321 (Idaho 2003). "An agreement is the foundation of a conspiracy charge and there

---

[14] If anything, by guaranteeing the loan, AIA owed a fiduciary duty to GemCap, not the other way around.

[15] Defendants argued also, to the extent the Court finds Miesen failed to properly plead a claim for fraud against them, the lack of a fraud claim renders his conspiracy claim against Defendants futile. (Dkt. 185 at 14.) Because the Court finds above that the proposed third amended complaint sufficiently states a fraud claim against Defendants, the Court need not address this argument.

**MEMORANDUM DECISION AND ORDER - 29**

must be some showing of specific evidence of a plan or agreement to defraud to demonstrate the pendency of the conspiracy at the time the alleged fraud occurred." *Id.*

The proposed third amended complaint alleges that, through various agreements and actions, the Controlling AIA Defendants, CropUSA and/or GemCap:

> (a) conspired to defraud AIA and were members of the conspiracy at relevant times; (b) provided a substantial act and/or a substantial effect in furtherance of the conspiracy against AIA in Idaho; (c) are attributable to the acts of one another; and (d) engaged in a pattern of behavior and/or agreements to accomplish unlawful objectives and/or to accomplish a lawful objective in an unlawful manner.

(¶ 219.)

It is clear Miesen is alleging that the goal of the alleged conspiracy was to defraud AIA and its shareholders. The allegations in the proposed third amended complaint (as outlined in the previous section), sufficiently plead with particularity that, at the very least, there was an ongoing agreement between the AIA Defendants and CropUSA to defraud AIA and its shareholders. However, with regard to GemCap, the Court finds the proposed third amended complaint fails to sufficiently allege a plan to defraud AIA and its shareholders.[16] As such, the conspiracy allegation against GemCap is futile.

---

[16] Count V combines civil conspiracy and aiding and abetting fraud as one claim. However, civil conspiracy to commit fraud is distinct from the allegation of civil aiding and abetting fraud. To prove civil conspiracy, there must be a plan or agreement to commit an unlawful objective. *Mannos,*155 P.3d at 1174. On the other hand, to prove aiding and abetting, Miesen must establish the wrongdoer knowingly participated in the underlying tort—in this instance, fraud.

**MEMORANDUM DECISION AND ORDER - 30**

### E.  Cause of action for statutory relief

Defendants contend Miesen's newly alleged claim for statutory relief pursuant to Idaho Code § 30-29-304[17] fails to state a valid cause of action. Defendants contend the statute cited by Miesen does not provide a private cause of action against the Defendants. Miesen disagrees.

At this stage, the Court construes Miesen's claim under I.C. § 30-29-304 as an alternative cause of action to his breach of fiduciary duty and fraud claims. Because the ultimate fate of Miesen's breach of fiduciary duty and fraud claims is uncertain, determining whether Miesen can set forth a claim pursuant to I.C. § 30-29-304 is not yet ripe for the Court's consideration.

## III.  Bad Faith

Defendants argue Miesen's third motion to amend is brought in bad faith. In support of this argument, Defendants contend that the form, length, and allegations in the proposed amended complaint fail to comport with Fed. R. Civ. P. 8(a)(2) and

---

[17] The proposed third amended complaint cites two statutes, I.C. § 30-29-304, and its predecessor I.C. § 30-1-304 (repealed). The statutes are nearly identical; as such, the Court will refer to the new statute only, I.C. § 30-29-304, which provides in relevant part:

(1)  Except as provided in subsection (2) of this section, the validity of corporate action may not be challenged on the ground that the corporation lacks or lacked power to act.

(2)  A corporation's power to act may be challenged:

(a)  In a proceeding by a shareholder against the corporation to enjoin the act;

****

(3) In a shareholder's proceeding under subsection (2)(a) of this section to enjoin an unauthorized corporate act, the court may enjoin or set aside the act, if equitable and if all affected persons are parties to the proceeding, and may award damages for loss, other than anticipated profits, suffered by the corporation or another party because of enjoining the unauthorized act.

**MEMORANDUM DECISION AND ORDER - 31**

(d)(2)'s requirement that the complaint contain "a short and plain statement of the claim," and that "[e]ach allegation must be simple, concise, and direct." Defendants argue the proposed third amended complaint is anything but simple and direct; rather, it is a laundry list of the most significant transactions taken by the Defendants since the 1990s. In essence, Defendants argue Miesen added too much meat to what they contend is a bare bones complaint alleging fraud.

While the proposed amended complaint does assert a laundry list of alleged conduct and transactions, Miesen has provided sufficient factual allegations in support of his claims and alleged injuries (subject to the Court's ruling above). Accordingly, the Court does not find that Miesen's motion to amend his complaint was made in bad faith.

With regard to Defendants' request to limit the page-count of the complaint,[18] the Court finds such limitation would be inappropriate considering the complexity of this shareholder derivative action, in addition to the years of alleged misconduct by Defendants.[19]

---

[18] In support of its request to limit Miesen's motion to 30 pages, Defendants cited to *California Coal. for Families & Children v. San Diego Cty. Bar Ass'n*, 657 F. App'x 675, 677 (9th Cir. 2016). The circumstances in that case, however, are distinguishable from this matter. There, the Court ordered that amendment to a pro se complaint regarding a family law dispute must comply with Rule 8 and must be less than 30 pages; the pro se plaintiff did not comply with the Court's orders and the district court dismissed the complaint.

[19] This "length" issue raised by Defendants was apparently one of the reasons Miesen filed the McDermott declaration in support of his reply memorandum. McDermott's opinions on this issue do invade the Court's province, and thus, his opinions were not considered in this portion of the Court's determination regarding bad faith. However, the Court did consider the fact that McDermott has been retained to and has formed opinions that purportedly support some of these claims in this action. The Court is not, however, ruling on a further commenting presently as to whether those opinions are and will be admissible.

**MEMORANDUM DECISION AND ORDER - 32**

IV.   **Undue Delay and Previous Complaints**

Defendants contend Miesen has unduly delayed bringing claims related to the loan guarantee between AIA and GemCap. Miesen's proposed third amended complaint contains new allegations that the AIA Board of Directors improperly authorized AIA to guarantee CropUSA's loan from GemCap in 2011-2012. (Dkt. 182-2 at 39.) Defendants contend Miesen and other AIA shareholders knew or should have known about the loan agreement between GemCap, AIA, and Crop USA, when suit was filed in California pertaining to the loan, and therefore could have moved to amend the complaint to include these claims sooner.

"The Ninth Circuit's test for undue delay does not appear to consider technical filing deadlines but rather inquires 'whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.' *Boskoff v. Yano*, 217 F. Supp. 2d 1077, 1093 (D. Haw. 2001) (citing *Jackson v. Bank of Hawaii,* 902 F.2d 1385, 1388 (9th Cir.1990)). However, a finding of undue delay by itself, is insufficient to permit denial of a motion to amend a pleading. *See Bowles v. Reade,* 198 F.3d 752, 758 (9th Cir.1999). "A specific finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment is necessary." *Boskoff*, 217 F. Supp. 2d at 1093 (citing *Bowles,* 198 F.3d at 758).

During the hearing, counsel for Miesen represented that Miesen and the other AIA shareholders were aware of the GemCap settlement agreement in the California lawsuit sometime in late 2014. (Dkt. 208 at 17.)  Counsel explained, during that time, this matter was stayed. The AIA shareholders attempted to file a separate action in northern Idaho in

**MEMORANDUM DECISION AND ORDER - 33**

state court to address the same issue, but that action was stayed also "because of the California intervention." (*Id.*) Counsel explained further that he would have filed a motion to amend earlier, but he chose to wait for John Taylor to provide certain financial information requested by the shareholders, expecting that the financial information might contain other grounds to amend. Counsel explained he was trying to avoid filing serial motions to amend.

This matter was stayed on November 5, 2013—the Court did not lift the stay until February 2, 2016. (Dkt. 96, 112.) Prior to the stay being lifted, it does not appear that Miesen or any of the other AIA shareholders had demanded the AIA board of directors to look into the conduct related to the GemCap settlement agreement, as the June 13, 2016 demand letter addresses that matter. Counsel could not have moved to amend the complaint until 90 days after he served the demand letter, or until AIA responded to the demand. John Taylor responded to the demand letters on behalf of AIA on September 12, 2016. During a hearing on October 24, 2016, Miesen's counsel informed the Court of his intent to file a motion for leave to amend to include GemCap as a party and allege claims against the Defendants and GemCap. Miesen filed the instant motion to amend on November 4, 2016.

While Miesen likely could have filed his demand on the AIA board of directors sooner (and probably while this action was stayed), Miesen's reason for waiting to move to amend as he awaited the receipt of AIA documents was reasonable. However, even if the delay here was undue, other factors do not support denying amendment of the complaint for a third time.

MEMORANDUM DECISION AND ORDER - 34

## V.    Prejudice

Defendants contend prejudice would result if the motion to amend is granted because the amendment would subject Defendants "to a case of sprawling and amorphous scope…prejudicing Defendants' ability to marshal the evidence and mount a defense." (Dkt. 185 at 17.)

Regarding prejudice to Defendants, the Court again considers the timing of Miesen's motion, the posture of the litigation, and the impact of delay that would be caused by the need for further discovery. The Court considers also whether amendment is consistent with the underlying purpose of Rule 15(a), to: "facilitate decisions on the merits, rather than on technicalities or pleadings." *In re Morris*, 363 F.3d 891, 894 (9th Cir. 2004).

This matter has been pending just shy of seven years—since August 11, 2010. Perhaps more unusual than the long-pending length of this case is the fact that discovery is in its beginning stages; the factual discovery deadline is February 1, 2018. (Dkt. 191.) The added factual allegations and clarifications in the proposed third amended complaint will not delay the litigation by necessitating additional time to conduct discovery, as the parties have plenty of time to participate in discovery before the February 2018 deadline. While the Court understands Defendants' concern regarding the scope of the litigation, the Court is confident the parties can meet and confer to develop a discovery plan tailored specific to this matter, to help narrow the scope of discovery. In addition, the proposed amended complaint's clarification of already existing claims advances Rule 15(a)'s purpose.

MEMORANDUM DECISION AND ORDER - 35

With regard to the newly alleged claims, the Court looks to Fed. R. Civ. P. 15(d) that allows supplementation of a complaint by adding causes of action related to events that have occurred since the original complaint was filed. *Eid v. Alaska Airlines, Inc.,* 621 F.3d 858, 874 (9th Cir. 2010). However, "[w]hile leave to permit supplemental pleading is favored, it cannot be used to introduce a separate, distinct and new cause of action." *Planned Parenthood of S. Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (internal quotations omitted). The goal of Rule 15(d) is to promote judicial efficiency. *Planned Parenthood S. Ariz. v. Neely,* 130 F.3d 400, 402 (9th Cir. 1997). This goal is not satisfied where leave to amend would result in significant delays.

Counsel for Miesen explained during the hearing that the conduct alleged in the proposed third amended complaint consists of "ongoing broad, and ongoing waste of assets to serve [Defendants] and to deplete AIA['s resources]." (Dkt. 208 at 23.) Put another way, the new allegations are just another layer to the Defendants' ongoing conduct or misconduct.

The Court agrees that the newly alleged causes of action relate to the events that have happened since the original complaint was filed, and allowing these new allegations to be added to this lawsuit promotes judicial efficiency. Accordingly, the Court finds no prejudice would result in allowing Miesen to amend his complaint to allege the new claims (subject to the Court's ruling above regarding the fraud and civil conspiracy to commit fraud claims against certain parties).

**MEMORANDUM DECISION AND ORDER - 36**

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendant's Motion to Strike the Declaration of Richard T. McDermott (Dkt. 196) is **granted in part and denied in part**;

2) Plaintiff's Motion to Amend and Supplement the Complaint (Dkt. 182) is **granted in part and denied in part**;

3) Plaintiff must file his proposed third amended complaint ***no later than* May 1, 2017**, in the same form and with the same content as proposed in Dkt. 182-2;

4) To the extent the Court has found Plaintiff's proposed fraud claim (Count IV) against CropUSA and GemCap, and the proposed conspiracy to commit fraud claim (Count V) against GemCap to be futile, these Defendants need not answer or file a responsive pleading as to such claims;

5) The parties (to include GemCap) are instructed to **meet and confer in person** to develop an operative **discovery plan** ***no later than* June 5, 2017**. The Court's discovery plan form may be found on the District Court's website, www.id.uscourts.gov, under "Forms."[20] The joint discovery plan must be filed with the Court ***no later than* June 12, 2017**; and

---

[20] The URL address to access the Court's forms may be found here: http://id.uscourts.gov/district/forms_fees_rules/Civil_Forms.cfm

**MEMORANDUM DECISION AND ORDER - 37**

6)      A **telephonic status conference** for this matter is set for **July 10, 2017** at

10:00 a.m. MST. Plaintiff to initiate the call, once all parties are on the line,

connect to the Courtroom at (208) 334-9945.

Dated: **April 21, 2017**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 38**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc., <br><br> Plaintiff, <br><br> v. <br><br> CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 1:10-cv-00404-CWD <br><br> **MEMORANDUM DECISION AND ORDER (DKT. 241; DKT. 220)** |

**1-ER-58**

## INTRODUCTION

Pending before the Court are two related motions: Plaintiff Dale L. Miesen's Motion for Relief under Federal Rules of Civil Procedure 12(d) and 56(d) (Dkt. 241), and Defendant Gem Cap I, LLC's Motion to Dismiss Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (Dkt. 220.)

The motions are ripe for the Court's consideration. All parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 20 U.S.C. § 636(c). (Dkt. 260.) The parties filed responsive briefing, and the Court conducted a hearing on September 6, 2017, at which the parties appeared and presented their arguments. After carefully considering the parties' written memoranda, relevant case law, and the parties' arguments, for the reasons that follow, the Court will deny Plaintiff's motion for relief and will grant in part and deny in part Defendant's motion to dismiss.

## PROCEDURAL AND FACTUAL BACKGROUND

The original complaint in this matter was filed on August 11, 2010. (Dkt. 1.) Donna J. Taylor and Dale L. Miesen filed the suit on behalf of themselves and the other shareholders of AIA Services, Inc., and its wholly-owned subsidiary, AIA Insurance (together "AIA entities"). Taylor was later removed from the lawsuit because her citizenship destroyed complete diversity as required by 28 U.S.C. § 1332—enabling this Court to continue to exercise subject matter jurisdiction.

**MEMORANDUM DECISION AND ORDER – 1**

**1-ER-59**

The complaint was filed against numerous managers and directors of the AIA entities (herein "AIA controlling defendants"), the AIA entities, and other individuals and entities. GemCap I, LLC (GemCap) first entered this lawsuit by filing a motion to intervene on July 18, 2016. (Dkt. 14.) The intervention was for a sole purpose—to seal a settlement agreement to which GemCap was a party that was attached as an exhibit to a declaration filed by Miesen's attorney. (Dkt. 128.)[1] GemCap was added as a party on April 24, 2017, with Miesen's filing of the Third Amended Complaint. (Dkt. 211.)

GemCap's inclusion in this long-running controversy stems from a $10 million line of credit it extended to Defendant CropUSA Insurance Agency Inc., and its wholly-owned subsidiary, Defendant CropUSA Insurance Services, LLC (together "CropUSA entities"). Security for the line of credit was provided by the AIA entities.

GemCap and the AIA entities entered into two loan guarantees related to the line of credit. The first—November 23, 2011, secured a lesser portion of the line of credit, and the second—October 1, 2012, secured the entire $10 million. In this suit, Miesen claims these two loan agreements were not authorized as required by the AIA entities' governing documents. (Dkt. 211 at 37.) According to the Third Amended Complaint, GemCap recorded its associated security interest in the AIA entities on December 20,

---

[1] Exhibit B to the Declaration of Roderick C. Bond Re: Court's Order to Meet and Confer, filed April 26, 2016.

**MEMORANDUM DECISION AND ORDER – 2**

2012, by filing a UCC financing statement with the Idaho Secretary of State. [2] Although the existence and validity of the UCC financing statement is not disputed, Miesen claims the AIA minority shareholders were not notified of this filing, and as with the two loan agreements, it was not authorized. (Dkt. 211 at 37.) In turn, GemCap alleges the filing of the financing statement was itself sufficient to put the AIA minority shareholders on notice of the guarantee agreements.

The CropUSA entities defaulted on their loan payments, and on July 30, 2013, GemCap filed a lawsuit in federal court in California to collect on the loan guarantee agreements. *GemCap Lending I, LLC v. CropUSA Ins. Agency, Inc.*, No. 2:13-cv-05504-SJO-MAN (C.D. Cal.) (herein "GemCap lawsuit"). The action was terminated when the parties, including GemCap and several other entities and persons also party to this litigation, entered into a settlement agreement (herein "Settlement Agreement") regarding the loan guarantees.

The determination of when the AIA minority shareholders knew about the loan guarantees and the Settlement Agreement between the AIA entities and GemCap is of key importance to the motions before the Court.

---

[2] The Third Amended Complaint quotes the statement, which stated the AIA entities pledged, "[a]ll of each of Debtor's right, title and interest, whether now existing or hereafter acquired, in and to all assets of such Debtor, wherever located, whether tangible or intangible, and the proceeds and products therefor." (Dkt. 211 at 37.)

**MEMORANDUM DECISION AND ORDER – 3**

It is clear the AIA Services minority shareholders learned about the GemCap lawsuit soon after its filing in California. At the September 6, 2017 hearing on these motions, Miesen's attorney confirmed that certain AIA minority shareholders knew about the GemCap lawsuit by August of 2013.

The minority shareholders also learned about the Settlement Agreement prior to its execution. As set forth in the Third Amended Complaint, the shareholders communicated to GemCap that the guarantees and proposed Settlement Agreement "were unauthorized [by the shareholders] and illegal and that AIA was not being properly operated." (Dkt. 211 at 39.)

The Settlement Agreement has an effective date of September 15, 2014. However, according to the Third Amended Complaint, the contents of the Settlement Agreement show it was finalized after the effective date and likely executed on or around January 9, 2015.

In the Third Amended Complaint, Miesen asserts the following primary claims against GemCap: that GemCap aided and abetted the AIA controlling Defendants in breaching their fiduciary duties (Count 2); that GemCap aided and abetted the AIA controlling Defendants to commit fraud (Count 5); and that GemCap violated the Idaho Consumer Protection Act (ICPA) by entering into the two loan guarantees and the Settlement Agreement (Count 10). Miesen asserts two derivative claims: declaratory judgment that the guarantees and Settlement Agreement were not lawful (Count 7); and

**MEMORANDUM DECISION AND ORDER – 4**

statutory relief under Title 30, Chapter 29, Section 304 of the Idaho Code (Count 8).[3] This code section allows shareholders to challenge a corporation's alleged *ultra vires* acts, and if successful, provides shareholders a right to enjoin or reverse the acts and collect damages. Idaho Code § 30-29-304(1)(a).

GemCap filed the instant motion to dismiss all of Miesen's claims, arguing Counts 2, 5, and 10 are barred by the applicable statutes of limitation, and as derivative claims, Counts 7 and 8 should be dismissed on the same bases.

STANDARDS OF LAW

1.      **Motion to Dismiss**

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a party's claim for relief. A 12(b)(6) motion may be based on the expiration of the applicable statute of limitations period for the claims asserted in the complaint. Review of the merits of the 12(b)(6) motion is limited to the face of the complaint. A court's inquiry is whether the allegations in the pleading are sufficiently set forth. The plaintiff need only present a "short and plain statement of the claim" that shows the plaintiff is entitled to relief and that provides the defendant with fair notice of the grounds for the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2).

---

[3] Previously codified as Idaho Code § 30-1-304.

**MEMORANDUM DECISION AND ORDER – 5**

Upon review of a complaint pursuant to a Rule 12(b)(6) motion, a court must accept all non-conclusory factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). And a court must draw all reasonable inferences in favor of the plaintiff. *Mohamed v. Jeppsen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009).

**2.      Materials Outside the Pleadings; Motions to Take Judicial Notice**

If either party submits materials outside the pleadings in support of or in opposition to a Rule 12(b)(6) motion to dismiss, and a court relies on those materials, the motion to dismiss must be converted to a motion for summary judgment Fed. R. Civ. P. 12(d) and 56(c)(2); *Anderson v. Angelon*, 86 F. 3d 932, 934 (9th Cir. 1996); *Ross v. Ada County*, 730 F. Supp. 2d 1237, 1244 (D. Idaho 2010).

However, a court may take judicial notice of certain documents and facts without converting the motion. Examples of taking judicial notice include noting that a document was signed by a particular person or on a particular date, or that a hearing simply took place. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); Fed. R. Evid. 201(b).

And a court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994); *See also Biondo v. Kootenai Hosp. Dist.*, No. 1:17-CV-00039-BLW, 2017 WL 2198186, at *2 (D. Idaho May 18, 2017).

**MEMORANDUM DECISION AND ORDER – 6**

Finally, a court may take judicial notice of documents that are submitted as part of the complaint, or documents that are not physically attached to the complaint but that the complaint "necessarily relies" on, so long as their authenticity is not contested. *Lazy Y. Ranch, Ltd. v. Wiggins*, No. CV 06 340 S MHW, 2007 WL 1381805, at *5 (D. Idaho Mar. 13, 2007), aff'd sub nom. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580 (9th Cir. 2008) (citing *Lee*, 250 F.3d at 688).[4]

**3.     Statutes of Limitation**

When a court has subject matter jurisdiction over state law claims based on diversity jurisdiction, a court must apply state law to any substantive issue. 28 U.S.C. §1332; *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). Although statutes of limitation are ordinarily considered procedural, in diversity actions they are considered substantive when outcome-determinative. *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945).

According to Idaho law, civil actions must be commenced within periods prescribed by the Idaho Code except when a specific statute of limitation period is established by another statute. Idaho Code § 5-201. A Court will apply Idaho's four-year "catch-all" when no statute of limitation period is specified or otherwise established. Idaho Code § 5-244.

---

[4] In this matter, the Court is not taking judicial notice of any of the documents submitted by either party in relation to GemCap's motion to dismiss. Although the Court references the UCC financing statement and its contents, such information is expressly set forth in the complaint. The Court includes this recitation of the law for clarity as the parties did submit outside materials and the issue has been directly raised by Miesen's present motion for relief.

**MEMORANDUM DECISION AND ORDER – 7**

When multiple claims are set forth in a complaint, a court must separately examine the claims to determine the statute of limitations for each claim. *Barnett v. Aetna Life Ins. Co.*, 580 P.2d 849, 852 (Idaho 1978). Therefore, for the Court to rule on GemCap's motion to dismiss, the Court must determine the applicable statute of limitations for each of the asserted claims and determine the accrual date for the applicable statutes of limitation. The Court measures the accrual date against the date the statutes of limitation tolled to determine whether the applicable period has expired.

A.   ***Determining when the Action Commenced – Tolling Date***

Miesen and GemCap dispute the date the action against GemCap "commenced" under Idaho law and effectively tolled the statute of limitation periods. Miesen argues the action commenced on October 31, 2016, when he filed his Motion for Leave to Amend the Second Amended Complaint. (Dkt. 180.) Miesen cites *Terra-West, Inc. v. Idaho Mutual Trust, LLC*, where the Idaho Supreme Court found, for purposes of Idaho's mechanic's lien statute, the action commenced when the plaintiff filed its motion for leave to amend. 247 P.3d 620 (Idaho 2010).

Conversely, GemCap argues the action commenced when Miesen filed the Third Amended Complaint. (Dkt. 211.) GemCap cites *English v. Taylor*, where the Idaho

**MEMORANDUM DECISION AND ORDER – 8**

Supreme Court interpreted Idaho Rule of Civil Procedure 3(a)[5] and held that, "in the context of amended complaints that seek to add new parties to an existing cause of action, it is the filing of the amended complaint itself that commences the proceedings against the new parties…." 378 P.3d 1036, 1044 (Idaho 2016), reh'g denied (Sept. 13, 2016).

