**Consolidated Case Nos. 25-3552 and 25-3800**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.,

**Plaintiff-Appellant**,

v.

R. JOHN TAYLOR, an individual, CONNIE TAYLOR HENDERSON, an individual, JAMES BECK, an individual, MICHAEL W. CASHMAN, SR., an individual, CROP USA INSURANCE AGENCY, INC., an Idaho corporation, CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company, AIA SERVICES CORPORATION, an Idaho corporation, AND AIA INSURANCE, INC., an Idaho corporation,

**Defendants-Appellees**,

and

Reed J. Taylor, an individual,

**Third-Party Defendant-Appellee.**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO,
CHIEF DISTRICT COURT JUDGE DAVID C. NYE, PRESIDING

**APPELLANT'S EXCERPTS OF THE RECORD – VOLUME - 8**

| | |
|---|---|
| Roderick C. Bond | Andrew Schwam |
| Roderick Bond Law Office, PLLC | Andrew Schwam Law Firm |
| 10900 NE 4th St., Suite 2300 | 705 SW Fountain St. |
| Bellevue, WA  98004 | Pullman, WA  99163-2128 |
| Tel: (425) 591-6903 | Tel: (208) 874-3684 |
| Email: rod@roderickbond.com | Email: amschwam@turbonet.com |
| Attorney for Appellant | Attorney for Appellant |

Alyson A. Foster
aaf@aswblaw.com
Idaho Bar No. 9719
ANDERSEN SCHWARTZMAN WOODARD BRAILSFORD PLLC
101 S. Capitol Blvd., Suite 1600
Boise, ID 83702
Telephone: 208.342.4411
Facsimile: 208.342.4455

*Attorneys for GemCap Lending I, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc., <br><br> Plaintiff, <br><br> v. <br><br> CONNIE TAYLOR HENDERSON, an individual, et al., <br><br> Defendants. | Case No. 1:10-cv-00404-CWD <br><br> **GEMCAP LENDING I, LLC'S ANSWER TO THIRD AMENDED COMPLAINT (DKT 211) AND FIRST AMENDED CROSS-CLAIM WITH JURY DEMAND** |

Defendant GemCap Lending I, LLC ("GemCap"), through its undersigned

attorneys, hereby answers, denies, and alleges in response to the Third Amended

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 1

**8-ER-1666**

Complaint:

## I.

## GENERAL DENIAL

Pursuant to Federal Rule of Civil Procedure Rule 8(b)(3), GemCap generally denies all allegations except those specifically admitted below.

## II.

## ANSWERS TO SPECIFIC ALLEGATIONS

I.    STATEMENT OF JURISDICTION

1.    This Court has jurisdiction over the subject matter of this lawsuit under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and this action is between citizens of different states.

**Answer:** Paragraph 1 sets forth a legal conclusion to which no response is required. To the extent a response is required, GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 1, and on that basis, denies them.

2.    This Court has personal jurisdiction pursuant to I.C. § 5-514 because the defendants: (a) committed torts within the state of Idaho (including conspiring to commit, covering up, and aiding in the commission of torts committed within the state of Idaho), which injured AIA in Idaho; and/or (b) transacted business within the state of Idaho and engaged in transactions within the state of Idaho in an effort to obtain a pecuniary benefit and/or enhance their investment in Idaho corporations named as defendants in this Third Amended Complaint. Examples of the specific facts supporting personal jurisdiction are

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 2

**8-ER-1667**

set forth in certain of the Paragraphs below.

**Answer:** Paragraph 2 sets forth a legal conclusion to which no response is required. To the extent a response is required, GemCap denies the factual allegations contained in Paragraph 2.

II.     STATEMENT OF VENUE

3.      Venue is proper in the District of Idaho under 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the acts, errors and omissions giving rise to the claims asserted in this Third Amended Complaint (and the torts committed against AIA Services Corporation and AIA Insurance, Inc.) occurred in the District of Idaho and certain of the defendants are citizens and residents of the District of Idaho.

**Answer:** Paragraph 3 sets forth a legal conclusion to which no response is required. To the extent a response is required, GemCap denies the factual allegations contained in Paragraph 3.

III.    PARTIES AND DEFINITIONS OF THE PARTIES

4.      Plaintiff Dale L. Miesen ("Plaintiff" or "Miesen") is a citizen and resident of Colleyville, Texas. Plaintiff is, and has been, a common shareholder of AIA Services Corporation ("AIA Services") during all relevant times and specifically at the time of the transactions, acts, omissions, malfeasance, and damages at issue in this lawsuit. Plaintiff is also presently a creditor of AIA Services.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 4, and on that basis denies them.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 3

**8-ER-1668**

5.      Plaintiff is bringing this derivative action as a shareholder and on behalf of AIA Services. In addition, Plaintiff is bringing this action as a double derivative action on behalf of AIA Insurance, Inc. ("AIA Insurance"), which is a wholly-owned subsidiary of AIA Services. AIA Services and AIA Insurance are collectively referred to as "AIA" in this Third Amended Complaint. The definition of "AIA" includes AIA Services and/or AIA Insurance for purposes of pleading in the alternative, and includes the Plaintiff to the extent he is required to support any cause of action and/or any of the relief requested in this Third Amended Complaint.

**Answer:** Paragraph 5 contains legal conclusions, and plaintiff's characterization of his claims, to which no response is required.

6.      Defendant AIA Services is a citizen of Idaho because it is an Idaho corporation, its principal place of business is in Lewiston, Idaho, and its primary purported officer, John Taylor, resides in Lewiston, Idaho. During all relevant times, AIA Services is or has been the parent corporation of AIA Insurance.

**Answer:** Paragraph 6 contains legal conclusions to which no response is required. To the extent a response is required, GemCap admits that AIA Services currently has its principal place of business in Lewiston, Idaho, that John Taylor currently resides in Lewiston, Idaho, that AIA Services' Annual Reports (including the 2016 Annual Report) usually list Taylor as its President, and that AIA Services has been the parent corporation of AIA Insurance. GemCap denies any remaining factual allegations contained in Paragraph 6.

7.      Defendant AIA Insurance is a citizen of Idaho because it is an Idaho

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 4

corporation, its principal place of business is in Lewiston, Idaho, and its primary purported officer, John Taylor, resides in Lewiston, Idaho. During all relevant times, AIA Insurance has been a wholly-owned subsidiary of AIA Services.

**Answer:** Paragraph 7 contains legal conclusions to which no response is required. To the extent a response is required, GemCap admits that AIA Insurance currently has its principal place of business in Lewiston, Idaho, that John Taylor currently resides in Lewiston, Idaho, that AIA Insurance's 2016 Annual Report lists Taylor as its President, Secretary, and Director, and that AIA Insurance has been a wholly-owned subsidiary of AIA Services. GemCap denies any remaining factual allegations contained in Paragraph 6.

8.     Plaintiff's assertions as to AIA Services' and/or AIA Insurance's board of directors and/or officers in this Third Amended Complaint is not intended to be an admission or an acknowledgement that the board of directors or officers were properly seated and elected or that the necessary quorum was present, and Plaintiff asserts that such was not the case for a number of years.

**Answer:** Paragraph 8 sets forth plaintiff's characterization of his claims, to which no response is required. To the extent a response is required, GemCap denies any factual allegations contained in Paragraph 8.

9.     Defendant CropUSA Insurance Agency, Inc. ("CropUSA") is a citizen of Idaho because it is an Idaho corporation, its principal place of business is in Lewiston, Idaho, and its primary purported officer, John Taylor, resides in Lewiston, Idaho. CropUSA was formerly known as AIA Crop Insurance, Inc.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 5

**Answer:** Paragraph 9 contains legal conclusions to which no response is required. To the extent a response is required, GemCap admits that John Taylor currently resides in Lewiston, Idaho, that CropUSA's 2017 Annual Report lists Taylor as its President, Secretary, and Director, and that CropUSA Insurance Agency, Inc. has its principal place of business in Lewiston, Idaho, and was formerly known as AIA Crop Insurance, Inc. GemCap denies any remaining factual allegations contained in Paragraph 9.

10. Defendant CropUSA Insurance Services, LLC ("CropUSA Insurance Services") is a citizen of Idaho because it is an Idaho limited liability company, its principal place of business is in Lewiston, Idaho, and its manager, John Taylor, is a resident of Lewiston, Idaho.

**Answer:** Paragraph 10 contains legal conclusions to which no response is required. To the extent a response is required, GemCap admits that CropUSA Insurance Services has a principal place of business in Idaho, that CropUSA Insurance Services's 2017 Annual Report lists Taylor as its Manager, and that Taylor is a resident of Idaho. GemCap denies any remaining factual allegations contained in Paragraph 10.

11. CropUSA and CropUSA Insurance Services are referred to collectively and/or individually when pleading in the alternative as "CropUSA" in this Third Amended Complaint.

**Answer:** Paragraph 11 contains a description of Plaintiff's use of the term "CropUSA" in the Third Amended Complaint, to which no response is required. To the extent a response is required, GemCap denies any factual allegations contained in Paragraph 11.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 6

12.     Defendant R. John Taylor ("John" or "John Taylor") is a citizen and resident of Lewiston, Idaho. During all times relevant to this lawsuit, John served on the Board of Directors of AIA Services, AIA Insurance, and CropUSA and continues to serve on those boards. John also served as President of each of these corporations during all times relevant to this lawsuit. John is also licensed to practice law in the state of Idaho. John is a common shareholder of AIA Services and a common shareholder of CropUSA (although Plaintiff asserts those shares were unlawfully issued to him). John also owns shares or ownership interests in other entities that have engaged in inappropriate transactions with AIA and/or which have improperly benefitted from AIA during all relevant times.

**Answer:** Paragraph 12 contains legal conclusions to which no response is required. To the extent Paragraph 12 contains factual allegations not already responded to in the above Paragraphs, GemCap admits that Taylor has served on the board of directors of AIA Services, AIA Insurance, and CropUSA, that Taylor is or has been a common shareholder of the AIA entities, and that Taylor had or has ownership interests in entities that entered transactions with one or both of the AIA entities. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 12, and on that basis denies them.

13.     Defendant James Beck ("Beck") is a citizen and resident of the state of Minnesota. Beck served on the Board of Directors of AIA Services and AIA Insurance during certain relevant times. Beck was a common and/or preferred shareholder of AIA Services during certain relevant times and a common shareholder of CropUSA (although

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 7

Plaintiff maintains that his common shares in AIA Services and CropUSA were unlawfully issued).

**Answer:** GemCap admits that Beck was on the Board of Directors of AIA Services Corporation in 2011 and possibly other times. GemCap lacks knowledge or information sufficient to form a belief about the truth of Paragraph 12 contains legal conclusions to which no response is required. To the extent a response is required, GemCap

14.     Defendant Michael Cashman, Sr. ("Cashman") is a citizen and resident of the state of Minnesota. Cashman served on the Board of Directors of AIA Services during certain relevant times. Cashman was a common and/or preferred shareholder of AIA Services during certain relevant times and a common shareholder of CropUSA (although Plaintiff maintains that his common shares in AIA Services and CropUSA were unlawfully issued).

**Answer:** This paragraph contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in this Paragraph, and on that basis denies them.

15.     Defendant Connie Taylor Henderson ("Connie") is a citizen and resident of the state of Washington. Connie served on the Board of Directors of AIA Services and AIA Insurance during certain relevant times until she resigned in 2014. Connie jointly owns with John the common shares of AIA Services held in John's name. Connie has actively asserted community ownership of those shares and specifically did so before the district court and on appeal in Taylor v. AIA Services.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 8

**Answer:** This paragraph contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in this Paragraph, and on that basis denies them.

16.     Defendant JoLee K. Duclos ("Duclos") is a citizen and a resident of Washington, or, alternatively, upon information and belief, she is now a citizen and a resident of the state of Idaho. Duclos has served as Secretary of AIA Services, AIA Insurance, CropUSA and other entities partially or wholly owned by John during certain relevant times. Duclos served on the Board of Directors of AIA Services and AIA Insurance during certain relevant times until she resigned in 2007. Duclos also served as a director of CropUSA curing certain relevant times. Duclos is a common shareholder of CropUSA (although Plaintiff maintains that those shares were unlawfully issued). Duclos has knowledge of the law by and through her training and performing the duties of a paralegal. Duclos has served as John's "lieutenant" during all relevant times.

**Answer:** This paragraph contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in this Paragraph, and on that basis denies them.

17.     John, Beck, Cashman, Connie and Duclos are collectively referred to herein as the "Controlling AIA Defendants." The Controlling AIA Defendants have acted in concert and assisted one another in committing various torts described in this Third Amended Complaint and covering up and/or concealing those torts. The definition of "Controlling AIA Defendants" includes the acts and/or omissions of one or more of John, Beck, Connie, Cashman and/or Duclos for purposes of pleading in the alternative.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 9

**Answer:** Paragraph 17 sets forth a description of how Plaintiff uses the term "Controlling AIA Defendants," as well as legal conclusions, to which no response is required.

18.    Defendant Gary D. Babbitt ("Babbitt") is a citizen and resident of the state of Idaho and was an attorney practicing law in the state of Idaho with and on behalf of Hawley Troxell. Upon information and belief, Babbitt began representing AIA and CropUSA in 2007.

**Answer:** This paragraph contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in this Paragraph, and on that basis denies them.

19.    Defendant Richard A. Riley ("Riley") is a citizen and resident of the state of Idaho and is an attorney in the state of Idaho with and on behalf of Hawley Troxell. Riley represented AIA and/or CropUSA from time to time from 1995 through the present time.

**Answer:** Paragraph 19 contains legal conclusions to which no response is required. With respect to factual allegations, GemCap admits that Riley resides in and is an attorney in the state of Idaho and is a partner at Hawley Troxell Ennis & Hawley LLP. GemCap lacks sufficient information to form a belief as to the truth or falsity of the remaining factual allegations and on that basis denies them.

20.    Defendant D. John Ashby ("Ashby") is a citizen and resident of the state of Idaho and is an attorney in the state of Idaho with and on behalf of Hawley Troxell. Upon information and belief, Ashby began representing AIA and CropUSA in 2007.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 10

**Answer:** Paragraph 20 contains legal conclusions to which no response is required. With respect to factual allegations, GemCap admits that Ashby resides in and is an attorney in the state of Idaho and is a partner at Hawley Troxell. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations and on that basis denies them.

21.     Defendant Hawley Troxell Ennis & Hawley LLP ("Hawley Troxell") is a citizen of the state of Idaho because it is an Idaho limited liability partnership in the business of practicing law, with its principal place of business in Boise, Idaho, and its principal officers or managers reside in the state of Idaho. Hawley Troxell has no office in the state of Washington. None of the individual partners of Hawley Troxell are residents of Washington. Hawley Troxell, though its attorneys, acted as counsel for AIA Services, AIA Insurance and CropUSA during certain relevant times and in certain lawsuits. Hawley Troxell is also named herein as it is vicariously liable for the acts and/or omissions of Babbitt, Riley, Ashby and its other attorneys.

**Answer:** Paragraph 21 contains legal conclusions to which no response is required. With respect to factual allegations, GemCap admits that Hawley Troxell has offices in Idaho and Nevada, is a law firm, and is a limited liability partnership. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations and on that basis denies them.

22.     Babbitt, Ashby, Riley, other Hawley Troxell attorneys, and Hawley Troxell are collectively referred to as the "Hawley Troxell Defendants" in this Third Amended Complaint. The definition of "Hawley Troxell Defendants" includes the acts and/or

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 11

omissions of one or more of Babbitt, Ashby, Riley, other attorneys at Hawley Troxell and/or Hawley Troxell for purposes of pleading in the alternative. The Hawley Troxell Defendants conducted business from their office in Boise, Idaho.

**Answer:** Paragraph 22 sets forth Plaintiff's use of the term "Hawley Troxell Defendants" and legal conclusions, to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations and on that basis denies them.

23.     Defendant GemCap Lending I, LLC ("GemCap") is a Delaware limited liability company and it conducts business throughout the United States, including in Nez Perce County, Idaho with CropUSA and CropUSA Insurance Services, respectively, both of which have principal places of business in Lewiston, Idaho. GemCap is a citizen of California because its principal place of business is in Malibu, California and its primary officers, Richard Ellis and David Ellis, are residents of the state of California. However, AIA conducts no business in California.

**Answer:** Paragraph 23 contains legal conclusions to which no response is required. With respect to factual allegations, GemCap admits it is a Delaware limited liability company and conducts business in the United States, that GemCap has conducted business with Crop USA and CropUSA Insurance Services which have principal places of business in Lewiston, Idaho, that GemCap has its principal place of business in California, and that Richard Ellis and David Ellis are residents of California. GemCap denies any remaining factual allegations contained in Paragraph 23.

24.     Donna J. Taylor ("Donna Taylor"), a non-party to this lawsuit, is and has

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 12

**8-ER-1677**

been the sole Series A Preferred Shareholder of AIA Services during all relevant times, and she never authorized any of the transactions at issue in this lawsuit from 1995 through the present time. While John alleges to have "purchased" 7,500 Series A Preferred Shares in 2016, Plaintiff maintains that the purchase was unauthorized and improper, and that Donna Taylor remains the sole Series A Preferred Shareholder of AIA Services.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations in Paragraph 24 and on that basis denies them.

IV.    FACTS

A.    The Background Facts Regarding AIA Services and AIA Insurance

25.    In 1983, AIA Services was formed as a closely-held Idaho corporation for the purpose of acting as a holding company for various other wholly-owned subsidiaries. AIA's business model was to work with farmers and growers to form trusts and/or related cooperatives through various growers and farmers' associations and sell insurance products to the members of those associations also becoming members of the trusts and/or cooperatives.

**Answer:** Paragraph 25 contains allegations directed at another defendant. To the extent a response is required, GemCap lacks knowledge or information sufficient to form a belief about the truth of these allegations and on that basis denies them.

26.    AIA created the Grain Growers Membership & Insurance Trust, the National Contract Poultry Grower's Membership & Insurance Trust, and other, similar trusts. By way of its relationships with these various organizations, AIA held contracts

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 13

for the exclusive right to market health insurance (e.g., Group Universal Health Policies) and other insurance products to the members of the various trusts and associations.

**Answer:** Paragraph 26 contains allegations directed at another defendant. To the extent a response is required, GemCap lacks knowledge or information sufficient to form a belief about the truth of these allegations and on that basis denies them.

27. In 1987, Donna Taylor and Reed Taylor, non-parties to this lawsuit, were issued Series A Preferred Shares in AIA Services in connection with their divorce. Pursuant to the dissolution of their marriage, Donna Taylor was issued 200,000 shares of Series A Preferred shares on or about February 12, 1988, and has held those shares ever since, less those shares which have been redeemed in part over the years. (See Dkt. 67-1 and 67-2.)

**Answer:** Paragraph 27 contains allegations directed at another defendant. To the extent a response is required, GemCap lacks knowledge or information sufficient to form a belief about the truth of these allegations and on that basis denies them.

28. In connection with the issuance of the Series A Preferred Shares to Donna Taylor, AIA Services' shareholders adopted amendments to its articles of incorporation with restrictions on the manner in which AIA Services and its subsidiaries could conduct business. (See Dkt. 67- 3.) AIA Services' amended articles of incorporation included, without limitation, the restrictions that: (a) barred AIA Services and AIA Insurance from guaranteeing any loans for any individual or entities which were not wholly-owned subsidiaries; (b) barred certain transactions with shareholders and affiliates; and (c) required AIA Services to comply with certain financial covenants. (Id.) These

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 14

amendments were expressly adopted to protect AIA from precisely the type of acts, omissions, guarantees, loans and transactions at issue in this lawsuit.

**Answer:** Paragraph 28 purports to describe the contents of a written document, the AIA Services amended articles of incorporation, which speaks for itself. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations and on that basis denies them.

29.     In addition, AIA Services' amended articles of incorporation also provided Donna Taylor with the unqualified right, as the Series A Preferred Shareholder, to appoint a person, to be determined in her sole discretion, to the Board of Directors of AIA Services. (See Dkt. 67-3.)

**Answer:** Paragraph 29 purports to describe the contents of a written document, the AIA Services amended articles of incorporation, which speaks for itself. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations and on that basis denies them.

30.     The Controlling AIA Defendants and the Hawley Troxell Defendants were fully aware of the restrictions under AIA Services' amended articles of incorporation and bylaws.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 30 and on that basis denies them.

31.     Donna Taylor's Series A Preferred Shares have not been fully redeemed to this day, and the restrictions under AIA Services' amended articles of incorporation

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 15

remain in full force and effect to this day and fully applicable. (See Dkt. 67-42, pp. 10-11 ¶ 19.)

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 31 and on that basis denies them.

B. John, Connie, Beck and Cashman Take Operational Control of AIA and AIA Authorizes the Issuance of Series C Preferred Shares and Additional Restrictions in Its Amended Articles of Incorporation

32. In 1995, the Controlling AIA Defendants, other than Duclos (although she did assist the Controlling AIA Defendants as an employee and officer (assistant secretary) of AIA), spearheaded a transaction to redeem Reed Taylor's majority common stock interest in AIA Services. (See Dkt. 67-5 and 67-6.)

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 32 and on that basis denies them.

33. As part of the redemption, Beck and Cashman acquired Series C Preferred Shares in AIA Services, through an Investment Agreement, which was entered into with AIA Services and transmitted to AIA Services in Idaho and involved the transaction to redeem Reed Taylor's common shares in Idaho. When AIA Services amended its articles of incorporation to allow the issuance of the Series C Preferred Shares, AIA Services included additional restrictions in its articles of incorporation. Riley assisted in drafting and/or approving these restrictions and he was fully aware of them.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 16

about the truth of the factual allegations contained in Paragraph 33 and on that basis denies them.

34.     Under the new and additional restrictions in AIA Services' amended articles of incorporation (these restrictions were in addition to others adopted in connection with the issuance of Donna Taylor's Series A Preferred Shares), AIA Services was barred from engaging in a number of corporate actions, including, but not limited to: (a) AIA Services could not acquire any common shares from any shareholders unless all dividends due on the Series C Preferred Shares had been paid (10% dividend per year) or those funds were set aside; (b) the Series C Preferred Shareholders had the right to elect one director to AIA Services' Board of Directors; and (c) if any Series C Preferred Shares were redeemed, such redemptions must be equally from all shareholders. (See Dkt. 67-3.)

**Answer:** Paragraph 34 purports to describe the contents of a written document, the AIA Services amended articles of incorporation, which speaks for itself. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations and on that basis denies them.

35.     Although the Series C Preferred Shares held by Beck, Cashman and their friends were eventually unlawfully and effectively redeemed by AIA, other Series C Preferred Shares were later issued to the AIA Services 401(k) Plan and those shares remain issued and outstanding to this day and no dividends have been paid as required since approximately 1997. As a result, these new restrictions under AIA Services amended articles of incorporation were in place for the benefit of AIA Services and the Series C Preferred Shares, which have remained in full force and effect to this day. The

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 17

**8-ER-1682**

Controlling AIA Defendants and the Hawley Troxell Defendants were fully aware of the additional restrictions under AIA Services' amended articles of incorporation.

**Answer:** Paragraph 35 purports to describe the contents of a written document, the AIA Services amended articles of incorporation, which speaks for itself. GemCap lacks knowledge or information sufficient to form a belief about the truth of the remaining factual allegations contained in Paragraph 35 and on that basis denies them.

36. Upon the redemption of Reed Taylor's majority common shares, Beck, Cashman, John and Connie directly or indirectly became the majority common shareholders of AIA Services. (See Dkt. 67-5.) In addition, Beck, Cashman and John entered into a Voting Agreement to ensure that they would maintain control of AIA Services' Board of Directors, which was signed by Beck and Cashman and transmitted by them to Idaho. As a result, the Controlling AIA Defendants have maintained operational control of AIA from 1995 through the present time. Beck and Cashman attended certain board and shareholder meetings for AIA Services in person in Idaho and via telephone from Minnesota for meetings held in Idaho.

**Answer:** Paragraph 36 purports to describe the contents of a written document, a Voting Agreement, which speaks for itself. GemCap lacks knowledge or information sufficient to form a belief about the truth of the remaining factual allegations contained in Paragraph 36 and on that basis denies them.

37. In connection with the redemption of Reed Taylor's shares, John entered into an Executive Officer's Agreement with AIA Services, which guaranteed him certain salary payments and other compensation for three years; that agreement also contained

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 18

non-compete and non- solicitation provisions. (See Dkt. 67-8.) John's salary after the first three years was required to be determined by AIA Services' Board of Directors, which was never done after the first three years.

**Answer:** Paragraph 37 purports to describe the contents of a written document, an Executive Officer's Agreement, which speaks for itself. GemCap lacks knowledge or information sufficient to form a belief about the truth of the remaining factual allegations contained in Paragraph 37 and on that basis denies them.

38.     From 1999-2012, John improperly paid himself millions of dollars pursuant to his Executive Officer's Agreement for his and Connie's benefit (the amount of which in itself was improper based on AIA's business prospects and John's inability to do anything for the benefit of AIA), while he intentionally and repeatedly violated the non-compete and non-solicitation provisions of his Executive Officer's Agreement.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 38 and on that basis denies them.

39.     In connection with the redemption of Reed Taylor's shares in August 1995, AIA Services contributed funds to The Universe Life Insurance Company, which was a wholly-owned subsidiary of AIA Services, in order to make AIA Insurance, which was then a wholly-owned subsidiary of The Universe Life Insurance Company, a subsidiary of AIA Services. After that transaction, AIA Insurance became a wholly-owned subsidiary of AIA Services.

**Answer:** GemCap admits that The Universe Life Insurance Company was owned

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 19

**8-ER-1684**

by AIA Services. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 39 and on that basis denies them.

40.    As a result, from August 1995 through all relevant times, AIA Insurance was a wholly-owned subsidiary through which AIA Services derived its commissions and administrative fees from insurance policies, which accounted for the bulk of AIA's revenues and profits.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 40 and on that basis denies them.

41.    From 1995 through 2005, AIA Insurance generated over $65 million in revenues from commissions (over $33 million) and administrative fees (over $27 million), and it continued to generate revenues thereafter.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 41 and on that basis denies them.

42.    From 1995 through all relevant times, each of the Controlling AIA Defendants has served at various times on the Board of Directors for AIA Services, AIA Insurance and/or CropUSA, while John has continuously served as the President of AIA and Duclos has continuously served as the Secretary of AIA.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 42 and on that basis

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 20

denies them.

43.     From 1999 through certain relevant times, the Controlling AIA Defendants have also served from time to time on purported "advisory board" of CropUSA, which actually made the decisions on behalf of AIA and CropUSA. Specifically, Cashman, Beck and John served on the "advisory board" of CropUSA from 1999 through certain relevant times. Certain of the so- called "advisory board" meetings were conducted via telephone originating in Idaho and in person in Idaho.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 43 and on that basis denies them.

44.     The Controlling AIA Defendants intentionally concealed from AIA and AIA Services' minority shareholders of the existence and authority of the "advisory board" of CropUSA.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 44 and on that basis denies them.

C.     <u>AIA Forms CropUSA and the Controlling AIA Defendants Unlawfully Transfer CropUSA to Themselves</u>

45.     By 1998, AIA's ability to sell health insurance had been impaired by undercapitalization in its underwriting subsidiary, The Universe Life Insurance Company. Accordingly, the company considered proposals to sell other forms of insurance, and in particular crop insurance, to be underwritten by other insurance

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 21

companies. At a 1998 Board of Directors meeting, AIA Services' Board of Directors specifically discussed selling crop insurance and elected to have AIA pursue selling crop insurance.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 45 and on that basis denies them.

46.     In 1999, AIA, then under the control of the Controlling AIA Defendants, began selling crop insurance through a wholly-owned subsidiary of AIA Services formed under the name "AIA Crop Insurance, Inc."

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 46 and on that basis denies them.

47.     The first purported meeting of shareholders of AIA Crop Insurance, Inc. ("AIA Crop Insurance") was held on January 11, 2000. The first purported meeting of the AIA Crop Insurance's Board of Directors was held on the same day. The purported minutes of the shareholder's meeting indicate that John, not the true owner AIA Services, claimed to be the sole shareholder of AIA Crop Insurance at the time of incorporation; these facts were concealed from AIA and AIA Services' innocent minority shareholders.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 47 and on that basis denies them.

48.     Upon information and belief, at or shortly after the time of its formation,

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 22

**8-ER-1687**

the Hawley Troxell Defendants began providing legal services to AIA Crop Insurance.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 48 and on that basis denies them.

49.     At a special meeting of the shareholders of AIA Crop Insurance held on November 13, 2000, AIA Crop Insurance was renamed CropUSA in an apparent attempt to conceal its corporate lineage and origins.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 49 and on that basis denies them.

50.     The minutes of the November 13, 2000 special meeting of the shareholders also show that John continued to claim that he was the sole shareholder of CropUSA, while he was simultaneously representing in business plans provided to others that CropUSA was a subsidiary of AIA Insurance. (See Dkt. 67-66.)

**Answer:** Paragraph 50 purports to describe the contents of a document, which speaks for itself. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 50 and on that basis denies them.

51.     At the time CropUSA was formed, John was employed by AIA Services under an Executive Officer's Agreement, dated August 1, 1995, Dkt. 67-8, which contained express covenants not to compete. Upon information and belief, John's Executive Officer's Agreement and AIA Service's amended articles of incorporation and

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 23

**8-ER-1688**

restated bylaws were drafted and/or approved by Riley, and he had full knowledge of the restrictions under the terms of the foregoing documents.

**Answer:** Paragraph 51 purports to describe the contents of documents, which speak for themselves. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 51 and on that basis denies them.

52.    CropUSA held its purported annual shareholder's meeting on January 10, 2001. By this time, the illegal "spin off" of CropUSA had been accomplished by having AIA Services' Series C Preferred Shareholders (primarily Beck and Cashman) exchange their Series C Preferred Shares for common shares in CropUSA (if CropUSA were in fact an independent entity, these maneuvers would have been completely unnecessary).

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 52 and on that basis denies them.

53.    The minutes for the shareholder meeting held on January 10, 2001 for CropUSA revealed that CropUSA had retained Hawley Troxell as its advisor and SEC counsel and, upon information and belief, the Hawley Troxell Defendants have served continuously as CropUSA's attorneys in one form or the other ever since. According to the minutes, negotiations between AIA Services and CropUSA had resulted in an agreement whereby AIA Services would no longer operate CropUSA as a subsidiary.

**Answer:** Paragraph 53 purports to describe the contents of documents, which speak for themselves. GemCap lacks knowledge or information sufficient to form a belief

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 24

about the truth of any remaining factual allegations contained in Paragraph 53 and on that basis denies them.

54.    However, the negotiations referred to in the January 10, 2001 shareholder meeting minutes for CropUSA did not in fact occur. There was no decision, nor has there ever been a decision, on the part of AIA Services to discontinue the subsidiary status of CropUSA. The January 10, 2001 meeting minutes for CropUSA were concealed from AIA.

**Answer:** Paragraph 54 purports to describe the contents of documents, which speak for themselves. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 54 and on that basis denies them.

55.    None of the preferred or common shareholders of AIA Services (other than those present at the January 10, 2001 meeting) were given notice of or the opportunity to approve or oppose this corporate action; instead, it was concealed from them and AIA.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 55 and on that basis denies them.

56.    In spite of the fact that John asserted on January 10, 2001 that CropUSA would no longer be a subsidiary of AIA Services, John wrote in a letter dated February 27, 2001, sent on behalf of AIA to Donna Taylor, that "AIA is developing a new crop insurance program through a new company called CropUSA." The letter went on to state that "[t]he costs of putting the CropUSA program together have been paid. AIA now

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 25

needs to launch five new territories next Month." This February 27, 2001 letter constituted an unambiguous representation by John to AIA (and Donna Taylor) that CropUSA was a subsidiary of AIA and was being operated for the benefit of AIA and implicitly also for AIA Services' innocent minority shareholders (which included Donna Taylor). This representation to AIA was false, and John knew it was false. Upon information and belief, the other Controlling AIA Defendants were aware of this February 27, 2001 letter and the misrepresentations contained within the letter.

**Answer:** Paragraph 56 purports to describe the contents of documents, which speak for themselves. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 56 and on that basis denies them.

57.     Notwithstanding the fact that John was obligated under the terms of his Executive Officer's Agreement that required that he not compete with AIA Services, and notwithstanding the fact that he owed fiduciary duties to the AIA and AIA Services' shareholders, John set forth his plans to exploit the assets of AIA for the benefit of CropUSA (and himself as the majority purported shareholder) in the purported minutes of the purported January 10, 2001 meeting.

**Answer:** Paragraph 57 purports to describe the contents of documents, which speak for themselves. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 57 and on that basis denies them.

58.     The January 10, 2001 meeting minutes reveal that CropUSA authorized its

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 26

officers to execute a Master Marketing Agreement with AIA Insurance that would allow CropUSA access to all of AIA's customers and customer lists, as well as all of AIA's trade secrets. AIA received no consideration for conveying this access or to enter into these agreements.

**Answer:** Paragraph 58 purports to describe the contents of documents, which speak for themselves. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 58 and on that basis denies them.

59.     CropUSA's officers (including John) were also purportedly authorized to enter into a Management Agreement with AIA Insurance wherein AIA Insurance purportedly agreed to provide management and administrative support to CropUSA without charge. However, John has since testified under oath that AIA's Board of Directors never authorized this agreement, although the Board has acquiesced in the action.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of allegations contained in Paragraph 59 and on that basis denies them.

60.     AIA itself was never given notice of the Master Marketing Agreement and the Management Agreement, nor was AIA given the opportunity to approve or reject these agreements or any subsequent ones. Each of these agreements, when executed, constituted a violation of John's Executive Officer's Agreement, which contains a strict non-compete clause. Each of these agreements also constituted a direct breach of fiduciary duty or the aiding and abetting on behalf of each of the Controlling AIA

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 27

Defendants in the commission of torts against AIA.

**Answer:** Paragraph 60 purports to describe the contents of documents, which speak for themselves. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 60 and on that basis denies them.

61.     Meanwhile, in 2001, John and Connie acquired a parking lot for $8,000 using AIA's line-of-credit. Upon information and belief, AIA was required to maintain control of the parking lot as part of its lease with Washington Bank Properties. John then increased the rent that AIA paid to use the parking lot to benefit him and Connie. For example, although John and Connie paid only $8,000 for the parking lot, they subsequently charged AIA $60,750 in rent to use the parking lot from 2004 through 2006. These unfair and self-serving rental payments to John and Connie were concealed from AIA and AIA Services' innocent minority shareholders and were never disclosed to either of them, as was John and Connie's purchase of the parking lot.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 61 and on that basis denies them.

D.      The Hawley Troxell Defendants Aid and Abet the Controlling AIA Defendants in Taking CropUSA from AIA and Having AIA Fund CropUSA

62.     Upon information and belief, certain of the Hawley Troxell Defendants were providing legal services to CropUSA and/or its board of directors as of January 10, 2001, and such providing of legal services has continued through certain relevant times.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 28

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 62 and on that basis denies them.

63.     Upon information and belief, from January 10, 2001, and continuing through the period relevant to this lawsuit, the Hawley Troxell Defendants had knowledge of John's Executive Officer's Agreement with AIA Services, had knowledge of the conflict of interest provisions in AIA's bylaws, and had knowledge of restrictions in AIA's amended articles of incorporation, but intentionally refused to comply with them and assisted John in violating them or covering up the violations.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 63 and on that basis denies them.

64.     The Hawley Troxell Defendants knew or should have known that the purported Master Marketing Agreement and Management Agreement constituted breaches of John's Executive Officer's Agreement, violations of AIA Service' amended articles of incorporation, violations of AIA Services' restated bylaws, and constituted breaches of John and the other Controlling AIA Defendants' fiduciary duties owed to AIA and AIA Services' minority shareholders.

**Answer:** Paragraph 64 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 64 and on that basis denies them.

65.     Upon information and belief, the Hawley Troxell Defendants were also

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 29

**8-ER-1694**

representing CropUSA from January 10, 2001, through certain relevant times, and by way of that representation they breached their fiduciary duties to AIA (including their undivided duty of loyalty owed to AIA) and took steps that materially assisted John and the Controlling AIA Defendants in the commission of the various torts described in this Third Amended Complaint and assisted in the concealment of those torts.

**Answer:** Paragraph 65 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 65 and on that basis denies them.

66. Beginning in 1999 and continuing through the time CropUSA ceased operating, CropUSA was funded and operated with assets improperly transferred from AIA, including, but not limited to, operating capital, office space, customer lists and other trade secrets, agents and staff, goodwill and other assistance. CropUSA paid nothing for these assets.

**Answer:** Paragraph 66 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 66 and on that basis denies them.

67. The Controlling AIA Defendants, except Duclos, were all shareholders of AIA at the time CropUSA was formed and later purportedly became shareholders of CropUSA.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 67 and on that basis denies them.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 30

68.     The Controlling AIA Defendants, except Duclos (although she improperly took part in the meetings and acted as the Secretary) and Connie, all served on a purported "advisory board" of CropUSA and/or AIA, and this advisory board exercised actual control over CropUSA and AIA. By exercising control over these entities and committing acts that benefitted CropUSA at the expense of AIA, the Controlling AIA Defendants engaged in a conspiracy to defraud AIA, which should have had the right and title to the property of CropUSA.

**Answer:** Paragraph 68 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 68 and on that basis denies them.

69.     On January 10, 2002, CropUSA purportedly entered into a Memorandum of Understanding with the Controlling AIA Defendants. Under the terms of this memorandum, Beck and Cashman were obligated to guarantee loans on behalf of CropUSA. Beck and Cashman guaranteed loans for CropUSA, an Idaho corporation, in Idaho and sent their financial information to Idaho for the guarantees.

**Answer:** Paragraph 69 purports to describe the contents of documents, which speak for themselves. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 69 and on that basis denies them.

70.     Notably, Beck and Cashman had also been obligated to guarantee over $1,000,000 in loans on behalf of AIA since 1995, but they never did. Notwithstanding this obligation, the Controlling AIA Defendants subsequently arranged for AIA to

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 31

**8-ER-1696**

guarantee CropUSA's lines of credit, even though the guarantees were barred by AIA's amended articles of incorporation and bylaws.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 70 and on that basis denies them.

71.     In 2004, the Controlling AIA Defendants attempted to raise capital for CropUSA by selling shares in CropUSA to private investors by way of a $10,000,000 private placement. The Hawley Troxell Defendants drafted the July 15, 2004 Private Placement Memorandum, despite their knowledge of the illegal "spin-off" of CropUSA and the fiduciary duties they owed to AIA.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 71 and on that basis denies them.

72.     When CropUSA began distributing the Private Placement Memorandum in 2004, the company was experiencing financial difficulties that made it difficult, if not impossible, to attract investors to purchase shares pursuant to the private placement.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 72 and on that basis denies them.

73.     In addition, in 2004, CropUSA's lack of adequate funding threatened its ability to sell crop insurance. To alleviate these problems, the Controlling AIA Defendants improperly turned to AIA to obtain the necessary funding.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 32

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 73 and on that basis denies them.

> E.   The Controlling AIA Defendants Unlawfully Transfer $1,510,693 From AIA to Fund CropUSA and Then They Use $634,269 of Those Funds to Repay a Debt that CropUSA Owed to AIA—Thereby Resulting in a $2,144,962 Fraud Against AIA.

74.   In order to boost CropUSA's balance sheet for the purpose of operating the company, the Controlling AIA Defendants devised a scheme to illegally transfer $1,510,693 from AIA Insurance to CropUSA. The Controlling AIA Defendants conspired with each other in the formation and execution of this scheme to unlawfully transfer $1,510,693 of AIA's funds to CropUSA, and aided and abetted one another in carrying out the scheme and ultimately covering it up. Upon information and belief, the Hawley Troxell Defendants provided counsel to CropUSA with respect to the unlawful transfer of funds and/or has, at a minimum, assisted in covering up the facts of this illegal transfer.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 74 and on that basis denies them.

75.   The scheme involved money derived from AIA Insurance. In August 2004, AIA Insurance received a payment of $1,510,693 from Trustmark. (See Dkt. 67-59.) Rather than deposit the payment of $1,510,693 into the account of AIA Insurance, where it would have benefited AIA and its innocent shareholders, John deposited the funds into

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 33

a new account entitled "AIA Insurance Inc. CropUSA." (See Dkt. 67-60.) The address for this account coincided with the address for John's personal residence at 2020 Broadview Drive in Lewiston, Idaho, rather than any address used by AIA. (Id.)

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 75 and on that basis denies them.

76.     Shortly after diverting the $1,510,693 into the "AIA Insurance Inc. CropUSA" account, the Controlling AIA Defendants illegally transferred the funds to CropUSA. The Controlling AIA Defendants attempted to disguise this conversion of AIA Insurance's funds by characterizing the transaction as an alleged purchase by AIA Insurance of Series C Preferred Shares in its parent corporation, AIA Services. (See Dkt. 67-59.) Then, the Controlling AIA Defendants carried AIA Insurance's alleged investment in the Series C Preferred Shares as having a purported value of $1,510,693 when that was not the true value of the shares.

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 76 and on that basis denies them.

77.     However, as the Controlling AIA Defendants acknowledged at the time, there was no market for the Series C Preferred Shares which were purportedly being repurchased. At the time the $1,510,693 in funds were converted by CropUSA, there was no authorization of any kind for the transaction, and the transaction was concealed from AIA.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 34

**8-ER-1699**

**Answer:** GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 77 and on that basis denies them.

78.    In order to create a plausible explanation for the transfer of the $1,510,693, CropUSA eventually produced a document designated as a Consent in Lieu of Meeting dated August 26, 2004. (See Dkt. 67-61.) However, this document itself is completely fraudulent, as it was retroactively created the following year in order to deceive auditors who questioned the validity of this transaction.

**Answer:** Paragraph 78 purports to describe a document, which speaks for itself. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 78 and on that basis denies them.

79.    In addition, this $1,510,693 purported repurchase of shares separately violated the terms of AIA Services' amended articles of incorporation, which required that all Series C Preferred Shares be redeemed equally and simultaneously from all shareholders. (See Dkt. 67-3.) Instead of repurchasing an equal portion of the Series C Preferred Shares from AIA Services' 401(k) Plan, the Controlling AIA Defendants intentionally only repurchased the Series C Preferred Shares held by CropUSA (which had been previously held by Beck, Cashman and their friends).

**Answer:** Paragraph 79 purports to describe the contents of documents, which speak for themselves. This paragraph also contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 79 and on that

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 35

basis denies them.

80.     CropUSA was carrying these Series C Preferred Shares in AIA Services on its books with a value of $21,693, which means that CropUSA realized a gain of $1,489,000 on this purported sale of shares. (See Dkt. 67-59.) At that time, although the Controlling AIA Defendants had not properly accounted for all funds, assets, labor and other costs advanced from AIA for CropUSA, they had actually accounted for there being a debt of $634,269 owed by CropUSA to AIA.

**Answer:** Paragraph 80 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 80 and on that basis denies them.

81.     After unlawfully transferring the $1,510,693 received by AIA Insurance to CropUSA, the Controlling AIA Shareholders had CropUSA repay the $634,269 debt owed to AIA, thereby committing a double fraud upon AIA, i.e., AIA should have the $1,510,693 in its bank account now and it should have never lent the $634,269 to CropUSA in the first place. In other words, those fraudulent transactions alone resulted in the loss of $2,144,962 in funds to AIA and thus damaged AIA in the amount of $2,144,962. The Controlling AIA Defendants have actively concealed, or covered up, these transactions from AIA with the assistance of the Hawley Troxell Defendants.

**Answer:** Paragraph 81 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 81 and on that basis denies them.

82.     AIA and the innocent shareholders of AIA Services were never given

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 36

notice of the 2004 stock transaction, nor were any proper board or shareholder meetings held to approve the transaction. However, as with the fraudulent document prepared on behalf of CropUSA, a fraudulent Consent in Lieu of Meeting, dated August 26, 2004, was prepared on behalf of AIA. This document was actually produced several months after the transaction and was created to deceive auditors.

**Answer:** Paragraph 82 purports to describe documents, which speak for themselves. This paragraph also contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 82 and on that basis denies them.

83.    Upon information and believe, the Hawley Troxell Defendants provided legal services to both AIA and CropUSA at the time of the 2004 transaction or had actual knowledge of the 2004 transaction.

**Answer:** Paragraph 83 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 83 and on that basis denies them.

84.    The Hawley Troxell Defendants at various times, as purported counsel for AIA, failed to disclose to AIA the 2004 transaction to transfer $1,510,693 to CropUSA and that the acts of the Controlling AIA Defendants constituted an intentional breach of their fiduciary duties (including the duty of loyalty) owed to AIA and a concealment of a prohibited transaction. For this reason alone, the Hawley Troxell Defendants could not reasonably rely on a tolling agreement to represent AIA, CropUSA and the interest of the

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 37

Controlling AIA Defendants in later litigation.

**Answer:** Paragraph 84 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 84 and on that basis denies them.

85.    The Hawley Troxell Defendants failed to disclose to AIA, or to anyone else, that this $1,510,693 transaction was unlawful on many levels, including but not limited to the fact that it did not comply with the articles of incorporation and bylaws, caused a breach of AIA's other contracts, and could not be justified by the balance sheet of either AIA Insurance or CropUSA. Upon information and belief, the Hawley Troxell Defendants had knowledge of the back-dated Consent in Lieu of Meeting documents.

**Answer:** Paragraph 85 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 85 and on that basis denies them.

86.    On February 16, 2005, Beck sent an email to John and Cashman confirming the Controlling AIA Defendants' scheme to misappropriate CropUSA in an effort to profit at the expense of AIA: "[Cashman] and I are so convinced that CropUSA is a winner that anything standing in the way of a good result will be a crime." (Dkt. 67-54.) The crime was stealing CropUSA from AIA and then to drain AIA of its funds and assets to pursue the Controlling AIA Defendants' scheme. This was not the only email exchanged between the Controlling AIA Defendants, as they emailed one another on numerous occasions, including emails directed to recipients in Idaho.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 38

**Answer:** Paragraph 86 purports to describe a document, which speaks for itself. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 86 and on that basis denies them.

F.      The Controlling AIA Defendants Continue to Unlawfully Fund, Subsidize and Operate CropUSA Using AIA's Funds, Assets, Labor and Financial Wherewithal

87.      After unlawfully taking $2,144,962 from AIA Insurance in 2004, the Controlling AIA Defendants continued to operate CropUSA with assets both tangible and intangible that rightfully belonged to AIA, continued to improperly subsidize CropUSA with AIA's assets and labor, and continued to conceal their actions from AIA and AIA Services' innocent minority shareholders.

**Answer:** Paragraph 87 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 87 and on that basis denies them.

88.      Under the management and direction of the Controlling AIA Defendants, AIA regularly failed to allocate costs to CropUSA and other entities and failed to charge markup, interest or profit on costs paid for other entities. For example, John's own salary of $250,000 was allocated entirely to AIA Services even though John's contractual right to a salary from AIA Services had expired in 1998 and had never been renewed by an authorized board. (And, further, John performed no actual work for AIA during the time in question.)

**Answer:** Paragraph 88 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 39

truth of the factual allegations contained in Paragraph 88 and on that basis denies them.

89.     John, with the knowledge and complicity of the other Controlling AIA Defendants, also performed work for other entities owned in full or in part by him while on AIA's payroll, i.e., CropUSA, Pacific Empire Radio Corp., Pacific Empire Communications Corp., Pacific Empire Holdings Corp., Radio Leasing I LLC and Radio Leasing II LLC. John also had other AIA employees work for these entities without compensation to AIA. These facts, like virtually all of the others referenced in this Third Amended Complaint, were concealed from AIA and AIA Services' innocent minority shareholders.

**Answer:** Paragraph 89 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 89 and on that basis denies them.

90.     Between its founding in 1999 and the filing of this lawsuit, CropUSA and other entities generated tens of millions of dollars of revenue (including premiums) and other benefits that would have flowed to AIA but for the unlawful and unauthorized acts of the Controlling AIA Defendants.

**Answer:** Paragraph 90 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 90 and on that basis denies them.

91.     As of 2006, John owed AIA at least $307,000 for personal loans he had taken from AIA Services. For several years, John concealed these loans by engaging in false accounting whereby loans to him were treated as payments of principal on AIA

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 40

Services' indebtedness due to Reed Taylor on his $6 million promissory note (which was later ruled to be illegal). In 2006, John "corrected" the alleged accounting "error" by increasing the balance due on Reed Taylor's note to $6 million and reinstating John's $307,000 debt. John had still not repaid this personal loan.

**Answer:** Paragraph 91 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 91 and on that basis denies them.

92.     Over the years, John had AIA pay his personal maid, his personal credit card bills, donations, cash advances, family cell phone bills, and other personal expenses. John also had AIA purchase several vehicles from him, and he continued to drive these vehicles after the sales and purchase of other vehicles with AIA's funds to use for his benefit when there was no reason to do so. John also had AIA employees perform work on his personal residence and on other real property not owned by AIA. These acts were all committed with the knowledge and complicity of the Controlling AIA Defendants and without paying AIA the fair value of the services or expenses.

**Answer:** Paragraph 92 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 92 and on that basis denies them.

93.     At year-end 2006, AIA had improperly lent $95,000 to Pacific Empire Radio Corp., a corporation partially owned by John and Connie and in which they both served as directors at certain times. The Controlling AIA Defendants transferred that $95,000 receivable from AIA to CropUSA. By the end of 2012, AIA would lend over

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 41

$1,400,000 in additional funds to Pacific Empire Radio Corp., when all such loans violated AIA Services' amended articles of incorporation and were not authorized under the circumstances by AIA Services' restated bylaws.

**Answer:** Paragraph 93 purports to describe a document, which speaks for itself. This paragraph also contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 93 and on that basis denies them.

94.     In August 2007, AIA settled litigation with the state of Idaho whereby AIA received a mortgage worth approximately $1.5 million for the amount owed by Washington Bank Properties on the real property where AIA Services' headquarters was located.[1] Although AIA Insurance paid the costs of this litigation, the Controlling AIA Defendants, with the assistance of the Hawley Troxell Defendants, improperly titled the

---

[1] AIA Services' headquarters was previously owned by its wholly-owned subsidiary the Universe Life Insurance Company, which had sold the building through a lease-back with an option to purchase in the 1990s. After the state of Idaho later took control of Universe Life through a receivership when the capital requirements were changed, the state of Idaho became the owner of the mortgage. Later, AIA was involved in litigation with the state of Idaho over its receivership over Universe Life. The litigation was settled and the state of Idaho transferred the mortgage back to AIA as the consideration for the settlement. AIA ultimately foreclosed on the mortgage thereby obtaining ownership of its headquarters, which was later unlawfully transferred to GemCap, as discussed below.

**Answer:** Footnote 1 contains legal conclusions to which no response is required. GemCap admits that Universe Life Insurance Company owned the mortgage of 111 Main Street, Lewiston, Idaho, and entered a lease-back option, which is a document that speaks for itself; admits that Universe Life entered liquidation; admits that AIA Services held the mortgage and foreclosed on it; and admits that AIA Services' rights in the mortgage were transferred to GemCap. GemCap denies the remaining factual allegations contained in Footnote 1.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 42

note in the name of AIA Services only, and then pledged the note to CropUSA so that the Controlling AIA Defendants could borrow money to pay their attorneys' fees and costs incurred defending in Taylor v. AIA Services to the Hawley Troxell Defendants.

**Answer:** Paragraph 94 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 94 and on that basis denies them.

95.     As with the 2004 transactions, the transaction pledging the mortgage owned by AIA Services to CropUSA for purportedly paying the Hawley Troxell Defendants' attorneys' fees and costs incurred representing AIA, CropUSA and the Controlling AIA Defendants was a blatant misappropriation and/or illegal pledging of AIA's assets. The loan documents and the pledge agreement were drafted by the Hawley Troxell Defendants, although they later asserted that they were only "scriveners" for the transaction. This transaction was improper and barred by AIA's amended articles of incorporation and bylaws.

**Answer:** Paragraph 95 contains legal conclusions to which no response is required. Paragraph 95 also purports to describe the contents of documents, which speak for themselves. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 95 and on that basis denies them.

G.     The Controlling AIA Defendants Continue to Unlawfully Use AIA's Funds and Financial Wherewithal with the Improper Assistance from the Hawley Troxell Defendants

96.     On October 26, 2007, the Hawley Troxell Defendants drafted and delivered

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 43

**8-ER-1708**

an opinion letter falsely representing that AIA Insurance was authorized to guarantee a $15,000,000 line-of-credit on behalf of CropUSA, which carried a hard-money loan with an exorbitant interest rate.

**Answer:** Paragraph 96 contains legal conclusions to which no response is required. Paragraph 96 purports to describe the contents of a document, which speaks for itself. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 96 and on that basis denies them.

97.     The Hawley Troxell Defendants' opinion letter was delivered for a loan guarantee which violated AIA Services' amended articles of incorporation, its restated bylaws and AIA Insurance's bylaws, and in violation of the duty of loyalty owed by the Hawley Troxell Defendants to AIA.

**Answer:** Paragraph 97 contains legal conclusions to which no response is required. Paragraph 97 also purports to describe the contents of a document, which speaks for itself. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 97 and on that basis denies them.

98.     Lancelot, the lender for this $15,000,000 line-of-credit was subsequently exposed as a Ponzi scheme, and its founder, Gregory Bell, pleaded guilty to criminal charges in federal court. Mr. Bell was the signee for Lancelot on the $15,000,000 line-of-credit. These facts pertaining to the $15,000,000 loan for CropUSA and AIA Insurance's guarantee of that loan, along with other transactions, were never disclosed to AIA by the

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 44

Hawley Troxell Defendants or the Controlling AIA Defendants and the payment of interest on that loan was detrimental to AIA because most of CropUSA's assets could be traced directly to AIA (and the depletion of CropUSA's funds resulted in less funds available to recover).

**Answer:** Paragraph 98 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 98 and on that basis denies them.

H.      The Controlling AIA Defendants Enter Into Tolling Agreements, but Those Tolling Agreements Do Not Save the Hawley Troxell Defendants from the Unwaivable Conflicts of Interest

99.      In 2007, Reed Taylor filed suit against AIA and certain of the Controlling AIA Defendants, asserting claims for breaches of contract, breaches of fiduciary duties, conversion, fraud and other claims ("Taylor v. AIA Services"). In 2007, the Hawley Troxell Defendants appeared as counsel for AIA Services and AIA Insurance in that lawsuit. Later, Reed Taylor amended his complaint and named CropUSA as a defendant, after recognizing that millions of dollars had been transferred to it from AIA, among other improper transactions (including some of those transactions described in this Third Amended Complaint). (See Dkt. 82-2.) The Hawley Troxell Defendants also appeared and represented CropUSA in that lawsuit. (Id.) Although Riley did not formally appear as counsel in Taylor v. AIA Services, Riley took an active interest in Taylor v. AIA Services and consulted with Babbitt, Ashby and/or other attorneys at Hawley Troxell relative to that case. The scope of representation of the Hawley Troxell Defendants in Taylor v. AIA Services could not have included representing the interest of CropUSA or the Controlling

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 45

**8-ER-1710**

AIA Defendants.

**Answer:** Paragraph 99 describes the contents of pleadings in another case, which are documents that speak for themselves. This paragraph also contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the remaining factual allegations contained in Paragraph 99, and on that basis denies them.

100.   As the purported attorneys for AIA, two entities, the Hawley Troxell Defendants owed duties of loyalty, care, and good faith to AIA and the Hawley Troxell Defendants breached their duties of care and fiduciary duties by engaging in the simultaneous representation of the Controlling AIA Defendants, AIA, CropUSA, and other parties (including Bryan Freeman) with interests adverse to the interests of AIA.

**Answer:** Paragraph 100 contains legal conclusions to which no answer is required. With respect to factual allegations, GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 100, and on that basis denies them.

101.   The Controlling AIA Defendants, and any other former AIA directors or officers, had conflicts of interest that prevented any of them from waiving the conflicts of interest involved in the Hawley Troxell Defendants' joint representation of AIA Services, AIA Insurance and CropUSA. In addition, the Controlling AIA Defendants had conflicts of interest that prevented them from being disinterested or proper constituents or officers of AIA to direct the Hawley Troxell Defendants' representation of AIA Services, AIA Insurance and CropUSA.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 46

**8-ER-1711**

**Answer:** Paragraph 101 contains legal conclusions to which no answer is required. With respect to factual allegations, GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 100, and on that basis denies them.

102.    In 2007, Connie and Beck were purportedly appointed to the Boards of Directors of AIA Service and AIA Insurance by John. Connie and Beck were paid $5,000 per quarter to "serve" on the Boards of Directors of AIA and they also were to receive common shares for their purported "service." Beck and Connie attended certain AIA board meetings in person in Idaho or through telephone calls to Idaho, which further directed aspects of AIA's businesses and certain other transactions. Beck later testified that he serves on AIA's Boards to protect his own interests and those of his friends (the same friends who previously acquired Series C Preferred Shares in AIA Services and illegally exchanged them for common shares in CropUSA).

**Answer:** Paragraph 102 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 102, and on that basis denies them.

103.    In 2007 and 2008, the Controlling AIA Defendants entered into written tolling agreements in connection with the various litigations directly or indirectly involving AIA. The Hawley Troxell Defendants were improperly involved with and/or facilitated the Controlling AIA Defendants entering into such tolling agreements for the purpose of allowing the Hawley Troxell Defendants to continue to represent AIA, CropUSA and directly or indirectly certain of the Controlling AIA Defendants.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 47

**Answer:** Paragraph 103 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 103, and on that basis denies them.

104.    By tolling the statute of limitations for claims against the Controlling AIA Defendants, the Hawley Troxell Defendants sought to use the tolling agreements to authorize the waiver of their conflicts of interest representing AIA, CropUSA and the interests of the Controlling AIA Defendants in litigation that could have and should have exposed the fraud and intentional breaches of fiduciary duties committed by the Controlling AIA Defendants.

**Answer:** Paragraph 104 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 104, and on that basis denies them.

105.    The limited permissible circumstances when tolling agreements and conflict waivers may be appropriate were not present when the Hawley Troxell Defendants prepared and/or entered into agreements with AIA, CropUSA and/or the Controlling AIA Defendants. Upon information and belief, the Hawley Troxell Defendants prepared and/or entered into agreements and/or amended agreements without requiring AIA to have independent counsel and without involving disinterested and unconflicted constituents from AIA in violation of the Rules of Professional Conduct, including RPC 1.7, RPC 1.8 and RPC 1.13. Throughout the Hawley Troxell Defendants' representation of AIA and CropUSA, they failed to act in the best interests of AIA and to address the conflicts of interest and malfeasance committed against AIA with the highest

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 48

**8-ER-1713**

unconflicted and disinterested constituents from AIA in violation of the Rules of Professional Conduct, including, RPC 1.13.

**Answer:** Paragraph 105 contains legal conclusions to which no response is required. Paragraph 105 also alleges the content of documents, which speak for themselves. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 105, and on that basis denies them.

106.    The Hawley Troxell Defendants knew or should have known that the Controlling AIA Defendants had committed intentional acts of fraud and breaches of fiduciary duties (including the duty of loyalty) owed to AIA. The Hawley Troxell Defendants knew or should have known that by allowing the Controlling AIA Defendants to continue to operate and control AIA that they would continue to conceal their past torts and likely continue to commit new torts, which is precisely what occurred here as demonstrated by the facts alleged in this Third Amended Complaint.

**Answer:** Paragraph 106 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 106, and on that basis denies them.

107.    Although these tolling agreements tolled the statute of limitations for claims AIA could assert against the Controlling AIA Defendants (which eliminates any defense they may have to assert any statute of limitations defenses), the facts set forth in this Third Amended Complaint demonstrate why such tolling agreements were improper under the circumstances as the agreements involved tolling intentional torts committed

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 49

**8-ER-1714**

against AIA. While the claims were being tolled, the Controlling AIA Defendants continued to unlawfully use AIA's cash, resources and ability to borrow to fund other businesses and pay compensation to themselves.

**Answer:** Paragraph 107 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 107, and on that basis denies them.

108.    During the course of the litigation in Taylor v. AIA Services, Reed Taylor attempted to negotiate a settlement, but he insisted that any settlement must include full disclosure to, and authorization by, AIA Services' minority shareholders and to allow them to participate in CropUSA common share ownership. (See Dkt. 67-18.) Not only did the Controlling AIA Defendants and Hawley Troxell Defendants reject Reed Taylor's offer, but they still refused and failed to provide full disclosure to AIA and AIA Services' innocent minority shareholders of the malfeasance and torts committed against AIA. The untenable position of the Hawley Troxell Defendants was confirmed when the only person seeking to require full and fair disclosure to the shareholders and for them to rightfully participate in AIA's business was a former creditor, Reed Taylor. (Id.)

**Answer:** Paragraph 108 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 108, and on that basis denies them.

109.    During the course of Taylor v. AIA Services, Connie and Beck represented to Judge Brudie, the Idaho Supreme Court, and AIA that the redemption of Reed Taylor's shares should be illegal to benefit AIA Services' minority shareholders. (See Dkt. 67-23

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 50

and 67-25.) After Judge Brudie ruled the redemption of Reed Taylor's shares was illegal, neither Connie, Beck, the Hawley Troxell Defendants nor any of the other Controlling AIA Defendants did anything to benefit AIA or its minority shareholders nor did they ever have any intention of helping them, contrary to what they had represented to Judge Brudie and the Idaho Supreme Court.

**Answer:** Paragraph 109 alleges contents of a document, which speaks for itself. GemCap lacks knowledge or information sufficient to form a belief about the truth of the remaining factual allegations contained in Paragraph 109, and on that basis denies them.

110. Instead of sharing equally in AIA's assets with AIA Services' innocent minority shareholders, the Controlling AIA Defendants later sought to eliminate those minority shareholders for only ten cents per share, even though Connie and John both previously valued the shares much higher even after considering the over $6 million that AIA Services owed to Reed Taylor at the time of valuation (a debt that was later ruled to be illegal and void). (See Dkt. 67-24 and 67-50.)

**Answer:** Paragraph 110 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 110, and on that basis denies them.

111. Riley was an attorney at the law firm of Eberle Berlin at the time of the redemption of Reed Taylor's shares in 1995 and he breached his duty of care by advising AIA Services to enter into the illegal stock redemption transaction. See Taylor v. AIA Servs. Corp., 151 Idaho 552, 261 P.3d 829 (2011). Riley concealed facts from AIA regarding the redemption.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 51

**Answer:** Paragraph 111 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 111, and on that basis denies them.

112.   The illegal redemption of Reed Taylor's common shares ultimately led to AIA incurring over $1 million in attorneys' fees and costs litigating and resulted in AIA Services being required to report to the IRS a gain from the $6 million it never had to pay Reed Taylor.

**Answer:** Paragraph 112 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 112, and on that basis denies them.

113.   Upon information and belief, the Controlling AIA Defendants never reported the gain from the extinguished $6 million debt to Reed Taylor on AIA Services' tax return. If the Controlling AIA Defendants did not report the $6 million income to the IRS and AIA Services is obligated to pay taxes, penalties and interest on that gain, the Controlling AIA Defendants and Hawley Troxell Defendants are liable for those sums as well for breaching their fiduciary duties owed to AIA.

**Answer:** Paragraph 113 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 113, and on that basis denies them.

114.   Based on the intentional acts of the Hawley Troxell Defendants, AIA has been decimated because the Controlling AIA Defendants remained in control of AIA through those tolling agreements and the Hawley Troxell Defendants' ongoing

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 52

representation of AIA. The end result of these tolling agreements and ongoing representation was that the Hawley Troxell Defendants improperly ensured that the Controlling AIA Defendants would retain control over AIA to the detriment of AIA and for the improper benefit to the Hawley Troxell Defendants and the Controlling AIA Defendants.

**Answer:** Paragraph 114 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 114, and on that basis denies them.

115.   In or around 2007 or 2008, AIA Insurance received a settlement of approximately $800,000 for litigation that AIA Insurance had funded for certain policy holders. Instead of utilizing or retaining AIA's portion of such funds exclusively for AIA, the Controlling AIA Defendants improperly used those funds to, inter alia, continue their intentional acts of funding CropUSA and to pay litigation expenses caused by them or other unauthorized uses. Upon information and belief, the Hawley Troxell Defendants had knowledge of the receipt of those funds, yet they did nothing to protect the funds even though the funds were at issue in Taylor v. AIA Services.

**Answer:** Paragraph 115 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 115, and on that basis denies them.

116.   In 2008, the Controlling AIA Defendants and the Hawley Troxell Defendants permitted CropUSA to sell a book of crop insurance business to Hudson Insurance for the benefit of CropUSA when approximately 75% of the business had been

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 53

derived directly from AIA's agency force (i.e., agents such as Larry Whitehead). The over $15 million sale price should have been paid to AIA, rather than to CropUSA or to pay the debts incurred by the Controlling AIA Defendants through CropUSA. Even if the sale of this book of business rightfully occurred, AIA should have been the recipient of the sale proceeds and there should not have been any money owed to Lancelot or others because the Controlling AIA Defendants had engaged in corporate waste and other breached fiduciary duties that resulted in the sums being allegedly owed.

**Answer:** Paragraph 116 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 116, and on that basis denies them.

117.    Sometime after CropUSA sold the bulk of its assets to Hudson Insurance in 2008, which were derived primarily from AIA, the Controlling AIA Defendants obtained further funds from Hudson Insurance for Growers National Cooperative Insurance Agency, Inc. ("Growers National"), an entity formed and funded by AIA for the purpose of selling crop insurance that allowed the members to participate in the agency by receiving patronage dividends.

**Answer:** Paragraph 117 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 117, and on that basis denies them.

118.    Upon information and belief, CropUSA received over $500,000 from Hudson Insurance for Growers National. These funds should have been paid to AIA and the receipt of the funds was concealed from AIA. Plaintiff will establish the exact amount

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 54

of funds that the Controlling AIA Defendants and/or CropUSA received from Hudson Insurance for Growers National at the time of trial.

**Answer:** Paragraph 118 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 118, and on that basis denies them.

I. <u>The Controlling AIA Defendants Continue Unlawfully Using Funds from AIA and Intentionally Committing Torts against AIA with the Assistance of the Hawley Troxell Defendants—Even While This Lawsuit Was Pending</u>

119. Upon information and belief, the Hawley Troxell Defendants have been paid the bulk of the over $2,000,000 in attorneys' fees and costs incurred and/or paid for the various lawsuits. Plaintiff will establish the exact amount of funds paid to the Hawley Troxell Defendants by AIA and/or on behalf of AIA, which Plaintiff is seeking to be disgorged and returned to AIA.

**Answer:** Paragraph 119 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 119, and on that basis denies them.

120. From 2009 through the present time, Donna Taylor exercised her right under the amended articles of incorporation to appoint two different directors to AIA Services' Board of Directors, but the Controlling AIA Defendants and/or the Hawley Troxell Defendants refused to honor her unqualified right thereby resulting in all actions taken by AIA Services' Board of Directors during that period of time being unauthorized and thus a breach of the fiduciary duties of the Controlling AIA Defendants.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 55

**Answer:** Paragraph 120 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 120, and on that basis denies them.

121.    In December 2009, Donna Taylor filed suit against AIA Services to exercise her unequivocal right to appoint her designee, Patrick Moran, to the Board of Directors of AIA Services and to appoint a receiver for AIA Services. The Hawley Troxell Defendants once again appeared in that lawsuit and successfully opposed Donna Taylor's designee being appointed to the Board of Directors or a receiver being appointed by improperly seeking a stay in the lawsuit.

**Answer:** Paragraph 121 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 121, and on that basis denies them.

122.    Had the Hawley Troxell Defendants joined Donna Taylor in having a receiver appointed for AIA Services, which the Hawley Troxell Defendants should have done in light of the countless intentional torts committed against AIA by the Controlling AIA Defendants, there is no doubt that they could have stopped the Controlling AIA Defendants from carrying out their ongoing fraud, intentional breaches of fiduciary duties and their destruction of AIA. At a minimum, the Hawley Troxell Defendants' acts and/or omissions in this regard was a substantial factor of the improper transactions, unlawful acts, and the cause of millions of dollars of damages to AIA.

**Answer:** Paragraph 122 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 56

**8-ER-1721**

truth of the factual allegations contained in Paragraph 122, and on that basis denies them.

123.    This lawsuit was filed by Plaintiff on August 11, 2010, and subsequently stayed at the request of the Controlling AIA Defendants and the Hawley Troxell Defendants. During that stay, inappropriate and unlawful transactions continued to occur.

**Answer:** Paragraph 123 contains legal conclusions to which no response is required. As to factual allegations, GemCap admits the first sentence. GemCap denies that it engaged in inappropriate and unlawful transactions. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations set forth in Paragraph 123.

124.    The Controlling AIA Defendants continued to utilize AIA's funds, assets, labor, trade secrets and borrowing ability to unlawfully assist CropUSA and other entities owned by the Controlling AIA Defendants.

**Answer:** Paragraph 124 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 124, and on that basis denies them.

125.    In March 2012, the Controlling AIA Defendants, improperly terminated AIA Services' ESOP and paid those shareholders three cents per share for their hard-earned common shares. At no time prior to or after the termination of the ESOP did the Controlling AIA Defendants disclose the facts pertaining to the malfeasance and torts existing at that time (as described in this Third Amended Complaint or otherwise) to those shareholders. (See Dkt. 67-30-33, 34.) AIA Services was separately barred from purchasing or redeeming the common shares held in the ESOP.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 57

**Answer:** Paragraph 125 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 125, and on that basis denies them.

126.    However, the Controlling AIA Defendants knew that AIA Services' amended articles of incorporation barred all stock redemptions, including any purchases of shares held by the ESOP, until the Series A Preferred Shares were all fully redeemed and the Series C Preferred Shares had been paid the over $1,000,000 in dividends owed. The repurchase of the ESOP shares for three cents per share was illegal, ultra vires and improper.

**Answer:** Paragraph 126 contains legal conclusions to which no response is required. Paragraph 126 purports to describe the contents of a document, which speaks for itself. GemCap lacks knowledge or information sufficient to form a belief about the truth of the remaining factual allegations contained in Paragraph 126, and on that basis denies them.

127.    Effective March 23, 2012, Beck and Cashman purportedly entered into an agreement with John to sell their purported common shares in AIA Services, which such shares had never been properly or lawfully issued in the first place. The agreement provided that Idaho law applied and, upon information and belief, Beck and Cashman entered into that agreement in connection with the failed effort to effectuate a reverse stock split to eliminate the minority shareholders.

**Answer:** Paragraph 127 contains legal conclusions to which no response is required. Paragraph 127 purports to describe the contents of a document, which speaks

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 58

**8-ER-1723**

for itself. GemCap lacks knowledge or information sufficient to form a belief about the truth of the remaining factual allegations contained in Paragraph 127, and on that basis denies them.

128.    In 2012, the Controlling AIA Defendants improperly sought to effectuate a reverse stock split and to only pay AIA Services' minority common shareholders ten cents per share to repurchase those common shares (including Plaintiff's shares) without disclosing any facts and without offering full and fair compensation for the value of the shares. (See Dkt. 66-3, 67-48, 67-48.) The notice to the shareholders was signed by Duclos and the improper and unlawful reverse stock split was approved by Beck, John and Connie. (Id.)

**Answer:** Paragraph 128 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 128, and on that basis denies them.

129.    Fourteen shareholders objected to the alleged reverse stock split. (See Dkt. 67-41.) The ill-conceived reverse stock split violated AIA Services' amended articles of incorporation and the Controlling AIA Defendants did not comply with Idaho Code, including, by failing to provide the form for the shareholders to state the value that they believed should be paid for their common shares thereby further establishing the true improper purpose of the failed reverse stock split. The reverse stock split was not pursued for any proper business purpose.

**Answer:** Paragraph 129 contains legal conclusions to which no response is required. Paragraph 129 purports to describe the contents of a document, which speaks

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 59

**8-ER-1724**

8-ER-1725

for itself. GemCap lacks knowledge or information sufficient to form a belief about the truth of the remaining factual allegations contained in Paragraph 129, and on that basis denies them.

130. In response to the fourteen shareholder objections and notices of demands for payment, the Controlling AIA Defendants, without regard to the fact that they would expend tens of thousands of dollars more in funds litigating the issue rather than simply paying the shareholders the true fair value of their shares, had AIA Services file suit against the fourteen shareholders. (See Dkt. 83-15.) Judge Carl Kerrick dismissed the lawsuit, and further noted that it was disingenuous to seek a reverse stock split until this lawsuit was resolved. (See Dkt. 86-1.) Judge Kerrick later awarded attorneys' fees and costs to the shareholder defendants. That judgment in favor of those fourteen shareholders has still never been paid by the Controlling AIA Defendants or AIA, and the Controlling AIA Defendants should be required to pay that judgment on behalf of AIA.

**Answer:** Paragraph 130 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in sentence 1 of Paragraph 129, and on that basis denies them. Sentences 2 and 3 purport to describe an order of Judge Kerrick, which is a document that speaks for itself. GemCap denies the remaining factual allegations contained in Paragraph 130.

131. The failed reverse stock split drained AIA of significant and unnecessary attorneys' fees and costs (fees and costs which could have been paid to those shareholders or for other AIA obligations) and constituted a waste of AIA's assets. This

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 60

**8-ER-1725**

purported reverse stock split was approved and/or acquiesced in by the Controlling AIA

Defendants, which was a breach of their fiduciary duties. Upon information and belief,

the Hawley Troxell Defendants were aware of the scheme to effectuate the reverse stock

split to eliminate AIA Services' innocent minority shareholders, which would in turn

eliminate common shareholder standing for this lawsuit.

**Answer:** Paragraph 131 contains legal conclusions to which no response is

required. GemCap lacks knowledge or information sufficient to form a belief about the

truth of the remaining factual allegations contained in Paragraph 131, and on that basis

denies them.

132.    From 2009 through 2016, the Controlling AIA Defendants continued

loaning money to, or allowed money to be lent to, Pacific Empire Radio Corporation in

an amount exceeding $1,600,000 by year-end 2015 when that corporation had no ability

to repay the sums owed and it benefitted John and Connie (who owned shares in that

corporation at certain relevant times) as those were funds they would not have to

personally provide to Pacific Empire Radio Corporation. In 2015 and 2016, the IRS filed

liens against Pacific Empire Radio Corporation in excess of $500,000 for the non-

payment of employee withholding taxes, yet the Controlling AIA Defendants permitted

AIA Services to lend over $1,600,000 to Pacific Empire Radio Corporation.

**Answer:** Paragraph 132 contains legal conclusions to which no response is

required. The second sentence purports to describe documents (liens), which speak for

themselves. GemCap lacks knowledge or information sufficient to form a belief about the

truth of the remaining factual allegations contained in Paragraph 132, and on that basis

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 61

denies them.

133.   From 1999 through 2012, the Controlling AIA Defendants concealed their ownership interests in other entities from AIA, which were derived from and/or funded by AIA, including, without limitation, CropUSA, CropUSA Insurance Services, LLC, and Pacific Empire Holdings Corp.

**Answer:** Paragraph 133 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 133, and on that basis denies them.

134.   From 1995 through 2016, John received over $2,700,000 in cash salary, compensation, benefits and property from AIA. This amount does not include any compensation, payments or other improper distributions he may have received from CropUSA and other entities funded or launched using AIA. At a minimum, John should be required to disgorge the over $2,000,000 that he received from AIA from 1999 through 2016 and other compensation, funds and benefits received from AIA since 1999, which John received while acting as a faithless fiduciary and while improperly competing against AIA through CropUSA and other entities (including Pacific Empire Holdings Corp.).

**Answer:** Paragraph 134 contains legal conclusions to which no response is required. GemCap lacks knowledge or information sufficient to form a belief about the truth of the factual allegations contained in Paragraph 134, and on that basis denies them.

**J.**   <u>The Controlling AIA Defendants, with GemCap Aiding and Abetting Them, Illegally Had AIA Guarantee Loans Made to CropUSA by GemCap, Concealed the Guarantees from AIA, Illegally Entered into Settlement</u>

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 62

**8-ER-1727**

<u>Agreements with GemCap, Concealed the Settlement Agreements from AIA, and Unlawfully Transferred Property to GemCap Thereby Damaging AIA.</u>

135.    While the instant lawsuit was pending, the Controlling AIA Defendants sought additional funding for CropUSA. GemCap agreed to make the loan to CropUSA in Idaho for the purpose of operating its business in Idaho. On or about November 23, 2011, the Controlling AIA Defendants obtained a $5,000,000 line-of-credit from GemCap for CropUSA, which was subsequently amended on April 1, 2012, July 18, 2012, and February 4, 2013 to be a $10,000,000 line-of-credit (the original loan and all subsequent modifications and amendments are collectively the "<u>GemCap Loan</u>").

**Answer:** Paragraph 135 contains legal conclusions to which no response is required. The November 23, 2011 loan and subsequent documentation are documents that speak for themselves. GemCap admits that it entered into loans with CropUSA, and that the line of credit was increased to $10,000,000. Plaintiffs do not attach the documents it is referring to as the GemCap Loan, and therefore, GemCap denies any allegations implying additional or different information than contained therein. GemCap denies the remaining factual allegations contained in Paragraph 135.

136.    On November 23, 2011, the Controlling AIA Defendants, with the substantial assistance from GemCap, had AIA Services and AIA Insurance guarantee $1,113,930 of the GemCap Loan. In connection with that guarantee, John, Beck and Connie executed a board resolution for AIA Services purportedly authorizing that guarantee, even though they all had conflicts of interest that prevented them from authorizing the guarantee, AIA was separately barred from guaranteeing the loans, they

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 63

**8-ER-1728**

did not obtain consent from Donna Taylor for the guarantee, and Donna Taylor's designee on AIA Services' Board of Directors was not provided notice of the GemCap Loan. On October 1, 2012, the Controlling AIA Defendants had AIA purportedly guaranteed the entire $10,000,000 GemCap Loan (the 2011 $1,113,930 limited guarantee executed in 2011 and the $10,000,000 unlimited guarantee executed in 2012 are collectively referred to as the "Guarantees"). Even though AIA purportedly executed the Guarantees, AIA could not borrow funds from the GemCap Loan and AIA obtained no benefit whatsoever.

**Answer:** Paragraph 136 contains legal conclusions to which no response is required. The written guarantees and board resolution are documents that speak for themselves. GemCap lacks sufficient information to form a belief as to the truth of the factual allegations regarding Donna Taylor and her designee, and on that basis denies them. GemCap denies the remaining factual allegations contained in Paragraph 136. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

137.    Upon information and belief, GemCap was aware of the existence of this lawsuit, or should have been aware of its existence, at the time of the GemCap Loan and AIA's Guarantees (which asserted claims based on other unlawful guarantees and alleged substantial other misconduct, including claims against the assets GemCap was

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 64

purportedly accepting from AIA and CropUSA). Upon information and belief, GemCap was aware or should have been aware, that AIA Services' board of directors was not fully and properly seated (including that the Controlling AIA Defendants were not honoring Donna Taylor's unequivocal right to appoint a director) and that AIA's officers were not properly elected. Upon information and belief, GemCap knew, or should have known, that AIA Services was not conducting the required annual shareholder meetings and was not lawfully complying with fundamental corporate governance procedures.

**Answer:** Paragraph 137 contains legal conclusions to which no response is required. GemCap denies the factual allegations contained in Paragraph 137. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

138.   When GemCap accepted the first of the Guarantees from AIA, GemCap requested and was provided with an Officer's Certificate, signed by John and Duclos, that attached copies of AIA Services' amended articles of incorporation and bylaws (both of which contained provisions barring the Guarantees). As a result, GemCap was aware, or should have been aware, that AIA, and its purported officers, were not authorized to execute the Guarantees or pledge any of its assets to GemCap. AIA received no consideration for entry into the Guarantees and most of the GemCap Loan's indebtedness was already owed as of the date of the unlimited Guarantee executed on October 1, 2012.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 65

**Answer:** Paragraph 138 contains legal conclusions to which no response is required. The officer's certificate and any exhibits thereto are documents that speak for themselves. GemCap denies the remaining factual allegations contained within Paragraph 138. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

139.    In connection with the GemCap Loan and AIA's Guarantees of that loan, GemCap requested, and was provided with, copies of AIA Services' amended articles of incorporation and restated bylaws, which expressly barred the Guarantees because, inter alia, the GemCap Loan was not for a wholly-owned subsidiary of AIA Services and the Loan implicated conflicts of interest provisions that pertained to the Controlling AIA Defendants. As a result, GemCap was fully aware, or should have been fully aware, that AIA was not authorized to execute the Guarantees or to perform under the Guarantees.

**Answer:** Paragraph 139 contains legal conclusions to which no response is required. GemCap admits a copy of the amended articles of incorporation of AIA Insurance Services was listed as an exhibit to the officer's certificate, which are documents that speak for themselves. GemCap denies the remaining factual allegations contained in Paragraph 139. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 66

statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

140.    The Guarantees were signed by John Taylor, as the purported President of AIA Services and the purported President of AIA Insurance. GemCap was aware, or should have been aware with the exercise of reasonable diligence, that John Taylor had no authority to execute the Guarantees on behalf of AIA Services or AIA Insurance, and that, under the circumstances, the Guarantees were barred by AIA Services' amended articles of incorporation and AIA's bylaws. The Controlling AIA Defendants all had knowledge of the Guarantees and the fact that they were barred, and they never provided notice of the Guarantees or obtained shareholder approval from them (including, without limitation, approval from Donna Taylor, who was the sole Series A Preferred Shareholder of AIA Services). The Guarantees are illegal and/or ultra vires because they violated AIA Services' amended articles of incorporation, AIA's bylaws and numerous Idaho Code sections.

**Answer:** Paragraph 140 contains legal conclusions to which no response is required. GemCap admits that John Taylor is the individual who signed the guarantees on behalf of the signatory party indicated, which are documents that speak for themselves. Paragraph 140 alleges contents of documents, which speak for themselves. GemCap denies the remaining factual allegations contained in Paragraph 140. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 67

Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

141.   On December 20, 2012, GemCap filed a UCC financing statement with the Idaho Secretary of State stating that AIA Services and AIA Insurance had pledged "All of each of Debtor's right, title and interest, whether now existing or hereafter acquired, in and to all assets of such Debtor, wherever located, whether tangible or intangible, and the proceeds and products thereof" ("Financing Statement"). The Financing Statement was not properly authorized or disclosed to AIA's shareholders, and it violated AIA Services' amended articles of incorporation and AIA's bylaws.

Answer: Paragraph 141 contains legal conclusions to which no response is required. The UCC financing statement is a document that speaks for itself. GemCap denies any remaining factual allegations contained in Paragraph 141. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

142.   Under the terms of the GemCap Loan, CropUSA could borrow up to $10,000,000. Upon information and belief, CropUSA owed GemCap $8,676,288.39, plus interest, attorneys' fees and costs, as of July 26, 2013. Under the terms of the hard-money GemCap Loan, interest accrued at 18.5% per annum and 24% upon a default.

Answer: Paragraph 142 contains legal conclusions to which no response is

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 68

required. The loan documents are documents that speak for themselves. GemCap admits that, as of July 26, 2013, the outstanding debt was $8,676,288.39 and that interest accrued at 18.5% per annum and 24% upon default. GemCap denies any remaining factual allegations contained in Paragraph 142.

143.    According to a document later filed in 2014 in federal court in California, from April 15, 2013 through April 19, 2013, GemCap's agent traveled to Idaho to conduct a purported audit of CropUSA, AIA, and other entities at AIA's headquarters in Lewiston, Idaho. John was present at the purported audit. Upon information and belief, GemCap's agent discovered facts that demonstrated that AIA and other entities owned by the Controlling AIA Defendants were engaging in improper transactions. This audit further reveals that the Hawley Troxell Defendants provided further legal work for CropUSA (despite the allegations and claims in this lawsuit). Upon information and belief, GemCap's agent traveled to Idaho to conduct other audits of CropUSA and AIA in Lewiston, Idaho. GemCap and the Controlling AIA Defendants never disclosed or provided the results of any of the audits to disinterested constituents at AIA or to AIA Services' minority shareholders.

**Answer:** Paragraph 143 contains legal conclusions to which no response is required. GemCap admits that, in April 2013, GemCap performed a field audit in Lewiston, Idaho, as part of its ordinary due diligence in connection with the loan. GemCap admits it performed field investigations at other times. The audit reports are documents that speak for themselves. GemCap denies any allegation it was required to disclose the results of such investigations directly to AIA "constituents" or "minority

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 69

shareholders." GemCap denies any remaining factual allegations contained in Paragraph 143. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

144.    Upon information and belief, Gemcap provided CropUSA and other parties a notice of default through a notice dated July 16, 2013. Upon information and belief, GemCap provided a purported notice of default and demand for payment to AIA Services and AIA Insurance of the $8,676,288.39 owed by CropUSA through a notice dated July 29, 2013.

**Answer:** GemCap admits that on or about July 16, 2013, GemCap sent Crop USA a Notice of Default and a Notice of Acceleration of the loan agreement. On or about July 29, 2013, GemCap notified Taylor and AIA Services that Crop USA was in default of the loan agreement, and made demand on the guarantee agreements. Those notices of default are documents that speak for themselves. GemCap denies any remaining factual allegations contained in Paragraph 144.

145.    GemCap, CropUSA and the Controlling AIA Defendants failed to disclose to properly elected and unconflicted directors of AIA, the Plaintiff, or AIA Services' other innocent minority common shareholders the GemCap Loan (including its terms), AIA's Guarantees (including their terms), and the subsequent notices of default of the GemCap Loan.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 70

**Answer:** Paragraph 145 contains legal conclusions to which no response sis required. GemCap denies any allegation that it was required to disclose directly to individual directors or shareholders of AIA Services the loan documents, the guarantees, the notices of default, or the contents of those documents. GemCap lacks sufficient information to form a belief as to the truth of any remaining factual allegations contained in Paragraph 145 and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

146.    On July 30, 2013, GemCap filed suit against CropUSA, John and others for the default of the GemCap Loan. GemCap asserted claims for breach of contract, fraud, conversion and other claims. The Controlling AIA Defendants and GemCap did not provide any notice of this lawsuit to AIA Services' shareholders nor did they take any action to proceed in the best interests of AIA.

**Answer:** Paragraph 146 contains legal conclusions to which no response is required. GemCap admits it filed a complaint against CropUSA, Taylor, and other entities, which is a document that speaks for itself. GemCap denies any allegation that it was required to provide notice of the lawsuit directly to individual shareholders of AIA Services or that GemCap was required to act in the best interest of AIA. GemCap lacks sufficient information to form a belief as to the truth of any remaining factual allegations

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 71

**8-ER-1736**

contained in Paragraph 146 and on that basis denies them.

147.    After certain of AIA Services' shareholders learned of the GemCap lawsuit in California, GemCap was advised that AIA's Guarantees and the Settlement Agreements were unauthorized and illegal and that AIA was not being properly operated. Nevertheless, GemCap sought to collect from AIA based on the unauthorize and illegal Guarantees. At this point in time, GemCap had further actual knowledge of the unauthorized and illegal Guarantees and that AIA was not being operated properly (including that the Controlling AIA Defendants were breaching fiduciary duties owed to AIA), assuming that it was not aware of these facts prior to accepting AIA's Guarantees. As a result, GemCap was aware that AIA's Guarantees had been improperly and unlawfully executed.

**Answer:** Paragraph 147 contains legal conclusions to which no response is required. GemCap admits that its attorneys were contacted by Plaintiff's attorney in this action about his allegations regarding the agreements and AIA operations. GemCap denies any remaining factual allegations contained in Paragraph 147. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

148.    Despite complaints from AIA Services' minority shareholders and even though GemCap, AIA, CropUSA and the Controlling AIA Defendants knew that AIA

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 72

was barred from executing the Guarantees and entering into any settlement agreement that required the payment of any funds or transfer of any assets from AIA. GemCap and AIA, purportedly on behalf of John, purportedly entered into a purported settlement and a written settlement agreement sometime after January 9, 2015 (collectively the "Settlement Agreement" or "Settlement Agreements"). The Settlement Agreements were concealed from AIA and its shareholders by the Controlling AIA Defendants and GemCap, and further constitute a conspiracy to defraud AIA. AIA received no consideration for the Settlement Agreements.

**Answer:** Paragraph 148 contains legal conclusions to which no response is required. GemCap admits it entered a confidential settlement, the terms of which were presented orally on the record which the court placed under seal, and which was reduced to a written document that speaks for itself and which the court placed under seal. GemCap denies all remaining factual allegations contained in Paragraph 148. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

149. Under the terms of the Settlement Agreements, AIA Services and AIA Insurance were require to transfer certain real property to GemCap and judgments would be entered against them in the amount of $12,126,584.61, which included $3,986,368.78 in interest, penalties and costs. The Settlement Agreements were barred by AIA Services'

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 73

**8-ER-1738**

amended articles of incorporation and AIA's bylaws for the same reasons that the Guarantees were barred, and it was a breach of John's fiduciary duties owed to AIA when he executed the Settlement Agreement (which GemCap was fully aware). In addition, the Settlement Agreements illegally provided that AIA would not file for bankruptcy protection and that malpractice claims would be assigned to GemCap. The Settlement Agreements are illegal and/or ultra vires because they violated AIA Services' amended articles of incorporation, AIA's bylaws, numerous Idaho Code sections, and were the product of intentional breaches of John's fiduciary duties owed to AIA.

**Answer:** Paragraph 149 contains legal conclusions to which no response is required. The settlement agreement, amended articles of incorporation, and bylaws are documents that speak for themselves. GemCap denies the remaining factual allegations contained in Paragraph 149. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

150.    Under the terms of the Settlement Agreements, GemCap required John and/or certain other Controlling AIA Defendants to continue to improperly and unlawfully operate AIA in the manner that AIA had been operated in the past. The Controlling AIA Defendants have continued to improperly and unlawfully operate AIA since that time by and through their direct or indirect participation, lack of action, acquiescence and covering up of the improper and unlawful operation of AIA, which

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 74

further resulted in GemCap substantially assisting and acquiescing in the Controlling AIA Defendants' breaches of fiduciary duties, fraud and other malfeasance by and through the continued improper operation of AIA, including, without limitation, allowing the Controlling AIA Defendants to operate AIA without having shareholder meetings, without having proper boards of directors, and in violation of AIA's amended articles of incorporation and bylaws.

**Answer:** Paragraph 150 contains legal conclusions to which no response is required. The settlement agreement, amended articles of incorporation, and bylaws are documents that speak for themselves. GemCap denies the remaining factual allegations contained in Paragraph 149. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

151.    Upon information and belief, the Controlling AIA Defendants were aware of the GemCap litigation and Settlement Agreements, but they and GemCap continued to aid and abet John by allowing him to unlawfully enter into the Settlement Agreements and to improperly operate AIA. The Controlling AIA Defendants and GemCap, assisted, acquiesced and assisted in covering up the transactions.

**Answer:** Paragraph 151 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of allegations regarding the so-called Controlling AIA Defendants and on that basis

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 75

denies them. GemCap denies the remaining factual allegations contained in Paragraph

151. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to

commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as

related to torts such as fraud, and any claims seeking statutory relief or alleging violation

of the Idaho Consumer Protection Act based on the guarantees, and any such allegations

against GemCap are denied on that basis as well.

152.   According to the financial statements for AIA for 2015 (which were

belatedly provided to AIA Services' shareholders in August 2016 after many demands),[2]

AIA disclosed the Guarantees and Settlement Agreements for the first time to AIA

Services' shareholders. However, John inaccurately stated that the "Company admitted

no liability, but entered into settlement discussions and reached a confidential settlement

agreement in late 2014…" However, John failed to disclose to AIA Services'

shareholders that he had agreed to allow judgments in the amount of $12,126,584.61 to

be unlawfully and inappropriately entered against AIA and that any judgment against him

would be delayed (i.e., he once again placed his interests above the interests of AIA, even

assuming that the Settlement Agreement was legal and authorized).

**Answer:** Paragraph 152 contains legal conclusions to which no response is

---

[2] Plaintiff is not alleging in this Third Amended Complaint that the applicable financial statements prepared for AIA or CropUSA are accurate. To the contrary, Plaintiff is alleging that certain financial statements were fraudulently prepared and/or approved by the Controlling AIA Defendants.

**Answer:** Footnote 2 generally purports to describe Plaintiff's allegations in his Third Amended Complaint, to which no response is required. Footnote 2 also contains legal conclusions to which no response is required.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 76

**8-ER-1741**

required. Paragraph 152 purports to describe the contents of a document, which speaks for itself. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations and on that basis denies them.

153.   The real property located at 111 Main Street, Lewiston, Idaho (AIA Services' former headquarters) was ultimately transferred to GemCap and sold. As with the Guarantees and Settlement Agreements, the transfer of AIA Services' former headquarters to GemCap was not disclosed or authorized by AIA Services' shareholders. According to recently provided 2015 financial statements for AIA (which were provided in August 2016), John disclosed for the first time that the real property located at 111 Main Street, Lewiston, Idaho (AIA Services' headquarters) was purportedly transferred to GemCap as a reduction of amounts allegedly owed to CropUSA, when AIA owed nothing to CropUSA and CropUSA actually owed AIA. Upon information and belief, AIA Services' headquarters had a replacement value exceeding $7,000,000.

**Answer:** Paragraph 153 contains legal conclusions to which no response is required. GemCap admits that AIA Services' ownership interest in 111 Main Street was transferred to GemCap, and that the property was sold. Paragraph 153 purports to describe the contents of documents, which speak for themselves. GemCap denies the remaining factual allegations contained in Paragraph 153. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 77

denied on that basis as well.

154. As a result of the Guarantees and Settlement Agreements, AIA paid sums for CropUSA and other entities, incurred and/or paid substantial attorneys' fees and costs, and/or were damaged. Once again, John placed his interests and the interests of the other Controlling AIA Defendants above the interests of AIA by improperly stipulating to judgments against AIA in excess of $12,000,000, but no judgment was entered against him even though he personally guaranteed the GemCap Loan, too. To the extent that the Guarantees and/or Settlement Agreements are not declared illegal or ultra vires and Plaintiff recovers all damages, the Controlling AIA Defendants are liable for all such damages not recovered and they are separately liable for any other damages caused by the ultra vires acts.

**Answer:** Paragraph 154 contains legal conclusions to which no response is required. Paragraph 154 purports to describe the contents of documents, which speak for themselves. GemCap lacks sufficient information or knowledge to form a belief as to the truth of allegations regarding AIA's attorneys' fees and costs and on that basis denies them. GemCap denies the remaining factual allegations contained in Paragraph 154. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

155. GemCap knew that John had no apparent or actual authority to execute the

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 78

Guarantees and Settlement Agreements on behalf of AIA, which is further supported by the fact that GemCap's attorneys were specifically advised that the Guarantees and Settlement Agreements were not authorized. GemCap knew that, by making the GemCap Loan, accepting the Guarantees and entering in the Settlement Agreements, it would be aiding and abetting and conspiring with the Controlling AIA Defendants and CropUSA by providing improper funding to the Controlling AIA Defendants and CropUSA and by assisting them in engaging in unauthorized, intra vires, ultra vires and/or illegal conduct.

**Answer:** Paragraph 155 contains legal conclusions to which no response is required. Paragraph 155 purports to describe the contents of documents, which speak for themselves. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the factual allegations regarding other defendants' alleged acts or knowledge and, therefore, denies those allegations. GemCap denies the remaining factual allegations contained in this paragraph. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

156.    GemCap knew that the Controlling AIA Defendants breached their fiduciary duties owed to AIA, and/or aiding and abetting others in those breaches, by entering into the Guarantees and Settlement Agreements (and requiring AIA's assets and/or funds to be paid to GemCap or others because of GemCap (including attorneys)) and participating in, and covering up, the Controlling AIA Defendants' breaches of

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 79

fiduciary duties against AIA. GemCap has aided and abetted one or more of the Controlling AIA Defendants in breaching their fiduciary duties and in the commission of fraud against AIA. GemCap has also aided and abetted the Controlling AIA Defendants by allowing them to maintain control over AIA when GemCap knew that they were not operating AIA in the best interests of AIA, and by concealing and covering up the Controlling AIA Defendants' breaches of fiduciary duties and fraud.

**Answer:** Paragraph 156 contains legal conclusions to which no response is required. Paragraph 156 purports to describe the contents of documents, which speak for themselves. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the factual allegations regarding other defendants' alleged acts or knowledge and, therefore, denies those allegations. GemCap denies the remaining factual allegations contained in this paragraph. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

**K.** <u>John Unlawfully Transfers Certain Real Property to AIA and Requires AIA to Pay the Liabilities on the Property and He Alleges that AIA Owes Him $545,563 in Accrued Salary.</u>

157. Subsequent to the GemCap Loan and according to AIA Services' purported 2015 financial statements (which were belatedly provided in August 2016 after many demands), John allegedly executed quitclaim deeds purportedly transferring certain real property, held in the name of other entities John controls, to AIA with a purported book

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 80

**8-ER-1745**

value of $820,668, and AIA was improperly required to assume a purported $393,863 in debts on the real property. These real property transfers and assumptions of debts were unauthorized and ultra vires. Upon information and belief, GemCap was involved in these real property transfers and assumption of debts, and GemCap knew that such transfers were aiding and abetting John and other Controlling AIA Defendants in the breach of their fiduciary duties owed to AIA.

**Answer:** Paragraph 157 contains legal conclusions to which no response is required. Paragraph 157 purports to describe the contents of documents that speak for themselves. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the factual allegations regarding other defendants' alleged acts or knowledge and on that basis denies them. GemCap denies any remaining factual allegations contained in Paragraph 157. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

158.    Even if authorized, the determination of the $820,668 purported book value of such real property was not authorized and John and the Controlling AIA Defendants had conflicts of interest that prevented any of them from making any determination of value or authorizing the alleged transfers or assumption of debts. AIA's proper Board of Directors did not authorize the transactions nor did AIA Services' shareholders.

**Answer:** Paragraph 158 contains legal conclusions to which no response is

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 81

required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the factual allegations regarding other defendants' alleged acts or knowledge and on that basis denies them. GemCap denies any remaining factual allegations contained in Paragraph 158. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

159.    According to the same recently provided financial statements for AIA for 2015, John alleges that AIA owes him $545,563 in alleged accrued salary as of December 31, 2015, but AIA owes John nothing and he is not entitled to any compensation because he has been a faithless fiduciary of AIA. Upon information and belief, at least one of the parcels of real property has already been transferred or lost as a result of foreclosure proceedings for less than the purported book value. AIA seeks to rescind the real property transfers and assumption of debts.

**Answer:** Paragraph 159 purports to describe documents that speak for themselves. Paragraph 159 also contains legal conclusions and AIA's characterization of its claims and requested relief, to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the remaining factual allegations contained in Paragraph 159 and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 82

as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

  **L.**  <u>John Unlawfully Amends AIA Services and AIA Insurance's Bylaws and Issues Himself Series A Preferred Shares in AIA Services.</u>

  160. According to the recently provided financial statements for AIA for 2015 (which were belatedly provided in 2016 after many demands), sometime in 2016, John purportedly purchased 7,500 Series A Preferred Shares in AIA Services, but those shares were improperly issued and were never authorized by a properly seated and unconflicted Board of Directors of AIA Services, as required. In addition, AIA Services' amended articles of incorporation authorized the Series A Preferred Shares to only be issued to Donna Taylor in connection with the prior restructuring of AIA Services, and not to issue more Series A Preferred Shares to John.

  **Answer:** Paragraph 160 contains legal conclusions to which no response is required. Paragraph 160 purports to describe the contents of documents, which speak for themselves. GemCap lacks knowledge or information sufficient to form a belief about the truth of any remaining factual allegations contained in Paragraph 160 and on that basis denies them.

  161. It is unclear why John improperly issued the 7,500 Series A Preferred Shares in AIA Services when those shares were not purchased or issued for any legitimate business purposes, they were never properly authorized by AIA Services' Board of Directors or shareholders, and John had conflicts of interest that prevented him

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 83

from purchasing or issuing those shares on behalf of the Board of Directors of AIA

Services even if the shares were authorized to be issued under AIA Services' amended

articles of incorporation (which they were not).

**Answer:** Paragraph 161contains legal conclusions to which no response is

required. GemCap lacks knowledge or information sufficient to form a belief about the

truth of the factual allegations contained in Paragraph 161 and on that basis denies them.

162.    According to the same recently provided financial statements for AIA for

2015 and the letter accompanying those financial statements, John allegedly amended the

bylaws of AIA Services and AIA Insurance to provide for an award of attorneys' fees and

costs for "intracompany suits" if a "claiming party does not obtain a favorable judgment

on the merits of the claim." These purported amendments were never adopted for a

legitimate purpose, John had conflicts of interest that prevented him from adopting the

provision, and the provisions are unenforceable.

**Answer:** Paragraph 162 contains legal conclusions to which no response is

required. Paragraph 162 purports to describe the contents of documents, which speak for

themselves. GemCap lacks knowledge or information sufficient to form a belief about the

truth of any remaining factual allegations contained in Paragraph 162 and on that basis

denies them.

163.    According to the same recently provided financial statements for AIA for

2015, the Controlling AIA Defendants have spent over $400,000 litigating against Donna

Taylor in an effort to not pay her the just over $400,000 in principal owed on her Series

A Preferred Shares. This further demonstrates the breached fiduciary duties and corporate

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 84

waste occurring at AIA by and through the Controlling AIA Defendants because AIA

Services should have simply paid Donna Taylor the $400,000 instead of spending that

money to fight her.

**Answer:** Paragraph 163 contains legal conclusions to which no response is

required. Paragraph 163 purports to describe the contents of documents, which speak for

themselves. GemCap lacks knowledge or information sufficient to form a belief about the

truth of any remaining factual allegations contained in Paragraph 163 and on that basis

denies them.

    **M.**    <u>There Is a Laundry List of the Unlawful Acts, Self-Dealing, Malfeasance and Intentional Torts Committed by the Controlling AIA Defendants</u>

164.    Since acquiring operational control of AIA Services in 1995, the

Controlling AIA Defendants have engaged in repeated acts of faithless self-dealing,

transactions detrimental to AIA, committed intentional torts (including fraud and

breaches of fiduciary duties), breached their fiduciary duties (including their duties of

loyalty), concealed, conspired to commit intentional torts, aided and abetted in the

commission of intentional torts and to cover up those torts, to the detriment of AIA in

Idaho, including, but not limited to, the following intentional acts:

    (a)    Controlling AIA's Board of Directors and/or the decisions made by AIA's

Board of Directors and intentionally refusing to act in the best interests of AIA;

    (b)    Violating AIA Services' restated bylaws, including but not limited to,

failing to hold annual shareholder meetings, failing to provide notice or obtain proper

shareholder approval for certain transactions, failing to comply with conflicts of interest

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 85

provision in the bylaws and articles of incorporation which restricted many of the unlawful or improper transactions described in this Third Amended Complaint, and failing to properly comply with applicable corporate governance;

(c)     Violating AIA's amended articles of incorporation thereby allowing substantial funds and assets to be depleted from AIA and obligating AIA to be liable for loans or guarantees which were barred by those amended articles of incorporation;

(d)     Diverting corporate opportunities belonging to AIA, including CropUSA and Pacific Empire Holdings Corp. (a/k/a Sound Insurance);

(e)     Unlawfully conveying, encumbering, utilizing, and/or pledging AIA's assets to themselves or other entities;

(f)     Inappropriately redeeming, acquiring and/or issuing shares of stock and/or making payments on put options in AIA Services, including but not limited to, issuing shares to the Controlling AIA Defendants;

(g)     Inappropriately paying dividends and failing to pay dividends;

(h)     Engaging in transactions and actions in direct conflict of interest with their duties owed to AIA and failing to comply with conflict of interest provisions in AIA's bylaws and the law;

(i)     Guaranteeing loans for CropUSA and failing to guarantee loans for AIA;

(j)     Paying excessive compensation to officers and directors, including but not limited to, paying John $250,000 per year to purportedly act as CEO and President of AIA Services after his contractual entitlement to such salary had expired, when John had conflicts of interest that barred him from determining his pay, and he had represented that

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 86

he would not take salary in certain year(s);

(k)      Wasting AIA's assets and making improper payments, including by paying Connie and Beck $20,000 per year to purportedly serve on the Boards of Directors of AIA and paying John compensation when he was doing nothing for the benefit of AIA;

(l)      Divulging and/or utilizing AIA's trade secrets for the benefit of themselves and other entities, including CropUSA (including, without limitation, AIA's agency force and customer lists);

(m)      Soliciting and transferring AIA employees to work for CropUSA;

(n)      Engaging in acts and/or decisions without making full disclosure and without obtaining the required approval of AIA Services' shareholders resulting in none of the transactions and acts referenced in this Third Amended Complaint (and any that may be at issue at or before trial) being properly ratified by AIA Services, AIA Insurance or their shareholders;

(o)      Engaging in millions of dollars of transactions that resulted in AIA conveying benefits without the receipt of any consideration, without being repaid and/or without being paid any mark- up or profit;

(p)      Forming and operating entities in direct competition with AIA in the insurance marketplace, including without limitation, CropUSA and Pacific Empire Holdings Corp.;

(q)      Making false representations, concealing facts, and omitting material facts from AIA, including, without limitation, regarding share values, items in AIA's financial statements (including notes), assets and debts in AIA's financial statements, the true

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 87

value of funds and assets (including employees and trade secrets) utilized for other entities (including CropUSA), and that AIA was being operated for the benefit of the corporation;

(r)     Concealing and failing to disclose material facts to AIA pertaining to loans, transfers, and utilization of assets, including without limitation, concealing or omitting material facts, including all of the necessary facts related to virtually each and every transaction described in this Third Amended Complaint;

(s)     Making false representations to AIA, including without limitation, making and certifying false and misleading financial statements to AIA and representing that AIA was being properly operated when it was instead being used to fund the lifestyle, payments and other businesses owned or partially owned by the Controlling AIA Defendants;

(t)     Inappropriately loaning AIA's funds, or guaranteeing loans, to themselves and to other entities under their control in violation of AIA's amended articles of incorporation, bylaws and fiduciary duties;

(u)     Paying tens of thousands of dollars in yearly fees to purportedly serve on the Board of Directors of AIA and other compensation and benefits, when such amounts were excessive and they were violating their fiduciary duties owed to AIA and they were all acting as faithless fiduciaries;

(v)     Paying attorneys' fees and costs in various legal proceedings on behalf of the Controlling AIA Defendants and others when it was clear that they had intentionally failed to act in good faith, were not entitled to indemnification or to have attorneys' fees

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 88

and costs advanced on their behalf, and by failing to obtain security for repayment of said funds;

(x)     Acquiring a parking lot with AIA funds and charging AIA, and making AIA pay excessive rent for use of the parking lot (John increased the rent to $15,000 per year) even though AIA did not actually use the parking lot. Later, upon information and belief, the parking lot was transferred to Jordan Taylor, John and Connie's son (who is also a lawyer), for no consideration so he could sell it for $50,000;

(y)     Failing to seat the full and required Board of Directors for AIA Services and thus there was never a required quorum for AIA Services' Board to take any action and further resulting in all purported actions being unauthorized, including, without limitation, by failing to honor Donna Taylor's appointment of Patrick Moran and Paul Durant to AIA Services' Board of Directors;

(z)     Improperly purchasing and transferring shares held by AIA or which should have been held by AIA to themselves, including without limitation shares in Pacific Empire Radio Corp., Pacific Empire Communications Corp., and Pacific Empire Holdings Corp. (this entity was formed with AIA's assets by John, improperly competed against AIA, and was later sold for $240,000);

(aa) Allowing John to profit from CropUSA's sale of assets to Hudson Insurance by improperly allowing him to retain a monthly fee of $10,000 per month when those funds should have gone to AIA;

(bb) Failing to take appropriate legal action in the interests of AIA, including by failing to bar John from being an officer and director of AIA and failing to claw back

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 89

**8-ER-1754**

CropUSA as a subsidiary of AIA and properly operate CropUSA (which would have resulted in CropUSA being worth millions of dollars);

(cc) Removing tenants from an AIA owned building to another building owned personally by John and/or other Controlling AIA Defendants;

(dd) Improperly subsidizing CropUSA and other entities with AIA's funds, labor and assets, failing to properly allocate expenses to CropUSA and failing to have other expenses paid back at all (which have already been identified as being approximately $500,000 as of 2008 after Plaintiff's expert was able to identify certain transactions that were actually accounted for);

(ee) Selling and/or transferring assets and or/contracts belonging to AIA to others (including the contract with Growers National);

(ff) Improperly paying numerous law firms other than the Hawley Troxell Defendants hundreds of thousands of dollars representing AIA and the Controlling AIA Defendants in litigation caused by their own intentional acts and torts and when the Controlling AIA Defendants had not acted in good faith or complied with their duties of loyalty to AIA;

(gg) Paying more of AIA's funds to litigate disputes (including with Donna Taylor in the Idaho state courts) than it would have taken to simply pay the money owed;

(hh) Failing to obtain security, failing to charge interest, and failing to collect on loans of at least $307,000 made to John;

(i) Removing the $400,000 held in the court registry and the over $200,000 in a bank account in Taylor v. AIA Services, and allowing the Controlling AIA Defendants to

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 90

utilize those funds when the Hawley Troxell Defendants should have ensured that those funds were kept from them;

(jj) Expending significant sums on the illegal repurchase of common shares in AIA Services, which also resulted in increasing the ownership interest of the Controlling AIA Defendants;

(kk) Allowing AIA to engage in the transactions identified in this Third Amended Complaint when no dividends had been declared or paid on the Series C Preferred Shares held in the AIA Services 401(k) Plan and those shares now have accrued dividends owed of over $1,000,000;

(ll) Wasting AIA's funds and assets (and CropUSA's) on needlessly rented office space, unneeded employees and other wasted expenditures;

(mm) Allowing Connie to represent CropUSA in litigation involving Growers National in conflict with her duties of loyalty as a director of AIA, which such litigation resulted in approximately $500,000 being transferred to CropUSA for Growers National, even though AIA created Growers National (she separately aided and abetted in CropUSA's receipt of these funds);

(nn) Allowing John to make decisions for the management and operation of AIA when he had conflicts of interest and a long-standing track record of diverting money, labor, credit, trade secrets and other assets to CropUSA and other entities that he partially or wholly owned;

(oo) Engaging in numerous illegal, ultra vires, and intra vires acts and transactions for, or in the name of, AIA, including, without limitation, entering into the Guarantees for

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 91

the $10,000,000 GemCap Loan, and later transferring property worth over $1,000,000 to GemCap;

(pp) Engaging in countless improper transactions in Idaho for the benefit of themselves, CropUSA and/or other entities partially or wholly owned by the Controlling AIA Defendants (including the other transactions and allegations set forth in this Third Amended Complaint);

(qq) Organized, operated, controlled, and conducted CropUSA as their instrumentality, agency and/or conduit to the detriment of AIA, and they have further operated CropUSA improperly without complying with proper corporate governance procedures and as a means to defraud AIA.

The Controlling AIA Defendants, CropUSA, GemCap and/or the Hawley Troxell Defendants have assisted one another and others in committing the intentional acts and torts against AIA described in this Paragraph and concealing, or covering up, the facts and the intentional torts committed against AIA, including those specifically referenced in this Paragraph and elsewhere in this Third Amended Complaint. The Hawley Troxell Defendants continued to conceal facts from AIA and to aid and abet the Controlling AIA Defendants and CropUSA even after any representation may have terminated when they owed the duty to AIA to not do so.

**Answer:** Paragraph 164 contains legal conclusions to which no response is required. GemCap denies any allegations of wrongful conduct made against it. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the factual allegations directed against other defendants contained in Paragraph 164, and on that

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 92

basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

165.   At all relevant times, John was CEO, President and director of AIA Services, AIA Insurance and CropUSA and a shareholder of AIA Services at the time of all of the improper transactions with CropUSA and other improper acts identified in this Third Amended Complaint (which were also conflicts of interest), and he improperly benefited from those unlawful transactions with the assistance and/or covering up of the transactions through the Controlling AIA Defendants and the Hawley Troxell Defendants (as to certain of the transactions and malfeasance). In 2016, John became the sole purported director, secretary and president of AIA Services, AIA Insurance and CropUSA Insurance Agency, Inc.

**Answer:** Paragraph 165 contains legal conclusions to which no response is required. GemCap admits that Taylor was president and director of AIA Services, AIA Insurance, and CropUSA, and a shareholder of AIA Services, at some or all times alleged; and that Taylor engaged in conduct adverse to GemCap and discovered by GemCap. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the remaining factual allegations contained in Paragraph 165, and on that basis denies them.

166.   At all relevant times, John also owned interests in other entities who

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 93

improperly benefitted directly or indirectly from AIA and CropUSA (including Green Leaf Alliance, Green Leaf Re, Reinsurance Partners and Pacific Empire Radio Corp.), which were additional conflicts of interest and proof of self-dealing. The Controlling AIA Defendants were aware of these facts.

**Answer:** Paragraph 166 contains legal conclusions to which no response is required. GemCap admits that John Taylor owned interests in AIA and CropUSA. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the remaining factual allegations contained in Paragraph 166, and on that basis denies them.

167. During certain relevant times, the Controlling AIA Defendants were all purported shareholders of CropUSA and either majority shareholders (as a group) or officers of AIA Services at the time of the improper transactions and malfeasance identified in this Third Amended Complaint (which were also conflicts of interest), and they improperly benefited, directly or indirectly, from those unlawful transactions with the assistance and/or covering up of the transactions through the Controlling AIA Defendants and the Hawley Troxell Defendants (as to certain of the transactions and malfeasance).

**Answer:** Paragraph 167 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the factual allegations contained in Paragraph 167, and on that basis denies them.

168. As a result of the acts and omissions set forth and/or contemplated above and other acts and/or omissions which will be established at or before trial, the Controlling AIA Defendants, CropUSA, GemCap and the Hawley Troxell Defendants

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 94

have committed numerous torts against AIA in Idaho thereby proximately causing AIA to incur millions of dollars in damages. Indeed, had the Hawley Troxell Defendants simply sought on behalf of AIA to immediately bar John from serving as a director and officer of AIA Services and ensured that AIA was properly operated and its assets and CropUSA properly marshalled, the GemCap Guarantees and Settlement Agreement would never had occurred and AIA would not have been damaged by millions of dollars.

**Answer:** Paragraph 168 contains legal conclusions to which no response is required. GemCap denies any allegations that it engaged in any wrongdoing. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the remaining factual allegations contained in Paragraph 168, and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

169.   Because discovery has not yet commenced, Plaintiff expects to obtain additional evidence in discovery and to conduct further investigation, which will further support the causes of action and relief requested below.

**Answer:** Paragraph 169 contains a legal conclusion to which no response is required. To the extent this paragraph contains allegations against GemCap, it is denied.

170.   Due to the fact that the Controlling AIA Defendants have had complete control over AIA during all relevant times and have never asserted, nor would they ever

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 95

assert, claims against themselves or others on behalf of AIA, the adverse dominion doctrine bars the assertion of statute of limitations defenses to all claims and relief requested in this Third Amended Complaint. *Freeland v. Enosis Corp.*, 540 F.3d 721 (7th Cir. 2008).

**Answer:** Paragraph 170 contains legal conclusions to which no response is required.

### V.     CERTIFICATE OF COMPLIANCE WITH IDAHO CODE SECTION 30-1-742 AND FEDERAL RULE OF CIVIL PROCEDURE 23.1

171.    As a prerequisite to filing this lawsuit under Idaho Code §§ 30-1-742, 30-29-742, and Federal Rule of Civil Procedure 23.1, Plaintiff has been a common shareholder of AIA Services during all relevant times to the transactions at issue and the claims asserted in this Third Amended Complaint.

**Answer:** Paragraph 171 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in Paragraph 171, and on that basis denies them.

172.    On July 21, 2008, Donna Taylor, another shareholder of AIA Services, served a written derivative demand letter on the Boards of Directors of AIA Services and AIA Insurance. (Dkt. 23-9 and 67-19.) In accordance with the then-applicable I.C. § 30-1-742, the Plaintiff was not required to make another demand under I.C. § 30-1-742 because that statute does not require every shareholder filing suit to serve a separate demand, as confirmed by the comment: "It should be noted that the shareholder bringing suit does not necessarily have to be the person making the demand. Only one demand

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 96

need be made in order for the corporation to consider whether to take corrective action."

**Answer:** Paragraph 172 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the factual allegations contained in Paragraph 172, and on that basis denies them.

173.    On July 23, 2008, the Hawley Troxell Defendants filed a Motion for Stay of Proceedings in Taylor v. AIA Services and asserted that the stay was necessary so that AIA Services and AIA Insurance could conduct an inquiry into the demands made by Donna Taylor in her letter dated July 21, 2008 (Donna Taylor was not a party to that lawsuit, however).

**Answer:** Paragraph 173 purports to describe a document, which speaks for itself. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the remaining factual allegations contained in Paragraph 173, and on that basis denies them.

174.    On August 14, 2008, in Taylor v. AIA Services, the Hawley Troxell Defendants filed a purported petition for a court appointed independent inquiry on behalf of AIA when they had no intention of following through with the inquiry. (See Dkt. 67-20.)

**Answer:** Paragraph 174 purports to describe a document, which speaks for itself. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the factual allegations contained in Paragraph 174, and on that basis denies them.

175.    On September 4, 2008, Reed Taylor supported the appointment of independent investigators. However, Reed Taylor objected to the investigators proposed by the Hawley Troxell Defendants, who were purportedly representing AIA, and the

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 97

Controlling AIA Defendants. (See Dkt. 67-21.) Reed Taylor believed totally independent people should be appointed.

**Answer:** Paragraph 175 contains legal conclusions to which no response is required. Paragraph 175 purports to describe a document, which speaks for itself. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the remaining factual allegations contained in Paragraph 175, and on that basis denies them.

176.    Although the parties had filed briefing with respect to the appointment of independent investigators in Taylor v. AIA Services, the Hawley Troxell Defendants never noted the motion for a hearing and the court never ruled on the request, and they intentionally abandoned the appointment of an independent inquiry. The Hawley Troxell Defendants and Controlling AIA Defendants have never conducted a further investigation of the demands made in Donna Taylor's derivative demand letter of July 21, 2008. No action was ever taken by AIA or AIA's Boards of Directors.

**Answer:** Paragraph 176 contains legal conclusions to which no response is required. Paragraph 176 purports to describe a document, which speaks for itself. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the remaining factual allegations contained in Paragraph 176, and on that basis denies them.

177.    On April 3, 2012, Plaintiff, along with other shareholders, made another written demand on the Boards of Directors of AIA Services and AIA Insurance, which included demands to keep the $400,000 cash held in the Court registry in Taylor v. AIA Services to comply with AIA's amended articles of incorporation, to comply with AIA's bylaws, provide full disclosure, and to protect certain other assets. (Dkt. 67-33.) This

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 98

particular demand was copied directly to Babbitt and Ashby, so they had full knowledge of it. This demand, like all the others, was ignored. (See Dkt. 67, p. 11 ¶ 29.)

**Answer:** Paragraph 177 contains legal conclusions to which no response is required. Paragraph 177 purports to describe the contents of documents, which speak for themselves. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the remaining factual allegations contained in Paragraph 177, and on that basis denies them.

178.   On July 16, 2012, while the instant case was stayed, the Plaintiff, along with over ten other shareholders of AIA Services, served additional written derivative demands upon the Boards of Directors of AIA Services and AIA Insurance. (Dkt. 67-42.) The demands requested, among other things, that AIA pursue this lawsuit with all claims as of July 16, 2012 and future claims, including punitive damages, which also provided AIA and the Board of Directors yet another opportunity to address the demands previously made by Donna Taylor in 2008 (although Plaintiff was under no obligation to do so).

**Answer:** Paragraph 178 contains legal conclusions to which no response is required. Paragraph 178 purports to describe documents, which speak for themselves. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the remaining factual allegations contained in Paragraph 178, and on that basis denies them.

179.   On June 13, 2016, in accordance with I.C. § 30-29-742, Plaintiff, along with other shareholders of AIA Services, served yet another detailed derivative demand upon the Boards of Directors of AIA Services and AIA Insurance. (See Dkt. 148-2.)

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 99

Plaintiff demanded, inter alia, that additional claims be asserted against the previously named defendants (including for more recent torts and damages) and to assert claims against GemCap and CropUSA Insurance Services. AIA failed to respond to this demand within ninety days.

**Answer:** Paragraph 179 contains legal conclusions to which no response is required. Paragraph 179 purports to describe a document, which speaks for itself. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the remaining factual allegations contained in Paragraph 179, and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

180.   On August 23, 2016, in accordance with I.C. § 30-29-742, Plaintiff, along with other shareholders of AIA Services, served a substantially similar demand previously provided (Dkt. 148-2) in which Plaintiff demanded further action be taken, including, without limitation, to seek, inter alia, further claims and damages since the last derivative demand, to seek damages against GemCap for selling AIA's property, to void the improperly and allegedly amended bylaws of AIA Services and AIA Insurance, and to rescind the Series A Preferred Shares that John improperly issued to himself. The August 23, 2016 demand was made by Plaintiff as a shareholder and as a creditor of AIA Services. AIA's purported Board of Directors, through John, responded to this demand in

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 100

writing, rejected the demand, belatedly rejected the prior June 13, 2016 demand (after ninety days had already expired), and refused to have AIA pursue the claims.

**Answer:** Paragraph 180 contains legal conclusions to which no response is required. Paragraph 180 purports to describe documents, which speak for themselves. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the remaining factual allegations contained in Paragraph 180, and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

181.    In addition, Plaintiff has made additional written derivative demands upon the Boards of Directors of AIA Services and AIA Insurance, but no action has ever been taken by the purported Boards of Directors.

**Answer:** Paragraph 181 contains legal conclusions to which no response is required. Paragraph 181 purports to describe documents, which speak for themselves. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the remaining factual allegations contained in Paragraph 181, and on that basis denies them.

182.    Over ninety days have elapsed since the written derivative demands set forth above were made to AIA and its Boards of Directors, and no action has been taken by AIA whatsoever, and all of Plaintiff's claims and requested relief asserted in this lawsuit flow from those derivative demands. AIA and its purported Boards of Directors

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 101

never asked for any additional information or specificity regarding the derivative demands.

**Answer:** Paragraph 182 contains legal conclusions to which no response is required. Paragraph 182 purports to describe documents, which speak for themselves. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the remaining factual allegations contained in Paragraph 182, and on that basis denies them.

183.   As the second largest common shareholder of AIA Services (who traded a book of insurance business worth approximately $500,000 to AIA Services in exchange for his common shares), the Plaintiff fairly represents the interest of AIA and their shareholders (including the preferred shareholders, 401(k) Plan shareholders, and former ESOP shareholders) and lawful creditors (to the extent that AIA Services is deemed to be insolvent). Plaintiff has never received a return on his investment in AIA Services. Plaintiff is not pursuing this lawsuit in a collusive manner in order to obtain jurisdiction where it does not otherwise exist, but instead to only pursue bona fide claims on behalf of, for the benefit of, AIA and their innocent shareholders.

**Answer:** Paragraph 183 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in Paragraph 183, and on that basis denies them.

184.   Plaintiff is pursuing this derivative action to make AIA whole and recover the millions of dollars in damages inflicted upon it by the defendants. Upon obtaining judgment, the funds will allow AIA to continue to operate as a going concern or, alternatively, to be dissolved with the funds used to pay lawful creditors and the

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 102

remaining funds to be distributed to the Series A Preferred Shareholders, the Series C Preferred Shareholders and then to the common shareholders.

**Answer:** Paragraph 184 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the factual allegations contained in Paragraph 184, and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

## VI.    COUNT I—BREACH OF FIDUCIARY DUTIES
### (Against the Controlling AIA Defendants and the Hawley Troxell Defendants)

185.    Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause of action.

**Answer:** GemCap incorporates by reference herein every response asserted elsewhere in this Answer.

186.    As members, or purported members, of the Board of Directors for AIA Services and/or AIA Insurance, the Controlling AIA Defendants, who have each served as a director of AIA Services during certain relevant times, owed fiduciary duties to AIA, including, without limitation, duties of good faith and to act in the best interests of AIA. Beck, Cashman and John continued to also serve on the board of directors of AIA

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 103

**8-ER-1768**

Services through a so-called "advisory board," which controlled AIA and CropUSA. As corporate officers of AIA, John, as President and CEO, and Duclos, as Secretary, owed fiduciary duties to AIA, which were further elevated during the times in which they both served as directors of AIA, too (which is from 1995 to the present time for John). During certain relevant times, Beck, Cashman, John and Connie owed fiduciary duties to AIA because they were the majority shareholders of AIA Services, including, without limitation, to use their majority control of AIA in a fair, just and equitable manner. The Controlling AIA Defendants had conflicts of interest by and through their positions as officers, directors and/or shareholders of AIA Services and CropUSA.

**Answer:** Paragraph 186 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the remaining factual allegations contained in this paragraph and on that basis denies them.

187.    As attorneys for AIA, the Hawley Troxell Defendants owed fiduciary duties to AIA (including the undivided duty of loyalty). If not authorized to act as attorneys for AIA, the Hawley Troxell Defendants acted with apparent authority as agents and owed fiduciary duties as a result of that agency relationship. The Hawley Troxell Defendants had conflicts of interest when they undertook to represent AIA and CropUSA, and when they improperly proceeded in the manner directed by any one or more of the Controlling AIA Defendants, thereby improperly representing the interests of the Controlling AIA Defendants, instead of the best interests of AIA. The Hawley Troxell Defendants were never retained to represent AIA and CropUSA by disinterested and

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 104

**8-ER-1769**

unconflicted officers and directors of AIA. The Hawley Troxell Defendants placed their self-interests in earning in excess of $1,000,000 in fees in various lawsuits ahead of, and in direct conflict with, AIA's interests in having undivided and unconflicted representation. The Hawley Troxell Defendants knew that they were improperly retained to purportedly represent CropUSA and AIA when AIA's litigation decisions were being made by, and AIA improperly operated by, disinterested and unconflicted officers and directors who were also placing their self-interests ahead of AIA's interests, as more full discussed throughout this Third Amended Complaint.

**Answer:** Paragraph 187 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of the factual allegations contained in this paragraph and on that basis denies them.

188.    Based on any and/or all of the acts and/or omissions set forth in this Third Amended Complaint and/or those facts proven at or before the time of trial (including conflicts of interest that prevent the Controlling AIA Defendants to use the business judgment rule as a defense), the Controlling AIA Defendants and the Hawley Troxell Defendants breached their fiduciary duties owed to AIA, including, without limitation, breaching their undivided duties of loyalty, care, good faith, trust and confidence owed to AIA and/or engaging in collusive acts and behavior against AIA. In addition, Beck, Cashman, John and Connie have further breached their fiduciary duties owed to AIA as to the controlling majority shareholders of AIA Services by and through, inter alia, using their control of AIA in an unjust, unfair and inequitable manner to benefit themselves and other entities that they partially own or control to the detriment of AIA and Plaintiff.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 105

**8-ER-1770**

**Answer:** Paragraph 188 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them.

189.    The Hawley Troxell Defendants have separately breached their fiduciary duties as matter of law by violating the Rules of Professional Conduct, including, without limitation, when they: (a) simultaneously represented AIA and CropUSA; (b) failed to proceed in the best interests of AIA; (c) failed to obtain information consent from authorized, unconflicted and disinterred constituents of AIA; (d) placed their interests in earning over $1,000,000 in attorneys' fees over the interests of AIA; (e) prepared and/or entered into Agreements and/or Amended Agreements involving AIA, CropUSA and/or the Controlling AIA Defendants that were not in the best interest of AIA and without requiring AIA to obtain independent counsel; and (f) assisting the Controlling AIA Defendants in the commission and/or covering up of fraud (including by failing to require full disclosure to AIA and AIA Services' shareholders). In addition, Riley was previously aware that CropUSA was derived from AIA (the other Hawley Troxell Defendants became aware in Taylor v. AIA Services) and they were further aware of the restrictions in AIA Services' amended articles of incorporation and bylaws when Riley had been aware of them, and assisted in preparing them. The Hawley Troxell Defendants have further breached their fiduciary duties as a matter of law for the violations of the Rules of Professional Conduct dealing with loyalty to a client and conflicts of interest, which separately requires disgorgement of all compensation (the over $1,000,000 in attorneys' fees and costs paid to it by and/or on behalf of AIA).

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 106

**8-ER-1771**

**Answer:** Paragraph 189 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them.

190.   As a direct and/or proximate cause of the Controlling AIA Defendants' and the Hawley Troxell Defendants' breaches of their fiduciary duties, AIA has been damaged in the amount to be proven at or before trial.

**Answer:** Paragraph 190 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis denies them.

191.   In addition, each of the Controlling AIA Defendants and the Hawley Troxell Defendants is a "faithless fiduciary" as defined by law and is therefore required to disgorge all compensation and consideration received from AIA and/or CropUSA, irrespective of if they prove that they acted in AIA's interests as to any other issues. The disgorgements sought are in addition to liability caused by the breaches of fiduciary duty. In the case of the Hawley Troxell Defendants, the disgorgement includes all fees and costs received for or paid on behalf of AIA and/or CropUSA. In the case of the faithless Controlling AIA Defendants, the disgorgement includes all salary, bonuses, benefits, warrants, stock options, or stock received from AIA.

**Answer:** Paragraph 191 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 107

denies them.

## VII. COUNT II—AIDING AND ABETTING BREACHES OF FIDUCIARY DUTIES
**(Against the Controlling AIA Defendants, the Hawley Troxell Defendants, CropUSA, and GemCap)**

192.    Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause of action.

**Answer:** GemCap incorporates by reference herein every response asserted elsewhere in this Answer.

193.    During certain relevant times, the Hawley Troxell Defendants, the Controlling AIA Defendants, CropUSA and/or GemCap: (a) had knowledge of the other defendants' acts and/or omissions constituting the breaches of fiduciary duties owed to AIA (including duties of loyalty, good faith and proceeding in the best interests of AIA) as further described in this Third Amended Complaint and/or proven at the time of trial; (b) knew that such acts and/or omissions by other defendants constituted breaches of fiduciary duties owed to AIA; (c) substantially participated in such breaches of fiduciary duties owed to AIA; (d) did not disapprove or seek ratification or disclosure of such breaches of fiduciary duties owed to AIA; (e) took no steps to prevent such breaches of fiduciary duties owed to AIA; and/or (f) assisted in the concealment, and covering up, of such breaches of fiduciary duties owed to AIA.

**Answer:** Denied. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 108

**8-ER-1773**

breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

194.    As a direct and/or proximate cause of the Hawley Troxell Defendants, the Controlling AIA Defendants, CropUSA and GemCap's aiding and abetting of one another and/or others in the breaches of fiduciary duties owed by other defendants to AIA, AIA has been damaged in the amount to be proven at or before trial. As aiders and abettors, the defendants are jointly and severally liable for the underlying tort committed by one or more defendants.

**Answer:** Denied. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

### VIII.  COUNT III—LEGAL MALPRACTICE
### (Against the Hawley Troxell Defendants)

195.    Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause of action.

**Answer:** GemCap incorporates by reference herein every response asserted elsewhere in this Answer.

196.    The Hawley Troxell Defendants owed duties to AIA, including, without

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 109

**8-ER-1774**

limitation, duties of care, good faith and loyalty.

**Answer:** Paragraph 196 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them.

197.   The Hawley Troxell Defendants have breached their duties of care, good faith and loyalty owed to AIA, including, without limitation, the breached duties attributable to the acts and omissions described in this Third Amended Complaint. The Hawley Troxell Defendants have further breached their duties of good faith, care and loyalty owed to AIA by improperly simultaneously representing AIA and CropUSA, together with directly and/or indirectly improperly representing the interests of the Controlling AIA Defendants.

**Answer:** Paragraph 197 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them.

198.   AIA suffered damages as a direct, foreseeable and/or proximate result of the breaches of duty and the acts of the Hawley Troxell Defendants, including, without limitation, those acts described in this Third Amended Complaint and/or proven at the time of trial (including damages and the lost profits associated with CropUSA). At a minimum, the Hawley Troxell Defendants were also a substantial factor in the harm and damages inflicted upon AIA, including, without limitation, inflicting millions of dollars of damages against AIA by the Controlling AIA Defendants and the failure of CropUSA to be a profitable and valuable subsidiary of AIA today. Had the Hawley Troxell

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 110

**8-ER-1775**

Defendants properly discharged their duties, the Controlling AIA Defendants would never have significantly damaged AIA, and it and CropUSA would be profitable today (and CropUSA a valuable subsidiary of AIA). In addition and/or alternative, millions of dollars of AIA's funds, assets, trade secrets, labor and other valuable consideration would have been recovered and/or not unlawfully transferred and/or utilized by CropUSA, the Controlling AIA Defendants and/or other entities that they own.

**Answer:** Paragraph 198 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them.

199.   As a direct and/or proximate cause of such acts and/or omissions, the Hawley Troxell Defendants are liable to AIA for damages in the amount to be proven at or before the time of trial.

**Answer:** Paragraph 199 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them.

### IX.   COUNT IV—FRAUD/FRAUDULENT CONCEALMENT/ CONSTRUCTIVE FRAUD
**(Against the Controlling AIA Defendants, CropUSA and GemCap)**

200.   Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause of action.

**Answer:** GemCap incorporates by reference herein every response asserted elsewhere in this Answer.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 111

201.     The acts, omissions, decisions, contracts, transactions, allocations, investments, and/or other business dealings of the Controlling AIA Defendants that were purportedly entered into on behalf of AIA were not disclosed or approved by fully seated and disinterested Boards of Directors of AIA and, therefore, AIA had no knowledge of any such acts, omissions, decisions, contracts, transactions, allocations, investments, and/or malfeasance.

**Answer:** Paragraph 201 contains legal conclusions to which no response is required. GemCap denies the allegations contained in Paragraph 201 to the extent they imply that any entity or person who entered an agreement with GemCap was not bound by it. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

202.     The Controlling AIA Defendants are liable to AIA for fraud because: (a) they made representations of material fact to AIA and AIA Services' innocent minority shareholders as asserted throughout this Third Amended Complaint, including but not limited to: (i) representations that CropUSA was being operated for the benefit of AIA, (ii) representations that AIA was being properly operated (including that the Boards of Directors had properly authorized certain transactions when Donna Taylor's designee

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 112

**8-ER-1777**

was not on the Board of AIA Services and the provisions in the amended articles of incorporation and bylaws had not been complied with), (iii) representations that the information on AIA's financial statements was true (John separately certified to auditors and others that the information contained on certain of AIA's financial statements was true and correct), (iv) representations that expenses, compensation, and/or loans between AIA and other entities or parties were properly entered into and accounted for (i.e., there are hundreds of thousands of dollars, if not millions of dollars, in funds and other assets used by CropUSA which were derived from AIA and never accounted for), (v) representations that they had the authority to act on behalf of AIA when they did not (including failing to disclose conflicts of interest that prevented them from acting on behalf of AIA); and (vi) other representations referenced in this Third Amended Complaint and/or proven at or before trial since discovery has not begun; (b) such representations were false; (c) such representations were material and AIA would never have entered into or approved any of the acts, conduct or transactions if AIA had been provided with full disclosure and the true representations); (d) they knew such representations were false; (e) they intended that there be reliance by AIA on such representations; (f) AIA was ignorant of the falsity of such representations; (g) AIA relied on such representations; (h) AIA's reliance was justified; and (i) injury resulted to AIA.

**Answer:** Paragraph 202 contains legal conclusions to which no response is required. GemCap denies the allegations contained in Paragraph 202 to the extent they imply that any entity or person who entered an agreement with GemCap was not bound

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 113

by it. GemCap denies any allegation of wrongdoing by GemCap. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

203.   Constructive fraud is identical to fraud, except that the Plaintiff need not prove the Controlling AIA Defendants' knowledge of the fraud and their intent that AIA rely on the representations.

**Answer:** Paragraph 203 contains legal conclusions to which no response is required.

204.   The Controlling AIA Defendants owed duties to AIA during certain relevant times as majority shareholders, board members and/or officers of AIA. In addition to making false representations, the Controlling AIA Defendants also concealed information from AIA and its innocent minority shareholders with knowledge that the concealed information was material and that the concealment would cause AIA to suffer otherwise avoidable damages, including without limitation, information contained in this Third Amended Complaint. The Controlling AIA Defendants' failure to disclose a fact to AIA and AIA Services' innocent minority shareholders where one has a duty to disclose is the legal equivalent of representing the non-existence of the fact. Where facts are

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 114

fraudulently concealed, Plaintiff need not show reliance as there is nothing other than silence upon which to rely.

**Answer:** Paragraph 204 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

205. The Controlling AIA Defendants represented to AIA Services that CropUSA was a wholly-owned subsidiary of AIA Services. Simultaneously, the Controlling AIA Defendants adopted the position, not disclosed to AIA or its innocent minority shareholders, that CropUSA was an independent entity with John as its alleged sole shareholder and subsequently failed to disclose that CropUSA was not a separate entity. These representations were false, the Controlling AIA Defendants knew of their falsity, the Controlling AIA Defendants intended that there be reliance, there was justifiable reliance by AIA and AIA Services' innocent minority shareholders, and AIA was damaged as a result.

**Answer:** Paragraph 205 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 115

In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

206.   By operating CropUSA as an independent entity, and by using CropUSA as a vehicle for misappropriating and converting corporate assets, the Controlling AIA Defendants committed ongoing fraud that has persisted through the date of this Third Amended Complaint.

**Answer:** Paragraph 206 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

207.   The Controlling AIA Defendants also made misrepresentations to AIA and AIA Services' innocent minority shareholders in the form of false, misleading and fraudulent financial statements (which such financial statements also failed to disclose numerous improper and unlawful transactions and their ownership interests in CropUSA and other entities), upon which AIA and AIA Services' innocent minority shareholders

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 116

reasonably relied, with that reliance being the proximate cause of AIA's damages.

**Answer:** Paragraph 207 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

208.    When the Controlling AIA Defendants transferred more than $1.5 million to CropUSA in 2004, they concealed the fact of this transaction from AIA and AIA Services' innocent minority shareholders and AIA was damaged by this concealment.

**Answer:** Paragraph 208 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

209.    When the Controlling AIA Defendants transferred AIA corporate assets, including funds, employees, goodwill and trade secrets to CropUSA and other entities

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 117

and were subsidizing CropUSA and other entities, they concealed these facts from AIA and AIA Services' innocent minority shareholders. AIA suffered damages by these concealments.

**Answer:** Paragraph 209 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

210.   When the Controlling AIA Defendants had AIA pay certain of CropUSA's corporate expenses and unfairly used AIA's employees, trade secrets and facilities for CropUSA, they concealed these facts from AIA. AIA suffered damages as a result of these concealments.

**Answer:** Paragraph 210 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 118

against GemCap are denied on that basis as well.

211.    When the Controlling AIA Defendants pledged the mortgage obtained by AIA from the state of Idaho to CropUSA so that CropUSA could borrow money to pay the attorney's fees of the Hawley Troxell Defendants to facilitate covering up the AIA Defendants' fraud, they concealed these facts from AIA. AIA suffered damages as a result of these concealments.

**Answer:** Paragraph 211 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

212.    When the Controlling AIA Defendants had AIA Insurance guarantee CropUSA's $15 million line of credit and later sold over $10,000,000 in assets derived from AIA to Hudson Insurance, they concealed the fact of this guarantee and asset sale from AIA.

**Answer:** Paragraph 212 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 119

commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

213.    When the Controlling AIA Defendants finally disclosed their ownership interests in CropUSA, CropUSA Insurance Services, LLC and other entities in AIA Services' financial statements in July 2012[3] (See Dkt. 67-38), they continued to conceal how they obtained their ownership interest in those entities (and in the case of CropUSA that the ownership interest came from AIA) and many transactions and purported loans between the entities and AIA (loans and guarantees made by AIA which were prohibited by AIA Services' amended articles of incorporation and restated bylaws).

**Answer:** Paragraph 213 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to

---

[3] While the financial statements were dated as of year-end 2011, they were not provided to AIA or its shareholders until July 2012 in connection with the failed ill-conceived reverse stock split.

**Answer:** Footnote 3 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this footnote and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 120

commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

214.    The Controlling AIA Defendants, CropUSA and GemCap concealed from AIA that they had AIA unlawfully and improperly enter into the Guarantees, Settlement Agreements and related agreements and instruments, together with unlawfully transferring property and making payments under those unlawful agreements and instruments.

**Answer:** Paragraph 214 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, and aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and all such allegations are denied on that basis as well.

215.    As a direct and/or proximate cause of the Controlling AIA Defendants' fraudulent acts, AIA has been damaged in an amount to be proven at or before trial, and the ongoing fraud bars the Controlling AIA Defendants from asserting statute of limitations defenses. To the extent that the Hawley Troxell Defendants seek to assert the statute of limitations as a defense, they too are barred from doing so through their fraudulent concealment of facts from AIA.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 121

**8-ER-1786**

**Answer:** Paragraph 215 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

### X.   COUNT V—AIDING AND ABETTING AND CONSIPIRACY OF FRAUD
**(Against the Controlling AIA Defendants, CropUSA, GemCap and the Hawley Troxell Defendants)**

216.   Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause of action.

**Answer:** GemCap incorporates by reference herein every response asserted elsewhere in this Answer.

217.   During certain relevant times, the Hawley Troxell Defendants, the Controlling AIA Defendants, CropUSA and/or GemCap: (a) had knowledge of the other defendants' acts and/or omissions constituting fraud upon AIA (including fraudulent concealment) as further described in this Third Amended Complaint and/or proven at the time of trial; (b) knew that such acts and/or omissions by other defendants constituted fraud upon AIA; (c) substantially participated in such fraud upon AIA; (d) did not disapprove or seek ratification or disclosure of such fraud upon AIA; (e) took no steps to

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 122

prevent such fraud upon AIA; and/or (f) assisted in the concealment, and covering up, of such fraud upon AIA.

**Answer:** Paragraph 217 contains legal conclusions to which no response is required. GemCap denies all allegations contained in this paragraph regarding any alleged misconduct by GemCap. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

218.   In addition, through various agreements and actions, the Controlling AIA Defendants, CropUSA and/or GemCap: (a) conspired to defraud AIA and were members of the conspiracy at relevant times; (b) provided a substantial act and/or a substantial effect in furtherance of the conspiracy against AIA in Idaho; (c) are attributable to the acts of one another; and (d) engaged in a pattern of behavior and/or agreements to accomplish unlawful objectives and/or to accomplish a lawful objectives in an unlawful manner.

**Answer:** Paragraph 218 contains legal conclusions to which no response is required. GemCap denies all allegations contained in this paragraph regarding any alleged misconduct by GemCap. GemCap lacks sufficient information or knowledge to

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 123

form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

219.   As a direct and/or proximate cause of the Hawley Troxell Defendants, the Controlling AIA Defendants, CropUSA and/or GemCap's aiding and abetting of one another and/or others in the commission of fraud upon AIA, AIA has been damaged in the amount to be proven at or before trial.

**Answer:** Paragraph 219 contains legal conclusions to which no response is required. GemCap denies all allegations contained in this paragraph regarding any alleged misconduct by GemCap. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and any such allegations against GemCap are denied on that basis as well.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 124

## XI.   COUNT VI—BREACH OF CONTRACT
### (Against the Controlling AIA Defendants)

220.   Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause of action.

**Answer:** GemCap incorporates by reference herein every response asserted elsewhere in this Answer.

221.   On August 1, 1995, John and AIA Services entered into an Executive Officer's Agreement. (See Dkt. 67-8.) The Executive Officer's Agreement contains contractual provisions preventing John from doing certain acts. For example, Section 9 of the Executive Officer's Agreement sets forth express covenants not to compete. Subsection A of the covenants prohibits John from soliciting AIA customers or otherwise diverting the business of AIA customers. Subsection B prohibits John from participating in any insurance business that underwrites, markets or administers insurance products for commodity associations. Subsection C prohibits John from soliciting AIA Services employees for other employment. Subsection D of the covenants bars John from divulging or exploiting trade secrets belonging to AIA.

**Answer:** Paragraph 221 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them.

222.   John has breached his contractual obligations owed to AIA, including, without limitation, by forming CropUSA as anything other than a wholly-owned

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 125

subsidiary of AIA, competing against AIA with CropUSA and other entities (including

Pacific Empire Holdings and CropUSA Insurance Services, LLC). John has breached all

four subsections of Section 9 of the Executive Officer's Agreement.

**Answer:** Paragraph 222 contains legal conclusions to which no response is

required. GemCap lacks sufficient information or knowledge to form a belief as to the

truth of any factual allegations contained in this paragraph and on that basis denies them.

223.   As a direct and/or proximate cause of John's breaches of the Executive

Officer's Agreement, AIA has been damaged in an amount to be proven at or before trial.

Such breaches also constitute the breaches of his fiduciary duties owed to AIA.

**Answer:** Paragraph 223 contains legal conclusions to which no response is

required. GemCap lacks sufficient information or knowledge to form a belief as to the

truth of any factual allegations contained in this paragraph and on that basis denies them.

224.   Upon information and belief, certain and/or all of the Controlling AIA

Defendants entered into agreements with AIA regarding the payment of certain of their

attorneys' fees and costs in litigation, which such agreements were never properly

presented to or approved by disinterested shareholders. Upon information and belief,

such agreements required the Controlling AIA Defendants to pay back the funds

advanced for their defense if it was determined that they did not act in good faith or in

accordance with other required standards. Certain and/or all of the Controlling AIA

Defendants breached their contracts when they failed to discharge their duties in good

faith and failed to comply with all applicable standards. As a direct and/or proximate

cause of such breaches, AIA has been damaged and is entitled to be paid back for all

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 126

attorneys' fees and costs advanced or paid, directly or indirectly, by AIA, plus prejudgment interest.

**Answer:** Paragraph 224 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them.

### XII.    COUNT VII—DECLARATORY JUDGMENT
**(Against the Controlling AIA Defendants, the Hawley Troxell Defendants, CropUSA and GemCap)**

225.    Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause of action.

**Answer:** GemCap incorporates by reference herein every response asserted elsewhere in this Answer.

226.    Plaintiff seeks a declaratory judgment against Controlling AIA Defendants, Hawley Troxell Defendants, CropUSA, and GemCap, including, without limitation, for the following relief: (a) for a full accounting with supporting documentation of all of AIA's funds, assets, loans and other transactions from 1999 through the present time; (b) requiring the Controlling AIA Defendants to comply with AIA's amended articles of incorporation, bylaws and the Idaho Business Corporation Act; (c) rescinding the purchases of the shares held by the ESOP and/or ensuring that those shareholders receive fair value for their shares; (d) rescinding and/or declaring void the common shares issued to John through his Executive Officer's Agreement; (e) voiding any purported common interest or joint defense agreements, jurisdiction consent agreements and any other

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 127

improper agreement pertaining to AIA Services and/or AIA Insurance; (f) declaring illegal, at a minimum as to AIA Services and AIA Insurance, the Guarantees and Settlement Agreements entered into in favor of GemCap; (g) declaring as illegal and/or setting aside any agreements between AIA Services and/or AIA Insurance and CropUSA; (h) setting aside, rescinding and/or voiding any transfers of real property or other purported asset to AIA from John (John executed quitclaim deeds to AIA for certain properties held in the names of others, did not properly value the properties, and required AIA to assume the liabilities for those properties without proper board or shareholder approval); (i) settling aside, voiding or rescinding recent purported amendments to AIA Services and AIA Insurance's bylaws, which were adopted without shareholder approval and for improper purposes (including because John had conflicts of interest); (j) setting aside, voiding and/or rescinding the 7,500 Series A Preferred Shares purportedly issued to John, including, because a proper board never authorized the issuance of those shares, the shares were not issued for legitimate purposes, and the articles of incorporation were not amended to authorize the issuance of any Series A Preferred Shares to anyone other than Donna Taylor; (k) setting aside, rescinding and/or voiding any contracts, agreements, guarantees, financing statements and/or other instruments that were illegal, intra vires, ultra vires (including transfers of real or personal property); (l) setting aside, voiding and/or rescinding the 475,000 common shares purportedly issued to John and/or Connie under John's Executive Officer's Agreement (which he breached countless times) and because he is a faithless fiduciary and is not entitled to any compensation; (m) rescinding the common shares issued originally to Beck, Cashman and the other Series C

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 128

**8-ER-1793**

Preferred Shareholders, which were later transferred to John; (n) for a determination that the Controlling AIA Defendants did not act in good faith and were not entitled to have any attorneys' fees or costs paid or advanced for them by AIA; and (o) such other declaratory relief as may be requested at or before trial (including any declaratory relief related to any other acts and/or omissions described in this Third Amended Complaint or as may be contemplated by any cause of action).

**Answer:** Paragraph 226 contains legal conclusions and a statement of Plaintiff's requested relief, to which no response is required. GemCap denies all allegations regarding any supposed misconduct committed by GemCap. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and all such allegations are denied on that basis as well.

227.   Plaintiff seeks a declaratory judgment against the Hawley Troxell Defendants, including, without limitation, for the following relief: (a) that the representation agreement, fee agreements and any related agreements entered into with them and AIA be declared void (including, without limitation, because such agreements violated the applicable Rules of Professional Conduct); (b) any agreements or accounts regarding any sums owed by AIA, if any, be declared void; and (c) such other relief as

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 129

may be requested at or before trial (including any declaratory relief contemplated by any of the acts and/or omissions set forth in this Third Amended Complaint).

**Answer:** Paragraph 227 contains legal conclusions and a statement of Plaintiff's requested relief, to which no response is required. GemCap denies all allegations regarding any supposed misconduct committed by GemCap. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and all such allegations are denied on that basis as well.

**XIII.** **COUNT VIII—STATUTORY RELIEF (INCLUDING FOR ULTRA VIRES)**
**(Against All Defendants)**

228.   Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause of action.

**Answer:** GemCap incorporates by reference herein every response asserted elsewhere in this Answer.

229.   Plaintiff seeks all damages, equitable relief, injunctive relief and other relief available against the Defendants under applicable Idaho Code, including, but not limited to I.C. §§ 30-1-304 and 30-29-304: (a) if this Court does not find the Guarantees and/or

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 130

Settlement Agreements illegal as to AIA Services and AIA Insurance, Plaintiff requests a judgment that the Guarantees and/or Settlement Agreements are ultra vires and this Court should set aside the Guarantees, Settlement Agreements and related instruments (including Financing Statements and deeds) and enjoin AIA Services and AIA Insurance from complying with the Guarantees, Settlement Agreements and related instruments; (b) award damages to AIA Services and AIA Insurance for damages and losses already sustained from the Guarantees and Settlement Agreements (including attorneys' fees and costs); (c) award AIA Services and AIA Insurance anticipated lost profits and other losses, including, the lost profits and damages attributable to the money received by GemCap for the sale of AIA Services' former headquarters in Lewiston, Idaho (approximately $1,000,000) and any other damages and lost profits relating to that property and any other damage claim, and enjoin the transfer of any funds to GemCap; (d) setting aside and/or enjoining any other transfers, payments, obligations, notes, contracts, agreements, guarantees, and instruments (including deeds) which were ultra vires (including the payment of attorneys' fees and costs for any of the defendants); and (e) award all damages and relief (including setting aside any agreements) pertaining to all ultra vires acts involving AIA Services and/or AIA Insurance.

**Answer:** Paragraph 229 contains legal conclusions and a statement of Plaintiff's requested relief, to which no response is required. GemCap denies all allegations regarding any supposed misconduct committed by GemCap. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis denies them. In addition, the

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 131

**8-ER-1796**

Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and all such allegations are denied on that basis as well.

230.   To the extent that there is no cause of action under this Count VIII, then the allegations in this Count VIII are incorporated by reference to support other causes of action and relief in this Third Amended Complaint (including in Count VII and the prayer for relief below).

**Answer:** Paragraph 230 contains legal conclusions to which no response is required. GemCap denies all allegations regarding any supposed misconduct committed by GemCap. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and all such allegations are denied on that basis as well.

## XIV.   COUNT IX—CORPORATE WASTE/EXCESSIVE COMPENSATION
### (Against the Controlling AIA Defendants)

231.   Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 132

support this cause of action.

**Answer:** GemCap incorporates by reference herein every response asserted elsewhere in this Answer.

232.   The Controlling AIA Defendants have been officers and/or controlled AIA's Boards of Directors from 1995 through certain relevant times. The Controlling AIA Defendants have lacked independence and have not acted in good faith, including, without limitation, by committing the intentional acts and/or omissions described in this Third Amended Complaint.

**Answer:** Paragraph 232 contains legal conclusions to which no response is required. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any factual allegations contained in this paragraph and on that basis denies them.

233.   The Controlling AIA Defendants' waste and excessive compensation, includes, without limitation: (a) the payment of excessive and unnecessary compensation to officers and employees; (b) the waste of corporate assets during the course of managing and/or operating AIA, including, without limitation, by paying themselves excessive compensation (and practically speaking, any compensation at all based on their acts and omissions) and using millions of dollars of AIA's funds, assets, employees and property for improper and unnecessary purposes; (c) diverting millions of dollars of AIA's assets and funds to benefit CropUSA, themselves, and other entities they partially or wholly own, including Pacific Empire Radio Corp., CropUSA Insurance Services, LLC, and Pacific Empire Holdings Corp. (a/k/a Sound Insurance); (d) destroying AIA's agency force and causing them to transfer to CropUSA and ultimately Hudson Insurance

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 133

**8-ER-1798**

and other entities; (e) diverting CropUSA's business from AIA and running that business improperly by renting needless office space, employing unnecessary persons (including high-paying executives who did nothing for the business), entering into unnecessary high-interest loans, and engaging in other improper and unnecessary transactions (some of which AIA received no consideration); and (f) impairing and destroying AIA's businesses, including CropUSA. In addition, notwithstanding the fact that the Controlling AIA Defendants are not entitled to retain any of their compensation or benefits as a faithless fiduciary, it was separately corporate waste to pay them in the first place as they have done nothing to benefit AIA.

**Answer:** Paragraph 233 contains legal conclusions to which no response is required. GemCap denies any allegations that GemCap engaged in any misconduct. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and all such allegations are denied on that basis as well.

234.    The other transactions and malfeasance described in this Third Amended Complaint also constitute corporate waste, and none of those transactions and malfeasance were properly disclosed to all of AIA Services' shareholders nor was any authorization from them ever sought or obtained.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 134

**Answer:** Paragraph 234 contains legal conclusions to which no response is required. GemCap denies any allegations that GemCap engaged in any misconduct. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and all such allegations are denied on that basis as well.

235.    The Controlling AIA Defendants are liable to AIA for damages caused by paying excessive compensation and otherwise diverting, wasting and needlessly depleting AIA's funds and assets for their own benefit and with disregard for AIA.

**Answer:** Paragraph 235 contains legal conclusions to which no response is required. GemCap denies any allegations that GemCap engaged in any misconduct. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and all such allegations are denied on that basis as well.

236.    As a direct and/or proximate cause of the Controlling AIA Defendants'

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 135

waste and excessive compensation, AIA has been damaged in the amount to be proven at or before trial.

**Answer:** Paragraph 236 contains legal conclusions to which no response is required. GemCap denies any allegations that GemCap engaged in any misconduct. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and all such allegations are denied on that basis as well.

## XV.   COUNT X—VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT
### (Against GemCap)

237.   Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause of action.

**Answer:** GemCap incorporates by reference herein every response asserted elsewhere in this Answer.

238.   GemCap is defined as a "Person" under I.C. § 48-602(1). GemCap knowingly had AIA enter into the written Settlement Agreements and related agreements and instruments when the transactions were one-sided in favor of GemCap and the transactions were a pattern of conduct that would outrage and offend the public

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 136

**8-ER-1801**

conscience as provided under I.C. § 48-603C. Such unconscionable conduct includes knowingly and intentionally violating AIA Services' amended articles of incorporation, AIA's bylaws and Idaho Code sections, together with contractual provisions which violate the law and public policy without regard to AIA or their innocent minority shareholders.

**Answer:** Paragraph 238 contains legal conclusions to which no response is required. GemCap denies all allegations regarding any supposed misconduct committed by GemCap. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and all such allegations are denied on that basis as well.

239.   As described in this Third Amended Complaint and/or as proven at or before trial, GemCap engaged in misleading, false and deceptive practices when it entered into and negotiated the one-sided written Settlement Agreement when it knew that AIA Services' shareholders were challenging the Guarantees and they had never been presented with the facts nor were they even asked to authorize the Settlement Agreement and related agreements and instruments, including, without limitation, through illegal provisions in the Settlement Agreement barring AIA from seeking bankruptcy protection and unlawfully requiring legal malpractice claims to be assigned.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 137

**8-ER-1802**

The Settlement Agreements and the prior Guarantees were all entered into with GemCap.

**Answer:** Paragraph 239 contains legal conclusions to which no response is required. GemCap denies all allegations regarding any supposed misconduct committed by GemCap. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis denies them. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and all such allegations are denied on that basis as well.

240.   GemCap's acts and/or practices, as described above and in this Third Amended Complaint and/or as proven at or before trial, are misleading, deceptive, and unconscionable methods, acts and practices in the conduct of trade and commerce in violation of the Idaho Consumer Protection Act, I.C. § 48-602, et seq. Based on the ongoing flagrant violations that commenced with the original Guarantee and continued through the unlimited Guarantee and the subsequently written Settlement Agreement, the Guarantees and Settlement Agreements should be voided and GemCap should be ordered to pay punitive damages of three times the damages inflicted upon AIA, which now stand at over $1,000,000 by way of the property transferred via the written Settlement Agreement.

**Answer:** Paragraph 240 contains legal conclusions to which no response is required. GemCap denies all allegations regarding any supposed misconduct committed

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 138

**8-ER-1803**

by GemCap. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and all such allegations are denied on that basis as well.

241.    As a direct and/or proximate cause of GemCap's violations of the Idaho Consumer Protection Act, AIA has been damaged in the amount to be proven at or before trial, including for the approximately $1,000,000 in cash proceeds unconscionably obtained by GemCap in 2016 for the sale of AIA Services' former headquarters, and all other damages incurred by AIA, and this Court should award punitive damages for all such damages.

**Answer:** Paragraph 241 contains legal conclusions to which no response is required. GemCap denies all allegations regarding any supposed misconduct committed by GemCap. In addition, the Court dismissed all claims against GemCap for fraud, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty as related to torts such as fraud, and any claims seeking statutory relief or alleging violation of the Idaho Consumer Protection Act based on the guarantees, and all such allegations are denied on that basis as well.

### XVI.   <u>COUNT XI—ACCOUNT STATED</u>
### (Against John)

242.    Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 139

**8-ER-1804**

support this cause of action.

**Answer:** GemCap incorporates by reference herein every response asserted elsewhere in this Answer.

243.    John established an account by borrowing $307,000 from AIA for his personal use. John subsequently confirmed the amount of the debt by "correcting" a purported accounting "error" when he had previously extinguished the $307,000 debt by improperly crediting the payment of Reed Taylor's $6 million promissory note after the issue arose in Taylor v. AIA Services so that AIA's books show that AIA is creditor and John is debtor for $307,000, i.e., the correction was only made because Reed Taylor demanded it and he was suing AIA Services for repayment of the $6 million promissory note.

**Answer:** Paragraph 243 contains legal conclusions to which no response is required. GemCap denies all allegations regarding any supposed misconduct committed by GemCap. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis denies them.

244.    Upon information and belief, John has not paid any portion of this debt and the entire balance remains due and payable to AIA. John is liable to AIA for $307,000 on the account stated and/or such other amount as may be presently owed, plus prejudgment interest from the date the obligation was incurred. If John has since paid back the $307,000 or any part of the sums he owes, then Plaintiff still seeks the balance owed and prejudgment interest for the benefit of AIA, including, because John has been a faithless

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 140

fiduciary who is not entitled to any interest-free loans from AIA.

**Answer:** Paragraph 244 contains legal conclusions to which no response is required. GemCap denies all allegations regarding any supposed misconduct committed by GemCap. GemCap lacks sufficient information or knowledge to form a belief as to the truth of any remaining factual allegations contained in this paragraph and on that basis denies them.

## XVII. JURY DEMAND

1.      Plaintiff, through the signature of his attorney below, hereby demands a trial by jury of no less than the maximum number of jurors permitted on all causes of action for which a jury trial is allowed by law.

**Answer:** This paragraph sets forth Plaintiff's demand for a jury trial, to which no response is required.

## XVIII.      PRAYER FOR RELIEF

Wherefore, Plaintiff prays for the following relief:

**1.**      For a judgment against the defendants, jointly and severally and/or individually, for all damages in an amount to be proven for each defendant at or before trial, including, without limitation, consequential damages, incidental damages, lost profits, lost business opportunities, unlawful distributions, corporate waste, and all other damages, plus prejudgment interest;

**2.**      For a judgment or order requiring the Hawley Troxell Defendants for all damages and ordering them to disgorge all attorneys' fees and costs paid to them by AIA Services, AIA Insurance, CropUSA and by any other party on behalf of those entities in

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 141

the amount to be proven at the time of trial, plus prejudgment interest;

3.      For a judgment or order requiring the Controlling AIA Defendants to disgorge all compensation received from AIA or CropUSA since 1999 for being faithless fiduciaries and breaching their fiduciary duties, including, without limitation, all stock, cash, benefits, and other cash and non-cash compensation, attorneys' fees and costs (i.e., Connie received payments for attorneys' fees and costs from AIA or from CropUSA in violation of her duties to AIA) and that John is owed no compensation by AIA;

4.      For judgment against GemCap, AIA, John and CropUSA declaring that AIA's Guarantees, the Settlement Agreements and all related agreements and instruments illegal, ultra vires, intra vires, void and/or unenforceable and awarding AIA damages;

5.      For judgment against John in the amount to be proven at the time of trial, plus prejudgment interest;

6.      For judgments against the Controlling AIA Defendants, jointly and severally, as the alter-ego of CropUSA and/or to pierce its corporate veil, for all damages incurred by AIA and attributable in whole or in part to CropUSA;

7.      For judgments against any one or more of the defendants and for any and all damages and relief available under Idaho Code (including, without limitation, I.C. §§ 30-29-304, 30-29-833 (and their predecessors), 48-608, and the common law;

8.      For a preliminary and/or permanent injunction and/or declaratory relief against AIA enjoining them from complying with the unauthorized, improper, intra vires, and ultra vires transactions and agreements relating in any way to AIA, including, without limitation, the Guarantees, Settlement Agreements, and all agreements and

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 142

instruments related to the foregoing (including from transferring any money or property and from distributing the proceeds of any property or asset sales); to set aside and void such agreements and instruments; and award damages;

9.      For declaratory judgment requiring the reissuance of the common shares in AIA Services to the ESOP participants and voiding and/or rescinding John's alleged purchase of 7,500 Series A Preferred Shares in AIA Services and the 475,000 common shares in AIA Services improperly issued to him under his Executive Officer's Agreement that he violated on countless occasions;

10.     For a declaratory judgment requiring AIA Services to reissue the common shares formerly held by the innocent ESOP participants because the Controlling AIA Defendants' improperly terminated the ESOP;

11.     For an order requiring that all funds recovered as a result of this litigation, minus fees, costs and bona fide debts, be deposited with the Court registry and distributed only after court order, and that no funds recovered from this litigation be paid to, or for the benefit of, the Controlling AIA Defendants;

12.     To the extent that GemCap is deemed to be owed any money as a creditor, for a judgment declaring any such rights or judgments to be inferior to AIA and AIA Services' innocent minority shareholders (including those holding shares through the ESOP and 401(k) Plan), under an equitable subordination theory or such other theory Plaintiff may assert at or before trial;

13.     For a declaratory judgment for the relief specified in this Third Amended Complaint and any other declaratory relief requested at or before trial, including, without

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 143

limitation, setting aside obligations, notes, guarantees, settlement agreements, agreements, contracts, transfers of assets, amendments to AIA's bylaws, and repurchase or the issuance of shares;

14. For an award of the attorneys' fees and costs incurred in this action as allowed by statute, contract, or recognized grounds of equity, including, under I.C. § 12-121; and

15. For any such further relief or remedy, including preliminary and/or permanent injunctive relief, equitable subordination, or other relief Plaintiff may request and/or as this Court may find just and equitable.

**Answer:** This Prayer for Relief does not contain factual allegations and no response is required. To the extent a response is required, GemCap denies that Plaintiff is entitled to any relief from GemCap.

### III.   AFFIRMATIVE DEFENSES

Pursuant to FRCP 8(c), GemCap asserts the following affirmative defenses, without admitting that it would bear the burden of proof on any of the following:

1. The Third Amended Complaint fails to state a claim for which relief can be granted.

2. Plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel.

3. Plaintiff's claims are barred by the statute of limitations.

4. Plaintiff's claims are barred by doctrines of laches and estoppel.

5. Plaintiff's claims are barred because AIA received the full benefit and

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 144

consideration agreed upon in its agreements with GemCap.

6.     Plaintiff's claims are barred by assumption of risk.

7.     Plaintiff's claims are barred because the alleged damages could have been reasonably avoided by the plaintiff (or the entities on whose behalf he is suing).

8.     Plaintiff and the AIA entities on whose behalf he is suing failed to take reasonable steps to mitigate their damages, if any.

9.     Plaintiff's damages, if any, were caused by the acts or omissions of other parties, including the other defendants, over whom GemCap has no control, and not by any act or omission of GemCap.

10.     Plaintiff has no cause of action against GemCap because the entities on whose behalf the plaintiff brings claims are in default under its contracts with GemCap.

11.     Plaintiff has failed to join an indispensable party to this action.

12.     Plaintiff has failed to state with particularity all averments of fraud, aiding and abetting, and/or conspiracy as required by Federal Rules of Civil Procedure 9(b).

13.     The alleged damages complained of by plaintiff were proximately caused by an intervening cause, *i.e.*, the negligence or misconduct of other persons or entities not party to this suit, and by the other parties to this lawsuit.

14.     Plaintiff's claims are barred because the corporations on whose behalf he allegedly sues have waived all claims against GemCap for the alleged events and circumstances.

15.     Plaintiff lacks standing to assert derivative claims on behalf of AIA Services Corporation or AIA Insurance, Inc., because, *inter alia,* those corporations were

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 145

or are insolvent.

16.     Plaintiff is not the real party in interest.

17.     The Third Amended Complaint, and each purported cause of action contained therein, is barred by the doctrine of unclean hands.

18.     Plaintiff is barred by quasi-estoppel from asserting on behalf of AIA Services Corporation or AIA Insurance, Inc., any claims that contradict or vary from the positions asserted by those corporations in prior litigations or proceedings.

19.     The negligence or tortious acts and omissions of AIA Services Corporation and/or AIA Insurance, Inc. were equal to or greater than the alleged negligence or tortious acts and omissions of GemCap, if any, and were the sole, direct and proximate cause of any damages suffered by AIA Services Corporation and AIA Insurance, Inc.

20.     Plaintiff's damages, if any, were caused by the acts or omissions of other persons or entities, including the other parties to this lawsuit, over whom GemCap has no control, and not by any act or omission of GemCap.

21.     Plaintiff's claims are barred because GemCap was entitled to rely on the representations of officers, directors, or employees of AIA Services Corporation and/or AIA Insurance, Inc. under the doctrine of apparent or actual agency.

22.     The acts and knowledge of the directors, officers, and employees of AIA Services Corporation and/or AIA Insurance, Inc. are imputed to those corporations, which are deemed to have known about and approved the actions of the defendants. The claims alleged by plaintiff are barred by the acts and omissions of those corporations *in pari delicto* with the defendants.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 146

23.     Plaintiff's derivative claims are barred for failure to comply with the demand requirements of Idaho Code 30-29-742.

24.     As an alleged creditor of AIA Services Corporation, the plaintiff has an irreconcilable conflict of interest and is not a proper or adequate representative of AIA Services Corporation, its shareholders, or its subsidiary AIA Insurance, Inc.

25.     Plaintiff cannot allege any actual injury because, regardless of the alleged conduct of GemCap, AIA Services would be insolvent and incapable of redeeming its shares or issuing dividends or other distributions.

26.     The Third Amended Complaint, and each purported cause of action contained therein, fail to allege facts sufficient to support a claim for punitive damages.

27.     The Third Amended Complaint, and each purported cause of action contained therein, is vague and uncertain.

28.     The Third Amended Complaint, and each purported cause of action contained therein, is barred, in whole or in part, by the doctrine of acquiescence.

29.     GemCap alleges that any recovery sought by plaintiff in the Third Amended Complaint is barred because, to the extent plaintiff has suffered any damages (which allegation is expressly denied), such damages are uncertain and speculative.

30.     The claims of plaintiff and of those plaintiff purports to represent are barred by the doctrine of ratification.

31.     GemCap's conduct was justified, privileged, and performed in good faith, without malice, spite, or conscious, reckless, or negligent disregard of anyone's rights, if any, and without improper purpose or motive, malice, or ill will of any kind.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 147

32.     Any recovery by plaintiff or anyone whom plaintiff purports to represent is barred, in whole or in part, because he or they would be unjustly enriched if allowed to recover anything from GemCap under the Third Amended Complaint.

33.     The Third Amended Complaint, and each purported cause of action contained therein, is barred because plaintiff cannot show the requisite causation, *i.e.*, that any alleged act or omission of GemCap caused any alleged cognizable and recoverable damage.

34.     The Third Amended Complaint, and each purported cause of action contained therein, is barred by the doctrines of federal preclusion and preemption.

35.     Some or all of the claims against GemCap are barred because, to the extent any contracts at issue required the approval of the Series A Shareholder, her failure to provide that approval was in bad faith and a breach of her contractual and equitable obligations as a Series A Shareholder.

36.     Some or all of the damages alleged against GemCap are subject to setoff.

37.     GemCap reserves the right, after discovery, to amend this Answer to add additional affirmative defenses supported by the facts, and a failure to include all such defenses in this Answer shall not be deemed a waiver of any right to further amend this Answer.

## ATTORNEYS' FEES

GemCap requests that it be awarded its attorneys' fees and costs incurred herein pursuant to Idaho Code §§ 12-210(3) and 12-121, and FRCP 11 and 54.

WHEREFORE, having fully answered the Plaintiff's Third Amended Complaint,

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 148

the GemCap prays for relief as follows:

1.      That Plaintiff take nothing by way of the Third Amended Complaint;

2.      That GemCap be awarded its costs and reasonable attorney fees incurred herein; and

3.      For such other and further relief as to the Court may seem just.

## FIRST AMENDED CROSSCLAIM

1.      This is a claim for contribution and/or indemnity against Crop USA Insurance Agency, Inc., Crop USA Insurance Services, LLC, Connie Henderson, JoLee Duclos, R. John Taylor, Michael Cashman, James Beck, AIA Services Corporation, and AIA Insurance, Inc. (collectively, "Cross-Defendants") pursuant to Idaho common law and I.C. § 6-801 et seq. GemCap Lending I, LLC ("GemCap") seeks contribution and indemnity, whether express, implied, equitable, or otherwise, for Cross-Defendants' proportionate share of liability for claims arising from their conduct in operating or conducting business with AIA.

2.      Nothing herein is an admission of wrongdoing by GemCap or of the veracity of any claims or allegations asserted by Plaintiff Dale Miesen ("Plaintiff"). To the contrary, GemCap asserts in its Answer to Plaintiff's Third Amended Complaint that it has not acted in any wrongful manner and that Plaintiff is not entitled to any damages as result thereof.

## PARTIES

3.      GemCap is a citizen of California because it is a limited liability company and its members are all California citizens.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT
AND FIRST AMENDED CROSS-CLAIM – 149

**8-ER-1814**

4.      R. John Taylor is an Idaho citizen who has served as an officer and/or director of AIA at various times.

5.      On information and belief, Ms. Duclos is an Idaho citizen who has served as an officer and/or director of AIA at various times.

6.      On information and belief, Ms. Henderson is a Washington citizen who has served as a director of AIA at various times.

7.      On information and belief, Mr. Beck is a Minnesota citizen who served as a director of AIA at various times.

8.      On information and belief, Mr. Cashman is a Minnesota citizen who served as a director of AIA at various times.

9.      John Taylor, Duclos, Henderson, and Beck are referred to herein as the "Individual AIA Defendants."

10.      On information and belief, Crop USA Insurance Agency, Inc. is an Idaho corporation.

11.      On information and belief, Crop USA Insurance Services, LLC is an Idaho corporation.

12.      Crop USA Insurance Agency, Inc. and Crop USA Insurance Services, LLC are referred to herein as "Crop USA."

13.      AIA Services Corporation is a citizen of Idaho because its principal place of business is in Idaho and it is an Idaho corporation.

14.      AIA Insurance, Inc. is a citizen of Idaho because its principal place of business is in Idaho and it is an Idaho corporation.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT AND FIRST AMENDED CROSS-CLAIM – 150

15.     AIA Services Corporation and AIA Insurance, Inc. are referred to herein as "AIA."

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction under 28 U.S.C. § 1367(a) GemCap's because GemCap's cross-claim is so related to Plaintiff's claims that it forms part of the same case or controversy under Article III of the U.S. Constitution.

17.     Venue is proper in this district under the doctrine of ancillary venue.

18.     Venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this district under 28 U.S.C. § 1391(b)(2).

## COUNT I – CONTRIBUTION/INDEMNIFICATION
### (All Cross-Defendants)

19.     GemCap and all Cross-Defendants have been named as defendants in the Third Amended Complaint filed by Plaintiff.

20.     GemCap has denied all allegations of wrongdoing alleged against it by Plaintiff.

21.     If GemCap is found liable to Plaintiff, either through judgment, settlement, or otherwise, then its liability is caused by the acts or omissions the Cross-Defendants as alleged in the Third Amended Complaint and Third-Party Complaint.

22.     GemCap is therefore entitled to contribution and/or express, implied, and/or equitable indemnification from all Cross-Defendants for all sums which GemCap pays or is adjudged liable to pay through settlement, judgment, or otherwise.

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT AND FIRST
AMENDED CROSS-CLAIM – 151

## JURY DEMAND

GemCap demands a trial by jury of no less than the maximum number of jurors permitted on all causes of action for which a jury trial is allowed by law.

## ATTORNEY FEES

23.     GemCap requests that it be awarded its attorney fees and costs incurred herein pursuant to Idaho Code §§ 12-210(3) and 12-121, and Rules 11 and 54 of the Federal Rules of Civil Procedure.

WHEREFORE GemCap demands judgment for indemnity and/or contribution as appropriate against Cross-Claim Defendants, plus interest, attorneys' fees, and costs.

Dated this 15th day of November, 2017.

ANDERSEN SCHWARTZMAN WOODARD
BRAILSFORD, PLLC


By:    */s/ Alyson A. Foster*
   Alyson A. Foster
   Attorney for the GemCap Lending I, LLC

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT AND FIRST
AMENDED CROSS-CLAIM – 152

**8-ER-1817**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 15th day of October, 2017, I filed the above-referenced document electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| James D LaRue<br><br>jdl@elamburke.com,<br>sd@elamburke.com | Jeffrey A. Thomson<br><br>jat@elamburke.com,<br>nlp@elamburke.com | Loren C. Ipsen<br><br>lci@elamburke.com,<br>nlp@elamburke.com |
|---|---|---|
| Roderick Cyr Bond<br><br>rod@roderickbond.com | Martin J. Martelle<br><br>attorney@martellelaw.com | |

AND I FURTHER CERTIFY that on October 25, 2017, I will serve the document on the following non-CM/ECF Registered Participants in the manner indicated: Via email per party agreement:

| AIA Insurance, Inc.<br><br>jtaylor@cropusainsurance.com | AIA Services Corporation<br><br>jtaylor@cropusainsurance.com |
|---|---|

/s/ Alyson A. Foster
Alyson A. Foster
Counsel for GemCap Lending I, LLC

GEMCAP'S ANSWER TO THIRD AMENDED COMPLAINT AND FIRST AMENDED CROSS-CLAIM – 153

Alyson A. Foster
aaf@aswblaw.com
Idaho Bar No. 9719
ANDERSEN SCHWARTZMAN WOODARD BRAILSFORD PLLC
101 S. Capitol Blvd., Suite 1600
Boise, ID 83702
Telephone: 208.342.4411
Facsimile:  208.342.4455

*Attorneys for GemCap Lending I, LLC*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>   Plaintiff,<br><br> vs.<br><br>HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; AIA SERVICES | Case No. 1:10-cv-00404-CWD<br><br>**GEMCAP LENDING I, LLC'S THIRD-PARTY COMPLAINT** |

GEMCAP'S THIRD-PARTY COMPLAINT – 1

**8-ER-1819**

CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; and CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company,

        Defendants,

   and

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL ASHMAN SR., an individual; JAMES BECK, an individual,

        Defendants/Third-Party Plaintiffs,

   vs.

REED TAYLOR, an individual,

        Third-Party Defendant,

   and

GEMCAP LENDING I, LLC, a Delaware limited liability company,

        Defendant/Third-Party Plaintiff,

   vs.

QUARLES & BRADY, LLP, a Wisconsin limited legal partnership; and CRUMB & MUNDING, P.S., a Washington professional service corporation,

        Third-Party Defendants.

GEMCAP'S THIRD-PARTY COMPLAINT – 2

**8-ER-1820**

1.      This is an action for contribution and equitable/implied indemnity brought by GemCap Lending I, LLC ("GemCap") against Quarles & Brady, LLP ("Quarles & Brady") and Crumb & Munding, P.S. ("Crumb & Munding").

## PARTIES

2.      Plaintiff GemCap is a Delaware limited liability company with headquarters in California. All members of GemCap are domiciled in California.

3.      On information and belief, Quarles & Brady is a limited legal partnership based in Milwaukee, Wisconsin.

4.      On information and belief, Third-Party Defendant Crumb & Munding was a Washington Professional Service Corporation, with its principal place of business in Spokane, Washington, that was administratively dissolved on July 1, 2016. Under the Revised Code of Washington 23B.14.050(2)(e) and other Washington law, a lawsuit may still be brought against Crumb & Munding because it still exists to the extent necessary to wind up its affairs.

5.      GemCap is ignorant of the true names and capacities of third-party defendants sued herein as Roes 1 through 50, inclusive, and therefore sues these third-party defendants by such fictitious names. GemCap will amend this Third-Party Complaint to allege their true names and capacities when ascertained.

6.      Quarles & Brady, Crumb & Munding, and ROES 1-50, will be collectively referred to herein as "Third-Party Defendants."

GEMCAP'S THIRD-PARTY COMPLAINT – 3

**8-ER-1821**

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction under 28 U.S.C. § 1367(a) because GemCap's third-party claims are so related to Plaintiff's claims that it forms part of the same case or controversy under Article III of the U.S. Constitution.

8.     Venue is proper in this district under the doctrine of ancillary venue.

9.     Venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this district under 28 U.S.C. § 1391(b)(2).

## BACKGROUND

10.     In his Third Amended Complaint, Plaintiff Dale Miesen ("Miesen" or "Plaintiff"), purportedly derivatively for AIA Services Corporation and AIA Insurance, Inc. ("AIA Entities"), brings a claim against GemCap for aiding and abetting breach of fiduciary duty, and a claim for statutory liability under Idaho Code § 30-29-304. A true and correct copy of the Third Amended Complaint is appended to this Third-Party Complaint as **Exhibit A** and is incorporated as if fully set forth herein.

**Guarantees and Settlement Agreement**

11.     On or about November 23, 2011, GemCap entered into a Loan and Security Agreement with borrowers Crop USA Insurance Agency, Inc. and Crop USA Insurance Services, Inc. (collectively, "Crop USA") in connection with a $5,000,000 revolving loan (the "Loan"). As part of the Loan, Crop USA provided to GemCap a continuing guarantee executed by R. John Taylor ("John Taylor") on behalf of the AIA Entities.

12.     As a condition precedent to the Loan, the Loan and Security Agreement

GEMCAP'S THIRD-PARTY COMPLAINT – 4

required CropUSA to provide GemCap with a written legal opinion from Crop USA's counsel. Crop USA's attorneys, Quarles & Brady, provided GemCap with the legal opinion letter. Based on their review of loan documents and certain assumptions made, Quarles & Brady opined that the "execution, delivery and performance by . . . each Guarantor . . . will not . . . "violate any laws, statutes or regulations to which any Loan Party is subject . . . or (c) to our best knowledge, violate, conflict with, or result in a breach of or default under, any agreement or instrument to which any Loan Party [including Guarantors] is a party or by which it is, or any of its properties or assets are, or may be bound . . . ."

13.     GemCap was owed certain duties by Quarles & Brady in connection with these transactions. GemCap relied on Quarles & Brady's assumptions, representations and opinion contained in the legal opinion letter, including with respect to the November 21, 2011 guarantee, in agreeing to proceed with the Loan. To the extent that GemCap is found liable, Quarles & Brady should be held liable as they advised GemCap that the guarantees were duly authorized, and/or failed to disclose to GemCap that the guarantees were not duly authorized.

14.     On or about October 1, 2012, in support of the November 21, 2011 guarantee, GemCap entered a Security Agreement with the AIA Entities.

15.     In July 2013, after Crop USA defaulted on the Loan, GemCap filed a collection action against (among others) the AIA Entities to collect under the guarantees.

16.     In September 2014, GemCap entered a settlement agreement with (among

GEMCAP'S THIRD-PARTY COMPLAINT – 5

others) the AIA Entities.

17.     John Taylor signed the Settlement on behalf of the AIA Entities. John Taylor was represented at that time by the law firm Crumb & Munding.

18.     On information and belief, to the extent it is determined that John Taylor lacked authority (which Miesen alleges but which GemCap denies), Crumb & Munding did not advise John Taylor that he lacked authority to enter that agreement (to the extent he did not have such authority), and did not ensure that the settlement agreement was executed by someone with the authority to bind the AIA Entities.

19.     Based on the settlement agreement, on April 12, 2015, the Court entered an Order Regarding Stipulated Judgment as to Defendants AIA Insurance, Inc. and AIA Services Corporation. A true and correct copy of that Order is attached as **Exhibit B**.

**Third Amended Complaint**

20.     As set forth in the Third Amended Complaint, Miesen bases his claims against GemCap, in whole or in part, on the allegation that the two loan guarantees and the settlement agreement were made in violation of the Amended Articles of Incorporation of AIA Services Corporation ("AIA Amended Articles"). Specifically, Miesen alleges that the AIA Amended Articles barred the AIA Entities from entering certain transactions without the approval of the Series A Shareholder of AIA Services Corporation.

21.     Miesen alleges that, at the times of the guarantees and settlement agreement, Donna Taylor was the Series A Shareholder and that she did not give her

GEMCAP'S THIRD-PARTY COMPLAINT – 6

**8-ER-1824**

8-ER-1825

consent to any of those agreements.

22.    Thus, Miesen concludes/alleges, the agreements must be held unenforceable and that GemCap must pay (unspecified) monetary damages to the AIA Entities.

23.    GemCap denies these claims have any merit. Among other things, GemCap entered each of these agreements with the understanding and assurances that  John Taylor, who signed the agreements for the AIA Entities, had the authority to enter those agreement son the AIA Entities' behalves.

24.    If, however, a judgment or finding is entered against GemCap that Donna Taylor's approval was required and not given for those agreements, then any liability of GemCap should be shared by or shifted to Crumb & Munding and/or Quarles & Brady.

### COUNT ONE – CONTRIBUTION/IMPLIED IMDENMINTY
### (Quarles & Brady)

25.    GemCap realleges the prior paragraphs as if fully set forth herein.

26.    In Count 2 of the Third Amended Complaint, Miesen alleges that GemCap aided and abetted the AIA Entities and others in their breaches of fiduciary duties, and seeks an award of monetary damages. In Count 7, Miesen seeks a declaration that the Guarantees and Settlement Agreement as "illegal" and setting aside/voiding those agreements as well as any other resultant or connected transactions. In Count 8, Miesen seeks a declaration that those agreements and transactions should be set aside as "ultra vires" under I.C. § 30-29-304, as well as an award of monetary damages.  GemCap denies each of these allegations and claims for damages.

GEMCAP'S THIRD-PARTY COMPLAINT – 7

**8-ER-1825**

8-ER-1826

27.     Quarles & Brady owed professional duties to GemCap under California law in connection with that legal opinion. By agreeing to prepare, and by preparing and delivering the legal opinion letter to GemCap, Quarles & Brady assumed a duty of care to GemCap in the research, preparation, and delivery of that letter. Quarles & Brady knew and understood that GemCap intended to rely on its superior knowledge, including the representations contained in the legal opinion letter, in deciding whether to make the Loan. Quarles & Brady knew and understood that the Loan documents required all representations to GemCap to be true, accurate and complete and not misleading.

28.     If it is found that the guarantee was not duly authorized, then Quarles & Brady failed to exercise reasonable care and skill in preparing the legal opinion letter, and in doing so breached its professional duties to GemCap.

29.     At the time GemCap entered the guarantees, it relied on the legal opinion letter of Quarles & Brady. Further, Quarles & Brady knew and understood that such opinion was being relied upon.

30.     If it is found that the guarantees were not duly authorized and that GemCap bears resultant liability, then GemCap was harmed by its justifiable reliance on Quarles & Brady's actions.

31.     In addition, Quarles & Brady owed professional duties to its client, Crop USA, in connection with the Loan, including but not limited to the legal opinion letter. If it is found that the guarantee was not duly authorized, then Quarles & Brady failed to exercise reasonable care and skill in preparing the legal opinion letter and representing

GEMCAP'S THIRD-PARTY COMPLAINT – 8

**8-ER-1826**

Crop USA, and in doing so breached its professional duties to Crop USA.

32. Accordingly, if GemCap is found liable for monetary damages as a result of a finding that Taylor did not have the authority to bind the AIA Entities to the guarantees, any such damages were caused primarily or wholly by the conduct of Quarles & Brady. Accordingly, there is an implied/equitable relationship between GemCap and Quarles & Brady under Idaho law.

33. If GemCap is found liable for monetary damages as a result of a finding that Taylor did not have the authority to bind the AIA Entities to the guarantees, those damages should be borne by Quarles & Brady.

### COUNT TWO – CONTRIBUTION/IMPLIED IMDENMINTY
### (Crumb & Munding)

34. GemCap realleges the prior paragraphs as if fully set forth herein.

35. In Count 2 of the Third Amended Complaint, Miesen alleges that GemCap aided and abetted the AIA Entities and others in their breaches of fiduciary duties, and seeks an award of monetary damages. In Count 7, Miesen seeks a declaration that the Guarantees and Settlement Agreement as "illegal" and setting aside/voiding those agreements as well as any other resultant or connected transactions. In Count 8, Miesen seeks a declaration that those agreements and transactions should be set aside as "ultra vires" under I.C. § 30-29-304, as well as an award of monetary damages. GemCap denies such allegations and claims for damages.

36. Crumb & Munding owed professional duties to the AIA Entities at the time those entities entered the Settlement Agreement. If it is found that the Settlement

GEMCAP'S THIRD-PARTY COMPLAINT – 9

Agreement was not duly authorized, then Crumb & Munding failed to exercise reasonable care and skill in representing the AIA Entities and in doing so breached its professional duties to those entities.

37. Accordingly, if GemCap is found liable for monetary damages as a result of a finding that Taylor did not have the authority to bind the AIA Entities to the settlement agreement, such damages suffered by the Plaintiff were caused primarily or wholly by the conduct of Crumb & Munding. Accordingly, there is an implied/equitable relationship between GemCap and Crumb & Munding under Idaho law.

38. If GemCap is found liable for monetary damages as a result of a finding that Taylor did not have the authority to bind the AIA Entities to the guarantees, those damages should be borne by Crumb & Munding.

## COUNT THREE – CONTRIBUTION/IMPLIED IMDENMINTY
### (Roes 1-50)

39. GemCap realleges the prior paragraphs as if fully set forth herein.

40. In Count 2 of the Third Amended Complaint, Miesen alleges that GemCap aided and abetted the AIA Entities and others in their breaches of fiduciary duties, and seeks an award of monetary damages. In Count 7, Miesen seeks a declaration that the Guarantees and Settlement Agreement as "illegal" and setting aside/voiding those agreements as well as any other resultant or connected transactions. In Count 8, Miesen seeks a declaration that those agreements and transactions should be set aside as "ultra vires" under I.C. § 30-29-304, as well as an award of monetary damages. GemCap denies such allegations and claims for damages.

GEMCAP'S THIRD-PARTY COMPLAINT – 10

**8-ER-1828**

41.     If GemCap is found liable for monetary damages as a result of a finding that Taylor did not have the authority to bind the AIA Entities to the settlement agreement, such damages suffered by the Plaintiff were caused primarily or wholly by the conduct of each of Roes 1-50. Accordingly, there is an implied/equitable relationship between GemCap and each of Roes 1-50 under Idaho law.

42.     If GemCap is found liable for monetary damages as a result of a finding that Taylor did not have the authority to bind the AIA Entities to the guarantees, those damages should be borne by Roes 1-50.

## JURY DEMAND

43.     GemCap demands a trial by jury of no less than the maximum number of jurors permitted on all causes of action for which a jury trial is allowed by law.

## ATTORNEY FEES

44.     GemCap requests that it be awarded its attorney fees and costs incurred herein pursuant to Idaho Code §§ 12-210(3) and 12-121, and Rules 11 and 54 of the Federal Rules of Civil Procedure.

WHEREFORE GemCap demands judgment for indemnity and/or contribution as appropriate against Third-Party Defendants, plus interest, attorneys' fees, and costs.

Dated this 21st day of November, 2017.

ANDERSEN SCHWARTZMAN WOODARD
BRAILSFORD, PLLC

By:   */s/ Alyson A. Foster*
    Alyson A. Foster
    Attorney for the GemCap Lending I, LLC

GEMCAP'S THIRD-PARTY COMPLAINT – 11

**8-ER-1829**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of November, 2017, I filed the above-referenced document electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| James D LaRue<br><br>jdl@elamburke.com,<br>sd@elamburke.com | Jeffrey A. Thomson<br><br>jat@elamburke.com,<br>nlp@elamburke.com | Loren C. Ipsen<br><br>lci@elamburke.com,<br>nlp@elamburke.com |
|---|---|---|
| Roderick Cyr Bond<br><br>rod@roderickbond.com | Martin J. Martelle<br><br>attorney@martellelaw.com | |

AND I FURTHER CERTIFY that on October 25, 2017, I will serve the document on the following non-CM/ECF Registered Participants in the manner indicated: Via email per party agreement:

| AIA Insurance, Inc.<br><br>jtaylor@cropusainsurance.com | AIA Services Corporation<br><br>jtaylor@cropusainsurance.com |
|---|---|

/s/ Alyson A. Foster

Alyson A. Foster
Counsel for GemCap Lending I, LLC

GEMCAP'S THIRD-PARTY COMPLAINT – 12

**8-ER-1830**

James W. Grow, Jr.
Law Offices of James W. Grow, PLLC
ISB No. 3709
1301 G Street
Lewiston, Idaho 83501
Telephone: (208) 746 5508
Facsimile: (208) 746-6466
E-mail:  growlawoffice@gmail.com

*Attorney for Crossclaim Defendants*
*AIA Insurance, Inc. and AIA Services*
*Corporation*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.; <br><br> Plaintiff, <br><br> v. <br><br> HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company, <br><br> Defendants, <br><br> and | Case No.  1:10-cv-00404-CWD <br><br><br><br> DEFENDANTS: AIA SERVICES CORPORATION AND AIA INSURANCE, INC, ANSWER TO DEFENDANT GEMCAP LENDING I, LLC'S CROSSCLAIM, COUNTER-CROSSCLAIM, AND DEMAND FOR JURY TRIAL |

AIA CROSS-DEFENDANT'S ANSWER TO DEFENDANT GEMCAP'S
CROSSCLAIM - **1**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

Defendants/Third-Party Plaintiffs,

vs.

REED TAYLOR, an individual,

Third-Party Defendant.

Defendants AIA Services Corporation and AIA Insurance, Inc. ("AIA Cross-Defendants") responses to the following *Defendant GemCap Lending I, LLC* ("GemCap") *Crossclaim* (Dkt. 273.)

AIA Cross-Defendants deny all allegations contained in GemCap's Crossclaim except those expressly admitted herein.

**PARTIES**

1.   Answering Paragraph 1, sentence 1, AIA Cross-Defendants deny that GemCap is entitled to any contribution and/or indemnification from AIA Insurance, Inc or AIA Services Corporation. AIA Cross-defendants deny remaining allegations.

2.   In answering Paragraph 2, AIA Cross-Defendants deny all allegations contained therein.

3.   In answering Paragraph 3, AIA Cross-Defendants neither deny or admit the allegations of contained therein, because the AIA Cross-Defendants does not have knowledge of citizenship of GemCap or its members.

AIA CROSS-DEFENDANT'S ANSWER TO DEFENDANT GEMCAP'S CROSSCLAIM - **2**

4.   In answering Paragraph 4, AIA Cross-Defendants admit the allegations contained therein.

5.   In answering Paragraph 5, AIA Cross-Defendants admit the allegations contained therein.

6.   In answering Paragraph 6, AIA Cross-Defendants admit the allegations contained therein.

7.   In answering Paragraph 7, AIA Cross-Defendants admit the allegations contained therein.

8.   In answering Paragraph 8, AIA Cross-Defendants admit the allegations contained therein.

9.   In answering Paragraph 9, no response is necessary as it contains no factual allegations.

10. In answering Paragraph 10, AIA Cross-Defendants admit the allegations contained therein.

11. In answering Paragraph 11, AIA Cross-Defendants admit the allegations contained therein.

12. In answering Paragraph 12, no response is necessary as it contains no factual allegations.

13. In answering Paragraph 13, AIA Cross-Defendants admit the allegations contained therein.

14. In answering Paragraph 14, AIA Cross-Defendants admit the allegations contained therein.

15. In answering Paragraph 15, no response is necessary as it contains no factual allegations directed at the AIA Cross-Defendants.

16. In answering Paragraph 16, AIA Cross-Defendants admit the allegations contained therein.

**JURISDICTION**

17. In answering Paragraph 17, AIA Cross-Defendants deny all allegations contained therein.

18. In answering Paragraph 18, AIA Cross-Defendants deny all allegations contained therein.

19. In answering Paragraph 19, AIA Cross-Defendants deny all allegations contained therein.

**COUNT I – CONTRIBUTION/INDEMNIFICATION**

20. In answering Paragraph 20, AIA Cross-Defendants admit the allegations contained therein.

AIA CROSS-DEFENDANT'S ANSWER TO DEFENDANT GEMCAP'S
CROSSCLAIM - **3**

**8-ER-1833**

21. In answering Paragraph 21, AIA Cross-Defendants admit the allegations contained therein.

22. In answering Paragraph 22, AIA Cross-Defendants deny the allegations contained therein.

23. In answering Paragraph 23, AIA Cross-Defendants deny the allegations contained therein.

24. In answering Paragraph 24, AIA Cross-Defendants deny the allegations contained therein.

## DEMAND FOR JURY TRIAL

In answering GemCap's demand for a jury trial, Cross-Defendants deny the allegations contained therein.

## ATTORNEY'S FEES

25. AIA Cross-Defendants deny all allegations contained in paragraph 25.

## AFFIRMATIVE DEFENSES TO CROSS-CLAIM

Cross-Defendants assert the following affirmative defenses:

1. GemCap's Crossclaim fails to state a claim upon which relief may be granted.

2. GemCap's Crossclaim contains claims that are barred by collateral estoppel/res judicata.

3. GemCap's Crossclaim is barred in part or whole by the doctrine of acquiescence.

4. GemCap's Crossclaim is barred by the Statute of Limitations.

5. GemCap's Crossclaim is barred by the doctrines of waiver, laches, and estoppel.

6. GemCap's claims are barred by assumption of risk.

7. GemCap's claims are barred as it failed to mitigate its damages, if any.

8. GemCap's damages, if any, were caused by its own acts or omissions, by other parties to this lawsuit, or by non-parties, not by any act or omission by the AIA Cross-Defendants.

AIA CROSS-DEFENDANT'S ANSWER TO DEFENDANT GEMCAP'S
CROSSCLAIM - **4**

**8-ER-1834**

9. GemCap's claims are barred by supervening events and/or the proximate cause of others.

10. GemCap's claims are barred by the doctrine of unclean hands.

11. GemCap's claims are barred by the doctrine of *in pari delicto*.

12. If in the event that GemCap is successful on its crossclaim, set-off.

13. AIA Cross-Defendants reserves the right, after relevant discovery has taken place, to amend this answer to add additional affirmative defenses supported by the facts, and a failure to include all such defenses in this Answer does not constitute a waiver of any right to further amend this Answer.

## I. <u>COUNTER-CROSSCLAIM</u>

1. This is a claim for contribution against GemCap Lending I, LLC pursuant to Idaho common law and I.C. § 6-801 *et seq.* AIA Cross-Defendants seek contribution and indemnity, whether express, implied, equitable, or otherwise, for GemCap's proportionate share of liability for claims arising from its conduct in business dealings with AIA.

2. Nothing herein is an admission of wrongdoing by any of the AIA Cross-Defendants or of the veracity of any claims or allegations asserted by Cross-claimant, GemCap.

## II. <u>PARTIES</u>

3. AIA Insurance, Inc is an Idaho corporation

4. AIA Services Corporation is an Idaho corporation.

5. Upon information and belief, GemCap is not an Idaho corporation and states it is a California Limited Liability Company and a citizen of California.

## III. <u>JURISDICTION AND VENUE</u>

AIA CROSS-DEFENDANT'S ANSWER TO DEFENDANT GEMCAP'S CROSSCLAIM - **5**

**8-ER-1835**

6.   This Court has subject-matter jurisdiction over the AIA Cross-Defendants  because they are citizens of Idaho.

7.   This Court has subject-matter jurisdiction over GemCap under 28 U.S.C. §1332 and/or 28 U.S.C. § 1367(a) because the Cross-Defendants' claim is so related to Plaintiff's claims that it forms part of the same case or controversy under Article III of the U.S. Constitution.

8.   This Court has subject-matter jurisdiction over GemCap under 28 U.S.C. §1332 and/or 28 U.S.C. § 1367(a) because the Cross-Defendants' claim is so related to Plaintiff's claims that it forms part of the same case or controversy under Article III of the U.S. Constitution.

9.   This Court has subject-matter jurisdiction over GemCap under 28 U.S.C. §1332 and/or 28 U.S.C. § 1367(a) because the Cross-Defendants' claim is so related to Plaintiff's claims that it forms part of the same case or controversy under Article III of the U.S. Constitution

10. Venue is proper in this district under the doctrine of ancillary venue.

11. Venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this district under 28 U.S.C. § 1391(b)(2)

12.   The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

### IV.   COUNT I – CONTRIBUTION/INDEMNIFICATION

13.   GemCap and  the  Cross-Defendants,  other than the AIA Cross-defendants, have been named as defendants in the Third Amended Complaint filed by Plaintiff.

14.   The Cross-Defendants have denied all wrongdoing alleged against them by the Plaintiff.

AIA CROSS-DEFENDANT'S ANSWER TO DEFENDANT GEMCAP'S
CROSSCLAIM - **6**

15. If the Cross-Defendants are found liable to Plaintiff, either through judgment, settlement, or otherwise, then its liability is caused by the acts or omissions of GemCap as alleged in the Third Amended Complaint and Third-Party Complaint.

16. AIA Cross-Defendants are therefore entitled to contribution and/or express, implied, and/or equitable indemnification from GemCap for all sums which Cross-Defendants pay or is adjudged liable to pay through settlement, judgment, or otherwise.

## V.   DEMAND FOR JURY TRIAL

AIA Cross-Defendant's hereby demand a trial by jury of no less that the maximum number of jurors permitted on all causes of action for which a jury is allowed by law.

## AIA CROSS-DEFENDANT'S PRAYER FOR RELIEF

Wherefore, AIA Cross-Defendants, pray for the following relief:

17. GemCap's Crossclaim against the AIA Cross-Defendants be dismissed with prejudice;

18. AIA Cross-Defendant's be awarded attorney's fees and costs incurred in defending against GemCap's Crossclaim against them under Rules 11 and 54 of the Federal Rules of Civil Procedure.

19. The Court order further relief as may be requested or finds just.

## ATTORNEY FEES

AIA CROSS-DEFENDANT'S ANSWER TO DEFENDANT GEMCAP'S
CROSSCLAIM - 7

20.    AIA Cross-Defendants request that it be awarded their attorney fees and costs incurred herein pursuant to Idaho Code §§ 12-210(3) and 12-121, and Rules 11 and 54 of the Federal Rules of Civil Procedure.

WHEREFORE AIA Cross-Defendants demand judgment for indemnity and/or contribution as appropriate against Gem-Cap, plus interest, attorneys' fees, and costs.


DATED: December 4, 2017


_/s/ James W. Grow_
James W. Grow
Attorney


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 4, 2017 I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Roderick Cyr Bond:    rod@roderickbond.com

James D LaRue:    jdl@elamburke.com

Jeffrey A Thomson:    jat@elamburke.com

Loren C Ipsen:    lci@elamburke.com

Martin J. Martelle:    attorney@martellelaw.com


AIA CROSS-DEFENDANT'S ANSWER TO DEFENDANT GEMCAP'S CROSSCLAIM - **8**

**8-ER-1838**

Vanessa Ann Mooney:    vanessa@martellelaw.com

Alyson Anne Foster:   aaf@aswblaw.com


_/s/ James W. Grow_____
James W. Grow
Attorney


AIA CROSS-DEFENDANT'S ANSWER TO DEFENDANT GEMCAP'S
CROSSCLAIM - **9**

**8-ER-1839**

JAMES W. GROW, JR.
LAW OFFICE OF JAMES W. GROW, JR., PLLC
1301 G Street
Lewiston, Idaho   83501
(208) 746 5508  Office
(208) 746-6466  Facsimile
E-mail:  growlawoffice@gmail.com
Idaho State Bar No. 3709

*Attorney for Defendants AIA Services
Corporation and AIA Insurance, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>v.<br><br>HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants, | Case No.  1:10-cv-00404-DCN<br><br>DEFENDANTS AIA SERVICES CORPORATION AND AIA INSURANCE, INC.'S ANSWER TO THIRD AMENDED COMPLAINT [DOC. 211] |

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD
AMENDED COMPLAINT [DOC. 211]

Page 1 of 35

QUARLES & BRADY, LLP, a Wisconsin Limited Legal Partnership; and CRUMB & MUNDING, P.S., a Washington Professional Service Corporation,

    Third-Party Defendants,

 and,

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

    Defendants/Third-Party Plaintiffs,

v.

REED TAYLOR, an individual,

    Third-Party Defendant.

Defendants AIA Services Corporation and AIA Insurance, Inc. (collectively "**Defendants**"), through their undersigned counsel, answer the Third Amended Complaint as follows:

Defendants are not a party to any of the direct claims of the Complaint. Defendants are merely a nominal party to the derivative claims, and the Complaint does not allege any acts or omissions giving rise to liability against Defendants. In addition to such general denials, the Defendants submit this answer for the purpose of articulating and preserving

DEFENDANTS AIA SERVICES CORPORATION AND AIA INSURANCE, INC. ANSWER TO THIRD AMENDED COMPLAINT [DOC. 211]

Page 2 of 35

their position regarding matters on which a nominal party in a shareholder derivative action is entitled to be heard; and

All allegations not specifically and expressly admitted are denied. In answering the allegations contained in the Third Amended Complaint, Defendants do not intend to speak for, or to affirm or deny the validity of allegations directed toward the conduct of, any other parties.

Defendants, AIA SERVICES CORPORATION and AIA INSURANCE, INC., answer specific allegations 1 – 244 as follows:

1.     Defendants admit Paragraph 1 of the Third Amended Complaint.

2.     Regarding Paragraph 2, Defendants admit only that personal jurisdiction exists, but deny the remainder of Paragraph 2.

3.     Regarding Paragraph 3, Defendants admit only that venue is proper, but deny the remainder of Paragraph 3.

4.     Regarding Paragraph 4, Defendants are without sufficient knowledge to form a belief as to Plaintiff's domicile. Defendants admit that Plaintiff is a common shareholder of AIA Services Corporation ("**AIA Services**"). Defendants deny the remainder of Paragraph 4.

5.     Paragraph 5 states no allegations requiring a response. To the extent a response is required, Defendants deny Paragraph 5.

6.     Defendants admit Paragraph 6.

7.     Defendants admit Paragraph 7.

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD                    Page 3 of 35
AMENDED COMPLAINT [DOC. 211]

8.     Paragraph 8 states no allegations requiring a response. To the extent a response is required, Defendants deny Paragraph 8.

9.     Defendants admit Paragraph 9.

10.    Defendants admit Paragraph 10.

11.    Paragraph 11 states no allegations requiring a response. To the extent a response is required, Defendants deny Paragraph 11.

12.    Regarding Paragraph 12, Defendants admit that R. John Taylor ("**John Taylor**") is a resident of Lewiston; that he serves and previously has served as president and as a director for AIA Services Corporation, AIA Insurance, Inc. ("**AIA Insurance**"), and Crop USA; and that he is a common shareholder of AIA Services and Crop USA. Defendants deny the remainder of Paragraph 12.

13.    Regarding Paragraph 13, Defendants admit that Mr. Beck is a resident of Minnesota; that he has served as a director of AIA Services and AIA Insurance; he has been a shareholder of AIA Services; and that he has been a common shareholder of Crop USA. Defendants deny the remainder of Paragraph 13.

14.    Regarding Paragraph 14, Defendants admit that Mr. Cashman is a resident of the state of Minnesota; that he has served as a director of AIA Services; that he has been a shareholder of AIA Services; and has been a common shareholder of Crop USA.  Defendants deny the remainder of Paragraph 14.

15.    Regarding Paragraph 15, Defendants admit that Ms. Henderson is a resident of the state of Washington; that she has served as a director of AIA Services and AIA

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD            Page 4 of 35
AMENDED COMPLAINT [DOC. 211]

Insurance.   Defendants deny that Ms. Henderson has ever been a shareholder of AIA Services and, further, deny the remainder of Paragraph 15.

16.     Regarding Paragraph 16, Defendants admit that Ms. Duclos has served as secretary of AIA Services, AIA Insurance, and Crop USA; and that she has served as a director of AIA Services, AIA Insurance, and Crop USA.  Defendants deny the remainder of Paragraph 16.

17.     Defendants deny Paragraph 17.

18.     Regarding Paragraph 18, Defendants admit that Mr. Babbitt has represented AIA Services and AIA Insurance.  Defendants lack sufficient knowledge to form a belief as to the remainder of Paragraph 18.

19.     Regarding Paragraph 19, Defendants admit that Mr. Riley is a resident of the state of Idaho and has represented AIA Services, AIA Insurance, and Crop USA.  Defendants lack sufficient knowledge to form a belief as to the remainder of Paragraph 19.

20.     Regarding Paragraph 20, Defendants admit that Mr. Ashby is a resident of the state of Idaho and has represented AIA Services and AIA Insurance.  Defendants lack sufficient knowledge to form a belief as to the remainder of Paragraph 20.

21.     Regarding Paragraph 21, Defendants admit that Hawley Troxell Ennis & Hawley, LLP is an Idaho limited liability company. Defendants lack sufficient knowledge to form a belief as to the remainder of Paragraph 21.

22.     Defendants lack sufficient knowledge to form a belief as to Paragraph 22.

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD          Page 5 of 35
AMENDED COMPLAINT [DOC. 211]

23.    Regarding Paragraph 23, Defendants admit that Defendant, GemCap Lending I, LLC ("**GemCap**") is a Delaware limited liability company. Defendants lack sufficient knowledge to form a belief as to the remainder of Paragraph 23.

24.    Regarding Paragraph 24, Defendants admit that Donna Taylor is and has been a Series A Preferred Shareholder of AIA Services.  Defendants deny the remainder of Paragraph 24.

25.    Regarding Paragraph 25, Defendants admit that AIA Services was formed in 1983 and deny the remainder of Paragraph 25.

26.    Regarding Paragraph 26, Defendants admit only that AIA Services had the right to market health insurance to agricultural association members.  Defendants deny the remainder of Paragraph 26.

27.    Regarding Paragraph 27, Defendants admit that Donna Taylor and Reed Taylor were issued Series A Preferred Shares in AIA Services in 1987 and that Donna Taylor received 200,000 shares in 1988.  Defendants deny the remainder of Paragraph 27.

28.    Regarding Paragraph 28, the allegations are too vague for Defendants to form a belief.  To the extent a response is required, Defendants admit only that the AIA Services' articles of incorporation and amendments speak for themselves and deny the remainder of Paragraph 28.

29.    Regarding Paragraph 29, Defendants admit only that all AIA Services' articles of incorporation and amendments thereto speak for themselves and deny the remainder of Paragraph 29.

30.    Defendants deny Paragraph 30.

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD                    Page 6 of 35
AMENDED COMPLAINT [DOC. 211]

31.    Defendants deny Paragraph 31.

32.    Defendants deny Paragraph 32.

33.    Regarding Paragraph 33, Defendants admit that Mr. Beck and Mr. Cashman acquired Series C Preferred Shares in AIA Services.  Defendants deny the remainder of Paragraph 33.

34.    Regarding Paragraph 34, the allegations are too vague for Defendants to form a belief.  To the extent a response is required, Defendants admit only that the AIA Services articles of incorporation and amendments speak for themselves and deny the remainder of Paragraph 34.

35.    Regarding Paragraph 35, Defendants lack sufficient knowledge to form a belief as to the knowledge of the Hawley Troxell Defendants. Defendants admit only that the AIA Services articles of incorporation and amendments speak for themselves and deny the remainder of Paragraph 35.

36.    Regarding Paragraph 36, Defendants admit only that John Taylor was the majority shareholder following the redemption of Reed Taylor's common shares. Defendants admit that Mr. Beck and Mr. Cashman attended board and shareholder meetings for AIA Services in person and by way of telephone. Defendants deny the remainder of Paragraph 36.

37.    Regarding Paragraph 37, Defendants admit only that John Taylor entered into an Executive Officer's Agreement with AIA Services and that the document speaks for itself. To the extent that the claims are against Defendants, Defendants deny the remainder.

38.    Defendants deny Paragraph 38.

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD                    Page 7 of 35
AMENDED COMPLAINT [DOC. 211]

39.    Regarding Paragraph 39, Defendants admit only that AIA Insurance became a wholly-owned subsidiary of AIA Services in 1995. To the extent that the claims are against Defendants, Defendants deny the remainder.

40.    Regarding Paragraph 40, Defendants admit only that AIA Insurance has been a wholly-owned subsidiary of AIA Services since 1995.  Defendants deny the remainder of Paragraph 40.

41.    Regarding Paragraph 41, Defendants lack sufficient knowledge to form a belief.

42.    Regarding Paragraph 42, Defendants admit only that the Director Defendants have served at various times on the board of directors for AIA Services, AIA Insurance, and/or Crop USA, and that John Taylor has served as President of AIA Services and Ms. Duclos has served as Secretary.  Defendants deny the remainder of Paragraph 42.

43.    Regarding Paragraph 43, Defendants admit only that certain of the Director Defendants have served on an advisory board for Crop USA at various times from 1999 to present, and that meetings of the advisory board were conducted in person and via telephone in Idaho.  Defendants deny the remainder of Paragraph 43.

44.    Defendants deny Paragraph 44.

45.    Regarding Paragraph 45, Defendants admit the first and second sentence. Regarding the third sentence, Defendants admit only that the AIA Services board of directors discussed selling crop insurance.  Defendants deny the remainder of Paragraph 45.

46.    Defendants deny Paragraph 46.

47.     Regarding Paragraph 47, any minutes from a January 11, 2000, meeting of the shareholders of Crop USA f/k/a AIA Crop Insurance, Inc., speak for themselves. Defendants deny the remainder of Paragraph 47.

48.     Defendants deny Paragraph 48.

49.     Regarding Paragraph 49, Defendants admit only that AIA Crop Insurance, Inc. changed its name to Crop USA Insurance Agency, Inc.  Defendants deny the remainder of Paragraph 49.

50.     Defendants deny Paragraph 50.

51.     Regarding Paragraph 51, Defendants lack sufficient knowledge to form a belief as to the second sentence. Defendants deny the remainder of Paragraph 51.

52.     Regarding Paragraph 52, Defendants admit only that the meeting minutes for the Crop USA shareholder meeting held on January 10, 2001, speak for themselves. Defendants deny the remainder of Paragraph 52.

53.     Regarding Paragraph 53, Defendants respond only that the meeting minutes for the Crop USA shareholder meeting held on January 10, 2001, speak for themselves. Defendants deny the remainder of Paragraph 53.

54.     Defendants deny Paragraph 54.

55.     Defendants deny Paragraph 55.

56.     To the extent that the claims are against Defendants, Defendants deny Paragraph 56.

57.     To the extent that the claims are against Defendants, Defendants deny Paragraph 57.

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD                      Page 9 of 35
AMENDED COMPLAINT [DOC. 211]

58.     Regarding Paragraph 58, Defendants respond that the January 10, 2001, meeting minutes speak for themselves.  Defendants deny the remainder of Paragraph 58.

59.     Regarding Paragraph 59, Defendants respond that the January 10, 2001, meeting minutes speak for themselves.  To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 59.

60.     To the extent that the claims are against Defendants, Defendants deny Paragraph 60.

61.     To the extent that the claims are against Defendants, Defendants deny Paragraph 61.

62.     Regarding Paragraph 62, Defendants lack sufficient knowledge to form a belief.

63.     Regarding Paragraph 63, Defendants lack sufficient knowledge to form a belief.

64.     Regarding Paragraph 64, Defendants lack sufficient knowledge to form a belief.

65.     Regarding Paragraph 65, Defendants lack sufficient knowledge to form a belief.

66.     Defendants deny Paragraph 66.

67.     Defendants deny Paragraph 67.

68.     Regarding Paragraph 68, Defendants admit only that Mr. Beck, Mr. Cashman, and John Taylor have served on the Crop USA advisory board. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 68.

69.     Regarding Paragraph 69, Defendants lack sufficient knowledge to form a belief.

70.     Defendants deny Paragraph 70.

71.     Defendants lack sufficient knowledge to form a belief to Paragraph 71.

72.     Defendants deny Paragraph 72.

73.      Defendants deny Paragraph 73.

74.     Defendants deny Paragraph 74.

75.     Regarding Paragraph 75, Defendants admit only that AIA Insurance, Inc. received a payment of $1,510,693.00 from Trustmark and that the funds were deposited into an account.  Defendants deny the remainder of Paragraph 75.

76.     Defendants deny Paragraph 76.

77.     To the extent that the claims are against Defendants, Defendants deny Paragraph 77.

78.     Regarding Paragraph 78, Defendants admit only that a Consent in Lieu of Meeting, dated August 26, 2004, was created.  Defendants deny the remainder of Paragraph 78.

79.     Defendants deny Paragraph 79.

80.     Defendants deny Paragraph 80.

81.     Defendants deny Paragraph 81.

82.     Regarding Paragraph 82, Defendants admit only that a Consent in Lieu of Meeting, dated August 26, 2004, was created.  Defendants deny the remainder of Paragraph 82.

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD                Page 11 of 35
AMENDED COMPLAINT [DOC. 211]

83.     Regarding Paragraph 83, Defendants lack sufficient knowledge to form a belief.

84.     Regarding Paragraph 84, Defendants lack sufficient knowledge to form a belief.

85.     Regarding Paragraph 85, Defendants lack sufficient knowledge to form a belief.

86.     Regarding Paragraph 86, Defendants admit only that the February 16, 2005, email speaks for itself. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 86.

87.     To the extent that the claims are against Defendants, Defendants deny Paragraph 87.

88.     To the extent that the claims are against Defendants, Defendants deny Paragraph 88.

89.     To the extent that the claims are against Defendants, Defendants deny Paragraph 89.

90.     Defendants deny Paragraph 90.

91.     To the extent that the claims are against Defendants, Defendants deny Paragraph 91.

92.     To the extent that the claims are against Defendants, Defendants deny Paragraph 92.

93.     To the extent that the claims are against Defendants, Defendants deny Paragraph 93.

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD        Page 12 of 35
AMENDED COMPLAINT [DOC. 211]

94.     Regarding Paragraph 94, Defendants admit only that AIA Services acquired an indebtedness for approximately $1.5 million for the amount owed by Washington Bank Properties, secured by a mortgage on the real property where AIA Services' principal office was located, and that such indebtedness was held in the name of AIA Services.  Defendants lack sufficient knowledge to form a belief as to the involvement of the Hawley Troxell Defendants as alleged in Paragraph 94. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 94.

95.     To the extent that the claims are against Defendants, Defendants deny the first sentence of Paragraph 95.  Defendants lack sufficient knowledge to form a belief as to the second sentence.

96.     With regard to Paragraph 96, Defendants admit that Hawley Troxell drafted an opinion letter regarding a line of credit to Crop USA. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 96.

97.     To the extent that the claims are against Defendants, Defendants deny Paragraph 97.

98.     Regarding Paragraph 98, Defendants lack sufficient knowledge to form a belief as to the first sentence. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 98.

99.     Regarding Paragraph 99, Defendants admit only that Defendant, Hawley Troxell, represented AIA Services and AIA Insurance in the *Taylor v. AIA Services, et al.* litigation.  Defendants lack sufficient knowledge to form a belief as to the remainder of Paragraph 99.

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD                    Page 13 of 35
AMENDED COMPLAINT [DOC. 211]

**8-ER-1852**

100.     Regarding Paragraph 100, Defendants lack sufficient knowledge to form belief.

101.     To the extent that the claims are against Defendants, Defendants deny Paragraph 101.

102.     Regarding Paragraph 102, Defendants admit only that Ms. Henderson and Mr. Beck were appointed to the boards of directors for AIA Services and AIA Insurance and that the boards of directors for AIA Services and AIA Insurance approved the payment of $5,000 per quarter as well as the payment of common stock. Defendants further admit that Mr. Beck and Ms. Henderson attended AIA Services and AIA Insurance board meetings in person or via telephone. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 102.

103.     Regarding Paragraph 103, Defendants admit only that certain tolling agreements in connection with litigation involving AIA Services and/or AIA Insurance have been entered into.  Defendants lack sufficient knowledge to form a belief as to the remainder of Paragraph 103.

104.     Regarding Paragraph 104, Defendants lack sufficient knowledge to form a belief.

105.     To the extent that the claims are against Defendants, Defendants deny Paragraph 105.

106.     Regarding Paragraph 106, Defendants lack sufficient knowledge to form a belief.

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD              Page 14 of 35
AMENDED COMPLAINT [DOC. 211]

107. To the extent that the claims are against Defendants, Defendants deny Paragraph 107.

108. Regarding Paragraph 108, as to the first sentence, Defendants admit only that Reed Taylor refused to accept settlement offers stemming from the *Taylor v. AIA Services, et al.* litigation. To the extent that the claims are against Defendants, Defendants deny the remainder of the first sentence and the remainder of Paragraph 108.

109. To the extent that the claims are against Defendants, Defendants deny Paragraph 109. To the extent further answer is required, Defendants deny Paragraph 109.

110. To the extent that the claims are against Defendants, Defendants deny Paragraph 110.

111. Regarding Paragraph 111, Defendants lack sufficient knowledge to form a belief.

112. Regarding Paragraph 112, Defendants admit only that AIA Services incurred over $1 million defending unfounded lawsuits pursued by Reed Taylor. Defendants deny the remainder of Paragraph 112.

113. Defendants deny Paragraph 113.

114. Regarding Paragraph 114, Defendants deny that AIA has been decimated because of the acts of the Director Defendants. Defendants lack sufficient knowledge to form a belief as to the remainder.

115. To the extent that the claims are against Defendants, Defendants deny Paragraph 115.

116.     To the extent that the claims are against Defendants, Defendants deny Paragraph 116.

117.     Defendants deny Paragraph 117.

118.     Defendants deny Paragraph 118.

119.     Regarding Paragraph 119, Defendants admit only that unfounded litigation brought by Reed Taylor, Donna Taylor, and others has forced Defendants to spend over $2,000,000 in legal fees.  As to the remainder of Paragraph 119, Defendants lack sufficient knowledge to form a belief.

120.      To the extent that the claims are against Defendants, Defendants deny Paragraph 120.

121.     Regarding Paragraph 121, Defendants admit only that Donna Taylor sued AIA Services in December, 2009 and that her efforts to have unqualified representatives placed on the board of directors were unsuccessful. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 121.

122.     Regarding Paragraph 122, Defendants lack sufficient knowledge to form a belief.

123.     Regarding Paragraph 123, Defendants admit the first sentence but deny the second sentence.

124.     To the extent that the claims are against Defendants, Defendants deny Paragraph 124.

125.     Regarding Paragraph 125, Defendants admit only that the AIA Services ESOP was terminated in or about March, 2012, and that shareholders were compensated. To

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD
AMENDED COMPLAINT [DOC. 211]

Page 16 of 35

the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 125.

126. To the extent that the claims are against Defendants, Defendants deny Paragraph 126.

127. Regarding Paragraph 127, Defendants admit only that John Taylor entered into an agreement with Mr. Beck and Mr. Cashman to buy their common shares in AIA Services in or about March, 2012. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 127.

128. Defendants deny Paragraph 128.

129. Regarding Paragraph 129, Defendants admit only that some shareholders objected to the proposed reverse stock split.  Defendants deny the remainder of Paragraph 129.

130. Regarding Paragraph 130, Defendants admit only that the court documents filed in the lawsuit relating to the reverse stock split speak for themselves. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 130.

131. Regarding Paragraph 131, Defendants lack sufficient knowledge to form a belief as to the final sentence. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 131.

132. To the extent that the claims are against Defendants, Defendants deny Paragraph 132.

133. To the extent that the claims are against Defendants, Defendants deny Paragraph 133.

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD           Page 17 of 35
AMENDED COMPLAINT [DOC. 211]

134.    To the extent that the claims are against Defendants, Defendants deny Paragraph 134.

135.    Regarding Paragraph 135, Defendants admit only that Crop USA obtained a line of credit with GemCap for up to $10 million between 2011 and 2013. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 135.

136.    Regarding Paragraph 136, Defendants admit only that AIA Services guaranteed $1,113,930.00 of the GemCap loan to Crop USA and that such guarantee was expanded to include the rest of the line of credit. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 136.

137.    Regarding Paragraph 137, Defendants lack sufficient knowledge to form a belief.

138.    Regarding Paragraph 138, Defendants lack sufficient knowledge to form a belief as to the first two sentences. Defendants deny the remainder of Paragraph 138.

139.    Regarding Paragraph 139, Defendants deny the first sentence but lack sufficient knowledge to form a belief as to the second sentence. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 139.

140.    Regarding Paragraph 140, Defendants admit only that guarantees relating to the GemCap loan were signed by John Taylor as president of AIA Services and AIA Insurance. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 140.

141.    Regarding Paragraph 141, Defendants admit only that GemCap filed a UCC Financing Statement on or about December 20, 2012, and that such Financing Statement

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD                    Page 18 of 35
AMENDED COMPLAINT [DOC. 211]

speaks for itself. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 141.

142. Defendants deny Paragraph 142.

143. Regarding Paragraph 143, Defendants admit only that GemCap audited AIA Services. Defendants lack sufficient knowledge to form a belief as to information known by or discovered by GemCap. Defendants deny the remainder of Paragraph 143.

144. Regarding Paragraph 144, Defendants admit only that GemCap sent Crop USA and other parties a notice of default dated July 16, 2013, and that GemCap sent Crop USA a notice of default dated July 29, 2013, but that such documents speak for themselves. Defendants deny the remainder of Paragraph 144.

145. To the extent that the claims are against Defendants, Defendants deny Paragraph 145.

146. Regarding Paragraph 146, Defendants admit only that GemCap filed a lawsuit against Crop USA and the Defendants, and that the court documents associated with such litigation speak for themselves. Defendants deny the remainder of Paragraph 146.

147. Regarding Paragraph 147, Defendants lack sufficient knowledge to form a belief.

148. Regarding Paragraph 148, Defendants admit that the parties to the GemCap litigation in California entered into a Settlement Agreement, the terms of which are confidential. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 148.

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD          Page 19 of 35
AMENDED COMPLAINT [DOC. 211]

149.    Regarding Paragraph 149, Defendants respond that the terms of the Settlement Agreement are confidential.  To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 149.

150.    Regarding Paragraph 150, Defendants respond that the terms of the Settlement Agreement are confidential.  To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 150.

151.    Defendants deny Paragraph 151.

152.    Regarding Paragraph 152, Defendants respond that the AIA Services Consolidated Financial Statement for 2015 speaks for itself.  To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 152.

153.    Regarding Paragraph 153, Defendants respond that the AIA Services Consolidated Financial Statement for 2015 speaks for itself. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 153.

154.    To the extent that the claims are against Defendants, Defendants deny Paragraph 154.

155.    Regarding Paragraph 155, Defendants lack sufficient knowledge to form a belief.

156.    Regarding Paragraph 156, Defendants lack sufficient knowledge to form a belief as to the first sentence. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 156.

157.    Regarding Paragraph 157, Defendants admit only that John Taylor gratuitously transferred real property to AIA Services with a book value of $820,668, with

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD                  Page 20 of 35
AMENDED COMPLAINT [DOC. 211]

associated encumbrances of $393,863. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 157.

158. To the extent that the claims are against Defendants, Defendants deny Paragraph 158.

159. Regarding Paragraph 159, Defendants respond that the AIA Services Consolidated Financial Statement for 2015 speaks for itself. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 159.

160. Regarding Paragraph 160, Defendants admit only that John Taylor purchased 7,500 Series A Preferred Shares in 2016. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 160.

161. To the extent that the claims are against Defendants, Defendants deny Paragraph 161.

162. Regarding Paragraph 162, Defendants admit only that the AIA Services and AIA Insurance Bylaws have been amended to permit attorney fees in certain intracompany suits, and that such amendments speak for themselves. Defendants deny the remainder of Paragraph 162.

163. Regarding Paragraph 163, Defendants admit only that Plaintiff's counsel has pursued unsuccessful litigation against AIA Services for which AIA Services has been forced to spend over $400,000 on attorney fees. Defendants deny the remainder of Paragraph 163.

164. To the extent that the claims are against Defendants, Defendants deny Paragraph 164.

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD          Page 21 of 35
AMENDED COMPLAINT [DOC. 211]

165. Regarding Paragraph 165, Defendants admit only that John Taylor has been CEO, president, and/or director of AIA Services, AIA Insurance, and/or Crop USA, and that John Taylor has been a shareholder of AIA Services. Defendants deny the remainder of Paragraph 165.

166. To the extent that the claims are against Defendants, Defendants deny Paragraph 166.

167. Regarding Paragraph 167, Defendants admit only that certain of the Director Defendants have been shareholders of Crop USA and/or officers of AIA Services. To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 167.

168. To the extent that the claims are against Defendants, Defendants deny Paragraph 168.

169. Regarding Paragraph 169, Defendants lack sufficient knowledge to form a belief.

170. Paragraph 170 contains legal conclusions to which no response is necessary. To the extent a response to Paragraph 170 is required and to extent that the claims are against Defendants, Defendants deny Paragraph 170.

171. Regarding Paragraph 171, Defendants admit only that Plaintiff has been a common shareholder of AIA Services. Defendants deny the remainder of Paragraph 171.

172. Regarding Paragraph 172, Defendants admit only that a derivative demand letter dated July 21, 2008, was served upon the boards of directors for AIA Services and AIA Insurance. The remainder of Paragraph 172 contains legal conclusions to which no

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD          Page 22 of 35
AMENDED COMPLAINT [DOC. 211]

response is necessary.   To the extent a response to the remainder of Paragraph 172 is required, Defendants deny.

173.    Regarding Paragraph 173, Defendants admit only that the court documents filed in the *Taylor v. AIA Services, et al.* litigation speak for themselves.   To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 173.

174.    Regarding Paragraph 174, Defendants admit only that the court documents filed in the *Taylor v. AIA Services, et al.* litigation speak for themselves. Defendants deny the remainder of Paragraph 174.

175.    Regarding Paragraph 175, Defendants lack sufficient knowledge to form a belief.

176.    Regarding Paragraph 176, Defendants admit only that the court documents filed in the *Taylor v. AIA Services, et al.* litigation speak for themselves. Defendants deny the remainder of Paragraph 176.

177.    Regarding Paragraph 177, Defendants admit only that Plaintiff's counsel sent an email containing various demands to certain attorneys on or about April 3, 2012, and that such email speaks for itself. Defendants lack sufficient knowledge regarding allegations as to knowledge of Mr. Babbitt and Mr. Ashby.   To the extent that the claims are against Defendants, Defendants deny the remainder of Paragraph 177.

178.    Regarding Paragraph 178, Defendants admit only that the boards of directors of AIA Services and AIA Insurance received documents entitled "Shareholder Demand" in July, 2012, but that such documents speak for themselves.   Defendants deny the remainder of Paragraph 178.

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD          Page 23 of 35
AMENDED COMPLAINT [DOC. 211]

179.     Regarding Paragraph 179, Defendants admit only that the boards of directors of AIA Services and AIA Insurance received a letter from Plaintiff's counsel, dated June 13, 2016, but that such letter speaks for itself.  Defendants deny the remainder of Paragraph 179.

180.     Regarding Paragraph 180, Defendants admit only that the boards of directors of AIA Services and AIA Insurance received a letter from Plaintiff's counsel, dated August 23, 2016, and that the boards of directors responded via letter, but that all such documents speak for themselves.  Defendants deny the remainder of Paragraph 180.

181.     Defendants deny Paragraph 181.

182.     Regarding Paragraph 182, Defendants admit only that over ninety days have elapsed since the receipt of the documents referenced in Paragraphs 177–180, but deny the remainder.

183.     Defendants deny Paragraph 183.

184.     Defendants deny Paragraph 184.

185.     Paragraph 185 does not contain any allegations that require a response from the Defendants, but to the extent a response is required, Defendants deny.

186.     Regarding Paragraph 186, no allegations or claims are made against the Defendants and no response is required. To the extent that a response is required, Defendants deny the remainder of Paragraph 186.

187.     Regarding Paragraph 187, Defendants lack sufficient knowledge to form a belief.

188.     To the extent claims are made against Defendants, Defendants deny Paragraph 188.

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD          Page 24 of 35
AMENDED COMPLAINT [DOC. 211]

189.    Regarding Paragraph 189, Defendants lack sufficient knowledge to form a belief.

190.    Defendants deny Paragraph 190.

191.    To the extent claims are made against the Defendants, Defendants deny Paragraph 191.

192.    Paragraph 192 does not contain any allegations that require a response. To the extent a response is required, Defendants deny Paragraph 192.

193.    Paragraph 193, does not contain any allegations against the Defendants, and to the extent a response is required, Defendants deny Paragraph 193.

194.    Defendants deny Paragraph 194.

195.    Paragraph 195 does not contain any allegations that require a response. To the extent a response is required, Defendants deny Paragraph 195.

196.    Regarding Paragraph 196, Defendants admit that the Hawley Troxell Defendants owed duties of care, good faith, and loyalty to AIA Services and AIA Insurance to the extent the Hawley Troxell Defendants were retained as counsel for those entities. Defendants deny the remainder of Paragraph 196.

197.    Regarding Paragraph 197, Defendants lack sufficient knowledge to form a belief.

198.    Regarding Paragraph 198, Defendants lack sufficient knowledge to form a belief.

199.    Regarding Paragraph 199, Defendants lack sufficient knowledge to form a belief.

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD            Page 25 of 35
AMENDED COMPLAINT [DOC. 211]

8-ER-1865

200.     Paragraph 200 does not contain any allegations that require a response. To the extent a response is required, Defendants deny Paragraph 200.

201.     To the extent that these claims are against the Defendants, Defendants deny Paragraph 201.

202.     To the extent that these claims are against the Defendants, Defendants deny Paragraph 202.

203.     Paragraph 203 states only legal conclusions to which no response is required. To the extent a response is required, Defendants deny Paragraph 203.

204.     Regarding Paragraph 204,  the allegations state legal conclusions to which no responses are required. To the extent responses are required, Defendants deny the remainder of Paragraph 204.

205.     To the extent that these claims are against the Defendants, Defendants deny Paragraph 205.

206.     To the extent that these claims are against the Defendants, Defendants deny Paragraph 206.

207.     To the extent that these claims are against the Defendants, Defendants deny Paragraph 207.

208.     To the extent that these claims are against the Defendants, Defendants deny Paragraph 208.

209.     To the extent that these claims are against the Defendants, Defendants deny Paragraph 209.

**8-ER-1865**

210. To the extent that these claims are against the Defendants, Defendants deny Paragraph 210.

211. To the extent that these claims are against the Defendants, Defendants deny Paragraph 211.

212. To the extent that these claims are against the Defendants, Defendants deny Paragraph 212.

213. To the extent that these claims are against the Defendants, Defendants deny Paragraph 213.

214. To the extent that these claims are against the Defendants, Defendants deny Paragraph 214.

215. To the extent that these claims are against the Defendants, Defendants deny Paragraph 215.

216. Paragraph 216 does not contain any allegations that require a response. To the extent a response is required, Defendants deny Paragraph 216.

217. Regarding Paragraph 217, Defendants lack sufficient knowledge to form a belief as to knowledge of other parties. Defendants deny the remainder of Paragraph 217.

218. To the extent that these claims are against the Defendants, Defendants deny Paragraph 218.

219. To the extent that these claims are against the Defendants, Defendants deny Paragraph 219.

220. Paragraph 220 does not contain any allegations that require a response. To the extent a response is required, Defendants deny Paragraph 220.

221.    Regarding Paragraph 221, Defendants admit only that John Taylor and AIA Services entered into an Executive Officer's Agreement, but that such document speaks for itself. To the extent that these claims are against the Defendants, Defendants deny the remainder of Paragraph 221.

222.    To the extent that these claims are against the Defendants, Defendants deny Paragraph 222.

223.    To the extent that these claims are against the Defendants, Defendants deny Paragraph 223.

224.    To the extent that these claims are against the Defendants, Defendants deny Paragraph 224.

225.    Paragraph 225 does not contain any allegations that require a response. To the extent a response is required and to the extent that these claims are against the Defendants,  Defendants deny Paragraph 225.

226.    Paragraph 226 does not contain any allegations that require a response. To the extent a response is required and to  the extent that these claims are against the Defendants, Defendants deny Paragraph 226.

227.    Paragraph 227 does not contain any allegations that require a response. To the extent a response is required and to the extent that these claims are against the Defendants, Defendants deny Paragraph 227.

228.    Paragraph 228 does not contain any allegations that require a response. To the extent a response is required, Defendants deny Paragraph 228.

229.   Paragraph 229 does not contain any allegations that require a response by the Defendants.  To the extent a response is required, Defendants deny Paragraph 229.

230.   Paragraph 230 does not contain any allegations that require a response by the Defendants.  To the extent a response is required, Defendants deny Paragraph 230.

231.   Paragraph 231 does not contain any allegations that require a response by the Defendants.  To the extent a response is required, Defendants deny Paragraph 231.

232.   Regarding Paragraph 232, Defendants admit only that certain Director Defendants have served as directors and/or officers of AIA Services and AIA Insurance. Defendants deny the remainder of Paragraph 232.

233.   To the extent that these claims are against the Defendants, Defendants deny Paragraph 233.

234.   To the extent that these claims are against the Defendants, Defendants deny Paragraph 234.

235.   To the extent that these claims are against the Defendants, Defendants deny Paragraph 235.

236.   To the extent that these claims are against the Defendants, Defendants deny Paragraph 236.

237.   Paragraph 237 does not contain any allegations that require a response. To the extent a response is required, Defendants deny Paragraph 237.

238.   Regarding Paragraph 238, Defendants lack sufficient knowledge to form a belief.

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD                    Page 29 of 35
AMENDED COMPLAINT [DOC. 211]

239.    Regarding Paragraph 239, Defendants lack sufficient knowledge to form a belief.

240.    Paragraph 240 states legal conclusions to which no response is required. To the extent a response is required, Defendants lack sufficient knowledge to form a belief.

241.    Regarding Paragraph 241, Defendants lack sufficient knowledge to form a belief.

242.    Paragraph 242 does not contain any allegations that require a response. To the extent a response is required, Defendants deny Paragraph 242.

243.    To the extent that these claims are against the Defendants, Defendants deny Paragraph 243.

244.    To the extent that these claims are against the Defendants, Defendants deny Paragraph 244.

### JURY DEMAND

This Paragraph does not state any allegations that require a response. To the extent a response is required, Defendants deny.

### PLAINTIFF'S PRAYER FOR RELIEF

This Section does not state any allegations that require a response. To the extent a response is required, Defendants deny that Plaintiff is entitled to any of the relief requested.

<u>**AFFIRMATIVE DEFENSES**</u>

Defendants raise the following affirmative defenses in response to the allegations set forth in the Third Amended Complaint. These defenses are listed without prejudice to Defendants' rights to identify and raise new defenses as information is uncovered.

1. **Deficient Demand Letters.** The Complaint should be dismissed because the Plaintiff failed to provide the Defendants with a demand letter as required in I.C. §§ 30-29-741 and 742.

2. **Statute of Limitations**.

A. *Against Directors and Shareholders.* Claims stated in the Third Amended Complaint against the Director Defendants in their capacity as directors, officers, or shareholders occurring more than 3 years prior to the date upon which the claims were filed, are barred by the statutes of limitations, I.C. §§ 5-218, 5-237;

B. *Against Directors for Unlawful Distributions.* Claims stated in the Third Amended Complaint against the Director Defendants in their capacity as directors relating to unlawful distributions occurring more than 2 years prior to the date upon which the claims were filed, are barred by the statute of limitations, I.C. § 30-29-833 and its predecessors.

C. *Against Director Defendants for Fraud, Constructive Fraud, and Fraudulent Concealment.* Counts IV and V for fraud and fraud-related claims accruing more than 3 years prior to the date upon which the claims were filed, are barred by the statute of limitations, I.C. § 5-218.

DEFENDANTS AIA SERVICES CORPORATION AND AIA INSURANCE, INC. ANSWER TO THIRD AMENDED COMPLAINT [DOC. 211]

Page 31 of 35

D.      *Against Director Defendants for Breach of Written Contract.* Count VI for breach of written contract and Count XI for account stated for claims accruing more than 5 years prior to the date upon which the claims were filed, are barred by the applicable statute of limitations, I.C. § 5-216.

E.      *Against Director Defendants for Breach of Oral Contract.* Count VI for breach of oral contract for claims accruing more than 4 years prior to the date upon which the claims were filed, are barred by the applicable statute of limitations, I.C. § 5-217.

F.      *Against Defendants for Statutory Relief.* Count VIII for relief under the Idaho Code for claims accruing more than 3 or 4 years prior to the date upon which the claims were filed, are barred by the applicable statute of limitations, I.C. §§ 5-218 or -224.

G.      *All Claims.* All claims, whether or not described above, are barred by the applicable statute of limitations and are barred due the failure of the Plaintiff to provide a demand letter required by applicable statutes,   I.C. §§ 30-29-741 or 742.

3.      **Business Judgment Rule.** All decisions made by Defendants in their capacity as fiduciaries, were permitted under the Business Judgment Rule, I.C. §§ 30-29-830-842, and other applicable law.

4.      **Laches.** Plaintiff was, or with reasonable diligence should have been, aware of transactions occurring prior to his filing claims as to those transactions. Plaintiff gave no indication he would attempt to enforce the rights stated in the Third Amended Complaint

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD                    Page 32 of 35
AMENDED COMPLAINT [DOC. 211]

8-ER-1872

and Plaintiff's delay in enforcing his rights has prejudiced Defendants by permitting transactions to continue or to be consummated. Plaintiff's claims are therefore barred by the doctrine of laches.

5. **Exculpation.** Director Defendants are not liable for breach to any shareholder or AIA Services or AIA Insurance by reason of the exculpatory clauses in the Amended and Restated Articles of Incorporation of AIA Services, as amended, the New Restated Bylaws of AIA Services Corporation, as amended, the Articles of Incorporation of AIA Insurance, as amended, the Amended and Restated Bylaws of AIA Insurance, as amended, and by the principles of exculpation under Idaho law.

6. **No Actual Injury.** Plaintiff cannot allege any actual injury because, regardless of the actions of Defendants, AIA Services would be insolvent and incapable of redeeming its shares or issuing dividends or other forms of distribution.

7. **Standing.** Plaintiff lacks standing to pursue any derivative claims against Defendants because AIA Services became insolvent as a result of the repurchase agreements of the common and preferred stock of Reed and Donna Taylor in 1995 and compounded by the subsequent payments to them. Any recovery would inure to the benefit of the company's creditors. Plaintiff also lacks standing to pursue claims that are direct, rather than derivative, because they are personal to other specific shareholders.

8. **Real Party in Interest.** Plaintiff is not the real party in interest; any claims asserted by Plaintiff belong to the creditors of AIA Services.

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD                Page 33 of 35
AMENDED COMPLAINT [DOC. 211]

9.     **Res Judicata.**  Plaintiff's claims have been, or should have been, asserted in other litigation, including without limitation: *Taylor v. AIA Services Corporation, et al,* Nez Perce County Idaho Case No. CV 2007-00208; *Taylor v. Taylor, et al.*, Nez Perce County Idaho Consolidated Case Nos. CV 2008-01150 and CV 2013-01075;  *AIA Services Corporation v. Durant, Miesen,* Nez Perce County Idaho Case No. CV 2012-01483;  and *Durant  v. GemCap Lending I, LLC, et al.*, Nez Perce County Idaho Case No. CV 2014-01444.

10.     **Advice of Advisors.** Plaintiff's claims are barred because Defendants acted in reasonable reliance on the advice of expert advisors, including without limitation legal counsel, accounting and auditing professionals, and other professionals within their areas of expertise.

### ATTORNEY FEES AGAINST PLAINTIFF

The New Restated Bylaws of AIA Services, as amended, effective May 26, 2016, mandate attorney fees against a corporate constituent who alleges direct or derivative claims against another corporate constituent and fails to "obtain a judgment on the merits of a Claim that substantially achieves, in substance and amount, the full remedy sought." Under this provision, the Director Defendants are entitled to an award of their reasonable attorney fees incurred in defending this action because Plaintiff will not prevail on substantially all his claims for relief.  Defendants estimate they have incurred attorney fees of $250,000 thus far in defending this action. Defendants request an award of all attorney fees incurred in defending this action when Plaintiff fails to prevail on substantially all his claims for relief.

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD             Page 34 of 35
AMENDED COMPLAINT [DOC. 211]

## DEFENDANTS' PRAYER FOR RELIEF

WHEREFORE, Defendants pray for relief as follows:

1.     That Plaintiff's Third Amended Complaint be dismissed with prejudice in its entirety and no relief be granted to Plaintiff;

2.     That Defendants be awarded costs and reasonable attorney fees against Plaintiff pursuant to I.C. §§ 12-120(3), 12-121, and the Bylaws of AIA Services;  and

3.     For such other relief as the Court deems just.

DATED April 7, 2018.

LAW OFFICE OF JAMES W. GROW, JR., PLLC

/s/ *James W Grow. Jr.*
James W Grow, Jr.,  ISB No. 3709
Attorney for Defendants AIA Services
Corporation, and AIA Insurance, Inc.

DEFENDANTS AIA SERVICES CORPORATION AND
AIA INSURANCE, INC. ANSWER TO THIRD                    Page 35 of 35
AMENDED COMPLAINT [DOC. 211]

**8-ER-1874**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 7, 2018, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected in the Notice of Electronic Filing:

| | | |
|---|---|---|
| James D LaRue<br>jdl@elamburke.com | Jeffrey A. Thomson<br>jat@elamburke.com | Loren C. Ipsen<br>lci@elamburke.com |
| Martin J. Martelle<br>attorney@martellelaw.com | Vanessa Ann Mooney<br>vanessa@martellelaw.com | Michael Scott Bissell<br>mbissell@campbell-bissell.com |
| Markus W. Louvier<br>mlouvier@ecl-law.com | James B. King<br>jking@ecl-law.com | Jack S Gjording<br>jgjording@gfidaholaw.com<br>cfouser@gfidaholaw.com<br>emulcahy@gflawidaho.com<br>ktonkin@gfidaholaw.com |
| Stephen Lee Adams<br>sadams@gfidaholaw.com | Tyler Scott Waite<br>twaite@campbell-bissell.com | Fanxi Wang<br>fwang@birdmarella.com,<br>mhicks@birdmarella.com<br>mdrooks@birdmarella.com |
| Alyson Anne Foster<br>aaf@aswblaw.com | Roderick C. Bond<br>rod@roderickbond.com | Jaclyn T. Gans<br>jtg@elamburke.com |
| Todd H. Stitt<br>tstitt@mrllp.com | Mark T. Drooks<br>mdrooks@bridmarella.com | |

/s/ *James W. Grow, Jr.*

James W. Grow, Jr. ISB No. 3709

**8-ER-1875**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc., | Case No. 1:10-cv-00404-DCN **MEMORANDUM DECISION AND ORDER** |
| Plaintiff, | |
| vs. | |
| HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; and GEMCAP LENDING I, LLC, a Delaware limited liability company, | |
| Defendants, | |
| and | |
| CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; | |

**MEMORANDUM DECISION AND ORDER – PAGE 1**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL CASHMAN SR., an individual; and JAMES BECK, an individual,

        Defendants/Third-Party Plaintiffs,

vs.

REED TAYLOR, an individual,

        Third-Party Defendant,

and

GEMCAP LENDING I, LLC, a Delaware limited liability company,

        Defendant/Third-Party Plaintiff,

vs.

QUARLES & BRADY, LLP, a Wisconsin limited legal partnership; and CRUMB & MUNDING, P.S., a Washington professional service corporation,

        Third-Party Defendants.

## I. OVERVIEW

This matter comes before the Court on two Motions to Dismiss GemCap Lending

I LLC's ("GemCap") Third-Party Complaint (Dkts. 303, 322) and one Motion for

**MEMORANDUM DECISION AND ORDER – PAGE 2**

Sanctions (Dkt. 362). As explained below the Court finds good cause to GRANT the two Motions to Dismiss and DENY the Motion for Sanctions.

## II. FACTUAL BACKGROUND

### A. The Original Parties and Dispute

This is a shareholder's derivative action, the Court's jurisdiction over which is based upon diversity of citizenship. Plaintiff Dale Miesen is a minority shareholder of Defendant AIA Services Corporation ("AIA"), the alleged wronged corporation.[1]

There were originally two groups of defendants in this action. The first group consists of AIA Services Corporation, AIA Insurance, Inc. (collectively "AIA Entities"), CropUSA Insurance Agency, CropUSA Insurance Services (collectively "CropUSA"), and several controlling shareholders and officers of those entities, namely: R. John Taylor, James Beck, Michael Cashman, Connie Taylor Henderson, and JoLee Duclos[2] (individuals, collectively, "AIA Controlling Defendants"). The second group consists of the law firm Hawley Troxell Ennis & Hawley, LLP, and several of its attorneys who represented the AIA Entities and CropUSA during the events that gave rise to this action, namely: Gary Babbitt, Richard Riles, and John Ashby (collectively "Hawley Troxell Defendants"). GemCap intervened in this action as a defendant in July of 2016. Later, Miesen asserted claims against GemCap in the Third Amended Complaint.

---

[1] Donna Taylor was originally named as a plaintiff in this action. However, the Court dismissed her, in both her personal and representative capacities, because her presence destroyed diversity. *See* Dkt. 178.

[2] JoLee Duclos passed away late last year. *See* Dkt. 316.

MEMORANDUM DECISION AND ORDER – PAGE 3

Miesen and Donna Taylor originally filed this case on August 11, 2010. However, the operative complaint is the Third Amended Complaint, which Miesen filed on April 24, 2017. Dkt. 211. In it, Miesen alleges, among other things, that the AIA Controlling Defendants engaged in fraud and breached their fiduciary duties to the AIA minority shareholders. AIA was formed in 1983. It sold insurance products to members of farmers' and growers' associations and worked with farmers and growers to form trusts and/or related cooperatives. In the late 1990s, the AIA Board of Directors, controlled by the AIA Controlling Defendants, decided to begin selling crop insurance through a wholly-owned subsidiary called CropUSA. Miesen alleges that the AIA Controlling Defendants unlawfully transferred CropUSA from AIA to their own possession. The AIA Controlling Defendants then proceeded to unlawfully fund, subsidize, and operate CropUSA using AIA's assets. Through their operation of CropUSA, the AIA Controlling Defendants defrauded AIA of millions of dollars. Miesen also alleges that the AIA Controlling Defendants committed a "laundry list" of other unlawful acts including, self-dealing, malfeasance, and intentional torts. Miesen has highlighted specific acts Defendant John Taylor allegedly committed. John Taylor was President of both AIA Entities and CropUSA during all of these events. Miesen alleges that John Taylor unlawfully transferred real property to AIA, required AIA to pay the liabilities on the property, unlawfully amended AIA's Bylaws, and issued himself Series A Preferred Shares in AIA. Miesen claims that all of the above-described acts hurt AIA's minority shareholders.

Hawley Troxell represented both the AIA Entities and CropUSA during the relevant timeframe. Accordingly, Miesen claims the Hawley Troxell Defendants aided and abetted the fraud the AIA Controlling Defendants perpetuated against AIA and its minority shareholders and committed legal malpractice.

### B. Allegations Against GemCap

In 2011, after Miesen filed this lawsuit, the AIA Controlling Defendants sought additional funding for CropUSA. They went to GemCap for this funding. On November 23, 2011, the AIA Controlling Defendants obtained a $5 million line of credit from GemCap for CropUSA. The parties subsequently increased this line of credit to $10 million. Initially, the AIA Entities guaranteed only $1,113,930 of the loan. Later, in October 2012, the AIA Controlling Defendants had the AIA Entities guarantee the entire $10 million loan (collectively, "the Guarantees"). John Taylor, as the President of the AIA Entities signed the Guarantees. On December 20, 2012, GemCap filed a UCC financing statement with the Idaho Secretary of State regarding the Guarantees.

In his Third Amended Complaint, Miesen asserts that when GemCap executed the loan documents, it knew, or should have known: (1) that this lawsuit was pending; (2) that the Guarantees violated AIA Services' amended articles of incorporation and bylaws, and numerous Idaho Code sections; and (3) that AIA and its officers were not authorized to execute the Guarantees.

CropUSA defaulted on the $10 million loan. On July 16, 2013, GemCap provided CropUSA with a notice of default. Then, on July 29, 2013, GemCap provided a notice of default and demand for payment to the AIA Entities for the $8,676,288.39 CropUSA

owed GemCap. Finally, on July 30, 2013, GemCap filed suit against CropUSA, the AIA Entities, and the AIA Controlling Defendants in the U.S. District Court for the Central District of California. *GEMCAP Lending I, LLC vs. Crop USA, et al.*, No. 13-cv-55040-SLO (C.D. Cal.).

In January 2015, GemCap entered into a Settlement Agreement with the AIA Entities. John Taylor signed the Settlement Agreement on behalf of the AIA Entities. Under the terms of the Settlement Agreement, the AIA Entities were required to transfer certain real property to GemCap. Pursuant to the Settlement Agreement, the Court also entered judgments against the AIA Entities in the amount of $12,126,584.61, which included $3,986,368.78 in interest, penalties, and costs. In addition, the Settlement Agreement provided that the AIA Entities would not file for bankruptcy protection and that John Taylor and/or certain other AIA Controlling Defendants would continue to operate the AIA Entities in the manner that they had been operated in the past. Judge S. James Otero of the Central District of California entered a Stipulated Judgment in the case on April 12, 2015. Dkt. 288-2.

Miesen asserts that the Settlement Agreement was illegal because it (1) violated AIA Services' amended articles of incorporation and bylaws; (2) violated numerous Idaho Code sections; and (3) was the product of intentional breaches of John Taylor's fiduciary duties, which he owed to the AIA Entities. Miesen also maintains that the AIA Controlling Defendants did not disclose the CropUSA loans, the Guarantees, or the Settlement Agreement to AIA's minority shareholders, as required, until 2015.

In his Third Amended Complaint, Miesen asserts that GemCap substantially assisted and acquiesced in the AIA Controlling Defendants' "breaches of their fiduciary duties, fraud, and other malfeasance" by requiring the AIA Controlling Defendants to improperly and unlawfully operate AIA, and by allowing John Taylor to "unlawfully enter into the Settlement Agreements" and Guarantees. Accordingly, Miesen asserts claims against GemCap for aiding and abetting breach of fiduciary duty, fraud, aiding and abetting fraud, and for statutory liability under Idaho Code § 30-29-304 (ultra vires).[3] Miesen bases his claims against GemCap, at least in part, on the allegation that the Guarantees and Settlement Agreement were made in violation of AIA Services' Amended Articles of Incorporation. Specifically, the Articles barred the AIA Entities from entering into these types of transactions without the approval of the Series A Shareholders of AIA Services. At the time the AIA Entities entered into the Guarantees and Settlement Agreement, Donna Taylor was the Series A Shareholder. Miesen alleges that Donna Taylor did not know about these contracts and did not consent to the AIA Entities entering into any of these contracts. GemCap asserts that it relied on, among other things, John Taylor's assurances that he had the authority to enter into these contracts on behalf of the AIA Entities.

---

[3] Miesen asks the Court to declare that the Guarantees, Settlement Agreement, and related instruments are ultra vires, set them aside, and award the AIA Entities damages for losses it sustained from these agreements.

**MEMORANDUM DECISION AND ORDER – PAGE 7**

*C. GemCap's Third Party Complaint*

GemCap filed its Third Party Complaint against the law firm of Crumb & Munding and the law firm of Quarles & Brady on November 21, 2017, based on their involvement with the loan, the Guarantees, and the Settlement Agreement.

According to the Third Party Complaint, GemCap required CropUSA, as a condition precedent to the loan agreement, to provide a written legal opinion regarding the legality of the loan and Guarantees. CropUSA's attorneys, Quarles & Brady, provided a legal opinion letter that stated the "execution, delivery and performance by . . . each Guarantor . . . will not . . . violate any laws, statutes or regulations to which any Loan Party is subject . . . or (c) to our best knowledge, violate, conflict with, or result in a breach of or default under, any agreement or instrument to which any Loan Party [including Guarantors] is a party or by which it is, or any of its properties or assets are, or may be bound . . . ." Dkt. 288, at 5. GemCap relied on this opinion letter in executing the loan documents and Guarantees. If GemCap is found liable to the minority shareholders, it asserts Quarles & Brady should also be found liable as it advised GemCap that the Guarantees were duly authorized, and/or failed to disclose to GemCap that the Guarantees were not duly authorized.

GemCap also asserts Crumb & Munding should be held liable under such circumstances. Crumb & Munding represented John Taylor when he signed the Settlement Agreement on behalf of the AIA Entities. If it is determined that John Taylor lacked authority to sign the Settlement Agreement, GemCap asserts Crumb & Munding should be held liable because it failed to advise John Taylor that he lacked this authority

**MEMORANDUM DECISION AND ORDER – PAGE 8**

and it did not ensure that the Settlement Agreement was executed by someone with the authority to bind the AIA Entities. Accordingly, GemCap asserts claims for contribution/implied indemnity against Quarles & Brady and Crumb & Munding.

### D. Pending Motions

On December 21, 2017, Crumb & Munding filed its Motion to Dismiss. Dkt. 303. On January 29, 2018, Quarles & Brady filed its Motion to Dismiss. Dkt. 322. On April 4, 2018, Crumb & Munding also filed a Motion for Rule 11 Sanctions. Dkt. 362. After the parties fully briefed the Motions, the Court held oral argument on May 4, 2018, and took the Motions under advisement.

### III. CRUMB & MUNDING'S MOTION TO DISMISS

Crumb & Munding argues that the claims GemCap asserts against it should be dismissed for three reasons: (1) the Court lacks subject matter jurisdiction over the claims; (2) the Court lacks personal jurisdiction over it; and (3) GemCap has failed to state a claim upon which relief can be granted. The Court focuses on what it sees as the heart of this Motion: whether GemCap has stated a claim upon which relief can be granted.

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule

of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121. A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570. In considering a Rule 12(b)(6) motion, the Court must view the "complaint in the light most favorable to" the claimant and "accept[] all well-pleaded factual allegations as true, as well as any reasonable inference drawn from them." *Johnson*, 534 F.3d at 1122.

### B. Analysis

GemCap's only claim against Crumb & Munding is for contribution/implied indemnity. GemCap first argues such a claim is actionable under Idaho Code section 6-803, which provides, in relevant part:

> (5) A party shall be jointly and severally liable for the fault of another person or entity or for payment of the proportionate share of another party where they were acting in concert or when a person was acting as an agent or servant of another party. As used in this section, "acting in concert" means pursuing a common plan or design which results in the commission of an intentional or reckless tortious act.

GemCap asserts that it has alleged that it "acted in concert" with Crumb & Munding and, accordingly, it seeks contribution from Crumb & Munding for its share of the liability. The Court disagrees. Nowhere in the Third-Party Complaint does GemCap assert that it

acted in concert with Crumb & Munding. Rather, GemCap makes the following

allegations about Crumb & Munding:

> 17. John Taylor signed the Settlement on behalf of the AIA Entities. John Taylor was represented at that time by the law firm Crumb & Munding.

> 18. On information and belief, to the extent it is determined that John Taylor lacked authority (which Miesen alleges but which GemCap denies), Crumb & Munding did not advise John Taylor that he lacked authority to enter that agreement (to the extent he did not have such authority), and did not ensure that the settlement agreement was executed by someone with the authority to bind the AIA Entities.

> . . .

> 36. Crumb & Munding owed professional duties to the AIA Entities at the time those entities entered the Settlement Agreement. If it is found that the Settlement Agreement was not duly authorized, then Crumb & Munding failed to exercise reasonable care and skill in representing the AIA Entities and in doing so breached its professional duties to those entities.

> 37. Accordingly, if GemCap is found liable for monetary damages as a result of a finding that Taylor did not have the authority to bind the AIA Entities to the settlement agreement, such damages suffered by the Plaintiff were caused primarily or wholly by the conduct of Crumb & Munding. Accordingly, there is an implied/equitable relationship between GemCap and Crumb & Munding under Idaho law.

Dkt. 288. As shown by the above paragraphs, GemCap has changed its theory of

recovery between its complaint and its brief. GemCap has not alleged that it acted in

concert with Crumb & Munding; rather, its claims rests on an "implied/equitable

relationship between GemCap and Crumb & Munding," which under Idaho statutory law

does not support a claim for contribution/indemnity.

GemCap next points the Court to "[t]he common law right of indemnity," which

"refers to those situations where a person who without fault on his part is compelled to

pay damages occasioned by the negligence of another." *May Trucking Co. v. Int'l Harvester Co.*, 543 P.2d 1159, 1161 (Idaho 1975). It is true that the Idaho Legislature's adoption of section 6-803 did not affect the "common-law right to indemnification" Idaho courts have recognized. *Adams v. Krueger*, 101–02, 856 P.2d 887, 891–92 & n.8 (Ct. App. 1991), *aff'd*, 856 P.2d 864 (Idaho 1993). However, GemCap still must allege the elements of a common law indemnity claim to survive this Motion to Dismiss. An "indemnity claim has three elements: '(1) an indemnity relationship, (2) actual liability of an indemnitee to the third party, and (3) a reasonable settlement amount.'" *Pinnacle Great Plains Operating Co., LLC v. Wynn Dewsnup Revocable Tr.*, No. 413CV00106EJLCWD, 2015 WL 5853139, at *3 (D. Idaho June 30, 2015)[4] (quoting *Chenery v. Agri–Lines Corp.*, 766 P.2d 751, 754 (Idaho 1988). Importantly, "unless liability of the claimed indemnitee to the third party is established, the right to indemnification does not arise." *Id.* (quoting *Beitzel v. Orton*, 827 P.2d 1160, 1168 (Idaho 1992)). At this stage, the last two elements of this claim have not been satisfied. The Court, nevertheless, looks at whether the first element is present in this case.

The Idaho Supreme Court has recognized equitable indemnity relationships in at least three contexts:

> (1) The indemnitee may claim that his liability was based on passive neglect, while the indemnitor was guilty of recklessness.

> (2) The indemnitee owed only a secondary duty to the injured party while the indemnitor was primarily responsible, as in cases where a municipal

---

[4] *Report and recommendation adopted sub nom. Pinnacle Great Plains Operating Co., LLC. v. Wynn Dewsnup Revocable Tr.*, No. 413CV00106EJLCWD, 2015 WL 5884861 (D. Idaho Oct. 7, 2015).

**MEMORANDUM DECISION AND ORDER – PAGE 12**

> corporation has the primary duty to keep the streets in safe condition and the landowner has a secondary duty.
>
> (3) The indemnitee may be only vicariously liable for the actual negligence of his employee and seek indemnity. These are the agency cases.

*May Trucking*, 543 P.2d at 1161. *See also United Air Lines, Inc. v. Wiener*, 335 F.2d 379, 399 (9th Cir. 1964) (discussing the many categories of cases in which indemnity is permitted, none of which mirror the instant case). In addition, the Idaho Supreme Court has clarified that, "where the fault of each party is equal in grade and similar in character, the doctrine of implied indemnity is not available since no one should be permitted to base a cause of action on that party's own wrong." *Beitzel*, 827 P.2d at 1168 (quoting *Borchard v. Wefco, Inc.*, 733 P.3d 776, 779 (Idaho 1987)) (internal alterations omitted).

GemCap vaguely asserts that it has alleged that Crumb & Munding was "primarily responsible for the damages." In doing so, GemCap appears to assert that it has an indemnity relationship with Crumbing & Munding that mirrors the second relationship listed above. In support of this assertion, GemCap argues "as the AIA Entities' counsel for the Settlement Agreement, [Crumb & Munding] owed the AIA Entities a duty of competent representation, including to ensure that those entities were not bound to an agreement by an unauthorized agent." GemCap, however, has not alleged that it owed a secondary duty to the AIA Entities. Such an indemnity relationship does not exist under Idaho law where the indemnitor and indemnitee do not share a responsibility. Moreover, GemCap has not cited any cases, binding or otherwise, that factually support finding such an indemnity relationship between GemCap and Crumb & Munding in this instance.

MEMORANDUM DECISION AND ORDER – PAGE 13

Accordingly, the Court finds GemCap has failed to state a claim for indemnity/contribution against Crumb & Munding either under Idaho statute or Idaho common law.

Because the Court finds GemCap has failed to state a claim for indemnity/contribution under either an Idaho statute or Idaho common law, the Court finds good cause to dismiss this claim under Rule 12(b)(6).

## IV. CRUMB & MUNDINGS' MOTION FOR SANCTIONS

Crumb & Munding asks this Court to impose sanctions against GemCap under Rule 11 of the Federal Rules of Civil Procedure for filing a frivolous third-party complaint against it.

### A. Legal Standard

"Rule 11 allows for sanctions against an attorney, law firm, or party who violates Rule 11(b) by filing a pleading or motion that is, *inter alia*, frivolous, for an improper purpose, or lacking in evidentiary support." *Meyer v. Bank of Am., N.A.*, No. 1:11-CV-00528-BLW, 2012 WL 4470903, at \*12 (D. Idaho Aug. 14, 2012), *report and recommendation adopted*, 2012 WL 4458141 (D. Idaho Sept. 26, 2012) (citing Fed. R. Civ. P. 11). An action is frivolous if it is "both baseless and made without reasonable and competent inquiry," or "groundless . . . with little prospect of success . . . ." *Chevron U.S.A., Inc. v. M & M Petroleum Servs., Inc.*, 658 F.3d 948, 952 (9th Cir. 2011) (internal citations omitted). A district court has the discretion to impose sanctions under Rule 11 and under "its inherent authority to curb abusive litigation practices." *DeDios v. Int'l Realty Invs.*, 641 F.3d 1071, 1076 (9th Cir. 2011) (citations omitted). "When, as here, a

complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (internal quotation marks and citation omitted).

The Ninth Circuit has cautioned that "Rule 11 must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously." *Operating Engineers Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988) "Forceful representation often requires that an attorney attempt to read a case or an agreement in an innovative though sensible way. Our law is constantly evolving, and effective representation sometimes compels attorneys to take the lead in that evolution. Rule 11 must not be turned into a bar to legal progress." *Id.* (citation omitted). Finally, in reaching this decision, the Court keeps in mind that "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Id.* at 1345.

### B. Analysis

Crumb & Munding primarily argues that the Court should impose Rule 11 sanctions because GemCap's indemnity claim has no basis in law. As explained in the previous section, the Court agrees that the claim against Crumb & Munding should be dismissed. However, the Court declines to impose sanctions. First, there is no indication that GemCap asserts the claim against Crumb & Munding for an improper purpose. Second, while the claim is not legally cognizable, the Court declines to classify the claim

MEMORANDUM DECISION AND ORDER – PAGE 15

as entirely frivolous; rather it appears GemCap's attorneys are attempting to zealously, and creatively, advocate for their client.

GemCap's two theories of liability—indemnity under state statute and under common law—miss the mark, but only slightly. With regard to statutory liability, GemCap could amend its Complaint to assert additional facts to support its claim that GemCap "acted in concert" with Crumb & Munding in aiding and abetting the AIA Controlling Defendants breaches of their fiduciary duties or in committing fraud. However, it would be difficult for GemCap to do so without admitting any fault. If GemCap made such allegations, it could have a claim for indemnity against Crumb & Munding under Idaho law. Thus, the Court will give GemCap leave to assert additional facts (if it reasonably believes it can do so in good faith) to support this theory.

As to the liability under common law theory, GemCap has attempted to creatively frame the relationship between it and Crumb & Munding to fit into an indemnity relationship. GemCap is unsuccessful in doing so, but there is not a case directly on point which completely bars this theory. Absent case law barring such a theory, the Court cannot find that GemCap's claim is frivolous.

### V. QUARLES & BRADY'S MOTION TO DISMISS

In its Motion to Dismiss (Dkt. 322), Quarles & Brady argues that the claim against it should be dismissed for two reasons: (1) this Court lacks personal jurisdiction over it;

MEMORANDUM DECISION AND ORDER – PAGE 16

and (2) the Court lack subject matter jurisdiction over the claim. Alternatively, Quarles & Brady asks this Court to transfer the case to the Central District of California.[5]

Significantly, GemCap previously sued Quarles & Brady in the Central District of California. Quarles & Brady describes this other suit as asserting the same "theory of legal malpractice in connection with [its] Opinion Letter" on the legality of GemCap's loan to CropUSA. Dkt. 322-1, at 7. In other words, Quarles & Brady maintains the California suit "is virtually indistinguishable from [GemCap's] claim against [it] in this case." *Id.* On cross-motions for summary judgment, Judge Ronald S. W. Lew of the Central District of California ruled in favor of Quarles & Brady on September 17, 2017.[6] GemCap appealed that ruling and filed its opening brief in the Ninth Circuit on February 5, 2018. The Court has serious concerns about whether it is the proper authority to hear this claim in light of the California litigation. However, the Court need not fully address these concerns as its finds that it lacks personal jurisdiction over Quarles & Brady for the purpose of this case.

### A. Legal Standard

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (citing Fed. R. Civ. P. 4(k)(1)(A)). "In order for an Idaho court to exert jurisdiction over an out-of-state defendant, two criteria must be met; the act giving rise to the cause of action must

---

[5] Other parties in this case have opposed the Motion to Transfer.

[6] The Court takes judicial notice of this California case and the filings from that case, which the parties submitted for this Court's review. *See* Fed. R. Evid. 201.

**MEMORANDUM DECISION AND ORDER – PAGE 17**

fall within the scope of [Idaho's] long-arm statute and the constitutional standards of due process must be met." *Saint Alphonsus Reg'l Med. Ctr. v. State of Wash.*, 852 P.2d 491, 494 (Idaho 1992). "Because Idaho's long-arm statute, codified in Idaho Code § 5-514, allows a broader application of personal jurisdiction than the Due Process Clause, the Court need look only to the Due Process Clause to determine personal jurisdiction." *Cornelius v. DeLuca*, 709 F. Supp. 2d 1003, 1010 (D. Idaho 2010).

"The Due Process clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, __ U.S. __, 134 S.Ct. 1115, 1121 (2014). A nonresident defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Since the Supreme Court's "seminal decision in *International Shoe*, [its] decisions have recognized two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court*, __ U.S. __, 137 S. Ct. 1773, 1779–80 (2017). "For an individual, the paradigm forum for the exercise of *general jurisdiction* is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* "Specific jurisdiction is very different. In order for a state court to

**MEMORANDUM DECISION AND ORDER – PAGE 18**

exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum." *Id.* (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014)). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (quoting *Goodyear*, 564 U.S. at 919). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.*

"There are three requirements for a court to exercise specific jurisdiction over a nonresident defendant: (1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[ ] himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "[T]he burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Id.* at 800

MEMORANDUM DECISION AND ORDER – PAGE 19

8-ER-1895

(citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* Thus, the Court need only determine whether the Plaintiff's "pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.*

### B. Analysis

Quarles & Brady is a Wisconsin law firm based in Milwaukee, Wisconsin. It also has offices in Illinois, Indiana, Arizona, Florida, and the District of Columbia. It has no property or offices in Idaho and employs no attorneys licensed in Idaho. GemCap has made no allegation that Quarles & Brady's attorneys ever visited Idaho or that Quarles & Brady ever advertised in Idaho. Quarles & Brady sent the Opinion Letter (that forms the basis of GemCap's indemnity claim) from its Chicago, Illinois, office to GemCap's office in Santa Monica California. GemCap is a Delaware corporation with its headquarters in California. In the Opinion Letter, Quarles & Brady opined on the validity and legality of GemCap's proposed $5 million loan to CropUSA and the Guarantees the AIA Entities and John Taylor issued. Quarles & Brady also "specifically disclaim[ed] any opinions with respect to Idaho law, including but not limited to any opinions related to (i) the validity, effectiveness and/or foreclosure of any real property interest located in such States and/or (ii) any provision(s) in the Loan Documents governed or affected by Idaho law." Dkt. 323-2, at 14.

8-ER-1895

In the face of these facts, GemCap has not argued that this Court has general jurisdiction over Quarles & Brady. Therefore, the Court only addresses the specific personal jurisdiction analysis.

GemCap argues that this Court has specific personal jurisdiction over Quarles & Brady because it represented CropUSA Insurance Agency, Inc. and CropUSA Insurance Service LLC, which are both Idaho entities, in drafting the loan documents and Opinion Letter that are at issue in this case. In addition, GemCap points out that the Opinion Letter opined about the legality of Guarantees issued by two Idaho corporations (the AIA Entities) and an Idaho resident (John Taylor), which pledged real property in Idaho.

Multiple courts have held that a law firm's representation of a forum client alone is not enough to establish the "purposeful availment" necessary for specific personal jurisdiction. The Court finds *Sher v. Johnson* particularly instructive on this front, even though the Ninth Circuit ultimately found a California court did have personal jurisdiction over an out-of-state law firm. The *Sher* court first found the California court did not have specific personal jurisdiction over the Florida law firm that had represented a California resident in a criminal action in Florida based on that representation alone. 911 F.2d 1357, 1362 (9th Cir. 1990). The California resident brought a legal malpractice claim against the Florida firm and the firm moved to dismiss for lack of personal jurisdiction. *Id.* The *Sher* court first explained, the "mere existence of a contract with a party in the forum state does not constitute sufficient minimum contacts for jurisdiction." *Id.* (citing *Burger King*, 471 U.S. at 478). The court then looked to "prior negotiations and contemplated future consequences, along with the terms of the contract and the

MEMORANDUM DECISION AND ORDER – PAGE 21

parties' actual course of dealing" to determine if the defendant's contacts were "substantial " and not merely "random, fortuitous, or attenuated." *Id.* The Court then found the "normal incidents of . . . representation," such as accepting payment from a California bank, making phone calls and sending letters to California, and even visiting California on three occasions, did not, by themselves, establish purposeful availment. *Id.* These acts did not deliberately create a "substantial connection" to California nor did they promote business within California. *Id.* In sum, the Court concluded, "[o]ut-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited in its home state and takes no affirmative action to promote business within the forum state." *Id.* at 1363.

As noted previously, however, the Court found it had specific personal jurisdiction over the Florida firm when it was revealed that to secure the plaintiff's payment for the legal representation, the plaintiff had "executed a deed of trust in favor of the [law firm], encumbering the [plaintiff's] California home." *Id.* The Court explained, the law firm "look[ed] to the laws of California to secure its right to payment" and "[t]he execution of the deed 'contemplated [significant] future consequences in California,'" including filing the deed in the California recorder's office, judgment in a California court applying California law, and enforcement of that judgment in California. *Id.*

Other circuits and district courts have similarly concluded that mere representation of a forum resident does not establish personal jurisdiction over an out of state law firm. *See, e.g.*, *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226–27 (8th Cir. 1987) (finding South Dakota did not have personal jurisdiction in malpractice action over New

York law firm that represented South Dakota corporation in Maryland patent suit); *Kaempe v. Myers*, No. IP 01-0424-CHK, 2001 WL 1397291, at *8 (S.D. Ind. Nov. 6, 2001) ("[A]n attorney does not submit to the jurisdiction of another state solely by agreeing to represent one of its residents."); *We're Talkin' Mardi Gras, LLC v. Davis*, 192 F. Supp. 2d 635, 639 (E.D. La. 2002) ("[T]he mere exchange of communications in the course of developing and carrying out a contract, such as an attorney-client relationship, is insufficient to constitute purposeful availment."). Including this Court. *See Wheaton Equip. Co. v. Franmar, Inc.*, No. CV08-276-S-EJL, 2009 WL 464337, at *20 (D. Idaho Feb. 24, 2009).

Significantly, the conclusions of these courts comports with the Supreme Court's recent decision in *Walden v. Fiore*. In *Walden*, the Supreme Court clarified that "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." 134 S. Ct. 1115, 1122 (2014). In other words, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* Thus, when a law firm's only contact with a forum state is the representation of a forum resident outside of the forum state, personal jurisdiction is lacking.

This case closely mirrors the cases cited above. GemCap does not allege that Quarles & Brady solicited business in Idaho or has any other contacts to Idaho beyond its representation of CropUSA. Even though Quarles & Brady did not appear in any court on behalf of CropUSA, the Opinion Letter is clearly an "out-of-state legal representation."

MEMORANDUM DECISION AND ORDER – PAGE 23

As the *Sher* court held, such "[o]ut-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in [Idaho]." 911 F.2d at 1362. Thus, Quarles & Brady's "relationship with [CropUSA] a third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 134 S. Ct. at 1122.

GemCap does argue that Quarles & Brady may have represented CropUSA in other cases in Idaho. An out-of-state law firm's choice to represent a client inside the forum state can establish purposeful availment. *See Wheaton*, 2009 WL 464337, at *22. However, significantly, that representation must form the basis of the current suit in order to establish the second prong of the specific jurisdiction test: that the claim arises out of or relates to the defendant's forum-related activities. *Id.* at 23.

*Wheaton* is instructive. In *Wheaton*, the Colorado law firm of Hamilton and Faatz represented the two defendants in *Wheaton Equip. Co. v. Franmar, Inc. & Franklin Tolbert*, CV03–220–S–BLW (D. Idaho). Ultimately, Chief Judge B. Lynn Winmill awarded the plaintiff attorneys' fees and damages in the total amount of $424,835.02. 2009 WL 464337, at *2. The defendants made no payment toward satisfying the judgment, but disposed of all of their assets through a series of allegedly fraudulent transfers, including the conveyance of "a rock crusher valued at $175,000 to Hamilton & Faatz to satisfy the legal fees owed." *Id.* at 2–3. "Those transfers and the failure to pay anything" lead the plaintiff to sue the defendants again, along with several others, including the law firm of Hamilton & Faatz. *Id.* The law firm moved to dismiss for lack of personal jurisdiction. *Id.* In granting that motion, the Court explained, "even if the law firm purposefully availed itself of Idaho's benefits"—by representing the defendants in

the first law suit—the plaintiff's claims in the second law suit "do not 'arise out' of the[se prior] forum-related activities." *Id.* at 23. Similarly here, even if Quarles & Brady represented CropUSA in Idaho previously, GemCap has not explained how this case arises out of those previous Idaho contacts. Thus, even if the Court granted GemCap leave to conduct discovery on the extent of Quarles & Brady's prior representation of CropUSA, the outcome of the pending Motion to Dismiss would not change.

In sum, this Court does not have personal jurisdiction over Quarles & Brady for purposes of this suit and, therefore, it must grant Quarles & Brady's Motion to Dismiss.

## VI. LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading once "as a matter of course within . . . 21 days after serving [the pleading]" or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). After that, a party may amend the pleading only with the written consent of the opposing party or with leave of the court. Fed. R. Civ. P. 15(a)(2); *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987). Rule 15(a) instructs the court to grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, "[a] district court . . . may . . . deny leave to amend due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 1007 (9th Cir. 2009) (internal quotation

MEMORANDUM DECISION AND ORDER – PAGE 25

marks and alteration omitted). "An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (quoting *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).

Because it is conceivable that GemCap could allege additional facts to cure the deficiencies identified above, the Court dismisses the Third-Party Complaint without prejudice. However, if GemCap wishes to file an Amended Complaint, it shall seek leave to do so within 30 days of the date of this order and shall submit a copy of the Amended Third Party Complaint with such filing. *See Arbon Valley Solar, LLC. v. Thomas & Betts Corp.*, No. 1:16-CV-0070-EJL-REB, 2017 WL 277402, at *10 (D. Idaho Jan. 19, 2017).

## VII. ORDER

THE COURT HEREBY ORDERS:

1. Crumb & Munding's Motion to Dismiss (Dkt. 303) is GRANTED.

2. Crumb & Munding's Motion for Sanctions (Dkt. 362) is DENIED.

3. Quarles & Brady's Motion to Dismiss (Dkt. 322) is GRANTED.

4. GemCap's Third Party Complaint (Dkt. 288) is DISMISSED WITHOUT PREJUDICE.

5. If GemCap wishes to file an Amended Complaint, it shall seek leave to do so within 30 days of the date of this order and shall submit a copy of the Amended Third Party Complaint with such filing.

MEMORANDUM DECISION AND ORDER – PAGE 26

DATED: May 31, 2018

David C. Nye
U.S. District Court Judge

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA  98004
Telephone: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Attorney for the Plaintiff Dale L. Miesen

UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>DECLARATION OF RICHARD T. McDERMOTT IN SUPPORT OF PLAINTIFF DALE L. MIESEN'S MOTION TO CONTINUE THE HAWLEY TROXELL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Dkt. 388] |

DECLARATION OF RICHARD T. McDERMOTT - 1

**8-ER-1903**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

> Defendants/Third-Party Plaintiffs,

v.

REED TAYLOR, an individual,

> Third-Party Defendant.

REED TAYLOR, an individual,

> Third-Party Defendant/ Counterclaimant,

v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

> Counterdefendants.

GEMCAP LENDING I, LLC, a Delaware limited liability company,

> Defendant/Third-Party Plaintiff,

v.

QUARLES & BRADY, LLP, a Wisconsin limited legal partnership; and CRUMB & MUNDING, P.S., a Washington professional service corporation,

> Third-Party Defendants.

DECLARATION OF RICHARD T. McDERMOTT - 2

**8-ER-1904**

I, Richard T. McDermott, declare:

1.      I am over the age of eighteen and am competent to testify in court, including as to the matters set forth in this declaration. This declaration and my opinions herein are based on personal knowledge, education, training, and experience.

2.      In 1962, I received a B.A. from Marquette University. In 1966, I obtained a J.D. from Fordham University School of Law.

3.      In 1967, I was admitted to practice law in the State of New York. I am presently in good standing and licensed to practice law in the State of New York. I have been admitted to practice law in New York for over 50 years.  I am also a member of the New York State Bar Association Securities Regulation Committee.

4.      From 1966 through 1990, I was an Associate and Partner with the law firm of Alexander & Green/Walter Conston Alexander & Green (the firms combined). From 1990 through 2004, I was a Partner of Rogers & Wells/Clifford Chance LLP (the firms merged in 2000).  While at that firm, I chaired the Legal Personnel Committee, and was responsible for the training, development, evaluation and advancement of associate attorneys and counsel, as well as being involved in the partner selection process.

5.      From 2000 through the present time, I have been an Adjunct Professor at Fordham University School of Law. From 1980 through 1998, I was an Adjunct Professor at New York University School of Law.  In both positions, I taught law school classes on the Legal Aspects of Corporate Finance, and covered such subjects as debentures, indentures, preferred stock, convertible securities, dividends and stock repurchases as well as third party opinions in corporate transactions.

DECLARATION OF RICHARD T. McDERMOTT - 3

6.	I am the co-author of Chapters 1 and 2 (Introduction and Elements of Opinion Letters, respectively) and author of Chapter 3 (Legal Opinions on Corporate Matters) of the Treatise: *LEGAL OPINION LETTERS A Comprehensive Guide to Opinion Practice* (Third Edition).  I have been a member of the TriBar Opinion Committee for 28 years. The TriBar Opinion Committee is a nationally recognized committee that publishes Reports on various aspects of opinion practice.

7.	I am the author of *Legal Aspects of Corporate Finance* (5th ed. 2013) and a 2017 Supplement thereto which is published by LexisNexis Carolina Academic Press. It is my understanding that the book has been used at approximately twenty-two law schools. I have authored other articles and materials (including a Teacher's Manual for *Legal Aspects of Corporate Finance*).

8.	In 1988, I was a visiting lecturer at Monash University in Melbourne, Australia and the University of Adelaide, Australia, Corporate and Business Law Centre. In 1999, I co-lectured with former Delaware Chancellor William Allen and James Fuld, author of *Legal Opinions In Business Transactions - An Attempt to Bring Some Order Out of Some Chaos*, 28 Bus. Law. 915 (1973), on the Law and Business of Investment Banking at the New York University Center for Law and Business.

9.	From 2009 through the present time, I have served as a Special Master for the New York State Supreme Court Appellate Division, First Department. In that regard, I read the briefs submitted to me, obtain relevant documents and filings, attend hearings from time to time, evaluate the parties' positions, and assist in mediating the cases.

10.	I have extensive experience in the area of corporate governance of privately held and publicly traded corporations (including Fortune 500 companies), providing legal advice to

DECLARATION OF RICHARD T. McDERMOTT - 4

Boards of Directors in matters involving significant transactions, corporate governance, derivative and class action shareholder suits, the payment of directors' expenses (including attorneys' fees), and related matters. I also have extensive experience with the preparation of: proxy statements, Reports to the Securities and Exchange Commission, reports to shareholders, disclosures to shareholders, notices of shareholder meetings, shareholder resolutions, notices of board meetings, and board resolutions. I also have extensive experience in reviewing and interpreting certificates/articles of incorporation, bylaws, shareholder agreements, notices to shareholders, shareholder resolutions, notices to board members and board resolutions; and ensuring that shareholder resolutions and board resolutions comply with a corporation's certificate/ articles of incorporation, bylaws, and applicable restrictions under statutory and common law.  I have experience advising the boards of directors of corporations in transactions, including, the board of directors of Fortune 500 companies.

11.    I have extensive experience in domestic and international corporate finance, mergers and acquisitions, tender offers, strategic alliances and bankruptcy reorganizations.

12.    My experience in corporate law also includes, purchases and redemptions by a corporation of its own shares (and formulating and evaluating proposals therefor) from both substantial shareholders and the investing public in issuer tender offers and open market transactions, strategic alliances, going private transactions, bankruptcy reorganizations, the legal and equitable theories of piercing the corporate veil and alter-ego (as well as taking appropriate corporate action to prevent such claims), and other general corporate matters.

13.    I have practiced corporation and securities law for more than 35 years. I have represented domestic and international acquiring and acquired clients in mergers and acquisition transactions involving acquisition amounts from less than $1 million to more than $1 billion.

DECLARATION OF RICHARD T. McDERMOTT - 5

Included in that work was the participation in and supervision of others with respect to pre-transaction due diligence and the rendering of reports pertaining to pre-transaction due diligence.

14.     I also have extensive experience in representing my firm's corporate clients in various litigation matters, including, without limitation, experience addressing conflicts of interest in litigation, all aspects of litigating cases, trying cases and appealing cases.

15.     I also have experience serving on the boards of directors of a privately held corporation and a charitable foundation.

16.     I was retained by Roderick Bond Law Office, PLLC to be an expert in this lawsuit. Specifically, I have been retained to provide expert testimony in this lawsuit regarding various matters pertaining to the defendants.

17.     I have previously been retained as an expert witness for Roderick Bond Law Office, PLLC in other related cases, consequently I am very familiar with many of the facts and legal issues in the instant stockholder's derivative suit.

18.     I have reviewed and am familiar with the pertinent and applicable Sections of Idaho Code, the Idaho Rules of Professional Conduct, and the Bar Commission Rules. I have also reviewed and am familiar with pertinent and applicable Idaho case law, together with applicable treatises (e.g., Fletcher) and case law and other authorities from other state and federal jurisdictions.

19.     I have reviewed with the articles of incorporation and amendments thereto and the bylaws and amendments thereto of AIA Services Corporation ("AIA Services") and AIA

DECLARATION OF RICHARD T. McDERMOTT - 6

Insurance, Inc. ("AIA Insurance").[1]

20.    I have reviewed thousands of pages of filings (including complaints, answers, motions, declarations, opinions and orders, etc.) and documents produced in discovery (including deposition transcripts and exhibits) in various lawsuits that Mr. Bond has provided to me, including, without limitation, filings and discovery from: (a) *Reed Taylor v. AIA Services Corp., et al.*, Nez Perce County District Court Case No. CV-07-00208; (b) *Donna Taylor v. AIA Services Corp., et al.*, Consolidated Nez Perce District Court Case Nos. CV-08-1150 and CV-13-1075; (c) *Donna Taylor v. AIA Services Corp.*, Nez Perce County District Court Case No. CV-09-02470; (e) *Reed Taylor v. Riley, et al.*, Ada County District Court Case No. CV-OC-0918868; (f) *Taylor v. Babbitt, et al.*, Nez Perce County District Court Case No. CV-08-01765; (g) *AIA Services Corp. v. Durant, et al.*, Nez Perce County District Court Case No. CV-12-01483; and (h) *Reed Taylor v. Bell, et al.*, King County Superior Court Case No. 12-2-10803-0-SEA. The common thread in all of the foregoing cases is that they all involve improper conduct by the Controlling AIA Defendants, among other parties. As a side note, it appears that the Hawley Troxell Defendants are seeking to taint Mr. Bond or the Plaintiff Miesen because of the number of lawsuits that have been filed (some of which were filed by Mr. Bond or his firm and some of which were not). It is the facts and conduct of the various defendants that led to the filing of the above-referenced lawsuits. As Mr. Bond has stated at open hearings, one just cannot make up what has transpired here. As I previously testified (Dkt. 194-6 at ¶ 21), "[i]n all my years of practice and experience, I have never seen such wide-spread corporate malfeasance and inappropriate conduct as was committed by the defendants

---

[1] When referring to amendments to the bylaws, I am not conceding that the more recently alleged amendments to the bylaws of AIA Services and AIA Insurance to provide for the payment of costs in unsuccessful derivative lawsuits were properly or lawfully adopted. Indeed, they were not for reasons that I will not address now.

DECLARATION OF RICHARD T. McDERMOTT - 7

in this lawsuit and/or covered up by them as demonstrated by the documents that I have reviewed."

21.     I have also reviewed certain filings and documents from two cases filed in U.S. District Court, Central District of California, Western Division: (a) *GemCap Lending I, LLC v. Quarles & Brady, et al.*, Case No. 2:14-cv-07937-RSWL-E; and (b) *GemCap Lending I, LLC v. CropUSA Insurance Agency, Inc., et al.*, Case No. 2:13-cv-05504-SJO-MAN.

22.     I have also reviewed most of the filings in this case, including, without limitation, the Hawley Troxell Defendants' Motion for Summary Judgment and all filings pertaining to that Motion (including, the Declarations of D. John Ashby and Richard A. Riley and the exhibits attached thereto). I am familiar with the pending discovery disputes, including, without limitation, the pending disputes regarding the waiver of privilege and the necessity of obtaining the privileged documents as well as the previously privileged documents and work product that were waived and produced in the litigation in *GemCap Lending I, LLC v. Quarles & Brady*.

23.     When I refer to the "Hawley Troxell Defendants" below, I mean Messrs. Riley, Babbitt and Ashby (the three named Hawley Troxell attorney defendants), any other attorneys who provided applicable legal services (there were others) and the law firm of Hawley Troxell Ennis & Hawley LLP.

24.     When I refer to "aiding and abetting" below, I mean *inter alia* to "counsel or give substantial assistance, or encouragement to the accomplishment of a legal wrong, or to knowingly and substantially assist in the covering up or obfuscation of the same

**INFORMATION REQUIRED**

25.     As I previously testified (Dkt. 194-6), I will be prepared to render opinions as to the breaches of fiduciary duties and related conduct of each of the defendants in this lawsuit (including the Hawley Troxell Defendants), together with opinions regarding proximate

DECLARATION OF RICHARD T. McDERMOTT - 8

causation.[2]

26.     As a preliminary matter, I need to examine the privileged information and communications involving AIA Services, AIA Insurance and CropUSA Insurance Agency to fully and fairly prepare my opinions. Mr. Miesen is asserting derivative claims of breach of fiduciary duties and other torts against the Hawley Troxell Defendants and others for acts and omissions, including as those torts relate to litigation. As I am sure this Court is well aware, attorney-client privilege is generally always waived upon the filing of a lawsuit by a client against an attorney. It would be unfair to Mr. Miesen if he is not allowed the use of the same privileged information and work product that AIA Services or AIA Insurance would have been permitted to use had they been directly pursuing their claims against the Hawley Troxell Defendants. Likewise, the Controlling AIA Defendants have asserted advice of counsel as defenses, which separately makes it necessary for me to have access to all attorney-client privileged communications and advice.

27.     While this case may appear quite to be complex and, indeed, is quite complex in various aspects, the general theme of what has transpired is quite simple with respect to the Hawley Troxell Defendants. By analogy, in my opinion , the Hawley Troxell Defendants' representation of AIA Services, AIA Insurance and CropUSA Insurance Agency in *Reed Taylor v. AIA Services*[3]and accepting litigation decisions or purported conflict waivers from John Taylor or any of the other conflicted insiders, would be no different than an attorney agreeing to represent a bank and the bank president when that bank president participated in stealing the banks money (or agreeing to represent only the bank and allowing that same president to make the decisions for the

---

[3] While Michael McNichols of Clements Brown & McNichols initially represented AIA Services, AIA Insurance and John Taylor in that lawsuit, he promptly withdrew from representing AIA Services and AIA Insurance.

DECLARATION OF RICHARD T. McDERMOTT - 9

litigation) in a lawsuit brought by a customer seeking to recover his funds that were stolen by the president of the bank. The attorney, and a lawfully operated bank, would of course want to be taking legal action against the president and working with the customer to seek recovery of the stolen funds. Applying this analogy here, the Hawley Troxell Defendants should have been seeking on behalf of AIA Services or AIA Insurance to recover their money, property, and other assets from CropUSA Insurance Agency, John Taylor and the other responsible Controlling AIA Defendants rather than representing them all or allowing any of them to make litigation decisions for AIA Services or AIA Insurance.

28. With the analogy in the preceding paragraph in mind, in order to consider and prepare complete and detailed opinions in response to the Hawley Troxell Defendants' pending Motion for Summary Judgment, I need as much of the additional documents and testimony as possible (including the resolution of any privileged disputes and the production of all such documents to the extent that privilege was waived or is deemed to not apply). Specifically, based on my present knowledge of those facts and documents that I have learned through the wide-spread litigation detailed above, the resolution of some or all of the pending discovery disputes in favor of Mr. Miesen and the taking of additional depositions after those disputes are resolved will likely reveal additional material facts necessary for the preparation and submission of my opinions, including, without limitation, the following information:

a. If this Court rules that privilege and/or work product has been waived in full or in part under one or more of the legal theories that the Plaintiff will assert in the pending discovery disputes, those communications and/or work production would be very important for me to consider and evaluate in the formulation of my opinions. I also believe that such information would likely further support my opinions that the Hawley Troxell Defendants

DECLARATION OF RICHARD T. McDERMOTT - 10

breached the fiduciary duties they owed to AIA Services and AIA Insurance and/or were aiding and abetting the Controlling AIA Defendants in the commission of breaches of their fiduciary duties to, and other torts against, AIA Services and AIA Insurance.

b.      Although it is unlikely  that the Hawley Troxell Defendants properly demanded, as a condition of their representation of AIA Services, AIA Insurance and CropUSA Insurance Agency in *Reed Taylor v. AIA Services Corp., et al.,* that John Taylor make full disclosure to the disinterested minority shareholders of AIA Services in order to obtain a vote authorizing any conflicts of interest waivers or other litigation decisions because, based on the documents and testimony that I have reviewed, no such disclosure or votes were ever submitted to, or obtained from, the shareholders of AIA Services.  The depositions of Richard Riley, D. John Ashby and Gary Babbitt and any other responsible Hawley Troxell attorney(s) will likely confirm that this is the case, and that they did not obtain valid authorization for any representation agreements or conflicts waivers. Moreover, because the Hawley Troxell Defendants and the Controlling AIA Defendants have refused to produce all of the billing records for AIA Services and AIA Insurance, it is impossible to determine what attorneys were involved in purportedly obtaining any conflicts waivers. Until the documents are produced, and the depositions are taken to discover the names of the attorneys who purportedly sought and obtained any alleged conflict waivers, it is impossible to know with certainty the names of such attorney(s).

c.      With respect to *Reed Taylor v. AIA Services Corp.*, it became apparent in that case that in fact Crop USA had been wrongfully taken from AIA Services and thus the Hawley Troxell Defendants' work on behalf of Crop USA in connection with its contemplated Regulation A and Private Placement Offerings had assisted the Controlling AIA Defendants

DECLARATION OF RICHARD T. McDERMOTT - 11

in unlawfully confiscating Crop USA from a client of the Hawley Troxell Defendants. The resolution of the discovery disputes and the obtaining of deposition testimony of the Hawley Troxell Defendants will likely reveal that they failed to insist that AIA Services be appropriately compensated for the damages it sustained as a result of such wrongdoing

d.      As to the receiver action filed by Donna Taylor, she was demanding that (i) her right to have a person appointed to the board of directors of AIA Services be honored (a right provided under AIA Services' amended articles of incorporation) and (ii) the court appoint a receiver for AIA Services to protect its interests. The documents and depositions will likely establish that the Hawley Troxell Defendants improperly refused to insist that Donna Taylor's designee to be appointed and to participate in board meetings.

e.      Mr. Ashby asserts in his declaration that "Hawley Troxell carefully considered whether such representation could be undertaken in accordance with the applicable Idaho Rules of Professional Conduct and concluded that, with carefully designed disclosures, informed client consents to waive conflicts, and tolling agreements among the Defendants, such representation and joint defense arrangements were proper." *See* Dkt. 389 at 4 ¶ 5. The resolution of the pending discovery disputes and the depositions of Riley, Ashby and Babbitt will likely result in obtaining confirmation that no proper or authorized consents were obtained and that John Taylor, Connie Taylor Henderson, and James Beck all had conflicts of interest that prevented them from consenting or waiving any conflicts of interest or approving any joint defense.

f.      The Hawley Troxell Defendants assert in their motion and declarations that they allegedly had no "contemporaneous" knowledge of many of the transaction identified and/or addressed in their Statement of Undisputed Material Facts and Memorandum in Support

DECLARATION OF RICHARD T. McDERMOTT - 12

of Motion for Summary Judgment. The favorable resolution of the pending discovery disputes and/or the obtaining of the deposition testimony from the Hawley Troxell Defendants will likely reveal that "contemporaneous" means only at the time of the transactions, not after those transactions and that, at a minimum, the deposition testimony will likely reveal that the Hawley Troxell Defendants became aware of those improper transactions and failed to address them with the highest disinterested constituencies of AIA Services.

g.      Since Mr. Riley conceded in his declaration that he assisted in preparing John Taylor's Executive Officer's Agreement and certain of AIA Services' amended articles of incorporation, the resolution of the discovery disputes and the deposition of Mr. Riley (and likely others) will likely establish that Mr. Riley had knowledge of the above instrument(s) and the significant obligations under them, yet he and other Hawley Troxell Defendants proceeded to acquiesce in violations of those instrument(s).

h.   As to the 2006 Hawley Troxell opinion letter, the resolution of the discovery disputes and the obtaining of deposition testimony of Riley and/or other Hawley Troxell Defendants will likely reveal that they knew, or should have known, that rendering the opinion letter was a breach of their fiduciary duties owed to AIA Services and AIA Insurance because, among other things, the guarantee of the loan addressed by the opinion letter violated AIA Services' amended articles of incorporation  since  AIA Services and its subsidiaries (including AIA Insurance) were barred from guaranteeing any loans other than certain exceptions which did not apply (e.g., CropUSA Insurance Agency was not a wholly owned subsidiary of AIA Services in 2006). As to the Hawley Troxell Defendants' argument that AIA Services and AIA Insurance were not harmed, the pending discovery and depositions will reveal that the bulk of the book of business sold by CropUSA Insurance Agency to Hudson Insurance Company to

DECLARATION OF RICHARD T. McDERMOTT - 13

satisfy that loan were assets that should have belonged to AIA Services or AIA Insurance and should have been paid to them or utilized for their benefit.

      i.      With respect to the Hawley Troxell Defendants' assertion that the doctrine of judicial estoppel applies to such matters as the Underlying Case, Donna Taylor's Receivership Case and the ULIC Receivership Case, the additional discovery, the resolution of the discovery disputes and the taking of depositions will likely reveal that (i) the positions taken therein by the unfaithful management of AIA Services and AIA Insurance were in fact inimical to the true interests of those corporations and (ii) in a number of respects those corporations not only did not benefit from the results obtained in those proceedings but in fact were severely harmed thereby.

      j.      The additional discovery, the resolution of the discovery disputes and the taking of depositions will also likely reveal that, with respect to a number of matters that are the subject of this derivative action on behalf of AIA Services and AIA Services, the decisions and instructions of the unfaithful management of those corporations were not in this context those of the " highest authority" of Hawley Troxell Defendants' clients and thus should not have been abided, followed or accepted by the Hawley Troxell Defendants. As one example, in Donna Taylor's Receivership Case, such Defendants should have disregarded the instructions of such unfaithful management and insisted that AIA Services join in the application for the appointment of a Receiver to safeguard AIA Services' assets, business and revenue.

      k.      In connection with the formulation of the opinions I will be rendering herein, I will also need to examine all of the documents furnished to the expert retained by Quarles & Brady in the litigation commenced by GemCap Lending I, LLC against that law

DECLARATION OF RICHARD T. McDERMOTT - 14

8-ER-1917

firm.

l.     The above are just a few specific examples. The additional discovery, the resolution of the discovery disputes and the taking of depositions will enable me to fully and fairly prepare my opinions as to the breaches by the Defendants herein of their various  duties owed to AIA Services and AIA Insurance and/or the concealment of facts from AIA Services and its innocent minority shareholders (including the aiding and abetting  the applicable Controlling AIA Defendants' breach of fiduciary duties) as to the matters identified in Sections 5, 6, 12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 31, 32, 33, 34, 36, 38, 39, 40 and/or 41 of the Hawley Troxell Defendants' Statement of Material Undisputed Facts and the corresponding arguments in Hawley Troxell Defendants Memorandum of Law in Support of Summary Judgment. At that time, I expect to be able to fully address any inconsistencies or concealments by Mr. Riley or other Hawley Troxell Defendants, including, without limitation, as those issues may apply to the fraudulent concealment prong of the statute of limitations.

29.     Lastly, I understand that Mr. Bond was forced to move the depositions of Messrs. Riley, Babbitt and Ashby to July 16, 17 and 18, respectively, because Loren Ipsen objected to not receiving the formal notices of depositions within fourteen days of the deposition dates (though I understand that Mr. Ipsen and other counsel were provided with email notification of the deposition dates more than fourteen days prior to the deposition dates). I had planned on attending those depositions. However, I am not available on July 16-18. As a result, I am separately respectfully requesting that this Court grant the continuance requested by Mr. Miesen. I am also respectfully requesting additional time so that I can review and consider the final deposition transcripts and exhibits in order to fully consider and incorporate them into my opinions to be submitted with respect to the conduct of the Hawley Troxell Defendants.

DECLARATION OF RICHARD T. McDERMOTT - 15

**8-ER-1917**

8-ER-1918

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.


*July 2, 2016, New York, New York*                    */s/ Richard T. McDermott*
Date and City and State Signed                    Richard T. McDermott


DECLARATION OF RICHARD T. McDERMOTT - 16

**8-ER-1918**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 2nd day of July 2018, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

James D. LaRue:    jdl@elamburke.com, sd@elamburke.com

Jeffrey A. Thomson:    jat@elamburke.com, nlp@elamburke.com

Loren C. Ipsen:    lci@elamburke.com, nlp@elamburke.com

Alyson Anne Foster:    aaf@aswblaw.com, cme@aswblaw.com, kkp@aswblaw.com, lmk@aswblaw.com, mar@aswblaw.com, tie@aswblaw.com

Benjamin A. Schwartzman:    bas@aswblaw.com, cme@aswblaw.com, jsd@aswblaw.com, kcr@aswblaw.com, lmk@aswblaw.com, mah@aswblaw.com, tie@aswblaw.com

Martin J. Martelle:    attorney@martellelaw.com, vanessa@martellelaw.com

Vanessa A. Mooney:    vanessa@martellelaw.com

Markus William Louvier:    mlouvier@ecl-law.com, byesland@ecl-law.com

James B King:    jking@ecl-law.com

Jack S Gjording:    jgjording@gfidaholaw.com, ktonkin@gfidaholaw.com

Stephen Lee Adams:    sadams@gfidaholaw.com

Fanxi Wang:    fwang@birdmarella.com, mhicks@birdmarella.com

Mark T. Drooks:    mdrooks@birdmarella.com, mhicks@birdmarella.com

Peter L Steinman    psteinman@mrllp.com

Tyler Scott Waite:    twaite@campbell-bissell.com

Michael Scott Bissell:    mbissell@campbell-bissell.com

AND I FURTHER CERTIFY that on such date I served the foregoing on the following

DECLARATION OF RICHARD T. McDERMOTT - 17

**8-ER-1919**

8-ER-1920

non-CM/ECF Registered Participants in the manner indicated:  Via first class mail, postage prepaid

addressed as follows:

> AIA Services Corporation
> P.O. Box 538
> Lewiston, ID  83501
>
> AIA Insurance, Inc.
> P.O. Box 538
> Lewiston, ID  830501

*/s/ Roderick C. Bond*
Roderick C. Bond

DECLARATION OF RICHARD T. McDERMOTT - 18

**8-ER-1920**

Case 1:10-cv-00404-DCN-CWD   Document 408   Filed 07/06/18   Page 1 of 5

UNITIED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>**v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants.<br><br>CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES | Case No. 1:10-cv-00404-DCN-CWD<br><br>**ORDER** |

ORDER - 1

**8-ER-1921**

BECK, an individual,

                Defendants/Third-Party
                Plaintiffs,

       **v.**

REED TAYLOR, an individual,

                Third-Party Defendant.

REED TAYLOR, an individual,

                Third-Party Defendant/
                Counterclaimant,

       **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

                Counterdefendants.

GEMCAP LENDING I, LLC, a Delaware limited liability company,

                Defendant/Third-Party
                Plaintiff,

       **v.**

QUARLES & BRADY, LLP, a Wisconsin limited legal partnership; and CRUMB & MUNDING, P.S., a Washington professional service corporation,

                Third-Party

Defendants.

ORDER - 2

This matter comes before the Court on the Plaintiff Dale L. Miesen's Motion to Continue the Hawley Troxell Defendants' Motion for Summary Judgment. Dkt. 403.

The Court finds that the Plaintiff has significant and unresolved discovery disputes pending involving interrogatories and requests for production that were propounded in July 2017, which such discovery disputes were commenced by the Plaintiff before this Court prior to the Hawley Troxell Defendants filing their Motion for Summary Judgment. Dkt. 388. This Court referred those discovery disputes to Judge Dale for resolution, Dkt. 386, and the Plaintiff has submitted those disputes to Judge Dale. Dkt. 403-16. Those discovery disputes involve answers to interrogatories and responses to requests for production of documents, along with the production of responsive documents, including documents that the Plaintiff asserts privilege does not apply or has been waived, which have been outstanding since July 2017. Accordingly, the Court finds that discovery is far from being complete.

The Court finds that the Plaintiff diligently pursued discovery in July 2017, which was well before the Hawley Troxell Defendants' Motion for Summary Judgment was filed on May 31, 2018, and that the discovery disputes involve some of the issues or subject matter in the pending Motion for Summary Judgment. The Court finds that it would be inappropriate to proceed with the pending Motion for Summary Judgment, including portions of that Motion which may be legal in nature, when significant discovery disputes exist between the Plaintiff and the Hawley Troxell Defendants and certain other defendants, and/or when the Plaintiff has submitted the significant discovery disputes to Judge Dale in order to move to compel.

ORDER - 3

The Court finds that the Plaintiff's counsel, Roderick C. Bond, and expert witness, Professor Richard T. McDermott, have submitted detailed and comprehensive declarations specifying evidence and testimony that they hope to obtain through further discovery (including through resolving the pending discovery disputes), the Court finds that such evidence and testimony, if they exist, are essential to the Plaintiff's case, and the Court finds that such evidence and testimony could create genuine issues of material fact as to various aspects of the pending Motion for Summary Judgment.

The Court also finds that the parties' counsel need to communicate and work together to schedule depositions, and that it would be a waste of judicial resources for the Plaintiff to take the depositions referenced in the Declaration of Roderick C. Bond prior to the resolution of the pending discovery disputes.

Based upon the Court's findings above and for the reasons asserted in the Plaintiff's Memorandum of Law and the Declarations submitted with the Motion, the Court finds that the Plaintiff has met the standard required to obtain relief under Fed. R. Civ. P. 56(d). The Court finds that the Plaintiff has shown good cause under Fed. R. Civ. P. 6(b) and has requested additional time before the due date for the Plaintiff's response to the Hawley Troxell Defendants' Motion for Summary Judgment.

Accordingly, finding good cause to do so under either Fed. R. Civ. P. 56(d) or Fed. R. Civ. P. 6(b), the Court HEREBY ORDERS as follows:

1. Plaintiff Dale L. Miesen's Motion to Continue the Hawley Troxell Defendants' Motion for Summary Judgment (Dkt. 403) is GRANTED.

2. The parties shall work to resolve the pending discovery disputes being

ORDER - 4

**8-ER-1924**

submitted to Judge Dale and communicate with each other to schedule mutually agreeable deposition dates after the pending discovery disputes have been resolved and the responsive documents, if any, have been produced.

3. The Court will hold a telephonic conference in approximately 60 days. At said conference, the parties shall report to the Court the status of the discovery disputes and depositions. If necessary, the parties shall be prepared to identify what additional discovery is necessary to respond to the pending Motion for Summary Judgment and how long said discovery will take to complete. Based on the reports given at that conference, the Court will either continue the Motion for Summary Judgment for an additional set period followed by another telephonic conference or set a briefing schedule for the Motion for Summary Judgment.

DATED: July 6, 2018

David C. Nye
U.S. District Court Judge

ORDER - 5

**8-ER-1925**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA  98004
Telephone: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Attorney for the Plaintiff Dale L. Miesen

UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.; <br><br> Plaintiff, <br><br> v. <br><br> CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 1:10-cv-00404-DCN-CWD <br><br> DECLARATION OF RICHARD T. McDERMOTT IN SUPPORT OF PLAINTIFF DALE L. MIESEN'S FIRST MOTION TO COMPEL DISCOVERY FROM THE DEFENDANTS GEMCAP, AIA SERVICES, AIA INSURANCE, THE HAWLEY TROXELL DEFENDANTS, CROPUSA INSURANCE SERVICES, CROPUSA INSURANCE AGENCY AND R. JOHN TAYLOR |

DECLARATION OF RICHARD T. McDERMOTT - 1

**8-ER-1926**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

Defendants/Third-Party Plaintiffs,

v.

REED TAYLOR, an individual,

Third-Party Defendant.

REED TAYLOR, an individual,

Third-Party Defendant/ Counterclaimant,

v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

Counterdefendants.

GEMCAP LENDING I, LLC, a Delaware limited liability company,

Defendant/Third-Party Plaintiff,

v.

QUARLES & BRADY, LLP, a Wisconsin limited legal partnership; and CRUMB & MUNDING, P.S., a Washington professional service corporation,

Third-Party Defendants.

DECLARATION OF RICHARD T. McDERMOTT - 2

**8-ER-1927**

I, Richard T. McDermott, declare:

1.      I am over the age of eighteen and am competent to testify in court, including as to the matters set forth in this declaration. This declaration and my opinions herein are based on personal knowledge, education, training, and experience.

2.      In 1962, I received a B.A. from Marquette University. In 1966, I obtained a J.D. from Fordham University School of Law.

3.      In 1967, I was admitted to practice law in the State of New York. I am presently in good standing and licensed to practice law in the State of New York. I have been admitted to practice law in New York for over 50 years.  I am also a member of the New York State Bar Association Securities Regulation Committee.

4.      From 1966 through 1990, I was an Associate and Partner with the law firm of Alexander & Green/Walter Conston Alexander & Green (the firms combined). From 1990 through 2004, I was a Partner of Rogers & Wells/Clifford Chance LLP (the firms merged in 2000).  While at that firm, I chaired the Legal Personnel Committee, and was responsible for the training, development, evaluation and advancement of associate attorneys and counsel, as well as being involved in the partner selection process.

5.      From 2000 through the present time, I have been an Adjunct Professor at Fordham University School of Law. From 1980 through 1998, I was an Adjunct Professor at New York University School of Law.  In both positions, I taught law school classes on the Legal Aspects of Corporate Finance, and covered such subjects as debentures, indentures, preferred stock, convertible securities, dividends and stock repurchases as well as third party opinions in corporate transactions.

DECLARATION OF RICHARD T. McDERMOTT - 3

6.      I am the co-author of Chapters 1 and 2 (Introduction and Elements of Opinion Letters, respectively) and author of Chapter 3 (Legal Opinions on Corporate Matters) of the Treatise: *LEGAL OPINION LETTERS A Comprehensive Guide to Opinion Practice* (Third Edition).  I have been a member of the TriBar Opinion Committee for 28 years. The TriBar Opinion Committee is a nationally recognized committee that publishes Reports on various aspects of opinion practice.

7.      I am the author of *Legal Aspects of Corporate Finance* (5th ed. 2013) and a 2017 Supplement thereto which is published by LexisNexis Carolina Academic Press. It is my understanding that the book has been used at approximately twenty-two law schools. I have authored other articles and materials (including a Teacher's Manual for *Legal Aspects of Corporate Finance*).

8.      In 1988, I was a visiting lecturer at Monash University in Melbourne, Australia and the University of Adelaide, Australia, Corporate and Business Law Centre. In 1999, I co-lectured with former Delaware Chancellor William Allen and James Fuld, author of *Legal Opinions In Business Transactions - An Attempt to Bring Some Order Out of Some Chaos*, 28 Bus. Law. 915 (1973), on the Law and Business of Investment Banking at the New York University Center for Law and Business.

9.      From 2009 through the present time, I have served as a Special Master for the New York State Supreme Court Appellate Division, First Department. In that regard, I read the briefs submitted to me, obtain relevant documents and filings, attend hearings from time to time, evaluate the parties' positions, and assist in mediating the cases.

10.      I have extensive experience in the area of corporate governance of privately held and publicly traded corporations (including Fortune 500 companies), providing legal advice to

DECLARATION OF RICHARD T. McDERMOTT - 4

Boards of Directors in matters involving significant transactions, corporate governance, derivative and class action shareholder suits, the payment of directors' expenses (including attorneys' fees), and related matters. I also have extensive experience with the preparation of: proxy statements, Reports to the Securities and Exchange Commission, reports to shareholders, disclosures to shareholders, notices of shareholder meetings, shareholder resolutions, notices of board meetings, and board resolutions. I also have extensive experience in reviewing and interpreting certificates/articles of incorporation, bylaws, shareholder agreements, notices to shareholders, shareholder resolutions, notices to board members and board resolutions; and ensuring that shareholder resolutions and board resolutions comply with a corporation's certificate/ articles of incorporation, bylaws, and applicable restrictions under statutory and common law. I have experience advising the boards of directors of corporations in transactions, including, the board of directors of Fortune 500 companies. I also have extensive experience in providing advice to officers, boards of directors, shareholders (minority and majority shareholders) for corporations, including as to matters involving anticipated or actual litigation.

11.     I have extensive experience in domestic and international corporate finance, mergers and acquisitions, tender offers, strategic alliances and bankruptcy reorganizations.

12.     My experience in corporate law also includes, purchases and redemptions by a corporation of its own shares (and formulating and evaluating proposals therefor) from both substantial shareholders and the investing public in issuer tender offers and open market transactions, strategic alliances, going private transactions, bankruptcy reorganizations, the legal and equitable theories of piercing the corporate veil and alter-ego (as well as taking appropriate corporate action to prevent such claims), and other general corporate matters.

DECLARATION OF RICHARD T. McDERMOTT - 5

13.     I have experience addressing attorney-client privilege and work product issues for corporations.

14.     I have practiced corporation and securities law for more than 35 years. I have represented domestic and international acquiring and acquired clients in mergers and acquisition transactions involving acquisition amounts from less than $1 million to more than $1 billion. Included in that work was the participation in and supervision of others with respect to pre-transaction due diligence and the rendering of reports pertaining to pre-transaction due diligence.

15.     I also have extensive experience in representing my firm's corporate clients in various litigation matters, including, without limitation, experience addressing conflicts of interest in litigation, all aspects of litigating cases, trying cases and appealing cases.

16.     I also have experience serving on the boards of directors of a privately held corporation and a charitable foundation.

17.     I was retained by Roderick Bond Law Office, PLLC to be an expert in this lawsuit. Specifically, I have been retained to provide expert testimony in this lawsuit regarding various matters pertaining to the defendants.

18.     I have previously been retained as an expert witness for Roderick Bond Law Office, PLLC in other related cases (as disclosed in Paragraph 21 below). Consequently, I am very familiar with many of the facts and legal issues in the instant stockholder's derivative suit.

**Certain Information Reviewed and Relied Upon**

19.     When I reference the parties below, I will use the same definitions as used by the Plaintiff in his Third Amended Complaint. Dkt. 211 at 5-10.

20.     I have reviewed the relevant filings in this case (most of the filings in this case), including, without limitation, the Third Amended Complaint, the defendants' Answers and

DECLARATION OF RICHARD T. McDERMOTT - 6

Affirmative Defenses to the Third Amended Complaint, the purported Settlement Agreement involving GemCap Lending I, LLC (Dkt. 128 at 21-48), and the Hawley Troxell Defendants' Motion for Summary Judgment together with all filings pertaining to that Motion (including, the Declarations of D. John Ashby and Richard A. Riley and the exhibits attached thereto).

21.     I have reviewed thousands of pages of certain filings (including complaints, answers, motions, declarations, opinions and orders, etc.) and documents produced in discovery (including deposition transcripts and exhibits) in various lawsuits that Mr. Bond has provided to me, including, without limitation, certain filings and discovery related documents pertaining to: **(a)** *Reed Taylor v. AIA Services Corp., et al.*, Nez Perce County District Court Case No. CV-07-00208; **(b)** *Donna Taylor v. AIA Services Corp., et al.*, Consolidated Nez Perce District Court Case Nos. CV-08-1150 and CV-13-1075 (I was retained by Roderick Bond Law Office, PLLC as an expert for this case); **(c)** *Donna Taylor v. AIA Services Corp.*, Nez Perce County District Court Case No. CV-09-02470; **(d)** *Reed Taylor v. Riley, et al.*, Ada County District Court Case No. CV-OC-09-18868 (I was retained by Roderick Bond Law Office, PLLC as an expert for this case); **(e)** *Reed Taylor v. Babbitt, et al.*, Nez Perce County District Court Case No. CV-08-01765; **(f)** *Donna Taylor v. AIA Services Corp.*, Nez Perce County District Court Case No.: CV-09-02470; **(g)** *AIA Services Corp. v. Durant, et al.*, Nez Perce County District Court Case No. CV-12-01483; **(h)** *Reed Taylor v. Bell, et al.*, King County Superior Court Case No. 12-2-10803-0-SEA (I was retained by Roderick Bond Law Office, PLLC as an expert for this case); **(i)** *GemCap Lending I, LLC v. CropUSA Insurance Agency, Inc., et al.*, U.S. District Court, Central District of California, Western Division, Case No. 2:13-cv-05504-SJO-MAN; **(j)** *Durant, et al. v. GemCap Lending I, LLC, et al.*, Nez Perce County District Court Case No. CV-14-01444; **(k)** *Church Crop Insurance Services, Inc. v. GCB Diversified Services, Inc. et al.*, Polk County, Iowa District Court Case No.

DECLARATION OF RICHARD T. McDERMOTT - 7

EQCE077193; **(l)** *GemCap Lending I, LLC v. Quarles & Brady, et al.*, U.S. District Court, Central District of California, Western Division, Case No. 2:14-cv-07937-RSWL-E; **(m)** *Missouri Crop, LLC, et al. v. GCB Diversified Services, Inc., et al*. U.S. District Court, Eastern District of Missouri, Northern Division, Case No. 2:15-cv-00024; **(n)** *Zions First National Bank v. 17 State Street Partners LLC, et al.*, Nez Perce County District Court Case No. CV-15-02084; **(o)** *GemCap Lending I, LLC v. Scottsdale Indemnity Co.*, U.S. District Court, Central District of California, Case No. 2:15-cv-09942-CAS; and **(p)** *GemCap Lending I, LLC v. AIA Services Corp., et al.*, Nez Perce County District Court Case No. CV-16-02207. The common thread in the foregoing cases is that they, directly or indirectly, involve improper conduct by one or more of the Controlling AIA Defendants and certain of their attorneys (and GemCap in certain of these cases).

22.    I have reviewed the articles of incorporation and amendments thereto and the bylaws and amendments thereto of AIA Services, AIA Insurance and CropUSA. I have also reviewed relevant board resolutions, board meeting minutes, notices of shareholders 'meetings and shareholder resolutions for AIA Services, AIA Insurance and CropUSA, (albeit the documents fail to establish those corporations have been properly operated). I have also reviewed relevant financial statements of AIA Services, AIA Insurance and CropUSA.

23.    I have reviewed and am familiar with the pertinent and applicable Sections of Idaho Code, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, Idaho Rules of Evidence, the Idaho Rules of Professional Conduct, and the Idaho Bar Commission Rules. I have also reviewed and am familiar with pertinent and applicable Idaho case law, federal case law, other states' case law, treatises (e.g., Fletcher, Wright & Miller, etc.) and other authorities (including law review articles).

DECLARATION OF RICHARD T. McDERMOTT - 8

24.     I am familiar with the pending discovery disputes, including, without limitation, the pending disputes regarding the waiver of privilege and work product. One of the purposes of this Declaration is to provide opinions to further substantiate the Plaintiff's claims for purposes of showing good cause.

25.     I have consulted with Roderick Bond, including as to matters relative to the discovery disputes.

26.     While I was provided with a number of the 289 pdf files that GemCap allegedly inadvertently produced to Mr. Bond on July 13, 2018, I am not relying on, nor considering, those specific pdf files for this Declaration, since GemCap has asserted that those pdf files are privileged as provided in Fed. R. Civ. P. 26(b)(5)(B) (though I am not conceding that those files are in fact attorney-client privileged documents or that privilege was not previously waived as to any of them).

27.     When I refer to "aiding and abetting" or "aid and abet" below, I mean, *inter alia*, to "aid, abet, counsel, encourage the wrongdoer by words, gestures, looks, or signs; or give substantial assistance; or encouragement to the accomplishment of a legal wrong; or to knowingly and substantially assist in the covering up or obfuscation of the same."

28.     When I refer to "conspiracy" or "conspire" or "conspired" below, I mean "an agreement between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner."

29.     When I refer to fiduciary duties of "obedience" below, I am referring to the obligation to comply with articles of incorporation, bylaws and applicable law, among related issues. While it appears that Idaho has never squarely addressed whether "obedience" is a component of fiduciary duties owed by officers, directors or controlling shareholders, the issue is

DECLARATION OF RICHARD T. McDERMOTT - 9

a distinction without a difference because fiduciary duties of "obedience" are also considered by courts and commentators to be aspects of the fiduciary duty of "loyalty."

30. Unless I specifically state otherwise below, when I refer to "privilege" or "work product", I mean both attorney-client privilege and work product and accountant-client privilege and work product, which are both recognized under Idaho law. *See* I.C. § 9-2013(2); I.C. § 9-203A; I.R.E. 501; I.R.E. 502; I.R.E. 510; I.R.E. 511; I.R.E. 513; I.R.E. 515. In other words, I am seeking as much privileged, work product and non-privileged information as possible based on the facts and circumstances in order to, *inter alia*, understand and evaluate every decision and transaction.

31. Since this declaration is not being submitted for summary judgment purposes or as a formal expert witness disclosure and this Court appears to desire brevity for purposes of the motion to compel, I will not include a recitation of the facts and the legal authorities further supporting my opinions below (though my opinions are supported by facts and legal authorities and I may specifically address certain authorities below). Nevertheless, I incorporate by reference the factual allegations asserted in Paragraphs 4-184 of the Third Amended Complaint as support for my opinions and requests for information below (I note that there are some typos in the Third Amended Complaint, though they are not material, but the facts alleged are otherwise generally correct based on my review of the documents and information). Dkt. 211 at ¶¶ 4-184. As a result, I am attaching the Third Amended Complaint as Exhibit A to this Declaration.

**Opinions and Necessity of Obtaining Privileged Information**

32. While it is not my practice to testify against fellow attorneys, I have made exceptions when I agreed to testify in this lawsuit and previously in related lawsuits based on the egregious facts and circumstances. By providing the testimony and opinions set forth below, I am,

DECLARATION OF RICHARD T. McDERMOTT - 10

of course, not seeking to address issues of law that are to be decided by this Court; rather I am, seeking to provide this Court with information sufficient to establish that the Plaintiff's claims are "colorable" in order to establish good cause and to demonstrate that I need access to the privileged information and work product relating to that privileged information in order to enable me to develop, formulate, and articulate definitive opinions with respect to such matters.

33.     Based upon my knowledge, education and experience, together with the authorities, documents and information I have reviewed, assumed and disclosed, I render the opinions and requests for information set forth in the following paragraphs in order that I am able to obtain sufficient information to fully and fairly prepare and submit detailed expert opinions to oppose or support summary judgment as well as my expert report in compliance with the December 1, 2018 deadline. In addition, rather than repeat the testimony and opinions set forth in my Declaration filed on July 2, 2018, I incorporate herein by reference my testimony and opinions here as further support for establishing the need for the privileged information and work product regarding the transactions and issues discussed in that declaration. A copy of that Declaration is attached as Exhibit B (the reference to 2016 as to the date that I signed that Declaration was a typo by Mr. Bond, and should be 2018). As I testified in Paragraphs 25 through 29 in Exhibit B, I need a substantial amount of information to fairly and fully prepare my opinions for this lawsuit and to address and rebut, to the extent necessary, any applicable affirmative defenses; as discussed in paragraph 46 below, this information includes all of the privileged and work product information pertaining to CropUSA, AIA, John Taylor and any other defendants which was provided by John to GemCap.  My opinions and requests for information set forth in Exhibit B and below are not exhaustive.

DECLARATION OF RICHARD T. McDERMOTT - 11

**8-ER-1936**

8-ER-1937

34.     As a preliminary matter, in my opinion, John is breaching his fiduciary duties of loyalty owed to AIA Services and AIA Insurance by attempting to assert privilege and work product protections for all of the transactions, litigation and issues alleged in Plaintiff's Third Amended Complaint.[1] If John were properly discharging his fiduciary duties of loyalty and obedience owed to AIA Services and AIA Insurance, he would consent to a waiver of privilege and work product for all transactions and litigation referred to in the Third Amended Complaint (other than the privilege and work product with respect to his present counsel, Mr. Martelle concerning the representation of the instant lawsuit). Moreover, in my opinion, John has a myriad of conflicts of interest that bar him under AIA Services' amended articles of incorporation and AIA Services and AIA Insurance's bylaws from making a decision to not waive privilege or work product. John was intimately involved in all of the transactions and litigation alleged in the Third Amended Complaint and, therefore, in my opinion his conflicts of interest prevent him from addressing privilege or work product issues on behalf of either AIA Services or AIA Insurance. This would also be true under the common law even if AIA Services or AIA Insurance's articles of incorporation or bylaws did not prevent him from making decisions on behalf of AIA Services or AIA Insurance. Finally, it is worth noting that John continues to reject Donna Taylor's appointment of a director to AIA Services' board of directors, as is her unqualified right under AIA Services' amended articles of incorporation. *See* Dkt. 153-1 at 86. Stated differently, AIA Services' board is not properly composed and thus no purported decision of that board is valid. While John appears to have improperly issued himself 15,000 AIA Series A Preferred Shares

---

[1] Although the crime/fraud exception to privilege may even apply to communications and privileged information between the Controlling AIA Defendants and their present counsel, Mr. Martelle, I am not requesting that privileged information and it is my understand that neither is Plaintiff at this time. I do reserve the right to address this issue in the future, however.

DECLARATION OF RICHARD T. McDERMOTT - 12

(another violation of his duties of loyalty owed to AIA Services) in an apparent attempt to have more Series A Preferred Shares than Donna Taylor, this effort fails because the Idaho Supreme Court has reversed Judge Brudie's decision that Donna Taylor holds only 7,110 Series A Preferred Shares, thereby confirming that she holds 41,651.25 Series A Preferred Shares. *See Taylor v. Taylor*, __ P.3d __, 2018 WL 3597848 (Idaho July 27, 2018).

35.     As another preliminary matter, the Third Amended Complaint alleges numerous concealments from AIA by the defendants. *E.g.*, Dkt. 211 at ¶¶ 17, 44, 47, 49, 54-55, 61, 65, 77, 81, 84, 87, 89, 91, 106, 111, 118, 132, 148, 156, 164, 164(q), 164(r), 164(qq), 193, 204, 208-215, 217. The knowledge possessed by, or representations made by, John, Connie, Beck, Cashman, Duclos or Freeman cannot be imputed to AIA Services and AIA Insurance because those parties all had conflicts of interest by way of their ownership of, or employment by, CropUSA Insurance Agency or because of their involvement in the transactions at issue in the Third Amended Complaint or their adverse interests to AIA Services and AIA Insurance. Moreover, they acted outside of the powers set forth in the amended articles of incorporation and restated bylaws, were not properly electing directors and officers; they also refused to accept Donna Taylor's board designee as required under AIA Services' amended articles of incorporation. Therefore, to this day AIA Services and AIA Insurance have no knowledge of any of what in my opinion are their fraudulent and other otherwise unlawful activities.[2]

36.     In my opinion, since approximately 2000, the Controlling AIA Defendants have concealed material facts from AIA Services and its innocent minority shareholders regarding, *inter*

---

[2] While it appears this issue has not been addressed by Idaho appellate courts, other courts have held that knowledge is not imputed to a corporation in such circumstances. *E.g., Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 774 (4th Cir. 1995); *Ray v. Karris*, 780 F.2d 636, 641-642 (7th Cir. 1985).

DECLARATION OF RICHARD T. McDERMOTT - 13

*alia* the formation, funding, and operation of CropUSA Insurance Agency and the transactions pertaining to AIA Services or AIA Insurance and CropUSA Insurance Agency. The Controlling AIA Defendants had duties to make full disclosure as controlling shareholders, directors or officers, but instead chose to conceal facts from AIA Services and its innocent minority shareholders. Some of these concealments were done at times in which the Hawley Troxell Defendants were aware thereof, yet they took no action and continued representing AIA Services or AIA Insurance without insisting upon full disclosure. In my opinion, this constitutes some of the Hawley Troxell Defendants' breaches of their fiduciary duty of care and loyalty owed to AIA Services and AIA Insurance.

37.     It is also my opinion, that John, Connie, Beck, Cashman, and Duclos (who, were at relevant times, directors, officers, or controlling/majority shareholders of AIA Services) breached their fiduciary duties (including the duties of loyalty and obedience) by, *inter alia*, engaging in, authorizing, or approving the transactions and decisions referenced in Paragraphs 4-164 of the Third Amended Complaint (including establishing the conflicts of interest by way of ownership in various entities).

38.     In my opinion, the Hawley Troxell Defendants breached their fiduciary duties (including the duty of loyalty) by, *inter alia*, engaging in the improper joint representation of AIA Services, AIA Insurance and CropUSA Insurance Agency in light of the serious conflicts of interest (which they acknowledge existed) and the fact that disinterested shareholders of AIA Services were the only parties who could have authorized such representation owing to the conflicts of interest of Connie, John, Beck, Cashman and Duclos (and the other officers or former

DECLARATION OF RICHARD T. McDERMOTT - 14

directors (e.g., Freeman)) as referenced in the allegations in the Third Amended Complaint.[3]  In my opinion, that the Hawley Troxell Defendant breached their fiduciary duties (including the duty of loyalty) owed to AIA Services and AIA Insurance when they failed to insist upon substantial disclosures to the disinterested common shareholders as to various matters, including their joint representation of CropUSA Insurance Agency, AIA Services and AIA Insurance. Moreover, they should have insisted upon the appointment of a receiver for AIA Services when Donna Taylor requested the same in 2009 (a receiver would have put an end to the Controlling AIA Defendants' breaches of fiduciary duties). In addition, the Hawley Troxell Defendants' motion for summary judgment and the declarations of Messrs. Riley and Ashby interject issues into this case regarding their representation of AIA, as a result of which I need to review the relevant attorney-client privilege and work product materials in order to fully and fairly address those issues. *See* Dkts. 388-1, 388-2, 389, 390.

39.    In my opinion, GemCap, its counsel, or both, were fully aware that the guarantees (Dkt. 153-2 at 9-17, 67-86) and subsequent Settlement Agreement (Dkt. 128 at 21-48) were illegal and improper because, *inter alia*, such transactions were barred by (i) AIA Services' amended articles of incorporation, including the provisions barring guarantees other than to wholly owned subsidiaries, and conflict of interest transactions as well as barring AIA Services from incurring any indebtedness that diminished the net value of the company below the amounts owed to Donna

---

[3] At this state, I am assuming that Richard Riley did not breach a duty to AIA when he prepared a draft "offering statement under Regulation A of the Securities Act of 1993 (the 'Reg A Offering') for the sale of CropUSA commons stock" and "a private placement memorandum" in 2004. Dkt. 390 at 14, ¶ 33; *see also* Dkts. 390-19 & 390-20. However, I need to examine the privileged information and work product relating to that work to ensure that I understand what Mr. Riley did and whom he was representing, and whether he was also representing AIA Services or AIA Insurance at that time. These issues were raised in connection with the Hawley Troxell Defendants' motion for summary judgment.

DECLARATION OF RICHARD T. McDERMOTT - 15

Taylor (constituting an over $400,000 obligation to repurchase her Series A Preferred Shares, plus accrued interest since May 2008); and (ii) AIA's amended bylaws (which also contained conflict of interest provisions). GemCap was provided with copies of these documents prior to the entry into the first guarantee. As a result, in my opinion, GemCap has aided and abetted or conspired with John, Beck and Connie (the alleged directors who purportedly authorized the guarantee) with respect to the guarantees and with John with respect to the Settlement Agreement (it appears that Connie and Beck may have resigned as directors before that agreement was signed, though it does not relieve them of liability by having signed the purported resolutions authorizing the guarantees that resulted in the unlawful Settlement Agreement). Moreover, in my opinion, the Settlement Agreement with GemCap could constitute evidence of conspiracy to defraud AIA Services and AIA Insurance. However, I need all of the privileged information (including, but not limited to settlement communications), work product and other non-privileged information in order to enable me to fully develop, formulate and articulate definitive opinions with respect to such matters, as well as other matters referred to elsewhere herein and to specifically address the facts and circumstances and any defenses which have been or may be asserted by the defendants.

40.     Because as discussed in the preceding paragraph the knowledge of the Controlling AIA Defendants cannot be imputed to AIA Services or AIA Insurance, I need to obtain as much information as possible, including all privileged information, work product and non-privileged information (e.g., emails between the parties or their counsel), in order that that I may able to ascertain precisely what happened and when and thus confirm, revise or expand upon the opinions expressed herein. In addition, this information is necessary in order to enable me to fully develop, formulate and articulate definitive opinions with respect to the Controlling AIA Defendants and Hawley Troxell Defendants' breaches of fiduciary duties (among other claims) and to rebut certain

DECLARATION OF RICHARD T. McDERMOTT - 16

affirmative defenses asserted by the defendants such as advice of counsel or advice of accounting professionals,[4] apparent authority or imputed knowledge,[5] and alleged actions or instructions approved by AIA Services and AIA Insurance or with knowledge imputed upon them,[6] which have been asserted by the defendants.[7]

41.     As to the advice of counsel and advice of accountant defenses referenced in the preceding paragraph which have been asserted by AIA Services, AIA Insurance, CropUSA Insurance Agency, CropUSA Insurance Services, Beck, Cashman, Connie, John and Duclos, I need to obtain the privileged information, work product and non-privileged information (e.g., emails between John, Beck, Connie, Cashman and Duclos) pertaining to such defenses so that I can fully and fairly prepare my rebuttal opinions and because that information would be relevant to my opinions regarding breaches of fiduciary duties and other claims, including, aiding and abetting breaches of fiduciary duties. Indeed, the Hawley Troxell Defendants themselves claim that they need to use the privileged information in their possession for their defense, or they would be "deprived of due process."[8]

42.     As to GemCap's apparent authority and imputed knowledge defenses, I need to obtain the privileged information, work product and non-privileged information (e.g., emails between the parties or their counsel relating to the entry into the guarantees and Settlement Agreement) pertaining to such defenses in order that I can fully and fairly prepare my rebuttal

---

[4] Dkt. 193 at 215 at 27, ¶ 10; Dkt. 366 at 34, ¶ 10.

[5] Dkt. 283 at 146, ¶¶ 21-22. *See also Middlekauff v. Lake Cascade, Inc.*, 110 Idaho 909, 914, 719 P.2d 1169, 1174 (1986) ("Apparent authority is created when a principal voluntarily places an agent in such a position that a person of ordinary prudence…is justified in believing that the agent is acting pursuant to existing authority").

[6] Dkt. 193 at 61-64.

[7] For purposes of this declaration and my testimony and opinions, I will assume that the advice of counsel and related affirmative defenses are viable.

[8] Dkt. 193 at 63; *see also* Dkt. 394-1 at 6-7.

DECLARATION OF RICHARD T. McDERMOTT - 17

opinions and because that information would be relevant to my opinions regarding breaches of fiduciary duties and other claims, including, aiding and abetting breaches of fiduciary duties.

43.     As to the Hawley Troxell Defendants' defenses that they had allegedly obtained consents or instructions from AIA Services or AIA Insurance and that the knowledge of the Controlling AIA Defendants is imputed to AIA Services or AIA Insurance, I need to obtain the privileged information, work product and non-privileged information (e.g., emails between the Hawley Troxell Defendants and any of the Controlling AIA Defendants) pertaining to such defenses so that I can fully and fairly prepare my rebuttal opinions and because that information would be relevant to my opinions regarding breaches of fiduciary duties and other claims, including, aiding and abetting breaches of fiduciary duties.

44.     While it is my opinion that no conflict waiver would be reasonable or effective under the facts of this case to warrant entering into such a waiver or a joint defense with the parties who directly or indirectly assisted in taking AIA's money and assets, I need to review the privileged and work product information to see how the Hawley Troxell Defendants could have possibly obtained approval by any authorized constituents of AIA Services or AIA Insurance for such waivers or joint defense agreements.. This information will also help to determine and establish the extent to which the Hawley Troxell Defendants aided and abetted any one or more of the Controlling AIA Defendants' breaches of the fiduciary duties they owed to AIA as officers, directors or majority /controlling shareholders of AIA Services (or in the case of John, all three). Moreover, in my opinion, the alleged conflict waivers and joint defense agreements are void and of no legal force or effect because the Controlling AIA Defendants had conflicts of interest that prevented them from consented to, or executing, such conflict waivers or joint defense agreements with the Hawley Troxell Defendants.

DECLARATION OF RICHARD T. McDERMOTT - 18

45.     Based on the facts and circumstances of this lawsuit (including as articulated in the Third Amended Complaint), I need to examine the attorney-client and accountant-client privileged information, communications and work product involving AIA Services and AIA Insurance to fully and fairly prepare my opinions that the Controlling AIA Defendants and Hawley Troxell Defendants breached their fiduciary duties owed to AIA Services and AIA Insurance. This would include the unredacted billing records for all work done by any attorney for AIA Services or AIA Insurance as to any matter or allegation in the Third Amended Complaint.

46.     The Controlling AIA Defendants have maintained operational and financial control over AIA Services since Reed Taylor sold his shares in 1995 (John, Beck and Cashman entered into voting agreements to maintain that control). The Controlling AIA Defendants have never made full disclosure of the facts to AIA Services or AIA Insurance, let alone AIA Services' innocent minority shareholders (who would be the only persons who could have authorized the transactions and litigation decisions articulated in the Third Amended Complaint). Indeed, over the last fifteen years, I am aware of only one shareholder meeting that was conducted for AIA Services and that was in connection with the illegal reverse stock split in 2012. The material that was submitted to the shareholders of AIA Services in connection with the annual meeting and attempted reverse stock split in 2012 failed to make full disclosure or disclose any of the material conflicts of interest that John, Beck and Connie had as directors of AIA Services. Instead, in my opinion John, Connie and Beck continued to conceal material facts from AIA Services' shareholders, including, without limitation, that they had signed a board resolution authorizing the limited guarantee for CropUSA in favor of GemCap. During that same time period, I am also only aware of one other matter submitted to shareholder vote, which was the request for AIA to advance the payment of attorneys' fees and costs for certain conflicted officers and directors in 2007 for

DECLARATION OF RICHARD T. McDERMOTT - 19

*Taylor v. AIA Services, et al*. However, even with regard to that vote, no disclosure was made to the shareholders. Despite the bylaws requiring an annual shareholder meeting each year, the Controlling AIA Defendants have failed to conduct such meetings and thus to make full disclosure at such meetings.

47.     When John Taylor waived privilege as to all matters involving the law firm of Quarles & Brady (Dkt. 403-8 at 10) and AIA Services, AIA Insurance, CropUSA, and other entities so that GemCap could pursue claims against Quarles & Brady (and John Taylor sought to benefit from that arrangement as provided in the Settlement Agreement), this waiver included, *inter alia*, the issue of Quarles & Brady's representation of AIA for an opinion letter in 2006 and Quarles & Brady's *pro hac vice* representation of CropUSA though the Hawley Troxell Defendants in *Taylor v. AIA Services, et al*. As a result of this waiver and in addition to the reasons that I previously stated in Exhibit B, I need to review the privileged information and communications between Quarles & Brady and the Hawley Troxell Defendants. Moreover, in my opinion, John Taylor's waiver of privilege as to Quarles & Brady regarding its representation of CropUSA in *Taylor v. AIA Services, et al*., should include the waiver of privilege as to the Hawley Troxell Defendants because they were required to sign every pleading, motion, response, reply or other paper as counsel for CropUSA. Quarles & Brady could not do so because its attorneys were not licensed to practice law in Idaho. *See* I.R.C.P. 11(a). Since the Hawley Troxell Defendants could not sign anything without conducting their own due diligence to confirm that the pleading or paper did not violate I.R.C.P. 11, I need to review the privileged information and work product originating from the Hawley Troxell Defendants relative to *Taylor v. AIA Services et al*. Moreover, in my opinion it is grossly unfair for GemCap to have such material while it is being denied to the plaintiff herein.

DECLARATION OF RICHARD T. McDERMOTT - 20

48.     In order to formulate my opinions as to damages and assess the breaches of fiduciary duties of the Hawley Troxell Defendants and the Controlling AIA Defendants, I need to be able to review the legal files, privileged communications and unredacted billing records for all matters involving CropUSA, AIA Services or AIA Insurance since the formation of CropUSA in 1999. This would also include, but not be limited to, the billing records for *Taylor v. AIA Services, et al.*, the Donna Taylor consolidated state court cases (in which I am opining here that the Controlling AIA Defendants breached their fiduciary duties by not simply paying Donna and instead choosing to spend more money paying attorneys to fight her than just paying her), the illegal reverse stock split fiasco (in which I am opining here was also a breach of Connie, John and Beck's fiduciary duties owed to AIA Services and its shareholders). In that connection it is necessary for me to review all privileged material relating to the purported reverse stock split, including the billing records of and payments made to the firm of Randall Danskin. I also need to review the transactional billing records for *GemCap v. AIA Services, et al.* (the lawsuit in which GemCap asserted that John had fraudulently conveyed an interest in AIA Services' headquarters to John's benefit in AIA Services' 401(k) Plan). I need to be able to determine who transferred this property and for what reason.

49.     Among the additional matters for which I need to examine privileged material are all of the tolling agreements and the effects thereof which are referred to in Paragraph 107 of the Third Amended Complaint wherein it is alleged that such agreements had the effect of permitting the Controlling AIA Defendants to continue to improperly operate and harm AIA.

50.     It is also necessary that I be permitted to examine any privileged material relating or in any way pertaining to the transfer of ownership of Crop USA from AIA Services to John and the other Controlling AIA Defendants.

DECLARATION OF RICHARD T. McDERMOTT - 21

8-ER-1947

**51.**     Other privileged material that should be reviewed is that pertaining to the allegations contained in paragraphs 74 through 85 of the Third Amended Complaint regarding the conversion of $ 1.5 million of AIA's money, and any privileged material relating to the purported issuance of shares AIA Series A Preferred Stock to John and his purported bylaw amendment to provide for an award of attorney's fees and costs for certain lawsuits as alleged in paragraph 162 of the Third Amended Complaint.

**52.**     As I previously mentioned, the above are not exhaustive.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.


*August 6, 2018, New York, New York*                    */s/ Richard T. McDermott*
Date and City and State Signed                    Richard T. McDermott


DECLARATION OF RICHARD T. McDERMOTT - 22

**8-ER-1947**

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 6th day of August 2018, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

James D. LaRue:    jdl@elamburke.com, sd@elamburke.com

Jeffrey A. Thomson:    jat@elamburke.com, nlp@elamburke.com

Loren C. Ipsen:    lci@elamburke.com, nlp@elamburke.com

Alyson Anne Foster:    aaf@aswblaw.com, cme@aswblaw.com, kkp@aswblaw.com, lmk@aswblaw.com, mar@aswblaw.com, tie@aswblaw.com

Benjamin A. Schwartzman:    bas@aswblaw.com, cme@aswblaw.com, jsd@aswblaw.com, kcr@aswblaw.com, lmk@aswblaw.com, mah@aswblaw.com, tie@aswblaw.com

Martin J. Martelle:    attorney@martellelaw.com, vanessa@martellelaw.com

Vanessa A. Mooney:  vanessa@martellelaw.com

Markus William Louvier:    mlouvier@ecl-law.com, byesland@ecl-law.com

James B King:    jking@ecl-law.com

Jack S Gjording:    jgjording@gfidaholaw.com, ktonkin@gfidaholaw.com

Stephen Lee Adams:    sadams@gfidaholaw.com

Fanxi Wang:  fwang@birdmarella.com, mhicks@birdmarella.com

Mark T. Drooks:    mdrooks@birdmarella.com, mhicks@birdmarella.com

Peter L Steinman    psteinman@mrllp.com

Tyler Scott Waite:    twaite@campbell-bissell.com

Michael Scott Bissell:    mbissell@campbell-bissell.com

AND I FURTHER CERTIFY that on such date I served the foregoing on the following

DECLARATION OF RICHARD T. McDERMOTT - 23

8-ER-1949

non-CM/ECF Registered Participants in the manner indicated:  Via first class mail, postage prepaid

addressed as follows:

AIA Services Corporation
P.O. Box 538
Lewiston, ID  83501

AIA Insurance, Inc.
P.O. Box 538
Lewiston, ID  830501

_/s/ Roderick C. Bond_
Roderick C. Bond

DECLARATION OF RICHARD T. McDERMOTT - 24

**8-ER-1949**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA  98004
Telephone: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Attorney for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>DECLARATION OF RICHARD T. McDERMOTT IN OPPOSITION TO THE HAWLEY TROXELL DEFENDANTS' MOTION TO MODIFY DISCOVERY MASTER ORDER NO. 1 TO GRANT LEA VE TO SERVE CATEGORICAL PRIVILEGE LOGS **[Dkt. 485]** |

DECLARATION OF RICHARD T. McDERMOTT **[Dkt. 485]** - 1

**8-ER-1950**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

Defendants/Third-Party Plaintiffs,

v.

REED TAYLOR, an individual,

Third-Party Defendant.

REED TAYLOR, an individual,

Third-Party Defendant/ Counterclaimant,

v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

Counterdefendants.

GEMCAP LENDING I, LLC, a Delaware limited liability company,

Defendant/Third-Party Plaintiff,

v.

QUARLES & BRADY, LLP, a Wisconsin limited legal partnership; and CRUMB & MUNDING, P.S., a Washington professional service corporation,

Third-Party Defendants.

DECLARATION OF RICHARD T. McDERMOTT **[Dkt. 485]** - 2

**8-ER-1951**

I, Richard T. McDermott, declare:

1.      I am a citizen of the United States, over the age of eighteen, and competent to testify in court, including as to matters in this Declaration. This Declaration is based on my personal knowledge.

2.      I have previously provided my qualifications, listed information and documents considered, and rendered testimony and opinions in prior Declarations in this lawsuit. Rather than repeat that information and my prior testimony relative to the Hawley Troxell Defendants here, I incorporate by reference herein my two declarations dated July 2, 2018 (Dkt. 403-2) and August 6, 2018 (Dkt. 419-16), respectively.

3.      Since preparing my prior Declarations, I have also reviewed additional documents, including, without limitation, the categorical privilege logs produced by the Hawley Troxell Defendants (Dkt. 427-2), the redacted billing records produced by the Hawley Troxell Defendants (Dkts. 449-82 through 449-88), and the limited documents that the Hawley Troxell Defendants and other defendants recently produced relating to their waivers of privilege. I have also reviewed the Hawley Troxell Defendants' Motion to Modify Discovery Master Order No. 1 to Grant Leave to Serve Categorical Privilege Logs (Dkt. 485).

4.      Although categorical privilege logs are permitted in certain cases, they are not appropriate here since the attorneys themselves (the Hawley Troxell Defendants) are alleged to have aided and abetted officers and directors of AIA Services and AIA Insurance in their breaches of fiduciary duties and fraud, and to have breached their own fiduciary duties and duties of care owed to AIA Services and AIA Insurance. Instead, a log which lists individually each document or communication (including any emails) that is claimed to be privileged is required to (i) permit the determination of the existence of specific documents which can form the basis for the

DECLARATION OF RICHARD T. McDERMOTT **[Dkt. 485]** - 3

**8-ER-1952**

**8-ER-1953**

expression of my opinions, including, without limitation, those opinions referred to and anticipated in Paragraphs 27-28 of my July 2, 2018 declaration (Dkt. 403-2), (ii) ascertain whether there are additional documents relevant to the formulation of my opinions which have not been produced, and (iii) determine whether privilege applies or has been waived with respect to any such documents (including any additional privileged documents which share the same subject matter as the documents that the Hawley Troxell Defendants and other defendants have recently produced because privilege has been waived). In addition, the limited information provided by the Hawley Troxell Defendants in their categorical privilege logs does not provide sufficient details for me to assess whether any disputed documents should be submitted to the Discovery Master or the Court for an *in camera* review to ascertain whether privilege applies or has been waived. Finally, the same issues described above also apply to the determination of work product—categorical logs are not appropriate. Accordingly, it not possible for me to determine any of the foregoing issues based on the Hawley Troxell Defendants' present categorical privilege log.

    I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

*December 5, 2018, New York, New York*          */s/ Richard T. McDermott*
Date and City and State Signed          Richard T. McDermott

DECLARATION OF RICHARD T. McDERMOTT **[Dkt. 485]** - 4

**8-ER-1953**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of December 2018, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

James D. LaRue:   jdl@elamburke.com, sd@elamburke.com

Jeffrey A. Thomson:   jat@elamburke.com, nlp@elamburke.com

Loren C. Ipsen:   lci@elamburke.com, nlp@elamburke.com

Alyson Anne Foster:   aaf@aswblaw.com, cme@aswblaw.com, kkp@aswblaw.com, lmk@aswblaw.com, mar@aswblaw.com, tie@aswblaw.com

Benjamin A. Schwartzman:   bas@aswblaw.com, cme@aswblaw.com, jsd@aswblaw.com, kcr@aswblaw.com, lmk@aswblaw.com, mah@aswblaw.com, tie@aswblaw.com

Martin J. Martelle:   attorney@martellelaw.com, vanessa@martellelaw.com

Vanessa A. Mooney:   vanessa@martellelaw.com

Markus William Louvier:   mlouvier@ecl-law.com, byesland@ecl-law.com

James B King:   jking@ecl-law.com

Jack S Gjording:   jgjording@gfidaholaw.com, ktonkin@gfidaholaw.com

Stephen Lee Adams:   sadams@gfidaholaw.com

Fanxi Wang:   fwang@birdmarella.com, mhicks@birdmarella.com

Mark T. Drooks:   mdrooks@birdmarella.com, mhicks@birdmarella.com

Peter L Steinman   psteinman@mrllp.com

Tyler Scott Waite:   twaite@campbell-bissell.com

Michael Scott Bissell:   mbissell@campbell-bissell.com

David R Lombardi:   drl@givenspursley.com, sherylgillogly@givenspursley.com

John M Howell:   jmh@powerstolman.com, jrm@powerstolman.com

/s/ Roderick C. Bond
Roderick C. Bond

DECLARATION OF RICHARD T. McDERMOTT **[Dkt. 485]** - 5

**8-ER-1954**

DANIEL LORAS GLYNN, ISB #5113
JONES ♦ WILLIAMS ♦ FUHRMAN ♦ GOURLEY, P.A.
The 9th & Idaho Center
225 N. 9th Street, Suite 820
PO Box 1097
Boise, ID 83701
Telephone:  (208) 331-1170
Facsimile:  (208) 331-1529
dglynn@idalaw.com

Attorneys for Defendant AIA Services Corporation & AIA Insurance, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.; | Case No. 1:10-CV-404-DCN-CWD **NOTICE OF APPEARANCE** |
| Plaintiff, | |
| vs. | |
| CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company, | |
| Defendants. | |

**NOTICE OF APPEARANCE - 1**

**8-ER-1955**

PLEASE TAKE NOTICE that the undersigned hereby makes an appearance as attorney of record for the Defendants, AIA Services Corporation & AIA Insurance, Inc, in the above-entitled action, and demands that copies of all subsequent pleadings filed in the matter be served upon us.

DATED This 8th day of January, 2019.

JONES ♦ WILLIAMS ♦ FUHRMAN ♦ GOURLEY, P.A.

/s/ Daniel Loras Glynn
DANIEL LORAS GLYNN
Attorneys for Defendant AIA Services Corporation

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of December, 2018, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF System which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| David R. Lombardi | drl@givenspursley.com |
| Roderick Cyr Bond | rod@roderickbond.com |
| Michael S. Bissell | mbissell@campbell-bissell.com |
| Tyler S. Waite | twaite@campbell-bissell.com |
| James D. LaRue | jdl@elamburke.com |
| Jeffrey A. Thomson | jat@elamburke.com |
| Loren C. Ipsen | lci@elamburke.com |
| Martin J. Martelle | attorney@martellelaw.com |
| Shawnee S. Perdue | sperdue@perdue.lawyer |
| Alyson Anne Foster | aaf@aswblaw.com |
| Benjamin A. Schwartzman | bas@aswblaw.com |
| Vanessa A. Mooney | vanessa@martellelaw.com |

/s/ Daniel Loras Glynn
Daniel Loras Glynn

**NOTICE OF APPEARANCE - 2**

**8-ER-1956**

DANIEL LORAS GLYNN, ISB #5113
JONES ♦ WILLIAMS ♦ FUHRMAN ♦ GOURLEY, P.A.
The 9th & Idaho Center
225 N. 9th Street, Suite 820
PO Box 1097
Boise, ID 83701
Telephone: (208) 331-1170
Facsimile: (208) 331-1529
dglynn@idalaw.com

*Attorneys for Defendants AIA Services Corporation,
AIA Insurance, Inc., Connie Taylor Henderson,
Michael W. Cashman, Sr., James Beck, R. John Taylor,
Crop USA Insurance Agency, and Crop USA Insurance
Services, LLC*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.; <br><br> Plaintiff, <br><br> vs. <br><br> CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company, | Case No. 1:10-CV-404-DCN-CWD <br><br> **SUBSTITUTION OF COUNSEL** |

SUBSTITUTION OF COUNSEL - 1

**8-ER-1957**

Defendants.

COME NOW Defendants Connie Taylor Henderson, Michael W. Cashman, Sr., James Beck, R. John Taylor, Crop USA Insurance Agency, and Crop USA Insurance Services, LLC, and hereby give notice of the substitution of Daniel Loras Glynn of the firm Jones ♦ Williams ♦ Fuhrman ♦ Gourley P.A. for the law firm of Martelle & Associates, P.A. All future correspondence and pleadings in this matter shall be directed to Daniel Loras Glynn at the following address:

Daniel Loras Glynn
Jones Williams Fuhrman Gourley P.A.
225 North 9th Street, Suite 820
Boise, ID 83702
Telephone: (208) 331-1170
Facsimile: (208) 331-1529
Email: dglynn@idalaw.com

DATED This 1st day of April, 2019

JONES ♦ WILLIAMS ♦ FUHRMAN ♦ GOURLEY, P.A.

DANIEL LORAS GLYNN

DATED This 1st day of April, 2019

MARTELLE & ASSOCIATES, P.A.

MARTIN J. MARTELLE

SUBSTITUTION OF COUNSEL - 2

**8-ER-1958**

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of April, 2019, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF System which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| David R. Lombardi | drl@givenspursley.com |
| Roderick Cyr Bond | rod@roderickbond.com |
| Michael S. Bissell | mbissell@campbell-bissell.com |
| Tyler S. Waite | twaite@campbell-bissell.com |
| James D. LaRue | jdl@elamburke.com |
| Jeffrey A. Thomson | jat@elamburke.com |
| Loren C. Ipsen | lci@elamburke.com |
| Martin J. Martelle | attorney@martellelaw.com |
| Shawnee S. Perdue | sperdue@perdue.lawyer |
| Alyson Anne Foster | aaf@aswblaw.com |
| Benjamin A. Schwartzman | bas@aswblaw.com |
| Vanessa A. Mooney | vanessa@martellelaw.com |

Daniel Loras Glynn

SUBSTITUTION OF COUNSEL - 3

**8-ER-1959**