**Consolidated Case Nos. 25-3552 and 25-3800**

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.,

**Plaintiff-Appellant**,

v.

R. JOHN TAYLOR, an individual, CONNIE TAYLOR HENDERSON, an individual, JAMES BECK, an individual, MICHAEL W. CASHMAN, SR., an individual, CROP USA INSURANCE AGENCY, INC., an Idaho corporation, CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company, AIA SERVICES CORPORATION, an Idaho corporation, AND AIA INSURANCE, INC., an Idaho corporation,

**Defendants-Appellees**,

and

Reed J. Taylor, an individual,

**Third-Party Defendant-Appellee.**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO,
CHIEF DISTRICT COURT JUDGE DAVID C. NYE, PRESIDING

**APPELLANT'S EXCERPTS OF THE RECORD – VOLUME - 9**

Roderick C. Bond
Roderick Bond Law Office, PLLC
10900 NE 4th St., Suite 2300
Bellevue, WA  98004
Tel: (425) 591-6903
Email: rod@roderickbond.com
Attorney for Appellant

Andrew Schwam
Andrew Schwam Law Firm
705 SW Fountain St.
Pullman, WA  99163-2128
Tel: (208) 874-3684
Email: amschwam@turbonet.com
Attorney for Appellant

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA  98004
Telephone: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Attorney for the Plaintiff Dale L. Miesen

UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>v.<br><br>HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; and GEMCAP LENDING I, LLC, a Delaware limited liability company;<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF DALE L. MIESEN'S MOTION TO STRIKE GEMCAP LENDING I, LLC'S MOTION TO DISMISS [Dkt. 548] OR, IN THE ALTERNATIVE, TO CONVERT THAT MOTION INTO ONE FOR SUMMARY JUDGMENT AND STAY THAT MOTION TO BE RE-FILED AND DECIDED IN ACCORDANCE WITH RULE 56 WITH GEMCAP'S OTHER PENDING MOTION FOR SUMMARY JUDGMENT |

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - i

9-ER-1961

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

        Defendants/Third-Party Plaintiffs,

    **v.**

REED TAYLOR, an individual,

        Third-Party Defendant.

REED TAYLOR, an individual,

        Third-Party Defendant/ Counterclaimant,

    **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

        Counterdefendants.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - ii

9-ER-1962

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................ 1

II.  ARGUMENT.................................................................................................... 2

A.  This Court Should Strike GemCap's Motion to Dismiss Because It Raised Two New Affirmative Defenses Never Previously Pleaded or Ever Disclosed in Discovery and One Duplicative Argument that Is Already Pending in Its Motion for Summary Judgment. ................ 2

B.  If this Court Does Not Strike GemCap's Motion to Dismiss, the Motion Should Be Converted to One for Summary Judgment and Disposed of in Accordance with Rule 56. ........... 7

   1.  This Court Should Consider Matters Outside of the Pleadings So Miesen Is Able to Fully and Fairly Address GemCap's California Litigation Privilege Affirmative Defense and the Factors and Policy Concerns in the Choice of Law Analysis—Which Is Required Before Reaching the Merits of GemCap's California Litigation Privilege Affirmative Defense. ................................................................................................ 8

   2.  This Court Should Consider Matters Outside of the Pleadings so Miesen Is Able to Fully and Fairly Address GemCap's Affirmative Defense that the Settlement Agreement Cannot Be Illegal Pursuant to the Holding in *Taylor v. Taylor*. ............................ 14

   3.  This Court Should Consider Matters Outside of the Pleadings so Miesen Is Able to Fully and Fairly Address GemCap's Affirmative Defense that I.C. § 30-1-304 Does Not Allow Miesen to Assert Derivative Claims Against GemCap and the AIA Entities Allegedly Benefited from the Unlawful Settlement Agreement. ................................ 16

C.  If this Court Converts GemCap's Motion to Dismiss to One for Summary Judgment, the Motion Should Be Stayed for a Limited Period of Time for the Same Reasons as GemCap's Pending Motion for Summary Judgment and Re-Filed in the Future....................... 199

D.  This Court Should Extend the Time for Miesen to Respond to GemCap's Motion to Dismiss Until After this Court Decides this Motion.................................................. 19

III.  CONCLUSION................................................................................................. 20

CERTIFICATE OF SERVICE ................................................................................. 21

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - iii

9-ER-1963

Plaintiff Dale L. Miesen ("Miesen") moves this Court to strike GemCap's newest Motion to Dismiss [Dkt. 548] or, in the alternative, to convert that motion to one for summary judgment and stay it to be decided with GemCap's other pending Motion for Summary Judgment:

## I.   INTRODUCTION

Even though this Court has already stayed GemCap's Motion for Summary Judgment (Dkt. 437) pending the completion of the discovery disputes and necessary discovery (Dkt. 483), GemCap disingenuously and improperly filed yet another Motion to Dismiss seeking to dismiss all of Miesen's claims in the Third Amended Complaint ("TAC") against GemCap (Dkt. 548) ("Motion" or "Motion to Dismiss").[1] GemCap raises *two new* defenses never previously pleaded as affirmative defenses or ever disclosed in discovery, and duplicative arguments that are already pending in its Motion for Summary Judgment. Thus, this Court should exercise its discretion to strike GemCap's Motion in its entirety—GemCap should not be rewarded for its abusive tactics.

Alternatively, since GemCap has refused to stipulate, this Court should convert GemCap's Motion to one for summary judgment because matters outside of the pleadings must be submitted in order to fully and fairly address the issues raised in GemCap's Motion. If this Court agrees, it should also stay the Motion so that it can be briefed and decided in accordance with Rule 56 and Loc. Civ. R. 7.1 (including requiring the filing of a statement of material facts) after the required discovery has been completed (along with GemCap's pending Motion for Summary Judgment).

Lastly, Miesen respectfully requests that this Court extend the briefing period on GemCap's Motion until this Motion is decided in order to allow Miesen to fully respond to GemCap's Motion once he knows whether Rule 12 or Rule 56 will govern GemCap's Motion.

---

[1] When citing to dockets, Miesen will cite to the blue, court-stamped page numbers at the top of each page. Notably, GemCap also previously unsuccessfully moved to dismiss all of Miesen's claims and it never raised any of the new defenses in that motion. (*E.g.*, Dkts. 220, 263.)

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 1

## II.   ARGUMENT

**A. This Court Should Strike GemCap's Motion to Dismiss Because It Raised Two New Affirmative Defenses Never Previously Pleaded or Ever Disclosed in Discovery and One Duplicative Argument that Is Already Pending in Its Motion for Summary Judgment.**

This Court should strike GemCap's Motion (Dkt. 548) since it improperly relies on two new affirmative defenses—ones never asserted in any of GemCap's Answers nor ever disclosed to Miesen in discovery—along with duplicative arguments previously asserted in its pending Motion for Summary Judgment (Dkt. 437)— arguments this Court ruled Miesen would be able to fairly rebut with evidence (Dkt. 483).[2] Thus, GemCap's Motion should be stricken.

> We conclude that the District Court had jurisdiction to grant the motion to strike pursuant to its inherent powers. The inherent powers are mechanisms for "control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43, 111 S.Ct. 2123 (citations omitted).
>
> "It is well established that '[d]istrict courts have inherent power to control their docket.'" *Atchison, Topeka & Santa Fe Ry. v. Hercules, Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998) (alteration in original) (quoting *Hernandez v. City of El Monte*, 138 F.3d 393, 398 (9th Cir. 1998)). This includes the power to strike items from the docket as a sanction for litigation conduct. *See, e.g., Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 586–87, 588 (9th Cir. 2008) (discussing, but declining to rule on, the ability of a district court to strike documents submitted as exhibits to a motion); *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1224–26 (9th Cir. 2005) (upholding a district court's grant of a motion to strike deposition corrections and a declaration as a sanction when a party had violated Fed. R. Civ. P. 30(e)); *cf. Carrigan v. Cal. State Legislature*, 263 F.2d 560, 564 (9th Cir. 1959) (discussing an appellate court's inherent power to strike briefs and pleadings "as either scandalous, impertinent, scurrilous, and/or without relevancy").

***Ready Transp., Inc. v. AAR Mfg., Inc.***, 627 F.3d 402, 404 (9th Cir. 2010). *C.f.,* ***Cordell v. Robert***, No. 2:15-cv-0992 TLN CKD P, 2017 WL 3670965, at *1 (E.D. Cal. Aug. 25, 2017) (granting a motion to strike because the filings were "entirely duplicative."); ***Hasan v. Johnson***, No. 1:08–

---

[2] In fact, after Miesen completes certain discovery in the near future and he submits his response, he will seek partial summary judgment in his favor on the same issues raised by GemCap.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 2

cv–00381–GSA–PC, 2011 WL 5508866, at *1 (E.D. Cal. Nov. 9, 2011) (striking duplicative motions raising the same issues).

"In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense...." **Fed. R. Civ. P. 8(c)(1)**. "Each allegation must be simple, concise and direct." **Fed. R. Civ. P. 8(d)(1)**. "Pleadings must be construed so as to do justice." **Fed. R. Civ. P. 8(e)**. "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." **Fed. R. Civ. P. 12(b)**. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. **Fed. R. Civ. P. 15(a)(2)**.

Generally, "[f]ailure to plead an affirmative defense therefore results in a waiver of that defense." *Enlow v. Salem–Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 819 (9th Cir. 2004) (citation omitted). "[S]imply stating that the plaintiff failed to state a claim is insufficient to provide notice of a specific affirmative defense." *Garcia v. Salvation Army*, 918 F.3d 997, 1008 (9th Cir. 2019).

> "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979); *see also In re Gayle Sterten*, 546 F.3d 278, 285 (3d Cir. 2008) (noting that "the proper focus of our inquiry" is whether framing the defense as a denial of an allegation "specifically deprived [the plaintiff] of an opportunity to rebut that defense or to alter her litigation strategy accordingly"). Although Rule 8 requires affirmative defenses to be included in responsive pleadings, **<u>absent prejudice to the plaintiff,</u>** the district court **<u>has discretion</u>** to allow a defendant to plead an affirmative defense in a subsequent motion.

*Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010) (later overruled/abrogated on other grounds) (emphasis added). "[The Federal Rules of Civil Procedure] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." **Fed. R. Civ. P. 1**.

Here, this Court should exercise its discretion by striking GemCap's Motion to Dismiss (Dkt. 548) because: **(a)** GemCap raised a new affirmative defense for the very first time that

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 3

Miesen's aiding and abetting claims and declaratory judgment relief sought against GemCap are *allegedly* barred by the California Litigation Privilege under Cal. Civ. Code § 47 (Dkt. 548-1 at 7-10 (the defense is raised in Sections I and II).); **(b)** GemCap raised a new affirmative defense for the very first time that Miesen's declaratory judgment relief should allegedly also be dismissed under *Taylor v. Taylor*, 163 Idaho 910, 422 P.3d 1116 (2018) (Dkt. 548-1 at 10-11); and **(c)** GemCap made duplicative arguments already asserted in its Motion for Summary Judgment—that Miesen's statutory ultra vires claims should also be dismissed because I.C. § 30-1-304 allegedly does not allow a derivative action against GemCap and the AIA Entities allegedly benefited from the unlawful Settlement Agreement (*Compare* Dkt. 548-1 at 11-13 *with* Dkt. 437 at 19-21).

While Miesen maintains that all of GemCap's arguments are without merit, Miesen' request to strike GemCap's Motion is based on GemCap's abusive tactics. Indeed, GemCap should <u>not</u> be permitted to assert *for the very first time two newly undisclosed* affirmative *defenses* through a Motion to Dismiss under Rule 12—which was filed almost 1½ years after GemCap filed its original Answer—nor should GemCap be permitted to assert duplicative arguments already at issue in its stayed pending Motion for Summary Judgment in order side-step its discovery obligations and improperly interfere with Miesen's right to submit a full and fair response after conducting discovery. Thus, this Court should strike GemCap's Motion to Dismiss (Dkt. 548) in its entirety—relief further supported by any one or more of the following reasons:

☑      While GemCap has asserted at least 36 so-called "affirmative defenses" in its Answers (many of which are either not viable or supported by the "real" facts of this case—or both), GemCap has <u>never</u> asserted the affirmative defense of the "California Litigation Privilege," "Privileged Communications Under Cal. Civ. Code § 47," the "the Settlement Agreement Cannot Be Ruled Illegal under the Idaho Supreme Court's holding in *Taylor v. Taylor*," "Idaho Code

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 4

section 30-1-304 Does Not Permit Miesen to Assert Derivative Claims against GemCap," or any other descriptions that provided anything remotely close to "fair notice" of any of the foregoing defenses in any either of its Answers. (Dkts. 273 at 144-148; 283 at 144-148.) GemCap has also never provided "fair notice" of those defenses in its inadequate answers to Miesen's Interrogatory No. 2 requesting the identification of affirmative defenses and the facts and legal basis supporting those defenses nor did GemCap previously disclose that information informally (e.g., by email). (5/7/19 Bond Decl. ¶¶ 2-9; Ex. A-G.) Thus, GemCap has failed to provide Miesen with any notice—let alone the required "fair notice"—of the affirmative defense at issue in its Motion to Dismiss (including the California Litigation Privilege) in violation of numerous Rules of Civil Procedure.[3] **Fed. R. Civ. P. 1**, **8(c)(1)**, **8(d)(1)**, **8(e)**, **12(b)**, and **15(a)(2)**; *Simmons*, 609 F.3d at 1023. Contrary to GemCap's belief, the law is not a game. This Court should not reward GemCap for its failure to comply with Rules of Civil Procedure and abusive (and costly) litigation tactics. *Ready Transp., Inc.*, 627 F.3d at 404-405 ("A primary aspect of [the] discretion [to strike] is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.").

☑      GemCap cannot argue that it provided "fair notice" of the "California Litigation Privilege" defense was provided to Miesen based on the statement in its Answer that: "GemCap's conduct was justified, privileged, and performed in good faith, without malice, spite, or conscious, reckless, or negligent disregard of anyone's rights, if any, and without improper purpose or motive, malice, or ill will of any kind." (Dkt. 283 at 147 ¶ 31.) That statement is clearly intended to provide "fair notice" that GemCap will oppose a punitive damage claim—but it does not provide "fair notice" of a California Litigation Privilege defense—and GemCap provided no information in its

---

[3] While GemCap previously raised the argument in its Motion for Summary Judgment that Idaho Code section 30-1-304 does not permit Miesen to assert derivative claims against it (Dkt. 437-2 at 19-21), GemCap has still never moved to amend its Answer to plead it.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 5

answer to Interrogatory No. 2 regarding that defense. (5/7/19 Bond Decl. Ex. F-G.) *Simmons*, 609 F.3d at 1023. Likewise, GemCap cannot argue that "fair notice" was provided in any of its other Answers. For example, GemCap does not assert "California Litigation Privilege" or "Privileged Communications Under Cal. Civ. Code § 47" as a defense to any crossclaims brought by the AIA Entities and John Taylor (who were also parties to the California lawsuit). (*See* Dkts. 359 at 9-10, 440-1, 440-2, 440-3.) Indeed, GemCap asserted claims against Crumb & Munding—opposing counsel in the California lawsuit—because it "acted in concert" and GemCap was clear that it will be asserting claims against it again if Miesen prevails. (*E.g.*, Dkts. 288, 321, 420.)

☑ GemCap became a defendant in this lawsuit on April 24, 2017. (Dkt. 211.) Indeed, prior to being a defendant, on November 11, 2016, GemCap obtained actual notice of Miesen's claims for aiding and abetting and to set aside the Settlement Agreement (because it was unauthorized, ultra-vires and illegal) when Miesen filed his motion to amend—GemCap became a party when it voluntarily moved to intervene in order to seal the unlawful Settlement Agreement that it had concealed from Miesen on July 18, 2016.[4]  (*E.g.*, Dkts. 141, 182.) In other words, GemCap has had since November 11, 2016 to assess Miesen's claims and properly assert any viable affirmative defenses and to disclose them in discovery. Thus, GemCap has no excuse and its course of conduct should be deemed as intentional. (5/7/19 Bond Decl. ¶¶2-10, Ex. A-G.)

☑ Miesen has been prejudiced by GemCap's intentional failure to assert or disclose the new affirmative defenses in its Answers or in response to Miesen's Interrogatory No. 2 requesting the identification of affirmative defenses and the factual and legal basis for such

---

[4] GemCap and other defendants (e.g., John Taylor) intentionally concealed the Settlement Agreement (Dkt. 128 at 21-48) from AIA Services' shareholders. (*E.g.*, Dkts. 151 at 4 ¶ 7; 152 at 5-6 ¶¶ 8-9; 155 at 3-4 ¶ 4.) Miesen and other shareholders only obtained a copy of the Settlement Agreement because it was filed by a party in another lawsuit. (*Id.*; Dkt. 153 at 3 ¶ 8.)

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 6

defenses. (5/7/19 Bond Decl., ¶¶2-17, Ex. A-G.) Indeed, the precious time expended preparing this Motion alone is prejudicial to Miesen (his counsel is a solo practitioner). (*Id*.)

☑ GemCap, knowing that the *evidence* will be fatal to its defenses, disingenuously and improperly seeks to have this Court decide duplicative arguments already pending in its Motion for Summary Judgment—that Miesen allegedly may not sue GemCap derivatively under I.C. § 30-1-304 (incorrectly) and that the AIA Entities allegedly somehow benefitted in being obligated to pay over $12,000,000 of debt owed by the CropUSA Entities. (*Compare* Dkt. 548-1 at 11-13 *with* Dkt. 437 at 19-21.)

☑ Despite the efforts by Miesen's counsel to have GemCap stipulate to converting the Motion to one for summary judgment, GemCap's counsel refused. (5/7/19 Bond Decl. ¶ 10.)

☑ Even if this Court does not believe that Miesen met his burden of showing prejudice, this Court should still exercise its discretion to strike the motion based on the facts and circumstances (including those addressed above). (5/7/19 Bond Decl. ¶¶ 2-26, Ex. A-W.) GemCap's Motion flies in the face of the spirit and intent of Fed. R. Civ. 1 (The rules should "secure the just, speedy, and inexpensive determination" of issues in this lawsuit).

Thus, this Court should strike GemCap's Motion to Dismiss (Dkt. 548) in its entirety.

**B. If this Court Does Not Strike GemCap's Motion to Dismiss, the Motion Should Be Converted to One for Summary Judgment and Disposed of in Accordance with Rule 56.**

Even if this Court permits GemCap's Motion to Dismiss to proceed, this Court should nevertheless order that GemCap's Motion be disposed of in accordance with Rule 56 because the Motion cannot be fully and fairly decided on the pleadings. It would be prejudicial to Miesen and a disservice to this Court to decide the issues raised in GemCap's Motion pursuant to Rule 12.

> Whenever district court looks beyond pleadings in evaluating a motion to dismiss under Rule 12(b)(6), that motion must be treated as one for summary judgment. Before summary judgment may be entered, all parties must be given notice of the

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 7

motion and opportunity to respond, **which includes time for discovery necessary to develop facts justifying opposition to the motion**.

*Meritage Homes of Nev., Inc. v. FNBN-Rescon I, LLC*, 86 F.Supp.3d 1130, 1138 (D. Nevada 2015) (citing Fed. R. Civ. P. 12(d)) (emphasis added). The district court has "the discretion…to convert the [Rule 12] motion to one for summary judgment when a party has notice that the district court may look beyond the pleadings." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007). "In this circuit, notice is adequate if the party against whom judgment is entered is 'fairly apprised' that the court will look beyond the pleadings, thereby transforming the motion to dismiss into a motion for summary judgment." *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1532-1533 (9th Cir. 1985).

When a party moves for summary judgment, specific requirements must be met, including submitting a separate statement of material facts, memorandum of law and any supporting affidavits at the time the motion is filed. **Loc. Civ. R. 7.1(b)(1)-(2)**; *see also* **Loc. Civ. R. 7.1(e)(1)**.

Here, if GemCap's Motion to Dismiss is not stricken (as requested above), this Court should exercise its discretion to convert GemCap's Motion to one for summary judgment and dispose of that Motion in accordance with Rule 56 and Local Rule 7.1(b) because the pleadings are insufficient to address the issues, Miesen has been prejudiced by GemCap's newly raised defenses, and Miesen requests permission to submit substantial matters outside of the pleadings to fully address GemCap's Motion. (5/7/19 Bond Decl. ¶¶ 2-26, Ex. A-W.)

1. **This Court Should Consider Matters Outside of the Pleadings So Miesen Is Able to Fully and Fairly Address GemCap's California Litigation Privilege Affirmative Defense and the Factors and Policy Concerns in the Choice of Law Analysis—Which Is Required Before Reaching the Merits of GemCap's California Litigation Privilege Affirmative Defense.**

GemCap argues the California Litigation Privilege bars Miesen's aiding and abetting claims (Dkt. 548-1 at 7-10) and his declaratory relief claims (*Id*. at 10). This Court should permit

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 8

Miesen to submit matters outside of the pleadings to fully and fairly oppose GemCap's arguments.

**First**, before even reaching the California Litigation Privilege affirmative defense, this Court must first conduct a choice of law analysis to determine whether California law can even apply. While Miesen maintains that Idaho law should apply, this Court has insufficient information to conduct a proper choice of law analysis based only on the limited allegations in the TAC. Thus, this Court should permit Miesen to submit matters outside of the pleadings to address the issue. Moreover, this Court should require GemCap, the moving party, to properly conduct a choice of law analysis so that Miesen is not deprived of an opportunity to address GemCap's arguments.

This Court should "embrace the positions of the Fifth and Seventh Circuits" for "judicial resolution of fact disputes raised in a choice-of-law determination," rather than the jury. *In re Facebook Biometric Info. Privacy Litig.*, 185 F.Supp.3d 1155, 1160-1161 (N.D. Cal. 2016) (citations omitted). "In the [Ninth Circuit], this determination is frequently made by the district court judge *on a motion for summary judgment*." *Id*. (citations omitted) (emphasis added).

"This Court in diversity cases must apply the choice of law rules of the forum state in order to determine if California privilege laws apply here." *Rasidescu v. Midland Credit Mgmt., Inc.*, 496 F.Supp.2d 1155, 1158 (S.D. Cal. 2007). "Accordingly, to determine whether or not California privilege law applies to [Miesen's] claims, this Court must first engage in a choice of law analysis" under Idaho law. *Id.* at 1159. (Dkt. 211.)

> Idaho applies the "most significant relation test" as set forth in the Restatement (Second) of Conflict of Laws § 145 in determining the applicable law. In a tort case the following considerations must be taken into account:
>
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 9

centered.

"Of these contacts, the most important in guiding this Court's past decisions in tort cases has been the place where the injury occurred."
* * *
Once [the above] factors are considered, they are evaluated in light of the following policy concerns:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability, and uniformity of result, and
> (g) the ease in the determination and application of the law to be applied.

*Grover v. Isom*, 137 Idaho 770, 772-773, 53 P.3d 821, 823-824 (2002) (citations omitted).

This lawsuit also implicates the "internal affairs doctrine," which controls the law of claims involving contracts with a corporation and the fiduciary duties owed by a corporation's officers and directors, including the aiding and abetting of those breaches of fiduciary duties.

The internal affairs doctrine is a conflict of laws principle recognizing that only one state should have the authority to regulate a corporation's internal affairs, because otherwise, a corporation might be faced with conflicting demands...The internal affairs doctrine provides that internal matters of corporate governance are governed by the law of the state of incorporation.
* * *
By providing certainty and predictability, the internal affairs doctrine protects the justified expectations of the parties with interests in the corporation. It has been said that internal affairs include those matters that are peculiar to the relationships among or between the corporation and its officers, directors and shareholders.

**9 Fletcher Cyc. Corp. § 4223.50** (2018) (footnotes omitted). Indeed, California follows this rule and further holds that a director's unauthorized acts and other "violation of official duty [are governed] according to any applicable laws of the state or place of incorporation or organization, *whether committed or done in this state or elsewhere*." **Cal. Corp. Code § 2116** (emphasis added);

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 10

*In re Flashcom, Inc.*, 308 B.R. 485, 490 (Bankr. C.D. Cal. 2004).

Here, while it appears that the internal affairs doctrine and Cal. Corp. Code § 2116 are fatal to GemCap's arguments, this Court needs a factual record beyond those minimal facts alleged in Miesen's TAC in order to address the factors and policy concerns required under Idaho law:

☑ Based on the allegations presently contained within the TAC, it is impossible for this Court or Miesen to address all of the factors and policy concerns set forth in the Restatement on a Rule 12(b) standard. (Dkt. 211.) *Grover*, 137 Idaho at 772-773, 53 P.3d at 823-824. The issue should be resolved under the summary judgment standard and evidence should be submitted. (5/7/19 Bond Decl. ¶¶12-20, Ex. H-K, N-O, Q-R.) *In re Facebook*, 185 F.Supp.3d at 1160-1161.

☑ The TAC was not drafted to address the choice of law issues because GemCap never previously asserted California law applies. (5/7/19 Bond Decl. ¶¶ 3, 12, 13, 15-16.)

☑ GemCap seeks to side-step the choice of law analysis (for obvious reasons) by merely citing a single case and not conducting a choice of law analysis. (Dkt. 548-1 at 9.)

☑ Since GemCap recently asserted the California Litigation Privilege as a defense *for the very first time* (as explained in Section A), Miesen was deprived of the opportunity to move to amend the TAC to assert additional facts and attach documents to his Complaint in order to more fairly address the issue under Rule 12. (12/7/19 Bond Decl. ¶¶ 16, 26.) This is prejudicial.

☑ The California Court already ruled "Idaho" was the proper "forum" to address the illegality and unenforceability of the Settlement Agreement. (12/7/19 Bond Decl. Ex. K at 7, 9.) GemCap admitted this point: "Indeed, Judge Otero already ruled that the California federal court is *not* the appropriate forum to address issues pertaining to the illegality of the Settlement Agreement and, instead, such issues can be addressed in Idaho courts." (Dkt. 321 at 12.) These are judicial admissions. *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994).

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 11

Thus, this Court should determine the choice of law issues only on summary judgment.

**Second**, assuming that this Court resolves the choice of law issues in GemCap's favor and applies California law (Idaho law should apply), then this Court must next determine whether Miesen's claims even involve communications or publications in litigation. The proper resolution of this issue also requires the Court to consider matters outside of the pleadings.

The California Litigation Privilege is a creature of statute and involves "privileged publication[s] or broadcast[s]" in a "judicial proceeding." **Cal. Civ. Code § 47**. In order to determine whether the California Litigation Privilege even applies, "the relevant question [is] whether the *gravamen* of the action was communicative or noncommunicative conduct." ***Rusheen v. Cohen***, 37 Cal.4th 1048, 1061, 128 P.3d 713, 721 (Cal. Ct. App. 2006) (footnote omitted). If the claims are communicative based, the elements of the California Litigation Privilege are:

> communications "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."

***Rusheen***, 37 Cal.4th at 1062, 128 P.3d at 722 (citation omitted). While the privilege was "originally limited to shieling litigants, attorneys and witnesses from liability for defamation, it has been interpreted to apply to virtually all [communicative] torts except malicious prosecution."

***Kimmel v. Goland***, 51 Cal.3d 202, 209, 793 P.2d 524, 527 (Cal. 1990) (citations omitted).

> We note that plaintiffs have not cited a single case in which section 47(2) has been held to bar suit for personal injuries arising from noncommunicative conduct that occurred during a judicial proceeding. On the contrary, a review of the myriad cases that have applied section 47(2) to shield defendants from liability demonstrates that, without exception, the privilege has applied only to torts arising from statements or publications.

***Id.*** at 212 (citations omitted). The Court held there is <u>no</u> "attorney exception" granting immunity under the Litigation Privilege for involvement in a client's conduct in the lawsuit. ***Id.*** at 212-214

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 12

("We conclude, therefore, that Attorney Farnwell is not immune under section 47(2) from liability for his alleged conduct in aiding and abetting a violation of the privacy act.").

Consequently, Miesen requests permission to submit matters outside of the pleadings to fully and fairly address GemCap's Motion, including the examples provided below.

☑ Miesen's TAC "does not allege any statements were made in connection with or in the court of litigation" as a basis for his claims. *Ryan v. Zemanian*, No. 11cv2054–LAB (NLS), 2012 WL 4447881, at *3 (S.D. Cal. Sept. 25, 2012). (Dkt. 211 at 39-47 ¶¶ 135-156.) Indeed, the TAC does not even mention any particular lawsuit nor does GemCap even ask this Court to take judicial notice of one. (Dkts. 211, 548-1 at 7-10.) Here, the California Litigation Privilege defense should be addressed in a motion for summary judgment. *Ryan*, 2012 WL 4447881, at *5 ("Under the standard for motions to dismiss under Rule 12(b)(6), the complaint is not subject to dismissal on the basis of litigation privilege.").

☑ Most importantly, GemCap should not be rewarded for its litigation tactics asserting a new affirmative defense for the first time after over 1½ years. (12/7/19 Bond Decl. ¶¶2-9, Ex. A-G.) It would be prejudicial and unfair to Miesen.

☑ Miesen will submit the articles of incorporation, bylaws and annual reports for AIA Services and AIA Insurance to prove Idaho law applies under the internal affairs doctrine. (*E.g.*, 5/7/19 Bond Decl. Ex. N-O.) Since the evidence Miesen submits will show that John Taylor and others breached their fiduciary duties owed to AIA under Idaho law, it follows that Miesen's aiding and abetting claims against GemCap must also be governed by Idaho law. **Cal. Corp. Code § 2116**.

Thus, once again, This Court should convert GemCap's Motion to one for summary judgment so the California Litigation Privilege may be fully and fairly addressed under Rule 56.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 13

**2. This Court Should Consider Matters Outside of the Pleadings so Miesen Is Able to Fully and Fairly Address GemCap's Affirmative Defense that the Settlement Agreement Cannot Be Illegal Pursuant to the Holding in *Taylor v. Taylor*.**

GemCap vaguely alleges that Miesen's illegality declaratory relief should "be dismiss under be dismissed under *Taylor v. Taylor*, 163 Idaho 910, 916, 422 P.3d 1116, 1122 (2018)" [5] because his claim cannot "support a claim of illegality" since "Miesen alleges only that the Settlement Agreement was executed in a manner not consistent with corporate powers." (Dkt. 54-1 at 10-11.) Although GemCap is wrong, this Court should permit Miesen to submit matters outside of the pleadings to fully and fairly address GemCap's arguments because the illegality of a contract can only be determined after this Court considers all of the "facts and circumstances".

"Whether a contract is illegal is a question of law for *the court to determine from all the facts and circumstances of each case*." ***Trees v. Kersey***, 138 Idaho 3, 6, 56 P.3d 765, 768 (2002) (citation omitted) (emphasis added). In other words, the determination is made after evidence is submitted under a Rule 56 standard—not under a Rule 12(b)(6) standard. ***Id.***

> 'An illegal contract is one that rests on illegal consideration consisting of any act or forbearance which is contrary to law or public policy,' and such a contract 'is illegal and unenforceable.' '[W]hen the consideration for a contract explicitly violates a statute, the contract is illegal and unenforceable.'
>
> > The general rule is that a contract prohibited by law is illegal and unenforceable. A contract which is made for the purpose of furthering any matter or thing prohibited by statute is void. This rule applies on the ground of public policy to every contract which is founded on a transaction prohibited by statute. The Idaho Court of Appeals has suggested that where a statute intends to prohibit an act, it must be held that its violation is illegal, without regard to the reason of the inhibition or to the ignorance of the parties as to the prohibiting statute.

---

[5] As GemCap is well-aware, the undersigned counsel was the attorney for Donna Taylor in *Taylor v. Taylor*—GemCap's interpretation of the facts and holdings of that case is, at best, yet another unsupported and misleading effort to avoid liability for its unlawful and tortious conduct. (5/7/19 Bond Decl. ¶21, Ex. L-M; *see also, e.g.,* Dkt. 419-16 at 15-16 ¶ 39.)

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 14

*Taylor v. Taylor*, 163 Idaho 910, 916, 422 P.3d 1116, 1122 (2018) (citations omitted). On the other hand, "[a]n ultra vires act is an act that is '[u]nauthorized; beyond the scope of power allowed or granted by a corporate charter or by law.'" *Taylor*, 163 Idaho at 918, 422 P.3d at 1124 (citation omitted). Consequently, "[a] contract may be both ultra vires, using the term in its strict sense, and also against public policy so as to be 'illegal'… On the other hand, a contract is not necessarily "illegal," using the term as defined above, merely because it is ultra vires." **7A FLETCHER CYC. CORP. § 3400** (2018).

In addition, [a]ctions taken in violation of a corporation's bylaws are void." *Kemmer v. Newman*, 161 Idaho 463, 387 P.3d 131 (2016) (citations omitted). Public policy also prohibits the *general* assignment of legal malpractice claims and contractual provisions that prevent a party from seeking bankruptcy protection; such contracts are void.  *See St. Luke's Magic Valley Reg'l Med. Ctr. v. Luciani*, 154 Idaho 37, 43, 293 P.3d 661, 667 (2012) (general assignments of legal malpractice claims prohibited); *In re Cole*, 226 B.R. 647, 651-54 (B.A.P. 9th Cir. 1998); *In re Tru Block Concrete Prods., Inc.*, 27 B.R. 486, 492 (Bankr. S.D. Cal. 1983) ("It is a well settled principal that an advance agreement to waive the benefits conferred by the bankruptcy laws is wholly void as against public policy.").

Here, the question whether the Settlement Agreement, Dkt. 128 at 21-48, is illegal or ultra vires—or both (it is both)—is one that must be decided by this Court after considering the relevant "facts and circumstances" under a Rule 56 standard. *Trees*, 138 Idaho at 6, 56 P.3d at 768. Those "facts and circumstances" can only be determined after evidence is submitted to this Court under a Rule 56 standard, which includes the examples provided below:

☑        There are a number of Idaho Business Corporation Act sections that prohibit or govern certain activities involving AIA Services and AIA Insurance, which were directly or

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 15

indirectly violated as to Miesen's claims against GemCap, including for the Settlement Agreement. (Dkts. 128 at 21-48; 211.) *E.g.,* **I.C. § 30-1-801(2)**; **I.C. § 30-1-202(2)(b)(ii)-(iii)**; **I.C. § 30-1-301(1)**; **I.C. § 30-1-302(7)**; **I.C. § 30-1-206**; **I.C. § 30-1-830**; **I.C. § 30-1-842**; **I.C. § 30-1-1202**.[6] In order to address those Idaho Code sections (and others) and to determine whether the violation of them constitutes an illegal act, ultra vires or intra vires but unauthorized, this Court needs evidence. This Court needs a developed record to decide these issues.

☑ The Settlement Agreement contains illegal provisions preventing AIA from seeking bankruptcy protection and illegally assigning legal malpractice claims. (Dkt. 128 at 27, 41-42.) *Luciani*, 154 Idaho at 43, 293 P.3d at 667; *In re Tru Block Concrete Prods., Inc.*, 27 B.R. at 492. These issues must also be determined after the submission of evidence under Rule 56.

☑ GemCap's arguments mischaracterize the Idaho Supreme Court's decision in *Taylor v. Taylor* (a case the undersigned briefed and argued). (5/7/19 Bond Decl. ¶21, Ex. L-M.) The evidence needs to be submitted so that this Court can properly distinguish the facts from this lawsuit with those occurring in *Taylor v. Taylor*. (Id. at ¶ 22, Ex. N-O.)

> **3. This Court Should Consider Matters Outside of the Pleadings so Miesen Is Able to Fully and Fairly Address GemCap's Affirmative Defense that I.C. § 30-1-304 Does Not Allow Miesen to Assert Derivative Claims Against GemCap and the AIA Entities Allegedly Benefited from the Unlawful Settlement Agreement.**

GemCap alleges that Miesen cannot pursue derivative claims against GemCap under I.C. § 30-1-304 and that the AIA Entities allegedly benefitted from the unlawful Settlement Agreement. (Dkt. 548-1 at 11-13.) Once again, GemCap is wrong. And, once again, this Court should permit Miesen to submit matters outside of the pleadings to fully and fairly address GemCap's arguments.

---

[6] On July 1, 2015, the Idaho Business Corporation Act was amended as I.C. § 30-29, *et seq.*, but the savings provision applies to the violations here because all of the transactions occurred before 2015. **I.C. § 30-29-1703(1)(c)**. Regardless, the applicable new Code sections are identical.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 16

"The internal affairs doctrine provides that internal matters of corporate governance are governed by the law of the state of incorporation…" **9 Fletcher Cyc. Corp. § 4223.50** (2018); *In re Flashcom, Inc.*, 308 B.R. at 490 (explaining that California courts follow the internal affairs doctrine for foreign corporations and director liability).

"An ultra vires act is an act that is '[u]nauthorized; beyond the scope of power allowed or granted by a corporate charter or by law.'" *Taylor*, 163 Idaho at 918, 422 P.3d at 1124 (citation omitted). Idaho has a statutory mechanism for certain parties to challenge certain ultra vires acts. **I.C. § 30-1-304**. On the other hand, I.C. § 30-1-304 "does not address disputes over whether corporate actors properly caused the corporation to exercise its capacity or power." *Carsanaro v. Bloodhound Tech., Inc.*, 65 A.3d 618, 650 (Del. 2013) (abrogated on other grounds) (analyzing Delaware's 8 Del. C. § 124, which contains substantially the same content as I.C. § 30-1-304, although Delaware's Section 124 also combines certain subsections and uses a different numbering format). Such acts over the improper exercise of a corporation's power can also be challenged and set aside without the aid of I.C. § 30-1-304. *Carsanaro*, 65 A.3d at 648-654.

Here, Miesen requests permission to submit matters outside of the pleading to fully and fairly address GemCap's Motion:

☑ As noted above, GemCap's arguments here are duplicative of the ones that it made in its pending Motion for Summary Judgment. (*Compare* Dkt. 548-1 at 11-13 *with* Dkt. 437 at 19-21.) This is reason alone to disregard them and strike them as requested above.

☑ As a preliminary matter, contrary to GemCap's allegations, Miesen's claims are both a shareholder action against the AIA Entities seeking to enjoin them and a derivative action against present and former purported officers and directors of the AIA Entities. (Dkt. 211 at 1, 6 ¶5 ("Plaintiff is bringing this derivative action as a shareholder and on behalf of AIA Services").

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 17

**I.C. § 30-1-304(2)(a)-(b)**.

☑       The Idaho Supreme Court seeks guidance from the ABA Comments when interpreting the Idaho Business Corporation Act. ***Wagner v. Wagner***, 160 Idaho 294, 298, 371 P.3d 807, 811 (2016). The 1994 and 2016 ABA Comments conclusively establish that I.C. § 30-1-304 is not the sole basis from which Miesen can seek to void or set aside the Settlement Agreement. (5/7/19 Bond Decl. Ex. S-T (the Comments are after the text of 30-1-304). *See* ***Carsanaro***, 65 A.3d at 648-654. Miesen has other avenues under the common law, too. (*Id.*; 5/7/19 Bond Decl. Ex. S-T.) Miesen will submit evidence and establish that certain acts were ultra vires and others were intra vires but unauthorized—either way the Settlement Agreement is void or voidable.

☑       GemCap wrongly asserts that the AIA Entities obtained a benefit from the unlawful Settlement Agreement. While GemCap asserted in its Answer that "AIA received the full benefit and consideration agreed upon in its agreements," Dkt. 283 at 144-145 ¶ 5, Miesen's TAC makes no such allegations. (*E.g.*, Dkt. 211 at 39-47 ¶¶ 136-156, at 74-75 ¶¶ 228-229.) GemCap is improperly requesting that this Court accept its allegations as being true in violation of the Rule 12 standards.

☑       Miesen will also assert GemCap is judicially estopped from maintaining that he cannot pursue claims against GemCap derivatively. (5/7/19 Bond Decl. ¶25 Ex. U-W.)

Once again, this Court should not decide the issues raised by GemCap on a Rule 12 standard—especially when the same issues are already pending in GemCap's Motion for Summary Judgment. Instead, this Court should convert GemCap's Motion to one for summary judgment.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 18

**C.** **If this Court Converts GemCap's Motion to Dismiss to One for Summary Judgment, the Motion Should Be Stayed for a Limited Period of Time for the Same Reasons as GemCap's Pending Motion for Summary Judgment and Re-Filed in the Future.**

If this Court converts GemCap's Motion to one for summary judgment, this Court should also stay that Motion for a short period of time while sufficient discovery is completed.

"It is well established that '[d]istrict courts have inherent power to control their docket.'" ***Ready Transp., Inc.***, 627 F.3d at 404 (citation omitted). As this Court previously noted, "The Court 'has broad discretion to stay proceedings as an incident to its power to control its own docket.' ***Clinton v. Jones***, 520 U.S. 681, 706-707 (1997) (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)." (Dkt. 483.)

Here, if this Court coverts GemCap's Motion to Dismiss to one for summary judgment, this Court should stay that Motion for a short period of time until Miesen's discovery regarding GemCap has been sufficiently completed for Miesen to fairly and fully respond to GemCap's Motion, including the significant factual matters relating to the choice of law analysis. (5/7/19 Bond Decl. ¶¶ 2-26, Ex. A-W.) In short order, Miesen will be in a position to fully and fairly respond to GemCap's Motion to Dismiss and its other pending Motion for Summary Judgment— any delay is GemCap's fault for continuing to intentionally thwart discovery and engage in abusive and costly litigation tactics. (5/7/19 Bond Decl. ¶¶ 2-26, Ex. A-W.) Thus, a short stay is appropriate and warranted under the circumstances. At that time, GemCap can re-file its Motion properly in accordance with Fed. R. Civ. P. 56 and Loc. Civ. R. 7.1.

**D.** **This Court Should Extend the Time for Miesen to Respond to GemCap's Motion to Dismiss Until After this Court Decides this Motion.**

Since Miesen's Response to GemCap's Motion is presently due on May 7, 2019, this Court should extend the time for Miesen to respond to the Motion to Dismiss (Dkt. 548) until after this Motion is decided by this Court—at which time Miesen will know whether GemCap's Motion will

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 19

be disposed of in accordance with Rule 12 or Rule 56 so he will also be able know whether he will be permitted to submit matters outside of the pleadings or whether he will need to move to amend. Thus, judicial economy and fairness would be served by extending the time for Miesen to respond.

"When by these rules or by notice given thereunder an act is required or allowed to be done at or within a specified time, the Court, for cause shown, may at any time, with or without motion or notice, order the period be…extended." **Loc. Civ. R. 6.1(a)**. *See also* **Fed. R. Civ. P. 6(b)**.

Here, Miesen respectfully requests an extension of time to respond to GemCap's Motion to Dismiss (Dkt. 548) until this Court has rendered a decision in this Motion. (5/7/19 Bond Decl. ¶26.) It would be a waste of judicial resources to proceed until Miesen knows whether this Court will strike GemCap's Motion in its entirety or whether this Court will allow that Motion to be decided in accordance with Rule 12 or Rule 56. (*Id.*)

### III.   CONCLUSION

For the reasons articulated above, this Court should strike GemCap's Motion to Dismiss (Dkt. 548). In the alternative, this Court should convert GemCap's Motion to one for summary judgment and dispose of it in accordance with Rule 56 and Local Rule 7.1(b) and stay that motion until Miesen has completed the required discovery. Finally, this Court should extend the deadlines for Miesen to respond to GemCap's Motion (Dkt. 548) until such time as this Motion has been decided.

DATED:  This 7th day of May 2019.

RODERICK BOND LAW OFFICE, PLLC

By:   */s/ Roderick C. Bond*
　　　Roderick C. Bond
　　　Attorney for the Plaintiff Dale L. Miesen

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 7th day of May 2019, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

James D. LaRue:   jdl@elamburke.com

Jeffrey A. Thomson:   jat@elamburke.com

Loren C. Ipsen:   lci@elamburke.com

Alyson Anne Foster:   aaf@aswdpllc.com

Benjamin A. Schwartzman:   bas@aswdpllc.com

Markus William Louvier:   mlouvier@ecl-law.com

James B King:   jking@ecl-law.com

Jack S Gjording:   jgjording@gfidaholaw.com

Stephen Lee Adams:   sadams@gfidaholaw.com

Fanxi Wang:   fwang@birdmarella.com

Mark T. Drooks:   mdrooks@birdmarella.com

Peter L Steinman   psteinman@mrllp.com

Tyler Scott Waite:   twaite@campbell-bissell.com

Michael Scott Bissell:   mbissell@campbell-bissell.com

David R Lombardi:   drl@givenspursley.com

John M Howell:   jmh@powerstolman.com

Rebecca L Dircks:   rdircks@beneschlaw.com

Daniel Loras Glynn:   dglynn@idalaw.com

Martin J Martelle:   attorney@martellelaw.com

*/s/ Roderick C. Bond*
Roderick C. Bond

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
GEMCAP'S MOTION TO DISMISS [Dkt. 548] OR CONVERT IT TO S.J. AND STAY IT - 21

DANIEL LORAS GLYNN, ISB #5113
JONES ♦ WILLIAMS ♦ FUHRMAN ♦ GOURLEY, P.A.
The 9th & Idaho Center
225 N. 9th Street, Suite 820
PO Box 1097
Boise, ID 83701
Telephone:  (208) 331-1170
Facsimile:  (208) 331-1529
dglynn@idalaw.com

*Attorneys for Defendants AIA Services Corporation,*
*AIA Insurance, Inc., Connie Taylor Henderson,*
*Michael W. Cashman, Sr., James Beck, R. John Taylor,*
*Crop USA Insurance Agency, and Crop USA Insurance*
*Services, LLC*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>vs.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE | Case No. 1:10-CV-404-DCN-CWD<br><br>**MOTION FOR LEAVE TO WITHDRAW AS COUNSEL FOR DEFENDANTS AIA SERVICES CORPORATION AND AIA INSURANCE, INC.** |

**MOTION FOR LEAVE TO WITHDRAW AS COUNSEL FOR DEFENDANTS AIA SERVICES CORPORATION AND AIA INSURANCE, INC.  - 1**

SERVICES, LLC, an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,

Defendants.

The law firm of Jones Williams Fuhrman Gourley, P.A. respectfully requests leave to withdraw as counsel of record pursuant to District Court Local Rule Civ 83.6 for AIA Services Corporation and AIA Insurance, Inc. <u>only</u>.  Jones Williams Furhman Gourley, P.A. will continue in its representation of Connie Taylor Henderson, Michael W. Cashman, Sr., James Beck, R. John Taylor, Crop USA Insurance Agency, and Crop USA Insurance Services, LLC.   This motion is made on the grounds and for the reasons stated in the Affidavit of Daniel Loras Glynn filed concurrently herewith.

DATED This 8th day of May, 2019.

JONES ♦ WILLIAMS ♦ FUHRMAN ♦ GOURLEY, P.A.


  /s/   Daniel Loras Glynn
DANIEL LORAS GLYNN
Attorneys for Defendant AIA Services Corporation
and AIA Insurance, Inc.


**MOTION FOR LEAVE TO WITHDRAW AS COUNSEL FOR DEFENDANTS AIA SERVICES CORPORATION AND AIA INSURANCE, INC.  - 2**

**9-ER-1986**

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 8th day of May, 2019, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF System which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| David R. Lombardi | drl@givenspursley.com |
| Roderick Cyr Bond | rod@roderickbond.com |
| Michael S. Bissell | mbissell@campbell-bissell.com |
| Tyler S. Waite | twaite@campbell-bissell.com |
| James D. LaRue | jdl@elamburke.com |
| Jeffrey A. Thomson | jat@elamburke.com |
| Loren C. Ipsen | lci@elamburke.com |
| Martin J. Martelle | attorney@martellelaw.com |
| Shawnee S. Perdue | sperdue@perdue.lawyer |
| Alyson Anne Foster | aaf@aswdpllc.com |
| Benjamin A. Schwartzman | bas@aswdpllc.com |
| Vanessa  A. Mooney | vanessa@martellelaw.com |

Additionally, I certify that the following listed non-registered CM/ECF participants were served a copy of the foregoing by first class mail, postage prepaid, addressed to:

AIA Services Corporation
c/o R. John Taylor, President
403 Capital Street
Lewiston, ID 83501

AIA Insurance, Inc.
c/o R. John Taylor
403 Capital Street
Lewiston, ID 83501

/s/
Daniel Loras Glynn

**MOTION FOR LEAVE TO WITHDRAW AS COUNSEL FOR DEFENDANTS AIA SERVICES CORPORATION AND AIA INSURANCE, INC.  - 3**

**9-ER-1987**

SANFORD L. MICHELMAN, CSB 179702
smichelman@mrllp.com
WILLIAM E. ADAMS, CSB 153330
wadams@mrllp.com
JORDAN R. BERNSTEIN, CSB 255816
jbernstein@mrllp.com
DAVID C. LEE, CSB 193743
dlee@mrllp.com
MICHELMAN & ROBINSON, LLP
15760 Ventura Boulevard, 5th Floor
Encino, California 91436
Tel: 818.783.5530 / Fax: 818.783.5507

Attorneys for Plaintiff,
GEMCAP LENDING I, LLC

JS-6

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DISTRICT

| | |
|---|---|
| GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; CROP USA, LLC, a limited liability company of unknown origin; AIA INSURANCE, INC. an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; R. JOHN TAYLOR a/k/a RAY JOHNSON TAYLOR a/k/a R. JOHNSON TAYLOR a/k/a RAYMOND J. TAYLOR, an Individual; REINSURANCE PARTNERS, LLC, an Idaho limited liability company; GREEN LEAF REINSURANCE PARTNERS, LLC, a Delaware limited liability company; WESKAN AGENCY, LLC, a Kansas limited liability company; SOUND INSURANCE AGENCY, an Idaho assumed business name' PACIFIC EMPIRE RADIO CORPORATION, an Idaho corporation; RANDOLPH LAMBERJACK, an individual; JOLEE DUCLOS, an individual; BRYAN | CASE NO. CV13-5504 SJO (MAN)<br><br>Hon. S. James Otero<br><br>ORDER REGARDING PROPOSED STIPULATED JUDGMENT AS TO DEFENDANTS AIA INSURANCE, INC. AND AIA SERVICES CORPORATION<br><br><br><br><br><br><br><br><br><br>EXHIBIT C |

PROPOSED STIPULATED JUDGMENT AS TO AIA INSURANCE, INC. AND AIA SERVICES CORP.

FREEMAN, an individual; and HILLCREST AIRCRAFT COMPANY, an Idaho corporation; CGB DIVERSIFIED SERVICES, INC. dba DIVERSIFIED CROP INSURANCE SERVICES, a Louisiana Corporation; and GREENLEAF REINSURANCE COMPANY

Defendants.

FOR GOOD CAUSE SHOWN, THE COURT HEREBY ADOPTS THE POPOSED STIPUATED JUDGMENT AS TO DEFENDANTS AIA INSURANCE, INC. AND AIA SERVICES CORPORATION as follows:

Judgment shall be entered against Defendants AIA Insurance, Inc. and AIA Services Corporation, and each of them, jointly and severally, and in favor of Plaintiff GemCap Lending I, LLC in the amount of Twelve Million One Hundred Twenty Six Thousand Five Hundred Thirty Four Dollars and Sixty One Cents ($12,126,534.61).

IT IS SO ORDERED.

April 12, 2015.

_S. James Otero_

_____
S. James Otero
United State District Court Judge

2

ORDER FOR PROPOSED STIPULATED JUDGMENT AS TO AIA INSURANCE, INC. AND AIA
SERVICES CORP.

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA  98004
Telephone: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Attorney for the Plaintiff Dale L. Miesen

UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>v.<br><br>HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; and GEMCAP LENDING I, LLC, a Delaware limited liability company;<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF DALE L. MIESEN'S MOTION TO STRIKE THE HAWLEY TROXELL DEFENDANTS' MOTION TO DISMISS COUNTS VII AND VIII **[Dkt. 554]** OR, IN THE ALTERNATIVE, TO CONVERT THAT MOTION INTO ONE FOR SUMMARY JUDGMENT AND STAY THAT MOTION TO BE RE-FILED AND DECIDED IN ACCORDANCE WITH RULE 56 WITH THE HAWLEY TROXELL DEFENDANTS' OTHER PENDING MOTION FOR SUMMARY JUDGMENT |

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH
DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - i

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

         Defendants/Third-Party Plaintiffs,

    **v.**

REED TAYLOR, an individual,

         Third-Party Defendant.

REED TAYLOR, an individual,

         Third-Party Defendant/ Counterclaimant,

    **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

         Counterdefendants.

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - ii

**9-ER-1992**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT..................................................................................................... 2

A.   This Court Should Strike the Hawley Troxell Defendants' Motion to Dismiss Because the Motion Is Based Entirely on New Affirmative Defenses Not Previously Pleaded or Disclosed to Miesen. .................................................................................................... 2

B.   In the Alternative, the Hawley Troxell Defendants' Motion Should Be Converted into One for Summary Judgment and Disposed of in Accordance with Rule 56. ......................... 6

  1.  The Standards Under Rule 12(c) and Rule 12(d)................................................. 6

  2.  This Court Should Consider Matters Outside of the Pleadings So Miesen Is Able to Address and Prove the Mischaracterization of the Idaho Supreme Court's Holding in *Taylor v. Taylor*. ........................................................................................... 8

  3.  This Court Should Consider Matters Outside of the Pleadings so Miesen Is Able to Address and Prove that Declaratory Relief Should Be Granted. ..................................... 11

  4.  This Court Should Consider Matters Outside of the Pleadings so Miesen Is Able to Address and Prove that the Ultra Vires Doctrine Applies to Contracts Involving the Hawley Troxell Defendants. .......................................................................... 14

  5.  Miesen Has More than Sufficiently Pleaded Causes of Action for Declaratory Relief and Statutory Ultra Vires Relief............................................................... 16

C.   If this Court Converts the Hawley Troxell Defendants' Motion to Dismiss into One for Summary Judgment, the Motion Should Be Stayed for a Limited Period of Time Until the Discovery Disputes Are Resolved and Depositions Taken. ................................ 17

D.   This Court Should Extend the Time for Miesen to Respond to the Hawley Troxell Defendants' Motion to Dismiss Until After this Court Decides this Motion. ......... 18

III. CONCLUSION.................................................................................................. 19

CERTIFICATE OF SERVICE ................................................................................ 20

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - iii

9-ER-1993

Plaintiff Dale L. Miesen ("Miesen") moves this Court as follows:

## I.    INTRODUCTION

Exactly two weeks after GemCap filed a Motion to Dismiss raising new defenses improperly asserted for the very first time (Dkt. **548-1**), the Hawley Troxell Defendants followed suit by moving to dismiss Counts VII and VIII in the TAC ("Motion" or "Motion to Dismiss") (Dkt. **554**) based exclusively on affirmative defenses raised for the very first time, including by improperly "piggy backing" on one of GemCap's newly raised defenses. (Dkts. **554-1** at 11-16, **548-1** at 10-11.)[1] And like GemCap, the Hawley Troxell Defendants' Motion was disingenuously filed after their prior Motion for Summary Judgment, which was continued for discovery— discovery they still seek to thwart through their abusive tactics of hiding the ball. (*E.g.*, Dkts. **408**, **419**, **476**, **499**, **533** & **562**.) Thus, this Court should strike the Hawley Troxell Defendants' Motion—they should not be rewarded for their abusive tactics and failure to disclose defenses.

Alternatively, this Court should convert the Hawley Troxell Defendants' Motion into one for summary judgment because matters outside of the pleadings must be submitted in order to fully and fairly address the issues raised. If this Court agrees, it should also stay the Motion so that it can be briefed and decided in accordance with Rule 56 and Loc. Civ. R. 7.1 (including requiring the filing of a statement of material facts) after the required discovery has been completed to be decided along with the Hawley Troxell Defendants' pending Motion for Summary Judgment. Lastly, Miesen respectfully requests that this Court extend the briefing period until this motion is decided in order to allow Miesen to fully respond once he knows whether Rule 12 or Rule 56 will govern the disposition of the Hawley Troxell Defendants' Motion to Dismiss (Dkt. **554**.)

---

[1] When citing to dockets in this Court's file, Miesen will cite to the blue, court-stamped page numbers at the top of each page.

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 1

## II.    ARGUMENT

**A.  This Court Should Strike the Hawley Troxell Defendants' Motion to Dismiss Because the Motion Is Based Entirely on New Affirmative Defenses Not Previously Pleaded or Disclosed to Miesen.**

This Court should strike the Hawley Troxell Defendants' Motion to Dismiss (Dkt. 554) because they improperly rely exclusively on newly raised affirmative defenses—defenses *never* asserted in their Answer (Dkt. 193)[2] and *never* previously disclosed to Miesen in discovery.

> We conclude that the District Court had jurisdiction to grant the motion to strike pursuant to its inherent powers. The inherent powers are mechanisms for "control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."

> It is well established that "[d]istrict courts have inherent power to control their docket." ***This includes the power to strike items from the docket as a sanction for litigation conduct***.

*Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (citations omitted) (emphasis added). *C.f., **Cordell v. Robert***, No. 2:15-cv-0992 TLN CKD P, 2017 WL 3670965, at *1 (E.D. Cal. Aug. 25, 2017) (granting a motion to strike duplicative filings).

"In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense...." **Fed. R. Civ. P. 8(c)(1)**. "Each allegation must be simple, concise and direct." **Fed. R. Civ. P. 8(d)(1)**. "Pleadings must be construed so as to do justice." **Fed. R. Civ. P. 8(e)**. "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." **Fed. R. Civ. P. 12(b)**. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. **Fed. R. Civ. P. 15(a)(2)**.

Generally, "[f]ailure to plead an affirmative defense therefore results in a waiver of that defense." ***Enlow v. Salem–Keizer Yellow Cab Co., Inc.***, 389 F.3d 802, 819 (9th Cir. 2004) (citation

---

[2] Since the Hawley Troxell Defendants did not oppose the TAC, Judge Dale ordered them to file their Answer before the TAC was even filed (which they did). (Dkts. **190**, **193** & **211**.)

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 2

omitted). "[S]imply stating that the plaintiff failed to state a claim is insufficient to provide notice of a specific affirmative defense." ***Garcia v. Salvation Army***, 918 F.3d 997, 1008 (9th Cir. 2019).

> "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979); *see also In re Gayle Sterten*, 546 F.3d 278, 285 (3d Cir. 2008) (noting that "the proper focus of our inquiry" is whether framing the defense as a denial of an allegation "specifically deprived [the plaintiff] of an opportunity to rebut that defense or to alter her litigation strategy accordingly"). Although Rule 8 requires affirmative defenses to be included in responsive pleadings, **absent prejudice to the plaintiff,** the district court **has discretion** to allow a defendant to plead an affirmative defense in a subsequent motion.

***Simmons v. Navajo Cnty., Ariz.***, 609 F.3d 1011, 1023 (9th Cir. 2010) (overruled/abrogated on other grounds) (emphasis added). "[The Federal Rules of Civil Procedure] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." **Fed. R. Civ. P. 1**.

Here, this Court should exercise its discretion by striking the Hawley Troxell Defendants' Motion to Dismiss (Dkt. **554**) in its entirety because *they raised for the very first time the new affirmative defenses* that: **(a)** AIA Services and AIA insurance cannot avoid their obligations to GemCap based on the Idaho Supreme Court's recent holding in *Taylor v. Taylor*, 163 Idaho 910, 422 P.3d 1116 (2018) (Dkt. **554-1** at 11-12);[3] **(b)** Miesen's assertion in Paragraph 168 of the TAC

---

[3] This argument is perplexing. It is unimaginable why the Hawley Troxell Defendants would want their clients AIA Services and AIA Insurance to be bound by an illegal, ultra vires and/or unauthorized Settlement Agreement (Dkt. **128 at** 21-48) or to otherwise support GemCap's efforts to obtain payment from AIA Services or AIA Insurance of the over $12,000,000 allegedly owed under that unlawful agreement. (*E.g.*, *Id.*; Dkt. **156** at 5-16 (only addressing *certain* illegal aspects of the Settlement Agreement).) Indeed, as Professor McDermott has already opined, the Hawley Troxell Defendants have consistently disregarded their duties of loyalty to AIA Services and AIA Insurance. (*E.g.*, Dkt. **403-2** at ¶27.) And they did it again today. (Dkt. **572**.) Like GemCap (Dkt. **548-1** at 10-11), the Hawley Troxell Defendants also blatantly mischaracterize the holdings in *Taylor v. Taylor*—when they knew that the undersigned was counsel on that successful appeal. (5/28/19 Bond Decl. ¶10, Ex. **D**-**F**.) Ironically, Mr. Riley was involved in the ultra vires and illegal acts at issue in *Taylor v. Taylor*, and even signed one of the Letters. (*Id.*, Ex. **F** at 4.)

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 3

is speculative and, to the extent GemCap's Motion to Dismiss is granted "based upon a finding that the GemCap agreements are enforceable, it follows that the Court should dismiss Counts VII and VIII against the Hawley Troxell Defendants to the extent that they are based upon factual allegations connected to the alleged abuse of corporate power in the GemCap agreements and illegality of the GemCap loan and/or settlement agreement" (Dkt. **554-1** at 12); **(c)** "entry of declaratory judgment" would "be inappropriate because [a] declaratory judgment should not be entered upon claims seeking damages for alleged past wrongdoing" and "would not finally settle and determine the entire controversy between Plaintiff and the Hawley Troxell Defendants" (Dkt. **554-1** at 12-13); **(d)** "The legal standards applicable to the doctrine of ultra vires make it clear that, as a matter of law, it does not apply to this case and cannot be used by Plaintiff to obtain reimbursement of attorney fees paid to the Hawley Troxell Defendants" and Miesen's claims "sounds in tort, not contract" (Dkt. **554-1** at 14-15); and **(e)** Miesen' declaratory relief and ultra vires claims failed because he has failed to comply with the pleading requirements under Fed. R. Civ. P. 8(a) (Dkt. **554-1** at 15-16). But *none* of the foregoing defenses (or arguments) were pleaded in the Hawley Troxell Defendants' Answer (Dkt. **193** at 57-65) and those defenses were *never* disclosed in discovery to Miesen. (5/28/19 Bond Decl. ¶¶2-7, Ex. **A**-**C**.)

While Miesen maintains that all of the Hawley Troxell Defendants' convoluted arguments fail on the merits, Miesen's request to strike their Motion is based solely on their abusive tactics of failing to plead their newly disclosed defenses in their Answer or disclose them in discovery—despite having over 2½ years to do so. There are additional facts supporting striking the Motion:

☑ The Hawley Troxell Defendants' failure to disclose, in their Answer or Answers to Interrogatory No. 2, any of the affirmative defenses that are newly raised and disclosed *for the very first time* in their Motion (Dkt. **554-1** at 11-16) violate numerous Rules of Civil Procedure.

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH
DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 4

(5/28/19 Bond Decl. ¶¶2-7, Ex. **A**, **B** at 6-10 & **C** at 6-11; Dkt. **193** at 57-65.) **Fed. R. Civ. P. 1**, **8(c)(1)**, **8(d)(1)**, **8(e)**, **12(b)**, and **15(a)(2)**; *Simmons*, 609 F.3d at 1023. As with GemCap, this Court should not reward the Hawley Troxell Defendants for their failure to comply with Rules of Civil Procedure and their abusive (and costly) litigation tactics. ***Ready Transp., Inc.***, 627 F.3d at 404-405 ("A primary aspect of [the] discretion [to strike] is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.").

☑ The Hawley Troxell Defendants' assertion in their Answer that the "[TAC] fails to state a claim against [them] upon which relief may be granted" (Dkt. **193** at 2) "is insufficient to provide notice of a specific affirmative defense." *Garcia*, 918 F.3d at 1008.

☑ After the Hawley Troxell Defendants and other defendants did not oppose the filing of Miesen's Second Amended Complaint (but later challenged it), Judge Dale admonished them:

> The Court would have expected (and expects in the future) grounds for dismissal to have been raised in response to the motion to amend instead of misleading representations that Defendants did not oppose Plaintiffs' motion to amend. The notices of non-opposition were not consistent with Rule 1. See Fed. R. Civ. P. 1. 2015 Comm. Note. ("[D]iscussions of ways to improve the administration of civil justice regularly include pleas to discourage over-use, misuse, and *abuse of procedural tools that increase cost and result in delay*.") (emphasis in original).

 (Dkt. **178** at 3 n.2.) As a result, Judge Dale ordered the Hawley Troxell Defendants to file their Answer *before* the TAC was even filed, which they did on December 19, 2016 (nearly five months before the TAC was filed). (Dkts. **190**, **193** & **211**.) Presumably in compliance with Judge Dale's directive, the Hawley Troxell Defendants did not oppose the filing of the Third Amended Complaint—because they had no viable challenges. (Dkt. **183**.) However, over 2½ years after filing their Answer, the Hawley Troxell Defendants disingenuously challenge the TAC. (Dkt. **554-1**.) This is proof of more "misleading representations" in violation of Judge Dale's order and more proof of abusive and unfair litigation tactics. (Dkt. **178** at 3 n.2; 5/28/19 Bond Decl. ¶6.)

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 5

☑       The Hawley Troxell Defendants concealed their new defenses from Miesen and his counsel for over 2½ years. (*Compare* Dkt. **554-1** at 11-16 *with* 5/28/19 Bond Decl. Ex. **B** at 6-10 & **C** at 6-11 *and* Dkt. **193** at 57-65.) Moreover, they have never moved to amend their Answer or otherwise supplement their answers to Interrogatory No. 2. (5/28/19 Bond Decl. ¶¶2-7 Ex. **A**.)

☑       Miesen has been prejudiced by the Hawley Troxell Defendants' intentional failure to assert or disclose the new affirmative defenses in their Answer or in their answers to Interrogatory No. 2 requesting the identification of affirmative defenses and the factual and legal basis for such defenses. (5/28/19 Bond Decl. ¶¶2-7, Ex. **A**, **B** at 6-10 & **C** at 6-11.) Indeed, the precious time expended preparing this Motion alone is prejudicial to Miesen. (*Id*.)

Accordingly, this Court should strike the Hawley Troxell Defendants' Motion to Dismiss (Dkt. 554) in its entirety—they should not be rewarded for their abusive litigation tactics.

**B.** **In the Alternative, the Hawley Troxell Defendants' Motion Should Be Converted into One for Summary Judgment and Disposed of in Accordance with Rule 56.**

Alternatively, this Court should order that the Hawley Troxell Defendants' Motion be converted and disposed of in accordance with Rule 56 so it can be fully and fairly adjudicated.

### 1.  The Standards Under Rule 12(c) and Rule 12(d).

A Rule 12(c) motion challenges the legal sufficiency of the opposing party's pleadings and operates in much the same manner as a motion to dismiss under Rule 12(b)(6)…A Rule 12(c) Motion for Judgment on the Pleadings may consequently be granted if, after assessing both the complaint, plus matters for which judicial notice is proper, it appears "beyond doubt that the [non-moving party] cannot prove any facts that would support his claim for relief ..."

*Morgan v. County of Yolo*, 436 F. Supp.2d 1152, 1154-55 (E.D. Cal. 2006) (citations omitted).

To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 6

unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

The Supreme Court has identified two "working principles" that underlie this dismissal standard. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Abbott v. Rosenthal*, 2 F. Supp.3d 1139, 1143-1144 (D. Idaho 2014) (citations omitted). "Indeed,

factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the

allegations under Rule 12(b)(6)." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

As a general rule, a court may consider only the pleadings and properly attached documents on a Rule 12(b)(6) motion. … [U]nder the "incorporation by reference" doctrine, the court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." … [C]ourts may take judicial notice of "matters of public record," but not of facts that may be "subject to reasonable dispute."

*In re Iso Ray, Inc. Securities Litigation*, 189 F.Supp.3d 1057, 1065-66 (E.D. Wash. 2016). A

court may also take judicial notice of its own records. *Desfosses v. Noridian Healthcare Sol.,*

*LLC*, No. 4:14–CV–00244–CWD, 2015 WL 1196018, at *1 n.1 (D. Idaho March 16, 2015).

But "[i]t is well-established that questions of fact cannot be resolved or determined on a

motion to dismiss for failure to state a claim upon which relief can be granted." *Cook, Perkiss and*

*Liehe, Inc. v. Northern California Collection Services, Inc.*, 911 F.2d 242, 245 (9th Cir. 1990).

Whenever district court looks beyond pleadings in evaluating a motion to dismiss under Rule 12(b)(6), that motion must be treated as one for summary judgment. Before summary judgment may be entered, all parties must be given notice of the motion and opportunity to respond, ***which includes time for discovery necessary to develop facts justifying opposition to the motion***.

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH
DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 7

*Meritage Homes of Nev., Inc. v. FNBN-Rescon I, LLC*, 86 F. Supp.3d 1130, 1138 (D. Nevada 2015) (citing Fed. R. Civ. P. 12(d)) (emphasis added). The district court has "the discretion…to convert the [Rule 12] motion to one for summary judgment when a party has notice that the district court may look beyond the pleadings." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007). "In this circuit, notice is adequate if the party against whom judgment is entered is 'fairly apprised' that the court will look beyond the pleadings, thereby transforming the motion to dismiss into a motion for summary judgment." *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1532-1533 (9th Cir. 1985). When a party moves for summary judgment, specific requirements must be met, including submitting a separate statement of material facts, memorandum of law and any supporting affidavits at the time the motion is filed. **Loc. Civ. R. 7.1(b)(1)-(2)**; *see also* **Loc. Civ. R. 7.1(e)(1)**.

Here, if the Hawley Troxell Defendants' Motion to Dismiss is not stricken (as requested above), this Court should exercise its discretion to convert the Hawley Troxell Defendants' Motion into one for summary judgment and dispose of it in accordance with Rule 56 and Local Rule 7.1(b) because the pleadings are insufficient to address the issues, Miesen has been prejudiced by the newly raised defenses, and Miesen requests permission to submit substantial matters outside of the pleadings to fully address GemCap's Motion. (5/28/19 Bond Decl. ¶¶2-13, Ex. **A**-**K**.)

2. **This Court Should Consider Matters Outside of the Pleadings So Miesen Is Able to Address and Prove the Mischaracterization of the Idaho Supreme Court's Holding in *Taylor v. Taylor*.**

The Hawley Troxell Defendants argue that Counts VII and VIII in the TAC should be dismissed for the same reasons asserted by GemCap and Miesen's assertion that they should be liable for some of the GemCap transactions fails. (Dkt. **554-1** at 11-12.) These arguments cannot be adjudicated on the pleadings alone.

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 8

9-ER-2001

"Whether a contract is illegal is a question of law for *the court to determine from all the facts and circumstances of each case.*" ***Trees v. Kersey***, 138 Idaho 3, 6, 56 P.3d 765, 768 (2002) (citation omitted) (emphasis added). In other words, the determination is made after evidence is submitted under a Rule 56 standard—not under a Rule 12(b)(6) standard. ***Id.***

> 'An illegal contract is one that rests on illegal consideration consisting of any act or forbearance which is contrary to law or public policy,' and such a contract 'is illegal and unenforceable.' '[W]hen the consideration for a contract explicitly violates a statute, the contract is illegal and unenforceable.'
>
> > The general rule is that a contract prohibited by law is illegal and unenforceable. A contract which is made for the purpose of furthering any matter or thing prohibited by statute is void. This rule applies on the ground of public policy to every contract which is founded on a transaction prohibited by statute. The Idaho Court of Appeals has suggested that where a statute intends to prohibit an act, it must be held that its violation is illegal, without regard to the reason of the inhibition or to the ignorance of the parties as to the prohibiting statute.

***Taylor v. Taylor***, 163 Idaho 910, 916, 422 P.3d 1116, 1122 (2018) (citations omitted). On the other hand, "[a]n ultra vires act is an act that is '[u]nauthorized; beyond the scope of power allowed or granted by a corporate charter or by law.'" ***Id.*** at 918 (citation omitted). Consequently, "[a] contract may be both ultra vires, using the term in its strict sense, and also against public policy so as to be 'illegal'… On the other hand, a contract is not necessarily "illegal," using the term as defined above, merely because it is ultra vires." **7A FLETCHER CYC. CORP. § 3400** (2018). In addition to common law, Idaho has a statutory mechanism for certain parties to challenge certain ultra vires acts. **I.C. § 30-1-304**; **I.C. § 30-29-304** (both statutes are identical). On the other hand, I.C. § 30-1-304 "does not address disputes over whether corporate actors properly caused the corporation to exercise its capacity or power." ***Carsanaro v. Bloodhound Tech., Inc.***, 65 A.3d 618, 650 (Del. 2013) (abrogated on other grounds) (analyzing Delaware's 8 Del. C. § 124, which contains

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 9

substantially the same content as I.C. § 30-1-304, although Delaware's Section 124 also combines certain subsections and uses a different numbering format). Such acts based on the improper exercise of a corporation's power can also be challenged and set aside without the aid of I.C. § 30-1-304. *Carsanaro*, 65 A.3d at 648-654.

Here, in order to fully address the Hawley Troxell Defendants' argument as to the Idaho Supreme Court's holding in *Taylor v. Taylor* and the determination of whether any of the ultra vires agreements are enforceable, Miesen requests permission to submit matters outside of the pleadings. (5/28/19 Bond Decl. ¶¶8-13, Ex. **D**-**K**.) This will allow the Court to specifically address the differences between illegality, ultra vires, and intra vires (but unauthorized) as to each contract. The following also tilt the scales in favor of converting the Motion:

☑       The Hawley Troxell Defendants do not explain what alleged contract or ultra vires corporate act involves both them and GemCap. (Dkt. **554-1** at 11.) Indeed, the TAC does not allege a single contract or corporate act that both the Hawley Troxell Defendants and GemCap were both simultaneously involved in. (Dkt. **211**.) Their arguments can only be addressed through evidence.

☑       Since the Hawley Troxell Defendants' "piggy-back" on GemCap's arguments (Dkt. **554-1** at 11), this Court should reject them and convert the motion for the same reasons Miesen asserted against GemCap. (Dkt. **556-1** at 17-21; 5/28/19 Bond Decl. ¶¶8-13, Ex. **D-K**.) Once again, evidence is required to adjudicate these issues.

☑       While the Hawley Troxell Defendants' arguments are convoluted and difficult to even follow (Dkt. **554-1** at 11), Miesen will submit evidence in an effort to establish that the Settlement Agreement, Dkt. 128 at 21-48, is illegal, ultra vires (and the AIA Entities received no benefit), and/or intra vires (but not properly authorized). (5/28/19 Bond Decl. ¶¶10-12, Ex. **D-J**; *see also* Dkt. **156** at 5-16.) And these issues can only be adjudicated after this Court considers "*all*

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 10

*the facts and circumstances of [this] case*." ***Trees***, 138 Idaho at 6, 56 P.3d at 768 (emphasis added); ***Taylor***, 163 Idaho at 915-919, 422 P.3d at 1121-1125. This can only be done under Rule 56.

☑  As to the argument that Miesen's "speculative allegation in the TAC that…'[had the Hawley Troxell Defendants done their job], the GemCap Guarantees and Settlement Agreement would never have occurred and AIA would not have been damaged by millions of dollars'" should be dismissed "to the extent that they are based upon factual allegations connected to the abuse of corporate power in the GemCap agreements," this is really a disguised proximate causation argument, which is not properly decided under Rule 12. (Dkt. 554 at 12.) ***Easterling v. Kendall***, 159 Idaho 902, 367 P.3d 1214, 1226 (2016) ("The question of proximate cause is one of fact and almost always for the jury."). Moreover, Miesen will submit expert testimony to address this issue, too, if permitted. (5/28/19 Bond Decl. ¶10.)

Thus, the Hawley Troxell Defendants' Motion should be converted to one under Rule 56.

### 3. This Court Should Consider Matters Outside of the Pleadings so Miesen Is Able to Address and Prove that Declaratory Relief Should Be Granted.

The Hawley Troxell Defendants argue that Miesen's declaratory relief would be improper because he should not be able to obtain damages for past wrongdoing and the declaratory relief will not resolve the tort claims or an "early remedy." (Dkt. **554-1** at 12-14.) These arguments, while ignoring issues of law and lacking merit, cannot be resolved on the pleadings alone.

While federal law provides that declaratory relief is only a remedy, Idaho law provides that a cause of action may be brought for declaratory relief. **I.C. § 10-1201***, et seq.*; ***ABC Agra, LLC v. Critical Access Grp., Inc.***, 156 Idaho 781, 783, 331 P.3d 523, 525 (2014) ("Idaho courts have the power to declare the rights, status and legal relations of persons affected by contracts…Breach of a contract is not required for the issuance of a declaratory judgment regarding a contract dispute."); ***Hutchins v. Trombley***, 95 Idaho 360, 366, 509 P.2d 579, 585 (1973); ***Bisson v. Bank***

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 11

*of America, N.A.*, 919 F. Supp.2d 1130, 1139 (W.D. Wash. 2013); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 6(4)-(5) (2000) ("Judicial remedies include the following…ordering cancellation or reformation of contract, deed, or similar instrument…declaring the rights of the parties, such as determining that an obligation claimed by the lawyer to be owed to the lawyer is not enforceable").

Here, Miesen's declaratory relief satisfies both the Idaho and federal standards (albeit Miesen maintains that Idaho law applies because this is a diversity action). However, in order to fully adjudicate the declaratory relief claims, the agreements and engagement letters, along with the determination of their enforceability must be decided under Rule 56 so this Court can fully evaluate the evidence. (5/28/19 Bond Decl. ¶13, Ex. **K**.)

☑ The TAC alleges that the fee agreements and other agreements involving the Hawley Troxell Defendants were void or unenforceable. (Dkt. **211** at ¶¶225-227.) Since the filing of the TAC, the agreements and engagement letters have been produced (recently) and are highlighted in yellow in the list provided by the Hawley Troxell Defendants, which Miesen and his expert witness will establish are unenforceable and void for a number of reasons. (5/28/19 Bond Decl. ¶13, Ex. **K**.) That list of agreements and engagement letters proves that there is a controversy—the Hawley Troxell Defendants intend to use them for their defense, while Miesen will seek to have them declared void and/or used to prove that the Hawley Troxell Defendants' breached their fiduciary duties to the AIA Entities. (*Id*.)

☑ The Hawley Troxell Defendants ignore the fact that "Attorney fee agreements that violate the Rules of Professional Conduct are against public policy and are unenforceable*." Cotton v. Kronenberg*, 111 Wn.App. 258, 269, 44 P.3d 878, 884 (2002). This is precisely one of the claims Miesen is asserting. (Dkt. **211** at ¶227.)

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 12

☑ A review of the TAC, the Hawley Troxell Defendants' Answer and the recently disclosed privileged agreements and engagement letters reveal controversies that need to be resolved as to those agreements. (Dkts. **211** & **193**; 5/28/19 Bond Decl. ¶13, Ex. **K**.) The enforceability of those agreements and engagement letters are in dispute.

☑ Professor McDermott's prior opinion provides a framework for many others that he will be submitting on summary judgment, if this Court permits Miesen to do so:

> While this case may appear quite to be complex and, indeed, is quite complex in various aspects, the general theme of what has transpired is quite simple with respect to the Hawley Troxell Defendants. By analogy, in my opinion , the Hawley Troxell Defendants' representation of AIA Services, AIA Insurance and CropUSA Insurance Agency in *Reed Taylor v. AIA Services* and accepting litigation decisions or purported conflict waivers from John Taylor or any of the other conflicted insiders, would be no different than an attorney agreeing to represent a bank and the bank president when that bank president participated in stealing the banks money (or agreeing to represent only the bank and allowing that same president to make the decisions for the litigation) in a lawsuit brought by a customer seeking to recover his funds that were stolen by the president of the bank. The attorney, and a lawfully operated bank, would of course want to be taking legal action against the president and working with the customer to seek recovery of the stolen funds. Applying this analogy here, the Hawley Troxell Defendants should have been seeking on behalf of AIA Services or AIA Insurance to recover their money, property, and other assets from CropUSA Insurance Agency, John Taylor and the other responsible Controlling AIA Defendants rather than representing them all or allowing any of them to make litigation decisions for AIA Services or AIA Insurance.

(Dkt. **403-2** at ¶27.) Professor McDermott will submit additional opinions to address these issues on summary judgment, if permitted. (5/28/19 Bond Decl. ¶¶8-13, Ex. **G**-**K**.)

☑ The evidence will establish that the Hawley Troxell Defendants violated AIA Services' amended articles of incorporation, Restated Bylaws, the Rules of Professional Conduct and breached their fiduciary duties—any of which can lead to declaratory relief. (5/28/19 Bond Decl. ¶¶8-12, Ex. **I**-**J**.)

Thus, once again, the Motion should be converted into one for summary judgment.

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 13

**4. This Court Should Consider Matters Outside of the Pleadings so Miesen Is Able to Address and Prove that the Ultra Vires Doctrine Applies to Contracts Involving the Hawley Troxell Defendants.**

The Hawley Troxell Defendants argue that Miesen may not recover any of the significant attorneys' fees paid to them under the ultra vires doctrine and that Miesen's claims sound in tort, not contract. (Dkt. **554-1** at 14-15.) Once again, these arguments are not properly adjudicated under a Rule 12(b) standard and this Court should covert the Motion into one for summary judgment.

> (1) Except as provided in subsection (2) of this section, the validity of corporate action may not be challenged on the ground that the corporation lacks or lacked power to act.
> (2) A corporation's power to act may be challenged:
>> (a) In a proceeding by a shareholder against the corporation to enjoin the act;
>> (b) In a proceeding by the corporation, directly, derivatively or through a receiver, trustee or other legal representative, against an incumbent or former director, officer, employee or agent of the corporation; or
>> (c) In a proceeding by the attorney general under section 30-1-1430, Idaho Code.
> (3) In a shareholder's proceeding under subsection (2)(a) of this section to enjoin an unauthorized corporate act, the court may enjoin or set aside the act, if equitable and if all affected persons are parties to the proceeding, and may award damages for loss, other than anticipated profits, suffered by the corporation or another party because of enjoining the unauthorized act.

**I.C. § 30-1-304**; **I.C. § 30-29-304**.

Here, the determination of whether Miesen is entitled to any relief under the ultra vires statutes against Hawley Troxell is one for this Court to determine on summary judgment or at trial:

☑ Miesen's TAC sufficiently pleads that agreements between the Hawley Troxell Defendants and the AIA Entities are ultra vires and Miesen seeks to recovery funds paid under those agreements. (Dkt. **211** at ¶¶228-229.) The applicable agreements and engagement letters at issue are listed and highlighted in yellow in Exhibit K. (5/28/19 Bond Decl. ¶13, Ex. **K**.)

☑ The Hawley Troxell Defendants seek to turn the Rule 12(b) standard inside out by asserted that "AIA has received the benefits" from their legal work. (Dkt. **554-1** at 14.) Apparently,

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 14

they seek to interject unsupported and unalleged facts to show that the AIA Entities should be estopped from obtaining ultra vires relief. *Taylor*, 163 Idaho at 919, 422 P.3d at 1125 ("The 1995 Letter Agreement was entered into in good faith by competent parties, and AIA received the benefit of the agreement in that it allowed AIA the opportunity to reorganize."). There is not a single allegation in the TAC asserting that the AIA Entities benefitted from the alleged legal work provided by the Hawley Troxell Defendants. (Dkt. **211**.) To the contrary, the TAC asserts: "the Hawley Troxell Defendants improperly ensured that the Controlling AIA Defendants would retain control over AIA to the detriment of AIA and *for the improper benefit to the Hawley Troxell Defendants*." (Dkt. 211 at ¶114.) Their "factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee*, 250 F.3d at 688. The Hawley Troxell Defendants' allegations regarding "benefit" can only be addressed with evidence.

☑        While the cases cited by Hawley Troxell correctly point out that legal malpractice claims and breach of fiduciary duty claims sound in tort (Dkt. **554-1** at 15), those cases do not address, nor prohibit, Miesen from seeking relief under I.C. §§ 30-1-304 or 30-29-304, and the Hawley Troxell Defendants provide no authority holding otherwise. **Fed. R. Civ. P. 57** ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."). While this case presents the more fundamental issues of the Hawley Troxell Defendants breaching fiduciary duties and committing legal malpractice, it also separately involves the more unique issues of ultra vires and unauthorized agreements and acts, which Miesen will establish with evidence. (5/28/19 Bond Decl. ¶¶11-13, Ex. **G**-**K**.) And this Court needs evidence to fully evaluate and adjudicate those claims in any motion practice.

Thus, this Court should convert the Hawley Troxell Defendants' Motion into one for summary judgment.

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH
DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 15

**5. Miesen Has More than Sufficiently Pleaded Causes of Action for Declaratory Relief and Statutory Ultra Vires Relief.**

The Hawley Troxell Defendants argue that Miesen did not adequately plead Counts VII and VIII in the TAC. (Dkt. **554-1** at 15-16.) They are wrong.

"A pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." **Fed. R. Civ. P. 8(a)(2)-(3)**.

Here, Miesen more than adequately pleads causes of action for ultra vires and declaratory relief:

☑ Miesen alleges that he is bringing this action as a shareholder and also derivatively on behalf of the AIA Entities. (Dkt. **211** at ¶5.) Miesen is also seeking to enjoin acts and to recover money paid under the agreements. (Dkt. **211** at ¶¶228-229.) The AIA Entities, CropUSA Insurance Agency, John Taylor and the Hawley Troxell Defendants—the "affected persons"—are all parties to this lawsuit. (Dkt. **211**.) Thus, the TAC complies with I.C. § 30-1-304 and I.C. § 30-29-304. Likewise, Miesen's request for declaratory relief satisfies the pleading standards under Idaho and federal law. (Dkt. **211** at ¶¶225-227.) Both causes of action incorporate by reference all other allegations in the TAC necessary to support each cause of action. (Dkt. **211** at ¶¶ 225 & 228.)

The allegations supporting relief are <u>not</u> conclusory and there are disputes over agreements. (Dkt. **211**; 5/28/19 Bond Decl. Ex. **K**) For example, Miesen alleges the following additional facts:

☑ "By tolling the statute of limitations for claims against the Controlling AIA Defendants, the Hawley Troxell Defendants sought to use the tolling agreements to authorize the waiver of their conflicts of interest representing AIA, CropUSA and the interests of the Controlling AIA Defendants in litigation that could have and should have exposed the fraud and intentional breaches of fiduciary duties committed by the Controlling AIA Defendants." (Dkt. **211** at ¶104.)

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 16

☑ "[T]he Hawley Troxell Defendants prepared and/or entered into agreements and/or amended agreements without requiring AIA to have independent counsel and without involving disinterested and unconflicted constituents from AIA in violation of the Rules of Professional Conduct, including RPC 1.7, RPC 1.8 and RPC 1.13. Throughout the Hawley Troxell Defendants' representation of AIA and CropUSA, they failed to act in the best interests of AIA and to address the conflicts of interest and malfeasance committed against AIA with the highest unconflicted and disinterested constituents from AIA in violation of the Rules of Professional Conduct, including, RPC 1.13." (Dkt. **211** at ¶105.)

However, if Miesen's TAC is deficient in any way as to any of the issues raised by the Hawley Troxell Defendants, "[d]ismissal without leave to amend is improper unless it is clear…that the complaint could not be saved by any amendment." ***Polich v. Burlington Northern, Inc.***, 942 F.2d 1467, 1472 (9th Cir. 1991); ***Pacific West Group, Inc. v. Real Time Solutions, Inc.***, 321 Fed.Appx. 566, 569 (9th 2008) (explaining how motions to dismiss under Rule 12(b) and Rule 12(c) are functionally the same and "leave to amend should be granted even if no request was made unless amendment would be futile."). However, as discussed below, Miesen has been working on a proposed Fourth Amended Complaint (which will include new allegations based on recently discovered or disclosed evidence) and, if Miesen is permitted to file the FAC is any form, will render the Hawley Troxell Defendants' Motion to Dismiss moot.

**C.** **If this Court Converts the Hawley Troxell Defendants' Motion to Dismiss into One for Summary Judgment, the Motion Should Be Stayed for a Limited Period of Time Until the Discovery Disputes Are Resolved and Depositions Taken.**

"It is well established that '[d]istrict courts have inherent power to control their docket.'" ***Ready Transp., Inc.***, 627 F.3d at 404 (citation omitted). As this Court previously noted, "The Court 'has broad discretion to stay proceedings as an incident to its power to control its own

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 17

docket.' ***Clinton v. Jones***, 520 U.S. 681, 706-707 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)." (Dkt. 483 (bold emphasis added).)

Here, if this Court converts the Hawley Troxell Defendants' Motion to one for summary judgment, this Court should also stay that Motion for a short period of time until certain discovery disputes are resolved and certain sufficient discovery is completed. (*E.g.*, Dkts. **562**-**564** & **571**; 5/28/19 Bond Decl. ¶¶ 2-13, Ex. **A**-**K**.) In short order, Miesen will be in a position to fully and fairly respond to the Motion to Dismiss and the other pending Motion for Summary Judgment—any delay is the Hawley Troxell Defendants' fault. (*Id.*) Thus, a short stay is appropriate and warranted under the circumstances. At that time, the Hawley Troxell Defendants can re-file its Motion properly in accordance with Fed. R. Civ. P. 56 and Loc. Civ. R. 7.1. Moreover, Miesen is working on a new Fourth Amended Complaint to include allegations regarding new evidence and beef up the allegations in the TAC. (5/28/19 Bond Decl. ¶¶7 & 14.) Such a Motion, if granted, would render the Hawley Troxell Defendants' Motion moot (and GemCap's, too) since it is directed at the TAC. ***Ramirez v. County of San Bernardino***, 806 F.3d 1002, 1008 (9th Cir. 2015) ("[b]ecause the Defendants' motion[s] to dismiss targeted the Plaintiff's [Third Amended] Complaint, which [is] no longer in effect…the motion to dismiss should [be] deemed moot.").

**D.** **This Court Should Extend the Time for Miesen to Respond to the Hawley Troxell Defendants' Motion to Dismiss Until After this Court Decides this Motion.**

"When by these rules or by notice given thereunder an act is required or allowed to be done at or within a specified time, the Court, for cause shown, may at any time, with or without motion or notice, order the period be…extended." **Loc. Civ. R. 6.1(a)**. *See also* **Fed. R. Civ. P. 6(b)**.

Here, this Court should extend the time for Miesen to respond to the Motion to Dismiss (Dkt. **554**) until after this Motion is decided by this Court—at which time Miesen will know whether the Motion will be disposed of in accordance with Rule 12 or Rule 56 so he will also be

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 18

9-ER-2012

able know whether he will be permitted to submit matters outside of the pleadings or not. (5/28/19 Bond Decl. ¶14.)  Thus, judicial economy and fairness would be served by extending the time for Miesen to respond.

### III.    CONCLUSION

For the reasons articulated above, this Court should strike the Hawley Troxell Defendants' Motion to Dismiss (Dkt. 554). In the alternative, this Court should convert the Motion into one for summary judgment, dispose of it in accordance with Rule 56 and Local Rule 7.1(b), and stay that motion until Miesen has completed the required discovery. Finally, this Court should extend the deadlines for Miesen to respond to the Hawley Troxell Defendants' Motion (Dkt. 554) until such time as this Motion has been decided.

DATED:  This 28th day of May 2019.

RODERICK BOND LAW OFFICE, PLLC

By:    */s/ Roderick C. Bond*
Roderick C. Bond
Attorney for the Plaintiff Dale L. Miesen

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 19

9-ER-2012

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of May 2019, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

James D. LaRue:   jdl@elamburke.com

Jeffrey A. Thomson:   jat@elamburke.com

Loren C. Ipsen:   lci@elamburke.com

Alyson Anne Foster:   aaf@aswdpllc.com

Benjamin A. Schwartzman:   bas@aswdpllc.com

Markus William Louvier:   mlouvier@ecl-law.com

James B King:   jking@ecl-law.com

Jack S Gjording:   jgjording@gfidaholaw.com

Stephen Lee Adams:   sadams@gfidaholaw.com

Fanxi Wang:   fwang@birdmarella.com

Mark T. Drooks:   mdrooks@birdmarella.com

Peter L Steinman   psteinman@mrllp.com

Tyler Scott Waite:   twaite@campbell-bissell.com

Michael Scott Bissell:   mbissell@campbell-bissell.com

David R Lombardi:   drl@givenspursley.com

John M Howell:   jmh@powerstolman.com

Rebecca L Dircks:   rdircks@beneschlaw.com

Daniel Loras Glynn:   dglynn@idalaw.com

Martin J Martelle:   attorney@martellelaw.com

                    */s/ Roderick C. Bond*
                    Roderick C. Bond

MEMORANDUM IN SUPPORT OF MIESEN'S MOTION TO STRIKE THE HTEH DEFENDANTS MOT. TO DISMISS [Dkt. 554] OR CONVERT IT TO S.J. AND STAY IT - 20

9-ER-2013

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA  98004
Telephone: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Attorney for the Plaintiff Dale L. Miesen

UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>**v.**<br><br>HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; and GEMCAP LENDING I, LLC, a Delaware limited liability company;<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF DALE L. MIESEN'S SIXTH MOTION TO COMPEL RE: R. JOHN TAYLOR AND THE PRODUCTION OF DOCUMENTS AND INFORMATION IN THE POSSESSION, CUSTODY AND CONTROL OF R. JOHN TAYLOR THAT BELONG TO OTHER DEFENDANTS OR ENTITIES |

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - i

9-ER-2015

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

    Defendants/Third-Party Plaintiffs,

  **v.**

REED TAYLOR, an individual,

    Third-Party Defendant.

REED TAYLOR, an individual,

    Third-Party Defendant/ Counterclaimant,

  **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

    Counterdefendants.

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - ii

**TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................. 1

II.  ARGUMENT ....................................................................................................... 2

A.   The Motion to Compel Standard.......................................................................... 2

B.   This Court Should Compel John Taylor to Properly Answer Interrogatories and
     Requests for Production, Produce Responsive Documents, Produce Proper Document
     Logs for Any Withheld Documents and Enter a General Order to Compel. .......................... 3

     1.   John Taylor Has Waived any Objections by Only Asserting Boilerplate Objections
          and He Should Be Ordered to Withdraw All Such Objections and Properly
          Answer All Interrogatories and Requests for Production. ................................................. 4

     2.   John Taylor Custody, Control and/or Possession of all of the Books, Records,
          Communications, Documents and Information Belonging to AIA Services, AIA
          Insurance, CropUSA Insurance Services, and the Other Entities that He
          Controls—He Should Be Compelled to Produce All Such Information. .......................... 6

     3.   John Taylor Should Be Compelled to Provide Meaningful, Intelligible and
          Non-Evasive Answers to ROGs #1-6, 8, 10, 12-24 and Produce All
          Responsive Documents Relating to those ROGs................................................................ 8

     4.   John Taylor Should Be Compelled to Provide Proper Reponses to RFP #1-163
          and Produce the Exhibits A and B to the Extent that Such Exhibits Are Proper............. 10

     5.   John Taylor Should Be Compelled to Produce All of the Waived Privileged and
          Work Product Documents for the Subject Matters Evidenced by Quarles & Brady's
          Billing Records and James Gatziolis' Deposition Testimony. ......................................... 11

     6.   This Court Should Compel John Taylor and Other Witnesses to Answer All Questions
          at the Pending Depositions Regarding All of the Subject Matters Waived...................... 15

     7.   John Taylor Should Be Compelled to Produce All Attorney Billing Records and
          Un-Redact the Portions of Records for the Subject Matters Waived. .............................. 16

     8.   John Taylor Should Be Compelled to Produce the Tax Returns and Financial
          Information for Him and for Entities that He Controls..................................................... 16

     9.   John Taylor Should Be Compelled to Allow Miesen to Inspect Records. ....................... 17

     10.  If this Court Permits John Taylor to Withhold Any Documents or Information,
          this Court Should Compel Him to Produce a Detailed Log of Such Documents............. 17

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - iii

9-ER-2016

11.   It Is Too Late for John Taylor to Move for a Protective Order. ...................................... 18

12.   Miesen Respectfully Requests the Entry of a General Order to Compel, Which Also Requires Taylor and His Counsel to Submit Declarations Certifying that All Responsive Documents Have Been Produced. ............................................ 19

C.   Miesen Should Be Awarded Attorneys' Fees and Costs. ...................................... 20

D.   Miesen's Fed R. Civ. P. 37(a) Certification............................................................. 20

III.   CONCLUSION................................................................................................. 20

CERTIFICATE OF SERVICE ................................................................................... 21

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - iv

**9-ER-2017**

Plaintiff Dale L. Miesen ("Miesen") submits this Sixth Motion to Compel against John Taylor (and the other defendants to if they object to the production of any documents) ("Motion"):

## I.    INTRODUCTION

After nearly two years since Miesen propounded discovery his First Set of Interrogatories ("ROG") and Requests for Production ("RFP") upon R. John Taylor ("John Taylor") (Dkt. **419-11**) and despite his promise to supplement his answers to those ROGs and RFP on or before February 28, 2019 (Dkt. **542-3** at 6),[1] John Taylor failed to supplement his answers and, in fact, has never even responded to RFP #42 through 108. (Dkt. **419-12**.) In addition, rather than also properly answering Miesen's Second Set of ROGs and RFP by February 28, 2019 (Dkt. **542** at 6), John Taylor provided no meaningful answers to ROG #4-6, 8, 10, 12-24 and RFP #109-163 (Dkt. **562-14**) and improperly asserts a "Preliminary Statement" and boilerplate "General Objections."

Despite the *substantial* efforts of Miesen's counsel to resolve and discuss these issues with Mr. Martelle (John Taylor's former counsel) and Mr. Glynn (his new counsel), nothing has been resolved even though numerous depositions are scheduled over the next two months. Moreover, John Taylor should be compelled to produce all documents in his possession, custody and control—including the right to request documents—for the responsive documents pertaining to him and the various entity defendants and certain non-parties because he controls these entities. In sum, Miesen should not have to wait any longer (two years is long enough) and an order to compel is warranted. Significantly, the risks of John Taylor having defenses stricken for failing to comply with an order to compel, may be the only incentive that he has to properly respond to discovery and produce all responsive documents. Thus, an order to compel is warranted and necessary.

---

[1] When citing to any dockets within the Court's file, Miesen will cite to the blue, court-stamped page numbers at the top of each page. In addition, Miesen's arguments in this Motion are bookmarked in Adobe for the convenience of the Court and the parties.

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 1

- Waiver of privileged documents with Quarles. He should produce too.

- No current financial statements.

- Billing records from attorneys. Describe lawsuits. Even if redacted.

- Martelle's old email.

- Board controls things. If they do not provide information, then no board approval was sought or obtained. Must provide the information for every decision allegedly approved by the board of AIA Services or AIA Insurance.

- Internal communications.

- Other issues pending in other motions. Footnote them.

-  Any other waiver letters?  Must produce quarles stuff.

- Billing records for this lawsuit must be produced as well. HTEH produced some. See dkts. ____. However, those billing records must be unredacted for any matters that privilege has been waived on.

- Board resolutions for litigation decisions? Hold back?

- Part of damages in this lawsuit are the payment of fees. Describe lawsuits and even this one. No authority to pay fees.

## II.   ARGUMENT

### A. The Motion to Compel Standard.

This Court is aware of the motion to compel standards, including, the impropriety of providing evasive answers and improper boilerplate objections. **Fed. R. Civ. P. 37(a)-(b)**; *Edmark Auto, Inc. v. Zurich Am. Ins. Co.*, No. 1:15-CV-00520-ELJ-CWD, 2018 WL 2224044, at *4 (D. Idaho May 15, 2018); *Sherwood v. BNSF Ry. Co.*, 325 F.R.D. 652, 657 (D. Idaho 2018) ("boilerplate objections are presumptively insufficient"). "The party who resists discovery has the

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 2

burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." ***Duran v. Cisco Systems, Inc.***, 258 F.R.D. 375, 378 (C.D. Cal. 2009). Since the disputes are "too numerous" to quote "verbatim," the discovery requests (and definitions) and John Taylor's answers and responses are attached to this Motion as Addendum ("Add.") **A**-**C**. (6/5/19 Bond Decl. ¶2.) **Loc. Civ. R. 37.2**. In addition, because John Taylor's counsel would not provide positions, Miesen is unable to provide them. (6/5/19 Bond Decl. ¶3.)

**B. <u>This Court Should Compel John Taylor to Properly Answer Interrogatories and Requests for Production, Produce Responsive Documents, Produce Proper Document Logs for Any Withheld Documents and Enter a General Order to Compel.</u>**

On July 4, 2017, Miesen served his first set of interrogatories (ROGs #1-3) and requests for production (RFP #1-108) upon John Taylor. (Add. **A**.) On January 30, 2018, John Taylor served his objections and responses.[2] (Add. **B**.) On September 16, 2018, Miesen served his Second Set of Interrogatories and Requests for Production upon John Taylor (Add. C (ROG #4-25 & RFP #109-163; 6/5/19 Bond Decl. ¶2.) At the recently held discovery conference with Mr. Lombardi, John Taylor agreed in writing to supplement its discovery and provide responses to all outstanding discovery requests on or before February 28, 2019. (Dkt. **542-3**; 6/5/19 Bond Decl. Ex. **A**.) On March 19, 2019, John Taylor served his responses to Miesen's Second Set of ROGs and RFP, but he never supplemented the First Set of ROGs and RFP. (Add. **C**; 6/5/19 Bond Decl. ¶2.) Many responsive documents were not produced, despite Miesen's ROGs and RFP, and broad definitions, including for "John Taylor", "you" and "documents". *(Id.*; Add. **A** at 2-4.)

Since it has now been nearly two years since John Taylor has failed to properly assert objections and properly provide answers and produce responsive documents, Miesen now moves

---

[2] It appears that John Taylor may have answered the July 3, 2017 version of Miesen's First Set of ROGs and RFP, which were formally withdrawn the next day and replaced by the ones at issue now. (6/5/19 Bond Decl. ¶2 n.1; *Compare* Add. **A** and Dkt. **419-11** *with* Add. **B**.) However, John Taylor has no excuse because the correct ones were filed on August 6, 2018. (*Id.*)

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 3

to compel. For the reasons stated below, an order to compel is required. Without an order to compel and the risk to John Taylor that Miesen will move to strike his defenses, John Taylor will never comply with discovery. Thus, this Court should enter an order to compel as follows:

**1. John Taylor Has Waived any Objections by Only Asserting Boilerplate Objections and He Should Be Ordered to Withdraw All Such Objections and Properly Answer All Interrogatories and Requests for Production.**

"*The party who resists discovery* has the burden to show discovery should not be allowed, and *has the burden of clarifying, explaining, and supporting its objections*." ***Duran***, 258 F.R.D. at 378 (emphasis added). "[B]oilerplate objections are presumptively insufficient." ***Sherwood***, 325 F.R.D. at 657. Simply put, "courts disfavor" unsupported "boilerplate 'general objections'…as to relevance, burdensomeness, and attorney-client privilege and work product privilege." ***Athridge v. Aetna Cas. and Sur. Co.***, 184 F.R.D. 181, 190 (D. D.C. 1998).

> This type of answer hides the ball. It leaves the [opposing party] wondering ... what documents are being withheld. Furthermore, it permits the defendant to be the sole arbiter of that decision. Such an objection is really no objection at all as it does not address why potentially responsive documents are being withheld. [The responding party], having no incentive to err on the side of disclosure, has arrogated to itself the authority to decide questions of relevance which is unquestionably the decision of the judge.

*Athridge*, 184 F.R.D. at 190. *Accord* ***Tamburri v. SunTrust Mortg. Inc.***, No. C–11–02899 JST (DMR), 2013 WL 1616106, at *5 (N.D. Cal. Apr. 15 2013) ("boilerplate assertions of privilege or trade secrets do not meet the requirements for a party withholding information"); ***Howard v. DeAzevedo***, No. 1:11–cv–00101–AWI–SKO PC, 2013 WL 6185054, at *9 (E.D. Cal. Nov. 26, 2013) ("Boilerplate objections regarding confidentiality and privacy do not suffice"); ***Kinetic Concepts, Inc. v. ConvaTec Inc.***, 268 F.R.D. 226, 250 (M.D. N.C. 2010) ("due to Plaintiffs' pattern of apparently calculated ambiguity, the Court cannot tell what, if any, otherwise responsive documents Plaintiffs have withheld based on overbreadth, burdensomeness, and relevance grounds."); ***A. Farber and Partners, Inc***, 234 F.R.D. at 188 ("[G]eneral or boilerplate objections

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 4

such as 'overly burdensome and harassing' are improper...Similarly, boilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper."); *Culkin v. Pitney Bowes, Inc.*, 225 F.R.D. 69, 70-71 (D. Conn. 2004) ("To assert a proper objection on this basis, however, one must do more than 'simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad.'"); *Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 283 (C.D. Cal. 1996) ("[O]nly privilege, not confidentiality, is a valid objection under Fed. R. Civ. P. 26(b)").

In addition, "boilerplate objections are waived" and absent "good cause that would excuse its months-long delay in providing responses that contained any substance whatsoever…no newly-asserted objections…will be entertained." *Skyhawke Tech., LLC v. DECA Int'l Corp.*, No. CV 18-1234-GW (PLAx), 2019 WL 1966656, at *2 (C.D. Cal. 2019); *Cengage Learning, Inc. v. Davis Textbooks*, No. 2:15–cv–2401 TLN AC, 2016 WL 8730880, at *2 (E.D. Cal. Sept. 16, 2016) ("Exclusive reliance on such boilerplate objections waives any legitimate objection that could have been raised."); **Fed. R. Civ. P. 33(b)(4)** & **34(b)(2)**.

Here, John Taylor should be compelled to withdraw all of his boilerplate "General Objections" (which are incorporated into each response) (Add. **B** at 2-5, **C** at 4-5), his boilerplate objections in the "Glossary of Terms" (Add. **C** at 6), his other boilerplate objections contained within each response (Add. **B** at 5-42, **C** at 7-42), and properly answer all ROGs and RPF. (Add. **A**-**C**.) As it presently stands, John Taylor has never even responded to RFP #43-108 nor has he provided a single meaningful response to any ROGs or RFP. (*Id*.; 6/5/19 Bond Decl. ¶4) For years, John Taylor has been hiding behind improper objections and defrauding AIA for years and thwarting discovery in the instant lawsuit for nearly two years—leaving Miesen wondering what documents have been withheld and why. (Add. **A**-**C**; 6/5/19 Bond Decl. ¶4.)

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 5

Accordingly, after nearly two years of being unable to assert proper objections and articulate a basis for each objection, the time is up for John Taylor. He should not be permitted to cure the fatal defects with his boilerplate objections. And, as discussed in Section B(__) below, after nearly two years since discovery has commenced and after nearly nine years since this lawsuit was filed, John Taylor has never sought or obtained a protective order to prevent disclosure of any of information withheld as a result of his unsupported boilerplate objections (which further proves the objections were baseless). (Add. **B**-**C**.)  It is too late to seek such an order now. Thus, this Court should compel John Taylor to withdraw *all* objections, find that he has waived all objections, and compel him to properly answer ROGs #1-24 and Requests for Production Nos. 1-163. Having established John Taylor's improper boilerplate objections are improper and waived, and that he should properly respond to all discovery requests, Miesen will now turn to other discrete issues.

**2. John Taylor Custody, Control and/or Possession of all of the Books, Records, Communications, Documents and Information Belonging to AIA Services, AIA Insurance, CropUSA Insurance Services, and the Other Entities that He Controls—He Should Be Compelled to Produce All Such Information.**

This Court should first find that John Taylor has the possession, custody and control of the documents and information requested from him and the entities that he controls. Thus, John Taylor should also be compelled to produce documents and provide information for the entities that he controls (in addition to the information that he is individually responsible to provide).

A party is entitled to obtain any information within the "responding party's possession, custody, or control." **Fed. R. Civ. P. 34(a)(1)**. "[F]ederal courts have consistently held that documents are deemed to be within [a party's] 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody, or control, **or has the legal right to obtain the documents on demand**." *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (emphasis in original).

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 6

Here, John Taylor has possession, custody, control and the right to obtain upon request vast quantities of documents and information held by him and the following entities controlled by him (Add. **A** (*e.g.*, RPF #4-7, 12-17)),[3] which he should be ordered to produce:

- John Taylor controls the defendants CropUSA Insurance Agency, CropUSA Services, AIA Services and AIA Insurance. (6/5/19 Bond Decl. Ex. **C**-**F**.) He is listed as the only person serving as the only officers, directors and the sole manager of all of those defendants.[4] (*Id.*)

- John Taylor controls Pacific Empire Radio Corporation ("PERC") and Pacific Empire Holdings Corporation ("PEHC") (PERC and PEHC are acronyms that this Court will soon be seeing often in motion practice and at trial).[5] (6/5/19 Bond Decl. ¶¶5-6, Ex. **G** & **K**.) John Taylor is listed as the only officers and directors of those two corporations. (*Id.*)

- John Taylor controls 17 State Street Partners LLC.[6] (6/5/19 Bond Decl. ¶¶4-5, Ex. **H**.) While that LLC was apparently dissolved, John Taylor was listed as the last manager. (*Id.*)

- John Taylor controls Weskan Agency, LLC.[7] (6/5/19 Bond Decl. ¶¶5-6, Ex. **L**.)

---

[3] Miesen's forensic accounting expert needs all available books and records to reconstruct and ascertain what happened and where the money went. (6/5/19 Bond Decl. ¶5.)

[4] Miesen maintains that John Taylor's control over AIA Services and AIA Insurance is unauthorized, ultra vires and/or illegal. For example, John Taylor refuses to honor Donna Taylor's appointment of Paul Durant, a former AIA executive officer, to the Board of Directors of AIA Services—an unequivocal right under AIA Services' amended articles of incorporation. (*E.g.*, Dkts. **152** at 7, **211** at ¶¶24, 29-30, 136-137, 140 &164(y), **312-12**, **449-4** ¶3 & **576-11** at 86 § 4.2.8.) This is just the tip of the ice burg.

[5] PERC and PEHC were funded in part by the AIA Entities. (6/5/19 Bond Decl. ¶¶5-6.) For example, John Taylor, Henderson and Beck had AIA unlawfully lend over $1.5 million to PERC, which was also prohibited by AIA Services' amended articles of incorporation (in part because PERC was not a wholly owned subsidiary of AIA Services, among other restrictions under the articles). (*E.g.*, Dkts. **152-6** at 7, **211** at ¶¶28, 89 & 93, **576-11** at 86-91 § 4.2.9.)

[6] 17 State Street was also funded in part by AIA. (6/5/19 Bond Decl. ¶¶5-6.) For example, John Taylor used that entity to purchase a parking lot for $8,000 using AIA's line-of-credit and then he promptly rented it back to AIA for $15,000 per year. (*E.g.*, *Id.*; Dkt. **211** at ¶¶61 & 164(x).)

[7] Weskan was funded in part by AIA, and Alyson Foster and her firm curiously represent Weskan in another lawsuit, even though they represent GemCap here, who has asserted claims against John Taylor. (*E.g.*, Dkts. **211** at ¶166, **283** at 149-152, **449-40** & **449-41**.)

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 7

John Taylor is listed as the sole manager. (*Id.*)

- John Taylor controls Green Leaf Re Insurance Company, Green Leaf Alliance, Inc., and Reinsurance Partners, LLC.[8] (6/5/19 Bond Decl. ¶¶5-6, Ex. **I-J** & **M**.) He is listed as the only officers, director and manager of those entities (except there is also a required local director for Green Leaf Reinsurance, but that annual report was submitted by John Taylor). (*Id.*)

Accordingly, there is no doubt that John Taylor controls the entities referenced above. Thus, this Court should enter an order compelling John Taylor to produce any and all documents and information requested for those entities in this Motion and any other motion to compel pending and filed in the future as it pertains to obtaining and producing documents held by those entities or able to be requested by those entities. For these reasons, John Taylor's allegations that he "is not in possession of any documents" fails. (Add. **B** & **C** (*E.g.*, ROG #8, RFP #110-117, 120-121, 123-128, 131-144, 148-150, 152, 154-157.) In addition, John Taylor should also be compelled to answer any interrogatories that involves any knowledge, information and/or documents held by the above-referenced entities. (Add. **C** (*E.g.*, ROG #4-6, 8, 10, 12-14, 18-25.) As a result, he should separately be compelled to ensure that the entities all properly answer all discovery and produce all responsive documents. (Dkts. **562-2**, **562-4**, **562-5** & **562-9**.)

### 3. John Taylor Should Be Compelled to Provide Meaningful, Intelligible and Non-Evasive Answers to ROGs #1-6, 8, 10, 12-24 and Produce All Responsive Documents Relating to those ROGs.

John Taylor's answers to ROG #1-6, 8, 10, 12-24 provide no information to Miesen whatsoever.[9] Those answers are unintelligible and, at best, evasive. This Court should compel.

"Each interrogatory must…be answered separately and fully in writing under oath." **Fed.**

---

[8] These entities were also partially funded by AIA. (*E.g.*, Dkt. 211 at ¶66; 6/5/19 Bond Decl. ¶¶4-5.)

[9] ROG #3 is also subject to Miesen's pending Fourth Motion to Compel, although Miesen did not address the issues raised in Sections B(1)-(2) in that motion. (*See* Dkt. **562**.)

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 8

**R. Civ. P. 33(b)(3)**. "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." **Fed. R. Civ. P. 37(a)(4)**.

> Requiring a defendant to answer a contention interrogatory and to produce documents that support its affirmative defenses is "'[c]onsistent with Rule 11 of the Federal Rules of Civil Procedure,'" which requires parties have some factual basis for their claims, [defenses,] and allegations.

*Nat'l Acad. of Recording Arts & Sci. Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (2009).

Here, this Court should compel John Taylor to properly answer ROG #1-6, 8, 10, 12-24 because he has failed to provide any meaningful information—his answers are, at best, evasive. (Add. **B** (ROG #1-3) & **C** (ROG #4-6, 8, 10, 12-24); 5/20/19 Bond Decl. ¶¶7-13.)

- John Taylor has provided <u>no</u> information regarding his affirmative defenses or alleged reliance on professionals. (*Id.*; Add. **B** (ROG #1-2) & **C** (ROG #4).) Moreover, John Taylor is in violation of this Court's order to provide information on advice of professionals. (Dkt. **571**.) In addition, he has provided no information on his third-party claims or crossclaims. (Add. **B** (ROG #2) **C** (ROG #5-6, 16; Dkts. **218** & **290**.) Having strategically chosen to assert contribution claims before this case is over, John Taylor must disclose the facts supporting his contribution claims, which will also provide Miesen with the evidence they will need to allocate fault to the jury.[10] (*Id.*)

- John Taylor has provided <u>no</u> meaningful information regarding the board meetings and decisions made by the so-called boards of AIA Services, AIA Insurance and CropUSA Insurance Agency. (Add. **C** (ROG # 8, 10, 12); 6/5/19 Bond Decl. ¶8.) This is particular important as to ascertain and assess any decisions that are not represented by a board resolution or board meeting minutes, as well as having all of the documents considered by the so-called boards, if any.

---

[10] GemCap and John Taylor are asserting crossclaims against each other for contribution as a result of acting in concert with one another. (Dkts. **283** & **290**.) They know the Settlement Agreement was unlawful, which explains these odd claims. (*Id.*; *see also* Dkt. **419-16** at ¶39.)

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 9

(*Id.*) Moreover, the unlawful and improper decisions of the alleged boards are some of the primary issues at stake in this lawsuit. (*Id.*; Dkt. **211**.)

- John Taylor has provided <u>no</u> information on his compensation from the AIA Entities and CropUSA Insurance. (Add. **C** (ROG #13-14); 6/5/19 Bond Decl. ¶9.) Also, there is no basis to withhold division of assets in his divorce. (Add. **C** (ROG #17); 6/5/19 Bond Decl. ¶11.)

- After almost nine years (Dkt. **1**), John Taylor has <u>not</u> disclosed any witnesses, which is particularly egregious since he controls all of the documents and entities. (Add. **C** (ROG #15); 6/5/19 Bond Decl. ¶¶5-6 & 9, Ex. **C-L**.) This information is needed for discovery and trial.

- John Taylor refuses to provide the names of shareholders (including in the 401(k) Plan and former ESOP), their addresses, which is also required to provide notice of any judgment or settlement under Fed. R. Civ. P. 23.1. (Add. **C** (ROG #18-22); 6/5/19 Bond Decl. ¶12.)

- John Taylor also refuses to provide information on the present creditors of AIA and the alleged allocations of expenses between AIA and CropUSA. (Add. C (ROG #24-25); 6/5/19 Bond Decl. ¶13.) The improper allegations also are at issue in this case. (*E.g.*, Dkt. **211** at 24.)

Thus, John Taylor should be compelled to fully and fairly answer ROG #1-6, 8, 10, 12-24. Consequently, John Taylor should also be compelled to provide meaningful responses and produce all responsive documents pertaining to his answers in those ROGs. (Add. **A** (RFP #99 (unanswered)), **B** (RFP # 2-3) & **C** (RFP #109-130). As noted in Section B(2) above, John Taylor has possession, custody, control and the right to obtain all of this information for the entities.

**4. John Taylor Should Be Compelled to Provide Proper Reponses to RFP #1-163 and Produce the Exhibits A and B to the Extent that Such Exhibits Are Proper.**

As already explained in Sections B(1)-(2) above, John Taylor should be compelled to provide proper responses and produce all responsive documents in response to Miesen's RFP.

"[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 10

disclose, answer, or respond." **Fed. R. Civ. P. 37(a)(4)**.

Here, all of John Taylor's Responses are, at best, evasive. (Add. **B** (RFP #1-42) & **C** (RFP #109-163).) Moreover, John Taylor responded to withdrawn RFP (the ones he answered were withdrawn on the same day that new ones were served on July 4, 2019, 6/5/19 Bond Decl. ¶2 n.1), so he should be compelled to respond to the correct ones). (Add. **A** (RFP #1-108).) John Taylor was fully aware of this fact when Miesen moved to compel the first time. (Dkts. **419-11** & **419-12**.) Yet, John Taylor failed to respond or supplement, which was separately a violate of the Discovery Conference Agreement. (6/5/19 Bond Decl. Ex. **A**.) Lastly, as discussed in Section B(1) above, John Taylor's objections are all improper, should be withdrawn and should be deemed waived. In addition, John Taylor's responses to Miesen's Second Set of RFP, the responses indicate a complete failure to understand what documents were produced in other lawsuits. (Add. **C** at 6-7; 6/5/19 Bond Decl. ¶¶14-15.) The only meaningful discovery occurred in *Reed Taylor v. AIA Services, et al*, and the substantial discovery ended in 2009 in that lawsuit. (*Id*.)

In sum, John Taylor's responses to Miesen's RFP #1-168 are evasive or he has not truly responded to any of those RFP at all. This Court should compel him to do so now.

> **5. John Taylor Should Be Compelled to Produce All of the Waived Privileged and Work Product Documents for the Subject Matters Evidenced by Quarles & Brady's Billing Records and James Gatziolis' Deposition Testimony.**

This Court has already ruled that John Taylor's letter to Quarles & Brady dated October 15, 2015 constituted a waiver of privilege as to all documents produced to GemCap. (Dkt. **476**.) John Taylor should be compelled to produce all documents within those waived subject matters.[11]

"[V]oluntary disclosure of the content of a privileged attorney communication *constitutes waiver of the privilege as to all other such communications on the same subject*." **Weil v.**

---

[11] Miesen is preparing a motion to compel based on other exceptions, including waiver under breaches of fiduciary duties and crime/fraud exceptions. That motion will be filed next week.

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 11

*Inv./Indicators, Research & Mgmt.*, 647 F.2d 18, 24 (9th Cir. 1981) (emphasis added). "A defendant may not use the privilege to…disclose some selected communications for self-serving purposes." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).

Over the past forty years, selective waiver has been "rejected by every circuit to consider the issue." *In Re Pac. Pictures*, 679 F.3d 1121, 1127 (9th Cir. 2012). In other words, "a party may not selectively waive the attorney-client privilege. It has held that voluntary disclosure to one waives the attorney-client privilege as to the world at large." *Ringelberg v. Vanguard Integrity Professionals-Nevada, Inc.*, No. 2:17–cv–01788–JAD–PAL, 2018 WL 555694, at *3 (D. Nevada 2018) (citation omitted); *Louen v. Twedt*, 236 F.R.D. 502, 507 (E.D. Cal. 2006) ("once waived, the attorney-client privilege cannot be subsequently asserted"); *CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176 (D. Del. 2003) ("a right that is waived is not available to be picked up again as if it were a handy tool…a privilege cannot be used as both a shield and a sword…'You can't have it both ways'"). *See also Skelton v. Spencer*, 98 Idaho 417, 419-421, 565 P.2d 1374, 1376-1378 (1977); **Fed. R. Evid. 502(a); I.R.E. 510**.

Here, this Court ruled privilege was waived and ordered all documents produced. (Dkt. (Dkt. **476** at 12-17, 23-24.) That order was adopted and never challenged. (Dkt. **482**.) Thus, John Taylor and the entities that he controls should be compelled to produce all documents within the subject matters waived from the documents produced through the broad Quarles & Brady waiver letter. (Dkt. **562-29** at 10; Add. **A** (*E.g.*, RFP #4-17, 25-27, 36-37, 39-45, 47-50, 58, 64-67, 72, 79-86, 100-103, 106) & **C** (RFP #114, 116, 122, 131-141, 144, 148-153).)

As a preliminary matter, the waiver was unlimited. John Taylor demanded privilege be waived to the "fullest extent possible under any and all applicable laws or rules of professional conduct that the Law Firm shall not object or refuse to provide or produce any disclosures or

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 12

discovery to GemCap in the Action based on the attorney-client privilege or similar doctrine." (Dkt. **562-29** at 10.) Once a "subject matter" is waived, privilege is waived as to all attorneys performing work on that same "subject matter" and all documents, information and communications relating to that "subject matter." Because Miesen has obtained copies of the billing records and other waived privilege documents and transcripts, there can be no doubt that privilege was waived for all of the "subject matters" by John Taylor, AIA Services, AIA Insurance, CropUSA Insurance Agency, CropUSA Insurance Services, Reinsurance Partners, and Greenleaf Reinsurance Partners (entities that John Taylor controls as explained in Section B(2)):

- The subject matter of all work performed and communications made in the course of the representation of AIA Services, AIA Insurance, CropUSA Insurance Agency and John Taylor in *Reed Taylor v. AIA Services, et al*. (6/5/19 Bond Decl. ¶¶17-18 & 27, Ex. **N-S** & **AA-CC**; *see also* Dkt. **389-16**.) Ironically, the defendants have already separately waived much of that privilege anyway. (*E.g.*, Dkts. **498-1**, **498-2**, **502-2**, **502-4** & **576-13**.)

- The subject matter of all work performed and communications made in the course of representing CropUSA Insurance Agency, CropUSA Insurance Services, AIA Services, AIA Insurance and John Taylor for the GemCap loans and guarantees, the third-party closing opinion letters, the subsequent modification of those loans, and the subsequent lawsuit GemCap (or at least as long as Quarles & Brady was involved in that lawsuit). (6/5/19 Bond Decl. ¶24, Ex. **X**; *see also* Dkts. **439-1** – **439-8**, **440-1** – **440-2**.)

- The subject matter of all work performed and communications made in the course of seeking to implement the failed reverse stock split for AIA Services' minority shareholders. (6/5/19 Bond Decl. ¶25, Ex. **Y**; *see also* Dkts. **66-3**, **67-40** – **67-42**, **68-1**, **84-8**, **86-1**.)

- The subject matter of all work performed and communications made in the course

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 13

of rendering the third-party opinion letters for the Lancelot Loan (a/k/a "Surge Loan") (the guarantee of which was a violation of AIA Services' articles of incorporation). (6/5/19 Bond Decl. ¶17, Ex. **N**; *see also* Dkts. **390-26 – 390-28** & **576-11** at 86-91 §4.2.9(c).)

- The subject matter of all work performed and communications made in the course of representing certain defendants in this lawsuit (at least for the period of time in which Quarles & Brady was involved). (6/5/19 Bond Decl. ¶23, Ex. **W**; *see also* Dkts. **1**, **23** & **63**.)

- The subject matter of all work performed and communications made representing CropUSA Insurance Agency, CropUSA Insurance Services, AIA Services, AIA Insurance, Green Leaf Alliance, Green Leaf Reinsurance Co., Reinsurance Partners, and Weskan Agency in the course of all of the discrete subject matters contained with the Quarles & Brady's other billing records. (6/5/19 Bond Decl. ¶¶

- As seen from the two days of deposition testimony of James Gatziolis and some of the billing records and other documents marked as exhibits to that deposition, there were no issues with privilege and Mr. Gatziolis freely spoke about many subject matters (including those described above). (6/5/19 Bond Decl. ¶27, Ex. **AA-CC** (the deposition transcripts list many other previously privileged documents and agreements).)

Having established the many subject matters waived above, John Taylor should be compelled, individually and on behalf of the entities that he controls (*See* Section B(2) above), to produce all of the documents, information and communications relating to those subject matters, including, without limitation, the following discrete categories:

- All attorney billing records with no redactions, including all of the Quarles & Brady billing records. (6/5/19 Bond Decl. ¶29.) Miesen wants the internal accounting notes on the billing records and the bulk of them produced to Miesen were derived from Quarles & Brady's files. (*E.g.*,

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 14

6/5/19 Bond Decl. Ex. **CC** at 12 & 49.)

- All emails, email attachments, letters, memorandums, including, without limitation, those specifically referenced in the billing records. As seen from the billing records, there are many subject matters contained within them, including in the "General Corporate Matters" files. (6/5/19 Bond Decl. ¶¶16-26, Ex. **N**-**Z**.) The matter name only tells part of the story in some instances. (*Id.*)

- All privileged documents relating to the subject matters revealed in all of the documents produced by GemCap or were otherwise reviewed or provided to GemCap or any other third party. (*Id.*) Lastly, as requested in Section B(12) below, Miesen request that this Court order John Taylor and his counsel to submit declarations specifically detailing their efforts to ensure compliance and testimony regarding the privileged documents reviewed *or* provided to third parties, and, if all such documents are not produced, an explanation why there were not.

Thus, John Taylor and the entities that he controls have waived privilege as to many subject matters. This Court should order John Taylor, individually and on behalf of the entities that he controls, to immediately produce all responsive documents.

6. **This Court Should Compel John Taylor and Other Witnesses to Answer All Questions at the Pending Depositions Regarding All of the Subject Matters Waived.**

"[V]oluntary disclosure of the content of a privileged attorney communication *constitutes waiver of the privilege as to all other such communications on the same subject*." **Weil**, 647 F.2d at 24 (emphasis added). "A defendant may not use the privilege to…disclose some selected communications for self-serving purposes." **Bilzerian**, 926 F.2d at 1292.

Here, this Court should compel all witnesses with knowledge to answer all questions regarding any of the subject matters waived of waived privilege and work product, consistent with the subject matters discussed in Section B(6) above. (6/5/19 Bond Decl. ¶¶16-27, Ex. N-Z & **AA**-**CC**; Dkts. **449-82** – **449-88**, **498-1**, **498-2**, **502-2**, **502-4**, **562-29** at 10 & **576-13**.) For example, MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 15

any party with knowledge must answer any and all questions regarding the subject matters and communications in the Quarles & Brady documents. (*Id.*) In addition, the Hawley Troxell Defendants (former counsel for entities John Taylor controls) and John Taylor have also waived privilege and work project. (*E.g.*, Dkts. **498-1**, **498-2**, **502-2**, **502-4** & **576-13**.) Moreover, the recent belatedly and tactically filed motions for protective order are proof enough that this issue needs to be resolved. (6/5/19 Bond Decl. ¶28; Dkts. **580** & **582**.) Having chosen to voluntarily waive privilege and work product on a number of broad subject matters, neither John Taylor nor any entity he controls may seek to selectively resurrect privilege or work product protections. That ship sailed long ago. Any efforts to use privilege as a shield and a sword should be rejected. Thus, this Court should compel all parties to fully answer questions.

**7. John Taylor Should Be Compelled to Produce All Attorney Billing Records and Un-Redact the Portions of Records for the Subject Matters Waived.**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." **Fed. R. Civ. P. 26(b)(1)**.

Here, Miesen requested law firm billing records, including for purposes of part of his damages. (6/5/19 Bond Decl. ¶29, Ex. **DD**; Add. **A** (RFP #41, 43, 58, 64-67, 72, 100, 106.) John Taylor has not produced them all nor has he un-redacted records for waived privileges. (*E.g.,* Dkts. **449-82** – **449-88**, **498-1**, **498-2**, **502-2**, **502-4** & **576-13**.) Indeed, John Taylor is in violation of this Court's last order by not un-redacting the applicable billing entries for himself and the entities that he controls. (Dkts. **533**, **536** & **571**.) Those billing records also provide notes as to whether payment was approved and other information. (6/5/19 Bond Decl. ¶¶16 & 29.) Thus, this Court should compel John Taylor to produce all such records for himself and the entities that he controls.

**8. John Taylor Should Be Compelled to Produce the Tax Returns and Financial Information for Him and for Entities that He Controls.**

John Taylor has refused to produce his tax returns and financial statements. He should be

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 16

compelled to do so. He should also be compelled to produce the same information for the entities.

Tax returns and financial statements are discoverable, including when there are sufficient allegations to support punitive damages. *See **Forsythe v. Brown***, 281 F.R.D. 577, 583 (D. Nev. 2012); ***E.E.O.C. v. Cal. Psychiatric Transitions***, 258 F.R.D. 391, 394-395 (E.D. Cal. 2009); ***St. Regis Paper Co. v. U.S.***, 368 U.S. 208, 218-219, 82 S.Ct. 289, 295-296 (1961).

Here, John Taylor should be compelled to produce all of his tax returns, financial statements, credit applications, and any other financial information, and the same for the entities controlled by him. (6/5/19 Bond Decl. ¶¶5-6 & 30, Ex. **C**-**M**; Dkt. **449-17** at 2; Add. **A** (*E.g.*, RFP #4-19, 107.) They are needed to trace assets, ascertain stock ownership and valudations, and for Miesen's damages. Moreover, Miesen's verified TAC alleges sufficient facts to support punitive damages against John Taylor, and so does some of the limited testimony already in the record from Professor McDermott. (Dkts. **211** & **419-16**.) Thus, an order to compel is appropriate and warranted, especially based on John Taylor's control of the entities. *See* Section B(2).

### 9.     John Taylor Should Be Compelled to Allow Miesen to Inspect Records.

"A party must produce documents as they are kept in the usual course of business..." **Fed. R. Civ. P. 34(b)(2)(E)(i)**.

Here, despite repeated promises to allow Miesen to inspect records for nearly a year, John Taylor has refused to provide a date certain for Miesen's counsel to inspect records and decide which records, if any, Miesen wishes to copy. (Add. **A**-**C; 6/5/19 Bond Decl. ¶31.) This Court should compel John Taylor to immediately provide dates and accommodate Miesen's schedule.

### 10. If this Court Permits John Taylor to Withhold Any Documents or Information, this Court Should Compel Him to Produce a Detailed Log of Such Documents.

"Only privileged information may be unilaterally withheld." ***ICTSI Or., Inc.***, 2018 WL 6305665, at *9. "An objection must state whether any responsive materials are being withheld on

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 17

the basis of that objection." **Fed. Civ. R. P. 34(b)(2)**. "To the extent defendants withholds documents and/or redacts confidential information, a privilege log sufficient to allow plaintiff and the Court to evaluate the various claims of privilege must be provided." *MMMT Holdings Corp. v. NSGI Holdings, Inc.*, Case No. C12-1570RSL, 2013 WL 12191347, at *1 (W.D. Wash. 2013). *See also* **Fed. R. Civ. P. 26(b)(5)**.

Here, while there appears to be no legitimate basis for John Taylor to withhold any documents from Miesen, if this Court rules otherwise, John Taylor should be ordered to immediately produce a detailed log with descriptions of all withheld documents, including any alleged privilege or work product document (*e.g.*, any involving Quarles & Brady).

### 11. It Is Too Late for John Taylor to Move for a Protective Order.

"The court may, for good cause, issue an order to protect a party…forbidding the disclosure or discovery…requiring that a trade secret or other confidential…or commercial information not be revealed or be revealed only a specified way." **Fed. R. Civ. P. 26(c)(1)(A) and (G)**.

A trial court may deny a protective order for being untimely. *Ayers v. Continental Cas. Co.*, 240 F.R.D. 216, 221-222 (N.D. W. Va. 2007) (explaining how "Motions for a protective order must be made before or on the date the discovery is due."…[and] [a] party's untimeliness may be excused if 'there is no opportunity to move for a protective order.'"). *C.f. On Point Events, LP*, 256 F.R.D. at 683 ("if defendant truly believes it has confidential information that should be protected by a protective order, it should have entered into a stipulated protective order or filed a motion for a protective order before the date by which it was to produce responsive documents.").

As explained in Section B(1), a party waives objections by failing to timely assert them unless the party can show good cause. *E.g.*, *Skyhawke Tech., LLC*, 2019 WL 1966656, at *2; *Cengage Learning, Inc.*, 2016 WL 8730880, at *2.

Here, John Taylor is barred from seeking or obtaining a protective order now. He should

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 18

not be permitted to resurrect any of his unsupported boilerplate objections by moving for a protective order after two years of discovery and after nearly nine years since this lawsuit was filed (Dkt. **1**) or by attempting to assert proper objections now. It is too late. To date, John Taylor has never moved for a protective order. In addition, John Taylor has waived any objections by failing to support them, as explained in Section B(1) above. Thus, a motion for protective order would be futile anyway. Consequently, John Taylor should be ordered to produce all responsive documents.

**12. Miesen Respectfully Requests the Entry of a General Order to Compel, Which Also Requires Taylor and His Counsel to Submit Declarations Certifying that All Responsive Documents Have Been Produced.**

After nearly two year of John Taylor's failure to comply with discovery and abusive litigation tactics, an order to compel is warranted and required. Without one, John Taylor will never comply. Miesen needs an order to compel to take the next step of seeking to strike defenses. In addition, this Court should order John Taylor and his counsel to submit declarations certifying the specific efforts undertaken to comply with Miesen's discovery requests and responsive documents and without asserting any conclusory or unsupported statements.

"A party seeking disclosure may move to compel…" **Fed. R. Civ. P. 37(a)(3)**. To that end, courts can require parties and their counsel to submit declarations certifying compliance with discovery. *E.g.*, ***Buchanan v. Consolidated Stores Corp.***, 206 F.R.D. 123, 125 (D. Md. 2002) (ordering a party to submit a declaration explaining efforts to comply with requests for production); ***Brown v. Stroud***, No. C–08–02348–VRW (DMR), 2010 WL 3339524, at *7 (N.D. Cal. Aug. 24, 2010) (ordering a party and his counsel to submit sworn affidavits setting forth efforts to locate responsive documents and attesting that all responsive documents were produced).

Here, for all of the reasons stated in Sections B(1)-(11) above, this Court should enter an order to compel against John Taylor. Although John Taylor has already demonstrated that he will intentionally violate a court order (*e.g.*, Dkt. **571**), an order to compel is required for Miesen to

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 19

obtain any further relief. **Fed. R. Civ. P. 37(b)**. Moreover, after nearly two years of gamesmanship and the improper withholding of information, this Court should also order John Taylor and his counsel to submit declarations verifying that searches for all responsive documents have been conducted and all responsive documents have been produced (and not just conclusory statements that documents were produced in other lawsuits). John Taylor should be ordered to prove compliance, especially when there are documents John Taylor has never produced but Miesen has found elsewhere. (E.g., 6/5/19 Bond Decl. ¶¶4-31; Add. **A**-**C**.) John Taylor and Mr. Glynn should also both be required to explain all of the efforts to comply, including by addressing the privileged and work product documents that were reviewed, provided and/or copied for GemCap or any other third party so that Miesen can address any other waivers. (6/5/19 Bond Decl. ¶16.) At this juncture, an order requiring specific and detailed testimony by John Taylor and counsel is warranted.

**C.**  **Miesen Should Be Awarded Attorneys' Fees and Costs.**

Based on the facts and circumstances, an award of fees and costs to Miesen is warranted (including Discovery Master fees and costs). (6/5/19 Bond Decl. ¶¶2-31, Ex. **A-Z** & **AA-DD**; Add. **A**-**C**.) **Fed R. Civ. P. 37(a)(5)(A)** (noting an award of fees is also required if an answer is given after a motion to compel is filed); *Edmark Auto*, 2018 WL 2224044, at \*4. At this juncture and after nearly two years, John Taylor (like GemCap and the others) should pay something for all of the anguish he has caused. An award of fees might just give him some incentive to cooperate.

**D.**  **Miesen's Fed R. Civ. P. 37(a) Certification.**

Miesen certifies his counsel in good faith conferred or attempted to confer with counsel in order to obtain the above discovery without court action. (6/5/19 Bond Decl. ¶3.) Despite repeated requests to resolve the issues and meet and confer further, Martelle and Glynn failed to so. (*Id*.)

### III.    CONCLUSION

For the reasons stated above, this Court should grant the Motion, and award fees and costs.

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 20

DATED:  This 4th day of June 2019.

RODERICK BOND LAW OFFICE, PLLC

By:  ___*/s/ Roderick C. Bond*_____
    Roderick C. Bond
    Attorney for the Plaintiff Dale L. Miesen

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of June 2019, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

James D. LaRue:    jdl@elamburke.com
Jeffrey A. Thomson:    jat@elamburke.com
Loren C. Ipsen:    lci@elamburke.com
Joyce Ann Hemmer;    jah@elamburke.com
Alyson Anne Foster:   aaf@aswdpllc.com
Benjamin A. Schwartzman:    bas@aswdpllc.com
Kammie Cuneo:   kc@aswdpllc.com
Markus William Louvier:    mlouvier@ecl-law.com
James B King:    jking@ecl-law.com
Jack S Gjording:    jgjording@gfidaholaw.com
Stephen Lee Adams:    sadams@gfidaholaw.com
Fanxi Wang:   fwang@birdmarella.com
Mark T. Drooks:    mdrooks@birdmarella.com
Peter L Steinman    psteinman@mrllp.com
Tyler Scott Waite:    twaite@campbell-bissell.com
Michael Scott Bissell:    mbissell@campbell-bissell.com
David R Lombardi:    drl@givenspursley.com
John M Howell:    jmh@powerstolman.com
Rebecca L Dircks:    rdircks@beneschlaw.com
Daniel Loras Glynn:    dglynn@idalaw.com
Martin J Martelle:   attorney@martellelaw.com

    ___*/s/ Roderick C. Bond*_____
    Roderick C. Bond

MEMO. IN SUPPORT OF MIESEN'S 6th MOTION TO COMPEL RE: JOHN TAYLOR - 21

**9-ER-2038**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.; <br><br> Plaintiff, <br><br> v. <br><br> CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 1:10-cv-00404-DCN-CWD <br><br> **ORDER** |
| CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES | |

ORDER - 1

**9-ER-2039**

BECK, an individual,

> Defendants/Third-Party
> Plaintiffs,

    v.

REED TAYLOR, an individual,

> Third-Party Defendant.

---

REED TAYLOR, an individual,

> Third-Party Defendant/
> Counterclaimant,

    v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

> Counterdefendants.

---

GEMCAP LENDING I, LLC, a Delaware limited liability company,

> Defendant/Third-Party Plaintiff,

    v.

QUARLES & BRADY, LLP, a Wisconsin limited legal partnership; and CRUMB & MUNDING, P.S., a Washington professional service corporation,

> Third-Party Defendants.

ORDER - 2

There are various motions pending in this case. In this Order, the Court addresses the following: Plaintiff Dale Miesen's ("Miesen") Motion to Voluntarily Dismiss His Claims Against Defendant JoLee Duclos (Dkt. 549), Miesen's Motion to Amend/Correct the Case Caption (Dkt. 550), Jones Williams Fuhrman Gourley, P.A.'s Motion For Leave to Withdraw as Attorney for Defendants AIA Services Corp. and AIA Insurance, Inc. (Dkt. 557), Defendants' D. John Ashby, Gary D Babbitt, Hawley Troxell Ennis & Hawley LLP, and Richard A. Riley's Motion to Take Judicial Notice (Dkt. 573), Defendant JoLee K. Duclos' Motion for Joinder (Dkt. 592), and Miesen's Motion for Extension of Time (Dkt. 599). The Court considers each Motion in turn.

1. **Miesen's Motion to Voluntarily Dismiss Defendant Duclos (Dkt. 549) and Duclos' Motion for Joinder (Dkt. 592)**

Plaintiff Miesen filed a Motion to Voluntarily Dismiss his Claims Against Defendant JoLee Duclos Without an Award of Fees or Costs to Either Party and Dismiss Duclos from this Case. Dkt. 592. Counterclaimant/Third-Party Defendant Reed Taylor filed a notice of non-opposition to Miesen's motion (Dkt. 552) as did Defendant Hawley Troxell (Dkt. 555). GemCap Lending I, LLC ("GemCap") has opposed Miesen's motion to the extent that dismissing Duclos from this suit entirely would also include dismissing GemCap's claims against Duclos. Dkt. 561. Counsel for Defendant JoLee Duclos filed a Motion for Joinder (Dkt. 592) to join in Plaintiff Miesen's motion to dismiss JoLee Duclos from the case.

Duclos passed away on October 23, 2017, and a Suggestion of Death was filed on January 8, 2018. Dkt. 316. As part of that filing Duclos' Personal Representative asserted

ORDER - 3

that Duclos' estate has no assets. Dkt. 316-2, at 3. No party has moved to substitute Duclos' estate or personal representative into the lawsuit. "If the motion [for substitution] is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." Fed. R. Civ. P. 25(a)(1). Further, an action can be dismissed by court order at the plaintiff's request "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).

The only party that opposes the dismissal of Duclos from the suit is GemCap. GemCap has filed crossclaims against Duclos for contribution and indemnification. However, they have made no motion to substitute Duclos' estate or personal representative, and far more than 90 days have passed since the Suggestion of Death was filed.

Therefore, the Court GRANTS Miesen's Motion (Dkt. 549). Duclos is DISMISSED from this case entirely and all claims against her are DISMISSED WITHOUT PREJUDICE.

The Court will not address the merits of GemCap's crossclaims against Duclos but notes that GemCap is free to pursue its claims against Duclos after "the underlying claim, judgment, or settlement is paid or discharged" should GemCap decide to pursue that option. *Schiess v. Bates*, 693 P.2d 440, 442 (Idaho 1984).

Miesen further requests that the Court order counsel for John Taylor to provide the required notice of the voluntary dismissal to AIA Services' shareholders, pursuant to Rule 23.1. That rule states that "[n]otice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court

ORDER - 4

orders." Fed. R. Civ. P. 23.1(c). The notice requirement of Rule 23.1 applies here as this is a derivative action, Duclos was a named defendant, and claims against her from both Miesen and GemCap are being dismissed. Miesen argues that because of ongoing discovery disputes, he has not yet gained access to a list of AIA Services' shareholders from Taylor and therefore is unable to provide notice himself.

No party has opposed nor addressed this notice request, and the Court finds that the parties should be able to work together to find a solution to such a simple problem. As such, Defendants John Taylor and AIA Services are ordered to work with Miesen to provide notice to AIA Services shareholders of the voluntary dismissal of Miesen's claims against defendant JoLee Duclos, as well as her dismissal from the case entirely. Notice to AIA shareholders should be given within thirty (30) days of entry of this order.

**2. Miesen's Motion to Amend/Correct the Case Caption (Dkt. 550)**

Plaintiff Miesen has moved to amend the case caption to reflect changes in the parties. Dkt. 550, at 1. Specifically, he asks that Donna Taylor be removed from the official caption and that Dale L. Miesen be listed as the sole plaintiff. Miesen also seeks to include the names of new parties that have been added in this action, and remove those parties who have been previously dismissed. Only Defendants Hawley Troxell have submitted a response in opposition of the motion. Dkt. 559.

"The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties." Fed. R. Civ. P. 10(a). Other courts have found that amending a caption to remove parties is inappropriate, even after their claims have been settled or dismissed. *See Bare v. Federal*

ORDER - 5

**9-ER-2043**

*Exp. Corp.*, 886 F.Supp.2d 600, 606 (N.D. Ohio 2012) (A "proposed amendment to 'remove' [from the caption] a previously dismissed party is wholly unnecessary"); *Browning Debenture Holders' Company v. DASA Corp.*, 81 F.R.D. 407, 412-13 (S.D.N.Y. 1978) (holding it was inappropriate "to change the caption to the possible confusion of those who have occasion to research this case").

Miesen argues that because parties have been dismissed and added the official caption should be changed to reflect that. Miesen's main argument surrounds Donna Taylor who was originally listed as a plaintiff but voluntarily dismissed her claims and was omitted in the Third Amended Complaint and the other captions thereafter. *See* Dkt. 211. Further, the rule states that the title of "other pleadings . . . may refer generally to other parties" signifying that the captions on subsequent pleadings do not have to be as specific as the caption of the complaint. Fed. R. Civ. P. 10(a).

Miesen has not adequately shown why the court should exercise its discretion to amend the official caption. As noted in the cases just cited, doing so appears largely unnecessary, and could cause confusion. Therefore, the Court DENIES Miesen's Motion to Amend Caption (Dkt. 550). The parties may continue to shorten or refer to parties generally in their other pleadings per Rule 10(a).

### 3. Motion to Withdraw as Attorney (Dkt. 557)

Counsel for defendant AIA Services Corporation and AIA Insurance, Inc. filed a Motion to Withdraw as Attorney. Dkt. 557. Plaintiff Dale Miesen and Defendant Reed Taylor have both filed notices of non-opposition to this motion. Dkt. 558; Dkt. 560.

The law firm of Jones Williams Fuhrman Gourley, P.A. currently represents AIA

ORDER - 6

Services Corporation and AIA Insurance, Inc., as well as Connie Taylor Henderson, Michael W. Cashman, Sr., James Beck, R. John Taylor, Crop USA Insurance Agency, and Crop USA Insurance Services, LLC. The firm wishes to withdraw as counsel for AIA Services Corporation and AIA Insurance, Inc. only, while continuing to represent those other previously listed parties. Dkt. 557, at 2.

The Court hereby GRANTS the Motion to Withdraw as Attorney (Dkt. 557). Jones Williams Fuhrman Gourley, P.A. no longer represents AIA Services Corp. or AIA Insurance, Inc., but continues to represent Connie Taylor Henderson, Michael W. Cashman, Sr., James Beck, R. John Taylor, Crop USA Insurance Agency and Crop USA Insurances Services, LLC.

### 4. Hawley Troxell's Motion to Take Judicial Notice (Dkt. 573)

The Hawley Troxell Defendants have filed a Motion to Take Judicial Notice requesting the Court take judicial notice of a California action between GemCap and AIA, including a settlement agreement and stipulated judgment in favor of GemCap. GemCap filed a notice of non-opposition to the Hawley Troxell Defendants' motion. Dkt. 614.

A court may take judicial notice of a fact that is "not subject to reasonable dispute" because it can be "accurately and readily determined form sources whose accuracy cannot reasonably be questioned." F.R.E. 201(b). In light of this standard, the Court GRANTS the Hawley Troxell Defendants' Motion to take judicial notice of the California proceeding and settlement (Dkt. 573) and, moving forward, the Court will give this information whatever consideration and weight it deems appropriate.

ORDER - 7

**9-ER-2045**

**5. Miesen's Motion for Extension of Time (Dkt. 599)**

Plaintiff Dale Miesen has filed a motion requesting a six (6) day extension to file a reply to Hawley Troxell Defendants' Response (Dkt. 572) and GemCap's Response (Dkt. 575) to Miesen's Motion to Strike/Convert/Stay (Dkt. 556). Dkt. 599. GemCap filed a response opposing Miesen's motion for extension of time. Dkt. 615.

Miesen filed his reply on June 17, 2019, within the window of additional time he had requested. Dkt. 613. The Court GRANTS Miesen's Motion for Extension of Time and accepts his reply as timely filed.

## ORDER

The Court HEREBY ORDERS:

1. Miesen's Motion to Voluntarily Dismiss Defendant Duclos (Dkt. 549) is GRANTED and Duclos' Motion for Joinder (Dkt. 592) is GRANTED.

2. All claims against Duclos are DISMISSED WITHOUT PREJUDICE, and Duclos is DISMISSED from this action entirely.

3. Defendants John Taylor and AIA Services are ordered to work together with Miesen to provide notice to AIA Services shareholders of the voluntary dismissal of Miesen's claims against JoLee Duclos, as well as her dismissal from this case entirely. Notice to AIA shareholders should be given within thirty (30) days of entry of this order.

4. Miesen's Motion to Amend/Correct the Case Caption (Dkt. 550) is DENIED.

5. The Motion to Withdraw as Attorney (Dkt. 557) is GRANTED.

6. The Hawley Troxell Defendants' Motion to Take Judicial Notice (Dkt. 573) is

ORDER - 8

**9-ER-2046**

GRANTED.

7. Miesen's Motion for Extension of Time (Dkt. 599) is GRANTED.

DATED: August 6, 2019

_____
David C. Nye
Chief U.S. District Court Judge

ORDER - 9

**9-ER-2047**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>vs.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-CV-404-DCN-CWD<br><br>**ORDER GRANTING LEAVE FOR MOTION TO WITHDRAW** |

THIS MATTER, having come before the Court on counsel's Motion for Leave to Withdraw as Counsel for AIA Services Corporation and AIA Insurance, Inc. <u>only</u>, and good cause appearing therefore,

IT IS HEREBY ORDERED that, pursuant to District Court Local Rule Civ 83.6, counsel's Motion for Leave to Withdraw as Counsel for AIA Services Corporation and AIA Insurance, Inc. <u>only</u>, is hereby **GRANTED**.

ORDER GRANTING LEAVE FOR MOTION TO WITHDRAW - 1

**9-ER-2048**

AIA Services Corporation and AIA Insurance, Inc. are directed to appoint another attorney to appear within twenty-one (21) days from the date of service of mailing of this Order to the AIA Services Corporation and AIA Insurance, Inc.. Defendant corporations cannot appear pro se and must, to avoid the consequences identified below, appoint another attorney to appear on their behalf in these proceedings. If AIA Services Corporation and AIA Insurance, Inc. fail to file and serve an additional written appearance in this action through a newly-appointed attorney within said twenty-one (21) day period, such failure shall be sufficient grounds for the entry of default and default judgment against the AIA Services Corporation and AIA Insurance, Inc. without further notice, or dismissal of the action of such party, with prejudice, without further notice.

The firm of Jones Williams Fuhrman Gourley, P.A., shall, with due diligence, serve copies of this Order upon AIA Services Corporation and AIA Insurance, Inc. and all other parties to the action and shall file proof of service with the Court within seven (7) days of the date of this Order. Such service shall be by certified mail to the last known address of the parties.  Service shall be complete upon mailing.

The firm of Jones Williams Fuhrman Gourley, P.A., shall continue to represent AIA Services Corporation and AIA Insurance, Inc. until proof of service of the withdrawal order on AIA Services Corporation and AIA Insurance, Inc. has been filed with the Court.

DATED: September 12, 2019

David C. Nye
Chief U.S. District Court Judge

ORDER GRANTING LEAVE FOR MOTION TO WITHDRAW - 2

9-ER-2049

David R. Lombardi, ISB No. 1965
GIVENS PURSLEY LLC
601 W. Bannock
PO Box 2720
Boise, Idaho 83701
Telephone: (208) 388-1200
Facsimile: (208)388-1300
Email: drl@givenspursley.com
14817172_2.docx

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants.<br><br>CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR | Civil No. 1:10-cv-00404-DCN<br><br>**DISCOVERY MASTER ORDER NO. 16 CONCERNING PLAINTIFF DALE L. MIESEN'S SIXTH MOTION TO COMPEL RE: R. JOHN TAYLOR AND THE PRODUCTION OF DOCUMENTS IN THE POSSESSION, CUSTODY AND CONTROL OF R. JOHN TAYLOR THAT BELONG TO OTHER DEFENDANTS OR ENTITIES** |

DISCOVERY MASTER ORDER NO. 16 – 1

**9-ER-2050**

HENDERSON, an individual; JOLEE
DUCLOS, an individual; R. JOHN TAYLOR,
an individual; MICHAEL W. CASHMAN SR.,
an individual; JAMES BECK, an individual,

                  Defendants/Third-Party
                  Plaintiffs,

        **v.**

REED TAYLOR, an individual,

                  Third-Party Defendant.

REED TAYLOR, an individual,

                  Third-Party Defendant/
                  Counterclaimant,

        **v.**

CONNIE TAYLOR HENDERSON, an
individual; R. JOHN TAYLOR, an individual;
JAMES BECK, an individual, and UNKNOWN
BONDING COMPANY, an unknown entity
that issued the unknown fidelity ERISA Bond,

                  Counterdefendants.

GEMCAP LENDING I, LLC, a Delaware
limited liability company,

                  Defendant/Third-Party
                  Plaintiff,

        **v.**

QUARLES & BRADY, LLP, a
Wisconsin limited legal partnership;
and CRUMB & MUNDING, P.S., a
Washington professional service
corporation,

                  Third-Party Defendants.

DISCOVERY MASTER ORDER NO. 16 – 2

**INTRODUCTION**

Plaintiff Miesen brings his Sixth Motion to Compel against R. John Taylor ("Taylor") seeking to compel "proper" responses to Plaintiff's First and Second Set of Interrogatories and Requests for Production.  (Dkt. 419-11)  Taylor agreed, with his then counsel, Martin Martelle, to "serve responses to outstanding discovery due from John Taylor on or before February 28, 2019, at the Discovery Conference held January 15, 2019.  (Dkt. 542-3 at 6; Dkt. 583-6, p. 8)  Taylor responded approximately three weeks later than promised by serving Defendant R. John Taylor's Response to the Second Set of  Interrogatories and Requests for Production of Documents to Plaintiff Dale L. Miesen.  (Dkt. 583-4)

Plaintiff's Sixth Motion to Compel is complicated by the fact that Plaintiff apparently served two versions of Plaintiff's First Set of Interrogatories and Requests for Production of Documents.  The first set containing 42 Requests for Production was withdrawn and replaced by a second First Set of Interrogatories and Requests for Production containing 108 Requests. The second "First" set was apparently accompanied by a Notice of Withdrawal of Discovery Requests but contained no indication on its face that it was "Substituted" or "Amended".  (Dkt. 635-1)  Sometime around May 14, 2019, Plaintiff's counsel Mr. Bond discovered that Taylor's previous counsel, Mr. Martelle had apparently responded to the withdrawn discovery and did not respond to the "substituted" discovery. As a consequence, this Sixth Motion to Compel concerns Taylor's responses to both Plaintiff's First and Second sets of Interrogatories and Requests for Production of Documents.

Plaintiff has, as in previous motions, asserted that Taylor has asserted "boilerplate" objections and thereby waived the right to assert further specific objections.

Taylor has not made any substantive response, but claims in his Response (Dkt. 635) that

DISCOVERY MASTER ORDER NO. 16  –  3

Miesen's motion is "prematurely raised" because the confusion arising from the "withdrawn" First Set of Interrogatories and Requests for Production was only recently discovered and a document inspection scheduled for July 9, 2019 was about to take place.  Plaintiff, however, in his Reply of July 12, 2019 (Dkt. 651) and in the Declaration of Roderick C. Bond dated July 12, 2109 indicates that the document inspection did not take place and no further discovery responses have been received from Mr. Taylor. (Dkt. 651-1, ¶ 4). Similarly, neither of the parties have indicated since July 12, 2019 that further discovery responses have been served by Taylor.

Plaintiff's Sixth Motion to Compel is granted, in part, as detailed below.

### ANALYSIS

1.     <u>The "Boilerplate" Objections.</u>

Discovery Master Order No. 14 addressed Plaintiff's position concerning "boilerplate" objections and refused to issue an order that all objections were withdrawn as a consequence of the use of "boilerplate".  The analysis contained in Discovery Master Order No. 14, including the observation that Plaintiff has not identified a single "disputed item" among the boilerplate objections, applies to Plaintiff's Sixth Motion to Compel as well.

The Discovery Master will not issue an order requiring Taylor to withdraw his "boilerplate" objections to Plaintiff's First Set of Interrogatories and Request for Production. The Discovery Master will, however, consistent with Discovery Master Order No. 14, direct Taylor to withdraw his General Objection No. 14 concerning contention interrogatories which are no longer premature.

Taylor is also directed to withdraw General Objection No. 15, which states:

15.     R. John Taylor incorporates by reference all its General Objections into each of the responses below.  In responding to a specific discovery request, R. John Taylor may restate its objections, but by not repeating an objection, R. John Taylor does not waive any General Objection.

DISCOVERY MASTER ORDER NO. 16 – 4

General Objection No. 15 appears to be designed to avoid the need to provide specific objections to specific discovery requests.  The consequence of General Objection No. 15 is that an answer to a specific interrogatory could be omitted or a requested document could be withheld on the basis of a General Objection that is not specifically stated in response to an individual discovery request and that does not, therefore, put the requesting party on notice that information or documents have been withheld.

The same ruling applies to Taylor's response to Plaintiff's Second Interrogatories and Requests for Production.  Notwithstanding any General Objections asserted by Taylor, Taylor shall specifically object to each discovery request he finds objectionable so that Plaintiff, and the Court or Discovery Master if a motion to compel is filed, is notified that information or documents have been withheld pursuant to the objection.  (*See also,* Discovery Master Order No. 14, pp. 17-18).

2.     Information and Documents Taylor has the legal right to obtain.

Plaintiff  asserts that a party can "obtain any information within the 'responding party's possession, custody or control'" under FRCP 34 and that "documents are deemed to be within [a party's]  'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody, or control, or has the legal right to obtain the documents on demand."  (Dkt. 584, p. 10)  Plaintiff is essentially correct, subject to the relevancy and proportionality requirements of FRCP 26(b).

Plaintiff asserts further that Taylor's legal right to obtain documents extends to multiple entities Plaintiff claims Taylor controls.  These entities are CropUSA Insurance Agency, CropUSA Services, AIA Services, AIA Insurance, Pacific Empire Radio Corporation, Pacific Empire Holdings Corporation, 17 State Street Partners, LLC, Weskan Agency, LLC, Green Leaf

DISCOVERY MASTER ORDER NO. 16  –  5

Re Insurance Company, Green Leaf Alliance, Inc., and Reinsurance Partners, LLC.  Plaintiff has provided evidence that Taylor serves as an officer or manager of each of these entities as of the time of filing their 2018/2019 annual reports. (*See* Dkt. 583-5 and Dkt. 583-8 through 583-18) The only exception is 17 State Street Partners, LLC. which the Idaho Secretary of State indicates is "inactive, dissolved" in 2016.  The last Annual Report for that entity, filed 2015, indicates that Taylor was an officer before dissolution.  (Dkt. 583-13)  While the evidence provided by Plaintiff is not determinative, it is sufficient to raise an inference that Taylor may indeed have the right to obtain documents from the above listed entities.

The fact that Taylor may have the right to obtain information and/or documents concerning each of the entities listed above does not, however, mean that all the information requested by Plaintiff is relevant or proportional as required by FRCP 26(b).

Interrogatory No. 8 and its companion, Request for Production No. 113 illustrate why the Discovery Master is concerned regarding relevance and proportionality.  Interrogatory No. 8 seeks, among other things, "the date, subject matter and result of each decision, meeting, or resolution that you participated in as a member of the board of directors of AIA Services".  Request for Production No. 113 asks for the production of "all documents identified in your answer to Interrogatory No. 8 (including, without limitation, by producing all draft and final board meeting minutes, draft and final board meeting resolutions and all documents considered when making any decisions or resolutions.)"  These discovery requests, which are cited by way of example, are not obviously limited to information relevant to the claims or defenses of the parties and do not appear, without more of a showing, to be proportional to the needs of the case.

Subject to the relevancy and proportionality requirements of FRCP 26(b),  that part of Plaintiff's Sixth Motion to Compel that seeks an order requiring Taylor to respond to discovery

DISCOVERY MASTER ORDER NO. 16 – 6

requesting information and documents he has the legal right to obtain from CropUSA Insurance Agency, CropUSA Services, AIA Services, AIA Insurance, Pacific Empire Radio Corporation, Pacific Empire Holdings Corporation, 17 State Street Partners, LLC, Weskan Agency, LLC, Green Leaf Re Insurance Company, Green Leaf Alliance, Inc., and Reinsurance Partners, LLC is granted.

Subject to the relevancy and proportionality requirements of FRCP 26(b), that part of Plaintiff's Sixth Motion to Compel that seeks an order requiring Taylor to produce documents he has the legal right to obtain from CropUSA Insurance Agency, CropUSA Services, AIA Services, AIA Insurance, Pacific Empire Radio Corporation, Pacific Empire Holdings Corporation, 17 State Street Partners, LLC, Weskan Agency, LLC, Green Leaf Re Insurance Company, Green Leaf Alliance, Inc., and Reinsurance Partners, LLC is also granted.

Plaintiff also asks that Taylor "separately be compelled to ensure that the entities (listed above) all properly answer all discovery and produce all responsive documents." (Dkt. 584, p. 12) Plaintiff makes no argument and provides no insight into how such an order would be appropriate or enforceable. Mr. Taylor will be compelled, as stated above, to produce information and documents he has the right to obtain from the listed entities, but he will not be compelled to "ensure" that the entities, some of which are not parties to this suit and not subject to subpoena, "properly answer all discovery and produce all responsive documents".

3.    Interrogatories 1-6, 8, 10, 12-24 and Related Documents.

This Discovery Master Order No. 16 has already addressed Taylor's "boilerplate" objections, ordered that General objections 14 and 15 be withdrawn and compelled responses that provide notice whether information or documents have been withheld. Taylor will also be compelled, subject to relevance and proportionality, to "provide meaningful, intelligible and

DISCOVERY MASTER ORDER NO. 16 – 7

9-ER-2056

non-evasive answers to Interrogatories 1-6, 8, 10 and 12 through 24.

4.      Requests for Production No.s 1 – 163.

Plaintiff complains that Taylor has not responded to Requests for Production 1 through 163, has failed to respond or supplement and has not complied with the Discovery Conference Agreement.  Plaintiff also contends that Taylor's objections "are all improper, should be withdrawn and should be deemed waived".  Taylor essentially admits that he has not fully responded to Plaintiff's discovery requests and has characterized Plaintiff's Sixth Motion to Compel as "premature".  Premature or not, Taylor has apparently not made any supplemental response since filing his Response to Plaintiff's Motion (Dkt. 635) on June 28, 2019.

That part of Plaintiff's Motion that seeks an order compelling Taylor to provide "proper responses" to Requests for Production No. 1 – 163, subject to relevance, proportionality and the foregoing contents of this Discovery Master Order No. 16 is granted.

5.      Request for Production of Privileged and Work Product Documents Evidenced by Quarles & Brady Billing records and James Gatziolis' Deposition Testimony.

Plaintiff's requests for privileged and work product materials associated with the Quarles & Brady billing records touch on issues that are the subject of, or may be affected by the Court's resolution of pending objections to Discovery Master Order No. 13 and Discovery Master Order No. 14.   Action by the Discovery Master on this part of Plaintiff's Sixth Motion to Compel will, therefore, be deferred until the objections to Discovery Master Orders No.s 13 and 14 are resolved.

6.      Request for Compelled Testimony of John Taylor and "Other Witnesses" Regarding Subject Matters Waived.

Plaintiff's request that testimony be compelled concerning "All of the Subject Matters Waived" is likely to concern the subject of, or may be affected by the Court's resolution of

DISCOVERY MASTER ORDER NO. 16 – 8

9-ER-2057

pending objections to Discovery Master Order No. 13 and Discovery Master Order No. 14. Action by the Discovery Master on this part of Plaintiff's Sixth Motion to Compel will, therefore, be deferred until the objections to Discovery Master Orders Nos. 13 and 14 are resolved.

7.      Request for Taylor to Produce Attorney Billings and Un-Redact Previously Produced Documents.

a.      Attorney billing Records.  Plaintiff seeks law firm billing records that are in the possession of, or could be lawfully demanded by Taylor. Plaintiff has identified the Requests by which he sought these records and explains why he "needs" these records but has not adequately explained why they are discoverable in this case.  That part of Plaintiff's Motion is denied, without prejudice and subject to greater explanation from Plaintiff.

b.      Un-redaction of Previously Produced Documents.  This part of Plaintiff's Motion is  apparently directed to documents produced following Privilege Waiver Identification by Taylor pursuant to Discovery Master Order No. 1 (Dkt. 476) and Discovery Master Order No. 6 (Dkt. 533).  Documents produced pursuant to Taylor's Privilege Waiver Identification should not contain any redaction that obliterates the subject matter of the privilege waiver.  Notwithstanding the foregoing, the Discovery Master acknowledges that law firm billings could concern subject matter which is the object of a privilege waiver and subject matter on which there has not been a subject matter waiver.

That part of Plaintiff's Motion that seeks a order compelling un-redaction of all time and billing entries as to which there has been a subject matter privilege waiver is granted.  Further, Taylor is directed, as required by FRCP 34, to state the basis of any privilege that has not been waived that supports any remaining redactions.

DISCOVERY MASTER ORDER NO. 16 – 9

**9-ER-2058**

8.      Taylor's Tax Returns and Financial Statements.

Plaintiff unsuccessfully sought Taylor's tax returns indirectly from GemCap. (*See Discovery Master Order No. 14,* Dkt. 662, pp. 15-16) and now seeks them, together with other Taylor financial records, from Taylor.  Plaintiff's Memorandum in support of his motion identifies Requests for Production 4-19 and 107.  The Discovery Master concludes Plaintiff has made a sufficient showing that Taylor's tax returns and financial statements are likely to bear on the tracing of assets, stock ownership and valuations and damages that the request is appropriate and proportional.

That part of Plaintiff's Motion that seeks the production of Taylor's tax returns and financial statements from 1999 to the present is granted.

9.      Plaintiff and Taylor Shall Establish a Date for Inspection of Documents.

Plaintiff has sought an in person inspection of documents produced and to be produced by Taylor. It appears that Taylor has no objection to such an inspection because it was mentioned in his Response to Plaintiff's Motion (Dkt. 635) as already having been scheduled.  Although no inspection took place on the date mentioned in Taylor's Response, Taylor's consent to such an inspection can be reasonably inferred from the position he stated.

Plaintiff and Taylor shall, no later than 10 days from the date this Discovery Master Order No. 16 is adopted by the Court, agree upon a time and place for inspection of Taylor's documents by Plaintiff.  Inspection shall take place no later than 21 days from the date this Discovery Master Order No. 16 is adopted by the Court.

10.     Taylor Should Produce a Detailed Log of Documents Withheld.

Plaintiff's request that an opposing party produce a detailed log of documents withheld was addressed in Discovery Master Order 14.  (Dkt. 662, pp. 17-18)   That part of Discovery

DISCOVERY MASTER ORDER NO. 16  –  10

Master Order No. 14 is incorporated herein by this reference.

11.     It Is Too Late for Taylor to Move for a Protective Order.

This section of Plaintiff's Motion and briefing (Dkt. 584, p. 22) presents a hypothetical problem and does not present a current issue that is ripe and is denied, without prejudice.

12.     General Order to Compel.

Plaintiff again seeks a general order to compel and an order requiring a declaration from Taylor's counsel certifying that all responsive documents have been produced. As noted in Discovery Master Order No. 14, Plaintiff's request, taken by itself, fails to comply with the requirements of D. Idaho L. Pract. Civ. R 37.2 and is again, denied on that basis. Notwithstanding the foregoing, this Discovery Master Order No. 16 compels Taylor to provide responses to discovery on several of the issues requested by Plaintiff. Whether a certification of discovery compliance and completeness will be required thereafter remains to be seen. Plaintiff's request is, therefore, denied, without prejudice.

13.     Attorney's Fees and Costs.

Plaintiff may submit an application pursuant to Rule 37(a)(5)(C) for reasonable expenses, including attorneys' fees incurred in bringing Plaintiff's Sixth Motion to Compel.

**ORDER**

1.     That part of Plaintiff's Sixth Motion to Compel Re: John Taylor that seeks an order compelling Taylor to withdraw all General Objections to Plaintiff's written discovery is denied, with the exception of General Objections No. 14 and 15 which Taylor is directed to withdraw. Further, with regard to Plaintiff's Second Interrogatories and Requests for Production, Taylor shall specifically object to each discovery request he finds objectionable so that Plaintiff, and the

DISCOVERY MASTER ORDER NO. 16  –  11

Court or Discovery Master if a motion to compel is filed, is notified that information or documents have been withheld pursuant to the objection.

2. Subject to the relevance and proportionality requirements of FRCP 26(b), that part of Plaintiff's Sixth Motion to Compel Re: John Taylor that seeks an order requiring Taylor to respond to interrogatories requesting information he has the legal right to obtain from CropUSA Insurance Agency, CropUSA Services, AIA Services, AIA Insurance, Pacific Empire Radio Corporation, Pacific Empire Holdings Corporation, 17 State Street Partners, LLC, Weskan Agency, LLC, Green Leaf Re Insurance Company, Green Leaf Alliance, Inc., and Reinsurance Partners, LLC is granted.

3. Subject to the relevance and proportionality requirements of FRCP 26(b), that part of Plaintiff's Sixth Motion to Compel Re: John Taylor that seeks an order requiring Taylor to produce documents he has the legal right to obtain from CropUSA Insurance Agency, CropUSA Services, AIA Services, AIA Insurance, Pacific Empire Radio Corporation, Pacific Empire Holdings Corporation, 17 State Street Partners, LLC, Weskan Agency, LLC, Green Leaf Re Insurance Company, Green Leaf Alliance, Inc., and Reinsurance Partners, LLC is granted.

4. That part of Plaintiff's Sixth Motion to Compel Re: John Taylor that seeks an order compelling Taylor to "provide meaningful, intelligible and non-evasive answers" to Interrogatories 1-6, 8, 10 and 12 through 24 is, subject to relevance and proportionality, granted.

5. That part of Plaintiff's Sixth Motion to Compel Re: John Taylor that seeks the production of privileged and work product documents evidenced by Quarles & Brady billing records and James Gatziolis' Deposition testimony is deferred pending resolution of objections to Discovery Master Orders No.'s 13 and 14.

DISCOVERY MASTER ORDER NO. 16  –  12

9-ER-2062

6.      That part of Plaintiff's Sixth Motion to Compel Re: John Taylor that seeks to compel the testimony of John Taylor and "other Witnesses" regarding privileged subject matters for which the privilege has been waived is deferred pending resolution of objections to Discovery Master Orders No.'s 13 and 14.

7.a.    That part of Plaintiff's Sixth Motion to Compel Re: John Taylor that seeks law firm billing records that are in the possession of, or could be lawfully demanded by Taylor is denied, without prejudice, subject to greater explanation from Plaintiff.

7.b.    That part of Plaintiff's Sixth Motion to Compel Re: John Taylor that seeks the un-redaction of previously produced time and billing entries on formerly privileged documents as to which there has been a waiver of subject matter privilege is granted, subject to Taylor's obligation to identify the claimed privilege for any entry that remains redacted.

8.       That part of Plaintiff's Sixth Motion to Compel Re: John Taylor that seeks the production of Taylor's tax returns and financial statements from 1999 to the present is granted.

9.      As to Plaintiff's request to obtain an in-person inspection of documents produced by Taylor, Plaintiff and Taylor shall, no later than 10 days from the date this Discovery Master Order No. 16 is adopted by the Court, agree upon a time and place for inspection of Taylor's documents by Plaintiff which shall take place no later than 21 days from the date this Discovery Master Order No. 16 is adopted by the Court.

10.     That part of Plaintiff's Sixth Motion to Compel Re: John Taylor that seeks a general order requiring Taylor to serve a log of documents withheld on the basis of objection is denied, without prejudice.  All parties are advised, however, of their obligations as expressed by the

DISCOVERY MASTER ORDER NO. 16  –  13

2015 Advisory Committee Notes to FRCP 34(b)(2)(C).  If Plaintiff brings any motion for relief under FRCP 34(b)(2)(C) in the future, the Discovery Master will require clear proof of the meet and confer requirements of FRCP 37(a)(1), including proof that Taylor was asked to comply with the requirements of Rule 34(b)(2)(C) and the Advisory Committee Notes set forth above and has failed or refused to comply.

11.     That part of Plaintiff's Sixth Motion to Compel Re: John Taylor that seeks an order stating it is too late for Taylor to move for a protective order is not ripe and is denied, without prejudice.

12.     That part of Plaintiff's Sixth Motion to Compel Re: John Taylor that seeks a General Order to Compel and requires Taylor and his Counsel to submit declarations certifying that all responsive documents have been produced is denied, without prejudice.

13.     That part of Plaintiff's Sixth Motion to Compel Re: John Taylor that seeks reasonable expenses, including attorneys' fees is granted.

        Dated this 17th day of September, 2019.


                                        /s/ David R. Lombardi
                                        David R. Lombardi
                                        Discovery Master


DISCOVERY MASTER ORDER NO. 16  –  14

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 17th day of September, 2019, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Benjamin A. Schwartzman
Alyson Anne Foster
Taylor Bruun
Andersen Schwartzman Woodard
Dempsey, PLLC
101 S. Capitol Blvd., Ste. 1600
Boise, ID  83702
Email:  bas@aswdpllc.com;
aaf@aswdpllc.com
tlb@aswdpllc.com
*Attorneys for GemCap Lending I, LLC*

Fanxi Wang
Bird Marella
1875 Century Park East, 23rd Floor
Los Angeles, CA  90067
Email:  fwang@birdmarella.com,
mhicks@birdmarella.com
*Attorneys for Quarles & Brady, LLP*

Jack S. Gjording
Stephen Lee Adams
Gjording Fouser PLLC
121 N. 9th St., Ste. 600
PO Box 2837
Boise, ID  83702
Email:  jgjording@gfidaholaw.com,
sadams@gfidaholaw.com
*Attorneys for Quarles & Brady, LLP*

James B. King
Markus William Louvier
Evans, Craven & Lackie, P.S.
818 W. Riverside Ave., Ste. 250
Spokane, WA  99201
Email:  jking@ecl-law.com,
mlouvier@ecl-law.com
*Attorney for Crumb & Munding, P.S.*

James D. LaRue
Jeffrey A. Thomson
Loren C. Ipsen
Elam & Burke
PO Box 1539
Boise, ID  83701-1539
Email:  jdl@elamburke.com,
jat@elamburke.com, lci@elamburke.com
*Attorneys for Hawley Troxell Ennis &
Hawley, Gary D. Babbitt, D. John Ashby and
Richard Riley*

Roderick C. Bond
Roderick Bond Law Office, PLLC
601 108th Avenue NE, Suite 1900
Bellevue, WA  98004
Email:  rod@roderickbond.com
*Attorney for Dale L. Miesen*

DISCOVERY MASTER ORDER NO. 16  –  15

Daniel Loras Glynn
Jones Williams Fuhrman Gourley, P.D.
225 N 9th Street, Suite 820
Boise, ID 83701
Email: dglynn@idalaw.com
*Attorneys for AIA Services Corporation,
AIA Insurance, Inc. and Attorneys for Connie
Taylor Henderson, Michael W. Cashman, Sr.
James Beck, Crop USA Insurance Services,
LLC, and Crop USA Insurance, Inc.*

Michael S. Bissell
Tyler S. Waite
Campbell & Bissell, PLLC
Email:  mbissell@campbell-bissell.com,
twaite@campbell-bissell.com
*Attorneys for Reed J. Taylor*

Rebecca L. Dircks, *Pro Hac Vice*
Benesch, Friedlander, Coplan & Aronoff
333 W Wacker Drive, Suite 1900
Chicago, IL 60606-221
Email: rdircks@beneschlaw.com
*Attorneys for Interested Party CGB
Diversified, Inc.*

 */s/ David R. Lombardi*
David R. Lombardi

DISCOVERY MASTER ORDER NO. 16  –  16

9-ER-2065

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc., | Case No. 1:10-cv-00404-DCN<br><br>**ORDER** |
| Plaintiff, | |
| vs. | |
| HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; and GEMCAP LENDING I, LLC, a Delaware limited liability company, | |
| Defendants, | |
| and | |

ORDER – 1

CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL CASHMAN SR., an individual; JAMES BECK, an individual,

       Defendants/Third-Party Plaintiffs,

  vs.

REED TAYLOR, an individual,

       Third-Party Defendant.

There are various motions pending in this case. In this order, the Court addresses Plaintiff Dale L. Miesen's Motion to Determine the Allocation of the Mediator's Fee Among the Parties. Dkt. 679.

Currently, the parties have agreed to attend mediation in San Francisco, California, on September 25, 2019. The mediation fee is $24,000.

Pursuant to Local Rule 16.4(b)(3)(J), "[u]nless other arrangements are made among the parties or ordered by the Court, the interested parties will be responsible for a pro rata share of the mediator's fees and expenses." Dist. Idaho Loc. Civ. R. 16.4(b)(3)(J).

Here, GemCap Lending I, LLC ("GemCap), Reed Taylor, and Meisen believe a pro rata split of the $24,000 is appropriate, which, when divided between the fifteen parties, would be $1,600 per party. They reason that each of the fifteen parties is an "interested person" who is subject to individual liability and thus there is no reason to stray from Local

ORDER – 2

Rule 16.4. Indeed, GemCap and Reed Taylor agreed to mediate the case on the assumption that the fee would be split on this basis. Dkt. 684.

Defendants Beck, Cashman, Henderson, John Taylor, Crop USA Insurance Agency, Inc. and Crop USA Insurance Services, LLC (collectively, "Crop USA Defendants") offer an alternative calculation.[1] Rather than splitting the cost by fifteen, they believe the cost should be split by five because there are essentially five groups of parties in this case: (1) plaintiffs (Meisen, AIA Services Corp. and AIA Services, Inc.); (2) the controlling defendants/Crop USA (Crop USA Defendants); (3) the Hawley Troxell defendants (Riley, Ashby, Babbitt, and Hawley Troxell Ennis & Hawley, LLP); (4) GemCap; and (5) Reed Taylor. Crop USA Defendants argue that because this is how the parties are bunched together in the Third Amended Complaint and these groupings accurately reflect the manner in which the parties are represented by counsel, a fifteen-way split would actually be disproportionate. Instead, they argue, a five-way split, or $4,800 per group, is more fitting.

The Court finds the default rule requiring a pro rata split between "interested parties" is appropriate. To begin, there are many logical and reasonable ways to divvy up the mediator's fee, including Crop USA Defendants' suggestion. No matter which way the fee is split, however, there will always be at least one party or group that feels they are paying more than their fair share.

---

[1] Riley, Ashby, Babbitt, and Hawley Troxell Ennis & Hawley LLP don't have a position on the issue and are open to any reasonable method of allocation. Dkt. 689.

ORDER – 3

For example, Crop USA Defendants' argue that their combined pro rata share of $9,600 ($1,600 x 6) is excessively high as the Third Amended Complaint essentially groups them as one. A fee of $4,800 for this group, then, is much more reasonable. While this may seem more impartial, it would require both GemCap and Reed Taylor to increase their expected contribution from $1,600 to $4,800 each because GemCap and Reed Taylor are individually grouped, according to Crop USA Defendants. This would seemingly penalize GemCap and Reed Taylor simply because their alleged involvement in the underlying case was not similar enough to others' involvement.

As the Court mentioned, there are numerous ways to solve this problem, each with its own pros and cons. Fortunately, Local Rule 16.4(b)(3)(J) does not require the Court to determine what the "most fair" allocation of the mediator's fees and expenses would be. Rather, it states that a pro rata share amongst the interested parties is the method to be used "unless other arrangements are made by the parties or ordered by the Court." Dist. Idaho Loc. Civ. R. 16.4(b)(3)(J). The Court here cannot find good cause to change the default allotment.[2]

## ORDER

IT IS HEREBY ORDERED THAT:

1. Each of the fifteen remaining parties will be responsible for a pro rata share ($1,600) of the mediator's fee of $24,000.

---

[2] As with all fee related issues, the final outcome of the case may affect financial obligations undertaken during the pendency of the litigation. Those decisions, however, are for a later date. For the time being, the Court will follow the Local Rules as outlined.

ORDER – 4

**9-ER-2069**

2. Future costs or expenses that the mediator incurs and appropriately requests,

if any, will be paid in the same manner.

DATED: September 18, 2019

_____

David C. Nye
Chief U.S. District Court Judge

ORDER – 5

**9-ER-2070**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA  98004
Telephone: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Attorney for the Plaintiff Dale L. Miesen

UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>**v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>DECLARATION OF RICHARD T. McDERMOTT IN SUPPORT OF PLAINTIFF DALE L. MIESEN'S MOTION TO AMEND THE CASE MANAGEMENT ORDERS RE: DEADLINES FOR EXPERT WITNESS REBUTTAL REPORTS AND EXPERT WITNESS DISCOVERY [Dkts. 602 & 712] |

DECLARATION OF RICHARD T. McDERMOTT - 1

**9-ER-2071**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

Defendants/Third-Party Plaintiffs,

v.

REED TAYLOR, an individual,

Third-Party Defendant.

REED TAYLOR, an individual,

Third-Party Defendant/ Counterclaimant,

v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

Counterdefendants.

DECLARATION OF RICHARD T. McDERMOTT - 2

I, Richard T. McDermott, declare:

1.      I am over the age of eighteen and am competent to testify in court, including as to the matters set forth in this declaration. This declaration and my opinions herein are based on personal knowledge, education, training, and experience.

2.      <u>Definitions</u>. I will use the following defined terms in this Declaration (the terms and their definitions are taken from my Report.

a.      "Guarantee Prohibition" means Sections 4.2.9(c) and the definitions in Section 4.2.10 in AIA Services' Amended Articles of Incorporation, which prohibited AIA Services and in effect any Subsidiary (as defined therein) from guaranteeing an obligation of any Person (as defined therein) other than a Subsidiary (as defined therein) without the consent of the holders of a majority of the outstanding shares of Series A Preferred Stock (who was Donna Taylor at relevant times).[1]

b.      "AIA Insurance's Guarantee of the Lancelot Loan" means AIA Insurance's guarantee of the Loan and Security Agreement between CropUSA as borrower and Lancelot Investor's Fund L.P. dated October 27, 2006.[2]

c.      "Lancelot Loan" means the Loan and Security Agreement for the $15,000,000 line-of-credit between CropUSA as borrower and Lancelot Investor's Fund L.P. dated October 27, 2006.[3] The Lancelot Loan is also referred to as the "Surge" Loan in various communications and documents.

d.      "Legal Opinion" or "Legal Opinions" means a third-party closing legal opinion(s) for a transaction. A Legal Opinion may only be relied upon by the addressee or

---

[1] DLM – 0033053-58.
[2] AIA001157-214; AIA0002858-67.
[3] AIA001157-214.

DECLARATION OF RICHARD T. McDERMOTT - 3

other permitted party and only addresses documents and legal issues as of the date of the Legal Opinion. There are a number of Legal Opinions at issue in this Lawsuit.[4]

e. "May 2, 2007 AIA Engagement Letter" means Engagement Letter between Hawley Troxell and the AIA Corporations dated May 1, 2007, which was not allegedly signed by John Taylor until May 2, 2007.[5]

3. This lawsuit involves complex and factually intensive issues spanning decades. My current 279-page Expert Report in this case, which supplemented the Expert Reports that I provided on August 5, 2019 and August 12, 2019, respectively (the supplements included addressing a new opinion issued by the Idaho Supreme Court and considering new evidence). The Expert Reports of Herrick K. Lidstone, Jr. Lewis A. Remele Jr. and Keith A. Pinkerton were delivered to me on October 18, 2019 (the date that they were provided to Mr. Bond), and, as stated below, since that date I have been preparing Rebuttal Opinions in response to those three Reports. I have diligently been working on reviewing all three Reports and preparing my Rebuttal Opinions since the time the three Reports were provided to us. I would also note that we had no prior notice before October 18, 2019 that the Hawley Troxell Defendants would be retaining two legal malpractice related experts and an accounting expert. This has resulted in me needing substantially more time than I had anticipated.

4. Despite Mr. Miesen's Request for Production requesting all documents provided to expert witnesses, the Hawley Troxell Defendants failed to comply and only recently produced the documents provided to Messrs. Lidstone, Remele and Pinkerton as I discuss in more detail below. As a result, I have been severely hindered in the preparation of my Rebuttal Reports by the Hawley

---

[4] Dkts. 1-10, 390-28, 439-5, 439-6 & 439-7; QBMIESEN000005404-13.
[5] HTEH000001-09.

DECLARATION OF RICHARD T. McDERMOTT - 4

9-ER-2075

Troxell Defendants' belated and piecemeal disclosure of documents and information that they provided to their three expert witnesses (which includes previously undisclosed privileged information), which I need in order to prepare my Rebuttal Opinions. Despite Mr. Miesen having requested the documents provided to all expert witnesses, the Hawley Troxell Defendants have intentionally withheld the documents that they have provided to their experts and are only now belatedly disclosing them in response to the subpoenas that Mr. Miesen was forced to serve upon their experts. It was only in response to those subpoenas that the Hawley Troxell Defendants' counsel produced the documents provided to their three expert witnesses to Mr. Bond, who in return promptly provided those documents to me.

5.      For example, in the short time that I have had to begin to review the documents submitted in response to the subpoena duces tecum that Miesen served upon on Herrick K. Lidstone, Jr., I have discovered that Mr. Lidstone has been provided with documents that have not been provided to me (nor am I able to determine if they have been disclosed in the Hawley Troxell Defendants' privilege log). For example, in connection with the preparation of the Lancelot Loan Legal Opinion, the Hawley Troxell Defendants prepared a chart which clearly reflects an awareness of Donna Taylor's ownership of shares of the Series A Preferred Stock of AIA Services that should have led to the discovery (to the extent it was not already known by the Hawley Troxell Defendants) of the effect of the Guarantee Prohibition in AIA Services' Amended Articles of Incorporation upon AIA Insurance's Guarantee of the Lancelot Loan. This is directly contrary to the claim of the Hawley Troxell Defendants that they were justifiably unaware of the Guarantee Prohibition, a provision which, as stated in my Expert Report, had the effect of rendering the AIA Insurance's Guarantee of the Lancelot Loan unauthorized and illegal, and the Hawley Troxell Defendants' Lancelot Loan Legal Opinion erroneous.

DECLARATION OF RICHARD T. McDERMOTT - 5

**9-ER-2076**

6.     Another example is the disclosure by the Hawley Troxell Defendants to Mr. Lidstone of a draft of the Lancelot Loan that indicated that an earlier draft apparently did not contain a provision (later added to the Agreement) that permitted Series A Preferred Stock redemption payments to Donna Taylor. Again, a lawyer preparing a third party opinion relating to that Agreement would have been led, as night the day, to the AIA Services' Amended Articles of Incorporation and the Guarantee Prohibition, particularly because the provision appears to have been added during the Loan Agreement negotiations; and thus, contrary to the claim of the Hawley Troxell Defendants and Mr. Lidstone's opinion, a lawyer exercising due care would have been aware of the Guarantee Prohibition when preparing the Lancelot Loan Legal Opinion (to the extent that the Hawley Troxell Defendants were not already aware of the Guarantee Prohibition).

7.     In the same vein, in beginning my review of the documents disclosed in response to the subpoena duces tecum served upon Lewis A. Remele, Jr., which I received in the late evening of December 9, 2019, I came across a previously undisclosed, redacted, copy of what is called a "Redacted memo re timeline of representation." The unredacted pages of document describe a number of matters in which the Hawley Troxell Defendants represented AIA Services and CropUSA. In my opinion, even the unredacted information contained in that document contradicts Mr. Remele's numerous statements in his Report that the duties and responsibilities of the Hawley Troxell Defendants to the AIA Corporations were diminished because they were not general counsel to those Corporations.

8.     The above are only some examples of the problems that I face based on the belated production of documents by the Hawley Troxell Defendants and why I need additional time to inspect and review documents. I have not had time to fully review all of the documents belatedly produced by the Hawley Troxell Defendants. I presume that there will be other issues as described

DECLARATION OF RICHARD T. McDERMOTT - 6

**9-ER-2076**

above, but I am unable to say with certainty because I have not had time to inspect and review all of the documents.

9. In addition, Mr. Riley's made material changes to the transcript of his July 1, 2019 Deposition by making substantive changes to a number of his answers to questions concerning, among other matters, the conflicts of interest of the AIA Services "directors." For example instead of the answers he originally gave, namely that (i) in "retrospect" those persons were conflicted and (ii) since Henderson and Beck were not being sued at the time of their so called appointment by John Taylor "they were the best we could do under the circumstances", Riley changed his answers to say that those persons  "did not have conflicting interests with respect to defending the AIA entities against Reed Taylor's creditor claims." This mischaracterization by Riley of *Reed Taylor v. AIA Service* as only involving "creditor claims" goes hand in glove with a theme which appears as a material foundation throughout the Remele Report. Riley's new answers appear to be an attempt to reduce the Hawley Troxell Defendants' scope of representation from as stated in the May 2, 2007 AIA  Engagement Letter "to advise the two corporate defendants in connection with the above entitled action brought by Reed J. Taylor" to merely defending a collection suit. Although the opinions I have expressed in my Expert Report are unaffected, it is critical that Riley be deposed again; that he be asked, among other things, to explain the reason for this reversal of his testimony and that I obtain from that Deposition whatever information is available to further rebut Mr. Remele's opinions, and to formulate additional opinions based on certain matters raised in Mr. Remele's opinions and Mr. Lidstone's opinions. Based on Mr. Riley's changes to his testimony alone, I am requesting additional time to fully and fairly complete my Rebuttal Opinions after Mr. Riley and the Hawley Troxell Rule 30(b)(6) depositions have been taken (if this Court

DECLARATION OF RICHARD T. McDERMOTT - 7

authorizes Mr. Riley to be deposed again)[6] and after the depositions of John Taylor and the other two former directors of the AIA Corporations, Mr. Beck and Ms. Henderson, have been taken since their testimony will be needed to address matters in my Rebuttal Opinions for the reasons stated in this Declaration and the testimonial evidence that will undoubtedly be provided at those depositions.

10.     The recently disclosed Lidstone and Remele subpoenaed documents referred to above do not cause me to change any of my opinions. However, in order to permit me to rebut efficiently the opinions of the Hawley Troxell Defendants' experts and to fairly and fully express additional opinions and finalize my Expert Report, it is imperative that I be provided with all of the relevant documents and that I receive them all at once. I would expect that the Hawley Troxell Defendants' experts would want that as well. This would eliminate a train of Supplemental Reports and would be cost effective for all.

11.     With respect to the matter of forthcoming Depositions, as stated above permission is being sought to conduct a Deposition of Riley (because time did not allow its completion on July1) on January 8; the Hawley Troxell Defendants' Rule 30(b)(6) Deposition will take place on January 10, 2020, Connie Taylor Henderson's will be held on January 13, 2020, and John Taylor's on January 21 and 22, 2020. The Depositions of Cashman and Beck are scheduled to be held between January 30, 2020, and February 4, 2020. Henderson and Beck were so called directors of the AIA Corporations at critical times, and as I opined in my Expert Report, Cashman was also an active participant in the Controlling AIA Defendants' wrongdoing and was formerly one of the

---

[6] I understand that Mr. Miesen's motion to depose Mr. Riley for part of a second day to address these substantive changes and other matters will be filed imminently. I fully support Mr. Miesen's request in that regard, especially based on Riley's changed answers and certain matters raised by Mr. Remele and Mr. Lidstone.

DECLARATION OF RICHARD T. McDERMOTT - 8

controlling shareholders of AIA Services. The GemCap 30(b)(6) Deposition will be conducted on January 16, 2020. Those Depositions will undoubtedly reveal additional information that will have to be reflected in my Rebuttal Report. I believe that under the circumstances these are compelling reasons, in addition to those expressed below, for an extension of the time for the delivery of my Rebuttal Report until the completion of all of the presently scheduled Depositions and, to the extent necessary as a result of information obtained in those Depositions, the taking of Depositions of other persons.

12.     As stated above, the Lidstone, Remele and Pinkerton Reports were delivered to me on October 18, 2019. However, the documents subpoenaed from those experts were not received until, in the case of Mr. Lidstone on December 6, 2019, Mr. Remele on December 9, 2019, and Mr. Pinkerton yesterday, December 17, 2019. The Lidstone Report consists of 59 pages including exhibits and 2,087 pages of documents; the Remele Report consists of 115 pages including attachments and 14,780 pages of documents; and the Pinkerton Report consists of 40 pages including attachments and 6,066 pages of documents (excluding 4 documents which could not be Bates stamped, for which I have not determined the number of pages).  (The documents were promptly bates-stamped by Mr. Bond and then provided to me, but I note that many of the documents had no bates stamps on them which makes it very time consuming to determine whether the documents had been previously produced (although I am certain that some of the documents have never been previously produced to us).) As also stated above, upon receiving those three Reports (but not the documents) I began working daily (and often nightly) on draft Rebuttals thereto, preparing an item by item response to each of the various statements and opinions expressed in those Reports with references to paragraph letters and page numbers as well as references and citations to relevant documents and various page numbers in my August 12, 2019

DECLARATION OF RICHARD T. McDERMOTT - 9

Report, as well as examining many of the tens of thousands of documents which have been produced so far in this case. I will include references to legal authorities in my Rebuttals for the purpose of explaining why reliance thereon by the particular expert is misplaced and the cases cited by him are inapposite. Mr. Bond did not receive the documents subpoenaed from Mr. Pinkerton until 2:09 pm New York time yesterday and I received them at 3:22 pm. Without waiving privilege, my present draft Rebuttal Reports responding to the Lidstone, Remele and Pinkerton Reports presently consists of approximately 50 pages, and it will continue to grow in pages. In order to fully and fairly complete my Rebuttal Opinions, I need time to sufficiently inspect and review the thousands of pages of document in the expert subpoenaed documents provided to me on December 6, 9 and 17, 2019 and additional time to make substantial additions to my drafts and complete my Rebuttal Report, with the corresponding document retrieval and citation, review and analysis that work will entail.

13.     I am retired from the Clifford Chance law firm and no longer have the legal and support staff that I had as a senior partner. As is generally the case with respect to my Special Master, law school teaching, legal writing, private mediation, and TriBar Opinion Committee work, in preparing my Expert Report and the two Supplements, I have already produced to the Hawley Troxell Defendants, I have done my own work without the assistance of associates or law clerks. As is true of the instant case generally, the expert opinion work is, insofar as the number of participants is concerned, a case of David against Goliath. With the amount of additional work presently before me, which has been caused by the December 6, 9 and 17, 2019 receipt of the Lidstone, Remele and Pinkerton  documents and the review and analysis necessitated thereby, I am simply unable to review the additional materials to fully and fairly prepare by December 20,

DECLARATION OF RICHARD T. McDERMOTT - 10

9-ER-2080

2019 the three Rebuttals of the caliber and quality I owe to the Court and Mr. Miesen, who are entitled to have me fully address the opinions and provide my best work product.

14.      In addition, if I am required to present my Rebuttal  Reports before I have had an opportunity to review all of the relevant documents and study the transcripts of the forthcoming Depositions, I would be in the position of having to prepare Supplemental Report(s), the need for which can be avoided by an orderly, manageable and cost effective expert report procedure. If I am not provided more time, my efficiency will be impacted and the fees that I charge for my work will also increase to the detriment of Mr. Bond and Mr. Miesen.

15.      Accordingly, I am respectively requesting that this Court extend the deadline for my rebuttal Reports until February 21, 2020  so that I may fairly and efficiently proceed with respect to  the preparation of my Rebuttal Reports and afford me an opportunity to fully and fairly respond to and rebut the opinions of the Hawley Troxell Defendants' three experts after the completion of the critically important Depositions to be conducted in January and February, 2020 (and the availability of transcripts thereof), and after I have had an opportunity to review all of the documents recently produced for the Hawley Troxell Defendants' three expert witnesses, as well as the adjudication of the of the presently disputed privileged information and work product material (I understand that motion will be filed soon and I am finalizing my declaration for that motion). Extending the deadline until February 21, 2020 would be workable date for the production of my Rebuttals to the Lidstone, Remele and Pinkerton Reports (although I will continue to supplement as more information becomes available as I have in the past).[7] If the Court decides not to grant that extension, with the upcoming holidays and in light of my law school

---

[7] I will not be addressing all of Mr. Pinkerton's opinions because there are some matters that are not within my expertise.  I understand that Mr. Miesen will have an accounting expert submit rebuttal opinions to Mr. Pinkerton's Report.

DECLARATION OF RICHARD T. McDERMOTT - 11

**9-ER-2082**

teaching schedule, I am respectfully requesting that the Court grant me an extension until January 21, 2020 to submit my Rebuttals based on the information that I have obtained and been provided as of the date of this Declaration to fully and fairly complete my Rebuttals based on the information presently in my possession, including the documents recently obtained by Mr. Miesen's subpoenas duces tecum served on Lidstone, Remele and Pinkerton.

  I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

*December 18, 2019, New York, New York*      */s/ Richard T. McDermott*
Date and City and State Signed        Richard T. McDermott

DECLARATION OF RICHARD T. McDERMOTT - 12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of December 2019, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

James D. LaRue:   jdl@elamburke.com
Jeffrey A. Thomson:   jat@elamburke.com
Loren C. Ipsen:   lci@elamburke.com
Joyce Ann Hemmer:   jah@elamburke.com
Bradley S. Keller:   bkeller@byrneskeller.com
Alyson Anne Foster:   aaf@aswdpllc.com
Taylor L. Bruun:   tlb@aswdpllc.com
Benjamin A. Schwartzman:   bas@aswdpllc.com
Peter L. Steinman:   psteinman@mrllp.com
Tyler Scott Waite:   twaite@campbell-bissell.com
Michael Scott Bissell:   mbissell@campbell-bissell.com
David R. Lombardi:   drl@givenspursley.com
Daniel Loras Glynn:   dglynn@idalaw.com

                                    /s/ Roderick C. Bond
                                    Roderick C. Bond

DECLARATION OF RICHARD T. McDERMOTT - 13

**9-ER-2083**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA  98004
Telephone: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Attorney for the Plaintiff Dale L. Miesen

UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.; <br><br> Plaintiff, <br><br> **v.** <br><br> CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 1:10-cv-00404-DCN-CWD <br><br> DECLARATION OF RICHARD T. McDERMOTT IN SUPPORT OF SEVENTH MOTION TO COMPEL RE: PRIVILEGE AND WORK PRODUCT |

DECLARATION OF RICHARD T. McDERMOTT - 1

**9-ER-2084**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

    Defendants/Third-Party
    Plaintiffs,

    **v.**

REED TAYLOR, an individual,

    Third-Party Defendant.

REED TAYLOR, an individual,

    Third-Party Defendant/
    Counterclaimant,

    **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

    Counterdefendants.

DECLARATION OF RICHARD T. McDERMOTT - 2

**9-ER-2085**

I, Richard T. McDermott, declare:

1. I am over the age of eighteen and am competent to testify in court, including as to the matters set forth in this declaration. This declaration and my opinions herein are based on personal knowledge, education, training, and experience.

**Education, Qualifications and Experience**

2. In 1962, I received a B.A. from Marquette University. In 1966, I obtained a J.D. from Fordham University School of Law.

3. In 1967, I was admitted to practice law in the State of New York. I am presently in good standing and licensed to practice law in the State of New York. I have been admitted to practice law in New York for over 50 years. I am admitted to practice in the United States District Court for the Southern District of New York and the United States Court of Appeals for the Second Circuit. I am also a member of the New York State Bar Association Securities Regulation Committee.

4. From 1966 through 1990, I was an Associate and Partner with the law firm of Alexander & Green/Walter Conston Alexander & Green (the firms combined). From 1990 through 2004, I was a Partner of Rogers & Wells/Clifford Chance LLP (the firms merged in 2000). While at that firm, I chaired the Legal Personnel Committee, and was responsible for the training, development, evaluation and advancement of associate attorneys and counsel, as well as being involved in the partner selection process. I was also a member of the Executive or Administrative Committee of the firms of which I was a partner.

5. From 2000 through the present time, I have been an Adjunct Professor at Fordham University School of Law. From 1980 through 1998, I was an Adjunct Professor at New York University School of Law.  I presently teach a Course in Corporate Transactions: Finance And

DECLARATION OF RICHARD T. McDERMOTT - 3

Litigation which covers such matters as a corporation's issuance of debt and equity securities, mergers and acquisitions and distributions to holders of equity securities as well as the various legal challenges which have been made with respect thereto. My course also covers such matters as the ethical and legal responsibilities of lawyers advising corporations.

6. In 1988, I was a visiting lecturer at Monash University in Melbourne, Australia and the University of Adelaide, Australia, Corporate and Business Law Centre.

7. In 1999, I co-lectured with former Delaware Chancellor William Allen and James Fuld, author of Legal Opinions in Business Transactions - An Attempt to Bring Some Order Out of Some Chaos, 28 Bus. Law. 915 (1973), on the Law and Business of Investment Banking at the New York University Center for Law and Business.

8. From 2009 through the present time, I have served as a Special Master for the New York State Supreme Court Appellate Division, First Department. Through my mediation experience, I have gained additional knowledge and experience regarding litigation and claims.

9. In 2018 and 2019, I was a Lecturer in Business Law and Practice at the Program For Students in the Master Program in International Business Law, Centro De Estudios Garrigues of Spain.

10. In 2019, I was a Lecturer in Corporate Finance Transactions at the Europa Institute, of Leiden University, Germany.

11. I am the author of Legal Aspects of Corporate Finance (5th ed. 2013) and a 2018 Supplement thereto which is published by Carolina Academic Press. It is my understanding that the book has been used at over twenty different law schools. I have authored other articles and materials (including a Teacher's Manual for Legal Aspects of Corporate Finance).

DECLARATION OF RICHARD T. McDERMOTT - 4

9-ER-2087

12.     I am the co-author of Chapters 1 and 2 (Introduction and Elements of Opinion Letters, respectively) and author of Chapter 3 (Legal Opinions on Corporate Matters) of the Treatise: LEGAL OPINION LETTERS A Comprehensive Guide to Opinion Practice (Third Edition).

13.     I have been a member of the TriBar Opinion Committee for 29 years. The TriBar Opinion Committee is a nationally recognized committee that publishes Reports on various aspects of legal opinion practice.

14.     I have practiced corporation and securities law for more than 35 years. I have represented domestic and international acquiring and acquired clients in mergers and acquisition transactions involving acquisition amounts from less than $1 million to more than $1 billion. Included in that work was the participation in and supervision of others with respect to pre-transaction due diligence and the rendering of reports pertaining to pre-transaction due diligence.

15.     I have extensive experience in the area of corporate governance of both privately held and publicly traded corporations (including Fortune 500 companies), providing legal advice to Boards of Directors in matters involving significant transactions, corporate governance questions, derivative and class action shareholder suits, the payment of directors' expenses (including attorneys' fees), as well as the fiduciary duties of directors, officers and controlling shareholders and related matters. I also have extensive experience with the preparation of: (a) proxy statements; (b) Reports to the Securities and Exchange Commission; (c) reports to shareholders; (d) disclosures to shareholders; (e) notices of shareholder meetings, shareholder meeting minutes and shareholder resolutions; and (f) notices of board meetings, board meeting minutes and board resolutions. My firms and I have acted as general counsel for a number of

DECLARATION OF RICHARD T. McDERMOTT - 5

corporate clients, and I am aware of what the work of a general counsel entails, and the duties and responsibilities attendant thereto.

16.     I have experience advising the boards of directors of corporations in transactions, including, the board of directors of Fortune 500 companies. I also have extensive experience in providing advice to officers, boards of directors, shareholders (minority and majority shareholders) for corporations, including as to matters involving anticipated or actual litigation.

17.     I also have experience in personally serving on boards of directors. Both as a lawyer and Board Member, I have experience in establishing and maintaining proper corporate governance procedures, ratifying corporate actions, reviewing and analyzing financial statements, and addressing executive compensation matters (including employment agreements, stock option plans as well as bonus and profit sharing plans and pension plans), and questioning and conferring with CFOs. My financial statement and corporate tax experience includes such matters as determining the proper accounting, tax and antitrust regulatory treatment of acquisition transactions, the appropriate asset and good will allocation of the consideration paid for the business in asset, merger and stock transactions and various related matters. The Second Chapter of my casebook referred to in paragraph 11 above is entitled Valuation Of The Corporate Enterprise- Purpose and Methodology.

18.     I also have extensive experience in drafting, reviewing and interpreting: (a) certificates/articles of incorporation, bylaws, shareholder agreements, notices to shareholders, shareholder resolutions, notices to board members and board resolutions; and (b) ensuring that shareholder resolutions and board resolutions comply with a corporation's certificate/articles of incorporation, bylaws, and applicable restrictions under statutory and common law.

DECLARATION OF RICHARD T. McDERMOTT - 6

19.     I have extensive experience in domestic and international corporate finance, mergers and acquisitions, tender offers, strategic alliances and bankruptcy reorganizations.

20.     I have advised bank creditors with respect issues regarding lender liability and related matters.

21.     My experience in corporate law also includes, purchases and redemptions by a corporation of its own shares (and formulating and evaluating proposals therefor) from both substantial shareholders and the investing public in issuer tender offers and open market transactions, strategic alliances, going private transactions, bankruptcy reorganizations, the legal and equitable theories of piercing the corporate veil and alter-ego (as well as taking appropriate corporate action to prevent such claims), and other general corporate matters.

22.     I have experience addressing attorney-client privilege and work product issues for corporations, as well as matters pertaining to attorney and director conflict of interest issues.

23.     I have extensive experience in transactions as an opinion giver and as counsel for opinion recipients. I have prepared, delivered, or approved over 100 legal opinion letters in my career. My opinion experience includes preparing, reviewing, revising approving and delivering opinion letters, as well as determining conducting the required and necessary factual and legal investigations to support various opinions. I also served on the Committee that approved opinion letters at my former law firms. I have vast experience in determining the necessity for including qualifications, assumptions, exceptions and reasoning in opinion letters, as well as the ramifications of not inserting certain qualifications, assumptions and exceptions in opinion letters. I am familiar with the standard of care necessary for providing the required disclosures and reasoning to ensure that an opinion letter is not misleading.

DECLARATION OF RICHARD T. McDERMOTT - 7

9-ER-2090

24.     I also have extensive experience in representing my firm's corporate clients in all aspects of litigation matters, including, by way of illustration and without limitation, the following: (a) preparing engagement letters and addressing conflicts of interest and other ethical issues for civil matters; (b) conducting the preparatory factual and legal research supporting the various claims; (c) drafting complaints; (d) reviewing and analyzing the defendants' answers and defenses raised therein; (e) working on discovery matters, including motions for a protective order; (f) preparing and participating in successful settlement discussions; (g) preparing affidavits and memorandum of law in connection with, numerous motions relating to the pleadings, discovery matters (e.g.  motions to compel and for protective orders), summary judgement and pretrial orders; (h) researching and preparing trial briefs and supplemental trial briefs, as well as memorandums of law relating to motions made during trial; (i) preparing proposed jury instructions and special verdict questions; (j) preparing appellate briefs (including before the United States Supreme Court); (k) interviewing witnesses and marshaling the facts; (l) preparing for and participating in trials; and (m) litigating stockholder's appraisal proceedings relating to a public company merger and stockholder derivative class actions alleging corporate waste, conflicts of interest, non-disclosure and breach of fiduciary duty by directors and officers.

25.     I have experience rendering opinions on behalf of my firm to the Board of Directors of a corporation, whose directors had been sued, as to the propriety of the corporation advancing to its affected directors, officers and employees the expenses of defending shareholder actions in advance of the final resolution of those actions.

26.     I have extensive experience in working with corporations as a senior advisor with respect to threatened or pending derivative actions, including reviewing demand letters, conducting examinations of the relevant facts and law and advising corporations as to the

DECLARATION OF RICHARD T. McDERMOTT - 8

appropriate response or action as well as the need for the retention of separate counsel for various directors and officers.

27.     I have experience reviewing, interpreting and applying the applicable rules of professional conduct. I have experience in providing informed consent to clients to narrow or limit the scope of representation. I also have experience determining whether a limited scope of representation is permissible under the circumstances of the matter to which I am providing legal representation to a client.

28.     I have extensive experience representing multi-national corporations and clients with business interests, transactions and litigation in other states.

29.     I have experience in reviewing and approving billing records for attorneys' fees and resolving fee disputes, in my former roles and experience at my prior law firms.

30.     As a member of my Firm's Executive Committee, I called upon to participate in the resolution of a myriad of questions regarding conflicts of interest, duties and responsibilities of lawyers, disclosure to stockholders and the propriety of the Firm accepting various engagements.

31.     My litigation and advisory practice have formed the basis for my work as a Special Master for the New York State Supreme Court Appellate Division, First Department. My mediation approach includes an evaluation of the factual and legal strengths and weaknesses of the litigants' respective positions. In that regard, in addition to the challenged decision of the trial court, I review the submissions made therein, transcripts of arguments before the trial court, the respective appellate briefs and other relevant documents and filings to evaluate the merits of the parties' respective positions. I have experience in similar procedures in connection with my private mediation and arbitration work.

DECLARATION OF RICHARD T. McDERMOTT - 9

32.     I have experience in preparing appellate briefs, making oral arguments on appeals, and successfully obtaining reversals.

**Publications Authored**

33.     I am the author of Legal Aspects of Corporate Finance (5th ed. 2013) and a 2018 Supplement thereto which is published by Carolina Academic Press (and prior editions and supplements). It is my understanding that the book has been used at over twenty different law schools. I have authored other materials (including a Teacher's Manual for Legal Aspects of Corporate Finance).

34.     I am the co-author of Chapters 1 and 2 (Introduction and Elements of Opinion Letters, respectively) and author of Chapter 3 (Legal Opinions on Corporate Matters) of the Treatise: LEGAL OPINION LETTERS A Comprehensive Guide to Opinion Practice (Third Edition).

35.     I have been a member of the TriBar Opinion Committee for 29 years. The TriBar Opinion Committee is a nationally recognized committee that publishes Reports on various aspects of legal opinion practice. Although I was not listed as an author of any of the Reports, I was actively involved the preparation of the Reports which were published while I have served on the Committee. Thus, I am disclosing my involvement in those Reports.

**Definitions for Terms Used in this Declaration**

36.     Based on discovery issues (including the Miesen's Seventh Motion to Compel and other disputes), recently produced documents (including the Unredacted Billing Records discussed below), the production of newly disclosed privilege and work product provided to the Hawley Troxell Defendants' expert witnesses, and the yet-to-be completed depositions scheduled for January and early February, I have been unable to complete my Report as to my primary opinions

DECLARATION OF RICHARD T. McDERMOTT - 10

9-ER-2093

and my rebuttal opinions (I have over sixty pages of draft opinions that I am working on, which includes many opinions that I have been unable to complete). The purpose of this Declaration is to assist in obtaining the Withheld Privileged and Work Product Documents that I need to be provided in order to fully and fairly complete my opinions and to address the Reports submitted by the three expert witness for the Hawley Troxell Defendants and to fully and fairly present Miesen's claims in this Lawsuit.

37.     Attached as **Exhibit A** is a true and correct copy of the October 17, 2019 version of my Preliminary Expert Witness Report ("Expert Report"). The terms used in this Declaration are the same ones and have the same meaning as those contained in my Expert Report, which I repeat before for convenience of this Court, together with some newly defined terms:

a.     "AIA Corporations" means AIA Services and/or AIA Insurance.

b.     "AIA Disinterested Shareholders" means Miesen and the other disinterested minority shareholders of AIA Services.

c.     "AIA Insurance" means the defendant AIA Insurance, Inc., an Idaho corporation.

d.     "AIA Insurance's Guarantee of the Lancelot Loan" means AIA Insurance's guarantee of the Loan and Security Agreement between CropUSA as borrower and Lancelot Investor's Fund L.P. dated October 27, 2006.

e.     "AIA Services' 401(K) Plan" means the AIA Services Corporation 401(k) Profit Sharing Plan. John Taylor is presently the Trustee. AIA Services' 401(k) Plan holds 92,500 Series C Preferred Shares that have a face value of $920,000, plus all accumulated and undeclared dividends for approximately twenty years.  John Taylor recently stated the shares

DECLARATION OF RICHARD T. McDERMOTT - 11

9-ER-2095

were worthless. Miesen seeks to make the innocent plan participants whole (i.e., not John Taylor as he holds some of the shares and has done nothing but harm the plan participants).

       f.      "AIA Services" means the defendant AIA Services Corporation, an Idaho corporation.

       g.      "AIA Services' Amended Articles of Incorporation" mean the May 6, 1996 Amended and Restated Articles of Incorporation for AIA Services.

       h.      "AIA Services' Headquarters" means the real property located at 111 Main Street, Lewiston, Idaho and also known as the Lewis/Clark Plaza.

       i.      "*AIA Services v. Durant*" means *AIA Services Corp. v. Paul D. Durant, et al.*, Nez Perce County (Idaho) District Court Case No. CV-12-01483 (the reverse stock split lawsuit that Miesen and other shareholders prevailed on).

       j.      "Beck" means the defendant James W. Beck.

       k.      "Controlling AIA Defendants" means John Taylor, Beck, Cashman, Duclos and/or Henderson.

       l.      "CropUSA" means the defendant Crop USA Insurance Agency, Inc., an Idaho corporation.

       m.      "Cashman" means the defendant Michael W. Cashman.

       n.      "Donna Taylor" means the formal co-plaintiff in this Lawsuit, Donna J. Taylor, who is the ex-wife of Reed Taylor.

       o.      "*Donna Taylor v. AIA Services*" means *Donna Taylor v. AIA Services Corp.*, Nez Perce County District Court Case No. CV-09-02470 (the lawsuit Donna Taylor filed to enforce her board designee rights and to appoint a receiver for AIA Services).

DECLARATION OF RICHARD T. McDERMOTT - 12

p. "February 25, 2008 Amended AIA Engagement Letter" means the Amended Engagement Agreement that was dated February 22, 2008, which was allegedly dated effective back to November 1, 2007 and not signed until February 25, 2008.

q. "GemCap" means the defendant GemCap Lending I, LLC, a Delaware limited liability company.

r. "Guarantee Prohibition" means Sections 4.2.9(c) and the definitions in Section 4.2.10 in AIA Services' Amended Articles of Incorporation, which prohibited AIA Services and in effect any Subsidiary (as defined therein) from guaranteeing an obligation of any Person (as defined therein) other than a Subsidiary (as defined therein) without the consent of the holders of a majority of the outstanding shares of Series A Preferred Stock (who was Donna Taylor at relevant times).

s. "Hawley Troxell Defendants" means Babbitt, Ashby, Riley, other unnamed defendants who were attorneys at Hawley Troxell (including Patrick Collins, who is deceased) and/or Hawley Troxell and provided legal services (over fifteen different attorneys billed time on *Reed Taylor v. AIA Services* alone).

t. "Henderson" means the defendant Connie Taylor Henderson, who was formally known as Connie Wright Taylor and is John Taylor's former wife.

u. "John Taylor" means the defendant R. John Taylor.

v. "Lancelot Loan" means the Loan and Security Agreement for the $15,000,000 line-of-credit between CropUSA as borrower and Lancelot Investor's Fund L.P. dated October 27, 2006. The Lancelot Loan is also referred to as the "Surge" Loan in various communications and documents.

DECLARATION OF RICHARD T. McDERMOTT - 13

w.      "Lawsuit" means the instant lawsuit, *Dale L. Miesen v. Hawley Troxell Ennis & Hawley, LLP, et al.*, U.S. District Court Idaho Case No. 1:10-cv-00404-DCN CWD.

x.      "Legal Opinion" or "Legal Opinions" means a third-party closing legal opinion(s) for a transaction. A Legal Opinion may only be relied upon by the addressee or other permitted party and only addresses documents and legal issues as of the date of the Legal Opinion. There are a number of Legal Opinions at issue in this Lawsuit.

y.      "May 2, 2007 AIA Engagement Letter" means Engagement Letter between Hawley Troxell and the AIA Corporations dated May 1, 2007, which was not allegedly signed by John Taylor until May 2, 2007.

z.      "Miesen" means the plaintiff Dale L. Miesen.

aa.     "Mr. Lidstone" means Herrick K. Lidstone, Jr., who is one of the Hawley Troxell Defendants' legal malpractice expert witnesses. Attached as **Exhibit B** is a true and correct copy of Mr. Lidstone's Expert Witness Report dated October 17, 2019 (the "Lidstone Report").

bb.     "Mr. Pinkerton" means Keith A. Pinkerton, who is the Hawley Troxell Defendants' accounting/valuation expert witness. Attached as **Exhibit C** is a true and correct copy of Mr. Pinkerton's Expert Witness Report dated October 18, 2019 (the "Pinkerton Report").

cc.     "Mr. Remele" means Lewis A. Remele, Jr., who is one of the Hawley Troxell Defendants' legal malpractice expert witnesses. Attached as **Exhibit D** is a true and correct copy of Mr. Remele's Expert Witness Report dated October 8, 2019 (the "Remele Report").

DECLARATION OF RICHARD T. McDERMOTT - 14

dd.    "Privilege Logs" means the communications and documents which are identified in the Hawley Troxell Defendants' Itemized Privilege Log provided on March 26, 2019, the Hawley Troxell Defendants' Supplemental Itemized Privilege Log provided on October 9, 2019, and the Controlling AIA Defendants Privilege Log served on January 31, 2019.

ee.    "Riley" means the defendant Richard A. Riley.

ff.    "RPC" or "RPCs" or "Rule of Professional Conduct" or "Rules of Professional Conduct" mean one or more of the Idaho Rules of Professional Conduct.

gg.    "Unredacted Billing Records" means the Hawley Troxell Defendants' billing records in unredacted form produced by the Controlling AIA Defendants on December 27, 2019. The Hawley Troxell Defendants previously produced a heavily redacted form of their billing records. *See* Dkts. 449-82–88.

hh.    "Withheld Privileged and Work Product Documents" mean the alleged privileged information and work product documents involving the work and communications of the Hawley Troxell Defendants, which have not been produced or otherwise made available to Miesen in this Lawsuit, including the privileged and work product information involving all of the many attorneys and matters referenced in the redacted billing records,[1] Unredacted Billing Records and in the Privilege Logs produced in this Lawsuit as well as the privileged communications and work product involving the Hawley Troxell Defendants, which have been withheld by the Hawley Troxell Defendants and the other defendants in this Lawsuit.

---

[1] Dkts. 449-82–88.

DECLARATION OF RICHARD T. McDERMOTT - 15

**9-ER-2098**

**Documents, Authorities and Information Considered for this Declaration**

38.     As indicated in my Expert Report (Exhibit A hereto), I have reviewed countless documents, cases, authorities and Rules of Professional Conduct (including the terminology and comments thereto). I incorporate by referenced herein my entire Expert Report (Exhibit A hereto) verbatim and adopt the same as my testimony in this Declaration.

39.     The Hawley Troxell Defendants have asserted a number of defenses that have placed privilege at issue, including by alleging that they properly discharged their duties after taking directions from their clients, that there was a so-called limited scope of representation in *Reed Taylor v. AIA Services* and that they had never served as general counsel for the AIA Corporations or CropUSA.[2] While it is undisputed that Riley had been general counsel for the AIA Corporations when he was an attorney at Eberle Berlin,[3] the issue is whether his role as general counsel continued after he joined Hawley Troxell in 1999. In connection with the Hawley Troxell Defendants' defenses, they have voluntarily produced a number of privileged and work product documents to Miesen. The Controlling AIA Defendants have asserted "advice of counsel" defenses and incorporated by reference all of the privilege and work product produced by the Hawley Troxell Defendants into their privilege waiver disclosures. In addition, Miesen's claims against the Hawley Troxell Defendants and the Controlling AIA Defendants involve privileged and work

---

[2] While whether or not the Hawley Troxell Defendants had ever acted as general counsel for the AIA Corporations is a distinction without a difference because the issues raised by Miesen and in my Expert Report were directly or implicitly at issue and within the Hawley Troxell Defendants' scope of representation and attendant duties owed, I must nevertheless fully and fairly address the Hawley Troxell Defendants' defense that they were never general counsel.

[3] In 1995, Riley, Turnbow and Eberle Berlin acknowledged that "We have acted as general counsel for [AIA Services] in connection with the transactions contemplated by this Agreement." Dkt. 390-8, p. 1. Accordingly, there can be no argument or dispute that Riley has previously acted as general counsel for AIA Services and it follows that his role as general counsel continued after he joined Hawley Troxell based on the Unredacted Billing Records alone.

DECLARATION OF RICHARD T. McDERMOTT - 16

product information, including claims for legal malpractice and breaches of fiduciary duties against the Hawley Troxell Defendants. Consequently, privilege and work product are at issue in this Lawsuit.

40. In connection with the preparation of my Expert Report and this Declaration, I have been provided and considered tens of thousands of pages of documents in this Lawsuit, including all of the documents that Mr. Miesen has produced in this Lawsuit (which includes substantial documents produced by other defendants in this Lawsuit). I have also been provided with and considered every docket filing in this Lawsuit (including the affirmative defenses asserted by the Hawley Troxell Defendants and the Controlling AIA Defendants) and the discovery requests and responses thereto (including the privilege waiver disclosures provided by the Hawley Troxell Defendants and the Controlling AIA Defendants). The subject matters of the Hawley Troxell Defendants' privilege waivers, which the Controlling AIA Defendants incorporated by reference,[4] included the following broad subjects:

> **Scope of Representation by Hawley Troxell.** The Hawley Troxell Defendants were never engaged, and did not serve, as general counsel for AIA Services Corporation, AIA Insurance, Inc., or CropUSA Insurance Agency, Inc., and did not supervise, direct or provide legal representation with respect to the day-to-day operations of any of those corporations.

> **Limited Scope of Engagement.** The Hawley Troxell Defendants were never engaged, and did not serve, as counsel for any individual officer, director, employee, or shareholder of AIA Services Corporation, AIA Insurance, Inc., or CropUSA Insurance Agency, Inc., in connection with any litigation or transaction alleged in plaintiff's Third Amended Complaint (the "TAC").

> **Duty of Loyalty.** The Hawley Troxell Defendants duty of loyalty was owed to its clients, AIA Services Corporation, AIA Insurance Agency, Inc., and CropUSA. The Hawley Troxell Defendants property reported to and received directions from the officers and directors of its clients.

---

[4] 6/18/2019 Defendants: CropUSA Insurance Services, LLC.; CropUSA Insurance Agency, Inc.; Connie Taylor Henderson; R. John Taylor; Michael W. Cashman Sr.; and James Beck's First Amended and Supplemental Privilege Waiver Identifications, p. 4.

DECLARATION OF RICHARD T. McDERMOTT - 17

**Direction by Authorized Representatives of Clients.** The objectives of Hawley Troxell's former clients, AIA Services Corporation and AIA Insurance, Inc., in the Underlying Case and other matters were determined by the clients, acting through their authorized constituents.

**Duty to Abide by Objectives of Clients.** As to the specific matters where the Hawley Troxell Defendants were engaged, they abided by their clients' decisions concerning the objectives of their representation.

**No Representation by Hawley Troxell regarding Reverse Stock Split of GemCap Loan/Settlement.** The Hawley Troxell Defendants did not represent AIA Services Corporation, AIA Insurance, Inc., or CropUSA Insurance Agency, Inc., in connection with the reverse stock split or the GemCap loan and settlement.

**Engagement with respect only to Specific Litigation or Transactions.** The Hawley Troxell Defendants were retained from time to time as outside counsel by AIA Services Corporation, AIA Insurance, Inc., or CropUSA Insurance Agency, Inc., on a limited scope basis with respect to specific litigation or transactions. Generally, the Hawley Troxell Defendants provided written engagement letters detailing the limited scope of each engagement.

**Waiver of Alleged Conflict of Interest.** In the Underlying Case the defendants who entered into a Joint Defense Agreement and Tolling Agreements waived any alleged conflict of interest arising from or in connection with Hawley Troxell's defense of AIA Services Corporation and AIA Insurance and the defense as local counsel of CropUSA, and agreed to combine their efforts as a joint defense group to defeat the claims of Reed Taylor (represented by Roderick Bond).

**Lack of Duty to Investigate Matters Outside of Attorney's Representation.** The Hawley Troxell Defendants were not required to investigate, or to disclose to or advise any one or more minority shareholders of AIA Services Corporation with respect to, any alleged act or omission by an officer or director of AIA Services Corporation or AIA Insurance, Inc., that may have occurred unrelated to the particular matters concerning which the Hawley Troxell Defendants were retained.

**Proper Basis for Joint Representation of AIA and CropUSA.** In prior litigation (the "Underlying Case") instigated against AIA Services Corporation, AIA Insurance, Inc., CropUSA Insurance Agency, Inc., and others by Reed Taylor (represented by Roderick Bond), the defendants asserted common legal and factual defenses. In order to facilitate the sharing of documents and information, the fair and expeditious conduct of discovery, and the administration of their common interest in the defense of such litigation, the defendants in the Underlying Case properly entered into a Joint Defense Agreement and related Standstill and Tolling Agreements pursuant to which possible claims by AIA Services Corporation

DECLARATION OF RICHARD T. McDERMOTT - 18

against the other defendants were preserved until final resolution of the Underlying Case.

**Duties to Client.** The Hawley Troxell Defendants had a duty in accordance with the terms of their engagement to represent their clients vigorously and to defend against the claims of Reed Taylor (represented by Roderick Bond) in a diligent and competent manner.

**Litigation Estoppel.** In connection with lawsuits in which the Hawley Troxell Defendants were retained as defense counsel for AIA Services Corporation and/or AIA Insurance, Inc., the former clients of the Hawley Troxell Defendants authorized and participated in the defense of such litigation, accepted the benefits of such representation, and are now estopped from making any claim for legal malpractice or other alleged wrongdoing on the part the Hawley Troxell Defendants.

**Running of Statute of Limitation.** The statutes of limitation applicable to any claims of legal malpractice, breach of fiduciary duty or fraud expired prior to the filing of the Complaint.[5]

41.     Although the subject matters listed above are extremely broad, the Hawley Troxell Defendants and the Controlling AIA Defendants produced only a limited number of privileged and work product documents on each subject.  However, the purpose of this Declaration is not to exhaustively address each of the subject matter waivers quoted above.

42.     As noted above, I have been provided, reviewed and considered the Lidstone Report (Exhibit B hereto), the Pinkerton Report (Exhibit C hereto) and the Remele Report (Exhibit D hereto), and I have been provided with the documents that were recently produced by them in response to Miesen's subpoenas (which include additional privilege and work product information that had not been previously produced to us).

43.     The Controlling AIA Defendants (Daniel Glynn's clients) voluntarily produced all of the Unredacted Billing Records for the Hawley Troxell Defendants in unredacted form on

---

[5] *See generally* 3/21/2019 Hawley Troxell Defendants' First Amended and Supplemental Privilege Waiver Identification; 6/30/2019 Hawley Troxell Defendants' Second Amended and Supplemental Privilege Waiver Identification.

DECLARATION OF RICHARD T. McDERMOTT - 19

**9-ER-2102**

December 27, 2019.  I have reviewed those Unredacted Billing Records (although I have not had sufficient time to review them all in detail and analyze them as to other facts). The Unredacted Billing Records confirm my need to review all applicable privilege and work product referenced in those Unredacted Billing Records and the privilege logs produced to date for the matters and work reflected in those records.

44.     I have reviewed Rules 502, 510 and 513 of the Idaho Rules of Evidence.

45.     I have reviewed Rules 501 and 502 of the Federal Rules of Evidence.

46.     I have reviewed *Skelton v. Spencer*, 98 Idaho 417, 565 P.2d 1374 (1977), *Weil v. Investment/Indicators, Research and Mgmt., Inc.*, 647 F.2d 18 (9th Cir. 1981), *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992), *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975) and related cases and authorities regarding "at issue" and "subject matter" waivers of privilege. There can be no doubt that the Hawley Troxell Defendants and Controlling AIA Defendants have interjected privilege and work product into this Lawsuit.

47.     I have also reviewed *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970) ("*Garner*") and related cases and authorities applying and interpreting "good cause" and the related factors established in *Garner*.

48.     I have reviewed the applicable RPCs, including RPC 1.2 (2004). RPC 1.2(c) (2004) provided "A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent." Under the "Terminology" of 2004 RPCs, "'Informed consent' denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." The Comments to RPC 1.2 (1986) state, *inter alia*,

DECLARATION OF RICHARD T. McDERMOTT - 20

[9] All agreements concerning a lawyer's representation of a client must accord with the Rules of Professional Conduct and other law. See, e.g., Rules 1.1, 1.8 and 5.6.

[11] When the client's course of action has already begun and is continuing, the lawyer's responsibility is especially delicate. The lawyer is required to avoid assisting the client, for example, by drafting or delivering documents that the lawyer knows are fraudulent or by suggesting how the wrongdoing might be concealed…

In order for a limited scope of representation to exist, the attorney must clearly delineate the terms of the limited scope of representation and obtain client consent after advising the client of the benefits and risks of the proposed limited scope of representation.[6]

49.      I have reviewed *Taylor v. Bell*, 185 Wash. App. 270, 289, 340 P.3d 951, 961-62 (2014), *review denied*, 183 Wn.2d 1012, 352 P.3d 188 (2015) (although a "lawyer was permitted to 'limit the objectives of the representation if the client consents after consultation'… We begin by examining what was said and done by the parties..." in order to determine whether the scope of representation was allegedly limited). As discussed below, the *Bell* case is instructive in determining whether the Hawley Troxell Defendants' scope of representation was allegedly limited in *Reed Taylor v. AIA Services.*

50.      Black's Law Dictionary defines "general counsel" as "A lawyer or law firm that represents a client in all or most of the client's legal matters, but that sometimes refers extraordinary matters — such as litigation and intellectual-property cases — to other lawyers." *Counsel*, Black's Law Dictionary (11th ed. 2019). There is substantial evidence that the Hawley Troxell Defendants

---

[6] In my Expert Report, I opine that the alleged limited scope of representation that the Hawley Troxell Defendants alleged existed would have been unreasonable under the circumstances. While the focus of this Declaration is, in part, to obtain the Withheld Privileged and Work Product Documents in order to determine whether the alleged limited scope of representation existed, the Withheld Privileged and Work Product Documents will also be important to further establish that the alleged limited scope of representation would have been unreasonable and that the Hawley Troxell Defendants separately assumed duties by voluntarily performing work outside of the alleged limited scope of representation (assuming that they established at trial that one existed

DECLARATION OF RICHARD T. McDERMOTT - 21

handled substantially all of the legal work for the AIA Corporations.

51.     At John Taylor's deposition taken in 2016 for the lawsuit brought by GemCap against the law firm of Quarles & Brady and its attorney James Gatziolis, John Taylor voluntary testified that the Hawley Troxell Defendants were "general counsel" for the AIA Corporations and CropUSA (contrary to the position taken by the Hawley Troxell Defendants):

> Q. In 2006, October 27, 2006, Quarles & Brady did an opinion letter with the Surge loan. Do you recall that?
> A. I recall there was an opinion, yes.
> Q. And it's to Lancelot Investors Fund and then AGM, LLC. Do you recall, that for $15 million revolving loan?
> A. I believe so, yes.
> Q. And it says on Quarles & Brady's letterhead, we have served as special counsel to CropUSA Insurance Agency, an Idaho corporation, quote, the borrower; AIA Insurance, Inc., an Idaho corporation, the corporate guarantor; and R. John Taylor -- Taylor in connection with a $15 million revolving loan.
> Q. Do you know what is meant by "special counsel"?
> A. For this purpose?
> Q. Yes.
> A. For this -- for this purpose, I believe it meant for this transaction.
> Q. Okay. Just solely the transaction?
> A. (Witness nods head.)
> Q. Did you ever hear Jim Gatziolis refer to -- refer to its clients affiliated with you, meaning Crop, AIA, et cetera, as special counsel, other than this letter?
> A. No, I don't think so.
> Q. Okay.
> A. Special as -- in Idaho -- I know that the attorneys often use that in Idaho because -- to differentiate from a general counsel, which has -- which is like a -- your attorneys -- helps you with the minutes and all that kind of stuff, the general attorney that you use all the time. ***Hawley Troxell, for example, was our general counsel for years***.
> Q. Okay.[7]

---

[7] GC0748428-29 (Emphasis supplied). While the above testimony taken on its own was not sufficient for me to conclude that the Hawley Troxell Defendants had acted as general counsel for the AIA Corporations and CropUSA Insurance Agency (especially with John Taylor's lack of credibility on many issues), after reviewing the evidence available and in particular the Unredacted Billing Records produced by Mr. Glynn on December 27, 2019, I am now able to opine that the Hawley Troxell Defendants did act as general counsel as discussed below. Nevertheless, it is still imperative for me to review the Withheld Privileged and Work Product

DECLARATION OF RICHARD T. McDERMOTT - 22

52.    Despite John Taylor's testimony above, the Hawley Troxell Defendants deny that they were ever general counsel for the AIA Corporations and CropUSA—an assertion that is contained within their subject matter waiver entitled "Scope of Representation by Hawley Troxell."

**Testimony and Opinions Pertaining to Privilege and Work Product Information**

53.    Based upon my education, training, knowledge, and experience, together with the authorities, facts, documents, and data that I have reviewed, considered, assumed, relied upon, and disclosed in this Declaration and in my Expert Report, I express the opinions set forth in Sections I, X, XI, XII and XIII of my Expert Report (Exhibit A hereto), which are incorporated by reference herein, and the following opinions:

54.    I am submitting this Declaration in support of Mr. Miesen's efforts to show "good cause" under Rule 502(d)(6) of the Idaho Rules of Evidence (the "I.R.E."), and in addition or in the alternative,  in order to show "good cause" under *Garner*[8] in order to obtain a court order to compel the production of the Withheld Privileged and Work Product Documents in order for Mr. Miesen to fairly and fully present his claims in this Lawsuit and in order for me to fully and fairly prepare and submit my Expert Report, including my primary opinions and my rebuttal opinions. For these same reasons, I am also submitting this Declaration in support of the need for this information under I.R.E. 502(d)(3) because this Lawsuit involves a series breaches of duties (including the standard of care) and fiduciary duties (including the duties of loyalty) owed by the Hawley Troxell Defendants to the AIA Corporations during the periods of time reflected in my Expert Report. In addition, the Hawley Troxell Defendants and the Controlling AIA Defendants

---

Documents to fully and fairly address the issue and for the reasons stated below.
[8] *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970).

DECLARATION OF RICHARD T. McDERMOTT - 23

have placed privilege and work product at issue in various defenses in this Lawsuit (including in the Remele Report and the Lidstone Report) and have "selectively" waived privilege and work product to support their defenses. That "selective" waiver of privilege and work product has unfairly prejudiced Miesen and me because we have not been able to review and consider the Withheld Privileged and Work Product Documents; rather, we have only been permitted to review the limited privilege and work product information selectively voluntarily produced by the Hawley Troxell Defendants and the Controlling AIA Defendants. In order to rectify this unfairness, we are requesting that this Court compel the production of the Withheld Privileged and Work Product Documents evidenced in the broad subject matters asserted by the Hawley Troxell Defendants and the Controlling AIA Defendants in their privilege waiver disclosures quoted in Paragraph 40 above.[9]  I need to be provided with all of the Privileged and Work Product Documents in order to fully and fairly address the subject matters waived by the Hawley Troxell Defendants and the Controlling AIA Defendants. After considering all of the broad subject matters waived, I am unable to think of any privileged or work product information that should not be produced—it is all at issue based on the broad subject matters waived and based on the substance and nature of Miesen's claims (including claims for legal malpractice and breaches of fiduciary duties.

---

[9] *See generally* 3/21/2019 Hawley Troxell Defendants' First Amended and Supplemental Privilege Waiver Identification; 6/18/2019 Defendants: CropUSA Insurance Services, LLC.; CropUSA Insurance Agency, Inc.; Connie Taylor Henderson; R. John Taylor; Michael W. Cashman Sr.; and James Beck's First Amended and Supplemental Privilege Waiver Identifications; 6/30/2019 Hawley Troxell Defendants' Second Amended and Supplemental Privilege Waiver Identification. These privilege waiver disclosures are attached to the Declaration of Roderick Bond.

DECLARATION OF RICHARD T. McDERMOTT - 24

55.     For the reasons stated in this Declaration and in my Expert Report,[10] Miesen's claims are meritorious (i.e., are colorable), not being pursued for any improper or unlawful purposes, and fully supported by the evidence and authorities. Miesen is pursuing meritorious claims against the Hawley Troxell Defendants for legal malpractice, breaches of fiduciary duties, aiding and abetting and declaratory relief. For this reason alone, I need to be provided all of the Withheld Privileged and Work Product Documents in order to fully and fairly consider all of the facts (including what was said and done) and to fully and fairly prepare all of my opinions. Miesen is also pursuing meritorious claims against the Controlling AIA Defendants for breaches of fiduciary duties, fraud, aiding and abetting, declaratory relief and other claims. Because the Hawley Troxell Defendants and the Controlling AIA Defendants have injected privilege and work product as issues pertaining to their defenses to this Lawsuit, it is only fair that they be ordered to produce all of the Withheld Privileged and Work Product Documents in order for me and Miesen to fully and fairly address the defenses and the opinions of the Hawley Troxell Defendants' expert witnesses.[11] If not, Miesen and I will be handicapped and prejudiced because we will not be permitted to review all of the applicable privilege and work product to fully and fairly what was said and done by the Hawley Troxell Defendants and the Controlling AIA Defendants.

56.     In my opinion, privilege and work product has been withheld and concealed from Miesen to the detriment of the AIA Corporations; the Withheld Privileged and Work Product Documents should be produced to Miesen so that he and I are able to fully and fairly consider the

---

[10] My Expert Report contains many opinions throughout the Report, including in the analysis portion of my Expert Report. The Remele Report and Lidstone Report do not address or rebut much of my analysis and many of my opinions. *Compare* Exhibit A hereto *with* Exhibits B-D hereto.

[11] It is notable that the other defendants did not present any expert reports in response to my Expert Report thereby conceding that my analysis and opinions are correct.

DECLARATION OF RICHARD T. McDERMOTT - 25

information for the presentation of his claims and my opinions in effort to make the AIA Corporations whole, especially when those corporations have been decimated. In fact, the AIA Corporations generated a mere $123,572 in gross revenues in 2017 with a reported taxable income of only $15,282, according to the tax returns most recently produced.[12] In other words, the primary remaining assets of the AIA Corporations are the claims Miesen is pursuing on their behalf against the defendants in this Lawsuit (which could exceed $50 million). The successful prosecution of Miesen's claims in this Lawsuit is critical to making the AIA Corporations partially whole, which would enable them to pay the over $2,000,000 owed to innocent preferred shareholders, pay any bona fide creditors (GemCap is not one) and make a distribution to innocent common shareholders, including Miesen (he paid approximately $500,000 in consideration for his common shares over twenty years ago and he has not received a penny in dividends). Indeed, John Taylor recently advised the innocent former employees holding over $1,500,000 in stated value Series C Preferred Shares, plus mandatory accumulated but undeclared and unpaid dividends, that the shares were worthless. Miesen's claims in this Lawsuit are the last hope of those former employees of ever receiving any payment for their retirement funds and the innocent common shareholders of ever receiving any dividends or distributions for their common shares.[13]

57.     As a result of the misconduct of the Controlling AIA Defendants and the malpractice and other misconduct of the Hawley Troxell Defendants discussed in detail and supported by the extensive factual analysis and legal authorities in my Expert Report, the last chance of recovery for the AIA Disinterested Shareholders and the 401(k) retirement plan participants of AIA Services (nearly all of such participants are former employees of modest means

---

[12] In 2017, the AIA Corporations reported a grand total of only $123,572 in revenues according to AIA Services' 2017 federal tax returns signed on October 12, 2018. AIAS_0000158.

[13] *See, e.g.,* Dkt. 719-2.

DECLARATION OF RICHARD T. McDERMOTT - 26

who years ago invested in their employer) are from the faithless Controlling AIA Defendants and/or the Hawley Troxell Defendants who have repeatedly placed their interests above their professional and legal responsibilities to the AIA Corporations. The is not a case where the victimized corporation will continue on its way and possibly prosper after this Lawsuit is over. This is the last stop on the train for the AIA Corporations and those injured shareholders and retirement plan participants—this is the end of the line.[14]

58.    In an effort to counter the opinions that I expressed in my Expert Report, the Hawley Troxell Defendants' have been asserting a series of evolving defenses for their failures to meet the standard of care and comply with their fiduciary duties in *Reed Taylor v. AIA Services*. For example, the Hawley Troxell Defendants allege that they: (a) had a limited scope of representation by reason of not being general counsel, (b) were retained on a limited scope basis for specific litigation or transactions, and (c) were only retained to defend Reed Taylor's "creditor claims,"[15] as recently alleged for the first time in Riley's deposition change sheets.  As explained below, the "creditor claims" incarnation, upon which the Remele Report relies[16] is largely based upon Riley's materially altered deposition testimony. This suggests that Riley changed his testimony in order to assist Mr. Remele because Riley's changes were untimely and were provided weeks after the first two versions of my Expert Reports were delivered. However, as revealed in the recently produced Unredacted Billing Records (which were not produced by the Hawley Troxell Defendants),[17] the Hawley Troxell Defendants work involved much more than "creditor

---

[14] While not at issue in this motion, it is equally important that the AIA Corporations are relieved of any financial obligations to GemCap and recovery of the money unlawfully paid to GemCap through the unlawful Settlement Agreement (as also addressed in my Expert Report).

[15] Dkt. 759-4.

[16] The term "creditor claim" is used ten times in the Remele Report.

[17] The reason why the Controlling AIA Defendants voluntarily produced the Unredacted Billing Records is unknown. What is known, however, is that the Hawley Troxell Defendants did not

DECLARATION OF RICHARD T. McDERMOTT - 27

claim" For these reasons alone, I need to be provided with all of the Withheld Privileged and Work Product Documents so that I am able to see what was said and done by the Hawley Troxell Defendants.

59. On December 27, 2019, after Mr. Bond's repeated requests, the Controlling AIA Defendants (but, as stated above, not the Hawley Troxell Defendants themselves) produced the Unredacted Billing Records. I will be heavily incorporating the Unredacted Billing Records into the next version of my Expert Report and will be completing and preparing additional primary opinions and rebuttal opinions as a result of receiving this newly produced privileged information. Those Unredacted Billing Records are at issue and will be at issue and extensively quoted and relied upon in my next Expert Report. As illustrated below, the Unredacted Billing Records provide a road map for the Withheld Privileged and Work Product Documents we need to be provided in order to further establish how the Hawley Troxell Defendants breached the standard of care, the duties of loyalty and were otherwise protecting, covering up and substantially assisting the Controlling AIA Defendants in breaching their fiduciary duties and committing other torts, all to the detriment of their clients, the AIA Corporations, as well as the AIA Disinterested Shareholders (including Miesen).

60. In order for me and Mr. Miesen to fully and fairly present his claims (including his claims against the Hawley Troxell Defendants and the Controlling AIA Defendants), to fully prepare and complete my primary opinions and to prepare and complete my rebuttal opinions to the Remele Report, Lidstone Report and Pinkerton Report, it is imperative that we be provided with and the opportunity to review *all* of the Withheld Privileged and Work Product Documents

---

want those records to see the light of day since they declined to voluntarily produce them to support their defenses.

DECLARATION OF RICHARD T. McDERMOTT - 28

pertaining to what was said and done by the Hawley Troxell Defendants, including for all work and communications referenced in the Unredacted Billing Records, including for the 2006 Lancelot Legal Opinion, *Reed Taylor v. AIA Services*, *Donna Taylor v. AIA Services*, *AIA Services v. Durant*, and the other matters in the Hawley Troxell Defendants' Unredacted Billing Records. To illustrate by way of just a few of many examples, in order to fully and fairly address the Hawley Troxell Defendants' defenses and the Remele Report, I need to determine:

(a)     what the Withheld Privileged and Work Product Documents reveal concerning how, as reflected in the Unredacted Billing Records, the Hawley Troxell Defendants actually analyzed, evaluated, researched, and communicated with each other and/or advised the AIA Corporations,[18] regarding the *Reed Taylor* case, with respect to, *inter alia*, the allegations of breaches by the Controlling AIA Defendants of their duties of due care and loyalty to the AIA Corporations; the claims, included, but are not limited to, (i) the Controlling AIA Defendants' misappropriation of Crop USA and their illegal transfer of millions of dollars of assets of the AIA Corporations to Crop USA; (ii) the Controlling AIA Defendants causing AIA Insurance to purchase, in 2004, the 205,000 Series C shares with $1,510,693 of funds which had been unlawfully taken from AIA Insurance, in this connection I also need to examine the Privileged and Work Product Documents reflecting the Hawley Troxell Defendants' analysis, evaluation and communications pertaining to Babbitt's October 27, 2008 Memorandum to the purported "Boards" of the AIA Corporations regarding the "unwinding" of that unlawful Series C purchase (the transaction violated, *inter alia*, AIA Services' Amended Articles of Incorporation); and (iii) CropUSA's book of business that had been essentially stolen from the

_____

[18] When I refer to communications with the AIA Corporations, I am not conceded or admitting that any communications were actually provided to them because, under the adverse interest doctrine, the AIA Corporations actually knew nothing about what was said or done.

DECLARATION OF RICHARD T. McDERMOTT - 29

AIA Corporations and sold to the Hudson  Insurance Company in 2008, including but not limited to, documents pertaining to the letter dated August 21, 2008 from Michael S. Bissell to Babbitt and Ashby, among others, referring to the illegality of the sale to Hudson Insurance Company (the Unredacted Billing Records reveal that Riley was involved in transaction document review and was  communicating with counsel involved in the transaction) and (iv) the documents reflecting the Hawley Troxell Defendants' analysis, evaluation and communications pertaining to the advancement of funds to the Controlling AIA Defendants for legal fees and other matters which are the subject of this Lawsuit (the Unredacted Billing Records reflect that the Hawley Troxell Defendants devoted considerable time to the matter of advancement of legal fees);

(b) what the Withheld Privileged and Work Product Documents reveal concerning how, as reflected in the Unredacted Billing Records, the Hawley Troxell Defendants actually analyzed, evaluated, researched, and communicated with each other and/or advised the AIA Corporations, regarding the matters at issue in *Reed Taylor v. AIA Services*, with respect to, *inter alia,* the allegations of breaches by the Hawley Troxell Defendants of the duties of due care and the fiduciary duties they owed to the AIA Corporations (again, the Unredacted Billing Records reveal that the Hawley Troxell Defendants devoted considerable time to this matter);

(c) what the Withheld Privileged and Work Product Documents reveal concerning how, as reflected in the Unredacted Billing Records, the Hawley Troxell Defendants actually analyzed, evaluated, researched, and communicated with each other and/or advised the AIA Corporations regarding, the matters set forth in (i) the derivative demand letter dated July 21, 2008 sent by Reed Taylor, as a creditor, and Donna Taylor, as a shareholder, to the "boards" of the AIA Corporations; (ii) the preparation of Babbitt's letters dated July 22 and July 31, 2008,

DECLARATION OF RICHARD T. McDERMOTT - 30

respectively, to the Controlling AIA Defendants concerning the same; and (iii) the Petition For Independent Inquiry Pursuant to I.C. § 3-1-743 and I.C. § 30-1-744 and For Grant of Pending Motion to Stay Proceedings filed by the Hawley Troxell Defendants on August 14, 2008 (these are matters which also appear quite prominently in the Unredacted Billing Records) and the failure to ever pursue an independent inquiry or otherwise appoint an independent person to investigate the acts of malfeasance at issue in *Reed Taylor v. AIA Services*;

(d) what the Withheld Privileged and Work Product Documents reveal concerning how, as reflected in the Unredacted Billing Records, the Hawley Troxell Defendants actually analyzed, evaluated, researched, and communicated with each other and/or advised the AIA Corporations regarding, the response of those Corporations to the Complaint/Petition For Appointment Of A Receiver For AIA Services Corporation And Its Wholly Owned Subsidiary AIA Insurance in *Donna Taylor v. AIA Services*, including, *inter alia*, (i) to determine why the Hawley Troxell Defendants opposed Donna Taylor's preliminary injunction to appoint her designee, Patrick Moran, to the board of directors of AIA Services when he could have been the independent director that the company badly needed and he had been directed to look after the minority shareholders by Donna Taylor and , and (ii) to determine why the Hawley Troxell Defendants failed to take the opportunity to have a receiver appointed, which could have eliminated all of the problems and conflicts plaguing the Controlling AIA Defendants' control over the AIA Corporations (the appointment of a receiver would have prevented millions of dollars in damages being sought by Miesen, including for the over $20 million GemCap alleges it is owed and the millions siphoned off to John Taylor and entities that he controls (including the unlawful loans to Pacific Empire Radio Corp., which was owned in part by John Taylor and Connie Henderson);

DECLARATION OF RICHARD T. McDERMOTT - 31

(e) what the Withheld Privileged and Work Product Documents reveal concerning how the Hawley Troxell Defendants actually analyzed, evaluated, researched and communicated with each other and/or the AIA Corporations regarding the concern and resistance reflected in the Unredacted Billing Records regarding Donna Taylor's designation the Director, Patrick Moran, of AIA Services pursuant to the right granted to her under AIA Services' Amended Articles of Incorporation as the sole holder of Series A Preferred Stock of AIA Services (as discussed above) and why the Hawley Troxell Defendants did not insist upon the appointment of such a director when they first appeared as counsel in 2007;

(f) what the Withheld Privileged and Work Product Documents reveal concerning how the Hawley Troxell Defendants actually analyzed, evaluated, researched and communicated with each other and/or the AIA Corporations in opposing the intervention of Donna Taylor to protect the funds deposited in the court's registry and to prevent those funds from being unlawfully utilized by the Controlling AIA Defendants, which is precisely what occurred; and

(g) what the Withheld Privileged and Work Product Documents reveal concerning how the Hawley Troxell Defendants actually analyzed, evaluated, researched and communicated with each other and/ or the AIA Corporations and other counsel representing those corporations in connection with the reverse stock split that the Hawley Troxell Defendants suggested to the Controlling AIA Defendants as a means of eliminating derivative standing in this Lawsuit in Ashby's April 30, 2012 letter to them (the Unredacted Billing Records suggest that, at least in part, the letter was authored by Riley), including, without limitation, communications with other attorneys on this issue.

61. The Hawley Troxell Defendants assert a number of defenses that relate to an alleged limited scope of representation of the AIA Corporations. The relevance of, and the need for, the

DECLARATION OF RICHARD T. McDERMOTT - 32

Withheld Privileged and Work Product Documents are analogous to another case in which I was also an expert witness, *Taylor v. Bell,*[19] which provides an apt example of the importance of my being able to examine all of the Withheld Privileged and Work Product Documents, of which the items listed above are only a few examples. In *Bell*, the defendant law firm's alleged limited scope of representation defense was not established because the firm's billing records and the internal firm memoranda showed that in fact the work done by the lawyers went beyond the alleged limited scope of representation. One example of those documents was an internal law firm memorandum which, the court said, "indicates that [the law firm] was working on an issue that it now claims was exempted from the scope of representation by agreement"[20] The court said the issue should be resolved by "what was said and done by the parties," namely the broad language used in the representation agreement and the legal work actually performed by the law firm as reflected in the billing records and other documents. The rational of *Bell* is equally applicable to this Lawsuit where the broad language in the May 2, 2007 Engagement Letter (which was incorporated by reference into the subsequent February 25, 2008 Amended AIA Engagement Letter) describes the Hawley Troxell Defendants' engagement as to "advise the two corporate defendants in connection with above entitled litigation brought by Reed J. Taylor"[21] There is no mention of the scope of representation to being limited to "creditor claims" and the Hawley Troxell Defendants have asserted a moving target series of limited scope of representation defenses, as discussed above (e.g., Riley asserted for the very first time in his deposition change sheets that the scope of representation was limited to "creditor claims"). In my opinion, like *Bell*, the documents and Unredacted Billing Records do not support the Hawley Troxell Defendants' argument that they

---

[19] 185 Wash. App. 270, 340 P.3d 951 (Wash. Ct. App. 2014).
[20] 185 Wash. App. at 289, 340 p.3d at 962.
[21] HTEH000007 § A.

DECLARATION OF RICHARD T. McDERMOTT - 33

had an alleged limited scope of representation or that they were not general counsel for the AIA Corporations. Nevertheless, in order to fully and fairly address the Hawley Troxell Defendants' alleged limited scope of representation defense and related opinions in the Remele Report, I need to be provided with all of the Withheld Privileged and Work Product Documents in order to determine precisely what the Hawley Troxell Defendants said and did in the various matters in which they represented the AIA Corporations, including in *Reed Taylor v. AIA Services* and *Donna Taylor v. AIA Services*. It would be unfair for the Hawley Troxell Defendants to raise the defense that there was an alleged limited scope of representation or allege that they were not general counsel if they are not required to produce all of the Withheld Privileged and Work Product Documents instead of only producing "select" documents. . I have already been prejudiced by the Hawley Troxell Defendants' withholding of the Unredacted Billing Records, which were not produced until December 27, 2019 by the Controlling AIA Defendants (not, as stated above, by the Hawley Troxell Defendants). Those Unredacted Billing Records should have been produced long ago if the Hawley Troxell Defendants truly believed that there was a limited scope of representation or that they had not served as general counsel. The fact that the Hawley Troxell Defendants continue to withhold the Withheld Privileged and Work Product Documents suggests that they are concealing relevant information that does not support the existence of an alleged limited scope of representation, just as they had done by withholding the Unredacted Billing Records.

62.    In a related defense, the Hawley Troxell Defendants and their experts are also asserting that their duties and responsibilities were diminished because they were not general counsel to the AIA Corporations. The Hawley Troxell Defendants' position in this regard is illustrated by the following statement in the Remele Report:

DECLARATION OF RICHARD T. McDERMOTT - 34

> During the relevant time frame, beyond limited engagements to provide *discrete* legal advice to the AIA entities, the Hawley Troxell Defendants' primary role in representing the AIA entities was to serve as outside litigation counsel in defending the *Reed Taylor* and *Donna Taylor* cases.
>
> The theory being pursued in this case would impose a duty upon outside *litigation* counsel to be aware of and regulate the conduct of a corporate client without ever having been retained to serve as outside general counsel for that client and without ever being retained to give legal advice on the myriad of topics raised by Plaintiff's expert. [22]

The notion that the Hawley Troxell Defendants were not general counsel also forms the basis for Mr. Remele's opinion that they did not aid or abet the Controlling AIA Defendants' breaches of fiduciary duties.[23] Based upon my preliminary, but still ongoing, review of the recently produced Unredacted Billing Records received on December 27, 2019 (which were not produced by the Hawley Troxell Defendants), during the relevant time frame the Hawley Troxell Defendants were engaged in *at least* the following "general counsel" type of work:

- Insurance Regulatory Matters;

- Insurance Agency Agreement Matters;

- Indemnification and Advancement of Fees to Directors;

- Composition of Boards of Directors;

- Employee and Independent Contractor Matters;

- Preparation of Equity Incentive Plan for Crop USA, including Qualified and Non-Qualified Stock Option Plans, Restricted Stock Plan Employee Stock Purchase Plan, Necessity for Shareholder Approval thereof, Independent Committee Requirements and Compliance with Sections 162(m) and 409A of the Internal Revenue Code, as well issues under the Securities Exchange Act of 1934 and the Rules and Regulations of the Securities and Exchange Commission thereunder;

- Investment Advisory Matters Pertaining to Health Saving Account Administration;

- Federal and State Securities Law Matters;

---

[22] Remele Report, p. 9 (Emphasis supplied).
[23] *E.g.,* Remele Report, pp. 6-7.

DECLARATION OF RICHARD T. McDERMOTT - 35

- Advice Regarding Legality of Reissuance of Series A Preferred Stock of AIA Services;

- Shareholder Meeting and Proxy Holder Voting Rights Matters;

- Executive Employment Agreement Matters;

- Secured Lending Arrangements;

- Creditors' Rights Advice;

- Examination and interpretation of Articles of Incorporation and Bylaws;

- Consideration of Duties of Outside Counsel to Shareholders;

- Consideration of Liability of Law Firm for Not Bringing Claims Against Directors;

- Potential Liability of Outside Counsel When Trying to Represent Both Corporation and Directors and Fiduciary Duty to Client;

- General Post Illegality Decision Actions to be Taken by AIA Services, including Carrying Out of Reverse Stock Split;

- Consideration of Legal Impediments to Seating of Designated Board Member; and

- Consideration of Directors' Fiduciary Duties to Shareholders.

The above work demonstrates that the Hawley Troxell Defendants were intimately involved in many aspects of the legal affairs of the AIA Corporations and CropUSA, consistent with the role of general counsel. During my legal career, I have been a partner in law firms that acted as general counsel for a number of corporate clients. The variety and scope of the matters in which the Hawley Troxell Defendants were engaged on behalf of the AIA Corporations exceed that of many of my firms' general counsel engagements. Accordingly, in my opinion, the Hawley Troxell Defendants were general counsel to the AIA Corporations (consistent with Riley previously admitting that he

DECLARATION OF RICHARD T. McDERMOTT - 36

acted as general counsel for AIA Services when he was an attorney at Eberle Berlin),[24] as separately confirmed by John Taylor's 2016 deposition testimony,[25] and they assumed the duties and responsibilities attendant thereto. However, I need to review all of the Withheld Privileged and Work Product Documents in order to fully and fairly address Mr. Remele's opinions to the contrary that the Hawley Troxell Defendants were never general counsel for the AIA Corporations.[26] The necessity for me to be provided with all of the privilege and work product information is even more critical because, as stated above,  John Taylor testified recently that the Hawley Troxell Defendants were "general counsel" for the AIA Corporations.[27] While I agree with John Taylor's assessment that the Hawley Troxell Defendants' had previously acted as "general counsel" for the AIA Corporations, I need to be provided with the privilege and work product information to be afforded a fair opportunity to assess all of the relevant facts and information in order to fully and fairly address the "general counsel" issue based on Mr. Remele's contrary opinions. Moreover, I need to review all of the privilege and work product information to fully

---

[24] "General counsel" is defined as a law firm "that represents a client in all or most of the client's legal matters . . ." *Counsel*, Black's Law Dictionary (11th ed. 2019). In 1995 (less than three years before joining Hawley Troxell), Riley admitted that he was one of the attorneys who had acted "as general counsel for [AIA Services]..." Dkt. 390-8, p. 1.

[25] GC0748429.

[26] Mr. Remele was not provided with the unredacted billing records recently produced by the Controlling AIA Defendants on December 27, 2019 and many other relevant documents. I am unable to comprehend how Mr. Remele would have accepted his assignment, or rendered the opinions in his Report, without demanding that all relevant privileged information and related work product be produced to him or a legitimate reason be provided as to why such information was not provided (there could be no legitimate explanation because the Hawley Troxell Defendants had obtained an Order from this Court authorizing them to reveal any privileged and work product information that they deemed necessary for their defense. *See* Dkt. 466.

[27] On August 29, 2016, John Taylor, an experienced businessperson and a director of a publicly traded corporation, voluntarily testified that "***Hawley Troxell, for example, was our general counsel for years***." GC0748429 (Emphasis supplied). In other words, John Taylor voluntarily offered up this information and there is no way that he was confused or misunderstood a question.

DECLARATION OF RICHARD T. McDERMOTT - 37

and fairly address this issue and the Hawley Troxell Defendants are unfairly keeping this information secret. The communications will likely reveal substantial additional information and, based on the Hawley Troxell Defendants' refusal to produce the Unredacted Billing Records, it appears to be a foregone conclusion that the Withheld Privileged and Work Product Documents are problematic for the Hawley Troxell Defendants' defenses for the same reasons the Unredacted Billing Records are problematic for them. To date, the documents produced and the Unredacted Billing Records recently produced on December 27, 2019 do not support the Hawley Troxell Defendants' positions and provide insight as to why they are not voluntarily producing the Withheld Privileged and Work Product Documents. In my opinion, if the Hawley Troxell Defendants were truly not general counsel for the AIA Corporations and they had nothing to hide, they would have readily voluntarily produced the Withheld Privileged and Work Product Documents. This is what the plaintiff did in the *Bell* case that I was previously involved in—he voluntarily produced all privileged and work product information because he had nothing to hide.

63.     I also wish to point out that, as stated above, only a small portion of the documents that the Hawley Troxell Defendants claim are privileged has been produced pursuant to RPC 1.6(b)(5) on the ground that they believe the documents are necessary to establish a defense against the claims being asserted against them on behalf of the AIA Corporations. In this respect this Court's order of October 23, 2018 is particularly pertinent. The order states, *inter alia,* that:

> Further, pursuant to IRPC Rule 1.6(b)(5) and IRPC Rule 1.6(b)(6), the Hawley Troxell Defendants may produce documents and concerning information relating to their prior representation of their former clients to the extent the Hawley Troxell Defendants reasonably believe necessary (i) to establish a defense to plaintiff Miesen's derivative civil claims against the Hawley Troxell Defendants based upon conduct in which the former clients were involved, and (ii) to respond to plaintiff Miesen's allegations in this derivative action concerning the Hawley Troxell Defendants' representation of their former clients, and (iii) to comply with this

DECLARATION OF RICHARD T. McDERMOTT - 38

9-ER-2122

order.[28]

In other words, despite having a court order authorizing the Hawley Troxell Defendants to disclose to Miesen any and all privilege and work product information that they deem necessary for their defenses, the Hawley Troxell Defendants have only produced a small portion of "select" privilege and work product information that they allege support their defenses. It is not fair that I may only assess matters based on the limited privilege and work product that the Hawley Troxell Defendants have selectively disclosed when it is clear from the Unredacted Billing Records and the Privilege Logs that there is substantially more information available that is included in the Withheld Privileged and Work Product Documents. Again, if the Hawley Troxell Defendants have nothing to hide, they would have readily disclosed all of the privilege and work product information to Miesen because they would want him and this Court to know that they had nothing to hide. At a minimum, in my opinion and based on my experience, the fact that the Hawley Troxell Defendants have refused to produce all of the privilege and work product information suggests that there must be relevant and material privilege and work product information that undermines their defenses. Moreover, the Hawley Troxell Defendants have no ongoing and profitable relationship to protect with the AIA Corporations because those corporations have been decimated and because they have taken positions against the AIA Corporations in this Lawsuit (including arguing that the unauthorized Settlement Agreement and resulting judgment entered in favor of GemCap should be enforced).

64.     In my opinion, contrary to the Hawley Troxell Defendants' belief, much of the information that has been disclosed is actually adverse to the Hawley Troxell Defendants and, based upon the facts that I am aware of, do not support either their positions or the opinions of

---

[28]  Dkt. 466, p. 2.

DECLARATION OF RICHARD T. McDERMOTT - 39

**9-ER-2122**

their experts. To the contrary, that information supports my opinions. For example, the May 2, 2007 AIA Engagement Letter and the subsequent February 25, 2008 Amended AIA Engagement Letter demonstrate that conflicts of interest were not properly disclosed or waived and the scope of representation was not limited, as discussed in my Expert Report. By way of another example, the April 30, 2012 letter from Ashby to the "boards" of the AIA Corporations which, although self-serving in several respects, suggests that the AIA Corporations redeem Donna Taylor's Series A shares and also carry out a reverse stock split "to eliminate minority common shareholders"[29] and, as could have been the case with respect to a tender offer suggestion Ashby also made "moot derivative claims on behalf of the common shareholders."[30] In my opinion, this confirms, as the Unredacted Billing Records indicate, that the Hawley Troxell Defendants had no interest in protecting or enforcing the rights of their clients, the AIA Corporations, against the Controlling AIA Defendants. If they did, they would have been sternly advising John Taylor and Connie Henderson that a reverse stock split was improper and would violate AIA Services' Amended Articles of Incorporation and that they would take the matter up with the court or the highest authority of AIA Services (the shareholders, if necessary) to disclose the improper scheme to effectuate a reverse stock split.

65.     The Hawley Troxell Defendants could have produced their Unredacted Billing Records pursuant to this Court's order authorizing them to do so. It is now obvious why they did not do so[31] – the information contained in the Unredacted Billing Records wholly undermines the

---

[29] HTEH000259.

[30] HTEH000258.

[31] As stated above, the Billing Records were produced on December 27, 2019 by the Controlling AIA Defendants. The Hawley Troxell Defendants refused to produce them in an unredacted form. Dkts. 449-82–88. This is because the unredacted Billing Records do not support their positions or defenses. For these same reasons, I believe that the other Withheld Privileged and Work Product Documents will further undermine the Hawley Troxell Defendants' defenses and

DECLARATION OF RICHARD T. McDERMOTT - 40

justifications and defenses the Hawley Troxell Defendants have been asserting and also vitiates the opinions of Mr. Remele and Mr. Lidstone, from whom the Hawley Troxell Defendants also withheld the Unredacted Billing Records and all of the Withheld Privileged and Work Product Documents (the Hawley Troxell Defendants did produce some additional previously Withheld Privileged and Work Product Documents to Mr. Remele and Mr. Lidstone, which were intentionally withheld from Miesen until he subpoenaed the experts for their documents because the Hawley Troxell Defendants refused to produce them).

66.     In the light of this Court's order quoted in Paragraph 63 above (Dkt. 466), in my opinion, an attorney in the same or similar circumstances who had nothing to conceal would produce all of the documents and information that the attorney reasonably believed necessary to establish a defense. It is therefore reasonable to infer, particularly in the light of the information in the Unredacted Billing Records, that the Withheld Privileged and Work Product Documents are not helpful to the Hawley Troxell Defendants, but that does not mean that they should not be produced to Miesen. There appears to be no other plausible explanation. For the reasons stated above concerning the dire condition of the AIA Corporations (and of CropUSA for that matter), there is certainly no prospect of obtaining additional legal business from those entities. Nor is there any possibility that any business or prospects of the AIA Corporations will be adversely affected because it no longer has any such business. There are no trade secrets or other confidential information to protect.

67.     In addition to the above, as one of Miesen's expert witnesses, I have also been seriously disadvantaged by the Hawley Troxell Defendants' piecemeal disclosure of limited privileged and work product materials. If the Hawley Troxell Defendants truly believed that the

---

their experts' opinions.

DECLARATION OF RICHARD T. McDERMOTT - 41

9-ER-2125

evidence supported their alleged limited scope of representation and that they were never general counsel for the AIA Corporations, they should have produced all of the Withheld Privileged and Work Product Documents long ago because all of that information is relevant to both issues. Instead, I have had to complete portions of my Expert Report inefficiently and unfairly without the benefit of the Withheld Privileged and Work Product Documents. Even before the Controlling AIA Defendants produced the Unredacted Billing Records, it had become apparent that the Hawley Troxell Defendants have been also withholding documents they had previously provided to their experts and belatedly disclosed them to Miesen only in response to his subpoenas served upon Mr. Remele and Mr. Lidstone.

68.     In the time that I have had to begin to review the documents submitted in response to the subpoena duces tecum that Miesen served upon one of the Hawley Troxell Defendants' experts, Mr. Lidstone, I have discovered that he has been provided with documents that have not been provided to me (nor am I able to determine if they have even been disclosed in the Hawley Troxell Defendants' privilege log). For example, in connection with the preparation of the Lancelot Loan Legal Opinion, the Hawley Troxell Defendants prepared a chart which clearly reflects an awareness of AIA Insurance being a subsidiary of AIA Services and Donna Taylor's ownership of shares of the Series A Preferred Stock of AIA Services that should have led to the discovery (to the extent it was not already known by the Hawley Troxell Defendants) of the effect of the Guarantee Prohibition in AIA Services' Amended Articles of Incorporation upon AIA Insurance's Guarantee of the Lancelot Loan. This is directly contrary to the claim of the Hawley Troxell Defendants that they were justifiably unaware of the Guarantee Prohibition, a provision which, as stated in my Expert Report, had the effect of rendering the AIA Insurance's Guarantee of the Lancelot Loan unauthorized, ultra vires and/or illegal, and the Hawley Troxell Defendants'

DECLARATION OF RICHARD T. McDERMOTT - 42

**9-ER-2125**

Lancelot Loan Legal Opinion erroneous and negligently prepared.

69.     Another example is the disclosure by the Hawley Troxell Defendants to Mr. Lidstone of an early draft of the Lancelot Loan concerning a revised provision (later added to the Agreement) that permitted Series A Preferred Stock redemption payments to Donna Taylor.[32] Again, a lawyer delivering a third party opinion relating to that Agreement would have been led, as night the day, to the AIA Services' Amended Articles of Incorporation and the Guarantee Prohibition, particularly because the provision appears to have been added during the Loan Agreement negotiations; and thus, contrary to the claim of the Hawley Troxell Defendants and Mr. Lidstone's opinion, a lawyer exercising due care would have been aware of the Guarantee Prohibition when preparing the Lancelot Loan Legal Opinion (to the extent that the Hawley Troxell Defendants were not already aware of the Guarantee Prohibition).

70.     In the same vein, in beginning my review of the documents recently disclosed in response to the subpoena duces tecum served upon another of the Hawley Troxell Defendants' experts, Mr. Remele, I came across a previously undisclosed, redacted, copy of what is called a "Redacted memo re timeline of representation."[33] The unredacted pages of the newly disclosed privileged document describe a number of matters in which the Hawley Troxell Defendants represented AIA Services and CropUSA. In my opinion, even the unredacted information in that withheld document contradicts Mr. Remele's numerous statements in his Report that the duties and responsibilities of the Hawley Troxell Defendants to the AIA Corporations were diminished because they were not general counsel to those Corporations.[34] Therefore, it is imperative that I be

---

[32] The Unredacted Billing Records reveal that the Hawley Troxell Defendants did in fact review the Lancelot Loan Agreement.

[33] REM6452.

[34] As stated above, in my opinion, the Billing Records confirm the general counsel role of the Hawley Troxell Defendants' engagement.

DECLARATION OF RICHARD T. McDERMOTT - 43

9-ER-2126

provided with the entire document as well as all of the Withheld Privileged and Work Product Documents in order that I may have that information to complete my Expert Report, rebut the opinions expressed in the Remele, Lidstone and Pinkerton Reports, and fully and fairly express additional opinions.

71.    Among the other issues is Riley's attempt to materially alter the transcript of his July 1, 2019 Deposition by making substantive changes to a number of his answers to questions concerning, among other matters, the conflicts of interest of the AIA Services "directors." Riley's changes were made after two versions of my Expert Report had been produced and the changes appear to have been made in response to some of my opinions. For example instead of the answers he originally gave, namely that (i) in retrospect those persons were conflicted and (ii) since Henderson and Beck were not being sued at the time of their so called appointment by John Taylor "they were the best we could do under the circumstances," Riley changed his answers to say that those persons "did not have conflicting interests with respect to defending the AIA entities against Reed Taylor's creditor claims." This mischaracterization by Riley of *Reed Taylor v. AIA* Service as only involving "creditor claims" goes hand in glove with a theme which appears as a material foundation throughout the Remele Report. (Usually opinions are based on facts, but here "facts" are being created to support opinions.) Riley's new answer appears to be an attempt to reduce the Hawley Troxell Defendants' scope of representation from as stated in the May 2, 2007 AIA Engagement Letter "to advise the two corporate defendants in connection with the above entitled action brought by Reed J. Taylor"[35] to allegedly merely defending a collection suit.[36] It is critical

---

[35] HTEH000007. The subsequent February 25, 2008 Amended AIA Engagement Letter incorporated by reference all of the terms of the May 2, 2007 AIA Engagement Letter.
[36] As stated above, the "creditor suit" defense is refuted by the Unredacted Billing Records that I just received when they were produced on December 27, 2019.

DECLARATION OF RICHARD T. McDERMOTT - 44

that all of the Withheld Privileged and Work Product Documents be produced so that I can fairly see what was said and done by the Hawley Troxell Defendants in order for me to fully and fairly complete my Expert Report and rebut the opinions expressed in the Remele Report, the Lidstone Report and the Pinkerton Report. Moreover, now that I know from the Unredacted Billing Records how the Hawley Troxell Defendants were in fact analyzing and treating the case at the time the *Reed Taylor* litigation was active,[37] it is necessary that I review the Withheld Privileged and Work Product Documents in order to fairly and fully rebut Mr. Remele's opinions, and to formulate additional opinions.

72.     Another reason why under the circumstances none of the Withheld Privileged and Work Product Documents should be protected by the attorney-client privilege or work product doctrine is that, as discussed in my Expert Report,[38] by reason of the adverse interest exception, as a matter of law, there have in fact been no communications, "privileged" or otherwise, between the Hawley Troxell Defendants and the AIA Corporations. Because John Taylor and the other AIA Controlling Defendants consistently abandoned the interests of the AIA Corporations and acted entirely for their own interests (including as detailed in my Expert Report), their knowledge is not

---

[37] E.g., The Billing Records contain such entries as "RESEARCH ON OUTSIDE COUNSEL AND LIABILITY FOR NOT BRINGING CLAIMS AGAINST OUTSIDE DIRECTORS" and "EXTENSIVE RESEARCH ON OUTSIDE COUNSEL AND POTENTIAL LIABILITY WHEN TRYING TO REPRESENT BOTH CORPORATION AND DIRECTORS RESEARCH SCOPE OF REPRESENTATION AND FIDUCISRY DUTY TO CLIENT. DISCUSS RESEARCH RE SAME WITH J. ASHBY AND G. BABBITT." FB0726 (Capitalized Emphasis in original).

[38] *See, e.g.,* Ex. A hereto, pp. 4, 96, 228-229, 236, 241, 248, 256, 263, 265 and 278.

DECLARATION OF RICHARD T. McDERMOTT - 45

imputed to the AIA Corporations.[39] While the Controlling AIA Defendants recently produced the Unredacted Billing Records (presumably over the Hawley Troxell Defendants' objections since they had never produced them despite having obtained an order from this Court to do so), this is simply the first step of many that must be taken in order for the AIA Corporations to learn of the communications and improper conduct described in my Expert Report and this Declaration. Until all of the Withheld Privileged and Work Product Documents are disclosed to parties such as Miesen or other shareholders interested in pursuing the welfare of the AIA Corporations and their best interests, the AIA Corporations will never know precisely what was said and done or what occurred.

73.     The adverse interest exception also vitiates the Hawley Troxell Defendants' defenses of "Direction by Authorized Representatives of Clients" and "Duty to Abide by Objectives of Clients" because the AIA Corporations could not give "directions" and could not communicate any "objectives" because their purported representatives had conflicts of interest and were pursuing a course of conduct that was adverse to the interests of the AIA Corporations as described in my Expert Report. It is imperative that all of the Withheld Privileged and Work Product Documents be produced so that I am able to see what was said and done by the Hawley Troxell Defendants and the Controlling AIA Defendants as to these defenses as well in order to

---

[39] *E.g., In re Bill Johnson's Restaurants, Inc.*, 255 F.Supp.3d 927, 934 (D. Ariz. 2017) ("If the shareholders, at the time the dividend transactions, 'were acting in a manner adverse to the interests of the corporation, the so-called 'adverse interest exception' applies, with the result that the actions of the agents are not imputed to the corporation.'"); *Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 771-772 (4th Cir. 1995) ("[T]he adverse interest exception permits a principal to avoid imputation when the agent's interests are sufficiently adverse to the principal's interests."); *Ray v. Karris*, 780 F.2d 636, 642 (7th Cir. 1985) ("Generally the 'knowledge' of the corporate entity will turn on whether a disinterested majority of the shareholders or directors, depending on the state law requirements for the particular transaction, ratified the securities transference after full disclosure.").

DECLARATION OF RICHARD T. McDERMOTT - 46

fully and fairly address the issues, to complete opinions and/or to formulate opinions.

74.     The above are merely a few examples. There are many more. The broad subject matters of the waivers, coupled with the broad subject matter contained within the redacted billing records and the subsequently produced Unredacted Billing Records, make privilege and work product at issue at to all aspects of the privileged and work product documents and information relating to all of the legal work and communications provided in all of those matters. In addition, in the pending depositions of John Taylor (individually and as Rule 30(b)(6) deponent for the AIA Corporations and the CropUSA Entities), James Beck, Connie Henderson, Michael Cashman, the Hawley Troxell Defendants' Rule 30(b)(6) deposition, and the second day of depositions requested for Riley and Ashby, it is important for Mr. Bond to be able to question those witnesses as to all matters discussed in this Declaration, all matters relevant to the subject matter waivers and all matters involving the Hawley Troxell Defendants' legal work, including all of the legal services, work product, research and communications referenced in the Hawley Troxell Defendants' redacted billing records and the subsequently produced Unredacted Billing Records.

75.     In sum, the Hawley Troxell Defendants and the Controlling AIA Defendants have placed privilege at issue in this lawsuit and have selectively waived privilege and work product for their defenses.[40] Likewise, Miesen has made privilege and work product an issue by pursing derivative claims on behalf of the AIA Corporations against the Hawley Troxell Defendants for

---

[40] The Hawley Troxell Defendants have asserted privilege as defenses, which the Controlling AIA Defendants have incorporated by reference into their defenses. In addition, the Controlling AIA Defendants and the primary nominal derivative defendants, the AIA Corporations, have asserted affirmative defenses based on advice of counsel which also waive privilege with respect to the documents being withheld by the Hawley Troxell Defendants. *Skelton v. Spencer*, 98 Idaho 417, 565 P.2d 1374 (1977); *Weil v. Investment/Indicators, Research and Mgmt., Inc.*, 647 F.2d 18 (9th Cir. 1981); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992); *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975).

DECLARATION OF RICHARD T. McDERMOTT - 47

legal malpractice, breaches of fiduciary duties and related claims and against the Controlling AIA Defendants for breaches of fiduciary duties, fraud and related claims.[41] In order for me to fully and fairly address Miesen's claims and the defendants' defenses, including as asserted in the Remele Report, the Lidstone Report and the Pinkerton Report, I need to review and consider all of the Withheld Privileged and Work Product Documents. Again, I would think that Messrs. Remele, Lidstone and Pinkerton would also want all of the Withheld Privileged and Work Product Documents to review and consider for their opinions as well. Indeed, in addition to my desire to have all of the Withheld Privileged and Work Product Documents be produced, I would expect that the Hawley Troxell Defendants' experts would want that as well, particularly because documents have been withheld from them.  In my opinion, the experts on both sides of the case should be immediately provided with the Withheld Privileged and Work Product Documents so that we can all fairly and fully address the matters once and for all. Moreover, this would eliminate a train of Supplemental Reports and would be cost effective for all.

76.     Since the entry of this Court's order of December 20, 2019 extending the deadline for plaintiff to file a rebuttal report until after this Court rules on plaintiff's motion to Amend the Case Management Order, I have worked daily for extended hours through the Holidays (with the exception of Christmas day itself) on my Expert Report and my rebuttal opinions. As stated above, on December 27, 2019, I received over 500 pages of the Hawley Troxell Defendants' Unredacted Billing Records extending over an eleven-year period which I have been able to review preliminarily, but I have not been able to review the billing entries in detail and analyze the billing entries with other work and filings in the underlying lawsuits. They contain a substantial amount of information which will be addressed in my Expert Report and my rebuttal opinions. I have also

---

[41] I.R.E. 502(d)(3) & (6). *See also Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970).

DECLARATION OF RICHARD T. McDERMOTT - 48

continued my review of the documents submitted in December 2019 in response to the subpoenas served on the Hawley Troxell Defendants' three experts. They also contain a substantial amount of information to be included in my Expert Report and my rebuttal opinions. In addition, I have also spent many hours preparing this lengthy Declaration, which has also consumed badly needed time to work on my Expert Report and rebuttal opinions. Consequently, I have been unable to complete my Expert Report as to my primary opinions and my rebuttal opinions. I presently have sixty pages of draft opinions, many of which I am unable to finalize until I complete a thorough review and analysis of all of the newly received material and how that material supplements or otherwise affects my understanding and analysis of this nearly ten year old case which involves 20 years of conduct, over 10,000 documents, almost 800 docket entries (excluding subparts) and four companion cases. (This Lawsuit was stayed for nearly five years at the behest of the Hawley Troxell Defendants until Donna Taylor succeeded in obtaining a reversal of the stay by the Ninth Circuit Court of Appeals.) In all likelihood the completion of that work, as well as the results of the forthcoming depositions, will also lead to the formulation of additional opinions. In my Declaration of December 18, 2019, I stated that, based on the circumstances then existing (e.g., the receipt of the subpoenaed documents from the Hawley Troxell Defendants' experts), I needed additional time to prepare three rebuttals of the caliber and quality I owe to the Court and Miesen. This is all the more the situation now because of the necessity to review and analyze carefully and include in my Expert Report and rebuttal opinions the critically important Unredacted Billing Records that I received on December 27, 2019.

77.    For all the reasons stated above, and in light of my second semester teaching schedule, I am respectfully reiterating my request that this Court extend the deadline for my Expert Report (including my rebuttal opinions) until February 21, 2020 so that I may fairly, fully and

DECLARATION OF RICHARD T. McDERMOTT - 49

9-ER-2133

efficiently proceed with the preparation of my Exert Report and rebuttal opinions based on the

information presently in my possession and the depositions scheduled for January and early

February (I would still need to supplement based on any other additional information provided in

the future as well).

    I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.


*January 6, 2020, New York, New York*          */s/ Richard T. McDermott*
Date and City and State Signed          Richard T. McDermot


DECLARATION OF RICHARD T. McDERMOTT - 50

**9-ER-2133**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 6th day of January 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:    jat@elamburke.com
Loren C. Ipsen:    lci@elamburke.com
Joyce Ann Hemmer:    jah@elamburke.com
Bradley S. Keller:    bkeller@byrneskeller.com
Alyson Anne Foster:    aaf@aswdpllc.com
Taylor L. Bruun:    tlb@aswdpllc.com
Benjamin A. Schwartzman:    bas@aswdpllc.com
Peter L. Steinman:    psteinman@mrllp.com
Tyler Scott Waite:    twaite@campbell-bissell.com
Michael Scott Bissell:    mbissell@campbell-bissell.com
David R. Lombardi:    drl@givenspursley.com
Daniel Loras Glynn:    dglynn@idalaw.com

/s/ Roderick C. Bond
Roderick C. Bond

DECLARATION OF RICHARD T. McDERMOTT - 51

**9-ER-2134**



**HAWLEY TROXELL**

ATTORNEYS AND COUNSELORS
Hawley Troxell Ennis & Hawley LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, Idaho 83701-1617
208.344.6000
www.hawleytroxell.com

GARY D. BABBITT
ADMITTED TO PRACTICE LAW IN IDAHO AND OREGON
EMAIL: gbabbitt@hawleytroxell.com
DIRECT DIAL: 208.388.4820
DIRECT FAX: 208.954.5201

December 22, 2009

The Board of Directors of
AIA Services Corporation
111 Main Street
P.O. Box 538
One Lewis Clark Plaza
Lewiston, Idaho 83501-0538

Privileged and Confidential
Attorney-Client Communication

Re:  *Donna J. Taylor, Plaintiff vs. AIA Services Corporation, Defendant (Nez Perce County District Court Case No. CV 09-02470)*

To the Directors of AIA Services Corporation:

We understand that AIA Services Corporation ("**Services**") wishes to engage Hawley Troxell Ennis & Hawley LLP ("**Hawley Troxell**") to represent the interests of Services in the above entitled litigation filed by Donna J. Taylor ("**Donna Lawsuit**") pursuant to the terms and conditions of this letter agreement. In her Complaint, Donna seeks appointment of a receiver to take over the operation of AIA Services. She does not, however, make any substantive claim for relief against Services.

**Historical Representation.**

Please be advised that one of the attorneys now with this firm, Richard A. Riley, then a partner with Eberle Berlin Kading & McKlveen, Chtd., provided legal services to Services and its subsidiaries, including AIA Insurance, Inc. ("**Insurance**"). Ancillary to that representation, Eberle Berlin and Mr. Riley represented Reed in connection with his divorce from Donna Taylor and the related division of community property, including Reed's interests in Services. Eberle Berlin and Mr. Riley also provided legal services in connection with the offering of membership interests in Reed's Canadian hunting ranch. Subsequently, with Reed's knowledge, acquiescence and implied consent, Eberle Berlin and Mr. Riley represented Services and its subsidiaries in connection with the stock redemption agreement, notes and related agreements

40206 9
44688 0002-1753700.7

HTEH000196

The Board of Directors of AIA Services Corporation
December 22, 2009
Page 2

pursuant to which, in 1995, Services redeemed Reed's common stock of Services. Reed was separately represented by a Seattle firm, Cairncross Hempelmann, and by his personal accountant, Ernie Dantini, in connection with those transactions. Nevertheless, Reed Taylor filed an affidavit in HTEH #2 (described below) asserting that Mr. Riley was Reed's attorney as well as Services' attorney in connection with the redemption transaction and that Reed relied on Mr. Riley to protect Reed's interest in the transaction. Mr. Riley left Eberle Berlin and joined Hawley Troxell in March 1999. At the request of John Taylor, Hawley Troxell was engaged by Services in 2002 to determine whether the security interests that secured Services' obligations to Reed under the redemption agreements were perfected and to re-perfect his security interests. With that exception and until the Underlying Action was filed, neither Hawley Troxell nor Mr. Riley has been involved in any dealings between AIA and Reed in connection with the stock redemption transaction.

### Factual Background.

The Complaint in the Donna Lawsuit is based on many of the same allegations of misconduct and misfeasance on the part of John Taylor and Services' other Directors, past and present, as alleged by Reed J. Taylor in the case of *Reed J. Taylor v. AIA Services Corporation, AIA Insurance, Inc., R. John Taylor, Connie Taylor, Bryan Freeman, JoLee Duclos, Crop USA Insurance Agency, Inc., James Beck and Corrine Back*, Nez Perce County District Court Case No. CV-07-00208; ("**Underlying Action**"). The same lawyers who now represent Donna J. Taylor in the Donna Lawsuit also represent Reed J. Taylor in the Underlying Action and in several other cases involving Services, Insurance, CropUSA Insurance Agency, Inc. ("**CropUSA**"), their past and present directors, and Hawley Troxell. Although we cannot know for sure, Reed may, in fact, have prompted Donna Taylor to file the Donna Lawsuit and may be financing it. Services' directors have participated directly in the Underlying Action and attended many of the hearings. As Counsel for Services in the Underlying Action, we have advised Services' directors and officers concerning Reed's allegations and strategies for defense of the litigation in that case. We are not legal counsel for any of the directors and officers in the Underlying Action or for any other purpose. They have separate counsel. We act solely for Services and the other corporate defendants we represent, namely Insurance (Services' wholly-owned subsidiary) and CropUSA.

R. John Taylor, James Beck, Michael Cashman, Connie Taylor, Bryan Freeman and Jo Lee Duclos are identified in the Donna Lawsuit Complaint as "Responsible Individuals" but are not named at this time as defendants. However, in view of the half dozen amendments of the complaint in the Underlying Action, there exists the possibility that Donna's Complaint will be amended to name the "Responsible Individuals" as defendants and to assert claims against them. Further, if a receiver is appointed as requested in the Donna Lawsuit, the receiver could terminate this firm's representation of Services in this lawsuit and could file suits against the "Responsible Individuals" and this firm. Moreover, Donna's attorney has stated on several occasions that Donna will be filing, through other counsel, a derivative action against Hawley

44568.0002.1753700 7

**Exhibit - 4, p. 30**

HTEH000197

The Board of Directors of AIA Services Corporation
December 22, 2009
Page 3

Troxell on behalf of Services. The July 21, 2008 derivative demand letter from Donna's counsel to Services' Board of Directors on behalf of Donna and Reed makes it clear that the defendants in Donna's derivative action will include this firm and may also include the "Responsible Persons".

Under the Rules of Professional Conduct, a conflict of interest exists if there is a significant risk that representation of a client will be materially limited by our personal interests. Our ability to represent Services effectively in the Donna Lawsuit could be materially limited if we are also targets in this lawsuit or a related lawsuit. A lawyer's litigation decisions, such as whether the case should be settled and on what terms, and what litigation strategy should be pursued, might be influenced by what would best avoid or minimize the lawyer's liability exposure rather than what is in the best interest of the client. A defense of the Donna Lawsuit on the merits (as distinguished from a defense based on procedural deficiencies in the Complaint) would require a defense of the challenged conduct of the Responsible Individuals. Reed and Donna would undoubtedly use this as a basis for arguing that Hawley Troxell is, in reality, representing the interests of the Responsible Individuals and not Services' best interests. Even though Reed has already alleged such a claim against us, we have consistently denied it and have asserted that we are merely attempting to preserve the viability of Services and are asserting meritorious defenses to Reed's monetary claims against it and our other corporate clients. We have not attempted to defend the alleged conduct of the individual defendants in the Underlying Lawsuit, leaving that to their own attorneys. Defending their conduct in the context of the Donna Lawsuit, in order to forestall appointment of a receiver, would create additional possible exposure to this law firm. Moreover, because of the nature of the allegations in the Donna Lawsuit and the relationships between Reed and Donna and their joint counsel, it may be either advantageous or necessary for Services to move to add Reed J. Taylor as an indispensable party or a real party in interest in the Donna Lawsuit, which may foster amendments to the Complaint to add claims against Responsible Individuals and/or Hawley Troxell.

You should also be aware that, under the Idaho Rules of Professional Conduct, a lawyer when sued may have the right to disclose otherwise confidential client information as matter of self defense. Lawyers in this firm may also be witnesses in the case and may provide testimony or other evidence that is against Service's interest in the Donna Lawsuit. We cannot now predict what that evidence might be.

Although the issue may be debatable, we think it is prudent to consider that the risk that this firm's interest and Services' interest will diverge is "significant" within the meaning of the ethics rule discussed above. In light of our experience with Reed Taylor, it is likely that Donna will do everything she can to create a material conflict for us and to force a disqualification if we represent Services in the Donna Lawsuit. When a conflict exists, we may only represent a client if we reasonably believe that we can provide competent and diligent representation, the representation is not prohibited by law, and the affected client gives informed consent, confirmed in writing.

44568.0002 1753700 7

**Exhibit - 4, p. 31**

HTEH000198

**9-ER-2137**

The Board of Directors of AIA Services Corporation
December 22, 2009
Page 4

The involvement of Donna, Reed and their counsel in other pending cases complicates the issues relating to Hawley Troxell's ability to represent Services in the Donna Lawsuit. The other cases are described below:

1.      As you know, Reed J. Taylor moved to disqualify this firm as counsel for Services, Insurance and CropUSA in the Underlying Action based on allegations that (among other things) this firm has irreconcilable conflicts of interest in joint representation of our clients and that we aided and abetted our clients and their directors and officers in defrauding Reed. That motion was denied; but the issue may be addressed in the pending appeal to the Idaho Supreme Court of summary judgment granted by Judge Brudie holding that Reed's $6 million redemption note is illegal and unenforceable. Hawley Troxell absorbed significant amounts of time incurred in successfully defending Reed's DQ motion and did not bill that time to our clients. In response to the notice of appearance filed by this firm on behalf of Services in the Donna Lawsuit (see below), Donna's attorney, Roderick Bond, has notified us of Donna's intention to file a motion to disqualify this firm on the same grounds as alleged by Reed in the Underlying Action.

Under these circumstances, where Services' Directors know at the outset of the Donna Lawsuit that a motion to disqualify Hawley Troxell will be filed and the Board has the opportunity to seek substitute counsel before the DQ motion is litigated, this firm must charge Services for our legal services in defending the DQ motion.

2.      As you know, Reed J. Taylor filed suit against Hawley Troxell and certain of our attorneys based on allegations that (among other things) this firm aided and abetted our clients and their directors and officers in defrauding Reed. *Reed J. Taylor v. Gary D. Babbitt, D. John Ashby, Patrick Collins, Richard A. Riley and Hawley Troxell Ennis & Hawley, LLP* (Nez Perce District Court Case No. CV08-01765) ("**HTEH #1**"). The district court dismissed that complaint; and Reed is currently appealing the court's ruling to the Idaho Supreme Court.

3.      You are also aware that Reed J. Taylor has filed a malpractice suit against Hawley Troxell and Hawley Troxell lawyer Richard A. Riley, as well as Eberle Berlin Kading Turnbow & McKlveen, Chtd. and Mickey Turnbow, in connection with the opinion given by Eberle Berlin to Reed in 1995 on behalf of Services pursuant to the Stock Redemption Agreement between Reed and Services. *Reed J. Taylor v. Richard A. Riley, Hawley Troxell Ennis & Hawley LLP, Robert M. Turnbow, Eberle, Berlin, Kading, Turnbow & McKlveen, Chartered*, Ada County District Court Case No. CV-OC-0918868 ("**HTEH #2**"). We have been informed that Reed will seek to amend the complaint in that matter to assert that Eberle Berlin and Mr. Riley acted as Reed's attorneys in the redemption transaction and that Hawley Troxell is tainted by Mr. Riley's affiliation with the firm during our representation of Services in the Underlying Action. Mr. Riley denies that he or his former firm represented Reed in connection with the redemption transaction; but if Reed were correct, we would be disqualified from attacking that transaction.

44568.0002.1753700 7

**Exhibit - 4, p. 32**

HTEH000199

**9-ER-2138**

The Board of Directors of AIA Services Corporation
December 22, 2009
Page 5

The Eberle Berlin opinion letter included the opinion that, subject to certain qualifications, the execution and delivery of the 1995 redemption agreements and the consummation of the transactions contemplated thereby did not violate any Idaho law governing or affecting the operation of the Company in any material respect. In the Underlying Action, Judge Brudie concluded that the redemption transaction did violate Idaho Code § 30-1-6 because Services had insufficient earned surplus to permit the redemption and stated in a footnote that the Eberle Berlin opinion was incorrect. In HTEH #2, Reed's counsel is seeking to depose Mr. Riley in connection with the 1995 opinion.

4.      Finally, through her present law firm, Donna Taylor also filed an earlier lawsuit against John Taylor. *Donna J. Taylor v. R. John Taylor*, Nez Perce County District Court Case No. CV08-01150. The allegations in that case are substantially similar those made in the Donna Lawsuit; and the two cases could perhaps be consolidated. The Donna Lawsuit against Services, like the earlier case filed by Donna against John, was initially assigned to Judge Brudie; but Donna immediately disqualified Judge Brudie in this most recent case. When two cases are consolidated, the general rule is that the consolidated cases are assigned to the Judge assigned to the first-filed case, in this instance Judge Brudie. However, given Donna's disqualification of Judge Brudie, the consolidated cases might instead be assigned to the judge currently assigned to the Donna Lawsuit. We see no particular benefit to Services from consolidating the two cases unless we could be certain that Judge Brudie would preside over the consolidated cases, a result that we cannot assure. Whether John Taylor would want to take the chance of losing Judge Brudie for Donna's suit against him is an additional consideration. Because of the uncertain outcome and uncertain benefit to Services, we do not foresee moving to consolidate the two cases.

Our representation of Services may be further complicated by the prospect that Donna may file a derivative action against Hawley Troxell on behalf of Services. You will recall that one of Donna's present attorneys, Mike Bissell, delivered to the board of directors of Services a derivative demand letter dated July 21, 2008 demanding that Services file suit against Hawley Troxell. The derivative suit was deferred by Services moving in the Underlying Action for the appointment of an independent panel to examine the derivative claims. That motion is in abeyance pending appeal of the Underlying Action. However, Donna is not a party to the Underlying Action; and there is a question whether Services can avoid the effect of the July 21, 2008 derivative demand by Donna if she files a derivative action, as her attorney Roderick Bond is threatening will be done by separate counsel.

If Donna files a derivative action, the Idaho Business Corporation Act entitles the Board to seek appointment of an independent panel to investigate the allegations and make a recommendation whether the Corporation should pursue or dismiss the case, as previously proposed in the Underlying Action. Reed's notice of appeal of the Underlying Action did not include Services' motion to appoint a panel as an assignment of error. Consequently, Judge Brudie may have retained jurisdiction over the derivative demand. It is possible that, if Donna

44568 0002 1753700 7

**Exhibit - 4, p. 33**

HTEH000200

**9-ER-2139**

The Board of Directors of AIA Services Corporation
December 22, 2009
Page 6

files a derivative action, Services may be able to file a notice of hearing in Underlying Action and/or move to stay the derivative action to allow the panel to proceed.

Alternatively, the board may choose to initiate the demanded action against Hawley Troxell or take control of the case after it is filed. In either event, Services will need to engage new counsel to prosecute the action; and Hawley Troxell will obviously need to withdraw as counsel for Services and its affiliates in the Donna Lawsuit and the Underlying Action. For obvious reasons, Hawley Troxell cannot advise the Board on what action to take if Donna files the threatened derivative action; and for that purpose Services will need to obtain separate and independent counsel for its advice.

## ENGAGEMENT

This letter confirms that, in connection with legal representation of Services in the Donna Lawsuit, AIA Services Corporation has engaged Hawley Troxell Ennis & Hawley LLP for the limited purposes and subject to the terms and conditions detailed below. We enclose a copy of our Client Service Policies. The statement of policies, together with this letter, constitutes our engagement agreement for this matter.

### A.      LIMITED SCOPE OF ENGAGEMENT FOR THIS MATTER.

As indicated above, Donna's counsel has already stated the intention to file a motion to disqualify Hawley Troxell from representing Services in the Donna Lawsuit. Further, Donna's counsel has left no doubt that our representation of Services in the Donna Lawsuit will result in additional allegations against this firm in the pending lawsuits (HTEH #1, now on appeal, and HTEH #2) brought against us by Reed J. Taylor as well as fodder for Donna's threatened derivative action. We believe it prudent for Services to identify new counsel for purposes of defending the Donna Lawsuit, to be ready if Hawley Troxell must withdraw in the future.

However, we also believe that we are morally and ethically obligated by our duty of loyalty to our existing client to make sure that AIA Services is not defaulted by Donna in this newest receiver case. Donna's counsel, Roderick Bond, has made it clear that Donna would not allow additional time for AIA Services to answer and that he would file notice of intent to take default if an answer or other responsive pleading were not timely filed (see attached email). Accordingly, we filed a notice of appearance on behalf of Services; and we prepared and filed a motion to dismiss the case in order to forestall entry of a default judgment as threatened by Donna's counsel and to allow time for the Board to consider the matters discussed in this letter. We strongly recommend that, before executing this engagement letter, Services' board of directors consult independent counsel to evaluate the conflicts of interest described in this letter and to assist it in making an informed decision concerning the continued limited engagement of Hawley Troxell as Services' attorneys in connection with the Donna Lawsuit.

44568.0002 1753700 7

**Exhibit - 4, p. 34**

HTEH000201

The Board of Directors of AIA Services Corporation
December 22, 2009
Page 7

We believe that, under the circumstances, Hawley Troxell is able to undertake and to provide competent and diligent representation of Services for purposes of the limited representation detailed below, notwithstanding our personal interests arising because of the related litigation and prospective claims against us by Donna and Reed:

(1)    We have prepared and filed a motion to dismiss the Donna Lawsuit based on (i) the lack of any primary claim for relief to which the demand for appointment of a receiver is ancillary; and (ii) Reed being the real party in interest because of the December 2006 subordination agreement between Reed and Donna whereby Donna subordinated her prior right to redemption of her Series A preferred stock to Reed's $6 million redemption note and because Reed and Donna's joint counsel have alleged, on behalf of Reed in other pending cases, that Services has insufficient assets to pay the amounts allegedly owed to Reed and that he is the only person with any interest in AIA's assets. Note that, if the case is dismissed on the first ground (or perhaps even before our motion is heard), Donna is likely to amend the complaint to add a substantive direct claim for relief, which will bring the subordination and real party in interest arguments to the fore. Further, under Rule 17(a) of the Idaho Rules of Civil Procedure, the case cannot be dismissed until a reasonable time has been allowed for the real party in interest to join the suit.

(2)    We may suggest filing additional motions to dismiss, including taking the real party in interest argument one step further by contending that, because Reed is the real party in interest, there are two other actions by him already pending -- the Underlying Action and HTEH #1-- where he has already made the same substantive allegations against Services and Hawley Troxell, and that the Donna Lawsuit should therefore be dismissed under Rule 12(b)(8) and/or on the basis of collateral estoppel.

(3)    If the court concludes that Reed is the real party in interest but does not dismiss the case, we may recommend filing a motion to stay the Donna Lawsuit based on the fact that Donna's substantive allegations concerning malfeasance by Services' management and aiding and abetting by Hawley Troxell have already been litigated by Reed in the Underlying Action and HTEH #1, which are both on appeal to the Idaho Supreme Court. If the motion is granted and the Supreme Court subsequently reverses one or both of Reed's suits, Hawley Troxell may need to withdraw from continuing to represent Services in the Donna Lawsuit.

(4)    If Donna files her threatened motion to disqualify this firm, we will defend that motion if Services has not yet engaged or been able to engage new counsel by that time. Services acknowledges that the motion likely will be filed and agrees that Services will be responsible to pay our attorney fees and costs in connection with that defense.

Depending on the outcomes of these motions and the circumstances existing at those times, Hawley Troxell will need to re-evaluate our continued representation of Services. For example, if we are unsuccessful in getting the case dismissed on motion, or if the Court orders

44568.0002 1753700 7

**Exhibit - 4, p. 35**

HTEH000202

**9-ER-2141**

The Board of Directors of AIA Services Corporation
December 22, 2009
Page 8

discovery before hearing the motion, Hawley Troxell may be unable to continue our representation of Services because of the conflicts discussed above. In particular (but without limitation), as counsel for the corporation we may recommend, in order to forestall appointment appointment of a receiver, that the company retain independent counsel to evaluate each of the grounds alleged by Donna as the basis for the appointment and, if appropriate, to recommend that the company take action against individual directors and officers or implement corrective measures to ameliorate harm to the corporation; and we likely would be required to withdraw from our representation if our recommendation were not followed. Alternatively, we would have to attempt to justify the conduct of the individual directors and officers who we do not represent, increasing the firm's exposure to Donna's and Reed's claims that this firm has protected the individuals rather than acting in the best interests of the corporation and its shareholders. This is an exposure the firm cannot accept.

Our agreement to undertake the limited engagement to protect Services against default and to file motions to dismiss and other preliminary motions described above is predicated on the agreement by Services to allow Hawley Troxell to withdraw at any time if we reach the conclusion that, under the circumstances then existing, there is a significant risk that continued representation of Services will be materially limited by the personal interest of the firm or any of our attorneys and that we will not be able to continue to provide competent and diligent representation to Services. If we request that Services substitute other legal counsel for us based on the conflicts described in this letter and Services fails to do so because it is unable to retain other counsel or for other reasons, it will be necessary for us to file a motion requesting court permission to withdraw. Services must have legal counsel in the Donna Lawsuit in order to defend itself, or a default will be entered.

Our agreement to undertake this representation is further conditioned on approval of this engagement letter by Services' Board of Directors following a meeting at which these matter discussed in this letter are carefully considered, preferably after review by and consultation with independent counsel. Further, Donna Taylor must be given notice of the meeting for the reasons explained below.

As you know, Services' Articles of Incorporation grant Donna the right to Board representation as long as she continues to own a majority of the outstanding shares of Series A Preferred Stock. After her appointee resigned from the Board some years ago, Donna arguably abandoned her right to Board representation by not designating a new representative to fill her Board seat; and actions taken by the Board without notice to Donna from that time until she reasserted her right to Board representation should be valid. However, Donna's counsel has recently demanded that she or her designee be seated on Services' Board of Directors; and her complaint against Services alleges entitlement to Board representation based on the Series A Preferred Stock provisions of Services' Articles of Incorporation. See attached email. We believe that Donna is entitled to Board representation and that AIA, and perhaps its directors

44588.0002 1753700 7

**Exhibit - 4, p. 36**

HTEH000203

**9-ER-2142**

The Board of Directors of AIA Services Corporation
December 22, 2009
Page 9

personally, will likely be held liable for attorney fees and costs incurred by Donna in obtaining a court order compelling AIA to seat her.

In light of Donna's right to appoint a director and her lawsuit demanding Board representation, we require as a condition to our engagement that three (3) days notice of the meeting be given to Donna in accordance with Services' bylaws. This condition to our representation is necessary because of the general rule that action taken at a meeting in the absence of a director who did not receive notice of the meeting is invalid. Notice to Donna of a meeting to consider the engagement of Hawley Troxell and other matters relating to the Donna Lawsuit is necessary to assure that the Board's decisions concerning these matters are not subject to attack and invalidation.

The meeting notice should advise Donna that the purpose of the meeting is to discuss her lawsuit against Services. However, the notice should also advise her that, as a director with fiduciary duties of loyalty and confidentiality owed to the corporation, she will not be permitted to review any documents or to participate in the board's deliberations relating to Services' engagement of counsel for the Donna Lawsuit, the lawsuit itself or the other pending lawsuits involving her counsel, or to review any documents relating to these litigations.

We believe that, because of the conflicts described in this letter, it is in the best interests of the corporation to retain new independent counsel and replace Hawley Troxell as Services' attorneys in the Donna Lawsuit as soon as possible, if suitable counsel willing to accept the engagement can be located. We urge the Board to to commence the effort to locate substitute counsel without delay.

B.     FEES AND COSTS.

The attorneys primarily responsible for the legal services rendered to you in this engagement will be Gary D. Babbitt, whose standard hourly rate is $275 and John Ashby, whose standard hourly rate is $170. There will probably be assistance provided by other lawyers and paralegals in the firm as necessary.

Our time will be billed to you at the standard hourly rate for services rendered by the persons working on this engagement. At the present time, the hourly rates range from $210 to $320 for partners, $135 to $210 for associates, $100 to $150 for law clerks, and $125 to $140 for paralegals. Services are normally charged in tenth-of-hour intervals, and a minimum of 10 hours per day charged for services requiring overnight travel. Effective on January 1st of each year, we will adjust our standard hourly rates, and the new rates will apply for work performed thereafter. The new rates will appear on the January statement.

From time to time, you may be charged various amounts by third parties (such as court filing fees, deposition transcript fees, or travel, meal and lodging expenses). We will pay costs

44568.0002.1753700 7

**Exhibit - 4, p. 37**

HTEH000204

**9-ER-2143**

The Board of Directors of AIA Services Corporation
December 22, 2009
Page 10

up to $300, and add the costs to your monthly bill. All costs in excess of $300 will be directly billed to you.

We will issue a single monthly statement jointly addressed to Services, absent express written instructions from Services as to any other allocation of our fees and costs. Our monthly statements will itemize the services rendered, and expenses and costs advanced, which are posted during the month. The statement is due and payable in full upon receipt. If any statement remains unpaid more than 30 days after its receipt by you, we reserve the right to withdraw from the engagement. Unpaid statements are subject to interest of one percent per month (annual percentage rate of 12%) of the unpaid amount (compounded monthly). The minimum interest charge is 1% per month. If you have any questions about our billing system or any entry on our statement, please call me.

### C.   ACCESSIBILITY.

To keep you informed, one of our services is to provide you with photocopies of all correspondence and other documents that we receive or send. In addition, we shall advise you of major events by telephone. Please contact us if you have any questions or comments. We are available for personal meetings, telephone conferences, and correspondence by post, facsimile and electronic mail.

In turn, this firm needs your full cooperation in defending Donna's claims. Your full cooperation would include making your directors, officers, employees and other agents available to us for interviews, meetings, depositions, or hearings, as reasonably may be required. It would also include providing us with all relevant information and documents in this matter, truthfully and fully answering our inquiries, and maintaining the confidentiality of our communications with you.

### D.   AGREEMENT.

If the terms and conditions of this letter covering this limited engagement are agreeable, please have JoLee send us a copy of the Board meeting notice sent to Donna and a secretary's certification of the approval, along with a signed copy of this letter. If you have any questions or comments, or if any terms are not agreeable, please contact me as soon as possible so that we can discuss the differences and attempt to reach terms that are mutually acceptable.

You always have the right to obtain other counsel and not to accept our legal representation. If at any time you wish to employ other counsel to represent Services for any reason, you will notify us promptly and retain your own counsel at that time.

44588.0002.1753700.7

**Exhibit - 4, p. 38**

HTEH000205

The Board of Directors of AIA Services Corporation
December 22, 2009
Page 11

Very truly yours,

HAWLEY TROXELL ENNIS & HAWLEY LLP

Gary D. Babbitt

GDB/tb

Enclosure

44568.0002 1753700 7

**Exhibit - 4, p. 39**

HTEH000206

**9-ER-2145**

The Board of Directors of AIA Services Corporation
December 22, 2009
Page 12

The directors of undersigned corporation (other than Donna Taylor) have read and understand the terms of this Engagement Agreement as stated above, have approved the terms and conditions of this agreement and agree to be bound by these terms of engagement stated in this letter. By signing below, Services knowingly agrees to waive any existing conflict of interest and to be bound by the conditions of representation set forth above.

**AIA SERVICES CORPORATION:**

Date: _____

By: _____
R. John Taylor, Chief Executive Officer

44568.0002.1753700 7

**Exhibit - 4, p. 40**

**9-ER-2146**

HTEH000207

David R. Lombardi, ISB No. 1965
GIVENS PURSLEY LLC
601 W. Bannock
PO Box 2720
Boise, Idaho 83701
Telephone: (208) 388-1200
Facsimile: (208)388-1300
Email: drl@givenspursley.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants.<br><br>CROP USA INSURANCE AGENCY, INC., an | Civil No. 1:10-cv-00404-DCN<br><br>**DISCOVERY MASTER ORDER NO. 22 REGARDING PLAINTIFF MIESEN AND REED TAYLOR'S MOTIONS FOR PERMISSION TO DEPOSE RICHARD A. RILEY A SECOND DAY AND (Dkt. 759 and 763)** |

**DISCOVERY MASTER ORDER NO. 22** – 1

014451.0001
GPDMS:14965696.1

**9-ER-2147**

Idaho corporation; CONNIE TAYLOR
HENDERSON, an individual; JOLEE
DUCLOS, an individual; R. JOHN TAYLOR,
an individual; MICHAEL W. CASHMAN SR.,
an individual; JAMES BECK, an individual,

        Defendants/Third-Party
        Plaintiffs,

      **v.**

REED TAYLOR, an individual,

        Third-Party Defendant.

---

REED TAYLOR, an individual,

        Third-Party Defendant/
        Counterclaimant,

      **v.**

CONNIE TAYLOR HENDERSON, an
individual; R. JOHN TAYLOR, an individual;
JAMES BECK, an individual, and UNKNOWN
BONDING COMPANY, an unknown entity
that issued the unknown fidelity ERISA Bond,

        Counterdefendants.

---

GEMCAP LENDING I, LLC, a Delaware
limited liability company,

        Defendant/Third-Party
        Plaintiff,

      **v.**

QUARLES & BRADY, LLP, a
Wisconsin limited legal partnership;
and CRUMB & MUNDING, P.S., a
Washington professional service
corporation,
        Third-Party Defendants.

**DISCOVERY MASTER ORDER NO. 22** – 2

014451.0001
GPDMS:14965696.1

**9-ER-2148**

### INTRODUCTION

Plaintiff Miesen filed his Motion for Permission to Depose Richard A. Riley a Second Day (Dk.. 759) in which Reed Taylor filed a Joinder on December 19, 2019 (Dkt. 763).  Plaintiff Miesen also filed a  Motion to Expedite Briefing (Dkt. 760) which was granted by the Court on December 20, 2019 and which set a hearing before the Discovery Master on January 9, 2019. (Dkt. 767)

### ANALYSIS AND DECISION

Richard A. Riley is a named Defendant who was employed by Defendant Hawley Troxell Ennis & Hawley (HTEH) during the times that are relevant to this lawsuit.  Mr.Riley was also involved in many of the activities that are the subject of this lawsuit. Counsel for Plaintiff demonstrated, in the Declaration of Roderick C. Bond (Dkt. 759-2) that he had been unable to cover all the topics concerning Plaintiff's claims during his seven (7) hour deposition.  the Declaration of Mr. Bond also demonstrated that Mr. Riley submitted a deposition Change Sheet making changes to his reported testimony that Mr. bond alleged were substantive and required further examination.

Counsel for Mr. Riley and HTEH resisted Plaintiff's Motion, but conceded that a deposition of 4 hours on conditions, might be acceptable.

Counsel for Reed Taylor did not attend the first seven hours of  Mr. Riley's deposition, but asserted he would need approximately four (4) hours of examination time in addition to the second seven (7) hour day sought by Plaintiff Miesen.

The Discovery Master concludes, in light of the factual complexity and long time frame of this lawsuit, and the allegedly substantive changes made to the testimony of Mr. Riley by his deposition Change Sheet, that Plaintiff should have an opportunity to complete his examination

**DISCOVERY MASTER ORDER NO. 22** – 3

of Mr. Riley and to examine Mr. Riley on the submitted changes.  The Discovery Master will, therefore, as a matter of discretion, allow a second, seven (7) hour day of examination of Richard A. Riley that shall take place before the 30(b)(6) deposition of HTEH.  Plaintiff Miesen's Motion for Permission to Depose Richard A. Riley a Second Day is GRANTED.

Counsel for Reed Taylor did not attend or participate in the first seven (7) hour deposition of Mr. Riley but now asks, after that deposition has been completed, for leave to depose Mr. Riley for four (4) hours.  Mr. Taylor has not provided sufficient cause, under the circumstances, to demonstrate that the Discovery Master should exercise his discretion to allow Reed Taylor to examine Mr. Riley for an additional four (4) hour, second or third deposition. Reed Taylor's Motion for Permission to Depose Richard A. Riley a Second Day is therefore DENIED,  without prejudice to make a showing, after the completion of the second day of Mr. Riley's  deposition that there are specific subject areas or matters that are unique to Reed Taylor's claims and/or defenses that require further examination of Mr. Riley.

Dated this 10th day of January, 2020.

/s/ David R. Lombardi
David R. Lombardi
Discovery Master

**DISCOVERY MASTER ORDER NO. 22** – 4

014451.0001
GPDMS:14965696.1

**9-ER-2150**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 10th day of January, 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Benjamin A. Schwartzman
Alyson Anne Foster
Taylor Bruun
Andersen Schwartzman Woodard
Dempsey, PLLC
101 S. Capitol Blvd., Ste. 1600
Boise, ID  83702
Email:  bas@aswdpllc.com;
aaf@aswdpllc.com
tlb@aswdpllc.com
*Attorneys for GemCap Lending I, LLC*

Fanxi Wang
Bird Marella
1875 Century Park East, 23rd Floor
Los Angeles, CA  90067
Email:  fwang@birdmarella.com,
mhicks@birdmarella.com
*Attorneys for Quarles & Brady, LLP*

Jack S. Gjording
Stephen Lee Adams
Gjording Fouser PLLC
121 N. 9th St., Ste. 600
PO Box 2837
Boise, ID  83702
Email:  jgjording@gfidaholaw.com,
sadams@gfidaholaw.com
*Attorneys for Quarles & Brady, LLP*

James B. King
Markus William Louvier
Evans, Craven & Lackie, P.S.
818 W. Riverside Ave., Ste. 250
Spokane, WA  99201
Email:  jking@ecl-law.com,
mlouvier@ecl-law.com
*Attorney for Crumb & Munding, P.S.*

Jeffrey A. Thomson
Loren C. Ipsen
Elam & Burke
PO Box 1539
Boise, ID  83701-1539
Email:  jat@elamburke.com,
lci@elamburke.com
*Attorneys for Hawley Troxell Ennis & Hawley, Gary D. Babbitt, D. John Ashby and Richard Riley*

Bradley S. Keller
Byrnes Keller Cromwell, LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
bkeller@byrneskeller.com
kwolf@byrneskeller.com
*Attorneys for Hawley Troxell Ennis & Hawley, Gary D. Babbitt, D. John Ashby and Richard Riley*

**DISCOVERY MASTER ORDER NO. 22** – 5

014451.0001
GPDMS:14965696.1

**9-ER-2151**

Daniel Loras Glynn
Jones Williams Fuhrman Gourley, P.D.
225 N 9th Street, Suite 820
Boise, ID 83701
Email: dglynn@idalaw.com
*Attorneys for AIA Services Corporation,*
*AIA Insurance, Inc. and Attorneys for Connie*
*Taylor Henderson, Michael W. Cashman, Sr.*
*James Beck, Crop USA Insurance Services,*
*LLC, and Crop USA Insurance, Inc.*

Michael S. Bissell
Tyler S. Waite
Campbell & Bissell, PLLC
Email:  mbissell@campbell-bissell.com,
twaite@campbell-bissell.com
*Attorneys for Reed J. Taylor*

Rebecca L. Dircks, *Pro Hac Vice*
Benesch, Friedlander, Coplan & Aronoff
333 W Wacker Drive, Suite 1900
Chicago, IL 60606-221
Email: rdircks@beneschlaw.com
*Attorneys for Interested Party CGB*
*Diversified, Inc.*

Roderick C. Bond
Roderick Bond Law Office, PLLC
601 108th Avenue NE, Suite 1900
Bellevue, WA  98004
Email:  rod@roderickbond.com
*Attorney for Dale L. Miesen*

 */s/ David R. Lombardi*
  David R. Lombardi

**DISCOVERY MASTER ORDER NO. 22** – 6

014451.0001
GPDMS:14965696.1

**9-ER-2152**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA  98004
Telephone: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Attorney for the Plaintiff Dale L. Miesen

UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>REPLY DECLARATION OF RICHARD T. McDERMOTT TO HAWLEY TROXELL DEFENDANTS' OPPOSITION TO PLAINTIFF'S RESPONSE TO DISCOVERY MASTER INTERIM REPORT AND RECOMMENDATION CONCERNING CASE MANAGEMENT ORDER **[DKT 813]** |

DECLARATION OF RICHARD T. McDERMOTT - 1

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

Defendants/Third-Party Plaintiffs,

v.

REED TAYLOR, an individual,

Third-Party Defendant.

REED TAYLOR, an individual,

Third-Party Defendant/ Counterclaimant,

v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

Counterdefendants.

DECLARATION OF RICHARD T. McDERMOTT - 2

**9-ER-2154**

I, Richard T. McDermott, declare:

1.     I am over the age of eighteen and am competent to testify in court, including as to the matters set forth in this Declaration. This Declaration and my opinions herein are based on personal knowledge, education, training, and experience.

2.     The paragraphs under the headings Education, Qualifications and Experience, Publications Authored and Definitions for Terms Used in this Declaration in my Declaration in support of Seventh Motion To Compel Re Privilege And Work Product dated January 6, 2020 (Dkt. 783-2) are hereby incorporated by reference into this Declaration.

3.     In their opposition to plaintiff's response to the Discovery Master Interim Report and Recommendation Concerning Case Management Order, the Hawley Troxell Defendants make several statements regarding the Declarations that I submitted in this case on December 18, 2019 and January 6, 2020, which I will address separately. I reiterate that based on the circumstances of the status of this case that February 21, 2020 would be the fairest and most feasible deadline for my rebuttal opinions and Report.

4.     In my December 18, 2019 Declaration, I requested an extension until January 21, 2020 "to submit my Rebuttals *based on the information that I have obtained and been provided as of the date of this Declaration . .*"[1] On December 27, 2019, the Controlling AIA Defendants [2]produced the Hawley Troxell Defendants' billing records in unredacted form (the "Unredacted Billing Records"). They are the equivalent of a discovery production earthquake. They consist of more than 570 pages, extending over an eleven-year period. They are replete with information damaging to the Hawley Troxell Defendants. Among other matters, they contain much information

---

[1] (Emphasis supplied.)

[2] The Hawley Troxell Defendants previously produced a heavily redacted form of their billing records *See* Dkts. 449-82–88. They were practically indecipherable.

DECLARATION OF RICHARD T. McDERMOTT - 3

refuting the Hawley Troxell Defendants' limited scope of representation and non – general counsel defenses. I have been able to review the Unredacted Billing Records, but I have not been able to analyze them in conjunction with (i) other documents including those produced by the Hawley Troxell Defendants' three experts, (ii) contemporaneous actions of the Hawley Troxell Defendants or (iii) the filings in the underlying lawsuits; nor have I been able to finalize my opinions regarding the Unredacted Billing Records themselves, including opinions regarding the limited scope of representation and non-  general counsel defenses referred to above. For these reasons alone, I am still requesting an extension until February 21, 2020, as originally requested.

5.      My January 6, 2020 Declaration was submitted in support of Miesen's Seventh Motion to Compel Re; Privilege And Work Product.  The primary purpose of my January 6, 2020 Declaration was to demonstrate that it is imperative I have the opportunity to review all of the Withheld Privileged and Work Product Documents (including that relating to all work and communications referenced in the Unredacted Billing Records) in order to fully and fairly prepare rebuttals and additional opinions. Although my preparation of that Declaration did require a number of hours, it is unclear what the Hawley Troxell Defendants mean when they state that my work on that Declaration shows I have had "plenty of time to develop opinions based on the information he has reviewed to date." A principal point of my Declaration was that the information I have been provided does not include critically important material which continues to be withheld. The Hawley Troxell Defendants place emphasis on my statements that their experts have not caused me to change my opinions, but that is not the point. I believe that the new information I have received and that which has still not been produced will allow me to express additional opinions, as well as to advance additional reasons for the rebuttal of the opinions expressed by their experts.

DECLARATION OF RICHARD T. McDERMOTT - 4

**9-ER-2156**

6.      On January 9, 2020, after the conference with the Discovery Master, Mr. Bond advised me that the Discovery Master would be recommending that my Report be submitted by January 23, 2020 and that I should have a draft available for him to review thoroughly prior to that date. As he requested, I had such a draft available for Mr. Bond's review on January 22, 2020. However, because of the literally nonstop activity in this Lawsuit, including numerous court filings and Mr. Bond's travelling to and attending depositions, he and I have not had an opportunity to even discuss on the telephone the contents of my Report, although we do speak regularly about developments in this Lawsuit. I have continued to work diligently on my review of the documents and the preparation of my Report. My draft Report presently contains 111 more pages than my October 18, 2019 Report. I need to review my draft with Mr. Bond before I can finalize it. This is a complex case.

7.      In the other cases in which I have rendered expert opinions, I was not required to submit opinions until discovery had been completed, thus allowing me to opine based on all the available facts and information. In this Lawsuit, the due date for my expert report was August 5, 2019, months before the completion of discovery. I complied; and also produced Supplements on August 12, 2019 and October 18, 2019. In my Declaration of December 18, 2019, I stated: "if I am required to present my Rebuttal Reports before I have had an opportunity to review all of the relevant documents and study the transcripts of the forthcoming Depositions, I would be in the position of having to prepare Supplemental Report(s), the need for which can be avoided by an orderly, manageable and cost effective expert report procedure. If I am not provided more time, my efficiency will be impacted and the fees I charge for my work will also increase to the detriment of Mr. Bond and Mr. Miesen." That statement is all the more true today.

DECLARATION OF RICHARD T. McDERMOTT - 5

9-ER-2157

8.      For the reasons stated above, I again respectfully request that this Court extend the deadline for my Report (including my rebuttal opinions) until February 21, 2020 so that I may fairly, fully and efficiently proceed with the preparation of my Report and rebuttal opinions based on the documents and information presently in my possession. (I would still need to supplement based on any other additional information provided in the future.) If the Court decides not to grant that extension, in light of the fact that I will be attending an out of town board meeting and will be unavailable on Wednesday and Thursday of this week and based on my understanding of Mr. Bond's schedule, I am respectfully request that the Court grant me an extension until at least February 4, 2020 to finalize the current version of my Report as its presently exists and I will continue to supplement it in the future.

> I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

*January 27, 2020, New York, New York*                      */s/ Richard T. McDermott*
Date and City and State Signed                      Richard T. McDermot

DECLARATION OF RICHARD T. McDERMOTT - 6

**9-ER-2158**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of January 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:    jat@elamburke.com
Loren C. Ipsen:    lci@elamburke.com
Joyce Ann Hemmer:    jah@elamburke.com
Bradley S. Keller:    bkeller@byrneskeller.com
Alyson Anne Foster:    aaf@aswdpllc.com
Taylor L. Bruun:    tlb@aswdpllc.com
Benjamin A. Schwartzman:    bas@aswdpllc.com
Peter L. Steinman:    psteinman@mrllp.com
Tyler Scott Waite:    twaite@campbell-bissell.com
Michael Scott Bissell:    mbissell@campbell-bissell.com
David R. Lombardi:    drl@givenspursley.com
Daniel Loras Glynn:    dglynn@idalaw.com

_/s/ Roderick C. Bond_
Roderick C. Bond

DECLARATION OF RICHARD T. McDERMOTT - 7

**9-ER-2159**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA  98004
Telephone: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Attorney for the Plaintiff Dale L. Miesen

UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>**v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>DECLARATION OF RICHARD T. McDERMOTT IN SUPPORT OF SEVENTH MOTION TO COMPEL RE: PRIVILEGE **[Dkt. 783]** |

DECLARATION OF RICHARD T. McDERMOTT - 1

**9-ER-2160**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

          Defendants/Third-Party Plaintiffs,

    **v.**

REED TAYLOR, an individual,

          Third-Party Defendant.

REED TAYLOR, an individual,

          Third-Party Defendant/ Counterclaimant,

    **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

          Counterdefendants.

DECLARATION OF RICHARD T. McDERMOTT - 2

**9-ER-2161**

I, Richard T. McDermott, declare:

1.  I am over the age of eighteen and am competent to testify in court, including as to the matters set forth in this declaration. This declaration and my opinions herein are based on personal knowledge, education, training, and experience.

2.  The concern revealed by the Hawley Troxell Defendants in their opposition to Plaintiff's Seventh Motion to Compel about the prospect of the disclosure of the details of the work they did in purporting to represent the AIA Corporations is palpable. The only result I am advocating for is the disclosure of information which will enable me to complete my work. While the Unredacted Billing Records form the basis for some of my opinions, they also demonstrate that there are additional documents that will enable me to fully and fairly express relevant additional opinions.

3.  In my previous Declaration,[1] I stated the following: "As I am sure this Court is well aware, attorney-client privilege is generally always waived upon the filing of a lawsuit by a client against an attorney. It would be unfair to Mr. Miesen if he is not allowed the use of the same privileged information and work product that AIA Services and AIA Insurance would have been permitted to use had they been directly pursuing their claims against the Hawley Troxell Defendants." That statement is all the more true in the light of the revelations contained in the Unredacted Billing Records.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

*February 7, 2020, New York, New York*                    */s/ Richard T. McDermott*
Date and City and State Signed                     Richard T. McDermott

---

[1] Dkt. 403-2, p. 9 ¶ 26.

DECLARATION OF RICHARD T. McDERMOTT - 3

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 7th day of February 2020 I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:     jat@elamburke.com
Loren C. Ipsen:     lci@elamburke.com
Joyce Ann Hemmer:     jah@elamburke.com
Bradley S. Keller:     bkeller@byrneskeller.com
Alyson Anne Foster:     aaf@aswdpllc.com
Taylor L. Bruun:     tlb@aswdpllc.com
Benjamin A. Schwartzman:   bas@aswdpllc.com
Peter L. Steinman:     psteinman@mrllp.com
Tyler Scott Waite:     twaite@campbell-bissell.com
Michael Scott Bissell:     mbissell@campbell-bissell.com
David R. Lombardi:     drl@givenspursley.com
Daniel Loras Glynn:     dglynn@idalaw.com

/s/ Roderick C. Bond
Roderick C. Bond

DECLARATION OF RICHARD T. McDERMOTT - 4

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA  98004
Telephone: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Attorney for the Plaintiff Dale L. Miesen

UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>**v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>PLAINTIFF DALE L. MIESEN'S MEMORANDUM OF LAW IN SUPPORT OF HIS EIGHTH MOTION TO COMPEL RE: AIA SERVICES CORPORATION AND AIA INSURANCE, INC. |

MEMORANDUM OF LAW IN SUPPORT OF EIGHTH MOTION TO COMPEL - i

**9-ER-2164**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

        Defendants/Third-Party Plaintiffs,

      **v.**

REED TAYLOR, an individual,

        Third-Party Defendant.

REED TAYLOR, an individual,

        Third-Party Defendant/ Counterclaimant,

      **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

        Counterdefendants.

MEMORANDUM OF LAW IN SUPPORT OF EIGHTH MOTION TO COMPEL - ii

## **TABLE OF CONTENTS**

I.      ARGUMENT ......................................................................................................... 1

     A.      Motion to Compel Standard. ...................................................................... 1

     B.      This Court Should Compel AIA Services to Provide Answers and Responsive Documents to Miesen's Second Set of Interrogatories and Requests for Production. ................................................................................ 1

     C.      This Court Should Compel AIA Insurance to Provide Answers and Responsive Documents to Miesen's Second Set of Interrogatories and Requests for Production. ........................................................................... 1

     D.      This Court Should Compel AIA Services to Produce Complete Check Registers, Due-To/Due-From Accounts and All Word Files, Excel Files and Related Electronic Files. ......................................................... 2

     E.      This Court Should Compel AIA Insurance to Produce Complete Check Registers, Due-To/Due-From Accounts and All Word Files, Excel Files and Related Electronic Files. ......................................................... 2

     F.      John Taylor Should Be Ordered to Comply on Behalf of the AIA Corporations. .............................................................................................. 2

     G.      Miesen's Fed R. Civ. P. 37(a) Certification. .............................................. 3

II.     CONCLUSION ..................................................................................................... 3

CERTIFICATE OF SERVICE ...................................................................................... 4

Plaintiff Dale L. Miesen ("Miesen") submits this Memorandum of Law in Support of His Eighth Motion to Compel Re: AIA Services Corporation and AIA Insurance, Inc. (and against John Taylor as well):

## I.   ARGUMENT

### A.  Motion to Compel Standard.

This Court is aware of the motion to compel standards. **Fed. R. Civ. P. 37(a)-(b)**; *Edmark Auto, Inc. v. Zurich Am. Ins. Co.*, No. 1:15-CV-00520-ELJ-CWD, 2018 WL 2224044, at *4 (D. Idaho May 15, 2018).

### B.  This Court Should Compel AIA Services to Provide Answers and Responsive Documents to Miesen's Second Set of Interrogatories and Requests for Production.

On December 31, 2019, Miesen served his Second Set of Interrogatories and Requests for Production of Documents upon AIA Services. (3/3/20 Bond Decl. ¶ 3, Ex. A.) However, no answers, responses or responsive documents have been produced. This Court should compel AIA Services to provide proper answers to Interrogatories No. 4-24, proper responses to Requests for Production No. 121-129, and produce responsive electronic and traditional documents (the definition of "documents" includes electronic files and traditional forms of documents)..

### C.  This Court Should Compel AIA Insurance to Provide Answers and Responsive Documents to Miesen's Second Set of Interrogatories and Requests for Production.

On December 31, 2019, Miesen served his Second Set of Interrogatories and Requests for Production of Documents upon AIA Insurance. (3/3/20 Bond Decl. ¶ 4, Ex. B.) However, no answers, responses or responsive documents have been produced. This Court should compel AIA Insurance to provide proper answers to Interrogatories No. 4-24, proper responses to Requests for Production No. 121-129, and produce responsive electronic and traditional documents (the definition of "documents" includes electronic files and traditional forms of documents).

MEMORANDUM OF LAW IN SUPPORT OF EIGHTH MOTION TO COMPEL - 1

**D. This Court Should Compel AIA Services to Produce Complete Check Registers, Due-To/Due-From Accounts and All Word Files, Excel Files and Related Electronic Files.**

AIA Services failed to produce all check registers, due-to/due from accounts, Excel accounting spreadsheet files, Word documents and related accounting information and reports stored electronically.  Miesen requests that all such information be ordered to be produced by AIA Services as required in Requests for Production Nos. 4-7 and 120, together with the supporting documents for each line item. (3/3/20 Bond Decl. ¶¶ 5 & 7, Ex. C & E.)

**E. This Court Should Compel AIA Insurance to Produce Complete Check Registers, Due-To/Due-From Accounts and All Word Files, Excel Files and Related Electronic Files.**

AIA Services failed to produce all check registers, due-to/due from accounts, Excel accounting spreadsheet files, Word documents and related accounting information and reports stored electronically. Miesen requests that all such information be ordered to be produced by AIA Services as required in Requests for Production Nos. 4-7 and 120, together with the supporting documents for each line item. (3/3/20 Bond Decl. ¶¶ 6-7, Ex. D-E.)

**F. John Taylor Should Be Ordered to Comply on Behalf of the AIA Corporations.**

A party is entitled to obtain any information within the "responding party's possession, custody, or control." **Fed. R. Civ. P. 34(a)(1)**. "[F]ederal courts have consistently held that documents are deemed to be within [a party's] 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody, or control, **or has the legal right to obtain the documents on demand**." *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (emphasis in original).

Here, this Court has already ruled that John Taylor has custody and control over the records of the AIA Corporations. (Dkt. **692** at 12.) Judge Dale adopted that ruling. (Dkt. **734**.) Neither John Taylor nor anyone else appealed those orders. Thus, John Taylor must produce the documents.

MEMORANDUM OF LAW IN SUPPORT OF EIGHTH MOTION TO COMPEL - 2

**G.  Miesen's Fed R. Civ. P. 37(a) Certification.**

Miesen certifies his counsel in good faith attempted to confer with counsel in order to obtain the above discovery without court action; however, the AIA Corporations are not represented by counsel. (3/3/20 Bond Decl. ¶ 2.) Despite repeated requests to resolve the issues and meet and confer further, Martelle and Glynn failed to so. (*Id.*)

## II.    CONCLUSION

For the reasons articulated above, this Court should grant Miesen's Motion to Compel.

DATED:  This 3rd day of March 2020.

RODERICK BOND LAW OFFICE, PLLC

By:    */s/ Roderick C. Bond*
        Roderick C. Bond
        Attorney for the Plaintiff Dale L. Miesen

MEMORANDUM OF LAW IN SUPPORT OF EIGHTH MOTION TO COMPEL - 3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day of March 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:     jat@elamburke.com
Loren C. Ipsen:     lci@elamburke.com
Joyce Ann Hemmer:     jah@elamburke.com
Bradley S. Keller:     bkeller@byrneskeller.com
Alyson Anne Foster:     aaf@aswdpllc.com
Taylor L. Bruun:     tlb@aswdpllc.com
Benjamin A. Schwartzman:     bas@aswdpllc.com
Peter L. Steinman:     psteinman@mrllp.com
Tyler Scott Waite:     twaite@campbell-bissell.com
Michael Scott Bissell:     mbissell@campbell-bissell.com
David R. Lombardi:     drl@givenspursley.com
Daniel Loras Glynn:     dglynn@idalaw.com

/s/ Roderick C. Bond
Roderick C. Bond

MEMORANDUM OF LAW IN SUPPORT OF EIGHTH MOTION TO COMPEL - 4

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA  98004
Telephone: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Attorney for the Plaintiff Dale L. Miesen

UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>PLAINTIFF DALE L. MIESEN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS |

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - i

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

        Defendants/Third-Party Plaintiffs,

    **v.**

REED TAYLOR, an individual,

        Third-Party Defendant.

REED TAYLOR, an individual,

        Third-Party Defendant/ Counterclaimant,

    **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

        Counterdefendants.

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - ii

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................ 1

II. ARGUMENT ............................................................................................... 1

    A. Standard. .............................................................................................. 1

    B. This Court Should Order John Taylor to Be Deposed for Three Additional Days in His Individual Capacity and as the Rule 30(b)(6) Designees for the AIA Corporations and CropUSA Entities Because John Taylor Never Prepared or Reviewed a Single Document in Preparation for the Rule 30(b)(6) Depositions and Miesen's Examination of Him Was Impeded and Unfairly Not Completed. ....................................................................... 1

        1. This Court Should Order Three Days of New Depositions Because AIA Services, AIA Insurance, CropUSA and CropUSA Insurance Services Violated Rule 30(b)(6) Because John Taylor Did Not Prepare or Review any Documents for the Deposition. ............................. 2

        2. Even John Taylor Had Prepared for the Rule 30(b)(6) Depositions, Most All of His Answers Establish that He Was Not Prepared and That He Was Providing Improper and Evasive Answers. ......................... 7

        3. Assuming that John Taylor Had Prepared for the Rule 30(b)(6) Depositions, His Testimony Is Separately Sanctionable Based On His Evasive and Unknowledgeable Answers. ................................................. 17

        4. Defense Counsel's Speaking Objections and Coaching Are Improper Tactics. ...................................................................................... 18

        5. Defense Counsel's Instructions Not to Answer Are Improper and Sanctionable. ..................................................................................... 19

        6. Miesen Needs Three Additional Days of Deposition Time to Complete the Depositions of John Taylor, the AIA Corporations and the CropUSA Entities. ....................................................................... 20

        7. This Court Should Set a Protocol for the Remaining Depositions. .......... 21

        8. Miesen Should Be Awarded Attorneys' Fees, Court Reporter and Videographer Fee, and Travel and Accommodation Expenses. ............... 21

    C. Miesen's Fed R. Civ. P. 37 Certification. ............................................. 22

III. CONCLUSION ........................................................................................... 22

CERTIFICATE OF SERVICE ................................................................................ 23

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - iii

**9-ER-2173**

Miesen submits this Memorandum of Law in Support of Miesen's Motion:

## I.     INTRODUCTION

Miesen seeks leave of the court to depose John Taylor, the AIA Corporations and the CropUSA Entities for three additional days and the award of sanctions because John Taylor did not prepare for the Rule 30(b)(6) depositions and he provided evasive and incomplete answers, among other reasons. This Court should grant the motion and award sanctions to Miesen.

## II.     ARGUMENT

### A.  Standard.

"[A] master may: (A) regulate all proceedings; (B) take all appropriate measures to perform the assigned duties fairly and efficiently," **Fed. R. Civ. P. 53(c)(1)(A)-(B)**, and "impose on a party any noncontempt sanction provided by Rule 37..." **Fed. R. Civ. P. 53(c)(2)**.

### B.  This Court Should Order John Taylor to Be Deposed for Three Additional Days in His Individual Capacity and as the Rule 30(b)(6) Designees for the AIA Corporations and CropUSA Entities Because John Taylor Never Prepared or Reviewed a Single Document in Preparation for the Rule 30(b)(6) Depositions and Miesen's Examination of Him Was Impeded and Unfairly Not Completed.

> Unless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours. *The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination.*

**Fed. R. Civ. P. 30(d)(1)** (emphasis added). If "the deponent has already been deposed in the case," leave must be obtained from the court. **Fed. R. Civ. P. 30(a)(2)(A)(ii)**. In addition, "[a] party seeking discovery may move for an order compelling an answer…This motion may be made if: (i) a deponent fails to answer a question asked under Rule 30 or 31…" **Fed. R. Civ. P. 37(a)(3)(B)(i)**. "By order, the court may alter the limits in these rules on the number of depositions…or on the length of depositions under Rule 30." **Fed. R. Civ. P. 26(b)(2)(A)**. An order to compel may be entered if a Rule 30(b)(6) deponent fails to appear for a deposition. **Fed. R. Civ. P. 37(d)(1)(A)(i)**.

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 1

Here, Miesen simultaneously deposed John Taylor in his individual capacity and in his capacity of the Rule 30(b)(6) designees for AIA Services, AIA Insurance, CropUSA and CropUSA Insurance Services on February 24-25, 2020 in a *failed* effort to consolidate what would have been at least five days of deposition testimony into two days. (4/13/20 Bond Decl. ¶ 3.) However, John Taylor was not prepared for the depositions and, in fact, he did not review a single document in preparation for his designation as the Rule 30(b)(6) deponent for AIA Services, AIA Insurance, CropUSA and CropUSA Insurance Services (even though Miesen uploaded all 463 of his primary exhibits to John Taylor's counsel before the deposition). Moreover, John Taylor's answers were incomplete and evasive. In addition, despite the fact that Reed Taylor, GemCap and the Hawley Troxell Defendants' completed their separate deposition of John Taylor just after 12:00 pm on the third day, Miesen was separately never permitted to cross examine John Taylor.

Accordingly, Miesen requests that this Court order John Taylor to sit for three additional days of depositions (which, together with the two prior days, would merely equate to a total of five days of depositions for himself and the four corporate defendants), the court set deposition protocols and that sanctions be awarded. The Glynn Group's position is that no further depositions should be ordered for John Taylor, the AIA Corporations or the CropUSA Entities and that no sanctions or relief should be awarded to Miesen. For the reasons that will be addressed below, this Court should award Miesen the relief and sanctions that he requests.

1. **This Court Should Order Three Days of New Depositions Because AIA Services, AIA Insurance, CropUSA and CropUSA Insurance Services Violated Rule 30(b)(6) Because John Taylor Did Not Prepare or Review any Documents for the Deposition.**

Because John Taylor did not prepare for the Rule 30(b)(6) depositions of the AIA Corporations and the CropUSA Entities (four distinct entities), he is deemed under the law to have failed to appear at the depositions taken by Miesen on February 24-25, 2020, this Court should

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 2

compel three additional days of testimony for all five parties and order John Taylor to be a prepared Rule 30(b)(6) designee for all of the requested topics in the notices to AIA Services, AIA Insurance, CropUSA and CropUSA Insurance Services. (4/13/20 Bond Dec. Ex. A-D.)

> The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify…The persons designated must testify about information known or reasonably available to the organization.

**Fed. R. Civ. P. 30(b)(6)**. *See QBE Ins. Corp. v. Jorda Enter., Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012) ("The testimony of a Rule 30(b)(6) witness represents the collective knowledge of the corporation, not of the specific individual deponents."); *F.C.C. v. Mizuho Medy Co., Ltd.*, 257 F.R.D. 679, 681 (S.D. Cal. 2009) ("the Rule 'implicitly requires persons to review all matters known or reasonably available to [the corporation] in preparation for the [Rule] 30(b)(6) deposition.'"); *Great Am. Ins. Co. of New York v. Vegas Const*. Co., 251 F.R.D. 534, 541 (D. Nev. 2008) (a Rule 30(b)(6) witness "must provide responsive underlying factual information even though such information was transmitted through a firm's corporate lawyers."); *Poole ex. rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 504 (D. Md. 2000) (an organization "has an obligation to investigate and identify and if necessary prepare a designee for each listed subject area"); *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 268 (2d Cir. 1999) ("To satisfy Rule 30(b)(6), the corporate deponent has an affirmative duty to make available such number of persons as will be able to give complete, knowledgeable and binding answers on its behalf."); *Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 278 (D. Neb. 1989) ("If the rule is to promote effective discovery regarding corporations the spokesperson must be informed.").

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 3

In addition, providing a plaintiff with discoverable information through non-30(b)(6) depositions and document production does not excuse the failure to prepare a corporate designee for the 30(b)(6) deposition. *Int'l Assoc. of Machinists & Aerospace Workers v. Werner–Masuda*, 390 F.Supp.2d 479, 489 (D. Md. 2005) (imposing sanctions); *In re Vitamins Antitrust Litigation*, 217 F.R.D. 229, 233 (D. D.C. 2002).

> Rule 30(b)(6) explicitly requires [an organization] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires such persons to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition. ***This interpretation is necessary in order to make the deposition a meaningful one and to prevent the "sandbagging" of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial***. This would totally defeat the purpose of the discovery process. The Court understands that preparing for a Rule 30(b)(6) deposition can be burdensome. However, this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business.

*United States v. Taylor*, 166 F.R.D. 356, 361 (M.D. N.C. 1996) (emphasis added).

> In reality if a Rule 30(b)(6) witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it. Indeed, we believe that the purpose behind Rule 30(b)(6) undoubtedly is frustrated in the situation in which a corporate party produces a witness who is unable and/or unwilling to provide the necessary factual information on the entity's behalf… "For courts to permit litigants to disregard the responsibilities that attend the conduct of litigation would be tantamount to 'encouraging dilatory tactics.'" Thus, we hold that when a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), "[p]roducing an unprepared witness is tantamount to a failure to appear" that is sanctionable under Rule 37(d).

*Black Horse Lane Assoc, LP v. Dow Chemical Corp.*, 228 F.3d 275, 304 (3rd Cir. 2000) (citations omitted). *See Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 289 (N.D. Cal. 2015) (The failure to produce a prepared and educated Rule 30(b)(6) designee is treated as a nonappearance under Rule 37(d)); *Pioneer Drive, LLC v. Nissan Diesel America, Inc.*, 262 F.R.D. 552 (D. Mont. 2009) (same); *Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co., Inc.*, 251 F.R.D. 534, 542 (D.

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 4

Nev. 2008) (same); ***Bank of New York v. Meridien BIAO Bank Tanzania Ltd.***, 171 F.R.D. 135, 151 (S.D.N.Y.1997) (same); ***Resolution Trust Corp. v. Southern Union Co., Inc.***, 985 F.2d 196, 197 (5th Cir. 1993) (same).

Here, John Taylor's failure to prepare for the Rule 30(b)(6) designee depositions for the AIA Corporations and the CropUSA Entities (four separate entities) constitutes the failure to appear for the depositions taken by Miesen on February 24-25, 2020 for purposes of Rule 37(d).[1]

**First**, Miesen served Rule 30(b)(6) Notices of Deposition upon the AIA Corporations and the CropUSA Entities. (4/13/20 Bond Decl. ¶¶ 3-7, Ex. A-D.) As established by the claims and damages requested in the TAC and the expert reports and disclosures for Miesen's two retained and one non-retained expert witness in the record, the topics listed in the four Rule 30(b)(6) notices are all proportional and relevant to the Miesen's claims and the defenses in this complex, multi-million-dollar derivative action spanning over two decades. (*Id.*; Dkts. **211**, **783-3**, **858-1**, **858-2**.)

**Second**, in response to the notices, John Taylor was designated as the sole Rule 30(b)(6) designee for the AIA Corporations and CropUSA Entities. (4/13/20 Bond Decl. ¶¶ 3-7, Ex. G, p. 18, 21, 108-09, 119, 122.) While the AIA Corporations and CropUSA Entities lodged objections, they did not move for a protective order as to any of the topics in the Rule 30(b)(6) notices and thus waived any relief in that regard. (*Id.*) Notably, Miesen's counsel uploaded 453 exhibits to John Taylor's counsel before the deposition in an effort to efficiently and fairly take the depositions. (*Id.* ¶¶ 9-10, Ex. F.) That effort was futile, however. (*Id.*)

**Third**, and most significantly, John Taylor utterly failed to comply with his duties to prepare for the Rule 30(b)(6) depositions for the AIA Corporations and the CropUSA Entities. He

---

[1] The one-half of deposition time on the third day was solely for questions asked by counsel for GemCap, Reed Taylor and the Hawley Troxell Defendants; Miesen's counsel was not permitted to cross-examine John Taylor on that third day or use the remaining part of the day to ask any other questions. (4/13/20 Bond Decl., ¶ 11, Ex. G, p. 745.)

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 5

did not prepare for any of the topics (nor did he review them prior to the deposition). He did not review any documents in preparation for the topics. And he failed to provide virtually any meaningful answers for those entities as required under the Rule 30(b)(6) standards.

> **Q.   Okay.  I'd uploaded the primary exhibits for the next two days.  Did you get a chance to skim through some of those documents?**
> A.   No.
>
>     \*        \*        \*
>
> **Q.   I think we went over earlier that you didn't review any documents in preparation for your testimony today, correct?**
> A.   No.
>
>     \*        \*        \*
>
> **BY MR. BOND:  And you didn't do any preparation for this deposition today so you can't tell me if this is accurate or not because you didn't look at any of the financial statements, correct?**
> THE WITNESS:  I did not do any specific preparation for this.

(4/13/20 Bond Decl., Ex. G, p. 21-22, 107, 169-170 (objections omitted).) Moreover, John Taylor admitted that, despite having been provided 463 of Miesen's exhibits prior to the deposition (*Id*. ¶ 9, Ex. F), he did not review them or any other pertinent documents in preparation for the depositions as required under Rule 30(b). (*E.g.*, 4/13/20 Bond Decl., Ex. G, p. 132-134, 171, 286, 310-311.) He did not even review the topics for the Rule 30(b)(6) deposition of AIA Services prior to the deposition. (*Id*. Ex. G, p. 108-109.) A review of the deposition transcript reveals that John Taylor provided virtually <u>no</u> meaningful information over the course of the two-day deposition taken for him, the AIA Corporations and the CropUSA Entities. (*Id*., p. 21-597.)

Thus, John Taylor was not prepared as required by Rule 30(b)(6) to testify for the AIA Corporations and the CropUSA Entities, which constitutes the failure to appear at the deposition. Accordingly, this Court should order the AIA Corporations and CropUSA Entities to produce knowledgeable and educated Rule 30(b)(6) designees for all of the topics listed in Miesen's notices of depositions and for them to sit for three more days of depositions. If person(s) other than John

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 6

Taylor are designated, then Miesen requests five additional days (one day for each entity[2] and one day for John Taylor in his individual capacity).

### 2. Even John Taylor Had Prepared for the Rule 30(b)(6) Depositions, Most All of His Answers Establish that He Was Not Prepared and That He Was Providing Improper and Evasive Answers.

Assuming John Taylor had actually spent time reviewing documents and preparing for the Rule 30(b)(6) depositions for the AIA Corporations and the CropUSA Entities, the transcript reveals that he provided evasive and improper answers that constituted the failure to answer (which confirms that he did not prepare). (4/13/20 Bond Decl. Ex. G, p. 21-597.) The following provide concrete examples of how John Taylor was unprepared for the Rule 30(b)(6) depositions, his refusal to squarely answer questions, and his evasiveness in answering questions.

**First**, Topic 1 of the notices for the AIA Corporations and CropUSA requested testimony regarding the years that shareholder meetings were held since 1999 and the reasons why meetings were not held in certain years. (4/13/20 Bond Decl., Ex. A, p. 1, Ex. B, p. 1, Ex. C, p. 3.) However, John Taylor did not even know what years shareholder meetings where held:

**Q.  Well, let's go to AIA Services.  When was the last shareholder meeting held for AIA Services?**
A.  I don't recall.
**Q.  And what do the books and records reflect for that?**
A.  I don't recall.
*          *          *

**Q.  And why are you qualified to serve on the board of AIA Services?**
A.  Because I've been elected, duly elected by the shareholders.
**Q.  And when was that?**
A.  At the last shareholder meeting.
**Q.  In 2012?**
THE WITNESS:  I don't recall the exact date.
*          *          *

**Q.  How long has it been since Crop USA had a shareholder meeting?**
A.  I don't recall.
**Q.  Same as AIA, seven, eight years?**
THE WITNESS:  The books and records of the company would reflect that.
**Q.  In 2012?**

---

[2] This assumed that only one designee would be designated for each entity. If more than one designee is designated, Miesen requests one day for each designee as contemplated under the Notes to Rule 30.

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 7

**9-ER-2180**

THE WITNESS:  I don't recall the exact date.

*     *     *

**Q.   BY MR. BOND:  Before the shareholders meeting was held in 2012 for AIA Services, when was the last shareholder meeting held?**

A.   I don't recall.

*     *     *

**BY MR. BOND:  Does the AIA Services bylaws require an annual shareholder meeting?**

A.   It may.

**Q.   You haven't had an annual shareholder at AIA Services every year since 1999, have you?**

THE WITNESS: We have had annual shareholder meeting when it was appropriate.

**Q.   BY MR. BOND:  And how many years from 1999 to the present have you had an annual shareholder meeting at AIA Services?**

A.   The number would be indicated in the books and records of the company.

*     *     *

**Q.   BY MR. BOND:  And when was the next annual shareholder meeting, do you recall, after Exhibit 210?**

A.   I do not.

**Q.   Does 2012 sound about right to you?**

A.   It may have been.

**Q.   The reverse stock split shareholder meeting in July of 2012?**

THE WITNESS: The books and records would show when the next shareholders meeting occurred.

*     *     *

**Q.   Okay.  And from the date of this complaint was filed to the present time, there's been one shareholder meeting for AIA Services, correct?**

THE WITNESS:  I believe that the books and records would indicate a number of shareholder meetings.

*     *     *

**Q.   And since the filing of Exhibit 305, did you, James Beck, Connie Henderson, or Michael Cashman take any action at all to start holding annual shareholder meetings to make disclosure to shareholders or otherwise stop any of the transactions and actions alleged in Exhibit 305?**

THE WITNESS:  There are a number of shareholder meetings that are indicated in the books and records as provided to you.

(4/13/20 Bond Decl., Ex. G, p. 55, 57-58, 72, 83, 332, 490, 566, 572 (objections omitted).)

**Second**, Topic 3 for the notice to the AIA Corporations required testimony regarding the

adoption and authentication of their bylaws and any modifications or amendments thereto.

(4/13/20 Bond Dec., Ex. A, p. 4, Ex. B, p. 4.) In response to that topic, John Taylor could not even

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 8

authenticate the bylaws (he also refused to authenticate a copy simply because they had other bates

numbers on them) and he did not even review the bylaws in preparation for the deposition:

> **Q.   And the AIA Insurance bylaws were not amended until 2016 as you were testifying a little bit ago, correct?**
> A.   You'll have to refer to the books and records.  I don't recall if I amended.
> *          *          *
> **Q.   BY MR. BOND:  Okay.  So -- and we will look at those later in the deposition. But I just wanted to confirm that Exhibit 124 are the bylaws of AIA, Inc., AIA Insurance that applied until the time you amended them in 2016, correct?**
> A.   These do not have my Bates stamp on it. It is another Reed J. Taylor Bates stamp.
> **Q.   This Bates stamp says RJT-AIA which indicates that when you provided Reed a box of documents in 2006 that's where these came from.**
> THE WITNESS:  These weren't provided by us.
> **Q.   BY MR. BOND:  Yes, they were provided by you.  Diane Whisner?**
> A.   To whom?
> **Q.   To Reed and me in a big box of documents.**
> A.   And Reed Bates stamped them?
> **Q.   Yes.**
> A.   Okay.  Subject to providing the AIA Bates stamped documents.
> *          *          *
> **Q.   And that was another topic that you were here to testify about.  So as we sit here today, you can't tell me whether these are the true and correct copy of the bylaws for AIA Insurance up until 2016 or not, correct?**
> A.   Not without referring to documents Bates stamped by the company.
> *          *          *
> **Q.   Okay.  And in the mid '90s they were modified.  Do you recall being modified to allow more leeway on when the annual shareholder meeting could occur?**
> THE WITNESS:  I don't recall.
> *          *          *
> **BY MR. BOND:  Okay.  And in preparation for your deposition today, you didn't bother to check to see when AIA Services' restated bylaws were amended, correct?**
> THE WITNESS:  That was not part of my preparation.
> **Q.   BY MR. BOND:  Well, you didn't prepare. We already established that, correct?**
> THE WITNESS:  I think what I have tried to indicate is that you have provided me with 600,000 documents of which I am familiar.  But my recollection, unless they are Bates stamped, I cannot verify at this time without comparing the document to the correctly Bates stamped document. This appears to be a document as of 5-5-89 and correctly states the bylaws as of that date.[3]
> **Q.   BY MR. BOND:  And –**
> A.   And I cannot recall the date in which they were amended.

---

[3] That copy of the bylaws do not reflect the amendments John Taylor claims occurred in the '90s and 2016.

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 9

(4/13/20 Bond Decl., Ex. G, p. 280, 282-283, 285-87 (objections omitted).)

**Third**, Miesen requested the AIA Corporations to provide testimony regarding the improper loans to Pacific Empire Radio Corp.[4] ("PERC") and the total amount presently owed. (4/13/20 Bond Decl., Ex. A, p. 6 (Topic 13), Ex. B, p. 5 (Topic 10), Ex. G, p. 24-25 (agreeing to definition of "PERC").) John Taylor could not provide the total amount owed and admitted that the books and records cannot determine the amount owed or the accrued interest:[5]

> **Q.  How much does Pacific Empire Radio presently owe AIA?**
> A.   The books and records of the company would indicate the amount.
> **Q.  Are you talking about the financial statements?**
> A.   Yes.
> **Q.  And the financial statements don't show interest, correct?**
> **Q.  BY MR. BOND:  Accrued interest?**
> THE WITNESS:  Would you repeat that?
> **Q.  BY MR. BOND:  The financial statements for AIA Services does not show the accrued interest that is owed by Pacific Empire Radio to AIA Services, correct?**
> THE WITNESS:  The financial statements speak  for themselves and include -- and they do include some interest, accrued interest.
> **Q.  BY MR. BOND:  Some but not all?**
> A.   They do not.
> **Q.  Who determines how much interest is shown on the financial statements for the PERC loans?**
> A.   I'm not sure what you mean by who and when.
> *          *          *
> **Q.  If you look at Page 3 of Exhibit 19, it says "Due from PERC" --**
> **Q.  BY MR. BOND:  Do you see that?**
> A.   Uh-huh.
> **Q.  "Due from PERC 754,987."  So as of that date, PERC owed AIA Services 754,987 plus interest, correct?**
> A.   Correct.
> **Q.  And how does the reader know how much interest has accrued on that?**
> A.   They wouldn't.
> *          *          *

---

[4] PERC is another entity controlled by John Taylor, which has been improperly and unlawfully funded by AIA Services. (*E.g.*, Dkts. **583-12**, **858-1** at 28-30.)

[5] John Taylor has not even provided financial statements for AIA Services for any quarter in 2019 or in 2020, which is consistent with his inability to provide information. (4/13/20 Bond Decl. ¶ 10.)

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 10

**Q.   BY MR. BOND:   And again, if we look at Page 2 on Exhibit 21,[6] we don't -- the reader doesn't know how much interest has accrued because you just have the principal balance, correct?**
THE WITNESS:  I don't know the answer to that.
**Q.   BY MR. BOND:   Well, you approved these financial statements, correct?**
A.   You are asking me how much of the amount of due from -- due from investment affiliated interest, accrued interest and how much is principal.  I can't answer that by looking at this.

*          *          *

**Q.   So this includes accumulated interest as well?**
A.   Some.
**Q.   How much, do you know?**
A.   I don't recall.
**Q.   What was the interest rate that you accumulated interest on the prior balance?**
A.   I don't recall that now.
**Q.   So did this promissory note in Exhibit 315 as of the date of this note reflect all of the sums owed by Pacific Empire Radio to the AIA corporations?**
A.   I believe so.
**Q.   Okay.  And were any payments – have any payments been made on this note?**
A.   There have been reductions in this note for payments -- for amounts of Pacific Empire services provided to AIA for the last several years.
**Q.   And have you been accruing the interest at 12 percent on this note as indicated?**
A.   The interest accrues at 12 percent.  If you're asking if it is on the books and records of the company, it is not…

(4/13/20 Bond Decl., Ex. G, p. 81-82, 186-189, 575-576 (objections and dialogue omitted).)

**Fourth**, topics 23 and 24 requested testimony regarding the approval and total amount of

attorneys' fees and costs paid in the Donna Taylor consolidated state court cases. (4/13/20 Bond

Decl., Ex. A, p. 8.) Once again, John Taylor could provide no meaningful answers:

**Q.   And how much money has AIA spent litigating to Donna Taylor for what's owed to her?**
THE WITNESS:  We don't disclose that because the case is still pending.
**Q.   BY MR. BOND:   Much more than what it would have taken just to pay her back in 2008, isn't it?**
THE WITNESS:  I can't answer that because it is confidential and part of the pending litigation.
**Q.   BY MR. BOND:   Why is it confidential?**
A.   Because it is part of the pending litigation and has not been concluded.
**Q.   The litigation fees the company has paid in litigation is confidential?**

---

[6] Exhibit 21 is AIA Services' 2012 financial statements. (4/13/20 Bond Decl., Ex. G, p. 6.)

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 11

A.   It is part of attorney/client – subject to -- we believe it is part of -- I believe it is part of attorney/client privilege and will not be

         *                *                *

**BY MR. BOND:  According to the books and records of AIA, how much money has been paid?  And I don't need to know any information about attorney/client privilege.  I just want to know how much money has been paid from AIA towards the Donna Taylor versus Taylor lawsuits.**

A.   That number would be included in the amounts indicated on the line item "legal fees" for AIA during that period of time.

**Q.   As one of the lawsuits that money has been paid towards from AIA, correct?**

A.   It would be incorporated in that line item.

**Q.   But it is not possible to know what law firms have been paid a certain amount for a certain defendant from that one line item in the financial statement, correct?**

A.   I believe that we have provided billing statements for all attorneys except for those that have current litigation involvement.

**Q.   And you have not provided all of the redacted billing records for those either, you are just holding back all the records; is that what you are saying?**

THE WITNESS:  We have not provided any billing records for the Donna Taylor case.

**Q.   BY MR. BOND:  And so you're refusing to answer the question on how much money in attorney fees and costs that AIA has paid for the defense --**

A.   I am not going to speculate on the dollar amount.

**Q.   And you understand that that was one of the topics that you were asked to prepare for today to be able to talk about was the amount of money that had been paid for defense costs in the Donna Taylor versus Taylor lawsuits?**

A.   We will be asking for -- whatever that dollar amount is, we will be asking for that reimbursement of that amount at the conclusion of the Donna Taylor case.

**Q.   And that's not my question again.  My question is, how much money AIA has paid for that lawsuit for yourself and the other defendants?**

A.   I have indicated before that we are -- those billing records -- all billing records for the cases except for the Donna Taylor and other pending cases have been provided by you -- to you.

**Q.   So you did not come prepared today to offer any specific numbers of the amount total paid for that litigation?**

**Q.   BY MR. BOND:  Correct?**

THE WITNESS:  I have prepared and provided to you the legal fees of the company for the last several years including the Donna Taylor.  And if you would compare those statements with the amount of money paid to other law firms, you might be able to find out what that is.  But I'm not prepared at this time to do that calculations for you.

**Q.   BY MR. BOND:  And you've not produced any reports from internal AIA accounting that totals up that amount for us, correct?**

THE WITNESS:  If we did, it would be inadvertent.

(4/13/20 Bond Decl., Ex. G, p. 243-247 (objections and dialogue with counsel omitted).)

Moreover, John Taylor is incorrect. The amount of fees incurred or paid for each party on each

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 12

matter is <u>not</u> privileged or protected. V*asquez v. Leprino Foods Co.,* No. 1:17-cv-00796-AWI-BAM, 2019 WL 1934015, at *2 (E.D. Cal. April 30, 2019); *Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("Our decisions have recognized that the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege."). Thus, the AIA Corporations should be ordered to provide a witness who can testify regarding the amount of fees paid for each person/party for each lawsuit as requested by Miesen. (4/13/20 Bond Decl., Ex. A, p. 5-9 (Topics 10-11, 18-26, 29-34 Ex. B, p. 5-8 (Topics 9, 15-23, 26-31).)

**Fifth**, the notices for the AIA Corporations and CropUSA Entities included topics of:

The approval of (including board or shareholder approval), and total amount of, compensation, advances and reimbursements paid to John Taylor from 1999 through the present time, and the disclosure to shareholders of the amounts paid.

(4/13/20 Bond Decl., Ex. Ex A, p. 36 (Topic 36), Ex. B, p. 9 (Topic 33), Ex. C, p. 5-6 (Topic 26), D, p. 5 (Topic 10).) John Taylor could not provide the information (he had no idea) regarding his millions of dollars in improper compensation and advances (which Miesen is seeking to disgorge) and he improperly referred to the books and records (which do not provide the information either):

**Q. And since 1999, how much compensation have you paid yourself from AIA Services and AIA Insurance?**
THE WITNESS: That would be reflected in the records of the company that have been provided to you.
**Q. BY MR. BOND: Does over 3 million sound about right?**
THE WITNESS: I have no idea.
**Q. BY MR. BOND: How much money have you been paid from Crop USA since 1999?**
A. It would be reflected in the books and records of Crop USA that have been provided to you. I don't recall at this time.
**Q. And over 2 million sound about right to you of detailed compensation in either 1099, W2s or tax returns?**
A. I don't recall.
**Q. And the money that you've taken out of AIA Services and AIA Insurance since 1999 is just not reflected in the tax returns or the W2s or 1099s, correct?**

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 13

THE WITNESS:  The books and records of the company would reflect any transactions with me or either salary or otherwise.

Q.   BY MR. BOND:  And I appreciate your answer.  But my question was, you've taken money in excess of the amount that is reflected in the tax returns and the W2s and the 1099s, correct?

THE WITNESS:  I would think the books and records more accurately -- would be more accurately reflect that than my recollection.

Q.   BY MR. BOND:  I am glad you keep saying "books and records."  What are the books and records?  When you refer to the books and records, what are you talking about?

A.   I believe we provided some 600,000 pages of documents to you that included the quarterly and detailed financial records of the company since 1999.

But you were unable to pull a report for me that shows the amount of money that you have taken out since 1999?

A.   I think the books and records would accurately reflect that.

But you can't, as we sit here today, you couldn't direct me to any particular books or records that would tell me that information, can you?

THE WITNESS:  There are some 600,000 pages of documents that have been provided to you reflecting the transactions of the books and records of the company.[7]

\*          \*          \*

Q.   Okay.  And do you -- how much do you pay yourself?

THE WITNESS:  The books and records would indicate the salary.

\*          \*          \*

Q.   BY MR. BOND:  And since 1999, how has the board of directors authorized your compensation from the AIA corporations each year?  Or have you set that amount?

A.   I don't recall

\*          \*          \*

Q.   BY MR. BOND:  How much money in distributions have you taken from Crop USA Insurance Services?

THE WITNESS:  Whatever is reflected in the financial statements of Crop USA Insurance Services.

Q.   BY MR. BOND:  No more than what's reflected?

THE WITNESS:  I believe that the financial statements accurately reflect any transactions with the company or companies.

BY MR. BOND:  So does over 550,000 sound about Right?

THE WITNESS:  I don't recall.

\*          \*          \*

Q.   BY MR. BOND:  What did you do with all the money?

THE WITNESS:  I don't know how -- what do you say?

BY MR. BOND:  $6 million is a lot of money, isn't it?

---

[7] John Taylor testified that answers could be obtained from the 600,000 pages of documents had been produced on numerous times. (*E.g.*. 4/13/20 Bond Decl., Ex. G, p. 46, 95, 171, 283, 286, 365, 501.) Interestingly, more recently, he testified that there were "at least 1.5 million pages of documentation." (Dkt. **878** ¶ 3.) John Taylor can't even get the number of pages right.

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 14

THE WITNESS:  I do not agree with your premise of the fact that the financial statements will indicate the amount of compensation or distributions or additions relative to me.

(4/13/20 Bond Decl., Ex. G, p. 44-46, 67, 69, 123-126 (objections omitted).)

**Sixth**, two topics in each notice dealt with the preparation, interpretation and authentication of financial statements and tax returns for AIA Corporations and the CropUSA Entities. (4/13/20 Bond Decl., Ex. A, p. 7-8 (Topics 38 & 40), Ex. B, p. 9 (Topics 35 & 37), Ex. C, p. 8 (Topics 27 & 29), Ex. D, p. 3-4 (Topics 11 & 13).) Again, despite the fact that Miesen uploaded all of the financial statements and tax returns to John Taylor prior to the deposition and any copies that Miesen had obtained could only have been obtained from one of John Taylor many prior attorneys, John Taylor was unwilling to authenticate and testify regarding many tax returns and financial statements that were not bates stamped solely by him (even though some of his prior attorneys produced documents without bates stamps). (4/13/20 Bond Decl. ¶ 10.) For example:

> **Q.   BY MR. BOND:  Exhibit 16, is this a true and correct and authentic copy of the December 31st, 2007, consolidated financial statements for AIA Services?**
> A.   I don't know.
> **Q.   BY MR. BOND:  Have you had a chance, can you confirm?**
> A.   No, I cannot.
> **Q.   You can't?**
> A.   This is a document provided by Reed Taylor in the main case and does not appear to have AIA Bates stamp.
> **Q.   Does Reed Taylor have the means to prepare financial statements such as this?**
> THE WITNESS:  No, he doesn't.
> **Q.   BY MR. BOND: Yeah.  Thank you. So you won't authenticate this because it has an RJT Bates stamp?**
> A.   Correct.
> **Q.   And you understand that your own former lawyer, one of your other former ones, Siddoway, produced financial statements as well that were not Bates stamped?**
> THE WITNESS:  I can't comment on it.  I have no knowledge of what you're talking about.

(4/13/20 Bond Decl.  Ex. G, p. 168-69 (objections omitted); *see also Id.*, Ex. G, p. 172-74, 184-86, 209, 211-212, 226-27, 231-32, 269-270, 280-81, 283, 286, 289.) Notably, Mr. Glynn never advised Miesen's counsel prior to the deposition that there would be any issues with any

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 15

**9-ER-2188**

documents simply because they were bates stamped by Reed Taylor. (*Id.* ¶ 10.) This proves John Taylor is an obstructionist and intentionally failed to comply with his Rule 30(b)(6) obligations.[8]

**Seventh**, topics 38 and 81 requested testimony regarding the items on AIA Services' financial statements and the sources of revenues. (4/13/20 Bond Decl., Ex. A, p 9, 14.) However, John Taylor could not even testify as to certain line items in the financial statements. For example:

> **Q.   BY MR. BOND:  If we look at the revenues for AIA Services on Page 2 -- or sorry, Page 3, I mean.  So the revenues in 2015 were 167,000, right?**
> A.   In 2000 what?
> **Q.   2015.**
> A.   434,000.
> **Q.   The commission revenues.  What's the investment income?**
> A.   Investment income -- I don't recall.
> **Q.   What is other income?**
> A.   The other income I don't recall…

(4/13/20 Bond Decl., Ex. G, p. 197.)

**Eighth**, in topics 58 and 65 for AIA Services and AIA Insurance, Miesen requested information on board decisions for the lawsuit *Durant, et al., v. GemCap Lending I, LLC, et al.* (4/13/20 Bond Decl., Ex. A, p. 13 (Topic 65), Ex. B, p. 11-12 (Topic 58).) However, once again, John Taylor was not prepared to, or refused to, answer simple, fundamental questions on topics:

> **Okay.  And who -- did the board of directors of AIA Services authorize you to represent AIA Services and insurance in that lawsuit [*Durant v. GemCap*]?**
> A.   I don't recall.
> **BY MR. BOND:  You don't recall -- is there a board resolution for that?**
> A.   I don't recall.

(4/13/20 Bond Decl., Ex. G, p. 35-36 (objection omitted).)

**Ninth**, topic 78 requested a designee to provide testimony regarding AIA Services' "articles of incorporation, together with all amendments and restatements thereto, and the actions

---

[8] John Taylor could have compared any and all of the uploaded exhibits prior to the second day of his deposition to confirm that they were authentic copies of records, which they were. But he refused to do anything to comply with his Rule 30(b)(6) obligations.

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 16

taken to comply with them." (4/13/20 Bond Decl., Ex. A, p. 14 (Topic 78).) Once again, John Taylor would not even authenticate a certified copy of AIA Services' articles of incorporation and the amendments thereto obtained from the Idaho Secretary of State or any other amendments nor did he even bother to review them in preparation for the deposition. (*Id.*, Ex. G, p. 126-127, 131-134.) Yet again, this confirms John Taylor's unwillingness to comply with his obligations.

Accordingly, like the transcript as a whole, the topics and testimony discussed above separately confirms that John Taylor was not a prepared or a cooperative Rule 30(b)(6) designee for the AIA Corporations and the CropUSA Entities nor did he comply with his obligations, which provides an additional or independent basis to order three more days of depositions and award sanctions as requested below.

3. **Assuming that John Taylor Had Prepared for the Rule 30(b)(6) Depositions, His Testimony Is Separately Sanctionable Based On His Evasive and Unknowledgeable Answers.**

"[A]n evasive or incomplete…answer…must be treated as a failure to…answer" for purposes of Rule 37(a). **Fed. R. Civ. P. 37(a)(4)**. *See Exmark Mfg. Co., Inc. v. Briggs & Stratton Power Products Group, LLC*, No. 8:10CV187, 2015 WL 429964, at *7-8 (D. Neb. Feb. 2, 2015) (don't recall answers fail to comply with Rule 30(b)(6) obligations).

Here, it is readily apparent from reviewing the deposition transcript that John Taylor would not squarely answer most questions and his answers are evasive. (4/13/20 Bond Decl. Ex. G, p. 21-597.) Rather than repeat the evasive and improper answers quoted in Section B(2) above, Miesen incorporates those by reference herein. A review of those answers also confirms that John Taylor is an expert at providing evasive answers by not directly answering questions and providing answers such as "I don't recall" or the answer is in the "books and records." In fact, John Taylor improperly directed Miesen to the "books and records" countless times as an evasive answer to

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 17

questions in violation of his Rule 30(b)(6) obligations. (*Id*. Ex. G, p. 45-46, 54, 58, 64, 66-67, 72-73, 77, 79-81, 90, 95, 98, 102, 127, 133, 282, 313, 316, 332, 335, 364, 406, 414-417, 428, 430, 433, 443, 446, 489-490, 492, 506, 566, 570, 572, 576.) He did the same with his numerous improper "don't recall" answers. (*Id*. Ex. G, p. 31, 35-36, 44-45, 54-55, 58, 61-62, 64, 67, 69-70, 72, 74, 78-79, 82-83, 87, 89-91, 94-95, 100, 111, 124, 130-132, 155, 160, 197, 205-206, 232, 236-237, 250, 282, 285, 291, 297, 312-314, 316, 321, 328-329, 336, 343, 356, 361, 378, 381, 384, 389, 395, 402, 410, 417, 432, 440, 454, 456, 464, 468, 480, 492, 496, 502, 518, 523, 537-538, 556, 575, 578, 585.) Moreover, when asked questions regarding whether something was provided to shareholder or whether he obtained shareholder approval, John Taylor evasively refused to directly answer the questions. (*E.g*., *Id*. Ex. G, p. 136, 144-145, 178-179, 189-190, 193-194, 221, 332, 360-361, 389, 401-402, 418, 428-433, 441, 443, 446, 504-505-508, 515-517, 520, 522, 524-527, 540-541, 546-547, 550, 552, 560, 571-572, 576-577, 586.) He was simply incapable and unwilling to simply squarely answer questions. (*Id*.) In some instances, he refused to answer. For example:

> **Q. BY MR. BOND: Is a $12 million stipulated judgment in favor of GemCap, is that for the benefit of AIA corporations?**
> THE WITNESS: I don't know how to answer that.
>            *           *           *
> **Q.   Is it good corporate governance policy to not hold annual shareholder meetings?**
> THE WITNESS:  That would be speculation.

(4/13/20 Bond Decl., Ex. G, p. 41, 83 (objections omitted).) There are numerous other examples of evasive answers. (*E.g.*, 4/13/20 Bond Decl., Ex. G, p. 189-191, 208-209.)

Accordingly, John Taylor's evasive answers further and separately support Miesen's request for three additional days of depositions and an award of sanctions.

### 4.   Defense Counsel's Speaking Objections and Coaching Are Improper Tactics.

"An objection must be stated concisely in a nonargumentative and nonsuggestive manner."

**Fed. R. Civ. P. 32(c)(2)**. *See McDonough v. Keniston*, 188 F.R.D. 22 (D. N.H. 1998) (speaking

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 18

objections and coaching objections are not permitted in depositions); *Frazier v. SEPTA*, 161 F.R.D. 309 (E.D. Pa. 1995) (same).

Here, defense counsel's speaking objections and statements are improper and simply impede the deposition. (4/13/20 Bond Decl., Ex. G, p. 326-327, 363, 448, 439-440.) While not as egregious as the voluminous speaking and coaching that took place at the depositions of Riley and Ashby, Miesen is nevertheless raising these issues to prevent problems at future depositions (including any depositions relative to this motion if permitted). Notably, Mr. Glynn did not make a single objection to any of the questions asked by Mr. Keller (most of which were actually objectionable). (4/13/20 Bond Decl. Ex. G, p. 695-746.) Accordingly, this Court should instruct all counsel to refrain from making speaking objections and that such conduct will be sanctionable.

**5.  Defense Counsel's Instructions Not to Answer Are Improper and Sanctionable.**

"As a rule, instructions not to answer questions at a deposition are improper." *Detoy v. City and County of San Francisco*, 196 F.R.D. 362, 365 (N.D. Cal. 2000) (citations omitted). "A person may instruct a deponent not to answer **only** when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." **Fed. R. Civ. P. 32(c)(2)** (emphasis added). "An objection…must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." *Id.* "A party may object to an irrelevant line of question, but instructing a witness not to answer a question because it calls for inadmissable facts is sanctionable." *In re Stratosphre Corp. Securities Litigation*, 182 F.R.D. 614, 618-19 (D. Nev. 1998).

Here, Mr. Glynn has improperly instructed John Taylor to not answer questions. (*E.g.*, 4/13/20 Bond Decl. Ex. G, p. 52, 168, 439-440.) For example, Mr. Glynn improperly instructed John Taylor to not answer a question regarding Avista based on "relevant" and Mr. Glynn further

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 19

doubled down by stating "I will take that one to the judge." (*Id*. p. 52.) Mr. Glynn's objection and instruction were improper and sanctionable. *In re Stratosphre Corp. Sec. Litig.*, 182 F.R.D. at 618-19. Thus, this Court should also instruct all counsel to refrain from instructing a witness not to answer questions (unless there is a viable privilege or other basis).

> **6. Miesen Needs Three Additional Days of Deposition Time to Complete the Depositions of John Taylor, the AIA Corporations and the CropUSA Entities.**

Notwithstanding the issues addressed above, Miesen needs three additional days to complete his depositions of the five parties—John Taylor, AIA Services, AIA Insurance, CropUSA and CropUSA Insurance Services. Simply put, two days was not enough even if John Taylor had prepared and provided useful answers (he did not). Thus, this Court should separately order three additional days of deposition time. Moreover, when this issue is combined with the issues discussed above, an additional three days (or more) is even more warranted.

If "the deponent has already been deposed in the case," leave must be obtained from the court. **Fed. R. Civ. P. 30(a)(2)(A)(ii)**. *See also* **Fed. R. Civ. P. 30(d)(1)**.

> *the examination will cover events occurring over a long period of time, that may justify allowing additional time*…If the examination reveals that documents have been requested but not produced, that may justify further examination once production has occurred. *In multi-party cases, the need for each party to examine the witness may warrant additional time*…*The rule directs the court to allow additional time where consistent with Rule 26(b)(2) if needed for a fair examination of the deponent. In addition, if the deponent or another person impedes or delays the examination, the court must authorize extra time*.

**Fed. R. Civ. P. 30 Advisory Committee Notes, 2000 Amendments** (emphasis added). "The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, except Rules 103 and 615." **Fed. R. Civ. P. 30(c)(1)**. *See Harries v. United States*, 350 F.2d 231, 236 (9th Cir. 1965) ("The right to cross examine a witness is fundamental…"); *In re Freedman*, 431 B.R. 245, 255 (Bankr. S.D. Fla. 2010).

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 20

Here, based on all of the issues discussed above and separately based on the fact that John Taylor, the AIA Corporations and the CropUSA Entities constitute five different parties, Miesen should be granted three additional days of deposition time to fairly complete his deposition of John Taylor and the Rule 30(b)(6) designees of the AIA Corporations and the CropUSA Entities for this complex multi-million-dollar derivative action. (4/13/20 Bond Decl. ¶¶ 2-12, Ex. A-G; Dkts. **211**, **783-3**, **858-1**, **858-**2.) Miesen uploaded over 400 exhibits (many of which were not marked as exhibits) and his counsel has prepared many questions. Thus, it is reasonable for Miesen to receive a total of five days for five different deponents, particularly based on the complexity and time-period involved. (*Id.*)  Moreover, Miesen should be permitted additional time so that he can cross examine John Taylor as to the matters raised by GemCap, Reed Taylor and the Hawley Troxell Defendants because he was denied that opportunity even though the deposition was terminated at around 12:30 pm. (4/13/20 Bond Decl. ¶¶ 2-11, Ex. F-G, p. 745.) Miesen should not be deprived of his right to cross examine John Taylor. Miesen still believes that he can complete the cross examination of John Taylor and the remaining Rule 30(b)(6) depositions in a total of three days.

### 7.  This Court Should Set a Protocol for the Remaining Depositions.

This Court should establish a protocol for future depositions that addresses and prevents the improper conduct discussed in Sections B(1)-(6) at future depositions. ***In re Stratosphre Corp. Sec. Litig.***, 182 F.R.D. 614 (D. Nev. 1998) (establishing a protocol for depositions).

### 8.  Miesen Should Be Awarded Attorneys' Fees, Court Reporter and Videographer Fee, and Travel and Accommodation Expenses.

"The court may impose an appropriate sanction--including the reasonable expenses and attorney's fees incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the deponent." **Fed. R. Civ. P. 30(d)(2)**. "Rule 37(a)(5) applies to the award of expenses." **Fed. R. Civ. P. 37(d)(3)(C)**. "The court where the action is pending may, on motion,

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 21

order sanctions if: (i) a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition." **Fed. R. Civ. P. 37(d)(1)(A)(i)**. Fees and costs may be awarded and "[s]anctions may include any of the orders listed in Rule 37(b)(2)(A)(i)–(vi)." **R. Civ. P. 37(d)(3)**.

Courts routinely sanction parties for failing to comply with Rule 30(b)(6) and deposition related issues. *Facebook, Inc. v. Power Ventures, Inc*., 844 F.3d 1058, 1070 (9th Cir. 2016) (upholding award of sanctions where designee was "unprepared, unresponsive, and argumentative."); *Quantachrome Corp. v. Micromeritics Instrument Corp.*, 189 F.R.D. 697, 700 (S.D. Fla. 1999); *Exmark Mfg. Co., Inc.*, 2015 WL 429964, at *7-8 (ordering an additional deposition and awarding fees for the attorney's time and the costs for the additional deposition). *F.C.C. v. Mizuho Medy Co., Ltd.*, 257 F.R.D. 679, 681 (S.D. Cal. 2009).

Here, based on the conduct discussed in Sections B(1)-(7) above, this Court should award attorney's fees, costs, court reporter and videographer fees, and travel expenses (including air fare, hotel and meals) for the depositions held on February 24-25, 2020. (4/13/20 Bond Decl., Ex. H.)

C.  **Miesen's Fed R. Civ. P. 37 Certification.**

Miesen certifies that his counsel in good faith conferred or attempted to confer with counsel in order to obtain the above relief without court action. (4/13/20 Bond Decl. ¶ 2.)

## III.    <u>CONCLUSION</u>

For the reasons articulated above, this Court should grant Miesen's Motion.

DATED:  This 13th day of April 2020.

RODERICK BOND LAW OFFICE, PLLC

By:     */s/ Roderick C. Bond*
          Roderick C. Bond
          Attorney for the Plaintiff Dale L. Miesen

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL
ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 22

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 13th day of April 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:     jat@elamburke.com
Loren C. Ipsen:     lci@elamburke.com
Joyce Ann Hemmer:     jah@elamburke.com
Bradley S. Keller:     bkeller@byrneskeller.com
Alyson Anne Foster:     aaf@aswdpllc.com
Taylor L. Bruun:     tlb@aswdpllc.com
Benjamin A. Schwartzman:     bas@aswdpllc.com
Peter L. Steinman:     psteinman@mrllp.com
Tyler Scott Waite:     twaite@campbell-bissell.com
Michael Scott Bissell:     mbissell@campbell-bissell.com
David R. Lombardi:     drl@givenspursley.com
Daniel Loras Glynn:     dglynn@idalaw.com

                            */s/ Roderick C. Bond*
                           Roderick C. Bond

MEMORANDUM OF LAW IN SUPPORT OF MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS - 23

David R. Lombardi, ISB No. 1965
GIVENS PURSLEY LLC
601 W. Bannock
PO Box 2720
Boise, Idaho 83701
Telephone: (208) 388-1200
Facsimile: (208)388-1300
Email: drl@givenspursley.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Civil No. 1:10-cv-00404-DCN<br><br>**SUPPLEMENTAL AND SUPERSEDING DISCOVERY MASTER ORDER NO. 30 GRANTING IN PART AND DENYING IN PART PLAINTIFF DALE L. MIESEN'S EIGHTH MOTION TO COMPEL RE: AIA SERVICES CORPORATION AND AIA INSURANCE, INC. (Dkt. 867) AND SUPPLEMENTING DISCOVERY MASTER ORDER NO. 16 (Dkt. 692)** |

**SUPPLEMENTAL AND SUPERSEDING**
**DISCOVERY MASTER ORDER NO. 30** – 1

15120982_1.docx (14451-1)

**9-ER-2197**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

        Defendants/Third-Party Plaintiffs,

**v.**

REED TAYLOR, an individual,

        Third-Party Defendant.

---

REED TAYLOR, an individual,

        Third-Party Defendant/ Counterclaimant,

**v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

        Counterdefendants.

---

GEMCAP LENDING I, LLC, a Delaware limited liability company,

        Defendant/Third-Party Plaintiff,

**v.**

QUARLES & BRADY, LLP, a Wisconsin limited legal partnership; and CRUMB & MUNDING, P.S., a Washington professional service corporation,

        Third-Party Defendants.

**SUPPLEMENTAL AND SUPERSEDING DISCOVERY MASTER ORDER NO. 30** – 2

15120982_1.docx (14451-1)

**9-ER-2198**

INTRODUCTION

Plaintiff Miesen filed his Eighth Motion to Compel Re: AIA Services Corporation and AIA Insurance, Inc. (the "AIA Entities") (Dkt. 867) on March 3, 2020 seeking three items of relief:

1)  An Order compelling the AIA Entities to produce all documents requested in Requests for Production Nos. 4 – 7 and 120 contained in Plaintiff's First Set of Interrogatories and Requests for Production served July 4 and July 8, 2017;

2)  An Order compelling the AIA Entities to respond to Plaintiff's Second Set of Interrogatories and Requests for Production served December 31, 2019[1]; and

3)  An Order compelling Defendant John Taylor to "comply" on behalf of the AIA Entities.

Discovery Master Order No. 30 (Dkt. 925, "DMO No. 30") denied Miesen's 8th Motion to Compel, without prejudice, based on a concern that the discovery Miesen sought to compel had not been properly served on the AIA Entities.  DMO No. 30 also invited Plaintiff Miesen to file a Supplemental Motion to address the service issue.

Plaintiff Miesen did not file a Supplemental Motion, but filed Objections to DMO No. 30 (Dkt. 928) which, among other things, addressed the concerns expressed in DMO No. 30.

---

[1] Plaintiff Miesen's second sets of discovery to the AIA Entities contained interrogatories, requests for production of documents and requests for admission.  No relief was requested concerning the Requests for Admission so they will not be mentioned further in this Supplemental and Superseding DMO No. 30.

**SUPPLEMENTAL AND SUPERSEDING**
**DISCOVERY MASTER ORDER NO. 30** – 3

15120982_1.docx (14451-1)

**9-ER-2199**

The Discovery Master has reviewed Miesen's Objections to DMO No. 30 and concluded that the most efficient way to address the outstanding issues concerning the responses of the AIA Entities to Miesen's First and Second Sets of Interrogatories and Requests for Production is to issue this Supplemental and Superseding Order Granting in Part and Denying in Part Plaintiff Dale L. Miesen's 8th Motion to Compel.

ANALYSIS

*The AIA Entities Waived Any Defects in Service of Miesen's First Set of Interrogatories and Requests for Production and Were Actually Served with Miesen's Second Set of Interrogatories and Requests for Production*

The AIA Entities responded to Miesen's First Set of Interrogatories and Requests for Production on April 19, 2018 (Dkts. 879-1 and 879-2) while they were represented by Mr. James W. Grow, Jr. and by their responses waived any defect in service.

The AIA Entities were not represented by counsel when Miesen's Second Set of Interrogatories and Requests for Production (Dkt. 867-3 and Dkt. 867-4) were propounded in December 2019.  The Certificates of Service on each of these discovery requests indicate that they were sent by email to Defendant R. John Taylor as the sole corporate officer of each (*See* Dkt. 583-8 and Dkt. 583-9) at johntaylor@greenleafalliance.com.

The Discovery Master is not aware of any place in the record documenting that the foregoing email address is the email address of a FRCP 5(b)(2)(E) registered user for the AIA Entities or that the AIA Entities consented in writing to be served in this fashion under FRCP 5(b)(2)(E) or 5(b)(2)(F).  Notwithstanding the inadequacy of service by email, the Discovery Master previously overlooked collateral evidence of physical delivery of Miesen's Second Set of Interrogatories and Requests for Production on or about December 31, 2019 that was not reflected on the Certificate of Service.  That evidence is contained in the Supplemental

**SUPPLEMENTAL AND SUPERSEDING**
**DISCOVERY MASTER ORDER NO. 30** – 4

15120982_1.docx (14451-1)

**9-ER-2200**

Declaration of Roderick C. Bond In Support of Plaintiff Dale L. Miesen's Eighth Motion to Compel re: AIA Services Corporation and AIA Insurance, Inc. (*See* Dkt. 921-1 and Dkt. 921-2).

The Discovery Master will, by reason of the foregoing, treat Miesen's first and second sets of discovery that are the subject of Miesen's Eighth Motion to Compel as served on the AIA Entities.

*Miesen Has Not Provided Sufficient Information Upon Which to Base an Order
Compelling the AIA Entities to Provide Further Responses to Miesen's First Interrogatories
and Requests for Production Except for the Support, including Excel files,
for Exhibit E to the Declaration of Mr. Bond (Dkt. 867-7)*

Miesen seeks an order compelling the production of documents requested by Requests for Production Nos. 4-7 and 120 of Miesen's First Interrogatories and Requests for Production without providing a copy of the AIA Entities' responses and without information concerning what has already been produced.

AIA Services' response to Miesen's First Interrogatories and Requests for Production is Exhibit A to the Declaration of Daniel Loras Glynn (*See* Dkts. 879 and 879-1). The response of AIA Insurance, Inc. is Exhibit B to the Declaration of Daniel Loras Glynn (*See* Dkts. 879 and 879-2). The responses of the AIA Entities to Request Nos. 4-7 and 120 of both sets of discovery consist largely of identical objections that conclude with the following sentence:

> Subject to and without waiving those objections please see the electronic link provided to you via email containing discovery documents.

These responses may be inadequate and the objections may have no merit, but there is no way for the Discovery Master to make that determination on the basis of the information that has been provided. Miesen has provided little documentation or evidence concerning what was produced by the AIA Entities and little explanation concerning why it is insufficient.

**SUPPLEMENTAL AND SUPERSEDING
DISCOVERY MASTER ORDER NO. 30** – 5

15120982_1.docx (14451-1)

**9-ER-2201**

The only document that has been provided in support of Miesen's contention that the AIA Entities have not produced the requested documents is a single page entitled AIA Services Corporation 1920-00 Due from PERC 12/31/2012 and Bates numbered AIAPROD00299199 which is Exhibit E to Mr. Bond's Declaration (Dkt. 867-7).  The Discovery Master will compel the production of supporting documentation not previously produced by the AIA Entities in this lawsuit, including Excel files, for the entries shown on AIAPROD00299199.  The balance of the 8th Motion to Compel concerning the AIA Entities' responses to Miesen's first Interrogatories and Requests for Production of Documents is denied.

### *The AIA Entities Will Be Compelled to Respond to Miesen's Second Sets of Interrogatories and Requests for Production*

It is undisputed that the AIA Entities never answered or responded to Miesen's Second Set of Interrogatories and Requests for Production to Defendant AIA Services Corporation or Miesen's Second Set of Interrogatories and Requests for Production to Defendant AIA Insurance (Dkt. 867-2, ¶¶ 3, 4). Even  though the AIA Entities may be characterized as "nominal" parties, they are not exempt from discovery.  In fact, as noted above, the AIA Entities responded to Miesen's first discovery requests in this case.

Since the AIA Entities have failed to respond at all to Miesen's Second Set of Interrogatories and Requests for Production an order compelling their response is appropriate.

### *Defendant R. John Taylor Will Not Be Compelled to Respond for the AIA Entities But will Be Ordered to Certify Compliance with Discovery Master Order No. 16*

Miesen argues that Defendant R. John Taylor "should be ordered to comply on behalf of the AIA corporations" and cites F.R.C.P. 34(a)(1) in support.  Discovery Master Order No. 16 has already granted this request to the extent required by F.R.C.P. 34.

**SUPPLEMENTAL AND SUPERSEDING DISCOVERY MASTER ORDER NO. 30** – 6

Defendant R. John Taylor is still subject to Discovery Master Order No. 16 which ordered him to respond to interrogatories requesting information he has the legal right to obtain from the AIA Entities and to produce documents he has the legal right to obtain from those entities.  R. John Taylor is also obligated by Discovery Master Order No. 16 and  FRCP 34(b)(2)(C) to advise whether <u>requested</u> documents have been withheld from production pursuant to objection.  The declarations filed in support and opposition to Plaintiff's Eighth Motion to Compel do not demonstrate whether these obligations have been discharged.

The declarations filed in support and opposition to Miesen's motion contradict each other and provide some support for Plaintiff's argument that R. John Taylor has been less than fully compliant with Discovery Master Order No. 16.

R. John Taylor testified in a declaration filed March 20, 2020 (Dkt. 878, ¶ 10) that,

> Mr. Bond and his clients have had unfettered access to all the financial and related information pertaining to the AIA/CropUSA entities, which information has included, in native format, the UA Accounting Database with the general ledger journal entries, checks, check registers, due-to/due-from accounts and any other entries made to the accounting system which Mr. Bond in his Eighth Motion to Compel asserts he does not possess.  I categorically dispute the assertions of Mr. Bond in his supporting Memorandum and accompanying Declaration that I, either individually or on behalf of the AIA/CropUSA entities, have failed to produce "all" responsive documents to his discovery requests in this and other matters.

Roderick C. Bond testified in a responsive Declaration filed April 3, 2020 (Dkt. 901-1, ¶ 8) that boxes of documents "pertaining to the AIA/CropUSA entities". . .  "were withheld" from 2017 and 2019 inspections in Clarkston, Washington.  Mr. Bond also testified that Mr. Taylor "stated and confirmed that he would not produce any fee statements (even in redacted form) for a number of other lawsuits" (Dkt. 901-1, ¶ 8), that Excel spreadsheet and Word document files have not been produced in native format, including particularly native files concerning due-to/due-from, work papers and journal compilations referenced in Mr. Taylor's

**SUPPLEMENTAL AND SUPERSEDING**
**DISCOVERY MASTER ORDER NO. 30** – 7

15120982_1.docx (14451-1)

**9-ER-2203**

declaration (Dkt., 901-1, ¶ 12) and that he and his clients have "never been given 'unfettered access' to all of AIA/CropUSA's information" (Dkt 901-1, ¶ 17).

The declarations of Mr. Taylor and Mr. Bond are so unclear that it is difficult to tell what was produced and what was not produced.  In particular, Mr. Taylor testifies that he "categorically" disputes that the entities he allegedly controls have failed to produce "all responsive documents" without stating what he means by "responsive".  To be clear, Mr. Taylor shall produce all <u>requested</u> documents that are not privileged, and all privileged documents for which privilege has been waived pursuant to Privilege Waiver Identifications in this lawsuit and shall describe any documents withheld on the basis of privilege on a privilege log served on the parties.

Mr. Bond, on the other hand, has overreached in Request for Production No. 120 which seeks "all documents that are in your possession, custody or control that you have not produced in response to any other Requests for Production that pertain or relate in any way to AIA Services, AIA Insurance, etc.". The scope of Request for Production No. 120, which seeks "all documents . . . that you have not produced in response to any other Requests for Production that pertain or relate in any way to (various entities)" is not limited to relevant documents and is not proportional.

In light of the foregoing, in an effort to bring discovery in this case to a fair and reasonable close and in exercise of the authority delegated by the Order Granting Motion to Appoint a Discovery Master (Dkt. 469) and FRCP 53(c)(1), it is HEREBY ORDERED:

1.       Miesen's Eighth Motion to Compel directed to the AIA Entities concerning Miesen's First Interrogatories and Requests for Production is granted in part and denied in part. The AIA entities are ordered to produce supporting documentation not previously produced by

**SUPPLEMENTAL AND SUPERSEDING
DISCOVERY MASTER ORDER NO. 30** – 8

15120982_1.docx (14451-1)

**9-ER-2204**

9-ER-2205

the AIA Entities in this lawsuit, including Excel files, for the entries shown on Bates numbered document AIAPROD00299199 which is Exhibit E to Mr. Bond's Declaration  (Dkt. 867-7) no later than fourteen (14) days from the date this Supplemental and Superseding Discovery Master Order No. 30 is adopted by the Court.

2.      Miesen's Eighth Motion to Compel directed to the AIA Entities concerning Miesen's Second Interrogatories and Requests for Production is granted.   The AIA Entities are ordered to answer the interrogatories and produce the documents requested in Miesen's Second Interrogatories and Requests for Production no later than fourteen (14) days from the date this Supplemental and Superseding Discovery Master Order No. 30 is adopted by the Court.

3.      Discovery Master Order No. 16 is supplemented by this Supplemental and Superseding Discovery Master Order No. 30 to require Defendant R. John Taylor to certify in a Declaration signed by him under oath and filed in this matter no later than 14 days from the date this Discovery Master Order No. 30 is adopted by the Court that all AIA Entity documents requested by Plaintiff that he has the right to obtain, with the exception of the documents requested by Request for Production No. 120, have been produced to counsel for Plaintiff and that all requested AIA Entity documents withheld from production on the basis of privilege have been described on a privilege log served on the parties on or before the date of the Declaration.

4.      No attorneys' fees shall be awarded to either side.

Dated this 6th day of May, 2020.

/s/ David R. Lombardi
David R. Lombardi
Discovery Master

**SUPPLEMENTAL AND SUPERSEDING**
**DISCOVERY MASTER ORDER NO. 30** – 9

15120982_1.docx (14451-1)

9-ER-2205

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 6th day of May, 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Benjamin A. Schwartzman
Alyson Anne Foster
Taylor Bruun
Andersen Schwartzman Woodard
Dempsey, PLLC
101 S. Capitol Blvd., Ste. 1600
Boise, ID 83702
Email:  ; aaf@aswdpllc.com
tlb@aswdpllc.com
*Attorneys for GemCap Lending I, LLC*

Fanxi Wang
Bird Marella
1875 Century Park East, 23rd Floor
Los Angeles, CA  90067
Email:  fwang@birdmarella.com,
mhicks@birdmarella.com
*Attorneys for Quarles & Brady, LLP*

Jack S. Gjording
Stephen Lee Adams
Gjording Fouser PLLC
121 N. 9th St., Ste. 600
PO Box 2837
Boise, ID  83702
Email:  jgjording@gfidaholaw.com,
sadams@gfidaholaw.com
*Attorneys for Quarles & Brady, LLP*

James B. King
Markus William Louvier
Evans, Craven & Lackie, P.S.
818 W. Riverside Ave., Ste. 250
Spokane, WA  99201
Email:  jking@ecl-law.com,
mlouvier@ecl-law.com
*Attorney for Crumb & Munding, P.S.*

Jeffrey A. Thomson
Loren C. Ipsen
Elam & Burke
PO Box 1539
Boise, ID  83701-1539
Email:  jat@elamburke.com,
lci@elamburke.com
*Attorneys for Hawley Troxell Ennis & Hawley, Gary D. Babbitt, D. John Ashby and Richard Riley*

Bradley S. Keller
Byrnes Keller Cromwell, LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
bkeller@byrneskeller.com
kwolf@byrneskeller.com
*Attorneys for Hawley Troxell Ennis & Hawley, Gary D. Babbitt, D. John Ashby and Richard Riley*

**SUPPLEMENTAL AND SUPERSEDING
DISCOVERY MASTER ORDER NO. 30** – 10

15120982_1.docx (14451-1)

Daniel Loras Glynn
Jones Williams Fuhrman Gourley, P.D.
225 N 9th Street, Suite 820
Boise, ID 83701
Email: dglynn@idalaw.com
*Attorneys for AIA Services Corporation,*
*AIA Insurance, Inc. and Attorneys for Connie*
*Taylor Henderson, Michael W. Cashman, Sr.*
*James Beck, Crop USA Insurance Services,*
*LLC, and Crop USA Insurance, Inc.*

Michael S. Bissell
Tyler S. Waite
Campbell & Bissell, PLLC
Email:  mbissell@campbell-bissell.com,
twaite@campbell-bissell.com
*Attorneys for Reed J. Taylor*

Rebecca L. Dircks, *Pro Hac Vice*
Benesch, Friedlander, Coplan & Aronoff
333 W Wacker Drive, Suite 1900
Chicago, IL 60606-221
Email: rdircks@beneschlaw.com
*Attorneys for Interested Party CGB*
*Diversified, Inc.*

Roderick C. Bond
Roderick Bond Law Office, PLLC
601 108th Avenue NE, Suite 1900
Bellevue, WA  98004
Email:  rod@roderickbond.com
*Attorney for Dale L. Miesen*

*/s/ David R. Lombardi*
David R. Lombardi

**SUPPLEMENTAL AND SUPERSEDING**
**DISCOVERY MASTER ORDER NO. 30** – 11

15120982_1.docx (14451-1)

**9-ER-2207**

## CONSENT IN LIEU OF MEETING VOTE

**To:** **AIA Services Corporation.**

**For:** **Inclusion in the Minutes or Filing With the Corporate Records.**

The undersigned, Donna J. Taylor, the sole shareholder of all outstanding Series A Preferred shares of AIA Services Corporation ("Company"), takes the following actions.

Donna J. Taylor holds a separate and distinct right to elect a director of the Company at a shareholder meeting pursuant to Company's Articles of Amendment to the Articles of Incorporation ("Amended Articles of Incorporation") and Restated Bylaws.   Company has not held any annual shareholder meetings or special meetings to elect, nominate or appoint directors for Company for which Donna J. Taylor was provided any notice, written or otherwise, for over 5 years.  Based upon the direction of counsel for Company, Donna J. Taylor hereby executes this consent in lieu of voting her shares at an annual shareholder meeting or special shareholder meeting for electing directors.

Effective immediately, Donna J. Taylor hereby nominates and votes all of her Series A Preferred Shares in Company to have Patrick M. Moran nominated and voted in as director for Company and to serve on the Company's board of directors pursuant to Donna J. Taylor's right under Section 4.2.8. of Company's Amended Articles of Incorporation.  Donna J. Taylor certifies that she has not assigned or encumbered her Series A Preferred Shares nor has she granted any other person or entity the right to vote such shares.   All future notices of board and shareholder meetings should be provided to Patrick M. Moran at the following address:

> Patrick M. Moran
> 1850 Skyline Tower
> 10900 N.E. 4th Street
> Bellevue, WA 98004
> Tel: (425) 462-4700
> Fax: (425) 451-0714

CONSENT

DLM - 0034221     **Exhibit - A, p. 1**

**9-ER-2208**

This consent has the effect of a meeting vote by Donna J. Taylor nominating and voting all of her Series A Preferred Shares in favor of the election and appointment of Patrick M. Moran to Company's board of directors as provided under I.C. § 30-1-704.

This consent is being executed as a result of the directive of Gary Babbitt, counsel for Company, having directed Donna J. Taylor to do so through a letter dated December 23, 2009, which such letter provided in pertinent:

> If Donna submits to the corporation her written and signed consent voting her shares of Series A preferred stock to elect a specific qualified person as a director, AIA Services will consider that person to be a director of the corporation.

In the event the Company or its board of directors elects to hold an annual shareholder meeting or special meeting for the purposes of electing any directors in the future, Company is requested to direct such correspondence or notice to Patrick M. Moran at the address indicated above (or such other director as she may elect from time to time) and to Donna J. Taylor at the address presently on record with Company.

Dated this 28th day of December, 2009, at Clarkston, WA.

_____
Donna J. Taylor

SUBSCRIBED AND SWORN BEFORE ME THIS 28th DAY OF December, 2009.

_____
Roderick C. Bond
Residing at Clarkston, WA.

CONSENT                                                                 Page 2

DLM - 0034222          **Exhibit - A, p. 2**

**9-ER-2209**

David R. Lombardi, ISB No. 1965
GIVENS PURSLEY LLC
601 W. Bannock
PO Box 2720
Boise, Idaho 83701
Telephone: (208) 388-1200
Facsimile: (208)388-1300
Email: drl@givenspursley.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Civil No. 1:10-cv-00404-DCN<br><br>**DISCOVERY MASTER ORDER NO. 31 GRANTING IN PART MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS (Dkt. 914)** |

**DISCOVERY MASTER ORDER NO. 31 GRANTING IN PART MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS** – 1

15142394_1.doc (14451-1)

**9-ER-2210**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

        Defendants/Third-Party Plaintiffs,

      v.

REED TAYLOR, an individual,

        Third-Party Defendant.

---

REED TAYLOR, an individual,

        Third-Party Defendant/ Counterclaimant,

      v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

        Counterdefendants.

---

GEMCAP LENDING I, LLC, a Delaware limited liability company,

        Defendant/Third-Party Plaintiff,

      v.

QUARLES & BRADY, LLP, a Wisconsin limited legal partnership; and CRUMB & MUNDING, P.S., a Washington professional service corporation,

        Third-Party Defendants.

**DISCOVERY MASTER ORDER NO. 31 GRANTING IN PART MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS** – 2

15142394_1.doc (14451-1)

**9-ER-2211**

<u>INTRODUCTION</u>

Plaintiff Miesen filed his Motion To Compel Additional Deposition Days for Defendant R. John Taylor and Sanctions (Dkt. 914) to obtain three items of relief:

1)   That Defendant John Taylor be ordered "to sit for three additional

      days of depositions";

2)   That sanctions be awarded; and

3)   That "deposition protocols" be set.

Miesen seeks to depose R. John Taylor for additional days because Mr. Taylor allegedly failed to discharge his obligation as the F.R.C.P. 30(b)(6) designee for AIA Services Corporation and AIA Insurance, Inc. (the "AIA Entities") and CropUSA Insurance Agency, Inc. and CropUSA Insurance Services, LLC (The "CropUSA Entities") and because he provided "evasive and incomplete answers".

Defendant Reed Taylor joined in the motion (Dkt. 918) and GemCap filed a Notice of Non-Opposition (Dkt. 930).

Defendants Beck, Cashman, Henderson, Taylor, CropUSA Insurance Agency, Inc., and CropUSA Insurance, LLC oppose the Motion (Dkt. 937).  Defendant R. John Taylor also opposes Miesen's motion.

<u>FACTUAL BACKGROUND</u>

*The Deposition Notices and 30(b)(6) Witness Designations*

The deposition of Mr. Taylor and F.R.C.P. 30(b)(6) depositions of the AIA Entities and Crop USA Entities (the "AIA/CropUSA Entities") have been the subject of communication between counsel for Mr. Taylor and counsel for Miesen since at least 2019 (*See* Declaration of

**DISCOVERY MASTER ORDER NO. 31 GRANTING IN PART MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS** – 3

Daniel Loras Glynn in Opposition to Plaintiff Dale L. Miesen's Motion to Compel Additional Days for John Taylor and Sanctions (Dkt. 937-1, ¶¶ 3 – 13) and Declaration of Roderick C. Bond (Dkt. 914-2, ¶¶ 2 – 10).  These communications culminated in service of the First Amended Notices of Video-Taped Depositions of the Rule 30(b)(6) Designees of AIA Services Corporation and AIA Insurance, Inc. and Notices of Video-Taped Deposition of the Rule 30(b)(6) Designee of CropUSA Insurance Agency, Inc., and CropUSA Insurance Services, LLC on February 12, 2020 (*see* Exhibits A, B, C and D to the Declaration of Roderick C. Bond, Dkts. 914-3, 4, 5 and 6).  The 30(b)(6) deposition notices for the AIA/CropUSA Entities collectively identified no less than 261 "matters for examination".  The notices "designated" R. John Taylor as the witness for each entity and scheduled the depositions to take place on February 24 and 25, 2020 which was twelve days after the date of the notices.

The 30(b)(6) deposition notices for the AIA/CropUSA Entities were accompanied by a separate notice for the deposition of R. John Taylor which was to take place simultaneously with the entity depositions. (*See* Fourth Amended Notice of Video-Taped Deposition of R. John Taylor, Exhibit E to the Declaration of Roderick C. Bond (Dkt. 914-7).

Counsel for Miesen and counsel for R. John Taylor and the AIA/CropUSA Entities have submitted declarations that are inconsistent with each other concerning the agreement that Mr. Taylor would testify, in a single sitting, on his own behalf and as the 30(b)(6) designee of the AIA/CropUSA Entities. Mr. Glynn, counsel for R. John Taylor, testified:

> Plaintiff's request for the deposition of John Taylor, not only in his individual capacity but also in his capacity as President of the AIA/CropUSA Entities has its origins in Plaintiff's request made in May of 2019 for deposition scheduling to occur in June or July of 2019. As part of these conversations, Plaintiff's counsel, Roderick Cyr Bond, requested that Mr. Taylor's deposition be combined with his deposition on behalf of the AIA Entities and the CropUSA Entities rather than

**DISCOVERY MASTER ORDER NO. 31 GRANTING IN PART MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS** – 4

15142394_1.doc (14451-1)

scheduling three separate days of depositions with one in each of these capacities. In making this request, Mr. Bond represented that this was how Mr. Taylor had agreed to sit for depositions Mr. Bond had taken of him in other litigations. After consultation with my client, I agreed to Mr. Bond's proposal, *to wit* that Mr. Taylor's deposition could occur over two (2) days and that his answers, unless otherwise clarified, would be in his individual capacity, his capacity as President of the AIA Entities, and as President of the CropUSA entities. (Dkt. 937, ¶ 3.)

Mr. Bond, counsel for Miesen, disagreed with the testimony of Mr. Glynn and testified:

The Glynn Group alleges that I somehow demanded or desired to have John Taylor as the Rule 30(b)(6) designees for AIA Services, AIA Insurance, CropUSA Insurance Agency and CropUSA Insurance Services. These allegations are false. Over the course of communications with Mr. Glynn, I never stated that I wanted John Taylor to be the designees for the AIA Corporations and the CropUSA Entities. To the contrary, I would have preferred to have independent witnesses who would have more readily and accurately provided the requested information. This is why I even questioned John Taylor at the depositions as to who selected him as the designees for the AIA Corporations. At no point time did I ever demand or insist on John Taylor being the designees. While the subject arose because John Taylor had previously testified individually and as the Rule 30(b)(6) designees in *Taylor v. Bell*, I merely presumed that John Taylor would handle the depositions the same way here and thus I inquired with Mr. Glynn on how the issue was going to be handled. Obviously, I would prefer any course of action that would efficiently and thoroughly obtain the information that Miesen requested, but I was not interested in a situation which ultimately occurred— wasting numerous days of my time and money attending and taking depositions when John Taylor was not prepared and was, in fact, withholding information. I had hoped that five or more days of deposition time could be consolidated into two days. I was wrong. In addition, Miesen has never been permitted to depose John Taylor, the AIA Corporations' Rule 30(b)(6) deponents or the CropUSA Entities' Rule 30(b)(6) deponents until this lawsuit. The deposition transcripts from lawsuits involving Reed Taylor did not involve lawsuits Miesen was  involved in (*See* Exhibits X and Y to Mr. Glynn's Declaration).   (Dkt. 942-1, ¶ 2.)

Neither Mr. Glynn nor Mr. Bond testified concerning an agreement that Mr. Taylor, as designee

for the AIA/CropUSA Entities would be prepared as a 30(b)(6) designee by those entities.

**DISCOVERY MASTER ORDER NO. 31 GRANTING IN PART MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS** – 5

Mr. Glynn served Defendant John Taylor's Objections to Plaintiff's Notice of Video-Taped Deposition of the Rule 30(b)(6) Designee(s) of AIA Services Corporation, AIA Insurance, Inc., CropUSA Insurance Agency, Inc., CropUSA Insurance Services, LLC on February 21, 2020 which was the Friday before the commencement of the depositions on Monday, February 24. (*See* Exhibit K to the Declaration of Roderick C. Bond, Dkt. 942-2, "Taylor's 30(b)(6) Objection").  Taylor's 30(b)(6) Objection asserted numerous objections to Miesen's 30(b)(6) notices and stated that the responding entities "cannot, in accordance with Fed.R.Civ.P. 30(b)(6) present a knowledgeable witness" concerning many of the subject matters identified in the notices.

*The Exhibits*

Counsel for Miesen advised counsel for R. John Taylor during a telephone conference on February 19, 2020 "that he would like to provide a proposed list of documents to be used at the deposition of Mr. Taylor and have me find them within prior production so as to authenticate them in advance of the deposition itself".  (Declaration of Daniel Loras Glynn In Opposition to Plaintiff Dale L. Miesen's Motion to Compel Additional Days for John Taylor and Sanctions (Dkt. 937-1, ¶12).) Mr. Glynn, counsel for R. John Taylor, responded during the telephone conference that he had "no ability to review an unseen list of documents, compare the documents he proposed to use against those produced by my clients, and authenticate the documents" (Dkt. 937-1, ¶12).  Two days later, Miesen's counsel sent an email and dropbox link to approximately 100 documents he intended to use at the deposition of Mr. Taylor (Dkt.  937-1, ¶13; Dkt. 937-23).  By the next day, the number of documents sent as proposed deposition exhibits "had ballooned to 463"  (Dkt.  937-1, ¶13).

**DISCOVERY MASTER ORDER NO. 31 GRANTING IN PART MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS** – 6

15142394_1.doc (14451-1)

*The Deposition*

The combined deposition of the AIA Entities, the CropUSA Entities and R. John Taylor commenced the following Monday, February 24.   Mr. Taylor testified at that deposition that he had not reviewed the exhibits that had been provided by Miesen's counsel to Taylor's counsel two days before, that he had reviewed no documents in preparation for his testimony and that he made no specific preparation for his deposition:

> **Q.   Okay.  I'd uploaded the primary exhibits for the next two days.  Did you get a chance to skim through some of those documents?**
> A.   No.
> \* \* \*
> **Q.   I think we went over earlier that you didn't review any documents in preparation for your testimony today, correct?**
> A.   No.
> \* \* \*
> **BY MR. BOND:  And you didn't do any preparation for this deposition today so you can't tell me if this is accurate or not because you didn't look at any of the financial statements, correct?**
>
> THE WITNESS:  I did not do any specific preparation for this.

(*See* Memorandum of Law In Support of Miesen's Motion to Compel Additional Deposition Days for John Taylor and Sanctions (Dkt. 914-1, p. 9).)

Further, when Mr. Taylor did respond to questions concerning the AIA/CropUSA Entities, he frequently responded in an evasive fashion with responses like "I don't recall" or by indicating that the answer was in the "books and records" of the company (*see* Dkt. 914-2, pp. 20 – 21).  Mr. Taylor also refused to authenticate any documents that had a Reed Taylor bates stamp (Dkt. 914-2, ¶ 10, pp. 5-7).

**DISCOVERY MASTER ORDER NO. 31 GRANTING IN PART MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS** – 7

Finally, notwithstanding Miesen's inclusion of R. John Taylor as an individual in this motion to compel, Miesen has not made a separate, identifiable argument that Mr. Taylor should provide further deposition testimony as an individual.

<u>ANALYSIS</u>

*<u>The Parties Did Not Follow The F.R.C.P. 30(b)(6) Procedure</u>*
*<u>For The Deposition Of An Organization</u>*

Rule 30(b)(6) provides:

> (6) Notice or Subpoena Directed to an Organization. In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

The last sentence of Rule 30(b)(6) makes it clear that other procedures for the deposition of an entity are not precluded by its existence.  The obligation of the entity to designate and educate a person to testify, however, is attached to the plain language of paragraph (6).  That paragraph requires a litigant that wishes to take a 30(b)(6) deposition of an entity to send a notice or subpoena describing the matters for examination with "reasonable particularity". Once the matter description has been delivered, paragraph (6) requires the entity to designate and, if necessary, educate one or more individuals who will testify on its behalf concerning the identified subject matters.

The parties did not follow the paragraph (6) procedure because Miesen designated R. John Taylor as the 30(b)(6) designee of the AIA/CropUSA Entities.  Absent a stipulation to the

**DISCOVERY MASTER ORDER NO. 31 GRANTING IN PART MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS** – 8

effect that the obligations of the responding entity to produce a knowledgeable witness were preserved notwithstanding Miesen's designation of the testifying witness for the AIA/CropUSA Entities, it is no small surprise that the witness was not prepared to be examined on the 261 subject matters identified in Miesen's four 30(b)(6) notices of deposition.

The parties have provided no authority concerning the duty of an entity to prepare a 30(b)(6) witness selected by the examining party.  While not the result of exhaustive research, the Discovery Master located a case from this district that has addressed a single circumstance where the examining party designated a 30(b)(6) witness.   That case, which is entitled *Calderon v. Experian Information Solutions, Inc.,* 287 F.R.D. 629 (2012) involved a suit against Experian Information Solutions, Inc. ("Experian"), for violation of the Fair Credit Reporting Act, 125 U.S.C. § 1681 *et. seq.*

The witnesses in question were "dispute agents" employed by Experian sister corporation Experian Services Chile, S.A., located in Santiago, Chile who were "the only people who might have information about what was actually done, as opposed to simply what Experian's policies and procedures theoretically required".  One of the material parts of the decision concerned whether the individual "dispute agents" were "managing agents" who could be deposed under 30(b)(6) or individuals who would need to be subpoenaed in accordance with Chilean law.  The Court decided that the currently employed dispute agents could be considered to be "managing agents" for purposes of taking their depositions concerning the conduct of their jobs and deferred until trial the question whether their testimony would be binding on Experian.

*Calderon,* supra, does not address the duty of an entity to prepare a 30(b)(6) witness designated by the examining party.  It does, however,  demonstrate that the circumstances in

**DISCOVERY MASTER ORDER NO. 31 GRANTING IN PART MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS** – 9

15142394_1.doc (14451-1)

which an examining party can effectively designate a 30(b)(6) witness and receive the procedural benefits of 30(b)(6) are limited. It made sense, under the limited circumstances in *Calderon,* that the "dispute agents" could be deposed under 30(b)(6) without being designated by the Experian entity.  It makes much less sense for the examining party to designate an individual  as the designated witness for four separate entities concerning 261 subject matters and to expect that the entities will prepare that individual to fully testify on their behalf.  If this point was not self-evident, it should have been apparent following service of  Taylor's 30(b)(6) Objections (Dkt. 942-2).  Defendants Beck et. al. further make the point by arguing that "as the record demonstrates, at no time did Plaintiff's counsel ever request that Mr. Taylor or the Defendant AIA/Crop USA Entities ever identify if there was a person or person(s) more knowledgeable about any particular subject matter as contemplated by the Rule itself" (Dkt. 937, p. 10). Counsel for Beck, et. al. however, who is also counsel for R. John Taylor, acceded to Miesen's designation of Mr. Taylor and apparently offered no alternatives concerning any identified subject matter on behalf of any of the AIA/CropUSA Entities.

### *Deposition Protocol*

Miesen's motion to compel asked for the establishment of a deposition protocol, but made no proposal and little argument concerning what should be contained in such a protocol. Nonetheless, the idea appears to have merit under the circumstances, is consistent with the authority granted the Discovery Master under F.R.C.P. 53(c) and has, in light of the briefing on other issues in connection with Miesen's motion, given rise to some of the provisions of this DMO No. 31.

**DISCOVERY MASTER ORDER NO. 31 GRANTING IN PART MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS** – 10

15142394_1.doc (14451-1)

*Miesen Will Be Allowed Additional Days to Depose the*
*AIA/CropUSA Entities Under F.R.C.P. 30(b)(6)*

The Discovery Master is aware that it could be difficult for Miesen to obtain testimony from a knowledgeable witness that is binding on the AIA and CropUSA entities and that R. John Taylor, as the only remaining officer of the entities, is high on the list of suspects. The Discovery Master also acknowledges that counsel for the parties may have intended to proceed efficiently but concludes that the procedure followed by counsel hindered the gathering of evidence from the AIA/CropUSA Entities to the detriment of Miesen and the shareholders on whose behalf he states he is acting.

The Discovery Master also concludes that blame for the circumstances giving rise to this Motion to Compel is shared and does not rest with any single party or counsel. No sanctions will, therefore, be imposed and no attorneys' fees will be awarded. Miesen and the AIA/CropUSA Entities will, however, be ordered to each pay one half of the Court Reporter and videographer cost for the depositions taken February 24 and 25, 2020 and for the 30(b)(6) depositions taken pursuant to this DMO No. 31.

ORDER

Miesen's Motion to Compel will, therefore, be granted in part, as follows:

1.     Miesen shall have three (3) additional, seven (7) hour days for a total of 21 hours in which to complete the 30(b)(6) depositions of the AIA/CropUSA Entities;

2.     The 21 hours of deposition time allocated to Miesen by paragraph 1 above includes any time needed to conduct cross examination following examination by the defendants (whose time is not included within and is in addition to, Miesen's 21 hours);

**DISCOVERY MASTER ORDER NO. 31 GRANTING IN PART MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS** – 11

15142394_1.doc (14451-1)

3.      The depositions of the AIA/CropUSA Entities will concern the subject matters identified in the deposition notices for each which are Exhibits A, B, C and D to the Declaration of Roderick C. Bond (Dkts. 914-3, 4, 5 and 6), which shall not be amended except to the extent required to comply with this DMO No. 31;

4.      The AIA/CropUSA Entities shall designate witnesses pursuant to Rule 30(b)(6) for each of the subject matters identified on the respective deposition notices for each which are Exhibits A, B, C and D to the Declaration of Roderick C. Bond (Dkts. 914-3, 4, 5 and 6), no later than seven (7) days from the date this Discovery Master Order No. 31 is adopted by the Court;

5.      The AIA/CropUSA Entities shall interpret the subject matters of their respective 30(b)(6) deposition notices according to their plain language and shall designate knowledgeable witnesses pursuant to paragraph 4 above notwithstanding John Taylor's Objections to Plaintiff's Notice of Video-Taped Deposition of the Rule 30(b)(6) Designee(s) of AIA Services Corporation, AIA Insurance, Inc., CropUSA Insurance Agency, Inc., and CropUSA Insurance Services, LLC  (Dkt. 942-2);

6.      The AIA/CropUSA Entities shall be prepared to authenticate any and all documents generated, possessed in the normal course of business and/or previously produced by them in this or related litigation (without regard to how they are bates stamped or otherwise identified for document control purposes),  listed on the Exhibits Index attached as Exhibit F to the Declaration of Roderick C. Bond (Dkt. 914-8), which Exhibit List shall not be amended or supplemented;

7.      The testimony of the AIA/CropUSA Entities' designated witnesses will be taken pursuant to Rule 30, including specifically the provisions of Rule 30(c) which states that the

**DISCOVERY MASTER ORDER NO. 31 GRANTING IN PART MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS** – 12

15142394_1.doc (14451-1)

9-ER-2222

testimony will be taken <u>subject to objection</u>, that objections shall be stated concisely in a non-argumentative and non-suggestive manner and that instructions to the witness not to answer shall be limited, as follows:

> (2) Objections. An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a non-argumentative and non-suggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

8.      The depositions of the AIA/CropUSA Entities shall be concluded no earlier than fourteen (14) days and no later than twenty eight (28) days from the date this Discovery Master Order No. 31 is adopted by the Court.

9.      The Discovery Master has identified no argument and no specific, unanswered questions directed to Mr. Taylor in his individual capacity that require additional time.  To the extent the Motion to Compel seeks additional time for the deposition of R. John Taylor in his individual capacity, it is denied.

10.     No sanctions will be imposed and no attorneys' fees will be awarded.

11.     Miesen and the AIA/CropUSA Entities shall each pay one half of the Court Reporter and videographer cost for the depositions taken February 24 and 25, 2020 and for the 30(b)(6) depositions taken pursuant to this DMO No. 31.  In order to facilitate this Order, the AIA/CropUSA Entities shall advance the cost of the depositions taken pursuant to this DMO No. 31 and Miesen and his counsel shall reimburse the AIA/CropUSA Entities for his proportionate

**DISCOVERY MASTER ORDER NO. 31 GRANTING IN PART MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS** – 13

15142394_1.doc (14451-1)

9-ER-2223

share hereunder within fourteen (14) days after receipt of proof of payment to the Court Reporter by or on behalf of the AIA/CropUSA Entities.


Dated this 20th day of May, 2020.


/s/ David R. Lombardi
David R. Lombardi
Discovery Master

**DISCOVERY MASTER ORDER NO. 31 GRANTING IN PART MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS** – 14

15142394_1.doc (14451-1)

**9-ER-2223**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 20th day of May, 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Benjamin A. Schwartzman
Alyson Anne Foster
Taylor Bruun
Andersen Schwartzman Woodard
Dempsey, PLLC
101 S. Capitol Blvd., Ste. 1600
Boise, ID  83702
Email:  ; aaf@aswdpllc.com
tlb@aswdpllc.com
*Attorneys for GemCap Lending I, LLC*

Fanxi Wang
Bird Marella
1875 Century Park East, 23rd Floor
Los Angeles, CA  90067
Email:  fwang@birdmarella.com,
mhicks@birdmarella.com
*Attorneys for Quarles & Brady, LLP*

Jack S. Gjording
Stephen Lee Adams
Gjording Fouser PLLC
121 N. 9th St., Ste. 600
PO Box 2837
Boise, ID  83702
Email:  jgjording@gfidaholaw.com,
sadams@gfidaholaw.com
*Attorneys for Quarles & Brady, LLP*

James B. King
Markus William Louvier
Evans, Craven & Lackie, P.S.
818 W. Riverside Ave., Ste. 250
Spokane, WA  99201
Email:  jking@ecl-law.com,
mlouvier@ecl-law.com
*Attorney for Crumb & Munding, P.S.*

Jeffrey A. Thomson
Loren C. Ipsen
Elam & Burke
PO Box 1539
Boise, ID  83701-1539
Email:  jat@elamburke.com,
lci@elamburke.com
*Attorneys for Hawley Troxell Ennis & Hawley, Gary D. Babbitt, D. John Ashby and Richard Riley*

Bradley S. Keller
Byrnes Keller Cromwell, LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
bkeller@byrneskeller.com
kwolf@byrneskeller.com
*Attorneys for Hawley Troxell Ennis & Hawley, Gary D. Babbitt, D. John Ashby and Richard Riley*

**DISCOVERY MASTER ORDER NO. 31 GRANTING IN PART MIESEN'S MOTION TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND SANCTIONS** – 15

15142394_1.doc (14451-1)

**9-ER-2224**

9-ER-2225

Daniel Loras Glynn
Jones Williams Fuhrman Gourley, P.D.
225 N 9th Street, Suite 820
Boise, ID 83701
Email: dglynn@idalaw.com
*Attorneys for AIA Services Corporation,
AIA Insurance, Inc. and Attorneys for Connie
Taylor Henderson, Michael W. Cashman, Sr.
James Beck, Crop USA Insurance Services,
LLC, and Crop USA Insurance, Inc.*

Michael S. Bissell
Tyler S. Waite
Campbell & Bissell, PLLC
Email: mbissell@campbell-bissell.com,
twaite@campbell-bissell.com
*Attorneys for Reed J. Taylor*

Rebecca L. Dircks, *Pro Hac Vice*
Benesch, Friedlander, Coplan & Aronoff
333 W Wacker Drive, Suite 1900
Chicago, IL 60606-221
Email: rdircks@beneschlaw.com
*Attorneys for Interested Party CGB
Diversified, Inc.*

Roderick C. Bond
Roderick Bond Law Office, PLLC
601 108th Avenue NE, Suite 1900
Bellevue, WA  98004
Email: rod@roderickbond.com
*Attorney for Dale L. Miesen*

 */s/ David R. Lombardi*
David R. Lombardi

**DISCOVERY MASTER ORDER NO. 31 GRANTING IN PART MIESEN'S MOTION
TO COMPEL ADDITIONAL DEPOSITION DAYS FOR JOHN TAYLOR AND
SANCTIONS** – 16

15142394_1.doc (14451-1)

MICHAEL S. BISSELL, ISB NO. 5762
Email: mbissell@campbell-bissell.com
TYLER S. WAITE, ISB NO. 9641
Email: twaite@campbell-bissell.com
CAMPBELL & BISSELL, PLLC
820 West 7th Avenue
Spokane, WA  99204
Telephone: (509) 455-7100
Fax: (509) 455-7111
Attorneys for Reed J. Taylor

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Civil No. 1:10-cv-00404-DCN<br><br><br>**MEMORANDUM IN SUPPORT OF REED TAYLOR'S APPLICATION FOR AN ADVANCE OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856** |

MEMORANDUM IN SUPPORT REED TAYLOR'S APPLICATION FOR AN ADVANCE OF
EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854
AND 30-1-856 - 1

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

        Defendants/Third-Party
        Plaintiffs,

      v.

REED TAYLOR, an individual,

        Third-Party Defendant.

REED TAYLOR, an individual,

        Third-Party Defendant/
        Counterclaimant,

      v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

        Counterdefendants.

GEMCAP LENDING I, LLC, a Delaware limited liability company,

        Defendant/Third-Party
        Plaintiff,

      v.

QUARLES & BRADY, LLP, a Wisconsin limited legal partnership; and CRUMB & MUNDING, P.S., a

MEMORANDUM IN SUPPORT REED TAYLOR'S APPLICATION FOR AN ADVANCE OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856 - 2

9-ER-2227

| Washington professional service corporation, | |
|---|---|
| Third-Party Defendants. | |

Third-Party Defendant Reed Taylor, by and through his counsel, Campbell & Bissell, PLLC, submits this Memorandum in support of his Motion for an Order granting his Application for an Advance of Expenses from AIA Services, Inc. and AIA Insurance, Inc. ("the AIA Entities") pursuant to I.C. 30-1-854 and I.C. 30-1-856 (1997)[1].

## FACTS

1.      On August 11, 2010, Plaintiff filed this action. (**Dkt. 1**.)

2.      On April 24, 2017, filed its Third Amended Complaint. (**Dkt. 211**.)

3.      The Third Amended Complaint does not allege any wrongdoing prior to 1997 (**Dkt. 211**, ¶ 35), and pursuant to Plaintiff's damages expert (Larry Hile), Plaintiff is not seeking any damages which accrued prior to 1999 (Dec. of M. Bissell, ¶ 9.)

4.      On May 22, 2017, Defendants CropUSA, Connie Henderson, JoLee Duclos, R. John Taylor and James Beck filed a Third-Party Complaint against Reed Taylor. (**Dkt. 218**.) Third-Party Plaintiffs alleged that if they were liable to Plaintiffs, that Reed Taylor was liable to them for contribution due to his actions and inactions while a director of AIA Services and while an officer of (apparently) both AIA entities. Third-Party Plaintiffs allege Reed Taylor was a

---

[1] Now Idaho Code 30-29-854 and 856, which became effective in 2015. However, these code sections are not appreciably different from the 1997 code, and in any event the underlying claims allegedly involving Reed Taylor arose while the 1997 code was in effect.

MEMORANDUM IN SUPPORT REED TAYLOR'S APPLICATION FOR AN ADVANCE OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856 - 3

director until 2001, and was an officer until 1995 when his shares were redeemed.[2] (**Dkt. 1**, �ℙℙ 16 and 17.)

5.      The Bylaws of AIA Inc. (i.e., AIA Insurance) effective January 5, 1988 until 2016 are attached to the Dec. of M. Bissell and are incorporated herein by this reference.  Article XI of those Bylaws (discussed in further detail below) pertains to the indemnification of officers and directors.  (Dec. of M. Bissell, ℙ 2 and **Exhibit 1**.)

6.      The Bylaws of AIA Services, Inc. effective April 10, 1989 until 2016 (with one amendment in 1995 immaterial to this motion) are attached to the Dec. of M. Bissell and are incorporated herein by this reference.  Article XI of those Bylaws (discussed in further detail below) pertains to the indemnification of officers and directors.  (Dec. of M. Bissell, ℙ 3 and **Exhibit 2**.)

7.      Article XI of the Bylaws of AIA Services and AIA Insurance are virtually identical. (Dec. of M. Bissell, ℙ 4.)

8.      On May 27, 2020, Reed Taylor sent a letter to AIA Services and AIA Insurance demanding that those entities acknowledge their indemnification obligations to him as an alleged director and officer pursuant to the relevant bylaws.  T(Dec. of M. Bissell, **Exhibit 3**.)  The entities never responded.  (Dec. of M. Bissell, ℙ 5.)

9.      On October 20, 2020, Reed Taylor sent a Demand for Advances to AIA Services

---

[2] Notably Reed Taylor's alleged tenure as an officer expired years before any of the wrongful actions alleged by Plaintiff.  (**Dkt. 1**.)  Nevertheless, Third-Party Plaintiffs are apparently relying upon his service as an officer as a basis for liability.  For purposes of this application Reed Taylor is ignoring the incongruity, as it is immaterial to whether he is entitled indemnification/advances from the AIA Entities.

MEMORANDUM IN SUPPORT REED TAYLOR'S APPLICATION FOR AN ADVANCE OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856 - 4

for fees and costs incurred defending himself as a director of AIA Services.  (Affid. of M. Bissell, **Exhibit 4**.)  The letter contained the following Affirmation and Undertaking:

> I, Reed Taylor, make the foregoing demand for an advance of expenses on AIA Services, and affirm that I conducted myself in good faith as a director of AIA Services, that while acting in that capacity my conduct was in the best interest of the corporation, and that in all cases my conduct was not opposed to the best interests of the corporation. I further promise to repay any amounts advanced should it be determined that I am not entitled to indemnity.

AIA Services never responded, and more than 90 days have expired since the demand.  (Dec. of M. Bissell, ¶ 6.)

10.     On October 20, 2020, Reed Taylor sent a Demand for Advances to AIA Services and AIA Insurance for fees and costs defending himself as an officer of the AIA Entities.  (Dec. of M. Bissell, **Exhibit 5**.)  The letter containing the following Undertaking:

> I, Reed Taylor, make the foregoing demand for an advance of expenses on the AIA entities, and affirm that I conducted myself in good faith as an officer of the AIA entities, that while acting in that capacity my conduct was in the best interest of the corporations, and that in all cases my conduct was not opposed to the best interests of the corporations.  I further promise to repay any amounts advanced should it be determined that I am not entitled to indemnity.

The entities never responded and more than 90 days have expired since the demand.  (Dec. of M. Bissell, ¶ 7.)

11.     To the extent it is material, Reed Taylor is a resident of Washington and his fees to date exceed $75,000.  (Dec. of Reed Taylor, ¶ 2.)  AIA Services and AIA Insurance are Idaho corporations.  (Dec. of Michael S. Bissell, ¶ 8.)

/////

/////

/////

MEMORANDUM IN SUPPORT REED TAYLOR'S APPLICATION FOR AN ADVANCE OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856 - 5

## ARGUMENT

Article XI of the relevant Bylaws[3] of AIA Services and AIA Insurance contain the following provisions:

Section 11.1:  The corporation shall indemnify directors and officers to the fullest extent permitted by the Idaho Business Corporation Act, "as the same exists or may be hereafter amended" to the extent the amendment permits broader indemnification.

Section 11.3:  For purposes of indemnification, an officer or director "shall be deemed to have acted in good faith and in a manner reasonably believed to be in . . . the best interests of the corporation . . ."

Section 11.5:  The corporation "*shall* advance, prior to the final disposition of a proceeding, promptly following request therefore" the expenses incurred by an officer or director on the condition that they agree to repay the amounts if it is later determined they are not entitled to indemnification. (Emphasis added).

Section 11.6:  Indemnification rights are contract rights, and the claimant can bring an enforcement action in court if the claim is denied in whole or in part or "no disposition of such claim is made within ninety (90) days of request therefor."

/////

/////

/////

---

[3] The 2016 Bylaws came into effect well after the alleged wrongdoing by Reed Taylor, but in any event Sections 11.1-11.6 thereof are the same in all material respects.  (Dec. of M. Bissell, ¶¶ 2 and 3.)

MEMORANDUM IN SUPPORT REED TAYLOR'S APPLICATION FOR AN ADVANCE OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856 - 6

From the time the alleged wrongdoing began (1997) to when Reed Taylor's tenure as an officer or director ended (2001), the Idaho Business Corporation Act, I.C. 30-1-101 *et seq*. (1997) was in effect.  The relevant provisions are summarized below and are attached in full as **Appendix A**[4]:

Section 850:  "Expenses" includes counsel fees.

Section 853:  A corporation *may* advance funds to pay for or reimburse reasonable expenses if the director affirms his good faith belief that he met the relevant standard of conduct and agrees to repay the funds if ultimately not entitled to indemnification, and the entity authorizes the advance.

Section 856:  Corporations are authorized to indemnify and advance expenses to officers, to the same extent as directors.

Section 858:  A corporation may "obligate itself in advance" to advance funds (which occurred here under Section 11.5 of the Bylaws), and such an obligation constitutes the entity authorization required by Section 853.

Section 854: Provides in full as follows (emphasis added):

> COURT–ORDERED INDEMNIFICATION AND ADVANCE FOR EXPENSES. (1) A director who is a party to a proceeding because he is a director may apply for indemnification or an advance for expenses *to the court conducting the proceeding* or to another court of competent jurisdiction. After receipt of an application and after giving any notice it considers necessary, the court shall:
> . . .
> (b) Order indemnification or advance for expenses if the court determines that the director is entitled to indemnification or advance for expenses pursuant to a provision authorized by section 30–1–858(1), Idaho Code; or

---

[4] The current Business Corporation Act (I.C. 30-29-101, et seq.) came into effect in 2015 – a date well after the alleged wrongdoing by Reed Taylor.  In any event, the equivalent provisions therein (I.C. 30-29-850, 853, 854, 856 and 858) are, for purposes of this Motion, largely the same in all material respects.

MEMORANDUM IN SUPPORT REED TAYLOR'S APPLICATION FOR AN ADVANCE OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856 - 7

**9-ER-2232**

(c) Order indemnification or advance for expenses if the court determines, in view of all the relevant circumstances, that it is fair and reasonable:

(i) To indemnify the director, or

(ii) To advance expenses to the director, even if he has not met the relevant standard of conduct set forth in section 30–1–851(1), Idaho Code, failed to comply with section 30–1–853, Idaho Code, or was adjudged liable in a proceeding referred to in section 30–1–851(4)(a) or (4)(b), Idaho Code, but if he was adjudged so liable his indemnification shall be limited to reasonable expenses incurred in connection with the proceeding.

(2) If the court determines that the director is entitled to indemnification under subsection (1)(a) of this section or to indemnification or advance for expenses under subsection (1)(b) of this section, it shall also order the corporation to pay the director's reasonable expenses incurred in connection with obtaining court-ordered indemnification or advance for expenses. If the court determines that the director is entitled to indemnification or advance for expenses under subsection (1)(c) of this section, it may also order the corporation to pay the director's reasonable expenses to obtain court-ordered indemnification or advance for expenses.

Here, the Bylaws obligated the entities to advance funds to Reed Taylor, as he was and is a party to this proceeding because of his service as a director and/or officer.  (Section 11.5.)  Reed Taylor made a proper demand on the entities with the required certifications.  (Dec. of M. Bissell, Exs. 4 and 5).  More than ninety (90) days have passed since the demands and the AIA entities have not responded.  Wherefore, pursuant to Section 11.6 of the Bylaws, and I.C. 30-1-854, Reed Taylor seeks enforcement in this proceeding and is entitled to an order granting an advance of expenses because the bylaws obligate the entities to do so (I.C. 30-1-854(1)(b)).

In terms of enforcing such an order, and to avoid disclosing trial strategy and privileged information, Reed Taylor proposes that the AIA entities select a neutral attorney to review his past and future invoices (at AIA's expense).  The neutral will review the invoices and recommend an amount for payment, which the AIA Entities and Reed Taylor will accept subject to their right to re-visit the amounts upon termination of the underlying matter and full disclosure of the invoices to the AIA Entities.

MEMORANDUM IN SUPPORT REED TAYLOR'S APPLICATION FOR AN ADVANCE OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856 - 8

In addition, Reed Taylor seeks his fees and cost for bringing this application pursuant to I.C. §30-1-854(2).

## CONCLUSION

Based on the foregoing, Reed Taylor's Application should be granted.

DATED:  This 21st day of January 2021.

CAMPBELL & BISSELL, PLLC

By: _/s/ Michael S. Bissell_
    MICHAEL S. BISSELL
    TYLER S. WAITE
    820 W. 7th Avenue
    Spokane, WA  99204
    Attorneys for the Third-Party
    Defendant/Counterclaimant Reed Taylor

MEMORANDUM IN SUPPORT REED TAYLOR'S APPLICATION FOR AN ADVANCE OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856 - 9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of January 2021, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson: jat@elamburke.com
Loren C. Ipsen: lci@elamburke.com
Joyce Ann Hemmer: jah@elamburke.com
Bradley S. Keller: bkeller@byrneskeller.com
Alyson Anne Foster: alyson@dempseyfoster.com
Roderick C. Bond:  rod@roderickbond.com
David R. Lombardi: drl@givenspursley.com
Daniel Loras Glynn: dglynn@idalaw.com
William E. Adams:  wadams@gemcapsolutions.com

I HEREBY FURTHER CERTIFY that on the 21st day of January 2021, I caused the following parties or counsel to be served with the foregoing document by U.S. Mail:

AIA Insurance, Inc.
R. John Taylor, Registered Agent
PO Box 538
Lewiston, ID  83501-0538

AIA Services Corporation
R. John Taylor, Registered Agent
PO Box 538
Lewiston, ID  83501-0538

_/s/ Michael S. Bissell_
MICHAEL S. BISSELL
TYLER S. WAITE

MEMORANDUM IN SUPPORT REED TAYLOR'S APPLICATION FOR AN ADVANCE OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856 - 10