**Consolidated Case Nos. 25-3552 and 25-3800**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.,

**Plaintiff-Appellant**,

v.

R. JOHN TAYLOR, an individual, CONNIE TAYLOR HENDERSON, an individual, JAMES BECK, an individual, MICHAEL W. CASHMAN, SR., an individual, CROP USA INSURANCE AGENCY, INC., an Idaho corporation, CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company, AIA SERVICES CORPORATION, an Idaho corporation, AND AIA INSURANCE, INC., an Idaho corporation,

**Defendants-Appellees**,

and

Reed J. Taylor, an individual,

**Third-Party Defendant-Appellee.**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO,
CHIEF DISTRICT COURT JUDGE DAVID C. NYE, PRESIDING

**APPELLANT'S EXCERPTS OF THE RECORD – VOLUME - 17**

| | |
|---|---|
| Roderick C. Bond | Andrew Schwam |
| Roderick Bond Law Office, PLLC | Andrew Schwam Law Firm |
| 10900 NE 4th St., Suite 2300 | 705 SW Fountain St. |
| Bellevue, WA 98004 | Pullman, WA 99163-2128 |
| Tel: (425) 591-6903 | Tel: (208) 874-3684 |
| Email: rod@roderickbond.com | Email: amschwam@turbonet.com |
| Attorney for Appellant | Attorney for Appellant |

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>**v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>PLAINTIFF DALE L. MIESEN'S AMENDED REQUEST FOR JUDICIAL NOTICE (Dkts. 1067, 1090, 1131, 1138) |

MIESEN'S AMEND. REQUEST FOR JUDICIAL NOTICE (Dkts. 1067, 1090, 1131, 1138) - i

**17-ER-4121**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

                Defendants/Third-Party Plaintiffs,

      v.

REED TAYLOR, an individual,

                Third-Party Defendant.

REED TAYLOR, an individual,

                Third-Party Defendant/ Counterclaimant,

      v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

                Counterdefendants.

MIESEN'S AMEND. REQUEST FOR JUDICIAL NOTICE (Dkts. 1067, 1090, 1131, 1138) - ii

**17-ER-4122**

## I.   REQUEST FOR JUDICIAL NOTICE

Fed. Evid. R. 201 provides in pertinent part:

(a) SCOPE. This rule governs judicial notice of an adjudicative fact only, not a legislative fact.
(b) KINDS OF FACTS THAT MAY BE JUDICIALLY NOTICED. The court may judicially notice a fact that is not subject to reasonable dispute because it:
    (1) is generally known within the trial court's territorial jurisdiction;
    or
    (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
(c) TAKING NOTICE. The court:
    (1) may take judicial notice on its own; or
    (2) must take judicial notice if a party requests it and the court is supplied with the necessary information.
(d) TIMING. The court may take judicial notice at any stage of the proceeding.

Fed. Evid. R. 201(a)-(d). A court may take judicial notice of declarations and affidavits. *E.g., Pacific Pulp Molding, Inc. v. Burchfield*, No.: 15-CV-1602-AJB-MDD, 2016 WL 6103086, at *3 (S.D. Cal. Jan. 26, 2016) (collecting cases).

In connection with the filings regarding the pending motion to dismiss based on the alleged inadequacy of the derivative demand letters and specifically as to the July 21, 2008 derivative demand letter (Dkt. 1131-2), Miesen requests that this Court take judicial notice of the highlighted portions of paragraphs 21, 22 and 28 of John Taylor's affidavit dated January 29, 2021 filed in the instant lawsuit (Dkt. 1072 at ¶¶ 21-22, 28), together with Reed Taylor's Fifth Amended Complaint dated February 1, 2008[1] attached thereto as Exhibit O (Dkt. 1072-15) and the July 21, 2008 derivative demand letter[2] attached thereto as Exhibit S (Dkt. 1072-19),[3] which are collectively attached hereto as Appendix S.[4] This request for judicial notice is being made for the purpose of

---

[1] This Complaint is also attached as Appendix R to Miesen's Response (Dkt. 1131-19).

[2] This demand letter is also attached as Appendix A to Miesen's Response (Dkt. 1131-1).

[3] Because this affidavit was filed in the instant case, the other exhibits are readily available. (*See* Dkts. 1072-1–1072-20.)

[4] The attached Appendix S follows the Appendixes A-R attached to Miesen's Response. (Dkts. 1131-1–131-19.)

MIESEN'S AMEND. REQUEST FOR JUDICIAL NOTICE (Dkts. 1067, 1090, 1131, 1138) - 1

further establishing that the AIA Entities' purported directors were well aware of the specific transactions and legal action being requested by the July 22, 2008 derivative demand letter. For convenience of the Court, the pertinent portions of paragraphs 21, 22 and 28 state:

> 21.     Although the original complaint filed in the Reed Taylor case was a two-count complaint seeking relief against the AJA Entities and myself personally with regard to the Stock Redemption Agreement within a year that original complaint had been amended five times to add my ex-wife Connie Taylor, Jim Beck and his wife Corrine, the CropUSA Entities and others and to assert many of the identical issues that are present in this litigation. Attached as Exhibit "O" hereto is the Fifth Amended Complaint in the Reed Taylor Case. As I confirmed to Mr. Bond during his questioning in the course of a during a four day deposition "at issue" in the Reed Taylor Case was (I) the formation and ownership of CropUSA, (2) the business relationship of the AIA entities and the CropUSA entities in terms of assets, employees, master marketing agreements and administrative agreements, (3) the 2001 exchange of Series C preferred shares of AIA Services that were converted to common shares of CropUSA, (4) 2001 purchase of a parking lot, (5) the transactions between AIA Services and Pacific Empire Radio Corporation ("PERC"), (6) assertions of conflicts of interest, (7) issues pertaining to the Trustmark Settlement, (8) CropUSA asset sale to Hudson Insurance, (9) consulting payments received by me, (10) my compensation from AIA Services, (11) the attorney fees paid on behalf of the individual defendants in the Reed Taylor case, (12) the loans between Crop USA and AIA Services, and (13) compensation of the AIA Services' directors. Based on these allegations, in addition to the assertion of a breach of the stock redemption agreement, Reed Taylor asserted, among other, claims for fraud, director liability, breach of fiduciary duty, and conspiracy of all named defendants.

> 22.     I also note that the Fifth Amended Complaint, like the present litigation, sought to challenge AIA Services' guarantee of CropUSA's loan. In this regard, in October 2006 HTEH prepared an attorney opinion letter regarding a loan transaction involving the CropUSA Entities and Lancelot Investors Fund, L.P. and to which AIA Insurance was to be a guarantor to the loan transaction…
>
> *              *              *
>
> 28.     Thereafter, in a letter dated July 21, 2008, Donna Taylor in her identified capacity as a Series A Preferred Shareholder in AIA Services made demand upon AIA Services for corrective action pursuant to Idaho Code 30-1-742. Like the Complaint in Reed Taylor's case, Donna Taylor's letter asserted the existence of 27 matters to which she asserted liability existed including, but not limited to the alleged usurpation of a corporate opportunity with regard to the CropUSA Entities, illegal loan guarantees as well as assertions of fraud, misappropriation and breach of fiduciary duties. A true and correct copy of this correspondence is attached is attached as Exhibit "S." As the docket in this matter reflects, this present action purporting to be a derivative case was not commenced until August 11, 2010.

MIESEN'S AMEND. REQUEST FOR JUDICIAL NOTICE (Dkts. 1067, 1090, 1131, 1138) - 2

(App. S at 10-12 ¶¶ 21-22, 28.)

DATED:  This 10th day of September 2021.

RODERICK BOND LAW OFFICE, PLLC

By:  */s/ Roderick C. Bond*
Roderick C. Bond
Attorney for the Plaintiff Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:  */s/ Andrew Schwam*
Andrew Schwam
Attorney for the Plaintiff Dale L. Miesen

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of September 2021, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:   jat@elamburke.com
Loren C. Ipsen:   lci@elamburke.com
Joyce A. Hemmer:   jah@elamburke.com
Bradley S. Keller:   bkeller@byrneskeller.com
Alyson A. Foster:   alyson@dempseyfoster.com
William E. Adams:   bill@weadamslaw.com
Tyler S. Waite:   twaite@campbell-bissell.com
Michael S. Bissell:   mbissell@campbell-bissell.com
Daniel L. Glynn:   dglynn@idalaw.com
Andrew Schwam:   amschwam@turbonet.com

*/s/ Roderick C. Bond*
Roderick C. Bond

MIESEN'S AMEND. REQUEST FOR JUDICIAL NOTICE (Dkts. 1067, 1090, 1131, 1138) - 3

**17-ER-4125**

DANIEL LORAS GLYNN, ISB #5113
JONES ♦ WILLIAMS ♦ FUHRMAN ♦ GOURLEY, P.A.
The 9th & Idaho Center
225 N. 9th Street, Suite 820
PO Box 1097
Boise, ID 83701
Telephone: (208) 331-1170
Facsimile: (208) 331-1529
dglynn@idalaw.com

Attorneys for James Beck, Michael Cashman, Connie Henderson, John Taylor, Crop USA
Insurance Agency, Inc., and Crop USA Insurance Services LLC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>        Plaintiff,<br><br>vs.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>        Defendants. | Case No. 1:10-CV-404-DCN-CWD<br><br>**AFFIDAVIT OF R. JOHN TAYLOR IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

AFFIDAVIT OF R. JOHN TAYLOR IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 1

**App.  S, p. 1**

**17-ER-4126**

STATE OF IDAHO )
: ss.
County of )

R. JOHN TAYLOR, first being duly sworn on oath, deposes and says:

1. I am the President of the Defendant AIA Services Corporation ("AIA Services"), the President of the Defendant AIA Insurance, Inc. ("AIA Insurance"), the Manager of CropUSA Insurance Services, LLC ("CropUSA Services"), the President of CropUSA Insurance Agency, Inc. ("CropUSA Agency"), and named as an individual Defendant in this litigation. I have personal knowledge of all facts stated herein.

2. I have held the position of President of AIA Services and AIA Insurance (collectively referred to as "the AIA Entities") since at least 1995. I have also held the position of President of CropUSA Agency since its creation in 1999 and CropUSA Services since its creation in 2009 (collectively referred to as "CropUSA Entities"). In my role of President for the AIA/CropUSA Entities I was responsible for all aspects of the operations of these entities, including, but not limited to the assurance of regulatory compliance within the states in which the AIA/CropUSA Entities marketed their insurance products as well as interaction with the Risk Management Agency (RMA), the regulatory agency of the United States Department of Agriculture (USDA) responsible for, among others, the regulation of crop insurance products.

3. AIA Services has its origins in the combined efforts of myself and my brother Reed Taylor to market and administer group health and life policies to farmers in the northwest through the entity named Agriculture Insurance Administrators, later called AIA Insurance. These group policies were endorsed by the Idaho, Oregon and Montana state wheat grower associations. In time, we expanded our marketing operations into over forty other markets across the United States and were sponsored by state and national farm commodity associations.

AFFIDAVIT OF R. JOHN TAYLOR IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 2

**App. S, p. 2**

**17-ER-4127**

Thereafter, we formed AIA Services for the purpose of acquiring other health and life insurance companies to be operated as subsidiaries of AIA Services. At no point has either AIA Services, or any subsidiary it created or acquired, ever been licensed to market property and casualty insurance in Idaho let alone any other state jurisdiction in which it transacted business.

4.     In late 1987, AIA Insurance was made a wholly owned subsidiary of AIA Services to facilitate a resolution of the divorce between Reed Taylor and his then wife, Donna Taylor.  As a consequence of this reorganization, AIA Services issued to Donna Taylor Series A Preferred Shares in AIA Services.  In addition, and as part of the same transaction, AIA Services issued Reed Taylor shares of common stock in AIA Services, which issuance resulted in his ownership of sixty-five (65%) of the then issued common stock in AIA Services.

5.     In 1993 Donna Taylor made demand for the redemption of the Series A Preferred Shares and AIA Services began making payments to Donna Taylor.

6.     However, the growth and profitability that AIA Services had seen in its marketing of health and life insurance products began to decline significantly in the 1990s because of significant legislative changes to health and life insurance at the state and local levels prompted by policies promoted by the Clinton administration.  In addition to prohibiting denial of insurance coverage for pre-existing coverage or waiting periods before coverage application for the type of policies marketed by AIA, legislative changes were made to mandate minimum policy loss ratios which effectively reduced any agency commissions in excess of ten percent , increased a company's capital requirements and restricted the manner and method in which the products offered by AIA Services could be marketed. In other words, throughout the 1990s AIA Services experienced increases in the cost of doing business that it was not able to absorb or pass through in the cost of the products it marketed, destroying the viability of association group sales

AFFIDAVIT OF R. JOHN TAYLOR IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 3

**App.  S, p. 3**

**17-ER-4128**

and the profitability of AIA Services employing full time agents to market its products. I disagreed strongly with Reed Taylor regarding how AIA Services should adapt to these changes. As a result, I ultimately determined that our differences were irreconcilable. I understood Reed Taylor to agree with this conclusion.

7. Thus in late 1994, early 1995, Reed Taylor and I made purposeful efforts to attract additional investors to AIA Services with the specific purpose of raising sufficient capital to buy out Reed Taylor's interest in AIA Services. These marketing efforts included negotiations with Defendant Michael Cashman and Defendant James Beck as well as others. These efforts involving myself and Reed Taylor ultimately resulted in Messrs. Cashman and Beck agreeing to become investors in AIA Services through the purchase of Series C Preferred Shares. In this regard Mr. Cashman invested $1,000,000 in AIA Services. Mr. Beck invested $500,000 in AIA Services. Following their investment in 1995, and continuing through the year 2001, Messrs. Beck and Cashman held positions on the Board of Directors for AIA Services. At no point did Messrs. Beck or Cashman ever hold an officer position with AIA Services.

8. As a result, on July 22, 1995, AIA Services and Reed Taylor entered into a Stock Redemption Agreement which provided for the redemption of Reed Taylor's common stock in AIA Services in exchange for an initial $1,500,000 payment to Reed Taylor and an additional $6,000,000, plus interest, to be paid in monthly installments. Incident to this transaction, Reed Taylor agreed to subordinate principal payments to be paid to him by AIA Services in favor of the payments to Donna Taylor.

9. Unfortunately, the above referenced changes in the insurance industry continued to affect the profitability of AIA Services. In 1996 AIA Services obtained Reed Taylor's assent to a restructuring of the terms of the 1995 Redemption Agreement and providing for interest only

AFFIDAVIT OF R. JOHN TAYLOR IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 4

**App. S, p. 4**

**17-ER-4129**

payments to Reed Taylor. Donna Taylor's assent to subordination of AIA Service's payments to her remained unaltered.

10. Despite these changes to AIA Services' bottom line the negative downward trend of AIA Services profitability continued unabated as revenues decreased and expenses increased. Significantly, on or about December 4, 1998, AIA Services was compelled to place one of its subsidiary entities, The Universe Life Insurance Company, into liquidation for reasons of insolvency. Moreover, Trustmark Insurance Company, likewise facing the same regulatory changes and consequences on its operations, began to aggressively increase the rates on its products and ultimately began to discontinue accepting any new entrants into AIA's association plans. As AIA Services was dependent upon the Trustmark products as the main product in its portfolio offerings, Trustmark's actions left AIA Services, essentially, without any nationwide group insurance plan to offer.

11. Accordingly, with the active participation of Reed Taylor, I began to explore the possibility of entering the insurance market pertaining to property and casualty insurance products and specifically crop insurance. Initially, it was my intent for AIA Services to pursue this previous unexplored by AIA Services market of property, casualty and/or crop insurance. However, based on my multiple communications with representatives of the RMA as well as representatives of the various state insurance agencies into which I hoped to market crop insurance that AIA Services could not do so as a result of its existing financial condition.

12. Any assertion that that there are no financial restrictions imposed upon an entity to sell property and casualty insurance and that all one has to do to market and administer national crop insurance is to obtain a resident producer license in Idaho lacks a fundamental understanding of the crop insurance generally and the regulatory process applicable to crop

AFFIDAVIT OF R. JOHN TAYLOR IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 5

**App. S, p. 5**

insurance specifically. At no point was it ever contemplated that the entity established to market crop insurance programs would be designated as a Managing General Agent (MGA) in Idaho or in any other state for that matter. This is because federal law as overseen by the RMA pre-empts state law regarding crop insurance and therefore approval and appointment of such must be obtained at the federal level. The RMA does require that an entity possess either a property or casualty license, or a license to market crop insurance in those states where such a license exists, in those states in which it intends to market of crop insurance. However, the RMA requires far more than the possession of an appropriate license in the identified state. This is because a Standard Reinsurance Agreement (SRA) is a financial agreement between the Federal Crop Insurance Corporation (FCIC), as administered by the RMA, and the applicant. Thus, an applicant seeking to obtain a SRA with the RMA, among other submissions, is required to submit its financials to the RMA and demonstrate that it is in financial good standing with sufficient financial capacity to provide the RMA with reasonable assurance that it can deliver the product to be offered. In addition, an applicant must also demonstrate that it is in good standing with the regulatory agency in which it domiciled and that it possessed errors and omissions coverage for processing and agency activities. AIA Services could not meet any of these requirements.

13.     Most significantly, AIA Services did not have a sufficient net worth to pursue an application with the RMA.   Between the decreasing profitability resulting from regulatory changes in the health and life insurance market coupled with the liabilities to Donna Taylor and Reed Taylor, AIA Services possessed a negative net worth.  Attached as Exhibit "A" is a true and correct copy of the consolidated financial statement of AIA Services and its subsidiaries for 1998 and 1999. In my capacity as President of the AIA Entities, I reviewed these consolidated

AFFIDAVIT OF R. JOHN TAYLOR IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 6

**App.  S, p. 6**

**17-ER-4131**

financial statements, as I did for every year's financial statements for the AIA/CropUSA entities, for accuracy prior to publication. As noted therein, in 1998 AIA Services was operating at a net loss with liabilities exceeding assets of more than $6 million (and not including the liability attributable to Donna Taylor's ownership of Series A preferred stock). In 1999, AIA Services again operated at a net loss with liabilities exceeding assets by increasing to more than $7 million.

14.     This negative net worth continued in the years that followed and specifically during the time period in which I explored the opportunity to enter into crop insurance market. Attached as Exhibits "B," "C," "D," "E," "F," and "G" are true and correct copies of the financial statements of AIA Services and its subsidiaries for the years 2000 through 2007.

15.     Moreover, even aside from the clear inability of AIA Services to meet the financial wherewithal, and as noted above, AIA Services was involved in liquidation proceedings concerning its subsidiary entity the Universe Life Insurance Company. Additionally, as a result of AIA Services financial condition evident in its financial statements, AIA Services found itself unable to meet the growing capital requirements of various states in which it was marketing life and health insurance and had its insurance company licenses to do so revoked in those states. Thus, AIA Services, and any subsidiary entity, was simply unable obtain approval from the RMA.

16.     On or about June 18, 2001, AIA Services advised all of its shareholders, including the Plaintiff Dale Miesen, of AIA Services' decision not make CropUSA a subsidiary of AIA Services and that instead that CropUSA would be "an independent property and casualty agency." A true and correct copy of this correspondence is attached as Exhibit "H."

17.     Any doubt about AIA Services inability to obtain approval from the RMA for a

AFFIDAVIT OF R. JOHN TAYLOR IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 7

**App. S, p. 7**

**17-ER-4132**

SRA was made evident in the efforts to obtain approval of CropUSA as an MGA even without all the attendant issues of AIA Services' negative net worth with liabilities exceeding $8million, the liquidation of AIA Services' subsidiary Universal Life Insurance Company or its issues with other state regulatory agencies. These difficulties were noted in the CropUSA Financial Statements for the years 2002 through 2006, true and correct copies of which are attached as Exhibits "I," "J," "K," and "L." After multiple attempts to obtain approval from the RMA, CropUSA was only able to obtain such approval when I, along with Messrs. Beck and Cashman, agreed to personally guarantee a revolving line of credit with a maximum borrowing of $750,000. In further supplement of these financial commitments, Mr. Beck, with a business partner, contributed $2,000,000 of real estate mortgages to CropUSA. Ultimately, Mr. Beck and I were required to personally guarantee a $2 million loan from Zions Bank.

18. Coincident in time with establishment of the CropUSA Entities, Jim Beck and Michael Cashman resigned their positions on the Board of Directors of AIA Services in or about March 2001. Although Messrs. Beck and Cashman participated in an group that was called the Advisory Board for CropUSA, along with other individuals including Reed Taylor, this Advisory Board was advisory only as CropUSA possessed its own duly constituted board of directors. Neither Messrs. Beck or Cashman held a position on the CropUSA Board of Directors or as an officer to those entities.

19. In late December of 2006, Reed Taylor purported to issue a notice of default to AIA Services with regard to the agreements between AIA Services and himself. As evident from the foregoing referenced financial statements, AIA Services clearly did not have the capital to redeem Reed Taylor's shares as demanded and I cannot believe that Reed Taylor and/or Donna Taylor were not aware of this fact. Given the lack of capital and on the belief that AIA

AFFIDAVIT OF R. JOHN TAYLOR IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 8

**App. S, p. 8**

Services was barred from doing so under the Idaho Business Corporation Act, AIA Services refused Reed Taylor's demand. In January 2007, Roderick Cyr Bond, on behalf of Reed Taylor filed *Reed Taylor v. AIA, et al.*, CV07-00208 (Nez Perce County District Court) (hereinafter referred to as "Reed Taylor Case"). The AIA Entities retained the law firm of Hawley Troxell Ennis & Hawley LLP ("HTEH") to defend the AIA Entities in the Reed Taylor Case.

20.     Compounding this state of affairs, I learned that Reed Taylor and Donna Taylor entered into a subordination agreement that essentially reversed the order of the prior agreement that they and AIA Services had reached in 1996. It is my understanding that although the agreement between Reed and Donna Taylor purports to be effective December 1, 2006, it was not actually signed until some point in February of 2007. I was not advised of any discussions concerning this agreement nor advised of its existence at the time of its execution. Reed Taylor and Donna Taylor's agreement was made without any regard for AIA Services as it had the immediate effect of purporting to accelerating AIA Services' approximately $8 million redemption obligation to Reed Taylor and subordinating the company's then $450,000 redemption obligation to Donna Taylor. The other consequence of Donna Taylor and Reed Taylors conduct was to force AIA Services into the financial position that it could no longer make payment to Donna Taylor and be in compliance with the Idaho Business Corporation Act. AIA Services ceased payments to Donna Taylor in May of 2008. On June 2, 2008, Michael Bissell, now counsel for Reed Taylor in the Miesen matter, filed *Donna Taylor v. R. John Taylor, et al.*, CV08-1150 (Nez Perce County District Court). Attached as Exhibit "M" hereto is the Complaint filed in this action. Subsequently, on May 24, 2013, Mr. Bond filed another action on Donna Taylor's behalf, *Donna Taylor v. AIA Services, et al.*, CV-13-1075 (Nez Perce County District Court). Attached as Exhibit "N" hereto is the Complaint in the 2013 action. The

AFFIDAVIT OF R. JOHN TAYLOR IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 9

2013 action was consolidated with the 2008 (hereinafter referred to as "Donna Taylor Case"). The original complaint filed by Donna Taylor included specific allegations asserting "violation of the corporate opportunity doctrine" as concerned the relation between AIA Services and CropUSA.

21. Although the original complaint filed in the Reed Taylor case was a two-count complaint seeking relief against the AIA Entities and myself personally with regard to the Stock Redemption Agreement within a year that original complaint had been amended five times to add my ex-wife Connie Taylor, Jim Beck and his wife Corrine, the CropUSA Entities and others and to assert many of the identical issues that are present in this litigation. Attached as Exhibit "O" hereto is the Fifth Amended Complaint in the Reed Taylor Case. As I confirmed to Mr. Bond during his questioning in the course of a during a four day deposition "at issue" in the Reed Taylor Case was (1) the formation and ownership of CropUSA, (2) the business relationship of the AIA entities and the CropUSA entities in terms of assets, employees, master marketing agreements and administrative agreements, (3) the 2001 exchange of Series C preferred shares of AIA Services that were converted to common shares of CropUSA, (4) 2001 purchase of a parking lot, (5) the transactions between AIA Services and Pacific Empire Radio Corporation ("PERC"), (6) assertions of conflicts of interest, (7) issues pertaining to the Trustmark Settlement, (8) CropUSA asset sale to Hudson Insurance, (9) consulting payments received by me, (10) my compensation from AIA Services, (11) the attorney fees paid on behalf of the individual defendants in the Reed Taylor case, (12) the loans between CropUSA and AIA Services, and (13) compensation of the AIA Services' directors. Based on these allegations, in addition to the assertion of a breach of the stock redemption agreement, Reed Taylor asserted, among other, claims for fraud, director liability, breach of fiduciary duty, and conspiracy of all

AFFIDAVIT OF R. JOHN TAYLOR IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 10

named Defendants.

22.     I also note that the Fifth Amended Complaint, like the present litigation, sought to challenge AIA Services' guarantee of CropUSA's loan.  In this regard, in October 2006 HTEH prepared an attorney opinion letter regarding a loan transaction involving the CropUSA Entities and Lancelot Investors Fund, L.P. and to which AIA Insurance was to be a guarantor to the loan transaction. A true and correct copy of this attorney letter is attached as Exhibit "P." With regard to this attorney opinion letter, I relied upon the opinions expressed therein in proceeding with the loan transaction.

23.     In addition, during the course of HTEH's representation in the Reed Taylor case, HTEH provided me with certain correspondences regarding engagement letters, conflict waivers and tolling agreements. With regard to the matters contained in these letters I relied upon the advice given by HTEH.

24.     At the time of the filing of the Reed Taylor Case, the Board of Directors for AIA Services consisted of myself, Jolee Duclos and Bryan Freeman.  Upon the filing of the Reed Taylor Case which named Ms. Duclos and Mr. Freeman as defendants, these two individuals resigned their directorship from AIA Services.  As such, I requested, and upon their consent, appointed Connie Henderson and James Beck as directors for AIA Services. Connie Henderson and I were once married, but we were separated in 2002 and divorced on December 16, 2005. Prior to 2005, I had no discussions with Ms. Henderson, then Mrs. Taylor, regarding the operations or affairs of the AIA Services/CropUSA. I did not consult with her in this time period regarding her opinions on any business matters nor did I seek her approval. Ms. Henderson remained on the AIA Services Board of Directors until early September of 2014. In this regard, I have reviewed the Affidavit of Connie Henderson in Support of Motion for Summary Judgment

AFFIDAVIT OF R. JOHN TAYLOR IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 11

**App.  S, p. 11**

and agree with her recollections as expressed therein.

25.     Likewise Mr. Beck remained on the AIA Services Board of Directors from April of 2007 through September of 2014. Mr. Beck was not involved in the negotiations which led to the ultimate resolution of the litigation between the Defendant GemCap Lending I, LLC and AIA Services, and others, as pending in the U.S. District Court of California, Case No. CV13-5504 nor was his consent obtained with regard to any resolution terms with GemCap.

26.     Upon the filing of the Reed Taylor Case, AIA Services directed correspondence to the AIA Services' shareholders, to include Mr. Miesen, of the fact of the Reed Taylor lawsuit and requesting shareholder approval to advance funds for the defense to the corporate directors. The letter also advised the shareholders that in addition to alleging a default of the obligations owed to him Reed Taylor had asserted that the company and its directors have taken actions which diminished the value of the company. The letter also advised the shareholders of their right to obtain a copy Reed Taylor's Complaint. A true and correct copy of this correspondence is attached as Exhibit "Q."

27.     Thereafter, on March 28, 2007, AIA Services held a special meeting of the shareholders with regard to the request for advancement of funds for attorney fees to be incurred by the directors of AIA Services in defense of Reed Taylor litigation. A true and correct copy of this special meeting of the AIA Services shareholders is attached as Exhibit "R."

28.     Thereafter, in a letter dated July 21, 2008, Donna Taylor in her identified capacity as a Series A Preferred Shareholder in AIA Services made demand upon AIA Services for corrective action pursuant to Idaho Code 30-1-742. Like the Complaint in Reed Taylor's case, Donna Taylor's letter asserted the existence of 27 matters to which she asserted liability existed including, but not limited to the alleged usurpation of a corporate opportunity with regard to the

AFFIDAVIT OF R. JOHN TAYLOR IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 12

CropUSA Entities, illegal loan guarantees as well as assertions of fraud, misappropriation and breach of fiduciary duties. A true and correct copy of this correspondence is attached is attached as Exhibit "S." As the docket in this matter reflects, this present action purporting to be a derivative case was not commenced until August 11, 2010.

29.     On June 17, 2009, the District Court in the Reed Taylor Case granted the Defendants' Motion for Summary Judgment, dismissing Reed Taylor's Fifth Amended Complaint. Reed Taylor moved for reconsideration, which motion was denied on August 13, 2009. Reed Taylor appealed and the decision was affirmed by the Idaho Supreme Court on September 7, 2011. Upon remand, and as to the remaining claims, the District Court granted Defendants' Motion for Judgment on the Pleadings as to the claims for fraudulent conveyances, director liability, breach of fiduciary duties, and civil conspiracy on December 28, 2011. A true and correct copy of the Opinion and Order on Plaintiff's Amended Motion to Supplement and Amend Complaint and Defendants' Motion for Judgment on the Pleadings is attached hereto as Exhibit "T."

30.     Plaintiff's Third Amended Complaint also challenges the authority of AIA to guarantee certain loans. In particular, Plaintiff challenges a guarantee given incidental to a loan transaction involving the CropUSA Entities and GemCap Lending I, LLC in 2011 as well as a subsequent guarantee given to GemCap Lending I, LLC in 2013. With regard to each of these transactions I received an attorney opinion letter indicating that these transactions were permissible. Specifically, I also relied upon Robert Van Idour's attorney opinion letter of November 21, 2011, Mr. Van Idour's attorney opinion letter of February 7, 2013 as well as an attorney opinion letter prepared by James Gatziolis of the firm Quarles & Brady dated November 23, 2011.

AFFIDAVIT OF R. JOHN TAYLOR IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 13

**App.  S, p. 13**

31.     As should be evident from the preceding, over the course of the last fourteen years, I have been involved in various lawsuits directed at me individually as well as the AIA Entities and CropUSA entities. In these cases, while the named plaintiff differed, each case was prosecuted by Mr. Bond representing the party pursuing the claims. These cases include, but are not limited to the Reed Taylor Case, the Donna Taylor Case which remains pending, and this present litigation on behalf of Mr. Miesen. In each of these cases, Mr. Bond, on behalf of whichever client he happens to be representing in the proceedings, has alleged, and continues to allege similar allegations of wrongdoing and malfeasance against myself, the AIA/CropUSA entities, and the former directors of AIA Services. However, these are not the only litigations that Mr. Bond has initiated and/or otherwise involved himself in the representation of various clients against myself personally, the AIA entities, the CropUSA entities, or the various attorneys who have represented me or the AIA/CropUSA Entities in the past. By my count over the last fourteen years Mr. Bond, on behalf of his various clients, has initiated or sought to involve himself in no less than thirteen different lawsuits not including the foregoing, including two separate suits alleging similar aiding and abetting claims as present in this lawsuit on behalf of Reed Taylor against the firm of Hawley Troxell Ennis & Hawley and Clements Brown in 2008, a malpractice claim on behalf of Reed Taylor against Eberle, Berlin, Kading, Turnbow & McKlveen in 2009, a malpractice claim on behalf of Reed Taylor against CairnCross & Hempelmann in 2012, and a malpractice claim on behalf of Dale Miesen as a derivative plaintiff against John Munding in 2019. In many of these cases, although not named as a Defendant, I was required to respond and provide information relative to the AIA entities. The financial toll on the AIA/CropUSA entities, as well as myself individually, cannot be understated and easily exceeds millions of dollars. Moreover, the foregoing has had a consequential chilling effect on

AFFIDAVIT OF R. JOHN TAYLOR IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 14

**App.  S, p. 14**

**17-ER-4139**

the ability of the AIA/CropUSA entities to operate as a going concern and has made the ability to secure, and retain, attorneys to represent the interests of these entities challenging. Thus the damage caused to these entities in these multiple litigations cannot be overstated.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

DATED This 29th day of January, 2021

_____
R. John Taylor

SUBSCRIBED AND SWORN TO before me this 29 day of January, 2021.

_____
Notary Public for
Residing at Clarkston, WA
My Commission Expires: 12/30/202

AFFIDAVIT OF R. JOHN TAYLOR IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 15

**App. S, p. 15**

**17-ER-4140**

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of January, 2021, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF System which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Roderick Cyr Bond | rod@roderickbond.com |
| Michael S. Bissell | mbissell@campbell-bissell.com |
| Tyler S. Waite | twaite@campbell-bissell.com |
| Jeffrey A. Thomson | jat@elamburke.com |
| Loren C. Ipsen | lci@elamburke.com |
| Joyce A. Hemmer | JAH@ElamBurke.com |
| Bradley S. Keller | bkeller@bryneskeller.com |
| William E. Adams | bill@weadamslaw.com |
| Alyson Anne Foster | alyson@dempseyfoster.com |

/s/ Daniel Loras Glynn
Daniel Loras Glynn

AFFIDAVIT OF R. JOHN TAYLOR IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 16

**App. S, p. 16**

**17-ER-4141**



RODERICK C. BOND
NED A. CANNON, ISB #2331
SMITH, CANNON & BOND PLLC
508 8th Street
Lewiston, Idaho 83501
Telephone: (208) 743-9428
Fax: (208) 746-8421
Attorneys for Plaintiff Reed J. Taylor

IN THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT OF THE STATE OF
IDAHO, IN AND FOR THE COUNTY OF NEZ PERCE

| | |
|---|---|
| REED J. TAYLOR, a single person,<br><br>Plaintiff,<br><br>v.<br><br>AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; R. JOHN TAYLOR and CONNIE TAYLOR, individually and the community property comprised thereof; BRYAN FREEMAN, a single person; JOLEE DUCLOS, a single person; CROP USA INSURANCE AGENCY, INC., an Idaho Corporation; and JAMES BECK and CORRINE BECK, individually and the community property comprised thereof;<br><br>Defendants. | Case No.: CV-07-00208<br><br>FIFTH AMENDED COMPLAINT |

Plaintiff Reed J. Taylor submits this Fifth Amended Complaint against the Defendants

alleging as follows:

FIFTH AMENDED COMPLAINT – 1



RJT - 014443

**EXHIBIT O**

## I. PARTIES, JURISDICTION AND VENUE

1.1 Plaintiff Reed J. Taylor ("Reed") is a single person and a resident of Lewiston, Nez Perce County, Idaho.

1.2 Defendant AIA Services Corporation ("AIA Services") is an Idaho corporation with its principal place of business located in Lewiston, Nez Perce County, Idaho.

1.3 Defendant AIA Insurance, Inc. ("AIA Insurance") is an Idaho corporation with its principal place of business is located in Lewiston, Nez Perce County, Idaho. AIA Insurance is a wholly owned subsidiary of AIA Services.

1.4 Defendant Connie Taylor ("Connie") is a single person residing in Lewiston, Nez Perce County, Idaho.

1.5 Defendants R. John Taylor and Connie Taylor, were husband and wife until on or about December 16, 2005 (collectively "John"), and at all relevant times were residents of Lewiston, Nez Perce County, Idaho. All references to "John" are for acts, omissions, claims, causes of action, damages, and/or liabilities that accrued on or before December 16, 2005, are for John individually, and were also performed on behalf of R. John Taylor and Connie Taylor's marital community (which benefited from R. John Taylor's acts and/or omissions) as to divided and undivided community property. All references to "John" for acts, omission, claims, causes of action, damages, and/or liabilities that accrued after December 16, 2005, are for John individually and pertain to Connie as to their divided and undivided community property, including, without limitation, community property in which Reed is requesting to be awarded.

1.6 Defendant JoLee Duclos ("Duclos") is a single person residing in Clarkston, Washington.

///

FIFTH AMENDED COMPLAINT - 2

RJT - 014444

1.7     Defendant Bryan Freeman ("Freeman") is a single person residing in Lewiston, Nez Perce County, Idaho.

1.8     Defendant Crop USA Insurance Agency, Inc. ("Crop USA") is an Idaho corporation, with its principal place of business located in Lewiston, Nez Perce County, Idaho.

1.9     Defendant James Beck and Corrine Beck (individually and collectively "Beck") are residents of the state of Minnesota. All references to "Beck" are for acts, omissions, claims, causes of action, damages, and/or liabilities that accrued are for James Beck individually, and were also performed on behalf of James Beck and Corrine Beck's marital community (which benefited from James Beck's acts and/or omissions) and pertain to Corrine Beck as to damages, acts and/or omissions on behalf of their community and as to all community property, including, without limitation, community property Reed is seeking to be awarded.

1.10    The District Court has jurisdiction over this matter under I.C. § 1-705.

1.11    Venue is proper in the District Court of the Second Judicial District, Nez Perce County pursuant to I.C. § 5-404.

## II. FACTUAL BACKGROUND

2.1     John, was at all relevant times, an officer and director of AIA Services, AIA Insurance, and Crop USA. During the certain relevant times in which John was a director and officer of AIA Insurance, AIA Services and Crop USA, he owed fiduciary duties to Reed as the single largest creditor of AIA Insurance and AIA Services. John and Connie are the majority shareholders in AIA Services and own approximately 40% of the outstanding shares of Crop USA, specifically 4,645,000 shares as of July 31, 2006.

2.2     R. John Taylor and Connie were divorced through an Interlocutory Decree filed on December 16, 2005, under which only a portion of their community assets were divided and

FIFTH AMENDED COMPLAINT – 3

RJT - 014445

other property remained undivided. This action includes, but is not limited to, acts, omissions, transactions, debts, claims, and/or causes of action which accrued prior to R. John Taylor and Connie's dissolution. All references to "John" in this Complaint are for, but not limited to, claims, causes of action, breaches of duties, fraud, acts, omissions and liabilities incurred by R. John Taylor on behalf of the marital community of R. John Taylor and Connie, together with their community property, whether divided or not through the effective date of their dissolution decree entered on or about December 16, 2005. Reed is requesting and entitled to be awarded shares of stock and property jointly owned by R. John Taylor and Connie.

2.3    After the effective date of R. John Taylor and Connie Taylor's decree of dissolution, all references to "John" in this Complaint are for claims, breaches of duties, acts, omissions and/or liabilities incurred by John individually. One of the reasons Connie is named as a party in this action for her liabilities and/or derivative liability by virtue of her marriage to John and her interest in the community property of the marriage (including all divided and undivided community property of their marriage for which Reed is requesting to be awarded through a constructive trust) all of which is subject to liability for the allegations in this Complaint of the acts, breaches of duties, claims, omissions, and conduct of John on and prior to December 16, 2005.

2.4    During the certain relevant times that Connie was a director of AIA Insurance and AIA Services, she owed fiduciary duties to Reed as the single largest creditor of AIA Services. Connie is also individually liable for all claims, breaches of duties, acts, omissions and/or liabilities during certain relevant times in which she was a member of the board of directors of AIA Services and AIA Insurance.

///

FIFTH AMENDED COMPLAINT – 4

RJT - 014446

2.5    Duclos is, and was at certain relevant times, an officer and director of AIA Services, AIA Insurance, and Crop USA. Duclos is a shareholder in AIA Services and Crop USA. During the certain relevant times that Duclos was a director and officer of AIA Insurance and AIA Services, she owed fiduciary duties to Reed as the single largest creditor of AIA Services.

2.6    Freeman is, and was at certain relevant times, a director and/or officer of AIA Services, AIA Insurance, and Crop USA. Freeman is a shareholder in AIA Services and Crop USA. During the certain relevant times that Freeman was a director of AIA Insurance and AIA Services, he owed fiduciary duties to Reed as the single largest creditor of AIA Services.

2.7    Crop USA was formed and operated using AIA Services and AIA Insurance's assets, funds, employees, office space, trade secrets, business relationships, equipment, good will, reputation, financial wherewithal (including loan guarantees), and other assets. But for AIA Insurance's assets, trade secrets, reputation and relationships, Crop USA would never have been formed and operated. Since Crop USA's formation, funds were inappropriately loaned and/or transferred back and forth from AIA Services and/or AIA Insurance to and from Crop USA and other entities partially owned by John and/or Connie.

2.8    John and Connie own approximately 40% of Crop USA, which also remained undivided community property at the time Reed filed his original Complaint.

2.9    Beck is a shareholder in AIA Services and Crop USA and acquired Crop USA shares from the inappropriate and/or unlawful conversation of their Preferred C Shares of AIA Services to shares of Crop USA. During the certain relevant times that Beck was a member of the board of directors boards of AIA Insurance, AIA Services and/or Crop USA, he owed fiduciary duties to Reed as the single largest creditor of the corporations. During certain relevant

FIFTH AMENDED COMPLAINT – 5

RJT - 014447

times, Beck was a member of the boards for Crop USA, AIA Insurance, and/or AIA Services and directed, consented, approved and/or acquiesced in inappropriate and/or unlawful corporate activities at AIA Insurance, AIA Services and/or Crop USA.

2.10    Reed was the founder and majority shareholder of AIA Services. In 1995, John desired to redeem Reed's 613,494 shares of common stock in AIA Services through a stock redemption agreement. Upon the closing of the transaction of AIA Services' redemption of Reed's shares, John became the majority shareholder in AIA Services.

2.11    AIA Insurance, a subsidiary of AIA Services, is wholly owned by AIA Services and where virtually all of AIA Services' revenues are derived and was the basis for security interests provided to Reed. AIA Insurance is lessee of the office building located at 111 Main Street, Lewiston, Idaho.

2.12    On or about July 22, 1995, AIA Services and Reed entered into a Stock Redemption Agreement, Stock Pledge Agreement, and Security Agreement. Under the terms of the Stock Redemption Agreement and related agreements, AIA Services agreed to execute promissory note to timely pay Reed $1,500,000 Million in 90 days ("Down Payment Note") and $6,000,000, plus accrued interest due and payable monthly at the rate of 8¼% per annum ("Promissory Note").

2.13    The Promissory Note was executed by John on behalf of AIA Services on or about August 1, 1995. Under the terms of the Promissory Note, AIA Services was required to timely pay all accrued interest monthly to Reed and the principal amount of $6,000,000, plus all accrued but unpaid interest was due and payable on August 1, 2005. Donna Taylor, the holder of the Series A Preferred Shares in AIA Services, subordinated all of her rights to payment of the redemption of her shares in favor of Reed. Through the date of Reed's Complaint, AIA Services

FIFTH AMENDED COMPLAINT – 6

RJT - 014448

had not timely and properly paid all sums owed to Donna Taylor.

2.14   Under the terms of the Stock Redemption Agreement, AIA Services and AIA Insurance also agreed to contemporaneously execute a Security Agreement and Stock Pledge Agreement, among other agreements and documents.  The Stock Redemption Agreement, Stock Pledge Agreement, and Security Agreement were all either authorized by the Board of Directors of AIA Services and/or AIA Insurance and/or approved by a shareholder vote.

2.15   When AIA Services was unable to comply with the Stock Redemption Agreement, Stock Pledge Agreement, and Security Agreement, John, on behalf of AIA Services and AIA Insurance, entered into negotiations with Reed regarding restructuring the obligations. In 1996, AIA Services, AIA Insurance and Reed agreed to modify the Stock Redemption Agreement and executed the Stock Redemption Restructure Agreement ("**Restructure Agreement**"). Contemporaneously with the execution of the Restructure Agreement, the parties executed the Amended and Restated Stock Pledge Agreement ("**Amended Stock Pledge Agreement**") and Amended and Restated Security Agreement ("**Amended Security Agreement**").

2.16   Under the terms of the Restructure Agreement, the terms of the Promissory Note remained unchanged and were not modified (including the $6,000,000 principal amount, due date, and required monthly interest payments).  Under the terms of the Amended Security Agreement, Reed received a security interest in all of AIA Services and AIA Insurance's commissions and related services (and all proceeds thereof), and AIA Services and AIA Insurance were required to have a Lock Box for all commissions for the protection and benefit of Reed.

///

FIFTH AMENDED COMPLAINT – 7

RJT - 014449

2.17    Under the terms of the Amended Stock Pledge Agreement, AIA Services pledged all of the outstanding shares in AIA Insurance to Reed as partial security for AIA Services' indebtedness to Reed under the Promissory Note, Restructure Agreement, and Amended Security Agreement. Under the terms of the Amended Stock Pledge Agreement, AIA Services' failure to timely pay Reed interest or principal under the Promissory Note or the Down Payment Note constituted an Event of Default. In an Event of Default for failure to timely pay interest or principal under the Promissory Note, AIA Services' insolvency, or AIA Services' failure to maintain the required Lock Box (among other Events of Default), AIA Services' right to vote the pledged shares of AIA Insurance ceased and terminated and vested exclusively in Reed.

2.18    Under the terms of the Amended Stock Pledge Agreement, AIA Services and/or AIA Insurance owed Reed continuing contractual obligations, including, without limitation, the obligation that Reed was required to be a member of the board of directors of AIA Services until Reed was paid in full or sufficient security was posted to ensure the payment of the Promissory Note. AIA Services never posted bonds or other security for the payment of the Promissory Note. AIA Services, John, Duclos, Freeman, Connie, and/or Beck have intentionally refused to appoint Reed to the Board of AIA Services as required and/or unilaterally created new conditions upon which Reed's appointment would be based. A new right to be a member of the board of AIA Services is created every year as directors are required to be elected yearly under the Bylaws of AIA Services. Despite Reed's demands and AIA Services' continuing contractual obligations to keep Reed on the board of directors, AIA Services, John, Duclos, Freeman, Connie, and/or Beck have refused to appoint Reed to the Board of Directors of AIA Services as required. Because Reed has not been on the Board of AIA Services as required, all actions taken by AIA Services' board were not properly authorized and, therefore, not ratified by AIA

FIFTH AMENDED COMPLAINT – 8

RJT - 014450

Services; and such acts are the personal actions of John, Duclos, Freeman, Connie, and/or Beck during their tenure on the board of AIA Services.

2.19    Under the Amended Stock Pledge Agreement, AIA Services had continuing contractual obligations to not loan money to any affiliate other than a wholly owned subsidiary. AIA Services has loaned money on countless occasions to and/or lent other services, office space or benefits to affiliates and other parties in violation of the Amended Stock Pledge Agreement, and such loans or benefits were made during times in which John, Duclos, Freeman, Connie, and/or Beck were board members of AIA Services and/or AIA Insurance.  In addition, the Amended Articles of Incorporation of AIA Services prevents it or any of its subsidiaries (including, without limitation, AIA Insurance), from guaranteeing the loans of any other entity that is not a wholly owned subsidiary of AIA Services.

2.20    The Promissory Note required monthly interest payments with an acceleration clause if payments were not timely or properly made to Reed.  The acceleration clause requires written notice from Reed to AIA Services of default and AIA Services would be entitled to a five day opportunity to cure before Reed could exercise his rights under the Amended Stock Pledge Agreement or Amended Security Agreement.  The obligations owed to Reed under the Promissory Note are independent of any other obligations owed by the Defendants and secured by the Restructure Agreement, Amended Stock Pledge Agreement and Amended Security Agreement.

2.21    During relevant times, the fair-market value of AIA Services and AIA Insurance was less than the aggregate amount of their total debts, which constitutes AIA Services and AIA Insurance's insolvency. During relevant times, AIA Services and/or AIA Insurance were unable to pay their debts as they became due (including, without limitation, debts to Reed and Donna

FIFTH AMENDED COMPLAINT – 9

RJT - 014451

Taylor), which also constitutes AIA Services insolvency and AIA Insurance's insolvency.

2.22   During all relevant times, Reed was the largest and most significant creditor of AIA Services. Because AIA Services has failed to timely and properly pay creditors as required during certain relevant times and/or was insolvent, John, Duclos, Freeman, Connie, and/or Beck owed fiduciary duties to creditors, specifically Reed because of his status as AIA Services' largest and most significant creditor.

2.23   The value of AIA Services and AIA Insurance's assets (including, without limitation, if both corporations are sold and/or their assets independently sold) at the time Reed filed his original Complaint was insufficient to pay Reed the $6,000,000, plus prejudgment interest in excess of $2,000,000 owed to him. The value of AIA Services and AIA Insurance's assets (including if both corporations are sold) for at least 7 years of time preceding the time Reed filed his original Complaint was insufficient to pay Reed the $6,000,000 principal, plus prejudgment interest owed to him.

2.24   During certain relevant times, AIA Services and/or AIA Insurance were in default of various provisions of the agreements with Reed, insolvent and/or unable to timely pay its debts to Reed and/or other creditors, including Donna Taylor. During certain relevant times, AIA Services has failed to comply with the terms of the Promissory Note.

2.25   Instead of paying Reed as required, AIA Services, AIA Insurance, Crop USA, John, Duclos, Connie, Beck, and/or Freeman utilized funds that Reed had a security interest in to make investments in, transfer assets to, or loan money to, or provide services on behalf of Crop USA, John and/or entities operated and/or partially owned by John, Connie, Beck, Freeman, Duclos, and/or one or more of the other Defendants.

///

FIFTH AMENDED COMPLAINT – 10

RJT - 014452

2.26   On or about December 12, 2006, Reed provided AIA Services written notice of default under various provisions of the Restructure Agreement, Amended Stock Pledge Agreement, and Amended Security Agreement, including, without limitation, AIA Services' failure to pay principal and interest due under the Promissory Note, failure to maintain the Lock Box, loaning money to non-wholly owned subsidiaries (including guaranteeing the $15 Million revolving line-of-credit for Crop USA), failure to provide all required financial information, and other defaults as set forth in the notice. AIA Services and AIA Insurance have failed to timely cure the defaults and all applicable cure periods have expired. As of the date of this Complaint, the principal owed to Reed under the Promissory Note of $6,000,000, plus accrued interest of over $2,000,000 had not been paid in full as required.

2.27   Prior to Reed's Notice of Default dated December 12, 2006, Reed had never accelerated any of the indebtedness due under the Promissory Note. Even though AIA Services and AIA Insurance failed to cure the defaults specifically set forth in Reed's Notice of Default dated December 12, 2006, AIA Services continued to make partial and inconsistent interest payments (including the payment of certain employees and other services on behalf of Reed) before and after the date of Reed's original Complaint. All amounts due under the Promissory Note are secured by the remedies available under the Promissory Note, Restructure Agreement, Amended Stock Pledge Agreement and Amended Security Agreement.

2.28   Despite Reed's demands, AIA Services, AIA Insurance, John, Freeman, Duclos, Connie, and/or Beck have failed to comply and/or as officers and/or directors to ensure that AIA Services and AIA Insurance complies with the obligations owed to Reed under the terms of the Promissory Note, Restructure Agreement, Amended Stock Pledge Agreement, and Amended Security Agreement. Under the Amended Stock Pledge Agreement, the right to vote all of AIA

FIFTH AMENDED COMPLAINT – 11

RJT - 014453

App.  S, p. 27

17-ER-4152

Insurance's shares ceased and terminated for AIA Services and became vested in Reed when AIA Services failed to timely pay the required monthly interest payments due under the Promissory Note and its subsequent failure to pay the $6,000,000 principal due under the Promissory Note on August 1, 2005 (and other breaches set forth in this Complaint). AIA Services was in default and had failed to cure such defaults before Reed demanded to exercise his right to hold a special shareholder meeting to vote the shares to appoint a new board of directors for AIA Insurance.

2.29   On December 12, 2006, Reed timely provided notice of his demand for a special shareholder meeting of AIA Insurance for the purpose of removing and appointing new board members on December 26, 2006. AIA Services, AIA Insurance, John, Duclos, and/or Freeman (and the other Defendants if applicable) refused to comply with Reed's demand for a special shareholder meeting by representing that AIA Insurance's offices were closed on December 26, 2006.

2.30   Through a letter dated January 3, 2007, John acknowledged Reed's right to call a shareholder meeting under the Amended Stock Pledge Agreement when he stated "I fully recognize that [Reed] Taylor may take actions he deems appropriate, including calling a special shareholders meeting."

2.31   On or about January 25, 2007, Reed hand delivered another demand for a special shareholder meeting for the removal and appointment of the board of directors for February 5, 2007, pursuant to his rights under the Amended Stock Pledge Agreement. Through a letter from Duclos, AIA Insurance refused Reed's request and denied that he had the right to call a meeting to vote the AIA shares. Despite Reed's demands, AIA Insurance refused to hold a special shareholder meeting.

FIFTH AMENDED COMPLAINT – 12

RJT - 014454

2.32   Despite Reed's demands, AIA Services and AIA Insurance failed to cure the numerous Defaults under the terms of the Promissory Note, Restructure Agreement, Amended Stock Pledge Agreement and Amended Security Agreement, among other obligations (as described above). Through the date of this Complaint, AIA Services and AIA Insurance's Defaults were not timely cured and they remained in default of the foregoing Agreements.

2.33   On February 22, 2007, Reed exercised his right to vote the pledged shares by executing a Consent in Lieu of Special Shareholder Meeting of AIA Insurance removing John, Duclos and Freeman from the Board of Directors and appointed himself the sole Board Member, pursuant to his right to vote the pledged shares under the Amended Stock Pledge Agreement. Because AIA Services' right to vote the pledged shares had ceased and terminated when it became in Default and failed to timely cure such Defaults, the right to vote the pledged shares in AIA Insurance vested exclusively in Reed and he exercised his right to vote the pledged shares pursuant to the Amended Stock Pledge Agreement and the Articles of Incorporation of AIA Insurance. Because the shares pledged to Reed account for all the outstanding shares of AIA Insurance, Reed had the authority to waive the notice requirement, notice period, and the formality of holding a shareholder meeting as he was the only party authorized to vote any shares of AIA Insurance. Because Reed appointed himself as the sole director of AIA Insurance, he had the exclusive authority to appoint himself as the officers of AIA Insurance through a Consent in Lieu of a Board Meeting.

2.34   In the weeks leading up to the filing of this action, Reed discovered that more than one transfer of assets occurred during the time in which AIA Services had failed to service its debt to Reed. In 2004, AIA Insurance paid $1,510,693 to purchase Series C Preferred Shares in AIA Services from Crop USA. This transaction inappropriately, unlawfully, and/or

FIFTH AMENDED COMPLAINT – 13

RJT - 014455

fraudulently transferred $1,510,693 of AIA Insurance's funds to Crop USA when such funds should have been tendered to Reed or been retained to benefit AIA Insurance. This $1,510,693 transfer occurred at a time in which AIA Services was insolvent. This $1,510,693 transfer also occurred at the same time that AIA Services' 401(k) Plan (the "Plan") held over $750,000 in Preferred C Shares in AIA Services. No shares were purchased or redeemed from the Plan, even though John and Duclos were the Co-Trustees of the Plan at the time of the transfer. This transaction constitutes the fraudulent transfer of funds from AIA Insurance to Crop USA.

2.35 Reed also discovered that John and Connie had purchased a parking lot for $8,000 and later entered into a lease agreement with AIA Services and/or AIA Insurance to lease the parking lot from John and Connie for $1,250 per month. This transaction was also the fraudulent transfer of funds to John and Connie, when such funds should have been paid to Reed during a time in which AIA Services was unable to service its debt to Reed and was otherwise insolvent. John and Connie also inappropriately paid lump sums for rent before such inappropriate rent was due. The parking lot is not utilized by AIA Insurance or AIA Services. Such acts and/or transfers have occurred during John, Freeman, Duclos, Connie, and/or Beck's tenure as members of the boards of AIA Insurance and/or AIA Services.

2.36 Based upon the above-referenced acts, transfers and transactions, together with transactions referenced in the notes to AIA Services and/or AIA Insurance's financial statements, there are other unauthorized and inappropriate transfers, loans, payments, advances and other actions which occurred during times AIA Services defaults and inability to timely pay Reed and at times in which AIA Services was insolvent. Forensic accounting and further scrutiny of AIA Insurance and/or AIA Services' books and records will reveal additional improper, unlawful and/or fraudulent transfers, transactions and the like that directly and/or indirectly benefited the

FIFTH AMENDED COMPLAINT – 14

RJT - 014456

individual Defendants, Crop USA and/or entities partially owned by John.

2.37   During times in which John, Freeman, Duclos, Connie, and/or Beck owed Reed fiduciary duties, they have used AIA Services and AIA Insurance as their personal source of funds and/or assets, including, without limitation, acts in which John has transferred assets to his name; taken advances that John never paid back; transferred assets, resources, and/or funds to Crop USA, Sound Insurance and/or other entities partially owned or controlled by John and/or the other individual Defendants; entered into transactions which constitute a violation of AIA Insurance and/or AIA Services' Articles of Incorporation; made transfers and/or entered into transactions which benefited them; and provided services for entities partially owned by them without such actions being arms-length transactions.   The above acts occurred when John, Duclos, Freeman, Connie, and/or Beck were directors and/or officers of AIA Services, AIA Insurance and/or Crop USA. All of the above acts occurred during certain relevant times in which AIA Services was not current with payments of interest and/or principal owed to Reed under the Promissory Note and when AIA Services was insolvent.

2.38   On February 22, 2007 (after executing the Consent in Lieu of Special Shareholder Meeting), Reed executed a Consent in Lieu of Board Meeting to terminate all officers, terminate the employment of John, authorize the change of locks, and take such other actions deemed appropriate.   When Reed attempted to take action in accordance with the Consents described above, the Defendants refused to abide by the Consents.

2.39   During certain relevant times that John, Duclos, Freeman, Connie, and/or Beck were directors of AIA Services and AIA Insurance, they failed make proper corporate governance decisions and failed to take appropriate legal action on behalf of AIA Insurance and/or AIA Services to protect Reed's interests.   During the relevant times that John, Duclos,

FIFTH AMENDED COMPLAINT – 15

RJT - 014457

Freeman, Connie, and/or Beck were directors and/or officers of AIA Services and AIA Insurance, they breached their fiduciary duties owed to Reed.

2.40    Sometime after filing Reed's original Complaint, Freeman and Duclos resigned as members of the board of directors of AIA Insurance and AIA Services. John, in breach of his fiduciary duties owed to Reed and in violation of Reed's right to vote the shares and prior vote of the pledge shares in AIA Insurance, appointed himself, Connie and Beck to the board of AIA Insurance. John also appointed himself, Connie and Beck to the board of AIA Services in breach of his fiduciary duties owed to Reed. These appointments were conflicts of interest and breaches of John's fiduciary duties owed to Reed and the appointed Defendants' acceptance of such appointments was a further breach of duties owed to Reed. Finally, Beck, John and Connie approved inappropriate payments to the directors of AIA Services and AIA Insurance, which such payments must all be disgorged and awarded to Reed.

2.41    During certain relevant times that John, Connie and Beck were directors of AIA Services and AIA Insurance, they failed to take appropriate legal action on behalf of AIA Insurance and AIA Services. During certain relevant times that John, Connie and Beck were directors of AIA Services and AIA Insurance, they breached their fiduciary duties owed to Reed.

2.42    Reed has a valid and perfected security interest in all commissions from sale of insurance and related services received by or on behalf of, or payable to, AIA Insurance and AIA Services, proceeds thereof and interest thereon. Reed demanded that no funds which he had a security interest in and/or which should be paid to him could be used to pay the legal fees of any of the individual Defendants. Despite Reed's demands, the Defendants have unlawfully, improperly and inappropriately diverted funds to the individual Defendants for their attorneys' fees and costs, and the Defendants have unlawfully and/or inappropriately accepted such

FIFTH AMENDED COMPLAINT – 16

RJT - 014458

payments. Because all of AIA Services' revenues are derived from AIA Insurance's commissions and related services that Reed has a valid security interest in, such payments also constitute an illegal and/or unauthorized dividend from AIA Insurance to AIA Services, conversion, fraud and fraudulent conveyances.

2.43 Prior to the filing of Reed's original Complaint and without Reed's knowledge or consent, John paid a debt he owed to AIA Services in the amount of $307,271 by transferring said indebtedness to Reed's Promissory Note. Such payment constitutes fraud (as set forth below) and John later moved the debt back to Reed's Promissory Note.

2.44 Pacific Empire Holdings Corporation d/b/a Sound Insurance has been operating through AIA Services and/or AIA Insurance and with funds, assets, rent, and/or services provided by AIA Services and/or AIA Insurance for free or at rates below fair-market-value during certain relevant times that John, Freeman, Duclos, Connie, and/or Beck owed fiduciary duties to Reed. Since the filing of Reed's Original Complaint, Crop USA purchased Sound Insurance from John and/or other unknown parties. The Defendants' operation of Sound Insurance and subsequent sale constitutes breaches of fiduciary duties, conversion, fraud and/or a fraudulent conveyance.

2.45 Global Travel was a tenant in AIA Insurance's office building located in Lewiston, Idaho. Since the filing of Reed's original Complaint, Global Travel has relocated as a tenant in an office building owned by John. Such actions are a breach of John Duclos, Freeman, Connie, and Beck's fiduciary duties owed to Reed, fraud and/or a fraudulent conveyance.

2.46 Through a letter dated February 27, 2001, John represented to Reed (individually and on behalf of the corporations) that AIA Services and/or AIA Insurance was developing a new crop insurance program through a new company called Crop USA. Reed relied on AIA

FIFTH AMENDED COMPLAINT – 17

RJT - 014459

Services, AIA Insurance and John's representations that AIA Services and/or AIA Insurance were the owners of Crop USA and developing Crop USA, when AIA Services, AIA Insurance and John's representations were false in that Crop USA was never owned by AIA Insurance or AIA Services, but instead owned by John, Connie, Duclos, Beck, Freeman, and others. By John's own admission, Crop USA should have been a subsidiary of AIA Services or AIA Insurance but for certain liabilities.

2.47    John made representations to Reed and Donna Taylor that he would not be taking a salary in certain year(s). Reed relied on John's false representation when he did not accelerate payments due to him or place AIA Services in default, and in late 2006 or early 2007 learned that John had in fact taken a salary during the respective times to Reed's detriment.

2.48    John, Beck, Duclos, and/or Freeman made representations and/or omitted material facts to Reed through letters and financial statements that AIA Services and AIA Insurance were being operated for the benefit of AIA Services and AIA Insurance. AIA Services and AIA Insurance made representations and/or omitted material facts to Reed through correspondence and their financial statements that they were being operated for the benefit of AIA Insurance and AIA Services. Reed relied on John, Beck, Duclos and/or Freeman's false representations and/or omissions of material facts when in fact AIA Services and AIA Insurance were not being operated for the benefit of the corporations, but instead were being operated for the benefit of John, Freeman, Duclos, Crop USA, Sound Insurance, Beck, and other entities controlled or partially owned by John and/or Connie. As directors, Freeman, John, Duclos, and/or Beck also made the false representations and/or omitted material facts by and through the corporations' financial statements.

///

FIFTH AMENDED COMPLAINT – 18

RJT - 014460

2.49   John, Freeman, Duclos, and/or Beck breached their fiduciary duties owed to Reed when AIA Insurance inappropriately and/or fraudulently guaranteed a $15,000,000 loan for Crop USA. This guarantee is also a violation of AIA Services' Amended Articles of Incorporation, AIA Services and AIA Insurance's Bylaws, and the terms of the Amended Stock Pledge Agreement. AIA Insurance received no benefit from this loan and received no consideration.

2.50   After the inappropriate and fraudulent transfer of $1,510,693 to Crop USA described above, the wrongful transfer was misrepresented on the financial statements of AIA Insurance as an investment with a value of approximately $1,500,000, when the "investment" was worthless. John, Duclos, Beck and/or Freeman were aware, or should have been aware, of this false fact as AIA Services was insolvent.

2.51   Reed believes that there are other acts, fraud, breaches of fiduciary duties, wrongful transfers and/or fraudulent transactions that he will itemize and detail through future amended complaints upon completion of discovery and/or at trial. By and through this paragraph, the Defendants should be placed on notice that Reed intends to recover every dollar of funds, assets, services, loans, barters and the like that were taken, utilized and/or transferred from AIA Services and/or AIA Insurance through fraud, constructive fraud, breaches of fiduciary duties, fraudulent conveyances, and any other causes of action set forth below.

2.52   The unity and commonality of the ownership, officers and/or directors of AIA Services, AIA Insurance and/or Crop USA is such that the separate personalities of the corporations and the individuals no longer exist. Equity should prevent the acts and omissions from being solely those of AIA Services, AIA Insurance and/or Crop USA. As a result of the commonality of ownership and governance, unlawful acts, conduct, omissions, fraud, failure to observe corporate governance, and breaches of fiduciary duties as set forth in this Complaint,

FIFTH AMENDED COMPLAINT – 19

RJT - 014461

AIA Insurance, AIA Services and/or Crop USA are the alter-egos of John, Duclos, Freeman, Connie, and/or Beck and such corporate veils should be pierced thereby imposing personal liability on John, Duclos, Freeman, Connie and/or Beck.

2.53   AIA Services, AIA Insurance, John, Duclos, Freeman, Connie, and/or Beck unlawfully provided Crop USA, Sound Insurance, and/or other entities with free or reduced rent, labor, funds, services, resources, and/or other assets without any and/or fair compensation to the detriment of AIA Services, AIA Insurance and Reed.  John, Duclos, Freeman, Connie, and/or Beck entered into or approved transactions that were not fair for AIA Services or AIA Insurance, transactions that were not entered into in good faith, transactions that involved self-dealing, and transactions that involved any one or more of the interested individual Defendants in violation of applicable conflicts of interest procedures and/or proper corporate governance.

2.54   During certain relevant times, John utilized AIA Services, AIA Insurance and/or Crop USA as a means to pay personal bills, obtain loans, and obtain reimbursements for "alleged" expenses he incurred on behalf of AIA Services, AIA Insurance and/or Crop USA. However, many of the expenses for food, lodging and travel were inappropriately charged to AIA Services and/or AIA Insurance.  This is further evidenced by the fact that John failed to remit and/or fully complete forms required by AIA Services and AIA Insurance for employees to be reimbursed.

2.55   From August 1, 1995, through the present time, John owed obligations and duties to AIA Services and Reed (including, without limitation, obligation to not compete and confidentiality) through the Executive Officer's Agreement between John and AIA Services dated August 1, 1995. John has breached the forgoing obligations, which such breaches also constitute breaches of John, Duclos, Freeman, Connie, and/or Beck's fiduciary duties owed to

FIFTH AMENDED COMPLAINT – 20

RJT - 014462

Reed. AIA Insurance and Reed are also third party beneficiaries of John's Executive Officer's Agreement and entitled to damages from the Defendants for such breached obligations.

2.56   AIA Insurance and AIA Services could have been operated with a substantially lower number of employees than presently employed and with reduced overhead and costs. The Defendants have represented that Crop USA (and other parties) have been reimbursing AIA Services and/or AIA Insurance for all employee labor, expenses, costs, assets, and services utilized for Crop USA's benefit, when such representations are false. The Defendants have failed to disclose material facts that AIA Services and AIA Insurance employees, expenses, costs, assets, and services have also been utilized for the benefit of John, Connie, and entities partially owned by John and/or Connie without them paying AIA Services or AIA Insurance.

2.57   The Defendants have represented through board resolutions, private placement memorandum, correspondence, agreements, and/or other transactions that AIA Services and/or AIA Insurance have benefited from transactions with Crop USA (including, without limitation, Crop USA's $15 Million line of credit and the repurchase of the Series C Preferred Shares of AIA Services), which the Defendants knew that such transactions were not beneficial to AIA Services and/or AIA Insurance. In fact, AIA Services and/or AIA Insurance did not benefit from such false representations and Reed's collateral was also impaired.

2.58   The Defendants have engaged in the improper and/or unlawful activities of utilizing AIA Services and AIA Insurance for their benefit and/or for the benefit of themselves and/or entities partially owned by one or more of the individual Defendants to the detriment of Reed.

2.59   Should any part or one or more of the following causes of action or relief be denied at or before trial, such allegations and requested relief are incorporated by reference here

FIFTH AMENDED COMPLAINT – 21

RJT - 014463

to support other causes of action and/or requested relief.

### III.  FIRST CAUSE OF ACTION—BREACHES OF CONTRACT

3.1    Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or the relief sought under this cause of action.

3.2    The Defendants owed Reed obligations and/or continuing contractual obligations to timely pay him and comply with specific terms, conditions, covenants, warranties and the like required by the Promissory Note, Amended Stock Pledge Agreement, Amended Security Agreement, and Restructure Agreement.

3.3    AIA Services, AIA Insurance, Crop USA, John, Freeman, Duclos, Beck, and/or Connie's acts, omissions and failure to pay Reed the amounts owed and comply with continuing contractual obligations under the Promissory Note, Amended Stock Pledge Agreement, Amended Security Agreement and Restructure Agreement constitute a breach of their contractual obligations owed to Reed (whether or not any of the foregoing agreements were orally modified as alleged by the Defendants or not).

3.4    As a result of AIA Services, AIA Insurance, Crop USA, John, Freeman, Duclos, Beck, and/or Connie's acts and/or omissions which constitute breaches of their contractual obligations, Reed has suffered and is entitled to damages of $6,000,000, plus accrued interest in an amount to be determined at trial, jointly and severally or to be allocated between the defendants as the evidence and claims show at trial.   As set forth in this Complaint, the Defendants are jointly and severally liable for all claims and damages flowing from the various breaches by and through the legal theories set forth in this Complaint.  In addition, Reed is entitled to an award of attorneys' fees and costs as under the Promissory Note, Amended Stock

FIFTH AMENDED COMPLAINT – 22

RJT - 014464

Pledge Agreement, I.C. § 12-120 and/or I.C. § 12-121.

## IV. SECOND CAUSE OF ACTION—FRAUDULENT TRANSFERS/CONVEYANCES

4.1     Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or the relief sought under this cause of action.

4.2     The Defendants' actions constitute fraudulent transfers and/or conveyances under I.C. § 55-901, *et seq.* and/or the common law doctrine of Fraudulent Transfers/Conveyances.

4.3     As a result of John, Duclos, Freeman, Connie, and/or Beck's participation, consent, approval and/or acquiescence of the fraudulent transfers and/or as direct recipients and/or indirect recipients (also by and through their ownership of shares in the recipient corporations) of the fraudulent transfers, John, Duclos, Freeman, Connie, and/or Beck are personally liable for all fraudulent transfers, plus accrued interest, in an amount to be proved at trial. All fraudulent transfers should be avoided and/or rescinded to the extent possible and/or all assets placed in a constructive trust for the benefit of Reed and such assets awarded to Reed.

4.4     John, Duclos, Freeman, Connie, Beck, and/or Crop USA and other entities controlled or partially owned by John or the Defendants are and/or were the recipients of various fraudulent transfers from AIA Services and/or AIA Insurance, and should be required to return all funds to Reed, rescind all transactions; and John, Connie, Freeman, Duclos, and/or Beck's ownership interests in Crop USA and such other entities should be placed in a constructive trust for the benefit of Reed and such shares and/or ownership awarded to him.

///

///

///

FIFTH AMENDED COMPLAINT – 23

RJT - 014465

## V. THIRD CAUSE OF ACTION—MISREPRESENTATIONS/FRAUD
**(Fraud, Constructive Fraud, and/or Shareholder, Officer Director Fraud)**

5.1 Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or remedy sought under this cause of action.

5.2 AIA Services, AIA Insurance, Crop USA, Beck, Freeman, Connie, Duclos, and/or John made, ratified, acquiesced, and/or consented to statements of fact and/or omitted material statements of fact, including, without limitation, those facts and/or omissions of fact set forth in Paragraphs 2.23, 2.36, 2.44-2.49 and 2.51 above; such statements of fact were false or omitted material facts; such false statements or omitted facts were material; AIA Services, AIA Insurance, Crop USA, Beck, Freeman, Duclos, Connie and/or John knew or should have known the falsity of such statements; AIA Services, AIA Insurance Crop USA, Beck, Freeman, Duclos, and/or John intended to induce reliance; Reed was ignorant to the falsity of such statements and/or omissions; and Reed relied on such statements and/or omissions; Reed had a right to rely on such false statements and/or omissions.

5.3 By and through the Defendants' fraudulent acts and/or omissions, including, without limitation, the allegations set forth in this Complaint and as specifically alleged in Paragraphs 2.22, 2.25, 2.34, 2.35, 2.37, 2.40, 2.43-2.49, 2.53, 2.54, 2.57 and 2.58 above, AIA Services, AIA Insurance, Crop USA, John, Freeman, Duclos, Connie, and/or Beck's acts and/or omissions constitute fraud, constructive fraud (e.g., the Defendants owed Reed fiduciary duties, duties to maintain AIA Insurance's assets to protect Reed, and other duties contemplated by the parties and/or referenced in this Complaint, and the Defendants breached such duties), and/or shareholder/officer/director fraud (e.g., the siphoning off of corporate assets to the individual

Defendants' gain and to the detriment of Reed), including, without limitation, the less stringent means of proving fraud as set forth in *Smith v. Great Basin Grain Co.*, 98 Idaho 266, 561 P.2d 1299 (1977) (and other law relating to shareholder, officer and/or director fraud), and Reed is entitled to recover all damages attributable to such fraud. Under the theory discussed in *Smith v. Great Basin Grain Co.* (and other cases), AIA Services, AIA Insurance, Crop USA, John, Freeman, Duclos, Connie, and/or Beck are liable for all funds, assets, and services that were unlawfully and/or inappropriately transferred and/or utilized directly and/or indirectly to their benefit during their tenure as officers, directors, and/or shareholders in AIA Services, AIA Insurance, and/or Crop USA.

5.4   As a consequential and/or proximate result of AIA Services, AIA Insurance, Crop USA, John, Duclos, Freeman, Connie, and/or Beck's fraud (including, without limitation, any one or more of the types of fraud listed above), Reed has suffered and is entitled to recover all damages from the Defendants, jointly and severally.

## VI. FOURTH CAUSE OF ACTION—CONVERSION

6.1   Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or remedy sought under this cause of action.

6.2   AIA Services, AIA Insurance, Crop USA, John, Duclos, Connie, Freeman, and/or Beck's (including, without limitation, as officers and/or members of the boards) conduct and/or consent to such conduct constitutes the willful interference with Reed's property and money which should have been paid to him or been held for his benefit (including, without limitation, money in which Reed had a valid and perfected security interest, e.g., whether through UCC filings and/or through security interests and/or rights in the Amended Stock Pledge Agreement),

FIFTH AMENDED COMPLAINT – 25

RJT - 014467

without lawful justification, which deprived Reed of the possession of such money and/or property. Crop USA, John, Duclos, Freeman, Connie, Beck and/or entities controlled or partially owned by John were recipients of the converted assets, funds, labor, and/or services (including for any attorneys' fees and costs paid by AIA Services and/or AIA Insurance for any of the individual Defendants).

6.3    As a result of the AIA Services, AIA Insurance, Crop USA, John, Duclos, Freeman, Connie, and/or Beck's unlawful acts, conduct, and interference with Reed's valid and perfected security interests and other rights, Reed has been damaged and is entitled to damages proven at trial.

## VII.  FIFTH CAUSE OF ACTION—ALTER EGO/PIERCING CORPORATE VAIL
### (A Cause of Action and/or Remedy)

7.1    Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim under this cause of action and/or requested relief.

7.2    Reed also specifically re-alleges and incorporates Paragraph 2.52 above.

7.3    AIA Insurance, AIA Services, and Crop USA have been operated, organized and controlled, and their affairs are so conducted that they are the instrumentality, agency, and/or conduit of one another and for John, Beck, Duclos, Freeman and/or Connie to their benefit and Reed's detriment.

7.4    Because of the lack of proper corporate governance; common officers, directors, and shareholders; lack of capitalization; fraud; overreaching; breaches of good faith and fair dealing; and the other unlawful and/or inappropriate acts and/or omissions of AIA Insurance, AIA Services, Crop USA, John, Duclos, Freeman, Beck, and Connie, the corporate veils of AIA

FIFTH AMENDED COMPLAINT – 26

RJT - 014468

App.  S, p. 42

**17-ER-4167**

Services, AIA Insurance and Crop USA should be pierced thereby holding AIA Services, AIA Insurance, Crop USA, John, Duclos, Freeman, Connie, and/or Beck jointly and severally liable for all of Reed's damages that lie in tort or contract (including, without limitation, the sums due under the Promissory Note) as equity requires such action.

7.5   In addition and/or in the alternative, because of the common ownership, common governance, fraud, conversion, breached duties, unlawful acts, improper acts and/or omissions of John, Duclos, Freeman, Connie, and/or Beck, the corporations AIA Services and Crop USA should be liable for all of Reed's damages under the theory of reverse piercing of the corporate veil.

### VIII. SIXTH CAUSE OF ACTION—CONSTRUCTIVE TRUST
(A Cause of Action and/or as Remedies)

8.1   Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or remedy sought under this cause of action.

8.2   Reed has a valid security interest in AIA Services and/or AIA Insurance's commissions and all of the outstanding shares of AIA Insurance, among other security interests. The boards of AIA Services and AIA Insurance owed Reed fiduciary duties to Reed. AIA Services, AIA Insurance, Crop USA, John, Duclos, Freeman, Connie, and/or Beck fraudulently, wrongfully and/or improperly used funds, transferred assets and/or provided services (which should have been paid to Reed or benefited AIA Services and/or AIA Insurance) for investments, personal use, inappropriate transactions, loans, advances, self-dealing, and/or other wrongful, fraudulent and/or inappropriate purposes (including, without limitation, approving, consenting, and/or acquiescing in such activities and the failure to take appropriate action).

FIFTH AMENDED COMPLAINT – 27

RJT - 014469

App.  S, p. 43

**17-ER-4168**

8.3     AIA Services, AIA Insurance, Crop USA John, Duclos, Freeman, Connie, and/or Beck's acts and/or omissions resulted in Crop USA, John, Duclos, Freeman, Connie and/or Beck's acquisition of money, securities and/or services which should have been paid to Reed or retain by AIA Insurance but for their fraud, deepening insolvency, civil conspiracy, misrepresentation(s), bad faith, self-dealing, fraudulent conveyances, breached fiduciary duties, and/or overreaching activities; and AIA Services, Crop USA, John, Duclos, Freeman, Beck and/or other entities' retention of the money, investments, securities and property would be unjust.

8.4     Reed requests the imposition of a constructive trust for his benefit to recover the proceeds of all from the Defendants' fraud, fraudulent conveyances, breaches of fiduciary duties, overreaching, conspiracy, deepening insolvency (as a remedy only), improper, self-dealing, wrongful and/or inappropriate transfers, acts and/or omissions.

## IX.  SEVENTH CAUSE OF ACTION—DIRECTOR LIABILITY
### (A Cause of Action and/or a Remedy)

9.1     Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or remedy sought under this cause of action.

9.2     John, Duclos, Freeman, Connie, and/or Beck are personally liable for all relevant breached fiduciary duties, deepening insolvency, wrongful acts, improper acts, omissions, overreaching transactions, fraud, civil conspiracy, faithless fiduciary activities, loans, advances, improper loan guarantees and/or fraudulent conveyances which occurred during their tenure as a member of the board of directors of AIA Service, Crop USA and/or AIA Insurance.

///

FIFTH AMENDED COMPLAINT – 28

RJT - 014470

9.3     Because John, Duclos and Freeman were both directors and officers during certain relevant times, they owed Reed even more elevated fiduciary duties.  John, Duclos, and Freeman breached their elevated fiduciary duties owed to Reed.

9.4     During the relevant times that John, Connie, Beck, Freeman and/or Duclos were members of boards of AIA Insurance, AIA Services, and/or Crop USA, they each should be held personally liable for all Reed's damages in contract and tort.

## X.  EIGHTH CAUSE OF ACTION—SPECIFIC PERFORMANCE
### (A Cause of Action and/or as Remedies)

10.1    Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or remedy sought under this cause of action.

10.2    Under the Amended Stock Pledge Agreement, Amended Security Agreement, and Restructure Agreement, Reed is entitled to vote the pledged shares of AIA Insurance (and all ancillary rights, including, without limitation, to vote the shares to remove the board and take all actions related in any way to his right to vote the pledged shares), sell the shares of AIA Insurance at public or private sale, judicially sell the pledged shares in AIA Insurance, entitled to timely receive audited financial statements and financial information, and/or seize all of the AIA Insurance and AIA Services' commissions in the required Lock Box.  When AIA Services became in Default, it lost its right to vote the pledged shares of AIA Insurance and the right vested exclusively in Reed.

10.3    Despite Reed's demands for the Defendants to comply with the provisions in the Promissory Note, Amended Stock Pledge Agreement, Amended Security Agreement and Restructure Agreement, AIA Services, AIA Insurance, the Defendants have refused to comply.

FIFTH AMENDED COMPLAINT – 29

RJT - 014471

App.  S, p. 45

17-ER-4170

Reed is entitled to the relief afforded to him or reasonably contemplated under the foregoing agreements and such other rights, remedies and/or relief as may be available under Idaho Code, including, without limitation, any action, relief and/or order authorized under I.C. § 30-1-701 *et seq.* and/or I.C. § 28-9-101 *et seq.* (including the sale of the pledged shares, protection of security interest, seizure of security, and any other available remedy).

10.4    As a direct or proximate result of the Defendants' acts and/or omissions, Reed has suffered and is entitled to an award of attorneys' fees and costs incurred, at or before trial, in enforcing any provision of the Promissory Note, Amended Stock Pledge Agreement, Amended Security Agreement, and/or Restructure Agreement for relief sought before or at trial.

## XI. NINTH CAUSE OF ACTION—BREACH OF FIDUCIARY DUTIES

11.1    Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or remedy sought under this cause of action.

11.2    During certain relevant times, John, Connie, Beck, Duclos,, and/or Freeman owes and/or owed Reed fiduciary duties, including, without limitation, because of his status as the largest creditor of AIA Services, AIA Insurance and/or Crop USA; and because AIA Services and/or AIA Insurance were insolvent as described in this Complaint. The individual Defendants' fiduciary duties include, without limitation, the duties of care and loyalty to Reed. During the relevant times that John, Freeman and Duclos acted as both a director and an officer of AIA Insurance, AIA Services and/or Crop USA, they owed even more elevated fiduciary duties to Reed as the single largest creditor of AIA Services and/or AIA Insurance.

11.3    John, Connie, Beck, Duclos, and/or Freeman breached their fiduciary duties owed to Reed, including, without limitation, when they failed to operate AIA Services and AIA

FIFTH AMENDED COMPLAINT – 30

RJT - 014472

Insurance for the benefit of Reed. John, Connie, Beck, Duclos, and/or Freeman breached their fiduciary duties when they failed to take legal action against past and/or present officers and/or directors of AIA Services and AIA Insurance, and when they prevented Reed from taking any action he deemed appropriate under the Amended Stock Pledge Agreement, Amended Security Agreement and/or Restructure Agreement.

11.4   As a result of John, Connie, Beck, Duclos, and/or Freeman's breaches of their fiduciary duties owed to Reed, they are individually liable to Reed for all damages he suffered and/or deemed the product of their breached fiduciary duties, including without limitation, all damages attributable to inappropriate transfers of assets and/or services, inappropriate use of assets and/or services, inappropriate payment of salaries, the failure to pursue claims against other past and/or present officers and directors, inappropriate guarantee of loans, all claims in this Complaint, and such other wrongful acts and/or omissions that Reed may demonstrate at trial.

## XII.   TENTH CAUSE OF ACTION—BREACH OF IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING

12.1   Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or remedy sought under this cause of action.

12.2   There is an implied obligation of good faith and fair dealing between the parties in the performance and enforcement of the terms and conditions of the Promissory Note, Amended Stock Pledge Agreement, Amended Security Agreement and Restructure Agreement. This duty embraces, among other things, an implied obligation that AIA Services, AIA Insurance, and their directors and officers, specifically, Defendants Duclos, Freeman, John, Connie, and/or Beck

FIFTH AMENDED COMPLAINT – 31

RJT - 014473

shall not do anything to injure or destroy Reed's rights to receive the benefits of the Promissory Note, Amended Stock Pledge Agreement, Amended Security Agreement and/or Restructure Agreement. The Defendants have breached their obligations of good faith and fair dealing owed to Reed when they, among other things, intentionally injured and/or destroyed Reed rights.

12.3   As a result of the Defendants' acts and/or omissions, Reed has suffered and is entitled to damages in the amount to be proven at trial, including, without limitation, all damages incurred since the Defendants have refused to abide by the terms and conditions of the Promissory Note, Restructure Agreement, Amended Stock Pledge Agreement and/or Amended Security Agreement. In addition, Reed is entitled to recover all damages incurred after his vote of the pledged shares under because of the individual Defendants' interference with Reed's contractual rights.

## XIII.   ELEVENTH CAUSE OF ACTION—CIVIL CONSPIRACY
### (A Cause of Action and/or Remedy)

13.1   Reed re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support every claim and/or remedy sought under this cause of action.

13.2   AIA Services, AIA Insurance, Crop USA, John, Connie, Duclos, Freeman, and/or Beck engaged in a pattern of behavior and/or agreement to accomplish an unlawful objective and/or to accomplish a lawful objective in an unlawful manner. AIA Services, AIA Insurance, Crop USA, John, Connie, Duclos, Freeman, and/or Beck's acts, omissions, and/or acquiescence constitute civil conspiracy.

13.3   As a result of AIA Services, AIA Insurance, Crop USA, John, Connie, Duclos, Freeman, and/or Beck's wrongful and unlawful acts and/or acquiescence, they should all be held

FIFTH AMENDED COMPLAINT – 32

RJT - 014474

jointly and severally liable for all of Reed's damages in this action.

## XIV.   PRAYER FOR RELIEF

Without waiving any claims, rights and/or remedies under any of the above-referenced agreements and/or Idaho Code as a secured party, Reed respectfully requests the following relief:

14.1   For a judgment against AIA Services for the principal of $6,000,000, plus accrued pre-judgment interest, in the total amount to be proven at or before trial.

14.2   Reed requests a preliminary and permanent injunction against the Defendants as follows (any one or more of the following at or before trial):

(a) Enjoining any of the Defendants from interfering with the actions taken pursuant to the February 22, 2007, Consent in Lieu of Special Meeting of Shareholders of AIA Insurance and the actions taken pursuant to the February 22, 2007, Consent in Lieu of Meeting of Board of Directors of AIA Insurance.

(b) Enjoining any of the Defendants from preventing Reed from exercising his right under the Amended Stock Pledge Agreement to vote the pledged shares in AIA Insurance and taking any ancillary actions which relate in any way to voting the pledged shares, including, without limitation, removing the board of directors of AIA Insurance and appointing a revised board and such other actions he deems appropriate in his sole discretion as the exclusive person entitled to vote all the outstanding shares of AIA Insurance.

(c) Requiring the Defendants to timely and promptly provide Reed with all financial information required under the Amended Stock Pledge Agreement.

(d) Enjoining John and any of the other individual Defendants from entering the offices of AIA Insurance, if necessary

FIFTH AMENDED COMPLAINT – 33

RJT - 014475

(e) Enjoining the Defendants and any entity owned, partially owned or operated by any one or more of them from interfering with, disturbing, and transferring any of AIA Services, AIA insurance and Crop USA's customers, trade secrets, contracts, agreements and business.

(f) Enjoining the Defendants from utilizing, transferring or disposing of any funds. assets, property, labor, facilities or services of AIA Insurance, AIA Services and/or Crop USA for any other person, entity or business, unless such transactions are arms-length and payment is received by AIA Insurance, AIA Services and/or Crop USA prior to providing such funds, assets, labor, facilities or services (e.g., no free use or credit arrangements for such activities).

(g) Enjoining the Defendants from disposing of, using, transferring or utilizing any of the funds, assets (including, without limitation, mortgages) and/or property received from AIA Services, AIA Insurance, and/or Crop USA from the lawsuit entitled In re: Universe Liquidator Grain Growers Trust, et al. v. Idaho Department of Insurance a/k/a GGMIT suit, all other lawsuits, litigation and disputes in which AIA Services, AIA Insurance and/or Crop USA obtains any financial gain. All funds, assets and/or property from the foregoing should be held in trust until further notice from the Court.

(h) Enjoining the Defendants from negotiating or entering into any loans, credit arrangements, credit facilities, or borrowing any funds under any loan, line-of-credit, credit facility, open account and the like for which AIA Insurance or AIA Services is a guarantor or a signatory, unless utilized for the exclusive

FIFTH AMENDED COMPLAINT – 34

RJT - 014476

benefit of AIA Insurance to provide funding for AIA Insurance and approved by Reed or such other party appointed by Reed or the Court.

(i) Enjoining the Defendants from destroying, altering, deleting, purging, and/or removing any documents (including drafts, proposals, electronic files, email, back-up media and the like), property, computers and the like from AIA Insurance, AIA Services and Crop USA's offices.

(j) Enjoining the Defendants from advancing or lending any funds, assets or services to John, Duclos, Freeman, Connie, Beck, or AIA Services without first obtaining written consent from Reed or permission from the Court.

(k) Enjoining the Defendants from entering into or negotiating any substantive contracts or agreements without first obtaining approval from Reed or permission from the Court.

(l) Enjoining the Defendants from holding, calling or participating in any shareholder meetings, board meeting, and/or executing any Consents in Lieu of the foregoing without permitting Reed to vote the pledged shares or take such other action permitted to him as the holder of the right to vote all outstanding shares of AIA Insurance.

(m) Enjoining the Defendants from using or transferring any funds, assets, or services of AIA Insurance for the purpose of providing any retainers or payments for the legal services for John, Freeman, Duclos, Connie, and/or Beck.

(n) Enjoining John from being paid compensation for work not performed for AIA Insurance and/or AIA Services. John's time expended for Crop USA

FIFTH AMENDED COMPLAINT – 35

RJT - 014477

and any other entities partially or wholly owned by him shall be paid by the appropriate entity and not AIA Insurance, AIA Services, but by the entity for which John performed the work.

(o) Enjoining the Defendants from paying any of the members of the board of directors of AIA Services or AIA Insurance unreasonable compensation for serving on the board of directors of AIA Services or AIA Insurance.

(p) Enjoining the Defendants requiring AIA Insurance, AIA Services and Crop USA to accurately and properly itemize every employee's daily time sheet to reflect the number of hours of work performed for AIA Services, AIA Insurance, Crop USA and any other entities or persons.

(q) Enjoining the Defendants from such other actions as may be reasonably contemplated from this Complaint, the Amended Stock Pledge Agreement, the Amended Security Agreement, the Restructure Agreement and/or which would otherwise protect Reed's interests and to prevent further deepening of the insolvency at AIA Services.

(r) Enjoining John, Beck, Freeman, Duclos, and/or Connie from appointing any directors for Crop USA, AIA Services and AIA Insurance.

(s) Invalidating the appointment of Connie and Beck from the Boards of AIA Services and AIA Insurance.

14.3   Enjoining the Defendants from transferring, encumbering or otherwise disposing of any improperly and/or fraudulently obtained and/or transferred assets under I.C. § 55-916, et seq. and/or other applicable legal authority.

///

FIFTH AMENDED COMPLAINT – 36

RJT - 014478

14.4   For the imposition of a constructive trust for the benefit of Reed and awarding to Reed all shares of common and/or preferred shares in Crop USA owned and/or held by John, Connie, Freeman, Duclos, and Beck and for all ancillary actions necessary to transfer said shares to Reed.

14.5   For the imposition of a constructive trust for the benefit of Reed and awarding to Reed that certain real property located in Nez Perce County and owed by John and Connie that was purchased from the Camas Praire RailNet, Inc., recorded under instrument number 672508 in Nez Perce County and all rental proceeds paid from AIA Services and/or AIA Insurance to John and Connie.

14.6   For a prejudgment writ of attachment against certain assets, funds and/or property of AIA Services, AIA Insurance, Crop USA and any other assets, funds and/or property of any of the other Defendants shown to be the proceeds or result of any or all of the Defendants' wrongful, unlawful, fraudulent and/or inappropriate acts and/or omissions.

14.7   For an order and/or judgment permitting Reed to sell the pledged shares of AIA Insurance at public or private sale or, in the alternative, judicially.  In the event the pledged shares of AIA Insurance are sold (whether or not Reed is the high bidder), for a deficiency judgment against the Defendants for all amounts exceeding the amount received and/or credited from the sale, including, without limitation, all damages, attorneys' fees and costs incurred by Reed in this action.  In the event Reed elects to purchase or otherwise obtain the shares of AIA Insurance, he hereby requests that only relief necessary for him to carry out his rights as owner of the shares of AIA Insurance.

14.8   For a judgment against the Defendants and/or the $200,000 bond posted for the preliminary injunction against Reed for all damages, attorneys' fees, costs and expenses incurred

FIFTH AMENDED COMPLAINT – 37

RJT - 014479

by Reed from being wrongfully enjoined, plus judgment against the Defendants for all amounts exceeding the $200,000 bond.

14.9   For judgment against the Defendants, jointly and severally, for all damages incurred by Reed as a result of the Defendants' breaches of implied duties of good faith and fair dealing, conversion, deepening insolvency, breaches of fiduciary duties and other claims, including, without limitation, pre and post filing damages that include, but are not limited to: all pay to present directors and officers, damages for the compensation and benefits paid to all employees paid by AIA Services or AIA Insurance that would not have been needed, lost tenants, misuse of assets and labor, and all other items detailed at trial.

14.10   For an order compelling an audit of AIA Services, AIA Insurance and Crop USA.

14.11   For a declaratory judgment or order requiring specific performance of AIA Services and/or AIA Insurance's obligations, covenants, warranties and/or other rights granted to Reed under the Amended Stock Pledge Agreement, Amended Security Agreement, Promissory Note and/or Restructure Agreement.

14.12   For judgment that AIA Insurance, AIA Services and Crop USA have been operated as the alter-egos of John, Duclos, Freeman, Connie and/or Beck, and their corporate veils should be pierced thereby imposing personal liability on all of the individual and corporate Defendants, jointly and severally, for all of Reed's damages and sums owed to him under the Promissory Note in an amount to be proven at trial.

14.13   For judgment that Crop USA is the alter-ego of AIA Insurance and AIA Services and all the foregoing corporations for all of Reed's damages and sums owed to him in both contract and tort in an amount to be proven at trial.

14.14   For a declaratory judgment and/or order enforcing the February 22, 2007, Consent

FIFTH AMENDED COMPLAINT – 38

RJT - 014480

in Lieu of Special Meeting of Shareholders of AIA Insurance and the actions taken pursuant to the February 22, 2007, Consent in Lieu of Meeting of Board of Directors of AIA Insurance.

14.15  For a judgment for damages and attorneys' fees incurred by Reed as a result of being wrongfully enjoined by the Defendants.

14.16  For such other relief that Reed may request before or at trial to enforce his rights under the Amended Stock Pledge Agreement, Amended Security Agreement, and/or Restructure Agreement, including, without limitation, any action or order authorized under I.C. § 30-1-701 et seq. and/or I.C. § 28-9-101 et seq.

14.17  For judgment, order and/or declaratory relief as may be necessary for Reed to effectuate any and all rights and remedies under I.C. § 28-9-101 et seq., including, without limitation, the sale of the pledged shares, protection of security interest, seizure of security, return of funds protected by his security interest (e.g., attorneys fees paid for individual directors, etc.) and any other available remedy.

14.18  For the avoidance/rescission of the improper and/or fraudulent transactions, transfers of funds, assets and/or services from AIA Services and/or AIA Insurance to John, Beck, Freeman, Connie, Duclos, Crop USA, and any entity partially owned by John, and/or any other party who received such transfers under I.C. § 55-916, et seq. and/or other applicable legal authority.

14.19  For judgment against John and Connie for $307,271, plus accrued interest, for the money he owed AIA Services which was improperly paid by inappropriately transferring his indebtedness to Reed's Promissory Note and then backing out the transaction in 2006 or 2007, and awarding this account receivable from AIA Services to Reed.

///

FIFTH AMENDED COMPLAINT – 39

RJT - 014481

14.20  For judgment against Connie to the fullest extent of her liability by virtue of her marriage to John and/or his acts during their marriage, and her interest in the community property in an amount to be proven at the time of trial, plus prejudgment interest.

14.21  For judgment against Connie individually for an amount to be proven at trial, plus pre-judgment interest.

14.22  For a judgment against John (both individually and through his marriage to Connie) in an amount to be proven at trial, plus prejudgment interest.

14.23  For judgment against John, Connie, Duclos, Freeman, and Beck, jointly and severally, for all funds, assets, services, property and/or any other benefit fraudulently transferred, converted and/or fraudulently conveyed, and which such transferred thing of value may not be avoided, rescinded and/or paid to Reed.

14.24  For judgment against Crop USA for all sums and the fair market value of all services, labor, funds, and assets wrongfully, fraudulently, and/or inappropriately transferred, converted and/or conveyed, directly or indirectly, from AIA Insurance and/or AIA Services.

14.25  For judgment against John, Duclos, Connie, Freeman, and Beck, jointly and severally, for amounts owed to Reed in an amount to be proven at the time of trial because AIA Services and AIA Insurance are alter egos of John, Duclos, Freeman, and Beck.

14.26  For judgment against John, Connie, Duclos, Freeman, and Beck disgorging all salaries, compensation (including payments of fees for being board members and/or advisory board members), benefits, assets, stock (including, without limitation, shares held directly or indirectly in Crop USA) and other ill-gotten gains as a result of the breaches of their fiduciary duties, fraudulent transfers, unlawful acts, fraud and/or other causes of action.

///

FIFTH AMENDED COMPLAINT – 40

RJT - 014482

14.27  For the imposition of a constructive trust for the benefit of Reed and awarding to Reed all funds, investments, loans, advances, securities, property, transactions, services and/or self-dealing which were converted or fraudulently, wrongfully, unlawfully and/or improperly made for the benefit of Duclos, Freeman, John, Beck, Connie and/or other parties or entities controlled and/or partially owned by any of them as may be requested at trial.

14.28  For the imposition of a constructive trust for the benefit of Reed and awarding to Reed all securities, stock, options and the like transferred, together with all proceeds thereof, converted, sold or awarded or acquired by John and/or Connie from AIA Services, AIA Insurance and/or Crop USA, including, without limitation, shares (and proceeds thereof) and/or funds, and/or distributions received in or from Pacific Empire Holdings Corporation, Pacific Empire Radio Corporation, and Pacific Empire Communications Corporation.

14.29  For the imposition of a constructive trust for the benefit of Reed and awarding to Reed all shares and options of AIA Services and Crop USA acquired by the Defendants during their employment and/or when they were officers and/or members of the boards of AIA Insurance, AIA Services, and/or Crop USA.

14.30  For the disgorgement of all salary, bonuses, compensation (including all compensation and benefits received as directors), stock options, benefits, reimbursements (all proper, improper and/or undocumented reimbursements for travel, meals, lodging, etc.) and any other payments and/or assets received by John, Connie, Beck, Duclos, and Freeman and award all such funds and assets to Reed.

14.31  For a judgment against John, Freeman, Duclos, Connie and Beck, jointly and severally, for all damages resulting from the breaches of their fiduciary duties owed to Reed during the periods of time of their relevant tenures as directors of AIA Insurance and AIA

FIFTH AMENDED COMPLAINT – 41

RJT - 014483

Services, in an amount to be proven at trial.

14.32 For a declaratory judgment imposing personal liability on the individual Defendants and Crop USA for all loans guaranteed by AIA Services or AIA Insurance.

14.33 For an award of Reed's attorneys' fees and costs from all of the Defendants, jointly and severally, under the Promissory Note, Amended Stock Pledge Agreement, I.C. § 12-120, I.C. § 12-121 and/or as may be available under equity and law.

14.34 For judgment against the Defendants, jointly and severally, for all damages in tort and contract proven by Reed at trial based upon one or more of the following: civil conspiracy, fraud (any type, including misrepresentations), fraudulent conveyances, conversion, breaches of contract, alter-ego, breaches of fiduciary duties, deepening insolvency, breaches of implied duties of good faith and fair dealing, specific performance of any of Reed's rights under contract or law.

14.35 John, Connie, Beck, Duclos, and Freeman's wrongful, self-serving, fraudulent, deepening insolvency, conspiracy, inappropriate and unlawful acts and/or omissions as described in this Complaint constitute that of "faithless fiduciaries." Accordingly, all salary, compensation (including all compensation and benefits received as directors), stock options, benefits, reimbursements (all proper, improper and/or undocumented reimbursements for travel, meals, lodging, etc.) and any other payments and/or assets received by John, Connie, Beck, Duclos, and/or Freeman should be disgorged and awarded to Reed.

14.36 AIA Services and AIA Insurance have alleged that Reed agreed to orally modify the terms of the Promissory Note, Amended Stock Pledge Agreement, Amended Security Agreement and Restructure Agreement, which such allegations Reed expressly denies. If the Defendants are able to prove that such an oral modification exists at or before trial, AIA

FIFTH AMENDED COMPLAINT – 42

RJT - 014484

Services, AIA Insurance and Crop USA are in breach of such orally modified agreements and Reed is entitled to the damages and relief set forth in this Complaint.

14.37 Reed incorporates by reference into this Section all allegations and requested relief set forth in the above causes of action and/or remedies. Should any of the causes of action fail at or before trial, all of such allegations are incorporated by reference into this Section as requested relief and/or as support for Reed's requested relief.

14.38 Reed expressly reserves the right to amend this Complaint upon the completion of discovery and/or present causes of action and remedies which conform to the evidence at the time of trial.

14.39 For judgment against the Defendants and/or such relief for all claims and causes of action which conform to the evidence obtained through discovery and/or forensic accounting.

14.40 For such other relief as Reed may request before or at the time of trial and/or that the Court may find just, equitable, or warranted before or at the time of trial.

14.41 The Defendants are placed on notice that future amendments to this Complaint will be likely and Reed reserves the right to do so, particularly based upon the Defendants' intentional refusal to respond to Reed's discovery requests.

///

///

///

///

///

///

FIFTH AMENDED COMPLAINT – 43

RJT - 014485

14.42  The Defendants are placed on notice that Reed may likely move the Court in the future to permit him to request an award of punitive damages against the Defendants at trial.

DATED this 1ˢᵗ day of February, 2008.

SMITH, CANNON & BOND PLLC

By: _____

Roderick C. Bond
Ned A. Cannon
Attorneys for Plaintiff Reed J. Taylor

FIFTH AMENDED COMPLAINT – 44

RJT - 014486

CERTIFICATE OF SERVICE

I, Roderick C. Bond, declare that, on the date indicated below, I served a true and correct copy of Plaintiff Reed Taylor's Fifth Amended Complaint on the following parties via the methods indicated below:

| | |
|---|---|
| David A. Gittins<br>Law Office of David A. Gittins<br>P.O. Box 191<br>Clarkston, WA 99403<br>Attorney for Defendants JoLee Duclos and<br>Bryan Freeman | **Via:**<br>( ) U.S. Mail, Postage Prepaid<br>(X) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile<br>(X) Email (pdf attachment) |
| Michael E. McNichols<br>Clements Brown & McNichols<br>321 13th Street<br>Lewiston, ID 83501<br>Attorney for R. John Taylor | **Via:**<br>( ) U.S. Mail, Postage Prepaid<br>(X) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile<br>(X) Email (pdf attachment) |
| Jonathan D. Hally<br>Clark & Feeney<br>P.O. Box 285<br>Lewiston, ID 83501<br>Attorney for Connie Taylor, James Beck and<br>Corrine Beck | **Via:**<br>( ) U.S. Mail, Postage Prepaid<br>(X) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile<br>(X) Email (pdf attachment) |
| Gary D. Babbitt<br>D. John Ashby<br>Hawley Troxell Ennis & Hawley LLP<br>877 Main Street, Suite 1000<br>P.O. Box 1617<br>Boise, Idaho 83701-1617<br>Attorneys for AIA Services, AIA Insurance, and<br>Crop USA Insurance Agency | **Via:**<br>(X) U.S. Mail, Postage Prepaid<br>( ) Hand Delivered<br>( ) Overnight Mail<br>( ) Facsimile<br>(X) Email (pdf attachment) |

FIFTH AMENDED COMPLAINT – 45

RJT - 014487

James J. Gatziolis
Charles E. Harper
Quarles & Brady LLP
Citigroup Center, 500 West Madison Street
Suite 3700
Chicago, IL  60661-2511
Attorneys for Crop USA Insurance Agency

Via:
(X) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
( ) Facsimile
(X) Email (pdf attachment)

Signed this 1st day of February, 2008, at Lewiston, Idaho.

_____
Roderick C. Bond

FIFTH AMENDED COMPLAINT – 46

RJT - 014488

App.  S, p. 62

17-ER-4187

# CONFIDENTIAL

## Campbell, Bissell & Kirby, PLLC
### Attorneys & Counselors at Law

Michael S. Bissell • Licensed in WA, ID & AK
Richard D. Campbell • Licensed in WA, ID & MT
Patrick J. Kirby • Licensed in WA & ID

July 21, 2008

**Via Certified Mail and**
**Regular Mail**

Board of Directors
AIA Services Corporation, Inc. and AIA Insurance, Inc.
111 Main Street
Lewiston, ID 83501

    Re:    **Demand of Donna Taylor and Reed Taylor Pursuant to Idaho Code 30-1-742**

Dear Board Members of AIA Services Corporation and AIA Insurance Inc.:

As you know, this firm represents Donna J. Taylor ("Donna"), the Series A Preferred Shareholder in AIA Services Corporation ("AIA Services"), and Reed Taylor ("Reed"), the pledgee of AIA Insurance, Inc. ("AIA Insurance") and creditor of AIA Services who is owed over $8.5 Million.

Donna and Reed hereby make demand upon the Board of Directors of AIA Services and AIA Insurance pursuant to Idaho Code 30-1-742 to take the action described herein. Specifically, demand is made that said entities immediately take action against the law firms of Hawley Troxell Ennis & Hawley; Clements, Brown & McNichols; Quarles & Brady; together with the responsible attorneys of said firms (and any other firms which have wrongfully represented the entities) for violating applicable Rules of Professional Conduct, malpractice, breach of fiduciary duties, and aiding and abetting, including, without limitation, all acts related to or involving the following claims and/or causes of action:

1.  Wrongfully simultaneously representing Crop USA Insurance Agency, Inc. ("Crop USA") and AIA Services and AIA Insurance, while knowing these entities had divergent interests;

2.  Taking action against the best interests of AIA Services and/or AIA Insurance;

3.  Assisting in the commission of fraud and/or illegal activities;

4.  Wrongfully allowing interested directors and other interested parties to direct litigation in light of substantial claims against them;

5.  Issuing inappropriate opinion letters to lenders and auditors;

6.  Failing to recover moneys and/or stock in Crop USA;



EX NO. 86
Ashby, D.
DATE 07.02.19
ASSOCIATED
REPORTING & VIDEO

509-455-7100 • Fax 509-455-7111 • www.cbklawyers.com
416 Symons Building • 7 South Howard Street • Spokane, Washington 99201



EXHIBIT 11
WIT: Gatziolis
DATE: 8-10-16
JoAnn Losoya, CSR



EXHIBIT
#31

**EXHIBIT S**

GC0740772

## CONFIDENTIAL

Board of Directors
AIA Services Corporation, Inc. and AIA Insurance, Inc.
July 21, 2008
Page - 2

7. Preventing claims from being made against present and past directors, including, without limitation, R. John Taylor, Michael Cashman, James Beck and Connie Taylor;

8. Failing to take action against Crop USA to recover funds owed;

9. Failing to take action against responsible present and past directors for violating the corporate opportunity doctrine by permitting Crop USA to become a separate company from AIA;

10. Failing to take action against interested directors and parties who took part in fraud, conspiracy and other illegal activities, including, without limitation, R. John Taylor, James Beck, Michael Cashman and Connie Taylor;

11. Breaching fiduciary duties (including the duty of loyalty) owed to AIA Services and AIA Insurance;

12. Aiding and abetting R. John Taylor, James Beck, Michael Cashman, Connie Taylor, Crop USA, and other interested parties who participated in the misappropriation of assets, opportunities, and funds of AIA Services and AIA Insurance (including the $1.5 Million wrongfully transferred from AIA Insurance to Crop USA);

13. Not ensuring that separate counsel was retained for AIA Services;

14. Not ensuring that separate counsel was retained for AIA Insurance knowing that it was pledged to Reed;

15. Assisting in illegal loan guarantees by AIA Services and/or AIA Insurance;

16. Wrongfully entering into a Joint Defense Agreement knowing that such an agreement was inappropriate in light of the significant claims AIA Services and AIA Insurance have against interested individuals and Crop USA;

17. Wrongfully obtaining shareholder consent to pay the attorneys' fees of past and present directors of AIA Services and AIA Insurance without full disclosure or obtaining votes only from disinterested shareholders;

18. Permitting Michael McNichols and Clements, Brown & McNichols to remain as counsel for R. John Taylor in violation of their duty of loyalty to AIA Services and AIA Insurance;

GC0747773

# CONFIDENTIAL

Board of Directors
AIA Services Corporation, Inc. and AIA Insurance, Inc.
July 21, 2008
Page - 3

19. Assisting in pledging the assets of AIA Services and AIA Insurance to Crop USA for the payment of attorneys' fees and costs of interested parties and others;

20. Permitting the business and employees of AIA Insurance and AIA Services to be detrimentally effected by the actions of interested parties (e.g., transferring AIA Insurance's employees to Crop USA);

21. Failing to take action against R. John Taylor and Connie Taylor for the significant breaches of R. John Taylor's employment agreement with AIA Services;

22. Failing to comply with contractual obligations owed to Reed and Donna;

23. Failing to recover inappropriate salaries, advances, loans, benefits, and compensation paid to R. John Taylor, Connie Taylor, James Beck and others;

24. Assisting in, and failing to take action pertaining to, the improper allocation expenses, labor, rent and other expenditures inappropriately utilized for the benefit of Crop USA.

25. Accepting payments of attorneys' fees in violation of the Rules of Professional Conduct;

26. Representing AIA Services and/or AIA Insurance in making inappropriate arguments (including alleged illegality of the debt to Reed) knowing that such arguments were counter to AIA Services' obligations to Reed and Donna and knowing that Richard Riley was a witness who provided a legal opinion counter to such arguments; and

27. Accepting payment of attorneys' fees and costs which should have been allocated to other parties, including, without limitation, fees and costs that should have been paid by Crop USA, R. John Taylor, James Beck, Michael Cashman and Connie Taylor.

Based upon the above wrongful acts (and others reasonably contemplated from the above acts and other acts known only to insiders at AIA Services and/or AIA Insurance), demand is made upon you to initiate legal action against the above-referenced law firms and lawyers to recover all applicable damages and to require a disgorgement of all attorneys' fees and costs paid to them, including, without limitation, for all inappropriate transactions and the litigation involving Reed and/or Donna. Based upon the foregoing demand is also made for action against R. John Taylor, Michael Cashman, James Beck, Connie Taylor, Crop USA and all other responsible parties for the recovery of damages and the disgorgement of all compensation and attorneys' fees and costs paid to or on their behalf.

GC0340774

## CONFIDENTIAL

Board of Directors
AIA Services Corporation, Inc. and AIA Insurance, Inc.
July 21, 2008
Page - 4

Please note that I have sent a copy of this notice to present counsel for AIA Services and AIA Insurance, and trust that they will ensure copies of this Notice are provided to all board members and shareholders. I would appreciate it if you would let me know as soon as possible whether AIA Services and/or AIA Insurance will be taking any of the requested action. The failure to respond or to immediately take action shall be construed as a rejection of the demands made by this letter.

Nothing herein should be considered or relied upon as a waiver of Donna and Reed's right to take immediate action on behalf of AIA Services and/or AIA Insurance due to exigent circumstances.

Very truly yours,

CAMPBELL, BISSELL & KIRBY, PLLC

MICHAEL S. BISSELL

MSB:mah
cc: Gary Babbitt (via email)
    D. John Ashby (via email)
    James Gatziolis (via email)
    Charles Harper (via email)
    Michael McNichols (via email)
    David Gittins (via email)
    Jon Hally (via email)
    Roderick Bond (via email)
    Reed Taylor (via email)
    Donna Taylor (via regular mail)
Dai:\13 12\notice.072108R.doc

GC0947775

17-ER-4192

Jeffrey A. Thomson ISB #3380
jat@elamburke.com
Loren C. Ipsen ISB #1767
lci@elamburke.com
Joyce A. Hemmer ISB #7202
jah@elamburke.com
ELAM & BURKE, P.A.
251 East Front Street, Suite 300
P.O. Box 1539
Boise, Idaho 83701
Telephone:  (208) 343-5454
Facsimile:  (208) 384-5844

Bradley S. Keller WSBA #10665
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA  98104
Telephone:  (206) 622-2000
Facsimile:  (206) 622-2522
bkeller@byrneskeller.com

Attorneys for Defendants Hawley Troxell Ennis & Hawley LLP,
Gary D. Babbitt, D. John Ashby and Richard A. Riley

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>vs.<br><br>CONNIE TAYLOR HENDERSON, et al.<br><br>Defendants. | Case No.  1:10-cv-00404-DCN<br><br>HAWLEY TROXELL DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO CERTIFY QUESTIONS OF LAW [Dkt. 1148] |

HAWLEY TROXELL DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO CERTIFY QUESTIONS OF LAW [Dkt. 1148] - 1

17-ER-4192

## I.  Standard of Decision.

Idaho Appellate Rule 12.3 provides that a United States District Court may certify a question of law to the Idaho Supreme Court in certain circumstances:

> **(a) Certification of a Question of Law.**  The Supreme Court of the United States, a Court of Appeals of the United States or a United States District Court may certify in writing to the Idaho Supreme Court a question of law asking for a declaratory judgment or decree adjudicating the Idaho law on such question if such court, on the court's own motion or upon the motion of any party, finds in a pending action that:
>
> (1) The question of law certified is a controlling question of law in the pending action in the United States court as to which there is no controlling precedent in the decisions of the Idaho Supreme Court, and
>
> (2) An immediate determination of the Idaho law with regard to the certified question would materially advance the orderly resolution of the litigation in the United States court.

Idaho App. R. 12.3.   For a question to be eligible for certification, the question of law must meet three conditions:  First, it must be controlling in the action pending in the United States court.  Second, there must be no controlling Idaho precedent; that is, it must be an issue of law that has not previously been addressed by the Idaho Supreme Court.  Third, resolution of the question must materially advance the litigation pending in the United States court.  *Miller v. Four Winds International Corp.*, 827 F.Supp.2d 1175, 1188 (D.Idaho 2011).

In general, certification "rests in the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 216 (1974).  "The decision to certify a question to a state supreme court rests in the sound discretion of the district court.  *Baugh v. Gay Lim Holdings, Inc,* No. CV-08-321- BLW, 2009 WL 10677832, at *2 (D.Idaho June 10, 2009) (Citations and internal quotation marks deleted).   Certification is not obligatory, even when the law is undetermined. *Riordan v. State Farm Mut. Auto Ins. Co.*, 589 F.3d 999, 1099 (9th Cir. 2009).  "Mere difficulty in ascertaining and applying the law is not a sufficient reason to certify a question

**17-ER-4193**

to a state supreme court." *Meredith v. Winter Haven*, 320 U.S. 228, 64. S.Ct. 7, 88 L.Ed. 9 (1943). Federal courts should only use their power to certify "sparingly." *Friedlander v. Edwards Lifesciences, LLC*, No. 16-CV-1747 (SRN/KMM), 2016 WL 7007489, at *1 (D.Minn. Nov. 29, 2016).

## II.     Plaintiff's Derivative Demands.

Plaintiff moves to certify four questions to the Idaho Supreme Court relating to plaintiff's derivative demand(s), which are as follows:

**1.     May a Derivative Demand Be Excused When There Is Not a Duly Elected, Fully Seated and Lawfully Functioning Board of Directors?**

**2.     Can Any Party Other than the Corporation Challenge the Adequacy of Derivative Demands?**

**3.     Is the Board of Directors' Failure to Request a Shareholder to Clarify or Provide Additional Information a Waiver of the Right to Challenge the Adequacy of Derivative Demands?**

**4     Is the Adequacy of a Derivative Demand Relaxed When the Corporate Insiders Are Concealing Virtually All Matters from Shareholders and Refusing to Engage in Proper Functional Corporate Governance?**

Plaintiff's questions relating to his derivative demands are merely disguised invitations to engraft the futility doctrine back onto Idaho law. Futility has been rejected by the Idaho Legislature, and the Idaho Supreme Court has recognized that the Idaho's requirement for an adequate derivative demand prior to filing a shareholder derivative action is mandatory and unconditional. *McCann v. McCann*, 138 Idaho 228, 236, 61 P.3d 585, 593 (2002) (*McCann I*). Idaho's derivative demand statute, I.C. § 30-1-742 / § 30-29-742, does not condition its application on whether the plaintiff considers the board of directors to be "lawfully functioning" or "concealing virtually all matters from shareholders." *McCann I* at 233, 61 P.3d at 590 (recognizing derivative actions are available to pursue a remedy on the corporation's behalf when the

HAWLEY TROXELL DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO CERTIFY QUESTIONS OF LAW [Dkt. 1148] - 3

**17-ER-4194**

corporation fails to protect itself "because it is controlled by the wrongdoers"); Mod. Bus. Corp. Act § 742 cmt. [Dkt. 1131-16] (explaining that a written demand is required "in all cases … even though no director may be independent").

### A. Certification under IAR 12.3 Is Limited to Controlling Questions of Law; It Is Inappropriate for the Plaintiff to Seek Certification of Questions which Are Pure Questions of Law but Are Fact-dependent for their Resolution.

A "controlling question of law" must be a pure question of law, not a mixed question of law and fact or the application of law to a particular set of facts.  Certification is not appropriate for decisions that are highly fact-specific and lack general significance.  *State Farm Mut. Auto Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001). *See Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1101 (7th Cir. 2008) ("Questions of fact that are tied to the specific facts of the case are typically not ideal candidates for certification") (citation omitted)); *Fitzpatrick v. Teleflex, Inc.*, 774 F.Supp.2d 347, 348 (D.Maine 2011) (holding that a question that requires a fact-specific analysis is not appropriate for certification); *Cedar Farm, Harrison County, Inc. v. Louisville Gas and Electric Co.*, 658 F.3d 807, 813 (7th Cir. 2011) ("[F]act specific, particularized decisions that lack broad, general significance re not suitable for certification to a state's highest court.") (citation omitted)); *In re: McNeilus Mfg. Explosion Litigation*, 381 F.Supp.1075, 1080 (D.Minn. 2019) (holding that certification of a jury question would be premature and essentially would ask the state supreme court to issue an advisory opinion); *Matthews v. Sigmon*, No. 03-2600-D, 2004 WL 33315273 (W.D.Tenn. Dec. 14, 2004) (declining to certify a question of fact, not law);  *Brown v. Argosy Gaming Co., L.P.,* No. 02-CV-0209-SEB/WGH, 2003 WL 133266, at *2 (S.D.Ind. 2003) (refusing to certify a question that was "extremely fact-sensitive").

Plaintiff's various questions regarding the adequacy of his derivative demand(s) are dependent on assuming the existence of facts which have not been proven and which are uncertain

or contested.  In order to opine concerning plaintiff's loaded questions, the Idaho Supreme Court would have to speculate whether the evidence in this case will support plaintiff's factual contentions or plaintiff's facile assumption that the AIA board of directors failed to request additional information.  No evidence has been heard regarding whether any requests for clarification were made and, if so, whether the plaintiff bothered to respond.

**B.      Parties Other than a Corporation Have Been Permitted to Challenge the Adequacy of a Derivative Demand under Idaho Law.**

Plaintiff also asks the Court to certify the question of whether defendants other than the corporation may challenge the sufficiency of plaintiff's derivative demand(s).  The Idaho Supreme Court has expressly held in multiple cases that "a defendant's standing 'is not at issue' when evaluating the merits of a defense."  *Stonebrook Const., LLC v. Chase Home Fin., LLC*, 152 Idaho 927, 930, 277 P.3d 374, 377 (2012).

Furthermore, the issue of whether non-corporate defendants in a derivative action can assert as a defense the plaintiff's failure to provide a sufficient shareholder demand appears to be settled in Idaho.  In *McCann I, supra*, one individual shareholder attempted to bring a derivative action against another without first providing a written derivative demand to the corporation's board of directors.  The Idaho Supreme Court affirmed dismissal of the action, stating: "This Court affirms the district court's decision that written demand was not excused in this case and holds that the futility exception no longer applies to the demand requirement as set forth in the statute." *Id.* at 236, 61 P.3d at 594. In *Mannos v. Moss*, 173 Idaho 927, 155 P.3d 1166 (2007), an order granting a non-corporate defendant's motion for summary judgment was upheld in similar circumstances: "[The plaintiff's] futility argument is unavailing.  This Court has determined that the legislative intend in enacting Idaho Code § 30-1-742 was to no longer recognize futility as an exception to the requirement of demand as a condition preceding the institution of a shareholder's derivative

action." *Id.* at 934, 155 P.3d at 1173 (citation and internal quotation marks omitted). And in the related case of *Miesen v. Munding*, 822 Fed. App'x. 546 (9th Cir. 2020) (unreported), *cert. denied*, 141 S.Ct. 1464 (Mem), 209 L.Ed. 2d 181 (2021), which involved the same derivative demand letters that are at issue in the present case, the Court permitted defendant Munding to raise the insufficiency of the derivative demand(s).

**C.** **Certification Is Inappropriate Where Existing State Law Is Sufficiently Clear, although the Specific Facts of the Case May Differ.**

In *Shuler v. Battelle Energy Alliance, LLC*, No. 4:18-CV-002324-CWD, 2019 WL 5295461 (D.Idaho Oct. 18, 2019), the District Court denied the motion to certify on the ground that, while a question concerning Idaho's worker's compensation laws may not have been decided in the same precise factual circumstances, the Idaho Supreme Court had "decided numerous statutory employer cases, and . . . there is a well-developed body of law in this area in Idaho." *Id.* at *5. Consequently, the federal court found that the decision did not call for a "new" or "novel" application of Idaho law, nor did it create an issue of first impression.

Similarly, certification was held inappropriate where the federal court was "not without related Idaho Supreme Court authority on how the Idaho Supreme Court would decide these questions." *Santana v. Zilog, Inc.*, 878 F.Supp. 1373, 1376 (D.Idaho 1995). Certification of a question of law was denied where "faithful application of the statutory canons of the Idaho Supreme Court compels only one conclusion." *Alliance for Property Rights and Fiscal Responsibility v. City of Idaho Falls*, 742 F.3d 1100, 1109 (9th Cir. 2013). Accordingly, the federal court determined that it could "decide this case by applying principles of statutory construction that the Idaho Supreme Court has clearly enunciated." *Id.* Similarly, in *White v. Valley County*, No. 1:09-cv-00494-EJL-CWD, 2012 WL 13018504, at *2 (D.Idaho Aug. 10, 2012), certification was held inappropriate in a case where, "The Court is satisfied that it has sufficient guidance from

HAWLEY TROXELL DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO CERTIFY QUESTIONS OF LAW [Dkt. 1148] - 6

**17-ER-4197**

the Idaho Supreme Court to answer the first question sought to be certified. . . ." The federal court in *Miller v. Four Winds International Corp.*, 827 F.Supp.2d 1175, 1188 (D.Idaho 2011), held that certification of a question was unwarranted where the meaning of an Idaho statute, "although not precisely in the context of the facts of this action," had been previously addressed by the Idaho Supreme Court. Certification was denied in another case where existing Idaho Supreme Court precedent was deemed to be adequate. *Baugh v. Gale Lim Holdings, Inc.,* No. CV-08-321-BLW, 2009 WL 10677832, at *2 (D. Idaho June 10, 2009).

> **D.**     **Only Questions of Law that Are Outcome Determinative and that Would Materially Advance the Orderly Resolution of the Case Should Be Certified to the State Supreme Court.**

The questions posed by the plaintiff in the present case pre-suppose the existence of facts which have yet to be determined. Certification of a question of law is only appropriate where the issue will be dispositive of the case, or at least of some important issue which is novel, unsettled and likely to recur. *Brown v. Argosy Gaming Co., L.P.,* 384 F.3d 413, 418 (7th Cir. 2004). Certification should be limited to questions that are clearly defined and outcome determinative. *Koval v. Simon-Telelect, Inc.*, 979 E. Supp. 1222, 1230, n.6 (N.D. Ind. 1997). Certification is improper where the record "is so lacking in concreteness that to certify plaintiffs' questions of law would merely be to invite our state court colleagues to an exercise in speculation." *Fidler v. Eli Lilly and Co.*, 851 F.2d 418, 427 (D.C. Cir. 1998). *See also Van Patten v. Washington County Sheriff's Office*, No. 3:15-cv-0891-AC, 2017 WL 2815080, at *2 (D.Ore. June 29, 2017) (holding that evidentiary issues are unsuitable for certification because they have only a speculative impact on the underlying case); *Folger v. Medicalodges, Inc.*, No. 13-1203-MLB-KMH, 2013 WL 11374507, at *1 (D.Kan. Dec. 12, 2013) (holding that certification is limited to "only questions which are both unsettled and dispositive"); *Utah, by and through its Div. of Forestry, Fire and*

HAWLEY TROXELL DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO CERTIFY QUESTIONS OF LAW [Dkt. 1148] - 7

*State Lands v. U.S.*, 335 F. Supp. 2d 1319, 1321 (D.Utah 2004) (holding that certification is appropriate only where resolution of the question to be certified is outcome determinative); *Woods v. Nationbuilders*, No. 11-cv-02151-CMA-KMT, 2012 WL 4478948, at *9 (D.Colo., Sep. 27, 2012) (holding that a non-determinative question would not be certified because it would require the state supreme court to render essentially an advisory opinion).

III.   **The Standards for Certifying Issues Concerning the Adverse Domination Doctrine Have Not Been Met.**

   A.   **No Uncertainty Exists; Idaho Code § 5-219(4) and Idaho Case Law Preclude Using the Adverse Domination Doctrine to Toll the Statute of Limitations Regarding Claims against the HT Defendants.**

Idaho Code § 5-219(4) ("5-219(4)") establishes a two-year statute of limitations ("SOL") for professional malpractice claims.  The statute broadly defines "professional malpractice" to encompass any claims for "wrongful acts or omissions in the performance of professional services" by licensed professionals such as attorneys.  It makes no difference how a cause of action is labelled.  *See Nerco Minerals Co. v. Morrison Knudsen Corp.*, 140 Idaho 144, 148, 90 P.3d 894, 898 (2004) (rejecting attempt to plead engineering malpractice as fraud); *Bishop v. Owens*, 152 Idaho 616, 621, 272 P.3d 1247, 1252 (2012).  The focus is "whether the alleged wrongful act or omission occurred in the course of performing professional services."  *Lapham v. Stewart*, 137 Idaho 582, 589, 51 P.3d 396, 403 (2002) (unauthorized disbursement claim against attorney pled as contract claim governed by 5-219(4)).  "Malpractice by any other name still constitutes malpractice."  *Griggs v. Nash*, 116 Idaho 228, 232, 775 P.2d 120, 124 (1989) (damages action resulting from attorney's services is professional malpractice claim regardless of whether predicated in tort or contract).  *See also Greenfield v. Smith*, 162 Idaho 246, 250-51, 395 P.3d 1279, 1283-84 (2017) (rejecting repackaging legal malpractice damage claims as other tort and

contract claims).  All of plaintiff's claims against the HT Defendants arise out of acts or omissions plaintiff alleges occurred regarding legal services provided by the HT Defendants.

However, 5-219(4) goes beyond establishing a two-year SOL.  It also expressly prescribes both (i) when the claims accrued, and (ii) when the SOL is tolled.  The adverse domination doctrine ("ADD") directly contradicts and is precluded by the accrual and limited tolling provisions in 5-219(4).  Because of that conflict, there is no uncertainty whether Idaho would apply the ADD to the claims against the HT Defendants.  It would not.  The Idaho legislature has spoken regarding both accrual and tolling in 5-219(4); and prior Idaho Supreme Court ("ISC") decisions make it clear that tolling doctrines are the exclusive province of the legislature not the courts.

A claim accrues under 5-219(4) at the time of the alleged wrongful occurrence and when there has been some damage.  5-219(4); *e.g., Walsh v. Swapp Law, PLLC,* 166 Idaho 629, 462 P.3d 607 (2020).  The Idaho legislature specifically rejected "discovery" as a basis for either accrual or tolling.  The claim accrues (and the SOL is not tolled) at the time of the alleged wrongful act regardless of whether a plaintiff has "discovered" the alleged wrong or that some damage has occurred.  *Elliott v. Parsons*, 128 Idaho 723, 725, 918 P.2d 592, 594 (1966) (legislature rejected discovery rule; SOL runs even if party has not discovered damage); *Martin v. Clements*, 98 Idaho 906, 907-08, 910, 575 P.2d 885, 886-87, 889 (1978) ("In view of the clear legislative intent of amended I.C. s 5-219(4), we expressly decline to create a new 'discovery' exception for legal malpractice actions."); *Holmes v. Iwasa*, 104 Idaho 179, 182, 657 P.2d 476, 479 (1983) (discovery exception in 5-219(4) is limited to foreign objects and fraudulent concealment).

Idaho's unequivocal rejection of "discovery" as a basis for accrual or tolling compels the conclusion that the ISC would not apply the ADD to toll the SOL regarding claims against the HT Defendants.  Those courts that apply the ADD often refer to it as a "logical extension" of discovery

HAWLEY TROXELL DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO CERTIFY QUESTIONS OF LAW [Dkt. 1148] - 9

tolling. *See, e.g., Cedar Rapids Lodge & Suites, LLC v. JFS Dev., Inc.*, 789 F.3d 821, 824 (8th Cir. 2015) (Iowa recognizes discovery tolling; ADD is its "logical extension."); *Resolution Trust Corp. v. Farmer*, 865 F. Supp. 1143, 1157 (E.D. Pa. 1994) (ADD is "in accord with the essence of Pennsylvania's discovery rule.").[1]   In contrast, if a state has not adopted or has rejected the "discovery" rule, the ADD is not applied. *See, e.g., Resolution Trust Corp. v. Armbruster*, 52 F.3d 748, 752 (8th Cir. 1995) (rejecting ADD because Arkansas did not recognize discovery tolling).

The Idaho legislature not only rejected "discovery" in 5-219(4), it also set forth the only circumstances where the SOL can be tolled: (i) where the defendant has knowingly and fraudulently concealed of the fact of damage; and (ii) a foreign object is left by a healthcare provider.  The fraudulent concealment provision is: "when the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer . . . " 5-219(4).  Courts do not apply the ADD where it is contrary to existing state tolling law.  In *FDIC v. Cocke*, 7 F.3d 396 (4th Cir. 1993), the Fourth Circuit did not apply the ADD because Virginia law regarding tolling (like 5-219(4)) required active concealment of wrongdoing; control of an entity was not enough.  7 F.3d at 402-03.  In *Resolution Trust Corp. v. Armbruster*, the Eighth Circuit concluded the ADD was inconsistent with Arkansas law that required affirmative fraudulent concealment for tolling and, on that basis, rejected it.  52 F.3d 748, 752.  Similarly, in *Resolution Trust Corp. v. Artley*, 28 F.3d 1099, 1102 (11th Cir. 1994), because Georgia law did not provide for tolling based on insiders' control over an entity, the

---

[1] Indeed, in every case cited by plaintiff where a court applying state law applied the ADD, state law provided for either delayed accrual or SOL tolling based on "discovery." *See*  Dkt. 1148-1 ("Pl. Mem.") at 17.

Eleventh Circuit held the ADD could not be used to toll the SOL. The ADD is directly contrary to both the limited fraudulent concealment tolling provision and the accrual provision in 5-219(4).[2]

Lastly, the ISC, recognizing the respective roles of the legislature and the judiciary, has steadfastly declined to erode SOLs through judicially-created tolling doctrines. Its often stated view is "[s]tatutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute." *Wilhelm v. Frampton*, 144 Idaho 147, 149, 158 P.3d 310, 312 (2007) (citing, *Independent Sch. Dist. of Boise City v. Callister*, 97 Idaho 59, 63, 539 P.2d 987, 991 (1975)). In *Wilhelm,* the ISC ruled that, if there is no Idaho statute that tolls the SOL for the particular type of case, then there is no tolling; Idaho courts cannot create tolling exceptions; only the legislature can. *Id.*[3] The Idaho legislature has limited tolling in 5-219(4) to active knowing fraudulent concealment of the fact of damage by a professional defendant.

In sum, 5-219(4) and Idaho case law inexorably lead to the conclusion that Idaho would not apply the ADD to the claims against the HT Defendants. The ADD is contrary to Idaho's rejection of "discovery"; it is contrary to an express provision in 5-219(4) regarding when claims accrue; it is contrary to the tolling provision in 5-219(4) requiring knowing fraudulent concealment; it is contrary to 5-219(4)'s rejection of "continuing relationship" tolling; and

---

[2] The ADD also has been justified based on the insider's ongoing relationship with the entity. But 5-219(4) expressly provides that a continuing relationship does <u>not</u> toll the SOL. ("[T]he limitation period shall not be extended by reason of any … continuing professional or commercial relationship….").

[3] Other ISC decisions holding that SOL tolling doctrines must come from the legislature and will not be judicially created include *Johnson v. Boundary School District # 101*, 138 Idaho 331, 336, 63 P.3d 457, 462 (2003) (SOL tolling must come from expressed language of the statute); and *McCuskey v. Canyon County Commissioners,* 128 Idaho 213, 218, 912 P.2d 100, 105 (1996) ("[C]ourts in this state are constrained from engrafting a discovery procedure on I.C. § 5-224 by the maxim that, '[s]tatutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute.'"). *Accord Noreen v. Price Dev. Co. Ltd. P'ship*, 135 Idaho 816, 821, 25 P.3d 129, 134 (Ct. App. 2001) (no SOL tolling unless provided for in statute).

HAWLEY TROXELL DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO CERTIFY QUESTIONS OF LAW [Dkt. 1148] - 11

engrafting a tolling exception when claims are brought against a licensed professional by or on behalf of an entity allegedly controlled by wrongdoers is directly contrary to ISC precedents that have steadfastly refused to toll SOLs through judicially-created doctrines.

### B. Even Jurisdictions that Apply the ADD Would Not Do So Regarding the Claims against the HT Defendants.

Even those jurisdictions that recognize the ADD are split regarding whether and under what circumstances it should be applied to third parties who are not corporate insiders. For example, in *F.D.I.C. v. Shrader & York*, 991 F.2d 216, 227 (5th Cir. 1993), the Fifth Circuit held the ADD could not be applied to claims against third parties. In a decision discussing the ADD but holding it did not apply, Judge Lodge noted the split of authority regarding whether the ADD can ever be applied against third parties. *Klein v. Capital One Fin. Corp.*, No. 4-10-cv-00629-EJL, 2011 WL 3270438, at *7 (D. Idaho July 29, 2011). And some jurisdictions limit ADD tolling to fraud claims. Plaintiff cites *Resolution Trust Corp. v. Grant*, 901 P.2d 807 (Okla. 1995), claiming the ADD can be used to toll claims against a company's lawyers. Pl. Mem. at 17. That case, decided under Oklahoma law, however, specifically rejected applying the ADD to negligence claims and limited it to fraud claims. The Oklahoma Supreme Court held that ruling otherwise would effectively eliminate the SOL in all cases involving misfeasance by corporate insiders. In Idaho, fraudulent concealment is already addressed in 5-219(4), rendering the ADD superfluous and unnecessary.

Plaintiff also cites *In re American Continental Corp./Lincoln Savings & Loan Securities Litigation*, 794 F. Supp. 1424 (D. Ariz. 1992), claiming it supports applying the ADD to claims against the HT Defendants. Pl. Mem. at 18. In that case, based on a detailed evidentiary showing establishing disputed factual issues regarding whether the attorneys had knowingly assisted in the fraud and the attorneys' ongoing relationship, a trial court held equitable tolling might be

HAWLEY TROXELL DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO CERTIFY QUESTIONS OF LAW [Dkt. 1148] - 12

warranted. *Id.* at 1453. In contrast, here 5-219(4) specifically provides that a continuing relationship does not toll the SOL. Instead, knowing fraudulent concealment by the defendant is required. And the HT Defendants pending summary judgment motion shows they had no involvement in virtually all of the transactions plaintiff now claims were improper. *See* Dkt. 1077-1 (the "HT MSJ") at 18-57. Indeed, the HT Defendants did not even know about most of the transactions when they occurred. *Id.* The ADD would not be applied here even in those jurisdictions that sometimes apply it.

There also is a split of authority regarding the factual showing needed before the ADD can be applied in jurisdictions that recognize it. Some apply the "complete domination" test. Others use the "disinterested majority" test. Under the stricter "complete domination" standard, a plaintiff has the burden of showing full, complete and exclusive control by wrongdoing officers and directors. In *Klein*, Judge Lodge noted the significant evidentiary showing needed if the ADD is applied:

> The test is that 'once the facts giving rise to possible liability are known, the plaintiff must effectively negate the possibility that an informed stockholder or director could have induced the corporation to sue.'

*Klein*, 2011 WL 3270438, at *7 (citing *Mosesian v. Peat, Marwick, Mitchell Co.*, 727 F.2d 873, 879 (9th Cir. 1984)).[4] Also instructive is *Seiden v. Frazer Frost, LLP*, SACV 1800588 CJCK ESX, 2018 WL 6137618 (C.D. Cal. July 31, 2018). There the court held the ADD does not apply where prior litigation publicly disclosed the alleged wrongdoing because the ADD "is predicated

---

[4] *Klein* involved a statutory fraudulent transfer claim. Judge Lodge concluded that Idaho's UFTA extinguishes causes of action filed outside the statutorily specified timeframe. Because ADD tolling would be inconsistent with the claim being extinguished, Judge Lodge ruled the ADD could not be applied. As discussed above, similar reasoning applies here because of the conflict between the ADD and 5-219(4). That may explain why plaintiff made no mention of either 5-219(4) or *Klein* in his motion.

on the discovery rule, and 'the statute of limitations is allowed to run once *someone* has sufficient knowledge and ability to seek redress on the corporation's behalf.'" *Id.* at *7.

There is no question that an AIA shareholder was aware of the insiders' allegedly wrongful conduct more than two years before this lawsuit was filed.  How do we know that?  Because as discussed in the HT MSJ a shareholder, Donna Taylor, submitted a purported derivative demand in July 2008 (the "2008 Demand") complaining about the same transactions—more than two years before this complaint was filed in August 2010.[5]  There is more.  Another litigant, Reed Taylor, claiming to be an AIA Insurance shareholder and creditor filed a public lawsuit in 2007 challenging the same transactions as alleged self-dealing.[6]

In sum, even if the ISC were to ignore 5-219(4) and the ISC's oft-stated refusal to create judicial SOL tolling doctrines, the ADD does not apply to claims like those against the HT Defendants in these circumstances.  As a result, there is no need to obtain a ruling from the ISC; nor would there be any benefit to delaying this case to obtain one.

### C. The HT MSJ Raises Many Dispositive Issues that Do Not Hinge on Whether the ADD Is Applied.

Only a "controlling question of law" can be considered for certification.  I.A.R. 12.3(a).  Many grounds relied upon by the HT Defendants in the HT MSJ have nothing to do with the ADD.  That shows it is not a controlling question of law warranting certification.

The HT MSJ reviews the evidence regarding each transaction for which plaintiff is claiming damages and the multiple reasons any claim against the HT Defendants regarding that

---

[5] The 2008 Demand is dated July 21, 2008.  It is on behalf of both Donna Taylor, the Series A preferred shareholder in AIA, and Reed Taylor, who held a security interest in AIA Insurance stock.  Dkt. 1081-5, Ashby Decl., Ex. 5.  The complaint in this case was filed more than two years later on August 11, 2010.

[6] Reed Taylor was represented in his 2007 lawsuit by Mr. Roderick Bond, the same attorney who now represents plaintiff Miesen in this case.

HAWLEY TROXELL DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO CERTIFY QUESTIONS OF LAW [Dkt. 1148] - 14

transaction should be dismissed regardless of the ADD.  HT MSJ at 18-57.  A few examples are discussed below.

A cornerstone of plaintiff's claims is his contention that the insider defendants usurped an AIA corporate entity to sell crop insurance when they formed a separate company, Crop USA Insurance Agency, Inc. ("CropUSA"), to do so.  The HT MSJ establishes:

- The HT Defendants did not provide any advice or services regarding the incorporation, organization, spinoff, capitalization, ownership structure, governance or operation of CropUSA.  HT MSJ at 20-21.
- AIA lacked the financial resources and licenses needed to sell crop insurance, and the insiders had to personally guarantee CropUSA's loans.  HT MSJ at 21-22.  *See also* Dkt. 1071-1 at 23-24 (the insider-defendants' MSJ).
- Plaintiff and AIA Services' other shareholders were specifically informed in writing in 2001 that CropUSA was a separate company, not an AIA Services subsidiary.  HT MSJ at 26.  *See also* Dkt. 1071-1 at 8, 18.
- Both the publicly-filed 2007 Reed Taylor complaint and the 2008 Demand claimed CropUSA was a wrongfully usurped corporate opportunity.

Based on those facts (which are undisputed), the HT MSJ seeks dismissal of tens of millions of dollars of usurpation-related damage claims on multiple grounds including:  (i) because the HT Defendants were not involved in the launching or operations of CropUSA, they did not provide "substantial assistance," they owed no duty regarding its "spinoff," and nothing they did proximately caused any alleged usurpation-related damages; (ii) because AIA lacked the financial resources and licenses, and the insiders had to personally guarantee CropUSA's loans, CropUSA was not an AIA corporate opportunity; and (iii) plaintiff and AIA Services' shareholders were informed about CropUSA's separate existence nine years before this case was commenced, and because improper usurpation was alleged in the 2007 Reed Taylor complaint and the 2008 Demand, the claims are time-barred regardless of the ADD.  HT MSJ at 22, 26.

HAWLEY TROXELL DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO CERTIFY QUESTIONS OF LAW [Dkt. 1148] - 15

**17-ER-4206**

Another example is a $4.65 million claim (with interest) related to a 2004 stock purchase. AIA purchased from CropUSA certain AIA Services Series C preferred stock at its appraised value. Plaintiff, however, claims the stock was not worth the amount paid. The HT MSJ shows:

- The HT Defendants were not consulted and did not provide any legal advice or services regarding the 2004 Series C stock transaction. HT MSJ at 23-24.
- The HT Defendants were not even aware of the transaction when it occurred. *Id.*
- Both the Reed Taylor 2007 Complaint and the 2008 Demand claimed the same transaction was improper self-dealing.

The HT MSJ establishes that, based on those facts (again undisputed): (i) the HT Defendants did not provide "substantial assistance," they owed no duty regarding the transaction, and there is no proximate cause of alleged damages; and (ii) the claims are barred by the SOL regardless of the ADD. *Id.*

Another example: Hawley Troxell provided an opinion letter that AIA Insurance was authorized to guarantee a line of credit issued to CropUSA by Lancelot Investors (the "Lancelot Opinion"). Plaintiff claims Hawley Troxell was negligent, breached fiduciary duties, and aided and abetted insider fiduciary breaches by issuing the Lancelot Opinion. But what is undisputed is that (i) AIA never paid anything on the Lancelot loan guarantee, and (ii) the guarantee was eliminated two years later. HT MSJ at 27. The HT MSJ establishes that any claims regarding the Lancelot Opinion should be dismissed due to there being no damages. That has nothing to do with the ADD.

Another example: Hawley Troxell successfully defended AIA against Reed Taylor's 2007 lawsuit—extinguishing the company's $8+ million stock redemption liability. *Id.* at 30-31. Plaintiff claims Hawley Troxell had a conflict of interest defending that case. On three separate occasions in two prior lawsuits Judge Brudie (Nez Perce County) specifically ruled that Hawley Troxell had taken all steps and made all disclosures necessary to address any potential conflicts of

interest. *Id.* at 31-33. The HT MSJ establishes that, because AIA prevailed in prior litigation regarding its position that any potential conflicts had appropriately been addressed, judicial estoppel now precludes a derivative plaintiff (who stands in AIA's shoes) from claiming otherwise. *Id.* at 38. Again, that has nothing to do with the ADD.

A final example: Plaintiff at the last minute added a $39.5 million claim seeking to recover the AIA companies' "top line" revenue for the past 20 years.[7] The HT MSJ establishes that (i) AIA received those revenues so they cannot possibly be damages, and (ii) "top line" revenues, as a matter of law, are not the proper measure of compensable damages regarding any claim against the HT Defendants. That also has nothing to do with the ADD.

In sum, the HT MSJ establishes grounds for dismissal of most of plaintiff's claims that do not depend on any ADD issues. The HT MSJ also establishes that the ADD has no application to claims against third parties like the HT Defendants who were not involved in most of the transactions and did not even know most of them occurred, and where the allegedly improper transactions were publicly disclosed years before this derivative action was filed. The ADD therefore is not a "controlling issue of law" that warrants bringing this case to a screeching halt to obtain unneeded input from the ISC at this late juncture.

D.    **Plaintiff's Argument for Certifying Some Unspecified Issue Concerning "Adverse Interest" Makes No Sense.**

Plaintiff briefly argues that an "adverse interest" exception should be applied preventing the insider-defendants' knowledge from being imputed to AIA for SOL purposes. Pl.'s Mem. at 19-20. Regarding the claims against the HT Defendants, however, "knowledge" is irrelevant for SOL purposes. As shown, 5-219(4) specifically rejects "discovery" accrual or tolling. In any

---

[7] This $39.5 million claim for 20 years of AIA's "top line" revenues was added by plaintiff 13 months after the deadline for disclosure of expert reports. *Id.* at 43, n.96.

HAWLEY TROXELL DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO CERTIFY QUESTIONS OF LAW [Dkt. 1148] - 17

event, the ISC has already decided that the knowledge of an agent is imputed to the principal unless the agent is acting solely on his own behalf without benefitting the principal. *See Sulik v. Cent. Valley Farmers, Inc.*, 95 Idaho 826, 828, 521 P.2d 144, 146 (1974).[8] Many transactions plaintiff challenges are ones where there was some benefit to AIA. AIA's successful defense of the prior Reed Taylor case extinguishing an $8+ million creditor liability is one example. AIA's ability to access funds from loans plaintiff claims were improper is another. These are fact-specific driven issues regarding which certification is improper.

### E.   Plaintiff's Motion Is Untimely and Violates Prior Court Orders.

Plaintiff "alternatively" requests that the Court decide any ADD issues (and derivative demand issues) in his favor. That is a dispositive motion. By Court order, plaintiff was required to file any such request eight months ago, by the January 29, 2021 deadline. Dkt. 1024.

Plaintiff's motion is improper for other reasons. The HT MSJ raises SOL defenses and so does the insider defendants' summary judgment motion. In its February 1, 2021 Order, the Court stayed "all briefing" regarding those motions. Dkt. 1089 at 4 ("All briefing … is STAYED until the Court orders briefing to recommence.") Plaintiff also ignored that Order by filing this certification motion.

This motion is untimely for additional reasons. The SOL issues in this case have been present for many years. More than three years ago, the HT Defendants filed an earlier motion for summary judgment (since superseded by the HT MSJ filed as Dkt. 1077) that leaned heavily on

---

[8] Many jurisdictions also have adopted what is called the "sole actor" rule, where an agent's actions will still be imputed, even if it is against the corporation's interests, if the agent and principal are essentially one and the same. *USACM Liquidating Trust v. Deloitte & Touche, LLP*, 764 F. Supp. 2d 1210, 1219 (D. Nev. 2011). The "sole actor" need not be just one person. A board of directors exercising domination and control over an entity (what plaintiff alleges here) is deemed a "sole actor." *In re Scott Acquisition Corp.*, 364 B.R. 562, 569 (Bankr. D. Del. 2007).

HAWLEY TROXELL DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO CERTIFY QUESTIONS OF LAW [Dkt. 1148] - 18

the SOL.  Dkt. 388-1 at 5-8.  Plaintiff successfully argued for Rule 56(f) continuances regarding the HT Defendants' earlier summary judgment motion resulting in dispositive motions being deferred until discovery was over.  *See* Dkts. 408 and 428.  Plaintiff did not suggest back then, or in the three years since then, that there were any SOL/ADD issues that warranted being certified to the ISC.  Yet plaintiff has known for years that SOL defenses would be part of dispositive motion practice.  Instead, plaintiff delayed more than three years before seeking certification.  This eleventh hour motion—seeking to derail for a second time having this Court address the SOL and other defenses—is untimely.  Certification now would unnecessarily further delay this case just when the Court is preparing to address dispositive motions.  Putting the case "on ice" for six to nine months to brief these issues yet again in another forum will not "materially advance the orderly resolution of the litigation" as required by I.A.R. 12.3 (a)(2).  If plaintiff thought certification would be helpful, the time to seek it was during the prior three years before dispositive motions were filed.[9]

DATED this 16th day of September, 2021.

ELAM & BURKE, P.A.

By:    /s/ *Loren C. Ipsen*
       Loren C. Ipsen, Of the Firm
       Joyce A. Hemmer, Of the Firm

BYRNES KELLER CROMWELL LLP

By:    /s/ *Bradley S. Keller*
       Bradley S. Keller, Of the Firm
       Attorneys for Defendants Hawley Troxell
       Ennis & Hawley LLP, Gary D. Babbitt,
       D. John Ashby, and Richard A. Riley

---

[9] It is also worth noting that it was plaintiff who chose a federal forum for what are state law claims. Having chosen a federal forum, plaintiff also chose to have the federal courts address the legal and factual issues in the case.

HAWLEY TROXELL DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO CERTIFY QUESTIONS OF LAW [Dkt. 1148] - 19

**17-ER-4210**

CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of September, 2021, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons via email:

| | |
|---|---|
| Roderick C. Bond<br>rod@roderickbond.com<br>*Attorney for Plaintiff* | Daniel L. Glynn<br>dglynn@idalaw.com<br>*Attorneys for Michael W. Cashman, Sr., R. John Taylor, James Beck, Connie Taylor Henderson, Crop USA Insurance Services, LLC and Crop USA Insurance Agency, Inc.* |
| Andrew M Schwam<br>amschwam@turbonet.com<br>*Attorney for Plaintiff* | Michael S. Bissell<br>mbissell@campbell-bissell.com<br>Tyler S. Waite<br>twaite@campbell-bissell.com<br>*Attorneys for Reed J. Taylor* |
| Alyson A. Foster<br>alyson@dempseyfoster.com<br>William E. Adams<br>bill@weadamslaw.com<br>*Attorneys for Intervenor GemCap Lending I, LLC* | David R. Lombardi<br>drl@givenspursley.com<br>*Discovery Master* |

/s/ *Loren C. Ipsen*
Loren C. Ipsen

HAWLEY TROXELL DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO CERTIFY QUESTIONS OF LAW [Dkt. 1148] - 20

**17-ER-4211**

Jeffrey A. Thomson ISB #3380
jat@elamburke.com
Loren C. Ipsen ISB #1767
lci@elamburke.com
Joyce A. Hemmer ISB #7202
jah@elamburke.com
ELAM & BURKE, P.A.
251 East Front Street, Suite 300
P.O. Box 1539
Boise, Idaho 83701
Telephone:  (208) 343-5454
Facsimile:  (208) 384-5844

Attorneys for Defendants Hawley Troxell Ennis & Hawley LLP,
Gary D. Babbitt, D. John Ashby and Richard A. Riley

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>vs.<br><br>CONNIE TAYLOR HENDERSON, et al.<br><br>Defendants. | Case No.  1:10-cv-00404-DCN<br><br>HAWLEY TROXELL DEFENDANTS' OBJECTION TO PLAINTIFF'S AMENDED REQUEST FOR JUDICIAL NOTICE [DKT. 1153] |

**I.    Plaintiff's request for judicial notice should be denied as untimely.**

Plaintiff's present request for judicial notice, which he filed to support his arguments in opposition to the HT Defendants' motion to dismiss, should be denied as untimely. The HT Defendants filed their motion to dismiss on January 29, 2021. *See* Dkt. 1067. Briefing on the motion to dismiss was stayed until the Court entered an order on July 15, 2021, stating Plaintiff must file a response, if any, to the HT Defendants' motion to dismiss on or before August 6, 2021.

HAWLEY TROXELL DEFENDANTS' OBJECTION TO PLAINTIFF'S AMENDED REQUEST FOR JUDICIAL NOTICE [DKT. 1153] - 1

**17-ER-4212**

*See* Dkt. 1122. Accordingly, Plaintiff filed his response brief on August 6, 2021, and the HT Defendants filed their reply in support of their motion to dismiss on August 20, 2021. *See* Dkts. 1131 & 1138. Plaintiff's present request asks the Court to take judicial notice of certain affidavit statements that Plaintiff contends support his opposition to the motion to dismiss, but Plaintiff did not file this request for judicial notice until September 10, 2021 – more than a month after his deadline to respond to the motion to dismiss. As such, the request for judicial notice is untimely and should be denied.

If the Court is inclined to consider the substance of Plaintiff's arguments, the HT Defendants request the Court's leave (to the extent required) to offer a response as follows.

**II.    Other grounds support denial of Plaintiff's request for judicial notice.**

Plaintiff asks the Court to judicially notice certain portions of John Taylor's affidavit. *See* Dkt. 1053 at 1-2. However, Judge Winmill has previously indicated that it is not appropriate to judicially notice a witness's affidavit testimony. *See Russell v. OneWest Bank FSB*, No. 1:11-CV-00222-BLW, 2011 WL 5025236, at *4 (D. Idaho Oct. 20, 2011) ("The Court cannot take judicial notice of an individual's affidavit …."). Even if it were appropriate under some circumstances to judicially notice affidavit testimony in the manner Plaintiff suggests, it would not be appropriate under the circumstances presented here because the information Plaintiff asks the Court to judicially notice does not support the inference Plaintiff is attempting to promote thereby and the information is not relevant to the issues to be decided in the HT Defendants' motion to dismiss [Dkt. 1067].

Plaintiff argues that portions of John Taylor's affidavit support the inference that AIA's directors "were well aware of the specific transactions and legal action being requested by the July 2[1], 2008 derivative demand letter." Dkt. 1153 at 2. However, even if that inference constitutes a

HAWLEY TROXELL DEFENDANTS' OBJECTION TO PLAINTIFF'S AMENDED REQUEST FOR JUDICIAL NOTICE [DKT. 1153] - 2

true statement, the portions of John Taylor's affidavit that Plaintiff asks the Court to judicially notice do not actually support it. The statements Plaintiff cites make no representations regarding what John Taylor or any other director knew or understood when the July 21, 2008, derivative demand was made, and the Court would have to join Plaintiff in speculating about John Taylor's subjective understanding back in July 2008 in order to reach the conclusion Plaintiff intends to promote through his present request for judicial notice. *See* Dkt. 1072 at ¶¶ 21-22 & 28. The affidavit statements also do not support any inferences regarding John Taylor's subjective knowledge relating to any claims described in the July 21, 2008, derivative demand letter against the HT Defendants. Paragraph 21 of John Taylor's affidavit recites a list of claims at issue in the Fifth Amended Complaint that Reed Taylor filed in a separate action, to which the HT Defendants were not parties [*see* Dkt. 1153-1 at "App. S, p. 17"], and Paragraph 21 does not mention the HT Defendants or the July 21, 2008, derivative demand letter. *See* Dkt. 1153 at 2. Likewise, Paragraph 22 of John Taylor's affidavit notes similarity between the Fifth Amended Complaint in the *Reed Taylor* case (to which the HT Defendants were not parties) and a certain claim in the present action, but makes no reference to the July 21, 2008, demand letter and mentions the HT Defendants merely to assert that John Taylor relied on an opinion letter from the HT Defendants in 2006. *See* Dkt. 1153 at 2; Dkt. 1072 at ¶ 22. Finally, Paragraph 28 of John Taylor's affidavit mentions the July 21, 2008, derivative demand letter and compares its assertions to the allegations in the *Reed Taylor* action, but, again, the HT Defendants were not parties to that action. Dkt. 1153 at 2.

Further, the information Plaintiff wants the Court to judicially notice is irrelevant because the argument Plaintiff seeks to support through judicial notice is legally baseless. Plaintiff's argument that this request for judicial notice is made "for the purpose of further establishing that the AIA Entities' purported directors were well aware of the specific transactions and legal action

HAWLEY TROXELL DEFENDANTS' OBJECTION TO PLAINTIFF'S AMENDED REQUEST FOR JUDICIAL NOTICE [DKT. 1153] - 3

being requested by the July 2[1], 2008, derivative demand letter" [Dkt. 1153 at 1-2] is similar to the argument Plaintiff previously made in his opposition to the motion to dismiss, *i.e.*, that the demand was "not created in a vacuum." Dkt. 1131 at 20-21. As the HT Defendants have previously pointed out, Plaintiff apparently intends this argument to mean that the Court should not look to the form or contents of the written derivative demand itself to determine its sufficiency, but should instead consider extraneous information and speculate regarding the purported knowledge and intent of the board and/or the alleged wrongdoers to fill the gaps and make up for what the demand itself obviously lacks. This argument is contrary to requirements of Idaho Code § 30-29-742 (previously I.C. § 30-1-742) and cases like *McCann v. McCann*, 138 Idaho 228, 61 P.3d 585 (2002), which mandate delivery to the boards of a written demand to take suitable action that contains a statement "showing the wrong complained of, accompanied by sufficient responsible data" and "facts, not mere general charges and conclusions." *McCann* at 235, 61 P.3d at 592. What John Taylor subjectively knew or understood is simply not an element of the analysis regarding whether Plaintiff's derivative demand met the statutory requirements; a director's alleged state of awareness does not relieve Plaintiff of his obligation to provide an adequate pre-suit derivative demand in compliance with Section 742 and binding precedent. The Court should, therefore, decline to take the judicial notice Plaintiff requests here.

DATED this __24th__ day of September, 2021.

ELAM & BURKE, P.A.

By: _____/s/ *Loren C. Ipsen*_____

Loren C. Ipsen, Of the Firm
Joyce A. Hemmer, Of the Firm
Attorneys for Defendants Hawley Troxell Ennis & Hawley LLP, Gary D. Babbitt, D. John Ashby, and Richard A. Riley

HAWLEY TROXELL DEFENDANTS' OBJECTION TO PLAINTIFF'S AMENDED REQUEST FOR JUDICIAL NOTICE [DKT. 1153] - 4

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this ___24th___ day of September, 2021, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons via email:

| | |
|---|---|
| Roderick C. Bond<br>rod@roderickbond.com<br>*Attorney for Plaintiff* | Daniel L. Glynn<br>dglynn@idalaw.com<br>*Attorneys for Michael W. Cashman, Sr., R. John Taylor, James Beck, Connie Taylor Henderson, Crop USA Insurance Services, LLC and Crop USA Insurance Agency, Inc.* |
| Andrew M Schwam<br>amschwam@turbonet.com<br>*Attorney for Plaintiff* | Michael S. Bissell<br>mbissell@campbell-bissell.com<br>Tyler S. Waite<br>twaite@campbell-bissell.com<br>*Attorneys for Reed J. Taylor* |
| Alyson A. Foster<br>alyson@dempseyfoster.com<br>William E. Adams<br>bill@weadamslaw.com<br>*Attorneys for Intervenor GemCap Lending I, LLC* | |

_____/s/ *Loren C. Ipsen*_____
Loren C. Ipsen

4844-3975-0907, v. 1

HAWLEY TROXELL DEFENDANTS' OBJECTION TO PLAINTIFF'S AMENDED REQUEST FOR JUDICIAL NOTICE [DKT. 1153] - 5

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>**v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>PLAINTIFF DALE L. MIESEN'S REPLY IN SUPPPORT OF HIS MOTION TO CERTIFY CONTROLLING QUESTIONS OF LAW TO THE IDAHO SUPREME COURT OR, ALTERNATELY, THAT THIS COURT ANSWER THE QUESTIONS IN MIESEN'S FAVOR IN CONNECTION WITH THE DEFENDANTS' PENDING MOTIONS (Dkt. 1148.) |

REPLY ISO PLAINTIFF'S MOTION TO CERTIFY QUESTIONS (Dkt. 1148) - i

**17-ER-4217**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

> Defendants/Third-Party Plaintiffs,

**v.**

REED TAYLOR, an individual,

> Third-Party Defendant.

REED TAYLOR, an individual,

> Third-Party Defendant/ Counterclaimant,

**v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

> Counterdefendants.

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................... 1

II.  ARGUMENT .............................................................................................................. 1

    A.  This Court Should Certify the Controlling Question of Law to the Idaho Supreme Court Pertaining to the Requirements of Shareholder Derivative Demands Under Idaho Law. .................................................................................. 1

        1.  The Questions Presented by Miesen Are Controlling Questions of Law. .............................................................................................................. 2

        2.  Idaho Law Has Recognized that Only Certain Parties May Avail Themselves of Certain Statutory Defenses. ................................................. 3

        3.  The Existing Law Does Not Address the Questions Miesen Seeks to Have Certified. ....................................................................................... 4

        4.  The Questions Regarding the Derivative Demands Are Outcome Determinative. ........................................................................................... 5

    B.  This Court Should Certify the Question of Whether Idaho Will Recognize the Adverse Domination Doctrine and the Adverse Interest Exception. ...................... 5

        1.  Idaho Appellate Courts Have Never Addressed the Adverse Domination Doctrine. .............................................................................. 5

        2.  The Question Regarding Adverse Interest Exception Should Be Certified. ................................................................................................... 8

    C.  The Defendants' Other So-Called Defenses Are Irrelevant. ................................. 8

    D.  Miesen Did NOT Violate any Court Orders by Filing the Instant Motion. ............ 9

    E.  The Defendants Are the Only Parties Responsible for Any Unnecessary Delays. ................................................................................................................. 10

III.  CONCLUSION ......................................................................................................... 10

CERTIFICATE OF SERVICE ............................................................................................ 11

## I.   <u>INTRODUCTION</u>

Before this Court is Miesen's motion to certify controlling questions of law to the Idaho Supreme Court or, alternatively that this Court answer the questions. (Dkt. 1148.) The HT Defendants oppose the motion, which was joined by other defendants (except GemCap). (Dkts. 1159, 1161.) While Miesen maintains that he established that this Court should certify the questions of law to the Idaho Supreme Court in his original briefing and he stands on that briefing (Dkt. 1148-1 at 4-23[1]), Miesen will nevertheless address certain arguments with the limited space available and without conceding any arguments by not addressing them. In short, the hotly disputed briefing on the questions simply confirms that "[c]ertification of [the] open questions of state law to the state supreme court can 'in the long run save time, energy, and resources and helps build a cooperative judicial federalism.'" *Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008). In addition, since Miesen is requesting permission to appeal the orders excluding McDermott, finality and judicial economy would be best served by granting certification and allowing both appeals to be simultaneously adjudicated. Thus, this Court should grant the motion.

## II.   <u>ARGUMENT</u>

### A.  <u>This Court Should Certify the Controlling Question of Law to the Idaho Supreme Court Pertaining to the Requirements of Shareholder Derivative Demands Under Idaho Law.</u>

Miesen maintains that the four questions of law regarding derivative demands should be certified to the Idaho Supreme Court. (Dkt. 1148-1 at 6-18.) The defendants oppose certification of any of the questions. (Dkt. 1159 at 3-8.) While this Court should reject their arguments for the reasons asserted in Miesen's motion, he will address certain of the arguments in the order asserted.

The defendants argue that *McCann v. McCann*, 138 Idaho 228, 61 P.3d 585 (2002) "does not condition its application on whether the plaintiff considers the board of directors 'lawfully

---

[1] When citing to dockets, Miesen will cite to the blue, file-stamped page numbers at the top of each page.

REPLY ISO PLAINTIFF'S MOTION TO CERTIFY QUESTIONS (Dkt. 1148) - 1

**17-ER-4220**

functioning' or 'concealing virtually all matters from shareholders.'" (Dkt. 1159 at 3.) That is because the Idaho Supreme Court was not presented with those questions or the other questions Miesen is seeking to have answered regarding derivative demands. (Dkt. 1148-1 at 6-18.)

### 1. The Questions Presented by Miesen Are Controlling Questions of Law.

The defendants argue that certification is reserved solely for questions of law and Miesen's questions regarding the derivative demands should not be certified because the alleged facts are disputed. (Dkt. 1159 at 4-5.) While Miesen agrees that questions of law should be certified, he disagrees that the key facts are in dispute. In support of Miesen's motion, he relied upon the facts alleged in the verified Third Amended Complaint. (Dkt. 211.) The defendants had an opportunity to submit facts opposing the facts in the verified Third Amended Complaint, but they failed to do so. This is because the critical facts regarding improper corporate governance in the Third Amended Complaint are undisputable, including the facts alleged in Miesen's motion. As to the defendants' arguments that there was no evidence regarding any "requests for clarification" of any of the derivative demands, the verified Third Amended Complaint specifically asserted that no such requests were ever made and that the only letter ever received was from John Taylor through which no clarifications or additional information were requested. (Dkt. 211 at ¶¶ 171-82; *see also* Dkt. 1131-7 (John Taylor's one and only unauthorized response letter).) The defendants also disingenuously forget to mention or address Judge Dale's undisputed findings:

> To argue that Miesen could have attempted to clarify his allegations is disingenuous, considering AIA itself did not ask for clarifications. Because no follow up was requested by AIA, Miesen was left with no alternative, other than to file suit.

(Dkt. 210 at 16.) Notably, over a decade after the first derivative demand was made in July 2008, Miesen was able to discover in that the HT Defendants had already been aware of their tortious conduct as they had researched issues surrounding the claims in the instant lawsuit months before

REPLY ISO PLAINTIFF'S MOTION TO CERTIFY QUESTIONS (Dkt. 1148) - 2

the 2008 derivative demand was made.[2] (Dkts. 783-24–27.) They were well aware of their torts.

By way of another example, the defendants could not present evidence to dispute Miesen's facts because no such evidence exists. Just like no evidence exists to dispute that the only shareholder meeting held since the first 2008 demand was the one held to attempt to effectuate an unlawful reverse stock split to eliminate the standing of Miesen and other shareholders here—which Miesen and other innocent shareholders successfully opposed and defeated a lawsuit brought to force that unlawful split. (Dkt. 211 at ¶¶ 127-31, 137, 150, 164.) Indeed, the HT Defendants were involved and know well that no proper shareholder meetings were even held and no boards of directors were properly elected or seated. (*See generally* Dkt. 211.) In sum, the defendants had an opportunity to contest the facts and they failed to do so—because they couldn't.

### 2. Idaho Law Has Recognized that Only Certain Parties May Avail Themselves of Certain Statutory Defenses.

Miesen maintains that this Court should certify the question of whether any parties other than the corporation may challenge the adequacy of derivative demands. (Dkt. 1148-1 at 12-15.) The defendants argue that "standing" is not the issue and argue that other courts have permitted third parties to challenge the adequacy of derivative demands. (Dkt. 1159 at 5-6.) Their arguments are, once again, without merit. The label is irrelevant. Either a party can or cannot assert a defense.

As Miesen pointed out is his moving papers, the Idaho Supreme Court has already held that certain parties may not avail themselves of statutory protections as defenses. (Dkt. 1148-1 at 14-15 (citing *Taylor v. AIA Servs. Corp.*, 151 Idaho 552, 564, 261 P.3d 829, 841 (2011) and *La Voy Supply Co. v. Young*, 84 Idaho 120, 127, 369 P.2d 45, 49 (1962)). The label placed on a party's

---

[2] For example, the HT Defendants' billing records which were disclosed for the first time in December 2019 state: "LEGAL RESEARCH RE OUTSIDE COUNSEL'S DUTIES TO SHAREHOLDERS; CONFERENCE WITH COUNSEL RE SAME," Dkt. 783-26 at 93 (2/7/08 billing entry), "RESEARCH ON OUTSIDE COUNSEL AND LIABILITY FOR NOT BRINGING CLAIMS AGAINST DIRECTORS," Dkt. 783-26 at 118 (4/1/08 billing entry), and "EXTENSIVE RESEARCH ON OUTSIDE COUNSEL AND POTENTIAL LIABILITY WHEN TRYING TO REPRESENT BOTH CORPORATION AND DIRECTORS." (Dkt. 783-25 at 73 (4/2/08 billing entry).)

REPLY ISO PLAINTIFF'S MOTION TO CERTIFY QUESTIONS (Dkt. 1148) - 3

inability to assert a statutory defense is irrelevant. The defendants avoid this distinction.

Whether the label is one of standing, the right to challenge and/or whether a party is an intended beneficiary of I.C. §§ 30-1-742 and 30-29-742, the questions presented here were never addressed in *Mannos v. Moss*, 173 Idaho 927, 155 P.3d 1166 (2007), *McCann v. McCann*, 138 Idaho 228, 61 P.3d 585 (2002) or *Miesen v. Munding*, 822 Fed. App'x. 546 (9th Cir. 2020). As to the decisions in *Miesen v. Munding*, the defendants were provided with all of the briefing and decisions before the trial court and on appeal in that lawsuit—they were well aware that the questions being requested to certified were never asserted or addressed by the parties or the courts. (9/30/21 Bond Decl. ¶ 2; 2018 WL 6980990; 2019 WL 7187013; 2020 WL 1236207; 2020 WL 7773882; Dkts. 1131-14, 1131-15.) Yet, they advanced their disingenuous arguments anyway.

In sum, there are no Idaho appellate court decisions which have addressed any of the questions presented in the instant motion regarding derivative demands, including the issue of whether the defendants have standing, the right to challenge the adequacy of the derivative demands and/or whether parties other than the corporation are intended beneficiaries of I.C. §§ 30-1-742 and 30-29-742 to assert a defense based on the adequacy of the derivative demands.

**3. The Existing Law Does Not Address the Questions Miesen Seeks to Have Certified.**

Without citing to any existing Idaho appellate court decisions which addresses the questions Miesen is requesting to have certified, the defendants argue that certification is inappropriate where existing law is sufficiently clear. (Dkt. 1159 at 6-7.) Once again, their arguments are without merit. In his moving papers, Miesen asserted that the Idaho Supreme Court has never addressed the questions to be certified. (Dkt. 1148-1 at 6-18.) In response, the defendants failed to submit any Idaho appellate decisions which address or answer any of the questions regarding derivative demands. (Dkt. 1159 at 4-8.) This is because Idaho appellate courts have never passed upon or spoken to the questions sought to be certified, as established by Miesen.

REPLY ISO PLAINTIFF'S MOTION TO CERTIFY QUESTIONS (Dkt. 1148) - 4

**17-ER-4223**

#### 4. The Questions Regarding the Derivative Demands Are Outcome Determinative.

The defendants argue that Miesen's questions presuppose the facts which have not been determined and they are not first impression or outcome determinative questions. (Dkt. 1159 at 7-8.) As Miesen already established above, the pertinent facts are undisputed. Miesen's verified Third Amended Complaint has not been challenged by the defendants and they have not presented any evidence to dispute any of the facts asserted in Miesen's motion. In addition, the defendants are requesting that all of Miesen's derivative claims be dismissed through their motion. (Dkt. 1067-1.) There can be no more of a dispositive and determinative request than that. While Miesen maintains that Judge Boyle and Judge Dale have already properly rejected the defendants' arguments (*e.g.,* Dkt. 1131 at 5-6, 11-15), if any of the four questions are answered in Miesen's favor, that would be the death knell for any appeal by the defendants and it would definitively resolve the questions and prevent the defendants from appealing Judge Bole and Judge Dale's decisions denying prior challenges to the derivative demands. Notably, the defendants do not address certain of the questions and provide no viable reasons why certification is not proper for those questions. Thus, the four questions are ripe and appropriate for certification to appeal.

#### B. This Court Should Certify the Question of Whether Idaho Will Recognize the Adverse Domination Doctrine and the Adverse Interest Exception.

Miesen also maintains that this Court should certify the questions of whether the Idaho Supreme Court would adopt the adverse domination doctrine and the adverse interest exceptions, just as Idaho's sister state Oregon has done. (Dkt. 1148-1 at 18-23.) The defendants oppose certification of this question and devote most of their response to that opposition. (Dkt. 1159 at 8-18.) Their arguments are without merit and Miesen will briefly address each in turn.

#### 1. Idaho Appellate Courts Have Never Addressed the Adverse Domination Doctrine.

The defendants exhaustively argue that the there is no uncertainty in the law, that Idaho has rejected "discovery" as a basis to toll or prevent the claims from accruing and the doctrine

REPLY ISO PLAINTIFF'S MOTION TO CERTIFY QUESTIONS (Dkt. 1148) - 5

would not be extended to third parties such as attorneys. (Dkt. 1159 at 8-14.) The defendants' arguments merely illustrate why it appropriate to certify the question to the Idaho Supreme Court because the adverse domination doctrine has never been passed upon or addressed by the Idaho Supreme Court or any Idaho appellate court. The defendants' arguments are also without merit for the reasons originally asserted by Miesen and for the following reasons.

The adverse domination doctrine is consistent with Idaho law. Contrary to the defendants' arguments, Idaho recognizes a "discovery" component for legal malpractice claims against attorneys and claims against directors and shareholders. *See, e.g.,* I.C. §§ 5-219(4)[3] and 5-237;[4] *Walsh v. Swapp Law, PLLC*, 166 Idaho 629, 639, 462 P.3d 607, 617 (2020) ("Discovery of the events comprising the underlying malpractice for purposes of commencing the statute of limitations is a factual question for the jury 'unless there is no evidence creating a question of fact.'"); *Ryan v. Old Veteran Mining Co.*, 37 Idaho 625, 218 P. 381 (1923).

The adverse domination doctrine is also consistent with Idaho's rule that there must be *objective proof* of "some damage" before legal malpractice claims accrue. *See, e.g., Minnick v. Hawley Troxell Ennis and Hawley, LLP*, 157 Idaho 863, 341 P.3d 580 (2015) ("The statute's accrual standard operates under a completed tort theory in that the cause of action accrues when the tort is completed, an event that corresponds with the first objectively ascertainable occurrence of some damage"); *City of McCall v. Buxton*, 146 Idaho 656, 663, 201 P.3d 629, 636 (2009) ("the existence or effect of any alleged negligence on the part of the City's Attorneys regarding their

---

[3] I.C. § 5-219(4) provides in part: "…when the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party, the same shall be deemed to accrue when the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of…"

[4] I.C. § 5-237 provides "This chapter does not affect actions against directors or stockholders of a corporation to recover a penalty or forfeiture imposed, or to enforce a liability created by law; but such actions must be brought within three (3) years after the discovery by the aggrieved party of the facts upon which the penalty or forfeiture attached, or the liability was created."

REPLY ISO PLAINTIFF'S MOTION TO CERTIFY QUESTIONS (Dkt. 1148) - 6

**17-ER-4225**

legal advice and strategy depended upon the outcome of the litigation against the City by Wausau and St. Clair. There would not be objective proof of actual damage until that occurred.").

In the instant case, there would be no "objective" proof of some damages while the guilty insiders are in control of the corporations. They are unable to be "objective." The Idaho Supreme Court has already stated that knowledge is not imputed until independent counsel provides advice or when there is no lawful agency (both of which are present here). (*See generally* Dkt. 211.) *Walsh v. Swapp Law, PLLC*, 166 Idaho 629, 639, 462 P.3d 607, 617 (2020) (holding that, for purposes of the statute of limitations for a legal malpractice claim, the attorney's "knowledge or beliefs should not have been imputed to [the client] until" independent counsel began representing the client); *Humphries v. Becker*, 159 Idaho 728, 736, 366 P.3d 1088, 1096 (2016) ("Because no agency existed, such imputation would be improper.").

While the defendants attempt to distinguish certain cases and argue why they do not believe Idaho would adopt the doctrine or would not extend it to third parties such as attorneys (Dkt. 1159 at 8-14), their arguments merely illustrate why this Court should certify the question to be conclusively decided by the Idaho Supreme Court. Indeed, the HT Defendants should prefer to have the adverse domination doctrine apply rather than the fraudulent concealment provision under § 5-219(4), which would likely result in the HT Defendants' insurer declining coverage. In addition, contrary to the defendants' arguments (Dkt. 1159 at 13-14), the undisputed facts of this case demonstrate that the unlawful control was maintained under either version of the adverse domination doctrine (Dkt. 211 (verified Third Amended Complaint)), and, in fact, the control and unlawful activities continued and accelerated after this lawsuit was filed in 2010. (Dkts. 1, 211.) The defendants do not dispute any facts asserted by Miesen by providing any evidence.

Thus, contrary to the defendants' arguments, the adverse domination doctrine fits squarely

REPLY ISO PLAINTIFF'S MOTION TO CERTIFY QUESTIONS (Dkt. 1148) - 7

within Idaho law. Moreover, as Miesen asserted in his moving papers, the doctrine is based on estoppel and Idaho has adopted virtually every type of estoppel. (Dkt. 1148-1 at 21-22.) This Court should certify the question to the Idaho Supreme Court to obtain the definitive answer.

### 2. The Question Regarding Adverse Interest Exception Should Be Certified.

Miesen maintains that adopting the adverse interest exception should be certified. (Dkt. 1148-1 at 22-23.) The defendants argue that that "'knowledge' is irrelevant and that they will prevail on certain matters. (Dkt. 1159 at 17-18.) They are wrong. Idaho has addressed the significance of when or if knowledge is imputed. *Walsh*, 166 Idaho at 639, 462 P.3d at 617 (the attorney's "knowledge or beliefs should not have been imputed to [the client] until" independent counsel began representing the client); *Humphries*, 159 Idaho at 736, 366 P.3d at 1096 ("Because no agency existed, such imputation would be improper."). The HT Defendants arguments that this did nothing wrong is disingenuous and unsupported. They wasted almost $1 million to defend the AIA Entities when they were prohibited from challenging the redemption; John Taylor and Henderson prevailed on the defense—not the AIA Entities. (*E.g.,* Dkts. 211, 1099-1 at 675-94.) *Taylor*, 151 Idaho at 564, 261 P.3d at 841; *La Voy Supply Co.*, 84 Idaho at 127, 369 P.2d at 49. They argue certain damages were belated, which is unsupported. (Dkt. 1159 at 17 n. 7.)

### C. The Defendants' Other So-Called Defenses Are Irrelevant.

The defendants argue that they have other dispositive defenses. (Dkt. 14-17.) Those arguments are irrelevant to the instant motion and without merit. Fed. R. Evid. 401-403. For example, John Taylor testified that the transactions addressed were at issue in litigation that the HT Defendants were purportedly representing the AIA Entities. (*E.g.,* Dkt. 1152 at 4-5.) Thus, the HT Defendants are wrong on that basis alone. The revenues as damages simply places the burden on the defendants to prove that the use of the funds was authorized and legal. Miesen is not stating that every dollar is damages. He merely listed them. (Dkt. 1099-1 at 313-14 at ¶ 23; at 665.) By

REPLY ISO PLAINTIFF'S MOTION TO CERTIFY QUESTIONS (Dkt. 1148) - 8

way of another example, the defendants argue that judicial estoppel applies. (Dkt. 1159 at 17.) But they rely upon Idaho law (which does not apply), they fail to address and prove all three elements, the issues are different here, and the argument is nonsensical because Miesen did not take any positions (he was not in privity) and neither did the AIA Entities because they were unlawfully controlled. (*See generally* Dkt. 211, 1148-1 at 21-22.) *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 604 (9th Cir. 1996) (federal law governs judicial estoppel); *New Hampshire v. Maine*, 532 U.S. 742 (2001) (listing the three elements which must be proven). At summary judgment, Miesen will establish that the other arguments are equally without merit, but these irrelevant issues are not before this Court. This motion to certify is the only issue before this Court.

**D.  Miesen Did NOT Violate any Court Orders by Filing the Instant Motion.**

Miesen maintains that, if this Court does not certify the questions, it must predict how the Idaho Supreme Court would decide them. (Dkt. 1148-1 at 23. The HT Defendants argue (joined by Mr. Glynn's clients) that Miesen's motion violates this Court's order staying briefing on the pending motions for summary judgment. (Dkt. 1159 at 18-19, 1161 at 2-3.)

This Court did not enter an order prohibiting any of the parties from filing a motion to have questions certified to the Idaho Supreme Court. (Dkts. 1089, 1122.) While Miesen maintains that he should prevail on the pending motions, Miesen was required to file the instant motion before this Court renders its decisions on those pending motions. *Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008) ("There is a presumption against certifying a question to a state supreme court after the federal district court has issued a decision."); *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013) (the Ninth Circuit has "long looked with disfavor upon motions to certify that are filed after the moving party has failed to avail itself of a prior opportunity to seek certification.").

If this Court declines to certify the questions to the Idaho Supreme Court, Miesen merely pointed out the obvious that this Court will need to decide the questions. *Gravquick A/S v. Trimble*

REPLY ISO PLAINTIFF'S MOTION TO CERTIFY QUESTIONS (Dkt. 1148) - 9

*Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003) ("the [Court] must predict how the [Idaho] Supreme Court would decide the issue, using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids.") (alterations added). As to the pending motion to dismiss (Dkt. 1067), Miesen's arguments are consistent with the arguments in his Response and the questions were framed from that Response. (Dkt. 1131.) As to the pending motions for summary judgment (Dkts. 1071, 1077), Miesen will assert the adverse domination doctrine and adverse interest exception in opposition to the motions at such time as this Court schedules briefing. However, these questions should all be certified now for judicial economy and to definitively obtain the answers to the questions to materially advance this litigation.

Thus, there was nothing improper about Miesen filing the instant motion or his alternative request that this Court decide the questions in his favor. Miesen was simply following the law.

### E.   The Defendants Are the Only Parties Responsible for Any Unnecessary Delays.

The defendants disingenuously argue that certifying the questions would result in delay. (Dkt. 1159 at 19.) First, the defendants were solely responsible for delaying the instant case for over five years based on disingenuously asserting that the *Colorado River* stay was proper, when, as the Ninth Circuit held, there were no parallel lawsuits (Miesen asserts that the defendants' briefing and positions should be scrutinized for that reason alone). (Dkts. 82. 84, 105.) Second, the defendants disregard the fact that any appeal "shall follow an expedited schedule." I.A.R. 12.3(c). Third, a short delay will be immaterial and well worth definitively resolving the questions and potentially prevent this Court from having to address hundreds of pages of documents and briefing. Finally, if Miesen is permitted to appeal the orders excluding McDermott (Dkts. 1135, 1140), the appeal for the instant motion could be efficiently simultaneously adjudicated.

### III.   CONCLUSION

This Court should certify the questions or decide them in Miesen's favor.

REPLY ISO PLAINTIFF'S MOTION TO CERTIFY QUESTIONS (Dkt. 1148) - 10

**17-ER-4229**

DATED:  This 30th day of September 2021.

RODERICK BOND LAW OFFICE, PLLC

By:   */s/ Roderick C. Bond*
      Roderick C. Bond
      Attorney for the Plaintiff Dale L. Miesen

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 30th day of September 2021, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:    jat@elamburke.com
Loren C. Ipsen:    lci@elamburke.com
Joyce A. Hemmer:    jah@elamburke.com
Bradley S. Keller:    bkeller@byrneskeller.com
Alyson A. Foster:    alyson@dempseyfoster.com
William E. Adams:    bill@weadamslaw.com
Tyler S. Waite:    twaite@campbell-bissell.com
Michael S. Bissell:    mbissell@campbell-bissell.com
Daniel L. Glynn:    dglynn@idalaw.com
Andrew Schwam:    amschwam@turbonet.com

*/s/ Roderick C. Bond*
Roderick C. Bond

REPLY ISO PLAINTIFF'S MOTION TO CERTIFY QUESTIONS (Dkt. 1148) - 11

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>**v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>PLAINTIFF DALE L. MIESEN'S OBJECTIONS TO STIPULATION (Dkt. 1166) AND PROPOSED ORDER AND JUDGMENT |

OBJECTIONS TO STIPULATION (Dkt. 1166) AND ORDER AND JUDGMENT - i

17-ER-4231

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

    Defendants/Third-Party Plaintiffs,

   v.

REED TAYLOR, an individual,

    Third-Party Defendant.

REED TAYLOR, an individual,

    Third-Party Defendant/ Counterclaimant,

   v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

    Counterdefendants.

OBJECTIONS TO STIPULATION (Dkt. 1166) AND ORDER AND JUDGMENT - ii

**17-ER-4232**

**17-ER-4233**

## TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................. 1

II.    ARGUMENT......................................................................................................... 3

     A.     The Stipulation, Order and Any Judgment Is Void as to the AIA Entities Because the Stipulation Was Not Approved and Signed by Counsel Representing the AIA Entities. ............................................................................ 3

     B.     John Taylor Has NO Authority to Bind the AIA Entities to Any Settlement or Stipulation. ........................................................................................................ 6

     C.     Any Settlement Agreements and All Settlement Terms Involving the AIA Entities Must Be Fully Disclosed and Approved in Accordance with Rule 23.1 and I.C. § 30-29-745. .................................................................................. 11

     D.     Assuming the Stipulation Was Enforceable as to the AIA Entities, the Judgment Should Not Be Certified Under Rule 54(b)......................................... 12

III.   CONCLUSION.................................................................................................... 13

CERTIFICATE OF SERVICE ........................................................................................ 14

OBJECTIONS TO STIPULATION (Dkt. 1166) AND ORDER AND JUDGMENT - iii

**17-ER-4233**

## I.    **INTRODUCTION**

Despite this Court's prior ruling in a related lawsuit that John Taylor had no unilateral authority to settle any legal disputes for corporations under Idaho law,[1] before this Court is a unilateral stipulation and proposed order and judgment seeking a dismissal with prejudice of the crossclaims asserted by GemCap and the counter crossclaims asserted by the AIA Entities and the CropUSA Entities, John Taylor, James Beck, and Michael Cashman (collectively the "Glynn Group") against GemCap. (Dkt. 1166; 10/5/21 Bond Decl. Ex. B-C.) That stipulation was unilaterally signed by John Taylor as "President of AIA Services Corporation and AIA Insurance," Dkt. 1166 at 3, without any disclosure or approval by a duly elected and fully seated boards of directors for the AIA Entities, and without disclosure of the settlement agreement and approval by AIA Services' shareholders (including Miesen). While it is possible that the terms of settlement between GemCap and the AIA Entities may ultimately be acceptable, the stipulation was not signed by an attorney representing the AIA Entities and thus the stipulation and proposed order and judgment are void as to the AIA Entities. In short, John Taylor has no authority to unilaterally bind the AIA Entities to any settlement or the stipulation—let alone do anything on behalf of the AIA Entities. John Taylor has been a rogue director and officer for decades. (*See* Dkt. 211.)

Indeed, despite this lawsuit being filed over eleven years ago alleging improper corporate governance and unauthorized transactions (including failing to properly elect and fully seat the AIA Entities' boards and having them unlawfully guaranteeing loans for CropUSA) (Dkt. 1), John Taylor, other rogue insiders (including Beck and Henderson), and GemCap flagrantly had the AIA Entities unlawfully guarantee yet another loan for the CropUSA Entities—a $10 million loan unlawfully guaranteed by the AIA Entities in violation of the articles of incorporation and bylaws

---

[1] *Weskan Agency, LLC v. CGB Diversified Servs., Inc.*, No. 2:18-cv-00356-DCN, 2019 WL 1450527, at *3 (D. Idaho Mar. 31, 2019).

OBJECTIONS TO STIPULATION (Dkt. 1166) AND ORDER AND JUDGMENT - 1

and without proper approval or disclosure to shareholders (which occurred while this lawsuit was stayed). (*E.g.,* Dkt. 211 at ¶¶ 135-45; 156 at 8-16.) GemCap brazenly elected to proceed with the AIA Entities' unlawful guarantees even after it conducted litigation searches through which GemCap obtained a copy of the First Amended Complaint in this lawsuit and Reed Taylor's Fifth Amended Complaint in another lawsuit—both of which alleged improper corporate governance and unlawful loan guarantees. (*E.g.,* Dkt. 563-25 at 95, 105, 114, 117, 128, 157, 162, 172, 178.) To make matters worse, after the CropUSA Entities failed to pay the $10 million loan and GemCap filed suit against the CropUSA Entities, the AIA Entities, John Taylor and others in California federal court (Dkts. 440-1, 440-2), GemCap had John Taylor unilaterally purport to authorize the AIA Entities to enter into an over $12 million settlement agreement in violation of the articles of incorporation and bylaws and without proper board or shareholder approval (not to mention concealing the settlement from shareholders)—even though Miesen's counsel had repeatedly emailed GemCap's counsel advising them that the AIA Entities had no authority to enter into the settlement agreement and that it violated the articles. *(E.g.,* Dkts. 211 at ¶¶ 146-56; 128 at 21-48; 156 at 8-16; 449-7; 449-8; 449-10.) In other words, GemCap and the Glynn Group are blatantly repeating the same unlawful conduct which led to GemCap being named as a defendant in this lawsuit in the first place and additional claims asserted against the Glynn Group by Miesen.

For the reasons stated below, the stipulation and the proposed order and judgment are void as to the AIA Entities because the stipulation was never approved and signed by counsel for the AIA Entities. Moreover, even if the AIA Entities had counsel approve and sign the stipulation, John Taylor has no authority to unilaterally bind the AIA Entities to any settlement or stipulation and any settlement involving the AIA Entities must comply with Rule 23.1(c) and I.C. § 30-29-745. Lastly, irrespective of the lack of authority, this Court should not enter a Rule 54(b) judgment.

OBJECTIONS TO STIPULATION (Dkt. 1166) AND ORDER AND JUDGMENT - 2

## II.    ARGUMENT

### A.   The Stipulation, Order and Any Judgment Is Void as to the AIA Entities Because the Stipulation Was Not Approved and Signed by Counsel Representing the AIA Entities.

GemCap and the Glynn Group have submitted a stipulation seeking dismissal of, *inter alia*, certain crossclaims asserted against and on behalf of the AIA Entities, which was signed by John Taylor as "President of AIA Services Corporation and AIA Insurance." (Dkt. 1166 at 3.) While it is possible that the settlement and dismissal of the crossclaims may be beneficial to the AIA Entities, it must be done correctly and lawfully. For the reasons explained below, the stipulation and the proposed order and judgment (which were never provided to Miesen's counsel for prior approval) are void as to the AIA Entities because the stipulation was not signed by counsel for the AIA Entities. (Dkt. 1166; 10/5/21 Bond Decl. ¶ 3, Ex. A-C.)

While "[w]ritten stipulations are binding on the parties when approved by the Court," Dist. Idaho Loc. Civ. R. 7.3, it is well-settled that "that corporate agents who appear on the behalf of corporations in federal courts must be attorneys and not directors, officers or shareholders of the corporation." *Sermor, Inc. v. U.S.*, 13 Cl. Ct. 1, 5 (Fed. Cir. 1987) (citations omitted) (collecting cases); *see U.S. v. High Country Broad. Co., Inc.*, 3 F.3d 1244, 1245 (9th Cir. 1993) ("A corporation may appear in federal court only through licensed counsel…the district court entered a default judgment against it; this was perfectly appropriate.").

A stipulation or consent judgment authorized by an officer or director on behalf of a *pro se* corporation is void. *S.E.C. v. Terminus Energy, Inc.*, Case No. 17cv1117, 2019 WL 1570599, at *1-4 (S.D.N.Y. April 11, 2019) (rejecting a consent decree because the corporation was not represented by an attorney); *Glock, Inc. v. Maxsell Corp.*, Case No.: 4:12-CV-0113-HLM, 2013 WL 12107794, at *5-6 (N.D. Ga. April 18, 2013) (holding that a corporation's president has no authority to stipulate to a consent judgment because the corporation may only proceed through an

OBJECTIONS TO STIPULATION (Dkt. 1166) AND ORDER AND JUDGMENT - 3

attorney and that "the Consent Judgment is unenforceable as a matter of law."); *Grace v. Bank Leumi Trust Co. of NY*, 443 F.3d 180, 191-93 (2d Cir. 2006) (affirming the trial court's ruling that a "'corporation cannot execute a stipulation of settlement while appearing pro se in a federal court'"); *Grace v. Rosenstock*, No. 85-CV-2039 (DGT), 2004 WL 5840881, at \*6 (E.D.N.Y. Sept. 30, 2004) ("A corporation cannot execute a stipulation of settlement while appearing pro se in federal court, and a stipulation executed without an attorney is a nullity."), *aff'd*, 443 F.3d 180.

For example, in *Grace v. Leumi Trust Co.*, the Second Circuit affirmed the trial court's ruling that a stipulation signed by an officer/director of a *pro se* corporation was void, explaining:

> Attorneys do not exist merely to act as information conduits or to communicate with opposing counsel. Rather, they inform, advise, counsel, explain matters of law, and do much more. It is impossible to know what role an attorney for [the corporation] would have played, but it is likely that she would have played some role in the negotiation beyond simply passing along information to plaintiffs, especially considering that [the officer/director] and [the corporation] had conflicting interests.

443 F.3d at 192 (alterations added).

Here, the AIA Entities cannot enter into the stipulation or authorize entry of the proposed order and judgment because the stipulation was not approved and signed by the AIA Entities' independent counsel.[2] (Dkt. 1166.) Instead, the stipulation was unilaterally signed by John Taylor as the purported "President of AIA Services Corporation and AIA Insurance." (Dkt. 1166 at 3.) The stipulation was not signed or approved by independent counsel for the AIA Entities and even bankrupt corporations have been required to have counsel approve and sign a stipulation as a condition of its validity. *Grace*, 443 F.3d at 192-93. Thus, the stipulation is void and the proposed order and judgment sought to be entered would also be void. (10/5/21 Bond Decl. Ex. B-C.)

---

[2] In fact, this Court ordered the AIA Entities to retain counsel over two years ago to no avail. (Dkt. 691.) Yet, rather than retaining independent counsel for the AIA Entities, John Taylor has been improperly using the AIA Entities' funds to pay the Glynn Group's attorneys' fees, and without seeking or obtaining the required shareholder approval. (*E.g.*, Dkt. 901-4.)

OBJECTIONS TO STIPULATION (Dkt. 1166) AND ORDER AND JUDGMENT - 4

**17-ER-4237**

To the extent that GemCap or the Glynn Group attempts to argue that John Taylor is an attorney and thus he can execute the stipulation, they are incorrect. John Taylor has not filed a notice of appearance to represent the AIA Entities. Nor could he file one.[3] John Taylor has transitioned to "Senior Status" with the Idaho State Bar thereby confirming that he cannot practice law. (10/5/21 Bond Decl. Ex. F.) *See* I.B.C.R. 302(d)(1) ("Any Active, Inactive or Judicial Member aged sixty-five (65) years or older *who is not engaged in the practice of law* may request Transfer to Senior status by submitting a written request to the Bar.") (emphasis added). "Senior" or "Senior Member" is defined as "A member of the Bar aged sixty-five (65) years or older *who is not licensed to practice law in Idaho* and has been granted Senior status under Rule 302(d)." I.B.C.R. 301(s) (emphasis added). Thus, in any event, John Taylor is prohibited from acting as counsel for the AIA Entities because he is no longer licensed to practice law.

Most importantly, as discussed below, the terms of settlement and copies of the settlement agreement(s) forming the basis of the stipulation have never been fully disclosed or produced to Miesen, his counsel, or this Court, despite Miesen's requests and despite having requests for production requesting all settlement agreements. (10/5/21 Bond Decl. ¶ 2.)

In any event, the stipulation and the proposed order and judgment are void as to the AIA Entities because the stipulation was not signed by the AIA Entities' counsel in this lawsuit (let alone the required independent counsel based on the egregious facts here), and they have no counsel in the instant lawsuit. Thus, this Court should vacate the stipulation as to the AIA Entities (Dkt. 1166) and decline to enter the proposed order or the proposed judgment.

---

[3] Based upon the verified allegations in the Third Amended Complaint alone, John Taylor would also have irreconcilable conflicts which would prevent him from representing the AIA Entities—he was involved in all of the nefarious and unlawful conduct. (Dkt. 211.)

OBJECTIONS TO STIPULATION (Dkt. 1166) AND ORDER AND JUDGMENT - 5

**B.  John Taylor Has NO Authority to Bind the AIA Entities to Any Settlement or Stipulation.**

Irrespective of whether the AIA Entities have counsel to advise them on settlement and to sign the stipulation, any settlement and the stipulation is separately improper and unenforceable as to the AIA Entities because John Taylor has no authority to act on behalf of the AIA Entities or to bind them to any settlements or stipulations. Indeed, there are not any properly elected and fully seated boards of directors for any of the AIA Entities—and there haven't been for decades despite demands by Miesen and other shareholders. (*See generally* Dkt. 211.) Moreover, no shareholder disclosures and approval were sought or obtained for any settlement or stipulation involving the AIA Entities. Idaho law could not be more crystal clear that John Taylor has *no* unilateral authority to do anything for the AIA Entities as their unlawfully acting president.

> Except as may be provided in an agreement authorized under section 30-29-732, Idaho Code, and *subject to any limitation in the articles of incorporation* permitted by section 30-29-202(b), Idaho Code, all corporate powers shall be exercised by or under the authority of the board of directors, and the business and affairs of the corporation shall be managed by or under the direction, and subject to the oversight of the board of directors.

I.C. § 30-29-801(b) (emphasis added); *see also* I.C. § 30-29-804.

> Each officer has the authority and shall perform the functions set forth in the bylaws or, to the extent consistent with the bylaws, the functions prescribed by the board of directors or by direction of an officer authorized by the board of directors to prescribe the functions of other officers.

I.C. § 30-29-841.

"Every corporation incorporated under this chapter has the purpose of engaging in any lawful business *unless a more limited purpose is set forth in the articles of incorporation*. I.C. § 30-29-301(a) (emphasis added). The "*articles of incorporation*" may, *inter alia*, contain "provisions" pertaining to "Managing the business and regulating the affairs of the corporation" and "Defining, limiting and regulating the powers of the corporation, its board of directors, and shareholders." I.C. § 30-29-202(b)(2)(ii)-(iii) (emphasis added). "Provisions of the articles of

OBJECTIONS TO STIPULATION (Dkt. 1166) AND ORDER AND JUDGMENT - 6

**17-ER-4239**

incorporation may be made dependent upon facts objectively ascertainable outside the articles of incorporation in accordance with section 30-29-120(d), Idaho Code." I.C. § 30-29-202(d); *see also* I.C. §§ 30-29-302, 30-29-1201 (emphasis added).

"The bylaws of a corporation may contain any provision that is not inconsistent with law or the articles of incorporation." I.C. § 30-29-206(b).

In sum, a corporation's articles of incorporation are the same as a corporation's constitution and actions taken in violation of the articles of incorporation are void. *E.g., Hill v. Small*, 183 S.E.2d 752, 753-54 (Ga. 1971). Similarly, "[a]ctions taken in violation of a corporation's bylaws are void." *Kemmer v. Newman*, 161 Idaho 463, 466, 387 P.3d 131, 134 (2016) (alteration added).

Actions taken without proper board approval after notice to, or consent from, all directors are unlawful and invalid. *See, e.g.,* I.C. §§ 30-29-821-24; *Marine Services Unlimited, Inc. v. Rakes*, 918 S.W.2d 132, 134 (Ark. 1996) ("meeting held without notice to some or any of the directors and in their absence is illegal, and action taken at such a meeting, although by a majority of the directors, is invalid."); *Stone v. American Lacquer Solvents Co.*, 345 A.2d 174, 176-77 (Pa. 1975) ("directors of a corporation may bind a corporation only when they act at a legal meeting of the board"). In addition, a shareholder may directly and/or derivatively challenge the corporation's power to act or enter into a transaction and request it to be set aside. I.C. § 30-29-304.

Here, under Idaho law and the AIA Entities governing articles and bylaws, John Taylor separately has no authority to unilaterally settle any legal disputes involving the AIA Entities or the proceeds from the sale of any of their assets.[4] In fact, John Taylor is not duly appointed as a president of the AIA Entities because he has failed to hold an annual shareholder meeting in violation of the bylaws and ensure the boards were fully seated with the preferred shareholder

---

[4] There is also no proof that John Taylor is authorized to act on behalf of CropUSA Insurance Agency, Inc. and CropUSA Insurance Services, LLC. Presumably, he is operating those entities unlawfully like the AIA Entities.

OBJECTIONS TO STIPULATION (Dkt. 1166) AND ORDER AND JUDGMENT - 7

directors—John Taylor has been a rogue director and officer of the AIA Entities with no authority to do anything since 1999.[5] (10/5/21 Bond Decl. ¶ 5; Dkt. 1131-11 at 2 § 3.2; *see generally* Dkt. 211.) Significantly, AIA Services' amended articles of incorporation require AIA Services to appoint a director designated by the Series A Preferred Shareholder[6] and a director designated by the Series C Preferred Shares held in AIA Services' 401(k) plan.[7] (Dkt. 1131-10, at 5 § 4.2.9, at 12 § 4.3.3; 10/5/21 Bond Decl. ¶ 5.) Notably, John Taylor is presently being investigated by the Department of Labor regarding improper matters involving his rogue acts as trustee of AIA Services' 401(k) Plan—his conflicts prevent him from acting as or appointing the Series C director of AIA Services. (*Id.*; 10/5/21 Bond Decl. Ex. J; *see also* Dkt. 276 at 14-28.)

AIA Services' amended articles of incorporation also prohibit many transactions, including the guarantee of the loan to GemCap, the transfer of property, incurring indebtedness, and conflicts of interest (AIA Services' 2020 financial statements show a negative net worth). (Dkts. 1131-10, at 5-10; 10/5/21 Bond Decl. ¶ 5; *see also* Dkt. 1098-1.) Likewise, the AIA Entities' bylaws have various requirements and require shareholder approval for any conflict-of-interest transaction. (Dkt. 1131-11 at 12 § 4.14; *see generally* Dkt. 1131.) Based on John Taylor's conflicts as asserted in Miesen's verified Third Amended Complaint and the fact that he also has a $12 million judgment entered against him in favor of GemCap, there is no way that John Taylor could authorize the settlement of any legal dispute involving the AIA Entities based on his conflicts of interest alone. (Dkt. 211; 10/5/21 Bond Decl. Ex. I.)

---

[5] John Taylor's unauthorized unilateral conduct traces its roots back to when the HT Defendants represented the AIA Entities and CropUSA Insurance Agency, Inc. (*See generally* Dkt. 211.)

[6] Donna Taylor's most recent appointment was Paul Durant, a former director and vice-present of AIA Services in 2012. The defendants have refused to honor Mr. Durant's appointment to the board. (10/5/21 Bond Decl. ¶ 5.)

[7] John Taylor has recently valued the Series C Preferred Shares held in the 401(k) Plan as being worthless and he has refused to properly discharge his fiduciary duties as trustee. (*E.g.*, Dkts. 449-1, 449-2, 449-3.) Again, he is under investigation by the Department of Labor. (10/5/21 Bond Decl. Ex. J.)

OBJECTIONS TO STIPULATION (Dkt. 1166) AND ORDER AND JUDGMENT - 8

In sum, there are a litany of issues that must be addressed before the AIA Entities have authority to settle any legal dispute, including, without limitation, a properly elected and fully seated board of directors, compliance with the AIA Entities' articles of incorporation and bylaws, and full disclosure and approval from the preferred and common shareholders. Until these issues are properly addressed and full disclosure of all settlement agreements and terms are provided to Miesen and other shareholders, there is no authority for the AIA Entities to settle any legal dispute.

Indeed, this Court recently stated that John Taylor did not have unilateral authority to settle a legal dispute on behalf of Idaho corporations in a related lawsuit:

> In Idaho, the board of directors, not a corporate officer, generally possesses "[a]ll corporate powers" and responsibilities over the "business and affairs of the corporation." I.C. § 30-29-801. Further, a corporate officer's authority derives from the corporation's bylaws and duties prescribed by the board of directors. I.C. § 30-29-841. Thus, under Idaho law, Mr. Taylor's position as President and treasurer does not automatically grant him unilateral control to settle legal disputes between Weskan and CropUSA under Idaho law.[8]

*Weskan Agency, LLC v. CGB Diversified Servs., Inc.*, No. 2:18-cv-00356-DCN, 2019 WL 1450527, at *3 (D. Idaho Mar. 31, 2019).

But this Court is not the only one to address John Taylor's unilateral improper conduct. In *GemCap v. AIA Services, et al.*, Judge Brudie found that the AIA Entities "were controlled exclusively by [John] Taylor and the authorization for the transfers came from [John] Taylor alone." (10/5/21 Bond Decl. Ex. H at 9.) Judge Brudie also found that two property "transfers were accomplished at the whim of [John] Taylor and only [John] Taylor provides an inference of fraud."[9] (*Id.* at 11.) Yet, in the face of Miesen's verified allegations and claims asserting John

---

[8] In that lawsuit, GemCap was asserting claims on behalf of Weskan by and through its present counsel here, Alyson Foster. Thus, through the order, this Court had reminded *both* John Taylor and GemCap that John Taylor had no unilateral authority to settle any disputes for corporations under Idaho law.

[9] In that same lawsuit, Judge Brudie also stated: "'I have had a lot of experience working with AIA and their financial records, and I don't know if I can trust any of them, but go ahead.'" (Dkt. 1099-1 at 289 ¶ 3.)

OBJECTIONS TO STIPULATION (Dkt. 1166) AND ORDER AND JUDGMENT - 9

Taylor's lack of authority (Dkt. 211), this Court's order in *Weskan* and Judge Brudie's trial rulings,[10] GemCap and the Glynn Group boldly proceeded to purport to have John Taylor unilaterally settle legal disputes involving the AIA Entities. (Dkt. 1166; 10/5/21 Bond Decl. Ex. D.) It is incredulous that John Taylor and GemCap would proceed to settle any legal disputes directly or indirectly involving the AIA Entities or any proceeds of the sale of their properties without obtaining proper authority and without providing disclosure of the settlement agreement(s) to Miesen and the other shareholders and obtaining their consent, including the Series A Preferred Shareholder Donna Taylor. As discussed below, GemCap and the Glynn Group could have sought to have this Court approve the settlement after full disclosure to Miesen, but they intentionally failed to do so. Instead, they are seeking to have this Court approve a settlement it has never seen.

Lastly, it is worth noting that it appears that GemCap's financial condition is, at best, dire based on it losing its lending license and a recent foreclosure sale of its assets (including rights to this lawsuit, which Miesen has been unable to independently verify whether the foreclosure occurred or whether any assets were transferred to the creditor). (*See, e.g.,* Dkt. 1053-1.) Once funds are disbursed to GemCap, the funds are likely gone forever. This is yet another independent reason why any settlement with GemCap and the AIA Entities must be done properly and lawfully. Likewise, GemCap must prove its authority to settle a dispute as well based on the circumstances.

Accordingly, John Taylor has no authority to bind the AIA Entities to settle any legal disputes with GemCap or any other party. John Taylor has no unilateral authority to act in any manner for the AIA Entities. He has violated numerous Idaho Code sections, the AIA Entities

---

[10] Notably, Daniel Glynn, John Taylor's attorney in the instant lawsuit, represented both AIA Services and the AIA Services 401(k) Plan in *GemCap v. AIA Services, et al.*, and neither he nor John Taylor properly asserted that the AIA Entities' guarantees and settlement agreement with GemCap were also unauthorized and unlawful or the transfers of the interests in AIA Services' former headquarters, as confirmed by the court's ruling and the trial transcripts. (10/5/21 Bond Decl. Ex. G-H; *see also, e.g.,* Dkt. 156 at 8-16.) In reality, GemCap and John Taylor have *both* defrauded the AIA Entities and seek to defraud them even more.

OBJECTIONS TO STIPULATION (Dkt. 1166) AND ORDER AND JUDGMENT - 10

bylaws and articles, and he has acted contrary to the authorities set forth above by having the AIA Entities engage in any transactions with GemCap and resolving any legal disputes with GemCap which result in it obtaining any consideration. Thus, irrespective of whether the AIA Entities had independent counsel to approve any settlement and sign any stipulation, the required authority for John Taylor to bind the AIA Entities would still be lacking.

**C.** **Any Settlement Agreements and All Settlement Terms Involving the AIA Entities Must Be Fully Disclosed and Approved in Accordance with Rule 23.1 and I.C. § 30-29-745.**

GemCap and the Glynn Group also seek to side-step the obligations to resolve any claims involving the AIA Entities through Rule 23.1 and I.C. § 30-29-745. Rule 23.1 provides:

> (c) SETTLEMENT, DISMISSAL, AND COMPROMISE. A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders.

Fed. R. Civ. P. 23.1(c). Idaho law has a similar requirement:

> A derivative proceeding may not be discontinued or settled without the court's approval. If the court determines that a proposed discontinuance or settlement will substantially affect the interests of the corporation's shareholders or a class or series of shareholders, the court shall direct that notice be given to the shareholders affected.

I.C. § 30-29-745.

Here, GemCap and the Glynn Group have not complied with Rule 23.1(c) or I.C. § 30-29-745 nor do they seek proper approval from this Court to address those requirements. (Dkt. 1166.) The stipulation and proposed order and judgment do not comply with Rule 23.1(c) or I.C. § 30-29-745. (Dkt. 1166; 10/5/21 Bond Decl. Ex. B-C.) The AIA Entities are not represented by counsel so Miesen is the only party to assess whether the AIA Entities' counter crossclaims should be dismissed and that should only be done only after full disclosure to shareholders and in accordance with Rule 23.1 and I.C. § 30-29-745. (Dkt. 292.) Significantly, Miesen has asserted an answer and affirmative defenses to GemCap's crossclaims against the AIA Entities that GemCap and the

OBJECTIONS TO STIPULATION (Dkt. 1166) AND ORDER AND JUDGMENT - 11

Glynn Group are seeking to have dismissed, which also implicates Rule 23.1(c) and I.C. § 30-29-745.[11] (Dkt. 289.) Yet, GemCap and the Glynn Group disregard Rule 23.1 and I.C. § 30-29-745.

Equally important is that it is impossible for this Court, Miesen or AIA Services' shareholders to assess whether the settlement agreement(s) involving the AIA Entities and the distribution of the proceeds from the sale of AIA Services' former headquarters are appropriate without being provided with all of the terms of settlement and copies of the settlement agreement(s). (10/5/21 Bond Decl. ¶ 2, 4, Ex. B-D.) Like Miesen, this Court cannot determine whether any settlement is appropriate unless and until it is provided with all of the settlement agreements and terms of settlement. (*Id*. at ¶ 2.)

Thus, this Court should order that all settlement agreements and terms regarding the settlement be fully disclosed to Miesen and this Court. At that time, this Court and Miesen can assess whether the settlement terms are appropriate for the AIA Entities and then the parties can proceed in accordance with Rule 23.1(c) and I.C. § 30-29-745.

**D.** **Assuming the Stipulation Was Enforceable as to the AIA Entities, the Judgment Should Not Be Certified Under Rule 54(b).**

GemCap and the Glynn Group also request that the proposed judgment be entered "Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure," 10/5/21 Bond Decl. Ex. C at 1, even though the stipulatation does not even mention Rule 54(b) or ask this Court to make the required findings. (Dkt. 1166.) Even if the judgment could be properly entered, there is no basis in the record to support entering the judgment under Rule 54(b) and it appears possible that the request could be part of a plan to try to improperly finalize an unauthorized settlement.

First, a stipulation, without more, may not be the basis for the entry of a Rule 54(b)

---

[11] "Similarly if a corporation has a defense to an action against it and is not asserting it, a stockholder may intervene and defend on behalf of the corporation." *Price v. Gurney*, 324 U.S. 100, 105, 65 S.Ct. 513, 516 (1945).

OBJECTIONS TO STIPULATION (Dkt. 1166) AND ORDER AND JUDGMENT - 12

**17-ER-4245**

judgment. *Dannenberg v. Software Toolworks Inc.*, 16 F.3d 1073, 1074-76 (9th Cir. 1994). The stipulation does mention, let alone ask this Court to address, the requirements of Rule 54(b). (Dkt. 1166.) The proposed judgment fares no better. (10/5/21 Bond Decl. Ex. C.) Second, GemCap and the Glynn Group provide no reasons in the stipulation or otherwise to justify certifying the judgment as final under Rule 54(b) and the proposed judgment does not cure those deficiencies. *See Morrison-Knudsen Co., Inc. v. Archer*, 655 F.2d 962, 964-65 (9th Cir. 1981). Moreover, it appears to be dubious why a Rule 54(b) judgment is being requested without complying with Rule 54(b) and without disclosing all of the terms of settlement to this Court and Miesen.

In any event, assuming that the stipulation was signed by the AIA Entities' independent counsel and John Taylor had authority to bind the AIA Entities to settle certain legal disputes with GemCap, a Rule 54(b) judgment should not be entered.

### III.   CONCLUSION

For the reasons stated above, the stipulation and the proposed order and judgment are void as to the AIA Entities because the stipulation was never approved and signed by counsel for the AIA Entities. Moreover, even if the AIA Entities had counsel approve and sign the stipulation, John Taylor has no authority to unilaterally bind the AIA Entities to any settlement or stipulation and any settlement involving the AIA Entities must comply with Rule 23.1(c) and I.C. § 30-29-745. Lastly, irrespective of the lack of authority, this Court should not enter a Rule 54(b) judgment.

DATED:  This 5th day of October 2021.

RODERICK BOND LAW OFFICE, PLLC

By:    */s/ Roderick C. Bond*
           Roderick C. Bond
           Attorney for the Plaintiff Dale L. Miesen

OBJECTIONS TO STIPULATION (Dkt. 1166) AND ORDER AND JUDGMENT - 13

**17-ER-4246**

17-ER-4247

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5ᵗʰ day of October 2021, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:   jat@elamburke.com
Loren C. Ipsen:   lci@elamburke.com
Joyce A. Hemmer:   jah@elamburke.com
Bradley S. Keller:   bkeller@byrneskeller.com
Alyson A. Foster:   alyson@dempseyfoster.com
William E. Adams:   bill@weadamslaw.com
Tyler S. Waite:   twaite@campbell-bissell.com
Michael S. Bissell:   mbissell@campbell-bissell.com
Daniel L. Glynn:   dglynn@idalaw.com
Andrew Schwam:   amschwam@turbonet.com


        /s/ Roderick C. Bond
        Roderick C. Bond

OBJECTIONS TO STIPULATION (Dkt. 1166) AND ORDER AND JUDGMENT - 14

**17-ER-4247**

Electronically Filed
10/1/2021 11:14 AM
Idaho Supreme Court
Melanie Gagnepain, Clerk of the Court
By: Corby King-Clark, Deputy Clerk

Alyson Foster (ISB No. 9719)
*alyson@dempseyfoster.com*
**DEMPSEY FOSTER PLLC**
800 W. Main Street, Suite 1460
Boise, ID 83702
Telephone: (208) 401-9533

*Attorneys for Respondent GemCap Lending I, LLC*

## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Case No. 48655-2021

| | |
|---|---|
| AIA SERVICES CORPORATION, an Idaho corporation; AIA SERVICES CORPORATION 401(K) PROFIT SHARING PLAN; R. JOHN TAYLOR, an individual; R. JOHN TAYLOR, as Trustee of AIA SERVICES CORPORATION 401(K) PROFIT SHARING PLAN; R. JOHN TAYLOR, as President of AIA SERVICES CORPORATION,<br><br>Appellants,<br><br>v.<br><br>GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Respondent. | Appeal from the District Court, Second District, Nez Perce County, Case No. CV-2016-2207<br><br>**JOINT STIPULATION TO DISMISS APPEAL AND RELEASE FUNDS** |

Pursuant to Rule 33 of the Idaho Rule of Appellate Procedure, the parties, AIA Services Corporation, AIA Services Corporation 401(k) Profit Sharing Plan, and R. John Taylor (the Appellants) and GemCap Lending I, LLC (the Respondent) jointly stipulate as follows:

Exhibit - D, p. 1

17-ER-4248

1) The parties, agree, and request that the Notice of Appeal filed by Appellants in the District Court of the Second Judicial District of the State of Idaho, Nez Perce Count, shall be dismissed with prejudice with all parties to bear their own costs and attorneys' fees.

2) The parties agree, stipulate, and request that this Court order the District Court to release all funds held in the District Court's escrow account on behalf of the Appellants in the total amount of $368,539.46 to the Dempsey Foster PLLC Trust Account.

3) The parties further agree, stipulate and request that upon release of the funds, the District Court shall enter a judgment of dismissal with prejudice with each party to bear their own costs and attorney fees.

A proposed order is submitted with this stipulation.

DATED: October 1, 2021.

**FOR RESPONDENT GEMCAP LENDING I, LLC:**

DEMPSEY FOSTER PLLC

 /s/ Alyson A. Foster
Alyson A. Foster

**FOR APPELLANT R. JOHN TAYLOR:**

MARTELLE, GORDON & ASSOCIATES, P.A.

 /s/ Martin J. Martelle
Martin J. Martelle

**FOR APPELLANTS AIA SERVICES CORPORATION AND AIA SERVICES CORPORATION 401(k):**

JONES WILLIAMS FUHRMAN GOURLEY, P.A.

 /s/ Daniel Loras Glynn
Daniel Loras Glynn

JOINT STIPULATION TO DISMISS AND RELEASE FUNDS                                      Page 2

**Exhibit - D, p. 2**

**17-ER-4249**

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of October, 2021, a true and correct copy of the foregoing was served by the method indicated below, and addressed to the following:

Martin J. Martelle
**MARTELLE, GORDON &**
**ASSOCIATES, P.A.**
380 W State Street
Eagle, ID 83616
*Attorney for Defendant R. John Taylor*

☐ U.S. Mail
☐ Facsimile (208) 938-8503
☐ Hand Delivery
☐ FedEx Overnight Delivery
☒ ICourt: Email: *attorney@martellelaw.com*

Daniel Loras Glynn
**JONES WILLIAMS**
**FUHRMAN GOURLEY, P.A.**
225 North 9th Street, Ste 820
Boise, ID 83702
Tel: (208) 331-1170
*Attorney for Defendants AIA Services*
*Corporation* and *AIA Services Corporation*
*401(K) Profit Sharing Plan*

☐ U.S. Mail
☐ Facsimile (208) 331-1529
☐ Hand Delivery
☐ FedEx Overnight Delivery
☒ ICourt : Email: *dglynn@idalaw.com*

*/s/ Alyson A. Foster*
Alyson A. Foster

JOINT STIPULATION TO DISMISS AND RELEASE FUNDS                                        Page 3

**Exhibit - D, p. 3**

**17-ER-4250**

KIM J. TROUT, ISB #2468
TROUT LAW, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID  83703
Telephone (208) 577-5755
Facsimile (208) 577-5756
Email service@trout-law.com

Attorney for the Plaintiffs.

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| CROP USA INSURANCE AGENCY, INC., an Idaho corporation; R. JOHN TAYLOR, an individual,<br><br>     Plaintiffs,<br><br>vs.<br><br>GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>     Defendant. | Case No. 3:21-cv-00034-DCN<br><br>**STIPULATION TO DISMISS WITH PREJUDICE** |

Comes now Plaintiffs, by and through their counsel of record, Kim J. Trout of Trout Law, PLLC, and Defendant, by and through their counsel of record, Alyson A. Foster of Dempsey Foster PLLC, and pursuant to F.R.C.P. Rule 41(a)(1)(A)(ii), and hereby stipulate, agree, and request that the above captioned matter shall be dismissed, with prejudice, with each party bearing their own attorney's fees and costs. A proposed order and a proposed judgment will be submitted in accordance with the Court's ECF Procedures.

Stipulation to Dismiss with Prejudice | Page 1

**Exhibit - E, p. 1**

**17-ER-4251**

Dated  October 1, 2021          TROUT LAW, PLLC


                                _/s/ Kim J. Trout_
                                Kim J. Trout
                                Attorney for Plaintiffs


Dated  October 1, 2021          DEMPSEY FOSTER PLLC



                                _/s/ Alyson A. Foster_
                                Alyson A. Foster
                                Attorney for Defendant

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 1, 2021, a true and correct copy of the above and foregoing document was filed through the CM/ECF system, which caused the following parties or counsel to be served by electronic means.

> Alyson A.Foster
> alyson@dempseyfoster.com
>
> William E. Adams
> bill@weadamslaw.com


                                _/s/ Kim J. Trout_
                                Kim J. Trout


Stipulation to Dismiss with Prejudice | Page 2

**Exhibit - E, p. 2**

**17-ER-4252**

FILED

IN THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT OF THE
STATE OF IDAHO, IN AND FOR THE COUNTY OF NEZ PERCE

PATTY O WEEKS
CLERK OF THE DIST CT

_____DEPUTY

| | | |
|---|---|---|
| GEMCAP LENDING I, LLC, a Delaware Limited liability company, | ) ) ) | CASE NO. CV16-2207 |
| Plaintiff, | ) ) | |
| v. | ) ) ) | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER |
| AIA SERVICES CORPORATION, an Idaho Corporation: AIA SERVICES CORPORATION 401(K) PROFIT SHARING PLAN; R. JOHN TAYLOR, an individual; R. JOHN TAYLOR, as Trustee of AIA Service Corporation 401(K) Profit Sharing Plan; R. JOHN TAYLOR, As President of AIA Services Corporation, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) ) | |

This matter came before the Court for trial on February 10, 2020.[1] The plaintiff GemCap Lending I, LLC was represented by Alyson Foster and William Adams. The defendants AIA Services Corporation and AIA Services Corporation 401(k) profit sharing plan were represented by Daniel Glynn. The Defendant R. John Taylor was represented by Martin Martelle . The Court, having considered the record in this matter, the testimony presented, the arguments and exhibits submitted by the parties, the applicable law, and being fully advised in the matter, hereby renders its Findings of Fact, Conclusions of Law, and Order.

**FINDINGS OF FACT**

_____

[1] At the conclusion of the trial the parties were ordered to submit written closing arguments. After receiving those arguments, this Court took the matter under advisement on May 8, 2020.

1

*Gemcap Lending, LLC v. AIA Services Corp., et al.*
Findings of Fact, Conclusions of Law, and Order

**Exhibit - H, p. 1**

**17-ER-4253**

The issue before this Court is whether certain transfers of interest in real property were fraudulent under Idaho law.

### 1. The Parties

The Plaintiff GemCap Lending I, LLC (GemCap) is an asset based lending firm. AIA Services Corporation is an Idaho holding company for various entities and activities (AIA). AIA Services 401(K) Profit Sharing Plan (The Plan) is an investment entity comprised of the employees of AIA.[2] Crop USA (Crop) is a subsidiary of AIA which specialized in crop insurance. R. John Taylor (Taylor) is the president of both Crop and AIA, as well as the sole trustee for The Plan.

### 2. The Loan Security Agreement

The relationship between the parties began on November 23, 2011 when Crop received a five million dollar line of credit from GemCap. At this time Crop was engaged in selling crop insurance acting as a middleman between subagents and Diversified Insurance. These subagents would place policies through Crop with Diversified. Diversified would then pay commissions on the sales of these polices to Crop who would in turn distribute a portion to sub agents. As these commissions were paid infrequently Crop sought the credit line with GemCap to allow them to regularly pay their subagents and manage daily expenses. Per the agreement with GemCap, payments from Diversified were to be sent to an account which GemCap had control of. The deposited money would then be used to cover any advances from GemCap.[3] The payments from Diversified to Crop provided collateral for the loan.

The loan was memorialized in a document titled "Loan and Security Agreement" (LSA). In order to secure the loan, AIA executed a "Limited Continuing Guarantee" securing 1.5 million

---

[2] It appears that at times AIA employees were also employees of Crop USA for payroll purposes however they still participated in this plan.
[3] *Trial Transcript*, at 481 to 83.

2

*Gemcap Lending, LLC v. AIA Services Corp., et al.*
Findings of Fact, Conclusions of Law, and Order

**Exhibit - H, p. 2**

**17-ER-4254**

of Crop's indebtedness under the LSA.[4] In late 2012 or early 2013, GemCap discovered that money from the Crop line of credit had been used by both AIA and Taylor personally, in default of their agreement. As a result GemCap demanded that AIA become full guarantors of the Crop loan.

By February of 2013, GemCap had increased the Crop line of credit to 10 million dollars due to an increase in Crop's sales.[5] During a routine field audit in April 2013, GemCap discovered that Crop was again in default as a result of changes Taylor had made to commission amounts as well as new subagent contracts which reduced the value of the amount of payments due from Diversified, thereby reducing the value of the pledged collateral. As the value of collateral had reduced significantly, the Crop loan became over advanced and therefore in default of the terms of the LSA.[6]

In the following months GemCap officials met with Taylor to discuss securing additional collateral to cure the over advance. During these meetings, Taylor indicated that he had certain properties which could be pledged as collateral. Among those properties was the building commonly known as The Lewis & Clark Plaza (The Plaza), located in Lewiston. These meetings however did not result in curing the default. On July 29, 2013, GemCap sent a formal notice of default on the LSA to Crop, AIA, and Taylor. On July 30, 2013, GemCap initiated a lawsuit in California Federal Court against Crop, AIA, and Taylor pursuant to their respective agreements.

On September 15, 2014, AIA entered into a confidential settlement agreement with GemCap in the California litigation shortly before trial was to commence. Per the agreement AIA was to transfer its interest in The Plaza to GemCap and The Plaza was to be sold. Taylor

---

[4] This guarantee was required by GemCap when it was discovered that there were existing obligations between Crop and AIA. *Transcript*, at 494-95.
[5] *Transcript*, at 501.
[6] *Transcript*, at 502-03.

3

*Gemcap Lending, LLC v. AIA Services Corp., et al.*
Findings of Fact, Conclusions of Law, and Order

**Exhibit - H, p. 3**

**17-ER-4255**

executed this agreement of behalf of AIA, Crop, and himself. The settlement agreement, signed by the parties, indicated that AIA possessed a 67 percent ownership in The Plaza.[7] On July 22, 2015, The Plaza was sold and a return on sale was issued by the Nez Perce County Sheriff which indicated that GemCap and The Plan possessed interests in the proceeds of 67 and 33 percent respectively.[8] This lawsuit was initiated by GemCap to challenge the 33 percent transferred to The Plan.

### 3. The Plaza transfers

Prior to any agreements with GemCap, AIA had acquired a note and deed of trust in The Plaza on September 28, 2007. That same day Taylor arranged for Crop to loan AIA $500,000 in exchange for a promissory note secured by the deed of trust in The Plaza. On December 16, 2009, Taylor arranged for a $500,000 loan from Syringa Bank (now known as Sunwest Bank) in exchange for a promissory note secured by the deed of trust in The Plaza.

On August 7, 2013, AIA and AIA Services 401(k) Plan (The Plan) recorded an instrument conveying 23 percent of AIA's interest in the promissory note and deed of trust to The Plan (Transfer 1). On September 11, 2014, AIA and The Plan recorded another instrument that conveyed an additional 10 percent of AIA's interest in the note and deed of trust to The Plan "for the benefit of R. John Taylor"(Transfer 2).[9]

Aimee Gordon served as an accounting manager for AIA services and CropUSA from 2003 to 2012. As part of her duties she prepared financial statements for both AIA and The Plan.[10] Gordon became aware of the first transfer in interest to The Plan in 2010. Gordon

---

[7] Exhibit 50, at 16.
[8] Exhibit 56.
[9] Both transfers had backdated effective dates. Transfer 1 stated it was effective on April 10, 2010. Transfer 2 stated it was effective February 28, 2014. Exhibit 43, 47.
[10] *Transcript*, at 458-59.

4

*Gemcap Lending, LLC v. AIA Services Corp., et al.*
Findings of Fact, Conclusions of Law, and Order

**Exhibit - H, p. 4**

prepared the checks from The Plan which were later signed by Taylor.[11] Gordon entered the transaction into the AIA Services general ledger and identified the purchase in The Plan's internal financial statements as a mortgage receivable.[12]

Janet Porco, the third party administrator to The Plan, has been involved in the administration of the account for the past 15 years. She became aware of the first transfer of interest to The Plan sometime in 2010 when it appeared on The Plan's spreadsheet for the quarter.[13] Porco stated that she was unaware of the circumstances surrounding the transfer but the spreadsheet listed the value of the transfer at $207,000. In an email exchange between Porco and Aimee Gordon in 2010, Porco inquired about the investment in The Plaza and verified that it was being held in The Plan's general fund.[14] Porco was aware of subsequent transfers from The Plan to AIA in 2013 and 2014 but was unaware of the basis for those transfers.[15]

Taylor testified that at the time of both transfers AIA was solvent. This determination was based off of AIA's consolidated financial statements for 2010-2014.[16] Additionally, Taylor stated that he had communicated with Ramsey Naber, an account executive for GemCap, regarding the first assignment to The Plan in May of 2013.[17] Taylor informed Bill Adams, a representative of GemCap about the second transfer in June of 2014, during a deposition in the course of the California litigation.[18]

---

[11] *Transcript*, 462. Exhibit 18.
[12] *Transcript*, at 465.
[13] This document was prepared by internal AIA accountants and presented to Porco's employer as part of a routine quarterly report.
[14] Exhibit 88.
[15] *Transcript*, at 239 to 269.
[16] Exhibit K, BB.
[17] Exhibit BBB.
[18] *Transcript*, at 335.

<div align="center">5</div>

*Gemcap Lending, LLC v. AIA Services Corp., et al.*
Findings of Fact, Conclusions of Law, and Order

**Exhibit - H, p. 5**

<div align="center">**17-ER-4257**</div>

Richard Ellis, co-president of GemCap, stated that at the end of April 2013, GemCap was under the belief that only Syringa Bank had an interest in The Plaza.[19] Ellis asserted that he was first informed by Taylor of AIA's actual 67 percent interest in The Plaza at a settlement conference on September 14, 2014.[20]

## ISSUES

GemCap asserts that both transfers in interest to The Plan were unlawful conveyances.[21] The Defendants assert that GemCap's claim's concerning Transfer 1 are barred by a statute of limitations. The Defendants further assert a counterclaim against GemCap for loss of interest on the disputed funds from the sale of The Plaza which were placed in escrow pending the outcome of this suit.

## CONCLUSIONS OF LAW

### 1. Statute of limitations

The Defendants assert that GemCap failed to timely challenge the first transfer of interest to The Plan. GemCap asserts the transfer was fraudulent pursuant to I.C. §§55-913(1)(a) and 55-914(1). The relevant statute of limitations for these claims is set for in I.C. §55-918 as follows:

> A cause of action with respect to a transfer or obligation under this act is extinguished unless action is brought:
>
> (1) Under section 55-913(1)(a), Idaho Code, not later than four (4) years after the transfer was made or the obligation was incurred or, if later, not later than one (1) year after the transfer or obligation was or could reasonably have been discovered by the claimant;
>
> (2) Under section 55-913(1)(b) or 55-914(1), Idaho Code, not later than four (4) years after the transfer was made or the obligation was incurred.

---

[19] *Transcript*, at 511.
[20] *Transcript*, at 528.
[21] GemCap has asserted separate claims of constructive fraud and intentional fraud for each transfer.

6

*Gemcap Lending, LLC v. AIA Services Corp., et al.*
Findings of Fact, Conclusions of Law, and Order

The Court has previously held that pursuant I.C. §55-915 the assignments did not legally occur until the date of their recording. Transfer 1 was recorded on August 7, 2013 and Transfer 2 was recorded on September 10, 2014.[22] This lawsuit was filed on November 17, 2016, well within the 4 year statute of limitations for either transfer. Therefore GemCap's claims are not barred by statute.

### 2. Unlawful conveyance

### A. Constructive Fraud

GemCap asserts claims of constructive fraud against both Transfer 1 and Transfer 2. I.C. §55-914(1) states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

This Court finds that GemCap has failed to prove that AIA was either insolvent at the time of the transfers, or became insolvent as a result. The Defendants have produced yearly accounting statements for AIA which show that for the period of 2010 through 2015, AIA was solvent.[23] GemCap has produced in opposition to this characterization only argument that the pending California litigation should have been calculated into AIA's liabilities, rendering AIA insolvent. GemCap provides no controlling case law to support this position. Indeed, the authority cited by GemCap appears to suggest such a blanket application of potential liability is not appropriate in an insolvency analysis.[24]

---

[22] Exhibit 43, 47.

[23] Exhibit K, BB.

[24] A contingent liability must be reduced, however, to its present or expected amount before a determination on insolvency can be made. To determine a contingent liability, one must discount it by the probability that the contingency will occur and the liability will become real.

7

*Gemcap Lending, LLC v. AIA Services Corp., et al.*
Findings of Fact, Conclusions of Law, and Order

**Exhibit - H, p. 7**

Additionally, Taylor testified as to AIA's solvency at the time of the transfers. Taylor did not factor potential liability from the California litigation to the accounting statements as it was a contingent liability, which standard accounting practices evidently dictate not be booked until the amount and time due are certain.[25]

> Idaho Code § 55–911 defines "insolvency," for purposes of the Uniform Fraudulent Transfer Act, as being present when a debtor's debts are greater than all of the debtor's assets. Idaho Code § 55–911(2) specifically provides that "[a] debtor who is generally not paying his or her debts as they become due is presumed to be insolvent.

*Wilder v. Miller*, 135 Idaho 382, 386–87, 17 P.3d 883, 887–88 (Ct. App. 2000).

The evidence presented at trial showed that at all relevant times AIA's assets outweighed its liabilities and AIA was paying debts as they came due. GemCap has failed to present adequate evidence concerning AIA's insolvency in relation to either transfer, therefore GemCap's claims of constructive fraud are dismissed.[26]

## B. Intent to defraud

GemCap asserts that both Transfer 1 and Transfer 2 are fraudulent conveyances pursuant to I.C. §55-913(1)(a). I.C. §55-913 states:

> (1) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.

I.C. §55-913(2) states that in determining whether there was an intent to defraud, the Court will consider whether:

---

*In re Sierra Steel, Inc.*, 96 B.R. 275, 279 (B.A.P. 9th Cir. 1989).

[25] *Transcript*, at 380. Taylor holds an accounting degree from Brigham Young University and has previously passed the CPA exams.
[26] It seems odd to this Court that a corporate debtor may incur 10 million dollars in debt and not be required under "standard accounting practices" to list this debt as a liability. However, no controlling case law or testimony contradicting Taylor's accounting practices  has been presented to this Court .

8

*Gemcap Lending, LLC v. AIA Services Corp., et al.*
Findings of Fact, Conclusions of Law, and Order

**Exhibit - H, p. 8**

**17-ER-4260**

a) The transfer or obligation was to an insider;

(b) The debtor retained possession or control of the property transferred after the transfer;

(c) The transfer or obligation was disclosed or concealed;

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e) The transfer was of substantially all the debtor's assets;

(f) The debtor absconded;

(g) The debtor removed or concealed assets;

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

A creditor making a claim under subsection (1) of this section has the burden of proving the elements of the claim by a preponderance of the evidence.  I.C.§55-913(3).

Whether a particular transaction was fraudulent is a question of fact to be determined from all the circumstances. Actual fraud must be proven by clear and convincing evidence; but when certain badges of fraud attend the conveyance, and are not adequately explained, an inference of actual fraud may be warranted.

*Mohar v. McLelland Lumber Co.*, 95 Idaho 38, 42, 501 P.2d 722, 726 (1972).

The transfers in this matter, while not to an "insider", were conducted between a corporation and an investment plan set up for the benefit of employees of that corporation. Both of these entities were controlled exclusively by Taylor and the authorization for the transfers came from Taylor alone. Although the transfers deal with separate legal entities the amount of control and autonomy exercised by Taylor in these transactions is substantial.

As AIA only transferred partial interest in The Plaza, the property remained in control and possession of AIA until the sheriff's sale in 2016. While Taylor asserted he had informed GemCap of Transfer 1 through an email with Naber, there was no indication in the email as to

9

*Gemcap Lending, LLC v. AIA Services Corp., et al.*
Findings of Fact, Conclusions of Law, and Order

**Exhibit - H, p. 9**

the percentage interest transferred to The Plan.[27] The transfer itself, while allegedly occurring in 2010, was not recorded until three months after Taylor emailed Naber and one week after GemCap filed the California lawsuit. Taylor informed GemCap of Transfer 2 in June of 2014, at a deposition hearing in preparation of litigation. This transfer, while purported to have occurred in February of that year, was not recorded until early September, mere days before Taylor entered into a settlement agreement with GemCap. The timing of these transfers, and lack of concurrent recordation, as well as Taylor's notifications to GemCap, shows Taylor to be less than forthcoming with GemCap concerning AIA's actual interest in The Plaza.

As the Court has previously ruled the transfers did not occur until they were recorded and both transfers were made after the commencement of litigation against AIA by GemCap. The Transfers did not dispose of substantially all of AIA's assets, however, The Plaza was a substantial portion of AIA's total assets and the transfers reduced AIA's holding in that property by 1/3.

The value AIA received for the transfer to The Plan appears to be reasonably equivalent to 33 percent of the value of The Plaza.[28] As noted earlier in this opinion AIA was, by accounting standards, solvent at the time of the transfers. Finally, while Transfer 1 occurred more than a year before the settlement, Transfer 2 occurred within a week of Taylor agreeing to a settlement in which AIA incurred a substantial debt.[29]

In analyzing all of the relevant factors in this matter the Court finds GemCap has met its burden to show the transfers were made with the intent to defraud. While it does appear adequate consideration was paid for the transfers, the timing, Taylor's less than prompt disclosures and

---

[27] Exhibit BBB.
[28] Taylor testified AIA received $207,000 for Transfer 1 and roughly $122,000 for Transfer 2. *Transcript* at 225, 404. The return of sheriff's sale listed the value of The Plaza at $1,434,587.54. Exhibit 56.
[29] Exhibit 50.

*Gemcap Lending, LLC v. AIA Services Corp., et al.*
Findings of Fact, Conclusions of Law, and Order

**Exhibit - H, p. 10**

**17-ER-4262**

recording of the transfers, along with the fact that these transfers were accomplished at the whim of Taylor and only Taylor provides an inference of fraud. Taylor's explanation for the circumstances surrounding the transfers as well as the "accountings" provided in support do little to alleviate this inference but rather appear to be part of greater attempt to obfuscate a creditor in its attempts to collect on a judgment. Therefore this Court finds both transfers to be unlawful pursuant to I.C. §55-913(1)(a).

### 3. The Defendants' counterclaim

Having found in favor of GemCap on its intent to defraud claims, the Court need not address The Defendants' counterclaim as it was predicated on The Plan having claim to the disputed money. The Defendants are unable to meet their burden as to this claim and it is dismissed.

### ORDER

IT IS HEREBY ORDERED that GemCap's claims on constructive fraud are DISMISSED. IT IS FURTHER ORDERED that GemCap's claims of intentional fraud are GRANTED. IT IS FURTHER ORDERED that The Defendants' counterclaim is DISMISSED.

Dated this ___1___ day of July 2020.

_____
JEFF M. BRUDIE, District Judge

11

*Gemcap Lending, LLC v. AIA Services Corp., et al.*
Findings of Fact, Conclusions of Law, and Order

**Exhibit - H, p. 11**

**17-ER-4263**

**17-ER-4264**

CERTIFICATE OF MAILING

I hereby certify that a true copy of the foregoing FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER  was:

E-mailed, by the undersigned at Lewiston, Idaho, this ___7-1-20___ , to:

Alyson A. Foster, GemCap: aaf@aswblaw.com

William Adams, GemCap: wadams@gemcapsolutions.com

Daniel Glynn, AIA Services Corp:dglynn@idalaw.com

Martin Martelle, R. John Taylor: attorney@martellelaw.com

By: _____
        Deputy

**Exhibit - H, p. 12**

**17-ER-4264**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>            Plaintiff,<br><br>     **v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>          Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>PLAINTIFF DALE L. MIESEN'S REPLY REGARDING REQUEST FOR JUDICIAL NOTICE (Dkts. 1153, 1067, 1148) |

MIESEN'S REPLY REGARDING REQUEST FOR JUDICIAL NOTICE (Dkt. 1153) - i

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

    Defendants/Third-Party Plaintiffs,

   **v.**

REED TAYLOR, an individual,

    Third-Party Defendant.

REED TAYLOR, an individual,

    Third-Party Defendant/ Counterclaimant,

   **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

    Counterdefendants.

## I.   <u>ARGUMENTS</u>

In connection with the HT Defendant' motion to dismiss which was joined by the defendants (except GemCap) (Dkts. 1067, 1090), Miesen requested for this Court to take judicial notice of certain recent affidavit testimony and exhibits provided by John Taylor. (Dkt. 1153.) The HT Defendants oppose the request arguing that it is untimely and that the information does not support demand issues regarding them. (Dkt. 1163.) This Court should reject both arguments.

First, Rule 201 provides in pertinent part that the Court "must take judicial notice if a party requests it and the court is supplied with the necessary information" and "may take judicial notice at any stage of the proceeding." Fed. Evid. R. 201(c)(2)-(d). Miesen supplied this Court with the required information and thus this Court should take judicial notice. In addition, this lawsuit involves over 1100 dockets and the undersigned counsel had not been able to fully review the summary judgment materials in connection with responding to the motion to dismiss until after submitting the response opposing the motion and Mr. Schwam only recently appeared for Miesen. Accordingly, this Court should reject the HT Defendants' timeliness arguments.

Second, John Taylor does not dispute the authenticity or accuracy of his affidavit testimony or the attached exhibits which Miesen is requesting being judicially noticed. Nor could he. That affidavit and the attached exhibits were submitted under penalties of perjury and are thus admissible for the same reasons and authorities stated in *Pacific Pulp Molding, Inc. v. Burchfield*, No.: 15-CV-1602-AJB-MDD, 2016 WL 6103086, at *3 (S.D. Cal. Jan. 26, 2016).

In *Russell v. OneWest Bank FSB*, No. 1:11-CV-00222-BLW, 2011 WL 5025236, at *4 (D. Idaho Oct. 20, 2011), the only case cited by the HT Defendants, Judge Winmill refused to take judicial notice of an individual's affidavit stating incorrectly and over broadly that "The Court cannot take judicial notice of an individual's affidavit…" 2011 WL 5025236, at *4. While Judge

MIESEN'S REPLY REGARDING REQUEST FOR JUDICIAL NOTICE (Dkt. 1153) - 1

Winmill may have been right in refusing to judicially notice the affidavit in his case, *Burchfield* makes clear that an individual's affidavit can and should be judicially noticed in a case such as ours. It is also important to note that the other four items Judge Winmill refused to judicially notice were rejected with Judge Winmill saying "These documents cannot be incorporated by reference because Defendants reasonably dispute their authenticity or completeness." 2011 WL 5025236, at *4. In our case there is no dispute regarding authenticity or completeness, so *Russell* is not applicable. In *Burchfield* (which was cited by Miesen in his original request), the court provided analysis and cited cases supporting taking judicial notice of an affidavit and exhibits attached thereto. 2016 WL 6103086, at *3. The facts and authorities in *Burchfield* are analogous and applicable here. In addition, unlike *Russell*, Miesen's verified Third Amended Complaint specifically states that no additional information or clarifications were ever requested by the so-called boards of the AIA Entities (because they knew). (*E.g.,* Dkt. 211 at ¶ 182.) John Taylor's affidavit testimony and the attached exhibits are consistent with those allegations in that no additional information was needed because the so-called directors were acutely aware of the wrongdoing and the suitable action being requested by the July 2008 derivative demand letter. (*See* Dkt. 1153-1.) Thus, the affidavit and exhibits would also be admissible under the incorporation by reference doctrine because the Third Amended Complaint relies on the failure of the so-called boards to ask for additional information or clarifications—and John Taylor does not dispute the accuracy of his testimony. *In re Iso Ray, Inc. Sec. Litig.*, 189 F.Supp.3d 1057, 1065-66 (E.D. Wash. 2016).

Finally, the HT Defendants arguments that the matters addressed by John Taylor's testimony and the attached July 2008 derivative demand did not specifically address the HT Defendants' conduct are wholly without merit—the items and matters involved their conduct.

MIESEN'S REPLY REGARDING REQUEST FOR JUDICIAL NOTICE (Dkt. 1153) - 2

However, even if the argument had merit, it still fails. The HT Defendants and the so-called boards of directors were, once again, acutely aware of the HT Defendants' tortious conduct—they were conducting legal research on their own liability as evidenced by the billing records available to the AIA Entities' so-called boards of directors. For example, the HT Defendants' billing records, which were disclosed for the first time in December 2019 (Dkt. 783-7 at ¶ 19), include, without limitation, the following entries (there are more) for work performed *months* before the July 2008 demand letter was submitted to the so-called boards: "LEGAL RESEARCH RE OUTSIDE COUNSEL'S DUTIES TO SHAREHOLDERS; CONFERENCE WITH COUNSEL RE SAME," Dkt. 783-26 at 93 (App. T at 268) (2/7/08 billing entry), "RESEARCH ON OUTSIDE COUNSEL AND LIABILITY FOR NOT BRINGING CLAIMS AGAINST DIRECTORS," Dkt. 783-26 at 118 (App. T at 293) (4/1/08 billing entry), and "EXTENSIVE RESEARCH ON OUTSIDE COUNSEL AND POTENTIAL LIABILITY WHEN TRYING TO REPRESENT BOTH CORPORATION AND DIRECTORS." (Dkt. 783-25 at 73 (App. T at 73) (4/2/08 billing entry).) This Court should take judicial notice of the HT Defendants' billing records as well.[1] Fed. Evid. R. 201. They are appended to this Reply at Appendix S with the above-quoted billing records being highlighted in yellow. There can be no doubt that the HT Defendants and the so-called boards of directors were fully aware of the HT Defendants' tortious conduct—the AIA Entities were paying the HT Defendants to conduct legal research regarding the HT Defendants' conduct and liability. And, as Miesen previously pointed out (Dkt. 1131 at 23, 25), the HT Defendants' arguments are belied by the filing of a petition for court appointed inquiry to investigate the facts regarding the derivative demand claims (which was never conducted). (Dkts. 211 at ¶¶ 173-76; 1131-18.) Thus, the HT Defendants' arguments are belied by their own billing records and actions.

---

[1] This Court may also take judicial notice "on its own" as well. Fed. Evid. R. 201(c)(1).

MIESEN'S REPLY REGARDING REQUEST FOR JUDICIAL NOTICE (Dkt. 1153) - 3

**17-ER-4269**

Accordingly, this Court should take judicial notice of John Taylor's affidavit testimony and the two exhibits attached to his affidavit. (Dkts. 1153, 1153-1.) In addition, this Court should take judicial notice of the HT Defendants' billing records as requested above. (Dkts. 783-25, 783-26 (App. T).)

DATED:  This 8th day of October 2021.

<div align="right">

RODERICK BOND LAW OFFICE, PLLC

By:   */s/ Roderick C. Bond*
        Roderick C. Bond
        Attorney for the Plaintiff Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:   */s/ Andrew Schwam*
        Andrew Schwam
        Attorney for the Plaintiff Dale L. Miesen

</div>

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 8th day of October 2021, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:    jat@elamburke.com
Loren C. Ipsen:    lci@elamburke.com
Joyce A. Hemmer:    jah@elamburke.com
Bradley S. Keller:    bkeller@byrneskeller.com
Alyson A. Foster:    alyson@dempseyfoster.com
William E. Adams:  bill@weadamslaw.com
Tyler S. Waite:       twaite@campbell-bissell.com
Michael S. Bissell:    mbissell@campbell-bissell.com
Daniel L. Glynn:    dglynn@idalaw.com
Andrew Schwam:  amschwam@turbonet.com

<div align="right">

*/s/ Roderick C. Bond*
        Roderick C. Bond

</div>

MIESEN'S REPLY REGARDING REQUEST FOR JUDICIAL NOTICE (Dkt. 1153) - 4

**17-ER-4270**

**KIM J. TROUT, ISB #2468**
TROUT LAW, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID  83703
Telephone (208) 577-5755
Facsimile (208) 577-5756
service@trout-law.com

Attorneys for Defendant AIA Services Corporation & AIA Insurance, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.; <br><br> Plaintiff, <br><br> vs. <br><br> CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 1:10-CV-404-DCN-CWD <br><br> **NOTICE OF APPEARANCE** |

        PLEASE  TAKE  NOTICE  that  the  undersigned  hereby  makes  an  appearance  as

attorney of record for the Defendants, AIA Services Corporation & AIA Insurance, Inc, in the

**NOTICE OF APPEARANCE - 1**

**17-ER-4271**

above-entitled action, and demands that copies of all subsequent pleadings filed in the matter

be served upon us.

DATED December 22, 2021.

TROUT LAW, PLLC


_/s/ Kim J. Trout_
Kim J. Trout
Attorney for Defendants AIA Services
Corporation and AIA Insurance, Inc.


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 22, 2021, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF System which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Roderick Cyr Bond | rod@roderickbond.com |
| Andrew M. Schwam | amschwam@turbonet.com |
| Michael S. Bissell | mbissell@campbell-bissell.com |
| Tyler S. Waite | twaite@campbell-bissell.com |
| Jeffrey A. Thomson | jat@elamburke.com |
| Loren C. Ipsen | lci@elamburke.com |
| Joyce A. Hemmer | JAH@ElamBurke.com |
| Bradley S. Keller | bkeller@bryneskeller.com |
| Alyson Anne Foster | alyson@dempseyfoster.com |
| Daniel Loras Glynn | dglynn@idalaw.com |


_/s/ Kim J. Trout_
Kim J. Trout


**NOTICE OF APPEARANCE - 2**

**17-ER-4272**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>          Plaintiff,<br><br>     v.<br><br>HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership, et al.,<br>          Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>**ORDER** |

Pursuant to the Stipulation for Dismissal with Prejudice filed by Defendant GemCap Lending I, LLC ("GemCap"), Defendants Crop USA Insurance Agency, Inc. and Crop USA Insurance Services, LLC (the "Crop USA Defendants"), Defendants AIA Services Corporation and AIA Insurance, Inc. (the "AIA Defendants"), and R. John Taylor, Connie Henderson, James Beck, and Michael Cashman ("Individual Defendants") (Dkt. 1188), it is HEREBY ORDERED[1]:

---

[1] Plaintiff Dale Miesen has filed a Notice of Intent to Object to Stipulation (Dkt. 1188) and an Amended Notice of Intent to Object to Stipulation (Dkt. 1190). Miesen says he intends to object to the Stipulation by January 24, 2022. Dkt. 1190. Miesen is not a party to the Stipulation or any of the claims being dismissed. Because the Stipulation does not dispose of Miesen's claims nor impose any duties on him, Miesen lacks standing to object to the Stipulation. *See Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 (9th Cir. 1987) (holding that a non-stipulating party has standing to object to a settlement stipulation only when the settlement will result in formal legal prejudice the non-stipulating party); *Morgan v. Walter*, 758 F. Supp.

ORDER – 1

17-ER-4273

1. GemCap's crossclaims against the Crop USA Defendants, the AIA Defendants, and the Individual Defendants (Dkt. 283) are dismissed with prejudice, with all parties to bear their own costs.

2. The Crop USA Defendants' and the Individual Defendants' counter-crossclaims against GemCap (Dkt. 290) are dismissed with prejudice, with all parties to bear their own costs.

3. The AIA Defendants' counter-crossclaims against GemCap (Dkt. 292) are dismissed with prejudice, with all parties to bear their own costs and attorneys' fees.

DATED: January 19, 2022

_____
David C. Nye
Chief U.S. District Court Judge

---

597, 600 (D. Idaho 1991) ("[T]he Ninth Circuit has held that a non-settling defendant does *not* have standing to object to a settlement wherein its co-defendant agrees to cooperate with plaintiffs in future litigation against the non-settling defendant. . . . [T]he approval of a settlement agreement to which all but one party has stipulated does not prejudice the non-stipulating party where the settlement does not dispose of its claims or impose duties or obligations on it."). Accordingly, the issue of Miesen's anticipated objection is moot.

ORDER – 2

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporations and its wholly owned subsidiary AIA Insurance, Inc., <br><br> Plaintiff, <br><br> v. <br><br> CONNIE TAYLOR HENDERSON, et al., <br><br> Defendants. | Case No. 1:10-cv-00404-DCN <br><br> **MEMORANDUM DECISION AND ORDER REGARDING THREE MOTIONS (DKTS. 1124, 1135, 1136)** |

## I. INTRODUCTION

Pending before the court are Plaintiffs' Motion to Substitute a New Expert (the "Motion to Substitute") (Dkt. 1124); Motion for the Alternative Remedy of Lesser Sanctions (the "Motion for Lesser Sanctions") (Dkt. 1136); and Motion for Leave to Appeal (Dkt. 1135). Each of these motions involve the Court's May 12, 2021 Order (Dkt. 1112) excluding Richard McDermott as an expert witness. And each motion is opposed by the same group of Defendants: Hawley Troxell Ennis & Hawley LLP, Gary D. Babbitt, D. John Ashby, and Richard A. Riley (collectively, the "Hawley Troxell Defendants").

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay,

MEMORANDUM DECISION AND ORDER - 1

and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *United States v. Alatorre*, 222 F.3d 1098, 1100 (9th Cir. 2000) ("[T]rial courts are not compelled to conduct pretrial hearings in order to discharge the gatekeeping function.").

For the following reasons, the Court DENIES the Motion to Substitute (Dkt. 1124), DENIES the Motion for Lesser Sanctions (Dkt. 1136), and DENIES the Motion for Leave to Appeal (Dkt. 1135).

## II. BACKGROUND

On May 12, 2021, this Court excluded Richard McDermott as an expert witness for Plaintiff Dale Miesen. Dkt. 1112. Miesen filed a motion to reconsider that decision, and the Court denied that motion on July 22, 2021. Dkt. 1123. Miesen then filed the instant three motions, each of which concern the same issue—the exclusion of McDermott as an expert witness.

Only a day after the Court denied his motion for reconsideration, Miesen filed the Motion to Substitute, which asks for a new expert witness to take the place of McDermott. Dkt. 1124. He subsequently filed the Motion for Lesser Sanctions, which also asks that the Court permit a substitute expert to take McDermott's place. Dkt. 1136. On the same day Miesen filed the Motion for Lesser Sanctions, he also filed his Motion for Leave to Appeal the Court's decisions excluding McDermott and denying reconsideration. Dkt. 1135. Not content to wait for a decision on this motion, Miesen directly appealed those same decisions on August 23, 2021. Dkt. 1140. The Ninth Circuit summarily dismissed that appeal because

MEMORANDUM DECISION AND ORDER - 2

**17-ER-4276**

the order excluding McDermott was "neither final nor immediately appealable." Dkt. 1176.

Because each of the three pending motions revolves around the Court's decision to exclude McDermott, the Court addresses each motion in this Order.

## III. DISCUSSION

### A. Motion to Substitute (Dkt. 1124)

The Court excluded McDermott because his testimony and report were inadmissible under Federal Rules of Evidence 403 and 702. Dkt. 1112, at 9–10. Miesen now asks for a substitute expert witness. The Court will not allow someone to take McDermott's place and give the same inadmissible testimony.

#### 1. Legal Standard

Motions to substitute expert witnesses are essentially motions to amend the scheduling order. *GF & C Holding Co. v. Hartford Cas. Ins. Co.*, 2012 WL 5907092, at *1 (D. Idaho Nov. 26, 2012); *Crandall v. Hartford Cas. Ins. Co.*, 2012 WL 6086598, at *2 (D. Idaho Dec. 6, 2012); *see also Hoffman v. Tonnemacher*, 362 Fed. App'x 839, 840 (9th Cir. 2010) (reviewing for abuse of discretion the district court's decision to "modify[] the pretrial order" by allowing substitution of an expert witness); *Jones v. DeVaney*, 107 Fed. App'x 709, 711 (9th Cir. 2004) (reviewing district court's decision to deny "plaintiffs' motion to amend the pretrial order to substitute a new medical expert").

The standard for amending the pretrial scheduling order under Federal Rule of Civil Procedure 16(b)(4) is "good cause." Fed. R. Civ. P. 16(b)(4). This "good cause standard primarily considers the diligence of the party seeking the amendment." *Crandall*, 2012 WL 6086598, at *2. At the heart of the inquiry are "the moving party's reasons for seeking

MEMORANDUM DECISION AND ORDER - 3

modification." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

Moreover, because Miesen filed this motion after the time had passed to disclose expert witnesses, Rule 6(b)(1) also applies, which adds that not only must there be "good cause" to modify a scheduling order, but there must also be "excusable neglect." Fed. R. Civ. P. 6(b)(1); *accord Harrison v. United States*, 2021 WL 1269119, at *8 (D. Alaska April 6, 2021) (applying Rule 16(b) and Rule 6(b) to a motion for substitution of an expert). "Both Rule 6(b) and the case authorities make clear that the showing needed to extend a pretrial deadline is more onerous the later in the case it is made, and particularly so if made after a deadline passes." *Savage v. City of Twin Falls*, 2015 WL 12681319, at *7 (D. Idaho Jan. 20, 2015). An excusable neglect determination "is an equitable one that depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1123–24 (9th Cir. 2000).

2. *Analysis*

Miesen fails to show good cause and excusable neglect sufficient to justify substitution of his experts. Despite the Court's order excluding McDermott because of the inadmissibility of his testimony and report, Miesen requests that the Court should allow a new, unidentified expert to step into McDermott's shoes and, using McDermott's report, to testify in this case. Indeed, Miesen promises that the substitute expert would "limit his or her opinions to those issues addressed by McDermott." Dkt. 1124-1, at 4. Believing that only some parts of McDermott's report were "objectionable" to the Hawley Troxell

MEMORANDUM DECISION AND ORDER - 4

Defendants, Miesen proposes that "the substitute expert would be limited to using whichever opinions he or she agrees with which are contained within McDermott's report and by deleting any objectionable content," and any "deletions or slight modifications" would be noted in a "red-line version." Dkt. 1139, at 8–9.

Unconvincingly, Miesen argues that this situation is no different than if his expert witness had died prior to trial. In that context, courts often find good cause to substitute experts. *See, e.g.*, *GF & C Holding Co.*, 2012 WL 5907092, at \*1 ("Plaintiff's earlier request to extend the time to disclose its expert because of the untimely demise of [the prior expert witness] clearly met the good cause standard."); *Stewart Title Guar. Co. v. Suisse*, 2014 WL 10290846, at \*2–3 (D. Idaho Oct. 15, 2014) (holding that the "untimely passing" of the expert was good cause for substitution); *In re Northrop Grumman Corp. ERISA Litig.*, 2016 WL 6826171, at \*3 (C.D. Cal. Apr. 7, 2016); *Brooks v. Cnty. of San Joaquin*, 2012 WL 5927416, at \*1 (E.D. Cal. November 26, 2012).

But the exclusion of an expert witness for inadmissibility is not the same as the death of an expert witness. Miesen's expert did not die—he was barred from testifying.

A more apt case comparison is *McDonald v. Wexford Health Sources, Inc.*, 2016 WL 1383191 (N.D. Ill. Apr. 7, 2016), where the court ruled that an expert's opinions were inadmissible, the expert subsequently died, and then the party moved to substitute that expert. Under such circumstances, the court explained that the expert's death did "not clear the slate and allow the defendants to find a better expert who [could] overcome the deficiencies" of the initial expert's inadmissible opinion. *Id.* at \*8. In *McDonald*, the expert *actually died*, but even then, the court did not allow substitution since the expert was

MEMORANDUM DECISION AND ORDER - 5

excluded before his death. *Id.*

This Court has explained, "A party's choice upon which expert to hire for assistance in a lawsuit is just that—a choice. Sometimes the results of those choices go smoothly and successfully. Sometimes they do not." *Crandall*, 2012 WL 6086598, at *3. Here, the choice was not successful.

"[T]he timely progression of a lawsuit cannot turn on whether a party is fully satisfied with the particular choice of an expert." *Id.* Miesen argues that he was satisfied with McDermott. Be that as it may, he is not satisfied having an excluded expert witness, and his dissatisfaction with this Court's order to exclude his expert is not reason to give him another try at securing a helpful and admissible expert. *See United States v. Smith*, 562 F.3d 866, 871 (7th Cir. 2009) ("'If at first you don't succeed, try, try again' might make a memorable maxim, but it is ill-suited as a principle for case management.").

The good cause inquiry revolves around "the moving party's reasons for seeking modification." *Johnson*, 975 F.2d at 609. Miesen's reason for wanting a substitute witness is that Miesen does not believe the Court should have excluded McDermott, who was Miesen's only case-in-chief expert witness for his legal malpractice claims. The Motion to Substitute is therefore not much different than a reconsideration motion, which Miesen has already filed (Dkt. 1115) and which the Court has already denied (Dkt. 1123). While Miesen clearly disagrees with the Court's decision to exclude McDermott, the Court does not find good cause to undermine its prior orders excluding McDermott (Dkt. 1112) and denying reconsideration (Dkt. 1123) by allowing a new expert witness to step into McDermott's shoes.

MEMORANDUM DECISION AND ORDER - 6

As for Miesen's contention that limits on the substitute expert's testimony would cure any admissibility problem, the Court has also already rejected this argument. When he was opposing the exclusion of McDermott, Miesen argued that McDermott could limit his testimony to prevent running afoul of Federal Rules of Evidence 403 and 702. Dkt. 1097, at 18–19. He makes the same argument here. The Court rejected that argument then, and it rejects it now.

Moreover, Miesen cannot establish excusable neglect. Substituting in a new expert would severely prejudice the opposing party since this Court has already excluded Miesen's expert. *See McDonald*, 2016 WL 1383191, at *8 ("Allowing the defendants to profit from . . . [their expert's] death by retaining a new expert would be an improper boon to the defendants, who would have no . . . expert if [the deceased expert] were alive due to the deficiencies discussed above.") Additionally, substituting in a new expert would add significant and unjustifiable delay. This case is over a decade old. The time for disclosure of expert witnesses passed on August 5, 2019, after having been originally set for September 1, 2017, and was, thereafter, extended five times. Dkts. 191, 274, 398, 484, 522, 602. Miesen believes he acted in good faith and has good reason to justify the lengthy delay since he did not anticipate the Court would exclude his expert witness. He may not have anticipated such a result, but he certainly did know of McDermott's involvement in this case and should have known its impropriety. In summary, Miesen fails to show good cause and excusable neglect sufficient to justify again resetting the clock so he can have another shot at getting a better witness. *See U.S. ex rel. Agate Steel, Inc. v. Jaynes Corp.*, 2015 WL 1546717, at *2 (D. Nev. April 6, 2015) ("The purpose of allowing substitution of an expert

MEMORANDUM DECISION AND ORDER - 7

. . . is not an opportunity to designate a better expert."). Accordingly, the Court DENIES the Motion to Substitute.

### B. Motion for Lesser Sanctions (Dkt. 1136)

Following his Motion to Substitute, Miesen filed the instant Motion for Lesser Sanctions, which also requests substitution but under a different standard. Miesen premises his Motion for Lesser Sanctions on the assumption that the Court will deny his Motion to Substitute. He argues that if the Court denies his Motion to Substitute, the Court should still allow him to substitute a new expert for McDermott. This is a circular absurdity. For the same reasons the Court denied the Motion to Substitute and for additional reasons, the Court DENIES the Motion for Lesser Sanctions.

Miesen construes the Court denying his request to substitute as a sanction under Federal Rule of Civil Procedure 37(c) because that decision, and the decision to exclude McDermott, leave Miesen without a disclosed expert witness. He contends that the standard set forth by Rule 37(c) allows for an undisclosed expert witness to testify at trial. Ultimately, Miesen's arguments fail because the motion improperly asks the Court to reconsider arguments it has already rejected: Rule 37(c) is inapplicable, and even if Rule 37(c) applied, it is a dead end since the standard is no more favorable to Miesen than is Rule 16(b).

First, the Motion for Lesser Sanctions is improper because it is no more than an extension of Miesen's Motion to Substitute.[1] Miesen has had ample opportunity to argue

---

[1] The Hawley Troxell Defendants argue that Miesen filed the Motion for Lesser Sanctions because he knew he could not bring up new arguments in his reply brief in support of the Motion to Substitute. While this

MEMORANDUM DECISION AND ORDER - 8

that he should still have an expert witness—in his responses to the two motions to exclude McDermott (Dkts. 1096, 1097), in his motion to reconsider the exclusion (Dkt. 1115), and in the Motion to Substitute (Dkt. 1124). He rehashes the same arguments here that he did in those filings; the only difference is that he wants the Court to reevaluate such arguments using a different, but no more favorable, standard. In the end, Miesen's desired outcome would undermine the Court's prior orders excluding his expert witness.

In the Motion for Lesser Sanctions, Miesen argues that the Court should "not entirely exclude his substitute expert," that his "legal malpractice claims requir[e] expert testimony," that "there can be no prejudice if a new expert is limited to adopting certain or all of the unobjectionable portions of McDermott's opinions contained in his report," and that the Hawley Troxell Defendants "made no meaningful challenge to a single one of McDermott's opinions or his methodology." Dkt. 1136-1, at 4, 6. Miesen has made these arguments before. *E.g.*, Dkt. 1097, at 13 ("[The Hawley Troxell Defendants] do not challenge a single complete opinion or the basis for any of his opinions, and his opinions are not impacted even if all of the objections were well taken."); *id.* at 18 ("[Objectionable statements or opinions] could be removed from his report . . . ."); *id.* at 19 ("[T]here is no basis to entirely exclude him as an expert witness."); Dkt. 1115-1, at 8 ("There is no dispute that expert testimony is required for legal malpractice claims unless within a laymen's knowledge."); *id.* at 10 ("Opposing counsel have no evidence to support any contention that McDermott would not follow any order of this Court or limit his testimony if

theory speculates as to Miesen's motives, a comparison between the two motions makes clear that both seek the same relief: substitution of Miesen's expert witness.

MEMORANDUM DECISION AND ORDER - 9

required."); *id.* at 22 ("[O]pposing counsel improperly jumped to wholesale exclusion.");
*id.* ("McDermott's trial testimony as an expert witness has been excluded without these
factors ever being considered."); Dkt. 1124-1, at 4 ("Miesen is agreeing that the substitute
expert witness would limit his or her opinions to those issues addressed by McDermott,
which will prevent any prejudice to the defendants."); *id.* ("With the exclusion of
McDermott as an expert witness, Miesen has no expert witness to provide the expert
opinions for his case in chief, which are critical for his legal malpractice claims."). Thus,
Miesen improperly filed the Motion for Lesser Sanctions as a separate motion rather than
including his arguments about Rule 37(c) in his Motion to Substitute.

Miesen contends it was necessary for him to bring this separate motion under Rule
37(c) because, in their response to his Motion to Substitute, the Hawley Troxell Defendants
referenced Rule 37(c). Dkt. 1136, at 3–4. However, that sole reference was not an
invocation of Rule 37(c); rather, Defendants referenced the factors considered in a Rule
37(c) analysis because they are substantially similar to the factors used for assessing
excusable neglect under Rule 6(b). Dkt. 1127, at 20 ("Significantly, the four factors the
Court must consider when determining whether excusable neglect is present under Rule
6(b) are largely the same as the four factors that courts consider when determining whether
the violation of a discovery deadline is justified or harmless under Rule 37(c)(1)."); *see
also* Dkt. 1151, at 3 n.1 (providing the Hawley Troxell Defendants' explanation for their
reference to Rule 37(c)).

Under Rule 37(c)(1), when a party fails to disclose a witness, that witness is
automatically excluded, but the court, on either party's motion, may decide to add further

MEMORANDUM DECISION AND ORDER - 10

sanctions or to impose a lesser sanction than excluding the witness. Fed. R. Civ. P. 37(c)(1). Lest the Court has not been clear in the multiple decisions regarding the exclusion of Miesen's expert witness—the Court has barred Miesen's expert witness. This decision is not up for negotiation.

Rule 37(c) applies only if Miesen is presenting a new expert witness who was not previously disclosed.[2] Such would be a drastic tactic to get around this Court's clear rulings that: (1) Miesen's only disclosed expert is excluded; (2) reconsideration will not be granted; and (3) substitution is denied.[3] The Court is not amenable to such a tactic, and if Miesen does offer an undisclosed expert, the Court would turn to Rule 37(c)(1) in determining if *further sanctions, in addition to the automatic exclusion of the undisclosed witness*, are warranted.[4] Because, at this stage, Miesen is asking for substitution rather than presenting a new expert witness, the applicable standard is Rule 16(b), not Rule 37(c).

---

[2] The Ninth Circuit has considered both Rule 16(b)(4) and Rule 37(c)(1) when a party had presented an undisclosed expert witness. *Wong v. Regents of University of California*, 410 F.3d 1052, 1060–61 (9th Cir. 2005). Here, however, Miesen has not presented an undisclosed expert witness.

[3] While the current Memorandum Decision and Order resolves the Motion to Substitute at the same time as the Motion for Lesser Sanctions, Miesen assumes in his Motion for Lesser Sanctions that the Court has denied his Motion to Substitute. Therefore, the Court does not find it prejudicial to warn Miesen that the Motion for Lesser Sanctions is an attempt to get around the Court's ruling denying the Motion to Substitute.

[4] Rule 37(c)(1) provides that in addition to automatic exclusion, the Court may also impose the following sanctions: "order payment of the reasonable expenses, including attorney's fees, caused by the failure"; "inform the jury of the party's failure"; or any of the sanctions listed in Rule 37(b)(2)(A)(i)–(vi), which are listed below:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part; [or]

MEMORANDUM DECISION AND ORDER - 11

Finally, even if Rule 37 applied, the Court does not find substitution of an expert witness to be either substantially justified or harmless. *See Zone Sports Ctr., LLC v. Rodriguez*, 2016 WL 224093, at \*8 (E.D. Cal. Jan. 19, 2016) ("Although the Rule 16 analysis is dispositive . . . , even if Rule 16(b) were not a hurdle to [the party's] request, there is no basis for relief under Rule 37(c)."); *Gbarabe v. Chevron Corp.*, 2017 WL 956628, at \*17 n.19 (N.D. Cal. Mar. 13, 2017) ("[E]ven if the Court analyzed plaintiff's motion to substitute under Rule 37, as plaintiff asserts is appropriate, the Court would reach the same conclusion."). In determining "whether a violation of a discovery deadline is justified or harmless" under Rule 37, district courts consider the following factors: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. App'x 705, 713 (9th Cir. 2010). These "factors are largely coextensive" with those under the Rule 16(b) analysis. *Fid. Nat. Fin., Inc. v. Nat. Union Fire Ins. Co.*, 308 F.R.D. 649, 652 (S.D. Cal. 2015). Thus, Rule 37(c) is no more favorable to Miesen than is Rule 16(b).

The Court excluded Miesen's expert witness on inadmissibility grounds. And, as the Court has already explained ad nauseam, substitution is not warranted. Permitting an undisclosed expert witness to take McDermott's place would run afoul of the Court's prior

---

(vi) rendering a default judgment against the disobedient party[.]

Fed. R. Civ. P. 37.

MEMORANDUM DECISION AND ORDER - 12

**17-ER-4286**

rulings excluding McDermott and disallowing substitution. Such willful disregard for the Court's orders is not justified. Furthermore, allowing an undisclosed expert to enter at this stage would extend the length of this case, which is already over a decade old, would disrupt the current proceedings, would most likely disrupt trial, and would result in significant prejudice to the Hawley Troxell Defendants.

## C. Motion for Leave to Appeal (Dkt. 1135)

On the same day Miesen filed his Motion for Lesser Sanctions, he also filed his Motion for Leave to Appeal the Court's decision to exclude McDermott. Miesen requests that the Court "certify the two orders excluding McDermott to authorize Miesen to pursue an interlocutory appeal and stay this action pending the outcome of that appeal." Dkt. 1135-1, at 4.

Though Miesen recognized in his Motion for Leave to Appeal that the order excluding McDermott and the order denying reconsideration of McDermott's exclusion were interlocutory orders, he also directly appealed the two decisions without waiting for authorization from this Court. In his Notice of Appeal, Miesen argued that the two orders were appealable under the collateral order exception. Dkt. 1140. The Ninth Circuit summarily dismissed Miesen's appeal because the order excluding McDermott was "neither final nor immediately appealable." Dkt. 1176.

Now this Court must determine whether to certify the two orders for appeal under 28 U.S.C. § 1292(b). If the Court were to do so, the Ninth Circuit could still dismiss the appeal. 28 U.S.C. § 1292(b); *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002) ("Even where the district court makes such a certification, the court of

MEMORANDUM DECISION AND ORDER - 13

appeals nevertheless has discretion to reject the interlocutory appeal, and does so quite frequently.").

For the reasons stated below, the Court DENIES the Motion for Leave to Appeal.

*1.  Legal Standard*

As a general rule, a party may seek review of a district court's rulings only after the entry of final judgment. *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1027 (9th Cir. 1981). Interlocutory certification is a narrow exception to be applied sparingly and only in "exceptional circumstances." *Id.* at 1026; *see also James*, 283 F.3d at 1067 n.6 ("Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly."); *Pac. Union Conf. of Seventh–Day Adventists v. Marshall*, 434 U.S. 1305, 1309 (1977) ("The policy against piecemeal interlocutory review other than as provided for by statutorily authorized appeals is a strong one."). Ultimately, the "decision to certify an order for interlocutory appeal is committed to the sound discretion of the district court." *Villarreal v. Caremark, LLC*, 85 F. Supp. 3d 1063, 1067 (D. Ariz. 2015) (cleaned up).

A district court may certify an order for immediate appeal where: (1) the order involves a controlling question of law; (2) as to which there is a substantial ground for difference of opinion; *and* (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) ("Certification under § 1292(b) requires the district court to expressly find in writing that all three § 1292(b) requirements are met."). The party pursuing an interlocutory appeal bears the burden of demonstrating the certification

MEMORANDUM DECISION AND ORDER - 14

requirements of § 1292(b) are met. *Id.* "Even when all three statutory criteria are satisfied, district court judges have unfettered discretion to deny certification." *Schuler v. Battelle Energy All., LLC*, 2019 WL 5295461, at *2 (D. Idaho Oct. 18, 2019) (cleaned up).

### 2. Analysis

The Court finds both that Miesen has not met his burden of demonstrating the certification requirements of § 1292(b) and, even if he had met those requirements, an interlocutory appeal would be inappropriate.

The first requirement is that the order involve a controlling question of law. Miesen and the Hawley Troxell Defendants construct the issues at differing levels of abstraction, so they come to differing conclusions on whether the issues involve controlling questions of law. Because the Court finds that there is not a substantial ground for a difference of opinion and that an immediate appeal would not materially advance the ultimate termination of litigation, the Court does not deem it necessary to resolve whether the orders Miesen seeks to appeal involve a controlling question of law.

To determine if a "substantial ground for difference of opinion exists under § 1292(b), courts must examine to what extent the controlling question of law in unclear." *Couch*, 611 F.3d at 633 (quoting 3 Federal Procedure, Lawyers Edition § 3:212 (2010)). Traditionally, "a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'" *Id.* However, a substantial difference of opinion is not present "just because a court is the first to rule on a particular question or just because

MEMORANDUM DECISION AND ORDER - 15

counsel contends that one precedent rather than another is controlling . . . ." *Id.* (cleaned up). Additionally, neither advisory opinions nor a party's "strong disagreement with the court's ruling [are] sufficient for there to be a 'substantial ground for difference.'" *Id.* (cleaned up).

The Court reiterates what it has already stated in this order and in other orders regarding the exclusion of McDermott: the decision to exclude McDermott was based on Federal Rules of Evidence 403 and 702. Miesen argues that the Court's exclusion decision conflicts with Ninth Circuit precedent and other circuits by creating a new rule. Dkt. 1135-1, at 12. However, the Court did not create a new rule; it applied Rules 403 and 702. Miesen does not meet his burden in showing that there is substantial ground for difference of opinion regarding the Court's application of Rules 403 and 702 to exclude expert testimony. Instead, as he has done in the Motion for Reconsideration, the Motion to Substitute, and the Motion for Lesser Sanctions, Miesen expresses his disagreement with the Court's decision to exclude McDermott. While it is unsurprising that a party seeking an appeal disagrees with the decision at issue, such disagreement is not sufficient to meet the § 1292(b) requirements. *Couch*, 611 F.3d at 633.

Miesen cites no cases that demonstrate a significant dispute regarding the appropriate resolution of whether an expert witness should be excluded under Rules 403 and 702. The cases he does cite do not contradict the Court's admissibility decision. For instance, Miesen cites *Lewart v. Boiron, Inc.*, 212 F. Supp. 3d 917, 928 n.6 (C.D. Cal. 2016), for the proposition that bias "is not a sufficient ground to exclude an expert on a *Daubert* analysis." The Court did not exclude McDermott solely because of bias. *See* Dkt.

MEMORANDUM DECISION AND ORDER - 16

1112. Thus, this footnote from another district court is not sufficient contrary authority to meet § 1292(b)'s "substantial ground for difference" requirement. Miesen next cites *United States v. Abonce-Barrera*, 257 F.3d 959, 965 (9th Cir. 2001), for the proposition that "[g]enerally, evidence of bias goes toward the credibility of a witness, not his competency to testify, and credibility is an issue for the jury." This too does not contradict the Court's ruling since: (1) it simply states the *general* rule; (2) the Court's decision was not based solely on bias; and (3) Rules 403 and 702 expressly permit the Court to make admissibility decisions. Miesen's other citations for this point fare no better for the same reasons.

In short, Miesen does not demonstrate a "substantial ground for difference" in the application of Rules 403 and 702 to exclude witnesses.[5] Therefore, Miesen has not met his burden under § 1292(b).

Additionally, Miesen has not met the burden of showing that an appeal may materially advance this case. A district court may permit a party to appeal when it believes that an "immediate appeal from an order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The material advancement requirement is met if an immediate appeal decided in favor of the appellant would "avoid protracted and expensive litigation" and end the lawsuit. *See United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959) ("Section 1292(b) was intended primarily as a means of expediting litigation by permitting appellate consideration during the early stages of litigation of legal questions

---

[5] Miesen also asks the Court to certify a question about whether paying an expert witness a contingency fee is a permissible ground for excluding an expert witness. This Court did not rule on this issue. Dkt. 1112, at 12–13. Thus, the issue is not a controlling question of law under § 1292(b).

MEMORANDUM DECISION AND ORDER - 17

17-ER-4291

which, if decided in favor of the appellant, would end the lawsuit.); *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (noting § 1282(b) is to be used "only in extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation," and holding a district court's order granting interlocutory appeal was "improvidently granted" upon finding the case at issue was "unexceptional"). Examples of such questions which, if decided in favor of the appellant, would materially advance the ultimate termination of the lawsuit "are those relating to jurisdiction or a statute of limitations which the district court has decided in a manner which keeps the litigation alive but which, if answered differently on appeal, would terminate the case." *Woodbury*, 263 F.2d at 787.

"In applying these standards, the court must weigh the asserted need for the proposed interlocutory appeal with the policy in the ordinary case of discouraging 'piecemeal appeals.'" *Assoc. of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1087 (E.D. Cal. 2008) (quoting *In re Heddendorf*, 263 F.2d 887, 889 (1st Cir. 1959)). This does not mean that an interlocutory appeal must completely end the litigation. *See Woodbury*, 263 F.2d at 787. Rather, an "interlocutory appeal must be likely to materially speed the termination of the litigation." *Hansen v. Schubert*, 459 F. Supp. 2d 973, 1000 (E.D. Cal. 2006).

This case began in 2010. The Court understands the acute need for prompt resolution of this case. However, the Court does not find that allowing appeal of the order excluding McDermott would serve the purpose of more efficiently resolving this saga.

Miesen offers two reasons why he believes an appeal would materially advance the

MEMORANDUM DECISION AND ORDER - 18

termination of this case. First, he argues that it would be more time consuming if the parties proceeded through the summary judgment and trial phase, he then successfully appealed the exclusion decision, and the parties had to go through summary judgment and trial again. This risk is present in nearly all cases where a party seeks an interlocutory appeal, but there is a "strong bias . . . against piecemeal appeals." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 872 (1994); *see In re Lorillard Tobacco Co.*, 370 F.3d 982, 988 (9th Cir. 2004) (noting that "applying a loose construction" of § 1292 "only encourages unsuccessful assertions of jurisdiction, wasting precious appellate resources, burdening adverse parties, and perhaps diverting effort from expeditious continuation of trial court proceedings.'" (quoting 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3922.1, at 94 (1977)). Moreover, if an immediate appeal was decided in Miesen's favor, it would not "avoid protracted and expensive litigation" or end the lawsuit. Rather, it would likely trigger more motions about McDermott's report and testimony, and a series of trial objections. *See* Dkt. 1154, at 19.

Miesen's second argument relates to his Motion to Substitute. He contends, "[A]ssuming this Court grants Miesen's motion to substitute a new expert witness in place of McDermott, Miesen would first appeal the two orders excluding McDermott before he and his counsel incur significant additional sums paying a new expert witness." Dkt. 1135-1, at 17. The Court is denying the Motion to Substitute; therefore, this is not a reason to certify the two orders for appeal. Accordingly, Miesen has failed to meet his burden in showing that an immediate appeal would advance the termination of the case.

Finally, even if Miesen had met the § 1292(b) requirements, the Court still has

MEMORANDUM DECISION AND ORDER - 19

discretion to deny certifying an interlocutory appeal. *Schuler*, 2019 WL 5295461, at *2.

The Court will not certify the appeal because Miesen fails to satisfy § 1292(b) and because, in its discretion, the Court finds there are additional reasons to deny certification. The issue surrounding McDermott has consumed a year of this litigation. The Hawley Troxell Defendants filed their motions to exclude McDermott in January 2021. The Court then stayed the briefing on several dispositive motions because it was concerned its decision regarding McDermott would affect the legal or factual arguments for those motions.[6] Dkt. 1089. After the Court excluded McDermott, Miesen filed a Motion for Reconsideration (Dkt. 1115) that improperly asked the court to rethink decided matters. Dkt. 1123. The day after the Court denied the Motion for Reconsideration, Miesen filed his Motion to Substitute, which then was followed by the Motion for Lesser Sanctions, the Motion for Leave to Appeal, and a direct appeal—all centered on the matter of McDermott's exclusion. For this case to proceed, the issue of Miesen's expert witness must be settled, and the Court expects Miesen to respect, even if he disagrees with, the Court's repeated rulings regarding his expert witness.

## IV. CONCLUSION

In prior orders, the Court has excluded Miesen's expert witness, Richard McDermott, and denied reconsideration of that decision. Dkts. 1112, 1123. The Court finds that the Motion to Substitute and the Motion for Lesser Sanctions (which is in practice a

---

[6] Before the briefing stay, the Hawley Troxell Defendants filed a Motion to Dismiss. Dkt. 1067. Several other Defendants joined that motion. Dkt. 1090. The Motion to Dismiss is ripe for review. Because its resolution may affect the need for subsequent dispositive motion, the Court is keeping the briefing stay in place pending the resolution of the Motion to Dismiss.

MEMORANDUM DECISION AND ORDER - 20

**17-ER-4294**

subsequent motion to substitute) seek to undermine the Court's ruling to exclude McDermott. Therefore, the Court DENIES the Motion to Substitute (Dkt. 1124) and the Motion for Lesser Sanctions (Dkt. 1136). The Court also DENIES the Motion for Leave to Appeal (Dkt. 1135) under its discretion and because the Court finds that Miesen did not meet the § 1292(b) requirements.

### V. ORDER

The Court HEREBY ORDERS:

1. The Motion to Substitute (Dkt. 1124) is **DENIED**.

2. The Motion for Lesser Sanctions (Dkt. 1136) is **DENIED**.

3. The Motion for Leave to Appeal (Dkt. 1135) is **DENIED**.

4. The stay on briefing for Dkts. 1059, 1062, 1064, 1071, 1074, 1075, 1077, 1078, and 1086 remains in force.

DATED: February 8, 2022

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 21

DANIEL LORAS GLYNN, ISB #5113
JONES ♦ WILLIAMS ♦ FUHRMAN ♦ GOURLEY, P.A.
The 9th & Idaho Center
225 N. 9th Street, Suite 820
PO Box 1097
Boise, ID 83701
Telephone:  (208) 331-1170
Facsimile:  (208) 331-1529
dglynn@idalaw.com
Attorneys for James Beck, Michael Cashman, Connie Henderson, John Taylor, Crop USA
Insurance Agency, Inc., and Crop USA Insurance Services, LLC

KIM J. TROUT, ISB #2468
TROUT LAW, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID  83703
Telephone (208) 577-5755
Facsimile (208) 577-5756
service@trout-law.com

Attorneys for Defendants AIA Services Corporation & AIA Insurance, Inc.


## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>vs.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an | Case No. 1:10-CV-404-DCN-CWD<br><br>**JOINT RESPONSE TO THIRD DECLARATION OF MICHAEL S. BISSELL IN SUPPORT OF MOTION FOR ORDER GRANTING REED TAYLOR'S APPLICATION FOR AN ADVANCEMENT OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856 [DKT. 1056] AS FILED ON FEBRUARY 2, 2022 [DKT. 1195]** |

**JOINT RESPONSE TO THIRD DECLARATION OF MICHAEL S. BISSELL IN SUPPORT OF MOTION FOR ORDER GRANTING REED TAYLOR'S APPLICATION FOR AN ADVANCEMENT OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856 [DKT. 1056] AS FILED ON FEBRUARY 2, 2022 [DKT. 1195] - 1**

17-ER-4296

individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,

Defendants.

In compliance with this Court's Order Granting Motion for Advancement of Expenses (Dkt. 1056) as entered on January 24, 2022 [Dkt. 1194], the Defendants James Beck, Michael Cashman, Connie Henderson, John Taylor, Crop USA Insurance Agency, Inc., and Crop USA Insurance Services, LLC, through their counsel Daniel Loras Glynn, and Defendants AIA Services Corporation & AIA Insurance, Inc., through their counsel Kim J. Trout, and hereby submit their Joint Response to the Third Declaration of Michael S. Bissell in Support of Motion for Order Granting Reed Taylor's Application for an Advancement of Expenses from AIA Services and AIA Insurance Pursuant to I.C. 30-1-854 And 30-1-856 [Dkt. 1056] as Filed on February 2, 2022 [Dkt. 1195].

While counsel for the Third-Party Defendant/Counterclaimant Reed Taylor (hereinafter referred to as "Reed") has sought to create a very intricate division of time allotments in an effort to comply with this Court's Order, Reed has failed the single most important requirement of this Court's Order as to any fees sought. As the Court made clear, Reed may only seek an advancement of expenses "so far as they relate to defending himself for actions he took as an officer or director of the AIA entities…" (Dkt. 1194 at 10.)

**JOINT RESPONSE TO THIRD DECLARATION OF MICHAEL S. BISSELL IN SUPPORT OF MOTION FOR ORDER GRANTING REED TAYLOR'S APPLICATION FOR AN ADVANCEMENT OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856 [DKT. 1056] AS FILED ON FEBRUARY 2, 2022 [DKT. 1195] - 2**

17-ER-4297

Reed, as he has admitted previously, was never an officer of the AIA entities during the relevant period and only a director for approximately two (2) years of the near twenty-years of alleged malfeasance alleged by the Plaintiff. Reed's conduct in these proceedings has done nothing to advance his alleged compliance with his duties during this period of time. Rather, Reed has focused his efforts on his counterclaim and his attempts to distance himself from participation on the "advisory board" of the CropUSA entities. As such, Reed's present application should be denied.

## ARGUMENT

The Court's Order made one single pre-requisite to any award of fees abundantly clear. In order to receive an advancement of a reasonable amount of attorney fees, Reed must only seek those fees directly attributable to his defense of his actions as an officer or director of the AIA Entities. In this regard, the tenure of Reed's directorship for AIA Services as relevant to the claims of the Plaintiff must be identified.  Fortunately, Reed has already identified such as indisputable fact for the benefit of this Court.  *See* Reed Taylor's Statement of Undisputed Material Facts in Support of Motions for Summary Judgment Against Third Party Plaintiffs and The Hawley Troxell Defendants Pursuant to Fed.R.Civ.P. 56 AND Loc.Civ.R.7.1(b)(1) (hereinafter referred to as "Reed UF").

Reed admits, on or about July 12, 1995, AIA Services entered into a Stock Redemption Agreement with Reed whereby Reed was no longer a shareholder of AIA Services and was no longer an officer of any AIA entity.  (Reed UF, ¶ 2 & 10.) Moreover, Reed has also identified as an undisputed fact that he was no longer a director of AIA Services as of March 27, 2001.  (Reed

**JOINT RESPONSE TO THIRD DECLARATION OF MICHAEL S. BISSELL IN SUPPORT OF MOTION FOR ORDER GRANTING REED TAYLOR'S APPLICATION FOR AN ADVANCEMENT OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856 [DKT. 1056] AS FILED ON FEBRUARY 2, 2022 [DKT. 1195] - 3**

UF, ¶ 8.)  Reed has further asserted as an undisputed fact that Plaintiff "is not seeking damages arising earlier than 1999." (Reed UF, ¶ 4.) Thus, given these indisputable and admitted facts the focus must be on those claims asserted by the Plaintiff which have their origin in the actions of AIA's directors from 1999 until March 27, 2001.

As asserted by the Plaintiffs, the alleged malfeasance of the members of AIA's board of directors had its origins in the decision of AIA Services to decline to establish a subsidiary entity to sell the previously unpursued crop insurance product line[1] and instead have such pursued by an independent entity known as CropUSA Insurance Agency, Inc. (Third Amended Complaint (Dkt. 182-2), ¶¶ 45-51.)  Plaintiff alleges that this "illegal spin off" was accomplished by January 10, 2001 – during the time period Reed does not dispute his directorship in AIA Services. (Third Amended Complaint (Dkt. 182-2), ¶ 52.)

Plaintiff also alleges that during the term of Reed's tenure, AIA permitted the pursuit of this opportunity in violation of John Taylor's Executive Officer Agreement. (Third Amended Complaint (Dkt. 182-2), ¶¶ 51 & 57.) In addition, Plaintiffs also assert that during Reed's unquestioned tenure as a director of AIA Services, that AIA Insurance entered into an unlawful Master Marketing Agreement as well as a Management Agreement with CropUSA. (Third Amended Complaint (Dkt. 182-2), ¶¶ 58-59.)

Despite these assertions of malfeasance occurring while Reed was a director of AIA Services, Reed's counsel has undertaken no action to support the other directors in the undertaking

---

[1] However, as John Taylor has explained, AIA Services was unable to satisfy the requirements of Risk Management Agency, the regulatory agency of the United States Department of Agriculture. (Affidavit of John Taylor in Support of Motion for Summary Judgment (Dkt. 1072), ¶ 11-15.)

**JOINT RESPONSE TO THIRD DECLARATION OF MICHAEL S. BISSELL IN SUPPORT OF MOTION FOR ORDER GRANTING REED TAYLOR'S APPLICATION FOR AN ADVANCEMENT OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856 [DKT. 1056] AS FILED ON FEBRUARY 2, 2022 [DKT. 1195] - 4**

of these actions. Rather, aside from a single question to James Beck, Michael Cashman, Connie Henderson and John Taylor inquiring as to what financial harm these individuals believe Reed caused to AIA Services, the vast amount of Reed's time has been spent on inquiries pertaining to AIA's transactions long after the end of his tenure as a director of AIA Services and in support of his Counterclaim. (Declaration Of Counsel in Support of Response to Third Declaration of Michael S. Bissell in Support of Motion for Order Granting Reed Taylor's Application for an Advancement of Expenses from AIA Services and AIA Insurance Pursuant To I.C. 30-1-854 And 30-1-856 [Dkt. 1056] as Filed on February 2, 2022 [Dkt. 1195] ("Declaration of Counsel"), Exhibits A, B, C, D, and E.)

Even more telling is the lack of *any* inquiry by Reed at the depositions of the Plaintiff Dale Miesen or his expert Richard McDermott, even though some of their allegations are squarely directed at the actions of AIA Services during this two-year period of Reed's directorship at AIA Services. These excerpts confirm that which was suspected by the Court in its Order that the "bulk of Reed's actions appear to be in pursuit of his counterclaim." (Dkt. 1194 at 8.)

Even more curious given the minimal amount of questioning on matters pertaining to the indemnification claims of Messrs. Beck, Cashman, Taylor and Mrs. Henderson, is the amount of time that Reed seeks to justify as reasonable for the preparation of these depositions. For example, Reed's counsel spent approximately twelve (12) hours in preparation for the depositions of James Beck, Michael Cashman, and Connie Henderson for an inquiry which brevity is easily noted on the record. In addition, Reed's counsel spent over fourteen (14) hours in preparation for the depositions of John Taylor taken February 24-26, 2020 and July 28-31, 2020. Given the subject

**JOINT RESPONSE TO THIRD DECLARATION OF MICHAEL S. BISSELL IN SUPPORT OF MOTION FOR ORDER GRANTING REED TAYLOR'S APPLICATION FOR AN ADVANCEMENT OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856 [DKT. 1056] AS FILED ON FEBRUARY 2, 2022 [DKT. 1195] - 5**

matter of Reed's inquiries during these depositions, it is clear that all of this time was spent directed at issues other than the defense of Reed's actions as a director of AIA Services from 1999 until March of 2001.

Further confirmation of this fact is evident from the actual written discovery that Reed has served in this matter and for which he has sought recovery. (Declaration of Counsel, Exhibit F) Reed's written discovery does contain a few inquiries specific to the indemnification claim in that it requests identification of decisions made by the directors of AIA Services and CropUSA advisory board that Reed participated in and also seeks detail as to "misrepresentations and concealments" alleged in the Third-Party Complaint. (*Id.*, Interrogatories 1 & 2.)  However, beyond those two inquiries, the remainder of his discovery is directed at issues which can have no relevance to the defense of his actions as a director of AIA Services.  Reed requests the identification of owners of AIA Services, the owners of CropUSA, the owners of Pacific Empire Radio, the list of officers, directors, shareholders or employees who made 10% or more of yearly wages from AIA, Crop, and PERC, the decision makers for the AIA Services 401k plan, the third-party administrator of the AIA Services 401k Plan, the AIA 401k Plan Committee, individuals involved in loans with the AIA Services 401k Plan. (*Id.*, Interrogatories 3-11.) In addition, there is not a single request for production that can be argued to be directed to indemnification issues as they all relate to matters pertaining to the administration of the AIA Services 401k Plan. (*Id.*, Request for Production 1-16.) In fact, rather than serve a request for production for documents related to the indemnification and/or contribution claim pertaining to his directorship at AIA

**JOINT RESPONSE TO THIRD DECLARATION OF MICHAEL S. BISSELL IN SUPPORT OF MOTION FOR ORDER GRANTING REED TAYLOR'S APPLICATION FOR AN ADVANCEMENT OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856 [DKT. 1056] AS FILED ON FEBRUARY 2, 2022 [DKT. 1195] - 6**

Services, Reed only inquires about documents pertaining to his role on the CropUSA Advisory Board.  (*Id.*, Request for Production 16.)

In addition, Reed has identified time spent by his counsel, reduced or otherwise, that has absolutely no relation to the defense of any claim arising as to his conduct as a director of AIA Services in the relevant time frame.  For example, Reed's counsel seeks an award for thirteen (13) hours of time spent in preparation for the deposition of Defendant Richard Riley, one of the attorneys at the law firm of Hawley Troxell Ennis Hawley to whom Plaintiff directs his alleged derivative malpractice and related claims, whereat he did not ask a single question. In addition, Reed's request also includes approximately eighteen (18) hours of time reviewing emails produced by Hawley Troxell Troxell Ennis Hawley. However, the law firm of Hawley Troxell did not begin its representation until <u>after</u> the asserted end of Reed's directorship with AIA Services.

Finally, it should be noted that with respect to the matters identified in blue, the time includes well over 27 hours on the Motion for Advancement itself.  It no sense can such be considered reasonable.

In short there should be no recovery by Reed with respect to the amounts identified by him in yellow and green as Reed's conduct in this litigation does not support his assertion that these fees are reasonably related to the defense of his conduct as a director of AIA Services from 1999 to early 2001. Moreover, Reed's purported identification of fees, regardless of color or purported apportionment, does not accord with the actual defense of the efforts provided.

**JOINT RESPONSE TO THIRD DECLARATION OF MICHAEL S. BISSELL IN SUPPORT OF MOTION FOR ORDER GRANTING REED TAYLOR'S APPLICATION FOR AN ADVANCEMENT OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856 [DKT. 1056] AS FILED ON FEBRUARY 2, 2022 [DKT. 1195] - 7**

**CONCLUSION**

Over the last four years of this litigation, Reed has undertaken no effort to support the actions of AIA Services undertaken during his time period he admits being a director of AIA Services. Instead, as this Court recognized, the bulk of his efforts have been focused on the assertion of his Counterclaims and whole-heartedly supporting the assertions of malfeasance by the Plaintiff. As such, Reed's application wholly fails to identify with specificity those fees which were actually directed to the defense of actions as director of AIA Services nor can the fees identified be said to be reasonable in light of this conduct.  As such this Court should deny Reed's request for fees as contained Third Declaration of Michael S. Bissell in Support of Motion for Order Granting Reed Taylor's Application for an Advancement of Expenses from AIA Services and AIA Insurance Pursuant to I.C. §§ 30-1-854 and 30-1-856 [Dkt. 1056] as Filed on February 2, 2022 [Dkt. 1195].

DATED This 18th day of February, 2022.

JONES ♦ WILLIAMS ♦ FUHRMAN ♦ GOURLEY, P.A.

 /s/   Daniel Loras Glynn
DANIEL LORAS GLYNN
Attorneys for Defendants James Beck, Michael
Cashman, Connie Henderson, John Taylor, Crop
USA Insurance Agency, Inc., and Crop USA
Insurance Services, LLC

TROUT LAW, PLLC

 /s/ Kim J. Trout
Kim J. Trout
Attorney for Defendants AIA Services Corporation
and AIA Insurance, Inc.

**JOINT RESPONSE TO THIRD DECLARATION OF MICHAEL S. BISSELL IN SUPPORT OF MOTION FOR ORDER GRANTING REED TAYLOR'S APPLICATION FOR AN ADVANCEMENT OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856 [DKT. 1056] AS FILED ON FEBRUARY 2, 2022 [DKT. 1195] - 8**

17-ER-4303

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of February, 2022, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF System which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Roderick Cyr Bond | rod@roderickbond.com |
| Andrew M. Schwam | amschwam@turbonet.com |
| Michael S. Bissell | mbissell@campbell-bissell.com |
| Tyler S. Waite | twaite@campbell-bissell.com |
| Jeffrey A. Thomson | jat@elamburke.com |
| Loren C. Ipsen | lci@elamburke.com |
| Joyce A. Hemmer | JAH@ElamBurke.com |
| Bradley S. Keller | bkeller@bryneskeller.com |
| Alyson Anne Foster | alyson@dempseyfoster.com |
| Daniel Loras Glynn | dglynn@idalaw.com |

/s/ Kim J. Trout
Kim J. Trout

**JOINT RESPONSE TO THIRD DECLARATION OF MICHAEL S. BISSELL IN SUPPORT OF MOTION FOR ORDER GRANTING REED TAYLOR'S APPLICATION FOR AN ADVANCEMENT OF EXPENSES FROM AIA SERVICES AND AIA INSURANCE PURSUANT TO I.C. 30-1-854 AND 30-1-856 [DKT. 1056] AS FILED ON FEBRUARY 2, 2022 [DKT. 1195] - 9**

## MOTION TO DISMISS [1067] and MOTION TO CERTIFY [1148]

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

Judge: David C. Nye
Case No: 1-10-cv-404-DCN
Date: March 9 2022
Place: Pocatello, ID (via zoom)

Deputy Clerk: Patti Richmond
Reporter: Anne Bowline
Time:  2:04 – 3:18 pm

## DONNA TAYLOR, etal vs HAWLEY TROXELL ENNIS & HAWLEY, etal
## 1:10-cv-404-DCN

Counsel for Plaintiff Dale Miesen:  Roderick C. Bond and Andrew Schwam
Counsel for Hawley Troxell Ennis & Hawley, LLP, Gary D. Babbitt, D. John Ashby and
    Richard A. Riley: Bradley S Keller and Loren C. Ipsen
Counsel for James Beck, Michael Cashman, Connie Henderson, R. John Taylor, Crop
    USA Insurance Agency and Crop USA Insurance Services, LLC: Daniel L Glynn

(X)     All parties agreed to have this matter heard via zoom rather than an in-person hearing.
(X)     Court heard oral arguments from counsel.
(X)     Matter taken under advisement with a written decision to be forthcoming.

17-ER-4305

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>    Plaintiff,<br><br>  **v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>    Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>PLAINTIFF DALE L. MIESEN'S STATUS REPORT (Dkt. |

STATUS REPORT - 1

**17-ER-4306**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

        Defendants/Third-Party Plaintiffs,

    **v.**

REED TAYLOR, an individual,

        Third-Party Defendant.

REED TAYLOR, an individual,

        Third-Party Defendant/ Counterclaimant,

    **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

        Counterdefendants.

STATUS REPORT - 2

**17-ER-4307**

Pursuant to this Court's Order (Dkt. 1203 at 50-53), Plaintiff Dale L. Miesen ("Miesen") provides the following status report:

## I.   DISCUSSION

### A.   The Hawley Troxell Defendants.

1.     Miesen has settled all of his direct and derivative claims against the Hawley Troxell Defendants for the payment of $1,400,000, subject to Court approval after notice to shareholders and publication of the settlement. A copy of the settlement agreement is attached as Exhibit A. If this Court approves the settlement agreement, all of Miesen's claims against the Hawley Troxell Defendants would be dismissed with prejudice and each side would bear their own attorneys' fees or costs (including discovery sanctions). (*See generally,* Exhibit A.)

2.     Pending Court approval, notice to shareholders and a fairness hearing, Miesen and the Hawley Troxell Defendants have agreed that their pending motion for summary judgment would be held in abeyance, and if the settlement is approved, the motion would be withdrawn. (*See* Dkts. 1070, 1205.) At that time, any pending motions brought by the Hawley Troxell Defendants would be rendered moot. (See Dkts. 554,[1] 1070.)

3.     Miesen and the Hawley Troxell Defendants have submitted a stipulation requesting an order scheduling the briefing deadlines and establishing a hearing date for the motion to approve the settlement and Miesen's request for fees and costs. (Dkt. 1205.) The Court has not yet entered the requested order scheduling the hearing and briefing schedule.

4.     The ultimate distribution of the net settlement proceeds to innocent shareholders

---

[1] Miesen and the Hawley Troxell Defendants inadvertently failed to include the abeyance and ultimate withdrawal of the motion to dismiss in Docket 554 in the settlement agreement. However, that motion would also need to be held in abeyance and would be rendered moot if the Court approves the settlement after notice and publication.

STATUS REPORT - 3

and others will also need to be resolved in the future.

    **B.  <u>GemCap.</u>**

    1.    It appears that Miesen and GemCap have, in principle, agreed to a settlement. The settlement, if agreed, will be straightforward and submitted by stipulation in the coming days. If so, Miesen's direct and derivative claims against GemCap for ultra vires/declaratory relief under I.C. §§ 30-1-304 & 30-29-304 (see Section C below for more information on the direct claims) and aiding and abetting, together with Miesen's injunctive relief, would be dismissed with prejudice and each side would bear their own attorney's fees and costs. (Dkt. 211 at 72-76.) If there is no settlement, GemCap's pending motions would be at issue because GemCap did not join HTEH's motion to dismiss. (*See, e.g.,* Dkts. 437, 548, 1082, 1086, 1203.)

    2.    Assuming Miesen and GemCap's settlement is completed in the near future, Miesen intends to provide notice to shareholders and use the same hearing that will be scheduled for the settlement with the Hawley Troxell Defendants to obtain Court approval and provide notice to shareholders. (*See* Dkt. 1205.)

    **C.  <u>Individual Defendants and CropUSA Defendants.</u>**

    1.    Based on this Court's order (Dkt. 1203), Miesen's derivative claims against the Individual Defendants and the CropUSA Defendants have been dismissed with prejudice. (*See* Dkt. 211 at 60-79.)

    2.    However, Miesen's direct statutory and declaratory relief claims for ultra vires/unauthorized acts/contracts under I.C. §§ 30-1-304 & 30-29-304, together with his injunctive relief, request to set aside the acts/contracts and request for related damages for the AIA Entities, still need to be adjudicated, as provided under I.C. §§ 30-1-304(2)(a) & (3) and 30-29-304(2)(a)

STATUS REPORT - 4

& (3).[2] (*See, e.g.,* Dkt. 211 at 49-55, 72-75, 79-82.) These claims include, without limitation, the failure to comply with the AIA Entities' amended articles of incorporation and bylaws. (*See, e.g.,* Dkts. 1131-10, 1079-20.) The direct claims also include millions of dollars in damages. (*See* Dkt. 211.) In addition, any recovery on Miesen's direct claims would need to be distributed in the future.

3.      Based on this Court's order (Dkt. 1203), the bulk of the Individual Defendants and CropUSA Defendants' motion for summary judgment must still be adjudicated (the motion is largely based on statute of limitations defenses, which, even if adjudicated in their favor, will not result in the dismissal of all of Miesen's remaining direct claims and other relief and damages discussed above). (*See* Dkt. 1071-1.) However, the arguments in their memorandum of law are rendered moot to the extent that they involve Miesen's derivative claims which have been dismissed by this Court. (Dkt. 1071-1 at 15-33.)

D.  **AIA Entities.**

1.      The AIA Entities remain defendants by way of Miesen's direct claims discussed in Section C above. (*See, e.g.,* Dkt. 211 at 49-55, 72-75, 79-82

2.      While this Court has dismissed Miesen's derivative claims, the AIA Entities may still assume the direct prosecution of those derivative claims, rather than allow them to be dismissed, since the AIA Entities are now represented by counsel. (Dkt. 1184.) In addition, Miesen's request for injunctive relief to require the AIA Entities to seat all directors and to comply with their articles and bylaws could result in the AIA Entities assuming control of, and asserting, Miesen's derivative claims directly through the corporations.  (*See, e.g.,* Dkts. 152, 152-4, 312-6.)

---

[2] While Miesen's derivative breach of fiduciary duty claims against the Individual Defendants have been dismissed, the conduct that forms the basis for those claims and others also form the basis, in part, for Miesen's remaining direct claims for ultra vires/declaratory judgment, damages and injunctive relief.

STATUS REPORT - 5

**17-ER-4310**

DATED:  This 19th day of May 2022.

RODERICK BOND LAW OFFICE, PLLC

By:   _/s/ Roderick C. Bond_
    Roderick C. Bond
    Attorney for the Plaintiff Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:   _/s/ Andrew Schwam_
    Andrew Schwam
    Attorney for the Plaintiff Dale L. Miesen

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of May 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:  jat@elamburke.com
Loren C. Ipsen:  lci@elamburke.com
Joyce A. Hemmer:  jah@elamburke.com
Bradley S. Keller:  bkeller@byrneskeller.com
Alyson A. Foster:  alyson@dempseyfoster.com
Tyler S. Waite:  twaite@campbell-bissell.com
Michael S. Bissell:  mbissell@campbell-bissell.com
Daniel L. Glynn:  dglynn@idalaw.com
Andrew Schwam:  amschwam@turbonet.com
Kim J Trout:  ktrout@trout-law.com

    _/s/ Roderick C. Bond_
    Roderick C. Bond

STATUS REPORT - 6

**17-ER-4311**

**KIM J. TROUT, ISB #2468**
TROUT LAW, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID  83703
Telephone (208) 577-5755
Facsimile (208) 577-5756
service@trout-law.com

Attorneys for Defendant AIA Services Corporation & AIA Insurance, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>        Plaintiff,<br><br>vs.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>        Defendants. | Case No. 1:10-CV-404-DCN-CWD<br><br>**STATUS REPORT OF AIA SERVICES CORPORATION AND AIA INSURANCE, INC.** |

Comes now Defendants AIA Services Corporation and AIA Insurance, Inc., by and

through the undersigned counsel of the firm Trout Law, PLLC, and hereby provides a status

**Status Report of AIA Services Corporation and**

## 17-ER-4312

report pursuant to the Court's  Memorandum Decision and Order (Dkt. 1203) dated May 5, 2022, as follows:

The only apparent claims made as against AIA Services Corporation and AIA Insurance, Inc, appear in Count VIII of the Plaintiffs Third Amended Complaint (Dkt. 211) dated April 24, 2017. Assuming arguendo, that any claim is made in said Count VIII, and to the extent any claim is made in Count VIII, the claim appears to be a form of the derivative claims asserted by Plaintiff which derivative claims have now been dismissed. Therefore these reporting Defendants do not believe there are any further claims to be litigated with respect to them.

However, these reporting Defendants shall be filing a Motion for Attorney's Fees which motion is assumed to be one to be decided at a time to be determined by the Court.

DATED May 19, 2022.

TROUT LAW, PLLC


    /s/ Kim J. Trout
Kim J. Trout
Attorney for Defendants AIA Services
Corporation and AIA Insurance, Inc.

**Status Report of AIA Services Corporation and**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 19, 2022, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF System which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Roderick Cyr Bond | rod@roderickbond.com |
| Andrew M. Schwam | amschwam@turbonet.com |
| Michael S. Bissell | mbissell@campbell-bissell.com |
| Tyler S. Waite | twaite@campbell-bissell.com |
| Jeffrey A. Thomson | jat@elamburke.com |
| Loren C. Ipsen | lci@elamburke.com |
| Joyce A. Hemmer | JAH@ElamBurke.com |
| Bradley S. Keller | bkeller@bryneskeller.com |
| Alyson Anne Foster | alyson@dempseyfoster.com |
| Daniel Loras Glynn | dglynn@idalaw.com |

_/s/ Kim J. Trout_
Kim J. Trout

Status Report of AIA Services Corporation and

**17-ER-4314**

DANIEL LORAS GLYNN, ISB #5113
JONES ♦ WILLIAMS ♦ FUHRMAN ♦ GOURLEY, P.A.
The 9th & Idaho Center
225 N. 9th Street, Suite 820
PO Box 1097
Boise, ID 83701
Telephone:  (208) 331-1170
Facsimile:  (208) 331-1529
dglynn@idalaw.com
Attorneys for James Beck, Michael Cashman, Connie Henderson, John Taylor, Crop USA
Insurance Agency, Inc., and Crop USA Insurance Services, LLC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>vs.<br><br>HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-CV-404-DCN-CWD<br><br>**STATUS REPORT OF DEFENDANTS JAMES BECK, MICHAEL CASHMAN, CONNIE HENDERSON, R. JOHN TAYLOR, CROP USA INSURANCE AGENCY, INC., AND CROP USA INSURANCE SERVICES, LLC** |

**STATUS REPORT OF DEFENDANTS JAMES BECK, MICHAEL CASHMAN, CONNIE HENDERSON, R. JOHN TAYLOR, CROP USA INSURANCE AGENCY, INC., AND CROP USA INSURANCE SERVICES, LLC - 1**

**17-ER-4315**

In accordance with this Court's Memorandum Decision and Order of May 5, 2022 [Dkt. 1203] ( "Order"), the Defendants James Beck, Michael Cashman, Connie Henderson, R. John Taylor ("Individual Defendants) and Crop USA Insurance Agency, Inc., and Crop USA Insurance Services, LLC ("CropUSA") hereby submit this status report as to the issues that remain as concerns the foregoing identified parties. This Court's Order dismissed with prejudice all derivative claims asserted by the Plaintiff Dale Meisen against the Individual Defendants and CropUSA.  As explained herein, the consequence of this Court's Order is the complete dismissal of any and all claims asserted by Mr. Miesen as against the Individual Defendants and CropUSA.

There can be little question that all claims asserted by Miesen as against the Individual Defendants and CropUSA are brought derivatively. As Paragraph 5 of the Third Amended Complaint [Dkt. 211] ("TAC") makes clear:

> Plaintiff is bringing this derivative action as a shareholder and on behalf of AIA Services. In addition, Plaintiff is bringing this action as a double derivative action on behalf of AIA Insurance, Inc. ("AIA Insurance"), which is a wholly-owned subsidiary of AIA Services.

(TAC, ¶ 5.) The derivative nature of Mr. Miesen's status is further confirmed in paragraph 183 of the Third Amended Complaint wherein he asserts that he "is not is not pursuing this lawsuit in a collusive manner in order to obtain jurisdiction where it does not otherwise exist, but instead to only pursue bona fide claims on behalf of, for the benefit of, AIA and their innocent shareholders." (TAC, ¶ 183.) In the subsequent paragraph Mr. Miesen again alleges that "Plaintiff is pursuing this derivative action to make AIA whole …" (TAC, ¶ 184.)

Against Mr. Miesen's acknowledged status as a derivative plaintiff a review of the counts asserted in the TAC as against the Individual Defendants and CropUSA require the conclusion that

**STATUS REPORT OF DEFENDANTS JAMES BECK, MICHAEL CASHMAN, CONNIE HENDERSON, R. JOHN TAYLOR, CROP USA INSURANCE AGENCY, INC., AND CROP USA INSURANCE SERVICES, LLC - 2**

17-ER-4316

all claims are derivative in nature. In this regard, the Idaho Supreme Court recognized that the distinction between derivative claims and direct claims is determined by whether the alleged harm caused to the named shareholder plaintiff is distinct from that suffered by other shareholders of the corporation. *McCann v. McCann*, 152 Idaho 809, 815, 275 P.3d 824, 830 (2012). Thus, in contrast to derivative actions an individual direct action requires "injury specific to the shareholder." *Id.*, 152 Idaho at 814, 275 P.3d at 829.

Of the eleven claims presented, nine are asserted against the Individual Defendants and CropUSA.  A review these claims asserted by Mr. Miesen demonstrates that Mr. Miesen has not alleged any harm specific to him that is not allegedly equally experienced by the other shareholders he purports to represent. For example, Count One's breach of fiduciary duties contains no allegation that asserts that any alleged conduct of the Individual Defendants or CropUSA harmed him in a way unique and specific to himself.  In fact, paragraph 190 confirms that the harm allegedly suffered is to AIA and its shareholders not to Mr. Miesen specifically.  (TAC, ¶ 190.) This same conclusion is reached with regard to Count Two (Aiding And Abetting Breaches Of Fiduciary Duties), Count Four (Fraud/Fraudulent Concealment/Constructive Fraud), Count Five (Aiding and Abetting and Conspiracy of Fraud), Count Six (Breach of Contract), Count Seven (Declaratory Judgment), Count Eight (Statutory Relief Including Ulta Vires), Count Nine (Corporate Waste/Excessive Compensation) and Count Eleven (Account Stated). (TAC, ¶ 194, 215, 219, 223, 224, 226, 229-230, 235-236, & 244.)

However, even if there were a doubt as to the derivative nature of Mr. Miesen's claims based on the pleadings, Mr. Miesen himself has confirmed that all damages he seeks in this matter

**STATUS REPORT OF DEFENDANTS JAMES BECK, MICHAEL CASHMAN, CONNIE HENDERSON, R. JOHN TAYLOR, CROP USA INSURANCE AGENCY, INC., AND CROP USA INSURANCE SERVICES, LLC - 3**

are for the shareholders as a whole and not himself specifically.[1] Moreover, not only is the derivative nature of his claims confirmed by pleading and this testimony, but Mr. Miesen also identified a summary of the damages he asserted to be seeking in this action which identified no damages unique to Mr. Miesen himself.

Thus, this Court's Order results in the dismissal with prejudice of <u>all</u> claims asserted in the TAC as against the Individual Defendants and CropUSA. The consequence of this dismissal with prejudice means that Individual Defendants and CropUSA have no liability to which the Third-Party Defendant Reed Taylor should be lawfully required to indemnify or contribute as alleged in the Third-Party Complaint filed by these parties against Reed Taylor. *See*, Docket 218. As such, the Third-Party Complaint and Reed Taylor's Motion for Summary Judgment on this point is moot.[2] *See,* Docket 1073. Although it should be noted that as further demonstration of his litigatory alignment with Plaintiff, Reed Taylor has accepted without objection Plaintiff's assertion of the presence of direct claims against the Individual Defendants and, as a consequence, his own potential liability under the Third-Party Complaint.

---

[1] Respectful of this Court's direction counsel will not submit a Declaration containing Mr. Miesen's deposition testimony as taken on September 18, 2020, pages 133-135 or Miesen's Amended Responses to John Taylor's First Set of Discovery Requests which were served just prior to his deposition identifying these damages. However, counsel is prepared to submit such if of aid to this Court's consideration of the same.

[2] On May 17, this Court entered its Memorandum Decision and Order as to Reed Taylor's Request for Advancement of Fees. *See* Docket 1194 & 1206. Given this Court's determination that the officers and directors of AIA are entitled to payment of their expenses in defending these derivative claims this Court should expect a similar request for an award of expenses, to include attorney fees, from the Individual Defendants. *See* Idaho Code 30-29-854 & 30-29-852 ("[a] corporation shall indemnify a director who was wholly successful, on the merits or otherwise, in the defense of any proceeding to which the director was a party because he or she was a director of the corporation against expenses incurred by the director in connection with the proceeding.")

**STATUS REPORT OF DEFENDANTS JAMES BECK, MICHAEL CASHMAN, CONNIE HENDERSON, R. JOHN TAYLOR, CROP USA INSURANCE AGENCY, INC., AND CROP USA INSURANCE SERVICES, LLC - 4**

Thus, the only matter remaining as concerns Reed Taylor is his claim against the Individual Defendants alleging breaches of Mr. Taylor's fiduciary duty as Trustee of the AIA Services' 401(k) Plan as asserted in a 2017 Counterclaim originally brought by Mr. Bond while he was simultaneously representing Reed Taylor and Mr. Miesen. Hence, it is little more than a disguised derivative claim based on the same facts. Additionally, this Counterclaim purports to be a class action although no steps consistent with Fed.R.Civ.P. 23 have been undertaken. *See* Docket 276. Reed Taylor has moved for Summary Judgment, but only as to John Taylor, the plan trustee, implicitly acknowledging that he has no claim against the others who were not trustees to the Plan and upon whom he never served a compliant presuit demand concerning this claim. *See* Docket 1076. No further briefing has been filed in view of this Court's stay order. However, there is substantial question concerning his standing in view of the fact he has not been a plan participant since 2016 when he received his full payout, he has failed to exhaust presuit requirements, and the United States Supreme Court's recent recognition that plan participants lack standing to bring claims for breach of fiduciary duties.

Finally, there are no pending claims between the Individual Defendants, CropUSA and GemCap Lending I, LLC as these claims were settled and dismissed from this action. *See* Docket 1191 & 1192.

DATED This 19th day of May, 2022.

JONES ♦ WILLIAMS ♦ FUHRMAN ♦ GOURLEY, P.A.

   /s/   Daniel Loras Glynn
DANIEL LORAS GLYNN
Attorneys for Individual Defendants and CropUSA

STATUS REPORT OF DEFENDANTS JAMES BECK, MICHAEL CASHMAN, CONNIE HENDERSON, R. JOHN TAYLOR, CROP USA INSURANCE AGENCY, INC., AND CROP USA INSURANCE SERVICES, LLC - 5

17-ER-4319

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 19th day of May, 2022, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF System which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Roderick Cyr Bond | rod@roderickbond.com |
| Andrew Schwam | amschwam@turbonet.com |
| Michael S. Bissell | mbissell@campbell-bissell.com |
| Tyler S. Waite | twaite@campbell-bissell.com |
| Jeffrey A. Thomson | jat@elamburke.com |
| Loren C. Ipsen | lci@elamburke.com |
| Joyce A. Hemmer | JAH@ElamBurke.com |
| Bradley S. Keller | bkeller@bryneskeller.com |
| Alyson Anne Foster | alyson@dempseyfoster.com |

   /s/ Daniel Loras Glynn
Daniel Loras Glynn

**STATUS REPORT OF DEFENDANTS JAMES BECK, MICHAEL CASHMAN, CONNIE HENDERSON, R. JOHN TAYLOR, CROP USA INSURANCE AGENCY, INC., AND CROP USA INSURANCE SERVICES, LLC - 6**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporations and its wholly owned subsidiary AIA Insurance, Inc., <br><br> Plaintiff, <br> v. <br><br> HAWLEY TROXELL ENNIS & HAWLEY LLP, et al., <br><br> Defendants. | Case No. 1:10-cv-00404-DCN <br><br> **ORDER** |

WHEREAS Plaintiff Dale L. Miesen, individually and as a shareholder asserting derivative claims on behalf of Defendants AIA Services Corporation ("AIA Services") and its subsidiary AIA Insurance, Inc. ("AIA Insurance"), and Defendants Hawley Troxell Ennis & Hawley LLP, Gary D. Babbitt (through his guardian ad litem), D. John Ashby, and Richard A. Riley (collectively, the "Hawley Troxell Defendants" or "HTEH") have entered into a Settlement Agreement and Mutual Release effective May 2, 2022 (the "Settlement Agreement") that, subject to satisfaction of certain express conditions precedent, would settle any and all shareholder claims that were or could have been asserted against HTEH in this case (and, through principles of res judicata and release, any derivative claims regarding certain matters against any Release, as defined in the Settlement Agreement); and

WHEREAS, on May 31, 2022, the Court entered a Scheduling Order Regarding

ORDER - 1

**17-ER-4321**

Settlement Approval Proceedings ("Approval Scheduling Order") (Dkt. 1213) in which the Court ordered, among other things, that (i) Mailing Notice and Publication Notice be provided to the extent set forth therein to shareholders, potential beneficial shareholders, and potential creditors of AIA Services and AIA Insurance (collectively, the "AIA Entities"), (ii) that an Approval Hearing be scheduled, and (iii) that all persons receiving notice, as well as the parties in this case, be provided with an opportunity to object to the proposed Settlement Agreement and/or to appear at the Approval Hearing; and

WHEREAS the Court held the Approval Hearing on July 28, 2022, to determine, among other things, whether to approve the Settlement Agreement and enter a Rule 54(b) final judgment dismissing with prejudice any claims against the Hawley Troxell Defendants;

NOW, THEREFORE, based on the submissions of Miesen and HTEH (collectively, the "Settling Parties"), and after giving due consideration to any objections and other submissions received, and on this Court's Findings of Fact and Conclusions of Law, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. **Incorporation of Settlement Agreement.** To the extent that definitions for any defined terms do not appear in this Order Approving Settlement and Entering Final Judgment Regarding the Hawley Troxell Defendants (the "Approval Order"), this Court adopts and incorporates the definitions in the Settlement Agreement.

2. This Approval Order incorporates and makes a part hereof:

    a. The Settlement Agreement; and

    b. Exhibits 1 through 3 thereto.

ORDER - 2

**17-ER-4322**

17-ER-4323

3. **Jurisdiction.** The Court has personal jurisdiction over all of the shareholders of record and beneficial shareholders of the AIA Entities (collectively, the "Securities Holders") in connection with the shareholder derivative claims that were or could have been asserted in this case, and the Court has subject-matter jurisdiction over this case, including jurisdiction to, among other things, approve the Settlement Agreement and dismiss with prejudice all claims against HTEH in this action.

4. **Adequacy of Plaintiff and Plaintiff's Counsel.** Plaintiff Miesen held stock in AIA Services continuously at all times relevant to this case and otherwise has standing to prosecute derivative claims on behalf of the AIA Entities and the Securities Holders. Plaintiff Miesen and his counsel have adequately represented the interests of other Securities Holders and the AIA Entities' interests with respect to and for the purpose of entering into and implementing the Settlement Agreement.

5. **Proof of Notice.** The Settling Parties have filed with the Court adequate proof that Mailing Notice and Publication Notice materially consistent with the directive in the Approval Scheduling Order has been given.

6. **Notice to Securities Holders.** The Court finds that the Mailing Notice and the Publication Notice provided to Securities Holders regarding the Settlement agreement was simply written and readily understandable and that the notice and notice methodology (i) constituted the best practicable notice, (ii) were reasonably calculated, under the circumstances, to apprise Securities Holders of the pendency of this action, the claims asserted, the terms of the proposed settlement, and Securities Holders' right to object to the proposed settlement and to appear at the Approval Hearing, (iii) were reasonable and

ORDER - 3

constituted due, adequate and sufficient notice to all of AIA Services' Securities Holders potentially entitled to receive notice, and (iv) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.

7. **Notice to Creditors of AIA Entities.** Notice and an opportunity to object regarding settlement of a shareholder derivative claim is typically only required to be given to shareholders and beneficial shareholders. Whether required or not, because there remain unpaid creditors of the AIA Entities, the Settlement Agreement required that certain efforts be made to provide notice of the settlement to known potential creditors of the AIA Entities. The notice provided to potential creditors was simply written and readily understandable and the notice and notice methodology (i) constituted the best practicable notice, (ii) were reasonably calculated, under the circumstances, to apprise potential creditors of the pendency of this action, the claims asserted, the terms of the proposed settlement, and their potential right to object to the proposed settlement and appear at the Approval Hearing, (iii) were reasonable and constituted due, adequate and sufficient notice to such persons, and (iv) met any applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.

8. **Final Settlement Approval.** The terms and provisions of the Settlement Agreement have been entered into in good faith and the settlement amount is the same amount suggested by an experienced Ninth Circuit Court of Appeals mediator. The terms and provisions of the Settlement Agreement are hereby fully and finally approved as fair,

ORDER - 4

**17-ER-4324**

17-ER-4325

reasonable and adequate as to, and in the best interests of, the AIA Entities and Securities Holders, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), Idaho law, and the Rules of this Court, and any other applicable law.

9.  **Implementation of the Agreement.** The Settling Parties and their counsel are directed to implement and consummate the Settlement agreement according to its terms and conditions. If the remaining conditions precedent in Paragraph 15 of the Settlement Agreement are satisfied, the Settlement Payment shall be paid into the Court's registry, and any further disbursement of those funds from the Court's registry shall only be pursuant to further order(s) issued by the Court.

10. **Binding Effect.** The Settlement Agreement and this Approval Order shall be forever binding on the Releasors and Releasees as to all released Claims, and as to any claims the Hawley Troxell Defendants have against Miesen, Donna Taylor, their respective litigation counsel, or the AIA Entities. As to all of the Releasors' Claims against Releasees, this Approval Order shall have *res judicata* and other preclusive effect in any future lawsuits or other proceedings maintained by or on behalf of the AIA Entities; *provided however*, that this Approval Order shall not affect Releasors claims in this or any other case against any Nonsettling Defendants.

11. **Releases and Waivers.** The releases set forth in Paragraphs 3 and 4 of the Settlement Agreement and its relevant definitions are expressly incorporated herein in all respects and shall be deemed a part of this order as if fully set forth herein. The releases shall be effective if/when the Conditions Precedent in Paragraph 15 of the Settlement

ORDER - 5

**17-ER-4325**

Agreement are satisfied. The Settling Parties agree and acknowledge that the provisions of the releases constitute essential terms of the Settlement Agreement. Nothing herein shall in any way impair or restrict the rights of any Settling Party to enforce the terms of the Settlement Agreement or this Approval Order.

12. **Permanent Injunction.** The Court hereby permanently bars and enjoins all Securities Holders, any of their respective representatives, trustees, successors, heirs, agents, and assigns, and anyone else purporting to act on behalf of or derivatively for the AIA Entities, from filing, commencing, prosecuting, intervening in, participating in or receiving any benefits or other relief from any other lawsuit, or other proceeding against the Hawley Troxell Defendants in any jurisdiction or forum based on or relating to any claims regarding the Transactions that may be brought in a derivative capacity; *provided however*, that nothing in this permanent injunction granted by the Court shall bar (i) the AIA Entities or a Securities Holder acting on behalf of the AIA Entities from asserting claims regarding such Transactions against the Nonsettling Defendants in this or any other judicial or other proceeding, or (ii) any appropriate shareholder or the AIA Entities from asserting claims that have not been released, or (iii) Donna Taylor from continuing to pursue her claims against the defendants in the Donna Taylor Consolidated Cases, Nez Perce County District Court Case Nos. CV-2008-1150 and CV-2013-1075.

13. **Potential Contribution and Indemnity Claims.** The Court finds that the Settlement Agreement represents a good-faith settlement of all released Claims sufficient to discharge the Releasees from Releasors' released Claims. To effectuate such settlement, the provisions in Paragraph 6 of the Settlement Agreement regarding potential contribution

ORDER - 6

**17-ER-4326**

and indemnity claims against Releasees and any subsequent settlements are expressly incorporated herein in all respects and shall be deemed a part of this order as if fully set forth herein. If any provision of Paragraph 6 of the Settlement Agreement is subsequently held to be unenforceable, such provision shall be substituted with such other provision as may be necessary to afford all of the Releasees the fullest protection permitted by law from any claim that arises out of or relates to any released Claim belonging to the AIA Entities, or that seeks indemnification or contribution in connection with any such matters or claims.

14. **No Admissions.** None of the Settlement Agreement, this Approval Order, any of the provisions of the Settlement Agreement, the negotiation of the Settlement Agreement, the statements or court proceedings relating to the Settlement Agreement, any document referred to in this Approval Order, any action taken to carry out this Approval Order, or any prior Orders in this case shall be (i) construed as, offered as, received as, used as or deemed to be evidence of any kind in this or any other judicial, administrative, regulatory or other proceeding or action, or (ii) construed as, offered as, received as, used as or deemed to be evidence of an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, without limitation, the AIA Entities and HTEH; provided however, that this Approval Order and the Settlement Agreement may be used as evidence of the terms of the Settlement Agreement or to enforce the provisions of this Approval Order and Judgment or the Settlement Agreement; provided further that this Approval Order and the Settlement Agreement may be filed in any action against or by (or on behalf of) the AIA Entities or other Releasees to support a defense of *res judicata*, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full

ORDER - 7

**17-ER-4327**

faith and credit, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim.

15. **Enforcement of Settlement.** Nothing in this Approval Order shall preclude any action to enforce the terms of the Settlement Agreement.

16. **Plaintiff's Fee Application Motion.** Plaintiff filed a Fee Application Motion in conjunction with the Motion for Approval of Settlement Agreement. Dkt. 1214. Plaintiff later withdrew the Fee Application Motion. Dkt. 1225. Therefore, the Court is not in this Approval Order ruling on any attorney fee issue.

17. **Payment to Discovery Master David Lombardi.** Upon receipt of the Settlement Amount in the Court registry, and pursuant to Federal Rule of Civil Procedure 53(g)(2)(B), the Court will disburse $23,459.53 to the Discovery Master David Lombardi. The payment will be made to Givens Pursley, LLP at the address:

Givens Pursley, LLP
P.O. Box 2720
Boise, ID 83701.

The payment should reference Matter 14451-1 (Special Master (Miesen v. GemCap, et al.)).

18. **Modification of Agreement.** The Settling Parties are hereby authorized, without further notice to or approval by the Court, to agree to and adopt such amendments, modifications and expansions of the Agreement and its implementing documents (including all exhibits to the Agreement) that are not materially inconsistent with this Approval Order and do not limit the rights of the AIA Entities, Securities Holders, or any Releasees under the Agreement.

ORDER - 8

17-ER-4328

19. **Retention of Jurisdiction.** The Court has jurisdiction to enter this Approval Order. Without in any way affecting the finality of this Approval Order, the District Court expressly retains exclusive and continuing jurisdiction over the Settlement Agreement, further disbursement of the Settlement Payment from the Court's registry, the Settling Parties, all Securities Holders and all Releasees to adjudicate all issues relating to this Settlement Agreement, including, without limitation, any issues relating to this Approval Order. Any action arising under or to enforce the Settlement Agreement or this Approval Order shall be commenced and maintained only in the District Court for the District of Idaho.

20. **Dismissal of action.** The claims asserted against the Releasees in this case are hereby dismissed on the merits and with prejudice.

21. **Entry of Judgment.** There is no just reason to delay the entry of this Approval Order and the Rule 54(b) Final Judgment, and immediate entry by the Clerk of Court is expressly directed to Federal Rule of Civil Procedure 54(b).

DATED: August 4, 2022

_____
David C. Nye
Chief U.S. District Court Judge

ORDER - 9

17-ER-4329

Case 1:10-cv-00404-DCN-CWD   Document 1236   Filed 08/04/22   Page 1 of 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporations and its wholly owned subsidiary AIA Insurance, Inc., | Case No. 1:10-cv-00404-DCN<br><br>**JUDGMENT** |
| Plaintiff,<br>v. | |
| HAWLEY TROXELL ENNIS & HAWLEY LLP, et al., | |
| Defendants. | |

IT IS ORDERED AND ADJUDGED that pursuant to the findings, terms, and conditions of this Court's Order Approving Settlement and Entering Final Judgment Regarding the Hawley Troxell Defendants entered concurrently herewith, and because there is no just reason for delay, the Settlement Agreement as set forth therein is approved, and final judgment pursuant to Rule 54(b) is hereby entered dismissing with prejudice all claims against the Hawley Troxell Defendants.

DATED: August 4, 2022

_____
David C. Nye
Chief U.S. District Court Judge

JUDGMENT – 1

**17-ER-4330**

Daniel Loras Glynn, ISB #5113
Jones ♦ Williams ♦ Fuhrman ♦ Gourley, P.A.
The 9th & Idaho Center
225 N. 9th Street, Suite 820
PO Box 1097
Boise, ID 83701
Telephone:  (208) 331-1170
Facsimile:  (208) 331-1529
dglynn@idalaw.com
Attorneys for James Beck, Michael Cashman, Connie Henderson, John Taylor, Crop USA
Insurance Agency, Inc., and Crop USA Insurance Services, LLC

Kim J. Trout, ISB #2468
Trout Law, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID  83703
Telephone (208) 577-5755
Facsimile (208) 577-5756
service@trout-law.com

Attorneys for Defendants AIA Services Corporation & AIA Insurance, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>                Plaintiff,<br>vs.<br><br>HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; CROP USA | Case No. 1:10-CV-404-DCN-CWD<br><br>**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS** |

**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 1**

INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,

Defendants.

In accordance with this Court's Order dated August 9, 2022 [Dkt. 1238], James Beck, Michael Cashman, Connie Henderson, and R. John Taylor (the "Individual Defendants"), Crop USA Insurance Agency, Inc. as well as Crop USA Insurance Services, LLC (collectively referred to as "CropUSA Entities"), and AIA Services Corporation as well as AIA Insurance, Inc. (collectively referred to as the "AIA Entities") jointly submit this Memorandum Regarding Derivative Versus Direct Claims.

As this Court noted in its Order of August 9, 2022, on May 5, 2022, this Court granted the Motion to Dismiss [Dkt. 1203] ("Order") filed by the Defendant Hawley Troxell Ennis & Hawley, LLP ("HTEH") and joined by Individual Defendants as well as the CropUSA Entities. In granting the Motion, this Court dismissed in their entirety all the derivative claims asserted in this matter by the Plaintiff Dale L. Miesen ("Miesen"). Having had the derivative claims dismissed, Mr. Miesen now seeks to assert the exact same claims under the guise of "direct claims." However, the presence of Mr. Miesen's direct claims is not only denied by law, but is belied by his own pleadings, his own representations in filed declarations, and in the multiple representations of his counsel to this Court. As Mr. Miesen does not possess any direct claims against the Individual Defendants, the CropUSA Entities, or the AIA Entities, this Court should certify its Order of May

**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 2**

5, 2020, as a final judgment between the parties for which there is no just reason for the delay of its entry pursuant to Federal Rule of Civil Procedure 54(b).

## FACTS AND PROCEDURAL BACKGROUND

In its Order which dismissed with prejudice Mr. Miesen's derivative claims against all parties, this Court requested that the parties submit a status report "explaining what issues remain in this case." (Order, page 51.) In response to this direction, Mr. Miesen asserted that despite this all-inclusive dismissal,

> Miesen's direct statutory and declaratory relief claims for ultra vires/unauthorized acts/contracts under I.C. §§ 30-1-304 & 30-29-304, together with his injunctive relief, request to set aside the acts/contracts and request for related damages for the AIA Entities, still need to be adjudicated, as provided under I.C. §§ 30-1-304(2)(a) & (3) and 30-29-304(2)(a) & (3).2 (See, e.g., Dkt. 211 at 49-55, 72-75, 79-82.) These claims include, without limitation, the failure to comply with the AIA Entities' amended articles of incorporation and bylaws. (See, e.g., Dkts. 1131-10, 1079-20.) The direct claims also include millions of dollars in damages. (See Dkt. 211.)

(Plaintiff Dale L. Miesen's Status Report [Dkt. 1208], page 5.)

However, in a very telling footnote, Mr. Miesen acknowledged that the conduct upon which he was relying for his direct claims was the very same as that which formed the basis for his derivative claims. (Plaintiff Dale L. Miesen's Status Report [Dkt. 1208], page 5, n. 2.) In his words, "[w]hile Miesen's derivative breach of fiduciary duty claims against the Individual Defendants have been dismissed, the conduct that forms the basis for those claims and others also form the basis, in part, for Miesen's remaining direct claims for ultra vires/declaratory judgment, damages and injunctive relief." (*Id.*) Thus, Mr. Miesen has conceded that the basis for his alleged direct claims is indistinct from those assertions which form the basis for his derivative claims. In

**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 3**

other words, Mr. Miesen has conceded that he has incurred no particularized, individual damage, if any, separate and apart from that of every other shareholder of AIA Services.

The complete absence of any direct claim by Mr. Miesen is made evident by a review of the Third Amended Complaint itself. As Paragraph 5 of the Third Amended Complaint [Dkt. 211] ("TAC") makes clear:

> Plaintiff is bringing this derivative action as a shareholder and on behalf of AIA Services. In addition, Plaintiff is bringing this action as a double derivative action on behalf of AIA Insurance, Inc. ("AIA Insurance"), which is a wholly-owned subsidiary of AIA Services.

(TAC, ¶ 5.)[1]

The derivative nature of Mr. Miesen's status is further confirmed in paragraph 183 of the Third Amended Complaint wherein he asserts that he "is not pursuing this lawsuit in a collusive manner in order to obtain jurisdiction where it does not otherwise exist, but instead to only pursue bona fide claims on behalf of, for the benefit of, AIA and their innocent shareholders." (TAC, ¶

---

[1] Mr. Miesen was identified as a derivative plaintiff in the initial complaint filed in this matter wherein Mr. Miesen's standing was alleged as "Plaintiff Dale Miesen ("Miesen") is a resident of Colleyville, Texas. Miesen is bringing this derivative action on behalf of the preferred and common shareholders of AIA Services. In addition, Miesen also brings a double derivative on behalf of AIA Insurance, which is a wholly owned subsidiary of AIA Services." (Dkt. 1, ¶ 3.2.) As is the case with the TAC, all alleged damages are alleged to be incurred by AIA Services with no assertions of any individual or direct damages to Mr. Miesen. (Dkt. 1, ¶ 6.12, 6.25, 6.36, 6.39, 6.43, 6.50, 6.62, 6.70, 6.73, 6.77.) Mr. Miesen was removed as a plaintiff in the First Amended Complaint, but renamed as a plaintiff with Donna Taylor in the Second Amended Complaint. (Dkt. 23, 137.) Both Mr. Miesen and Ms. Taylor alleged in the Second Amended Complaint that "Plaintiffs are bringing this derivative action on behalf of AIA Services Corporation ("AIA Services"). In addition, Plaintiffs are bringing this action as a double derivative action on behalf AIA Insurance, Inc. ("AIA Insurance"), which is a wholly owned subsidiary of AIA Services. AIA Services and AIA Insurance are collectively referred to as "AIA" in this Second Amended Complaint." (Dkt. 137, ¶ 7.) The Second Amended Complaint again identified all alleged damages flowing directly to AIA Services and no individual or direct damages alleged to be incurred by either plaintiff. (Dkt. 137, ¶ 156, 161, 167, 176, 180, 190, 195, 197, 198, 203, and 206.)

**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 4**

183.) In the subsequent paragraph just prior to his statement of the specific claims asserted, Mr.

Miesen again alleges:

> Plaintiff is pursuing this derivative action to make AIA whole and recover the millions of dollars in damages inflicted upon it by the defendants. Upon obtaining judgment, the funds will allow AIA to continue to operate as a going concern or, alternatively, to be dissolved with the funds used to pay lawful creditors and the remaining funds to be distributed to the Series A Preferred Shareholders, the Series C Preferred Shareholders and then to the common shareholders.

(TAC, ¶ 184.)

This theme is carried throughout the causes of action alleged in the TAC.  In fact, Mr. Miesen's vague identification of the specific allegations upon which he asserts as distinct and direct claims is telling as there is no allegation anywhere within the TAC which asserts an individual claim by Mr. Miesen.  Rather, each and every harm alleged is to have been suffered by AIA and its shareholders generally and not to Mr. Miesen specifically.  (TAC, ¶ 190, 194, 215, 219, 223, 224, 226, 229-230, 235-236, & 244.)

However, the absence of a stated direct claim is not merely a pleading issue. Rather, Mr. Miesen on multiple occasions during these proceedings has relied entirely on his status as the derivative plaintiff without reference to the possession of direct claims against any named defendant. Mr. Miesen has openly acknowledged his indigent status and his counsel's funding of this lawsuit as a reason to be excused from the incursion of costs relative to the appointment of a discovery master, to be excused from the payment of deposition fees of experts, and for his failure to timely disclose experts.  (*See*, Dkts. 446, 812, & 941). He has justified such by wrapping himself in the cloak of his derivative status without regard to any self-interest status that would be made evident by the assertion of a direct claim. As Mr. Miesen represented and acknowledged to the Court with regard to this lawsuit "I am bearing all of the risk as to what little remaining assets that

**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 5**

I own, while many other people will benefit if this lawsuit is successful." (Declaration of Dale

Miesen [Dkt. 812-1], ¶ 2.).  Moreover, in support of his request to be excused of the failure to

timely disclose certain experts, Mr. Miesen declared:

> As this Court is aware, I am pursuing this derivative action on behalf of AIA
> Services, AIA Insurance and their bona fide creditors, stakeholders (including the
> former employees who are owed over $1,500,000 in the 401(k) Plan and stand to
> receive nothing if I do not obtain a recovery in this lawsuit) and shareholders.

(Declaration of Dale Miesen [Dkt. 941-8], ¶ 2.)

Likewise, in his deposition testimony, Mr. Miesen acknowledges his status as the

derivative Plaintiff.

> Q.    You understand that you're bringing this action derivatively on
> behalf of AIA Services and ostensibly AIA Insurance, correct?
> A.    Indirectly.
> Q.    Okay.  In proceeding with respect to your derivative claims --
> A.    Okay.
> Q.    -- you understand -- or do you understand that you are bringing this
> action not just on behalf of the corporations themselves but also the
> shareholders of AIA Services, correct?
> A.    I understand that.
> Q.    Okay.  And you understand that in bringing this action derivatively
> on behalf of AIA Services' shareholders, that that means all
> shareholders, correct?
> A.    I do.

(Declaration of Counsel, **Exhibit A,** Deposition of Dale Miesen (Volume II), Page 59:6 to

59:22.)

Although Mr. Miesen testified he believed he possessed direct claims, Mr. Miesen was

unable to identify in any way how his claims were direct. (Declaration of Counsel, **Exhibit A**,

Pages 167:9 to 168:2.)

> Q.    I asked you if you were able to tell me without reading the 50 pages whether
> or not you had any direct actions versus derivative actions. And if the
> answer is no, that's fine, Mr. Miesen.  I appreciate it's been many years.

**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES
REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 6**

\*\*\*

A.    Well, everything about this is in this report and the documents cited, so I would refer you back to that because I am not an expert. I'm not an attorney.

Q.    We know that you're not an attorney. We know that you're not an expert. We know that you filed this lawsuit many, many years before Professor McDermott wrote his report, and I'm trying to focus on a moment in time, sir, when you were asserting claims with Donna Taylor against many defendants in this lawsuit. I'm asking you: As you sit here, do you remember whether or not you were asserting any direct claims at that time?

A.    I believe they were derivative.

Q.    And --

A.    But I could be wrong on that statement.

Q.    And I believe you described to Mr. Glynn that when you are serving as a representative in a derivative lawsuit, you are bringing the claim on behalf of all of the shareholders of the company, correct?

A.    Correct.

Q.    And in this instance, you were asserting a double derivative --

A.    Yes.

Q.    -- correct?

A.    I read that.

Q.    In other words, you were representing the shareholders of both AIA Services Corporation as well as AIA Insurance, correct?

A.    That's my understanding.

Q.    Okay. So you consciously made the decision in August of 2010 to be a representative of the interests of all of the shareholders of both of those companies, correct?

A.    Correct.

(Declaration of Counsel, **Exhibit A,** Pages 133:7 to 135:1.)

The derivative nature of this action has been admitted in Mr. Miesen's briefing in this matter as well. As Mr. Miesen's briefing freely acknowledged, "[t]his case is a derivative action." (Miesen's Response To The HTEH Defendants' Motion To Exclude Plaintiff's Rebuttal Expert Hile And Gemcap's Joinder [dkt. 941-1], page 1.) In other briefing demanding discovery of confidential communications, Mr. Miesen represented "Miesen is standing in the shoes of the AIA Corporations …" (Memorandum of Law in Support of Motion to Reconsider Order Re: Discovery Master Order No. 21 And Order Staying Production of Sealed Documents [Dkt. 805-1], page 11.)

**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 7**

Moreover, Mr. Miesen has affirmatively represented that "Miesen's lawsuit, on the other hand, is a double derivative suit brought on behalf of the AIA Corporations." (Reply To the Hawley Troxell Defendants' and Glynn' Group's Opposition to Miesen's Seventh Motion to Compel [Dkt. 838], page 9 (*Emphasis added*).)[2]

Moreover, Mr. Miesen's briefing has used any available opportunity to remind the Court that remedies should be afforded to him because of his derivative plaintiff status. Thus, Mr. Miesen requested that he "should be relieved from being forced to pay to depose the three expert witnesses and that it would be an undue hardship because Miesen is pursuing this derivative action for many stakeholders and shareholders." (Miesen's Objections to Discovery Master Order No. 31 [Dkt. 997], page 2. (*Emphasis added*).)  In another instance, Mr. Miesen asserted error against Magistrate Judge Dale for "disregard[ing] the fact that the indigent Miesen is pursuing this derivative action as a common shareholder of AIA Services to recover for the corporation, its bona fide creditors, preferred shareholders and other common shareholders yet he is receiving no assistance from any of them and he is shouldering all of the costs (Miesen lives on Social Security)." (Miesen's Objections to Judge Dale's Order Re: Discovery Master Order No. 31 [Dkt. 1020], page 4 (*Emphasis added*). *See also*, Memo Iso Miesen's Motion to Substitute an Expert Witness [Dkt.

---

[2] *See also,* Dkt. 446-2 which is an email between Mr. Bond and the Individual Defendants' prior counsel wherein Mr. Bond repeatedly makes statements such as "these issues do not apply here because your clients and the AIA entities are parties to this case and this lawsuit involves derivative claims for numerous torts," "In sum, the limited subpoenas in *Taylor v. Bell* were not complied with and did not include the scope of documents requested in this derivative lawsuit," and "there are other reasons privilege does not apply, e.g., needed for issues in this case, waiver based on fraud/crime exception, waiver based on breach of fiduciary duties since this is a derivative action, etc.," (Dkt. 446-2 at pages 4, 5, and 6.)

**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 8**

1124-1], page 2 n. 1 (stating "[t]here are numerous shareholders, 401(k) plan participants, former ESOP participants and creditors who Miesen is pursuing claims to benefit.")

Moreover, it cannot be ignored that Mr. Miesen on <u>two</u> separate occasions sought to compel the production of attorney-client communications between AIA Services and its lawyers pursuant to Idaho Rule of Evidence 502(d)(d) (6) <u>which is a remedy available only to a derivative plaintiff</u>. (See, Dkt. 476 & 783). As he represented in that briefing, he was entitled to this production because "[o]n behalf of the AIA Corporations, Miesen is asserting claims against the Hawley Troxell Defendants for legal malpractice, breaches of fiduciary duties, aiding and abetting and declaratory relief and against the Controlling AIA Defendants for breaches of fiduciary duties, fraud, aiding and abetting and declaratory relief." (Memorandum Of Law In Support Of Seventh Motion To Compel [Dkt. 783-1], page 4.)  As he further declared in later briefing on the same subject, "Miesen is pursing claims for the AIA Corporations and he, therefore, falls within the plain meaning of I.R.E. 502(d)(3)." (Miesen's Objections Re: Seventh Motion to Compel [Dkt. 956], pages 7 -8.)

In fact, a review of the briefing filed by Mr. Miesen reveals that he has taken every opportunity to distance himself from any self-interest he might have in seeking remedy in these proceedings as he has often times reminded this Court that "Miesen is pursuing <u>this derivative action</u> for bona fide creditors and stake holders (including former employees holding over $1,500,000 in Series C Preferred Shares …" (Miesen's Response To The HTEH Defendants' Motion To Exclude Nonretained Expert Patrick Moran And Gemcap's Joinder [Dkt 941], page 11 (*Emphasis added*).)  In this regard, he has represented that "Miesen has made it crystal clear that he seeks to recover funds to pay any bona fide creditors, the preferred shares and then place money

**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 9**

in the hands of the shareholders ..." (Reply to the Hawley Troxell Defendants' and Glynn' Group's Opposition to Miesen's Seventh Motion to Compel [Dkt. 838], page 10.) Similarly, "Miesen and his counsel are shouldering the burden of advancing the costs and prosecuting this case for the benefit at least 50 other innocent common shareholders and stakeholders without any financial assistance from those parties." (Miesen's Objection to Discovery Master Order No. 19 [Dkt. 746], page 4.). In another instance, Mr. Miesen acknowledged the derivative and indirect nature of his claim when he asserted to this Court that "[a] recovery must be made for those stakeholders and any bona fide creditors before any money can even flow to Miesen. As Professor McDermott noted, this is the last stop for the stakeholders and shareholders—Miesen is their only hope." (Miesen's Appeal Regarding Judge Dale's Order Re: Discovery Master Order No. 19 [Dkt. 808], page 6 (*Emphasis added*.)

In confirmation of the fact that the entirety of Mr. Miesen's claims is directed at seeking a remedy for the whole of the shareholders, or more appropriately his arbitrarily selected list of whom he deems to be "innocent shareholders," is the fact that nowhere within the entirety of the 90 million dollars sought is there any category of damages that is specific to Mr. Miesen individually and distinct from the rest of the shareholders. (Declaration of R. John Taylor in Response to Plaintiff's Motion to Approve Settlement and Motion for Fees and Costs as Filed on May 31, 2022 [Dkt.1223], Exhibit B.)

Perhaps the most telling admission of the lack of any true direct claim is the statement of Mr. Miesen's counsel in one of his many appeals of adverse rulings against him by Discovery Master David Lombardi and Magistrate Judge Dale.  As Mr. Miesen freely admitted,

> Miesen cannot even resolve this lawsuit based solely on his own interests. (Dkt.
> 719-4 ¶ 2.) He must proceed for the benefit of the bona fide creditors (not GemCap)

**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 10**

and the innocent shareholders and stakeholders. Yet, none of those other non-parties are required to assist Miesen in paying in sanctions or fee awards, but they get the benefit of any significant recovery.

(Miesen's Objection to Discovery Master Order No. 19 [Dkt. 746], page 5 (*Emphasis added*). *See also*, Miesen's Appeal Regarding Judge Dale's Order Re: Discovery Master Order No. 19 [Dkt. 808], page 6.)

The foregoing makes abundantly clear that Mr. Miesen's recent representations as to the presence of direct claims are in direct contradiction to his multiple representations over the course of this twelve-year-long litigation.  As demonstrated below, after having repeatedly wrapped himself in the cloak of his derivative status to seek discovery and demand remedies Mr. Miesen cannot recast the very same claims based on the same operative facts seeking the exact same remedies as direct claims to which he has no individual, unique, or particularized alleged harm distinct from those of the shareholders whom he purported to represent.  As Mr. Miesen has no direct claims to assert against the named defendants, this Court's Order is a final adjudication of all claims between Mr. Miesen and the Individual Defendants, The CropUSA Entities, and the AIA Entities and should be certified as such pursuant to Fed.R.Civ.P. 54(b).

## ARGUMENT

**A.    The Claims of Mr. Miesen Are Unquestionably Derivative and Cannot Be Recast as Direct Claims.**

As established above, whether by pleading, by testimony, or prior representation in the course of the submissions in the case, Mr. Miesen has admitted the derivative nature of his claims and specifically disavowed that he has any claim unique to himself. As such, and pursuant to unambiguous Idaho law on the subject which is consistent with other jurisdictions who have addressed the issue, Mr. Miesen possesses no direct claims to assert in this matter.

**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 11**

17-ER-4342

The Idaho Supreme Court in *McCann v. McCann*, 138 Idaho 228, 233, 61 P.3d 585, 590 (2002) clearly and unequivocally addressed the significant distinction between claims which may be asserted derivatively as opposed to those claims which may be asserted directly by a shareholder. Quoting Am.Jur.2d, the Court stated:

> It is generally held that a stockholder may maintain an action in his own right for an injury directly affecting him, although the corporation also may have a cause of action growing out of the same wrong, where it appears that the injury to the stockholder resulted from the violation of some special duty owed to the stockholder by the wrongdoer and having its origin in circumstances independent of the plaintiff's status as a shareholder.

*Id.*, 138 Idaho at 233, 61 P.3d at 590.

> Accordingly,

> A stockholder's derivative action is an action brought by one or more stockholders of a corporation to enforce a corporate right or remedy a wrong to the corporation in cases where the corporation, because it is controlled by the wrongdoers or for other reasons fails and refuses to take appropriate action for its own protection.

> An action brought by a shareholder is derivative if the gravamen of the complaint is the injury to the corporation or to the whole body of its stock or property and not injury to the plaintiff's individual interest as a stockholder.

*Id.*

Against these standards, the Idaho Supreme Court affirmed the trial court's determination that the gravamen of the plaintiff's complaint in *McCann* was derivative in nature as the claims asserted were generalized allegations of wrongdoing against those who controlled the corporation. Thus, the characterization of the claims as derivative was affirmed because "[e]ven if there is some potential injury to [plaintiff], [plaintiff's] alleged injuries appear to be dependent on his status as a shareholder, and solely an injury to the corporation but not to him personally as an individual." *Id. See also, Mannos v. Moss*, 143 Idaho 927, 933, 155 P.3d 1166, 1172 (2007) (holding that "[a]ny

**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 12**

claim that [plaintiff] has regarding the defendant's depletion of corporate assets can only be pursued by him through a derivative action.")

The holding of the Court in *McCann* should be familiar to both Mr. Miesen and his counsel as the very same conclusion was reached in a separate action filed by Mr. Bond in 2014 and joined in by Mr. Miesen as well as Donna Taylor against AIA Services and GemCap, *Durant v. GemCap Lending I, LLC*, Case No. CV14-01444 (Nez Perce County). In the *Durant* matter, the plaintiffs attempted to assert direct claims against AIA Services which included many identical assertions contained in the TAC. (Declaration of Counsel, **Exhibit C**.) GemCap moved in *Durant* to dismiss Mr. Miesen's claims therein on the basis that the claims were derivative and could not be asserted as direct claims. Relying on *McCann*, the court noted that the plaintiffs' claims were "classic derivative claims, not direct claims." (Declaration of Counsel, **Exhibit D**, page 4.) Thus, as their complaint did not contain an allegation of direct harm to any of the identified plaintiffs nor did it seek a remedy that directly benefitted them separate and apart from the corporation and its stockholders, the court dismissed their complaint because the lawsuit was brought as a direct rather than derivative action. (*Id.,* pages 5-6.)

Similarly, in another action brought by Mr. Bond, this time with Donna Taylor as the named plaintiff, the district court rejected her attempts to characterize her claims for corporate malfeasance as direct claims. (Declaration of Counsel, **Exhibit E & F**.) As the court stated, "Donna also appears to argue that the individual Defendants fraudulently diverted AIA assets to themselves or to entities from which only they benefited. This theory requires Donna to bring a derivative action, not a personal action." (Declaration of Counsel, **Exhibit D**, page 6 no. 5.)

**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 13**

Thus, Mr. Miesen and his counsel are well aware of the distinction between those claims which can be pursued derivatively and those which can be pursued directly. Yet despite this awareness, Mr. Miesen has never pled nor identified any direct harm or benefit to support the assertion of a direct claim. Instead, and perhaps in full recognition of the fact that Mr. Miesen has no individual harm or direct benefit, Mr. Miesen has continually wrapped himself in the status as a derivative plaintiff in these proceedings.  Mr. Miesen cannot now upon the dismissal of those derivative claims seek to recast the very same claims as direct claims against the Individual Defendants, the AIA Entities, or the CropUSA Entities.  *See, Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1485 (9th Cir. 1984) (holding "a shareholder cannot change a derivative cause of action into a direct cause of action simply by alleging some injury to the minority shareholders. For a direct cause of action to exist, the injury to the minority shareholders may not be incidental to the corporation's injury.").

At the outset, it should be noted that the vast amount of the allegations in the TAC clearly and expressly identify that the alleged harm or damage has been to AIA Services without any reference to a damage particular to Mr. Miesen. For example, while Mr. Miesen's Status Report makes a reference to a claim for breach of fiduciary duties, the TAC clearly and unambiguously states "[a]s a direct and/or proximate cause of the Controlling AIA Defendants' and the Hawley Troxell Defendants' breaches of their fiduciary duties, AIA has been damaged in the amount to be proven at or before trial." (TAC, ¶ 190.)[3] The same conclusion is true as to all the other counts as

---

[3] Numerous courts have recognized that a breach of fiduciary duty claim cannot be asserted as a direct claim when the damage suffered is equally suffered by all other shareholders. *Altrust Fin. Servs. v. Adams*, 76 So. 3d 228, 247 (Ala. 2011); *Bordelon v. Cochrane*, 533 So. 2d 82, 86 (La. Ct. App. 1988). *See also, Friedman v. Mohasco Corp.*, 929 F.2d 77, 79 (2d Cir. 1991); *Nowling v. Aero Servs. Int'l, Inc.*, 752 F. Supp. 1304, 1315 (E.D. La. 1990); *Enterra Corp. v. SGS Assocs.*,

**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 14**

they all allege damage to, or redress on behalf of, AIA Services. (TAC, Count Two Aiding and Abetting Breaches of Fiduciary Duty at ¶ 194, Count Four Fraud/Fraudulent Concealment/Constructive Fraud at ¶ 215, Count Five Aiding and Abetting and Conspiracy of Fraud at ¶ 219, Count Six at ¶ 223 & 224, Count Seven Declaratory Judgment at ¶ 226, Count Eight Statutory Relief Including Ulta Vires at 229-230, Count Nine Corporate Waste/Excessive Compensation at ¶ 235-236, & Count Eleven Account Stated at ¶ 244.)

Moreover, it should be noted that the laundry list of fifteen claims contained in Count Seven of the TAC styled as requests for declaratory judgment are, as Mr. Miesen conceded in his Status Report, based on the same allegations which formed the basis for his claims of breach of fiduciary duties which, as explained above, only identifies alleged harm as being suffered by AIA Services. (Dkt. 1208 at 5 n. 2; TAC 190.) Additionally, beyond Mr. Miesen's generalized demand for compliance with AIA's articles, bylaws and Idaho law (TAC at ¶ 226(b)), Mr. Miesen seeks various declarations for recission and avoidance, which claims, if proven, are not specific, individual harms to Mr. Miesen.  Thus, a review of each of the requests for declaratory judgment confirms that each proposed remedy, if proven to be warranted, would be a common harm to all the stockholders of AIA Services. (TAC at ¶ 226.) (*See also*, Declaration of Counsel, **Exhibit B** & **Exhibit C** wherein Judge Brudie dismissed similar styled requests for declaratory judgment as derivative in nature).

As the Alabama Supreme Court recognized, "in analyzing whether a claim is derivative or direct, a court should look to the nature of the alleged wrong rather than the designation used by

---

600 F. Supp. 678, 689 (E.D. Pa. 1985); *Press v. Marvalan Indus., Inc.*, 468 F. Supp. 1072, 1078 (S.D.N.Y. 1979).

**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 15**

the plaintiff in the complaint." *Ex parte 4tdd.com, Inc.*, 306 So. 3d 8, 18 (Ala. 2020). Thus, where plaintiff's complaint sought to set aside certain actions taken by the board of directors as ultra vires, the court recognized that such a claim did not create an injury individual to the plaintiff independent of the corporation and its shareholders.  As such, plaintiff's claims were dismissed as the assertion of derivative claims since the plaintiff did not comply with pre-suit demand required by Alabama's corporation act.  *Id. See also, Bader v. Anderson, 101 Cal. Rptr. 3d 821, 835 (2009)* (recognizing that an action is derivative "if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets."*); Tooley v. Donaldson, Lufkin, & Jenrette, Inc., 845 A.2d 1031, 1039 (Del. 2004)* (to assert a direct claim, "[t]he stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation."); *Brown v. Stewart*, 557 S.E.2d 676, 684 (Ct. App. 2001) ("A shareholder may maintain an individual action only if his loss is separate and distinct from that of the corporation. A shareholder's suit is derivative if the gravamen of his complaint is an injury to the corporation and not to the individual interest of the shareholder."); *Dobry v. Yukon Elec. Co.,* 290 P.2d 135, 138 (Ok. 1995) (plaintiff's direct claims dismissed where plaintiff did not allege he sustained any loss in addition to the loss sustained by the corporation and as plaintiff's loss was only incidental to the corporation's loss his rights were derivative.); *River Mgmt. Corp. v. Lodge Props., Inc.*, 829 P.2d 398, 403 (Colo. App. 1991) ("An individual stockholder cannot maintain a direct action in his or her own capacity against a director or third party unless such stockholder has sustained an injury which is separate and distinct from that of other shareholders."); *Beyer v. F & R Oilfield*

**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 16**

*Contractors, Inc.*, 407 So. 2d 15, 16 (La. Ct. App. 1981) (recognizing that the right to bring illegally dispersed funds back into the corporation "can only be asserted through the corporation by a shareholder's derivative suit."); *Alario v. Miller*, 354 So. 2d 925, 926 (Fla. Dist. Ct. App. 1978) ("What these definitions attempt to convey is that a stockholder may bring a suit in his own right to redress an injury sustained directly by him, and which is separate and distinct from that sustained by other stockholders. If, however, the injury is primarily against the corporation, or the stockholders generally, then the cause of action is in the corporation and the individual's right to bring it is derived from the corporation.").

Nowhere within the nearly 250 individual allegations contained in Mr. Miesen's eighty-page Third Amended Complaint is there any assertion by Mr. Miesen that he has suffered any injury which is separate and distinct from that of the other shareholders in AIA Services or that he has suffered a harm not suffered by the corporation and its stockholders. Rather, a reading of the TAC reveals the gravamen of all assertions and claims to be as he expressly and unequivocally alleges "a derivative action to make AIA whole…" (TAC, ¶ 184.) This reading is entirely consistent with the litigation positions taken by Mr. Miesen until this Court's correct dismissal of the derivative claims that had been his standard-bearer until that point.[4]

---

[4] In this regard, it should be pointed out that if Mr. Miesen had identified a particularized harm that he suffered individual to himself and distinct from AIA Services and its shareholders at large he would have found himself to be an unfit derivative plaintiff in view of the conflict between his own interests created by his direct claims and those asserted purportedly on behalf of the class as a whole. *See*, *Ryan v. Aetna Life Ins. Co.*, 765 F. Supp. 133, 136 (S.D.N.Y. 1991) (holding plaintiff asserting direct claims and derivative claims must "elect a single representative role.") However, there has never been cause over the course of this twelve-year litigation to inquire as to his conflicted status as Mr. Miesen has steadily, repeatedly, and consistently made clear his selected role as derivative plaintiff and disavowing any individual right or claim he possessed.

**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 17**

Based on the foregoing authorities as well as Mr. Miesen's pleadings, testimony, and submissions in this matter, this Court should certify its Order pursuant to Federal Rule of Civil Procedure 54(b) as the Order was a complete adjudication of the claims between Mr. Miesen and the Individual Defendants, the AIA Entities, and the CropUSA Entities. Moreover, in view of this complete adjudication, this Court should not only direct the entry of judgment in this regard, but recognize that there is no just reason for further delay of the entry of judgment and bring to an end this "final phase" (Dkt. 1238 at page 1) of this prolonged litigation initiated by Mr. Miesen twelve years ago.

### CONCLUSION

For the reasons stated above, this Court's May 5, 2022 Order served as the complete dismissal of Mr. Miesen's claims against the AIA Entities, the Individual Defendants, and the CropUSA Entities as all his claims are derivative in nature and he possesses no direct claims. Accordingly, these parties request that this Court determine its May 5, 2022 Order to be a final adjudication of the claims between these parties, certify such pursuant to Fed.R.Civ.P 54(b), and find that there is no just reason for the delay in its entry.

DATED this 11th day of August, 2022.

JONES ♦ WILLIAMS ♦ FUHRMAN ♦ GOURLEY, P.A.

*/s/ Daniel Loras Glynn*
DANIEL LORAS GLYNN
Attorneys for Individual Defendants and CropUSA
Entities

**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 18**

## 17-ER-4348

DATED this 11th day of August, 2022.

TROUT LAW, PLLC


_/s/ Kim J. Trout_
KIM J. TROUT
Attorneys for the AIA Entities


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of August, 2022, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF System which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Roderick Cyr Bond | rod@roderickbond.com |
| Andrew Schwam | amschwam@turbonet.com |
| Michael S. Bissell | mbissell@campbell-bissell.com |
| Tyler S. Waite | twaite@campbell-bissell.com |
| Jeffrey A. Thomson | jat@elamburke.com |
| Loren C. Ipsen | lci@elamburke.com |
| Joyce A. Hemmer | JAH@ElamBurke.com |
| Bradley S. Keller | bkeller@bryneskeller.com |
| Alyson Anne Foster | alyson@dempseyfoster.com |


_/s/ Daniel Loras Glynn_
Daniel Loras Glynn


**JOINT MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES, AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 19**

**17-ER-4349**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>PLAINTIFF DALE L. MIESEN'S MEMORANDUM OF LAW IN SUPPPORT OF HIS MOTION TO APPROVE THE TERMS OF THE SETTLEMENT AGREEMENT WITH THE DEFENDANT GEMCAP LENDING I, LLC |

MEMO ISO MOTION TO APPROVE SETTLEMENT RE: GEMCAP - i

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

           Defendants/Third-Party Plaintiffs,

    **v.**

REED TAYLOR, an individual,

           Third-Party Defendant.

REED TAYLOR, an individual,

           Third-Party Defendant/ Counterclaimant,

    **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

           Counterdefendants.

MEMO ISO MOTION TO APPROVE SETTLEMENT RE: GEMCAP - ii

**17-ER-4351**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND FACTS ........................................................................................... 1

III.    ARGUMENT .............................................................................................................. 2

      A.      This Court Should Approve the Settlement Agreement Between Miesen and
            GemCap. ........................................................................................................... 2

            1.      As a Preliminary Matter, Counsel Has Express Authority to Enter into
                  the Stipulated Settlement Agreement on Behalf of Their Clients .............. 2

            2.      This Court Should Approve the Stipulated Settlement Because It Is
                  Fair, Reasonable and Adequate ................................................................... 3

IV.     CONCLUSION ........................................................................................................... 7

CERTIFICATE OF SERVICE .............................................................................................. 8

Plaintiff Dale L. Miesen ("Miesen") moves the Court as follows:

## I.      INTRODUCTION

Before this Court is Miesen's motion to approve the terms of the settlement agreement with the defendant GemCap Lending I, LLC ("Settlement Agreement") the defendant GemCap Lending I, LLC ("GemCap") and dismiss Miesen's direct and derivative claims against GemCap. The Settlement Agreement confirms, among other things, that the defendants AIA Services and AIA Insurance ("AIA Entities") are extricated from the over $19 million that GemCap claimed was owed and ensures that GemCap does not obtain any of the recoveries Miesen may obtain against the other defendants (including the $1.4 million recovered from the Hawley Troxell Defendants). Because the Settlement Agreement is fair, reasonable and adequate, this Court should approve it and enter the order and judgment in substantially the form attached to the Settlement Agreement. Then, Miesen can focus his efforts on prosecuting his claims against the guiltiest wrongdoers.

## II.      BACKGROUND FACTS

On August 11, 2010, Miesen and Donna Taylor (another shareholder who was subsequently voluntarily dismissed without prejudice) filed this lawsuit. (Dkts. 1, 178 at 13.) The original verified complaint alleged, among countless other improper and unauthorized acts, including AIA Insurance guaranteeing a $15 million line-of-credit for CropUSA Insurance Agency in direct violation of AIA Services' amended articles of incorporation and bylaws. (*See, e.g.,* Dkts. 1, 1131-10 at §4.2.9(c).) The defendants successfully moved to stay this lawsuit. (*See, e.g.*, Dkt. 46.)

Any reasonable person would conclude that, in light of Miesen and Donna Taylor's verified allegations in their complaints (Dkts. 1, 23), any management of the AIA Entities would

MEMO ISO MOTION TO APPROVE SETTLEMENT RE: GEMCAP - 1

comply with all applicable articles of incorporation, bylaws and fundamental corporate governance to ensure that the AIA Entities are operated in the interests of the corporations and all of their shareholders. Instead, the opposite occurred—the improper and ultra vires transactions not only continued—they accelerated to decimate the AIA Entities. (*See generally* Dkt. 211.) As part of the intentional and ongoing violations of AIA Services' amended articles of incorporation and the AIA Entities' bylaws (among other laws), John Taylor, James Beck and Connie Taylor Henderson (the three purported directors) had the AIA Entities guarantee another $10 million loan for the CropUSA Entities in violation of the articles and bylaws, which resulted in an over $12 million judgment being entered against the AIA Entities (valued at over $19 million in 2020) and the naming of GemCap as a defendant in this lawsuit in 2017 after the Ninth Circuit Court of Appeals reversed the stay order sought by the defendants. (*See, e.g.,* Dkts. 105, 211 at ¶¶135-157.) After over five years of litigating, Miesen and GemCap have agreed to settle. (8/11/22 Bond Decl. Ex. 1.) On August 4, 2022, the notices were mailed in compliance with this Court's order. (8/11/22 Bond Decl. ¶3.) This motion followed.

### III.   ARGUMENT

**A. This Court Should Approve the Settlement Agreement Between Miesen and GemCap.**

   **1. As a Preliminary Matter, Counsel Has Express Authority to Enter into the Stipulated Settlement Agreement on Behalf of Their Clients.**

Before addressing the reasons why this Court should approve the Settlement Agreement, the threshold matter of counsel's authority must be quickly addressed.

"Written stipulations are binding on the parties when approved by the Court." Local Rule. 7.3. Under Idaho law, an attorney "needs actual authority, express or implied actual authority, to compromise a principal's claim." *Caballero v. Wikse*, 140 Idaho 329, 332, 92 P.3d 1076, 1079 (2004).

MEMO ISO MOTION TO APPROVE SETTLEMENT RE: GEMCAP - 2

**17-ER-4354**

Here, counsel for Miesen and GemCap have express authority to enter into the Settlement Agreement on behalf of their respective clients.[1] (8/11/22 Bond Decl. ¶4; 8/11/22 Miesen Decl. ¶4; 8/11/22 Schwam Decl. ¶4.) Moreover, the Settlement Agreement expressly states: "The undersigned counsel each represents and warrants that they have the authority to execute this stipulation on behalf of their clients, subject to approval of the U.S. District Court for the District of Idaho and notice to shareholders." (8/11/22 Bond Decl. Ex. 1 at 7 § 6.) To be clear, as noted in the Settlement Agreement, Miesen's authority to bind anyone other than himself is derived solely from this Court's approval of the Settlement Agreement (and the legal effect of the Rule 54(b) judgment entered by this Court). (*Id.*; 8/11/22 Bond Decl. ¶4; 8/11/22 Miesen Decl. ¶4.)

Accordingly, this Court should find that counsel had express authority to enter into the Settlement Agreement on behalf of their clients. If this Court does not expressly address this argument in the approved order attached to the Settlement Agreement, by entering that order without comment on this issue, Miesen requests that, in doing so, the Court will adopt these arguments to find express authority existed for counsel to execute and bind their clients to the Settlement Agreement.

## 2. This Court Should Approve the Stipulated Settlement Because It Is Fair, Reasonable and Adequate.

While the settlement agreement between Miesen and GemCap involve the settlement of both Miesen's direct claims and derivative claims, they nevertheless seek this Court's approval of the entirety of their Settlement Agreement. (8/11/22 Bond Decl. Ex. 1.) The Settlement Agreement is fair, reasonable and adequate in all respects—it confirms that the AIA Entities are

---

[1] The Settlement Agreement was structured as a stipulation to allocate all due diligence and confirmation of power and authority GemCap and its affiliates to Alyson Foster because Miesen and his counsel did not have sufficient documents to confirm the existence of power and authority. (8/11/22 Bond Decl. ¶4; 8/11/22 Miesen Decl. ¶4.)

MEMO ISO MOTION TO APPROVE SETTLEMENT RE: GEMCAP - 3

extricated from the over $19 million that GemCap claimed was owed and further confirms that GemCap will release all claims, which would include claims to the funds Miesen has recovered or will recover in this lawsuit. This Court should approve the Settlement Agreement and enter the agreed order and Rule 54(b) judgment in substantially the forms attached to the Settlement Agreement. (8/11/22 Bond Decl. Ex. 1 at 18-25.)

> A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders.

Fed. R. Civ. P. 23.1(c). Likewise, court approval of any settlement of a derivative action is also required under Idaho law:[2]

> A derivative proceeding may not be discontinued or settled without the court's approval. If the court determines that a proposed discontinuance or settlement will substantially affect the interests of the corporation's shareholders or a class or series of shareholders, the court shall direct that notice be given to the shareholders affected.

I.C. § 30-29-745. However, there is no authority requiring court approval of a settlement agreement involving a shareholder's direct claims. *See, e.g.,* I.C. § 30-29-745 (court approval is required for a derivative action); Fed. R. Civ. P. 23.1(c) (same). While the undersigned was unable to locate any Idaho appellate court decisions, the standard used for Fed. R. Civ. P. 23.1 in federal court should be utilized to comply with Rule 23.1 and Idaho Code section 30-29-745.

> In evaluating a settlement [under Fed R. Civ. P. 23.1], a district court must determine whether the proposed settlement is "fundamentally fair, reasonable, and adequate."
>
>> "Assessing a settlement proposal requires a district court to balance a number of factors, including: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action throughout the trial;

---

[2] "In a federal diversity action, state substantive law applies to the claims and defenses raised by the parties." *Expeditors Int'l of Wash., Inc. v. Expeditors (Japan), Ltd.*, 224 F.R.D. 661, 664 (W.D. Wash. 2004). Here, Miesen's direct and derivative claims involving the AIA Entities (both Idaho corporations) are governed by Idaho law. (*See* Dkt. 211.)

MEMO ISO MOTION TO APPROVE SETTLEMENT RE: GEMCAP - 4

> the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; ... and the reaction of the class members to the proposed settlement."
>
> The district court also must satisfy itself that the proposed settlement is not the product of collusion among the negotiating parties.[3]

*In re Atmel Corp. Derivative Litig.*, Case No. C 06–4592 JF (HRL), 2010 WL 9525643, at *3-4 (N.D. Cal. Mar. 31, 2010) (citations omitted; alterations added). As explained below, these factors all weigh in favor of approving the Settlement Agreement

Here, the above-quoted factors all weigh heavily in favor of this Court approving the terms of the Settlement Agreement between Miesen and GemCap. (8/11/22 Bond Decl. ¶¶1-16, Ex. 1; 8/11/22 Schwam Decl. ¶¶1-4; 8/11/22 Miesen Decl. ¶¶1-7.) As explained by Miesen's counsel and as seen by the express the terms of the Settlement Agreement (*Id.*), the Settlement Agreement provides material benefit to the AIA Entities even though GemCap is not paying any money to settle because it:

a) Ensures that the AIA Entities are relieved of the over $19 million in indebtedness that GemCap alleged was owed by the AIA Entities (an obligation that was incurred in direct violation of AIA Services' amended articles of incorporation and numerous provisions of the AIA Entities' bylaws).

b) Ensures that GemCap will not be entitled to any of the funds recovered by Miesen in this lawsuit (including the $1.4 million recently obtained from the Hawley Troxell Defendants).

c) Ensure that any recorded judgment against the AIA Entities in favor of GemCap has

---

[3] While Miesen did not cite the authority for the factors in his last motion to approve the settlement with the Hawley Troxell Defendants, his counsel addressed those factors in the briefing and their declarations. (*See, e.g.,* Dkts. 1214-1, 1214-2.) Because this Court recited those factors on the record at the fairness hearing for the settlement with the Hawley Troxell Defendants, Miesen specifically included those factors and authority in the instant motion, especially since no hearing will be held.

MEMO ISO MOTION TO APPROVE SETTLEMENT RE: GEMCAP - 5

been satisfied (including the one for over \$12 million originating out of U.S. District Court in California).

**d)** Ensures that the AIA Entities will not have any liability for the over \$2 million in loan proceeds that GemCap claimed was improperly transferred to the AIA Entities in violation of the loan agreement with the CropUSA Entities.

**e)** Ensures that GemCap has released all claims against the AIA Entities, which in turn, ensures that GemCap's crossclaims against the AIA Entities have legally been released.

**f)** Ensures that Miesen's claims against the remaining defendants—the Individual Defendants, the AIA Entities and the CropUSA Entities—remain reserved and not impacted by the Settlement Agreement with GemCap.

**g)** Was negotiated at arms-length with no collusion.

**h)** The risks to carry on prosecuting Miesen's claims against GemCap were not worth the downside risks, especially when GemCap is no longer in the lending business and appears to be judgment proof.

**i)** Occurred after extensive discovery, discovery motion practice and other motion practice had taken place and hundreds of thousands of pages of documents had been produced in discovery. The Settlement Agreement also occurred after over 1,000 dockets had been filed in this lawsuit.

**j)** Was entered into in part based on the complexity of this lawsuit and the bad acts of John Taylor and others, a jury could be confused and believe that GemCap should receive payment (including for some or all of the over \$2 million that GemCap was claiming John Taylor had allegedly used from the loan proceeds for the AIA Entities

MEMO ISO MOTION TO APPROVE SETTLEMENT RE: GEMCAP - 6

in violation of the loan agreement.

**k)** As this Court will see in Miesen's briefing to be filed in the near future, the AIA Entities continue to operate without proper corporate governance and there are no independent persons (let alone any persons) with any authority at the AIA Entities to act in any way on their behalf. The Settlement Agreement's approval by this Court resolves these issues as to GemCap.

**l)** The Settlement Agreement eliminates any risks to Miesen with respect to his claims against GemCap, which he has been pursuing without any monetary assistance from anyone else (let alone any help whatsoever from the AIA Entities that he is seeking to make whole in the interests of their innocent shareholders and stakeholders).

Thus, the evidence weighs in clear favor of approving the Settlement Agreement. Accordingly, this Court should approve the Settlement Agreement, and enter the order and judgment in the form attached to the Settlement Agreement. (8/11/22 Bond Decl., Ex. 1.)

## IV.    CONCLUSION

For the reasons stated above, this Court should grant Miesen's motion to approve the settlement agreement.

DATED:  This 11th day of August 2022.

RODERICK BOND LAW OFFICE, PLLC

By:    */s/ Roderick C. Bond*
      Roderick C. Bond
      Attorney for the Plaintiff Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:    */s/ Andrew Schwam*
      Andrew Schwam
      Attorney for the Plaintiff Dale L. Miesen

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 11th day of August 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:     jat@elamburke.com
Loren C. Ipsen:     lci@elamburke.com
Joyce A. Hemmer:     jah@elamburke.com
Bradley S. Keller:     bkeller@byrneskeller.com
Alyson A. Foster:   alyson@dempseyfoster.com
Tyler S. Waite:       twaite@campbell-bissell.com
Michael S. Bissell:     mbissell@campbell-bissell.com
Daniel L. Glynn:     dglynn@idalaw.com
Andrew Schwam:   amschwam@turbonet.com
Kim J Trout:     ktrout@trout-law.com


_/s/ Roderick C. Bond_
Roderick C. Bond

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>**v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>DECLARATION OF RODERICK C. BOND |

DECLARATION OF RODERICK C. BOND - 1

**17-ER-4361**

17-ER-4362

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

Defendants/Third-Party Plaintiffs,

v.

REED TAYLOR, an individual,

Third-Party Defendant.

REED TAYLOR, an individual,

Third-Party Defendant/ Counterclaimant,

v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

Counterdefendants.

DECLARATION OF RODERICK C. BOND - 2

I, Roderick C. Bond, declare:

1.      I am one of the attorneys for the Plaintiff Dale L. Miesen ("Miesen") in this lawsuit. I am a citizen of the United States, over the age of eighteen, and competent to testify in court, including as to matters in this Declaration. This Declaration is based upon my personal knowledge and my opinions with respect to matters relating to the reasons addressed below favoring the settlement with the defendant GemCap Lending I, LLC ("GemCap").

2.      I have been admitted to practice law in the state of Washington since 2002 and in the state of Idaho since 2009. I am also admitted to practice law in the Ninth Circuit Court of Appeals and the U.S. Supreme Court. Since the mid-2000s, I have focused my practice primarily on complex litigation. I have extensive experience in complex litigation. Over the years, I have favorably litigated complex multi-million-dollar cases. My experience also includes pursuing claims and collection efforts for creditors, and addressing matters of corporate power and authority, e.g., ultra vires and illegal acts. More recently, I obtained the reversal of a district court's order on another ultra vires act involving AIA Services before the Idaho Supreme Court. *See Taylor v. Taylor*, 163 Idaho 910, 422 P.3d 1116 (2018).

3.      On July 27, 2022, Miesen authorized Mr. Schwam and me to execute on his individual behalf the written Stipulation and Agreement of Settlement and Settlement of Derivative Action Settlement between Plaintiff and Defendant GemCap Lending I, LLC ("GemCap").  A true and correct copy of that signed Stipulation, together with the attached exhibits, is attached as ***Exhibit 1*** (collectively the "Settlement Agreement"). Miesen's authority provided to us for the Settlement Agreement was solely on his individual capacity. Miesen's authority to bind the AIA Entities, their shareholders and others to the Settlement Agreement is based exclusively on this Court's approval of the Settlement Agreement (if given) and the legal

DECLARATION OF RODERICK C. BOND - 3

effect of any judgment entered by this Court (e.g., the judgment (if entered) may operate to prevent others from challenging the Settlement Agreement and Rule 54(b) judgment. I personally ensured that the required notices were mailed as ordered by this Court on August 4, 2022. Because there is no money being paid by GemCap for the Settlement Agreement, I will explain in more detail some of the material reasons and benefits to Miesen and the AIA Entities (AIA Services Corp. and AIA Insurance, Inc.) flowing from the Settlement Agreement.

4. The reason that the Settlement Agreement was prepared, structured and executed as a stipulation among counsel was because we did not have possession of all of the necessary documents to independently verify that GemCap and its affiliates had the power and authority to enter into the Settlement Agreement. We cured this issue by having the Settlement Agreement be in the form of a stipulation signed by counsel, and we are relying on Alyson Foster to conduct that due diligence and legal work to ensure that GemCap and its affiliates have the power and authority to enter into the Settlement Agreement. In the Settlement Agreement, Alyson Foster represented and warranted that her clients had the authority to enter into the Settlement Agreement. In addition, after filing the signed Settlement Agreement, I confirmed by email with Alyson Foster that a copy of the filed Settlement Agreement had been provided to her clients to further ensure that there was no dispute on them granting her the authority to execute the Settlement Agreement. Finally, in an abundance of caution and to avoid any possible confusion as to our authority to bind Miesen to the Settlement Agreement, we had Miesen separately sign the Settlement Agreement to confirm our authority to execute it.

5. I have had the unfortunate opportunity of representing a number of persons over the years in matters involving the AIA Entities. Through those matters, I have learned that John Taylor does what he wants without fear of any legal consequences. While this lawsuit was filed

DECLARATION OF RODERICK C. BOND - 4

17-ER-4365

on August 11, 2010, the defendants promptly moved to dismiss or stay this lawsuit. Judge Boyle entered an order staying this lawsuit. I did not first appear as counsel in this lawsuit until 2012 (I first appeared as counsel for Miesen in 2016). At that time, I unsuccessfully moved to lift the stay in this lawsuit on behalf of Donna Taylor. Judge Boyle denied the request. While the stay continued, John Taylor got the AIA Entities involved in guaranteeing loans for the CropUSA Entities made from GemCap. Those loans soon ballooned to a $10 million line-of-credit guaranteed by the AIA Entities in violation of AIA Services' amended articles of incorporation and the AIA Entities' bylaws based on the facts and circumstances. We were not aware of those loan guarantees until well after they were executed. Meanwhile, Donna Taylor appealed the denial of the motion to lift the stay, and the Ninth Circuit Court of Appeals reversed the stay.[1] While that appeal was pending, Miesen discovered that John Taylor had entered into an over $12 million settlement agreement with GemCap, which resulted in the AIA Entities being indebted to GemCap for that amount, plus interest. None of the guarantees, loans, settlements or any other instrument that was allegedly entered into on behalf of the AIA Entities involving GemCap was ever disclosed to Miesen or other innocent shareholders beforehand nor was their consent ever sought or obtained. In essence, despite being an attorney, John Taylor does what he wants, despite what the articles of incorporation, bylaws and statutes stated.

6.      After numerous attempts to extricate the AIA Entities from any obligations to GemCap for the over $12 million settlement, Miesen made the decision to name GemCap as a new defendant in his Third Amended Complaint ("TAC") in this lawsuit to have the AIA Entities declared not liable to GemCap and to recover damages for the over $1 million in proceeds from the sale of three parcels of property owned by the AIA Entities, which were

---

[1] Notably, counsel for the defendants have tried to portray the lengthy period of time that this lawsuit has been pending as being the fault of Miesen. The defendants moved to stay this lawsuit—not Miesen. The over five-year delay in this lawsuit was caused by the defendants—not Miesen.

DECLARATION OF RODERICK C. BOND - 5

17-ER-4366

transferred and sold at the direction of GemCap and the net proceeds ultimately paid to GemCap (part of the net proceeds were not paid to GemCap until years later after Judge Brudie found John Taylor guilty of fraud in a fraudulent conveyance lawsuit filed by GemCap in Nez Perce County District Court). The TAC accurately provides information relative to certain transactions involving GemCap, which were prohibited by AIA Services' amended articles of incorporation and the AIA Entities bylaws under the facts and circumstances. After litigating with GemCap for years, Miesen made the decision to enter into the Settlement Agreement with GemCap even though it would not be paying any money to Miesen for the AIA Entities. I believe Miesen's decision to settle was correct (as I did with the Hawley Troxell Defendants), including for the reasons discussed in this Declaration.

7.     The settlement negotiations were "arms-length" and there was no collusion in the settlement process, negotiations, finalization or Miesen's authorization. The negotiations, including, through revisions to the Settlement Agreement, took place over numerous weeks. As with the settlement with the Hawley Troxell Defendants and without waiving attorney-client privilege or work product, Miesen consistently placed the interests of the AIA Entities and their innocent shareholders over his own personal interests in order to reach the agreed settlement terms.

8.     The Settlement Agreement unequivocally confirms that the AIA Entities are not indebted to GemCap and they are released from all claims by GemCap. This eliminates all risks of any claims or payments required to be made to GemCap, including, the payment of any of the proceeds from this lawsuit. Significantly, on August 21, 2020, GemCap supplemented discovery answers requesting the information on the amount allegedly owed by asserting that the amount owed to it by the AIA Entities was "$19,326,121.28, but that amount continues to accrue." The

DECLARATION OF RODERICK C. BOND - 6

Settlement Agreement confirms that the AIA Entities have been relieved of any obligations under the prior settlement agreement with GemCap. While John Taylor entered into a new settlement agreement with GemCap more recently, that settlement agreement was never disclosed to shareholders beforehand nor was any shareholder approval sought or obtained. That settlement agreement also violated AIA Services' amended articles of incorporation and the AIA Entities' bylaws and, therefore, might be void and unenforceable for the same reasons all of the other agreements and instruments involving the AIA Entities and GemCap were void and unenforceable under the legal theories being asserted by Miesen (and that agreement had other legal problems as well). *See, e.g.,* I.C. § 30-29-304(2)(a) & (3); *Kemmer v. Newman*, 161 Idaho 463, 466, 387 P.3d 131, 134 (2016) ("Actions taken in violation of a corporation's bylaws are void."). However, GemCap was also asserting that the AIA Entities had benefitted from the loans to the CropUSA Entities because Mr. Ellis alleged that over $2 million of the loan proceeds were diverted to the AIA Entities in violation of the loan agreement (the loan agreement did not authorize any loan proceeds to be transferred to the AIA Entities). This argument was presumably being advanced by GemCap in an effort to avoid having the obligations set aside as being ultra vires. *See, e.g., Taylor v. Taylor*, 163 Idaho 910, 422 P.3d 1116 (2018). This current Settlement Agreement eliminates all risks to the AIA Entities regarding setting aside the over $19 million that GemCap more recently claimed was owed. In sum, the Settlement Agreement ensures that the AIA Entities will not have to pay GemCap a penny, but GemCap will be permitted to retain the net proceeds that it received from the sale of the three parcels of property previously owned by the AIA Entities.

9.     There are other reasons why not requiring GemCap to pay money for the Settlement Agreement was warranted. On August 31, 2020 (over three years after GemCap was

DECLARATION OF RODERICK C. BOND - 7

17-ER-4367

named as a defendant), GemCap voluntarily surrendered its lending license to the state of California (the agreed order states that GemCap failed to comply with various lending requirements). Since that time, we have not been able to locate any information that GemCap was engaged in any viable business that could result in having the ability to pay a judgment in this lawsuit (if Miesen was successful). To the contrary, it appears that GemCap is in serious financial trouble because we discovered that GemCap's lender had filed a public notice to foreclose on its loan to GemCap. In fact, Richard and David Ellis (the co-presidents of GemCap) are now operating a lending business in Texas under a new entity called GemCap Solutions LLC. Based on information that we have seen, money that GemCap has recovered in other litigation was paid directly to another entity controlled by the Ellis brothers. Based on our research, we question whether any judgment that Miesen might obtain against GemCap would ever be collectible in full or in part. The evidence that we have been able to ascertain suggests that GemCap may be judgment proof. In other words, Miesen would be risking moving forward when it appears that there is nothing to move forward against even if he successfully obtained a large judgment against GemCap. Finally, despite Miesen's efforts, GemCap has never offered to pay any money to settle Miesen's claims. To the contrary, GemCap has consistently maintained that it was entitled to any recoveries that Miesen may obtain in this lawsuit. In sum, the risks for Miesen to move forward were not worth continuing to litigate against GemCap in the face of these facts alone.

10.     The Settlement Agreement will also ensure that GemCap will not obtain any of the proceeds from the $1.4 million settlement with the Hawley Troxell Defendants or any settlement(s) or judgments that Miesen may obtain against the remaining defendants. While Miesen does not believe that GemCap would be entitled to any fees and costs assuming it

DECLARATION OF RODERICK C. BOND - 8

**17-ER-4368**

prevailed, the risks of any potential attorneys' fees and cost request will be avoided as well. The Settlement Agreement eliminates these risks as well. The settlement also eliminates any risks associated with the complexity of the legal matters and any potential jury confusion, especially if the jury would be permitted to see Judge Brudie's order stating that John Taylor was guilty of fraud in his dealings with GemCap on behalf of the AIA Entities.

11.     While Miesen's claims against GemCap are strong in my opinions (there is simply no excuse for intentionally violating AIA Services' amended article of incorporation and the AIA Entities bylaws), Miesen is achieving his primary objective of extricating the AIA Entities from any and all liability to GemCap through the Settlement Agreement and ensuring that GemCap does not obtain any of the funds Miesen recovers from this lawsuit. Miesen would have preferred to resolve the case against all of the remaining defendants, and he made efforts to do so without any success. Therefore, a settlement with GemCap is appropriate and warranted.

12.     The broad nature of the Settlement Agreement confirms and ensures that GemCap will not be asserting any crossclaims or other claims against the AIA Entities for any past indebtedness or conduct (including any fraudulent conduct by John Taylor as found by Judge Brudie).  If Miesen and GemCap do not settle, the litigation between them will likely go on for years longer because Miesen would appeal if he lost and presumably GemCap would as well.

13.     As with the other defendants in this lawsuit, over the years, Miesen has made numerous efforts through counsel to resolve this action as to GemCap (and as to the other defendants). Those settlement efforts were unsuccessful. The window for settlement appears to be now.

14.     In my communications with certain shareholders other than Miesen and since mailing the notice of the settlement to shareholders and others on August 4, 2022, none of them

DECLARATION OF RODERICK C. BOND - 9

**17-ER-4369**

have objected to the Settlement Agreement or any of its terms. Similarly, since filing the Settlement Agreement with this Court, I have not been contacted by any attorneys representing the defendants or other parties to this lawsuit expressing any objection to the Settlement Agreement. Through the time of the filing of this Declaration, one person listed as an ESOP participant contacted me, but that person did not object to the Settlement Agreement. I have not been advised orally or in writing by Mr. Glynn (counsel for the remaining individual defendants and the CropUSA Defendants, Mr. Trout (counsel for the AIA Entities) or Ms. Foster (counsel for GemCap) that they or their respective clients oppose the terms and conditions of the Settlement Agreement, even after Miesen recently filed a copy of the Settlement Agreement

15.    The terms of the Settlement Agreement were reached after extensive discovery, discovery motion practice, and other motion practice had taken place. Hundreds of thousands of pages of documents have been produced in discovery or otherwise obtained by Miesen to review and consider in connection with determining the terms and conditions of the Settlement Agreement. GemCap has a motion for summary judgment and a motion to dismiss pending. In light of the risks and costs in this litigation and the main objectives of confirming that the AIA Entities will have no further obligations to GemCap (including confirming that they will not owe over $19 million claimed to be owed by GemCap) and that it will not be entitled to receive any of the recoveries from any of the other defendants (including the $1.4 million settlement with the Hawley Troxell Defendants) being achieved through the Settlement Agreement.

16.    In sum, based on the matters addressed above, in my opinion, the terms and conditions of the Settlement Agreement represent a fair, reasonable and adequate settlement of Miesen's direct and derivative claims against GemCap based on the facts and circumstances. I am respectfully requesting that the Court approve the terms of the Settlement Agreement. My co-

DECLARATION OF RODERICK C. BOND - 10

**17-ER-4370**

17-ER-4371

counsel, Andrew Schwam, who is a long-time practitioner and former Idaho State District Court

Judge, agrees that the Settlement Agreement is fair, adequate and reasonable.

    I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

*August 11, 2022, Bellevue, WA*             */s/ Roderick C. Bond*
Date and City and State Signed             Roderick C. Bond

DECLARATION OF RODERICK C. BOND - 11

**17-ER-4371**

17-ER-4372

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 11th day of August 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:    jat@elamburke.com
Loren C. Ipsen:    lci@elamburke.com
Joyce A. Hemmer:    jah@elamburke.com
Bradley S. Keller:    bkeller@byrneskeller.com
Alyson A. Foster:   alyson@dempseyfoster.com
Tyler S. Waite:     twaite@campbell-bissell.com
Michael S. Bissell:    mbissell@campbell-bissell.com
Daniel L. Glynn:    dglynn@idalaw.com
Andrew Schwam:   amschwam@turbonet.com
Kim J Trout:    ktrout@trout-law.com

*/s/ Roderick C. Bond*
Roderick C. Bond

DECLARATION OF RODERICK C. BOND - 12

**17-ER-4372**

Case 1:10-cv-00404-DCN-CWD   Document 1240-3   Filed 08/11/22   Page 1 of 25

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>**v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>STIPULATION AND AGREEMENT OF SETTLEMENT AND DERIVATIVE ACTION SETTLEMENT BETWEEN PLAINTIFF AND DEFENDANT GEMCAP LENDING I, LLC |

STIPULATION - 1

**Exhibit - 1, p. 1**

**17-ER-4373**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

Defendants/Third-Party Plaintiffs,

v.

REED TAYLOR, an individual,

Third-Party Defendant.

REED TAYLOR, an individual,

Third-Party Defendant/ Counterclaimant,

v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

Counterdefendants.

STIPULATION - 2

**Exhibit - 1, p. 2**

**17-ER-4374**

This stipulation and agreement of settlement (the "**Settlement Agreement with GemCap**") is made and entered into effective July 27, 2022, by and between, each by and through their respective counsel, plaintiff Dale Miesen ("**Miesen**"), on his own behalf and derivatively on behalf of AIA Services Corporation and AIA Insurance, Inc., and defendant GemCap Lending I, LLC ("**GemCap Lending I**").

**WHEREAS:**

1. On April 24, 2017, Miesen filed a Third Amended Complaint and Demand for Jury Trial (Dkt. 211) ("**Third Amended Complaint**") asserting claims and causes of action against GemCap Lending I.

2. GemCap Lending I has denied and continues to deny any wrongdoing or any violation of law or any liability as alleged in the Third Amended Complaint. This settlement agreement, whether or not approved by this Court, does not reflect any admission or concession with respect to any claim of any liability or damage or any defense thereto. GemCap Lending I enters this settlement to eliminate the burden, expense, uncertainty, distraction, and risk of ongoing or further litigation.

3. Miesen, through his counsel, has conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of Miesen's derivative claims against GemCap Lending I. This process included engaging in extensive discovery, including depositions and review of hundreds of thousands of pages of documents and emails, and consulting with experts on issues of liability and damages. Miesen believes that the claims asserted in the Third Amended Complaint have merit. However, Miesen and his counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Third Amended Complaint against GemCap Lending I. Miesen, GemCap Lending I, and their counsel

STIPULATION - 3

**Exhibit - 1, p. 3**

**17-ER-4375**

have also taken into account the uncertain outcome and the risk of any litigation. Based on their investigation and evaluation, Miesen and his counsel believe that the terms of this settlement agreement confer substantial benefits upon and are in the best interests of AIA Services Corporation, AIA Insurance, Inc., and their respective shareholders.

4.      Miesen and GemCap Lending I therefore desire to settle all disputes and claims between them, inclusive of all claims by Miesen as an individual and derivative claims on behalf of AIA Services Corporation and AIA Insurance, Inc., and all claims of either party to reimbursement of any attorneys' fees or costs incurred in this litigation.

**NOW, THEREFORE,** it is hereby stipulated and agreed that, subject to Court approval, and any all claims that have been or could have been brought are finally and fully compromised, settled, and released upon and subject to the following terms and conditions.

1.      **Definitions**. In this Stipulation and Agreement of Settlement, the following terms are defined as described:

a.      "**AIA Entities**" means the defendants AIA Services Corporation and AIA Insurance, Inc.

b.      "**Claims**" means all claims, judgments, actions, causes of action, suits, sums of money, demands, rights, damages, injuries, costs, obligations, contracts, agreements, promises, liabilities, losses, debts, harms, expenses, fees (including attorneys' fees), and compensation of every kind or nature whatsoever, whether based on tort or any other theory of recovery, in law or in equity, whether for compensatory or punitive damages, whether known or unknown and whether foreseen or unforeseen, which any party has, claimed to have, or claims to have, which may arise in the future, or

STIPULATION - 4

**Exhibit - 1, p. 4**

**17-ER-4376**

which any party hereafter may have or claim to have, including whether through operation of law, assignment or subrogation, from the beginning of time through the Effective Date.

c. "**Effective Date**" means, if the Court approves this settlement, the date of this Court approves this settlement agreement and enters the judgment of dismissal contemplated by this agreement.

d. "**Releasees**" means, in reference to a party, its past, present and future directors, officers, members, employees, agents, servants, attorneys, assigns, insurers, representatives, employers, partners, divisions, subsidiaries, parents, predecessors in interest, successors in interest, succeeding bankruptcy estates, and all other persons, affiliates, entities, associations, partnerships, and corporations with whom any of the former have been, are now, or may hereafter be affiliated.

2. **Dismissal With Prejudice**. Miesen shall dismiss all Claims, including direct claims brought on his own behalf and derivative Claims brought on behalf of the AIA Entities, against GemCap Lending I with prejudice. This dismissal shall be without an award of attorneys' fees or costs to, or against, Miesen, GemCap Lending I, and/or the AIA Entities. This dismissal and stipulation shall not impact, nor act as a release, of any of Miesen's direct and derivative Claims against the other defendants.

3. **Release by Miesen**. Miesen, on his own behalf, derivatively on behalf of the AIA Entities and their respective shareholders, and on behalf of his Releasees, hereby irrevocably, unconditionally, fully, finally, and forever releases and discharges GemCap Lending I and its Releasees from all Claims.

STIPULATION - 5

**Exhibit - 1, p. 5**

**17-ER-4377**

4.     **Releases by GemCap Lending I**.

    a.     GemCap Lending I, on its own behalf and on behalf of its Releasees, hereby irrevocably, unconditionally, fully, finally, and forever releases and discharges Miesen, his Releasees, and the AIA Entities, from all Claims.

    b.     GemCap Lending I confirms that the AIA Entities have no further liability under the guarantees and any subsequent settlement agreements arising from or in *GemCap Lending I, LLC v. Crop USA Insurance Agency, Inc.*, No. 2:13-cv-05504-SJO-MANx (C.D. Cal.) together with any judgments arising out of that lawsuit (all such judgments, including any recorded judgments, against the AIA Entities are deemed satisfied).

    c.     GemCap Lending I and its successors, assigns and/or affiliates (defined in this provision as "**Subsequently Settling Party**") agrees to and hereby fully and unconditionally releases, waives and discharges Hawley Troxell Ennis & Hawley LLP, including each of its current or former partners, associates, of counsel attorneys, paralegals, staff, other employees, affiliates, attorneys, agents, insurers, and any other persons or entities who acted on their behalf (collectively "**HTEH**"), from any claims Subsequently Settling Party has for losses, damages, liabilities, any causes of action, judgments, allegations and demands of every kind, name or nature, KNOWN OR UNKNOWN, asserted or which could have been asserted either in the past or in the future, that in any way relate to or arise out of (i) any prior dealings such Subsequently Settling Party had with HTEH, (ii) any prior dealings HTEH had concerning AIA Services Corporation ("**AIA Services**"), AIA

STIPULATION - 6

Insurance, Inc. ("**AIA Insurance**"), or either Crop USA, Insurance Agency, Inc. or CropUSA Insurance Services, LLC (collectively "**CropUSA**") and (iii) any potential claim for contribution or indemnification such Subsequently Settling Party has or potentially has against HTEH relating to or arising out of any claims previously made or which could have been made, or claims made in the future, against the Subsequently Settling Party that in any way relate to or arise out of any past transactions or litigation involving AIA Services, AIA Insurance, or CropUSA.

5. **Representations**.

    a. GemCap Lending I represents that neither it nor its Releasees has assigned any indebtedness it has or had against the AIA Entities to any third person or entity.

    b. Miesen represents that neither he nor his Releasees has assigned any claim he or it has or had against GemCap Lending I to any third person or entity.

6. **Authority**. The undersigned counsel each represents and warrants that they have the authority to execute this stipulation on behalf of their clients, subject to approval of the U.S. District Court for the District of Idaho and notice to shareholders.

7. **No admissions**. The fact that the parties to this stipulation have entered into it does not constitute an admission by any party that the positions taken by that party in this action were not valid.

8. **Notice to Shareholders**. Plaintiff shall be responsible for and pay all costs and expenses incident to providing shareholders a "Notice of Settlement." The contents and manner of such notice, a proposed copy of which is attached to this stipulation as Exhibit A, shall be as

STIPULATION - 7

**Exhibit - 1, p. 7**

**17-ER-4379**

approved by the Court and pursuant to Fed. R. Civ. P. 23.1 and Idaho Code § 30-29-745.

9. **Terms of the Judgment**. If this settlement agreement is approved by the Court, the parties shall request that the Court enter a Judgment substantially in the form annexed hereto as Exhibit B:

a. Finally approving of the settlement as fair, reasonable, and adequate, within the meaning of Rule 23.1 of the Federal Rules of Civil Procedure, and directing its consummation pursuant to its terms;

b. Directing that the action be dismissed with prejudice as against GemCap Lending I;

c. Directing that the parties to this stipulation shall bear their own costs and attorneys' fees; and

d. For such other relief as may be just and appropriate to effectuate the terms of this stipulation.

DATED:  This 27th day of July, 2022.

RODERICK BOND LAW OFFICE, PLLC

By:  _/s/ Roderick C. Bond_____
     Roderick C. Bond
     Attorney for the Plaintiff Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:  _/s/ Andrew Schwam_____
     Andrew Schwam
     Attorney for the Plaintiff Dale L. Miesen

DEMPSEY FOSTER PLLC

By:  _/s/ Alyson A. Foster_____
     Alyson A. Foster
     Attorney for Defendant GemCap Lending I,
     LLC

STIPULATION - 8

**Exhibit - 1, p. 8**

**17-ER-4380**

approved by the Court and pursuant to Fed. R. Civ. P. 23.1 and Idaho Code § 30-29-745.

9. **Terms of the Judgment.** If this settlement agreement is approved by the Court, the parties shall request that the Court enter a Judgment substantially in the form annexed hereto as Exhibit B:

a. Finally approving of the settlement as fair, reasonable, and adequate, within the meaning of Rule 23.1 of the Federal Rules of Civil Procedure, and directing its consummation pursuant to its terms;

b. Directing that the action be dismissed with prejudice as against GemCap Lending I;

c. Directing that the parties to this stipulation shall bear their own costs and attorneys' fees; and

d. For such other relief as may be just and appropriate to effectuate the terms of this stipulation.

DATED: This 27th day of July, 2022.

RODERICK BOND LAW OFFICE, PLLC

By: ___/s/ Roderick C. Bond___
    Roderick C. Bond
    Attorney for the Plaintiff Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By: ___/s/ Andrew Schwam___
    Andrew Schwam
    Attorney for the Plaintiff Dale L. Miesen

DEMPSEY FOSTER PLLC

By: ___/s/ Alyson A. Foster___
    Alyson A. Foster
    Attorney for Defendant GemCap Lending I, LLC

STIPULATION - 8

**Exhibit - 1, p. 9**

**17-ER-4381**

approved by the Court and pursuant to Fed. R. Civ. P. 23.1 and Idaho Code § 30-29-745.

9.    **Terms of the Judgment.** If this settlement agreement is approved by the Court, the parties shall request that the Court enter a Judgment substantially in the form annexed hereto as Exhibit B:

    a.  Finally approving of the settlement as fair, reasonable, and adequate, within the meaning of Rule 23.1 of the Federal Rules of Civil Procedure, and directing its consummation pursuant to its terms;

    b.  Directing that the action be dismissed with prejudice as against GemCap Lending I;

    c.  Directing that the parties to this stipulation shall bear their own costs and attorneys' fees; and

    d.  For such other relief as may be just and appropriate to effectuate the terms of this stipulation.

DATED: This 27th day of July, 2022.

RODERICK BOND LAW OFFICE, PLLC

By: ___/s/ Roderick C. Bond___
    Roderick C. Bond
    Attorney for the Plaintiff Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By: ___/s/ Andrew Schwam___
    Andrew Schwam
    Attorney for the Plaintiff Dale L. Miesen

DEMPSEY FOSTER PLLC

By: ___/s/ Alyson A. Foster___
    Alyson A. Foster
    Attorney for Defendant GemCap Lending I, LLC

STIPULATION - 8

**Exhibit - 1, p. 10**

**17-ER-4382**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of July 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:     jat@elamburke.com
Loren C. Ipsen:     lci@elamburke.com
Joyce A. Hemmer:     jah@elamburke.com
Bradley S. Keller:     bkeller@byrneskeller.com
Alyson A. Foster:     alyson@dempseyfoster.com
Tyler S. Waite:         twaite@campbell-bissell.com
Michael S. Bissell:     mbissell@campbell-bissell.com
Daniel L. Glynn:     dglynn@idalaw.com
Andrew Schwam:     amschwam@turbonet.com
Kim J Trout:     ktrout@trout-law.com


                              /s/ Roderick C. Bond
                              Roderick C. Bond

STIPULATION - 9

**Exhibit - 1, p. 11**

**17-ER-4383**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.,<br><br>                           Plaintiff,<br><br>    v.<br><br>CONNIE TAYLOR HENDERSON, et al.,<br><br>                        Defendants. | NO. 1:10-CV-404-DCN<br><br>**NOTICE OF PROPOSED SETTLEMENT OF SHAREHOLDER DERIVATIVE ACTION AND OF HEARING** |

**TO:    ALL PERSONS AND ENTITIES WHO HOLD OF RECORD OR BENEFICIALLY OWN PREFERRED OR COMMON STOCK OF AIA SERVICES CORPORATION OR AIA INSURANCE, INC. AT ANY TIME DURING THE PERIOD DECEMBER 31, 2010, THROUGH DECEMBER 31, 2017**

*THIS NOTICE CONCERNS A PROPOSED SETTLEMENT OF CERTAIN CLAIMS IN THE ABOVE-CAPTIONED SHAREHOLDER DERIVATIVE ACTION AND CONTAINS IMPORTANT INFORMATION ABOUT YOUR POTENTIAL RIGHTS CONCERNING THE LAWSUIT.  THIS NOTICE IS NOT AN EXPRESSION OF ANY OPINION BY THE COURT AS TO THE MERITS OF ANY CLAIMS OR DEFENSES IN THE LAWSUIT. THE STATEMENTS IN THIS NOTICE ARE NOT FINDINGS OF THE COURT*

All shareholders of both AIA Services Corporation ("AIA Services") and AIA Insurance, Inc. ("AIA Insurance") are hereby notified that, subject to among other things such as court approval, a Stipulation and Agreement of Settlement and Derivative Action Settlement Between Plaintiff and Defendant GemCap Lending I, LLC (the "Settlement Agreement" or "Settlement") has been reached regarding certain claims asserted in the above-entitled[1] shareholder derivative action pending in Idaho federal court (the "Action").  The Action was brought against certain

---

[1] The Action is also known as *Donna J. Taylor v. Hawley Troxell Ennis & Hawley LLP, et al*. However, Donna Taylor was previously voluntarily dismissed, without prejudice, as a plaintiff in the Action.

current and former officers and directors, R. John Taylor, James Beck, Michael Cashman, Sr., Connie Taylor Henderson (the "O&D Defendants") of AIA Services and AIA Insurance (collectively the "AIA Entities"); two entities formed for the sale and operation of crop insurance businesses which were allegedly supported, in part, with the AIA Entities' funds and assets, CropUSA Insurance Agency, Inc. and CropUSA Insurance Services, LLC (the "CropUSA Entities"); a law firm and certain attorneys, Hawley Troxell Ennis & Hawley, Gary Babbitt, D. John Ashby and Richard Riley (the "Professional Defendants") who previously represented AIA Services and/or AIA Insurance regarding certain matters; and subsequently a lender, GemCap Lending I, LLC ("GemCap Lending I"), who was formally named as a defendant in the Action in 2017. The Plaintiff Dale Miesen previously entered into a settlement agreement with the Professional Defendants that is the subject of an earlier notice provided to shareholders and creditors. If approved, the settlement subject to this notice would release only the claims against GemCap Lending I. The claims being made against the O&D Defendants and the CropUSA Entities have not been resolved and the Plaintiff anticipates vigorously continuing to litigate against those defendants.

Unless ordered by the Court (U.S. District Judge David C. Nye), there will be no hearing held for the determination of the fairness of the Settlement because no funds are being paid by GemCap. The Court may, in its discretion, schedule a fairness hearing and change the date and/or time of any fairness hearing (should one be ordered by the Court) without further notice to you. If you intend to attend or participate in any hearing (should one be ordered by the Court), you should confirm the date and time of the hearing online through PACER or by contacting the below counsel.

Prior to entering an order approving the Settlement and entering any judgment, the Court will determine (i) whether to approve the proposed settlement as fair, reasonable and adequate and in the best interests of the AIA Entities and their shareholders, and (ii) whether to enter a final judgment dismissing Plaintiff's direct and derivative claims in the Action against GemCap Lending I with prejudice and releasing GemCap Lending I (as defined and further set forth in the Settlement).

The Action was pursued by plaintiff Dale Miesen ("Plaintiff") individually and on behalf of the AIA Entities. If approved, the Settlement will result in no monetary consideration being paid by GemCap Lending I; however, the AIA Entities will be confirmed to have no liability for the over $12,000,000 in indebtedness to GemCap ("GemCap Loan Settlement Agreement"), including under the terms of the GemCap Loan Settlement Agreement.

This Notice is not an expression by the Court as to the merits of any claim or defense asserted in the Action.

## SUMMARY OF THE ACTION

The Action arises from a number of transactions and dealings concerning the AIA Entities beginning in the late 1990s. The Third Amended Complaint (the "TAC") alleges, among other things, that the O&D Defendants[2] had conflicts of interest, allegedly engaged in

---

[2] The O&D Defendants are R. John Taylor, Connie Henderson, James Beck, and Michael Cashman.

improper self-dealing, and breached fiduciary and other legal duties they owed the AIA Entities and their shareholders.  The TAC also alleges, among other things, that John Taylor, Connie Taylor Henderson and James Beck (three purported directors of the AIA Entities at that time of the GemCap Loan) entered into a $5 million line-of-credit lending arrangement for the CropUSA Entities with a lender GemCap Lending I ("GemCap Loan"). The TAC alleges, among other things, that the GemCap Loan made to the CropUSA Entities, which ultimately was increased to a $10 million line-of-credit, was guaranteed by the AIA Entities even though the AIA Entities' guarantees, together with the subsequent settlement agreement between GemCap Lending I, John Taylor, the AIA Entities and other parties, violated the AIA Entities' bylaws and AIA Services' amended articles of incorporation and were never duly disclosed to or authorized by AIA Services' shareholders. The TAC further alleges, among other things, that (i) the over $12 million in indebtedness owed by the AIA Entities to GemCap under the GemCap Loan Settlement Agreement and subsequent judgment, which were entered into after GemCap Lending I filed suit against the AIA Entities, CropUSA Entities, John Taylor and others in the U.S. District Court of California for failing to repay the GemCap Loan, should be declared illegal and void by the Court; and (ii) damages should be awarded because the AIA Entities' property (including AIA's former headquarters known as the Lewis/Clark Plaza) was improperly pledged to GemCap for the GemCap Loan and subsequently sold thereby inflicting damages to the AIA Entities.

GemCap Lending I expressly denies all assertions of wrongdoing or liability in the Action as to the GemCap Loan, the GemCap Loan Settlement Agreement and related transactions, and GemCap Lending I has vigorously disputed and defended Plaintiff's claims on multiple grounds for over five years. In addition, GemCap Lending I has asserted that over $2 million of the GemCap Loan proceeds were transferred by the loan recipient to the AIA Entities in violation of the terms of the GemCap Loan.

The Action as it pertained to GemCap Lending I has been pending since Plaintiff filed his proposed Third Amended Complaint naming GemCap Lending I and additional defendants in the Action.  Extensive document, deposition, and other discovery has occurred.  GemCap Lending I has filed a motion to dismiss and a motion seeking summary judgment dismissal of all of Plaintiff's claims against GemCap Lending I ("GemCap motions").  Those GemCap motions were pending and undecided when the proposed settlement was negotiated.  A copy of the GemCap motions can be obtained by obtaining them online from PACER or requesting them from counsel identified below.

This notice is intended to provide only a summary of the claims in the TAC. Shareholders and others are advised to review the TAC for its full content.  A copy of the TAC can be obtained by obtaining one online through PACER or requesting one from counsel identified below; provided, however, that you must seek any legal advice from your own attorney and not from any of the attorneys listed below.

**THE SETTLEMENT TERMS**

If approved, the Settlement would, among other things, (i) result in a release of all claims between the Plaintiff/the AIA Entities and GemCap Lending I, including, without limitation, claims against GemCap regarding the sale of three parcels of property previously owed by the

AIA Entities and any other funds paid to it by the AIA Entities; and (ii) confirm the AIA Entities have no obligations or indebtedness to GemCap Lending I, including, without limitation, any indebtedness under the GemCap Loan, the Settlement Agreement, and any indebtedness under any judgment entered or recorded against the AIA Entities in favor of GemCap Lending I. There is no monetary consideration being paid by GemCap Lending I for the Settlement. The terms of the Settlement are contained in the Settlement Agreement previously filed in the Action. If you wish to obtain a copy of the Settlement Agreement, you may do so by obtaining one online through PACER or by contacting the below counsel.

The Settlement, if approved, will result in a release of claims against GemCap Lending I as explained below.

### EFFECT OF COURT APPROVAL ON THE SETTLEMENT AGREEMENT

If the Court finds that the Settlement Agreement is fair, reasonable and adequate and in the best interests of the AIA Entities and their shareholders, the Court will enter an order and a final judgment approving the settlement with GemCap Lending I.  Under that order and the judgment, Plaintiff and all other holders of record or beneficial owners of stock in either of the AIA Entities, as well as any other persons or entities who could maintain a derivative claim on behalf of the AIA Entities, will release the individuals and entities identified as "Releasees" consistent with the terms of the release provisions in the Settlement by way of the judgment entered dismissing with prejudice the claims against GemCap Lending I.  If the Court's approval order becomes final and no longer subject to appellate review, it will release and extinguish all derivative claims that were or could have been asserted against GemCap (and the other Releasees), including without limitation, to the extent those claims arise from or relate in any way to any of the transactions and dealings concerning the AIA Entities that were at issue in the Action.  The Settlement expressly reserves all of Miesen's claims against the remaining defendants in the Action.

The Court has not made (and will not make) any determination as to the merits of any claims in the TAC against GemCap Lending I or its defenses.  This notice does not imply that GemCap Lending I would be found liable or that any relief against it would be awarded if the claims against it were not being settled.

### EFFECT OF COURT DISAPPROVAL OF THE SETTLEMENT

If the Settlement is not approved, then the Settlement will be void and of no effect, and Plaintiff and GemCap Lending I will be restored to their respective positions in the Action that they held before the Settlement was executed.  Among other things, the Court would proceed to address the merits of the GemCap motions.

### YOUR RIGHT TO OBJECT AND TO APPEAR

If you agree that the proposed settlement with GemCap Lending I should be approved as fair, reasonable and adequate and in the best interests of the AIA Entities and their shareholders, you do not need to do anything.  However, if you wish to object to either (i) the fairness, reasonableness or adequacy of the proposed settlement, or (ii) to any term(s) of the Settlement, then you may submit a written objection on your own (or through an attorney you hire at your

own expense), and you (or your attorney, if you have hired one) may appear at any fairness hearing should one be ordered by the Court.

**How to Object.** Any objections to either Court approval of the Settlement should (i) be in writing and refer to the Action's name and cause number, which is *Dale L. Miesen v. Connie Henderson, et al.*, No. 1:10-cv-404-DCN ("Court"), (ii) state the basis for or grounds for the objection, (iii) indicate whether you plan to appear at any fairness hearing that the Court, in its discretion, elects to hold, (iv) be filed with the Court, and (v) a copy should be provided to the counsel identified below.

**Any objection must be served and filed with the Court (and received by *all* the below counsel) no later than on or before September 1, 2022.**

If you do not meet the deadlines or follow the procedures set forth above, your objection(s) will not be considered by the Court (unless the Court otherwise determines), and neither you nor your attorney (if you hire one) will be allowed to object or appear at any fairness hearing should one be ordered held in the discretion of the Court. In addition to filing them with the Court, submissions objecting to either the proposed Settlement should also be sent to counsel as follows:

| *Counsel for Plaintiff* | *Counsel for GemCap Lending I, LLC* |
|---|---|
| RODERICK BOND LAW OFFICE, PLLC | DEMPSEY FOSTER PLLC |
| Roderick C. Bond, ISB No. 8082 | Alyson A. Foster, ISB No. 9719 |
| 10900 NE 4th Street, Suite 2300 | 800 W. Main Street, Suite 1460 |
| Bellevue, WA 98004 | Boise, Idaho 83702 |
| Telephone: (425) 591-6903 | Telephone: (208) 401-9533 |
| rod@roderickbond.com | alyson@dempseyfoster.com |

ANDREW SCHWAM LAW FIRM
Andrew Schwam, ISB No. 1573
705 SW Fountain Street
Pullman, WA 99163
Telephone: (208) 874-3684
amschwam@turbonet.com

### QUESTIONS REGARDING THE PROPOSED SETTLEMENT

*Please do not write or telephone the Court about the proposed Settlement.* If you have any questions, you may contact either Plaintiff's counsel or GemCap Lending I's counsel, both of whose contact information is set out above; provided, however, that the above counsel shall not provide any legal advice and you must seek and obtain any legal advice from your own attorney (as also applies to the prior notice received by you regarding the Professional Defendants).

BY ORDER OF THE COURT:
UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc., | Case No. 1:10-cv-00404-DCN |
| Plaintiff, | **ORDER APPROVING SETTLEMENT AND ENTERING FINAL JUDGMENT REGARDING DEFENDANT GEMCAP LENDING I, LLC** |
| v. | |
| CONNIE TAYLOR HENDERSON, et al., | |
| Defendants. | |

WHEREAS plaintiff Dale L. Miesen ("Plaintiff"), individually and as a shareholder asserting derivative claims on behalf of defendants AIA Services Corporation ("AIA Services") and its subsidiary AIA Insurance, Inc. ("AIA Insurance"), and defendant GemCap Lending I LLC ("GemCap Lending I") have entered into the Stipulation and Agreement of Settlement and Derivative Action Settlement Between Plaintiff and Defendant GemCap Lending I, LLC entered into on July 27, 2022 (the "Settlement Agreement") (Dkt. 1231) that would settle any and all shareholder claims that were or could have been asserted against GemCap Lending I in this case (and, through principles of res judicata and release, any derivative claims regarding certain matters against any Releasee, as defined in the Settlement Agreement); and

**Exhibit - 1, p. 18**     **Exhibit - B, p. 1**
**17-ER-4390**

WHEREAS, on _____, the Court entered a Scheduling Order Regarding Settlement Approval Proceedings ("Approval Scheduling Order") (Dkt. __) in which the Court ordered, among other things, that (i) Mailing Notice be provided to the extent set forth therein to shareholders, potential beneficial shareholders, and potential creditors of AIA Services and AIA Insurance (collectively the "AIA Entities"), and (ii) that all persons receiving notice, as well as the parties in this case, be provided with an opportunity to object to the proposed Settlement Agreement; and

WHEREAS the Court has considered the Motion to Approve Settlement Between Plaintiff and Defendant GemCap Lending I, LLC (Dkt. __), any objections filed to it, and any replies filed in support of it, and

WHEREAS the Court has considered whether there exists any just reason for delay in entering a Rule 54(b) final judgment on Plaintiff's claims against defendant GemCap Lending I,

NOW, THEREFORE, based on the submissions of Miesen and GemCap Lending I (collectively the "Settling Parties"), and after giving due consideration to any objections and other submissions received, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1.     **Incorporation of Settlement Agreement**.  To the extent that definitions for any defined terms do not appear in this Order Approving Settlement and Entering Final Judgment Regarding Defendant GemCap Lending I, LLC (the "Approval Order"), this Court adopts and incorporates the definitions in the Settlement Agreement. This Approval Order incorporates and makes a part hereof the Settlement Agreement, including Exhibit A thereto.

2.     **Jurisdiction.**  The Court has personal jurisdiction over all of the shareholders of record and beneficial shareholders of the AIA Entities (collectively the "Securities

ORDER APPROVING SETTLEMENT AND ENTERING FINAL JUDGMENT REGARDING DEFENDANT GEMCAP LENDING I, LLC – 38

**Exhibit - 1, p. 19          Exhibit - B, p. 2**
**17-ER-4391**

Holders") in connection with the shareholder derivative claims that were or could have been asserted in this case, and the Court has subject matter jurisdiction over this case, including jurisdiction to, among other things, approve the Settlement Agreement and dismiss with prejudice all claims against GemCap Lending I in this action.

3.      **Adequacy of Plaintiff and Plaintiff's Counsel.**  Plaintiff Miesen held stock in AIA Services continuously at all times relevant to this case and otherwise has standing to prosecute derivative claims on behalf of the AIA Entities and their Securities Holders. Plaintiff Miesen and his counsel have adequately represented the interests of other Securities Holders and the AIA Entities' interests with respect to and for the purpose of entering into and implementing the Settlement Agreement.

4.      **Proof of Notice.**  The Settling Parties have filed with the Court adequate proof that Mailing Notice materially consistent with the directives in the Approval Scheduling Order have been given.

5.      **Notice to Securities Holders.**  The Court finds that the Mailing Notice provided to Securities Holders regarding the Settlement Agreement were simply written and readily understandable and that the notice and notice methodology (i) constituted the best practicable notice, (ii) were reasonably calculated, under the circumstances, to apprise Securities Holders of the pendency of this action, the claims asserted, the terms of the proposed settlement, and Securities Holders' right to object to the proposed settlement, (iii) were reasonable and constituted due, adequate and sufficient notice to all of the AIA Entities' Securities Holders potentially entitled to receive notice, and (iv) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Local Civil Rules of this Court, Idaho Code § 30-29-

ORDER APPROVING SETTLEMENT AND ENTERING FINAL JUDGMENT REGARDING DEFENDANT GEMCAP LENDING I, LLC – 39

**Exhibit - 1, p. 20        Exhibit - B, p. 3**
**17-ER-4392**

745, and any other applicable law.

6. **Final Settlement Approval.** The Settling Parties have entered into the terms and provisions of the Settlement Agreement in good faith. The terms and provisions of the Settlement Agreement are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of, the AIA Entities and the Securities Holders, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), Idaho Code § 30-29-745, the Local Civil Rules of this Court, and any other applicable law.

7. **Implementation of the Agreement.** The Settling Parties and their counsel are directed to implement and consummate the Settlement Agreement according to its terms and conditions.

8. **Binding Effect.** The Settlement Agreement and this Approval Order shall be forever binding on Miesen, GemCap Lending I, and their respective Releasees, as to all released Claims. This Approval Order shall have *res judicata* and other preclusive effect in any future lawsuits or other proceedings maintained by or on behalf of the AIA Entities against GemCap Lending I or its Releasees; *provided however*, that this Approval Order shall not affect Miesen's or his Releasors' claims in this or any other case against any nonsettling Defendants.

9. **Releases and Waivers.** The releases set forth in Paragraphs 3 and 4 of the Settlement Agreement and its relevant definitions are expressly incorporated herein in all respects and shall be deemed a part of this order as if fully set forth herein. The Settling Parties agree and acknowledge that the provisions of the releases constitute essential terms of the Settlement Agreement. Nothing herein shall in any way impair or restrict the rights of any Settling Party to enforce the terms of the Settlement Agreement or this Approval Order.

ORDER APPROVING SETTLEMENT AND ENTERING FINAL JUDGMENT REGARDING DEFENDANT GEMCAP LENDING I, LLC – 40

**Exhibit - 1, p. 21        Exhibit - B, p. 4**
**17-ER-4393**

10.     **No Admissions.**  None of the Settlement Agreement, this Approval Order, any of the provisions of the Settlement Agreement, the negotiation of the Settlement Agreement, the statements or court proceedings relating to the Settlement Agreement, any document referred to in this Approval Order, any action taken to carry out this Approval Order, or any prior Orders in this case shall be (i) construed as, offered as, received as, used as or deemed to be evidence of any kind in this or any other judicial, administrative, regulatory or other proceeding or action, or (ii) construed as, offered as, received as, used as or deemed to be evidence of an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, without limitation, the AIA Entities and GemCap Lending I, provided however that this Approval Order and the Settlement Agreement may be used as evidence of the terms of the Settlement Agreement or to enforce the provisions of this Approval Order and Judgment or the Settlement Agreement; provided further that this Approval Order and the Settlement Agreement may be filed in any action against or by (or on behalf of) the AIA Entities, Miesen, GemCap Lending I, or their Releasees to support a defense of *res judicata*, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim.

11.     **Enforcement of Settlement.**  Nothing in this Approval Order shall preclude any action to enforce the terms of the Settlement Agreement.

12.     **Modification of Agreement.**  The Settling Parties are hereby authorized, without further notice to or approval by the Court, to agree to and adopt such amendments, modifications and expansions of the Agreement and its implementing documents (including all exhibits to the Agreement) that are not materially inconsistent with this Approval Order

17-ER-4395

and do not limit the rights of the AIA Entities, Securities Holders, GemCap Lending I, or any Releasees under the Agreement.

13. **Retention of Jurisdiction.**  The Court has jurisdiction to enter this Approval Order.  Without in any way affecting the finality of this Approval Order, the District Court expressly retains exclusive and continuing jurisdiction over the Settlement Agreement, the Settling Parties, all Securities Holders, and all Releasees to adjudicate all issues relating to this Settlement Agreement, including, without limitation, any issues relating to this Approval Order.

14. **Dismissal of Action.**  The claims asserted by the Plaintiff against GemCap Lending I in this case are hereby dismissed on the merits and with prejudice, without an award of fees or costs.

15. **Entry of Judgment.**  There is no just reason to delay the entry of this Approval Order and the Rule 54(b) Final Judgment, and immediate entry by the Clerk of Court is expressly directed pursuant to Federal Rule of Civil Procedure 54(b).

//end of text//

Alyson A. Foster, Dempsey Foster PLLC, counsel for defendant GemCap Lending I, LLC
Roderick C. Bond, Roderick Bond Law Office PLLC, counsel for plaintiff Dale L. Miesen

ORDER APPROVING SETTLEMENT AND ENTERING FINAL JUDGMENT REGARDING DEFENDANT GEMCAP LENDING I, LLC – 42

**Exhibit - 1, p. 23          Exhibit - B, p. 6**
**17-ER-4395**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.,<br><br>      Plaintiff,<br><br>  v.<br><br>CONNIE TAYLOR HENDERSON, et al.,<br><br>      Defendants. | Case No. 1:10-cv-00404-DCN<br><br>**RULE 54(b) FINAL JUDGMENT** |

Pursuant to the findings, terms, and conditions of this Court's Order Approving Settlement and Entering Final Judgment Regarding Defendant GemCap Lending I, LLC (Dkt. __), and the Court having found no just reason for delay in entering final judgment on the plaintiff's claims against GemCap Lending I, LLC to Federal Rule of Civil Procedure 54(b), IT IS ORDERED, ADJUDGED, and DECREED as follows.

The Stipulation and Agreement of Settlement and Derivative Action Settlement Between Plaintiff and Defendant GemCap Lending I, LLC (Dkt. __) is approved pursuant to Federal Rule of Civil Procedure 23.1 and Idaho Code § 30-29-745. All claims asserted by the plaintiff, including direct and derivative claims, against the defendant GemCap Lending I, LLC are DISMISSED with prejudice. The parties shall bear their own costs and fees.

//end of text//

RULE 54(b) FINAL JUDGMENT – 1

**Exhibit - 1, p. 24          Exhibit - B, p. 7**
**17-ER-4396**

Alyson A. Foster, Dempsey Foster PLLC, counsel for defendant GemCap Lending I, LLC
Roderick C. Bond, Roderick Bond Law Office PLLC, counsel for plaintiff Dale L. Miesen

**Exhibit - 1, p. 25**          **Exhibit - B, p. 8**

**17-ER-4397**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>        Plaintiff,<br><br>    **v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>        Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>DECLARATION OF ANDREW SCHWAM |

DECLARATION OF ANDREW SCHWAM - 1

**17-ER-4398**

17-ER-4399

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

　　　　　Defendants/Third-Party Plaintiffs,

　　　**v.**

REED TAYLOR, an individual,

　　　　　Third-Party Defendant.

REED TAYLOR, an individual,

　　　　　Third-Party Defendant/ Counterclaimant,

　　　**v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

　　　　　Counterdefendants.

DECLARATION OF ANDREW SCHWAM - 2

I, Andrew Schwam, declare:

1.	I am one of the attorneys for the Plaintiff Dale L. Miesen ("Miesen") in this lawsuit. I am a citizen of the United States, over the age of eighteen, and competent to testify in court, including as to matters in this Declaration. This Declaration is based upon my personal knowledge.

2.	I have been admitted to the practice of law for over 50 years. During that time, I have been a prosecutor in New York City, a limited jurisdiction Magistrate Judge in Grangeville, Idaho, a general jurisdiction District Judge in Moscow, Idaho, and since December 1984 in private practice doing mostly litigation. In December 1984, while President of the Idaho District Judges' Association, I resigned my District Judgeship in mid-term in a public protest over low judicial pay. My Martindale-Hubbell rating has been AV Preeminent for the last 37 years.

3.	My employment as an attorney for Plaintiff Miesen began in June 2021. I have familiarized myself with the long history of this case.  Based on my experience in litigating this case as well as my extensive experience as a judge and trial lawyer, it is my opinion that the settlement with GEMCAP LENDING I, LLC is reasonable considering all of the circumstances and status of the case. In consideration of the matters relating to the reasonableness and fairness of settlement agreement between Plaintiff Miesen and GEMCAP LENDING I, LLC, I concur with Mr. Bond's testimony contained in paragraphs 3, 4, 7, 8, 10, 11, 12, 13, and 15 of his declaration dated August 11, 2022, which I will not repeat here for purposes of brevity. I do not disagree with paragraphs 5, 6, and 14; but I have inadequate personal knowledge to offer a concurrence.  With regard to Paragraph 9 in Mr. Bond's declaration, I do not have first hand knowledge of every fact asserted therein; but I do concur with the conclusion that collecting any funds from GEMCAP LENDING I, LLC is so unlikely that there is no reason to continue trying.

DECLARATION OF ANDREW SCHWAM - 3

**4.**     In sum, based on the matters addressed above, in my opinion, the terms and conditions of the Settlement Agreement represent a fair, reasonable and adequate settlement of Miesen's direct and derivative claims against GEMCAP LENDING I, LLC based on the facts and circumstances. I am respectfully requesting that the Court approve the terms of the Settlement Agreement which I was authorized to sign by Mr. Miesen.

> I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

*August 11, 2022, Pullman, WA*              */s/ Andrew Schwam*
Date and City and State Signed            Andrew Schwam

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 11th day of August 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:     jat@elamburke.com
Loren C. Ipsen:     lci@elamburke.com
Joyce A. Hemmer:     jah@elamburke.com
Bradley S. Keller:     bkeller@byrneskeller.com
Alyson A. Foster:   alyson@dempseyfoster.com
Tyler S. Waite:        twaite@campbell-bissell.com
Michael S. Bissell:     mbissell@campbell-bissell.com
Daniel L. Glynn:     dglynn@idalaw.com
Andrew Schwam:  amschwam@turbonet.com
Kim J Trout:     ktrout@trout-law.com

*/s/ Roderick C. Bond*
Roderick C. Bond

DECLARATION OF ANDREW SCHWAM - 4

**17-ER-4401**

Case 1:10-cv-00404-DCN-CWD  Document 1241  Filed 08/16/22  Page 1 of 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporations and its wholly owned subsidiary AIA Insurance, Inc.,<br><br>　　　Plaintiff,<br>v.<br><br>HAWLEY TROXELL ENNIS & HAWLEY LLP, et al.,<br><br>　　　Defendants. | Case No. 1:10-cv-00404-DCN<br><br>**ORDER** |

In accordance with Docket 1235, the Clerk of the Court is instructed to deposit the

Settlement Payment of $1,400,000.00 to be held in treasury until further ordered.

DATED: August 16, 2022

_____
David C. Nye
Chief U.S. District Court Judge

ORDER - 1

**17-ER-4402**