**Consolidated Case Nos. 25-3552 and 25-3800**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.,

**Plaintiff-Appellant**,

v.

R. JOHN TAYLOR, an individual, CONNIE TAYLOR HENDERSON, an individual, JAMES BECK, an individual, MICHAEL W. CASHMAN, SR., an individual, CROP USA INSURANCE AGENCY, INC., an Idaho corporation, CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company, AIA SERVICES CORPORATION, an Idaho corporation, AND AIA INSURANCE, INC., an Idaho corporation,

**Defendants-Appellees**,

and

Reed J. Taylor, an individual,

**Third-Party Defendant-Appellee.**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO,
CHIEF DISTRICT COURT JUDGE DAVID C. NYE, PRESIDING

**APPELLANT'S EXCERPTS OF THE RECORD – VOLUME - 18**

Roderick C. Bond
Roderick Bond Law Office, PLLC
10900 NE 4th St., Suite 2300
Bellevue, WA  98004
Tel: (425) 591-6903
Email: rod@roderickbond.com
Attorney for Appellant

Andrew Schwam
Andrew Schwam Law Firm
705 SW Fountain St.
Pullman, WA  99163-2128
Tel: (208) 874-3684
Email: amschwam@turbonet.com
Attorney for Appellant

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>**v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>PLAINTIFF DALE L. MIESEN'S MEMORANDUM OF LAW IN SUPPPORT OF HIS MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS |

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - i

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

        Defendants/Third-Party Plaintiffs,

    **v.**

REED TAYLOR, an individual,

        Third-Party Defendant.

REED TAYLOR, an individual,

        Third-Party Defendant/ Counterclaimant,

    **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

        Counterdefendants.

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - ii

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................... 1

II. FACTS ...................................................................................................................... 1

III. ARGUMENT ............................................................................................................ 2

    A. This Court Should Approve the Payment of $560,000 in Attorneys' Fees (40% of the Recovery) and $375,327.96 in Costs from the Funds Held by the Treasury. ............................................................................................................ 2

        1. Federal Procedural Law and Idaho State Law Governs the Award and Method of Calculation of Attorneys' Fees and the Award of Costs. .......... 2

        2. Miesen's Attorneys Provided Services for an Agreed 40% Contingent Fee and They Have a Valid and Superior Charging Lien on the Settlement Proceeds Pursuant to I.C. § 3-205 ............................................ 3

        3. This Court Should Approve the Payment of the Requested Fees and Costs Under the "Common Fund" Doctrine. .............................................. 4

        4. Alternatively (or in Addition), this Court Should Approve the Payment of the Requested Fees and Costs Under I.C. § 30-29-746(1). ..... 6

        5. The AIA Entities Received a Substantial Benefit from the Settlement Agreement. ............................................................................................... 7

        6. The Amount of Fees Requested Are Reasonable and Warranted. .............. 8

            a. The Time and Labor Required. ..................................................... 10

            b. The Novelty and Difficulty of the Questions. ............................... 10

            c. The Skill Requisite to Perform the Legal Service Properly and the Experience and Ability of the Attorney in the Particular Field of Law. ................................................................................. 10

            d. The Prevailing Charges for Like Work. ........................................ 11

            e. Whether the Fee is Fixed or Contingent. ..................................... 11

            f. The Time Limitations Imposed by the Client or the Circumstances of the Case. ............................................................ 11

            g. The Amount Involved and the Results Obtained. .......................... 11

            h. The Undesirability of the Case. .................................................... 11

            i. The Nature and Length of the Professional Relationship with the Client. ..................................................................................... 12

            j. Awards in Similar Cases. .............................................................. 12

            k. The Reasonable Cost of Automated Legal Research. .................... 12

            l. Other Factors Which the Court Deems Appropriate in the Particular Case. ........................................................................... 12

7. The Costs Requested Are Reasonable and Warranted.............................. 13

8. There Were No Objections by Any Creditors, Shareholders or Other Stakeholders to the Payment or Amount of the Attorneys' Fees and Costs.................................................................................................. 14

9. Assuming the Defendants Renew Certain Objections, They Are Wholly Without Merit.................................................................. 14

    a. The Defendants' Mischaracterize Other Lawsuits........................ 14

    b. The Remaining Defendants' Indemnity Arguments Are Irrelevant and They Will Not Be Entitled to Any Indemnity. ...... 15

10. Miesen Respectfully Requests Oral Argument....................................... 16

IV. CONCLUSION............................................................................................ 17

CERTIFICATE OF SERVICE ................................................................................ 18

Miesen and his undersigned counsel (collectively "Miesen") move the Court as follows:

## I.   INTRODUCTION

Before this Court is Miesen's motion approve the payment of fees and costs from the $1,400,000 settlement obtained from the Hawley Troxell Defendants. For the reasons explained below, this Court should find that Miesen and his counsel have a 40% contingent fee arrangement and that his counsel have a valid first-priority charging lien on the remaining settlement proceeds after the payment to Mr. Lombardi. Then, this Court should award Miesen's counsel the $560,000 in requested contingent fees (which is far less than the fee would have been based on hourly rates) and $375,327.96 in costs (which is substantially less than the costs incurred) pursuant to the common fund doctrine and/or I.C. § 30-29-746(1). The fees and costs requested are reasonable and warranted for this complex and drawn-out lawsuit against the Hawley Troxell Defendants.

## II.   FACTS

After nearly twelve years since this lawsuit was filed (Dkt. 1),[1] Miesen and the Hawley Troxell Defendants entered into a Settlement Agreement that resulted in a $1,400,000 payment and a release of all claims (which includes claims for unpaid fees and costs). (8/18/22 Bond Decl., Ex. A.)  The Settlement Agreement provided a "common fund" and "substantial benefit" to AIA Services Corporation and AIA Insurance, Inc. (collectively "AIA Entities"). *Id.* On August 4, 2022, this Court approved the Settlement Agreement and entered a Rule 54(b) Judgment dismissing Miesen's claims against the Hawley Troxell Defendants thereby terminating the derivative proceeding against them. (Dkts. 1235, 1236.) On August 17, 2022, this Court ordered the $1.4 million settlement payment be deposited in the treasury. (Dkt. 1241.)

---

[1] This lawsuit was delayed many years because the defendants sought and obtained a stay. (*E.g.,* Dkt. 40.) The stay was not lifted until early 2016—after the Ninth Circuit reversed. (Dkts. 88, 95, 105, 108.) The defendants' arguments that this lawsuit has been delayed by Miesen or his counsel are without merit.

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 1

This timely motion followed.

### III.    ARGUMENT

**A.  This Court Should Approve the Payment of $560,000 in Attorneys' Fees (40% of the Recovery) and $375,327.96 in Costs from the Funds Held by the Treasury.**

**1.    Federal Procedural Law and Idaho State Law Governs the Award and Method of Calculation of Attorneys' Fees and the Award of Costs.**

In diversity cases, the decision regarding attorneys' fee (including the method of calculating fees) and the award of compensatory costs are governed by state law.[2] *Klopfenstein v. Pargeter*, 597 F.2d 150, 152 (9th Cir. 1979); *Mangold v. California Public Utilities Com'n*, 67 F.3d 1470, 1478-79 (9th Cir. 1995); *Sarens USA, Inc. v. Lowery*, 525 F.Supp.3d 1257, 1268 (D. Mont. 2021). However, procedural questions such as scheduling hearings or the deadlines to file a motion for attorneys' fees are governed by federal law. *See Mangold,* 67 F.3d at 1478.

A motion for attorneys' fees must "be filed no later than 14 days after the entry of Judgment." Fed. R. Civ. P. 54(d)(2)(B)(i).

Here, Miesen has timely moved for an award of attorneys' and costs within fourteen days of this Court's Rule 54(b) judgment dismissing the Hawley Troxell Defendants. (Dkt. 1236.)  And, because Miesen's claims are based exclusively on Idaho state law and the AIA Entities are Idaho corporations, Dkt. 211, Idaho law governs the award and calculation of Attorneys' fees and costs. Having established that Miesen's motion was timely filed and that Idaho law applies, Miesen will now establish that he has a 40% contingent fee agreement with his counsel and that they have a first-priority charging lien in the remaining $1,376,540.47 settlement proceeds.

---

[2] This Court must predict how the Idaho Supreme Court would decide any unsettled issues of law. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 2

**2.  Miesen's Attorneys Provided Services for an Agreed 40% Contingent Fee and They Have a Valid and Superior Charging Lien on the Settlement Proceeds Pursuant to I.C. § 3-205.**

This Court should find that Miesen's counsel have an agreement to be compensated through a 40% contingent fee. Next, this Court should find that Miesen's attorneys and their law firms have a valid and the first-priority charging lien over any other claimants on the remaining $1,376,540.47 in settlement proceeds (and any future proceeds) for their claimed fees and costs.

> The measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties, which is not restrained by law. From the commencement of an action, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor and the proceeds thereof in whosoever hands they may come; and can not be affected by any settlement between the parties before or after judgment.

I.C. § 3-205. Idaho recognizes both possessory and charging liens for attorney fees. *See Frazee v. Frazee*, 104 Idaho 463, 464, 660 P.2d 928, 929 (1983). The charging lien includes a lien for costs. *See, e.g., Nancy Lee Mines, Inc. v. Harrison*, 93 Idaho 652, 654 n. 4, 471 P.2d 39, 41 n. 4 (1970) (explaining that I.C. § 3-205 merely codifies the common law charging lien, which includes the right to "have fees and costs due him for services in a particular suit…"); *Isrin v. Superior Court*, 63 Cal.2d 153, 158-59, 403 P.2d 728, 732, 45 Cal.Rptr. 320, 324 (Cal. Ct. App. 1965).

Here, Miesen has a written fee agreement with Mr. Bond's firm and Mr. Schwam that requires the payment of a 40% contingent fee (35% to Mr. Bond's firm and 5% to Mr. Schwam) of the gross proceeds recovered in this lawsuit and the reimbursement of all costs incurred. (8/18/22 Miesen Decl. ¶5; 8/18/22 Bond Decl. ¶26, Ex. A; 8/18/22 Schwam Decl. ¶4.) Thus, this Court should find that those representation terms have been established and that Miesen's counsel have a first-priority charging lien for attorneys' fees and costs against the remaining $1,376,540.47 in settlement funds held by this Court and that their lien is superior to all other claimants. In light

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 3

of the AIA Entities precarious financial condition (8/18/22 Bond Decl. Ex. B) and the verified allegations in the Third Amended Complaint ("TAC"), this charging lien is even more important to have confirmed.

If, for some reason, this Court does not address Miesen's fees and costs, this Court should still enter an order finding that Miesen's counsel, Roderick Bond Law Office, PLLC and Andrew Schwam, have a first-priority charging lien on the $1,376,540.47 in remaining settlement proceeds and any future proceeds deposited into the Court to secure the payment of attorneys' fees and costs. Having established the applicable terms of the contingent fee representation and that Miesen's counsel have a charging lien on the remaining settlement proceeds, Miesen will now turn to the legal basis to approve the payment of Miesen's attorneys' fees and costs.

3.  **This Court Should Approve the Payment of the Requested Fees and Costs Under the "Common Fund" Doctrine.**

Because Miesen's counsel have secured a $1,400,000 settlement common fund ($1,376,540.47 after the Court's payment to Mr. Lombardi), this Court should order that Miesen's 40% contingent fee ($560,000) and the $375,327.96 in costs be awarded to his counsel under the "common fund" doctrine.

"The 'common fund doctrine' was first recognized in Idaho in 1959." *Wensman v. Farmers Ins. Co. of Idaho*, 134 Idaho 148, 151, 997 P.2d 609, 612 (2000). "The purpose of the doctrine is to afford fairness to the injured party, 'for it would be unjust to require him to incur expenses for the recovery of money for the benefit of the insurer, without being allowed to reimburse himself.'" *Kenneth F. White, Chtd. v. St. Alphonsus Reg'l Med. Ctr.*, 136 Idaho 238, 242, 31 P.3d 926, 930 (2001) (citations omitted).

However, there are no published Idaho appellate court decisions applying the "common fund" doctrine to recoveries obtained in a direct action or derivative action that obtained a

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 4

"common fund" for the benefit of a corporation. The "common fund" doctrine has been recognized for many years to award fees and costs for shareholder suits by other courts. *See, e.g., Schilling v. Belcher*, 582 F.2d 995 (5th Cir. 1978).

Most courts have found that fee-shifting statutes do not displace "common fund" awards. *Staton v. Boeing Co.*, 327 F.3d 938, 967–69, 55 Fed. R. Serv. 3d 1299 (9th Cir. 2003) (permitting common fund recovery even where statutory fees may be available); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1327 (2d Cir. 1990) ("In our view, fee-shifting statutes are generally not intended to circumscribe the operation of the equitable fund doctrine.").

Here, Miesen asserts that the Idaho Supreme Court would adopt the "common fund" doctrine to apply in instances when shareholders make recoveries on behalf of corporations, irrespective of whether those recoveries are obtained through direct or derivative claims, and that "common fund" awards are not displaced by fee-shifting statutes. *Gravquick A/S*, 323 F.3d at 1222.

Miesen, through the efforts of his counsel, has recovered a $1,376,540.47 (after deducting Mr. Lombardi's payment) "common fund" through the prosecution of his direct and derivative claims and the ultimate entry of the Settlement Agreement with the Hawley Troxell Defendants. (8/18/22 Bond Decl. ¶¶2-49, Ex. A.) The Settlement Agreement does not allocate the $1,400,000 recovery between the direct and derivative claims. *Id.* Moreover, Miesen's direct claims may not be covered by I.C. § 30-29-746(1).[3] Thus, the "common fund" doctrine appears to be the most appropriate means of compensating Miesen's counsel for their efforts and extensive costs. Moreover, it would be unjust to allow the AIA Entities to retain the benefit from the over ten years of work and over $400,000 in costs incurred in prosecuting this lawsuit.

---

[3] For example, Miesen has asserted ultra vires and related unauthorized conduct under I.C. § 30-29-305 and its predecessors. While that statute permits Miesen to enjoin the AIA Entities, set aside transactions and for the Court to award the AIA Entities damages, there is no fee provision providing for Miesen to recover fees and costs under those statutes.

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 5

**18-ER-4412**

For the same reasons stated in Section A(5) below, the $1,400,000 and release of claims by the Hawley Troxell Defendants for all unpaid fees and costs provided a substantial benefit to the AIA Entities (although Idaho has not adopted the "substantial benefit" test for "common fund" awards). Indeed, by definition, a "common fund" would be a benefit.

Accordingly, this Court should hold that the Idaho Supreme Court would apply the "common fund" doctrine to recoveries in shareholder lawsuits and would award Miesen's counsel their 40% contingent fee and the requested costs from the settlement funds.

**4. Alternatively (or in Addition), this Court Should Approve the Payment of the Requested Fees and Costs Under I.C. § 30-29-746(1).**

Because the derivative proceeding as to the Hawley Troxell Defendants has been terminated, this Court should approve the payment of Miesen's attorneys' fees and costs by the AIA Entities.

> On termination of the derivative proceeding, the court may: (a) Order the corporation to pay the plaintiff's reasonable expenses, including counsel fees, incurred in the proceeding if it finds that the proceeding has resulted in a substantial benefit to the corporation.

I.C. § 30-29-746(1). The Idaho Legislature defined "derivative proceeding" in I.C. § 30-29-746 as "a civil suit in the right of a domestic corporation..." I.C. § 30-29-740(1).

Here, Miesen "derivative proceeding" against the Hawley Troxell Defendants, which could have been filed as a separate lawsuit, has been terminated through the execution of the settlement agreement and this Court's subsequent approval order and Rule 54(b) Judgment. (Dkts. 1235, 1236.) Alternatively, if this Court approves Miesen's settlement with GemCap and its decision regarding the derivative demands stands after the pending briefing, then the entire derivative proceeding would be terminated as to all parties. Thus, this Court should order the AIA Entities to pay Miesen's attorneys' fees and costs pursuant to I.C. § 30-29-740(1). Under either scenario, Miesen should be awarded his 40% contingent fee and the requested costs out of the settlement.

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 6

For the same reasons stated in Section A(5) below, the $1,400,000 and release of claims by the Hawley Troxell Defendants for all unpaid fees and costs provided a substantial benefit to the AIA Entities.

**5.    The AIA Entities Received a Substantial Benefit from the Settlement Agreement.**

The Idaho Supreme Court has never addressed what constitutes a "substantial benefit" under I.C. § 30-29-746(1) nor has it ever adopted that requirement for "common fund" cases. The Idaho Supreme Court has stated:

> The law is apparently well settled that where a stockholder brings an action for the benefit of the corporation and the suit terminates favorably to the stockholder and thus inures to the benefit of the corporation the stockholder is entitled to reimbursement for his expenses, including attorney's fees.

*Coeur D'Alenes Lead Co. v. Kingsbury*, 59 Idaho 627, 85 P.2d 691 (1938) (citations omitted). The plain reading of I.C. § 30-29-746(1) merely states that a "substantial benefit" must be obtained. *Johnson v. Sanchez*, 140 Idaho 667, 669, 99 P.3d 620, 622 (Ct. App. 2004) ("The plain meaning of a statute will prevail unless clearly expressed legislative intent is contrary or unless plain meaning leads to absurd results."). The Idaho Supreme Court regularly relies on Black's Law Dictionary to define terms. *Taylor v. Taylor*, 163 Idaho 910, 918, 422 P.3d 1116, 1124 (2018) (defining "ultra vires" using Black's Law Dictionary). "Substantial" has been defined as "Real and not imaginary; having actual, not fictitious, existence." Black's Law Dictionary (11th ed. 2019). "Benefit" has been defined as "Profit or gain; esp., the consideration that moves to the promise." *Id.*

Here, there can be no credible argument that the $1,400,000 settlement payment (the $1,400,000 settlement payment alone is more than sufficient to establish a substantial benefit) and the release of any claims for unpaid fees and costs (among other terms in that agreement). (8/18/22 Bond Decl. Ex. A.) The plain meaning of "substantial benefit" is more than satisfied by a

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 7

$1,400,000 recovery (or the net $1,376,540.47 recovery after the payment to Mr. Lombardi). The AIA Entities have less than $1,000 in cash on hand as of December 31, 2021 (presumably less now). (8/18/22 Bond Decl. Ex. B.) The recovery of $1,400,000 is a windfall for the AIA Entities, even after deducting the fees and costs requested by Miesen. Thus, Miesen has established that the Settlement Agreement provided a "substantial benefit" to the AIA Entities.

Accordingly, as a matter of law, the $1,376,540.47 remaining settlement payment and the $1,400,000 each establish that the AIA Entities received a "substantial benefit" to trigger an award of fees under I.C. § 30-29-740(1) and the "common fund" doctrine (assuming this Court predicts that the Idaho Supreme Court would adopt such a requirement).

**6.   The Amount of Fees Requested Are Reasonable and Warranted.**

Having established above that Miesen is entitled to an award of fees, Miesen respectfully requests that the Court approve the payment of a 40% contingent fee (35% to Mr. Bond's firm and 5% to Mr. Schwam) in the total amount of $560,000. Contingent fee is proper method and in the best interests of the AIA Entities and their stakeholders.

The "proper measure of attorney fees" requested for "a state law cause of action, is governed by rule of civil procedure, Rule 54(e)(3)." *Perkins v. U.S. Transformer West*, 132 Idaho 427, 974 P.2d 73, 76 (1999) (declining to adopt the federal lodestar method for calculating attorneys' fees, so the federal standards are not workable here).

> Under Idaho Rule of Civil Procedure (IRCP) 54(e)(3), the Court may award a reasonable amount of attorney fees to the prevailing party or parties. "What constitutes a reasonable fee is a discretionary determination for the trial court, to be guided by the criteria of [IRCP] 54(e)(3)." The IRCP 54(e)(3) factors are as follows:
> (A) the time and labor required;
> (B) the novelty and difficulty of the questions;
> (C) the skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law;
> (D) the prevailing charges for like work;
> (E) whether the fee is fixed or contingent;

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 8

> (F) the time limitations imposed by the client or the circumstances of the case;
> (G) the amount involved and the results obtained;
> (H) the undesirability of the case;
> (I) the nature and length of the professional relationship with the client;
> (J) awards in similar cases;
> (K) the reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case;
> (L) any other factor which the court deems appropriate in the particular case.

"[IRCP] 54(e)(3) does not require the district court to make specific findings in the record, only to consider the stated factors in determining the amount of the fees. When considering the factors, courts need not demonstrate how they employed any of those factors in reaching an award amount." The "court need not specifically address all of the factors contained in [IRCP] 54(e)(3) in writing, so long as the record clearly indicates that the court considered them all."

However, the court must explain the relationship between its "evaluation of the [IRCP] 54(e)(3) factors and its decision regarding the amount to award for attorney[ ] fees." "It is not enough for a trial court to acknowledge the existence of the Rule 54(e)(3) factors; rather, it must appear that there is a reasoned application of those factors in the trial court's decision regarding the amount of attorney[ ] fees to be awarded."

"The burden is on the party opposing the award to demonstrate that the district court abused its discretion."

*Gerber-Siggelkow v. Allstate Prop. and Cas. Ins. Co.*, Case No. 1:18-cv-00408-CWD, 2022 WL 1416552 at *5-6 (D. Idaho Feb. 7, 2022) (citations omitted) (alterations in original).

The award need not be based upon the hourly time sheets, "as the amount of time spent is but one of the several factors to be considered in awarding attorney fees." *Hackett v. Streeter*, 109 Idaho 261, 263, 706 P.2d 1372, 1374 (Ct. App. 1985). I.R.P.C. 1.5(c) permits an attorney to represent a client on a contingent fee basis. On a contingent fee case, it is permissible for any attorney to estimate his or her time incurred in the lawsuit. *Parsons v. Mut. of Enumclaw Ins. Co.*, 143 Idaho 743, 748, 152 P.3d 614, 619 (2007); *see also* Fed. R. Civ. P. 54(d)(2)(B)(iii) ("state the amount sought or provide a fair estimate of it"). Under the "common fund" doctrine, the class or benefiting party must pay their "proportionate share" of the fees and costs. *Wensman*, 134 Idaho

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 9

at 152, 997 P.2d at 613.

After applying the above authorities and factors to Miesen's request for attorneys' fees, the factors overwhelmingly demonstrate that a 40% contingent fee (35% to Mr. Bond's firm and 5% to Mr. Schwam) in the total amount of $560,000 is reasonable under the circumstances. (8/18/22 Bond Decl. ¶¶1-49, 51-52; 8/18/22 Schwam Decl. ¶¶1-13; 8/18/22 Miesen Decl. ¶¶1-7.) The payment of the requested contingent fee constitutes an approximate 50% discount based on hourly rates. In sum, the I.R.C.P. 54(e) factors all weigh heavily in favor of the requested fee award. (*Id.*) Miesen will now address each factor in turn.

### a.   *The Time and Labor Required.*

The time and labor required was extraordinary. (8/18/22 Bond Decl. ¶¶5-17; 8/18/22 Schwam Decl. ¶5; 8/18/22 Miesen Decl. ¶7.) Mr. Bond has been an attorney on this lawsuit since 2012, and previously made a successful trip to the Ninth Circuit to reverse the stay. There are over 1,200 dockets in this lawsuit (not including the thousands more sub-dockets).

### b.   *The Novelty and Difficulty of the Questions.*

Miesen's claims against the Hawley Troxell Defendants involved numerous novel issues and issues of first impression regarding substantive and discovery matters. (8/18/22 Bond Decl. ¶18; 8/18/22 Schwam Decl. ¶9; 8/18/22 Miesen Decl. ¶7.)

### c.   *The Skill Requisite to Perform the Legal Service Properly and the Experience and Ability of the Attorney in the Particular Field of Law.*

The skill required to prosecute Miesen's claims against the Hawley Troxell Defendants was substantial and the experience of Miesen's counsel has greatly assisted (in particular Mr. Bond's experience in dealing with many other AIA related lawsuits and the knowledge that he gained). (8/18/22 Bond Decl. ¶¶19-22; 8/18/22 Schwam Decl. ¶10; 8/18/22 Miesen Decl. ¶7.)

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 10

**d. *The Prevailing Charges for Like Work.***

Attorneys in Ada County, Idaho regularly accept legal malpractice related cases for 33% to 40% of the gross recoveries, plus the reimbursement of costs. (8/18/22 Bond Decl. ¶¶23-25; 8/18/22 Schwam Decl. ¶7; 8/18/22 Miesen Decl. ¶7.)

**e. *Whether the Fee is Fixed or Contingent.***

Miesen and his counsel have a written contingent fee agreement providing for the payment of a 40% contingent fee (35% to Mr. Bond's firm and 5% to Mr. Schwam) from all gross recoveries, plus the reimbursement of all costs and the payment of 12% interest on all sums advanced. (8/18/22 Bond Decl. ¶¶26-27; 8/18/22 Schwam Decl. ¶6; 8/18/22 Miesen Decl. ¶¶5, 7.)

**f. *The Time Limitations Imposed by the Client or the Circumstances of the Case.***

There were no time limitations for this complex and drawn-out lawsuit against the Hawley Troxell Defendants. (8/18/22 Bond Decl. ¶¶28-30; 8/18/22 Miesen Decl. ¶7.) This benefited Miesen and the AIA Entities because a 40% contingent fee is substantially less than the fees would have been had they been charged by the hour.

**g. *The Amount Involved and the Results Obtained.***

Miesen's claims against the Hawley Troxell Defendants involved various alternative damage theories (not the total claimed by the defendants). The $1,400,000 settlement was a good result and seven-figure legal malpractice settlements are rarely obtained. (8/18/22 Bond Decl. ¶¶31-37; 8/18/22 Schwam Decl. ¶11 8/18/22 Miesen Decl. ¶7.)

**h. *The Undesirability of the Case.***

This lawsuit was highly undesirable and with substantial risk in light of the substantial costs and complex work. (8/18/22 Bond Decl. ¶¶38-39; 8/18/22 Schwam Decl. ¶12; 8/18/22 Miesen Decl. ¶7.) Mr. Schwam agreed to assume the role of co-counsel to prosecute Miesen's

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 11

claims against the Hawley Troxell Defendants after this Court had excluded Miesen's legal malpractice expert.

### i.   *The Nature and Length of the Professional Relationship with the Client.*

Mr. Bond had a long-standing relationship with Miesen dating back to successfully defeating a lawsuit brought by the Individual Defendants improperly through AIA Services in an effort to eliminate Miesen as a shareholder through an unlawful reverse stock split for ten cents per share (Mr. Schwam had no prior relationship with Miesen). (8/18/22 Bond Decl. ¶40; 8/18/22 Schwam Decl. ¶4; 8/18/22 Miesen Decl. ¶7.)

### j.   *Awards in Similar Cases.*

Miesen's counsel has obtained 40% contingent fee recoveries in other legal malpractice related lawsuits (8/18/22 Bond Decl. ¶41; 8/18/22 Miesen Decl. ¶7.)

### k.   *The Reasonable Cost of Automated Legal Research.*

Mr. Bond incurred and allocated the reasonable sum of $12,000 for Westlaw charged, which date back to 2012 (Mr. Schwam had no such charges). (8/18/22 Bond Decl. ¶42; 8/18/22 Miesen Decl. ¶7.)

### l.   *Other Factors Which the Court Deems Appropriate in the Particular Case.*

There are a number of additional factors that this Court should consider, including, (a) Rather than remain neutral regarding Miesen's derivative claims or otherwise proceed independently, the AIA Entities have defended this lawsuit under the direction of the same management who defrauded the corporations and without any truly independent counsel (which has dramatically increased the work and lowered the success); (b) there are no stakeholders objecting to the fee and cost award other than John Taylor and attorneys who do not represent anyone who is a stakeholder; (c) the lawsuit has dragged on for over a decade from delays sought by the defendants; and (d) Mr. Bond is agreeing to write off over $100,000 in costs and a

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 12

substantial amount of interest; (b) (8/18/22 Bond Decl. ¶¶43-49; 8/18/22 Schwam Decl. ¶9; 8/18/22 Miesen Decl. ¶¶2-7.)

**7.    The Costs Requested Are Reasonable and Warranted.**

Having established above that Miesen should be awarded his costs under I.C. § 30-29-740(1) and the "common fund" doctrine, this Court should award him the $375,327.96 in reduced costs, which are more than reasonable under the circumstances for this complex and over twelve-year-old lawsuit.

"[C]ourts make cost determinations based upon declarations filed by the counsel seeking a fee or cost award." *Lola L. Cazier Revocable Tr. v. Cazier*, 167 Idaho 109, 119, 468 P.3d 239, 249 (2020).

Here, Miesen's counsel should be awarded the requested $375,327.96 in costs, especially when he has agreed to write off in far excess of over $100,000 in costs and interest that Miesen was obligated to pay in order to facilitate Miesen's settlement. (8/18/22 Bond Decl. ¶¶26, 49(a)-(p); 8/18/22 Schwam Decl. ¶5; 8/18/22 Miesen Decl. ¶¶5-7.) Those costs were all incurred and are all directly or indirectly related to Miesen's claims against the Hawley Troxell Defendants.

Based on the responses in opposition to Miesen's original motion for fees and costs, he expects an objection to the costs relating to McDermott's expert witness fees. While this Court excluded McDermott, as a matter of law, his status produced the $1,400,000 settlement because the material settlement terms were achieved through the Ninth Circuit mediator that was appointed for Miesen's failed attempt to appeal early. (8/18/22 Bond Decl. ¶49(b).) As the exclusion of Larry Hile for Miesen's case-in-chief, Mr. Hile was retained as a rebuttal expert and thus Miesen simply sought to also utilize his opinions for his case-in-chief. (*Id.* at ¶49(g).) Mr. Hile will still testify as to his rebuttal opinions at any trial. In sum the $375,327.96 in requested costs are reasonable and warranted for this complex lawsuit against the Hawley Troxell Defendants. This Court should

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 13

award the full $375,327.96 in costs, especially since Miesen's counsel is writing off significant other costs.

**8.    There Were No Objections by Any Creditors, Shareholders or Other Stakeholders to the Payment or Amount of the Attorneys' Fees and Costs.**

There were no objections to Miesen's fee and cost request by any shareholders, stakeholders or creditors. (8/18/22 Bond Decl. ¶4; 8/18/22 Schwam Decl. ¶3.) Nor were any objections filed. While it is true that Miesen's counsel also represents Donna Taylor in another pending action (*see, e.g., Taylor v. Taylor*, 163 Idaho 910, 422 P.3d 1116 (2018)), the argument that Miesen's counsel somehow has a conflict through the Settlement Agreement as to Donna Taylor is wholly unsupported by the record. Donna Taylor retained independent counsel, Dan Green, to approve the settlement and the request for fees and costs. (8/18/22 Bond Decl. Ex. A, at 14 ¶d, at 17.)  The only objections to fees and costs have arisen from the persons and entities who did nothing to assist in obtaining the recovery and fought Miesen from obtaining a recovery against the Hawley Troxell Defendants (the remaining defendants).

**9.    Assuming the Defendants Renew Certain Objections, They Are Wholly Without Merit.[4]**

The defendants previously asserted a number of meritless arguments. Although it is unknown whether the arguments will be renewed in responses to this motion, Miesen will briefly address some of the arguments to show the lack of merit.

**a.    *The Defendants' Mischaracterize Other Lawsuits.***

The Defendants' arguments that the numerous lawsuits filed across the country should be considered by the Court in its analysis and they mischaracterize what has transpired. First, the only lawsuit that is relevant to the award of Miesen's attorneys' fees and costs in the results of this lawsuit. Second, the other lawsuits are irrelevant other than show additional misconduct and

---

[4] In addressing any of the arguments that the defendants previously asserted to Miesen's prior withdrawn motion (Dkts. 1219-1223), Miesen is not conceding that those responses have merit or still apply (they do not).

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 14

harm caused by John Taylor. (8/18/22 Bond Decl. ¶¶50(a)-(l); 8/18/22 Miesen Decl. ¶¶2-7.) Indeed, John Taylor has already been found by one court to have defrauded GemCap—he cannot deny that finding. (Dkt. 1082-4; 8/18/22 Bond Decl. ¶50(j).) Yet, he acts as if he has been wronged. Third, Miesen was not a party in any of the lawsuits except two (he prevailed in one and was awarded fees against AIA Services and the other was dismissed without prejudice, which led to GemCap being named as a defendant in this lawsuit. Both of those lawsuits were caused by John Taylor and others, not Miesen. A review of the lawsuits demonstrates that that most all of them were caused by John Taylor and/or other Individual Defendants. (8/18/22 Bond Decl. ¶¶50(a)-(k).)

### b. *The Remaining Defendants' Indemnity Arguments Are Irrelevant and They Will Not Be Entitled to Any Indemnity.*

The Individual Defendants and CropUSA Defendants argue that they are entitled to indemnity under I.C. § 30-29-852. For that reason, they argue that Miesen should not be awarded fees and costs. They have the cart ahead of the horse. They have not prevailed on this entire proceeding, which is required to trigger any potential indemnification. Notably, the Individual Defendants and CropUSA Defendants (once again joined by the conflicted counsel[5] for the AIA Entities) submitted their additional briefing to this Court[6] wherein they never bothered to address their liability under I.C. § 30-29-305 or Idaho common law as to violations of bylaws (the cases do not hold that a shareholder must sue derivatively*). (Dkt. 1239.) *Kemmer v. Newman*, 161 Idaho 463, 466, 387 P.3d 131, 134 (2016) ("Actions taken in violation of a corporation's bylaws are void."). Notably, Judge Dale perceived Miesen's direct statutory claims as being alternative

---

[5] The AIA Entities should be joining Miesen to assert claims and they should assume the derivative claims, rather than allow them to be dismissed.

[6] They also mischaracterized Miesen's testimony regarding direct and derivative claims. Miesen has always made it clear that he is pursuing direct and derivative claims.

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 15

**18-ER-4422**

claims:

> At this stage, the Court construes Miesen's claim under I.C. § 30-29-304 as an alternative cause of action to his breach of fiduciary duty and fraud claims. Because the ultimate fate of Miesen's breach of fiduciary duty and fraud claims is uncertain, determining whether Miesen can set forth a claim pursuant to I.C. § 30-29-304 is not yet ripe for the Court's consideration.

(Dkt. 210 at 31.) Moreover, Judge Dale correctly determined the basis for Miesen's direct statutory claims under I.C. § 30-29-304 when she noted:

> The proposed third amended complaint cites two statutes, I.C. § 30-29-304, and its predecessor I.C. § 30-1-304 (repealed). The statutes are nearly identical; as such, the Court will refer to the new statute only, I.C. § 30-29-304, which provides in relevant part:
>> (1) Except as provided in subsection (2) of this section, the validity of corporate action may not be challenged on the ground that the corporation lacks or lacked power to act.
>> (2) A corporation's power to act may be challenged:
>>> (a) In a proceeding by a shareholder against the corporation to enjoin the act;
>>> \*\*\*\*
>> (3) In a shareholder's proceeding under subsection (2)(a) of this section to enjoin an unauthorized corporate act, the court may enjoin or set aside the act, if equitable and if all affected persons are parties to the proceeding, and may award damages for loss, other than anticipated profits, suffered by the corporation or another party because of enjoining the unauthorized act.

(Dkt. 210 at 31 n. 17.) The Individual Defendants, AIA Entities and CropUSA Entities do not allege that they did not violate AIA Services' articles and the AIA Entities bylaws, i.e., allege that they did not commit ultra vires acts, and they did not submit any evidence to prove otherwise—because no such evidence exists. (Dkt. 1239.) Miesen will be addressing those matters and others in due course when his briefing is submitted as to the status of the remaining claims.

**10.   Miesen Respectfully Requests Oral Argument.**

Miesen respectfully requests oral argument. L. Civ. R. 7.1(d).

///

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 16

## IV.    CONCLUSION

For the reasons stated above, this Court should grant Miesen's motion to approve the payment of attorneys' fees and costs.

DATED:  This 18th day of August 2022.

RODERICK BOND LAW OFFICE, PLLC

By:    /s/ Roderick C. Bond
Roderick C. Bond
Attorney for the Plaintiff Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:    /s/ Andrew Schwam
Andrew Schwam
Attorney for the Plaintiff Dale L. Miesen

MEMO ISO MOTION FOR ATTORNEYS' FEES AND COSTS - 17

**18-ER-4424**

18-ER-4425

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of August 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:    jat@elamburke.com
Loren C. Ipsen:    lci@elamburke.com
Joyce A. Hemmer:    jah@elamburke.com
Bradley S. Keller:    bkeller@byrneskeller.com
Alyson A. Foster:    alyson@dempseyfoster.com
Tyler S. Waite:    twaite@campbell-bissell.com
Michael S. Bissell:    mbissell@campbell-bissell.com
Daniel L. Glynn:    dglynn@idalaw.com
Andrew Schwam:    amschwam@turbonet.com
Kim J Trout:    ktrout@trout-law.com


                              /s/ Roderick C. Bond
                              Roderick C. Bond

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>**v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>DECLARATION OF RODERICK C. BOND |

DECLARATION OF RODERICK C. BOND - 1

**18-ER-4426**

Case 1:10-cv-00404-DCN-CWD   Document 1242-2   Filed 08/18/22   Page 2 of 41

**18-ER-4427**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

                Defendants/Third-Party Plaintiffs,

    **v.**

REED TAYLOR, an individual,

                Third-Party Defendant.

REED TAYLOR, an individual,

                Third-Party Defendant/ Counterclaimant,

    **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

                Counterdefendants.

DECLARATION OF RODERICK C. BOND - 2

18-ER-4428

I, Roderick C. Bond, declare:

1.      I am one of the attorneys for the Plaintiff Dale L. Miesen in this lawsuit. I am a citizen of the United States, over the age of eighteen, and competent to testify in court, including as to matters in this Declaration. This Declaration is based upon my personal knowledge. The below testimony also involves my opinions regarding various matters. I am not addressing or waiving privilege or protections under the work product doctrine by providing my testimony in this Declaration. I apologize to the Court again for the length of this declaration, but the circumstances of this complex case require it.

2.      To the extent that I testify below regarding any settlement offers or settlements in this declaration, I am doing so for rebuttal purposes of showing the defendants' bias, establishing their lack of credibility, and to overcome any potential prejudice created by their arguments and testimony submitted in response to our withdrawn motion for fees and costs (we are assuming that the same or similar arguments will be renewed). *See Bankcard Am., Inc. v. Universal Bancard Sys.*, Inc., 203 F.3d 477, 484 (7th Cir. 2000) (collecting cases on certain exceptions to Rule 408). The defendants have falsely attacked Miesen and me on issues pertaining to other lawsuits and their outcomes.

3.      In this declaration, I will use the following definitions: (a) "Miesen" means the Plaintiff Dale L. Miesen and, to the extent addressing matters relating to the request for fees and costs, "Miesen" includes my law firm (Roderick Bond Law Office, PLLC), me and Andrew Schwam and his law firm; (b) "Individual Defendants" means the defendants John Taylor, James Beck, Michael Cashman, Sr., and Connie Taylor Henderson; (c) "AIA Entities" means the defendants AIA Services Corporation and AIA Insurance, Inc.; and (d) "CropUSA Defendants" means the defendants CropUSA Insurance Agency, Inc. and CropUSA Insurance Services, LLC.

DECLARATION OF RODERICK C. BOND - 3

**Testimony Regarding the Request for Attorneys' Fees and Costs**.

4.      No shareholders objected to me or filed any objections to Miesen's motion to approve the payment of fees and costs. Therefore, we did not provide a new notice to the required recipients about withdrawing and resubmitting Miesen's motion. Mr. Schwam's declaration notes that two persons spoke with Mr. Schwam and that they both stated that we should be paid. Certain other shareholders that I have communicated with also believe that we should be paid.  I am also submitting this Declaration in support of Mr. Schwam's 5% contingent fee request.

**Factors for the Court to Consider Under I.R.C.P. 54(e)(3) for the Amount of Fees**

5.      Since Idaho law applies to Miesen's motion to approve fees, I will address the factors under Rule 54(e)(3) in the following paragraphs (which happen to also be some of the federal factors as well). I would note that information provided in certain of the following paragraphs applies to other factors. Rather than repeat them, I will simply incorporate them by reference into one another. I apologize to the Court for any inconvenience.

**(A)  The Time and Labor Required**

6.      I have provided legal services for all aspects of this case. I first appeared as Donna Taylor's counsel in this lawsuit on March 18, 2012. I subsequently also appeared as counsel for Miesen on March 23, 2016 (after the Ninth Circuit reversed the stay order). I jointly represented Miesen and Donna Taylor from March 23, 2016 until she was voluntarily dismissed through Judge Dale's order on October 31, 2016. Donna Taylor was voluntarily dismissed after the defendants filed non-oppositions to a motion to amend to add additional defendants and then the defendants promptly filed a motion to dismiss alleging that diversity had been destroyed. That action is what led to Judge Dale's order stating that they had made "misleading representations" through their actions. (*See* Dkt. 178 at 3 n. 2.) In any event, I was the sole counsel on this lawsuit (other than

DECLARATION OF RODERICK C. BOND - 4

some assistance that I received on the appeal from John Guin, but I prepared the briefing and record) until Mr. Schwam joined me as co-counsel for Miesen last year. I remain co-counsel for Miesen to this day.

7.     Shortly after appearing as counsel for Donna Taylor, she unsuccessfully moved to lift the stay in this lawsuit in 2012, which was denied by Judge Boyle. Donna Taylor appealed to the Ninth Circuit Court of Appeals.  On that appeal, the Hawley Troxell Defendants prepared all of the briefing for the respondents (the other respondents simply joined in the Hawley Troxell Defendants' briefing). The Ninth Circuit reversed, and the stay was ultimately lifted in 2016. Notably, during that appeal, none of the defendants argued to affirm on the alternative grounds that the lawsuit should be dismissed because the derivative demands were not adequate. I incurred unreimbursed expenses and many hours of work seeking to lift the stay in this lawsuit before the trial court and on appeal, which was ultimately successful. (*See* Dkts. 62-121.) I was not paid by Donna Taylor for this work. None of the costs that I am seeking below were incurred during the time that I was representing only Donna Taylor in this lawsuit until she was voluntarily dismissed without prejudice. However, if the stay had not been lifted, there would have never been the $1.4 million settlement with the Hawley Troxell Defendants.

8.     This lawsuit has consumed an extraordinary amount of my time and labor. I have worked thousands of hours in this lawsuit preparing court filings, responding to discovery, preparing discovery, preparing for and attending depositions, conducting legal research (I have created over 490 folders with authorities addressing various issues or potential issues for the case), speaking with Miesen on countless telephone calls, working on expert related matters (both as to Miesen's experts and the experts for the Hawley Troxell Defendants), locating documents online from other lawsuits that one or more of the defendants were parties to obtain information such as

DECLARATION OF RODERICK C. BOND - 5

documents which were improperly being withheld in discovery (e.g., the waiver of privilege letter that John Taylor signed which was filed in another lawsuit that GemCap filed against a different law firm that has previously represented the AIA Entities, CropUSA Defendants, John Taylor and certain of his entities), working on other case-related matters (as further evidenced by the immense size of the docket) and working on settlement offers. In fact, there are over 1,200 separate dockets filed in this lawsuit, which are comprised of a total of almost 3,000 total documents after including the sub-docket numbers (e.g., the exhibits to declarations and motions, etc.). (*See* Dkts. 1-1236.) Indeed, I have never been involved in a lawsuit in which matters were so vehemently opposed by the defendants and I have never been involved in a lawsuit with over 1,200 dockets (nor anywhere near 1,200 dockets). I have reviewed every one of those dockets, provided the dockets to Miesen, discussed many of the dockets with Miesen on phone calls or in person. As further evidenced by the docket entries, the Hawley Troxell Defendants also filed many motions that were joined by other defendants and thus more work was caused by the prosecution of Miesen's claims against the Hawley Troxell Defendants

9. I diligently worked very hard for Miesen, irrespective of the fact that I was being paid on a contingent fee basis. In other words, I did not decline to perform work because I was not being paid. To the contrary, as evidenced by the over 1,200 dockets filed in this lawsuit, I worked very hard for Miesen and to seek justice for him (which would in turn benefit the AIA Entities and their innocent shareholders). I felt extremely sorry for Miesen and other shareholders, and I worked very hard for Miesen without any time restrictions to prosecute his claims in order to obtain a recovery for them. Although I was representing both Miesen and previously Donna Taylor solely on a contingent fee basis, I never let that get in the way of always doing as much work as I thought was needed (as directed by Miesen) and, in some instance, I simply did not have enough time on

DECLARATION OF RODERICK C. BOND - 6

certain occasions. Some weeks, I was forced to work over 18 hours per day. In some instances, I was forced to work all day and all night, e.g., over 24 hours at one sitting.

10.    The time and labor required has also been increased because the AIA Entities have never had independent counsel representing their interests. Instead, John Taylor (and presumably certain of the other Individual Defendants) have retained attorneys that they can control to look after their interests rather than the interests of the AIA Entities. The AIA Entities' counsel, rather than working with Miesen to make the AIA Entities whole, has simply taken positions against us at virtually all levels. For example, the AIA Entities, Individual Defendants and CropUSA Defendants Answers in this lawsuit deny countless undisputable factual allegations. In other instances, the Individual Defendants and CropUSA Defendants asserted positions in filings that were interposed solely to prevent Miesen from prevailing against the Hawley Troxell Defendants or delaying his recovery against them. In addition, rather than moving to assume Miesen's derivative claims (which the AIA Entities could do), they simply oppose Miesen by asserting his direct claims should also be dismissed. The same holds true in discovery as well. The AIA Entities would not provide the privileged and work product information generated by the Hawley Troxell Defendants and the would not assist Miesen in seeking to recover from the Hawley Troxell Defendants; rather, the AIA Entities have done nothing to assist Miesen (other than when John Taylor's counsel produced the unredacted billing records for the Hawley Troxell Defendants, which was done, in my opinion, solely for the Individual Defendants' self-interests).

11.    I have made myself available to Miesen for him to speak or meet with me at almost any time of the day or night. I have spoken with Miesen countless times on the phone and in person. In some instances, we have numerous lengthy phone calls in the same day. I have never limited my availability to Miesen, and he has been actively involved in this lawsuit. In fact, Miesen has

DECLARATION OF RODERICK C. BOND - 7

been more involved than any client that I have ever had. This has added more time to my plate, but I would rather prefer to have a client be involved.

12.     I did not keep billing records itemizing my time according to each group of defendants. While some of my time was tracked for matters relating to just certain defendants because the issue only involved them, a large amount of time was tracked for events and motions that may have involved one or more other groups of defendants. For example, I traveled to Clarkston, Washington and Boise, Idaho to review documents and arrange for them to be copied. I was looking for documents that could be used against any or all of the defendants and thus my time could not be billed as to a certain defendant or group of defendants. By way of another example, a damages spreadsheet was prepared to utilize for all defendants. That work could not be billed solely as to one defendant or group of defendants.

13.     While I did not log my time into a billing software because I had been retained on a contingent fee basis (I kept records of time, but not as I would normally do if billing a client monthly for my hourly work and I did not divide time every day among the groups of defendants), I previously estimated that I have worked over 3,100 hours on this lawsuit on matters directly or indirectly pertaining to the Hawley Troxell Defendants. As a result, I previously estimated that, based on the initial $340 hourly rate offered to Miesen in 2016, the hourly work value of my work exceeded $1,054,000. Since offering this testimony in the estimates in my prior declaration, I have confirmed that my estimates were low and that my hours in addressing matters related to the Hawley Troxell Defendants exceed 3,100 since the time that I first appeared as counsel on March 18, 2012. If asked by this Court, I would be able to create (put my entries into one spreadsheet, allocate time between groups of defendants, and redact detailed billing records to support the over 3,100 hours of time expended. However, to do so would take an extraordinary amount of time

DECLARATION OF RODERICK C. BOND - 8

because I was not allocating my time between groups of defendants when I was tracking the time for my work and some work also was applicable to other defendants. Notably, the Hawley Troxell Defendants took the laboring our on the first appeal in this lawsuit (the appeal in which the Ninth Circuit Court of Appeals reversed the stay in this lawsuit) and many motions since that time. Thus, Miesen and the AIA Entities would obtain a benefit if my firm were paid the 35% contingent fee of $490,000, rather than a fee based on the hours that I have worked.

14.     The Hawley Troxell Defendants requested detailed itemizations of Miesen's damages in this lawsuit. Based on there being hundreds of thousands of pages of documents and because documents were never entirely produced in any organized fashion, I was required to pay an independent contractor paralegal to assist me in finding and organizing the documents and related matters for Miesen's damage so that they were in a workable and more precise form for me and Miesen. As discussed in the costs matters below, I incurred over $60,000 in out-of-pocket costs to pay the paralegal and law clerks for the over 2,400 hours of work they performed for this complex case. If my firm were charging by the hour and I sought to recover payment of the 2,400 hours of work at the rate of $150 per hour, I would have charged over $360,000 for that work.

15.     The Hawley Troxell Defendants named three expert witnesses and produced three expert witness reports (they are the only defendants to disclose experts and produce reports). This resulted in a great deal of work reviewing and analyzing their reports, required Miesen to retain an accounting rebuttal expert, Larry Hile.

16.     In sum, this lawsuit has taken more time, labor and expense than any other lawsuit that I have ever been involved in. The above are just some of the examples. More examples of the time and labor required are evidenced in the following paragraphs. A $560,000 contingent fee is more than reasonable in light of the work performed on this lawsuit.

DECLARATION OF RODERICK C. BOND - 9

17.     According to my knowledge of the amounts depleted from the Hawley Troxell Defendants' insurance policy, I estimate that the Hawley Troxell Defendants have incurred and paid over $700,000 in fees in this lawsuit. Thus, Miesen's request of $560,000 is reasonable. In addition, if correct, I note that the Individual Defendants, CropUSA Defendants and AIA Entities have alleged, through John Taylor, to have incurred over $700,000 in fees defending this lawsuit, Dkt. 1223 at 9 (although Miesen does not believe the amount is accurate) when their work has been far less than the amount of work done us (especially me because Mr. Schwam only recently joined as co-counsel), as confirmed by the docket entries and volume of work in those docket entries and the fact that they have conducted little discovery or motion practice in this lawsuit (because they control the documents involving the claims in this lawsuit and their efforts were focused on preventing Miesen from obtaining the documents and information). However, even if those defendants had incurred only $250,000 in fees, it would fully support the reasonableness of the $560,000 requested by us, especially when they have relied primarily on the work performed by the Hawley Troxell Defendants' counsel.

**(B)  The Novelty and Difficulty of the Questions**

18.     This lawsuit against the Hawley Troxell Defendants has involved many novel and difficult questions, as evidenced in the numerous docket filings addressing those issues. For example, there have been many difficult and first impression issues related to: (a) the production of work product and privileged information; (b) appealing the lifting of a *Colorado River* stay to the Ninth Circuit; (c) the exclusion of an expert based on allegations of being an advocate and contingent fee expert witness (both contentions I continue to deny); (d) the adequacy and exception for derivative demand letters; (e) issues pertaining to the statute of limitations; (e) the appointment of a discovery master and having to essentially add one more level of legal work to address

DECLARATION OF RODERICK C. BOND - 10

objections to the discovery master's decision to Judge Dale and then appeal certain of those decision to this Court; (f) the assertion of advice of counsel defenses and the information that must be produced in connection with the advice of counsel defenses (this information was needed to find out what advice the Individual Defendants were relying on from the Hawley Troxell Defendants, which, in turn, would have provided the advice relative to any alleged malpractice and related claims that Miesen might assert against them; (g) the assertion of defenses based on the Hawley Troxell Defendants having allegedly received instructions from their alleged clients and related issues for their defenses and the production of information relating to those defenses; (h) matters relating to ultra vires, void and unauthorized transactions (including ones violating the articles and the bylaws); (i) the disgorgement of fees and costs under the Rules of Professional Conduct and other theories (including ultra vires and void acts for not complying with the articles and bylaws); (j) the duties owed by General Counsel (John Taylor testified that the Hawley Troxell Defendants had been General Counsel for the AIA Entities, while the Hawley Troxell Defendants denied it); and (k) the alleged failure to properly identify and address conflicts of interest among the alleged management (who were not properly elected or lawfully appointed as officers) and the failure to address conflicts, including as to transaction and litigation matters involving the Hawley Troxell Defendants, as required in the AIA Entities' bylaws and articles and applicable authorities.

**(C)   The Skill Requisite to Perform the Legal Service Properly and the Experience and Ability of the Attorney in the Particular Field of Law**

19.    I have been admitted to practice law in the state of Washington since 2002 and in the state of Idaho since 2009. Since the mid-2000s, I have focused my practice primarily on complex litigation and I have extensive experience in complex litigation, including legal malpractice actions. Over the years, I have favorably litigated complex multi-million-dollar cases, including legal malpractice actions. I have obtained multi-million-dollar settlements in legal

DECLARATION OF RODERICK C. BOND - 11

**18-ER-4436**

malpractice cases. I have obtained favorable summary judgment decisions and successfully avoided summary judgment in various complex lawsuits (though I have also lost on summary judgment and motions to dismiss).

20.     As a result of my earlier representation of Reed Taylor and Donna Taylor in other lawsuits and Miesen in another lawsuit involving the AIA Entities, I was well-versed with the general and many detailed facts as to the malfeasance and other improper acts that have transpired at the AIA Entities over the years. My involvement in litigation involving the AIA Entities began when I commenced representing Reed Taylor in 2006 for matters relating to the failure to pay a $6 million promissory note given to him for the redemption of his shares (discussed below) and tort claims relating to money being taken from the AIA Entities to fund other businesses, including CropUSA Insurance Agency. I also represented Miesen and other shareholders in two other related lawsuits involving the AIA Entities (My clients prevailed on one of the lawsuits and was awarded fees and costs for an illegal reverse stock split sought to eliminate Miesen's standing to sue in this lawsuit). In my opinion, I know more about what has occurred at the AIA Entities better than anyone other than John Taylor and, at depositions, John Taylor has even asked me questions about matters involving the AIA Entities.

21.     Like most attorneys, I have won and lost appeals (and, like most attorneys, I believe that I should not have lost some of my appeals). I was successful in appealing the following cases directly or indirectly involving AIA matters: (a) *Taylor v. Bell*, 340 P.3d 951 (Wash. Ct. App. 2014), review denied, 352 P.3d 188 (2015) (reversing the dismissal of a legal malpractice action); (b) *Taylor v. Hawley Troxell Ennis & Hawley, LLP*, 628 Fed.Appx. 490 (9th Cir. 2015) (revering Judge Boyle's *Colorado River* stay of this lawsuit); (c) *Taylor v. Taylor*, 163 Idaho 910, 422 P.3d 1116 (2018) (reversing in part by holding that Donna Taylor's ultra vires agreement was

DECLARATION OF RODERICK C. BOND - 12

enforceable under the circumstances, the economic loss rule does not bar her fraud claim, and awarding attorneys' fees and costs to Donna).  My representation of Reed and Donna Taylor in the above matters and others has provided with me a wealth of information and knowledge regarding the malfeasance and activities at the AIA Entities and CropUSA Defendants, among other persons and entities.

22.    In sum, my vast experience dealing with matters involving the AIA Entities and high stakes legal malpractice cases provided me with significant additional knowledge and skills to assist Miesen in this lawsuit, which would have cost him significantly more money to obtain (if he could have obtained it since some information has been destroyed by AIA) from a different attorney. In addition, when this Court approved the Settlement Agreement, it found that we adequately represented the interests of the AIA Entities and Securities Holders in connection with the Settlement Agreement.

**(D)  The Prevailing Charges for Like Work**

23.    Based on my knowledge and experience, a contingent fee of between 33% to 40% is reasonable fee for legal malpractice actions in Ada County, Idaho. It is also reasonable to require reimbursement of all out-of-pocket costs advanced or incurred for a lawsuit in Ada County, Idaho and to charge interest on any sums owed. However, when the contingent fee case requires the attorney to advance significant costs for an indigent client, it is common and appropriate to charge 40% or even as high as a 50% contingent fee. In this case, I agreed to represent Miesen (who is could not afford the large costs required in this lawsuit) on a contingent fee basis for 40% of the gross of any recoveries. My firm's share was reduced to 35% after Mr. Schwam agreed to act as co-counsel for 5% (we ensured that adding another attorney did not cost Miesen any more money). Since Miesen could not afford the costs and my firm had to advance the costs without the

DECLARATION OF RODERICK C. BOND - 13

likelihood of being paid back absent a recovery, the 40% contingent fee was even more appropriate and warranted.

24.     In my experience, legal malpractice cases are generally contingent fee. This is because it is common knowledge that legal malpractice cases are very difficult, hotly disputed, time consuming, and clients generally do not want to bear the risk of paying by the hour. In fact, I have never taken a legal malpractice case for less than 33.3% of the recovery and most all of my legal malpractice cases in Idaho (including Ada County) and Washington have been based on a 40% contingent fee and the full reimbursement of costs.  In fact, I have never handled legal malpractice cases on an hourly basis. I have previously handled a contingent fee case for a legal malpractice case in Ada County, Idaho. In that lawsuit, the client was charged, and we received, as 40% contingent fee (which was shared with another law firm, just as requested by Miesen here). The settlement was a multi-million-dollar settlement, and the full 40% contingent fee was paid. I was also reimbursed for all of the costs, expenses and other out-of-pocket expenditures incurred on the lawsuit for which I requested to be reimbursed (I generally do not charge clients for small expenditures).

25.     My hourly rate offered to Miesen in 2016, which he declined, was $340 per hour as discussed above. If Miesen had retained me by my hourly rate, I would have charged him $340 per hour and I would have increased that rate over time to not less than $370 per hour over the six years since the time that I became his counsel. That hourly rate is in the range of reasonable rates charged by attorneys in the Boise area. For example, several months ago, I was aware that Wyatt Johnson, a Boise attorney, charged $375 per hour for his services. Mr. Johnson's paralegals charge $175 per hour.  Mr. Lombardi, the Discovery Master in this lawsuit, charged $300 per hour for his services in 2018 and 2019.  This Court has also recently found hourly rates of $340-350 to be

DECLARATION OF RODERICK C. BOND - 14

reasonable. *SBP LLLP v. Hoffman Constr. Co. of Am.*, Case No. 1:19-cv-00266-DCN, 2022 WL 1166431, at *2 (D. Idaho Apr. 19, 2022). In contingent fee cases, this Court has also approved effective hourly rates of $608.74 and $1,821.39. *Gary W. v. Kijakazi*, Case No. 1:21-cv-00003-CWD, 2021 WL 6063668, at *2 (D. Idaho Dec. 22, 2021). In this lawsuit, based on the over 3,100 hours that I have worked, the effective rate of a 35% contingent fee recovery for my firm would be over a 50% discount to my hourly rate, i.e., my effective rate would be approximately $158 per hour.

**(E)  Whether the Fee is Fixed or Contingent**

26.     The terms of Miesen's representation were contingent on the outcome of the litigation. Under the terms of my firm's written fee agreement with Miesen, he agreed, among other things, that: (a) my firm would be compensated on a 40% contingent fee of all gross recoveries in this lawsuit; (b) my firm would be reimbursed for all costs and expenses incurred and/or advanced in this lawsuit; (c) my firm would be entitled to receive interest of 12% per annum on all costs and expenses advance for this lawsuit; and (d) he declined to retain my firm by paying $340 per hour for my time based on an hourly rate fee agreement. Miesen was aware that when he retained my firm that I was a solo-practitioner and that this lawsuit would be a financial burden on me and my firm, which is another reason he agreed to pay me a 40% contingent fee, reimburse me for all costs and expenses, and pay me 12% interest on all costs and expenses advanced or incurred by my firm in this lawsuit. Based on the required time and complexity of legal malpractice actions, generally, my firm never accepts a contingent fee legal malpractice case for less than 40% of the gross recoveries. My firm always requires the reimbursement of all costs and expenses incurred and/or advanced for the lawsuit. My firm utilized these same terms for the representation of Miesen in this lawsuit as discussed above. Effective June 4, 2021, Miesen, Mr. Schwam and I agreed,

DECLARATION OF RODERICK C. BOND - 15

among other things, that Miesen would be jointly represented by Mr. Schwam's firm and my firm under the following terms pertaining to the Hawley Troxell Defendants: (a) my firm would agree to lower my contingent fee to 35% of any gross recoveries; (b) Mr. Schwam's firm would receive 5% of any gross recoveries or 10% if the recovery came after trial; (c) we would be entitled to reimbursement for all costs and expenses incurred in this lawsuit; and (d) my firm would be entitled to the payment of 12% interest on any costs and expenses advanced. In other words, the terms of the contingent fee arrangement did not change as relevant to this settlement; rather, the percentage of the contingent fee were simply allocated differently among Mr. Schwam's firm and my firm, with Miesen obtaining the benefit of having another attorney on the case. In addition, I addressed related issues relating to this factor in the preceding section.

27.     Both Miesen and the AIA Entities received a better deal because the contingent fees requested are almost 50% less than what would have been charged had the fees been paid by the hour.

**(F)  The Time Limitations Imposed by the Client or the Circumstances of the Case**

28.     Because I was working on a contingent fee basis, there was no time restrictions placed on my work. In other words, Miesen got the full benefit of the 40% contingent fee because that fee would be far less than the amount of money had I billed him by the hour (approximately 50% less as discussed above). This also benefits the AIA Entities because it lowers the amount to be paid out of the $1,400,000 settlement.

29.     As described elsewhere in this Declaration, the circumstances of this case dictated that I was forced to perform a great deal of legal work, which did not increase the 40% that Mr. Schwam and I are requesting.

DECLARATION OF RODERICK C. BOND - 16

**18-ER-4441**

18-ER-4442

30.     The AIA Entities and the Individual Defendants have never offered to assume control of Miesen's derivative claims against the Hawley Troxell Defendants, assist Miesen financially in prosecuting his claims against the Hawley Troxell Defendants or otherwise assist Miesen in prosecuting his claims against the Hawley Troxell Defendants (other than voluntarily producing the unredacted billing records for the Hawley Troxell Defendants, presumably for their own self-interests). In addition, at no time since this lawsuit has been pending have the Individual Defendants ensured that the boards of directors for the AIA Entities were lawfully elected, fully seated with all required directors (e.g., Donna Taylor's board designee as required by the articles) and operated in an independent manner. Indeed, despite demands from Miesen and other shareholders, AIA Services has not even bothered to have a shareholder meeting since 2012 nor have the AIA Entities properly elected and fully seated their boards of directors (including the director required to be appointed by Donna Taylor as required for the Series A Preferred Shares under AIA Services' amended articles of incorporation).

**(G)  The Amount Involved and the Results Obtained**

31.     On May 2, 2022, Miesen executed a written settlement agreement with the Hawley Troxell Defendants.  A true and correct copy of the Settlement Agreement and Mutual Release, together with the attached exhibits, is attached as ***Exhibit A*** (collectively "Settlement Agreement"). The prior versions of the Settlement Agreement filed with this Court inadvertently failed to contain Mr. Keller's signature. Exhibit A has Mr. Keller's signature affixed. Based on the complexity and difficulty of this lawsuit, the $1,400,000 settlement with the Hawley Troxell Defendants was a good result. In addition, Miesen obtained a release from the Hawley Troxell Defendants to ensure that the AIA Entities were released from any claims for unpaid fees and costs.

DECLARATION OF RODERICK C. BOND - 17

18-ER-4443

32.     Attached as *__Exhibit B__* is a true and correct copy of AIA Services Corporation and Subsidiary Consolidated Financial Statements dated December 31, 2021, and December 31, 2020. These financial statements were provided after my declaration filed in connection with the approval of the Settlement Agreement (those were the financial statements dated December 31, 2020, and December 31, 2019). As I previously predicted in my declaration submitted with the motion to approve the settlement, according to Exhibit B, the AIA Entities financial condition has continued to deteriorate. For example, Exhibit B now shows that the AIA Entities only had $552 in cash and a negative net worth of ($624,956) as of December 31, 2021 (assuming those statements are true). Based on these financial statements alone, the AIA Entities have obtained a substantial benefit through the $1,400,000 settlement.

33.     While Miesen's claims potentially involved many millions of dollars in possible damages (some of which were alternative theories or damages), this lawsuit was always a difficult one, especially based on the lack of cooperation from the AIA Entities, and obtaining a $1,400,000 settlement was a good result because there is always a risk of losing at or before trial and the settlement represents an amount exceeding the total fees and costs paid to the Hawley Troxell Defendants for their work from 2001 until their work apparently ceased in 2012.

34.     In my experience in legal malpractice cases, anytime a client can obtain a seven-figure settlement is a good result because the insurance companies prefer not to pay settlements and the defendants tend to want to fight rather than put pressure on their carrier to settle. In this case, Miesen was able to settle for $1,400,000 after Professor McDermott had been excluded as an expert, which was substantially more than the Hawley Troxell Defendants had previously offered to settle this lawsuit.

DECLARATION OF RODERICK C. BOND - 18

35.     The language in the Settlement Agreement stating that the Hawley Troxell Defendants admitted no liability and were allegedly "buying their peace" does not mean that Miesen was not a prevailing party or that he did not obtain a substantial benefit for the AIA Entities. In my experience, attorneys and most defendants never admit to any liability and routinely require similar language in settlements. The $1,400,000 settlement speaks for itself and constitutes a good result.

36.     The defendants essentially argue that all of the litigation that I have been involved in that directly or indirectly involves the AIA Entities has been frivolous and without merit (I briefly address the alleged lawsuits and some other ones below to prove that they are wrong and simply mischaracterizing them).

37.     The defendants previously raised arguments that the $1,400,000 is only a fraction of the damages Miesen requested, but they mischaracterize Miesen's damages calculations (as they do for many issues). The bottom line is that the $1.4 million settlement results in all of the funds previously paid by the AIA Entities to Hawley Troxell being refunded (plus more) and releases the AIA Entities from any claims regarding fees and costs that were owed.

**(H) The Undesirability of the Case**

38.     This lawsuit was very undesirable for my firm and frankly to any attorney, especially in light of the fact that my firm was advancing costs knowing that Miesen could not afford them on his own and based on the Individual Defendants' track record of thwarting settlement and discovery. I have carried clients in the past, but I have always expected to be reimbursed for all of my out-of-pocket costs from the recovery.

39.     By undertaking the representation of Miesen in this complex lawsuit with facts spanning decades of time and I was forced to turn away a significant amount of work for which I

DECLARATION OF RODERICK C. BOND - 19

18-ER-4445

could have been paid on an hourly basis. At the same time, I was incurring hundreds of thousands of dollars in costs for the benefit of Miesen's claims, which was a huge burden on my law firm (as discussed in more detail in the costs below).

**(I)  The Nature and Length of the Professional Relationship with the Client**

40.     Prior to me representing Miesen in this lawsuit, I successfully represented Miesen in another lawsuit. For example, my firm previously represented Miesen in 2012-2013 when John Taylor and certain of the other Individual Defendants had AIA Services file suit against Miesen and other shareholders seeking to eliminate them as shareholders for ten cents per share through a reverse stock split that violated AIA Services' amended articles of incorporation and its bylaws. (See the discussion of *AIA Services v. Durant* below) We prevailed on that lawsuit (*see, e.g.,* Dkt. 86-1) and Miesen and the other shareholders were awarded attorneys' fees and costs by Judge Kerrick. In sum, I had an established relationship with Miesen before I commenced representing him in this lawsuit.

**(J)  Awards in Similar Cases**

41.     Unless I have voluntarily taken a reduced fee (which I do to assist clients from time to time), every successful legal malpractice case that I have taken has resulted in a fee award of between 33% and 40% of the total recovery and a full reimbursement of my costs.  As discussed elsewhere, I have obtained 40% contingent fees and the full reimbursement of all costs in another legal malpractice action in Ada County, Idaho. When an attorney also agrees to advance the costs and there is no prospect of getting reimbursed for advanced costs if the case is not successful, a fee of 40% or higher is warranted and appropriate. Here, Miesen's fee is 40% of the gross recoveries. I have also collected 40% contingent fees in other legal malpractice related cases.

DECLARATION OF RODERICK C. BOND - 20

**(K) The Reasonable Cost of Automated Legal Research**

42.     My firm has incurred significant Westlaw charges over the entire time of this lawsuit since I first appeared as counsel in 2012. I have spent countless hours researching issues relating to this lawsuit and I have over 490 separate file folders for legal research conducted on Westlaw which contain cases, treatises, statutes and other research materials located on Westlaw for this lawsuit. It would not have been possible to properly represent Miesen in this lawsuit without having and utilizing Westlaw to find authorities to support Miesen's positions in motions and for other matters (which provides me access to all state and federal cases, most treatises, law review articles and many other research materials). My firm has allocated the cheap and more than reasonable sum of $12,000 for the Westlaw charges incurred since 2012. While my firm is not requesting the $12,000 as costs unless the Court declines to award certain costs in Exhibit C, I am requesting that this Court consider this factor when determining to award fees and costs so long as the maximum $935,327.96 in fees and costs is not exceeded.

**(L)  Other Factors Which the Court May Deem Appropriate**

43.     Miesen cannot afford to pay the costs that my firm has incurred in this lawsuit, but that does not mean that I should not recover them from the settlement fund. My firm has incurred over $400,000 in costs and related expenses effectively pursuing the Hawley Troxell Defendants. It would be unfair to allow the AIA Entities to retain the $1.4 million without fair compensation to my firm for the costs and time expended in achieving the recovery. This is particularly true because the AIA Entities worked against Miesen's efforts to obtain the recovery.

44.     Based on the allegations against the Hawley Troxell Defendants, I have not understood why Mr. Trout or his predecessors, as counsel for the AIA Entities and not their management, did not assist Miesen in seeking to make the AIA Entities whole. We should not be

DECLARATION OF RODERICK C. BOND - 21

18-ER-4447

prejudiced or harmed by this conduct. If the AIA Entities truly had independent counsel and if the Individual Defendants had not consistently sought to thwart Miesen from obtaining a recovery against the Hawley Troxell Defendants, in my opinion, we could have obtained a larger settlement, and much quicker, from the Hawley Troxell Defendants.

45.     As discussed above, awards in similar cases of a 40% contingent fee are common (especially when advancing hundreds of thousands of dollars in costs) and reasonable for a case filed in Ada County, Idaho. In this lawsuit, my 35% contingent fee (plus Mr. Schwam's 5% fee) is a discount from what my hourly fee would have been. Also, my firm has not requested full reimbursement of all the costs incurred in this lawsuit as discussed below.

46.     As discussed in more detail below, my firm agreed to seek and accept substantially less costs in order to assist Miesen in reaching a settlement with the Hawley Troxell Defendants. In light of my loss regarding costs, it is only fair that I receive my full 35% contingent fee.

47.     I have spoken with other shareholders who are hoping for a recovery who have expressed their desire that my firm get paid. No shareholders objected to my firm's fee and cost request, except for John Taylor.

48.     This lawsuit has dragged on because of efforts by the defendants to delay justice. The case was stayed at the request of the defendants for over five years (until I was able to secure a reversal from the Ninth Circuit Court of Appeals). The delays have resulted in additional work for me and additional costs. In sum, for the reasons stated above, this Court should consider the additional information contained in all of the preceding paragraphs and the applicable ones below to approve the payment of the full 40% contingent fee.

DECLARATION OF RODERICK C. BOND - 22

**18-ER-4447**

**Testimony Regarding the Costs Requested**

49.    During my firm's representation of Miesen in this lawsuit, my firm has incurred over $400,000 in costs and expenses.  Attached as **_Exhibit C_** is a true and correct copy of certain costs and expenses that my firm is requesting reimbursement from the $1,400,000 settlement payment. Exhibit C constitutes a cost bill. As indicated above, Miesen requested, and my firm agreed, to reduce my requested costs to the $375,327.96 costs indicated in Exhibit C. Please note that this Exhibit C has been revised downward to reflect that a portion of Mr. Lombardi's fees are now being paid directly by the Court. In addition to those costs, I will address certain other costs and expenses incurred in this lawsuit below, which provide additional support for the payment of the $375,327.96 in requested reimbursements. If this Court finds that any costs or expenses listed in Exhibit C are not reimbursable for any reason (I tried to limit the items in Exhibit C to the most obvious reimbursable costs), I am respectfully requesting the Court to substitute other matters addressed in the sub-paragraphs below in order to be paid the $375,327.96 in costs and expenses for which reimbursement is requested. The following subparagraphs address the Item Numbers in Exhibit C and additional items not listed in Exhibit C:

a.    Item Numbers 1, 3-4, 11, 13-14, 23 in Exhibit C were sums incurred by my firm for data hosting and e-discovery with Cicayda. As discussed above, this lawsuit involved hundreds of thousands of pages of documents in discovery and some form of e-discovery was required to review and search documents, especially for specific items. However, based on the cost of e-discovery services, my firm subsequently purchased software to perform e-discovery in-house to save money. I am not seeking reimbursement for the cost of the software (although I used it exclusively for this lawsuit).

DECLARATION OF RODERICK C. BOND - 23

**b.** Item Numbers 2, 6, 12, 16, 19-20, 26, 28-30, 32, 38, 43, 47, 49, and 53 in Exhibit C were sums incurred by my firm for Miesen's legal malpractice and corporate law expert witness, Professor Richard McDermott. McDermott's testimony and expert work was required because legal malpractice and breach of fiduciary duty claims against attorneys generally require expert testimony. Because the settlement amount of $1,400,000 was reached through the mediation that occurred in the Ninth Circuit for the failed appeal of the exclusion of McDermott, the settlement was obtained in part by the assistance of McDermott. Based on my direct knowledge of McDermott's extensive work, the amount of the fees and costs incurred for his work is reasonable and was warranted for Miesen's claims. His work involving the other defendants was indirectly related to Miesen's claims against the Hawley Troxell Defendants and I would not have hired a separate expert to offer opinions as to the other defendants. The total amount charged by Mr. McDermott was less than the amounts charged by HTEH's two experts, Messrs. Remele and Lidstone (McDermott addressed all legal malpractice and related matters). McDermott did not charge any further sums after his deposition taken prior to being excluded as an expert or after the Hawley Troxell Defendants filed their motion to exclude him. In addition, the $1.4 million offered by the Hawley Troxell Defendants was the most that they had ever offered to settle over the course of this lawsuit (which was after McDermott had been excluded). In other words, the Hawley Troxell Defendants paid more after McDermott was excluded as an expert. Judge Dale and Judge Nye had previously cited to his declarations with approval. (Dkts. 210, 408.) In sum, in my opinion, the issue of Miesen appealing the exclusion of McDermott and the risks associated with that appeal resulted in the Hawley Troxell Defendants offering to pay the $1.4 million. It would be unfair if I did not recover

DECLARATION OF RODERICK C. BOND - 24

the amounts incurred by employing McDermott. I respectfully request that the Court do so.

**c.** Item Numbers 5, 7-8, 10, 17-18, 21-22, 27, 35-37, 40-41, 44-45, 48, 50-51 in Exhibit C were sums incurred by my firm for court reporters for deposition appearances, deposition transcripts, hearing transcripts, oral argument transcript, deposition exhibit fees, deposition videographer fees, trial transcripts and related matters. The descriptions under each Item Number provides additional support for the cost and they were all reasonably necessary for the prosecution of Miesen's claims, which all directly or indirectly involved the Hawley Troxell Defendants based on the facts of this case and the underlying cases which they provided representation to the AIA Entities and CropUSA Insurance Agency, Inc. Those depositions were reasonably necessary and relevant to Miesen's claims against the Hawley Troxell Defendants, and the costs are consistent with the reasonable charges for court reporters and videographers in the locations where the depositions were taken.

**d.** Item Numbers 9, 15, and 31 in Exhibit C were sums incurred by my firm advancing costs for Miesen to pay the Discovery Master, Mr. Lombardi. Although my law firm was not liable for paying the Discovery Master, I nevertheless had my firm advance the payments in Item Numbers 9, 15, and 31.  Item Number 54 represents the $23,459.53 owed to the Discovery Master by Miesen, which was included in the Court's approval order and will be paid by the Court. Thus, I have removed the $23,459.53 entry in Exhibit C. Notably, the Discovery Master was not requested by Miesen. Thus, these costs were reasonably incurred by Miesen at the direction of the Court. The discovery master's billings were directly or indirectly related to much of the work prosecuting the claims against the Hawley Troxell Defendants.

DECLARATION OF RODERICK C. BOND - 25

**e.**      Item Number 24 in Exhibit C was a sum reasonably incurred by my firm for Miesen for his share of the mediation fee in 2019. While Mr. Piazza was more expensive than local mediators, I had previously used his services to successfully resolve another complex case with the same insurer, and Miesen was concerned that an out-of-town mediator was required under the circumstances. While that mediation was not successful, a mediation was required by the Court to be conducted.

**f.**      Item Numbers 25, 34, 39, and 46 in Exhibit C were sums incurred by my firm for the scanning (including making the documents text searchable) and bates-stamping of documents produced in discovery, the production of certain documents by the Hawley Troxell Defendants, and the copying of certain deposition exhibits (the deposition contained many exhibits).

**g.**      Items Numbers 33, 42, and 52 were sums incurred by my firm for Miesen's damages expert, Larry Hile. Miesen retained Mr. Hile in response to the Hawley Troxell Defendants' disclosure of Mr. Pinkerton and his report as an expert witness. As a result, Miesen was forced to incur the sums for the services of Mr. Hile. In addition, the sums charged by Mr. Hile were less than the sums charged by Mr. Pinkerton. While Mr. Hile was excluded from providing opinions for Miesen's case-in-chief (Mr. Hile was timely disclosed as a rebuttal expert), he remained fully in play because his primary purpose was to rebut Mr. Pinkerton (which he did).

**h.**      If I failed to address any specific Item Numbers in Exhibit C above, the sums incurred in those Item Numbers were reasonably incurred for Miesen's case and the description provided in each Item Number provides additional information relating each cost or expense. I will now address certain costs and expenses not listed in Exhibit C, which

DECLARATION OF RODERICK C. BOND - 26

I am only listing to show the concessions made by my firm to assist Miesen in resolving his claims against the Hawley Troxell Defendants and to provide additional sums to meet the requested $375,327.96 in requested reimbursements (my firm agreed to limit its cost request to a total of $375,327.96 and write off the balance of costs incurred above that amount based on the understanding that we would recover those costs and be awarded my firm's 35% contingent fee). The total amount of those costs and expenses (and lost interest income) exceeds $189,000, which would not be the sole costs and expenses written off. Again, so long as this Court approves payment to my firm of the requested $375,327.96 in costs and expenses, my firm will write off the over $189,000 in costs and expenses discussed below. If the Court does not approve certain of the costs and expenses discussed above and contained in Exhibit C, I am respectfully requesting that the Court award the below costs sufficient to make up for any of the costs not awarded to reach the maximum amount of $375,327.96, which was the cap agreed to with Miesen.

     **i.**    My firm incurred over $60,000 in out-of-pocket costs to pay an independent contractor paralegal ($39,678 for paralegal work) to assist in organizing and assembling the documents necessary to itemize Miesen's damages as requested in discovery by the Hawley Troxell Defendants and for independent contractor law clerk work ($20,472.25 for law clerk work) and none of these individuals were my firm's regular employees. This paralegal work involved reviewing hundreds of thousands of pages of documents for locating and assembling internal accounting work papers for the AIA Entities and other damage items listed by Miesen. Because documents produced in discovery by the AIA Entities and related parties were never fully produced in an order and organized manner, it created a substantial amount of work for my firm for which I had no employees to assist

DECLARATION OF RODERICK C. BOND - 27

18-ER-4453

me. The law clerk work assisted me in legal research and related issues.

j.       My firm incurred costs and expenses related to travel for depositions, the mediation, court hearings (including discovery master hearings), document inspections, and related travel (including certain of Miesen's travel expenses for the lawsuit (including for him to attend depositions and other matters), travel expenses for conferences and travel expenses for expert work), including, without limitation: (i) over $14,000 incurred for air fare; (ii) over $20,000 in hotel charges (which includes some larger rooms to prepare deposition exhibits and other case matters, and to take depositions during COVID); (iii) over $4,000 in food, beverages and snacks; (iv) and over $1,000 incurred for taxis, Ubers, Lyft and car rental.  These costs and expenses were incurred for my travel to and from Boise, ID (numerous times), Chicago IL (two times), San Francisco CA, Los Angeles CA, Minneapolis MN, Lewiston ID (numerous times), and Clarkston WA, for work on the case. Because Miesen was indigent, my firm also incurred costs and expenses for certain of Miesen's air fare, hotel and automobile charges for travel to certain of the above cities from his residence in Texas because Miesen has been very actively involved in his lawsuit. These matters were all directly or indirectly related to the Hawley Troxell Defendants. With respect to depositions, I was forced on several occasions to rent larger rooms and bring a portable printer to print and assemble deposition exhibits and, in one instant, rent a separate suite to take depositions. The total of these travel costs and expenses exceeds $35,000 and was reasonably incurred for this lawsuit.

k.       My firm incurred over $3,000 for court and PACER fees. These fees were necessary for the prosecution of Miesen's claims and for discovery purposes. The PACER fees involved obtaining copies of documents filed in various cases around the country and

DECLARATION OF RODERICK C. BOND - 28

searching for the cases (John Taylor and/or entities that he controls have been involved in numerous related lawsuits through which we were able to obtain discovery relevant to this lawsuit).

l.       My firm incurred over $12,000 in Westlaw charges allocatable to the prosecution of Miesen's claims in this lawsuit. As this Court is aware, this lawsuit involved many issues of first impression and/or novel issues never addressed by Idaho courts and/or the Ninth Circuit, which required extensive research. In addition, the complexity of this lawsuit required extensive research as to hundreds of legal issues. These costs are much lower than my firm could have allocated to Miesen based on actual usage charges, but I reduced the amount significantly over the years.

m.      My firm incurred over $4,000 in copy costs and supplies for internal work solely for Miesen's case. These costs included binders, exhibit dividers for depositions, copy costs for copying deposition exhibits and related case documents, and other supplies reasonably incurred for the case.

n.       Miesen agreed to reimburse my firm for 12% interest on all costs and expenses incurred for this lawsuit. While I have not added up each interest item from the date the cost or expense was paid by my firm, I estimate that the amount of interest far exceeds $75,000. I would also note that my firm was forced to pay interest on certain of the amounts incurred which were paid through my firm's line-of-credit and that I personally had to pay-off my firm's line-of credit because my firm lacked the resources to pay off my firm's line-of-credit because of lost revenue associated with having to decline work because of the complexity and unknown work schedule for this trial because I am a solo-practitioner. Thus, in addition to not being paid the 12% interest by Miesen, my firm

DECLARATION OF RODERICK C. BOND - 29

actually incurred additional interest charges.

**o.** As part of the settlement with the Hawley Troxell Defendants, Miesen agreed to pay for the publication of the notice to shareholders in the Lewiston Tribune for two days of publication. The Lewiston Tribune charged my firm $387 to publish the notice (the estimate that I previously provided was erroneously high because I had inadvertently provided the longer notice for the estimate). As part of the settlement, my firm will also agree to write off the costs for the publication to the extent those payments and the over $125 incurred for postage to mail the notices to shareholders that exceed the requested $375,327.96 in reimbursement of costs and expenses from the Court.

**p.** To recap, my firm is requesting not more than $375,327.96 in costs to be reimbursed out of the above items. If this Court does not believe any cost or part of a cost should not be reimbursed, then I request for the Court to fill in that gap with some of the costs identified above which are not included in Exhibit C in order to reach the maximum $375,32.96.

**The Many Lawsuits Caused by One or More of the Individual Defendants**

50. The defendants have previously argued that Miesen's $1.4 million settlement with the Hawley Troxell Defendants provides no benefit to the AIA Entities because of certain lawsuits previously filed and that somehow other cases should be considered regarding the award of fees to Miesen. In order to establish the lack of merit as to those arguments and how they have no bearing on Miesen's request for fees and costs here, I will briefly address some of the lawsuits and a few of the other lawsuits that they have omitted—all of which can be traced back to the conduct of John Taylor and/or certain of the other Individual Defendants. John Taylor's allegations regarding me are incorrect. When I refer to "John Taylor" being the cause of certain lawsuits, I am

DECLARATION OF RODERICK C. BOND - 30

not intending to make him the exclusive person causing the lawsuit, but he has been directing litigation for years for the AIA Entities without adhering to proper corporate governance, let alone any corporate governance for most of the decisions.

> **a.** *Reed J. Taylor v. AIA Services Corp., et al.*, Nez Perce County District Court Case No.: CV-07-00208 ("*Reed Taylor v. AIA Services*"). Miesen was not a party to this lawsuit nor was he the cause of this lawsuit. Instead, in 2007, Reed Taylor filed suit against the AIA Entities, John Taylor, CropUSA, James Beck, Connie Taylor Henderson and others for the non-payment of a $6 million promissory note that was due on August 1, 2005. The note was issued in connection with the sale of Reed's majority ownership interest of AIA Services in 1995 at the request of John Taylor and others. Because the defendants had utilized the AIA Entities' funds and assets to fund other entities and pay other obligations, Reed's claims included ones for conversion (he had a security interest in all of the revenues), fraudulent conveyance and other contract and tort claims. (*See* Dkt. 82-2.) Reed also alleged that the articles and bylaws were not being complied with, among other malfeasance allegations. I was able to obtain a partial summary judgment on the default of the $6 million note (there was over $2 million in accrued interest owed). However, the defendants subsequently raised and prevailed on the illegality defense. Despite Reed Taylor's settlement offers (including one that required, among other things, full disclosure be given to AIA Services' shareholders and that they be given additional shares in CropUSA) John Taylor was never willing to make full disclosure or offer a reasonable settlement offer and the case was heavily litigated. Reed appealed and the Idaho Supreme Court affirmed. *Taylor v. AIA Services Corp.*, 151 Idaho 552, 261 P.3d 829 (2011). This lawsuit proves the illegal conduct that occurred under John Taylor and others,

DECLARATION OF RODERICK C. BOND - 31

and Reed's loss of this lawsuit led to the filing of two more lawsuits against two law firms discussed below. Reed's expert had opined that the AIA Entities generated sufficient funds to pay Reed, but they simply chose not to do so. This lawsuit would have never occurred if John Taylor had simply paid his brother Reed as required by the $6 million promissory note.

   **b.**      *Reed J. Taylor v. Babbitt, et al. and Reed J. Taylor v. McNichols, et al.*, Nez Perce County Consolidated Case Nos.: No. CV-08-01765 and CV-08-01763 (collectively "*Reed Taylor v. Babbitt*").  Miesen was not a party in either of those lawsuits nor was he the cause of those lawsuits. Instead, as seen from the filings, Reed Taylor took a bold move to pursue claims against the two law firms (Hawley Troxell was one) and certain of their attorneys for conversion (i.e., accepting payment from funds that Reed had a security interest in), malpractice (i.e., Reed was the stock pledgee of AIA Insurance and he voted the shares), aiding and abetting John Taylor and the other defendants, and other claims. (*See* Dkts. 12-10, 12-11, 12-12.)  Both lawsuits were dismissed on Rule 12(b)(6) motions and one-half of the requested fees were awarded to the defendants under I.C. §§ 12-121 and 30-1-746 (although the fee awards were substantially reduced). (Dkt. 12-13.) Reed appealed. Contrary to the defendants' arguments, **I did not file those lawsuits and I did not appear as an attorney on them until after both lawsuits had been dismissed**. I subsequently appeared as Reed's counsel on appeal and in the district court only for purposes of addressing the lack of a final judgment. The Idaho Supreme Court largely affirmed, but they held that one of Reed's most important and valuable claims—aiding and abetting—had been properly pleaded but had to await the outcome of Reed's appeal in *Reed Taylor v. AIA Services*. *Taylor v. McNichols*, 149 Idaho 826, 243 P.3d 642 (2010).

DECLARATION OF RODERICK C. BOND - 32

**18-ER-4457**

There is nothing left of AIA Entities as predicted by Reed (I am not addressing privileged matters). However, Reed was never able to pursue the aiding and abetting claims or any others because the Idaho Supreme Court affirmed the dismissal of his claims in *Reed Taylor v. AIA Services*. These lawsuits would never have been filed had John Taylor paid his brother as required by the $6 million promissory note.

  **c.**  *Reed J. Taylor v. Riley, et al., Ada County District Court Case No. CV-OC-09-18868 ("Reed Taylor v. Riley")*. Miesen was not a party to this lawsuit nor was he the cause of this lawsuit. Instead, Reed filed this lawsuit against Richard Riley, Robert Turnbow, Eberle Berlin, and Hawley Troxell shortly after the trial court ruled his stock redemption was illegal. Reed asserted claims for legal malpractice, fraud and other claims based on Riley and his former law firm providing Reed an opinion letter in 1995 that the redemption of his shares was legal and did not violate any laws (Reed alleged the opinion letter was wrong and facts were concealed from him). (*See* Dkts. 67-7, 82-5.) Reed also alleged claims based on Riley and Hawley Troxell asserting that his redemption was illegal in *Reed Taylor v. AIA Services* when Riley and Eberle Berlin given the exact opposite opinions to Reed. The defendants moved for summary judgment. Judge Greenwood granted summary judgment to Hawley Troxell based on the res judicate affect of *Reed Taylor v. Babbitt*, but he denied summary judgment to the remaining defendants. (*See* Dkt. 83-12.) Shortly before trial, the defendants moved for a permissive appeal, and the Idaho Supreme Court reversed Judge Greenwood's decision by removing Riley from the case. (*See* Dkts. 83-12, 83-13.) *Taylor v. Riley*, 157 Idaho 323, 336 P.3d 256 (2014). I appeared as co-counsel on that appeal and drafting the briefing (although another attorney argued). While the appeal was pending, the defendants offered Reed $1,000,000, which he rejected.

DECLARATION OF RODERICK C. BOND - 33

On remand, Reed subsequently mediated with the Turnbow Estate and Eberle Berlin with Tony Piazza and the case was settled at mediation. The settlement agreement contains a confidentiality provision (although I am not bound by the agreement). The settlement agreement was previously submitted by Reed's counsel to the discovery master. Thus, the agreement is in the Court's file and the Court can confirm for itself the terms of the settlement. This lawsuit would have never occurred if John Taylor had paid his brother Reed as required by the $6 million promissory note.

      **d.**    *Reed J. Taylor v. Bell, et al.*, King County Superior Court Case No. 12-2-10803-0-SEA ("*Reed Taylor v. Bell*"). Miesen was not a party to this lawsuit nor was he the cause of this lawsuit. Instead, Reed Taylor filed this lawsuit against Scott Bell, Frank Taylor and their Seattle law firm.  Reed asserted legal malpractice claims against the defendants for their representation of him for the illegal redemption of his shares in 1995, as confirmed by the Idaho Supreme Court in *Reed Taylor v. AIA Services*. (*See* Dkt. 275-19.) The lawsuit was dismissed on a motion for summary judgment. Reed appealed and obtained a reversal on appeal. *Taylor v. Bell*, 340 P.3d 951 (Wash. Ct. App. 2014), review denied, 352 P.3d 188 (2015). On remand, Reed and the defendants mediated three times. Reed only agreed to mediate a third time after the defendants offered $6 million to settle (an offer Reed did not accept). The lawsuit settled at the third mediation. While I am not bound by the confidentiality provision in the agreement, I am still not willing to disclose the terms without a court order. This Court can review the settlement agreement, which was provided by Reed's counsel to the discovery master, and confirm what occurred in that settlement. Notably, John Taylor cooperated with the defendants, but worked to prevent Reed from obtaining the discovery that he needed even though John and the AIA Entities

DECLARATION OF RODERICK C. BOND - 34

were not involved. Those actions caused the AIA Entities to incur unnecessary fees and costs. This lawsuit would have never been filed had John Taylor paid his brother Reed as required by the $6 million promissory note.

e.      *Donna Taylor v. John Taylor, et al., Consolidated Nez Perce District Court Case Nos. CV-08-1150 and CV-13-1075 ("Taylor v. Taylor")*. Miesen was not a party to these lawsuits nor was he the cause of these lawsuits. Instead, Donna Taylor, the Series A Preferred Shareholder of AIA Services with priority payment over all other shareholders, filed her first lawsuit in 2008 against John Taylor alleging fraud and related claims. (Dkt. 1220-4.) Donna was required to be paid in full by December 2003. Instead, John Taylor wrote her letters stating that CropUSA was being pursued for AIA and concealed countless facts from her.  This lawsuit was stayed. Contrary to John Taylor's allegations, I did not file the first lawsuit and I did not appear as her counsel until years later. Then, in 2013, Donna Taylor filed a new lawsuit (I was her attorney) asserting breaches of contract and tort claims for failing to pay her. (Dkt. 1220-4.) The lawsuits were consolidated at Donna's request. The trial court found that one of Donna's redemption agreements (like Reed's) was illegal and the other one was never authorized by shareholders. Donna appealed and the Idaho Supreme Court reversed in large part and awarded over $27,000 in fees and costs (which have never been paid since the order was issued in 2018). *See Taylor v. Taylor*, 163 Idaho 910, 422 P.3d 1116 (2018). John Taylor has never made a reasonable settlement offer. To the contrary, Donna's settlement offers have been rejected. As John Taylor conceded, the AIA Entities have spent over $590,000 in fees and costs fighting Donna when she could have and should have been paid approximately $430,000 in 2008, which makes no sense. Notably, Daniel Glynn is purporting to represent AIA Services and the

DECLARATION OF RODERICK C. BOND - 35

18-ER-4461

Individual Defendants in these lawsuits. These lawsuits would have been prevented had John Taylor simply paid Donna in full in December 2003 as required by her 1995 Letter Agreements.

  *f.*  *Donna Taylor v. AIA Services Corp., Nez Perce County District Court Case No. CV-09-02470 ("Donna Taylor v. AIA Services")*. Miesen was not a party to this lawsuit nor was he the cause of this lawsuit. Judge Kerrick ultimately stayed this lawsuit at the request of the defendants. While the stay was pending, Donna filed a notice of voluntarily dismissal without prejudice.

  **g.**  *This Lawsuit*. In 2010, Miesen and Donna Taylor filed this lawsuit. During the entire time that this lawsuit has been pending, the remaining defendants did not do anything to rectify any of the malfeasance, improper conduct, the failure to follow fundamental corporate governance or simply comply with the articles and bylaws of the AIA Entities. John Taylor and the other Individual Defendants have never offered a penny to settle this lawsuit. Instead, they have caused the lawsuit to drag on and the costs of litigation to drastically increase. Instead, after this lawsuit was filed, the malfeasance and improper conduct continued. After obtaining documents (after this Court's order) and deposing John Taylor twice (by this Court's order), we learned that there has been no proper corporate governance at the AIA Entities for many years (in addition to the fact that John Taylor has refused to hold shareholder meetings, despite demands by Miesen and other shareholders). This lawsuit would have never been filed had John Taylor and the other Individual Defendants simply operated the AIA Entities in the best interests of all the shareholders and complied with fundamental corporate governance.

DECLARATION OF RODERICK C. BOND - 36

18-ER-4462

h.      *AIA Services Corp. v. Durant, et al., Nez Perce County District Court Case No. CV-12-01483 ("AIA Services v. Durant").* In 2012, while the instant lawsuit was stayed by Judge Boyle, John Taylor, Beck and Henderson (and presumably Cashman) tried to have AIA Services effectuate a reverse stock split that would have eliminated the standing of Miesen and other shareholders to sue in the instant case by paying the ten cents per share. Over thirteen shareholders objected, and, in return, John Taylor, Beck and Henderson had AIA Services file suit against the shareholders. (Dkts. 68-1, 83-15.) I was counsel for the shareholders named as defendants. Miesen and the other shareholders moved to dismiss by asserting, among other things, that the reverse stock split was prohibited because the articles of incorporation prohibited the transaction. Judge Kerrick dismissed the lawsuit and awarded fees and costs to the shareholders (my clients) pursuant to I.C. § 12-120(3). (Dkt. 86.) John Taylor never had AIA Services pay the judgment entered in favor of Miesen and the other shareholders. This lawsuit was caused by John Taylor, James Beck and Connie Taylor Henderson (the three persons purporting to act as directors of AIA Services), not Miesen.

i.      *GemCap Lending I, LLC v. CropUSA Insurance Agency, Inc., et al., U.S. District Court, Central District of California, Western Division, Case No. 2:13-cv-05504-SJO-MAN ("GemCap v. CropUSA").* Miesen was not a party to this lawsuit nor was he the cause of this lawsuit. Instead, in 2011-2013, John Taylor obtained a $10 million line-of-credit for the CropUSA Defendants from GemCap. John Taylor, Beck and Henderson also permitted the AIA Entities to guarantee that loan in violation of AIA Services' articles of incorporation, the AIA Entities' bylaws and other laws (including fiduciary duties). Those guarantees were entered into while the instant lawsuit was pending. After the CropUSA

DECLARATION OF RODERICK C. BOND - 37

Defendants failed to repay the loan in 2013, GemCap sued the CropUSA Defendants, AIA Entities, John Taylor (he guaranteed the loan as well) and other defendants for non-payment of the nearly $9 million debt. GemCap asserted claims of breach of contract, conversion, fraud and other claims. (Dkts. 229-2, 229-3.) The AIA Entities' guarantee of the $10 million loan was concealed from Miesen and other innocent shareholders. Despite my demands, John Taylor settled with GemCap for over $12 million. (*See* Dkt. 128 at 21-48.) That settlement violated the AIA Entities bylaws and AIA Services' amended articles of incorporation, it was not disclosed to Miesen and the innocent shareholders, and their consent was never sought or obtained. John Taylor caused this lawsuit by having the CropUSA Entities borrow money that they were unable to pay back and by having the AIA Entities guarantee loans that were prohibited under AIA Services' amended articles of incorporation and the AIA Entities bylaws (among other laws).

**j.** *GemCap Lending I, LLC v. AIA Services Corp., et al., Nez Perce County District Court Case No. CV-16-02207 ("GemCap v. AIA")*. Miesen was not a party to this lawsuit nor was he the cause of this lawsuit. Instead, GemCap filed suit against John Taylor, AIA Services, the AIA Services' 401(k) plan and John Taylor as trustee of the plan for fraudulent conveyances. Notably, Daniel Glynn subsequently appeared as counsel for AIA Services and the AIA Services' 401(k) Plan, but he never asserted that the settlement agreement or guarantees that formed the basis of the fraudulent concealment claims were unauthorized and ultra vires as we had advised him. Instead, Mr. Glynn pursued John Taylor's interests. At one hearing in that lawsuit, Judge Brudie even stated that: "'I have had a lot of experience working with AIA and their financial records, and I don't know if I can trust any of them, but go ahead.'" (Dkt. 1099-1 at 289 ¶ 3 (I have reviewed the

DECLARATION OF RODERICK C. BOND - 38

transcript and the quote is accurate).) Judge Brudie also found that John Taylor committed fraud. (Dkt. 1167-9.) This lawsuit would have never been filed if John Taylor had the CropUSA Defendants pay their obligations to GemCap according to the loan documents.

**k.** *Durant v. GemCap Lending I, LLC, et al., Nez Perce County District Court Case No. CV-14-01444 ("Durant v. GemCap")*. This lawsuit was filed by Miesen, Donna Taylor and Paul Durant (three shareholders) after they discovered that John Taylor had the AIA Entities unlawfully guarantee the $10 million loan for the CropUSA Defendants provided by GemCap. I was counsel for the plaintiffs. The claims were solely declaratory relief. The Plaintiffs did not assert any claims under I.C. § 30-29-304 or otherwise allege ultra vires. Judge Brudie dismissed the lawsuit without prejudice in 2015 because he believed the claims needed to be derivative. No fees and costs were awarded after judgment was finally entered. As a result, Miesen made a derivative demand on GemCap and it was named as a defendant in the TAC in the instant lawsuit.

**l.** Other Lawsuits. There is a plethora of other lawsuits filed that were caused by John Taylor. (*See, e.g.,* Dkt. 1099-1 at 854-59.) None of those lawsuits were caused by Miesen nor was he a party to any of them (other than those discussed above). Those lawsuits were directly or indirectly caused by John Taylor.

**51.** The Hawley Troxell Defendants argued that Miesen's prior fee and cost motion was premature. The Individual Defendants and CropUSA Defendants joined in that argument. Thus, Miesen elected to withdraw his fee and cost motion. Since a Rule 54(b) judgment has now been entered, Miesen's fees and costs motion is being filed.

**52.** In sum, my firm and Mr. Schwam's firm have agreed to limit the total attorney fee recovery from Miesen's settlement with the Hawley Troxell Defendants to a total of $560,000

DECLARATION OF RODERICK C. BOND - 39

**18-ER-4464**

18-ER-4465

(40% of the gross recovery of $1,400,000 allocated 35% ($490,000) to my firm and 5% ($70,000) to Mr. Schwam's firm and my firm has agreed to limit its total reimbursement of costs to not more than $375,327.96. We are seeking and respectfully requesting that this Court approve payment of a total of $935,327.96 in attorneys' fees and costs. If this Court approves payment of more for costs and less for fees, or vice versa, I am respectfully requesting that this Court approve payment of the total of $935,327.96 to my firm and Mr. Schwam's firm. We respectfully request one check to be written to the Roderick Bond Law Office, PLLC Trust Account and my firm will remit payment to Mr. Schwam's firm for his share. I apologize to the Court for the length of this declaration, but the issue of the fees and cost is very important to me.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

*August 18, 2022, Bellevue, WA*                     */s/ Roderick C. Bond*
Date and City and State Signed                     Roderick C. Bond

DECLARATION OF RODERICK C. BOND - 40

**18-ER-4465**

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on the 18th day of August 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:    jat@elamburke.com
Loren C. Ipsen:    lci@elamburke.com
Joyce A. Hemmer:    jah@elamburke.com
Bradley S. Keller:    bkeller@byrneskeller.com
Alyson A. Foster:    alyson@dempseyfoster.com
Tyler S. Waite:    twaite@campbell-bissell.com
Michael S. Bissell:    mbissell@campbell-bissell.com
Daniel L. Glynn:    dglynn@idalaw.com
Andrew Schwam:    amschwam@turbonet.com
Kim J Trout:    ktrout@trout-law.com


*/s/ Roderick C. Bond*
Roderick C. Bond

DECLARATION OF RODERICK C. BOND - 41

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release, together with the attached Exhibits 1-3 that are incorporated by reference into this Agreement (collectively "Agreement"), is made and entered into effective the _2_ day of _May_ 2022, by and among (i) Dale L Miesen, individually and in his capacity as an AIA Services Corporation shareholder ("Miesen") who filed and has been pursuing certain claims, including a shareholder derivative action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary, AIA Insurance, Inc.; (ii) non-party Donna J. Taylor, individually and in her capacity as an AIA Services Corporation shareholder ("Donna Taylor") who previously was a named plaintiff in this shareholder derivative action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary, AIA Insurance, Inc.; and (iii) Hawley Troxell Ennis & Hawley LLP, an Idaho limited liability partnership ("HTEH"), Gary D. Babbitt, by and through his guardian ad litem Laramie Babbitt (collectively "Babbitt"), D. John Ashby ("Ashby"), and Richard A. Riley ("Riley"), all of whom are collectively referred to as the "Hawley Troxell Defendants" (as further defined to include others below):

1.      **Other Definitions.**  In addition to the other defined terms in this Agreement, as used in this Agreement, the following terms shall have the meanings set forth below.  (Masculine pronouns shall not connote any particular gender, but shall be taken to mean masculine, feminine or neuter gender, as the appropriate case may be.)

a.      The term "Affiliate" of, or a person "Affiliated" with a specific person, means an entity or other person whose decision-making or governance is controlled by or under common control with the Person specified.  For purposes of this definition, an entity is deemed "controlled" by or under common control with another Person if the other Person possesses, directly or indirectly, the power to direct or cause the direction of the management and policy of the controlled entity, whether by contract or through the ownership of 50% or more of the voting stock of a corporation, or with respect to a partnership, limited liability company, joint venture or entity other than a corporation, ownership of 50% or more of the equity or profits in such entity. The voting or ownership interest of any Person in an entity shall be consolidated with the ownership or voting interests of such Person's spouse, siblings, lineal descendants and lineal ascendants.

b.      The term "AIA Entities" means AIA Services (defined below) and AIA Insurance (defined below), collectively.

c.      The term "AIA Insurance" means AIA Insurance, Inc., an Idaho corporation.

d.      The term "AIA Services" means AIA Services Corporation, an Idaho corporation.

e.      The term "Claims" mean any and all losses, damages, liabilities, causes of action, judgments, allegations and demands of every kind, name or nature, KNOWN or UNKNOWN, asserted or which could have been asserted in the Litigation (defined below) or which could be asserted in the future by any of the Releasors (defined below) against Releasees (defined below), or any of them, in any way relating to, having to do with, arising, arisen or which

**SETTLEMENT AGREEMENT - 1**

**Exhibit - A, p. 1**

**18-ER-4467**

may arise out of or by reason of any acts, omissions, events, and occurrences or Transactions (defined below) alleged or which could have been alleged in the Litigation, including but not limited to claims for contribution and indemnity, the performance of or alleged failure by any of the Releasees to perform any legal or other services, the fulfillment of or alleged failure to fulfill fiduciary duties (including but not limited to any duties of care, loyalty or good faith) by any of the Releasees, or any alleged violation of any provision of the IRPCs (defined below) by any of the Releasees.  Without limiting the generality of the foregoing, the term "Claims" includes any and all other allegations and potential causes of action asserted or which could have been asserted by any of the Releasors against Releasees, or any of them, for (i) damages allegedly incurred by either of the AIA Entities claimed to have been caused (in whole or in part) by any of the Releasees as a result of any act or omission in their capacity as attorneys or agents for either of the AIA Entities, any Nonsettling Defendant (defined below), or any other Person concerning any Transaction; (ii) damages allegedly incurred by either of the AIA Entities claimed to have been incurred (in whole or in part) by any of the Releasees allegedly aiding and/or abetting or otherwise acting in concert with any Nonsettling Defendant or other Person; or (iii) actual, consequential or punitive damages, costs of suit, attorney fees, disgorgement of fees and/or costs, and other claims for damages or for declaratory or equitable relief of any nature whatsoever.  The term "Claims" also includes but is not limited to any losses, damages, or liabilities alleged or that could have been alleged against any of the Releasees by Miesen or Donna Taylor either directly, in their individual capacity, or derivatively, as shareholders of AIA Services on behalf of either of the AIA Entities.

       f.      The terms "concern" or "concerning" means relating to, in connection with, describing, evidencing, supporting, or discussing the referenced matter.

       g.      The term "Court" means the District Court judge assigned to the Litigation (defined below).

       h.      The term "CropUSA" means CropUSA Insurance Agency, Inc., an Idaho corporation, and CropUSA Insurance Services, LLC, an Idaho limited liability company, collectively.

       i.      The term "Donna Taylor" means Donna J. Taylor, both individually and in her capacity as a shareholder of AIA Services who was one of the shareholders that initially filed the Litigation alleging Claims on behalf of and/or in the right of AIA Services and its wholly owned subsidiary, AIA Insurance, as well as any of her Affiliates.

       j.      The term "Hawley Troxell Defendants" means each and all of HTEH, Babbitt, Ashby, and Riley and includes all other present or former HTEH partners, associates, of counsel attorneys, paralegals, staff, employees, Affiliates, attorneys, their outside litigation counsel, or other agents regarding each of them, and (where applicable) the spouses and marital communities of the Hawley Troxell Defendants, and their respective insurers.

       k.      The term "IRPC" means the Idaho Rules of Professional Conduct.

       l.      The term "Litigation" means the action captioned *Dale L. Miesen. v. Connie Taylor Henderson, et al*., (a/k/a *Donna J. Taylor, et al. v. Hawley Troxell Ennis & Hawley, LLP, et al.*), filed under Case No. 1:10-cv-00404-DCN-CWD in the United States District Court for the District of Idaho.

**SETTLEMENT AGREEMENT - 2**

**Exhibit - A, p. 2**
**18-ER-4468**

m.      The term "Miesen" means Dale L. Miesen, both individually and in his capacity as a shareholder of AIA Services who was one of the shareholders who filed and has been pursuing the Litigation alleging Claims on behalf and/or in the right of AIA Services and its wholly owned subsidiary, AIA Insurance, as well as any of his Affiliates.

n.      The term "Nonsettling Defendants" means and includes all named (and any future named) defendants in the Litigation other than the Hawley Troxell Defendants.

o.      The terms "Person" and "Persons" mean and includes any one or more natural person, corporation, partnership, limited liability company, joint venture, unincorporated association, governmental entity (or agency or board thereof), quasi-public entity or other form of entity, and any combinations thereof.

p.      The terms "relating to" and "relates to" mean, without limitation, embodying, mentioning, or concerning, directly or indirectly, the subject matter referred to or identified in this Agreement.

q.      The term "Releasors" mean (i) Miesen, his Affiliates, and his present and future successors and assigns (if any); (ii) Donna Taylor, her Affiliates, and her present and future successors and assigns (if any); and (iii) subject to the legal effect of the Approval Order (defined below) and entry of the Rule 54(b) Judgment (defined below), the AIA Entities, their common stock shareholders, AIA Services' Series A Preferred Stock and Series C Preferred Stock shareholders, and any other Persons that the law binds by the entry of the Approval Order and/or the Rule 54(b) Judgment.

r.      The term "Releasees" means each and all of the Hawley Troxell Defendants, and any and all Persons for or through whom they, or any of them, may have acted, or who may be liable to any of the Releasors with respect to any of the Claims.   This definition of "Releasees" excludes all of the Nonsettling Defendants as defined in "n" above.

s.      The term "Transaction" or "Transactions" mean any financial or business or arrangement for the provision of services and any other contract or agreement between or among two or more parties named in the Litigation or that was at issue in the Litigation.   Without limiting the foregoing, Transaction or Transactions includes each and every arrangement, contract or other agreement concerning which either Miesen or Donna Taylor made any allegations against any of the Hawley Troxell Defendants, including but not limited to any agreement or arrangement pursuant to which any of the Hawley Troxell Defendants provided any legal services to or for the benefit of either of the AIA Entities or CropUSA or any of the Nonsettling Defendants.

**2.      Court Approval and Notice to Shareholders and Others.**   This Agreement, subject to its terms, provides for and constitutes, among other things, the compromise, settlement, dismissal with prejudice and termination of all derivative Claims against the Hawley Troxell Defendants in the Litigation.   Therefore, Court approval of the settlement and this Agreement are required and notice of the settlement is to be provided to AIA Services' shareholders and AIA Insurance's shareholder (AIA Services).   Within five business days of all parties signing this Agreement, Miesen and the Hawley Troxell Defendants shall jointly request that the Court enter an order (the "Approval Scheduling Order") approving the forms of the notice to be provided, how the notice will be provided, who will be sent the notice, and a schedule for briefing and any hearing

**SETTLEMENT AGREEMENT - 3**

regarding a Motion for Approval of Hawley Troxell Settlement (the "Approval Motion").   The Approval Scheduling Order may also set forth a schedule for briefing and any hearing regarding Miesen's Fee Application Motion (defined below); however, the Hawley Troxell Defendants take no position regarding when (or if) Miesen's Fee Application should be addressed by the Court; and neither this Agreement nor the Approval Order is dependent on when (or if) the Court addresses Miesen's Fee Application.   The parties joint request for entry of the Approval Scheduling Order shall be accomplished by lodging for entry the Stipulation for and [Proposed] Scheduling Order Regarding Settlement Approval Proceedings in the same form attached as Exhibit 1.   Once the Approval Scheduling Order has been entered, (i) the parties shall, consistent with the below provisions and the dates set forth in that Order, comply with the notice provisions, and (ii) Miesen shall prepare and file all pleadings reasonably necessary to request Court approval of this Agreement by entry of a Court order in substantially the same form as Exhibit 2 ("Approval Order"), and, entry of a Rule 54(b) Judgment in substantially the same form attached as Exhibit 3. ("Rule 54(b) Judgment").

In connection with the notice addressed above, the parties agree that they will jointly request that the Approval Scheduling Order provide that:

a.     The content of the notices shall be substantially that which is set forth as attachments "A" and "B" to the Approval Scheduling Order (Exhibit 1 hereto), or such other different content as the Court may require in its sole discretion.

b.     Notice shall be provided by Miesen or his counsel by U.S. first class mail ("Mail Notice") to the last known addresses for the following Persons (the "Notice Recipients"): (i) any common or preferred shareholders of record of either AIA Services or AIA Insurance; (ii) the Trustee of record of the AIA Services 401(k) Plan (the "Plan") and Plan participants (a) at the addresses indicated in the most recent list of Plan participants produced in discovery in the Litigation by AIA Services or John Taylor, and (b) any different or additional addresses for Plan participants provided by HTEH or its counsel; and (iii) the last Trustee of record of the AIA Services' ESOP; and the last former ESOP participants at (a) the addresses indicated in the last known ESOP participants' list and/or the last shareholder list provided during discovery in the Litigation by AIA Services or John Taylor, and (b) any different or additional addresses for former ESOP participants provided by HTEH or its counsel.   Miesen shall provide HTEH's counsel with a list of all Persons to which he provided Mail Notice pursuant to this provision.

c.     Mail Notice shall be provided by HTEH or its counsel, at HTEH's sole expense, by U.S. first class mail to the following (the "Additional Notice Recipients"): (i) those creditors of the AIA Entities shown on the most recent annual AIA Services' Balance Sheet or list of account payables produced in the Litigation by AIA Services or John Taylor; and (ii) the state agency in each of the following states (the "Escheat States") to which unclaimed funds escheat: Texas, Arkansas, Kansas, Minnesota, Montana, South Dakota, Utah, and Wyoming.   The addresses to be used for the Additional Notice Recipients shall be those (if any) provided during discovery in the Litigation by AIA Services or John Taylor or those which HTEH or its counsel are able to locate by means of a reasonable internet search.   HTEH shall provide Miesen's counsel with a list of all Persons to which it provided Mail Notice pursuant to this provision.

d.     In addition, (i) Miesen or his counsel, at their expense, shall arrange for publication of a court-approved short form version of the notice (the "Publication Notice") in a

**SETTLEMENT AGREEMENT - 4**

daily newspaper with city-wide circulation in the Lewiston-Clarkston area, and (ii) HTEH or its counsel shall arrange for publication of the Publication Notice, at HTEH's expense, in a daily newspaper with significant circulation in the Escheat States.   The Publication Notice shall be 1/4 page and, with the exception of Texas, shall be published on a single weekday during two consecutive weeks.   The Texas Publication Notice shall be published on a single weekday.

e.      The pertinent dates in the Approval Scheduling Order shall allow an adequate time period for any Notice Recipient or Additional Notice Recipient, as well as other parties in the Litigation, to file any responses or objections to the Approval Motion or to Miesen's Fee Application Motion, for Miesen and for the Hawley Troxell Defendants to submit replies, if any, or such other written submissions regarding whether this Agreement should be approved and whether the Approval Order and the Rule 54(b) Judgment should be entered.   By providing notice and an opportunity to be heard to Notice Recipients and Additional Notice Recipients other than Persons who are shareholders or beneficial shareholders of record of either of the AIA Entities (as the terms "shareholders" and "beneficial shareholders" are defined in I.C. §§ 30-29-140 and 30-29-740), Miesen and the Hawley Troxell Defendants do not intend to concede or suggest that such Persons have standing or any ability or right to object or be heard regarding either the Approval Motion or Miesen's Fee Application Motion, and they each separately reserve their right to request that the Court not consider any objections or written submissions by any Persons who are not shareholders or beneficial shareholders of either of the AIA Entities.

In the event this Agreement and/or the attached Exhibits 1-3 are not approved by the Court in their entirety in the Approval Order (Exhibits 2 and 3 need only be approved in substantially the form submitted so long as they are in compliance with the terms of this Agreement), the Conditions Precedent in Section 15 shall not be fully satisfied and the provisions in Section 15(c) apply and this Agreement shall be null and void.   Upon both the entry of the Approval Order and the entry of the Rule 54(b) Judgment as provided above, but subject to the other Conditions Precedent in Section 15 being satisfied in full, this Agreement shall inure to the benefit and constitute the binding obligations of each of the Releasors and each of the Releasees.   The parties acknowledge that the Court is under no obligation to grant the Approval Motion or to enter the Approval Order or the Rule 54(b) Judgment.

**3.      Settlement and Release of Claims by Releasors.**   Subject to and effective upon the Conditions Precedent in Section 15 being satisfied, Releasors fully, finally and forever release, waive, and relinquish all Claims and hereby acquit and discharge each and all of the Releasees from all Claims.   By entering into this Agreement, Miesen and Donna Taylor are releasing all Claims they have asserted, or could have asserted either individually or derivatively on behalf of either of the AIA Entities against any of the Releasees.   Releasors expressly reserve and are not releasing any claims against any Persons other than Releasees, including, without limitation, Miesen is not releasing his claims or any rights against any of the Nonsettling Defendants and Donna Taylor is not releasing any of her claims or any rights against any of the defendants in her pending two consolidated lawsuits, Case Nos. CV-08-01150 and CV-13-001075, both of which are pending in the District Court of the Second Judicial District of the State of Idaho, in and for Nez Perce County (collectively the "DT Consolidated Case").   The parties' intent is that so long as the Conditions Precedent in Section 15 are satisfied, this Agreement provides for the dismissal with prejudice and entry of the Rule 54(b) Judgment with respect to all Claims previously asserted (or which could have been asserted) by Releasors against the Hawley Troxell Defendants, and that such dismissal and judgment shall be binding upon and preclude not only any later claims in any

SETTLEMENT AGREEMENT - 5

way related to the AIA Entities against any of the Hawley Troxell Defendants by Miesen and Donna Taylor, but also any such claims that could have been brought by either of the AIA Entities, the AIA Entities' common or preferred shareholders, any other Persons who might be deemed beneficial shareholders of either of the AIA Entities, and any of the Notice Recipients or the Additional Notice Recipients to the extent, if at all, they may be entitled to bring any claims on behalf of either of the AIA Entities.

4.      **Settlement and Release of Claims by the Hawley Troxell Defendants.**   Subject to and effective upon the Conditions Precedent in Section 15 being satisfied, the Hawley Troxell Defendants fully, finally and forever release, waive, and relinquish any claims of any kind against Miesen and his litigation counsel, Donna Taylor and her litigation counsel, and the AIA Entities, including, without limitation, any known and unknown claims, attorneys' fees, costs, sanctions or other expenses related to: (i) legal or other services HTEH previously provided to the AIA Entities (including any unpaid sums owed for legal services or costs); and/or (ii) the Litigation.   The Hawley Troxell Defendants' release includes, without limitation, a waiver of all claims and payment for discovery sanctions they were previously awarded against Miesen and his counsel in the Litigation.   The Hawley Troxell Defendants expressly reserve and are not releasing any claims against any Persons other than the foregoing claims against Miesen, Donna Taylor, the AIA Entities, or Miesen's counsel in the Litigation.

5.      **Settlement Payment.**   Subject to the provisions in Section 15, HTEH's insurer shall pay the total sum of One Million Four Hundred Thousand and 00/100 Dollars ($1,400,000) (the "Settlement Payment").   When due, the Settlement Payment, which is for the benefit of the AIA Entities, shall be paid by HTEH's insurer into the Court's registry.   The Court may subsequently on motion order that the Settlement Payment be transferred to another account, provided such other account remains under the control of the Court until further order.   The Settlement Payment funds shall thereafter be under the Court's control to be used pursuant to Court order(s) for the benefit of the AIA Entities which, if ordered by the Court, may include but shall not be limited to (i) the payment of any Court-awarded attorneys' fees or cost reimbursement to Miesen's counsel pursuant to Miesen's Fee Application Motion, (ii) the payment of any outstanding fees owed by Miesen to the Litigation Special Discovery Master David Lombardi or his law firm, Givens Pursley LLP, (iii) the payment of any *bona fide* creditors of the AIA Entities, or (iv) the payment of any distributions to the AIA Entities' preferred or common shareholders or other stakeholders

6.      **Procedures to Address Contribution or Indemnity Claims and Subsequent Settlements.**   The parties acknowledge that damages claimed in the Litigation by Releasors may be the subject of further dispute or litigation among Releasors and the Nonsettling Defendants either in the Litigation or in other litigation that Releasors are pursuing or may pursue.   It is the mutual intent of the Releasors and Releasees that this Agreement shall be construed in such manner that, if any Nonsettling Defendant or other Person is determined to be a joint tortfeasor (as defined in Idaho Code § 6-803(4) and (5) or other applicable law) with any Releasee, they shall not be entitled to recover contribution or indemnity of any kind whatsoever from such Releasee.   It is further the mutual intent of the parties that Releasees shall not be required to participate as party-defendants at trial, or otherwise defend the Litigation, or to remain as active parties to the Litigation, or to participate in any other lawsuit initiated by Releasors involving the subject matter of the Litigation or damages claimed or that could have been claimed therein.   The mutual intent of the Releasors and Releasees is that, by payment of the Settlement Payment and the release of

**SETTLEMENT AGREEMENT - 6**

**Exhibit - A, p. 6**
**18-ER-4472**

Claims in this Agreement, the Hawley Troxell Defendants shall have forever resolved all of the claims and damages which are at issue or could have been at issue in the Litigation as to all parties to the Litigation.   In order to effectuate the mutual intent of the Releasors and Releasees in this regard, Releasors and Releasees agree to the following provisions:

a.   Listing the Hawley Troxell Defendants on Any Special and/or General Verdict(s) in the Litigation.   Miesen and the Hawley Troxell Defendants agree that the Court must approve and confirm that the Hawley Troxell Defendants shall be included on any special verdict(s) and/or general verdict(s) at any trial in the Litigation by including the following paragraph or incorporating by reference this Agreement in its Approval Order:

> The Court shall include the Hawley Troxell Defendants on any special and/or general verdict form(s) submitted to the jury at the conclusion of the trial(s) in the above-entitled action so that the jury can make a determination of an allocation of non-party fault or responsibility, if any, for any damages alleged to have been incurred by the AIA Entities that were proximately caused by any act and/or omission by the Hawley Troxell Defendants.   To the extent that the Court, rather than the jury, decides any of Miesen's claims, the Court's Findings and Conclusions shall include a determination of an allocation of non-party fault or responsibility, if any, for any damages alleged to have been incurred by the AIA Entities that were proximately caused by any act and/or omission of the Hawley Troxell Defendants.   If the jury and/or Court determines that the Hawley Troxell Defendants are at fault, the Court will enter a partial satisfaction of any resulting judgment Miesen obtains against defendant(s) other than the Hawley Troxell Defendants to the extent of any adjudicated allocation(s) of fault regarding the Hawley Troxell Defendants.   For example, if the jury and/or Court returns verdict(s) totaling $6,000,000 at trial and there is an allocation of fault rendered against the Hawley Troxell Defendants for 30 percent (30%) fault ($1,800,000 of the $6,000,000 in damages), then a partial satisfaction of judgment for $1,800,000 will be entered by Miesen and/or the Court to reflect that the portion of the verdict attributable to the fault allocated to the Hawley Troxell Defendants has been fully paid and satisfied.   In other words, the judgment against the remaining defendants against whom judgment is entered would be credited and reduced by $1,800,000 through the entry of a partial satisfaction of judgment even though the Hawley Troxell Defendants' Settlement Payment was only $1,400,000.   By way of another example, if the jury and/or Court returns verdict(s) allocating no fault to the Hawley Troxell Defendants, then neither the Hawley Troxell Defendants nor their insurer shall be entitled to a return or refund of any portion of the Hawley Troxell Defendants' Settlement Payment.   Miesen is not waiving his right to argue at trial to the jury or to the Court that the appropriate percentage of fault that should be ascribed to the Hawley Troxell Defendants is zero.

Consistent with the above provision, Miesen shall, within three (3) business days of obtaining any judgment for damages against any of the remaining defendants or the order resolving any post-trial motions regarding any such judgment, whichever time-period is greater, file a partial satisfaction of such judgment to the extent of any adjudicated allocation(s) of fault or liability on the part of the Hawley Troxell Defendants.   If for any reason Miesen fails to do so, Miesen and the Hawley Troxell Defendants agree and they hereby jointly authorize the Court to enter an order stating that Miesen's judgment against the remaining defendants has been satisfied to the same

**SETTLEMENT AGREEMENT - 7**

**Exhibit - A, p. 7**
**18-ER-4473**

extent as expressly provided above.   Releasors and Releasees also specifically desire to have the Court confirm in its Approval Order that it will ensure that the Hawley Troxell Defendants are included on the special and/or general verdict(s) because Miesen and the Hawley Troxell Defendants' mutual intent is to ensure that any allocation of fault or liability on the part of the Hawley Troxell Defendants, if any, is fully and forever established in the Litigation and that the Hawley Troxell Defendants are not subjected to future lawsuits for contribution or indemnity.   By agreeing to this provision, Miesen acknowledges that plaintiffs typically do not wish to have non-parties listed on any jury or Court verdicts and he confirms that he has entered into this provision only after careful consideration and understanding that he is assuming any risks associated with requiring this provision.   This provision does not create any duties or obligations on the part of Miesen or his counsel to defend or protect the interests of the Hawley Troxell Defendants, including at any trial(s).

> b.   <u>Provision Applicable to Both the Litigation and the DT Consolidated Case</u>. For the avoidance of doubt, in the event that any of the Releasors has asserted or later asserts a claim against any other Person arising out of, relating to, or in any way connected with any Transaction, event, or occurrence which is or could be the subject matter of either the Litigation or the DT Consolidated Case, or any injuries or damages that have or could have been asserted therein, and if such other Person is determined or adjudicated to be a joint tortfeasor with any of the Releasees, the claim of such Releasor against such joint tortfeasor shall be reduced by such amount as may be determined or adjudicated to be the proportion of such Releasor's alleged damages attributable to the claims against the Releasees.

> c.   <u>Settlement with Remaining Defendants</u>.   If Miesen subsequently settles any of his claims for damages or other relief being pursued against any of the remaining defendants in the Litigation, Miesen must obtain and include a provision as part of any settlement agreement with that settling defendant(s) that they agree to release the Hawley Troxell Defendants for all known and unknown contribution, indemnity, or any other claims of any kind related to any Transactions or legal services concerning the AIA Entities or CropUSA.   In order to eliminate any confusion, any settlement with any of the remaining defendants in the Litigation shall include the following release provision:

>> [Insert Name of Subsequently Settling Party, including his/her/its successors, and/or assigns and/or affiliates, if any (defined in this provision as "<u>Subsequently Settling Party</u>")] agrees to and hereby fully and unconditionally releases, waives and discharges Hawley Troxell Ennis & Hawley LLP, including each of its current or former partners, associates, of counsel attorneys, paralegals, staff, other employees, affiliates, attorneys, agents, insurers, and any other persons or entities who acted on their behalf (collectively "<u>HTEH</u>"), from any claims Subsequently Settling Party has for losses, damages, liabilities, any causes of action, judgments, allegations and demands of every kind, name or nature, KNOWN OR UNKNOWN, asserted or which could have been asserted either in the past or in the future, that in any way relate to or arise out of (i) any prior dealings such Subsequently Settling Party had with HTEH, (ii) any prior dealings HTEH had concerning AIA Services Corporation ("<u>AIA Services</u>"), AIA Insurance, Inc. ("<u>AIA Insurance</u>"), or either Crop USA, Insurance Agency, Inc or CropUSA Insurance Services, LLC (collectively "<u>CropUSA</u>") and (iii) any potential claim for contribution or indemnification such Subsequently Settling Party has or potentially has against HTEH relating to or arising

**SETTLEMENT AGREEMENT - 8**

**Exhibit - A, p. 8**
**18-ER-4474**

out of any claims previously made or which could have been made, or claims made in the future, against the Subsequently Settling Party that in any way relate to or arise out of any past transactions or litigation involving AIA Services, AIA Insurance, or CropUSA.

By agreeing to this provision, Miesen acknowledges that this adds another aspect to any settlement which he may seek to obtain with any of the remaining defendants and he confirms that he has freely entered into this provision only after careful consideration and understanding that he is assuming any risks associated with requiring this provision. With respect to GemCap Lending I, LLC ("GemCap"), Miesen shall exert all reasonable efforts to obtain the above release from GemCap, but Miesen is not required to obtain such release language if he is unable to persuade GemCap to agree to such terms after exerting reasonable efforts.

**7.** **Disputed Nature of Claims.** Neither this Agreement, the Settlement Payment nor any other payment made or other consideration given by Releasees pursuant to its terms constitute an admission of liability or fault on the part of Releasees or any of them. To the contrary, Releasees deny any liability or fault and desire only to buy their peace and to finally and forever conclude all controversies, disputes and the pending Litigation or other potential litigation relating to, in connection with or concerning the Claims as provided in this Agreement.

**8.** **Indefinite Nature of Claims.** Releasors acknowledge that any loss, liability or damage resulting from the Claims is or may be of a progressive, continuing and/or unknown nature. Although the extent of the damages alleged by Miesen in the Litigation is uncertain and indefinite in certain respects, and although the Claims being released include any potential future unknown Claims, this Agreement nonetheless is intended to be all-encompassing and to constitute a final, complete discharge of all Claims, binding forever upon Releasors, and each of them. This Agreement finally and forever concludes all demands and controversies concerning the Claims against the Hawley Troxell Defendants, and it specifically bars any demands against them for future damage or loss pertaining to or arising out of the Claims, as well as any damage or loss, KNOWN OR UNKNOWN, which arose or arises from any events occurring before the date of this Agreement. Releasors understand, agree and acknowledge that a portion of the Settlement Payment is being paid as consideration for UNKNOWN, UNANTICIPATED, and UNSUSPECTED potential future Claims resulting from or in any way related to the Transactions at issue in the Litigation. To the extent, if any, that section 1542 of the Civil Code of California ("Section 1542") is applicable, Releasors expressly agree that the released Claims include and they waive any rights under that provision. Section 1542 provides:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

Releasors certify that they have read Section 1542 set out above. Releasors also understand and acknowledge that the significance and consequence of this waiver of Section 1542 is that even if any of the Releasors should eventually suffer additional damages arising out of the released Claims, Releasors will not be permitted to make any claim against Releasees for those

SETTLEMENT AGREEMENT - 9

damages.  Releasors further acknowledge that they intend these consequences even as to claims for injury and/or damages that may exist as of the date of this Agreement but which Releasors do not know exist, and which, if known, would materially affect Releasors' decision to execute this Agreement, regardless of whether Releasors' lack of knowledge is the result of ignorance, oversight, error, negligence, prior Court rulings in the Litigation, or any other cause.  Releasors knowingly and voluntarily assume the risk that the facts or law may be different from what Releasors presently believe.  By agreeing to include the above provision regarding California law, Miesen and Donna Taylor and the Hawley Troxell Defendants are not conceding that California law applies to this Agreement or any of Releasors' Claims, and each of them reserve their right to dispute whether California law applies in any respect.

For the avoidance of doubt, this Agreement applies and is controlling whatever the nature of the harm or loss, and even though any Releasor may be acting under a mistake or misapprehension as to the existence, nature, extent or duration of such damage or loss.    Releasors acknowledge and represent that Releasors have assumed the risk of any and all unknown, unanticipated, or misunderstood Claims which are released by the provisions of this Agreement and hereby waive and release all rights and benefits that any Releasor might otherwise have under any federal, state or local laws or statutes with regard to the release of such unknown, unanticipated or misunderstood Claims.

**9.**     **Suspension of Certain Motions and Responses/Objections.**    Within five business days of this Agreement being signed, Miesen and the Hawley Troxell Defendants will notify the Court that an agreement in principle for settlement exists that is subject to court approval, and in connection with that notification, Miesen and the Hawley Troxell Defendants shall request that the following pending motions filed by the Hawley Troxell Defendants be held in abeyance pending settlement approval proceedings: the motions filed under Dockets 1067 and 1077 (collectively the "Pending Motions").  If the Approval Order is obtained and the Rule 54(b) Judgment is entered, the Pending Motions will be moot insofar as the Hawley Troxell Defendants are concerned, and because of that, the Hawley Troxell Defendants shall file a notice withdrawing the Pending Motions as moot insofar as they are concerned.  Within five business days of this Agreement being signed, Miesen and the Hawley Troxell Defendants also will notify the Court that Miesen's Motion to Certify Questions to the Idaho Supreme Court (Dkt.1148) also shall be held in abeyance pending completion of the settlement approval proceedings.

**10.**     **Non-Disparagement.**    Except as necessary in shareholder/board meetings or communications soliciting shareholder votes involving the AIA Entities, or in any court filings, litigation matters (e.g., discovery or expert reports) in the Litigation, the DT Consolidated Case, or any future lawsuits Miesen or Donna Taylor commence against Persons other than Releasees related to the AIA Entities (collectively "AIA Lawsuits"), or testimony or oral argument provided or presented in the AIA Lawsuits (or any appeal(s) in the AIA Lawsuits), Miesen and Donna Taylor and the Hawley Troxell Defendants agree to not make or encourage any other Person to make any disparaging public comments or public statements about the other including any disparaging comments in press releases, interviews with or communications with media representatives or outlets, or in any legal or other articles or publications.

**11.**     **No Collusion.**    The parties to this Agreement acknowledge that they have not engaged in any collusion for the negotiation and preparation of the terms and conditions in this Agreement.    The terms and conditions of this Agreement (including the amount of the Settlement

**SETTLEMENT AGREEMENT - 10**
**Exhibit - A, p. 10**
**18-ER-4476**

Payment) is based solely on such parties independent and separate evaluation of the risks and expense associated with the Litigation and such parties' mutual desire to resolve, through this negotiated Agreement, the portion of this Litigation involving the Hawley Troxell Defendants on mutually fair and beneficial terms and conditions.

**12.** **Unproduced Privileged and Work Product Documents.** At the time of execution of this Agreement, the parties to this Agreement acknowledge that HTEH is in possession of privileged information and documents, including alleged attorney-client privileged information and documents ("A/C Privileged Materials"), common interest privileged information and documents (CI Privileged Materials"), and work product information and documents ("WP Privileged Materials") that were the subject of disputed discovery proceedings and various discovery rulings in the Litigation. The A/C Privileged Materials, the CI Privileged Materials, and the WP Privileged Materials are collectively referred to as the "Privileged Materials." Miesen acknowledges that he is nevertheless agreeing to resolve all known and unknown claims against the Hawley Troxell Defendants without being able to review a significant portion of the Privileged Materials because neither the AIA Entities nor the Hawley Troxell Defendants were required to produce them in the Litigation pursuant to various Court rulings. Miesen, however, is not waiving his right to appeal the Court's decisions regarding the Privileged Materials against the Nonsettling Defendants in the Litigation. The parties, therefore, are addressing certain aspects of the Hawley Troxell Defendants' future role regarding any effort by Miesen or Donna Taylor to obtain production of Privileged Materials. Until there has been a final resolution of the Litigation (including any appeals), the Hawley Troxell Defendants shall preserve and shall not destroy any Privileged Materials in their (or their litigation counsel's) possession that were not produced in the Litigation pursuant to discovery rulings. If Miesen or Donna Taylor's subsequent efforts, if any, to obtain access to WP Privileged Materials result in the Hawley Troxell Defendants incurring any costs (including reasonable attorney's and paralegal fees), then Miesen or Donna Taylor (as the case may be) shall be required to reimburse the Hawley Troxell Defendants for all such costs ("WP Cost Reimbursement") regardless of whether the WP Privileged Materials are subsequently ordered to be produced. If Miesen or Donna Taylor's subsequent efforts, if any, to obtain access to A/C Privileged Materials or CI Privileged Materials result in any order that they must be produced, HTEH shall be entitled to payment of the reasonable costs of gathering and producing the A/C Privileged Materials and the CI Privileged Materials. If Miesen or Donna Taylor's efforts, if any, to obtain access to the A/C Privileged Materials or the CI Privileged Materials result in a court order denying the production of any of those materials, HTEH shall be entitled to recover its costs (including reasonable attorneys' and paralegal fees), if any, incurred regarding Miesen or Donna Taylor's efforts to obtain production of those materials ("A/C Cost Reimbursement"). Any disputes regarding either entitlement to WP Cost Reimbursement, A/C Cost Reimbursement, or other cost reimbursement under this section or the amount shall be resolved by the Court. If any subsequent court order(s) require HTEH to produce any Privileged Materials, any disputes regarding either WP Cost Reimbursement, A/C Cost Reimbursement, or other cost reimbursement shall be completed, and any WP Cost Reimbursement, A/C Cost Reimbursement, or other cost reimbursement shall be paid, prior to HTEH having any obligation to produce the materials.

**13.** **No Testimony as Compensated Retained Expert Witnesses.** The Hawley Troxell Defendants (including any other attorney or employee at their firm, whether attorneys now or in the future) will not agree to act as a compensated retained expert witness(es) for any of the remaining parties in the Litigation or any of the parties in DT Consolidated Case. Nothing in this

**SETTLEMENT AGREEMENT - 11**

provision, however, shall in any way restrict the scope of the testimony the Hawley Troxell Defendants may give either in depositions or at any trial or other formal legal or disciplinary proceeding in any capacity other than as a compensated retained expert witness.

**14.     Matters Expressly Excluded from Settlement.**     This Agreement shall not resolve any claims or matters involving any of the remaining parties in the Litigation, except as expressly provided in this Agreement.   Except as expressly modified by this Agreement, Miesen expressly reserves all rights, claims, remedies, relief and appeals as to the Nonsettling Defendants and any other Persons (excluding Releasees).

**15.     Express Conditions Precedent to Validity and Enforceability of Agreement and Rule 54(b) Judgment.**     The parties expressly agree that the validity and enforceability of this Agreement and, if approved by the Court, the subsequent Rule 54(b) Judgment, shall be subject to the following two express conditions precedent ("Conditions Precedent"):

a.     Court Approval.   The Court must approve the entirety of the terms and conditions of this Agreement, including the entry of the Approval Order and the Rule 54(b) Judgment substantially in the same form attached as Exhibits 2 and 3 after notice has been provided to the Notice Recipients and the Additional Notice Recipients in connection with the Approval Motion.

b.     Timely Payment of Settlement Payment.   Provided a completed AIA Services' W-9 Form has been previously delivered to HTEH's counsel, the Settlement Payment must be timely paid on or before the earliest of the following dates: (i) within thirty (30) days after expiration of the deadline for filing a notice of appeal regarding both the Approval Order and the Rule 54(b) Judgment, if no appeals are filed; or (ii) if an appeal of the Approval Order or the Rule 54(b) Judgment is filed, within thirty (30) days after the entry of the final mandate for any appeal so long as the adjudication of the appeal results in the affirmance in all material respects of the Court's Approval Order, the terms of the this Agreement, and the terms of the Rule 54(b) Judgment.   If the Settlement Payment is not timely made, Miesen shall have the option of declaring this Agreement and the Rule 54(b) Judgment void or seeking specific performance from the Court regarding payment of the Settlement Payment.   If AIA Services does not timely provide a completed W-9 Form to HTEH's counsel, then pursuant to the Approval Order, Miesen shall sign and timely provide said form on behalf of AIA Services.

c.     Failure of any Condition Precedent.   In the event any one or more of the above two Conditions Precedent in Sections 15(a)-(b) are not timely satisfied, and subject to Miesen's discretion to seek specific performance under Section 15(b) if timely payment of the Settlement Payment is the only Condition Precedent not satisfied, this Agreement shall be null and void in its entirety, and it shall not be admissible as an acknowledgment of liability or fault by any Releasee or for any other purpose in the Litigation, and neither Releasees nor their insurer shall have any obligation to make the Settlement Payment, and Miesen's Claims against the Hawley Troxell Defendants and their defenses shall be reinstated.

**16.     No Inducement.**   By entering into this Agreement, each of the parties to this Agreement has relied entirely on the judgment and knowledge of each such party's own employees, agents, advisors and/or representatives, including but not limited to, Miesen obtaining advice from his attorneys of record in the Litigation, Roderick Bond and Andrew Schwam, and

**SETTLEMENT AGREEMENT - 12**

the Hawley Troxell Defendants relying on their counsel of record in the Litigation.   Donna Taylor acknowledges that she obtained advice from her independent counsel, Daniel Green.   None of such parties has been influenced by any statement or act of any other party to this Agreement or any attorney or other person acting for or on behalf of another party.   Each of such parties has proceeded in making this Agreement with the benefit of and solely in reliance upon the advice of such party's own attorneys.   No party to this Agreement has received any inducements, promises or representations of any kind causing any other party to make or deliver this Agreement, except as set forth in this Agreement.

17.   **Attorney Fees and Costs.**   Each party to this Agreement shall bear his, her, or its own prior attorneys' fees and costs in connection with the Litigation and in connection with the negotiation and drafting of this Agreement.   Miesen and the Hawley Troxell Defendants shall also bear his, her, and its own attorneys' fees and costs in connection with obtaining the Court's Approval Order, addressing any objections, and for any appeal(s) addressing any objections, if any.   Notwithstanding the foregoing, at the same time the Approval Motion is filed, Miesen's counsel intends to file a motion seeking an award of attorneys' fees and reimbursement of certain costs and requesting that those fees and costs be paid from the Settlement Payment after those funds have been deposited into the Court's registry (the "Fee Application Motion").   Neither this Agreement nor the Approval Order is dependent upon or contingent on whether or not the Fee Application Motion is filed, what ruling the Court issues regarding that motion, or whether the Court addresses the Fee Application Motion in conjunction with the Approval Motion.

18.   **Donna Taylor's Limited Role as a Releasor.**   Donna Taylor expressly reserves all rights and claims against AIA Services and all defendants in the DT Consolidated Case.

19.   **Representations.**

a.   Joint Representations.   Each of the parties to this Agreement represents that he, she or it: (i) has carefully read and fully understood this Agreement prior to signing and delivering it; (ii) all prior negotiations and understandings have been merged into and are contained in this Agreement and the attached Exhibits, which collectively contain the complete agreement among the parties to this Agreement; (iii) there has been no collusion (as that term is used in the settlement of derivative actions) in the negotiation, preparation and execution of this Agreement (including the attached Exhibits), the Settlement Payment, or the settlement contemplated by this Agreement; and the Settlement Payment would not have been made by the Hawley Troxell Defendants but for the Litigation; and (iv) the terms and conditions of this Agreement constitute sufficient consideration for each of the parties to enter into this Agreement (including as to the limited provisions involving Donna Taylor).

b.   Representations by the Hawley Troxell Defendants.   Hawley Troxell Defendants represent that: (i) HTEH has the power and authority to enter into this Agreement; (ii) HTEH's insurer has agreed to pay the Settlement Payment pursuant to and subject to the terms of this Agreement; and (iii) they have not entered into any arrangement or agreement with any of the Nonsettling Defendants regarding liability for any claims, allocation of fault, or contribution or indemnity regarding the Litigation.

c.   Representations by Miesen.   Miesen represents that: (i) he has not assigned or transferred any of the Claims in the Litigation; (ii) he has not transferred, encumbered, or

**SETTLEMENT AGREEMENT - 13**

assigned his common shares in AIA Services (excluding the other common shares previously held for interests of his children as reflected on certain stock ledgers)  and he has owned those shares during all relevant times for the acts and omissions at issue in the Litigation; (iii) he retains the sole and exclusive voting rights for his common shares in AIA Services; (iv) he has not colluded with any other shareholders or creditors for the negotiations and/or entry into this Agreement; and (v) he was not under any duress or other undue influence for the negotiations (including the negotiations for the amount of the Settlement Payment) or entry into this Agreement.

d.	Representations by Donna Taylor.  Donna Taylor represents that: (i) she has not assigned or transferred any of the Claims in the Litigation; (ii) she is the holder of 41,651 Series A Preferred Shares in AIA Services ("Series A") and she has owned those shares during all relevant times regarding the acts and omissions at issue in the Litigation; (iii) she has not transferred, encumbered, or assigned any of her Series A stock; (iv) she retains the sole and exclusive voting rights for her Series A stock; (v) she was not under any duress or other undue influence for the negotiations or entry into this Agreement; (vi) that AIA Services' receipt of the benefit of the Settlement Payment and the potential for some of those funds being available to be used to pay certain sums owed to her by AIA Services and/or redeem some or all of her Series A stock constitutes legally valid and sufficient consideration for her covenants and the release provisions in this Agreement that impact her; (vii) she was not represented by Miesen's undersigned counsel in connection with the negotiations and entry into this Agreement; and (viii) in connection with the negotiations and entry into this Agreement, she was assisted by advisors of her own choosing (including her independent counsel Daniel Green).

20.	**Entire Agreement.**  This Agreement contains the full agreement of the parties. No verbal or written representations, promises or conduct of any kind have been made by the parties except for the written provisions in this Agreement; and no verbal or other alleged representations, promises or conduct will be admissible or considered in connection with the interpretation of this Agreement.  This Agreement contains the full and entire agreement of the parties to this Agreement.

21.	**Modification.**  This Agreement shall not be altered, amended or modified unless through a written instrument signed by each of the undersigned parties.

22.	**Severance.**  The undersigned parties agree that, if any court severs any terms or conditions of this Agreement or the attached Exhibits 2 or 3, this Agreement and the attached Exhibits 2 and 3 shall be null and void unless the parties agree otherwise in writing signed by all of the parties.

23.	**Contractual Terms.**  All terms of this Agreement are contractual and are not mere recitals.

24.	**No Presumption against Drafter.**  This Agreement shall be given a fair and reasonable interpretation in accordance with the words in this Agreement, without consideration or weight being given to its having been drafted by any party or that party's counsel.

25.	**Incorporation of Exhibits by Reference.**  The Exhibits 1-3 attached to this Agreement are incorporated by reference into and made part of this Agreement as if included verbatim.   Those exhibits are:

**SETTLEMENT AGREEMENT - 14**

| Exhibit No. | Description |
|---|---|
| Exhibit 1 | Stipulation for and [Proposed] Scheduling Order Regarding Settlement Approval Proceedings, including Attachment A (Mailing Notice) and Attachment B (Publication Notice) |
| Exhibit 2 | [Proposed] Order Approving Settlement and Entering Final Judgment Regarding the Hawley Troxell Defendants |
| Exhibit 3 | Judgment in a Civil Action |

26.    **Counterparts.** This Agreement may be executed by the undersigned parties in separate counterparts, each of which, when so executed and delivered, shall be an original, but all such counterparts shall together constitute one and the same instrument. Each counterpart may consist of a number of copies hereof, each signed by less than all, but together signed by all, of the parties hereto. Copies of documents or signature pages bearing original signatures and executed documents or signature pages delivered by a party by facsimile or e-mail transmission of a document in PDF format shall, in each such instance, be deemed to be, and shall constitute and be treated as, an original document or counterpart, as the case may be. Any party delivering an executed counterpart of this Agreement by facsimile or e-mail transmission of a document in PDF format shall, when requested to do so by any other party, also deliver an original executed counterpart, but the failure to do so shall not affect the validity, enforceability, and binding effect of this Agreement.

27.    **Governing Law.** This Agreement shall be governed by, interpreted and construed in accordance with the laws of the State of Idaho.

IN WITNESS WHEREOF, this Agreement has been executed effective the day and year first above written.

_____
Dale L. Miesen, individually and as a Shareholder
Representative of AIA Services and AIA Insurance
May 2, 2022

APPROVED AS TO FORM:

RODERICK BOND LAW OFFICE, PLLC

_____
By:    Roderick C. Bond
       Attorney for Dale L. Miesen

SETTLEMENT AGREEMENT - 15

**Exhibit - A, p. 15**

**18-ER-4481**

ANDREW SCHWAM LAW FIRM

By:   Andrew Schwam
      Attorney for Dale L. Miesen

_____

Donna Taylor, individually and as a Shareholder
Representative of AIA Services and AIA Insurance

APPROVED AS TO FORM:

RACINE OLSON

By:   Daniel Green
      Attorney for Donna Taylor

HAWLEY TROXELL ENNIS & HAWLEY LLP

By:   Brad P. Miller
Its:  Co-Managing Partner

Richard A. Riley

D. John Ashby

Laramie Babbitt
Guardian ad Litem for Gary D. Babbitt

SETTLEMENT AGREEMENT - 16

**Exhibit - A, p. 16**

ANDREW SCHWAM LAW FIRM


By:   Andrew Schwam
      Attorney for Dale L. Miesen


Donna Taylor, individually and as a Shareholder
Representative of AIA Services and AIA Insurance

APPROVED AS TO FORM:

RACINE OLSON

By:   Daniel Green
      Attorney for Donna Taylor

HAWLEY TROXELL ENNIS & HAWLEY LLP

By:
Its:

Richard A. Riley

D. John Ashby


Laramie Babbitt
Guardian ad Litem for Gary D. Babbitt

SETTLEMENT AGREEMENT - 16

**Exhibit - A, p. 17**

**18-ER-4483**

ANDREW SCHWAM LAW FIRM

By:   Andrew Schwam
      Attorney for Dale L. Miesen

Donna Taylor, individually and as a Shareholder
Representative of AIA Services and AIA Insurance

APPROVED AS TO FORM:

RACINE OLSON

By:   Daniel Green
      Attorney for Donna Taylor

HAWLEY TROXELL ENNIS & HAWLEY LLP

By:
Its:

Richard A. Riley

D. John Ashby

x   _Laramie Babbitt_
Laramie Babbitt
Guardian ad Litem for Gary D. Babbitt

SETTLEMENT AGREEMENT - 16

**Exhibit - A, p. 18**

**18-ER-4484**

18-ER-4485

APPROVED AS TO FORM:

BYRNES KELLER CROMWELL LLP.

By:     Bradley S. Keller
        Attorney for Hawley Troxell Ennis &
        Hawley LLP, Richard A. Riley,
        D. John Ashby and Gary D. Babbitt

ELAM & BURKE, P.A.

By:     Loren C. Ipsen
        Attorney for Hawley Troxell Ennis &
        Hawley LLP, Richard A. Riley,
        D. John Ashby and Gary D. Babbitt

SETTLEMENT AGREEMENT - 17

**Exhibit - A, p. 19**

**18-ER-4485**

# EXHIBIT 1

**Exhibit - A, p. 20**
**18-ER-4486**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, et al.,<br><br>Defendants. | NO. 1:10-CV-404-DCN-CWD<br><br>**STIPULATION FOR AND [PROPOSED] SCHEDULING ORDER REGARDING SETTLEMENT APPROVAL PROCEEDINGS** |

Pursuant to Local Civil Rule 7.3, plaintiff and the Hawley Troxell Defendants[1] stipulate as follows:

1.      Subject to court approval and the express conditions precedent set forth therein, plaintiff and the Hawley Troxell Defendants have entered into a Settlement Agreement and Mutual Release effective April ___, 2022 (the "Settlement Agreement").  Because this is a shareholder derivative lawsuit, the Settlement Agreement provides for notice of the proposed settlement to be provided to the shareholders and beneficial shareholders of the AIA Entities,[2] as well as certain other persons.

---

[1]  "Hawley Troxell Defendants" refers to the following defendants:  Hawley Troxell Ennis & Hawley LLP; Gary D. Babbitt by and through his guardian ad litem, Laramie Babbitt; D. John Ashby; and Richard A. Riley.

[2]  "AIA Entities" refers to AIA Insurance, Inc. and AIA Services Corporation.

STIPULATION FOR AND PROPOSED SETTLEMENT APPROVAL SCHEDULE ORDER - 1

EXHIBIT 1 TO SETTLEMENT AGREEMENT
**Exhibit - A, p. 21**
**18-ER-4487**

2.      Both the Settlement Agreement and the applicable Federal Rules of Civil Procedure provide for there to be further court proceedings to determine whether the Settlement Agreement should be approved.  In addition, plaintiff's counsel intends to seek an award of attorneys' fees and reimbursement of certain costs from the funds that, if the proposed settlement is approved, would be deposited into the Court's registry.

3.      Plaintiff and the Hawley Troxell Defendants (collectively the "Settling Parties") stipulate that the subjoined order regarding notice of the proposed settlement and scheduling further approval and certain other proceedings may be entered.

DATED this _____ day of April, 2022.

RODERICK BOND LAW OFFICE, PLLC

By:_____
   Roderick C. Bond, ISB No. 8082

ANDREW SCHWAM LAW FIRM

By:_____
   Andrew Schwam, ISB No. 1573
***Attorneys for Plaintiff Dale L. Miesen***

ELAM & BURKE, P.A.

By:_____
   Loren C. Ipsen, ISB No. 1767

BYRNES KELLER CROMWELL LLP

By:_____
   Bradley S. Keller (*pro hac vice*)
***Attorneys for the Hawley Troxell Defendants***

### ORDER

Based upon the foregoing stipulation, the Court hereby orders as follows:

1.      Notice regarding the proposed settlement between the Settling Parties in the form attached hereto as Attachment A (the "Mail Notice") shall be provided by plaintiff to the potential equity holders of the AIA Entities by U.S. first class mail to:

    a.      Any common or preferred shareholders of record of either AIA Services Corporation ("AIA Services") or AIA Insurance, Inc. ("AIA Insurance") at their last known addresses.

STIPULATION FOR AND PROPOSED SETTLEMENT
APPROVAL SCHEDULE ORDER - 2

EXHIBIT 1 TO SETTLEMENT AGREEMENT
**Exhibit - A, p. 22**
**18-ER-4488**

b.  The Trustee of record of the AIA Services 401(K) Plan (the "Plan") and to Plan participants (i) at the addresses indicated in the most recent list of Plan participants produced in discovery in this case by AIA Services or defendant John Taylor, and (ii) to any different or additional addresses for Plan participants provided by the Hawley Troxell Defendants' counsel.

c.  The last Trustee of record of the earlier AIA Services ESOP (the "ESOP") and to the former ESOP participants (i) at the addresses for them in the last known ESOP participants list and/or shareholder list produced in discovery in this case by AIA Services or defendant John Taylor, and (ii) to any different or additional addresses for former ESOP participants provided by the Hawley Troxell Defendants' counsel.

2.  The Mail Notice shall also be sent by the Hawley Troxell Defendants via U.S. first class mail to the following potential creditors of AIA Services and AIA Insurance:

a.  Those creditors shown on the most recent AIA Services' Balance Sheet or list of account payables produced in the case by AIA Services or John Taylor.

b.  The state agency in each of the following states (the "Potential Escheat States") to which unclaimed funds escheat:  Texas, Arkansas, Minnesota, South Dakota, Utah, and Wyoming.

3.  A short-form version of the notice in the form attached hereto as Attachment B (the "Publication Notice") shall be published as follows:

a.  Plaintiff shall arrange for publication in the Lewiston Tribune.

STIPULATION FOR AND PROPOSED SETTLEMENT
APPROVAL SCHEDULE ORDER - 3
EXHIBIT 1 TO SETTLEMENT AGREEMENT
**Exhibit - A, p. 23**
**18-ER-4489**

b.    The Hawley Troxell Defendants shall arrange for publication in a daily newspaper with significant circulation in each of the Escheat States.

c.    The Publication Notice shall be 1/4 page and, with the exception of Texas, shall be published on a single weekday during two consecutive weeks. The Texas Publication Notice shall be published on a single weekday.

4.    The following schedule will govern further proceedings regarding whether the Court should approve the Settlement Agreement and enter a final Rule 54(b) Judgment dismissing with prejudice any claims against the Hawley Troxell Defendants:

| Event | Date |
|---|---|
| | |
| | |
| Date by which Motion to Approve Settlement ("Approval Motion") shall be filed | May 31, 2022 |
| Date by which any motion for an award of fees or cost reimbursement by plaintiff shall be filed ("Fee Motion") | May 31, 2022 |
| Date by which mailing of Mail Notice is to be completed | June 15, 2022 |
| Date by which publication of Publication Notice is to be completed | June 15, 2022 |
| Date by which any objections to or opposition to either the Approval Motion or the Fee Motion shall be filed | July 8, 2022 |
| Date by which any reply briefs regarding either the Approval Motion or the Fee Motion shall be filed | July 20, 2022 |
| Court hearing regarding Approval Motion and Fee Motion | _____ |

STIPULATION FOR AND PROPOSED SETTLEMENT
APPROVAL SCHEDULE ORDER - 4

EXHIBIT 1 TO SETTLEMENT AGREEMENT
**Exhibit - A, p. 24**
**18-ER-4490**

18-ER-4491

5.      The following pending motions shall be held in abeyance pending the outcome of the above approval proceedings regarding the Proposed Settlement:  the motions filed under Docket Nos. 1067, 1077 and 1148.

DATED this _____ day of April, 2022.


_____
United States District Judge

# ATTACHMENT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc., <br><br> Plaintiff, <br><br> v. <br><br> CONNIE TAYLOR HENDERSON, et al., <br><br> Defendants. | NO. 1:10-CV-404-DCN <br><br> **NOTICE OF PROPOSED SETTLEMENT OF SHAREHOLDER DERIVATIVE ACTION AND OF HEARING** |

**TO:    ALL PERSONS AND ENTITIES WHO HOLD OF RECORD OR BENEFICIALLY OWN PREFERRED OR COMMON STOCK OF AIA SERVICES CORPORATION OR AIA INSURANCE, INC. AS OF _____**

**TO:    ALL UNPAID CREDITORS OF AIA SERVICES CORPORATION OR AIA INSURANCE, INC.**

*THIS NOTICE CONCERNS A PROPOSED SETTLEMENT OF CERTAIN CLAIMS IN THE ABOVE-CAPTIONED SHAREHOLDER DERIVATIVE ACTION AND CONTAINS IMPORTANT INFORMATION ABOUT YOUR POTENTIAL RIGHTS CONCERNING THE LAWSUIT.  THIS NOTICE IS NOT AN EXPRESSION OF ANY OPINION BY THE COURT AS TO THE MERITS OF ANY CLAIMS OR DEFENSES IN THE LAWSUIT. THE STATEMENTS IN THIS NOTICE ARE NOT FINDINGS OF THE COURT*

All shareholders and creditors of both AIA Services Corporation ("AIA Services") and AIA Insurance, Inc. ("AIA Insurance") are hereby notified that, subject to among other things court approval, a settlement (the "Settlement Agreement") has been reached regarding certain claims asserted in a shareholder derivative action pending in Idaho federal court (the "Action"). The Action was brought against certain current and former officers and directors (the "O&D Defendants") of AIA Services and AIA Insurance (collectively the "AIA Entities") and a law firm and certain attorneys (the "Professional Defendants") who previously represented AIA

EXHIBIT 1 ATTACHMENT A
**Exhibit - A, p. 27**
**18-ER-4493**

Services and/or AIA Insurance regarding certain matters.  If approved, the settlement would release only the claims against the Professional Defendants.  The claims being made against the O&D Defendants have not been resolved.

A hearing on the settlement of the claims against the Professional Defendants will be held on _____, 2022, at _____ MT (the "Fairness Hearing") before U.S. District Judge David C. Nye, either in person at the United States District Court for the District of Idaho, James A. McClure Building and United States Courthouse, 550 W. Fort Street, Boise, Idaho 83724, or by telephone or videoconference (in the discretion of the Court).

At the Fairness Hearing, the Court will determine (i) whether to approve the proposed settlement as fair, reasonable and adequate and in the best interests of the AIA Entities and its shareholders, and (ii) whether to enter a final judgment dismissing the claims in the Action against the Professional Defendants on the merits and with prejudice, enjoining the prosecution of certain claims against the Professional Defendants, and releasing the Professional Defendants and certain other individuals and entities (as defined in the Settlement Agreement).

Plaintiff's counsel also is requesting an award of attorneys' fees and reimbursement of certain costs to be paid out of the settlement funds.  That request (the "Fee Application") will be heard by the Court at the same time as the Fairness Hearing.

The Court may, in its discretion, change the date and/or time of the Fairness Hearing or the hearing on the Fee Application without further notice to you.  If you intend to attend the Fairness Hearing or the Fee Application hearing, you should confirm the date and time of the hearing.

The Action was pursued by plaintiff Dale Miesen ("Plaintiff") on behalf of the AIA Entities.  If approved, the settlement will result in $1.4 million being deposited into the Court's registry to be disbursed subject to further Court order(s).

This Notice is not an expression by the Court as to the merits of any claim or defense asserted in the Action.

## SUMMARY OF THE ACTION

The Action arises from a number of transactions and dealings concerning the AIA Entities beginning in the late 1990s.  The Third Amended Complaint (the "TAC") alleges, among other things, that the O&D Defendants[1] had conflicts of interest, allegedly engaged in improper self-dealing, and breached fiduciary and other legal duties they owed the AIA Entities and their shareholders.  The TAC also alleges, among other things, that the Professional Defendants[2] were negligent, breached fiduciary duties, and engaged in other allegedly wrongful conduct regarding the legal services they provided, and that they aided and abetted the O&D Defendants' alleged wrongful conduct.  The TAC also alleges that all defendants wrongfully conspired to engage in certain transactions that Plaintiff claims harmed the AIA Entities.

---

[1] The O&D Defendants are R. John Taylor, Connie Henderson, James Beck, and Michael Cashman.

[2] The Professional Defendants are the law firm Hawley Troxell Ennis and Hawley LLP and several of its current or former attorneys.

EXHIBIT 1 ATTACHMENT A
**Exhibit - A, p. 28**
**18-ER-4494**

Plaintiff seeks damages on behalf of the AIA Entities and disgorgement of fees the AIA Entities paid the Professional Defendants and others. This notice is intended to provide only a summary of the claims in the TAC. Shareholders and others are advised to review the TAC for its full content. A copy of the TAC can be obtained by requesting one from counsel identified below.

Both the O&D Defendants and the Professional Defendants expressly deny all assertions of wrongdoing or liability in the Action, and they have vigorously disputed and defended Plaintiff's claims on multiple grounds for over ten years. The Professional Defendants, among other things, contend that the legal services they provided materially benefitted the AIA Entities and shareholders, that any potential conflicts of interest on their part were appropriately addressed, that they had no involvement in most of the transactions Plaintiff claims harmed the AIA Entities and did not even know about many of them and, in any event, that most of Plaintiff's claims are time-barred.

The Action has been pending since August 2010. Extensive document, deposition, and other discovery has occurred. The Professional Defendants filed a motion seeking summary judgment dismissal of all of Plaintiff's claims (the "Professional SJ Motion"). That motion was pending and undecided when the proposed settlement was negotiated. The O&D Defendants also filed a motion seeking summary judgment dismissal of some of Plaintiff's claims (the "O&D SJ Motion") which also is pending and undecided. A copy of the Professional SJ Motion and/or the O&D SJ Motion can be obtained by requesting them from counsel identified below.

## THE SETTLEMENT TERMS

If approved, the settlement would result in a payment of $1.4 million (the "Settlement Payment") by the Professional Defendants' insurer. The Settlement Payment would be deposited into the Court's registry. Any further disbursement of the funds would be only by further Court order(s). In the Fee Application, Plaintiff is asking that his counsel be awarded attorneys' fees and that those fees and certain litigation-related costs be paid from the Settlement Payment (see discussion below regarding "Attorneys' Fees and Expenses").

The Settlement Agreement, if approved, will result in a release of claims against the Professional Defendants and an injunction barring the prosecution of derivative claims against the Professional Defendants as explained below.

The Settlement Agreement, its exhibits, and the Court's prior order scheduling the Fairness Hearing and the Fee Application hearing, can be obtained by requesting them from counsel identified below.

## EFFECT OF COURT APPROVAL ON THE SETTLEMENT AGREEMENT

If the Court finds that the Settlement Agreement is fair, reasonable and adequate and in the best interests of the AIA Entities and its shareholders, the Court will enter an order and a final judgment approving the settlement with the Professional Defendants. Under that order and the judgment, Plaintiff and all other holders of record or beneficial owners of stock in either of the AIA Entities, as well as any other persons or entities who could maintain a derivative claim on behalf of the AIA Entities, will release the individuals and entities identified as "Releasees" consistent with the terms of the release provisions in the Settlement Agreement. If the Court's

EXHIBIT 1 ATTACHMENT A
Exhibit - A, p. 29
18-ER-4495

approval order becomes final and no longer subject to appellate review, it will release and extinguish all derivative claims that were or could have been asserted against the Professional Defendants (and the other Releasees) to the extent those claims arise from or relate in any way to any of the transactions and dealings concerning the AIA Entities that were at issue in the Action. Those transactions and dealings include, among other things, an alleged "spin off" of Crop USA Insurance Agency, Inc. ("Crop USA") in 2000/2001, a company that marketed and sold crop insurance, transactions and dealings between Crop USA and the AIA Entities and the O&D Defendants, the defense (including legal services provided by the Professional Defendants) of certain prior lawsuits brought against the AIA Entities and certain of their officers and directors, transactions between some of the O&D Defendants and the AIA Entities, certain loans for which assets of the AIA Entities were pledged as collateral, and a number of other transactions that the TAC alleges were wrongful and Plaintiff claims caused financial injury to the AIA Entities and their shareholders (collectively the "Transactions").

The release of the Professional Defendants (and other Releasees) also includes a release of claims concerning the Transactions that the AIA Entities and its shareholders do not know or suspect exist at the time of the release, and which, if known, might have affected the decision(s) to enter into the settlement.

In addition, the Settlement Agreement, if approved, will enjoin the prosecution of derivative claims and any claims by the AIA Entities against the Professional Defendants (and other Releasees) related to or arising from or related to any of the Transactions or any other claims that could have been brought in the Action.  If approved, the Settlement Agreement also has provisions intended to protect the Professional Defendants and insulate them from potential contribution or indemnity claims by the O&D Defendants and others.

The Court has not made (and will not make) any determination as to the merits of any claims in the TAC against the Professional Defendants or their defenses.  This notice does not imply that any of the Professional Defendants would be found liable or that any relief against them would be awarded if the claims against them were not being settled.

## EFFECT OF COURT DISAPPROVAL OF THE SETTLEMENT

If the Agreement is not approved, then the Settlement Agreement will be void and of no effect, and Plaintiff and the Professional Defendants will be restored to their respective positions in the Action that they held before the Settlement Agreement was executed.  Among other things, the Court would proceed to address the merits of the pending Professional SJ Motion, as well as a number of other pending motions.

## ATTORNEYS' FEES AND EXPENSES

Neither the Settlement Agreement nor Court approval of the settlement is conditioned on whether Plaintiff's counsel is awarded any attorneys' fees or reimbursement of expenses. Plaintiff is filing a Fee Application seeking an award of attorneys' fees in the amount of $560,000 (40 percent of the Settlement Payment) and reimbursement of $398,787 of expenses. Plaintiff is asking in the Fee Application that those amounts be paid from the Settlement Payment after it has been deposited into the Court's registry.  Any fees or cost reimbursement

EXHIBIT 1 ATTACHMENT A
**Exhibit - A, p. 30**
**18-ER-4496**

awarded will reduce the amount of the Settlement Payment available for subsequent distribution to the AIA Entities' shareholders or for the benefit of the AIA Entities.

## YOUR RIGHT TO OBJECT AND TO APPEAR

**The Fairness Hearing.** If you agree that the proposed settlement with the Professional Defendants should be approved as fair, reasonable and adequate and in the best interests of the AIA Entities and their shareholders, you do not need to do anything regarding the Fairness Hearing. However, if you wish to object to either (i) the fairness, reasonableness or adequacy of the proposed settlement, or (ii) to any term(s) of the Settlement Agreement, then you may submit a written objection on your own (or through an attorney you hire at your own expense), and you (or your attorney, if you have hired one) may appear at the Fairness Hearing.

**The Fee Application.** If you agree that the attorneys' fees and expenses requested by Plaintiff's counsel are reasonable and appropriate, you do not need to do anything regarding the Fee Application. However, if you wish to object to the attorneys' fees or expenses sought by Plaintiff's counsel, then you may submit a written objection on your own (or through an attorney you hire at your own expense), and you (or your attorney, if you have hired one) may appear at the hearing on the Fee Application (the "Fee Application Hearing.")

**How to Object.** Any objections to either Court approval of the settlement or the Fee Application motion should (i) be in writing and refer to the Action's name and cause number, which is *Dale L. Miesen v. Connie Henderson, et al.*, No. 1:10-cv-404-DCN, (ii) state the basis for or grounds for the objection, (iii) indicate whether you plan to appear at the hearing, (iv) be filed with the Court, and (v) a copy should be provided to the counsel identified below.

**Any objection must be served and filed with the Court (and received by *all* the below counsel) no later than July 8, 2022.**

If you do not meet the deadlines or follow the procedures set forth above, your objection(s) will not be considered by the Court (unless the Court otherwise determines), and neither you nor your attorney (if you hire one) will be allowed to appear at the Fairness Hearing or the Fee Application Hearing. In addition to filing them with the Court, submissions objecting to either the proposed settlement or the Fee Application should also be sent to counsel as follows:

| *Counsel for Plaintiff* | *Counsel for Professional Defendants* |
|---|---|
| RODERICK BOND LAW OFFICE, PLLC | BYRNES KELLER CROMWELL LLP |
| Roderick C. Bond, ISB No. 8082 | Bradley S. Keller (pro hac vice) |
| 10900 NE 4th Street, Suite 2300 | 1000 Second Avenue, 38th Floor |
| Bellevue, WA 98004 | Seattle, WA 98104 |
| Telephone: (425) 591-6903 | Telephone: (206) 622-2000 |
| rod@roderickbond.com | bkeller@byrneskeller.com |

EXHIBIT 1 ATTACHMENT A
**Exhibit - A, p. 31**
**18-ER-4497**

ANDREW SCHWAM LAW FIRM
Andrew Schwam, ISB No. 1573
705 SW Fountain Street
Pullman, WA  99163
Telephone:  (208) 874-3684
amschwam@turbonet.com

ELAM & BURKE, P.A.
Loren C. Ipsen, ISB No. 1767
251 East Front Street, Suite 300
Boise, ID 83701
Telephone:  (208) 343-5454
lci@elamburke.com

## **QUESTIONS REGARDING THE PROPOSED SETTLEMENT**

*Please do not write or telephone the Court about the proposed Settlement Agreement.* If you have any questions you should contact either Plaintiff's counsel or the Professional Defendants' counsel, both of whose contact information is set out above.

DATED this _____ day of _____, 2022.

BY ORDER OF THE COURT:

_____
The Honorable David Nye
United States District Judge

EXHIBIT 1 ATTACHMENT A
**Exhibit - A, p. 32**
**18-ER-4498**

# ATTACHMENT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and AIA Insurance, Inc.,<br><br>                       Plaintiff,<br><br>   v.<br><br>CONNIE TAYLOR HENDERSON, et al.,<br><br>                    Defendants. | NO. 1:10-CV-404-DCN<br><br>**NOTICE OF (I) PROPOSED DERIVATIVE SETTLEMENT; AND (II) HEARINGS ON SETTLEMENT FAIRNESS AND MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES** |

**TO:   ALL PERSONS AND ENTITIES WHO HOLD OF RECORD OR BENEFICIALLY OWN PREFERRED OR COMMON STOCK OF AIA SERVICES CORPORATION OR AIA INSURANCE, INC. AS OF**

_____

**TO:   ALL UNPAID CREDITORS OF AIA SERVICES CORPORATION OR AIA INSURANCE, INC.**

PLEASE READ THIS NOTICE CAREFULLY.  YOUR RIGHTS MAY BE AFFECTED BY A DERIVATIVE ACTION LAWSUIT PENDING IN THIS COURT

YOU ARE HEREBY NOTIFIED, pursuant to an Order of the United States District Court for the District of Idaho (the "Court"), that (i) the above-captioned litigation (the "Action") is pending in the Court, and (ii) certain (but not all) parties have reached a proposed settlement that, if approved, would result in $1.4 million being deposited into the Court's registry for the benefit of AIA Services Corporation and AIA Insurance, Inc. (collectively the "AIA Entities") and subsequently disbursed pursuant to further Court order(s).

A hearing will be held on _____ at \_\_\_ Mountain Time, before the Honorable David C. Nye either in person at the United States District Court for the District of Idaho, James A. McClure Building, 550 W. Fort Street, Boise, ID  83724, or by telephone or videoconference (in the discretion of the Court).  At the hearing, the Court will determine whether:  (i) the proposed settlement is fair, reasonable and adequate and in the best interests of the AIA Entities and their shareholders; and (ii) whether to enter a final judgment dismissing any claims against the settling defendants, enjoining further derivative claims against the settling defendants

EXHIBIT 1 ATTACHMENT B
**Exhibit - A, p. 34**
**18-ER-4500**

regarding certain transactions and dealings, and releasing them (and certain other persons and entities) to the extent set forth in a Settlement Agreement.

The proposed settlement is not conditioned or dependent on plaintiff's counsel being awarded any attorneys' fees or expenses. Plaintiff's counsel has requested an award of $560,000 for attorneys' fees and reimbursement of $398,787 of expenses to be paid from the settlement payment.

**If you are a holder of record or beneficial owner of stock in either of the AIA Entities, or if you would otherwise potentially have the ability to bring a derivative claim on behalf of either of the AIA Entities, your rights will be affected by the settlement.**

Any objections to either (i) the proposed settlement, or (ii) plaintiff's counsel's request for an award of attorneys' fees and litigation expenses, must be filed with the Court such that they are **received no later than July 8, 2022**. Further instructions regarding how to file objections can be obtained from the below counsel.

Do not contact the Court or the Clerk's office regarding this notice. All questions about this notice, requests for a copy of the Settlement Agreement, requests for any pleadings, and all other inquiries should be made to the below counsel:

| *Counsel for Plaintiff* | *Counsel for Settling Defendants* |
|---|---|
| RODERICK BOND LAW OFFICE, PLLC | BYRNES KELLER CROMWELL LLP |
| Roderick C. Bond, ISB No. 8082 | Bradley S. Keller (pro hac vice) |
| 10900 NE 4th Street, Suite 2300 | 1000 Second Avenue, 38th Floor |
| Bellevue, WA 98004 | Seattle, WA 98104 |
| Telephone: (425) 591-6903 | Telephone: (206) 622-2000 |
| rod@roderickbond.com | bkeller@byrneskeller.com |

BY ORDER OF THE COURT:
UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

EXHIBIT 1 ATTACHMENT B
**Exhibit - A, p. 35**
**18-ER-4501**

Case 1:10-cv-00404-DCN-CWD   Document 1242-3   Filed 08/18/22   Page 36 of 47

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

DALE L. MIESEN, an individual who is a
shareholder and who is also bringing this action
on behalf of and/or in the right of AIA Services
Corporation and its wholly owned subsidiary
AIA Insurance, Inc.,

Plaintiff,

v.

CONNIE TAYLOR HENDERSON, et al.,

Defendants.

NO. 1:10-CV-404-DCN

**[PROPOSED] ORDER APPROVING
SETTLEMENT AND ENTERING
FINAL JUDGMENT REGARDING THE
HAWLEY TROXELL DEFENDANTS**

WHEREAS plaintiff Dale L. Miesen ("Plaintiff"), individually and as a shareholder

asserting derivative claims on behalf of defendants AIA Services Corporation ("AIA Services")

and its subsidiary AIA Insurance, Inc. ("AIA Insurance"), and defendants Hawley Troxell Ennis

& Hawley LLP, Gary D. Babbitt (through his guardian ad litem), D. John Ashby, and Richard A.

Riley (collectively the "Hawley Troxell Defendants" or "HTEH") have entered into a Settlement

Agreement and Mutual Release effective April ___, 2022 (the "Settlement Agreement") that,

subject to satisfaction of certain express conditions precedent, would settle any and all

shareholder claims that were or could have been asserted against HTEH in this case (and,

through principles of res judicata and release, any derivative claims regarding certain matters

against any Releasee, as defined in the Settlement Agreement); and

[PROPOSED] ORDER APPROVING SETTLEMENT
AND JUDGMENT - 1

EXHIBIT 2 TO SETTLEMENT AGREEMENT

**Exhibit - A, p. 37**
**18-ER-4503**

WHEREAS, on _____, the Court entered a Scheduling Order Regarding Settlement Approval Proceedings ("Approval Scheduling Order") (Dkt. __) in which the Court ordered, among other things, that (i) Mailing Notice and Publication Notice be provided to the extent set forth therein to shareholders, potential beneficial shareholders, and potential creditors of AIA Services and AIA Insurance (collectively the "AIA Entities"), (ii) that an Approval Hearing be scheduled, and (iii) that all persons receiving notice, as well as the parties in this case, be provided with an opportunity to object to the proposed Settlement Agreement and/or to appear at the Approval Hearing; and

WHEREAS the Court held the Approval Hearing on _____ to determine, among other things, whether to approve the Settlement Agreement and enter a Rule 54(b) final judgment dismissing with prejudice any claims against the Hawley Troxell Defendants;

NOW, THEREFORE, based on the submissions of Miesen and HTEH (collectively the "Settling Parties"), and after giving due consideration to any objections and other submissions received, and on this Court's Findings of Fact and Conclusions of Law, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1.     **Incorporation of Settlement Agreement**.  To the extent that definitions for any defined terms do not appear in this Order Approving Settlement and Entering Final Judgment Regarding the Hawley Troxell Defendants (the "Approval Order"), this Court adopts and incorporates the definitions in the Settlement Agreement.

2.     This Approval Order incorporates and makes a part hereof:

a.     The Settlement Agreement; and

b.     Exhibits 1 through 3 thereto.

[PROPOSED] ORDER APPROVING SETTLEMENT
AND JUDGMENT - 2

EXHIBIT 2 TO SETTLEMENT AGREEMENT

**Exhibit - A, p. 38**
**18-ER-4504**

3.      **Jurisdiction.**  The Court has personal jurisdiction over all of the shareholders of record and beneficial shareholders of the AIA Entities (collectively the "Securities Holders") in connection with the shareholder derivative claims that were or could have been asserted in this case, and the Court has subject-matter jurisdiction over this case, including jurisdiction to, among other things, approve the Settlement Agreement and dismiss with prejudice all claims against HTEH in this action.

4.      **Adequacy of Plaintiff and Plaintiff's Counsel.**  Plaintiff Miesen held stock in AIA Services continuously at all times relevant to this case and otherwise has standing to prosecute derivative claims on behalf of the AIA Entities and their shareholders of record and beneficial shareholders("Securities Holders").  Plaintiff Miesen and his counsel have adequately represented the interests of other Securities Holders and the AIA Entities' interests with respect to and for the purpose of entering into and implementing the Settlement Agreement.

5.      **Proof of Notice.**  The Settling Parties have filed with the Court adequate proof that Mailing Notice and Publication Notice materially consistent with the directives in the Approval Scheduling Order has been given.

6.      **Notice to Securities Holders.**  The Court finds that the Mailing Notice and the Publication Notice provided to Securities Holders regarding the Settlement Agreement was simply written and readily understandable and that the notice and notice methodology (i) constituted the best practicable notice, (ii) were reasonably calculated, under the circumstances, to apprise Securities Holders of the pendency of this action, the claims asserted, the terms of the proposed settlement, and Securities Holders' right to object to the proposed settlement and to appear at the Approval Hearing, (iii) were reasonable and constituted due, adequate and sufficient notice to all of AIA Services' Securities Holders potentially entitled to receive notice,

[PROPOSED] ORDER APPROVING SETTLEMENT
AND JUDGMENT - 3

EXHIBIT 2 TO SETTLEMENT AGREEMENT

Exhibit - A, p. 39
18-ER-4505

and (iv) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.

7.      **Notice to Creditors of AIA Entities.**  Notice and an opportunity to object regarding settlement of a shareholder derivative claim is typically only required to be given to shareholders and beneficial shareholders.  Whether required or not, because there remain unpaid creditors of the AIA Entities, the Settlement Agreement required that  certain efforts be made to provide notice of the settlement to known potential creditors of the AIA Entities.  The notice provided to potential creditors was simply written and readily understandable and the notice and notice methodology (i) constituted the best practicable notice, (ii) were reasonably calculated, under the circumstances, to apprise potential creditors of the pendency of this action, the claims asserted, the terms of the proposed settlement, and their potential right to object to the proposed settlement and appear at the Approval Hearing, (iii) were reasonable and constituted due, adequate and sufficient notice to such persons, and (iv) met any applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.

8.      **Final Settlement Approval.**  The terms and provisions of the Settlement Agreement have been entered into in good faith and the settlement amount is the same amount suggested by an experienced Ninth Circuit Court of Appeals mediator.  The terms and provisions of the Settlement Agreement are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of, the AIA Entities and Securities Holders, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United

[PROPOSED] ORDER APPROVING SETTLEMENT
AND JUDGMENT - 4

EXHIBIT 2 TO SETTLEMENT AGREEMENT

Exhibit - A, p. 40
18-ER-4506

States Constitution (including the Due Process Clause), Sections ___ of the Idaho Code, and the Rules of this Court, and any other applicable law.

9.      **Implementation of the Agreement.**  The Settling Parties and their counsel are directed to implement and consummate the Settlement Agreement according to its terms and conditions.  If the remaining conditions precedent in Paragraph 15 of the Settlement Agreement are satisfied, the Settlement Payment shall be paid into the Court's registry, and any further disbursement of those funds from the Court's registry shall only be pursuant to further order(s) issued by the Court.

10.      **Binding Effect.**  The Settlement Agreement and this Approval Order shall be forever binding on the Releasors and Releasees as to all released Claims, and as to any claims the Hawley Troxell Defendants have against Miesen, Donna Taylor, their respective litigation counsel, or the AIA Entities.  As to all of the Releasors Claims against Releasees, this Approval Order shall have *res judicata* and other preclusive effect in any future lawsuits or other proceedings maintained by or on behalf of the AIA Entities; *provided however*, that this Approval Order shall not affect Releasors claims in this or any other case against any Nonsettling Defendants.

11.      **Releases and Waivers.**  The releases set forth in Paragraphs 3 and 4 of the Settlement Agreement and its relevant definitions are expressly incorporated herein in all respects and shall be deemed a part of this order as if fully set forth herein.  The releases shall be effective if/when the Conditions Precedent in Paragraph 15 of the Settlement Agreement are satisfied.  The Settling Parties agree and acknowledge that the provisions of the releases constitute essential terms of the Settlement Agreement.  Nothing herein shall in any way impair

or restrict the rights of any Settling Party to enforce the terms of the Settlement Agreement or this Approval Order.

12.     **Permanent Injunction.**  The Court hereby permanently bars and enjoins all Securities Holders, any of their respective representatives, trustees, successors, heirs, agents, and assigns, and anyone else purporting to act on behalf of or derivatively for the AIA Entities, from filing, commencing, prosecuting, intervening in, participating in or receiving any benefits or other relief from any other lawsuit, or other proceeding against the Hawley Troxell Defendants in any jurisdiction or forum based on or relating to any claims regarding the Transactions that may be brought in a derivative capacity; *provided however*, that nothing in this permanent injunction granted by the Court shall bar (i) the AIA Entities or a Securities Holder acting on behalf of the AIA Entities from asserting claims regarding such Transactions against the Nonsettling Defendants in this or any other judicial or other proceeding, or (ii) any appropriate shareholder or the AIA Entities from asserting claims that have not been released, or (iii) Donna Taylor from continuing to pursue her claims against the defendants in the Donna Taylor Consolidated Cases, Nez Perce County District Court Case Nos. CV-2008-1150 and CV-2013-1075.

13.     **Potential Contribution and Indemnity Claims.**  The Court finds that the Settlement Agreement represents a good-faith settlement of all released Claims sufficient to discharge the Releasees from Releasors' released Claims.  To effectuate such settlement, the provisions in Paragraph 6 of the Settlement Agreement regarding potential contribution and indemnity claims against Releasees and any subsequent settlements are expressly incorporated herein in all respects and shall be deemed a part of this order as if fully set forth herein.  If any provision of paragraph 6 of the Settlement Agreement is subsequently held to be unenforceable,

[PROPOSED] ORDER APPROVING SETTLEMENT
AND JUDGMENT - 6

EXHIBIT 2 TO SETTLEMENT AGREEMENT

such provision shall be substituted with such other provision as may be necessary to afford all of the Releasees the fullest protection permitted by law from any claim that arises out of or relates to any released Claim belonging to the AIA Entities, or that seeks indemnification or contribution in connection with any such matters or claims.

14.     **No Admissions.**   None of the Settlement Agreement, this Approval Order, any of the provisions of the Settlement Agreement, the negotiation of the Settlement Agreement, the statements or court proceedings relating to the Settlement Agreement, any document referred to in this Approval Order, any action taken to carry out this Approval Order, or any prior Orders in this case shall be (i) construed as, offered as, received as, used as or deemed to be evidence of any kind in this or any other judicial, administrative, regulatory or other proceeding or action, or (ii) construed as, offered as, received as, used as or deemed to be evidence of an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, without limitation, the AIA Entities and HTEH; provided however, that this Approval Order and the Settlement Agreement may be used as evidence of the terms of the Settlement Agreement or to enforce the provisions of this Approval Order and Judgment or the Settlement Agreement; provided further that this Approval Order and the Settlement Agreement may be filed in any action against or by (or on behalf of) the AIA Entities or other Releasees to support a defense of *res judicata*, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim.

15.     **Enforcement of Settlement.**   Nothing in this Approval Order shall preclude any action to enforce the terms of the Settlement Agreement.

[PROPOSED] ORDER APPROVING SETTLEMENT
AND JUDGMENT - 7
EXHIBIT 2 TO SETTLEMENT AGREEMENT

16.     **Ruling Regarding Fee Application Motion.**  With respect to the Fee Application Motion, the Court rules in conformance with the findings and order regarding the application for fees and costs that

17.     **Modification of Agreement.**  The Settling Parties are hereby authorized, without further notice to or approval by the Court, to agree to and adopt such amendments, modifications and expansions of the Agreement and its implementing documents (including all exhibits to the Agreement) that are not materially inconsistent with this Approval Order and do not limit the rights of the AIA Entities, Securities Holders, or any Releasees under the Agreement.

18.     **Retention of Jurisdiction.**  The Court has jurisdiction to enter this Approval Order.  Without in any way affecting the finality of this Approval Order, the District Court expressly retains exclusive and continuing jurisdiction over the Settlement Agreement, further disbursement of the Settlement Payment from the Court's registry, the Settling Parties, all Securities Holders and all Releasees to adjudicate all issues relating to this Settlement Agreement, including, without limitation, any issues relating to this Approval Order.  Any action arising under or to enforce the Settlement Agreement or this Approval Order shall be commenced and maintained only in the District Court for the District of Idaho.

19.     **Dismissal of Action.**  The claims asserted against the Releasees in this case are hereby dismissed on the merits and with prejudice, without fees or costs to any party except as otherwise provided in this Approval Order.

20.     **Entry of Judgment.**  There is no just reason to delay the entry of this Approval Order and the Rule 54(b) Final Judgment, and immediate entry by the Clerk of Court is expressly directed pursuant to Federal Rule of Civil Procedure 54(b).

[PROPOSED] ORDER APPROVING SETTLEMENT
AND JUDGMENT - 8

EXHIBIT 2 TO SETTLEMENT AGREEMENT

DATED this _____ day of _____, 2022.


_____
United States District Judge

[PROPOSED] ORDER APPROVING SETTLEMENT
AND JUDGMENT - 9

EXHIBIT 2 TO SETTLEMENT AGREEMENT

**Exhibit - A, p. 45**
**18-ER-4511**

# EXHIBIT 3

**Exhibit - A, p. 46**
**18-ER-4512**

AO 450 (Rev. 11/11)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Idaho     _____

| | |
|---|---|
| DALE L. MIESEN, | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   1:10-cv-404-DCN |
| CONNIE TAYLOR HENDERSON, et al., | ) |
| *Defendant* | ) |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐ the plaintiff *(name)* _____ recover from the defendant *(name)* _____ the amount of _____ dollars ($ _____ ), which includes prejudgment interest at the rate of _____ %, plus post judgment interest at the rate of _____ % per annum, along with costs.

☐ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____ recover costs from the plaintiff *(name)* _____ _____ .

☒ other: IT IS ORDERED and ADJUDGED that pursuant to the findings, terms, and conditions of this Court's Order Approving Settlement and Entering Final Judgment Regarding the Hawley Troxell Defendants (ECF No. \_\_\_), the Settlement Agreement as set forth therein is approved, and final judgment pursuant to Rule 54(b) is hereby entered dismissing with prejudice all claims against the Hawley Troxell Defendants. .

This action was *(check one)*:

☐ tried by a jury with Judge _____ presiding, and the jury has rendered a verdict.

☐ tried by Judge _____ without a jury and the above decision was reached.

☒ decided by Judge   Nye _____ on a motion for approval of the Hawley Troxell Defendants settlement. .

Date: _____        *CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*

EXHIBIT 3 TO SETTLEMENT AGREEMENT
**Exhibit - A, p. 47**
**18-ER-4513**

Case 1:10-cv-00404-DCN-CWD   Document 1242-4   Filed 08/18/22   Page 1 of 4

AIA SERVICES CORPORATION
AND SUBSIDIARY

Consolidated Financial Statements

December 31, 2021 and December 31, 2020

**Exhibit - B, p. 1**

**18-ER-4514**

## AIA SERVICES CORPORATION AND SUBSIDIARY

### Consolidated Balance Sheet

| Assets | | December 31, 2021 | | December 31, 2020 |
|---|---|---|---|---|
| Cash and cash equivalents | $ | 552 | $ | 2,068 |
| Accounts receivable and agent advances | | 82,720 | | 112,473 |
| Investment in Pacific Empire Radio | | 1,503,581 | | 1,545,591 |
| Due from GemCap | | | | 65,000 |
| Total Assets | $ | 1,586,852 | $ | 1,725,132 |

| Liabilities: | | | |
|---|---|---|---|
| Accounts payable and accrued commissions | | 319,061 | 207,835 |
| Accrued wages | | 695,563 | 695,563 |
| ULIC settlement payable | | 425,116 | 425,116 |
| Due to John Taylor | | 637,998 | 586,295 |
| Due to Syringa Bankother mtges | | 47,588 | 47,589 |
| Due Washington Bank Properties | | 40,000 | 40,000 |
| New Mexico claim | | 23,531 | 23,531 |
| Esop Puts | | 22,951 | 22,951 |
| Deferred Taxes | | | 5,000 |
| Total liabilities | | 2,211,808 | 2,053,881 |

| | | | |
|---|---|---|---|
| Series A preferred stock | | 874,010 | 799,010 |
| Series C convertible preferred stock | | 92,500 | 92,500 |
| Common stock | | 16,478 | 16,478 |
| Additional paid-in capital | | (49,703) | (49,703) |
| Accumulated earnings | | (1,558,241) | (1,187,033) |
| Total stockholders' equity | | (624,956) | (328,748) |

| | | | |
|---|---|---|---|
| Total liabilities and stockholders' equity | $ | 1,586,852 | 1,725,133 |

**Exhibit - B, p. 2**

**18-ER-4515**

### AIA SERVICES CORPORATION AND SUBSIDIARY

**Consolidated Statement of Operations**

|  | December 31, 2021 | December 31, 2021 |
|---|---|---|
| **Revenues:** | | |
| Commissions | $              50,932 | $              59,344 |
| Management Fees , Net Rents | - | 3,539 |
| Total revenues | 50,932 | 62,883 |
| **Expenses:** | | |
| General and administrative expense | 147,764 | 80,478 |
| Commission expense | 668 | 609 |
| Legal and Professional Fees | 217,183 | 175,658 |
| Total operating expenses | 365,614 | 256,745 |
| **Operating income:** | (314,683) | (193,862) |
| **Other income (expense):** | | |
| Depreciation | 0 | 0 |
| Interest expense | 18,860 | 23,642 |
| **Net income (loss):** | $            (333,542) | $            (217,504) |

**Exhibit - B, p. 3**

**18-ER-4516**

**AIA Services  and AIA Insurance Inc**
**Accounts Payable Balances and Addresses**
**6/5/2022**

| | | | | | Balance Accts Payable | Date |
|---|---|---|---|---|---|---|
| BANK OF AMERICA 0272 (CROPUSA VISA ) | PO BOX 15796 | WILMINGTON | DE | 19886-5796 | $21,267.21 | 6/5/2022 |
| JOHN TAYLOR (BANK OF AMERICA 8227) * | PO BOX 851001 | DALLAS | TX | 75285-1001 | $18,906.26 | 12/31/2015 |
| JOHN TAYLOR (BANK OF AMERICA 0893) * | PO BOX 851001 | DALLAS | TX | 75285-1001 | $24,345.34 | 12/31/2015 |
| JOHN TAYLOR (CITI BANK VISA) * | PO BOX 6500 | SIOUX FALLS | SD | 57117 | $38,354.91 | 12/31/2015 |
| * john has personally paid off these cards. | | | | | | |
| US BANK VISA (CROPUSA VISA) | PO BOX 790408 | ST LOUIS | MO | 633179-0408 | $26,948.41 | 5/4/2022 |
| WELLS FARGO MASTERCARD | PO BOX 77033 | MINNEAPOLIS | MN | 55480-7733 | $23,136.36 | 5/27/2022 |
| JOHN TAYLOR (HENDERSON NOTE) (excludes interest) | 403 CAPITAL ST | LEWISTON | ID | 83501 | $10,000.00 | 6/5/2022 |
| JONES WILLIAMS FUHRMAN GOURLEY PA** | 225 N 9th ST, PO BOX 1097 | BOISE | ID | 83701 | $125,596.35 | 6/5/2022 |
| **including fees pursuant to hybrid contingency fee agreement | | | | | | |
| MOONEY WEILAND PLLC Note  (excludes interest) | 512 W. Idaho St., Ste. 103 | BOISE | ID | 83702 | $99,737.16 | 6/5/2022 |
| RANDALL DANSKIN | 601 W RIVERSIDE AVE, STE 1500 | SPOKANE | WA | 99201 | 0 | |
| REGISTERED AGENT SOLUTIONS (RASI) | 1701 DIRECTORS BLVD, STE 300 | AUSTIN | TX | 78744 | $99.00 | 6/1/2017 |
| RIDDELL WILLIAMS (FOX ROTHSCHILD LLP) | 1001 4th AVE, STE 4400 | SEATTLE | WA | 98154 | 0 | |
| TROUT LAW PLLC | 3778 N PLANTATION RIVER DR, STE 101 | BOISE | ID | 83703 | $43,869.50 | 6/5/2022 |
| UMPQUA BANK | PO BOX 2326 | SPOKANE | WA | 99210-2326 | $525.00 | 6/5/2022 |
| | | | | | | |
| JOHN TAYLOR  advances for Meisen legal fees and costs | 403 CAPITAL ST | LEWISTON | ID | 83501 | $245,851.50 | |
| other advances  to AIA | | | | | $387,322.05 | |
| Total | | | | | $633,173.55 | 6/5/2022 |
| | | | | | | |
| SUNWEST BANK (was SYRINGA) | 1310 South Vista Ave, Ste. 27, | Boise | ID | 83505 | $47,588.00 | 12/31/2013 |
| | | | | | | |
| SMITH + MALEK (WASHINGTON BANK PROPERTIES) | 601 E FRONT AVE, STE 304 | COEUR D'ALEN | ID | 83814 | $40,000.00 | 12/31/2015 |
| | | | | | | |
| NEW MEXICO UNCLAIMED PROPERTY: | | | | | | |
| CLEMENCE M.C. VARNEY | 902 1/2 CHARLESTON ROAD | ROSWELL | NM | 88203 | $23,531.11 | 3/29/2011 |

**Exhibit - B, p. 4**

**18-ER-4517**

| | | COSTS | |
|---|---|---|---|
| | | | |
| **Item** | **Vendor** | **Description** | **Amount** |
| 1 | Cicayda | Data Hosting for e-discovery | $782.50 |
| 2 | Richard McDermott | Expert Witness Fees and Costs | $20,000.00 |
| 3 | Cicayda | Data hosting for e-discovery | $519.50 |
| 4 | Cicayda | Data Hosting for e-discovery | $266.00 |
| 5 | Associated Reporting | Court reporter fee for transcript of shareholder meeting & appeal | $672.00 |
| 6 | Richard McDermott | Expert Witness Fees and Costs | $15,000.00 |
| 7 | K&K Reporting | Court reporter fees re Van Idour Deposition | $700.00 |
| 8 | Dan Walker Productions | Videographer fees re Van Idour Deposition | $283.00 |
| 9 | Givens Pursley | Discovery Master Fees | $4,717.50 |
| 10 | K&K Reporting | Court reporter transcript fees re Van Idour Deposition | $119.10 |
| 11 | Cicayda | Data Hosting for e-discovery | $619.50 |
| 12 | Richard McDermott | Expert Witness Fees and Costs | $11,775.00 |
| 13 | Cicayda | Data Hosting for e-discovery | $156.50 |
| 14 | Cicayda | Data Hosting for e-discovery | $469.50 |
| 15 | Givens Pursley | Discovery Master Fees | $6,753.90 |
| 16 | Richard McDermott | Expert Witness Fees and Costs | $5,000.00 |
| 17 | Urlaub Bowen | Court reporter/transcript fees re Gaziolis & Quarles Depositions | $262.85 |
| 18 | Urlaub Bowen | Court reporter/transcript fees re Gaziolis & Quarles Depositions | $262.85 |
| 19 | Richard McDermott | Expert Witness Fees and Costs | $8,000.00 |
| 20 | Richard McDermott | Expert Witness Fees and Costs | $10,000.00 |
| 21 | Associated Reporting | Court reporter/transript fees and costs re Riley and Ashby Depos. | $6,235.79 |
| 22 | Urlaub Bowen | Court reporter/transript fees re Gatziolis & Quarles Depos. | $4,436.92 |
| 23 | Cicayda | Data Hosting for e-discovery | $626.00 |
| 24 | Mediated Negotiations | Mediation Fee | $1,600.00 |
| 25 | Streamline Imaging | Document scanning and batestamping fees for discovery documents | $1,102.37 |
| 26 | Richard McDermott | Expert Witness Fees and Costs | $10,000.00 |
| 27 | M&M Court Reporting | Court reportter transcript fees re Miesen Deposition | $586.71 |
| 28 | Richard McDermott | Expert Witness Fees and Costs | $5,000.00 |
| 29 | Richard McDermott | Expert Fees | $5,000.00 |
| 30 | Richard McDermott | Expert Fees | $5,000.00 |
| 31 | Givens Pursley | Discovery Master Fees ($8,617.50 + credit card fee) | $8,876.03 |
| 32 | Richard McDermott | Expert witness fees | $10,000.00 |
| 33 | Larry Hile | Expert witness fees | $12,705.00 |
| 34 | Streamline Imaging | Scanning and Bates Stamping of Documents produced in discovery | $10,545.26 |
| 35 | Steno Girl Inc. (Associated) | Court reporter/transcript fees re Ashby, Riley, HTEH & AIA/CropUSA depos | $12,112.50 |
| 36 | Steno Girl Inc. (Associated) | Court reporter/transcript fees re Ashby, Riley, HTEH & AIA/CropUSA depos | $3,859.46 |
| 37 | M&M Reporting | Deposition transcripts re D. Taylor, Hostetler & Ruddell Depos. | $886.00 |
| 38 | Richard McDermott | Expert witness fees | $5,000.00 |
| 39 | Elam & Burke | Discovery document copy costs ordered by court to paid to HTEH | $1,064.19 |
| 40 | Nancy Towler | Court reporter fee re transcript for hearing in D. Taylor v. AIA | $200.00 |
| 41 | LC Reporting | Court reporter fee re trial transcript for GemCap v. AIA, et al. | $960.00 |
| 42 | Larry Hile | Expert Witness Fees | $4,875.00 |
| 43 | Richard McDermott | Expert witness fees | $5,000.00 |

**Exhibit - C, p. 1**
**18-ER-4518**

| Item | Vendor | Description | Amount |
|---|---|---|---|
| 44 | Steno Girl Inc. (Associated) | Court reporter/transcript fees re 2nd AIA Entities/CropUSA Entities Depos. | $8,911.50 |
| 45 | Benchmark Reporting | Court reporter/transcripts fees re Beck and Cashman Depos. | $5,161.26 |
| 46 | Streamline Imaging | Scanning/bates stamps/printing costs for discovery documents/depo. Exs. | $10,930.00 |
| 47 | Richard McDermott | Expert Witness Fees | $5,000.00 |
| 48 | Steno Girl Inc. (Associated) | Court reporter/transcript fees - GemCap, Henderson & 2nd Miesen Depos. | $10,867.77 |
| 49 | Richard McDermott | Expert witness fees | $5,000.00 |
| 50 | Buell Reporting | Deposition transcript fee (Miesen's expert Moran) | $1,126.80 |
| 51 | Buell Reporting | Deposition transcript fee (Miesen's expert Hile) | $1,134.70 |
| 52 | Larry Hile | Expert Witness Fees | $11,165.00 |
| 53 | Richard McDermott | Expert Witness Fees | $114,000.00 |
| 54 | Givens Pursley | Discovery Master Fees (reduced from $26,066.14) (Paid via Court Order) | N/A |
| | | | |
| | | **TOTAL** | **$375,327.96** |

Case 1:10-cv-00404-DCN-CWD   Document 1245   Filed 08/26/22   Page 1 of 5

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporations and its wholly owned subsidiary AIA Insurance, Inc.,<br><br>    Plaintiff,<br>v.<br><br>MICHAEL W. CASHMAN, SR., et al.,<br><br>    Defendants. | Case No. 1:10-cv-00404-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Plaintiff Dale Miesen's Motion for Extensions of Time (the "Motion for Extensions"). Dkt. 1244. Miesen filed the Motion for Extensions on August 24, 2022. It is not stipulated to by all relevant parties.[1] No response to the Motion for Extensions has yet been filed. Regardless, the Court DENIES the Motion for Extensions for the reasons stated below.

---

[1] Miesen represents that the Individual Defendants, Crop USA Defendants, and the AIA Entities refused to stipulate to this Motion for Extensions. Additionally, Miesen represents that counsel for Reed Taylor agreed to stipulate to the extensions and that counsel for GemCap did not respond to his request. Dkt. 1244-1, at 3. Neither Reed Taylor nor GemCap are relevant parties to the motions for which Miesen is requesting an extension. Their consent, or lack thereof, is meaningless.

MEMORANDUM DECISION AND ORDER - 1

**18-ER-4520**

On August 9, 2022, this Court issued an Order directing briefing on a single issue—whether Miesen had any direct, as opposed to derivative, claims alleged in his Third Amended Complaint. Dkt. 1238. The Court instructed the Individual Defendants, Crop USA Defendants, and AIA Entities to file the opening brief. They had twenty-one days to do so. Thereafter, Miesen would have twenty-one days to file a response. The August 9 Order warned that "[e]ach of these briefs must *strictly* comply with Local Rule 7.1." *Id.* at 4 (emphasis added). That rule provides both the applicable deadlines and page limits. Dist. Idaho Loc. Civ. R. 7.1.

Only two days after the Court's Order, the Individual Defendants, Crop USA Defendants, and AIA Entities filed the opening brief. Miesen's response brief is thus due on September 1, 2022. Miesen requests a two-week extension.

Additionally, Miesen requests an extension to his reply brief in support of his own Motion for Attorney Fees (Dkt. 1242). No brief in response to the Motion for Attorney Fees has yet been filed. Indeed, no response brief is due until September 8, 2022. Miesen assumes the response brief(s) will be filed on that date, which would make his reply brief due on September 22, 2022. Miesen asks for an extension to make his brief due on that same date. Essentially, Miesen wants assurance that his reply brief will not be due any earlier even if response briefs are filed earlier than their present deadline.

Requests for time extensions are "granted only upon a showing of good cause." Dist. Idaho Loc. Civ. R. 6.1. Miesen fails to demonstrate good cause.

First, as to the single-issue response brief, Miesen has been on notice of the issue for a substantial time. The issue is one addressed in a Motion to Dismiss filed over a year

MEMORANDUM DECISION AND ORDER - 2

ago. Dkt. 1067. When the Court ruled on that motion, it specifically left this issue remaining to allow further opportunity for the parties to address it. Dkt. 1203. That ruling was issued May 5, 2022. *Id.* Then the Court issued its August 9 Order (addressed above), which specifically called for these briefs. Dkt. 1238. Given the substantial prior notice of this issue, it was of little surprise to the Court that the Individual Defendants, Crop USA Defendants, and AIA Entities needed only two days to file their brief after that directive.

Miesen should know which of his claims are direct and which are derivative. They are his claims after all. This is a final issue of this case that has been churning for over *twelve years*. Miesen and his counsel have used various strategies to delay this case, and the Court is weary of such antics. In the interests of justice and judicial economy, the Court will not allow further delays without good reason.

Miesen's reason for this request is that his counsel is busy with other parts of this case. The Court understands that Miesen's counsel predominantly focuses only on this case and that Miesen has many filings and other actions (both necessary and unnecessary) that his counsel is juggling. However, the Court knows that Miesen and his counsel have had more than adequate notice of the need to brief this single issue. Twenty-one days is plenty of time to accomplish that—even if it means Miesen and his counsel must put other filings and actions on the backburner until this brief is completed.

Second, Miesen's request for an extension for his reply brief supporting his Motion for Attorney Fees may be moot. The Court is not going to give an extension for a reply brief when the response brief has not even been filed. Even if Miesen had asked for the extension once he knew whether it was needed, there is still not good cause shown to grant

MEMORANDUM DECISION AND ORDER - 3

18-ER-4523

it. Much like the request discussed earlier, this request for extension fails to take into account Miesen's opportunity to prepare his brief. Miesen first filed a motion for attorney fees on May 31, 2022. Dkt. 1214. Multiple parties responded in fierce opposition to that motion. Miesen then withdrew the motion for attorney fees on July 15, 2022. Dkt. 1225. He then refiled the motion for attorney fees—albeit with some changes—on August 18, 2022. Dkt. 1242. Miesen has had the benefit of peeking behind the curtain and seeing what his adversaries have to say about his motion for attorney fees. He need not wait for a response brief to begin working on his reply. While the response briefs may not be identical to what the parties filed months ago, those prior responses still gave Miesen extra time to work on this filing. More time simply is not needed.

In conclusion, the Court wishes to emphasize that it wants to see this case resolved.[2] Extensions of time and pages, though sometimes necessary, slow down the process. This is not the Court's only case, yet the Court has devoted significant and disproportionate resources and attention to it. The present Motion for Extensions does not present

---

[2] Every day this case continues, it grows more like the fictional case Jarndyce and Jarndyce, in Charles Dickens's *Bleak House*. Dickens wrote:

> Jarndyce and Jarndyce drones on. This scarecrow of a suit has, in course of time, become so complicated that no man alive knows what it means. The parties to it understand it least, but it has been observed that no two Chancery lawyers can talk about it for five minutes without coming to a total disagreement as to all the premises. Innumerable children have been born into the cause; innumerable young people have married into it; innumerable old people have died out of it. Scores of persons have deliriously found themselves made parties in Jarndyce and Jarndyce without knowing how or why; whole families have inherited legendary hatreds with the suit. The little plaintiff or defendant who was promised a new rocking-horse when Jarndyce and Jarndyce should be settled has grown up, possessed himself of a real horse, and trotted away into the other world. . . . [B]ut Jarndyce and Jarndyce still drags its dreary length before the court, perennially hopeless.

Charles Dickens, *Bleak House* 3 (1853); *see also United States v. Washington*, 573 F.3d 701, 709 & n.50 (9th Cir. 2009) (comparing case to Jarndyce and Jarndyce).

MEMORANDUM DECISION AND ORDER - 4

sufficiently good cause to add more time to this case. For these reasons, the Court DENIES

Miesen's Motion for Extensions (Dkt. 1244).

DATED: August 26, 2022

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 5

**18-ER-4524**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>    Plaintiff,<br><br>  v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>    Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>PLAINTIFF DALE L. MIESEN'S SUPPLEMENTAL RESPONSE TO THE DEFENDANTS' MOTION TO DISMISS **[Dkts. 1067, 1090, 1238, 1239]** |

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - i

18-ER-4525

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

> Defendants/Third-Party Plaintiffs,

**v.**

REED TAYLOR, an individual,

> Third-Party Defendant.

REED TAYLOR, an individual,

> Third-Party Defendant/ Counterclaimant,

**v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

> Counterdefendants.

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - ii

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT....................................................................................................... 2

      A.    Count VIII of Miesen's TAC States Direct Causes of Action and Direct Relief Expressly Authorized by I.C. § 30-29-304 Which Statute Does Not Require a Derivative Demand................................................................................ 2

      B.    Miesen Permissibly Pleaded Both Direct and Derivative Claims and Relief......... 7

      C.    In the Past, the Defendants Asserted Positions Which Are the Opposite of that Taken In Their Current Memorandum and They Are Judicially Estopped. They Also Violated Judge Dale's Order, and They Also Offer No Viable Reason for Reconsidering Judge Dale's Order...................................................... 10

      D.    Still Alive is Miesen's Request in the Prayer that Any Distribution Ensure that the Funds Recovered Do Not Go to the Individual Defendants Who Acted Wrongfully. ...................................................................................... 11

      E.    The Defendants' Resort to Deposition and Other Statements Made by Miesen Do Not Weaken the Strength of the Foregoing Arguments................................. 12

      F.    Miesen's TAC Does Not Exclusively Plead Derivative Claims and Relief. ........ 13

      G.    The Defendants Never Raised Any Specific Objections to the Pleading of Any Specific Causes of Action or Relief and They May Not Do So for the First Time on Reply. ...................................................................................... 15

      H.    This Court Should Exclude the Matters Outside of the Pleadings Relied Upon by the Defendants or Provide Adequate Notice and Convert the Motion to One Under Rule 56. ...................................................................................... 16

      I.    This Court Should Consider Certain Matters as Permitted by Rule 12(b)(6)....... 19

      J.    In the Unlikely Event that this Court Finds Miesen's TAC Has Any Pleading Deficiencies, this Court Should Grant Miesen Leave to Amend.......................... 20

III.    CONCLUSION.................................................................................................. 20

CERTIFICATE OF SERVICE ...................................................................................... 21

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - iii

**18-ER-4527**

Miesen responds to defendants' briefing and alleged "evidence" (Dkts. 1239, 1239-1):[1]

## I.    INTRODUCTION

Despite this Court's order requiring the defendants to address each of Miesen's claims (Dkt. 1238), they do not address the elements of a single cause of action in Miesen's Third Amended Complaint, Dkt. 211 ("TAC"). (Dkt. 1239.) They failed to do so because they have no valid arguments to escape liability from Miesen's direct claims which do not require a derivative notice and is brought pursuant to I.C. § 30-29-304[2] under Count VIII[3] for the countless ultra vires and unauthorized transactions that have occurred over many years—including while this lawsuit was stayed for years at their request. (Dkt. 105.)  This Court need not look any further than the applicable three versions of I.C. § 30-29-304 to see that Miesen's TAC adequately pleads direct claims which do not require a derivative notice (*E.g.,* Dkt. 211 ¶¶226, 228-230) and supports those claims with a plethora of examples of many acts and transactions in violation of the articles of incorporation and/or the corporate bylaws throughout the TAC. (Dkt. 211.)

The plain text of I.C. § 30-29-304 simply requires a shareholder, here Miesen, to assert a claim against the corporation, here the AIA Entities and/or its management, to enjoin acts and transactions in violation of the articles of incorporation, the corporate bylaws and/or the law. If adequate proof is presented, the Court can set aside the acts and transactions and award damages to the AIA Entities so long as affected parties are present in the case. The CropUSA Defendants and the Individual Defendants are the affected parties for purposes of Miesen's damages. In sum,

---

[1] Miesen's cites to page numbers in any given docket shall be to the blue, file-stamped page numbers at the top. Miesen will utilize this Court's definitions for the groups of defendants (Dkt. 1238) and will refer to the remaining defendants collectively as "defendants."

[2] I.C. § 39-29-304 has been amended three times (two times while this case has been pending). Unless otherwise stated, Miesen will collectively refer to I.C. §§ 30-1-304(2)(a) & (3) (1997), 30-29-304(2)(a) & (3) (2015) and 30-29-304(b)(1) & (c) (2019) in this response as "I.C. § 30-29-304."

[3] Count VII is incorporated by reference into Court VIII. Miesen will refer to both Counts collectively as "Count VIII" because they both apply to Miesen's direct claims and relief based on unauthorized, ultra vires and unlawful acts. Indeed, Counts VII and VIII could be pleaded as one consolidated Count.

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 1

**18-ER-4528**

the TAC pleads a direct cause of action under I.C. § 30-29-304 that does not require a demand letter. The defendants should not be enabled to continue with their intentional ultra vires conduct. For the reasons explained below, this Court should deny the motion to dismiss.

## II.   ARGUMENT[4]

### A.   Count VIII of Miesen's TAC States Direct Causes of Action and Direct Relief Expressly Authorized by I.C. § 30-29-304 Which Statute Does Not Require a Derivative Demand.

Count VIII (which also incorporates other paragraphs in the TAC, including paragraph 226) states a valid direct cause of action as provided under I.C. § 30-29-304 for injunctive relief, to set aside or void unauthorized acts and instruments, award damages to the AIA Entities and other relief related to those claims. (*E.g.,* Dkt. 211 at 73-75 ¶¶226, 228-230, 80-82 ¶¶6-10, 13, 15.) The plain reading of I.C. § 30-29-304 confirms Miesen has rightfully asserted direct claims in Count VIII as authorized under the emphasized sections below:

> (a) Except as provided in subsection (b) of this section, the validity of corporate action may not be challenged on the ground that the corporation lacks or lacked power to act.
> (b) **A corporation's power to act may be challenged**:
> > (1) **In a proceeding by a shareholder against the corporation to enjoin the act**;
> > (2) In a proceeding by the corporation, directly, derivatively or through a receiver, trustee or other legal representative, against an incumbent or former director, officer, employee or agent of the corporation; or
> > (3) In a proceeding by the attorney general under section 30-29-1430, Idaho Code.
> (c) **In a shareholder's proceeding under subsection (b)(1) of this section to enjoin an unauthorized corporate act, the court may enjoin or set aside the act, if equitable and if all affected persons are parties to the proceeding, and may award damages for loss, other than anticipated profits, suffered by the corporation or another party because of enjoining the unauthorized act**.

 I.C. § 30-29-304 (2019).

Here, the plain reading of the above emphasized quoted sections, which have remained substantially the same for over twenty years, allow Miesen to assert claims against the AIA

---

[4] Because this Court ordered this "is an extension of the underlying motion to dismiss," Dkt. 1238 at 4, as provided under Rule 12(b)(6)-(c), Miesen renews the standards asserted in his prior briefing. (*e.g.,* Dkt. 1131 at 7 & n. 3, 9.) *See Rowlette v. Mortimer*, 352 F. Supp.3d 1012, 1019-20 (D. Idaho 2018).

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 2

Entities, *without* first providing a demand letter, to enjoin and/or set aside any acts that were not within the powers of the AIA Entities. If the Court enjoins the acts of any one or more of the defendants, Miesen is also entitled to obtain damages to be paid to the AIA Entities. All "affected persons" are parties for the damages Miesen will be seeking, namely the Individual Defendants and CropUSA Defendants, are parties to this action. The plain reading is fatal to the defendants. *Martin v. State Farm Mut. Auto. Ins. Co.*, 138 Idaho 244, 247, 61 P.3d 601, 604 (2002) ("A cardinal rule of statutory construction is that where a statute is plain, clear and unambiguous, courts are constrained to follow that plain meaning, and neither add to the statute nor take away by judicial construction."). The allegations in the TAC and AIA Services' amended articles and the AIA Entities' bylaws establish the ultra vires and unauthorized conduct, which will result in millions of dollars of damages recovered for the AIA Entities. (Dkts. 211; 1131-10, 1131-11.)

If the Idaho Legislature wanted to require a demand letter before allowing a shareholder to pursue claims under I.C. § 30-29-304(b)(1) & (c), it could have stated so. For example, if a shareholder requests the removal of directors through a judicial proceeding, the Idaho Legislature expressly included a mandate that the derivative action requirements (including a demand) must be complied with under I.C. § 30-29-809(b), which provides:

> A shareholder proceeding on behalf of the corporation under subsection (a) of this section shall comply with all of the requirements of sections 30-29-740 through 30-29-747, Idaho Code, except section 30-29-741(a), Idaho Code.

But, for over twenty years, the Idaho Legislature has never included such a requirement in all three versions of I.C. § 30-29-304. Thus, the Legislature clearly intended to allow claims under I.C. § 30-29-304(b)(1) & (c) to proceed without a prior demand and there is no such requirement in any applicable version of those Idaho Code sections. *Druffel v. State, Dept. of Transp.*, 136 Idaho 853, 856, 41 P.3d 739, 742 (2002) ("Statutes are construed under the assumption that the legislature

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 3

was aware of all other statutes and legal precedence at the time the statute was passed.").

Therefore, Count VIII states a direct claim for which Miesen is entitled to seek injunctive relief, to set aside ultra vires acts and transactions, and to recover substantial damages to be paid to the AIA Entities by the other defendants for the widespread unauthorized and ultra vires conduct, including the numerous examples provided in the TAC.[5] (Dkt. 211.) Indeed, it is in the AIA Entities' best interests to be enjoined and for the acts and transactions to be set aside with damages awarded to them.

There are countless ultra vires acts and transactions in the TAC that form the basis of Miesen's claims under I.C. § 30-29-304. (*E.g.,* Dkt. 211; Dkts. 1131-10, 1131-11.)

"An ultra vires act is an act that is '[u]nauthorized; beyond the scope of power allowed or granted by a corporate charter or by law.'"[6] *Taylor v. Taylor*, 163 Idaho 910, 918, 422 P.3d 1116, 1124 (2018) (citation omitted) (holding that a redemption agreement that merely conflicted with the articles was ultra vires—the same amended articles of incorporation at issue here);[7] *Fisher v. Shipyard Village Council of Co-Owners, Inc.*, 760 S.E.2d 121, 130 (2014) ("[A] corporation may exercise only those powers which are granted to it by law, by its charter or articles of incorporation, and by any bylaws made pursuant thereto; acts beyond the scope of the powers so granted are *ultra vires*.").

---

[5] The matters addressed are not exhaustive because the defendants never made any specific challenges. For example, Miesen's TAC also includes a prayer for relief for the Individual Defendants to be liable for all damages awarded against CropUSA under the theory of alter-ego, which is an issue for trial. (Dkt. 211 at 55 ¶164(qq), at 80 ¶6.) *Wandering Trails, LLC v. Big Bite Excavation, Inc.*, 156 Idaho 586, 594, 329 P.3d 368, 376 (2014).

[6] "Corporate charter" is defined as "A document that one files with the secretary of state upon incorporating a business. • The corporate charter is often the articles of incorporation." Black's Law Dictionary (11th ed. 2019).

[7] Here, the defendants violated provisions in the articles that prohibited certain acts and transactions with complete disregard of the articles of incorporation. In *Taylor*, the shareholders were all fully advised of the transaction and voted on it. In addition, *Taylor* involved asserting ultra vires as a defense, not as a claim, under the old Idaho Code section 30-1-7 (1995) (repealed). 163 Idaho at 918. Notably, the Individual Defendants and AIA Services argued to enforce the articles in *Taylor*; yet they disregarded them for every transaction and act at issue here.

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 4

For example, AIA Services' amended articles of incorporation prohibit AIA Services and its wholly owned subsidiary, AIA Insurance,[8] or any other subsidiary, from guaranteeing any loans for any entities which were not subsidiaries of AIA Services.

> Indebtedness. The corporation will not, and will not permit any of its Subsidiaries to, directly or indirectly, create, incur, assume, guaranty or otherwise become or remain directly or indirectly liable with respect to, any Indebtedness, except: …. [listing certain exceptions which do not apply here]

(Dkt. 1131-10 at 5-6 §4.2.9(c); *see also* Dkt. 211 ¶28.) In the face of this clear restriction prohibiting guarantees and while the case at bar was pending under a stay order obtained by the defendants,[9] the Individual Defendants nevertheless had the AIA Entities guarantee a $10 million loan for the CropUSA Defendants from GemCap in direct violation of Section 4.2.9(c) of AIA Services' amended articles of incorporation (among other sections). (*Id.*; Dkt. 211 ¶¶135, 140.) Thus, the GemCap loan guarantees were classic examples of ultra vires acts.

Later, after GemCap filed suit because it was not paid and despite demands from AIA Services' minority shareholders who learned of the lawsuit, the AIA Entities entered into an ultra vires settlement agreement with GemCap which obligated the AIA Entities to pay GemCap $12,126,584.61, once again, in violation of Section 4.2.9(c) of AIA Services' amended articles of incorporation. (Dkt. 211 ¶¶146-149.) The guarantees and settlement further led to AIA Services' former headquarters, with a "replacement value exceeding $7,000,000," being transferred to GemCap and sold under the terms of the settlement agreement. (Dkt. 211 ¶153.) To reiterate, the above transactions involving the AIA Entities are classic examples of ultra vires transactions for

---

[8] From 1995 through 2005 alone, AIA Insurance generated over $65 million in revenues. (Dkt. 211 ¶43.) None of those funds were ever shared with Miesen or the other minority shareholders. (*E.g.,* Dkt. 211 ¶¶110.)

[9] The original complaint also alleged claims relating to unlawful guarantees. (Dkt. 1 ¶¶4.4(10), 6.6.) The stay was not lifted until earlier in 2016 after the Ninth Circuit reversed. (Dkts. 105, 108, 112.)

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 5

which there is no viable or explainable defense.[10] These transactions were never disclosed or approved by Miesen or the other minority shareholders. (Dkt. 211 ¶¶145, 148.)

While Miesen entered into a settlement agreement with GemCap, which is pending approval from this Court, Dkt. 1240-1, the settlement agreement makes clear that the "dismissal and stipulation shall not impact, nor act as a release, of any of Miesen's direct and derivative Claims against the other defendants." (Dkt. 1240-3 at 5 ¶2.) Miesen will be seeking to enjoin the AIA Entities, set aside the acts, and seek the damages suffered by the AIA Entities from the sale of their properties from the CropUSA Entities and Individual Defendants.

The above example is, but one of many, ultra vires acts, contracts and transactions at issue and subject to I.C. § 30-29-304, including many ultra vires acts, transactions and contracts between the AIA Entities and any one or more of the remaining defendants. (Dkt. 211, 1131-10, 1131-11.) And only one of many examples of the defendants' flagrant disregard for the restrictions in AIA Services' amended articles of incorporation in order to have the AIA Entities engage in ultra vires and unauthorized acts, among the failure to comply with other fundamental corporate governance matters and violations of the Idaho Business Corporation Act. (Dkt. 211.) Significantly, the defendants failed to address Count VIII or any of the conduct that forms the basis for Count VIII. (Dkt. 1239.) This is because they have no excuse or viable explanation for what has transpired at the AIA Entities and the countless ultra vires acts that have occurred.

Accordingly, with regard to Count VIII, the question is not whether Miesen suffered injury different from other shareholders for purposes of a claim under I.C. § 30-29-304; but whether Count VIII requires a derivative demand be given 90 days before filing. It does not. Count VIII can be brought as a direct claim by Miesen and may only be brought as a direct claim according

---

[10] There are other provisions of AIA Services' amended articles of incorporation which were also violated with respect to these ultra vires acts.

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 6

to the plain reading of I.C. § 30-29-304. For the reasons stated above alone, this Court should deny the motion because Miesen has conclusively established that he, in fact, pleaded direct claims and relief in his TAC.

**B.   Miesen Permissibly Pleaded Both Direct and Derivative Claims and Relief.**

The defendants' arguments that Miesen's claims may only be direct or derivative are incorrect. (Dkt. 1239.) Miesen's TAC permissibly pleaded both direct and derivative claims, and he has requested that the Court approve the distribution of any net proceeds. (Dkt. 211.)

"It is well-settled that shareholders have the right to bring direct and derivative actions simultaneously." *In re TransOcean Tender Offer Sec. Litig.*, 455 F. Supp. 999, 1014 (D. Nev. 1978) (citations omitted). Although Miesen's derivative claims are gone, his direct claims remain.

> A similar analysis applies to the second category of Delaware corporate law claims, namely the direct claims. **Shares of stock carry with them particular rights that a holder of the shares can exercise by virtue of being the owner. A stockholder can invoke these rights directly, rather than derivatively**…
>
> Direct claims include the causes of action conferred on stockholders by specific statutory provisions of the DGCL. **Direct claims also include causes of action to enforce contract rights that stockholders possess under the corporation's certificate of incorporation and bylaws, recognizing that the DGCL forms a part of every Delaware corporation's charter.** Classic examples included the right to vote, the right to compel payment of a contractually specified dividend, and the right to own and alienate shares. **Stockholders similarly can sue directly to enforce contractual constraints on a board's authority under the charter, bylaws, and provisions of the DGCL.** The availability of a direct cause of action in these situations comports with the Delaware Supreme Court's longstanding recognition that the DGCL, the certification of incorporation, and the bylaws together constitute a multi-party contract among the directors, officers, and stockholders of the corporation. As parties to the contract, stockholders can enforce it.

*In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025, 1049-50 (Del. Ch. 2015) (emphasis added) (footnotes omitted).[11] Commentators have also addressed direct claims such as Miesen's.

> In addition, **because an ultra vires claim is considered a direct action** of the shareholders rather than a derivative action, the plaintiffs would not have to cross the difficult procedural hurdle often required in derivative litigation of making a demand that the directors instigate

---

[11] The references to "DGCL" in the quote are to the Delaware General Corporation Law.  124 A.3d at 1037.

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 7

18-ER-4534

the action."…. Rather, shareholders could decide for themselves whether to challenge the corporation and its management in this way. **The ultra vires suit thus amounts to a significant improvement of shareholder power to enforce general law compliance, as compared to the derivative suit**."

Kent Greenfield, Ultra Vires Lives! *A Stakeholder Analysis of Corporate Illegality (with Notes on How Corporate Law Could Reinforce International Law Norms)*, 87 Va. L. Rev. 1279, 1280, 1355 (2001) (emphasis added) (footnotes omitted).

> This is known as ultra vires in corporate law, and state corporate-law statutes authorize these claims to be brought as **direct actions**."…. "Many corporate-law statutes, including Delaware's, state expressly that claims alleging that an action was beyond a corporation's power may be asserted in a **direct action**. They authorize that recovery of any compensation in such cases is made to the corporation, though the form of the case is **direct**, not derivative."…. a claim that direct corporate action was beyond the corporation's power (the ultra vires claim) is usually seen as **direct** (as are most claims seeking injunctive or other prospective relief).

Lawrence A. Cunningham, *A New Legal Theory to Test Executive Pay: Contractual Unconscionability*, 96 Iowa L. Rev. 1177, 1183, 1230, 1232-33 (2011) (emphasis added) (footnotes omitted).

> **If a transaction gives rise to both direct and derivative claims, a holder may commence and maintain direct and derivative actions simultaneously**, and any special restrictions or defenses pertaining to the maintenance, settlement, or dismissal of either action should not apply to the other.

*Principles of Corporate Governance: Analysis and Recommendations* § 7.01(c) (American Law Inst. 1994) (emphasis added). The comments further note:

> Although some discrepancies exist in the case law, most courts have properly considered actions such as the following as direct actions: …. (4) **actions to enjoin an ultra vires or unauthorized act**; (5) actions to prevent oppression of, or fraud against, minority shareholders; (6) actions to compel dissolution, appoint a receiver, or obtain similar equitable relief; …. (9) actions to require the holding of a shareholders' meeting or the sending of notice thereof; and (10) actions to hold controlling shareholders liable for acts undertaken in their individual capacities that depress the value of the minority's shares. …. In some instances, actions that essentially involve the structural relationship of the shareholder to the corporation (which thus should be seen as direct actions) may also give rise to a derivative action when the corporation suffers or is threatened with a loss. One example would be a case in which a corporate official knowingly acts in a manner that the

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 8

certificate of incorporation denied the official authority to do, thereby violating both specific restraints imposed by the shareholders and the official's duty of care. **In such cases, the plaintiff may opt to plead either a direct or a derivative action, or to bring both actions simultaneously**, unless the court finds that the plaintiff is unable to provide fair and adequate representation pursuant to § 7.02(a)(4)....

\*     \*     \*

**No policy suggests that the plaintiff should be forced to elect between these remedies. Section 7.01(c) thus adopts the majority rule that a direct action is not precluded simply because the facts also give rise to a derivative action. When such parallel actions are brought, a dismissal of the derivative action should not bar the continued prosecution of the direct action**.

*Id.* at cmts. e, f (emphasis added).

Because the AIA Entities are Idaho corporations (Dkt. 211 ¶¶6-7), Idaho statutory and case law applies.[12] The defendants do not address I.C. § 30-29-304. The only two Idaho cases cited by the defendants, *McCann v. McCann*, 138 Idaho 228, 233, 61 P.3d 585, 590 (2002) ("*McCann I*") and *Mannos v. Moss*, 143 Idaho 927, 933, 155 P.3d 1166, 1172 (2007) do not address direct shareholder statutory claims under I.C. § 30-29-304 and defendants' reliance on them is misplaced. The other cases are irrelevant as Idaho law applies and none of those cases address direct claims under I.C. § 30-29-304. In *McCann v. McCann*, 152 Idaho 809, 275 P.3d 824 (2012) ("*McCann II*"), the Idaho Supreme Court held that its "explanation on individual actions was dicta" in *McCann I*. *McCann II*, 152 Idaho at 817, 275 P.3d at 832. This Court is not bound by the dicta in *McCann I* and that dicta does not address claims under I.C. § 30-29-304 or any related claims. *Regan v. Owen*, 163 Idaho 359, 362-63, 413 P.3d 759, 762-63 (2018) (courts are not bound by Idaho Supreme Court dicta). The Idaho Supreme Court also confirmed, precisely what applies

---

[12] "Choice-of-law cases overwhelmingly hold that the internal affairs of a corporation are governed by the law of the state of incorporation." *In re Woodfield*, 602 B.R. 747, 753 n. 2 (Bankr. D. Or. 2019); *KDN Mgmt., Inc. v. WinCo Foods*, LLC, 164 Idaho 1, 9, 423 P.3d 422, 429 (2018).

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 9

here, how "derivative and individual actions may both grow out of the same wrong."[13] *Id*. The plain text of I.C. § 30-29-304 confirms that Miesen, a shareholder, is authorized to enjoin the AIA Entities, set aside acts or contracts, and recover damages from other parties without first making a derivative demand. In sum, none of the cases cited by the defendants apply. Miesen has asserted direct and derivative claims, including the direct claims brought against the AIA Entities and other defendants in Count VIII. (Dkt. 211.) Having established that Miesen can assert *both* direct and derivative claims growing out of the same wrongs and that the allegations in the TAC plead alternative causes of action, the motion to dismiss should be denied.

C. **In the Past, the Defendants Asserted Positions Which Are the Opposite of that Taken in Their Current Memorandum and They Are Judicially Estopped. They Also Violated Judge Dale's Order, and They Also Offer No Viable Reason for Reconsidering Judge Dale's Order.**

The defendants are judicially estopped from asserting that Miesen's claim under I.C. § 30-29-304 is derivative. When the defendants opposed Miesen's motion to amend, they took the position that Miesen's direct claim to enjoin the AIA Entities under I.C. § 30-29-304 was for "**direct suits against a company to enjoin acts**." (Dkt. 185 at 14 (emphasis added).) Judge Dale accepted that position and held that Miesen's I.C. § 30-29-304 claim was an alternative claim:

> At this stage, the Court construes Miesen's claim under I.C. § 30-29-304 as an alternative cause of action to his breach of fiduciary duty and fraud claims. Because the ultimate fate of Miesen's breach of fiduciary duty and fraud claims is uncertain, determining whether Miesen can set forth a claim pursuant to I.C. § 30-29-304 is not yet ripe for the Court's consideration.

(Dkt. 210 at 31.) Now, almost six years later, the defendants are taking the diametrically opposed position—that Miesen's claims are all derivative (Dkt. 1239). If the defendants are allowed to

---

[13] As discussed in more detail in Section H, defendants also misrepresent what transpired in *Taylor v. Taylor* and *Durant v. GemCap*. Judge Brudie's reliance on *McCann I* to dismiss Donna Taylor's fraud claim was erroneous because he was reversed, even though AIA Services and the Individual Defendants advanced the same arguments to the Idaho Supreme Court. Mr. Glynn has been counsel for AIA Services and the Individual Defendants in Donna's lawsuits for years, so he is well aware that his characterization regarding what transpired in *Taylor* is incorrect.

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 10

**18-ER-4537**

reverse their position, they would obtain an unfair advantage and it would be unfairly detrimental to Miesen. The elements of judicial estoppel are met. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). This Court should judicially estop the defendants from changing positions now.

Next, the defendants provide no explanation for why they did not assert their present arguments in opposition to Miesen's motion as ordered by Judge Dale (Dkt. 178 at 3 n. 2) or why this Court should reconsider Judge Dale's ruling (let alone why they changed positions). Judge Dale's ruling recognizing Miesen's direct claims as alternative ones, which are now ripe for adjudication, is the law of the case. *Dickinson Frozen Foods, Inc. v. FPS Food Process Sol. Corp.*, No: 1:17-cv-00519-DCN, 2020 WL 2841517, at *12-13 (D. Idaho June 1, 2020). The reason they cannot offer an explanation is because their *new* arguments are diametrically opposed to their earlier ones and the cases that they rely upon *all* existed back in 2017. (Dkt. 1239.)

**D.   Still Alive is Miesen's Request in the Prayer that Any Distribution Ensure that the Funds Recovered Do Not Go to the Individual Defendants Who Acted Wrongfully.**

Another example of direct claim and/or relief that remains is Miesen's request that this Court approve the distribution of any recoveries and ensure that none of the funds are placed back into the hands of the defendants. (Dkt. 211 at 81 ¶11.) This needs to be adjudicated.

> Courts have been willing to award a pro rata recovery to shareholders under the following exceptional circumstances: (1) where the defendants hold a controlling interest in the corporation; **(2) where corporate recovery would benefit shareholders who participated or acquiesced in the wrongdoing;** (3) where purchasers of defendants' shares would receive a windfall from a corporate recovery; (4) where the corporation has ceased doing business and direct recovery would facilitate the distribution of assets; (5) where it is necessary to avoid injustice or fraud; and (6) where it would avoid a multiplicity of subsequent lawsuits. Direct recovery may not be proper where it would prejudice third-party rights.

13 Fletcher Cyc. Corp. § 6028 (2021) (footnotes and cases cited therein omitted but relied upon) (emphasis added).

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 11

Here, Miesen's TAC includes declaratory judgment relief (which incorporates by reference all necessary paragraphs elsewhere in the TAC) and a prayer for relief requesting that any recoveries be distributed directly to the innocent shareholders and others, rather than place any of the funds back into the hands of the Individual Defendants—who caused this lawsuit and engaged in the unlawful and improper acts. (Dkt. 211 at 72-74, 81 ¶11.) The facts asserted in the TAC support this course of action and this relief (Dkt. 211) together with any declaratory judgment relief necessary to support it under Count VIII. (Dkt. 211 ¶¶228-230.) The Court will be able to best address this issue after the presentation of evidence at trial, which Miesen asserts will unequivocally establish that the Individual Defendants are not entitled to any of Miesen's recoveries.

### E. The Defendants' Resort to Deposition and Other Statements Made by Miesen Do Not Weaken the Strength of the Foregoing Arguments.

Without waiving Miesen's objections below and in Section H below, other statements by Miesen in his deposition and elsewhere show that he understood that he was bringing claims that were not derivative, and he was never questioned regarding Count VIII or I.C. § 30-29-304. Many of the Miesen quotes show that he felt that he represented a group of shareholders.  This is true even of his direct claims because recoveries would go to AIA Services and benefit all the innocent shareholders as well as others who may benefit. He has not been inconsistent, even though he is entitled to be inconsistent under rules of pleading. Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims…as it has, regardless of consistency."). Moreover, the positions and testimony involve Miesen's positions pursuing his primary derivative claims after Judge Dale's ruling that his claims brought pursuant to I.C. § 30-29-304 were alternative ones. (Dkt. 210 at 31.)

More importantly, Miesen is a lay person with no legal training. If he spoke any legal conclusions or opinions, they are entitled to no weight and no consideration regarding the adequacy

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 12

of Count VIII in the TAC or whether he has asserted direct or derivative claims. *California Sportfishing Prot. All. v. River City Waste Recyclers, LLC*, 205 F. Supp.3d 1128, 1134 (E.D. Cal. 2016); *Rosebrock v. Beiter*, No. CV 10–01878 SJO (SSx), 2011 WL 13214270, at *3 (C.D. Cal. May 26, 2011); *Evangelista v. Inlandboatmen's Union of Pac.*, 777 F.2d 1390, 1398 n. 3 (9th Cir. 1985); *see also Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004) ("'Plaintiffs' classification of the suit is not binding'").

While Miesen asserts that his arguments in Sections A-D, alone, are sufficient to defeat the defendants' motion to dismiss, Miesen will nevertheless address some other matters.

## F.   Miesen's TAC Does Not Exclusively Plead Derivative Claims and Relief.

The only specific alleged pleading deficiency that is challenged by the defendants pertains to the argument that Miesen has taken the position in the general allegations of the TAC that his claims are only derivative (the defendants do not challenge the sufficiency of any allegations for any causes of action or requested for relief). (Dkt. 1239 at 3-18.) The defendants' arguments are belied and should be rejected by the allegations in the TAC. (Dkt. 211.)

> A party may set out 2 or more statements of a claim…alternatively or hypothetically, either in a single count…or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

Fed. R. Civ. P. 8(d)(2). "A party may state as many separate claims…as it has, **regardless of consistency**." Fed. R. Civ. P. 8(d)(3) (emphasis added). "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). "Mere 'labels and conclusions'" are not relevant to whether a party states a cause of action. *Rowlette*, 352 F. Supp. 3d at 1020; *Tooley*, 845 A.2d at 1035 ("'Plaintiffs' classification of the suit is not binding'").[14]

---

[14] The defendants cited this case in their brief, yet they ignore this statement of law. (Dkt. 1239 at 16.)

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 13

Here, the facts alleged in Miesen's TAC unequivocally show that he asserted both direct and derivative claims (Dkt. 211), and that he is requesting the recoveries to be distributed to the innocent stakeholders and/or others only upon this Court's approval (i.e., Miesen has no conflicts of interest as to any of his claims). (*Id*. at 81 ¶11.) For example, the allegations in the TAC include (Miesen will cite to the paragraph numbers and/or page numbers from Dkt. 211, which are not exhaustive): **(a)** the AIA Entities are Idaho corporations and they are named as defendants, i.e., to make clear that they were defendants for purposes of Miesen's direct claims (¶¶6-7);[15] **(b)** the caption makes clear that Miesen is "an individual **who is a shareholder** and **who is also** bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance," i.e., that he is asserting direct and "also" derivative claims (p. 1 (emphasis added));[16] **(c)** importantly, the references to "AIA" in the TAC includes AIA Services and/or AIA Insurance "for purposes of pleading in the alternative" and "includes the Plaintiff to the extent that he is required to support any cause of action and/or any relief," i.e., in other words, Miesen is included or substituted in place of the AIA Entities where necessary (¶5);[17] **(d)** "Miesen alleges cumulatively, or when necessary and where applicable in the alternative, as follows" (p. 1); **(e)** Miesen alleged that he was bringing an "action," a "double derivative action," and a "derivative action," i.e., Miesen *never* alleged that he was asserting one action to the exclusion of the other or that his claims and relief were *exclusively* derivative (¶¶1, 5 & p. 82 ¶4; *see also* ¶¶1-244, p. 79-82); **(f)** for example, the TAC alleges specific causes of action, including for injunctive relief and other relief against the AIA Entities and damages against the other defendants as authorized by I.C. § 30-29-304 for the benefit of the AIA Entities (*e.g.,* ¶¶226, 228-230 & p. 80-

---

[15] Miesen originally only named the AIA Entities as "nominal defendants," although similar ultra vires, unauthorized and unlawful conduct was alleged. (Dkt. 1 ¶3.1.)

[16] The prior versions of the complaints were not pleaded with this distinction. (Dkts. 1 at 1, 137 at 1.)

[17] The SAC alleged "to support any *derivative* cause of action." (Dkt. 137 ¶7 (emphasis added).)

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 14

**18-ER-4541**

82 ¶¶6-10, 13, 15; and **(g)** the TAC alleges individual harm to Miesen for which he is seeking redress for all innocent shareholders regardless of whether the claims are direct or derivative, which prevents any potential conflict of interest as to his prosecution of the derivative claims. (¶¶1-244 & p. 81 ¶11.)

Accordingly, the allegations in the TAC (Dkt. 211), which must be accepted as true, confirm Miesen has never taken the position that he was *only* asserting derivative claims and that he has also asserted direct ones. The defendants' motion should also be denied on this basis alone.

**G.  The Defendants Never Raised Any Specific Objections to the Pleading of Any Specific Causes of Action or Relief and They May Not Do So for the First Time on Reply.**

First, contrary to this Court's instructions (Dkt. 1238), the defendants did not meet their Rule 12(b)(6) burden because they failed to specifically address any alleged defects to a single cause of action to demonstrate that Miesen could not state a claim—their broad arguments that Miesen's claims are all derivative are inadequate to meet their burden. (Dkt. 1239.) *Shay v. Apple Inc.*, 512 F. Supp.3d 1066, 1071 (S.D. Cal. 2021) ("On a motion to dismiss, it is the defendant's burden to demonstrate that plaintiff has failed to state a claim.") (collecting cases on the burden being on defendants). Because the defendants failed to specifically challenge any specific cause of action or specific requested relief, Miesen was not required to address all of his claims and relief. The defendants failed to meet their burden and their broad and conclusory allegations do not meet the Rule 12(b)(6) standard. The burden should not be improperly shifted to Miesen through the defendants' broad arguments that do not challenge the sufficiency of a single cause of action or a single prayer for relief.

Second, the defendants are prohibited from raising any new arguments on reply to challenge any specific causes of action or requested relief or any other matter. *Marlyn Nutraceuticals, Inc. v. Improvita Health Prods.*, 663 F. Supp. 2d 841, 848 (D. Ariz. 2009). They

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 15

should be held to their moving papers. Miesen objects to them raising any new arguments.

**H.**   **This Court Should Exclude the Matters Outside of the Pleadings Relied Upon by the Defendants or Provide Adequate Notice and Convert the Motion to One Under Rule 56.**

This Court ordered "Further *briefing* on this issue is needed" and that "*this is an extension of the underlying motion to dismiss.*" (Dkt. 1238 at 4 (emphasis added).) Rather than follow this Court's order and the required Rule 12(b)-(c) standard, the defendants improperly cited and quoted to matters and declarations in the record and submitted other matters outside of the pleadings without providing any basis for admissibility under the Rule 12(b)-(c) standards. (Dkts. 1239, 1239-1, collectively "matters".)[18] Fed. R. Civ. P. 12(d).

Thus, this Court should exclude and not consider any of those matters, including the following matters, together with all quotes, references, citations and arguments related to those matters in defendants' brief (i.e., the entire brief because those extraneous materials were the alleged facts for the brief): (a) the misleading "select" deposition transcripts for Miesen attached as Exhibit A to Mr. Glynn's Decl. (Dkt. 1239-1 at 4-10; *see* Dkt. 1239 at 6-7); (b) the two complaints and the two trial court opinions attached as Exhibits B-E to Mr. Glynn's Decl. (Dkts. 1239-1 at 11-101; *see* Dkt. 1239 at 13, 15); and (c) the declarations,[19] email and other filings cited, referenced or quoted to in the brief, specifically, Dkts. 446, 446-2, 476, 719-4, 746, 783, 783-1, 805-1, 808, 812, 812-1, 838, 941, 941-1, 941-8, 956, 997, 1020, 1124-1, 1223 (Dkt. 1239 at 3, 5-8, 8 n. 2, 9-11). While certain of those court records could be judicially noticed for certain purposes, the defendants never made that request. Miesen vehemently disputes the defendants' mischaracterization of those matters for the purposes that they are offered and, if permitted,

---

[18] The defendants failed to submit an undisputed statement of material facts as required. Loc. R. 7.1(b)(1).

[19] Despite this Court excluding John Taylor's declaration (Dkt. 1203 at 15-17) when there was no dispute regarding the testimony, the declarations submitted by the defendants should not be judicially noticed. *Henderson v. Oregon*, 203 Fed. App'x 45, 52 (9th Cir. 2006). Miesen vehemently disputes the argument and any consideration of any testimony because he and his counsel have never taken the position that his claims are *only* derivative ones.

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 16

**18-ER-4543**

Miesen's submission of omitted deposition testimony, discovery answers, and other evidence to establish those mischaracterizations. Fed. R. Evid. 201(b) & (e). Moreover, Miesen was pursuing his derivative claims as his primary ones based on Judge Dale's order. (*See* Section C.) In addition, the defendants are prohibited from making a request for judicial notice and/or providing new reasons or explanations for considering them for the first time on reply. *Marlyn Nutraceuticals, Inc.*, 663 F. Supp. 2d at 848.

Assuming the defendants had properly requested judicial notice of the four filings attached to Mr. Glynn's Declaration (Dkt. 1239-1 at 11-101), the documents would still be inadmissible for the purpose for which they were offered, i.e., to argue that Miesen's claims could not be direct in the case at bar. (Dkt. 1239 at 13, 15.) In *Taylor v. Taylor,* the defendants persuaded Judge Brudie that Donna Taylor's fraud claim was barred by the economic loss rule because no special or fiduciary duties were owed to Donna Taylor and that she needed to bring that claim as a derivative one. (Dkt. 1239-1 at 94 & n. 5.) On appeal, the defendants advanced that same argument and Donna Taylor asserted that she had direct claims. (App. T at 40 & n. 10; U at 54-55.) The Idaho Supreme Court agreed with Donna and reversed, holding "the district court erred in dismissing Donna's fraud claim." *Taylor*, 163 Idaho at 920, 422 P.3d at 1125. (App. V.) While the Idaho Supreme Court did not expressly address the arguments, they were implicitly rejected because it reversed. Moreover, Donna Taylor did not plead any claims under I.C. § 30-29-304 nor was that statute ever addressed in any briefing or order in those lawsuits. (*E.g.,* Dkt. 1239-1 at 72-101.)

Next, in *Durant v. GemCap*, the three plaintiffs (including Miesen) filed a declaratory complaint (with no claims under I.C. § 30-29-304) to have guarantees declared illegal and block any unlawful settlement with GemCap. (Dkt. 1239-1 at 11-62.) In 2015, Judge Brudie dismissed

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 17

that complaint without prejudice for lack of standing[20] and he never addressed I.C. § 30-29-304 nor was that statute ever raised or addressed any complaint, briefing or orders. (*E.g.,* Dkt. 1239-1 at 63-71.) Rather than appeal that decision (which Miesen maintains would have been reversed just as the Idaho Supreme Court did in *Taylor*), Miesen simply pleaded the claims here, which led to GemCap being named as a defendant, Dkt. 211, and further mooted John Taylor's defense that Miesen was required to assert the GemCap related claims in the case at bar. (App. S at 4.) Moreover, there is no reason to believe that the Idaho Supreme Court would not have reversed in *Durant* if Miesen and the other two shareholders had appealed for the same reason that it implicitly reversed, in part, in *Taylor*.

In sum, the defendants mischaracterize what has transpired in *Taylor* and *Durant*. Thus, *Taylor* and *Durant* do not stand for the propositions asserted by the defendants and *Taylor* wholly undermines the defendants' position. *Taylor* and *Durant* also never involved claims brought under I.C. § 30-29-304. Accordingly, the two complaints and two orders should not be judicially noticed for purpose of the defendants' arguments, including for their baseless attacks on Miesen and his counsel.[21] (Dkt. 1239 at 13-14.)

If all matters which are not permitted for consideration under Rule 12(b)-(c) standards for this motion are not excluded, this Court should provide the required notice and convert the motion to one for summary judgment, so Miesen will have a fair opportunity to submit all necessary evidence and arguments.[22] *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542,

---

[20] Res judicata does not apply to a dismissal for lack of standing. *Saint Alphonsus Reg'l Med. Ctr. v. Bannon*, 128 Idaho 41, 44, 910 P.2d 155, 158 (1995).

[21] The two complaints could be judicially noticed to show that the allegations of improper corporate governance have been made in other actions to further support the argument that there is no possible way that the AIA Entities and their rogue management did not know about their ultra vires and unauthorized conduct.

[22] To the extent Miesen addresses or cites to any of those matters in this response, he is not waiving this objection that those matters were submitted outside of the pleadings and should be excluded or this motion converted to one for summary judgment.

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 18

1549 (9th Cir. 1989); Fed. R. Civ. P. 12(d).

### I.   This Court Should Consider Certain Matters as Permitted by Rule 12(b)(6).

Consistent with the Rule 12(b)-(c) standards that allow courts to take judicial notice and consider documents whose contents are alleged in the TAC and whose authenticity is not disputed, *U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003), Miesen respectfully *renews* his request (Dkt. 1131 at 8-9) that this Court consider under the incorporation by reference doctrine and/or judicial notice of AIA Services' amended articles and restated bylaws (Dkts. 1131-10, 131-11), including because they pertain to the unauthorized, ultra vires acts and lack of power at issue (under both judicial notice and the incorporation by reference doctrine). (Dkt. 211.)

In addition, Miesen requests that this Court take judicial notice of:[23] **(a)** the AIA Entities Answer in *Durant v. GemCap* (App. S), which shows that the AIA Entities (through John Taylor) asserted that the GemCap related claims must be asserted here (which Miesen did); and **(b)** Donna Taylor's Appellant's Brief (App. T), the Respondents Brief (App. U), the opinion in *Taylor v. Taylor*, 163 Idaho 910, 422 P.3d 1116 (2018) (App. V), which show that the defendants' arguments regarding direct claims were rejected on appeal and that Judge Brudie was reversed on the dismissal of the fraud claim that formed the basis of the defendants' arguments. (Dkt. 1239 at 13-14.)

Finally, Miesen requests that this Court take judicial notice of certain dockets cited in this response because this Court may take judicial notice of its own records for the purposes for which Miesen cites to them; specifically, Dkts. 1, 105, 108, 112, 137, 178, 185, 210, 1203, 1208, 1238.

---

[23] By signing below, Mr. Bond certifies that the documents in Appendix S-V are true and correct copies of those documents.

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 19

**J.** **In the Unlikely Event that this Court Finds Miesen's TAC Has Any Pleading Deficiencies, this Court Should Grant Miesen Leave to Amend.**

The defendants have not challenged the pleading sufficiency as to a single cause of action or any requested relief in the TAC. (Dkt. 1239.) However, in the unlikely event that there are any pleading deficiencies based on the defendants' limited arguments, leave to amend should be granted, especially when the defendants waited over five years to raise their *new* arguments. (*See* Section C.) *Rowlette*, 352 F. Supp.3d at 1020; *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

### III.   CONCLUSION

For the reasons stated above, the defendants' motion to dismiss should be denied. Miesen respectfully requests that the Court set this matter for trial because the defendants' pending motion for summary judgment, even if granted in its entirety, will not capture all of Miesen's claims and damages because the defendants never addressed I.C. § 30-29-304 and their statute of limitations arguments cannot address all of those claims either. Miesen respectfully requests that the Court also order the parties to attend a judicial settlement conference.

DATED:  This 1st day of September 2022.

RODERICK BOND LAW OFFICE, PLLC

By:     /s/ Roderick C. Bond
        Roderick C. Bond
        Attorney for the Plaintiff Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:     /s/ Andrew Schwam
        Andrew Schwam
        Attorney for the Plaintiff Dale L. Miesen

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 20

18-ER-4548

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 1st day of September 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:   jat@elamburke.com
Loren C. Ipsen:   lci@elamburke.com
Joyce A. Hemmer:   jah@elamburke.com
Bradley S. Keller:   bkeller@byrneskeller.com
Alyson A. Foster:   alyson@dempseyfoster.com
Tyler S. Waite:   twaite@campbell-bissell.com
Michael S. Bissell:   mbissell@campbell-bissell.com
Daniel L. Glynn:   dglynn@idalaw.com
Andrew Schwam:   amschwam@turbonet.com
Kim J Trout:   ktrout@trout-law.com


_/s/ Roderick C. Bond_
Roderick C. Bond

MIESEN'S SUPPLEMENTAL RESPONSE TO THE MOTION TO DISMISS - 21

DANIEL LORAS GLYNN, ISB #5113
JONES ♦ WILLIAMS ♦ FUHRMAN ♦ GOURLEY, P.A.
The 9th & Idaho Center
225 N. 9th Street, Suite 820
PO Box 1097
Boise, ID 83701
Telephone:  (208) 331-1170
Facsimile:  (208) 331-1529
dglynn@idalaw.com
Attorneys for James Beck, Michael Cashman, Connie Henderson, John Taylor, Crop USA
Insurance Agency, Inc., and Crop USA Insurance Services, LLC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>                              Plaintiff,<br>vs.<br><br>HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>                              Defendants. | Case No. 1:10-CV-404-DCN-CWD<br><br>**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242]** |

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 1**

The Defendants James Beck, Michael Cashman, Connie Henderson, and R. John Taylor (the "Individual Defendants"), and Crop USA Insurance Agency, Inc. as well as Crop USA Insurance Services, LLC (collectively referred to as "CropUSA Entities") submit this Memorandum in Opposition to Plaintiff's Motion to Approve the Payment of Attorneys' Fees and Costs as Filed on August 18, 2022 [Dkt. 1242].

Twelve years after this action was initiated seeking damages in excess of $90 million[1] against all the named Defendants, the Plaintiff's litigatory efforts have resulted in the complete dismissal of his derivative claim against all Defendants [Dkt. 1203] and he presently stands posed to obtain a settlement with the Defendant GemCap Lending I, LLC ("GemCap") [Dkt. 1240] which, in truth, obtains no value aside from a release of Plaintiff's own liability to GemCap as consequence of this litigation.  Despite this abject failure which has cost the very entities which he purports to represent[2] nearly $800,000 in legal fees and costs, Plaintiff nonetheless seeks over $1 million of the $1.4 million that is now deposited with the Court by Hawley Troxell Ennis & Hawley, LLP, Gary Babbit, D. John Ashby, and Richard Riley (collectively referred to as "HTEH").

Aside from the indisputable conclusion resulting from this Court's Memorandum Decision and Order of May 5, 2022 [Dkt 1203] ("Order") that Plaintiff has not prevailed in its claims against HTEH, the Individual Defendants, the CropUSA Entities or AIA Services and as such lacks the standing to assert a claim for attorney fees, Plaintiff's Motion for Fees and Costs wholly ignores

---

[1] *See,* Declaration of R. John Taylor in Response to Plaintiff's Motion to Approve Settlement and Motion for Fees and Costs as Filed on May 31, 2022 [Dkt. 1214] ("Taylor Dec."), **Exhibit A**.

[2] AIA Services Corporation ("AIA Services") and AIA Insurance, Inc. ("AIA Insurance") (collectively the "AIA Entities")

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 2**

the substantial cost that his chosen litigation tactics have taken on AIA Services. In no sense can Plaintiff assert that he has conferred a benefit, let alone a substantial or common benefit, justifying any award of fees and costs in this matter.  Based on the facts and law set forth herein, this Court should deny Plaintiff's request for attorney fees and costs so that the entirety of these settlement funds is made available for its rightful beneficiary – AIA Services.

## FACTS AND PROCEDURAL BACKGROUND

Over the course of the last fourteen years, AIA Services, its wholly owned subsidiary AIA Insurance, Inc., and the Individual Defendants who served at various times as directors of AIA Services have been the targets of a concerted series of actions by various individuals all represented by Plaintiff's counsel Roderick C. Bond. Although Plaintiff asserts the presence of these other lawsuits are "irrelevant" (MIS at 14), Mr. Bond nonetheless proudly boasts of his significant involvement in this long-tortured history, noting his "experience in dealing with many other AIA related lawsuits and the knowledge that he gained" and consequently declaring himself to be consequently so "well-versed" that he knows "more about what has occurred at the AIA Entities better than anyone other than John Taylor …" (Plaintiff's MIS at 10 & 14; Dkt. 1242-2 at ¶ 20.)

This litigation, commenced in 2010, is only one of many in this regard as Mr. Bond's actions against AIA Services and its officers and directors had their origin in his representation of Reed Taylor in the matter of *Reed Taylor v. AIA Services et al.*, CV07-00208 (Nez Perce County District Court). (Taylor Dec., ¶ 2.) Although presented as a creditor action against AIA Services, Reed Taylor asserted many of the same still unproven claims of corporate malfeasance but ultimately dismissed those claims when his rights as a creditor was concluded to be barred as a matter of law. *See*, *Taylor v. AIA Servs. Corp.*, 151 Idaho 552, 557, 261 P.3d 829, 834 (2011).

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 3**

During the pendency of the Reed Taylor matter, Mr. Bond also represented Donna Taylor, the holder of certain Class A shares in AIA Services, in an action against AIA Services, John Taylor, and Connie Henderson in the matter of *Donna Taylor v. R. John Taylor*, *et al.*, CV08-1150 (Nez Perce County District Court). Even though the present litigation had been initiated derivatively by Donna Taylor and Mr. Miesen, Mr. Bond proceeded with the filing of a separate state court derivative litigation against AIA Services and the Individual Defendants in 2013 (*Donna Taylor v. AIA Services, et al.*, CV-13-1075 (Nez Perce County District Court)) which matter was then consolidated with the prior filed matter and is still pending in the District Court for Nez Perce County. (Taylor Dec., ¶¶ 2 & 3.)   Mr. Bond still represents Donna Taylor in this action. In addition to these cases, Mr. Bond was responsible for a receivership action filed in 2009 against AIA Services on behalf of Donna Taylor (*Donna Taylor v. AIA Services*, CV CV09-02470 (Nez Perce)) which she ultimately voluntarily dismissed three years later. (Taylor Dec., ¶ 4.)

Mr. Bond, again representing Donna Taylor, was also the counsel of record in the matter of *Miesen v. GemCap & AIA Services*, CV CV14-01444 (Nez Perce) filed in 2014 in which the district court found the claims asserted to be derivative in nature and, as such, not properly asserted by the named plaintiffs. (*Id.*) Mr. Bond also represented Donna Taylor in an attempt to intervene in the California lawsuit between GemCap and AIA Services (*GemCap v. AIA Services*, Case No. 13-05504 (U.S. District Court for Central District of California)) which intervention was ultimately denied by the California federal district court and affirmed on appeal by the Ninth Circuit Court of Appeals. (*Id.*)

However, beyond these cases, and in addition to the instant matter's assertion of claims against HTEH, Mr. Bond has also been responsible for the assertion of malpractice claims against

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 4**

multiple attorneys who have represented AIA Services including the case of *Reed Taylor v. Eberle, Berlin, Kading, Turnbow & McKlveen*, CV OC 0918868 (Ada County District Court), *Reed Taylor v. Scott Bell*, Case No. 12-2-10803-0 SEA (King County, Washington), and *Miesen v. Munding* 2:18-CV-270 (U.S. Dist. Court of WA). (Taylor Dec., ¶ 5.)

Of import, Mr. Bond was also the attorney of record for Reed Taylor in *Taylor v. McNichols*, CV 98-1763 (Nez Perce County), an action against the then attorney for certain of the Individual Defendants, which was ultimately consolidated with a contemporaneously filed lawsuit by him that included Richard Riley and John Ashby with regard to their representation of AIA Services (*Reed Taylor v. Babbit*, Case No. CV08-1765 (Nez Perce)). (Taylor Dec., ¶ 6.) This lawsuit was not only dismissed but the defendants were awarded their fees as the Court found it to have been "brought spuriously and without foundation, for harassment purposes only." *Taylor v. McNichols*, 149 Idaho 826, 849, 243 P.3d 642, 665 (2010). Mr. Bond also represented Reed Taylor in action against the Defendants Richard Riley and HTEH in yet another action (*Reed Taylor v. Riley*, Case No. CV-OC-09-18868) wherein the Idaho Supreme Court again dismissed the claims against Mr. Riley and HTEH and once again awarded attorney fees as the claims were barred by the doctrine of res judicata. *Taylor v. Riley*, 162 Idaho 692, 709, 403 P.3d 636, 653 (2017). (*Id.*)

The consequences of these various litigations over the last fourteen years have not only had a chilling effect on the ability of AIA Services and the Individual Defendants to retain and maintain legal counsel, but have had a crippling financial consequence on AIA Services over this period of time.  (Taylor Dec., ¶¶ 7 & 8; **Exhibit B**.) As it relates to this specific litigation, and through to June 1, 2022, AIA Services has incurred at least $786,961.02 in legal fees and related

"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS
FILED ON AUGUST 18, 2022 [DKT. 1242] - 5

18-ER-4553

costs in its defense of the claims against it[3] and the Individual Defendants named for their role as officers and directors. (Taylor Dec., ¶ 8.) However, when considering the costs of the entirety of the various litigations prompted by Plaintiff's counsel the total amount of attorney fees and related costs to AIA Services is in excess of $3.3 million. (Taylor Dec., ¶¶ 7 & 8; **Exhibit B**.)  This amount includes the nearly $300,000 Mr. Taylor has advanced to AIA Services in the payment of the defense of James Beck, Michael Cashman, Connie Henderson, as well as himself for their actions as officers and directors of AIA Services and which amounts are obligations of AIA Services pursuant to Article XI of its bylaws.[4] (Taylor Dec., ¶ 8.)

In addition, in the various litigations asserted against AIA Services, just as in this case, the clients represented by Mr. Bond have also named as defendants individuals who have served as officers and directors of AIA Services. This, combined with AIA Services' consequent inability to obtain a policy of insurance that would provide for director and officer coverage, has quite literally left John Taylor as the last person standing with regard to the affairs of AIA Services. (Taylor Dec., ¶ 9.)

As a consequence, not only has John Taylor been responsible for his own defense, but solely responsible for the compliance of the AIA Entities and the CropUSA Entities with regard to the litigation demands of this litigation. (*See* Dkts. 925, 939, & 994; Taylor Dec., ¶ 10.) This

---

[3] Plaintiff criticizes the AIA Entities for not "remain[ing] neutral" despite the fact it was Plaintiff himself who refused to accept its nominal status in the derivative lawsuit by seeking default against it. (MIS at 12; Dkt. 1180.)

[4] Plaintiff also asserts that this indemnification obligation is irrelevant as the Individual Defendants will not be entitled to indemnity. However, in support of this assertion Miesen relies upon his assertion that he still possesses direct claims. While the Individual Defendants do not agree that there are direct claims to be made against them, Plaintiff's argument ignores the fact that I.C. § 30-29-852 addresses the indemnification obligations upon dismissal of the derivative claims – an action that has unquestionably occurred by virtue of this Court's Order.

"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 6

has required his response to approximately 1,300 individual discovery requests, the location, assembly, organization, and production of over 1.5 million pages of documents, and his attendance at nearly eight (8) full days of deposition. (*Id.*) This discovery obligation has been a weighty imposition beyond the fact of compliance itself as despite the voluminous amount of discovery propounded by Plaintiff and responded by Defendants, the record evidences Plaintiff's pattern of flooding the Court, and opposing parties, with wide-ranging generalized assertions of non-compliance that were either accompanied by whole scale document dumps that expected this Court and counsel to sleuth through the documents to find support for Plaintiff's positions or, alternatively, possessed only the most scant amount of factual support.

This was evident from the outset as the very first order of the Discovery Master entered on November 13, 2018, chided the Plaintiff for his presentment of a motion to compel wherein neither "the Motion, the Memoranda in Support nor the Declarations provide information in an organized, usable fashion as required by D. Idaho L. Pract. Civ. R. 37.2…" (Dkt. 476 at 19.) As a consequence, the Discovery Master was required to identify with specificity how such motions must be presented. (Dkt. 476 at 20.) Nonetheless, nine months later, the Discovery Master was again forced to remind Plaintiff of his non-compliance with the presentation requirements stating "the conditions concerning renewed motions to compel were established to, among other things, make the process of using a Discovery Master as efficient and inexpensive as possible. Plaintiff's Fifth Motion to Compel re: GemCap is counterproductive to that objective." (Dkt. 662 at 4.) (*Emphasis added.*)

In another example, and as specifically concerning Mr. Taylor, the Discovery Master concluded that Plaintiff's Eighth Motion to Compel was utterly deficient as "Miesen has provided

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 7**

little documentation or evidence concerning what was produced by the AIA Entities and little explanation why it is insufficient." (Dkt. 939 at 5.) Nevertheless, the Discovery Master noted that as Plaintiff's motion identified a single summary page which he asserted he possessed no information concerning the Discovery Master compelled Mr. Taylor to produce documents related to this summary page. (*Id.* at 6.) Thereupon, Mr. Taylor submitted his Declaration in compliance with the Discovery Master Order which Declaration expressly refuted the assertion of Plaintiff that he was not in possession of any documents related to this summary page with specific identifications to the previously provided documents by bates number that were responsive to the document in question. (Dkt. 1003 at ¶ 4.) This Court noted this procedural history in its ultimate affirmance of Judge Dale's denial of Plaintiff's Eighth Motion to Compel. (Dkt. 1049.)

Beyond the vexatious manner in which Plaintiff pursued discovery,[5] which discovery would likely still be ongoing if the Court had not ultimately stepped in to cease the further extensions of time sought by Plaintiff,[6] the docket in these proceedings evidences the burden and cost imposed by Plaintiff's litigation tactics. It is indeed noteworthy that while Plaintiff appears to proudly identify the presence of over 1,200 separate dockets (nearly 3,000 if "sub-docket" numbers are to be included)[7] Plaintiff fails to identify that Plaintiff himself was responsible for the majority of these filings nor does he note that he was unsuccessful in the obtainment of the relief

---

[5] Plaintiff had also expressed an intention to take the depositions of upwards of seventy-one individuals/entities thus necessitating the parties to file a Motion for Protective Order in regards to such an assertion – a position he ultimately dropped in the face of said motion. (Dkt. 638.)

[6] "Discovery in this matter has lingered for far too long for any party to reasonably argue they have not had adequate time." (Dkt. 865 at 2.) Despite the clear expression from the Court that the deadlines for the completion of discovery and presentment of motions to compel have expired, Plaintiff has made known his position to continue such actions under the disguise of contempt actions. (Dkt. 1008.)

[7] Dkt. 1242-2 at ¶ 8.

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 8**

sought by the majority of the motions he presented.  For example, there are no less than thirty-five separate orders of the Discovery Master appointed in this case, the vast majority of which were either initially presented or appealed by Plaintiff. This includes Plaintiff's multiple failed efforts to compel the on-going communications between the Defendants and their counsel(s) as well as the attorney-client communications of the AIA Entities itself. (Dkt. 476, 649, 697, 880, and 994.) Beyond the proceedings incidental to the matters presented to the special discovery master, the record is replete with Plaintiff's motions either expressly identified as reconsideration or otherwise seeking the same relief under different disguise. Moreover, Plaintiff's conduct in these proceedings has resulted in the imposition of sanction against him on two separate occasions.[8] (Dkt. 756 & 777.)

In the end, it should come as no surprise that AIA Services and the Individual Defendants have incurred nearly $800,000 in litigation costs specifically related to this matter to the obvious detriment of AIA Services' financial stability. Yet, the end consequence of Plaintiff's purposeful litigation strategy in this matter has been the exclusion of his only attempt at a timely disclosed expert (Richard McDermott) and the exclusion of his clearly untimely disclosed experts Patrick Moran and Larry Hile. Even more significantly, the exclusion of these individuals is a moot point, in view of this Court's Order dismissing with prejudice all of the derivative claims asserted by Plaintiff in this matter.  Finally, despite the addition of GemCap as a party to the litigation thereby increasing the cost and burden of the other defendants in the case who were forced to take part in

---

[8] "Bond has been an insistent and aggressive advocate for Plaintiff in the discovery portions of this litigation that the Discovery Master has had an opportunity to observe. The Discovery Master does not criticize these characteristics so long as the Rules of Civil Procedure and Orders of the Court are followed. There is a risk, however, that these characteristics, if not checked, could lead to further Court Order violations as the discovery deadline approaches." (Dkt. 714 at 6.)

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 9**

the Plaintiff's stratagem, the Plaintiff has now proposed to the Court a settlement of value only to Plaintiff himself by extricating him from liability of costs owed.[9]  In sum, Plaintiff's litigation has been full of sound and fury, yet ultimately resulting in nothing but a substantial cost and detriment to AIA Services - the very entity that Plaintiff purports to represent.

Plaintiff cannot be said to have prevailed in this litigation nor can Plaintiff be said to have conferred a substantial or common benefit upon AIA Services. As such, Plaintiff cannot claim entitlement to attorney fees and costs in any amount, let alone the amount sought at the expense of AIA Services.

### ARGUMENT

Before addressing the Plaintiff's present motion, it should be noted that Plaintiff presents a bit of a procedural conundrum. Plaintiff initially filed his request for attorneys' fees and costs on June 1, 2022, incidental to the motion to approve the HTEH settlement.  (Dkt. 1214.) However, after all parties had filed extensive objections to the assertion of this claim, the Plaintiff withdrew the motion. (Dkt. 1225.)  Thereafter, on August 18, 2022, Plaintiff filed the instant Motion for attorneys' fees and costs. Whether the Plaintiff's motivation to do so was an attempt to remove at least one of the parties from the argument as to the propriety of his claim for fees or to separate the fee request from a hearing in which shareholders and other interested parties might be present to such request would be speculative. Nonetheless, it is indeed telling that after the passage of time and the review of the various objections made, Plaintiff's initial assertion of a legal basis for the recovery of attorney fees and costs premised on Idaho Code 30-29-746(a) with only a passing secondary argument for recovery under a "common fund" doctrine has now been swapped in their

---

[9] *See* Dkt. 1246 and 1246-1.

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 10**

priority and substance.  Plaintiff's decision to do so should be acknowledged for what it is – an effort to evade the clear legal authority which provides that a party who fails to satisfy the derivative demand requirements lacks the standing to make a claim for attorney fees and costs. The resolution of this issue is dispositive of his claim, even if a substantial or common benefit could be argued – which the foregoing demonstrates it cannot be.

**A.      Plaintiff Lacks Standing to Assert an Entitlement to Expenses Under Idaho Code 30-29-746(1).**

On May 5, 2022, this Court ruled that Plaintiff had wholly failed to comply with the pre-litigation demand requirement of Idaho Code 30-29-742.  (Order at 50.)  As a consequence, this Court has dismissed <u>with prejudice</u> the derivative claims asserted in this litigation. As this Court is aware from Defendants' recent filing (Dkt. 1239), this dismissal with prejudice of the derivative claims results in the effective dismissal of all claims of the Plaintiff in this matter.  Consequently, the dismissal of the Plaintiff's derivative claims for failure to comply with the pre-suit demand requirements prohibits Plaintiff's claim entitlement to an award of attorney fees and costs.

This is the precise conclusion that was reached in the case of *Jerue v. Millett*, 66 P.3d 736, 748 (Alaska 2003). Although the Alaska statute which provided for a discretionary award of expenses to a derivative plaintiff is slightly different than Idaho Code 30-29-746, its analysis for the denial of a derivative plaintiff's request for attorney fees is nonetheless insightful to the present cause. In *Jerue*, the derivative plaintiffs had filed suit without making the requisite statutorily required pre-suit demand. The derivative plaintiffs asserted that they should be excused from the pre-suit demand as such would have been futile.  However, the Alaska Supreme Court affirmed the trial court's conclusion that the derivative plaintiffs were not entitled to assert a futility defense and as such the case required dismissal.

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 11**

Having so ruled, the court then addressed the derivative plaintiffs' request that they were nonetheless entitled to attorney fees as their lawsuit purportedly prompted the corporation to undertake many of the matters they raised in the complaint.  Noting the similar policy reasons that compel compliance with the pre-suit demand as found by this Court in its Order, the Alaska Supreme Court held:

> In the narrow context of derivative suits, failure to make a demand or prove that demand was excused is fatal to an award of attorney's fees and costs because a pre-suit demand might have prompted remedial action without need for litigation.  The policy rationale of the demand requirement dictates this result. Demand is required to give a corporation the opportunity to rectify an alleged wrong without litigation and to control any litigation which does arise. Awarding litigation expenses without a demand or proof of demand excuse would undermine the demand requirement and these policy objectives.

*Jerue*, 66 P.3d at 747. As a result, the Alaska Supreme Court affirmed the denial of the derivative plaintiffs' request for expenses.

Similarly, the Supreme Court of New York recognized that "[t]he demand requirement, which determines a shareholder's right to prosecute the claim, is universally held to be a substantive requirement." *Cent. Laborers' Pension Fund v. Blankfein*, 971 N.Y.S.2d 282, 287 (App. Div. 1st Dept. 2013) As such, "[t]o award fees to a derivative plaintiff who has neither made a demand nor alleged demand futility, upon the mooting of the suit by board action promptly after it was filed, would reward that plaintiff for unjustifiably wresting the management of the corporation from those to whom it is entrusted by law and by the rest of the shareholders." *Id.*  For this reason, the Supreme Court of New York held:

> Absent a showing that the demand requirement has been complied with or excused, a derivative plaintiff has no justification for acting on behalf of the corporation. Under such circumstances, denying that plaintiff compensation from the corporation for any benefit allegedly conferred by the litigation does not constitute

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 12**

**18-ER-4560**

unjust enrichment, and the denial of fees fully accords with the doctrine of substantial benefit.

*Id.*, 971 N.Y.S.2d at 288 (App. Div. 1st Dept.).  *See also, Pipefitters Local No. 636 Defined Benefit Plan v. Oakley, Inc.,* 104 Cal. Rptr. 3d 78, 84 (2010) (denying plaintiff's request for fees where there had been no pre-suit notification even though plaintiff had ultimately obtained the relief requested stating that while plaintiff sought the court's applause for the result "since delay defeats equity, we will hold our applause."); *Jesseph v. Dig. Ally, Inc.*, 472 P.3d 674, 679 (Nev. 2020) (adopting the "no suit, no fee" approach to requests for awards of expenses by derivative plaintiffs).

Plaintiff appears to rely upon *Staton v. Boeing Co.*, 327 F.3d 969 (9th Cir. 2003) for the proposition that Plaintiff can obtain by the "common fund" doctrine that which is prohibited by his lack of standing to assert a fee request under I.C. 30-29-746(a). However, *Staton* stands for no such principle. Rather than permitting the "common fund" doctrine to obtain an award of fees not otherwise recoverable, the Ninth Circuit in *Staton* addressed whether a settlement agreement that included an award of fees could also include an agreement that the reasonableness of the attorney fees could be measured using a risk multiplier factor which would not be available under the applicable fee-shifting statute. Thus, *Staton* <u>does not</u> stand for the proposition that a party who is not otherwise entitled to an award of attorney fees may nonetheless obtain attorney fees – a point expressly recognized in the other case cited by Plaintiff. As the Court in *Cty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1327 (2d Cir. 1990) stated "equally obviously, if, under a particular combination of facts, the operation of the equitable fund doctrine conflicts with an intended purpose of a relevant fee-shifting statute, the statute must control and the doctrine must be deemed abrogated to the extent necessary to give full effect to the statute." What the Second

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 13**

Circuit noted as an "obvious" inappropriate use of the common fund doctrine is precisely what Plaintiff seeks to do in the case – recover attorney fees and costs despite his clear failure to comply with I.C § 30-29-742.

This Court's Order determined that Plaintiff had wholly failed to comply with the pre-suit demand requirements of Idaho Code 30-29-742. As such, Plaintiff lacks standing to assert a claim for entitlement to expenses and the claim for such should be denied.

**B.**     **Even if Plaintiff has Standing, Plaintiff's Claim for Expenses Should Be Denied as the Settlement has Not Provided a Substantial Benefit to AIA Services.**

Even if Plaintiff could overcome the obstacle to his request based on his lack of standing to claim entitlement to expenses under Idaho Code Section 30-29-746, Plaintiff's request should further be denied as Plaintiff cannot demonstrate that he has provided a substantial benefit to AIA Services as required by the statute.  Rather, as the evidence in the record establishes, Plaintiff's litigation strategy has caused AIA Services to incur attorney fees and costs of nearly $800,000. However, these are not capped costs as Plaintiff's settlement with HTEH does not end the litigation. Rather, the Plaintiff has made very clear his intent to continue to pursue claims against AIA Services and the Individual Defendants based on their roles as officers and directors of AIA Services.  Thus, rather than conferring a benefit on AIA Services, all an approval of Plaintiff's fee request accomplishes is a replenishment of Plaintiff's war chest to ensure further hemorrhaging of the already nearly depleted financial resources of AIA Services.

Putting aside the dubious proposition suggested by Plaintiff that AIA Services is benefited by the receipt of less than one-third of the proceeds of a settlement that doesn't completely conclude the litigation and cease the further imposition of resultant costs on AIA Services, the fact that Plaintiff has been able to extract a financial settlement from HTEH should not be equated to

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 14**

having provided a substantial benefit to AIA Services. It is well recognized that the focus in a fee request arising out of derivative lawsuit should not be upon the amount recovered but whether the corporation received substantial non-monetary benefits of the litigation. *Kaplan v. Rand*, 192 F.3d 60 (2d Cir. 1999). Thus, the Second Circuit in *Kaplan* recognized that "[i]t is by now also well established that an award of counsel fees is only justified where the derivative action results in a substantial non-monetary benefit to a corporation." *Kaplan*, 192 F.3d at 69.

The Third Circuit concluded likewise, holding that "[a] plaintiff should not receive a fee in derivative litigation unless the corporation, by judgment or settlement, receives some of the benefit sought in the litigation or obtains relief on a significant claim in the litigation." *Zucker v. Westinghouse Elec. Corp.*, 265 F.3d 171, 176 (3d Cir. 2001). In *Zucker*, the derivative plaintiff's request for attorney fees was denied where he was unable to demonstrate that the corporation "was better off because of the institution and settlement of the derivative litigation than it would have been if the litigation had not been brought in the first place." *Id.,* 265 F.3d at 177. Accordingly, in order to claim entitlement to attorney fees, "a substantial benefit must be something more than technical in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest." *LeVanger v. Highland Estates Props. Owners Ass'n*, 80 P.3d 569, 576 (Utah 2003).

In this case, Plaintiff cannot demonstrate that AIA Services is better off because of the litigation and the settlement with HTEH than it would have been without either of these events. Plaintiff initiated this lawsuit seeking $90 million in damages as a result of the numerous allegations of malfeasance by the named Defendants and yet determined to settle the case with the

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 15**

only defendant with any meaningful financial resources in view of its insurance coverage for $1.4 million. This $1.4 million dollar settlement has come at the expense of between nearly $800,000 and $3.3 million in legal fees and costs and with Plaintiff's promise to return AIA Services "innocent" shareholders approximately $400,000 - less than a third of the settlement total.  Such is far from a "windfall" to AIA Services as claimed by Plaintiff (MIS at 8). To the contrary, the foregoing establishes that AIA Services is not better off as a result but is actually at a clear loss as a consequence of Plaintiff and his chosen counsel's actions.

Moreover, the settlement does not provide any non-monetary benefit to AIA Services. It achieves none of the relief sought but instead promises more of the same – a scorched earth litigation pursued by a sole indigent shareholder represented by an attorney with a now openly acknowledged existing and significant hard cost financial commitment in excess of $400,000 to the case.  It certainly should not be overlooked that Plaintiff acknowledges that despite fourteen years of litigation involving multiple matters across multiple jurisdictions that no other similarly situated shareholder to Plaintiff has sought involvement in this case or pursued independent litigation.[10] (MIS at page 14.)

Moreover, it should also be noted that Plaintiff's counsel acknowledged that one of the considerations supporting the approval of the settlement with HTEH is the settlement eliminates

---

[10] As noted, it certainly is a curious situation where Mr. Bond's fee and cost request of approximately $1 million on Plaintiff's behalf has a direct impact on the claimed financial interests of his other client Donna Tyler. Mr. Bond represents that Donna Taylor is possessed of an independent counsel who advises him that she approves the settlement and his fee request, but we are simply asked to take this hearsay testimony for the truth of this assertion. Likewise, the Individual Defendants object to Mr. Bond's attempt to inject the hearsay statements of two unidentified individuals who purportedly advised him that they agreed "we should get paid." (Dkt. 1242-2 at ¶ 4.)

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 16**

the risk of a fee award[11] against his indigent client.[12] (Dkt. 1214-1 at page 4.)  This Court should give due consideration to the fact that Plaintiff's failure to comply with the clear pre-suit demand requirements does indeed make AIA Services entitled to an award of fees and costs against him under Idaho Code Section 30-29-746(b).  *See McCann v. McCann*, 138 Idaho 228, 237, 61 P.3d 585, 594 (2002) (award of attorney fees 30-1-746 appropriate where case dismissed after Plaintiff's multiple failures to comply with the pre-suit derivative demand requirement).  In addition, as made evident by this Court's ruling as to Third Party Defendant Reed Taylor's request for Advancement of Fees, the dismissal of the derivative claims against the Individual Defendants triggers the mandatory indemnification obligations of AIA Services pursuant to Idaho Code Section 30-29-852.[13] Thus, in view of Plaintiff's acknowledged indigency, to award fees and costs to Plaintiff's attorney would work as a substantial detriment to AIA Services as it would be left holding a bill incurred by the Plaintiff for which Plaintiff openly admits AIA Services will not be able to recover for him.

Plaintiff asserts that it would be "unjust to allow the AIA Entities to retain the benefit from the over ten years of work and over $400,000 in costs incurred in prosecuting this lawsuit." (MIS at 5.) However, the fully developed record establishes if there were to be any assertion of

---

[11] It is unclear what other risk of fees Plaintiff, or AIA as a consequence of Plaintiff's actions as the purported derivative plaintiff, is subject to from HTEH. The parties are unaware of any claim by HTEH for unpaid fees resulting from their representation that ceased nearly a decade ago. Thus, one can only assume that Plaintiff is referring to HTEH release of the $6,975.00 sanction awarded against Plaintiff in its favor for his discovery failings. (Dkt. 777.)

[12] In addition to the statutory basis for the imposition of fees and costs against an unsuccessful derivative plaintiff, AIA Services Bylaws expressly provide for liability in this circumstance. AIA Bylaws at Section 11.11.

[13] "A corporation shall indemnify a director who was wholly successful, on the merits or otherwise, in the defense of any proceeding to which the director was a party because he or she was a director of the corporation against expenses incurred by the director in connection with the proceeding." **"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 17**

unjustness it would be to permit a party to wreak havoc upon AIA Services for ten years and then walk away from the destruction left in his wake with only his attorney's pocket filled.  Rather than provide a substantial benefit to AIA Services, Plaintiff has worked a significant detriment upon AIA Services which an approval of any amount of attorney fees and costs would only further exacerbate.   As such, Plaintiff cannot demonstrate the presence of a substantial benefit as required by Idaho Code Section 30-29-746. For this additional reason, Plaintiff's Motion for Fees and Costs should be denied.

**C.     Plaintiff Is Not Entitled to a Recovery Under the Common Fund Theory of Recovery.**

The preceding analysis forecloses Plaintiff's entitlement to any award of attorney fees and costs. However, Plaintiff's assertion that separate and apart from Idaho Code Section 30-29-746 he is entitled to forty-percent recovery of the gross recovery under a common fund theory likewise fails.  (MIS at page 3.)

Firstly, although Plaintiff has cited to Idaho law with regard to the common fund doctrine, Idaho has not extended the common fund theory of recovery beyond the context of insured and insurer. *Lopez v. Farm Bureau Mut. Ins. Co.*, 148 Idaho 515, 518, 224 P.3d 1104, 1107 (2010); *Boll v. State Farm Mut. Auto. Ins. Co.*, 140 Idaho 334, 342, 92 P.3d 1081, 1089 (2004); *Wensman v. Farmers Ins. Co.*, 134 Idaho 148, 151, 997 P.2d 609, 612 (2000).

Secondly, as the Ninth Circuit has recognized, the common-fund exception to the application of the American Rule to attorney fee requests "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). *See also, Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1326 (D. Nev. 2014). While rooted

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 18**

in principles of unjust enrichment, a court considering the application of the common fund doctrine must ensure that "the beneficiaries are expected to pay litigation costs <u>in proportion to the benefits that the litigation produced for them</u>." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 770 (9th Cir. 1977) (*emphasis added*). *See also, Winston & Strawn LLP v. FDIC*, 894 F. Supp. 2d 115, 127 (D.D.C. 2012) (stating "'[T]he unarticulated threshold requirement for application of the common-benefit doctrine is that the claimant must enjoy some form of success on the merits of the litigation.'"). Therefore, "[t]he overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007). The foregoing establishes that AIA Services has certainly not been benefited by this decade's long litigation nor could it be said to be unjustly enriched. To the contrary, AIA Services has been unjustly depleted by this litigation.

Third, it should be noted that Plaintiff himself is not even proposing a "common fund" for the relief he requests. To the contrary, as should be evident by the repeated use of the phrase, Plaintiff only seeks recovery for the individuals he deems to be "the innocent shareholders" of AIA Services. As Plaintiff must admit, this list of "innocent shareholders" excludes more than just Mr. Taylor but also any other shareholder who has not expressly allied themselves with Mr. Miesen. (Declaration of Daniel Loras Glynn In Support of Memorandum in Opposition to Plaintiff's Motion to Approve the Payment of Attorneys' Fees and Costs, **Exhibit A.**) Additionally, before any funds could be distributed to shareholders, "innocent" or otherwise, the debts of AIA Services must first be satisfied. Yet similar to Plaintiff's arbitrary delineation of "innocent" shareholders, Plaintiff's counsel has made known his position about the priority or legitimacy of debts making clear that his other client, the holder of Class A shares, is paramount

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 19**

and then dismissing other debts. Thus, there is no common fund proposed by Plaintiff and as a consequence, the assertion of a recovery under the common fund doctrine is incongruous with his stated litigation positions.

Fourth, Plaintiff's claim for a recovery under the common fund theory is inconsistent with established Ninth Circuit authority on the subject. "Although statutory awards of attorneys' fees are subject to "lodestar" calculation procedures, a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). In this regard it has been long held by the Ninth Circuit that under the percentage of recovery approach twenty-five percent of the recovery is the "benchmark." *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). *See also, Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.),* 654 F.3d 935, 942 (9th Cir. 2011) (recognizing that "courts typically calculate 25% of the fund as the "benchmark" for a reason-able fee award"); *In re Wells Fargo & Co. S'holder Derivative Litig.,* 445 F. Supp. 3d 508, 519 (N.D. Cal. 2020) (stating that "[f]or more than two decades, the Ninth Circuit has set the "benchmark for an attorneys' fee award in a successful class action [at] twenty-five percent of the entire common fund.")

However, "when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." *In re: Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result, the trial court must assure itself that the attorney fees are "not unreasonably high, so as to ensure that the class members' interests were not compromised in favor of those of class counsel." *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003).

"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 20

18-ER-4568

In this case, even if entitled under the common fund theory, Plaintiff has made no effort to demonstrate why this Court should depart from the established benchmark of 25% given the present posture of the case even if an award of fees were found to be appropriate.[14] Moreover, for all the reasons identified above as to why it cannot be said that Plaintiff has conferred a substantial benefit to AIA Services those same reasons support the conclusion that Plaintiff's counsel should not be awarded fees under the common fund theory. Once again, Plaintiff has waged a twelve-year litigation that has tapped the resources of AIA Services and now seeks a significant recovery at its expense. To award expenses in any amount would work a substantial unfairness to AIA Services. *See e.g., Kennedy v. Nicastro*, 546 F. Supp. 267, 268 (N.D. Ill. 1982) ("Lawsuits can hardly be viewed as successful from the plaintiffs' perspective if their principal result is to generate not any recovery for plaintiffs, but rather funds out of which plaintiffs' lawyers get paid."); *Lewis v. Newman*, 59 F.R.D. 525, 529 (S.D.N.Y. 1973) (Recognizing that court should scrutinize fee request of derivative plaintiff where "the principal beneficiary is the attorney representing the plaintiff and not the corporation"); *United Operating Co. v. Karnes*, 482 F. Supp. 1029, 1032 (S.D.N.Y. 1980) (finding it "hard to justify" derivative plaintiff fee request where "the litigation result in this case was to march up the hill, and then to turn and march down again …")

Thus, Plaintiff should not be entitled to a recovery under the common fund theory.

**D.     Plaintiff has not Demonstrated Entitlement to the Costs Sought.**

As a final matter, aside from the issues that should prevent Plaintiff's entitlement to attorney fees and costs entirely as addressed above, the Individual Defendants and CropUSA make

---

[14] It should also be recognized that Plaintiff as part of this request has not submitted the actual written retainer agreement supporting his assertion as to the nature of the fee agreement.

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 21**

an objection to the nearly $400,000 in costs sought by Plaintiff. The record establishes that in no sense is Plaintiff a prevailing party, which is the predicate demonstration for an award of costs. Fed.R.Civ.P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party.") Plaintiff is in no sense the prevailing party in this matter. The entirety of Plaintiff's claims against HTEH, AIA Services, the Individual Defendants, and the CropUSA Entities have been dismissed with prejudice. Although Plaintiff has been able to obtain a financial settlement with HTEH despite this complete loss, it has done so with no acknowledgment of fault by HTEH and without obtaining any substantive relief in this matter.  Rather, even in the face of the settlement, Plaintiff faces the task now of seeking to obtain the reversal of this Court's Order – a relief which the Ninth Circuit has already previously rejected in the case of *Miesen v. Munding*, 822 F. App'x 546, 2020 U.S. App. LEXIS 24053, 2020 WL 4364015 (9th Cir. 2020).  Thus, Plaintiff's attempt to impose the entire costs of his chosen litigation strategy upon AIA Services, the entity against which Plaintiff's claims have been dismissed, in an only partially resolved case is simply inappropriate.

Moreover, Plaintiff has not cited to any rule or provision which would allow the recovery of any of the expenses to which he seeks as "costs."  Federal Rule of Civil Procedure 54 only refers to "costs" to the prevailing party, however the only costs permitted for recovery, absent statutory or contractual provision otherwise, are those identified in 28 U.S.C. § 1920 which doesn't identify any of the items that Plaintiff seeks compensation at AIA Services expense.[15] *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S. Ct. 2494, 2499 (1987) (holding absent explicit

---

[15] Plaintiff has also not complied with District Local Rule Civ 54.1 (Civil) which provides for the manner in which claims for costs are to be presented.

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 22**

statutory or contractual authorization "federal courts are bound by the limitations set out in 28 U. S. C. § 1821 and § 1920."); *Phila. Mortg. Tr. v. Touche Ross & Co.*, 930 F.2d 306, 310 (3d Cir. 1991) (holding that as costs are defined by 28 USC 1920, prevailing party could not recover the costs of party's expert witnesses); *Winniczek v. Nagelberg*, 400 F.3d 503, 504 (7th Cir. 2005) ("Fed. R. Civ. P. 54(d) …allows only those items to be taxed that are listed in the costs statute, 28 U.S.C. § 1920.")

Finally, the Ninth Circuit has recognized that the Court should not separate from its consideration the settlement as separate and apart from an award of attorney fees, but rather as a package deal.  *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 943 (9th Cir. 2011). Thus, in considering Plaintiff's request for expenses in the amount of $398,787.49 along with attorney fees in the amount of $560,000, the Plaintiff is essentially requesting an award of nearly $1 million ($958,797.49); an amount certainly far in excess of the 25 percent benchmark without any justification.  Thus, even if Plaintiff can prove himself to be a prevailing party to have a claim for an award of costs, and is entitled to recover costs beyond those provided by 28 USC 1990, this Court should not permit Plaintiff to obtain a total recovery that is essentially is two-thirds recovery to Plaintiff.

With that said, a few specific objections to certain categories of costs will be briefly noted here. At the outset, Plaintiff has not provided this Court with any substantiation of the costs asserted with regard to each and every item sought and, consequently, each and every proffered cost should be rejected.

**Experts Fees**. Plaintiff is correct to expect an objection to the assertion that he should be entitled to recover the fees allegedly incurred for Mr. McDermott (approximately $240,000) as

"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 23

18-ER-4571

well as Mr. Hile (approximately $30,000). (MIS at 13; Dkt. 1214-5.) Given the reasons for their exclusion, Plaintiff's futility should not be a cost to be suffered by the proper recipient of the funds – AIA Services.

**Discovery Master Fees**.  There is no doubt Mr. Lombardi undertook a herculean task and should be paid for his efforts – he certainly has been by the other parties to the litigation.  However, an objection is made to impose the Plaintiff's share of these costs on AIA Services where the record makes clear that the majority of the costs were incurred as a consequence of Plaintiff's unsuccessful efforts, constant appeals, and repeated acts which, as found by the Discovery Master himself, were counterproductive to the efficient and inexpensive use of the discovery master process. (Dkt. 662 at 4.)

**Electronic Research**. Plaintiff also seeks the recovery of $12,000 for electronic research. (Dkt. 1242-2 at 29.)  However, this request should be denied as Plaintiff has failed to demonstrate that these legal research costs are the sort typically billed separately to the client and that the fees are reasonable and necessary. *See Wolfe v. Allstate Prop. & Cas. Ins. Co.*, No. 1:18-cv-00408-CWD, 2022 U.S. Dist. LEXIS 82703, at *26 (D. Idaho Feb. 7, 2022) (request denied where plaintiff's request for electronic research was nothing more than the gross amount billed).

**Independent Contractor Paralegal Fees**. Plaintiff also requests the recovery of "over $60,000" to pay an independent contractor paralegal but presents no supporting evidence of this cost. (Dkt. 1242-2 at 27.) This request in particular should be excluded for lack of substantiation, but moreover, because Plaintiff simply cannot have it both ways, *to wit* claim recovery of legal fees under a contingency fee arrangement while claiming reimbursement of paralegal fees presumably on an hourly basis.  *See also, Hines v. Hines,* 129 Idaho 847, 855, 934 P.2d 20, 28

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 24**

(1997) ("Fees for paralegal services clearly are not contemplated as awardable attorney's fees or costs under I.R.C.P. 54(e)(3).")

**Interest**.  Plaintiff also makes the astounding request for the inclusion of interest at 12% for all the costs incurred by his counsel in the total amount of an estimated $75,000. (Dkt. 1242-2.) There is simply no authority for this claimed cost.

**Mediation**.   After imposing upon the Defendants the use of a San Francisco based mediator, which mediation required all parties to travel and lodge in San Francisco, and thrusting more than half of the $24,000 mediator fee upon the AIA Entities, CropUSA Entities, and the Individual Defendants, the Plaintiff should not be enabled to shuck his share of these costs.

## CONCLUSION

Based upon applicable law and the facts presented, Plaintiff is not entitled to an award of attorney fees and costs under any theory of law.[16]

DATED This 8th day of September, 2022.

JONES ♦ WILLIAMS ♦ FUHRMAN ♦ GOURLEY, P.A.

 /s/   Daniel Loras Glynn
DANIEL LORAS GLYNN
Attorneys for Individual Defendants and CropUSA

---

[16]The identified parties join and incorporate all other objections raised by themselves any other party to the Plaintiff's request for attorney fees and costs whether made to Dkt 1214 or 1242.

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 25**

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of September, 2022, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF System which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Roderick Cyr Bond | rod@roderickbond.com |
| Andrew Schwam | amschwam@turbonet.com |
| Michael S. Bissell | mbissell@campbell-bissell.com |
| Tyler S. Waite | twaite@campbell-bissell.com |
| Jeffrey A. Thomson | jat@elamburke.com |
| Loren C. Ipsen | lci@elamburke.com |
| Joyce A. Hemmer | JAH@ElamBurke.com |
| Bradley S. Keller | bkeller@bryneskeller.com |
| Alyson Anne Foster | alyson@dempseyfoster.com |

*/s/ Daniel Loras Glynn*
Daniel Loras Glynn

**"INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS AS FILED ON AUGUST 18, 2022 [DKT. 1242] - 26**

DANIEL LORAS GLYNN, ISB #5113
JONES  WILLIAMS FUHRMAN GOURLEY, P.A.
225 N. 9th Street, Suite 820
PO Box 1097
Boise, ID 83701
Telephone: (208) 331-1170
Facsimile: (208) 331-1529
dglynn@idalaw.com

*Attorneys for Individual Defendants & CropUSA Entities*

KIM J. TROUT, ISB #2468
TROUT LAW, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID 83703
Telephone: (208) 577-5755
Facsimile: (208) 577-5756
service@trout-law.com

*Attorneys for AIA Entities*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>              Plaintiff,<br><br>vs.<br><br>HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, | Case No. 1:10-CV-404-DCN-CWD<br><br>**JOINT REPLY MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS** |

JOINT REPLY MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES AND AIA
ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 1

18-ER-4575

an Idaho corporation; AIA INSURANCE, INC.,
an Idaho corporation; CROP USA INSURANCE
SERVICES, LLC, an Idaho limited liability
company; and GEMCAP LENDING I, LLC, a
Delaware limited liability company,

Defendants.

In accordance with this Court's Order dated August 9, 2022 [Dkt. 1238], James Beck, Michael Cashman, Connie Henderson, and R. John Taylor (the "Individual Defendants"), Crop USA Insurance Agency, Inc. and Crop USA Insurance Services, LLC (collectively referred to as "CropUSA Entities"), as well as AIA Services Corporation and AIA Insurance, Inc. (collectively referred to as the "AIA Entities") jointly submit this Reply Memorandum Regarding Derivative Versus Direct Claims.

### ARGUMENT

**A.    Plaintiff Cannot Rely Upon I.C. § 30-29-304(b)(1) to Seek Redress for Past Acts.**

In the face of this Court's entire dismissal of his derivative claims, Plaintiff seeks to recast his claims as direct claims for alleged ultra vires action that can be pursued under Idaho Code § 30-29-304(b)(1). However, a plain reading of the statute in conjunction with long-standing Idaho law on the subject of the sole relief afforded by this provision requires the rejection of this assertion.

Plaintiff acknowledges Count VIII is directed to injunctive relief sought pursuant to I.C. § 30-29-304(b)(1) for alleged ultra vires actions. (Plaintiff Memo at 2.) However, despite acknowledging this section is directed to injunctive relief, Plaintiff nonetheless asserts the plain language of the statute grants the Court the power to travel back in time, in this case, as far back as a decade or more to void transactions and award monetary relief. This is not within the scope

**JOINT REPLY MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 2**

of the statute or, at least, as concerns a claim made under subsection (b)(1). The plain language of I.C. § 30-29-304(b)(1) is directed entirely at prospective relief as it provides only that alleged ultra vires claims may be asserted by a shareholder "[i]n a proceeding by a shareholder against the corporation <u>to enjoin the act</u>." (*Emphasis added.*)  An injunction, by its very nature is prospective, and this is the prerequisite to any claim for relief under I.C. § 30-29-304(b)(1). Thus, subsection (b)(2) which provides for damages in the appropriate case can only be construed to be properly awarded when the circumstances justifying an injunction are present – a situation which is not present in this decade-old litigation and certainly not applicable to any arguable ultra vires action.

The Idaho Supreme Court has long held that an injunction may only be had to restrain a future act, not a past act.  In the case of *Wilson v. Boise City*, 7 Idaho 69, 72, 60 P. 84, 85 (1900) the plaintiff owner of property filed an action to enjoin the sale of his real property.  However, the city moved to dismiss the complaint asserting that the plaintiff was not entitled to an injunction as the sale had already occurred. The trial court granted the motion to dismiss and the Supreme Court affirmed recognizing that "[a] writ of injunction can only issue, under our statutes, to restrain the commission of a future or contemplated act." *Wilson*, 7 Idaho at 74, 60 P. at 85-86.  *See also, Brady v. City of Homedale,* 130 Idaho 569, 572-73, 944 P.2d 704, 707-08 (1997) ("[a]n injunction cannot restrain an act already completed."); *Abels v. Turner Tr. Co.*, 31 Idaho 777, 779, 176 P. 884, 885 (1918) ("The act sought to be enjoined has now been done, and nothing this court can do, or direct the trial court to do, will alter that fact or result in relief to appellant."); *Roberts v. Kartzke*, 18 Idaho 552, 556, 111 P. 1, 2 (1910) (motion to dismiss granted where the act sought to be enjoined had been performed).

**JOINT REPLY MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 3**

Despite this long line of clear authority that the Idaho courts cannot enjoin a past act, this is the precise relief sought by Plaintiff under this section. Plaintiff's sole example of what he contends to be "countless ultra vires acts and transactions in the TAC" is the perfect illustration of this fact.[1] (Plaintiff Memo at 4.) Plaintiff identifies his allegations concerning AIA Services' guarantee of a loan by GemCap Lending I, LLC ("GemCap") – a transaction which the Third Amended Complaint ("TAC") alleges occurred on November 23, 2011. (TAC at ¶ 136.) Plaintiff then also identifies the fact that AIA Services and GemCap entered into a settlement agreement – a settlement agreement that the TAC alleges occurred on January 9, 2015. (TAC at ¶ 148.) Despite the admission in the TAC that these transactions occurred in 2011 and 2015, Plaintiff's Count VIII requests that this Court "enjoin AIA Services and AIA Insurance from complying with the Guarantees, Settlement Agreements and related instruments." (TAC at ¶ 229.) Thus, Plaintiff's sole example demonstrates that what Plaintiff seeks by remedy under I.C. § 30-29-304(b)(1) is an order of this Court enjoining past acts – a remedy not recognized by established case authority in the state of Idaho.

This is why the conclusion that Plaintiff's failure to assure the service of a compliant pre-suit demand requires the dismissal of all Plaintiff's claims including the claims in Count VIII for relief under I.C. § 30-29-304. As concerns a shareholder claim for an ultra vires action of a corporation, a shareholder can seek to enjoin an act and, if such act cannot be enjoined because

_____

[1] Aside from the transaction with GemCap, the other "countless ultra vires acts and transactions" in Count VIII are generally described as a request that this Court "enjoin[] any other transfers, payments, obligations, notes, contracts, agreements, guarantees, and instruments (including deeds) which were ultra vires (including the payment of attorneys' fees and costs for any of the defendants)..." (TAC at ¶ 71.) However, as the comments acknowledge this section is not applicable to actions concerning the validity of essentially intra vires conduct that is not approved by appropriate corporate action. Comments to Idaho Code § 30-29-304.

**JOINT REPLY MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 4**

the act has been completed as is the case here, then resort must be made to I.C. § 30-29-304(b)(2) which provides that relief can be sought "[i]n a proceeding by the corporation, directly, derivatively or through a receiver, trustee or other legal representative, against an incumbent or former director, officer, employee or agent of the corporation." This is the only proper construction of I.C. § 30-29-304 that harmonizes subsection (b)(1) with subsection (b)(2). A contrary interpretation would render not only (b)(2) superfluous because every action under (b)(2) would be subsumed by (b)(1), but it would further render the pre-suit demand requirements of Idaho Code 30-29-742 a nullity. *See e.g., Bonner Cty. v. Cunningham*, 156 Idaho 291, 296, 323 P.3d 1252, 1257 (Ct. App. 2014) (recognizing the cannon of construction that a statute should be construed to give effect to all the words of the statute and does not render any part of the statute a nullity).

In *Ex parte 4tdd.com, Inc.*, 306 So. 3d 8 (Ala. 2020), a shareholder sought to set aside a promissory note and mutual release executed by the corporation's president as an ultra vires act. As a consequence, the plaintiff shareholder, like Plaintiff herein, sought a declaration that the promissory note was "void and of no effect" and requested damages for the alleged deprivation of the corporation's assets that were acquired by foreclosure on the security agreement. The Alabama Supreme Court first recognized that the plaintiff shareholder's claim for ultra vires, breach of fiduciary duty, and breach of contract claims were all derivative in nature and, given the plaintiff's failure to comply with the pre-suit notification requirements, were subject to dismissal. *Ex parte 4tdd.com, Inc.*, 306 So. 3d at 20. In addition, the Court also noted the problematic nature of the plaintiff's request for injunctive relief[2] of a past act stating:

---

[2]Like I.C. § 30-29-304, then Alabama Code 10A-2-3.04(b)(1) provided that "[a] corporation's power to act may be challenged in a proceeding by a shareholder against the corporation to enjoin the act…"

**JOINT REPLY MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 5**

> We note that, as a part of her ultra vires claim pertaining to the 2014 promissory note, Hale purports to request injunctive relief, presumably to prevent 4tdd, Martin, and MACC from acting on the promissory note. Although this Court has previously recognized that a shareholder may assert a direct ultra vires claim for prospective injunctive relief under § 10A-2-3.04(b)(1), Ala. Code 1975, see DeKalb Cty. LP Gas Co. v. Suburban Gas, Inc., 729 So. 2d 270 (Ala. 1998), Hale's request for injunctive relief attempts to prevent acts that have been consummated. Neese authorized the promissory note in 2014, well before Hale filed this action.

*Id.*, 306 So. 3d at 19 n.2. *See also, Rosen v. Cohen, 2020 Colo. Dist. LEXIS 4304 *14-15* (rejecting Plaintiff's attempt to assert ultra vires claim under statute similar to Idaho as plaintiff "brings this claim (1) individually and in an effort to seek damages and to challenge actions which have already occurred and therefore cannot be enjoined and (2) derivatively against IPE itself, neither of which fall within the limited, enumerated grounds provided in section 104(2)."); *Steele v. Diamond Farm Homes Corp.*, 464 Md. 364, 380, 211 A.3d 411, 420 (2019) (holding that in order to assert an ultra vires claim and enjoin the corporation under the ultra vires statute the shareholder must pursue a derivative action as a condition precedent).

Even one of the scholars upon which Plaintiff relies confirm this very conclusion. In his Memorandum at page 8, Plaintiff cites to Kent Greenfield, *Ultra Vires Lives! A Stakeholder Analysis of Corporate Illegality (with Notes on How Corporate Law Could Reinforce International Law Norms)*, 87 Va. L. Rev. 1279, 1280, 1355 (2001). In this article, the author himself concedes that a shareholder asserting a claim for an ultra vires action has only two options – enjoin future conduct or seek damages derivatively for past conduct. As the author stated, "Under the ultra vires doctrine explored in this Article, shareholders should be able to sue directly to enjoin any continuing unlawful conduct, or sue derivatively to recover losses from any past unlawful conduct." *Id. at* 87 Va. L. Rev. at 1376–77.

**JOINT REPLY MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 6**

Thus, in answer to the question posed by Plaintiff at Page 6 of his Memorandum as to "whether Count VIII requires a derivative demand be given 90 days before filing" the answer is unequivocally "yes." Plaintiff's only recourse for the actions he claims to be ultra vires is for alleged prior conduct to which only I.C. § 30-29-304(b)(2) is applicable. As such, Plaintiff's failure to provide pre-suit notification bars the assertion of a claim under I.C. § 30-29-304.

**B.      Plaintiff's Claims in Count VIII Cannot Include Claims Against the Individual Defendants or the CropUSA Entities.**

Plaintiff's over-extension of the scope of I.C. § 30-29-304 is not limited to just an expansion beyond Idaho's well-established rules concerning the Court's power to enjoin, but also to whom the relief can be enforced against. In Plaintiff's Memorandum, it is asserted that "[t]he plain text of I.C. § 30-29-304 simply requires a shareholder, here Miesen, to assert a claim against the corporation, here the AIA Entities and/or its management, to enjoin acts and transactions in violation of the articles of incorporation, the corporate bylaws and/or the law." (Plaintiff Memo at 1.) However, the plain text of I.C. § 30-29-304(b)(1) does not extend to the AIA Entities management let alone the CropUSA Entities. Contrary to Plaintiff's characterization, the plain language of I.C. § 30-29-304(b)(1) provides only that alleged ultra vires claims may be asserted by a shareholder "[i]n a proceeding by a shareholder against the corporation to enjoin the act." (*Emphasis added.*) Thus, even if this Court were to employ a construction of I.C. § 30-29-304(b)(1) contrary to the long-established principles pertaining to injunctive powers, such interpretation would still require the dismissal of the claims against the Individual Defendants and the CropUSA Entities as this section only pertains to actions against the corporation.

**JOINT REPLY MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 7**

**C.      Plaintiff Cannot Characterize His Derivative Claims as Direct Claims.**

It is unclear from Plaintiff's response at pages 7 – 10 whether his arguments concerning a shareholder's ability to simultaneously pursue both direct and derivative claims are limited to just the assertion of a claim under I.C. § 30-29-304 or whether it is an attempt to resurrect all claims in the TAC as both derivative and direct claims. As stated above, a plain reading of I.C. § 30-29-304 makes clear that Plaintiffs only remedy is under I.C. § 30-29-304(b)(2), which remedy is derivative by its express terms.

To the extent Plaintiff seeks to resurrect his dismissed derivative claims through a characterization of such as direct claims, this Court should reject Plaintiff's attempt to hold the conjectures of scholars over the rule of law established by the Idaho Supreme Court. As the Idaho Supreme Court has unequivocally held, the determination of whether a claim is derivative or direct is determined by a review of the complaint itself. *McCann v. McCann*, 138 Idaho 228, 233, 61 P.3d 585, 590 (2002). Thus, when the gravamen of an action asserts an injury to the corporation and not to him personally as an individual, the shareholder's claims are considered derivative and not direct. At no point in his entire response does Mr. Miesen identify a claim which is personal to himself separate and distinct from that of AIA Services and/or every other shareholder of AIA Services.  Mr. Miesen's claims are unquestionably derivative in nature and, as such, must be dismissed in their entirety.

**D.      Defendants are Not Judicially Estopped to Assert that Miesen's Claims Are Entirely Derivative in Nature.**

In a curious move, Plaintiff asserts that the Defendants should be prohibited from asserting that his claims under I.C. § 30-29-304 are derivative because this position is "diametrically opposed" to the position taken in opposition to Plaintiff's motion to amend. To the contrary, the

**JOINT REPLY MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 8**

Defendants present assertions are entirely consistent with the position taken in their Brief in Opposition to Plaintiff's Motion to Amend and Supplement Complaint. (Dkt. 185)

As argued therein, the Defendants asserted that there was no independent cause of action under I.C. § 30-29-304 as "[t]he statutes Plaintiff relies on merely describe who can raise the ultra-vires doctrine when challenging corporate transactions and what remedies are available if certain classes of challengers succeed." (Dkt. 185 at 14.) As was argued then, and again now, "[t]he statutes provide rules and remedies to guide that apply to causes of action such as derivative claims for breach of fiduciary duty or for direct suits against a company to enjoin acts." (*Id.*)

Thus, if anything, Judge Dale's decision reinforces the dismissal of Plaintiff's claims rather than supports their continued viability. As Plaintiff fully acknowledges, Judge Dale viewed Plaintiff's claims in Count VIII as "an alternative cause of action to his breach of fiduciary duty and fraud claims" which would be dependent on "the ultimate fate" of those claims.  (Dkt. 210 at 31.) The ultimate fate of those claims is now known.  Plaintiff's claims for breach of fiduciary duty and fraud are derivative in nature and must be dismissed so to then his purported claims claimed to be alternative relief under the statute. Accordingly, consistent with Judge Dale's determination and given the disposition of Mr. Miesen's claims for breach of fiduciary duty and fraud as derivative in nature, Plaintiff's attempt to assert such claims as nonetheless viable under I.C. § 30-29-304 must be rejected.

**E.     Plaintiff's Memorandum Confirms His Claims Are Derivative Rather Than Direct.**

At page 11 of his Memorandum, Mr. Miesen attempts to argue that his claims are direct because the prayer for relief requests that any recoveries "be distributed to the innocent shareholders and others, rather than place any of the funds back into the hands of the Individual

**JOINT REPLY MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 9**

Defendants …" Putting aside whether or not Plaintiff can arbitrarily determine that any funds recovered can bypass AIA Services and then be distributed to individuals that Plaintiff arbitrarily determines to be "innocent," one noteworthy and glaring admission is made by Plaintiff in advancing this argument. Mr. Miesen identifies no claim that distinguishes his claim from either that of AIA Services itself or the other shareholders, innocent or otherwise, of AIA Services. Plaintiff therefore concedes that which Defendants pointed out as the consistent theme of Mr. Miesen during the entirety of the litigation – that he seeks a derivative recovery and not a recovery individual and distinct to himself. Thus, rather than demonstrating the purported direct nature of his claims, Plaintiff's arguments at pages 11 to 12 confirm the very position argued by the Defendants.

**F.     The Third Amended Complaint Confirms the Derivative Nature of Plaintiff's Claims.**

While Plaintiff asserts that the allegations of the TAC demonstrate that he asserted both direct and derivative claims, this assertion is undermined by his very own argument which concedes that "that he is requesting the recoveries to be distributed to the innocent stakeholders and/or others only upon this Court's approval…" (Plaintiff Memo at page 14.)  First, as repeatedly noted above, the fact that Plaintiff concedes that he has no individual recovery separate and apart from the other shareholders he purports to represent confirms the derivative nature of his claims. Second, even if for the sake of argument, he possessed direct claims, such direct claims would not require this Court's approval because such direct claims would be personal to him.  Mr. Miesen has no claims personal to himself, his claim for recovery is entirely derivative and as such, a review of the TAC confirms the derivative nature of his claims.

**JOINT REPLY MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 10**

**CONCLUSION**

Plaintiff's claims in this matter are unquestionably derivative, cannot be asserted in a claim

DATED This 15th day of September, 2022.

JONES WILLIAMS FUHRMAN GOURLEY, P.A.

*/s/  Daniel Loras Glynn*
DANIEL LORAS GLYNN
Attorneys for Individual Defendants
& CropUSA Entities

TROUT LAW, PLLC

*/s/  Kim J. Trout*
KIM J. TROUT
Attorneys for AIA Entities

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of September, 2022, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF System which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Roderick Cyr Bond | rod@roderickbond.com |
| Andrew Schwam | amschwam@turbonet.com |
| Michael S. Bissell | mbissell@campbell-bissell.com |
| Tyler S. Waite | twaite@campbell-bissell.com |
| Jeffrey A. Thomson | jat@elamburke.com |
| Loren C. Ipsen | lci@elamburke.com |
| Joyce A. Hemmer | JAH@ElamBurke.com |
| Bradley S. Keller | bkeller@bryneskeller.com |
| Alyson Anne Foster | alyson@dempseyfoster.com |

*/s/ Daniel Loras Glynn*
Daniel Loras Glynn

**JOINT REPLY MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS - 11**

**18-ER-4585**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>                   Plaintiff,<br><br>          **v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>                   Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>DECLARATION OF DALE L. MIESEN |

DECLARATION OF DALE L. MIESEN - 1

18-ER-4586

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

Defendants/Third-Party Plaintiffs,

v.

REED TAYLOR, an individual,

Third-Party Defendant.

REED TAYLOR, an individual,

Third-Party Defendant/ Counterclaimant,

v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

Counterdefendants.

DECLARATION OF DALE L. MIESEN - 2

I, Dale L. Miesen, declare:

1.        I am the plaintiff in this lawsuit. I am a citizen of the United States, over the age of eighteen, and competent to testify in court, including as to matters in this Declaration. This Declaration is based upon my personal knowledge.

2.        I am the second largest minority common shareholder of AIA Services. I traded an insurance book of business worth in excess of $500,000 in the early 1990s for the 58,656 common shares in AIA Services presently held in my name, including as trustee for my children. Despite AIA Services and its subsidiaries having generated over $65 million in revenues since 1995, I have never received a dividend for those shares or any other compensation for those shares. Those common shares are my only retirement other than my social security benefits. John Taylor and the other Individual Defendants have used some of those millions of dollars in revenues to fund competing businesses (including CropUSA Insurance Agency), fund their litigation expenses and pay themselves significant compensation—all without disclosure and proper approval from the shareholders. As the Court can imagine, this explains my involvement as a plaintiff in this lawsuit and the importance of obtaining a recovery for me and the other innocent minority shareholders.

3.        In fact, despite demands by me and other shareholders, AIA Services has not held a single shareholder meeting of any type since the one held in 2012, which was held for the purpose of trying to eliminate us for ten cents per share (a lawsuit that we prevailed on and were awarded fees and costs). In 2007, there was one special shareholder meeting held for purposes of permitting AIA Services to advance fees and costs for John Taylor, JoLee Duclos and Bryan Freeman (three directors) to fund their defense in the lawsuit brought by Reed Taylor as a creditor in 2007. I did not vote my shares at that meeting because I had inadequate information. I am challenging the legality of that alleged approval and those payments in this lawsuit. Since that time and despite my

DECLARATION OF DALE L. MIESEN - 3

demands, there have been no other shareholder meetings held to approve the advancement of fees and costs for the Individual Defendants for any lawsuit, including this lawsuit. These issues will be addressed in more detail in our reply to the motion to approve attorneys' fees and costs.

4. I have reviewed the Joint Response of Individual Defendants, CropUSA Entities, and AIA Entities to Plaintiff Dale L. Miesen's Motion to Approve the Terms of the Settlement Agreement with the Defendant GemCap Lending I, LLC filed under Docket Number 1246. I cannot fathom how the defendants can attack me and try to take credit for another secret settlement agreement that was never disclosed or approved by AIA Services' minority shareholders (including me) or through a proper board decision in compliance with the articles and bylaws. GemCap would have never been named as a defendant in this lawsuit had John Taylor and the other Individual Defendants simply complied with the AIA Entities' bylaws and articles of incorporation. Their acts and failures are not my fault. I am the one that has never been paid a dime on my 58,656 common shares or been allowed to share in the tens of millions of dollars of revenues since 1995.

5. I have reviewed the settlement agreement that was recently filed under seal under Docket Number 1247. I only agreed to stipulate to seal that settlement agreement so that I could obtain a copy of it. I specifically reserved my right to challenge the sealing of that settlement agreement because I would not agree to conceal it or to participate in concealing any matters from the other shareholders, as confirmed by the terms of the stipulation filed under Docket Number 1185. To this day, the sealed settlement agreement filed under Docket Number 1247 was never disclosed to AIA Services' minority shareholders nor was shareholder approval ever sought or obtained for that sealed settlement agreement. The sealed settlement agreement was only produced in this lawsuit after my attorneys pressed the defendants to produce a copy of the sealed settlement

DECLARATION OF DALE L. MIESEN - 4

**18-ER-4589**

agreement. It is hard for me to understand how or why John Taylor would secretly have the AIA Entities become parties to a new secret settlement agreement when the reason GemCap was named as a defendant in this lawsuit was because of the secret and concealed prior guarantees and settlement agreements involving the AIA Entities. To be clear, not a single transaction or act involving GemCap was ever disclosed to AIA Services' minority shareholders (including me) prior to the transaction or act.  And, John Taylor and the other Individual Defendants never sought shareholder approval for any of those acts and transactions even though they were made to benefit the CropUSA Entities (entities set up to improperly compete against the AIA Entities without giving the innocent minority shareholders, including me, any ownership interest), which were partially owned by the Individual Defendants. I am not an attorney, but this seems to be a clear conflict of interest to me, even if the transactions or acts were not prohibited by AIA Services' amended articles of incorporation or bylaws (they were prohibited transactions and acts under the facts and circumstances). In addition, to this day, there has not been a single board meeting decision, resolution or minutes that have been produced that purported to authorize any settlement agreements with GemCap, including the sealed settlement agreement that was filed under Docket Number 1247. In short, the sealed settlement agreement was never authorized by any properly elected and fully seated board(s) of directors for the AIA Entities or AIA Services' shareholders.

6.     If John Taylor, James Beck and Connie Henderson had not signed the board resolutions for the AIA Entities' guarantees of the line-of-credit from GemCap for the CropUSA Entities (which was increased to $10 million in 2013) and John Taylor had not signed the guarantees and other documents pertaining to those loan guarantees (again, guarantees for two entities improperly competing against the AIA Entities), I would not have had to name GemCap as a defendant in this lawsuit, GemCap would have never sued the AIA Entities in California

DECLARATION OF DALE L. MIESEN - 5

18-ER-4591

federal court, GemCap would have never successfully sued John Taylor and AIA Services for fraud in Nez Perce County, Idaho, District Court, and other lawsuits would have been prevented (including my lawsuit against John Munding that was dismissed without prejudice). The Individual Defendants are not the victims here.  I, along with the other innocent minority shareholders, are the victims, as are the AIA Entities because they have been improperly operated by the Individual Defendants without complying with the articles, bylaws or other basic corporate governance practices and laws—there has not even been a shareholder meeting since 2012 or properly seated board of directors for many years, despite demands by me and other shareholders. John Taylor does what he wants, often in secret, without regard to us or the AIA Entities' articles and bylaws.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

*September 15, 2022, Southlake, Texas*          */s/ Dale L. Miesen*
Date and City and State Signed             Dale L. Miesen

DECLARATION OF DALE L. MIESEN - 6

**18-ER-4591**

18-ER-4592

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of September 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:    jat@elamburke.com
Loren C. Ipsen:    lci@elamburke.com
Joyce A. Hemmer:    jah@elamburke.com
Bradley S. Keller:    bkeller@byrneskeller.com
Alyson A. Foster:    alyson@dempseyfoster.com
Tyler S. Waite:    twaite@campbell-bissell.com
Michael S. Bissell:    mbissell@campbell-bissell.com
Daniel L. Glynn:    dglynn@idalaw.com
Andrew Schwam:    amschwam@turbonet.com
Kim J Trout:    ktrout@trout-law.com

/s/ Roderick C. Bond
Roderick C. Bond

DECLARATION OF DALE L. MIESEN - 7

Alyson A. Foster (ISB No. 9719)
*afoster@bdfcounsel.com*
Jennifer S. Dempsey (ISB No. 7603)
*jsdempsey@bdfcounsel.com*
**BJORKMAN DEMPSEY FOSTER PLLC**
714 West State Street, Second Floor
Boise, ID 83702
Telephone: (208) 401-9533
Facsimile: (855) 940-1879

*Attorneys for Defendant GCLI, LLC fka Gemcap Lending I, LLC*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, et al., <br><br> Plaintiff, <br><br> v. <br><br> CONNIE TAYLOR HENDERSON, et al, <br><br> Defendants. | Case No. No. 1:10-CV-404-DCN <br><br> **NOTICE OF PARTY NAME CHANGE** |

## TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that the name of the defendant GemCap Lending I, LLC, Defendant, has changed from GemCap Lending I, LLC to GCLI, LLC.

DATED September 21, 2022      **BJORKMAN DEMPSEY FOSTER PLLC**

*/s/ Alyson A. Foster*
Alyson A. Foster
*Attorneys for Defendant GCLI, LLC f/k/a GemCap Lending I, LLC*

NOTICE OF PARTY NAME CHANGE – 1

**18-ER-4593**

Alyson A. Foster (ISB No. 9719)
*afoster@bdfcounsel.com*
Jennifer S. Dempsey (ISB No. 7603)
*jsdempsey@bdfcounsel.com*
**BJORKMAN DEMPSEY FOSTER PLLC**
714 West State Street, Second Floor
Boise, ID 83702
Telephone: (208) 401-9533
Facsimile: (855) 940-1879

*Attorneys for Defendant GCLI, LLC, fka Gemcap Lending I, LLC*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, et al.,<br><br>               Plaintiff,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, et al,<br><br>               Defendants. | Case No. No. 1:10-CV-404-DCN<br><br><br>**AMENDED NOTICE OF BANKRUPTCY FILING OF DEFENDANT GCLI, LLC, f/k/a GEMCAP LENDING I, LLC** |

**TO THE HONORABLE COURT; TO THE CLERK OF COURT; AND TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

Please take notice that on September 16, 2022, Defendant GCLI, LLC, f/k/a GemCap Lending I, LLC, filed a voluntary petition under chapter 7[1] of title 11 of the United States Bankruptcy Code, in the United States Bankruptcy Court for the Central District of California, Case No. 2:22-bk-14165-BB.

---

[1] This notice is amended to reflect the filing was under chapter 7 of title 11 of the United States Bankruptcy Code, not chapter 11 as incorrectly stated in the original notice (Dkt. 1258).

AMENDED NOTICE OF BANKRUPTCY FILING OF DEFENDANT
GCLI, LLC, f/k/a GEMCAP LENDING I, LLC – 1

**18-ER-4594**

Pursuant to 11 U.S.C. § 362, "a petition filed under section 301, 302, or 303 of this title, … operates as a stay, applicable to all entities, of —

(1)     the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2)     the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3)     any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4)     any act to create, perfect, or enforce any lien against property of the estate;

(5)     any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6)     any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; …."

DATED this 21st day of September, 2022.

**BJORKMAN DEMPSEY FOSTER PLLC**

*/s/ Alyson A. Foster*
Alyson A. Foster
*Attorneys for Defendant GCLI, LLC, f/k/a GemCap Lending I, LLC*

AMENDED NOTICE OF BANKRUPTCY FILING OF DEFENDANT
GCLI, LLC, f/k/a GEMCAP LENDING I, LLC – 2

**18-ER-4595**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>     Plaintiff,<br><br>  **v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>     Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>PLAINTIFF DALE L. MIESEN'S REPLY IN SUPPPORT OF HIS MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) |

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - i

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

Defendants/Third-Party Plaintiffs,

v.

REED TAYLOR, an individual,

Third-Party Defendant.

REED TAYLOR, an individual,

Third-Party Defendant/ Counterclaimant,

v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

Counterdefendants.

## **TABLE OF CONTENTS**

I.  ARGUMENT ................................................................................................. 1

    A.  This Court Should Approve the Payment of Fees and Costs as Requested. ........... 1

        1.  The Defendants' Efforts to Deflect the Focus Away from Their Unlawful and Criminal Behavior Should Be Rejected. ............................ 1

        2.  Attorney Glynn's Four Cited Cases. ........................................................... 3

        3.  Miesen's Counsel Have a Valid 40% Contingent Fee and a Priority Charging Lien. ........................................................................................... 5

        4.  Miesen's Fees and Costs Should Be Awarded Under the "Common Fund" Doctrine. ........................................................................................ 5

        5.  Miesen's Fees and Costs Should Also Be Awarded under I.C. § 30-29-746(1). ................................................................................................ 8

        6.  The AIA Entities Received a Substantial Benefit from the Settlement Agreement. ................................................................................................ 9

        7.  The Prevailing Party Analysis Does Not Apply Here. ............................. 12

        8.  The Requested $560,000 Contingent Fee Is Reasonable and a Substantial Discount. ............................................................................... 12

        9.  The Requested Costs Are Reasonable and Fully Recoverable. ................. 14

        10.  The Parties Agree that Miesen's Motion Is <u>Not</u> Premature. ...................... 17

        11.  A Word about the Hawley Troxell Defendants' Two Responses. ............. 17

        12.  If Taylor's Testimony Is Considered, Live Cross-Examination Should Be Held. ................................................................................................... 18

II.  CONCLUSION ......................................................................................... 18

CERTIFICATE OF SERVICE ............................................................................. 19

**18-ER-4598**

Miesen and his undersigned counsel (collectively "Miesen") reply as follows:

## I.   ARGUMENT

### A.  This Court Should Approve the Payment of Fees and Costs as Requested.

#### 1.   The Defendants' Efforts to Deflect the Focus Away from Their Unlawful and Criminal Behavior Should Be Rejected.

Defendants argue that because the corporation and John Taylor have had to spend large sums on attorneys' fees, Miesen has not produced substantial value to the corporation. The following will show that by their wrongful behavior over the years the defendants have caused their own expenses and the AIA Entities' present financial condition.

The defendants disregard their unlawful and/or criminal conduct that led to this lawsuit and other lawsuits, which continued even after this lawsuit was filed. Even HTEH's primary legal malpractice expert witness was unable to justify any of John Taylor's actions when he qualified his entire report with: "I have not been retained to opine on the legitimacy of John Taylor's actions." (Dkt. 783-6 at 30 n. 16.)

The defendants disregard the fact that they have violated criminal statutes. Miesen will provide a few examples. In this lawsuit, Miesen discovered that, in 2008, John Taylor, Beck, and Henderson improperly allowed $425,116 in policy trust funds be used for other improper purposes when they were required to be paid to the state of Texas on behalf of the former policyholders thereby violating Tex. Prop. Code Ann. § 74.710 (a misdemeanor). (9/22/22 Bond Decl. Ex. 1 at 124-125, 1026-1029; Ex. 9 at 9-12.) This money was not theirs to spend.

John Taylor, Beck, and Henderson violated I.C. § 18-1907 (a misdemeanor) in 2014 and John Taylor again in 2016 when they refused to permit shareholders (including Miesen) to inspect and copy basic corporate records. (9/22/22 Bond Decl. Ex. 5-6; 9/22/22 Miesen Decl. ¶7.) Inspection is a fundamental right under I.C. §§ 30-1-1602 (1997) and 30-29-1602 (2015) and

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - 1

protected by criminal charges under I.C. § 18-1907. Those statutes were violated in 2014 and 2016.

As to John Taylor's duties as a trustee of the AIA Services' 401(k) plan under ERISA (Reed Taylor has a counterclaim pending against him), on September 9, 2021, the Department of Labor wrote John Taylor advising him that: "Based on the facts reviewed to date, we have concluded that, as a fiduciary, you breached your obligations to the Plan and violated several provisions of the Employee Retirement Income Security Act (ERISA)." (9/22/22 Bond Decl. Ex. 8.) This is consistent with Judge Brudie's ruling, in *GemCap v. AIA Services, et al.*, that John Taylor committed fraud and finding, *inter alia*, "the transfers, along with the fact that these transfers were accomplished at the whim of Taylor and only Taylor provides an inference of fraud." (Dkt. 1167-9.) This is precisely the type of conduct John Taylor has engaged in for years.

John Taylor, while on the AIA Entities' board and while president of the AIA Entities, set up CropUSA. Miesen and the other innocent shareholders had no ownership interest in CropUSA when it undertook to sell insurance policies in competition with the AIA Entities. Further, John Taylor's employment contract with the AIA Entities said that he could not be involved in a competing insurance business. (Dkt. 67-8.) When CropUSA needed to borrow money, John Taylor had the AIA Entities guarantee millions of dollars in loans to CropUSA. Finally, at times, John Taylor had the AIA Entities pay CropUSA expenses. It was this type of mistreatment of AIA Services' innocent shareholders that caused John Taylor and the other defendants to spend money on lawyers, not the innocent shareholders' attempts to obtain justice. (*See generally* Dkt. 211.)

Another example of unlawful corporate governance is John Taylor has had AIA Services pay defense costs for certain of "its officers and directors," Dkt. 1223 ¶8, when there has never been proper board approval or approval by shareholders in violation of the AIA Entities' bylaws and I.C. §§ 30-1-853(3) and 30-29-853(3). (9/22/22 Bond Decl. Ex. 2-3; Ex. 4 §§4.14 & 11.5;

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - 2

9/22/22 Miesen Decl. ¶¶5-7; Ex. A.) Moreover, the Individual Defendants violated I.C. §§30-1-1621(1) and 30-29-1621(1) by not providing a report prior to the last shareholder meeting held in 2012 advising shareholders that AIA Services was paying the defense costs for the Individual Defendants. (9/22/22 Miesen Decl. ¶5.)

While the above conduct is but a few examples, it shows that it was and is the defendants' own misbehavior that caused them to incur legal costs.

### 2.   Attorney Glynn's Four Cited Cases.

Defendants present four cases that they claims support their assertion that this Court's order finding the derivative demand notices inadequate prevents any award of attorney fees or costs. (Dkt. 1252 at 11-14.)  None of these cases have anything in common with Miesen's case. None of the four cases involve a derivative claim against a third party for money. Courts have applied a different test for finding a "substantial benefit" to award fees when non-monetary relief is obtained. Three cases involved no demand whatsoever before filing suit. The remaining case from Nevada involves a demand but no lawsuit, and the Nevada Supreme Court found that litigation (a filed suit) was necessary to recover attorney fees. None of the four involve the recovery of any financial benefit to the corporation.

It is worth noting two things about the Alaska case. The first is the similarity between the Alaska statutory scheme and the Idaho statutory scheme. The second is that in the Alaska case the plaintiffs Jerue and Demoski did get all legal fees and costs. In its opinion the Alaska Supreme Court stated:

> Alaska Statute 10.06.435(j) and Alaska Civil Rule 23.1(j) permit awards of expenses, including attorney's fees, to derivative suit plaintiffs. The statute and the rule are identical. They provide in pertinent part that "[i]f the derivative action is successful, in whole or in part, **or if anything is received as a result of** the judgement, compromise, or **settlement** of that action, the court may award to the plaintiff or plaintiffs reasonable expenses, including reasonable attorney fees.

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - 3

Civil Rule 23.1(j) is a fee sharing rule. It requires the corporation benefitted by a derivative suit to share the expense incurred by the plaintiff shareholders in achieving the benefit for the corporation. It reaches this result by requiring the corporation to reimburse the plaintiff shareholders. Because it is a fee-sharing rule, 23.1(j) does not give the corporation itself a claim for fees or provide for an award against individual defendants. Moreover, here Ingalik's successor board adopted a resolution authorizing Ingalik to reimburse "all legal fees and costs" incurred in behalf of Jerue and Demoski. **Because the corporation has voluntarily agreed to share any litigation expense incurred by or for Jerue and Demoski individually, Rule 23.1(j) has no further direct application to this case: Its fee sharing purpose was achieved without court order.**

*Jerue v. Millett*, 66 P.3d 736, 741 (Alaska 2003) (emphasis added).

The Idaho scheme is similar. First, I.C. 30-29-745 reads:

DISCONTINUANCE OR SETTLEMENT. A derivative proceeding may not be discontinued or settled without the court's approval...

This envisions that a derivative action for money damages against a third party can end in a settlement of financial value to the corporation.

I.C. 30-29-746 states in pertinent part:

PAYMENT OF EXPENSES. On termination of the derivative proceeding the court may: (a) Order the corporation to pay the plaintiff's expenses incurred in the proceeding if it finds that the proceeding has resulted in a substantial benefit to the corporation;

Unlike the four cases cited by the defendants, Miesen, by settlement, produced a $1,400,000 benefit (over $400,000.00 after costs and attorney fees) as a result of his derivative proceeding. This fulfils completely the only Idaho requirement that "the proceeding has resulted in a substantial benefit to the corporation." I.C. § 30-29-746(1). When there is a substantial financial recovery by settlement from a third party, the Idaho statutes do not base plaintiff's opportunity to recover costs and attorney fees on the adequacy of derivative demands; but only on the issue of whether the settlement produced a substantial benefit to the corporation. Miesen has met the substantial benefit test and it would be unjust for him to be left owing costs and fees to his attorneys.

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - 4

18-ER-4602

Although it is not relevant to the determination required by the statute, it is useful to note that the settlement with the Hawley Troxell Defendants states that the settlement "is made and entered into effective the 2 day of May, 2022." (Dkt. 1242-3 at 1.) The Court's order finding the derivative demands inadequate occurred on May 5, 2022. (Dkt. 1203.) Thus, on May 2, 2022, Judge Dale's ruling that the derivative demands were adequate was still in effect and was the law of the case at the time of settlement. None of the four cases cited by attorney Glynn have any resemblance to this situation.

### 3. Miesen's Counsel Have a Valid 40% Contingent Fee and a Priority Charging Lien.

Miesen and his counsel have a written agreement requiring him to compensate them through a 40% contingent fee. Under well-established law, Miesen's counsel have a valid and a first-priority charging lien over the remaining settlement proceeds after the Lombardi's payment has been taken out. (Dkt. 1242-1 at 7-8.) The defendants have not responded to these arguments.

### 4. Miesen's Fees and Costs Should Be Awarded Under the "Common Fund" Doctrine.

The requested 40% contingent fee and reduced costs should be awarded under the "common fund" doctrine. (Dkt. 1242-1 at 8-10.) Defendants argue Miesen is not entitled to any fees or, alternatively, the fees should be substantially reduced under federal law. (Dkts. 1252 at 18-21; 1222 at 14-17; 1221 at 8-11; 1219 at 17-20.) Their arguments lack merit.

Since Idaho has adopted the "common fund" doctrine for recoveries involving insurance subrogation, there are no reasons why the Idaho Supreme Court would not extend the doctrine to shareholder or other lawsuits where a "common fund" was recovered, which is also consistent with the intent of I.C. § 3-205. The Idaho Supreme Court would extend the doctrine for recoveries obtained by shareholders for the same reasons that it adopted the doctrine. *See Kenneth F. White, Chtd. v. St. Alphonsus Reg'l Med. Ctr.*, 136 Idaho 238, 242, 31 P.3d 926, 930 (2001). The defendants fail to argue otherwise. As noted by the Illinois Supreme Court, the doctrine has been

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - 5

adopted by virtually every court. *Scholtens v. Schneider*, 671 N.E.2d 657, 662 (Ill. 1996). The defendants provide no authority that the doctrine would not be extended to recoveries obtained by shareholders.

There is no credible dispute that Miesen, at his risk and expense, created a $1,400,000 "common fund" that triggers the right to recover fees and costs for the work to obtain that recovery. (Dkt. 1242-3.) The well-settled policy reasons for awarding the requested fees and costs are served by awarding the requested fees and costs to Miesen—he undertook the expenses and risks and should be fully reimbursed. *Kenneth F. White, Chtd.*, 136 Idaho at 242, 31 P.3d at 930; *Schilling v. Belcher*, 582 F.2d 995, 1006 (5th Cir. 1978). It would be inequitable to leave Miesen responsible for any liability after obtaining the $1,400,000. It would also defeat the intent of I.C. § 3-205. Since a $1,400,000 "common fund" was obtained, the requested fees and costs should be awarded.

The defendants' arguments that the "25% benchmark" for common fund cases under federal law applies is without merit because Idaho law applies here, and Idaho has never recognized "lodestar" (or the ability of courts to add a multiplier) or a 25% benchmark that federal courts check by comparing it to the "lodestar." *Perkins v. U.S. Transformer West*, 132 Idaho 427, 974 P.2d 73, 76 (1999). This is why Miesen did not address the "25%" benchmark under federal law because it does not apply. (Dkt. 1242-1 at 12.) Miesen's request is governed by the 40% contingent fee agreement with his counsel under the I.R.C.P. 54(e) factors as discussed in Miesen's memorandum (Dkt. 1242-1 at 12-17) and in Section 8 below. Under Idaho law, the "pro rata" share must be paid. *Kenneth F. White, Chtd.*, 136 Idaho at 242, 31 P.3d at 930 ("the common fund doctrine requires that the…company pay its ***pro rata share*** of the attorney fees…incurred in obtaining the settlement or judgment against the tortfeasor."). Thus, the 40% contingent fee should be paid because that is the "pro rata" share.

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - 6

**18-ER-4604**

Even if the federal standard applied, "the benchmark is closer to 30%" for cases much less difficult than legal malpractice ones. *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989). And, if there was ever a case that warranted an upward adjustment, this is the case—the federal factors all weigh in favor of an upward adjustment to 40%, especially based on the many years of Miesen's counsel's work and since Miesen's counsel is not seeking in excess of $189,000 in costs from the fund. (Dkt. 1242-2; *see* Dkts. 58-1236.) Importantly, Miesen's counsel would not obtain a windfall (which is why many courts approve a lower fee). To the contrary, the $560,000 fee is about a 50% reduction from the over $1,119,775 in attorneys' fees had they been billed out by their respective hourly rates. (Dkts. 1242-2 ¶¶13-14; 1242-7 ¶6.) Thus, the $560,000 is reasonable and fully consistent with the Idaho Supreme Court's standard that "a reasonable contingent fee must be 'sufficiently high to compensate the lawyer not only for the reasonable value of the time he or she anticipates devoting to the particular lawsuit, but also for the time devoted to other lawsuits undertaken on the same basis but unsuccessful in result.'"[1] *Clark v. Sage*, 102 Idaho 261, 265, 629 P.2d 657, 661 (1981).

The argument that Miesen is not properly proceeding for the stakeholders simply because he previously identified certain stakeholders is without merit. Miesen simply listed certain parties involved in the misconduct and/or in possession of shares in AIA Services without paying for them; he was not preferentially treating anyone. (9/22/22 Miesen Decl. ¶10.) Miesen has always maintained that this Court must approve any distributions to stakeholders. (*Id.*; Dkt. 211 at 81.) Defendants' arguments are also contrary to this Court's undisputed finding that Miesen has "adequately" represented the interests of all stakeholders. (Dkt. 1235 at 3.)

---

[1] *See also Brinkman v. Aid Insurance Co.*, 115 Idaho 346, 351, 766 P.2d 1227, 1232 (1988) ("An amount equal to standard contingent fees in the same locale is not an amount that is clearly erroneous."). In this regard, the only admissible evidence is that 40% is a fair contingent fee for difficult and costly legal malpractice cases in Ada County, Idaho. (Dkt. 1242-2 ¶¶23-24, 41.) The defendants have failed to submit any evidence to establish otherwise.

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - 7

**18-ER-4605**

The Hawley Troxell Defendants' arguments that Miesen's counsel's work was allegedly inadequate is answered by the order that they prepared and approved, which was adopted by this Court, that Miesen's counsel "adequately" represented the stakeholders. (Dkt. 1235 at 3.) The *ad hominem* attacks on Miesen's counsel are inappropriate and disputed. (9/22/22 Bond Decl. ¶¶4-23; ¶50(a)-(l).) Those attacks also are inconsistent with the fact that the Hawley Troxell Defendants paid $1,400,000 to settle. If this Court accepts those arguments, the Hawley Troxell Defendants *misrepresented* to this Court that the settlement was fair and that Miesen's counsel provided adequate representation. The $1,400,000 settlement is inconsistent with their arguments.

The $560,000 fee is reasonable and should be approved under the "common fund" doctrine.

**5.   Miesen's Fees and Costs Should Also Be Awarded under I.C. § 30-29-746(1).**

Although this has already been shown to be so in Section 2, Miesen has a few additional points to make.[2]

The settlement agreement states that all derivative claims that have been pled or could have been pled are being released in consideration for the $1,400,000 payment. (Dkt. 1242-3 at 5 §3.) The agreement was dated effective May 2, 2022, which was before this Court's May 5, 2022 order. (Dkt. 1203.) The agreement also states that it constitutes "the termination of all derivative claims." (Dkt. 1242-3 at 3 §2.) The notice to shareholders, which was not objected to by any of the defendants, was entitled "Notice of Proposed Settlement of Shareholder Derivative Action and of Hearing." (Dkts. 1242-3 at 27; 1205-1 at 1.) This Court's approval order also stated the settlement included "derivative claims" and asserted that this Court had jurisdiction "in connection with the shareholder derivative claims that were or could have been asserted in this case." (Dkt. 1235 at 1,

---

[2] Miesen cited to I.C. §§ 30-29-746(1) (2015) and 30-29-740 (2015). However, I.C. §§ 30-1-746(1) and 30-1-740 (1997), which were unchanged in 2015, are the applicable Code sections because the Hawley Troxell Defendants were named as defendants in 2010. (Dkt. 1.) I.C. §§ 30-1-1703(1) (1997); 30-29-1703(1) (2015); 30-29-1703(a) (2019). However, because the text is the same, Miesen will continue to refer to I.C. § 30-29-746.

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - 8

**18-ER-4606**

3.) Importantly, this Court's approval order states that Miesen "has standing to prosecute derivative claims." (Dkt. 1235 at 3.) That correct finding is fatal to the defendants. Lastly, the Rule 54(b) judgment was entered pursuant to the findings and terms in the order, which formally terminated Miesen's derivative proceeding. (Dkt. 1236.)

Two prior judges rejected two prior attempts at dismissing the derivative claims based on the alleged inadequacy of the derivative demands. (Dkts. 46, 210 at 13-20.) Unlike the cases relied upon by the defendants, Miesen served multiple demands and at the time of settlement the case was proceeding based on the ruling that demands were adequate. If this Court were to give credence to the defendants' arguments, it would discourage parties from settling.

Contrary to the defendants' arguments, in *Taylor v. McNichols*, 149 Idaho 826, 848-49, 243 P.3d 642, 664-65 (2010), the Idaho Supreme Court held that an award of fees under I.C. § 30-1-746 was not proper because Reed Taylor never filed a complaint asserting derivative claims. Also, unlike Reed Taylor, Miesen is a shareholder, and he was asserting derivative claims for almost 12 years when the settlement was reached. (Dkts. 1, 211.)

### 6.   The AIA Entities Received a Substantial Benefit from the Settlement Agreement.

The AIA Entities obtained a "substantial benefit" because Miesen obtained a $1,400,000 settlement payment and, contrary to the defendants' assertions, the AIA Entities owed $63,781.64 to HTEH for fees and costs which the settlement got released. (Dkt. 1242-3; 9/22/22 Bond Decl. Ex. 10 at 1, 7.) The $1,400,000 payment, alone, is a consequential monetary recovery constituting a "substantial benefit" to the AIA Entities. Indeed, "Courts have consistently approved attorneys' fees and expenses in shareholder actions where…no monetary relief" was obtained. *In re Taronis Tech., Inc*., No.: CV-19-04547, 2021 WL 842137, at *3 (D. Ariz. Mar. 5, 2021). Contrary to the defendants' arguments, the tests adopted by some courts to determine a "substantial benefit" in non-monetary settlements do not apply here. *See, e.g.,* 13 Fletcher Cyc. Corp. § 6045.01 (2021).

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - 9

Contrary to the defendants' arguments, the "substantial benefit" analysis pertains exclusively to this proceeding, not any other lawsuits. I.C. § 30-29-746(1) (fees may be ordered by the court "…if it finds that the **proceeding** has resulted in a substantial benefit to the corporation."). The parties agreed that this proceeding resulted in "the Settlement Payment [that] would not have been made by the Hawley Troxell Defendants but for the Litigation." (Dkt. 1243-3 at 13 §19(a).) "Litigation" is defined as the instant lawsuit. (Dkt. 1243-3 at 2 §1(l).) Thus, this lawsuit is the only relevant lawsuit and the $1,400,000 provided a "substantial benefit."

Assuming the fees and costs incurred in this lawsuit and others were admissible and relevant, the defendants are foreclosed from having this Court consider any of those fees and costs in the instant motion because they failed to submit a single billing record for any lawsuit, and they have claimed privilege regarding the fees and costs incurred in this lawsuit.[3] (Dkts. 1223, 1003 at 13-14 & 83-85; 9/22/22 Bond Decl. ¶, Ex. 10-11.) *Sun Valley Potato Growers, Inc. v. Texas Refinery Corp.*, 139 Idaho 761, 769, 86 P.3d 475, 483 (2004) ("a party seeking an award of attorney fees can claim privilege and not give up their time sheets, but it will foreclose an award of attorney fees because it prevents the trial court from properly determining the amount of the award."). Also, the defendants failed to submit any declarations from an attorney addressing the amount of fees,

---

[3] The defendants also argue that the dismissal of Miesen's derivative claims triggers the Individual Defendants' right to indemnification. (Dkt. 1252 at 17.) They are incorrect and have "the cart ahead of the horse." They must be "wholly successful" in the entire "proceeding" before any rights may be triggered. I.C. §§ 30-1-852, 30-29-852. "Proceeding is defined as an entire "action." I.C. §§ 30-1-850(8), 30-29-850(9). "A defendant is 'wholly successful' only if the entire proceeding is disposed of on a basis which does not involve a finding of liability." Mod. Bus. Corp. Act § 851 cmt. (2002). This will not occur unless and until Miesen's claims and Reed Taylor's claims are all dismissed. Moreover, the defendants have failed to submit any evidence that the Individual Defendants were "**serving at the corporation's request** as a director, officer…or agent." I.C. §§ 30-1-850(2), 30-29-850(2) (emphasis added). They unlawfully served at their *own* request and to protect their *own* interests. (Dkt. 211.) These are part of the direct claims to be adjudicated and the defendants are also seeking to harm Miesen in the instant motion.

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - 10

the segregation of work between clients, and the Rule 54(e) factors as required under Idaho law.[4] (Dkts. 1252-1, 1223, 1220.) I.R.C.P. 54(c)(5); *Bailey v. Bailey*, 153 Idaho 526, 531, 284 P.3d 970, 975 (2012) ("because a court must consider all of the Rule 54(e)(3) factors before awarding attorney fees, those fees are properly denied where the party claiming them does not provide the information necessary to permit the court to evaluate all of the factors."); *Smith v. Mitton*, 140 Idaho 893, 90, 104 P.3d 367, 375 (2004) ("*Hackett* mandates segregation of fees for multiple clients..."). Thus, the defendants have no fees and costs for this Court to consider.

Miesen's request for fees and costs arises from a Rule 54(b) judgment. (Dkt. 1236.) If the remaining defendants desired to have the Court consider their arguments regarding indemnity or advancement of costs, their remedy was to object to the settlement as to the entry of a Rule 54(b) judgment alleging that they would be prejudiced if the Court did not await the conclusion of the lawsuit before determining fees. *Waller v. Fin. Corp. Of Am.*, 828 F.2d 579, 583 (9th Cir. 1987) ("a non-settling defendant to object where it can demonstrate that it will sustain some formal legal prejudice as a result of the settlement."). But they failed to do so.

The defendants cannot blame Mr. Bond for the attorneys' fees and costs incurred because the only evidence proves that he was acting exclusively within his scope of representation of his clients. (9/22/22 Bond Decl. ¶4.) *McNichols*, 149 Idaho at 839, 243 P.3d at 655.

The defendants are the cause for the attorneys' fees and costs paid to defend or prosecute the lawsuits that would have never been filed if proper corporate governance has simply been followed. (9/12/22 Bond Decl. ¶4; Dkt. 1242-2 ¶¶50(a)-(k).)

---

[4] Notably, the AIA Entities blindly accepted the full, incorrect $786,961.02 in alleged fees and costs that John Taylor alleged were incurred for this lawsuit; yet they successfully argued that Reed Taylor's requested fees must be reasonable and should be significantly reduced. (Dkt. 1198.) The AIA Entities should be asserting claims against the Individual Defendants to prevent any indemnity rights, especially now that Miesen's derivative claims have been dismissed, and John Taylor, Beck and Henderson signed tolling agreements. (9/22/22 Bond Decl. Ex. 12.)

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - 11

**7.    The Prevailing Party Analysis Does Not Apply Here.**

The defendants argue that Miesen is not entitled to fees and costs because he is not the prevailing party. (Dkt. 1221 at 3-6.) These arguments fail because Miesen is seeking fees and costs under the "common fund" doctrine and I.C. § 30-29-746(1). The former is an equitable doctrine facilitating the payment of attorney's fee and costs from a fund (not a party) and the latter merely requires a finding of "substantial benefit." Neither require the determination or the finding of a prevailing party. And, Miesen is not seeking fees against the Hawley Troxell Defendants, which are the only parties that the Rule 54(b) judgment could trigger a fee award and the required prevailing party analysis. Even if the issue applied here, the "prevailing" party is determined from an "overall view, not a claim-by-claim analysis." *Choice Feed, Inc. v. Montierth*, 168 Idaho 124, 152, 481 P.3d 78, 106 (2021). Having obtained a $1,400,000 settlement payment, Miesen should be considered the prevailing party. Settlements that high are rarely paid in legal malpractice actions and language such as "buying peace" or "no admission of liability" is standard language in malpractice settlement agreements and have no bearing on the result. (Dkt. 1242-2 ¶¶34-35.)

**8.    The Requested $560,000 Contingent Fee Is Reasonable and a Substantial Discount.**

Miesen maintains that the payment of the 40% contingent fee is reasonable and a 50% discount to hourly rates. (Dkt. 1242-1 at 12-17.) Defendants argue the requested fees are unreasonable without submitting *any* declaration testimony to dispute any Rule 54(e) factors. In addition to addressing certain of these matters above, Miesen asserts their arguments are meritless.

"The party opposing the fee application has a burden of rebuttal that requires submission of **<u>evidence</u>** to the district court challenging the accuracy and reasonableness of the hours charges or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992). "Conclusory and unsubstantiated objections are not sufficient

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - 12

to warrant a reduction in fees." *Lucas v. White*, 63 F. Supp.2d 1046, 1057-1058 (N.D. Cal. 1999).

Defendants do not dispute that the contingency fee rate of 40% for difficult legal malpractice actions in Ada County, Idaho is a reasonable fee. (Dkt. 1242-2 ¶¶23-24, 41.) There is no admissible testimony asserting a different percentage should apply.

The defendants provide no testimony or evidence that the 40% fee should be reduced and they disregard that Miesen has largely been successful, including one successful trip to the Ninth Circuit to lift the stay that led to the $1,400,00 settlement. The fact that Miesen obtained a $1,400,000 settlement is *prima facia* proof of success.[5] Mr. Trout's allegation that Miesen's counsel has engaged "churning" is not correct. (9/22/22 Bond Decl. ¶¶14-16.) Since Miesen's counsel has been operating on a contingency fee, doing unnecessary work would be contrary to their financial well-being. Miesen's counsel have only undertaken actions which they thought would improve Miesen's chanced of obtaining justice for the innocent shareholders.

The defendants attack Miesen's counsel for certain decisions, but they fail to provide any testimony or argument to establish the Rule 54(e) factors do not weigh in favor of Miesen.

The defendants' arguments that the $1,400,000 settlement was allegedly a fraction of his damages represents a complete mischaracterization of Miesen's potential damages. Miesen made clear that many of the damage items were alternative theories and the defendants mischaracterize the issue because Miesen simply provided a total for all of the alternative base damage item numbers. (9/22/22 Bond Decl. ¶8, Ex. 7.) $1,400,000 is a good settlement.

Written and published notices were provided to stakeholders and creditors in numerous locations that Miesen was seeking the fees and costs at issue in the instant motion (although costs

---

[5] Miesen does not dispute that, since this Court assumed control of this lawsuit after discovery, it has essentially ruled against Miesen on about every motion and it has made clear that it wants this case over. But that does not mean that the 40% fee was not earned or is not reasonable.

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - 13

**18-ER-4611**

are now reduced). (Dkts. 1218-1—1218-11, 1227-1, 1228-2, 1228-3.) There have been no objections to the fee or cost request. *See In re Omnivision Tech., Inc.*, 559 F. Supp.2d 1036, 1048 (N.D. Cal. 2008).

In previous declarations Miesen's counsel noted that a few people who received notices had indicated that they thought they attorneys should receive compensation. Defendants say that this should be inadmissible hearsay, but hearsay can be admissible in deciding attorney fee requests. (Dkt. 1252 at 16 n. 10.) *Allen v. Campbell*, 169 Idaho 125, 134, 492 P.3d 1084, 1093 (2021). Donna Taylor consented to the fee and cost request by signing the settlement after consultation from her independent counsel, Daniel Green, and she understood that the benefit to her was "the potential for some of those funds being available to be used to pay certain sums owed to her by AIA Services and/or redeem some or all of her Series A stock." (Dkt. 1242-3 at 14 ¶19(d)(vi).) For those reasons, defendants' arguments that an alleged conflict regarding Donna Taylor are without merit—she approved the fee and cost request. (See Dkt. 1252 at 16 n. 10.) In addition, Mr. Schwam also identified two non-objecting stakeholders by name. (Dkt. 1242-7 ¶3.)

### 9. The Requested Costs Are Reasonable and Fully Recoverable.

Miesen seeks a significantly reduced cost award of $375,327.96 under the "common fund" doctrine and/or I.C. § 30-29-746(1). (Dkt. 1242-1 at 17-18.) The defendants argue that costs are not recoverable and, if they are recoverable, that certain costs should not be recovered. (Dkts. 1252 at 21-25; 1221 at 13-14; 1219 at 20-22.)

The defendants' arguments regarding federal law or Idaho procedural law are without merit. Idaho law compensatory law applies. The Idaho Supreme Court has not described in detail all of the categories of costs that are recoverable in "common fund" cases. Instead, it has broadly held that the pro rata share of expenses must be paid. *Kenneth F. White, Chtd.*, 136 Idaho at 242, 31 P.3d at 930 ("the common fund doctrine requires that the…company pay its *pro rata share* of the

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - 14

**18-ER-4612**

attorney fees ***and expenses*** incurred in obtaining the settlement or judgment against the tortfeasor." (emphasis added)). However, other courts have made clear that "[a]ttorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision Tech.*, Inc., 559 F. Supp.2d 1036, 1048 (N.D. Cal. 2008) (Such "expenses relate to photocopying, printing, postage and messenger services, court costs, legal research on Lexis and Westlaw, experts and consultants, and the costs of travel for various attorneys and their staff throughout the case."). Likewise, I.C. § 30-29-746(1) broadly provides for the payment of all "reasonable expenses" and does not differentiate between any particular type or category of costs. *See* I.C. § 30-29-746(1). Thus, the reduced $375,327.96 in requested costs are reasonable and recoverable under the "common fund" doctrine and/or I.C. § 30-29-746(1). (Dkt. 1242-5.) Having once again established a right to recover costs, Miesen will now address the objectionable items.

Miesen specifically addressed the costs sought for his two experts, McDermott and Hile. (Dkt. 1242-1 at 17-18.) Defendants argue that expert fees incurred for McDermott and Hile should not be recoverable because they were excluded. (Dkts. 1252 at 23-24; 1221 at 14; 1219 at 20-22.)

There is no dispute that Miesen was required to retain McDermott because legal malpractice claims generally require expert testimony. There can be no credible argument that McDermott was not worth the money spent because, without him, and the possibility that the exclusion ruling could be reversed on appeal, the Hawley Troxell Defendants would have never settled because expert testimony is required. *Greenfield v. Smith*, 162 Idaho 246, 252, 395 P.3d 1279, 1285 (2017). Significantly, this Court previously cited to McDermott with approval prior to excluding him. (Dkts. 210, 408, 1242-2 ¶40(b).) Lastly, if this Court declines to award some or all of the costs incurred for McDermott, the Court should backfill those costs with other alternative cost items. (Dkt. 1242-2 ¶¶49(h)-(p).)

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - 15

The arguments regarding Hile are without merit. As Miesen pointed out, this Court merely excluded him as a case-in-chief expert after Miesen sought to name his as one after he was retained to rebut the Hawley Troxell Defendants' damages expert. (Dkt. 1242-2 ¶49(g).) He was not entirely excluded as an expert and Miesen respectfully asserts that reasonable minds could differ because the defendants could show no prejudice and they deposed him. (Dkt. 1111.) In any event, the costs incurred for Hile were also reasonable to rebut the Hawley Troxell Defendants' expert.

Defendants argue that Miesen's counsel's request for $60,000 in *out-of-pocket* contract paralegal should be denied for lack of substantiation and because it is an effort to collect twice on those items. (Dkts. 1252 at 24-25; 1221 at 13-14; 1219 at 21-22.) Miesen made clear that the requested $560,000 contingent fee was "an approximate 50% discount based on the hourly rates." (Dkt. 1241-1 at 14.) The discount was based only on the total of attorneys' fees at the hourly rates ($1,054,000 for Mr. Bond and $65,775 for Mr. Schwam). (Dkts. 1242-2 ¶13, 1242-7 ¶6.) The $150 hourly rate for paralegals and law clerks was not included in the calculations. (Dkt. 1242-2 ¶14.) Miesen made clear that he is only requesting these costs if this Court reduces the primary requested costs and/or the requested contingent fee. (Dkt. 1242-2 ¶49(h).) There is no requirement that an attorney keep staff and that would have simply increased the cost for paralegal work.

As to substantiation, Mr. Bond's declaration clearly stated that his firm has paid $39,678 to a contract paralegal and $20,472.25 to contract law clerks—these are out-of-pocket costs solely for this lawsuit and not billable rates. (*Id.*; Dkt. 1242-2 ¶49(i).) *Lola L. Cazier Revocable Tr. v. Cazier*, 167 Idaho 109, 119, 468 P.3d 239, 249 (2020) ("[C]ourts make cost determinations based upon declarations filed by the counsel seeking a … cost award."). Their argument that paralegal fees are not recoverable is incorrect. As their counsel is aware, I.R.C.P. 54(e)(1) was amended after that case to expressly state: "including paralegal fees." In any event, these costs are only

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - 16

sought to the extent that this Court reduces any of the primary requested costs or fees.

Defendants argue that electronic research charges of over $12,000 should be denied. (Dkt. 1252 at 24.) Once again, this cost item is a back-up item in the event this Court does not award the primary cost items requested, which were allocated to Miesen. (Dkts. 1242-2 ¶49(l), 1242-5.) Those costs are recoverable up to the maximum amount of $12,000 if this Court reduces any of the primary costs or fees requested. Otherwise, Miesen's counsel will not be seeking these costs.

Defendants argue that interest and mediation fees are not recoverable. (Dkt. 1252 at 25.) As to interest, Miesen was obligated to pay 12% interest on the amounts advanced (like any client) and his counsel incurred interest charges. (Dkt. 1242-2 ¶49(n).) At a minimum, the primary purpose of bringing the interest to the attention of this Court was, once again, to show the concessions Miesen's counsel was willing to take to show his reasonableness. However, if this Court reduces Miesen's primary cost items (Dkt. 1242-5), up to $75,000 could be used to back fill any cost award up to the maximum amount requested. The $1,600 mediation fee is also recoverable and reasonable. (Dkts. 1242-2 ¶49(e), 1242-5 at 1.)

### 10. The Parties Agree that Miesen's Motion Is <u>Not</u> Premature.

Miesen's original motion for fees and costs was withdrawn to prevent any appeals after the defendants argued that the motion was premature.[6] (Dkts. 1219 at 22; 1222 at 19 n. 8; 9/22/2022 Bond Decl. ¶17; 9/22/22 Miesen Decl. ¶14.)  The parties now agree the motion is not premature.

### 11. A Word about the Hawley Troxell Defendants' Two Responses.

The Hawley Troxell Defendants also filed two responses and a declaration opposing Miesen's motion. (Dkts. 1219-1220, 1250.) While it is perplexing why they would even waste the time and money to prepare those filings after having settled with Miesen, the only possible

---

[6] "The effect of withdrawal of a motion is to leave the record as it stood prior to the filing, that is, as though the motion had never been made." *Davis v. U.S.*, No. CV-07-0481, 2010 WL 334502, at *2 (C.D. Cal. Jan. 28, 2010).

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - 17

explanations are the dissatisfaction over having to pay $1,400,000 and apparent dislike of Miesen's counsel for achieving that settlement. Their filings should be disregarded as they are not parties.

**12. If Taylor's Testimony Is Considered, Live Cross-Examination Should Be Held.**

In short, John Taylor has no credibility. (*E.g.,* 9/22/22 Bond Decl. ¶11, Ex. 10-11; *see* Section 1 above.) If the Court is inclined to give any credence to John Taylor's testimony, oral testimony should be obtained for this motion. Fed. R. Civ. P. 54(d)(2)(C); Fed. R. Civ. P. 43(c); I.R.C.P. 54(e)(6).

## II.   CONCLUSION

For the foregoing reasons, this Court should grant Miesen's motion.

DATED:  This 22nd day of September 2022.

RODERICK BOND LAW OFFICE, PLLC

By:    */s/ Roderick C. Bond*
       Roderick C. Bond
       Attorney for the Plaintiff Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:    */s/ Andrew Schwam*
       Andrew Schwam
       Attorney for the Plaintiff Dale L. Miesen

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - 18

18-ER-4617

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd day of September 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:      jat@elamburke.com
Loren C. Ipsen:      lci@elamburke.com
Joyce A. Hemmer:      jah@elamburke.com
Bradley S. Keller:      bkeller@byrneskeller.com
Alyson A. Foster:      alyson@dempseyfoster.com
Tyler S. Waite:          twaite@campbell-bissell.com
Michael S. Bissell:      mbissell@campbell-bissell.com
Daniel L. Glynn:      dglynn@idalaw.com
Andrew Schwam:      amschwam@turbonet.com
Kim J Trout:      ktrout@trout-law.com


　　　　　　　　　　　　　　 /s/ Roderick C. Bond
　　　　　　　　　　　　　　 Roderick C. Bond

REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS (Dkts. 1242, 1243) - 19

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.; | Case No. 1:10-cv-00404-DCN-CWD |
| Plaintiff, | DECLARATION OF RODERICK C. BOND |
| v. | |
| CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company, | |
| Defendants. | |

DECLARATION OF RODERICK C. BOND - 1

**18-ER-4618**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

Defendants/Third-Party Plaintiffs,

v.

REED TAYLOR, an individual,

Third-Party Defendant.

REED TAYLOR, an individual,

Third-Party Defendant/ Counterclaimant,

v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

Counterdefendants.

DECLARATION OF RODERICK C. BOND - 2

I, Roderick C. Bond, declare:

1.        I am one of the attorneys for the Plaintiff Dale L. Miesen in this lawsuit. I am a citizen of the United States, over the age of eighteen, and competent to testify in court, including as to matters in this Declaration. This Declaration is based upon my personal knowledge. The below testimony also involves my opinions regarding various matters. I am not waiving any attorney-client privilege or work product protections by providing my testimony in this Declaration.

2.        In this Declaration, I will use the same definitions provided in my earlier declaration submitted in support of this motion, Dkt. 1242-2 ¶3.[1] As a point of clarification of my earlier declaration (Dkt. 1242-2 ¶6), although Donna Taylor previously had co-counsel with me for a short period of time, I was the sole counsel for Miesen in this lawsuit since I first appeared as counsel for him on March 23, 2016 (I was not Miesen's counsel in this lawsuit prior to that time) until the time that Mr. Schwam joined me as co-counsel for Miesen (he appeared as co-counsel on May 26, 2021).

3.        I have reviewed the defendants' responses (e.g., Dkts. 1250, 1251, 1252), the declaration of John Taylor dated July 8, 2022 (Dkt. 1223) and the exhibits attached to that declaration, and the defendants' prior responses, which the defendants incorporated into their recent responses. (Dkts. 1251 at 4 n. 4, 1252 at 25 n. 16, 1219-1222.) Those filings contained numerous instances of inaccurate, false and/or misleading arguments and testimony submitted by the defendants in their responses and the supporting declarations, including the many baseless and false personal attacks lodged against me for the reasons explained, in part, below (there are more

---

[1] Like my earlier declaration, my testimony below regarding any settlement offers or settlements is for the purposes of showing the defendants' bias, establishing their lack of credibility, and to overcome any potential prejudice created by their positions and testimony. *See Bankcard Am., Inc. v. Universal Bancard Sys.*, Inc., 203 F.3d 477, 484 (7th Cir. 2000).

DECLARATION OF RODERICK C. BOND - 3

reasons that space and time will not permit me to address).

4.      In this lawsuit and each of the lawsuits identified below and those lawsuits identified by the defendants in their filings in opposition to the motion to approve the payment of attorneys' fees and costs, I acted exclusively within the scope of my legal representation of my respective client(s). I was not the cause of any of those lawsuits or this lawsuit. One or more of the defendants were partially or wholly responsible for the filing of the lawsuits, not me. In addition to the information provided in my earlier declaration, I will provide some additional information as to each of the lawsuits listed in the bold and underlined headings below.

***This Lawsuit*.**

5.      John Taylor was deposed twice in this lawsuit (like Mr. Riley, the discovery master ordered them to be deposed a second time). Attached as ***Exhibit 1*** is a true and correct copy of the deposition nonconfidential deposition transcript for John Taylor as the Rule 30(b) deponent for the AIA Entities and the CropUSA Entities on July 28-31, 2020. At that time, we finally learned from John Taylor that the only decisions made by the alleged boards of directors for the AIA Entities were those decisions reduced to written board meeting minutes or written board resolutions. Attached as ***Exhibit 2*** are true and correct copies of the board meeting minutes and board resolutions that were produced in discovery, which we believe accounts for all of the board decisions from 1999 to the present time (very few of them as seen in Exhibit 2). Despite numerous written requests, we have not been provided with any other board resolutions or board meeting minutes for any alleged recent decisions. Attached as ***Exhibit 3*** are true and correct copies of the limited shareholder meeting minutes and one transcript for the AIA Entities from 1999 through the present time. In Exhibit 2 and 3, there was never any authorization to advance fees and costs for the Individual Defendants in this lawsuit. As a result, Miesen fully disputes that any of the

DECLARATION OF RODERICK C. BOND - 4

funds allegedly paid for the defense costs of the Individual Defendants was ever authorized.

6.      Attached as ***Exhibit 4*** are true and correct copies of AIA Insurance's bylaws (Exhibit 124 to John Taylor's deposition), AIA Services' Restated Bylaws (Exhibit 125 to John Taylor's deposition), AIA Services Amended and Restated Bylaws (Exhibit 416 to John Taylor's deposition) and AIA Insurance's Amended and Restated Bylaws (Exhibit 417 to John Taylor's deposition).

7.      Over the years, I have made requests on behalf of clients to obtain records from AIA Services. Attached as ***Exhibit 5*** is a true and correct copy of my letter dated March 26, 2014, which was delivered to AIA Services to request the statutory right to inspect and copy records. Neither I nor my clients were permitted to inspect and copy records as requested in Exhibit 5. Attached as ***Exhibit 6*** is a true and correct copy of my letter dated April 22, 2016, which was delivered to AIA Services to request the statutory right to inspect and copy records. Neither I nor my clients were permitted to inspect and copy records as requested in Exhibit 6. Exhibits 5 and 6 provide just a couple of examples how one or more of the Individual Defendants do not follow the law, and two more examples of unlawful conduct caused by one or more of the Individual Defendants.

8.      The defendants mischaracterize Miesen's damages. Attached as ***Exhibit 7*** is a true and correct copy of Miesen's Fourth Amended Responses and Answers to HTEH's discovery requests. A review of the damage item numbers in the answer to Interrogatory No. 6 and a review of the attached spreadsheet confirm that a number are alternative damage theories and Miesen would not seek to make double recoveries. Item Number 38 has been mischaracterized by the defendants on numerous occasions. That item number lists the AIA Entities' revenues from 1999 through 2018. Because to this day Miesen still does not know where all of the money went and for

DECLARATION OF RODERICK C. BOND - 5

what purposes the funds were used for, Miesen was asserting that the defendants need to prove that point based on the conflicts of interest and improper corporate governance. There is no way that we believe that all of those funds were improperly used. Some of the funds were used to pay certain employees and for other legitimate expenses. We just do not know how much. Thus, Miesen listed the revenues and provided a total. And this item number could be duplicative of most of the other item numbers other than the debt to GemCap and certain other limited matters. Because full and fair discovery and disclosure has never been provided, we do not know for certain where the money went. Exhibit 7 also contains answers making clear that Miesen is asserting direct claims.

9.      Attached as **_Exhibit 8_** is a true and correct copy of a letter from the Department of Labor to John Taylor dated September 9, 2021. This letter confirms that John Taylor was found to breached his obligations to the AIA Services' 401(k) Plan. This letter only addresses certain limited transactions.

10.      Attached as **_Exhibit 9_** is a true and correct copy of the August 2008 settlement agreement between the Trusts, NOLHGA and the Liquidator (marked as Exhibit 477 to John Taylor's deposition).

11.      Attached as **_Exhibit 10_** is a true and correct copy of an internal spreadsheet from AIA showing legal fees and costs paid to certain law firms or lawyers for certain matters (Exhibit 437 to John Taylor's deposition). This spreadsheet also shows that Hawley Troxell was owed $63,781.64 for unpaid work. We have seen an additional $30,000 payment from CropUSA Insurance Agency to Hawley Troxell with the matter number for the Donna Taylor case on the check. Thus, at a minimum, there would have been $33,781.64 (plus interest if applicable) owed after that $30,000 payment. Attached as **_Exhibit 11_** is a true and correct copy of John Taylor's

DECLARATION OF RODERICK C. BOND - 6

declaration dated May 9, 2014, which was filed in the Donna Taylor cases (Exhibit 497 to John Taylor's deposition). In Exhibits 10 through 11, they show AIA incurring $2,081,231.74 and $2,240,135.10 in legal fees, respectively, for Reed Taylor's lawsuit filed in 2007. When comparing these two numbers to John Taylor's most recent declaration (Dkt. 1223 at 9), it is clear that John Taylor moved at least $189,493.39 in fees and costs paid to Risley Law Office from the Reed Taylor case to the Miesen case in order to increase the fees and costs that John Taylor is alleging has been incurred ($189,493.39 of the $786,961.01 in total fees), which shows a reduction of the fees and costs incurred for the Reed Taylor case by almost $300,000 to the new number of $1,791,695.14 (which is almost $500,000 less than the $2,240,135.10 in fees John Taylor testified were incurred in his 2014 declaration (Exhibit 11). John Taylor did not bother to mention that certain of the law firms (including his present counsel) identified in the spreadsheet (Dkts. 87, 109, 233, 545) and included in the $786,961,02 were also counsel for the CropUSA Entities and the Individual Defendants for other work such as their third-party complaint against Reed Taylor and matters unrelated to being former officers and directors, i.e., defendants because of being majority shareholders. There was no effort by John Taylor to segregate the fees by client as required by Idaho case law. This is but one of many examples of John Taylor's complete lack of credibility. Note how he provides no explanation for changing his numbers and he testified at his deposition that he "would not dispute [his] affidavit." (See Exhibit 1 at 417.) In addition, most of the billing records (and all of Mr. Glynn's billing records) have been produced nearly fully redacted. I am unable to determine any work Mr. Glynn has performed because of the redactions. The same is true for other redacted billing records. Moreover, they have asserted privilege as to their billing records (although some have been produced in unredacted form, most have not). It appears that John Taylor's strategy was to put up as large of a number as possible without providing us with

DECLARATION OF RODERICK C. BOND - 7

information because the detailed billing records would not support the $786,961.01 in fees and costs. I am aware that the attorneys representing the defendants in this lawsuit have also represented them in other lawsuits and that they billed multiple matters into the same matter.

12.     Attached as *Exhibit 12* is a true and correct copy of the November 1, 2007 Amended and Restated Standstill and Tolling Agreement (Exhibit 246 to John Taylor's deposition). Under the terms of this Agreement, the Individual Defendants (with the exception of Cashman) were required to investigate the claims of malfeasance. There never were any investigations that we were made aware of, and John Taylor testified that none occurred. There has still never been a final judgment entered in the Reed Taylor case, so Exhibit 12 still has not formally terminated (although the clerk closed the case, there are counterclaims pending). This is one of the tolling agreements referenced in the Third Amended Complaint.

13.     The defendants have raised allegations regarding sanctions. First, I would like to point out that Miesen, after consultation with me, decided to forego seeking an award of sanctions in discovery motions for most instances because we wanted to focus on the case and not increasing the number of objections and the cost of the discovery master. While it is true that the discovery master awarded fees against us on two motions brought by the Hawley Troxell Defendants, those are the only times that I have been sanctioned in discovery, except for the GemCap settlement agreement fiasco. With respect to that matter, Judge Dale stated on the record that just because the GemCap settlement agreement was being sealed would not prevent us from using it in the case. I used the agreement at a deposition and got sanctioned for it. Later, I found proof that the deponent already had the settlement agreement and that GemCap had misrepresented things to the Court, which is why GemCap agreed to stipulate to vacate the sanction award against me. We also agreed to not pursue sanctions against GemCap because we wanted to focus on the case and not increasing

DECLARATION OF RODERICK C. BOND - 8

the cost and work of the litigation (although I concede that I was not happy about the ordeal).

14.     There have been allegations that we have delayed this case. These are not true. The only delays that we have sought concerns with trying to do the best job we can with the limited amount of time that I sometimes have to do the work. Indeed, I was the attorney who successfully got the stay of this lawsuit reversed in the Ninth Circuit. The allegations of churning are also false. This begs the question. Why would an attorney who is not getting paid by the hour want to "churn" a case? I have no vested interest in churning, and I have never churned on any lawsuit. If I am guilty of anything, it is zealously representing my client.

15.     I have never used any strategies to intentionally delay this case and I have always tried to proceed in the best manner possible. At times, I have been overloaded with work on this case and other matters that have necessitated me to ask for additional time, but I have never intentionally sought to delay this lawsuit. I have consulted with Miesen in detail before the filing of most every motion, especially material motions. If this Court is referring to the motion for reconsideration and motion for permission to appeal the exclusion of McDermott as Miesen's expert witness, those motions were pursued solely to try to get McDermott back in the case. The appeal that we sought, which was dismissed, was sought solely to try to get McDermott back in the case. When the motion to seek an interlocutory appeal was prepared, Miesen also made the decision to file a motion to certify questions to the Idaho Supreme Court. This motion was pursued with the understanding that if this Court was to grant the appeal for McDermott, then this Court might also be inclined to grant the motion to certify questions and both appeals could be pursued simultaneously to efficiently resolve all of those issues to prevent further delays and prevent more than one trial. Significantly, it was the direct appeal that we sought for the exclusion of McDermott (which we requested mediation for) that led to the Ninth Circuit mediator assisting Miesen and the

DECLARATION OF RODERICK C. BOND - 9

Hawley Troxell Defendants in agreeing on the material settlement terms. That is what led to the settlement with the Hawley Troxell Defendants. Thus, the direct appeal, which failed, actually resulted in the settlement with the Hawley Troxell Defendants.

16.     As to discovery matters, Miesen did not ask to have a discovery master appointed. When this Court referred discovery matters to Judge Dale and then she referred the discovery matters to the discovery master at the request of the defendants, two additional layers of work was added for me and Miesen to address. While Miesen was largely successful in the discovery motions, after my consultation, he even decided not to seek fees or costs for the motions to compel that we prevailed on because they would add more costs for the discovery master and create more additional layers of work and objections on both sides. In addition, because Miesen was paying me on contingent fee and I was a solo practitioner (with other cases), it made sense to focus our efforts on moving the case forward, rather than getting bogged down with my discovery motions and objections regarding the award of fees and costs. In terms of the appeals of discovery matters to this Court, Miesen did not seek to appeal every ruling and he picked and chose which ones to appeal to this Court to preserve for appeal. While we had persuaded Judge Dale to grant reconsideration on a matter, Miesen hoped that this Court might grant appeals on certain issues, but I was doing my job to preserve issues for appeal.

17.     Mr. Glynn falsely alleges that we had some ulterior motive for withdrawing our original motion to approve the payment of attorneys' fees and costs. The Hawley Troxell Defendants raised the argument that the fee application was premature (they never disclosed to us in negotiations and finalizing the agreement that they would take that position). Mr. Glynn joined in those arguments. Thus, after consultation with Miesen, the motion was withdrawn to eliminate any possible appeals over the request being premature and we were prepared to wait until more

DECLARATION OF RODERICK C. BOND - 10

issues in the case were resolved. Then, the defendants changed positions and asserted that the motion should be decided and not delayed (they refused to stipulate to allowing us to bring the motion in the future). However, after further thought, we agreed that the motion should be heard now, which is what we originally believed. Since everyone agrees, we re-filed the motion. As to Mr. Glynn's argument that we were afraid of his argument, that is simply not true.

18.     The Hawley Troxell Defendants attack my work, which is entirely inconsistent with the position that they took when they wanted to settle. Their allegations are disputed. For example, the "adverse interest" and related statute of limitations doctrines were not critical to Miesen's claims. Most of Miesen's claims have no statute of limitations problems and other Idaho theories such as equitable estoppel will be pursued. The Hawley Troxell Defendants also attack me for my email in their most recent response, but I was simply acting as directed by Miesen. As mentioned above, the Hawley Troxell Defendants never disclosed to us that they would be vehemently opposing our fee and cost request (including that it was premature), and the settlement agreement was contrary to those assertions. My original declaration addresses much of the false allegations regarding the various lawsuits. (Dkt. 1242-2 ¶¶50(a)-(l).) I will provide some additional information below.

*Reed J. Taylor v. AIA Services Corp., et al.*, **Nez Perce County District Court Case No.: CV-07-00208 ("*Reed Taylor v. AIA Services*").**

19.     Contrary to the defendants' assertions, the only reason that Reed Taylor lost this case is because the redemption was declared illegal because AIA Services did not have sufficient earned surplus in 1995 and capital surplus was never authorized. The merits of Reed Taylor's tort claims and breach of contract claims were never reached because his agreements were found to be illegal. Indeed, I had obtained a partial summary judgment on the default of the $6M Note. I was largely successful in that lawsuit until the illegality defense was first raised in April 2008 (over

DECLARATION OF RODERICK C. BOND - 11

one year into the case). With all of the attorneys on the other side, I am surprised the defense was not raised a year or more earlier, which would have saved AIA Services significant fees and costs. That was not my fault either. No fees were awarded because the redemption agreement was illegal, and Reed Taylor was permitted to keep the money that he had been paid. I would note, however, that Reed Taylor made a generous settlement offer in 2008. Reed's offer, if accepted, would have ended all of the lawsuits and prevented this one. And, based on Exhibit 13, Reed just wanted the company operated properly and everyone treated fairly. But John Taylor would rather pay lawyers over $2,000,000 to fight his brother rather than treat him fairly. I tried to prevent that from happening and I did not like seeing two brothers fighting. However, my experience was that John Taylor was very vindictive, which is what numerous former employees also told me.

### Reed J. Taylor v. Riley, et al., Ada County District Court Case No. CV-OC-09-18868 ("Reed Taylor v. Riley").

20.     While the Hawley Troxell Defendants paint a bleak picture of this lawsuit, they know the truth. They know that we prevailed on Riley's motions for summary judgment more than once, but they were granted a permissive appeal by the Idaho Supreme Court. On one occasion, Reed Taylor made a settlement offer and the defendants (including Mr. Riley) made a $1,000,000 counteroffer, which Reed Taylor rejected. In that lawsuit, I also obtained partial summary judgment rulings in favor of Reed Taylor on several issues, including the value of his shares.

### In Re: Petitions to Quash Reed Taylor's Foreign Subpoenas for Reed Taylor v. Bell, Nez Perce County District Court Case Nos. CV16-02243, CV16-02244, and CV16-02368.

21.     I was not the cause of the petitions that were filed at the direction of John Taylor (to quash Reed Taylor's foreign subpoenas issued to obtain documents for his legal malpractice action in Seattle, *Reed Taylor v. Bell*. These petitions were filed against my former client, Reed Taylor. Notably, there are no board meeting decisions or minutes that authorized the filing of these

DECLARATION OF RODERICK C. BOND - 12

**18-ER-4629**

petitions. The amount John Taylor alleges was spent fighting Reed Taylor's subpoenas is not accurate based on the records that I have reviewed. I tried countless times to resolve the subpoenas through an agreed stipulation to no avail. It was not until Reed Taylor appealed the decision to quash the subpoenas that Mr. Weiland finally agreed to resolve the matter. It was apparent that John Taylor was seeking to extract revenge on his brother Reed because emails were produced that showed he and others at AIA were cooperating with the defendants and voluntarily producing documents and allowing interviews. We were never treated reasonably, and the costs of the litigation could have been prevented had they just agreed to the stipulation months earlier. What made this more perplexing to me was that John Taylor had no "iron in the fire" as to Reed's legal malpractice case in Seattle. Yet, John Taylor spent significant fees and costs (allegedly) fighting Reed in discovery and assisting the defendants.

***Donna Taylor v. John Taylor, et al., Consolidated Nez Perce District Court Case Nos. CV-08-1150 and CV-13-1075 ("Taylor v. Taylor").***

22.     Contrary to the defendants' allegations, Donna Taylor has never asserted any derivative claims in those lawsuits and she is pursuing damages solely for her benefit as the sole lawful holder of Series A Preferred Shares, which were required to have been fully redeemed by December 2003. They also disregard my successes. While it is true that Judge Brudie found that there were issues of fact as to whether there were legally available funds under the terms of the articles of incorporation to pay Donna Taylor, he granted partial summary judgment in Donna's favor on a number of issues, including that her rights as a Series A Preferred Shareholder would be preserved until she was paid in full. While the Idaho Supreme Court awarded fees and costs to Donna Taylor on the appeal in 2018, those funds have still not been paid. Attached as ***Exhibit 13*** is a true and correct copy of Judge Brudie's last decision. As previously testified, Mr. Glynn rejected an offer to settle for the lower interest rate if they would agree to the number of shares

DECLARATION OF RODERICK C. BOND - 13

held by her, but he refused, which increased the interest by hundreds of thousands of dollars. Notably, even after the ruling in Exhibit 13, John Taylor and Mr. Glynn (he is counsel for all of the defendants on those lawsuits) have refused to honor Donna Taylor's appointment of Paul Durant to AIA Services' board of directors (he is a former executive of AIA and knows the company well).

***Donna Taylor v. Riley, U.S. District Court for Idaho, Case No. 1:17-cv-255-CWD.***

23. The Hawley Troxell Defendants allege that this lawsuit was somehow bad. I disagree. Mr. Riley had personally signed a letter to Donna Taylor stating the term and interest rate that she would be paid back in 1995 at the request of Donna's lawyer. After Judge Brudie ruled against Donna, she elected to pursue claims against Riley for the "guarantee" letter that he signed because he would not agree to toll the statute of limitations. After Mr. Riley moved for summary judgment, Donna agreed to voluntarily dismiss her case without an award of fees or costs and without any preclusive effect because I believed that she would prevail in the Idaho Supreme Court and there could have been judicial estoppel and related issues. I was correct. The Idaho Supreme Court ruled in Donna's favor and thus her decision was the right one.

**Fees and Costs re GemCap Settlement**

24. Mr. Schwam and I have agreed to limit the fees and costs for work achieving the settlement with GemCap under either the common fund doctrine and/or I.C. § 30-29-746(1) to be included in the 40% contingent fee and costs requested from the settlement proceeds with the Hawley Troxell Defendants. In other words, if this Court rules that we are entitled to the 40% contingent fee and the costs requested in this motion for fees and costs, Miesen's motion for fees and costs as to the settlement with GemCap under either of those authorities would be rendered moot (assuming this Court approves the GemCap settlement, Miesen will timely file his fee and

DECLARATION OF RODERICK C. BOND - 14

cost request within 14 days of the Rule 54(b) judgment entered for the GemCap settlement).

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

| | |
|---|---|
| *September 22, 2022, Bellevue, WA* | */s/ Roderick C. Bond* |
| Date and City and State Signed | Roderick C. Bond |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd day of September 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:    jat@elamburke.com
Loren C. Ipsen:    lci@elamburke.com
Joyce A. Hemmer:    jah@elamburke.com
Bradley S. Keller:    bkeller@byrneskeller.com
Alyson A. Foster:    alyson@dempseyfoster.com
Tyler S. Waite:    twaite@campbell-bissell.com
Michael S. Bissell:    mbissell@campbell-bissell.com
Daniel L. Glynn:    dglynn@idalaw.com
Andrew Schwam:    amschwam@turbonet.com
Kim J Trout:    ktrout@trout-law.com

| | |
|---|---|
| | */s/ Roderick C. Bond* |
| | Roderick C. Bond |

DECLARATION OF RODERICK C. BOND - 15

**18-ER-4632**

AIA SERVICES CORPORATION
BOARD OF DIRECTORS MEETING

April 21, 1999

A meeting of the Board of Directors of AIA Services Corporation was held by telephone conference call, pursuant to notice, at Lewiston, Idaho, on April 21, 1999. John Taylor called the meeting to order at 9:07 a.m.

Roll call was taken and the following Directors were present:

R. John Taylor
Michael Cashman
James Beck
David Larson
Bruce Sweeney
Reed Taylor

Also present were Bruce Madrid, Paul Schrette, and JoLee Duclos.

**There was a motion and second to approve the minutes of the October 29, 1998, meeting as presented. The motion passed unanimously.**

John Taylor and Bruce Madrid discussed 1998 financial statements on a consolidated basis. It was noted that both revenues and expenses were down. **There was a motion and second to approve the treasurer's report. The motion passed unanimously.**

The liquidation of Universe Life was discussed. Claims filed by the Trusts on behalf of the insureds were reviewed, as well as claims made by AIA Insurance against the Universe estate.

Trustmark plans to institute another rate increase on the block of business. The increase is due to general medical cost increases and unfavorable incurred costs on the block.

John is planning to attend a national Rural Electrical Co-op convention with Dave Larson. They hope some of the REC's show interest in becoming a participating association.

AIA Insurance has been sued by Gordon Anderson, a former agent. The materiality of the suit is minimal, under $10,000. AIA believes it can prevail on summary judgment.

The various lawsuits with Centennial were discussed. Attorneys in Kansas are doing most of the work on them.

Board of Directors Minutes          1

Reed Taylor continues to pursue the 125 Plan in Texas. The plan is structured to resemble combination of an MSA product with the 105 plan was discussed.

Jim Winn continues to recruit agents, although currently most of them are focusing on sales of the Tuition OneSource product. Jim believes the MemberPerks program must be in place to help get his agents in the door on health sales.

There being no further business, the meeting was adjourned at 10:12 a.m.

JoLee K. Duclos, Secretary

Board of Directors Minutes        2

AIA0025605

MINUTES OF THE ANNUAL MEETING OF DIRECTORS
OF
AIA INSURANCE, INC.

May 11, 1999, third floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

**I.   Call to Order**
The annual directors meeting of the Corporation was called to order by R. John Taylor.
The following directors were present:
R. John Taylor
JoLee K. Duclos

**II.   Minutes of Previous Meeting**
The Secretary submitted the minutes of the prior meeting dated November 3, 1998. Upon motion duly made and seconded, the minutes were unanimously approved as submitted.

**III.   Election of Officers**
The following nominees for officers were elected:

| | |
|---|---|
| President /CEO | R. John Taylor |
| Executive Vice President-Marketing | Paul D. Schrette |
| Vice President | Reed J. Taylor |
| Treasurer | Mary Nordhagen |
| Secretary | JoLee K. Duclos |
| Vice President | Lee Ann Hostetler |
| Vice President - MIS | Bryan Freeman |
| Assistant Vice President | Kami Shoemaker |
| Assistant Secretary | Bobette Ruddell |

**IV.   Ratify Actions**
The directors, upon motion duly made and seconded, ratified, affirmed and adopted all business transactions authorized or conducted by Officers and/or employees since the date of the last annual meeting.

**V.   Adjournment**
There being no further business, the meeting was adjourned.

I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the directors meeting of the Corporation duly held May 11, 1999.

_____
JoLee K. Duclos, Secretary

AIA0025615

MINUTES OF THE ANNUAL MEETING OF DIRECTORS
OF
AIA INSURANCE, INC.

December 16, 1999, third floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

I.    **Call to Order**

A special director's meeting of the Corporation was called to order by R. John Taylor.

The following directors were present:

R. John Taylor
JoLee K. Duclos
Paul D. Schrette

II.    **Dividend**

WHEREAS, it is the desire of the Board of Directors to declare a current dividend to the shareholders of AIA Insurance, Inc.;

NOW, THEREFORE, BE IT RESOLVED, that AIA Insurance, Inc. shall declare a dividend of $1.6 million to be paid to its shareholders of record as of December 1, 1999. Said dividend payment shall be payable in 1999.

V.    **Adjournment**

There being no further business, the meeting was adjourned.

I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the directors meeting of the Corporation duly held December 16, 1999.

_____
JoLee K. Duclos, Secretary

**Exhibit - 2, p. 4**
**18-ER-4636**

AIA0025613

MINUTES OF THE ANNUAL MEETING OF DIRECTORS
OF
AIA INSURANCE, INC.

May 9, 2000, third floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

**I.      Call to Order**
The annual directors meeting of the Corporation was called to order by R. John Taylor.  The following directors were present:
> R. John Taylor
> JoLee K. Duclos
> Paul D. Schrette

**II.     Minutes of Previous Meeting**
The Secretary submitted the minutes of the prior meeting dated May 11, 1999 and December 16, 1999.  Upon motion duly made and seconded, the minutes were unanimously approved as submitted.

**III.    Election of Officers**
The following nominees for officers were elected:

| | |
|---|---|
| President /CEO | R. John Taylor |
| Executive Vice President-Marketing | Paul D. Schrette |
| Treasurer | Mary Nordhagen |
| Secretary | JoLee K. Duclos |
| Vice President Marketing | Reed J. Taylor |
| Vice President | Lee Ann Hostetler |
| Vice President - MIS | Bryan Freeman |

**IV.    Ratify Actions**
The directors, upon motion duly made and seconded, ratified, affirmed and adopted all business transactions authorized or conducted by Officers and/or employees since the date of the last annual meeting.

**V.      Adjournment**
There being no further business, the meeting was adjourned.

I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the directors meeting of the Corporation duly held May 9, 2000.

_____
JoLee K. Duclos, Secretary

AIA0025612

**Exhibit - 2, p. 5**
**18-ER-4637**

AIA SERVICES CORPORATION
BOARD OF DIRECTORS MEETING

September 28, 2000

A meeting of the Board of Directors of AIA Services Corporation was held in Minneapolis, Minnesota, pursuant to notice, on September 28, 2000. John Taylor called the meeting to order at 2:15 p.m.

Roll call was taken and the following Directors were present:

        R. John Taylor
        Michael Cashman
        James Beck
        Bruce Sweeney
        Reed Taylor

Also present were Paul Schrette and JoLee Duclos.

**There was a motion and second to approve the minutes of the April 21, 1999, meeting as presented. The motion passed unanimously.**

John Taylor discussed financial statements on a consolidated basis. Jim Beck questioned the imputed interest figures. John explained that five percent had been paid as a bonus, but the block was not profitable so we have to pay Trustmark back. The imputed interest figure is the present value of the repayment. A cash flow report was passed out and John stated that it should average about $300,000 per month, as our costs are $250,000 per month. The unqualified MSA funds are at about $25 million. Administrative costs were discussed, as well as commissions. **There was a motion and second to approve the treasurer's report. The motion passed unanimously.**

John Taylor brought the Board up to date on the current status of the Trust claims in the Universe Life liquidation. He stated the Judge will hear the case "de novo" which means only on the documents filed at the time of the hearing, plus whatever evidence we want to put on.

The lack of cooperation we are getting from Trustmark was discussed, as well as the high cost of the policy. We are negotiating contracts to sell major medical products for Fortis and World in various states. We are also working with two different companies, Actuarial Management Corporation and Reinsurance Alternatives, on developing a new policy. Eventually we'd like a policy that covers both health and property/casualty needs with one

Board of Directors Minutes          1

AIA0025606

deductible.  For the present, we'll focus on a health product with several options – something for everyone.  Those options might be: 1) full major medical; 2) accident only; 3) hospital only; and 4) some type of supplement to cover deductibles and rate increases. We'd like to have the policy in the state filing stages by year-end.

Paul Schrette handed out the marketing report.  Sales are off for several reasons:  not enough funds to purchase leads; the need for health insurance in the rural community has decreased because of available coverage through a working spouse; and the product is not competitively priced (with expected annual increases of 25% or more for the next several years).

Reed Taylor explained the joint effort we are discussing with the Texas Peanut Grower Association to sell crop insurance.  Great American Insurance Companies will be the underwriter, and they have approved our business model.  Great American will do the administration and adjusting.  We hope to create a "climate for enthusiasm" by offering stock options to the agents and profit to the growers who purchase the insurance through the cooperative in the form of patronage dividends.  We hope to kick off the project within the next couple of weeks.  Jim Beck wanted to know how long it would take to prove it up.  Reed believes within 30 days.  The directors were advised that one-half of the commission is usually paid in March, while the balance is paid 45 days after harvest ends.

Jim asked if AIA could do a Gant chart showing tasks that need to be done and their deadlines.  John advised that we could.

Paul proceeded to explain the cooperative in detail and the work Randon Wilson out of Salt Lake City has done on it.  He is an expert in the cooperative field and has formed co-ops nationwide. The importance of the co-op Board of Directors was discussed.  Paul also explained that although the agents are going to take a commission cut, they should be able to attract many more purchasers of crop insurance so their income should actually double or triple.

AIA's e-commerce relationships with Farmbid.com and Rooster.com were discussed.  AIA's name will not be out in front on those deals.  Internet applications were discussed, and the use of InsLogic as an Internet exchange platform.

Reed advised the Board that his loan is in serious default.

John stated that we need $3 million to accomplish the presented ideas.  Approximately one-half would be for the Call Center and

Board of Directors Minutes        2

AIA0025607

Internet development and the balance would be for financing new staff. John also explained the importance of having a clean company shell and a clean balance sheet to offer for due diligence in the event we take the company public.

Jim Beck asked if we could form a new company. John believes that would be the best solution. A newco would be preferable to spinning a subsidiary off AIA, and it could be taken public so options could be given to key managers.

The Board agreed that the plans of AIA's management appear exciting and likely to make a profit for the company. The question was raised about how these activities would affect the decisions the investors need to make on their warrants. Jim and Mike advised the other Board members that they needed to be approached as investors first and then as directors regarding any corporate/stock reorganization.

Mike Cashman suggested that a committee be established to monitor the progress of the proposed newco and keep the c-shareholders advised of the activities. He nominated Jim Beck to sit on the committee. By a unanimous decision the Board agreed that Jim Beck, Bruce Sweeney and Reed Taylor would be the Newco Committee. A weekly conference call schedule will be followed with the first on next Friday at 8:00 a.m. PDT. JoLee Duclos will coordinate the meetings and copies of pertinent information will be sent to Mike Cashman.

Jim Beck will contact a party who owes him a favor regarding the best structure for Newco. Mike Cashman stated that he has contact with John Collins, one of the foremost crop experts in the country.

There being no further business, the meeting was adjourned at 5:55 p.m.

---
JoLee K. Duclos, Secretary

Board of Directors Minutes          3

AIA0025608

MINUTES OF THE ANNUAL MEETING OF DIRECTORS
OF
AIA INSURANCE, INC.

May 8, 2001, third floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

I.     **Call to Order**
The annual directors meeting of the Corporation was called to order by R. John Taylor. The following directors were present:
R. John Taylor
JoLee K. Duclos
Paul D. Schrette

II.    **Minutes of Previous Meeting**
The Secretary submitted the minutes of the prior meeting dated May 9, 2000. Upon motion duly made and seconded, the minutes were unanimously approved as submitted.

III.   **Election of Officers**
The following nominees for officers were elected:

| | |
|---|---|
| President /CEO | R. John Taylor |
| Executive Vice President-Marketing | Paul D. Schrette |
| Treasurer | Mary Nordhagen |
| Secretary | JoLee K. Duclos |
| Vice President Marketing | Reed J. Taylor |
| Vice President - MIS | Bryan Freeman |

IV.    **Ratify Actions**
The directors, upon motion duly made and seconded, ratified, affirmed and adopted all business transactions authorized or conducted by Officers and/or employees since the date of the last annual meeting.

V.     **Adjournment**
There being no further business, the meeting was adjourned.

I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the directors meeting of the Corporation duly held May 8, 2001.

_____
JoLee K. Duclos, Secretary

AIA0025610

CONSENT RESOLUTION IN LIEU OF
SPECIAL MEETING OF DIRECTORS
OF
AIA INSURANCE, INC.


THE UNDERSIGNED, being a majority of the Directors of AIA Insurance, Inc., an Idaho corporation, hereby consent to, adopt, and approve in writing the following corporate action taken without a meeting in accordance with the provisions of the Business Corporation Act of the State of Idaho:

WHEREAS, in the normal course of business it is necessary for AIA Insurance, Inc. to obtain licenses in various states for certificates of authority to act as a foreign corporation conducting the business of insurance marketing and/or a corporate insurance agency; and

WHEREAS, each state to which AIA Insurance, Inc. applies for said licenses has its own specific rules regarding the use of AIA Insurance, Inc. as the designated name for a marketing company; and

WHEREAS, the Board of Directors desires AIA Insurance, Inc. to be able to comply with various state requirements in its licensing process, now, therefore,

BE IT HEREBY RESOLVED, the Board of Directors of AIA Insurance, Inc. hereby designates that in the state of Texas the name AIA Texas Insurance Agency, Inc. shall be utilized, and an LDTL Registration of Assumed Name shall be filed in the state.

This resolution shall remain in effect until specifically

**Exhibit - 2, p. 10**
**18-ER-4642**

AIAPROD00171147

revoked by the Board of Directors.

DATED this 2nd day of January, 2002.


_____

_____
R. John Taylor                    JoLee K. Duclos

### CERTIFICATION

I, JoLee K. Duclos, hereby certify that I am the duly elected, qualified, and acting Secretary of AIA Insurance, Inc., a corporation organized and existing under the laws of the State of Idaho, and, as such Secretary, am the keeper of the records and seal of said Corporation.

I further certify that attached hereto is a true and correct copy of a Consent Resolution of the Directors of said Corporation, adopted January 2, 2002, authorizing use of the name AIA Texas Insurance Agency, Inc. in the state of Texas. Said resolution as so adopted is still in force and effect and has not been repealed or modified.

IN WITNESS WHEREOF, I have hereunto set my hand this 2nd day of February, 2002.

_____
JoLee K. Duclos, Secretary

AIAPROD00171148

MINUTES OF THE ANNUAL MEETING OF DIRECTORS
OF
AIA INSURANCE, INC.

May 7, 2002, third floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

**I.   Call to Order**
The annual directors meeting of the Corporation was called to order by R. John Taylor. The following directors were present:
R. John Taylor
JoLee K. Duclos
Bryan Freeman

**II.   Minutes of Previous Meeting**
The Secretary submitted the minutes of the prior meeting dated May 8, 2001. Upon motion duly made and seconded, the minutes were unanimously approved as submitted.

**III.   Election of Officers**
The following nominees for officers were elected:

| | |
|---|---|
| President /CEO | R. John Taylor |
| Vice President | Bryan Freeman |
| Treasurer | Jerry Andersen |
| Secretary | JoLee K. Duclos |
| Vice President Marketing | Reed J. Taylor |

**IV.   Ratify Actions**
The directors, upon motion duly made and seconded, ratified, affirmed and adopted all business transactions authorized or conducted by Officers and/or employees since the date of the last annual meeting.

**V.   Adjournment**
There being no further business, the meeting was adjourned.

I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the directors meeting of the Corporation duly held May 7, 2002.

_____
JoLee K. Duclos, Secretary

AIA0001016

**Exhibit - 2, p. 12**
**18-ER-4644**

MINUTES OF A SPECIAL MEETING OF DIRECTORS
OF
AIA INSURANCE, INC.

August 5, 2002, third floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

**I.      Call to Order**

The annual directors meeting of the Corporation was called to order by R. John Taylor. The following directors were present:

R. John Taylor

JoLee K. Duclos

Bryan Freeman

**II.     Minutes of Previous Meeting**

The Secretary submitted the minutes of the prior meeting dated May 7, 2002. Upon motion duly made and seconded, the minutes were unanimously approved as submitted.

**III.    Appointment of Treasurer**

The resignation of Jerry Andersen as Treasurer was duly noted. The Board appointed Mike Jones to serve as Treasurer until the next annual meeting of the Board of Directors.

**IV.    Adjournment**

There being no further business, the meeting was adjourned.

I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the directors meeting of the Corporation duly held August 5, 2002.

_____

JoLee K. Duclos, Secretary

**AIA0001015**

**Exhibit - 2, p. 13**

**18-ER-4645**

MINUTES OF THE ANNUAL MEETING OF DIRECTORS
OF
AIA INSURANCE, INC.

May 6, 2003, third floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

I.      **Call to Order**
        The annual directors meeting of the Corporation was called to order by R. John
        Taylor.  The following directors were present:
                R. John Taylor
                JoLee K. Duclos
                Bryan Freeman

II.     **Minutes of Previous Meeting**
        The Secretary submitted the minutes of the prior meeting dated May 7, 2002.  Upon
        motion duly made 'and seconded, the minutes were unanimously approved as
        submitted.

III.    **Election of Officers**
        The following nominees for officers were elected:
        President /CEO                          R. John Taylor
        Vice President                          Bryan Freeman
        Treasurer                               Mike Jones
        Secretary                               JoLee K. Duclos
        Vice President Marketing                Reed J. Taylor

IV.     **Ratify Actions**
        The directors, upon motion duly made and seconded, ratified, affirmed and adopted
        all business transactions authorized or conducted by Officers and/or employees since
        the date of the last annual meeting.

V.      **Adjournment**
        There being no further business, the meeting was adjourned.

        I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and
correct copy of the minutes of the directors meeting of the Corporation duly held May 6,
2003.

                                        _____
                                        JoLee K. Duclos, Secretary

AIA0001013

Exhibit - 2, p. 14
**18-ER-4646**

MINUTES OF THE ANNUAL MEETING OF DIRECTORS
OF
AIA INSURANCE, INC.

May 4, 2004, second floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

**I.      Call to Order**
The annual directors meeting of the Corporation was called to order by R. John Taylor.  The following directors were present:
R. John Taylor
JoLee K. Duclos
Bryan Freeman

**II.     Minutes of Previous Meeting**
The Secretary submitted the minutes of the prior meeting dated May 6, 2003.  Upon motion duly made and seconded, the minutes were unanimously approved as submitted.

**III.    Election of Officers**
The following nominees for officers were elected:

| | |
|---|---|
| President /CEO | R. John Taylor |
| Vice President | Bryan Freeman |
| Treasurer | Mike Jones |
| Secretary | JoLee K. Duclos |
| Vice President Marketing | Reed J. Taylor |

**IV.    Ratify Actions**
The directors, upon motion duly made and seconded, ratified, affirmed and adopted all business transactions authorized or conducted by Officers and/or employees since the date of the last annual meeting.

**V.     Adjournment**
There being no further business, the meeting was adjourned.

I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the directors meeting of the Corporation duly held May 4, 2004.

_____
JoLee K. Duclos, Secretary

AIA0001011

**Exhibit - 2, p. 15**
**18-ER-4647**

MINUTES OF SPECIAL MEETING OF DIRECTORS
OF
AIA INSURANCE, INC.

July 20, 2004, second floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

**I.      Call to Order**

The directors meeting was called to order by R. John Taylor.  The following directors were present:

  R. John Taylor
  JoLee K. Duclos

**II.     Treasurer**

It is noted that Treasurer, Mike Jones, terminated his employment with the company. Chairman, R. John Taylor, appointed Marcus B. McNabb to fill the vacated position of Mike Jones until the next annual meeting of the company.

**III.    Adjournment**

There being no further business, the meeting was adjourned.

I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the directors meeting of the Corporation duly held July 20, 2004.

_____
JoLee K. Duclos, Secretary

**AIA0001010**

**Exhibit - 2, p. 16**

**18-ER-4648**

AIA Insurance, Inc.
Board of Directors
Consent in Lieu of Meeting
August 26, 2004

Whereas, CropUSA Insurance Agency, Inc. is owner of 205,000 Class C Preferred Shares of AIA Services Corporation, Par value $10.00, which the Company acquired though an exchange offering with non-employee shareholders; and

Whereas, CropUSA desires to liquidate its investment in the Preferred Shares; and

Whereas, AIA Insurance, Inc., desires to purchase the shares; and

Whereas, the most recent appraised value for the shares is $9.39 per share; and

Whereas, the redemption value is $10.00 per share plus accumulated but undeclared dividends of approximately $551,000, or a total redemption value of $15.51 per share; and

Whereas, AIA desires to purchase the shares at a discount; and

Whereas, CropUSA desires to sell the shares for an amount less than appraised value or redemption value.

NOW, THEREFORE, be it resolved that the Company hereby authorizes the purchase of 205,000 Series C Preferred shares from CropUSA for the sum of $1,510,693.

Be it further resolved that the officers are hereby authorized to execute such documents as are necessary to effectuate this sale and to disburse such funds.

The Board adopts this resolution by unanimous consent.

_____
R. John Taylor

_____
JoLee K. Duclos

_____
Bryan Freeman

AIA0027502

Exhibit - 2, p. 17
**18-ER-4649**

<div align="center">

MINUTES OF THE ANNUAL MEETING OF DIRECTORS
OF
AIA INSURANCE, INC.

</div>

May 3, 2005, second floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

**I.     Call to Order**
The annual directors meeting of the Corporation was called to order by R. John Taylor.  The following directors were present:
　　　R. John Taylor
　　　JoLee K. Duclos
　　　Bryan Freeman

**II.    Minutes of Previous Meeting**
The Secretary submitted the minutes of the prior meeting dated May 4, 2004.  Upon motion duly made and seconded, the minutes were unanimously approved as submitted.

**III.   Election of Officers**
The following nominees for officers were elected:

| | |
|---|---|
| President /CEO | R. John Taylor |
| Vice President | Bryan Freeman |
| Treasurer | Marcus McNabb |
| Secretary | JoLee K. Duclos |

**IV.    Ratify Actions**
The directors, upon motion duly made and seconded, ratified, affirmed and adopted all business transactions authorized or conducted by Officers and/or employees since the date of the last annual meeting.

**V.     Adjournment**
There being no further business, the meeting was adjourned.

I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the directors meeting of the Corporation duly held May 3, 2005.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　JoLee K. Duclos, Secretary

**AIA0001007**

<div align="center">

**Exhibit - 2, p. 18**
**18-ER-4650**

</div>



*000000000000009001028004202006*

# CORPORATE RESOLUTION TO GUARANTEE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,000,000.00 | 04-20-2006 | 04-07-2007 | 9001 | 2 / 7390 | | 36040 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** CROP USA INSURANCE AGENCY, INC.
P.O. BOX 538
LEWISTON, ID 83501

**Lender:** ZIONS FIRST NATIONAL BANK
LEWISTON/ORCHARDS OFFICE
3506 12TH STREET
LEWISTON, ID 83501

**Corporation:** AIA INSURANCE, INC.
P.O. BOX 538
LEWISTON, ID 83501

---

WE, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:

**THE CORPORATION'S EXISTENCE.** The complete and correct name of the Corporation is AIA INSURANCE, INC. ("Corporation"). The Corporation is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Idaho. The Corporation is duly authorized to transact business in all other states in which the Corporation is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which the Corporation is doing business. Specifically, the Corporation is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. The Corporation has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. The Corporation maintains an office at 111 MAIN STREET, LEWISTON, ID 83501. Unless the Corporation has designated otherwise in writing, the principal office is the office at which the Corporation keeps its books and records. The Corporation will notify Lender prior to any change in the location of The Corporation's state of organization or any change in The Corporation's name. The Corporation shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to the Corporation and The Corporation's business activities.

**RESOLUTIONS ADOPTED.** At a meeting of the Directors of the Corporation, or if the Corporation is a close corporation having no Board of Directors then at a meeting of the Corporation's shareholders, duly called and held on April 20, 2006, at which a quorum was present and voting, or by other duly authorized action in lieu of a meeting, the resolutions set forth in this Resolution were adopted.

**OFFICERS.** The following named persons are officers of AIA INSURANCE, INC.:

| NAMES | TITLES | AUTHORIZED | ACTUAL SIGNATURES |
|---|---|---|---|
| R. JOHN TAYLOR | ~~President~~ PRESIDENT & C.E.O. | Y | X [signature] |
| JOLEE K. DUCLOS | Secretary | Y | X [signature] |

**ACTIONS AUTHORIZED.** Any two (2) of the authorized persons listed above may enter into any agreements of any nature with Lender, and those agreements will bind the Corporation. Specifically, but without limitation, any two (2) of such authorized persons are authorized, empowered, and directed to do the following for and on behalf of the Corporation:

**Guaranty.** To guarantee or act as surety for loans or other financial accommodations to Borrower from Lender on such guarantee or surety terms as may be agreed upon between the officers of the Corporation and Lender and in such sum or sums of money as in their judgment should be guaranteed or assured, (the "Guaranty").

**Execute Security Documents.** To execute and deliver to Lender the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements which Lender may require and which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances, or any of them, are given; and also to execute and deliver to Lender any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Lender may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances. Notwithstanding the foregoing, any one of the above authorized persons may execute, deliver, or record financing statements.

**Further Acts.** To do and perform such other acts and things and to execute and deliver such other documents and agreements, including agreements requiring disputes with Lender to be submitted to binding arbitration for final resolution, as the officers may in their discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Resolution.

**ASSUMED BUSINESS NAMES.** The Corporation has filed or recorded all documents or filings required by law relating to all assumed business names used by the Corporation. Excluding the name of the Corporation, the following is a complete list of all assumed business names under which the Corporation does business: None.

**NOTICES TO LENDER.** The Corporation will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (A) change in the Corporation's name; (B) change in the Corporation's assumed business name(s); (C) change in the management of the Corporation; (D) change in the authorized signer(s); (E) change in the Corporation's principal office address; (F) change in the Corporation's state of organization; (G) conversion of the Corporation to a new or different type of business entity; or (H) change in any other aspect of the Corporation that directly or indirectly relates to any agreements between the Corporation and Lender. No change in the Corporation's name or state of organization will take effect until after Lender has received notice.

**CERTIFICATION CONCERNING OFFICERS AND RESOLUTIONS.** The officers named above are duly elected, appointed, or employed by or for the Corporation, as the case may be, and occupy the positions set opposite their respective names. This Resolution now stands of record on the books of the Corporation, is in full force and effect, and has not been modified or revoked in any manner whatsoever.

**NO CORPORATE SEAL.** The Corporation has no corporate seal, and therefore, no seal is affixed to this Resolution.

**CONTINUING VALIDITY.** Any and all acts authorized pursuant to this Resolution and performed prior to the passage of this Resolution are

**CORPORATE RESOLUTION TO GUARANTEE**

Loan No: 9001                     (Continued)                     Page 2

hereby ratified and approved. This Resolution shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time). Any such notice shall not affect any of the Corporation's agreements or commitments in effect at the time notice is given.

IN TESTIMONY WHEREOF, we have hereunto set our hand and attest that the signatures set opposite the names listed above are their genuine signatures.

We each have read all the provisions of this Resolution, and we each personally and on behalf of the Corporation certify that all statements and representations made in this Resolution are true and correct. This Corporate Resolution to Guarantee is dated April 20, 2006.

CERTIFIED TO AND ATTESTED BY:

By: _____
Authorized Signer for AIA INSURANCE, INC.

By: _____
Authorized Signer for AIA INSURANCE, INC.

NOTE: If the officers signing this Resolution are designated by the foregoing document as one of the officers authorized to act on the Corporation's behalf, it is advisable to have this Resolution signed by at least one non-authorized officer of the Corporation.

LASER PRO Lending, Ver. 5.29.00.022 Copr. Harland Financial Solutions, Inc. 1997, 2006. All Rights Reserved. - ID C:\COMM\CFALPL\CI.FC TR-47942 PR-ARBLOC

AIA0026678

**Exhibit - 2, p. 20**

**18-ER-4652**



*000000000000009001028004202006*

# CORPORATE RESOLUTION TO GUARANTEE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,000,000.00 | 04-20-2006 | 04-07-2007 | 9001 | 217330 | | 36040 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** CROP USA INSURANCE AGENCY, INC.
P.O. BOX 538
LEWISTON, ID 83501

**Lender:** ZIONS FIRST NATIONAL BANK
LEWISTON/ORCHARDS OFFICE
3506 12TH STREET
LEWISTON, ID 83501

**Corporation:** AIA SERVICES CORPORATION
P.O. BOX 538
LEWISTON, ID 83501

---

WE, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:

THE CORPORATION'S EXISTENCE. The complete and correct name of the Corporation is AIA SERVICES CORPORATION ("Corporation"). The Corporation is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Idaho. The Corporation is duly authorized to transact business in all other states in which the Corporation is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which the Corporation is doing business. Specifically, the Corporation is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. The Corporation has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. The Corporation maintains an office at 111 MAIN STREET, LEWISTON, ID 83501. Unless the Corporation has designated otherwise in writing, the principal office is the office at which the Corporation keeps its books and records. The Corporation will notify Lender prior to any change in the location of The Corporation's state of organization or any change in The Corporation's name. The Corporation shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to the Corporation and The Corporation's business activities.

RESOLUTIONS ADOPTED. At a meeting of the Directors of the Corporation, or if the Corporation is a close corporation having no Board of Directors then at a meeting of the Corporation's shareholders, duly called and held on April 20, 2006, at which a quorum was present and voting, or by other duly authorized action in lieu of a meeting, the resolutions set forth in this Resolution were adopted.

OFFICERS. The following named persons are officers of AIA SERVICES CORPORATION:

| NAMES | TITLES | AUTHORIZED | ACTUAL SIGNATURES |
|---|---|---|---|
| R. JOHN TAYLOR | ~~President~~ *PRESIDENT &* C.E.O. | Y | X _(signature)_ |
| JOLEE K. DUCLOS | Secretary | Y | X _JoLee K. Duclos (signature)_ |

ACTIONS AUTHORIZED. Any two (2) of the authorized persons listed above may enter into any agreements of any nature with Lender, and those agreements will bind the Corporation. Specifically, but without limitation, any two (2) of such authorized persons are authorized, empowered, and directed to do the following for and on behalf of the Corporation:

Guaranty. To guarantee or act as surety for loans or other financial accommodations to Borrower from Lender on such guarantee or surety terms as may be agreed upon between the officers of the Corporation and Lender and in such sum or sums of money as in their judgment should be guaranteed or assured, (the "Guaranty").

Execute Security Documents. To execute and deliver to Lender the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements which Lender may require and which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances, or any of them, are given; and also to execute and deliver to Lender any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Lender may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances. Notwithstanding the foregoing, any one of the above authorized persons may execute, deliver, or record financing statements.

Further Acts. To do and perform such other acts and things and to execute and deliver such other documents and agreements, including agreements requiring disputes with Lender to be submitted to binding arbitration for final resolution, as the officers may in their discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Resolution.

ASSUMED BUSINESS NAMES. The Corporation has filed or recorded all documents or filings required by law relating to all assumed business names used by the Corporation. Excluding the name of the Corporation, the following is a complete list of all assumed business names under which the Corporation does business: None.

NOTICES TO LENDER. The Corporation will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (A) change in the Corporation's name; (B) change in the Corporation's assumed business name(s); (C) change in the management of the Corporation; (D) change in the authorized signer(s); (E) change in the Corporation's principal office address; (F) change in the Corporation's state of organization; (G) conversion of the Corporation to a new or different type of business entity; or (H) change in any other aspect of the Corporation that directly or indirectly relates to any agreements between the Corporation and Lender. No change in the Corporation's name or state of organization will take effect until after Lender has received notice.

CERTIFICATION CONCERNING OFFICERS AND RESOLUTIONS. The officers named above are duly elected, appointed, or employed by or for the Corporation, as the case may be, and occupy the positions set opposite their respective names. This Resolution now stands of record on the books of the Corporation, is in full force and effect, and has not been modified or revoked in any manner whatsoever.

NO CORPORATE SEAL. The Corporation has no corporate seal, and therefore, no seal is affixed to this Resolution.

CONTINUING VALIDITY. Any and all acts authorized pursuant to this Resolution and performed prior to the passage of this Resolution are

**Exhibit - 2, p. 21**
**18-ER-4653**

AIA0026679

**CORPORATE RESOLUTION TO GUARANTEE**
**(Continued)**

Loan No: 9001                                                                                    Page 2

hereby ratified and approved.  This Resolution shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time).  Any such notice shall not affect any of the Corporation's agreements or commitments in effect at the time notice is given.

IN TESTIMONY WHEREOF, we have hereunto set our hand and attest that the signatures set opposite the names listed above are their genuine signatures.

We each have read all the provisions of this Resolution, and we each personally and on behalf of the Corporation certify that all statements and representations made in this Resolution are true and correct.  This Corporate Resolution to Guarantee is dated April 20, 2006.

CERTIFIED TO AND ATTESTED BY:

By: _____
Authorized      Signer      for      AIA      SERVICES
CORPORATION

By: _____
Authorized      Signer      for      AIA      SERVICES
CORPORATION

NOTE:  If the officers signing this Resolution are designated by the foregoing document as one of the officers authorized to act on the Corporation's behalf, it is advisable to have this Resolution signed by at least one non-authorized officer of the Corporation.

LASER PRO Lending, Ver. 5.29.00.002  Copr. Harland Financial Solutions, Inc. 1997, 2006.  All Rights Reserved.   - ID  C:\COMML\CFI\LPL\C10.FC  TR-47842  PR-ARRLOC

**18-ER-4654**

AIA0026680

MINUTES OF THE ANNUAL MEETING OF DIRECTORS
OF
AIA INSURANCE, INC.

May 9, 2006, second floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

I.     **Call to Order**
       The annual directors meeting of the Corporation was called to order by R. John Taylor.  The following directors were present:
              R. John Taylor
              JoLee K. Duclos
              Bryan Freeman

II.    **Minutes of Previous Meeting**
       The Secretary submitted the minutes of the prior meeting dated May 3, 2005.  Upon motion duly made and seconded, the minutes were unanimously approved as submitted.

III.   **Election of Officers**
       The following nominees for officers were elected:

| | |
|---|---|
| President /CEO | R. John Taylor |
| Vice President | Bryan Freeman |
| Treasurer | Held Vacant pending Marcus' termination |
| Secretary | JoLee K. Duclos |

IV.    **Ratify Actions**
       The directors, upon motion duly made and seconded, ratified, affirmed and adopted all business transactions authorized or conducted by Officers and/or employees since the date of the last annual meeting.

V.     **Adjournment**
       There being no further business, the meeting was adjourned.

       I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the directors meeting of the Corporation duly held May 9, 2006.

                                            _____
                                            JoLee K. Duclos, Secretary

AIA0001005

Exhibit - 2, p. 23
**18-ER-4655**

## UNANIMOUS CONSENT IN LIEU OF
## SPECIAL MEETING OF THE BOARD OF DIRECTORS
## OF AIA INSURANCE, INC.

September 19, 2006

The undersigned, being all of the members of the Board of Directors of AIA Insurance, Inc., a health insurance agency domiciled in the State of Idaho (the "**Company**"), do hereby waive any and all requirements for calling, giving notice of and holding a special meeting of the Board of Directors of Company and, in lieu of a special meeting and pursuant to the Idaho Business Corporation Act, do hereby consent to the adoption of the following resolutions:

WHEREAS, AGM, LLC, a Delaware limited liability company (the "**Administrative Agent**") proposes to provide revolving financing in an aggregate amount not to exceed $15,000,000 to Crop USA Insurance Agency, Inc., a property and casualty insurance agency domiciled in the State of Idaho ("**Borrower**"), pursuant to a Loan and Security Agreement (as ultimately executed, the "**Loan Agreement**") between the Borrower, the Company, and R. John Taylor, each as guarantors, the other lenders from time to time party thereto (the "**Lenders**"), and Administrative Agent, as administrative agent for the Lenders; and

WHEREAS, as an inducement for the Lenders to enter into the Loan Agreement and provide the financing described therein, Borrower has requested the Company execute and deliver to Administrative Agent, for the benefit of the Lenders (i) a Guaranty (as ultimately executed, the "**Guaranty**") unconditionally guaranteeing payment in full of all indebtedness of Borrower to the Lenders and (ii) such other documents, instruments and agreements as shall be requested by Administrative Agent (the Guaranty, the Loan Agreement and such other documents, instruments and agreements related thereto being hereinafter collectively referred to as the "**Loan Documents**" and a copy of each Loan Document having been reviewed by this Board of Directors and the officers of the Company); and

WHEREAS, the Company is affiliated with Borrower and has close business and financial transactions and connections with the Borrower and the Loan Agreement is and will be of material benefit to both the Company and Borrower, and will result in a direct business benefit to the Company.

NOW, THEREFORE, BE IT RESOLVED, that the Board of Directors of the Company find that the Loan Documents, and the transactions contemplated by or provided for therein (including, without limitation, the extension of credit by Lenders to Borrower), will benefit, directly or indirectly, the Company and deem it in the best interest of the Company that the Company enter into and perform its obligations under the Guaranty and the other Loan Documents, in substantially the form submitted to this board;

RESOLVED, FURTHER, that the officers of the Company be, and are hereby authorized to execute and deliver for and on behalf of the Company the Loan Documents with such changes in the terms, conditions and provisions thereof as such officer deems appropriate and in the best

1

DAL-FS1\87986v02

**AIAPROD00086123**

interest of the Company; the execution of the other Loan Documents shall be conclusive against the Company that the officer deemed the terms, conditions and provisions thereof to be appropriate and in the best interest of the Company;

RESOLVED, FURTHER, that the officers and the attorneys and agents of the Company or any one or more of them be, and each hereby is, authorized and directed on behalf of the Company, at any time and from time to time hereafter without further action by or authority or direction from the members of the Company, to execute and deliver or cause to be executed and delivered all such other and further agreements, requests, statements, instruments and documents, whether original or amendatory, and to do or cause to be done all such other and further acts and things as any officer or such attorney or agent may determine to be necessary or advisable under or in connection with the Loan Documents and the transactions contemplated by or provided for therein; the execution by an officer or such attorney or agent of any such agreement, request, statement, instrument or document or the doing of any such act or thing will be conclusive evidence of his or their determination in that respect;

RESOLVED, FURTHER, that all acts, transactions, or agreements undertaken prior to the adoption of these resolutions by any officer or authorized representative of the Company in its name and in connection with the Loan Documents and the transactions provided for therein are hereby ratified, confirmed and adopted by the Company; and

RESOLVED, FURTHER, that Administrative Agent and the Lenders be, and they hereby are, authorized to rely on the continuing effect of these resolutions, until Administrative Agent receives written notice to the contrary.

IN WITNESS WHEREOF, the undersigned members of the Board of Directors of the Company have executed this Unanimous Consent as of the date first written above.

2

SECRETARY'S CERTIFICATE—AIA INSURANCE, INC.
#87986v2

DAL-FS1\87986v02

Exhibit - 2, p. 25
18-ER-4657

AIAPROD00086124

MINUTES OF A SPECIAL MEETING OF DIRECTORS
OF
AIA INSURANCE, INC.

October 3, 2006, second floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

I.      **Call to Order**
        The special directors meeting of the Corporation was called to order by R. John Taylor. The following directors were present:
                R. John Taylor
                JoLee K. Duclos

II.     **Appointment of Treasurer**
        The Board appointed Martin Hanna to serve as Treasurer until the next annual meeting of the Board of Directors.

III.    **Adjournment**
        There being no further business, the meeting was adjourned.

        I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the directors meeting of the Corporation duly held October 3, 2006.

                                        _____
                                        JoLee K. Duclos, Secretary

AIA0001004

**Exhibit - 2, p. 26**
**18-ER-4658**

**UNANIMOUS CONSENT IN LIEU OF
SPECIAL MEETING OF THE BOARD OF DIRECTORS
OF AIA INSURANCE, INC.**

October 27, 2006

The undersigned, being all of the members of the Board of Directors of AIA Insurance, Inc., a health insurance agency domiciled in the State of Idaho (the "**Company**"), do hereby waive any and all requirements for calling, giving notice of and holding a special meeting of the Board of Directors of Company and, in lieu of a special meeting and pursuant to the Idaho Business Corporation Act, do hereby consent to the adoption of the following resolutions:

WHEREAS, AGM, LLC, a Delaware limited liability company (the "**Administrative Agent**") proposes to provide revolving financing in an aggregate amount not to exceed $15,000,000 to Crop USA Insurance Agency, Inc., a property and casualty insurance agency domiciled in the State of Idaho ("**Borrower**"), pursuant to a Loan and Security Agreement (as ultimately executed, the "**Loan Agreement**") between the Borrower, the Company, and R. John Taylor, each as guarantors, the other lenders from time to time party thereto (the "**Lenders**"), and Administrative Agent, as administrative agent for the Lenders; and

WHEREAS, as an inducement for the Lenders to enter into the Loan Agreement and provide the financing described therein, Borrower has requested the Company execute and deliver to Administrative Agent, for the benefit of the Lenders (i) a Guaranty (as ultimately executed, the "**Guaranty**") unconditionally guaranteeing payment in full of all indebtedness of Borrower to the Lenders and (ii) such other documents, instruments and agreements as shall be requested by Administrative Agent (the Guaranty, the Loan Agreement and such other documents, instruments and agreements related thereto being hereinafter collectively referred to as the "**Loan Documents**" and a copy of each Loan Document having been reviewed by this Board of Directors and the officers of the Company); and

WHEREAS, the Company is affiliated with Borrower and has close business and financial transactions and connections with the Borrower and the Loan Agreement is and will be of material benefit to both the Company and Borrower, and will result in a direct business benefit to the Company.

NOW, THEREFORE, BE IT RESOLVED, that the Board of Directors of the Company find that the Loan Documents, and the transactions contemplated by or provided for therein (including, without limitation, the extension of credit by Lenders to Borrower), will benefit, directly or indirectly, the Company and deem it in the best interest of the Company that the Company enter into and perform its obligations under the Guaranty and the other Loan Documents, in substantially the form submitted to this board;

RESOLVED, FURTHER, that the officers of the Company be, and are hereby authorized to execute and deliver for and on behalf of the Company the Loan Documents with such changes in the terms, conditions and provisions thereof as such officer deems appropriate and in the best

1

SECRETARY'S CERTIFICATE—AIA INSURANCE, INC.
#87986v2

DAL-FS1\87986v02

AIAPROD00309057

interest of the Company; the execution of the other Loan Documents shall be conclusive against the Company that the officer deemed the terms, conditions and provisions thereof to be appropriate and in the best interest of the Company;

RESOLVED, FURTHER, that the officers and the attorneys and agents of the Company or any one or more of them be, and each hereby is, authorized and directed on behalf of the Company, at any time and from time to time hereafter without further action by or authority or direction from the members of the Company, to execute and deliver or cause to be executed and delivered all such other and further agreements, requests, statements, instruments and documents, whether original or amendatory, and to do or cause to be done all such other and further acts and things as any officer or such attorney or agent may determine to be necessary or advisable under or in connection with the Loan Documents and the transactions contemplated by or provided for therein; the execution by an officer or such attorney or agent of any such agreement, request, statement, instrument or document or the doing of any such act or thing will be conclusive evidence of his or their determination in that respect;

RESOLVED, FURTHER, that all acts, transactions, or agreements undertaken prior to the adoption of these resolutions by any officer or authorized representative of the Company in its name and in connection with the Loan Documents and the transactions provided for therein are hereby ratified, confirmed and adopted by the Company; and

RESOLVED, FURTHER, that Administrative Agent and the Lenders be, and they hereby are, authorized to rely on the continuing effect of these resolutions, until Administrative Agent receives written notice to the contrary.

IN WITNESS WHEREOF, the undersigned members of the Board of Directors of the Company have executed this Unanimous Consent as of the date first written above.

_____
R. John Taylor

_____
JoLee K. Duclos

_____
Bryan Freeman

2

SECRETARY'S CERTIFICATE—AIA INSURANCE, INC.
#87986v2

DAL-FS1\87986v02

AIAPROD00309058

**Exhibit - 2, p. 28**
**18-ER-4660**

10/05/2006 THU 13:47  FAX 913 345 1671 Crop USA Insurance →→→ john-jolee                    ☒002/002

10/05/06   10:55   ☎208 799 9172        A T A LEGAL.                    ☒002/002

interest of the Company; the execution of the other Loan Documents shall be conclusive against the Company that the officer deemed the terms, conditions and provisions thereof to be appropriate and in the best interest of the Company;

RESOLVED, FURTHER, that the officers and the attorneys and agents of the Company or any one or more of them be, and each hereby is, authorized and directed on behalf of the Company, at any time and from time to time hereafter without further action by or authority or direction from the members of the Company, to execute and deliver or cause to be executed and delivered all such other and further agreements, requests, statements, instruments and documents, whether original or amendatory, and to do or cause to be done all such other and further acts and things as any officer or such attorney or agent may determine to be necessary or advisable under or in connection with the Loan Documents and the transactions contemplated by or provided for therein; the execution by an officer or such attorney or agent of any such agreement, request, statement, instrument or document or the doing of any such act or thing will be conclusive evidence of his or their determination in that respect;

RESOLVED, FURTHER, that all acts, transactions, or agreements undertaken prior to the adoption of these resolutions by any officer or authorized representative of the Company in its name and in connection with the Loan Documents and the transactions provided for therein are hereby ratified, confirmed and adopted by the Company; and

RESOLVED, FURTHER, that Administrative Agent and the Lenders be, and they hereby are, authorized to rely on the continuing effect of these resolutions, until Administrative Agent receives written notice to the contrary.

IN WITNESS WHEREOF, the undersigned members of the Board of Directors of the Company have executed this Unanimous Consent as of the date first written above.

_____          _____
R. John Taylor                                        Bryan Freeman

_____
JoLee K. Duclos

2

SECRETARY'S CERTIFICATE—AIA INSURANCE, INC.
#87986v2

DAL-FS1\87986v02

AIAPROD00309059

JOINT MINUTES OF A SPECIAL MEETING OF DIRECTORS
OF
AIA SERVICES CORPORATION and AIA INSURANCE, INC.

April 30, 2007, telephone conference call, One Lewis Clark Plaza, Lewiston, Idaho.

**I.     Call to Order**

The special directors meeting of the Corporation was called to order by R. John Taylor.  On the call were:  John Taylor, Connie Taylor, Jim Beck and JoLee Duclos.

**II.    Appointment of Directors**

John Taylor appointed Connie Taylor and James W. Beck to serve on the Boards of AIA Services Corporation and AIA Insurance, Inc. until the next annual meeting of the Boards of Directors.

**III.   Joint Defense Agreement**

A joint retainer agreement and a joint defense agreement proposed by the law firm of Hawley Troxell were reviewed and discussed.  Jim Beck moved to accept both agreements.  Connie Taylor seconded the motion.  John Taylor abstained from the vote, while the other two directors voted affirmatively.  Defendants will sign tolling agreements in conjunction with the joint defense agreement.

**IV.    Current Agreements**

The Board determined that current agreements should be reviewed to see if they need to be modified/memorialized to reflect their current status.  A bullet point list will be presented at the next meeting.

**V.     Board Fees**

Payment of fees to the Board was discussed.  Jim Beck moved and Connie Taylor seconded that the board members would be paid $5,000 and receive 5,000 shares of stock in AIA Services Corporation for each quarter of service.

**III.   Adjournment**

There being no further business, the meeting was adjourned.

I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the directors meeting of the Corporation duly held April 30, 2007.

_____
JoLee K. Duclos, Secretary

AIAPROD00171187

**CONSENT RESOLUTION IN LIEU OF**
**SPECIAL MEETING OF DIRECTORS**
**OF**
**AIA INSURANCE, INC.**

THE UNDERSIGNED, being the Directors of AIA Insurance, Inc., an Idaho corporation, hereby consent to, adopt, and approve in writing the following corporate action taken without a meeting in accordance with the provisions of the Business Corporation Act of the State of Idaho:

WHEREAS, a letter from attorney Michael S. Bissell dated July 21, 2008 (the "Letter") was received at the corporate offices of AIA Insurance, Inc. on July 22, 2008, a copy of which is attached hereto and incorporated herein by reference; and

WHEREAS, the Letter purports to be a demand by Donna Taylor and Reed Taylor pursuant to Idaho Code 30-1-742; and

WHEREAS, the Letter demands that this Board of Directors take action against certain law firms including, among others, the law firm that represents this corporation in the lawsuit entitled *Reed J. Taylor vs. AIA Services Corporation*, *et al.*, Case No. CV07-00208, filed in the District Court of the Second Judicial District of the State of Idaho, in and for the County of Nez Perce (the "Lawsuit"); and

WHEREAS, the Board of Directors believes it would be prudent (i) to inquire into the allegations of malfeasance by defense counsel as contemplated by the derivative action procedures set forth in the Idaho Business Corporation Act (Idaho Code §§ 30-1-101, -740 *et seq*.), (ii) to determine whether to take the demanded action or to reject the demand, and (iii) in order to enable the corporation to undertake that inquiry without jeopardizing its legal representation in the Lawsuit, to request that the court enter a stay of all proceedings in the Lawsuit until the representation issues are resolved.

NOW, THEREFORE, IT IS HEREBY RESOLVED that the Board of Directors of AIA Insurance, Inc. hereby directs the corporation's attorneys to file a motion in the Lawsuit to stay all proceedings in the Lawsuit until questions concerning the corporation's defense counsel in the Lawsuit can be properly considered and addressed and an informed and reasonable decision can be reached whether the Board should reject the demand, initiate action against the corporation's attorneys, allow Donna Taylor and/or Reed J. Taylor to pursue a shareholder derivative action against such counsel on behalf of the corporation, or take other action.

FURTHER RESOLVED that the corporation's officers are hereby authorized and directed to consider and present to the Board management's recommendations concerning alternative resolutions of these legal representation issues, including (without limitation) (i) petitioning the court under Idaho Code § 30-1-744 to appoint a panel of one or more independent persons to conduct a good faith inquiry into the alleged malfeasance by the corporation's defense

**AIAPROD00171193**

counsel in the Lawsuit and to determine, based on that inquiry, whether maintenance of a derivative proceeding by Donna Taylor and/or Reed J. Taylor is in the best interest of the corporation; (ii) terminating the engagement of the corporation's defense counsel and retaining new attorneys; or (iii) other alternative actions deemed appropriate by management for consideration by the Board..

DATED as of the 22nd day of July 2008.


_____          _____
R. John Taylor                                          Connie W. Taylor


_____
James W. Beck

AIAPROD00171194
**18-ER-4664**

**CONSENT RESOLUTION IN LIEU OF**
**SPECIAL MEETING OF DIRECTORS**
**OF**
**AIA SERVICES CORPORATION**

THE UNDERSIGNED, being the Directors of AIA Services Corporation, an Idaho corporation, hereby consent to, adopt, and approve in writing the following corporate action taken without a meeting in accordance with the provisions of the Business Corporation Act of the State of Idaho:

WHEREAS, a letter from attorney Michael S. Bissell dated July 21, 2008 (the "Letter") was received at the corporate offices of AIA Insurance, Inc. on July 22, 2008, a copy of which is attached hereto and incorporated herein by reference; and

WHEREAS, the Letter purports to be a demand by Donna Taylor and Reed Taylor pursuant to Idaho Code 30-1-742; and

WHEREAS, the Letter demands that this Board of Directors take action against certain law firms including, among others, the law firm that represents this corporation in the lawsuit entitled *Reed J. Taylor vs. AIA Services Corporation*, *et al.*, Case No. CV07-00208, filed in the District Court of the Second Judicial District of the State of Idaho, in and for the County of Nez Perce (the "Lawsuit"); and

WHEREAS, the Board of Directors believes it would be prudent (i) to inquire into the allegations of malfeasance by defense counsel as contemplated by the derivative action procedures set forth in the Idaho Business Corporation Act (Idaho Code §§ 30-1-101, -740 *et seq*.), (ii) to determine whether to take the demanded action or to reject the demand, and (iii) in order to enable the corporation to undertake that inquiry without jeopardizing its legal representation in the Lawsuit, to request that the court enter a stay of all proceedings in the Lawsuit until the representation issues are resolved.

NOW, THEREFORE, IT IS HEREBY RESOLVED that the Board of Directors of AIA Insurance, Inc. hereby directs the corporation's attorneys to file a motion in the Lawsuit to stay all proceedings in the Lawsuit until questions concerning the corporation's defense counsel in the Lawsuit can be properly considered and addressed and an informed and reasonable decision can be reached whether the Board should reject the demand, initiate action against the corporation's attorneys, allow Donna Taylor and/or Reed J. Taylor to pursue a shareholder derivative action against such counsel on behalf of the corporation, or take other action.

FURTHER RESOLVED that the corporation's officers are hereby authorized and directed to consider and present to the Board management's recommendations concerning alternative resolutions of these legal representation issues, including (without limitation) (i) petitioning the court under Idaho Code § 30-1-744 to appoint a panel of one or more independent

40005.0006.1251571.1

AIAPROD00171855

persons to conduct a good faith inquiry into the alleged malfeasance by the corporation's defense counsel in the Lawsuit and to determine, based on that inquiry, whether maintenance of a derivative proceeding by Donna Taylor and/or Reed J. Taylor is in the best interest of the corporation; (ii) terminating the engagement of the corporation's defense counsel and retaining new attorneys; (iii) conceding default on the stock redemption note payable to Reed Taylor, transferring the AIA Insurance, Inc. stock to Reed and possibly putting AIA Services Corporation into bankruptcy, leaving Reed and the bankruptcy trustee to pursue remaining claims against CropUSA and individual defendants, or (iv) other alternative actions deemed appropriate by management for consideration by the Board..

DATED as of the 22nd day of July 2008.


_____  _____
R. John Taylor                                                   Connie W. Taylor


_____
James W. Beck

40005.0006.1251571.1

AIAPROD00171856

**Exhibit - 2, p. 34**
**18-ER-4666**

Minutes of a Special
Joint Meeting of the Boards of Directors of
AIA Insurance, Inc. and AIA Services Corporation

August 7, 2008
One Lewis Clark Plaza, Lewiston, Idaho

The special meeting of the directors of AIA Services Corporation and AIA Insurance, Inc. was called to order at 9:00 a.m. On the call were three of Directors -- John Taylor, Connie Taylor and Jim Beck -- as well as JoLee Duclos, the corporate secretary of the two corporations.

John Taylor removed himself from the call. The directors considered a letter from John Taylor requesting that AIA Services Corporation advance funds for and reimburse reasonable expenses incurred by Mr. Taylor with respect to claims brought against him in his capacity as a director of the corporation by Donna J. Taylor, the sole holder of the Corporation's issued and outstanding shares of Series A Preferred Stock. As required by the AIA Services Corporation bylaws, Mr. Taylor's request included an affirmation that he has met the relevant standard of conduct under the Idaho Business Corporation Act and an undertaking to repay any funds advanced if he is not entitled to mandatory indemnification and it is ultimately determined that he is has not met the relevant standard of conduct under the Idaho Business Corporation Act. The directors understand that the Corporation is obligated under the bylaws to advance litigation expenses under these circumstances. Accordingly, Jim Beck moved and Connie Taylor seconded a motion to approve the advance or reimbursement of Mr. Taylor's litigation expenses incurred in the defense of the claims brought by Donna Taylor. John Taylor abstained from the vote; and the motion passed.

John Taylor then rejoined the conference call. He submitted his written resignation as a trustee of the AIA Services Corporation 401(k) Profit Sharing Plan and from the Employee Stock Option Plan. The Board Members were advised that Randall & Hurley, as well as the Plan documents, indicated that only one Trustee is required. Connie Taylor moved that AIA Services Corporation, as Plan sponsor and administrator, waive the Plans' 30-day notice requirement and accept John Taylor's resignation, and authorize JoLee Duclos to continue to serve as the sole trustee of the two Plans. Jim Beck seconded the motion. John Taylor abstained from the vote; and the motion passed.

As a guarantor of the Surge Capital loan to CropUSA, AIA Insurance, Inc. has been requested to sign an Acknowledgement, Consent and Release relative to the lender's transfer of the loan to Hudson Insurance Company. The directors reviewed the Assignment, Consent and Release. Under the terms of that document, AIA Insurance, Inc. acknowledges the current unpaid balance of principal, accrued interest and fees to be assumed by Hudson Insurance Company and agrees to release and discharge the current lenders, AGM and Lancelot Investors Fund, from all claims against them. Jim Beck asked if the release would affect the Certificates of Deposit pledged by individual CropUSA shareholders as security for the loan and was advised by John Taylor that the CDs have already been applied to the balance owed to Surge. Jim Beck moved to

MINUTES OF A SPECIAL JOINT BOARD OF DIRECTORS MEETING - 1
August 7, 2008

AIA0027457

authorize and direct the officers of AIA Insurance to execute and deliver the Acknowledgement, Consent & Release on behalf of the Corporation. Connie Taylor seconded; and the motion passed unanimously.

The AIA Insurance Board was advised that the claims of the growers association Trusts in the ULIC liquidation are close to resolution. AIA Insurance expects to receive approximately $800,000 (less a $75,000 escrowed holdback) in that settlement. To facilitate the Settlement Agreement, AIA Insurance has agreed to indemnify the National Organization of Life & Health Guaranty Associations and the participating state guarantee associations up to the amount of the $800,000. The Board reviewed an email from Reed Taylor's attorney, Roderick Bond, that sets forth his demand that the funds be protected for Reed's benefit pending resolution of Reed's suit against AIA Services Corporation et al. Connie Taylor recalled that the Court in *Reed Taylor vs. AIA Services Corporation, et al.*, Case No. CV07-00208, had already ordered that funds of AIA Insurance could be expended for operating expenses and legal fees during the pendency of this action. The Board directed that the officers confirm that determination. If the Court has so ordered, the $800,000 will be used for operating expenses and legal fees. If not, this matter will be revisited.

The directors have reviewed the following materials provided in advance of the meeting: (1) A letter addressed to the Boards of Directors of AIA Services Corporation and AIA Insurance, Inc. dated July 21, 2008 from attorney Michael S. Bissell demanding, on behalf of Donna Taylor and Reed Taylor, that the two corporations take action against the law firms of Hawley Troxell Ennis & Hawley; Clements, Brown & McNichols; Quarles & Brady; the responsible attorneys for said firms; and any other firms which have wrongfully represented the entities, for malpractice, breach of fiduciary duties, violation of the Idaho Rules of Professional Conduct, and aiding and abetting other defendants in allegedly wrongful conduct. This letter purports to be delivered pursuant to Idaho Code section 30-1-742, which relates to the demand precedent to initiation of a shareholder derivative action. (2) Letters from the corporations' defense counsel dated July 22, 2008 and July 31, 2008. (3) The Court Order filed July 28, 2008 in the pending lawsuit by Reed Taylor.

The Board recognized that a demand made under Idaho Code Section 30-1-742 is a precondition to filing a shareholder derivative action. The demand can be rejected and the derivative action will be dismissed if it is determined, by independent directors or by a panel of independent persons appointed by the court, after conducting a good faith inquiry, that maintenance of the derivative proceeding is not in the best interest of the corporations. The directors understand that, the claims being directed at the corporations' defense counsel, such counsel could not provide substantive advice concerning appropriate responses to the demand letter.

Accordingly, proceeding without the benefit of advice of legal counsel, the Board discussed several possible responses to the demand, to include:

1.	Terminating the representation by current defense counsel in *Reed Taylor vs. AIA Services Corporation, et al.*, Case No. CV07-00208 and retaining new counsel. The directors

MINUTES OF A SPECIAL JOINT BOARD OF DIRECTORS MEETING - 2
August 7, 2008

AIA0027458

considered the lack of readily available attorneys competent to address the complicated issues raised by this case on a timely basis and the prohibitive cost of bringing new lawyers up to speed on this litigation which has already proceeded for over a year and a half. The directors believe the corporations' interests are being well-represented by the current defense counsel. Accordingly, this alternative was rejected by the Board.

2.       Conceding default on the redemption note payable to Reed Taylor, transferring the AIA Insurance stock to Reed, and putting AIA Services into bankruptcy, leaving Reed and the bankruptcy trustee to pursue remaining claims against the various defendants. The Board has previously considered and rejected the bankruptcy alternative, believing the long-term value of the corporations would be lost, to the detriment of AIA Services Corporation's shareholders, in a bankruptcy proceeding.

3.       Petitioning the court to appoint disinterested persons to undertake a good faith inquiry into the alleged malfeasance by defense counsel as contemplated by Idaho Code Section 30-1-744. The Board is aware that the recent Court order in Reed Taylor vs. AIA Services Corporation, et al., Case No. CV07-00208, requires the corporations' defense counsel to notify the Court within twenty days whether the corporations will initiate the independent inquiry into the claims as contemplated by Idaho Code Section 30-1-744. The Board discussed the benefits to the corporations of initiating the statutory inquiry, thereby addressing Reed Taylor's objections to the attorneys retained to represent the corporations and other defendants.

The Board recognized that, because Reed Taylor has sued all current and former directors of the two corporations, there are no disinterested directors on the Boards who could undertake the statutory inquiry pursuant to Idaho Code Section 30-1-744. Further, the Board determined that, especially in the absence of directors and officers insurance, there is no way to expand the Board and bring on new disinterested directors to undertake a good faith inquiry into the alleged malfeasance because, based on prior experience, Reed Taylor is likely to sue any new directors immediately after they are appointed. The directors also concluded that any person suggested by the current directors to undertake such an inquiry would likely be rejected by Reed Taylor. Accordingly, the Board concluded that the corporations should request Judge Brudie to select an appropriate independent person or persons to conduct the inquiry. John Taylor stated his belief that Judge Brudie likely would appoint a retired judge for this purpose.

Jim Beck made the following motion: Pending the results of the independent inquiry, the corporations' current defense counsel should continue to defend the corporations in Reed Taylor vs. AIA Services Corporation, et al., Case No. CV07-00208; and the Board requests that all other defense counsel named in the demand letter continue their representation of the other defendants. Hawley Troxell is directed to petition the Court to appoint an independent and disinterested person or persons to undertake a good faith inquiry into the alleged malfeasance by defense counsel in accordance with Idaho Code Section 30-1-744. Hawley Troxell is also directed to withdraw the pending motion for a 90-day stay of the proceedings in Reed Taylor vs. AIA Services Corporation, et al., Case No. CV07-00208. However, if withdrawal of the motion for the 90-day stay of proceedings would cause Hawley Troxell to be unable to effectively represent

MINUTES OF A SPECIAL JOINT BOARD OF DIRECTORS MEETING - 3
August 7, 2008

AIA0027459

the corporations, then in that event the motion for the 90-day stay shall not be withdrawn. Connie Taylor seconded the motion; and it passed unanimously.

There being no further business, the meeting was adjourned.

Secretary — JoLee K. Duclos

MINUTES OF A SPECIAL JOINT BOARD OF DIRECTORS MEETING - 4
August 7, 2008

AIA0027460

Special Meeting of the Board of Directors
AIA Services Corporation
April 22, 2009

A special meeting of the Board of Directors of the Company was held by telephone, all members present and agreeing to waiver of notice for the meeting.

The meeting was called to order by Chairman John Taylor at 11:50 am.  Jim Beck and Connie Taylor were present.  David Risley was available by phone, but not on the conference call.

The board reviewed an offer of settlement from the former majority shareholder (fms) of the Company regarding the lawsuit by the fms, presented to the Company's attorneys on Monday.   The offer outlined a series of terms, both financial and non-financial upon which the fms would dismiss the suit against the Company and other defendants, including the members of this board.   The offer also suggested that Donna Taylor's suit against John and Connie Taylor would likewise be dismissed with prejudice if the terms were of the offer were accepted.

Members of the board had consulted with counsel prior to the meeting and counsel had advised them that the offer should be rejected and that further settlement discussions should be deferred until after the summary judgment motions are heard tomorrow.  After discussion, the Board unanimously agreed to decline the offer.

The meeting adjourned at 12:10 pm.

**Exhibit - 2, p. 39**
**18-ER-4671**

AIAPROD00308698

Minutes of Special Meeting of AIA Services Corporation

November 4, 2009

The conference call meeting was called to order by President, John Taylor.  Directors on the call were Jim Beck, Connie Taylor and John Taylor.  JoLee Duclos was on the call as Secretary.

The outstanding litigation involving the parties and general corporate matters were discussed.

Jim Beck moved that JoLee Duclos be replaced as the Trustee of the 401(k) Plan by John Taylor and that the 30-day notice period be waived.  The motion passed.

AIA intends to borrow $500,000 from Syringa Bank.  Connie Taylor moved to assign that certain $500,000 Promissory Note dated September 28, 2007, between AIA Services Corporation as Borrower and CropUSA Insurance Agency, Inc. as Lender, together with the Deed of Trust securing same, to Syringa Bank.  The motion passed.

Discussion continued regarding litigation with Growers National Co-op.

The meeting was adjourned.

AIAPROD00172397

Minutes of Special Meeting of AIA Services Corporation

April 14, 2010

The conference call meeting was called to order by President, John Taylor.  Directors on the call were Jim Beck, Connie Taylor and John Taylor.  JoLee Duclos, Bryan Freeman and Aimee Gordon were also in attendance.

Jim Beck moved to approve the November 4, 2009 minutes.  The motion passed.

The recent Supreme Court hearing regarding Reed Taylor's lawsuit against several of the attorneys who represent or have represented the company was discussed.  Because all outstanding litigation, with the exception of those cases moving through the appeal process, has been stayed, the company determined not to address issues alleged by plaintiffs in their Complaints.

Buy-out of the investor shareholders of the company was discussed.  John would like to accomplish this by Fall of 2010.  The shareholders will need full disclosure and the procedure for that was discussed.  They can be given a secure sign-on which will allow them to view documents on the website.  Such documents would include financials, appraisals, lawsuit summaries, and Judge's orders.  Connie commented that the notes to the 2009 year-end financials contain all the necessary disclosures and the website information should be documentation to support those notes.  It was also noted that there could be a way to request additional information on the website.  The goal is to have the website ready by May 1.

Al Rusnak will be at the company on April 15.  He has worked with company personnel for some time to establish the relationship with Linked Agency.  Through Linked, the company will be able to offer a wide variety of life, health and long term care products through a variety of insurance companies.  The insurance applications are completed online.

Other corporate matters were discussed and the meeting was adjourned.

**Exhibit - 2, p. 41**
**18-ER-4673**

AIAPROD00172398

## EXHIBIT C

**Consent Resolution of the Directors of**
**AIA Services Corporation**
**An Idaho Corporation**

**WHEREAS,** CropUSA Insurance Agency, Inc. and CropUSA Insurance Services, LLC (collectively, the "Borrowers"), affiliates of AIA Services Corporation (the "Corporation"), desire to jointly and severally borrow funds under a loan facility (the "Loan Facility") with GemCap Lending I, LLC, a Delaware limited liability company (the "Lender") as lender; and

**WHEREAS**, it is a condition to Lender making such loan facility available to Borrowers that the Corporation execute the Limited Continuing Guarantee (the "Guarantee") to guarantee the payment of the indebtedness of Borrowers to Lender under the Loan and Security Agreement dated November __, 2011 between Borrowers and Lender; and

**WHEREAS,** the Directors of the Corporation believe that it is in the best interests of the Corporation to enter into the Guarantee because Borrowers are affiliates of the Corporation and provide products and/or services to the Corporation in the ordinary course of business;

**NOW, THEREFORE, BE IT**

**RESOLVED,** that the Corporation hereby adopts and ratifies the terms set forth in the Guarantee, which the Corporation will execute as Guarantor, a true copy of which has been submitted to, and has been approved by, the Directors of the Corporation; and be it further

**RESOLVED,** that the Corporation is hereby authorized to enter into the transactions contemplated in the Guarantee and to incur and perform the obligations contemplated therein, including without limitation, granting the security contemplated therein; and be it further

**RESOLVED,** that the Corporation is hereby authorized to execute and deliver to and in favor of the Lender the Guarantee and each of the other documents and certificates made in

{00127823.DOC; 1}

**Exhibit - 2, p. 42**
**18-ER-4674**

AIAPROD00172399

connection therewith or as may be required from time to time pursuant to their terms (collectively, the "Transaction Documents"); and be it further

RESOLVED, that any officers of the Corporation be, and they hereby are, authorized, empowered and directed to execute the Transaction Documents in the name of and on behalf of the Corporation, and are permitted to incur fees and expenses on behalf of the Corporation; and be it further

RESOLVED, that the signature of any officer of the Corporation authorized to execute the Guarantee or any of the other Transaction Documents or any other documents, instruments, undertakings, indemnities and certificates to be delivered to the Lender or any other person, as appropriate, shall conclusively evidence their respective approvals thereof and the approval thereof by the Directors and the Corporation and its due authorization pursuant to the terms of this written approval; and be it further

RESOLVED, that all actions taken prior to the date hereof by any officer or other representative of the Corporation in connection with the transactions contemplated by the foregoing resolutions are, in all respects, hereby ratified and confirmed.

DATED November 21, 2011.

_____            _____
R. John Taylor                                              Connie Taylor

_____
James Beck

{00127823.DOC; 1}                                                                                    2

AIAPROD00172400

connection therewith or as may be required from time to time pursuant to their terms (collectively, the "Transaction Documents"); and be it further

RESOLVED, that any officers of the Corporation be, and they hereby are, authorized, empowered and directed to execute the Transaction Documents in the name of and on behalf of the Corporation, and are permitted to incur fees and expenses on behalf of the Corporation; and be it further

RESOLVED, that the signature of any officer of the Corporation authorized to execute the Guarantee or any of the other Transaction Documents or any other documents, instruments, undertakings, indemnities and certificates to be delivered to the Lender or any other person, as appropriate, shall conclusively evidence their respective approvals thereof and the approval thereof by the Directors and the Corporation and its due authorization pursuant to the terms of this written approval; and be it further

RESOLVED, that all actions taken prior to the date hereof by any officer or other representative of the Corporation in connection with the transactions contemplated by the foregoing resolutions are, in all respects, hereby ratified and confirmed.

DATED November 21, 2011.

_____
R. John Taylor

Connie Taylor

_____
James Beck

2

{00127823.DOC; 1}

Exhibit - 2, p. 44
**18-ER-4676**

AIAPROD00172401

ACTION BY BOARD OF DIRECTORS
OF
AIA SERVICES CORPORATION

The following resolutions were duly adopted by the board of directors of AIA Services Corporation, an Idaho corporation (hereinafter referred to as the "Company") at a special meeting of the board of directors duly and validly called and held on July 2, 2012:

RESOLVED, that this board of directors has determined that it is desirable and in the best interests of the Company to approve an amendment to the articles of incorporation of the Company, pursuant to which, if it is approved by the shareholders of the Company as hereinafter provided:

(a) each issued and outstanding share of common stock of the Company, including any outstanding shares of common stock held by the Company as treasury stock, would be converted into $1/53,000^{th}$ of a share of common stock (the equivalent of one share of common stock for every 53,000 outstanding shares of common stock); and

(b) each holder of fewer than 53,000 shares immediately prior to the time of the amendment, being the date articles of amendment to the articles of incorporation of the Company are filed with the Secretary of State of the State of Idaho (the "Effective Time"), would receive, in lieu of a fractional share, an amount determined by multiplying the number of shares of common stock owned beneficially and of record by such holder immediately prior to the Effective Time by ten cents ($0.10);

and be it further

RESOLVED, that this board of directors does hereby establish June 30, 2012 as the record date and July 16, 2012 as the meeting date for the annual meeting of shareholders of the Company to: (a) approve the amendment to the Company's articles of incorporation as hereinabove provided, (b) to elect three directors of the Company to serve until their successors are elected and qualified; and (c) to take such other action as may properly come before the annual meeting; and be it further

RESOLVED, that, in furtherance of the annual meeting, this board of directors does hereby approve the proxy materials (comprising a letter to shareholders, a notice of annual meeting, a proxy statement and a form of proxy) substantially in the form that is annexed to these resolutions as Exhibit A, with such changes as the officers of the Company, acting in conjunction with the Company's counsel, deem necessary or advisable; and be it further

BOARD OF DIRECTOR RESOLUTIONS - 1

AIAS_0001594

RESOLVED, that this board of directors does hereby recommend to the shareholders of the Company that the amendment to the Company's articles of incorporation be approved by them, for the reasons set forth the proxy statement; and be it further

RESOLVED, that the proper officers of the Company are hereby authorized and directed to do all such acts and things and to execute, acknowledge and deliver all such additional documents and certificates as may in their discretion be deemed necessary or desirable to carry out and comply with the terms and provisions of these resolutions, and all of the acts and doings of the officers of the Company which are in conformity with the intent and purposes of these resolutions, whether heretofore or hereafter taken or done, shall be and the same are hereby in all respects, ratified, confirmed and approved, all as of the last date of execution written below.

Dated July 2, 2012

JoLee Duclos, Secretary

F:\users\40468\Reverse Stock Split\Board Resolutions

BOARD OF DIRECTOR RESOLUTIONS - 2

AIAS_0001595

## EXHIBIT C

### Resolutions of the Directors of
### AIA SERVICES CORPORATION and
### AIA INSURANCE, INC.

**WHEREAS,** CropUSA Insurance Agency, Inc. and CropUSA Insurance Services, LLC (collectively, the "Borrowers"), affiliates of AIA Services Corporation and AIA Insurance, Inc. (collectively, the "Corporations"), desire to jointly and severally borrow funds under a loan facility (the "Loan Facility") established by GemCap Lending I, LLC, a Delaware limited liability company (the "Lender"); and

**WHEREAS,** it is a condition to Lender making such loan facility available to Borrowers that the Corporations execute the limited Continuing Guarantee (the "Guarantee") to guarantee the payment of the indebtedness of Borrowers to Lender under the Amended and Restated Loan and Security Agreement dated February _4/4_, 2013, between Borrowers and Lender; and

**WHEREAS,** the Directors of the Corporations believe that it is in the best interests of the Corporations to enter into the Guarantee because Borrowers are affiliates of the Corporations and provide products and/or services to the Corporations in the ordinary course of business;

**NOW, THEREFORE, BE IT RESOLVED,** that the Corporations hereby adopt and ratify the terms set forth in the Guarantee, which the Corporations will execute as Guarantor, a true copy of which has been submitted to, and has been approved by, the Directors of the Corporation, and be it further

**RESOLVED,** that the Corporations are hereby authorized to enter into the transactions contemplated in the Guarantee and to incur and perform the obligations contemplated therein, including without limitation, granting the security contemplated therein; and be it further

**RESOLVED,** that the Corporations are hereby authorized to execute and deliver to and in favor of the Lender the Guarantee and each of the other documents and certificates made in

{00127806.DOC; 1}                                                                6

AIAPROD00172406

**RESOLVED,** that the Corporations are hereby authorized to execute and deliver to and in favor of the Lender the Guarantee and each of the other documents and certificates made in connection therewith or as may be required from time to time pursuant to their terms (collectively, the "Transaction Documents"); and be it further

**RESOLVED,** that any officers of the Corporations be, and they hereby are, authorized, empowered and directed to execute the Transaction Documents in the name of and on behalf of the Corporations, and are permitted to incur fees and expenses on behalf of the Corporations; and be it further

**RESOLVED,** that the signature of any officer of the Corporations authorized to execute the Guarantee or any other Transaction Documents or any other documents, instruments, undertakings, indemnities and certificates to be delivered to the Lender or any other person, as appropriate, shall conclusively evidence their respective approvals thereof and the approval thereof by the directors and the Corporations and its due authorization pursuant to the terms of this written approval; and be it further

**RESOLVED,** that all actions taken prior to the date hereof by any officer or other representative of the Corporations in connection with the transactions contemplated by the foregoing resolutions are, in all respects, hereby ratified and confirmed.

DATED this ___ day of February, 2013.

_____        _____
R. John Taylor                                          James Beck

_____
Connie Henderson

AIAPROD00172407

RESOLVED, that the Corporations are hereby authorized to execute and deliver to and in favor of the Lender the Guarantee and each of the other documents and certificates made in connection therewith or as may be required from time to time pursuant to their terms (collectively, the "Transaction Documents"); and be it further

RESOLVED, that any officers of the Corporations be, and they hereby are, authorized, empowered and directed to execute the Transaction Documents in the name of and on behalf of the Corporations, and are permitted to incur fees and expenses on behalf of the Corporations; and be it further

RESOLVED, that the signature of any officer of the Corporations authorized to execute the Guarantee or any other Transaction Documents or any other documents, instruments, undertakings, indemnities and certificates to be delivered to the Lender or any other person, as appropriate, shall conclusively evidence their respective approvals thereof and the approval thereof by the directors and the Corporations and its due authorization pursuant to the terms of this written approval; and be it further

RESOLVED, that all actions taken prior to the date hereof by any officer or other representative of the Corporations in connection with the transactions contemplated by the foregoing resolutions are, in all respects, hereby ratified and confirmed.

DATED this 1ˢᵗ day of February, 2013.

_____                    _____
R. John Taylor                             James Beck

_____
Connie Henderson

AIAPROD00172408

18-ER-4682

AIA SERVICES CORPORATION
BOARD OF DIRECTORS MEETING

July 29, 2014


A meeting of the Board of Directors of AIA Services Corporation was held by telephone conference call at Lewiston, Idaho, on July 29, 2014. John Taylor called the meeting to order.

Roll call was taken and the following Directors were present:

    R. John Taylor
    Connie Henderson
    Jim Beck

Also present were Doug Siddoway and JoLee Duclos.

Mr. Siddoway summarized the offer received from Donna Taylor.  It only relates to the Donna Taylor consolidated cases.  Discussion followed.  **Connie Henderson moved to reject the offer.  Jim Beck made a second and the motion passed unanimously.**

The ESOP was discussed and it was noted that administration costs were eating up any profit.

The Motion for Reconsideration and Clarification was also explained by Mr. Siddoway as it relates to adoption of amended articles of incorporation. There will be an August 6 telephonic hearing.

The reverse stock split was never implemented.  **Connie Henderson moved that the corporation take steps to unwind the reverse stock split.  Jim Beck made a second and the motion passed unanimously.**

The GemCap lawsuit was discussed.

There being no further business, the meeting was adjourned.


_____
JoLee K. Duclos, Secretary



Board of Directors Minutes        1


**Exhibit - 2, p. 50**
**18-ER-4682**

AIAPROD00308701

**UNANIMOUS WRITTEN CONSENT**

**OF THE BOARD OF DIRECTORS**

**OF AIA Insurance, Inc.**

The undersigned member of the Board of Directors of AIA Insurance, Inc.   , an Idaho corporation (the "Company"), in lieu of a regular and/or special meeting of the Board of Directors and pursuant to Idaho Corporation Statutes, and acting in the capacity of director, do hereby adopt the following resolutions and preamble thereto, and do hereby appoint Corporate Secretary.

**WHEREAS,** the secretary of the Company has retired from the Company and resigned as corporate secretary;

**WHEREAS,** the Company has the authority pursuant to its  By Laws and Articles of Incorporation to appoint a successor Secretary; and

**WHEREAS,** it is appropriate and in the interest of the Corporation to appoint a Secretary;

After thoughtful deliberation, the following resolution was unanimously adopted:

**NOW, THEREFORE, BE IT RESOLVED,** that the Company hereby and does appoint R. John Taylor Secretary of the Company.

**AND BE IT FURTHER RESOLVED,** that the Company has authorized  the secretary to carry out the duties of Secretary of the Company to the fullest extent authorized by the Articles, By Laws and statutory authority and vests such authority herewith.

The execution of this Consent shall constitute a written waiver of any notice required by

the Idaho Corporation Statutes and this Company's Articles of Incorporation and Bylaws.

DATED, effective this 26th day of May 2016.

_____
Director

AIAPROD00171605

### UNANIMOUS WRITTEN CONSENT

### OF THE BOARD OF DIRECTORS

### OF AIA Insurance Inc.

The undersigned member of the Board of Directors of AIA Insurance, Inc., an Idaho corporation (the "Company"), in lieu of a regular and/or special meeting of the Board of Directors and pursuant to Idaho Corporation Statutes, and acting in the capacity of director, do hereby adopt the following resolutions and preamble thereto, and do hereby consent to amend the By Laws of the Company, in accordance with Article 8 of its Articles and Article 13.1 of its By Laws, and the taking of the action(s) herein set forth:

**WHEREAS**, in light of the high costs of litigation and the affect of such litigation on the value of the Corporation and thereby the value common and preferred shares owned by shareholders of the Company, it is recommended and it would be appropriate (and in accordance to the Company's Article and Bylaws) to allocate the risk among the parties in situations of intra-corporate litigation.

After thoughtful deliberation, the following resolution was unanimously adopted:

**NOW, THEREFORE, BE IT RESOLVED** that Section XI of Bylaws of the Company be and are hereby amended by adding a new Section 11.11 as follows:

**Section 11.11 Fees and Costs in Intracompany Suits.**

(a) With respect to Section 11.11, the following definitions apply.

(i) Claim means a claim for legal or equitable relief: (1) against the corporation, or (2) against any Constituent brought in the name of the corporation or brought directly against such Constituent by virtue of the Constituent's current or former position within the corporation.

(ii) Claiming Party means a current or former Constituent who initiates or asserts a Claim, or joins, offers substantial assistance to, or has a direct financial interest in, any Claim. A stockholder's status as a stockholder alone shall not, without more, constitute a direct financial interest in a Claim.

**Exhibit - 2, p. 52**
**18-ER-4684**

AIAPROD00171576

(iii) Constituent means a current or former officer, director, stockholder, subsidiary, or affiliate of the corporation.

(b) If any Claiming Party does not obtain a judgment on the merits of a Claim that substantially achieves, in substance and amount, the full remedy sought, then each Claiming Party shall be obligated jointly and severally to reimburse the corporation and any Constituent against whom the Claim was brought for all fees, costs, and expenses of every kind and description, including without limitation reasonable attorney fees and litigation expenses, incurred in connection with such Claim.

(c) If a court determines that the application of Section 11.11 changes, alters, revokes, abrogates, or in any way conflicts with the rights of stockholders as set forth in the Articles of Incorporation, this Section 11.11 shall be given the fullest effect possible that does not change, alter, revoke, abrogate, or conflict with such stockholder rights.

The execution of this Consent shall constitute a written waiver of any notice required by

the Idaho Corporation Statutes and this Company's Articles of Incorporation and Bylaws.

DATED, effective this 26th day of May 2016.

_____
Director

AIA Services
By Law Amendment  5-26-16

AIAPROD00171577

## UNANIMOUS WRITTEN CONSENT

## OF THE BOARD OF DIRECTORS

## OF AIA SERVICES CORPORATION.

The undersigned member of the Board of Directors of AIA SERVICES CORPORTATION, AN Idaho corporation (the "Company"), in lieu of a regular and/or special meeting of the Board of Directors and pursuant to Idaho Corporation Statutes, and acting in the capacity of director, do hereby adopt the following resolutions and preamble thereto, and do hereby consent to amend the By Laws of the Company, in accordance with Article 9 of its Articles and Article 13.1 of its By Laws, and the taking of the action(s) herein set forth:

**WHEREAS**, in light of the high costs of litigation and the affect of such litigation on the value of the Corporation and thereby the value common and preferred shares owned by shareholders of the Company, it is recommended and it would be appropriate (and in accordance to the Company's Article and Bylaws) to allocate the risk among the parties in situations of intra-corporate litigation.

After thoughtful deliberation, the following resolution was unanimously adopted:

**NOW, THEREFORE, BE IT RESOLVED** that Section XI of Bylaws of the Company be and are hereby amended by adding a new Section 11.11 as follows:

**Section 11.11 Fees and Costs in Intracompany Suits.**

(a) With respect to Section 11.11, the following definitions apply.

(i) Claim means a claim for legal or equitable relief: (1) against the corporation, or (2) against any Constituent brought in the name of the corporation or brought directly against such Constituent by virtue of the Constituent's current or former position within the corporation.

(ii) Claiming Party means a current or former Constituent who initiates or asserts a Claim, or joins, offers substantial assistance to, or has a direct financial interest in, any Claim. A stockholder's status as a stockholder alone shall not, without more, constitute a direct financial interest in a Claim.

AIAPROD00172497

(iii) Constituent means a current or former officer, director, stockholder, subsidiary, or affiliate of the corporation.

(b) If any Claiming Party does not obtain a judgment on the merits of a Claim that substantially achieves, in substance and amount, the full remedy sought, then each Claiming Party shall be obligated jointly and severally to reimburse the corporation and any Constituent against whom the Claim was brought for all fees, costs, and expenses of every kind and description, including without limitation reasonable attorney fees and litigation expenses, incurred in connection with such Claim.

(c) If a court determines that the application of Section 11.11 changes, alters, revokes, abrogates, or in any way conflicts with the rights of stockholders as set forth in the Articles of Incorporation, this Section 11.11 shall be given the fullest effect possible that does not change, alter, revoke, abrogate, or conflict with such stockholder rights.

The execution of this Consent shall constitute a written waiver of any notice required by the Idaho Corporation Statutes and this Company's Articles of Incorporation and Bylaws.

DATED, effective this 26th day of May 2016.

Director

AIA Services
By Law Amendment 5-26-16

AIAPROD00172498

## UNANIMOUS WRITTEN CONSENT

## OF THE BOARD OF DIRECTORS

## OF AIA SERVICES CORPORATION.

The undersigned member of the Board of Directors of AIA SERVICES CORPORATION, AN Idaho corporation (the "Company"), in lieu of a regular and/or special meeting of the Board of Directors and pursuant to Idaho Corporation Statutes, and acting in the capacity of director, do hereby adopt the following resolutions and preamble thereto, and do hereby appoint Corporate Secretary.

**WHEREAS**, the secretary of the Company has retired from the Company and resigned as corporate secretary;

**WHEREAS,** the Company has the authority pursuant to its By Laws and Articles of Incorporation to appoint a successor Secretary; and

**WHEREAS,** it is appropriate and in the interest of the Corporation to appoint a Secretary;

After thoughtful deliberation, the following resolution was unanimously adopted:

**NOW, THEREFORE, BE IT RESOLVED,** that the Company hereby and does appoint R. John Taylor Secretary of the Company.

**AND BE IT FURTHER RESOLVED,** that the Company has authorized the secretary to carry out the duties of Secretary of the Company to the fullest extent authorized by the Articles, By Laws and statutory authority and vests such authority herewith.

The execution of this Consent shall constitute a written waiver of any notice required by the Idaho Corporation Statutes and this Company's Articles of Incorporation and Bylaws.

DATED, effective this 26th day of May 2016.

_____
Director

AIAPROD00172583

**UNANIMOUS WRITTEN CONSENT**

**OF THE BOARD OF DIRECTORS**

**OF AIA SERVICES CORPORATION.**

The undersigned member of the Board of Directors of AIA SERVICES CORPORTATION, AN Idaho corporation (the "Company"), in lieu of a regular and/or special meeting of the Board of Directors and pursuant to Idaho Corporation Statutes, and acting in the capacity of director, do hereby adopt the following resolutions and preamble thereto, and do hereby consent to issue 7,500 Preferred A Shares.

**WHEREAS**, the majority shareholder of common stock has agreed to exchange $75,000 of amounts payable to him for 7500 shares of Preferred A Shares;

**WHEREAS,** the Board has been advised that the Company has the authority pursuant to its  By Laws and Articles of Incorporation to issue up to 200,000 Preferred A Shares, of which 7110 are currently outstanding;

**WHEREAS,** it is appropriate and in the interest of the Corporation to issue additional shares of Preferred A Shares;

After thoughtful deliberation, the following resolution was unanimously adopted:

**NOW, THEREFORE, BE IT RESOLVED**, that the Company is authorized to issue 7500 Preferred A Shares to R. John Taylor in exchange of debt relief of $75,000.

**AND BE IT FURTHER RESOLVED**, that the Company is authorized to offer to exchange additional shares to other persons who the Company is currently indebted to issue to current shareholders at the rate of $10 per share, with a minimum transaction  of 7500 shares.

The execution of this Consent shall constitute a written waiver of any notice required by

the Idaho Corporation Statutes and this Company's Articles of Incorporation and Bylaws.

DATED, effective this 26th day of May 2016.

_____
Director

**Exhibit - 2, p. 57**
**18-ER-4689**

AIAPROD00172499

**AIA SERVICES CORPORATION**
**CONSENT ACTION OF THE DIRECTORS**

The following actions are hereby taken by the unanimous written consent of the directors of AIA Services Corporation (the "Company") in lieu of a meeting of the directors.

With respect to the amendment and restatement of the AIA Services Corporation 401(k) Profit Sharing Plan (the "Plan"), the following resolutions are hereby adopted:

**RESOLVED**:   That the Plan be amended and restated effective January 1, 2016 in the form attached hereto, which Plan is hereby adopted and approved;

**RESOLVED FURTHER**:   That the appropriate officers of the Company be, and they hereby are, authorized and directed to execute the Plan on behalf of the Company;

**RESOLVED FURTHER**:   That R. John Taylor is hereby retained as the Trustee of the Plan; and

**RESOLVED FURTHER**:   That the officers of the Company be, and they hereby are, authorized and directed to take any and all actions and execute and deliver such documents as they may deem necessary, appropriate or convenient to effect the foregoing resolutions including, without limitation, causing to be prepared and filed such reports documents or other information as may be required under applicable law.

Dated this 25th day of _April_, 2016.

_____
AIA SERVICES CORPORATION

prepared by Randall & Hurley, Inc.                    1                    Copyright © 2002-2016

DLM - 0079639

**Exhibit - 2, p. 58**
**18-ER-4690**

AIA SERVICES CORPORATION 401(K) PROFIT SHARING PLAN

### JOINDER AGREEMENT

**WHEREAS**, AIA Services Corporation (the "Company") maintains the AIA Services Corporation 401(k) Profit Sharing Plan (the "Plan") for the benefit of certain of its employees; and

**WHEREAS**, The Company desires to permit AIA Insurance, Inc  and   Crop USA ("Adopting Employers") to adopt the Plan;

**NOW, THEREFORE IT IS AGREED**, that the undersigned Adopting Employers shall become a Company that has adopted the Plan and such Adopting Employer(s) agree to be bound by the terms of the Plan

This Agreement shall be effective January 1, 2016.

**AIA SERVICES CORPORATION:**

Signed: _____

**AIA INSURANCE, INC.:**

Signed: _____

**CROP USA:**

Signed: _____

prepared by Randall & Hurley, Inc.                                    Copyright © 2002-2016

DLM - 0079640

**AIA SERVICES CORPORATION**
**CONSENT ACTION OF THE DIRECTORS**

The following actions are hereby taken by the unanimous written consent of the directors of AIA Services Corporation (the "Company") in lieu of a meeting of the directors.

With respect to the adoption of the AIA Services Corporation 401(k) Profit Sharing Plan (the "Plan") by AIA Insurance, Inc. and   Crop USA, the following resolutions are hereby adopted:

> **RESOLVED**:  That the Company hereby consents to the adoption of the Plan by AIA Insurance, Inc. and   Crop USA;
>
> **RESOLVED FURTHER**:  That the officers of the Company be, and they hereby are, authorized and directed to take any and all actions and execute and deliver such documents as they may deem necessary, appropriate or convenient to effect the foregoing resolutions including, without limitation, causing to be prepared and filed such reports documents or other information as may be required under applicable law.

Dated this _____ day of _____, 2016.

_____
AIA SERVICES CORPORATION

prepared by Randall & Hurley, Inc.                                   Copyright © 2002-2016

**DLM - 0079641**

**Exhibit - 2, p. 60**
**18-ER-4692**

**CROP USA**
**FORMAL RECORD OF ACTION**

The following is a formal record of action taken by   Crop USA (the "Company").

With respect to the adoption of the AIA Services Corporation 401(k) Profit Sharing Plan (the "Plan") sponsored by AIA Services Corporation, the following resolutions are hereby adopted:

> **RESOLVED**: That the Company hereby adopts the Plan that is sponsored by AIA Services Corporation;
>
> **RESOLVED FURTHER**: That the officers of the Company be, and they hereby are, authorized and directed to take any and all actions and execute and deliver such documents as they may deem necessary, appropriate or convenient to effect the foregoing resolutions including, without limitation, causing to be prepared and filed such reports documents or other information as may be required under applicable law.

Dated this _25_ day of _April_, 2016.

_____
CROP USA

prepared by Randall & Hurley, Inc.                              Copyright © 2002-2016

DLM - 0079642

**Exhibit - 2, p. 61**
**18-ER-4693**

**AIA INSURANCE, INC.**
**FORMAL RECORD OF ACTION**

The following is a formal record of action taken by AIA Insurance, Inc. (the "Company").

With respect to the adoption of the AIA Services Corporation 401(k) Profit Sharing Plan (the "Plan") sponsored by AIA Services Corporation, the following resolutions are hereby adopted:

**RESOLVED**: That the Company hereby adopts the Plan that is sponsored by AIA Services Corporation;

**RESOLVED FURTHER**: That the officers of the Company be, and they hereby are, authorized and directed to take any and all actions and execute and deliver such documents as they may deem necessary, appropriate or convenient to effect the foregoing resolutions including, without limitation, causing to be prepared and filed such reports documents or other information as may be required under applicable law.

Dated this ___ day of _____, 2016.

_____
AIA INSURANCE, INC.

prepared by Randall & Hurley, Inc.                                Copyright © 2002-2016

DLM - 0079643

**Exhibit - 2, p. 62**
**18-ER-4694**

*SECTION J. EXECUTION PAGE*

## SECTION J. EXECUTION PAGE

The undersigned agree to be bound by the terms of this Adoption Agreement and Basic Plan Document and acknowledge receipt of same. The parties have caused this Plan to be executed this _25th_ day of _April_ , 2016.

AIA SERVICES CORPORATION:

Signature:

Print Name: R John Taylor

Title/Position: President

**TRUSTEE:**

R. John Taylor

prepared by Randall & Hurley, Inc.
**DLM - 0079644**

49

Copyright © 2002-2016

**Exhibit - 2, p. 63**
# 18-ER-4695

## UNANIMOUS WRITTEN CONSENT

## OF THE BOARD OF DIRECTORS

## OF AIA Insurance, Inc.

The undersigned, as the sole member of the Board of Directors of AIA Insurance, Inc., an Idaho corporation (the "Company"), in lieu of a regular and/or special meeting of the Board of Directors and pursuant to Idaho Corporation Statutes, and acting in the capacity as the Board of Directors, do hereby adopt the following resolutions and preamble thereto, and do hereby consent to the following:

WHEREAS, AIA Insurance, Inc, is the owner and successor in interest in the property known as the Kettenbaugh Building, 128 Main Street, Lewiston, Idaho;

Whereas, AIA Insurance, Inc, is a defendant in the action entitled Zions First National Bank v. 17 State Street Partners, LLC, et al, in Nez Perce County, Idaho, CV-15-02084;

Whereas, AIA Insurance desires to settle the lawsuit by providing a deed in lieu of foreclosure to GemCap Lending I, LLC and to assist in the global real estate transaction among GemCap, AIA Services Corporation 401(k) Profit Sharing Plan, Alexander Properties and others;

Whereas, GemCap Lending I, LLC , as successor to Zions First National Bank, has consented to dismiss the lawsuit upon receipt of the deed in lieu on the property.

The following resolution is hereby unanimously adopted:

RESOLVED, AIA Insurance, Inc hereby consents to provide to GemCap Lending I, LLC, a deed in lieu of foreclosure to the Kettenbaugh Building;

RESOLVED FURTHER, that AIA Insurance, Inc., consents to the dismissal of the lawsuit CV-15-02084 with prejudice; and

RESOLVED FURTHER, that R. John Taylor, as President of AIA Insurance, Inc, is hereby authorized and directed to take any and all actions and execute and deliver such documents as he may deem necessary, appropriate and convenient to effect the foregoing resolutions including, without limitation, causing to be prepared and filed such reports, documents or other information as may be required under applicable law.

Dated this 13th day September, 2016.

_____
Director

L.T. - 1219

## Exhibit - 2, p. 64
## 18-ER-4696