**Consolidated Case Nos. 25-3552 and 25-3800**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.,

**Plaintiff-Appellant**,

v.

R. JOHN TAYLOR, an individual, CONNIE TAYLOR HENDERSON, an individual, JAMES BECK, an individual, MICHAEL W. CASHMAN, SR., an individual, CROP USA INSURANCE AGENCY, INC., an Idaho corporation, CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company, AIA SERVICES CORPORATION, an Idaho corporation, AND AIA INSURANCE, INC., an Idaho corporation,

**Defendants-Appellees**,

and

Reed J. Taylor, an individual,

**Third-Party Defendant-Appellee.**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO,
CHIEF DISTRICT COURT JUDGE DAVID C. NYE, PRESIDING

**APPELLANT'S EXCERPTS OF THE RECORD – VOLUME - 19**

Roderick C. Bond
Roderick Bond Law Office, PLLC
10900 NE 4th St., Suite 2300
Bellevue, WA  98004
Tel: (425) 591-6903
Email: rod@roderickbond.com
Attorney for Appellant

Andrew Schwam
Andrew Schwam Law Firm
705 SW Fountain St.
Pullman, WA  99163-2128
Tel: (208) 874-3684
Email: amschwam@turbonet.com
Attorney for Appellant

MINUTES OF THE ANNUAL MEETING OF SHAREHOLDERS
OF
AIA INSURANCE, INC.

May 11, 1999, 11:00 a.m., second floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

I.   **Roll Call**
The regular annual shareholders meeting of the Company was called to order by R. John Taylor.  Of the 6,279 shares issued and outstanding, all were represented in person by R. John Taylor, designated proxy for AIA Services Corporation.  The Chairman declared that a quorum was present.

The following persons were present:
R. John Taylor
JoLee K. Duclos

II.   **Disposition of Minutes of Previous Meeting**
The secretary read the minutes of the prior meeting dated November 3, 1998.  The minutes were approved as read.

III.   **Election of Directors**
The following nominees for directors were elected:

|  | Votes For | Votes Against | Abstain |
|---|---|---|---|
| Paul D. Schrette | 6,279 | -0- | -0- |
| R. John Taylor | 6,279 | -0- | -0- |
| JoLee K. Duclos | 6,279 | -0- | -0- |

IV.   **Other Business**
The shareholders ratified and affirmed all business transactions authorized by the board and or the officers of the Company for the period since the last annual meeting.

V.   **Adjournment**
There being no further business, the meeting was adjourned at 11:08 a.m.

I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the shareholders meeting of the Company held May 11, 1999.

JoLee K. Duclos

Exhibit - 3, p. 1
**19-ER-4698**

AIA0025614

MINUTES OF THE ANNUAL MEETING OF SHAREHOLDERS
OF
AIA INSURANCE, INC.

May 9, 2000, 10:00 a.m., second floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

I.  **Roll Call**
The regular annual shareholders meeting of the Company was called to order by R. John Taylor.  Of the 6,279 shares issued and outstanding, all were represented in person by R. John Taylor, designated proxy for AIA Services Corporation.  The Chairman declared that a quorum was present.

The following persons were present:
R. John Taylor
JoLee K. Duclos

II.  **Disposition of Minutes of Previous Meeting**
The secretary read the minutes of the prior meeting dated May 11, 1999.  The minutes were approved as read.

III.  **Election of Directors**
The following nominees for directors were elected:

| | Votes For | Votes Against | Abstain |
|---|---|---|---|
| R. John Taylor | 6,279 | -0- | -0- |
| Paul D. Schrette | 6,279 | -0- | -0- |
| JoLee K. Duclos | 6,279 | -0- | -0- |

IV.  **Other Business**
The shareholders ratified and affirmed all business transactions authorized by the board and or the officers of the Company for the period since the last annual meeting.

V.  **Adjournment**
There being no further business, the meeting was adjourned at 10:11 a.m.

I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the shareholders meeting of the Company held May 9, 2000.

_____
JoLee K. Duclos

AIA0025611

MINUTES OF THE ANNUAL MEETING OF SHAREHOLDERS
OF
AIA INSURANCE, INC.

May 8, 2001, 10:00 a.m., second floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

I.   **Roll Call**

The regular annual shareholders meeting of the Company was called to order by R. John Taylor. Of the 6,279 shares issued and outstanding, all were represented in person by R. John Taylor, designated proxy for AIA Services Corporation. The Chairman declared that a quorum was present.

The following persons were present:
R. John Taylor
JoLee K. Duclos

II.  **Disposition of Minutes of Previous Meeting**

The secretary read the minutes of the prior meeting dated May 9, 2000. The minutes were approved as read.

III. **Election of Directors**

The following nominees for directors were elected:

|  | Votes For | Votes Against | Abstain |
|---|---|---|---|
| R. John Taylor | 6,279 | -0- | -0- |
| Paul D. Schrette | 6,279 | -0- | -0- |
| JoLee K. Duclos | 6,279 | -0- | -0- |

IV.  **Other Business**

The shareholders ratified and affirmed all business transactions authorized by the board and or the officers of the Company for the period since the last annual meeting.

V.   **Adjournment**

There being no further business, the meeting was adjourned at 10:09 a.m.

I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the shareholders meeting of the Company held May 8, 2001.

_____
JoLee K. Duclos

**Exhibit - 3, p. 3**
**19-ER-4700**

AIA0025609

MINUTES OF THE ANNUAL MEETING OF SHAREHOLDERS
OF
AIA INSURANCE, INC.

May 7, 2002, 10:00 a.m., second floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

**I.      Roll Call**
The regular annual shareholders meeting of the Company was called to order by R. John Taylor. Of the 6,279 shares issued and outstanding, all were represented in person by R. John Taylor, designated proxy for AIA Services Corporation. The Chairman declared that a quorum was present.

The following persons were present:
R. John Taylor
JoLee K. Duclos

**II.     Disposition of Minutes of Previous Meeting**
The secretary read the minutes of the prior meeting dated May 8, 2001. The minutes were approved as read.

**III.    Election of Directors**
The following nominees for directors were elected:

|  | Votes For | Votes Against | Abstain |
|---|---|---|---|
| R. John Taylor | 6,279 | -0- | -0- |
| Bryan Freeman | 6,279 | -0- | -0- |
| JoLee K. Duclos | 6,279 | -0- | -0- |

**IV.     Other Business**
The shareholders ratified and affirmed all business transactions authorized by the board and or the officers of the Company for the period since the last annual meeting.

**V.      Adjournment**
There being no further business, the meeting was adjourned at 10:09 a.m.

I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the shareholders meeting of the Company held May 7, 2002.

_____
JoLee K. Duclos

**AIA0001017**

**Exhibit - 3, p. 4**
**19-ER-4701**

MINUTES OF THE ANNUAL MEETING OF SHAREHOLDERS
OF
AIA INSURANCE, INC.

May 6, 2003, 9:30 a.m., second floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

I.      **Roll Call**
The regular annual shareholders meeting of the Company was called to order by R. John Taylor.  Of the 6,279 shares issued and outstanding, all were represented in person by R. John Taylor, designated proxy for AIA Services Corporation.  The Chairman declared that a quorum was present.

The following persons were present:
R. John Taylor
JoLee K. Duclos

II.     **Disposition of Minutes of Previous Meeting**
The secretary read the minutes of the prior meeting dated May 7, 2002.  The minutes were approved as read.

III.    **Election of Directors**
The following nominees for directors were elected:

| | Votes For | Votes Against | Abstain |
|---|---|---|---|
| R. John Taylor | 6,279 | -0- | -0- |
| Bryan Freeman | 6,279 | -0- | -0- |
| JoLee K. Duclos | 6,279 | -0- | -0- |

IV.     **Other Business**
The shareholders ratified and affirmed all business transactions authorized by the board and or the officers of the Company for the period since the last annual meeting.

V.      **Adjournment**
There being no further business, the meeting was adjourned at 9:37 a.m.

I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the shareholders meeting of the Company held May 6, 2003.

_____
JoLee K. Duclos

AIA0001014

**Exhibit - 3, p. 5**
**19-ER-4702**

MINUTES OF THE ANNUAL MEETING OF SHAREHOLDERS
OF
AIA INSURANCE, INC.

May 4, 2004, second floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

**I.      Roll Call**
The regular annual shareholders meeting of the Company was called to order by R. John Taylor.  Of the 6,279 shares issued and outstanding, all were represented in person by R. John Taylor, designated proxy for AIA Services Corporation.  The Chairman declared that a quorum was present.

The following persons were present:
R. John Taylor
JoLee K. Duclos

**II.     Disposition of Minutes of Previous Meeting**
The secretary read the minutes of the prior meeting dated May 6, 2003.  The minutes were approved as read.

**III.    Election of Directors**
The following nominees for directors were elected:

| | Votes For | Votes Against | Abstain |
| --- | --- | --- | --- |
| R. John Taylor | 6,279 | -0- | -0- |
| Bryan Freeman | 6,279 | -0- | -0- |
| JoLee K. Duclos | 6,279 | -0- | -0- |

**IV.     Other Business**
The shareholders ratified and affirmed all business transactions authorized by the board and or the officers of the Company for the period since the last annual meeting.

**V.      Adjournment**
There being no further business, the meeting was adjourned.

I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the shareholders meeting of the Company held May 4, 2004.

_____
JoLee K. Duclos, Corporate Secretary

AIA0001012

**Exhibit - 3, p. 6**
**19-ER-4703**

MINUTES OF THE ANNUAL MEETING OF SHAREHOLDERS
OF
AIA INSURANCE, INC.

May 3, 2005, second floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

**I.**   **Roll Call**
The regular annual shareholders meeting of the Company was called to order by R. John Taylor.  Of the 6,279 shares issued and outstanding, all were represented in person by R. John Taylor, designated proxy for AIA Services Corporation.  The Chairman declared that a quorum was present.

The following persons were present:
R. John Taylor
JoLee K. Duclos

**II.**   **Disposition of Minutes of Previous Meeting**
The secretary read the minutes of the prior meeting dated May 4, 2004.  The minutes were approved as read.

**III.**   **Election of Directors**
The following nominees for directors were elected:

| | Votes For | Votes Against | Abstain |
|---|---|---|---|
| R. John Taylor | 6,279 | -0- | -0- |
| Bryan Freeman | 6,279 | -0- | -0- |
| JoLee K. Duclos | 6,279 | -0- | -0- |

**IV.**   **Other Business**
The shareholders ratified and affirmed all business transactions authorized by the board and or the officers of the Company for the period since the last annual meeting.

**V.**   **Adjournment**
There being no further business, the meeting was adjourned.

I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the shareholders meeting of the Company held May 3, 2005.

_____
JoLee K. Duclos, Corporate Secretary

**AIA0001008**

**Exhibit - 3, p. 7**
**19-ER-4704**

MINUTES OF THE ANNUAL MEETING OF SHAREHOLDERS
OF
AIA INSURANCE, INC.

May 9, 2006, second floor conference room, One Lewis Clark Plaza, Lewiston, Idaho.

I.      **Roll Call**
        The regular annual shareholders meeting of the Company was called to order by R. John Taylor. Of the 6,279 shares issued and outstanding, all were represented in person by R. John Taylor, designated proxy for AIA Services Corporation. The Chairman declared that a quorum was present.

        The following persons were present:
        R. John Taylor
        JoLee K. Duclos
        Bryan Freeman

II.     **Disposition of Minutes of Previous Meeting**
        The secretary read the minutes of the prior meeting dated May 3, 2005. The minutes were approved as read.

III.    **Election of Directors**
        The following nominees for directors were elected:

|                 | Votes For | Votes Against | Abstain |
|-----------------|-----------|---------------|---------|
| R. John Taylor  | 6,279     | -0-           | -0-     |
| Bryan Freeman   | 6,279     | -0-           | -0-     |
| JoLee K. Duclos | 6,279     | -0-           | -0-     |

IV.     **Other Business**
        The shareholders ratified and affirmed all business transactions authorized by the board and or the officers of the Company for the period since the last annual meeting.

V.      **Adjournment**
        There being no further business, the meeting was adjourned.

        I, JoLee K. Duclos, Secretary of AIA Insurance, Inc., certify that this is a true and correct copy of the minutes of the shareholders meeting of the Company held May 9, 2006.

                                        _____
                                        JoLee K. Duclos, Corporate Secretary

AIA0001006

**Exhibit - 3, p. 8**
**19-ER-4705**

AIA SERVICES CORPORATION
SPECIAL MEETING OF SHAREHOLDERS

March 28, 2007

A special meeting of the shareholders of AIA Services Corporation was held in Lewiston, Idaho, pursuant to notice, on March 28, 2007. John Taylor called the meeting to order at 9:00 a.m.

Roll call was taken and R. John Taylor was present in person. Shareholders present by proxy were:  Corrine M. Beck, Michael W. Cashman, Michael W. Cashman Sr. IRA, Michael W. Cashman Jr., Chris W. Ferwalt, Carlton Kent Gray, Raymond R. Heilman, Raymond R. Heilman Profit Share, Bobette N. Ruddell, Bruce Sweeney, Alton D. Woodworth, and Kay Hanchett.  Also present was Corporate Secretary, JoLee Duclos.

**Proxies returned by common stock shareholders authorized the corporation to pay attorney's fees pursuant to Idaho Code Section 30-1-853(3)(b) for R. John Taylor, JoLee K. Duclos, and Bryan Freeman by the following vote:**

**For:      436,986 shares**
**Against:  -0- shares**
**Abstain:  788 shares**

**R. John Taylor also abstained from voting his 1,034,834.5 shares.**

There being no further business, the meeting was adjourned at 9:10 a.m.

_

_____
JoLee K. Duclos, Secretary

Board of Directors Minutes      1

**Exhibit - 3, p. 9**
**19-ER-4706**

AIAPROD00171853

AIA SHAREHOLDERS MEETING
Monday, July 16, 2012

PARTIES PRESENT:    JOHN TAYLOR

                    ROD BOND

                    DONNA TAYLOR

                    DALE L. MIESEN

                    PAUL DURANT

CERTIFIED COPY

DLM - 0035523

Page 2

MONDAY, JULY 16, 2012

MR. JOHN TAYLOR:  Now is the time and the place for the meeting of the shareholders of AIA Service Corporation to commence, I'll therefore call the meeting to order.

First item of business is the election of three directors nominated by the share -- by the board of directors.

We have received proxies from about ten people, I guess.  Those proxies were received based upon (inaudible).  Three people nominated by the board of directors.

MR. RID BOND:  No.

MR. JOHN TAYLOR:  Shut up.

The next item of business is --

MR. ROD BOND:  No.

MR. DALE MIESEN:  Yeah.  We've basically -- John, feel like two of the directors have never been duly appointed and that your shares are conflicted and therefore not eligible for use in voting, and we have already passed resolutions and elected a director for this purpose and I'm going to present that to you now.

MR. JOHN TAYLOR:  Say that, again.

MR. DALE MIESEN:  We feel that it's in -- out of order or not -- not in proper form to proceed beyond

Clearwater Reporting of Washington and Idaho, LLC
bud@clearwaterreporting.com                    208-743-2748

DLM - 0035524

Exhibit - 3, p. 11
**19-ER-4708**

Page 3

where we're at right now, because until this point or prior to this point, there's been too many conflicts of interest with yourself and the other two proposed board directors to and we want to submit resolutions (inaudible) that disqualify you and (inaudible). So....that's.

MR. JOHN TAYLOR:  May I see those.

MR. DALE MIESEN:  And, in addition, we have shareholder demands (inaudible).

MR. ROD BOND:  Let's go to the next item first.

MR. JOHN TAYLOR:  Any other comments about the first item of business (inaudible)?

MR. ROD BOND:  On what?

MR. JOHN TAYLOR:  The first item of business.

MR. ROD BOND:  Other than my client also is a shareholder, both common and preferred, backs what Mr. Miesen is saying --

MR. JOHN TAYLOR:  We will take that (inaudible).

MR. ROD BOND:  -- and she signed proxies backing Mr. Miesen.

MR. JOHN TAYLOR:  I understand that, but the first item of business is the election of three directors, based upon (inaudible) of votes, those directors have been elected, so your petitioning out of

DLM - 0035525

Exhibit - 3, p. 12
**19-ER-4709**

Page 4

order.

The next item of business is --

MR. ROD BOND:  And did you vote your shares in favor of those three directors.

MR. JOHN TAYLOR:  Yes, I did.

MR. ROD BOND:  Okay.  And what other shares voted in favor of those directors?

MR. JOHN TAYLOR:  No comment.

MR. ROD BOND:  What?

MR. JOHN TAYLOR:  We can't tell you.

MR. ROD BOND:  No.  We have a right to know who voted for and against the transaction.

MR. JOHN TAYLOR:  No, you don't.  No, you don't.

Next item of business --

MR. DALE MIESEN:  We don't?

MR. JOHN TAYLOR:  You don't.  Next item of business is the --

MR. DALE MIESEN:  Let it be noted that I object to whatever --

MR. ROD BOND:  Is it --

MR. DALE MIESEN:  We must have a -- a count of who voted for and against any resolution.

MR. JOHN TAYLOR:  So, you want us to stop and add them up, is that what you're saying?

DLM - 0035526

Exhibit - 3, p. 13

19-ER-4710

Page 5

MR. DALE MIESEN:  Well, if your claiming that someone voted for it, I'd like to know who and how many shares are -- that are not conflicted are voting for it.

MR. JOHN TAYLOR:  Well, let's just get it straight.  We're not going to rehash any litigation or (inaudible) litigation.  We're going to vote today and that's it.  If you want to challenge this election, go ahead.

MR. ROD BOND:  And we will.  And we will.

MR. JOHN TAYLOR:  We have now -- we have now elected three directors with a vast majority of votes, including myself and at least one other person.  That's all I'm saying.

The next item of business is the appointment of -- Ms. Taylor has asked for the appointment of (inaudible) preferred shares to appoint a director, nominated Mr. Durant.  We expect that will be -- we look forward to you joining the board, you've been on the board before (inaudible.)  We will then -- we'll send you the forms necessary to (inaudible).  It looks like, as far as I can see, we will accept your choice.  And we'll do that --

MS. DONNA TAYLOR:  I can't hear him.

MR. ROD BOND:  Then on behalf of my client, there will be no board meetings until Mr. Durant is

DLM - 0035527

Exhibit - 3, p. 14
**19-ER-4711**

Page 6

seated on the board.

MR. JOHN TAYLOR:  I'm sorry.  I'm sorry.

MR. DALE MIESEN:  I'm losing --

MS. DONNA TAYLOR:  I can't hear anything.

MR. ROD BOND:  Yeah.  Yeah.  Can you talk louder, please?

MS. DONNA TAYLOR:  Could they turn the air condition off?

MR. JOHN TAYLOR:  No.  I'm not going to seat Ms. Taylor on the board meeting, and I will seat Mr. Durant when he is qualified, period.

MR. ROD BOND:  And how are you qualified, sir?

MR. JOHN TAYLOR:  We will qualify him for the board.

MR. ROD BOND:  Are you going to qualify yourself, as well?

MR. JOHN TAYLOR:  Excuse me, that's not the (inaudible).  This is not a court of law.

MR. ROD BOND:  Okay.

MR. JOHN TAYLOR:  We will seat Mr. Durant subject to his vetting by our attorney (inaudible) qualifications of Mr. Durant.

MR. ROD BOND:  So -- so, just for the record, sir, you're asserting that yourself, your ex-wife, Connie Taylor Henderson, and James Beck are all

DLM - 0035528
Exhibit - 3, p. 15
**19-ER-4712**

qualified to serve on the board of AIA Services Corporation, is that -- just so we have it for the record?

MR. JOHN TAYLOR: No comment.

MR. ROD BOND: No comment? Okay.

MR. JOHN TAYLOR: The next item of business to be conducted today is a reverse stock split, which you have received materials on. Now, that reverse stock split has been presented to you, and we received proxies for and against that reverse stock split. So, I would entertain now a motion for that -- vote on that reverse stock split.

MR. ROD BOND: We would like to ask some questions before we proceed to --

MR. JOHN TAYLOR: Go ahead.

MR. PAUL DURANT: Is there no discussion?

MR. JOHN TAYLOR: There is now open for discussion.

MR. PAUL DURANT: The question I have is, how did you come up with a formula of fifty-three thousand to one -- for one?

MR. JOHN TAYLOR: We -- we discussed that and looked at a lot of different possibilities and came up with that (inaudible).

MR. PAUL DURANT: Is -- coincidentally, it

Clearwater Reporting of Washington and Idaho, LLC
bud@clearwaterreporting.com                    208-743-2748
DLM - 0035529

Exhibit - 3, p. 16
**19-ER-4713**

Page 8

happens to match Heilman's (inaudible) shares?

MR. JOHN TAYLOR:  We certainly took that into consideration.

MR. PAUL DURANT:  Does he get some consideration for them?

MR. JOHN TAYLOR:  No.

MR. ROD BOND:  Are you voting your shares in favor of this?

MR. JOHN TAYLOR:  I have voted my shares in favor of this.

MR. ROD BOND:  And you don't think that your shares are disqualified from voting on this as a preferential transaction --

MR. JOHN TAYLOR:  No comment on that.

MR. ROD BOND:  -- and oppression of minority shareholders?

MR. JOHN TAYLOR:  No comment.  No comment.

MR. ROD BOND:  Okay.

MR. PAUL DURANT:  Would you state --

MR. JOHN TAYLOR:  Shut up.  We're not going to recognize you on this.  This is not a court of law. We're not going to hear your pandering.

MR. ROD BOND:  No.  It's a shareholder meeting.

MR. JOHN TAYLOR:  Well --

MR. ROD BOND:  You've got away with a lot of

DLM - 0035530

Exhibit - 3, p. 17
**19-ER-4714**

Page 9

stuff, John.

MR. JOHN TAYLOR:  Sorry.  Sorry.

MR. ROD BOND:  My client and I have a lot of questions on --

MR. JOHN TAYLOR:  Is there anybody else who has a question on --

MR. ROD BOND:  Okay.  Wait.  It's clear that you're not going to properly hold a shareholder meeting.

MR. DALE MIESEN:  These are our shareholder demands and we'd like those read, for the record.

MR. JOHN TAYLOR:  These are shareholder demands.

MR. ROD BOND:  Derivative demands on behalf of thirteen shareholders, Mr. Taylor, and they're all going to federal court, along with Donna.  So --

MR. TAYLOR:  We're not going to have those --

MR. ROD BOND:  Yeah.

MR. TAYLOR:  -- demands posted into the record. I will not read them.

Any other comments or questions about this?

MR. ROD BOND:  And those demands included demands by all of them to not have the reverse stock split, and in the demands include that the ESOP transaction be bought -- backed out and those people's shares not be purchased until a fair valuation is made,

DLM - 0035531

Exhibit - 3, p. 18
**19-ER-4715**

Page 10

that all the innocent shareholders are apprised of everything that's gone on.  For the C shareholders, including all dividends to be paid --

MR. JOHN TAYLOR:  Excuse me.  I don't need you to (inaudible) the --

MR. ROD BOND:  It's a violation of the articles of incorporation what you're doing, numerous provisions. We want it in the record that that's been objected to. We don't view your case as -- your shares as being qualified.  We view most of your shares as being illegally obtained and -- and so we wanted that for the record.

MR. JOHN TAYLOR:  Okay.  (Inaudible).  Any other comments about the reverse stock split?

MR. DALE MIESEN:  What's the point of it to begin with.

MR. JOHN TAYLOR:  The point of it?

MR. DALE MIESEN:  Yeah.

MR. JOHN TAYLOR:  We discussed various business (inaudible) as indicated.

MR. DALE MIESEN:  Can you name one?

MR. JOHN TAYLOR:  Name one?  I want this to be -- number one, we obviously want to turn this company into an LLC.

MR. DALE MIESEN:  A what?

Clearwater Reporting of Washington and Idaho, LLC
bud@clearwaterreporting.com                       208-743-2748
DLM - 0035532
Exhibit - 3, p. 19
19-ER-4716

Page 11

MR. PAUL DURANT:  A limited liability corporation.

MR. DALE MIESEN:  Okay.

MR. JOHN TAYLOR:  So, we -- we think it's (inaudible) feasible.  Any other discussion?

MR. ROD BOND:  Yes.  How did you arrive at the ten cents a share?

MR. JOHN TAYLOR:  (Inaudible).

MR. ROD BOND:  How do you arrive at the ten cents a share purchase price?

MR. JOHN TAYLOR:  Dale, would you like to ask the question?

MR. DALE MIESEN:  Yeah.  How did you arrive at the ten cents a share valuation?

MR. JOHN TAYLOR:  Various factors, including the valuations of book assets and (inaudible) assets and that is the value we arrived at that in negotiations with private parties (inaudible).  So all those --

MR. DALE MIESEN:  Is there any -- any information behind that to substantiate that or -- I mean, is there something that you can point to that says, this is how it works, this is the the numbers?

MR. JOHN TAYLOR:  No.

MR. DALE MIESEN:  And nothing behind why fifty-three thousand was exactly the number for the

DLM - 0035533

Exhibit - 3, p. 20
**19-ER-4717**

Page 12

split?

MR. JOHN TAYLOR:  Other than what we already stated today.  During the process you will have (inaudible) -- statutory process to look at the valuations.  I mean, all the things you wanted to consider at that valuation process and we're happy to do that.  (Inaudible) steps to come (inaudible).

MR. DALE MIESEN:  Why over the last ten or twelve years has there not been an annual report provided to shareholders?

MR. JOHN TAYLOR:  I can't answer that.

MR. DALE MIESEN:  Isn't it required by state law, corporate law, bylaws?

MR. JOHN TAYLOR:  I can't answer that.

MR. DALE MIESEN:  But you're qualified as a board member, you should know.

MR. ROD BOND:  Ask him what attorney put it together.

MR. DALE MIESEN:  Do you have an attorney representing you on that particular matter of not providing annual statements?

MR. JOHN TAYLOR:  I'll check into that.

MR. ROD BOND:  Who put the packet together?

MR. DALE MIESEN:  Who put the packet together that we got?

CERTIFIED COPY

Clearwater Reporting of Washington and Idaho, LLC
bud@clearwaterreporting.com                    208-743-2748

DLM - 0035534

Exhibit - 3, p. 21
**19-ER-4718**

Page 13

MR. ROD BOND:  What's their name?

MR. DALE MIESEN:  Did you do that?

MR. JOHN TAYLOR:  I did not.

MR. DALE MIESEN:  Can you say who did?

MR. JOHN TAYLOR:  Uh, Yes.  We'll --

MR. PAUL DURANT:  Well, it's signed by the secretary, isn't it?

MR. JOHN TAYLOR:  Yeah.  Signed by the secretary.

MR. PAUL DURANT:  The secretary is JoLee?

MR. JOHN TAYLOR:  Yes.

MR. DALE MIESEN:  Did you have an assistance, JoLee with putting the package together?

MR. ROD BOND:  What law firm did it?  They're saying that there's legal fees paid for it.

MR. JOHN TAYLOR:  Well, the law firm who represents AIA in this matter is Randall Danskin in Spokane.

MS. DONNA TAYLOR:  That's who?

MR. JOHN TAYLOR:  Randall Danskin.

MR. ROD BOND:  And who from Randall Danskin?

MR. JOHN TAYLOR:  Doug Siddoway.

MR. ROD BOND:  Who?

MR. JOHN TAYLOR:  Doug Siddoway.

MR. ROD BOND:  Doug --

DLM - 0035535

Exhibit - 3, p. 22
**19-ER-4719**

Page 14

MR. JOHN TAYLOR:  And counsel is welcome to talk with the attorney.

MS. DONNA TAYLOR:  Could you speak louder?  I can't hear a thing you're saying.

MR. JOHN TAYLOR:  Our attorney for this matter is Doug Siddoway in Spokane, and Rod can talk to him at his leisure.

MR. ROD BOND:  And was he provided a copy of the articles of incorporation?

MR. JOHN TAYLOR:  He would be better able to describe to you what documents he has --

MR. PAUL DURANT:  But under financials I noticed that there were purported to be a generally accepted accounting principle preparing that (inaudible).

MR. JOHN TAYLOR:  Does it say generally accepted or statutory?

MR. PAUL DURANT:  It says, generally accepted. And then it also refers to incorporating what is it, APB 820, which is (inaudible) value -- (inaudible) value accounting.  And that is -- I know that is an extremely difficult thing to arrive at.

MR. JOHN TAYLOR:  I can't answer (inaudible).

MR. PAUL DURANT:  Well, is there anyone who can answer that?

DLM - 0035536

Exhibit - 3, p. 23
19-ER-4720

CERTIFIED COPY

MR. JOHN TAYLOR:  We believe that (inaudible). (Inaudible) accounting as best we can.  They were prepared (inaudible).

MR. DALE MIESEN:  Can I ask why money has been loaned to Pacific Empire Radio, since it's a violation of the laws of incorporation, why -- why that transaction has taken place?

MR. JOHN TAYLOR:  I have no comment on that.

MR. DALE MIESEN:  Well --

MR. JOHN TAYLOR:  No further discussion on that.

MR. DALE MIESEN:  How are we going to determine what events are --

MR. JOHN TAYLOR:  Let me reiterate what the statutory process is now.  You have elected your right to have statutory (inaudible).  I'm sure all those things will be taken into account (inaudible) statutory (inaudible).

MR. DALE MIESEN:  We're -- we're challenging this, among other transactions, John.  The point is, we think that it was a violation of law and bylaw.

MR. JOHN TAYLOR:  I'm sorry you feel that way. There will be no further comment on this.

MR. DALE MIESEN:  And CropUSA is another matter that was an asset of the company, that apparently is

DLM - 0035537

Exhibit - 3, p. 24
19-ER-4721

Page 16

not.  What consideration and compensation did we get for that company?

MR. JOHN TAYLOR:  No comment.

MR. DALE MIESEN:  There's too many gaps to really understand where we're at today, how we got here.

MR. JOHN TAYLOR:  You know, the process is a statutory process (inaudible).  It is a fair process that ensures that you get the full value of your shares. We will let that process (inaudible), you elected to do that process and therefore you (inaudible) --

MR. DALE MIESEN:  We feel that the board has not complied with the law or the bylaws of the corporation.

MR. JOHN TAYLOR:  I'm sorry you feel that way.

MR. DALE MIESEN:  And that's what we're going to contest in federal court.

MR. JOHN TAYLOR:  Okay.

MR. DALE MIESEN:  There's just too many gaps.

MR. JOHN TAYLOR:  If there's no more discussion (inaudible).

MR. PAUL DURANT:  I have one more comment to make.  The financial statements, by law are required to either be -- have a (inaudible).  Be certified by a public accountant (inaudible).  (Inaudible) supposed to be (inaudible).

DLM - 0035538

Exhibit - 3, p. 25
**19-ER-4722**

MR. JOHN TAYLOR:  I believe it would be (inaudible).  The table is open for discussion.

MR. DALE MIESEN:  Yes, please.  I came a long way and spent a lot of money to get here, so I would like to spend a few more minutes.  Why wasn't a copy of the derivative complaint sent to anyone for any itemization of the claims in it, why weren't we made fully aware of it?

MR. JOHN TAYLOR:  I don't know why.  I think most (inaudible) are on the website.

MR. DALE MIESEN:  On what?

MR. JOHN TAYLOR:  On the website.

MR. DALE MIESEN:  I never even knew about the website until a few days ago, so I don't you know.  It's never like there aren't any reports, we just don't get them, we don't know.

MR. JOHN TAYLOR:  Any other comments or questions?

MR. DALE MIESEN:  Until the federal court case is concluded, how can you come to a fair valuation?  I mean, that has to be factored in.

MR. JOHN TAYLOR:  I'm sure it will be.

MR. DALE MIESEN:  Pending, you know, litigation.

MR. JOHN TAYLOR:  I'm sure it will.

Clearwater Reporting of Washington and Idaho, LLC
bud@clearwaterreporting.com                    208-743-2748
DLM - 0035539

Exhibit - 3, p. 26
19-ER-4723

MR. DALE MIESEN:  So, at this point, you're looking to go forward with the ten cents a share stock split or valuation, but there's too many things in the air.

MR. JOHN TAYLOR:  We believe in the statutory process we laid out.

MR. DALE MIESEN:  Well, I don't think that's satisfactory, for the record.

MR. JOHN TAYLOR:  We hear that loud and clear.

MR. DALE MIESEN:  Yeah.  Well, in the interim, I demand that no more loans be made, no more major transactions be done, until this thing has been duly litigated.  These complaints and these demands have been read, recognized, have been entered into a record.

MR. JOHN TAYLOR:  Any other comments?

MR. DALE MIESEN:  Yes.  One, is there -- is there going to be a board meeting following this meeting?  And --

MR. JOHN TAYLOR:  Is there going to be -- no, there's not.

MR. DALE MIESEN:  There's not going to be a board meeting after this?  Was that planned originally?

MR. JOHN TAYLOR:  Yeah.  Two members of the board are on vacation.

MR. PAUL DURANT:  Are what?

Clearwater Reporting of Washington and Idaho, LLC
bud@clearwaterreporting.com                    208-743-2748
DLM - 0035540

Exhibit - 3, p. 27
19-ER-4724

CERTIFIED COPY

Page 19

MR. JOHN TAYLOR:  Vacation.  Or Western (inaudible).

MR. PAUL DURANT:  Connie and --

MR. JOHN TAYLOR:  Connie is in Western (inaudible) and Jim is on vacation.

MR. PAUL DURANT:  I guess you acknowledge receiving our package.

MR. JOHN TAYLOR:  Yeah, I do.  Well, if there's no more comments or questions, we're going to close the meeting.

MR. DALE MIESEN:  How can you -- how can you purchase fraction shares without first taking care of the preferred shares and payment on those?  Are those -- aren't those primary and prior to doing anything with the common?

MR. JOHN TAYLOR:  We do not believe so.

MR. PAUL DURANT:  (Inaudible) preference (inaudible).

MR. JOHN TAYLOR:  (Inaudible) exchange.

MR. DALE MIESEN:  The articles of incorporation say that the dividends have to be paid before you could take other action on the C shares -- the common shares, rather.

MR. JOHN TAYLOR:  Those would be (inaudible).

MR. DALE MIESEN:  Well, it's there in black and

DLM - 0035541

Exhibit - 3, p. 28

19-ER-4725

white.  It doesn't have to be -- anybody can read it.

MR. JOHN TAYLOR:  There's no reason to get involved in the back and forth on this stuff.  I'm not answering any questions (inaudible).

MR. DALE MIESEN:  How did you acquire your interest in CropUSA?

MR. JOHN TAYLOR:  No comment.

MS. DONNA TAYLOR:  What was the question?

MR. DALE MIESEN:  How did you acquire your interest in CropUSA?

MR. JOHN TAYLOR:  No comment.  You know, Dale, once you become a litigant, there are proper channels to get that type of information as to the process of discovery or depositions.  I'm sorry you --

MR. DALE MIESEN:  We want things duly noted here.  I mean, I think, John, obviously if things were running properly from the beginning, we wouldn't be here having this match.

MR. JOHN TAYLOR:  I'm sorry you feel that way.

MR. DALE MIESEN:  It's really a sad commentary.  I'm sorry.

MR. JOHN TAYLOR:  Okay.  The tally the votes for the reverse stock are --

UNKNOWN FEMALE SPEAKER:  Inaudible.

MR. JOHN TAYLOR:  It passes with a majority of

Page 21

eighty-five percent.  (Inaudible).

MR. ROD BOND:  So, who voted for it?  You voted for is?

MR. JOHN TAYLOR:  Yes.

MR. BOND:  John Taylor voted and then who else.

MR. ROD JOHN TAYLOR:  One other shareholder voted for it.

MR. BOND:  Who's that?

MR. JOHN TAYLOR:  I'm not telling you.

MR. DALE MIESEN:  Ray Heilman?

MR. JOHN TAYLOR:  (Inaudible).

MR. DALE MIESEN:  Is it Ray?

MR. JOHN TAYLOR:  Unless they -- unless they ask --

MR. DALE MIESEN:  I need -- would like a name. I mean, this is -- this is -- and I'd expect the records right now that you have those votes somewhere recorded.

MR. JOHN TAYLOR:  No.  You may not.

MR. DALE MIESEN:  So it's a secret?

MR. JOHN TAYLOR:  We don't disclose the name of the people who vote.

MR. DALE MIESEN:  How many shares were voted, other than yours, the number of shares that were voted in favor?

MR. JOHN TAYLOR:  Less than a couple thousand.

DLM - 0035543

Exhibit - 3, p. 30

**19-ER-4727**

Page 22

That's all the information I can give out today. (Inaudible) the motion has passed with a substantial majority.

MR. ROD BOND:  Over objection of all the parties sitting here.

MR. JOHN TAYLOR:  There will be no further business today.  The meeting is adjourned.

MR. DALE MIESEN:  Can we have resolutions before you close this meeting?

MR. JOHN TAYLOR:  We have --

MR. DALE MIESEN:  Because they've been submitted.  We've already voted our shares, we feel we have the majority of unconflicted shares and we will consider them passed and approved and a part of this deal.  So --

MR. JOHN TAYLOR:  Well, I'm sorry  the meeting is adjourned adjourned.  (Inaudible).  Thank you for coming all the way up.

(AIA Shareholder Meeting adjourned.)

Clearwater Reporting of Washington and Idaho, LLC
bud@clearwaterreporting.com                    208-743-2748

DLM - 0035544

Exhibit - 3, p. 31
19-ER-4728

Page 23

```
                    C E R T I F I C A T E

STATE OF IDAHO       )
                     ) SS.
County of Nez Perce  )


            I, GLORIA J. McDOUGALL, CSR, RPR, CP,
Freelance Court Reporter and Notary Public for the
States of Idaho, Idaho CSR No. 234; and Washington,
Washington CSR No. 2353; residing in Clarkston,
Washington, do hereby certify:


            That I was duly authorized to and did
transcribe the audile portions of an AIA Shareholder
Meeting held on Monday July 16, 2012;


            That the foregoing pages of this transcript
constitute a true and accurate transcript of all audible
portions of the AIA Shareholder Meeting.


            I further certify that I am not an attorney
nor counsel of any of the parties; nor a relative or
employee of any attorney or counsel connected with the
action, nor financially interested in the action.


            IN WITNESS WHEREOF, I have hereunto set my
hand and seal on this 19th day of July 2012.




                        GLORIA J. McDOUGALL, CSR, RPR, CP
                        Freelance Court Reporter
                        Notary Public, States of Idaho
                            and Washington
                        Residing in Clarkston, Washington
                        My Commissions Expire:  10/06/15
                            and 10/01/15
```

Clearwater Reporting of Washington and Idaho, LLC
bud@clearwaterreporting.com                    208-743-2748

DLM - 0035545

Exhibit - 3, p. 32
19-ER-4729

BYLAWS

OF

A.I.A., INC.
(an Idaho corporation)

## ARTICLE I

### OFFICES

Section 1.1   **Registered Office.**   The registered office of the corporation required by the Idaho Business Corporation Act to be maintained in the State of Idaho may, but need not be, identical with the principal office in the State of Idaho; and the address of the registered office may be changed from time to time by the Board of Directors or the President of the corporation. (Idaho Code Sections 30-1-12(a) and 30-1-13.)

Section 1.2   **Principal Office; Other Offices.**   The corporation shall also have and maintain an office or principal place of business in Lewiston, Idaho or at such other place as may be fixed by the Board of Directors, and may also have offices at such other places, both within and without the State of Idaho, as the Board of Directors may from time to time determine or the business of the corporation may require.

## ARTICLE II

### CORPORATE SEAL

Section 2.1   **Corporate Seal.**   The corporate seal shall consist of a die bearing the name of the corporation and the inscription, "Corporate Seal -- State of Idaho". The seal may be used by causing it or a facsimile thereof to be impressed or affixed or in any other manner reproduced. The seal may be altered at the pleasure of the Board of Directors. (Idaho Code Section 30-1-4(c)).

## ARTICLE III

### STOCKHOLDERS' MEETINGS

Section 3.1   **Place of Meetings.**   The Board of Directors may designate any place, either within or without the State of Idaho, as the place of meeting for any annual meeting or for any special meeting of stockholders called by the Board of Directors. A waiver of notice signed by all stockholders entitled to vote at a meeting may designate any place, either within or without the State of Idaho, as the place for the holding of such meeting. If no designation is made, or if a special meeting be otherwise called, the place of meeting shall be the principal office of the corporation in the State of Idaho. (Idaho Code Section 30-1-28).

Section 3.2   **Annual Meetings.**   The annual meeting of the stockholders of the corporation shall be held on the first Monday in the month of May in each

BYLAWS OF A.I.A., INC. - P. 1

EX NO. 124
J. Taylor
DATE 2-24-20
ASSOCIATED
REPORTING & VIDEO

RJT-AIA 1057

year at the hour of 10:00 o'clock a.m., or on such other date and at such other time which may from time to time be designated by the Board of Directors, for the purpose of electing directors and for the transaction of such other business as may properly come before the meeting. (Idaho Code Section 30-1-28).

Section 3.3   **Special Meetings.**   Special meetings of the stockholders of the corporation may be called at any time, for any purpose or purposes, by the Board of Directors or by the holders of not less than one-fifth (1/5) of all outstanding shares of stock of the corporation entitled to vote at the meeting or by the president of the corporation.   Special meetings of the stockholders of the corporation may not be called by any other person or persons.   (Idaho Code Section 30-1-28).

Section 3.4   Notice of Meetings.   Written notice stating the place, day and hour of the meeting and, in case of a special meeting, the purpose or purposes for which the meeting is called, shall, unless otherwise prescribed by statute, be delivered not less than ten nor more than fifty days before the date of the meeting, either personally or by mail, by or at the direction of the president, or the secretary, or the officer or other persons calling the meeting, to each stockholder of record entitled to vote at such meeting, or to each specified beneficial stockholder certified for the purpose of receiving such notice under Section 3.10. (Idaho Code Section 30-1-29).

Such notice of any meeting of stockholders may be waived in writing, signed by the person entitled to notice thereof, either before or after such meeting, and will be waived by any stockholder by his attendance thereat in person or by proxy, except when the stockholder attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.   Any stockholder so waiving notice of such meeting shall be bound by the proceedings of any such meeting in all respects as if due notice hereof had been given. (Idaho Code Section 30-1-144).

Section 3.5   **Quorum.**   Except as otherwise provided in the Articles of Incorporation, a majority of the outstanding shares of the corporation entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of stockholders.   Any shares, the voting of which at said meeting has been enjoined, or which for any reason cannot be lawfully voted at such meeting, shall not be counted to determine a quorum at such meeting.   In the absence of a quorum any meeting of stockholders may be adjourned, from time to time, by vote of the holders of a majority of the shares represented thereat; but no other business shall be transacted at such meeting.   The stockholders present at a duly organized and convened meeting where a quorum has been present can continue to transact business as a quorum until adjournment, notwithstanding the withdrawal of enough stockholders to leave less than a quorum.   Except as otherwise provided by law, the Articles of Incorporation or these Bylaws, if a quorum is present, the affirmative vote of a majority of the shares represented at the meeting and entitled to vote on the subject matter shall be the act of the stockholders. (Idaho Code Section 30-1-32).

Section 3.6   Adjournment and Notice of Adjourned Meetings.   Any meeting of stockholders at which a quorum is present, whether annual or special, may be

BYLAWS OF A.I.A., INC. - P. 2

*RJT-AIA 1058*

adjourned from time to time by the vote of a majority of the shares, the holders of which are present either in person or by proxy. When a meeting is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken. At the adjourned meeting the corporation may transact any business which might have been transacted at the original meeting. If the adjournment is for more than thirty (30) days, or if after the adjournment a new record date is fixed for the adjournment meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

Section 3.7 **Proxies.** At all meetings of stockholders, a stockholder may vote either in person or by proxy executed in writing by the stockholder or by his duly authorized attorney-in-fact. Such proxy shall be filed with the secretary of the corporation before or at the time of the meeting. No proxy shall be valid after eleven (11) months from the date of its execution, unless otherwise provided in the proxy. (Idaho Code Section 30-1-33(c)).

Section 3.8 **Voting Rights.** Except as otherwise provided in the Articles of Incorporation, each outstanding share, regardless of class, entitled to vote shall be entitled to one vote upon each matter submitted to a vote at a meeting of stockholders. Except as otherwise provided in the Articles of Incorporation, at each election for directors every stockholder entitled to vote at such election shall have the right to vote, in person or by proxy, the number of shares owned by him for as many persons as there are directors to be elected and for whose election he has a right to vote, or to cumulate his votes by giving one (1) candidate as many votes as the number of such directors multiplied by the number of his shares shall equal, or by distributing such votes on the same principle among any number of such candidates. (Idaho Code Section 30-1-33(a),(d)).

For the purpose of determining those stockholders entitled to vote at any meeting of the stockholders, except as otherwise provided by law, only persons in whose names shares stand on the stock records of the corporation on the record date, as provided in Sections 3.11 and 7.4 of these Bylaws, shall be entitled to vote at any meeting of stockholder. All elections of directors shall be by written ballot.

Section 3.9. **Voting of Shares by Certain Holders.** Shares standing in the name of another corporation, domestic or foreign, may be voted by such officer, agent or proxy as the bylaws of such other corporation my prescribe or, in the absence of such provision, as the Board of Directors of such other corporation may determine. (Idaho Code Section 30-1-33(e)).

Shares held by an administrator, executor, guardian or conservator may be voted by him, either in person or by proxy, without a transfer of such shares into his name. Shares standing in the name of a trustee may be voted by him, either in person or by proxy; but no trustee shall be entitled to vote shares held by him without a transfer of such shares into his name. (Idaho Code Section 30-1-33(f)).

BYLAWS OF A.I.A., INC. - P. 3

RJT-AIA 1059

Shares standing in the name of a receiver may be voted by such receiver; and shares held by or under the control of a receiver may be voted by such receiver without the transfer thereof into his name if authority so to do be contained in an appropriate order of the court by which such receiver was appointed. (Idaho Code Section 30-1-33(g)).

A stockholder whose shares are pledged shall be entitled to vote such shares until the shares have been transferred into the name of the pledgee; and thereafter the pledgee shall be entitled to vote the shares so transferred unless the pledgor shall have obtained from the pledgee a proxy to vote or take other action thereon in accordance with law. (Idaho Code Section 30-1-33(c)(3),(h)).

Neither treasury shares of its own stock held by the corporation, nor shares held by another corporation if a majority of the shares entitled to vote for the election of directors of such other corporation is held by the corporation, shall be voted at any meeting or counted in determining the total number of outstanding shares at any given time.   (Idaho Code Section 30-1-33(b)).

Section 3.10   Joint Owners of Stock.   If shares or other securities having voting power stand of record in the names of two (2) or more persons, whether fiduciaries, members of a partnership, joint tenants, tenants in common, tenants by the entirety, or otherwise, or if two (2) or more persons have the same fiduciary relationship respecting the same shares, unless the Secretary is given written notice to the contrary and is furnished with a copy of the instrument or order appointing them or creating the relationship wherein it is so provided, their acts with respect to voting shall have the following effect: (a) if only one votes, his act binds all; (b) if more than one votes, the act of the majority so voting binds all; (c) if more than one votes, but the vote is evenly split on any particular matter, each faction may vote the securities in question proportionally.   If the instrument filed with the secretary shows that any such tenancy is held in unequal interests, a majority or even-split for the purpose of this Section 3.10 shall be a majority or even-split in interest.

The Board of Directors may adopt by resolution a procedure whereby a stockholder of the corporation may certify in writing to the corporation that all or a portion of the shares registered in the name of such stockholder are held for the account of a specified person or persons.   The resolution shall set forth (a) the classification of stockholder who may certify, (b) the purpose or purposes for which the certification may be made, (c) the form of certification and information to be contained therein, (d) the number of days before or after any record date or date of closing of the stock transfer books, by which time the certification must be received by the corporation to be effective for the record date or date of closing of the stock transfer books, and (e) such other provisions with respect to the procedure as are deemed necessary or desirable. Upon receipt by the corporation of a certification complying with the procedure, the persons specified in the certification shall be deemed, for the purpose or purposes set forth in the certification, to be the holders of record of the number of shares specified in place of the shareholder making the certification. (Idaho Code Section 30-1-2(f)).

BYLAWS OF A.I.A., INC. - P. 4

RJT-AIA 1060

Section 3.11   List of Stockholders.   The secretary shall make, at least ten (10) days before every meeting of stockholders, a complete record of the stockholders entitled to vote at such meeting or any adjournment thereof, arranged in alphabetical order and showing the address of each stockholder and the number of shares registered in the name of each stockholder. Such record shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours, for a period of at least ten (10) days prior to the meeting, either at a place within the city where the meeting is to be held, which place shall be specified in the notice of the meeting or, if not specified, at the place where the meeting is to be held. The list shall be produced and kept open at the time and place of meeting, and shall be subject to inspection by any stockholder during the whole time of the meeting for the purposes thereof. (Idaho Code Section 30-1-31).

Section 3.12   Organization.   At every meeting of stockholders, the Chairman of the Board of Directors, or, if a Chairman has not been appointed or is absent, the president, or, if the president is absent, the most senior vice president present, or in the absence of any such officer, a chairman of the meeting chosen by a majority in interest of the stockholders entitled to vote, present in person or by proxy, shall act as chairman. The secretary or, in his absence, an assistant secretary directed to do so by the president, shall act as secretary of the meeting.

Section 3.13   Nomination of Directors.   Nominations of persons for election to the Board of Directors of this corporation at the annual meeting of stockholders may be made at such meeting by or at the direction of the Board of Directors, by any nominating committee or person appointed by the Board of Directors, or by any stockholder of the corporation entitled to vote for the election of directors at the meeting who timely complies with the notice procedures herein set forth. To be timely, a stockholder's notice must be delivered to, or mailed to and received by, the secretary of the corporation at the corporation's principal executive offices not later than the December 31 immediately preceding the annual meeting.

Section 3.14   Business Introduced by Stockholders at Annual Meetings. Where business introduced by a stockholder is not specified in the notice of annual meeting, then (in addition to any other applicable requirements) for business to be properly introduced by a stockholder at an annual meeting of stockholders, the stockholder must have given timely notice thereof in writing to the secretary of the corporation. To be timely, a stockholder's notice must be delivered to, or mailed to and received by, the secretary of the corporation in the same manner and subject to the same time requirements provided in Section 3.13 of these Bylaws for stockholder notice of nominations to the Board of Directors. A stockholder's notice must set forth, as to each matter the stockholder proposes to bring before the meeting, (a) a brief description of the business desired to be brought before the meeting and the reasons for conducting such business at the meeting, (b) the name and record address of the stockholder proposing such business, (c) the class, series and number of shares of the corporation's stock which are beneficially owned by the stockholder, and (d) any material interest of the stockholder in such business.

BYLAWS OF A.I.A., INC. - P. 5

RJT-AIA 1061

**Exhibit - 4, p. 5**
**19-ER-4734**

Section 3.15   Informal Action by Stockholder.   Any action required or permitted to be taken at a meeting of the stockholders may be taken without a meeting if a consent in writing, setting for the action so taken, shall be signed by all of the stockholders entitled to vote with respect to the subject matter thereof.   Such consent shall have the same effect as a unanimous vote of stockholders. (Idaho Code Section 30-1-145).

## ARTICLE IV

## DIRECTORS

Section 4.1   Number; Qualifications.   The number of directors presently authorized is three (3).   The authorized number of directors of the corporation shall be fixed, and may be increased or decreased, from time to time by the Board of Directors either by a resolution or a bylaw duly adopted by the Board of Directors.   No decrease in the number of directors constituting the Board of Directors shall shorten the term of any incumbent director.   Directors need not be residents of the State of Idaho or stockholders unless so required by the Articles of Incorporation. If for any cause the directors shall not have been elected at an annual meeting, they may be elected as soon thereafter as convenient at a special meeting of the stockholders called for that purpose in the manner provided by law or in these Bylaws. (Idaho Code Sections 30-1-28, 30-1-35 and 30-1-36).

Section 4.2   Term.   Each director shall serve until the next annual meeting of stockholders and his successors is duly elected and qualified, or until his death, resignation or removal. (Idaho Code Section 30-1-36).

Section 4.3   Newly Created Directorships and Vacancies.   Newly created directorships resulting from any increase in the number of directors and any vacancies on the Board of Directors resulting from death, resignation, disqualification, removal or other cause shall be filled by the affirmative vote of a majority of the remaining directors then in office (and not by stockholders), even if less than a quorum of the authorized Board of Directors.   A director elected to fill a vacancy shall be elected for the unexpired term of his predecessor in office.   The stockholders may elect his successor at the next annual meeting of stockholders or at any special meeting duly called for that purpose and held prior to the next annual meeting.

Section 4.4   Powers.   All corporate powers shall be exercised by and under the authority of, and the business and affairs of the corporation shall be managed under the direction of, the Board of Directors except as may otherwise be provided in the Idaho Business Corporation Act or the Articles of Incorporation. (Idaho Code Section 30-1-35).

Section 4.5   Resignation.   Any director may resign at any time by delivering his written resignation to the secretary, such resignation to specify whether it will be effective at a particular time, upon receipt by the secretary or at the pleasure of the Board of Directors. If no such specification is made, it shall be deemed effective at the pleasure of the Board of Directors.   When one or more directors shall resign from the Board of Directors, effective at a future date, a majority of the directors then in office, including those who have so

BYLAWS OF A.I.A., INC. - P. 6

RJT-AIA 1062

**Exhibit - 4, p. 6**
**19-ER-4735**

resigned, shall have power to fill such vacancy or vacancies, the vote thereon to take effect when such resignation or resignations shall become effective; and, subject to Section 4.3, each director so chosen shall hold office for the unexpired portion of the term of the director whose place shall be vacated and until his successor shall have been duly elected and qualified.

Section 4.6   Removal.   At a special meeting of stockholders called for the purpose in the manner hereinabove provided, the entire Board of Directors, or any individual director, may be removed from office, with or without cause, and one or more new directors may be elected, by a vote of stockholders holding a majority of the outstanding shares then entitled to vote at an election of directors.   If less than the entire Board of Directors is to be removed, no one director may be removed if the votes cast against his removal would be sufficient to elect him if then cumulatively voted at an election of the entire Board of Directors.   The holders of the corporation's Stated Value Preferred Stock being entitled to elect one (1) director by the provisions of the Articles of Incorporation, the provisions of this Section 4.6 shall apply, in respect to the removal of the director so elected, to the vote of the holders of the outstanding shares of Stated Value Preferred Stock and not to the vote of the outstanding shares as a whole. (Idaho Code Section 30-1-39).

Section 4.7   Meetings.

(a)   Annual Meetings.   The annual meeting of the Board of Directors shall be held immediately after the annual meeting of stockholders and at the place where such meeting is held.   No notice of an annual meeting of the Board of Directors shall be necessary; and such meeting shall be held for the purpose of electing officers and transacting such other business as may lawfully come before it. (Idaho Code Section 30-1-43).

(b)   Other Meetings.   Regular and special meetings of the Board of Directors, or of any committee designated by the Board, may be held at any place within or without the State of Idaho. (Idaho Code Section 30-1-43).

(c)   Telephone Meetings.   Any member of the Board of Directors, or of any committee thereof, may participate in a meeting by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other at the same time; and participation in a meeting by such means shall constitute presence in person at such meeting. (Idaho Code Section 30-1-43).

(d)   Notice of Meetings.   Notice of the time and place of any regular or special meeting of the Board of Directors shall be given at least three (3) days previously thereto by written notice delivered personally or mailed to each director at his business address, or by telegram; provided that the Board of Directors may provide, by resolution, the time and place, either within or without the State of Idaho, for the holding of regular meetings without notice other than such resolution.   Any director may waive notice of any meeting, in writing, at any time before or after the meeting.   The attendance of a director at a meeting shall constitute a waiver of notice of such meeting, except where a director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or

BYLAWS OF A.I.A., INC. - P. 7

RJT-AIA 1063

Exhibit - 4, p. 7
**19-ER-4736**

convened.    Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board of Directors need be specified in the notice or waiver of notice of such meeting. (Idaho Code Section 30-1-43).

(e)   Waiver of Notice; Consent.   The transaction of all business at any meeting of the Board of Directors, or any committee thereof, however called or noticed, or wherever held, shall be as valid as though taken at a meeting duly held after regular call and notice, if a quorum is present and if, either before or after the meeting, each of the directors not present signs a written waiver of notice, or a consent to holding such meeting, or an approval of the minutes thereof.    All such waivers, consents or approvals shall be filed with the corporate records or made a part of the minutes of the meeting.  (Idaho Code Section 30-1-43, 30-1-144).

Section 4.8  Quorum and Voting.

(a)   Quorum.   A majority of the number of directors fixed by or in the matter provided in Section 4.1 shall constitute a quorum for the transaction of business at any meeting of the Board of Directors.   If less than such majority is present at any meeting, a majority of the directors present may adjourn the meeting from time to time until the time fixed for the next regular meeting of the Board of Directors, without further notice other than by announcement at the meeting. (Idaho Code Section 30-1-40).

(b)   Majority Vote.   At each meeting of the Board of Directors at which a quorum is present, all questions and business shall be determined by a vote of a majority of the directors present; and the act of the majority of the directors present shall be the act of the Board of Directors, unless a different vote is required by law, the Articles of Incorporation or these Bylaws. (Idaho Code Section 30-1-40).

(c)   Presumption of Assent.   A director of the corporation who is present at a meeting of the Board of Directors (or any committee thereof) at which action on any corporate matter is taken shall be presumed to have assented to the action taken unless his dissent shall be entered in the minutes of the meeting or unless he shall file his written dissent to such action with the person acting as the secretary of the meeting before the adjournment thereof or shall forward such dissent by registered mail to the secretary of the corporation within three (3) days after the adjournment of the meeting.   Such right to dissent shall not apply to a director who voted in favor of such action.   (Idaho Code Section 30-1-35).

Section 4.9   Action Without a Meeting.   Unless otherwise restricted by the Articles of Incorporation or these Bylaws, any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting, if a consent in writing, setting forth the action so taken, is signed by all members of the Board of Directors or of the committee, as the case may be. (Idaho Code Section 30-1-44).

Section 4.10   Fees and Compensation.   By resolution of the Board of Directors, a fixed fee or salary payable in cash or the corporation's stock or any combination thereof, with or without expenses of attendance, may be allowed for

BYLAWS OF A.I.A., INC. - P. 8

RJT-AIA 1064

serving on the Board of Directors and/or attendance at each meeting of the Board of Directors and at each meeting of any committee of the Board of Directors. Nothing herein contained shall be construed to preclude any director from serving the corporation in any other capacity as an officer, agent, consultant, employee, or otherwise and receiving compensation therefor. (Idaho Code Section 30-1-35).

Section 4.11  Performance of Duties. A director shall perform his duties as director, including his duties as a member of any committee of the Board of Directors on which he may serve, in good faith, in a manner he reasonably believes to be in the best interests of the corporation, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. In performing his duties, a director shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by:

(a)  One (1) or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented;

(b)  Counsel, public accountants or other persons as to matters which the director reasonably believes to be within such persons' professional or expert competence; or

(c)  A committee of the Board upon which he does not serve, duly designated in accordance wit a provision of the Articles of Incorporation or the Bylaws, as to matters within its designated authority, which committee the director reasonably believes to merit confidence; but he shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause such reliance to be unwarranted.

A person who so performs his duties shall have no liability by reason of being or having been a director of the corporation. (Idaho Code Sections 30-1-35, 30-1-42).

Section 4.12  Committees.

(a)  Executive Committee.  The Board of Directors may, by resolution adopted by a majority of the full Board of Directors, appoint an Executive Committee to consist of one (1) or more members of the Board of Directors. The Executive Committee, to the extent permitted by law and specifically granted by the Board of Directors, shall have and may exercise when the Board of Directors is not in session all powers and authority of the Board of Directors in the management of the business and affairs of the corporation, except such committee shall not have the power or authority to (i) declare dividends or distributions, (ii) approve or recommend to stockholders actions or proposals required by the Idaho Business Corporation Act to be approved by stockholders, (iii) designate candidates for the office of director, for purposes of proxy solicitation or otherwise, or fill vacancies on the Board of Directors or any committee thereof, (iv) amend the Bylaws, (v) approve a plan of merger not requiring stockholder approval, (vi) reduce earned or capital surplus, (vii)

BYLAWS OF A.I.A., INC. - P. 9

RJT-AIA 1065

authorize or approve the reacquisition of shares unless pursuant to a general formula or method specified by the Board of Directors, or (viii) authorize or approve the issuance or sale of, or any contract to issue or sell, shares or designate the terms of a series of a class of shares, provided that the Board of Directors, having acted regarding general authorization for the issuance or sale of shares, or any contract therefor, and, in the case of a series, the designation thereof, may, pursuant to a general formula or method specified by the Board by resolution or by adoption of a stock option or other plan, authorized a committee to fix the terms of any contract for the sale of the shares and to fix the terms upon which such shares may be issued or sold, including, without limitation, the price, the dividend rate, provisions for redemption, sinking fund, conversion, voting or preferential rights, and provisions for other features of a class of shares, or a series of a class of shares, with full power in such committee to adopt any final resolution setting forth all the terms thereof and to authorize the statement of the terms of a series for filing with the Secretary of State under the Idaho Business Corporation Act.  (Idaho Code Section 30-1-42).

(b) Other Committees.  The Board of Directors may, by resolution adopted by a majority of the full Board of Directors, from time to time appoint such other committees as may be permitted by law.  Such other committees appointed by the Board of Directors shall consist of one (1) or more members of the Board of Directors, and shall have such powers and perform such duties as may be prescribed by the resolution or resolutions creating such committees; but in no event shall such committee have the powers denied to the Executive Committee in Section 4.12(a). (Idaho Code Section 30-1-42).

(c) Terms.  The members of all committees of the Board of Directors shall serve at the pleasure of the Board of Directors.  The Board of Directors, subject to the provisions of subsections (a) or (b) of this Section 4.12, may at any time increase or decrease the number of members of a committee or terminate the existence of a committee.  The membership of a committee member shall terminate on the date of his death or voluntary resignation.  Any committee member may resign at any time by giving written notice to the president or secretary of the corporation.  The Board of Directors may at any time for any reason, with or without cause, remove any individual committee member; and the Board of Directors may fill any committee vacancy created by death, resignation, removal or increase in the number of members of the committee.  The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee; and, in addition, in the absence or disqualification of any member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not he or they constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in place of any such absent or disqualified member.

(d) Meetings.  Unless the Board of Directors shall otherwise provide, regular meetings of the Executive Committee or any other committee appointed pursuant to this Section 4.12 shall be held at such times and places as are determined by the Board of Directors, or by any such committee; and when notice thereof has been given to each member of such committee, no further

BYLAWS OF A.I.A., INC. - P. 10

RJT-AIA 1066

notice of such regular meetings need be given thereafter. Special meetings of any such committee may be held at any place which has been designated from time to time by resolution of such committee or by written consent of all members thereof, and may be called by any director who is a member of such committee, upon written notice to the members of such committee of the time and place of such special meeting given in the manner provided for the giving of written notice to members of the Board of Directors of the time and place of special meetings of the Board of Directors; provided that notice of a special meeting need not state the business proposed to be transacted at the meeting. Notice of any special meeting of any committee may be waived in writing at any time before or after the meeting and will be waived by any director by attendance thereat, except when the director attends such special meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Each committee shall elect a presiding officer from its members and may fix its own rules of procedure which shall not be inconsistent with these Bylaws. It shall keep regular minutes of its proceedings and report them to the Board of Directors for its information at the meeting thereof held next after the proceedings shall have been taken. A majority of the authorized number of members of any such committee shall constitute a quorum for the transaction of business; and the act of a majority of those present at any meeting at which a quorum is present shall be the act of such committee.

(c) **Responsibility.** Neither the designation of an Executive Committee or other committee, the delegation thereto of authority, nor action by such committee shall relieve the Board of Directors, or any member thereof, of any responsibility or duty imposed by law.

Section 4.13   **Organization.** At every meeting of the Board of Directors, the Chairman of the Board of Directors, or, if a chairman has not been appointed or is absent, the president, or if the president is absent, the most senior vice president, or, in the absence of any such officer, a chairman of the meeting chosen by a majority of the directors present, shall preside over the meeting. The secretary, or in his absence, an assistant secretary directed to do so by the president, shall act as secretary of the meeting and shall keep regular minutes of the proceedings of the Board of Directors.

Section 4.14   **Director Conflicts of Interest.** No contract or other transaction between the corporation and one or more of its directors or any other corporation, firm, association or entity in which one or more of its directors are directors or officers or are financially interested, shall be either void or voidable because of such relationship or interest or because such director or directors are present at the meeting of the Board of Directors or a committee thereof which authorizes, approves or ratifies such contract or transaction or because his or their votes are counted for such purposes, if:

(a) the fact of such relationship or interest is disclosed or known to the Board of Directors or committee which authorizes, approves or ratifies the contract or transaction by a vote or consent sufficient for the purpose without counting the votes or consents of such interested directors; or

BYLAWS OF A.I.A., INC. - P. 11

RJT-AIA 1067

(b) the fact of such relationship or interest is disclosed or known to the shareholders entitled to vote and they authorize, approve or ratify such contract or transaction by vote or written consent, in which vote or consent such interested directors may participate to the extent that they are also shareholders; or

(c) the contract or transaction is fair and reasonable to the corporation and the fact of such relationship or interest is fully and fairly disclosed or known to the corporation.

Common or interested directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors or a committee thereof which authorizes, approves or ratifies such contract or transaction.

## ARTICLE V

## OFFICERS

Section 5.1   Officers Designated.   The officers of the corporation consist of a president, one or more vice presidents (the number thereof to be determined by the Board of Directors), a secretary, and a treasurer, each of whom shall be elected by the Board of Directors.   The order of seniority of vice presidents shall be the order of their nomination, unless otherwise determined by the Board of Directors.   Such other officers and assistant officers as may be deemed necessary may be elected or appointed by the Board of Directors.   Any two or more offices may be held by the same person, except the offices of president and secretary.   (Idaho Code Section 30-1-50).

Section 5.2   Tenure and Duties of Officers.

(a)   Term of Office.   All officers shall hold office at the pleasure of the Board of Directors and until their successors shall have been duly elected and qualified, or until their resignation or removal.   If the office of any officer becomes vacant for any reason, the vacancy may be filled by the Board of Directors. (Idaho Code Section 30-1-50).

(b)   The President.   The president shall be the principal executive officer of the corporation and, subject to the control of the Board of Directors, shall in general supervise and control all of the business and affairs of the corporation.   He shall, when present, preside at all meetings of the stockholders and of the Board of Directors.   He may sign, with the secretary or any other proper officer of the corporation thereunto authorized by the Board of Directors, certificates for shares of the corporation, any deeds, mortgages, bonds, contracts, or other instruments which the Board of Directors has authorized to be executed, except in cases where the signing and execution thereof shall be expressly delegated by the Board of Directors or by these Bylaws to some other officer or agent of the corporation, or shall be required by law to be otherwise signed or executed; and in general the president shall perform all duties commonly incident to the office of president and such other duties as may be prescribed by the Board of Directors from time to time.

BYLAWS OF A.I.A., INC. - P. 12

RJT-AIA 1068

(c)   The Vice President.  In the absence of the president or in the event of his death, inability or refusal to act, the vice president (or in the event there is more than one vice president, the vice presidents in the order designated at the time of their election, or in the absence of any designation, then in the order of their election) shall perform the duties of the president and, when so acting, shall have all the powers of and be subject to all the restrictions upon the president.  Any vice president may sign, with the secretary or an assistant secretary, certificates for shares of the corporation; and the vice president shall perform other duties commonly incident to the office of vice president and such other duties as from time to time may be assigned to him by the president or by the Board of Directors.

(d)   The Secretary.  The secretary shall: (a) attend all meetings and keep the minutes of the proceedings of the stockholders and of the Board of Directors in one or more books provided for that purpose; (b) see that all notices are duly given in accordance wit the provisions of these Bylaws or as required by law; (c) be custodian of the corporate records and of the seal of the corporation and see that the seal of the corporation is affixed to all documents the execution of which on behalf of the corporation under its seal is duly authorized; (d) keep a register of the post office address of each shareholder which shall be furnished to the secretary by such shareholder; (e) sign, with he president, or a vice president, certificates for shares of the corporation, the issuance of which shall have been authorized by resolution of the Board of Directors; (f) have general charge of the stock transfer books of the corporation; and (g) in general perform all duties commonly incident to the office of secretary and such other duties as from time to time may be assigned to him by the president or by the Board of Directors.

(e)   The Treasurer.  The treasurer shall: (a) have charge and custody of and be responsible for all funds and securities of the corporation; (b) receive and give receipts for monies due and payable to the corporation from any source whatsoever, and deposit all such monies in the name of the corporation in such banks, trust companies or other depositories as shall be selected in accordance with the provisions of Article VI of these Bylaws; and (c) in general perform all of the duties commonly incident to the office of treasurer and such other duties as from time to time may be assigned to him by the president or by the Board of Directors.  If required by the Board of Directors, the treasurer shall give a bond for the faithful discharge of his duties in such sum and with such surety or sureties as the Board of Directors shall determine.

(f)   Assistant Secretaries and Assistant Treasurers.  The assistant secretaries, when authorized by the Board of Directors, may sign with the president or a vice president certificates for shares of the corporation the issuance of which shall have been authorized by a resolution of the Board of Directors.  The assistant treasurers shall respectively, if required by the Board of Directors, give bonds for the faithful discharge of their duties in such sums and with such sureties as the Board of Director shall determine.  The assistant secretaries and assistant treasurers, in general, shall perform such duties as shall be assigned to them by the secretary or the treasurer, or by the president or the Board of Directors.

BYLAWS OF A.I.A., INC. - P. 13

RJT-AIA 1069

Section 5.3   Resignations.   Any officer may resign at any time by giving written notice to the Board of Directors or to the president or to the secretary. Any such resignation shall be effective when received by the person or persons to whom such notice is given, unless a later time is specified therein, in which event the resignation shall become effective at such later time.   Unless otherwise specified in such notice, the acceptance of any such resignation shall not be necessary to make it effective.

Section 5.4   Removal.   Any officer or agent may be removed by the Board of Directors whenever, in its judgment, the best interests of the corporation will be served thereby; but such removal shall be without prejudice to the contract rights, if any, of the person so removed.   Election or appointment of an officer or agent shall not of itself create contracts rights. (Idaho Code Section 30-1-51).

Section 5.5   Compensation.   The compensation of the officers shall be fixed from time to time by the Board of Directors.   No officer shall be prevented from receiving such compensation by reason of the fact that such officer is also a director of the corporation.

## ARTICLE VI

### EXECUTION OF CORPORATE INSTRUMENTS AND VOTING OF SECURITIES OWNED BY THE CORPORATION

Section 6.1   Execution of Corporate Instruments.   The Board of Directors may, in its discretion, determine the method and designate the signatory officer or officers, or other person or persons, to execute on behalf of the corporation any corporate instrument or document, or to sign on behalf of the corporation the corporate name without limitation, or to enter into contracts on behalf of the corporation, except where otherwise provided by law or these Bylaws; and such execution or signature shall be binding upon the corporation.   Authorization granted to any person hereunder may be general or confined to specific instances.

Unless otherwise specifically determined by the Board of Directors or otherwise required by law, promissory notes, deeds of trust, mortgages and other evidences of indebtedness of the corporation, and certificates of shares of stock owned by the corporation, shall be executed, signed or endorsed by the president or any vice president, and by the secretary or treasurer or any assistant secretary or assistant treasurer.   All other instruments and documents requiring the corporate signature may be executed as aforesaid or in such manner as may be directed by the Board of Directors.

6.2   Loans.   No loan shall be contracted on behalf of the corporation and no evidence of indebtedness shall be issued in its name unless authorized by resolution of the Board of Directors.   Such authorization may be general or confined to specific instances.

6.3   Deposits and Checks.   All funds of the corporation not otherwise employed shall be deposited from time to time to the credit of the corporation in such banks, trust companies or other depositories as the Board of Directors

BYLAWS OF A.I.A., INC. - P. 14

RJT-AIA 1070

may select.  All checks and drafts drawn on banks or other depositaries on funds to the credit of the corporation or in special accounts of the corporation shall be signed by such person or persons as the Board of Directors shall authorize to do so.  Such authorization may be general or confined to specific instances.

Section 6.4  Voting of Securities Owned by the Corporation.  All stock and other securities of other corporations owned or held by the corporation for itself, or for other parties in any capacity, shall be voted, and all proxies with respect thereto shall be executed, by the person authorized to do so by resolution of the Board of Directors, or, in the absence of such authorization, by the president or any vice president.

## ARTICLE VII

### SHARES OF STOCK

Section 7.1  Form and Execution of Certificates.  Certificates representing shares of the corporation shall be in such form as shall be determined by the Board of Directors.  Such certificates shall be signed by the president or a vice president and by the secretary or an assistant secretary and may be sealed with the corporate seal or a facsimile thereof.  The signatures of such officers upon a certificate may be facsimiles if the certificate is manually signed on behalf of a transfer agent or a registrar, other than the corporation itself or one of its employees.  In case any officer, transfer agent, or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the corporation with the same effect as if he were such officer, transfer agent or registrar at the date of issue.  (Idaho Code Section 30-1-23).

Section 7.2  Lost Certificates.  The corporation may issue a new certificate of stock in place of any certificate theretofore issued by the corporation alleged to have been lost, stolen, destroyed or mutilated; and the corporation may require the owner of such lost, stolen, destroyed or mutilated certificate, or his legal representative, to give the corporation a bond sufficient to indemnify it against any claim that may be made against the corporation on account of the alleged loss, theft, destruction or mutilation of any such certificate or the issuance of such new certificate.

Section 7.3  Transfers.  Each certificate for shares shall be consecutively numbered or otherwise identified.  The name and address of the person to whom the shares represented thereby are issued, with the number of shares and date of issue, shall be entered on the stock transfer books of the corporation.  All certificates surrendered to the corporation for transfer shall be cancelled; and, except as provided in Section 7.2, no new certificate shall be issued until the former certificate for a like number of shares shall have been surrendered and cancelled.  Transfer of record of shares of stock of the corporation shall be made only on the stock transfer books of the corporation by the holder of record thereof or by his legal representative, who shall furnish proper evidence of authority to transfer, or by his attorney thereunto authorized by power of attorney duly executed and filed with the secretary of the corporation, and on

BYLAWS OF A.I.A., INC. - P. 15

RJT-AIA 1071

surrender for cancellation of a properly endorsed certificate or certificates for a like number of shares.

Section 7.4   Fixing Record Dates.   In order that the corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or to express consent to corporate action in writing without a meeting, or to receive payment of any dividend or other distribution or allotment of any rights or to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board of Directors may provide that the stock transfer books shall be closed for a stated period but not to exceed, in any case, fifty (50) days.   If the stock transfer books shall be closed for the purpose of determining stockholders entitled to notice of or to vote at a meeting of stockholders, such books shall be closed for at least ten (10) days immediately preceding such meeting.   In lieu of closing the stock transfer books, the Board of Directors may fix, in advance, a record date for any such determination of stockholders.   Such record date shall be not more than fifty (50) days and, in the case of a meeting of stockholders, not less than ten (10) days prior to the date on which the particular action, requiring such determination of stockholders, is to be taken. If the stock transfer books are not closed and no record date is fixed: (s) the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholder shall be at the close of business on the day on which notice is mailed, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held; (b) the record date for determining stockholders entitled to express consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is necessary, shall be the day on which the first written consent is expressed; and (c) the record date for determining stockholders for any other purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.   A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting. (Idaho Code Section 30-1-30).

Section 7.5   Registered Stockholders.   The corporation shall be entitled to recognize the exclusive right of a person registered in its books as the owner of shares to receive dividends and to vote as such owner, and shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person whether or not it shall have express or other notice thereof, except as otherwise provided by the laws of Idaho.

Section 7.6   Issuance, Transfer and Registration of Shares.   The Board of Directors may make such rules and regulations, not inconsistent with law or with these Bylaws, as it may deem advisable concerning the issuance, transfer and registration of certificates for shares of the capital stock of the corporation. The Board of Directors may appoint a transfer agent or registrar of transfers, or both, and may require all certificates for shares of the corporation to bear the signature of either or both.

BYLAWS OF A.I.A., INC. - P. 16

*RJT-AIA 1072*

## ARTICLE VIII

### OTHER SECURITIES OF THE CORPORATION

Section 8.1   Execution of Other Securities.   All bonds, debentures and other corporate securities of the corporation, other than stock certificates, may be signed by the president or any vice president, or such other person as may be authorized by the Board of Directors; and the corporate seal may be impressed thereon or a facsimile of such seal imprinted thereon and attested by the signature of the secretary or an assistant secretary; provided, however, that where any such bond, debenture or other corporate security shall be authenticated by the manual signature of a trustee under an indenture pursuant to which such bond, debenture or other corporate security shall be issued, the signatures of the persons signing and attesting the corporate seal on such bond, debenture or other corporate security may be the imprint facsimile of the signature of such persons.   Interest coupons appertaining to any such bond, debenture or other corporate security, authenticated by a trustee as aforesaid, shall be signed by the treasurer or an assistant treasurer of the corporation or such other person as may be authorized by the Board of Director, or be imprinted thereon the facsimile signature of such person.   In case any officer who shall have signed or attested any bond, debenture or other corporate security, or whose facsimile signature shall appear thereon or on any such interest coupon, shall have ceased to be such officer before the bond, debenture or other corporate security so signed or attested shall have been delivered, such bond, debenture or other corporate security nevertheless may be adopted by the corporation and issued and delivered as though the person who signed the same or whose facsimile signature shall have been used thereon had not ceased to be such officer of the corporation.

## ARTICLE IX

### DIVIDENDS

Section 9.1   Declaration and Payment of Dividends.   Dividends upon the capital stock of the corporation, subject to the provisions of the Articles of Incorporation, if any, may be declared by the Board of Director pursuant to law at any regular or special meeting.   Dividends may be paid by the corporation in cash, in property, or in shares of its capital stock, subject to the provisions of the Articles of Incorporation. (Idaho Code Section 30-1-45).

Section 9.2   Dividend Reserve.   Before payment of any dividend, there may be set aside out of any funds of the corporation available for dividends such sum or sums as the Board of Directors may from time to time, in its absolute discretion, think proper as a reserve or reserves to meet contingencies, or for equalizing dividends, or for repairing or maintaining any property of the corporation, or for such other purpose as the Board of Directors shall think conducive to the interests of the corporation; and the Board of Directors may modify or abolish any such reserve in the manner in which it was created.

BYLAWS OF A.I.A., INC. - P. 17

*RJT-AIA 1073*

## ARTICLE XI

### INDEMNIFICATION OF DIRECTORS, OFFICERS, EMPLOYEES AND OTHER AGENTS

**Section 11.1    Directors and Executive Officers**    The corporation shall indemnify the directors and executive officers of the corporation or another enterprise to the full extent permitted by the Idaho Business Corporation Act, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the corporation to provide broader indemnification rights than said Act permitted the corporation to provide prior to such amendment); provided, however, that the corporation may limit the extent of such indemnification by individual contracts with its directors an executive officers; and provided, further, that the corporation shall not be required to indemnify any director or executive officer in connection with any proceeding (or part thereof) initiated by such person or any proceeding by such person against the corporation or it directors, officers, employees or other agents unless (a) such indemnification is expressly required to be made by law; (b) the proceeding was authorized by the Board of Directors of the corporation or (c) such indemnification is provided by the corporation, in its sole discretion, pursuant to the powers vested in the corporation under the Idaho Business Corporation Act. (Idaho Code Section 30-1-5(a),(b)).

**Section 11.2    Other Officers, Employees and Agents.**    The corporation shall have the power to indemnify other officers, employees and other agents of the corporation or another enterprise as set forth in the Idaho Business Corporation Act. (Idaho Code Section 30-1-5(a),(b)).

**Section 11.3    Good Faith.**    For purposes of any determination under this Bylaw, a director, officer, employee or other agent of the corporation or another enterprise shall be deemed to have acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, to have had no reasonable cause to believe that his conduct was unlawful, if his action is based on the records or books of account of the corporation or another enterprise, or on information supplied or reports made to him by the officers of the corporation or another enterprise in the course of their duties, or on the advice of legal counsel for the corporation or another enterprise or on information or records given or reports made to the corporation or another enterprise by an independent certified public accountant or by an appraiser or other expert selected with reasonable care by the corporation or another enterprise. The provisions of this Section 11.3 shall not be deemed to be exclusive and/or to limit in any way the circumstances in which a person may be deemed to have met the applicable standard of conduct set forth by the Idaho Business Corporation Act. (Idaho Code Sections 30-1-5(a),(b); 30-1-35).

**Section 11.4    Another Enterprise.**    The term "another enterprise" as used in this Article XI shall mean any other corporation, partnership, joint venture, trust or other enterprise, including any employee benefit plan, of which a person is or was serving at the request of the corporation as a director, officer, employee or other agent. (Idaho Code Section 30-1-5(a),(b)).

BYLAWS OF A.I.A., INC. - P. 18

*RJT-AIA 1074*

Section 11.5   Expenses.   The corporation shall advance, prior to the final disposition of any proceeding, promptly following request therefor, all expenses incurred by any director, officer, or employee or other agent of the corporation or another enterprise in connection with such proceeding upon receipt of an undertaking by or on behalf of such person to repay said amounts if it should be determined ultimately that such person is not entitled to be indemnified under this Article XI or otherwise. (Idaho Code Section 30-1-5(e)).

Notwithstanding the foregoing, unless otherwise determined pursuant to Section 11.6, no advance shall be made by the corporation if a determination is reasonably and promptly made (a) by the Board of Directors by a majority vote of a quorum consisting of directors who were not parties to the proceeding, or (b) if such quorum is not obtainable or, even if obtainable, a quorum of disinterested directors so directs, by independent legal counsel in a written opinion that, based upon the facts known to the decision-making party at the time such determination is made, such person acted in bad faith or in a manner that such person did not believe to be in or not opposed to the best interests of the corporation, or, with respect to any criminal proceeding, such person believed or had reasonable cause to believe that his conduct was unlawful. (Idaho Code Section 30-1-5(d)).

Section 11.6   Enforcement.   Without the necessity of entering into an express contract, all rights to indemnification and advances under this Article XI shall be deemed to be contractual rights and to be effective to the same extent and as if provided for in a contract between the corporation and the person who serves as a director, officer, employee or other agent of the corporation or another enterprise at any time while this Article XI and relevant provisions of the Idaho Business Corporation Act and other applicable law, if any, are in effect.   Any right to indemnification or advances granted by this Article XI to any person shall be enforceable by or on behalf of the person holding such right in any court of competent jurisdiction if (a) the claim for indemnification or advances is denied, in whole or in part, or (b) no disposition of such claim is made within ninety (90 days of request therefor.   The claimant in such enforcement action, if successful in whole or in part, shall be entitled to be paid also the expense of prosecuting his claim.   It shall be a defense to any such action that the claimant has not met the standards of conduct which make it permissible under the Idaho Business Corporation Act for the corporation to indemnify the claimant for the amount claimed; but the burden of proving such defense shall be on the corporation.   Neither the failure of the corporation (including its Board of Directors, independent legal counsel or its stockholders) to have made a determination prior to the commencement of such action that indemnification of the claimant is proper in the circumstances because he has met the applicable standard of conduct set forth in the Idaho Business Corporation Act, nor an actual determination by the corporation (including its Board of Directors, independent legal counsel or its stockholders) that the claimant has not met such applicable standard of conduct, shall be a defense to the action or create a presumption that claimant has not met the applicable standard of conduct.

Section 11.7   Non-Exclusivity of Rights.   The rights conferred on any person by this Article XI shall not be exclusive of any other right to which such person may now or hereafter be entitled under any statute, provision of the

BYLAWS OF A.I.A., INC. - P. 19

RJT-AIA 1075

Articles of Incorporation, or Bylaws, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in his official capacity and as to action in another capacity while holding office. The corporation is specifically authorized to enter into individual contracts with any or all directors, officers, employees or other agents of the corporation or another enterprise respecting indemnification and advances, as provided by law. (Idaho Code Section 30-1-5(f)).

Section 11.8   Survival of Rights.   The rights conferred on any person by this Article XI shall continue as to a person who has ceased to be a director, officer, employee or other agent of the corporation or another enterprise and shall inure to the benefit of the heirs, executors and administrators such a person. (Idaho Code Section 30-1-5(i)).

Section 11.9   Amendments.   Any repeal or modification of this Article XI shall only be prospective and shall not affect the rights under this Article XI in effect at the time of the alleged occurrence of any action or omission to act that is the cause of any proceeding against any agent of the corporation or another enterprise.

Section 11.10   Savings Clause.   If this Article XI of the Bylaws or any portion hereof shall be invalidated on any ground by any court of competent jurisdiction, then the corporation shall nevertheless indemnify each agent to the full extent permitted by any applicable portion of this Article XI that shall not have been invalidated, or by any other applicable law.

## ARTICLE XII

## NOTICES

Section 12.1   Notice to Stockholders.   Whenever under any provision of these Bylaws notice is required to be given to any stockholder, it shall be given in writing, timely and duly deposited in the United States mail, postage prepaid, and addressed to his last known post office address as shown by the stock transfer books of the corporation or its transfer agent or to such other last known address of which the corporation may have notice. Such notice to any stockholder shall be deemed to be delivered when deposited in the United States mail in accordance with this Section 12.1. (Idaho Code Section 30-1-29).

Section 12.2   Notice to Directors.   Any notice required to be given to any director may be given by the method stated in Section 12.1, or by telegram, except that such notice other than one which is delivered personally shall be sent to such address as such director shall have filed in writing with the secretary, or, in the absence of such filing, to the last known post office address of such director. (Idaho Code Section 30-1-43)).

Section 12.3   Address Unknown.   If no address of a stockholder or director be known, notice may be sent to the office of the corporation required to be maintained pursuant to Section 1.1 hereof.

Section 12.4   Affidavit of Mailing.   An affidavit of mailing, executed by a duly authorized and competent employee of the corporation or its transfer agent

BYLAWS OF A.I.A., INC. - P. 20

RJT-AIA 1076

appointed with respect to the class of stock affected, specifying the name and address or the names and addresses of the stockholder or stockholders, or director or directors, to whom any such notice or notices was or were given, and the time and method of giving the same, shall be conclusive evidence of the statements therein contained.

Section 12.5    Time Notices Deemed Given.   All notices given by mail, as above provided, shall be deemed to have been given at the time of mailing; and all notices given by telegram shall be deemed to have been given at the sending time recorded by the telegraph company transmitting the notices.

Section 12.6    Methods of Notice.   It shall not be necessary that the same method of giving notice be employed in respect of all directors or shareholders: One permissible method may be employed in respect of any one or more directors or shareholders; and any other permissible method or methods may be employed in respect of any other or others.

Section 12.7    Failure to Receive Notice.   The period or limitation of time within which any stockholder may exercise any option or right, or enjoy any privilege or benefit, or be required to act, or within which any director may exercise any power or right, or enjoy any privilege, pursuant to any notice sent him in the manner above provided, shall not be affected or extended in any manner by the failure of such stockholder or such director to receive such notice.

Section 12.8    Notice to person with Whom Communication is Unlawful. Whenever notice is required to be given, under any provision of law or of the Articles of Incorporation or Bylaws of the corporation, to any person with whom communication is unlawful, the giving of such notice to such person shall not be required and there shall be no duty to apply to any governmental authority or agency for a license or permit to give such notice to such person.   Any action or meeting which shall be taken or held without notice to any such person with whom communication is unlawful shall have the same force and effect as if such notice had been duly given.   In the event that the action taken by the corporation is such as to require the filing of a certificate under any provision of the Idaho Business Corporation Act, the certificate shall state, if such is the fact and if notice is required, that notice was given to all persons entitled to receive notice except such persons with whom communications is unlawful.

Section 12.9    Waiver of Notice.   Whenever any notice is required to be given to any stockholder or director of the corporation under the provisions of these Bylaws or under the provisions of the Articles of Incorporation or under the provisions of the Idaho Business Corporation Act, a waiver thereof in writing signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice. (Idaho Code Section 30-1-144).

BYLAWS OF A.I.A., INC. - P. 21

RJT-AIA 1077

## ARTICLE XIII

### AMENDMENTS

Section 13.1   Amendments.   These Bylaws may be altered, amended or repealed and new Bylaws may be adopted by the Board of Directors or by the stockholders at any regular or special meeting.

## ARTICLE XIV

### LOANS TO DIRECTORS AND OTHERS

Section 14.1   Certain Corporate Loans and Guaranties.   The corporation may make loans of money or property to, or guarantee the obligations of, or otherwise use its credit to assist any officer or other employee of the corporation, its parent or a subsidiary, including any such person who is also a director of the corporation or its parent or any subsidiary, or adopt an employee benefit plan or plans authorizing such loan, guaranties or other assistance, upon the approval of the Board of Directors alone if the Board of Directors determines that such a loan or guaranty or plan may reasonably be expected to benefit the corporation.   In all other circumstances, the corporation shall not lend money or to use its credit to assist its directors without authorization in the particular case by its stockholders. (Idaho Code Section 30-1-47)).

## ARTICLE XV

### SALE OF STOCK

Section 15.1   Right of First Refusal.   No sale of stock shall be made by any stockholder or the heirs, executors, administrator or assigns of any stockholder to any person(s) or entity ("prospective purchaser"), except in pursuance of the following terms and conditions:

(a)   In the event any stockholder desires to sell his stock, or any portion thereof, to any prospective purchaser, he shall first submit to the stockholders of the corporation, reasonable written evidence of the agreement to purchase said stock by such third person and the price and complete terms agreed to be paid therefor.

(b)   In the event the remaining stockholders agree to purchase such stock at the same price and upon the same terms which the stockholder is to receive from said third party, then the stock shall be sold to the stockholders of the corporation in such proportionate amounts as their respective stock bears to the entire stock held by the stockholders of the corporation, exclusive of the shares owned by the selling stockholder, or in such proportion as such stockholders may agree.

(c)   In the event that any of the remaining stockholders do not desire to purchase such stock, then such stock shall be sold at the price aforesaid to such of the stockholders who may desire to purchase the same, and in the same proportion as above specified.

BYLAWS OF A.I.A., INC. - P. 22

*RJT-AIA 1078*

(d)   No stock shall be sold to any person other than the stockholders of the corporation until each of the stockholders shall have been afforded an opportunity to purchase such stock at the price and terms as aforesaid, and shall have declined to do so.

(e)   Notice in writing to the stockholders of the corporation of the desire of any stockholder to sell his stock shall be given by such stockholder; and, at the same time, reasonable evidence shall be furnished to the stockholders as to the price and terms as hereinbefore set forth.   Stockholders shall have thirty (30) days' time after the receipt of said notice within which to elect in writing to purchase such stock or to decline to do so.   If at the end of such thirty (30) day period all remaining stockholders have declined in writing, or have not taken any action, then the stockholder desiring to sell his stock shall sell such stock to the prospective purchaser named in the agreement to purchase such stock, and to that prospective purchaser only; and such stock shall be sold in precise accordance with the price and terms set forth in such agreement to purchase.   Satisfactory evidence of compliance with the terms of the foregoing restriction upon the transfer of stock of this corporation shall be submitted to the Board of Directors, and accepted by them, before any such transfer shall be effective.

Section 15.2   Stock Transfer Restrictions.   Each certificate of stock of the corporation shall have the following legends conspicuously typewritten or printed upon its face:

> "The stock represented by this certificate is not transferable unless first offered to the stockholders of the corporation in strict compliance with Article XV of the Bylaws of the corporation."

> "The securities represented hereby have not been registered under the Securities Act of 1933 or any State Securities Act.   Any transfer of such securities will be invalid unless a registration statement under said Act(s) is in effect as to such transfer or in the opinion of counsel for the company such registration is unnecessary in order for such transfer to comply with said Act(s)."

Section 15.3   Subchapter "S" Corporation.   If an election to be treated as an "S" Corporation under the Internal Revenue Code of 1986 or any amendment thereof ("Code") shall then be in effect, no shares of the corporation's stock may be sold to any person or entity which, at such time, would not be a qualified stockholder of an "S" Corporation under such Code.

The foregoing Bylaws of A.I.A., INC., an Idaho corporation, were adopted at the meeting of the Board of Directors of the corporation held the 5TH day of January 1988.

R. John Taylor, Secretary

BYLAWS OF A.I.A., INC. - P. 23

RJT-AIA 1079

**Exhibit - 4, p. 23**
**19-ER-4752**

*effective 4-10-89*
*ratified at 5-5-89 board*
*meeting*

## NEW RESTATED BYLAWS

### OF

### AIA SERVICES CORPORATION
(an Idaho corporation)

### ARTICLE I

### OFFICES

Section 1.1 **Registered Office.** The registered office of the corporation required by the Idaho Business Corporation Act to be maintained in the State of Idaho may, but need not be, identical with the principal office in the State of Idaho; and the address of the registered office may be changed from time to time by the Board of Directors or the President of the corporation. (Idaho Code Sections 30-1-12(a) and 30-1-13.)

Section 1.2 **Principal Office; Other Offices.** The corporation shall also have and maintain an office or principal place of business in Lewiston, Idaho or at such other place as may be fixed by the Board of Directors, and may also have offices at such other places, both within and without the State of Idaho, as the Board of Directors may from time to time determine or the business of the corporation may require.

### ARTICLE II

### CORPORATE SEAL

Section 2.1 **Corporate Seal.** The corporate seal shall consist of a die bearing the name of the corporation and the inscription, "Corporate Seal -- State of Idaho". The seal may be used by causing it or a facsimile thereof to be impressed or affixed or in any other manner reproduced. The seal may be altered at the pleasure of the Board of Directors. (Idaho Code Section 30-1-4(c)).

### ARTICLE III

### STOCKHOLDERS' MEETINGS

Section 3.1 **Place of Meetings.** The Board of Directors may designate any place, either within or without the State of Idaho, as the place of meeting for any annual meeting or for any special meeting of stockholders called by the Board of Directors. A waiver of notice signed

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 1

EX. NO. *125*
*J Taylor*
DATE *2-24-20*
ASSOCIATED
REPORTING & VIDEO

AIA0002563

EB-HT003661

by all stockholders entitled to vote at a meeting may designate any place, either within or without the State of Idaho, as the place for the holding of such meeting. If no designation is made, or if a special meeting be otherwise called, the place of meeting shall be the principal office of the corporation in the State of Idaho. (Idaho Code Section 30-1-28).

Section 3.2 **Annual Meetings.** The annual meeting of the stockholders of the corporation shall be held on the first Monday in the month of May each year at the hour of 10:00 o'clock a.m., or on such other date and at such other time which may from time to time be designated by the Board of Directors, for the purpose of electing directors and for the transaction of such other business as may properly come before the meeting. (Idaho Code Section 30-1-28).

Section 3.3 **Special Meetings.** Special meetings of the stockholders of the corporation may be called at any time, for any purpose or purposes, by the Board of Directors or by the holders of not less than one-fifth (1/5) of all outstanding shares of stock of the corporation entitled to vote at the meeting or by the president of the corporation. Special meetings of the stockholders of the corporation may not be called by any other person or persons. (Idaho Code Section 30-1-28).

Section 3.4 **Notice of Meetings.** Written notice stating the place, day and hour of the meeting and, in case of a special meeting, the purpose or purposes for which the meeting is called, shall, unless otherwise prescribed by statute, be delivered not less than ten nor more than fifty days before the date of the meeting, either personally or by mail, by or at the direction of the president, or the secretary, or the officer or other persons calling the meeting, to each stockholder of record entitled to vote at such meeting, or to each specified beneficial stockholder certified for the purpose of receiving such notice under Section 3.10. (Idaho Code Section 30-1-29).

Such notice of any meeting of stockholders may be waived in writing, signed by the person entitled to notice thereof, either before or after such meeting, and will be waived by any stockholder by his attendance thereat in person or by proxy, except when the stockholder attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Any stockholder so waiving notice of such meeting shall be bound by the proceedings of any such meeting in all respects as if due notice hereof had been given. (Idaho Code Section 30-1-144).

Section 3.5 Quorum. Except as otherwise provided in the Articles of Incorporation, a majority of the outstanding shares of the corporation entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of stockholders. Any shares, the voting of which at said meeting has been enjoined, or which for any reason cannot be lawfully voted at such meeting, shall not be counted to determine a quorum at such meeting. In the absence of a quorum any meeting of stockholders may be

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 2

AIA0002564

EB-HT003662

adjourned, from time to time, by vote of the holders of a majority of the shares represented thereat; but no other business shall be transacted at such meeting. The stockholders present at a duly organized and convened meeting where a quorum has been present can continue to transact business as a quorum until adjournment, notwithstanding the withdrawal of enough stockholders to leave less than a quorum. Except as otherwise provided by law, the Articles of Incorporation or these Bylaws, if a quorum is present, the affirmative vote of a majority of the shares represented at the meeting and entitled to vote on the subject matter shall be the act of the stockholders. (Idaho Code Section 30-1-32).

Section 3.6   Adjournment and Notice of Adjourned Meetings.   Any meeting of stockholders at which a quorum is present, whether annual or special, may be adjourned from time to time by the vote of a majority of the shares, the holders of which are present either in person or by proxy. When a meeting is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken.   At the adjourned meeting the corporation may transact any business which might have been transacted at the original meeting.   If the adjournment is for more than thirty (30) days, or if after the adjournment a new record date is fixed for the adjournment meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

Section 3.7   Proxies.   At all meetings of stockholders, a stockholder may vote either in person or by proxy executed in writing by the stockholder or by his duly authorized attorney-in-fact.   Such proxy shall be filed with the secretary of the corporation before or at the time of the meeting.   No proxy shall be valid after eleven (11) months from the date of its execution, unless otherwise provided in the proxy.   (Idaho Code Section 30-1-33(c)).

Section 3.8   Voting Rights.   Except as otherwise provided in the Articles of Incorporation, each outstanding share, regardless of class, entitled to vote shall be entitled to one vote upon each matter submitted to a vote at a meeting of stockholders.  Cumulative voting of shares shall not be permitted in the election of directors.   For the purpose of determining those stockholders entitled to vote in any meeting of the stockholders, except as otherwise provided by law, only persons in which names shares stand on the stock record of the corporation on the record date, as provided in Sections 3.11 and 7.4 of these Bylaws, shall be entitled to vote at any meeting of stockholders.   All elections of directors shall be by written ballot.

Section 3.9   Voting of Shares by Certain Holders.   Shares standing in the name of another corporation, domestic or foreign, may be voted by such officer, agent or proxy as the bylaws of such other corporation may prescribe or, in the absence of such provision, as the Board of Directors of such other corporation may determine.  (Idaho Code Section 30-1-22(e)).

Shares held by an administrator, executor, guardian or conservator

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 3

AIA0002565

EB-HT003663

may be voted by him, either in person or by proxy, without a transfer of such shares into his name.  Shares standing in the name of a trustee may be voted by him, either in person or by proxy; but no trustee shall be entitled to vote shares held by him without a transfer of such shares into his name.  (Idaho Code Section 30-1-33(f)).

Shares standing in the name of a receiver may be voted by such receiver; and shares held by or under the control of a receiver may be voted by such receiver without the transfer thereof into his name if authority so to do be contained in an appropriate order of the court by which such receiver was appointed.  (Idaho Code Section 30-1-33(g)).

A stockholder whose shares are pledged shall be entitled to vote such shares until the shares have been transferred into the name of the pledgee; and thereafter the pledgee shall be entitled to vote the shares so transferred unless the pledgor shall have obtained from the pledgee a proxy to vote or take other action thereon in accordance with law.  (Idaho Code Section 30-1-33(c)(3),(h)).

Neither treasury shares of its own stock held by the corporation, nor shares held by another corporation if a mahority of the shares entitled to vote for the elections of directors of such other corporation is held by the corporation, shall be voted at any meeting or counted in determining the total number of outstanding shares at any given time. (Idaho Code Section 30-1-33(b)).

Section 3.10  **Joint Owners of Stock.**  If shares or other securities having voting power stand of record in the names of two (2) or more persons, whether fiduciaries, members of a partnership, joint tenants, tenants in common, tenants by the entirety, or otherwise, or if two (2) or more persons have the same fiduciary relationship respecting the same shares, unless the Secretary is given written notice to the contrary and is furnished with a copy of the instrument or order appointing them or creating the relationship wherein it is so provided, their acts with respect to voting shall have the following effect:  (a) if only one votes, his act binds all; (b) if more than one votes, the act of the majority so voting binds all; (c) if more than one votes, but the vote is evenly split on any particular matter, each faction may vote the securities in question proportionally.  If the instrument filed with the secretary shows that any such tenancy is held in unequal interests, a majority or even-split for the purpose of this Section 3.10 shall be a majority or even-split interest.

The Board of Directors may adopt by resolution a procedure whereby a stockholder of the corporation may certify in writing to the corporation that all or a portion of the shares registered in the name of such stockholder are held for the account of a specified person or persons. The resolution shall set forth (a) the classification of stockholder who may certify, (b) the purpose or purposes for which the certification may be made, (c) the form of certification and information to be contained therein, (d) the number of days before or after any record date or date

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 4

AIA0002566

EB-HT003664

of closing of the stock transfer books, and (e) such other provisions with respect to the procedure as are deemed necessary or desirable. Upon receipt by the corporation of a certification complying with the procedure, the persons specified in the certification shall be deemed, for the purpose or purposes set forth in the certification, to be the holders of record of the number of shares specified in place of the shareholder making the certification. (Idaho Code Section 30-1-2(f)).

Section 3.11  List of Stockholders. The secretary shall make, at least ten (10) days before every meeting of stockholders, a complete record of the stockholders entitled to vote at such meeting or any adjournment thereof, arranged in alphabetical order and showing the addresses of each stockholder and the number of shares registered in the name of each stockholder. Such record shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours, for a period of at least ten (10) days prior to the meeting, either at a place within the city where the meeting is to be held, which place shall be specified in the notice of the meeting or, if not specified, at the place where the meeting is to be held. The list shall be produced and kept open at the time and place of meeting, and shall be subject to inspection by any stockholder during the whole time of the meeting for the purposes thereof. (Idaho Code Section 30-1-31).

Section 3.12  Organization. At every meeting of stockholders, the Chairman of the Board of Directors, or, if a Chairman has not been appointed or is absent, the president, or, if the president is absent, the most senior vice president present, or in the absence of any such officer, a chairman of the meeting chosen by a majority in interest of the stockholders entitled to vote, present in person or by proxy, shall act as chairman. The secretary or, in his absence, an assistant secretary directed to do so by the president, shall act as secretary of the meeting.

Section 3.13  Nomination of Directors. Nominations of persons for election to the Board of Directors of this corporation at the annual meeting of stockholders may be made at such meeting by or at the direction of the Board of Directors, by any nominating committee or person appointed by the Board of Directors, or by any stockholder of the corporation entitled to vote for the election of directors at the meeting who timely complies with the notice procedures herein set forth. To be timely, a stockholder's notice must be delivered to, or mailed to and received by, the secretary of the corporation at the corporation's principal executive offices not later than the December 31 immediately preceding the annual meeting.

Section 3.14  Business Introduced by Stockholders at Annual Meetings. Where business introduced by a stockholder is not specified in the notice of annual meeting, then (in addition to any other applicable requirements) for business to be properly introduced by a stockholder at an annual meeting of stockholders, the stockholder must have given timely notice thereof in writing to the secretary of the corporation. To be timely, a stockholder's notice must be delivered to, or mailed to and

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 5

AIA0002567

EB-HT003665

received by, the secretary of the corporation in the same manner and subject to the same time requirements provided in Section 3.13 of these Bylaws for stockholder notice of nominations to the Board of Directors. A stockholder's notice must set forth, as to each matter the stockholder proposes to bring before the meeting, (a) a brief description of the business desired to be brought before the meeting and the reasons for conducting such business at the meeting, (b) the name and record address of the stockholder proposing such business, (c) the class, series and number of shares of the corporation's stock which are beneficially owned by the stockholder, and (d) any material interest of the stockholder in such business.

Section 3.15  Informal Action by Stockholder.  Any action required or permitted to be taken at a meeting of the stockholders may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by all of the stockholders entitled to vote with respect to the subject matter thereof.  Such consent shall have the same effect as a unanimous vote of stockholders.  (Idaho Code Section 30-1-145).

## ARTICLE IV

## DIRECTORS

Section 4.1  Number; Qualifications.  The number of directors presently authorized is six (6).  The authorized number of directors of the corporation shall be fixed, and may be increased to as many as nine or decreased to as few as one, from time to time by the Board of Directors either by a resolution or a bylaw duly adopted by the Board of Directors. No decrease in the number of directors constituting the Board of Directors shall shorten the term of any incumbent director.  Directors need not be residents of the State of Idaho or stockholders unless so required by the Articles of Incorporation.  If for any cause the directors shall not have been elected at an annual meeting, they may be elected as soon thereafter as convenient at a special meeting of the stockholders called for that purpose in the manner provided by law or in these Bylaws.  (Idaho Code Sections 30-1-28, 30-1-35 and 30-1-36).

Section 4.2  Term.  Each director shall serve until the next annual meeting of stockholders and his successor is duly elected and qualified, or until his death, resignation or removal.  (Idaho Code Section 30-1-36).

Section 4.3  Newly created Directorships and Vacancies.  Newly created directorships resulting from any increase in the number of directors and any vacancies on the Board of Directors resulting from death, resignation, disqualification, removal or other cause shall be filled by the affirmative vote of a majority of the remaining directors then in office (and not by stockholders), even if less than a quorum of the authorized Board of Directors.  A director elected to fill a vacancy shall be elected for the unexpired term of his predecessor in office.  The stockholders may elect his successor at the next annual meeting of

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 6

AIA0002568

EB-HT003666

stockholders or at any special meeting duly called for that purpose and held prior to the next annual meeting.

Section 4.4  Powers.  All corporate powers shall be exercised by and under the authority of, and the business and affairs of the corporation shall be managed under the direction of, the Board of Directors except as may otherwise be provided in the Idaho Business Corporation Act or the Articles of Incorporation.  (Idaho Code Section 30-1-35).

Section 4.5  Resignation.  Any director may resign at any time by delivering his written resignation to the secretary, such resignation to specify whether it will be effective at a particular time, upon receipt by the secretary or at the pleasure of the Board of Directors.  If no such specification is made, it shall be deemed effective at the pleasure of the Board of Directors.  When one or more directors shall resign from the Board of Directors, effective at a future date, a majority of the directors then in office, including those who have so resigned, shall have power to fill such vacancy or vacancies, the vote thereon to take effect when such resignation or resignations shall become effective; and, subject to Section 4.3, each director so chosen shall hold office for the unexpired portion of the terms of the director whose place shall be vacated and until his successor shall have been duly elected and qualified.

Section 4.6  Removal.  At a special meeting of stockholders called for the purpose in the manner hereinabove provided, the entire Board of Directors, or any individual director, may be removed from office, with or without cause, and one or more new directors may be elected, by a vote of stockholders holding a majority of the outstanding shares then entitled to vote at an election of directors.  The holders of the corporation's Stated Value Preferred Stock being entitled to elect one (1) director by the provisions of the Articles of Incorporation, the provisions of this Section 4.6 shall apply, in respect to the removal of the director so elected, to the vote of the holders of the outstanding shares of Stated Value Preferred Stock and not to the vote of the outstanding shares as a whole.  (Idaho Code Section 30-39.)

Section 4.7  Meetings.

(a)  Annual Meetings.  The annual meeting of the Board of Directors shall be held immediately after the annual meeting of stockholders and at the place where such meeting is held.  No notice of an annual meeting of the Board of Directors shall be necessary; and such meeting shall be held for the purpose of electing officers and transacting such other business as may lawfully come before it.  (Idaho Code Section 30-1-43).

(b)  Other Meetings.  Regular and special meetings of the Board of Directors, or of any committee designated by the Board, may be held at any place within or without the State of Idaho  (Idaho Code Section 30-1-43).

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 7

AIA0002569

EB-HT003667

(c) **Telephone Meetings.** Any member of the Board of Directors, or of any committee thereof, may participate in a meeting by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other at the same time; and participation in a meeting by such means shall constitute presence in person at such meeting. (Idaho Code 30-1-43).

(d) **Notice of Meetings.** Notice of the time and place of any regular or special meeting of the Board of Directors shall be given at least three (3) days previously thereto by written notice delivered personally or mailed to each director at his business address, or by telegram; provided that the Board of Directors may provide, by resolution, the time and place, either within or without the State of Idaho, for the holding of regular meetings without notice other than such resolution. Any director may waive notice of any meeting, in writing, at any time before or after the meeting. The attendance of a director at a meeting shall constitute a waiver of notice of such meeting, except where a director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board of Directors need be specified in the notice or waiver of notice of such meeting. (Idaho Code Section 30-1-43).

(e) **Waiver of Notice; Consent.** The transaction of all business at any meeting of the Board of Directors, or any committee thereof, however called or noticed, or wherever held, shall be as valid as though taken at a meeting duly held after regular call and notice, if a quorum is present and if, either before or after the meeting, each of the directors not present signs a written waiver of notice, or a consent to holding such meeting, or an approval of the minutes thereof. All such waivers, consents or approvals shall be filed with the corporate records or made a part of the minutes of the meeting. (Idaho Code Section 30-1-43, 30-1-144).

Section 4.8 **Quorum and Voting.**

(a) **Quorum.** A majority of the number of directors fixed by or in the manner provided in Section 4.1 shall constitute a quorum for the transaction of business at any meeting of the Board of Directors. If less than such majority is present at any meeting, a majority of the directors present may adjourn the meeting from time to time until the time fixed for the next regular meeting of the Board of Directors, without further notice other than by announcement at the meeting. (Idaho Code Section 39-1-40).

(b) **Majority Vote.** At each meeting of the Board of Directors at which a quorum is present, all questions and business shall be determined by a vote of a majority of the directors present; and the act of the majority of the directors present shall be the act of the Board of Directors, unless a different vote is required by law, the Articles of

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 8

AIA0002570

EB-HT003668

Incorporation or these Bylaws.  (Idaho Code Section 30-1-40).

(c) **Presumption of Assent.**  A director of the corporation who is present at a meeting of the Board of Directors (or any committee thereof) at which action on any corporate matter is taken shall be presumed to have assented to the action taken unless his dissent shall be entered in the minutes of the meeting or unless he shall file his written dissent to such action with the person acting as the secretary of the meeting before the adjournment thereof or shall forward such dissent by registered mail to the secretary of the corporation within three (3) days after the adjournment of the meeting.  Such right to dissent shall not apply to a director who voted in favor of such action.  (Idaho Code Section 30-1-35).

Section 4.9  **Action Without a Meeting.**  Unless otherwise restricted by the Articles of Incorporation or these Bylaws, any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting, if a consent in writing, setting forth the action so taken is signed by all members of the Board of Directors or of the committee, as the case may be.  (Idaho Code Section 30-1-44).

Section 4.10  **Fees and Compensation.**  By resolution of the Board of Directors, a fixed fee or salary payable in cash or the corporation's stock or any combination thereof, with or without expenses or attendance, may be allowed for serving on the Board of Directors and/or attendance at each meeting of the Board of Directors and at each meeting of any committee of the Board of Directors.  Noting herein contained shall be construed to preclude any director from serving the corporation in any other capacity as an officer, agent, consultant, employee, or otherwise and receiving compensation therefor.  (Idaho Code Section 30-1-35).

Section 4.11  **Performance of Duties.**  A director shall perform his duties as director, including his duties as a member of any committee of the Board of Directors on which he may serve, in good faith, in a manner he reasonably believes to be in the best interests of the corporation, and with such care as an ordinarily prudent person in a like position would use under similar circumstances.  In performing his duties, a director shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by:

(a)  One (1) or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented;

(b)  Counsel, public accountants or other persons as to matters which the director reasonably believes to be within such persons' professional or expert competence; or

(c)  A committee of the Board upon which he does not serve,

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 9

AIA0002571

EB-HT003669

duly designated in accordance with a provision of the Articles of Incorporation or the Bylaws, as to matters within its designated authority, which committee the director reasonably believes to merit confidence; but he shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause such reliance to be unwarranted.

A person who so performs his duties shall have no liability by reason of being or having been a director of the corporation. (Idaho Code Sections 30-1-35, 30-1-42).

Section 4.12  Committees.

(a)  Executive Committee.  The Board of Directors may, by resolution adopted by a majority of the full Board of Directors, appoint an Executive Committee to consist of one (1) or more members of the Board of Directors.  The Executive Committee, to the extent permitted by law and specifically granted by the Board of Directors, shall have and may exercise when the Board of Directors is not in session all powers and authority of the Board of Directors in the management of the business and affairs of the corporation, except such committee shall not have the power or authority to (i) declare dividends or distributions, (ii) approve or recommend to stockholders actions or proposals required by the Idaho Business Corporation Act to be approved by stockholders, (iii) designate candidates for the office of director, for purposes of proxy solicitation or otherwise, or fill vacancies on the Board of Directors or any committee thereof, (iv) amend the Bylaws, (v) approve a plan of merger not requiring stockholder approval, (vi) reduce earned or capital surplus, (vii) authorize or approve the reacquisition of shares unless pursuant to a general formula or method specified by the Board of Directors, or (viii) authorize or approve the issuance or sale of, or ny contract to issue or sell, shares or designate the terms of a series of a class of shares, provided that the Board of Directors, having acted regarding general authorization for the issuance or sale of shares, or any contract therefor, and, in the case of a series, the designation thereof, may, pursuant to a general formula or method specified by the Board by resolution or by adoption of a stock option or other plan, authorized a committee to fix the terms of any contract for the sale of the shares and to fix the terms upon which such shares may be issued or sold, including, without limitation, the price, the dividend rate, provisions for redemption, sinking fund, conversion, voting or preferential rights, and provisions for other features of a class of shares, or a series of a class of shares, with full power in such committee to adopt any final resolution setting forth all the terms thereof and to authorize the statement of the terms of a series for filing with the Secretary of State under the Idaho Business Corporation Act.  (Idaho Code Section 30-1-42).

(b)  Other Committees.  The Board of Directors may, by resolution adopted by a majority of the full Board of Directors, from time to time appoint such other committees as may be permitted by law.  Such other committees appointed by the Board of Directors shall consist of one

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 10

AIA0002572

EB-HT003670

(1) or more members of the Board of Directors, and shall have such powers and perform such duties as may be prescribed by the resolution or resolutions creating such committees; but in no event shall such committee have the powers denied to the Executive Committee in Section 4.12(a). (Idaho Code Section 30-1-42).

(c) **Terms.** The members of all committees of the Board of Directors shall serve at the pleasure of the Board of Directors. The Board of Directors, subject to the provisions of subsections (a) or (b) of this Section 4.12, may at any time increase or decrease the number of members of a committee or terminate the existence of a committee. The membership of a committee member shall terminate on the date of his death or voluntary resignation. Any committee member may resign at any time by giving written notice to the president or secretary of the corporation. The Board of Directors may at any time for any reason, with or without cause, remove any individual committee member; and the Board of Directors may fill any committee vacancy created by death, resignation, removal or increase in the number of members of the committee. The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee; and, in addition, in the absence or disqualification of any member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not he or they constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in place of any such absent or disqualified member.

(d) **Meetings.** Unless the Board of Directors shall otherwise provide, regular meetings of the Executive Committee or any other committee appointed pursuant to this Section 4.12 shall be held at such times and places as are determined by the Board of Directors, or by any such committee; and when notice thereof has been given to each member of such committee, no further notice of such regular meetings need be given thereafter. Special meetings of any such committee may be held at any place which has been designated from time to time by resolution of such committee or by written consent of all members thereof, and may be called by any director who is a member of such committee, upon written notice to the members of such committee of the time and place of such special meeting given in the manner provided for the giving of written notice to members of the Board of Directors of the time and place of special meetings of the Board of Directors; provided that notice of a special meeting need not state the business proposed to be transacted at the meeting. Notice of any special meeting of any committee may be waived in writing at any time before or after the meeting and will be waived by any director by attendance thereat, except when the director attends such special meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Each committee shall elect a presiding officer from its members and may fix its own rules of procedure which shall not be inconsistent with these Bylaws. It shall keep regular minutes of its proceedings and report them to the Board of Directors for

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 11

AIA0002573

EB-HT003671

its information at the meeting thereof held next after the proceedings shall have been taken. A majority of the authorized number of members of any such committee shall constitute a quorum for the transaction of business; and the act of a majority of those present at any meeting at which a quorum is present shall be the act of such committee.

(e) Responsibility. Neither the designation of an Executive Committee or other committee, the delegation thereto of authority, nor action by such committee shall relieve the Board of Directors, or any member thereof, of any responsibility or duty imposed by law.

Section 4.13  Organization.  At every meeting of the Board of Directors, the Chairman of the Board of Directors, or, if a chairman has not been appointed or is absent, the president, or if the president is absent, the most senior vice president, or, in the absence of any such officer, a chairman of the meeting chosen by a majority of the directors present, shall preside over the meeting.  The secretary, or in his absence, an assistant secretary directed to do so by the president shall act as secretary of the meeting and shall keep regular minutes of the proceedings of the Board of Directors.

Section 4.14  Director Conflicts of Interest.  No contract or other transaction between the corporation and one or more of its directors or any other corporation, firm, association or entity in which one or more of its directors are directors or officers or are financially interested, shall be either void or voidable because of such relationship or interest or because such director or directors are present at the meeting of the Board of Directors or a committee thereof which authorizes, approves or ratifies such contract or transaction or because his or their votes are counted for such purposes, if:

(a)  the fact of such relationship or interest is disclosed or known to the Board of Directors or committee which authorizes, approves or ratifies the contract or transaction by a vote or consent sufficient for the purpose without counting the votes or consents of such interested directors; or

(b)  the fact of such relationship or interest is disclosed or known to the shareholders entitled to vote and they authorize, approve or ratify such contract or transaction by vote or written consent, in which vote or consent such interested directors may participate to the extent that they are also shareholders; or

(c)  the contract or transaction is fair and reasonable to the corporation and the fact of such relationship or interest is fully and fairly disclosed or known to the corporation.

Common or interested directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors or a committee thereof which autorizes, approves or ratifies such contract or transaction.

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 12

AIA0002574

EB-HT003672

## ARTICLE V

### OFFICERS

Section 5.1  Officers Designated. The officers of the corporation consist of a president, one or more vice presidents (the number thereof to be determined by the Board of Directors), a secretary, and a treasurer, each of whom shall be elected by the Board of Directors. The order of seniority of vice presidents shall be the order of their nomination, unless otherwise determined by the Boared of Directors.  Such other officers and assistant officers as may be deemed necessary may be elected or appointed by the Board of Directors.  Any two or more offices may be held by the same person, except the offices of president and secretary. (Idaho Code Section 30-1-50).

Section 5.2  Tenure and Duties of Officers.

(a)  Term of Office.  All officers shall hold office at the pleasure of the Board of Directors and until their successors shall have been duly elected and qualified, or until their resignation or removal. If the office of any officer becomes vacant for any reqson, the vacancy may be filled by the Board of Directors.  (Idaho Code Section 30-1-50).

(b)  The President.  The president shall be the principal executive officer of the corporation and, subject to the control of the Board of Directors, shall in general supervise and control all of the business and affairs of the corporation. He shall, when present, preside at all meetings of the stockholders and of the Board of Directors. He may sign, with the secretary or any other proper officer of the corporation thereunder authorized by the Board of Directors, certificates for shares of the corporation, any deeds, mortgages, bonds, contracts, or other instruments which the Board of Directors has authorized to be executed, except in cases where the signing and execution thereof shall be expressly delegated by the Board of Directors or by these Bylaws to some other officer or agent of the corporation, or shall be required by law to be otherwise signed or executed; and in general the president shall perform all duties commonly incident to the office of president and such other duties as may be prescribed by the Board of Directors from time to time.

(c)  The Vice President.  In the absence of the president or in the event of his death, inability or refusal to act, the vice president (or in the event there is more than one vice president, the vice presidents in the order designated at the time of their election, or in the absence of any designation, then in the order of their election) shall perform the duties of the president and, when so acting, shall hae all the powers of and be subject to all the restrictions upon the president.  Any vice president may sign, with the secretary or an assistant secretary, certificates for shares of the corporation; and the vice president shall perform other duties commonly incdent to the office of vice president and such other duties as from time to time may be assigned to him by the

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 13

AIA0002575

EB-HT003673

president or by the Board of Directors.

(d)   The Secretary.  The secretary shall:  (a) attend all meetings and keep the minutes of the proceedings of the stockholders and of the Board of Directors in one or more books provided for that purpose; (b) see that all notices are duly given in accordance with the provisions of these Bylaws or as required by law; (c) be custodian of the corporate records and of the seal of the corporation and see that the seal of the corporation is affixed to all documents the execution of which on behalf of the corporation under its seal is duly authorized; (d) keep a register of the post office address of each shareholder which shall be furnished to the secretary by such shareholder; (e) sign, with the president, or a vice president, certificates for shares of the corporation, issuance of which shall have been authorized by resolution of the Board of Directors; (f) have general charge of the stock transfer books of the corporation; and (g) in general perform all duties commonly incident to the office of secretary and such other duties as from time to time may be assigned to him by the president or by the Board of Directors.

(e)   The Treasurer.  The treasurer shall: (a) have charge and custody of and be responsible for all funds and securities of the corporation; (b) receive and give receipts for monies due and payable to the corporation from any source whatsoever, and deposit all such monies in the name of the corporation in such banks, trust companies or other depositories as shall be selected in accordance with the provisions of Article VI of these Bylaws; and (c) in general perform all of the duties commonly incident to the office of treasurer and such other duties as from time to time may be assigned to him by the president or by the Board of Directors.  If required by the Board of Directors, the treasurer shall give a bond for the faithful discharge of his duties in such sum and with such surety or sureties as the Board of Directors shall determine.

(f)   Assistant Secretaries and Assistant Treasurers.  The assistant secretaries, when authorized by the Board of Directors, may sign with the president or a vice president certificates for shares of the corporation the issuance of which shall have been authorized by a resolution of the Board of Directors.  The assistant treasurers shall respectively, if required by the Board of Directors, give bonds for the faithful discharge of their duties in such sums and with such sureties as the Board of Directors shall determine.  The assistant secretaries and assistant treasurers, in general shall perform such duties as shall be assigned to them by the secretary or the treasurer, or by the president or the Board of Directors.

Section 5.3  Resignations.  Any officer may resign at any time by giving written notice to the Board of Directors or to the president or to the secretary.  Any such resignation shall be effective when received by the person or persons to whom such notice is given, unless a later time is specified therein, in which event the resignation shall become effective at such later time.  Unless otherwise specified in such notice, the acceptance of any such resignation shall not be necessary to make it

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 14

AIA0002576

EB-HT003674

effective.

Section 5.4 Removal. Any officer or agent may be removed by the Board of Directors whenever, in its judgment, the best interests of the corporation will be served thereby; but such removal shall be without prejudice to the contract rights, if any, of the person so removed. Election or appointment of an officer or agent shall not of itself create contract rights. (Idaho Code Section 30-1-51).

Section 5.5 Compensation. The compensation of the officers shall be fixed from time to time by the Board of Directors. No officer shall be prevented from receiving such compensation by reason of the fact that such officer is also a director of the corporation.

## ARTICLE VI

### EXECUTION OF CORPORATE INSTRUMENTS AND VOTING OF SECURITIES OWNED BY THE CORPORATION

Section 6.1 Execution of Corporate Instruments. The Board of Directors may, in its discretion, determine the method and designate the signatory officer or officers, or other person or persons, to execute on behalf of the corporation any corporate instrument or document, or to sign on behalf of the corporation the corporate name without limitation, or to enter into contracts on behalf of the corporation, except where otherwise provided by law or these Bylaws; and such execution or signature shall be binding upon the corporation. Authorization granted to any person hereunder may be general or confined to specific instances.

Unless otherwise specifically determined by the Board of Directors or otherwise required by law, promissory notes, deeds of trust, mortgages and other evidences of indebtedness of the corporation, and certificates of shares of stock owned by the corporation, shall be executed, signed or endorsed by the president or any vice president, and by the secretary or treasurer or any assistant secretary or assistant treasurer. All other instruments and documents requiring the corporate signature may be executed as aforesaid or in such manner as may be directed by the Board of Directors.

Section 6.2 Loans. No loan shall be contracted on behalf of the corporation and no evidence of indebtedness shall be issued in its name unless authorized by resolution of the Board of Directors. Such authorization may be general or confined to specific instances.

Section 6.3 Deposits and Checks. All funds of the corporation not otherwise employed shall be deposited from time to time to the credit of the corporation in such banks, trust companies or other depositories as the Board of Directors may select. All checks and drafts drawn on banks or other depositaries on funds to the credit of the corporation or in special accounts of the corporation shall be signed by such person or persons as the Board of Directors shall authorize to do so. Such

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION – P. 15

AIA0002577

EB-HT003675

authorization may be general or confined to specific instances.

Section 6.4  **Voting of Securities Owned by the Corporation.**  All stock and other securities of other corporations owned or held by the corporation for itself, or for other parties in any capacity, shall be voted, and all proxies with respect thereto shall be executed, by the person authorized to do so by resolution of the Board of Directors, or, in the absence of such authorization, by the president or any vice president.

## ARTICLE VII

### SHARES OF STOCK

Section 7.1  **Form and Execution of Certificates.**  Certificates representing shares of the corporation shall be in such form as shall be determined by the Board of Directors.  Such certificates shall be signed by the president or a vice president and by the secretary or an assistant secretary and may be sealed with the corporate seal or a facsimile thereof.  The signatures of such officers upon a certificate may be facsimiles if the certificate is manually signed on behalf of a transfer agent or a registrar, other than the corporation itself or one of its employees.  In case any officer, transfer agent, or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the corporation with the same effect as if he were such officer transfer agent or registrar at the date of issue.  (Idaho Code Section 30-1-23).

Section 7.2  **Lost Certificates.**  The corporation may issue a new certificate of stock in place of any certificate theretofore issued by the corporation alleged to have been lost, stolen, destroyed or mutilated; and the corporation may require the owner of such lost, stolen, destroyed or mutilated certificate, or his legal representative, to give the corporation a bond sufficient to indemnify it against any claim that may be made against the corporation on account of the alleged loss, theft, destruction or mutilation of any such certificate or the issuance of such new certificate.

Section 7.3  **Transfers.**  Each certificte for shares shall be consecutively numbered or otherwise identified.  The name and address of the person to whom the shares represented thereby are issued, with the number of shares and date of issue, shall be entered on the stock transfer books of the corporation.  All certificates surrendered to the corporation for transfer shall be cancelled; and, except as provided in Section 7.2, no new certificate shall be issued until the former certificate for a like number of shares shall have been surrendered and cancelled.  Transfer of record shares of stock of the corporation shall be made only on the stock transfer books of the corporation by the holder of record thereof or by his legal representative, who shall furnish proper evidence of authority to transfer, or by his attorney thereunto authorized by power of attorney

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION – P. 16

AIA0002578

EB-HT003676

duly executed and filed with the secretary of the corporation, and on surrender for cancellation of a properly endorsed certificate or certificates for a like number of shares.

Section 7.4  Fixing Record Dates.  In order that the corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or to express consent to corporate action in writing without a meeting, or to receive payment of any dividend or other distribution or allotment of any rights or to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board of Directors may provide that the stock transfer books shall be closed for a stated period but not to exceed, in any case, fifty (50) days.  If the stock transfer books shall be closed for the purpose of determining stockholders entitled to notice of or to vote at a meeting of stockholders, such books shall be closed for at least ten (10) days immediately preceding such meeting.  In lieu of closing the stock transfer books, the Board of Directors may fix, in advance, a record date for any such determination of stockholders.  Such record date shall be not more than fifty (50) days and, in the case of a meeting of stockholders, not less than ten (10) days prior to the date on which the particular action, requiring such determination of stockholders, is to be taken.  If the stock transfer books are not closed and no record date is fixed: (a) the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day on which notice is mailed, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held; (b) the record date for determining stockholders entitled to express consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is necessary, shall be the day on which the first written consent is expressed; and (c) the record date for determining stockholders for any other purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.  A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting.  (Idaho Code Section 39-1-30).

Section 7.5  Registered Stockholders.  The corporation shall be entitled to recognize the exclusive right of a person registered in its books as the owner of shares to receive dividends and to vote as such owner, and shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person whether or not it shall have express or other notice thereof, except as otherwise provided by the laws of Idaho.

Section 7.6  Issuance, Transfer and Registration of Shares.  The Board of Directors may make such rules and regulations, not inconsistent with law or with these Bylaws, as it may deem advisable concerning the issuance, transfer and registration of certificates for shares of the

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 17

AIA0002579

EB-HT003677

capital stock of the corporation.  The Board of Directors may appoint a transfer agent or registrar of transfers or both, and may require all certificates for shares of the corporation to bear the signature of either or both.

## ARTICLE VIII

### OTHER SECURITIES OF THE CORPORATION

Section 8.1  **Execution of Other Securities.**  All bonds, debentures and other corporate securities of the corporation, other than stock certificates, may be signed by the president or any vice president, or such other person as may be authorized by the Board of Directors; and the corporate seal may be impressed thereon or a facsimile of such seal imprinted thereon and attested by the signature of the secretary or an assistant secretary; provided, however, that where any such bond, debenture or other corporate security shall be authenticated by the manual signature of a trustee under an indenture pursuant to which such bond, debenture or other corporate security shall be issued, the signatures of the persons signing and attesting the corporate seal on such bond, debenture or other corporate security may be the imprint facsimile of the signature of such persons.  Interest coupons appertaining to any such bond, debenture or other corporate security, authenticated by a trustee as aforesaid, shall be signed by the treasurer or an assistant treasurer of the corporation or such other person as may be authorized by the Board of Directors, or be imprinted thereon the facsimile signature of such person.  In case any officer who shall have signed or attested any bond, debenture or other corporate security, or whose facsimile signature shall appear thereon or on any such interest coupon, shall have ceased to be such officer before the bond, debenture or other corporate security so signed or attested shall have been delivered, such bond, debenture or other corporate security nevertheless may be adopted by the corporation and issued and delivered as though the person who signed the same or whose facsimile signture shall have been used thereon had not ceased to be such officer of the corporation.

## ARTICLE IX

### DIVIDENDS

Section 9.1  **Declaration and Payment of Dividends.**  Dividends upon the capital stock of the corporation, subject to the provisions of the Articles of Incorporation, if any, may be declared by the Board of Directors pursuant to law at any regular or special meeting.  Dividends may be paid by the corporation in cash, in property, or in shares of its capital stock, subject to the provisions of the Articles of Incorporation. (Idaho Code Section 30-1-45).

Section 9.2  **Dividend Reserve.**  Before payment of any dividend, there may be set aside out of any funds of the corporation available for dividends such sum or sums as the Board of Directors may from time to

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 18

AIA0002580

EB-HT003678

time, in its absolute discretion, think proper as a reserve or reserves to meet contingencies, or for equalizing dividends, or for repairing or maintaining any property of the corporation, or for such other purpose as the Board of Directors shall think conducive to the interests of the corporation; and the Board of Directors may modify or abolish any such reserve in the manner in which is was created.

## ARTICLE XI

### INDEMNIFICATION OF DIRECTORS, OFFICERS, EMPLOYEES AND OTHER AGENTS

Section 11.1   **Directors and Executive Officers**   The corporation shall indemnify the directors and executive officers of the corporation or another enterprise to the full extent permitted by the Idaho Business Corporation Act, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the corporation to provide broader indemnification rights than siad Act permitted the corporation to provide prior to such amendment); provided, however, that the corporation may limit the extent of such indemnification by individual contracts with its directors and executive officers; and provided, further, that the corporation shall not be required to indemnify any director or executive officer in connection with any proceeding (or part thereof) initiated by such person or any proceeding by such person against the corporation or its directors, officers, employees or other agents unless (a) such indemnification is expressly required to be made by law; (b) the proceeding was authorized by the Board of Directors of the corporation or (c) such indemnification is provided by the corporation under the Idaho Business Corporation Act. (Idaho Code Section 30-1-5(a),(b)).

Section 11.2   **Other Officers, Employees and Agents.**   The corporation shall have the power to indemnify other officers, employees and other agents of the corporation or another enterprise as set forth in the Idaho Business Corporation Act.   (Idaho Code Section 30-1-5(a),(b)).

Section 11.3   **Good Faith.**   For purposes of any determination under this Bylaw, a director, officer, employee or other agent of the corporation or another enterprise shall be deemed to have acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, to have had no reasonable cause to believe that his conduct was unlawful, if his action is based on the records or books of account of the corporation or another enterprise, or on information supplied or reports made to him by the officers of the corporation or another enterprise in the course of their duties, or on the advice of legal counsel for the corporation or another enterprise or on information or records given or reports made to the corporation or another enterprise by an independent certified public accountant or by an appraiser or other expert selected with reasonable care by the corporation or another

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 19

AIA0002581

EB-HT003679

enterprise. The provisions of this Section 11.3 shall not be deemed to be exclusive and/or to limit in any way the circumstances in which a person may be deemed to have met the applicable standard of conduct set forth by the Idaho Business Corporation Act. (Idaho Code Sections 30-1-5(a),(b); 30-1-35).

Section 11.4 **Another Enterprise**. The term "another enterprise" as used in this Article XI shall mean any other corporation, partnership, joint venture, trust or other enterprise, including any employee benefit plan, or which a person is or was serving at the request of the corporation as a director, officer, employee or other agent. (Idaho Code Section 30-1-5(a),(b)).

Section 11.5 **Expenses**. The corporation shall advance, prior to the final disposition of any proceeding, promptly following request therefor, all expenses incurred by any director, officer, or employee or other agent of the corporation or another enterprise in connection with such proceeding upon receipt of an undertaking by or on behalf of such person to repay said amount if it should be determined ultimately that such person is not entitled to be indemnified under this Article XI or otherwise. (Idaho Code Section 30-1-5(e)).

Notwithstanding the foregoing, unless otherwise determined pursuant to Section 11.6, no advance shall be made by the corporation if a determination is reasonably and promptly made (a) by the Board of Directors by a majority vote of a quorum consisting of directors who were not parties to the proceeding, or (b) if such quorum is not obtainable or, even if obtainable, a quorum of disinterested directors so directs, by independent legal counsel in a written opinion that, based upon the facts known to the decision-making party at the time such determination is made, such person acted in bad faith or in a manner that such person did not believe to be in or not opposed to the best interests of the corporation, or, with respect to any criminal proceeding, such person believed or had reasonable cause to believe that his conduct was unlawful. (Idaho Code Section 30-1-5(d)).

Section 11.6 **Enforcement**. Without the necessity of entering into an express contract, all rights to indemnification and advances under this Article XI shall be deemed to be contractual rights and to be effective to the same extent and as if provided for in a contract between the corporation and the person who serves as a director, officer, employee or other agent of the corporation or another enterprise at any time while this Article XI and relevant provisions of the Idaho Business Corporation Act and other applicable law, if any, are in efefct. Any right to indemnification or advances granted by this Article XI to any person shall be enforceable by or on behalf of the person holding such right in any court of competent jurisdiction if (a) the claim for indemnification or advances is denied, in whole or in part, or (b) no disposition of such claim is made within ninety (90) days of request therefor. The claimant in such enforcement action, if successful in whole or in part, shall be entitled to be paid also the expense of prosecuting his claim. It shall

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 20

AIA0002582

EB-HT003680

be a defense to any such action that the claimant has not met the standards of conduct which make it permissible under the Idaho Business Corporation Act for the corporation to indemnify the claimant for the amount claimed; but the burden of proving such defense shall be on the corporation. Neither the failure of the corporation (including its Board of Directors, independent legal counsel or its stockholders) to have made a determination prior to the commencement of such action that indemnification of the claimant is proper in the circumstances because he has met the applicable standard of conduct set forth in the Idaho Business Corporation Act, nor an actual determination by the corporation (including its Board of Directors, independent legal counsel or its stockholders) that the claimant has not met such applicable standard of conduct, shall be a defense to the action or create a presumption that claimant has not met the applicabe standard of conduct.

Section 11.7 **Non-exclusivity of rights.** The rights conferred on any person by this Article XI shall not be exclusive of any other right to which such person may now or hereafter be entitled under any statute, provision of the Articles of Incorporation, or Bylaws, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in his official capacity and as to action in another capacity while holding office. The corporation is specifically authorized to enter into individual contracts with any or all directors, officers, employees or other agents of the corporation or another enterprise respecting indemnification and advances, as provided by law. (Idaho Code Section 30-1-5(f)).

Section 11.8 **Survival of rights.** The rights conferred on any person by this Article XI shall continue as to a person who has ceased to be a director, officer, employee or other agent of the corporation or another enterprise and shall inure to the benefit of the heirs, executors and administrators such a person. (Idaho Code Section 30-1-5(i)).

Section 11.9 **Amendments.** Any repeal or modification of this Article XI shall only be prospective and shall not affect the rights under this Article XI in effect at the time of the alleged occurrence of any action or omission to act that is the cause of any proceeding against any agent of the corporation or another enterprise.

Section 11.10 **Savings Clause.** If this Article XI of the Bylaws or any portion hereof shall be invalidated on any ground by any court of competent jurisdiction, then the corporation shall nevertheless indemnify each agent to the full extent permitted by any applicable portion of this Article XI that shall not have been invalidated, or by any other applicable law.

ARTICLE XII

NOTICES

Section 12.1 **Notice to Stockholders.** Whenever under any provision

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 21

AIA0002583

EB-HT003681

**Exhibit - 4, p. 44**
**19-ER-4773**

of these Bylaws notice is required to be given to any stockholder, it shall be given in writing, timely and duly deposited in the United States mail, postage prepaid, and addressed to his last known post office address as shown by the stock transfer books of the corporation or its transfer agent or to such other last known address of which the corporation may have notice.   Such notice to any stockholder shall be deemed to be delivered when deposited in the United States mail in accordance with this Section 12.1.  (Idaho Code Section 30-1-29).

Section 12.2  **Notice to Directors.**  Any notice required to be given to any director may be given by the method stated in Section 12.1, or by telegram except that such notice other than one which is delivered personally shall be sent to such address as such director shall have filed in writing with the secretary, or, in the absence of such filing, to the last known post office address of such director.  (Idaho Code Section 30-1-43).

Section 12.3  **Address Unknown.**  If no address of a stockholder or director be known, notice may be sent to the office of the corporation required to be maintained pursuant to Section 1.1 hereof.

Section 12.4  **Affidavit of Mailing.**  An affidavit of mailing, executed by a duly authorized and competent employee of the corporation or its transfer agent appointed with respect to the class of stock affected, specifying the name and address or the names and addresses of the stockholder or stockholders, or director of directors, to whom any such notice or notices was or were given, and the time and method of giving the same, shall be conclusive evidence of the statements therein contained.

Section 12.5  **Time Notices Deemed Given.**  All notices given by mail, as above provided, shall be deemed to have been given at the time of mailing; and all notices given by telegram shall be deemed to have been given at the sending time recorded by the telegraph company transmitting the notices.

Section 12.6  **Methods of Notice.**  The period or limitation of time within which any stockholder may exercise any option or right, or enjoy any privilege or benefit, or be required to act, or within which any director may exercise any power or right, or enjoy any privilege, pursuant to any notice sent him in the manner above provided, shall not be affected or extended in any manner by the failure of such stockholder or such director to receive such notice.

Section 12.7  **Failure to Receive Notice.**  The period or limitation of time within which any stockholder may exercise any option or right, or enjoy any privilege or benefit, or be required to act, or within which any director may exercise any power or right, or enjoy any privilege, pursuant to any notice sent him in the manner above provided, shall not be affected or extended in any manner by the failure of such stockholder or such director to receive such notice.

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 22

AIA0002584

EB-HT003682

Exhibit - 4, p. 45
**19-ER-4774**

Section 12.8  Notice to Person with Whom Communication is Unlawful. Whenever notice is required to be given, under any provision of law or of the Articles of Incorporation or Bylaws of the corporation, to any person with whom communication is unlawful, the giving of such notice to such person shall not be required and there shall be no duty to apply to any governmental authority or agency for a license or permit to give such notice to such person. Any action or meeting which shall be taken or held without notice to any such person with whom communication is unlawful shall have the same force and effect as if such notice had been duly given. In the event that the action taken by the corporation is such as to require the filing of a certificate under any provision of the Idaho Business Corporation Act, the certificate shall state, if such is the fact and if notice is required, that notice was given to all persons entitled to receive notice except such persons with whom communications is unlawful.

Section 12.9  Waiver of Notice.  Whenever any notice is required to be given to any stockholder or director of the corporation under the provisions of these Bylaws or under the provisions of the Articles of Incorporation or under the provisions of the Idaho Business Corporation, a waiver thereof in writing signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice. (Idaho Code Section 30-1-144).

## ARTICLE XIII

### AMENDMENTS

Section 13.1  Amendments.  These Bylaws may be altered, amended or repealed and new Bylaws may be adopted by the Board of Directors or by the stockholders at any regular or special meeting.

## ARTICLE XIV

### LOANS TO DIRECTORS AND OTHERS

Section 14.1  Certain Corporate Loans and Guaranties.  The corporation may make loans of money or property to, or guarantee the obligations of, or otherwise use its credit to assist any officer or other employee of the corporation, its parent or a subsidiary, including any such person who is also a director of the corporation or its parent or any subsidiary, or adopt any employee benefit plan or plans authorizing such loan, guaranties or other assistance, upon the approval of the Board of Directors alone if the Board of Directors determines that such a loan or guaranty or plan may reasonably be expected to benefit the corporation. In all other circumstances, the corporation shall not lend money or use its credit to assist its directors without authorization in the particular case by its stockholders. (Idaho Code Section 30-1-47).

NEW RESTATED BYLAWS OF
AIA SERVICES CORPORATION - P. 23

AIA0002585

EB-HT003683



EXHIBIT
416
J. Taylor
2/25/2020
Associated Reporting & Video

AMENDED AND RESTATED BYLAWS

OF

AIA SERVICES CORPORATION
(an Idaho corporation)

Effective: May 26, 2016

## ARTICLE I
### OFFICES

**Section 1.1 Registered Office.** The registered office of the corporation required by the Idaho Business Corporation Act to be maintained in the State of Idaho may, but need not be, identical with the principal office in the State of Idaho; and the address of the registered office may be changed from time to time by the Board of Directors or the President of the corporation. (Idaho Code Sections 30-1-12(a) and 30-1-13.)

**Section 1.2 Principal Offices; other Offices.** The corporation shall also have and maintain an office or principal place of business in Lewiston, Idaho or at such other place as may be fixed by the Board of Directors, and may also have offices at such other places, both within and without the State of Idaho, as the Board of Directors may from time to time determine or the business of the corporation may require.

## ARTICLE II
### CORPORATE SEAL

**Section 2.1 Corporate Seal.** The corporate seal shall consist of a die bearing the name of the corporation and the inscription, "Corporate Seal -- State of Idaho". The seal may be used by causing it or a facsimile thereof to be impressed or affixed or in any other manner reproduced. The seal may be altered at the pleasure of the Board of Directors. (Idaho Code Section 30-1-4(c)).

## ARTICLE III
### STOCKHOLDERS' MEETINGS

**Section 3.1 Place of Meetings.** The Board of Directors may designate any place, either within or without the State of Idaho, as the place of meeting for any annual meeting or for any special meeting of stockholders called by the Board of Directors. A waiver of notice signed by all stockholders entitled to vote at a meeting may designate any place, either within or without the State of Idaho, as the place for the holding of such meeting. If no designation is made, or if a special meeting be otherwise called, the place of meeting shall be the principal office of the corporation in the State of Idaho. (Idaho Code Section 30-1-28).

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016          - P. 1

AIAPROD00308828

Section 3.2 **Annual Meetings**. The annual meeting of the stockholders of the corporation shall be held on the first Monday in the month of May each year at the hour of 10:00 o'clock a.m., or on such other date and at such other time which may from time to time be designated by the Board of Directors, for the purpose of electing directors and for the transaction of such other business as may properly come before the meeting. (Idaho Code Section 30-1-28).

Section 3.3 **Special Meetings**. Special meetings of the stockholders of the corporation may be called at any time, for any purpose or purposes, by the Board of Directors or by the holders of not less than one-fifth (1/5) of all outstanding shares of stock of the corporation entitled to vote at the meeting or by the president of the corporation. Special meetings of the stockholders of the corporation may not be called by any other person or persons. (Idaho Code Section 30-1-28).

Section 3.4 **Notice of Meetings**. Written notice stating the place, day and hour of the meeting and, in case of a special meeting, the purpose or purposes for which the meeting is called, shall, unless otherwise prescribed by statute, be delivered not less than ten nor more than fifty days before the date of the meeting, either personally or by mail, by or at the direction of the president, or the secretary, or the officer or other persons calling the meeting, to each stockholder of record entitled to vote at such meeting, or to each specified beneficial stockholder certified for the purpose of receiving such notice under Section 3.10. (Idaho Code Section 30-1-29).

Such notice of any meeting of stockholders may be waived in writing, signed by the person entitled to notice thereof, either before or after such meeting, and will be waived by any stockholder by his attendance thereat in person or by proxy, except when the stockholder attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Any stockholder so waiving notice of such meeting shall be bound by the proceedings of any such meeting in all respects as if due notice hereof had been given. (Idaho Code Section 30- 1-144).

Section 3.5 **Quorum**. Except as otherwise provided in the Articles of Incorporation, a majority of the outstanding shares of the corporation entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of stockholders. Any shares, the voting of which at said meeting has been enjoined, or which for any reason cannot be lawfully voted at such meeting, shall not be counted to determine a quorum at such meeting. In the absence of a quorum any meeting of stockholders may be adjourned, from time to time, by vote of the holders of a majority of the shares represented thereat; but no other business shall be transacted at such meeting. The stockholders present at a duly organized and convened meeting where a quorum has been present can continue to transact business as a quorum until

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016        - P. 2

AIAPROD00308829

adjournment, notwithstanding the withdrawal of enough stockholders to leave less than a quorum. Except as otherwise provided by law, the Articles of Incorporation or these Bylaws, if a quorum is present, the affirmative vote of a majority of the shares represented at the meeting and entitled to vote on the subject matter shall be the act of the stockholders. (Idaho Code Section 30-1-32).

**Section 3.6 Adjournment and notice of Adjourned meetings.** Any meeting of stockholders at which a quorum is present, whether annual or special may be adjourned from time to time by the vote of a majority of the shares, the holders of which are present either in person or by proxy. When a meeting is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken. At the adjourned meeting the corporation may transact any business which might have been transacted at the original meeting. If the adjournment is for more than thirty (30) days, or if after the adjournment a new record date is fixed for the adjournment meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

**Section 3.7 Proxies.** At all meetings of stockholders, a stockholder may vote either in person or by proxy executed in writing by the stockholder or by his duly authorized attorney-in-fact. Such proxy shall be filed with the secretary of the corporation before or at the time of the meeting. No proxy shall be valid after eleven (11) months from the date of its execution, unless otherwise provided in the proxy. (Idaho Code Section 30-1-33(c)).

**Section 3.8 Voting rights.** Except as otherwise provided in the Articles of Incorporation, each outstanding share, regardless of class, entitled to vote shall be entitled to one vote upon each matter submitted to a vote at a meeting of stockholders. Cumulative voting of shares shall not be permitted in the election of directors. For the purpose of determining those stockholders entitled to vote in any meeting of the stockholders, except as otherwise provided by law, only persons in which names shares stand on the stock record of the corporation on the record date, as provided in Sections 3.11 and 7.4 of these Bylaws, shall be entitled to vote at any meeting of stockholders. All elections of directors shall be by written ballot.

**Section 3.9 Voting of Shares by Certain Holders.** Shares standing in the name of another corporation, domestic or foreign, may be voted by such officer, agent or proxy as the bylaws of such other corporation may prescribe or, in the absence of such provision, as the Board of Directors of such other corporation may determine. (Idaho Code Section 30-1-22(e)).

Shares held by an administrator, executor, guardian or conservator may be voted by him, either in person or by proxy, without a transfer of such shares into his name. Shares standing

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016          - P. 3

AIAPROD00308830

**Exhibit - 4, p. 49**
**19-ER-4778**

in the name of a trustee may be voted by him, either in person or by proxy; but no trustee shall be entitled to vote shares held by him without a transfer of such shares into his name. (Idaho Code Section 30-1-33 (f)).

Shares standing in the name of a receiver may be voted by such receiver; and shares held by or under the control of a receiver may be voted by such receiver without the transfer thereof into his name if authority so to do be contained in an appropriate order of the court by which such receiver was appointed. (Idaho Code Section 30-1-33(g)),

A stockholder whose shares are pledged shall be entitled to vote such shares until the shares have been transferred into the name of the pledgee; and thereafter the pledge shall be entitled to vote the shares so transferred unless the pledgor shall have obtained from the pledgee a proxy to vote or take other action ·thereon in accordance with law. (Idaho Code Section 30-1-33(c)(3),(h)),

Neither treasury shares of its own stock held by the corporation, nor shares held by another corporation if a majority of the shares entitled to vote for the elections of directors of such other corporation is held by the corporation, shall be voted at any meeting or counted in determining the total number of outstanding shares at any given time. (Idaho Code Section 30-1-3{b)).

Section 3.10 **Joint Owners of Stock.** If shares or other securities having voting power stand of record in the names of two ( 2 ) or more persons, whether fiduciaries, members of a partnership, joint tenants, tenants in common, tenants by the entirety, or otherwise, or if two ( 2 ) or more persons have the same fiduciary relationship respecting the same shares, unless the Secretary is given written notice to the contrary and is furnished with a copy of the instrument or order appointing them or creating the relationship wherein it is so provided, their acts with respect to voting shall have the following effect : (a) if only one votes, his act binds all; (b) if more than one votes, the act of the majority so voting binds all; (c) if more than one votes, but the vote is evenly split on any particular matter, each faction may vote the securities in question proportionally. If the instrument filed with the secretary shows that any such tenancy is held in unequal interests, a majority or even-split for the purpose of this Section 3.10 shall be a majority or even-split interest.

The Board of Directors may adopt by resolution a procedure whereby a stockholder of the corporation may certify in writing to the corporation that all or a portion of the shares registered in the name of such stockholder are held for the account of a specified person or persons. The resolution shall set forth (a) the classification of stockholder who may certify, (b) the purpose or purposes for which the certification may be made, (c) the form of certification and information to be contained

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016          - P. 4

therein, (d) the number of days before or after any record date or date of closing of the stock transfer books, and (e) such other provisions with respect to the procedure as are deemed necessary or desirable . Upon receipt by the corporation of a certification complying with the procedure, the persons specified in the certification shall be deemed, for the purpose or purposes set forth in the certification, to be the holders of record of the number of shares specified in place of the shareholder making the certification. (Idaho Code Section 30-1-2(f)).

Section 3.11 **List of Stockholders.** The Secretary shall make, at least ten (10)days before every meeting of stockholders, a complete record of the stockholders entitled to vote at such meeting or any adjournment thereof, arranged in alphabetical order and showing the addresses of each stockholder and the number of shares registered in the name of each stockholder. Such record shall be open to the examination of any stockholder, for any purpose germane to the meeting, during, ordinary business hours, for a period of at least ten (10) days prior to the meeting, either at a place within the city where the meeting is to be held. The list shall be produced and kept open at the time and place of meeting, and shall be subject to inspection by any stockholder during the whole time of the meeting for the purposes thereof. (Idaho Code Section 30-1-31)

Section 3.12 **Organization.** At every meeting of stockholders, the Chairman of the Board of-Directors, or, if a Chairman has not been appointed or is absent, the president, or, if the president is absent, the most senior vice president present, or in the absence of any such officer, a chairman of the meeting chosen by a majority in interest of the stockholders entitled to vote, present in person or by proxy, shall act as chairman. The secretary or, in his absence, an assistant secretary directed to do so by the president, shall act as secretary of the meeting.

Section 3.13 **Nomination of Directors.** Nominations of persons for election to the Board of Directors of this corporation at the annual meeting of stockholders may be made at such meeting by or at the direction of the Board of Directors, by any nominating committee or person appointed by the Board of Directors, or by any stockholder of the corporation entitled to vote for the election of directors at the meeting who timely complies with the notice procedures herein set forth. To be timely, a stockholder's notice must be delivered to, or mailed to and received by, the secretary of the corporation at the corporation's principal executive offices not later than the December 31 immediately preceding the annual meeting.

Section 3.14 **Business Introduced by Stockholders at Annual Meetings.** Where business introduced by a stockholder is not specified in the notice of annual meeting, then (in addition to any other applicable requirements)for business to be properly introduced by a stockholder at an annual meeting of stockholders,

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016          - P. 5

AIAPROD00308832

the stockholder must have given timely notice thereof in writing to the secretary of the corporation. To be timely a stockholder's notice must be delivered to, or mailed to and received by the secretary of the corporation in the same manner and subject to the same time requirements provided in section 3.13 of these Bylaws for stockholder notice of nominations to the Board of Directors. A stockholder' notice must set forth, as to each mater the stockholder proposes to bring before a meeting, (a) a brief description of the business desired to be brought before the meeting and the reasons for conducting such business at the meeting, (b) the name and record address of the stockholder proposing such business, (c) the class, series and number of shares of the corporation's stock which are beneficially owned by the stockholder, and (d) any material interest of the stockholder in such business.

Section 3.14 **Informal Action by Stockholder.** Any action required or permitted to be taken at a meeting of the stockholders may be taken without a meeting if consent in writing, setting forth the action so taken, shall be signed by all of the stockholders entitled to vote with respect to the subject matter thereof. Such consent shall have the same effect as a unanimous vote of stockholders, (Idaho Code Section 30-1-145).

## ARTICLE IV
## DIRECTORS

Section 4.1 **Number Qualifications.** The number of directors presently authorized is six (6). The authorized number of directors of the corporation shall be fixed, and may be increased to as many as nine or decreased to as few as one, from time to time by the Board of Directors either by a resolution or a bylaw duly adopted by the Board of Directors. No decrease in the number of directors constituting the Board of Directors shall shorten the term of any incumbent director. Directors need not be residents of the State of Idaho or stockholders unless so required by the Articles of Incorporation. If for any cause the directors shall not have been elected at an annual meeting, they may be elected as soon thereafter as convenient at a special meeting of the stockholders called for that purpose in the manner provided by law or in these Bylaws, (Idaho Code Sections 30-1-28, 30-1-35 and 30-1-36).

Section 4.2 **Term.** Each director shall serve until the next annual meeting of stockholders and his successor is duly elected and qualified, or until his death, resignation or removal. (Idaho Code Section 30-1-36).

Section 4.3 **Newly created Directorships and Vacancies.** Newly created directorships resulting from any increase in the number of directors and any vacancies on the Board of Directors resulting from death, resignation, disqualification, removal or other cause shall be filled by the affirmative vote of a majority of the remaining directors then in office (and not by

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016        - P. 6

AIAPROD00308833

stockholders), even if less than a quorum of the authorized Board of Directors. A director elected to fill a vacancy shall be elected for the unexpired term of his predecessor in office. The stockholders may elect his successor at the next annual meeting of stockholders or at any meeting duly called for that purpose and held prior to the next annual meeting.

**Section 4.4 Powers.** All corporate powers shall be exercised by and under the authority of, and the business and affairs of the corporation shall be managed under the direction of, the Board of Directors except as may otherwise be provided in the Idaho Business Corporation Act or the Articles of Incorporation. (Idaho Code Section 30-1-35).

**Section 4.5 Resignation.** Any director may resign at any time by delivering his written resignation to the secretary, such resignation to specify whether it will be effective at a particular time, upon receipt by the secretary or at the pleasure of the Board of Directors. If no such specification is made, it shall be deemed effective at the pleasure of the Board of Directors. When one or more directors shall resign from the Board of Directors, effective at a future date, a majority of the directors then in office, including those who have so resigned, shall have power to fill such vacancy or vacancies, the vote thereon to take effect when such resignation or resignations shall become effective; and, subject to Section 4.3, each director so chosen shall hold office for the unexpired portion of the terms of the director whose place shall be vacated and until his successor shall have been duly elected and qualified.

**Section 4.6 Removal.** At a special meeting of stockholders called for the purpose in the manner hereinabove provided, the entire Board of Directors, or any individual director, may be removed from office, with or without cause, and one or more new directors may be elected, by a vote of stockholders holding a majority of the outstanding shares then entitled to vote at an election of directors. The holders of the corporation's Stated Value Preferred Stock being entitled to elect one (1) director by the provisions of the Articles of Incorporation, the provisions of this Section 4.6 shall apply, in respect to the removal of the director so elected, to the vote of the holders of the outstanding shares of Stated Value Preferred Stock and not to the vote of the outstanding shares as a whole. (Idaho Code Section 30-39.)

**Section 4.7 Meetings.**

(a) **Annual Meetings.** The annual meeting of the Board of Directors shall be held immediately after the annual meeting of stockholders and at the place where such meeting is held. No notice of an annual meeting of the Board of Directors shall be necessary; and such meeting shall be held for the purpose of electing officers and transacting

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016        - P. 7

AIAPROD00308834

such other business as may lawfully come before it. (Idaho Code Section 30-1-43).

(b) **Other Meetings**. Regular and special meetings of the Board of Directors, or of any committee designated by the Board, may be held at any place within or without the State of Idaho (Idaho Code Section 30-1-43).

(c) **Telephone Meetings** Any member of the Board of Directors, or of any committee thereof, may participate in a meeting by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other at the same time; and participation in a meeting by such means shall constitute presence in person at such meeting. (Idaho Code 30-1-43).

(d) **Notice of Meetings** Notice of the time and place of any regular or special meeting of the Board of Directors shall be given at least three (3) days previously thereto by written notice delivered personally or mailed to each director at his business address, or by telegram; provided that the Board of Directors may provide, by resolution, the time and place, either within or without the State of Idaho, for the holding of regular meetings without notice other than such resolution. Any director may waive notice of any meeting, in writing, at any time before or after the meeting. The attendance of a director at a meeting shall constitute a waiver of notice of such meeting, except where a director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board of Directors need be specified in the notice or waiver of notice of such meeting. (Idaho Code Section 30-1-43).

(e) **Waiver of Notice of Consent.** The transaction of all business at any meeting of the Board of Directors, or any committee thereof, however called or noticed, or wherever held, shall be as valid as though taken at a meeting duly held after regular call and notice, if a quorum is present and if, either before or after the meeting, each of the directors not present signs a written waiver of notice, or a consent to holding such meeting, or an approval of the minutes thereof. All such waivers, consents or approvals shall be filed with the corporate records or made a part of the minutes of the meeting. (Idaho Code Section 30-1- 43, 30-1-144).

Section 4.8 **Quorum and Voting.**

(a) **Quorum.** A majority of the number of directors fixed by or in the manner provided in Section 4.1 shall constitute a quorum for the transaction of business at any

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016          - P. 8

AIAPROD00308835

meeting of the Board of Directors. If less than such majority is present at any meeting, a majority of the directors present may adjourn the meeting from time to time until the time fixed for the next regular meeting of the Board of Directors, without further notice other than by announcement at the meeting. (Idaho Code Section 39-1-40).

(b) **Majority Vote.** At each meeting of the Board of Directors at which a quorum is present, all questions and business shall be determined by a vote of a majority of the directors present; and the act of the majority of the directors present shall be the act of the Board of Directors, unless a different vote is required by law, the Articles of Incorporation or these Bylaws. (Idaho Code Section 30-1-40).

(c) **Presumption of Assent.** A director of the corporation who is present at a meeting of the Board of Directors (or any committee thereof) at which action on any corporate matter is taken shall be presumed to have assented to the action taken unless his dissent shall be entered in the minutes of the meeting or unless he shall file his written dissent to such action with the person acting as the secretary of the meeting before the adjournment thereof or shall forward such dissent by registered mail to the secretary of the corporation within three (3) days after the adjournment of the meeting. Such right to dissent shall not apply to a director who voted in favor of such action. (Idaho Code Section 30-1-35).

**Section 4.9 Action without a Meeting.** Unless otherwise restricted by the Articles of Incorporation or these Bylaws, any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting, if a consent in writing, setting forth the action so taken is signed by all members of the Board of Directors or of the committee, as the case may be. (Idaho Code Section 30-1-44).

**Section 4.10 Fees and Compensation.** By resolution of the Board of Directors, a fixed fee or salary payable in cash or the corporation Is stock or any combination thereof with or without expenses or attendance, may be allowed for serving on the Board of Directors and/or attendance at each meeting of the Board of Directors and at each meeting of any committee of the Board of Directors. Noting herein contained shall be construed to preclude any director from serving the corporation in any other capacity as an officer, agent, consultant, employee, or otherwise and receiving compensation thereof. (Idaho Code Section 30-1-35).

**Section 4.11 Performance of Duties.** A director shall perform his duties as director, including his duties as a member of any committee of the Board of Directors on which he may serve, in good faith, in a manner he reasonably believes to be in the

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016        - P. 9

AIAPROD00308836

best interests of the corporation, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. In performing his duties, a director shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by:

> **(a)** One (1) or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented;

> **(b)** Counsel, public accountants or other persons as to matters which the director reasonably believes to be within such persons' professional or expert competence; or

> **(c)** A committee of the Board upon which he does not serve, duly designated in accordance with a provision of the Articles of Incorporation or the Bylaws, as to matters within its designated authority, which committee the director reasonably believes to merit confidence; but he shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause such reliance to be unwarranted.

A person who so performs his duties shall have no liability by reason of being or having been a director of the corporation. (Idaho Code Sections 30-1-35, 30-1-42).

### Section 4.12 Committees.

> a) **Executive Committee.** The Board of Directors may, by resolution adopted by a majority of the full Board of Directors, appoint an Executive Committee to consist of one (1) or more members of the Board of Directors. The Executive Committee, to the extent permitted by law and specifically granted by the Board of Directors, shall have and may exercise when the Board of Directors is not in session all powers and authority of the Board of Directors in the management of the business and affairs of the corporation, except such committee shall not have the power or authority to (i) declare dividends or distributions, (ii) approve or recommend to stockholders actions or proposals required by the Idaho Business Corporation Act to be approved by stockholders, (iii) designate candidates for the office of director, for purposes of proxy solicitation or otherwise, or fill vacancies on the Board of Directors or any committee thereof, (iv) amend the Bylaws, (v) approve a plan of merger not requiring stockholder approval, (vi) reduce earned or capital surplus, (vii) authorize or approve the reacquisition of shares unless pursuant to a general formula or method specified by the Board of Directors, or (viii) authorize or approve the issuance or sale of, or by contract to issue or sell, shares or designate the terms of a series of a class of shares, provided that the Board of Directors, having acted regarding general authorization for the issuance or sale of shares, or any contract thereof, and, in the case of a

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016        — P. 10

AIAPROD00308837

series, the designation thereof, may, pursuant to a general formula or method specified by the Board by resolution or by adoption of a stock option or other plan, authorized a committee to fix the terms of any contract for the sale of the shares and to fix the terms upon which such shares may be issued or sold, including, without limitation, the price, the dividend rate, provisions for redemption, sinking fund, conversion, voting or preferential rights, and provisions for other features of a class of shares, or a series of a class of shares, with full power in such committee to adopt any final resolution setting forth all the terms thereof and to authorize the statement of the terms of a series for filing with the Secretary of State under the Idaho Business Corporation Act. (Idaho Code Section 30-1-42).

b)    **Other Committees.** The Board of Directors may, by resolution adopted by a majority of the full Board of Directors, from time to time appoint such other committees as may be permitted by law. Such other committees appointed by the Board of Directors shall consist of one or more members of the Board of Directors, and shall have such powers and perform such duties as may be prescribed by the resolution or resolutions creating such committees; but in no event shall such committee have the powers denied to the Executive Committee in Section 4.12(a). (Idaho Code Section 30-1-42).

c)    **Terms.** The members of all committees of the Board of Directors shall serve at the pleasure of the Board of Directors. The Board of Directors, subject to the provisions of subsections (a) or (b)of this Section 4.12, may at any time increase or decrease the number of members of a committee or terminate the existence of a committee. The membership of a committee member shall terminate on the date of his death or voluntary resignation. Any committee member may resign at any time by giving written notice to the president or secretary of the corporation. The Board of Directors may at any time for any reason, with or without cause, remove any individual committee member; and the Board of Directors may fill any committee vacancy created by death, resignation, removal or increase in the number of members of the committee. The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee; and, in addition, in the absence or disqualification of any member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not he or they constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in place of any such absent or disqualified member.

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016       - P. 11

AIAPROD00308838

d)     **Meetings.** Unless the Board of Directors shall otherwise provide, regular meetings of the Executive Committee or any other committee appointed pursuant to this Section 4.12 shall be held at such times and places as are determined by the Board of Directors, or by any such committee; and when notice thereof has been given to each member of such committee, no further notice of such regular meetings need be given thereafter. Special meetings of any such committee may be held at any place which has been designated from time to time by resolution of such committee or by written consent of all members thereof, and may be called by any director who is a member of such committee, upon written notice to the members of such committee of the time and place of such special meeting given in the manner provided for the giving of written notice to members of the Board of Directors of the time and place of special meetings of the Board of Directors; provided that notice of a special meeting need not state the business proposed to be transacted at the meeting. Notice of any special meeting of any committee may be waived in writing at any time before or after the meeting and will be waived by any director by attendance thereat, except when the director attends such special meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Each committee shall elect a presiding officer from its members and may fix its own rules of procedure which shall not be inconsistent with these Bylaws. It shall keep regular minutes of its proceedings and report them to the Board of Directors for a majority of the authorized number of members of any such committee shall constitute a quorum for the transaction of business; and the act of a majority of those present at any meeting at which a quorum is present shall be the act of such committee.

e)     **Responsibility.** Neither the designation of an Executive Committee or other committee, the delegation thereto of authority, nor action by such committee shall relieve the Board of Directors, or any member thereof, of any responsibility or duty imposed by law.

**Section 4.13 Organization.** At every meeting of the Board of Directors, the Chairman of the Board of Directors, or, if a chairman has not been appointed or is absent, the president, or if the president is absent, the most senior vice president, or, in the absence of any such officer, a chairman of the meeting chosen by a majority of the directors present, shall preside over the ·meeting. The secretary, or in his absence, an assistant secretary directed to do so by the president shall act as secretary of the meeting and shall keep regular minutes of the proceedings of the Board of Directors.

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016        - P. 12

AIAPROD00308839

**Section 4.14 Director Conflict of Interest.** No contract or other transaction between the corporation and one or more of its directors or any other corporation, firm, association or entity in which one or more of its directors are directors or officers or are financially interested, shall be either void or voidable because of such relationship or interest or because such director or directors are present at the meeting of the Board of Directors or a committee thereof which authorizes, approves or ratifies such contract or transaction or because his or their votes are counted for such purposes, if:

    **(a)** the fact of such relationship or interest is disclosed or known to the Board of Directors or committee which authorizes, approves or ratifies the contract or transaction by a vote or consent sufficient for the purpose without counting the votes or consents of such interested directors; or

    **(b)** the fact of such relationship or interest is disclosed or known to the shareholders entitled to vote and they authorize, approve or ratify such contract or transaction by vote or written consent, in which vote or consent such interested directors may participate to the extent that they are also shareholders; or

    **(c)** the contract or transaction is fair and reasonable to the corporation and the fact of such relationship or interest is fully and fairly disclosed or known to the corporation.

Common or interested directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors or a committee thereof which authorizes, approves, or ratifies such contract or transaction.

## ARTICLE V
## OFFICERS

**Section 5.1 Officers Designated.** The officers of the corporation consist of a president, one or more vice presidents (the number thereof to be determined by the Board of Directors), a secretary, and a treasurer, each of whom shall be elected by the Board of Directors. The order of seniority of vice presidents shall be the order of their nomination, unless otherwise determined by the Board of Directors. Such other officers and assistant officers as may be deemed necessary may be elected or appointed by the Board of Directors. Any two or more offices may be held by the same person, except the offices of president and secretary. (Idaho Code Section 30-1-50).

**Section 5.2 Tenure and Duties of Officers**

    **(a)** **Term of Office.** All officers shall hold office at the pleasure of the Board of Directors and until their successors shall have been duly elected and qualified, or

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016        - P. 13

AIAPROD00308840

until their resignation or removal. If the office of any officer becomes vacant for any reason, the vacancy may be filled by the Board of Directors.(Idaho Code Section 30-1-50).

(b) **The President**. The president shall be the principal executive officer of the corporation and, subject to the control of the Board of Directors, shall in general supervise and control all of the business and affairs of the corporation. He shall, when present, preside at all meetings of the stockholders and of the Board of Directors. He may sign, with the secretary or any other proper officer of the corporation thereunder authorized by the Board of Directors, certificates for shares of the corporation, any deeds, mortgages, bonds, contracts, or other instruments which the Board of Directors has authorized to be executed, except in cases where the signing and execution thereof shall be expressly delegated by the Board of Directors or by these Bylaws to some other officer or agent of the corporation, or shall be required by law to be otherwise signed or executed; and in general the president shall perform all duties commonly incident to the office of president and such other duties as may be prescribed by the Board of Directors from time to time.

(c) **The Vice President**. In the absence of the president or in the event of his death, inability or refusal to act, the vice president (or in the event there is more than one vice president, the vice presidents in the order designated at the time of their election, or in the absence of any designation, then in the order of their election) shall perform the duties of the president and, when so acting, shall have all the powers of and be subject to all the restrictions upon the president. Any vice president may sign, with the secretary or an assistant secretary, certificates for shares of the corporation; and the vice president shall perform other duties commonly incident to the office of vice president and such other duties as from time to time may be assigned to him by the president or by the Board of Directors.

(d) **The Secretary**. The secretary shall: (a) attend all meetings and keep the minutes of the proceedings of the stockholders and of the Board of Directors in one or more books provided for that purpose; (b) see that all notices are duly given in accordance with the provisions of these Bylaws or as required by law; (c) be custodian of the corporate records and of the seal of the corporation and see that the seal of the corporation is affixed to all documents the execution of which on behalf of the corporation under its seal is duly authorized; (d) keep a register of the post office address of each shareholder which shall be furnished to the secretary by such shareholder; (e) sign, with the president, or a vice president, certificates for shares of the corporation,

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016          - P. 14

**Exhibit - 4, p. 60**
**19-ER-4789**

AIAPROD00308841

issuance of which shall have been authorized by resolution of the Board of Directors; (f) have general charge of the stock transfer books of the corporation; and (g) in general perform all duties commonly incident to the office of secretary and such other duties as from time to time may be assigned to him by the president or by the Board of Directors.

(e) **The Treasurer**. The treasurer shall: (a) have charge and custody of and be responsible for all funds and securities of the corporation; (b) receive and give receipts for monies due and payable to the corporation from any source whatsoever, and deposit all such monies in the name of the corporation in such banks, trust companies or other depositories as shall be selected in accordance with the provisions of Article VI of these Bylaws; and (c) in general perform all of the duties commonly incident to the office of treasurer and such other duties as from time to time may be assigned to him by the president or by the Board of Directors. If required by the Board of Directors, the treasurer shall give a bond for the faithful discharge of his duties in such sum and with such surety or sureties as the Board of Directors shall determine.

(f) **Assistant Secretaries and Assistant Treasurers**. The assistant secretaries, when authorized by the Board of Directors, may sign with the president or vice president certificates for shares of the corporation the issuance of which shall have been authorized by a resolution of the Board of Directors. The assistant treasurers shall respectively, if required by the Board of Directors, give bonds for the faithful discharge of their duties in such sums and with such sureties as the Board of Directors shall determine. The assistant secretaries and assistant treasurers, in general shall perform such duties as shall be assigned to them by the secretary or the treasurer, or by the president or the Board of Directors.

Section 5.3 **Resignations**. Any officer may resign at any time by giving written notice to the Board of Directors or to the president or to the secretary. Any such resignation shall be effective when received by the person or persons to whom such notice is given, unless a later time is specified therein, in which event the resignation shall become effective at such later time. Unless otherwise specified in such notice, the acceptance of any such resignation shall not be necessary to make it effective.

Section 5.4 **Removal**. Any officer or agent may be removed by the Board of Directors whenever, in its judgment, the best interests of the corporation will be served thereby; but such removal shall be without prejudice to the contract rights, if any, of the person so removed. Election or appointment of an

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016        - P. 15

AIAPROD00308842

officer or agent shall not of itself create contract rights. (Idaho Code Section 30-1-51).

Section 5.5 Compensation. The compensation of the officers shall be fixed from time to time by the Board of Directors. No officer shall be prevented from receiving such compensation by reason of the fact that such officer is also a director of the corporation.

## ARTICLE VI
## EXECUTION OF CORPORATE INSTRUMENTS AND
## VOTING OF SECURITIES OWNED BY THE CORPORATION

Section 6.1 Execution of Corporate Instruments. The Board of Directors may, in its discretion, determine the method and designate the signatory officer or officers, or other person or persons, to execute on behalf of the corporation any corporate instrument or document, or to sign on behalf of the corporation the corporate name without limitation, or to enter into contracts on behalf of the corporation, except where otherwise provided by law or these Bylaws; and such execution or signature shall be binding upon the corporation, Authorization granted to any person hereunder may be general or confined to specific instances.

Unless otherwise specifically determined by the Board of Directors or otherwise required by law, promissory notes, deeds of trust, mortgages and other evidences of indebtedness of the corporation, and certificates of shares of stock owned by the corporation, shall be executed, signed or endorsed by the president or any vice president, and by the secretary or treasurer or any assistant secretary or assistant treasurer. All other instruments and documents requiring the corporate signature may be executed as aforesaid or in such manner as may be directed by the Board of Directors.

Section 6.2 Loans. No loan shall be contracted on behalf of the corporation and no evidence of indebtedness s shall be issued in its name unless authorized by resolution of the Board of Directors, Such authorization may be general or confined to specific instances.

Section 6.3 Deposits and Checks. All funds of the corporation not otherwise employed shall be deposited from time to time to the credit of the corporation in such banks, trust companies or other depositories as the Board of Directors may select. All checks and drafts drawn on banks or other depositaries on funds to the credit of the corporation or in special accounts of the corporation shall be signed by 'Such person or persons as the Board of Directors shall authorize to do so. Such authorization may be general or confined to specific instances.

Section 6.4 Voting of Securities Owned by the Corporation. All stock and other securities of other corporations owned or

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016          - P. 16

AIAPROD00308843

held by the corporation for itself, or for other parties in any capacity, shall be voted, and all proxies with respect thereto shall be executed, by the person authorized to do so by resolution of the Board of Directors, or, in the absence of such authorization, by the president or any vice president.

## ARTICLE VII
## SHARES OF STOCK

Section 7.1 Form and Execution of Certificates. Certificates representing shares of the corporation shall be in such form as shall be determined by the Board of Directors. Such certificates shall be signed by the president or a vice president and by the secretary or an assistant secretary and may be sealed with the corporate seal or a facsimile thereof. The signatures of such officers upon a certificate may be facsimiles if the certificate is manually signed on behalf of a transfer agent or a registrar, other than the corporation itself or one of its employees. In case any officer, transfer agent, or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be su6h officer, transfer agent or registrar before such certificate is issued, it may be issued by the corporation with the same effect as if he were such officer transfer agent or registrar at the date of issue. (Idaho Code Section 30-1-23).

Section 7.2 Lost Certificates. The corporation may issue a new certificate of stock in place of any certificate theretofore issued by the corporation alleged to have been lost, stolen, destroyed or mutilated; and the corporation may require the owner of such lost, stolen, destroyed or mutilated certificate, or his legal representative, to give the corporation a bond sufficient to indemnify it against any claim that may be made against the corporation on account of the alleged loss, theft, destruction or mutilation of any such certificate or the issuance of such new certificate .

Section 7.3 Transfers. Each certificate for shares shall be consecutively numbered or otherwise identified. The name and address of the person to whom the shares represented thereby are issued, with the number of shares and date of issue, shall be entered on the stock transfer books of the corporation. All certificates surrendered to the corporation for transfer shall be cancelled; and, except as provided in Section 7.2, no new certificate shall be issued until the former certificate for a like number of shares shall have been surrendered and cancelled. Transfer of record shares of stock of the corporation shall be made only on the stock transfer books of the corporation by the holder of record thereof or by his legal representative, who shall furnish proper evidence of authority to transfer, or by his attorney thereunto authorized by power of attorney duly executed and filed with the secretary of the corporation, and on surrender for cancellation of a properly endorsed certificate or certificates for a like number of shares.

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016          - P. 17

AIAPROD00308844

Section 7.4 **Fixing Record Dates.** In order that the corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or to express consent to corporate action in writing without a meeting, or to receive payment of any dividend or other distribution or allotment of any rights or to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board of Directors may provide that the stock transfer books shall be closed for a stated period but not to exceed, in any case, fifty (50) days. If the stock transfer books shall be closed for the purpose of determining stockholders entitled to notice of or to vote at a meeting of stockholders, such books shall be closed for at least ten (10) days immediately preceding such meeting. In lieu of closing the stock transfer books, the Board of Directors may fix, in advance, a record date for any such determination of stockholders. Such record date shall be not more than fifty (50) days and, in the case of a meeting of stockholders, not less than ten (10) days prior to the date on which the particular action, requiring such determination of stockholders, is to be taken. If the stock transfer books are not closed and no record date is fixed: (a) the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day on which notice is mailed, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held; (b) the record date for determining stockholders entitled to express consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is necessary, shall be the day on which the first written consent is expressed; and (c) the record date for determining stockholders for any other purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto. A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting. (Idaho Code Section 39-1-30).

Section 7.5 **Registered Stockholders.** The corporation shall be entitled to recognize the exclusive right of a person registered in its books as the owner of shares to receive dividends and to vote as such owner, and shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person whether or not it shall have express or other notice thereof, except as otherwise provided by the laws of Idaho.

Section 7.6 **Issuance, Transfer and Registration of Shares.** The Board of Directors may make such rules and regulations, not inconsistent with law or with these Bylaws, as it may deem advisable concerning the issuance, transfer and registration of certificates for shares of the capital stock of the corporation. The Board of Directors may appoint a transfer agent or registrar of transfers or both, and may require all certificates for shares of the corporation to bear the signature of either or both.

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016         - P. 18

AIAPROD00308845

## ARTICLE VIII
## OTHER SECURITIES OF THE CORPORATION

Section 8.1 **Execution of other Securities.** All bonds, debentures and other corporate securities of the corporation, other than stock certificates, may be signed by the president or any vice president, or such other person as may be authorized by the Board of Directors; and the corporate seal may be impressed thereon or a facsimile of such seal imprinted thereon and attested by the signature of the secretary or an assistant secretary; provided, however, that where any such bond, debenture or other corporate security shall be authenticated by the manual signature of a trustee under an indenture pursuant to which such bond, debenture or other corporate security shall be issued, the signatures of the persons signing and attesting the corporate seal on such bond, debenture or other corporate security may be the imprint facsimile of the signature of such persons. Interest coupons appertaining to any such bond, debenture or other corporate security, authenticated by a trustee as aforesaid, shall be signed by the treasurer or an assistant treasurer of the corporation or such other person as may be authorized by the Board of Directors, or be imprinted thereon the facsimile signature of such person. In case any officer who shall have signed or attested any bond, debenture or other corporate security, or whose facsimile signature shall appear thereon or on any such interest coupon, shall have ceased to be such officer before the bond, debenture or other corporate security so signed or attested shall have been delivered, such bond, debenture or other corporate security nevertheless may be adopted by the corporation and issued and delivered as though the person who signed the same or whose facsimile signature shall have been used thereon had not ceased to be such officer of the corporation .

## ARTICLE IX
## DIVIDENDS

Section 9.1 **Declaration and Payment of Dividends.** Dividends upon the capital stock of the corporation, subject to the provisions of the Articles of Incorporation, if any, may be declared by the Board of Directors pursuant to law at any regular or special meeting. Dividends may be paid by the corporation in cash, in property, or in shares of its capital stock, subject to the provisions of the Articles of Incorporation. (Idaho Code Section 30-1-45).

Section 9.2 **Dividend Reserve.** Before payment of any dividend, there may be set aside out of any funds of the corporation available for dividends such sum or sums as the Board of Directors may from time to time, in its absolute discretion, think proper as a reserve or reserves to meet contingencies, or for equalizing dividends, or for repairing or maintaining any property of the corporation, or for such other purpose as the Board of Directors shall think conducive to the interests of the

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016          - P. 19

AIAPROD00308846

corporation; and the Board of Directors may modify or abolish any such reserve in the manner in which it was created.

## ARTICLE XI
## INDENIFICATION OF DIRECTORS ,OFFICERS , EMPLOYEES AND OTHER AGENTS

**Section 11.1 Directors and Executive Officers.** The corporation shall indemnify the directors and executive officers of the corporation or another enterprise to the full extent permitted by the Idaho Business Corporation Act, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the corporation to provide broader indemnification rights than said Act permitted the corporation to provide prior to such amendment); provided, however, that the corporation may limit the extent of such indemnification by individual contracts with its directors and executive officers; and provided, further, that the corporation shall not be required to indemnify any director or executive officer in connection with any proceeding (or part thereof) initiated by such person or any proceeding by such person against the corporation or its directors, officers, employees or other agents unless (a) such indemnification is expressly required to be made by law; (b) the proceeding was authorized by the Board of Directors of the corporation or (c) such indemnification is provided by the corporation under the Idaho Business Corporation Act. (Idaho Code Section 30-1-5(a),(b)).

**Section 11.2 Officers, Employees, and Agents.** The corporation shall have the power to indemnify other officers, employees and other agents of the corporation or another enterprise as set forth in the Idaho Business Corporation Act. (Idaho Code Section 30-1-5(a),(b)).

**Section 11.3 Good Faith.** For purposes of any determination under this Bylaw, a director, officer, employee or other agent of the corporation or another enterprise shall be deemed to have acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, to have had no reasonable cause to believe that his conduct was unlawful, if his action is based on the records or books of account of the corporation or another enterprise, or on information supplied or reports made to him by the officers of the corporation or another enterprise in the course of their duties, or on the advice of legal counsel for the corporation or another enterprise or on information or records given or reports made to the corporation or another enterprise by an independent certified public accountant or by an appraiser or other expert selected with reasonable care by the corporation or another enterprise. The provisions of this Section 11.3 shall not be deemed to be

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016          - P. 20

AIAPROD00308847

exclusive and/or to limit in any way the circumstances in which a person may be deemed to have met the applicable standard of conduct set forth by the Idaho Business Corporation Act. (Idaho Code Sections 30-1-5(a),(b); 30-1-35).

Section 11.4 **Another Enterprise.** The term "another enterprise" as used in this Article XI shall mean any other corporation, partnership, joint venture, trust or other enterprise, including any employee benefit plan, or which a person is or was serving at the request of the corporation as a director, officer, employee or other agent. (Idaho Code Section 30-1-5(a),(b)).

Section 11.5 **Expenses.** The corporation shall advance, prior to the final disposition of any proceeding, promptly following request therefore, all expenses incurred by any director, officer, or employee or other agent of the corporation or another enterprise in connection with such proceeding upon receipt of an undertaking by or on behalf of such person to repay said amount if it should be determined ultimately that such person is not entitled to be indemnified under this Article XI or otherwise. (Idaho Code Section 30-1-S(e)).

Notwithstanding the foregoing, unless otherwise determined pursuant to Section 11.6, no advance shall be made by the corporation if a determination is reasonable and promptly made (a) by the Board of Directors by a majority vote of a quorum consisting of directors who were not parties to the proceeding, or (b) if such quorum is not obtainable or, even if obtainable, a quorum of disinterested directors so directs, by independent legal counsel in a written opinion that, based upon the facts known to the decision-making party at the time such determination is made, such person acted in bad faith or in a manner that such person did not believe to be in or not opposed to the best interests of the corporation, or, with respect to any criminal proceeding, such person believed or had reasonable cause to believe that his conduct was unlawful. (Idaho Code Section 30-1-5(d)).

Section 11.6 **Enforcement.** Without the necessity of entering into an express contract, all rights to indemnification and advances under this Article XI shall be deemed to be contractual rights and to be effective to the same extent and as if provided for in a contract between the corporation and the person who serves as a director, officer, employee or other agent of the corporation or another enterprise at any time while this Article XI and relevant provisions of the Idaho Business Corporation Act and other applicable law, if any, are in effect. Any right to indemnification or advances granted by this Article XI to any person shall be enforceable by or on behalf of the person holding such right in any court of competent jurisdiction if (a) the claim for indemnification or advances is denied, in whole or in

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016          - P. 21

AIAPROD00308848

part, or (b) no disposition of such claim is made within ninety (90) days of request thereof. The claimant in such enforcement action, if successful in whole or in part, shall be entitled to be paid also the expense of prosecuting his claim. It shall be a defense to any such action that the claimant has not met the standards of conduct which make it permissible under the Idaho Business Corporation Act for the corporation to indemnify the claimant for the amount claimed; but the burden of proving such defense shall be on the corporation, Neither the failure of the corporation (including its Board of Directors, independent legal counsel or its stockholders) to have made a determination prior to the commencement of such action that indemnification of the claimant is proper in the circumstances because he has met the applicable standard of conduct set forth in the Idaho Business Corporation Act, nor an actual determination by the corporation (including its Board of Directors, independent legal counsel or its stockholders) that the claimant has not met such applicable standard of conduct, shall be a defense to the action or create a presumption that claimant has not met the applicable standard of conduct.

Section 11.7 **Non-Exclusivity of rights.** The rights conferred on any person by this Article XI shall not be exclusive of any other right to which such person may now or hereafter be entitled under any statute, provision of the Articles of Incorporation, ·or Bylaws, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in his official capacity and as to action in another capacity while holding office. The corporation is specifically authorized to enter into individual contracts with any or all directors, officers, employees or other agents of the corporation or another enterprise respecting indemnification and advances; as provided by law. (Idaho Code Section 30-1-5(f)).

Section 11.8 **Survival of rights.** The rights conferred on any person by this Article XI shall continue as to a person who has ceased to be a director, officer, employee or other agent of the corporation or another enterprise and shall inure to the benefit of the heirs, executors and administrators such a person . (Idaho Code Section 30-1-S(i)).

Section 11.9 **Amendments.** Any repeal or modification of this Article XI shall only be prospective and shall not affect the rights under this Article XI in effect at the time of the alleged occurrence of any action or omission to act that is the cause of any proceeding against any agent of the corporation or another enterprise .

Section 11.10 **Savings Clause.** If this Article XI of the Bylaws or any portion hereof shall be invalidated on any ground by any court of competent jurisdiction, then the corporation shall nevertheless indemnify each agent to the full extent

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016          - P. 22

AIAPROD00308849

permitted by any applicable portion of this Article XI that shall not have been invalidated, or by any other applicable law.

**Section 11.11 Fees and Costs in Intracompany Suits.**

(a) With respect to Section 11.11, the following definitions apply.

(i) Claim means a claim for legal or equitable relief: (1) against the corporation, or (2) against any Constituent brought in the name of the corporation or brought directly against such Constituent by virtue of the Constituent's current or former position within the corporation.

(ii) Claiming Party means a current or former Constituent who initiates or asserts a Claim, or joins, offers substantial assistance to, or has a direct financial interest in, any Claim. A stockholder's status as a stockholder alone shall not, without more, constitute a direct financial interest in a Claim.

(iii) Constituent means a current or former officer, director, stockholder, subsidiary, or affiliate of the corporation.

(b) If any Claiming Party does not obtain a judgment on the merits of a Claim that substantially achieves, in substance and amount, the full remedy sought, then each Claiming Party shall be obligated jointly and severally to reimburse the corporation and any Constituent against whom the Claim was brought for all fees, costs, and expenses of every kind and description, including without limitation reasonable attorney fees and litigation expenses, incurred in connection with such Claim.

(c) If a court determines that the application of Section 11.11 changes, alters, revokes, abrogates, or in any way conflicts with the rights of stockholders as set forth in the Articles of Incorporation, this Section 11.11 shall be given the fullest effect possible that does not change, alter, revoke, abrogate, or conflict with such stockholder rights.

### ARTICLE XII
### NOTICES

**Section 12.1 Notice to Stockholders.** Whenever under any provision of these Bylaws notice is required to be given to any stockholder, it shall be given in writing, timely and duly deposited in the United States mail, postage prepaid, and

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016        - P. 23

AIAPROD00308850

addressed to his last known post office address as shown by the stock transfer books of the corporation or its transfer agent or to such other last known address of which the corporation may have notice. Such notice to any stockholder shall be deemed to be delivered when deposited in the United States mail in accordance with this Section 12.1. (Idaho Code Section 30-1-29).

Section 12.2 **Notice to Directors.** Any notice required to be given to any director may be given by the method stated in Section 12.1, or by telegram except that such notice other than one which is delivered personally shall be sent to such address as such director shall have filed in writing with the secretary, or, in the absence of such filing, to the last known post office address of such director. (Idaho Code Section 30- 1-43).

Section 12.3 **Address Unknown.** If no address of a stockholder or director be known, notice may be sent to the office of the corporation required to be maintained pursuant to Section 1.1 hereof.

Section 12.4 **Affidavit of Mailing.** An affidavit of mailing, executed by a duly authorized and competent employee of the corporation or its transfer agent appointed with respect to the class of stock affected, specifying the name and address or the names and addresses to the stockholder or stockholders, or director of directors, to whom any such notice or notices was or were given, and the time and method of giving the same, shall be conclusive evidence of the statements therein contained.

Section 12.5 **Time Notices Deemed Given.** All notices given by mail, as above provided, shall be deemed to have been given at the time of mailing; and all notices given by telegram shall be deemed to have been given at the sending time recorded by the telegraph company transmitting the notices.

Section 12.6 **Methods of Notice.** The period or limitation of time within which any stockholder may exercise any option or right, or enjoy any privilege or benefit, or be required to act, or within which any director may exercise any power or right, or enjoy any privilege, pursuant to any notice sent him in the manner above provided, shall not be affected or extended in any manner by the failure of such stockholder or such director to receive such notice.

Section 12.7 **Failure to Receive Notice.** The period or limitation of time within which any stockholder may exercise any option or right, or enjoy any privilege or benefit, or be required to act, or within which any director may exercise any power or right, or enjoy any privilege, pursuant to any notice sent him in the manner above provided, shall not be affected or extended in any manner by the failure of such stockholder or such director to receive such notice.

Section 12.8 **Notice to Person with Whom Communication is Unlawful.** Whenever notice is required to be given, under any

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016        - P. 24

provision of law or of the Articles of Incorporation or Bylaws of the corporation, to any person with whom communication is unlawful, the giving of such notice to such person shall not be required and there shall be no duty to apply to any governmental authority or agency for a license or permit to give such notice to such person. Any action or meeting which shall be taken or held without notice to any such person with whom communication is unlawful shall have the same force and effect as if such notice had been duly given. In the event that the action taken by the corporation is such as to require the filing of a certificate under any provision of the Idaho Business Corporation Act, the certificate shall state, if such is the fact and if notice is required, that notice was given to all persons entitled to receive notice except such persons with whom communications is unlawful.

Section 12.9 **Waiver of Notice.** Whenever any notice is required to be given to any stockholder or director of the corporation under the provisions of these Bylaws or under the provisions of the Articles of Incorporation or under the provisions of the Idaho Business Corporation, a waiver thereof in writing signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice. (Idaho Code Section 30-1-144).

### ARTICLE XIII
### AMENDMENTS

Section 13.1 **Amendments.** These Bylaws may be altered, amended or repealed and new Bylaws may be adopted by the Board of Directors or by the stockholders at any regular or special meeting.

### ARTICLE XIV
### LOANS TO DIRECTORS AND OTHERS

Section 14.1 **Certain Corporate loans and Guarantees.** The corporation may make loans of money or property to, or guarantee the obligations of, or otherwise use its credit to assist any officer or other employee of the corporation, its parent or a subsidiary, including any such person who is also a director of the corporation or its parent or any subsidiary, or adopt any employee benefit plan or plans authorizing such loan, guaranties or other assistance, upon the approval of the Board of Directors alone if the Board of Directors determines that such a loan or guaranty or plan may reasonably be expected to benefit the corporation. In all other circumstances, the corporation shall not lend money or use its credit to assist its directors without authorization in the particular case by its stockholders. (Idaho Code Section 30-1-47).

AMENDED AND RESTATED BYLAWS OF
AIA SERVICES CORPORATION
EFFECTIVE MAY 26, 2016        - P. 25

AIAPROD00308852

**AMENDED AND RESTATED BYLAWS**

**OF**



**AIA Insurance, Inc**
(an Idaho corporation)

Effective: May 26, 2016

### ARTICLE I OFFICES

**Section 1.1 Registered Office.** The registered office of the corporation required by the Idaho Business Corporation Act to be maintained in the State of Idaho may, but need not be, identical with the principal office in the State of Idaho; and the address of the registered office may be changed from time to time by the Board of Directors or the President of the corporation. (Idaho Code Sections 30- l- I 2(a) and 30-1-13.)

**Section 1.2 Principal Office; Other Offices.** The corporation shall also have and maintain an office or principal place of business in Lewiston, Idaho or at such other place as may be fixed by the Board of Directors, and may also have offices al such other places, both within and without the State of Idaho, as the Board of Directors may from time to time determine or the business of the corporation may require.

### ARTICLE II CORPORATE SEAL

**Section 2. Corporate Seal.** The corporate seal shall consist of a die bearing the name of the corporation and the inscription, "Corporate Seal -- State of Idaho". The seal may be used by causing it or a facsimile thereof to be impressed or affixed or in any other manner reproduced. The seal may be altered at the pleasure of the Board of Directors. (Idaho Code Section 30- l -4(c)).

### ARTICLE III STOCKHOLDERS' MEETINGS

**Section 3.1 Place of Meetings.** The Board of Directors may designate any place, either within or without the State of Idaho, as the place of meeting for any annual meeting or for any special meeting of stockholders called by the Board of Directors. A waiver of notice signed by all stockholders entitled to vote at a meeting may designate any place, either within or without the State of Idaho, as the place for the holding of such meeting. If no designation is made, or if a special meeting be otherwise called, the place of meeting shall be the principal office of the corporation in the State of Idaho. (Idaho Code Section 30-1-28).

**Section 3.2 Annual Meetings.** The annual meeting of the stockholders of the corporation shall be held on the first Monday in the month of May in each year at the hour of 10:00 o'clock a.m., or on such other date and at such other time which may from time to time be designated by the Board of Directors, for the purpose of electing directors and for the transaction of such other business as

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

AIAPROD00307942

may properly come before the meeting. (Idaho Code Section 30-1-28).

**Section 3.3 <u>Special Meetings</u>.** Special meetings of the stockholders of the corporation may be called at any time, for any purpose or purposes, by the Board of Directors or by the holders of not less than one-fifth ( l/5) of all outstanding shares of stock of the corporation entitled to vote at the meeting or by the president of the corporation. Special meetings of the stockholders of the corporation may not be called by any other person or persons. (Idaho Code Section 30-1-28).

**Section 3.4 <u>Notice of Meetings</u>.** Written notice stating the place, day and hour of the meeting and, in case of a special meeting, the purpose or purposes for which the meeting is called, shall, unless otherwise prescribed by statute, be delivered not less than ten nor more than fifty days before the date of the meeting, either personally or by mail, by or at the direction of the president, or the secretary, or the officer or other persons calling the meeting, to each stockholder of record entitled to vote at such meeting, or to each specified beneficial stockholder certified for the purpose of receiving such notice under Section 3.10. (Idaho Code Section 30-1-29).

Such notice of any meeting of stockholders may be waived in writing, signed by the person entitled to notice thereof, either before or after such meeting, and will be waived by any stockholder by his attendance threat in person or by proxy, except when the stockholder attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Any stockholder so waiving notice of such meeting shall be bound by the proceedings of any such meeting in all respects as if due notice hereof had been given. (Idaho Code Section 30-1-144).

**Section 3.5 <u>Quorum</u>.** Except as otherwise provided in the Articles of Incorporation, a majority of the outstanding shares of the corporation entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of stockholders. Any shares, the voting of which at said meeting has been enjoined, or which for any reason cannot be lawfully voted at such meeting, shall not be counted to determine a quorum at such meeting. In the absence of a quorum any meeting of stockholders may be adjourned, from time to time, by vote of the holders of a majority of the shares represented threat; but no other business shall be transacted at such meeting. The stockholders present at a duly organized and convened meeting where a quorum has been present can continue to transact business as a quorum until adjourn men t, notwithstanding the withdrawal of enough stockholders to leave less than a quorum. Except as otherwise provided by law, the Articles of Incorporation or these Bylaws, if a quorum is present, the affirmative vote of a majority of the shares represented at the meeting and entitled to vote on the subject matter shall be the act of the stockholders. (Idaho Code Section 30-1-32).

**Section 3.6 <u>Adjournment and Notice of Adjourned Meetings</u>.** Any meeting of stockholders at which a quorum is present, whether annual or special, may be adjourned from time to time by the vote of a majority of the shares, the holders of which are present either in person or by proxy. When a meeting is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken. At the adjourned meeting the corporation may transact any business which might have been transacted at the original meeting. If the adjournment is for more than thirty (30) days, or if after the adjournment a new record date is fixed for the adjournment meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

AIAPROD00307943

**Section 3.7 <u>Proxies</u>.** At all meetings of stockholders, a stockholder may vote either in person or by proxy executed in writing by the stockholder or by h is duly authorized attorney-in-fact. Such proxy shall be filed with the secretary of the corporation before or at the time of the meeting. No proxy shall be valid after eleven (11) months from the d ate of its execution, unless otherwise provided in the proxy. (Idaho Code Section 30- l-33(c)).

**Section 3.8 <u>Voting Rights</u>.** Except as otherwise provided in the Articles of incorporation, each outstanding share, regardless of class, entitled to vote shall be entitled to one vote upon each matter submitted to a vote at a meeting of stockholders. Except as otherwise provided in the Articles of Incorporation, at each election for directors every stockholder entitled to vote at such election shall have the right to vote, in person or by proxy, the number of shares owned by him for as many persons as there are directors to be elected and for whose election he has a right to vote, or to cumulate his votes by giving one (1) candid ate as many votes as the number of such directors multiplied by the number of his shares shall equal, or by distributing such votes on the same principle among any number of such candidates. (Idaho Code Section 30-l - 33(a),(d)).

For the purpose of determining those stockholders entitled to vote at any meeting of the stockholders, except as otherwise provided by law, only persons in whose names shares stand on the stock records of the corporation on the record d ate, as provided in Sections 3.11 and 7.4 of these Bylaws, shall be entitled to vote at any meeting of stockholder. All elections of directors shall be by written ballot.

**Section 3.9. <u>Voting of Shares by Certain Holders</u>.** Shares standing in the name of another corporation, domestic or foreign, may be voted by such officer, agent or proxy as the bylaws of such other corporation my prescribe or, in the absence of such provision , as the Board of Directors of such other corporation may determine. (Idaho Code Section 30- l-33(e)).

Shares held by an administrator, executor, guardian or conservator may be voted by him, either in person or by proxy, without a transfer of such shares into his name. Shares standing in the name of a trustee may be voted by him, either in person or by proxy; but no trustee shall been titled to vote shares held by him without a transfer of such shares into his name. (Idaho Code Section 30-1-33(t)).

Shares standing in the name of a receiver may be voted by such receiver; and shares held by or under the control of a receiver may be voted by such receiver without the transfer thereof into his name if authority so to do be contained in an appropriate order of the court by which such receiver was appointed. (Idaho Code Section 30- l-33(g)).

A stockholder whose shares are pledged shall be entitled to vote such shares until the shares have been transferred into the name of the pledgee; and thereafter the pledgee shall be entitled to vote the shares so transferred unless the pledgor shall have obtained from the pledgee a proxy to vote or take other action thereon in accordance with law. (Idaho Code Section 30-1-33(c)(3),(h)).

Neither treasury shares of its own stock held by the corporation, nor shares held by another corporation if a majority of the shares entitled to vote for t h e election of directors of such other corporation is held by the corporation, shall be voted at any meeting or counted in determining the total number of outstanding shares at any given time. (Idaho Code

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

AIAPROD00307944

Section 30- l - 33(b)).

**Section 3.10 Joint Owners of Stock.** If shares or other securities having voting power stand of record in the names of two (2) or more persons, whether fiduciaries, members of a partnership, joint tenants, tenants in common, tenants by the entirety, or otherwise, or if two (2) or more persons have the same fiduciary relationship respecting the same shares, unless the Secretary is given written notice to the contrary and is furnished with a copy of the instrument or order appointing them or creating the relationship wherein it is so provided, their acts with respect to voting shall have the following effect: (a) if only one votes, his act binds all; (b) if more than one votes, the act of the majority so voting binds all; (c) if more than one votes, but the vote is evenly split on any particular matter , each faction may vote the securities in question proportionally. If the instrument filed with the secretary shows that any such tenancy is held in unequal interests, a majority or even-split for the purpose of this Section 3.10 shall be a majority or even-split in interest.

The Board of Directors may adopt by resolution a procedure whereby a stockholder of the corporation may certify in writing to the corporation that all or a portion of the shares registered in the name of such stockholder are held for the account of a specified person or persons. The resolution shall set forth (a) the classification of stockholder who m ay certify, (b) the purpose or purposes for which the certification may be made, (c) the form of certification and information to be contained therein, (d) the number of days before or after any record date or date of closing of the stock transfer books, by which time the certification must be received by the corporation to be effective for the record d ate or date of closing of the stock transfer books, and (e) such other provisions with respect to the procedure as are deemed necessary or desirable. Upon receipt by the corporation of a certification complying with the procedure, the persons specified in the certification shall be deemed, for the purpose or purposes set forth in the certification, to be the holders of record of the number of shares specified in place of the shareholder making the certification. (Idaho Code Section 30- l -2(f)).

**Section 3.1 1 List of Stockholders.** The secretary shall make, at least ten (10) days before every meeting of stockholders, a complete record of the stockholders entitled to vote at such meeting or any adjournment thereof, arranged in alphabetical order and showing the address of each stockholder and the number of shares registered in the name of each stockholder. Such record shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours, for a period of at least ten (10) days prior to the meeting, either at a place within the city where the meeting is to be held, which place shall be specified in the notice of the meeting or, if not specified , at the place where the meeting is to be held. The list shall be produced and kept open at the time and place of meeting, and shall be subject to inspection by any stockholder during the whole time of the meeting for the purposes thereof. (Idaho Code Section 30-13 l).

**Section 3.12 Organization.** At every meeting of stockholders, the Chairman of the Board of Directors, or, if a Chairman has not been appointed or is absent, the president, or, if the president is absent, the most senior vice president present, or in, the absence of any such officer, a chairman of the meeting chosen by a majority in interest of the stockholders entitled to vote, present in person or by proxy, shall act as chairman. The secretary or, in his absence, an assistant secretary directed to do so by the president, shall act as secretary of the meeting.

**Section 3.13 Nomination of Directors.** Nominations of persons for election to

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

**Exhibit - 4, p. 75**
**19-ER-4804**

AIAPROD00307945

the Board of Directors of this corporation at the annual meeting of stockholders may be made at such meeting by or at the direction of the Board of Directors, by any nominating committee or person appointed by the Board of Directors, or by any stockholder of the corporation entitled to vote for the election of directors at the meeting who timely complies with the notice procedures herein set forth. To be timely, a stockholder's notice must be delivered to, or mailed to and received by, the secretary of the corporation at t he corporation 's principal executive offices not later than the December 31 immediately preceding the annual meeting.

**Section 3.14 <u>Business Introduced by Stockholders at Annual Meeting</u>.** Where business introduced by a stockholder is not specified in the notice of annual meeting, then (in addition to any other applicable requirements) for business to be properly introduced by a stockholder at an annual meeting of stockholders, the stockholder must have given timely notice thereof in writing to the secretary of the corporation to be timely, a stockholder's notice must be delivered to, or mailed to and received by, the secretary of the corporation in the same manner and subject to the same time requirements provided in Section 3.13 of these Bylaws for stockholder notice of nominations to the Board of Directors. A stockholder's notice must set forth, as to each matter the stockholder proposes to bring before the meeting, (a) a brief description of the business desired to be brought before the meeting and the reasons for conducting such business at the meeting, (b) the name and record address of the stockholder proposing such business, (c) the class, series and number of shares of the corporation's stock which are beneficially owned by the stockholder, and (d) any material interest of the stockholder in such business.

**Section 3.15 <u>Informal Action by Stockholder</u>.** Any action required or permitted to be taken at a meeting of the stockholders may be taken without a meeting if a consent in writing, setting for the action so taken , shall be signed by all of the stockholders entitled to vote with respect to the subject matter thereof. Such consent shall have the same effect as a unanimous vote of stockholders. (Idaho Code Section 30-1-145).

**ARTICLE IV <u>DIRECTORS</u>**

**Section 4.1 <u>Number; Qualifications</u>.** The number of directors presently authorized is three (3). The authorized n umber of directors of the corporation shall be fixed, and may be increased or decreased, from time to time by the Board of Directors either by a resolution or a bylaw duly adopted by the Board of Directors. No decrease in the number of directors constituting the Board of Directors shall shorten the term of any incumbent director. Directors need not be residents of the State of Idaho or stockholders unless so required by the Articles of Incorporation. If for any cause the directors shall not have been elected at an annual meeting, they may be elected as soon thereafter as convenient at a special meeting of the stockholders called for that purpose in the manner provided by law or in these Bylaws. (Idaho Code Sections 30-1-28, 30-1-35 and 30-1-36).

**Section 4.2 <u>Term</u>.** Each director shall serve until the next annual meeting of stockholders and his successors is duly elected and qualified, or until his death, resignation or removal. (Idaho Code Section 30- 1-36).

**Section 4.3 <u>Newly Created Directorships and Vacancies</u>.** Newly created directorships resulting from any increase in the number of directors and any vacancies on the Board of Directors resulting from death, resignation, disqualification, removal or other cause shall be filled by the affirmative vote of a majority of the remaining directors then in office (and not by stockholders), even if less than a quorum of the authorized Board of Directors. A

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

**Exhibit - 4, p. 76**
**19-ER-4805**

AIAPROD00307946

director elected to fill a vacancy shall be elected for the unexpired term of his predecessor in office. The stockholders may elect his successor at the next annual meeting of stockholders or at any special meeting duly called for that purpose and held prior to the next annual meeting.

**Section 4.4 <u>Powers</u>.** All corporate powers shall be exercised by and under the authority of, and the business and affairs of the corporation shall be managed under the direction of, the Boa rd of Directors except as may otherwise be provided in the Idaho Business Corporation Act or the Articles of Incorporation. (Idaho Code Section 30-1-35).

**Section 4.5 <u>Resignation</u>.** An y director may resign at an y time by delivering his written resignation to the secretary, such resignation to specify whether it will be effective at a particular time, upon receipt by the secretary or at the pleasure of the Board of Directors. If no such specification is made, it shall be deemed effective at the pleasure of the Board of Directors. When one or more directors shall resign from the Board of Directors, effective at a future date, a majority of the directors then in office, including those who have so; and, subject to Section 4.3, each director so chosen shall hold office for the unexpired portion of the term of the director whose place shall be vacated and until his successor shall have been duly elected and qualified.

**Section 4.6 <u>Removal</u>.** At a special meeting of stockholders called for the purpose in the manner hereinabove provided, the entire Board of Directors, or any individual director, may be removed from office, with or without cause, and one or more new directors may be elected, by a vote of stockholders holding a majority of the outstanding shares then entitled to vote at an election of directors. If less than the entire Board of Directors is to be removed, no one director may be removed if the votes cast against his removal would be sufficient to elect him if then cumulatively voted at an election of the entire Boa rd of Directors. The holders of the corporation's Stated Value Preferred Stock being entitled to elect one (1) director by the provisions of the Articles of Incorporation, the provisions of this Section 4.6 shall apply, in respect to the removal of the director so elected, to the vote of the holders of the outstanding shares of Stated Value Preferred Stock and not to the vote of the outstanding shares as a whole. (Idaho Code Section 30-1-39).

**Section 4.7 <u>Meetings;</u>.**

**(a) <u>Annual Meetings;</u>.** The annual meeting of the Board of Directors shall be held immediately after the annual meeting of stockholders and at the place where such meeting is held. No notice of an annual meeting of the Board of Directors shall be necessary; and such meeting shall be held for the purpose of electing officers and transacting such other business as may lawfully come before it. (Idaho Code Section 30-1-43).

**(b) <u>Other Meetings</u>.** Regular and special meetings of the Board of Directors, or of any committee designated by the Board, may be held at any place within or without the State of Idaho. (Idaho Code Section 30-1-43).

**(c) <u>Telephone Meetings</u>.** Any member of the Board of Directors, or of any committee thereof, may participate in a meeting by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other at the same time; and participation in a meeting by such means shall constitute presence in person at such meeting. (Idaho Code Section 30-1-43).

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

**Exhibit - 4, p. 77**
**19-ER-4806**

AIAPROD00307947

**(d) <u>Notice of Meetings</u>.** Notice of the time and place of any regular or special meeting of the Board of Directors shall be given at least three (3) days previously thereto by written notice delivered personally or mailed to each director at his business address, or by telegram; provided that the Board of Directors may provide, by resolution , the time and place, either within or without the State of Idaho, for the holding of regular meetings without notice other than such resolution. Any director may waive notice of any meeting, in writing, at any time before or after the meeting. The attendance of a director at a meeting shall constitute a waiver of notice of such meeting, except where a director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board of Directors need be specified in the notice or waiver of notice of such meeting. (Idaho Code Section 30-1-43).

**(e) <u>Waiver of Notice Consent</u>.** The transaction of all business at any meeting of the Board of Directors, or any committee thereof, however called or noticed, or wherever held, shall be as valid as though taken at a meeting duly held after regular call and notice, if a quorum is present and if, either before or after the meeting, each of the directors not present signs a written waiver of notice, or a consent to holding such meeting, or an approval of the minutes thereof . All such waivers, consents or approvals shall be filed with the corporate records or made a part of the minutes of the meeting. (Idaho Code Section 30-1-43, 30-1-144).

**Section 4.8** <u>Quorum of Voting.</u>

**(a) <u>Quorum</u>.** A majority of the number of directors fixed by or in the matter provided in Section 4.1 shall constitute a quorum for the transaction of business at any meeting of the Board of Directors. If less than such majority is present at any meeting, a majority of the directors present may adjourn the meeting from time to time until the time fixed for the next regular meeting of the Board of Directors, without further notice other than by announcement at the meeting. (Idaho Code Section 30-1-40).

**(b) <u>Majority Vote.</u>** At each meeting of the Board of Directors at which a quorum is present, all questions and business shall be determined by a vote of a majority of the directors present; and the act of the majority of the directors present shall be the act of The Board of Directors, unless a different vote is required by law, the Articles of Incorporation or these Bylaws. (Idaho Code Section 30-1-40).

**(c) <u>Presumption of Assent</u>.** A director of the corporation who is present at a meeting of the Board of Directors (or any committee thereof) at which action on any corporate matter is taken shall be presumed to have assented to the action taken unless his dissent shall be entered in the minutes of the meeting or unless he shall file his written dissent to such action with the person acting as the secretary of the meeting before the adjournment thereof or shall forward such dissent by registered mail to the secretary of the corporation with in three (3) days after the adjournment of the meeting. Such right to dissent shall not apply to a director who voted in favor of such action. (Idaho Code Section 30-1-35).

**Section 4.9 <u>Action Without a Meeting</u>.** Unless otherwise restricted by the Articles of Incorporation or these Bylaws, any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting, if a consent in writing, setting forth the action so taken, is signed by all members of the Board of Directors or of the committee, as the case may be. (Idaho Code Section 30-1-44).

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

**AIAPROD00307948**

**Section 4.10 Fees and Compensation.** By resolution of the Board of Directors, a fixed fee or salary payable in cash or the corporation's stock or any combination thereof, with or without expenses of attendance, may be allowed for serving on the Board of Directors and/or attendance at each meeting of the Board of Directors and

at each meeting of any committee of the Board of Directors. Nothing herein contained shall be construed to preclude any director from serving the corporation in any other capacity as an officer, agent, consultant, employee, or otherwise and receiving compensation thereof. (Idaho Code Section 30-1-35).

**Section 4.11 Performance of Duties.** A director shall perform his duties as director, including his du ties as a member of any committee of the Board of Directors on which he may serve, in good faith, in a manner he reasonably believes to be in the best interests of the corporation, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. In performing his duties, a director shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by:

(a) One (1) or more officers or employees of the. corporation whom the director reasonably believes to be reliable and competent in the matters presented;

(b) Counsel, public accountants or other persons as to matters which the director reasonably believes to be with in such persons' professional or expert competence; or

(c) A committee of the Board upon which he does not serve, duly designated in accordance with a provision of the Articles of Incorporation or the Bylaws, as to matters within its designated authority, which committee the director reasonably believes to merit confidence; but he shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause such reliance to be unwarranted.

A person who so performs his duties shall have no liability by reason of being or having been a director of the corporation. (Idaho Code Sections 30-1-35, 30- 1-42).

**Section 4.12 Committees.**

**(a) Executive Committee.** The Board of Directors may, by resolution adopted by a majority of the full Board of Directors, appoint an Executive Committee to consist of one (I ) or more members of the Board of Directors. The Executive Committee, to the extent permitted by law and specifically granted by the Board of Directors, shall have and may exercise when the Board of Directors is not in session all powers and authority of the Board of Directors in the management of the business and affairs of the corporation, except such committee shall not have the power or authority to (i) declare dividends or distributions, (ii) approve or recommend to stockholders actions or proposals required by the Idaho Business Corporation Act to be approved by stockholders,

(iii) designate candidates for the office of director, for purposes of proxy solicitation or otherwise, or fill vacancies on the Board of Directors or any committee thereof, (iv) amend the Bylaws, (v) approve a plan of merger not requiring stockholder approval, (vi) reduce earned or capital surplus, (vii)

authorize or approve the reacquisition of shares unless pursuant to a general formula or method specified by the Board of Directors, or (viii) authorize or approve the issuance or sale of, or any contract to issue or sell, shares or designate the terms of a series of a class of shares, provided that the Board of Directors, having acted regarding general authorization for the issuance

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

**Exhibit - 4, p. 79**
**19-ER-4808**

AIAPROD00307949

or sale of shares, or any contract thereof, and, in the case of a series, the designation thereof, may, pursuant to a general formula or method specified by the Board by resolution or by adoption of a stock option or other plan, authorized a committee to fix the terms of any contract for the sale of the shares and to fix the terms upon which such shares may be issued or sold, including, without limitation, the price, the dividend rate, provisions for redemption, sinking fund, conversion, voting or preferential rights, and provisions for other features of a class of shares, or a series of a class of shares, with full power in such committee to adopt any final resolution setting forth all the terms thereof and to authorize the statement of the terms of a series for filing with the Secretary of State under the Idaho Business Corporation Act. (Idaho Code Section 30-1- 42).

**(b) Other Committees.** The Board of Directors may, by resolution adopted by a majority of the full Board of Directors, from time to time appoint such other committees as may be permitted by law. Such other committees appointed by the Board of Directors shall consist of one (1) or more members of the Board of Directors, and shall have such powers and perform such duties as may be prescribed by the resolution or resolutions creating such committees; but in no event shall such committee have the powers denied to the Executive Committee in Section 4.12(a). (Idaho Code Section 30-1-42).

**(c) Terms.** The members of all committees of the Board of Directors shall serve at the pleasure of the Board of Directors. The Board of Directors, subject to the provisions of subsections (a) or (b) of this Section 4.12, may at an y time increase or decrease the number of members of a committee or terminate the existence of a committee. The membership of a committee member shall terminate on the date of his death or voluntary resignation. Any committee member may resign a t any time by giving written notice to the president or secretary of the corporation. The Board of Directors may at any time for any reason, with or without cause, remove any individual committee member; and the Board of Directors may fill any committee vacancy created by death, resignation, removal or increase in the number of members of the committee. The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee; and, in addition, in the absence or disqualification of any member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not he or they constitute a quorum, may unanimously appoint another member of the Boa rd of Directors to act at the meeting in place of any such absent or disqualified member.

**(d) Meetings.** Unless the Board of Directors shall otherwise provide, regular meetings of the Executive Committee or any other committee appointed pursuant to this Section 4.12 shall be held at such times and places as are determined by the Board of Directors, or by any such committee; and when notice thereof has been given to each member of such committee, no further notice of such regular meetings need be given thereafter. Special meetings of any such committee may be held at any place which has been designated from time to time by resolution of such committee or by written consent of all members thereof, and may be called by any director who is a member of such committee upon written notice to the members of such committee of the time and place of such special meeting given in manner provided for the giving of written notice to members of the Board of Directors of the time and place of special meetings of the Board of Directors; provided that notice of a special meeting need not state the business proposed to be transacted at the meeting. Notice of any special meeting of any committee may be waived in writing at any time before or after the meeting and will be waived by any director by attendance threat, except when the director attends such special meeting for the express purpose of objecting, at the beginning of the meeting, to

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

AIAPROD00307950

the transaction of any business because the meeting is not lawfully called or convened. Each committee shall elect a presiding officer from its members and may fix its own rules of procedure which shall not be inconsistent with these Bylaws. It shall keep regular minutes of its proceedings and report them to the Board of Directors for its information at the meeting thereof held next after the proceedings shall have been taken. A majority of the authorized number of members of any such committee shall constitute a quorum for the transaction of business; and the act of a majority of those present at any meeting at which a quorum is present shall be the act of such committee.

**(c) Responsibility**. Neither the designation of an Executive Committee or other committee, the delegation thereto of authority, nor action by such committee shall relieve the Board of Directors, or any member thereof, of any responsibility or duty imposed by law.

**Section 4.13 Organization.** At every meeting of the Board of Directors, the Chairman of the Board of Directors, or, if a chairman h as not been appointed or is absent, the president, or if the president is absent, the most senior vice president, or, in the absence of any such officer, a chairman of the meeting chosen by a majority of the directors present, shall preside over the meeting. The secretary, or in his absence, an assistant secretary directed to do so by the president, shall act as secretary of the meeting and shall keep regular minutes of the proceedings of the Board of Directors.

**Section 4.14 Director Conflicts of Interest.** No contract or other transaction between the corporation and one or more of its directors or any other corporation, firm , association or entity in which one or more of its directors are directors or officers or are financially interested , shall be either void or voidable because of such relationship or interest or because such director or directors are present at the meeting of the Board of Directors or a committee thereof which authorizes, approves or ratifies such contract or transaction or because h is or their votes are counted for such purposes, if:

(a) the fact of such relationship or interest is disclosed or known to the Board of Directors or committee which authorizes, approves or ratifies the contract or transaction by a vote or consent sufficient for the purpose without counting the votes or consents of such interested directors; or

(b) the fact of such relationship or interest is disclosed or known to the shareholders entitled to vote and they authorize, approve or ratify such contract or transaction by vote or written consent, in which vote or consent such interested directors may participate to the extent that they are also shareholders; or

(c) the contract or transaction is fair and reasonable to the corporation and the fact of such relationship or interest is fully and fairly disclosed or known to the corporation.

Common or interested directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors or a committee thereof which authorizes, approves, or ratifies such contract or transactions.

### ARTICLE V OFFICERS

**Section 5.1 Officers Designated.** The officers of the corporation consist of a president, one or more vice presidents (the number thereof to be determined by the Board of Directors), a secretary, and a treasurer, each of whom shall be elected by the Board of Directors. · The order of seniority of vice presidents shall be the order of their nomination, unless otherwise determined by the Board of Di rectors. Such other officers and assistant officers as may be deemed necessary may be elected or appointed by the Board of Directors. Any two or more offices may be held by the same person, except the offices of president and

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

AIAPROD00307951

secretary. (Idaho Code Section 30-1-50).

**Section 5.2 <u>Tenure and Duties of Officers Term of Office</u>.** All officers shall hold office at the pleasure of the Board of Directors and until their successors shall have been duly elected and qualified, or until their resignation or removal. If the office of any officer becomes vacant for any reason, the vacancy may be filled by the Board of Directors. (Idaho Code Section 30-1-50).

**(a)<u>The President</u>.** The president shall be the principal executive officer of the corporation and, subject to the control of the Board of Directors, shall in general supervise and control all of the business and affairs of the corporation. He shall, when present, preside at all meetings of the stockholders and of the Board of Directors. He may sign, with the secretary or any other proper officer of the corporation thereunto authorized by the Board of Directors, certificates for shares of the corporation, any deeds, mortgages, bonds, contracts, or other instruments which the Board of Directors has authorized to be executed, except in cases where the signing and execution thereof shall be expressly delegated by the Board of Directors or by these Bylaws to some other officer or agent of the corporation, or shall be required by law to be otherwise signed or executed; and in general the president shall perform all duties commonly incident to the office of president and such other duties as may be described by the Board of Directors from time to time.

**(b)<u>The Vice President</u>.** In the absence of the president or in the event of h is death, inability or refusal to act, the vice president (or in the event there is more than one vice president, the vice presidents in the order designated at the time of their election, or in the absence of any designation, then in the order of their election) shall perform the duties of the president and, when so acting, shall have all the powers of and be subject to all the restrictions upon the president. Any vice president may sign, with the secretary or an assistant secretary, certificates for shares of the corporation; and the vice president shall perform other du ties commonly incident to the office of vice president and such other du ties as from time to time may be assigned to him by the president or by the Board of Directors.

**(c)<u>The Secretary</u>.** The secretary shall: (a) attend all meetings and keep the minutes of the proceedings of the stockholders and of the Board of Directors in one or more books provided for that purpose; (b) see that all notices are duly given in accordance with the provisions of these Bylaws or as required by law; (c) be custodian of the corporate records and of the seal of the corporation and see that the seal of the corporation is affixed to all documents the execution of which on behalf of the corporation under its seal is duly authorized; (d) keep a register of the post office address of each shareholder which shall be furnished to the secretary by such shareholder; (e) sign, with the president, or a vice president, certificates for shares of the corporation, the issuance of which shall have been authorized by resolution of the Board of Directors; (f) have general charge of the stock transfer books of the corporation; and (g) in general perform all duties commonly incident to the office of secretary and such other duties as from time to time may be assigned to him by the president or by the Board of Directors.

**(d)<u>The Treasurer</u>.** The treasurer shall: (a) have charge and custody of and be responsible for all funds and securities of the corporation; (b) receive and give receipts for monies due and payable to the corporation from any source whatsoever, and deposit all such monies in the name of the corporation in such banks, trust companies or other depositories as shall be selected in accordance with the provisions of Article VI of these Bylaws; and (c) in general perform all of the duties commonly incident to the office of treasurer and such other duties as from time to time may be assigned to him by the president or by the Board of Directors. If required by the Board of Directors, the treasurer- shall give a bond for the faithful discharge of his duties in such sum and with such surety or

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

AIAPROD00307952

sureties as the Board of Directors shall determine.

**(f)** **Assistant Secretaries and Assistant Treasurers.** The assistant secretaries, when authorized by the Board of Directors, may sign with the president or a vice president certificates for shares of the corporation the issuance of which shall have been authorized by a resolution of the Board of Directors. The assistant treasurers shall respectively, if required by the Boa rd of Directors, give bonds for the faithful discharge of their duties in such sums and with such sureties as the Board of Director shall determine. The assistant secretaries and assistant treasurers, in general, shall perform such du ties as shall be assigned to them by the secretary or the treasurer, or by the president or the Board of Directors.

**Section 5.3** **Registrations.** Any officer may resign at any time by giving written notice to the Board of Directors or to the president or to the secretary. Any such resignation shall be effective when received by the person or persons to whom such notice is given, unless a later time is specified therein, in which event the resignation shall become effective at such later time. Unless otherwise specified in such notice, the acceptance of any such resignation shall not be necessary to make it effective.

**Section 5.4** **Removal.** Any officer or agent may be removed by the Board of Directors whenever, in its judgment, the best interests of the corporation will be served thereby; but such removal shall be without prejudice to the contract rights, if any, of the person so removed. Election or appointment of an officer or agent shall not of itself create contracts rights. (Idaho Code Section 30-1-51).

**Section 5.5** **Compensation**. The compensation of the officers shall be fixed from time to time by the Board of Directors. No officer shall be prevented from receiving such compensation by reason of the fact that such officer is also a director of the corporation.

## ARTICLE VI

### EXECUTION OF CORPORATE INSTRUMENTS AND
### VOTING OF SECURITES OWNED BY THE CORPORATION

**Section 6.1** **Execution of Corporate Instruments.** The Board of Directors may, in its discretion, determine the method and designate the signatory officer or officers, or other person or persons, to execute on behalf of the corporation any corporate instrument or document, or to sign on behalf of the corporation the corporate name without limitation, or to enter into contracts on behalf of the corporation, except where otherwise provided by law or these Bylaws; and such execution or signature shall be binding upon the corporation. Authorization granted to any person hereunder may be general or confined to specific instances.

Unless otherwise specifically determined by the Board of Directors or otherwise required by law, promissory notes, deeds of trust, mortgages and other evidences of indebtedness of the corporation, and certificates of shares of stock owned by the corporation, shall be executed, signed or endorsed by the president or any vice president, and by the secretary or treasurer or any assistant secretary or assistant treasurer. All other instruments and documents requiring the corporate signature may be executed as aforesaid or in such manner as may be directed by the Board of Directors.

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

AIAPROD00307953

**Section 6.2 <u>Loans.</u>** No loan shall be contracted on behalf of the corporation and no evidence of indebtedness shall be issued in its name unless authorized by resolution of the Board of Directors. Such authorization may be general or confined to specific instances.

**Section 6.3 <u>Deposits and Checks</u>.** All funds of the corporation not otherwise employed shall be deposited from time to time to the credit of the corporation in such banks, trust companies or other depositories as the Board of Directors may select. All checks and drafts drawn on banks or other depositaries on funds to the credit of the corporation or in special accounts of the corporation shall be signed by such person or persons as the Board of Directors shall authorize to do so. Such authorizations may be general or confined to specific instances.

**Section 6.4 <u>Voting of Securities Owned by the Corporation</u>.** All stock and other securities of other corporations owned or held by the corporation for itself, or for other parties in any capacity, shall be voted, and all proxies with respect thereto shall be executed , by the person authorized to do so by resolution of the Board of Directors, or, in the absence of such authorization, by the president or any vice president .

### ARTICLE VII <u>SHARES OF STOCK</u>

**Section 7.1 <u>Form and Execution of Certificates</u>.** Certificates representing shares of the corporation shall be in such form as shall be determined by the Board of Directors. Such certificates shall be signed by the president or a vice president and by the secretary or an assistant secretary and may be sealed with the corporate seal or a facsimile thereof. The signatures of such officers upon a certificate may be facsimiles if the certificate is manually signed on behalf of a transfer agent or a registrar, other than the corporation itself or one of its employees. In case any officer, transfer agent, or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the corporation with the same effect as if he were such officer, transfer agent or registrar at the date of issue. (Idaho Code Section 30-1-23).

**Section 7.2 <u>Lost Certificates</u>.** The corporation may issue a new certificate of stock in place of any certificate theretofore issued by the corporation alleged to have been lost, stolen , destroyed or mutilated; and the corporation may require the owner of such lost, stolen, destroyed or mutilated certificate, or his legal representative, to give the corporation a bond sufficient to indemnify it against any claim that may be made against the corporation on account of the alleged loss, theft, destruction or mutilation of any such certificate or the issuance of such new certificate.

**Section 7.3 <u>Transfers</u>.** Each certificate for shares shall be consecutively numbered or otherwise identified. The name and address of the person to whom the shares represented thereby are issued, with the number of shares and date of issue, shall be entered on the stock transfer books of the corporation. All certificates surrendered to the corporation for transfer shall be cancelled; and, except as provided in Section 7.2, no new certificate shall be issued until the former certificate for a like number of shares shall have been surrendered and cancelled. Transfer of record of shares of stock of the corporation shall be made only on the stock transfer books of the corporation the holder of record thereof or by his legal representative, who shall furnish proper evidence of authority to transfer, or by h is attorney thereunto authorized by power of attorney duly executed and filed with the secretary of the corporation, and on surrender for cancellation of a properly endorsed certificate or certificates for a like number of shares. **Section 7.4 <u>Fixing Record Dates</u>.** In order that the corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or to express consent to corporate action in writing without a meeting, or to receive payment of any dividend or other distribution or

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

AIAPROD00307954

allotment of any rights or to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board of Directors may provide that the stock transfer books shall be closed for a stated period but not to exceed, in any case, fifty (50) days. If the stock transfer books shall be closed for the purpose of determining stockholders entitled to notice of or to vote at a meeting of stockholders, such books shall be closed for at least ten (10) days immediately preceding such meeting.

In lieu of closing the stock transfer books, the Board of Directors may fix, in advance, a record date for any such determination of stockholders. Such record date shall be not more than fifty (50) days and, in the case of a meeting of stockholders, not less than ten (10) days prior to the date on which the particular action, requiring such determination of stockholders, is to be taken. If the stock transfer books are not closed and no record date is fixed:
(a) the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholder shall be at the close of business on the day on which notice is mailed, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held;
(b) the record date for determining stockholders entitled to express consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is necessary, shall be the day on which the first written consent is expressed; and
(c) the record date for determining stockholders for any other purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto. A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting. (Idaho Code Section 30-1-30).

**Section** 7.5 **Registered Stockholders.** The corporation shall be entitled to recognize the exclusive right of a person registered in its books as the owner of shares to receive dividends and to vote as such owner, and shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person whether or not it shall have express or other notice thereof, except as otherwise provided by the laws of Idaho.

**Section** 7.6 **Insurance Transfer and Registration of Shares.** The Board of Directors may make such rules and regulations, not inconsistent with law or with these Bylaws, as it may deem advisable concerning the issuance, transfer and registration of certificates for shares of the capital stock of the corporation. The Board of Directors may appoint a transfer agent or registrar of transfers, or both, and may require all certificates for shares of the corporation to bear the signature of either or both.

**ARTICLE VIII**

**OTHER SECURITIES OF THE CORPORATION**

**Section 8.1 Execution of Other Securities.** All bonds, debentures and other corporate securities of the corporation, other than stock certificates, may be signed by the president or any vice president, or such other person as may be authorized by the Board of Directors; and the corporate seal may be impressed thereon or a facsimile of such seal imprinted thereon and attested by the signature of the secretary or an assistant secretary; provided, however, that where an y such bond, debenture or other corporate security shall be authenticated by the manual signature of a trustee under an indenture pursuant to which such bond, debenture or other corporate security shall be issued, the signatures of the persons signing and attesting the corporate seal on such bond, debenture or other corporate security may be the imprint facsimile of the signature of such persons. Interest coupons appertaining to any such bond, debenture or other corporate security, authenticated by a trustee as aforesaid, shall be signed by the treasurer or an assistant treasurer of the corporation or

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

AIAPROD00307955

such other person as may be authorized by the Board of Director, or be imprinted thereon the facsimile signature of such person . I n case any officer who shall have signed or attested any bond , debenture or other corporate security, or whose facsimile signature shall appear thereon or on any such interest coupon, shall have ceased to be such officer before the bond, debenture or other corporate security so signed or attested shall have been delivered, such bond, debenture or other corporate security nevertheless may be adopted by the corporation and issued and delivered as though the person who signed the same or whose facsimile signature shall have been used thereon had not ceased to be such officer of the corporation.

## ARTICLE IX DIVIDENDS

**Section 9.1 Declaration and Payment of Dividends.** Dividends upon the capital stock of the corporation, subject to the provisions of the Articles of Incorporation, if any, may be declared by the Board of Director pursuant to law at any regular or special meeting. Dividends may be paid by the corporation in cash, in property, or in shares of its capital stock, subject to the provisions of the Articles of Incorporation. (Idaho Code Section 30-1-45).

**Section 9.2 Dividend Reserve.** Before payment of any dividend, there may be set aside out of any funds of the corporation available for dividends such sum or sums as the Board of Directors may from time to time, in its absolute discretion, thin k proper as a reserve or reserves to meet contingencies, or for equalizing dividends, or for repairing or maintaining any property of the corporation, or for such other purpose as the Board of Directors shall think conducive to the interests of the corporation; and the Board of Directors may modify or abolish any such reserve in the manner in which it was created.

## ARTICLE XI

## INDEMNIFICATION OF DIRECTORS, OFFICERS, EMPLOYEES AND OTH ER AGENTS

**Section 11.1 Directors and Executive Officers** The corporation shall indemnify the directors and executive officers of the corporation or another enterprise to the full extent permitted by the Idaho Business Corporation Act, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the corporation to provide broader indemnification rights than said Act permitted the corporation to provide prior to such amendment); provided, however, that the corporation may limit the extent of such indemnification by individual contracts with its directors an executive officers; and provided, further, that the corporation shall not be required to indemnify any director or executive officer in connection with any proceeding (or part thereof) initiated by such person or any proceeding by such person against the corporation or its directors, officers. employees or other agents unless (a) such indemnification is expressly required to be made by law; (b) the proceeding was authorized by the Board of Directors of the corporation or (c) such indemnification is provided by the corporation, in its sole discretion, pursuant to the powers vested in the corporation under the Idaho Business Corporation Act. (Idaho Code Section 30-1-S (a),(b)).

**Section 11.2 Other Officers, Employees and Agents.** The corporation shall have the power to indemnify other officers, employees and other agents of the corporation or another enterprise as set forth in the Idaho Business Corporation Act. (Idaho Code Section 30-1-S(a),(b)).

**Section 11.3 Good Faith.** For purposes of any determination under this Bylaw, a director, officer, employee or other agent of the corporation or another enterprise shall be deemed to have acted in good faith and in a manner he reason ably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, to have had no reasonable cause to believe that his conduct was unlawful, if his action is based on the

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

AIAPROD00307956

records or books of account of the corporation or another enterprise, or on information supplied or reports made to him by the officers of the corporation or another enterprise in the course of their duties, or on the ad vice of legal counsel for the corporation or another enterprise or on information or records given or reports made to the corporation or another enterprise by an independent certified public accountant or by appraiser or other expert selected with reasonable care by the corporation or another enterprise. The provisions of this Section 11.3 shall not be deemed to be exclusive and/or to limit in any way the circumstances in which a person may be deemed to have met the applicable standard of conduct set forth by the Idaho Business Corporation Act. (Idaho Code Sections 30- l -5(a),(b); 30-1-35).

**Section l 1.4 <u>Another Enterprise</u>.** The term "another enterprise" as used in this Article XI shall mean any other corporation, partnership, joint venture, trust or other enterprise, including any employee benefit plan, of which a person is or was serving at the request of the corporation as a director, officer, employee or other agent. (Idaho Code Section 30-1-S(a),(b)).

**Section 11.5 <u>Expenses</u>.** The corporation shall advance, prior to the final disposition of any proceeding, promptly following request thereof, all expenses incurred by any director, officer, or employee or other agent of the corporation or another enterprise in connection with such proceeding upon receipt of an undertaking by or on behalf of such person to repay said amounts if it should be determined ultimately that such person is not entitled to be indemnified under this Article XI or otherwise. (Idaho Code Section 30- l -5(e)).

Notwithstanding the foregoing, unless otherwise determined pursuant to Section l 1.6, no advance shall be made by the corporation if a determination is reasonably and promptly made

(a) by the Board of Directors by a majority vote of a quorum consisting of directors who were not parties to the proceeding, or

(b) if such quorum is not obtainable or, even if obtainable, a quorum of disinterested directors so directs, by independent legal counsel in a written opinion that, based upon the facts known to the decision-making party at the time such determination is made, such person acted in bad faith or in a manner that such person did not believe to be in or not opposed to the best interests of the corporation, or, with respect to any criminal proceeding, such person believed or had reasonable cause to believe that his conduct was unlawful. (Idaho Code Section 30–1·5(d)).

**Section 11.6 <u>Enforcement</u>.** Without the necessity of entering into an express contract, all rights to indemnification and advances under this Article XI shall be deemed to be contractual rights and to be effective to the same extent and as if provided for in a contract between the corporation and the person who serves as a director, officer, employee or other agent of the corporation or another enterprise at any time while this Article XI and relevant provisions of the Idaho Business Corporation Act and other applicable law, if any, are in effect. Any right to indemnification or advances granted by this Article XI to any person shall be enforceable by or on behalf of the person holding such right in any court of competent jurisdiction if (a) the claim for indemnification or advances is denied , in whole or in part, or (b) no disposition of such claim is made with in ninety (90 days of request thereof. The claimant in such enforcement action, if successful in whole or in part, shall be entitled to be paid also the expense of prosecuting his claim. It shall be a defense to any such action that the claimant has not met the standards of conduct which make it permissible under the Idaho Business Corporation Act for the corporation to indemnify the claimant for the amount claimed; but the burden of proving such defense shall be on the corporation. Neither the failure of the corporation (including its Board of Directors, independent legal counsel or its stockholders) to have made a determination prior to the commencement of such action that indemnification of the claimant is proper in the circumstances because he has met the applicable

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

**Exhibit - 4, p. 87**
**19-ER-4816**

AIAPROD00307957

standard of conduct set forth in the Idaho Business Corporation Act, nor an actual determination by the corporation (including its Board of Directors, independent legal counsel or its stockholders) that the claimant has not met such applicable standard of conduct, shall be a defense to the action or create a presumption that claimant has not met the applicable standard of conduct.

 **Section 11.7 <u>Non-Exclusivity of Rights</u>.** The rights conferred on any person by this Article XI shall not be exclusive of any other right to which such person may now or hereafter be entitled under any statute, provision of the Articles of Incorporation, or Bylaws, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in his official capacity and as to action in another capacity while holding office. The corporation is specifically authorized to enter into individual contracts with any or all directors, officers, employees or other agents of the corporation or another enterprise respecting indemnification and advances, as provided by law. (Idaho Code Section 30- l-5{f)).

 **Section 11.8 <u>Survival of Rights</u>.** The rights conferred on any person by this Article X I shall continue as to a person who has ceased to be a director, officer, employee or other agent of the corporation or another enterprise and shall inure to the benefit of the heirs, executors and administrators such a person. (Idaho Code Section 30- l -5(i)).

 **Section 11.9 <u>Amendments.</u>** Any repeal or modification of this Article X I shall only be prospective and shall not affect the rights under this Article XI in effect at the time of the alleged occurrence of any action or omission to act that is the cause of any proceeding against any agent of the corporation: or another enterprise.

 **Section 11.10 <u>Savings Clause</u>.** If this Article XI of the Bylaws or any portion hereof shall be invalidated on any ground by any court of competent jurisdiction, then the corporation shall nevertheless indemnify each agent to the full extent permitted by any applicable portion of this Article XI that shall not have been invalidated, or by any other applicable law.

 **Section 11.10 <u>Intracompany Suits.</u>** (a) With respect to Section 11.11, the following definitions apply.

 (i) Claim means a claim for legal or equitable relief: (1) against the corporation, or (2) against any Constituent brought in the name of the corporation or brought directly against such Constituent by virtue of the Constituent's current or former position within the corporation.

 (ii) Claiming Party means a current or former Constituent who initiates or asserts a Claim, or joins, offers substantial assistance to, or has a direct financial interest in, any Claim. A stockholder's status as a stockholder alone shall not, without more, constitute a direct financial interest in a Claim.

 (iii) Constituent means a current or former officer, director, stockholder, subsidiary, or affiliate of the corporation.

(b) If any Claiming Party does not obtain a judgment on the merits of a Claim that substantially achieves, in substance and amount, the full remedy sought, then each Claiming Party shall be obligated jointly and severally to reimburse the corporation and any Constituent against whom the Claim was brought for all fees, costs, and expenses of every kind and description, including without

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

**AIAPROD00307958**

limitation reasonable attorney fees and litigation expenses, incurred in connection with such Claim.

(c) If a court determines that the application of Section 11.11 changes, alters, revokes, abrogates, or in any way conflicts with the rights of stockholders as set forth in the Articles of Incorporation, this Section 11.11 shall be given the fullest effect possible that does not change, alter, revoke, abrogate, or conflict with such stockholder rights.

## ARTICLE XII <u>NOTICES</u>

**Section 12. l <u>Notice to Stockholders</u>.** Whenever under any provision of these Bylaws notice is required to be given to any stockholder, it shall be given in writing, timely and duly deposited in the United States mail, postage prepaid, and addressed to his last known post office address as shown by the stock transfer books of the corporation or its transfer agent or to such other last known address of which the corporation may have notice. Such notice to any stockholder shall be deemed to be delivered when deposited in the United States mail in accordance with this Section 12.1. (Idaho Code Section 30-1-29).

**Section 12.2 <u>Notice to Directors</u>.** Any notice required to be given to any director may be given by the method stated in Section 12. l , or by telegram, except that such notice other than one which is delivered personally shall be sent to such address as such director shall have filed in writing with the secretary, or, in the absence of such filing, to the last known post office address of such director. (Idaho Code Section 30·1A3)).

**Section 12.3 <u>Address Unknown</u>.** If no address of a stockholder or director be known, notice may be sent to the office of the corporation required to be maintained pursuant to Section 1.1 hereof.

**Section 12.4 <u>Affidavit of Mailing</u>.** An affidavit of mailing, executed by a duly authorized and competent employee of the corporation or its transfer agent appointed with respect to the class of stock affected, specifying the name and address or the names and addresses of the stockholder or stockholders, or director or directors, to whom any such notice or notices was or were given, and the time and method of giving the same, shall be conclusive evidence of the statements therein contained.

**Section 12.5 <u>Time Notices Deemed Given</u>.** All notices given by mail, as above provided, shall be deemed to have been given at the time of mailing; and all notices given by telegram shall be deemed to have been given at the sending time recorded by the telegraph company transmitting the notices.

**Section 12.6 <u>Methods of Notice</u>.** It shall not be necessary that the same method of giving notice be employed in respect of all directors or shareholders: One permissible method may be employed in respect of any one or more directors or shareholders; and any other permissible method or methods may be employed in respect of any other or others.

**Section 12.7 <u>Failure to Receive Notice</u>.** The period or limitation of time with in which any stockholder may exercise any option or right, or enjoy any privilege or benefit, or be required to act, or within which any director may

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

AIAPROD00307959

exercise any power or right, or enjoy any privilege, pursuant to any notice sent him in the manner above provided, shall not be affected or extended in any manner by the failure of such stockholder or such director to receive such notice.

**Section 12.8 <u>Notice to person with Whom Communication</u> is <u>Unlawful</u>.** Whenever notice is required to be given, under any provision of law or of the Articles of Incorporation or Bylaws of the corporation , to any person with whom communication is unlawful, the giving of such notice to such person shall not be required and there shall be no duty to apply to any governmental authority or agency for a license or permit to give such notice to such person. Any action or meeting which shall be taken or held without notice to any such person with whom communication is unlawful shall have the same force and effect as if such notice had been duly given. I n the event that the action taken by the corporation is such as to require the filing of a certificate under any provision of the Idaho Business Corporation Act, the certificate shall state, if such is the fact and if notice is required, that notice was given to all persons entitled to receive notice except such persons with whom communications is unlawful.

**Section 12.9 <u>Waiver of Notice</u>.** Whenever any notice is required to be given to any stockholder or director of the corporation under the provisions of these Bylaws or under the provisions of the Articles of Incorporation or under the provisions of the Idaho Business Corporation Act, a waiver thereof in writing signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice. (Idaho Code Section 30-1-144).

### ARTICLE XV

### <u>SALE OF STOCK</u>

**Section 15.1 <u>Right of First Refusal</u>.** No sale of stock shall be made by any stock holder or the heirs, executors, administrator or assigns of any stockholder to any person(s) or entity ("prospective purchaser"), except in pursuance of the following terms and conditions:

(a) I n the event any stockholder desires to sell his stock, or any portion thereof, to any prospective purchaser, he shall first submit to the stockholders of the corporation, reasonable written evidence of the agreement to purchase said stock by such third person and the price and complete terms agreed to be paid thereof.

(b) In the event the remaining stockholders agree to purchase such stock at the same price and upon the same terms which the stockholder is to receive from said third party, then the stock shall be sold to the stockholders of the corporation in such proportionate amounts as their respective stock bears to the entire stock held by the stockholders of the corporation, exclusive of the shares owned by the selling stockholder, or in such proportion as such stockholders may agree.

(c) In the event that any of the remaining stockholders do not desire to purchase such stock, then such stock shall be sold at the price aforesaid to such of the stockholders who may desire to purchase the same, and in the same proportion as above specified.

(d) No stock shall be sold to any person other than the stockholders of the corporation until each of the stockholders shall have been afforded an opportunity to purchase such stock at the price and terms as aforesaid, and shall have declined to do so.

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

**AIAPROD00307960**

(e) Notice in writing to the stockholders of the corporation of the desire of any stockholder to sell his stock shall be given by such stockholder; and, at the same time, reasonable evidence shall be furnished to the stockholders as to the price and terms as here in before set forth. Stockholders shall have thirty (30) days' time after the receipt of said notice within which to elect in writing to purchase such stock or to decline to do so. If at the end of such thirty (30) day period all remaining stockholders have declined in writing, or have not taken any action , then the stockholder desiring to sell his stock shall sell such stock to the prospective purchaser named in the agreement to purchase such stock, and to that prospective purchaser only; and such stock shall be sold in precise accordance with the price and terms set forth in such agreement to purchase. Satisfactory evidence of compliance with the terms of the foregoing restriction upon the transfer of stock of this corporation shall be submitted to the Board of Directors,_and accepted by them, before any such transfer shall be effective.

**Section 15.2 <u>Stock Transfer Restrictions</u>.** Each certificate of stock of the corporation shall have the following legends conspicuously typewritten or printed upon its face:

"The stock represented by this certificate is not transferable unless first offered to the stockholders of the corporation in strict compliance with Article XV of the Bylaws of the corporation."

"The securities represented hereby have not been registered under the Securities Act of 1933 or any State Securities Act. Any transfer of such securities will be invalid unless a registration statement under said Act(s) is in effect as to such transfer or in the opinion of counsel for the company such registration is unnecessary in order for such transfer to comply with said Act(s)."

**Section 15.3 <u>Subchapter "S'" Corporation</u>.** If an election to be treated as an "S" Corporation under the Internal Revenue Code of 1986 or any amendment thereof ("Code") shall then be in effect, no shares of the corporation's stock may be sold to any person or entity which, at such time, would not be a qualified stockholder of an "S" Corporation under such Code.

Amended and Restated Bylaws
AIA Insurance, Inc.
Effective May 26, 2016

Exhibit - 4, p. 91

**19-ER-4820**

AIAPROD00307961

# Roderick Bond Law Office, PLLC | Roderick C. Bond
Licensed in WA & ID

*800 Bellevue Way NE ◦ Suite 400 ◦ Bellevue, WA  98004 ◦ Tel: (425) 591-6903 ◦ Fax: (425) 321-0343*
www.roderickbond.com

March 26, 2014

*Via Facsimile (208) 746-8159*

AIA Services Corporation
Attn: R. John Taylor
Attn: Board of Directors
111 Main St.
Lewiston, ID  83501

**Re:    Inspection and Copying of Records**

To Whom It May Concern:

This firm represents the following shareholders in AIA Services Corporation, including the following: Donna Taylor (the Series A Preferred Shareholder of AIA Services Corporation and as the Personal Representative of the common shares held by the Estate of Sara Taylor), Jerry Legg, Paul Durant, Kay Hanchett, Lee Ann Hostetler (as a common and Series C Preferred Shareholder), Bobette Ruddell, Jud Taylor, and Carmen Taylor (the beneficiary of Jay Taylor's shares).

The above referenced shareholders have all been shareholders of record for at least six (6) months. The above-referenced shareholders desire to inspect and copy records of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc., for the purpose of determining the value of their shares, to communicate with other shareholders, to determine the nature and extent of improper transactions (including, without limitation, the illegal guarantee of the $8.7 million owed to Gemcap Lending I, LLC, loans to Pacific Empire Radio Corporation, investments in Pacific Empire Radio Corp., and loans or investments in any other entity, the covering up of all such improper transactions, the repurchase of any other preferred or common shares in violation of AIA Services Corporation's amended and restated articles of incorporation, loans and transactions made in violation of AIA Services Corporation's amended and restated articles of incorporation or restated bylaws, improper loans made to or allegedly from CropUSA Insurance Agency, Inc., and the improper termination of the ESOP without disclosing facts of improper transactions and the improper payment of those share in violation of AIA Services Corporation's amended and restated articles of incorporation). In addition, the purpose of obtaining the records requested below is to ensure that full disclosure is made to them of the improper transactions and improper corporate actions which have occurred without their consent.

**Exhibit - 5, p. 1**
**19-ER-4821**

AIA Services Corporation
March 26, 2014
Page - 2

Based upon the above and pursuant to I.C. § 30-1-1601, *et seq.*, the undersigned attorney, along with one or more of the above-referenced shareholders, demands to inspect and copy records during regular business hours at the offices of AIA Services Corporation at 111 Main Street the following records on April 3, 2014:

1. AIA Services Corporation's articles of incorporation, all amendments and restatements thereto, and all notices to shareholders referred to in I.C. § 30-1-120(11)(e) regarding facts on which a filed document is dependent (including those facts that show the company could effectuate a reverse stock split and the payment of any fractional shares).

2. AIA Services Corporation's bylaws and all amendments thereto currently in effect.

3. The minutes of all shareholder meetings for AIA Services, together with records of all action taken by shareholders without a meeting, for the past three (3) years.

4. The resolutions and meeting minutes for any action taken by AIA Services Corporation's board of directors and any committee of the board of directors, whether taken at a meeting or in lieu of a meeting, for the past three (3) years.

5. All written communications to AIA Services Corporation's shareholders generally without the past three (3) years, including the financial statements furnished for the past three (3) years under I.C. § 30-1-1620.

6. A list of the names and business addresses of AIA Services Corporation's current directors and officers.

7. AIA Services Corporation's most recent annual report delivered to the Secretary of State.

8. AIA Services Corporation's common and preferred shareholder lists showing the name, addresses and number of shares held by each shareholder, including, without limitation, the names and addresses of shareholders who own or owned within the last three (3) years common shares through AIA Services Corporation's ESOP or beneficially owned Series C Preferred Shares in AIA Services Corporation's 401(k) Plan within the last three (3) years.

9. All information regarding the termination of the ESOP and payments to those shareholders.

10. The year-end and quarterly accounting notebooks for AIA Services Corporation for the past five (5) years.

11. The accounting records used to prepare AIA Services Corporation's financial statements for the past five (5) years.

**Exhibit - 5, p. 2**
**19-ER-4822**

AIA Services Corporation
March 26, 2014
Page - 3

12. All of AIA Services Corporation's consolidated financial statements, financial statements and the financial statements for AIA Insurance, Inc., for the past five (5) years.

13. If no financial statements are available for AIA Services Corporation and its subsidiary AIA Insurance, Inc. for the full year of 2013, then such other appropriate accounting records (which may be consolidated), including a year-end balance sheets for year-end 2013, income statements for 2013, statements of changes in shareholders' equity for 2013, and such other information required by I.C. §30-1-1620 (including the appropriate statements accompanying the information).

14. The attorneys' fees and costs paid for any of the past or present officers or directors of AIA Services Corporation for any lawsuit and all documents that demonstrate AIA Services Corporation had the authority to pay such fees and costs and that the officers or directors had discharged their duties in accordance with the law and restated bylaws.

15. If AIA Services Corporation has indemnified or advanced expenses to a present or former director, all reports required by I.C. § 30-1-1621(1).

16. Any and all compensation, advances and loans of money, shares or other property provided directly or indirectly from AIA Services Corporation or its subsidiary AIA Insurance, Inc., to R. John Taylor, James Beck, Connie Taylor Henderson and Michael Cashman Sr., for the last three (3) years.

My firm will remit payment for the reasonable labor and copying costs necessary for AIA Services Corporation to assemble and copy the above-referenced documents. In lieu of inspecting and copying the above-referenced records, AIA Services Corporation may assemble, copy and provide them to the undersigned attorney on or before April 2, 2014.

RODERICK BOND LAW OFFICE, PLLC

By: Roderick C. Bond

cc:     David Risley (via facsimile and email)
        Doug Siddoway (via facsimile and email)
        Clients

**Exhibit - 5, p. 3**
**19-ER-4823**



April 22, 2016

*VIA Facsimile (208) 799-9172*

AIA Services Corporation
John Taylor, CEO, President and Director
JoLee Duclos, Secretary
P.O. Box 538
Lewiston, ID  83501

**Re:**     *Shareholder Demand to Inspect Documents*

Dear Mr. Taylor and Ms. Duclos:

As you are well aware, this firm represents certain common shareholders in AIA Services Corporation ("AIA Services"), including, without limitation, Dale Miesen, Paul Durant, Jerry Legg, and Donna Taylor (as the Personal Representative of the Estate of Sara Taylor), who have all been common shareholders of record for over six months. This firm also represents Donna Taylor, who is the sole Series A Preferred Shareholder of AIA Services. Ms. Taylor has also been a Series A Preferred Shareholder of record for over six months.

The purpose of this letter is for me to request documents on behalf of the above-referenced shareholders as provided under Idaho Code, which is a separate and distinct right in addition to any rights a party has in discovery in litigation.[1] While I recognize that you ignored a prior request when Doug Siddoway was purportedly representing AIA Services, I have been advised by John Taylor's present counsel, Mr. Weiland, that it will be different this time.

For your convenience, I will address your obligations under Idaho Code. As you know, Idaho Code Section 30-29-1602 provides verbatim:

> (1) A shareholder of a corporation is entitled to inspect and copy, during regular business hours at the corporation's principal office, any of the records of the corporation described in section 30-29-1601(5), Idaho Code, if he gives the corporation written notice of his demand at least five (5) business days before the date on which he wishes to inspect and copy.

---

[1] This request to inspect records does not include the right of Paul Durant, as a director appointed by Donna Taylor under the amended articles of incorporation, to separately inspect records because you have refused to honor his appointment. Your blatant refusal to honor his appointment has been, and continues to be, a breach of your fiduciary duties as officers and/or directors of AIA Services.

601 108th Ave, Suite 1900, Bellevue, WA 98004 ⏐ Phone: (425) 591-6903 ⏐ Web: www.roderickbond.com
Roderick C. Bond - Attorney ⏐ Email: rod@roderickbond.com ⏐ Licensed in Washington and Idaho

**Exhibit - 6, p. 1**
**19-ER-4824**

Case: 25-3552, 01/20/2026, DktEntry: 23.20, Page 129 of 300

Case 1:10-cv-00404-DCN-CWD   Document 1260-7   Filed 09/22/22   Page 2 of 9

AIA Services Corporation
R. John Taylor
JoLee Duclos
April 22, 2016
Page - 2

(2) A shareholder of a corporation is entitled to inspect and copy, during regular business hours at a reasonable location specified by the corporation, any of the following records of the corporation if the shareholder meets the requirements of subsection (3) of this section and gives the corporation written notice of his demand at least five (5) days before the date on which he wishes to inspect and copy:

(a) Excerpts from minutes of any meeting of the board of directors, records of any action of a committee of the board of directors while acting in place of the board of directors on behalf of the corporation, minutes of any meeting of the shareholders, and records of action taken by the shareholders or board of directors without a meeting, to the extent not subject to inspection under section 30-29-1602(1), Idaho Code;

(b) Accounting records of the corporation; and

(c) The record of shareholders.

(3) A shareholder may inspect and copy the records described in subsection (2) of this section only if:

(a) He has been a holder of record of shares or of voting trust certificates for at least six (6) months immediately preceding his demand or shall be the holder of record of, or the holder of record of voting trust certificates for, at least five percent (5%) of all the outstanding shares of the corporation;

(b) His demand is made in good faith and for a proper purpose;

(c) He describes with reasonable particularity his purpose and the records he desires to inspect; and

(d) The records are directly connected with his purpose.

(4) The right of inspection granted by this section may not be abolished or limited by a corporation's articles of incorporation or bylaws.

(5) **This section does not affect:**

(a) The right of a shareholder to inspect records under section 30-29-720, Idaho Code, or, if the shareholder is in litigation with the corporation, to the same extent as any other litigant; or

**Exhibit - 6, p. 2**
**19-ER-4825**

AIA Services Corporation
R. John Taylor
JoLee Duclos
April 22, 2016
Page - 3

> (b) The power of a court, independently of this chapter, to compel the production of corporate records for examination.

> (6) For purposes of this section, "shareholder" includes a beneficial owner whose shares are held in a voting trust or by a nominee on his behalf.

**I.C. § 30-29-1602** (emphasis added). Idaho Code Section 30-29-603 provides verbatim:

> (1) A shareholder's agent or attorney has the same inspection and copying rights as the shareholder represented.

> (2) The right to copy records under section 30-29-1602, Idaho Code, includes, if reasonable, the right to receive copies by xerographic or other means, including copies through an electronic transmission if available and so requested by the shareholder.

> (3) The corporation may comply at its expense with a shareholder's demand to inspect the record of shareholders under section 30-29-1602(2)(c), Idaho Code, by providing the shareholder with a list of shareholders that was compiled no earlier than the date of the shareholder's demand.

> (4) The corporation may impose a reasonable charge, covering the costs of labor and material, for copies of any documents provided to the shareholder. The charge may not exceed the estimated cost of production, reproduction or transmission of the records.

**I.C. § 30-29-603**. In addition, Idaho Code Section 30-29-1620 provides verbatim:

> (1) A corporation upon written shareholder request shall furnish its shareholders annual financial statements or, if annual financial statements are not available, other appropriate accounting records, which may be consolidated or combined statements of the corporation and one (1) or more of its subsidiaries, as appropriate, that include a balance sheet as of the end of the fiscal year, an income statement for that year, and a statement of changes in shareholders' equity for the year unless that information appears elsewhere in the financial statements. If financial statements are prepared for the corporation on the basis of generally accepted accounting principles, the annual financial statements must also be prepared on that basis.

> (2) If any annual financial statements furnished pursuant to subsection (1) of this section are reported upon by a public accountant, his report must accompany them. If not, the statements must be accompanied by a statement of the president or the person responsible for the corporation's accounting records:

AIA Services Corporation
R. John Taylor
JoLee Duclos
April 22, 2016
Page - 4

     (a) Stating his reasonable belief whether the statements were prepared on the basis of generally accepted accounting principles and, if not, describing the basis of preparation; and

     (b) Describing any respects in which the statements were not prepared on a basis of accounting consistent with the statements prepared for the preceding year.

**I.C. § 30-29-1620**. In addition to obligations under Idaho Code and the common law, John Taylor and JoLee Duclos are both required to comply with AIA Services' Restated Bylaws and Amended Articles of Incorporation. JoLee Duclos, as Secretary of AIA Services, is separately obligated to:

     The secretary shall: (a) attend all meetings and keep the minutes of· the proceedings of the stockholders and of the Board of Directors in one or more books provided for that purpose; (b) see that all notices are duly given in accordance with the provisions of these Bylaws or as required by law; (c) be custodian of the corporate records and of the seal of the corporation and see that the seal of the corporation is affixed to all documents the execution of which on behalf of the corporation under its seal is duly authorized; (d) keep a register of the post office address of each shareholder which shall be furnished to the secretary by such shareholder; (e) sign, with the president, or a vice president, certificates for shares of the corporation, issuance of which shall have been authorized by resolution of the Board of Directors; (f) have general charge of the. stock transfer books of the corporation; and (g) in general perform all duties commonly incident to the office of secretary and such other duties as from time to time may be assigned to him by the president or by the Board of Directors.

(AIA Services' Restated Bylaws, § 5.2(d).)

As you know, AIA Services has not provided year-end consolidated financial statements or any accounting information to its shareholders for a number of years nor has it even bothered to hold an annual shareholder meeting for a number of years. And AIA Services, through John Taylor and/or others, has refused to honor Donna Taylor's appointment of Paul Durant to AIA Services' board of directors. A new lawsuit was filed in California federal court alleging fraud and other torts against John Taylor and others, and you both unlawfully had AIA Services and AIA Insurance guarantee a $10 million line-of-credit for CropUSA Insurance Agency, Inc. and CropUSA Insurance Services, LLC. Then, you entered into an unlawful settlement agreement requiring judgment to be entered against AIA Services and AIA Insurance for over $12,000,000. We are also aware that John Taylor has confessed judgment in excess of $12,000,000 in favor of GemCap Lending I, LLC, too, but that enforcement of that judgment will await certain collection efforts undertaken by GemCap Lending I, LLC. We are aware that you have allowed GemCap Lending I, LLC to conduct audits and you have provided it with substantial financial information, yet you have not provided any financial information to any of the shareholders for years. I would note that

AIA Services Corporation
R. John Taylor
JoLee Duclos
April 22, 2016
Page - 5

Doug Siddoway, as agent for AIA Services, and David Risley, as agent for John Taylor made the following admission in Donna Taylor's consolidated lawsuits:

> John Taylor personally guaranteed the loan. Gemcap alleges that AIA did, too, but that allegation is disputed. In any event, Gemcap has not pursued the AIA guaranty (or the Taylor guaranty for that matter).
>
> If the California court ultimately determines that AIA guaranteed the CropUSA loan and the lender pursues the remedies that are available to it under the guaranty, then AIA will have incurred a prohibited indebtedness under subsection 4.2.9(c) [of the amended articles of incorporation].

(Response to Plaintiff's Motion for Summary Judgment dated May 9, 2014, p. 8 (which was filed in the consolidated cases filed by Donna Taylor in Nez Perce County District Court regarding the payment of her Series A Preferred Shares and related torts).) This is a judicial admission of the obvious—that the Guarantees and subsequent settlement agreement in the California litigation was barred by the amendment articles of incorporation and thus is illegal and, at a minimum, ultra vires. As you know, the Guarantees and Settlement Agreement were also barred by the Restated Bylaws. Then, ironically, you had David Risley foreclose on the Lewis/Clark Plaza property in the name of GemCap Lending I, LLC and the 401(k) Plan and assist in transferring AIA Services' ownership interest in the Lewis/Clark Plaza to GemCap Lending I, LLC pursuant to the terms of the illegal Settlement Agreement, which also illegally promised to not file bankruptcy on behalf of AIA Services and AIA Insurance. In sum, you have opened up AIA Service and AIA Insurance's books and records to GemCap Lending I, LLC and have transferred assets to it, yet will have provided no information to shareholders for years. Thus, while John Taylor awaits what appears to be his ultimate financial ruin and/or bankruptcy as he does not have the money or assets to pay the over $12,000,000 judgment, you have continued to not provide any financial information to shareholders and have refused to properly operate AIA Services in accordance with the law, its amendment articles of incorporation and its bylaws.

Based upon the above and pursuant to I.C. § 30-29-1601, *et seq.* (including the Idaho Code Sections quoted above), the undersigned attorney, along with one or more of the above-referenced shareholders, demands to inspect and copy the following records during regular business hours on April 29, 2016, at the offices of AIA Services at 111 Main Street in Lewiston, Idaho:

1.  AIA Services' articles of incorporation and all amendments thereto currently in effect.

2.  AIA Services' bylaws and all amendments thereto currently in effect.

3.  The minutes of all shareholder meetings for AIA Services, together with records of all action taken by shareholders without a meeting, for the past three (3) years.

AIA Services Corporation
R. John Taylor
JoLee Duclos
April 22, 2016
Page - 6

4. Excerpts from minutes of any meeting of the board of directors, records of any action of a committee of the board of directors while acting in place of the board of directors on behalf of the corporation, minutes of any meeting of the shareholders, and records of action taken by the shareholders or board of directors without a meeting, to the extent not subject to inspection under section 30-29-1602(1), Idaho Code, for the last five (5) years.

5. All written communications to AIA Services' shareholders generally without the past three (3) years, including the financial statements furnished for the past three (3) years under Idaho Code §§ 30-1-1620 and 30-29-1620.

6. A list of the names and business addresses of AIA Services' current directors and officers and a copy of the most recent Annual Report filed with the Idaho Secretary of State.

7. AIA Services' common and preferred shareholder lists showing the name, addresses and number of shares held by each shareholder, including, without limitation, the names and addresses of shareholders who own or owned within the last three (3) years common shares through AIA Services Corporation's ESOP or beneficially owned Series C Preferred Shares in AIA Services Corporation's 401(k) Plan within the last three (3) years. Please note that to the extent AIA Services' records show otherwise, I have provided the current addresses for the shareholders indicted on page 1 below.

8. AIA Services' accounting records. At this time, my clients are only requesting the following information and they have all been shareholders for well over six (6) months:

   - The year-end and quarterly accounting notebooks for AIA Services and its wholly owned subsidiary AIA Insurance, Inc. ("AIA Insurance") for the past five (5) years.
   - Copies of the check registers and bank statements for AIA Services and AIA Insurance for the past five (5) years.
   - Copies of all tax returns and amendments thereto for AIA Services and AIA Insurance for the past five (5) years.
   - AIA Services' consolidated financial statements for the past five (5) years, including the consolidated financial statement for the period ending March 31, 2016.
   - The accounting records used to prepare AIA Services Corporation's financial statements for the past five (5) years.
   - All financial statements, financial records and information for AIA Services and/or AIA Insurance which you have provided to GemCap Lending I, LLC or any of its auditors or attorneys.
   - If no financial statements are available for AIA Services and AIA Insurance for the full year of 2015, then such other appropriate accounting records (which may be consolidated), including a year-end balance sheets for year-end 2015, income statements for 2015, statements of changes in shareholders' equity for 2015, and such

**Exhibit - 6, p. 6**
**19-ER-4829**

AIA Services Corporation
R. John Taylor
JoLee Duclos
April 22, 2016
Page - 7

other information required by I.C. §30-29-1620 (including the appropriate statements accompanying the information).

- Accounting records for all payments made to GemCap Lending I, LLC or any party on its behalf and for any assets transferred to it (including AIA Services' interest in the Lewis/Clark Plaza).

- Accounting records for all loans or guarantees AIA Services and/or AIA Insurance are or were obligated to pay for the past five (5) years, including, without limitation, statements and records for loans to Syringa Bank (and its successor), U.S. Bank, GemCap Lending I, LLC or any other lender or party.

- Accounting records pertaining to any and all attorneys' fees and costs paid on behalf of any of the past or present officers and/or directors of AIA Services and/or AIA Insurance, paid to any attorney or law firm representing AIA Services and/or AIA Insurance and any and all attorneys' fees paid for any other party for any litigation. The foregoing requests are for the past ten (10) years (including for Michael Cashman, Sr.). This request includes the billing statements received from any attorneys or law firms.

- Accounting records pertaining to any and all compensation, salary, benefits, advances and loans of money, shares or other property provided directly or indirectly from AIA Services or its subsidiary AIA Insurance, Inc., to John Taylor, James Beck, Connie Taylor Henderson, JoLee Duclos, and Michael Cashman Sr., for the last seven (7) years.

- Accounting records pertaining to all loans, payments, promissory notes and any other transaction pertaining to Pacific Empire Radio Corp. (including all loans made to Pacific Empire Radio and any repayments of such loans) for the past ten (10) years.

- Accounting records regarding all transactions, advances, loans, credits, and/or payments by or between AIA Services or AIA Insurance and any entity partially or wholly owned by R. John Taylor, including, without limitation, CropUSA Insrurance Agency, Inc., CropUSA Insurance Services, LLC, and the Green Leaf entities for the past five (5) years.

- Accounting records regarding all commissions and fees paid for all health insurance policies or premiums paid to AIA Insurance for the past five (5) years, including all checks or payments received from Trustmark.

- Accounting records pertaining to any audits conducted by GemCap Lending I, LLC or any other auditor.

9. If AIA Services Corporation has indemnified or advanced expenses to a present or former director, all reports required by I.C. § 30-29-1621(1).

My firm will remit payment for the reasonable labor and copying costs necessary for AIA Services to assemble and copy the above-referenced documents. In lieu of inspecting and copying the above-referenced records, AIA Services may assemble, copy and provide them to the undersigned attorney via scanned email files or in paper on or before April 28, 2016.

Exhibit - 6, p. 7
19-ER-4830

AIA Services Corporation
R. John Taylor
JoLee Duclos
April 22, 2016
Page - 8


As you are well aware (including for the reasons discussed above), my clients' request to inspect records is in good faith—they have a right to financial information concerning AIA Services and its wholly owned subsidiary AIA Insurance, and obtain the other information required by Idaho Code. All of the information above should be readily available. As mentioned above, these rights are, in addition to, and not in lieu of rights to obtain any information through discovery in litigation.

In addition, so there is no confusion as my clients have never been provided any shareholder lists and address for many years, please note the current addresses for the shareholders listed on page 1 of this letter (although any communications other than shareholder communications should be directed to me):

Common Shareholders

Jerry Legg
701 West Grand
Tonkwa, OK 74653

Dale Miesen (as to him individually and as trustee for his children)
5121 Stonebridge Dr.
Colleyville, TX  76034

Paul D. Durant
3440 Selway Dr.
Lewiston, ID  83501

Donna J. Taylor
Personal Representative of the Estate of Sara Taylor
2940 Dove Place
Clarkston, WA  99403

Series A Preferred Shareholder

Donna J. Taylor
2940 Dove Place
Clarkston, WA  99403

As you have already known that Donna Taylor is the Personal representative of the Estate of her deceased daughter Sara Taylor, to the extent you have not done so, please issue a new stock certificate for the common shares which was previously issued to Sara Taylor.


**Exhibit - 6, p. 8**
**19-ER-4831**

AIA Services Corporation
R. John Taylor
JoLee Duclos
April 22, 2016
Page - 9


Thank you for your prompt attention to the above matters. I apologize in advance for any typographical errors, but I needed to get this letter sent to you. I look forward to receiving the documents requested above in lieu of inspecting them so long as they are provided on or before April 28, 2016, or, alternatively, to inspect the documents and copy them on April 29, 2016. My clients are also willing to consider other amicable arrangements for obtaining these documents.

Sincerely,

RODERICK BOND LAW OFFICE, PLLC


By: Roderick C. Bond

cc:  Dale Miesen
     Donna Taylor
     Paul Durant
     Jerry Legg
     Steve Wielend (counsel for John Taylor, the President and sole director of AIA Services)
     Shawnee Perdue (counsel for John Taylor, the President and sole director of AIA Services)

**Exhibit - 6, p. 9**
**19-ER-4832**

RODERICK C. BOND, ISB No. 8082
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA  98004
Telephone: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Attorney for the Plaintiff Dale L. Miesen

UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>HAWLEY TROXELL DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFF AND HAWLEY TROXELL DEFENDANTS' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS BY PLAINTIFF (*with Plaintiff's Fourth Amended Objections, Answers and Responses*) |

PLAINTIFF'S 4th AMENDED RESPONSES TO HAWLEY TROXELL DEFENDANTS'
1st INTERROGATORIES AND 2nd REQUEST FOR PRODUCTION OF DOCUMENTS - 1

**Exhibit - 7, p. 1**

**19-ER-4833**

19-ER-4834

Crop USA Insurance Agency, Inc., an Idaho corporation; Connie Taylor Henderson, an individual; JoLee Duclos, an individual; R. John Taylor, an individual; Michael W. Cashman Sr., an individual; James Beck, an individual,

      Defendants/Third-Party Plaintiffs,

      v.

Reed Taylor, an individual,

      Third-Party Defendant.

Reed Taylor, an individual,

      Third-Party Defendant/ Counterclaimant,

      v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

      Counterdefendants.

PLAINTIFF'S 4th AMENDED RESPONSES TO HAWLEY TROXELL DEFENDANTS' 1st INTERROGATORIES AND 2nd REQUEST FOR PRODUCTION OF DOCUMENTS - 2

**Exhibit - 7, p. 2**

19-ER-4835

Plaintiff Dale Miesen ("Plaintiff" or "Miesen") submits the following Second Amended objections, responses and answers to Hawley Troxel Defendant's (collectively the "Hawley Troxell Defendants")'s First Set of Interrogatories and Second Request[s] for Production of Documents to Dale Miesen ("Discovery Requests"), which supersede and replace the original and First Amended Objections, Answers and Reponses because they omitted certain information and contained errors based on the lack of time Miesen's counsel had to work on them (the below were the only ones signed by Miesen as well):

## A. INTERROGATORIES

INTERROGATORY No. 1: Please identify each and every person known to you or your attorney who has any knowledge of, or who purports to have any knowledge of, any of the facts relating to the allegations contained in the Complaint and/or any of the responses/defenses asserted thereto. By this Interrogatory, please identify all potential witnesses who have any knowledge of any fact pertinent to either liability or damages; and in regards thereto, please also state the relevant facts which you understand to be within the knowledge of such person, and the substance of any testimony expected to be elicited from such person during discovery and/or at trial.

Answer:

Miesen objects to this Interrogatory to the extent that the Hawley Troxell Defendants seek to invade any attorney-client privilege, work product privilege, common interest privilege and privileged communications involving Roderick Bond's representation of him in this lawsuit, *Durant, et al. v. GemCap Lending I, LLC, et al.*, Nez Perce County District Court Case No. CV-

PLAINTIFF'S 4th AMENDED RESPONSES TO HAWLEY TROXELL DEFENDANTS'
1st INTERROGATORIES AND 2nd REQUEST FOR PRODUCTION OF DOCUMENTS - 3

**Exhibit - 7, p. 3**

**19-ER-4835**

INTERROGATORY No. 6: Please identify and describe in full and complete detail any and damages that you claim AIA Services and/or AIA Insurance incurred or suffered as the proximate result of any acts of omissions of the Hawley Troxell Defendants, or any of them. Your answer should set forth the amount of item of damages, the date such damages were incurred, and all calculations of such damages.

Answer:

Miesen objects to this Interrogatory to the extent that the Hawley Troxell Defendants seek to invade any attorney-client privilege, work product privilege, common interest privilege and privileged communications involving Roderick Bond's representation of him in this lawsuit, *Durant, et al. v. GemCap Lending I, LLC, et al.*, Nez Perce County District Court Case No. CV-14-01444, or *AIA Services Corp. v. Durant, et al.*, Nez Perce County District Court Case No. CV-12-01483.

Subject to and without waiving the foregoing objections, Miesen asserts that the Hawley Troxell Defendants' acts and omissions (including their malpractice, breach of fiduciary duties and aiding and abetting in the Controlling AIA Defendants and others in the commissions of torts against the AIA Corporations such as breaches of fiduciary duty and fraud) in Reed *Taylor v. AIA Services* (e.g., the damages in the applicable item numbers below could have prevented or recovered had the Hawley Troxell Defendants properly discharged their duties owed to the AIA Corporations and most of the items were at issue in that lawsuit), in *Donna Taylor v. AIA Services* (e.g., the appointment of a receiver or Patrick Moran as a director would have prevented and led to the recovery of the below damages because Moran would have been the only independent director), other matters handled by them (including the $800,000 trust litigation settlement, which included over $2 million in money that was required to be paid to former policyholders, but over $400,000 was never paid or submitted to the states), and as the outside general counsel for the AIA Corporations during the relevant times (e.g., the Hawley Troxell Defendants could have prevented

PLAINTIFF'S 4th AMENDED RESPONSES TO HAWLEY TROXELL DEFENDANTS'
1st INTERROGATORIES AND 2nd REQUEST FOR PRODUCTION OF DOCUMENTS - 111

and/or recovered the below damages, but instead enabled John Taylor, Beck, Cashman and Henderson by allowing them to continue in their unlawful acts and improper corporate governance),[2] among other acts and omissions, have proximately caused the AIA Corporations to incur the significant damages discussed below, which will continue to be supplemented in the future as more information becomes available. Miesen directs the Hawley Troxell Defendants to the expert witness Reports of Professor McDermott and Larry Hile (and any subsequent versions) and the non-retained expert disclosure/report for Patrick Moran (and any subsequent versions) as additional support for the damages and the calculations for the damages. Miesen will specifically testify about total amounts of damages, including interest and other calculations, and he will further testify regarding the mathematical computation of the below damages. Miesen has segregated documents supporting the below item numbers and he has ensured that the Excel spreadsheet formulas and data are correct and he will continue to double check his numbers (although he will continue to supplement the below as more information and/or knowledge of any corrections become available).[3] While Miesen maintains that the Hawley Troxell Defendants are solely responsible for the disgorgement aspect of the attorneys' fees and costs set forth in Item No. 4 below (John Taylor, Beck and Henderson are separately liable for those fees and costs because they were unauthorized based on the their conflicts and Hawley Troxell's conflicts, among other

---

[2] On August 29, 2016, John Taylor testified at a deposition and voluntarily offered the testimony that "Hawley Troxell, for example, was our general counsel for years." (GC0748429.) As outside general counsel for the AIA Corporations, the Hawley Troxell Defendants could have, and should have, among other things, insisted that John Taylor, Beck, Henderson and Cashman operate the AIA Corporations by the book, comply with all articles of incorporation, comply with all bylaws, hold annual shareholder meetings, obtain shareholder approval when necessary, pay back improper loans and transactions and, most importantly, not enabled John Taylor by making him act honestly, ethically and according to the laws. That was not done and John Taylor has accelerated his unlawful activities. This footnote is incorporated by reference into each Item Number below.

[3] If Larry Hile is permitted to testify in Miesen's case in chief, he will provide testimony regarding the amounts and calculations. Otherwise, Miesen will provide the amounts and information.

PLAINTIFF'S 4th AMENDED RESPONSES TO HAWLEY TROXELL DEFENDANTS'
1st INTERROGATORIES AND 2nd REQUEST FOR PRODUCTION OF DOCUMENTS - 112

**Exhibit - 7, p. 112**

**19-ER-4837**

things), Miesen maintains that the Hawley Troxell Defendants are, at a minimum, a substantial factor (i.e., not necessarily the sole cause) in the AIA Corporations incurring the following damage items (some of which may be alternative damages or contain alternative damage components), which include prejudgment interest through August 31, 2020 and may change as more information becomes available (assuming all issues are tried and the trial is completed by December 31, 2020 and judgment is entered in favor of Miesen for the AIA Corporations thereby confirming the significance of prejudgment interest to many damage claims). The following summary provides the base damages, plus accrued interest for the applicable items; however, the base damages and the alternative scenarios for the applicable item numbers with more than one scenario are contained within the attached Exhibit A, which is incorporated by reference herein. Each item number, together with some item numbers not contained within the below summary, are addressed in more detail below and in the attached Exhibit A (including by providing bates stamp numbers for certain documents supporting each item number (although the documents cited are not exclusive or exhaustive) and in the expert witness reports and disclosures for McDermott, Hile and Moran:[4]

| No. | Description of Damages | Base Damages + Accrued Interest |
|---|---|---|
| 1. | Book of Business Belonging to AIA and sold to Hudson Insurance in 2008 | $28,294,366.97 |
| 2. | Consulting Fees for John Taylor paid to CropUSA by Hudson Insurance | $285,941.92 |
| 3. | Unauthorized Series C Preferred Shares repurchased by AIA Insurance | $4,426,620.21 |
| 4. | Unauthorized attorneys' fees and costs paid to Hawley Troxell | $2,410,746.74 |
| 5. | Unpaid Dividends owed to Series C Shares in AIA Services' 401(k) Plan | $1,781,509.45 |
| 6. | Unauthorized attorneys' fees and costs paid to Michael McNichols | $461,498.11 |

---

[4] Because certain of the damage Item Numbers may contain duplicative damage requests in part, Miesen concedes that it is not possible to recover the full base damages and accrued interest of $138,657,183.59.

PLAINTIFF'S 4th AMENDED RESPONSES TO HAWLEY TROXELL DEFENDANTS' 1st INTERROGATORIES AND 2nd REQUEST FOR PRODUCTION OF DOCUMENTS - 113

**Exhibit - 7, p. 113**

**19-ER-4838**

| 7. | Unauthorized attorneys' fees and costs paid to David Risley and Clark & Feeney | $803,537.53 |
| 8. | Unauthorized attorney's fees and costs paid to David Gittins | $243,483.35 |
| 9. | Unauthorized attorney's fees and costs paid to Chuck Brown | $458,064.28 |
| 10. | Money owed to AIA Policyholders from Settlement of Trust Litigation | $1,033,369.64 |
| 11. | Settlement Proceeds received by AIA Insurance in 2008 | $1,944,635.62 |
| 12. | Security posted in Court Register in *Reed Taylor v. AIA Services*, et al. | $825,816.19 |
| 13. | Unauthorized loans and advances made to PERC by AIA Corporations | $4,670,782.66 |
| 14. | Interest, attorneys' fees and costs owed to Donna Taylor | $1,073,831.75 |
| 15. | AIA Liability under 2015 Settlement Agreement with GemCap | $27,363,461.20 |
| 16. | Value of AIA Services' former headquarters and AIA Insurance's condos | $1,703,165.30 |
| 17. | Value of Parking Lot purchased and rent paid to John Taylor | $281,733.09 |
| 18. | Identified compensation paid to John Taylor by AIA | $8,351,716.91 |
| 19. | Directors' fees and costs paid to Connie Henderson and James Beck | $374,845.99 |
| 20. | Certain known payments made by AIA on behalf of CropUSA | $3,495,655.49 |
| 21. | Unauthorized attorney's fees and costs paid to David Risley | $13,486.89 |
| 22. | Unauthorized attorneys' fees and costs paid to Martelle Law Offices | $215,349.10 |
| 23. | Unauthorized attorneys' fees and costs paid to Steve Wieland and Shawnee Perdue | $149,896.34 |
| 24. | Unauthorized attorneys' fees and costs paid to Daniel Glynn | $109,503.29 |
| 25. | Unauthorized attorneys' fees and costs paid to Crumb & Munding | $193,159.58 |
| 26. | Unauthorized attorney's fees and costs paid to Connie Henderson | $59,113.11 |
| 27. | Payments to/from Reed Taylor for his illegal redemption in 2007 and 2008 | $980,840.31 |
| 28. | Certain known payments made on behalf of John Taylor | $1,003,484.71 |

PLAINTIFF'S 4th AMENDED RESPONSES TO HAWLEY TROXELL DEFENDANTS'
1st INTERROGATORIES AND 2nd REQUEST FOR PRODUCTION OF DOCUMENTS - 114

**Exhibit - 7, p. 114**

**19-ER-4839**

| | | |
|---|---|---|
| 29. | Unauthorized attorneys' costs paid in *Maile v. Taylor* | $38,305.37 |
| 30. | Unauthorized attorneys' fees and costs paid to Doug Siddoway | $257,613.08 |
| 31. | Unauthorized miscellaneous attorneys' fees and costs | $152,418.69 |
| 32. | Unauthorized attorneys' fees and costs paid to Clark & Feeney | $48,659.61 |
| 33. | Unauthorized fees paid to Coles Reinstein Accounting & Consulting | $5,014.22 |
| 34. | Growers National Cooperative Settlement with CropUSA | $952,223.56 |
| 35. | Unauthorized compensation paid to certain competing employees of AIA | $2,438,450.41 |
| 36. | Attorney fees and costs awarded to GemCap in *GemCap v. AIA*, et al. | $473,578.90 |
| 37. | Principal and interest owed by John Taylor to AIA | $1,069,875.53 |
| 38. | Revenues of AIA Corporations from 1999 through the present time | $39,577,697.00* |
| 39. | Sale of Sound Insurance Agency to CropUSA in 2006 | $633,731.51 |
| 40. | John Taylor's Series A Preferred Shares and Common Shares in AIA | TBD |
| | **Total Preliminary Damages** | **$138,657,183.59** |

\* No interest has been included in this damage item unless it is established that all $39,577,697 in revenues are damages because the defendants did not establish that any of the expenditures were authorized, legal, proper, lawful or arms-length because the burden is on the defendants based on the conflicts of interest.

In addition to the information and calculations provided in the attached Exhibit A for each of the item numbers listed above (which is incorporated by reference herein), Miesen provides the following additional information for each of the Items listed above and for some additional Item Numbers not addressed in the attached Exhibit A, which the Hawley Troxell Defendants should have also taken legal action to prevent or recover:

**Item No. 1:  AIA Assets Sold by CropUSA to Hudson Insurance Company**

PLAINTIFF'S 4th AMENDED RESPONSES TO HAWLEY TROXELL DEFENDANTS'
1st INTERROGATORIES AND 2nd REQUEST FOR PRODUCTION OF DOCUMENTS - 115

Exhibit - 7, p. 115

19-ER-4840

This $28,294,366.97 damage claim consists of the total amount of assets sold to Hudson in the amount of $11,588,245.00, as evidenced on CropUSA's 2008 Tax Return, plus 12% prejudgment interest from August 29, 2008 through August 31, 2020 in the amount of $16,706,121.97.  Interest continues to accrue at the rate of $3,809.83 per diem on this claim.

The assets sold by CropUSA were truly owned by the AIA Corporations, who created the opportunity and funded the development and sales of the crop insurance business in substantial part (John Taylor and other defendants incurred some loans and other funding, but those moneys were wasted on expenses and compensation never authorized by the AIA Corporations). In the alternative, the $10,406,000 net gain from the sale of the assets to Hudson belonged to, and should have been paid to, the AIA Corporations. In the alternative, at least 70% of the assets sold are traced directly to AIA Insurance's agents and thus at least $8,111,771.50 of the sale proceeds should have been paid to the AIA Corporations (John Taylor testified that at least 70% of the book of business could be traced to AIA's agents such as Larry Whitehead). In the alternative, at least 70% of the assets sold are traced directly to AIA Insurance's agents and thus at least $7,284,200 of the net sale proceeds should have been paid to the AIA Corporations (John Taylor testified that at least 70% of the book of business could be traced to AIA's agents such as Larry Whitehead). Accrued interest and the per diem for each of the above alternatives is set forth in the attached Exhibit A.

Under either of the above scenarios, the Hawley Troxell Defendants should have taken action to ensure that the sale proceeds were paid to the rightful owners, the AIA Corporations. As an additional alternative, had the Hawley Troxell Defendants properly and quickly taken action, CropUSA could have been salvaged (including by not increasing the debt to Lancelot) and it would be worth tens of millions of dollars (i.e., the same value that Hudson's crop insurance is worth

PLAINTIFF'S 4th AMENDED RESPONSES TO HAWLEY TROXELL DEFENDANTS'
1st INTERROGATORIES AND 2nd REQUEST FOR PRODUCTION OF DOCUMENTS - 116

now because it is based on CropUSA's book of business and the natural growth of that book of business). *See also* Dan Gasser Interrogatory answer above. With the assistance of the Hawley Troxell Defendants, CropUSA continued to waste millions of dollars on wasteful and unnecessary expenses because John Taylor remained in control (including paying John Taylor significant compensation when he essentially did nothing but constantly put together schemes to raise money instead of rolling up his sleeves and working and having an office and staff located in Kansas, and funding those expenses with hard money loans with exorbitant interest rates). Instead, the Hawley Troxell Defendants placed their interests ahead of the AIA Corporations by allowing CropUSA to be continued to be operated improperly (thereby significantly increasing the loan balance to Lancelot) and by allowing the Hudson sale to close thereby paying off the nearly $10 million owed on the Lancelot Loan in order to extinguish any claims Lancelot had against the Hawley Troxell Defendants for their improper 2006 Opinion Letter and to allow other parties to benefit from the sale. AIA Insurance's guarantee of that $15 million Lancelot Loan was ultra vires, unauthorized and illegal and the Hawley Troxell Defendants should have asserted those defenses against Lancelot as well, but instead they placed their interests ahead of the AIA Corporations' interests. At a minimum, the Hawley Troxell Defendants could have negotiated a settlement with Hudson for the payment of funds to the AIA Corporations in order to allow the sale of the book of business to close. While the sale of the assets funded the payoff of the Lancelot loan, the proceeds should have been paid to the IAA Corporations rather than paying off an ultra vires and unauthorized hard money loan. This transaction was at issue in *Reed Taylor v. AIA Services*. Had the Hawley Troxell Defendants properly discharged their duties as general counsel, in *Reed Taylor v. AIA Services* and *Donna Taylor v. AIA Services*, these damages would have been prevented and/or recovered. This transaction, as was the stealing and improper funding of CropUSA, was concealed from the AIA

PLAINTIFF'S 4th AMENDED RESPONSES TO HAWLEY TROXELL DEFENDANTS'
1st INTERROGATORIES AND 2nd REQUEST FOR PRODUCTION OF DOCUMENTS - 117

Corporations under the adverse interest exception and from AIA Services' minority shareholders. (*See also* the expert witness reports and disclosures of McDermott, Hile, and Moran.)

### Item No. 2:  Consulting Fees paid to John Taylor

This $285,941.92 damage claim consists of a total of $120,000.00 paid to John Taylor ($10,000.00 per month for 12 months), plus 12% prejudgment interest accrued through August 31, 2020 in the amount of $165,941.92.  Interest continues to accrue at a rate of $39.45 per diem.  The computations are based upon the referenced documentation and calculations contained within pages 1, 5, and 12 of Exhibit, A which is attached hereto and incorporated by reference.

John Taylor obtained a preferential consulting agreement with Hudson that paid him $10,000 per month for one year starting in 2008. While John Taylor testified that the money was ultimately paid to CropUSA rather than him individually, the $120,000 should have been paid to the AIA Corporations as the rightful owners of CropUSA. The Hawley Troxell Defendants should have ensured that those funds were paid to the AIA Corporations. Instead, they proceeded as they did with everything else—they looked after John Taylor's interests instead of the AIA Corporation's interests. While John Taylor has testified that the $120,000 was paid to CropUSA rather than him, it is distinction without a difference. The bottom line is that CropUSA and its assets were stolen from the AIA Corporations and belonged to the AIA Corporations and the consulting payments should have been paid to the AIA Corporations. This transaction was at issue in *Reed Taylor v. AIA Services*. Had the Hawley Troxell Defendants properly discharged their duties as general counsel, in *Reed Taylor v. AIA Services* and *Donna Taylor v. AIA Services*, these damages would have been prevented and/or recovered. This transaction was concealed from the AIA Corporations under the adverse interest exception and from AIA Services' minority

PLAINTIFF'S 4th AMENDED RESPONSES TO HAWLEY TROXELL DEFENDANTS' 1st INTERROGATORIES AND 2nd REQUEST FOR PRODUCTION OF DOCUMENTS - 118

Exhibit - 7, p. 118

19-ER-4843

above shares should be disgorged and cancelled because they were unlawfully issued and were, in part, the product of compensation John Taylor was not entitled to receive or must disgorge.

### Item No. 41:  Punitive Damages

Miesen will be seeking permission to amend his complaint to include a claim for punitive damages based on the countless breaches of fiduciary duties and other torts committed by the Hawley Troxell Defendants (and the other defendants) by and through their complete and outrageous disregard for the legal rights of the AIA Corporations and their disinterested shareholders. (*See also* the expert witness reports and disclosures of McDermott, Hile, and Moran.)

### Item No. 42:  Miesen's Attorneys' Fees and Costs

While not technically a damage claim, Miesen will be seeking to recover the fees and costs associated with prosecuting the claims and defending against the defenses in this lawsuit pursuant to I.C. § 12-120(3). *See Reynolds v. Trout Jones Gledhill Fuhrman, P.A.,* 154 Idaho 21, 26-27, 293 P.3d 645, 650-51 (2013). Since the gravamen of Miesen's claims involve legal malpractice and related claims associated with the commercial transactions and commercial litigation involving the AIA Corporations, Miesen will be entitled to recover those fees and costs. Indeed, Loren Ipsen recently confirmed that this lawsuit involves commercial transactions in a discovery conference. Miesen anticipates that the attorneys' fees and costs requested will be in the seven figures.

INTERROGATORY No. 7: If you are asserting any direct claims for damages (i.e., damages which you seek to recovery individually and not asserted derivatively on behalf of and/or in the right of AIA Services or AIA Insurance) in the above-entitled action, please identify and describe in full and complete detail any and damages that you claim were. suffered by you

PLAINTIFF'S 4th AMENDED RESPONSES TO HAWLEY TROXELL DEFENDANTS'
1st INTERROGATORIES AND 2nd REQUEST FOR PRODUCTION OF DOCUMENTS - 166

19-ER-4845

individually as the proximate result of any acts of omissions of the Hawley Troxell Defendants, or any of them. Your answer should set forth the amount of each item of damages, the date such damages were incurred, and all calculations of such damages.

Answer:

Miesen objects to this Interrogatory to the extent that the Hawley Troxell Defendants seek to invade any attorney-client privilege, work product privilege, common interest privilege and privileged communications involving Roderick Bond's representation of him in this lawsuit, *Durant, et al. v. GemCap Lending I, LLC, et al.*, Nez Perce County District Court Case No. CV-14-01444, or *AIA Services Corp. v. Durant, et al.*, Nez Perce County District Court Case No. CV-12-01483.

Subject to and without waiving the foregoing objections, Miesen asserts that, at this time, he is not pursuing any personal damages; provided, however, to the extent that Miesen must be pursuing any ultra vires relief or statutory relief as a shareholder, he is doing so (including as to the GemCap Settlement Agreement, property transferred and sold by GemCap, all other agreements that were not properly authorized and beyond the power of the AIA Corporations, all purported board meeting minutes and resolutions for the AIA Corporations that were not authorized or exceeded the power and authority of the AIA Corporations, all agreements, instruments and transactions that exceeded the AIA Corporations' power and authority, and agreements between the Hawley Troxell Defendants and the disgorgement of fees and costs paid to them for the AIA Corporations). Professor McDermott's report contains references to many of the ultra-vires acts, ultra vires transactions and ultra vires agreements, which Miesen will seek to set aside and recover damages to the extent possible under the laws, including Idaho Code sections 30-1-304 and 30-29-304. Miesen will also be requesting that the court distribute funds directly to

PLAINTIFF'S 4th AMENDED RESPONSES TO HAWLEY TROXELL DEFENDANTS'
1st INTERROGATORIES AND 2nd REQUEST FOR PRODUCTION OF DOCUMENTS - 167

**Exhibit - 7, p. 167**

**19-ER-4845**

the bona fide creditors, Donna Taylor as the sole legal Series A Preferred Shareholder (or the maximum amount owed to her set aside in the court registry pending the final outcome of the two consolidated lawsuits in *Donna Taylor v. Taylor*), the innocent 401(k) participants, and the innocent common shareholders rather than place any recovery back into the hands of John Taylor or any of the other Controlling AIA Defendants. *See* 13 Fletcher Cyc. Corp. § 6028 (discussing the court's authority to distribute funds directly to shareholders). To the extent Miesen is otherwise able or required, he will also pursue other direct claims, and through a class action if required, to accomplish the recoveries and distributions discussed above depending on the circumstances and any asserted defenses (including that under the circumstances the Hawley Troxell Defendants owed duties to Miesen and the other minority shareholders of AIA Services because it was a closely held corporation being unlawfully and improperly operated and based on the conflicts of interest and they assumed duties because there were no lawfully seated and fully seated boards of directors). (*See* Answer to Interrogatory No. 6; *see also* the expert witness reports and disclosures of McDermott, Hile, and Moran.)

## B. <u>REQUESTS FOR PRODUCTION OF DOCUMENTS</u>

When responding below by identifying and producing any documents involving Roderick Bond and/or Roderick Bond Law Office, PLLC's representation of Reed Taylor and/or Donna Taylor, Miesen makes the following qualifications, which he incorporates by reference into each response below to the extent that the responses or identified documents originated from any matter or representation involving Reed Taylor or Donna Taylor: (1) Reed Taylor and Donna Taylor have authorized Miesen's counsel to produce certain non-privileged and non-work product information in possession of Miesen's counsel, Roderick Bond and/or Roderick Bond Law Office, PLLC; (2)

PLAINTIFF'S 4th AMENDED RESPONSES TO HAWLEY TROXELL DEFENDANTS'
1st INTERROGATORIES AND 2nd REQUEST FOR PRODUCTION OF DOCUMENTS - 168

**Exhibit - 7, p. 168**

19-ER-4847

and/or in the right of AIA Services or AIA Insurance, including but not limited to the amounts of all such alleged damages, all calculations of alleged damages and the supporting documents for such calculations.

Response:

Miesen objects to this Request for Production to the extent that the Hawley Troxell Defendants seek to invade any attorney-client privilege, work product privilege, common interest privilege and privileged communications involving Roderick Bond's representation of him in this lawsuit, *Durant, et al. v. GemCap Lending I, LLC, et al.*, Nez Perce County District Court Case No. CV-14-01444, or *AIA Services Corp. v. Durant, et al.*, Nez Perce County District Court Case No. CV-12-01483.

Subject to and without waiving the foregoing objections, please also see the Answer to Interrogatory No. 6 (and the documents referenced in that answer), Professor McDermott's February 21, 2020 expert report (including the documents referenced in that Report), Larry Hile's February 21, 2020 expert report (including the documents identified in that Report), Patrick Moran's February 21, 2020 non-retained expert disclosure (including the documents referenced in that disclosure) and the responsive documents are contained within the documents produced by Miesen and other parties to this lawsuit, which may be downloaded again at the Dropbox link previously provided to the Hawley Troxell Defendants (which Miesen has supplemented and will continue to supplement). See Miesen's Answer to Interrogatory No. 6 and the attached Exhibit A (including the documents cited therein), which are incorporated by reference herein.

REQUEST FOR PRODUCTION NO. 95: If the Plaintiff is asserting any direct claims

PLAINTIFF'S 4th AMENDED RESPONSES TO HAWLEY TROXELL DEFENDANTS' 1st INTERROGATORIES AND 2nd REQUEST FOR PRODUCTION OF DOCUMENTS - 272

**Exhibit - 7, p. 272**

**19-ER-4847**

(i.e., any causes of action possessed by the Plaintiff individually and not asserted derivatively on behalf of and/or in the right of AIA Services or AIA Insurance) in the above-entitled action, please produce all documents that support, concern or relate to each such claim.

Response:

Miesen objects to this Request for Production to the extent that the Hawley Troxell Defendants seek to invade any attorney-client privilege, work product privilege, common interest privilege and privileged communications involving Roderick Bond's representation of him in this lawsuit, *Durant, et al. v. GemCap Lending I, LLC, et al.*, Nez Perce County District Court Case No. CV-14-01444, or *AIA Services Corp. v. Durant, et al.*, Nez Perce County District Court Case No. CV-12-01483.

Subject to and without waiving the foregoing objections, to the extent necessary, Miesen is asserting direct claims to invoke the ultra-vires statutes and related shareholder relief to set aside agreements and transactions and recover damages for the benefit of the AIA Corporations (including the administrative agreements, deeds of trust and property transfers to GemCap, guarantees and settlement with GemCap, representation agreements between the Hawley Troxell Defendants and the AIA Corporations and all related agreements and purported conflict waivers and the guarantee of the Lancelot Loan (along with the incorrect Lancelot Legal Opinion)). Responsive documents are contained within the documents produced by Miesen and other parties to this lawsuit, which may be downloaded again at the Dropbox link previously provided to the Hawley Troxell Defendants (which Miesen has supplemented and will continue to supplement), including, without limitation, the following specific documents: (1) DLM – 0032940-3095 (AIA Services' amended articles of incorporation (which have been violated) and annual reports (showing conflicts, etc.); (2) A1A0002563-85 (AIA Services' Restated Bylaws, which have been

PLAINTIFF'S 4th AMENDED RESPONSES TO HAWLEY TROXELL DEFENDANTS'
1st INTERROGATORIES AND 2nd REQUEST FOR PRODUCTION OF DOCUMENTS - 273

violated); (3) RJT-AIA 1057-79 (AIA Insurance's Bylaws, which have been violated); (4) DLM – 0033097-166 (AIA Insurance's amended articles of incorporation and annual reports (showing conflicts of interest); (5)   DLM – 0033168-199 - CropUSA's amended articles of incorporation and annual reports (showing conflicts); (6) DLM – 0033201-228 - PERC's articles of incorporation and annual reports showing conflicts); and (7) DLM – 0033230-258 - PEHC's articles of incorporation and annual reports (showing conflicts). *See also* the attached Exhibit A and the answer to Interrogatory Nos. 6 and 7, which are incorporated by reference herein.

REQUEST FOR PRODUCTION NO. 96: If the Plaintiff claims any direct damages (i.e., any damages recoverable by Plaintiff individually and not asserted derivatively on behalf of and/or in the right of AIA Services or AIA Insurance) in the above-entitled action, please produce all documents that support, concern or relate to all such damages, including but not limited to the amounts of all such alleged damages, all calculations of alleged damages and the supporting documents for such calculations

Response:

Miesen objects to this Request for Production to the extent that the Hawley Troxell Defendants seek to invade any attorney-client privilege, work product privilege, common interest privilege and privileged communications involving Roderick Bond's representation of him in this lawsuit, *Durant, et al. v. GemCap Lending I, LLC, et al.*, Nez Perce County District Court Case No. CV-14-01444, or *AIA Services Corp. v. Durant, et al.*, Nez Perce County District Court Case No. CV-12-01483.

PLAINTIFF'S 4th AMENDED RESPONSES TO HAWLEY TROXELL DEFENDANTS' 1st INTERROGATORIES AND 2nd REQUEST FOR PRODUCTION OF DOCUMENTS - 274

**Exhibit - 7, p. 274**

**19-ER-4849**

Subject to and without waiving the foregoing objections, please see the response to Request for Production No. 95 and answers to Interrogatory Nos. 6 & 7, which are incorporated by reference herein.

Dated this 17th day of September 2020.

RODERICK BOND LAW OFFICE, PLLC

By: _____

Roderick C. Bond
Attorney for the Plaintiff Dale L. Miesen
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA  98004
Telephone: (425) 591-6903
Facsimile: (425) 321-0343
E-mail: rod@roderickbond.com

<u>VERIFICATION</u>

I, Dale L. Miesen, declare:

I am the Plaintiff in the above-entitled action. I have read the foregoing Amended Answers to the Hawley Troxell Defendants' First Set of Interrogatories, know the contents thereof, and believe that forgoing Amended Answers to Interrogatories are true and accurate to the best of my knowledge and belief.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

_September 17, 2020, Caldwell, Idaho_          _/s/ Dale L. Miesen_____
Date and City and State Signed          Dale L. Miesen

PLAINTIFF'S 4th AMENDED RESPONSES TO HAWLEY TROXELL DEFENDANTS'
1st INTERROGATORIES AND 2nd REQUEST FOR PRODUCTION OF DOCUMENTS - 275

**Exhibit - 7, p. 275**

**19-ER-4850**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 17th day of September 2020, I caused the following parties or counsel to be served the forgoing by email to the parties indicated below:

Jeffrey A. Thomson:     jat@elamburke.com
Loren C. Ipsen:    lci@elamburke.com
Joyce Ann Hemmer:     jah@elamburke.com
Brad Keller: bkeller@byrneskeller.com
William Adams: wadams@gemcapsolutions.com
Alyson A. Foster: alyson@dempseyfoster.com
Tyler Scott Waite:     twaite@campbell-bissell.com
Michael Scott Bissell:    mbissell@campbell-bissell.com
Daniel Loras Glynn:    dglynn@idalaw.com

_____
Roderick C. Bond

PLAINTIFF'S 4th AMENDED RESPONSES TO HAWLEY TROXELL DEFENDANTS' 1st INTERROGATORIES AND 2nd REQUEST FOR PRODUCTION OF DOCUMENTS - 276

**Exhibit - 7, p. 276**

**19-ER-4851**

 **EMPLOYEE BENEFITS SECURITY ADMINISTRATION**
U.S. DEPARTMENT OF LABOR

Seattle District Office
300 Fifth Ave, Suite 1110
Seattle, WA 98104
(206) 757-6781

September 9, 2021

**RECEIVED**
SEP 1 3 2021
RANDALL DANSKIN

John Taylor
c/o Bill Buckholdt, Esq.
Randall|Danskin
601 West Riverside Avenue #1500
Spokane, WA 99201-0626

> Re:   AIA Services Corporation 401k Profit Sharing Plan
>        EBSA Case No. 71-010953 (48)

Dear Mr. Taylor:

The Department of Labor (Department) has concluded its investigation of the AIA Services Corporation 401k Plan (the "Plan") and your activities as its trustee. Based on the facts reviewed to date, we have concluded that, as a fiduciary, you breached your obligations to the Plan and violated several provisions of the Employee Retirement Income Security Act (ERISA).

My previous letter detailed the specific actions you took which we believe violated ERISA. It is my understanding that you have taken corrective actions with respect to the specific violations detailed in my December 4, 2021 letter. Specifically, you:

- Deposited $207,000 in principal for property obtained from a party-in-interest; and
- Deposited $64,294 for lost interest earnings for the above principal.

**Because you have taken the corrective action described above, the Department of Labor is closing its civil investigation.** However, we note that you remain in violation of ERISA §§ 406(a)(1)(A), (B), & (D) and 406(b)(1) & (2) due to transactions involving your account balance that were not restored to the Plan. Due to the fact that the transactions affected only fiduciary account balances, the Department will not be taking further action at this time.

Our case closing does not prevent the Department or any other individual or governmental agency from taking any further action it may deem appropriate with respect to these or other matters.

The Department's findings or absence of findings, including the absence of findings regarding any specific provision of the Plan, do not bind the Department in:

- reviewing or investigating any other employee benefit plan, service provider, or
- a subsequent or further review of the Plan or the conduct that was the subject of this investigation.

The U.S. Department of Labor's Employee Benefits Security Administration (EBSA) administers and enforces Title I of the Employee Retirement Income Security Act. Learn more at dol.gov/agencies/ebsa.

AIAS_0035387

**Exhibit - 8 p. 1**
**19-ER-4852**

Please note that EBSA's Office of the Chief Accountant is responsible for accepting or rejecting any Annual Report (Form 5500) in whole or in part.

Thank you for your cooperation during our investigation. We hope that this letter will be helpful to you in the execution of your fiduciary duties going forward.

Sincerely,

*Ken Cleveland* KENNETH CLEVELAND    Digitally signed by KENNETH CLEVELAND
*for*                                Date: 2021.09.09 10:18:24 -07'00'

Klaus Placke
Regional Director

2

**Exhibit - 8 p. 2**
**19-ER-4853**

AIAS_0035388

## AMENDED AND RESTATED STANDSTILL AND TOLLING AGREEMENT

This Amended and Restated Standstill and Tolling Agreement ("Agreement") is effective as of November 1, 2007 by and among AIA Insurance, Inc. ("Insurance"), AIA Services Corporation ("Services"), CropUSA Insurance Agency, Inc. ("CropUSA"), R. John Taylor ("John"), JoLee Duclos ("JoLee"), Bryan Freeman ("Bryan"), Connie Taylor ("Connie"), and James and Corrine Beck (collectively, "Beck"). John, JoLee, Bryan, Connie and Beck are collectively referenced as the "Individual Defendants". Each of Insurance, Services, Crop USA and the Individual Defendants is a "Party" to this Agreement; and they are collectively referenced as "Parties." In consideration of the mutual promises and covenants contained herein, the parties agree as follows:

1.    BACKGROUND.

1.1    **AIA Services and AIA Insurance**    Services is an Idaho corporation which wholly owns Insurance, an Idaho corporation

1.2    **CropUSA.** CropUSA is an Idaho corporation.

1.3    **Individual Defendants.** John is a current officer and director of CropUSA, Services and Insurance. JoLee and Bryan are former directors and current officers of Services and Insurance. JoLee is a current director and officer of CropUSA. Bryan is a former director and current officer of CropUSA. Connie is John's former spouse and currently serves as a director of Services and Insurance. James Beck is now and in the past has served as a director of Services and Insurance; and Corrine Beck is the spouse of James Beck

1.4    **The Action.** Each of the Parties has been named as a Defendant in an action filed by Reed J. Taylor ("Reed") in the District Court of the Second Judicial District of the State of Idaho, In and For the County of Nez Perce, CV 07-00208 (the "Action"). The Initial Complaint filed in the Action names Services, Insurance, John, JoLee and Bryan as defendants and generally alleges that:

(a)    Services has defaulted under the terms of Services' promissory note payable to Reed in connection with the redemption of Reed's stock in Services, and Reed is therefore entitled to foreclose on the stock of Services' wholly-owned subsidiary, Insurance, which was pledged as collateral for the note.

(b).    Insurance defaulted on its obligation under a related Security Agreement providing for Insurance to deposit commissions in a lockbox account to further collateralize and pay the Services' note.

(c)    In breach of fiduciary duties owed to Services and Insurance, John engaged in self-dealing transactions for his personal benefit. In addition, the other Individual Defendants breached fiduciary duties in connection with various transactions between or among certain of the Parties.

AMENDED STANDSTILL AND TOLLING AGREEMENT - 1

40005 0006.1183157 2

EX NO. 246
J. Taylor
DATE 2 25 70
ASSOCIATED
REPORTING & VIDEO

HTEH000098

**Exhibit - 12, p. 1**
**19-ER-4854**

Plaintiff's Fourth Amended Complaint adds CropUSA, Connie and Beck as defendants. As amended by the Fifth Amended Complaint, Reed's claims include (among others) allegations that (i) funds were inappropriately loaned and/or transferred back and forth from AIA Services and/or AIA Insurance to and from CropUSA; (ii) CropUSA and other parties utilized funds in which plaintiff had a security interest; and (iii) CropUSA benefited from other parties' improper guarantee of a $15 million revolving line of credit for CropUSA.

1.5     **Duty to Investigate.** Each of the Parties acknowledges the independent duty of the boards of directors of Insurance, Services and CropUSA to investigate the allegations of self-dealing / breach of fiduciary duty by the Individual Defendants, as well as the allegations of improper transactions between or among CropUSA, Services and/or Insurance. Each of the Parties agrees that Insurance's or Services' or CropUSA's denial and/or successful defense of Reed's claims against such corporation in the Action shall not estop or collaterally estop the corporation from investigating or pursuing similar claims against any of the other Parties during or following the conclusion of the Action

1.6     **Claims.** The term "Claims" means those claims for damages (including, without limitation, compensatory, exemplary, punitive, statutory or contractual damages), losses, liabilities, demands, expenses, costs, prejudgment interest, statutory interest, fees (including, without limitation, attorney fees whether imposed or awarded at common law, by statute or by contract), and those representations, promises, controversies, actions, causes of action, arbitration proceedings or suits at law or in equity of whatever kind or nature (including, without limitation, actions of contribution and indemnity) which any Party ever had or may now have, or which may hereafter accrue, against any other Party for or because of any matter or thing done, omitted or suffered to be done, at any time prior to and including the date hereof, whether the consequences thereof are now existing or may hereafter arise, are known or unknown or are anticipated or unanticipated, including (without limitation) any Claim in connection with (i) the Individual Defendants' duties as officers and/or members of the Board of Directors of Insurance, Services and/or CropUSA or (ii) any transactions between or among any of the Parties

1.7     **Intent of the Parties.** The Parties desire to enter into this Agreement to toll the applicable statutes of limitation and any other limitation of action with respect to any and all Claims that any Party may have against any one or more of the other Parties.

1.8     **Supplementation of Previous Tolling Agreements.** This Agreement amends and supplements:

(a)     that certain Standstill and Tolling Agreement by and among Insurance, Services and John dated as of May 2, 2007; and

(b)     that certain Standstill and Tolling Agreement by and among Insurance, Services, JoLee and Bryan dated as of May __, 2007. (For the purposes of this Agreement, the parties to this earlier agreement agree that the date of the earlier agreement is May 17, 2007.)

AMENDED STANDSTILL AND TOLLING AGREEMENT - 2

40005 0006 1183157 2

HTEH000099

2.    TOLLING AND STANDSTILL AGREEMENTS.

2.1    Tolling.

(a)  All statutes of limitation and other limitation periods for any and all Claims by Insurance, Services or CropUSA against other Parties shall be tolled as of the applicable date set forth in the following table ("Tolling Date") :

|  | John | JoLee, Bryan and Connie | James and Corrine Beck |
|---|---|---|---|
| Services | 5/2/07 | 5/17/07 | 11/1/07 |
| Insurance | 5/2/07 | 5/17/07 | 11/1/07 |
| CropUSA | 11/1/07 | 11/1/07 | 11/1/07 |

(b)  As to each Party, the tolling period shall continue from the applicable Tolling Date until the earlier of (i) the effective date of any final court order or written settlement agreement that finally resolves the Action, or (ii) with respect to any Party, thirty (30) calendar days after receipt of a written notice by Services, Insurance or CropUSA to such Party, or by such Party to Services, Insurance or CropUSA, that this Agreement is terminated as to such Party ("Notice of Termination"). The period from and including the Tolling Date to and including the termination date of this Agreement shall not be included in determining whether Service's or Insurance's or CropUSA's Claims or causes of action are time-barred by any statute of limitations, laches, or other time limitation (whether statutory, equitable, contractual or otherwise). Each of the Parties further agrees that such Party will not raise any statute of limitation, laches or estoppel, based on the passage of time, as a defense to any Claims or causes of action by Insurance, Services or CropUSA for the period of time tolled by this Agreement. The period of time that the limitation periods are so tolled by this Agreement shall be added to the time for bringing an action by Insurance or Services or CropUSA pursuant to any United States law or state law (statutory or case law), including any applicable state or federal code(s) of civil procedure or statute of limitation or civil practices and remedies code(s) that are applicable or may be applicable to each Claim. This Agreement does not enlarge any applicable limitation period in any way, except as provided herein. This Agreement does not abrogate any time that has already accrued with respect to any applicable limitation period prior to the applicable Tolling Date. Upon termination of this Agreement, all applicable statutes of limitation shall commence to run effective as of the day immediately following the termination date.

2.2    Standstill Provision. No Party shall commence any lawsuit in connection with any Claim or otherwise bring any Claim against any other Party prior to termination of the tolling of applicable limitations of action as to such other Party pursuant to Section 2.1.

2.3    Non-Admission of Liability. This Agreement is made by the Parties for the specific purpose of tolling any statute(s) of limitation or other limitation of actions, and does not represent or constitute an admission of any kind by any person with regard to liability or

AMENDED STANDSTILL AND TOLLING AGREEMENT - 3

40005.0006 1183157 2

HTEH000100

damages. This Agreement is admissible in evidence only for purposes related specifically to statute(s) of limitation or equitable time bars and shall not be admissible in evidence for any other purpose. The execution of this Agreement shall in no way operate as, or be considered as evidence of, an admission of liability or responsibility by any of the Parties. Further, nothing contained herein shall operate as to create, expand, waive or otherwise affect any rights, remedies, obligations, liabilities, claims or defenses of any Party which existed prior to the execution of this Agreement.

2.4 **Confidentiality.** During the term of this Agreement, no Party or such Party's respective agents, attorneys or representatives shall, without the written consent of the other Parties, disclose the existence or content of any Claim, this Agreement or any discussions or disputes between them with respect to any Claim, except that (a) such disclosure may be made to the extent required by law, regulation, rule or order of any court or other governmental authority with jurisdiction over such Party or reasonably required in the ordinary course of conducting a Party's business (such as to a Party's insurers), and (b) such disclosure may be made to those professional advisors, consultants or experts with which each Party may consult concerning any Claim. The Parties agree to continue to be bound by all other provisions of this Agreement notwithstanding any breach of this Section 2.4 by any Party. The remedies for a breach of this Section 2.4 shall be compensation in damages to the extent feasible or equitable relief, including (without limitation) specific performance or other injunctive relief.

3. **GENERAL PROVISIONS.**

3.1 **Undertaking to Repay Advances for Expenses.** Each of the undersigned Individual Defendants affirms his good faith belief that, as a current or former director and/or officer of Services, Insurance and/or CropUSA, he has conducted himself in good faith and that he reasonably believed that his conduct in such official capacities was in the best interests of each of the corporations and/or that the Action alleges liability that has been eliminated under a provision of each corporation's Articles of Incorporation as authorized by Idaho Code § 30-1-202(2)(d). Each of the undersigned Individual Defendants hereby undertakes to repay to the corporation any funds advanced in defense of the Action if such Party is not entitled to mandatory indemnification under Idaho Code § 30-1-852 and it is ultimately determined under Idaho Code § 30-1-854 or 30-1-855 that such Party has not met the relevant standard of conduct described in Idaho Code § 30-1-851.

3.2 **Amendments.** This Agreement may not be amended, modified, altered or changed in any respect whatsoever, except by further agreement in writing duly executed by all of the Parties.

3.3 **Attorney's Fees.** In the event of any controversy, claim, or action being made, filed, or instituted between or among the Parties with respect to this Agreement, or arising from the breach of any provision hereof, the prevailing Party will be entitled to receive all costs, damages, and expenses (including reasonable attorney's and paralegal's fees) incurred by the prevailing Party, whether or not such controversy or claim is litigated or prosecuted to judgment. Court costs and attorney and paralegal fees include those incurred on appeal.

3.4 **Binding Effect.** This Agreement shall be binding upon the respective heirs, estates, personal representatives, successors and assigns of the Parties.

AMENDED STANDSTILL AND TOLLING AGREEMENT - 4

40005 0006 1183157 2

HTEH000101

**Exhibit - 12, p. 4**
**19-ER-4857**

3.5    Choice of Law. This Agreement will be interpreted in accordance with the substantive law of the state of Idaho.

3.6    Counterparts. This Agreement may be executed in counterparts, all of which shall constitute one and the same instrument. In addition, this Agreement may contain more than one counterpart signature page and may be executed by affixing each Party's signature to the counterpart signature page. All counterpart signature pages shall have the same force and effect as though both of the Parties had signed a single signature page. Further, a facsimile signature shall have the full force and effect of an original signature

3.7    Entire Agreement   This Agreement contains the entire agreement by and between the Parties. No representations or promises with respect to the subject matter hereof have been made by any Party to any other Party, except as set forth in the supplemented agreements described in Section 1.8 of this Agreement.

3.8    Notice. All notices required or permitted under this Agreement shall be in writing, containing the information required by this Agreement to be communicated to any Party, personally delivered to such person or sent by certified mail, postage prepaid, or by reputable overnight air courier service (e.g., Federal Express or United Parcel Service) to such person at the last known address of such person. The earlier of the date of personal delivery or the two business days following the date of mailing or the date of delivery to the air courier thereof, as the case may be, shall be deemed the date of receipt of notice.

3.9    Section Headings. The section headings of this Agreement are for clarity in reading and not intended to limit or expand the contents of the respective provisions of this Agreement.

3.10    Partial Invalidity. In the event any part of this Agreement shall be determined invalid, void or otherwise unenforceable, the remaining provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated, it being understood that such remaining provisions shall be construed in any manner most closely approximating the intention of the Parties.

3.11    Time. Time is declared to be of the essence to this Agreement.

3.12    Waiver. Failure of any Party to exercise his rights upon any default of the other shall not be construed as a waiver of the right to insist upon full performance of all the terms and conditions of this Agreement.

3.13    Advice of Counsel. Each Party acknowledges and agrees that no promise, inducement or agreement not set forth in this Agreement has been made to such Party and further acknowledges and agrees that such Party:

(a)    in executing this Agreement, is not relying and has not relied upon any representation or statement by any other Party not set forth herein.

AMENDED STANDSTILL AND TOLLING AGREEMENT - 5

40005 0008 1183157 2

HTEH000102

(b)     has had an opportunity to consult with legal counsel to the extent desired prior to executing this Agreement and has read completely and, either alone or with the advice of legal counsel, fully understands and accepts the terms of this Agreement.

(c)     has relied on such Party's own knowledge of the facts and the advice of such party's own lawyers concerning the consequences of this Agreement.

4.      SIGNATURES

_____
Bryan Freeman

_____
JoLee Duclos

_____
James Beck

_____
Corrine Beck

_____
John Taylor

_____
Connie Taylor

AIA Services Corporation

AIA Insurance, Inc.

By: _____

By: _____

CropUSA Insurance Agency, Inc.

By: _____

AMENDED STANDSTILL AND TOLLING AGREEMENT - 6

40005.0006.1183157.2

HTEH000103

(b)     has had an opportunity to consult with legal counsel to the extent desired prior to executing this Agreement and has read completely and, either alone or with the advice of legal counsel, fully understands and accepts the terms of this Agreement.

(c)     has relied on such Party's own knowledge of the facts and the advice of such party's own lawyers concerning the consequences of this Agreement.

4.     SIGNATURES.


_____          _____
Bryan Freeman                            JoLee Duclos


_____          _____
James Beck                               Corrine Beck


_____          _____
John Taylor                              Connie Taylor

AIA Services Corporation                 AIA Insurance, Inc.

By: _____          By: _____


CropUSA Insurance Agency, Inc.

By: _____


AMENDED STANDSTILL AND TOLLING AGREEMENT - 6

40005.0006.11831572

HTEH000104

(b)     has had an opportunity to consult with legal counsel to the extent desired prior to executing this Agreement and has read completely and, either alone or with the advice of legal counsel, fully understands and accepts the terms of this Agreement.

(c)     has relied on such Party's own knowledge of the facts and the advice of such party's own lawyers concerning the consequences of this Agreement.

4.      SIGNATURES.

_____
Bryan Freeman

_____
JoLee Duclos

_____
James Beck

_____
Corrine Beck

_____
John Taylor

_____
Connie Taylor

AIA Services Corporation

AIA Insurance, Inc.

By: _____

By: _____

CropUSA Insurance Agency, Inc.

By: _____

AMENDED STANDSTILL AND TOLLING AGREEMENT - 6

40005.0006.1183157.2

HTEH000105

07/22/2008  13:13   3686994989          HUKENSTEIN LAW              PAGE  02/02
07/22/08  10:03   ☎208 799 9172      A I A LEGAL                 ☑002/002

(b)     has had an opportunity to consult with legal counsel to the extent desired prior to executing this Agreement and has read completely and, either alone or with the advice of legal counsel, fully understands and accepts the terms of this Agreement.

(c)     has relied on such Party's own knowledge of the facts and the advice of such party's own lawyers concerning the consequences of this Agreement.

4.      SIGNATURES.

_____          _____
Bryan Freeman                             JoLee Duclos


_____          _____
James Beck                                Corrine Beck


_____          _____
John Taylor                               Connie Taylor

AIA Services Corporation                  AIA Insurance, Inc.

By: _____              By: _____


CropUSA Insurance Agency, Inc.

By: _____


AMENDED STANDSTILL AND TOLLING AGREEMENT - 6

40005.0008.11831572

HTEH000106

(b)      has had an opportunity to consult with legal counsel to the extent desired prior to executing this Agreement and has read completely and, either alone or with the advice of legal counsel, fully understands and accepts the terms of this Agreement.

(c)      has relied on such Party's own knowledge of the facts and the advice of such party's own lawyers concerning the consequences of this Agreement.

4.      SIGNATURES.

| | |
|---|---|
| _____ | _____ |
| Bryan Freeman | JoLee Duclos |
| _____ | _____ |
| James Beck | Corrine Beck |
| _____ | _____ |
| John Taylor | Connie Taylor |
| AIA Services Corporation | AIA Insurance, Inc. |
| By: _____ | By: _____ |

CropUSA Insurance Agency, Inc.

By: _____

AMENDED STANDSTILL AND TOLLING AGREEMENT - 6

40005.0006 11881572

HTEH000107

Filed:  09/17/2021 12:27:08 MT
Second Judicial District, Nez Perce County
Patty O. Weeks, Clerk of the Court
By: Deputy Clerk -   Davenport, Brittany

**IN THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF NEZ PERCE**

| | |
|---|---|
| DONNA J. TAYLOR, | ) |
| | ) CASE NO. CV08-1150 and |
| Plaintiff, | ) CV13-1075 (Consolidated cases) |
| | ) |
| v. | ) |
| | ) |
| R. JOHN TAYLOR and CONNIE TAYLOR, | ) |
| | ) |
| Defendants. | ) OPINION AND ORDER ON |
| | ) MOTION TO LIFT STAY, MOTION |
| and | ) FOR SUMMARY JUDGMENT, |
| | ) AND MOTION FOR ENTRY OF |
| DONNA J. TAYLOR, | ) RULE 54(b) JUDGMENT |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AIA SERVICES CORPORATION, an Idaho | ) |
| corporation; R. JOHN TAYLOR; CONNIE | ) |
| TAYLOR HENDERSON; JAMES BECK; | ) |
| and MICHAEL CASHMAN, SR., | ) |
| | ) |
| Defendants. | ) |
| | ) |

This matter is before the Court on motions filed by the Plaintiff. A hearing was held on the motions on July 29, 2021.  The Plaintiff Donna Taylor was represented by Roderick Bond. The Defendants were represented by Daniel Glynn. The Court, having read the motion, briefs

1

*Taylor v.  John Taylor, AIA, et al*
Opinion and Order on Motion to Lift Stay,
Motion for Summary Judgment, and Motion
For Entry of Rule 54(b) Judgment

and affidavits submitted by the parties, and having heard oral argument of counsel, and being fully advised in the matter, hereby renders its decision.

## PROCEDURAL HISTORY

This Court has previously set forth the material facts of this case in its *Opinion and Order on Pretrial Motions to Amend and Supplement Complaint and to Order Separate Trials*.[1]  For efficiency, the Court will only state the facts pertinent to the motion now before this Court:

On July 27, 2018, the Supreme Court of Idaho entered an order reversing this Court's previous orders dismissing Donna Taylor's fraud claims and determining that the 1995 letter agreement was not enforceable.[2] In June 2019, the parties agreed between themselves to stay proceedings in this matter pending the outcome of a derivative suit. On July 1, 2021, Donna Taylor filed a motion to lift stay, motion for summary judgment, and motion for entry of rule 54 (b) judgment.

## ANALYSIS

### 1.  Motion to lift stay

In June of 2019, the parties agreed to stay further proceedings in this case for the duration of a derivative shareholder suit. The agreement was never memorialized on the record nor was a stay ever ordered by this Court. Neither party provides any case law in support of the proposition that this off the record agreement is either binding on this Court or enforceable against either party. As there is no formal stay placed in the record for this Court to remove, the Plaintiff's motion to lift stay is denied. As no enforceable stay exists, the Court will proceed with ruling on the motions currently before it.

---

[1] Filed on June 12, 2015.
[2] *Taylor v. Taylor* 163 Idaho 910, 422 P.3d 1116  (2018).

2

*Taylor v.  John Taylor, AIA, et al*
Opinion and Order on Motion to Lift Stay,
Motion for Summary Judgment, and Motion
For Entry of Rule 54(b) Judgment

**Exhibit - 13, p. 2**
**19-ER-4865**

### 2.  Motion for summary judgment

The Plaintiff asserts there are no material issues of fact concerning the validity and enforceability of the 1995 letter agreement, AIA's breach of that agreement, and the total amount AIA owes the Plaintiff.[3]

> Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party. The moving party has the burden of establishing there is no genuine issue of material fact.
>
> If the moving party has demonstrated the absence of a question of material fact, the burden shifts to the nonmoving party to demonstrate an issue of material fact that will preclude summary judgment. The nonmoving party must present evidence contradicting that submitted by the movant, and which demonstrates a question of material fact. However, a mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment.

*Johnson v. Wal-mart Stores, Inc.*, 164 Idaho 53, 56, 423 P.3d 1005, 1008 (2018) (internal citations omitted).

### A.  Breach of 1995 letter agreement

In its 2018 decision, the Supreme Court of Idaho concluded that the 1995 letter agreement was valid and enforceable against AIA.[4]  Additionally, the Plaintiff asserts no material issue of fact exists as to whether AIA breached the agreement, as AIA defaulted on payments to the Plaintiff in 2008. However, the Defendants assert that at no point after the signing of that agreement did AIA have "legally available funds," as required by its articles of incorporation, that it could have used to continue payments to the Plaintiff. Whether AIA had

---

[3] *Memorandum in Support of Motion for Summary Judgment,* at 10.
[4] *Taylor*, 163 Idaho at 919, 422 P.3d at 1125

3

*Taylor v. John Taylor, AIA, et al*
Opinion and Order on Motion to Lift Stay,
Motion for Summary Judgment, and Motion
For Entry of Rule 54(b) Judgment

such funds presents an issue of material fact and therefore summary judgment is not appropriate on the Plaintiff's breach of contract claim.

### B.  Amount of AIA shares still in Donna's possession

The Plaintiff seeks a declaratory judgment holding that she is in possession of 41,651 shares of AIA stock, ordering that AIA commence redeeming those shares with all available funds, and that the Plaintiff's rights under AIA's articles of incorporation and the law be preserved until her last series A share has been redeemed by AIA.[5] The Defendants do not dispute that the Plaintiff is still in possession of 41,651 shares.[6] Therefore the Court finds there is no material issue of fact regarding the number of shares the Plaintiff possesses. However, as mentioned previously, a material issue of fact exists as to whether AIA possesses funds which it can legally use to redeem the Plaintiff's shares. Therefore an order requiring AIA to immediately begin redeeming the Plaintiff's shares would be inappropriate.

The Plaintiff additionally seeks a declaratory judgment that her rights as a shareholder of AIA shall be preserved until she has been paid in full.[7] These rights have been expressly agreed upon by the parties in the 1995 letter agreement.[8] Therefore the Court finds there is no dispute that the Plaintiff's rights as a shareholder shall be preserved until she has been paid in full.

As there are no issues of material fact regarding the Plaintiff's requested declaratory relief the Court shall grant her motion as to those issues. However, due to the existence of issues material fact concerning AIA's legally available funds, the Court declines to grant the Plaintiff's motion as to her request for specific performance.

---

[5] *Memorandum in Support*, at 13.
[6] *Defendants' Memorandum in Opposition to Plaintiff's Misc. Motions*, at 15.
[7] *Memorandum in* Support, at 14.
[8] July *1, 2021 Declaration of Donna Taylor*, Exhibit A. at 2,7.

4

*Taylor v.  John Taylor, AIA, et al*
Opinion and Order on Motion to Lift Stay,
Motion for Summary Judgment, and Motion
For Entry of Rule 54(b) Judgment

**Exhibit - 13, p. 4**
**19-ER-4867**

### C. Interest rate

The Plaintiff asserts that the statutory prejudgment interest rate of 12 % should be applied to her outstanding shares. The Defendants assert that AIA's obligation cannot be said to have sufficiently matured to render any interest calculations applicable, except the interest set forth in the letter agreement. I.C. §28-22-104 provides in pertinent part:

> When there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of twelve cents (12¢) on the hundred by the year on:

> 1. Money due by express contract.

"Prejudgment interest awards are appropriate where the amount of liability is liquidated or capable of ascertainment by a mere mathematical calculation in order to fully compensate the injured party." *Kidd Island Bay Water Users Co-op. Ass'n, Inc. v. Miller*, 136 Idaho 571, 575, 38 P.3d 609, 613 (2001).

Here the Plaintiff's damages are capable of ascertainment by a mere mathematical calculation. Neither party disputes that the Plaintiff is in possession of 41,651 shares of AIA stock. Per the agreement entered into between the parties, AIA was to repurchase these shares at a par value of $10 a share. Therefore, if AIA is found to have breached this agreement, the Plaintiff's principle damages would be $410,651. Accordingly, the application of the statutory prejudgment interest rate would be appropriate in this matter. The Plaintiff's motion is granted on this claim.

### 3. Rule 54(b) Judgment

The Plaintiff moves for this Court to certify a judgment pursuant to I.R.C.P. Rule 54(b).

> An order granting partial summary judgment may be certified as a final order pursuant to Rule 54(b), if the order resolves one or more of the claims between some or all of the parties.  It is error for a trial court to certify any interlocutory

5

*Taylor v.  John Taylor, AIA, et al*
Opinion and Order on Motion to Lift Stay,
Motion for Summary Judgment, and Motion
For Entry of Rule 54(b) Judgment

order as final under Rule 54(b) if it does not resolve one or more of the claims.

*Am. Foreign Ins. Co. v. Reichert*, 140 Idaho 394, 398–99, 94 P.3d 699, 703–04 (2004)(internal

citations omitted). "The decision to grant or deny a 54(b) certificate rests in the sound discretion

of the trial judge who is best able to evaluate the situation." *Id.*

> In order for a partial judgment to be certified as final and appealable under Rule
> 54(b), the order granting partial judgment must finally resolve one or more of the
> claims between the parties.... This rule may not be invoked to permit the appeal of
> a partial adjudication of the rights of one of the parties; it is only applicable in a
> multiple party situation if there is a complete disposition of a claim relating to the
> party seeking to invoke the rule.

*Idaho Dep't of Lab. v. Sunset Marts, Inc.*, 140 Idaho 207, 210, 91 P.3d 1111, 1114 (2004).

Here the Court has not resolved any claims between the parties. While the Court has

granted some of the declaratory relief sought by the Plaintiff, it has denied summary judgment on

her breach of contract claims. Accordingly, a certification of judgment pursuant to I.R.C.P. 54(b)

is inappropriate at this time. The Plaintiffs motion is denied.

### ORDER

IT IS HEREBY ORDERED the Plaintiff's motion for summary judgment is GRANTED

in part and DENIED in part, consistent with the preceding opinion. IT IS FURTHER ORDERED

The Plaintiff's motion for entry of Rule 54(b) judgment is DENIED.

Dated this __17__ day of September 2021.

9/17/2021 12:21:25 PM

_____
JEFF M. BRUDIE, District Judge

6

*Taylor v. John Taylor, AIA, et al*
Opinion and Order on Motion to Lift Stay,
Motion for Summary Judgment, and Motion
For Entry of Rule 54(b) Judgment

CERTIFICATE OF MAILING

I hereby certify that a true copy of the foregoing OPINION AND ORDER ON MOTION TO LIFT STAY, MOTION FOR SUMMARY JUDGMENT, AND MOTION FOR ENTRY OF RULE 54(b) JUDGMENT was

E-Mailed by the undersigned at Lewiston, Idaho, this __9/17/2021 11:34:16 AM__ , to:

Roderick Bond
rod@roderickbond.com

Daniel Glynn
dglynn@idalaw.com

PATTY O. WEEKS, Clerk

By  _____
          Deputy

7

*Taylor v.  John Taylor, AIA, et al*
Opinion and Order on Motion to Lift Stay,
Motion for Summary Judgment, and Motion
For Entry of Rule 54(b) Judgment

**Exhibit - 13, p. 7**
**19-ER-4870**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>**v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>DECLARATION OF DALE L. MIESEN |

DECLARATION OF DALE L. MIESEN - 1

**19-ER-4871**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

     Defendants/Third-Party Plaintiffs,

  **v.**

REED TAYLOR, an individual,

     Third-Party Defendant.

REED TAYLOR, an individual,

     Third-Party Defendant/ Counterclaimant,

  **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

     Counterdefendants.

DECLARATION OF DALE L. MIESEN - 2

**19-ER-4872**

I, Dale L. Miesen, declare:

1.      I am the plaintiff in this lawsuit. I am a citizen of the United States, over the age of eighteen, and competent to testify in court, including as to matters in this Declaration. This Declaration is based upon my personal knowledge.

2.      As I have previously testified, I am the second largest minority common shareholder of AIA Services. I traded an insurance book of business worth in excess of $500,000 in the early 1990s for the 58,656 common shares in AIA Services presently held in my name, including as trustee for my children. Despite AIA Services and its subsidiaries having generated over $65 million in revenues since 1995, I have never received a dividend for those shares or any other compensation for those shares. Those common shares are my only retirement other than my social security benefits. John Taylor and the other Individual Defendants have used some of those millions of dollars in revenues to fund competing businesses (including CropUSA Insurance Agency), fund their litigation expenses and pay themselves significant compensation—all without disclosure and proper approval from the shareholders or a properly seated and functioning board of directors. As the Court can imagine, this explains my involvement as a plaintiff in this lawsuit and the importance of obtaining a recovery for me and the other innocent minority shareholders.

3.      Despite demands made by me and other shareholders, AIA Services has not held an annual or special shareholder meeting since the annual shareholder meeting held in 2012, which was conducted for the purpose of attempting to carry out the reverse stock split to pay me approximately $5,800 for the common shares that I traded two books of insurance business worth $500,000* to AIA Services to have those shares issued to me. (* Based on commission statements I was sent in June 1991, showing the cumulated amounts to date, on the books paid to AIA from apx. 1988 to June 1991, and more thereafter.) I traveled to Lewiston from Texas to attend that

DECLARATION OF DALE L. MIESEN - 3

shareholder meeting in 2012 and I presented written and oral objections. I asked John Taylor numerous questions about what has transpired at the AIA Entities, including as to CropUSA Insurance Agency. John Taylor replied "no comment" to virtually every question and he refused to provide any information to me or other shareholders

4.     I, along with other shareholders, objected to the reverse stock split. As a result, John Taylor, James Beck and Connie Henderson (the three persons claiming to be acting as directors for AIA Services at the time) had AIA Services file suit against us in order to try to force the reverse stock split. I didn't file that lawsuit and I didn't ask to be named as a defendant in that lawsuit. Later, John Taylor claimed that he was trying to create a mechanism to value our shares through the court-ordered appraisal process, but he had AIA Services assert that we had not timely and properly objected in writing in an effort to eliminate us for ten cents per share without an appraisal. As I have previously testified, we prevailed in that lawsuit and the court awarded fees and costs to us, which AIA Services has never paid. I am not sure how John Taylor tries to blame me or Mr. Bond for the $70,528.35 in wasted and unauthorized attorneys' fees and costs that John Taylor claims AIA Services incurred filing and litigating that lawsuit against us. That is just another example of John Taylor's vindictive behavior and the failure to proceed in the best interests of AIA Services and its shareholders. Those $70,528.35 in funds should be in the bank right now. I discovered in the past couple of years that John Taylor also continued to pay himself approximately $250,000 a year, plus a car and expenses, and other compensation for several more years without proper approval from the board or shareholders.

5.     True and correct copies of the notice to shareholders and proxy statement sent to me for that 2012 shareholder meeting are attached as Exhibit A.  In those documents and at that 2012 shareholder meeting there was no report provided to shareholders that the AIA Entities were

DECLARATION OF DALE L. MIESEN - 4

advancing fees and costs to pay the Individual Defendants' fees and costs in this lawsuit. When I attended the shareholder meeting there was also no report provided that AIA Services would be advancing fees and costs for the Individual Defendants in this lawsuit. AIA Services' shareholders have never voted on or approved the advancement or payment of any attorneys' fees and costs for any party to this lawsuit as required.

6.      There was only one other shareholder meeting where the issue of advancing fees and costs arose in 2007 in the Reed Taylor lawsuit filed in 2007 (known as *Reed Taylor v. AIA Services, et al.*), which was the last shareholder meeting held before the one in 2012. The letter that John Taylor sent to shareholders to ask the shareholders to approve the advancement of fees and costs for him, Jo Lee Duclos and Bryan Freeman (the latter to persons were former alleged directors) did not mention anything about the malfeasance and misconduct that Reed Taylor had alleged. I called and asked for more information and no further information was provided so I did not vote my shares because I did not have enough information.

7.      As one example of the games played by the defendants centered on the efforts that we undertook to understand what decisions were allegedly made by the AIA Entities' alleged boards of directors. After John Taylor was ordered to be deposed again in 2020, we ascertained that the only alleged board decisions were those represented through written board resolutions or meeting minutes. Despite requesting to inspect corporate records (which was illegally denied), it took me approximately ten years to ascertain these facts. We have segregated the limited written board decisions. There is not a single board resolution or meeting minutes that purports to authorize the payment of any fees and costs in this lawsuit to any party, or any debts, including debts allegedly owed to John Taylor. I do not understand how John Taylor submits his declaration and claims to be owed money for alleged advancements of fees and costs that were never properly

DECLARATION OF DALE L. MIESEN - 5

19-ER-4876

authorized by AIA Services' shareholders or board of directors. Despite Mr. Bond's requests that board resolutions and meeting minutes be provided since John Taylor's last deposition in July 2020, no additional minutes or resolutions have been produced. While I am asserting that no board action is authorized because Donna Taylor's designated board member, Paul Durant, has not been allowed to participate in any board decisions, the failure to produce any further resolutions or minutes shows that there was no board authorization to even retain Mr. Trout or to pay him. AIA Services' shareholders have not been asked to approve any debts or to consent to any conflicts of interest transactions for any person or entity for over twenty years, except for possibly the vote discussed in paragraph 6 above that did not occur after full disclosure. AIA Services' shareholders have also not been asked to approve any compensation paid to any officer or director for over twenty years. From my knowledge of John Taylor as a competent professional during the fifteen years I worked for AIA, I would have never imagined that John Taylor was capable of doing what he has done, particularly when he is an accountant and a lawyer, and certainly knows what is legal and proper let alone fair and honest.

8.      John Taylor and the other Individual Defendants also owned CropUSA Insurance Agency, which was a business that was formed using the funds and assets of the AIA Entities. John Taylor later claimed to be the sole initial shareholder and then later Beck and Cashman also were issued shares in CropUSA Insurance Agency (they were former shareholders of AIA Services and given preferential treatment to have shares issued to them in CropUSA Insurance Agency). The Individual Defendants permitted the AIA Entities to guarantee loans for CropUSA Insurance Agency and provide other funding and assistance (including from the AIA Entities' employees). John Taylor obtained millions of dollars in compensation from the AIA Entities and CropUSA Insurance Agency when he was obligated not to compete against the AIA Entities under his

DECLARATION OF DALE L. MIESEN - 6

19-ER-4877

contract. From my review of John Taylor's spreadsheet as to the amount of fees and costs that he claims was incurred by AIA Services and copies of checks that we received in discovery, the amounts of fees and costs do not add up and they are inconsistent with spreadsheets produced in discovery. John Taylor appears to be shifting fees and costs incurred in Reed Taylor's lawsuit to represent that they were incurred litigating against me. This amount alone is close to $200,000. John Taylor is shifting funds to misrepresent the amount of fees and costs that AIA Services has allegedly paid for this lawsuit.

9.     I would note that Mr. Trout previously represented John Taylor and CropUSA Insurance Agency in a lawsuit before this Court to enforce certain terms of the same settlement agreement that I have been trying to get the AIA Entities out of for years because that agreement was not permitted under AIA Services' amended articles of incorporation, the AIA Entities' bylaws and it was not in their best interests to become liable for an over $12 million debt incurred by the CropUSA Entities, which are not subsidiaries of the AIA Entities. Despite my prior complaints, Mr. Trout continues to assist John Taylor and the other Individual Defendants rather than independently represent the interests of the AIA Entities. It is impossible for me to imagine how Mr. Trout would purport to act as an attorney for the AIA Entities when they are not even holding shareholder meetings and following basis corporate governance procedures under AIA Services' amended articles of incorporation and the AIA Entities' bylaws. The AIA Entities have never had independent counsel in this lawsuit or Donna Taylor's lawsuits. They have always sided with John Taylor, the other Individual Defendants and the CropUSA Entities in this litigation and the reverse stock split lawsuit that I was named as a defendant in.

10.     The defendants attack me for the spreadsheet prepared to show the shareholders who I viewed as "guilty" or "acquiescing" shareholders by attaching that spreadsheet to Mr.

DECLARATION OF DALE L. MIESEN - 7

Glynn's declaration filed under Docket Number 1253 and using it to argue that I have not created a common fund on pages 19-20 of Docket Number 1252. I was merely pointing out in that spreadsheet certain shareholders that I did not view as innocent shareholders. For example, I am pursing claims against John Taylor for over a decade of fiduciary misconduct and unlawful activities. I am not suing to help him. Kent Gray and Ray Heilman filed declarations seeking to disqualify Mr. Bond many years ago. I can only presume that John Taylor paid them something or persuaded them to file those declarations for some other reason. Therefore, Mr. Gray and Mr. Heilman were certainly not assisting me in any way, and are now both deceased. Cori Cleveland, JoLee Duclos, Bryman Freeman, Distribution Services, Inc., and Charles Rapp were all involved with CropUSA Insurance Agency, Inc., which was improperly funded by the AIA Entities and competed against the AIA Entities. I also discovered in this lawsuit that Distribution Services, Inc. and Charles Rapp never paid for their common shares in AIA Services. Again, I am merely pointing out the people involved or supporting the improper conduct. Mr. Glynn also fails to mention the two pages of shareholders and stakeholders who I had labeled as "innocent." Many shareholders and stakeholders have supported my efforts (although not financially). As to Donna Taylor, she has priority payment over all other shareholders under AIA Services' amended articles of incorporation, holding Preferred shares that bear interest. I have never advocated that she receives preferential treatment. Rather, I have merely recognized that she has payment priority over other shareholders. In the end, it is the Court's decision, not my decision, where any final recoveries are distributed, and I would make sure that notice is provided to try to ensure that every shareholder and stakeholder can be heard to the extent that they desire.

11.    It is very disturbing to me that Mr. Glynn even attempts the argument that I have not created a common fund through my settlement with the Hawley Troxell Defendants when he

DECLARATION OF DALE L. MIESEN - 8

knows that I am proceeding "by the book" in this lawsuit. I have always taken the position that all funds recovered can only be paid out with the Court's approval. As I have pointed out in the past, it is also disturbing to me because Mr. Glynn claims to represent AIA Services and the Individual Defendants in Donna Taylor's lawsuits. More recently, Donna Taylor offered to stipulate to the payment of a lower interest rate if the defendants agreed to stipulate to the number of shares she held. This would have been in AIA Services' best interests. Instead, Mr. Glynn, as attorney for AIA Services, refused. Judge Brudie subsequently ruled in Donna Taylor's favor and stated she was entitled to a higher interest rate. This resulted in AIA Services being obligation to pay over $450,000 in interest to Donna Taylor. Judge Brudie's decision also stated that Donna Taylor's rights as a shareholder were preserved until she was paid in full. Yet the defendants here do not honor her appointment of Paul Durant to the board. Mr. Durant is honest and ethical, and a prior long-term executive of AIA Services. This conduct is similar to John Taylor's recent declaration filed under Docket Number 1223 where he claims that AIA Services has paid over $595,000 litigating against Donna Taylor over the years when AIA Services could have paid her in full in 2008 for less than $450,000. The bottom line is that John Taylor is vindictive and refuses to proceed in the best interests of AIA Services, which has caused the AIA Entities to needlessly pay substantial attorneys' fees and costs. I find it ironic that John Taylor tries to blame Mr. Bond for the attorneys' fees and costs that were caused by illegal actions of John Taylor. Mr. Bond has only honestly and ethically represented my interests as my attorney in this lawsuit and two others.

12. In paragraph 8 of John Taylor's declaration, filed under Docket Number 1223, John Taylor complains about being "the last person standing with regard to the affairs of AIA Services" allegedly because of "AIA Services' inability to obtain a policy of insurance which would provide for director and officer coverage." I would gladly serve as a director and officer of the AIA Entities,

DECLARATION OF DALE L. MIESEN - 9

and I would ensure that they were properly and lawfully operated. Of course, John Taylor does not wish to have anyone else involved in the management of the AIA Entities because no reasonable person would do what he has done and continues to do. Also, for over a decade, Donna Taylor has consistently demanded to have the appointment of the director that she is entitled to have seated on the board of AIA Services, but John Taylor and the other Individual Defendants have consistently thwarted Donna Taylor's efforts. This is because Donna Taylor and her board designee, Paul Durant, would properly and lawfully operate the AIA Entities and not stand for the unlawful conduct that John Taylor has consistently engaged in for over a decade. Of course, the reason why no insurance company would want to provide officers and directors E&O insurance is because of the unlawful actions that John Taylor and his board have committed and concealed for years. Mr. Durant and I were both former executives at AIA Services with experience as to the business of the AIA Entities and Universe Life, the underwriter owned and controlled by AIA. Mr. Durant was also an accountant, which I presume is one of the reasons that John Taylor did not want to see Mr. Durant serve on AIA Services' board of directors or in any position to audit the books. (Mr. Durant would not have engaged in the improper and unauthorized transactions that John Taylor has engaged in for over a decade).

13.     In terms of the settlement with the Hawley Troxell Defendants, John Taylor, the other Individual Defendants and the AIA Entities have done nothing to assist me in obtaining that recovery. They have only fought me and opposed me ever learning the truth of what has transpired. I am sure that John Taylor wants to get his hands on the money so he can use it for his own purposes and without any proper authorization from the board of directors or shareholders.

14.     I have never tried to delay this lawsuit. We have fought for years to get information that has been wrongfully withheld for years, and I believe that we still do not have all of the facts

DECLARATION OF DALE L. MIESEN - 10

19-ER-4881

as to what all transpired at the AIA Entities without proper disclosure or consent from AIA Services' shareholders. I have, in fact, wanted this lawsuit to go to trial or be resolved long ago, and we attempted mediation in 2019. We did not withdraw my prior motion for fees and costs for any reason other than to prevent an appeal from the defendants' arguments that my motion was premature, and I was willing to wait until other matters were litigated in an effort to prevent further issues. I did not withdraw the motion because I had seen the defendants' responses and wanted a re-do. However, the defendants then changed positions after I was agreeable to stipulating to resolve the fee and cost issue at the end of the case, and they now have claimed that the motion should be decided. I agree that it should be decided now. There is no dispute now. I am respectfully requesting for my fees and costs to be paid as requested.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

*September 22, 2022, Southlake, Texas*          */s/ Dale L. Miesen*
Date and City and State Signed                     Dale L. Miesen

DECLARATION OF DALE L. MIESEN - 11

**19-ER-4881**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 22nd day of September 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:    jat@elamburke.com
Loren C. Ipsen:    lci@elamburke.com
Joyce A. Hemmer:    jah@elamburke.com
Bradley S. Keller:    bkeller@byrneskeller.com
Alyson A. Foster:    alyson@dempseyfoster.com
Tyler S. Waite:    twaite@campbell-bissell.com
Michael S. Bissell:    mbissell@campbell-bissell.com
Daniel L. Glynn:    dglynn@idalaw.com
Andrew Schwam:    amschwam@turbonet.com
Kim J Trout:    ktrout@trout-law.com

　　　　　　　　　　　　　　　/s/ Roderick C. Bond
　　　　　　　　　　　　　　　Roderick C. Bond

DECLARATION OF DALE L. MIESEN - 12

**19-ER-4882**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>    Plaintiff,<br><br>  **v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>    Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>PLAINTIFF DALE L. MIESEN'S MEMORANDUM OF LAW IN SUPPPORT OF HIS MOTION FOR PERMISSION TO FILE A SUR-REPLY TO THE NEW ARGUMENTS RAISED IN THE JOINT REPLY FILED UNDER DOCKET NUMBER 1254 |

MEMO ISO MOTION TO FILE A SUR-REPLY - i

**19-ER-4883**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

Defendants/Third-Party Plaintiffs,

**v.**

REED TAYLOR, an individual,

Third-Party Defendant.

REED TAYLOR, an individual,

Third-Party Defendant/ Counterclaimant,

**v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

Counterdefendants.

MEMO ISO MOTION TO FILE A SUR-REPLY - ii

**19-ER-4884**

Miesen respectfully moves this Court as follows:

## I.    INTRODUCTION

Before this Court is Miesen's motion for permission to file a sur-reply to address the defendants' arguments that were newly raised for the first time in their reply brief. (*Compare* Dkt. 1239 *with* Dkt. 154 at 2-8.) Because the defendants' new arguments were submitted for the first time in their reply brief and Miesen has not had an opportunity to address the new arguments, this Court should grant Miesen's motion and permit him to file the sur-reply in the form attached as Appendix A.

## II.    FACTS

On August 9, 2022, this Court ordered, *inter alia*:

> Because this is an extension of the underlying motion to dismiss, the moving parties (the Individual Defendants, Crop USA Defendants, and AIA Entities) **must file the opening brief explaining why each of the claims against them in Miesen's Third Amended Complaint should be dismissed**. They may do so jointly or separately **so long as each claim is addressed as it applies to the relevant defendants, including the AIA Entities**.

(Dkt. 1238 at 4 (emphasis added).) On August 11, 2022, despite this Court's order, the Individual Defendants, CropUSA Defendants and the AIA Entities ("defendants") submitted a joint memorandum that did not address "each claim" and without addressing the viability or pleading deficiency of a single cause of action, including without addressing the merits of Miesen's claims brought under I.C. §§ 30-1-304 and 30-29-304. (Dkt. 1239.) More specifically, the defendants did not assert that injunctive relief was not available under I.C. § 30-29-304 for past acts or that certain of the defendants could not be held liable under I.C. § 30-29-304. (*Id*.) On September 1, 2022, Miesen submitted his response, which provide examples of certain of his remaining claims that were direct and/or did not require derivative demand letters, including as to certain aspects of his claims brought under I.C. § 30-29-304. (Dkt.1248.) Miesen also anticipated that the defendants

MEMO ISO MOTION TO FILE A SUR-REPLY - 1

might try to raise new arguments on reply, so he included argument and authority objecting to the defendants raising any new arguments on reply. (Dkt. 1248 at 18-19.) On September 15, 2022, the defendants submitted their joint reply brief and asserted newly raised arguments regarding I.C. § 30-29-304. (Dkt. 1254 at 2-8.)

On September 17, 2022, Miesen's counsel emailed Mr. Glynn and Mr. Trout inquiring whether they would stipulate to allowing Miesen to submit a sur-reply to address their newly raised arguments. (9/26/22 Bond Decl. ¶2.) Mr. Glynn and Mr. Trout did not respond. (*Id*.) This motion followed.

### III.   ARGUMENT

**A. Miesen Respectfully Requests Permission to File a Sur-Reply to Address the New Arguments Raised by the Defendants in Sections A-C of Their Reply.**

This Court should permit Miesen to file a sur-reply to address the new arguments raised by the defendants for the first time in Sections A-C of their joint reply in the form attached to this motion as Appendix A. (Dkt. 1254 at 2-8.)

> "While the Federal Rules of Civil Procedure do not expressly permit the filing of a sur-reply, this Court has recognized that a [party]'s reply brief may justify a sur reply in appropriate circumstances." Leave to file a sur-reply is discretionary but should only be granted "where a valid reason for such additional briefing exists, such as the movant raises new arguments in its reply brief."

*Allen v. Campbell*, __ F. Supp.3d __, No. 1:16-cv-00449-DCN, 2020 WL 6876198, at *7 (D. Idaho Nov. 23, 2020) (citations omitted). Simply put, when a party improperly raises new arguments on reply, "the Court will allow [the other party] to file his proposed sur-reply," even when this Court has scheduled a hearing on the motion.[1] *Id*. This rule also applies to new arguments which "were a legitimate response to…[a] response brief…[because] fairness requires the Court to…allow the

---

[1] This Court has not yet indicated whether it will hold a hearing. Miesen respectfully requests that this Court should hold oral argument, especially based on the new arguments and the defendants' failure to follow this Court's order.

MEMO ISO MOTION TO FILE A SUR-REPLY - 2

**19-ER-4886**

[other party] to file a sur-reply brief." *K.W. by next friend D.W. v. Armstrong*, No. 1:12-cv-00022-BLW, 2020 WL 3023061, at *3 (D. Idaho June 4, 2020) (declining to strike the new arguments but allowing the other party to file a sur-reply brief) (alterations added).

Here, this Court should permit Miesen to file the sur-reply in the form attached as Appendix A to this motion to address the new arguments raised by the defendants pertaining to I.C. § 30-29-304 in Sections A-C of their joint reply brief (Dkt. 1254 at 2-8). The defendants did not raise a single argument regarding I.C. § 30-29-304, including how Miesen allegedly failed to state a claim or could not obtain injunctive relief under that I.C. § 30-29-304 in their opening brief.[2] (Dkt. 1239.) Despite Miesen having raised an objection with authority anticipating that the defendants may try to raise new arguments on reply (Dkt. 1248 at 18-19), the defendants provided no explanation for asserting their newly raised arguments and they did not request leave of this Court to do so, especially after having declined to follow this Court's instructions to address "each claim" in their opening brief. (Dkt. 1238 at 4.) Instead, they addressed one claim—Miesen's claim under I.C. § 30-29-304—for the very first time in their joint reply brief.

In addition, even if the defendants argue that their new arguments regarding I.C. § 30-29-304 were legitimately made in response to Miesen's arguments, defendants' arguments are nevertheless new arguments seeking to dismiss Miesen's claims based on I.C. § 30-29-304 without giving Miesen an opportunity to respond to those new arguments. In other words, this Court need not wait for the defendants to respond to this motion to grant Miesen permission to file his sur-reply, which would keep this case moving. *Armstrong*, 2020 WL 3023061, at *3. There is no reason to delay because Miesen should be permitted to file a sur-reply under either scenario.

---

[2] The defendants quoted portions of Miesen's status report referring to I.C. § 30-29-304 (Dkt. 1239 at 3), but they did not address or discuss I.C. § 30-29-304 anywhere in their moving papers. This demonstrates that they were fully cognizant of Miesen's claims under I.C. § 30-29-304, but they strategically failed to address those claims.

MEMO ISO MOTION TO FILE A SUR-REPLY - 3

19-ER-4888

Accordingly, this Court should grant Miesen permission to file a sur-reply in the form attached as Appendix A.

## IV.    CONCLUSION

For the reasons stated above, Miesen respectfully requests that this Court should grant his motion and enter an order permitting him to file the sur-reply in the exact form as Appendix A.

DATED:  This 26th day of September 2022.

RODERICK BOND LAW OFFICE, PLLC

By:    /s/ Roderick C. Bond
      Roderick C. Bond
      Attorney for the Plaintiff Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:    /s/ Andrew Schwam
      Andrew Schwam
      Attorney for the Plaintiff Dale L. Miesen

MEMO ISO MOTION TO FILE A SUR-REPLY - 4

**19-ER-4888**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 26th day of September 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:    jat@elamburke.com
Loren C. Ipsen:    lci@elamburke.com
Joyce A. Hemmer:    jah@elamburke.com
Bradley S. Keller:    bkeller@byrneskeller.com
Alyson A. Foster:    alyson@dempseyfoster.com
Tyler S. Waite:    twaite@campbell-bissell.com
Michael S. Bissell:    mbissell@campbell-bissell.com
Daniel L. Glynn:    dglynn@idalaw.com
Andrew Schwam:    amschwam@turbonet.com
Kim J Trout:    ktrout@trout-law.com


                                        /s/ Roderick C. Bond
                                        Roderick C. Bond


MEMO ISO MOTION TO FILE A SUR-REPLY - 5

**19-ER-4889**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>        Plaintiff,<br><br>   **v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>           Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>PLAINTIFF DALE L. MIESEN'S SUR-REPLY TO THE JOINT REPLY MEMORANDUM OF INDIVIDUAL DEFENDANTS, CROPUSA ENTITIES AND AIA ENTITIES REGARDING DERIVATIVE VERSUS DIRECT CLAIMS FILED UNDER DOCKET 1254 (**Dkts. 1167, 1238**) |

MIESEN'S SUR-REPLY TO THE DEFENDANTS' JOINT REPLY - i

**Appendix - A**
**19-ER-4890**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

    Defendants/Third-Party Plaintiffs,

  v.

REED TAYLOR, an individual,

    Third-Party Defendant.

REED TAYLOR, an individual,

    Third-Party Defendant/ Counterclaimant,

  v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

    Counterdefendants.

MIESEN'S SUR-REPLY TO THE DEFENDANTS' JOINT REPLY - ii

**Appendix - A**
**19-ER-4891**

**A.** **The Defendants' Newly Raised Arguments Are Contrary to the Plain Reading and Legislative Intent of I.C. § 30-29-304.**

Defendants ask the Court to misread and misapply I.C. § 30-29-304. (Dkt. 1254 at 2-8.)

I.C. § 30-29-304 relevant portions have remained unchanged for decades and read as follows:[1]

(a) Except as provided in subsection (b) of this section, the validity of corporate action may not be challenged on the ground that the corporation **lacks or lacked** power to **act**.

(b) A corporation's power to **act** may be challenged:

(1) In a proceeding by a shareholder against the corporation to enjoin the **act**;

\*         \*         \*

(c) In a shareholder's proceeding under subsection (b)(1) of this section to enjoin an unauthorized corporate **act**, the court may enjoin or **set aside** the **act**, if equitable and if all affected persons are parties to the proceeding, and **may award damages** for loss, other than anticipated profits, **suffered** by the corporation or another party because of enjoining the unauthorized **act**.  (emphasis added).

Subsection (a) makes clear that an individual shareholder is one of the categories of plaintiffs who may assert claims when a corporation "lacks or lacked power to act." Because the Legislature used both "lacks" and "lacked," which is past tense, in subsection (a) and broadly stated "the act" in subsection (b)(1). The Legislature did not limit the kinds of "acts" that may be enjoined to "threatened" or "uncompleted" acts; instead, it clearly intended that a corporation may be enjoined for past and future acts by broadly stating an "act" may be enjoined in subsection (b)(1). Consistent with the Legislature's intent, an "act" is defined as: "**Something done or performed**, esp. voluntarily; a deed. — Also termed action."[2] Black's Law Dictionary (11th ed. 2019) (emphasis added). The broad meaning of "act" is fatal to the defendants' interpretation.

Subsection (c) makes clear that the right granted to an individual shareholder in (b)(1)

---

[1] All three versions of the statute applicable here (Dkt. 211) contain the same substantive provisions. *See* I.C. §§ 30-1-304 (1997); 30-29-304 (2015); 30-29-304 (2019). Although the defendants do not address I.C. § 30-1-304, Plaintiff will collectively refer to all three versions of that statute in this sur-reply as I.C. § 30-29-304.

[2] The Idaho Supreme Court relies on Black's when interpreting terms. *Taylor v. Taylor*, 163 Idaho 910, 918, 422 P.3d 1116, 1224 (2018).

MIESEN'S SUR-REPLY TO THE DEFENDANTS' JOINT REPLY - 1

includes the right to address past acts. Only a past act can be "set aside." The intent of enjoining an "act" includes ensuring that a shareholder may "set aside" the "act" in instances such as present here, when management completes certain ultra vires acts while a lawsuit challenging them is pending. In addition, subsection (c) states that a "the court may enjoin **or** set aside the act." Because "or" is a conjunction, Plaintiff can separately have an act "set aside" even if the act is not enjoined.

The intention of I.C. § 30-29-304 to permit an individual shareholder to address ultra vires past acts is made clear in subsection (c) when it allows the court to award damages "suffered" by the corporation. "Suffered" is past tense and has to include damages occurring in the past. It would be highly unusual or impossible for a future act (an act which has never happened) prevented by an injunction to cause damages. What has never happened cannot cause damages.

Defendants also disregard the plain meaning of "affected persons" to include the parties liable for the damages awarded to the corporation. Damages could not be awarded to the corporation against a party who was not a defendant in the action. The Individual Defendants and CropUSA Defendants are named defendants because they are the parties who will have to pay the damages to the AIA Entities.

Contrary to the defendants' arguments (Dkt. 1254 at 4-5), there is no demand requirement for asserting derivative claims against officers and directors under I.C. § 30-29-304(b)(2). If the Legislature wanted to require a demand for those claims, it would have included the demand requirement for subsection (b)(2), just as it did in I.C. § 30-29-809(b). This is consistent with other courts' finding that demands may be excused for ultra vires acts because ultra vires acts can never be ratified. *Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1186 (Nev. 2006); *Wolgin v. Simon*, 722 F.2d 389, 392 (8th Cir. 1983). Subsection (b)(2) merely confirms that any recovery against officers and director must necessarily be derivative, i.e., consistent with subsection (c) that the corporation

MIESEN'S SUR-REPLY TO THE DEFENDANTS' JOINT REPLY - 2

is awarded damages. In any event, subjection (b)(2) does not limit the liability of an "affected person" to pay damages to the corporation as provided in subjection (c).

Read as a whole and under its plain meaning, as it should be,[3] I.C. § 30-29-304 envisions addressing past acts and Count VIII's reliance on it for past and future acts is well placed.[4] Count VIII falls squarely within I.C. § 30-29-304 when it states, *inter alia*, that "Plaintiff requests a judgment that the Guarantees and/or Settlement Agreements are ultra vires and this court should **set aside** the Guarantees, Settlement agreements..." (Dkt. 211 at 75 (emphasis added).) The Third Amended Complaint ("<u>TAC</u>") contains numerous allegations that trigger liability under I.C. § 30-29-304 against the Individual Defendants, both as third parties contracting with the AIA Entities and as the purported management of the AIA Entities who engaged in the ultra vires acts. (Dkt. 211.) Any other interpretation of I.C. § 30-29-304 would render it meaningless because corporate insiders could conceal completed transactions siphoning off millions of dollars to themselves and then, after a shareholder discovers the ultra vires acts, assert that the shareholder has no claim and may not recover damages for the corporation because the acts have been completed.

The ABA Comments to section 304, which the Idaho Supreme Court relies upon for interpreting the Idaho Business Corporation Act, confirms Miesen's interpretation:

> Corporate action also includes inaction or refusal to act. **The common law of ultra vires distinguished between executory contracts, partially executed contracts, and fully executed ones; section 304 treats all corporate action the same**…**and the same rules apply to all contracts no matter what stage of performance**."
>
> \*          \*          \*
>
> …**Under this subsection an ultra vires act may be enjoined only if all "affected parties" are parties to the suit**. The requirement that the action be "equitable" generally means that only third persons dealing with a corporation while specifically aware that the corporation's action was ultra vires will be enjoined. The general phrase "if equitable" was retained because of the possibility that other circumstances may exist in which it may be equitable to refuse to enforce an ultra vires contract. Further, **if enforcement of the**

---

[3] *State v. Huckabay*, 168 Idaho 117, 119-20, 480 P.3d 771, 773-74 (2021).

[4] *See* Dkt. 211 at 72-75 ¶¶225-230, 81-82 ¶¶8, 15). Count VII is incorporated by reference into Count VIII as are other applicable paragraphs in the TAC. (*E.g.*, Dkt. 211 at 49-XX ¶¶164(a)-(qq).)

MIESEN'S SUR-REPLY TO THE DEFENDANTS' JOINT REPLY - 3

**contract is enjoined, either the third person or the corporation may in the discretion of the court be awarded damages from the other for loss** (excluding anticipated profits). Section 304(3) thus authorizes a court to enjoin **or set aside** an ultra vires act grant or other relief that may be necessary to protect the interests of all affected persons, including the interests of third persons who deal with the corporation.

Mod. Bus. Corp. Act § 304 cmt. (2002) (emphasis added).

Defendants cite to four distinguishable Idaho cases—none of which involve the request to enjoin, set aside and award damages under a statute authorizing such relief—for the argument that a past act cannot be enjoined. (Dkt. 1254 at 3.) *See Wilson v. City of Boise City*, 7 Idaho 69 (1900) (recognizing that the complaint could have sought additional relief such as to "set aside said sale" and granting a motion to dismiss the appeal because the sole relief sought in the complaint was to enjoin the sale of property that had already been sold); *Roberts v. Kartzke*, 18 Idaho 552, 111 P. 1 (1910) (dismissing an appeal because a county vote had already been completed and certified to the state); *Abels v. Turner Trust Co.*, 31 Idaho 777, 176 P. 884 (1918) (affirming an order dissolving a preliminary injunction because the property sought to be enjoined had been sold, which was the sole issue on appeal); *Brady v. City of Homedale*, 130 Idaho 569, 944 P.2d 704 (1997) (denying writ of mandamus to enjoin the construction of a building because it had already been built). Those cases do not apply because they do not involve ultra vires acts committed by a corporation that a shareholder is seeking to enjoin, set aside the act, and recover damages for the corporation under I.C. § 30-29-304. The Legislature clearly intended to abrogate the common law regarding injunctions and other relief based on ultra vires acts. *Mickelsen v. Broadway Ford, Inc.*, 153 Idaho 149, 153, 280 P.3d 176, 180 (2012). In addition, to the extent that those four cases conflict with I.C. § 30-29-304, it is well-settled that "[w]hen a conflict occurs between the common law and a statute we, here in Idaho, are governed by the statute." *Idaho Times Pub. Co. v. Industrial Accident Board*, 63 Idaho 720, 126 P.2d 573, 579 (1942); *Berry v. Koehler*, 84 Idaho 170, 177,

MIESEN'S SUR-REPLY TO THE DEFENDANTS' JOINT REPLY - 4

369 P.2d 1010, 1013 (1961) ("The wisdom, justice, policy, or expediency of a statute are questions for the legislature alone."); *State v. Vill. of Garden City*, 74 Idaho 513, 525, 265 P.2d 328, 334 (1953) ("The public policy of legislative enactments cannot be questioned by the courts and avoided simply because the courts might not agree with the public policy so announced.").

Defendants also rely upon three out-of-state decisions. (Dkt. 1254 at 5-6.) The defendants quote and rely heavily on *Ex parte 4tdd.com, Inc.*, 306 So. 3d 8 (Ala. 2020). But that case involved solely derivative claims. The defendants intentionally omitted the very last sentence of the quote (Dkt. 1254 at 6), where the Alabama Supreme Court confirmed the issue was not direct claims: "**We further note that neither side has raised § 10A-2-3.04(b)(1) or Dekalb in their briefs on mandamus review to this Court**." 306 So. at 19 (emphasis added). The plaintiff was <u>not</u> proceeding under Alabama's equivalent to I.C. § 30-29-304(b)(1) and the Alabama Supreme Court qualified its entire statement by that sentence. As to the *Dekalb* case cited in that same footnote 2, the Alabama Supreme Court held (consistent with Plaintiff's arguments):

> A member of a cooperative, then, would be able to contest a cooperative's power to act, under § 10–2B–3.04(b)(1), **which states that an ultra-vires challenge may be brought "[i]n a proceeding by a shareholder against the corporation to enjoin the act."** This language does not concern derivative actions, because actions brought derivatively are specifically dealt with in § 10–2B–3.04(b)(2), which allows a challenge to be brought "[i]n a proceeding by the corporation, directly, *derivatively*, or through a receiver, trustee, or other legal representative." Ala.Code 1975, § 10–2B–3.04(b)(2) (emphasis added). We agree, therefore, with the **Propane Dealers that a member of a cooperative has standing to challenge the ultra-vires acts of that cooperative, independently of any derivative action**."

*DeKalb County LP Gas Co., Inc. v. Suburban Gas, Inc.*, 729 So.2d 270, 274 (Ala. 1998) (emphasis added). *Steele v. Diamond Farm Homes Corp.*, 211 A.3d 411 (Md. 2019) involved a defendant alleging an ultra vires act as a defense to suit against the shareholder to recover unpaid levies. The court held that Maryland's ultra vires statute, which is different from Idaho's, cannot be resorted to as a defense but must involve a suit attacking some corporate act. The Maryland statute does

MIESEN'S SUR-REPLY TO THE DEFENDANTS' JOINT REPLY - 5

not contain subsection (c) like Idaho's I.C. § 30-29-304, which specifically elaborates on the right established in subsection (b)(1). The Maryland statute in a shareholder's suit only allows the court to set aside a contract not all ultra vires acts as Idaho's statute allows. Finally, in *Rosen v. Cohen*, 2020 Colo. Dist. LEXIS 4304 (a non-binding unpublished decision), the court stated "Plaintiff challenges several IPE actions as being ultra vires acts beyond the authority provided by IPE's Bylaws. See Amended Compl. at ¶¶167-74. On the merits, the corporate Bylaws of IPE plainly authorized the challenged conduct, and, at most, Plaintiff's complaint refers to actions that would constitute a procedural irregularity, not ultra vires conduct." *Id*. at *13. Miesen's claims, here, also involve transactions prohibited by the bylaws. Miesen can challenge the procedural violations of the bylaws under Idaho common law. *Kemmer v. Newman*, 161 Idaho 463, 466, 387 P.3d 131, 134 (2016) ("Actions taken in violation of a corporation's bylaws are void.").

In sum, the defendants invite this Court to err by asserting a strained and self-serving interpretation of I.C. § 30-29-304—one that would allow crooked corporate management, as here, to cut off a shareholder's claims by quickly completing an act or transaction. That was not the Legislature's intent. *Hecla Mining Co. v. Idaho State Tax Comm'n*, 108 Idaho 147, 151, 697 P.2d 1161, 1165 (1985) ("[I]t is incumbent upon a court to give a statute an interpretation that will not render it a nullity."). This lawsuit has been pending since 2010 and stayed at the request for the defendants for many years. (Dkt. 105.) I.C. § 30-29-304 cannot be read to allow defendants to complete ultra vires acts during the pendency of a case and thus escape I.C. § 30-29-304 on the grounds that the acts are past acts.

If the defendants' interpretation of I.C. § 30-29-304 is accepted, it is still a distinction without a difference, because here the defendants' ultra vires acts are ongoing and should be enjoined. The defendants do not argue Plaintiff's TAC does not state a cause of action to enjoin

MIESEN'S SUR-REPLY TO THE DEFENDANTS' JOINT REPLY - 6

uncompleted or future acts. This is because there are uncompleted and future acts sought to be enjoined. For example, the defendants continue proceeding without a properly constituted board and intentionally refuse to comply with AIA Services' amended articles of incorporation (including as to prohibited loan guarantees) and the AIA Entities' bylaws, as alleged and prayed for in the TAC. Enjoining the defendants' future acts by requiring them to comply with AIA Services' amended articles of incorporation and the AIA Entities' bylaws separately triggers the right under I.C. § 30-29-304 to set aside the numerous prior ultra vires acts and contracts flowing from the prior violations of the articles and bylaws, and to recover damages for the AIA Entities for those past ultra vires acts and contracts. Plaintiff is also seeking to enjoin the AIA Entities from guaranteeing any further loans for CropUSA, which separately triggers the right to set aside past guarantees and recover damages. These distinctions make Plaintiff's claims entirely distinguishable from every case cited by the defendants. In the instant case, the intentional ultra vires acts are ongoing and should be stopped.

Assuming the defendants suddenly promised to cease the ultra vires acts, it would be too late to prevent an injunction based on the over 15 years of intentional ultra vires and illegal conduct, even under Idaho common law. *Nelson v. Marshall*, 94 Idaho 726, 728-29, 497 P.2d 47, 49-50 (1972) ("The defendant's voluntary abandonment of the allegedly illegal action sought to be enjoined by the plaintiff does not necessarily make the case moot…The defendant has not demonstrated that there is a reasonable expectation that similar [illegal] loans will not be made in the future."). The same is true here. There is no reasonable expectation the ultra vires and unlawful conduct will not continue. To the contrary, the evidence is undisputed that it will continue unless enjoined by this Court. Plaintiff's TAC asserts claims and prayer for relief seeking broad injunctive relief for future and past conduct. (*See generally* Dkt. 211.)

MIESEN'S SUR-REPLY TO THE DEFENDANTS' JOINT REPLY - 7

Defendants' reply also invites the Court to make another error. (Dkt. 1244 at 8.) The *McCann v. McCann* case cited by the defendants is only the first McCann case to reach the Idaho Supreme Court. After his loss in the first case against his brother's actions in the management of the corporation, Plaintiff, Ron McCann, again sued his brother Bill. The undersigned Andrew Schwam represented Ron McCann in the second suit but was not involved in the first. The second suit was not a derivative action but was brought as an individual action. Many of the wrongful acts by Bill McCann set out in the complaint could have supported a derivative claim but those acts were pled only to support the individual action. The attorneys for Bill McCann, in a Motion to Dismiss, argued that since the acts asserted sounded like derivative claims, that was the gravamen of the action and a derivative notice was required (none had been given). The trial court agreed with Bill McCann and dismissed. This was unanimously reversed by the Idaho Supreme Court in the second McCann case. *McCann v. McCann*, 152 Idaho 809, 275 P.3d 824 (2012). The gravamen of the action set out in Count VIII is individual even though the ultra vires acts relied on also support a derivative action pled elsewhere in the TAC. It is noteworthy that ultimately Ron McCann received over Five Million Dollars.

Even if the gravamen of Plaintiff's TAC was previously exclusively derivative in nature and he could not assert both direct and derivative claims as argued by the defendants, this Court's dismissal of the derivative claims results in the present gravamen of Plaintiff's remaining claims as being direct claims, consistent with Fed. R. Civ. P. 8(d)-(e) and Judge Dale's ruling over five years ago that Plaintiff's direct claims were alternative ones that could be pursued if he was not successful in his derivative claims (Judge Dale quoted to the correct sections of I.C. § 30-29-304). (Dkt. 210 at 31 n. 17.) Thus, the present gravamen of Plaintiff's TAC is now that of direct claims.

Accordingly, defendants' self-serving interpretation of I.C. § 30-29-304 should be rejected.

MIESEN'S SUR-REPLY TO THE DEFENDANTS' JOINT REPLY - 8

But even if this Court disagrees with Plaintiff, the defendants do not assert that they can avoid being enjoined for the future and ongoing ultra vires acts alleged in the TAC (nor could they).

DATED:  This 26th day of September 2022.

RODERICK BOND LAW OFFICE, PLLC

By:   */s/ Roderick C. Bond*
      Roderick C. Bond
      Attorney for the Plaintiff Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:   */s/ Andrew Schwam*
      Andrew Schwam
      Attorney for the Plaintiff Dale L. Miesen

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 26th day of September 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:   jat@elamburke.com
Loren C. Ipsen:   lci@elamburke.com
Joyce A. Hemmer:   jah@elamburke.com
Bradley S. Keller:   bkeller@byrneskeller.com
Alyson A. Foster:   alyson@dempseyfoster.com
Tyler S. Waite:   twaite@campbell-bissell.com
Michael S. Bissell:   mbissell@campbell-bissell.com
Daniel L. Glynn:   dglynn@idalaw.com
Andrew Schwam:   amschwam@turbonet.com
Kim J Trout:   ktrout@trout-law.com

      */s/ Roderick C. Bond*
      Roderick C. Bond

MIESEN'S SUR-REPLY TO THE DEFENDANTS' JOINT REPLY - 9

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.; <br><br> Plaintiff, <br><br> **v.** <br><br> CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 1:10-cv-00404-DCN-CWD <br><br> DECLARATION OF RODERICK C. BOND |

DECLARATION OF RODERICK C. BOND - 1

**19-ER-4901**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

Defendants/Third-Party Plaintiffs,

v.

REED TAYLOR, an individual,

Third-Party Defendant.

REED TAYLOR, an individual,

Third-Party Defendant/ Counterclaimant,

v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

Counterdefendants.

DECLARATION OF RODERICK C. BOND - 2

**19-ER-4902**

I, Roderick C. Bond, declare:

1.      I am one of the attorneys for the Plaintiff Dale L. Miesen in this lawsuit. I am a citizen of the United States, over the age of eighteen, and competent to testify in court, including as to matters in this Declaration. This Declaration is based upon my personal knowledge.

2.      In their joint memorandum (Dkt. 1239), the defendants did not challenge the pleading adequacy or viability of Miesen's claims brought under I.C. § 30-29-304 by asserting any argument that Miesen could not state a claim under that statute. In Sections A-C of the defendants' joint reply brief (Dkt. 1254 at 2-8), they asserted new arguments that had never been asserted before regarding I.C. § 30-29-304. On September 17, 2022, I emailed Mr. Glynn and Mr. Trout to, *inter alia*, inquiry whether they would stipulate to allowing Miesen to submit a sur-reply brief to address the newly raised arguments made for the first time in their reply brief regarding I.C. § 30-29-304. I received no response. As a result, we prepared a motion seeking permission to file a sur-reply brief to address the new arguments or, in the alternative, to strike or exclude the newly raised arguments. I am advising this Court of these facts to demonstrate, once again, that we sought to prevent the filing of this motion by offering the defendants an opportunity to stipulate to allow us to file a sur-reply.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

| *September 26, 2022, Bellevue, WA* | */s/ Roderick C. Bond* |
|---|---|
| Date and City and State Signed | Roderick C. Bond |

DECLARATION OF RODERICK C. BOND - 3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 26th day of September 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:    jat@elamburke.com
Loren C. Ipsen:    lci@elamburke.com
Joyce A. Hemmer:    jah@elamburke.com
Bradley S. Keller:    bkeller@byrneskeller.com
Alyson A. Foster:    alyson@dempseyfoster.com
Tyler S. Waite:    twaite@campbell-bissell.com
Michael S. Bissell:    mbissell@campbell-bissell.com
Daniel L. Glynn:    dglynn@idalaw.com
Andrew Schwam:    amschwam@turbonet.com
Kim J Trout:    ktrout@trout-law.com


_/s/ Roderick C. Bond_
Roderick C. Bond

DECLARATION OF RODERICK C. BOND - 4

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>**v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GCLI, LLC, f/k/a GEMCAP LENDING I, LLC, a Delaware limited liability company;<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>PLAINTIFF DALE L. MIESEN'S MEMORANDUM OF LAW IN SUPPPORT OF HIS MOTION RE: THE INAPPLICABILITY OF THE AUTOMATIC BANKRUPTCY STAY PERTAINING TO THE DEFENDANT GCLI, LLC f/k/a GEMCAP LENDING I, LLC |

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - i

19-ER-4906

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

> Defendants/Third-Party Plaintiffs,

      **v.**

REED TAYLOR, an individual,

> Third-Party Defendant.

REED TAYLOR, an individual,

> Third-Party Defendant/ Counterclaimant,

      **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

> Counterdefendants.

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - ii

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................... 1

II.  PERTINENT FACTS AND PROCEDURAL HISTORY ............................... 2

    A.  The filing of the original complaint, the stay, and GemCap being named as a defendant. .................................................................................................. 2

    B.  GemCap's completed settlement with Certain Other Defendants and the AIA Entities. .................................................................................................. 4

    C.  Miesen's completed settlement with the Hawley Troxell Defendants. ................. 5

    D.  The pending motions re: the motion for judgment on the pleadings. .................... 5

    E.  Miesen's pending motion to approve the settlement agreement with GemCap. .... 6

    F.  The pending motions re: Miesen's motion to approve the payment of fees and costs. .................................................................................................. 8

    G.  The pending motion brought by the Individual Defendants and CropUSA Defendants. ............................................................................................. 9

    H.  The pending motions brought by Reed Taylor. ....................................... 9

    I.  Crumb & Munding's pending request for attorneys' fees and costs against GemCap. ................................................................................................. 9

    J.  GemCap's bankruptcy filing and certain events in the pending bankruptcy action. .................................................................................................. 9

    K.  The Court's law clerk states the case is stayed. .................................... 11

III.  ANALYSIS AND ARGUMENTS ............................................................ 12

    A.  The Automatic Stay Should Not Apply to this Lawsuit, and this Court Should Take Judicial Notice of Various Court Records Pertaining to GemCap. ............. 12

        1.  This Court Should Sever Miesen's Claims and Relief Pertaining to GemCap and Its Dismissed Third-Party Claims, which Includes Crumb & Munding's Pending Fee Request, and It May Do So Without Violating the Automatic Stay. ..................................................... 13

        2.  In Addition, or Alternatively, this Lawsuit Should Not Be Stayed as to the Remaining Parties or the Pending and Any Future Motions or Trial Pertaining to Them. ....................................................... 14

            a.  This Lawsuit Cannot Be Stayed as to the Remaining Parties Because the Bankruptcy Court Has Never Issued the Required Injunction, Nor Can It Because GemCap Is Liquidating under Chapter 7. ....................................................... 14

            b.  The Automatic Stay Does Not Apply to the Motions, Claims and Relief Pertaining to the Remaining Parties. .......................... 17

IV.  CONCLUSION .................................................................................... 18

Plaintiff Dale L. Miesen and his counsel ("Miesen") move the Court as follows:

## I.   INTRODUCTION

On September 16, 2022 (one day after Miesen's reply in support of the motion to approve the settlement agreement was filed, Dkt. 1255), the defendant GCLI, LLC f/k/a GemCap Lending I, LLC ("GemCap") filed for Chapter 7 bankruptcy protection. (Dkt. 1259.) On March 31, 2023, after Miesen's counsel's inquiry, this Court's law clerk stated that the instant lawsuit was stayed pending further briefing and/or information from the bankruptcy court. (Appendix "App.") 1.)

To move this case forward, Miesen filed a motion for relief from stay in the bankruptcy court so this Court could approve the GemCap settlement agreement (App. 11), and Miesen also seeks relief from this Court in the event that relief from stay is not granted. While Miesen and his counsel appreciate this Court's concerns, the automatic stay should not apply and does not apply to Miesen, the Individual Defendants,[1] the CropUSA Defendants, the AIA Entities and Reed Taylor (collectively the "Remaining Parties") for two independent reasons.

First, this Court should sever Miesen's claims and relief pertaining to GemCap, its dismissed claims against Crumb & Munding, and Crumb & Munding's pending fee request, which may be done without violating the automatic stay. By severing matters pertaining to GemCap, this Court ensures that any alleged violations of the automatic stay are rendered moot, and this lawsuit can then proceed as to the Remaining Parties and any motions pertaining to them.

Second, the automatic stay does not apply to the Remaining Parties or any of the motions pertaining to them because the bankruptcy court has not issued the required injunction staying this lawsuit as to any of the Remaining Parties. Indeed, the bankruptcy court could not issue such an

---

[1] Miesen will utilize the same definitions for the groups of defendants as this Court utilized in its recent order re: additional briefing. (Dkt. 1238 at 2 nn. 2-4, 4 n. 5.) In this motion, Miesen's citation to dockets are to the blue, file-stamped page numbers at the top of each page.

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - 1

injunction because GemCap is liquidating under Chapter 7—it is impossible for GemCap to have a likelihood of successful reorganization. (App. 5.) Thus, this lawsuit should proceed as to the Remaining Parties and any pending and future motions pertaining to them.

Accordingly, for the reasons stated below, the Court should grant Miesen's motion. Moreover, if a ruling is issued by the bankruptcy court regarding Miesen's pending motion for relief from the stay, he will promptly file a copy with this Court because the order may render this motion moot. If, however, Miesen does not obtain a favorable ruling from the bankruptcy court, the lengthy briefing period for this motion will not further delay this lawsuit because Miesen is filing this motion now.

## II.   PERTINENT FACTS AND PROCEDURAL HISTORY

**A.  The filing of the original complaint, the stay, and GemCap being named as a defendant.**

On August 11, 2010, Miesen and Donna Taylor filed this lawsuit asserting numerous causes of action and other requested relief against numerous defendants. (Dkt. 1.) While the original complaint alleged numerous actions taken in violation of AIA Services' amended articles of incorporation and the AIA Entities' bylaws (including concealed loan guarantees and transactions involving another lender, Lancelot), GemCap was not a party nor was it the subject of any allegations or claims in the complaint. (*Id.*) The allegations and claims at issue at that time involved malfeasance dating back over a decade (but not pertaining to GemCap). (*Id.*)

Shortly after this lawsuit was filed in 2010, the defendants moved to dismiss or stay this lawsuit, which was granted in part, leading to this lawsuit being stayed. (Dkt. 46.) On March 18, 2012, Mr. Bond appeared as counsel for Donna Taylor, and she subsequently unsuccessfully moved to lift the stay in this lawsuit. (Dkts. 58, 88, 95.) On February 2, 2016, the stay order was

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - 2

vacated after Donna Taylor appealed and the Ninth Circuit reversed.[2] (Dkts. 105, 112.)

Significantly, not only did the defendants delay this lawsuit by almost 5½ years from the stay they sought (Dkts. 1, 112), but the improper, concealed, unauthorized, ultra vires, and unlawful conduct that led to the filing of this lawsuit continued unabated during the stay. (*Compare* Dkt. 1 *with* Dkt. 211.) For example, while this lawsuit was stayed, the Individual Defendants improperly permitted the AIA Entities to guarantee a new $5 million line-of-credit provided by a *new* lender, GemCap, to the CropUSA Defendants, which was subsequently increased to $10 million in 2013. (Dkt. 211 at 39-42 ¶¶135-145.) That loan and the AIA Entities' unauthorized guarantees of that loan were fraudulently concealed from Miesen and other minority shareholders. (*Id*. at 42 ¶145.) In July 2013, GemCap allegedly provided notice of default and then filed suit against the CropUSA Defendants, AIA Entities, and others in California, which was also concealed from Miesen and other minority shareholders. (*Id*. at 42 ¶¶145-147)

Despite GemCap and the Individual Defendants' knowledge that the AIA Entities' guarantees and any subsequent settlement was unauthorized and prohibited by AIA Services' amended articles of incorporation and the AIA Entities' bylaws, John Taylor and GemCap unilaterally agreed to enter into an unauthorized settlement agreement requiring the AIA Entities to pay GemCap over $12 million and to transfer real property worth millions of dollars, which was also concealed from Miesen and other minority shareholders. (*Id*. at 43-47 ¶¶147-156.) Thus, on April 24, 2017, GemCap was named as defendant for the first time in this lawsuit based on those discrete and related improper transactions and conduct. (Dkt. 211.) In addition, the Third Amended

---

[2] Donna Taylor, another shareholder, was subsequently voluntarily dismissed without prejudice to prevent any appeals when the defendants argued diversity jurisdiction was lost when additional defendants were named in 2016 (Dkt. 178 at 13) after Judge Dale found the defendants made "misleading representations"—a finding never disputed by the defendants. (*Id*. at 3 n. 2.)

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - 3

Complaint asserted numerous other direct and derivative claims and relief against defendants other than GemCap. (*See* Dkt. 211.)

**B.  GemCap's completed settlement with Certain Other Defendants and the AIA Entities.**

After years of litigation, GemCap, the AIA Entities and others entered into a new settlement agreement. (Dkts. 1186, 1247.) In November 2021, GemCap filed two notices of satisfaction of judgment against the AIA Entities in Idaho and California confirming the AIA Entities owed nothing to GemCap under the terms of the ultra vires, unauthorized and illegal settlement agreement executed in 2015. (App. 16-17; *see, e.g.*, Dkts. 211 ¶¶135-156, 128 at 21-48, 156 at 8-16, 306-7.) *See* I.C. §§ 30-1-304(2)(a) & (3), 30-29-304(b)-(c).) On December 22, 2021, Kim Trout appeared as counsel for the AIA Entities.[3] (Dkt. 1184.) Mr. Trout then executed a stipulation on behalf of the AIA Entities regarding the dismissal of claims involving GemCap. (Dkt. 1188.) On January 19, 2022, this Court entered an order approving the stipulation dismissing the claims that GemCap and the Individual Defendants, CropUSA Defendants and AIA Entities had asserted against each other, and entered a Rule 54(b) judgment dismissing those claims. (Dkts. 1191-1192.) No party appealed that judgment.

After Miesen complained about the concealment of the settlement agreement, the settling parties agreed to produce a copy to Miesen, subject to a protective order. (Dkts. 1186-1187.) A copy of that agreement was recently filed under seal (Dkt. 1247), which Mr. Glynn publicly disclosed was signed by GemCap, John Taylor, the AIA Entities and the CropUSA Defendants. (Dkt. 1246-1 ¶3.) The stipulation for protective order also publicly disclosed the settlement agreement resolved "various claims…including cross-claims" pursuant to a "Confidential Mutual

---

[3] Miesen's references to Mr. Trout are not admissions he is acting as independent counsel for the AIA Entities. He is not—he represented John Taylor and CropUSA seeking to enforce the same agreement Miesen was challenging here. (*E.g.*, Dkts. 1167-6, 211.) *In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1189-90 (N.D. Cal. 1993). Mr. Trout's arguments should be disregarded.

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - 4

Settlement Agreement and Mutual Release." (Dkt. 1185 at 2.) Miesen has no intent, at this time, of challenging the legality or enforceability of that settlement agreement, especially since GemCap is now liquidating under Chapter 7. (App. 5; Bond Decl. ¶13.) Thus, Miesen's claims are the only remaining claims against GemCap, and GemCap has no claims. (Dkts. 211, 1212.)

**C. Miesen's completed settlement with the Hawley Troxell Defendants.**

In May 2022, Miesen and the Hawley Troxell Defendants entered into a settlement agreement requiring the Hawley Troxell Defendants to pay $1,400,000, which was the amount suggested by the Ninth Circuit mediator. (Dkt. 1242-3; *see id.* at 40 § 8.) On May 31, 2022, Miesen moved this Court to approve the settlement and the payment of attorneys' fees and costs. (Dkt. 1214.) After the defendants responded by arguing that Miesen's fee and cost request was premature (Dkts. 1219 at 22, 1222 at 19 n. 8), Miesen withdrew the motion to approve fees and costs. (Dkt. 1225.) On August 4, 2022, this Court granted the motion to approve the settlement and entered the order and Rule 54(b) judgment in the substantially agreed forms. (Dkts. 1235-1236.) There were no appeals filed of the Rule 54(b) judgment. On August 16, 2022, this Court ordered the $1,400,000 to be deposited with the U.S. Treasury. (Dkt. 1241.) Later, this Court issued a $23,459.53 payment to the Discovery Master for certain work. (Dkt. 1267-1.) On June 2, 2023, this Court granted Miesen's motion to deposit the remaining funds into CRIS. (Dkts. 1267, 1271.)

**D. The pending motions re: the motion for judgment on the pleadings.**

On January 29, 2021, the Hawley Troxell Defendants moved to dismiss Miesen's derivative claims, arguing that his derivative demands were inadequate. (Dkt. 1067.) The Individual Defendants and CropUSA Defendants filed a joinder to that motion. (Dkt. 1090.) GemCap did not join in the motion and neither did the AIA Entities. On May 5, 2022, this Court granted the motion, dismissing Miesen's derivative claims against the Hawley Troxell Defendants, the Individual Defendants, and the CropUSA Defendants—but not Miesen's derivative claims

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - 5

against GemCap. (Dkt. 1203 at 52.) This Court also ordered the parties to submit status reports as to the remaining claims and issues in this lawsuit. (*Id*. at 51.)

After the parties filed status reports regarding their positions of what remained at issue in this lawsuit (Dkts. 1204, 1207-1209, 1211-1212), on August 9, 2022, this Court providing a schedule for the Individual Defendants, CropUSA Defendants and AIA Entities to provide additional briefing explaining why each of Miesen's claims against them should be dismissed and that Miesen must respond to the briefing in 21 days. (Dkt. 1238.) The briefing and order excluded GemCap from the additional briefing. (*Id*.) On August 11, 2022, the Individual Defendants, CropUSA Defendants and AIA Entities filed a joint memorandum and submitted a declaration with exhibits purporting to address Miesen's claims. (Dkt. 1239.) On September 1, 2022, Miesen submitted his opposition. (Dkts. 1248-1249.) On September 15, 2022, the Individual Defendants, CropUSA Defendants and AIA Entities filed a joint reply. (Dkt. 1254.)

On September 26, 2022, Miesen filed a motion for permission to file a sur-reply after the defendants raised new arguments for the first time in their reply brief (despite Miesen's response objecting to them improperly raising new arguments on reply). (Dkts. 1262, 1248 at 18-19.) In an effort to keep this case moving, Miesen also filed his proposed sur-reply. (Dkt. 1262-2.) The Individual Defendants, CropUSA Defendants and AIA Entities did not respond to this motion.[4]

Neither GemCap nor any of its property is involved or at issue in these motions.

**E.  Miesen's pending motion to approve the settlement agreement with GemCap.**

On May 19, 2022, GemCap confirmed to this Court that it had no claims against any of the Remaining Parties in this lawsuit, including Miesen. (Dkt. 1212.) On July 27, 2022, Miesen and GemCap agreed to settle without a monetary payment from GemCap, in part because Miesen

---

[4] Dist. Idaho Loc. Civ. R. 7.1(e)(1).

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - 6

believed GemCap was judgment proof. (Dkts. 1240-3, 1240-2 at ¶9.) Miesen and GemCap also stipulated to the settlement approval procedure with the Court (including that no hearing would be held). (Dkt. 1232.) On August 2, 2022, this Court approved the settlement procedure (including without scheduling a hearing) and the form of the notice to stakeholders, which were mailed two days later. (Dkts. 1234, 1255-1 ¶2, 1255-2-1255-4.)

On August 11, 2022, Miesen filed a motion to approve the settlement agreement with GemCap. (Dkt. 1240.) Consistent with GemCap's prior settlement with the AIA Entities and other defendants discussed in Section II(B), the motion stated that the settlement "confirms" the AIA Entities are no longer indebted to GemCap. (Dkt. 1240-1 at 6-7.) On September 1, 2022, the Individual Defendants, CropUSA Defendants and AIA Entities filed a response stating that there was no opposition to the settlement agreement. (Dkt. 1246.) On September 15, 2022, Miesen filed his reply confirming, *inter alia*, that there were no objections by any party or stakeholder. (Dkt. 1255.) Dist. Idaho Loc. R. 7.1(e)(1). All briefing and required actions were completed prior to GemCap's bankruptcy. (Dkts. 1240, 1255; App. 5.) Thus, the only thing left for this Court to do is to approve the settlement agreement and enter the agreed order and Rule 54(b) judgment, as requested by Miesen and GemCap prior to the bankruptcy filing. (Dkts. 1232, 1240-1, 1240-3.)

As addressed below, Miesen has moved for the bankruptcy court for relief from stay to permit this Court to approve the settlement agreement and dismiss GemCap, albeit Miesen believes this Court could do so without violating the automatic stay because it would never reach the merits of any of the claims or defenses pertaining to GemCap—it would be a waste of time, money and judicial resources for any shareholder to pursue claims against GemCap because GemCap is

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - 7

bankrupt.[5] (App. 5.)

**F.   The pending motions re: Miesen's motion to approve the payment of fees and costs.**

On August 18, 2022, Miesen filed a new motion to approve the payment of attorneys' fees and costs from the $1,400,000 recovered from the Hawley Troxell Defendants. (Dkts. 1242-1243.) The defendants (except GemCap) filed oppositions, which incorporated their prior submissions filed in response to Miesen's withdrawn motion.[6] (Dkts. 1250-1253,[7] 1219-1223.) GemCap did not file a response. On September 22, 2022, Miesen submitted his reply and declarations addressing issues raised by the defendants, including their incorporation by reference of prior oppositions submitted to Miesen's prior withdrawn motion. (Dkt. 1260.) Miesen also filed a motion for permission to file an overlength reply. (Dkt. 1261.) No responses were filed.[8]

On October 10, 2022 (almost three weeks after Miesen filed his reply), the AIA Entities moved, without any specificity, to strike portions of Miesen's reply, together with the declarations filed by Messrs. Bond, Miesen and Schwam. (Dkt. 1264.) On October 20, 2022, Miesen filed his response asserting that the reply and declarations properly addressed issues raised in the defendants' responses. (Dkt. 1265.) Although the AIA Entities filed a reply on November 4, 2022 (Dkt. 1266), it should not be considered because it was untimely.[9]

Neither GemCap nor any of its property is involved or at issue in these motions.

---

[5] *E.g., Lindley Contours, LLC v. AABB Fitness Holdings, Inc.*, 414 Fed.Appx. 62, 63 n.1 (9th Cir. 2011); *Dean v. Trans World Airlines, Inc.*, 72 F.3d 754, 756-57 (9th Cir. 1995); *Indep. Union of Flight Attendants v. Pan Am. World Airways, Inc.*, 966 F.2d 457, 458-59 (9th Cir. 1992).

[6] The "withdrawal of a motion is to leave the record…as though the motion had never been made." *Davis v. U.S.*, No. CV-07-0481, 2010 WL 334502, at *2 (C.D. Cal. Jan. 28, 2010).

[7] Docket 1252 was filed without seeking leave to file an overlength response. Dist. Idaho Loc. Civ. R. 7.1(a)(2) & (e)(1).

[8] Dist. Idaho Loc. Civ. R. 7.1(e)(1).

[9] Dist. Idaho Loc. Civ. R. 7.1(b)(3) & (e)(1). No motion to extend or enlarge time was filed.

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - 8

**19-ER-4915**

**G. The pending motion brought by the Individual Defendants and CropUSA Defendants.**

The Individual Defendants and CropUSA Defendants have a pending motion for summary judgment against Miesen, which only addressed discrete issues and even if granted, did not address any of Miesen's direct claims or relief (e.g., the motion does not address ultra vires claims under I.C. §§ 30-1-304 or 30-29-304 or any other direct claims). (Dkts. 1238 at 3, 1071.)

Neither GemCap nor any of its property is involved or at issue in this motion.

**H. The pending motions brought by Reed Taylor.**

Reed Taylor has motions for summary judgment pending against certain defendants, which have been stayed by this Court. (Dkts. 1238 at 2-3 & 5, 1073, 1076.)

Neither GemCap nor any of its property is involved or at issue in these motions.

**I. Crumb & Munding's pending request for attorneys' fees and costs against GemCap.**

GemCap previously asserted third-party claims against two law firms, Quarles & Brady and Crumb & Munding, which were dismissed by this Court. (Dkts. 288, 391.)  However, this Court permitted GemCap to replead its claims against Crumb & Munding in a new lawsuit after the conclusion of this lawsuit and deferred a determination of Crumb & Munding's request for attorneys' fees and costs from GemCap until the conclusion of this lawsuit. (Dkts. 399-400, 420.) Thus, the automatic stay appears to prevent action on Crumb & Munding's pending request for fees and cost from GemCap, which this Court has stayed anyway. (Dkts. 399-400, 1238 at 2, 5.)

**J. GemCap's bankruptcy filing and certain events in the pending bankruptcy action.**

On September 16, 2022 (one day after Miesen's reply was filed on the motion to approve the settlement, Dkt. 1255), GemCap filed for Chapter 7 bankruptcy protection in the U.S. Bankruptcy Court, Central District of California.[10] (App. 5.) On September 21, 2022, GemCap

---

[10] The timing of GemCap's Chapter 7 bankruptcy filing (one day after Miesen filed his reply) suggests, if not establishes, that the bankruptcy was filed to delay and/or hinder this lawsuit.

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - 9

**19-ER-4916**

filed notices in this lawsuit disclosing for the very first time to Miesen and his counsel that it had

filed for Chapter 7 bankruptcy[11] and that it had changed its name to GCLI, LLC. (Dkt. 1256, 1259;

Bond Decl. ¶2.) GemCap disclosed assets of only $21,108.34 in cash and almost $24,000,000 of

claims, including an alleged secured priority claim of $15,741,855.20 (excluding a portion of

Miesen's potential claims if the settlement agreement is not enforced). (App. 5 at 8-9, 17, 22.)

In its original bankruptcy petition, GemCap initially listed Miesen as a creditor owed $0 in

its original petition (consistent with the settlement agreement), but it curiously used an address Mr.

Bond's law firm has not used for many years. (App. 5 at 21; Bond Decl. ¶2.) On October 14, 2022,

GemCap amended the schedules to its bankruptcy petition and listed Miesen as being owed a

disputed $1,000,000, again without disclosing the settlement agreement. (App. 6 at 4.) On October

21, 2022, GemCap again amended the schedules by providing a description of this lawsuit as being

an alleged asset, again without disclosing the settlement agreement between Miesen and GemCap,

or that GemCap had no claims pending against any party in this lawsuit (let alone no basis to assert

any claims against Miesen). (App. 7 at 8 & 11; Dkts. 1191-1192, 1212, 1247.)

On December 21, 2023, the trustee moved to have general counsel appointed to represent

him to investigate litigation claims and related issues. (App. 2 at 4; App. 14.) On January 11, 2023,

the bankruptcy court approved the trustee's application to have general counsel appointed. (App.

2 at 4.) On April 21, 2023, Metropolitan, another creditor, moved to dismiss GemCap's Chapter 7

bankruptcy for being improperly filed to thwart litigation. (App. 8-9.) On May 16, 2023, the trustee

filed a response and a declaration disclosing, for the first time, to the bankruptcy court the

settlement agreement between Miesen and GemCap and the trustee was "evaluating…the status of

---

[11] This bankruptcy filing confirmed that Miesen was correct to settle with GemCap for no payment because it appeared to be "judgment proof." (Dkts. 1240-1 at 9, 1240-2 ¶9.)

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - 10

the pre-petition settlement agreement." (App. 10 at 17.) On May 30, 2023, the bankruptcy court continued Metropolitan's motion to dismiss until August 8, 2023. (App. 2 at 9.) The deadline for creditor claims has been continued until July 17, 2023 (App. 2 at 1 & 10) and the creditors' meeting has already been continued thirteen times without explanation in the docket entries. (App. 2.)

Since GemCap filed for bankruptcy over eight months ago, the bankruptcy court has not issued an injunction staying this lawsuit as to the Remaining Parties, nor has the required adversary action been filed to seek such an injunction or avoid the settlement agreement. (App. 2-4.) In addition, GemCap has never disclosed the settlement agreement to the bankruptcy court, nor has the trustee ever asserted that the settlement agreement could be rejected on the grounds that it is an executory contract. (App. 2, 5-7.) On June 6, 2023, Miesen moved to have the bankruptcy court provide relief from the automatic stay so that this Court can approve the settlement agreement and/or enter a finding that the stay would not be violated by this Court's approval of the agreement and dismissal of GemCap. (App. 11.)

### K. The Court's law clerk states the case is stayed.

On March 31, 2023, in a response email to Miesen's counsel, this Court's law clerk advised that the entire case is stayed and "We would want briefing (and probably something from the BK court) before making a decision about moving forward." (App. 1 at 1; Bond Decl. ¶¶2-4.)

After Miesen's counsel commenced working on the stay issues and unsuccessfully attempted to resolve any potential issues as to the automatic stay with the trustee's counsel and GemCap's bankruptcy counsel, Miesen's counsel emailed a draft of this memorandum and other information to the trustee's counsel and GemCap's bankruptcy counsel for their review and any objections. Miesen's counsel also emailed Ms. Foster and Messrs. Glynn and Trout regarding the stay, but no response was received regarding their clients' position on the applicability of the stay. However, Mr. Bissell responded by stating that Reed Taylor's position was that the stay did not

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - 11

apply to the Remaining Parties and that Reed Taylor did not oppose this motion.

This partially unopposed motion followed.

### III.     ANALYSIS AND ARGUMENTS

**A. The Automatic Stay Should Not Apply to this Lawsuit, and this Court Should Take Judicial Notice of Various Court Records Pertaining to GemCap.**

The scope, applicability and alleged violations of the automatic stay provisions under 11 U.S.C. 362(a) are questions of law.[12] *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 875 (9th Cir. 2011); *In re Partida*, 862 F.3d 909, 912 (9th Cir. 2017). The pertinent portions of 11 U.S.C. § 362(a) which, at best for GemCap, *may* be implicated[13] to stay matters against only GemCap provide:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--
>
>> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the **debtor** that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the **debtor** that arose before the commencement of the case under this title;
>>
>> \*          \*          \*
>>
>> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>>
>> \*          \*          \*

11 U.S.C. 362(a)(1) & (3). As this Court's law clerk observed (App. 1 at 1), actions taken against a debtor in violation of the automatic stay "are void." *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992). However, "[t]he automatic stay…does not protect non-debtor parties or their property." *In re Advanced Ribbons & Office Prods., Inc.*, 125 B.R. 259, 263 (B.A.P. 9th Cir. 1991).

---

[12] *E.g., In re Related Asbestos Cases*, 23 Bankr. 523, 526 (Bankr. N.D. Cal. 1982) ("The automatic stay provision merely suspends those proceedings to which it applies and does not divest the court of jurisdiction.").

[13] Even if any other provisions applied, the analysis in this motion would not be impacted.

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - 12

In connection with this motion, Miesen requests this Court to take judicial notice of the attached court filings, docket, and PACER searches for GemCap's bankruptcy action, App. 2-11, and the two satisfactions of judgment filed in Idaho and California, App. 12-13, the accuracy and source of which cannot be reasonably questioned (additional reasons are also explained in Mr. Bond's declaration). (Bond Decl. ¶¶1, 3-14.) Fed. R. Evid. 201; *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012); *Porter v. Ollison*, 620 F.3d 952, 954–55 (9th Cir. 2010).

1. **This Court Should Sever Miesen's Claims and Relief Pertaining to GemCap and Its Dismissed Third-Party Claims, which Includes Crumb & Munding's Pending Fee Request, and It May Do So Without Violating the Automatic Stay.**

Courts may sever claims asserted against or by a debtor without violating the automatic stay. *Duval v. Gleason,* No. C-90-0242, 1990 WL 261364, at *4 (N.D. Cal. Oct. 19, 1990) ("severance of the debtor is clearly permissible in order to allow the proceedings to go forward against the non-debtor defendants."); *In re Related Asbestos Cases*, 23 Bankr. at 528 ("Numerous cases support our conclusion that the section 362 stay does not preclude severance."); *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983) ("We join those courts concluding that the protections of § 362 neither apply to co-defendants nor preclude severance"); Fed. R. Civ. P. 21 ("The court may also sever any claim against a party."); 8A C.J.S. Bankruptcy § 473 ("The proceedings against the debtor may be severed from proceedings against codefendants").

Here, this Court should sever Miesen's claims and relief pertaining to GemCap (including the pending motion to approve the settlement agreement) and GemCap's previously dismissed third-party claims (including the ones against Crumb & Munding that form the basis for its pending fee request against GemCap). (Dkt. 211 at 64, 66-75, 77-78, 80-82; Dkts. 288, 391, 420.) That way, this lawsuit may proceed without further delays as to the claims pertaining solely to the Remaining Parties and without fear of any alleged violations of the automatic stay. This decision would stand on its own to ensure that there is no possible way the automatic stay could be

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - 13

violated.[14] This lawsuit should not be delayed by Miesen's now apparently worthless claims against GemCap (it has no counterclaims) and the pending motion to approve the settlement agreement. The beauty about severance is that, if this Court also approves the settlement agreement as requested below and the decision was ever set aside, severance would, standing alone, still render moot any alleged violations of the automatic stay.

2. **In Addition, or Alternatively, this Lawsuit Should Not Be Stayed as to the Remaining Parties or the Pending and Any Future Motions or Trial Pertaining to Them.**

   a. **This Lawsuit Cannot Be Stayed as to the Remaining Parties Because the Bankruptcy Court Has Never Issued the Required Injunction, Nor Can It Because GemCap Is Liquidating under Chapter 7.**

   The automatic stay of section 362(a) protects only the debtor, property of the debtor or property of the estate. **It does not protect non-debtor parties or their property**. Thus, section 362(a) does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor. Similarly, the automatic stay does not protect the property of parties such as officers of the debtor…

*In re Advanced Ribbons & Office Prods., Inc.*, 125 B.R. at 263 (emphasis added) (citations omitted); *Int'l Petroleum Prod. and Additives Co., Inc. v. Black Gold S.A.R.L.*, No. 19-CV-3004, 2022 WL 4094136, at 4 (N.D. Cal. Aug. 16, 2022) ("This principle applies even when the individual co-defendant is closely associated with the bankrupt debtor or even a senior executive of the debtor."); *In re Excel Innovations, Inc.*, 502 F.3d at 1095 ("we have consistently held that the automatic stay does not apply to suits against non-debtors."); *In re Kmart Corp.*, 285 B.R. 679 (Bankr. N.D. Ill. 2002) ("joint tortfeasors who are independently liable for third-party claims are not covered by the automatic stay."); *Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360,

---

[14] Assuming there are any claims or relief pertaining to GemCap left for adjudication after the automatic stay is discharged, the severed claims and relief could still be reconsolidated back for a trial with Miesen's original action for purposes of adjudication and efficiency. 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* (3d ed. Westlaw 2023) ("even though claims have been severed under Rule 21 they still may be consolidated for trial under Rule 42(a)."). Thus, there can be no prejudice to anyone by severing the GemCap related claims and relief.

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - 14

1364 (Fed. Cir. 1999) ("It is clearly established that the automatic stay does not apply to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor."); *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991) ("[T]he automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor."); *Duval,* 1990 WL 261364, at \*2 ("The automatic stay imposed under § 362(a)(1) is generally available only to the bankrupt and not to non-debtor third parties or codefendants. Indeed, the protections afforded by the Bankruptcy Act's automatic stay have never been construed as staying as a matter of course all actions touching upon the debtor."); 8A C.J.S. Bankruptcy § 473 (Westlaw 2023) ("The stay does not protect nonbankrupt codefendants of the debtor, and does not stay the entire proceeding where the debtor is one of several defendants."); 9B Am. Jur. 2d Bankruptcy § 1719 (Westlaw 2023) ("While a stay is in place under the Bankruptcy Code as to a party to an action, the action continues as to all other parties, and the court can adjudicate the matter fully only as to them.").

However, there is one exception. 11 U.S.C. § 105(a) "gives the bankruptcy courts the power to stay actions that are not subject to the 11 U.S.C. § 362(a) automatic stay but threaten the integrity of a bankrupt's estate." *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1093 (9th Cir. 2007).

Under this exception, a bankruptcy court is the *only* court with jurisdiction to enter an unusual injunction to stay actions as to non-debtor parties. *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1267-68 (C.D. Cal. 2016) (A district court "does not have the jurisdiction to extend the stay to a non-debtor party…'any extension of the automatic stay to nondebtors does not occur automatically but requires the filing of an adversary proceeding requesting the bankruptcy court to act under § 105(a)'… In the absence of a bankruptcy court order extending the automatic stay to the non-debtor in this action, this case will go forward…"); *Placido v.*

*Prudential Ins. Co. of Am.*, No. 09-668, 2010 WL 334744, at *1 (N.D. Cal. Jan. 22, 2010) ("Even if defendants' reasoning for applying the automatic stay were accepted, this Court does not have the jurisdiction to extend the stay to a non-debtor party."); *Placido v. Prudential Ins. Co. of Am.*, No. C 09–00668, 2010 WL 334744, at *1 (N.D. Cal. Jan. 21, 2010) ("In order to apply the automatic stay outlined in 11 U.S.C. § 362 to a non-debtor party, the bankruptcy court must issue an extension of the stay under its jurisdiction…this Court does not have the jurisdiction to extend the stay to a non-debtor party."); *Boucher v. Shaw*, 572 F.3d 1087, 1093 n. 3 (9th Cir. 2009) ("[T]he bankruptcy court would first need to extend the automatic stay under its equity jurisdiction. Such extensions, although referred to as extensions of the automatic stay, are in fact injunctions issued by the bankruptcy court after hearing and the establishment of unusual need to take this action to protect the administration of the bankruptcy estate."); *In re Excel Innovations, Inc.*, 502 F.3d at 1094-95 ("…the usual preliminary injunction standard applies to stays of proceedings against non-debtors under § 105(a)…a debtor seeking to stay an action against a non-debtor must show a reasonable likelihood of a successful reorganization.").

Here, the GemCap bankruptcy court has *not* issued an injunction staying this lawsuit as to the Remaining Parties and that court is the *only* court with jurisdiction to do so. (App. 2.) Significantly, after over eight months since GemCap filed for bankruptcy, there has never even been the filing of the *required* adversary proceeding to obtain an injunction to extend the stay or to set aside the settlement agreement at issue here, as required by Bankruptcy Rule 7001. (App. 2-4.) *In re Lyons*, 995 F.2d 923, 924 (9th Cir. 1993). In fact, assuming GemCap even had a valid reason to request an injunction (it does not), it is impossible for an injunction to be issued by the bankruptcy court because GemCap is *liquidating* under Chapter 7—it is *not* reorganizing—and a prerequisite for granting such an injunction is that the bankruptcy court must consider whether

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - 16

GemCap would have a reasonable likelihood of a successful reorganization. (App. 2, 5-7.) *In re Excel Innovations, Inc.*, 502 F.3d at 1095 ("the usual preliminary injunction standard applies to stays of proceedings against non-debtors under § 105(a)…a debtor seeking to stay an action against *a non-debtor must show a reasonable likelihood of a successful reorganization.*") (emphasis added). Significantly, this issue was raised in Miesen's draft memorandum of law provided to the trustee's counsel and GemCap's bankruptcy counsel, but no action has been taken—presumably because GemCap continues to liquidate under Chapter 7. (App. 2.)

Thus, Crumb & Munding's pending attorney's fee request against GemCap is the only pending matter or motion undisputedly covered by the automatic stay. (*See* Section II(I); Dkts. 420, 1238 at 2, 5.) There is no stay as to the pending motions pertaining to the Remaining Parties.

Accordingly, this lawsuit is *not* stayed as to the Remaining Parties, nor can it be stayed as to the Remaining Parties by the bankruptcy court because GemCap is liquidating under Chapter 7. This lawsuit should proceed as to the claims and relief pertaining to the Remaining Parties.

> **b. The Automatic Stay Does Not Apply to the Motions, Claims and Relief Pertaining to the Remaining Parties.**

Having established in Section III(A)(2)(a) above that this lawsuit should not be stayed as to the Remaining Parties, the following motions should be adjudicated as soon as practical because they do not pertain to GemCap or any of its property: **(1)** the pending motions pertaining to the extended briefing on the motion for judgment on the pleadings pertaining to Miesen's remaining claims and relief (*See* Section II(D); Dkts. 1067, 1238-1239, 1248-49, 1262); **(2)** the pending motions pertaining to Miesen's motion to approve the payment of fees and costs (*See* Section II(F); Dkts. 1242-1243, 1261, 1264 (but not Mr. Trout's untimely reply, Dkt. 1266)); **(3)** the pending motion for summary judgment filed by the Individual Defendants and CropUSA Defendants (*See* Section II(G); Dkt. 1071); **(4)** Reed Taylor's pending motions for summary judgment (*See* Section

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - 17

II(H); Dkts. 1073, 1076); and **(5)** any other pending or future motions, claims and matters pertaining to the Remaining Parties.

Accordingly, the above motions are not covered by the automatic stay and no injunction has been issued, nor can one be issued, to stay this lawsuit for those motions or any other matter pertaining to the claims, relief and property of the Remaining Parties. Thus, this lawsuit should proceed as to the above motions, any future motions, and any other matters pertaining to the Remaining Parties.

## IV.    CONCLUSION

For the reasons explained above, this Court should grant Miesen's motion.

First, this Court should sever the claims and relief pertaining to GemCap, which will render moot any potential arguments or issues regarding an alleged violation of the automatic stay. This will allow this lawsuit to proceed as to the Remaining Parties. Once the automatic stay is lifted, this Court can then either approve the settlement agreement between Miesen and GemCap or allow Miesen to continue litigating his claims against GemCap.

Second, the automatic stay does not apply to the Remaining Parties or any pending or future motions pertaining to them. Simply stated, it is impossible for the automatic stay to apply to the Remaining Parties or any motions pertaining to them because the bankruptcy court has not issued the required injunction to extend the stay and it cannot do so because GemCap is liquidating under Chapter 7. Accordingly, this lawsuit should not be stayed as to the Remaining Parties or any pending and future motions pertaining to them. The automatic stay only applies to Crumb & Munding's pending request for attorneys' fees from GemCap and, might, but probably does not, apply to this Court's approval of the settlement agreement between GemCap and Miesen.

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - 18

As noted in the Certificates of Service, Miesen's counsel has provided copies of this memorandum and his other filings to the trustee's counsel and GemCap's bankruptcy counsel for full disclosure to them of the precise relief being requested in this motion.

DATED:  This 9th day of June 2023.

RODERICK BOND LAW OFFICE, PLLC

By:   /s/ Roderick C. Bond
      Roderick C. Bond
      Attorney for the Plaintiff Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:   /s/ Andrew Schwam
      Andrew Schwam
      Attorney for the Plaintiff Dale L. Miesen

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - 19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 9th day of June 2023, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:     jat@elamburke.com
Loren C. Ipsen:     lci@elamburke.com
Joyce A. Hemmer:     jah@elamburke.com
Bradley S. Keller:     bkeller@byrneskeller.com
Alyson A. Foster:   afoster@bdfcounsel.com
Tyler S. Waite:       twaite@campbell-bissell.com
Michael S. Bissell:       mbissell@campbell-bissell.com
Daniel L. Glynn:     dglynn@idalaw.com
Andrew Schwam:   amschwam@turbonet.com
Kim J Trout:     ktrout@trout-law.com
Markus William Louvier:       mlouvier@ecl-law.com
James B. King:       jking@ecl-law.com

AND I FURTHER CERTIFY that, on the date indicated above, I served the foregoing on the following non-CM/ECF Registered Participants only via email to the email addresses indicated below:

William S. Brody
Email: wbrody@buchalter.com
Bankruptcy Counsel for GCLI, LLC (f/k/a GemCap Lending I, LLC)

D. Edward Hays
Email: ehays@marshackhays.com
Counsel for the Trustee, Jerry Namba, in GCLI, LLC's Bankruptcy

Laila Masud
Email: lmasud@marshackhays.com
Counsel for the Trustee, Jerry Namba, in GCLI, LLC's Bankruptcy

*/s/ Roderick C. Bond*
Roderick C. Bond

MIESEN'S MEMO ISO MOTION RE: INAPPLICABILITY OF AUTOMATIC STAY - 20

**19-ER-4927**

**Roderick Bond**

| | |
|---|---|
| **From:** | Bennett Briggs <Bennett_Briggs@id.uscourts.gov> |
| **Sent:** | Friday, March 31, 2023 11:26 AM |
| **To:** | Roderick Bond; Andrew Schwam (amschwam@turbonet.com); mbissell@campbell-bissell.com; twaite@campbell-bissell.com; dglynn@idalaw.com; Shawnee Perdue; Kim Trout; Alyson Foster; psteinman@mrllp.com; fwang@birdmarella.com; jgjording@gfidaholaw.com; mdrooks@birdmarella.com; sadams@gfidaholaw.com; jking@ecl-law.com; mlouvier@ecl-law.com |
| **Cc:** | Kade Allred |
| **Subject:** | RE: Miesen v. Henderson, et al., Case No. 1:10-cv-00404-DCN-CWD |

Hey Rod,

Kade (cc'ed) here is the law clerk assigned to this case.

*I hope you don't mind me including all counsel in reply to your question since I will get a bit substantive in my response. Also I know a few people have called Kade over the last month or two inquiring about this same thing so hopefully this will bring us all back on the same page. And my apologize for the confusion; we should have reached out sooner to everyone to coordinate.

We get a little gun-shy when it comes to bankruptcy stays. The automatic stay statue (11 USC 362) is very robust. If we, or anyone, violates the stay by taking any action that could affect the estate of the BK party/individual, that action is deemed void. We, of course, don't want anything like that to happen in this case and ripple to other parties, motions, etc.

And Judge Nye has always taken the position that we stay everything even if it is just one party who declares bankruptcy because actions we take could affect them and actions from their BK case could affect us. In short, we always wait for the parties to reach out to us to clarify what is going on in the BK case, how they intend to proceed etc. Sometimes they go get a "comfort order" from the BK court, sometimes they bring the trustee in, sometimes they dismiss the BK party, the list goes on.

The ball is in the Parties' Court in this case. You can take any of the suggested actions (or any others you can think of) to help move this case forward if you would like. We would want briefing (and probably something from the BK court) before making a decision about moving forward.

In short, you heard correct: this ENTIRE case is currently stayed.

Hope that helps.

Thanks,
Bennett

1

**Appendix - 1, p. 1**
**19-ER-4928**



**Bennett Briggs**

**Career Law Clerk**
**Chief Judge David C. Nye**
**U.S. Courts, District of Idaho**
**bennett_briggs@id.uscourts.gov**
**(208) 334-1026**

---

**From:** Roderick Bond <rod@roderickbond.com>
**Sent:** Friday, March 31, 2023 6:22 AM
**To:** Bennett Briggs <Bennett_Briggs@id.uscourts.gov>
**Cc:** Andrew Schwam (amschwam@turbonet.com) <amschwam@turbonet.com>
**Subject:** Miesen v. Henderson, et al., Case No. 1:10-cv-00404-DCN-CWD

**CAUTION - EXTERNAL:**

Good Morning Bennett:

I hope all is well. We were advised by counsel for Reed Taylor that his office was advised that Judge Nye is treating the entire case as being stayed as to all defendants a result of the bankruptcy filed by the defendant GemCap Lending I, LLC. Is this correct? Please advise as we intend on filing a motion to address the issues if there is a stay as to the entire case. Obviously, we didn't want to prepare and file a motion if the entire case was <u>not</u> stayed, which is why we are reaching out to you. My apologies for not addressing this issue sooner, but we had no knowledge of a stay of the entire case. If this email should be directed to a different law clerk, can you please forward it and advise us of the current law clerk assigned to the case? Thanks and have a great weekend.

Rod



Roderick C. Bond
Roderick Bond Law Office, PLLC
10900 NE 4th St., Suite 2300
Bellevue, WA  98004
Tel: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Website: www.roderickbond.com

2

**Appendix - 1, p. 2**
**19-ER-4929**

This email and any attachments may be attorney-client privileged, protected as attorney work product, and/or subject to any other applicable privileges.  The unauthorized viewing or dissemination of any email or attachment is prohibited.  If you have received this email in error or it was not intended to be delivered to you, please immediately delete this email and all attachments and contact the sender at the address indicated above.  Thank you.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**Appendix - 1, p. 3**
**19-ER-4930**

MICHAEL S. BISSELL, ISB NO. 5762
Email: mbissell@campbell-bissell.com
TYLER S. WAITE, ISB NO. 9641
Email: twaite@campbell-bissell.com
CAMPBELL & BISSELL, PLLC
820 West 7th Avenue
Spokane, WA  99204
Telephone: (509) 455-7100
Fax: (509) 455-7111
Attorneys for Reed J. Taylor

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>   Plaintiff,<br><br>  v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; | Civil No. 1:10-cv-00404-DCN<br><br><br><br><br><br>**REED TAYLOR'S REQUEST FOR STATUS CONFERENCE TO ESTABLISH BRIEFING SCHEDULE FOR MOTION (Dkt. 1076)** |

REED TAYLOR'S REQUEST FOR STATUS CONFERENCE TO ESTABLISH
BRIEFING SCHEDULE FOR MOTION (Dkt. 1076) - 1

AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,

     Defendants.

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

     Defendants/Third-Party

     Plaintiffs,

   **v.**

REED TAYLOR, an individual,

     Third-Party Defendant.

REED TAYLOR, an individual,

     Third-Party Defendant/

     Counterclaimant,

   **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual,

REED TAYLOR'S REQUEST FOR STATUS CONFERENCE TO ESTABLISH BRIEFING SCHEDULE FOR MOTION (Dkt. 1076) - 2

**19-ER-4932**

and UNKNOWN BONDING
COMPANY, an unknown entity that
issued the unknown fidelity ERISA
Bond,

Counterdefendants.

GEMCAP LENDING I, LLC, a
Delaware limited liability company,

Defendant/Third-
Party
Plaintiff,

**v.**

QUARLES & BRADY, LLP, a
Wisconsin limited legal partnership;
and CRUMB & MUNDING, P.S., a
Washington professional service
corporation,

Third-Party
Defendants.

Third-Party Defendant Reed Taylor respectfully requests this Court schedule

a status conference to set a briefing schedule on his pending Motion for Partial

Summary Judgment against R. John Taylor for Breach of Fiduciary, **Dkt. No.**

**1076**.

Reed Taylor filed the above motion on January 1, 2021 – almost three years

ago.  On February 1, 2021 this Court stayed further briefing on the matter (**Dkt. No.**

**1089**), and reiterated that stay on August 9, 2022 (**Dkt. No. 1238**).  Since the original

REED TAYLOR'S REQUEST FOR STATUS CONFERENCE TO ESTABLISH
BRIEFING SCHEDULE FOR MOTION (Dkt. 1076) - 3

**19-ER-4933**

stay, various events have occurred, including Miesen's settlement with the Hawley Troxell Defendants, (**Dkt. No. 1208**), Miesen's settlement with GemCap (**Dkt. 1240**), and GemCap's bankruptcy and resulting stay, which was subsequently lifted (**Dkt. No. 1276**). Wherefore, the circumstances having changed from the time the Court stayed briefing, Reed Taylor respectfully requests this Court schedule a status conference to set a briefing schedule for his motion so that it may be decided (including an opportunity for Reed to file a supplemental initial Memorandum (if he so desires) given the time and events which have occurred over the past three years).[1]

DATED: This 16th day of November, 2023.

CAMPBELL & BISSELL, PLLC

By: __/s/ Michael S. Bissell_____
    MICHAEL S. BISSELL
    TYLER S. WAITE
    820 W. 7th Avenue
    Spokane, WA 99204
    Attorneys for the Third-Party
    Defendant/Counterclaimant Reed Taylor

---

[1] Reed Taylor has an additional motion for summary judgment (for dismissal of the third-party claims) pending as well (**Dkt. No. 1073**), but acknowledges that the Court's determination of whether Miesen's individual claims survive the Court's dismissal of his derivative claims (**Dkt. 1203**) should be decided first, because that decision may render Reed Taylor's motion moot.

REED TAYLOR'S REQUEST FOR STATUS CONFERENCE TO ESTABLISH BRIEFING SCHEDULE FOR MOTION (Dkt. 1076) - 4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 16th day of November, 2023, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson: jat@elamburke.com
Loren C. Ipsen: lci@elamburke.com
Joyce A. Hemmer: jah@elamburke.com
Bradley S. Keller: bkeller@byrneskeller.com
Alyson A. Foster: afoster@bdfcounsel.com
Daniel L. Glynn: dglynn@idalaw.com
Andrew Schwam: amschwam@turbonet.com
Kim J Trout: ktrout@trout-law.com
Markus William Louvier: mlouvier@ecl-law.com
James B. King: jking@ecl-law.com
Roderick C. Bond: rod@roderickbond.com
Andrew Schwam: amschwam@turbonet.com

AND I FURTHER CERTIFY that, on the date indicated above, I served the foregoing on the following non-CM/ECF Registered Participants only via email to the email addresses indicated below:

William S. Brody
Email: wbrody@buchalter.com
Bankruptcy Counsel for GCLI, LLC (f/k/a GemCap Lending I, LLC)

D. Edward Hays
Email: ehays@marshackhays.com
Counsel for the Trustee, Jerry Namba, in GCLI, LLC's Bankruptcy

Laila Masud
Email: lmasud@marshackhays.com
Counsel for the Trustee, Jerry Namba, in GCLI, LLC's Bankruptcy

/s/ Michael S. Bissell
MICHAEL S. BISSELL
TYLER S. WAITE

REED TAYLOR'S REQUEST FOR STATUS CONFERENCE TO ESTABLISH
BRIEFING SCHEDULE FOR MOTION (Dkt. 1076) - 5

**19-ER-4935**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>       Plaintiff,<br><br>       **v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GCLI, LLC, f/k/a GEMCAP LENDING I, LLC, a Delaware limited liability company;<br><br>       Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>PLAINTIFF DALE L. MIESEN'S MEMORANDUM OF LAW IN SUPPPORT OF HIS MOTION TO EXPEDITE THE ADJUDICATION THIS CASE |

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - i

19-ER-4936

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

        Defendants/Third-Party Plaintiffs,

**v.**

REED TAYLOR, an individual,

        Third-Party Defendant.

REED TAYLOR, an individual,

        Third-Party Defendant/ Counterclaimant,

**v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

        Counterdefendants.

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - ii

**19-ER-4937**

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  CERTAIN FACTS AND PROCEDURAL HISTORY RE: DELAY .................................. 3

A.  An Overview of the AIA Entities and Their Ownership Structure and Businesses. .............. 3

B.  An Overview of Miesen and His Substantial Ownership Interest in AIA Services. .............. 4

C.  The Individual Defendants Used Their Control Over the AIA Entities to Start Diverting Millions of Dollars of the AIA Entities' Funds and Assets, which Has Delayed this Case. ... 4

D.  The Filing of this Case Was Delayed by Almost Two Years Because the Defendants Failed to Follow Through with the Appointment of Independent Panel to Conduct an Inquiry. ................................................................................................................ 6

E.  The Defendants Delayed this Case by Almost Five and One-Half Years after They Obtained an Order Staying this Case When They Knew the Stay Was Obtained to Delay. ... 8

F.  After this Case Was Filed, the Defendants' Misconduct Has Continued Unabated, which Has Led to Additional Years of Delay and Millions of Dollars in Additional Damages. ...... 8

G.  The Defendants Have Delayed this Case by Improperly Controlling the AIA Entities. ....... 14

H.  The Individual Defendants Delayed this Case by Waiting Almost Seven Years to Assert Their Third-Party Complaint against Reed Taylor, which They Did to Delay this Case. ..... 15

III.  ANALYSIS AND ARGUMENTS ...................................................................... 16

A.  The Legal Standards. ................................................................................ 16

B.  This Court Should Expedite the Adjudication of this Case Because Justice Has Been *Both* Delayed and Denied for Over 13 Years and the Circumstances Warrant Expediting.  18

IV.  CONCLUSION ............................................................................................. 20

CERTIFICATE OF SERVICE ................................................................................ 21

Plaintiff Dale L. Miesen and his counsel ("Miesen") move the Court as follows:

## I.      INTRODUCTION

Delayed lawsuits "conflict with one of the basic principles of our legal system—justice delayed is justice denied." *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021). Here, Justice has been *both* delayed and denied to Miesen and over 45 other innocent stakeholders for over thirteen years. (Dkt. 1.)[1] During that over decade-long delay, six former parties and witnesses have died (including, more recently, Donna Taylor) and at least seven other parties and witnesses now range from 69-years-old to 91-years-old (the Individual Defendants,[2] Reed Taylor, Miesen and two witnesses). Most importantly, the defendants' misconduct both delayed the filing of this case for over two years and further delayed the adjudication of this case for over an additional eight and one-half years—for a total of over ten and one-half years of identifiable delays.

For example, the defendants obtained an order to stay this case, which was not lifted for almost five and one-half years until after the Ninth Circuit reversed the orders declining to lift the stay. The defendants sought and obtained the stay order to delay this case—they knew other litigation would not resolve this case and thus abstention did not apply.

By way of another example, rather than operate the AIA Entities lawfully during the stay, the defendants' misconduct (some criminal) continued unabated and led to millions of dollars more of the AIA Entities' funds and property being diverted and lost, which led to this case being delayed for years longer. First, this case was delayed for over another year because Miesen was forced to amend his complaint to add new defendants (including GemCap) and causes of action

---

[1] Miesen's citations to page numbers in any specific dockets are to the blue, file-stamped page numbers at the top of each page.

[2] Miesen will utilize the same definitions for the groups of defendants that this Court recently utilized. (Dkt. 1238 at 2 n. 2-4, at 4 n. 5.)

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 1

for post-filing misconduct. Then, this case was delayed over another year because of motions pertaining to GemCap related misconduct. Next, this case was delayed for over another year after GemCap curiously filed for bankruptcy one day after Miesen filed his reply to approve the settlement with GemCap. All of these delays, and many others, are traced directly or indirectly back to the defendants' post-filing misconduct because the AIA Entities were prohibited under AIA Services' amended articles of incorporation and the AIA Entities' bylaws from guaranteeing the $10 million loan to the CropUSA Defendants and from subsequently entering the over $12 million settlement agreement with GemCap, which led to Miesen naming GemCap as a defendant and asserting additional claims against it and other defendants. These are only a few examples of the defendants' post-filing misconduct causing delays—it would be impossible to list all of the defendants' post-filing misconduct and improper litigation tactics in a 20-page memorandum.

In sum, holding a trial, and doing so as soon as possible, is the only way there will ever be justice for Miesen and the only way the delays will ever stop. Importantly, a trial is also the only way the defendants will ever be held accountable for their long-term misconduct. Otherwise, the defendants' misconduct will continue because they presently believe that they are above the law. While Miesen is sympathetic to this Court's heavy workload and Idaho's need of another judge, "[t]his case is old and deserves to be given expedited consideration." *Jones v. United States*, 954 F. Supp. 191, 195 n. 7 (D. Neb. 1997). After over thirteen years, justice requires it.

Accordingly, Miesen respectfully requests this Court to expedite the adjudication of this case and hold a status conference to help facilitate expediting this case (including to schedule a trial date).[3] If this Court is unable to do so, Miesen respectfully requests that this case be assigned to a different judge who has the time and resources available to expedite this case.

---

[3] Reed Taylor has also requested a status conference. (Dkt. 1281.) The defendants want delay.

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 2

## II.   CERTAIN FACTS AND PROCEDURAL HISTORY RE: DELAY[4]

### A.  An Overview of the AIA Entities and Their Ownership Structure and Businesses.

The AIA Entities are comprised of AIA Services Corporation ("AIA Services") and it is the sole shareholder of its subsidiary, AIA Insurance, Inc. (Dkt. 211 ¶5.) AIA Services' amended articles of incorporation and the AIA Entities' bylaws have numerous restrictions that prohibit the misconduct that led to the filing of this case. (*See generally* Dkts. 1131-10, 1250-5.)

AIA Services has three categories of shareholders (who stand to potentially benefit from any recovery here): **(1)** 41,651 Series A Preferred Shares issued to Donna Taylor, which have a face value of  $416,510 ($10 per share) and have over $760,000 in accrued interest (these shares were required to have been fully redeemed by December 2003 and have the highest payment priority);[5] **(2)** 92,500 Series C Preferred Shares issued to AIA Services' 401(k) Plan, which are held by over 30 innocent former employees (these shares the next highest payment priority); and **(3)** 1,847,789.42 common shares, according to AIA Services' June 30, 2019 stock ledger, which includes over 15 innocent ex-employee shareholders). (Dkts. 211 ¶¶27, 35 & 40-41, 67-7, 449-4 ¶2, 1098 ¶11, 1098-4, 1098-7, 1131-10, 1260-2 at 341.)

The AIA Entities were previously engaged in selling and administering insurance products and multi-million-dollar real estate holdings. (Dkts. 211 ¶¶25, 153 & 164(oo).) As a result of the defendants' misconduct, most of the AIA Entities' funds and material assets were unlawfully diverted and the only material assets remaining are causes of action and a potential claim to the

---

[4] The limited facts discussed below are only a few of the countless examples of the defendants' misconduct and the purpose of this motion is not to document all of the indisputable misconduct. In addition, certain information is being provided for the benefit of this Court's newest term law clerk (a comprehensive and indisputable discussion of many facts through 2020 are contained in Professor McDermott's excluded report, Dkt. 1099-1 at 57-319).

[5] John Taylor alleges that he unilaterally issued Series A Shares to himself with the intent to be able to outvote Donna Taylor. (1260-2 at 175 &177.) Those shares are void. (Dkt. 211 ¶24.)

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 3

net proceeds of Miesen's recent $1,400,000 settlement with the Hawley Troxell Defendants (Miesen has asserted none of those funds should be placed back in the hands of the defendants). (*See, e.g.,* Dkts. 211, 1242, 1242-3, 1235-1236, 1248 at 14-15.)

## B. An Overview of Miesen and His Substantial Ownership Interest in AIA Services.

Miesen is a long-term shareholder and a former vice-president of AIA Services. (Dkts. 155 ¶2, 1260-15 ¶2.) According to AIA Services' stock ledger for June 30, 2019, Miesen, together with the trusts that he controls, owns 58,338 common shares in AIA Services and they are collectively the second largest common shareholder of AIA Services.[6] (Dkt. 1098-7.) Miesen was issued those common shares when he traded his insurance book of business worth over $500,000 to AIA Services in the early 1990s, based on John Taylor's representations that AIA Services would go public. (Dkts. 155 ¶1, 1260-15 ¶2.) Miesen has never received a single dividend payment for those shares (despite AIA Services having generated over $65 million in revenues since 1995), and those shares are Miesen's only retirement. (*Id*.; Dkt. 211 ¶¶40-41 & 110.)

## C. The Individual Defendants Used Their Control Over the AIA Entities to Start Diverting Millions of Dollars of the AIA Entities' Funds and Assets, which Has Delayed this Case.

In 1995, John Taylor and the other Individual Defendants (Beck and Cashman) wanted control over AIA Services without having to pay for it themselves, so they entered into an Investment Agreement that required AIA Services repurchased Reed Taylor's majority interest at terms acceptable to them (which made them the majority and controlling shareholders). (Dkt. 211 ¶¶32-33 & 36.) The Individual Defendants (Connie through her marriage with John Taylor) also entered into a voting agreement to maintain their control over the AIA Entities. (Dkt. 211 ¶36.)

---

[6] Excluding his trusts, Miesen is the second largest minority shareholder behind the, now deceased, Ray Heilman. (Dkts. 1260-15 ¶2, 1098-7; Bond Decl. ¶4.) The 2019 stock ledger also falsely states that John Taylor allegedly owned 1,415,529 shares—the number is significantly lower based on his ultra vires misconduct of issuing shares to himself. (Dkt. 211 ¶¶12, 226, 229.)

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 4

Once the Individual Defendants obtained control, the die was cast for decades of misconduct. From 1999 to the present time, the Individual Defendants have improperly used their control over the AIA Entities to improperly divert millions of dollars of revenues and assets through, *inter alia*, ultra vires acts and transactions to fund the Individual Defendants' other businesses, guarantee loans for other entities that they control, pay debts owed by themselves and entities they control, pay themselves millions of dollars in compensation, improperly advance defense costs in this case (including defense costs for the Individual Defendants and their belated third-party complaint) and in other lawsuits in various states, and other misconduct that diverted the AIA Entities' revenues, assets and credit. (*See generally* Dkts. 211, 1099-1 at 111-327.)

For example, in 1999, the AIA Entities formed a new subsidiary called "AIA Crop Insurance, Inc." to sell crop insurance. (E.g., Dkt. 211 ¶46.) The AIA Entities' business plan for their new crop insurance business confirmed the subsidiary was owned by the AIA Entities. (Dkt. 67-66.) However, the Individual Defendants used their control over the AIA Entities to transfer the ownership of AIA Crop Insurance to themselves by changing the name to "CropUSA Insurance Agency, Inc.," issuing shares to themselves, and then funding and operating CropUSA with the AIA Entities' funds, assets and credit—without disclosure or approval from AIA Services' shareholders. (E.g., Dkt. 211 ¶¶47-60, 66-90, 124, 135-157 & 164.) The AIA Entities received nothing in return. (*Id*. ¶58.) To reiterate, none of these transactions and misconduct, like all of the other misconduct (Dkt. 211), were disclosed to Miesen and the other minority shareholders, and the AIA Entities' required boards of directors (including the director for the Series A Shares) and AIA Services' shareholders never approved any of them. (Dkt. 211 ¶¶133, 164, 201 & 205-206.)

Thus, the defendants' misconduct (including concealed misconduct) has significantly delayed this case by the complex nature and number of claims and parties, motion practice and

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 5

discovery (including discovery disputes). (*See generally* Dkts. 1–1281.) Idaho State District Court Judge Brudie also confirmed this complexity: "I have had a lot of experience working with AIA and their financial records, and I don't know if I can trust any of them..." (Dkt. 1260-15 at 289 ¶8.)

### D. The Filing of this Case Was Delayed by Almost Two Years Because the Defendants Failed to Follow Through with the Appointment of Independent Panel to Conduct an Inquiry.

In 2007, after the Individual Defendants refused to have AIA Services pay the over $6 million still owed to Reed Taylor for the 1995 redemption of his shares, Reed Taylor asserted claims against the AIA Entities and John Taylor in Nez Perce County District Court, and subsequently moved to amend his complaints to add CropUSA and the other Individual Defendants after he began discovering the misconduct in discovery. (E.g., Dkts. 211 ¶99, 1131-19.) Reed Taylor's verified Fifth Amended Complaint filed in 2008 alleged, *inter alia*, that: **(1)** AIA Services' amended articles of incorporation were being violated (including for prohibited loan guarantees for CropUSA); **(2)** the AIA Entities were violating their bylaws; **(3)** CropUSA was improperly taken from the AIA Entities; **(4)** CropUSA was improperly formed and operated using the AIA Entities' funds and assets; **(5)** over $1,5000,000 was improperly transferred to CropUSA (including in violation of AIA Services' amended articles); and **(6)** the Individual Defendants had received improper compensation and had engaged in self-dealing. (*See generally* Dkt. 1131-19.)

After Reed Taylor discovered the misconduct, he notified Donna Taylor and, on June 2, 2008, she filed suit against John Taylor for certain misconduct (her Series A Preferred Shares were required to have been fully redeemed by December 2003, but the money was used by the Individual Defendants to fund CropUSA and other improper use).[7] (Dkts. 390-39, 152, 152-1, 152-2.)

Consequently, on July 21, 2008, Reed Taylor and Donna Taylor also jointly submitted a

---

[7] The Individual Defendants' control over AIA Services led to paying more in fees to fight Donna Taylor than simply paying her the $416,510 owed in 2008, which makes no sense. (Dkt. 211 ¶163.) Donna Taylor's Estate is now owed over $750,000 in accrued interest. (Bond Decl. ¶3.)

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 6

derivative demand letter to the alleged (unelected) boards of directors of the AIA Entities demanding that claims be asserted against CropUSA and the Individual Defendants. (Dkt. 1131-2.) The AIA Entities and the Individual Defendants did not respond to that derivative demand letter by "contacting the shareholder for clarification,"[8] nor did they allege that they did not understand the legal action demanded to be taken, nor could they—the Individual Defendants (three of whom were purportedly acting as the directors) had intimate knowledge of the misconduct and John and Connie were both attorneys. (Dkts. 1131-12, 1131-13, 1131-19.) Even if any of the Individual Defendants lacked knowledge of any of the wide-spread misconduct (a dubious proposition), they also promised to investigate the misconduct when they signed a tolling agreement on November 1, 2007—they were required to have knowledge over eight months before the receipt of July 21, 2008, demand letter. (E.g., Dkts. 211, 1131-19, 1260-13 §1.5; *see also* Dkt. 583-22 §1.4.)

On July 23, 2008, the AIA Entities counsel in the Reed Taylor litigation moved to stay that lawsuit so that an independent inquiry could allegedly be conducted for the July 21, 2008, derivative demand. (Dkt. 211 ¶173.) On August 14, 2008, the AIA Entities' counsel in the Reed Taylor litigation, who were controlled by the Individual Defendants (e.g., Dkt. 1260-3 at 31-38), moved to have an independent panel appointed to conduct an inquiry into the allegations of misconduct raised in the July 21, 2008, demand letter pursuant to I.C. §§ 30-1-743 and 30-1-744(6). (Dkts. 211 ¶174, 1131-18.) Despite Reed Taylor's support, the independent inquiry never occurred. (Dkt. 211 ¶¶175-76.) On August 11, 2010, after being delayed for almost two years waiting for the promised independent inquiry to take place, the complaint was filed here. (Dkt. 1.)

Thus, the Individual Defendants and the AIA Entities were the cause of an almost two-year delay in the filing of this case by representing (falsely) that an independent inquiry would be

---

[8] Dkt. 1131-16 at 3 (quoting Mod. Bus. Corp. Act § 742 cmt. 1 (2003)).

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 7

conducted,[9] and they never alleged or filed a motion alleging that the July 21, 2008, demand letter was inadequate until years later, when "the specificity of the demand should not become a new source of dilatory motions." (Dkt. 1131-16 at 3 (quoting Mod. Bus. Corp. Act § 742 cmt. 3 (2003).).)

### E. The Defendants Delayed this Case by Almost Five and One-Half Years after They Obtained an Order Staying this Case When They Knew the Stay Was Obtained to Delay.

Shortly after the instant lawsuit was filed, the defendants moved to dismiss or stay this lawsuit, which was granted in part by Judge Boyle and led to this lawsuit being stayed for years— all to avoid being held accountable. (E.g., Dkts. 1, 46.) On March 18, 2012, Mr. Bond appeared as counsel for Donna Taylor, and she unsuccessfully moved to lift the stay of this case. (Dkts. 58, 88.) Then, the defendants successfully opposed Donna Taylor's motion for reconsideration, which was brought to avoid an appeal. (Dkt. 95.) Donna Taylor appealed. The Ninth Circuit reversed Judge Boyle's two orders and the stay was vacated on February 2, 2016. (Dkts. 105, 112.)

Thus, the stay sought and obtained by the defendants, which they opposed lifting, has delayed this lawsuit by almost 5½ years. The defendants knew the resolution of other lawsuits would never resolve this case and would only delay it, which is why the Ninth Circuit reversed.

### F. After this Case Was Filed, the Defendants' Misconduct Has Continued Unabated, which Has Led to Additional Years of Delay and Millions of Dollars in Additional Damages.

The parties, motion practice and discovery in this case should have been limited to the misconduct when this case was filed in 2010 because the misconduct should have stopped. (Dkt. 1.) However, after this case was filed and having obtained a stay, any reasonable defendant would have properly and lawfully operated the AIA Entities during the stay and thereafter in the face of

---

[9] It is even more egregious that the inquiry never occurred because the defendants misrepresented to Judge Boyle that the Reed Taylor litigation was a parallel case that would resolve the claims in this case to justify the prior stay. (Dkts. 46 at 4.) This is nothing new, however, Judge Dale found the defendants made "misleading representations"—a finding never disputed by the defendants. (Dkt. 178 at 3 n. 2.) This type of misconduct has plagued this case.

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 8

the serious indisputable examples of misconduct, Dkts. 1, 23, 137, 211, which were verified by Donna Taylor or Miesen. (Dkts. 1 at 50, 23, 23-1, 137 at 56, 211 at 83.) Not so here. Rather than lawfully operating the AIA Entities, the defendants' misconduct continued unabated to this very day. (*Compare* Dkt. 1 *with* Dkts. 137, 211, 64-66, 152, 312-6, 1260-15.)

During all relevant times in this case and through the present time, AIA Services' 1996 amended articles of incorporation prohibited the misconduct that led to Miesen's claims (including his pending ultra vires claims).[10] For example, the defendants violated the restrictions under AIA Services' amended articles of incorporation before and/or after this case was filed by having the AIA Entities improperly: **(1)** fail to require the director appointed by the Series A Shareholder, Donna Taylor, and the director for the Series C Preferred Shares to participate in board meetings and action as mandated by Sections 4.2.8, 4.3.2 and 4.4;[11] **(2)** guarantee numerous loans for other parties (including the CropUSA Defendants) and incur Indebtedness (including with the CropUSA Defendants and GemCap) in violation of Section 4.2.9(c); **(3)** purchase stock from other parties in violation of Sections 4.2.9(f)-(k), 4.3.3, and 4.3.5(b), including, without limitation, transferring over $1,500,000 to CropUSA in a transaction disguised as a stock repurchase; **(4)** engage in countless transactions with the defendants and their affiliates (including the CropUSA Defendants) that have inflicted millions of dollars in damages, including, without limitation, over $1,500,000

---

[10] *See, e.g., Hill v. Small*, 183 S.E.2d 752, 753-54 (Ga. 1971) ("'The charter of a corporation is in effect its constitution'" and the issuance of stock in violation of the charter was void); *Michelson v. Duncan*, 407 A.2d 211, 218-19 (Del. 1979) (explaining that "[u]ltra vires, fraudulent or gifts or waste of corporate assets" acts or transactions are void); I.C. § 30-29-202(b)(2)(ii)-(iii); I.C. § 30-29-301(a); I.C. § 30-29-304; I.C. § 30-29-801(b). The charter is another name for "the articles of incorporation." Black's Law Dictionary (11th ed. 2019).

[11] The AIA Entities' purported board actions are void for these reasons alone. *See Marine Services Unlimited, Inc. v. Rakes*, 918 S.W.2d 132, 134 (Ark. 1996) ("meeting held without notice to some or any of the directors and in their absence is illegal..."); *Stone v. American Lacquer Solvents Co.*, 345 A.2d 174, 176-77 (Pa. 1975) ("directors of a corporation may bind a corporation only when they act at a legal meeting of the board").

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 9

**19-ER-4947**

in improper loans to Pacific Empire Radio (which was controlled by John Taylor and Connie Henderson); and **(5)** engage in countless transactions leading to the AIA Entities net worth being less than the sums owed to the Series A Preferred Shares and the noncompliance of other debt and asset restrictions in violation of Sections 4.2.9(c), (e), (f), (h), (j) and (k). (*See generally* Dkts. 211, 1131-10 at 3-15.) These are only a few of many examples of ultra vires acts.

Similarly, during all relevant times in this case and through the present time, the AIA Entities' bylaws prohibited the misconduct that led to Miesen's claims (including his pending ultra vires claims).[12] (Dkts. 211, 1260-5.) For example, the defendants violated the restrictions under the AIA Entities' bylaws (even as improperly amended in 2016) before and after this case was filed by having the AIA Entities improperly: **(1)** fail to hold annual shareholder meetings and board meetings as mandated by Sections 3.2 and 4.7(a) (the last shareholder held for AIA Services was in 2012 and was not lawfully conducted); **(2)** fail to have the board of directors fix the officer compensation as mandated by Section 5.5 (including, the millions of dollars of improper compensation paid to John Taylor); **(3)** fail to evidence millions of dollars in loans by a board resolution as mandated by Section 6.2; **(4)** fail to require corporate powers to be exercised under directors and the failure by the so-called directors to deal in good faith as mandated by Sections 4.4 and 4.11; **(5)** fail to deposit over $1.5 million in checks in the AIA Entities' bank accounts as mandated by Section 6.3;[13] **(6)** permit loans to assist directors without shareholder approval as mandated by Section 14.1; **(7)** remove directors appointed by the Series A Preferred Shares when only Donna Taylor could remove a director as mandated by Section 4.6; **(8)** fail to comply with

---

[12] *See, e.g., Kemmer v. Newman*, 161 Idaho 463, 466, 387 P.3d 131, 134 (2016) ("Actions taken in violation of a corporation's bylaws are void."); I.C. § 30-29-206(b); I.C. § 30-29-841. Miesen is not conceding that the 2016 amended bylaws were duly adopted. They were not.

[13] For example, John Taylor deposited a $1,510,827.49 check in a CropUSA account that used his home address to secretly and improperly divert those funds to CropUSA. (Dkts. 67-60, 67-59.)

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 10

director conflicts of interests by making full disclosure to shareholders and obtaining their approval as mandated by Section 4.14 (including as to John Taylor's retention and control over the AIA Entities' counsel, Kim Trout, who directly bills only John Taylor); and **(9)** fail to obtain consent from shareholders or a court prior to advancing defense costs to the Individual Defendants or this case and others, and fail to obtain the required undertaking, as mandated by Sections 11.1, 11.3, 11.5, 11.6, 4.14 and I.C. §§ 30-1-851, 30-1-853, 30-1-854 and 30-1-855 (and the successor statutes).[14] (*See generally* Dkts. 211, 1260-5, 1260-3, 1260-4, 1260-15, 1194, 1206; Bond Decl. Ex. B.) These are only a few of many examples of ultra vires acts.

Having discussed some of the blatant misconduct that occurred before and after this case was filed on August 11, 2010, Miesen will briefly address a few of the new egregious ultra vires[15] acts that have occurred after this case was filed, which have added years of delay to this case.

In November 2011 (after the ink was barely dry on Judge Boyle's stay order, Dkt. 46), the Individual Defendants had AIA Services guarantee a $5 million loan for the CropUSA Defendants, which was provided by GemCap and was later increased to $10 million in 2013 with the AIA Entities guaranteeing the entire debt in violation of Section 4.2.9(c) of AIA Services' amended articles of incorporation (among other restrictions in the articles and bylaws). (E.g., Dkts. 211

---

[14] The improper indemnity sought by the Individual Defendants against Miesen makes these provisions even more personal and direct as to Miesen in this case. (*See, e.g.,* Dkt. 1223.)

[15] "An ultra vires act is an act that is '[u]nauthorized; beyond the scope of power allowed or granted by a corporate charter or by law.'" *Taylor v. Taylor*, 163 Idaho 910, 918, 422 P.3d 1116, 1124 (2018) (in that case, the Individual Defendants were actually seeking to enforce the articles to cheat Donna Taylor out of the funds owed to her, but they intentionally disregard the articles for the much more egregious violations at issue in the instant case); *Shipyard Village Council of Co-Owners, Inc.*, 760 S.E. 2d 121, 130 (2014) ("[A] corporation may exercise only those powers which are granted to it by law, by its charter or articles of incorporation, and by any bylaws made pursuant thereto; acts beyond the scope of the powers so granted are ultra vires."); I.C. § 30-29-304(b)(1) & (c) (permitting a shareholder may directly challenge ultra vires acts). Notably, because much of the defendants' misconduct were also ultra vires acts, the dismissal of Miesen's derivative claims largely has no material impact on his damages in this case.

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 11

¶¶135-42, 229-8 at 9-86, 439-1, 439-2, 1131-10, 1260-5.) After the loan was not paid, GemCap filed suit against John Taylor, the CropUSA Defendants, the AIA Entities and others, alleging various claims strikingly similar to some of Miesen's regarding improper use of corporate funds. (Dkts. 211 ¶¶144-46, 440-1, 440-2.) Then, John Taylor had the AIA Entities settle with GemCap for the payment of over $12 million and stipulated to entry of a judgment against the AIA Entities, which such settlement required the AIA Entities to transfer and sell their properties, including AIA Services' former headquarters which had a "replacement value exceeding $7,000,000," for the benefit of GemCap. (Dkts. 211 ¶¶147-56, 128 at 21-48, 440-6, 440-7.) These transactions were all concealed from Miesen and other shareholders and were ultra vires for violating Section 4.2.9(c) of AIA Services' amended articles of incorporation (among other restrictions in the articles and the bylaws).[16] (Dkts. 211 ¶¶141, 148 & 153, 1131-10, 1260-5.)

Beyond the devastation inflicted by the millions of dollars in damages from these ultra vires transactions for which Miesen is seeking justice, the Individual Defendants' new misconduct led to well over three years more of delays traced directly to the GemCap related misconduct—a defendant who should never have been a defendant but for the defendants' post-filing misconduct.

After Miesen discovered the GemCap misconduct, his efforts to inspect records were denied (a violation of criminal code, I.C. § 18-1907) and he was unable to obtain records from the AIA Entities, Miesen was forced to submit more derivative demands, wait at least 90 days, and then move to amend his complaint to add GemCap and others as new defendants and assert new direct and derivative claims based on the GemCap related misconduct. (Dkts. 128 ¶¶7, 9 & 13, 128 at 49-57, 180, 199, 1260 ¶7, 1260-7.) On April 21, 2017, the motion to amend was granted

---

[16] Notably, two prior attorneys in this case conceded in a different case that the guarantees were "prohibited indebtedness under subsection 4.2.9(c)." (Dkt. 153-3 at 8.)

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 12

and GemCap became a defendant days later. (Dkts. 210, 211.) There were more delays after GemCap filed a motion to dismiss and a third-party complaint against two law firms, which led to more motion practice that delayed this case for over another year. (E.g., Dkts. 220, 230, 263, 288, 303, 304, 322, 391.) Also, one of those law firms declined to consent to Magistrate Judge Dale, which led to this case being reassigned to Judge Nye, which would lead to even more delays because another layer of objections was added to Judge Dale's decisions. (E.g., Dkts. 305, 1197.) Thus, the defendants caused this case to be delayed for over two more years.[17]

Years later, after Miesen agreed to settle with GemCap when he ascertained that GemCap was judgment proof, Miesen entered into a settlement agreement with GemCap and it curiously filed for Chapter 7 bankruptcy one day after Miesen filed his reply for the motion to approve the settlement. (Dkts. 1240, 1255, 1272-6.) Months later, Miesen learned that this Court had stayed this entire case as a result of GemCap's bankruptcy filing. (Dkt. 1272-2.) Then, Miesen, at substantial cost, sought an order for relief from stay from the bankruptcy court. (Dkt. 1272-12.) Miesen was successful in this effort and this Court is now allowed to proceed with the dismissal of GemCap. (Dkt. 1276.) Miesen also filed a motion in this Court to lift the bankruptcy stay. (Dkt. 1272.) All told, GemCap's bankruptcy delayed this case for over another year—and the defendants did nothing to attempt to lift the bankruptcy stay or persuade this Court that it didn't apply. (Dkt. 1274.) They wanted the delay.

Accordingly, this case was delayed by over three years based on the Individual Defendants' *new* GemCap related misconduct *after* this case was filed. There should have never been any transactions between the AIA Entities and GemCap—everything is tied back to the Individual

---

[17] It is impossible to ascertain the delays caused by discovery motions and other motion practice tied to the GemCap related misconduct. (E.g., Dkts. 141, 540, 845, 982, 1012, 1197.) However, those delays were all caused by and tied directly to the defendants' misconduct.

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 13

**19-ER-4951**

Defendants' misconduct. The above are only a few examples of the post-filing misconduct.

**G.  The Defendants Have Delayed this Case by Improperly Controlling the AIA Entities.**

The Individual Defendants have delayed this case by improperly controlling the AIA Entities and their attorneys. The Individual Defendants have repeatedly had the AIA Entities improperly assert defenses for them and side with them in motions and briefing—even in the face of the indisputable egregious ultra vires actions discussed above. (E.g., Dkts. 366, 1198, 1209, 1211, 1221-1222, 1239, 1246, 1251-1252; Bond Decl. ¶8; *compare* Dkt. 211 *with* Dkts. 366 and 215.) The control over the AIA Entities' attorneys has also led to delays caused by withdrawing attorneys, the untimely appearance of new attorneys, and the thwarting of discovery. (E.g., Dkts. 109, 110, 292-1, 371, 385, 515, 557, 691, 1059, 1180, 1184,[18] 1187; Bond Decl. ¶8.)

Significantly, the AIA Entities were required to have independent counsel throughout this case and remain neutral with respect to Miesen's derivative claims—but the opposite has occurred throughout this case.[19] (*Id.*; e.g., Dkts. 10, 1214-2 ¶¶6-8, 1242-2 ¶¶30, 33 & 43-44, 1260-15 ¶¶7, 9 & 13; Bond Decl. ¶8.) *See, e.g., In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1189-90 (N.D. Cal. 1993) (a corporation must have independent counsel with no ties to any of the parties and a court can appoint counsel); *Krakow Bus. Park v. Locke Lord, LLP*, 135 F. Supp. 3d 770, 791-792 (N.D. Ill. 2015) ("In a shareholder's derivative suit, the corporation generally cannot participate in the merits of the defense…The attorneys' role…was to remain neutral."); I.R.P.C. 1.13.

Presently, the Individual Defendants (through John Taylor) have been controlling the AIA

---

[18] Mr. Trout was billing John Taylor for work over six months prior to appearing as counsel for the AIA Entities. (Dtk. 1184; Bond Decl. Ex. B.) No explanation was provided for this delay.

[19] Notably, the AIA Entities vehemently opposed Reed Taylor's request for advancement of costs when he followed the law and sought court approval. (Dkt. 1198.) But the AIA Entities blindly accepted the inaccurate and improper amount of fees and costs that the Individual Defendants allegedly incurred—when their advancement was never authorized by shareholders or this Court. (Dkts. 1260-1 ¶5, 1260-3, 1260-4, 1260-15 ¶¶5-7.) The AIA Entities have never even remotely proceeded in an independent manner in this case.

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 14

**19-ER-4952**

Entities' newest attorney, Kim Trout. (Dkt. 1184.) However, Mr. Trout previously represented John Taylor and CropUSA in a related lawsuit against GemCap seeking to enforce the same ultra vires settlement agreement that Miesen was challenging here, and Mr. Trout's redacted billing records confirm, what his filings show, that "Mr. John Taylor" is his client. (Bond Decl. ¶¶7-8, Ex. A-B; Dkt. 211 ¶¶135-56.) Under the direction of John Taylor, the AIA Entities have consistently taken positions that are improperly protecting the Individual Defendants to the detriment of the AIA Entities and their innocent stakeholders. (E.g., Dkts. 1198, 1239, 1242-2 ¶¶30, 33 & 43-44, 1260-15 ¶¶7, 9 & 13, 1246, 1254, 1264, 1274; Bond Decl. ¶8.) Proper corporate governance was never even followed for retaining Mr. Trout or directing him. (*See* Section II(E).)

Thus, this case has also been delayed and unfairly litigated because the Individual Defendants have controlled the AIA Entities and their attorneys since this case was filed.

**H. The Individual Defendants Delayed this Case by Waiting Almost Seven Years to Assert Their Third-Party Complaint against Reed Taylor, which They Did to Delay this Case.**

On May 22, 2017 (almost seven years after this case was filed), the Individual Defendants filed their so-called Third-Party Complaint against Reed Taylor, asserting contribution claims based on alleged facts that were known before the original complaint was filed in 2010. (Dkt. 218.) No explanation was provided for this almost seven-year delay. (*Id*.) These third-party claims delayed this case, including through motion practice and discovery which should have never needed to take place. (E.g., Dkts. 253, 275, 276, 278, 349, 358, 922, 1123.)

Indeed, the true reason for the third-party complaint was later revealed in a July 26, 2017, billing entry: "'[clients] have belief that case can be resolved by recusing [attorney]…'" (Dkt. 1099-1 at 428 n. 1549.) Following that billing entry, the defendants moved to disqualify Miesen's counsel based exclusively on the third-party complaint because he appeared as Reed Taylor's counsel, which was denied. (Dkts. 276, 358.) The meritless third-party complaint and its true

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 15

**19-ER-4953**

purpose has been confirmed yet again in Reed Taylor's pending motion for partial summary judgment to dismiss the Individual Defendants' third-party claims—because they have no evidence to support any wrongdoing by Reed Taylor.[20] (Dkt. 1073.)

Thus, the Individual Defendant's belated third-party complaint was filed to delay this case and as an improper litigation tactic seeking to end this case by disqualifying Miesen's counsel.

### III.   ANALYSIS AND ARGUMENTS

**A. The Legal Standards.**

Delays "conflict with one of the basic principles [and well-known sayings] of our legal system—justice delayed is justice denied." *Dietrich*, 14 F.4th at 1095. "A lesser known saying, known to be attributable to prominent defense lawyers…is that 'Justice delayed is justice [for the defendants].'" *Grewal v. Jammu*, 191 Cal. App. 4th 977, 999, 119 Cal. Rptr. 3d 835, 852 (2011).

Delays also "create a significant risk that…witnesses could either pass away or have their memories deteriorate," *Newirth v. Aegis Senior Communities LLC*, Case No. 16-cv-03991-JSW, 2017 WL 11551313, at *3 (N.D. Cal. Nov. 21, 2017), and "evidence will become stale." *U.S. Legal Support, Inc. v. Hofioni*, No. 2:13-cv-01770-MCE-AC, 2016 WL 615620, at *2 (E.D. Cal. Feb. 16, 2016). "Such an outcome would either frustrate Plaintiffs' ability to litigate this action or, more fundamentally, deny them the opportunity to see their claims adjudicated." *Newirth*, 2017 WL 11551313, at *3. Delays prejudice plaintiffs in other ways, too. Carrie E. Johnson, Comment, *Rocket Dockets: Reducing Delay in Federal Civil Litigation*, 85 Cal. L. Rev. 225, 230-32 (1997).

To avoid and help remedy the consequences of delays, the Federal Rules of Civil Procedure

---

[20] To prevail, the Individual Defendants would need to have a jury allocate the percentage of fault among each of them and Reed Taylor. Yet the Individual Defendants have always shared the same attorney. (E.g., Dkts. 218 at 1, 249, 545.) It would be impossible for Mr. Glynn to argue before the jury the percentages of fault that should be allocated to each of his clients—there was never an intention to present the third-party claims to a jury—they were improper litigation tactics.

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 16

**19-ER-4954**

"should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, and those Rules authorize, *inter alia*, "expediting disposition of the action." Fed. R. Civ. P. 16(a)(1); Dist. Idaho Loc. Civ. R. 16.2. ("The Court may also conduct periodic status conferences to monitor how the case is proceeding to trial.").

In addition, "[a] district court has inherent power to control its own docket and calendar." *Eagle Rock Timber, Inc. v. Liberty Mut. Ins. Co.*, Case No. 4:21-cv-00263-DCN, 2022 WL 1689304, at *3 (D. Idaho May 25, 2022); *Fletcher v. Idaho Dep't of Corr.*, Case No. 1:18-cv-00267-BLW, 2020 WL 7082690, at *1 (D. Idaho Dec. 3, 2020) (a district court has "broad discretion to control its docket in a manner consistent with its 'overriding obligation to construe and administer the procedural rules so as to secure the just, speedy, and inexpensive determination of every action and proceeding.'" (internal quotation marks omitted)); *Kephart v. National Union Fire Ins. Co. of Pittsburgh, PA*, No. CV 06 97 BLG CSO, 2007 WL 1991539, at *1 n. 1 (D. Montana July 3, 2007) ("District Courts have the inherent authority to manage their dockets. Subsumed in this authority is the ability to render expedited rulings.").

Numerous courts have addressed the need to expedite a delayed case. *See, e.g.*, *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, No. EDCV 20-174 JGB (SPx), 2020 WL 5775168, at *2 (C.D. Cal. July 17, 2020) (the "tortoise has dawdled on for seven years and promises to continue at its steady, ponderous pace. Similar delay in this case would work to Defendants' advantage at Plaintiff's expense."); *Bailon v. Landstar Ranger, Inc.*, Civil Action No. 3:16-CV-1022-L, 2019 WL 4741795, at *7 (N.D. Tex. 2019) ("This case is over three years old, and it needs to be resolved expeditiously by trial or settlement between the parties."); *Adams v. United States*, Civ. No. 03–0049–E–BLW, 2009 WL 3444486, at *1 (D. Idaho Oct. 22, 2009) ("the

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 17

need to expedite the resolution of this case—now 6 years old—is so acute…"); *Jones*, 954 F. Supp. at 195 n. 7 ("This case is old and deserves to be given expedited consideration.").

**B. This Court Should Expedite the Adjudication of this Case Because Justice Has Been *Both* Delayed and Denied for Over 13 Years and the Circumstances Warrant Expediting.**

Miesen respectfully asserts that the facts and circumstances of this case warrant this Court to expedite the adjudication of this case and to hold a status conference to set a trial date and to further assist the parties in expediting this case.  After over thirteen years, justice requires it.

As discussed in Sections I and III(A), delays "conflict with one of the basic principles [and well-known sayings] of our legal system—justice delayed is justice denied." *Dietrich*, 14 F.4th at 1095. And, when a case is delayed, courts have the inherent power and procedural tools to expedite the adjudication of a case. *See, e.g., Eagle Rock Timber, Inc.*, 2022 WL 1689304, at *3 ("A district court has inherent power to control its own docket and calendar."); Fed. R. Civ. P. 1 (The Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."); Fed. R. Civ. P. 16(a)(1) ("expediting disposition of the action."); Dist. Idaho Loc. Civ. R. 16.2. ("The Court may also conduct periodic status conferences to monitor how the case is proceeding to trial.").

Here, Miesen respectfully requests that this Court expedite the adjudication of this now over thirteen-year-old case because justice has been *both* delayed and denied for over thirteen years. While Miesen is sympathetic and mindful of this Court's heavy workload,[21] Miesen respectfully asserts that this case badly needs to be expedited, especially when the unlawful conduct that led to Miesen filing this case has continued unabated since 2010—the defendants have been rewarded for the delays and they believe that they are above the law.

---

[21] *E.g., Elosu v. Middlefork Ranch Inc.*, Case No. 1:19-cv-00267-DCN, 2023 WL 7701737, at *7 n. 9 (D. Idaho Nov. 15, 2023) ("Owing to the judicial shortage in the District of Idaho, this case was reassigned to Judge Robert J. Bryan…shortly after it was filed.").

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 18

First, this lawsuit has been pending for over thirteen years (since August 2010) with no trial date scheduled. (Dkt. 1; Bond Decl. ¶2.) For this reason alone, in Judge Lodge's words, "the need to expedite the resolution of this case—now [over 13] years old—is so acute *Storfer v. Dwelle*, No. 3:12–CV–00496–EJL, 2013 WL 3990762 at \*4 (D. Idaho Aug. 2, 2013).

Second, most importantly, since this lawsuit was filed, three former parties (Donna Taylor, JoLee Duclos and Kent Petersen) died and at least three other witnesses (Ray Heilman, Kent Gray and Bruce Sweeney) have died. (Bond Decl. ¶¶3-4.) In addition, at least nine other parties and witnesses are aging and range in age from 69-years-old to 91-years-old.[22] (*Id*. ¶¶5-6.) This case needs to be expedited to allow the best testimony possible and before others may pass away.

Finally, as explained in Sections II(C)-(H) above (which are incorporated by reference herein), the defendants' misconduct delayed the filing of this case for over two years and further delayed the fair adjudication of this case by over eight and one-half years—over ten and one-half years. (*See also* Bond Decl. ¶¶2, 7-8, Ex. A-B.)

Thus, this Court should expedite this case and hold a status conference to schedule a trial and assist in expediting this case. For this Court's convenience, the following motions/issues are pending and in need of adjudication (listed in chronological order):

| Description of Motion or Filing | Dkt. |
|---|---|
| Defendants James Beck, Michael Cashman, Connie Henderson, R. John Taylor, CropUSA Insurance Agency, Inc., and CropUSA Insurance Services, LLC Motion for Leave to File Overlength Memorandum and Statement of Material Facts in Support of Motion for Summary Judgment (filed on 1/29/21) | 1064 |
| Defendants James Beck, Michael Cashman, Connie Henderson, R. John Taylor, CropUSA Insurance Agency, Inc., and CropUSA Insurance Services, LLC Motion for Summary Judgment (filed on 1/29/21) | 1071 |
| Reed Taylor's Motion for Summary Judgment Dismissing Third-Party Complaint and Associated Claim by Plaintiff Pursuant to Fed. R. Civ. P. 56 and Loc. Civ. R. 7.1(b)(1) (filed on 1/29/21) | 1073 |

---

[22] Richard McDermott, now 83-years-old, is planning to retire when he reaches 85 years old. (Bond Dec. ¶6.) This is an independent reason for this case to be expedited to a final judgment.

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 19

| Description of Motion or Filing | Dkt. |
|---|---|
| Reed Taylor's Motion for Partial Summary Judgment against R. John Taylor for Breach of Fiduciary Duties Pursuant to Fed. R. Civ. P. 56 (filed on 1/29/21) | 1076 |
| Additional Briefing on Motion for Judgment on the Pleadings (Dkt. 1238):<br>• Joint Memorandum of Individual Defendants, CropUSA Entities, and AIA Entities Regarding Derivative Versus Direct Claims (filed on 8/11/22)<br>• Miesen's Supplemental Response to Defendants' Motion to Dismiss (which included a request for trial to be scheduled and for the parties to attend a judicial settlement conference) (filed on 9/1/22) | 1239<br><br>1248 |
| Miesen's Motion to Approve the Terms of the Settlement Agreement with the Defendant GemCap Lending I, LLC (filed on 8/11/22)[23] | 1240 |
| Miesen's Motion to Approve the Payment of Attorneys' Fees and Costs (filed on 8/18/22) | 1242 |
| Miesen's Reply in Support of His Motion to Approve the Terms of the Settlement Agreement with the Defendant GemCap Lending I, LLC (including the issue of John Taylor not retaining independent counsel for the AIA Entities as required for derivative actions) (filed on 9/15/22) | 1255 |
| Miesen's Reply in Support of His Motion to Approve the Payment of Attorneys' Fees and Costs (including the issue of Miesen's request for a live hearing and testimony to address John Taylor's perjured testimony, Dkt. 1260 at 21) (filed on 9/22/22) | 1260 at 21 |
| Miesen's Motion for Permission to File an Overlength Reply (filed on 9/22/22) | 1261 |
| Miesen's Motion for Permission to File a Sur-Reply to the New Arguments Raised in the Joint Reply Filed Under Docket Number 1254 (filed on 9/26/22) | 1262 |
| AIA Entities' Motion to Strike (filed on 10/10/22) | 1264 |
| Miesen's Motion re: the Inapplicability of the Automatic Bankruptcy Stay Pertaining to the Defendant GCLI, LLC f/k/a GemCap Lending I, LLC (including the issues in the Pertinent Facts and Procedural History, e.g., that John Taylor failed to retain independent counsel for the AIA Entities as required in derivative actions and other noted objections). *E.g.*, Dkt. 1272-1 at 7 n. 3, 9 & n. 4, 11 & n. 7-9) (filed on 6/9/23) | 1272 |
| Miesen's Notice Regarding the Bankruptcy Court's Order and Ruling Granting Miesen's Motion for Relief from the Automatic Stay (Dkts. 1272, 1240) (which includes a request for judicial notice) (filed on 8/10/23) | 1276 |
| Reed Taylor's Request for Status Conference to Establish Briefing Schedule for Motion (Dkt. 1076) (filed on 11/16/23) | 1281 |

## IV.   CONCLUSION

This Court should grant Miesen's motion, order this case to be expedited, and hold a scheduling conference to facilitate expediting the adjudication of this case (including setting a trial date). If this Court is unable to do so, Miesen respectfully requests this Court assign this case to a different judge who has the time and resources to expedite this case.

---

[23] Other GemCap related motions were omitted under the assumption that it will be dismissed.

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 20

19-ER-4958

DATED:  This 8th day of February 2024.

RODERICK BOND LAW OFFICE, PLLC

By: ___*/s/ Roderick C. Bond*_____
     Roderick C. Bond
     Attorney for the Plaintiff Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By: ___*/s/ Andrew Schwam*_____
     Andrew Schwam
     Attorney for the Plaintiff Dale L. Miesen

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th day of February 2024, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:     jat@elamburke.com
Loren C. Ipsen:     lci@elamburke.com
Joyce A. Hemmer:     jah@elamburke.com
Bradley S. Keller:     bkeller@byrneskeller.com
Alyson A. Foster:   afoster@bdfcounsel.com
Tyler S. Waite:        twaite@campbell-bissell.com
Michael S. Bissell:      mbissell@campbell-bissell.com
Daniel L. Glynn:     dglynn@idalaw.com
Andrew Schwam:   amschwam@turbonet.com
Kim J Trout:     ktrout@trout-law.com
Markus William Louvier:     mlouvier@ecl-law.com
James B. King:        jking@ecl-law.com

___*/s/ Roderick C. Bond*_____
     Roderick C. Bond

MEMO ISO MIESEN'S MOTION TO EXPEDITE ADJUDICATION OF CASE - 21

**19-ER-4959**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>                Plaintiff,<br><br>        **v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GCLI, LLC, f/k/a GEMCAP LENDING I, LLC, a Delaware limited liability company;<br><br>              Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>DECLARATION OF RODERICK C. BOND |

DECLARATION OF RODERICK C. BOND - i

**19-ER-4960**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

       Defendants/Third-Party Plaintiffs,

     **v.**

REED TAYLOR, an individual,

       Third-Party Defendant.

REED TAYLOR, an individual,

       Third-Party Defendant/ Counterclaimant,

     **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

       Counterdefendants.

DECLARATION OF RODERICK C. BOND - ii

I, Roderick C. Bond, declare:

1.      I am one of the attorneys for the Plaintiff Dale L. Miesen ("Miesen") in this lawsuit. I am a citizen of the United States, over the age of eighteen, and competent to testify in court, including as to the matters in this Declaration. This Declaration and the attached documents are based upon my personal knowledge.

2.      We are respectfully requesting that this Court expedite the adjudication of this case and I am submitting this declaration in support of that request. In 2012, I first appeared as counsel for Donna Taylor. Later, in 2016, after Donna Taylor successfully obtained a lift of the stay sought and obtained by the defendants after the Ninth Circuit reversed Judge Boyle's decisions, I was also substituted in as counsel for Miesen. Since first appearing in 2012 and to this day, neither me nor my clients (Miesen and Donna Taylor) have ever engaged in any actions or strategies to intentionally delay this lawsuit. In fact, we consistently sought to adjudicate this case on the merits. To the contrary, the defendants have sought to delay this case, which has prejudiced Miesen. I will address some of the prejudice below.

3.      Since this lawsuit was filed in 2010, three different prior parties to this lawsuit have passed away—Kent Petersen in 2014, JoLee Duclos in 2017, and Donna Taylor in 2023. Based on my vast knowledge of matters at issue in this lawsuit, the foregoing parties were material witnesses as to various facts and events at issue in this lawsuit. Notably, Donna Taylor was one of the nicest ladies that I have had the opportunity to represent over the years. She did not deserve the stress and intentional delay in payment caused by the Individual Defendants' conduct. *See, e.g., Taylor v. Taylor*, 163 Idaho 910, 422 P.3d 1116 (2018). Indeed, John Taylor recently confirmed that more money had been spent litigating against Donna Taylor ($597,137.25), Dtk. 1223 at 9, then simply paying her the $416,510 owed at the time that she filed suit. (Dkt. 1260-14 at 5.) This same type

DECLARATION OF RODERICK C. BOND - 1

of irrational and illogical behavior has plagued and driven this case, too. For example, John Taylor recently testified (albeit inconsistently and with his prior testimony on the subject) that AIA Services had allegedly incurred $786,961.01 in attorneys' fees and costs litigating this case through June 15, 2022, Dkt. 1223 at 9, yet the Individual Defendants and AIA Entities have never offered a penny to Miesen or the other stakeholders to resolve this case. Notably, those $786,961.01 in defense costs (or the correct lower amount since John Taylor recently changed his testimony), together with the $1.4 million Miesen obtained from the Hawley Troxell Defendants, could have been used to try to settle this case years ago. But the Individual Defendants and the entities that they control, the AIA Entities and CropUSA Defendants, have never offered a penny to Miesen to settle this case for their extensive misconduct.

4.      Since this lawsuit was filed in 2010, shareholders of AIA Services have also passed away since this lawsuit was filed, including, without limitation, Ray Heilman, Kent Gray, Bruce Sweeney, and Donna Taylor (the same Donna Taylor noted above). Based on my vast knowledge of matters at issue in this lawsuit, the foregoing shareholders also had knowledge of material facts and events at issue in this lawsuit.

5.      Since this lawsuit was filed in 2010 and with all due respect to the persons discussed, the following parties and some material witnesses in this lawsuit are becoming older adults (listed in order of oldest to youngest with his/her estimated age): Paul Durant (91-years-old),[1] the third-party defendant/counterclaimant Reed Taylor (86-years-old), Professor Richard

---

[1] Mr. Durant is a shareholder of AIA Services and a long-term former executive of AIA Services and its subsidiaries. He was also one of the persons Donna Taylor appointed to the board of directors of AIA Services, which was never honored by the defendants as mandated by AIA Services' amended articles of incorporation. Donna Taylor appointed Mr. Durant in 2012 as a director and yet he has never been permitted to attend a single board meeting or be involved in any board action.

DECLARATION OF RODERICK C. BOND - 2

**19-ER-4963**

McDermott (83-years-old), the defendant James Beck (80-years-old), the defendant R. John Taylor (73-years-old), the defendant Michael W. Cashman, Sr. (73-years-old), the plaintiff Miesen (70-years-old), and the defendant Connie Taylor Henderson (69-years-old). Again, based on my vast knowledge of matters at issue in this lawsuit, the foregoing persons also have knowledge of material facts and events at issue in this lawsuit. The above are estimated ages of the above parties and/or material witnesses based on information that I could quickly locate. It is possible that some of the people listed above may be older, or younger, than the estimated years indicated above.

6.      There is another issue pertaining to Professor Richard McDermott (listed as one of the aging witnesses above) that provides another reason to expedite this case. One of the other issues that necessitated this motion is that Professor Richard McDermott, Miesen's key expert witness, advised me this month that he intends on retiring when he reaches 85-years-old.[2]

7.      Attached as **Exhibit A** is a true and correct copy of the Complaint filed in *CropUSA Insurance Agency   R. John Taylor v. GemCap Lening I, LLC*, which was filed on January 19, 2021, in U.S. District Court, Idaho, Case No. 3:21-cv-00034-CWD, together with the Notice of Errata attached to the complaint. I obtained these documents through PACER.

8.      Attached as **Exhibit B** is a true and correct copy of Kim Trout's billing records that were produced by Daniel Glynn. Notably, the billing records show that Mr. Trout was billing for work over six months before he appeared as counsel in this case. With all due respect to Mr. Trout (especially since it appears that he is being directed by his client John Taylor), Mr. Trout has never acted as independent counsel for the AIA Entities in this case with respect to anything that I have been able to observe.

---

[2] Professor McDermott's age was one of the other reasons Miesen had previously moved this Court to permit an interlocutory appeal of this Court's two orders excluding McDermott as an expert witness in this matter.

DECLARATION OF RODERICK C. BOND - 3

**19-ER-4964**

a.      Mr. Trout has never contacted me asking for information regarding the wide-spread misconduct or to otherwise act as though he is independently investigating any matters regarding this case. The AIA Entities have never dealt with Miesen fairly in this case or in any independent manner, including, without limitation, as to discovery and, in fact, they have thwarted discovery and refused to voluntarily disclose the details of the wide-spread misconduct at issue in this case.

b.      Based on my interaction with Mr. Trout and the filings that I have reviewed of his (including jointly submitting filings with Mr. Glynn), it appears that John Taylor is directing Mr. Trout to represent the interests of the Individual Defendants and not to independently represent the interests of the AIA Entities. I have always believed that the day the AIA Entities truly has independent counsel is the day that this lawsuit would likely settle or, at a minimum, be substantially narrowed because independent counsel would not be proceeding in a manner that violates AIA Services' amended articles of incorporation and the AIA Entities' bylaws.

c.      I have reached out to Mr. Trout asking him to amend the AIA Entities' answers to admit to indisputable facts, including, the various ultra vires actions taken in violation of AIA Services' amended articles of incorporation and the AIA Entities' bylaws. He has refused. Instead, Mr. Trout has adopted and maintains the prior answers filed for the AIA Entities, which deny basic and fundamental facts.

d.      Mr. Trout has not directly produced a single document or responded to a single interrogatory or request for production, despite repeated requests. More recently, Mr. Trout refuses to supplement discovery and comply with at least one order to compel because he alleges that this case has been dismissed, when there is no such order dismissing

DECLARATION OF RODERICK C. BOND - 4

this case. I advised Mr. Trout that it was his burden to obtain a protective order and obtain relief from any order to compel, but he has taken no action. Despite requests to Mr. Trout, no further billing records and billing records that are not improperly fully redacted have been produced nor has he produced any board meeting minutes, board resolutions, financial documents or any other document pertaining to the AIA Entities since he appeared as their counsel in this case. Mr. Trout has not prepared and signed a single supplement to discovery responses since he appeared as counsel over two years ago and despite the fact that the AIA Entities remain in business and new information continues to be generated. Finally, Mr. Trout has refused to ensure that prior interrogatories and requests for production propounded upon the AIA Entities were provided to Miesen.

e.      I have reached out to Mr. Trout on numerous occasions regarding this case and he generally does not respond and, when he does, his responses are generally extremely belated ones. I have extended offers to Mr. Trout to discuss aspects of this case and provide the documents supporting Miesen's verified allegations, but he has declined those offers. He has consistently supported and advocated the positions taken by the Individual Defendants. For example, the Individual Defendants and AIA Entities vehemently opposed advancing Reed Taylor's defense costs when he sought and obtained approval from this Court as required, but the Individual Defendants have controlled the AIA Entities and had them advance their defense costs without shareholder or this Court's approval.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

_____February____,_____          ___/s/ Roderick C. Bond_____
Executed on the Above Date                  Roderick C. Bond

DECLARATION OF RODERICK C. BOND - 5

**19-ER-4966**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th day of February 2024, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:     jat@elamburke.com
Loren C. Ipsen:     lci@elamburke.com
Joyce A. Hemmer:     jah@elamburke.com
Bradley S. Keller:     bkeller@byrneskeller.com
Alyson A. Foster:     afoster@bdfcounsel.com
Tyler S. Waite:     twaite@campbell-bissell.com
Michael S. Bissell:     mbissell@campbell-bissell.com
Daniel L. Glynn:     dglynn@idalaw.com
Andrew Schwam:     amschwam@turbonet.com
Kim J Trout:     ktrout@trout-law.com
Markus William Louvier:     mlouvier@ecl-law.com
James B. King:     jking@ecl-law.com


                                        /s/ Roderick C. Bond
                                        Roderick C. Bond

DECLARATION OF RODERICK C. BOND - 6

**19-ER-4967**

**KIM J. TROUT, ISB #2468**
TROUT LAW, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID 83703
Telephone (208) 577-5755
Facsimile (208) 577-5756
Email ktrout@trout-law.com

Attorney for the Plaintiff.

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| CROPUSA INSURANCE AGENCY, INC, an Idaho Corporation; R. JOHN TAYLOR, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> GEMCAP LENDING I, LLC, a Delaware Limited Liability Company, <br><br> Defendant. | **COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> Case No. 1:21-cv-34 |

Comes now Plaintiffs Crop USA Insurance Services, LLC and R. John Taylor, which parties plead and allege as follows.

**PARTIES**

1. Plaintiff Crop USA Insurance Services, LLC ("Crop") is an Idaho Limited Liability Company with its principal place of business in the State of Idaho.

2. Plaintiff R. John Taylor, ("Taylor") is an individual residing in the State of Idaho.

3. Defendant GemCap Lending I, LLC ("GemCap") is a Delaware Limited Liability Company with its principal place of business in Malibu, California.[1]

---

[1] GemCap is named as the party Defendant to these proceedings as it the identified party in the agreement referenced herein. On information and belief, GemCap may have assigned all its interests in the agreement referenced, as well as all related claims and defenses, to MidCap Funding XVIII Trust, a Delaware Statutory Trust ("MidCap"). Consistent with Rule 11 and 15, Plaintiffs reserve the right to amend this pleading to include MidCap Funding XVIII Trust if such

**Complaint and Demand for Jury Trial | Page 1**
**DLM - 119603**

Exhibit - A, p. 1
**19-ER-4968**

## JURISDICTION AND VENUE

4.     This Court has jurisdiction under 28 U.S.C. §1332. The amount in controversy, is upon information an belief, greater than the sum of twelve million dollars ($12,000,000), which sum exceeds the sum of $75,000.00, and the parties and/or entities herein are citizens of different states.

5.     Venue is proper in the Idaho Federal District Court under 28 U.S.C. §1391 as the primary judicial district in which a material portion of the conduct has occurred.

## STATEMENT OF FACTS

6.     On or about July 20, 2013 GemCap initiated legal action against Crop and Taylor in the United States District Court, Central District of California, arising from a lending transaction which occurred by way of GemCap doing business in the State of Idaho.

7.     On or about September 15, 2014 the parties reached a resolution, in part, of the foregoing litigation by way of a Settlement Agreement and Release of Claims ("Agreement") executed by the parties.

8.     The Agreement held that Plaintiffs would pay GemCap millions of dollars in exchange for a release of GemCap's claims.

9.     The Agreement also held that Plaintiffs would assign certain assets to GemCap, to "ensure the prompt and effective payment" of the settlement amount.

10.     Finally, each of Plaintiffs' asset assignments would constitute separate agreements.

11.     Under the Agreement, Crop and Taylor Assigned certain claims of Crop and Taylor against CGB Diversified Services, Inc, dba Diversified Crop Insurance Services and/or any of their Affiliates (hereinafter "Diversified")  to allow GemCap to collect sums from Diversified in payment of sums due to GemCap.

---

information and belief is revealed to have basis in fact, and by such currently unknown transfers, MidCap may be the real defendant party in interest.

**Complaint and Demand for Jury Trial | Page 2**
**DLM - 119604**

12. The parties executed a stand-alone Assignment which governed the assignment of the Diversified claims to GemCap.

13. The parties attached a schedule to the Assignment, showing that Plaintiffs were transferring at least more than double the settlement amount in Diversified claims to GemCap.

14. Plaintiffs believe that the Assignment of these claims was the most immediate means to assure effective payment of the settlement amount.

15. Plaintiffs had assurances from GemCap that it would pursue the Diversified claims as a means to a assure effective payment of the settlement amount.

16. Plaintiffs would not have entered into the Agreement and Assignment without an express assurance that GemCap would pursue the Diversified claims as a means to assure effective payment of the settlement amount. Rather, Plaintiffs would have continued to pursue the claims on their own and/or in connection with the other parties to the Agreement.

17. GemCap soon initiated claims against Diversified in California pursuant to the Assignment and the Settlement. However, during its pending litigation, GemCap allowed Diversified to evade and escape those claims by failing to effectively prosecute the claims, and thereafter having the Court dismiss said claims, thereby destroying the claims as a means of paying the settlement amount.

18. GemCap afterward sought to bring the same claims against Diversified in the State of Illinois, which claims were dismissed based upon the dismissal of the California claims against Diversified and upon the doctrine of *res judicata*. Attached hereto as **Exhibit 1** is a true and correct copy of Circuit Judge Christopher E. Reif's Order dated August 3, 2020.

19. On October 8, 2019, GemCap registered foreign judgments in the United States District Court for the District of Idaho, but did not execute on the same pursuant to the Agreement.

**Complaint and Demand for Jury Trial | Page 3**
DLM - 119605

20. GemCap has now declared that it has abandoned all collection actions against Diversified and has stated its intention to now collect against Crop and Taylor.

21. GemCap has wholly deprived Plaintiffs of the benefit of the Diversified claims as a means to assure effective payment of the settlement amount.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT AND BREACH OF IMPLIED COVENANTS

22. Crop and Taylor hereby incorporate the foregoing paragraphs 1-21 herein as though fully set forth.

23. Plaintiffs assigned their Diversified claims to GemCap as a means to assure effective payment of the settlement amount.

24. GemCap, through its failure to effectively prosecute the Diversified claims, has materially breached the parties' Agreement, i.e., GemCap has completely destroyed the value of the Diversified claims as a means to assure effective payment of the settlement amount.

25. GemCap has also breached its covenant of good faith and fair dealing toward Plaintiffs in terms of using the Diversified claims to assure effective payment of the settlement amount

26. GemCap has proximately caused damages to Plaintiffs in relation to their ability to satisfy the minimum settlement amount  in amounts to be proven at trial.

## SECOND CAUSE OF ACTION
## DECLARATORY JUDGMENT

27. Crop and Taylor hereby incorporate the foregoing paragraphs 1-26 herein as though fully set forth.

28. The Court should declare that GemCap has materially breached the Agreement and that Plaintiffs are relieved of any contractual obligation or duty to pay the minimum settlement amount to GemCap.

**Complaint and Demand for Jury Trial | Page 4**
**DLM - 119606**

**Exhibit - A, p. 4**
**19-ER-4971**

29.     The Court should declare that GemCap has failed to mitigate its damages and is no longer entitled to collect the "Minimum Settlement Amount" from Plaintiffs.

30.     Crop and Taylor are entitled to a declaratory judgment in these matters pursuant to 28 U.S.C. § 2201 and Idaho Code Section 10-1201, and to other such declaratory relief as may be appropriate under the circumstances, to be proven at trial.

<b><u>REQUEST FOR ATTORNEYS' FEES</u></b>

Crop and Taylor have been required to retain legal counsel to prosecute these claims, and have agreed to pay said attorneys a reasonable attorney's fee. The sum of $10,000.00 is a reasonable attorney's fee should this matter be uncontested, and such other and additional sums as the Court deems reasonable should this matter be contested. Crop and Taylor are entitled to an award of attorney's fees under Idaho Code Sections 12-120(3), 12-121, pursuant to the Federal Rules of Civil Procedure Rule 54, and pursuant to the Agreement.

<b><u>DEMAND FOR JURY TRIAL</u></b>

Pursuant to Federal Rules of Civil Procedure, Rule 38, Crop and Taylor hereby demand a trial by Jury as to all available issues of fact.

<b><u>PRAYER FOR RELIEF</u></b>

WHEREFORE Crop and Taylor hereby pray for the following entry of relief by the Court:

1.     For judgment holding GemCap in material breach of contract and awarding Crop and Taylor their damages in an amount to be proven at time of trial, which amount exceeds the jurisdictional requirement of the Court of $75,000.000; and

2.     For judgment declaring that Plaintiffs are relieved of any contractual obligation or duty to pay the "Minimum Settlement Amount" to GemCap and/or that GemCap is not entitled to collect the minimum settlement amount from Plaintiffs.

**Complaint and Demand for Jury Trial | Page 5**
**DLM - 119607**

3.      For judgment awarding Crop and Taylor their reasonable attorney's fees pursuant to statute and Rule and the agreement of the parties; and

4.      For such other and further relief as the Court deems just in the premises.

DATED January 19, 2021.

TROUT LAW, PLLC


/s/ *Kim J. Trout*
Kim J. Trout – ISB No. 2468
ktrout@trout-law.com
Attorney for Plaintiffs

**Complaint and Demand for Jury Trial | Page 6**
**DLM - 119608**

**Exhibit - A, p. 6**
**19-ER-4973**

# EXHIBIT 1

DLM - 119609

Exhibit - A, p. 7
**19-ER-4974**

IN THE SEVENTH JUDICIAL CIRCUIT OF THE STATE OF ILLINIOS

MORGAN COUNTY

**JUDGE'S DOCKET ORDER**

FILED

AUG 0 3 2020

*Amy L. Sipes*
Clerk of Circuit Court Morgan Co. IL

Case:       CROP USA INSURANCE                    No. 2020-L-5

vs.

CGB DIVERSIFIED

## <u>ORDER</u>

The Court has reviewed the 2-619 motion, response and reply along with the case law. The Court finds res judicata does apply. The Court finds there was a final judgment on the merits in the California case. The Court finds there is the required identity of parties. Losing a case in one capacity then, buying the same claims to take another capacity to sue, does not change the identity of parties. There is no case law provided to support such an argument. To allow such an argument would open up the door to allow parties two chances to pursue causes of action in different venues. The Court also finds there is identity of cause of action.

Judicial estoppel does not apply as argued.

Further the Court finds if the matter were to proceed beyond res judicata that the tortious interference and unjust enrichment claims would be barred by the statute of limitations.

Wherefore, the **Motion is granted** and the complaint is dismissed with prejudice.

CLERK TO NOTIFY

Date       August 3, 2020                         CIRCUIT  JUDGE

                                                  CHRISTOPHER E. REIF

DLM - 119610

**Exhibit - A, p. 8**
**19-ER-4975**

**KIM J. TROUT, ISB #2468**
TROUT LAW, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID  83703
Telephone (208) 577-5755
Facsimile (208) 577-5756
Email ktrout@trout-law.com

Attorney for the Plaintiff.

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| CROPUSA INSURANCE AGENCY, INC, an Idaho Corporation; R. JOHN TAYLOR, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>GEMCAP LENDING I, LLC, a Delaware Limited Liability Company,<br><br>Defendant. | **NOTICE OF ERRATA TO PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Case No. 1:21-cv-34 |

Plaintiffs Crop USA Insurance Agency, Inc. and R. John Taylor, respectfully submits this errata to its Complaint and Demand for Jury Trial in order to correct Paragraph 1 as follows:

"Plaintiff Crop USA Insurance Agency, Inc. ("Crop"), is an Idaho Corporation with its principal place of business in the State of Idaho."

DATED January 19, 2021.

TROUT LAW, PLLC

/s/ Kim J. Trout
Kim J. Trout – ISB No. 2468
ktrout@trout-law.com
Attorney for Plaintiffs

**Notice of Errata to Plaintiffs' Complaint and Demand for Jury Trial | Page 1**
**DLM - 119612**

**Exhibit - A, p. 9**
**19-ER-4976**

**Trout Law, PLLC**
3778 Plantation River Dr., Ste. 101
Boise, ID 83703
Phone: (208) 577-5755
Fax: (208) 577-5756
www.trout-law.com

# INVOICE

Invoice # 1549
Date: 10/25/2021
Due On: 11/25/2021

Mr. John Taylor

## 278-00002

## AIA-Meisen

| Date | Type | Description | Professional | Quantity | Rate | Total |
|------|------|-------------|--------------|----------|------|-------|
| 06/01/2021 | Service | | KT | 3.90 | $310.00 | $1,209.00 |
| 06/02/2021 | Service | | KT | 4.90 | $310.00 | $1,519.00 |
| 06/08/2021 | Service | | KT | 2.90 | $310.00 | $899.00 |
| 06/09/2021 | Service | | KT | 2.70 | $310.00 | $837.00 |
| 06/16/2021 | Service | | KT | 1.90 | $310.00 | $589.00 |
| 07/13/2021 | Service | | KT | 2.70 | $310.00 | $837.00 |
| 07/14/2021 | Service | | KT | 3.70 | $310.00 | $1,147.00 |
| 07/15/2021 | Service | | KT | 1.70 | $310.00 | $527.00 |
| 07/16/2021 | Service | | KT | 3.80 | $310.00 | $1,178.00 |
| 07/18/2021 | Service | | KT | 2.70 | $310.00 | $837.00 |



Exhibit - B, p. 1

**19-ER-4977**

AIAS_0036696

Invoice # 1549 - 278-00002 - 10/25/2021



| Date | Service | | Staff | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 07/22/2021 | Service | | KT | 0.90 | $310.00 | $279.00 |
| 07/26/2021 | Service | | KT | 0.90 | $310.00 | $279.00 |
| 07/28/2021 | Service | | KT | 1.60 | $310.00 | $496.00 |
| 07/29/2021 | Service | | KT | 0.70 | $310.00 | $217.00 |
| 07/29/2021 | Service | | KT | 0.90 | $310.00 | $279.00 |
| 08/02/2021 | Service | | KT | 2.80 | $310.00 | $868.00 |
| 08/03/2021 | Service | | KT | 0.50 | $310.00 | $155.00 |
| 08/03/2021 | Service | | KT | 0.90 | $310.00 | $279.00 |
| 08/04/2021 | Service | | KT | 0.50 | $310.00 | $155.00 |
| 08/09/2021 | Service | | KT | 3.40 | $310.00 | $1,054.00 |
| 08/11/2021 | Service | | KT | 2.20 | $310.00 | $682.00 |
| 08/11/2021 | Service | | KT | 3.70 | $310.00 | $1,147.00 |
| 08/19/2021 | Service | | KT | 1.10 | $310.00 | $341.00 |
| 08/24/2021 | Service | | KT | 4.80 | $310.00 | $1,488.00 |
| 08/25/2021 | Service | | KT | 2.10 | $310.00 | $651.00 |

|  | Subtotal | $17,949.00 |
|---|---|---|
|  | Total | $17,949.00 |
|  | Payment (04/14/2022) | -$5,000.00 |
|  | Balance Owing | $12,949.00 |

**Exhibit - B, p. 2**

**19-ER-4978**

AIAS_0036697

Invoice # 1549 - 278-00002 - 10/25/2021

**Statement of Account**

**Outstanding Invoices (Including Current Invoice)**

Please make all amounts payable to: Trout Law, PLLC

Please pay within 31 days.

Trout Law now accepts payments via credit card at: www.trout-law.com/payment/

**Exhibit - B, p. 3**

**19-ER-4979**

AIAS_0036698

**Trout Law, PLLC**
3778 Plantation River Dr., Ste. 101
Boise, ID 83703
Phone: (208) 577-5755
Fax: (208) 577-5756
www.trout-law.com

# INVOICE

Invoice # 1550
Date: 01/21/2022
Due On: 02/20/2022

Mr. John Taylor

## 278-00002

## AIA-Meisen



| Date | Type | Description | Professional | Quantity | Rate | Total |
|---|---|---|---|---|---|---|
| 08/27/2021 | Service | ████████ | KT | 1.90 | $310.00 | $589.00 |
| 08/28/2021 | Service | ████████ | KT | 4.90 | $310.00 | $1,519.00 |
| 08/30/2021 | Service | ████████ | KT | 1.90 | $310.00 | $589.00 |
| 08/30/2021 | Service | ████████ | KT | 1.90 | $310.00 | $589.00 |
| 08/31/2021 | Service | ████████ | KT | 0.90 | $310.00 | $279.00 |
| 08/31/2021 | Service | ████████ | KT | 1.40 | $310.00 | $434.00 |
| 08/31/2021 | Service | ████████ | KT | 0.90 | $310.00 | $279.00 |
| 08/31/2021 | Service | ████████ | KT | 0.90 | $310.00 | $279.00 |
| 09/02/2021 | Service | ████████ | KT | 4.10 | $310.00 | $1,271.00 |
| 09/03/2021 | Service | ████████ | KT | 3.20 | $310.00 | $992.00 |

**Exhibit - B, p. 4**
**19-ER-4980**

AIAS_0036699

Invoice # 1550 - 278-00002 - 01/21/2022



| Date | Service | | | Hours | Rate | Amount |
|------|---------|---|---|-------|------|--------|
| 09/08/2021 | Service | | KT | 0.90 | $310.00 | $279.00 |
| 09/08/2021 | Service | | KT | 3.70 | $310.00 | $1,147.00 |
| 09/08/2021 | Service | | KT | 1.50 | $310.00 | $465.00 |
| 09/19/2021 | Service | | KT | 2.30 | $310.00 | $713.00 |
| 09/20/2021 | Service | | KT | 2.70 | $310.00 | $837.00 |
| 09/22/2021 | Service | | KT | 1.10 | $310.00 | $341.00 |
| 09/22/2021 | Service | | KT | 2.60 | $310.00 | $806.00 |
| 09/29/2021 | Service | | KT | 0.90 | $310.00 | $279.00 |
| 10/01/2021 | Service | | KT | 0.60 | $310.00 | $186.00 |

| | |
|-----|-----|
| Subtotal | $11,873.00 |
| Total | $11,873.00 |

**Statement of Account**

**Outstanding Invoices (Including Current Invoice)**

**Exhibit - B, p. 5**

**19-ER-4981**

AIAS_0036700

Invoice # 1550 - 278-00002 - 01/21/2022



Please make all amounts payable to: Trout Law, PLLC

Please pay within 30 days.

Trout Law now accepts payments via credit card at: www.trout-law.com/payment/

**Exhibit - B, p. 6**

AIAS_0036701

**19-ER-4982**

**Trout Law, PLLC**
3778 Plantation River Dr., Ste. 101
Boise, ID 83703
Phone: (208) 577-5755
Fax: (208) 577-5756
www.trout-law.com

# INVOICE

Invoice # 1552
Date: 05/17/2022
Due On: 06/16/2022

Mr. John Taylor

## 278-00002

## AIA-Meisen

### Services

| Date | Type | Description | Professional | Quantity | Rate | Total |
|------|------|-------------|--------------|----------|------|-------|
| 12/27/2021 | Service | ▉▉▉▉▉▉▉▉ | KT | 0.90 | $325.00 | $292.50 |
| 12/27/2021 | Service | ▉▉▉▉▉▉▉ | KT | 1.20 | $325.00 | $390.00 |
| 01/04/2022 | Service | ▉▉▉▉▉▉▉ | KT | 2.50 | $325.00 | $812.50 |
| 01/05/2022 | Service | ▉▉▉▉▉▉ | KT | 1.90 | $325.00 | $617.50 |
| 01/06/2022 | Service | ▉▉▉▉▉▉▉ | KT | 1.50 | $325.00 | $487.50 |
| 01/07/2022 | Service | ▉▉▉▉▉▉ | KT | 1.40 | $325.00 | $455.00 |
| 01/11/2022 | Service | ▉▉▉▉▉▉ | KT | 3.50 | $325.00 | $1,137.50 |
| 01/13/2022 | Service | ▉▉▉▉▉▉ | KT | 1.80 | $325.00 | $585.00 |
| 01/16/2022 | Service | ▉▉▉▉▉ | KT | 0.80 | $325.00 | $260.00 |
| 01/17/2022 | Service | ▉▉▉▉▉ | KT | 0.50 | $325.00 | $162.50 |
| 01/19/2022 | Service | ▉▉▉▉▉ | KT | 0.90 | $325.00 | $292.50 |
| 01/28/2022 | Service | ▉▉▉▉▉ | KT | 1.50 | $325.00 | $487.50 |

Exhibit - B, p. 7

**19-ER-4983**

AIAS_0036702

Invoice # 1552 - 278-00002 - 05/17/2022



| Date | Type | Description | Initials | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 01/30/2022 | Service | ▮▮▮ | KT | 3.20 | $325.00 | $1,040.00 |
| 01/30/2022 | Service | ▮▮▮ | KT | 1.90 | $325.00 | $617.50 |
| 01/30/2022 | Service | ▮▮▮ | KT | 1.60 | $325.00 | $520.00 |
| 02/04/2022 | Service | ▮▮▮ | KT | 1.40 | $325.00 | $455.00 |
| 02/10/2022 | Service | ▮▮▮ | KT | 2.60 | $325.00 | $845.00 |
| 02/13/2022 | Service | ▮▮▮ | KT | 4.70 | $325.00 | $1,527.50 |
| 02/14/2022 | Service | ▮▮▮ | KT | 0.90 | $325.00 | $292.50 |
| 02/15/2022 | Service | ▮▮▮ | KT | 1.90 | $325.00 | $617.50 |
| 02/16/2022 | Service | ▮▮▮ | KT | 1.30 | $325.00 | $422.50 |
| 02/18/2022 | Service | ▮▮▮ | KT | 0.90 | $325.00 | $292.50 |
| 03/03/2022 | Service | ▮▮▮ | KT | 3.30 | $325.00 | $1,072.50 |
| 03/04/2022 | Service | ▮▮▮ | KT | 0.50 | $325.00 | $162.50 |
| 03/05/2022 | Service | ▮▮▮ | KT | 0.90 | $325.00 | $292.50 |
| 03/07/2022 | Service | ▮▮▮ | KT | 0.90 | $325.00 | $292.50 |
| 03/09/2022 | Service | ▮▮▮ | KT | 2.50 | $325.00 | $812.50 |
| 03/10/2022 | Service | ▮▮▮ | KT | 0.50 | $325.00 | $162.50 |

**Exhibit - B, p. 8**

**19-ER-4984**

AIAS_0036703

Invoice # 1552 - 278-00002 - 05/17/2022



| | | | | | | |
|---|---|---|---|---|---|---|
| 03/25/2022 | Service | ██████████████ | KT | 1.60 | $325.00 | $520.00 |
| | | | | Services Subtotal | | $15,925.00 |

**Expenses**

| Date | Type | Description | Total |
|---|---|---|---|
| 03/01/2022 | Expense | ████████████████ | $360.00 |
| | | Expenses Subtotal | $360.00 |
| | | Subtotal | $16,285.00 |
| | | Total | $16,285.00 |

**Statement of Account**

**Outstanding Invoices (Including Current Invoice)**

Please make all amounts payable to: Trout Law, PLLC

Please pay within 30 days.

**Exhibit - B, p. 9**

**19-ER-4985**

AIAS_0036704

Invoice # 1552 - 278-00002 - 05/17/2022

Trout Law now accepts payments via credit card at: www.trout-law.com/payment/

**Exhibit - B, p. 10**

**19-ER-4986**

AIAS_0036705

**Trout Law, PLLC**
3778 Plantation River Dr., Ste. 101
Boise, ID 83703
Phone: (208) 577-5755
Fax: (208) 577-5756
www.trout-law.com

# INVOICE

Invoice # 1554
Date: 05/23/2022
Due On: 06/22/2022

Mr. John Taylor

## 278-00002

## AIA-Meisen

| Date | Type | Description | Professional | Quantity | Rate | Total |
|------|------|-------------|--------------|----------|------|-------|
| 03/29/2022 | Service | ████████████ | KT | 1.50 | $325.00 | $487.50 |
| 03/29/2022 | Service | ████████████ | KT | 0.90 | $325.00 | $292.50 |
| 03/30/2022 | Service | ████████████ | KT | 1.50 | $325.00 | $487.50 |
| 03/30/2022 | Service | ████████████ | KT | 0.90 | $325.00 | $292.50 |
| 04/08/2022 | Service | ████████████ | KT | 0.90 | $325.00 | $292.50 |
| 04/18/2022 | Service | ████████████ | KT | 1.40 | $325.00 | $455.00 |
| 04/21/2022 | Service | ████████████ | KT | 1.40 | $325.00 | $455.00 |

|  | Subtotal | $2,762.50 |
|--|----------|-----------|
|  | Total | $2,762.50 |

## Statement of Account



**Exhibit - B, p. 11**
**19-ER-4987**

AIAS_0036706

Invoice # 1554 - 278-00002 - 05/23/2022

## Outstanding Invoices (Including Current Invoice)



Please make all amounts payable to: Trout Law, PLLC

Please pay within 30 days.

Trout Law now accepts payments via credit card at: www.trout-law.com/payment/

Exhibit - B, p. 12

**19-ER-4988**

AIAS_0036707

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporations and its wholly owned subsidiary AIA Insurance, Inc., <br><br> Plaintiff, <br><br> v. <br><br> GEMCAP LENDING I, LLC., <br><br> Defendant. | Case No. 1:10-cv-00404-DCN <br><br> **ORDER APPROVING SETTLEMENT AND ENTERING FINAL JUDGMENT REGARDING GEMCAP LENDING I, LLC** |

WHEREAS plaintiff Dale L. Miesen ("Plaintiff"), individually and as a shareholder asserting derivative claims on behalf of defendants AIA Services Corporation ("AIA Services") and its subsidiary AIA Insurance, Inc. ("AIA Insurance") (collectively, the "AIA Entities"), and defendant GemCap Lending I LLC ("GemCap Lending I") have entered into the Stipulation and Agreement of Settlement and Derivative Action Settlement Between Plaintiff and Defendant GemCap Lending I, LLC entered into on July 27, 2022 (the "Settlement Agreement") (Dkt. 1231) that would settle any and all shareholder claims that were or could have been asserted against GemCap Lending I in this case (and, through principles of res judicata and release, any derivative claims regarding certain matters against any Releasee, as defined in the Settlement Agreement); and

WHEREAS, on August 2, 2022, the Court entered a Scheduling Order Regarding

ORDER - 1

**19-ER-4989**

Settlement Approval Proceedings ("Approval Scheduling Order") (Dkt. 1234) in which the Court (i) ordered that Mailing Notice be provided to the extent set forth therein to shareholders and potential equity shareholders of the AIA Entities, the Trustee of record of the AIA Services 401(k) Profit Sharing Plan and Plan participants, and the Trustee of Record of the AIA Services ESOP and former ESOP participants; and (ii) set forth an Approval Schedule providing an opportunity for all persons receiving notice, as well as the parties in this case, to object to the proposed Settlement Agreement;[1] and

WHEREAS the Court has considered the Motion to Approve Settlement Between Plaintiff and Defendant GemCap Lending I, LLC (Dkt. 1240), any replies filed in support of it, and no objections being filed against it; and

WHEREAS the Court has considered whether there exists any just reason for delay in entering a Rule 54(b) final judgment on Plaintiff's claims against defendant GemCap Lending I,

NOW, THEREFORE, based on the submissions of Miesen and GCLI (collectively, the "Settling Parties"), after giving due consideration to all submissions received, and on this Court's Findings of Fact and Conclusions of Law, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

---

[1] Typically, the Court also schedules an approval hearing in shareholder-derivative suits pursuant to Federal Rule of Civil Procedure 23(e)(2). Here, neither party opposes the Motion to Approve the Settlement Agreement, both parties indicated during a prior hearing and via informal email communications with the Court their agreement to move forward with approval without a hearing, and no shareholders have objected to the Settlement Agreement. Furthermore, the Court is satisfied that the Agreement is fair, reasonable and adequate. Accordingly, the Court waives the hearing requirement in this case. *See* 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1839 (3d ed. 1998) ("the Court may dispense with the [Rule 23(e)] hearing altogether if it is satisfied that the interests of all are adequately protected by the settlement proposal.").

ORDER - 2

1. **Incorporation of Settlement Agreement.** To the extent that definitions for any defined terms do not appear in this Order Approving Settlement and Entering Final Judgment Regarding GCLI (the "Approval Order"), this Court adopts and incorporates the definitions in the Settlement Agreement. This Approval Order incorporates and makes a part hereof the Settlement Agreement, including Exhibit A thereto.

2. **Jurisdiction.** The Court has personal jurisdiction over all of the shareholders of record and beneficial shareholders of the AIA Entities (collectively, the "Securities Holders") in connection with the shareholder derivative claims that were or could have been asserted in this case, and the Court has subject-matter jurisdiction over this case, including jurisdiction to, among other things, approve the Settlement Agreement and dismiss with prejudice all claims as between Miesen, the AIA Entities, and GCLI in this action.

3. **Adequacy of Plaintiff and Plaintiff's Counsel.** Plaintiff Miesen held stock in AIA Services continuously at all times relevant to this case and otherwise has standing to prosecute derivative claims on behalf of the AIA Entities and the Securities Holders. Plaintiff Miesen and his counsel have adequately represented the interests of other Securities Holders and the AIA Entities' interests with respect to and for the purpose of entering into and implementing the Settlement Agreement.

4. **Proof of Notice.** The Settling Parties have filed with the Court adequate proof that Mailing Notice materially consistent with the directive in the Approval Scheduling Order has been given.

ORDER - 3

**19-ER-4991**

5. **Notice to Securities Holders.** The Court finds that the Mailing Notice provided to Securities Holders regarding the Settlement Agreement were simply written and readily understandable and that the notice and notice methodology (i) constituted the best practicable notice, (ii) were reasonably calculated, under the circumstances, to apprise Securities Holders of the pendency of this action, the claims asserted, the terms of the proposed settlement, and Securities Holders' right to object to the proposed settlement, (iii) were reasonable and constituted due, adequate and sufficient notice to all of the AIA Entities' Securities Holders potentially entitled to receive notice, and (iv) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Local Civil Rules of this Court, Idaho Code § 30-29-745, and any other applicable law.

6. **Final Settlement Approval.** The terms and provisions of the Settlement Agreement have been entered into in good faith. The terms and provisions of the Settlement Agreement are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of, the AIA Entities and Securities Holders, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), Idaho law, and the Rules of this Court, and any other applicable law.

7. **Implementation of the Agreement.** The Settling Parties and their counsel are directed to implement and consummate the Settlement agreement according to its terms and conditions.

ORDER - 4

**19-ER-4992**

8. **Binding Effect.** The Settlement Agreement and this Approval Order shall be forever binding on Miesen, GemCap Lending I, and their respective Releasees, as to all released Claims. This Approval Order shall have res judicata and other preclusive effect in any future lawsuits or other proceedings maintained by or on behalf of the AIA Entities against GemCap Lending I or its Releasees; provided however, that this Approval Order shall not affect Miesen's or his Releasors' claims in this or any other case against any nonsettling Defendants.

9. **Releases and Waivers.** The releases set forth in Paragraphs 3 and 4 of the Settlement Agreement and its relevant definitions are expressly incorporated herein in all respects and shall be deemed a part of this order as if fully set forth herein. The releases shall be effective if/when the Conditions Precedent in Paragraph 15 of the Settlement Agreement are satisfied. The Settling Parties agree and acknowledge that the provisions of the releases constitute essential terms of the Settlement Agreement. Nothing herein shall in any way impair or restrict the rights of any Settling Party to enforce the terms of the Settlement Agreement or this Approval Order.

10. **No Admissions.** None of the Settlement Agreement, this Approval Order, any of the provisions of the Settlement Agreement, the negotiation of the Settlement Agreement, the statements or court proceedings relating to the Settlement Agreement, any document referred to in this Approval Order, any action taken to carry out this Approval Order, or any prior Orders in this case shall be (i) construed as, offered as, received as, used as or deemed to be evidence of any kind in this or any other judicial, administrative, regulatory or other proceeding or action, or (ii) construed as, offered as, received as, used as or deemed

ORDER - 5

**19-ER-4993**

to be evidence of an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, without limitation, the AIA Entities and GemCap Lending I, provided however that this Approval Order and the Settlement Agreement may be used as evidence of the terms of the Settlement Agreement or to enforce the provisions of this Approval Order and Judgment or the Settlement Agreement; provided further that this Approval Order and the Settlement Agreement may be filed in any action against or by (or on behalf of) the AIA Entities, Miesen, GemCap Lending I, or their Releasees to support a defense of res judicata, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim.

11. **Enforcement of Settlement.** Nothing in this Approval Order shall preclude any action to enforce the terms of the Settlement Agreement.

12. **Modification of Agreement.** The Settling Parties are hereby authorized, without further notice to or approval by the Court, to agree to and adopt such amendments, modifications and expansions of the Agreement and its implementing documents (including all exhibits to the Agreement) that are not materially inconsistent with this Approval Order and do not limit the rights of the AIA Entities, Securities Holders, GemCap Lending I, or any Releasees under the Agreement.

13. **Retention of Jurisdiction.** The Court has jurisdiction to enter this Approval Order. Without in any way affecting the finality of this Approval Order, the District Court expressly retains exclusive and continuing jurisdiction over the Settlement Agreement, the Settling Parties, all Securities Holders, and all Releasees to adjudicate all issues relating to

ORDER - 6

19-ER-4994

19-ER-4995

this Settlement Agreement, including, without limitation, any issues relating to this Approval Order.

14. **Dismissal of action.** The claims asserted by the Plaintiff against GemCap Lending I in this case are hereby dismissed on the merits and with prejudice, without an award of fees or costs.

15. **Entry of Judgment.** There is no just reason to delay the entry of this Approval Order and the Rule 54(b) Final Judgment, and immediate entry by the Clerk of Court is expressly directed to Federal Rule of Civil Procedure 54(b).

DATED: March 26, 2024

_____
David C. Nye
Chief U.S. District Court Judge

ORDER - 7

19-ER-4995

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporations and its wholly owned subsidiary AIA Insurance, Inc., <br><br> Plaintiff, <br> v. <br><br> GEMCAP LENDING I, LLC, et al., <br><br> Defendants. | Case No. 1:10-cv-00404-DCN <br><br> **JUDGMENT** |

IT IS ORDERED AND ADJUDGED that pursuant to the findings, terms, and conditions of this Court's Order Approving Settlement and Entering Final Judgment Regarding GemCap Lending I, LLC, entered concurrently herewith, and because there is no just reason for delay, the Settlement Agreement as set forth therein is approved, and final judgment pursuant to Rule 54(b) is hereby entered dismissing with prejudice all claims against GemCap Lending, I, LLC.

DATED: March 26, 2024

_____
David C. Nye
Chief U.S. District Court Judge

JUDGMENT – 1

19-ER-4996