**Consolidated Case Nos. 25-3552 and 25-3800**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.,

**Plaintiff-Appellant**,

v.

R. JOHN TAYLOR, an individual, CONNIE TAYLOR HENDERSON, an individual, JAMES BECK, an individual, MICHAEL W. CASHMAN, SR., an individual, CROP USA INSURANCE AGENCY, INC., an Idaho corporation, CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company, AIA SERVICES CORPORATION, an Idaho corporation, AND AIA INSURANCE, INC., an Idaho corporation,

**Defendants-Appellees**,

and

Reed J. Taylor, an individual,

**Third-Party Defendant-Appellee.**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO,
CHIEF DISTRICT COURT JUDGE DAVID C. NYE, PRESIDING

**APPELLANT'S EXCERPTS OF THE RECORD – VOLUME - 20**

| | |
|---|---|
| Roderick C. Bond | Andrew Schwam |
| Roderick Bond Law Office, PLLC | Andrew Schwam Law Firm |
| 10900 NE 4th St., Suite 2300 | 705 SW Fountain St. |
| Bellevue, WA 98004 | Pullman, WA 99163-2128 |
| Tel: (425) 591-6903 | Tel: (208) 874-3684 |
| Email: rod@roderickbond.com | Email: amschwam@turbonet.com |
| Attorney for Appellant | Attorney for Appellant |

**Docket No.** _____

---

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

---

*In re* DALE L. MIESEN,

**Petitioner**,

v.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
IDAHO,

**Respondent**,

and

CONNIE TAYLOR HENDERSON; MICHAEL W. CASHMAN, SR.;
JAMES BECK; R. JOHN TAYLOR; CROP USA INSURANCE
AGENCY, INC.; AIA SERVICES CORPORATION; AIA INSURANCE,
INC.; CROP USA INSURANCE SERVICES, LLC; GCLI, LLC (f/k/a
GEMCAP LENDING I, LLC); REED J. TAYLOR; and CRUMB &
MUNDING, P.S.,

**Real Parties of Interest**.

---

### PETITIONER DALE L. MIESEN'S <u>VERIFIED</u> CONSOLIDATED
### PETITION FOR WRIT OF MANDAMUS TO THE UNITED
### STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

---

| | |
|---|---|
| Roderick C. Bond | Andrew Schwam |
| Roderick Bond Law Office, PLLC | Andrew Schwam Law Firm |
| 10900 NE 4th St., Suite 2300 | 705 SW Fountain St. |
| Bellevue, WA 98004 | Pullman, WA 99163-2128 |
| Tel: (425) 591-6903 | Tel: (208) 874-3684 |
| Email: rod@roderickbond.com | Email: amschwam@turbonet.com |
| Attorney for Petitioner | Attorney for Petitioner |

**20-ER-4998**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ v

I.    RELIEF SOUGHT AND FACTS TO UNDERSTAND
      PETITION ........................................................................... 1

II.   ISSUES PRESENTED ....................................................... 9

III.  THE REASONS WHY THE WRIT SHOULD ISSUE .................... 9

      A.    The *Bauman* factors weigh decisively in favor of granting
            mandamus relief so the case can be promptly, justly, and
            efficiently tried one time by the end of 2025. ......................... 9

            1.    The third and most important *Bauman* factor is
                  satisfied for Judge Nye's clearly erroneous
                  decisions: (a) failing to timely adjudicate and
                  refusing to expedite this case or assigning it to a
                  new judge, (b) excluding Miesen's expert witness,
                  and (c) dismissing Miesen's derivative claims. ........... 11

                  a.    Judge Nye erred by not timely adjudicating
                        this case, by failing to expedite it, and by not
                        assigning a new judge who could expedite it. .... 11

                        i.    Judge Nye's decisions contravened Rule
                              1, Rule 16, and this Court's precedent. ..... 11

                        ii.   This Court should assign a new judge to
                              preserve the appearance of justice. ........... 18

                  b.    Judge Nye erred in his wholesale exclusion of
                        McDermott as an expert witness. ...................... 25

                        i.    Judge Nye erred by not limiting himself
                              to his gatekeeping functions under Rule
                              702 and *Daubert* and improperly
                              assuming the role of the fact finder .......... 28

20-ER-4999

ii.   Judge Nye erred because McDermott was qualified, and his opinions were relevant and reliable..................................32

c.   Judge Nye committed numerous clear errors when five years after Judge Dale ruled that Miesen's derivative demands were adequate, he reversed Judge Dale's decision. ......................38

i.   Judge Nye erred because Miesen's demands exceeded the requirements under Idaho law. ........................................38

ii.   Alternatively, Judge Nye erred by not enforcing Judge Dale's 2017 decision when he failed to apply the law of the case doctrine...............................................51

iii.   Judge Nye erred because he did not find that Judge Dale had erred or abused her discretion when she rejected challenges to the demands...........................................59

iv.   Judge Nye erred by relying on *Munding* as the "pivotal basis" for his decision. ........59

v.   Judge Nye erred because he should have enforced Judge Dale's order according to its plain terms. ..........................................61

vi.   Judge Nye erred by refusing to consider numerous documents that Miesen submitted and this Court should consider documents on appeal...................65

2.   The first and second *Bauman* factors are also satisfied. ...................................................................68

3.   The fourth and fifth *Bauman* factors are also satisfied. ...................................................................71

- iii -

**20-ER-5000**

IV.    CONCLUSION .......................................................................74

V.    MIESEN'S VERIFICATION OF THE PETITION ........................76

VI.    CERTIFICATE OF COMPLIANCE ...........................................77

VII.    STATEMENT OF RELATED CASES ...........................................78

VIII. CORPORATE DISCLOSURE STATEMENT ...............................79

IX.    REPRESENTATION STATEMENT...............................................80

X.    CERTIFICATE OF SERVICE ....................................................84

**20-ER-5001**

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Campbell*, Case No. 4:20-cv-00218-DCN,
2022 WL 1442969 (D. Idaho May 5, 2022) ..........................................64

*Ambrosini v. Labarraque,*
101 F.3d 129 (D.C. Cir. 1996).............................................................31

*Bauman v. United States Dist. Court,*
557 F.2d 650 (9th Cir. 1977) .......................................... 9, 10, 11, 68, 71

*Blackman v. Cisneros,*
122 F.4th 377 (9th Cir. 2024)..............................................................64

*Branch v. Tunnell,*
14 F.3d 449 (9th Cir. 1994) .................................................................65

*Brown v. Allen,*
344 U.S. 443 (1953) .............................................................................58

*Capstar Radio Operating Co. v. Lawrence,*
283 P.3d 728 (Idaho 2012)...................................................................25

*Carlstrom v. United States,*
275 F.2d 802 (9th Cir. 1960) ...............................................................31

*Christensen v. U.S. Dist. Court for Cent. Dist. of Cal.,*
844 F.2d 694 (9th Cir. 1988) ................................................. 11, 69, 70

*Corbin v. Time Warner Ent.-Advance/Newhouse P'ship,*
821 F.3d 1069 (9th Cir. 2016) .............................................................44

*Daubert v. Merrell Dow Pharm., Inc.,*
43 F.3d 1311 (9th Cir. 1995) ...............................................................30

*Delta Ltd. v. U.S. Customs & Border Prot. Bureau,*
393 F. Supp. 2d 15 (D. D.C. 2005).......................................................55

**20-ER-5002**

*Delta Sav. Bank v. United States*,
   265 F.3d 1017 (9th Cir. 2001) ................................................. 53, 54, 56

*Dietrich v. Boeing Co.*,
   14 F.4th 1089 (9th Cir. 2021).......................................................... 14

*Dimidowich v. Bell & Howell*,
   803 F.2d 1473 (9th Cir. 1986) .......................................................... 58

*Disability Rights Mont., Inc. v. Batista*,
   930 F.3d 1090 (9th Cir. 2019) ................................................. 18, 23, 24

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.*,
   375 F.3d 861 (9th Cir. 2004) ........................................................... 61

*Dworkin v. Hustler Magazine Inc.*,
   867 F.2d 1188 (9th Cir. 1989) .......................................................... 38

*Elosu v. Middlefork Ranch Inc.*,
   26 F.4th 1017 (9th Cir. 2022)................19, 28, 29, 31, 33, 34, 35, 36, 37

*Elosu v. Middlefork Ranch Inc.*, No. 1:19-cv-00267-DCN,
   2021 WL 230038 (D. Idaho Jan. 22, 2021).................................... 16, 73

*F.D.I.C. v. Jackson*,
   133 F.3d 694 (9th Cir. 1998) ........................................................... 36

*Garrett v. Desi Indus., Inc.*,
   705 F.2d 721 (4th Cir. 1983) ........................................................... 32

*Greenfield v. Smith*,
   395 P.3d 1279 (Idaho 2017)............................................................. 33

*Grimm v. City of Portland*,
   971 F.3d 1060 (9th Cir. 2020) ..................................................... 44, 59

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
   189 F.3d 971 (9th Cir. 1999) ........................................................... 65

20-ER-5003

*Herrera v. Zumiez, Inc.*,
  953 F.3d 1063 (9th Cir. 2020) ........................................................38

*Hoffmann v. Pulido*,
  928 F.3d 1147 (9th Cir. 2019) ......................................................64

*In re Apple Inc.*,
  52 F.4th 1360 (Fed. Cir. 2022) .....................................................17

*In re Mersho*,
  6 F.4th 891 (9th Cir. 2021).............................................. 10, 68, 69, 71

*In re Sharon Steel Corp.*,
  918 F.2d 434 (3d Cir. 1990).................................................. 13, 17, 69

*In re United States ex rel. Drummond*,
  886 F.3d 448 (5th Cir. 2018) ................................................. 1, 12, 17

*Johnson v. Spencer*,
  950 F.3d 680 (10th Cir. 2020) ...................................................21, 61

*Jones v. United States*,
  954 F. Supp. 191 (D. Neb. 1997) .....................................................14

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991) ............................................................... 38, 39, 58

*Kugler v. Nelson*,
  374 P.3d 571 (Idaho 2016).........................................................39, 50

*Laws v. Lamarque*,
  351 F.3d 919 (9th Cir. 2003) .........................................................10

*Lippe v. Bairnco Corp.*,
  288 B.R. 678 (S.D.N.Y. 2003).........................................................26

*M/V Am. Queen v. San Diego Marine Constr. Corp.*,
  708 F.2d 1483 (9th Cir. 1983) ...................................................60, 61

20-ER-5004

*Marlyn Neutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) ...............................................................57

*McCann v. McCann*,
61 P.3d 585 (Idaho 2002)...................................................... 40, 41, 58

*McCullock v. H.B. Fuller Co.*,
61 F.3d 1038 (2d Cir. 1995)...............................................................31

*McDevitt v. Guenther*,
522 F. Supp. 2d 1272 (D. Haw. 2007) ...........................................35, 37

*McKown v. Simon Prop. Grp. Inc.*,
689 F.3d 1086 (9th Cir. 2012) .....................................................41, 44

*Messick v. Novartis Pharm. Corp.*,
747 F.3d 1193 (9th Cir. 2014) ...........................................................33

*Miesen v. Munding*,
822 F. App'x 546 (9th Cir. 2020) ....20, 38, 42, 43, 44, 50, 51, 57, 58, 59, 60

*Miller v. Rykoff-Sexton, Inc.*,
845 F.2d 209 (9th Cir. 1988) ..............................................................57

*Nieves-Villanueva v. Soto-Rivera*,
133 F.3d 92 (1st Cir. 1997)................................................................36

*Oliva v. Blatt, Hasenmiller, Leibsker & Moore LLC*,
864 F.3d 492 (7th Cir. 2017) ..............................................................58

*Potter v. Hughes*,
546 F.3d 1051 (9th Cir. 2008) ........................................... 38, 44, 50, 59

*Ramirez v. County of San Bernardino*,
806 F.3d 1002 (9th Cir. 2015) ...........................................................51

*Relevant Group, LLC v. Nourmand*,
116 F.4th 917 (9th Cir. 2024)......................................................54, 56

**20-ER-5005**

*Simmons v. Galvin,*
  575 F.3d 24 (1st Cir. 2009)........................................................65, 67

*Smith v. City of Preston,*
  586 P.2d 1062 (Idaho 1978)................................................................50

*State v. Head,*
  543 P.3d 41 (Idaho 2023)....................................................................50

*Stencel v. Fairchild Corp.,*
  174 F. Supp. 2d 1080 (C.D. Cal. 2001)..............................................30

*Surowitz v. Hilton Hotels Corp.,*
  383 U.S. 363 (1966) ......................................................................39, 50

*Talley v. Wetzel,*
  15 F.4th 275 (3d Cir. 2021) ...............................................................57

*Taylor v. Bell,*
  340 P.3d 951 (Wash. Ct. App. 2014),
  *review denied,* 352 P.3d 188 (Wash. 2015)........................................33

*U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff,*
  768 F.2d 1099 (9th Cir. 1985) ...........................................................65

*U.S. ex. rel. Rafter H Constr., LLC v. Big-D Constr. Corp.,*
  358 F. Supp. 3d 1096 (D. Idaho 2019)...............................................55

*United States v. Evans,*
  728 F.3d 953 (9th Cir. 2013) .............................................................31

*United States v. Jordan,*
  49 F.3d 152 (5th Cir. 1995) ..........................................................19, 25

*United States v. Ritchie,*
  342 F.3d 903 (9th Cir. 2003) ........................................................38, 65

*United States v. Sprint Commc'ns, Inc.,*
  855 F.3d 985 (9th Cir. 2017) .............................................................16

- ix -

**20-ER-5006**

*United States v. W.R. Grace,*
  526 F.3d 499 (9th Cir. 2008) ........................................................ 11, 15

*United States. v. Sears, Roebuck & Co., Inc.,*
  785 F.2d 777 (9th Cir. 1986) ........................................................ 18, 23

*Wagner v. Wagner,*
  371 P.3d 807 (Idaho 2016) ................................................................ 41

*West v. AT & T,*
  311 U.S. 223 (1940) .......................................................................... 58

*Williams v. Brooks,* Case No. 1:17-cv-00223-DCN,
  2018 WL 2069708 (D. Idaho May 3, 2018) ........................................ 64

## Statutes

28 U.S.C. § 636 .................................................................................... 54

Cal. Corp. Code section 800 ............................................................ 38, 50

Idaho Code section 30-1-742 ............................................................... 58

Idaho Code section 30-29-742 ........................................................ 40, 58

## Other Authorities

Black's Law Dictionary (12th ed. 2024) ............................................... 58

Mod. Bus. Corp. Act § 304 cmt.  (2003)………………………….39, 41, 42, 63

## Rules

9th Cir. R. 36-3 ................................................................................... 58

Fed. R. Civ. P. 1 ............................................... 11, 15, 22, 23, 62, 63, 72

Fed. R. Civ. P. 12 .......................................................................... 38, 57, 73

**20-ER-5007**

Fed. R. Civ. P. 16 ...................................................... 11, 15, 22, 23, 63, 72

Fed. R. Civ. P. 23.1 ......................................................... 59, 63, 73

Fed. R. Civ. P. 54 .................................................................. 69

Fed. R. Evid. 201 ......................................................... 60, 65, 67, 73, 74

Fed. R. Evid. 403 ............................................................. 23, 31, 72, 73

Fed. R. Evid. 702 .................... 23, 28, 29, 30, 32, 33, 34, 35, 36, 37, 72, 73

Fed. R. Evid. 802 .............................................................. 33, 60, 73, 74

**Treatises**

1, Douglas Danner, *Med. Malprac. Chklsts. & Disc.* § 8:10 (2024) ........ 30

21B Charles Alan Wright, et al., *Federal Practice and Procedure §
5106.4* (2d ed.) ................................................................ 60

4 Charles Alan Wright, et al., *Federal Practice and Procedure § 1029*
(4th ed.) ...................................................................... 11

20-ER-5008

## I.    RELIEF SOUGHT AND FACTS TO UNDERSTAND PETITION

Although it is an issue of first impression in the Ninth Circuit,

> [The Fifth Circuit Court of Appeals] is not alone in recognizing that a writ may be appropriate to address a district court's undue delay in adjudicating a case properly before it. . . . As the Tenth Circuit aptly put it, "justice delayed is justice denied." The district court's delay in adjudicating this case is simply inexcusable, and this Court is left with no other option but to grant mandamus relief.

*In re United States ex rel. Drummond*, 886 F.3d 448, 450 (5th Cir. 2018) (per curiam) (citations omitted) (collecting cases issuing writs for delay).

Petitioner Dale L. Miesen ("Miesen") and about 25 other shareholders own stock in AIA Services Corp. ("AIA Services"). In 1995, the defendants R. John Taylor, Connie Taylor Henderson, James Beck, and/or Michael Cashman, Sr. (collectively "Individual Defendants"), obtained control over AIA Services and its wholly owned subsidiary AIA Insurance, Inc. (collectively "AIA Entities"). (Add. 2165–68, 2172–75.) The AIA Entities were a going concern earning millions of dollars in revenues, with employees and an employee 401(k) plan and stock ownership plan. Miesen was one of the larger shareholders, having traded a book of insurance business worth about $500,000 for his shares back in the late 1980s. (Add. 2174, 2220–221.) After gaining control, the

- 1 -

**20-ER-5009**

Individual Defendants undertook a series of wrongful behaviors, hidden from Miesen and the innocent shareholders, designed to shift to themselves the value of the AIA Entities and to wrongfully deprive Miesen and the other innocent shareholders of any benefit. (Add. 34–48, 2161–244, 2376–452.)

One of the more egregious examples of these wrongful actions was to set up a competing corporation called CropUSA Insurance Agency, Inc. ("CropUSA") to directly compete with AIA in selling crop insurance to farmers. To capitalize CropUSA, the Individual Defendants had the AIA Entities provide millions of dollars in funding to CropUSA and guarantee multi-million dollar loans for CropUSA. All in violation of AIA Services' articles of incorporation and the AIA Entities' bylaws. CropUSA was created without Miesen or the other innocent shareholders receiving any ownership interest in CropUSA with the Individual Defendants having an ownership interest. CropUSA and CropUSA Insurance Services LLC (collectively "CropUSA Defendants") defaulted on a ten million dollar loan, which led to AIA Services being forced to transfer its ownership interest in it headquarters, which was insured for 7 million dollars, to the

- 2 -

**20-ER-5010**

lender, defendant GemCap Lending I, LLC ("GemCap"). (Add. 2165–217, 2898–99.)

Another more egregious example of these wrongful actions involved the AIA Entities lending over two million dollars to another corporation that was partly owned by John Taylor and Henderson, Pacific Empire Radio Corp., through a series of loans that commenced shortly before this case was filed and continued after this case was filed. The loans have not been repaid, no interest has been accrued on these loans, and the repayment of these loans was not secured by adequate collateral. (E.g., Add. 2185–86, 2198, 2212, 2216.)

While carrying out this wrongful plan, John Taylor was paid over 3 million dollars in compensation from the AIA Entities without any board or shareholder approval, despite the bylaws requiring that his compensation must be fixed by the board or by the shareholders to resolve the conflicts. And the Individual Defendants have had the AIA Entities pay over 1 million dollars in defense costs for them in this case and other cases without obtaining court or proper shareholder approval. (E.g., Add. 863 §4.14, 866 §5.5, 2191, 2198, 2207, 2210, 2212, 2235.)

**20-ER-5011**

The above wrongful actions were never properly disclosed to Miesen and the other innocent shareholders, nor were they ever properly approved by the AIA Entities' boards or shareholders. From the time that the first derivative demand was made in 2008 through the present time, the AIA Entities have failed to comply with AIA Services' amended articles and the AIA Entities bylaws in every respect, even refusing to lawfully elect directors each year, ensure that the boards were fully seated with the director appointed by the preferred shareholder, and follow fundamental corporate governance laws and practices. The last shareholder meeting was held in 2012. It is remarkable that this meeting was held for the purpose of a failed effort to eliminate Miesen and other innocent shareholders' standing to pursue derivative claims in this case by paying them ten cents per share through a reverse stock split that was stopped by an Idaho state court judge. (Add. 2165–217.)

In carrying out this wrongful plan, the Individual Defendants were assisted by certain attorneys in the firm Hawley Troxell Ennis & Hawley, LLP (collectively "Hawley Troxell"), who were defendants in this case until 2022 when they settled and were dismissed from this case brought

- 4 -

to obtain justice for the shareholders who received no dividends and have thus far lost their entire investment. (E.g., Add. 2169–98.)

It is interesting to note that this settlement included a payment of 1.4 million dollars and was not finally agreed to until after Judge Nye made two rulings effectively ending Miesen's case against Hawley Troxell. First, Judge Nye excluded Miesen's only expert set to testify in Miesen's direct case that Hawley Troxell's behavior constituted malpractice. Second, Judge Nye found Miesen's derivative demands inadequate and dismissed Miesen's derivative claims. Such a large settlement after a victory for Hawley Troxell had been achieved at the trial court level gives some indication as to how likely Hawley Troxell felt Judge Nye's two rulings would survive on appeal. (Add. 267–313.)

Now, for two and one-half years, Judge Nye has taken no action on the many now pending motions and matters involving the Individual Defendants. The case sits with nothing happening, while Miesen, age 71, was diagnosed with Multiple Myeloma cancer in 2023 and his expert witness, McDermott, who is 84, will be unavailable after the end of 2025 because he is retiring.

**20-ER-5013**

The following list of docket events will assist in understanding why

Miesen asks this Court for this unusual intervention.

| Date | Dkt. | Event |
|---|---|---|
| 6/29/2011 | 46 | Judge Boyle's order re: motions to dismiss Miesen's case on the grounds of inadequate derivative demand or, in the alterative, to stay the case. Judge Boyle did not dismiss. (Add. 2333–36.) |
| 4/21/2017 | 210 | Judge Dale's order and decision denying the second attempt to dismiss Miesen's case on the grounds that the derivative demands were inadequate. (Add. 2245–82.) |
| 12/21/2017 | 288 | Judge Nye is assigned to this case. (Add. 2159.) |
| 1/29/2021 | 1067 | Motion containing the third request to dismiss Miesen's case on the grounds that the derivative demands were inadequate. (Add. 2120–39.) |
| 1/29/2021 | 1068 | Motion to exclude Miesen's only retained expert witness set to testify in Miesen's direct case that the attorney defendants committed malpractice. (Add. 2099–119.) |
| 1/29/2021 | 1071 | Defendants represented by attorney Glynn file motion for summary judgment. This motion has not been ruled on or briefed. (Add. 2047–80.) |
| 1/29/2021 | 1073 | Third-Party Defendant/Counterclaimant Reed Taylor's motion for summary judgment. This motion has not been ruled on or briefed. (Add. 2027–46.) |
| 1/29/2021 | 1076 | Reed Taylor's motion for partial summary judgment against John Taylor re: ERISA. This motion has not been ruled on or briefed. (Add. 2017–26.) |

| Date | Dkt. | Event |
|---|---|---|
| 5/12/2021 | 1112 | Judge Nye's order excluding Miesen's only expert witness set to testify in his direct case that the attorney defendants had committed malpractice and address the Individual Defendants' breached duties. The order excluded the witness, McDermott, on the grounds that McDermott had become an advocate in Miesen's case even though McDermott had never appeared as Miesen's attorney and had never asserted that he was anyone's attorney in the case. (Add. 1000–12.) |
| 7/22/2021 | 1123 | Judge Nye denies Miesen's motion to reconsider McDermott's exclusion.(Add. 956–60.) |
| 2/9/2022 | 1197 | Judge Nye denies Miesen's motion (filed on 7/22/21 in Dkt. 1124) to substitute another expert to replace McDermott. (Add. 468–88.) |
| 5/5/2022 | 1203 | Judge Nye's order which rules, contrary to Judge Boyle's and Judge Dale's orders, the derivative demands were inadequate and dismisses Miesen's derivative claims. (Add. 416–67.) |
| 8/4/2022 | 1235 | Judge Nye's order approving the settlement in which the attorney defendants agree to pay One Million Four Hundred Thousand Dollars ($1,400,000) to Miesen by depositing that sum into the court's registry even though Judge Nye had excluded Miesen's expert witness and, unlike the previous judges on Miesen's case, Judge Nye had dismissed Miesen's derivative claims. (Add. 406–15.) Judge Nye takes no action on Miesen's request for attorney fees and costs to be paid from the 1.4 million dollar settlement and in spite of extensive briefing and motions related to the request for attorney fees and costs being completed on 11/4/22, Judge Nye has still taken no action on this request. (Add. 204–25.) |

**20-ER-5015**

| Date | Dkt. | Event |
|------|------|-------|
| 8/9/2022 | 1238 | Judge Nye's order detailing all remaining matters and ordering briefing on the question of whether all of Miesen's claims are derivative with all briefing due within 56 days of the order. In the order Judge Nye states: "If the Court finds that all of the claims are derivative, then the remaining of Miesen's Third Amended Complaint (Dkt. 211), and . . . Defendants' Third Party Complaint (Dkt. 219) will be dismissed. . . ." (Add. 403–04.) Judge Nye has never rendered a decision on this issue. |
| 2/8/2024 | 1282 | Miesen's motion to expedite this case and requests to set this case for trial, hold pre-trial conferences and decide the pending motions. (Add. 31–54.) |
| 4/5/2024 | 1293 | Judge Nye's Minute Entry re: Dkt. 1282 deeming Miesen's motion to expedite moot. (Add. 2, 2568.) |
| 5/20/2024 | 1294 | Judge Nye's order stating that all future discovery disputes are referred to Judge Nye. This was the last action in Miesen's case by Judge Nye and there have been no court filings since. (Add. 2568.) |

There is no end in sight for Miesen and the other innocent shareholders for this 14 year old case.

With Miesen having no options left, this Court should issue a writ to the District Court of Idaho to: **(a)** order this case to be expedited, that a trial be held by the end of 2025, and assign a new judge; and **(b)** vacate Judge Nye's clearly erroneous decisions excluding Miesen's expert

**20-ER-5016**

witness and dismissing Miesen's derivative claims, so this case can be promptly, justly and efficiently tried one time for all claims.

## II.   ISSUES PRESENTED

**1.**    Did Judge Nye commit clear errors in violation of Rules and precedent by not timely adjudicating, by not expediting this case, and by not assigning it to a new judge who could expedite it, and should this Court assign a new judge to preserve the appearance of fairness?

**2.**    Should this Court, independently or as part of expediting this case to avoid two trials, vacate Judge Nye's clearly erroneous decisions: **(a)** excluding Miesen's expert witness by improperly assuming the role of the fact finder; and **(b)** dismissing Miesen's derivative claims by belatedly and erroneously ruling the derivative demands were inadequate?

## III.  THE REASONS WHY THE WRIT SHOULD ISSUE

**A.  The *Bauman* factors weigh decisively in favor of granting mandamus relief so the case can be promptly, justly, and efficiently tried one time by the end of 2025.**

> To determine whether a writ of mandamus should be granted, [this Court] weigh[s] the five factors outlined in *Bauman v. United States District Court*:
>
>> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or

**20-ER-5017**

she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.) (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression.

"The *Bauman* factors should not be mechanically applied." A showing of only one factor does not mean the writ must be denied, nor does a showing of all factors mean that the writ must be granted. And not all factors will be relevant in every case. "Mandamus review is at bottom discretionary . . . ."

*In re Mersho*, 6 F.4th 891, 897–98 (9th Cir. 2021) (citations omitted). This

Verified Petition and the other verified complaints filed in the case are

treated as "as an affidavit." *Laws v. Lamarque*, 351 F.3d 919, 924 (9th

Cir. 2003). (Add. 577–632, 2161–244, 2376–452, 2986–3043.)

Here, this is a rare case where the *Bauman* factors decisively favor

granting mandamus relief for three intertwined, yet also distinct, issues

that collectively and independently meet the factors.

///

///

- 10 -

**20-ER-5018**

1. **The third and most important *Bauman* factor is satisfied for Judge Nye's clearly erroneous decisions: (a) failing to timely adjudicate and refusing to expedite this case or assigning it to a new judge, (b) excluding Miesen's expert witness, and (c) dismissing Miesen's derivative claims.**

"The key factor to be examined is whether [this Court is] 'firmly convinced that [the] district court erred.'" *Christensen v. U.S. Dist. Court for Cent. Dist. of Cal.*, 844 F.2d 694, 697 (9th Cir. 1988) (citations omitted). The following errors meet this standard.

    a. **Judge Nye erred by not timely adjudicating this case, by failing to expedite it, and by not assigning a new judge who could expedite it.**

        i. **Judge Nye's decisions contravened Rule 1, Rule 16, and this Court's precedent.**

Rule 1 provides:

> These rules . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.

"There probably is no provision in the federal rules that is more important than this mandate." 4 Charles Alan Wright, et al., *Federal Practice and Procedure § 1029* (4th ed.); *United States v. W.R. Grace*, 526 F.3d 499, 508 (9th Cir. 2008) (a "district court is charged with effectuating the speedy and orderly administration of justice").

- 11 -

**20-ER-5019**

In this Verified Petition, the following indisputable facts overwhelmingly establish Judge Nye's clear errors, the need to issue a writ to expedite this case, and the need to assign this case to a new judge.

► **1**    This case is 14 years old with no trial date scheduled for Miesen's direct claims and no end in sight— justice has been delayed and denied to Miesen and other innocent stakeholders for over 14 years. (Add. 1951–56, 2453–568.) Judge Nye's "delay in adjudicating this case is simply inexcusable." *Drummond*, 886 F.3d at 550.

► **2**    Over two years ago, Judge Nye ordered the remaining parties to brief whether Miesen has direct claims remaining. (Add. 400–05.) Although the briefing was submitted well over two years ago and Miesen requested a trial be scheduled, Judge Nye has never ruled on this issue or set a trial date. (Add. 381–99, 186–203, 151–61, 104–21.) There is no justification for this delay.

► **3**    Three motions for summary judgment have been pending for almost four years and are stayed with no briefing schedules, despite requests by Miesen and Reed Taylor that they be acted upon. (Add. 55–59, 87–88, 2009–80).

- 12 -

**20-ER-5020**

► **4**    Judge Nye has failed (or refuses) to decide seven other ripe motions for over two years or longer. (E.g., Add. 101–25, 162–85, 204–25, 381–405, 2140–42, 2143–51.)

► **5**    Despite Miesen's motion to expedite and his requests for pre-trial conferences to assist in expediting it, the presently pending motions have not been decided, and no pre-trial conferences have been scheduled to expedite the case, nor has a trial date been scheduled for Miesen's direct claims. (Add. 2, 52, 87.) Instead, this case sits with no end in sight.

► **6**    By unduly delaying trial and a final judgment, Judge Nye has "inhibited this Court's exercise of appellate jurisdiction," *In re Sharon Steel Corp.*, 918 F.2d 434, 436 (3d Cir. 1990), to hear any appeals, including, from the erroneous decisions excluding McDermott as an expert and dismissing Miesen's derivative claims. *Infra* at 25–67. Almost three years ago, Judge Nye denied Miesen's motion for interlocutory appeal of his exclusion of McDermott. (Add. 488.) Well over two years ago, he denied Miesen's motion to certify questions to the Idaho Supreme Court relating to the derivative demands. (Add. 467.)

► 7     Miesen was diagnosed with Multiple Myeloma cancer in 2023. He should be granted his "day in court" to seek justice as soon as possible before his health further deteriorates.

► 8     Four former parties have died (including Babbitt). (Add. 2729.) At least three material witnesses have died. (Add. 2730.) Every additional party or witness that dies further prejudices Miesen.

► 9     At least eight parties and/or witnesses now range in age from approximately 70 to 92-years-old, including Miesen's excluded expert witness, McDermott, who will be retiring at the end of 2025 (at age 85). (Add. 2730–31.) This is an important reason why Judge Nye's order excluding McDermott should be reversed so that Miesen can obtain the benefit of McDermott's testimony. *Infra* at 25–38.

► 10    This case is incredibly old. "This case is old and deserves to be given expedited consideration." *Jones v. United States*, 954 F. Supp. 191, 195 n. 7 (D. Neb. 1997). Delayed cases "conflict with one of the basic principles of our legal system—justice delayed is justice denied." *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021). Judge Nye erred by not scheduling a trial and by not holding one or more pre-trial

- 14 -

**20-ER-5022**

conferences to assist in expediting this case in further disregard of Fed. R. Civ. P. 1; Fed. R. Civ. P. 16(a)(1)–(2) and (c)(2)(P).

► **11** If Judge Nye was unwilling or unable to timely adjudicate or expedite the adjudication of this case, he should have assigned a new judge who could expedite this case under Rule 1, Rule 16(a)(1)–(2) and/or Rule 16(c)(2)(P) and this Court's precedent. *W.R. Grace*, 526 F.3d at 508.

► **12** In order to expedite this case, this Court should vacate Judge Nye's clearly erroneous decisions excluding McDermott as an expert and dismissing Miesen's derivative claims (as discussed in detail below), so this 14 year old case can be efficiently tried without running the risk of a retrial becoming necessary. Fed. R. Civ. P. 1. *Infra* at 25–67.

► **13** Over two years ago, Judge Nye made numerous comments about this case being old and that it could not be delayed any further. (Add. 188–90, 189 n. 2, 423, 474, 485.) Reed Taylor even reminded Judge Nye of two of those comments in his non-opposition to expediting the case. (Add. 29.) Yet, Judge Nye has failed to timely adjudicate and expedite this case, and has not assigned it to a new judge, something he has done in other cases. (Add. 2.) *E.g., Taylor v. United States*, No. 2:17-CV-00410-

- 15 -

**20-ER-5023**

SAB, 2023 WL 6057389 (D. Idaho July 12, 2023) (another case involving the same John Taylor); *Elosu v. Middlefork Ranch Inc.*, No. 1:19-cv-00267-DCN, 2021 WL 230038, at *3 (D. Idaho Jan. 22, 2021).

► **14**   Judge Nye has erroneously failed to take any action to assist the parties in resolving this case. Judge Nye stated over two years ago that "the Court wishes to emphasize that it wants to see this case resolved." (Add. 189 (footnote omitted); see Add. 189 n. 2.) Miesen requested over two years ago that Judge Nye "order the parties to attend a judicial settlement conference," Add. 184, which Judge Nye has never acted upon, despite Miesen reminding him of that pending request in his motion to expedite. (Add. 53.)

► **15**   On April 4, 2024, Judge Nye denied as moot Miesen's motion to expedite, which included his requests to schedule a trial and to hold pre-trial conferences to expedite this case. (Add. 2.) As the foregoing 14 points show, Miesen's motion was not moot, nor were the other issues raised in the motion. (Add. 49–53.) *United States v. Sprint Commc'ns, Inc.*, 855 F.3d 985, 995 (9th Cir. 2017) (concluding a motion to intervene was not moot and then deciding the motion on the merits).

- 16 -

**20-ER-5024**

Based on the foregoing 15 points, Judge Nye committed clear errors. Thus, the appropriate remedy is the issuance of a writ.

> The Supreme Court has recognized that "where a district court persistently and without reason refuses to adjudicate a case properly before it, the court of appeals may issue the writ 'in order that [it] may exercise the jurisdiction of review given by law.' Indeed, [the Fifth Circuit Court of Appels] is not alone in recognizing that a writ may be appropriate to address a district court's undue delay in adjudicating a case properly before it. . . . As the Tenth Circuit aptly put it, "justice delayed is justice denied." The district court's delay in adjudicating this case is simply inexcusable . . .

*Drummond*, 886 F.3d at 550 (citations omitted) (collecting cases); *In re Sharon Steel Corp.*, 918 F.2d at 436 ("the district court in the present case has failed to exercise its judicial power . . . The issuance of a writ of mandamus is therefore appropriate."); *In re Apple Inc.*, 52 F.4th 1360, 1363 (Fed. Cir. 2022) (issuing a writ to order the district court to "proceed expeditiously" to decide a motion).

Accordingly, this Court should issue a writ ordering the District Court to expedite this case, order that a trial be held by the end of 2025, and assign a new judge.

///

- 17 -

**20-ER-5025**

### ii. This Court should assign a new judge to preserve the appearance of justice.

In the absence of proof of personal bias, we remand to a new judge only under "unusual circumstances." In making this determination, [this Court] consider[s]

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

> The first two of these factors are of equal importance, and a finding of one of them would support a remand to a different judge. A district judge's adamance in making erroneous rulings may justify remand to a different judge.

*United States. v. Sears, Roebuck & Co., Inc.*, 785 F.2d 777, 780 (9th Cir. 1986) (citations omitted).

Here, this Court should order a new judge assigned to the case to preserve the appearance of justice and eliminate any appearance of bias. Miesen also respectfully requests that this Court designate a new judge outside of Idaho because "having one of [Judge Nye's] own colleagues in [his] district pass on [his] past actions well might, in and of itself, exacerbate the appearance of impropriety." *United States v. Jordan*, 49

- 18 -

**20-ER-5026**

F.3d 152, 159–60 (5th Cir. 1995).

Judge Nye was adamant about his errors, would have substantial difficulty setting aside his prior erroneous rulings, has made credibility findings, considered evidence that should be rejected, and assigning a new judge is the only way to preserve the appearance of justice.

▶ 1    As Miesen establishes in detail below (*infra* at 25–38), Judge Nye was adamant in erroneously excluding McDermott. After Miesen moved to reconsider the exclusion of McDermott based on Judge Nye improperly assuming the role of the fact finder (Add. 964–99), Judge Nye denied the motion calling it "improperly raised," Add 957, and "improper." (Add. 959.) He later stated: "[t]his decision is not up for negotiations." (Add. 478.) Judge Nye was also adamant in his numerous errors to dismiss Miesen's derivative claims. *Infra* at 38–67.

▶ 2    Judge Nye improperly impugned McDermott's credibility. *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1020 (9th Cir. 2022). For example, Judge Nye erroneously found: "McDermott has assumed the improper role of an advocate masquerading as an expert in this case." (Add. 1006.) Judge Nye's decision contains numerous erroneous

- 19 -

**20-ER-5027**

credibility findings. (Add. 1006–11.) These improper credibility findings, alone, warrant a new judge. *Earp v. Cullen*, 623 F.3d 1065, 1072 (9th Cir. 2010) (assigning a new judge since "the district judge made explicit credibility findings").

► **3**    In his decision to deny Miesen's motion to substitute a new expert witness after McDermott had been excluded, Judge Nye impugned Miesen's credibility by stating: "he certainly did know of McDermott's involvement in this case and should have known [of] its impropriety." (Add. 474.) Judge Nye accused Miesen, an ordinary litigant, of knowing how an expert witness should behave. This also shows that Miesen should have a new judge because a non-attorney litigant has no way of knowing how experts should behave. As established below (*infra* at 25–38), McDermott did nothing wrong and neither did Miesen.

► **4**    In one decision, Judge Nye used "ludicrous," an "outlandish position," and "ridiculous arguments," Add 446, to describe Miesen's earnestly proffered positions why Judge Nye should not consider *Miesen v. Munding*, 822 F. App'x 546 (9th Cir. 2020) *("Munding")*. (Add. 497–501, 511.) As discussed below, *Munding* should also be rejected for the

- 20 -

**20-ER-5028**

purposes relied upon by Judge Nye. *Infra* at 42–44, 59–61. *E.g., Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020).

▶ **5** Judge Nye has been adamant about erroneously delaying this case without providing plausible justification. After Miesen moved to expedite this case, Judge Nye continued to erroneously delay in making rulings and adjudicating this case. Back in 2022, Miesen moved for a two-week extension to file a court-ordered brief. (Add. 191–203.) Judge Nye denied the motion two days later, stating:

> . . . This is a final issue of this case . . .
>       . . . .
> In conclusion, the Court wishes to emphasize that it wants to see this case resolved. Extensions of time and pages, though sometimes necessary, slow down the process. . . .

(Add. 188–90 (footnote omitted and added); see Add. 189 n. 2.) Now, more than two years after denying Miesen a two week extension, Judge Nye has still not ruled on the matter about which he ordered the briefing. (Add. 162–85, 204–25, 381–405.)

▶ **6** Judge Nye erroneously delayed this case by informally staying it without even notifying the parties. After Miesen's counsel inquired of Judge Nye's law clerk, the clerk advised Miesen's counsel:

- 21 -

**20-ER-5029**

> We get a little gun-shy when it comes to bankruptcy stays. The automatic statute (11 USC 362) is very robust. . . . We would want briefing (and probably something from the BK court) before making a decision about moving forward. . . . this ENTIRE case is currently stayed.

(Add. 91.) The adamance of Judge Nye's error staying the whole case was clear because he had correctly stated two weeks earlier in a different case that "the 'automatic stay does not automatically encompass co-defendants.' " *Stonecipher v. Tewalt*, No. 1:22-cv-00415-DCN, 2023 WL 2479958 at \*2 (D. Idaho Mar. 13, 2023) (citation omitted).

▶ **7**    Judge Nye denied certain of Miesen's motions over two years ago stating, "substituting a new expert would add significant and unjustifiable delay," Add 474, "the Court does not find that allowing appeal of the order excluding McDermott would serve the purpose of more efficiently resolving this saga," Add. 485, and "the Court understands the acute need for prompt resolution of this case." (Add. 485; *accord* Add. 423, 485.) Yet Judge Nye has delayed this case showing that he has been adamant in contravening Rule 1, Rule 16 and this Court's precedent, without providing any plausible justification. *Infra* at 11–16.

**20-ER-5030**

► **8**    Even though Judge Nye previously stated that he "wishes to emphasize that he wants to see this case resolved," Add. 189, for over two years, Judge Nye failed to act on Miesen's request to "order the parties to attend a judicial settlement conference," Add. 184, 53, without any plausible justification.

► **9**    In sum, as stated above and as more fully discussed below (*infra* at 25–67), Judge Nye has shown an "adamance in making erroneous rulings," *Sears*, 785 F.2d at 780, to contravene the letter and spirit of Rule 1, Rule 16, Rule 403, Rule 702, Rule 802, and precedent without providing any "plausible justification." *Batista*, 930 F.3d at 1100.

► **10**    Considering the above, a neutral third party would not conclude that the appearance of justice could be maintained if this case was remanded back to Judge Nye. A neutral third party might also conclude that Judge Nye was hoping this case would go away by not ruling on pending motions or holding a trial, thereby depriving this Court of jurisdiction to ever hear Miesen's appeals.

Accordingly, Misen has established the first two elements that justify having a new judge assigned to this case.

- 23 -

**20-ER-5031**

Further, assigning a new judge would not result in waste or duplication out of proportion to the gain in preserving the appearance of fairness and avoiding any appearances of bias.

► **1**    Judge Nye was assigned to this case on December 21, 2017. (Add. 2159.) This 14 year old case is essentially still at the pleading stage for the following reasons. The pending summary judgment motions have not been briefed. The decision on whether Miesen's Third Amended Complaint ("TAC") contains direct claims is briefed but the issue has not been decided for over two years. (E.g., Add. 101–03, 104–10, 122–25, 162–85, 204–25, 381–99, 400–05, 2009–12, 2017–80, 2140–51, 2487–568.) "Because this case remains at the pleading stage, 'any duplication of judicial efforts will be minimal,' and the benefits of reassigning will far outweigh the costs." *Batista*, 930 F.3d at 1101 (citation omitted).

► **2**    The benefit of obtaining a new judge far outweighs any risks of waste or duplication because this case badly needs to be expedited by a judge with the willingness and time to do so. And, based on the "tortured history," Add. 5 n. 1, of this case, a neutral party would have no confidence that Judge Nye would justly and efficiently expedite this case

- 24 -

if ordered to do so. Indeed, a new judge would also bring a badly needed "fresh perspective and would eliminate any concern of bias." *Capstar Radio Operating Co. v. Lawrence*, 283 P.3d 728, 741 (Idaho 2012).

► **3**  Based on the above and the unusual nature of Judge Nye's erroneous decisions (*infra* at 28–67), the important gains to preserve the appearance of fairness overwhelmingly outweigh any possible or actual waste or duplication that might result from a new judge presiding.

Accordingly, this Court should assign a new judge to this case, who should be from outside the District of Idaho. *Jor*dan, 49 F.3d at 159–60.

### b.  Judge Nye erred in his wholesale exclusion of McDermott as an expert witness.

Judge Nye overlooked the fact that every plaintiff's expert witness always offers explanations using plaintiff's asserted facts and principles from the expert's profession in support of the expert's opinions. These explanations and opinions are always offered to help the plaintiff get what the plaintiff is requesting. For example, in a medical malpractice case the expert, a doctor, providing a declaration in support of a plaintiff's position will make statements containing opinions arising from his medical experience and support these opinions with explanations using

- 25 -

**20-ER-5033**

medical terms. Thus, the declarant will sound like a doctor. In Miesen's case, the witness must be a legal expert well versed in the duties owed and ethics required of executives, board members and lawyers in serving shareholders. McDermott has over 50 years of experience as a lawyer, law professor, service on corporate boards, and as an expert witness, so his declarations read like a lawyer's (advocate's). Of course, some of the ideas in McDermott's declarations could have been put forward by Miesen's lawyer, but this does not justify a finding that McDermott had become Miesen's attorney (advocate). Unlike *Lippe v. Bairnco Corp.*, 288 B.R. 678 (S.D.N.Y. 2003), which Judge Nye relied on (Add. 1005, 1009, 1011), McDermott never appeared or acted as Miesen's attorney in any court proceedings or anywhere else. (Add. 1042–62.)

Judge Nye faulted McDermott for wanting to be present at some depositions and for requesting particular evidence in order for him to render opinions. This is no different from a competent engineer, scientist, or doctor who would be expected to suggest questions to ask and positions to take to plaintiff's attorney. Many times, a plaintiff's experts have been present at depositions or even at counsel table to fulfill such a purpose,

- 26 -

**20-ER-5034**

but this does not make them plaintiff's attorney (advocate) or demonstrate such a lack of credibility that the credibility issue can be taken from the jury. McDermott behaved as any competent expert witness would.

For example, Judge Nye quoted McDermott and faulted him for saying: " 'In order for me and Mr. Miesen to fully and fairly present his claims . . . it is imperative that we be provided with the opportunity to review all of the' withheld documents." (Add. 1007 (quoting Add. 2839).)

In every legal malpractice case, plaintiff's expert presents an opinion that the defendant failed to act competently and/or ethically. This is precisely the plaintiff's claims. Thus, the expert is presenting the plaintiff's claims, and McDermott's forthright statement of this simply shows his honesty and credibility.

To the extent that any of McDermott's statements in declarations or report should not be allowed as testimony at trial, this could and should have been dealt with by an order instructing McDermott not to testify to any such statements. McDermott stated under oath in a declaration filed before Judge Nye rendered his exclusion decision that

- 27 -

he, McDermott, would fully obey such an order. (Add. 1060–61 ¶37.)

Judge Nye declined to resolve the question of whether McDermott was a contingency fee expert. McDermott has a fee agreement requiring that he be paid in full before testifying at trial. (Add. 1049–52.) McDermott had already been paid $124,775.00. (Add. 318–19, 1050–51.)

Judge Nye's erroneous wholesale exclusion of McDermott is established by this Court's decision in *Elosu*, 26 F.4th 1017. *Elosu* was issued after Judge Nye's decisions excluding McDermott and after he denied Miesen's request to appeal. (Add. 480–88, 956–60, 1000–12.)

### i. Judge Nye erred by not limiting himself to his gatekeeping functions under Rule 702 and *Daubert* and improperly assuming the role of the fact finder.

In *Elosu*, this Court explained how Judge Nye erred, as he did here, by contravening Rule 702 and *Daubert* to exclude a qualified expert witness:

> . . . [T]he district court is "a gatekeeper, not a fact finder." Although a district court may screen an expert opinion for reliability, and may reject testimony that is wholly speculative, it may not weigh the expert's conclusions or assume a factfinding role. . . . In the plain text of its opinion, the district court took issue only with [the expert's] "ultimate conclusions." In its findings, the court disregarded much of the expert's scientific analysis, weighed the evidence on record, and demanded corroboration—factfinding steps that exceed

- 28 -

**20-ER-5036**

the court's gatekeeping role. Accordingly, we reverse the judgment of the district court.

*Elosu*, 26 F.4th at 1020. This Court explained the Rule 702 and *Daubert* principles that Judge Nye erroneously failed to follow, as he did here, as a gatekeeper and how he improperly assumed the role of a fact finder. *Elosu*, 26 F.4th at 1020–29.

Here, as in *Elosu*, Judge Nye misapplied the law and committed the same clear errors again when he failed to limit himself to his gatekeeping function under Rule 702 and *Daubert*, and jumped directly to the wholesale exclusion of McDermott by improperly weighing the evidence and assessing his credibility—these issues are for the jury.

As in *Elosu*, Hawley Troxell argued that McDermott should be excluded as an expert witness *without* challenging his qualifications or the relevance and reliability of his opinions.[1] (Add. 1013–23, 2099–119.) As in *Elosu*, the issue was for the jury to decide how much weight to give McDermott's opinions once Miesen submitted his declaration and the declarations from his counsel and McDermott denying the allegations,

---

[1] The Individual and CropUSA Defendants and the AIA Entities did not join in the motions to exclude McDermott.

- 29 -

**20-ER-5037**

and Miesen established that McDermott was qualified and his opinions were relevant and reliable. (Add. 1024–981, 2239.) Indeed, "[t]he question of admissibility **only arises if it is first established** that the individuals . . . are experts in a particular . . . field." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (emphasis added). But Judge Nye erroneously skipped Rule 702 and *Daubert*, and improperly assumed the role of a fact and credibility finder, which was a misapplication of the law and clear error. (Add. 956–60, 1006–11.)

Notably, there was nothing improper about McDermott's declarations. (Add. 1042–62, 2759–865.) *E.g., Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1085 (C.D. Cal. 2001) (noting how experts "are [also] employed to assist the parties in their pretrial preparation"); 1, Douglas Danner, *Med. Malprac. Chklsts. & Disc.* § 8:10 (2024) (explaining how experts should be used for all aspects of a case).

Further, even if McDermott had engaged in the alleged conduct, the question of how much weight to give his opinions would have still been for the jury to decide. Indeed, this Court has observed that experts are expected to be partisan and advocates for their side of the case: "[i]t would

- 30 -

**20-ER-5038**

be ideal . . . if experts were just experts, and not partisans nor advocates."

*Carlstrom v. United States*, 275 F.2d 802, 805 (9th Cir. 1960).

Thus, Judge Nye erred because he was "a gate keeper, not a fact finder" and he could not "weigh [McDermott's] conclusions or assume a factfinding role." *Elosu*, 26 F.4th at 1020 (citations and quotation marks omitted).

> Trial judges must exercise sound discretion as gatekeepers of expert testimony under *Daubert*. [Defendants], however, would elevate them to the role of St. Peter at the gates of heaven, performing a searching inquiry into the depth of an expert witness's soul—separating the saved from the damned. Such an inquiry would inexorably lead to evaluating witness credibility and weight of the evidence, the ageless role of the jury.

*McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995); *accord Ambrosini v. Labarraque*, 101 F.3d 129, 141 (D.C. Cir. 1996).

For the same reasons stated above, Judge Nye also clearly erred in his wholesale exclusion of McDermott under Rule 403:

> The court may not exclude relevant evidence—or, in this case, assign it no probative value—on the ground that it does not find the evidence to be credible. . . . "a trial judge [may not] refuse to admit evidence simply because he does not believe the truth of the proposition that the evidence asserts."

*United States v. Evans*, 728 F.3d 953, 963 (9th Cir. 2013) (citations

20-ER-5039

omitted). Thus, Judge Nye committed clear errors excluding McDermott.

### ii.    Judge Nye erred because McDermott was qualified, and his opinions were relevant and reliable.

**First**, the defendants never challenged McDermott's qualifications and Judge Nye never questioned McDermott's qualifications. So there was never any doubt that McDermott was qualified.

McDermott is qualified to be an expert witness.

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education." Fed. Evid. R. 702 (Add. 2596). "The 'or' indicates that a witness may be qualified as an expert by any one of the five listed qualifications. *Garrett v. Desi Indus., Inc.*, 705 F.2d 721, 724 (4th Cir. 1983) (citations omitted).

Here, there was no dispute that McDermott was qualified under each of the five ways to qualify as an expert under Rule 702. McDermott's qualifications included: **(a)** education, training, and experience as a long-term practicing attorney, including most recently at a prestigious multi-national law firm, Clifford Chance; **(b)** experience as an adjunct corporate law Professor; **(c)** experience as a mediator; **(d)** an author of a corporate law text book for law school, a co-author of a treatise on opinion

- 32 -

letters, and a member of the prestigious Tri-Bar Opinion Committee; and

**(e)** education, training, experience in corporate governance as discussed above, and experience serving as a long-term director of two different organizations. (Add. 1091–97, 1966–68.) As in *Elosu*, the defendants did not dispute any of McDermott's qualifications, and neither did Judge Nye. (Add. 956–60, 1000–12, 1013–23, 2099–119.) Thus, he clearly erred.

Notably, the Washington Court of Appeals held that McDermott "is eminently qualified to testify as an expert." *Taylor v. Bell*, 340 P.3d 951, 960 (Wash. Ct. App. 2014), *review denied,* 352 P.3d 188 (Wash. 2015).

**Second**, McDermott's opinions are relevant.

In *Elosu*, this Court explained the determination of relevancy:

> Rule 702 tasks a district judge with 'ensuring that an expert's testimony . . . is relevant to the task at hand.' 'Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.'

*Elosu*, 26 F.4th at 1024 (citation omitted); *accord Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) ("The relevancy bar is low . . ."). And expert testimony is generally required for legal malpractice claims. *Greenfield v. Smith*, 395 P.3d 1279, 1285 (Idaho 2017).

**20-ER-5041**

Here, there was no dispute that McDermott's opinions in his report were relevant for: **(a)** Miesen's legal malpractice claims; **(b)** the duties owed by directors, officers, and majority shareholders, and the breaches of those duties; **(c)** corporate governance; and **(d)** related matters. (Add. 1119–725, 2161–244.) As in *Elosu*, the defendants never disputed the relevancy of McDermott's opinions under Rule 702 and *Daubert*, and neither did Judge Nye. (Add. 956–60, 1000–12, 1013–23, 2099–119.)

Thus, Judge Nye clearly erred because there was no dispute that McDermott's opinions were relevant.

**Third**, McDermott's opinions are reliable. This Court's reasoning in *Elosu* is dispositive. *Elosu*, 26 F.4th at 1024–29. This Court explained how credibility and believability have no role in determining reliability:

> Ultimately, "the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology." The court is "a gatekeeper, not a fact finder." Accordingly, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." If the proposed testimony meets the thresholds of relevance and reliability, its proponent is "entitled to have the jury decide upon [its] credibility, rather than the judge." "Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are

**20-ER-5042**

reserved for the jury." This Court has previously noted that "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."

. . . .

. . . Rule 702's "sufficient facts or data" element requires foundation, not corroboration. Consistent with the court's gatekeeping function, Rule 702 instructs a district court judge to determine whether an expert "had sufficient factual grounds on which to draw conclusions." . . . Rule 702 does not license a court to engage in freeform factfinding, to select between competing versions of the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage.

*Elosu*, 26 F.4th at 1024–26 (citations omitted). While this Court has not addressed legal malpractice experts under *Daubert*, other courts have.

Although the Court has not been able to find any cases that articulate a complete set of factors specific to the testimony of attorney experts, courts have relied on a variety of measures to assess reliability of attorney expert testimony: (1) whether the expert identified the materials relied upon and personally examined the file underlying the case; (2) whether the expert sufficiently explained why he or she reached an opinion; (3) whether the expert cited other sources relied upon by attorneys such as applicable statutes, treatises, or publications by professional organizations; or (4) whether the expert demonstrated that his opinion is accepted by his peers. This is a non-exhaustive annotation of various tests relied upon in different courts, and thus the expert testimony need not satisfy all of these criteria to be deemed reliable.

*McDevitt v. Guenther*, 522 F. Supp. 2d 1272, 1291–92 (D. Haw. 2007)

- 35 -

20-ER-5043

(citations omitted). Importantly, the First Circuit Court of Appeals noted "there may be particular areas of law, such as legal malpractice, where expert testimony on legal matters is admissible where it would normally be excluded." *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100–01 (1st Cir. 1997).

Although this Court has not addressed *Daubert* in the context of an expert addressing the duties of directors and officers, corporate governance and related issues, this Court previously reversed summary judgment in a case involving experts for director's duties. *F.D.I.C. v. Jackson*, 133 F.3d 694 (9th Cir. 1998). And "[a]n expert's specialized knowledge and experience can serve as the requisite 'facts or data' on which they render an opinion." *Elosu*, 26 F.4th at 1024.

Here, there was no dispute that McDermott's opinions were reliable; rather, Hawley Troxell and Judge Nye erroneously took issue with McDermott's ultimate conclusions and opinions—which were issues for the jury to weigh and decide—not Judge Nye. (Add. 2239.) As in *Elosu*, the defendants never disputed the reliability of McDermott's opinions under Rule 702 and *Daubert,* and neither did Judge Nye. (Add. 956–60,

- 36 -

**20-ER-5044**

1000–12, 1013–23, 2099–119.) In fact, Judge Nye never addressed a single one of McDermott's many opinions. (Add. 956–60, 1000–12.)

McDermott's report complied with *Daubert* and Rule 702, and was prepared consistent with *McDevitt*, 522 F. Supp. 2d at 1291–92. (Add. 1064–725.) As in *Elosu*, Judge Nye erroneously skipped the reliability step and jumped straight to wholesale exclusion by improperly and erroneously deciding McDermott was too biased and had thus become an advocate. (Add. 1004–12.) By his choice of words, Judge Nye justified his invasion of an area which the law reserves to the jury to decide.

Thus, Judge Nye erred because there was no dispute that McDermott's opinions are reliable under Rule 702 and *Daubert*.

Accordingly, this Court should vacate Judge Nye's decisions, find that McDermott is qualified, his opinions are relevant and reliable, and that he may testify as an expert. This will also ensure that this case can be speedily, justly, and efficiently tried one time before McDermott retires at the end of 2025. Because McDermott's opinions also pertain to Miesen's derivative claims, for the reasons stated below, Judge Nye's erroneous decision dismissing the derivative claims needs to be vacated

- 37 -

**20-ER-5045**

so McDermott can testify for all claims and issues in one trial.

### c. Judge Nye committed numerous clear errors when five years after Judge Dale ruled that Miesen's derivative demands were adequate, he reversed Judge Dale's decision.[2]

### i. Judge Nye erred because Miesen's demands exceeded the requirements under Idaho law.

Miesen's demands as to the Individual and CropUSA Defendants exceeded Idaho law and complied with the more onerous standards in the California statute,[3] *Potter v. Hughes*, 546 F.3d 1051, 1056 (9th Cir. 2008) (stating California law), and *Munding*, 822 F. App'x at 548–49 (citing *Potter* and apparently stating the standard stated in *Potter*).

A derivative action is supposed to be a "suit of equity," not one of inequity. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991). The intent for adopting the demand requirement was to prevent " 'strike

---

[2] The Rule 12(c) and Rule 12(b) standards are the same. *E.g., Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1068 (9th Cir. 2020); *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

[3] Cal. Corp. Code section 800(b)(2) requires: "The plaintiff alleges in the complaint . . . that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file." (Add. 2612.)

suits.' " *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371 (1966); *Kugler v. Nelson*, 374 P.3d 571, 578 (Idaho 2016) (" 'To prevent abuse of [a shareholder derivative suit] . . .' "). This is not a strike suit.

The law of the state of incorporation, here Idaho (Add. 2166), governs the determination of demand issues. *Kamen*, 500 U.S. at 108–09.

> The demand requirement "affords the directors an opportunity to exercise their reasonable business judgment[.]" "[T]he function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of 'substance,' not 'procedure.' "

*Kugler*, 374 P.3d at 578 (citations omitted). Stated more clearly,

> "The [demand] rule is intended 'to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place . . .' "

(Add. 2609 (quoting Mod. Bus. Corp. Act § 304 cmt. 4 (2003).)

The Idaho statute dealing with derivative demands states:

No shareholder may commence a derivative proceeding until:

> (1) A written demand has been made upon the corporation to take suitable action; and

> (2) Ninety (90) days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the

- 39 -

corporation would result by waiting for the expiration of the ninety (90) day period.[4]

Idaho Code section 30-29-742 (Add. 2610). As Judge Dale correctly stated:

The Idaho statute provides no instruction on how to determine whether the content of the demand is adequate However, the Idaho Supreme Court in *McCann v. McCann*, 61 P.3d 585, 592 (Idaho 2002), cited to 19 Am. Jur. 2d *Corporations* § 2278, 173–74 (1986) for guidance on determining the adequacy of a demand letter:

The demand on the directors need not assume a particular form nor need it be made in any special language. However, the stockholder must make an earnest and sincere, and not a feigned or simulated, effort to induce the directors to take remedial action in the corporate name. Statements should be presented to the directors showing the wrong complained of, accompanied by sufficient responsible data which will enable the directors to determine whether litigation could be engaged in with some hope of success. The shareholder must state facts, not mere general charges and conclusions.

The demand should give the directors a fair opportunity to initiate the action which the shareholder wants to undertake, and name the potential defendants, as well as the shareholder making the demand.
. . . .
. . . "In most instances, the shareholder need not specify his legal theory, every fact in support of that theory, or the precise quantum of damages." *Allison on Behalf of Gen. Motors Corp.*

---

[4] The statute was amended twice while this case was pending, but the pertinent portions remained unchanged. (Add. 2607, 2610–11.)

*v. Gen. Motors Corp.*, 604 F. Supp. 1106, 1117 (D. Del. 1985). "Decisions as to how and on what theory the corporation will pursue wrongdoers are the proper province of the Board of Directors." *Id.*

(Add. 2259, 2263–64.) Notably, *Allison* was cited in the Model Business Corporation Act ("MBCA") comments for the guidance that:

> Detailed pleading is not required since the corporation can contact the shareholder for clarification if there are any questions. *Allison on Behalf of Gen. Motors Corp. v. Gen. Motors Corp.*, 604 F. Supp. 1106, 1117 (D. Del. 1985). In keeping with the spirit of this section, the specificity of the demand should not become a new source of dilatory motions.

(Add. 2608 (quoting Mod. Bus. Corp. Act § 304 cmt. 1 (2003).) Many years after *McCann* was issued, the Idaho Supreme Court held that the MBCA comments can be used to interpret Idaho statutes. *Wagner v. Wagner*, 371 P.3d 807, 811 (Idaho 2016). And "a federal court must predict how the highest state court would decide the issue." *McKown v. Simon Prop. Grp. Inc.*, 689 F.3d 1086, 1091 (9th Cir. 2012). So, Judge Dale correctly predicted that the Idaho Supreme Court would use the MBCA comments for guidance as noted in her above analysis and when she stated:

> The Court finds the demand letters demonstrate an earnest and sincere effort to inform the AIA board of directors of the alleged wrongdoing. To argue that Miesen could have attempted to clarify his allegations is disingenuous,

- 41 -

20-ER-5049

considering AIA itself did not ask for clarifications. Because no follow up was requested by AIA, Miesen was left with no alternative, other than to file suit.

(Add. 2260.) Judge Nye erred by refusing to consider the MBCA comments to guide his decision on the vague statute. (Add. 451–52.)

*Munding* is distinguishable. In an unpublished decision, a panel on this Court found that the limited portions of the two 2016 derivative demands that referenced Munding and his law firms were inadequate. *Munding* confirmed: "the omitted portions of the letters are **no more specific, nor any more relevant**, than the excerpts included in the Amended Complaint." *Munding*, 822 F. App'x at 548 (emphasis added) (Add. 897–902). This was because the two 2016 demand letters were not primarily directed at Munding, who was not sued by Miesen in this case. Both demand letters opened with definitions identifying wrongdoers and parties to be acted against by the AIA Entities. Further, the definitions defined groups of some wrongdoers so that they could be referred to efficiently in the letters. It is important to note that Munding was not mentioned in this definition paragraph setting out the proposed defendants. (Add. 634, 703.) This definition paragraph did include every

- 42 -

**20-ER-5050**

defendant set out in Third Amended Complaint. (*Id.*; Add. 2167–68.) The letters contained a total of **102 paragraphs** but only mentioned Munding in **4 paragraphs**. (Add. 637 ¶16, 639–40 ¶22, 709 ¶29, 711 ¶35, 633–43, 702–14.) The remaining paragraphs and the two proposed amended complaints incorporated into the two 2016 demands were directed primarily at the defendants in this case. The Individual Defendants and CropUSA were named defendants in the proposed amended complaints incorporated by reference into paragraph 19 of the June demand and paragraph 32 of the August demand and provided additional comprehensive facts and causes of action as part of those two demands. (Add. 638 ¶19, 644–701, 710 ¶32, 715–72, 773–832.) Unlike Judge Dale, Judge Nye and the AIA Entities, the court in *Munding* never had these complaints, which were highly relevant here.[5] (Add. 644–701, 715–72, 773–832, 2161–244, 2376–2452, 2984–3043, 3044–3127.) Thus, Judge Nye erred by not properly distinguishing *Munding*.

---

[5] GemCap asserted third-party claims against Munding's firm, Crumb & Munding, for contribution and indemnification. (Add. 3128–39.)

- 43 -

**20-ER-5051**

*Munding* did not even provide a persuasive analysis of Idaho law or predict how the Idaho Supreme Court would decide any of the issues raised here. *Munding*, 822 F. App'x at 548–49; *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020); *McKown*, 689 F.3d at 1091. Thus, *Munding* is wholly distinguishable and had no persuasive value to support Judge Nye's decision. Judge Nye erred by relying on *Munding*. Of course, *Munding* "is not binding on this panel." *Corbin v. Time Warner Ent.-Advance/Newhouse P'ship*, 821 F.3d 1069, 1076 n. 5 (9th Cir. 2016).

Here, Judge Nye clearly erred because Miesen's derivative demands for the Individual and CropUSA Defendants exceeded Idaho law and even complied with the more onerous standards in California law, *Potter* and *Munding*.

Well over 120 days before the Third Amended Complaint ("TAC") was filed on April 24, 2017 (Add. 2161–244) and became the operative complaint under which this case is proceeding, the following five documents were served upon John Taylor, who was a sophisticated businessman and an attorney acting as the sole director the AIA Entities' so-called boards (Add. 875, 2167, 3156), and mailed to each of the AIA

- 44 -

**20-ER-5052**

Entities at P.O. Box 538, Lewiston, ID 83501.

► 1    The June 13, 2016, derivative demand (Add. 633–43), which contained over 40 paragraphs pertaining to the defendants in Miesen's TAC. The demand included definitions for groups of named defendants. For example, the Individual Defendants were included in the definition of the "Controlling AIA Defendants," which was also used in Miesen's TAC. (Add. 634, 2168 ¶17.) The CropUSA Defendants were defined as "CropUSA", the same defined term used in Miesen's TAC. (Add. 2167 ¶10.) The Individual and CropUSA Defendants were included in "Combined Defendants". The AIA Entities were defined as "AIA". Munding and his law firms were not included in any of the defined terms for groups of defendants. As Judge Dale correctly found, this demand provided adequate information for numerous causes of action against the defined groups of defendants, who are named defendants in the TAC. (Add. 2246–49, 2257–64.) Judge Dale provided a better and more succinct analysis than the undersigned attorneys could provide to this Court.

► 2    Paragraph 19 of the June 13, 2016, demand was the most critical paragraph, which states:

- 45 -

**20-ER-5053**

> Pursue all possible claims against the Combined Defendants for taking action violating AIA's amended articles of incorporation, violating AIA's bylaws, violating statutory and common law, and committing torts against AIA, together with aiding and abetting others (including other Combined Defendants) in covering up the torts committed against AIA. **Examples of the torts and the covering up of those torts are contained with the proposed Second Amended Complaint recently filed in the federal derivative lawsuit by Dale Miesen and Donna Taylor—the facts and torts alleged in that Second Amended Complaint have continued since prior demands**.

(Add. 638 ¶19 (emphasis added).) The proposed Second Amended Complaint incorporated into the demand as stated above was filed on May 29, 2016 (Add. 644–701),[6] which resulted in a copy being served upon John Taylor via the ECF filing system in this case and a copy was also mailed to the AIA Entities on that same day. (Add. 3218.) That proposed complaint also included a "laundry list" of specific ongoing misconduct. (Add. 677–80.) Thus, John Taylor was in possession of the facts and causes of action in the Proposed Second Amended **almost one**

---

[6] Judge Nye erroneously refused to consider the Proposed Second Amended Complaint and the Proposed Third Amended Complaint. *Infra* at 65–67. However, he oddly conceded "the Court also recognizes Miesen's position that the June 2016 Demand is best understood in the context of the Second Amended Complaint." (Add. 434 n. 8.)

**year** before the TAC was filed.

►  **3**    The August 23, 2016, derivative demand (Add. 702–714), contained over 50 paragraphs pertaining to the defendants in Miesen's TAC. This demand contained the same defined groups of defendants as the June 2016 demand and the terms "Controlling AIA Defendants" and "CropUSA" were replicated in Miesen's TAC, as addressed above. (Add. 703.) Judge Dale correctly found that this demand provided adequate information for numerous causes of action against the defined groups of defendants, who are named defendants in the TAC. (Add. 2246–49, 2257–64.) Once again, Judge Dale provided a better and more succinct analysis than the undersigned attorneys could provide to this Court.

►  **4**    Paragraph 32 of the August 2016, demand was the most critical paragraph, which states:

> Pursue all possible claims against the Combined Defendants for taking action violating AIA's amended articles of incorporation, violating AIA's bylaws, violating statutory and common law, and committing torts against AIA, together with aiding and abetting others (including other Combined Defendants) in covering up the torts committed against AIA. **Examples of the torts and the covering up of those torts are contained with the proposed Second and Third Amended Complaints recently filed in the federal derivative lawsuit by Dale Miesen and Donna Taylor—**

- 47 -

**20-ER-5055**

**the facts and torts alleged in that Second Amended Complaint have continued since prior demands**.

(Add. 710 ¶32 (emphasis added).) The Proposed Second Amended Complaint incorporated into the demand was the same one that was incorporated into the June 13, 2016, demand, which was addressed above. Thus, once again, John Taylor had the facts and causes of action in the Proposed Second Amended **almost one year** before the TAC was filed. The proposed Third Amended Complaint referred to in the August 2016 demand was filed on July 15, 2016 (Add. 773–832), which resulted in a copy being served upon John Taylor via the ECF filing system and a copy was also mailed to the AIA Entities on that same day. (Add. 3238.) That proposed complaint also included a "laundry list" of specific ongoing misconduct. (Add. 806–10.) Thus, John Taylor had the facts and causes of action in the Proposed Third Amended for **over nine months** before the TAC was filed (this was similar to, but not identical to, the Proposed Third Amended Complaint that was later filed as the operative TAC).

► 5    On November 4, 2016, an exact copy of the Proposed Third Amended Complaint, which was identical to the subsequently filed and now operative TAC filed on April 24, 2017, was served upon John Taylor

- 48 -

via the ECF filing system and mailed to each of the AIA Entities. (Add. 2161–244, 3044–127, 3212.) In other words, the AIA Entities' so-called boards, comprised solely of John Taylor, had a copy of Miesen's present TAC **over five months** before Miesen's TAC was filed on April 24, 2017.

At the time of the service and mailing of the 2016 demands, and the exact copies of the complaints to each of the AIA Entities and John Taylor, the so-called boards for AIA Entities consisted of only defendant John Taylor who was also the President of both AIA Entities. As the President of the AIA Entities, John Taylor was personally served through the ECF filing system and he was responsible to review the mail and in fact he responded to the demands, as Judge Dale noted. (Add. 2219–20, 2249, 2264.) **Thus, more than 90 days before the Third Amended Complaint was officially filed as the operative complaint in this case, the so-called boards of both AIA Entities have been provided with two comprehensive derivative demand letters, two detailed proposed complaints, and most importantly with an exact proposed copy of the Third Amended Complaint that was officially filed more than 120 days later on April 24, 2017**. There

- 49 -

**20-ER-5057**

can be no question that this was enough information to satisfy Idaho's requirements and permit any board to decide what action was being requested and whether or not to take the action.[7]

Thus, the intent of the vague Idaho statute and the applicable requirement that the board of a corporation have at least 90 days and enough information to be able to decide what action, if any, to take was exceeded in Miesen's case as to the Individual and CropUSA Defendants. *Surowitz*, 383 U.S. at 371–74; *Kugler*, 374 at 578; *State v. Head*, 543 P.3d 41, 49 (Idaho 2023); *Smith v. City of Preston*, 586 P.2d 1062, 1066 (Idaho 1978). Of course, since the board of both AIA Entities consisted of only the primary wrongdoer, John Taylor, the AIA Entities' so-called boards were never going to take any action.

It is interesting to note that the California statute, Cal. Corp. Code section 800, at issue in *Potter*, 546 F.3d at 1056, mentioned in this Court's unpublished memorandum in *Munding* (Add. 897–902), upon which Judge Nye relied (he mentioned *Munding* over 40 times), was even

---

[7] John Taylor also served on the boards and was personally served through the ECF filing system with the prior operative the complaints in this case were filed. (Add. 577–632, 2376–452, 2986–3043.)

- 50 -

**20-ER-5058**

complied with by Miesen here. It says that providing the board with a copy of the complaint that will be filed, if the board does not act, constitutes an adequate demand. Of course, in *Munding*, unlike this case, the court did not have a docket that included any of the proposed complaints set out earlier or proof that they were served upon John Taylor via the ECF filing system and mailed to both AIA Entities.

Judge Nye also addressed the prior 2008 demand and the 2012 demands. However, the Third Amended Complaint was the only operative complaint after Judge Dale's decision because an:

> " 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.' In other words, 'the original pleading no longer performs any function. . .' "

*Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (citations omitted). Thus, Miesen need not address the adequacy of the 2008 demand or the 2012 demands, which is why the Individual and CropUSA Defendants did not challenge those demands again in 2016.

### ii. Alternatively, Judge Nye erred by not enforcing Judge Dale's 2017 decision when he failed to apply the law of the case doctrine.

More than 5 years after Judge Dale found the derivative demands adequate. After more than 900 Docket filings had been made after Judge

- 51 -

Dale's ruling. After Miesen had incurred more than $350,000 in costs (not legal fees). After all the foregoing, Judge Nye committed a clear error violating the law of the case doctrine when he ruled that the derivative demands were inadequate. (Add. 419–20, 433–65, 318–19, 2479–561.)

In 2017, Judge Dale refused to dismiss the derivative claims in a thoughtful and well-reasoned decision that correctly applied Idaho law to find that the two 2016 derivative demands were adequate after the adequacy issue was raised by the Individual and CropUSA Defendants. (Add. 2246–49, 2257–64, 2297–303.)

Yet, in 2022, more than five years after Judge Dale's decision, Judge Nye revisited the adequacy issue to find the five documents served on the AIA Entities' so-called boards in a timely fashion did not satisfy the Idaho demand requirement. (Add. 433–67, 501–07, 2120–39.) In doing so, Judge Nye turned the law-of-the-case doctrine on its head.

> "The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." This doctrine was "founded upon the sound public policy that litigation must come to an end," and serves many purposes including "aid[ing] in the efficient operation of court affairs" and "advanc[ing] the principle that in order to maintain consistency during the course of a single lawsuit,

- 52 -

**20-ER-5060**

reconsideration of legal questions previously decided should be avoided."

The law of the case doctrine serves additional purposes when a new district judge is assigned to the case and is asked to reconsider the former judge's decision. Among other things, "the doctrine increases confidence in the adjudicatory process: reconsideration of previously litigated issues, absent strong justification, spawns inconsistency and threatens the reputation of the judicial system." Furthermore, "judges who too liberally second-guess their co-equals effectively usurp the appellate function and embolden litigants to engage in judge-shopping and similar forms of arbitrage."

Consistent with this principle, "judges who sit in the same court should not attempt to overrule the decisions of each other." As one district judge has noted, the issue of reconsidering a decision of a different judge of the same court is a complicated one: "It is assuredly more likely that two judges will see an issue differently than it is that the same judge will see the same issue differently across time." Accordingly, when faced with such a situation, judges must—in light of the overarching "principles of comity and uniformity"—make every effort " 'to preserve the orderly functioning of the judicial process.' "

. . . .

. . . A second district judge should not reconsider the ruling of a predecessor unless: "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial."

. . . .

. . . [D]istrict judges should explicitly consider whether any of the three circumstances laid out in *Delta Savings Bank* are applicable before proceeding to reconsider a prior order issued

- 53 -

by a previous judge. In cases like this one that do not involve an intervening change in law or new evidence adduced during the course of the litigation, this analysis must include an explanation of (1) why the previous decision is "clearly erroneous"; and (2) why enforcement of the previous decision "would work a manifest injustice." . . .

*Zeyen v. Bonneville Joint Dist., # 93*, 114 F.4th 1129, 1136–39 (9th Cir. 2024) (citations omitted); *accord Delta Sav. Bank v. United States*, 265 F.3d 1017, 1027–28 (9th Cir. 2001). The doctrine applies to any "issue that has already been decided." *Relevant Group, LLC v. Nourmand*, 116 F.4th 917, 926 (9th Cir. 2024).

Here, Judge Nye erred by not enforcing Judge Dale's decision which rejected a challenge to the adequacy of Miesen's derivative demands. Judge Nye ruled on the identical issue five years after Judge Dale had decided the same issue. When Judge Dale ruled, she was a magistrate sitting by the consent of the parties, i.e., Judge Dale was the equivalent to a district court judge sitting on this case. (Add. 2456, 2461, 2470 (Dkts. 43, 101, 192).) 28 U.S.C. § 636(c).

Judge Dale's decision was correct. Even Judge Nye found no errors or recognized grounds under the law-of-the-case doctrine to justify refusing to enforce Judge Dale's decision. (Add. 419–20, 433–65.) Judge

- 54 -

Nye did not make the required findings that Judge Dale committed any clear errors (let alone any errors). Judge Nye did not make the required finding that enforcing Judge Dale's decision would be manifestly unjust to the Individual and CropUSA Defendants. Judge Nye did not base his decision on any new controlling authority or any newly discovered evidence.

Judge Nye's decision contravened the salutary purposes for the law of the case doctrine. *E.g., Zeyen*, 114 F.4th at 1138–39. Judge Nye's decision turned the doctrine on its head because his decision resulted in inequity and manifest injustice against Miesen and the other innocent shareholders—Miesen and his counsel incurred over $350,000 in costs litigating this case based on the two prior rulings that the demands were adequate. (Add. 230–55, 318–19, 1951–56.) *Delta Ltd. v. U.S. Customs & Border Prot. Bureau*, 393 F. Supp. 2d 15, 17 (D. D.C. 2005) ("it seems clear that injury to innocent third parties would fall beneath the 'manifest injustice' umbrella."); *U.S. ex. rel. Rafter H Constr., LLC v. Big-D Constr. Corp.*, 358 F. Supp. 3d 1096, 1101 (D. Idaho 2019) ("Defendants recognize that manifest injustice exists when the result is inequitable.").

- 55 -

Judge Nye's decision is protecting the Individual Defendants from liability for their serious misconduct—misconduct that even continued after this case was filed and was not even acknowledged in his decision. Judge Nye found no valid grounds to disregard this Court's precedent. *Zeyen*, 114 F.4th at 1138–39, and *Delta*, 265 F.3d at 1027–28.

Judge Nye erred by ruling that he was not bound by Judge Dale's 2017 decision because the case was in a different procedural posture. (Add. 444–46.) Judge Nye's justification was erroneous for three reasons.

First, the type of motion that brings an issue to the court's attention is immaterial because the doctrine applies to any "**issue** that has already been decided by the same court." *Nourmand,* 116 F.4th at 926 (emphasis added). The issue of the adequacy of the demands was decided by Judge Dale when she granted Miesen's motion to amend in part and provided a thoughtful and well-reasoned basis for deciding the demand issue. (Add. 2246–49, 2257–64.)

Second, Judge Nye erred because the defendant could not raise new arguments or submit any new evidence regarding the adequacy of the demands because their arguments and evidence were all available back

- 56 -

in 2016, and they had all been filed with the court before 2016. (Add. 528–810.) *Marlyn Neutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009); *Zeyen*, 114 F.4th at 1138–39.

Third, Judge Nye erred by ruling the doctrine does not apply because the adequacy of the demands was raised in opposition to Miesen's motion to amend. Because the Individual and CropUSA Defendants asserted amendment would be futile, the defendants' opposition was the equivalent to a Rule 12(b)(6) motion to dismiss. (Add. 445, 2297–303.) *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (overruled on other grounds); *Talley v. Wetzel*, 15 F.4th 275, 285 n. 6 (3d Cir. 2021). And, motions filed under Rule 12(b) and Rule 12(c) "are functionally identical." *Dworkin*, 867 F.2d at 1192. Thus, Judge Nye was bound by Judge Dale's decision.

Although he noted *Munding* was unpublished and could only be used for its persuasiveness (Add. 452 & n. 23), Judge Nye erroneously relied on *Munding* as if it was controlling authority when only an Idaho appellate court can provide the controlling authority (his decision mentions *Munding* over 40 times). (Add. 419–20, 433–65.) Because the

- 57 -

AIA Entities are Idaho corporations (Add. 2165–66), Idaho law and Idaho appellate court decisions were the sole controlling authority. 9th Cir. R. 36-3(a); *Kamen*, 500 U.S. at 108–09 (demand issues governed by the law of the state of incorporation); *West v. AT & T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law."); *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986) (federal courts are "bound to follow a state court's interpretation of that state's statutes."); *Law*, Black's Law Dictionary (12th ed. 2024) (defining "controlling law"); *see Oliva v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 864 F.3d 492, 505 (7th Cir. 2017) (Manion, J., dissenting).

Thus, Idaho Code sections 30-1-742 and 30-29-742 and *McCann,* 61 P.3d at 592 were the only controlling authority—not *Munding*. Judge Nye erred by relying on *Munding* to misapply the law of the case doctrine.

Accordingly, this Court should vacate Judge Nye's decision, order that the law-of-the-case applies to Judge Dale's decision, and order the decision enforced. This Petition also shows his errors were not harmless.

**20-ER-5066**

### iii.   Judge Nye erred because he did not find that Judge Dale had erred or abused her discretion when she rejected challenges to the demands.

Judge Nye did not find any errors or abuse of discretion in Dale's thoughtful decision in 2017 correctly applying Idaho law to find that Miesen's two 2016 derivative demands were adequate. (Add. 2246–49, 2257–64, 433–65.) Judge Nye even stated the determination of the adequacy of a demand was a discretionary one:

> "[a] district court's determination that [the plaintiff] did not comply with Rule 23.1 or [state] law regarding the demand . . . is reviewed for abuse of discretion."

(Add. 443 (quoting *Potter*, 546 F.3d at 1056).) Yet, he found no error. Thus, Judge Nye clearly erred because he did not find that Judge Dale erred or abused her discretion. *Id.*

### iv.   Judge Nye erred by relying on *Munding* as the "pivotal basis" for his decision.

Judge Nye erroneously relied on *Munding* as the pivotal basis to find Miesen's derivative demands were inadequate in this case (he mentions *Munding* over **40 times**), which was another reversable error. (Add. 419–20, 433–65.) *Grimm*, 971 F.3d at 1067 ("a nonprecedential disposition is not appropriately used—as it was here—as the pivotal

basis for a legal ruling by a district court."). Judge Nye's clear error was compounded because *Munding* was distinguishable and contained no persuasive analysis or prediction of Idaho law on any demand issues, as established above. *Supra* at 42–44.

At most, Judge Nye could acknowledge the existence of *Munding* and use it for any persuasive purposes (there were none for his decision). But Judge Nye erroneously used *Munding* as hearsay and for the improper purpose of establishing the adjudicative facts that the two 2016 demands were inadequate. For example, Judge Nye stated that he "now has the benefit of Ninth Circuit case on this exact matter," Add. 465, and "This is the same *Munding* case in which the Ninth Circuit held that the June 2016 Demand was inadequate." (Add. 424 n. 7.) Judge Nye committed clear errors because *Munding* was inadmissible hearsay, and he could not consider any of the adjudicative facts in *Munding*. (Add. 419–20, 433–65, 443, 446–47, 498–501.) *E.g.,* Fed. R. Evid. 201(b)(2); Fed. R. Evid. 802; 21B Charles Alan Wright, et al., *Federal Practice and Procedure § 5106.4* (2d ed.) ("When offered to prove the facts stated, court records are hearsay. . ."); *M/V Am. Queen v. San Diego Marine Constr.*

- 60 -

**20-ER-5068**

*Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) ("a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it"); *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n. 1 (9th Cir. 2004) ("[T]he Court may judicially notice the existence of another court's decision . . . but not the facts recited in that decision or other filings."); *Johnson*, 950 F.3d at 705 ("The overarching concern with taking notice of judicial records for 'the truth of the matter asserted' is the improper admission of hearsay.").

### v.   Judge Nye erred because he should have enforced Judge Dale's order according to its plain terms.

District court orders are documents of considerable import. A district court speaks to the parties and the court of appeals primarily through its orders. . . . But when a court's order is clear and unambiguous, neither a party nor a reviewing court can disregard its plain language "simply as a matter of guesswork or in an effort to suit interpretive convenience."

The short of it is that, absent amendment or vacation, a court must carry out and enforce an order that is clear and unambiguous on its face, whether or not the inscribed language reflects the court's recollection of its actual intent. Put another way, unless and until a clear and unambiguous order is amended or vacated—and the court below eschewed that course—"a court must adopt, and give effect to, [the order's] plain meaning."

- 61 -

*Negron-Almeda v. Santiago*, 528 F.3d 15, 22–23 (1st Cir. 2008) (citations omitted; alterations in original).

Here, Judge Nye committed clear errors by not enforcing Judge Dale's order requiring the defendants to assert all pleading defenses in opposition to Miesen's motion to amend. The Individual and CropUSA Defendants' joinder to the Hawley Troxell's motion for judgment on the pleadings violated the clear terms of Judge Dale's decision, which was entered after the defendants' prior litigation tactics. Her order stated:

> The Court would have expected (and expects in the future) grounds for dismissal to have been raised in response to the motion to amend instead of misleading representations that Defendants did not oppose Plaintiffs' motion to amend. The notices of non-opposition were not consistent with Rule 1. *See* Fed. R. Civ. P. 1, 2015 Comm. Note. ('[D]iscussions of ways to improve the administration of civil justice regularly include pleas to discourage over-use, misuse, and *abuse of procedural tools that increase cost and result in delay*.') (emphasis added).

(Add. 3217 n. 2 (emphasis in original); *see* Add. 3217 n. 3.) Judge Dale's intent was crystal clear—to prevent further delays and the needless increased costs of litigation by requiring the defendants to assert all pleading defenses in opposition to Miesen's motions to amend.

- 62 -

**20-ER-5070**

Judge Dale's order was authorized by Rule 1 and Rule 16. "The scheduling order may: include other appropriate matters." Fed. R. Civ. P. 16(b)(3)(B)(viii). Judge Dale's order was also authorized by Rule 23.1:

> The court has inherent power to provide for the conduct of the proceedings in a derivative action, including the power to determine the course of the proceedings . . .

Fed. R. Civ. P. 23.1, advisory committee's notes (1966 Addition). (Add. 2587.) Judge Dale's order was also in accord with the MBCA Comments:

> In keeping with the spirit of this section, the specificity of the demand should not become a new source of dilatory motions.

(Add. 2608 (quoting Mod. Bus. Corp. Act § 304 cmt. 1 (2003)).)

And this is precisely what occurred when Hawley Troxell's motion for judgment on the pleadings was filed over four years after Judge Dale's order, which the Individual and CropUSA Defendants joined to take the proverbial "another bite at the apple" in arguing Miesen's derivative demands were inadequate. (Add. 2120–39, 2006–08.) By that time, this case had been pending for over ten years and Miesen had incurred over $350,000 in costs litigating this case, which is the increased costs Judge Dale sought to prevent, along with the years of time consuming motion practice and costly resolution of discovery disputes with a discovery

**20-ER-5071**

master. (E.g., Add. 318–19, 2272–551, 2471–548.)

Judge Nye also erred when he ruled that he was not bound by Judge Dale's 2016 decision. (Add. 439.) Judge Dale's decision was a formal order. (Add. 2315–28.) Judge Nye and this Court frequently include fully enforceable orders and directives in footnotes. *E.g., Allen v. Campbell*, Case No. 4:20-cv-00218-DCN, 2022 WL 1442969, at *2 n. 3 (D. Idaho May 5, 2022); *Williams v. Brooks*, Case No. 1:17-cv-00223-DCN, 2018 WL 2069708, at *1 n. 1 (D. Idaho May 3, 2018); *Blackman v. Cisneros*, 122 F.4th 377, 384–88 n. 3, 7, 9 & 12 (9th Cir. 2024); *Hoffmann v. Pulido*, 928 F.3d 1147, 1152 n. 4 (9th Cir. 2019).

Judge Nye also erred by providing his own unilateral interpretation that was inconsistent with Judge Dale's order. *Santiago*, 528 F.3d at 23. While Hawley Troxell argued that they did not raise the demand issue back in 2016 (Add. 2618), the Individual and CropUSA Defendants raised the issue back in 2016. (Add. 2297–303.)

The Individual and CropUSA Defendants followed Judge Dale's order and challenged the adequacy of the demands. (Add. 2297–303.) This confirmed that Judge Dale's order was easily understood.

Accordingly, Judge Nye erred when he refused to enforce Judge Dale's easily understood order. This Court should vacate his decision, direct that an order be entered denying the motion, and find that the Individual and CropUSA Defendants violated Judge Dale's order. *E.g., U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985).

### vi. Judge Nye erred by refusing to consider numerous documents that Miesen submitted and this Court should consider documents on appeal.

"A court may, however, consider certain materials . . . documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."

*Ritchie*, 342 F.3d at 907; *Simmons v. Galvin*, 575 F.3d 24, 30 n. 5 (1st Cir. 2009); *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n. 18 (9th Cir. 1999); *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994); Fed. R. Evid. 201(b)(2), (c)(2) and (c)(3).

Although he quoted *Ritchie* in his decision (Add. 431), Judge Nye committed a clear error by not granting Miesen's request for judicial notice of twelve documents, ten of which were court records in this case. (Add. 497–99, 577–632, 644–701, 715–72, 773–832, 833–34, 835–51, 852–

- 65 -

**20-ER-5073**

74, 875, 876, 903–09, 910–55, 2905–75.) There was no valid dispute as to the authenticity or the contents of any of those documents, and Miesen was not seeking to use any of those documents as adjudicative facts, only that the statements or allegations were made in the relevant documents.

Most critical were the prior amended complaints that had been filed in this case. For example, Judge Nye refused to consider the proposed Second Amended Complaint (which was relied upon in both demands) and the Proposed Third Amended Complaint that were incorporated into the 2016 demands. (Add. 638 ¶19, 710 ¶32, 644–701, 715–72, 773–832.) As explained above (*supra* at 38–51), those two amended complaints alone establish, as a matter of law, that the 2016 demands were adequate as to the Individual Defendants and CropUSA (Munding and his firms were not named as a defendant in any of those complaints). Judge Nye's failure to do so was unusual because he conceded: "the Court also recognizes Miesen's position that the June 2016 Demand is best understood in the context of the Second Amended Complaint." (Add. 434 n. 8.)

- 66 -

Judge Nye committed another clear error by not considering fourteen documents because they were also referred to, incorporated, and/or relied upon by the TAC and were central to the adequacy of the derivative demands, which is in turn is central to Miesen's derivative claims. (Add. 434–36, 497–99, 528–875, 903–55, 2161–244; see e.g., Add. 2167 ¶12, 2168 ¶15, 2171–72 ¶¶28 & 34, 2176 ¶51, 2179 ¶63, 2186–87 ¶94, 2188–89 ¶¶99–100, 2191–92 ¶¶108–12, 2194–95 ¶¶120–21, 2201 ¶140, 2202 ¶140, 2204 ¶150, 2208 ¶160, 2209 ¶164(b), 2217–19 ¶¶172– 80, 2226 ¶202, 2232–33 ¶226, 2239 ¶243.)

For the same reasons and authorities stated above, Miesen also requests this Court to take judicial notice of the documents relied upon in this Petition and to consider them to the extent they are incorporated or relied upon by Miesen's TAC. (Add. 2165–242.) Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding."). The necessary information is contained within the attached Addendum. For the convenience of this Court and the parties, Miesen has provided a listing of all of the documents relied upon in this Petition, which are all judicial records, in the attached Table of Contents for the Addendum,

- 67 -

which also contains detailed page citations for many discrete matters.

Having established above Judge Nye's numerous clear errors, Miesen will now show why the other *Bauman* factors are satisfied.

## 2. The first and second *Bauman* factors are also satisfied.

> "The first *Bauman* factor highlights the need for mandamus to be used only when no other realistic alternative is (or was) available to a petitioner." The second *Bauman* factor is similar but focuses on whether the harm to the petitioners cannot be corrected on a direct appeal. These factors are usually considered together.

*Mersho*, 6 F.4th at 902 (citations omitted).

Here, the first and second factors are satisfied. Miesen has "no realistic alternative to challenge [Judge Nye's] decisions absent mandamus relief." (Add. 2, 416–67, 956–60, 1000–12.) *Mersho*, 6 F.4th at 902. None of those orders, or Judge Nye's failure to timely adjudicate the case, may be appealed under the collateral order exception. (*Id.*)

Miesen has also exerted all reasonable efforts to appeal. Over three years ago, Judge Nye denied Miesen's motion for permission to appeal the exclusion of McDermott to this Court. (Add. 480–88.) Over three years ago, Miesen tried directly appealing the exclusion of McDermott, which this Court dismissed. (Add. 489–90.) Over two and a half years

ago, Judge Nye denied Miesen's motion to certify derivative demand questions to the Idaho Supreme Court, and Judge Nye did not enter an appealable Rule 54(b) judgment after he dismissed all of Miesen's derivative claims. (Add. 420–26, 456–67.)

Thus, "[Miesen] do[es] not have an adequate remedy, other than mandamus." *Mersho*, 6 F.4th at 902; *Christensen v. U.S. Dist. Court for Cent. Dist. of Cal.*, 844 F.2d 694, 697 (9th Cir. 1988).

The harm to Miesen cannot be corrected on a direct appeal. If this case is not efficiently expedited now, the issues will be moot. "By refusing to rule on [the pending motions or to adjudicate the case], [Judge Nye] has failed to exercise [his] judicial power, which in turn has inhibited this Court's exercise of appellate jurisdiction." *Sharon*, 918 F.2d at 436.

The harm caused by more years of delay and costs is irreversible. At the pace that this 14 year old case is proceeding, there may never be a final judgment, including before more parties and witnesses die. *Supra* at 11–25. Because Judge Nye erroneously excluded McDermott as an expert and erroneously dismissed Miesen's derivative claims, Miesen will be prejudiced by another costly trial after his direct claims are tried (e.g.,

- 69 -

**20-ER-5077**

Add. 165–79) and likely years more of delay before his derivative claims could be tried. Also, since McDermott is retiring at the end of 2025, any appeal of his exclusion after the entry of a final judgment (if that occurs) will render Miesen's appeal moot as to McDermott ever testifying again and the more than $100,000 paid to McDermott forever lost—especially because his opinions now focus primarily on Miesen's currently dismissed derivative claims. (Add. 318–19, 1384–491, 2731 ¶6.)

If Miesen's health were to deteriorate or he were to pass, the issues raised in the Petition and the entire case could be moot as to Miesen personally. After 14 years, he is entitled to justice and his day in court.

More irreversible harm will also flow from more parties or witnesses dying and aging, evidence becoming stale, and the lost use of any recoveries for Miesen and any other innocent stakeholders. (E.g., Add. 2729–31.)

Thus, the harm will be "irreversible." *Christensen,* 844 F.2d at 697; *Medhekar v. U.S. Dist. Court for the N. Dist. of Cal.,* 99 F.3d 325, 326–27 (9th Cir. 1996) ("To the extent that potential harm exists in this case, it is irreparable and probably cannot even be addressed in a subsequent

appeal from entry of a final judgment because it will be moot.").

### 3. The fourth and fifth *Bauman* factors are also satisfied.

> "[T]he fourth and fifth *Bauman* factors are often mutually exclusive." The fourth factor looks to whether the case involves an "oft-repeated error," while the fifth factor considers whether the petition raises new and important problems or issues of first impression.

*Mersho*, 6 F.4th at 902 (citations omitted).

> Mandamus is particularly appropriate when [this Court is] called upon to determine the construction of a federal procedural rule in a new context. Such a situation presents the rare case where both the fourth and fifth *Bauman* factors are satisfied: [this Court is] presented with a novel question of law that is simultaneously likely to be "oft-repeated."

*Valenzuela-Gonzalez*, 915 F.2d at 1279 (citations omitted)

Here, this is an extraordinarily rare case where both the fourth and fifth factors are satisfied for three distinct issues involving court rules.

Although other courts of appeal have ordered a district court to timely adjudicate or expedite an unduly delayed case, the issue is one of first impression before this Court. Judge Nye's failure to timely adjudicate or expedite this case is an oft-repeated problem. "Courts and commentators agree that civil docket delay in the federal courts is a serious problem. . . . There is a crisis in the federal courts: litigants must

wait too long, and pay too much, to resolve civil disputes." Carrie E. Johnson, Comment, *Rocket Dockets: Reducing Delay in Federal Civil Litigation*, 85 Cal. L. Rev. 225, 225–26 (1997) (footnote omitted). Judge Nye's failure to assign the case to a new judge since he was unable or unwilling to expedite the case is also an issue of first impression. Judge Nye's failure to timely adjudicate the case or expedite it are oft-repeated problems that also contravene Rule 1 and Rule 16(a)(1)–(2) and (c)(2)(P), and this Court is being asked to address both rules in a new context—the failure to timely adjudicate and expedite a case (or assign it to a judge who can). *Supra* at 11–17.

While this Court has issued numerous published opinions requiring a district court to follow Rule 702, *Daubert*, and Rule 403 (which Judge Nye failed to follow), this Court has never addressed Rule 702, *Daubert*, and Rule 403 in the context of, *inter alia*: **(a)** the wholesale exclusion of an expert witness for allegedly being an advocate without following Rule 702 and *Daubert*; **(b)** the determination of the reliability for an expert's opinions on legal malpractice, corporate governance, and a director's breached duties under Rule 702 and *Daubert*; and **(c)** the wholesale

**20-ER-5080**

exclusion of an expert under Rule 702 and Rule 403 without following Rule 702 or *Daubert* and without addressing a single one of the expert's opinions. Judge Nye's failure to follow *Daubert* and Rule 702 has happened more than once. *Supra* at 28–38; *e.g., Elosu*, 26 F.4th at 120–29; *Elosu*, 2021 WL 230038.

Although this Court has issued numerous published opinions pertaining to the admission of evidence or other court decisions under Rule 201, Rule 802, and the limited grounds available to reconsider or avoid the law-of-the-case doctrine (which Judge Nye failed to follow), this Court has never addressed these issues in the context of, *inter alia*: **(a)** the law-of-the-case doctrine for a motion for judgment on the pleadings when the issues were previously addressed by two other judges, both sitting by consent, in a prior motion to amend and a prior Rule 12(b)(6) motion to dismiss; **(b)** the enforcement of a prior judge's scheduling order when the terms of the order are easily understood; and **(c)** the application of this Court's precedent, Rule 201 and Rule 802 to an unpublished memorandum issued by this Court in a different case. While the context is different here, Judge Nye's failure to follow this Court's precedent,

- 73 -

**20-ER-5081**

other Circuit Courts of Appeal's precedent, the law-of-the-case doctrine, Rule 201 and Rule 802 are oft-repeated problems. *Supra* at 38–67.

## IV.  CONCLUSION

For the reasons stated above, this Court should grant Miesen's Petition and order the District Court to expedite this case by holding a trial by the end of 2025, assign a new judge outside of the District of Idaho, and vacate Judge Nye's decisions excluding McDermott and dismissing Miesen's derivative claims against the Individual and CropUSA Defendants. This 14 year old case should be tried one time by the end of 2025 for the benefit of all parties and all courts involved.

If this Court does assign a new judge to this case, then a new judge outside of the District of Idaho should be assigned to preserve the appearance of justice. Based on the above, there is no way that there can be an appearance of justice if Judge Nye remains on this case.

///

///

///

**20-ER-5082**

RESPECTFULLY SUBMITTED this 27th day of January 2025.

RODERICK BOND LAW OFFICE, PLLC

By:___*/s/ Roderick C. Bond*_____
      Roderick C. Bond
      Attorney for Petitioner Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:___*/s/ Andrew Schwam*_____
      Andrew Schwam
      Attorney for Petitioner Dale L. Miesen

- 75 -

## V.   MIESEN'S VERIFICATION OF THE PETITION

I, Dale L. Miesen, being first duly sworn on oath, depose and say:

1.   I am a citizen of the United States and am competent to testify in court.

2.   I am the Petitioner in the above-entitled action and the Plaintiff in the underlying case, *Miesen v. Henderson, et al.*, U.S. District Court for Idaho, Case No. 1:10-cv-00404-DCN.

3.   I have read the contents of this Petition. The contents of this Petition are true and correct to the best of my knowledge and belief.

4.   I have personal knowledge, including as obtained through my review of documents, of the facts alleged in this Petition and those facts are true and correct. The documents in the attached Addendum, which this Petition relied upon, are true and correct copies of those documents.

5.   By verifying this Petition, I am not waiving any attorney-client privileges or work product privileges.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

| January 27, 2025 | /s/ Dale L. Miesen |
|---|---|
| Date | Dale L. Miesen |

- 76 -

20-ER-5084

## VI.    CERTIFICATE OF COMPLIANCE

1.    We are the attorneys for the Petitioner Dale L. Miesen.

2.    This Petition contains 15,815 words, excluding the items exempted by Fed. R. App. P. 32(f) and the verification, according to the word count feature in Microsoft Word. This Petition was prepared using 14-point Century Schoolbook font, which complies with Fed. R. App. P. 32(a)(5) and (6).

3.    Because this Petition does not comply with the length limit of Fed. R. App. P. 21(d) and Cir. Rule 21-2(c), we will file a motion for permission to file an overlength petition.

DATED this 27th day of January 2025.

RODERICK BOND LAW OFFICE, PLLC

By:    */s/ Roderick C. Bond*
        Roderick C. Bond
        Attorney for Petitioner Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:    */s/ Andrew Schwam*
        Andrew Schwam
        Attorney for Petitioner Dale L. Miesen

20-ER-5085

## VII.  STATEMENT OF RELATED CASES

Pursuant to Cir. Rule 21-3, the undersigned state the following:

We are unaware of any related cases currently pending in this Court.

DATED this 27th day of January 2025.

RODERICK BOND LAW OFFICE, PLLC

By:___*/s/ Roderick C. Bond*_____
   Roderick C. Bond
   Attorney for Petitioner Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:___*/s/ Andrew Schwam*_____
   Andrew Schwam
   Attorney for Petitioner Dale L. Miesen

**20-ER-5086**

## VIII.   CORPORATE DISCLOSURE STATEMENT

Because this case involves derivative claims asserted on behalf of the Real Parties of Interest, AIA Services Corporation and AIA Insurance, Inc., Miesen provides the following corporate disclosure statement pursuant to Cir. Rule 21-3:

To the best of the knowledge of the undersigned, the Real Part of Interest AIA Insurance, Inc., is wholly owned by the Real Party of Interest AIA Services Corporation, and the Real Party of Interest AIA Services Corporation, is not publicly traded.

DATED this 27th day of January 2025.

RODERICK BOND LAW OFFICE, PLLC

By:    */s/ Roderick C. Bond*
     Roderick C. Bond
     Attorney for Petitioner Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:    */s/ Andrew Schwam*
     Andrew Schwam
     Attorney for Petitioner Dale L. Miesen

**20-ER-5087**

## IX. REPRESENTATION STATEMENT

**Petitioner:**

Name of Petitioner:

Dale L. Miesen

Names and Contact Information of Counsel:

Roderick C. Bond
Roderick Bond Law Office, PLLC
10900 NE 4th St., Suite 2300
Bellevue, WA  98004
Tel: (425) 591-6903
Email: rod@roderickbond.com

Andrew Schwam
Andrew Schwam Law Firm
705 SW Fountain St.
Pullman, WA  99163-2128
Tel: (208) 874-3684
Email:amschwam@turbonet.com

Is counsel registered for Electronic Filing in the 9th Circuit? **Yes**

**Respondent:**

Name of Respondent:

United States District Court for the District of Idaho

Name and Contact Information of Counsel:

Unknown

Respondent's Contact Information:

U.S. District Court, District of Idaho
801 E. Sherman
Pocatello, ID 83201
Tel: (208) 478-8391
Email: Unknown

Is counsel registered for Electronic Filing in the 9th Circuit? **Unknown**

**20-ER-5088**

**Real Parties of Interest:**

Name of Real Parties of Interest:

R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, Sr., CropUSA Insurance Agency, Inc., and CropUSA Insurance Services, LLC

Name and Contact Information of Counsel:

Daniel L. Glynn
Jones Williams Fuhrman Gourley, P.A.
225 North 9th St., Ste 820
Boise, ID  83702
Tel: (208) 331-1170
Email: dglynn@idalaw.com

Is counsel registered for Electronic Filing in the 9th Circuit? **Yes**


Name of Real Parties of Interest:

AIA Services Corporation and AIA Insurance, Inc.

Name and Contact Information of Counsel:

Kim J. Trout
Trout Law, PLLC
3778 Plantation River Drive, Ste. 101
Boise, ID 83703
Tel: (208) 577-5755
Email: ktrout@trout-law.com

Is counsel registered for Electronic Filing in the 9th Circuit? **Yes**


- 81 -

**20-ER-5089**

Name of Real Party of Interest:

Reed. J. Taylor

Name and Contact Information of Counsel:

Michael S. Bissell
Campbell & Bissell, PLLC
820 West 7th Avenue
Spokane, WA 99204
Tel: (509) 455-7100
Email: mbissell@campbell-bissell.com

Is counsel registered for Electronic Filing in the 9th Circuit? **Yes**

Name of Real Party of Interest:

Crumb & Munding, P.S.

Names and Contact Information of Counsel:

Markus W. Louvier
James B. King
Evans, Craven & Lackie, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
Tel: (509) 455-5200
Email: mlouvier@ecl-law.com
          jking@ecl-law.com

Is counsel registered for Electronic Filing in the 9th Circuit? **Yes**

20-ER-5090

Name of Real Party of Interest:

GCLI, LLC (f/k/a GemCap Lending I, LLC

Name and Contact Information of Counsel:

Alyson A. Foster
Dempsey Foster PLLC
714 W. State Street
Boise, ID 83702
Tel: (208) 401-9533
Email: alyson@dempseyfoster.com

Is counsel registered for Electronic Filing in the 9th Circuit? **No**

**20-ER-5091**

## X.  CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

I certify that I served the foregoing/attached document(s) via: **(1)** email to the registered case participants on this date because it is submitted as part of an original proceeding and therefore cannot be served via the Appellate Electronic Filing system; and **(2)** by filing a copy in the U.S. District Court for the District of Idaho, Case No. 1:10-cv-00404-DCN ("case"), which caused the counsel and any other parties receiving notices in that case to be served by electronic means via the CM/ECF system.

I further certify that I served the foregoing/attached document(s) on this date by third party commercial carrier for delivery within 3 calendar days to U.S. District Court for the District of Idaho, David C. Nye, Chief Judge as follows:

Hon. David C. Nye
U.S. District Court, District of Idaho
801 E. Sherman
Pocatello, ID 83201
Tel: (208) 478-8391 (for purposes of delivery service only)

DATED this 27th day of January 2025.

*/s/ Roderick C. Bond*
Roderick C. Bond

- 84 -

**20-ER-5092**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 26 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| IN RE:  DALE L. MIESEN. | No. 25-576 |
| _____ | D.C. No.<br>1:10-cv-00404-DCN<br>District of Idaho,<br>Boise |
| DALE L. MIESEN, an individual, Shareholder Bringing this Action on Behalf of and/or In the Right of AIA Services Corp. and its Wholly Owned Subsidiary AIA Insurance, Inc., | ORDER |
| Petitioner, | |
| v. | |
| UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO, BOISE, | |
| Respondent, | |
| CONNIE TAYLOR HENDERSON; et al., | |
| Real Parties in Interest. | |

Before:  CANBY, M. SMITH, and FORREST, Circuit Judges.

The motion to file an oversized petition and the motions to file a corrected petition (Docket Entry Nos. 15, 18 and 20) are granted.

Petitioner has not demonstrated a clear and indisputable right to the extraordinary remedy of mandamus. *See In re Mersho*, 6 F.4th 891, 897 (9th Cir. 2021) ("To determine whether a writ of mandamus should be granted, we weigh

20-ER-5093

the five factors outlined in *Bauman v. United States District Court*."); *Bauman v. U.S. Dist. Court*, 557 F.2d 650 (9th Cir. 1977). The petition is denied.

The motion to expedite (Docket Entry No. 14) is denied as moot.

**DENIED.**

2

**20-ER-5094**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>           Plaintiff,<br><br>    **v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>           Defendants. | Case No. 1:10-cv-00404-DCN<br><br>PLAINTIFF DALE L. MIESEN'S REQUEST FOR THE ENTRY OF A RULE 54(b) JUDGMENT **[Dkt. 1301]** |

REQUEST FOR RULE 54(b) JUDGMENT **[Dkt. 1301]** - i

**20-ER-5095**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

        Defendants/Third-Party Plaintiffs,

      **v.**

REED TAYLOR, an individual,

        Third-Party Defendant.

REED TAYLOR, an individual,

        Third-Party Defendant/ Counterclaimant,

      **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

        Counterdefendants.

REQUEST FOR RULE 54(b) JUDGMENT **[Dkt. 1301]** - ii

**20-ER-5096**

Plaintiff Dale L. Miesen ("Miesen") respectfully requests as follows:

## I.    ARGUMENT

### A.  This Court should enter a Rule 54(b) judgment so Miesen can appeal.

When this Court dismissed Miesen's remaining claims, this Court stated that it would be entering a judgment. (Dkt 1301 at 16.) Miesen respectfully requests that this Court certify that judgment under Rule 54(b) so that he can proceed with his appeal while this Court is moving the remainder of this case forward. That way, Miesen can also proceed to finality after all these years.

Rule 54(b) provides in pertinent part that "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). *See Stanley v. Cullen*, 633 F.3d 852, 864–65 (9th Cir. 2011).

Here, there is no just reason to delay entering a final and appealable Rule 54(b) judgment based on this Court's decisions dismissing all of Miesen's claims. (Dkts. 1301, 1203.) Miesen can then pursue and adjudicate his appeal addressing the dismissal of his claims and related matters while this Court is moving this case forward on Reed Taylor's claims and the remaining pending motions. There is no trial date and, based on this Court's disclosed extraordinarily heavy workload (Dkt. 1301 at 4 n.2), it is likely that Miesen's appeal could be adjudicated prior to Reed Taylor's claims being tried (Miesen would seek to expedite any appeal). Upon request, Miesen's counsel will promptly prepare and submit a Rule 54(b) judgment for this Court's signature.

RESPECTFULLY SUBMITTED:  This 27th day of May 2025.

RODERICK BOND LAW OFFICE, PLLC

By:    */s/ Roderick C. Bond*
         Roderick C. Bond
         Attorney for the Plaintiff Dale L. Miesen

REQUEST FOR RULE 54(b) JUDGMENT **[Dkt. 1301]** - 1

**20-ER-5097**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of May 2025, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:     jat@elamburke.com
Loren C. Ipsen:     lci@elamburke.com
Joyce A. Hemmer:     jah@elamburke.com
Bradley S. Keller:     bkeller@byrneskeller.com
Alyson A. Foster:     alyson@dempseyfoster.com
Tyler S. Waite:     twaite@campbell-bissell.com
Michael S. Bissell:     mbissell@campbell-bissell.com
Daniel L. Glynn:     dglynn@idalaw.com
Andrew Schwam:     amschwam@turbonet.com
Kim J Trout:     ktrout@trout-law.com
Markus William Louvier:     mlouvier@ecl-law.com
James B. King:     jking@ecl-law.com


_/s/ Roderick C. Bond_
Roderick C. Bond

REQUEST FOR RULE 54(b) JUDGMENT **[Dkt. 1301]** - 2

**20-ER-5098**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc, <br><br> Plaintiff, <br><br> v. <br><br> HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; GEMCAP LENDING I, LLC, et al., a Delaware limited liability company, <br><br> Defendants. | Case No. 1:10-cv-00404-DCN <br><br> **JUDGMENT** |

In accordance with Federal Rule of Civil Procedure 54(b), 58(a), and the Court's

Memorandum Decisions and Orders (Dkts. 1203, 1301), it is hereby ordered:

1. Judgment be entered in favor of Defendants AIA Insurance, Inc., AIA Services

JUDGMENT - 1

**20-ER-5099**

Corporation, James Beck, Michael W. Cashman, Connie Taylor Henderson, R. John Taylor, Crop USA Insurance Agency, Inc., and Crop USA Insurance Services, LLC.

2. All claims asserted by Plaintiff Dale Miesen against the Defendants named above are **DISMISSED WITH PREJUDICE.**[1]

DATED: May 28, 2025

David C. Nye
Chief U.S. District Court Judge

---

[1] Miesen's direct claims against Defendant Reed J. Taylor still need to be adjudicated in this case and shall proceed.

JUDGMENT - 2

MICHAEL S. BISSELL, ISB NO. 5762
Email: mbissell@campbell-bissell.com
CAMPBELL & BISSELL, PLLC
820 West 7th Avenue
Spokane, WA  99204
Telephone: (509) 455-7100
Fax: (509) 455-7111

Attorneys for Reed J. Taylor

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Civil No. 1:10-cv-00404-DCN<br><br><br>**MEMORANDUM IN SUPPORT OF REED TAYLOR'S MOTION TO CORRECT JUDGMENT PURSUANT TO FED. R. CIV. P. 60(a) [Dkt. 1305]** |

Counterclaimant/Third-Party Defendant Reed Taylor, by and through his counsel of

record, Campbell & Bissell, PLLC, submits this Memorandum in support of his Motion to Correct

MEMORANDUM IN SUPPORT OF REED TAYLOR'S MOTION TO CORRECT
JUDGMENT PURSUANT TO FED. R. CIV. P. 60(a) [Dkt. 1305] - 1

20-ER-5101

Judgment [**Dkt. 1305**] to state: 1) that the Third-Party Complaint ("TPC") [**Dkt. 218**] is dismissed with prejudice, and 2) to remove the footnote, as there are not, and never have been, claims by Meisen against Reed Taylor.

A.    **Rule 60(a).**  Fed. R. Civ. P. 60(a) provides in relevant part as follows:

> CORRECTIONS BASED ON CLERICAL MISTAKES; OVERSIGHTS AND OMISSIONS. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice.

B.    **Dismissal of Third Party Complaint.**  The TPC alleges as follows:

> 2. Defendants/Third-Party Plaintiffs Crop USA Insurance Agency, Inc. ("**Crop USA**"), Connie Henderson, JoLee Duclos, R. John Taylor, Michael Cashman, and James Beck (collectively the "**Defendants/Third-Party Plaintiffs**" or "**Defendants**") seek contribution and indemnity for Reed Taylor's proportionate share of liability for claims arising from Defendants' conduct in operating or conducting business with AIA.

In his Motion for Summary Judgment [**Dkt. 1073**], Reed Taylor sought dismissal of the TPC. The Court stayed briefing on the matter, and then in its Memorandum Decision and Order [**Dkt. 1301**] dismissing the balance of Meisen's claims, the Court *sua sponte* dismissed the motion as moot "[b]ecause the Court has determined CropUSA Defendants and Individual Defendants have no liability . . ." [**Dkt. 1301**, p. 15]. Presumably, the Court's thinking was that since Meisen no longer had claims against CropUSA and the Individual Defendants, they no longer had third-party claims against Reed Taylor. However, the Judgment does not address those claims, wherefore they technically still exist. Wherefore, consistent with its Memorandum Decision and to clarify the status of matters, the Court should enter judgment dismissing the TPC.

C.    **Removal of Footnote.**  In its Memorandum Decision, the Court includes a footnote that "Meisen's direct claims against Defendant Reed J. Taylor still need to be adjudicated in this case

MEMORANDUM IN SUPPORT OF REED TAYLOR'S MOTION TO CORRECT
JUDGMENT PURSUANT TO FED. R. CIV. P. 60(a) [Dkt. 1305] - 2

and shall proceed." However, Miesen has never asserted any claims against Reed Taylor – Reed Taylor was brought into this action as a *third party defendant and not by Meisen.* Wherefore, the Judgment should be corrected by removing the footnote.

DATED this 2nd day of June, 2025.

CAMPBELL & BISSELL, PLLC

By: */s/ Michael S. Bissell*
 MICHAEL S. BISSELL
 820 W. 7th Avenue
 Spokane, WA  99204
 Attorneys for the Third-Party
 Defendant/Counterclaimant Reed Taylor

MEMORANDUM IN SUPPORT OF REED TAYLOR'S MOTION TO CORRECT
JUDGMENT PURSUANT TO FED. R. CIV. P. 60(a) [Dkt. 1305] - 3

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 2nd day of June, 2025, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

James D. LaRue: jdl@elamburke.com
Jeffrey A. Thomson: jat@elamburke.com
Loren C. Ipsen: lci@elamburke.com
Joyce Ann Hemmer: jah@elamburke.com
Bradley S. Keller: bkeller@byrneskeller.com
Alyson Anne Foster: aaf@aswdpllc.com
Taylor L. Bruun: tlb@aswdpllc.com
Benjamin A. Schwartzman: bas@aswdpllc.com
Roderick C. Bond:  rod@roderickbond.com
David R. Lombardi: drl@givenspursley.com
Daniel Loras Glynn: dglynn@idalaw.com

 */s/ Michael S. Bissell*
MICHAEL S. BISSELL

MEMORANDUM IN SUPPORT OF REED TAYLOR'S MOTION TO CORRECT JUDGMENT PURSUANT TO FED. R. CIV. P. 60(a) [Dkt. 1305] - 4

**20-ER-5104**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>        Plaintiff,<br><br>    **v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>        Defendants. | Case No. 1:10-cv-00404-DCN<br><br>PLAINTIFF DALE L. MIESEN'S RESPONSE TO REED TAYLOR'S MOTION TO CORRECT JUDGMENT PURSUANT TO FED. R. CIV. P. 60(a) **[Dkt. 1307 & 1308]** |

RESPONSE TO REED'S MOTION TO CORRECT JUDGMENT **[Dkt. 1307 & 1308]** - i

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

          Defendants/Third-Party Plaintiffs,

      **v.**

REED TAYLOR, an individual,

          Third-Party Defendant.

REED TAYLOR, an individual,

          Third-Party Defendant/ Counterclaimant,

      **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

          Counterdefendants.

Plaintiff Dale L. Miesen ("Miesen") responds as follows:

Third-Party Defendant/Counterclaimant Reed Taylor ("Reed") moves this Court to correct the Rule 54(b) judgment dismissing all of Miesen's claims. (Dkts. 1305, 1307, 1308.)

1.      Miesen has no objection to Reed's request that this Court amend the judgment to also include the dismissal of the Third-Party Complaint against Reed. (Dkt. 1308 at 2.)

2.      Miesen concurs with Reed's observations that Miesen has not asserted any direct or derivative claims against Reed in the TAC (Dkt. 211) and that the footnote should be omitted.

3.      Because this Court intends to grant the motion and file an amended judgment, Miesen respectfully requests that this Court also amends the Rule 54(b) judgment to state "that there is no just reason for delay" in entering a final judgment or similar language. Fed. R. Civ. P. 54(b); *see* Fed. R. Civ. P. 60(a). While it is implicit that this Court made the appropriate finding through its statement "In accordance with Federal Rule of Civil Procedure 54(b)" after Miesen's request (Dkt. 1302), the inclusion of the "no just reason for delay" or similar language would ensure that the Ninth Circuit does not take issue with the form of the Rule 54(b) judgment.[1]

DATED:  This 3rd day of June 2025.

RODERICK BOND LAW OFFICE, PLLC

By:    */s/ Roderick C. Bond*
        Roderick C. Bond
        Attorney for the Plaintiff Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:    */s/ Andrew Schwam*
        Andrew Schwam
        Attorney for the Plaintiff Dale L. Miesen

---

[1] Consistent with Miesen's representation that he would expedite pursuing an appeal (Dkt. 1302 at 3), he has already filed his notice of appeal. (Dkt. 1309.)

RESPONSE TO REED'S MOTION TO CORRECT JUDGMENT **[Dkt. 1307 & 1308]** - 1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day of June 2025, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:   jat@elamburke.com
Loren C. Ipsen:   lci@elamburke.com
Joyce A. Hemmer:   jah@elamburke.com
Bradley S. Keller:   bkeller@byrneskeller.com
Alyson A. Foster:   alyson@dempseyfoster.com
Tyler S. Waite:   twaite@campbell-bissell.com
Michael S. Bissell:   mbissell@campbell-bissell.com
Daniel L. Glynn:   dglynn@idalaw.com
Andrew Schwam:   amschwam@turbonet.com
Kim J Trout:   ktrout@trout-law.com
Markus William Louvier:   mlouvier@ecl-law.com
James B. King:   jking@ecl-law.com

*/s/ Roderick C. Bond*
Roderick C. Bond

RESPONSE TO REED'S MOTION TO CORRECT JUDGMENT **[Dkt. 1307 & 1308]** - 2

**20-ER-5108**

DANIEL LORAS GLYNN, ISB #5113
JONES ♦ WILLIAMS ♦ FUHRMAN ♦ GOURLEY, P.A.
The 9ᵗʰ & Idaho Center
225 N. 9ᵗʰ Street, Suite 820
PO Box 1097
Boise, ID 83701
Telephone:  (208) 331-1170
Facsimile:  (208) 331-1529
dglynn@idalaw.com
Attorneys for James Beck, Michael Cashman, Connie Henderson, John Taylor, Crop USA
Insurance Agency, Inc., and Crop USA Insurance Services, LLC

KIM J. TROUT, ISB #2468
TROUT & JONES, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID  83703
Telephone (208) 577-5755
Facsimile (208) 577-5756
service@trout-law.com

Attorneys for Defendant AIA Services Corporation & AIA Insurance, Inc.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho | Case No. 1:10-CV-404-DCN-CWD<br><br>**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR AWARD OF FEES AND COSTS** |

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR AWARD OF FEES AND COSTS | Page 1**

corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,

Defendants.

COMES NOW, AIA Services Corporation & AIA Insurance, Inc., (the "AIA Defendants) by and through their counsel of record, Kim J. Trout of Trout & Jones, PLLC (f/k/a Trout Law, PLLC) and James Beck, Michael Cashman, Connie Henderson, John Taylor, (the "Individual Defendants"), and Crop USA Insurance Agency, Inc., and Crop USA Insurance Services, LLC (the "CropUSA Entities"), by and through their counsel of record, Daniel Loras Glynn of Jones Williams Fuhrman Gourley, P.A. and hereby submits their memorandum in support of the Joint Motion for Award of Fees and Costs. The AIA Defendants, the Individual Defendants, and the CropUSA Entities are also referred to below as the "Moving Defendants."

## INTRODUCTION

This case began in 2010 as a shareholder derivative lawsuit on behalf of the AIA Defendants, with the Plaintiffs then being Donna Taylor and Dale Miesen, both represented by Lee H. Rousso. On March 18, 2012 (Dkt 58), Mr. Roderick Bond appeared on behalf of then Plaintiff, Donna Taylor. This matter was then appealed to the 9th Circuit in 2015. On November 22, 2010 the First Amended Complaint was filed in this action. (Dkt. 23). On June 20, 2016 the Second Amended Complaint was filed in this action. (Dkt. 137). On April 24, 2017, the Third Amended Complaint was filed in this action.

As the docket in this matter reflects, this litigation initiated by Donna Taylor and Dale Meisen was typified by their consent to a counsel whose tactics can only be rightly characterized as nothing other than a scorched earth approach. As noted in more detail in the Individual Defendants and CropUSA Entities Memorandum filed as Docket 1252, Donna Taylor and Dale Meisen have been responsible for the service of approximately 1,300 individual discovery requests and the

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR AWARD OF FEES AND COSTS | Page 2**

accompanying imposition upon AIA to locate, assemble, organize, and produce over 1.5 million pages of documents. (*See* Dkt. 1223 at ¶ 10.) Beyond these discovery tactics, the record evidences a repeated pattern of flooding the Court, and opposing parties, with wide-ranging generalized assertions of non-compliance that were either accompanied by whole scale document dumps that expected this Court and counsel to sleuth through the documents to find support for Plaintiff's positions or, alternatively, possessed only the most scant amount of factual support.

This was evident from the outset as the very first order of the Discovery Master entered on November 13, 2018, chided the Plaintiff for the presentment of a motion to compel wherein neither "the Motion, the Memoranda in Support nor the Declarations provide information in an organized, usable fashion as required by D. Idaho L. Pract. Civ. R. 37.2…" (Dkt. 476 at 19.) As a consequence, the Discovery Master was required to identify with specificity how such motions must be presented. (Dkt. 476 at 20.) Nonetheless, nine months later, the Discovery Master was again forced to remind Plaintiff of the non-compliance with the presentation requirements stating "the conditions concerning renewed motions to compel were established to, among other things, make the process of using a Discovery Master as efficient and inexpensive as possible. <u>Plaintiff's Fifth Motion to Compel re: GemCap is counterproductive to that objective.</u>" (Dkt. 662 at 4.) (*Emphasis added.*)

In another example, the Discovery Master concluded that Plaintiff's Eighth Motion to Compel was utterly deficient as "Miesen has provided little documentation or evidence concerning what was produced by the AIA Entities and little explanation why it is insufficient." (Dkt. 939 at 5.) Nevertheless, the Discovery Master noted that as Plaintiff's motion identified a single summary page which he asserted he possessed no information concerning the Discovery Master compelled Mr. Taylor to produce documents related to this summary page. (*Id.* at 6.) Thereupon, Mr. Taylor submitted his Declaration in compliance with the Discovery Master Order which Declaration

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR AWARD OF FEES AND COSTS | Page 3**

expressly refuted the assertion that Plaintiff's counsel was not in possession of any documents related to this summary page with specific identifications to the previously provided documents by bates number that were responsive to the document in question. (Dkt. 1003 at ¶ 4.) This Court noted this procedural history in its ultimate affirmance of Judge Dale's denial of Plaintiff's Eighth Motion to Compel. (Dkt. 1049.)

Moreover, the docket reflects the presence of over 1,300 separate dockets (nearly 3,000 if "sub-docket" numbers are to be included) the majority of which were filed by Plaintiff and in which Plaintiff was largely unsuccessful in the obtainment of the relief sought by this flood of motions. For example, there are no less than thirty-five separate orders of the Discovery Master appointed in this case, the vast majority of which were either initially presented or appealed by Plaintiff. This includes Plaintiff's multiple failed efforts to compel the on-going communications between the Defendants and their counsel(s) as well as the attorney-client communications of the AIA Entities itself. (Dkt. 476, 649, 697, 880, and 994.)  Beyond the proceedings incidental to the matters presented to the special discovery master, the record is replete with Plaintiff's motions either expressly identified as reconsideration or otherwise seeking the same relief under different disguise. Moreover, Plaintiff's conduct in these proceedings has resulted in the imposition of sanction against him on two separate occasions.[1] (Dkt. 756 & 777.)

The end result of this abusive discovery and litigation strategy? This Court's Order on May 5, 2022 dismissing all Miesen's derivative claims against CropUSA Entities, Individual Defendants, and Defendant Hawley Troxell for failure to fulfill derivative demand requirements. (Dkt. 1203).

---

[1] "Bond has been an insistent and aggressive advocate for Plaintiff in the discovery portions of this litigation that the Discovery Master has had an opportunity to observe. The Discovery Master does not criticize these characteristics so long as the Rules of Civil Procedure and Orders of the Court are followed. There is a risk, however, that these characteristics, if not checked, could lead to further Court Order violations as the discovery deadline approaches." (Dkt. 714 at 6.)

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR AWARD OF FEES AND COSTS | Page 4**

The parties filed with the Court status reports specifically addressing whether, after the entry of Dkt. 1203, any claims remained and whether they were direct claims that Plaintiff Dale Miesen could pursue individually. The Individual Defendants, the CropUSA Entities, and the , other than Plaintiff and Reed Taylor, stated unequivocally that all the claims were derivative claims and not direct claims. (Dkts. 1207, 1208, 1209, and 1211). This Court, on May 27, 2025 entered its Memorandum, Decision, and Order granting the Defendants' Motion to Dismiss finding that each of the claims alleged were derivative in nature and not direct claims. (Dkt. 1301). Furthermore, and of specific interest to the argument below, the Plaintiff(s) failed not only to timely disclose expert witnesses, but failed to make a derivative compliant demand.

## LEGAL STANDARDS

Under Idaho law the expansive and well thought out network of methods to recover attorney fees and costs in derivative litigation is awardable pursuant to Idaho Code § 30-29-746(b). In addition, Idaho Code § 12-120(3), provides for attorney fees in commercial disputes, while Federal Rule of Civil Procedure 54 sets the procedural requirements for recovering fees and costs.

Idaho Code § 30-29-746(b)[2] states: "On termination of the derivative proceeding the court may: … (b) Order the plaintiff to pay any defendant's expenses incurred in defending the proceeding if it finds that the proceeding was commenced or maintained without reasonable cause or for an improper purpose."

Idaho Code § 12-120(3) states: "[I]n any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs."

---

[2] In 2015, pursuant to S.B. 1025, the Idaho Legislature adopted and renumbered the Uniform Business Organizations Code repealing Title 1, Chapter 30, Idaho Code and adopting Tile 29, Chapter 30, Idaho Code. For the purposes of this filing, the changes between Idaho Code § 30-29-742 and Idaho Code § 30-29-746 are not significant, and therefore the Moving Defendants will cite the current code.

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR AWARD OF FEES AND COSTS | Page 5**

Idaho courts have continually and historically interpreted these provisions in a way that creates a role for them in preventing the misuse of corporate litigation. Relevant case law in regard to this case before the court today includes *Kugler v. Nelson*, 160 Idaho 408, 374 P.3d 571 (2016), *McCann v. McCann*, 152 Idaho 809, 275 P.3d 824 (2012), and *Miesen v. Munding*, 822 F. App'x 546 (9th Cir. 2020).

"A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees. *See* 6 James Wm. Moore et al., Moore's Federal Practice § 54.78[1] (3d ed. 2000)". *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000). "In an action where a district court is exercising its subject matter jurisdiction over a state law claim, so long as "state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999) (internal citations omitted).

## ARGUMENT

### 1.    Attorneys' Fees and Costs Requested.

The Moving Defendants request the total sum of $974,212.23, as follows:

| | |
|---|---|
| Risley Law Firm | $223,352.42 |
| Randall Danskin Firm | $27,949.30 |
| Weilland Rose Law Firm | $69,033.08 |
| Martelle Law Offices | $94,808.87 |
| Jones Williams Fuhrman Gourley, PA | $398,447.57 |
| Trout Law, PLLC (n/k/a Trout & Jones, PLLC) | $78,168.62 |
| Costs | $82,452.37 |
| TOTAL | $974,212.23 |

### 2.    Plaintiffs failed to comply with the pre-litigation demand.

Idaho Code § 30-29-742 provides that a shareholder may not commence a derivative proceeding until a written demand has been made upon the corporation's board of directors, either

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR AWARD OF FEES AND COSTS | Page 6**

90 days have elapsed from the date of demand, the board has rejected the demand, or waiting 90 days would cause irreparable harm to the corporation. This statutory provision is not just a procedural formality as opposing counsel may assert. The provision explicates an actual limitation on the ability of shareholders to go against the board's enumerated management authority. By adopting and using this requirement, Idaho courts have shown that they recognize that boards of corporations should be given the opportunity to consider and respond to all alleged grievances internally through their own investigations. As the *Miesen* ruling shows, failure to comply with the derivative demand requirement completely and absolutely bars a shareholder's standing to bring suit. *Miesen v. Munding*, 822 F. App'x at 548–49 (9th Circuit 2020).

In the case at hand the Plaintiff has not only failed to make a proper demand but also failed to justify this omission. No allegations of irreparable harm were plead, nor did the complaint establish that a demand was rejected, nor that 90 days had already elapsed. This procedural failure is also effected by the Plaintiff's effort to reuse and re-label dismissed derivative claims as direct claims. This tactic created by the Plaintiff was clearly aimed at going around the statutory requirements.

Idaho courts have recognized that when a party fails to comply with statutory prerequisites and decides to proceed with litigation anyway, this behavior warrants the granting of costs and fees to deter overall misuse of the courts. Simply put, the Plaintiff's claims were barred by statute and procedurally wrong from the start of this case. The Plaintiffs' continued pursuit on the basis of these claims, in defiance of the statutory requirements, and in the wake of adverse rulings shows the injustice of requiring AIA to endure and incur the burden of continued defense and the costs along with it.

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR AWARD OF FEES AND COSTS | Page 7**

3.     **Attorneys' fees and costs should be awarded against Plaintiffs and in favor of the AIA Defendants as their action(s) were commenced or maintained without reasonable cause or for an improper purpose, and therefore attorneys' fees are awardable pursuant to Idaho Code § 30-29-746.**

Idaho Code § 30-29-746(b) provides that a court may order a shareholder who brings a derivative proceeding to pay the corporation's reasonable expenses, including attorney fees, if it finds that the proceeding was commenced or maintained without reasonable cause or for an improper purpose. The purpose behind this statute is to lessen the abuse of derivative actions. If misused, such as in this case, derivative actions can subsequently subject corporate officers, directors, and the corporation itself to a costly and repeating pattern of unnecessary litigation.

Idaho Code § 746(b) gives the Court discretion in awarding attorneys' fees and costs to the prevailing defendant "if the Court finds the proceedings was commenced or maintained without reasonable cause or for an improper purpose." Here, the Plaintiffs failed to satisfy the statutory derivative demand requirement outlined in Idaho Code § 30-29-742, and therefore the Court should find the defendants are entitled to an award of their fees and costs.

This Court has already dismissed Plaintiffs' derivative claims with prejudice for failure to satisfy the derivative demand requirements.[3] (Dkt. 1203). This failure by the Plaintiff explicates more than just a procedural misstep, it shows a fundamental lack in standing to bring the action against the Defendants. As the Ninth Circuit held in *Miesen v. Munding*, 822 F. App'x 546, 548–49 (9th Cir. 2020), compliance with statutory pre-suit demand requirements is a condition that precedes maintaining a derivative claim. The *Miesen* decision therefore upheld dismissal of derivative claims for failure to satisfy demand requirements. Put another way, compliance with the statutory demand is not discretionary but is absolutely mandatory.

---

[3] Plaintiffs' experts were excluded by the Court. However, and even after the exclusion, Plaintiff attempted to convert the derivative claims to direct/individual claims. Plaintiffs' continued pursuit of litigation in the face of not having expert witnesses, shows a lack of reasonable cause, and an improper purpose, thereby satisfying both prongs of § 30-29-746(b).

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR AWARD OF FEES AND COSTS | Page 8**

Moreover, the record of this case supports an argument of improper purpose. The Plaintiff has sought to relitigate previously dismissed derivative claims by attempting to recharacterize them as "direct" claims – this despite the alleged facts remained identical. Miesen failed to allege any specific and individual harm that he suffered apart from the corporation. In *Kugler v. Nelson*, 160 Idaho 408, 374 P.3d 579 (2016), the Idaho Supreme Court affirmed the granting of summary judgment in favor of the corporation and its shareholders because the plaintiff's claims that alleged improper stock redemption, a breach of the duty of good faith, fraud, and other claims, were properly deemed derivative in nature. Since the shareholder in the case failed to satisfy the statutory demand requirements under former Idaho Code § 30-1-742, the claims were subsequently barred as a matter of law.

Similarly, in *McCann v. McCann*, 138 Idaho 228, 235, 61 P.3d 585, 592 (2002), the case addressed the statutory requirement under Idaho Code § 30-1-742, which mandates that a shareholder must make a written demand upon the corporation to take suitable action at least ninety days before commencing a derivative action. The Supreme Court noted, in *McCann 1* that "[t]he shareholder must state facts, not mere general charges and conclusions." The Supreme Court noted the failure to comply with the written demand requirement properly results in the dismissal of derivative claims. In so holding, the Supreme Court affirmed the award of fees under Idaho Code § 30-1-746 upholding that a failure to comply with the pre-litigation demand rendered the derivative action as having been brought without reasonable cause requirement and therefore resulting in an award of fees and costs to the defendant.

The precedent for finding that the failure to make a prelitigation demand is grounds for finding that the litigation was "commenced or maintained without reasonable cause or for an improper purpose" is further confirmed by the Idaho Supreme Court in *Mannos v. Moss*, 143 Idaho 927, 937, 155 P.3d 1166, 1176 (2007), wherein the Supreme Court stated: "Having made no pre-

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR AWARD OF FEES AND COSTS | Page 9**

litigation demand, as specifically required by Idaho Code § 30–1–742, Mannos' derivative suit was without reasonable cause. Thus, the Lawrences are awarded their attorney fees for defending specifically against that claim."

This Court should find, as the Idaho Supreme Court stated, that the failure of the Plaintiffs to properly comply with the prelitigation demands, that the proceeding was improper and an award of attorneys' fees and costs should be granted.

>        4.        **Idaho Code 12-120(3) dictates an award of fees and costs to the AIA Defendants.**

Attorney fees are also recoverable under Idaho Code § 12-120(3), as this action involves a commercial transaction. The statute mandates that the prevailing party in a lawsuit involving a commercial transaction shall be allowed a reasonable attorney fee. A "commercial transaction" has been defined broadly by the court to include any transaction intended or conducted for the purpose of financial gain. Therefore, Idaho courts have construed this term broadly to cover a wide range of financial dealings and business disputes.   There can be no dispute that this was a business transaction.  In fact, Meisen alleges he traded a book of business worth $500,000 in exchange for his common shares in AIA Services. (Dkt. 211, ¶183).

In *Kugler*, the Idaho Supreme Court affirmed the grant of summary judgement in favor of the corporation and its shareholders wherein the plaintiff had challenged the redemption of stock, alleged breach of fiduciary duty, and brought concerns about the sale of the company's current inventory. These claims were all deemed to be derivative claims.  The Supreme Court ultimately held that such claims were fundamentally rooted in both management and control of the business entity, and therefore, were actions made in the financial interest of shareholders. Thus, these actions fell well within the scope of Idaho Code § 12-120(3) because they were foundationally commercial. The resulting litigation in *Kugler*, much like the case at bar, dovetailed from disputes over corporate

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR AWARD OF FEES AND COSTS | Page 10**

governance and financial transactions that were aimed solely at the economic advantage of the corporation.

Likewise, Miesen's and Donna Taylor's claims in this matter concern internal business operations and conduct that oversee financial control and business decisions. Therefore, Idaho Code § 12-120(3) applies, and AIA, as the prevailing party, is entitled to an award of its fees and costs.

**5.      The Individual Directors Are Entitled to an Award of Attorney Fees.**

What cannot, and should not, be overlooked in considering AIA's entitlement to attorney fees as the prevailing party in this litigation is the fact that as a direct result of this litigation commenced first by Donna Taylor, and then Dale Miesen, is that such as resulted in additional liability to AIA beyond the burden and costs of its own defense. In addition, AIA is now liable to the individual directors for the attorney fees and costs that they have incurred in the defense of this action.

Idaho Code 30-29-852 provides that:

> A corporation shall indemnify a director who was wholly successful, on the merits or otherwise, in the defense of any proceeding to which the director was a party because he or she was a director of the corporation against expenses incurred by the director in connection with the proceeding.

I.C. § 30-29-852.

There is no question that as a result of this Court's orders first dismissing all claims against the individual directors on the basis of Miesen's failure to comply with the pre-suit derivative demand requirements of Idaho Code 30-29-742 (Dkt. 1203) and then recognizing that Miesen possessed no direct claims against the individual directors (Dkt. 1301) that the individual directors have been wholly successful in the defense of Miesen's claims against them. Thus, as a direct consequence of this litigation, AIA is now unquestionably obligated to wholly indemnify the individual directors for all attorney fees and costs incurred by the individual directors.

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR AWARD OF FEES AND COSTS | Page 11**

6.    **Idaho Rules of Civil Procedure Rule 54 Factors:**

Rule 54 of the Federal Rules of Civil Procedure lays out the process for requesting attorneys fees and costs.  Pursuant to *Yellowstone Poky, LLC v. First Pocatello Assocs., L.P.*, No. 4:16-CV-00316, 2020 WL 5790385, at *3 (D. Idaho Sept. 28, 2020), when determining the amount of attorney fees to be awarded under Idaho Code § 12-120(3), federal courts sitting in diversity consider the reasonableness factors set forth in Idaho R. Civ. P. 54(e)(3).

Substantively, they are the prevailing party, as AIA has received dismissal of the derivative claims and exclusion of key expert testimony has been granted. Procedurally, AIA has moved for fees and costs pursuant to Idaho Code §§ 30-29-746(b) and 12-120(3), thereby identifying AIA's statutory basis for recovery of fees. Furthermore, the court's exclusion of the Plaintiff's expert witnesses weakens the evidence perpetuated by the foundation of their claims. The trial court has found that the experts failed to meet the standards for admissibility and has subsequently eliminated the Plaintiff's ability to prove both damages and liability. The resulting lack of admissible evidence supporting the Plaintiff's case goes on to further support the conclusion that the plaintiffs' claims were unreasonable and lacking any sort of merit.

Additionally, Under Rule 54, the Court could consider the conduct of both parties throughout the process of litigation. The Plaintiff's continuous assertion of derivative claims, even after statutory dismissal, combined with efforts to use them as direct claims, shows a pattern of strategic and improper litigation tactics. The Court should exercise its discretion to shift fees to prevent the conduct shown by the plaintiff from becoming normalized in further corporate litigation cases.

A.  The time and labor required:  This matter has taken an extraordinary amount of time for the named Defendants and their counsel.  This case has been going for 15 years,

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR AWARD OF FEES AND COSTS | Page 12**

including one appeal, and there are over 1,300 filings requiring a significant amount of time and labor to respond to Plaintiff's multiple filings.

B.  The novelty and difficulty of the questions: This case involves the application of the law distinguishing derivative claims from direct claims. The Plaintiffs have argued extensively that their claims can be both, and that has caused and created extensive briefing to be required. In addition, Plaintiffs have historically filed an inordinate amount of briefing, including the filing of sur-replies.

C.  The skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law: The skill necessary to perform the legal services is standard within the state of Idaho Bar Association.  However, the experience and ability of the attorneys in the field are extensive.  Mr. Trout has been practicing for over 45 years, and currently represents the AIA Defendants. The Individual Defendants, CropUSA Entities, and the AIA Defendants have also been represented by Daniel Loras Glynn, who has 30 years of experience in complex litigation.  In addition, the Moving Defendants have been represented by David Risley (admitted in 1975), Martin J. Martelle (admitted in 1984), Shawnee Perdue (admitted in 2012), Steven P. Wieland (admitted in 2009), Douglas J. Siddoway (admitted in 1979), and James Grow (admitted in in 1987).  Mr. Siddoway and Mr. Grow did not represent the Individual Defendants.

D.  The prevailing charges for like work: Each of the attorneys charged an hourly rate that was reasonable for their work.  Several cases, in the Idaho Federal Court, have found that an hourly rate of $380 per hour "was reasonable for the lead attorney with over 20 years of experience specifically focused on intellectual property litigation." *Composite Res., Inc. v. Rood*, No. 2:21-CV-00500-BLW, 2023 WL 2354831,

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR AWARD OF FEES AND COSTS | Page 13**

at *4 (D. Idaho Mar. 3, 2023). In *Composite Res., Inc.*, Judge B. Lynn Winmill also found that paralegal rates of $175 and associate rates between $200 and $230 to be reasonable. In *Paddock v. Dixon*, the Judge Nye, in granting Defendants' Motions for Attorney Fees, stated "The Court has reviewed each motion and finds all the fees reasonable. In fact, Defendants' attorneys and paralegals were either billing at or below the average rate in Boise, Idaho." Judge Nye commented in a footnote that "[t]he attorneys in this case billed between $150 and $250 per hour and their paralegals between $100 and $150 per hour. … the Court can confirm the rates in this case are well within what it normally sees (and award) for attorneys and paralegals in Boise, Idaho." *Paddock v. Dixon*, No. 1:21-CV-00493-DCN, 2023 WL 1993693 (D. Idaho Feb. 14, 2023).

E. Whether the fee is fixed or contingent: The fee for the Moving Defendants is fixed at an hourly rate. The AIA Defendants were billed on an hourly basis by each of the attorneys, and the rates varied between $150 per hour and $450 per hour. The AIA Defendants are billed by Trout & Jones, PLLC at the current hourly rate of $450 per hour. The Individual Defendants and Mr. Glynn have entered into a blended fee agreement wherein Mr. Glynn charges a reduced rate of $165 per hour, however in the event that there were to be a recovery as the prevailing party in any such litigation the Individual Defendants would be required to reimburse Mr. Glynn for his then standard hourly rate of $225 an hour.

F. The time limitations imposed by the client or the circumstances of the case: There were no particularly strict time limitations imposed by the client, however due to circumstances dictated by the Plaintiff, the attorneys for the Moving Defendants did have to spend an inordinate amount of time to respond to multiple filings.

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR AWARD OF FEES AND COSTS | Page 14**

G.  The amount involved and the results obtained: The Plaintiffs claimed damages of $90,864,320.76. (Dkt. 1295-5, p. 348). The Defendants were awarded $0 and judgment was entered in the Defendants' favor dismissing the lawsuit.

H.  The undesirability of the case: This case was undesirable given that it had over 15 years of litigation.  In addition, the Plaintiff has developed a reputation for litigation and the time requirements involved in defending against the Plaintiffs and their claims are known within the legal community to be large, and therefore undesirable.

I.  The nature and length of the professional relationship with the client: This factor is difficult to define given the number of attorneys involved.  However, Mr. Trout and Mr. Glynn have had an extensive relationship with each of their clients.  The Court should find that this factor does not weigh against the Moving Defendants.

J.  Awards in similar cases:  In similar cases, such as *Kugler, Mannos, and McCann 1*, the Idaho Supreme Court has upheld the dismissal of the suit and an award of fees and costs in favor of the Defendants in those cases.

K.  The reasonable cost of automated legal research (computer assisted legal research), if the court finds it was reasonably necessary in preparing a party's case: The AIA Defendants' Counsel utilized two contract attorneys for research, for a total of $4,155.00.  Brian DeFriez is a Idaho State Bar licensed member and charged a total of $3,753 to Trout Law for the preparation and specifically the assistance in the writing of the Objection to Plaintiff's Motion for Fees and Costs filed on July 8, 2022 (Dkt. 1221).

L.  Any other factor which the court deems appropriate in the particular case: This case extended over a period of 15 years and three amended complaints.  The Court should consider the Plaintiffs' failure to disclose experts, and the Plaintiffs' conduct

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR AWARD OF FEES AND COSTS | Page 15**

prior to and thereafter, including the argument that the claims are not derivative in nature but should be considered direct claims, with Plaintiff seeking an award of damages in his favor. The conduct of Plaintiffs and their counsel was particularly troublesome and difficult and should be considered in the court's discretion.

**7.      Donna Taylor is jointly and severally responsible for the fees and costs incurred from 2010 until October 31, 2016.**

Donna Taylor initiated this action as a co-plaintiff to Dale Miesen. (Dkt. 1). Donna Taylor brought forth the same claims as Dale Miesen and was represented by the same counsel as Dale Miesen. In *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 888 (9th Cir. 2000), the 9th Circuit affirmed the grant of an award of fees and costs against the Plaintiffs. The 9th Circuit stated:

> The district court ruled that each individual plaintiff is jointly and severally liable for defendants' attorneys' fees to the extent that fees were incurred before each plaintiff's dismissal from the action with prejudice. The court so ruled because all plaintiffs joined in asserting all claims against defendants. All plaintiffs were represented by the same attorneys. All plaintiffs sought the same relief. And finally, all claims of all plaintiffs were ultimately dismissed with prejudice, albeit at different times.

In *Kona*, the court found that the Plaintiffs were jointly and severally liable for the fees and costs incurred by the Defendant. Specifically, after referral to a Special Master, the Court stated: "The Special Master further recommended that Kona, BVF, Tach One, Rogers, and Gertino be jointly and severally liable for 50% of the total award, or $312,678.28; that BVF, Tach One, and Kona be jointly and severally liable for 35% of the total award, or $218,874.80; and that Kona be *883 liable for 15% of the total award, or $93,803.49." The 9th Circuit affirmed stating: "[we] affirm the court's determination that defendants are the "prevailing parties" and that plaintiffs Kona, Tach One, and BVF are the "losing parties" in this action[.]". *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 882–83 (9th Cir. 2000).

Given that Donna Taylor was involved for 43% of the litigation from August 11, 2010 through October 31, 2016, the Moving Defendants request the Court apportion the fees and costs

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR AWARD OF FEES AND COSTS | Page 16**

20-ER-5125

and provide for joint and several liability between Plaintiff Miesen and former Plaintiff Donna Taylor. The Moving Defendants request the Court apportion 57% of the fees and costs incurred to Plaintiff Miesen.

## CONCLUSION

For the foregoing reasons, the AIA Defendants requests the Court award it its requested attorneys' fees and costs necessarily incurred in this litigation.

DATED June 11, 2025.

TROUT & JONES, PLLC


_____/s/ Kim J. Trout_____
Kim J. Trout
Attorney for Defendants AIA Services Corporation
and AIA Insurance, Inc.


JONES WILLIAMS FUHRMAN GOURLEY, PA


_____/s/ Daniel Loras Glynn_____
Daniel Loras Glynn
Attorney for CropUSA Entities and Individual
Defendants

20-ER-5125

DANIEL LORAS GLYNN, ISB #5113
JONES ♦ WILLIAMS ♦ FUHRMAN ♦ GOURLEY, P.A.
The 9th & Idaho Center
225 N. 9th Street, Suite 820
PO Box 1097
Boise, ID 83701
Telephone:  (208) 331-1170
Facsimile:  (208) 331-1529
dglynn@idalaw.com
Attorneys for James Beck, Michael Cashman, Connie Henderson, John Taylor, Crop USA
Insurance Agency, Inc., and Crop USA Insurance Services, LLC

KIM J. TROUT, ISB #2468
TROUT & JONES, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID  83703
Telephone (208) 577-5755
Facsimile (208) 577-5756
service@trout-law.com

Attorneys for Defendant AIA Services Corporation & AIA Insurance, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.; <br><br> Plaintiff, <br> vs. <br><br> HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE | Case No. 1:10-CV-404-DCN-CWD <br><br> **DECLARATION OF KIM J. TROUT** |

**DECLARATION OF KIM J. TROUT | Page 1**

20-ER-5126

SERVICES, LLC, an Idaho limited liability
company; and GEMCAP LENDING I, LLC, a
Delaware limited liability company,

Defendants.

Kim J. Trout, having been first duly sworn upon oath, deposes and says as follows:

1. I am over the age of eighteen (18) years old, have personal knowledge of the matters stated herein, and am competent to testify to the contents of this Declaration. I am currently counsel for the Defendants AIA Services Corporation & AIA Insurance, Inc. The facts and statements set forth in this Declaration are true and correct to the best of my knowledge and belief.

2. I have practiced law in the pacific Northwest for forty-five years, focusing on commercial litigation, construction litigation, business disputes, and complex civil litigation in the State of Idaho. From 1979 to 1992, I practiced in North Idaho, and at one time was law partners with David Risley. From 1992 to present, I have practiced in the Treasure Valley, with litigation in both Federal District and State Court actions. Given my practice in both Northern Idaho and in Ada County, as well as the Federal Courts, I am familiar with the hourly rates typically charged for general civil, commercial, and complex litigation in this region.

3. Based upon my years of experience and billing knowledge, I agree with and confirm that the hourly rates and time spent on this matter were reasonable and necessary to defend against Plaintiff's claims, as were the costs incurred.

4. In or about December of 2021, I was retained by John Taylor to represent Defendant AIA Services Corporation & AIA Insurance, Inc. in this litigation under a fee agreement. A true and correct copy of the agreement is attached hereto as **Exhibit 1**. Under this agreement, I maintained separate billings for each matter and charged an hourly rate. Additionally, I was assisted by my paralegal, who has been with me since 2007, and his hourly rate was between $150 and $185 per hour. The hourly rate for other attorneys and paralegals that assisted on the case depended on experience.

**DECLARATION OF KIM J. TROUT | Page 2**

Since the inception of this matter, I billed the AIA Defendants $325 per hour until December 31, 2022, then billed $350 per hour until January 31, 2025, and then billed $450 per hour through present. These rates are reasonable and appropriate for the Idaho State Bar for attorneys with my experience.

5.      I have reviewed the invoices of the other attorneys which represented the AIA Defendants as well as the Individual Defendants and CropUSA Entities, and find their rates to be reasonable and commensurate with the experience of the attorneys at the time and members of the Idaho State Bar generally.

6.      I have reviewed the time records for myself and my firm in relation to this matter which are attached to the Declaration of John Taylor. The records contain time sheets that document my billable hours for my work dedicated to this case. The billing detail is based on hourly information that was logged by members of my firm. Together, with the service provided, it indicates and shows the time spent, the work performed, and the rate charged.

7.      Pursuant to *Yellowstone Poky, LLC v. First Pocatello Assocs., L.P.*, No. 4:16-CV-00316, 2020 WL 5790385, at *3 (D. Idaho Sept. 28, 2020), when determining the amount of attorney fees to be awarded under Idaho Code § 12-120(3), federal courts sitting in diversity consider the reasonableness factors set forth in Idaho R. Civ. P. 54(e)(3).  The following is my analysis of the IRCP Rule 54 factors:

a.  The time and labor required:  This matter has taken an extraordinary amount of time for the named Defendants and their counsel.  This case has been going for 15 years, including one appeal, and there are over 1,300 filings requiring a significant amount of time and labor to respond to Plaintiff's multiple filings.

b.  The novelty and difficulty of the questions: This case involves the application of the law distinguishing derivative claims from direct claims. The Plaintiffs have argued extensively that their claims can be both, and that has caused and created

**DECLARATION OF KIM J. TROUT | Page 3**

extensive briefing to be required. In addition, Plaintiffs have historically filed an inordinate amount of briefing, including the filing of sur-replies.

c.  The skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law: The skill necessary to perform the legal services is standard within the state of Idaho Bar Association.  However, the experience and ability of the attorneys in the field are extensive.  Mr. Trout has been practicing for over 45 years, and currently represents the AIA Defendants. The Individual Defendants, CropUSA Entities, and the AIA Defendants have also been represented by Daniel Loras Glynn, who has 30 years of experience in complex litigation.  In addition, the moving Defendants have been represented by David Risley (admitted in 1975), Martin J. Martelle (admitted in 1984), Shawnee Perdue (admitted in 2012), Steven P. Wieland (admitted in 2009), Douglas J. Siddoway (admitted in 1979), and James Grow (admitted in in 1987).  Mr. Siddoway and Mr. Grow did not represent the Individual Defendants.

d.  The prevailing charges for like work: Each of the attorneys charged an hourly rate that was reasonable for their work.  Several cases, in the Idaho Federal Court, have found that an hourly rate of $380 per hour "was reasonable for the lead attorney with over 20 years of experience specifically focused on intellectual property litigation." *Composite Res., Inc. v. Rood*, No. 2:21-CV-00500-BLW, 2023 WL 2354831, at *4 (D. Idaho Mar. 3, 2023).  In *Composite Res., Inc.*, Judge B. Lynn Winmill also found that paralegal rates of $175 and associate rates between $200 and $230 to be reasonable.  In *Paddock v. Dixon*, the Judge Nye, in granting Defendants' Motions for Attorney Fees, stated "The Court has reviewed each motion and finds all the fees reasonable.  In fact, Defendants' attorneys and paralegals were either billing

**DECLARATION OF KIM J. TROUT | Page 4**

at or below the average rate in Boise, Idaho." Judge Nye commented in a footnote that "[t]he attorneys in this case billed between $150 and $250 per hour and their paralegals between $100 and $150 per hour. … the Court can confirm the rates in this case are well within what it normally sees (and award) for attorneys and paralegals in Boise, Idaho." *Paddock v. Dixon*, No. 1:21-CV-00493-DCN, 2023 WL 1993693 (D. Idaho Feb. 14, 2023).

e.  Whether the fee is fixed or contingent: The fee for the moving Defendants is fixed at an hourly rate. The AIA Defendants were billed on an hourly basis by each of the attorneys, and the rates varied between $150 per hour and $450 per hour. The AIA Defendants are billed by Trout & Jones, PLLC at the current hourly rate of $450 per hour. The Individual Defendants and Mr. Glynn have entered into a blended fee agreement wherein Mr. Glynn charges a reduced rate of $165 per hour, however in the event that there were to be a recovery as the prevailing party in any such litigation the Individual Defendants would be required to reimburse Mr. Glynn for his then standard hourly rate of $225 an hour.

f.  The time limitations imposed by the client or the circumstances of the case: There were no particularly strict time limitations imposed by the client, however due to circumstances dictated by the Plaintiff, the attorneys for the moving Defendants did have to spend an inordinate amount of time to respond to multiple filings.

g.  The amount involved and the results obtained: The Plaintiffs claimed damages of $90,864,320.76. (Dkt. 1295-5, p. 348). The Defendants were awarded $0 and judgment was entered in the Defendants' favor dismissing the lawsuit.

h.  The undesirability of the case: This case was undesirable given that it had over 15 years of litigation. In addition, the Plaintiff has developed a reputation for

**DECLARATION OF KIM J. TROUT | Page 5**

litigation and the time requirements involved in defending against the Plaintiffs and their claims are known within the legal community to be large, and therefore undesirable.

i.  The nature and length of the professional relationship with the client: This factor is difficult to define given the number of attorneys involved. However, Mr. Trout and Mr. Glynn have had an extensive relationship with each of their clients. The Court should find that this factor does not weigh against the Moving Defendants.

j.  Awards in similar cases: In similar cases, such as *Kugler, Mannos, and McCann 1*, the Idaho Supreme Court has upheld the dismissal of the suit and an award of fees and costs in favor of the Defendants in those cases.

k.  The reasonable cost of automated legal research (computer assisted legal research), if the court finds it was reasonably necessary in preparing a party's case: The AIA Defendants' Counsel utilized two contract attorneys for research, for a total of $4,155.00. Brian DeFriez is an Idaho State Bar licensed member and charged a total of $3,753 to Trout Law for the preparation and specifically the assistance in the writing of the Objection to Plaintiff's Motion for Fees and Costs filed on July 8, 2022 (Dkt. 1221).

l.  Any other factor which the court deems appropriate in the particular case: This case extended over a period of 15 years and three amended complaints. The Court should consider the Plaintiffs' failure to disclose experts, and the Plaintiffs' conduct prior to and thereafter, including the argument that the claims are not derivative in nature but should be considered direct claims, with Plaintiff seeking an award of damages in his favor. The conduct of Plaintiffs and their counsel was

**DECLARATION OF KIM J. TROUT | Page 6**

particularly troublesome and difficult and should be considered in the court's discretion.

5.    I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

DATED June 11, 2025.

TROUT & JONES, PLLC


_____/s/ Kim J. Trout_____
Kim J. Trout
Attorney for AIA Defendants

**DECLARATION OF KIM J. TROUT | Page 7**

# EXHIBIT 1

# EXHIBIT 1

**20-ER-5133**



| Boise | Ketchum | t (208) 577. 5755 |
| 3778 Plantation River Dr., Suite 101 | P.O. Box 2946 | f (208) 577. 5756 |
| Boise, Idaho 83703 | Ketchum, ID 83340 | www.trout-law.com |

January 13, 2022

**SENT VIA: E-MAIL**

AIA Services Corporation
AIA Insurance, Inc.
c/o John Taylor

**Re:    AUTHORITY TO REPRESENT AND FEE AND COST AGREEMENT**

To Whom It May Concern:

You have employed Kim J. Trout of **TROUT LAW, PLLC** (hereinafter also referred to as "Attorney") to represent you regarding Case No. 1:10-CV-404-DCN-CWD.  Please be advised that this firm will represent you subject to the terms of this agreement.

**Responsibilities.**  Our respective responsibilities are as follows:  Attorney will handle your case and communicate with you as necessary to keep you informed of the progress of this matter.  Your responsibility is to cooperate with Attorney by providing all information available to you relating to this matter; consulting with Attorney from time to time so that appropriate decisions can be made; and paying attorneys fees and costs incurred in the pursuit of this matter in a timely manner.

**Fees and Costs**:  Fees and costs will be billed at the normal hourly rate for the attorney in our office performing services.  Kim J. Trout's current hourly rate is $325 per hour.  Periodically other attorneys or paralegals may assist in the handling of this case.  My paralegal's hourly rate is $150.  The hourly rate for other attorneys and paralegals depends on experience, but shall not exceed $325 per hour.  Hourly rates shall include the actual amount of time expended, including time making telephone calls, drafting correspondence, attending meetings, performing research, preparing pleadings, and reviewing correspondence and pleadings.  The hourly rate may be increased during my representation of you.

Costs consists of expenses incurred on your behalf which include, but is not limited to messenger services, filing fees, certification and recording charges, postage or next day delivery charges, facsimile transmission and receipt, photocopy charges, long distance charges, mileage, court reporting fees, expert witness fees, accounting and investigation fees, document processing costs, litigation support services, and other necessary expenses that may occur from time to time.  Litigation support services include, but are not limited to the preparation of hearing/mediation/trial materials and other services as determined by Attorney.

AIA Services Corporation
AIA Insurance, Inc.
January 13, 2022
Page 2 of 4

From time to time Attorney may furnish estimates of attorneys' fees or costs that we anticipate will be incurred. These estimates are subject to unforeseen circumstances and are a rough calculation. Therefore, any such estimates are not binding upon us and you agree to pay the actual fees and costs incurred, even if they exceed the estimate.

**Contract Lawyers and Computer Assisted Legal Research Specialist.** Attorney may occasionally use contract legal services to assist in your case. Attorney's use of contract legal services includes companies specialized in either 1) computer assisted legal research ("CALR") or 2) research and writing ("Contract Lawyer"), (together known as "contract legal services.") The Contract Lawyer is an Idaho licensed and insured attorney. Attorney works with a CALR specialist for specialized computer assisted legal research, which services are for the limited purpose of answering specific legal questions. All such contracts are for services to Attorney and do not constitute a separate attorney-client relationship with our clients. Attorney agrees to limit these services to those we deem necessary or helpful to your case resolution. Both CALR and the Contract Lawyer will perform services diligently and competently using independent judgment and skill, subject to Attorney's oversight and final discretion.

Contract Lawyer will observe all applicable Idaho rules of professional conduct, including those related to our client's privileged and confidential information. Attorney will limit contract legal services' access to confidential or privileged information other than information necessary to perform their contract services. Contract legal services agree to return any such information (including all copies) immediately upon the earlier of request by our firm or completion of their use. Attorney shall securely disclose client information according to professional industry standards. Attorney agrees to implement procedures and safeguards to screen contract legal services from matters and clients other than those relating to the services of this agreement. Contract Lawyer will perform an independent conflicts check to ensure the absence of conflicts or other ethical concerns in this matter. Contract legal services shall complete their services within the guidelines provided by Attorney.

As part of this agreement, you expressly agree and consent to the above terms without further notice from Attorney. We shall bill all contract legal services at the actual rate charged to Attorney. We shall keep you informed of our use of contract legal services in our periodic billing statements. You may request the full details of such contract legal services at any time, including requests for research memoranda, copies of the invoices, etc… You may cancel such contract legal services at any time by written request to Attorney.

**Billing.** You will receive a periodic statement. If an amount is due, it is payable within thirty (30) days after billing. Balances unpaid after thirty (30) days shall bear interest at eighteen percent (18%) per annum.

20-ER-5135

AIA Services Corporation
AIA Insurance, Inc.
January 13, 2022
Page 3 of 4

**Retainer.** A retainer of $5,000 is required. Attorney will hold your funds in its Lawyers' Trust Account. Attorney will provide you a monthly statement of fees, costs, and expenses, as described in the "Billing" section. After Attorney delivers the monthly statement, Attorney will apply the funds to the fees earned, costs, and expenses incurred. You are responsible for paying any fees, costs, and expenses in excess of the funds Attorney holds. In the event the fees, costs and expenses exceed the funds held by Attorney, Attorney will bill you for the additional fees and costs. At any time, Attorney, at Attorney's discretion, may request you make an additional deposit into Attorney's Lawyers' Trust Account. If at the conclusion of this matter, there is a balance in the Attorney's Lawyers' Trust Account, Attorney shall refund the remaining funds to you.

**No Guarantees of Outcome.** No guarantees have been made regarding the disposition of any phase of this matter, and all expressions relative to it are only an opinion of the Attorney.

**Discharge or Withdrawal of Attorney.** In the event of discharge of the Attorney by the Client before completion of this matter, or should Attorney be forced to cancel this contract due to lack of cooperation on the part of client as agreed to in paragraph 1 above, the Client agrees to pay Attorney, at Attorney's option, for the time Attorney has spent on behalf of Client at the rate of $325 per hour. Upon such discharge, Client agrees to immediately pay Attorney all out-of-pocket expenses incurred by Attorney, including interest to date, and fees before Client's file or other information in possession of Attorney shall be made available to Client or his/her agent. It is agreed that neither you nor any other party in interest shall have any recourse or claim against this firm or any member of this firm for damages accruing after the cessation of representation or this firm's withdrawal as counsel of record. Client hereby grants to **TROUT LAW, PLLC** an attorney lien on Client's causes of action to secure these obligations.

Each of us reserves the right to terminate our attorney-client relationship for any reason. Client must notify Attorney in writing that he/she is discharging Attorney. Attorney specifically reserve the right to terminate our relationship for nonpayment of fees and costs.

You agree to pay all attorneys' fees, costs and expenses which we may incur as a result or consequence of your failure to timely pay our statements including, without limitation, our attorneys' fees, and costs if we represent ourselves pro se for the collection of the outstanding balances due to us from you.

**Conflicts.** You have not advised us, nor are we aware of, any conflicts of interest which would prevent us from representing your legal affairs. However, we reserve the right to withdraw from our representation of you should any such conflict arise in the future.

**File Retention.** It is our firm's policy to destroy files five (5) years after final judgment is entered and any appeals are finalized. If you would like us to return your file to you rather than it being destroyed, please send us a letter to that effect.

AIA Services Corporation
AIA Insurance, Inc.
January 13, 2022
Page 4 of 4

**Electronic Communications.** During the course of representation, communications may be sent electronically (emails, text messaging, etc.). Please be assured that we consider such communication from our office to be covered by the attorney/client privilege, as are communications from our clients. However, if you send any communication to this office and "cc" it to a third party, you may be waiving that privilege. Likewise, if you forward any communication received from this office to any third party, you may destroy the privilege.

**Effective Date**. The effective date of this agreement is December 22, 2021.

**Modifications of this Agreement.** This agreement may be changed only in writing signed by both Client and Attorney.

**Headings.** The headings on the paragraphs of this agreement are for convenience only and not intended to define, modify, limit, or construe the meaning of the paragraph or of this agreement.

This Agreement consists of 4 pages, including this signature page. This Agreement is being executed with Duplicate Originals.

| | |
|---|---|
| _(signature)_ | January 13, 2022 |
| Kim J. Trout, Attorney | Date |

I ACKNOWLEDGE RECEIPT OF A COPY OF THIS STATEMENT AND AGREE TO THE TERMS SET FORTH HEREIN.

_R. John Taylor_                                     01/13/2022
SignNow e-signature ID: 0d8761547e...
01/13/2022 23:34:10 UTC
AIA Services Corporation
AIA Insurance, Inc.                                 Date

20-ER-5137

DANIEL LORAS GLYNN, ISB #5113
JONES ♦ WILLIAMS ♦ FUHRMAN ♦ GOURLEY, P.A.
The 9th & Idaho Center
225 N. 9th Street, Suite 820
PO Box 1097
Boise, ID 83701
Telephone:  (208) 331-1170
Facsimile:  (208) 331-1529
dglynn@idalaw.com
Attorneys for James Beck, Michael Cashman, Connie Henderson, John Taylor, Crop USA
Insurance Agency, Inc., and Crop USA Insurance Services, LLC

KIM J. TROUT, ISB #2468
TROUT & JONES, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID  83703
Telephone (208) 577-5755
Facsimile (208) 577-5756
service@trout-law.com

Attorneys for Defendant AIA Services Corporation & AIA Insurance, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>        Plaintiff,<br><br>vs.<br><br>HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE | Case No. 1:10-CV-404-DCN-CWD<br><br>**DECLARATION OF DANIEL LORAS GLYNN** |

**DECLARATION OF DANIEL LORAS GLYNN | Page 1**

## 20-ER-5138

SERVICES, LLC, an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,

Defendants.

Daniel Loras Glynn, having been first duly sworn upon oath, deposes and says as follows:

1.      I am over the age of eighteen (18) years old, have personal knowledge of the matter stated herein, and can provide competent testimony on the matters discussed herein. I am presently the attorney for the Defendants James Beck, Michael Cashman, Connie Henderson, and R. John Taylor (the "Individual Defendants"), and Crop USA Insurance Agency, Inc. as well as Crop USA Insurance Services, LLC (collectively referred to as "CropUSA Entities"). All statements made in this Declaration are true to the best of my knowledge and belief.

2.      I have been a private practice attorney with a focus on commercial litigation for nearly thirty years in the State of Idaho generally and in Ada and Canyon County primarily. As such I am familiar with the hourly rates charged by the attorneys in this area with regard to general civil litigation and commercial litigation specifically and certify that the following attorney time and hourly rates charged in this matter were reasonable and necessary for the defense of Plaintiff's claims in this matter as were the costs included herein.

3.      In or about December of 2018, I was retained by John Taylor to represent the interests of the Defendant AIA Services Corporation in this litigation, a companion litigation previously filed by Donna Taylor, and potential other matters pursuant to a hybrid fee agreement a true and correct copy of which is attached as **Exhibit 1** hereto.  Pursuant to this Agreement, I agreed to maintain distinct billings across all matters to which I provided representation and for which representation I would charge my then existing rate of $165 an hour for certain insurance defense related matters.  Pursuant to the same agreement, in the event that there were to be a recovery as the prevailing party in any such litigation the represented party would be required to reimburse me for what was then my standard hourly rate of $225

**DECLARATION OF DANIEL LORAS GLYNN | Page 2**

an hour.  It should be noted that over the last eight years both my limited standard insurance defense rate as well as standard rate have increased to $250 an hour and $375 an hour respectively.

4.     In approximately March of 2019, I agreed to undertake the representation of the Individual Defendants and the CropUSA Entities as Martin Martelle of Martelle Law had determined to wind down his practice and could no longer represent these parties.  However, upon objection from Plaintiff in this proceeding as to the dual representation of AIA as well as the Individual Defendants and the CropUSA Entities, I withdrew as counsel for AIA in these proceedings.

5.     Attached to John Taylor's declaration are true and correct copies of the time records for myself relative to this matter. This billing detail contains the contemporaneously entered time sheets for my work on this matter.   The billing detail which is based on information inputted by me contemporaneously with the service provided identifies the time spent, the work performed, and the rate charged.

6.     I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

DATED June 11, 2025.

JONES ♦ WILLIAMS ♦ FUHRMAN ♦ GOURLEY, P.A.

 /s/   Daniel Loras Glynn
DANIEL LORAS GLYNN
Attorneys for Individual Defendants and CropUSA

**DECLARATION OF DANIEL LORAS GLYNN | Page 3**

EXHIBIT 1

# EXHIBIT 1

**20-ER-5141**

# JONES ♦ GLEDHILL ♦ FUHRMAN ♦ GOURLEY, P.A.
## A T T O R N E Y S   A T   L A W

### AUTHORITY TO REPRESENT AND FEE AND COST AGREEMENT

You have retained Daniel Loras Glynn of Jones ♦ Gledhill ♦ Fuhrman ♦ Gourley, P.A. (hereinafter also referred to as "Attorney") to represent AIA Services Corporation in connection with the following matters:

(1) Donna J. Taylor v. AIA Services Corporation *et al.*, Case Number CV 13 01075 as pending in the Second Judicial District Court for the State of Idaho, County of Nez Pierce
(2) Dale Meisen v. AIA Services Corporation *et al.*, Case Number CV 0040-CWD as pending in the United States Federal District Court for the State of Idaho.
(3) AIA Services Corporation in a to be filed recoupment action against Reed Taylor for proceeds received from certain malpractice carriers which funds should have been paid to AIA Services Corporation.

These three cases are referred to the as "The Matters."

You have also requested that Attorney provide advice, analysis and counsel from time to time with regard to certain other matters, *to wit*,

(1) Crop USA v. Diversified;
(2) Weskan Agency v. CropUSA and Diversified;
(3) Dale Meisen v. John Munding; and
(4) other matters relating to AIA Services, CropUSA and its affiliates.

**Responsibilities.** Our respective responsibilities are as follows: Attorney will handle your case and communicate with you as necessary to keep you informed of the progress of this matter. Your responsibility is to cooperate with Attorney by providing all information available to you relating to this matter; consulting with Attorney from time to time so that appropriate decisions can be made; and paying attorneys fees and costs incurred in the pursuit of these matter in a timely manner as consistent with the terms of this Agreement.

**Fees and Costs.** In connection with the representation provided in The Matters, Attorney agrees to be compensated on an ongoing basis by a mix of hourly and contingency fee rates. You understand that Attorney's regular normal hourly rate is $225 an hour. However, in consideration of the blended fee arrangement agreed herein, Attorney agrees to accept a discounted hourly rate of $165 an hour during the pendency of The Matters. In exchange, You agree to the following:

(1) For every month in which Attorney is providing representation in The Matters You will make a $5,000 retainer to be deposited into the Jones ♦ Gledhill ♦ Fuhrman ♦ Gourley, P.A. trust account on or before 15th of the month, provided that You shall pay $10,000 a month in the two months preceding the trial date of any of The Matters as well as for any month in which trial occurs (hereinafter referred to as "the Monthly Retainer"). Attorney shall collect The Monthly

**AUTHORITY TO REPRESENT AND FEE AND COST AGREEMENT**
1 | P a g e

Retainer on the 25th of each month regardless of the attorney fees actually incurred in the given month. The Monthly Retainer is exclusive of any costs incurred in the representation of any matter which costs shall be paid as they are incurred. These costs consist of expenses incurred on your behalf for messenger service, filing fees, certification and recording charges, postage or next day delivery charges, facsimile transmission and receipt, photocopy charges, long distance charges, mileage, court reporting fees, expert witness, accounting and investigation fees, and other necessary expenses that may occur from time to time.

(2) In addition, Attorney shall have an interest in all recoveries from any source in the Matters which interest shall be as follows:

    a. Attorney shall be paid first from the proceeds of any recovery in The Matters for the amount due, if any, for the difference between the amounts billed each month at the discounted rate and the Monthly Retainer payments.

    b. Next the Attorney shall be paid from the proceeds of any recovery in the Matters for the difference in the discounted hourly rate and regular hourly rate for all fees incurred in the prosecution and defense of the Matters at the point of any recovery; and

    c. After the payment of the proceeds of any recovery in the Matters as set forth in paragraph (2)(a) and (2)(b) You have assigned a twenty-five percent (25%) contingency fee upon all recoveries. With respect to the contingency fee interest being conveyed herein, You are conveying an irrevocable twenty-five percent (25%) interest in all proceeds of the Matters, whether obtained by settlement or by judgment or otherwise and whether denominated actual damages, costs, attorneys' fees, punitive damages or other recovery, and in whatever form they may take.

**Billing.** You will receive a statement on or about the 1st day of each month. Any amounts due for The Matters in excess of the Monthly Retainer will be carried forward to succeeding months until fully paid in accordance with Paragraph (2) above. Billings for the advice, analysis and counsel from time to time with regard to certain other matters will be billed separately at the discounted hourly rate and billed monthly. If an amount is due, it is payable within 10 days after billing. Balances unpaid after 10 days shall bear annual interest of 12%.

**No Guarantees of Outcome.** No guarantees have been made regarding the disposition of any phase of this matter, and all expressions relative to it are only an opinion of the Attorney.

**Discharge or Withdrawal of Attorney.** In the event of discharge of the Attorney by You before completion of this matter, or should Attorney be forced to cancel this contract due to lack of cooperation on the part of client as agreed to above, You agree to pay Attorney the monthly fee owed in the month in which discharge or withdrawal occurs and to immediately pay Attorney all out-of-pocket expenses incurred by Attorney before Your file or other information in possession of Attorney shall be made available to You or his/her agent. Attorney shall retain right to recover the fees identified in paragraph (2)b and (2)c. above to the extent that the Attorney is involved in the recovery from the causes of action and if a successor attorney is involved the percentage will be determined via the mandatory arbitration provision hereinbelow. You hereby grant to Daniel Loras Glynn of Jones ◆ Gledhill ◆ Fuhrman ◆ Gourley, P.A. an attorney lien on Your causes of action to secure these obligations.

**AUTHORITY TO REPRESENT AND FEE AND COST AGREEMENT**
2 | P a g e

20-ER-5143

Each of us reserves the right to terminate our attorney-client relationship for any reason. I specifically reserve the right to terminate our relationship for nonpayment of fees and costs.

**File Retention.** It is our firm's policy to destroy files five (5) years after entry of any judgment or order of dismissal in the above-entitled matter. If you would like us to return your file to you rather than it being destroyed, please send us a letter to that effect. If we do not hear from you, the file will be destroyed five (5) years after entry of any judgment or order of dismissal in the above-entitled matter.

**Electronic Communications.** During the course of representation, communications may be sent electronically (emails, text messaging, etc.). Please be assured that we consider such communication from our office to be covered by the attorney/client privilege, as are communications from our clients. However, if you send any communication to this office and "cc" it to a third party, you may be waiving that privilege. Likewise, if you forward any communication received from this office to any third party, you may destroy the privilege.

**Modifications of this Agreement.** This agreement may be changed only by a writing signed by both Client and Attorney.

**Mandatory Arbitration.** Every controversy or claim arising out of or relating to this agreement or the breach of this agreement or the attorney/client relationship between the client and the attorney shall be resolved by arbitration and not be court action or by a jury. THE RIGHTS TO BRINGING A COURT ACTION AND TO TRIAL BEFORE A JURY ON EVERY CONTROVERSY AND CLAIM HEREIN PROVIDED TO BE ARBITRATED ARE EXPRESSLY WAIVED BY BOTH THE CLIENT AND THE ATTORNEY. Such arbitration shall be in accordance with the commercial arbitration rules of the American Arbitration Association.

_____     12/6/18
Daniel Loras Glynn, Attorney                Date

I ACKNOWLEDGE RECEIPT OF A COPY OF THIS STATEMENT AND AGREE TO THE TERMS SET FORTH HEREIN.

_____     PO Box 538     12-6-18
John Taylor          (Billing Address)     Lewiston          Date
                                           ID 83121

**AUTHORITY TO REPRESENT AND FEE AND COST AGREEMENT**
3 | P a g e

20-ER-5144

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>**v.**<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:10-cv-00404-DCN-CWD<br><br>PLAINTIFF DALE L. MIESEN'S MEMORANDUM OF LAW IN SUPPPORT OF HIS SECOND MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS |

MEMO ISO MIESEN'S 2nd MOTION TO APPROVE PAYMENT OF FEES AND COSTS - i

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

        Defendants/Third-Party Plaintiffs,

        **v.**

REED TAYLOR, an individual,

        Third-Party Defendant.

REED TAYLOR, an individual,

        Third-Party Defendant/ Counterclaimant,

        **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

        Counterdefendants.

MEMO ISO MIESEN'S 2nd MOTION TO APPROVE PAYMENT OF FEES AND COSTS - ii

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   FACTS .......................................................................................................... 1

III.  ARGUMENT ................................................................................................. 2

    A.   This Court should rule that Miesen's counsel have a first priority charging lien in the settlement funds and order the total payment of $617,573.76 in attorneys' fees, plus 40% of any future accrued interest, and $380,621.23 in costs. ............................................................................................... 2

        1.   The general legal standards. ........................................................ 2

        2.   Miesen's counsel provided legal services under a valid contingent fee agreement. .............................................................. 3

        3.   Miesen's counsel have a valid first-priority charging lien on the settlement funds. ..................................................................... 4

        4.   This Court Should approve the payment of Miesen's fees and costs under the "common fund" doctrine. ...................................... 5

        5.   This Court should also approve the payment of the requested fees and costs under I.C. § 30-29-746(1) because the AIA Entities received a substantial benefit. ............................................... 6

        6.   The amount of the fees requested are reasonable and supported. ............... 8

            a.   The time and labor required. .......................................... 11

            b.   The novelty and difficulty of the questions. ................................. 11

            c.   The skill requisite to perform the legal services properly and the experience and ability of the attorney in the particular field of law. ...................................... 12

            d.   The prevailing charges for like work. ........................................... 12

            e.   Whether the fee is fixed or contingent. ......................................... 12

            f.   The time limitations imposed by the client or the circumstances of the Case. .............................................. 12

            g.   The amount involved and the results obtained. ............................ 13

            h.   The undesirability of the case. ...................................................... 13

            i.   The nature and length of the professional relationship with the client. .............................................. 13

            j.   Awards in similar cases. ............................................................... 13

            k.   The reasonable cost of automated legal research. .......................... 14

            l.   Other factors which the court deems appropriate in the particular case. ............................................ 14

20-ER-5147

7.     The costs requested are reasonable and constitutes a substantial discount. ............................................................................... 14

8.     Miesen should receive a service award of $25,000 for his over 4,000 hours of time. ................................................................. 16

9.     This Court should hold a hearing and take live testimony. ..................... 17

IV.     CONCLUSION ................................................................................................. 17

CERTIFICATE OF SERVICE .................................................................................. 18

Plaintiff Dale L. Miesen and his counsel ("Miesen") move as follows:

## I.   INTRODUCTION

Miesen respectfully moves this Court to approve the payment of a total of $617,573.76 as of May 31, 2025, plus 40% of the future accrued interest, in attorneys' fees and $380,621.23 in costs as a result of his successful efforts in obtaining settlements with GemCap and the Hawley Troxell Defendants—settlements that all of the defendants hotly opposed until they occurred over five years later.[1] To confirm, Miesen is not seeking to be paid twice. If this Court grants Miesen's first motion in its entirety (Dkt. 1242), this motion would only need to address the 40% contingent fee attributable to the past and future accrued interest on the settlement funds ($57,573.76 in fees as of May 31, 2025) and $4,828.07 in additional costs (which includes fees paid to bankruptcy counsel). Miesen also respectfully requests a $25,000 service award for his over 4,000 hours of work as the plaintiff. For the reasons stated below, this Court should grant the motion.

## II.   FACTS

On April 24, 2017, Miesen filed his Third Amended Complaint ("TAC"), which, *inter alia*, named GemCap as a defendant to extricate the AIA Entities from the $12,126,534.61 judgment, which had ballooned to over $26 million as of August 21, 2020. (Dkts. 128 at 21-48, 211, 573-3, 1131-10, 1260-5; Bond Decl. Ex. A at 15–17, B at 12–13, C at 7.)

Contrary to the defendants' assertions that Miesen take nothing from his TAC (Dkts. 193 at 65, 215 at 28, 283 at 149, 366 at 35), Miesen ultimately settled with the Hawley Troxell Defendants for the payment of $1,400,000 and the discharge of the $63,781.64 debt owed by the AIA Entities for attorneys' fees and costs. (Dkts. 1214, 1235, 1236, 1242-3, 1260 at 12, 1260-11

---

[1] Miesen will use the same definitions for the parties previously utilized by this Court. (Dkt. 1238 at 2 n.2–4, at 4 n.5.)  When citing to page numbers in a particular docket, Miesen's citations are to the blue filed-stamped page numbers at the top of each page.

MEMO ISO MIESEN'S 2nd MOTION TO APPROVE PAYMENT OF FEES AND COSTS - 1

at 1.) Shortly thereafter, Miesen settled with GemCap by obtaining a release of all claims against the AIA Entities, which included the over $26 million debt, and which protected the $1,400,000 settlement funds from GemCap. (Dkts. 1240, 1289, 1290.)

On August 18, 2022, Miesen filed a motion to, *inter alia*, approve the payment of $560,000 in attorneys' fees and $375,327.96 in costs from the $1,400,000 recovered from the Hawley Troxell Defendants. (Dkts. 1242–1243.) On May 28, 2025, this Court entered a judgment terminating Miesen's derivative action against the Individual Defendants and the AIA Entities. (Dkt. 1305.) This timely motion followed seeking, *inter alia*, the payment of fees and costs from the final settlement funds, including the accrued interest (Bond Decl., Ex. D), under the common fund doctrine and/or from AIA Services as provided under I.C. § 30-29-746(1). For this motion and his first motion (Dkt. 1242),[2] Miesen is seeking $617,573.76 in fees (i.e., 40% of the $1,400,000 plus 40% of the past accrued interest as of May 31, 2025) and $380,621.23 in costs.

### III.    ARGUMENT

**A. This Court should rule that Miesen's counsel have a first priority charging lien in the settlement funds and order the total payment of $617,573.76 in attorneys' fees, plus 40% of any future accrued interest, and $380,621.23 in costs.**

   **1.  The general legal standards.**

A derivative action is a "suit of equity." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991). As this Court has observed, "attorneys not receiving just compensation for work done is a prime example of inequity and injustice." *U.S. ex. rel. Rafter H Constr., LLC v. Big-D Constr. Corp.*, 358 F. Supp. 3d 1096, 1101 (D. Idaho 2019). In diversity cases, as here, Dkt. 211 at 5 ¶1, the decision regarding attorneys' fee (including the method of calculating fees) and the award of

---

[2] This motion also supplements Miesen's first motion. (Dkt. 1242.) Miesen's counsel has agreed to make substantial concessions in terms of the total fees and costs requested based on the present procedural posture of this case. They reserve the right to change positions if successful on appeal.

MEMO ISO MIESEN'S 2nd MOTION TO APPROVE PAYMENT OF FEES AND COSTS - 2

compensatory costs are governed by state law. *Klopfenstein v. Pargeter*, 597 F.2d 150, 152 (9th Cir. 1979); *Mangold v. California Public Utilities Com'n*, 67 F.3d 1470, 1478–79 (9th Cir. 1995); *Sarens USA, Inc. v. Lowery*, 525 F. Supp. 3d 1257, 1268 (D. Mont. 2021). This Court must predict how the Idaho Supreme Court would decide any unsettled issues of law. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). Verified complaints, e.g., the TAC (Dkt. 211), are treated as "as an affidavit." *Laws v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003).

### 2. Miesen's counsel provided legal services under a valid contingent fee agreement.

Idaho permits contingent fee agreements. I.R.P.C. 1.5(c). A "reverse contingent fee" is:

> A fee which a defense lawyer's compensation depends in whole or in part on how much money the lawyer saves the client, given the client's potential liability — so that the lower the settlement or judgment, the higher the lawyer's fee.

*Contingent Fee*, Black's Law Dictionary (12th ed. 2024);[3] *see Arnall v. Superior Court*, 118 Cal.Rptr.3d 379, 387–90 (Cal. Ct. App. 2010). "An amount equal to standard contingent fees in the same locale is not an amount that is clearly erroneous." *Brinkman v. Aid Ins. Co.*, 766 P.2d 1227, 1232 (Idaho 1988). "[A] reasonable contingent fee must be 'sufficiently high to compensate the lawyer not only for the reasonable value of the time he or she anticipates devoting to the particular lawsuit, but also for the time devoted to other lawsuits undertaken on the same basis but unsuccessful in result.' " *Clark v. Sage*, 629 P.2d 657, 661 (Idaho 1981) (citation omitted).

Here, this Court should find that Miesen's counsel has a written agreement with him to be compensated through a 40% contingent fee based on any recoveries in this lawsuit (35% to Mr. Bond's firm and 5% to Mr. Schwam), a 5% reverse contingent fee for the total indebtedness saved by the AIA Entities (87.5% to Mr. Bond's firm and 12.5% to Mr. Schwam), and Miesen is also obligated to reimburse them for all costs advanced, plus interest. (Bond Decl. ¶¶31–35.) Thus,

---

[3] The Idaho Supreme Court relies upon Black's Law Dictionary to define terms. *Taylor v. Taylor*, 422 P.3d 1116, 1124 (Idaho 2018).

MEMO ISO MIESEN'S 2nd MOTION TO APPROVE PAYMENT OF FEES AND COSTS - 3

Miesen's counsel has a valid contingent fee agreement.

### 3. Miesen's counsel have a valid first-priority charging lien on the settlement funds.

Under Idaho law, attorneys have a perfected charging lien upon the filing a cause of action or appearing as an attorney in an action, which cannot be affected by a settlement.

> The measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties, which is not restrained by law. From the commencement of an action, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor and the proceeds thereof in whosoever hands they may come; and can not be affected by any settlement between the parties before or after judgment.

I.C. § 3-205. Idaho recognizes both possessory and charging liens for attorney fees. *See Frazee v. Frazee*, 660 P.2d 928, 929 (Idaho 1983). A charging lien includes the costs incurred or advanced for the client. *See, e.g., Nancy Lee Mines, Inc. v. Harrison*, 471 P.2d 39, 41 n.4 (Idaho 1970) (I.C. § 3-205 codified the common law charging lien to "have fees and costs due him for services in a particular suit . . ."); *Isrin v. Superior Court*, 403 P.2d 728, 732 (Cal. Ct. App. 1965). An attorney is not required to file a separate action to enforce a lien. *Frazee*, 660 P.2d at 929.

> The priority of liens generally depends upon the time that they attach or become specific and perfected. Ordinarily, a prior lien gives a prior legal right that is entitled to prior satisfaction out of the subject it binds ("first in time, first in right") . . . .

51 Am. Jur. 2d Liens § 70 (Westlaw 2024) (footnotes omitted).

Here, this Court should find that Miesen's counsel have a first-priority charging lien for attorneys' fees and costs against the $1,520,474.88 in settlement funds held by this Court as of May 31, 2025 (Bond Decl. Ex. D), plus 40% of the proceeds of any future accrued interest, that their lien is superior to all other claimants, and the charging lien should be adjudicated here to an order to pay. Mr. Bond's firm perfected a lien when he appeared as counsel for Miesen, and again when he filed the TAC. (Dkts. 122, 211.) Mr. Schwam's lien was perfected when he appeared as

MEMO ISO MIESEN'S 2nd MOTION TO APPROVE PAYMENT OF FEES AND COSTS - 4

co-counsel for Miesen. (Dkt. 1114.) Thus, there is no dispute as to the validity and superiority of these liens. This Court's order should include an order directing the clerk to pay the sums owed.

**4. This Court Should approve the payment of Miesen's fees and costs under the "common fund" doctrine.**

"The 'common fund doctrine' was first recognized in Idaho in 1959." *Wensman v. Farmers Ins. Co. of Idaho*, 997 P.2d 609, 612 (Idaho 2000). As the Idaho Supreme Court explained:

> . . . the common fund doctrine requires that the subrogee insurance company pay its pro rata share of the attorney fees and expenses incurred in obtaining the settlement or judgment against the tortfeasor. The purpose of the doctrine is to afford fairness to the injured party, "for it would be unjust to require him to incur expenses for the recovery of money for the benefit of insurer, without being allowed to reimburse himself."

*Kenneth F. White, Chtd. v. St. Alphonsus Reg'l Med. Ctr.*, 31 P.3d 926, 930 (Idaho 2001) (citations omitted) (alteration added). These same principles apply to a shareholder's recovery.

However, the Idaho Supreme Court has yet to address the "common fund" doctrine to recoveries obtained in a shareholder's action that obtained a "common fund" for the benefit of a corporation. The "common fund" doctrine has been adopted by virtually every court. *See, e.g., Scholtens v. Schneider*, 671 N.E.2d 657, 662 (Ill. 1996); *Schilling v. Belcher*, 582 F.2d 995 (5th Cir. 1978); 13 Fletcher Cyc. Corp. § 6045 (Westlaw 2024); *see Common Fund*, Black's Law Dictionary (12th ed. 2024). In addition, most courts have found that fee-shifting statutes do not displace "common fund" awards. *Staton v. Boeing Co.*, 327 F.3d 938, 967–69 (9th Cir. 2003) (permitting common fund recovery even where statutory fees may be available); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1327 (2d Cir. 1990) ("In our view, fee-shifting statutes are generally not intended to circumscribe the operation of the equitable fund doctrine.").

Here, Miesen's counsel secured two settlement funds, and they should be paid a total fee for this motion and the first motion of $617,573.76 (i.e., 40% of the $1,400,000 plus 40% of the past accrued interest as of May 31, 2025). (Bond Decl. Ex. D.) Miesen asserts that the Idaho

MEMO ISO MIESEN'S 2nd MOTION TO APPROVE PAYMENT OF FEES AND COSTS - 5

Supreme Court would adopt the above principles of law to extend the "common fund doctrine" to also apply to recoveries obtained by shareholders and find that the 40% contingent fee should be paid from the settlement funds. *See Coeur D'Alenes Lead Co. v. Kingsbury*, 85 P.2d 691, 693 (Idaho 1938) (holding that a shareholder is entitled to fees and costs from any recoveries) It would be unjust to allow the AIA Entities to benefit from the settlements without ever paying any of the fees and costs to obtain them.

First, Miesen secured the original $1,400,000 settlement fund from the Hawley Troxell Defendants, which was protected from GemCap. (Dkts. 1235, 1240-3, 1241, 1242, 1242-1, 1242-2, 1242-3.) Miesen's counsel should be paid 40% of the $1,400,000, which is a fee of $560,000.

Second, Miesen secured the settlement fund comprised of $143,934.41 in additional accrued interest as of May 31, 2025, plus all future accrued interest, which is traced directly to Miesen securing the $1,400,000 settlement and successfully having those funds placed in CHRIS to earn interest. (Dkts. 1267, 1271; Bond Decl. Ex. D.) The additional 40% contingent fee would be $57,573.76, plus 40% of all future accrued interest after May 31, 2025.

5. **This Court should also approve the payment of the requested fees and costs under I.C. § 30-29-746(1) because the AIA Entities received a substantial benefit.**

> On termination of the derivative proceeding, the court may: (a) Order the corporation to pay the plaintiff's reasonable expenses, including counsel fees, incurred in the proceeding if it finds that the proceeding has resulted in a substantial benefit to the corporation.

I.C. § 30-29-746(1). "Derivative proceeding" is defined as "a civil suit in the right of a domestic corporation . . ." I.C. § 30-29-740(1). This Idaho Supreme Court also confirmed the entitlement:

> The law is apparently well settled that where a stockholder brings an action for the benefit of the corporation and the suit terminates favorably to the stockholder and thus inures to the benefit of the corporation the stockholder is entitled to reimbursement for his expenses, including attorney's fees.

*Kingsbury*, 85 P.2d at 693 (citations omitted). The plain reading of I.C. § 30-29-746(1) merely

MEMO ISO MIESEN'S 2nd MOTION TO APPROVE PAYMENT OF FEES AND COSTS - 6

states that a "substantial benefit" must be obtained. *Johnson v. Sanchez*, 99 P.3d 620, 622 (Idaho Ct. App. 2004) ("The plain meaning of a statute will prevail unless clearly expressed legislative intent is contrary or unless plain meaning leads to absurd results."). The Idaho Supreme Court has never addressed what constitutes a "substantial benefit" under I.C. § 30-29-746(1) nor has it ever adopted that requirement for "common fund" cases. "Substantial" has been defined as "Real and not imaginary; having actual, not fictitious, existence." *Substantial*, Black's Law Dictionary (12th ed. 2024). "Benefit" has been defined as "The advantage or privilege something gives; the helpful or useful effect something has . . . Profit or gain; esp., the consideration that moves to the promise." *Benefit*, Black's Law Dictionary (12th ed. 2024).

In addition, "[c]ourts have consistently approved attorneys' fees and expenses in shareholder actions where . . . no monetary relief" was obtained. *In re Taronis Tech., Inc.*, No.: CV-19-04547, 2021 WL 842137, at *3 (D. Ariz. Mar. 5, 2021).

Here, Miesen should be awarded $617,573.76 in fees (i.e., 40% of the $1,400,000 plus 40% of the past accrued interest as of May 31, 2025) and $380,621.23 in costs under I.C. § 30-29-746(1) because he obtained a substantial benefit for the AIA Entities. Miesen's "derivative proceeding" has now been terminated as to all defendants and his two settlements with the Hawley Troxell Defendants and GemCap have resulted in a substantial benefit of the AIA Entities for multiple reasons. (Dkts. 1236, 1290, 1305.) Miesen has obtained substantial benefits.

First, Miesen obtained a $1,400,000 settlement (and the discharge of $63,781.64 owed by the AIA Entities to Hawley Troxell) that has grown to a fund of $1,520,474.88 after adding the accrued interest as of May 31, 2025, which Miesen protected from GemCap and the bankruptcy trustee by obtaining the release and bankruptcy court approval to lift the stay. (Bond Decl. ¶¶9, 21, 34, 59(i)–(j) Ex. A at 15–17, B at 12–13, C at 7, D; Dkts. 211, 573-3, 1240-1, 1240-3, 1242-1,

MEMO ISO MIESEN'S 2nd MOTION TO APPROVE PAYMENT OF FEES AND COSTS - 7

1242-3, 1260-11 at 1, 1272-1, 1272-12, 1276, 1289, 1290, 1291.)

Second, Miesen was able to extricate the AIA Entities from the GemCap judgment $12,126,534.61, which had ballooned to $26,620,874.10 as of August 21, 2020. (*Id*.) This was a substantial benefit to the AIA Entities. This triggered Miesen's counsel's entitlement to a reverse contingent fee of 5% of the $12,126,534.61 or 5% of the $26,620,874.10. However, Miesen's counsel have agreed to limit their fee to 5% of the $12,126,534.61 or $606,326.73, and they have further agreed to waive these fees if they are granted the full $617,573.76 as discussed in the foregoing arguments.

Thus, this Court should award Miesen a total of $617,573.76 in fees and the total of $380,621.23 in costs for both motions pursuant to I.C. § 30-29-740(1).

### 6. The amount of the fees requested are reasonable and supported.

Having established that Miesen is entitled to an award of fees, Miesen respectfully requests that the Court approve the payment of contingent fee in whatever amounts that would result in the approved payment of fees and costs being a total of $998,194.99 ($617,573.76 in fees and $380,621.23 in costs)—slightly over the total amount previously requested in Miesen's first motion. (Dkt. 1242.) However, this Court's decision in the instant motion will be intertwined with the decision on the first motion, because this Court's decision on the first motion could render this motion largely moot, other than to determine the 40% contingent fee on the past and future accrued interest and $4,828.07 in additional costs. If not, then this motion should be used to award sufficient fees and costs to ensure that the total of $998,194.99 is awarded in fees and costs.

The "proper measure of attorney fees" requested for "a state law cause of action, is governed by rule of civil procedure, Rule 54(e)(3)." *Perkins v. U.S. Transformer West*, 974 P.2d 73, 76 (Idaho 1999). Idaho has rejected the federal court's "lodestar" and never adopted any benchmarks that federal courts check by comparing to the lodestar or any lodestar multiplier. *Id*.

MEMO ISO MIESEN'S 2nd MOTION TO APPROVE PAYMENT OF FEES AND COSTS - 8

Under Idaho Rule of Civil Procedure (IRCP) 54(e)(3), the Court may award a reasonable amount of attorney fees to the prevailing party or parties. "What constitutes a reasonable fee is a discretionary determination for the trial court, to be guided by the criteria of [IRCP] 54(e)(3)." The IRCP 54(e)(3) factors are as follows:

> (A) the time and labor required;
> (B) the novelty and difficulty of the questions;
> (C) the skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law;
> (D) the prevailing charges for like work;
> (E) whether the fee is fixed or contingent;
> (F) the time limitations imposed by the client or the circumstances of the case;
> (G) the amount involved and the results obtained;
> (H) the undesirability of the case;
> (I) the nature and length of the professional relationship with the client;
> (J) awards in similar cases;
> (K) the reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case;
> (L) any other factor which the court deems appropriate in the particular case.

"[IRCP] 54(e)(3) does not require the district court to make specific findings in the record, only to consider the stated factors in determining the amount of the fees. When considering the factors, courts need not demonstrate how they employed any of those factors in reaching an award amount." The "court need not specifically address all of the factors contained in [IRCP] 54(e)(3) in writing, so long as the record clearly indicates that the court considered them all."

However, the court must explain the relationship between its "evaluation of the [IRCP] 54(e)(3) factors and its decision regarding the amount to award for attorney[ ] fees." "It is not enough for a trial court to acknowledge the existence of the Rule 54(e)(3) factors; rather, it must appear that there is a reasoned application of those factors in the trial court's decision regarding the amount of attorney[ ] fees to be awarded."

"The burden is on the party opposing the award to demonstrate that the district court abused its discretion."

*Gerber-Siggelkow v. Allstate Prop. and Cas. Ins. Co.*, Case No. 1:18-cv-00408-CWD, 2022 WL 1416552 at *5-6 (D. Idaho Feb. 7, 2022) (citations omitted) (alterations in original). Under Idaho law, hearsay is admissible for adjudicating the award of attorneys' fees. *Allen v. Campbell*, 492 P.3d 1084, 1093 (Idaho 2021).

MEMO ISO MIESEN'S 2nd MOTION TO APPROVE PAYMENT OF FEES AND COSTS - 9

"An amount equal to standard contingent fees in the same locale is not an amount that is clearly erroneous." *Brinkman*, 766 P.2d at 1232. "[A] reasonable contingent fee must be 'sufficiently high to compensate the lawyer not only for the reasonable value of the time he or she anticipates devoting to the particular lawsuit, but also for the time devoted to other lawsuits undertaken on the same basis but unsuccessful in result.'" *Clark*, 629 P.2d at 661 (citation omitted).

The award need not be based upon the hourly time sheets, "as the amount of time spent is but one of the several factors to be considered in awarding attorney fees." *Hackett v. Streeter*, 706 P.2d 1372, 1374 (Idaho Ct. App. 1985). On a contingent fee case, it is permissible for any attorney to estimate his or her time incurred in the lawsuit. *Parsons v. Mut. of Enumclaw Ins. Co.*, 152 P.3d 614, 619 (Idaho 2007); *see also* Fed. R. Civ. P. 54(d)(2)(B)(iii) ("state the amount sought or provide a fair estimate of it"). Under the "common fund" doctrine, the class or benefiting party must pay their "proportionate share" of the fees and costs. *Wensman*, 997 P.2d at 613.

After applying the above authorities and factors to Miesen's request for attorneys' fees, Miesen's counsel's willingness to accept the grand total of $617,573.76 in fees for the first motion and this motion, plus 40% of all accrued interest on the settlement funds after May 31, 2025, is extraordinarily reasonable and a substantial discount to Miesen's counsel's hourly rates.   The factors overwhelmingly demonstrate that a 40% contingent fee of the gross recoveries in the amount of $617,573.76 (which is 40% of 1,400,00 plus 40% of the $143,934.41 in accrued interest as of May 31, 2025) and 5% for the reverse contingent fee of the gross savings in the amount of $606,329.23 (5% of $12,126,584.61)[4] is reasonable under the circumstances to compensate Miesen and his counsel based on the two settlements (and, if applicable, the settlement obtained

---

[4] The 5% reverse contingent fee would be $1,331,043.70 (5% of $26,620,874.10) based on the total amount GemCap claimed was owed as of August 21, 2020. (Bond Decl. Ex. B at 12.)

MEMO ISO MIESEN'S 2nd MOTION TO APPROVE PAYMENT OF FEES AND COSTS - 10

by the defendants) and accrued interest. The $617,573.76 is even more reasonable when considering that Miesen's counsel will not seek more than the grand total of $998,194.99 in fees and costs from the settlement funds for the GemCap settlement, the Hawley Troxell settlement, and the ongoing accrued interest—even though Miesen's counsel has incurred substantially more than the requested $380,621.23 in costs.

In sum, the I.R.C.P. 54(e) factors all weigh heavily in favor of the requested fee award that results in the approval of a total of $998,194.99 in fees and costs for the instant motion and the first motion as established by the declarations. (Bond Decl. ¶¶2–59(a)–(s), Ex. A, B at 12, E; Dkts. 1242-2 ¶¶1-49, 51-52, 1242-7 ¶¶1-13, 1242-6 ¶¶1-7.) Miesen will now address each factor in turn and provide some additional discrete citations addressing each factor.

a.  ***The time and labor required.***

The time and labor required was extraordinary. (Bond Decl. ¶¶5–20; Dkts. 1242-2 ¶¶5-17, 1242-7, ¶5, 1242-6 ¶7; *see generally* Dkts. 141–1290.) There are over 1,300 dockets in this lawsuit (not including hundreds upon hundreds more of sub-dockets such as declaration exhibits, etc.). Notably, GemCap and the Hawley Troxell Defendants each had over $1,000,000 in fees and costs defending this case, which further confirms Miesen's total fees and costs of $998,194.99 for both motions is more than reasonable because his counsel performed substantially more work and Miesen had extensive costs. (Bond Decl. ¶20, Ex. E.) The other defendants claim to have incurred nearly $1,000,000 in fees when they have provided the least amount of legal services and largely piggy backed on the Hawley Troxell Defendants' work. (Bond Decl. ¶20; Dkt. 1314.)

b.  ***The novelty and difficulty of the questions.***

Miesen's claims against GemCap involved numerous novel issues and issues of first impression regarding substantive and discovery matters. (Bond Decl. ¶21; Dkts. 1242-2 ¶18, 1242-7. ¶9, 1242-6 ¶7; *see generally* Dkts. 141–1290.)

MEMO ISO MIESEN'S 2nd MOTION TO APPROVE PAYMENT OF FEES AND COSTS - 11

c.  ***The skill requisite to perform the legal services properly and the experience and ability of the attorney in the particular field of law.***

The skill required to prosecute Miesen's claims against GemCap was substantial and the experience of Miesen's counsel has greatly assisted (in particular Mr. Bond's experience in dealing with many other AIA related lawsuits and the knowledge that he gained). (Bond Decl. ¶¶22–30; Dkts. 1242-2 ¶¶19-22, 1242-7 ¶10, 1242-6 ¶7.)

d.  ***The prevailing charges for like work.***

Attorneys in Ada County, Idaho regularly accept contingent fee cases for 33% to 40% of the gross recoveries, plus the reimbursement of costs, with 40% being standard when the attorney is advancing the costs and a 5% reverse contingent fee is reasonable—the total fees requested are far less than if billed out at $340 per hour which is a rate this Court has found reasonable. (Bond Decl. ¶¶27–30; Dkts. 1242-2 ¶¶23-25, 1242-7 ¶7, 1242-6 ¶7.) *SBP LLLP v. Hoffman Constr. Co. of Am.*, Case No. 1:19-cv-00266-DCN, 2022 WL 1166431, at *2 (D. Idaho Apr. 19, 2022).

e.  ***Whether the fee is fixed or contingent.***

Miesen and his counsel have a written contingent fee agreement providing for the payment of a 40% contingent fee (35% to Mr. Bond's firm and 5% to Mr. Schwam) from all gross recoveries and a reverse contingent fee of 5% of the savings of the AIA Entities' debt owed to GemCap (87.5% to Mr. Bond's firm and 12.5% to Mr. Schwam's firm), plus the reimbursement of all costs and the payment of 12% interest on all sums advanced. (Bond Decl. ¶¶31–35; Dkts. 1242-2 ¶¶26-27, 1242-7 ¶6, 1242-6 ¶¶5, 7; *see* Section A(2) above.)

f.  ***The time limitations imposed by the client or the circumstances of the Case.***

There were no time limitations for this complex and drawn-out lawsuit and Miesen's counsel exerted all reasonable and necessary efforts to obtain a recovery or favorable settlement. (Bond Decl. ¶¶36–37; Dkts. 1242-2 ¶¶28-30, 1242-6 ¶7.) Based on the cap that Miesen's counsel has agreed to accept, the total of the contingent fee and requested costs would be substantially less

MEMO ISO MIESEN'S 2nd MOTION TO APPROVE PAYMENT OF FEES AND COSTS - 12

than the hourly rate that would have been charged and the full payment of all costs.

### g. *The amount involved and the results obtained.*

Miesen's claims against the defendants involved various alternative damage theories and GemCap was alleging that it was owed over $26,000,000 and it was seeking to seize Miesen's recoveries from other defendants. (Bond Decl. ¶¶38–42, Ex. A–D; Dkts. 1242-2 ¶¶31-37, 1242-7 ¶11, 1242-6 ¶7.) Miesen secured a $1,400,000 settlement from the Hawley Troxell Defendants, protected that settlement from GemCap and its bankruptcy trustee, and obtained a full release to extinguish the over $26,000,000 GemCap was claiming to be owed by the AIA Entities. *Id.*

### h. *The undesirability of the case.*

This lawsuit was highly undesirable and with substantial risk in light of the substantial costs and complex work and GemCap and the other defendants had proven track records of fighting tooth and nail over every aspect of a case. (Bond Decl. ¶¶43–45; Dkts. 1242-2 ¶¶38-39, 1242-7 ¶12, 1242-6 ¶7.) Mr. Schwam agreed to assume the role of co-counsel to prosecute Miesen's claims even after this Court had excluded Miesen's expert, McDermott. (Dkts. 1112, 1114.)

### i. *The nature and length of the professional relationship with the client.*

Mr. Bond had a long-standing relationship with Miesen dating back to successfully defeating a lawsuit brought by the defendants through AIA Services in an effort to eliminate Miesen and other minority shareholders' standing through an unlawful reverse stock split for ten cents per share (Mr. Schwam has no prior relationship with Miesen). (Bond Decl. ¶¶46–49; Dkts. 1242-2 ¶40, 1242-7 ¶4, 1242-6 ¶7.)

### j. *Awards in similar cases.*

Miesen's counsel has obtained 40% contingent fee recoveries in other complex lawsuits, and a 5% reverse contingent fee is reasonable and permitted. (Bond Decl. ¶¶48–49; Dkts. 1242-2 ¶41, 1242-6 ¶7.) When considering the volume of work performed by Miesen's counsel and the

MEMO ISO MIESEN'S 2nd MOTION TO APPROVE PAYMENT OF FEES AND COSTS - 13

complexity of this case, a total fee award of $617,573.76 is extremely reasonable and a substantial discount to Miesen's counsel's hourly rates. (Bond Decl. ¶52.)

### k.    *The reasonable cost of automated legal research.*

Mr. Bond incurred and allocated the reasonable sum of $14,000 for Westlaw charges (Mr. Schwam had no such charges). (Bond Decl. ¶50; Dkts. 1242-2 ¶42, 1242-6 ¶7.) This issue weighs in favor of approving the maximum amount of fees because Miesen's counsel is only seeking these costs if this Court does not approve the full fees and costs.

### l.    *Other factors which the court deems appropriate in the particular case.*

There are a number of additional factors that this Court should consider, including, (a) Rather than remain neutral regarding Miesen's derivative claims or otherwise proceed independently, the AIA Entities have defended this lawsuit under the direction of the same management who harmed the AIA Entities and without any independent counsel (which has dramatically increased the work and lowered the success) *See, e.g., In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1189–90 (N.D. Cal. 1993); *Krakow Bus. Park v. Locke Lord, LLP*, 135 F. Supp. 3d 770, 791–92 (N.D. Ill. 2015); (b) the lawsuit has dragged on for over a decade from delays sought by the defendants and no innocent shareholders have objected to the award of fees and costs; and (c) Mr. Bond is agreeing to write off over $300,000 in costs and a substantial amount of interest. (Bond Decl. ¶¶51–58, 59(a)–(s); Dkts. 1242-2 ¶¶43-49; 1242-7 ¶9; 1242-6 ¶¶2-7.)

**7.    The costs requested are reasonable and constitutes a substantial discount.**

Having established above that Miesen should be awarded his costs under the common fund doctrine and I.C. § 30-29-740(1), this Court should approve the payment of the $380,621.23 in reasonable costs, which are required to be paid by Miesen win or lose. As with Miesen's request for fees, he is also requesting the award of sufficient fees and costs to reach the maximum agreed total of fees and costs in the total amount of $998,194.99 for both the instant motion and the first

MEMO ISO MIESEN'S 2nd MOTION TO APPROVE PAYMENT OF FEES AND COSTS - 14

motion to approve the payment of fees and costs. (Bond Decl. ¶¶59(a)–(s), Ex. E; Dkt. 1242-1, 1242-2 ¶¶49(a)–(p), 1242-5.) Miesen is not seeking a double recovery.

"[C]ourts make cost determinations based upon declarations filed by the counsel seeking a fee or cost award." *Lola L. Cazier Revocable Tr. v. Cazier*, 468 P.3d 239, 249 (Idaho 2020). In shareholder actions, "[a]ttorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision Tech.*, Inc., 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) (Such "expenses relate to photocopying, printing, postage and messenger services, court costs, legal research on Lexis and Westlaw, experts and consultants, and the costs of travel for various attorneys and their staff throughout the case."). The common fund doctrine broadly requires the prorate share of expenses to be paid and I.C. § 30-29-746(1) broadly provides for the payment of all "reasonable expenses" and does not differentiate between any particular type or category of costs. *Kenneth F. White, Chtd.*, 31 P.3d at 930; I.C. § 30-29-746(1).

Here, Miesen's counsel should be awarded the requested $380,621.23 in costs, especially when he has agreed to write off in far excess of over $200,000 in costs and interest that Miesen was obligated to pay in order to facilitate Miesen's settlement, plus loss of use of money. (Bond Decl. ¶¶59(a)–(s), Ex. E; Dkts. 1242-2 ¶¶26, 49(a)-(p), 1242-7 ¶5, 1242-6 ¶¶5-7.) Those costs were all incurred and are all directly or indirectly related to securing the two settlements.

Miesen anticipates that While this Court excluded McDermott, his status produced the $1.4 million settlement because the material settlement terms were achieved through the Ninth Circuit mediator that was appointed for Miesen's failed attempt to appeal early. (Dkt. 1242-2 ¶49(b).) In addition, the expert fees were legitimately incurred as a cost irrespective of whether McDermott was ultimately excluded and Judge Dale and this Court had previously cited to certain of his testimony with approval. (Dkts. 210 at 6–11, 408 at 4.) The fact that an expert is excluded does

MEMO ISO MIESEN'S 2nd MOTION TO APPROVE PAYMENT OF FEES AND COSTS - 15

not negate that the expense was legitimately incurred and was instrumental in producing and protecting a $1,400,000 settlement that continues to grow. (Bond Decl. Ex. D.) Miesen also respectfully asserts McDermott's exclusion was error.[5] *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017 (9th Cir. 2022).

As to the exclusion of Larry Hile for Miesen's case-in-chief, Mr. Hile was retained as a rebuttal expert and thus Miesen sought to also utilize his opinions for his case-in-chief. (Dkt. 1242-2 ¶49(g).) Mr. Hile could have still offered his rebuttal opinions if there was a trial or if there is a trial in the future. (Dkt. 1111.) Miesen also respectfully asserts that the exclusion of Mr. Hile from testifying in Miesen's case in chief was error because there was no harm. (Dkt. 941-1.)

In sum, reasonable minds could differ whether McDermott should have been excluded and whether Hile's opinions case in chief opinions should have been excluded. Those costs were legitimately incurred by Miesen as part of his successful efforts to settle and to obtain and protect a settlement fund that continues to grow. 559 F. Supp. 2d at 1048.

Thus, the $380,621.23 in requested costs are reasonable and warranted for this complex lawsuit. This Court should award the full $380,621.23 in costs, especially since Miesen's counsel is writing off significant other costs and accrued interest to waive any further claims against the settlement funds presently held. It would be inequitable not to approve the full $380,621.23.

**8. Miesen should receive a service award of $25,000 for his over 4,000 hours of time.**

" 'It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards.' " *In re Wells Fargo & Co. S'holder Derivative Litigat.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) (citation omitted).

---

[5] This Court should reconsider and reverse its inequitable decisions to exclude McDermott and dismiss Miesen's derivative claims, including for the reasons already stated in the record. (Dkt. 1298 at 42–84.)

Here, this Court should approve Miesen being paid a service award of $25,000. Since 2016 when Mr. Bond began representing Miesen in this case, Miesen has spent well over 4,000 hours working on all aspects of this case. (Bond Decl. ¶61; *see, e.g.,* Dkts. 211, 1260-8.)

**9. This Court should hold a hearing and take live testimony.**

Miesen respectfully requests that this Court hold a hearing and take testimony to decide the fee and cost issues so this Court can make the necessary findings, e.g., regarding credibility and the Individual Defendants' misconduct that led to the settlements to show no entitlement to indemnity. (Dkts. 1260 at 21; 1240-3, 1242-3, 1260-1 ¶11.) Fed. R. Civ. P. 54(d)(2)(C); Fed. R. Civ. P. 43(c); I.R.C.P. 54(e)(6); I.C. §§ 30-29-851, 30-29-852, 30-29-856.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, this Court should grant Miesen's motion.

DATED:  This 11th day of June 2025.

RODERICK BOND LAW OFFICE, PLLC

By:   */s/ Roderick C. Bond*
    Roderick C. Bond
    Attorney for the Plaintiff Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:   */s/ Andrew Schwam*
    Andrew Schwam
    Attorney for the Plaintiff Dale L. Miesen

MEMO ISO MIESEN'S 2nd MOTION TO APPROVE PAYMENT OF FEES AND COSTS - 17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 11th day of June 2025, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:    jat@elamburke.com
Loren C. Ipsen:    lci@elamburke.com
Joyce A. Hemmer:    jah@elamburke.com
Bradley S. Keller:    bkeller@byrneskeller.com
Alyson A. Foster:    alyson@dempseyfoster.com
Tyler S. Waite:    twaite@campbell-bissell.com
Michael S. Bissell:    mbissell@campbell-bissell.com
Daniel L. Glynn:    dglynn@idalaw.com
Andrew Schwam:    amschwam@turbonet.com
Kim J Trout:    ktrout@trout-law.com
Markus William Louvier:    mlouvier@ecl-law.com
James B. King:    jking@ecl-law.com

_/s/ Roderick C. Bond_
Roderick C. Bond

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.; <br><br> Plaintiff, <br><br> **v.** <br><br> CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 1:10-cv-00404-DCN-CWD <br><br> DECLARATION OF RODERICK C. BOND |

DECLARATION OF RODERICK C. BOND - i

**20-ER-5167**

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

       Defendants/Third-Party Plaintiffs,

       v.

REED TAYLOR, an individual,

       Third-Party Defendant.

REED TAYLOR, an individual,

       Third-Party Defendant/ Counterclaimant,

       v.

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

       Counterdefendants.

DECLARATION OF RODERICK C. BOND - ii

**20-ER-5168**

I, Roderick C. Bond, declare:

1.        I am one of the attorneys for the Plaintiff Dale L. Miesen ("Miesen") in this lawsuit. Andrew Scham is my co-counsel in this lawsuit. I am a citizen of the United States, over the age of eighteen, and competent to testify in court, including as to matters in this Declaration. This Declaration is based upon my personal knowledge. I am submitting this Declaration in support of Miesen's second motion to approve the payment of attorneys' fees and costs. I will use the same definition for the groups of defendants as used by Miesen and this Court in prior orders.

**Testimony Regarding the Request for Attorneys' Fees and Costs and No Double Recovery**.

2.        I am submitting this testimony in support of Mr. Schwam and my request for contingent fees and my request for costs. Mr. Schwam and my firm are requesting a grand total of $998,194.76 in fees and costs to be paid from the settlement funds (plus 40% of any future interest after May 31, 2025, as seen in Exhibit D). For the first motion and this motion, we are seeking a total of $617,573.76 in attorneys' fees and $380,621.23 in costs to be paid to my law firm. (Dkt. 1242.) We are merely seeking the full amount previously requested in the first motion, plus our 40% contingent fee of all past and future accrued interest, and $4,828.07 in additional costs. If this Court does not authorize the payment of the full amount of the fees and costs requested in the first motion (Dkt. 1242), then we are requesting the balance to be paid in this second motion along with the contingent fee on the accrued interest and the $4,828.07 in additional costs.

3.        I wanted to also make clear that Mr. Schwam and my firm are only making concessions as to the amount of fees and costs to be paid from the settlement funds to assist Miesen in obtaining a recovery. We are not making concessions to permit John Taylor, the other Individual Defendants, or any other defendant to obtain some of the settlement funds. I wanted to clarify these facts because we maintained in the last motion that we had a first-priority lien to the settlement

DECLARATION OF RODERICK C. BOND - 1

**20-ER-5169**

proceeds and that we had agreed to limit the amount of fees and costs awarded from those proceeds. We are not waiving any arguments or rights to collect additional fees or costs against the other defendants for any future recoveries or if Miesen prevails on appeal and obtains a favorable settlement or judgment.

**Factors for the Court to Consider Under I.R.C.P. 54(e)(3) for the Amount of Fees**

4.      Since Idaho law applies to Miesen's motion to approve fees, I will address the factors under Rule 54(e)(3) in the following paragraphs. I would note that certain information provided in some of the following paragraphs as to one factor may also apply to one or more other factors. Rather than repeat them as to each factor below, I will simply incorporate them by reference into one another. I apologize to the Court for the length of this Declaration and any inconvenience, but I wanted to provide sufficient information for this Court to assess the Rule 54(e)(3) factors, and the requested fees are important to Miesen, Mr. Schwam and me.  While I have already addressed the Rule 54(e)(3) factors regarding the settlement with the Hawley Troxell Defendants and I incorporate by reference my declaration in Docket Number 1242-2 into this Declaration, I will now address the factors as it pertains to GemCap related settlement matters.

**(A)  The Time and Labor Required**

5.      The time and labor to finally be able to reach a settlement with GCLI, LLC f/k/a GemCap Lending I, LLC ("GemCap") was extraordinary. I estimate that I incurred over 1,800 hours of time directly or indirectly dealing with GemCap related matters, and the Individual Defendants, CropUSA Defendants, and the AIA Entities joined GemCap in opposing Miesen obtaining a settlement or any relief from GemCap for many years. In fact, in each of the defendants' answers, they all asserted that Miesen should take nothing from his Third Amended Complaint ("TAC") or that it should be dismissed entirely (not just that the claims should be

DECLARATION OF RODERICK C. BOND - 2

dismissed that were asserted against the respective defendants). This was consistent with the alleged common interest agreements that the defendants allegedly had to use to protect virtually all of their communications and other matters with during the pendency of this lawsuit and to jointly defend against Miesen. That said, Miesen was able to ultimately secure settlements with the Hawley Troxell Defendants and GemCap, which the remaining defendants did not object to even though they had been opposing Miesen's efforts for years. Since the time that GemCap became at issue in this lawsuit, this case has generated over 1,100 dockets with many more sub-dockets for exhibits and other filings. (*See*, e.g., Dkts. 128–1292.) As discussed below, there were many complex and novel issues pertaining to GemCap, and it is directly or indirectly at issue in many dockets, especially when considering the other defendants were joining GemCap most of the time opposing Miesen in virtually all respects. Since joining me as co-counsel, Mr. Schwam has exerted additional hours assisting in preparing filings and working to achieve the GemCap settlement agreement and preventing the bankruptcy trustee from trying to unwind the settlement agreement and seize any part of the $1,400,000 settlement (including my having discussions with the trustee's counsel).

6.    My work began before GemCap was named as defendant in this lawsuit. We did not discover the existence of any GemCap loan guarantees until after GemCap had filed suit against John Taylor, the CropUSA Defendants, the AIA Entities and other defendants in federal court in California in the summer of 2013. On my clients' behalf, I emailed counsel for GemCap and the AIA Entities providing copies of AIA Services' amended articles of incorporation (among other things) trying to extricate the AIA Entities from any liability and/or to settle the dispute. Those efforts were futile and John Taylor and GemCap subsequently proceeded to settle the California lawsuit through a settlement agreement that violated AIA Services' amended articles of

DECLARATION OF RODERICK C. BOND - 3

incorporation and the AIA Entities' bylaws, among other laws and Idaho Code sections. The settlement was concealed from us and efforts to obtain a copy of the settlement agreement were futile. We only obtained a copy of the settlement agreement after it was filed in a different lawsuit by another attorney. Then, Miesen was ultimately forced to serve additional derivative demands and name GemCap as a defendant in this lawsuit. From my early communications with GemCap's attorneys through years of litigating in this lawsuit, it became clear to me that GemCap and John Taylor had their sights on having GemCap seize or otherwise obtain Miesen's recoveries in this lawsuit, which could then be used to payoff the over $12 million that GemCap was also seeking from John Taylor and the CropUSA Defendants.

7.     With respect to GemCap and the Individual Defendants, their primary course of action has been about concealment, obfuscation, and the complete disregard of the law and AIA Services' amended articles of incorporation and applicable provisions of the AIA Entities' bylaws (even though GemCap requested and was provided with copies of relevant articles and bylaws prior to making the first loan). These issues have added significant time and effort to represent Miesen in this lawsuit. In addition, the problems were compounded because the other defendants entered into a common interest relationships with GemCap to shield the defendants' communications and other planned strategies to oppose Miesen. Thus, it was a concerted effort against Miesen in this lawsuit, which added time and complexity. GemCap, the Individual Defendants, CropUSA Defendants and the AIA Entities expended significant efforts to conceal GemCap related settlements and communications from Miesen and other innocent minority shareholders. I was able to obtain significant documents and evidence by spending countless hours searching for new lawsuits involving GemCap and/or the other defendants, which provided assistance to Miesen in this case and demonstrated the extent of the concealment taking place. I

DECLARATION OF RODERICK C. BOND - 4

20-ER-5173

was only able to learn of the settlement agreement between GemCap, the AIA Entities and other defendants that was filed in Docket 128 (pages 21-48) because it was filed by another attorney in a different lawsuit.

8. By way of other examples, in discovery, GemCap produced hundreds of thousands of pages of documents (many of which were worthless), which required me to devote substantial amounts of time reviewing in an attempt to locate and segregate any relevant and useful information. I spent countless hours reviewing documents. I was forced to prepare and file motions to compel against GemCap and exert significant other work pertaining to GemCap's efforts to seal filings in this lawsuit and other lawsuits to prevent us from discovering facts and obtaining useful documents. The Discovery Master had to address numerous issues pertaining to Miesen's motions to compel and related matters pertaining to GemCap. I was also forced to spend many hours scouring the dockets of other lawsuits seeking to discover documents and information to assist Miesen in his claims against GemCap, which provided to be fruitful.

9. I was required to research many legal issues and address them in motion practice and in preparation for motion practice and trial. I was also required to address other matters not traditionally part of most cases. For example, I was forced to address, with the assistance of California Bankruptcy counsel, significant issues pertaining to GemCap's bankruptcy filing and our efforts to obtain relief from the Bankruptcy stay. We had to assist in preparing bankruptcy court filings for Miesen's bankruptcy counsel to review, revise and approve for filing, in an effort to keep costs down for Miesen. We had to deal with the bankruptcy trustee's counsel to reject offers that Miesen pay money to the trustee and go over other issues in an effort to be able to allow this Court to approve the settlement agreement and protect the $1,400,000 in settlement funds from GemCap and its bankruptcy trustee.

DECLARATION OF RODERICK C. BOND - 5

10. In addition, I have provided legal services for all aspects of this case since first appearing as counsel, and I am requesting to be compensated for that work, too, from the settlement proceeds. I first appeared as Donna Taylor's counsel in this lawsuit on March 18, 2012. I subsequently also appeared as counsel for Miesen on March 23, 2016 (after the Ninth Circuit reversed the stay order). GemCap was named as a party to this lawsuit as a result of obtaining a reversal of the stay by the Ninth Circuit. I jointly represented Miesen and Donna Taylor from March 23, 2016, until she was voluntarily dismissed through Judge Dale's order on October 31, 2016. Donna Taylor was voluntarily dismissed after the defendants filed non-oppositions to a motion to amend to add additional defendants and then the defendants promptly filed a motion to dismiss alleging that diversity had been destroyed. That action is what led to Judge Dale's order stating that they had made "misleading representations" through their actions. (*See* Dkt. 178 at 3 n. 2.) In any event, I was the sole counsel on this lawsuit from the time that the stay was lifted in this lawsuit until Mr. Schwam joined me as co-counsel for Miesen in 2021. I remain co-counsel for Miesen to this day, and I still perform the majority of the work for Miesen.

11. Shortly after appearing as counsel for Donna Taylor, she unsuccessfully moved to lift the stay in this lawsuit in 2012, which was denied by Judge Boyle. Donna Taylor appealed to the Ninth Circuit Court of Appeals. On that appeal, the Hawley Troxell Defendants prepared all of the briefing for the respondents (the other respondents simply joined in the Hawley Troxell Defendants' briefing). The Ninth Circuit reversed, and the stay was ultimately lifted in 2016. I incurred unreimbursed expenses and many hours of work seeking to lift the stay in this lawsuit before the trial court and on appeal, which was ultimately successful and resulted in GemCap being named as a defendant. (*See* Dkts. 62-121.) I was not paid by Donna Taylor for this work. None of the costs that I am seeking below were incurred during the time that I was representing only Donna

DECLARATION OF RODERICK C. BOND - 6

**20-ER-5174**

Taylor in this lawsuit. However, if the stay had not been lifted, there would have never been the $1.4 million settlement with the Hawley Troxell Defendants, GemCap would not have been named as a party to this lawsuit, and Miesen's settlement agreement with GemCap would not have been obtained.

12.    This lawsuit has consumed an extraordinary amount of my time and labor. I have worked thousands of hours in this lawsuit preparing court filings, responding to discovery, preparing discovery, preparing for and attending depositions, conducting legal research (I have created over 580 folders with authorities addressing various issues or potential issues for the case, which pertain, at least in part, to GemCap related issues), speaking with Miesen on countless telephone calls, working on expert related matters (both as to Miesen's experts and the experts for the Hawley Troxell Defendants), locating documents online from other lawsuits that one or more of the defendants were parties to obtain information such as documents which were improperly being withheld in discovery (e.g., the waiver of privilege letter that John Taylor signed which was filed in another lawsuit that GemCap filed against a different law firm that has previously represented the AIA Entities, CropUSA Defendants, John Taylor and certain of his entities), working on other case-related matters (as further evidenced by the immense size of the docket) and working on settlement offers. In fact, there are over 1,300 separate dockets filed in this lawsuit. (*See* Dkts. 1-1290.) Indeed, I have never been involved in a lawsuit in which matters were so vehemently opposed by the defendants (especially GemCap) and I have never been involved in a lawsuit with over 1,300 dockets (nor anywhere near 1,300 dockets). I have reviewed every one of those dockets, provided the dockets to Miesen, discussed many of the dockets with Miesen on phone calls or in person. As further evidenced by the docket entries, the Hawley Troxell Defendants also filed many motions that were joined by other defendants and thus more work was

DECLARATION OF RODERICK C. BOND - 7

**20-ER-5175**

caused by the prosecution of Miesen's claims against the Hawley Troxell Defendants

13. I diligently worked very hard for Miesen, irrespective of the fact that I was being paid on a contingent fee basis. In other words, I did not decline to perform work simply because I was not being paid. To the contrary, as evidenced by the over 1,300 dockets filed in this lawsuit, I worked very hard for Miesen and to seek justice for him (which would in turn benefit the AIA Entities and their innocent shareholders). I felt extremely sorry for Miesen and other shareholders, and I worked very hard for Miesen without any time restrictions to prosecute his claims. Some weeks, I was forced to work over 18 hours per day. In some instances, I was forced to work all day and all night, e.g., over 24 hours of continuous work.

14. The time and labor required has also been increased because the AIA Entities have never had independent counsel representing their interests. Rather than working with Miesen to make the AIA Entities whole as to Miesen's direct claims or remaining neutral as to his derivative claims, the AIA Entities have consistently taken positions against Miesen. For example, the AIA Entities, Individual Defendants and CropUSA Defendants' Answers in this lawsuit deny countless undisputable factual allegations regarding the GemCap related matters and fundamental corporate governance (or lack thereof). In other instances, the Individual Defendants and CropUSA Defendants asserted positions in filings that were interposed solely to prevent Miesen from prevailing against GemCap (or any other defendants). The same holds true in discovery as well. The AIA Entities would not provide the privileged and work product information generated by the Hawley Troxell Defendants or the attorneys purporting to represent the AIA Entities in other lawsuits against GemCap.

15. I have made myself available to Miesen for him to speak or meet with me at almost any time of the day or night. I have spoken with Miesen countless times on the phone and in person.

DECLARATION OF RODERICK C. BOND - 8

I have advanced costs for Miesen to ensure that he can attend depositions and other matters. In some instances, we have numerous lengthy phone calls in the same day. I have never limited my availability to Miesen, and he has been actively involved in this lawsuit. In fact, Miesen has been more involved than any client that I have ever had.

16.    I did not keep billing records itemizing my time according to each group of defendants. While some of my time was tracked for matters relating to just certain defendants because the issue only involved them, a large amount of time was tracked for events and motions that may have involved one or more other groups of defendants. For example, I traveled to Clarkston, Washington and Boise, Idaho to review documents and arrange for them to be copied. I was looking for documents that could be used against any or all of the defendants and thus my time could not be billed as to a certain defendant or group of defendants. By way of another example, a damages spreadsheet was prepared by my firm to utilize for all of the defendants. That work could not be billed solely as to one defendant or group of defendants. It needed to be done for all of the defendants. There are many other examples, including, without limitation, other discovery matters such as the preparation and production of documents in discovery.

17.    While I did not log my time into a billing software because I had been retained on a contingent fee basis (I kept records of time, but not as I would normally do if billing a client monthly for my hourly work and I did not divide time every day among the groups of defendants), I previously estimated that I have worked over 1,800 hours on this lawsuit on matters directly or indirectly pertaining GemCap. As a result, I estimate that, based on the initial $340 hourly rate offered to Miesen in 2016, the hourly work value of my work would exceed $612,000. If asked by this Court, I would be able to create a spreadsheet, allocate time between groups of defendants, and redact detailed billing records to support the over 1,800 hours of time expended. However, to

DECLARATION OF RODERICK C. BOND - 9

do so would take an extraordinary amount of time because I was not allocating my time between groups of defendants, or particular defendants, when I was tracking the time for my work and some work also was applicable to other defendants. Thus, Miesen and the AIA Entities would obtain a benefit if my firm were paid on a contingent fee basis for GemCap related matters.

18.     Based on there being hundreds of thousands of pages of documents and because documents were never entirely produced in any organized fashion, I was required to pay an independent contractor paralegal to assist me in finding and organizing the documents and related matters for Miesen's damage so that they were in a workable and more precise form for me and Miesen. As discussed in the costs matters below, I incurred over $60,000 in out-of-pocket costs to pay the paralegal and law clerks for the over 2,400 hours of work they performed for this complex case. If my firm were charging by the hour and I sought to recover payment of the 2,400 hours of work at the rate of $150 per hour, I would have charged over $360,000 for that work. This work was required for my representation of Miesen as to all of the defendants. Miesen's two expert witnesses, Richard McDermott and Larry Hile, also both addressed matters relating directly or indirectly to GemCap. I worked with Miesen's experts to provide them with access to documents, discussed their opinions and worked on many other expert witness related matters.

19.     In sum, this lawsuit has taken more time, labor and expense than any other lawsuit that I have ever been involved in. The above are only some examples. More examples of the time and labor required are evidenced in the following paragraphs. A total contingent fee of not more than $617,573.76 for the settlement with the Hawley Troxell Defendants, the accrued interest, the settlement with GemCap, and protecting the settlement funds from GemCap is more than reasonable in light of the extensive work that I performed on this lawsuit to recover the $1,400,000 settlement payment and confirm that the AIA Entities are extricated from the $26,620,874.10 that

DECLARATION OF RODERICK C. BOND - 10

GemCap alleged was owed on August 21, 2020 (*see* Exhibit B at 12).

20.    William Adams, one of GemCap's attorneys, previously advised me that GemCap had incurred over $1,000,000 in attorneys' fees for the defense of this lawsuit. This was before the most recent settlement agreement negotiations and work. Thus, when compared to the over $1,000,000 that GemCap incurred in fees, Miesen's request of $617,573.76 is even more reasonable. In addition, I note that the certain other defendants allegedly incurred $974,212.23 in fees defending this lawsuit, when their work has been far less than the work performed by us for Miesen (especially me because Mr. Schwam only joined as co-counsel in 2021), which is extraordinarily high because their present and past counsel have primarily piggy-backed on the work of the Hawley Troxell Defendants and/or GemCap. I also understand from Brad Keller that the Hawley Troxell Defendants incurred substantially more than $1,000,000 in attorneys' fees and costs defending this case. The docket entries and volume of work in those dockets confirm that we have done substantially more work than any attorney representing any other group of defendants and they have conducted little discovery or motion practice in this lawsuit (because they control the documents involving the claims in this lawsuit and their efforts were focused on preventing Miesen from obtaining the documents and information), and Miesen has incurred substantial costs.

**(B)  The Novelty and Difficulty of the Questions**

21.    This lawsuit involved many novel and difficult questions, as evidenced in the numerous docket filings addressing those issues. For example, there have been many difficult and first impression issues related to: (a) the production of work product and privileged information; (b) ultra vires acts and transactions; (c) issues pertaining to producing documents in other lawsuits subject to protective orders and sealing of various records; (d) issues pertaining to the statute of limitations and aiding and abetting; (e) the appointment of a discovery master and having to

DECLARATION OF RODERICK C. BOND - 11

essentially add one more level of legal work to address objections to the discovery master's decision to Judge Dale and then appeal certain of those decision to this Court; (f) the assertion of advice of counsel and apparent authority defenses and the information that must be produced in connection with the advice of counsel defenses; (g) matters relating to void and unauthorized transactions (including ones violating the articles and the bylaws); (h) the failure to lawfully observe corporate formalities; (i) the effect of a judgment that was improperly obtained in another lawsuit and a shareholder's effort to collateral attack the judgment and/or extricate the corporation from it when it was never authorized; (j) motions for protective orders, including addressing numerous topics for GemCap's Rule 30(b)(6) deposition that should not have been in dispute. These issues, and other novel and difficult issues, took considerable time to research and address, both in briefing and in trial/case preparation; and (k) preparing filings for the bankruptcy counsel to review, edit and approve to obtain a relief from the bankruptcy stay and to persuade the bankruptcy trustee's counsel that Miesen would not pay any funds to the trustee to purchase GemCap's claims and that the trustee should not oppose Miesen's motion for relief from stay so his settlement agreement with GemCap could and should be approved. I have never been involved in a case that had so many docket filings and where the defendants fought tooth and nail over virtually every issue. Even if this Court awards the full fees and costs that Mr. Schwam and I are requesting, I would be paid far less than the time and actual costs that I have into this case.

**(C)  The Skill Requisite to Perform the Legal Service Properly and the Experience and Ability of the Attorney in the Particular Field of Law**

22.    I have over twenty years of experience practicing law. I have been admitted to practice law in the state of Washington since 2002 and in the state of Idaho since 2009.  I am admitted in the U.S. Supreme Court and various other federal district and appellate courts. I have continuously and successfully practiced law since I first obtained my license in Washington in

DECLARATION OF RODERICK C. BOND - 12

2002.

23.    Since the mid-2000s, I have focused my practice primarily on complex litigation and I have extensive experience in complex litigation, including legal malpractice actions. Over the years, I have favorably litigated complex multi-million-dollar cases, including legal malpractice actions and other complex actions. I have obtained multi-million-dollar settlements in legal malpractice cases and other cases. I have successfully worked on shareholder disputes. I have obtained favorable summary judgment decisions and successfully avoided summary judgment in various complex lawsuits (though I have also lost on summary judgment and motions to dismiss). I have also successfully appealed, including in this lawsuit. I believe that I have provided Miesen with competent representation in this lawsuit as evidence by two court orders stating that I adequately represented the interests of stakeholders and the well supported, authoritative and reasoned motions, responses, replies, and pleadings filed in this lawsuit. (*See generally*, Dkt. 128–1290.)

24.    As a result of my earlier representation of Reed Taylor and Donna Taylor in other lawsuits and Miesen in another lawsuit involving the AIA Entities, I was well-versed with the many detailed facts as to the malfeasance and other improper acts that have transpired at the AIA Entities over the years. My involvement in litigation involving the AIA Entities began when I commenced representing Reed Taylor in 2006 for matters relating to the failure to pay a $6 million promissory note given to him for the redemption of his shares (discussed below) and tort claims relating to money being taken from the AIA Entities to fund other businesses, including CropUSA Insurance Agency. I also represented Miesen and other shareholders in two other related lawsuits involving the AIA Entities (My clients prevailed on one of the lawsuits and was awarded fees and costs for an illegal reverse stock split sought to eliminate Miesen's standing to sue in this lawsuit).

DECLARATION OF RODERICK C. BOND - 13

In my opinion, I know more about what has occurred at the AIA Entities better than anyone other than John Taylor and, at depositions, John Taylor has even asked me questions about matters involving the AIA Entities.

25.    Like most attorneys, I have won and lost appeals (and, like most attorneys, I believe that I should not have lost some of my appeals). I was successful in appealing the following cases directly or indirectly involving AIA matters: (a) *Taylor v. Bell*, 340 P.3d 951 (Wash. Ct. App. 2014), review denied, 352 P.3d 188 (2015) (reversing the dismissal of a legal malpractice action); (b) *Taylor v. Hawley Troxell Ennis & Hawley, LLP*, 628 Fed. Appx. 490 (9th Cir. 2015) (revering Judge Boyle's *Colorado River* stay of this lawsuit); (c) *Taylor v. Taylor*, 163 Idaho 910, 422 P.3d 1116 (2018) (reversing in part by holding that Donna Taylor's ultra vires agreement was enforceable under the circumstances, the economic loss rule does not bar her fraud claim, and awarding attorneys' fees and costs to Donna).  My representation of Reed and Donna Taylor in the above matters and others has provided with me a wealth of information and knowledge regarding the malfeasance and activities at the AIA Entities and CropUSA Defendants, among other persons and entities. This is why other shareholder began contacting me. In fact, while deposing John Taylor, he would even ask me questions about the AIA Entities.

26.    In sum, my vast experience dealing with matters involving the AIA Entities provided me with significant additional knowledge and skills to assist Miesen in this lawsuit, which would have cost him significantly more money to obtain (if he could have obtained it since some information has been destroyed by AIA) from a different attorney. In addition, when this Court approved the settlement agreement, it found that we adequately represented the interests of the AIA Entities and Securities Holders in connection with the settlement agreement.

**(D)  The Prevailing Charges for Like Work**

DECLARATION OF RODERICK C. BOND - 14

27.    Mr. Schwam and I agreed to represent Miesen through a written fee agreement providing for a 40% contingent fee of all gross recoveries. Based on my knowledge and experience, a contingent fee of between 33% to 40% is a reasonable fee for complex cases in Idaho, including in Ada County, Idaho. It is also reasonable to require reimbursement of all out-of-pocket costs advanced or incurred for a lawsuit in Idaho and to charge interest to clients for costs advanced, including Ada County, Idaho. However, when the contingent fee case requires the attorney to advance significant costs for an indigent client, it is common and appropriate to charge 40% or even as high as a 50% contingent fee. In this case, I agreed to represent Miesen (who could not afford the large costs required in this lawsuit) on a contingent fee basis for 40% of the gross of any recoveries in a written fee agreement. My firm's share was reduced to 35% after Mr. Schwam agreed to act as co-counsel for 5% (we ensured that adding another attorney did not cost Miesen any more money).

28.    Mr. Schwam and I also agreed to represent Miesen through a written 5% reverse contingent fee to address the defense of the $12,126,534.61 debt that GemCap claimed was owed (87.5% of that reverse fee to my firm and 12.5% to Mr. Schwam) that Miesen was seeking to have declared void or unenforceable. Since Miesen could not afford the costs and my firm had to advance the costs without the likelihood of being paid back absent a recovery, the 40% contingent fee from any recoveries and the 5% reverse contingent fee were even more appropriate and warranted based on the facts and circumstances of this case. This arrangement would have been a good deal for any client, even if the client had the ability to pay because it was contingent on success and GemCap had a long track record of fighting over everything and to the bitter end based on other cases that I have reviewed. Indeed, this lawsuit has played out even worse than I expected—and I expected a long and bitter battle based on my past experience with GemCap.

DECLARATION OF RODERICK C. BOND - 15

29.     In my experience, complex cases such as derivative actions are generally contingent fee. This is because it is common knowledge that these cases are very difficult, hotly disputed, time-consuming, and clients generally do not want to bear the risk of paying by the hour. In fact, I have never taken a contingent fee case for less than 33.3% of the recovery and most all of my contingent fee cases in Idaho (including Ada County) and Washington have been based on a 40% contingent fee and the full reimbursement of costs.  I have previously handled cases in Ada County, Idaho where there was a 40% contingent fee. The settlement was a multi-million-dollar settlement, and the full 40% contingent fee was paid. I was also reimbursed for all of the costs, expenses and other out-of-pocket expenditures incurred on the lawsuit for which I requested to be reimbursed (I generally do not charge clients for small expenditures).

30.     My hourly rate offered to Miesen in 2016, which he declined, was $340 per hour as discussed above. If Miesen had retained me by my hourly rate, I would have charged him $340 per hour and I would have increased that rate over time to not less than $370 per hour over the six years since the time that I became his counsel. That hourly rate is in the range of reasonable rates charged by attorneys in the Boise area. For example, I was aware that Wyatt Johnson, a Boise attorney, charged $375 per hour for his services. Mr. Johnson's paralegals charge $175 per hour. Mr. Lombardi, the Discovery Master in this lawsuit, charged $300 per hour for his services in 2018 and 2019.  This Court has also recently found hourly rates of $340-350 to be reasonable. *SBP LLLP v. Hoffman Constr. Co. of Am.*, Case No. 1:19-cv-00266-DCN, 2022 WL 1166431, at *2 (D. Idaho Apr. 19, 2022). In contingent fee cases, this Court has also approved effective hourly rates of $608.74 and $1,821.39. *Gary W. v. Ki akazi*, Case No. 1:21-cv-00003-CWD, 2021 WL 6063668, at *2 (D. Idaho Dec. 22, 2021). In this lawsuit, based on the over 1,800 hours that I have estimated to have worked directly or indirectly on GemCap related matters, the effective rate of a

DECLARATION OF RODERICK C. BOND - 16

contingent fee recovery for my firm would be a significant discount to the estimated fees that I would have charged Miesen for GemCap related work if I had billed by my hourly rate of $340 per hour. When added with the work that I performed to obtain the settlement with the Hawley Troxell Defendants, the total payment of $617,573.76 even before deducing Mr. Schwam's share would be discount of well over 50% for each settlement based on my conservative estimate of what my hourly rate charges would have been.

**(E)  Whether the Fee is Fixed or Contingent**

31.    Our fee agreement with Miesen is based on a contingent fee and Mr. Schwam and I are both jointly responsible for Miesen's representation. Miesen was offered and rejected the option of retaining my firm to be paid by my hourly rate, as he also did with Mr. Schwam. The terms of Miesen's representation were contingent on the outcome of the litigation. Under the terms of my firm's written fee agreement with Miesen, he agreed, among other things, that: (a) my firm would be compensated on a 40% contingent fee of all gross recoveries in this lawsuit; (b) my firm would be reimbursed for all costs and expenses incurred and/or advanced in this lawsuit; (c) my firm would be entitled to receive interest of 12% per annum on all costs and expenses advance for this lawsuit; and (d) he declined to retain my firm by paying $340 per hour for my time based on an hourly rate fee agreement. Miesen was aware that when he retained my firm that I was a solo-practitioner and that this lawsuit would be a financial burden on me and my firm, which is another reason he agreed to pay me a 40% contingent fee, reimburse me for all costs and expenses, and pay me 12% interest on all costs and expenses advanced or incurred by my firm in this lawsuit.

32.    Based on the required time and complexity of this lawsuit, the Individual Defendants' track record of delays, obfuscation, litigation tactics, and GemCap's track record of concealment, obfuscation and improper litigation tactics, I was not willing to accept less than 40%

DECLARATION OF RODERICK C. BOND - 17

of the gross recoveries in this lawsuit. My firm always requires the reimbursement of all costs and expenses incurred and/or advanced for the lawsuit. My firm utilized these same terms for the representation of Miesen in this lawsuit as discussed above. In addition, my firm's willingness to take on the claims against GemCap was also based on my belief that Miesen would obtain a recovery against one or more defendants and that my firm would receive compensation through those recoveries. This is why protecting any recoveries that were obtained from other defendants and preventing GemCap from obtaining those recoveries was a critical component of my firm's willingness to name GemCap as a defendant in the instant lawsuit.

33.    Effective June 4, 2021, Miesen, Mr. Schwam and I agreed, among other things, that Miesen would be jointly represented by Mr. Schwam's firm and my firm under the following terms pertaining to the Hawley Troxell Defendants: (a) my firm would agree to lower my contingent fee to 35% of any gross recoveries; (b) Mr. Schwam's firm would receive 5% of any gross recoveries or 10% if the recovery came after trial; (c) we would be entitled to reimbursement for all costs and expenses incurred in this lawsuit; and (d) my firm would be entitled to the payment of 12% interest on any costs and expenses advanced. In other words, the terms of the contingent fee arrangement did not change as relevant to this settlement; rather, the percentage of the contingent fee were simply allocated differently among Mr. Schwam's firm and my firm, with Miesen obtaining the benefit of having another attorney on the case.

34.    Miesen previously obtained a $1,400,000 settlement from the Hawley Troxell Defendants and he was able to prevent GemCap from receiving or obtaining any portion of that $1,376,540.47 net recovery after Mr. Lombardi was paid $23,459.53 by and through Miesen's settlement agreement with GemCap. This, once again, triggers our right to receive the 40% contingent fee from the $1,376,540.47 gross recovery, plus 40% of the past and future accrued

DECLARATION OF RODERICK C. BOND - 18

interest, because we have produced a settlement fund which is a benefit to the AIA Entities. I have no knowledge of any person, entity or defendant having claimed to have a lien on the settlement funds. While counsel for the Individual Defendants and CropUSA Defendants argued at the last status conference that his clients allegedly had a claim against the settlement funds (a proposition that I find to be incredulous considering they fought Miesen in his efforts to obtain a recovery here), Mr. Glynn has never alleged that his clients have a valid lien on the settlement funds, let alone one that was perfected before my firm's lien when I first appeared as counsel in this case. As with the first motion to approve the payment of fees and costs (Dkt. 1242), Mr. Schwam and I are requesting to have our lien adjudicated in this lawsuit.

35.    In addition, as to GemCap specifically, the written contingent fee agreement required the payment of 5% of the gross amount that we were able to prevent the AIA Entities from having to pay GemCap, i.e., a reverse contingent fee of 5% of the $12,126,534.61 of indebtedness that GemCap was claiming that the AIA Entities owed, which was evidenced by a judgment entered against the AIA Entities in California federal court and was later registered in Idaho. Miesen agreed that Mr. Schwam and I would split that 5% contingent fee as follows: (a) 87.5% of the reverse contingent fee would be paid to my firm and 12.5% of the reverse contingent fee would be paid to Mr. Schwam. Based on the $26,620,874.10 that GemCap alleged was owed by the AIA Entities as of August 21, 2020 (*see* Exhibit B at 12), the reverse contingent fee is $1,331,043.70, which amounts to $1,164,663.24 to my firm and $166,380.46 to Mr. Schwam. On the other hand, based on the $12,126,584.61 obligation set forth in the original unlawful settlement agreement (Dkt. 128 at 22), the reverse contingent fee would be $606,329.23, which amounts to $530,538.07 to my firm and $75,791.15 to Mr. Schwam.

**(F)  The Time Limitations Imposed by the Client or the Circumstances of the Case**

DECLARATION OF RODERICK C. BOND - 19

**20-ER-5187**

36.    Because I was working on a contingent fee basis, there were no time restrictions placed on my work or Mr. Schwam's work. As described elsewhere in this Declaration, the circumstances of this case dictated that I was forced to perform a great deal of work, which did not increase the 40% that Mr. Schwam and I are requesting to be split (35% to my firm and 5% to Mr. Schwam) pursuant to our written fee agreement. There were many times that it was in my best interests to not perform certain work for Miesen because I was not being paid, but I never let the issue of not being paid interfere with the work that I believed needed to be done for Miesen. I treated this case as if I had a zealous client paying me by the hour and I had no constraints on my efforts or time. I really wanted to see this case favorably resolved and I worked hard to do so that Miesen and the other innocent minority shareholders could receive a settlement payment. I will continue to zealously represent Miesen on appeal under the same contingent fee terms.

37.    At no time since this lawsuit has been pending have the Individual Defendants ensured that the boards of directors for the AIA Entities were lawfully elected, fully seated with all required directors (e.g., Donna Taylor's board designee as required by the articles) and operated in an independent manner. Indeed, despite demands from Miesen and other shareholders, AIA Services has not even bothered to have a shareholder meeting since 2012 nor have the AIA Entities properly elected and fully seated their boards of directors (including the director required to be appointed by Donna Taylor (now the Estate of Donna Taylor) as required for the Series A Preferred Shares under AIA Services' amended articles of incorporation). These issues resulted in the naming of GemCap as a defendant and having to consistently litigate over the failure to follow fundamental corporate governance for the AIA Entities as to matters involving the Individual Defendants and GemCap resulting in significantly more work needing to be performed by me on this lawsuit. These issues have made this entire lawsuit more complex and time consuming as to

DECLARATION OF RODERICK C. BOND - 20

all of the defendants. I have never seen such a disregard for following corporate governance and complying with the laws.

**(G)  The Amount Involved and the Results Obtained**

38.    As this Court is aware, Miesen entered into a settlement agreement with GemCap, which resulted in a full release of claims by GemCap. The settlement agreement achieved Miesen's two primary objectives in naming GemCap as a defendant and asserting claims against it in this lawsuit: (a) because GemCap was seeking to obtain Miesen's recoveries in this lawsuit as evidenced by John Taylor's sealed deposition transcript, which is attached as **Exhibit A**; (b) to extricate the AIA Entities from any of the over $26,620,874.10 in indebtedness that GemCap was alleging as of August 21, 2020 as confirmed by GemCap's supplemental discovery responses, a true and correct copy of which are attached as **Exhibit B**; and (c) prevent GemCap from obtaining any of Miesen's recoveries against any other defendants in this lawsuit. As confirmed on page 7 of the attached **Exhibit C**, GemCap's attorneys were targeting Miesen's recoveries in this lawsuit before GemCap was even named a party. As the case progressed after GemCap was named a defendant, GemCap was threatening to execute. Miesen was also able to obtain the release that the Hawley Troxell Defendants required of Miesen to obtain a release that ensured GemCap released all claims against them. While Miesen's damage claims included an item to seek the $26,620,874.10 in alleged indebtedness through an alternative theory such as aiding and abetting if Miesen was not successful in extricating the AIA Entities from that debt, the settlement agreement confirmed that the AIA Entities owe nothing more to GemCap and that debt was wiped clean. That was the goal of listing the large damages claim against GemCap relating to the unlawful settlement agreement that was at issue in Miesen's claims against GemCap.

39.    Miesen previously executed a written settlement agreement with the Hawley

DECLARATION OF RODERICK C. BOND - 21

Troxell Defendants, which resulted in the recovery and payment of $1,400,000 into this Court's registry. While this Court previously paid the Discovery Master from the $1,400,000, the current total balance of the settlement funds was $1,520,474.88 as of May 31, 2025, as confirmed by the most recent statement attached as **Exhibit D**. Miesen's efforts in obtaining the settlement and having the funds placed into CHRIS are what resulted in the remaining settlement funds to be placed in CRIS to earn interest. The Individual Defendants and AIA Entities never took action to ensure those funds would accrue interest. Most importantly, as discussed above, Miesen's settlement agreement with GemCap makes clear that it will not receive any of these funds.

40. In addition, while Miesen hoped that he might recover damages from GemCap for the AIA Entities' properties that were transferred to GemCap and sold, as this Court is aware, GemCap filed for Chapter 7 Bankruptcy and thus GemCap is judgment proof. (*See* Dkt. 1272-6.) Thus, based on GemCap's present financial condition, Miesen was wholly successful.

41. Miesen prevented GemCap's bankruptcy trustee from seeking to set aside the settlement agreement and from executing upon the $1,400,000 settlement obtained from the Hawley Troxell Defendants. Miesen protected those settlement funds from GemCap, which GemCap had long been trying to obtain any recoveries that Miesen obtained in this lawsuit. (See Exhibits A–D.)

42. As I previously addressed in our other pending motion to approve fees and costs, AIA Services Corporation and Subsidiary Consolidated Financial Statements, dated December 31, 2021, and December 31, 2020, show that the AIA Entities only had $552 in cash and a negative net worth of ($624,956) as of December 31, 2021 (assuming those statements are true). (*See* Dkt. 1242-4.) Based on these financial statements alone, the AIA Entities have obtained a substantial benefit through the $1,400,000 settlement, which has now grown to $1,520,474.88 as of May 31,

DECLARATION OF RODERICK C. BOND - 22

2025. (See Exhibit D.)

**(H) The Undesirability of the Case**

43.    This lawsuit and the litigation against the defendants, including the claims against GemCap, was very undesirable for my firm and frankly to any attorney based on GemCap and the other defendants' track record of concealment, obfuscation, thwarting discovery, improper litigation tactics, refusing to resolve this lawsuit, and fighting tooth and nail over virtually even if the fees and costs could have been used to settle the case. I looked past these issues because I believed that I was fighting for justice for Miesen and the other innocent minority shareholders. I have carried clients in the past, but I have always expected to be reimbursed for all of my out-of-pocket costs from the recovery. This case was highly undesirable because I was forced to advance significant costs for Miesen. When coupled with my past experience and expectations regarding GemCap (as discussed above), it was beyond undesirable to litigate against GemCap and to do so without having my costs paid by Miesen. In sum, this case was the most undesirable case that I have ever endured. Despite my efforts to act ethically and honestly, I have been on the receiving end of harsh rulings that have made it extremely difficult for me. In the face of certain of those rulings, with the assistance of Mr. Schwam, I was able to help secure the $1,400,000 settlement from the Hawley Troxell Defendants and the settlement with GemCap to protect that $1,400,000 settlement.

44.    By undertaking the representation of Miesen in this complex lawsuit with facts spanning decades of time and I was forced to turn away a significant amount of work for which I could have been paid on an hourly basis. At the same time, I was incurring hundreds of thousands of dollars in costs for the benefit of Miesen's claims, which was a huge burden on my law firm (as discussed in more detail in the costs below). During certain times, I was forced to decline to take

DECLARATION OF RODERICK C. BOND - 23

**20-ER-5191**

other cases because I was overwhelmed working on this lawsuit, and the defense of this lawsuit was unlike almost anything that I had ever experienced. I have lost the use of the hundreds of thousands of dollars in costs that that my firm has incurred for this lawsuit, and I also lost income from work that I had to turn away. These expected issues made this case the most undesirable ever.

45.    This lawsuit has over 1,300 dockets (excluding sub-dockets for exhibits and other filings). I have never been involved in a lawsuit with even close to as many filings as this one. The number of dockets alone confirms the undesirability of this case. A review of those documents by this Court can confirm the work that I performed and the difficult circumstances under which the work was performed at times.

**(I)  The Nature and Length of the Professional Relationship with the Client**

46.    Prior to me representing Miesen in this lawsuit, I successfully represented Miesen in another lawsuit. For example, my firm previously represented Miesen in 2012-2013 when John Taylor and certain of the other Individual Defendants had AIA Services file suit against Miesen and other shareholders seeking to eliminate them as shareholders for ten cents per share through a reverse stock split that violated AIA Services' amended articles of incorporation and its bylaws. The shareholders (including Miesen) prevailed on that lawsuit (*see, e.g.,* Dkt. 86-1) and they were awarded attorneys' fees and costs by Judge Kerrick.

47.    I also represented Miesen and two other shareholders seeking to prevent the settlement agreement that formed the basis of Miesen's claims against GemCap, but that lawsuit was initially dismissed without prejudice based on GemCap and John Taylor's arguments that Miesen's claims must be derivative (he didn't assert the direct ultra vires claims in that lawsuit that were pleaded here) and John Taylor further asserted in an answer that he filed for the AIA Entities that Miesen must bring his claims against GemCap in this lawsuit, which is precisely what

DECLARATION OF RODERICK C. BOND - 24

Miesen did. In sum, I had an established relationship with Miesen before I commenced representing him in this lawsuit.

**(J)  Awards in Similar Cases**

48.      In complex cases such as this one, I generally only agree to accept them on a contingent fee basis of at least 40% of the recovery because the amount of time expended does not pencil out (not to mention the stress). Unless I have voluntarily taken a reduced fee if I settle a contingent fee case quickly (which I do to assist clients from time to time) and to the best of my recollection, I have never agreed to accept a contingent fee case for less than 33% of the recovery. In sum, in my experience in Idaho and elsewhere, a contingent fee of 33% and 40% of the total recovery and a full reimbursement of my costs is customary.  As discussed elsewhere, I have obtained 40% contingent fees and the full reimbursement of all costs in another case in Ada County, Idaho, albeit in that case the client was at least paying part of the costs after my firm incurred them. When an attorney also agrees to advance the costs and there is no prospect of getting reimbursed for advanced costs if the case is not successful, a fee of 40% or higher is warranted, appropriate and customary, including in Idaho. A 40% contingent fee of the gross amount recovered is common in Idaho and Ada County, Idaho based on my experience and my discussions with other attorneys.

49.      While not as common, it is permissible to also have a reverse contingent fee case when seeking to avoid claims in Ada County, Idaho because the Idaho Rules of Professional Conduct (including I.R.P.C. 1.5) do not prohibit reverse contingent fee agreements. A 5% reverse contingent fee is not unreasonable, especially based on the facts and circumstances of this case. One of the critical reasons that we discussed and Miesen agreed to a reverse contingent fee was because it would be possible that the only relief from GemCap for years of litigation might only

DECLARATION OF RODERICK C. BOND - 25

be extricating the AIA Entities from any liability, which was the primary objective all along. This issue made the reverse contingent fee reasonable to both Miesen and us, under the circumstances.

## (K) The Reasonable Cost of Automated Legal Research

50.     My firm has incurred significant Westlaw charges over the entire time of this lawsuit since I first appeared as counsel in 2012. I have spent countless hours researching issues relating to this lawsuit and I have over 590 discrete file folders named by the legal issue for legal research conducted on Westlaw which contain cases, treatises, statutes and other research materials located on Westlaw for this lawsuit. It would not have been possible to properly represent Miesen in this lawsuit without having and utilizing Westlaw to find cases, authorities and other resources to support Miesen's positions in motions and for other matters (which provides me access to all state and federal cases, most treatises, law review articles and many other research materials). My firm has allocated the cheap and more than reasonable sum of $14,000 for the Westlaw charges incurred since 2012. This amount increased by $2,000 since I submitted my last declaration for fees and costs. While my firm is not requesting the $14,000 as costs unless the Court declines to approve the payment of certain fees or costs in Exhibit E (whether in this motion or the other pending motion), I am requesting that this Court consider this factor when determining to approve the payment of fees and costs so long as the maximum $998,194.99 in fees and costs ($617,573.76 in fees and $380,621.23 in costs) is not exceeded for both motions.  I would also like to clarify that my firm's allocation of only $14,000 in Westlaw charges is not only reasonable, but it is a great deal based on the amount of legal research that I have conducted and my willingness to not allocate the proper amount to Miesen.

## (L)  Other Factors Which the Court May Deem Appropriate

51.     Miesen cannot afford to pay the costs that my firm has incurred in this lawsuit, but

DECLARATION OF RODERICK C. BOND - 26

that does not mean that I should not recover them from the settlement fund. My firm has incurred over $400,000 in costs and related expenses effectively pursuing the claims against GemCap and the other defendants. It would be unfair to allow the AIA Entities to retain any part of the gross $1,400,000 recovery (before this Court paid the Discovery Master), plus accrued interest of $59,745.72 as of March 31, 2024, without fair compensation to my firm for the costs and time expended in achieving the recovery. This is particularly true because the defendants worked against Miesen's efforts to obtain the recovery and extricate the AIA Entities from any liability to GemCap, yet certain defendants are now alleging that they are entitled to some of Miesen's over $1,400,000 in recoveries.

52.    As discussed above, awards in similar cases of a 40% contingent fee are common (especially when advancing hundreds of thousands of dollars in costs) and reasonable for a case filed in Ada County, Idaho. In this lawsuit, my 35% contingent fee (plus Mr. Schwam's 5% fee) is a discount from what my hourly fee would have been. Also, my firm has not requested full reimbursement of all the costs incurred in this lawsuit as discussed below, which is another reason to approve the payment of the 40% contingent fee to us. The AIA Entities have received the benefit of this work because they have not had to advance any costs or pay any attorneys' fees to pursue Miesen's claims.

53.    This lawsuit has been a huge financial burden on my law firm. I have lost the use of the over $400,000 that I have advanced for Miesen or paid in interest in this lawsuit, including, without limitation, the lost interest and investment income (not to mention the interest payments on a line-of-credit and other obligations that I have been forced to pay because of the lost use of my firm's money and the work that I have had to turn away during certain times because of the workload and complexity of this lawsuit). This lawsuit has been financially devastating to me.

DECLARATION OF RODERICK C. BOND - 27

54.    As discussed in more detail below, my firm agreed to seek and accept substantially less costs in order to assist Miesen in determining whether to settle with the Hawley Troxell Defendants and GemCap. In light of my loss regarding costs, it is only fair that I receive my portion of the full $617,573.76 in fees requested.

55.    I have spoken with other innocent shareholders who are hoping for a recovery who have expressed their desire that my firm get paid. No shareholders objected to my firm's prior fee and cost request, except for certain defendants in this lawsuit. This request will result in slightly more fees and costs being requested.

56.    This lawsuit has dragged on because of efforts by the defendants to delay justice. The case was stayed at the request of the defendants for over five years (until I was able to secure a reversal from the Ninth Circuit Court of Appeals). The delays have resulted in additional work for me and additional costs. In sum, for the reasons stated above, this Court should consider the additional information contained in all of the preceding paragraphs and the applicable ones below to approve the payment of the full 40% contingent fee.

57.    As seen through this declaration and this motion and the first one, we have been extraordinarily fair with Miesen, the other innocent stakeholders, and the AIA Entities by agreeing to limit the amount of fees and costs that we are seeking from the $ settlement funds.

58.    As discussed above, the 2021 settlement agreement between John Taylor, GemCap and others should not be relevant or considered for the issue of approving the payment of fees and costs to Miesen, even if that agreement is legal and enforceable. The Individual Defendants, CropUSA Defendants, AIA Entities and GemCap fought Miesen tooth and nail for many years in a concerted effort to prevent Miesen from extricating the AIA Entities from the over $26,620,874.10 that GemCap was claiming was owed in 2020. This action confirms that Miesen's

DECLARATION OF RODERICK C. BOND - 28

positions were correct; the AIA Entities should not have been liable for any debt to GemCap and John Taylor proceeded as Miesen had demanded.

**Testimony Regarding the Costs Requested**

59.      During my firm's representation of Miesen in this lawsuit, my firm has incurred over $400,000 in costs and expenses for the efforts to obtain recoveries in this lawsuit, to extricate the AIA Entities from the over $26,620,874.10 that GemCap claimed was owed by the AIA Entities, and to prevent GemCap from obtaining any of Miesen's recoveries from the Hawley Troxell Defendants or any other defendants.  Attached as **Exhibit E** is a true and correct copy of certain costs and expenses that my firm is requesting reimbursement from the $1,400,000 gross settlement recovery (the balance had increased to $1,520,474.88 as of May 31, 2025). Exhibit E constitutes a cost bill, which increased to $ $380,621.23 since the cost bill that I submitted in support of the first motion to approve the payment of fees and costs. (Dkt. 1242-5.) As indicated above, Miesen requested, and my firm agreed, to reduce my requested costs to be limited to the original $380,621.23 requested from the $1,400,000 gross recovery obtained from the Hawley Troxell Defendants, plus the past and future accrued interest on the settlement funds, which Miesen has protected from GemCap. Miesen owes these costs to my firm irrespective of the results of this lawsuit or whether McDermott was excluded as an expert. In addition to those costs, I will address certain other costs and expenses incurred in this lawsuit below, which provide additional support for the payment of the $380,621.23 in cost reimbursement requested from the settlement funds. If this Court finds that any costs or expenses listed in Exhibit E are not reimbursable for any reason (I tried to limit the items in Exhibit E to the most obvious reimbursable costs), I am respectfully requesting the Court to substitute other matters addressed in the sub-paragraphs below in order to be paid the $380,621.23 in costs and expenses for which reimbursement is requested from the

DECLARATION OF RODERICK C. BOND - 29

funds held by this Court, which is consistent with my agreement with Miesen. Likewise, I am also requesting that the Court award an increased amount of fees if necessary to reach the $998,194.99 in total fees and costs. The following subparagraphs address the Item Numbers in Exhibit E and additional items not listed in Exhibit E:

       **a.**     Item Numbers 1, 3-4, 11, 13-14, 23 in Exhibit E were sums incurred by my firm for data hosting and e-discovery with Cicayda. As discussed above, this lawsuit involved hundreds of thousands of pages of documents in discovery and some form of e-discovery was required to review and search documents, especially for specific items. However, based on the cost of e-discovery services, my firm subsequently purchased software to perform e-discovery in-house to save money. I am not seeking reimbursement for the cost of the software (although I used it exclusively for this lawsuit).

       **b.**     Item Numbers 2, 6, 12, 16, 19-20, 26, 28-30, 32, 38, 43, 47, 49, and 53 in Exhibit E were sums incurred by my firm for Miesen's legal malpractice and corporate law expert witness, Professor Richard McDermott. McDermott's testimony and expert work was required because legal malpractice and breach of fiduciary duty claims against attorneys generally require expert testimony. Professor McDermott also offered analysis and opinions pertaining to GemCap, including potentially tying the Hawley Troxell Defendants to GemCap through the substantial factor test, etc. Because the settlement amount of $1,400,000 was reached through the mediation that occurred in the Ninth Circuit for the failed appeal of the exclusion of McDermott, the settlement was obtained in part by the assistance of McDermott. Based on my direct knowledge of McDermott's extensive work, the amount of the fees and costs incurred for his work is reasonable and was warranted for Miesen's claims. His work involving the other defendants was indirectly

DECLARATION OF RODERICK C. BOND - 30

related to Miesen's claims against the Hawley Troxell Defendants and I would not have hired a separate expert to offer opinions as to the other defendants. The total amount charged by Mr. McDermott was less than the amounts charged by HTEH's two experts, Messrs. Remele and Lidstone (McDermott addressed all legal malpractice and related matters). McDermott did not charge any further sums after his deposition taken prior to being excluded as an expert or after the Hawley Troxell Defendants filed their motion to exclude him. In addition, the $1.4 million offered by the Hawley Troxell Defendants was the most that they had ever offered to settle over the course of this lawsuit (which was after McDermott had been excluded). In other words, the Hawley Troxell Defendants paid more after McDermott was excluded as an expert. Judge Dale and Judge Nye had previously cited his declarations with approval. (Dkts. 210, 408.) In sum, in my opinion, the issue of Miesen appealing the exclusion of McDermott and the risks associated with that appeal resulted in the Hawley Troxell Defendants offering to pay the $1.4 million. It would be unfair if I did not recover the amounts incurred by employing McDermott. I respectfully request that the Court do so. In addition, Miesen is not relieved of his obligations to pay my firm for McDermott's fees. My firm incurred those fees in good faith.

c.      Item Numbers 5, 7-8, 10, 17-18, 21-22, 27, 35-37, 40-41, 44-45, 48, 50-51 in Exhibit E were sums incurred by my firm for court reporters for deposition appearances, deposition transcripts, hearing transcripts, oral argument transcript, deposition exhibit fees, deposition videographer fees, trial transcripts and related matters. The descriptions under each Item Number provides additional support for the cost and they were all reasonably necessary for the prosecution of Miesen's claims, which all directly or indirectly involved GemCap (like the Hawley Troxell Defendants). Those depositions were reasonably

DECLARATION OF RODERICK C. BOND - 31

necessary and relevant, at least in part, to Miesen's claims against GemCap, and the costs are consistent with the reasonable charges for court reporters and videographers in the locations where the depositions were taken.

d.      Item Numbers 9, 15, and 31 in Exhibit E were sums incurred by my firm advancing costs for Miesen to pay the Discovery Master, Mr. Lombardi. Although my law firm was not liable for paying the Discovery Master, I nevertheless had my firm advance the payments in Item Numbers 9, 15, and 31.  Notably, the Discovery Master was not requested by Miesen. Thus, these costs were reasonably incurred by Miesen at the direction of the Court. The discovery master's billings were directly or indirectly related, at least in part, to much of the work prosecuting the claims against GemCap.

e.      Item Number 24 in Exhibit E was a sum reasonably incurred by my firm for Miesen for his share of the mediation fee in 2019. While Mr. Piazza was more expensive than local mediators, I had previously used his services to successfully resolve another complex case with the same insurer, and Miesen was concerned that an out-of-town mediator was required under the circumstances. While that mediation was not successful, a mediation was required by the Court to be conducted and we engaged in the mediation in good faith. At this mediation and thereafter, it was also clear that GemCap was trying to obtain any recoveries might obtain against the other defendants.

f.      Item Numbers 25, 34, 39, and 46 in Exhibit E were sums incurred by my firm for the scanning (including making the documents text searchable) and bates-stamping of documents produced in discovery, the production of certain documents by the Hawley Troxell Defendants, and the copying of certain deposition exhibits (the deposition contained many exhibits).

DECLARATION OF RODERICK C. BOND - 32

     **g.**     Items Numbers 33, 42, and 52 in Exhibit E were sums incurred by my firm for Miesen's damages expert, Larry Hile. Miesen retained Mr. Hile in response to the Hawley Troxell Defendants' disclosure of Mr. Pinkerton and his report as an expert witness. As a result, Miesen was forced to incur the sums for the services of Mr. Hile. In addition, the sums charged by Mr. Hile were less than the sums charged by Mr. Pinkerton. While Mr. Hile was excluded from providing opinions for Miesen's case-in-chief (Mr. Hile was timely disclosed as a rebuttal expert), he remained fully in play because his primary purpose was to rebut Mr. Pinkerton (which he did). Mr. Hile also addressed matters relating to GemCap.

     **h.**     Item Number 54 in Exhibit E was the sum reasonably incurred by my firm for a roundtrip airline ticket to Los Angeles, California in connection with the two-day deposition of GemCap's Rule 30(b)(6) deposition.

     **i.**     Item Number 55 in Exhibit E was the sum reasonably incurred by my law firm for a hotel room and suite at the Four Seasons Hotel in Westlake village, California for the two-day deposition of GemCap's Rule 30(b)(6) deponent. Because of COVID-19 issues and GemCap's request to be deposed in Westlake Village, California, I was forced to rent a large suite for 3 nights as a location for GemCap's Rue 30(b)(6) deposition and GemCap requested the deposition take place in Westlake Village. I also incurred other costs relating to that deposition that I am not itemizing. I have included this payment now based on the settlement with GemCap and Miesen having protected the settlement funds from GemCap and the bankruptcy trustee.

     **j.**     Item Number 56 in Exhibit E was a sum reasonably incurred by my firm to advance fees and costs for Miesen's California bankruptcy counsel. After we discovered

DECLARATION OF RODERICK C. BOND - 33

that the instant case had been stayed because of GemCap's bankruptcy filing, Miesen retained Misty Perry Asaacson from the law firm of Pagter and Perry Asaacson, APLC to represent him in GemCap's California bankruptcy to obtain an order granting relief from stay so that this Court would proceed with the instant case. We were not licensed in California so we could not represent Miesen in the Bankruptcy Court. As this Court is aware, Miesen was successful in obtaining an order granting relief from the Bankruptcy stay. The sum for Item number 55 would have been substantially higher if Ms. Perry Asaacson had not graciously reduced her fee and if I had not taken the laboring oar of preparing the draft motion and declaration for Ms. Perry Asaacson's review, edits and approval prior to filing with the Bankruptcy Court. I expended significant efforts in addressing bankruptcy court matters under Ms. Perry Asaacson to save Miesen the costs associated with having to pay more fees.

k.      If I failed to address any specific Item Numbers in Exhibit E above, the sums incurred in those Item Numbers were reasonably incurred for Miesen's case and the description provided in each Item Number provides additional information relating  each cost or expense. I will now address certain costs and expenses not listed in Exhibit E, which I am only listing to show the concessions made by my firm to assist Miesen in resolving his claims against GemCap and to provide additional sums to meet the requested $380,621.23 in requested reimbursements (my firm agreed to limit its cost request to a total of $380,621.23 and write off the balance of costs incurred above that amount based on the understanding that we would recover those costs and receive my firm's 35% contingent fee). The total amount of those costs and expenses (and lost interest income) exceeds $200,000, which would not be the sole costs and expenses written off. Again, so long as

DECLARATION OF RODERICK C. BOND - 34

this Court approves the full payment to my firm of the requested $380,621.23 in costs and expenses, my firm will lose the over $300,000 in costs and expenses (including lost interest on the costs that I have advanced and interest that I have been forced to pay on the costs advanced for Miesen) discussed below (when I say write off, I mean my firm will not seek reimbursement from Miesen or any of the settlement funds, but my firm is reserving the right to be paid additional costs if they are awarded if Miesen prevails on appeal and obtains a favorable judgment or if Miesen were to settle with the remaining defendants). If the Court does not approve certain of the costs and expenses discussed above and contained in Exhibit E, I am respectfully requesting that the Court approve the payment of the below costs or award additional fees sufficient to make up for any of the costs not approved to reach the maximum amount of $380,621.23, which was the cap agreed to with Miesen. I will never be fully compensated or paid for my time and the financial burden that I have endured seeking justice for Miesen and the other minority shareholders.

l.      My firm incurred over $60,000 in out-of-pocket costs to pay an independent contractor paralegal ($39,678 for paralegal work) to assist in organizing and assembling the documents necessary to itemize Miesen's damages as requested in discovery by the Hawley Troxell Defendants and for independent contractor law clerk work ($20,472.25 for law clerk work) and none of these individuals were my firm's regular employees (I have since incurred additional contract paralegal expenses since my last declaration for this case which I am not seeking payment of in an amount exceeding $10,000). This recoverable paralegal work involved reviewing hundreds of thousands of pages of documents for locating and assembling internal accounting work papers for the AIA Entities and other damage items listed by Miesen. Because documents produced in discovery by the AIA

DECLARATION OF RODERICK C. BOND - 35

Entities and related parties were never fully produced in an order and organized manner, it created a substantial amount of work for my firm for which I had no employees to assist me. The law clerk work assisted me in legal research and related issues. These $60,150.25 in costs, like the others, were required to be paid to my firm by Mr. Miesen as part of the contingent fee agreement because they were not costs that I would have normally incurred.

m.    My firm incurred costs and expenses related to travel for depositions, the mediation, court hearings (including discovery master hearings), document inspections, and related travel (including certain of Miesen's travel expenses for the lawsuit (including for him to attend depositions and other matters), travel expenses for conferences and travel expenses for expert work), including, without limitation: (i) over $14,000 incurred for air fare; (ii) over $15,000 in hotel charges (which includes some larger rooms to prepare deposition exhibits and other case matters, and to take depositions during COVID); (iii) over $4,000 in food, beverages and snacks; (iv) and over $1,000 incurred for taxis, Ubers, Lyft and car rental.  These costs and expenses were incurred for my travel to and from Boise, ID (numerous times), Chicago IL (two times), San Francisco CA, Los Angeles CA, Minneapolis MN, Lewiston ID (numerous times), and Clarkston WA, for work on the case. Because Miesen was indigent, my firm also incurred costs and expenses for certain of Miesen's air fare, hotel and automobile charges for travel to certain of the above cities from his residence in Texas because Miesen has been very actively involved in his lawsuit. These matters were all directly or indirectly related to the Hawley Troxell Defendants. With respect to depositions, I was forced on several occasions to rent larger rooms and bring a portable printer to print and assemble deposition exhibits and, in one instant, rent a separate suite to take depositions. The total of these travel costs and expenses exceeds $35,000 and

DECLARATION OF RODERICK C. BOND - 36

was reasonably incurred for this lawsuit.

**n.** My firm incurred over $3,000 for court and PACER fees. These fees were necessary for the prosecution of Miesen's claims and for discovery purposes. The PACER fees involved obtaining copies of documents filed in various cases around the country and searching for the cases (John Taylor and/or entities that he controls have been involved in numerous related lawsuits around the country that I was not involved in and through which we were able to obtain discovery relevant to this lawsuit).

**o.** My firm incurred over $14,000 in Westlaw charges allocatable to the prosecution of Miesen's claims in this lawsuit. This allocation, which is generous in favor of Miesen, was increased by only $2,000 since my last declaration filed almost three years ago. As this Court is aware, this lawsuit involved many issues of first impression and/or novel issues never addressed by Idaho courts and/or the Ninth Circuit, which required extensive research. In addition, the complexity of this lawsuit required extensive research as to hundreds of legal issues. These costs are much lower than my firm could have allocated to Miesen based on actual usage charges, but I reduced the amount significantly over the years.

**p.** My firm incurred over $4,000 in copy costs and supplies for internal work solely for Miesen's case. These costs included binders, exhibit dividers for depositions, copy costs for copying deposition exhibits and related case documents, and other supplies reasonably incurred for the case.

**q.** Miesen agreed to reimburse my firm for 12% interest on all costs and expenses incurred for this lawsuit. While I have not added up the total of each interest item from the date the cost or expense was paid by my firm, the amount of interest owed by

DECLARATION OF RODERICK C. BOND - 37

Miesen far exceeds $150,000. I would also note that my firm was forced to pay interest on certain of the amounts incurred on my credit cards (which I paid a higher interest rate than the 12% charged to Miesen in some instances) and on my firm's lines-of-credit that I personally had to pay-off my firm's line-of credit because my firm lacked the resources to pay off my firm's line-of-credit because of lost revenue associated with having to decline certain work because of the complexity and unknown work schedule for this case and an anticipated trial because I am a solo-practitioner and the Individual Defendants never moved for summary judgment to dismiss all of Miesen's claims. Thus, in addition to not being paid the 12% interest by Miesen, my firm actually incurred additional interest charges of over $100,000 for this case. In short, Miesen and the AIA Entities have essentially had use of my hard-earned and borrowed money without having to pay any interest.

r.      As part of the settlement with the Hawley Troxell Defendants, Miesen agreed to pay for the publication of the notice to shareholders in the Lewiston Tribune for two days of publication. The Lewiston Tribune charged my firm $387 to publish the notice (the estimate that I previously provided was erroneously high because I had inadvertently provided the longer notice for the estimate). As part of the settlement, my firm will also agree to write off the costs for the publication to the extent those payments and the over $125 incurred for postage to mail the notices to shareholders.

s.      To recap, my firm is requesting not more than the $380,621.23 in costs to be reimbursed out of the above items (the same amount requested in our other pending motion). (*See* Exhibit E.) If this Court finds that any cost or part of a cost should not be reimbursed, then I request for the Court to fill in that gap with some of the costs identified

DECLARATION OF RODERICK C. BOND - 38

above, which are not included in Exhibit E, and/or the additional fees to which my firm should be paid for the settlement obtained with GemCap and the protection of the settlement funds from GemCap in order to reach the maximum $380,621.23 for achieving the settlements with GemCap and the Hawley Troxell Defendants.

60.    To confirm, we are requesting a total of $998,194.99 for attorneys' fees and costs for both this motion and the first motion to approve the payment of fees and costs (Dkt. 1242). While we have made a request for the allocation between fees and costs, it is the full payment of $998,194.99 that matters, irrespective of whatever allocation this Court may determine. Mr. Schwam and I have agreed that, if this Court approves the payment of the requested fees and costs, the Court can issue a single check to my trust account, issued to Roderick Bond Law Office, PLLC, and I will then distribute Mr. Schwam's share to him from my trust account after the check has cleared.

**Miesen's Service Fee**

61.    Mr. Miesen has advised me that he has spent over 4,000 hours working on this case since 2016 alone performing such tasks as: (a) reviewing and/or revising papers before being filed or served by his counsel, (b) reviewing the defendants' filings, (c) having countless phone calls with Mr. Bond, (d) reviewing documents in discovery and obtained from other lawsuits, (e) attending and participating in the depositions taken in this case, (f) working on discovery responses, and (g) being a very actively involved plaintiff with a substantial stake in AIA Services. I have never had a client that has made himself so readily available and participated in a case to the level that Mr. Miesen has done. He has also incurred an extraordinary amount of liability for the costs that my firm has advanced. While I researched the issue of Mr. Miesen receiving a service fee for his work, I found that the fees can range from $5,000 being presumptively reasonable to

DECLARATION OF RODERICK C. BOND - 39

$25,000 being high. As this Court is likely aware, Mr. Miesen has been fighting cancer and still trying to actively assist me in this case. I believe that he deserves a service fee from the settlement fund for his efforts in the requested amount of $25,000.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

*June    ,*                                        */s/ Roderick C. Bond*
Date Signed                                         Roderick C. Bond

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 11th day of June 2025, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:    jat@elamburke.com
Loren C. Ipsen:    lci@elamburke.com
Joyce A. Hemmer:    jah@elamburke.com
Bradley S. Keller:    bkeller@byrneskeller.com
Alyson A. Foster:    alyson@dempseyfoster.com
Michael S. Bissell:    mbissell@campbell-bissell.com
Daniel L. Glynn:    dglynn@idalaw.com
Andrew Schwam:    amschwam@turbonet.com
Kim J Trout:    ktrout@trout-law.com
Markus William Louvier:    mlouvier@ecl-law.com
James B. King:    jking@ecl-law.com

                                                   */s/ Roderick C. Bond*
                                                   Roderick C. Bond

DECLARATION OF RODERICK C. BOND - 40

**20-ER-5208**

**DISTRICT OF IDAHO**
**BANKRUPTCY REGISTRY ACCOUNTS**
**REGISTRY BANK ACCOUNT**

| | | | |
|---|---|---|---|
| **Case #** | 110CV000404-001 | **Report Month** | FOR THE MONTH: MAY 2025 |
| **Name** | Dale L. Miesen v. Connie Henderson, etal | **Bank Acct#** | CRIS |

| Date | Description | Beginning | Additions | Deletions | Interest | Ending |
|---|---|---|---|---|---|---|
| | | | Account Activity | | | |
| 6/5/2023 | Open Account | 1,376,540.47 | | | | 1,376,540.47 |
| 6/30/2023 | INTEREST | 1,376,540.47 | | | 4,829.18 | 1,381,369.65 |
| 7/31/2023 | INTEREST | 1,381,369.65 | | | 5,571.20 | 1,386,940.85 |
| 8/31/2023 | INTEREST | 1,386,940.85 | | | 6,330.78 | 1,393,271.63 |
| 9/30/2023 | INTEREST | 1,393,271.63 | | | 5,314.28 | 1,398,585.91 |
| 10/31/2023 | INTEREST | 1,398,585.91 | | | 5,973.37 | 1,404,559.28 |
| 11/30/223 | INTEREST | 1,404,559.28 | | | 6,625.27 | 1,411,184.55 |
| 12/31/2023 | INTEREST | 1,411,184.55 | | | 5,851.33 | 1,417,035.88 |
| 1/31/2024 | INTEREST | 1,417,035.88 | | | 6,361.07 | 1,423,396.95 |
| 2/29/2024 | INTEREST | 1,423,396.95 | | | 6,847.46 | 1,430,244.41 |
| 3/31/2024 | INTEREST | 1,430,244.41 | | | 6,041.78 | 1,436,286.19 |
| 4/30/2024 | INTEREST | 1,436,286.19 | | | 6,250.78 | 1,442,536.97 |
| 5/31/2024 | INTEREST | 1,442,536.97 | | | 6,909.30 | 1,449,446.27 |
| 6/30/2024 | INTEREST | 1,449,446.27 | | | 5,884.47 | 1,455,330.74 |
| 7/31/2024 | INTEREST | 1,455,330.74 | | | 6,442.06 | 1,461,772.80 |
| 8/31/2024 | INTEREST | 1,461,772.80 | | | 6,894.76 | 1,468,667.56 |
| 9/30/2024 | INTEREST | 1,468,667.56 | | | 5,918.14 | 1,474,585.70 |
| 10/31/2024 | INTEREST | 1,474,585.70 | | | 6,741.01 | 1,481,326.71 |
| 11/30/2024 | INTEREST | 1,481,326.71 | | | 5,849.49 | 1,487,176.20 |
| 12/31/2024 | INTEREST | 1,487,176.20 | | | 5,861.11 | 1,493,037.31 |
| 1/31/2025 | INTEREST | 1,493,037.31 | | | 6,269.01 | 1,499,306.32 |
| 2/28/2025 | INTEREST | 1,499,306.32 | | | 5,264.55 | 1,504,570.87 |
| 3/31/2025 | INTEREST | 1,504,570.87 | | | 5,310.68 | 1,509,881.55 |
| 4/30/2024 | INTEREST | 1,509,881.55 | | | 4,889.29 | 1,514,770.84 |
| 5/31/2025 | INTEREST | 1,514,770.84 | | | 5,704.04 | 1,520,474.88 |
| | | 1,520,474.88 | | | | |
| | **Totals** | **1,376,540.47** | **-** | **-** | **143,934.41** | **1,520,474.88** |

| | |
|---|---|
| **Bank Statement Balance at End of Month** | **1,520,474.88** |
| **Difference** | **In Balance!** |

**Exhibit - D**
**20-ER-5209**

| | | COSTS | |
|---|---|---|---|
| | | | |
| **Item** | **Vendor** | **Description** | **Amount** |
| 1 | Cicayda | Data Hosting for e-discovery | $782.50 |
| 2 | Richard McDermott | Expert Witness Fees and Costs | $20,000.00 |
| 3 | Cicayda | Data hosting for e-discovery | $519.50 |
| 4 | Cicayda | Data Hosting for e-discovery | $266.00 |
| 5 | Associated Reporting | Court reporter fee for transcript of shareholder meeting & appeal | $672.00 |
| 6 | Richard McDermott | Expert Witness Fees and Costs | $15,000.00 |
| 7 | K&K Reporting | Court reporter fees re Van Idour Deposition | $700.00 |
| 8 | Dan Walker Productions | Videographer fees re Van Idour Deposition | $283.00 |
| 9 | Givens Pursley | Discovery Master Fees | $4,717.50 |
| 10 | K&K Reporting | Court reporter transcript fees re Van Idour Deposition | $119.10 |
| 11 | Cicayda | Data Hosting for e-discovery | $619.50 |
| 12 | Richard McDermott | Expert Witness Fees and Costs | $11,775.00 |
| 13 | Cicayda | Data Hosting for e-discovery | $156.50 |
| 14 | Cicayda | Data Hosting for e-discovery | $469.50 |
| 15 | Givens Pursley | Discovery Master Fees | $6,753.90 |
| 16 | Richard McDermott | Expert Witness Fees and Costs | $5,000.00 |
| 17 | Urlaub Bowen | Court reporter/transcript fees re Gaziolis & Quarles Depositions | $262.85 |
| 18 | Urlaub Bowen | Court reporter/transcript fees re Gaziolis & Quarles Depositions | $262.85 |
| 19 | Richard McDermott | Expert Witness Fees and Costs | $8,000.00 |
| 20 | Richard McDermott | Expert Witness Fees and Costs | $10,000.00 |
| 21 | Associated Reporting | Court reporter/transript fees and costs re Riley and Ashby Depos. | $6,235.79 |
| 22 | Urlaub Bowen | Court reporter/transript fees re Gatziolis & Quarles Depos. | $4,436.92 |
| 23 | Cicayda | Data Hosting for e-discovery | $626.00 |
| 24 | Mediated Negotiations | Mediation Fee | $1,600.00 |
| 25 | Streamline Imaging | Document scanning and batestamping fees for discovery documents | $1,102.37 |
| 26 | Richard McDermott | Expert Witness Fees and Costs | $10,000.00 |
| 27 | M&M Court Reporting | Court reportter transcript fees re Miesen Deposition | $586.71 |
| 28 | Richard McDermott | Expert Witness Fees and Costs | $5,000.00 |
| 29 | Richard McDermott | Expert Fees | $5,000.00 |
| 30 | Richard McDermott | Expert Fees | $5,000.00 |
| 31 | Givens Pursley | Discovery Master Fees ($8,617.50 + credit card fee) | $8,876.03 |
| 32 | Richard McDermott | Expert witness fees | $10,000.00 |
| 33 | Larry Hile | Expert witness fees | $12,705.00 |
| 34 | Streamline Imaging | Scanning and Bates Stamping of Documents produced in discovery | $10,545.26 |
| 35 | Steno Girl Inc. (Associated) | Court reporter/transcript fees re Ashby, Riley, HTEH & AIA/CropUSA depos | $12,112.50 |
| 36 | Steno Girl Inc. (Associated) | Court reporter/transcript fees re Ashby, Riley, HTEH & AIA/CropUSA depos | $3,859.46 |
| 37 | M&M Reporting | Deposition transcripts re D. Taylor, Hostetler & Ruddell Depos. | $886.00 |
| 38 | Richard McDermott | Expert witness fees | $5,000.00 |
| 39 | Elam & Burke | Discovery document copy costs ordered by court to paid to HTEH | $1,064.19 |
| 40 | Nancy Towler | Court reporter fee re transcript for hearing in D. Taylor v. AIA | $200.00 |
| 41 | LC Reporting | Court reporter fee re trial transcript for GemCap v. AIA, et al. | $960.00 |
| 42 | Larry Hile | Expert Witness Fees | $4,875.00 |
| 43 | Richard McDermott | Expert witness fees | $5,000.00 |

**Exhibit - E, p. 1**
**20-ER-5210**

| Item | Vendor | Description | Amount |
|------|--------|-------------|--------|
| 44 | Steno Girl Inc. (Associated) | Court reporter/transcript fees re 2nd AIA Entities/CropUSA Entities Depos. | $8,911.50 |
| 45 | Benchmark Reporting | Court reporter/transcripts fees re Beck and Cashman Depos. | $5,161.26 |
| 46 | Streamline Imaging | Scanning/bates stamps/printing costs for discovery documents/depo. Exs. | $10,930.00 |
| 47 | Richard McDermott | Expert Witness Fees | $5,000.00 |
| 48 | Steno Girl Inc. (Associated) | Court reporter/transcript fees - GemCap, Henderson & 2nd Miesen Depos. | $10,867.77 |
| 49 | Richard McDermott | Expert witness fees | $5,000.00 |
| 50 | Buell Reporting | Deposition transcript fee (Miesen's expert Moran) | $1,126.80 |
| 51 | Buell Reporting | Deposition transcript fee (Miesen's expert Hile) | $1,134.70 |
| 52 | Larry Hile | Expert Witness Fees | $11,165.00 |
| 53 | Richard McDermott | Expert Witness Fees | $114,000.00 |
| 54 | Delta Airlines | Airline Ticket to Los Angeles, Ca for GemCap Rule 30(b)(6) deposition | $465.20 |
| 55 | Four Seasons | Hotel Expenses in Westlake Villiage, Ca for two-day GemCap deposition | $3,140.07 |
| 56 | Pagter & Perry Asaacson | Fees and Costs for California Bankruptcy Counsel to Lift the Stay | $1,688.00 |
| | | | |
| | | | |
| | | **TOTAL** | **$380,621.23** |

**Exhibit - E, p. 2**
**20-ER-5211**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc, <br><br> Plaintiff, <br><br> v. <br><br> HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; GEMCAP LENDING I, LLC, et al., a Delaware limited liability company, <br><br> Defendants. | Case No. 1:10-cv-00404-DCN <br><br> **ORDER** |

Before the Court is Plaintiff Reed Taylor's Motion to Amend/Correct (Dkt. 1307)

ORDER - 1

**20-ER-5212**

the Court's Judgment (Dkt. 1305). Therein, Taylor requests the Court enter an Amended Judgment, adding language that the Third-Party Complaint ("TPC") (Dkt. 218) is dismissed with prejudice, and removing a footnote that incorrectly states Plaintiff Dale Miesen's direct claims against Taylor still need to be litigated.

The Court can amend a judgment to correct a mistake whether it be clerical or from the Court's oversight or omission. Fed. R. Civ. P. 60(a). As to the language explicitly dismissing the TPC, the Court did intend to clearly indicate Defendants Crop USA Insurance Agency, Inc., Connie Henderson, JoLee Duclos, R. John Taylor, Michael Cashman, and James Beck could not seek contribution or indemnity from Reed Taylor because those parties did not have liability to Miesen. Because that is the basis of the TPC, the TPC can now properly be dismissed, and the Court will explicitly add such language in an Amended Judgment to correct its omission. The Court's footnote indicating there was still a claim between Miesen and Reed Taylor that needed to be adjudicated was a mistake, and the Court will correct it accordingly.

Miesen has also requested the addition of the language, "'that there is no just reason for delay' in entering a final judgment or similar language" to "ensure that the Ninth Circuit does not take issue with the form of the Rule 54(b) judgment." Dkt. 1311, at 3. The Court finds such language would be superfluous to the language already found within the Judgment, and it is therefore unnecessary. The Court will add the language requested by Taylor but not that requested by Miesen.

///

///

ORDER - 2

**20-ER-5213**

## ORDER

1.  Plaintiff Reed Taylor's Motion to Amend/Correct (Dkt. 1307) is **GRANTED**.

DATED: June 13, 2025

_____
David C. Nye
Chief U.S. District Court Judge

ORDER - 3

**20-ER-5214**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc,

Plaintiff,

v.

HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; GEMCAP LENDING I, LLC, et al., a Delaware limited liability company,

Defendants.

Case No. 1:10-cv-00404-DCN

**AMENDED JUDGMENT**

In accordance with Federal Rule of Civil Procedure 54(b), 58(a), and the Court's

Memorandum Decisions and Orders (Dkts. 1203, 1301), it is hereby ordered:

1. Judgment be entered in favor of Defendants AIA Insurance, Inc., AIA Services

AMENDED JUDGMENT - 1

Corporation, James Beck, Michael W. Cashman, Connie Taylor Henderson, R. John Taylor, Crop USA Insurance Agency, Inc., and Crop USA Insurance Services, LLC.

2. All claims asserted by Plaintiff Dale Miesen against the Defendants named above are **DISMISSED WITH PREJUDICE.**

3. Defendants R. John Taylor, Crop USA Insurance Agency, Inc., CropUSA Insurance Services, LLC, Michael W. Cashman, Sr., JoLee K. Duclos, James Beck, and Connie Taylor Henderson's Third Party Complaint (Dkt. 218) is **DISMISSED WITH PREJUDICE**.

DATED: June 13, 2025

David C. Nye
Chief U.S. District Court Judge

AMENDED JUDGMENT - 2

20-ER-5216

Amended Notice of Appeal

## UNITED STATES DISTRICT COURT

**FOR THE DISTRICT OF** | IDAHO

### Form 1. Notice of Appeal from a Judgment or Order of a United States District Court

U.S. District Court case number: | 1:10-cv-00404

Notice is hereby given that the appellant(s) listed below hereby appeal(s) to the United States Court of Appeals for the Ninth Circuit.

Date case was first filed in U.S. District Court: | 08/10/2010

Date of judgment or order you are appealing: | 6/13/2025

Docket entry number of judgment or order you are appealing: | 1317

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

⦿ Yes    ○ No    ○ IFP was granted by U.S. District Court

**List all Appellants** *(List **each** party filing the appeal. Do not use "et al." or other abbreviations.)*

Dale L. Miesen

Is this a cross-appeal?    ○ Yes    ⦿ No

If yes, what is the first appeal case number?

Was there a previous appeal in this case?    ⦿ Yes    ○ No

If yes, what is the prior appeal case number? | 13-36043; 21-35719

Your mailing address (if pro se):

City: | State: | Zip Code:

Prisoner Inmate or A Number (if applicable):

**Signature** | /s/ Roderick C. Bond | **Date** | 06/13/2025

*Complete and file with the attached representation statement in the U.S. District Court*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Form 1                                                          *Rev. 06/09/2022*

**20-ER-5217**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*
Name(s) of party/parties:

Dale L. Miesen

Name(s) of counsel (if any):

Roderick C. Bond
Roderick Bond Law Office, PLLC

Address: 10900 NE 4th St., Suite 2300, Bellevue, WA  98004

Telephone number(s): (425) 591-6904

Email(s): rod@roderickbond.com

Is counsel registered for Electronic Filing in the 9th Circuit?    ⦿ Yes    ○ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*
Name(s) of party/parties:

R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, Sr., CropUSA Insurance Agency, Inc., and CropUSA Insurance Services, LLC

Name(s) of counsel (if any):

Daniel L. Glynn
Jones Williams Fuhrman Gourley, P.A.

Address: 225 North 9th St., Ste 820, Boise, ID  83702

Telephone number(s): (208) 331-1170

Email(s): dglynn@idalaw.com

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                                    *1*                                    *New 12/01/2018*

## 20-ER-5218

Continued list of parties and counsel: *(attach additional pages as necessary)*

**Appellants**

Name(s) of party/parties:

Dale L. Miesen

Name(s) of counsel (if any):

Andrew Schwam
Andrew Schwam Law Firm

Address: 705 SW Fountain St., Pullman, WA  99163

Telephone number(s): (208) 874-3684

Email(s): amschwam@turbonet.com

Is counsel registered for Electronic Filing in the 9th Circuit?    ● Yes    ○ No

**Appellees**

Name(s) of party/parties:

AIA Services Corporation and AIA Insurance, Inc.

Name(s) of counsel (if any):

Kim J. Trout
Trout & Jones PLLC

Address: 3778 N. Plantation River Dr., Boise, ID  83703

Telephone number(s): (208) 577-5755

Email(s): ktrout@trout-law.com

Name(s) of party/parties:

Reed J. Taylor (Third-Party Defendant)

Name(s) of counsel (if any):

Michael S. Bissell
Campbell & Bissell, PLLC

Address: 820 West 7th Avenue, Spokane, WA  99204

Telephone number(s): (509) 455-7100

Email(s): mbissell@campbell-bissell.com

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                    *2*                    *New 12/01/2018*

DANIEL LORAS GLYNN, ISB #5113
JONES WILLIAMS FUHRMAN GOURLEY, P.A.
225 N. 9th Street, Suite 820
PO Box 1097
Boise, ID 83701
Telephone:  (208) 331-1170
Facsimile:  (208) 331-1529
dglynn@idalaw.com
Attorneys for James Beck, Michael Cashman, Connie Henderson, John Taylor, Crop USA
Insurance Agency, Inc., and Crop USA Insurance Services, LLC

KIM J. TROUT, ISB #2468
TROUT & JONES, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID  83703
Telephone (208) 577-5755
Facsimile (208) 577-5756
service@trout-law.com

Attorneys for Defendant AIA Services Corporation & AIA Insurance, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>　　　　　　Plaintiff,<br>vs.<br><br>HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; CROP USA | Case No. 1:10-CV-404-DCN-CWD<br><br>**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315] AS FILED ON JUNE 11, 2025** |

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315] - 1**

INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,

Defendants.

The Defendants AIA Services Corporation and AIA Insurance, Inc. (the "AIA Entities"), James Beck, Michael Cashman, Connie Henderson, and R. John Taylor (the "Individual Defendants"), and Crop USA Insurance Agency, Inc. and Crop USA Insurance Services, LLC (collectively referred to as "CropUSA Entities") submit this Joint Memorandum of "AIA Entities", "Individual Defendants" and "CropUSA Entities" in Opposition to Plaintiff Dale L. Miesen's Motion to Approve the Payment of Attorneys' Fees and Costs [Dkt. 1315].

It is indeed a curious, if not bold, move for a party that over the course of fifteen years has now seen nearly single claim against every single party that he has pulled into this litigation either dismissed by ruling of the Court or, in the case of GemCap Lending I, LLC ("GempCap"), simply voluntarily dismissed by the Plaintiff to now seek an award of attorneys' fees and costs upon entry of judgment against Plaintiff reflecting this fact. It is even more audacious that after having forced the AIA Entities to incur nearly $975,000 in attorneys' fees and costs,[1] the Plaintiff claims he has provided a "substantial benefit" to the AIA Entities justifying an award of nearly $1 Million

---

[1] *See* Declaration of John Taylor as filed on June 11, 2025 [Dkt. 1314-4] as filed on June 11, 2025.

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315] - 2**

Dollars[2] plus accruing interest in the amount of forty percent (40%). As the AIA Entities, the Individual Defendant Entities, the CropUSA Entities, and even Hawley Troxel Ennis & Hawley, LLP ("HTEH") have previously argued in opposition to Plaintiff's prior fee requests, this Court should summarily reject Plaintiff's claims as Plaintiff cannot be considered a prevailing party in this litigation, has no standing to assert an entitlement to attorneys' fees, and in no sense can be said to have conferred a benefit, let alone a substantial or common benefit, to the AIA Entities justifying any award of fees and costs in this matter.

### FACTS AND PROCEDURAL BACKGROUND

As noted, this is the <u>third</u> time that Plaintiff has sought to spin his abject failure in this litigation as a victory entitling Plaintiff's counsel, to the exclusion of the AIA Entities and the shareholders he purported to represent, to an award of attorney fees and costs in excess of $1 Million – a claim which he now seeks to charge against the $1.4 Million currently in the Court's registry by stipulation of the parties.

Plaintiff originally filed a motion seeking an award of attorney fees on May 31, 2022, but subsequently withdrew his request. (Dkts. 1214 & 1225.) Plaintiff did so, however, only after the AIA Entities, the Crop USA Entities, and the Individual Defendants incurred the costs of opposing the motion. It should also be noted that HTEH also opposed Plaintiff's request for attorney fees. (Dkt. 1219.) Plaintiff then retooled his motion and refiled his request for attorneys' fees on August 19, 2022. (Dkt. 1242.) Again, the AIA Entities, the CropUSA Entities, the Individual Defendants,

---

[2] *See* Plaintiff Dale L. Miesen's Memorandum of Law in Suppport [SIC} of his Second Motion to Approve the Payment of Attorneys' Fees and Costs [Dkt. 1315-1] ("MIS") at page 1 identifying 617,573,76 in attorney fees and $380,621.23 in costs.

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315]** - 3

and HTEH all filed oppositions to this second request for attorney fees.[3] (Dkts. 1250, 1251, and 1252.) Now, Plaintiff seeks to try another "pitch" for his million-dollar fee and cost request by simply sidestepping the scorched earth litigation tactics he employed in this litigation and others to simply assert that he is entitled to attorney fees and costs because he obtained a settlement from HTEH and GemCap. Of course, in so doing, Plaintiff purposefully omits that this resolution with HTEH was at the AIA Entities' substantial expense and that through the efforts of Defendant John Taylor, GemCap had already agreed to a resolution of all claims against the AIA Entities.

The fuller details of Plaintiff's conveniently omitted procedural history are set forth in the prior oppositions filed by the AIA Entities, the Individual Defendants/Crop USA Entities, and HTEH. Accordingly, they will not be restated here but rather incorporated by reference. Instead, the more salient points will be briefly summarized here along with a few additional relevant procedural events that have occurred since these filings.

(1)     This litigation is but one of a multitude of litigations that Plaintiff's counsel has initiated over the last seventeen years against the AIA Entities, its directors, and any other person or entity that dared to oppose him. These litigations include:

a.  *Reed Taylor v. AIA Services et al.*, CV07-00208 (Nez Perce County District Court) which ultimately resulted in the complete dismissal of all claims asserted against AIA Services in *Taylor v. AIA Servs. Corp.*, 151 Idaho 552, 557, 261 P.3d 829, 834 (2011).

b.  *Donna Taylor v. R. John Taylor, et al.*, CV08-1150 as consolidated with CV-13-1075 in which Donna Taylor asserted the very same claims as she initially asserted in this litigation, and which were asserted by Reed Taylor in his

---

[3] In the interim period between HTEH's expressed position on Plaintiff's claim for attorney fees in Dkt. 1214 and the subsequent motion by Plaintiff for fees in Dkt. 1242, Plaintiff sought to muzzle HTEH from expressing its position with threats of yet another suit against HTEH. *See* Dkt. 1250.

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315]** - 4

litigation, and in which action the District Court, like this Court, recently recognized such claims could not be asserted directly. *See* Request for Judicial Notice by Individual Defendants [Dkt. 1300].

c. *Donna Taylor v. AIA Services*, CV CV09-02470 (Nez Perce), a receivership action filed in 2009 against which was voluntarily dismissed three years later.

d. *Miesen v. GemCap & AIA Services*, CV CV14-01444 (Nez Perce), a 2014 action was dismissed upon finding that the claims asserted were derivative in nature and could not be individually asserted by the named plaintiffs.

e. *GemCap v. AIA Services*, Case No. 13-05504 (U.S. District Court for Central District of California) in which Donna Taylor attempted to intervene, but which which intervention was ultimately denied by the California federal district court and affirmed on appeal by the Ninth Circuit Court of Appeals. (*Id.*)

f. *Reed Taylor v. Eberle, Berlin, Kading, Turnbow & McKlveen*, CV OC 0918868 (Ada County District Court) which was resolved by confidential settlement and hence there is no record of its ultimate result.

g. *Reed Taylor v. Scott Bell*, Case No. 12-2-10803-0 SEA (King County, Washington) which was resolved by confidential settlement and hence there is no record of its ultimate result.[4]

h. *Miesen v. Munding* 2:18-CV-270 (U.S. Dist. Court of WA) which was dismissed by the district court as a result of Mr. Miesen's failure to properly serve a pre-suit demand upon AIA Services and which result was affirmed by the Ninth Circuit Court of Appeals. *Miesen v. Munding*, 822 F. App'x 546, 548–49 (9th Cir. 2020).

i. *Reed Taylor v. McNichols*, CV 98-1763 (Nez Perce County) and *Reed Taylor v. Babbit*, Case No. CV08-1765 (Nez Perce), an action against the then attorney for certain of the Individual Defendants, which was dismissed and fees awarded for being "brought spuriously and without foundation, for harassment purposes only." *Taylor v. McNichols*, 149 Idaho 826, 849, 243 P.3d 642, 665 (2010).

j. *Reed Taylor v. Riley*, Case No. CV-OC-09-18868) wherein the plaintiff's claims were found to be barred by res judicata and fees awarded against the plaintiff. *Taylor v. Riley*, 162 Idaho 692, 709, 403 P.3d 636, 653 (2017).

---

[4] The Individual Defendants sought production of the settlement agreements with *Eberle, Berlin, Kading, Turnbow & McKlveen* as well as *Scott Bell*, but this request was opposed by Reed Taylor and ultimately denied.  (Dkt. 866, 875.)

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315]** - 5

(2)    The consequence of these various litigations over the last seventeen years has resulted in attorney fees and related costs to AIA Services is in excess of $3.3 million. (Dkt. 1223 at Exhibit A.)

(3)    Plaintiff's chosen litigation strategy has imposed a heavy burden with no measurable success other than to increase the cost and burden on the AIA Entities as:

    a.    Plaintiff propounded nearly 1,300 individual discovery requests, demanded the production of over 1.5 million pages of documents, and demanded multiple day depositions of certain HTEH attorneys, eight (8) full days of deposition of John Taylor, and depositions of the other Individual Defendants and GemCap corporate representatives.

    b.    Plaintiff flooded the Court, and opposing parties, with wide-ranging generalized assertions of non-compliance that were either accompanied by whole scale document dumps that expected this Court and counsel to sleuth through the documents to find support for Plaintiff's positions or, alternatively, possessed only the most scant amount of factual support resulting in admonitions from both the discovery master and Judge Dale. (Dkt. 476 at 19-20, Dkt. 662 at 4, Dkt. 939 at 5, and Dkt. 1049.)

    c.    Plaintiff made repeated requests for enlargement of pretrial deadlines ultimately resulting in Judge Dale to conclude "[d]iscovery in this matter has lingered for far too long for any party to reasonably argue they have not had adequate time." (Dkt. 865 at 2.).

    d.    Plaintiff alone was responsible for the vast majority of the over 1,00 separate dockets (nearly 3,000 if "sub-docket" numbers are to be included) for which Plaintiff obtained no substantive victories.

    e.    Plaintiff was largely responsible for nearly all of the thirty-five separate orders of the Discovery Master, the vast majority of which were appealed by Plaintiff with no meaningful successes.

    f.    Plaintiff was found on two separate occasions to have engaged in sanctionable conduct. (Dkt. 714, 756 & 777.)

    g.    Plaintiff's expert witnesses were excluded and consequently Plaintiff filed multiple attempts to obtain either reconsider or seek substitution. (Dkts. 1111, 1112, 1115, 1123, 1124, 1136, 1197.)

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315] - 6**

h. Plaintiff made multiple attempts to seek, again unsuccessfully, relief from the Ninth Circuit. Dkt. 1176 and Ninth Circuit Order dated February 26, 2025.

(4)    Plaintiff failed to obtain a resolution of the claims Plaintiff initiated against GemCap until after John Taylor had already obtained a resolution of the claims between the AIA Entities and GemCap.  As this Court should recall, on October 10, 2021, GemCap, the Crop USA Entities, the AIA Entities, and the Individual Defendants stipulated to the dismissal of all claims between them (Dkt. 1166.)  Plaintiff objected to this stipulation. (Dkt. 1167.) Even after production of the terms of the confidential settlement agreement, Plaintiff still persisted in a vague objection that he failed to ever articulate. (Dkt. 1190.)  This Court ultimately accepted the stipulation over Plaintiff's objection. (Dkt. 1191.)  Thus, contrary to Plaintiff's assertion, the only success achieved by Plaintiff with regard to the claims Plaintiff brought against GemCap was purely selfish to Plaintiff – to obtain a further settlement stipulation that GemCap would waive any claim to fees and costs from Plaintiff.

(5)    Even after this Court's dismissal of the Plaintiff's derivative claims, the Plaintiff persisted in the assertion that these claims could be recast as "direct" claims and thus necessitating additional briefing and further prolonging of this litigation.

As noted above, the foregoing summation is more fully set forth in the prior oppositions filed by the identified defendants in this case. However, whether in detail or summarized, the indisputable facts lead to one singular conclusion. The Plaintiff, individually or in league with his counsel's other clients, initiated and engaged in a protracted litigation that resulted in nothing but an expense and cost upon the very entity that he purported to represent. This Court should therefore deny entirely Plaintiff's claim for attorney fees and costs.

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315]** - 7

## ARGUMENT

**A.    Plaintiff's Failure to Comply with Idaho Code 30-29-746(1) Bars the Recover of Attorney Fees and Costs in this Matter.**

Astonishingly, despite having purported to commence a wide ranging derivative lawsuit against the AIA Entities, the CropUSA Entities, and the Individual Defendants, Plaintiff makes no reference to the relevant derivative statute that served as the predicate for his lawsuit.  Rather, Plaintiff simply asserts that a "derivative action is a suit of equity" with citation to *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991).  Plaintiff's citation is a perfect example of a quotation lifted for a singular purpose without any meaningful context.  *Kamen* does not in any way address an attorney's entitlement to fees in a derivative action. Rather, Plaintiff's isolated quotation concerns the Court's explanation as to the historical origin of derivative actions and the development of the pre-suit demand.

There is no need to resort to a historical analysis of the origins of derivative litigations nor does such serve to supplant the existing, codified rule of law recognized by this Court that Plaintiff had wholly failed to comply with the pre-litigation demand requirement of Idaho Code 30-29-742. As a consequence, this Court has dismissed <u>with prejudice</u> the derivative claims asserted in this litigation with the now accompanying determination that Plaintiff's derivative claims cannot be asserted as direct claims.  Consequently, the dismissal of the Plaintiff's derivative claims for failure to comply with the pre-suit demand requirements prohibits Plaintiff's claim entitlement to an award of attorney fees and costs.

This is the precise conclusion that was reached in the case of *Jerue v. Millett*, 66 P.3d 736, 748 (Alaska 2003). Although the Alaska statute which provided for a discretionary award of

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315] - 8**

expenses to a derivative plaintiff is slightly different than Idaho Code 30-29-746, its analysis for the denial of a derivative plaintiff's request for attorney fees is nonetheless insightful to the present cause. In *Jerue*, the derivative plaintiffs had filed suit without making the requisite statutorily required pre-suit demand. The derivative plaintiffs asserted that they should be excused from the pre-suit demand as such would have been futile.  However, the Alaska Supreme Court affirmed the trial court's conclusion that the derivative plaintiffs were not entitled to assert a futility defense and as such the case required dismissal.

Having so ruled, the court then addressed the derivative plaintiffs' request that they were nonetheless entitled to attorney fees as their lawsuit purportedly prompted the corporation to undertake many of the matters they raised in the complaint.  Noting the similar policy reasons that compel compliance with the pre-suit demand as found by this Court in its Order, the Alaska Supreme Court held:

> In the narrow context of derivative suits, failure to make a demand or prove that demand was excused is fatal to an award of attorney's fees and costs because a pre-suit demand might have prompted remedial action without need for litigation.  The policy rationale of the demand requirement dictates this result. Demand is required to give a corporation the opportunity to rectify an alleged wrong without litigation and to control any litigation which does arise. Awarding litigation expenses without a demand or proof of demand excuse would undermine the demand requirement and these policy objectives.

*Jerue*, 66 P.3d at 747. As a result, the Alaska Supreme Court affirmed the denial of the derivative plaintiffs' request for expenses.

Similarly, the Supreme Court of New York recognized that "[t]he demand requirement, which determines a shareholder's right to prosecute the claim, is universally held to be a substantive requirement." *Cent. Laborers' Pension Fund v. Blankfein*, 971 N.Y.S.2d 282, 287

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315] - 9**

(App. Div. 1st Dept. 2013) As such, "[t]o award fees to a derivative plaintiff who has neither made a demand nor alleged demand futility, upon the mooting of the suit by board action promptly after it was filed, would reward that plaintiff for unjustifiably wresting the management of the corporation from those to whom it is entrusted by law and by the rest of the shareholders." *Id.* For this reason, the Supreme Court of New York held:

> Absent a showing that the demand requirement has been complied with or excused, a derivative plaintiff has no justification for acting on behalf of the corporation. Under such circumstances, denying that plaintiff compensation from the corporation for any benefit allegedly conferred by the litigation does not constitute unjust enrichment, and the denial of fees fully accords with the doctrine of substantial benefit.

*Id.*, 971 N.Y.S.2d at 288 (App. Div. 1st Dept.). *See also, Pipefitters Local No. 636 Defined Benefit Plan v. Oakley, Inc.,* 104 Cal. Rptr. 3d 78, 84 (2010) (denying plaintiff's request for fees where there had been no pre-suit notification even though plaintiff had ultimately obtained the relief requested stating that while plaintiff sought the court's applause for the result "since delay defeats equity, we will hold our applause."); *Jesseph v. Dig. Ally, Inc.*, 472 P.3d 674, 679 (Nev. 2020) (adopting the "no suit, no fee" approach to requests for awards of expenses by derivative plaintiffs).

As is apparent by Plaintiff's argument at page 5 of his MIS, Plaintiff seeks to ignore the consequence of his non-compliance with the pre-suit demand and instead argue that attorney fees are nonetheless awardable under the common fund doctrine. However, this very argument was rejected in *Cty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1327 (2d Cir. 1990) which stated that "equally obviously, if, under a particular combination of facts, the operation of the equitable fund doctrine conflicts with an intended purpose of a relevant fee-shifting statute, the

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315] - 10**

statute must control and the doctrine must be deemed abrogated to the extent necessary to give full effect to the statute." What the Second Circuit noted as an "obvious" inappropriate use of the common fund doctrine is precisely what Plaintiff seeks to do in the case – recover attorney fees and costs despite his clear failure to comply with I.C § 30-29-742.

This Court determined that Plaintiff had wholly failed to comply with the pre-suit demand requirements of Idaho Code 30-29-742 and that Plaintiff had no direct claims. As such, Plaintiff can neither assert an entitlement to attorney fees for the failure of his derivative action or the lack of merit of his alleged "direct" claims.

**B.     Plaintiff has Not Provided a Substantial Benefit to AIA Services.**

Even if Plaintiff could overcome the obstacle to his request based on his lack of standing to claim entitlement to expenses under Idaho Code Section 30-29-746, Plaintiff's request should further be denied as Plaintiff cannot demonstrate that he has provided a substantial benefit to AIA Services as required by the statute.  Rather, as the evidence in the record establishes, Plaintiff's litigation strategy has caused AIA Services to incur attorney fees and costs of nearly $975,000.

Putting aside the dubious proposition suggested by Plaintiff that AIA Services is benefited by the receipt of less than one-third of the proceeds of a settlement that doesn't completely conclude the litigation, the fact that Plaintiff was able to extract a financial settlement from HTEH should not be equated to having provided a substantial benefit to AIA Services. It is well recognized that the focus in a fee request arising out of derivative lawsuit should not be upon the amount recovered but whether the corporation received substantial non-monetary benefits of the litigation. *Kaplan v. Rand*, 192 F.3d 60 (2d Cir. 1999). Thus, the Second Circuit in *Kaplan* recognized that "[i]t is by now also well established that an award of counsel fees is only justified

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315] - 11**

where the derivative action results in a substantial non-monetary benefit to a corporation." *Kaplan*, 192 F.3d at 69.

The Third Circuit concluded likewise, holding that "[a] plaintiff should not receive a fee in derivative litigation unless the corporation, by judgment or settlement, receives some of the benefit sought in the litigation or obtains relief on a significant claim in the litigation." *Zucker v. Westinghouse Elec. Corp.*, 265 F.3d 171, 176 (3d Cir. 2001). In *Zucker*, the derivative plaintiff's request for attorney fees was denied where he was unable to demonstrate that the corporation "was better off because of the institution and settlement of the derivative litigation than it would have been if the litigation had not been brought in the first place." *Id.,* 265 F.3d at 177. Accordingly, in order to claim entitlement to attorney fees, "a substantial benefit must be something more than technical in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest." *LeVanger v. Highland Estates Props. Owners Ass'n*, 80 P.3d 569, 576 (Utah 2003).

In this case, Plaintiff cannot demonstrate that AIA Services is better off because of the litigation and the settlement with HTEH than it would have been without either of these events. Plaintiff initiated this lawsuit seeking $90 million in damages as a result of the numerous allegations of malfeasance by the named Defendants and yet determined to settle the case with the only defendant with any meaningful financial resources in view of its insurance coverage for $1.4 million. This $1.4 million dollar settlement has come at the expense of between nearly $975,000 and $3.3 million in legal fees and costs and with Plaintiff's promise to return AIA Services

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315] - 12**

"innocent" shareholders approximately $400,000 - less than a third of the settlement total.  Rather than a benefit, the foregoing establishes that AIA Services is not better off as a result but is actually at a clear loss as a consequence of Plaintiff and his chosen counsel's actions.

Moreover, the settlement does not provide any non-monetary benefit to AIA Services. It achieves none of the relief sought but instead promises more of the same – a scorched earth litigation pursued by a sole indigent shareholder represented by an attorney with a now openly acknowledged existing and significant hard cost financial commitment in excess of $400,000 to the case.  It certainly should not be overlooked that Plaintiff acknowledges that despite fourteen years of litigation involving multiple matters across multiple jurisdictions that no other similarly situated shareholder to Plaintiff has sought involvement in this case or pursued independent litigation.

Moreover, it should also be noted that Plaintiff's counsel acknowledged that one of the considerations supporting the approval of the settlement with HTEH is the settlement eliminates the risk of a fee award[5] against his indigent client.[6]  (Dkt. 1214-1 at page 4.)  This Court should give due consideration to the fact that Plaintiff's failure to comply with the clear pre-suit demand requirements does indeed make AIA Services entitled to an award of fees and costs against him

---

[5] It is unclear what other risk of fees Plaintiff, or AIA as a consequence of Plaintiff's actions as the purported derivative plaintiff, is subject to from HTEH. The parties are unaware of any claim by HTEH for unpaid fees resulting from their representation that ceased nearly a decade ago. Thus, one can only assume that Plaintiff is referring to HTEH release of the $6,975.00 sanction awarded against Plaintiff in its favor for his discovery failings. (Dkt. 777.)

[6] In addition to the statutory basis for the imposition of fees and costs against an unsuccessful derivative plaintiff, AIA Services Bylaws expressly provide for liability in this circumstance. AIA Bylaws at Section 11.11. *See* Declaration Of Bradley S. Keller In Support Of The Hawley Troxell Defendants' Motion For Summary Judgment [Dkt. 1079] at Exhibit 20.

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315] - 13**

under Idaho Code Section 30-29-746(b).  *See McCann v. McCann*, 138 Idaho 228, 237, 61 P.3d 585, 594 (2002) (award of attorney fees 30-1-746 appropriate where case dismissed after Plaintiff's multiple failures to comply with the pre-suit derivative demand requirement).  In addition, as made evident by this Court's ruling as to Third Party Defendant Reed Taylor's request for Advancement of Fees, the dismissal of the derivative claims against the Individual Defendants triggers the mandatory indemnification obligations of AIA Services pursuant to Idaho Code Section 30-29-852.[7] Thus, in view of Plaintiff's acknowledged indigency, to award fees and costs to Plaintiff's attorney would work as a substantial detriment to AIA Services as it would be left holding a bill incurred by the Plaintiff for which Plaintiff openly admits AIA Services will not be able to recover for him.

The fully developed record establishes if there were to be any assertion of unjustness in this case, it would be to permit a party to wreak havoc upon AIA Services for seventeen years and then walk away from the destruction left in his wake with only his attorney's pocket filled.  Rather than provide a substantial benefit to AIA Services, Plaintiff has worked a significant detriment upon AIA Services which an approval of any amount of attorney fees and costs would only further exacerbate.  As such, Plaintiff cannot demonstrate the presence of a substantial benefit as required by Idaho Code Section 30-29-746 and the request for fees should be denied.

**C.    Plaintiff Is Not Entitled to a Recovery Under the Common Fund Theory of Recovery.**

---

[7] "A corporation shall indemnify a director who was wholly successful, on the merits or otherwise, in the defense of any proceeding to which the director was a party because he or she was a director of the corporation against expenses incurred by the director in connection with the proceeding."

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315] - 14**

The preceding analysis forecloses Plaintiff's entitlement to any award of attorney fees and costs. However, Plaintiff's assertion that separate and apart from Idaho Code Section 30-29-746 he is entitled to forty-percent recovery of the gross recovery under a common fund theory likewise fails.

Firstly, although Plaintiff has cited to Idaho law with regard to the common fund doctrine, Idaho has not extended the common fund theory of recovery beyond the context of insured and insurer. *Lopez v. Farm Bureau Mut. Ins. Co.*, 148 Idaho 515, 518, 224 P.3d 1104, 1107 (2010); *Boll v. State Farm Mut. Auto. Ins. Co.*, 140 Idaho 334, 342, 92 P.3d 1081, 1089 (2004); *Wensman v. Farmers Ins. Co.*, 134 Idaho 148, 151, 997 P.2d 609, 612 (2000).

Secondly, as the Ninth Circuit has recognized, the common-fund exception to the application of the American Rule to attorney fee requests "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). *See also, Sobel v. Hertz Corp.,* 53 F. Supp. 3d 1319, 1326 (D. Nev. 2014). While rooted in principles of unjust enrichment, a court considering the application of the common fund doctrine must ensure that "the beneficiaries are expected to pay litigation costs <u>in proportion to the benefits that the litigation produced for them</u>." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 770 (9th Cir. 1977) (*emphasis added*). *See also, Winston & Strawn LLP v. FDIC*, 894 F. Supp. 2d 115, 127 (D.D.C. 2012) (stating "'[T]he unarticulated threshold requirement for application of the common-benefit doctrine is that the claimant must enjoy some form of success on the merits of the litigation.'"). Therefore, "[t]he overall result and benefit to the class from the litigation is the most

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315] - 15**

critical factor in granting a fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007). The foregoing establishes that AIA Services has certainly not been benefited by this over decade long litigation nor could it be said to be unjustly enriched. To the contrary, AIA Services has been unjustly depleted by this litigation.

Third, it should be noted that Plaintiff himself is not even proposing a "common fund" for the relief he requests. To the contrary, as should be evident by the repeated use of the phrase, Plaintiff only seeks recovery for the individuals he deems to be "the innocent shareholders" of AIA Services.  As Plaintiff must admit, this list of "innocent shareholders" excludes more than just Mr. Taylor but also any other shareholder who has not expressly allied themselves with Mr. Miesen. (Dkt. 1246-1.) Additionally, before any funds could be distributed to shareholders, "innocent" or otherwise, the debts of AIA Services must first be satisfied. Yet similar to Plaintiff's arbitrary delineation of "innocent" shareholders, Plaintiff's counsel has made known his position about the priority or legitimacy of debts making clear that his other client, the holder of Class A shares, is paramount and then dismissing other debts. Thus, there is no common fund proposed by Plaintiff and as a consequence, the assertion of a recovery under the common fund doctrine is incongruous with his stated litigation positions.

Fourth, Plaintiff's claim for a recovery under the common fund theory is inconsistent with established Ninth Circuit authority on the subject.  "Although statutory awards of attorneys' fees are subject to "lodestar" calculation procedures, a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery."  *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). In this regard it has been long held by the Ninth Circuit that

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315] - 16**

under the percentage of recovery approach twenty-five percent of the recovery is the "benchmark." *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). *See also, Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.),* 654 F.3d 935, 942 (9th Cir. 2011) (recognizing that "courts typically calculate 25% of the fund as the "benchmark" for a reasonable fee award"); *In re Wells Fargo & Co. S'holder Derivative Litig.,* 445 F. Supp. 3d 508, 519 (N.D. Cal. 2020) (stating that "[f]or more than two decades, the Ninth Circuit has set the "benchmark for an attorneys' fee award in a successful class action [at] twenty-five percent of the entire common fund.")

However, "when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." *In re: Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result, the trial court must assure itself that the attorney fees are "not unreasonably high, so as to ensure that the class members' interests were not compromised in favor of those of class counsel." *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003).

In this case, even if entitled under the common fund theory, Plaintiff has made no effort to demonstrate why this Court should depart from the established benchmark of 25% given the present posture of the case even if an award of fees were found to be appropriate.[8] Moreover, for all the reasons identified above as to why it cannot be said that Plaintiff has conferred a substantial benefit to AIA Services those same reasons support the conclusion that Plaintiff's counsel should not be awarded fees under the common fund theory. Once again, Plaintiff has waged a seventeen-

---

[8] It should also be recognized that Plaintiff as part of this request has not submitted the actual written retainer agreement supporting his assertion as to the nature of the fee agreement nor has he provided any substantiation for his claim that he has committed 4,000 hours exclusively to this litigation.

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315] - 17**

year litigation that has tapped the resources of AIA Services and now seeks a significant recovery at its expense. To award expenses in any amount would work a substantial unfairness to AIA Services. *See e.g., Kennedy v. Nicastro*, 546 F. Supp. 267, 268 (N.D. Ill. 1982) ("Lawsuits can hardly be viewed as successful from the plaintiffs' perspective if their principal result is to generate not any recovery for plaintiffs, but rather funds out of which plaintiffs' lawyers get paid."); *Lewis v. Newman*, 59 F.R.D. 525, 529 (S.D.N.Y. 1973) (Recognizing that court should scrutinize fee request of derivative plaintiff where "the principal beneficiary is the attorney representing the plaintiff and not the corporation"); *United Operating Co. v. Karnes*, 482 F. Supp. 1029, 1032 (S.D.N.Y. 1980) (finding it "hard to justify" derivative plaintiff fee request where "the litigation result in this case was to march up the hill, and then to turn and march down again …")

Thus, Plaintiff should not be entitled to a recovery under the common fund theory.

**D.      Plaintiff has not Demonstrated Entitlement to the Costs Sought.**

Aside from the issues that should prevent Plaintiff's entitlement to attorney fees and costs entirely as addressed above, the AIA Entities, the Individual Defendants and CropUSA make an objection to the nearly $400,000 in costs sought by Plaintiff. The record establishes that in no sense is Plaintiff a prevailing party, which is the predicate demonstration for an award of costs. Fed.R.Civ.P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party.") Plaintiff is in no sense the prevailing party in this matter. The entirety of Plaintiff's claims against HTEH, AIA Services, the Individual Defendants, and the CropUSA Entities have been dismissed with prejudice. Although Plaintiff has been able to obtain a financial settlement with HTEH despite this

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315] - 18**

complete loss, it has done so with no acknowledgment of fault by HTEH and without obtaining any substantive relief in this matter. Rather, even in the face of the settlement, Plaintiff faces the task now of seeking to obtain the reversal of this Court's Order – a relief which the Ninth Circuit has already previously rejected in the case of *Miesen v. Munding*, 822 F. App'x 546, 2020 U.S. App. LEXIS 24053, 2020 WL 4364015 (9th Cir. 2020). Thus, Plaintiff's attempt to impose the entire costs of his chosen litigation strategy upon AIA Services, the entity against which Plaintiff's claims have been dismissed, is simply inappropriate.

Moreover, Plaintiff has not cited to any rule or provision which would allow the recovery of any of the expenses to which he seeks as "costs." Federal Rule of Civil Procedure 54 only refers to "costs" to the prevailing party, however the only costs permitted for recovery, absent statutory or contractual provision otherwise, are those identified in 28 U.S.C. § 1920 which doesn't identify any of the items that Plaintiff seeks compensation at AIA Services expense. *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S. Ct. 2494, 2499 (1987) (holding absent explicit statutory or contractual authorization "federal courts are bound by the limitations set out in 28 U. S. C. § 1821 and § 1920."); *Phila. Mortg. Tr. v. Touche Ross & Co.*, 930 F.2d 306, 310 (3d Cir. 1991) (holding that as costs are defined by 28 USC 1920, prevailing party could not recover the costs of party's expert witnesses); *Winniczek v. Nagelberg*, 400 F.3d 503, 504 (7th Cir. 2005) ("Fed. R. Civ. P. 54(d) …allows only those items to be taxed that are listed in the costs statute, 28 U.S.C. § 1920.")

Finally, the Ninth Circuit has recognized that the Court should not separate from its consideration the settlement as separate and apart from an award of attorney fees, but rather as a

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315] - 19**

package deal. *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 943 (9th Cir. 2011). Thus, in considering Plaintiff's request for expenses in the amount of $398,787.49 along with attorney fees in the amount of $560,000, the Plaintiff is essentially requesting an award of nearly $1 million ($958,797.49); an amount certainly far in excess of the 25 percent benchmark without any justification. Thus, even if Plaintiff can prove himself to be a prevailing party to have a claim for an award of costs, and is entitled to recover costs beyond those provided by 28 USC 1990, this Court should not permit Plaintiff to obtain a total recovery that is essentially is two-thirds recovery to Plaintiff.

With that said, a few specific objections to certain categories of costs will be briefly noted here. At the outset, Plaintiff has not provided this Court with any substantiation of the costs asserted with regard to each and every item sought and, consequently, each and every proffered cost should be rejected.

**Experts Fees**. Plaintiff is correct to expect an objection to the assertion that he should be entitled to recover the fees allegedly incurred for Mr. McDermott (approximately $240,000) as well as Mr. Hile (approximately $30,000). (MIS at 13; Dkt. 1214-5.) Given the reasons for their exclusion, Plaintiff's futility should not be a cost to be suffered by the proper recipient of the funds – AIA Services.

**Discovery Master Fees**. There is no doubt Mr. Lombardi undertook a herculean task and should be paid for his efforts – he certainly has been by the other parties to the litigation. However, an objection is made to impose the Plaintiff's share of these costs on AIA Services where the record makes clear that the majority of the costs were incurred as a consequence of Plaintiff's

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315] - 20**

unsuccessful efforts, constant appeals, and repeated acts which, as found by the Discovery Master himself, were counterproductive to the efficient and inexpensive use of the discovery master process. (Dkt. 662 at 4.)

**Electronic Research**. Plaintiff also seeks the recovery of $12,000 for electronic research. (Dkt. 1242-2 at 29.)  However, this request should be denied as Plaintiff has failed to demonstrate that these legal research costs are the sort typically billed separately to the client and that the fees are reasonable and necessary. *See Wolfe v. Allstate Prop. & Cas. Ins. Co.*, No. 1:18-cv-00408-CWD, 2022 U.S. Dist. LEXIS 82703, at *26 (D. Idaho Feb. 7, 2022) (request denied where plaintiff's request for electronic research was nothing more than the gross amount billed).

**Independent Contractor Paralegal Fees**. Plaintiff also requests the recovery of "over $60,000" to pay an independent contractor paralegal but presents no supporting evidence of this cost. (Dkt. 1242-2 at 27.) This request in particular should be excluded for lack of substantiation, but moreover, because Plaintiff simply cannot have it both ways, *to wit* claim recovery of legal fees under a contingency fee arrangement while claiming reimbursement of paralegal fees presumably on an hourly basis.  *See also, Hines v. Hines,* 129 Idaho 847, 855, 934 P.2d 20, 28 (1997) ("Fees for paralegal services clearly are not contemplated as awardable attorney's fees or costs under I.R.C.P. 54(e)(3).")

**Interest**.  Plaintiff also makes the astounding request for the inclusion of interest at 12% for all the costs incurred by his counsel in the total amount of an estimated $75,000. (Dkt. 1242-2.) There is simply no authority for this claimed cost.

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315]** - 21

**Mediation**.   After imposing upon the Defendants the use of a San Francisco based mediator, which mediation required all parties to travel and lodge in San Francisco, and thrusting more than half of the $24,000 mediator fee upon the AIA Entities, CropUSA Entities, and the Individual Defendants, the Plaintiff should not be enabled to shuck his share of these costs.

**E.      Plaintiff is Not Entitled to a Charging Lien.**

Based on the foregoing, Plaintiff is not entitled to an award of attorney fees or costs. As such, Plaintiff is not entitled to a charging lien, even if appropriate in this circumstance, as against the funds in the Court's registry.

**F.      Plaintiff is Not Entitled to a Hearing with Live Testimony.**

Finally, Plaintiff requests that this Court hold a hearing to take testimony as Plaintiff's request for attorney fees. However, it should be noted that what Plaintiff seeks is not an evidentiary hearing as to the attorney fees and costs Plaintiff requests, but rather the attorney fees and costs for which Plaintiff implicitly acknowledges AIA is statutorily obligated to indemnify the Individual Defendants. There is no compelling reason for this Court to entertain Plaintiff's desire for what amounts to a trial on issues which are not germane to Plaintiff's own entitlement to attorney fees and costs. Plaintiff's fee request is premised upon the unsubstantiated assertion of a forty-percent contingency fee arrangement and the representation of 4,000 hours exclusively committed to the case and the legal theories that Plaintiff asserts support an award under such proof and circumstance.  An evidentiary hearing is not only not appropriate in this circumstance, but would instead be just another example of Plaintiff's wasteful and wanton disregard of this Court's and the parties' time and expense.

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315]** - 22

**CONCLUSION**

Based upon applicable law and the facts presented, Plaintiff is not entitled to an award of attorney fees and costs under any theory of law.

DATED This 2nd day of July, 2025.

JONES ♦ WILLIAMS ♦ FUHRMAN ♦ GOURLEY, P.A.

 /s/   Daniel Loras Glynn
DANIEL LORAS GLYNN
Attorneys for Individual Defendants and CropUSA


TROUT & JONES, PLLC


/s/ Kim J. Trout
Kim J. Trout
Attorney for Defendants AIA Services Corporation
and AIA Insurance, Inc.

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315] - 23**

**20-ER-5242**

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of July, 2025, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF System.

_/s/ Daniel Loras Glynn_
Daniel Loras Glynn

**JOINT MEMORANDUM OF "AIA ENTITIES", "INDIVIDUAL DEFENDANTS" AND "CROPUSA ENTITIES" IN OPPOSITION TO PLAINTIFF DALE L. MIESEN'S MOTION TO APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS [DKT. 1315] - 24**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
10900 N.E. 4th St., Suite 2300
Bellevue, WA  98004
Telephone: (425) 591-6903
Email: rod@roderickbond.com

ANDREW SCHWAM, ISB NO. 1573
ANDREW SCHWAM LAW FIRM
705 SW Fountain Street
Pullman, WA 99163-2128
Telephone: (208) 874-3684
Email: amschwam@turbonet.com

Attorneys for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.; <br><br> Plaintiff, <br><br> **v.** <br><br> CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 1:10-cv-00404-DCN <br><br> PLAINTIFF DALE L. MIESEN'S RESPONSE TO JOINT MOTION FOR AWARD OF FEES AND COSTS  **Dkt. 1314** |

MIESEN'S RESPONSE TO JOINT MOTION FOR FEES & COSTS  **Dkt. 1314**  - i

20-ER-5244

20-ER-5245

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; R. JOHN TAYLOR, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual,

          Defendants/Third-Party Plaintiffs,

      **v.**

REED TAYLOR, an individual,

          Third-Party Defendant.

REED TAYLOR, an individual,

          Third-Party Defendant/ Counterclaimant,

      **v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

          Counterdefendants.

MIESEN'S RESPONSE TO JOINT MOTION FOR FEES & COSTS  **Dkt. 1314**  - ii

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................... 1

II.     RESPONSE TO "INTRODUCTION" ............................................................... 2

III.    ARGUMENT....................................................................................................... 3

        A.      The Defendants are not entitled to any attorneys' fees, costs or indemnity. .......... 3

                1.      The overarching legal standards. ............................................................. 3

                2.      The Defendants are not entitled to fees and costs under I.C. § 30-29-746(2) because this proceeding was not commenced or maintained without reasonable cause and not pursued for any improper purposes. ..... 4

                3.      The Defendants are not entitled to an award of attorneys' fees or costs under I.C. § 12-120(3) because that statute does not apply to this derivative action...................................................................................... 9

                4.      Defendants should not be awarded any costs under federal law. ............. 17

                5.      Defendants' request for 43% of any award to be paid by Donna Taylor.................................................................................................... 18

                6.      The Individual Defendants are not entitled to any indemnity................... 19

IV.     CONCLUSION................................................................................................... 20

CERTIFICATE OF SERVICE .................................................................................... 21

Plaintiff Dale L. Miesen ("Miesen") responds to the joint motion for fees and costs by the Individual Defendants, CropUSA Defendants and/or AIA Entities ("Defendants") (Dkt. 1314):[1]

## I.    INTRODUCTION

"Devised as a suit in equity, the purpose of the derivative action was to place in the hands of [Miesen] a means to protect the interests of the [the AIA Entities] from the misfeasance and malfeasance of 'faithless directors and managers.' " *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (citation omitted) (alterations added).  (Dkt. 211.) Yet, over the past five years, equity has been elusive for Miesen and over 50 other minority shareholders, 401(k) plan participants, and the ESOP participants. (Dkts. 1098-4–1098-7.) While this case was proceeding, other courts and government agencies have been adjudicating John Taylor's misconduct. For example, one court found John Taylor committed "intentional fraud" as President of AIA Services. (Dkt. 1082-4 at 12.) The Department of Labor found John Taylor, "as a fiduciary, [he] breached [his] obligations to the [AIA Services 401(k)] Plan and violated several provisions of . . . ERISA." (Dkt. 1260-9 at 1.) Another court found John Taylor unlawfully withheld payroll taxes under 26 U.S.C. § 6672. *Taylor v. United States*, No. 2:17-CV-00410-SAB, 2023 WL 6057389, at *4 (D. Idaho July 12, 2023). Yet another court found "Crop USA's president was a man named John Taylor, who was later determined to have improperly spent the loan proceeds on personal expenses and business expenses unrelated to crop insurance payments . . ." (Dkt. 229-7 at 5.)

Meanwhile, the Individual Defendants (but primarily John Taylor) engaged in numerous acts of unlawful misconduct for over twenty years—refusing to comply with any fundamental corporate governance and even refusing to properly elect and fully seat a board or hold any annual

---

[1] Miesen will use the same definitions for the parties previously used by this Court. (Dkt. 1238 at 2 n.2–4, at 4 n.5.) When citing to page numbers in specific docket numbers, Miesen will cite to the blue page numbers affixed by the clerk at to the top of each page.

MIESEN'S RESPONSE TO JOINT MOTION FOR FEES & COSTS  **Dkt. 1314**  - 1

or special shareholder meetings since 2012—while the AIA Entities' funds, assets and credit were being diverted to fund competing businesses and other improper uses even after this case was filed. (E.g., Dkts. 1, 211, 858-1, 1108-3, 1260-8 at 277–453.) This Court has never found that the Defendants have acted lawfully or properly—nor could it. (E.g., Dkts. 211, 1111, 1112, 1123, 1203, 1245, 1301.) There has been no ruling on the merits of Miesen's case, but his case has been dismissed based on technical arguments. *Id.* The effect of those rulings is that the Defendants have been protected and escaped the consequences of their undeniably wrongful behavior.

Thus, it was not surprising that the Defendants would take the remarkable step of requesting nearly $1 million in attorneys' fees and costs—funds that could have been used to settle this case many years ago—by once again disregarding their misconduct. (Dkt. 1314.) The Defendants' motion presents this Court with one last opportunity to prevent the Defendants from being further enriched by their misconduct. The Defendants deserve nothing.

For the reasons stated below, the Defendants are not entitled to any fees or costs under I.C. § 30-29-746 or I.C. § 12-120(3). And, even if they were, this Court should exercise its discretion to deny any award of fees and costs based on their misconduct and because the Defendants have never prevailed on the merits as to Miesen's derivative claims—they won on the Hawley Troxell Defendants' technical arguments. (Dkts. 211, 1067.)

## II.    RES ONSE TO "INTRODUCTION"

Defendants and their attorneys disregard their misconduct and misstate the facts and the law. (Dkt. 1314 at 2–11.) Their improper "personal attacks recall an oft-quote adage: '. . . If the law and the facts are against you, pound the table and yell like hell.' " *Dodd v. Jones*, 566 P.3d 379, 409 (Idaho 2025). Contrary to their arguments, the record confirms that Miesen's attorneys have been consistent, not abusive and largely successful in motion practice. The problems have

MIESEN'S RESPONSE TO JOINT MOTION FOR FEES & COSTS  **Dkt. 1314** - 2

been with the Defendants and their attorneys advocating for the interests of the Individual

Defendants and their entities by taking positions against the interests of the AIA Entities, thwarting

discovery, failing to respond to discovery, failing to produce documents, not preparing for Rule

30(b) depositions, failing to comply with fundamental corporate governance (before and after this

case was filed), and misconstruing prior motions and prior judges' decisions (including decisions

acknowledging Miesen's direct claims and rejecting prior challenges to the adequacy of the

demands). (*See generally* Dkts. 1–1314; App. A.) As seen in the attached Appendix A, after

excluding two denials later reversed and one since Mr. Glynn responded late (Dkt. 704), Miesen's

attorneys have lost only thirteen or 22.4% of their 58 substantive motions (motions for extensions

of time, extra pages and other minimal matters have been excluded). *Id*. Miesen will address more

of the Defendants' misstatement of the facts, the law, and procedural history below.

### III.    <u>ARGUMENT</u>

**A.  <u>The Defendants are not entitled to any attorneys' fees, costs or indemnity.</u>[2]**

   **1.  The overarching legal standards.**

In diversity cases, as here, Dkt. 211 at 5–10, the decision regarding attorneys' fees

(including the method of calculating fees) and substantive legal issues are governed by state law

(including prejudgment interest). *Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d

1016, 1020–21 (9th Cir. 2003). Unless a substantive state law authorizes an award of costs (e.g.,

the common fund doctrine or I.C. § 30-29-746), federal law applies for cost requests. *Id*. at 1022;

*Sarens USA, Inc. v. Lowery*, 525 F. Supp. 3d 1257, 1268 (D. Mont. 2021).

" 'Awarding attorney fees and costs is within the discretion of the trial court . . .' " *Precise*

*Innovations, LLC v. Aerospace Engineering and Support, Inc.*, 753 F. Supp. 3d 1180, 1187 (D.

---

[2] This response is based on the present posture of this case, i.e., that Miesen's claims were
derivative. (Dkts. 1301.) Miesen reserves the right to change positions, i.e., if he prevails on appeal.

MIESEN'S RESPONSE TO JOINT MOTION FOR FEES & COSTS  **Dkt. 1314**  - 3

Idaho 2024) (citations omitted). "An award of attorney fees [and costs] under [I.C. § 30-29-742] is discretionary." *McCann v. McCann*, 61 P.3d 585, 595 (Idaho 2002) (alterations added).

Although the Model Business Corporation Act ("<u>Act</u>") was amended in 2015 and 2019 while this case was pending,[3] Miesen will cite to the 2015 Act because it applied at the time Miesen's Third Amended Complaint ("TAC") was filed. (Dkt. 211.) I.C. § 30-29-1703 (2015). However, Miesens citations to the 2015 Act shall include the corresponding Idaho Code sections in the 1997 and 2019 Acts. This Court must predict how the Idaho Supreme Court would decide any unsettled issues of Idaho law. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).

Verified complaints, such as the operative verified TAC here (Dkt. 211), are treated as "as an affidavit." *Laws v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003). Judicial notice should be taken of the court records cited herein and attached to the declarations relied upon. *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

**2. The Defendants are <u>not</u> entitled to fees and costs under I.C. § 30-29-746(2) because this proceeding was <u>not</u> commenced or maintained without reasonable cause and <u>not</u> pursued for any improper purposes.**

Defendants' arguments that attorneys' fees and costs should be awarded under I.C. § 30-29-746(2) misstates the facts, the case law, and the procedural history. (Dkt. 1314-1 at 6–10.)

On termination of the derivative proceeding the court may:

> (2) Order the plaintiff to pay any defendant's reasonable expenses, including counsel fees, incurred in defending the proceeding if it finds that the proceeding was commenced or maintained without reasonable cause or for an improper purpose;

I.C. § 30-29-746(2) (2015). "Derivative proceeding" is defined as "a civil suit in the right of a domestic corporation . . ." I.C. § 30-29-740 (2015). The case at bar is entirely a derivative action.

---

[3] 2015 Idaho Laws Ch. 243 (S.B. 1025); 2019 Idaho Laws Ch. 90 (H.B. 84).

MIESEN'S RESPONSE TO JOINT MOTION FOR FEES & COSTS  **Dkt. 1314**  - 4

This Court has ruled that Miesen made no direct claims leaving only derivative claims. (Dkt. 1301.)

Defendants' reliance on *McCann v. McCann*, 61 P.3d 585 (Idaho 2002), *Kugler v. Nelson*, 374 P.3d 571 (Idaho 2016), and *Miesen v. Munding*, 822 F. App'x 546 (9th Cir. 2020) (unpublished) is misplaced. (Dkt. 1314-1 at 6–10.)

In *McCann*, the plaintiff sent a derivative demand letter, and he filed suit ten days later thereby violating the 90 day waiting period required under I.C. § 30-1-742. 61 P.3d at 591. The district court stayed the case for 90 days to allow the 90 day waiting period to take place. *Id*. At the end of the stay, the plaintiff moved to amend the complaint by asserting new allegations not previously raised. *Id*. The district court found that the plaintiff had violated I.C. § 30-1-742 two times. *Id*. Thus, the district court awarded fees under I.C. § 30-1-746(2) because it "found that [plaintiff] repeatedly sought to circumvent the requirements of I.C. § 30-1-742." *Id*. at 595. That ruling was affirmed on appeal. *Id*. This is completely different from the case at bar in which Miesen served all of his derivative demands at least 90 days before filing any complaints.

In *Kugler*, "[t]he demand required under I.C. § 30-1-742 was not provided to the corporation and Rule 23(f)'s requirements regarding the form and allegations of the complaint have not been met in either the original or amended complaint." 374 P.3d at 577. The Idaho Supreme Court affirmed the award of fees under I.C. § 12-120(3) because "His causes of action relate to transactions between H & M, its shareholders, and Kugler for commercial purposes." *Id*. at 579. Attorneys' fees were never requested or awarded under I.C. § 30-29-746. *Id*. at 579–80.

In *Munding*, although the demands were found inadequate by a Washington court, Miesen served them over 90 days before filing suit against Munding, and Miesen otherwise complied with Rule 23.1. (Dkt. 1138 at 66–93, 111.) Importantly, the district court and the Ninth Circuit never awarded any fees against Miesen under I.C. § 30-29-746 or any other authority. (Bond Decl. ¶2.)

MIESEN'S RESPONSE TO JOINT MOTION FOR FEES & COSTS  Dkt. 1314 - 5

And the district court also never awarded any costs. *Id*.

Here, as a matter of law, Miesen maintained this derivative proceeding for meritorious purposes—to vindicate the rights of the innocent minority stakeholders who have received nothing for many years. Defendants' arguments misstate the facts and are meritless. (Dkt. 1314-1 at 2–10.)

**First**, unlike *McCann*, *Kugler*, and *Munding*, Miesen obtained a $1.4 million settlement from the Hawley Troxell Defendants and the discharge of a debt of $63,781.64 owed by the AIA Entities. (Dkts. 1242-3, 1260-11 at 1.) Through Miesen's efforts that $1.4 million settlement has grown to $1,520,474.88, and it continues to grow. (Dkts. 1267, 1271, 1315-6.) Miesen was also able to settle with GemCap to protect those funds from GemCap, and he extricated the AIA Entities from a debt of $26,620,874.10 owed to GemCap as of August 21, 2020. (Dkts. 1240-1, 1240-3, 1315-4 at 12.) The orders approving both settlements stated that "Miesen and his counsel have adequately represented the interests of other Securities Holders and the AIA Entities' interests." (Dkts. 1235 at 3, 1289 at 3.) Defendants never objected to those findings, and they are bound by them. As such, as a matter of law, this "derivative proceeding," I.C. § 30-29-746(2), which is defined as this entire "civil suit," I.C. § 30-29-740, was <u>not</u> unreasonably filed or pursued or brought for improper purposes.

**Second**, unlike *McCann*, *Kugler*, and *Munding*, the Defendants omit from their motion the fact that two prior judges, sitting by designation, declined to dismiss this case because the derivative demands were allegedly inadequate. (Dkts. 12-1 at 3–10, 17 at 11–12, 46, 185 at 3–8, 210 at 6–20.) The bulk of the parties' fees and costs were incurred during the time that the demands had been found to be adequate. (Dkts. 1–1202.) Then, almost 12 years after this case was filed and over five years after Judge Dale's decision, this Court dismissed Miesen's derivative claims. (Dkts. 1203.) This Court relied upon "changed circumstances" that were recent as a basis for its decision.

MIESEN'S RESPONSE TO JOINT MOTION FOR FEES & COSTS  Dkt. 1314  - 6

(Dkt. 1203 at 50.) Thus, the bulk of all of the attorneys' time on this case was spent while the derivative demands were considered adequate. Because recently "changed circumstances" caused this Court to find Miesen's derivative demands were inadequate, there is no evidence that Miesen commenced or maintained this action without reasonable cause or for any improper purposes. Thus, this Court should exercise its discretion to not award any fees or costs against Miesen.

**Third**, unlike *McCann* and *Kugler*, Miesen waited over 90 days after the demands were served before filing a complaint or any amended complaints, and he complied with Rule 23.1's pleading requirements. (Dkt. 211 at 57–60, 83.) Miesen never violated I.C. § 30-29-742 or Rule 23.1. This Court decided to dismiss Miesen's derivative claims because the demands were inadequate based on "changed circumstances" years after two prior judges had declined to do so.

**Fourth**, Miesen never sought to "reuse and re-label dismissed derivative claims as direct claims." (Dkt. 1314-1.) Miesen has consistently maintained that he also had direct claims in numerous filings and discovery responses—long before this Court's 2022 decision. (E.g., Bond Decl., Ex. A at 8 n.1; Dkts. 195-1 at 10, 211 at 6, 74–75, 475 at 9, 556-1 at 21, 556-21 at 4, 556-22 at 3, 576 at 17–19, 632 at 12, 803-5 at 8 & n.1, 1092 at 5–6, 1131 at 35, 1203, 1248, 1260-8 at 166–68, 272–74.) Judge Dale recognized that Miesen had pleaded direct claims in two different decisions. (Dkts. 210 at 31 & n.17, 263 at 6, 18, 20.) When addressing Miesen's ultra vires claims many years ago, Mr. Glynn's clients admitted: "statutes provide rules and remedies to guide that apply to causes of action such as derivative claims for breach of fiduciary duty **or for direct suits against a company to en oin acts**." (Dkt. 185 at 14 (emphasis added).) Once again, the case proceeded through the bulk of its life based on Judge Dale's rulings and thus there is no evidence that Miesen commenced or maintained this action unreasonably or for any improper purposes.

MIESEN'S RESPONSE TO JOINT MOTION FOR FEES & COSTS  **Dkt. 1314**  - 7

**20-ER-5253**

**Fifth**, contrary to the Defendants' arguments (Dkt. 1314-1 at 8 n.3, 12, 15–16) Miesen timely disclosed his expert witnesses, and expert testimony is <u>only</u> required for his legal malpractice claims and not any of his other claims against the Defendants. *Greenfield v. Smith*, 395 P.3d 1279, 1285 (Idaho 2017). In addition, this Court ruled that Messrs. Hile and Moran could testify because they were timely disclosed as rebuttal experts, and so Miesen proceeded with experts prepared to rebut the defendants' case. (Dkts. 941, 941-1, 1109, 1111.) Miesen's positions regarding his expert witnesses have not been improper. He legitimately fought to save his experts.

**Si th**, Miesen and his attorneys have not engaged in abusive litigation tactics—his attorneys have zealously tried to obtain recoveries for Miesen and other innocent stakeholders (and successfully did so). (Bond Decl. ¶4; Dkts. 1214, 1240, 1242, 1315.) To the contrary, Miesen did not even move for an award of attorney's fees for discovery motions to keep this case moving and prevent increased Discovery Master costs. (Bond Decl. ¶4; e.g., Dkts. 692, 704.) As discussed above, two prior judges declined to dismiss this case based on two prior challenges to the adequacy of the demands. Further, the record establishes that Miesen and his counsel were largely successful in bringing motions and defending against motions in this complex and hotly litigated case. (Dkts. 67–1315; App. A.) As seen in the attached Appendix A, of the 58 substantive motions filed by Miesen or his attorneys: (a) thirteen of the motions were granted in full, (b) seventeen of the motions were granted in part, (c) nine of the motions were denied as moot (three of which because relief had been granted), (d) sixteen of the motions were denied (two of which were later reversed by the Ninth Circuit and two more of which were denied but some relief was granted or available), and (e) two motions have not been decided. *Id*. Thus, excluding the two denials later reversed and the one based on Mr. Glynn responding late (Dkt. 704), Miesen and/or his attorneys have only lost thirteen or 22.4% of their 58 substantive motions. Defendants disregard their failure to comply

MIESEN'S RESPONSE TO JOINT MOTION FOR FEES & COSTS  **Dkt. 1314**  - 8

with discovery or prepare for Rule 30(b) depositions. (E.g., Dkts. 470, 476, 533, 649, 617, 704, 925, 939, 953, 1019.) Notably, the Defendants never brought a single motion to compel against Miesen, nor were they ever awarded any fees.

**Seventh**, even if the Defendants were entitled to fees and costs under I.C. § 30-29-746(2), they are not entitled to an award of fees and costs because they failed to segregate fees and costs.

> When a party has prevailed on claims for which it is statutorily entitled to an award of attorney's fees and claims upon which it is not, this Court has held "that the prevailing party must apportion the fees between the claim upon which it was entitled to recover . . . and the claim upon which it was not." "Where fees were not apportioned between a claim that qualifies under [a statute] and one that does not, no fees are to be awarded."

*Knudsen v. J.R. Simplot Co.*, 483 P.3d 313, 330 (Idaho 2021) (citations omitted) (alterations added). Despite having successfully argued that an award of fees should be denied or reduced because he failed to segregate (Dkts. 1057, 1094, 1103, 1194, 1195, 1198, 1206), the Defendants fail to even segregate or apportion any fees or costs incurred in litigating their third-party claims against Reed Taylor, their defense of his ERISA claims, or the prosecution and defense of various cross claims that had been asserted with GemCap. (Dkts. 218, 276, 283, 290, 292.) The Defendants are foreclosed from being awarded any fees or costs. Miesen previously raised these issues, so the Defendants have no excuse for not segregating or apportioning. (Dkt. 1260 at 13–14.)

Accordingly, the Defendants are not entitled to fees or costs under I.C. § 30-29-746(2).[4]

3. **The Defendants are <u>not</u> entitled to an award of attorneys' fees or costs under I.C. § 12-120(3) because that statute does not apply to this derivative action.**

**First**, the commercial transaction statute does not apply because when a general statute exists along with a statute that is specific to the matter at hand, the specific statute must be applied. Since this Court found that Miesen raised no direct claims, here we have only a derivative action

---

[4] Although no costs should be awarded, Defendants improperly seek costs of $22,412 ordered to be advanced to Reed Taylor based on their third-party claims. (Dkts. 1314-12 at 44, 1317.)

MIESEN'S RESPONSE TO JOINT MOTION FOR FEES & COSTS  **Dkt. 1314**  - 9

and the question of attorneys' fees is controlled by the specific derivative action statute I.C. § 30-29-746. "[B]ecause section [30-29-746] is a specific statute providing for the award of attorney fees in proceedings [for derivative actions], Idaho Code sections 12–120(3) and 12–121, which are general statutes, do not apply." *First Federal Sav. Bank of Twin Falls v. Riedesel Eng', Inc.*, 301 P.3d 632, 638 (Idaho 2012) (applying the rule to a mechanics lien under I.C. § 45-513) (alterations added); *Willie v. Board of Trustees*, 59 P.3d 302, 307 (Idaho 2002). ("attorney fees are unavailable under § 12–120(3) for statutory claims only when the statute upon which the claim is brought includes its own attorney fees provision"). Applying this rule to I.C. § 30-29-746 makes sense. Derivative action plaintiffs, who bring the claims under I.C. § 30-29-740, *et seq.*, should not be penalized by a general statute because "[d]evised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.' " *Kamen*, 500 U.S. at 95 (citation omitted). Thus, I.C. § 30-29-746 applies to this derivative action— not I.C. § 12-120(3). Defendants are not entitled to any fees under I.C. § 12-120(3).

Although Miesen has established above that I.C. § 12-120(3) does not apply, Miesen will now turn to the Defendants' arguments analyzing I.C. § 12-120(3). Defendants' disregard the TAC, settled law, and two related cases, to incorrectly argue that attorneys' fee and costs should be awarded under I.C. § 12-120(3).[5] (Dkt. 1314-1 at 10–11.)

> . . . Idaho Code section 12-120(3) . . . provides a prevailing party reasonable attorney fees in civil actions where "the commercial transaction comprises the gravamen of the lawsuit." "There are two stages of analysis to determine whether a prevailing party could avail itself of I.C. § 12-120(3): (1) there must be a commercial transaction that is integral to the claim; and (2) the commercial transaction must be the basis upon which recovery is sought." Additionally, "[t]here must be a commercial transaction between the parties for attorney fees to be awarded."

---

[5] Once again, Defendants' attorneys violated I.R.C.P. 3.3(a).

MIESEN'S RESPONSE TO JOINT MOTION FOR FEES & COSTS  **Dkt. 1314**  - 10

*BrunoBuilt, Inc. v. Briggs Eng'g, Inc.*, 525 P.3d 1122, 1130 (Idaho 2023) (citations omitted). "I.C. § 12-120(3) cannot be invoked if the commercial transaction is between parties only indirectly related, i.e. [where] there was no transaction *between* the parties[.]" *Great Plains Equip., Inc. v. Nw. Pipeline Corp.,* 36 P.3d 218, 224 (Idaho 2001) (emphasis in original). In *BrunoBuilt*, the Idaho Supreme Court held that no fees could be awarded under I.C. § 12-120(3) for two reasons:

> "Section 12-120(3) does not apply because a commercial transaction is not the gravamen of BrunoBuilt's claims. **First, this is a tort action**. As a tort action, the construction agreement between BrunoBuilt and the Dempseys is not integral to the claim—it is only tangentially related. **Second, and closely related, is that there was no commercial transaction between BrunoBuilt and Briggs Engineering that forms the basis for recovery in this case**. Erstad Architects contracted with Briggs Engineering to complete civil engineering work on the property, not BrunoBuilt. BrunoBuilt likewise did not contract with Erstad (who designed the home). Erstad's transactional relationship was only with the Dempseys, as was BrunoBuilt's. **In sum, at its heart, this case bears no resemblance to the type of transactions we have held to be governed by section 12-120( 3 )**.

525 P.3d at 1130 (emphasis added). *BrunoBuilt* dictates that no fees should be awarded here.

Defendants disregard *BrunoBuilt*, *Great Plains* and other cases by relying solely on *Kugler*, 374 P.3d 571. In that case, all of the shareholders had entered into a "Stock Subscription and Cross Purchase Agreement (Shareholder Agreement)." *Id*. at 575. Kugler asserted four claims. *Id*. He asserted a claim alleging the "Defendants improperly redeemed Nelson's stock in violation of the Shareholder Agreement." *Id*. at 577. He also asserted a claim that the "Defendants improperly removed [him] from his position as a director" and asserted two other claims, one of which had a fraud allegation. *Id*. at 575. After the defendants prevailed, the district court awarded "attorney fees based on (1) the Shareholder Agreement, (2) the Settlement Agreement, and (3) Idaho Code section 12–120(3)." *Id*. at 579. On appeal, Kugler argued that the transactions were personal, not commercial. *Id*. The Idaho Supreme Court affirmed the award of fees because his "causes of action *relate to transactions between H & M, its shareholders, and Kugler*." *Id*. (emphasis added).

MIESEN'S RESPONSE TO JOINT MOTION FOR FEES & COSTS  Dkt. 1314  - 11

In *Taylor v. Taylor*, 422 P.3d 1116 (Idaho 2018), the Idaho Supreme Court awarded fees to Donna Taylor because there was a commercial transaction:

> In this case, Donna filed this lawsuit to enforce the terms of a commercial transaction (the 1996 PSA or alternatively, the 1995 Letter Agreement). The 1996 PSA is illegal, and fees cannot be awarded for attempting to enforce it. However, the 1995 Letter Agreement is not an illegal agreement. Because Donna has prevailed on appeal in enforcing the terms of a commercial transaction, she is entitled to an award of attorney fees limited to that portion of her appeal under section 12-120(3).

422 P.3d at 1128 (citation omitted). After awarding $27,907.89 in attorneys' fees and costs (Bond Decl., Ex. B), AIA Services and the Individual Defendants moved for reconsideration asserting:

> In this case, as in *Great Plains* the individual respondents did not enter into a commercial transaction with the appellant. Rather, the commercial transaction was between AIA and the Appellant, not the individual Respondents. Thus, any fees or costs awarded by the Court should be against AIA and not the individual respondents.

(Bond Decl., Ex. C at 3.) The Idaho Supreme Court agreed,[6] and amended its order to award attorneys' fees only against AIA Services. (Bond Decl. Ex. D.) This is because the commercial transaction, which provided the basis for Donna's claims, was between her and AIA Services only.

In *GemCap v. AIA Services* (where John Taylor was found to have committed fraud, Dkt. 1082-4), GemCap moved for an award of fees under I.C. § 12-120(3). Mr. Glynn asserted:

> . . . This conclusion is consistent with the long line of Idaho cases that have held that in order for a party to claim entitlement to attorney fees under Idaho Code 12-120(3) the commercial transaction must have been between the parties to the lawsuit. In this case, GemCap was not a party to either transaction which it sought by this action to void in order to obtain entitlement to the sale proceeds of the Lewis and Clark Plaza ("the Plaza") and hence it has no entitlement to fees under Idaho Code 12-120(3).
>       . . . .
> . . . However, the Idaho Supreme Court in *Great Plains Equip., Inc.*, affirmed the principle that in order to seek attorney fees under Idaho Code 12-120(3), the party seeking fees must demonstrate that "[t]he commercial transaction must be an actual basis of the complaint, that is, the lawsuit and the causes of action must be based on a commercial transaction, not simply a situation that can be characterized as a commercial transaction." *Great Plains Equip., Inc.*, 136 Idaho at 471, 36 P.3d at

---

[6] Donna Taylor did not oppose the motion. (Bond Decl. ¶5.)

MIESEN'S RESPONSE TO JOINT MOTION FOR FEES & COSTS  **Dkt. 1314**  - 12

**20-ER-5258**

223. "To hold otherwise would be to convert the award of attorney's fees from an exceptional remedy justified only by statutory authority to a matter of right in virtually every lawsuit filed." *Brower v. E.I. DuPont De Nemours and Co.*, 117 Idaho 780, 784, 792 P.2d 345, 349 (1990).

(Bond Decl., Ex. E at 3, 6 (emphasis in original). Mr. Glynn's other arguments also apply here. (*Id.* at 3–7.) Judge Brudie agreed and declined to award any attorneys' fees. (Bond Decl., Ex. F.) Judge Brudie's ruling was consistent with Mr. Glynn's arguments: "The Supreme Court has expressed that only parties to the commercial transaction at issue may recover fees pursuant to I.C. § 12-120(3)." (*Id.* at 3 (citation omitted).)

Here, even if I.C. § 12-120(3) applies, the Defendants are not entitled to any fees under I.C. § 12-120(3).

**Second**, the Defendants' request for attorneys' fees fails, as a matter of law, because there was not a single commercial transaction between Miesen and *all* of the Defendants, let alone *any* of the Defendants, that provides the basis for any of his claims in the TAC. (Miesen Decl. ¶3; Dkt. 211.) *BrunoBuilt*, 525 P.3d at 1130.  Defendants argue there "can be no dispute that this was a business transaction," Dkt. 1314-1 at 10, but they fail to prove that the transaction was between Miesen and *all* of the Defendants. Nor could they prove that because Miesen has never engaged in any commercial transactions with *any* or *all* of the Defendants. (Miesen Decl. ¶3.)

The only commercial transaction alleged by the Defendants is that "Miesen alleges he traded a book of business worth $500,000 in exchange for his common shares in AIA Services." Dkt. 1314-1 at 10.  This argument fails for two reasons. First, the transaction wherein Miesen was issued his common shares was *only* between Miesen and AIA Services. (Miesen Decl. ¶3.) Second, the transactions between Miesen and AIA Services to issue those shares occurred in the late 1980s and early 1990s, and those transactions were not the basis for any of Miesen's claims or relief asserted in the TAC. (Miesen Decl. ¶3; Dkt. 211.) Miesen's allegations in the TAC regarding

MIESEN'S RESPONSE TO JOINT MOTION FOR FEES & COSTS  **Dkt. 1314**  - 13

trading his book of business were made for the purpose of showing that he properly acquired his shares and owned them during all times relevant to this case to comply with Rule 23.1 and Idaho Code, and not for the purpose of setting out any commercial transaction claim. (Dkt. 211 at 60 ¶183.)

There are no shareholder agreements or redemption agreements that Miesen is a party to that forms the basis for any of his claims or relief. (Miesen Decl. ¶3; Dkt. 211.) There has not even been a shareholder meeting held for AIA Services since July 16, 2012. (Miesen Decl. ¶3) As the court in *A.C. & C.E. Investments, Inc. v. Eagle Creek Irrigation Co.*, 540 P.3d 349 (Idaho 2023) noted in its discussion pertaining to violations of the "Amended Articles and Amended Bylaws, it does not establish that a commercial transaction was the basis upon which recovery was sought. Rather, the former trust and the fiduciary duties flowing from it were the basis upon which recovery was sought." *Id*. at 366–67. This is identical to Miesen's case in which he asserts claims for breaches of fiduciary duties and not commercial transactions as the basis for his claims.

In sum, the Defendants "must do more than simply request attorney fees under section 12-120(3) to trigger its application; '[they] *must also* demonstrate a commercial transaction was the gravamen of each claim.' " *Greenbriar Estates Homeowners' Ass'n, Inc. v. Esposito*, 171 Idaho 862 (Idaho 2023) (citations omitted). That is a burden that the Defendants have not met.

**Third**, Miesen's action was primarily a tort action. (Dkt. 211.) *BrunoBuilt*, 525 P.3d at 1130. "The gravamen of this lawsuit is a tort. There is no basis under Idaho Code § 12–120(3) for an award." *Trees v. Kersey*, 56 P.3d 765, 775 (Idaho 2002). "[I]t is not enough for the claimed commercial transaction to be only 'tangentially involved' in the litigation. Therefore, [courts] look at the gravamen of the lawsuit, as well as the gravamen of each individual claim." *Genho v. Riverdale Hot Springs, LLC*, 560 P.3d 1041, 1054 (Idaho 2024). "Gravamen" is defined as "[t]he

substantial point or essence of a claim, grievance, or complaint." *Gravamen*, Black's Law Dictionary (12th ed. 2024).

Once again, even if the issuance of Miesen's common shares in the late 1980s and early 1990s or any of the other matters raised in the TAC qualified as a commercial transaction, they would not trigger a right to fees because they are only "tangentially involved." There is not a single commercial transaction alleged in the TAC that could qualify to be the "gravamen" of Miesen's TAC in order to trigger an entitlement to attorneys' fees under I.C. § 12-120(3). (Dkt. 211.)

To the contrary, Miesen's TAC asserted **(a)** tort claims for: (1) breaches of fiduciary duties, (2) aiding and abetting breaches of fiduciary duties, (3) legal malpractice, (4) fraud/fraudulent concealment/constructive fraud, (5) aiding and abetting and conspiracy of fraud, and (6) waste; **(b)** statutory claims for: (1) statutory relief including for ultra vires, and (2) violations of the Idaho Consumer Protection Act; **(c)** claims against only John Taylor for: (1) breach of his contract clause that said that he could not compete against AIA Services, but in fact opened a business to compete with AIA Services and (2) account stated; and **(d)** declaratory judgment relief. (See generally Dkt. 211 at 60–82.) None of those claims rely upon the transactions to issue Miesen his shares in the 1980s and 1990s. *Id.*

In sum, after considering the number of different total defendants (including those that have settled), the gravamen of Miesen's TAC was a tort action and a claim by claim analysis shows the gravamen of the focus of his claims are tort claims which also violated statutes. *Northwest Bec Corp. v. Home Living Service*, 41 P.3d 263, 270 (Idaho 2002). ("both claims are based in rights created by statute or tort. The district court properly denied the cross appellants attorney fees under I.C. § 12–120(3)."); *Genho*, 560 P.3d at 1057 ("it was the independent, tortious behavior of [Defendant] that caused his tort damages; nothing about the commercial transaction was part of

the elements of [plaintiff's] conversion claim."). Indeed, the real thrust of Miesen's claims was his tort claims for breaches of fiduciary duty and aiding and abetting of breaches of fiduciary duties. (Dkt. 211.) *Estate of Cornell v. Johnson*, 367 P.3d 173, 176–77 (Idaho 2016) (affirming the denial of fees because "the thrust of the . . . claims were torts . . . focused on . . . alleged breach of fiduciary duty and the damages that allegedly resulted from that breach.").

**Fourth**, the Defendants are foreclosed from arguing that an award of fees should be made on any particular causes of action for any particular Defendant because they have failed to segregate fees between any of the applicable Defendants and the corresponding claims. (Dkts. 1314-1–1314-11.) *Genho*, 560 P.3d at 1055 ("Where fees were not apportioned between a claim that qualifies under I.C. § 12-120(3) and one that does not, no fees are to be awarded."). Notably, the Defendants successfully challenged the amount of fees and costs that Reed Taylor should be advanced. (Dkts. 1094, 1103, 1194, 1195, 1198, 1206.) Yet, Defendants have made no effort to segregate and exclude fees incurred in: (a) prosecuting the third-party claims against Reed Taylor, (b) defending against Reed Taylor's ERISA counter claims, (c) prosecuting the cross claims against GemCap, (d) defending against GemCap's cross claims, or (e) their efforts to prevent Miesen from recovering from the Hawley Troxell Defendants and GemCap. (Dkts. 218, 276, 283, 290, 292, 215 at 28, 283 at 149, 366 at 35, 1315-2 at ¶¶21, 34, 58).) Defendants' failure to segregate is fatal to them. *Genho*, 560 P.3d at 1055.

**Fifth**, I.C. § 12-120(3) only provides for attorneys' fees. Contrary to the Defendants' arguments (Dkt. 1314-1 at 10–11), the text of I.C. § 12-120(3) that "the prevailing party shall be allowed a reasonable attorney's fee to be set by the court," confirms that I.C. § 12-120(3) does not provide an independent basis to award costs under Idaho law. Thus, the Defendants are not entitled to an award of costs under I.C. § 12-120(3).

MIESEN'S RESPONSE TO JOINT MOTION FOR FEES & COSTS  Dkt. 1314  - 16

**Si th**, although the foregoing demonstrates that Miesen's claims were not based on a commercial transaction, even if there was a claim based on a commercial transaction in the long TAC, the statute would not apply because "where there are multiple claims in an action, and only some qualify for a fee award under section 12-120(3), attorney's fees are properly denied if those claims are 'inseparably intertwined.'" *Day v. Idaho Transp. Dept.*, 533 P.3d 1227, 1245–46 (Idaho 2023) (citations omitted). Miesen's claims are inseparably intertwined. (Dkt. 211.)

Accordingly, the Defendants are not entitled to any fees or costs under I.C. § 12-120(3).

### 4.   Defendants should not be awarded any costs under federal law.

Although it does not appear that costs have been requested under federal law (Dkt. 1314-1), the Defendants are foreclosed from recovering taxable costs under federal law because they failed to timely and properly submit the required cost bill on the form required by the court, and their attorneys failed to meet and confer with Miesen's attorneys for the costs. (Bond Decl. ¶7; Dkt. 1314-12.) Loc. Civ. R. 54.1(a); Fed. R. Civ. P. 54(d)(1); *Blaine Larsen Processing, Inc. v. Hapco Farms, Inc.*, No. 97–0212–E–BLW, 2000 WL 35539979, at *14 (D. Idaho Aug. 9, 2000) ("It has long been a tradition in this district to hold counsel strictly to the Local Rules, especially regarding bills of costs. . . . [the court] shall DENY all costs . . ."). Further, none of the costs are taxable under federal law anyway. (Dkt. 1314-12.)  28 U.S.C. §§ 1920, 1921, 1922, 1923, 1924; *Sea Coast Foods, Inc. v. Lu-Mar Lobster and Shrimp, Inc.*, 260 F.3d 1054, 1061, 50 Fed. R. Serv. 3d 272 (9th Cir. 2001) ("[N]othing in 28 U.S.C.A. § 1920 provides for the cost of a mediator"). Defendants also improperly seek the $22,412 in expenses that this Court ordered to be advanced to Reed Taylor to defend against *their* third-party claims, which were dismissed and cannot be sought from Miesen. (Dkts. 218, 1206, 1314-12 at 44, 1317.)

**5.  Defendants' request for 43% of any award to be paid by Donna Taylor.**

Although this issue should be moot because no fees or costs should be awarded to the Defendants as stated above, their request for a 43% allocation of fees and/or costs against Donna Taylor is not properly before this Court. (Dkt. 1314-1 at 16–17.) Donna Taylor was voluntarily dismissed without prejudice on October 31, 2016, before the TAC was filed, because Defendants argued that she destroyed diversity after new parties were added. (Dkts. 138, 178, 211.) As everyone is aware, Donna Taylor passed away in 2023, and Jud Taylor is the Personal Representative of her Estate ("Estate"). (Dkt. 1282-1 at 4, 1282-2 ¶ 3, 1300 at 1 & 28.)

It is well-settled that "[t]he authority of the attorney to represent the deceased or her estate terminated upon her death." *In re Schwab*, 83 F.2d 526, 529 (9th Cir. 1936). Mr. Bond's representation of Donna Taylor terminated when she died, and he no longer represents her, nor does he or Mr. Schwam represent the Estate here. (Bond Decl. ¶8.) Defendants fail to offer any proof that the Estate was served with copies of Defendants' joint motion. (Dkt. 1314.) *See* Fed. R. Civ. P. 5. The Defendants have not even moved to substitute the Estate in place of Donna Taylor.

> A motion for substitution may be filed only by a party, by the executor or administrator of the decedent's estate, or, if the estate has already been distributed to the heirs, by them. *See* Fed. R. Civ. P. 25(a)(1). The decedent's lawyer may not file such a motion in his own name because he no longer has a client . . .

*Atkins v. City of Chicago*, 547 F.3d 869, 872 (7th Cir. 2008). Thus, if this issue is not rendered moot because no attorneys' fees or costs are awarded, this issue cannot be properly addressed by this Court or the parties until the Estate has been brought into this action and properly served.[7] At that time, presumably the Estate would retain Daniel Green as its independent counsel in this action since he also independently represented Donna Taylor for the settlement agreement with the

---

[7] Miesen's counsel takes no position either way on the merits of any course of action or whether such a course of action is permissible or would be timely. Miesen's counsel is merely pointing out the procedure that would need to be followed before this issue can even be addressed by this Court.

MIESEN'S RESPONSE TO JOINT MOTION FOR FEES & COSTS  **Dkt. 1314**  - 18

Hawley Troxell Defendants. (Dkt. 1242-3 at 13–14, 17.)

   6.   **The Individual Defendants are <u>not</u> entitled to any indemnity.**

   A corporation shall indemnify a director who was <u>**wholly successful**</u>, on the merits or otherwise, in the defense of any proceeding to which he was a party because he was a director of the corporation against reasonable expenses incurred by him in connection with the proceeding.

I.C. § 30-29-852. " 'Proceeding' means any threatened, pending or completed action, suit or proceeding . . ." I.C. § 30–29–850(8) "Wholly" is defined as meaning "[n]ot partially; fully; completely." Wholly, Black's Law Dictionary (12th ed. 2024).

   Here, this Court should decline to order the AIA Entities to indemnify the Individual Defendants for the time that they served as directors.

   **First**, despite having successfully argued that an award of fees should be denied or reduced because he failed to segregate (Dkts. 1057, 1094, 1103, 1194, 1195, 1198, 1206), the Defendants fail to even segregate or apportion any fees or costs incurred in litigating their third-party claims against Reed Taylor, their defense of his ERISA claims, or the prosecution and defense of various cross claims that had been asserted with GemCap. (Dkts. 218, 276, 283, 290, 292, 1314.) *Knudsen*, 483 P.3d at 330. They have also failed to apportion or segregate fees and costs between the parties who are not entitled to any indemnity, the CropUSA Defendants, JoLee Duclos, and the AIA Entities. (Dkt. 1314.) *Smith v. Mitton*, 104 P.3d 367, 375 (Idaho 2004) ("Hackett mandates segregation of fees for multiple clients . . ."). Thus, the Defendants are foreclosed from being awarded any fees or costs under the indemnity statute because they have failed to segregate or apportion any fees or costs. The failure to apportion or segregate is particularly egregious here because the Defendants had successfully asserted that Reed Taylor's advance of costs should be drastically reduced or denied because he allegedly failed to properly segregate fees. In addition, Miesen previously raised these issues back in 2022. (Dkt. 1260 at 13–14.) Thus, the Individual

MIESEN'S RESPONSE TO JOINT MOTION FOR FEES & COSTS  Dkt. 1314  - 19

Defendants are not entitled to any indemnity.

**Second**, John Taylor, Connie Taylor Henderson and James Beck have not been wholly successful because Reed Taylor's ERISA claims are still pending against them. (Dkt. 276.) This is another reason to defer the determination of this issue.

**Third**, the Individual Defendants have not been wholly successful against Miesen. As discussed in Section A(2) above, the Individual Defendants were not wholly successful because they fought Miesen in his successful efforts to obtain recoveries and settlements from the Hawley Troxell Defendants and GemCap.

**Fourth**, because derivative actions are "[d]evised as a suit in equity," *Kamen*, 500 U.S. 90 at 95, and "indemnity is an equitable principle." *Weaver v. Searle Bros.*, 927 P.2d 887, 890 (Idaho 1996), this Court should exercise its discretion and decline to order indemnification for the Individual Defendants based on the egregious facts of this case as alleged in the verified TAC. (Dkt. 211.) Moreover, the Individual Defendants only prevailed on Miesen's derivative claims based on the Hawley Troxell Defendants' motion to dismiss, which they untimely joined. (Dkts. 1067, 1090.) Thus, they have not prevailed in any meaningful sense because the merits of Miesen's claims have never been determined.

**Fifth**, because Miesen is focused on opposing an award of attorneys' fees and costs against him, if this Court rejects the above arguments, he respectfully requests that this Court defer the determination of indemnity for a later date and permit Miesen to submit more briefing and evidence to address and oppose the request. (Bond Decl. ¶9.) *See* Fed. R. Civ. P. 54(d)(1) (   or a court order provides otherwise . . ."); Fed. R. Civ. P. 6(b)(1)(A).

## IV.    CONCLUSION

For the reasons stated above, this Court should deny the Defendants' joint motion.

MIESEN'S RESPONSE TO JOINT MOTION FOR FEES & COSTS  Dkt. 1314  - 20

20-ER-5267

DATED:  This 2nd day of July 2025.

RODERICK BOND LAW OFFICE, PLLC

By:    */s/ Roderick C. Bond*
　　　Roderick C. Bond
　　　Attorney for the Plaintiff Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:    */s/ Andrew Schwam*
　　　Andrew Schwam
　　　Attorney for the Plaintiff Dale L. Miesen


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 2nd day of July 2025, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey A. Thomson:    jat@elamburke.com
Loren C. Ipsen:    lci@elamburke.com
Joyce A. Hemmer:    jah@elamburke.com
Bradley S. Keller:    bkeller@byrneskeller.com
Alyson A. Foster:    alyson@dempseyfoster.com
Michael S. Bissell:    mbissell@campbell-bissell.com
Daniel L. Glynn:    dglynn@idalaw.com
Andrew Schwam:    amschwam@turbonet.com
Kim J Trout:    ktrout@trout-law.com
Markus William Louvier:    mlouvier@ecl-law.com
James B. King:    jking@ecl-law.com


　　　　*/s/ Roderick C. Bond*
　　　　Roderick C. Bond

| | Dkt. | Substantive Motion (e cludes motions for briefing e tensions, motions for additional pages in briefing, and other misc. motions) | Result |
|---|---|---|---|
| 1 | 62 | Motion to Lift Stay | DENIED. (Dkt. 88.) Later REVERSED on appeal. (Dkt. 105.) |
| 2 | 89 | Motion for Reconsideration or, Alternatively, Motion to Bifurcate | DENIED. (Dkt. 95.) Later REVERSED on appeal. (Dkt. 105.) |
| 3 | 131 | Amended Motion to Amend and Supplement Complaints | GRANTED. (Dkt. 136.) |
| 4 | 139 | Motion to Amend Complaint and/or Motion to Voluntarily Dismiss the Newly Named Parties Without Prejudice | GRANTED IN PART. (Dkt. 178.) |
| 5 | 169 | Motion to Strike or, Alternatively, Motion to File a Sur-Reply | DENIED. (Dkt. 178.) |
| 6 | 182 | Motion to Amend and Supplement Complaint | GRANTED IN PART. (Dkt. 210.) |
| 7 | 241 | Motion for Relief under Rule 12(d) and Rule 56(d) RE: GemCap's Motion to Dismiss | DENIED. (Dkt. 263.) |
| 8 | 392 | Largely Unopposed Motion to Extend Case Scheduling Order Deadlines | GRANTED. (Dkt. 398.) |
| 9 | 403 | Motion to Continue the Hawley Troxell Defendants' Motion for Summary Judgment. | GRANTED. (Dkt. 408.) |
| 10 | 419 | First Motion to Compel Discovery from the Defendants | GRANTED IN PART. (Dkts. 470, 476.) |
| 11 | 477 | Motion to Continue [GemCap's] Motion for Summary Judgment | DENIED AS MOOT (but relief was granted). (Dkt. 483.) |
| 12 | 498 | Motion Concerning the Insufficiencies of the Defendants' Privilege Waiver Identifications | GRANTED IN PART. (Dkt. 533.) |
| 13 | 500 | Motion Requesting a Discovery Conference and, to the Extent Necessary, a Briefing Schedule to Address Any Remaining Discovery Disputes | DENIED AS MOOT (but relief was granted). (Dkts., 516, 521.) |
| 14 | 502 | Motion to Compel the Production of Documents Pertaining to the Privilege Waiver Identifications | DENIED AS MOOT WITHOUT PREJUDICE. (Dkt. 537.) |
| 15 | 549 | Motion to Voluntarily Dismiss His Claims Against Defendant JoLee Duclos Without an Award of Fees or Costs | GRANTED. (Dkt. 670.) |
| 16 | 550 | Motion to Amend Caption. | DENIED. (Dkt. 670.) |
| 17 | 556 | Motion to Strike GemCap's Motion to Dismiss or, in the Alternative, to Convert that Motion into One for Summary Judgment and Stay that Motion | DENIED AS MOOT. (Dkt. 1089.) |
| 18 | 562 | Fourth Motion to Compel Re: Alleged Common Interest | GRANTED IN PART. (Dkt. 649.) |
| 19 | 563 | Fifth Motion to Compel Re: GemCap | GRANTED IN PART. (Dkt. 662.) |
| 20 | 564 | Motion to Shorten Time for Briefing Schedules for Discovery Related Motions Submitted to the Discovery Master | GRANTED IN PART. (Dkt. 617.) |
| 21 | 571 | First Motion for Discovery Sanctions against Defendants [the Individual Defendants and CropUSA Defendants] | DENIED (Defendants responded after motion was filed. Miesen could seek other sanctions and fees awarded). (Dkt. 704.) |

20-ER-5268

| | Dkt. | Substantive Motion (e cludes motions for briefing e tensions, motions for additional pages in briefing, and other misc. motions) | Result |
|---|---|---|---|
| 22 | 576 | Motion to Strike the Hawley Troxell Defendants' Motion to Dismiss Counts VII and VIII or, in the Alternative, to Convert that Motion into One for Summary Judgment and Stay | DENIED AS MOOT. (Dkt. 1089.) |
| 23 | 581 | Motion to Amend the Case Management Order | GRANTED. (Dkt. 602.) |
| 24 | 583 584 | Sixth Motion to Compel Re: R. John Taylor and the Production of Documents and Information in the Possession, Custody and Control of R. John Taylor | GRANTED IN PART. (Dkt. 692.) |
| 25 | 679 | Motion to Determine the Allocation of the Mediator's Fee Among the Parties | GRANTED. (Dkt. 694.) |
| 26 | 730 | Motion to Unseal the GemCap Settlement Agreement and to Clarify the Order Sealing that Agreement | DENIED. (Dkt. 756.) |
| 27 | 758 | Motion to Amend the Case Management Orders Re: Deadlines for Expert Witness Rebuttal Reports and Expert Witness Discovery | GRANTED IN PART. (Dkt. 843.) |
| 28 | 759 | Motion for Permission to Depose Richard Riley a Second Day | GRANTED. (Dkt. 799.) |
| 29 | 760 | Motion to Expedite Briefing for Motion for Permission to Depose Richard A. Riley a Second Day | GRANTED. (Dkt. 767.) |
| 30 | 783 | Seventh Motion to Compel Re: Privilege and Work Product | DENIED (but certain relief granted). (Dkt. 880.) |
| 31 | 795 | Motion for a Discovery Conference with the Discovery Master Today to Address Case Matters and Case Scheduling | DENIED AS MOOT (the conference was held as requested). (Dkt. 984.) |
| 32 | 805 | Motion to Reconsider Order Re: Discovery Master Order No. 21 and Order Staying Production of Sealed Documents | GRANTED. (Dkt. 852.) |
| 33 | 862 | Motion to Reconsider Deadline for Filing Motions to Compel or, Alternatively, to Extend the Deadline for Filing Motions | GRANTED IN PART. (Dkt. 865.) |
| 34 | 867 | Eighth Motion to Compel Re: AIA Services Corporation and AIA Insurance, Inc. | GRANTED IN PART. (Dkts. 925, 939.) |
| 35 | 893 | Motion to Amend the Case Management Order | GRANTED IN PART. (Dkt. 943.) |
| 36 | 909 | Motion for Permission to be Heard by Filing Replies to the Responses to Miesen's Objections to Discovery Master Order | GRANTED IN PART. (Dkt. 920.) |
| 37 | 914 | Motion to Compel Additional Deposition Days for John Taylor and Sanctions | GRANTED IN PART. (Dkt. 953.) |
| 38 | 916 | Motion to Extend the Deadlines for Filing Motions to Compel | GRANTED IN PART. (Dkt. 943.) |
| 39 | 947 | Motion to Extend the Expert Witness Disclosure Deadlines Re: Larry Hile and Patrick Moran | DENIED. (Dkt. 1111.) |
| 40 | 961 | Motion for Permission to be Heard by Filing a Reply to the Glynn Group's Response to Miesen's Objections | GRANTED. (Dkt. 972.) |

**20-ER-5269**

| | Dkt. | Substantive Motion (e cludes motions for briefing e tensions, motions for additional pages in briefing, and other misc. motions) | Result |
|---|---|---|---|
| 41 | 977 | Ninth Motion to Compel Re: GemCap | GRANTED IN PART. (Dkt. 1012, 1013.) |
| 42 | 989 | Motion to Modify the Case Management Order | GRANTED IN PART. (Dkt. 1024.) |
| 43 | 1005 | Motion for Reconsideration re John Taylor depositions | GRANTED IN PART. (Dkt. 1019.) |
| 44 | 1059 | Motion for Default against the Defendants AIA Services Corporation and AIA Insurance, Inc. | DENIED AS MOOT (only after AIA was given more time). (Dkt. 1180, 1187.) |
| 45 | 1115 | Motion for Reconsideration (Dkt. 1112) Re: McDermott | DENIED. (Dkt. 1123.) |
| 46 | 1116 | Motion Requesting Oral Argument on Motion for Reconsideration (Dkt. 1115) Re: McDermott | DENIED. (Dkt. 1123.) |
| 47 | 1124 | Motion to Substitute an Expert Witness | DENIED. (Dkt. 1197.) |
| 48 | 1135 | Motion for an Interlocutory Appeal of the Two Orders Excluding Professor Richard T. McDermott as an Expert | DENIED. (Dkt. 1197.) |
| 49 | 1136 | Motion for the Alternative Remedy of Lesser Sanctions Re: Motion to Substitute an Expert Witness | DENIED. (Dkt. 1197.) |
| 50 | 1148 | Motion to Certify  uestions of Law to the Idaho Supreme Court or, Alternatively, that this Court Answer the  uestions | DENIED. (Dkt. 1203.) |
| 51 | 1214 | Motion to Approve Settlement Agreement with the Hawley Troxell Defendants (Motion for fees and costs withdrawn) | GRANTED. (Dkts. 1235, 1236.) |
| 52 | 1240 | Motion to Approve the Terms of the Settlement Agreement with the Defendant GemCap | GRANTED. (Dkt. 1289, 1290.) |
| 53 | 1242 | Motion to Approve the Payment of Attorney's Fees and Costs | PENDING |
| 54 | 1262 | Miesen's Motion for Permission to File a Sur-Reply to the New Arguments Raised in the Joint Reply | DENIED. (Dkt. 1301.) |
| 55 | 1267 | Motion to Deposit the $1,376,540.47 Settlement Funds into the Court Registry Investment System ("CRIS") | GRANTED. (Dkt. 1271.) |
| 56 | 1272 | Motion Re: the Inapplicability of the Automatic Bankruptcy Stay pertaining to the Defendant GCLI, LLC f/k/a GemCap | DENIED AS MOOT. (Dkt. 1291.) |
| 57 | 1282 | Motion to Expedite the Adjudication of this Case | DENIED AS MOOT. (Dkt. 1293.) |
| 58 | 1315 | Second Motion to Approve the Payment of Attorneys' Fees and Costs | PENDING |

Roderick C. Bond, ISB No. 8082
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA  98004
Telephone: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Attorney for the Plaintiff Dale L. Miesen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.; <br><br> Plaintiff, <br><br> **v.** <br><br> CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 1:10-cv-00404-DCN-CWD <br><br> GEMCAP LENDING I, LLC'S FIRST SET OF INTERROGATORIES, REQUESTS FOR ADMISSION, AND REQUESTS FOR DOCUMENTS TO DALE MIESEN (***with Plaintiff's Amended Supplemental objections, qualifications, assumptions, answers and responses***) |

PLAINTIFF'S AMENDED SUPPLEMENTAL ANSWERS AND RESPONSES TO
GEMCAP'S 1st DISCOVERY REQUESTS - 1

**Exhibit - A, p. 1**
**20-ER-5271**

Crop USA Insurance Agency, Inc., an Idaho corporation; Connie Taylor Henderson, an individual; JoLee Duclos, an individual; R. John Taylor, an individual; Michael W. Cashman Sr., an individual; James Beck, an individual,

          Defendants/Third-Party Plaintiffs,

**v.**

Reed Taylor, an individual,

          Third-Party Defendant.

Reed Taylor, an individual,

          Third-Party Defendant/ Counterclaimant,

**v.**

CONNIE TAYLOR HENDERSON, an individual; R. JOHN TAYLOR, an individual; JAMES BECK, an individual, and UNKNOWN BONDING COMPANY, an unknown entity that issued the unknown fidelity ERISA Bond,

          Counterdefendants.

GEMCAP LENDING I, LLC, a Delaware limited liability company,

          Defendant/Third-Party Plaintiff,

**v.**

QUARLES & BRADY, LLP, a Wisconsin limited legal partnership; and CRUMB & MUNDING, P.S., a Washington professional service corporation,

          Third-Party Defendants.

PLAINTIFF'S AMENDED SUPPLEMENTAL ANSWERS AND RESPONSES TO GEMCAP'S 1st DISCOVERY REQUESTS - 2

Plaintiff Dale Miesen ("Plaintiff" or "Mr. Miesen") submits the following Supplemental objections, qualifications, responses and answers to GemCap Lending I, LLC ("GemCap")'s First Set of Interrogatories and Requests for Documents to Dale Miesen ("Discovery Requests"):

## A. OBJECTIONS, QUALIFICATIONS AND ASSUMPTIONS

Whether it was intentional or erroneous, GemCap has provided defined terms which are either inaccurate and/or improper. Rather than objecting and refusing to provide any responses or answers based on the foregoing definitions, Plaintiff will address each defined term and provide the qualifications and assumptions that he will use when responding to such defined terms.

With respect to the term "1995 Letter Agreement" defined on page 3 of GemCap's Discovery Requests, Plaintiff objects because on the grounds that GemCap did not provide a copy of the "Idaho Supreme Court decision" that GemCap alleges was "attached". Through being a defendant in another lawsuit filed by AIA Services Corporation ("AIA Services"), Plaintiff is aware of four 1995 letter agreements relating to the redemption of Donna Taylor's Series A Preferred Shares dated January 11, 1995, March 22, 1995, July 18, 1995 and August 10, 1995, respectively. Without waiving the foregoing objection and when answering and responding below, Plaintiff qualifies his answers and responses below by assuming that GemCap's reference to the "1995 Letter Agreement" is to the four letters dated January 11, 1995, March 22, 1995, July 18, 1995 and August 10, 1995, respectively.

With respect to the term "AIA Articles of Incorporation" defined on page 3 of GemCap's Discovery Requests, Plaintiff objects on the grounds that GemCap erroneously refers to "AIA Services Corporation" as "AIA Insurance Services, Inc." in that definition. Without waiving the foregoing objection and when answering and responding below, Plaintiff qualifies his answers and

PLAINTIFF'S AMENDED SUPPLEMENTAL ANSWERS AND RESPONSES TO
GEMCAP'S 1st DISCOVERY REQUESTS - 3

entirety on the grounds that GemCap asserts Idaho Rule of Civil Procedure 78(a) applies to this federal lawsuit when it does not and when that Rule does not mean that Miesen "represents" other shareholders other than to fairly represent the interests of all of the innocent shareholders (obviously Plaintiff is not representing the interests of John Taylor or other responsible parties). Plaintiff also objects to subpart (iii) in its entirety on the grounds that the Plaintiff cannot be viewed as the AIA Entities or their agents or any other person identified in that subpart as being a possible agent of AIA Services or AIA Insurance. Without waiving the foregoing objections and when answering and responding below, Plaintiff qualifies his answers and responses below by asserting that GemCap is only entitled to the definition in subpart (i), but none pertaining to attorney-client privilege, work product or communications.

Subject to the foregoing objections, qualifications and assumptions, Plaintiff hereby supplements his amended answers and responses dated October 17, 2018 (but served on October 23, 2018) to GemCap's Interrogatories and Requests for Production as follows:

### B. **INTERROGATORIES**

**Interrogatory No. 1.** Describe each fact supporting or relating to your allegation in paragraph 138 of the Third Amended Complaint "that AIA, and its purported officers, were not authorized to execute the Guarantees or pledge any of its assets to GemCap," including by identifying each person with knowledge and each document supporting your contention.

#### **Answer:**

Plaintiff objects to this Interrogatory to the extent that GemCap seeks to invade any attorney-client privilege, work product privilege, common interest privilege and privileged communications involving Roderick Bond's representation of him in this lawsuit, *Durant, et al. v. GemCap Lending I, LLC, et al.*, Nez Perce County District Court Case No. CV-14-01444, or *AIA*

PLAINTIFF'S AMENDED SUPPLEMENTAL ANSWERS AND RESPONSES TO GEMCAP'S 1st DISCOVERY REQUESTS - 6

**Exhibit - A, p. 6**
**20-ER-5274**

*Services Corp. v. Durant, et al*., Nez Perce County District Court Case No. CV-12-01483. Plaintiff's counsel further objects to the extent that GemCap improperly seeks to invade any attorney-client privilege, work product privilege, common interest privilege and privileged communications involving Roderick Bond and any of his other present or former clients or expert witnesses or consultants for such clients (including, without limitation, Donna Taylor, Reed Taylor, Paul Durant, Lee Ann Hostetler, Jerry Legg and Jud Taylor). Plaintiff also objects because discovery is ongoing and Plaintiff has not yet deposed GemCap or any of its agents or attorneys, nor has GemCap or other defendants produced all responsive documents in discovery, and there are discovery disputes involving GemCap and other defendants (including thousands of pages of responsive, but unproduced documents), which need to be resolved and documents produced before Plaintiff can fully or fairly answer this Interrogatory. Finally, Plaintiff is working on comprehensive answers to this Interrogatory that he will be serving as soon as practicable, but he suggests that GemCap correct all of the errors in these Interrogatories and the defined terms above and re-serve the Interrogatories so that clean answers may be provided (to the extent possible). In any event, this Answer will be supplemented in the near future.

**Supplemental Answer to No. 1:**

Subject to and without waiving the objections, qualifications and assumptions set forth in the original Answer (including those specified prior to answering any of the Interrogatories), Plaintiff provides this Supplemental Answer. AIA Services and AIA Insurance are corporations that can only act through their authorized and unconflicted directors and officers, subject also to any further limitations or restrictions set forth in AIA Services and AIA Insurance's amended articles of incorporation and bylaws, Idaho Code and the common law, which did not occur as to any transaction involving GemCap; yet GemCap intentionally proceeded with all of the unlawful transactions involving AIA Services and AIA Insurance (which are described in part below). As a

PLAINTIFF'S AMENDED SUPPLEMENTAL ANSWERS AND RESPONSES TO
GEMCAP'S 1st DISCOVERY REQUESTS - 7

result, AIA Services' alleged limited Guarantee of GemCap's loan to CropUSA Insurance Agency and CropUSA Insurance Services and the subsequent alleged Guarantees of the entire indebtedness by AIA Services and AIA Insurance (collectively referred to as "Guarantees" in these Supplemental Answers), together with any asset pledges (including the related UCC Filings), were unauthorized, ultra vires and/or illegal (as were the subsequent alleged Settlement Agreement, the subsequent transfer and sale of AIA's headquarters, the transfer and sale of the two Dahman House Condominiums owned by AIA Insurance, and the subsequent transfer and sale of the parking lot by Jordan Taylor) for the following reasons (yet GemCap intentionally proceeded with the foregoing without any regard to the rights or the damages inflicted upon AIA Services, AIA Insurance or their disinterested shareholders) for the following reasons, including, without limitation:

(1)     AIA Services and AIA Insurance's alleged Guarantees and asset pledges (and the subsequent alleged Settlement Agreement) were prohibited by numerous provisions of AIA Services' amended articles of incorporation and AIA Services and AIA Insurance's Bylaws (GemCap was in possession of these restrictions at the time of the alleged Guarantees and asset pledges and was separately notified of them once Donna Taylor and Dale Miesen discovered them), i.e., the Guarantees and asset pledges were ultra vires[1] and/or illegal (including, without

---

[1] In GemCap's pending Motion for Summary Judgment (e.g., Dkt. 437-2 at 19-21), it implies that this lawsuit is exclusively a derivative one for purposes of Mr. Miesen's ultra vires claims. GemCap is incorrect. As noted in the Third Amended Complaint (e.g., Dkt. 211 at 1 (note the assertions under Mr. Miesen's name), at 6 ¶ 5, at 74 ¶ 228, at 76 ¶ 7, at 77 ¶ 8, at 86 ¶ 13), Mr. Miesen is also asserting direct claims to the extent necessary in his Third Amended Complaint, including for purposes of asserting the Guarantees, asset pledges, subsequent Settlement Agreement, subsequent transfer of AIA Services' headquarters to GemCap, and subsequent sale of AIA Services' headquarters were ultra vires. However, in light of the Idaho Supreme Court's decision in *Taylor v. Taylor*, Mr. Miesen was not required to do so because the Idaho Supreme Court rejected Donna Taylor's arguments that were the same as GemCap's arguments and addressed the ultra vires issue on the merits.

PLAINTIFF'S AMENDED SUPPLEMENTAL ANSWERS AND RESPONSES TO GEMCAP'S 1st DISCOVERY REQUESTS - 8

in this lawsuit. Without waiving the foregoing objections, a description of responsive documents is contained within the Supplemental Response to Request for Production No. 1, which is incorporated by reference herein.

Dated this 17th day of September 2020.

RODERICK BOND LAW OFFICE, PLLC

By:_____

Roderick C. Bond
Attorney for the Plaintiff Dale L. Miesen
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA  98004
Telephone: (425) 591-6903
Facsimile: (425) 321-0343
E-mail: rod@roderickbond.com

## VERIFICATION

I, Dale L. Miesen, declare:

I am the Plaintiff in the above-entitled action. I have read the foregoing Amended Answers and Supplemental Answers to GemCap Lending I, LLC's First Set of Interrogatories, know the contents thereof, and believe that forgoing Answers and Supplemental Answers to Interrogatories are true and accurate to the best of my knowledge and belief.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

_September 17, 2020, Caldwell, Idaho_                _/s/ Dale L. Miesen_____
Date and City and State Signed                  Dale L. Miesen

PLAINTIFF'S AMENDED SUPPLEMENTAL ANSWERS AND RESPONSES TO
GEMCAP'S 1st DISCOVERY REQUESTS - 124

**Exhibit - A, p. 124**
**20-ER-5277**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 17th day of September 2020, I caused the following parties or counsel to be served the forgoing by email to the parties indicated below:

Jeffrey A. Thomson:    jat@elamburke.com
Loren C. Ipsen:    lci@elamburke.com
Joyce Ann Hemmer:    jah@elamburke.com
Brad Keller: bkeller@byrneskeller.com
William Adams: wadams@gemcapsolutions.com
Alyson A. Foster: alyson@dempseyfoster.com
Tyler Scott Waite:    twaite@campbell-bissell.com
Michael Scott Bissell:    mbissell@campbell-bissell.com
Daniel Loras Glynn:    dglynn@idalaw.com

_____
Roderick C. Bond

PLAINTIFF'S AMENDED SUPPLEMENTAL ANSWERS AND RESPONSES TO
GEMCAP'S 1st DISCOVERY REQUESTS - 125

**Exhibit - A, p. 125**
**20-ER-5278**