**Consolidated Case Nos. 25-3552 and 25-3800**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.,

**Plaintiff-Appellant**,

v.

R. JOHN TAYLOR, an individual, CONNIE TAYLOR HENDERSON, an individual, JAMES BECK, an individual, MICHAEL W. CASHMAN, SR., an individual, CROP USA INSURANCE AGENCY, INC., an Idaho corporation, CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company, AIA SERVICES CORPORATION, an Idaho corporation, AND AIA INSURANCE, INC., an Idaho corporation,

**Defendants-Appellees**,

and

Reed J. Taylor, an individual,

**Third-Party Defendant-Appellee.**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO,
CHIEF DISTRICT COURT JUDGE DAVID C. NYE, PRESIDING

### APPELLANT DALE L. MIESEN'S OPENING BRIEF

Roderick C. Bond
Roderick Bond Law Office, PLLC
10900 NE 4th St., Suite 2300
Bellevue, WA 98004
Tel: (425) 591-6903
Email: rod@roderickbond.com
Attorney for Appellant

Andrew Schwam
Andrew Schwam Law Firm
705 SW Fountain St.
Pullman, WA 99163-2128
Tel: (208) 874-3684
Email: amschwam@turbonet.com
Attorney for Appellant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ v

I.  STATEMENT OF THE CASE .......................................................... 1

II.  CITATIONS FOR AIA'S ARTICLES, BYLAWS, BOARD
     DECISIONS, AND SHAREHOLDER DECISIONS ...................... 13

III.  ADDENDUM ................................................................................ 14

IV.  JURISDICTION ........................................................................... 14

V.  ISSUES PRESENTED & SUMMARY OF ARGUMENTS ........... 15

VI.  ARGUMENTS ............................................................................. 16

    A.  Judge Nye erred because Miesen's derivative demands
        exceeded the requirements under Idaho law. ...................... 16

        1.  As a matter of law, Miesen's demands were
            adequate. ..................................................................... 16

        2.  Judge Nye erred by relying on *Munding*. ................... 38

            a.  *Munding* was factually distinguishable and
                not persuasive authority. ................................... 38

            b.  *Munding* was not controlling authority. ............ 41

            c.  *Munding* was erroneously used as the
                pivotal basis for Judge Nye's decision. .............. 42

    B.  Judge Nye erred by excluding McDermott as an expert. ...... 42

        1.  Judge Nye erred by abdicating his gatekeeping
            duties and assuming the role of the fact finder ........... 42

        2.  Judge Nye erred because McDermott was qualified
            and his opinions were relevant and reliable. .............. 48

            a.  McDermott was highly qualified. ....................... 48

b.    McDermott's opinions were relevant................49

c.    McDermott's opinions were reliable. .................50

3.    Judge Nye misapplied Rule 403 to exclude McDermott. ................................................................52

C.    Judge Nye erred by dismissing Miesen's direct claims........53

    1.    Miesen pled a direct claim for ultra vires relief. .........53

    2.    Miesen pled a direct claim to have the recoveries distributed directly to innocent shareholders. ............55

    3.    The defendants never challenged a single direct claim. .......................................................................56

D.    Judge Nye erred by not ruling that demand was excused and only AIA could challenge the demands. ........................56

    1.    Miesen was excused from making any demands. .......57

        a.    Demand was excused under the ultra vires exception.................................................................57

        b.    Demand was excused under the close corporation exception. .......................................58

        c.    Demand was excused under the corporation's failure to object exception. ............59

    2.    Only AIA can independently challenge the adequacy of the demands...........................................59

E.    Rule 23.1 does not require Miesen to plead the adequacy of his demands under Idaho law, and Rule 23.1 motions should be reviewed de novo...................................................61

F.    Judge Nye committed additional reversable errors. ............63

    1.    Judge Nye erred by misapplying the law of the case doctrine................................................................63

a. Judge Nye erred by not finding that the doctrine applied to Judge Dale and Judge Boyle's decisions. ................................. 63

b. This Court should defer to Judge Dale and Judge Boyle. ....................................... 66

2. Judge Nye erred by not considering Miesen's documents. .................................... 67

3. Judge Nye erred by not converting the motion to one for summary judgment and considering inadmissible evidence. ................................. 70

4. Judge Nye erred by not granting leave to amend. ....... 72

G. This Court should take judicial notice................................. 73

H. This Court should assign a new judge................................ 73

VII. CONCLUSION ..................................................................... 75

VIII. CERTIFICATE OF COMPLIANCE.................................. 76

IX. CORPORATE DISCLOSURE STATEMENT ............................ 77

X. CERTIFICATE OF SERVICE ...................................... 78

# TABLE OF AUTHORITIES

## Cases

*Abdisamad v. City of Lewiston*, 960 F.3d 56 (1st Cir. 2020) .................65

*Allison on Behalf of Gen. Motors Corp. v. Gen. Motors Corp.*,
604 F. Supp. 1106 (D. Del. 1985) ....................................21, 24

*Aurora Credit Servs., Inc. v. Liberty West Dev., Inc.*,
970 P.2d 1273 (Utah 1998)......................................................58

*Aztec Oil and Gas, Inc. v. Fisher*,
152 F. Supp. 3d 832 (S.D. Tex. 2016)....................................57

*Bangura v. Hansen*, 434 F.3d 487 (6th Cir. 2006)................................56

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994)....................................67

*Carlstrom v. United States*, 275 F.2d 802 (9th Cir. 1960)......................48

*Center for Investigative Reporting v. United States Dept. of Justice*,
14 F.4th 916 (9th Cir. 2021)..................................................41

*Colan v. Monumental Corp.*, 524 F. Supp. 1023 (N.D. Ill. 1981) ..........59

*Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1 (1980) ...............14

*Daubert v. Merrell Dow Pharm., Inc.*,
43 F.3d 1311 (9th Cir. 1995) .............................................43

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ............................... 15, 43, 48, 50, 51, 52

*Day v. Apoliona*, 496 F.3d 1027 (9th Cir. 2007) ....................................46

*Delta Ltd. v. U.S. Customs & Border Prot. Bureau*,
393 F. Supp. 2d 15 (D. D.C. 2005)........................................66

*Delta Savings Bank v. United States,*
    265 F.3d 1017 (9th Cir. 2001) ........................................................ 63

*Dimidowich v. Bell & Howell*, 803 F.2d 1473 (9th Cir. 1986) ............... 41

*Disability Rts. Montana, Inc. v. Batista,*
    930 F.3d 1090 (9th Cir. 2019) ........................................................ 74

*Durham v. Durham*, 871 A.2d 41 (N.H. 2005) ...................................... 58

*Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188 (9th Cir. 1989) ........ 65

*Earp v. Cullen*, 623 F.3d 1065 (9th Cir. 2010) ...................................... 73

*Elosu v. Middlefork Ranch Inc.,*
    26 F.4th 1017 (9th Cir. 2022) ................ 13, 42, 43, 46, 48, 49, 50, 51, 67

*Fisher v. Shipyard Village Council of Co-Owners, Inc.,*
    760 S.E.2d 121 (S.C. Ct. App. 2014) ............................................. 54

*Garrett v. Desi Indus., Inc.*, 705 F.2d 721 (4th Cir. 1983) ..................... 48

*Greenfield v. Smith*, 395 P.3d 1279, (Idaho 2017) ................................. 49

*Grimm v. City of Portland*, 971 F.3d 1060 (9th Cir. 2020) .............. 41, 42

*Haberman v. Wash. Pub. Power Supply Sys.,*
    744 P.2d 1032 (Wash. 1987) ........................................................... 59

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
    896 F.2d 1542 (9th Cir. 1989) ........................................................ 70

*Harris v. County of Orange*, 682 F.3d 1126 (9th Cir. 2012) ................... 68

*Heliotrope Gen., Inc. v. Ford Motor Co.,*
    189 F.3d 971 (9th Cir. 1999) .......................................................... 67

*Hicks v. PGA Tour, Inc.*, 897 F.3d 1109 (9th Cir. 2018) ........................ 72

*Hill v. Small*, 183 S.E.2d 752 (Ga. 1971) .............................................. 58

*Honey v. Distelrath*, 195 F.3d 531 (9th Cir. 1999) .................................. 16

*Idahoans for Open Primaries v. Labrador*,
533 P.3d 1262 (Idaho 2023) .................................................. 37

*In re El Paso Pipeline P'rs L.P. Deriv. Litig.*,
132 A.3d 67 (Del. Ch. 2015) .............................................. 55

*In re Murchison*, 349 U.S. 133 (1955) .................................... 74

*In re Oracle Sec. Litig.*, 829 F. Supp. 1176 (N.D. Cal. 1993) ................. 61

*James v. Mercea*, 277 P.3d 361 (Idaho 2012) ........................................ 18

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991) .............. 16, 57, 61

*Kaplan v. Peat, Marwick, Mitchell & Co.*,
540 A.2d 726 (Del. 1988) .................................................... 59

*Kemmer v. Newman*, 387 P.3d 131 (Idaho 2016) .................................... 58

*Krakow Bus. Park v. Locke Lord, LLP*,
135 F. Supp. 3d 770 (N.D. Ill. 2015) .................................... 61

*KST Data, Inc. v. DXC Tech. Co.*, 980 F.3d 709 (9th Cir. 2020) ........... 61

*Kugler v. Nelson*, 374 P.3d 571 (Idaho 2016) ............................ 17, 57, 60

*La Voy Supply Co. v. Young*, 369 P.2d 45 (Idaho 1962) ........................ 60

*Lippe v. Bairnco Corp.*, 288 B.R. 678 (S.D.N.Y. 2003) .................... 45, 46

*M/V Am. Queen v. San Diego Marine Constr. Corp.*,
708 F.2d 1483 (9th Cir. 1983) ............................................ 71

*Marine Servs. Unlimited, Inc. v. Rakes*,
918 S.W.2d 132 (Ark. 1996) ................................................. 58

*Marlyn Neutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) .............................................. 64

*McCann v. McCann*,
  61 P.3d 585 (Idaho 2002) ("*McCann I*") ....................... 19, 21, 27, 41, 62

*McCann v. McCann*,
  275 P.3d 824 (Idaho 2012) ("*McCann II*") .................................... 17, 55

*McCullock v. H.B. Fuller Co.*, 61 F.3d 1038 (2d Cir. 1995) ................... 48

*McDevitt v. Guenther*, 522 F. Supp. 2d 1272 (D. Haw. 2007)................. 51

*McKown v. Simon Prop. Grp. Inc.*,
  689 F.3d 1086 (9th Cir. 2012) ....................................... 21, 57

*Messick v. Novartis Pharm. Corp.*,
  747 F.3d 1193 (9th Cir. 2014) ........................................... 49

*Miesen v. Munding*,
  822 F. App'x 546 (9th Cir. 2020) ................15, 38, 39, 40, 41, 42, 71, 74

*Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209 (9th Cir. 1988) ................... 65

*Miller v. Smith*, 61 P. 824 (Idaho 1900)................................... 11

*Mitchell v. Maynard*, 80 F.3d 1433 (10th Cir. 1996) ........................... 73

*Murray v. Southern Route Mar. SA*, 870 F.3d 915 (9th Cir. 2017) ........ 42

*Neurovision Medical Products Inc. v. NuVasive, Inc.*,
  494 F. App'x 749 (9th Cir. 2012) ........................................ 73

*Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92 (1st Cir. 1997) ........ 44, 51

*Packer on Behalf of 1–800–flowers.com, Inc. v.
  Raging Cap. Mgmt., LLC*,
  242 F. Supp. 3d 141 (E.D. N.Y. 2017) ................................... 60

*Potter v. Hughes*, 546 F.3d 1051 (9th Cir. 2008)....... 16, 19, 33, 62, 63, 66

*Prager v. Sylvestri*, 449 F. Supp. 425 (S.D. N.Y. 1978) ......................... 59

*Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010) ...................................... 46

*Ramirez v. County of San Bernardino*,
   806 F.3d 1002 (9th Cir. 2015) ............................................................. 35

*Relevant Group, LLC v. Nourmand*, 116 F.4th 917 (9th Cir. 2024)....... 65

*Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119 (2d Cir. 1991) .............. 62

*Rockefeller v. Grabow*, 39 P.3d 577 (Idaho 2001) .................................... 7

*Rosenbloom v. Pyott*, 765 F.3d 1137 (9th Cir. 2014)............................... 63

*Shoen v. SAC Holding Corp.*, 137 P.3d 1171 (Nev. 2006) ...................... 57

*State v. Doe*, 92 P.3d 521 (Idaho 2004) ............................................ 38, 60

*Talley v. Wetzel*, 15 F.4th 275 (3d Cir. 2021) ......................................... 65

*Taylor v. AIA Servs. Corp.*, 261 P.3d 829 (Idaho 2011) .......................... 60

*Taylor v. Bell*, 340 P.3d 951 (Wash. Ct. App. 2014) ......................... 35, 49

*Taylor v. Taylor*, 422 P.3d 1116 (Idaho 2018)........................................ 54

*U.S. Bank Nat. Ass'n N.D. v. CitiMortgage, Inc.*,
   337 P.3d 605 (Idaho 2014)................................................................... 19

*U.S. ex rel. Morongo Band of Mission Indians v. Rose*,
   34 F.3d 901 (9th 1994) ........................................................................ 65