The parties are correct that state law applies to determine when a diversity action commences for purposes of tolling the state statute of limitations. *Walter v. Armco Steel Corp.*, 446 U.S. 740, 750-53 (1980). However, contrary to Miesen's argument, the application of *Terra-West's* holding has been expressly limited to the question of when proceedings are commenced under Idaho's mechanics lien statute against existing parties to the action. *DaPron v. Verska*, No. 1:12-CV-00246-EJL, 2013 WL 959335, at *3 (D. Idaho Mar. 12, 2013); *English*, 378 P.3d 1036 at 1043.

In *English*, unlike *Terra-West*, the party added through the amended complaint was a new party being brought into the action for the first time *English*, 378 P.3d 1036 at 1044. The Idaho Supreme Court likened adding a completely new party to an existing action to filing a third party complaint. *Id*. The Idaho Supreme Court cited *Griggs v.*

---

[5] Idaho Rule of Civil Procedure 3(a) was amended May 5, 2017, effective July 1, 2017. The old rule read: "[a] civil action is commenced by the filing of a complaint petition or application with the court." The amendment changed the text of 3(a) and moved a very similar, yet different provision to 3(b). Those sections currently read: "(a) Form of Action. There is one form of action to be known as "civil action". [sic] (b) Filing of Action. A civil action must be commenced by filing a complaint, petition or application with the court." The difference between the old 3(a) and the new 3(b) is that the "is" was replaced with a "must." However, this revision does not undermine the Idaho Supreme Court's holding in *English*.

**MEMORANDUM DECISION AND ORDER – 9**

*Nash*, which held that, for purposes of third-party complaints, it is the filing of the amended complaint that commences proceedings. 775 P.2d 120 (Idaho 1989).

The Idaho Supreme Court noted that, because the amendment in *Terra-West* involved adding a new claim against a pre-existing party, the same concerns of notice were not implicated as were involved in *English* where the amendment added a new party. Despite using notice to further distinguish *Terra-West*, the rule was clearly set forth: "[I]n the context of amended complaints that seek to add new parties to an existing cause of action, it is the filing of the amended complaint itself that commences proceedings against the new parties, *not* the filing of the motion to amend" (emphasis in original). *English*, 378 P.3d 1036 at 1043.

Although the concerns about notice that were present in *English* are arguably not present here because GemCap inserted itself into the controversy on July 18, 2016, by its own motion to intervene (Dkt. 141), the *English* rule does not hinge on an analysis of whether the party to be added had sufficient notice. GemCap's motion was specifically limited to intervening for the purpose of sealing the Settlement Agreement, which had been included as unsealed Exhibit B to the Declaration of Roderick C. Bond Re: Court's Order to Meet and Confer. (Dkt. 128.)

Procedurally, GemCap *was* a new defendant once Meisen filed the Third Amended Complaint. Thus, for purposes of this analysis, the statutes of limitation as to

**MEMORANDUM DECISION AND ORDER – 10**

the claims asserted against GemCap were tolled with the filing of the Third Amended Complaint on April 24, 2017.

> **B.** *Determining and Applying the Statutes of Limitation*

To determine whether the statutes of limitation as to each claim asserted against GemCap accrued on or before the tolling date of April 24, 2017, the Court will rely solely on facts asserted by Miesen in the Third Amended Complaint. These facts are identified in the following analysis. Although the parties did introduce outside materials to support their respective motions and arguments, the Court did not rely on the outside materials; thus, the motion to dismiss need not be converted to a motion for summary judgment.

Further, although the date the Settlement Agreement was signed is not clearly established in the Third Amended Complaint, the Court may rely on the facts as asserted by Miesen in the Third Amended Complaint that: (a) it had an effective date of September 15, 2014, and (b) was executed on or around January 9, 2015.

The date a cause of action accrues can be a question of law, a question of fact, or both. *See Hayden Lake Fire Prot. Dist. v. Alcorn*, 404, 111 P.3d 73, 89 (Idaho 2005) (overruled on other grounds by *Farber v. Idaho State Ins. Fund*, 272 P.3d 467 (Idaho 2012)). When there is a disputed issue of fact regarding when a cause of action accrues, further discovery is necessary to resolve the issue. *See id.*

**MEMORANDUM DECISION AND ORDER – 11**

i.      *The Aiding and Abetting Breach of Fiduciary Duty Claim*

Breach of fiduciary duty claims, thus aiding and abetting breach of fiduciary duty claims, are subject to a four-year statute of limitations. Idaho Code § 5-224; *Adair v. Radobenko,* No. CV 2002-2952, 2004 WL 2750851, at *2 (Idaho Dist. Ct. Sept. 8, 2004). If the alleged breach of fiduciary duty is based on actions related to a contract or agreement, the statute of limitations begins to accrue when the aggrieved party knew or should have known of the breach (the "discovery rule"). *DBSI/TRI v. Bender*, 948 P.2d 151 (Idaho 1997).

If the alleged breach of fiduciary duty is based on a tort such as fraud, the statute of limitations begins to accrue upon the first tortious act. *Jones v. Runft, Leroy, Coffin & Matthews, Chtd.*, 837 P.2d 861 (Idaho 1994); *Adair v. Radobenko* at *4 (explaining the differing standards the Idaho Supreme Court has defined for contract-based and fraud-based breach of fiduciary duty claims).

Here, Miesen alleges GemCap aided and abetted the AIA controlling defendants' breaches of fiduciary duty because GemCap knew the AIA controlling defendants' acts constituted such breaches, they substantially participated in such breaches, and did not disapprove, seek to disclose or seek to prevent such breaches, and they assisted in the concealment of such breaches from the AIA minority shareholders. (Dkt. 211 at 60.)

Miesen alleges GemCap knew or should have known the AIA controlling defendants had breached their fiduciary duties when GemCap entered into the guarantees,

**MEMORANDUM DECISION AND ORDER – 12**

and Settlement Agreement. (*Id*. at 35-6.) However, Miesen alleges the AIA minority shareholders were not notified of either the loan agreements, nor the Settlement Agreement, until August of 2016—rendering them unable to bring a claim against GemCap until that date. (Dkt. 211 at 41.)

Conversely, GemCap argues the AIA minority shareholders knew or should have known of the loan guarantees as of the date each guarantee was entered into, as shareholders have a right to inspect the business records of a corporation. In the alternative, GemCap argues the AIA minority shareholders were on notice of the loan guarantees when GemCap filed the UCC financing statement with the Idaho Secretary of State on December 20, 2012.

GemCap argues the discovery rule should not apply in this case and that the filing of the UCC financing statement was enough to put the AIA minority shareholders on notice of the two loan guarantees. In support of its argument, GemCap cites a case where the Idaho Supreme Court found that the discovery rule did not apply to public governmental information. *Hayden Lake Fire Prot. Dist. v. Alcorn*, 404, 111 P.3d 73, 89 (Idaho 2005) (overruled on other grounds by *Farber v. Idaho State Ins. Fund*, 272 P.3d 467 (Idaho 2012)). In *Hayden*, the controversy surrounded certain real estate investments the Idaho State Insurance Fund made with the State of Idaho. *Id*. at 76. Each of the investments was approved by the Ada County District Court. *Id*. at 89. The Idaho Supreme Court found that the discovery rule for breach of contract claims did not apply

**MEMORANDUM DECISION AND ORDER – 13**

where each real estate transaction was publically approved and where there were open public records of such approvals. *Id*. at 90.

GemCap equates the reasoning in *Hayden* with another decision by the Idaho Supreme Court, *Chapin v. Stewart*, 230 P.2d 998 (Idaho 1951). In *Chapin*, the Idaho Supreme Court noted, "[t]he general rule in this jurisdiction is that the recording of an instrument affecting the title to real property constitutes constructive notice to all parties interested, of the contents, and the estate claimed thereby." *Id*. at 1000. The issue in *Chapin* concerned whether the statute of limitations had run regarding property that had been adversely possessed. The court found it did not matter that the heirs had no actual knowledge of the adverse possession, because "they had the means of acquiring that knowledge, as the deed conveying the title … was of record during all that time in the office of the county recorder of Ada county, where said lots were situated." *Id*. at 1001.

However, the year after *Chapin* was decided, the Idaho Supreme Court softened the line when it came to those protected by a fiduciary relationship. *Gerlach v. Schultz*, 244 P.2d 1095 (Idaho 1952). In such cases, "there is no reason to anticipate unfaithfulness on the part of one who stands in a fiduciary relationship and when this is so the obligation to search records is relaxed." *Id*. at 1099.

Given *Gerlach*, it is unlikely the minority shareholders had an affirmative duty to search public records, such as UCC financing statement records, to see if the company they were invested in breached its fiduciary duties. As in *Gerlach*, there "was no reason

**MEMORANDUM DECISION AND ORDER – 14**

to anticipate unfaithfulness." Thus the theory that the UCC financing statement –filed by GemCap and not AIA– could serve as constructive notice of the AIA controlling defendants' breach of fiduciary duty is unfounded.

Therefore, if the filing of the UCC financing statement is insufficient to show the AIA minority shareholders knew or should have known of the alleged breach of fiduciary duty in connection with the loan guarantees, the Court must determine if there are other facts alleged in the Third Amended Complaint that clearly demonstrate a date the minority shareholders knew or should have known such facts.

Miesen alleges that, "[a]fter certain AIA Services' shareholders learned of the GemCap lawsuit in California, GemCap was advised that AIA Guarantees and the Settlement Agreements[6] were unauthorized and illegal and that AIA was not being properly operated." (Dkt. 211 at 39.) This fact was affirmed by Miesen's counsel during the September 6, 2017 hearing on these motions.

Therefore, the statute of limitations likely started running sometime in August of 2013, when the aggrieved party, the AIA minority shareholders, knew or should have known of the breach of fiduciary duty because of their knowledge of the GemCap lawsuit. Applying the four-year period, the statute of limitations likely expired in August of 2017. Thus, any claims related to aiding and abetting breach of fiduciary duty that are

---

[6] The Third Amended Complaint suggests there may have been more than one settlement agreement. (Dkt. 211.)

**MEMORANDUM DECISION AND ORDER – 15**

connected to breach of contract or agreement did not expire prior to April 24, 2017, when the Third Amended Complaint was filed.

Finally, given the facts above, it is clear that the first allegedly tortious act occurred when GemCap entered into loan guarantee one on November 23, 2011. Therefore, the statute of limitations on any tort-based aiding and abetting breach of fiduciary duty claims expired on or around November 23, 2015.

###### ii.     *The Aiding and Abetting Fraud Claim*

Fraud claims, and thus aiding and abetting fraud claims, are subject to a three-year statute of limitations. Idaho Code § 5-218(4). The period begins to accrue when the aggrieved party discovers facts constituting the fraud (the "discovery rule").

As outlined above, at the very latest, the minority shareholders discovered facts constituting the alleged fraudulent concealment of the loan guarantees shortly after GemCap filed its lawsuit – in August of 2013. Therefore, the statute of limitations on the aiding and abetting fraud claim expired in August of 2016.

###### iii.     *The Idaho Consumer Protection Act Claim*

Idaho Consumer Protection Act (ICPA) claims are subject to a two-year statute of limitations after the cause of action accrues. Idaho Code § 48-619. The cause of action accrues when the alleged act in violation of the ICPA occurred.

Here, the alleged act in violation of the ICPA was GemCap entering into the Settlement Agreement with the AIA entities and others. (Dkt. 211 at 73.) The Settlement

**MEMORANDUM DECISION AND ORDER – 16**

**1-ER-74**

Agreement has an effective date of September 15, 2014. Miesen alleges it was not signed until around January 9, 2015. However, using either date, it is clear the statute of limitations on the ICPA claim expired prior to the filing of the Third Amended Complaint on April 24, 2017.

        iv.    *The Statutory Relief Claim*

Section 29-304 of Title 30 of the Idaho Code does not specify a statute of limitations. Therefore, as with other claims without specified statutes of limitations, these claims are subject to Idaho's four-year catch all statute of limitations; or, following the rules regarding derivative claims, subject to the statute of limitations period for the type of act at the heart of the claim. In this instance, it is arguable that the heart of this claim against GemCap is either related to aiding and abetting breach of fiduciary duty—subject to a four-year statute of limitations—or to aiding and abetting fraud—subject to a three-year statute of limitations.

Under this claim, Miesen asks the Court to set aside the guarantees, the Settlement Agreement, or both as *ultra vires* acts. Therefore, the relevant dates are the dates each of these documents were effective or executed: November 24, 2011, for loan guarantee one; October 1, 2012, for loan guarantee two; and, either September 15, 2014, or January 9, 2015, for the Settlement Agreement. As to the Settlement Agreement, it is clear that the statute of limitations did not run by April 24, 2017, using either date and under either a three-year or four-year timeframe.

**MEMORANDUM DECISION AND ORDER – 17**

However, under either potential timeframe, it is also clear the statute of limitations has run for Miesen's statutory relief-based claims related to loan guarantee one and loan guarantee two.

> v.     *The Request for Declaratory Relief*

The code section authorizing and governing declaratory judgments does not specify a statute of limitations. Idaho Code § 10-1200. Therefore, as above, the statute of limitations is either the four-year catch-all or that of the act that is the heart of the request for relief. *See Guzman v. Piercy*, 318 P.3d 918, 930-32 (Idaho 2014).

Miesen seeks to have the loan guarantee agreements and Settlement Agreement declared void as unlawful. The heart of the claim is that GemCap knew or should have known the AIA controlling Defendants did not have authority to enter into the guarantees or Settlement Agreement. These requests for declaratory judgment logically flow from the aiding and abetting of breach of fiduciary duty claim and the aiding and abetting fraud claim. The statutes of limitation for declaratory relief follow those set forth above for each type of relief requested. Therefore, requests for declaratory relief regarding breach of fiduciary duty under the discovery rule have not expired; and requests for declaratory relief regarding breach of fiduciary duty related to fraud have expired and are time-barred.

**MEMORANDUM DECISION AND ORDER – 18**

## CONCLUSION

In sum, the following claims accrued prior to April 24, 2017, and are hereby dismissed as to GemCap: aiding and abetting breaches of fiduciary duty as related to torts such as fraud; aiding and abetting fraud; Idaho Consumer Protection Act claims; and Statutory relief under Idaho Code § 30-29-304 for alleged *ultra vires* acts related to loan guarantee one and loan guarantee two.

The following claims are likely not time-barred—aiding and abetting breaches of fiduciary duties as related to contract-based claims; statutory relief pursuant to Idaho Code § 30-29-304 for alleged *ultra vires* acts related to the Settlement Agreement; and declaratory judgment as to any claims not time-barred. If GemCap discovers facts that contradict the allegations in the Third Amended Complaint regarding when the minority shareholders first knew, or should have known, about the allegedly unauthorized loan guarantees between GemCap and the AIA entities in November 23, 2011, and October 1, 2012, GemCap may file the appropriate motion and supporting materials for the Court to reconsider whether the aiding and abetting breach of fiduciary duty claim is time-barred.

## ORDER

**NOW THERFORE IT IS HEREBY ORDERED:**

1) Defendant's Motion to Dismiss is **DENIED in part** and **GRANTED in part**;

2) Plaintiff's Motion for Relief is **DENIED**.

Dated: **September 26, 2017**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER – 19**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc..<br><br>Plaintiff,<br><br>v.<br><br>HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership, et al.,<br><br>Defendants. | Case No. 1:10-CV-00404-DCN-CWD<br><br>**ORDER RE: MOTION TO MODIFY CASE MANAGEMENT ORDER DEADLINES (DKT 989)** |

Before the Court is Plaintiff's motion to modify the case management order requesting an extension of the deadlines for fact discovery, expert witness discovery, and dispositive motions. (Dkt. 989.) The motion is fully briefed and ripe for consideration. (Dkt. 999, 1000, 1002, 1021.) Having carefully reviewed the parties' briefing and the entire record herein, the Court finds as follows.

### DISCUSSION

Plaintiff seeks to extend the case management deadlines for fact discovery, expert witness discovery, and dispositive motions by at least sixty (60) and, preferably, ninety (90) days due to delays related to the coronavirus (COVID-19) pandemic. (Dkt. 989,

ORDER - 1

**1-ER-78**

1021.) While Defendants generally agree that some extension of the deadlines is warranted, each of the respective Defendants filed separate responses concerning the appropriate length and scope of the extensions. (Dkt. 999, 1000, 1002.)

The Hawley Troxell Defendants argue the deadline for completing fact discovery should be extended only to early August and limited to the fact witness depositions remaining to be taken. (Dkt. 999.) They further argue Plaintiff's requested extensions of the deadlines for expert discovery and dispositive motion are excessive. (Dkt. 999.) The Taylor Defendants do not oppose a sixty (60) day extension for expert discovery, dispositive motions, and fact discovery, provided fact discovery is limited to the depositions remaining to be taken. (Dkt. 1000.) Defendant Reed Taylor does not oppose the motion and suggests a ninety (90) day extension is reasonable. (Dkt. 1002.)

The Court finds good cause has been shown to grant a limited extension of the case management deadlines as stated herein. In particular, the deadline for completing fact discovery is extended only as to the particular depositions listed below. The motion will be denied to the extent it requests a general continuance of the deadlines.

## ORDER

THEREFORE IT IS HEREBY ORDERED that the Motion to Modify the Case Management Order (Dkt. 989) is GRANTED IN PART AND DENIED IN PART. The Case Management Orders (Dkt. 843, 865, 943) are AMENDED as follows:

1)      Fact discovery, including non-expert depositions, for GemCap's Rule 30(b)(6) designee, Connie Taylor Henderson, AIA/CropUSA Entities' Rule 30(b)(6)

ORDER - 2

**1-ER-79**

designee(s), and Dale L. Miesen, is extended to and must be concluded by **September 30, 2020**.

2)      Expert discovery, including depositions, must be concluded by **October 30, 2020**.

3)      Any and all dispositive motions are due **January 29, 2021**.

DATED: July 30, 2020

Honorable Candy W. Dale
United States Magistrate Judge

ORDER - 3

**1-ER-80**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc., | Case No. 1:10-cv-00404-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER REGARDING TWO MOTIONS (DKTS. 1068, 1069)** |
| v. | |
| HAWLEY TROXELL ENNIS & HAWLEY LLP, et al., | |
| Defendants, | |
| and | |
| CROP USA INSURANCE SERVICES, LLC, et al., | |
| Defendants/Third-Party Plaintiffs, | |
| v. | |
| REED TAYLOR, an individual, | |
| Third-Party Defendant. | |

## I. INTRODUCTION

Pending before the Court are two Motions to Exclude Miesen's expert witness Richard McDermott. Dkts. 1068, 1069. McDermott is a lawyer and law professor. In short, the first motion advances a theory that McDermott has become an advocate instead of an

MEMORANDUM DECISION AND ORDER - 1

expert witness and must be excluded from testifying under Federal Rules of Evidence 403 and 702. *See generally* Dkt. 1068. The second motion involves whether McDermott is improperly providing expert testimony on a contingency fee basis and whether that would also require his exclusion as an expert witness. *See generally* Dkt. 1069. Defendants Hawley Troxell Ennis & Hawley LLP, Gary D. Babbitt, D. John Ashby, and Richard A. Riley's ("the Hawley Troxell Defendants") filed both motions.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *United States v. Alatorre*, 222 F.3d 1098, 1100 (9th Cir. 2000) ("[T]rial courts are not compelled to conduct pretrial hearings in order to discharge the gatekeeping function.").

For the following reasons, the Court finds good cause to GRANT the first Motion to Exclude (Dkt. 1068) and DENY as MOOT the second Motion to Exclude (Dkt. 1069).

## II. LEGAL STANDARD

The party who seeks to introduce expert testimony evidence must show by a preponderance of the evidence that the testimony is admissible under Federal Rule of Evidence 702. *See* Fed. R. Evid. 104(a); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 & n.10 (1993); *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987). In *Daubert*, the Supreme Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony. 509 U.S. at 597. In *Kumho Tire Co. v.*

*Carmichael*, the Supreme Court clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science. 526 U.S. 137, 158 (1999). In short, district courts act as gatekeepers to ensure that expert testimony is reliable, relevant, and otherwise admissible before allowing it to be presented at trial. *Daubert*, 509 U.S. at 597.

### III. DISCUSSION

In his responses to the two motions, Miesen raises various preliminary issues, which the Court will address one by one. After explaining why the Court disagrees with Miesen's arguments, the Court will address the substance of the two motions.

### A. Preliminary Issues

First, Miesen contends that McDermott's deposition transcripts that the Hawley Troxell Defendants rely on are inadmissible in this matter because Miesen did not have the opportunity to cross-examine McDermott. However, the Court is not bound by the evidentiary rules at this juncture. "The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a); *Daubert*, 509 U.S. at 592 (noting that, when faced with a proffer of expert testimony, the trial judge must determine whether the expert's proposed testimony is admissible pursuant to Rule 104(a)). The motions at hand relate to whether McDermott is a qualified expert witness and, in turn, whether his testimony is admissible. Some of the Hawley Troxell Defendants' references are to McDermott's deposition testimony, but the majority of the record support for the motions are from McDermott's declarations and expert report. Because the Court is not bound by exclusive evidentiary rules, the Court can and will

MEMORANDUM DECISION AND ORDER - 3

**1-ER-83**

consider the deposition testimony, giving it the weight it deems appropriate.[1]

Miesen then asserts that the motions should be denied because the Hawley Troxell Defendants did not meet and confer with him on these matters. This point is unavailing. The parties were under no obligation to meet and confer prior to filing these motions. The authorities Miesen cites—a local rule and a case—are inapposite. The local rule is focused on fairness and civility and requires parties to work with one another in good faith to resolve disputes; however, it does not require an attempted agreement in every circumstance, and the rule says nothing about whether such an attempt is required prior to filing the types of motions involved in this matter. *See* Dist. Idaho Loc. Civ. R. 83.8(4) (requiring "good faith efforts to resolve by agreement any disputes"). The case Miesen cites is distinguishable. In that case, the court affirmatively "required the parties to meet and confer before filing motions in limine" and, because the parties did not do so, the court summarily denied the motion. *Halbert v. Cty. of S.D.*, No. 07cv1607-L(WVG), 2011 WL 13356067, at *1, 3 (S.D. Cal. June 27, 2011). No such order was imposed here.[2]

Next, Miesen argues that the Hawley Troxell Defendants' allegations are entirely unsupported and should be summarily rejected. The Court disagrees. Both sides have supported their claims and arguments with the record and provide citations to legal authority sufficient to avoid immediate rejection. Indeed, the Hawley Troxell Defendants

---

[1] Miesen's point that he was never able to cross-examine McDermott is well taken and remains in the Court's mind throughout its analysis. That said, the majority of the support for the Court's decision on this matter comes from McDermott's declarations, filed by Miesen, not his deposition testimony.

[2] During this argument, Miesen also tangentially asserts that the Court could handle this matter at trial. While this is true, nothing precludes the Court from resolving the matter before trial.

MEMORANDUM DECISION AND ORDER - 4

have included ample support for their claims by referring to McDermott's declarations, deposition testimony, report, other evidence, and assorted legal authorities.

Lastly, Miesen suggests that the Court should not consider the matters in the Hawley Troxell Defendants' motions that refer to declarations because those references improperly circumvent the memorandum page limits. Both sides have referred to declarations and other extraneous materials, and nothing precludes them from doing so. *See* Dist. Idaho Loc. Civ. R. 7.1(a)(2), (b)(1) (restricting a party's brief to certain page limits). That said, use of references to other documents is disfavored and generally less persuasive than including the material in the brief. Here, the Hawley Troxell Defendant's citations and references to the record were proper and very helpful. Ultimately, the Court has considered both sides' entire briefs.

In short, the Court disagrees with Miesen's preliminary arguments for denying the Hawley Troxell Defendants' motions. Consequently, the Court turns to the first motion.