*U.S. ex. rel. Rafter H Constr., LLC v. Big-D Constr. Corp.*,
   358 F. Supp. 3d 1096 (D. Idaho 2019)................................................ 66

*Union de Empleados de Muelles de Puerto Rico PRSSA
   Welfare Plan v. UBS Fin. Servs. Inc. of Puerto Rico*,
   704 F.3d 155 (1st Cir. 2013)................................................................ 63

*United States v. Adame*, 827 F.3d 637 (7th Cir. 2016) ........................... 42

*United States v. Boulware*, 384 F.3d 794 (9th Cir. 2004)....................... 67

*United States v. Evans*, 728 F.3d 953 (9th Cir. 2013) ............................. 52

*United States v. Jordan*, 49 F.3d 152 (5th Cir. 1995) ............................ 74

*United States v. Ray*, 956 F.3d 1154 (9th Cir. 2020) ............................. 52

*United States v. Raygoza-Garcia*, 902 F.3d 994 (9th Cir. 2018) ............ 68

*United States v. Webb*, 655 F.2d 977 (9th Cir. 1981) ............................. 72

*United States. v. Sears, Roebuck & Co., Inc.*,
    785 F.2d 777 (9th Cir. 1986) ................................................................ 73

*Van Orden v. Van Orden*, 515 P.3d 233 (Idaho 2022) ............................ 19

*Wagner v. Wagner*, 371 P.3d 807 (Idaho 2016). .......................... 21, 42, 53

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
    758 F.3d 1069 (9th Cir. 2014) ........................................................ 63, 67

*Williams v. C.I.R.*, 1 F.3d 502 (7th Cir. 1993) ....................................... 66

*Zeyen v. Bonneville Joint Dist., # 93*,
    114 F.4th 1129 (9th Cir. 2024) ....................................................... 63, 66

**Statutes**

28 U.S.C. § 636 ........................................................................................ 64

28 U.S.C. § 1291 ...................................................................................... 14

28 U.S.C. § 1332 ...................................................................................... 14

Cal. Corp. Code § 800 ........................................................... 19, 33, 62, 70

Idaho Code § 18-1907 (1972) ..................................................................... 9

Idaho Code § 30-29-202 (2019) .................................................................. 9

Idaho Code § 30-29-301 (2019) .................................................................. 9

Idaho Code § 30-29-302 (2019) ................................................................. 9

Idaho Code § 30-29-304 (2019) ................................................ 9, 53, 54, 55

Idaho Code § 30-29-742 (2019) ....................... 18, 26, 27, 37, 38, 41, 59, 62

Idaho Code § 30-29-801 (2019) ................................................................. 9

Idaho Code § 30-29-830 (2019) ............................................................... 18

Idaho Code § 30-29-841 (2019) ................................................................. 9

Idaho Code § 30-29-853 (2019) ................................................................. 8

Idaho Code § 30-29-855 (2019) ................................................................. 8

Idaho Code § 30-29-856 (2019) ................................................................. 8

Idaho Code § 30-29-859 (2019) ................................................................. 8

Idaho Code § 30-29-1201 (2019) ............................................................... 9

Idaho Code § 30-29-1602 (2019) ............................................................... 9

Idaho Code § 30-29-1603 (2019) ............................................................... 9

Idaho Code § 30-29-1605 (2019) ............................................................... 9

Idaho Code § 30-29-1620 (2019) ............................................................... 9

## Other Authorities

1, Douglas Danner, *Med. Malprac. Chklsts. & Disc.* § 8:10 (2025) ........ 47

Mod. Bus. Corp. Act § 304 cmt. (2003) .................................................. 53

Mod. Bus. Corp. Act § 742 cmt. (2003) .................................. 17, 19, 21, 37

Note, *Defenses in Shareholders' Derivative Suits—Who May Raise Them*, 66 Harv. L. Rev. 342 (1952) ...................................................... 59

## Rules

9th Cir. R. 36-3(a) ....................................................................... 41

Fed. R. Civ. P. 1 ......................................................................... 74

Fed. R. Civ. P. 12 ................................................................. 65, 67

Fed. R. Civ. P. 54 ....................................................................... 14

Fed. R. Civ. P. 56 ................................................................. 70, 71

Fed. R. Evid. 201 ................................................................. 67, 71

Fed. R. Evid. 401 ................................................................. 52, 69

Fed. R. Evid. 403 ........................................................... 15, 46, 52

Fed. R. Evid. 702 ....................................................... 15, 43, 48, 51

Fed. R. Evid. 704 ....................................................................... 51

Fed. R. Evid. 802 ....................................................................... 51

Fed. R. Evid. 803 ....................................................................... 71

Fed. R. Evid. 804 ....................................................................... 71

Idaho Rule of Civil Procedure 78 .............................................. 77

**Treatises**

13 *Fletcher Cyc. Corp.* § 5997 (2025) ...................................... 61

13 *Fletcher Cyc. Corp.* § 6028 (2025) ...................................... 55

21B Charles Alan Wright, et al., *Federal Practice and Procedure §
5106.4* (2d ed.) ...................................................................... 71

# I.   STATEMENT OF THE CASE

This appeal involves claims against majority shareholders, who were also board members and two of whom were attorneys, guilty of looting the corporation. These wrongdoers (the "<u>insiders</u>") refused to hold shareholder meetings or to properly elect or fully seat the required board of directors so that their looting could continue. This appeal results from errors, which protected the guilty insiders from their wrongdoing.

AIA Services Corp. ("<u>AIA Services</u>") and its subsidiary AIA Insurance, Inc. (collectively "<u>AIA</u>") are closely held Idaho corporations. AIA Services has common and preferred shares, a 401(k) plan holding shares, and an ESOP—comprised of **over 45 innocent former employees who deserve a recovery**.[1]

Miesen is AIA Services' third largest common shareholder. Over three decades ago, Miesen traded a book of business worth about $500,000 for his shares. Despite AIA generating over $65 million in revenues from 1995 through 2005 alone, no dividends have ever been

---

[1] 6-ER-1288–89, 93–95; 10-ER-2389–92.

paid to Miesen or the other common shareholders.[2]

In 1995, the insiders consisting of attorney R. John Taylor ("John"), his now ex-wife attorney Connie Taylor Henderson ("Connie"), James Beck ("Beck") and Michael Cashman, Sr. ("Cashman") (collectively "Individual Defendants"), obtained control of AIA by having AIA Services illegally redeem the majority interest of John's brother, Reed Taylor ("Reed"). After their plan to sell AIA or take it public failed, they hatched a new secret plan to steal AIA's promising new crop insurance business and fund it with AIA's funds, assets, and credit. This scheme led to progressively worse malfeasance and the destruction of AIA.[3]

In August 2010, after discovering some of the malfeasance, AIA's Series A Preferred shareholder Donna Taylor ("Donna") and Miesen filed suit here. Judge Boyle declined to find Donna's 2008 demand was inadequate, but he stayed the case. During the stay, the malfeasance continued and more derivative demands were submitted in July 2012. In 2016, the stay was lifted after this Court reversed. Shareholders

---

[2] 6-ER-1297, 1315, 1333, 1343; 10-ER-2392; 19-ER-4873.
[3] 3-ER-554; 3-ER-602–27; 3-ER-657; 6-ER-1290–359; 16-ER-3896–97; 11-ER-2418–14-ER-3299.

submitted more derivative demands on June 13, 2016, and August 23, 2016. After Judge Dale found the two 2016 demands were adequate (the July 11, 2012, demand was never challenged), Miesen filed his Third Amended Complaint ("TAC").[4]

Examples of the malfeasance, which provide a basis for Miesen's derivative and/or direct claims for ultra vires relief as established by Miesen's *verified* TAC and documentary evidence, follow. *See* Section II before proceeding.

► **1**    The Individual Defendants began by stealing AIA's new crop insurance business. To do so, John changed AIA Crop Insurance's name to CropUSA Insurance Agency, Inc. ("CropUSA"). CropUSA's shares were re-issued to the Individual Defendants without paying any consideration to AIA. AIA's minority shareholders never consented to these transactions, and they received no shares in CropUSA. Although the Individual Defendants deny CropUSA was ever a subsidiary of AIA, CropUSA's board resolution admitted, "AIA Services had declined to

---

[4] 6-ER-1288–1340; 1-ER-2–57; 2-ER-179–228; 4-ER-799–803; 15-ER-3554–852.

continue to operate [CropUSA] as a subsidiary," and AIA's business plan represented that CropUSA was a "subsidiary."[5]

►  **2**    The Individual Defendants funded CropUSA, in which AIA Services' innocent shareholders had no interest, with over **$10 million** of AIA's funds, assets, and loan guarantees to allow CropUSA to improperly compete against AIA. Crop USA began selling insurance to AIA's customers—when John's AIA employment agreement prohibited him from competing with AIA. No disclosure was provided for these transactions nor was shareholder approval obtained from AIA Services' shareholders. This violated Sections 4.2.9(a)–(k) of AIA Services' amended articles of incorporation ("AIA's articles") and Section 4.14 of AIA's bylaws.[6]

►  **3**    AIA received a $1,510,827.49 bonus from its health insurance business. John, an attorney, president and board member of AIA, opened a bank account using his home address and secretly deposited the **$1,510,827.49** bonus check into that account, which violated Section 6.3

---

[5] 6-ER-1298–1301; 3-ER-657–60; 3-ER-683–86; 15-ER-3639–40.
[6] 6-ER-1298–1338; 3-ER-657–60; 13-ER-3082–84.

- 4 -

of AIA's bylaws. The funds in the secret bank account were then used for CropUSA in violation of Sections 4.2.9(f)–(h), (j)–(k) and 4.3.5(b) of AIA's articles and Sections 4.4 and 4.14 of AIA's bylaws.[7]

► **4** In 2011, while this case was stayed, the Individual Defendants had AIA improperly guarantee, in violation of AIA's articles, a $5 million loan for CropUSA and CropUSA Insurance Services, LLC (collectively "<u>CropUSA Defendants</u>"). The loan, which was provided by GemCap Lending I, LLC a/k/a GCLI, LLC ("<u>GemCap</u>"), was increased to $10 million, and wrongfully guaranteed by AIA. AIA's board resolutions for the illegal guarantees were signed by John, Beck, and Connie. CropUSA defaulted on the loan. GemCap filed suit against AIA, John and others, asserting contract and tort claims. Later, John bound AIA to a settlement agreement with GemCap. This resulted in AIA owing $12,125,534.61 and having to transfer its headquarters (which had an insured value of $7 million) to GemCap. These transactions violated Sections 4.2.9(c), (e), (g), (h), (j) and (k) of AIA's articles and Sections 4.4, 4.14 and 14.1 of AIA's bylaws. No shareholder approval was ever sought

---

[7] 6-ER-1295, 1304–07; 3-ER-676–60; 19-ER-4730–820.

or obtained, and these wrongful loan guarantees and settlement were kept secret from Miesen and the innocent shareholders.[8]

► **5**    In 2008, CropUSA sold a part of its crop insurance book of business for $11,588,245. John admitted that about 75% of that book of business was derived from policies sold by AIA's agents. AIA received no proceeds from the sale. John also had the buyer pay him $120,000 in consulting fees as part of the sale. All of this money should have gone to AIA.[9]

► **6**    John's employment agreement barred him from competing with AIA and required him to devote 100% of his time working for AIA. John received over **$2 million** in compensation from CropUSA while improperly competing against AIA. Shockingly, this compensation was paid in part from loans guaranteed by AIA. John took from AIA over **$4 million** in compensation and other funds used to pay his personal bills without board or shareholder approval, which violated Sections 4.4, 4.14, 5.5, 6.2, and 14.1 of AIA's bylaws. Thus, John received over **$6 million**

---

[8] 6-ER-1322–31; 4-ER-827–63; 7-ER-1428–1586; 9-ER-1988–89; 13-ER-3082; 19-ER-4730–820; 18-ER-4674–76, 4679–80; 18-ER-4593.

[9] 6-ER-1316–17, 1352; 2-ER-229–30; 19-ER-4841–44.

in compensation and other funds from AIA and CropUSA during the time CropUSA was competing against AIA. Yet Miesen and the innocent shareholders received nothing.[10] John is obligated to disgorge all of this compensation because "an agent who breaches his fiduciary duties forfeits his entire compensation." *Rockefeller v. Grabow*, 39 P.3d 577, 583 (Idaho 2001).

► **7**    John and Connie were also shareholders in Pacific Empire Radio ("PERC"). Since 2010 PERC was unable to meet its obligations, and John had AIA loan over $2 million to PERC without board or shareholder approval. The $2 million, plus over $2 million in accrued interest, constitutes an over **$4 million** debt owed to AIA, which will never be paid. These loans violated Sections 4.2.9(g)–(h) of AIA's articles and Sections 4.4, 4.14, 14.1 of AIA's bylaws.[11]

► **8**    John and Connie purchased a parking lot in their name that was needed for AIA's headquarters for $8,000 using funds from AIA's line-of-credit. Then, they had the gall to rent the parking lot back to AIA,

---

[10] 6-ER-1346, 1356–59; 3-ER-657–60; 13-ER-3082–84.
[11] 6-ER-1309, 1321; 13-ER-3082; 21-ER-5303–312; 21-ER-5313.

eventually increasing the rent to $15,000 per year. Later, John transferred the parking lot to his son, Jordan, and he sold it for $50,000. These transactions violated Sections 4.2.9(g)–(h) of AIA's articles and Sections 4.4, 4.14, 14.1 of AIA's bylaws.[12] Thus, AIA paid for a parking lot. AIA had to pay rent on the lot. When it sold, AIA got nothing.