### B. Has McDermott Assumed the Improper Role of an Advocate?

In their first motion, the Hawley Troxell Defendants seek exclusion of McDermott as an expert witness pursuant to Federal Rules of Evidence 403 and 702. They assert that McDermott's expert testimony, declarations, and report include "inadmissible opinions offered by a lawyer who has taken on the role of advocate and co-counsel for Miesen." Dkt. 1068-1, at 1–2. They claim that this improper lens of advocacy, rather than objective expert witness testimony in this case, makes McDermott's opinions unhelpful to the jury, highly prejudicial, and lacking in probative value. The Court agrees.

"Where an expert becomes an advocate for a cause, he . . . departs from the ranks

MEMORANDUM DECISION AND ORDER - 5

of an objective expert witness, and any resulting testimony would be unfairly prejudicial and misleading." *Elliot v. Versa CIC, L.P.*, 349 F. Supp. 3d 1004, 1006–07 (S.D. Cal. 2018) (cleaned up). This is because "[a]n expert's role is to assist the trier of fact by providing information and explanations; the expert's role is not to be an advocate." *Haldiman v. Cont'l Cas. Co.*, No. CV-13-736, 2014 WL 12670637, at *8 (D. Ariz. Aug. 26, 2014), *aff'd*, 666 F. App'x 612 (9th Cir. 2016). Attorneys are advocates, charged with zealously serving their client's interests. Expert witnesses, on the other hand, are employed to assist the parties in their pretrial preparation, and if called to testify, to give their unbiased opinion to assist the trier of fact in understanding the relevant evidence. *Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1085–86 (C.D. Cal. 2001). "When expert witnesses become partisans, objectivity is sacrificed to the need to win." *Cacciola v. Selca Balers, Inc.*, 127 F. Supp. 2d 175, 184 (E.D.N.Y. 2001) (internal citation omitted).

An example of this principle is contained in *Lippe v. Bairnco Corp.*, 288 B.R. 678 (S.D.N.Y. 2003). There, the court excluded an expert witness because the role the witness played in the case crossed the line from expert to advocate. *Id.* at 689. The court found it would be improper to allow the witness to testify for several reasons: (1) "he would be giving, in essence, a summation from the witness stand"; (2) he was going to testify as to witness credibility; (3) he acted as counsel for the plaintiffs at one point; (4) when he was an expert witness, he "functioned not just as an expert witness providing information, but he carried out the traditional functions of a lawyer-advocate—developing arguments and theories, anticipating and preparing responses to [the] defendants' defenses, and preparing lines of cross examination"; (5) "he acted in a completely partisan manner"; (6) the court

MEMORANDUM DECISION AND ORDER - 6

had "no confidence that [the expert] could limit his testimony to permissible areas" or "sanitize from any testimony his [partisan] views"; and (7) the court doubted that he could "testify with detachment and independence that one would expect from an expert witness offering views as a professional." *Id.* at 688.

Here, numerous pieces of the record bear out that McDermott has assumed the improper role of an advocate masquerading as an expert in this case. Before listing the specific reasons, however, it should be noted that some of these reasons alone would not suffice to cross the line from dedicated and passionate expert to unobjective and partial advocate. In their totality, though, these points demonstrate that McDermott has indeed crossed that line.

Many of McDermott's declarations have been, in substance, supplemental legal briefs that have included legal advocacy rather than expert testimony. Consider the following examples. In an attempt to obtain the Court's leave to file the Third Amended Complaint, McDermott made various arguments for why the Court should do so, including an opinion that the length of the pleading was appropriate and necessary. *See* Dkt. 194-6, ¶ 21. In support of a motion to continue, McDermott instructed the Court that the "attorney-client privilege is generally always waived" when a client sues an attorney and argues it would be unfair to deny access to certain attorney-client communications. *See* Dkt. 403-2, ¶ 26. In an effort to compel discovery, McDermott argued that a party could not assert privilege and work-product protections and that it would be "grossly unfair" for one party not to have to disclose certain information. *See* Dkt. 419-16, ¶ 47. McDermott also opposed the Hawley Troxell Defendants' motion to modify Discovery Master Order No. 1 regarding

MEMORANDUM DECISION AND ORDER - 7

categorical privilege logs, contending that such logs are inappropriate because they do not provide sufficient information to allow him to assess the privilege. *See* Dkt. 493-2, ¶ 4. While these declarations may be proper arguments for counsel to make, they obviously go beyond McDermott's role as an expert, demonstrating that he is, in substance, advocating, and show that he will be too partial to give reliable opinions or help the trier of fact in this case.

Moreover, McDermott's declarations even directly petitioned the Court for procedural concessions and discovery orders as if he were Miesen's counsel. *See, e.g.*, Dkt. 403-2, ¶ 29 (requesting a continuance of other witness's depositions so he could personally attend them); Dkt. 783-2, ¶ 77 (requesting a continuance of the deadline of his report); Dkt. 829-1, ¶ 8 (requesting another continuance).

McDermott has also expressly stated that *he* is pursuing Miesen's claims while advocating for certain documents to be turned over. Dkt. 783-2, ¶ 2 ("In order for me and Mr. Miesen to fully and fairly present his claims . . . it is imperative that we be provided with the opportunity to review *all* of the" withheld documents).

McDermott also stated his belief that evidence he had not yet obtained and had never reviewed would "likely further support," "likely confirm," "likely establish," and "likely reveal" information supporting the claims against the Hawley Troxell Defendants. Dkt. 403-2, ¶ 28. He also argued that, if the Hawley Troxell Defendants "had nothing to hide, they would have readily disclosed all of the privilege and work product information to Miesen because they would want him and this Court to know that they had nothing to hide." Dkt. 783-2, ¶ 63. This shows that he had prejudged in a very partial manner the evidence

MEMORANDUM DECISION AND ORDER - 8

before it was even disclosed.

McDermott also incorporated nearly all the paragraphs of the factual allegations set forth in the Third Amended Complaint "as support for [his] opinions." Dkt. 419-16, ¶ 31. Doing this is backwards (his opinions should objectively support or not support the allegations) and shows that he is seeking to prove a certain set of allegations true rather than opine on his view of the case from a professional and objective perspective.

Additionally, the Court agrees that McDermott's report "comments on virtually every legal and evidentiary issue [he thinks will] unfold before and during trial, including his opinions regarding the law the Court should apply and its interpretation, the merit and viability of claims and defenses, interpretation of evidence, legal issues such as statute of limitations tolling, the conduct of discovery in this case, legal conclusions the jury should reach, and widespread witness credibility assessments." Dkt. 1068-1, at 14–15. This goes beyond an expert report into the realm of legal briefing.

McDermott has also accrued an unpaid six-figure bill, and he has commented on various witness's credibility. *See* Dkt. 1068-1, at 18. These numerous examples are sufficient.

In short, McDermott has assumed a role of advocate rather than expert witness in this case, which leads the Court to preclude him from testifying as an expert for two reasons. First, his opinions do not meet muster under Federal Rule of Evidence 702 because they will not help the trier of fact and are the product of unreliable principles—impassioned and overly biased opinions amounting to advocacy. Second, the probative value of any relevant testimony he were to give would be substantially outweighed by a danger of unfair

MEMORANDUM DECISION AND ORDER - 9

prejudice and misleading the jury, thereby warranting exclusion under Federal Rule of Evidence 403. *See Daubert*, 509 U.S. at 595 (explaining that expert testimony can be "powerful and quite misleading," and "[b]ecause of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than lay witnesses" (cleaned up)).

Nevertheless, Miesen makes several counterarguments. He first attempts to distinguish some of the cases discussed above by repeatedly saying that they do not apply here. To Miesen's credit, some of the cases that the Hawley Troxell Defendants cite do seem less persuasive due to fewer analogous facts, such as *GST Telecommunications, Inc. v. Irwin*, 192 F.R.D. 109 (S.D.N.Y. 2000). But the Court finds the other cases discussed above, their statements of law, and their holdings very persuasive—especially *Lippe*. The principles in those cases are applicable here despite some immaterial distinctions.[3]

Miesen then offers what he deems an example of McDermott's impartiality to illustrate that he is in fact not partisan. He refers to an occasion where McDermott agreed that the agreements tolling the statutory period for claims were void. But this isolated example is an outlier and does not surmount the pool of data entries listed above to the contrary. And it likely does not even prove the point Miesen suggests because McDermott had to opine the agreements were void to maintain consistency with his other opinions that the directors lacked authority to enter agreements. Thus, the opinion does not show impartiality.

---

[3] For instance, although the expert in *Lippe* had arguably more compelling reasons to be excluded, the reasons listed above for excluding McDermott as an expert witness meet the standard.

MEMORANDUM DECISION AND ORDER - 10

Miesen also quotes McDermott himself saying he is not partial and that he is "here to call balls and strikes. I call them as I see them." Dkt. 1097, at 16. However, McDermott's construction of his views and how he has acted in this case is not dispositive. The Court is to assess that question. Moreover, the record belies McDermott's claim of partiality as explained above.

Miesen next argues that McDermott's involvement in the three related cases actually makes him *more* reliable than he otherwise would be. Although this may demonstrate that he is more knowledgeable of the history and facts of these interrelated cases, it does not prove or disprove his objectivity in this matter.

Miesen further asserts that "most of the testimony and opinions contained in [McDermott's] declaration will not even be relevant for trial." Dkt. 1097, at 18. This concession does not remove the partisan lens from McDermott's eye. It also acknowledges implicitly that McDermott delved into matters that he did not need to in this case and diminishes the probative value of McDermott's opinions. More importantly, the assertion does not improve McDermott's objectivity.

Lastly, Miesen "does not disagree that experts should not generally testify regarding" witness credibility, but he suggests that "McDermott can testify without mentioning any of those issues and none of his opinions rely upon those matters." Dkt. 1097, at 19. Even if McDermott were to constrain himself at trial, the damage has been done. He cannot remove the irreversible taint of advocacy from his views or opinions at this point.

In conclusion, McDermott will not be permitted to testify as an expert witness in

MEMORANDUM DECISION AND ORDER - 11

this case. In some cases, there may be a very fine line between passionate expert and improper advocate. It is important to note that "many expert witnesses are biased" and "lack of bias is not required for expert testimony to be admissible." *Lippe*, 288 B.R. at 688. In this case, however, the line of propriety has been crossed. The Court finds good cause to preclude McDermott from testifying as an expert witness under Federal Rules of Evidence 403 and 702. Accordingly, the Hawley Troxell Defendants' motion (Dkt. 1068) is granted.

### C. Is McDermott Being Improperly Paid a Contingency Fee?

In their second motion, the Hawley Troxell Defendants argue that McDermott is improperly receiving compensation for his expert testimony on the basis of a contingency fee. Whether an expert can receive a contingency fee is a hotly disputed question among various jurisdictions. Courts in favor of allowing an expert to receive a contingency fee reason primarily that the nature of the fee can be brought out in cross-examination just as hourly fees are now. Courts opposing an expert receiving a contingency fee reason principally that the expert then has too much to lose to remain even close to objective. *E.g.*, *Straughter v. Raymond*, No. CV 08-2170 CAS (CWx), 2011 WL 1789987, at *2–3 (C.D. Cal. May 9, 2011) (collecting cases).

The State of Idaho has Idaho Rule of Professional Conduct 3.4, comment 4, which states "*The common law rule in most jurisdictions* is that it is improper to pay an occurrence witness any fee for testifying and that *it is improper to pay an expert witness a contingent fee*." This Court tends to agree with what appears to be the common law rule set forth by Idaho: "[I]t is improper to pay an expert witness a contingent fee." However, the Court

need not, and does not, further address or resolve this question because the previous analysis that McDermott may not testify based on his improperly becoming an advocate in this case renders the contingency fee issue moot.

## IV. ORDER

1. The Hawley Troxell Defendants' first Motion to Exclude Expert Richard McDermott (Dkt. 1068) is GRANTED. McDermott may not provide expert testimony in this case because he has improperly assumed the role of advocate, rendering his opinions unhelpful to the jury, unreliable, and unduly prejudicial.

2. The Hawley Troxell Defendants' second Motion to Exclude Expert Richard McDermott (Dkt. 1069) is DENIED as MOOT.

3. The Court's stay from its previous Order (Dkt. 1089) remains in force.

DATED: May 12, 2021

_____
David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 13

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc., <br><br> Plaintiff, <br><br> v. <br><br> HAWLEY TROXELL ENNIS & HAWLEY LLP, et al., <br><br> Defendants, <br><br> and <br><br> CROP USA INSURANCE SERVICES, LLC, et al., <br><br> Defendants/Third-Party Plaintiffs, <br><br> v. <br><br> REED TAYLOR, an individual, <br><br> Third-Party Defendant. | Case No. 1:10-cv-00404-DCN <br><br> **MEMORANDUM DECISION AND ORDER REGARDING TWO MOTIONS (DKTS. 1115, 1116)** |

## I. INTRODUCTION

Pending before the Court are Plaintiff Dale L. Miesen's Motion to Reconsider (Dkt. 1115) and Motion for Oral Argument on the Motion to Reconsider (Dkt. 1116). Miesen asks the Court to reverse its Order (Dkt. 1112) precluding expert Richard McDermott from

MEMORANDUM DECISION AND ORDER-1

testifying in this case. The Court so ordered because it found that McDermott's "opinions did not meet muster under Federal Rule of Evidence 702" as "they will not help the trier of fact and are the product of unreliable principles—impassioned and overly biased opinions amounting to advocacy." *Id.* at 9. The Court also precluded McDermott's testimony because "the probative value of any relevant testimony he were to give would be substantially outweighed by a danger of unfair prejudice and misleading the jury, thereby warranting exclusion under Federal Rule of Evidence 403." *Id.* at 9–10.

Defendants Hawley Troxell Ennis & Hawley LLP, Gary D. Babbitt, D. John Ashby, and Richard A. Riley oppose both motions. Dkt. 1117. Defendants James Beck, Michael Cashman, Connie Henderson, R. John Taylor, Crop USA Insurance Agency, Inc., and Crop USA Insurance Services, LLC join in the opposition. Dkt. 1118.

There are a few reasons the Court will not hold oral argument. First, the Court has reviewed the record and briefs, and the Court finds that the facts and legal arguments are adequately presented. Second, there is the interest of avoiding further delay, and oral argument will not significantly aid the decisional process. Third, the Court did not find oral argument necessary on the original motions related to the issue of excluding McDermott's testimony, much less now on the motion to reconsider. And, lastly, Miesen's Motion to Reconsider is improperly raised. Accordingly, the Court will decide the Motion to Reconsider without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b).

For these reasons, and the those that follow, the Court finds good cause to DENY both motions.

MEMORANDUM DECISION AND ORDER-2

## II. LEGAL STANDARD

Granting or denying a motion for reconsideration is a matter within a district court's discretion. *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). A district court has inherent authority and wide latitude in controlling—among other things—its calendar and docket, as well as its orders and decisions. A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of L.A. v. Santa Monica BayKeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)).

Ultimately, it is the court's duty "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. In certain circumstances, this may mean that a court must reconsider, modify, or even reverse a prior determination. Other times, this means a court must advance a case. Thus, the need to be right must co-exist with the need for progress in a particular case.

Motions to reconsider involve a two-step inquiry. "[A] party must first establish that they have the right to ask for reconsideration; that is to say, they must establish that one or more of the limited grounds for reconsideration are present. If that is the case, the moving party must then convince the court that their purported reasons rise to the level of reversal." *United States ex rel. Rafter H Constr., LLC v. Big-D Constr. Corp.*, 358 F. Supp. 3d 1096, 1098 (D. Idaho 2019). "[R]econsideration is an extraordinary remedy available only when: (1) the district court is presented with newly discovered evidence; (2) the court committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in the controlling law." *Dickinson Frozen Foods, Inc. v. FF5 Food*

MEMORANDUM DECISION AND ORDER-3

*Process Solutions Corp.*, Case No: 1:17-cv-00519-DCN, 2020 WL 2841517, at \*10 (D. Idaho June 1, 2020) (citing *Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)); *see also Christianson v. Colt. Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) ("As a rule the court should be loathe to [reconsider] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." (cleaned up)).

### III. DISCUSSION

The Court declines to reconsider its previous decision. Miesen has neither presented any newly discovered evidence nor identified an intervening change in the controlling law. Miesen solely argues that the Court committed clear error in its previous Order. However, he has not properly set forth his arguments because they do not show that the Court clearly erred. Rather, Miesen's arguments simply show that he disagrees with the Court's decision. This is an insufficient reason for the Court to reverse its prior ruling.

All Miesen's arguments relate to the same issue the Court already decided in its previous Order. For example, he contends that McDermott is not an advocate, partisan, or unobjective expert. *See* Dkt. 1115-1, at 3. He also asserts that opposing counsel has produced no evidence of such. *See id.* at 6. However, the Court already dealt with these issues and found to the contrary. It is improper for Miesen to raise these arguments again. *Am. Rivers v. NOAA Fisheries*, No. CV-04-00061-RE, 2006 WL 1983178, at \*2 (D. Or. July 14, 2006) ("The motion to reconsider should not be used to ask the court to rethink matters already decided."); *Dickinson Frozen Foods, Inc.*, 2020 WL 2841517, at \*12 ("A court's opinions are not intended as mere first drafts, subject to revision and

MEMORANDUM DECISION AND ORDER-4

### 1-ER-97

reconsideration at a litigant's pleasure." (cleaned up)); *id.* at *11 ("A motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." (cleaned up)); *id.* at *20 ("[M]otions for reconsideration are not occasions for raising arguments for the first time or developing previously undeveloped arguments.").

More importantly, none of Miesen's arguments convinced the Court before, nor do they convince the Court to revisit its ruling now. What Miesen has done in his motion is simply insufficient for the Court to reverse its prior decision to preclude McDermott as an expert witness in this case. Accordingly, both of Miesen's motions are denied.

### IV. ORDER

1. Plaintiff's Motion to Reconsider (Dkt. 1115) is **DENIED**.

2. Plaintiff's Motion for Oral Argument on the Motion to Reconsider (Dkt. 1116) is **DENIED**.

DATED: July 22, 2021

_____

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER-5

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporations and its wholly owned subsidiary AIA Insurance, Inc., <br><br>      Plaintiff, <br> v. <br><br> HAWLEY TROXELL ENNIS & HAWLEY LLP, et al., <br><br>      Defendants. | Case No. 1:10-cv-00404-DCN <br><br> **MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the court are the Hawley Troxell Defendants'[1] Motion to Dismiss (Dkt. 1067) and Plaintiff Dale Miesen's Motion to Certify (Dkt. 1148) and Amended Request for Judicial Notice[2] (Dkt. 1153). The Motion to Dismiss is joined by Defendants James Beck, Michael Cashman, Connie Henderson, and R. John Taylor (the "Individual

---

[1] The Hawley Troxell Defendants consist of Hawley Troxell Ennis & Hawley LLP, Gary D. Babbitt, D. John Ashby, and Richard A. Riley.

[2] By way of this request, Miesen asks the Court to take judicial notice of certain documents for purposes of resolving the Motion to Dismiss. The Hawley Troxell Defendants responded in opposition to this request. Dkt. 1163. Miesen replied. Dkt. 1170. There are additional requests for judicial notice throughout the briefing of the Motion to Dismiss.

MEMORANDUM DECISION AND ORDER - 1

Defendants" or the "Controlling Defendants"),[3] and by Crop USA Insurance Agency, Inc., and Crop USA Insurance Services, LLC (collectively, "CropUSA"). Dkt. 1090.

The Court held a hearing on these matters on March 9, 2022, and took the motions under advisement. Now, for the reasons stated below, the Court GRANTS the Motion to Dismiss, DENIES the Motion to Certify, and DENIES the Amended Request for Judicial Notice.

## II. BACKGROUND

This case began in 2010 as a shareholder derivative lawsuit on behalf of AIA Services Corp. and AIA Insurance, Inc. (the "AIA Entities"). Now, the Hawley Troxell Defendants, joined by the Individual Defendants and CropUSA, move to dismiss Miesen's shareholder derivative claims on the grounds that Miesen failed to satisfy the demand requirements.

The Motion to Dismiss centers on the demand requirements for shareholder derivative litigation. Miesen relies on a series of five demand letters that began in 2008 and concluded in 2016. Interspersed between these letters are various amended complaints. Because shareholder demands must be given 90 days before a complaint is filed, Idaho Code § 30-29-742, the Court first reviews the timeline of the five demand letters and the complaints in this action.

The first demand letter is dated July 21, 2008 (the "July 2008 Demand"). Dkt. 23-

---

[3] Throughout the filings in this case, this group of Defendants is sometimes referred to as the "Individual Defendants" and other times as the "Controlling Defendants."

MEMORANDUM DECISION AND ORDER - 2

9.[4] It is from Michael Bissel, an attorney, on behalf of Donna Taylor (a shareholder of the AIA Entities) and Reed Taylor (who was not a shareholder) and was addressed to the AIA Entities' board of directors.

After the July 2008 Demand, Donna Taylor and Miesen filed the original Complaint in this case on August 11, 2010. Dkt. 1. A few months later, Donna Taylor filed the First Amended Complaint on November 22, 2010. Dkt. 23. Miesen was not a plaintiff in the First Amended Complaint.

Then on April 3, 2012, attorney Rod Bond emailed the attorneys representing the AIA Entities. Dkt. 67-33. This is the second demand letter (the "April 2012 Demand"). That same year, various shareholders, including Miesen, made a demand at a shareholder meeting on July 16, 2012 (the "July 2012 Demand"). Dkt. 67-42.

On June 13, 2016, Bond sent a demand letter (the June 2016 Demand") on behalf of Miesen to the board of directors of the AIA Entities. Dkt. 148-2.  A week later, on June 20, 2016, the Second Amended Complaint was filed. Dkt. 137. Miesen rejoined as a plaintiff in the Second Amended Complaint.

Two months later, on August 23, 2016, Bond sent another demand letter (the "August 2016 Demand") on behalf of Miesen to the AIA Entities' board of directors. Dkt. 186-2. Finally, the Third Amended Complaint, which is the operative complaint, was filed on April 24, 2017. Dkt. 211. Donna Taylor was dropped as a plaintiff in the Third Amended Complaint.

---

[4] The five demand letters are included across various docket entries. However, the Court uses the docket citations provided in the Third Amended Complaint.

MEMORANDUM DECISION AND ORDER - 3

For convenience, the following table outlines each of the demands and the various complaints in order:

|  | Description | Docket |
|---|---|---|
| **July 2008 Demand** July 21, 2008 | Letter from attorney Michael Bissel on behalf of Donna Taylor and Reed Taylor addressed to the AIA Entities' board of directors. | Dkt. 23-9 |
| **Complaint** August 11, 2010 | Filed by Donna Taylor and Dale Miesen | Dkt. 1 |
| **First Amended Complaint** November 22, 2010 | Dale Miesen dropped as a plaintiff | Dkt. 23 |
| **April 2012 Demand** April 3, 2012 | Email from attorney Rod Bond to attorneys representing the AIA Entities | Dkt. 67-33 |
| **July 2012 Demand** July 16, 2012 | Demand made at shareholders' meeting | Dkt. 67-42 |
| **June 2016 Demand** June 13, 2016 | Letter from attorney Rod Bond on behalf of Dale Miesen addressed to the AIA Entities' board of directors | Dkt. 148-2 |
| **Second Amended Complaint** June 20, 2016 | Miesen rejoins as a plaintiff | Dkt. 137 |
| **August 2016 Demand** August 23, 2016 | Letter from attorney Rod Bond on behalf of Dale Miesen addressed to the AIA Entities' board of directors | Dkt. 186-2 |
| **Third Amended Complaint** April 24, 2017 | Donna Taylor dropped as a plaintiff | Dkt. 211 |

This is not the only derivative lawsuit Miesen has brought on behalf of the AIA Entities. Importantly, on June 30, 2020, the Ninth Circuit ruled in a parallel case, *Miesen v. Munding*, that the June 2016 Demand was legally insufficient. 822 Fed. App'x 546

MEMORANDUM DECISION AND ORDER - 4

**1-ER-102**

(2020). To be clear, this is the same demand letter referenced in this action, but the Ninth Circuit was ruling on a different case—case number 2:18-cv-00270-RMP, filed in 2018 in the Eastern District of Washington. The parties dispute the effect of the Ninth Circuit's *Munding* ruling on the present case, and that dispute is, unsurprisingly, the central issue in the Motion to Dismiss.