► 9 The Individual Defendants had AIA unlawfully pay over **$3 million** in defense costs in various lawsuits (including $974,212.23 for this case) which were improperly advanced and incurred because: (a) the required authorization was never obtained from AIA's boards or shareholders, (b) no court authorized any advances for defense costs, and (c) the required affirmations of good faith or undertakings to repay the defense costs were never obtained, in violation of Sections 4.2.9(c), (e), (g), (h), (j) and (k) of AIA's articles, Sections 4.4, 4.14, 11.1–11.5, and 14.1 of AIA's bylaws, and Idaho Code §§ 30-29-853, 30-29-855, 30-29-856, 30-29-859. Defense costs were even improperly advanced for the CropUSA Defendants (the companies wrongly created to compete with AIA).[13]

---

[12] 6-ER-1301–02, 1335; 13-ER-3083.
[13] 6-ER-1335, 1355–58; 6-ER-1368–1407; 8-ER-1814–17; 13-ER-3082–84; 17-ER-4273–74; 20-ER-5114, 5119.

► **10** Despite demands, the Individual Defendants have refused to seat Donna's director to AIA Services' board as mandated by Section 4.2.8 and 4.4 of AIA's articles and Section 4.6 of AIA's bylaws. Donna's unseated designees to AIA Services' board, included a corporate law attorney Patrick Moran from December 28, 2009, through July 14, 2012, and a former executive of AIA Paul Durant from July 15, 2012, to now. Thus, all corporate acts have been unauthorized and ultra vires during the foregoing periods of time because Donna's board designees could not participate in any board action. Idaho Code §§ 30-29-202(b)(ii)–(iii), 30-29-301(a), 30-29-302, 30-29-304(2)–(3), 30-29-801(b), 30-29-841, 30-29-1201. There was no lawful "board" to serve derivative demands upon.[14]

► **11** The Individual Defendants refused to permit Miesen, Durant (who was Donna's designated director) and other shareholders to inspect records to obtain information in violation of Idaho Code §§ 30-29-1602, 30-29-1603, 30-29-1605, 30-29-1620, 18-1907 (a misdemeanor). Beck and Connie were directors for the first request. John was a director for both.[15]

---

[14] 6-ER-1289–365; 5-ER-1023–37; 9-ER-2208–09; 21-ER-5346–51.
[15] 6-ER-1290–91; 19-ER-4821–32; 19-ER-4875–76.

► **12** The above wrongful actions were never disclosed to Miesen and the other innocent shareholders, nor were they ever approved by AIA's board or shareholders. *See* Section II. The Individual Defendants refused to hold annual shareholder meetings to lawfully elect directors each year or hold special shareholder meetings to resolve conflicts of interest as mandated by Sections 3.2 and 4.14(b) of AIA's bylaws, thus continuing their unlawful control. The only shareholder meeting held since this case was filed was in 2012. It is remarkable that this meeting was held for the purpose of trying to eliminate Miesen and other innocent shareholders' standing to pursue derivative claims in this case by attempting to pay them ten cents per share through a reverse stock split. This scheme failed because it was stopped by an Idaho District Court Judge, who also awarded fees to the shareholders.[16] At his 2020 deposition, John testified: "**I believe that there is no purpose in having annual shareholder meetings during this litigation. Period.**"[17]

---

[16] 6-ER-1288–65; 2-ER-455–472; 4-ER-702–781; 4-ER-782–97; 5-ER-1055–57.

[17] 21-ER-5403.

- 10 -

► **13**    The primary wrongdoer, John, and his ex-wife, Connie, were both attorneys licensed in Idaho.[18] They are "presumed to know the law." *Miller v. Smith*, 61 P. 824, 827 (Idaho 1900). As Judge Nye later stated when addressing the adequacy of Miesen's derivative demands, AIA's board was well aware of the transactions and the issues and no further information was needed. AIA's board, two of whom were attorneys, knew all of the facts and concealed them from Miesen and the innocent minority shareholders.[19]

Many legal proceedings resulted from the malfeasance.[20] An Idaho District Judge found John committed "intentional fraud" as president of AIA Services,[21] and observed "I have had a lot of experience working with AIA and their financial records, and I don't know if I can trust any of them[.]"[22] The Department of Labor found John, "as a fiduciary, [he] breached [his] obligations to the [AIA Services 401(k)] Plan and violated"

---

[18] 16-ER-3896–97.

[19] 1-ER-115–16; 10-ER-2237–56; 10-ER-2333–35; 14-ER-3511–47; 15-ER-3554–852; 16-ER-3896–97; *see generally* 6-ER-1284–1366.

[20] 21-ER-5300–5302.

[21] 17-ER-4263.

[22] 12-ER-2707 ¶8.

ERISA.[23] Another court found John liable for unlawfully withholding PERC's payroll taxes.[24] An Iowa court noted John "improperly spent the loan proceeds on personal expenses."[25]

In carrying out some of the malfeasance, the Individual Defendants were assisted by the law firm of Hawley Troxell Ennis & Hawley, LLP, and its attorneys Riley, Babbitt and Ashby (collectively "<u>HTEH</u>"). In January 2021, HTEH moved to exclude Miesen's expert Richard McDermott ("<u>McDermott</u>") and dismiss Miesen's derivative claims.[26] After Judge Nye's 2021 decision excluding McDermott and his 2022 decision finding Miesen's demands were inadequate, HTEH settled with Miesen for **$1.4 million**. Such a large settlement after Miesen's case had been destroyed by either of Judge Nye's rulings suggests that HTEH had concerns whether Judge Nye's decisions would be upheld on appeal.[27]

In June 2025, despite Judge Dale's two decisions declining to dismiss Miesen's direct claims for ultra vires relief in 2017, Judge Nye

---

[23] 19-ER-4852–53.

[24] 21-ER-5314–21.

[25] 7-ER-1591.

[26] 10-ER-2237–56; 10-ER-2257–77.

[27] 6-ER-1292, 1294–321, 1345–49; 1-ER-81–150; 18-ER-4467–85.

dismissed Miesen's direct claims without finding Judge Dale had erred.[28]

To remedy the wrongful behavior, Miesen's claims need to be reinstated; and McDermott, Miesen's expert witness, needs to be allowed to testify.[29] *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017 (9th Cir. 2022) (reversing Judge Nye for similar errors).

The undersigned express their sympathy for Judge Nye's circumstances while presiding over this case. For most of the time he dealt with this case, the elected officials in Washington D.C. failed to fill Idaho's second District Judge position. This meant Judge Nye had to do the work of two District Judges. When one Judge must do the work of two, action is delayed and mistakes are made.

## II. CITATIONS FOR AIA'S ARTICLES, BYLAWS, BOARD DECISIONS, AND SHAREHOLDER DECISIONS

When Miesen asserts AIA's board or shareholders did or did not take action or refers to AIA's articles or bylaws in this brief, Miesen is referring to the following citations:[30] **(1)** the few board decisions are

---

[28] 1-ER-50, n.17; 1-ER-62–63, 75–76; 1-ER-159–175; 1-ER-151–56.

[29] 1-ER-81–98; 1-ER-99–150; 1-ER-159–75.

[30] John testified the only limited board or shareholder decisions are those in writing (there are no oral decisions). 21-ER-5403–11.

found at 18-ER-4633–96; **(2)** the few shareholder decisions are found at 19-ER-4698–729 (the last one was held in 2012); **(3)** AIA's articles, which restrictions apply to both companies, are found at 16-ER-3856–72; **(4)** AIA's bylaws are found at 19-ER-4730–820 and one set at 16-ER-3873–95 (the applicable provisions are identical). As noted in the above-cited documents, AIA's board never rejected any of Miesen's demands.

## III.  ADDENDUM

The Addendum ("Add") contains statutes and rules with an index.

## IV.  JURISDICTION

The district court has diversity jurisdiction.[31] 28 U.S.C. § 1332.

There is limited jurisdiction under Rule 54(b). 28 U.S.C. § 1291. On August 18, 2025, Judge Nye entered a corrected Rule 54(b) judgment after this Court ordered a limited remand.[32] Certification was proper because only Reed's unrelated ERISA counterclaims remain.[33] *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 10 (1980).

---

[31] 6-ER-1288–93.
[32] Docket Entry Nos. 7 and 11 (Case No. 25-3552); 1-ER-176–77).
[33] 1-ER-176–77; 7-ER-1648–63; 8-ER-1901; 9-ER-2046; 17-ER-4273–74; 17-ER-4330; 19-ER-4996.

On August 19, 2025, Miesen appealed.[34]

## V. ISSUES PRESENTED & SUMMARY OF ARGUMENTS

**A.**     Did Judge Nye err by dismissing Miesen's derivative claims because his demands exceeded Idaho's requirements and by relying on *Munding*? **Yes.**

**B.**     Did Judge Nye err by (1) excluding McDermott as an expert by misapplying *Daubert* and Rule 702, (2) not finding McDermott was qualified and his opinions were relevant and reliable, and (3) misapplying Rule 403? **Yes.**

**C.**     Did Judge Nye err by dismissing Miesen's direct claims when (1) his TAC pleaded direct claims, and (2) defendants never challenged any specific claims? **Yes.**

**D.**     Did Judge Nye err by not predicting the Idaho Supreme Court would (1) excuse Miesen's demands, and (2) rule only AIA could independently challenge the demands? **Yes.**

**E.**     Did Judge Nye err by making Miesen prove the adequacy of his demands under Rule 23.1, and should Rule 23.1 motions be reviewed

---

[34] 22-ER-5475–77.

do novo? **Yes.**

 **F.** Did Judge Nye err by (1) misapplying the law of the case doctrine, (2) failing to consider Miesen's documents, (3) considering inadmissible matters outside of the pleadings, and (4) denying Miesen leave to amend? **Yes.**

 **G.** Should this Court take judicial notice? **Yes.**

 **H.** Should a new judge be assigned? **Yes.**

## VI. ARGUMENTS

### A. Judge Nye erred because Miesen's derivative demands exceeded the requirements under Idaho law.[35]

#### 1. As a matter of law, Miesen's demands were adequate.

A derivative action is "a suit in equity[.]"*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991). Idaho law governs demand issues because AIA are Idaho corporations.[36] *Id.* at 108–09.

The demand requirement was never intended to be a technical defense.

---

[35] Review is do novo because the adequacy of a demand is a question of fact under Idaho law. *See* n.40; *Honey v. Distelrath*, 195 F.3d 531, 533 (9th Cir. 1999); *but see Potter v. Hughes*, 546 F.3d 1051, 1056 (9th Cir. 2008) (applying California law); *see* Section E.

[36] 6-ER-1289.

The demand requirement "affords the directors an opportunity to exercise their reasonable business judgment[.]"

*Kugler v. Nelson,* 374 P.3d 571, 578 (Idaho 2016). The ABA Comments clarify:

> **In keeping with the spirit of this section, the specificity of the demand should not become a new source of dilatory motions**.
> . . . .
> "The [demand] rule is intended 'to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place . . .' "[37]

"In Idaho a director has a fiduciary responsibility to both the corporation and to shareholders" and the majority or controlling shareholders in closely held corporations, such as AIA Services, also owe a "heightened fiduciary duty to minority shareholders[.]" *McCann v. McCann*, 275 P.3d 824, 830 & n.5 (Idaho 2012) ("*McCann II*"). " 'As fiduciaries, corporate directors are bound to exercise the utmost good faith in managing the corporation.' " *Id.* at 830. This requires "becoming informed in connection with their decision-making function" and "devoting attention to their oversight function," Idaho Code § 30-29-

---

[37] Add-7–8.

- 17 -

830(b), and a "duty to disclose" to minority shareholders. *James v. Mercea*, 277 P.3d 361, 365 (Idaho 2012).

The Individual Defendants, as board members and controlling shareholders, owed fiduciary duties to Miesen and other shareholders during the demand procedure to behave honorably and not use the procedure in a technical way to escape their wrongdoing.[38] As Judge Dale found, AIA's board could have asked for clarification if it thought any demand was unclear. AIA's board never did. AIA's board never found any of the demands to be inadequate, nor did it reject them.

Idaho Code § 30-29-742 states:

No shareholder may commence a derivative proceeding until:

> (a) A written demand has been made upon the corporation to take suitable action; and

> (b) Ninety (90) days have expired from the date delivery of the demand was made . . .

Idaho Code § 30-29-742 (Add-4–11).[39] The statute does not state the

---

[38] John, Connie and Beck were the controlling shareholders while on AIA's board. 6-ER-1290–93, 1296, 1316, 1340, 1344, 1350.

[39] Idaho Code has been amended twice. Miesen cites only to the 2019 Code because the text is substantively unchanged (the relevant ABA Comments are also unchanged, so Miesen will cite to the older ones).

- 18 -

content required in the demand.[40] This is in stark contrast to Cal. Corp. Code § 800(b)(2) (Add-12), which controlled in *Potter*, 546 F.3d at 1056.