After the Hawley Troxell Defendants filed their Motion to Dismiss, Miesen filed a Motion to Certify and an Amended Request for Judicial Notice. Both of those filings involve issues raised by the Motion to Dismiss. Because of the relationship between the three motions, the Court addresses all of them in this Order.

### III. DISCUSSION

Before the Court reviews the Motion to Dismiss, it must first review the Motion to Certify as the resolution of that matter must precede the Court's review of the broader questions at issue. *See All. for Prop. Rights & Fiscal Resp. v. City of Idaho Falls*, 742 F.3d 1100, 1108 (9th Cir. 2013) (citing *Thompson v. Paul*, 547 F.3d 1055 (9th Cir. 2008)) ("There is a presumption against certifying a question to a state supreme court after the federal district court has issued a decision."). The Court will then review the Amended Request for Judicial Notice since that request asks the Court to take judicial notice of certain facts related to the Motion to Dismiss. After the Court resolves both of those preliminary motions, the Court will address the Motion to Dismiss.

### A. Motion to Certify (Dkt. 1148)

In the Motion to Certify, Miesen asks that this Court certify five questions to the Idaho Supreme Court. Four of those questions relate to the Motion to Dismiss, and the fifth

MEMORANDUM DECISION AND ORDER - 5

question relates to a pending motion for summary judgement. Those questions are quoted below:

- May a derivative demand be excused when there is not a duly elected, fully seated, and lawfully functioning board of directors?

- Can any party other than the corporation challenge the adequacy of derivative demands?

- Is the board of director's failure to request a shareholder to clarify or provide additional information a waiver of the right to challenge the adequacy of the derivative demands?

- Is the adequacy of a derivative demand relaxed or excused when the corporate insiders are concealing virtually all matters from shareholders and refusing to engage in proper fundamental corporate governance?

- Does Idaho recognize the adverse domination doctrine or similar doctrine that holds the statutes of limitations do not run and/or are tolled because the corporation has been controlled by unlawfully acting directors and the corporation has no knowledge of what occurred under the adverse interest exception?

For the following reasons, the Court DENIES the Motion to Certify with respect to all five questions.

### 1. Legal Standard

Idaho Appellate Rule 12.3 provides that a United States District Court may certify a question of law to the Idaho Supreme Court if two conditions are met: (1) the question certified is a controlling question of law in the pending action as to which there is no

MEMORANDUM DECISION AND ORDER - 6

controlling precedent in the decisions of the Idaho Supreme Court; and (2) the immediate determination of Idaho law with regard to the certified question would materially advance the orderly resolution of the litigation in the United States Court. Idaho App. R. 12.3(a); *see also White v. Valley Cnty.*, 2012 WL 13018504, at *1 (D. Idaho Aug. 10, 2012).

Certification is generally beneficial to assure that state law will be applied uniformly and in accordance with the interpretations given by each state's high court, state courts will have the benefit of having the final say on a matter of state law, and the federal courts can avoid the difficult task of attempting to divine how a state court would rule on a matter of state law. *See Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974) (noting that certification "does, of course, in the long run save time, energy, and resources and helps build a cooperative juridical federalism").

"Use of the certification procedure in any given case rests in the sound discretion of the federal court." *Micomonaco v. Washington*, 45 F.3d 316, 322 (9th Cir. 1995).

*2. Analysis*

The Court in its discretion does not find that Miesen meets either of the requirements for certification. For clarity, the Court reviews each question separately.

a.   Question About Derivative Demand Excuse

Both parties agree that the governing statutes for demand here are Idaho Code Sections 30-1-742 and 30-29-742.[5] They also both agree that Idaho has expressly done away with the futility exception to the demand requirement. Despite that, Miesen argues

---

[5] Idaho Code § 30-1-742 was in effect when the complaint in this case was filed on August 11, 2010. The requirements for making a derivative demand were recodified as Idaho Code § 30-29-742 on July 1, 2015.

MEMORANDUM DECISION AND ORDER - 7

that the Idaho Supreme Court would excuse the demand requirement where there is not a duly elected, fully seated, and lawfully functioning board of directors.

This is not an appropriate question to certify because it is not a question of law but rather a question of the application of facts, not yet proven in this case, to well-settled law.

The Idaho Supreme Court has made clear that Idaho state law does not include a futility exception to the demand requirement. *McCann v. McCann*, 61 P.3d 585, 593 (Idaho 2002) ("[T]he futility exception no longer applies to the demand requirement as set forth in the statute."); *see also Kugler v. Nelson*, 374 P.3d 571, 578 (Idaho 2016); *Mannos v. Moss*, 155 P.3d 1166, 1173 (Idaho 2007). Miesen argues that the Idaho Supreme Court "would reach a different result here" because the facts are different. Dkt. 1148-1, at 9. Such a position is pure speculation and, frankly, in opposition to clear caselaw. This is not a situation where there is no controlling precedent in the decisions of the Idaho Supreme Court. That precedent is easily found in *McCann* and other Idaho Supreme Court cases. This Court will not certify a case to the Idaho Supreme Court to see if it will distinguish *McCann* based on facts not yet proven.

Finally, the Court notes this case started over a decade ago. The Court does not find that certifying this question would materially advance the orderly resolution of the litigation. Rather, it would likely unnecessarily extend the length of litigation since this Court is well equipped to apply the applicable facts to well-settled Idaho state law. For that additional reason, the Court will not certify the first question.

b. Question About Who Can Challenge the Adequacy of a Demand

The second question is whether only the corporation can challenge the adequacy of

MEMORANDUM DECISION AND ORDER - 8

a shareholder demand.[6] Unlike the prior question, this question does not rely on factual determinations but is indeed a question of law. However, certification is inappropriate here because there is Idaho Supreme Court precedent on this issue.

Miesen argues that no Idaho appellate court decisions have resolved which parties can challenge the adequacy of a shareholder demand. He contends that the Idaho Supreme Court would hold that only the underlying corporation can challenge the adequacy of a shareholder demand.

However, the Idaho Supreme Court has, in prior cases, accepted demand challenges—even when brought by parties other than the corporation. *See, e.g., McCann*, 61 P.3d at 594 (affirming dismissal of derivative action where a shareholder raised the issue of the demand requirement); *Mannos v. Moss*, 155 P.3d 1166, 1173 (Idaho 2007) (affirming dismissal of derivative action where parties other than the corporation raised the issue of the demand requirement). Furthermore, the Ninth Circuit recently affirmed the Eastern District of Washington's decision to dismiss a derivative action because Idaho's demand requirement was not met, which issue was raised by parties other than the corporation.[7] *Munding*, 822 Fed. App'x 546.

---

[6] The parties quibble about the use of the word "standing" in this context. On occasion, Miesen has phrased this question as a question about whether the Hawley Troxell Defendants and the Individual and CropUSA Defendants have standing to challenge the adequacy of a shareholder demand. The Hawley Troxell Defendants argued this is not an issue of standing, citing to *Stonebrook Construction, LLC v. Chase Home Finance, LLC*, 277 P.3d 374, 377 (Idaho 2012), which explains that "standing is a subcategory of justiciability" and "not at issue when evaluating the merits of a defense." *Id.* (cleaned up). Miesen replied by explaining that he used the term "standing" because other federal courts have used it in this context. Dkt. 1148-1, at 15 n.7. Regardless of the proper term, the Court understands that what is at issue is whether a party other than the corporation may challenge the adequacy of the demand.

[7] This is the same *Munding* case in which the Ninth Circuit held that the June 2016 Demand was inadequate.

MEMORANDUM DECISION AND ORDER - 9

1-ER-107

Thus, the Court finds it has adequate precedent upon which to rely and certification of this subject is not warranted.

      c.  Question About Whether the Board Should Have Asked for Clarification

Miesen asserts that the board of directors failed to ask for clarification upon receipt of the demands, and he believes the Idaho Supreme Court would, upon certification, hold that such failure waives the demand requirement. Thus, he wants certified the question of whether the board of director's failure to request that a shareholder clarify or provide additional information acted as a waiver to the right to challenge the adequacy of the derivative demands.

This question does not meet the certification requirements. First, it is dependent on a factual determination that the board of directors failed to meet a duty and thus does not involve a controlling question of law. Second, Idaho Supreme Court precedent is, again, clear that there is no futility exception to the demand requirement. *McCann*, 61 P.3d at 593. Certification is not an avenue to challenge existing caselaw but rather to resolve unanswered questions.

For purposes of the Motion to Dismiss, the Court will apply the facts as plead in the Third Amended Complaint to the well-established precedent from the Idaho Supreme Court that there is no futility exception to the demand requirement. Provided with this sufficient precedent, this Court can assess how the facts as plead interplay with well-settled state law.

Finally, as is true for the other proffered questions, certification would likely unnecessarily extend the length of litigation.

MEMORANDUM DECISION AND ORDER - 10

d.  Question About Whether the Standard Should Be Relaxed

The fourth question again posits that the Idaho Supreme Court may relax or excuse the standard based on the facts of this case. To reiterate, certification is not appropriate where the Idaho Supreme Court has already addressed an issue, even if "not precisely in the context of the facts of this action." *Miller v. Four Winds Intern. Corp.*, 827 F. Supp. 2d 1175, 1188 (D. Idaho 2011). The Idaho Supreme Court has addressed the demand requirement, its statutory exceptions, and the lack of a futility exception. *McCann*, 61 P.3d at 593. The Court will not certify this question.

e.  Question About Adverse Domination Doctrine

The final question Miesen requests this Court to certify is whether Idaho law recognizes the adverse domination doctrine or some other doctrine that tolls the statute of limitations when the corporation is controlled by rogue directors. This question involves defenses raised in two motions for summary judgment. Dkts. 1071, and 1077. In this regard, this question is different since the other questions all relate to the present motion to dismiss.

"Adverse domination is an equitable doctrine which tolls statutes of limitations for claims by corporations against its officers, directors, lawyers and accountants while the corporation is controlled by those acting against its interests." *Resol. Tr. Corp. v. Grant*, 901 P.2d 807, 811 (Okl. 1995). Predicting whether a state would adopt or reject the adverse domination doctrine, the Sixth Circuit reviewed caselaw from different jurisdictions and concluded that the adverse domination doctrine is dependent upon the state's discovery rule or the lack thereof:

MEMORANDUM DECISION AND ORDER - 11

Notably, other courts considering the question of adverse domination have focused on whether state law would apply a discovery rule to the relevant claim for purposes of the statute of limitations. *See, e.g.*, *Wilson v. Paine*, 288 S.W.3d 284, 287–88 (Ky. 2009); *FDIC v. Smith*, 320 Or. 420, 980 P.2d 141, 137 (1999); *Resolution Trust Corp. v. Scaletty*, 258 Kan. 348, 891 P.2d 1110, 1115–16 (1995). As one court explained, "adverse domination shares the same theoretical underpinnings as the discovery rule." *Wilson*, 288 S.W.3d at 287; *see also Cedar Rapids Lodge & Suites, LLC v. JFS Dev., Inc.*, 789 F.3d 821, 824–25 (8th Cir. 2015). But, as several of our sister circuits have also concluded, adverse domination may be inconsistent with a particular state's tolling doctrines and policies regarding the strict construction of its statutes of limitation. *See Wilson*, 288 S.W.3d at 288 n.2 (citing cases interpreting Ark., Ga., and Va. Law); *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (interpreting Fla. Law).

*Antioch Co. Litig. Trust v. Morgan*, 644 Fed. App'x 579, 582 (6th Cir. 2016).

Similarly, the District of Oregon concluded that "the doctrine of adverse domination is a corollary of the discovery rule." *Resol. Tr. Corp. v. Smith*, 872 F. Supp. 805, 813 (D. Or. 1995). Thus, because Oregon had adopted a discovery rule, the court reasoned that Oregon would likewise probably adopt the adverse domination doctrine. *Id.* at 814. On appeal, the Ninth Circuit certified the question to the Supreme Court of Oregon, which "use[d] the discovery rule as a starting point in [its] analysis" and held that Oregon does indeed recognize the adverse domination doctrine. *FDIC v. Smith*, 980 P.2d 141, 146–147 (Or. 1999).

More recently, the Ninth Circuit affirmed, without certifying the question, a district court's decision to not apply the doctrine, concluding that Nevada would *not* adopt the adverse domination doctrine since it was inconsistent with the state's sole actor rule. *USACM Liquidating Tr. v. Deloitte & Touche*, 754 F.3d 645, 649 (9th Cir. 2014).

This Court has also declined to apply the adverse domination doctrine with respect

MEMORANDUM DECISION AND ORDER - 12

to the Idaho Uniform Fraudulent Conveyance Act because the Court found that the doctrine was inconsistent with the "exacting statutory language" of the statute, which "extinguishes a claim after the four-year period *unless* the one-year discovery rule applies." *Klein* v. *Capital One Financial Corp.*, 2011 WL 3270438, at *7 (D. Idaho July 29, 2011).

While there is no Idaho Supreme Court precedent precisely on the issue of the adverse domination doctrine, there is clear precedent rejecting the discovery rule for the statute of limitations governing legal malpractice claims, which is Idaho Code § 5-219(4). *Elliott v. Parsons*, 918 P.2d 592, 594 (Idaho 1966) ("In accordance with the legislature's rejection of a discovery rule, the statute begins to run when there is 'some damage,' not when the party claiming malpractice discovers the damage."); *Martin v. Clements*, 575 P.2d 885, 886–87, 889 (Idaho 1978) ("In view of the clear legislative intent of amended I.C. § 5-219(4), we expressly decline to create  a new 'discovery' exception for legal malpractice actions."). "Idaho has explicitly rejected a 'discovery rule' for the tolling of statutes of limitations in malpractice cases . . . ." *Werner v. American-Edwards Laboratories, Inc.*, 745 P.2d 1055, 1058 (Idaho 1987). There are only two exceptions, which are both codified in Idaho Code § 5-219(4), and they apply only for malpractice suits where a foreign object is left in the body and where negligence is fraudulently concealed. *Id.*; Idaho Code § 5-219(4).

What's more, the Idaho Supreme Court has expressly rejected judicially constructed tolling doctrines. *Wilhelm v. Frampton*, 158 P.3d 310, 312 (Idaho 2007). "Statutes of limitations in Idaho are not tolled by judicial construction but rather by expressed language of the statute." *Id.* (quoting *Indep. Sch. of Boise City v. Callister*, 539 P.2d 987, 991 (1975)).

MEMORANDUM DECISION AND ORDER - 13

Since Miesen is asking about the application of a non-statutory tolling doctrine, the Court is satisfied that the Idaho Supreme Court has answered the question as to whether such tolling doctrines are applicable. Not only would the adverse domination doctrine be contrary to Idaho's rejection of the discovery rule, but it would also be contrary to the clear holding in *Wilhelm*.

Miesen argues, in the alternative, that this Court should certify a question about whether Idaho law recognizes the adverse interest exception. Under the adverse interest exception, as applied elsewhere, "a corporation is charged with knowledge of what its agent knows, unless the agent's relations to the subject matter are so adverse as to practically destroy the relationship." *Smith*, 980 P.2d at 429 (cleaned up). Miesen contends that the statute of limitations should not accrue until a party knows of the claim and that a corporation does not have the knowledge of its agent's actions if the agent's interests are sufficiently adverse to the corporation's. Again, this is a non-statutory tolling doctrine, which doctrine the Idaho Supreme Court rejected in *Wilhelm*. 158 P.3d at 312. Therefore, the Court will not certify a question to the Idaho Supreme Court regarding either the adverse domination doctrine or the adverse interest exception.

3.  *Conclusion*

The Court will not certify any of the five questions Miesen requests to the Idaho Supreme Court. None of the questions meet the certification requirements of Idaho Appellate Rule 12.3. Accordingly, the Court DENIES the Motion to Certify.

**B.  Amended Request for Judicial Notice (Dkt. 1153)**

A few days after filing the Motion to Certify, Miesen filed a motion requesting the

MEMORANDUM DECISION AND ORDER - 14

Court to take judicial notice of affidavit testimony. The Hawley Troxell Defendants filed a response brief objecting to the request. Dkt 1163. Miesen then filed a reply brief, and in that, he asked the Court to take judicial notice of additional materials—the Hawley Troxell Defendants' billing records. Dkt. 1170. The Hawley Troxell Defendants objected to this request as well. Dkt. 1173.

The affidavit testimony Miesen seeks to admit references a complaint filed in a different case and the July 2008 Demand, both of which were attached as exhibits to the affidavit. Miesen requests judicial notice of these exhibits to the extent that they are part of the relevant affidavit testimony. The purpose of this request is to "establish[] that the AIA Entities' purported directors were well aware of the specific transactions and legal action being requested" by the July 2008 Demand. Dkt. 1153, at 3–4.

The affidavit testimony itself is from John Taylor. Miesen requests the Court take judicial notice of the following portions from paragraphs 21, 22, and 28 of the affidavit:

> 21.     Although the original complaint filed in the Reed Taylor case was a two-count complaint seeking relief against the AIA Entities and myself personally with regard to the Stock Redemption Agreement within a year that original complaint had been amended five times to add my ex-wife Connie Taylor, Jim Beck and his wife Corrine, the CropUSA Entities and others and to assert many of the identical issues that are present in this litigation. Attached as Exhibit "O" hereto is the Fifth Amended Complaint in the Reed Taylor Case. As I confirmed to Mr. Bond during his questioning in the course of a during a four day deposition "at issue" in the Reed Taylor Case was (1) the formation and ownership of CropUSA, (2) the business relationship of the AIA entities and the CropUSA entities in terms of assets, employees, master marketing agreements and administrative agreements, (3) the 2001 exchange of Series C preferred shares of AIA Services that were converted to common shares of CropUSA, (4) 2001 purchase of a parking lot, (5) the transactions between AIA Services and Pacific Empire Radio Corporation ("PERC"), (6) assertions of conflicts of interest, (7) issues pertaining to the Trustmark Settlement, (8) CropUSA asset sale to Hudson Insurance, (9)

MEMORANDUM DECISION AND ORDER - 15

consulting payments received by me, (10) my compensation from AIA Services, (11) the attorney fees paid on behalf of the individual defendants in the Reed Tylor case, (12) the loans between CropUSA and AIA Services, and (13) compensation of the AIA Services' directors. Based on these allegations, in addition to the assertion of a breach of the stock redemption agreement, Reed Taylor asserted, among other, claims for fraud, director liability, breach of fiduciary duty, and conspiracy of all named Defendants.

22.    I also note that the Fifth Amended Complaint, like the present litigation, sought to challenge AIA Services' guarantee of CropUSA's loan. In this regard, in October 2006 HTEH prepared an attorney opinion letter regarding a loan transaction involving the CropUSA Entities and Lancelot Investors Fund, L.P. and to which AIA insurance was to be a guarantor to the loan transaction.

. . . .

28.    Thereafter, in a letter dated July 21, 2008, Donna Taylor in her identified capacity as a Series A Preferred Shareholder in AIA Services made demand upon AIA Services for corrective action pursuant to Idaho Code 30-1-742. Like the Complaint in Reed Taylor's case, Donna Taylor's letter asserted the existence of 27 matters to which she asserted liability existed including, but not limited to the alleged usurpation of a corporate opportunity with regard to the CropUSA Entities, illegal loan guarantees as well as assertions of fraud, misappropriation and breach of fiduciary duties. A true and correct copy of this correspondence is attached is attached as Exhibit "S." As the docket in this matter reflects, this present action purporting to be a derivative case was not commenced until August 11, 2010.

Dkt. 1153, at 4.

Ordinarily, a district court may not consider evidence outside of the pleadings when ruling on a motion to dismiss unless it converts the motion into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908. Because

MEMORANDUM DECISION AND ORDER - 16

Miesen wishes this Court to consider this evidence, which is outside of the pleadings, he requests that the Court take judicial notice of it.

A court may take judicial notice of documents that are not subject to reasonable dispute and are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. Fed. R. Evid. 201(b). "[A]djudicative facts appropriate for judicial notice are typically different from facts found in affidavits supporting litigation positions, which often present facts subject to dispute." *Henderson v. Oregon*, 203 Fed. App'x 45, 52 (9th Cir. 2006). Miesen has not demonstrated that the facts he seeks to introduce are not subject to reasonable dispute. His only argument here is that John Taylor, who is a defendant in this case (though not one of the Hawley Troxell Defendants) provided this affidavit testimony under penalty of perjury. That makes it no different than other affidavits that present facts subject to dispute.

Moreover, at the Rule 12(c) motion to dismiss stage, the Court is concerned with the allegations in the pleadings. In the operative complaint, the Third Amended Complaint (Dkt. 211), Miesen alleges that "[o]n July 21, 2008, Donna Taylor, another shareholder of AIA Services, served a written derivative demand letter on the Boards of Directors of AIA Services and AIA Insurance." Dkt. 211, at ¶ 172. Miesen also alleges that in another case, the Hawley Troxell Defendants filed a motion for stay expressly for the purpose of "conduct[ing] an inquiry into the demand made by Donna Taylor." *Id.* at ¶ 173. Miesen's present request for judicial notice is for the purpose of "establishing that the AIA Entities' purported directors were well aware of the specific transactions and legal action being requested" of Donna Taylor's demand letter. Dkt. 1153, at 4. If the directors' awareness is

MEMORANDUM DECISION AND ORDER - 17

necessary in evaluating the merits of the Motion to Dismiss, however, the Court need look no further than these allegations in the Third Amended Complaint that the directors were aware of the demand and the underlying issues. There is no need for additional information from Miesen.

Miesen also requests that the Court take judicial notice of the Hawley Troxell Defendants' billing records because he believes they prove "that the HT Defendants and the so-called boards of directors were fully aware of the HT Defendants' tortious conduct— the AIA Entities were paying the HT Defendants to conduct legal research regarding the HT Defendants' conduct and liability." Dkt. 1170, at 5. The Hawley Troxell Defendants object, contending that "Plaintiff's request for judicial notice inappropriately argues inferences that Plaintiff wants the Court to draw from the information and his arguments invite the Court to speculate about Defendants' subjective understanding of allegations." Dkt. 1163, at 3. The Court agrees with the Hawley Troxell Defendants' assessment. "Judicial notice under Fed. R. Evid. 201 is appropriate to take judicial notice of adjudicative facts. To the extent that [the request] presents additional argument . . . , Rule 201 does not provide authority for the Court to consider the arguments . . . ." *Golden W. Holdings, LLC v. BBT Holdings, LLC*, 2010 WL 4853301, at *11 (D. Idaho Nov. 22, 2010) (cleaned up).

For these reasons, the Court DENIES the Amended Request for Judicial Notice (Dkt. 1153).

### C. Motion to Dismiss (Dkt. 1067)

The Hawley Troxell Defendants predicate their Motion to Dismiss on the

MEMORANDUM DECISION AND ORDER - 18

inadequacy of the five written demands. They argue that Miesen failed to meet the demand requirements before bringing suit and that, as a result, the derivative claims should be dismissed. In response, Miesen contends that prior orders in this case preclude the Court from dismissing his claims on this ground and that he met the demand requirement.

*1. Preliminary Matters*

There are a few preliminary matters the Court must address before reaching the merits of the Motion to Dismiss.

a. Judicial Notice

First, because this case would not be what it is today without excessive filings and repetitive arguments, the parties fight another judicial notice battle in the briefing for the Motion to Dismiss, and that argument spilled over into their response and reply briefs regarding a motion for page extension. *See* Dkt. 1199, at 2 n.2 ("The Court notes that in his opposition to the Motion for Overlength Reply, Miesen objected to and argued against the Hawley Troxell Defendants' request for judicial notice within their overlength reply. That issue will be dealt with when the Court takes up the Motion to Dismiss.").