In 2017, Judge Dale found the two 2016 demands were adequate.[41] The Individual and CropUSA Defendants challenges to the two 2016 demands followed Judge Dale's order requiring all pleading defenses to be asserted in response to Miesen's motion to amend to prevent further delay and expense after she found that defendants made "misleading representations" in response to a prior motion to amend.[42]

Judge Dale began by paraphrasing numerous paragraphs in Miesen's two 2016 demands, including one paragraph that referred AIA's board to the Proposed SAC that had been previously served on AIA's

---

[40] Under Idaho law, the adequacy of a demand "is a question of fact," *McCann v. McCann*, 61 P.3d 585, 591 (Idaho 2002) ("*McCann I*"), "lack of compliance with Idaho Code" is "an affirmative defense," *Van Orden v. Van Orden*, 515 P.3d 233, 243 (Idaho 2022), and "[t]he burden of proving an affirmative defense" is on the party asserting it. *U.S. Bank Nat. Ass'n N.D. v. CitiMortgage, Inc.*, 337 P.3d 605, 610 (Idaho 2014).

[41] 1-ER-21–39.

[42] 1-ER-8 n.2–3. This order was consistent with the ABA Comments (Add-7) and Advisory Notes to Rule 23.1 (Add-80). Judge Nye erred by not denying the motion for violating the clear terms of Judge Dale's order. *Negron-Almeda v. Santiago*, 528 F.3d 15, 22–23 (1st Cir. 2008).

board to provide more information.[43] Then, Judge Dale analyzed the two

2016 demands:

> The Idaho statute provides no instruction on how to determine whether the content of the demand is adequate However, the Idaho Supreme Court in *McCann v. McCann*, 61 P.3d 585, 592 (Idaho 2002), cited to 19 Am. Jur. 2d *Corporations* § 2278, 173–74 (1986) for guidance on determining the adequacy of a demand letter:

> > The demand on the directors need not assume a particular form nor need it be made in any special language. However, the stockholder must make an earnest and sincere, and not a feigned or simulated, effort to induce the directors to take remedial action in the corporate name. Statements should be presented to the directors showing the wrong complained of, accompanied by sufficient responsible data which will enable the directors to determine whether litigation could be engaged in with some hope of success. The shareholder must state facts, not mere general charges and conclusions.

> > The demand should give the directors a fair opportunity to initiate the action which the shareholder wants to undertake, and name the potential defendants, as well as the shareholder making the demand.[44]

---

[43] 1-ER-21–24; *see* 15-ER-3664–721.

[44] 1-ER-34.

The *Allison* case cited later in Judge Dale's decision[45] was cited in the ABA Comments for the following guidance:

> **Detailed pleading is not required since the corporation can contact the shareholder for clarification if there are any questions.** *Allison on Behalf of Gen. Motors Corp. v. Gen. Motors Corp.*, 604 F. Supp. 1106, 1117 (D. Del. 1985). In keeping with the spirit of this section, the specificity of the demand should not become a new source of dilatory motions.[46]

Many years after *McCann I*, the Idaho Supreme Court held the ABA Comments can be used to interpret Idaho Statutes. *Wagner v. Wagner*, 371 P.3d 807, 811 (Idaho 2016). "[A] federal court must predict how the highest state court would decide the issue." *McKown v. Simon Prop. Grp. Inc.*, 689 F.3d 1086, 1091 (9th Cir. 2012). Judge Dale appears to have predicted the Idaho Supreme Court would use the ABA Comments for guidance to hold that AIA's board needed to ask for clarification if it felt any of the demands were unclear and when she found Miesen's two 2016 demands represented earnest and sincere efforts.[47]

> Without providing any legal authority, Defendants contend the shareholders' demand letters were not "earnest and sincere" efforts to help the AIA board remedy the shareholders' alleged

---

[45] 1-ER-38–39.

[46] Add-6–7 (quoting Mod. Bus. Corp. Act § 742 cmt. 1 (2003)).

[47] Judge Nye erred by failing to use the ABA Comments. 1-ER-134–35.

concerns. Rather than attempt to alert the board to discrete issues for investigation, Defendants argue the demand letters read as if Miesen's counsel viewed the demand requirement as a formality, listing every conceivable claim AIA might consider asserting against any conceivable defendant. In support of this allegation, Defendants point out that, on September 12, 2016, the board informed Miesen's counsel in writing that his demand letters were "too nebulous" to enable the board to investigate the alleged claims. Defendants argue that, rather than attempt to clarify the grounds for his allegations, Miesen's counsel chose to file the motion to amend.

The Court finds the demand letters demonstrate an earnest and sincere effort to inform the AIA board of directors of the alleged wrongdoing. **To argue that Miesen could have attempted to clarify his allegations is disingenuous, considering AIA itself did not ask for clarifications. Because no follow up was requested by AIA, Miesen was left with no alternative, other than to file suit.**[48]

Then, Judge Dale found that Miesen had adequately identified the wrongdoers:

Upon close review of both demand letters and the allegations made therein, the Court finds that the majority of the allegations sufficiently identify the alleged wrongdoer(s) or a closed set of alleged wrongdoers associated with each allegation. In the beginning of each letter, Miesen identifies individuals and defines the groups of alleged wrongdoers. For instance, when Miesen referred to "Controlling AIA Defendants," he was referring to John Taylor, Connie Henderson, James Beck, Michael Cashman and JoLee Duclos. (Dkt. 186-2.) And, when he referred to "Combined

---

[48] 1-ER-34–35.

Defendants," he was referring to all parties named in the derivative demand except for the AIA Entities. (Id.) The Court finds these groups sufficiently identify closed, albeit large, sets of alleged wrongdoers.

A few of the allegations identify an individual or set of wrongdoers, but include also allegations against "any other responsible party." While the Court agrees that the clause "any other responsible party" opens the set of alleged wrongdoers to an infinite possibility of wrongdoers, allegations containing that clause were asserted in only seven of the one hundred and two total allegations asserted between the two demand letters. Defendants could have requested clarification for these seven allegations in their response letter, but chose not to do so. In addition, Miesen's proposed third amended complaint names as defendants only those persons and entities who were specifically identified in the closed set of wrongdoers.

Upon consideration of the purpose for the demand letter requirement—to provide the board with the opportunity to make a good faith investigation into the claims of wrongdoing—the Court finds Miesen's use of "any other responsible party," in only a fraction of the demand letter allegations, had little to no impact on the AIA board of director's opportunity to investigate the allegations asserted in the demand letters.[49]

Judge Dale found the demands provided sufficient information:

Defendants argue generally, without pointing to any specific demand allegation, that all the allegations are insufficient because Miesen included them "by way of example," and because the subject matters of the allegations are too broad for

---

[49] 1-ER-36–37.

a board to determine what claims to investigate. The Court respectfully disagrees.

The demand letter "must state facts, not mere general conclusions." *McCann*, 61 P.3d at 592 . . . "In most instances, the shareholder need not specify his legal theory, every fact in support of that theory, or the precise quantum of damages." *Allison on Behalf of Gen. Motors Corp. v. Gen. Motors Corp.*, 604 F. Supp. 1106, 1117 (D. Del. 1985). "Decisions as to how and on what theory the corporation will pursue wrongdoers are the proper province of the Board of Directors." *Id.*

**Because the Defendants fail to point to specific allegations that lack sufficient information, and because the AIA board of directors failed to request from the shareholders clarification on any of the allegations in their response to the demand letters, the Court will not go through the one hundred and two allegations to determine the sufficiency of each one.** Upon review of the demand letters, generally, the Court observes that the letters may not include every single fact necessary to support the allegations or provide a precise quantum of damages. However, the allegations (especially those made in the second demand letter) were sufficiently detailed to provide the AIA board of directors the opportunity to make a good faith investigation into the following claims: breach of fiduciary duty; aiding and abetting breaches of fiduciary duties; fraud; aiding and abetting fraud; conspiracy to commit fraud; and, breach of contract. Therefore, the Court finds the content of Miesen's demand letters constituted a sufficient demand on the AIA board of directors.[50]

---

[50] 1-ER-38–39.

Under Idaho law, the adequacy of demands are a question of fact.[51] Judge Dale's decision followed her "review of the record."[52] The record at that time included the Proposed Second Amended Complaint ("<u>Proposed SAC</u>") and Proposed Third Amended Complaint ("<u>Proposed TAC</u>") incorporated in Miesen's two demands and thus demonstrated additional information which had been provided to AIA's board prior to the two demands.

Judge Dale got it right. Unlike Judge Nye, she correctly considered the two Proposed Complaints referenced in the two 2016 demands as well as evidence in the record that proved what AIA's board already knew at the time it received the two demands. Judge Dale correctly concluded that given what AIA's board already knew from her review of the record, the two demands satisfied the Idaho requirement that the demand put the board in a position to make an informed decision on how to proceed.

---

[51] *See* n.40.

[52] 1-ER-21. Judge Boyle also conducted an "examination of the record." 1-ER-5; *see* 2-ER-251–335; 22-ER-5481.

- 25 -

Miesen's derivative demands complied with Idaho's demand requirements and the purpose for requiring a demand.[53] Given what AIA's board knew as evidenced by the record in this case when it received the proposed demands,[54] there can be no doubt that the text of the demands complied with Idaho Code § 30-29-742 and its purpose of allowing AIA's board to make an informed decision whether to assert derivative claims.[55] Notably, the thrust of Miesen's derivative claims were for breaches of fiduciary duties and aiding and abetting, which were included by name in each demand. Remarkably, Judge Nye found the demands inadequate to even assert one derivative claim, even though hundreds of pages of information were provided to AIA's board.

The following points further establish Judge Nye's errors.

► **1** Judge Nye ruled that "the Court need look no further than these allegations in the Third Amended Complaint that the directors were aware of the demand and the underlying issues. There is no need

---

[53] 14-ER-3548–51; 15-ER-3554–652; 15-ER-3653–721; 15-ER-3722–852.

[54] *Id*.; 1-ER-116.

[55] 14-ER-3548–51; 15-ER-3568–70; 15-ER-3653–63; 15-ER-3722–34.

for additional information or clarification from Miesen."[56] Judge Nye largely repeated that finding again.[57] If Judge Nye could see that no further information needed to be provided, the demands were adequate.

► **2** Judge Nye's above findings should be dispositive because the demands complied with the other requirement set out in Idaho Code § 30-29-742 and *McCann I*. The demands: (1) named the shareholders making the demands, (2) identified the defendants to be sued here, (3) were served on AIA's board and provided facts to a board that already knew the facts and had been actively concealing them, (4) requested that suitable legal action be taken and even provided specific claims, and (5) more than ninety days elapsed after each demand.[58] Miesen's case is different from many derivative actions where a publicly traded company's board is being challenged for some nuanced issue for what was a lawful and fully disclosed transaction or corporate act. Here, AIA's board was actively concealing facts from Miesen and the other innocent shareholders and committed criminal acts preventing Miesen from

---

[56] 1-ER-115–16.
[57] 1-ER-146 n.30.
[58] 6-ER-1340–43; 115-ER-3554–652; 15-ER-3653–852.

- 27 -

inspecting records when the board had a duty to disclose.[59] The dilatory third challenge to the adequacy of the demands, the egregious facts, and long procedural history make this case distinguishable from all other derivative actions.

► **3**    Miesen's July 11, 2012, demand alone establishes Judge Nye erred.[60] It lists over 15 items. Paragraph 4 alone is dispositive:

> That the Company[61] . . . pursue the claims and causes of action identified in the First Amended Complaint filed in the Federal Court Case[62] through the date of this demand and for all related acts after the date of this Demand . . . A copy of said First Amended Complaint is incorporated by reference herein . . .[63]

The First Amended Complaint ("FAC") asserted claims for breaches of fiduciary duties, aiding and abetting, breach of contract, waste, account stated and others, and it contains a list of malfeasance that largely continues to this day.[64] Thus, the above quoted paragraph adequately covers the claims asserted in Miesen's Third Amended Complaint

---

[59] *See* Section I (bullet #11); e.g., 6-ER-1308, 1321, 1332–38, 1350.
[60] 15-ER-3554–652.
[61] The demand defines "Company" as AIA.
[62] The demand defines "Federal Court Case" as this case.
[63] 15-ER-3568 ¶4.
[64] 15-ER-3597–652; 15-ER-3601–04 (list of wrongful ongoing acts).

("TAC") against the Remaining Defendants for claims prior to July 11, 2012, through the present time.[65] The purpose of including "and for all related acts after the date of this Demand" was so Miesen did not have to keep making a new demand each day, which would be nonsensical based on the ongoing malfeasance.

► **4**    Miesen's June 13, 2016, demand is equally dispositive because it refers to and relies upon the Proposed SAC in Paragraph 19 as part of the content to show the demand was adequate.[66] That demand also contains 44 Paragraphs. Paragraph 19, which is dispositive, states:

> Pursue all possible claims against the Combined Defendants for taking action violating AIA's amended articles of incorporation, violating AIA's bylaws, violating statutory and common law, and committing torts against AIA, together with aiding and abetting others (including other Combined Defendants) in covering up the torts committed against AIA. **Examples of the torts and the covering up of those torts are contained with the Proposed Second Amended Complaint recently filed in the federal derivative lawsuit by Dale Miesen and Donna Taylor—the facts and torts alleged in that Second Amended Complaint have continued since prior demands.**[67]

---

[65] 6-ER-1284–1366.

[66] 15-ER-3653–721.