The parties agree that the Court should take judicial notice of the five demand letters.[8] The Court grants that request.

The Hawley Troxell Defendants also request that the Court take judicial notice of the demand letter at issue in the Eastern District of Washington case *Miesen v. Munding*,

---

[8] Miesen has both agreed and disagreed that the Court should take judicial notice of the June 2016 Demand. *Compare* Dkt. 1131, at 8, *with* Dkt. 1149, at 7. He insists that the Court should only take judicial notice of the June 2016 Demand if it includes the Second Amended Complaint. The Court does not need to take judicial notice of the Second Amended Complaint, but the Court also recognizes Miesen's position that the June 2016 Demand is best understood in the context of the Second Amended Complaint.

MEMORANDUM DECISION AND ORDER - 19

which is the same as the June 2016 Demand letter in the instant case, as well as the amended complaint in *Munding*.[9] The Court grants this request and takes judicial notice of both *Munding* filings, which are included in the record at Docket 1138, at 35–45 (Demand), and Docket 1138, at 46–112 (Amended Complaint).[10] *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (explaining a court "may take judicial notice of court filings and other matters of public record").

Miesen also argues that the Court should not take judicial notice of the two *Munding* decisions. The Hawley Troxell Defendants did not ask the Court to take judicial notice of these decisions because the Court does not need to take judicial notice of court decisions in order to consider them.

For his own part, Miesen asks that the Court also take judicial notice of (1) AIA Services' Amended Articles of Incorporation; (2) AIA Services' Restated Bylaws; (3) the Idaho State Bar membership records for John Taylor and Connie Henderson; (4) the AIA Petition for Court Appointed Inquiry dated August 14, 2018; and (5) Reed Taylor's Fifth

---

[9] Miesen objects to this request because the Hawley Troxell Defendants did not attach the *Munding* filings to their Motion to Dismiss. Instead, they provided the information whereby the Court and other parties could locate the materials on PACER. They then included the filings with their reply brief after the Court had issued a ruling on a separate judicial notice question and stated, "On a closing note, in the future, any party asking the court to take judicial notice of any records—whether they are public or not—should attach those records to their briefs in the appropriate manner." Dkt. 1119, at 3 (cleaned up). The Court does not find the request improper even though the Hawley Troxell Defendants originally failed to attach the documents in the Motion to Dismiss and later attached them in their reply brief—which came after the Court directed the parties to attach records for judicial notice to their briefs. By including the filings in their reply brief, the Hawley Troxell Defendants corrected the problem identified by the Court.

[10] The case number for *Miesen v. Munding* in the Eastern District of Washington is No. 2:18-CV-270-RMP. In that case, the docket number for the demand is 8-13, and the docket number for the amended complaint is 10.

MEMORANDUM DECISION AND ORDER - 20

Amended Complaint filed in *Taylor v. AIA Services, et al.*[11] Dkt. 1131, at 8–9. The Court denies this request since none of these documents are pertinent to the Motion to Dismiss.

      b.  Who May Challenge the Adequacy of the Demand

The second preliminary issue is who may challenge the adequacy of a shareholder demand. Miesen argues that only the AIA Entities may challenge the adequacy of the demand. This ties back to the second question for which Miesen sought certification: whether only the corporation can challenge the adequacy of a shareholder demand. Having denied certification, the Court now looks to the relevant precedent to answer this question.

As previously noted, the Idaho Supreme Court has, in prior cases, accepted demand challenges, even when brought by parties other than the corporation. *See, e.g., McCann*, 61 P.3d at 594 (affirming dismissal of derivative action where a shareholder raised the issue of the demand requirement); *Mannos*, 155 P.3d at 1173 (affirming dismissal of derivative action where parties other than the corporation raised the issue of the demand requirement). Furthermore, the Ninth Circuit recently affirmed the Eastern District of Washington's decision to dismiss a derivative action because Idaho's demand requirement was not met, which issue was raised by parties other than the corporation. *Munding*, 822 Fed. App'x. 546. Accordingly, the Court concludes that under Idaho state law, parties other than the corporation may challenge the adequacy of a shareholder demand.

---

[11] *Taylor v. AIA Services, et al.* is a separate case though involving some of the same parties. Many of the allegations in the present lawsuit revolve around actions relating to or occurring in the *Taylor v. AIA Services, et al.* lawsuit. Dkt. 211 at ¶¶ 94, 99, 108, 109, 111, 115, 164, 174, 176, 177, 189, 243.

MEMORANDUM DECISION AND ORDER - 21

c. Supplemental Authority

After the Motion to Dismiss was fully briefed, Miesen filed a Notice of Supplemental Authorities. Dkt. 1171. In it, he brings to the Court's attention an additional eight authorities, which he believes support his various legal theories:

- 28 U.S.C. § 636(c)

- Black's Law Dictionary entry for "dilatory"

- *Seaport Citizens Bank v. Dippel*, 735 P.2d 1047, 1050–51 (Idaho 1987)

- *Melgard v. Moscow Idaho Seed Co.*, 251 P.2d 546, 550 (Idaho 1952)

- *Steelman v. Mallory*, 716 P.2d 1282, 1285 (Idaho 1986)

- *Haberman v. Wash. Pub. Power Supply Sys.*, 744 P.2d 1032, 1060 (Wash. 1987)

- Note, Defenses in Shareholders' Derivative Suits—Who May Raise Them, 66 Harv. L. Rev. 342, 343 & 346 (1952)

- *Taylor v. AIA Servs. Corp.*, 261 P.3d 829, 841 (Idaho 2011)

- *La Voy Supply Co. v. Young*, 369 P.2d 45, 49 (Idaho 1962)

The Hawley Troxell Defendants objected to the Notice of Supplemental Authorities, arguing that the purpose of supplemental authorities is to bring to attention *new* authorities that were not available when the issue was briefed. Dkt. 1173. None of the authorities Miesen adds here are new. Moreover, Miesen cites to all but the "dilatory" definition and 28 U.S.C. § 636(c) in his Motion to Certify. Dkt. 1148-1, at 12–15.

"The purpose of a Notice of Supplemental Authority is to inform the Court of a newly decided case that is relevant to the dispute before it, not a venue for submission of

additional argument or factual evidence." *B St. Grill & Bar LLC v. Cincinnati Ins. Co.*, 525 F. Supp. 3d 1008, 1013 (D. Ariz. 2021). While Miesen does not make lengthy arguments in his Notice of Supplemental Authorities, it is not lost on the Court that the purpose of this filing is simply to bolster arguments already presented to the Court by adding caselaw, a dictionary definition, and a law review note from the 1950s—in addition to brief lines of argument, such as "the so-called directors owed Miesen fiduciary duties to deal with him fairly in response to the five derivative demands." Dkt. 1171. Because this filing does not notify the Court of new authority, or even useful authority not already provided elsewhere, the Court STRIKES Miesen's Notice of Supplemental Authority as improper.

To this point, the Court has been generous in this case allowing for filings outside of the briefing schedule set forth in Local Rule 7.1. The Court has also been generous with page extensions. However, the Court cannot ignore that this case has over 1,200 docket entries and that the instant motions have several additional filings on top of the ordinary motion, response, and reply briefs. The Court cautions the parties that it expects compliance with Local Rule 7.1. If the parties need to file something outside of what is allowed under Local Rule 7.1, the parties should request leave from the Court.

d. Compliance with Procedural Orders

Finally, Miesen argues that the Motion to Dismiss violates two procedural orders in this case, and as such, he believes the Court should strike the defenses relating to demand adequacy and award fees and costs.

The first of the two orders Miesen refers to is a footnote in an order issued by United States Magistrate Judge Candy W. Dale in 2016, which states, "The Court would have

MEMORANDUM DECISION AND ORDER - 23

expected (and expects in the future) grounds for dismissal to have been raised in response to the motion to amend instead of misleading representations that Defendants did not oppose Plaintiffs' motion to amend. The notices of non-opposition were not consistent with Rule 1." Dkt. 178, at 3. Judge Dale was addressing how Miesen proposed to amend his complaint to add additional defendants. At that time, the Hawley Troxell Defendants filed non-opposition notices, the Court allowed amendment, but then the Hawley Troxell Defendants moved for dismissal because the added defendants destroyed diversity jurisdiction. *Id.*

Miesen contends that because the Hawley Troxell Defendants did not raise the demand adequacy issue when he last amended his complaint, that doing so now is dilatory and in violation of Judge Dale's order. The Court disagrees. Judge Dale's admonition was directed at the specific behavior at that time. Much has changed since then. What's more, this was not a formal order, but a reminder that the Court strives to adhere to Rule 1's mandate in ensuring the efficient and effective resolution of any cases.

The second "order" Miesen refers to relates to the Court's preferences regarding motion practice, which states, "Chief Judge Nye expects that counsel, prior to filing a motion to dismiss based upon *Iqbal-Twombly*, will contact opposing counsel, advise them of the perceived shortcomings in the allegations of the complaint, and attempt to reach agreement for the filing of an amended complaint."[12] The Hawley Troxell Defendants apparently did not contact opposing counsel before filing the Motion to Dismiss; however,

---

[12] https://www.id.uscourts.gov/district/judges/nye/Motion_Practice.cfm

MEMORANDUM DECISION AND ORDER - 24

the Motion to Dismiss is not based upon whether of factual allegations in the complaint satisfy *Iqbal-Twombly*, rather the Motion to Dismiss is based on the adequacy of the demands. The Court's guidance regarding motions to dismiss seeks to avoid unnecessary motions where the concerns raised could be resolved if the plaintiff amended the complaint to include factual allegations needed to state a claim and satisfy *Iqbal-Twombly*. That is not at issue here. If the demands are inadequate, amending the Complaint would not remedy the cause for dismissal. While the Court expects communication and good faith between opposing counsel throughout litigation, the Court will not strike the defenses, nor award fees and expenses, merely because counsel for the Hawley Troxell Defendants did not contact Miesen's counsel in advance of filing the non-*Iqbal-Twombly* Motion to Dismiss. Again, the document Miesen relies on is not a formal "order," but rather the Court's preferences to streamline litigation.

Having resolved the preliminary issues, the Court now proceeds to evaluate the merits of the Motion to Dismiss.

### 2. *Legal Standard*

Rule 12(c) of the Federal Rules of Civil Procedure states, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard governing a Rule 12(c) motion for judgment on the pleadings is "functionally identical" to that governing a Rule 12(b)(6) motion. *United States ex rel. Caffaso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011). "For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false."

MEMORANDUM DECISION AND ORDER - 25

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id.* "However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment." *Id.*

As with traditional motions to dismiss, if a court grants a motion for judgment on the pleadings, leave to amend should be granted unless "the Court is satisfied that an amendment could not cure the deficiency." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1135 (9th Cir. 2012).

### 3. Analysis

"Pursuant to Rule 23.1, a putative derivative plaintiff can initiate a derivative action only if he or she makes an adequate demand on the Board under applicable state law." *Potter v. Hughes*, 546 F.3d 1051, 1055 (9th Cir. 2008). Under Idaho Law, "a shareholder may not commence a derivative proceeding until he makes a written demand upon the corporation to take suitable action at least ninety days prior to the commencement of the action." *Mannos*, 155 P.3d at 1172–73.

Idaho Code Section 30-29-742[13] specifically provides,

No shareholder may commence a derivative proceeding until:
(a) A written demand has been made upon the corporation to take suitable action; and

---

[13] As noted, Idaho Code Section 30-1-742 was in effect when the complaint in this case was filed on August 11, 2010. *Supra* n.5. The requirements for making a derivative demand were recodified as Idaho Code Section 30-29-742 on July 1, 2015. The statutory language is the same.

MEMORANDUM DECISION AND ORDER - 26

(b) Ninety (90) days have expired from the date delivery of the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety (90) day period.

"[T]he legislative intent in enacting [this statute] was to no longer recognize 'futility' as an exception to the requirement of demand as a condition preceding the institution of a shareholder's derivative action." *Mannos*, 155 P.3d at 1173 (cleaned up). The shareholder's demand effort must be "earnest and sincere, and not a feigned or simulated, effort to induce the directors to take remedial action." *McCann*, 61 P.3d at 592 (quoting 19 Am. Jur. 2d *Corporations* § 2278, 173–74 (1986)). A demand to merely "take action" is insufficient. *Id.* As the Idaho Supreme Court has explained:

> Statements should be presented to the directors showing the wrong complained of, accompanied by sufficient responsible data which will enable the directors to determine whether litigation could be engaged in with some hope of success. The shareholder must state facts, not mere general charges and conclusions.
>     The demand should give the directors a fair opportunity to initiate the action which the shareholder wants to undertake, and name the potential defendants, as well as the shareholder making the demand.

*Id.* (quoting 19 Am. Jur. 2d *Corporations* § 2278, 173–74 (1986)).

"Because the law has historically been particularly wary of allowing *shareholders* to sue on their *corporation's* behalf," shareholder derivative actions must strictly comply with the demand and pleading requirements of Federal Rule of Civil Procedure 23.1. *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995); *see also Potter*, 546 P.3d at 1058 (noting "strict compliance with Rule 23.1 and applicable substantive law is necessary before a derivative suit can wrest control of an issue from the board of directors").

MEMORANDUM DECISION AND ORDER - 27

A written derivative demand is mandatory, and failure to comply with pre-suit demand requirements necessitates dismissal of a derivative action. *See Mannos*, 155 P.3d at 1172–73. "Although dismissals for failure to state a claim are reviewed de novo, [a] district court's determination that [the plaintiff] did not comply with Rule 23.1 or [state] law regarding the demand . . . is reviewed for abuse of discretion." *Potter*, 546 F.3d at 1056.

As explained, the Ninth Circuit has already had occasion in a related case to apply Idaho law governing the demand requirement to one of the demand letters at issue here. *Munding*, 822 Fed. App'x 546. The Ninth Circuit upheld the Eastern District of Washington's dismissal based on the inadequacy of the demand:

> The district court correctly concluded that Mr. Miesen's letters, as excerpted in the Amended Complaint, did not make an adequate demand on the boards because it did not sufficiently describe the action he sought to have the boards take. Mr. Miesen's excerpted letters described his proposed claims in terms of "all possible claims" or similarly generic, conclusory language. The letters failed to describe with particularity the claims for relief he sought or the factual bases for those claims. Such language cannot have been expected to provide the boards with enough information to take "suitable action." Without knowing the factual bases for the claims, the boards could not determine the likelihood of the lawsuit's success and would have had difficulty weighing factors like the expenses involved in litigation or whether litigation would further the AIA Entities' general business interests. These are considerations the boards were entitled to make. *See Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 533 & n.9, 104 S. Ct. 831, 78 L.Ed.2d 645 (1984). The district court did not abuse its discretion by dismissing Mr. Miesen's Amended Complaint for failure to meet Rule 23.1's pleading requirements.

*Id.* at 548–49.

The demand the Ninth Circuit found inadequate is the June 2016 Demand in the present case. However, the Ninth Circuit's decision concerned a defendant in that case,

MEMORANDUM DECISION AND ORDER - 28

John Munding, and not any of the Defendants in the present case.

Miesen advances several arguments as to why this Court should not come to the same conclusion as the Ninth Circuit in *Munding*.

First, Miesen contends that Judge Dale has already held that the demand letters in the present case are adequate.[14] In 2017, when determining whether to allow Miesen to amend his complaint over the objection of the Individual and CropUSA Defendants, Judge Dale reviewed the demand letters and found them adequate. Dkt. 210. At the time, this case was at a wholly different procedural juncture. There, Judge Dale was determining whether to allow Miesen to amend his complaint under Federal Rule of Civil Procedure 15(a)(2).

Under Rule 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." As Judge Dale wrote in her order, "while the decision to grant leave to amend is within the Court's discretion, the Court 'must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits rather than on the pleadings or technicalities.'" Dkt. 210, at 12 (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). Among the considerations in determining whether to allow amendment is the futility of the proposed amendment. *Id.* (citing *Moore v. Kayport Package Express, Inc.*, 855 F.2d 531, 538 (9th Cir. 1989)). "Generally, this determination should be performed with all inferences in favor of grating the motion." *Id.* at 13 (quoting *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999)).

---

[14] In addition to his argument about Judge Dale's holding, Miesen also argues that a 2011 decision written by District Judge Larry M. Boyle (Dkt. 46) precludes any finding that the demands are inadequate. Judge Boyle's 2011 order did not address the demand letters at all—and it could not have mentioned any except the July 2008 Demand since the other demands all came after Judge Boyle's order. Therefore, that order does not impede the Court from concluding that the demand letters are adequate.

MEMORANDUM DECISION AND ORDER - 29

The Individual and CropUSA Defendants objected to allowing amendment, in part because they believed amendment was futile because the June 2016 Demand and August 2016 Demand were inadequate. Judge Dale disagreed, finding that the demands were adequate, and thus, under the liberal standard of Rule 15(a)(2), allowed amendment.

Miesen argues that the law of the case doctrine applies and that the Motion to Dismiss is an improper motion for reconsideration. The Hawley Troxell Defendants disagree and emphasize that they were not among the Individual and CropUSA Defendants who objected to amendment of the complaint. Alternatively, if the standards for reconsideration apply, the Hawley Troxell Defendants contend that reconsideration would be appropriate in light of *Munding*.

"The law of the case doctrine originated in the courts as a means of ensuring the efficient operation of court affairs." *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001). "When a court applies the law of the case doctrine to its own prior decisions (or those of a coordinate or equal court), the traditional formulations of the doctrine must be conceived as rules of thumb and not as straightjackets on the informed discretion and sound practical judgment of the judge." 18 *Moore's Federal Practice*, § 134.21[1] (3d ed. 2021). Furthermore, "[t]he doctrine simply does not impinge a district court's power to reconsider its own interlocutory order . . . ." *Santa Monica Baykeeper*, 354 F.3d at 888.

The Court is not faced with reconsidering Judge Dale's order allowing amendment of the complaint—that is, the outcome of this decision will not undo or ratify the order allowing amendment. Rather, the Hawley Troxell Defendants ask the Court to make

MEMORANDUM DECISION AND ORDER - 30

findings that are contrary to Judge Dale's findings upon which she relied, at least in part, in her decision allowing amendment. The Court does not undertake this exercise lightly; however, since Judge Dale's order over four years ago, the Ninth Circuit has issued its *Munding* ruling, which conflicts with Judge Dale's order. What's more, the Court is not bound by this prior order. Accordingly, the Court will review the demand letters consistent with *Munding* and reassess whether they are adequate under Idaho law.

Second, Miesen argues that this Court should reach a different conclusion than *Munding* because the Ninth Circuit's and Eastern District of Washington's opinions are "irrelevant and inadmissible hearsay." Dkt. 1131, at 10. This position is ludicrous.

Third, Miesen contends that neither the Ninth Circuit nor the Eastern District of Washington applied Idaho law in their respective *Munding* decisions. However, both cases expressly say that they are applying Idaho law. *Munding*, 822 Fed. App'x at 548;[15] *Miesen v. Munding*, 2019 WL 1410899, at *5 (E.D. Wash. Mar. 28, 2019).[16] As with his second argument, Miesen's argument on this point strains logic.

Miesen's extreme arguments seem to stem from his frustrations about the outcome of those cases. Rather than arguing that the Eastern District of Washington and the Ninth Circuit are not controlling and are unpersuasive authority, Miesen jumps to the outlandish position that the decisions themselves are hearsay and irrelevant. While the Court will not entertain Miesen's ridiculous arguments, it will review his reasonable arguments regarding

---

[15] "Applicable state law required Mr. Miesen to make a 'written demand . . . upon the corporation to take suitable action.' Idaho Code § 30-29-742."

[16] "Consequently, this Court must follow Idaho law, because the AIA Entities are incorporated under Idaho law according to the amended complaint."

MEMORANDUM DECISION AND ORDER - 31

the applicability and persuasiveness of *Munding*. After reviewing *Munding*, the Court reviews each of the demand letters.

    a.  Review of *Munding*

First, the Court notes that both the Ninth Circuit's and the Eastern District of Washington's *Miesen* decisions are unpublished. However, Ninth Circuit Rule 36-3 expressly allows citation to unpublished decisions, and while unpublished cases are not precedential, they can be persuasive.[17] Here, the June 2016 Demand letter was reviewed by the Eastern District of Washington and the Ninth Circuit, and those courts concluded the demand was inadequate, at least as the letter pertained to John Munding. Because the June 2016 Demand was reviewed by these courts, the Court finds the two *Munding* decisions particularly persuasive.

Second, Miesen filed a petition for certiorari in *Munding*, and the Supreme Court denied it. 141 S. Ct. 1464 (Mem.) (2021). Miesen argues that the denial of certiorari does not support the merits of the Ninth Circuit's decision. Dkt. 1131, at 10 (citing *Brown v. Allen*, 344 U.S. 443, 456 (1953) ("We have frequently said that the denial of certiorari imports no expression of opinion upon the merits of a case." (cleaned up))). However, this argument ignores the practical effect of the denial of certiorari in *Munding*: in that case, there is no remaining question about the sufficiency of the demand. The decision is final that the June 2016 Demand is insufficient under Idaho law in that case. Miesen asks this

---

[17] Under Ninth Circuit Rule 36-3, unpublished decisions are precedential "when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion." While the demand letter in *Munding* is the same as the June 2016 Demand in this case, the Hawley Troxell Defendants do not raise any preclusion arguments.

MEMORANDUM DECISION AND ORDER - 32

Court to now find that the June 2016 Demand is sufficient under Idaho law in this case.

Third, the Ninth Circuit reviewed the Eastern District Court's decision for abuse of discretion. *Munding*, 822 Fed. App'x at 548. Miesen argues that this standard is incorrect under Idaho law and that the correct standard of review is de novo. Dkt. 1131, at 20 n.10. In *Potter v. Hughes*, the Ninth Circuit held that "the demand requirement for derivative actions are reviewed for abuse of discretion."[18] 546 F.3d 1051, 1056 (9th Cir. 2008). Miesen cites an Idaho case, in which the Idaho Supreme Court held that the "interpretation of a statute is a question of law that the Supreme Court reviews de novo." *Bright v. Maznik*, 396 P.3d 1193, 1196 (Idaho 2017) (internal quotation omitted). The statute at issue in *Bright* was Idaho Code § 25-2805(2) (2015), Idaho's dog-bite law. *Id.* The holding in *Bright* is wholly inapplicable. "[I]t is well established that rules regarding the appropriate standard of review, or even the availability of review at all, to be applied by a federal court sitting in diversity, are questions of federal law." *Freund v. Nycomed Amersham*, 347 F.3d 752, 762 (9th Cir. 2003). Indeed, the Ninth Circuit has cited to *Potter* for the same standard of review for demand requirements in cases arising under Delaware law,[19] Washington law,[20] and Nevada law.[21] To the extent Miesen argues that *Munding* is unpersuasive

---

[18] Miesen has objected to citations of *Potter* in the Hawley Troxell Defendants' briefing and in *Munding*. Because the Ninth Circuit in *Potter* was reviewing California law regarding derivative demands, Miesen contends that citations to *Potter* indicate application of California law, rather than Idaho law. This is not true. Courts may cite to federal cases for federal procedural law even if the cases involve differing substantive state law.

[19] *Tindall v. First Solar Inc.*, 892 F.3d 1043, 1045 (9th Cir. 2018).
[20] *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1012 (9th Cir. 2010).

[21] *La. Mun. Police Emp.'s Ret. Sys. v. Wynn*, 829 F.3d 1048, 1058 (9th Cir. 2016).

MEMORANDUM DECISION AND ORDER - 33

because it applied the wrong standard of review, Miesen is wrong.