[67] 15-ER-3658 ¶19.

In both 2016 demands, "Combined Defendants" was defined and included the current defendants. The Proposed SAC incorporated into the demand as stated above was filed on May 29, 2016, which resulted in a copy being served upon John via the ECF filing system in this case and a copy was also mailed to AIA on that same day.[68] That Proposed SAC also included a list of ongoing misconduct.[69] Thus, John, who constituted the entire AIA board at the time, was in possession of the facts and claims in the Proposed SAC **almost one year** before the TAC was filed.

▶ **5**    Miesen's August 23, 2016, demand is equally dispositive because it refers to and relies upon the Proposed SAC and Proposed TAC in Paragraphs 15 and 32 as part of the content to show the demand was adequate.[70] That demand contained 58 Paragraphs of content. Paragraph 32, which is dispositive, states:

> Pursue all possible claims against the Combined Defendants for taking action violating AIA's amended articles of incorporation, violating AIA's bylaws, violating statutory and common law, and committing torts against AIA, together with aiding and abetting others (including other Combined Defendants) in covering up the torts committed against AIA. **Examples of the torts and the**

---

[68] 21-ER-5415; 21-ER-5416–73.

[69] 21-ER-5449–52.

[70] 15-ER-3722–852.

**covering up of those torts are contained with the proposed Second and Third Amended Complaints recently filed in the federal derivative lawsuit by Dale Miesen and Donna Taylor—the facts and torts alleged in that Second Amended Complaint have continued since prior demands.**[71]

The Proposed SAC incorporated into the demand was the same one that was incorporated into the June 13, 2016, demand. Thus, once again, John had the facts and claims in the proposed SAC **almost one year** before the TAC was filed. The Proposed TAC referred to in the August 2016 demand was filed on July 15, 2016, which resulted in a copy being served upon John via the ECF filing system and a copy was also mailed to AIA on that same day.[72] That Proposed TAC, referenced in the August 23, 2016 demand, was not identical to the current operative TAC; but it named the remaining Individual Defendants and set out facts and claims regarding their misconduct. Thus, John, who constituted the entire AIA board at the time, had the facts and specific claims being requested by Meisen in his possession when he received the August 23, 2016, demand. Paragraph 15 of that demand specifically requested that AIA's board

---

[71] 15-ER-3730 ¶32.

[72] 5-ER-959.

pursue the claims set out in the referenced Proposed TAC. For convenience of the Court, the Proposed SAC and Proposed TAC are found at 15-ER-3735–92 and 15-ER-3793–852. The June 13, 2016, demand and the August 23, 2016, demand are found at 15-ER-3653–63 and 15-ER-3722–34.

► **6**    Notably, the defined terms for Remaining Defendants used in both 2016 demands were the same defined terms used in the operative TAC,[73] with the exception that Miesen included all of the defined groups of defendants in "Combined Defendants." Miesen's use of the terms "pursue all possible claims" and "pursue all claims" were justified. The Individual Defendants were concealing and continued to conceal their wrongful actions from Miesen and the other innocent shareholders.[74]

► **7**    When Judge Dale began her analysis by paraphrasing a number of the paragraphs in Miesen's two 2016 demands,[75] she quoted to one critical paragraph: "Examples of these torts and 'the covering up of these torts' can be found in the Second Amended Complaint. (*Id*. at ¶

---

[73] 6-ER-1284–1366.
[74] E.g., 6-ER-1308, 1321, 1332–38, 1350.
[75] 1-ER-21–24.

19.)"[76] Judge Nye erred by avoiding the content of the paragraphs that incorporated the amended complaints into the demands. *See* Section F.2. Yet, Judge Nye observed, "the Court also recognizes Miesen's position that the June 2016 Demand is best understood in the context of the Second Amended Complaint."[77]

►  **8**    On November 4, 2016, an exact copy of the proposed version of the now operative TAC filed was served on John via the ECF and mailed to AIA.[78] AIA's board, comprised solely of John, had a copy of Miesen's present TAC **over five months** before Miesen's TAC was filed on April 24, 2017. Thus, Miesen was even in compliance with California's more onerous demand requirements, Cal. Corp. Code § 800(b)(2) (Add-12), which applied in *Potter*, 546 F.3d at 1056.

►  **9**    At the time of the service and mailing of the 2016 demands and the exact copies of the proposed complaints, John, as the president and sole director of AIA, was personally served through the ECF and he was responsible to review the mail and in fact he responded to the

---

[76] 1-ER-22.

[77] 1-ER-117 n.8.

[78] 5-ER-1063; 5-ER-1064–147.

demands.[79] **Thus, more than 90 days before the Third Amended Complaint was officially filed as the operative complaint in this case, AIA's board had been provided with two comprehensive derivative demands, two detailed proposed complaints, and most importantly with an exact proposed copy of the TAC that was filed more than 120 days later on April 24, 2017.**[80] There can be no question that this was enough information to satisfy Idaho's requirements and permit any board to decide what action was being requested and whether or not to take the action.[81]

► **10** Although Judge Dale criticized the Individual Defendants for not legitimately challenging the two 2016 demands, they presented no specific challenges at all in their joinder to any of the demands, let alone any particular paragraphs in any of the demands.[82] It was their burden to prove their affirmative defense. *See* n.40. Filing a joinder to HTEH's motion challenging the demands does not pass muster to prove the

---

[79] 16-ER-3854–55; 5-ER-1063; 5-ER-1064–147.

[80] 6-ER-1284–366.

[81] John was also served with prior operative complaints and all other filings via the ECF.

[82] 10-ER-2333–35.

- 34 -

inadequacy of the demands, especially when HTEH disavowed seeking to challenge the demands for the other defendants.[83]

► **11**  While Donna's July 21, 2008, demand was adequate,[84] Miesen need not address it because he was not one of the shareholders making that demand nor was he a plaintiff in the FAC.[85]  His July 21, 2012, demand moots any inadequacy in the 2008 demand. Nevertheless, when John submitted his declaration in 2021 seeking to dismiss certain claims as being time-barred, he conceded the 27 items identified in the 2008 demand were understood and at issue in Reed's Fifth Amended Complaint (AIA's board had agreed to investigate Reed's allegations in a tolling agreement), which was filed over six months before the 2008 demand was submitted to AIA's board.[86]  Judge Nye even noted, "the allegations in the present lawsuit revolve around actions relating to or

---

[83] 16-ER-3984–4016.

[84] 14-ER-3548–51.

[85] *Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).

[86] 17-ER-4124, 4135–38 ¶¶21–22, ¶28, 4142–87, 4188–91; *see* 16-ER-3931–37, 38–83; 19-ER-4854–55 §1.5. Reed's tort claims were never adjudicated because his redemption was declared illegal. *Taylor v. Bell*, 340 P.3d 951, 955 (Wash. Ct. App. 2014).

occurring in the *Taylor v. AIA Services, et al.* lawsuit."[87]

► **12** AIA's board has never asked Miesen or any other innocent shareholder for any clarification or additional information. This is a complete breach of John, Beck and Connie's fiduciary duties owed to Miesen and the other innocent minority shareholders. The board was required to make full disclosure, deal in good faith and ask for additional information if they truly didn't understand the demands. But as Judge Nye found, the board knew about the transactions and issues. There was no need to inform the board about what they already knew and were actively concealing from Miesen and the innocent shareholders.[88]

► **13** The undersigned were unable to locate any case where a derivative action was dismissed based on the inadequacy of the demand after the case was pending for over ten years and almost fourteen years after the first demand. There is no way AIA's board did not have sufficient information or time to decide to have AIA pursue the derivative claims. At the time the Remaining Defendants joined in HTEH's motion

---

[87] 1-ER-119 n.119.
[88] 6-ER-1308, 1321, 1332–38, 1350.

in 2021, there were over 1,060 primary docket entries in this case, including McDermott's report, which also provided more information to AIA's board.[89] And the Remaining Defendants' belated challenge to the adequacy of the demands over ten years after this case was filed violated the "spirit" of Idaho Code § 30-29-742 because "the demand should not become a new source of dilatory motions."[90] Judge Nye should have denied the motion on this basis alone. Judge Nye's decision was inequitable by addressing the adequacy of the demands for the third time after countless hours were spent litigating this complex case and after Miesen had incurred over $400,000 in costs.[91] This helps explain why Miesen's law of the case arguments are compelling. *See* Section F.1.

▶ **14** Thus, Miesen's demands have complied with Idaho's demand requirements. Additionally, they have certainly substantially complied with the plain meaning, spirit and intent of Idaho Code § 30-29-742. *Idahoans for Open Primaries v. Labrador*, 533 P.3d 1262, 1275 (Idaho 2023).

---

[89] 22-ER-5480–591.

[90] Add-7.

[91] 20-ER-5167–208; 20-ER-5210–11.

► **15**    There is no dispute that Idaho Code § 30-29-742 is vague regarding what content is required in a demand. Given the foregoing, the dilatory third challenge to the demands, and the egregious facts of this case, this Court should separately find the derivative demands adequate and reinstate Miesen's derivative claims because the Idaho Supreme Court "disfavors constructions that would lead to absurd or unreasonably harsh results." *State v. Doe*, 92 P.3d 521, 525 (Idaho 2004).

Thus, this Court should reverse Judge Nye and reinstate Miesen's derivative claims. Not only is reversing Judge Nye the correct thing to do, but it is also the equitable thing to do, which is consistent with the equitable nature of derivative actions. While Miesen has established additional reversable errors in Sections A.2, D.1, E, and F, this Court need not reach them if it agrees the demands were adequate.

## 2.    Judge Nye erred by relying on *Munding*.[92]

### a. *Munding* was factually distinguishable and not persuasive authority.

In *Miesen v. Munding*, 822 F. App'x 546 (9th Cir. 2020) ("*Munding*"), this Court found that the 6 quoted paragraphs in the FAC

---

[92] 1-ER-99–150; 16-ER-3918–23.

from Miesen's two 2016 demands were inadequate ONLY as to Munding and his firms.[93]

On appeal, the two 2016 demands were submitted to the *Munding* panel.[94] The court stated: "the omitted portions of the letters are **no more specific, nor any more relevant**, than the excerpts included in the Amended Complaint." *Munding*, 822 F. App'x at 548. This was because the two 2016 demands were not primarily directed at Munding. Miesen's two 2016 demands contained a total of **102 paragraphs of items**, but Munding or his firm were only referenced in **4 paragraphs**. Both demands opened with definitions identifying wrongdoers and parties to be acted against by AIA, and Munding was not included there.[95] Munding was never the primary target. The definition paragraphs in the two demands included every defendant set out in Miesen's operative TAC here, using the same defined terms used in the TAC.[96] Munding was not in these definitions. The Individual Defendants

---

[93] 16-ER-4070–71.

[94] 15-ER-3653–63; 15-ER-3722–34; Dkt. Entry No. 11-2 at 364–87 (Case No. 19-35255).

[95] 15-ER-3654, 3722.

[96] 6-ER-1288–92; 15-ER-3654; 15-ER-3723.

and CropUSA were named defendants in the proposed amended complaints incorporated into the two demands to provide comprehensive facts and specific claims.[97] Munding was never listed as a defendant in the proposed complaints referenced in the demands and was not sued in Miesen's TAC here.[98]

The Proposed SAC and Proposed TAC from our case, which were incorporated into the two 2016 demands, were NOT filed in either court in *Munding* or ever considered there. Unlike Judge Dale, Judge Nye and the Individual Defendants, the courts in *Munding* never had these proposed amended complaints, which are highly relevant here.

Miesen's July 11, 2012, demand and the FAC incorporated into that demand to provide additional facts and specific claims were never before either court in *Munding*.[99] Yet Judge Nye used *Munding* to find that demand was inadequate.

The case at bar and *Munding* could not be more factually

---

[97] 15-ER-3658 ¶19, 3726 ¶15, 3730 ¶32; 15-ER-3664–721; 15-ER-3735–92; 15-ER-3793–852.

[98] 6-ER-1284–1366. GemCap asserted contribution claims against Munding's firm. 8-ER-1819–30.

[99] 15-ER-3568–70; 15-ER-3597–652.

distinguishable. Judge Nye erred by treating *Munding* as if the facts, the defendants, and the issues in both cases were identical. He stated *Munding* dealt with "this exact matter" before him.[100] This was incorrect.

*Munding* did not even provide a persuasive analysis of Idaho law or predict how the Idaho Supreme Court would decide any of the issues here. *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020).

Thus, Judge Nye erred by relying on *Munding*, and it could not be used to establish the two 2016 demands and Miesen's other demands were inadequate here.

### b. *Munding* was not controlling authority.

Judge Nye erred because *Munding* and the district court's decision[101] are not precedent, authority or controlling Idaho authority, nor are they binding on this Court. 9th Cir. R. 36-3(a); *Center for Investigative Reporting v. United States Dept. of Justice*, 14 F.4th 916, 932 n.6 (9th Cir. 2021); *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986). The controlling authority was Idaho Code § 30-29-742,

---

[100] 1-ER-148.
[101] 16-ER-3898–917.

- 41 -

*McCann I*, 61 P.3d at 591–92, and *Wagner*, 371 P.3d at 811.

### c. *Munding* was erroneously used as the pivotal basis for Judge Nye's decision.

. . . [A] nonprecedential disposition is not appropriately used— as it was here—as the pivotal basis for a legal ruling by a district court. . . .