Fourth, Miesen contends the Ninth Circuit did not evaluate the June 2016 Demand under Idaho state law. As mentioned earlier, the Ninth Circuit expressly stated that it was applying Idaho law. *Munding*, 822 Fed. App'x at 548 ("Applicable state law required Mr. Miesen to make a 'written demand . . . upon the corporation to take suitable action.' Idaho Code § 30-29-742."). The Eastern District of Washington did as well. *Munding*, 2019 WL 1410899, at \*5 ("[T]his Court must follow Idaho law, because the AIA Entities are incorporated under Idaho law according to the amended complaint."); *id.* (citing Idaho Code § 30-29-742 for the demand requirement); *id.* at \*6 ("The Court agrees that Plaintiff's derivative demands, as replicated in Plaintiff's amended complaint, do not sufficiently describe the 'suitable action' to satisfy notice under Idaho Code § 30-29-742 . . . .").

Miesen argues that the two *Munding* decisions failed to apply Idaho law as evidenced by their failure to cite *McCann* and the comments under Idaho Code Section 30-1-742, and in not following "Idaho's more relaxed standard for derivative demands." Dkt. 1131, at 10. The lack of a citation to *McCann* and the comments is not fatal to either decision, nor does it indicate that the two courts did not apply Idaho law; however, for thoroughness, the Court will review both *McCann* and the comments and compare them to the holding in *Munding*.

In his response brief, Miesen includes an excerpt from *McCann*, which he argues is contrary to the holding in *Munding*:

> **The demand on the directors need not assume a particular form nor need it be made in any special language. However, the stockholder must make an earnest and sincere, and not a feigned or simulated, effort**

MEMORANDUM DECISION AND ORDER - 34

> **to include the directors to take remedial action in the corporate name.**
> Statements should be presented to the directors showing the wrong complained of, accompanied by sufficient responsible data which will enable the directors to determine whether litigation could be engaged in with some hope of success. The shareholder must state facts, not mere general charges and conclusions.
>
> The demand should give the directors a fair opportunity to initiate the action which the shareholder wants to undertake, and name the potential defendants, as well as the shareholder making the demand.
>
> The shareholder should allow sufficient time for the directors to act upon the demand before initiating the action. The directors' response must be obtained, if possible. The shareholder must comply with the reasonable requests of the directors in an effort to resolve the problems before commencing an action. Thus, a shareholder may be required to provide additional information to the directors.

Dkt. 1131, at 19–20 (quoting *McCann*, 61 P.3d at 591–92) (emphasis in original). Miesen argues that this excerpt makes clear that Idaho law did not require the "demand to provide the specific causes of action or provide all of the facts to support such causes of action." Dkt. 1331, at 20. In *Munding*, the Ninth Circuit concluded that the demand's generic and conclusory language could not "have been expected to provide the boards with enough information to take 'suitable action.'" *Munding*, 822 Fed. App'x at 548. The Ninth Circuit explained, "Without knowing the factual bases for the claims, the boards could not determine the likelihood of the lawsuit's success and would have had difficulty weighing factors like the expenses involved in litigation or whether litigation would further the AIA Entities' general business interests." *Id.* at 548–49. Because of the demand's inadequacies, the Ninth Circuit affirmed the lower court's dismissal of the complaint for failure to meet Rule 23.1's pleading requirements.[22] While the Ninth Circuit did not cite *McCann* directly,

---

[22] Miesen contends that Rule 23.1 "plays no role in determining the adequacy of [his] derivative demands under Idaho law." Dkt. 1131, at 31; *see also id.* at 18. Indeed, "although Rule 23.1 clearly *contemplates*

MEMORANDUM DECISION AND ORDER - 35

it did base its holding on the same law. Notably, *McCann* also holds that "[t]he shareholder must state facts, not mere general charges and conclusions" and that the shareholder must name the potential defendants. 61 P.3d at 591–92. The purpose of stating facts and claims, even if not the precise claims, is to "give the directors a fair opportunity to initiate the action which the shareholder wants to undertake." *Id. Munding* holds the same.

Miesen also argues that *Munding* ignores the comments to Section 30-1-742. To be clear, this Idaho statute does not have comments. Rather, Miesen is referring to the ABA comments to the Model Business Corporation Act Section 742. *See* Dkt. 1331, at 20. Miesen contends that the "Idaho Supreme Court relies on the ABA Comments to interpret the Idaho Business Corporation Act." *Id.* at 20 n.9. For this proposition, Miesen cites to *Wagner v. Wagner*, 371 P.3d 807, 811 (Idaho 2016). In *Wagner*, the Idaho Supreme Court was interpreting the statutory term "fair value" in Idaho Code Section 30-29-1434(4). 371 P.3d at 811. Referring to the ABA comments, the Court explained, "While the legislature did not adopt the comments to the MBCA, the comments do provide guidance as to the meaning of 'fair value.'" *Id.* Thus, the ABA comments are *not* Idaho law, but they may provide some guidance. The comments Miesen specifically refers to state:

---

both the demand requirement and the possibility that demand may be excused, it does not *create* a demand requirement of any particular dimension. On its face, Rule 23.1 speaks only to the adequacy of the shareholder representative's pleadings." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991). In *Munding*, the court was reviewing Miesen's complaint for what it said about the demand. There, Miesen did not provide the court with the full demand but rather included excerpts to the demand in the complaint. Here, Miesen does not include the language from his demands in the Third Amended Complaint; rather, he refers to them and provides a citation to where they may be found in the record. Dkt. 211, at ¶¶ 171–84. The Ninth Circuit in *Munding* evaluated the demands, as excerpted in the complaint, under Idaho law and found them inadequate. This Court must likewise evaluate the demands under Idaho law, even if not excerpted in the complaint.

MEMORANDUM DECISION AND ORDER - 36

> Section 742 specifies only that the demand shall be in writing. The demand should, however, set forth the facts concerning share ownership and be sufficiently specific to apprise the corporation of the action sought to be taken and the grounds for that action so that the demand can be evaluated. **Detailed pleading is not required since the corporation can contact the shareholder for clarification if there are any questions. In keeping with the spirit of this section, the specificity of the demand should not become a new source of dilatory motions**.
>
> The demand is intended to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs.

Dkt. 1131, at 20 (quoting Mod. Bus. Corp. Act § 742 cmts. 1 & 4 (2002)) (emphasis in original) (cleaned up). Miesen fails to explain how this is contrary to the holding of *Munding*, and if it is indeed contrary, Miesen fails to explain how these comments, which are not state law, hold greater weight than *Munding*.

Finally, Miesen contends that *Munding* is not in harmony with the "more relaxed standard for derivative demands" in Idaho. Dkt. 1131, at 10. The standard he is referring to is the standard addressed in *McCann*, so this is not a unique argument but rather goes back to the application of *McCann*.

After reviewing Miesen's arguments challenging the persuasiveness of *Munding*, the Court finds that none of his challenges have merit. *Munding* is a Ninth Circuit case regarding the same plaintiff and one of the same demand letters, namely the June 2016 Demand, involved in this case. While *Munding* is unpublished and thus nonprecedential,[23]

---

[23] "A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like; and (ii) issued on or after January 1, 2007." Fed. R. App. P. 32.1(a).

MEMORANDUM DECISION AND ORDER - 37

the Court strains to think of a how a case could be more persuasive than this one, which comes from the court of appeals over this district, has the same plaintiff, and reviews the same evidence presently at issue.

> b.  The Five Demands
>
> > i.  June 2016 Demand – Dkt. 148-2

For the same reasons that the Ninth Circuit found the June 2016 Demand inadequate, this Court also finds it inadequate. The June 2016 Demand was addressed to the Board of Directors of the AIA Entities. It was from Rod Bond, who at the time was legally representing Dale Miesen, Jerry Legg, and Donna Taylor. The letter specifically stated that it was a derivative demand. The letter concerned legal claims against "Combined Defendants," including the Hawley Troxell Defendants and the Individual and CropUSA Defendants. It demanded that "all possible claims and legal action be immediately taken in a court of law on behalf of AIA." Dkt. 148-2, at 2. In forty-four numbered paragraphs, it then listed, in a generic and conclusory fashion, "all possible claims" relating to various actions by the AIA Entities and various defendants. The Ninth Circuit concluded that this demand letter "failed to describe with particularity the claims for relief [Miesen] sought or the factual bases for those claims." *Munding*, 822 Fed. App'x at 548. The Court agrees.

The only way to distinguish the demand allegations here from those at issue in *Munding* is if the demands relating to the Hawley Troxell Defendants and the Individual and CropUSA Defendants are adequate in a way that the demands relating to the defendant in *Munding*, namely John Munding, were not. The Court has reviewed the June 2016 Demand's allegations relating to the various parties and finds no meaningful difference

MEMORANDUM DECISION AND ORDER - 38

between the allegations lobbed against the Hawley Troxell Defendants and John Munding. A large portion of the demands are to "[p]ursue all possible claims and defenses against the Combined Defendants." *See* Dkt. 148-2. The Combined Defendants include John Munding, the Hawley Troxell Defendants, and the Individual and CropUSA Defendants. Thus, with respect to individual demands relating to the Combined Defendants, the Ninth Circuit's decision in *Munding* applies to Hawley Troxell Defendants and the Individual and CropUSA Defendants.

In addition to the Combined Defendants paragraphs, the June 2016 Demand contains one specific paragraph for the Hawley Troxell Defendants and one specific paragraph for John Munding:

> 11. Pursue all possible claims against Hawley Troxell requiring it to disgorge all compensation received or paid to Hawley Troxell directly or indirectly from AIA based on Hawley Troxell's conflicts of interest, breached fiduciary duties (including the duties of loyalty) and related malpractice, including, without limitation, all subsequent payments made by AIA to Hawley Troxell.
> . . .
> 22. Pursue all possible claims against John Munding and Crumb & Munding (or such other firm Mr. Munding is operating through) for malpractice, breach of fiduciary duties and to disgorge all attorneys' fees, costs and expenses paid to them directly or indirectly by AIA for the California Lawsuit as Mr. Munding intentionally violated his duties owed to AIA, including, without limitation, his duties of loyalty owed to AIA and by taking direction and action benefitting other defendants (including John's) and placing their interests in front of AIA and by representing CropUSA, AIA and other parties when there were conflicts of interest in doing so and Mr. Munding knew that he could not properly represent AIA's interests and when he had no intention of doing so. Demand is further made to pursue all possible claims against Mr. Munding and Crumb & Munding for improperly failing to assert that the guarantees and settlement agreements entered into by AIA were not authorized and were thus illegal or ultra-vires and by allowing AIA to enter into them in the first place. Mr. Munding places his interests in earning fees ahead of AIA's interests.

MEMORANDUM DECISION AND ORDER - 39

1-ER-137

Dkt. 148-2, at 5, 7–8. Comparing these two paragraphs, the Court cannot find any instance where the allegations against the Hawley Troxell Defendants is less generic or less conclusory than the allegations against John Munding, thus warranting different treatment.

The allegations against CropUSA are likewise generic and conclusory. Beyond the paragraphs relating to the Combined Defendants, there are only two paragraphs directed towards CropUSA in the June 2016 Demand:

> 18. Pursue all possible claims against the Controlling AIA Defendants, CropUSA and any other of the Combined Defendants or responsible parties for all payments made to any and all vendors, creditors, consultants, agents, customers or other parties owed money by CropUSA, by the Controlling AIA Defendants, any entity partially or wholly owned by any one of the Controlling AIA Defendants, or paid at the direction of any one or more of the Controlling AIA Defendants, including, without limitation, the more recent hundreds of thousands of dollars in payments AIA made to certain agents and customers of CropUSA in 2013 and any previously or subsequently paid for CropUSA and any other entity.
> . . .
> 34. Pursue all possible claims that CropUSA and other entities (including Pacific Empire Radio) are the alter-ego of the Controlling AIA Defendants and thus they are individually liable for all damages.

Dkt. 148-2, at 6, 9. These demands do not sufficiently describe the "suitable action" the AIA Entities should take. Idaho Code § 30-29-742.

Turning to the Controlling Defendants, the Court notes that the June 2016 Demand does identify them more frequently. However, this fact does not change the outcome. The June 2016 Demand still does not go beyond generic and conclusory allegation and does not identify specific, suitable actions for the AIA Entities to consider pursuing. Rather, it continues to rely on the phrase "all possible claims" and does not set forth the factual bases for the claims. Thus, for the same reasons the demand failed in *Munding*, the demands

MEMORANDUM DECISION AND ORDER - 40

1-ER-138

relating to the Controlling Defendants in the June 2016 Demand also fail.

What then remains are the four other demand letters. The Hawley Troxell Defendants argue that none of these letters fare better than the inadequate June 2016 Demand. They argue that the remaining letters have the same inadequacies as the June 2016 Demand and/or other inadequacies. Below is a review of each demand:

ii. July 2008 Demand – Dkt. 23-9

The earliest demand letter is the July 2008 Demand. The Hawley Troxell Defendants argue this letter is even more lacking than the June 2016 Demand. The Court agrees.

The June 2016 Demand letter is addressed to the AIA Entities' Board of Directors. It is written by attorney Michael Bissell on behalf of Donna Taylor and Reed Taylor. In the letter, the Taylors demanded that the Board of Directors:

> [T]ake action against the law firms of Hawley Troxell Ennis & Hawley; Clements, Brown & McNichols; Quarles & Brady; together with the responsible attorneys of said firms (and any other firms which have wrongfully represented the entities) for violating the applicable Rules of Professional Conduct, malpractice, breach of fiduciary duties, and aiding and abetting, including, without limitation, all acts related to or involving the following claims and/or causes of action: [list].

Dkt. 23-9, at 1. The list did not describe with particularity the claims for relief or the factual bases for those claims.[24] Therefore, like the June 2016 Demand, this letter "cannot have

---

[24] Here is a sampling of that list:

. . .

    2. Taking action against the best interests of AIA Services and/or AIA Insurance;

    . . .

    5. Issuing inappropriate opinion letters to lenders and auditors;

    . . .

MEMORANDUM DECISION AND ORDER - 41

been expected to provide the boards with enough information to take 'suitable action.'"
*Munding*, 822 Fed. App'x at 548. As the Hawley Troxell Defendants point out, "[t]he letter
fails to ascribe any of the 27 alleged causes of action to any particular law firm or lawyer,
and fails to even identify a lawyer who was purportedly liable or describe how they were
allegedly involved." Dkt. 1067-1, at 12.[25]

Miesen fails to argue that the July 2008 Demand is any clearer than the June 2016
Demand. Instead, he contends that it is sufficient under Idaho law, flatly ignoring *Munding*.
He also argues that the board could have asked for clarification if any demand was lacking
in information. While the board could have asked for clarification, it was not required to
do so.

Because the July 2008 Demand does not go beyond general and conclusory
allegations, it is inadequate under Idaho law.

### iii. April 2012 Demand – Dkt. 67-33

The April 2012 Demand is a four-paragraph email from attorney Rod Bond, on

---

7. Preventing claims from being made against present and past directors, including, without limitation, R. John Taylor, Michael Cashman, James Beck and Connie Taylor;
. . .
10. Failing to take action against interested directors and parties who took part in fraud, conspiracy and other illegal activities, including, without limitation, R. John Taylor, James Beck, Michael Cashman and Connie Taylor;
11. Breaching fiduciary duties (including the duty of loyalty owed to AIA Services and AIA Insurance;
. . .
22. Failing to comply with contractual obligations owed to Reed and Donna;
. . .
27. Accepting payment of attorneys' fees and costs which should have been allocated to other parties, including, without limitation, fees and costs that should have been paid by Crop USA, R. John Taylor, James Beck, Michael Cashman and Connie Taylor.

[25] While the demand does mention attorney Richard Riley, it describes him as "a witness." Dkt. 23-9, at 3.

MEMORANDUM DECISION AND ORDER - 42

behalf of Donna Taylor, Dale Miesen, LeeAnn Hostetler, Kay Hanchett, Jerry Legg, and

Bobette Ruddell, to the "Counsel and Board of Directors of AIA Services and AIA

Insurance." Dkt. 67-33. The demand itself is a single paragraph, included in its entirety:

> Demand is hereby made to the board of directors of AIA Services and AIA Insurance to; (1) cease all efforts to withdraw the $400,000 in the court registry in Taylor v. AIA Services; (2) cease paying any attorneys' fees or costs for John Taylor, Michael Cashman, and James Beck; (3) secure the mortgage of the Lewis Clark Hotel; (4) cease all compensation to the foregoing individuals; (5) hold annual shareholder meetings; (6) comply with all applicable Bylaws and Articles of Incorporation of the corporations; and (7) make full disclosure to all shareholders of all of the inappropriate and illegal transactions which have occurred over the years. Obviously, complying with the Bylaws, Articles of Incorporation and Idaho law results in the present purported board members being conflicted from taking any action whatsoever, including withdrawing the $400,000 held in the court registry or taking any other funds or assets from the corporations.

*Id.* Simply put, that demand is not a derivative demand. While it directs the Board to take

certain actions, it does not direct the Board to initiate an action against any other party. *See*

*McCann*, 61 P.3d at 592. It does not include "[s]tatements . . . presented to the directors

showing the wrong complained of, accompanied by sufficient responsible data which will

enable the directors to determine whether litigation could be engaged in with some hope of

success." *Id.* (quoting 19 Am. Jur. 2d Corporations § 2277, 172–73 (1986)). The email

presents no legal claims and makes no reference to litigation.

Furthermore, while the text of the email says it is addressed to "Counsel and Board

of Directors of AIA Services and AIA Insurance," the email was not sent to the Board of

Directors, only to attorneys David Risely, John Ashby, Gary Babbitt, and James LaRue.

*Id.* The Idaho Supreme Court has held that demand letters are insufficient when delivered

to a corporation's attorney and not sent to the directors themselves. *McCann*, 61 P.3d at

MEMORANDUM DECISION AND ORDER - 43

592.

Accordingly, the Court finds the April 2012 Demand inadequate.

iv. July 2012 Demand – Dkt. 67-42

The July 2012 Demand encompasses demands made by various shareholders, including Miesen, at a shareholder meeting. The Hawley Troxell Defendants argue that the July 2012 Demand is insufficient for two primary reasons: (1) it fails to demand action against the Hawley Troxell Defendants, and (2) the demands are vague and factually unsupported and thus insufficient for the same reasons the June 2016 Demand was insufficient in *Munding*.

The July 2012 Demand does not name any of the Hawley Troxell Defendants. Under Idaho law, a derivative demand must "name the potential defendants" so that the directors may determine whether to litigate the claim. *McCann*, 61 P.3d at 592 (quoting 19 Am. Jur. 2d *Corporations* § 2278, 173–74 (1986)). The only hint of a claim against the Hawley Troxell Defendants comes as a reference to the present case:

> That R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, JoLee Duclos and Aimee Gordon be barred from serving as directors or officers of the Company based upon the ongoing malfeasance, conflicts of interest, failure to act in good faith, breaches of fiduciary duties (including the duties of loyalty, care and good faith) and other acts and/or omissions committed under their direction, participation and/or acquiescence, including, without limitation, those acts and/or omissions identified in the First Amended Complaint in *Donna J. Taylor v. Hawley Troxell Ennis & Hawley, R. John Taylor, Michael Cashman, James Beck, et al.*, United States District Court for the District of Idaho, Civil No. l:10-cv-00404-MLB (the "Federal Court Case"), which said First Amended Complaint is incorporated by reference herein, and that legal action be taken against them.

Dkt. 67-42, at 1. The Court does not find that this reference is sufficient to have given the

MEMORANDUM DECISION AND ORDER - 44

AIA Entities fair opportunity to review and pursue possible claims against the Hawley Troxell Defendants.

Of course, the Individual and CropUSA Defendants joined this Motion to Dismiss, so this demand letter must also be reviewed as it pertains to them. Like the April 2012 Demand, the July 2012 Demand fails as a *derivative* demand. Almost all of the demands are for the AIA Entities to take some action *not* involving litigation. *See generally* Dkt. 67-43. To be sure, at the start of each shareholder's demands is a line calling it a derivative demand, but calling a document a derivative demand does not automatically make it so. There are only four unique paragraphs that mention anything about pursuing legal action:[26]

> 1. That R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, JoeLee Duclos and Aimee Gordon be barred from serving as directors or officers of the Company based upon the ongoing malfeasance, conflicts of interest, failure to act in good faith, breaches of fiduciary duties (including the duties of loyalty, care and good faith) and other acts and/or omissions committed under their direction, participation and/or acquiescence, including, without limitation, those acts and/or omission identified in the First Amended Complaint in *Donna J. Taylor v. Hawley Troxell Ennis & Hawley, R. John Taylor, Michael Cashman, James Beck, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case"), which said First Amended Complaint is incorporated by reference herein, and that legal action be taken against them.
> . . .
> 3. That Paul D. Durant be appointed as the President of AIA Services Corporation and AIA Insurance, Inc., to be duly compensated, and to operate those entities in the best interests of the corporations and their shareholders (with an emphasis on recovering damages and sums from majority shareholder R. John Taylor and Connie Taylor Henderson and others for the benefit of the corporations and their innocent shareholders) and to retain and/or terminate such employee(s) and/or officer(s) as he deems appropriate to properly operate the corporations and pursue any claims set forth in the First Amended Complaint in the Federal Court Case and similar or other

---

[26] Each of the fourteen shareholders made a separate demand, but they are largely identical.

MEMORANDUM DECISION AND ORDER - 45

claims against named and unnamed parties. Mr. Durant should also be authorized to appoint other parties to the Board of Directors to serve until the next annual meeting as provided under the Restated Bylaws.

4. That the Company (regardless of Mr. Durant's appointment as an officer or director of the Company), and Paul D. Durant if appointed as an director and/or officer, be authorized to pursue the claims and causes of actions identified in the First Amended Complaint filed in the Federal court Case through the date of this Demand and for all related acts after the date of this Demand, including, without limitation, requesting and praying for punitive damages against the parties named in the Federal Court Case and any other responsible parties named in this Demand. A copy of said First Amended Complaint is incorporated by reference herein and is already in the possession of the Company and its purported officers and purported directors (a copy can also be obtained from PACER (the online filing system for the United States District Court for the District of Idaho)).

. . .

18. Nothing in this Demand should be construed as a waiver or limitation of any claims, causes of action, and/or relief requested presently asserted by the undersigned in the First Amended Complaint in the Federal Court Case. This Demand is intended to supplement and assert demand for action to pursue claims, causes of action, and damages asserted in the First Amended Complaint and to include causes of actions, claims and damages accrued since the undersigned's last demand. By making this Demand, Donna Taylor is also asserting additional claims and relief to add to her claims in the Federal Court Case and to include the presently pled claims and other claims through the present time and/or as set forth above. Donna Taylor asserts that her presently pled claims have all been adequately covered by her prior derivative demand letters and this Demand is not a waiver of any claims presently pled in the Federal Court Case.

Dkt. 67-43, at 7, 10.[27] These paragraphs do not state the legal claims Miesen wanted the

AIA Entities to pursue, nor do they give any factual background to support legal claims.

To the extent that the demand is to pursue the claims already in the Federal Court Case,

i.e., the instant case, that is not a pre-suit demand. *See* Idaho Code § 30-29-742; *Mannos*,

155 P.3d at 1172–73 ("[A] shareholder may not commence a derivative proceeding until

---

[27] Paragraphs 1, 3, and 4 are identical across all of the shareholders' demands. However, only Donna Taylor's demand includes paragraph 18.

MEMORANDUM DECISION AND ORDER - 46

he makes a written demand upon the corporation to take suitable action at least ninety days prior to the commencement of the action."). For these reasons, the July 2012 Demand is inadequate.

> v.  August 2016 Demand – Dkt. 186-2

The Hawley Troxell Defendants contend that the August 2016 Demand is substantially similar to the June 2016 Demand and is likewise insufficient. The Court agrees. The same defects in the June 2016 Demand plague the August 2016 Demand. Miesen has failed to show that there is any meaningful difference in the August 2016 Demand that makes it sufficient under Idaho law where the June 2016 Demand is not.