*Grimm*, 971 F.3d at 1067.

Judge Nye quoted, discussed, and cited *Munding* over **45 times** as the pivotal basis for his decision.[102] Judge Nye confirmed *Munding* was pivotal,

Although Judge Dale originally found the letters to be adequate, the Court now has the benefit of a Ninth Circuit case on this exact matter.[103]

As established in Sections A.1–2, this was incorrect.

### B. Judge Nye erred by excluding McDermott as an expert.[104]

#### 1. Judge Nye erred by abdicating his gatekeeping duties and assuming the role of the fact finder.

In *Elosu*, this Court explained how Judge Nye erred when, as here,

---

[102] 1-ER-99–150.

[103] 1-ER-148.

[104] Review is de novo. *United States v. Adame*, 827 F.3d 637, 645 (7th Cir. 2016); *see* n.163; *Murray v. Southern Route Mar. SA*, 870 F.3d 915, 925 (9th Cir. 2017).

he excluded a qualified expert witness:

> . . . [T]he district court is "a gatekeeper, not a fact finder." Although a district court may screen an expert opinion for reliability, and may reject testimony that is wholly speculative, it may not weigh the expert's conclusions or assume a factfinding role. . . . the district court took issue only with [the expert's] "ultimate conclusions." In its findings, the court disregarded much of the expert's scientific analysis, weighed the evidence on record, and demanded corroboration—factfinding steps that exceed the court's gatekeeping role.

*Elosu*, 26 F.4th at 1020. This Court explained the Rule 702 and *Daubert* gatekeeping functions that were also not followed here. *Id.* at 1020–29.

As in *Elosu*, Judge Nye misapplied the law when he failed to limit himself to his gatekeeping function under Rule 702 and *Daubert*.[105] Judge Nye never addressed McDermott's qualifications or the relevancy or reliability of his opinions. *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (admissibility only arises after an expert is qualified).

---

[105] 1-ER-81–98. For the same reasons in this Section B, Judge Nye misapplied the law and erred by denying reconsideration.

Instead, Judge Nye excluded McDermott for being an "advocate masquerading as an expert."[106] Judge Nye essentially found that McDermott had become one of Miesen's attorneys because McDermott's opinions were expressed strongly and in language used by attorneys. This was a credibility finding. It is true that McDermott felt strongly. But what highly ethical attorney would not feel strongly and speak strongly when rendering opinions on such a mass of improper behavior by the Individual Defendants, two of whom were licensed attorneys,[107] and HTEH's attorneys. McDermott was faulted for sounding like a lawyer and asking for more information so he could render reliable opinions, which is something any credible expert would request.[108] And in any corporate governance or legal malpractice case, the expert will be an attorney and will sound like an attorney. *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100–01 (1st Cir. 1997).

Judge Nye made multiple errors. For example, Judge Nye weighed the evidence and found "McDermott has assumed the improper role of an

---

[106] 1-ER-87.

[107] 16-ER-3896–97.

[108] E.g., 8-ER-1903–20; 9-ER-2155–58.

advocate masquerading as an expert in this case."[109] All experts advocate for the party that employs them, but that doesn't mean they have become the party's attorney. After erroneously weighing more evidence, Judge Nye concluded that "McDermott may not provide expert testimony in this case because he has improperly assumed the role of [an] advocate, rendering his opinions unhelpful to the jury, unreliable, and unduly prejudicial."[110] On reconsideration, Judge Nye reiterated that McDermott rendered, " 'overly biased opinions amounting to advocacy.' "[111] These are credibility findings properly left for the jury.

Judge Nye erroneously relied on *Lippe v. Bairnco Corp.*, 288 B.R. 678 (S.D.N.Y. 2003) and some other district court cases.[112] In *Lippe*, the expert had admitted to having served as the attorney for the party, because he had, in a court proceeding, actually appeared as the party's attorney. McDermott has never been Miesen's attorney. In *Lippe* the witness had apparently refused to limit the scope of his testimony, but

---

[109] 1-ER-87.

[110] 1-ER-93.

[111] 1-ER-95.

[112] 1-ER-85–86.

McDermott stated under oath that he would follow all court instructions.[113] 288 B.R. at 688–89.

Judge Nye's ruling created a new exclusion rule that strongly held and expressed opinions by an attorney expert witness would convert that witness into the party's attorney, which was contrary to this Court's binding precedent. *E.g., Primiano v. Cook*, 598 F.3d 558, 564–67 (9th Cir. 2010); *Day v. Apoliona*, 496 F.3d 1027, 1031 (9th Cir. 2007). When Judge Nye denied Miesen's motion for interlocutory appeal, he stated, "the Court did not create a new rule; it applied Rules 403 and 702."[114] But Judge Nye misapplied both rules.

Even if *Lippe* and the other district court cases cited by Judge Nye were controlling precedent, they are distinguishable because Miesen, his counsel, and McDermott all denied the allegations; testifying that McDermott had never acted as Miesen's attorney and he never acted inappropriately.[115] As in *Elosu*, HTEH argued McDermott should be

---

[113] 11-ER-2414–15 ¶37.

[114] 17-ER-4290.

[115] 10-ER-2374–82; 11-ER-2394–416; 11-ER-2418–14-ER-3299; 14-ER-3371–78.

excluded as an expert *without* challenging his qualifications or the relevance and reliability of his opinions.[116] As in *Elosu*, the issue was for the jury to decide how much weight to give McDermott's opinions once McDermott, Miesen and his counsel submitted declarations denying the allegations.

McDermott testified that he could easily remove or modify any questionable wording without impacting his opinions. He also testified that he would limit his testimony if instructed to do so by Judge Nye.[117] But McDermott was never given a chance and Judge Nye failed to recognize the egregious malfeasance that led to McDermott opinions.

Nothing was improper about any of McDermott's declarations. He was ethically, honestly, diligently, and methodically performing tasks as an expert and seeking information to render reliable opinions.[118] *E.g.,* 1, Douglas Danner, *Med. Malprac. Chklsts. & Disc.* § 8:10 (2025) (recommending that experts be used for all aspects of a case).

---

[116] 10-ER-2257–76; 14-ER-3442–52.

[117] 11-ER-2414–15 ¶37.

[118] 6-ER-1262–69; 8-ER-1903–18; 9-ER-2071–82; 9-ER-2084–133; 9-ER-2153–58; 9-ER-2160–62.

Even if McDermott had engaged in the alleged conduct (he did not), the question of how much weight to give his opinions would have still been for the jury to decide. This Court has observed experts are presumed to advocate for their side, "[i]t would be ideal . . . if experts were just experts, and not partisans nor advocates." *Carlstrom v. United States*, 275 F.2d 802, 805 (9th Cir. 1960).

> Trial judges must exercise sound discretion as gatekeepers of expert testimony under *Daubert*. Fuller, however, would elevate them to the role of St. Peter at the gates of heaven, performing a searching inquiry into the depth of an expert witness's soul—separating the saved from the damned. Such an inquiry would inexorably lead to evaluating witness credibility and weight of the evidence, the ageless role of the jury.

*McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995).

## 2. Judge Nye erred because McDermott was qualified and his opinions were relevant and reliable.

This Court should rule that McDermott may testify as an expert.

### a. McDermott was highly qualified.

An expert may be qualified by having "knowledge, skill, experience, training, or education." Fed. Evid. R. 702 (Add-110, 117); *Garrett v. Desi Indus., Inc.*, 705 F.2d 721, 724 (4th Cir. 1983).

McDermott was qualified under each of the five ways under Rule

- 48 -

702 on matters relating to legal malpractice, directors, officers, and majority or controlling shareholders. As in *Elosu*, neither the defendants nor Judge Nye challenged any of McDermott's qualifications. McDermott's qualifications included: (1) education, training, and experience as a long-term practicing attorney, including most recently at a prestigious multi-national law firm, Clifford Chance, (2) experience as an adjunct corporate law Professor, (3) experience as a mediator, (4) experience as an author of a corporate law text book for law school, a co-author of a treatise on opinion letters, and a member of the prestigious Tri-Bar Opinion Committee, and (5) education, training, experience in corporate governance, and experience serving as a director of two different organizations.[119] The Washington Court of Appeals found McDermott "eminently qualified to testify as an expert." *Bell*, 340 P.3d at 960.

### b. McDermott's opinions were relevant.

"The relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.' "

---

[119] 11-ER-2445–51; 11-ER-2418–13-ER-3081.

*Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014); *Elosu*, 26 F.4th at 1024. Expert testimony is required for legal malpractice. *Greenfield v. Smith*, 395 P.3d 1279, 1285 (Idaho 2017).

McDermott's opinions were relevant. As in *Elosu*, neither the defendants nor Judge Nye challenged the relevancy of McDermott's opinions. McDermott's opinions were relevant for Miesen's case, including for: (1) Miesen's legal malpractice claims; and breaches of the standard of care and causation, and (2) the duties owed and related matters for directors, officers, majority or controlling shareholders; and the breaches of those duties and causation.[120]

### c. McDermott's opinions were reliable.

"Ultimately, 'the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology.' " *Elosu*, 26 F.4th at 1024. In *Elosu*, this Court explained the *Daubert* principles that apply here. *Id.* at 1020, 1024–29.

Although an issue of first impression in this Court, other courts have addressed reliability for legal malpractice experts.

---

[120] 6-ER-1284–1366; 11-ER-2418–14-ER-3299.

> . . . (1) whether the expert identified the materials relied upon and personally examined the file underlying the case; (2) whether the expert sufficiently explained why he or she reached an opinion; (3) whether the expert cited other sources relied upon by attorneys such as applicable statutes, treatises, or publications by professional organizations; or (4) whether the expert demonstrated that his opinion is accepted by his peers. This is a non-exhaustive annotation . . .

*McDevitt v. Guenther*, 522 F. Supp. 2d 1272, 1291–92 (D. Haw. 2007). This Court should adopt the above factors for legal malpractice and corporate governance opinions. And "[a]n expert's specialized knowledge and experience can serve as the requisite 'facts or data' on which they render an opinion." *Elosu*, 26 F.4th at 1024. "[T]here may be particular areas of law, such as legal malpractice, where expert testimony on legal matters is admissible where it would normally be excluded." *Soto-Rivera*, 133 F.3d at 100–01; Fed. R. Evid. 704.

McDermott's opinions were reliable. As in *Elosu*, neither the defendants nor Judge Nye challenged the reliability of McDermott's opinions. McDermott's opinions complied with and exceeded the requirements under *Daubert* and Rule 702 and were methodically prepared consistent with his qualifications and *McDevitt*, 522 F. Supp.

2d at 1291–92.[121]

### 3.  Judge Nye misapplied Rule 403 to exclude McDermott.

Judge Nye misapplied Rule 403 by excluding McDermott because he lacked credibility or believability.[122]

> "Weighing probative value against unfair prejudice under Rule 403 means probative value with respect to a material fact *if the evidence is believed*, not the degree the court finds it believable." The court may not exclude relevant evidence . . . on the ground that it does not find the evidence to be credible . . . "a trial judge [may not] refuse to admit evidence simply because he does not believe the truth of the proposition that the evidence asserts."

*United States v. Evans*, 728 F.3d 953, 963 (9th Cir. 2013).

Judge Nye misapplied Rule 403 by failing to address Miesen's need for McDermott's testimony. "Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission." Fed. R. Evid. 403, Advisory Committee Notes (Add-108). Judge Nye erred by not balancing the need for McDermott's testimony.[123] *United States v. Ray*, 956 F.3d 1154, 1160 (9th Cir. 2020).

---

[121] 11-ER-2418–14-ER-3299.
[122] 1-ER-85, 92–93; 1-ER-95.
[123] 1-ER-81–98.

Judge Nye erred because he did not find McDermott's opinions were relevant under *Daubert* or Rule 401. The issue never reached Rule 403.

## C.   Judge Nye erred by dismissing Miesen's direct claims.[124]

### 1.   Miesen pled a direct claim for ultra vires relief.

(b) A corporation's power to act may be challenged:

> (1) In a proceeding by a shareholder against the corporation to enjoin the act;
> . . . .

(c) In a shareholder's proceeding under subsection (b)(1) of this section to enjoin an unauthorized corporate act, the court may enjoin or set aside the act, if equitable and if all affected persons are parties to the proceeding, and may award damages for loss . . . suffered by the corporation . . .

Idaho Code § 30-29-304(b), (c) (Add-15–22).[125] As Judge Dale noted,

> This code section allows shareholders to challenge a corporation's alleged ultra vires acts, and if successful, provides shareholders a right to enjoin or reverse the acts and collect damages.[126]

The ABA Comments[127] clarify "Corporate action also includes inaction or refusal to act," and "the same rules apply to all contracts no matter at

---

[124] Review is de novo. *See* n.35.

[125] *See* n.39.

[126] 1-ER-63; *see* 1-ER-50, n.17; 1-ER-62–63, 75–76.

[127] *Wagner*, 371 P.3d at 811.

what stage of performance."[128]

Judge Nye erred by dismissing this direct claim.[129] Miesen adequately pled a claim for ultra vires relief (including against AIA).