> c.  Miesen's Arguments About the Demand Standard Being Excused or Relaxed

Notwithstanding the inadequacies of the demands, Miesen argues that the Idaho Supreme Court would excuse or relax the demand standard under the facts of this case. Miesen contends that the directors of the AIA Entities are rogue malfeasants so the demand requirement should be excused or relaxed.[28] What this argument ignores, is that under Idaho law there is no futility exception to the demand requirement. *McCann*, 61 P.3d at 593; *Mannos*, 155 P.3d at 1173. While Miesen tactfully avoids the word "futile" in his filings, what he is essentially arguing is that because the AIA Entities did not have proper corporate governance and the directors were engaged in tortious conduct, demand was futile and thus unnecessary. The semantics do not change the underlying argument.

---

[28] This argument relates to the first and fourth questions in the Motion to Certify.

MEMORANDUM DECISION AND ORDER - 47

Accordingly, Miesen was not excused from the demand standard set forth in Idaho Code Section 30-29-742 nor is that standard altered in this case.

At the hearing, Miesen also argued that although the Eastern District of Washington and the Ninth Circuit were right in their *Munding* conclusions,[29] the Court should come to a different conclusion here because the demands should be read in the full context of what the board of directors knew about the underlying shareholder complaints. Miesen contends that the two *Munding* courts only had the demand to review, and in that vacuum, the demand was inadequate. The current case is different according to Miesen because this Court has fuller record before it to demonstrate that the board of directors knew what specific actions and concerns the demands regarded.[30] In essence, Miesen argues the board knew what the shareholders meant even if the shareholders did not spell it out in any of the demand letters.

The Court cannot accept this argument. The demand requirement is a pre-condition to filing a derivative shareholder lawsuit. Idaho Code § 30-29-742; *see also Mannos*, 155 P.3d at 1172–73. Idaho law provides no futility exception or any other like exception. *McCann*, 61 P.3d at 593. Failure to make an adequate demand results in dismissal of the lawsuit. Miesen's argument is creative but ultimately no different than a futility argument:

---

[29] This concession was a sharp departure from the position in Miesen's brief where he argued that those decisions were hearsay, irrelevant, and inapplicable.

[30] At the motion to dismiss stage, the Court is concerned not with the whole record but with the pleadings. Of course, Miesen asked the Court to take judicial notice of some documents for the purpose of establishing that the board of directors knew what the derivative demands meant. The Court denied those requests, noting that the Third Amended Complaint included allegations that the directors were aware of the demands and the underlying issues.

MEMORANDUM DECISION AND ORDER - 48

Miesen should not be held to the demand requirement because the circumstances were such that the board knew what was happening and was not pursuing legal action.[31] Boards of directors commonly know of the underlying concerns and complaints at issue in derivative litigation, but that knowledge does not excuse a demand requirement under state law.

Indeed, accepting this argument would remove any effect from the requirement for a written pre-suit demand. To illustrate, a shareholder could inform the board of directors of a perceived wrong. The next day, the shareholder could send an email to the board saying, "Pursuant to our conversation yesterday, this is a derivative demand that the corporation pursue all legal claims." That "demand" in the context of the earlier conversation could satisfy the demand requirement under Miesen's theory. But how would a court review it for adequacy? The court would need to look beyond the written demand itself, removing nearly all legal significance from the demand and placing the focus instead on what the board knew or did not know about the alleged wrong. This would be an onerous burden indeed. Delving into the subjective understanding of individual board members and evaluating those thoughts against the sufficiency of any demand is a bridge too far.

At the hearing, Miesen failed to identify any caselaw to support his theory that the standard for reviewing demand adequacy should take into consideration what the board knew. Rather, he argued that this principle is implicit in Idaho caselaw regarding derivative demands. The Court disagrees. The relevant caselaw from the Idaho Supreme Court does not look beyond the demand itself when reviewing it for adequacy. *See McCann* 61 P.3d

---

[31] This is not to say that this argument would be successful if Idaho had a futility exception.

MEMORANDUM DECISION AND ORDER - 49

at 592 (determining whether the plaintiff met the demand requirement based on the derivative demand letter rather than the prior communications).

    *4.  Summary*

The derivative demand requirement is a mandatory precondition to bringing a derivative action. Miesen failed to satisfy the derivative demand under Idaho law. Although Judge Dale originally found the letters to be adequate, the Court now has the benefit of a Ninth Circuit case on this exact matter. Furthermore, Judge Dale's ruling was interlocutory. While the law of the case doctrine strives for consistency, it also allows for changed circumstances. Said differently, even had this been brought as a motion for partial reconsideration of Judge Dale's prior findings, the Court could have come to the same conclusion it did today.

Thus, after over eleven years since this case began, the Court must DISMISS Miesen's derivative claims against the Hawley Troxell Defendants, the Individual Defendants, and CropUSA. Because amending the complaint would not remedy the inadequacies of the Complaint, the Court must also DISMISS these derivative claims WITH PREJUDICE.

**D.  What Remains**

This case is frankly a procedural mess with over 1,200 docket entries. The Third Amended Complaint had eleven counts, some of which have already been dismissed in whole or in part. What's more, Miesen contends that some of these counts are not derivative claims but are direct claims, and the Hawley Troxell Defendants disagree, at least as to the claims brought against them. And not to be forgotten, this case also has third-party claims,

MEMORANDUM DECISION AND ORDER - 50

crossclaims, and counter-crossclaims. Additionally, there are ten pending motions remaining in this case, and the Court has stayed briefing on those motions. Some of those motions may now be moot.

In the interest of judicial economy, the Court instructs each party in this case, including those not involved with the present motions, to file a concise status report, no more than five pages, explaining what issues remains in this case—including the status of any pending motions. Each party should address which of their claims still exist and/or which of the claims brought against them still exist. The parties should cite to the docket to explain which claims have been dismissed. The status reports are due within fourteen days of this order. The Court will then review the status reports and determine how to proceed with the case, including whether to moot any motions, direct further briefing on issues in dispute in the status reports, and/or whether to lift the briefing stay on the remaining motions.

## IV. CONCLUSION

In summary, the Court DENIES Miesen's Motion to Certify (Dkt. 1148), DENIES the Miesen's Amended Request for Judicial Notice (Dkt. 1153), and GRANTS the Hawley Troxell's Motion to Dismiss (Dkt. 1067), which was joined by the Individual and CropUSA Defendants (Dkt. 1090). Accordingly, the derivative claims brought against the Hawley Troxell Defendants and the Individual and CropUSA Defendants are DISMISSED WITH PREJUDICE.

MEMORANDUM DECISION AND ORDER - 51

1-ER-150

## V. ORDER

The Court HEREBY ORDERS:

1. Plaintiff Dale Miesen's Motion to Certify (Dkt. 1148) is DENIED.

2. Plaintiff Dale Miesen's Amended Request for Judicial Notice (Dkt. 1153) is DENIED.

3. The Hawley Troxell Defendants' Motion to Dismiss (Dkt. 1067) is GRANTED. The derivative claims brought against them and the Individual and CropUSA Defendants who joined (Dkt. 1090) are DISMISSED WITH PREJUDICE in accordance with the decision above.

4. Each party's status report is due within fourteen (14) days of this order.

DATED: May 5, 2022

_____

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 52

**1-ER-150**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporations and its wholly owned subsidiary AIA Insurance, Inc., <br><br> Plaintiff, <br> v. <br><br> MICHAEL W. CASHMAN, SR., et al., <br><br> Defendants. | Case No. 1:10-cv-00404-DCN <br><br> **ORDER** |

After nearly twelve years, this case seems to be in its final phase. On May 5, 2022, the Court issued a decision dismissing Plaintiff Dale Miesen's derivative claims. Dkt. 1203. Because the parties disagreed whether Miesen had alleged any direct claims and because the case includes third-party claims and counterclaims, the Court instructed each party to file a status report addressing which claims and which motions remained. The parties filed those status reports between May 9 and May 19, 2022. Dkts. 1204, 1207, 1208, 1209, 1210, 1211, and 1212. Having reviewed the status reports, the Court now instructs the parties on the next phase of this case.

For convenience, below is a table showing the active Complaints and relevant motions:[1]

---

[1] Some motions are now moot because of the Settlement Agreement between Miesen and the Hawley Troxell Defendants. That will be discussed later. The Court lists these motions in the table because they have not yet been officially termed.

ORDER - 1

| Docket | Description | Status |
|---|---|---|
| 211 | Miesen's Third Amended Complaint | Derivative claims against Hawley Troxell Defendants, Individual Defendants, and Crop USA Defendants dismissed. Dkt. 1203.<br><br>All claims against Hawley Troxell Defendants dismissed. Dkt. 1235.<br><br>Some claims against GemCap still remain. |
| 218 | Crop USA and Individual Defendants' Third-Party Complaint | Moot to the extent that Court's May 5, 2022 Memorandum Decision and Order dismissed Miesen's Third Amended Complaint. |
| 276 | Reed Taylor's First Amended Answer to Third-Party Complaint and Counterclaims Against Individual Defendants and Crop USA Defendants | Counterclaim is still pending |
| 399 | Crumb & Munding's Motion for Attorney Fees | May be renewed at the conclusion of the case. Dkt. 420. |
| 1062 | Hawley Troxell Defendants[2] Motion for Leave to File Overlength Memo and Statement of Facts in Support of MSJ | Briefing stayed. Dkt. 1089. Moot because of Hawley Troxell Settlement. Dkt. 1235. |
| 1064 | Individual Defendants[3] and Crop USA Defendants'[4] Motion for Leave to File Overlength Memo and Statement of Facts in Support of MSJ | Briefing stayed. Dkt. 1089. |
| 1067 | Hawley Troxell Defendants' Motion to Dismiss – joined by the Individual and Crop USA Defendants (Dkt. 1090) | Granted. Dkt. 1203. The Court dismissed Miesen's derivative claims. The Court must still |

[2] The Hawley Troxell Defendants consist of Hawley Troxell Ennis & Hawley LLP, Gary D. Babbitt, D. John Ashby, and Richard A. Riley.

[3] The Individual Defendants consist of James Beck, Michael Cashman, Connie Henderson, and R. John Taylor.

[4] The Crop USA Defendants consist of Crop USA Insurance Agency, Inc., and Crop USA Insurance Services, LLC.

ORDER - 2

| | | determine whether Miesen alleged any direct claims. |
|---|---|---|
| 1071 | Individual Defendants and Crop USA Defendants' Motion for Summary Judgment | Briefing stayed. Dkt. 1089. |
| 1073 | Reed Taylor's Motion for Summary Judgment – Related to Third-Party Complaint | Briefing stayed. Dkt. 1089. |
| 1074 | Reed Taylor's Motion for Summary Judgment Against Hawley Troxell Defendants | Briefing stayed. Dkt. 1089. Moot because of Hawley Troxell Settlement. Dkt. 1235. |
| 1075 | GemCap's Motion to Dismiss | Briefing stayed. Dkt. 1089. |
| 1076 | Reed Taylor's Motion for Partial Summary Judgment Against John Taylor | Briefing stayed. Dkt. 1089. |
| 1077 | Hawley Troxell Defendants' Motion for Summary Judgment | Briefing stayed. Dkt. 1089. Moot because of Hawley Troxell Settlement. Dkt. 1235. |
| 1078 | GemCap's Motion for Leave to File Overlength Memo in Support of MSJ | Briefing stayed. Dkt. 1089. |

Significantly, after the May 5, 2022 Memorandum Decision and Order, Miesen reached a settlement with the Hawley Troxell Defendants. Dkt. 1205. A settlement approval hearing was held July 28, 2022. Dkt. 1215. The Court approved the settlement on August 4, 2022. Dkt. 1235. Therefore, the following motions are now MOOT: Docket Numbers 1062, 1074, and 1077.

GemCap and Miesen also reached a settlement. Dkt. 1231. The settlement requires the Court's approval. Fed. R. Civ. P. 23.1(c). The Motion to Approve the Settlement shall be filed no later than August 11, 2022, and all briefing should be complete by September 15, 2022. Dkt. 1234. If the Court approves the settlement, then the following motions will be moot: Docket Numbers 1075 and 1078. Additionally, Miesen's remaining claims against GemCap in the Third Amended Complaint would be dismissed.

ORDER - 3

The next issue for the Court to determine is the extent of its May 5, 2022 Memorandum Decision and Order. In that, the Court dismissed Miesen's derivative claims against the Hawley Troxell Defendants, the Individual Defendants, and the Crop USA Defendants. Dkt. 1203. The Court did not determine which of the claims in Miesen's Third Amended Complaint were derivative and which, if any, were direct. Miesen contends that he has some direct claims, including a claim against the AIA Entities.[5] The Individual Defendants, Crop USA Defendants, and AIA Entities argue that all Miesen's claims against them were derivative and as such are all dismissed. Further briefing on this issue is needed. Because this is an extension of the underlying motion to dismiss, the moving parties (the Individual Defendants, Crop USA Defendants, and AIA Entities) must file the opening brief explaining why each of the claims against them in Miesen's Third Amended Complaint should be dismissed. They may do so jointly or separately so long as each claim is addressed as it applies to the relevant defendants, including the AIA Entities. The opening brief, or briefs, should be submitted within twenty-one (21) days of this Order. Thereafter, Miesen, as the responding party, will have twenty-one (21) days to respond. The Individual Defendants, Crop USA Defendants, and AIA Entities will then have opportunity to reply within fourteen (14) days of Miesen's response. Each of these briefs must strictly comply with Local Rule 7.1.

Once the issue of direct-versus-derivative is briefed, the Court will issue a written decision on the matter. If the Court finds that all the claims are derivative, then the

---

[5] The AIA Entities consist of AIA Services Corp. and AIA Insurance, Inc.

ORDER - 4

remainder of Miesen's Third Amended Complaint (Dkt. 211), and Individual Defendants and Crop USA Defendants' Third-Party Complaint (Dkt. 218) will be dismissed,[6] which will then moot the following motions: Docket Numbers 1064, 1071, and 1073. If, however, the Court finds that there are direct claims alleged against the Individual Defendants, Crop USA Defendants, or AIA Entities, those motions will still need to be resolved.

Regardless of the two settlements and the direct-versus-derivative dispute, the following are still at issue: Reed Taylor's Counterclaims (Dkt. 276); Reed Taylor's Motion for Partial Summary Judgment Against John Taylor (Dkt. 1076); and Crumb & Munding's Motion for Attorney Fees (Dkt. 399).

At this juncture, the Court will leave the briefing stay in place. After the Court resolves direct-versus-derivative dispute, it will moot any affected motions and, if necessary, lift the briefing stay on any motions regarding Miesen and the Individual Defendants and Crop USA Defendants. Thereafter, the Court will lift the briefing stay on Reed Taylor's Motion for Partial Summary Judgment Against John Taylor (Dkt. 1076). At the conclusion of the case, once all claims have been resolved, Crumb & Munding may renew their Motion for Attorney Fees (Dkt. 399).

The Court HEREBY ORDERS:

1. In compliance with the above instructions, the Individual Defendants, Crop USA Defendants, and AIA Entities must file a written brief within twenty-one (21) days

---

[6] The Third-Party Complaint seeks indemnification or contribution from Reed Taylor. Dkt. 218. Dismissal of Miesen's Third Amended Complaint would mean that the Individual Defendants and Crop USA Defendants have no liability, mooting their Third-Party claims against Reed Taylor for indemnification or contribution. Dkt. 1211, at 4.

ORDER - 5

of this Order explaining which of Miesen's claims against them are derivative. Miesen will then have twenty-one (21) days to respond. Then the Individual Defendants, CropUSA Defendants, and AIA Entities shall have fourteen (14) days to reply.

2. The Hawley Troxell Defendants' Motion for Leave to File Overlengthen Memo (Dkt. 1062) is DISMISSED AS MOOT.

3. Reed Taylor's Motion for Summary Judgment (Dkt. 1074) is DISMISSED AS MOOT.

4.  The Hawley Troxell Defendants' Motion for Summary Judgment (Dkt. 1077) is DISMISSED AS MOOT.

DATED: August 9, 2022

David C. Nye
Chief U.S. District Court Judge

ORDER - 6

1-ER-156

**Roderick Bond**

| | |
|---|---|
| **From:** | ecf@id.uscourts.gov |
| **Sent:** | Thursday, April 4, 2024 4:45 PM |
| **To:** | CourtMail@idd.uscourts.gov |
| **Subject:** | Activity in Case 1:10-cv-00404-DCN-CWD Taylor et al v. Hawley Troxell Ennis & Hawley LLP et al Order on Motion to Expedite |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of Idaho (LIVE) NextGen 1.7**

**Notice of Electronic Filing**

The following transaction was entered on 4/4/2024 at 2:45 PM MDT and filed on 4/4/2024

| | |
|---|---|
| **Case Name:** | Taylor et al v. Hawley Troxell Ennis & Hawley LLP et al |
| **Case Number:** | 1:10-cv-00404-DCN-CWD |
| **Filer:** | |
| **Document Number:** | 1293(No document attached) |

**Docket Text:**
**DOCKET ENTRY ORDER. Before the Court is Miesen's Motion to Expedite the Case. Dkt. [1282]. Insofar as the bankruptcy stay has been lifted and the Court and Counsel have resumed in moving this case toward completion, the motion is deemed MOOT. Signed by Judge David C. Nye. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (ec)**

**1:10-cv-00404-DCN-CWD Notice has been electronically mailed to:**

Alyson Anne Foster     afoster@bdfcounsel.com, celkins@bdfcounsel.com, jsdempsey@bdfcounsel.com, kpliska@bdfcounsel.com, tlong@bdfcounsel.com

Andrew M Schwam     amschwam@turbonet.com

Bradley S Keller     bkeller@byrneskeller.com, docket@byrneskeller.com, kwolf@byrneskeller.com

Daniel Loras Glynn     dglynn@idalaw.com, ilopez@idalaw.com

1

**1-ER-157**

David R Lombardi    drl@givenspursley.com, sharoncuslidge@givenspursley.com

David R Risley (Terminated)    david@risleylawoffice.com, judy@risleylawoffice.com

Fanxi Wang    fwang@birdmarella.com, mhicks@birdmarella.com

Jack S Gjording    jgjording@gfidaholaw.com, emulcahy@gfidaholaw.com, ktonkin@gfidaholaw.com

James B King    jking@ecl-law.com

Jeffrey A Thomson    jat@elamburke.com, nlp@elamburke.com

Joyce Ann Hemmer    jah@elamburke.com, dmh@elamburke.com

Kim J Trout    ktrout@trout-law.com

Lee H Rousso (Terminated)    lee@leerousso.com

Loren C Ipsen    lci@elamburke.com, nlp@elamburke.com

Mark T Drooks    mdrooks@birdmarella.com, mhicks@birdmarella.com

Markus William Louvier    mlouvier@ecl-law.com, cskene@ecl-law.com

Martin J Martelle (Terminated)    attorney@martellelaw.com, vanessa@martellelaw.com

Michael S Bissell    mbissell@campbell-bissell.com, mhayes@campbell-bissell.com

Rebecca L Dircks    rdircks@beneschlaw.com, docket@beneschlaw.com, eklopp@beneschlaw.com, kshah@beneschlaw.com

Roderick Cyr Bond    rod@roderickbond.com

Stephen Lee Adams    sadams@gfidaholaw.com, gfcases@gfidaholaw.com

Steven P Wieland (Terminated)    steven.wieland.service@mooneywieland.com, tyra.mooney@mooneywieland.com

Taylor L Bruun (Terminated)    tlb@dukeevett.com, mse@dukeevett.com

William E. Adams (Terminated)    Bill@weadamslaw.com

**1:10-cv-00404-DCN-CWD Notice will be served by other means to:**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc, | Case No. 1:10-cv-00404-DCN |
| Plaintiff, v. | **MEMORANDUM DECISION AND ORDER** |
| HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; GEMCAP LENDING I, LLC, et al., a Delaware limited liability company, | |
| Defendants. | |

## I. INTRODUCTION

Before the Court is the parties' briefing on whether Plaintiff Dale Miesen has any

MEMORANDUM DECISION AND ORDER - 1

viable direct claims against certain Defendants.[1] On May 5, 2022, the Court granted Defendant Hawley Troxell Ennis & Hawley LLP's ("Hawley Troxell") Motion to Dismiss, which dismissed all derivative claims Miesen brought against Hawley Troxell, Individual Defendants, and CropUSA Defendants. Dkt. 1203. Due to the sheer procedural complexity of this case, the Court ordered each party file a status report of which claims remained after that decision. *Id.* at 50–51. After the filing of those status reports, and further litigation, Miesen contended he had direct claims that remained against Defendants.

On August 9, 2022, the Court ordered further briefing on whether Miesen has any direct claims against these Defendants. Dkt. 1238, at 4. The Defendants submitted a joint opening brief (Dkt. 1239) to which Miesen filed a Response (Dkt. 1248). Defendants then submitted a joint Reply. Dkt. 1254. Shortly thereafter, Miesen filed a Motion for Leave to File a Sur-Reply to Defendants' Reply. Dkt. 1262. In relation to this briefing, briefing was stayed on CropUSA Defendants' Motion to File and Overlength Brief (Dkt. 1064) and Motion for Summary Judgment (Dkt. 1071) because, if Miesen cannot maintain any direct claims against CropUSA, these Motions are moot.

Because oral argument would not significantly aid its decision-making process, the Court will decide these issues on the briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon consideration, and for the reasons below, Miesen's Motion for Leave to File a Sur-Reply

---

[1] The relevant Defendants to which this Order will apply are AIA Insurance, Inc. and AIA Services Corporation (collectively "AIA Defendants"), James Beck, Michael W. Cashman, Connie Taylor Henderson, and R. John Taylor (collectively "Individual Defendants"), Crop USA Insurance Agency, Inc. and Crop USA Insurance Services, LLC (collectively "CropUSA Defendants"). For ease moving forward, the Court will refer to these three groups collectively as Defendants, which will not include the other Defendants still party to this case who are not involved in this particular issue.

MEMORANDUM DECISION AND ORDER - 2

is DENIED. The Court finds Miesen does not have any viable direct claims against the Defendants. Accordingly, CropUSA Defendants' Motion to File an Overlength Brief and Motion for Summary Judgment are MOOT.

## II. BACKGROUND

This case began 15 years ago, in 2010, as a shareholder derivative lawsuit on behalf of the AIA Defendants. On May 5, 2022, the Court entered an order dismissing all Miesen's derivative claims against CropUSA Defendants, Individual Defendants, and Defendant Hawley Troxell for failure to fulfill derivative demand requirements. Dkt. 1203. Due to the extensive complexity of this case, the Court instructed the parties to file a status report addressing which claims and motions remained in the case after the outcome of that order. Between May 9, 2022, and May 19, 2022, each party filed their status reports. Dkts. 1204, 1207–1212.

Over the next several months, Miesen and Hawley Troxell and Miesen and GemCap Lending I LLC ("GemCap") reached settlement agreements. *See* Dkts. 1214, 1231. GemCap then filed for Bankruptcy. Dkt. 1259. The case was then stayed pending further information from the bankruptcy court, and the stay was not lifted until March 26, 2024. Dkt. 1291.

Prior to the stay, the Court issued an Order addressing the parties' status reports and briefing schedules which remained at issue. Dkt. 1238. Briefing on several motions had been stayed prior to the Court's decision at docket 1203. *See* Dkt. 1089 (staying briefing on multiple motions). Additionally, as part of his status report, Miesen indicated that, even though his derivative claims had been dismissed, he still had direct claims against

MEMORANDUM DECISION AND ORDER - 3

CropUSA Defendants, AIA Defendants, and Individual Defendants which needed to be litigated. Defendants opposed such a notion, claiming Miesen had never asserted harms unique to himself; rather that he always maintained he was bringing a derivative suit. The Court ordered further briefing as "an extension of the underlying motion to dismiss" on whether Miesen had ever made any direct claims in this case. Dkt. 1238, at 4. The Court indicated it would first address the direct claims arguments before resuming briefing on the other remaining issues, as the outcome could moot some of those motions.[2]

The Court now decides whether Miesen has asserted any viable direct claims against CropUSA Defendants, AIA Defendants, and Individual Defendants.