> Plaintiff seeks all damages, equitable relief, injunctive relief and other relief available against the Defendants under applicable Idaho Code, including, but not limited to I.C. §§ 30-1-304 and 30-29-304 . . . setting aside and/or enjoining any other transfers, payments, obligations, notes, contracts, agreements, guarantees, and instruments (including deeds) which were ultra vires (including the payment of attorneys' fees and costs for any of the defendants); and (e) award all damages and relief (including setting aside any agreements) pertaining to all ultra vires acts involving AIA Services and/or AIA Insurance.[130]

Miesen also asserted a declaratory judgment claim and requested ultra vires relief in his prayer for relief.[131] Miesen's TAC contained many facts showing the ultra vires violations of AIA's articles and AIA's bylaws.[132] *See* Section I (bullet #s 1–13); *Taylor v. Taylor*, 422 P.3d 1116, 1124 (Idaho 2018) (addressing AIA's articles); *Fisher v. Shipyard Village Council of Co-Owners, Inc.*, 760 S.E.2d 121, 130 (S.C. Ct. App. 2014).

---

[128] Add-15 (quoting Mod. Bus. Corp. Act § 304 cmt. (2003)).

[129] 1-ER-167–73.

[130] 6-ER-1357–58; 6-ER-1284–1366.

[131] 6-ER-1355–57; 6-ER-1360–65.

[132] 6-ER-1289–365.

Judge Nye erred by misapplying *McCann II*, 275 P.3d at 829–34, which does not apply to claims asserted under Idaho Code § 30-29-304.[133] Miesen did not participate in any of the ultra vires acts, and any damages would be recovered for AIA. Judge Nye also erred by weighing evidence regarding Miesen's assertions. Contrary to his findings, Miesen consistently maintained that he asserted direct claims in filings and in discovery.[134] In 2016, defendants even admitted it was a "direct" claim.[135] These claims should be reinstated.

### 2. Miesen pled a direct claim to have the recoveries distributed directly to innocent shareholders.

Judge Nye erred because Miesen asserted a direct claim requesting the recoveries be paid directly to the innocent shareholders.[136] *In re El Paso Pipeline P'rs L.P. Deriv. Litig.*, 132 A.3d 67, 121–32 (Del. Ch. 2015);

---

[133] Judge Nye also erred because Miesen adequately pleaded a direct fiduciary duty claim. 6-ER-1289 ¶5, 1315, 1333, 1339, 1343–45, 1343–6, 1350.

[134] E.g., 6-ER-1280; 9-ER-1979–81; 9-ER-2007–10; 14-ER-3545; 17-ER-4309–10; 19-ER-4845–46, 4848; 20-ER-5276 n.1.

[135] 5-ER-1161.

[136] E.g., 6-ER-1355–57, 1357 ¶226(o), 1364 ¶11.

13 *Fletcher Cyc. Corp.* § 6028 (2025). As of May 31, 2025, Miesen has recovered $1,520,474.88.[137] Miesen asserts that these funds and any other recoveries should be paid directly to the innocent shareholders. This claim should be reinstated.

### 3. The defendants never challenged a single direct claim.

Judge Nye erred by shifting the burden to Miesen to prove his direct claims. Judge Nye should have denied the motion because the Remaining Defendants did not challenge the pleading sufficiency of any specific claims, even after Judge Nye had ordered them to do so.[138] *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006).

### D. Judge Nye erred by not ruling that demand was excused and only AIA could challenge the demands.[139]

After Miesen asserted that demand should be excused for reasons other than futility and that only AIA could challenge the demands, Judge Nye erroneously ruled that these issues had been addressed by the Idaho Supreme Court.[140] None of the cases cited by Judge Nye addressed the

---

[137] 20-ER-5209.

[138] 1-ER-154.

[139] Review is de novo. *See* n.35.

[140] 1-ER-104–108, 119, 145–47.

issues raised by Miesen. Judge Nye erred by not predicting how the Idaho Supreme Court would decide the issues and by not ruling in Miesen's favor. *McKown*, 689 F.3d at 1091.

### 1. Miesen was excused from making any demands.

Judge Nye erred because the Idaho Supreme Court has *only* held, "Idaho law does not recognize the futility exception to the demand requirement." *Kugler*, 374 P.3d at 578.

> [D]emand typically is deemed to be futile when a majority of the directors have participated in or approved the alleged wrongdoing, or are otherwise financially interested in the challenged transactions.

*Kamen*, 500 U.S. at 102. Miesen was *not* asserting demand futility. And Idaho continues to recognize the principle that demand may be " 'excused by extraordinary conditions.' " *Kugler*, 374 P.3d at 578; Idaho Rule of Civil Procedure 78(b)(3)(B) (Add-56). The following meet that standard.

### a. Demand was excused under the ultra vires exception.

Judge Nye erred because demand was excused since Miesen had "genuinely challenge[d] the board of directors' transactions as ultra vires acts[.]"*Aztec Oil and Gas, Inc. v. Fisher*, 152 F. Supp. 3d 832, 842 (S.D. Tex. 2016); *Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1186 (Nev. 2006)

- 57 -

(abrogated on other grounds).

The verified allegations in Miesen's TAC and the documents establish that virtually every transaction, act and failure to act were ultra vires, including AIA never having a duly elected and fully seated board with Donna's designee during all relevant times and refusing to hold shareholder meetings. *See* Sections I (bullet #s 1–13) and VI.C.1; *Hill v. Small*, 183 S.E.2d 752, 753–54 (Ga. 1971); *Kemmer v. Newman*, 387 P.3d 131, 134 (Idaho 2016); *Marine Servs. Unlimited, Inc. v. Rakes*, 918 S.W.2d 132, 134 (Ark. 1996).

### b. Demand was excused under the close corporation exception.

Judge Nye erred because demand was excused since AIA is closely held,[141] not following any corporate governance (*see* Section I), and there are no risks in allowing this over 15-year-old case to proceed.[142] *E.g.*, *Durham v. Durham*, 871 A.2d 41, 44–46 (N.H. 2005); *Aurora Credit Servs., Inc. v. Liberty West Dev., Inc.*, 970 P.2d 1273 (Utah 1998).

---

[141] 6-ER-1293 ¶25.

[142] 6-ER-1284–366; *see* Section I (bullet #s 1–13).

### c. Demand was excused under the corporation's failure to object exception.

Judge Nye erred because demand was excused since, for almost ten years, AIA never challenged Miesen's demands.[143] *Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 730–32 (Del. 1988).

### 2. Only AIA can independently challenge the adequacy of the demands.

Judge Nye erred because only AIA could challenge the adequacy of the demands, especially since Idaho does not recognize the futility exception recognized by most jurisdictions. *Haberman v. Wash. Pub. Power Supply Sys.*, 744 P.2d 1032, 1060 (Wash. 1987); *Colan v. Monumental Corp.*, 524 F. Supp. 1023, 1028 (N.D. Ill. 1981); *Prager v. Sylvestri*, 449 F. Supp. 425, 429 (S.D. N.Y. 1978); Note, *Defenses in Shareholders' Derivative Suits—Who May Raise Them*, 66 Harv. L. Rev. 342, 346 (1952).

Permitting only AIA to challenge the demands is consistent with the plain meaning of Idaho Code § 30-29-742, which states the demand is provided to the "corporation" and *not* to third parties for their

---

[143] 1-ER-20–57; 1-ER-99–150; 17-ER-4305; 22-ER-5487–610.

consideration. Holding that a corporation is the only party that can assert the adequacy of demands as a defense is consistent with the intent of demands—to allow the corporation (not the guilty insiders) to decide whether to pursue the claims. *E.g., Kugler*, 374 P.3d at 578. The Idaho Supreme Court has limited the parties who may invoke a statute as a defense.[144] *E.g.*, *Taylor v. AIA Servs. Corp.*, 261 P.3d 829, 841 (Idaho 2011); *La Voy Supply Co. v. Young*, 369 P.2d 45, 49 (Idaho 1962).

It would be an "absurd" result if a corporation took the position that a demand is adequate, but third parties could still challenge the adequacy. *Doe*, 92 P.3d at 525; *cf. Packer on Behalf of 1–800–flowers.com, Inc. v. Raging Cap. Mgmt., LLC*, 242 F. Supp. 3d 141, 143 n.1 (E.D. N.Y. 2017). Allowing multiple parties to challenge demands would also lead to inconsistent results, as seen in this case.[145]

AIA never joined in the motions addressing the adequacy of the demands before Judge Dale or Judge Nye.[146] Thus, this Court should reinstate Miesen's derivative claims.

---

[144] *See* n.40.

[145] *Compare* 1-ER-20–39 *with* 1-ER-99–150 *and* 16-ER-3898–417.

[146] 5-ER-1148–49; 10-ER-2333–34; 17-ER-4305; 22-ER-5488–615.

Other than challenging demand related issues, the attorney representing the corporation must remain neutral in the adjudication of derivative claims and must be truly independent counsel. *E.g., Krakow Bus. Park v. Locke Lord, LLP*, 135 F. Supp. 3d 770, 791–92 (N.D. Ill. 2015); 13 *Fletcher Cyc. Corp.* § 5997 (2025); *In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1188–90 (N.D. Cal. 1993). This ensures the corporation does not defend guilty insiders or allow a guilty insider's attorney to represent the corporation. Notably, AIA's counsel, Mr. Trout, is John's attorney. He was retained by John, bills John, has been paid by John, and has represented John and CropUSA in related litigation.[147]

### E. Rule 23.1 does not require Miesen to plead the adequacy of his demands under Idaho law, and Rule 23.1 motions should be reviewed de novo.[148]

Rule 23.1 clearly *contemplates* both the demand requirement and the possibility that demand may be excused, it does not *create* a demand requirement of any particular dimension.

*Kamen*, 500 U.S. at 96. State law governs demands. *Id.* at 108–09.

---

[147] E.g., 19-ER-4968–88; 21-ER-5374, 5377–81.

[148] Review is de novo. *See* n.35; *KST Data, Inc. v. DXC Tech. Co.*, 980 F.3d 709, 713 (9th Cir. 2020).

Under Idaho law, the adequacy of a demand is a question of fact, the failure to comply with a statute is an affirmative defense, and the burden is on the defendant to prove noncompliance. *See* n.40; *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123–24 (2d Cir. 1991).

Judge Nye erred because Rule 23.1 does not require Miesen to plead and prove the adequacy of his demands.[149] This issue is a question of fact and an affirmative defense under Idaho law.[150] Unlike California law, Idaho law does not require the adequacy of demands to be pleaded in the complaint. *Compare Potter*, 546 F.3d 1059–66 *and* Cal. Corp. Code § 800(b)(2) (Add-12) *with* Idaho Code § 30-29-742 (Add-4–11) *and McCann I*, 61 P.3d at 591–92. Miesen's TAC complied with Rule 23.1(b).[151] The motion should have been denied on this basis, especially when the Individual and CropUSA Defendants only filed a joinder to HTEH's motion which only challenged the adequacy of the demands as to HTEH.[152]

---

[149] 1-ER-124–26, 133–34 n.22

[150] The Individual and CropUSA Defendants did not please such a defense. 6-ER-1392–94.

[151] 6-ER-1340–43, 1366.

[152] 10-ER-2237–55; 10-ER-2333–35; 16-ER-3984–4015.

- 62 -

Additionally, this Court should overrule *Potter* and other precedents and hold the de novo standard applies to Rule 23.1 motions. *E.g., Union de Empleados de Muelles de Puerto Rico PRSSA Welfare Plan v. UBS Fin. Servs. Inc. of Puerto Rico*, 704 F.3d 155, 161–63 (1st Cir. 2013); *Rosenbloom v. Pyott*, 765 F.3d 1137, 1159–60 (9th Cir. 2014). Miesen's case illustrates why de novo review should apply.

**F.    Judge Nye committed additional reversable errors.[153]**

**1.    Judge Nye erred by misapplying the law of the case doctrine.[154]**

**a. Judge Nye erred by not finding that the doctrine applied to Judge Dale and Judge Boyle's decisions.**

There are three limited exceptions to the law of the case doctrine. *Delta Sav. Bank*, 265 F.3d at 1027; *Zeyen v. Bonneville Joint Dist., # 93*, 114 F.4th 1129, 1138–39 (9th Cir. 2024).

In 2011, Judge Boyle, without comment, declined to find the 2008 demand inadequate and refused to dismiss.[155] In 2017, Judge Dale ruled

---

[153] Review is de novo. *See* n.35.

[154] Review is an abuse of discretion. *Delta Savings Bank v. United States*, 265 F.3d 1017, 1027 (9th Cir. 2001), which is the misapplication of law. *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1072 (9th Cir. 2014).

[155] 1-ER-2–5, 2-ER-238–42; 2-ER-400; 2-ER-346–49.

that Miesen's two 2016 derivative demands were adequate.[156]

On May 5, 2022, Judge Nye erred by not applying the law of the case doctrine to enforce Judge Boyle and Judge Dale's decisions. Judge Nye did not find that Judge Boyle or Judge Dale, who were sitting by designation,[157] had erred or abused their discretion, nor did he find that any exceptions to the doctrine applied.[158]

The 2008, 2012 and 2016 demands had all been filed in the record prior to Judge Dale's decision, so the "new evidence" exception could not apply.[159] *Marlyn Neutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009).

Judge Nye erred because he found no exception and merely second-guessed Judge Dale:

> Stated differently, even had this been brought as a motion for partial reconsideration of Judge Dale's prior findings, the Court could have come to the same conclusion it did today.[160]

---

[156] 1-ER-20–30; 5-ER-1150–55; 6-ER-1262.