### III. LEGAL STANDARDS

#### A. Leave to File Sur-Reply

"While the Federal Rules of Civil Procedure do not expressly permit the filing of a sur-reply, this Court has recognized that a reply brief may justify a sur-reply in appropriate circumstances." *Ocampo v. Corizon, LLC*, 2019 WL 1495251, at *3 (D. Idaho Apr. 4, 2019). Leave to file a sur-reply is discretionary but should be granted "where a valid reason for such additional briefing exists," such as when the movant raises new arguments in its reply brief. *Hill v. England*, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005). However,

---

[2] Separately, Miesen filed a Writ of Mandamus with the Ninth Circuit on January 27, 2025, arguing, in essence, that this case was not progressing and suggesting that it be reassigned to another judge. Dkt. 1295. The Court appreciates that Miesen would like to move this case forward as quickly as possible. Many factors have contributed to the delay in this case. Some of those include the Court's heavy docket—as of the date of this writing, the undersigned presides over close to 500 civil and criminal case with 284 pending motions. Other factors—such as stays, supplemental briefs, hearings, repeated objections and motions for reconsideration by Miesen—have also contributed to the length of this case. The Ninth Circuit will adjudicate Miesen's Writ as it deems appropriate, but the Court emphasizes here that it sees no reason to transfer this case to another Judge or otherwise change the current trajectory of the case.

sur-replies—in any context—are "highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter." J.*R. Simplot Company v. McCain Foods USA, Inc.*, 2021 WL 4899465, at *2 (D. Idaho Oct. 20, 2021) (cleaned up).

## B. Derivative v. Direct Claims

In Idaho, derivative actions are "brought by one or more stockholders of a corporation to enforce a corporate right or remedy a wrong to the corporation in cases where the corporation, because it is controlled by the wrongdoers or for other reasons fails and refuses to take appropriate actions for its own protection[.]" *McCann v. McCann ("McCann I")*, 61 P.3d 585, 590 (Idaho 2002) (quoting 19 AM.JUR.2D *Corporations* § 2250, 151–52 (1986)). Direct actions, on the other hand, are actions a stockholder may maintain

> in his own right for an injury directly affecting him, although the corporation also may have a cause of action growing out of the same wrong, where it appears that the injury to the stockholder resulted from the violation of some special duty owed to the stockholder by the wrongdoer and having its origin in circumstances independent of the plaintiff's status as a shareholder.

*Id.*

Where both direct and derivative claims may be brought from the same wrong, the shareholder must allege harm to himself that is distinct from that suffered by other shareholders of the corporation, or a breach of a special duty owed by defendants to the shareholder. *McCann v. McCann ("McCann II")*, 275 P.3d 824, at 830–831 (Idaho 2012) (quoting *Schumacher v. Schumacher*, 469 N.W.2d 793, 798 (N.D. 1991) (cleaned up)). Ultimately, a direct claim must assert that the actions of the corporation or its directors have an effect on the pleading shareholder "above and beyond" the effect on every other

MEMORANDUM DECISION AND ORDER - 5

shareholder that hurts the pleading shareholder *specifically*. *See McCann II*, 275 P.3d at 832.

## IV. DISCUSSION

### A. Leave to File Sur-Reply

The Court must first address Miesen's request to file a sur-reply as part of the briefing related to his remaining direct claims. Miesen contends Defendants raised new arguments in their reply brief, and he should have an opportunity to respond to those arguments. In particular, he avers Defendants did not address in their opening brief "the merits of Miesen's claims brought under I.C. §§ 30-1-304 and 30-29-304," "did not assert that injunctive relief was not available under I.C. § 30-29-304 for past acts," or that Defendants could not be held liable under the same section. Dkt. 1262-1, at 3.

Oddly, Miesen asserts that he "anticipated that the defendants might try to raise new arguments on reply, so he included argument and authority objecting to the defendants raising any new arguments on reply" as part of his Response. *Id.* at 3–4. It seems Miesen had hoped, at the time he submitted his Response, to preclude the Defendants from giving a meaningful rebuttal to his Response, or at the very least, to allow himself to have the final word on the matter, because Defendants' arguments on Reply all directly relate to points Miesen argued in his Response.

Miesen repeatedly argues the Court ordered Defendants to address each remaining claim he might have against them and why it should be dismissed, and that their arguments as to Idaho Code § 30-29-304 on reply is the only time they argued a specific claim. However, this ignores how Defendants chose to frame their arguments against any

MEMORANDUM DECISION AND ORDER - 6

remaining claims in their opening brief, and it fails to acknowledge the content of Miesen's Response.

Defendants might not have addressed each claim that could be a direct claim in the Third Amended Complaint ("TAC") in turn, but rather argued Miesen can have no direct claims because he has not shown he has suffered a personal injury unique from the injuries suffered by other shareholders and he has always maintained he was bringing this suit as a derivative action. While doing so in bulk, Defendants *did* address each remaining claim Miesen might have against them. Miesen had a fair opportunity to respond to those arguments in his Response, which he did to an extent,[3] and he does not need a sur-reply.

Additionally, Defendants fairly used their Reply to rebut Miesen's arguments made in his response. "A reply necessarily raises facts and issues, for the first time, that are germane to the opposition. If the evidence and argument included with a motion were required to anticipate the arguments a respondent might raise in opposition to the motion, the court would not permit the movant to file a reply to any opposition." *Calderon v. Experian Information Solutions, Inc.*, 290 F.R.D. 508, 515 (D. Idaho 2013) (citation omitted). The Court disagrees with Miesen's contention that any legitimate responses from Defendants to his Response made on reply were " . . . nevertheless new arguments seeking to dismiss Miesen's claims based on I.C. § 30-29-304 without giving Miesen an

---

[3] Miesen challenged the adequacy of Defendants' "no unique injury" argument in meeting Defendants' Rule 12(b)(6) burden to show Miesen failed to state a claim as part of his Response. Miesen contends the arguments are broad and "do not challenge the sufficiency of a single cause of action or a single prayer for relief." Dkt. 1248, at 18. However, Defendants do not need to argue the merits of derivative claims which have already been dismissed if it is their position those same claims cannot be direct claims in this instance. If Miesen did not adequately plead any direct claims, he failed to state any claims upon which relief can be granted at this stage in the litigation, and Defendants have met their burden.

MEMORANDUM DECISION AND ORDER - 7

opportunity to respond to those new arguments." Dkt. 1262-1, at 5.

In his Response, Miesen used nearly half of his brief to argue he has viable direct claims under Idaho Code § 30-29-304. Dkt. 1248, at 5–14. Miesen goes on to provide examples of ways Defendants have allegedly misbehaved in the past and states, "The above example is, but one of many, ultra vires acts, contracts, and transactions at issue and subject to I.C. § 30-29-304 . . . . ." *Id.* at 9. Defendants counter with an argument that Idaho Code § 30-29-304 does not allow for a direct claim in which injunctive relief is being sought to prevent acts which have occurred in the past. Dkt. 1254, at 2–7. This is an argument directly responsive to Miesen's assertions that the relevant section authorizes the direct relief he is seeking. This counter-position to Miesen's own statutory interpretation does not require allowing him a sur-reply.

By extension, the same applies to Defendants argument that Miesen may only seek direct relief under Idaho Code § 30-29-304(b)(1) against AIA entities, not against Individual Defendants or the CropUSA Defendants. Miesen already had the opportunity to argue his interpretation of the code in his Response, and Defendants only responded with reasons why Miesen's interpretation was faulty. *Id.* at 7.

Finally, for the reasons set forth in footnote 6 *infra*, the Court will not be reaching the merits of Defendants arguments on whether Miesen's claims qualify for relief under § 30-29-304, so any response from Miesen on this topic would be futile and unnecessary.

Because Miesen had a fair chance to set forth his interpretation of Idaho Code § 30-29-304 in his Response, and Defendants germanely responded with their own interpretation in their Reply, Miesen's Motion for Leave to File a Sur-Reply is DENIED.

MEMORANDUM DECISION AND ORDER - 8

## B. Direct Claims

### 1. Direct v. Derivative Claims

In their opening brief, Defendants largely argue Miesen has no direct claims against them because he has asserted no unique personal injury to himself during the entirety of this case. Miesen argues that standard does not apply to him in asserting statutory direct claims. In particular, he states, " . . . [T]he question is not whether Miesen suffered injury different from other shareholders for the purposes of a claim under I.C. § 39-29-304; but whether Count VIII requires a derivative demand be given 90 days before filing." Dkt. 1248, at 9.

Accordingly, as a threshold matter, the Court will first address whether Idaho Code § 39-29-304 provides a mechanism for asserting direct claims, and whether the standard for successfully doing so under that statute is different than the standard set forth in *McCann I*. Section 39-29-304 states "A corporation's power to act may be challenged: (1) in a proceeding by a shareholder against the corporation to enjoin the act" or (2) in a proceeding by the corporation, directly, derivatively, or through a receiver, trustee, or other legal representative, against an incumbent or former director, officer, employee or agency of the corporation . . . ." IDAHO CODE § 39-29-304(b)(1–2). When proceeding under section (b)(1), a court may enjoin or set aside an act and award damages for loss. IDAHO CODE § 39-29-304(c).

Both sides put forth competing arguments of statutory interpretation on what these sections mean and what that could mean for this case. A plain and ordinary reading of the statute indicates a shareholder can sue the corporation directly or derivatively to enjoin an

MEMORANDUM DECISION AND ORDER - 9

ultra vires act and obtain money damages under sections (b)(1) and (c).[4] It is less clear to the Court where Miesen finds support for his argument that bringing a statutory direct claim under these sections does not require an assertion of unique personal harm to himself. It is well-established that the very difference between direct and derivative claims hinges on what types of harms are asserted. In other words, whether the corporation and the shareholders are suffering together, or whether one specific shareholder is taking the brunt of any injury.[5]

It seems to the Court, in reading Miesen's brief, he is arguing that Idaho Code § 39-29-304(b)(1) does not reference Idaho Code § 30-29-742 (requiring a derivative demand), meaning it only allows for a direct cause of action. Therefore, any cause of action which is properly brought under Section 39-29-304(b)(1) is automatically a direct cause of action that does not require a derivative demand or a showing of unique injury. Such an argument requires quite a leap in logic. There is simply nothing to indicate Idaho Code § 39-29-304(b)(1) creates a special type of direct action that presents itself as a derivative action—when only harm to a corporation and shareholders in general have been alleged—that does

---

[4] Miesen declared in his Response, "Count VIII can be brought as a direct claim by Miesen and may *only* be brought as a direct claim according to the plain reading of I.C. § 30-29-304." *Id.* at 9–10 (emphasis added). Miesen mainly bases this assertion on the fact that, in other places in Idaho Code that authorize derivative demands in certain circumstances, the Idaho Legislature has officially referenced the statute setting out the requirements of a derivative demand (Idaho Code § 30-29-742), and they failed to do so here. Miesen argues the lack of reference to a derivative demand means section (b)(1) only applies to direct claims. The Court disagrees with such a limitation. The Idaho Legislature could have just as easily inserted language excluding derivative demands under section (b)(1), but they also did not do that. Their silence on the topic does not indicate a restriction one way or the other.

[5] For example, in both *Steelman v. Mallory*, 716 P.2d 1282 (Idaho 1986) and *McCann II*, where the plaintiffs successfully asserted direct claims arising out of the same events that could support derivative causes of action, both plaintiffs "were the only shareholders in a close corporation to experience an injury caused by the other shareholders." *McCann II*, 275 P.3d at 832.

MEMORANDUM DECISION AND ORDER - 10

not require a derivative demand. Therefore, the question remains whether Miesen has asserted any unique personal injury that gives him viable direct claims against Defendants.[6]

The answer to that remaining question is no. The Court need only reference the TAC to show Miesen never raised any viable direct claims against the AIA Defendants, CropUSA Defendants, or Individual Defendants. First, in the paragraphs proceedings the sections setting forth his Counts, Miesen states all of his claims and requested relief flow from the derivative demands he had made to AIA and its Board of Directors. He states he "fairly represents the interest of AIA and their shareholders" and he is pursuing "*bona fide* claims on behalf of, for the benefit of, AIA and their innocent shareholders. Dkt. 211, at 60.

Second, the Court looks to the individual causes of action as to each Defendant. Counts I, VI, and IX apply to all Individual Defendants. Counts II, IV, V, and VII apply to both Individual Defendants and CropUSA Defendants. Count X applies specifically to Individual Defendant Taylor. Count VIII applies to AIA Defendants, Individual Defendants, and CropUSA Defendants. In *every single one* of the aforementioned Counts, Miesen speaks of duties "owed to AIA," liability to AIA, damages to AIA, and seeking balances owed for "the benefit of AIA." *Id*. at 62, 64, 66, 71, 75, 79. Not once, in any paragraph or any allegation, does Miesen assert he has been harmed directly or distinctly

---

[6] Defendants directed a large portion of their Reply to arguing why Idaho Code § 30-29-304(b)(1) could not be used to support Miesen's causes of action in the TAC. In particular, they argued a cause of action can only be brought under the section when there are circumstances justifying an injunction and the cause of action is being brought directly against the corporation. The Court finds it unnecessary to address the merits of these arguments, as it is denying the Motion for failure to assert a direct claim, so it doesn't need to address any potential deficiencies in a direct claim.

MEMORANDUM DECISION AND ORDER - 11

from other shareholders. There are no allegations that he has been "frozen-out."[7] There are no allegations that the other shareholders with whom he shares status harmed him. There are no allegations whatsoever that he has suffered any unique harm other than the same ones suffered by all other shareholders in AIA.

Miesen does draw attention to his statement in the TAC that "The definition of 'AIA' includes AIA Services and/or AIA Insurance for the purposes of pleading in the alternative, and includes the Plaintiff to the extent he is required to support any cause of action and/or any of the relief requested in this Third Amended Complaint," as proof that he was pleading direct claims along with derivative ones. Dkt. 211, at 5. Unfortunately, even if Miesen could simply insert a definition including himself as part of AIA to make all the references to AIA apply to himself individually as well, he still fails to plead any harm specific and unique to himself that wasn't suffered by all of AIA as a whole. Looking simply at the operative complaint, Miesen never made any effective assertions of direct claims, and he cannot do so now.[8] For these reasons, Miesen has no viable direct claims

---

[7] Freeze-outs, or squeeze-outs, are "actions taken by the controlling shareholders to deprive a minority shareholder of his interest in the business or a fair return on his investment." *McCann II*, 275 P.3d at 830 (citing *Balvik v. Sylvester*, 411 N.W.2d 383, 386 (N.D. 1987). A freeze-out in a closely-held corporation can constitute a direct action. For example, in *McCann II*, the Idaho Supreme Court found a direct action could be maintained because the plaintiff was frozen out by actions such as phony transactions to one of a few shareholders to avoid a benefit to plaintiff and management decisions to divert all cash flow to two other shareholders at plaintiff's expense. *Id.* at 831. Miesen did not plead any similar facts here.

[8] The Court only considered pleadings which were relevant and properly before it in deciding the issues today. Therefore, to the extent Miesen moves to exclude certain records used in Defendants briefing, convert the motion to one for summary judgment, or take judicial notice of anything Miesen relied on in his pleadings, that request is MOOT. *See* Dkt. 1248, at 19–22. As to CropUSA's more recent Motion to Take Judicial Notice (Dkt. 1300), the Court will take judicial notice of the state court Memorandum Decision and Order for the limited purpose of recognizing CropUSA Defendants and Individual Defendants obtained a partial judgment in their favor based on facts and issues very similar to the ones before the Court today, but which involved a different Plaintiff (Donna Taylor). *See Fed. R. Evid. 201.* The Court will give that information the weight it deems appropriate.

MEMORANDUM DECISION AND ORDER - 12

against Individual Defendants, CropUSA Defendants, and AIA Defendants, and these claims are DISMISSED with PREJUDICE against those Defendants.

### 2. *Miesen's Prior Representations and Motion for Leave to Amend*

The Court will briefly address the parties' arguments about the effect Miesen's prior representations of bringing a derivative demand had on his direct claims. While Miesen has no direct claims due to shortcomings in his pleadings alleging any unique harms, the Court does not wholly disagree with his argument that his prior assertions that he was bringing a derivative demand did not necessarily indicate he was bringing a derivative action to the exclusion of a direct one. As explained in *McCann I*, direct and derivative claims can be brought simultaneously, even when arising from the same wrong.

However, as the Court has emphasized above, just because Miesen could have indicated he was bringing a derivative claim and still brought a direct claim does not mean that he did. By all accounts Miesen is trying, belatedly, to frame his claims in a way other than what he originally intended. And for good reason: to save the claims. But this latent effort fails. As explained above, Miesen did not make a direct claim, and the Court's conclusion on that point has less to do with his prior representations and more to do with what is required in bringing a direct claim and/or a derivative claim. While the Court recognizes Miesen has extensively emphasized his intent to bring derivative claims— Defendants do a thorough job in summing up Miesen's previous representations throughout this case,[9] so the Court will not do so here—those representations only bolster

---

[9] Dkt. 1239, at 5–11.

MEMORANDUM DECISION AND ORDER - 13

the Court's finding that Miesen failed to plead any direct claims.[10]

Miesen had a plethora of opportunities, through three amended complaints and 15 years of litigation, to clearly set forth his intent to bring direct claims. Miesen argues his "I.C. § 30-29-304 claim was an alternative claim" recognized by Magistrate Judge Candy W. Dale as a direct claim not yet ripe for the Court's adjudication when the issue came up in 2017. Dkt. 1248, at 13. However, Judge Dale's holding did not contain a specific finding that claim was a direct claim, made no indication as to whether Miesen had a viable claim under the statute (Dkt. 210), and Miesen still never provided any clarification that he was intending to assert an alternative direct claim. In fact, the very next filing in the case was Miesen's TAC, which makes no mention of any direct claims. *See* Dkt. 211.

Miesen now requests an opportunity to amend his Complaint for a fourth time, assuming the Court might make the "unlikely" finding that his TAC is deficient. Dkt. 1248, at 23. The Court will not give Miesen such an opportunity. To do so would be highly prejudicial to Defendants, requiring them to relitigate issues which have already been decided in their favor, just with the alteration of Miesen himself as the newly-substituted injured party[11]. It would also require an enormous expenditure in time, effort, and costs (for all parties) when this case is finally nearing completion. There would be a continual

---

[10] Miesen objects to the use of at least some of these representations in Defendants briefing, claiming they are not properly before the Court. The Court made its decision here based on Miesen's pleadings properly before the Court and emphasizes the prior representations were not a factor in determining Miesen ultimately did not plead any direct claims. They are simply an added observation emphasizing the Court's holdings today.

[11] Any direct claim with Miesen as the injured party could also run afoul of the statute of limitations. For example, Idaho Code § 5-218(1) sets a statute of limitations where liability is created by a statute such as Idaho Code § 30-29-304 at three years.

MEMORANDUM DECISION AND ORDER - 14

heavy burden on judicial resources when ultimately, any direct claims should have been clearly presented during the beginning stages of this litigation. For these reasons, Miesen's Motion for Leave to Amend is DENIED.

## C. Moving Forward

There are several previous filings in this case which could not move forward until the Court's decision today. First, the CropUSA Defendants filed a Motion for Summary Judgment (Dkt. 1071) and related Motion to File Overlength Brief (Dkt. 1064). Because all claims against them are being dismissed today, the Motions are DISMISSED as MOOT.

Second, Defendant Reed Taylor has filed two separate motions for summary judgment. The first (Dkt. 1073) relates to Taylor's liability for contribution and indemnity to CropUSA Defendants and Individual Defendants. Because the Court has determined CropUSA Defendants and Individual Defendants have no liability, the Motion for Summary Judgment is DISMISSED as MOOT. The second (Dkt. 1076) relates to Taylor's claim against Individual Defendant R. John Taylor as plan trustee of the AIA Services' 401(k) Plan. It seems the parties agree further briefing is necessary on this Motion (Dkts. 1211, at 5; 1207, at 5). Thus, briefing will resume on that Motion for Summary Judgment (Dkt. 1076).

The remaining ripe Motions in this case, including Miesen's Motion for Attorney's Fees (Dkt. 1242) and accompanying errata (Dkt. 1243), and AIA Defendants' Motion to Strike (Dkt. 1264) will be decided in due course.

## V. CONCLUSION

Miesen has made no viable direct claims against Defendants because he has not

MEMORANDUM DECISION AND ORDER - 15

asserted any injury unique to himself. Rather, all his allegations assert duties owed, and injuries to, AIA and all shareholders. Thus, all his claims against Defendants are DISMISSED with PREJUDICE. Based on this decision, several motions will be dismissed as moot, and briefing will resume where relevant on other motions.

## VI. ORDER

1. Defendants AIA Insurance, Inc., AIA Services Corporation, James Beck, Michael W. Cashman, Connie Taylor Henderson, R. John Taylor, Crop USA Insurance Agency, Inc. and Crop USA Insurance Services, LLC's extended Motion to Dismiss (Dkt. 1239) is **GRANTED**.

    a. Dale Miesen's claims, both direct and derivative, against the above-named Defendants are **DISMISSED** with **PREJUDICE**.

    b. Judgment will be entered concurrently with this Order in accordance with Federal Rule of Civil Procedure 58(a).

2. Dale Miesen's Motion for Leave to File Sur-Reply (Dkt. 1262) is **DENIED**.

3. CropUSA's Motion for Summary Judgment (Dkt. 1071) is **DISMISSED** as **MOOT**.

    a. CropUSA's Motion to File Overlength Brief (Dkt. 1064) is **DISMISSED** as **MOOT**.

4. Defendant CropUSA Insurance Agency, Inc.'s Motion to Take Judicial Notice (Dkt. 1300) is **GRANTED**.

5. Defendant Reed Taylor's Motion for Summary Judgment (Dkt. 1073) is **DISMISSED** as **MOOT**.

MEMORANDUM DECISION AND ORDER - 16

6. Briefing will resume on Defendant Reed Taylor's Motion for Summary Judgment (Dkt. 1076).

   a. Defendant R. John Taylor's Response is due twenty-one (21) days from the filing of this Order.

   b. Reed Taylor's Reply, if any, will be due fourteen (14) days from the filing of R. John Taylor's Response.

DATED: May 27, 2025

_____
David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 17

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc, <br><br> Plaintiff, <br><br> v. <br><br> HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; GEMCAP LENDING I, LLC, et al., a Delaware limited liability company, <br><br> Defendants. | Case No. 1:10-cv-00404-DCN <br><br> **SECOND AMENDED JUDGMENT** |

In accordance with Federal Rule of Civil Procedure 54(b), 58(a), and the Court's

Memorandum Decisions and Orders (Dkts. 1203, 1301), and finding no just reason for

delay, it is hereby ordered:

SECOND AMENDED JUDGMENT - 1

**1-ER-176**

1. Judgment be entered in favor of Defendants AIA Insurance, Inc., AIA Services Corporation, James Beck, Michael W. Cashman, Connie Taylor Henderson, R. John Taylor, Crop USA Insurance Agency, Inc., and Crop USA Insurance Services, LLC.

2. All claims asserted by Plaintiff Dale Miesen against the Defendants named above are **DISMISSED WITH PREJUDICE.**

3. Defendants R. John Taylor, Crop USA Insurance Agency, Inc., CropUSA Insurance Services, LLC, Michael W. Cashman, Sr., JoLee K. Duclos, James Beck, and Connie Taylor Henderson's Third Party Complaint (Dkt. 218) is **DISMISSED WITH PREJUDICE**.

DATED: August 18, 2025

_____
David C. Nye
Chief U.S. District Court Judge

SECOND AMENDED JUDGMENT - 2