[157] 28 U.S.C. § 636(c)(1).

[158] 1-ER-99–150.

[159] 14-ER-3548–15-ER-3852.

[160] 1-ER-148.

- 64 -

Judge Nye erred by ruling that the doctrine did not apply because Judge Dale's decision was decided on a motion to amend and Judge Boyle's decision did not address the demand letters.[161]

The "issue" of the adequacy of the demands was an "issue" in both motions. *Relevant Group, LLC v. Nourmand*, 116 F.4th 917, 926 (9th Cir. 2024) (the doctrine applies to any "issue").

As Judge Nye noted, the Individual and CropUSA Defendants argued amendment should be denied because it would be futile.[162] Thus, Judge Dale's decision was equivalent to denying a Rule 12(b)(6) motion. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *Talley v. Wetzel*, 15 F.4th 275, 285 n.6 (3d Cir. 2021); *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

A district court is not required to explain why a motion to dismiss is denied. *Cf. U.S. ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 907 (9th Cir. 1994); *Abdisamad v. City of Lewiston*, 960 F.3d 56, 59 (1st Cir. 2020). And the Individual and CropUSA Defendants never

---

[161] 1-ER-127 n.14, 127–30, 148.
[162] 1-ER-128; 5-ER-1149–50.

asserted Judge Boyle had erred by not providing an explained decision.[163]

Notably, Judge Nye's decision inflicted manifest injustice upon Miesen and the other innocent minority shareholders. *See* Section A.1 (bullet #13). *Delta Ltd. v. U.S. Customs & Border Prot. Bureau*, 393 F. Supp. 2d 15, 17 (D. D.C. 2005); *U.S. ex. rel. Rafter H Constr., LLC v. Big-D Constr. Corp.*, 358 F. Supp. 3d 1096, 1101 (D. Idaho 2019).

### b. This Court should defer to Judge Dale and Judge Boyle.

When Judge Boyle, Judge Dale and Judge Nye ruled, Rule 23.1 demand decisions were discretionary. *Potter*, 546 F.3d at 1056.

Thus, this Court should adopt a new rule and defer to Judge Dale and Judge Boyle's earlier discretionary decisions for the reasons explained in *Williams v. C.I.R.*, 1 F.3d 502, 503–04 (7th Cir. 1993). *See Zeyen*, 114 F.4th at 1139. After all, under the abuse of discretion standard, two different judges could correctly apply the law and still reach opposite conclusions. And this would give the doctrine some teeth for discretionary decisions, consistent with this Court's desire to give

---

[163] 10-ER-2333–35.

litigants such as Miesen some finality on important threshold issues.

If this Court does not adopt this rule, Miesen has established Judge Nye's decision was erroneous. *See* Sections A, D–E, F.2–4. This Court should enforce Judge Dale and Judge Boyle's decisions.

### 2. Judge Nye erred by not considering Miesen's documents.[164]

On a Rule 12(c) motion, a court may take judicial notice and consider authentic documents referenced in the complaint. *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999); *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994); Fed. R. Evid. 201(c)(2).

Judge Nye erred[165] in failing to take judicial notice of Miesen's documents[166] and failing to consider the authentic documents referred to in Miesen's TAC, which were public court records.[167] These documents

---

[164] Review is abuse of discretion, *Elosu*, 26 F.4th at 1023, which is misapplying the law or rules. *United States v. Boulware*, 384 F.3d 794, 808 n.6 (9th Cir. 2004); *Wells Fargo & Co.*, 758 F.3d at 1072.

[165] 1-ER-99, n.1, 100, 103, 112–16, 118–19, 146 n.30, 149–50; 1-ER-99–150.

[166] 14-ER-3517–19; 14-ER-3548–16-ER-3983; 17-ER-4121–191.

[167] 14-ER-3548–51; 15-ER-3554–652; 15-ER-3653–721; 15-ER-3722–852; 16-ER-3856–72; 16-ER-3873–95; 16-ER-3931–37; 16-ER-3938–83.

were all relevant to show (1) the content of the demands, (2) that AIA's board, two of whom were attorneys, understood the demands and the requests in the demands, and (3) AIA's board did not fulfill their fiduciary duties or comply with AIA's articles and bylaws when addressing the demands. *See* Sections I, A.1 and D.

Judge Nye erred because the documents, except the publicly available Idaho State Bar information for John and Connie,[168] were publicly available court records previously filed in Miesen's case. *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018). No one disputed the accuracy of the three paragraphs of testimony in John's declaration[169] or the two publicly filed records attached to his declaration.[170] This declaration was fatal to any argument that AIA's board didn't understand the 2008 derivative demand. *Harris v. County of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012) (judicial notice of a declaration).

---

[168] 16-ER-3896–97.

[169] 17-ER-4124, 17-ER-4135–38 ¶¶21–22, 28.

[170] 17-ER-4142–87; 17-ER-4188–91.

Judge Nye erred by failing to take judicial notice of five of Miesen's documents, finding, without explanation or addressing Rule 401, that "none of these documents are pertinent."[171]

Judge Nye erred by not considering Donna's FAC, the Proposed SAC, and the Proposed TAC, which were incorporated into Miesen's 2012 and two 2016 demands to provide additional facts and specific claims for AIA to assert, stating:

> [Miesen] insists that the Court should only take judicial notice of the June 2016 Demand if it includes the Second Amended Complaint. The Court does not need to take judicial notice of the Second Amended Complaint, but the Court also recognizes Miesen's position that the June 2016 Demand is best understood in the context of the Second Amended Complaint.[172]
> . . . .
> Miesen asked the Court to take judicial notice of some documents for the purpose of establishing that the board of directors knew what the derivative demands meant. The Court denied those requests, noting that the Third Amended Complaint included allegations that the directors were aware of the demands and the underlying issues.[173]

---

[171] 1-ER-118–19.

[172] 1-ER-117 n.8.

[173] 1-ER-146 n.30.

- 69 -

Judge Nye's above reasoning implicitly acknowledges the relevance of the documents. He erred because Miesen's two 2016 demands incorporated the Proposed SAC, not the operative SAC. He erred by never addressing Donna's FAC, incorporated by reference into Miesen's July 11, 2012, demand. These documents were highly relevant because they were part of the 2012 and the two 2016 demands, which establish that Miesen's demands exceeded Idaho law and complied with the more onerous Cal. Corp. Code § 800(b)(2) (Add-12).

### 3. Judge Nye erred by not converting the motion to one for summary judgment and considering inadmissible evidence.

If matters outside of the pleadings are considered, the motion must be treated as one under Rule 56. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

After Miesen objected to Judge Nye considering *Munding's* adjudicative facts and asserted it was hearsay,[174] Judge Nye ruled Miesen's objections were "ludicrous," an "outlandish position," and

---

[174] 14-ER-3518–21, 3531.

"ridiculous arguments."[175] Judge Nye stated that he "does not need to take judicial notice of [*Munding*]"[176] in order to consider it. Judge Nye erred by treating *Munding* as if it was undisputed adjudicative facts under Fed. R. Evid. 210(b) without taking judicial notice and when it was inadmissible hearsay.[177] *E.g.,* Fed. R. Evid. 802–804; 21B Charles Alan Wright, et al., *Federal Practice and Procedure § 5106.4* (2d ed.) ("When offered to prove the facts stated, court records are hearsay"); *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983). When Judge Nye chose to consider *Munding* in this manner, he should have converted the motion to one for summary judgment because he was considering matters outside of the pleadings.[178] Miesen could then submit his highly relevant evidence. So, Judge Nye had a choice either to (1) decline to consider *Munding* or (2) consider *Munding* and allow Miesen to submit evidence under Rule 56.

---

[175] 1-ER-129.

[176] 1-ER-118.

[177] E.g., 1-ER-148.

[178] 1-ER-99–150.

Additionally, Judge Nye erred by considering "select"[179] transcripts from Miesen's deposition to "bolster [his] finding that Miesen failed to plead any direct claims"[180] without converting the motion to one for summary judgment.

### 4. Judge Nye erred by not granting leave to amend.

Judge Nye abused his discretion because he should have granted Miesen leave to amend his TAC to attach more evidence showing the demands were adequate, to cure any alleged pleading inadequacy regarding Miesen's direct claims, or to correct any other pleading deficiency. Judge Nye erred by not addressing the required factors, by making conclusory findings, by disregarding that the defendants' motion to dismiss was dilatory, and to facilitate "decisions be on the merits, rather than on the pleadings or technicalities."[181] *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981); *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1124 (9th Cir. 2018).

---

[179] Miesen testified he had direct claims.
[180] 1-ER-171. Judge Nye was incorrect. *See* n.133.
[181] 1-ER-148, 171–73.

## G.     This Court should take judicial notice.

"The court may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d). For the same reasons and authorities in Section F.2, this Court should take judicial notice of the court records cited in this brief and in Miesen's Excerpts of the Record. There is no dispute as to the authenticity of the records or what is stated in them.

## H.     This Court should assign a new judge.

A new judge should be assigned when any one of the stated reasons are present. *United States. v. Sears, Roebuck & Co., Inc.*, 785 F.2d 777, 780 (9th Cir. 1986); *Earp v. Cullen*, 623 F.3d 1065, 1071–72 (9th Cir. 2010); *Neurovision Medical Products Inc. v. NuVasive, Inc.*, 494 F. App'x 749, 751 (9th Cir. 2012); *Mitchell v. Maynard*, 80 F.3d 1433, 1450 (10th Cir. 1996).

Based on the foregoing,[182] a new judge should be assigned because Judge Nye: (1) would have difficulty putting out of his mind previously expressed views regarding McDermott, Miesen, his counsel and this case, (2) made credibility findings regarding McDermott, Miesen and his

---

[182] *See* Sections A–F; *see* 1-ER-81–175; 17-ER-4275–95; 18-ER-4520–24.

- 73 -

counsel, (3) erroneously relied on *Munding* when it should have been rejected, (4) failed to adhere to this Court's clear precedent on numerous issues, and (5) should be replaced to preserve the appearance of justice. A neutral person would have concerns based on the circumstances and the years of delay in adjudicating this case.[183] Fed. R. Civ. P. 1; *In re Murchison*, 349 U.S. 133, 136 (1955).

There would be no waste or duplication of effort if a new judge is assigned because this case is still at the pleading stage.[184] *Disability Rts. Montana, Inc. v. Batista,* 930 F.3d 1090, 1101 (9th Cir. 2019).

Additionally, this Court should assign a new judge outside of Idaho because having one of Judge Nye's colleagues pass on his past actions "well might, in and of itself, exacerbate the appearance of impropriety." *United States v. Jordan*, 49 F.3d 152, 160 n.18 (5th Cir. 1995). And Judge Brailsford's former law firm represented GemCap in this case.[185]

---

[183] *See* 1-ER-157; 19-ER-4936–59; 19-ER-4924–25; 19-ER-4928; 21-ER-5286–88; 21-ER-5280–81; 22-ER-5587–15.

[184] The Individual and CropUSA Defendants moved for partial summary judgment, but briefing is stayed. 10-ER-2332.

[185] 5-ER-1020.

## VII.  CONCLUSION

For the reasons stated above, Judge Nye erred and abused his discretion. This Court should reverse, reinstate Miesen's direct and derivative claims, rule McDermott may testify as an expert, and assign a new judge.

RESPECTFULLY SUBMITTED this 29th day of January 2026.

RODERICK BOND LAW OFFICE, PLLC

By:_____*/s/ Roderick C. Bond*_____
      Roderick C. Bond
      Attorney for Petitioner Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:_____*/s/ Andrew Schwam*_____
      Andrew Schwam
      Attorney for Petitioner Dale L. Miesen

## VIII.    CERTIFICATE OF COMPLIANCE

1.    We are the attorneys for the Appellant Dale L. Miesen.

2.    This brief contains 13,999 words, excluding the items exempted by Fed. R. App. P. 32(f), according to the word count feature in Microsoft Word. This brief was prepared using 14-point Century Schoolbook font, which complies with Fed. R. App. P. 32(a)(5) and (6).

DATED this 29th day of January 2026.

RODERICK BOND LAW OFFICE, PLLC

By:    */s/ Roderick C. Bond*
      Roderick C. Bond
      Attorney for Petitioner Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:    */s/ Andrew Schwam*
      Andrew Schwam
      Attorney for Petitioner Dale L. Miesen

## IX.  CORPORATE DISCLOSURE STATEMENT

Because this case involves derivative claims asserted on behalf of AIA Services Corporation and AIA Insurance, Inc., Miesen provides the following corporate disclosure statement pursuant to Cir. Rule 21-3:

To the best of the knowledge of the undersigned, AIA Insurance, Inc., is wholly owned by AIA Services Corporation, and AIA Services Corporation, is not publicly traded.

DATED this 29th day of January 2026.

RODERICK BOND LAW OFFICE, PLLC

By:___*/s/ Roderick C. Bond*_____
    Roderick C. Bond
    Attorney for Petitioner Dale L. Miesen

ANDREW SCHWAM LAW FIRM

By:___*/s/ Andrew Schwam*_____
    Andrew Schwam
    Attorney for Petitioner Dale L. Miesen

## X. CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

DATED this 29th day of January 2026.

_/s/ Roderick C. Bond_
Roderick C. Bond