**Consolidated Case Nos. 25-3552 and 25-3800**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.,

**Plaintiff-Appellant**,

v.

R. JOHN TAYLOR, an individual, CONNIE TAYLOR HENDERSON, an individual, JAMES BECK, an individual, MICHAEL W. CASHMAN, SR., an individual, CROP USA INSURANCE AGENCY, INC., an Idaho corporation, CROP USA INSURANCE SERVICES, LLC, an Idaho limited liability company, AIA SERVICES CORPORATION, an Idaho corporation, AND AIA INSURANCE, INC., an Idaho corporation,

**Defendants-Appellees**,

and

Reed J. Taylor, an individual,

**Third-Party Defendant-Appellee.**

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO,
CHIEF DISTRICT COURT JUDGE DAVID C. NYE, PRESIDING

---

## ADDEMDUM TO APPELLANT'S BRIEF

---

Roderick C. Bond
Roderick Bond Law Office, PLLC
10900 NE 4th St., Suite 2300
Bellevue, WA 98004
Tel: (425) 591-6903
Email: rod@roderickbond.com
Attorney for Appellant

Andrew Schwam
Andrew Schwam Law Firm
705 SW Fountain St.
Pullman, WA 99163-2128
Tel: (208) 874-3684
Email: amschwam@turbonet.com
Attorney for Appellant

## INDEX OF DOCUMENTS IN ADDENDUM

| Add | Description of Statute or Rule |
|---|---|
| 4 | Idaho Code section 30-29-742 (2019) |
| 5 | Idaho Code section 30-29-742 (2015) |
| 6–11 | Idaho Code section 30-1-742 (1998) with ABA Comments |
| 12–14 | Cal. Corp. Code § 800 |
| 15 | Idaho Code section 30-29-304 (2019) |
| 16 | Idaho Code section 30-29-304 (2015) |
| 17–22 | Idaho Code section 30-1-304 (1998) with ABA Comments |
| 23–25 | Idaho Code section 30-29-202 (2019) |
| 26 | Idaho Code section 30-29-301 (2019) |
| 27–28 | Idaho Code section 30-29-302 (2019) |
| 29 | Idaho Code section 30-29-801 (2019) |
| 30 | Idaho Code section 30-29-809 (2019) |
| 31–32 | Idaho Code section 30-29-830 (2019) |
| 33 | Idaho Code section 30-29-841 (2019) |
| 34–35 | Idaho Code section 30-29-842 (2019) |
| 36–37 | Idaho Code section 30-29-851 (2019) |
| 38 | Idaho Code section 30-29-852 (2019) |
| 39–40 | Idaho Code section 30-29-853 (2019) |
| 41–42 | Idaho Code section 30-29-854 (2019) |
| 43–44 | Idaho Code section 30-29-855 (2019) |
| 45–46 | Idaho Code section 30-29-856 (2019) |
| 47 | Idaho Code section 30-29-859 (2019) |
| 48 | Idaho Code section 30-29-1201 (2019) |
| 49–50 | Idaho Code section 30-29-1602 (2019) |
| 51 | Idaho Code section 30-29-1603 (2019) |
| 52 | Idaho Code section 30-29-1605 (2019) |
| 53–54 | Idaho Code section 30-29-1620 (2019) |
| 55 | Idaho Code section 18-1907 (1972) (criminal code) |
| 56–57 | Idaho Rule of Civil Procedure 78 |
| 58–61 | Fed. R. Civ. P. 1 |
| 62–71 | Fed. R. Civ. P. 12 |
| 72–78 | Fed. R. Civ. P. 15 |
| 79–80 | Fed. R. Civ. P. 23.1 |

| Add | Description of Statute or Rule |
|---|---|
| 81–88 | Fed. R. Civ. P. 54 |
| 89–97 | Fed. R. Civ. P. 56 |
| 98–103 | Fed. R. Evid. 201 |
| 104–105 | Fed. R. Evid. 401 |
| 106–107 | Fed. R. Evid. 402 |
| 108–109 | Fed. R. Evid. 403 |
| 110–116 | Fed. R. Evid. 702 (2011) |
| 117–124 | Fed. R. Evid. 702 (2023) |
| 125 | Fed. R. Evid. 704 |
| 126–127 | Fed. R. Evid. 802 |
| 128–151 | Fed. R. Evid. 803 |
| 152–163 | Fed. R. Evid. 804 |

West's Idaho Code Annotated
    Title 30. Corporations
        Chapter 29. General Business Corporations
        Part 7. Shareholders

I.C. § 30-29-742
Formerly cited as ID ST § 30-1-742

§ 30-29-742. Demand

Effective: July 1, 2019
Currentness

No shareholder may commence a derivative proceeding until:

(a) A written demand has been made upon the corporation to take suitable action; and

(b) Ninety (90) days have expired from the date delivery of the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety (90) day period.

**Credits**
Added by S.L. 2015, ch. 243, § 62, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 67, eff. July 1, 2019.

Notes of Decisions (11)

I.C. § 30-29-742, ID ST § 30-29-742
Statutes and Constitution are current with effective legislation through the Second Regular Session of the Sixty-Seventh Idaho Legislature, which convened on Monday, January 8, 2024. Some sections may be more current; see credits for details.

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Add-4

West's Idaho Code Annotated
  Title 30. Corporations
    Chapter 29. General Business Corporations
      Part 7. Shareholders

I.C. § 30-29-742
Formerly cited as ID ST §30-1-742

§ 30-29-742. Demand

Currentness

No shareholder may commence a derivative proceeding until:

(1) A written demand has been made upon the corporation to take suitable action; and

(2) Ninety (90) days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety (90) day period.

**Credits**

Added by S.L. 2015, ch. 243, § 62, eff. July 1, 2015.

Notes of Decisions (11)

I.C. § 30-29-742, ID ST § 30-29-742
Current through the 2016 Second Regular Session of the 63rd Idaho Legislature.

| End of Document | © 2017 Thomson Reuters. No claim to original U.S. Government Works. |

Westlaw.

▷

West's Idaho Code Annotated Currentness
   Title 30. Corporations
      Chapter 1. General Business Corporations (Refs & Annos)
         Part 7. Shareholders
            **§ 30-1-742. Demand**

No shareholder may commence a derivative proceeding until:

(1) A written demand has been made upon the corporation to take suitable action; and

(2) Ninety (90) days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety (90) day period.

CREDIT(S)

S.L. 1998, ch. 223, § 4.

ABA OFFICIAL COMMENT

Section 742 requires a written demand on the corporation in all cases. The demand must be made at least 90 days before commencement of suit unless irreparable injury to the corporation would result. This approach has been adopted for two reasons. First, even though no director may be "qualified" (see section 143), the demand will give the board of directors the opportunity to re-examine the act complained of in the light of a potential lawsuit and take corrective action. Secondly, the provision eliminates the time and expense of the litigants and the court involved in litigating the question whether demand is required. It is believed that requiring a demand in all cases does not impose an onerous burden since a relatively short waiting period of 90 days is provided and this period may be shortened if irreparable injury to the corporation would result by waiting for the expiration of the 90-day period. Moreover, the cases in which demand is excused are relatively rare. Many plaintiffs' counsel as a matter of practice make a demand in all cases rather than litigate the issue whether demand is excused.

*1. Form of Demand*

Section 742 specifies only that the demand shall be in writing. The demand should, however,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

set forth the facts concerning share ownership and be sufficiently specific to apprise the corporation of the action sought to be taken and the grounds for that action so that the demand can be evaluated. See Allison v. General Motors Corp., 604 F. Supp. 1106, 1117 (D. Del. 1985). Detailed pleading is not required since the corporation can contact the shareholder for clarification if there are any questions. In keeping with the spirit of this section, the specificity of the demand should not become a new source of dilatory motions.

### 2. Upon Whom Demand Should Be Made

Section 742 states that demand shall be made upon the corporation. Reference is not made specifically to the board of directors as in previous section 740(b) since there may be instances such as a decision to sue a third party for an injury to the corporation, in which the taking of, or refusal to take, action would fall within the authority of an officer of the corporation. Nevertheless, it is expected that in most cases the board of directors will be the appropriate body to review the demand. To ensure that the demand reaches the appropriate person for review, it should be addressed to the board of directors, chief executive officer, or corporate secretary of the corporation at its principal office.

### 3. The 90-Day Period

Section 742(2) provides that the derivative proceeding may not be commenced until 90 days after demand has been made. Ninety days has been chosen as a reasonable minimum time within which the board of directors can meet, direct the necessary inquiry into the charges, receive the results of the inquiry and make its decision. In many instances a longer period may be required. See, e.g., Mozes v. Welch, 638 F. Supp. 215 (D. Conn. 1986) (eight month delay in responding to demand not unreasonable). However, a fixed time period eliminates further litigation over what is or is not a reasonable time. The corporation may request counsel for the shareholder to delay filing suit until the inquiry is completed or, if suit is commenced, the corporation can apply to the court for a stay under section 743.

Two exceptions are provided to the 90-day waiting period. The first exception is the situation where the shareholder has been notified of the rejection of the demand prior to the end of the 90 days. The second exception is where irreparable injury to the corporation would otherwise result if the commencement of the proceeding is delayed for the 90-day period. The standard to be applied is intended to be the same as that governing the entry of a preliminary injunction. Compare Gimbel v. Signal Cos., 316 A.2d 599 (Del. Ch. 1974) with Gelco Corp. v. Coniston Partners, 811 F.2d 414 (8th Cir. 1987). Other factors may also be considered, such as the possible expiration of the statute of limitations, although this would depend on the period of time during which the shareholder was aware of the grounds for the proceeding.

It should be noted that the shareholder bringing suit does not necessarily have to be the person making the demand. Only one demand need be made in order for the corporation to consider whether to take corrective action.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

### 4. Response by the Corporation

There is no obligation on the part of the corporation to respond to the demand. However, if the corporation, after receiving the demand, decides to institute litigation or, after a derivative proceeding has commenced, decides to assume control of the litigation, the shareholder's right to commence or control the proceeding ends unless it can be shown that the corporation will not adequately pursue the matter. As stated in Lewis v. Graves, 701 F.2d 245, 247-48 (2d Cir. 1983):

The [demand] rule is intended "to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs." Permitting corporations to assume control over shareholder derivative suits also has numerous practical advantages. Corporate management may be in a better position to pursue alternative remedies, resolving grievances without burdensome and expensive litigation. Deference to directors' judgments may also result in the termination of meritless actions brought solely for their settlement or harassment value. Moreover, where litigation is appropriate, the derivative corporation will often be in a better position to bring or assume the suit because of superior financial resources and knowledge of the challenged transactions. [Citations omitted.]

LIBRARY REFERENCES

Corporations ⬤⟿ 206, 320(5).
Westlaw Topic No. 101.
C.J.S. Corporations §§ 489 to 490, 495 to 499.

RESEARCH REFERENCES

Forms

Fletcher Corporation Forms Annotated § 55:5, Shareholder Derivative Actions.

Treatises and Practice Aids

Law of Corp. Offs. & Dirs.: Rts., Duties & Liabs. § 9:13, Universal Demand Requirement.

Shareholder Derivative Actions: Law and Practice § 5:9, Demand on Directors--Rationales for Demand.

Shareholder Derivative Actions: Law and Practice § 5:12, Demand on Directors--Excuse of Demand.

NOTES OF DECISIONS

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Derivative actions 3
Necessity of demand 2
Purpose 1
Sufficiency of demand 4

### 1. Purpose

The legislative intent in enacting the statutory requirement of a written demand before a shareholder brings a derivative action was to no longer recognize "futility" as an exception to the requirement of demand as a condition preceding the institution of a shareholder's derivative action. Mannos v. Moss, 2007, 155 P.3d 1166, 143 Idaho 927. Corporations And Business Organizations ⟶ 2040(1)

### 2. Necessity of demand

Any written demand that shareholder in Idaho closely-held corporation may have made after district court granted summary judgment to corporate directors, as to shareholder's direct claims against directors alleging that directors depleted corporate assets, was inconsequential, as to statutory requirement that a shareholder must make a written demand before bringing a shareholder derivative action; statute required the demand to be made 90 days before commencement of derivative action. Mannos v. Moss, 2007, 155 P.3d 1166, 143 Idaho 927. Corporations And Business Organizations ⟶ 2088

Shareholder was not excused from complying with statutory requirement that a shareholder must make a written demand upon corporation for action at least 90 days before commencing a derivative action, even though shareholder claimed that corporation was being irreparably harmed and corporation had previously rejected a few of shareholder's requests regarding alleged corporate misconduct; none of those requests indicated that legal action would be taken if corporate conduct was not corrected, and nothing in record suggested that irreparable injury would result by waiting for the expiration of the 90-day period. I.C. § 30-1-742. McCann v. McCann, 2002, 61 P.3d 585, 138 Idaho 228. Corporations And Business Organizations ⟶ 2040(1)

Futility exception no longer applies to the requirement that written demand precede the commencement of a shareholder's derivative action. I.C. § 30-1-742. McCann v. McCann, 2002, 61 P.3d 585, 138 Idaho 228. Corporations And Business Organizations ⟶ 2040(1)

Prerequisite to derivative action, stockholder must show corporation has refused demand to sue or that such demand is excused as futile under circumstances. Knutsen v. Frushour, 1968, 92 Idaho 37, 436 P.2d 521. Corporations And Business Organizations ⟶ 2040(1); Corporations And Business Organizations ⟶ 2041

Where corporation is in control of directors or trustees whose acts are questioned and to make

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

application to them to bring suit would be unavailing, a stockholder may sue without making such application. Fortner v. Cornell, 1945, 66 Idaho 512, 163 P.2d 299. Corporations And Business Organizations ☞ 1931

Stockholders may sue officer or directors to restrain unlawful act if demand on corporation to sue would be useless. Morton v. Morton Realty Co., 1925, 41 Idaho 729, 241 P. 1014. Corporations And Business Organizations ☞ 1931

### 3. Derivative actions

Minority shareholder's causes of action against closely-held corporation and two of its directors for breach of fiduciary duty, negligence, conversion, and other claims were derivative, rather than individual, in nature, and thus shareholder could not commence action until 90-day period following the service of written demand on corporation had expired; shareholder's alleged injuries were dependent on his status as a shareholder. I.C. § 30-1-742. McCann v. McCann, 2002, 61 P.3d 585, 138 Idaho 228. Corporations And Business Organizations ☞ 2087

A stockholder may sue in equity in his own name to enforce liability of corporation directors for fraud, malfeasance, or gross negligence, when corporation refuses or directors in control are themselves answerable, or have an identity of interest with parties charged. Smith v. Rader, 1918, 31 Idaho 423, 173 P. 970. Corporations And Business Organizations ☞ 1931

### 4. Sufficiency of demand

Only the third of shareholder's letters was sufficient to constitute a "written demand" for corporation to take action, for purposes of statute making a written demand a prerequisite to commencing a derivative action, where shareholder's initial two letters were delivered only to the corporation's attorney and did not make an explicit demand upon the corporation to take suitable action, and shareholder's third letter was copied to the directors, sufficiently detailed the alleged wrongful corporate conduct, and requested that the corporation take suitable action. I.C. § 30-1-742. McCann v. McCann, 2002, 61 P.3d 585, 138 Idaho 228. Corporations And Business Organizations ☞ 2038

A complaint is not a sufficient demand under statute requiring that a shareholder must make a written demand upon a corporation at least 90 days before commencing a derivative action. I.C. § 30-1-742. McCann v. McCann, 2002, 61 P.3d 585, 138 Idaho 228. Corporations And Business Organizations ☞ 2038

I.C. § 30-1-742, ID ST § 30-1-742

Current through emergency effective legislation of the 2014 Second Regular Session of the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

62nd Idaho Legislature enacted as of March 26, 2014.

(C) 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

West's Annotated California Codes
  Corporations Code (Refs & Annos)
    Title 1. Corporations
      Division 1. General Corporation Law (Refs & Annos)
        Chapter 8. Shareholder Derivative Actions (Refs & Annos)

West's Ann.Cal.Corp.Code § 800

§ 800. Conditions; security; motion for order; determination

Currentness

(a) As used in this section, "corporation" includes an unincorporated association; "board" includes the managing body of an unincorporated association; "shareholder" includes a member of an unincorporated association; and "shares" includes memberships in an unincorporated association.

(b) No action may be instituted or maintained in right of any domestic or foreign corporation by any holder of shares or of voting trust certificates of the corporation unless both of the following conditions exist:

(1) The plaintiff alleges in the complaint that plaintiff was a shareholder, of record or beneficially, or the holder of voting trust certificates at the time of the transaction or any part thereof of which plaintiff complains or that plaintiff's shares or voting trust certificates thereafter devolved upon plaintiff by operation of law from a holder who was a holder at the time of the transaction or any part thereof complained of; provided, that any shareholder who does not meet these requirements may nevertheless be allowed in the discretion of the court to maintain the action on a preliminary showing to and determination by the court, by motion and after a hearing, at which the court shall consider such evidence, by affidavit or testimony, as it deems material, that (i) there is a strong prima facie case in favor of the claim asserted on behalf of the corporation, (ii) no other similar action has been or is likely to be instituted, (iii) the plaintiff acquired the shares before there was disclosure to the public or to the plaintiff of the wrongdoing of which plaintiff complains, (iv) unless the action can be maintained the defendant may retain a gain derived from defendant's willful breach of a fiduciary duty, and (v) the requested relief will not result in unjust enrichment of the corporation or any shareholder of the corporation; and

(2) The plaintiff alleges in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and alleges further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file.

(c) In any action referred to in subdivision (b), at any time within 30 days after service of summons upon the corporation or upon any defendant who is an officer or director of the corporation, or held such office at the time of the acts complained of, the corporation or the defendant may move the court for an order, upon notice and hearing, requiring the plaintiff to furnish a bond as hereinafter provided. The motion shall be based upon one or both of the following grounds:

Add-12

(1) That there is no reasonable possibility that the prosecution of the cause of action alleged in the complaint against the moving party will benefit the corporation or its shareholders.

(2) That the moving party, if other than the corporation, did not participate in the transaction complained of in any capacity.

The court on application of the corporation or any defendant may, for good cause shown, extend the 30-day period for an additional period or periods not exceeding 60 days.

(d) At the hearing upon any motion pursuant to subdivision (c), the court shall consider such evidence, written or oral, by witnesses or affidavit, as may be material (1) to the ground or grounds upon which the motion is based, or (2) to a determination of the probable reasonable expenses, including attorneys' fees, of the corporation and the moving party which will be incurred in the defense of the action. If the court determines, after hearing the evidence adduced by the parties, that the moving party has established a probability in support of any of the grounds upon which the motion is based, the court shall fix the amount of the bond, not to exceed fifty thousand dollars ($50,000), to be furnished by the plaintiff for reasonable expenses, including attorneys' fees, which may be incurred by the moving party and the corporation in connection with the action, including expenses for which the corporation may become liable pursuant to Section 317. A ruling by the court on the motion shall not be a determination of any issue in the action or of the merits thereof. If the court, upon the motion, makes a determination that a bond shall be furnished by the plaintiff as to any one or more defendants, the action shall be dismissed as to the defendant or defendants, unless the bond required by the court has been furnished within such reasonable time as may be fixed by the court.

(e) If the plaintiff shall, either before or after a motion is made pursuant to subdivision (c), or any order or determination pursuant to the motion, furnish a bond in the aggregate amount of fifty thousand dollars ($50,000) to secure the reasonable expenses of the parties entitled to make the motion, the plaintiff has complied with the requirements of this section and with any order for a bond theretofore made, and any such motion then pending shall be dismissed and no further or additional bond shall be required.

(f) If a motion is filed pursuant to subdivision (c), no pleadings need be filed by the corporation or any other defendant and the prosecution of the action shall be stayed until 10 days after the motion has been disposed of.

**Credits**

(Added by Stats.1975, c. 682, § 7, eff. Jan. 1, 1977. Amended by Stats.1976, c. 641, § 17, eff. Jan. 1, 1977; Stats.1982, c. 517, p. 2364, § 186.)

**Editors' Notes**

### LAW REVISION COMMISSION COMMENTS

1982 Amendment

Section 800 is amended to delete provisions duplicated in the Bond and Undertaking Law. See Code Civ.Proc. §§ 996.010 (insufficient bond), 996.030 (reduced bond), 996.460 (judgment of liability), 995.710 (deposit in lieu of bond). The other changes in Section 800 are technical. [16 Cal.L.Rev.Comm. Reports 501 (1982)].

### LEGISLATIVE COMMITTEE COMMENTS--ASSEMBLY

1975 [Corrected]

Source: Cal. § 834. Under prior law a plaintiff in a shareholder derivative action must have been a shareholder of record at the time of the alleged wrong or the shares later devolved upon him by operation of law. To avoid the harsh results sometimes encountered in the application of this so-called "contemporaneous ownership" requirement, subdivision (b) relaxes that rule somewhat to give a shareholder standing to institute a derivative action where he acquires shares prior to disclosure of any alleged wrongdoing provided certain other conditions are satisfied.

Subdivision (b) also expressly authorizes a beneficial owner of shares to bring a derivative action since such a person's interest in the shares is essentially the same as that of a record owner.

Subdivision (d) changes prior law by increasing the total amount of security which a plaintiff may be required to furnish for reasonable expenses. This increase is intended to partially compensate for the effects of inflation since this provision was enacted.

Notes of Decisions (363)

West's Ann. Cal. Corp. Code § 800, CA CORP § 800
Current with all laws through Ch. 372 of 2020 Reg.Sess.

     © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Add-14

West's Idaho Code Annotated
   Title 30. Corporations
      Chapter 29. General Business Corporations
      Part 3. Purposes and Powers

I.C. § 30-29-304
Formerly cited as ID ST § 30-1-304

§ 30-29-304. Lack of power to act

Effective: July 1, 2019
Currentness

(a) Except as provided in subsection (b) of this section, the validity of corporate action may not be challenged on the ground that the corporation lacks or lacked power to act.

(b) A corporation's power to act may be challenged:

   (1) In a proceeding by a shareholder against the corporation to enjoin the act;

   (2) In a proceeding by the corporation, directly, derivatively or through a receiver, trustee or other legal representative, against an incumbent or former director, officer, employee or agent of the corporation; or

   (3) In a proceeding by the attorney general under section 30-29-1430, Idaho Code.

(c) In a shareholder's proceeding under subsection (b)(1) of this section to enjoin an unauthorized corporate act, the court may enjoin or set aside the act, if equitable and if all affected persons are parties to the proceeding, and may award damages for loss, other than anticipated profits, suffered by the corporation or another party because of enjoining the unauthorized act.

**Credits**

Added by S.L. 2015, ch. 243, § 58, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 26, eff. July 1, 2019.

Notes of Decisions (11)

I.C. § 30-29-304, ID ST § 30-29-304
Statutes and Constitution are current with effective legislation through Chapters 1 to 327 of the Second Regular Session of the Sixty-sixth Idaho Legislature, which convened on Monday, January 10, 2022 and adjourned on Thursday, March 31, 2022. Some sections may be more current; see credits for details.

**End of Document**      © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Add-15

---

West's Idaho Code Annotated
    Title 30. Corporations
        Chapter 29. General Business Corporations
            Part 3. Purposes and Powers

I.C. § 30-29-304
Formerly cited as ID ST § 30-1-304

§ 30-29-304. Ultra vires

Currentness

(1) Except as provided in subsection (2) of this section, the validity of corporate action may not be challenged on the ground that the corporation lacks or lacked power to act.

(2) A corporation's power to act may be challenged:

(a) In a proceeding by a shareholder against the corporation to enjoin the act;

(b) In a proceeding by the corporation, directly, derivatively or through a receiver, trustee or other legal representative, against an incumbent or former director, officer, employee or agent of the corporation; or

(c) In a proceeding by the attorney general under section 30-29-1430, Idaho Code.

(3) In a shareholder's proceeding under subsection (2)(a) of this section to enjoin an unauthorized corporate act, the court may enjoin or set aside the act, if equitable and if all affected persons are parties to the proceeding, and may award damages for loss, other than anticipated profits, suffered by the corporation or another party because of enjoining the unauthorized act.

**Credits**
Added by S.L. 2015, ch. 243, § 58, eff. July 1, 2015.

Notes of Decisions (11)

I.C. § 30-29-304, ID ST § 30-29-304
Current through the 2016 Second Regular Session of the 63rd Idaho Legislature.

---

End of Document                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works.    1

**Add-16**

Westlaw

I.C. § 30-1-304                                                                    Page 1

West's Idaho Code Annotated Currentness
    Title 30. Corporations
        Chapter 1. General Business Corporations (Refs & Annos)
        Part 3. Purposes and Powers
            **§ 30-1-304. Ultra vires**

(1) Except as provided in subsection (2) of this section, the validity of corporate action may not be challenged on the ground that the corporation lacks or lacked power to act.

(2) A corporation's power to act may be challenged:

(a) In a proceeding by a shareholder against the corporation to enjoin the act;

(b) In a proceeding by the corporation, directly, derivatively or through a receiver, trustee or other legal representative, against an incumbent or former director, officer, employee or agent of the corporation; or

(c) In a proceeding by the attorney general under section 30-1-1430, Idaho Code.

(3) In a shareholder's proceeding under subsection (2)(a) of this section to enjoin an unauthorized corporate act, the court may enjoin or set aside the act, if equitable and if all affected persons are parties to the proceeding, and may award damages for loss, other than anticipated profits, suffered by the corporation or another party because of enjoining the unauthorized act.

CREDIT(S)

S.L. 1997, ch. 366, § 2.

IDAHO REPORTER'S COMMENT

The only changes here appear to be non-substantive editorial changes in language, beginning with the title caption which was changed from "Unauthorized assumption of corporate powers" (prior I.C. § 30-1-146) to emphasize the universal application of the section. Likewise, specific references to corporate contracts or to "transfers or conveyances" were uniformly replaced by references to "corporate action." Similarly, references to "invalidity"

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

were uniformly replaced by references to permissible "challenges." And the phrase "capacity or power to act" was replaced by the more inclusive word "power."

ABA OFFICIAL COMMENT

The basic purpose of section 304--as has been the purpose of all similar statutes during the 20th century--is to eliminate all vestiges of the doctrine of inherent incapacity of corporations. See Campbell, "The Model Business Corporation Act," 11-4 BUS. LAW. 98, 102 (1956). Under this section it is unnecessary for persons dealing with a corporation to inquire into limitations on its purpose or powers that may appear in its articles of incorporation. A person who is unaware of these limitations when dealing with the corporation is not bound by them. The phrase in section 304(a) that the "validity of corporate action may not be challenged on the ground that the corporation lacks or lacked power to act" applies equally to the use of the doctrine as a sword or as a shield: a third person may no more avoid an undesired contract with a corporation on the ground the corporation was without authority to make the contract than a corporation may defend a suit on a contract on the ground that the contract is ultra vires.

The language of section 304 extends beyond contracts and conveyances of property; "corporate action" of any kind cannot be challenged on the ground of ultra vires. For this reason it makes no difference whether a limitation in articles of incorporation is considered to be a limitation on a purpose or a limitation on a power; both are equally subject to section 304. Corporate action also includes inaction or refusal to act. The common law of ultra vires distinguished between executory contracts, partially executed contracts, and fully executed ones; section 304 treats all corporate action the same--except to the extent described in section 304(b)--and the same rules apply to all contracts no matter at what stage of performance.

Section 304, however, does not validate corporate conduct that is made illegal or unlawful by statute or common law decision. This conduct is subject to whatever sanction, criminal or civil, that is provided by the statute or decision. Whether or not illegal corporate conduct is voidable or rescindable depends on the applicable statute or substantive law and is not affected by section 304. Section 304 also does not address the validity of essentially intra vires conduct that is not approved by appropriate corporate action. It does not deal, for example, with the enforceability of an executory contract to sell substantially all the assets of a corporation not in the ordinary course of business that was not approved by the shareholders as required by section 1202. This type of transaction is not beyond the purposes or powers of the corporation; it simply has not been approved by the corporate authorities as required by law. Similarly, section 304 does not deal with whether a corporation is bound by the action of a corporate agent if the action requires, but has not received, approval by the board of directors. Whether or not the corporation is bound by this action depends on the law of agency, particularly the scope of apparent authority and whether the third person knew or should have known of the defect in the corporate approval process. These actions may be ultra vires with respect to the agent's authority but they are not ultra vires with respect to the corporation and are not controlled by section 304.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Similarly, corporate action is not ultra vires under section 3.04 merely because it constitutes a breach of fiduciary duty. For example, a misuse of corporate assets for personal purposes by an officer or director is a breach of fiduciary duty and may be enjoined. Similarly, in some circumstances a lien on corporate assets and a contract entered into by the corporation may be cancelled or enjoined if they constitute breaches of fiduciary duty and the third person is charged with knowledge that they were improper. These transactions, however, are not ultra vires with respect to the corporation, and cannot be attacked under section 304. They may be enjoined because of breach of the fiduciary duty, not because the transaction exceeds the powers or purposes of the corporation.

Section 304(b), like the prior Model Act provisions, permits challenges to the corporation's lack of power in three limited classes of cases:

(1) -In suits by the attorney general under section 1430. This provision does not answer the question whether or not a corporation may be dissolved or enjoined by the attorney general for committing an ultra vires act; it simply preserves the power of the state to assert that certain corporate action was ultra vires.

(2) -In a suit by the corporation, either directly or through a legal representative, against incumbent or former officers or directors for authorizing or causing the corporation to engage in an ultra vires act. Again, this section does not address whether or not there is liability for causing the corporation to enter into an ultra vires act; it simply preserves the power of the corporation to assert that certain corporate action was ultra vires.

(3) -In a suit by a shareholder against the corporation to enjoin an ultra vires act. This suit, however, is subject to the requirements of section 304(c). Under this subsection an ultra vires act may be enjoined only if all "affected parties" are parties to the suit. The requirement that the action be "equitable" generally means that only third persons dealing with a corporation while specifically aware that the corporation's action was ultra vires will be enjoined. The general phrase "if equitable" was retained because of the possibility that other circumstances may exist in which it may be equitable to refuse to enforce an ultra vires contract. Further, if enforcement of the contract is enjoined, either the third person or the corporation may in the discretion of the court be awarded damages from the other for loss (excluding anticipated profits).

Section 304(c) thus authorizes a court to enjoin or set aside an ultra vires act or grant other relief that may be necessary to protect the interests of all affected persons, including the interests of third persons who deal with the corporation.

HISTORICAL AND STATUTORY NOTES

For derivation of the subject matter of sections contained in Chapter 1 as added by S.L.1997,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

ch. 366, § 2, see Disposition Table at the head of this chapter.

LIBRARY REFERENCES

Corporations ⟨key⟩ 385, 387.
Westlaw Topic No. 101.
C.J.S. Corporations §§ 673 to 674, 676, 678.
C.J.S. Wills § 96.

RESEARCH REFERENCES

Forms

Fletcher Corporation Forms Annotated § 9:7, Statement of Purposes and Law Relating to Ultra Vires Transactions.

Treatises and Practice Aids

Fletcher Cyclopedia Law of Private Corporations § 2832, Statutory Power to Acquire Shares in Other Corporations.

Fletcher Cyclopedia Law of Private Corporations § 3440, Corporate Capacity Distinguished from Corporate Authority.

NOTES OF DECISIONS

In general 1
Pleadings 5
Raising defense of ultra vires 2
Right to contest corporate authority 3
Standing to challenge corporate authority 3
Waiver 4

1. In general

Where corporation at time of trial had forfeited its charter, it could not be sued, nor could judgment be entered against it in its corporate name. Jolley v. Puregro Co., 1972, 94 Idaho 702, 496 P.2d 939. Corporations And Business Organizations ⟨key⟩ 2522; Corporations And Business Organizations ⟨key⟩ 2596

The doctrine of ultra vires, when invoked for or against a corporation, should not be allowed when it would defeat the ends of justice or work a legal wrong. Meholin v. Carlson, 1910, 17 Idaho 742, 107 P. 755, 134 Am.St.Rep. 286. Corporations And Business Organizations ⟨key⟩ 2274

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

The defense of ultra vires is not sustained out of regard for a defendant, but only where public policy requires it. Meholin v. Carlson, 1910, 17 Idaho 742, 107 P. 755, 134 Am.St.Rep. 286. Corporations And Business Organizations ⌫ 2274

The doctrine of ultra vires, when invoked for or against a corporation, should not be allowed when it would defeat the ends of justice or work a legal wrong. Burke Land & Live-Stock Co. v. Wells, Fargo & Co., 1900, 7 Idaho 42, 60 P. 87. Corporations And Business Organizations ⌫ 2274

### 2. Raising defense of ultra vires

The right of a corporation to exercise powers outside of and in excess of the powers conferred by the statute authorizing its organization cannot be raised in a collateral proceeding by a private litigant. Fairview Inv. Co. v. Lamberson, 1913, 25 Idaho 72, 136 P. 606. Corporations And Business Organizations ⌫ 2278

### 3. Right to contest corporate authority

Where the plaintiff shows that it is a corporation de facto of the state, the further right to contest its authority to condemn land or to prosecute the objects of its organization belongs to the state alone. Judgment, Postal Tel. Cable Co. of Idaho v. Oregon Short Line R. Co. (C.C.1900) 104 F. 623, affirmed. Oregon Short Line R. Co. v. Postal Tel. Cable Co. of Idaho, 1901, 111 F. 842, 49 C.C.A. 663. Corporations And Business Organizations ⌫ 2279

Under Idaho law, standing to contest an allegedly improper distribution of corporate assets is limited to those creditors in existence at the time of the challenged transfer. I.C. § 30-1-6 (Repealed). In re Lake Country Investments, 2000, 255 B.R. 588. Corporations And Business Organizations ⌫ 2281

Taxpayers whose property was sold at tax sale did not have standing under the Business Corporation Act to challenge the tax sale purchaser's corporate capacity to purchase the property. I.C. § 30-1-7(a, c) (Repealed). Scona, Inc. v. Green Willow Trust, 1999, 985 P.2d 1145, 133 Idaho 283. Corporations And Business Organizations ⌫ 2537

Intervenor, who had a continuing account with a corporation, making charges and receiving payments thereon, could not object to a transaction between corporation and a director whereby corporation repurchased stock from director. La Voy Supply Co. v. Young, 1962, 84 Idaho 120, 369 P.2d 45. Corporations And Business Organizations ⌫ 2278

A corporation itself cannot have a stock repurchase declared illegal nor can creditors who are not injured have a right to complain. La Voy Supply Co. v. Young, 1962, 84 Idaho 120, 369 P.2d 45. Corporations And Business Organizations ⌫ 2280; Corporations And Business

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Organizations ☞ 2281

Where a corporation makes a contract not authorized by its charter or statute, the doctrine of ultra vires cannot be raised by the person with whom it has dealt, to avoid his obligation after the corporation has become insolvent. Meholin v. Carlson, 1910, 17 Idaho 742, 107 P. 755, 134 Am.St.Rep. 286. Corporations And Business Organizations ☞ 2278

### 4. Waiver

Plaintiffs were not entitled to rescission of exchange of deeds with corporation on ground that corporation failed to file copy of article of incorporation in county where property in question was held where they did not raise question by pleading or motion. I.C. §§ 30-108, subds. 2, 4, 30-110; Rules of Civil Procedure, rule 12(b, h). Jolley v. Idaho Securities, Inc., 1966, 90 Idaho 373, 414 P.2d 879. Corporations And Business Organizations ☞ 2437

### 5. Pleadings

Where complaint alleged that plaintiff was a legally organized corporation and disclosed no disability of any kind, plaintiff had complete capacity to sue or be sued. Code 1932, § 29-114. Payette Lakes Protective Ass'n v. Lake Reservoir Co., 1948, 68 Idaho 111, 189 P.2d 1009. Corporations And Business Organizations ☞ 2522; Corporations And Business Organizations ☞ 2563; Corporations And Business Organizations ☞ 2564(2)

I.C. § 30-1-304, ID ST § 30-1-304

Current through emergency effective legislation of the 2014 Second Regular Session of the 62nd Idaho Legislature enacted as of February 24, 2014.

(C) 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

§ 30-29-202. Articles of incorporation, ID ST § 30-29-202

---

West's Idaho Code Annotated
  Title 30. Corporations
    Chapter 29. General Business Corporations
      Part 2. Incorporation

I.C. § 30-29-202
Formerly cited as ID ST § 30-1-202

§ 30-29-202. Articles of incorporation

Effective: July 1, 2019
Currentness

(a) The articles of incorporation must set forth:

  (1) A corporate name for the corporation that satisfies the requirements of sections 30-21-301 and 30-21-302(a), Idaho Code;

  (2) The number of shares the corporation is authorized to issue;

  (3) The information required by section 30-21-404(a), Idaho Code; and

  (4) The name and address of each incorporator.

(b) The articles of incorporation may set forth:

  (1) The names and addresses of the individuals who are to serve as the initial directors;

  (2) Provisions not inconsistent with law regarding:

    (i) The purpose or purposes for which the corporation is organized;

    (ii) Managing the business and regulating the affairs of the corporation;

    (iii) Defining, limiting and regulating the powers of the corporation, its board of directors, and shareholders;

    (iv) A par value for authorized shares or classes of shares; or

    (v) The imposition of interest holder liability on shareholders;

Add-23

(3) Any provision that under this chapter is required or permitted to be set forth in the bylaws;

(4) A provision eliminating or limiting the liability of a director to the corporation or its shareholders for money damages for any action taken, or any failure to take any action, as a director, except liability for:

(i) The amount of a financial benefit received by a director to which the director is not entitled;

(ii) An intentional infliction of harm on the corporation or the shareholders;

(iii) A violation of section 30-29-832, Idaho Code; or

(iv) An intentional violation of criminal law;

(5) A provision permitting or making obligatory indemnification of a director for liability, as defined in section 30-29-850(3), Idaho Code, to any person for any action taken, or any failure to take any action, as a director, except liability for:

(i) Receipt of a financial benefit to which the director is not entitled;

(ii) An intentional infliction of harm on the corporation or its shareholders;

(iii) A violation of section 30-29-832, Idaho Code; or

(iv) An intentional violation of criminal law; and

(6) A provision limiting or eliminating any duty of a director or any other person to offer the corporation the right to have or participate in any, or one (1) or more classes or categories of, business opportunities, before the pursuit or taking of the opportunity by the director or other person; provided that any application of such a provision to an officer or a related person of that officer also requires approval of that application by the board of directors, subsequent to the effective date of the provision, by action of qualified directors taken in compliance with the same procedures as are set forth in section 30-29-862, Idaho Code; and may be limited by the authorizing action of the board.

(c) The articles of incorporation need not set forth any of the corporate powers enumerated in this chapter.

(d) Provisions of the articles of incorporation may be made dependent upon facts objectively ascertainable outside the articles of incorporation in accordance with section 30-29-120(d), Idaho Code.

(e) As used in this section, "related person" has the meaning specified in section 30-29-860, Idaho Code.

Add-24

**Credits**

Added by S.L. 2015, ch. 243, § 57, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 16, eff. July 1, 2019.

I.C. § 30-29-202, ID ST § 30-29-202

Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

West's Idaho Code Annotated
  Title 30. Corporations
    Chapter 29. General Business Corporations
      Part 3. Purposes and Powers

I.C. § 30-29-301
Formerly cited as ID ST § 30-1-301

§ 30-29-301. Purposes

Effective: July 1, 2019
Currentness

(a) Every corporation incorporated under this chapter has the purpose of engaging in any lawful business unless a more limited purpose is set forth in the articles of incorporation.

(b) A corporation engaging in a business that is subject to regulation under another statute of this state may incorporate under this chapter only if permitted by, and subject to all limitations of, the other statute.

**Credits**

Added by S.L. 2015, ch. 243, § 58, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 23, eff. July 1, 2019.

Notes of Decisions (1)

I.C. § 30-29-301, ID ST § 30-29-301
Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

End of Document                                  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Add-26

West's Idaho Code Annotated
 Title 30. Corporations
  Chapter 29. General Business Corporations
   Part 3. Purposes and Powers

I.C. § 30-29-302
Formerly cited as ID ST § 30-1-302

§ 30-29-302. General powers

Effective: July 1, 2019
Currentness

Unless its articles of incorporation provide otherwise, every corporation has perpetual duration and succession in its corporate name and has the same powers as an individual to do all things necessary or convenient to carry out its business and affairs, including power:

(a) To sue and be sued, complain and defend in its corporate name;

(b) To have a corporate seal, which may be altered at will, and to use it, or a facsimile of it, by impressing or affixing it or in any other manner reproducing it;

(c) To make and amend bylaws, not inconsistent with its articles of incorporation or with the laws of this state, for managing the business and regulating the affairs of the corporation;

(d) To purchase, receive, lease, or otherwise acquire, and own, hold, improve, use, and otherwise deal with real or personal property, or any legal or equitable interest in property wherever located;

(e) To sell, convey, mortgage, pledge, lease, exchange, and otherwise dispose of all or any part of its property;

(f) To purchase, receive, subscribe for, or otherwise acquire; own, hold, vote, use, sell, mortgage, lend, pledge, or otherwise dispose of; and deal in and with shares or other interests in, or obligations of, any other entity;

(g) To make contracts and guarantees, incur liabilities, borrow money, issue its notes, bonds, and other securities and obligations, which may be convertible into or include the option to purchase other securities of the corporation, and secure any of its obligations by mortgage or pledge of any of its property, franchises or income;

(h) To lend money, invest and reinvest its funds, and receive and hold real and personal property as security for repayment;

(i) To be a promoter, partner, member, associate or manager of any partnership, joint venture, trust or other entity;

Add-27

(j) To conduct its business, locate offices, and exercise the powers granted by this chapter within or without this state;

(k) To elect directors and appoint officers, employees, and agents of the corporation, define their duties, fix their compensation, and lend them money and credit;

(l) To pay pensions and establish pension plans, pension trusts, profit-sharing plans, share bonus plans, share option plans, and benefit or incentive plans for any or all of its current or former directors, officers, employees and agents;

(m) To make donations for the public welfare or for charitable, scientific, or educational purposes;

(n) To transact any lawful business that will aid governmental policy; and

(o) To make payments or donations, or do any other act, not inconsistent with law, that furthers the business and affairs of the corporation.

**Credits**

Added by S.L. 2015, ch. 243, § 58, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 24, eff. July 1, 2019.

Notes of Decisions (22)

I.C. § 30-29-302, ID ST § 30-29-302

Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

**End of Document**        © 2026 Thomson Reuters. No claim to original U.S. Government Works.

§ 30-29-801. Requirement for and duties of board of directors, ID ST § 30-29-801

---

West's Idaho Code Annotated
  Title 30. Corporations
    Chapter 29. General Business Corporations
      Part 8. Directors and Officers

I.C. § 30-29-801

Formerly cited as ID ST § 30-1-801

§ 30-29-801. Requirement for and duties of board of directors

Effective: July 1, 2019

Currentness

(a) Except as may be provided in an agreement authorized under section 30-29-732, Idaho Code, each corporation shall have a board of directors.

(b) Except as may be provided in an agreement authorized under section 30-29-732, Idaho Code, and subject to any limitation in the articles of incorporation permitted by section 30-29-202(b), Idaho Code, all corporate powers shall be exercised by or under the authority of the board of directors, and the business and affairs of the corporation shall be managed by or under the direction, and subject to the oversight of the board of directors.

**Credits**

Added by S.L. 2015, ch. 243, § 63, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 73, eff. July 1, 2019.

Notes of Decisions (2)

I.C. § 30-29-801, ID ST § 30-29-801

Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

---

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Add-29

West's Idaho Code Annotated
   Title 30. Corporations
      Chapter 29. General Business Corporations
         Part 8. Directors and Officers

I.C. § 30-29-809

Formerly cited as ID ST § 30-1-809

## § 30-29-809. Removal of directors by judicial proceeding

Effective: July 1, 2019

Currentness

(a) The Idaho district court of the county where a corporation's principal office is located, or, if none in this state, Ada county, may remove a director from office or may order other relief, including barring the director from reelection for a period prescribed by the court, in a proceeding commenced by or in the right of the corporation if the court finds that:

   (1) The director engaged in fraudulent conduct with respect to the corporation or its shareholders, grossly abused the position of director, or intentionally inflicted harm on the corporation; and

   (2) Considering the director's course of conduct and the inadequacy of other available remedies, removal, or other such relief would be in the best interest of the corporation.

(b) A shareholder proceeding on behalf of the corporation under subsection (a) of this section shall comply with all of the requirements of sections 30-29-740 through 30-29-747, Idaho Code, except section 30-29-741(a), Idaho Code.

**Credits**

Added by S.L. 2015, ch. 243, § 63, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 81, eff. July 1, 2019.

I.C. § 30-29-809, ID ST § 30-29-809

Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Add-30

West's Idaho Code Annotated
    Title 30. Corporations
        Chapter 29. General Business Corporations
        Part 8. Directors and Officers

I.C. § 30-29-830
Formerly cited as ID ST § 30-1-830

§ 30-29-830. Standards of conduct for directors

Effective: July 1, 2019
Currentness

(a) Each member of the board of directors, when discharging the duties of a director, shall act:

(1) In good faith; and

(2) In a manner the director reasonably believes to be in the best interests of the corporation.

(b) The members of the board of directors or a board committee, when becoming informed in connection with their decision-making function or devoting attention to their oversight function, shall discharge their duties with the care that a person in a like position would reasonably believe appropriate under similar circumstances.

(c) In discharging board or board committee duties, a director shall disclose, or cause to be disclosed, to the other board or committee members information not already known by them but known by the director to be material to the discharge of their decision-making or oversight functions, except that disclosure is not required to the extent that the director reasonably believes that doing so would violate a duty imposed under law, a legally enforceable obligation of confidentiality, or a professional ethics rule.

(d) In discharging board or board committee duties, a director who does not have knowledge that makes reliance unwarranted, is entitled to rely on the performance by any of the persons specified in subsection (f)(1) or (3) of this section to whom the board may have delegated, formally or informally by course of conduct, the authority or duty to perform one (1) or more of the board's functions that are delegable under applicable law.

(e) In discharging board or board committee duties a director, who does not have knowledge that makes reliance unwarranted, is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data prepared or presented by any of the persons specified in subsection (f) of this section.

(f) A director is entitled to rely, in accordance with subsection (d) or (e) of this section, on:

(1) One (1) or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the functions performed or the information, opinions, reports, or statements provided;

(2) Legal counsel, public accountants, or other persons retained by the corporation as to matters involving skills or expertise the director reasonably believes are matters:

(i) Within the particular person's professional or expert competence; or

(ii) As to which the particular person merits confidence; or

(3) A board committee of which the director is not a member if the director reasonably believes the committee merits confidence.

**Credits**

Added by S.L. 2015, ch. 243, § 63, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 90, eff. July 1, 2019.

Notes of Decisions (20)

I.C. § 30-29-830, ID ST § 30-29-830

Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Add-32

West's Idaho Code Annotated
  Title 30. Corporations
    Chapter 29. General Business Corporations
      Part 8. Directors and Officers

I.C. § 30-29-841

Formerly cited as ID ST § 30-1-841

§ 30-29-841. Functions of officers

Effective: July 1, 2019

Currentness

Each officer has the authority and shall perform the functions set forth in the bylaws or, to the extent consistent with the bylaws, the functions prescribed by the board of directors or by direction of an officer authorized by the board of directors to prescribe the functions of other officers.

**Credits**

Added by S.L. 2015, ch. 243, § 63, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 94, eff. July 1, 2019.

I.C. § 30-29-841, ID ST § 30-29-841

Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

End of Document        © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Add-33

§ 30-29-842. Standards of conduct for officers, ID ST § 30-29-842

West's Idaho Code Annotated
   Title 30. Corporations
      Chapter 29. General Business Corporations
         Part 8. Directors and Officers

I.C. § 30-29-842

Formerly cited as ID ST § 30-1-842

§ 30-29-842. Standards of conduct for officers

Effective: July 1, 2019

Currentness

(a) An officer, when performing in such capacity, has the duty to act:

  (1) In good faith;

  (2) With the care that a person in a like position would reasonably exercise under similar circumstances; and

  (3) In a manner the officer reasonably believes to be in the best interests of the corporation.

(b) The duty of an officer includes the obligation:

  (1) To inform the superior officer to whom, or the board of directors or the board committee to which, the officer reports of information about the affairs of the corporation known to the officer, within the scope of the officer's functions, and known to the officer to be material to such superior officer, board, or committee; and

  (2) To inform his or her superior officer, or another appropriate person within the corporation, or the board of directors, or a board committee, of any actual or probable material violation of law involving the corporation or material breach of duty to the corporation by an officer, employee, or agent of the corporation that the officer believes has occurred or is likely to occur.

(c) In discharging his or her duties, an officer who does not have knowledge that makes reliance unwarranted is entitled to rely on:

  (1) The performance of properly delegated responsibilities by one (1) or more employees of the corporation whom the officer reasonably believes to be reliable and competent in performing the responsibilities delegated; or

  (2) Information, opinions, reports or statements, including financial statements and other financial data, prepared or presented by one (1) or more employees of the corporation whom the officer reasonably believes to be competent in the matters presented

Add-34

or by legal counsel, public accountants or other persons retained by the corporation as to matters involving skill or expertise the officer reasonably believes are matters:

> (i) Within the particular person's professional or expert competence; or

> (ii) As to which the particular person merits confidence.

(d) An officer shall not be liable to the corporation or its shareholders for any decision to take or not to take action or any failure to take any action, as an officer, if the duties of the office are performed in compliance with this section. Whether an officer who does not comply with this section shall have liability will depend in such instance on applicable law, including those principles of section 30-29-831, Idaho Code, that have relevance.

**Credits**

Added by S.L. 2015, ch. 243, § 63, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 95, eff. July 1, 2019.

I.C. § 30-29-842, ID ST § 30-29-842

Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

**End of Document**         © 2026 Thomson Reuters. No claim to original U.S. Government Works.

West's Idaho Code Annotated
  Title 30. Corporations
    Chapter 29. General Business Corporations
      Part 8. Directors and Officers

I.C. § 30-29-851

Formerly cited as ID ST § 30-1-851

§ 30-29-851. Permissible indemnification

Effective: July 1, 2019

Currentness

(a) Except as otherwise provided in this section, a corporation may indemnify an individual who is a party to a proceeding because the individual is a director against liability incurred in the proceeding if:

  (1)(i) The director conducted himself or herself in good faith; and

  (ii) The director reasonably believed:

    (A) In the case of conduct in an official capacity, that his or her conduct was in the best interests of the corporation; and

    (B) In all other cases, that his or her conduct was at least not opposed to the best interests of the corporation; and

    (iii) In the case of any criminal proceeding, the director had no reasonable cause to believe his or her conduct was unlawful; or

  (2) The director engaged in conduct for which broader indemnification has been made permissible or obligatory under a provision of the articles of incorporation, as authorized by section 30-29-202(b)(5), Idaho Code.

(b) A director's conduct with respect to an employee benefit plan for a purpose the director reasonably believed to be in the interests of the participants in, and the beneficiaries of, the plan is conduct that satisfies the requirement of subsection (a)(1)(ii)(B) of this section.

(c) The termination of a proceeding by judgment, order, settlement or conviction, or upon a plea of nolo contendere or its equivalent, is not, of itself, determinative that the director did not meet the relevant standard of conduct described in this section.

(d) Unless ordered by a court under section 30-29-854(a)(3), Idaho Code, a corporation may not indemnify a director:

Add-36

(1) In connection with a proceeding by or in the right of the corporation, except for expenses incurred in connection with the proceeding if it is determined that the director has met the relevant standard of conduct under subsection (a) of this section; or

(2) In connection with any proceeding with respect to conduct for which the director was adjudged liable on the basis of receiving a financial benefit to which he or she was not entitled, regardless of whether it involved action in the director's official capacity.

**Credits**

Added by S.L. 2015, ch. 243, § 63, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 99, eff. July 1, 2019.

I.C. § 30-29-851, ID ST § 30-29-851

Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

| End of Document | © 2026 Thomson Reuters. No claim to original U.S. Government Works. |
| --- | --- |

**Add-37**

West's Idaho Code Annotated
  Title 30. Corporations
    Chapter 29. General Business Corporations
      Part 8. Directors and Officers

I.C. § 30-29-852
Formerly cited as ID ST § 30-1-852

§ 30-29-852. Mandatory indemnification

Effective: July 1, 2019
Currentness

A corporation shall indemnify a director who was wholly successful, on the merits or otherwise, in the defense of any proceeding to which the director was a party because he or she was a director of the corporation against expenses incurred by the director in connection with the proceeding.

**Credits**

Added by S.L. 2015, ch. 243, § 63, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 100, eff. July 1, 2019.

I.C. § 30-29-852, ID ST § 30-29-852
Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

End of Document                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Add-38

West's Idaho Code Annotated
 Title 30. Corporations
  Chapter 29. General Business Corporations
   Part 8. Directors and Officers

I.C. § 30-29-853
Formerly cited as ID ST § 30-1-853

§ 30-29-853. Advance for expenses

Effective: July 1, 2019
Currentness

(a) A corporation may, before final disposition of a proceeding, advance funds to pay for or reimburse expenses incurred in connection with the proceeding by an individual who is a party to the proceeding because that individual is a director if the director delivers to the corporation a signed written undertaking of the director to repay any funds advanced if the director is not entitled to mandatory indemnification under section 30-29-852, Idaho Code; and it is ultimately determined under section 30-29-854 or 30-29-855, Idaho Code, that the director is not entitled to indemnification.

(b) The undertaking required by subsection (a) of this section must be an unlimited general obligation of the director but need not be secured and may be accepted without reference to the financial ability of the director to make repayment.

(c) Authorizations under this section shall be made:

(1) By the board of directors:

(i) If there are two (2) or more qualified directors, by a majority vote of all the qualified directors, a majority of whom shall for such purposes constitute a quorum, or by a majority of the members of a committee consisting solely of two (2) or more qualified directors appointed by such a vote; or

(ii) If there are fewer than two (2) qualified directors, by the vote necessary for action by the board of directors in accordance with section 30-29-824(c), Idaho Code, in which authorization directors who are qualified directors may participate; or

(2) By the shareholders, but shares owned by or voted under the control of a director who at the time is not a qualified director may not be voted on the authorization.

**Credits**
Added by S.L. 2015, ch. 243, § 63, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 101, eff. July 1, 2019.

I.C. § 30-29-853, ID ST § 30-29-853

Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Add-40**

West's Idaho Code Annotated
Title 30. Corporations
Chapter 29. General Business Corporations
Part 8. Directors and Officers

I.C. § 30-29-854
Formerly cited as ID ST § 30-1-854

§ 30-29-854. Court-ordered indemnification and advance for expenses

Effective: July 1, 2019
Currentness

(a) A director who is a party to a proceeding because he or she is a director may apply for indemnification or an advance for expenses to the court conducting the proceeding or to another court of competent jurisdiction. After receipt of an application and after giving any notice it considers necessary, the court shall:

(1) Order indemnification if the court determines that the director is entitled to mandatory indemnification under section 30-29-852, Idaho Code;

(2) Order indemnification or advance for expenses if the court determines that the director is entitled to indemnification or advance for expenses pursuant to a provision authorized by section 30-29-858(a), Idaho Code; or

(3) Order indemnification or advance for expenses if the court determines, in view of all the relevant circumstances, that it is fair and reasonable:

(i) To indemnify the director; or

(ii) To advance expenses to the director, even if under this paragraph he or she has not met the relevant standard of conduct set forth in section 30-29-851(a), Idaho Code, failed to comply with section 30-29-853, Idaho Code, or was adjudged liable in a proceeding referred to in section 30-29-851(d)(1) or (2), Idaho Code, but if the director was adjudged so liable, indemnification shall be limited to expenses incurred in connection with the proceeding.

(b) If the court determines that the director is entitled to indemnification under subsection (a)(1) of this section or to indemnification or advance for expenses under subsection (a)(2) of this section, it shall also order the corporation to pay the director's expenses incurred in connection with obtaining court-ordered indemnification or advance for expenses. If the court determines that the director is entitled to indemnification or advance for expenses under subsection (a)(3) of this section, it may also order the corporation to pay the director's expenses to obtain court-ordered indemnification or advance for expenses.

**Credits**
Added by S.L. 2015, ch. 243, § 63, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 102, eff. July 1, 2019.

I.C. § 30-29-854, ID ST § 30-29-854

Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Add-42

§ 30-29-855. Determination and authorization of indemnification, ID ST § 30-29-855

---

West's Idaho Code Annotated
  Title 30. Corporations
    Chapter 29. General Business Corporations
      Part 8. Directors and Officers

I.C. § 30-29-855
Formerly cited as ID ST § 30-1-855

§ 30-29-855. Determination and authorization of indemnification

Effective: July 1, 2019
Currentness

(a) A corporation may not indemnify a director under section 30-29-851, Idaho Code, unless authorized for a specific proceeding after a determination has been made that indemnification is permissible because the director has met the relevant standard of conduct set forth in section 30-29-851, Idaho Code.

(b) The determination shall be made:

(1) If there are two (2) or more qualified directors, by the board of directors by a majority vote of all the qualified directors, a majority of whom shall for such purpose constitute a quorum, or by a majority of the members of a committee of two (2) or more qualified directors appointed by such a vote;

(2) By special legal counsel:

(i) Selected in the manner prescribed in paragraph (1) of this subsection; or

(ii) If there are fewer than two (2) qualified directors, selected by the board of directors, in which selection directors who are not qualified directors may participate; or

(3) By the shareholders, but shares owned by or voted under the control of a director who at the time is not a qualified director may not be voted on the determination.

(c) Authorization of indemnification shall be made in the same manner as the determination that indemnification is permissible, except that if there are fewer than two (2) qualified directors or if the determination is made by special legal counsel, authorization of indemnification shall be made by those entitled to select special legal counsel under subsection (b)(2)(ii) of this section.

**Credits**
Added by S.L. 2015, ch. 243, § 63, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 103, eff. July 1, 2019.

---

Add-43

I.C. § 30-29-855, ID ST § 30-29-855

Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Add-44

West's Idaho Code Annotated
  Title 30. Corporations
    Chapter 29. General Business Corporations
      Part 8. Directors and Officers

I.C. § 30-29-856
Formerly cited as ID ST § 30-1-856

### § 30-29-856. Indemnification of officers

Effective: July 1, 2019
Currentness

(a) A corporation may indemnify and advance expenses under sections 30-29-850 through 30-29-859, Idaho Code, to an officer who is a party to a proceeding because he or she is an officer:

  (1) To the same extent as a director; and

  (2) If he or she is an officer but not a director, to such further extent as may be provided by the articles of incorporation or the bylaws, or by a resolution adopted or a contract approved by the board of directors, or shareholders except for:

    (i) Liability in connection with a proceeding by or in the right of the corporation other than for expenses incurred in connection with the proceeding; or

    (ii) Liability arising out of conduct that constitutes:

      (A) Receipt by the officer of a financial benefit to which he or she is not entitled;

      (B) An intentional infliction of harm on the corporation or the shareholders; or

      (C) An intentional violation of criminal law.

(b) The provisions of subsection (a)(2) of this section shall apply to an officer who is also a director if he or she is made a party to the proceeding based on an act or omission solely as an officer.

(c) An officer who is not a director is entitled to mandatory indemnification under section 30-29-852, Idaho Code, and may apply to a court under section 30-29-854, Idaho Code, for indemnification or an advance for expenses, in each case to the same extent to which a director may be entitled to indemnification or advance for expenses under those sections.

Add-45

**Credits**

Added by S.L. 2015, ch. 243, § 63, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 104, eff. July 1, 2019.

I.C. § 30-29-856, ID ST § 30-29-856

Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

**End of Document**        © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Add-46

West's Idaho Code Annotated
  Title 30. Corporations
    Chapter 29. General Business Corporations
      Part 8. Directors and Officers

I.C. § 30-29-859
Formerly cited as ID ST § 30-1-859

## § 30-29-859. Exclusivity

Currentness

A corporation may provide indemnification or advance expenses to a director or an officer only as permitted by sections 30-29-850 through 30-29-859, Idaho Code.

**Credits**

Added by S.L. 2015, ch. 243, § 63, eff. July 1, 2015.

I.C. § 30-29-859, ID ST § 30-29-859
Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

End of Document                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

West's Idaho Code Annotated
   Title 30. Corporations
      Chapter 29. General Business Corporations
         Part 12. Disposition of Assets

I.C. § 30-29-1201
Formerly cited as ID ST § 30-1-1201

## § 30-29-1201. Disposition of assets not requiring shareholder approval

Effective: July 1, 2019
Currentness

No approval of the shareholders is required, unless the articles of incorporation otherwise provide:

(a) To sell, lease, exchange, or otherwise dispose of any or all of the corporation's assets in the usual and regular course of business;

(b) To mortgage, pledge, dedicate to the repayment of indebtedness, whether with or without recourse, or otherwise encumber any or all of the corporation's assets, regardless of whether in the usual and regular course of business; or

(c) To transfer any or all of the corporation's assets to one (1) or more domestic or foreign corporations or other entities all of the shares or interests of which are owned by the corporation; or

(d) To distribute assets pro rata to the holders of one (1) or more classes or series of the corporation's shares.

**Credits**

Added by S.L. 2015, ch. 243, § 67, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 130, eff. July 1, 2019.

I.C. § 30-29-1201, ID ST § 30-29-1201
Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

**End of Document**        © 2026 Thomson Reuters. No claim to original U.S. Government Works.

§ 30-29-1602. Inspection rights of shareholders, ID ST § 30-29-1602

West's Idaho Code Annotated
  Title 30. Corporations
    Chapter 29. General Business Corporations
      Part 16. Records and Reports

I.C. § 30-29-1602
Formerly cited as ID ST § 30-1-1602

§ 30-29-1602. Inspection rights of shareholders

Effective: July 1, 2019
Currentness

(a) A shareholder of a corporation is entitled to inspect and copy, during regular business hours at the corporation's principal office, any of the records of the corporation described in section 30-29-1601(a), Idaho Code, excluding minutes of meetings of, and records of actions taken without a meeting by, the corporation's board of directors and board committees established under section 30-29-825, Idaho Code, if the shareholder gives the corporation a signed written notice of the shareholder's demand at least five (5) business days before the date on which the shareholder wishes to inspect and copy.

(b) A shareholder of a corporation is entitled to inspect and copy, during regular business hours at a reasonable location specified by the corporation, any of the following records of the corporation if the shareholder meets the requirements of subsection (c) of this section and gives the corporation a signed written notice of the shareholder's demand at least five (5) days before the date on which the shareholder wishes to inspect and copy:

  (1) The financial statements of the corporation maintained in accordance with section 30-29-1601(b), Idaho Code;

  (2) Accounting records of the corporation;

  (3) Excerpts from minutes of any meeting of, or records of any actions taken without a meeting by the corporation's board of directors and board committees maintained in accordance with section 30-29-1601(a), Idaho Code; and

  (4) The record of shareholders maintained in accordance with section 30-29-1601(d), Idaho Code.

(c) A shareholder may inspect and copy the records described in subsection (b) of this section only if:

  (1) The shareholder's demand is made in good faith and for a proper purpose;

  (2) The shareholder's demand describes with reasonable particularity the shareholder's purpose and the records the shareholder desires to inspect; and

Add-49

(3) The records are directly connected with the shareholder's purpose.

(d) The corporation may impose reasonable restrictions on the confidentiality, use, or distribution of records described in subsection (b) of this section.

(e) For any meeting of shareholders for which the record date for determining shareholders entitled to vote at the meeting is different than the record date for notice of the meeting, any person who becomes a shareholder subsequent to the record date for notice of the meeting and is entitled to vote at the meeting is entitled to obtain from the corporation upon request the notice and any other information provided by the corporation to shareholders in connection with the meeting, unless the corporation has made such information generally available to shareholders by posting it on its website or by other generally recognized means. Failure of a corporation to provide such information does not affect the validity of action taken at the meeting.

(f) The right of inspection granted by this section may not be abolished or limited by a corporation's articles of incorporation or bylaws.

(g) This section does not affect:

(1) The right of a shareholder to inspect records under section 30-29-720, Idaho Code, or, if the shareholder is in litigation with the corporation, to the same extent as any other litigant; or

(2) The power of a court, independently of this chapter, to compel the production of corporate records for examination and to impose reasonable restrictions as provided in section 30-29-1604(c), Idaho Code, provided that, in the case of production of records described in subsection (b) of this section at the request of a shareholder, the shareholder has met the requirements of subsection (c) of this section.

(h) For purposes of this section, "shareholder" means a record shareholder, a beneficial shareholder, and an unrestricted voting trust beneficial owner.

**Credits**
Added by S.L. 2015, ch. 243, § 71, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 160, eff. July 1, 2019.

Notes of Decisions (10)

I.C. § 30-29-1602, ID ST § 30-29-1602
Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

**End of Document** 

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Add-50

West's Idaho Code Annotated
  Title 30. Corporations
    Chapter 29. General Business Corporations
      Part 16. Records and Reports

I.C. § 30-29-1603
Formerly cited as ID ST § 30-1-1603

### § 30-29-1603. Scope of inspection right

Effective: July 1, 2019
Currency

(a) A shareholder may appoint an agent or attorney to exercise the shareholder's inspection and copying rights under section 30-29-1602, Idaho Code.

(b) The corporation may, if reasonable, satisfy the right of a shareholder to copy records under section 30-29-1602, Idaho Code, by furnishing to the shareholder copies by photocopy or other means chosen by the corporation, including furnishing copies through an electronic transmission.

(c) The corporation may comply at its expense with a shareholder's demand to inspect the record of shareholders under section 30-29-1602(b)(4), Idaho Code, by providing the shareholder with a list of shareholders that was compiled no earlier than the date of the shareholder's demand.

(d) The corporation may impose a reasonable charge to cover the costs for providing copies of documents to the shareholder that may be based on an estimate of such costs.

**Credits**

Added by S.L. 2015, ch. 243, § 71, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 161, eff. July 1, 2019.

I.C. § 30-29-1603, ID ST § 30-29-1603
Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Add-51

West's Idaho Code Annotated
  Title 30. Corporations
    Chapter 29. General Business Corporations
      Part 16. Records and Reports

I.C. § 30-29-1605
Formerly cited as ID ST § 30-1-1605

## § 30-29-1605. Inspection rights of directors

Effective: July 1, 2019

Currentness

(a) A director of a corporation is entitled to inspect and copy the books, records and documents of the corporation at any reasonable time to the extent reasonably related to the performance of the director's duties as a director, including duties as a member of a board committee, but not for any other purpose or in any manner that would violate any duty to the corporation.

(b) The district court of the county where the corporation's principal office is located, or if none in this state, Ada county, may order inspection and copying of the books, records and documents at the corporation's expense upon application of a director who has been refused such inspection rights unless the corporation establishes that the director is not entitled to such inspection rights. The court shall dispose of an application under this subsection on an expedited basis.

(c) If an order is issued, the court may include provisions protecting the corporation from undue burden or expense, and prohibiting the director from using information obtained upon exercise of the inspection rights in a manner that would violate a duty to the corporation, and may also order the corporation to reimburse the director for the director's expenses incurred in connection with the application.

**Credits**

Added by S.L. 2015, ch. 243, § 71, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 163, eff. July 1, 2019.

I.C. § 30-29-1605, ID ST § 30-29-1605
Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Add-52

§ 30-29-1620. Financial statements for shareholders, ID ST § 30-29-1620

West's Idaho Code Annotated
  Title 30. Corporations
    Chapter 29. General Business Corporations
      Part 16. Records and Reports

I.C. § 30-29-1620

Formerly cited as ID ST § 30-1-1620

§ 30-29-1620. Financial statements for shareholders

Effective: July 1, 2019

Currentness

(a) Upon the written request of a shareholder, a corporation shall deliver or make available to such requesting shareholder by posting on its website, or by other generally recognized means, annual financial statements for the most recent fiscal year of the corporation for which annual financial statements have been prepared for the corporation. If financial statements have been prepared for the corporation on the basis of generally accepted accounting principles for such specified period, the corporation shall deliver or make available such financial statements to the requesting shareholder. If the annual financial statements to be delivered or made available to the requesting shareholder are audited or otherwise reported upon by a public accountant, the report shall also be delivered or made available to the requesting shareholder.

(b) A corporation shall deliver, or make available and provide written notice of availability of, the financial statements required under subsection (a) of this section to the requesting shareholder within five (5) business days of delivery of such written request to the corporation.

(c) A corporation may fulfill its responsibilities under this section by delivering the specified financial statements, or otherwise making them available, in any manner permitted by the applicable rules and regulations of the United States securities and exchange commission.

(d) Notwithstanding the provisions of subsections (a), (b), and (c) of this section:

  (1) As a condition to delivering, or making available, financial statements to a requesting shareholder, the corporation may require the requesting shareholder to agree to reasonable restrictions on the confidentiality, use, and distribution of such financial statements; and

  (2) The corporation may, if it reasonably determines that the shareholder's request is not made in good faith or for a proper purpose, decline to deliver or make available such financial statements to that shareholder.

(e) If a corporation does not respond to a shareholder's request for annual financial statements pursuant to this section in accordance with subsection (b) of this section within five (5) business days of delivery of such request to the corporation:

Add-53

(1) The requesting shareholder may apply to the Idaho district court of the county where the corporation's principal office is located or, if none in this state, Ada county, for an order requiring delivery of or access to the requested financial statements. The court shall dispose of an application under this subsection on an expedited basis.

(2) If the court orders delivery or access to the requested financial statements, it may impose reasonable restrictions on their confidentiality, use, or distribution.

(3) In such proceeding, if the corporation has declined to deliver or make available such financial statements because the shareholder had been unwilling to agree to restrictions proposed by the corporation on the confidentiality, use, and distribution of such financial statements, the corporation shall have the burden of demonstrating that the restrictions proposed by the corporation were reasonable.

(4) In such proceeding, if the corporation has declined to deliver or make available such financial statements pursuant to subsection (d)(2) of this section, the corporation shall have the burden of demonstrating that it had reasonably determined that the shareholder's request was not made in good faith or for a proper purpose.

(5) If the court orders delivery or access to the requested financial statements, it shall order the corporation to pay the shareholder's expenses incurred to obtain such order unless the corporation establishes that it had refused delivery or access to the requested financial statements because the shareholder had refused to agree to reasonable restrictions on the confidentiality, use, or distribution of the financial statements or that the corporation had reasonably determined that the shareholder's request was not made in good faith or for a proper purpose.

**Credits**

Added by S.L. 2019, ch. 90, § 167, eff. July 1, 2019.

I.C. § 30-29-1620, ID ST § 30-29-1620

Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

---

**End of Document**  <span style="float:right">© 2026 Thomson Reuters. No claim to original U.S. Government Works.</span>

§ 18-1907. Refusal to permit stockholder to inspect records, ID ST § 18-1907

West's Idaho Code Annotated
   Title 18. Crimes and Punishments
      Chapter 19. Corporations

I.C. § 18-1907

§ 18-1907. Refusal to permit stockholder to inspect records

Currentness

Every officer or agent of any corporation having or keeping an office within this state who has in his custody or control any book, paper or document of such corporation and who refuses to give to a stockholder or member of such corporation, lawfully demanding, during office hours, to inspect or take a copy of the same, or any part thereof, a reasonable opportunity so to do, is guilty of a misdemeanor.

**Credits**
S.L. 1972, ch. 336, § 1.

Notes of Decisions (1)

I.C. § 18-1907, ID ST § 18-1907
Statutes and Constitution are current with effective legislation through the First Regular Session of the Sixty-Eighth Idaho Legislature, which convened on January 6, 2025 and adjourned sine die on April 4, 2025. Some sections may be more current; see credits for details.

End of Document                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Add-55

# I.R.C.P. 78. Derivative Actions

**Idaho Rules of Civil Procedure Rule 78. Derivative Actions.**

**(a)  Prerequisites.** This rule applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.

**(b)  Pleading Requirements.** The complaint must be verified and must:

(1)  allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

(2)  allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and

(3)  state with particularity:

(A)  any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

(B)  the reasons for not obtaining the action or not making the effort.

**(c)  Settlement, Dismissal, and Compromise.** A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders.

(Adopted March 1, 2016, effective July 1, 2016 [1].)



**I.R.C.P. 78. Derivative Actions**
Published on Supreme Court (https://isc.idaho.gov)

**Source URL:** https://isc.idaho.gov/ircp78-new

**Links**
[1] https://isc.idaho.gov/rules/IRCP/03012016-Adoption-Newly-Formatted.pdf

**Add-57**

United States Code Annotated
  Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
    Title I. Scope of Rules; Form of Action

Federal Rules of Civil Procedure Rule 1

## Rule 1. Scope and Purpose

Currentness

These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.

**CREDIT(S)**

(Amended December 29, 1948, effective October 20, 1949; February 28, 1966, effective July 1, 1966; April 22, 1993, effective December 1, 1993; April 30, 2007, effective December 1, 2007; April 29, 2015, effective December 1, 2015.)

<**Amendments received through October 1, 2025**>

**ADVISORY COMMITTEE NOTES**
**1937 Adoption**

**1.** Rule 81 states certain limitations in the application of these rules to enumerated special proceedings.

**2.** The expression "district courts of the United States" appearing in the statute authorizing the Supreme Court of the United States to promulgate rules of civil procedure does not include the district courts held in the territories and insular possessions. See *Mookini et al. v. United States,* 1938, 58 S.Ct. 543, 303 U.S. 201, 82 L.Ed. 748.

**3.** These rules are drawn under the authority of the Act of June 19, 1934, U.S.C., Title 28, § 723b [see 2072] (Rules in actions at law; Supreme Court authorized to make), and § 723c [see 2072] (Union of equity and action at law rules; power of Supreme Court) and also other grants of rule making power to the Court. See Clark and Moore, *A New Federal Civil Procedure--I. The Background,* 44 Yale L.J. 387, 391 (1935). Under § 723b after the rules have taken effect all laws in conflict therewith are of no further force or effect. In accordance with § 723c the Court has united the general rules prescribed for cases in equity with those in actions at law so as to secure one form of civil action and procedure for both. See Rule 2 (One Form of Action). For the former practice in equity and at law see U.S.C.A., Title 28, §§ 723 and 730 [see 2071 et seq.] (conferring power on the Supreme Court to make rules of practice in equity) and the [former] Equity Rules promulgated thereunder; U.S.C., Title 28, [former] § 724 (Conformity act); [former] Equity Rule 22 (Action at Law Erroneously Begun as Suit in Equity--Transfer); [former] Equity Rule 23 (Matters Ordinarily Determinable at Law When Arising in Suit in Equity to be Disposed of Therein); U.S.C., Title 28, [former] §§ 397 (Amendments to pleadings when case brought to wrong side of court), and 398 (Equitable defenses and equitable relief in actions at law).

**4.** With the second sentence compare U.S.C., Title 28, [former] §§ 777 (Defects of form; amendments), [former] 767 (Amendment of process); [former] Equity Rule 19 (Amendments Generally).

Add-58

**1948 Amendment**

The change in nomenclature conforms to the official designation of district courts in Title 28, U.S.C., § 132(a).

**1966 Amendment**

This is the fundamental change necessary to effect unification of the civil and admiralty procedure. Just as the 1938 rules abolished the distinction between actions at law and suits in equity, this change would abolish the distinction between civil actions and suits in admiralty. See also Rule 81.

**1993 Amendment**

The purpose of this revision, adding the words "and administered" to the second sentence, is to recognize the affirmative duty of the court to exercise the authority conferred by these rules to ensure that civil litigation is resolved not only fairly, but also without undue cost or delay. As officers of the court, attorneys share this responsibility with the judge to whom the case is assigned.

**2007 Amendment**

The language of Rule 1 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

The merger of law, equity, and admiralty practice is complete. There is no need to carry forward the phrases that initially accomplished the merger.

The former reference to "suits of a civil nature" is changed to the more modern "civil actions and proceedings." This change does not affect such questions as whether the Civil Rules apply to summary proceedings created by statute. *See SEC v. McCarthy*, 322 F.3d 650 (9th Cir. 2003); *see also New Hampshire Fire Ins. Co. v. Scanlon*, 362 U.S. 404 (1960).

*The Style Project*

The Civil Rules are the third set of the rules to be restyled. The restyled Rules of Appellate Procedure took effect in 1998. The restyled Rules of Criminal Procedure took effect in 2002. The restyled Rules of Civil Procedure apply the same general drafting guidelines and principles used in restyling the Appellate and Criminal Rules.

*1. General Guidelines*

Guidance in drafting, usage, and style was provided by Bryan Garner, *Guidelines for Drafting and Editing Court Rules*, Administrative Office of the United States Courts (1996) and Bryan Garner, *Dictionary of Modern Legal Usage* (2d ed. 1995). *See also* Joseph Kimble, *Guiding Principles for Restyling the Civil Rules*, in *Preliminary Draft of Proposed Style Revision of the Federal Rules of Civil Procedure*, at x (Feb. 2005) (available at http://www.uscourts.gov/rules/Prelim_draft_proposed_pt1.pdf).

*2. Formatting Changes*

Many of the changes in the restyled Civil Rules result from using format to achieve clearer presentation. The rules are broken down into constituent parts, using progressively indented subparagraphs with headings and substituting vertical for horizontal lists. "Hanging indents" are used throughout. These formatting changes make the structure of the rules graphic and make the restyled rules easier to read and understand even when the words are not changed. Rule 14(a) illustrates the benefits of formatting changes.

*3. Changes to Reduce Inconsistent, Ambiguous, Redundant, Repetitive, or Archaic Words*

The restyled rules reduce the use of inconsistent terms that say the same thing in different ways. Because different words are presumed to have different meanings, such inconsistencies can result in confusion. The restyled rules reduce inconsistencies by using the same words to express the same meaning. For example, consistent expression is achieved without affecting meaning by the changes from "infant" in many rules to "minor" in all rules; from "upon motion or on its own initiative" in Rule 4(m) and variations in many other rules to "on motion or on its own"; and from "deemed" to "considered" in Rules 5(c), 12(e), and elsewhere. Some variations of expression have been carried forward when the context made that appropriate. As an example, "stipulate," "agree," and "consent" appear throughout the rules, and "written" qualifies these words in some places but not others. The number of variations has been reduced, but at times the former words were carried forward. None of the changes, when made, alters the rule's meaning.

The restyled rules minimize the use of inherently ambiguous words. For example, the word "shall" can mean "must," "may," or something else, depending on context. The potential for confusion is exacerbated by the fact that "shall" is no longer generally used in spoken or clearly written English. The restyled rules replace "shall" with "must," "may," or "should," depending on which one the context and established interpretation make correct in each rule.

The restyled rules minimize the use of redundant "intensifiers." These are expressions that attempt to add emphasis, but instead state the obvious and create negative implications for other rules. "The court in its discretion may" becomes "the court may"; "unless the order expressly directs otherwise" becomes "unless the court orders otherwise." The absence of intensifiers in the restyled rules does not change their substantive meaning. For example, the absence of the word "reasonable" to describe the written notice of foreign law required in Rule 44.1 does not mean that "unreasonable" notice is permitted.

The restyled rules also remove words and concepts that are outdated or redundant. The reference to "at law or in equity" in Rule 1 has become redundant with the merger of law and equity. Outdated words and concepts include the reference to "demurrers, pleas, and exceptions" in Rule 7(c); the reference to "mesne" process in Rule 77(c); and the reference in Rule 81(f) to a now-abolished official position.

The restyled rules remove a number of redundant cross-references. For example, Rule 8(b) states that a general denial is subject to the obligations of Rule 11, but all pleadings are subject to Rule 11. Removing such cross-references does not defeat application of the formerly cross-referenced rule.

*4. Rule Numbers*

The restyled rules keep the same rule numbers to minimize the effect on research. Subdivisions have been rearranged within some rules to achieve greater clarity and simplicity. The only change that moves one part of a rule to another is the transfer of former Rule 25(d)(2) to Rule 17(d). The restyled rules include a comparison chart to make it easy to identify transfers of provisions between subdivisions and redesignations of some subdivisions.

*5. Other Changes*

The style changes to the rules are intended to make no changes in substantive meaning. A very small number of minor technical amendments that arguably do change meaning were approved separately from the restyled rules, but become effective at the same time. An example is adding "e-mail address" to the information that must be included in pleadings. These minor changes occur in Rules 4(k), 9(h), 11(a), 14(b), 16(c)(1), 26(g)(1), 30(b), 31, 40, 71.1, and 78.

**2015 Amendment**

**Rule 1. Scope and Purpose, FRCP Rule 1**

Rule 1 is amended to emphasize that just as the court should construe and administer these rules to secure the just, speedy, and inexpensive determination of every action, so the parties share the responsibility to employ the rules in the same way. Most lawyers and parties cooperate to achieve these ends. But discussions of ways to improve the administration of civil justice regularly include pleas to discourage over-use, misuse, and abuse of procedural tools that increase cost and result in delay. Effective advocacy is consistent with--and indeed depends upon--cooperative and proportional use of procedure.

This amendment does not create a new or independent source of sanctions. Neither does it abridge the scope of any other of these rules.

Notes of Decisions (294)

Fed. Rules Civ. Proc. Rule 1, 28 U.S.C.A., FRCP Rule 1
Including Amendments Received Through 1-1-2026

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Add-61

United States Code Annotated
Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
Title III. Pleadings and Motions

Federal Rules of Civil Procedure Rule 12

Rule 12. Defenses and Objections: When and How Presented; Motion for
Judgment on the Pleadings; Consolidating Motions; Waiving Defenses;
Pretrial Hearing [Rule Text & Notes of Decisions subdivisions I, II]

Currentness

<Notes of Decisions for 28 USCA Federal Rules of Civil Procedure Rule 12 are displayed in multiple documents. >

<[Text of paragraph (a) and subsection (a)(1) effective until December 1, 2024, absent contrary Congressional action.] >

**(a) Time to Serve a Responsive Pleading.**

   **(1) *In General.*** Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows:

     <[Text of paragraph (a) and subsection (a)(1) effective December 1, 2024, absent contrary Congressional action.] >

**(a) Time to Serve a Responsive Pleading.** Unless another time is specified by a federal statute, the time for serving a responsive pleading is as follows:

   **(1) *In General.***

     **(A)** A defendant must serve an answer:

       **(i)** within 21 days after being served with the summons and complaint; or

       **(ii)** if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.

     **(B)** A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.

**(C)** A party must serve a reply to an answer within 21 days after being served with an order to reply, unless the order specifies a different time.

**(2)** *United States and Its Agencies, Officers, or Employees Sued in an Official Capacity.* The United States, a United States agency, or a United States officer or employee sued only in an official capacity must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the United States attorney.

**(3)** *United States Officers or Employees Sued in an Individual Capacity.* A United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the officer or employee or service on the United States attorney, whichever is later.

**(4)** *Effect of a Motion.* Unless the court sets a different time, serving a motion under this rule alters these periods as follows:

**(A)** if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action; or

**(B)** if the court grants a motion for a more definite statement, the responsive pleading must be served within 14 days after the more definite statement is served.

**(b) How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

**(1)** lack of subject-matter jurisdiction;

**(2)** lack of personal jurisdiction;

**(3)** improper venue;

**(4)** insufficient process;

**(5)** insufficient service of process;

**(6)** failure to state a claim upon which relief can be granted; and

**(7)** failure to join a party under Rule 19.

Add-63

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

**(c) Motion for Judgment on the Pleadings.** After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings.

**(d) Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

**(e) Motion for a More Definite Statement.** A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

**(f) Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

   **(1)** on its own; or

   **(2)** on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

**(g) Joining Motions.**

   **(1)** *Right to Join.* A motion under this rule may be joined with any other motion allowed by this rule.

   **(2)** *Limitation on Further Motions.* Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

**(h) Waiving and Preserving Certain Defenses.**

   **(1)** *When Some Are Waived.* A party waives any defense listed in Rule 12(b)(2)-(5) by:

      **(A)** omitting it from a motion in the circumstances described in Rule 12(g)(2); or

      **(B)** failing to either:

Add-64

    **(i)** make it by motion under this rule; or

    **(ii)** include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

**(2)** *When to Raise Others.* Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:

    **(A)** in any pleading allowed or ordered under Rule 7(a);

    **(B)** by a motion under Rule 12(c); or

    **(C)** at trial.

**(3)** *Lack of Subject-Matter Jurisdiction.* If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

**(i) Hearing Before Trial.** If a party so moves, any defense listed in Rule 12(b)(1)-(7)--whether made in a pleading or by motion--and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial.

**CREDIT(S)**

(Amended December 27, 1946, effective March 19, 1948; January 21, 1963, effective July 1, 1963; February 28, 1966, effective July 1, 1966; March 2, 1987, effective August 1, 1987; April 22, 1993, effective December 1, 1993; April 17, 2000, effective December 1, 2000; April 30, 2007, effective December 1, 2007; March 26, 2009, effective December 1, 2009; April 2, 2024, effective December 1, 2024, absent contrary Congressional action.)

**ADVISORY COMMITTEE NOTES**

1937 Adoption

**Note to Subdivision (a). 1.** Compare [former] Equity Rules 12 (Issue of Subpoena--Time for Answer) and 31 (Reply--When Required--When Cause at Issue); 4 Mont.Rev.Codes Ann. (1935) §§ 9107, 9158; N.Y.C. P.A. (1937) § 263; N.Y.R.C.P. (1937) Rules 109-111.

**2.** U.S.C., Title 28, § 763 (now § 547) (Petition in action against United States; service; appearance by district attorney) provides that the United States as a defendant shall have 60 days within which to answer or otherwise defend. This and other statutes which provide 60 days for the United States or an officer or agency thereof to answer or otherwise defend are continued by this rule. In so far as any statutes not excepted in rule 81 provide a different time for a defendant to defend, such statutes are modified. See U.S.C., Title 28, [former] § 45 (District courts; practice and procedure in certain cases under the interstate commerce laws) (30 days).

**3.** Compare the last sentence of [former] Equity Rule 29 (Defenses--How Presented) and N.Y.C.P.A. (1937) § 283. See Rule 15(a) for time within which to plead to an amended pleading.

**Note to Subdivisions (b) and (d). 1.** See generally [former] Equity Rules 29 (Defenses--How Presented), 33 (Testing Sufficiency of Defense), 43 (Defect of Parties--Resisting Objection), and 44 (Defect of Parties--Tardy Objection); N.Y.C.P.A. (1937) §§ 277-280; N.Y.R.C.P. (1937) Rules 106-112; *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 25, r.r. 1-4; Clark, *Code Pleading,* 1928, pp. 371-381.

**2.** For provisions authorizing defenses to be made in the answer or reply see *English Rules Under the Judicature Act,* (The Annual Practice, 1937) O. 25, r.r. 1-4; 1 Miss.Code Ann. (1930) §§ 378, 379. Compare Equity Rule 29 (Defenses--How Presented); U.S.C.A., Title 28, [former] § 45 (District Courts; practice and procedure in certain cases under the interstate commerce laws). U.S.C., Title 28, [former] § 45, substantially continued by this rule, provides: "No replication need be filed to the answer, and objections to the sufficiency of the petition or answer as not setting forth a cause of action or defense must be taken at the final hearing or by motion to dismiss the petition based on said grounds, which motion may be made at any time before answer is filed." Compare Calif.Code Civ.Proc., (Deering, 1937) § 433; 4 Nev.Comp.Laws (Hillyer, 1929) § 8600. For provisions that the defendant may demur and answer at the same time, see Calif.Code Civ.Proc. (Deering, 1937) § 431; 4 Nev.Comp.Laws (Hillyer, 1929) § 8598.

**3.** [Former] Equity Rule 29 (Defenses--How Presented) abolished demurrers and provided that defenses in point of law arising on the face of the bill should be made by motion to dismiss or in the answer, with further provision that every such point of law going to the whole or material part of the cause or causes stated might be called up and disposed of before final hearing "at the discretion of the court." Likewise many state practices have abolished the demurrer, or retain it only to attack substantial and not formal defects. See 6 Tenn.Code Ann. (Williams, 1934) § 8784; Ala.Code Ann. (Michie, 1928) § 9479; 2 Mass.Gen.Laws (Ter.Ed., 1932) ch. 231, §§ 15-18; Kansas Gen.Stat.Ann. (1935) §§ 60-705, 60-706.

**Note to Subdivision (c).** Compare [former] Equity Rule 33 (Testing Sufficiency of Defense); N.Y.R.C.P. (1937) Rules 111 and 112.

**Note to Subdivisions (e) and (f).** Compare [former] Equity Rules 20 (Further and Particular Statement in Pleading May be Required) and 21 (Scandal and Impertinence); *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 19, r.r. 7, 7a, 7b, 8; 4 Mont.Rev.Codes Ann. (1935) §§ 9166, 9167; N.Y.C.P.A. (1937) § 247; N.Y.C.P.A. (1937) Rules 103, 115, 116, 117; Wyo.Rev.Stat.Ann. (Courtright, 1931) §§ 89-1033, 89-1034.

**Note to Subdivision (g).** Compare Rules of the District Court of the United States for the District of Columbia (1937) Equity Rule 11; N.M. Rules of Pleading, Practice and Procedure, 38 N.M.Rep. vii. [105-408] (1934); Wash.Gen.Rules of the Superior Courts, 1 Wash.Rev.Stat.Ann. (Remington, 1932) p. 160, Rule VI(e) and (f).

**Note to Subdivision (h).** Compare Calif.Code Civ.Proc. (Deering, 1937) § 434; 2 Minn.Stat. (Mason, 1927) § 9252; N.Y.C.P.A. (1937) §§ 278 and 279; Wash.Gen.Rules of the Superior Courts, 1 Wash.Rev.Stat.Ann. (Remington, 1932) p. 160, Rule VI(e). This rule continues U.S.C.A., Title 28, former § 80 [now 1359, 1447, 1919] (Dismissal or remand) (of action over which district court lacks jurisdiction), while U.S.C.A., Title 28, § 399 (Amendments to show diverse citizenship) is continued by Rule 15.

1946 Amendment

**Note. Subdivision (a).** Various minor alterations in language have been made to improve the statement of the rule. All references to bills of particulars have been stricken in accordance with changes made in subdivision (e).

**Subdivision (b).** The addition of defense (7), "failure to join an indispensable party", cures an omission in the rules which are silent as to the mode of raising such failure. See Commentary, *Manner of Raising Objection of Non-Joinder of Indispensable Party,* 1940, 2 Fed.Rules Serv. 658, and, 1942, 5 Fed.Rules Serv. 820. In one case, *United States v. Metropolitan Life Ins. Co.,* E.D.Pa.1941, 36 F.Supp. 399, the failure to join an indispensable party was raised under Rule 12(c).

Add-66

Rule 12(b)(6), permitting a motion to dismiss for failure of the complaint to state a claim on which relief can be granted, is substantially the same as the old demurrer for failure of a pleading to state a cause of action. Some courts have held that as the rule by its terms refers to statements in the complaint, extraneous matter on affidavits, depositions or otherwise, may not be introduced in support of the motion, or to resist it. On the other hand, in many cases the district courts have permitted the introduction of such material. When these cases have reached circuit courts of appeals in situations where the extraneous material so received shows that there is no genuine issue as to any material question of fact and that on the undisputed facts as disclosed by the affidavits or depositions, one party or the other is entitled to judgment as a matter of law, the circuit courts, properly enough, have been reluctant to dispose of the case merely on the face of the pleading, and in the interest of prompt disposition of the action have made a final disposition of it. In dealing with such situations the Second Circuit has made the sound suggestion that whatever its label or original basis, the motion may be treated as a motion for summary judgment and disposed of as such. *Samara v. United States*, C.C.A.2, 1942, 129 F.2d 594, certiorari denied 63 S.Ct. 258, 317 U.S. 686, 87 L.Ed. 549; *Boro Hall Corp. v. General Motors Corp.,* C.C.A.2, 1942, 124 F.2d 822, certiorari denied 63 S.Ct. 436, 317 U.S. 695, 87 L.Ed. 556. See also, *Kithcart v. Metropolitan Life Ins. Co.,* C.C.A.8, 1945, 150 F.2d 997.

It has also been suggested that this practice could be justified on the ground that the federal rules permit "speaking" motions. The Committee entertains the view that on motion under Rule 12(b)(6) to dismiss for failure of the complaint to state a good claim, the trial court should have authority to permit the introduction of extraneous matter, such as may be offered on a motion for summary judgment, and if it does not exclude such matter the motion should then be treated as a motion for summary judgment and disposed of in the manner and on the conditions stated in Rule 56 relating to summary judgments, and, of course, in such a situation, when the case reaches the circuit court of appeals, that court should treat the motion in the same way. The Committee believes that such practice, however, should be tied to the summary judgment rule. The term "speaking motion" is not mentioned in the rules, and if there is such a thing its limitations are undefined. Where extraneous matter is received, by tying further proceedings to the summary judgment rule the courts have a definite basis in the rules for disposing of the motion.

The Committee emphasizes particularly the fact that the summary judgment rule does not permit a case to be disposed of by judgment on the merits on affidavits, which disclose a conflict on a material issue of fact, and unless this practice is tied to the summary judgment, rule, the extent to which a court, on the introduction of such extraneous matter, may resolve questions of fact on conflicting proof would be left uncertain.

The decisions dealing with this general situation may be generally grouped as follows: (1) cases dealing with the use of affidavits and other extraneous material on motions; (2) cases reversing judgments to prevent final determination on mere pleading allegations alone.

Under group (1) are: *Boro Hall Corp. v. General Motors Corp.,* C.C.A.2, 1942, 124 F.2d 822, certiorari denied 1943, 63 S.Ct. 436, 317 U.S. 695, 87 L.Ed. 556; *Gallup v. Caldwell,* C.C.A.3, 1941, 120 F.2d 90; *Central Mexico Light & Power Co. v. Munch,* C.C.A.2, 1940, 116 F.2d 85; *National Labor Relations Board v. Montgomery Ward & Co.,* 1944, 144 F.2d 528, 79 U.S.App.D.C. 200, certiorari denied 1944, 65 S.Ct. 134, 323 U.S. 774, 89 L.Ed. 619; *Urquhart v. American-La France Foamite Corp.,* 1944, 144 F.2d 542, 79 U.S.App.D.C. 219; *Samara v. United States,* C.C.A.2, 1942, 129 F.2d 594; *Cohen v. American Window Glass Co.,* C.C.A.2, 1942, 126 F.2d 111; *Sperry Products Inc. v. Association of American Railroads,* C.C.A.2, 1942, 132 F.2d 408; *Joint Council Dining Car Employees Local 370 v. Delaware, Lackawanna and Western R. Co.,* C.C.A.2, 1946, 157 F.2d 417; *Weeks v. Bareco Oil Co.,* C.C.A.7, 1941, 125 F.2d 84; *Carroll v. Morrison Hotel Corp.,* C.C.A.7, 1945, 149 F.2d 404; *Victory v. Manning,* C.C.A.3, 1942, 128 F.2d 415; *Locals No. 1470, No. 1469, and No. 1512 of International Longshoremen's Association v. Southern Pacific Co.,* C.C.A.5, 1942, 131 F.2d 605; *Lucking v. Delano,* C.C.A.6, 1942, 129 F.2d 283; *San Francisco Lodge No. 68 of International Association of Machinists v. Forrestal,* Cal.1944, 58 F.Supp. 466; *Benson v. Export Equipment Corp.,* 1945, 164 P.2d 380, 49 N.M. 356, construing New Mexico rule identical with Rule 12(b)(6); *F. E. Myers & Bros. Co. v. Gould Pumps, Inc.,* W.D.N.Y.1946, 9 Fed.Rules Serv. 12b.33, Case 2, 5 F.R.D. 132. Cf. *Kohler v. Jacobs,* C.C.A.5, 1943, 138 F.2d 440; *Cohen v. United States,* C.C.A.8, 1942, 129 F.2d 733.

**Add-67**

Under group (2) are: *Sparks v. England,* C.C.A.8, 1940, 113 F.2d 579; *Continental Collieries, Inc. v. Shober,* C.C.A.3, 1942, 130 F.2d 631; *Downey v. Palmer,* C.C.A.2, 1940, 114 F.2d 116; *DeLoach v. Crowley's Inc.,* C.C.A.5, 1942, 128 F.2d 378; *Leimer v. State Mutual Life Assurance Co. of Worcester, Mass.,* C.C.A.8, 1940, 108 F.2d 302; *Rossiter v. Vogel,* C.C.A.2, 1943, 134 F.2d 908, compare s.c., C.C.A.2, 1945, 148 F.2d 292; *Karl Kiefer Machine Co. v. United States Bottlers Machinery Co.,* C.C.A.7, 1940, 113 F.2d 356; *Chicago Metallic Mfg. Co. v. Edward Katzinger Co.,* C.C.A.7, 1941, 123 F.2d 518; *Louisiana Farmers' Protective Union, Inc. v. Great Atlantic & Pacific Tea Co. of America, Inc.,* C.C.A.8, 1942, 131 F.2d 419; *Publicity Bldg. Realty Corp. v. Hannegan,* C.C.A.8, 1943, 139 F.2d 583; *Dioguardi v. Durning,* C.C.A.2, 1944, 139 F.2d 774; *Package Closure Corp. v. Sealright Co., Inc.,* C.C.A.2, 1944, 141 F.2d 972; *Tahir Erk v. Glenn L. Martin Co.,* C.C.A.4, 1941, 116 F.2d 865; *Bell v. Preferred Life Assurance Society of Montgomery, Ala.,* 1943, 64 S.Ct. 5, 320 U.S. 238, 88 L.Ed. 15.

The addition at the end of subdivision (b) makes it clear that on a motion under Rule 12(b)(6) extraneous material may not be considered if the court excludes it, but that if the court does not exclude such material the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. It will also be observed that if a motion under Rule 12(b)(6) is thus converted into a summary judgment motion, the amendment insures that both parties shall be given a reasonable opportunity to submit affidavits and extraneous proofs to avoid taking a party by surprise through the conversion of the motion into a motion for summary judgment. In this manner and to this extent the amendment regularizes the practice above described. As the courts are already dealing with cases in this way, the effect of this amendment is really only to define the practice carefully and apply the requirements of the summary judgment rule in the disposition of the motion.

**Subdivision (c).** The sentence appended to subdivision (c) performs the same function and is grounded on the same reasons as the corresponding sentence added in subdivision (b).

**Subdivision (d).** The change here was made necessary because of the addition of defense (7) in subdivision (b).

**Subdivision (e).** References in this subdivision to a bill of particulars have been deleted, and the motion provided for is confined to one for more definite statement to be obtained only in cases where the movant cannot reasonably be required to frame an answer or other responsive pleading to the pleading in question. With respect to preparations for trial, the party is properly relegated to the various methods of examination and discovery provided in the rules for that purpose. *Slusher v. Jones,* E.D.Ky.1943, 7 Fed.Rules Serv. 12e.231, Case 5, 3 F.R.D. 168; *Best Foods, Inc. v. General Mills, Inc.,* D.Del.1943, 7 Fed.Rules Serv. 12e.231, Case 7, 3 F.R.D. 275; *Braden v. Callaway,* E.D.Tenn.1943, 8 Fed.Rules Serv. 12e.231, Case 1 ("... most courts ... conclude that the definiteness required is only such as will be sufficient for the party to prepare responsive pleadings"). Accordingly, the reference to the 20 day time limit has also been eliminated, since the purpose of this present provision is to state a time period where the motion for a bill is made for the purpose of preparing for trial.

Rule 12(e) as originally drawn has been the subject of more judicial rulings than any other part of the rules, and has been much criticized by commentators, judges and members of the bar. See general discussion and cases cited in 1 Moore's *Federal Practice,* 1938, Cum.Supplement, § 12.07, under "Page 657"; also, Holtzoff, *New Federal Procedure and the Courts,* 1940, 35-41. And compare vote of Second Circuit Conference of Circuit and District Judges, June 1940, recommending the abolition of the bill of particulars; *Sun Valley Mfg. Co. v. Mylish,* E.D.Pa.1944, 8 Fed.Rules Serv. 12e.231, Case 6 ("Our experience ... has demonstrated not only that 'the office of the bill of particulars is fast becoming obsolete' ... but that in view of the adequate discovery procedure available under the Rules, motions for bills of particulars should be abolished altogether."); *Walling v. American Steamship Co.,* W.D.N.Y.1945, 4 F.R.D. 355, 8 Fed.Rules Serv. 12e.244, Case 8 ("... the adoption of the rule was ill advised. It has led to confusion, duplication and delay.") The tendency of some courts freely to grant extended bills of particulars has served to neutralize any helpful benefits derived from rule 8, and has overlooked the intended use of the rules on depositions and discovery. The words "or to prepare for trial"--eliminated by the proposed amendment--have sometimes been seized upon as grounds for compulsory statement in the opposing pleading of all the details which the movant would have to meet at the trial. On the other hand, many courts have in effect read these words out of the rule. See *Walling v. Alabama Pipe Co.,* W.D.Mo.1942, 3 F.R.D. 159, 6 Fed.Rules Serv. 12e.244, Case 7; *Fleming v. Mason & Dixon Lines, Inc.,* E.D.Tenn.1941, 42 F.Supp. 230; *Kellogg Co. v. National Biscuit Co.,* D.N.J.1941, 38 F.Supp. 643; *Brown v. H. L. Green Co.,* S.D.N.Y.1943, 7 Fed.Rules Serv.

Add-68

12e.231, Case 6; *Pedersen v. Standard Accident Ins. Co.,* W.D.Mo.1945, 8 Fed.Rules Serv. 12e.231, Case 8; *Bowles v. Ohse,* D.Neb.1945, 4 F.R.D. 403, 9 Fed.Rules Serv. 12e.231, Case 1; *Klages v. Cohen,* E.D.N.Y.1945, 9 Fed.Rules Serv. 8a.25, Case 4; *Bowles v. Lawrence,* D.Mass.1945, 8 Fed.Rules Serv. 12e.231, Case 19; *McKinney Tool & Mfg. Co. v. Hoyt,* N.D.Ohio 1945, 9 Fed.Rules Serv. 12e.235, Case 1; *Bowles v. Jack,* D.Minn.1945, 5 F.R.D. 1, 9 Fed.Rules Serv. 12e.244, Case 9. And it has been urged from the bench that the phrase be stricken, *Poole v. White,* N.D.W.Va.1941, 5 Fed.Rules Serv. 12e.231, Case 4, 2 F.R.D. 40. See also *Bowles v. Gabel,* W.D.Mo.1946, 9 Fed.Rules Serv. 12e.244, Case 10. ("The courts have never favored that portion of the rules which undertook to justify a motion of this kind for the purpose of aiding counsel in preparing his case for trial.").

**Subdivision (f).** This amendment affords a specific method of raising the insufficiency of a defense, a matter which has troubled some courts, although attack has been permitted in one way or another. See *Dysart v. Remington-Rand, Inc.,* D.Conn.1939, 31 F.Supp. 296; *Eastman Kodak Co. v. McAuley,* S.D.N.Y.1941, 4 Fed.Rules Serv., 12f.21, Case 8, 2 F.R.D. 21; *Schenley Distillers Corp. v. Renken,* E.D.S.C.1940, 34 F.Supp. 678; *Yale Transport Corp. v. Yellow Truck & Coach Mfg. Co.,* S.D.N.Y.1944, 3 F.R.D. 440; *United States v. Turner Milk Co.,* N.D.Ill.1941, 4 Fed.Rules Serv. 12b.51, Case 3, 1 F.R.D. 643; *Teiger v. Stephan Oderwald, Inc.,* S.D.N.Y.1940, 31 F.Supp. 626; *Teplitsky v. Pennsylvania R. Co.,* N.D.Ill.1941, 38 F.Supp. 535; *Callagher v. Carroll,* E.D.N.Y.1939, 27 F.Supp. 568; *United States v. Palmer,* S.D.N.Y.1939, 28 F.Supp. 936. And see *Indemnity Ins. Co. of North America v. Pan American Airways, Inc.,* S.D.N.Y.1944, 58 F.Supp. 338; Commentary, *Modes of Attacking Insufficient Defenses in the Answer,* 901, 1939, 1 Fed.Rules Serv. 669, 1940, 2 Fed.Rules Serv. 640.

**Subdivision (g).** The change in title conforms with the companion provision in subdivision (h).

The alteration of the "except" clause requires that other than provided in subdivision (h) a party who resorts to a motion to raise defenses specified in the rule, must include in one motion all that are then available to him. Under the original rule defenses which could be raised by motion were divided into two groups which could be the subjects of two successive motions.

**Subdivision (h).** The addition of the phrase relating to indispensable parties is one of necessity.

1963 Amendment

This amendment conforms to the amendment of Rule 4(e). See also the Advisory Committee's Note to amended Rule 4(b).

1966 Amendment

**Subdivision (b)(7).** The terminology of this subdivision is changed to accord with the amendment of Rule 19. See the Advisory Committee's Note to Rule 19, as amended, especially the third paragraph therein before the caption "Subdivision (c)."

**Subdivision (g).** Subdivision (g) has forbidden a defendant who makes a preanswer motion under this rule from making a further motion presenting any defense or objection which was available to him at the time he made the first motion and which he could have included, but did not in fact include therein. Thus if the defendant moves before answer to dismiss the complaint for failure to state a claim, he is barred from making a further motion presenting the defense of improper venue, if that defense was available to him when he made his original motion. Amended subdivision (g) is to the same effect. This required consolidation of defenses and objections in a Rule 12 motion is salutary in that it works against piecemeal consideration of a case. For exceptions to the requirement of consolidation, see the last clause of subdivision (g), referring to new subdivision (h)(2).

**Subdivision (h).** The question has arisen whether an omitted defense which cannot be made the basis of a second motion may nevertheless be pleaded in the answer. Subdivision (h) called for waiver of "* * * defenses and objections which [defendant] does not present * * * by motion * * * or, if he has made no motion, in his answer * * *." If the clause "if he has made no motion," was read literally, it seemed that the omitted defense was waived and could not be pleaded in the answer. On the other hand, the clause might be read as adding nothing of substance to the preceding words; in that event it appeared that a defense was not waived by reason of being omitted from the motion and might be set up in the answer. The decisions were

**Add-69**

divided. Favoring waiver, see *Keef v. Derounian,* 6 F.R.D. 11 (N.D.Ill.1946); *Elbinger v. Precision Metal Workers Corp.,* 18 F.R.D. 467 (E.D.Wis.1956); see also *Rensing v. Turner Aviation Corp.,* 166 F.Supp. 790 (N.D.Ill.1958); *P. Beiersdorf & Co. v. Duke Laboratories, Inc.,* 10 F.R.D. 282 (S.D.N.Y.1950); *Neset v. Christensen,* 92 F.Supp. 78 (E.D.N.Y.1950). Opposing waiver, see *Phillips v. Baker,* 121 F.2d 752 (9th Cir.1941); *Crum v. Graham,* 32 F.R.D. 173 (D.Mont.1963) (regretfully following the Phillips case); see also *Birnbaum v. Birrell,* 9 F.R.D. 72 (S.D.N.Y.1948); *Johnson v. Joseph Schlitz Brewing Co.,* 33 F.Supp. 176 (E.D.Tenn.1940); cf. *Carter v. American Bus Lines, Inc.,* 22 F.R.D. 323 (D.Neb.1958).

Amended subdivision (h)(1)(A) eliminates the ambiguity and states that certain specified defenses which were available to a party when he made a preanswer motion, but which he omitted from the motion, are waived. The specified defenses are lack of jurisdiction over the person, improper venue, insufficiency of process, and insufficiency of service of process (see Rule 12(b)(2)-(5)). A party who by motion invites the court to pass upon a threshold defense should bring forward all the specified defenses he then has and thus allow the court to do a reasonably complete job. The waiver reinforces the policy of subdivision (g) forbidding successive motions.

By amended subdivision (h)(1)(B), the specified defenses, even if not waived by the operation of (A), are waived by the failure to raise them by a motion under Rule 12 or in the responsive pleading or any amendment thereto to which the party is entitled as a matter of course. The specified defenses are of such a character that they should not be delayed and brought up for the first time by means of an application to the court to amend the responsive pleading.

Since the language of the subdivisions is made clear, the party is put on fair notice of the effect of his actions and omissions and can guard himself against unintended waiver. It is to be noted that while the defenses specified in subdivision (h)(1) are subject to waiver as there provided, the more substantial defenses of failure to state a claim upon which relief can be granted, failure to join a party indispensable under Rule 19, and failure to state a legal defense to a claim (see Rule 12(b)(6), (7), (f)), as well as the defense of lack of jurisdiction over the subject matter (see Rule 12(b)(1)), are expressly preserved against waiver by amended subdivision (h)(2) and (3).

1987 Amendment

The amendments are technical. No substantive change is intended.

1993 Amendment

Subdivision (a) is divided into paragraphs for greater clarity, and paragraph (1)(B) is added to reflect amendments to Rule 4. Consistent with Rule 4(d)(3), a defendant that timely waives service is allowed 60 days from the date the request was mailed in which to respond to the complaint, with an additional 30 days afforded if the request was sent out of the country. Service is timely waived if the waiver is returned within the time specified in the request (30 days after the request was mailed, or 60 days if mailed out of the country) and before being formally served with process. Sometimes a plaintiff may attempt to serve a defendant with process while also sending the defendant a request for waiver of service; if the defendant executes the waiver of service within the time specified and before being served with process, it should have the longer time to respond afforded by waiving service.

The date of sending the request is to be inserted by the plaintiff on the face of the request for waiver and on the waiver itself. This date is used to measure the return day for the waiver form, so that the plaintiff can know on a day certain whether formal service of process will be necessary; it is also a useful date to measure the time for answer when service is waived. The defendant who returns the waiver is given additional time for answer in order to assure that it loses nothing by waiving service of process.

2000 Amendment

**Add-70**

Rule 12(a)(3)(B) is added to complement the addition of Rule 4(i)(2)(B). The purposes that underlie the requirement that service be made on the United States in an action that asserts individual liability of a United States officer or employee for acts occurring in connection with the performance of duties on behalf of the United States also require that the time to answer be extended to 60 days. Time is needed for the United States to determine whether to provide representation to the defendant officer or employee. If the United States provides representation, the need for an extended answer period is the same as in actions against the United States, a United States agency, or a United States officer sued in an official capacity.

An action against a former officer or employee of the United States is covered by subparagraph (3)(B) in the same way as an action against a present officer or employee. Termination of the relationship between the individual defendant and the United States does not reduce the need for additional time to answer.

**GAP Report**

No changes are recommended for Rule 12 as published.

2007 Amendment

The language of Rule 12 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Former Rule 12(a)(4)(A) referred to an order that postpones disposition of a motion "until the trial on the merits." Rule 12(a)(4) now refers to postponing disposition "until trial." The new expression avoids the ambiguity that inheres in "trial on the merits," which may become confusing when there is a separate trial of a single issue or another event different from a single all-encompassing trial.

2009 Amendment

The times set in the former rule at 10 or 20 days have been revised to 14 or 21 days. See the Note to Rule 6.

<[Effective December 1, 2024, absent contrary Congressional action.] >

2024 Amendment

Rule 12 is amended to make it clear that a federal statute that specifies another time supersedes the times to serve a responsive pleading set by paragraphs (a)(2) and (3). Paragraph (a)(1) incorporates this provision, but the structure of subdivision (a) does not seem to extend it to paragraphs (2) and (3). There is no reason to supersede an inconsistent statute by any part of Rule 12(a). The amended structure recognizes the priority of any statute for all of paragraphs (1), (2), and (3).

Notes of Decisions (965)

Fed. Rules Civ. Proc. Rule 12, 28 U.S.C.A., FRCP Rule 12
Including Amendments Received Through 10-1-24

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Add-71

United States Code Annotated
  Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
    Title III. Pleadings and Motions

Federal Rules of Civil Procedure Rule 15

## Rule 15. Amended and Supplemental Pleadings

Effective: December 1, 2023
Currentness

**(a) Amendments Before Trial.**

**(1)** *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course no later than:

**(A)** 21 days after serving it, or

**(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

**(2)** *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

**(3)** *Time to Respond.* Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

**(b) Amendments During and After Trial.**

**(1)** *Based on an Objection at Trial.* If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.

**(2)** *For Issues Tried by Consent.* When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

**(c) Relation Back of Amendments.**

**(1)** ***When an Amendment Relates Back.*** An amendment to a pleading relates back to the date of the original pleading when:

**(A)** the law that provides the applicable statute of limitations allows relation back;

**(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

**(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

**(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and

**(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

**(2)** ***Notice to the United States.*** When the United States or a United States officer or agency is added as a defendant by amendment, the notice requirements of Rule 15(c)(1)(C)(i) and (ii) are satisfied if, during the stated period, process was delivered or mailed to the United States attorney or the United States attorney's designee, to the Attorney General of the United States, or to the officer or agency.

**(d) Supplemental Pleadings.** On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

**CREDIT(S)**

(Amended January 21, 1963, effective July 1, 1963; February 28, 1966, effective July 1, 1966; March 2, 1987, effective August 1, 1987; April 30, 1991, effective December 1, 1991; amended by Pub.L. 102-198, § 11, December 9, 1991, 105 Stat. 1626; amended April 22, 1993, effective December 1, 1993; April 30, 2007, effective December 1, 2007; March 26, 2009, effective December 1, 2009; April 24, 2023, effective December 1, 2023.)

<**Amendments received through October 1, 2025**>

**ADVISORY COMMITTEE NOTES**

1937 Adoption

See generally for the present federal practice, [former] Equity Rules 19 (Amendments Generally), 28 (Amendment of Bill as of Course), 32 (Answer to Amended Bill), 34 (Supplemental Pleading), and 35 (Bills of Revivor and Supplemental Bills--Form); U.S.C. Title 28, § 399 [now 1653] (Amendments to show diverse citizenship) and [former] 777 (Defects of form; amendments). See *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 28, r. r. 1-13; O. 20, r. 4; O. 24, r. r. 1-3.

**Note to Subdivision (a).** The right to serve an amended pleading once as of course is common. 4 Mont.Rev.Codes Ann. (1935) § 9186; 1 Ore.Code Ann. (1930) § 1-904; 1 S.C.Code (Michie, 1932) § 493; *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 28, r. 2. Provision for amendment of pleading before trial, by leave of court, is in almost every code. If there is no statute the power of the court to grant leave is said to be inherent. Clark, *Code Pleading* (1928), pp. 498, 509.

**Note to Subdivision (b).** Compare [former] Equity Rule 19 (Amendments Generally) and code provisions which allow an amendment "at any time in furtherance of justice," (e.g., Ark.Civ.Code (Crawford, 1934) § 155) and which allow an amendment of pleadings to conform to the evidence, where the adverse party has not been misled and prejudiced (e.g., N.M.Stat.Ann. (Courtright, 1929) §§ 105-601, 105-602).

**Note to Subdivision (c).** "Relation back" is a well recognized doctrine of recent and now more frequent application. Compare Ala.Code Ann. (Michie, 1928) § 9513; Smith-Hurd Ill.Stats. ch. 110, § 170(2); 2 Wash.Rev.Stat.Ann. (Remington, 1932) § 308-3(4). See U.S.C., Title 28, § 399 [now 1653] (Amendments to show diverse citizenship) for a provision for "relation back."

**Note to Subdivision (d).** This is an adaptation of former Equity Rule 34 (Supplemental Pleading).

**1963 Amendment**

Rule 15(d) is intended to give the court broad discretion in allowing a supplemental pleading. However, some cases, opposed by other cases and criticized by the commentators, have taken the rigid and formalistic view that where the original complaint fails to state a claim upon which relief can be granted, leave to serve a supplemental complaint must be denied. See *Bonner v. Elizabeth Arden, Inc.,* 177 F.2d 703 (2d Cir. 1949); *Bowles v. Senderowitz,* 65 F.Supp. 548 (E.D.Pa.), rev'd on other grounds, 158 F.2d 435 (3d Cir. 1946), cert. denied, *Senderowitz v. Fleming,* 330 U.S. 848, 67 S.Ct. 1091, 91 L.Ed. 1292 (1947); cf. *LaSalle Nat. Bank v. 222 East Chestnut St. Corp.,* 267 F.2d 247 (7th Cir.), cert. denied, 361 U.S. 836, 80 S.Ct. 88, 4 L.Ed.2d 77 (1959). But see *Camilla Cotton Oil Co. v. Spencer Kellogg & Sons,* 257 F.2d 162 (5th Cir. 1958); *Genuth v. National Biscuit Co.,* 81 F.Supp. 213 (S.D.N.Y.1948), app. dism., 177 F.2d 962 (2d Cir. 1949); 3 Moore's *Federal Practice* ¶15.01[5] (Supp.1960); 1A Barron & Holtzoff, *Federal Practice & Procedure* 820-21 (Wright ed. 1960). Thus plaintiffs have sometimes been needlessly remitted to the difficulties of commencing a new action even though events occurring after the commencement of the original action have made clear the right to relief.

Under the amendment the court has discretion to permit a supplemental pleading despite the fact that the original pleading is defective. As in other situations where a supplemental pleading is offered, the court is to determine in the light of the particular circumstances whether filing should be permitted, and if so, upon what terms. The amendment does not attempt to deal with such questions as the relation of the statute of limitations to supplemental pleadings, the operation of the doctrine of laches, or the availability of other defenses. All these questions are for decision in accordance with the principles applicable to supplemental pleadings generally. Cf. *Blau v. Lamb,* 191 F.Supp. 906 (S.D.N.Y.1961); *Lendonsol Amusement Corp. v. B. & Q. Assoc., Inc.,* 23 F.R.Serv. 15d.3, Case 1 (D.Mass.1957).

**1966 Amendment**

Rule 15(c) is amplified to state more clearly when an amendment of a pleading changing the party against whom a claim is asserted (including an amendment to correct a misnomer or misdescription of a defendant) shall "relate back" to the date of the original pleading.

The problem has arisen most acutely in certain actions by private parties against officers or agencies of the United States. Thus an individual denied social security benefits by the Secretary of Health, Education, and Welfare may secure review of the decision by bringing a civil action against that officer within sixty days. 42 U.S.C. § 405(g) (Supp. III, 1962). In several recent cases the claimants instituted timely action but mistakenly named as defendant the United States, the Department of HEW,

the "Federal Security Administration" (a nonexistent agency), and a Secretary who had retired from the office nineteen days before. Discovering their mistakes, the claimants moved to amend their complaints to name the proper defendant; by this time the statutory sixty-day period had expired. The motions were denied on the ground that the amendment "would amount to the commencement of a new proceeding and would not relate back in time so as to avoid the statutory provision * * * that suit be brought within sixty days * * *" *Cohn v. Federal Security Adm.,* 199 F.Supp. 884, 885 (W.D.N.Y.1961); see also *Cunningham v. United States,* 199 F.Supp. 541 (W.D.Mo.1958); *Hall v. Department of HEW,* 199 F.Supp. 833 (S.D.Tex.1960); *Sandridge v. Folsom, Secretary of HEW,* 200 F.Supp. 25 (M.D.Tenn.1959). [The Secretary of Health, Education, and Welfare has approved certain ameliorative regulations under 42 U.S.C. § 405(g). See 29 Fed.Reg. 8209 (June 30, 1964); Jacoby, *The Effect of Recent Changes in the Law of "Nonstatutory" Judicial Review,* 53 Geo.L.J. 19, 42-43 (1964); see also *Simmons v. United States Dept. HEW,* 328 F.2d 86 (3d Cir. 1964).]

Analysis in terms of "new proceeding" is traceable to *Davis v. L. L. Cohen & Co.,* 268 U.S. 638 (1925), and *Mellon v. Arkansas Land & Lumber Co.,* 275 U.S. 460 (1928), but those cases antedate the adoption of the Rules which import different criteria for determining when an amendment is to "relate back". As lower courts have continued to rely on the *Davis* and *Mellon* cases despite the contrary intent of the Rules, clarification of Rule 15(c) is considered advisable.

Relation back is intimately connected with the policy of the statute of limitations. The policy of the statute limiting the time for suit against the Secretary of HEW would not have been offended by allowing relation back in the situations described above. For the government was put on notice of the claim within the stated period--in the particular instances, by means of the initial delivery of process to a responsible government official (see Rule 4(d)(4) and (5)). In these circumstances, characterization of the amendment as a new proceeding is not responsive to the realty [sic], but is merely question-begging; and to deny relation back is to defeat unjustly the claimant's opportunity to prove his case. See the full discussion by Byse, *Suing the "Wrong" Defendant in Judicial Review of Federal Administrative Action: Proposals for Reform,* 77 Harv.L.Rev. 40 (1963); see also Ill.Civ.P. Act § 46(4).

Much the same question arises in other types of actions against the government (see *Byse,* supra, at 45 n. 15). In actions between private parties, the problem of relation back of amendments changing defendants has generally been better handled by the courts, but incorrect criteria have sometimes been applied, leading sporadically to doubtful results. See 1A Barron & Holtzoff, *Federal Practice & Procedure* § 451 (Wright ed. 1960); 1 id. § 186 (1960); 2 id. § 543 (1961); 3 *Moore's Federal Practice,* par. 15.15 (Cum.Supp.1962); Annot., *Change in Party After Statute of Limitations Has Run,* 8 A.L.R.2d 6 (1949). Rule 15(c) has been amplified to provide a general solution. An amendment changing the party against whom a claim is asserted relates back if the amendment satisfies the usual condition of Rule 15(c) of "arising out of the conduct * * * set forth * * * in the original pleading," and if, within the applicable limitations period, the party brought in by amendment, first, received such notice of the institution of the action--the notice need not be formal--that he would not be prejudiced in defending the action, and, second, knew or should have known that the action would have been brought against him initially had there not been a mistake concerning the identity of the proper party. Revised Rule 15(c) goes on to provide specifically in the government cases that the first and second requirements are satisfied when the government has been notified in the manner there described (see Rule 4(d)(4) and (5)). As applied to the government cases, revised Rule 15(c) further advances the objectives of the 1961 amendment of Rule 25(d) (substitution of public officers).

The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs. Also relevant is the amendment of Rule 17(a) (real party in interest). To avoid forfeitures of just claims, revised Rule 17(a) would provide that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed for correction of the defect in the manner there stated.

1987 Amendment

The amendments are technical. No substantive change is intended.

1991 Amendment

The rule has been revised to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense.

**Paragraph (c)(1).** This provision is new. It is intended to make it clear that the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law. Generally, the applicable limitations law will be state law. If federal jurisdiction is based on the citizenship of the parties, the primary reference is the law of the state in which the district court sits. *Walker v. Armco Steel Corp.,* 446 U.S. 740 (1980). If federal jurisdiction is based on a federal question, the reference may be to the law of the state governing relations between the parties. *E.g., Board of Regents v. Tomanio,* 446 U.S. 478 (1980). In some circumstances, the controlling limitations law may be federal law. *E.g., West v. Conrail, Inc.,* 107 S.Ct. 1538 (1987). Cf. *Burlington Northern R. Co. v. Woods,* 480 U.S. 1 (1987); *Stewart Organization v. Ricoh,* 108 S.Ct. 2239 (1988). Whatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim. Accord, *Marshall v. Mulrenin,* 508 F.2d 39 (1st Cir.1974). If *Schiavone v. Fortune,* 106 S.Ct. 2379 (1986) implies the contrary, this paragraph is intended to make a material change in the rule.

**Paragraph (c)(3).** This paragraph has been revised to change the result in *Schiavone v. Fortune, supra,* with respect to the problem of a misnamed defendant. An intended defendant who is notified of an action within the period allowed by Rule 4(m) [subdivision (m) in Rule 4 was a proposed subdivision which was withdrawn by the Supreme Court] for service of a summons and complaint may not under the revised rule defeat the action on account of a defect in the pleading with respect to the defendant's name, provided that the requirements of clauses (A) and (B) have been met. If the notice requirement is met within the Rule 4(m) [subdivision (m) in Rule 4 was a proposed subdivision which was withdrawn by the Supreme Court] period, a complaint may be amended at any time to correct a formal defect such as a misnomer or misidentification. On the basis of the text of the former rule, the Court reached a result in *Schiavone v. Fortune* that was inconsistent with the liberal pleading practices secured by Rule 8. See Bauer, *Schiavone: An Un-Fortune-ate Illustration of the Supreme Court's Role as Interpreter of the Federal Rules of Civil Procedure,* 63 Notre Dame L.Rev. 720 (1988); Brussack, *Outrageous Fortune: The Case for Amending Rule 15(c) Again,* 61 S.Cal.L.Rev. 671 (1988); Lewis, *The Excessive History of Federal Rule 15(c) and Its Lessons for Civil Rules Revision,* 86 Mich.L.Rev. 1507 (1987).

In allowing a name-correcting amendment within the time allowed by Rule 4(m), this rule allows not only the 120 days specified in that rule, but also any additional time resulting from any extension ordered by the court pursuant to that rule, as may be granted, for example, if the defendant is a fugitive from service of the summons.

This revision, together with the revision of Rule 4(i) with respect to the failure of a plaintiff in an action against the United States to effect timely service on all the appropriate officials, is intended to produce results contrary to those reached in *Gardner v. Gartman,* 880 F.2d 797 (4th Cir. 1989), *Rys v. U.S. Postal Service,* 886 F.2d 443 (1st Cir. 1989), *Martin's Food & Liquor, Inc. v. U.S. Dept. of Agriculture,* 14 F.R.D.3d 86 (N.D.Ill.1988). *But cf. Montgomery v. United States Postal Service,* 867 F.2d 900 (5th Cir. 1989), *Warren v. Department of the Army,* 867 F.2d 1156 (8th Cir. 1989); *Miles v. Department of the Army,* 881 F.2d 777 (9th Cir. 1989), *Barsten v. Department of the Interior,* 896 F.2d 422 (9th Cir. 1990); *Brown v. Georgia Dept. of Revenue,* 881 F.2d 1018 (11th Cir. 1989).

**1993 Amendment**

The amendment conforms the cross reference to Rule 4 to the revision of that rule.

2007 Amendment

**Add-76**

The language of Rule 15 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Former Rule 15(c)(3)(A) called for notice of the "institution" of the action. Rule 15(c)(1)(C)(i) omits the reference to "institution" as potentially confusing. What counts is that the party to be brought in have notice of the existence of the action, whether or not the notice includes details as to its "institution."

## 2009 Amendment

Rule 15(a)(1) is amended to make three changes in the time allowed to make one amendment as a matter of course.

Former Rule 15(a) addressed amendment of a pleading to which a responsive pleading is required by distinguishing between the means used to challenge the pleading. Serving a responsive pleading terminated the right to amend. Serving a motion attacking the pleading did not terminate the right to amend, because a motion is not a "pleading" as defined in Rule 7. The right to amend survived beyond decision of the motion unless the decision expressly cut off the right to amend.

The distinction drawn in former Rule 15(a) is changed in two ways. First, the right to amend once as a matter of course terminates 21 days after service of a motion under Rule 12(b), (e), or (f). This provision will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion. A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim. It also should advance other pretrial proceedings.

Second, the right to amend once as a matter of course is no longer terminated by service of a responsive pleading. The responsive pleading may point out issues that the original pleader had not considered and persuade the pleader that amendment is wise. Just as amendment was permitted by former Rule 15(a) in response to a motion, so the amended rule permits one amendment as a matter of course in response to a responsive pleading. The right is subject to the same 21-day limit as the right to amend in response to a motion.

The 21-day periods to amend once as a matter of course after service of a responsive pleading or after service of a designated motion are not cumulative. If a responsive pleading is served after one of the designated motions is served, for example, there is no new 21-day period.

Finally, amended Rule 15(a)(1) extends from 20 to 21 days the period to amend a pleading to which no responsive pleading is allowed and omits the provision that cuts off the right if the action is on the trial calendar. Rule 40 no longer refers to a trial calendar, and many courts have abandoned formal trial calendars. It is more effective to rely on scheduling orders or other pretrial directions to establish time limits for amendment in the few situations that otherwise might allow one amendment as a matter of course at a time that would disrupt trial preparations. Leave to amend still can be sought under Rule 15(a)(2), or at and after trial under Rule 15(b).[1]

Abrogation of Rule 13(f) establishes Rule 15 as the sole rule governing amendment of a pleading to add a counterclaim.

The times set in the former rule at 10 or 20 days have been revised to 14 or 21 days. See the Note to Rule 6.

## 2023 Amendment

Rule 15(a)(1) is amended to substitute "no later than" for "within" to measure the time allowed to amend once as a matter of course. A literal reading of "within" would lead to an untoward practice if a pleading is one to which a responsive pleading is required and neither a responsive pleading nor one of the Rule 12 motions has been served within 21 days after service of the pleading. Under this reading, the time to amend once as a matter of course lapses 21 days after the pleading is served and

is revived only on the later service of a responsive pleading or one of the Rule 12 motions. There is no reason to suspend the right to amend in this way. "No later than" makes it clear that the right to amend continues without interruption until 21 days after the earlier of the events described in Rule 15(a)(1)(B).

Notes of Decisions (5927)

Footnotes

1    If the proposed amendment to Rule 15(a)(3) ... changing the time period is approved by the Judicial Conference, the following additional sentence will be added to the Committee Note: "Amended Rule 15(a)(3) extends from 10 to 14 days the period to respond to an amended pleading."

Fed. Rules Civ. Proc. Rule 15, 28 U.S.C.A., FRCP Rule 15
Including Amendments Received Through 1-1-2026

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
   Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
      Title IV. Parties

Federal Rules of Civil Procedure Rule 23.1

## Rule 23.1 Derivative Actions

Currentness

**(a) Prerequisites.** This rule applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.

**(b) Pleading Requirements.** The complaint must be verified and must:

  **(1)** allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

  **(2)** allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and

  **(3)** state with particularity:

    **(A)** any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

    **(B)** the reasons for not obtaining the action or not making the effort.

**(c) Settlement, Dismissal, and Compromise.** A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders.

**CREDIT(S)**

(Adopted February 28, 1966, effective July 1, 1966; amended March 2, 1987, effective August 1, 1987; April 30, 2007, effective December 1, 2007.)

**ADVISORY COMMITTEE NOTES**

1966 Addition

A derivative action by a shareholder of a corporation or by a member of an unincorporated association has distinctive aspects which require the special provisions set forth in the new rule. The next-to-the-last sentence recognizes that the question of adequacy of representation may arise when the plaintiff is one of a group of shareholders or members. Cf. 3 Moore's *Federal Practice,* par. 23.08 (2d ed. 1963).

The court has inherent power to provide for the conduct of the proceedings in a derivative action, including the power to determine the course of the proceedings and require that any appropriate notice be given to shareholders or members.

1987 Amendment

The amendments are technical. No substantive change is intended.

2007 Amendment

The language of Rule 23.1 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Notes of Decisions (887)

Fed. Rules Civ. Proc. Rule 23.1, 28 U.S.C.A., FRCP Rule 23.1
Including Amendments Received Through 10-1-24

End of Document                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Add-80

United States Code Annotated
  Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
    Title VII. Judgment

Federal Rules of Civil Procedure Rule 54

Rule 54. Judgment; Costs

Currentness

**(a) Definition; Form.** "Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment should not include recitals of pleadings, a master's report, or a record of prior proceedings.

**(b) Judgment on Multiple Claims or Involving Multiple Parties.** When an action presents more than one claim for relief-- whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

**(c) Demand for Judgment; Relief to Be Granted.** A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.

**(d) Costs; Attorney's Fees.**

**(1) *Costs Other Than Attorney's Fees.*** Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.

**(2) *Attorney's Fees.***

**(A)** *Claim to Be by Motion.* A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.

**(B)** *Timing and Contents of the Motion.* Unless a statute or a court order provides otherwise, the motion must:

**(i)** be filed no later than 14 days after the entry of judgment;

**(ii)** specify the judgment and the statute, rule, or other grounds entitling the movant to the award;

**(iii)** state the amount sought or provide a fair estimate of it; and

**(iv)** disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

**(C)** *Proceedings.* Subject to Rule 23(h), the court must, on a party's request, give an opportunity for adversary submissions on the motion in accordance with Rule 43(c) or 78. The court may decide issues of liability for fees before receiving submissions on the value of services. The court must find the facts and state its conclusions of law as provided in Rule 52(a).

**(D)** *Special Procedures by Local Rule; Reference to a Master or a Magistrate Judge.* By local rule, the court may establish special procedures to resolve fee-related issues without extensive evidentiary hearings. Also, the court may refer issues concerning the value of services to a special master under Rule 53 without regard to the limitations of Rule 53(a)(1), and may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter.

**(E)** *Exceptions.* Subparagraphs (A)-(D) do not apply to claims for fees and expenses as sanctions for violating these rules or as sanctions under 28 U.S.C. § 1927.

## CREDIT(S)

(Amended December 27, 1946, effective March 19, 1948; April 17, 1961, effective July 19, 1961; March 2, 1987, effective August 1, 1987; April 22, 1993, effective December 1, 1993; April 29, 2002, effective December 1, 2002; March 27, 2003, effective December 1, 2003; April 30, 2007, effective December 1, 2007; March 26, 2009, effective December 1, 2009.)

**<Amendments received through April 1, 2025>**

## ADVISORY COMMITTEE NOTES

1937 Adoption

**Note to Subdivision (a).** The second sentence is derived substantially from [former] Equity Rule 71 (Form of Decree).

**Note to Subdivision (b).** This provides for the separate judgment of equity and code practice. See Wis.Stat. (1935) § 270.54; Compare N.Y.C.P.A. (1937) § 476.

**Note to Subdivision (c).** For the limitation on default contained in the first sentence, see 2 N.D.Comp.Laws Ann. (1913) § 7680; N.Y.C.P.A. (1937) § 479. Compare *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 13, r.r. 3-12. The remainder is a usual code provision. It makes clear that a judgment should give the relief to which a party is entitled, regardless of whether it is legal or equitable or both. This necessarily includes the deficiency judgment in foreclosure cases formerly provided for by Equity Rule 10 (Decree for Deficiency in Foreclosures, Etc.).

**Note to Subdivision (d).** For the present rule in common law actions, see *Ex parte Peterson,* 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1920); Payne, *Costs in Common Law Actions in the Federal Courts* (1935), 21 VA.L.Rev. 397.

**Add-82**

The provisions as to costs in actions in forma pauperis contained in U.S.C., Title 28, former §§ 832-836 [now 1915] are unaffected by this rule. Other sections of U.S.C., Title 28, which are unaffected by this rule are: [former] §§ 815 (Costs; plaintiff not entitled to, when), 821 [now 1928] (Costs; infringement of patent; disclaimer), 825 (Costs; several actions), 829 [now 1927] (Costs; attorney liable for, when), and 830 [now 1920] (Costs; bill of; taxation).

The provisions of the following and similar statutes as to costs against the United States and its officers and agencies are specifically continued:

U.S.C., Title 15, §§ 77v(a), 78aa, 79y (Securities and Exchange Commission)

U.S.C., Title 16, § 825p (Federal Power Commission)

U.S.C., Title 26, [former] §§ 3679(d) and 3745(d) (Internal revenue actions)

U.S.C., Title 26, [former] § 3770(b)(2) (Reimbursement of costs of recovery against revenue officers)

U.S.C., Title 28, [former] § 817 (Internal revenue actions)

U.S.C., Title 28, § 836 [now 1915] (United States--actions in *forma pauperis*)

U.S.C., Title 28, § 842 [now 2006] (Actions against revenue officers)

U.S.C., Title 28, § 870 [now 2408] (United States--in certain cases)

U.S.C., Title 28, [former] § 906 (United States--foreclosure actions)

U.S.C., Title 47, § 401 (Communications Commission)


The provisions of the following and similar statutes as to costs are unaffected:

U.S.C., Title 7, § 210(f) (Actions for damages based on an order of the Secretary of Agriculture under Stockyards Act)

U.S.C., Title 7, § 499g(c) (Appeals from reparations orders of Secretary of Agriculture under Perishable Commodities Act)

U.S.C., Title 8, [former] § 45 (Action against district attorneys in certain cases)

U.S.C., Title 15, § 15 (Actions for injuries due to violation of antitrust laws)

U.S.C., Title 15, § 72 (Actions for violation of law forbidding importation or sale of articles at less than market value or wholesale prices)

U.S.C., Title 15, § 77k (Actions by persons acquiring securities registered with untrue statements under Securities Act of 1933)

U.S.C., Title 15, § 78i(e) (Certain actions under the Securities Exchange Act of 1934)

U.S.C., Title 15, § 78r (Similar to 78i(e))

U.S.C., Title 15, § 96 (Infringement of trade-mark--damages)

U.S.C., Title 15, § 99 (Infringement of trade-mark--injunctions)

U.S.C., Title 15, § 124 (Infringement of trade-mark--damages)

U.S.C., Title 19, § 274 (Certain actions under customs law)

U.S.C., Title 30, § 32 (Action to determine right to possession of mineral lands in certain cases)

U.S.C., Title 31, §§ 232 [now 3730] and 234 [former] (Action for making false claims upon United States)

U.S.C., Title 33, § 926 (Actions under Harbor Workers' Compensation Act)

U.S.C., Title 35, § 67 [now 281, 284] (Infringement of patent--damages)

U.S.C., Title 35, § 69 [now 282] (Infringement of patent--pleading and proof)

U.S.C., Title 35, § 71 [now 288] (Infringement of patent--when specification too broad)

U.S.C., Title 45, § 153p (Actions for non-compliance with an order of National R.R. Adjustment Board for payment of money)

U.S.C., Title 46, [former] § 38 (Action for penalty for failure to register vessel)

U.S.C., Title 46, § 829 (Action based on non-compliance with an order of Maritime Commission for payment of money)

U.S.C., Title 46, § 941 (Certain actions under Ship Mortgage Act)

U.S.C., Title 46, § 1227 (Actions for damages for violation of certain provisions of the Merchant Marine Act, 1936)

U.S.C., Title 47, § 206 (Actions for certain violations of Communications Act of 1934)

U.S.C., Title 49, § 16(2) [now 11705] (Action based on non-compliance with an order of I.C.C. for payment of money)


1946 Amendment

**Note.** The historic rule in the federal courts has always prohibited piecemeal disposal of litigation and permitted appeals only from final judgments except in those special instances covered by statute. *Hohorst v. Hamburg--American Packet Co.,* 1893, 13 S.Ct. 590, 148 U.S. 262, 37 L.Ed. 443; *Rexford v. Brunswick-Balke-Collender Co.,* 1913, 33 S.Ct. 515, 228 U.S. 339, 57 L.Ed. 864; *Collins v. Miller,* 1920, 40 S.Ct. 347, 252 U.S. 364, 64 L.Ed. 616. Rule 54(b) was originally adopted in view of the wide scope and possible content of the newly created "civil action" in order to avoid the possible injustice of a delay in judgment of a distinctly separate claim to await adjudication of the entire case. It was not designed to overturn the settled federal rule stated above, which, indeed, has more recently been reiterated in *Catlin v. United States,* 1945, 65 S.Ct. 631, 324 U.S. 229, 89 L.Ed. 911. See also *United States v. Florian,* 1941, 61 S.Ct. 713, 312 U.S. 656, 85 L.Ed. 1105; *Reeves v. Beardall,* 1942, 62 S.Ct. 1085, 316 U.S. 283, 86 L.Ed. 1478.

Unfortunately, this was not always understood, and some confusion ensued. Hence situations arose where district courts made a piecemeal disposition of an action and entered what the parties thought amounted to a judgment, although a trial remained to be had on other claims similar or identical with those disposed of. In the interim the parties did not know their ultimate

**Add-84**

rights, and accordingly took an appeal, thus putting the finality of the partial judgment in question. While most appellate courts have reached a result generally in accord with the intent of the rule, yet there have been divergent precedents and division of views which have served to render the issues more clouded to the parties appellant. It hardly seems a case where multiplicity of precedents will tend to remove the problem from debate. The problem is presented and discussed in the following cases: *Atwater v. North American Coal Corp.,* C.C.A.2, 1940, 111 F.2d 125; *Rosenblum v. Dingfelder,* C.C.A.2, 1940, 111 F.2d 406; *Audi-Vision, Inc. v. RCA Mfg. Co., Inc.,* C.C.A.2, 1943, 136 F.2d 621; *Zalkind v. Scheinman,* C.C.A.2, 1943, 139 F.2d 895; *Oppenheimer v. F. J. Young & Co., Inc.,* C.C.A.2, 1944, 144 F.2d 387; *Libbey-Owens-Ford Glass Co. v. Sylvania Industrial Corp.,* C.C.A.2, 1946, 154 F.2d 814, certiorari denied 1946, 66 S.Ct. 1353, 328 U.S. 859, 90 L.Ed. 1630; *Zarati Steamship Co. v. Park Bridge Corp.,* C.C.A.2, 1946, 154 F.2d 377; *Baltimore and Ohio R. Co. v. United Fuel Gas Co.,* C.C.A.4, 1946, 154 F.2d 545; *Jefferson Electric Co. v. Sola Electric Co.,* C.C.A.7, 1941, 122 F.2d 124; *Leonard v. Socony-Vacuum Oil Co.,* C.C.A.7, 1942, 130 F.2d 535; *Markham v. Kasper,* C.C.A.7, 1945, 152 F.2d 270; *Hanney v. Franklin Fire Ins. Co. of Philadelphia,* C.C.A.9, 1944, 142 F.2d 864; *Toomey v. Toomey,* App.D.C.1945, 149 F.2d 19, 80 U.S.App.D.C. 77.

In view of the difficulty thus disclosed, the Advisory Committee in its two preliminary drafts of proposed amendments attempted to redefine the original rule with particular stress upon the interlocutory nature of partial judgments which did not adjudicate all claims arising out of a single transaction or occurrence. This attempt appeared to meet with almost universal approval from those of the profession commenting upon it, although there were, of course, helpful suggestions for additional changes in language or clarification of detail. But cf. Circuit Judge Frank's dissenting opinion in *Libbey-Owens-Ford Glass Co. v. Sylvania Industrial Corp.,* supra, n. 21 of the dissenting opinion. The Committee, however, became convinced on careful study of its own proposals that the seeds of ambiguity still remained, and that it had not completely solved the problem of piecemeal appeals. After extended consideration, it concluded that a retention of the older federal rule was desirable, and that this rule needed only the exercise of a discretionary power to afford a remedy in the infrequent harsh case to provide a simple, definite, workable rule. This is afforded by amended Rule 54(b). It re-establishes an ancient policy with clarity and precision. For the possibility of staying execution where not all claims are disposed of under Rule 54(b), see amended Rule 62(h).

1961 Amendment

This rule permitting appeal, upon the trial court's determination of "no just reason for delay," from a judgment upon one or more but less than all the claims in an action, has generally been given a sympathetic construction by the courts and its validity is settled. *Reeves v. Beardall,* 316 U.S. 283 (1942); *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427 (1956); *Cold Metal Process Co. v. United Engineering & Foundry Co.,* 351 U.S. 445 (1956).

A serious difficulty has, however, arisen because the rule speaks of claims but nowhere mentions parties. A line of cases has developed in the circuits consistently holding the rule to be inapplicable to the dismissal, even with the requisite trial court determination, of one or more but less than all defendants jointly charged in an action, i.e. charged with various forms of concerted or related wrongdoing or related liability. See *Mull v. Ackerman,* 279 F.2d 25 (2d Cir. 1960); *Richards v. Smith,* 276 F.2d 652 (5th Cir. 1960); *Hardy v. Bankers Life & Cas. Co.,* 222 F.2d 827 (7th Cir. 1955); *Steiner v. 20th Century-Fox Film Corp.,* 220 F.2d 105 (9th Cir. 1955). For purposes of Rule 54(b) it was arguable that there were as many "claims" as there were parties defendant and that the rule in its present text applied where less than all of the parties were dismissed, cf. *United Artists Corp. v. Masterpiece Productions, Inc.,* 221 F.2d 213, 215 (2d Cir. 1955); *Bowling Machines, Inc. v. First Nat. Bank,* 283 F.2d 39 (1st Cir. 1960); but the Courts of Appeals are now committed to an opposite view.

The danger of hardship through delay of appeal until the whole action is concluded may be at least as serious in the multiple-parties situations as in multiple-claims cases, see *Pabellon v. Grace Line, Inc.,* 191 F.2d 169, 179 (2d Cir. 1951), cert. denied, 342 U.S. 893 (1951), and courts and commentators have urged that Rule 54(b) be changed to take in the former. See *Reagan v. Traders & General Ins. Co.,* 255 F.2d 845 (5th Cir. 1958); *Meadows v. Greyhound Corp.,* 235 F.2d 233 (5th Cir. 1956); *Steiner v. 20th Century-Fox Film Corp.,* supra; 6 Moore's Federal Practice ¶54.34[2] (2d ed. 1953); 3 Barron & Holtzoff, *Federal Practice & Procedure* § 1193.2 (Wright ed. 1958); *Developments in the Law--Multiparty Litigation,* 71 Harv.L.Rev. 874, 981

**Add-85**

(1958); Note, 62 Yale L.J. 263, 271 (1953); Ill.Ann.Stat. ch. 110, § 50(2) (Smith-Hurd 1956). The amendment accomplishes this purpose by referring explicitly to parties.

There has been some recent indication that interlocutory appeal under the provisions of 28 U.S.C. § 1292(b), added in 1958, may now be available for the multiple-parties cases here considered. See *Jaftex Corp. v. Randolph Mills, Inc.,* 282 F.2d 508 (2d Cir. 1960). The Rule 54(b) procedure seems preferable for those cases, and § 1292(b) should be held inapplicable to them when the rule is enlarged as here proposed. See *Luckenbach Steamship Co., Inc., v. H. Muehlstein & Co., Inc.,* 280 F.2d 755, 757 (2d Cir. 1960); 1 Barron & Holtzoff, supra, § 58.1, p. 321 (Wright ed. 1960).

1987 Amendment

The amendment is technical. No substantive change is intended.

1993 Amendment

**Subdivision (d).** This revision adds paragraph (2) to this subdivision to provide for a frequently recurring form of litigation not initially contemplated by the rules--disputes over the amount of attorneys' fees to be awarded in the large number of actions in which prevailing parties may be entitled to such awards or in which the court must determine the fees to be paid from a common fund. This revision seeks to harmonize and clarify procedures that have been developed through case law and local rules.

**Paragraph (1).** Former subdivision (d), providing for taxation of costs by the clerk, is renumbered as paragraph (1) and revised to exclude applications for attorneys' fees.

**Paragraph (2).** This new paragraph establishes a procedure for presenting claims for attorneys' fees, whether or not denominated as "costs." It applies also to requests for reimbursement of expenses, not taxable as costs, when recoverable under governing law incident to the award of fees. *Cf. West Virginia Univ. Hosp. v. Casey,* 499 U.S. 83 (1991), holding, prior to the Civil Rights Act of 1991, that expert witness fees were not recoverable under 42 U.S.C. § 1988. As noted in subparagraph (A), it does not, however, apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury. Nor, as provided in subparagraph (E), does it apply to awards of fees as sanctions authorized or mandated under these rules or under 28 U.S.C. § 1927.

Subparagraph (B) provides a deadline for motions for attorneys' fees--14 days after final judgment unless the court or a statute specifies some other time. One purpose of this provision is to assure that the opposing party is informed of the claim before the time for appeal has elapsed. Prior law did not prescribe any specific time limit on claims for attorneys' fees. *White v. New Hampshire Dep't of Employment Sec.,* 455 U.S. 445 (1982). In many nonjury cases the court will want to consider attorneys' fee issues immediately after rendering its judgment on the merits of the case. Note that the time for making claims is specifically stated in some legislation, such as the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(B) (30-day filing period).

Prompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind. It also enables the court in appropriate circumstances to make its ruling on a fee request in time for any appellate review of a dispute over fees to proceed at the same time as review on the merits of the case.

Filing a motion for fees under this subdivision does not affect the finality or the appealability of a judgment, though revised Rule 58 provides a mechanism by which prior to appeal the court can suspend the finality to resolve a motion for fees. If an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved. A notice of appeal does not extend the time for filing a fee claim based on the initial judgment, but the court under subdivision (d)(2)(B) may effectively extend the period by permitting claims to be filed after resolution of the appeal. A new period for

Add-86

filing will automatically begin if a new judgment is entered following a reversal or remand by the appellate court or the granting of a motion under Rule 59.

The rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees. This material must of course be submitted in due course, according to such schedule as the court may direct in light of the circumstances of the case. What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees, and the amount of such fees (or a fair estimate).

If directed by the court, the moving party is also required to disclose any fee agreement, including those between attorney and client, between attorneys sharing a fee to be awarded, and between adversaries made in partial settlement of a dispute where the settlement must be implemented by court action as may be required by Rules 23(e) and 23.1 or other like provisions. With respect to the fee arrangements requiring court approval, the court may also by local rule require disclosure immediately after such arrangements are agreed to. *E.g.,* Rule 5 of United States District Court for the Eastern District of New York; *cf. In re "Agent Orange" Product Liability Litigation (MDL 381),* 611 F.Supp. 1452, 1464 (E.D.N.Y.1985).

In the settlement of class actions resulting in a common fund from which fees will be sought, courts frequently have required that claims for fees be presented in advance of hearings to consider approval of the proposed settlement. The rule does not affect this practice, as it permits the court to require submissions of fee claims in advance of entry of judgment.

Subparagraph (C) assures the parties of an opportunity to make an appropriate presentation with respect to issues involving the evaluation of legal services. In some cases, an evidentiary hearing may be needed, but this is not required in every case. The amount of time to be allowed for the preparation of submissions both in support of and in opposition to awards should be tailored to the particular case.

The court is explicitly authorized to make a determination of the liability for fees before receiving submissions by the parties bearing on the amount of an award. This option may be appropriate in actions in which the liability issue is doubtful and the evaluation issues are numerous and complex.

The court may order disclosure of additional information, such as that bearing on prevailing local rates or on the appropriateness of particular services for which compensation is sought.

On rare occasion, the court may determine that discovery under Rules 26-37 would be useful to the parties. *Compare* Rules Governing Section 2254 Cases in the U.S. District Courts, Rule 6. *See* Note, *Determining the Reasonableness of Attorneys' Fees--the Discoverability of Billing Records,* 64 *B.U.L.Rev.* 241 (1984). In complex fee disputes, the court may use case management techniques to limit the scope of the dispute or to facilitate the settlement of fee award disputes.

Fee awards should be made in the form of a separate judgment under Rule 58 since such awards are subject to review in the court of appeals. To facilitate review, the paragraph provides that the court set forth its findings and conclusions as under Rule 52(a), though in most cases this explanation could be quite brief.

Subparagraph (D) explicitly authorizes the court to establish procedures facilitating the efficient and fair resolution of fee claims. A local rule, for example, might call for matters to be presented through affidavits, or might provide for issuance of proposed findings by the court, which would be treated as accepted by the parties unless objected to within a specified time. A court might also consider establishing a schedule reflecting customary fees or factors affecting fees within the community, as implicitly suggested by Justice O'Connor in *Pennsylvania v. Delaware Valley Citizens' Council,* 483 U.S. 711, 733 (1987) (O'Connor, J., concurring) (how particular markets compensate for contingency). *Cf. Thompson v. Kennickell,* 710 F.Supp. 1 (D.D.C.1989) (use of findings in other cases to promote consistency). The parties, of course, should be permitted to show that in the circumstances of the case such a schedule should not be applied or that different hourly rates would be appropriate.

The rule also explicitly permits, without need for a local rule, the court to refer issues regarding the amount of a fee award in a particular case to a master under Rule 53. The district judge may designate a magistrate judge to act as a master for this purpose or may refer a motion for attorneys' fees to a magistrate judge for proposed findings and recommendations under Rule 72(b). This authorization eliminates any controversy as to whether such references are permitted under Rule 53(b) as "matters of account and of difficult computation of damages" and whether motions for attorneys' fees can be treated as the equivalent of a dispositive pretrial matter that can be referred to a magistrate judge. For consistency and efficiency, all such matters might be referred to the same magistrate judge.

Subparagraph (E) excludes from this rule the award of fees as sanctions under these rules or under 28 U.S.C. § 1927.

2002 Amendment

Subdivision (d)(2)(C) is amended to delete the requirement that judgment on a motion for attorney fees be set forth in a separate document. This change complements the amendment of Rule 58(a)(1), which deletes the separate document requirement for an order disposing of a motion for attorney fees under Rule 54. These changes are made to support amendment of Rule 4 of the Federal Rules of Appellate Procedure. It continues to be important that a district court make clear its meaning when it intends an order to be the final disposition of a motion for attorney fees.

The requirement in subdivision (d)(2)(B) that a motion for attorney fees be not only filed but also served no later than 14 days after entry of judgment is changed to require filing only, to establish a parallel with Rules 50, 52, and 59. Service continues to be required under Rule 5(a).

2003 Amendment

Rule 54(d)(2)(D) is revised to reflect amendments to Rule 53.

2007 Amendment

The language of Rule 54 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

The words "or class member" have been removed from Rule 54(d)(2)(C) because Rule 23(h)(2) now addresses objections by class members to attorney-fee motions. Rule 54(d)(2)(C) is amended to recognize that Rule 23(h) now controls those aspects of attorney-fee motions in class actions to which it is addressed.

2009 Amendment

Former Rule 54(d)(1) provided that the clerk may tax costs on 1 day's notice. That period was unrealistically short. The new 14-day period provides a better opportunity to prepare and present a response. The former 5-day period to serve a motion to review the clerk's action is extended to 7 days to reflect the change in the Rule 6(a) method for computing periods of less than 11 days.

Notes of Decisions (3536)

Fed. Rules Civ. Proc. Rule 54, 28 U.S.C.A., FRCP Rule 54
Including Amendments Received Through 10-1-2025

United States Code Annotated
  Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
    Title VII. Judgment

Federal Rules of Civil Procedure Rule 56

Rule 56. Summary Judgment [Rule Text & Notes of Decisions subdivisions I to XV]

Currentness

<Amendments received through October 1, 2025>

<Notes of Decisions for 28 USCA Federal Rules of Civil Procedure Rule 56 are displayed in multiple documents.>

**(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

**(b) Time to File a Motion.** Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

**(c) Procedures.**

**(1)** *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

**(2)** *Objection That a Fact Is Not Supported by Admissible Evidence*. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

**(3)** *Materials Not Cited*. The court need consider only the cited materials, but it may consider other materials in the record.

**(4)** *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

**(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

**(1)** defer considering the motion or deny it;

**(2)** allow time to obtain affidavits or declarations or to take discovery; or

**(3)** issue any other appropriate order.

**(e) Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

**(1)** give an opportunity to properly support or address the fact;

**(2)** consider the fact undisputed for purposes of the motion;

**(3)** grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or

**(4)** issue any other appropriate order.

**(f) Judgment Independent of the Motion.** After giving notice and a reasonable time to respond, the court may:

**(1)** grant summary judgment for a nonmovant;

**(2)** grant the motion on grounds not raised by a party; or

**(3)** consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

**(g) Failing to Grant All the Requested Relief.** If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case.

**(h) Affidavit or Declaration Submitted in Bad Faith.** If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court--after notice and a reasonable time to respond--may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

**CREDIT(S)**

(Amended December 27, 1946, effective March 19, 1948; January 21, 1963, effective July 1, 1963; March 2, 1987, effective August 1, 1987; April 30, 2007, effective December 1, 2007; March 26, 2009, effective December 1, 2009; April 28, 2010, effective December 1, 2010.)

**ADVISORY COMMITTEE NOTES**

1937 Adoption

This rule is applicable to all actions, including those against the United States or an officer or agency thereof.

Summary judgment procedure is a method for promptly disposing of actions in which there is no genuine issue as to any material fact. It has been extensively used in England for more than 50 years and has been adopted in a number of American states. New York, for example, has made great use of it. During the first nine years after its adoption there, the records of New York county alone show 5,600 applications for summary judgments. Report of the Commission on the Administration of Justice in New York State (1934), p. 383. See also *Third Annual Report of the Judicial Council of the State of New York* (1937), p. 30.

In England it was first employed only in cases of liquidated claims, but there has been a steady enlargement of the scope of the remedy until it is now used in actions to recover land or chattels and in all other actions at law, for liquidated or unliquidated claims, except for a few designated torts and breach of promise of marriage. *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 3, r. 6; Orders 14, 14A, and 15; see also O. 32, r. 6, authorizing an application for judgment at any time upon admissions. In Michigan (3 Comp.Laws (1929) § 14260) and Illinois (Smith-Hurd Ill.Stats. c. 110, §§ 181, 259.15, 259.16), it is not limited to liquidated demands. New York (N.Y.R.C.P. (1937) Rule 113; see also Rule 107) has brought so many classes of actions under the operation of the rule that the Commission on Administration of Justice in New York State (1934) recommend that all restrictions be removed and that the remedy be available "in any action" (p. 287). For the history and nature of the summary judgment procedure and citations of state statutes, see Clark and Samenow, *The Summary Judgment (1929), 38 Yale L.J. 423.*

**Note to Subdivision (d).** See Rule 16 (Pre-Trial Procedure; Formulating Issues) and the Note thereto.

**Note to Subdivisions (e) and (f).** These are similar to rules in Michigan. Mich.Court Rules Ann. (Searl, 1933) Rule 30.

1946 Amendment

**Note to Subdivision (a).** The amendment allows a claimant to move for a summary judgment at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party. This will normally operate to permit an earlier motion by the claimant than under the original rule, where the phrase "at any time after the pleading in answer thereto has been served" operates to prevent a claimant from moving for summary judgment, even in a case clearly proper for its exercise, until a formal answer has been filed. Thus in *Peoples Bank v. Federal Reserve Bank of San Francisco,* N.D.Cal.1944, 58 F.Supp. 25, the plaintiff's countermotion for a summary judgment was stricken as premature, because the defendant had not filed an answer. Since Rule 12(a) allows at least 20 days for an answer, that time plus the 10 days required in Rule 56(c) means that under original Rule 56(a) a minimum period of 30 days necessarily has to elapse in every case before the claimant can be heard on his right to a summary judgment. An extension of time by the court

or the service of preliminary motions of any kind will prolong that period even further. In many cases this merely represents unnecessary delay. See *United States v. Adler's Creamery, Inc.,* C.C.A.2, 1939, 107 F.2d 987. The changes are in the interest of more expeditious litigation. The 20-day period, as provided, gives the defendant an opportunity to secure counsel and determine a course of action. But in a case where the defendant himself makes a motion for summary judgment within that time, there is no reason to restrict the plaintiff and the amended rule so provides.

**Subdivision (c).** The amendment of Rule 56(c), by the addition of the final sentence, resolves a doubt expressed in *Sartor v. Arkansas Natural Gas Corp.,* 1944, 64 S.Ct. 724, 321 U.S. 620, 88 L.Ed. 967. See also Commentary, Summary Judgment as to Damages, 1944, 7 Fed.Rules Serv. 974; *Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co.,* C.C.A.2d, 1945, 147 F.2d 399, certiorari denied 1945, 65 S.Ct. 1201, 325 U.S. 861, 89 L.Ed. 1982. It makes clear that although the question of recovery depends on the amount of damages, the summary judgment rule is applicable and summary judgment may be granted in a proper case. If the case is not fully adjudicated it may be dealt with as provided in subdivision (d) of Rule 56, and the right to summary recovery determined by a preliminary order, interlocutory in character, and the precise amount of recovery left for trial.

**Subdivision (d).** Rule 54(a) defines "judgment" as including a decree and "any order from which an appeal lies." Subdivision (d) of Rule 56 indicates clearly, however, that a partial summary "judgment" is not a final judgment, and, therefore, that it is not appealable, unless in the particular case some statute allows an appeal from the interlocutory order involved. The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. This adjudication is more nearly akin to the preliminary order under Rule 16, and likewise serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact. See *Leonard v. Socony-Vacuum Oil Co.,* C.C.A.7, 1942, 130 F.2d 535; *Biggins v. Oltmer Iron Works,* C.C.A.7, 1946, 154 F.2d 214; 3 *Moore's Federal Practice,* 1938, 3190-3192. Since interlocutory appeals are not allowed, except where specifically provided by statute, see 3 Moore, op. cit. supra, 3155-3156, this interpretation is in line with that policy, *Leonard v. Socony-Vacuum Oil Co.,* supra. See also *Audi Vision Inc. v. RCA Mfg. Co.,* C.C.A.2, 1943, 136 F.2d 621; *Toomey v. Toomey,* 1945, 149 F.2d 19, 80 U.S.App.D.C. 77; *Biggins v. Oltmer Iron Works,* supra; *Catlin v. United States,* 1945, 65 S.Ct. 631, 324 U.S. 229, 89 L.Ed. 911.

1963 Amendment

**Subdivision (c).** By the amendment "answers to interrogatories" are included among the materials which may be considered on motion for summary judgment. The phrase was inadvertently omitted from the rule, see 3 Barron & Holtzoff, *Federal Practice & Procedure* 159-60 (Wright ed. 1958), and the courts have generally reached by interpretation the result which will hereafter be required by the text of the amended rule. See Annot., 74 A.L.R.2d 984 (1960).

**Subdivision (e).** The words "answers to interrogatories" are added in the third sentence of this subdivision to conform to the amendment of subdivision (c).

The last two sentences are added to overcome a line of cases, chiefly in the Third Circuit, which has impaired the utility of the summary judgment device. A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue. In this situation Third Circuit cases have taken the view that summary judgment must be denied, at least if the averments are "well-pleaded," and not suppositious, conclusory, or ultimate. See *Frederick Hart & Co., Inc. v. Recordgraph Corp.,* 169 F.2d 580 (3d Cir. 1948); *United States ex rel. Kolton v. Halpern,* 260 F.2d 590 (3d Cir. 1958); *United States ex rel. Nobles v. Ivey Bros. Constr. Co., Inc.,* 191 F.Supp. 383 (D.Del.1961); *Jamison v. Pennsylvania Salt Mfg. Co.,* 22 F.R.D. 238 (W.D.Pa.1958); *Bunny Bear, Inc. v. Dennis Mitchell Industries,* 139 F.Supp. 542 (E.D.Pa.1956); *Levy v. Equitable Life Assur. Society,* 18 F.R.D. 164 (E.D.Pa.1955).

The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. The Third Circuit doctrine, which permits the pleadings themselves to stand in the way of

**Add-92**

granting an otherwise justified summary judgment, is incompatible with the basic purpose of the rule. See 6 *Moore's Federal Practice* 2069 (2d ed. 1953); 3 Barron & Holtzoff, supra, § 1235.1.

It is hoped that the amendment will contribute to the more effective utilization of the salutary device of summary judgment.

The amendment is not intended to derogate from the solemnity of the pleadings. Rather it recognizes that, despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary.

Nor is the amendment designed to affect the ordinary standards applicable to the summary judgment motion. So, for example: Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate. Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented. And summary judgment may be inappropriate where the party opposing it shows under subdivision (f) that he cannot at the time present facts essential to justify his opposition.

1987 Amendment

The amendments are technical. No substantive change is intended.

2007 Amendment

The language of Rule 56 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Former Rule 56(a) and (b) referred to summary-judgment motions on or against a claim, counterclaim, or crossclaim, or to obtain a declaratory judgment. The list was incomplete. Rule 56 applies to third-party claimants, intervenors, claimants in interpleader, and others. Amended Rule 56(a) and (b) carry forward the present meaning by referring to a party claiming relief and a party against whom relief is sought.

Former Rule 56(c), (d), and (e) stated circumstances in which summary judgment "shall be rendered," the court "shall if practicable" ascertain facts existing without substantial controversy, and "if appropriate, shall" enter summary judgment. In each place "shall" is changed to "should." It is established that although there is no discretion to enter summary judgment when there is a genuine issue as to any material fact, there is discretion to deny summary judgment when it appears that there is no genuine issue as to any material fact. *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 256-257 (1948). Many lower court decisions are gathered in 10A Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d, § 2728. "Should" in amended Rule 56(c) recognizes that courts will seldom exercise the discretion to deny summary judgment when there is no genuine issue as to any material fact. Similarly sparing exercise of this discretion is appropriate under Rule 56(e)(2). Rule 56(d)(1), on the other hand, reflects the more open-ended discretion to decide whether it is practicable to determine what material facts are not genuinely at issue.

Former Rule 56(d) used a variety of different phrases to express the Rule 56(c) standard for summary judgment--that there is no genuine issue as to any material fact. Amended Rule 56(d) adopts terms directly parallel to Rule 56(c).

2009 Amendment

The timing provisions for summary judgment are outmoded. They are consolidated and substantially revised in new subdivision (c)(1). The new rule allows a party to move for summary judgment at any time, even as early as the commencement of the action. If the motion seems premature both subdivision (c)(1) and Rule 6(b) allow the court to extend the time to respond. The rule does set a presumptive deadline at 30 days after the close of all discovery.

The presumptive timing rules are default provisions that may be altered by an order in the case or by local rule. Scheduling orders are likely to supersede the rule provisions in most cases, deferring summary-judgment motions until a stated time or establishing different deadlines. Scheduling orders tailored to the needs of the specific case, perhaps adjusted as it progresses, are likely to work better than default rules. A scheduling order may be adjusted to adopt the parties' agreement on timing, or may require that discovery and motions occur in stages--including separation of expert-witness discovery from other discovery.

Local rules may prove useful when local docket conditions or practices are incompatible with the general Rule 56 timing provisions.

If a motion for summary judgment is filed before a responsive pleading is due from a party affected by the motion, the time for responding to the motion is 21 days after the responsive pleading is due.

**2010 Amendment**

Rule 56 is revised to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

**Subdivision (a).** Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word--genuine "issue" becomes genuine "dispute." "Dispute" better reflects the focus of a summary-judgment determination. As explained below, "shall" also is restored to the place it held from 1938 to 2007.

The first sentence is added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense. The subdivision caption adopts the common phrase "partial summary judgment" to describe disposition of less than the whole action, whether or not the order grants all the relief requested by the motion.

"Shall" is restored to express the direction to grant summary judgment. The word "shall" in Rule 56 acquired significance over many decades of use. Rule 56 was amended in 2007 to replace "shall" with "should" as part of the Style Project, acting under a convention that prohibited any use of "shall." Comments on proposals to amend Rule 56, as published in 2008, have shown that neither of the choices available under the Style Project conventions--"must" or "should"--is suitable in light of the case law on whether a district court has discretion to deny summary judgment when there appears to be no genuine dispute as to any material fact. Compare *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)("Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case in which there is reason to believe that the better course would be to proceed to a full trial. *Kennedy v. Silas Mason Co.*, 334 U.S. 249 * * * (1948)"), with *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Eliminating "shall" created an unacceptable risk of changing the summary-judgment standard. Restoring "shall" avoids the unintended consequences of any other word.

Subdivision (a) also adds a new direction that the court should state on the record the reasons for granting or denying the motion. Most courts recognize this practice. Among other advantages, a statement of reasons can facilitate an appeal or subsequent trial-court proceedings. It is particularly important to state the reasons for granting summary judgment. The form and detail of the statement of reasons are left to the court's discretion.

The statement on denying summary judgment need not address every available reason. But identification of central issues may help the parties to focus further proceedings.

**Subdivision (b).** The timing provisions in former subdivisions (a) and (c) are superseded. Although the rule allows a motion for summary judgment to be filed at the commencement of an action, in many cases the motion will be premature until the nonmovant has had time to file a responsive pleading or other pretrial proceedings have been had. Scheduling orders or other pretrial orders can regulate timing to fit the needs of the case.

**Subdivision (c).** Subdivision (c) is new. It establishes a common procedure for several aspects of summary-judgment motions synthesized from similar elements developed in the cases or found in many local rules.

Subdivision (c)(1) addresses the ways to support an assertion that a fact can or cannot be genuinely disputed. It does not address the form for providing the required support. Different courts and judges have adopted different forms including, for example, directions that the support be included in the motion, made part of a separate statement of facts, interpolated in the body of a brief or memorandum, or provided in a separate statement of facts included in a brief or memorandum.

Subdivision (c)(1)(A) describes the familiar record materials commonly relied upon and requires that the movant cite the particular parts of the materials that support its fact positions. Materials that are not yet in the record--including materials referred to in an affidavit or declaration--must be placed in the record. Once materials are in the record, the court may, by order in the case, direct that the materials be gathered in an appendix, a party may voluntarily submit an appendix, or the parties may submit a joint appendix. The appendix procedure also may be established by local rule. Pointing to a specific location in an appendix satisfies the citation requirement. So too it may be convenient to direct that a party assist the court in locating materials buried in a voluminous record.

Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. One party, without citing any other materials, may respond or reply that materials cited to dispute or support a fact do not establish the absence or presence of a genuine dispute. And a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.

Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. There is no need to make a separate motion to strike. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Subdivision (c)(3) reflects judicial opinions and local rules provisions stating that the court may decide a motion for summary judgment without undertaking an independent search of the record. Nonetheless, the rule also recognizes that a court may consider record materials not called to its attention by the parties.

Subdivision (c)(4) carries forward some of the provisions of former subdivision (e)(1). Other provisions are relocated or omitted. The requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record.

A formal affidavit is no longer required. 28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit.

**Subdivision (d).** Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).

A party who seeks relief under subdivision (d) may seek an order deferring the time to respond to the summary-judgment motion.

**Subdivision (e).** Subdivision (e) addresses questions that arise when a party fails to support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c). As explained below, summary judgment cannot be granted by default even if there is a complete failure to respond to the motion, much less when an attempted response fails to comply with Rule 56(c) requirements. Nor should it be denied by default even if the movant completely fails to reply to a nonmovant's response. Before deciding on other possible action, subdivision (e)(1) recognizes that the court may afford an opportunity to properly support or address the fact. In many circumstances this opportunity will be the court's preferred first step.

Subdivision (e)(2) authorizes the court to consider a fact as undisputed for purposes of the motion when response or reply requirements are not satisfied. This approach reflects the "deemed admitted" provisions in many local rules. The fact is considered undisputed only for purposes of the motion; if summary judgment is denied, a party who failed to make a proper Rule 56 response or reply remains free to contest the fact in further proceedings. And the court may choose not to consider the fact as undisputed, particularly if the court knows of record materials that show grounds for genuine dispute.

Subdivision (e)(3) recognizes that the court may grant summary judgment only if the motion and supporting materials-- including the facts considered undisputed under subdivision (e)(2)--show that the movant is entitled to it. Considering some facts undisputed does not of itself allow summary judgment. If there is a proper response or reply as to some facts, the court cannot grant summary judgment without determining whether those facts can be genuinely disputed. Once the court has determined the set of facts--both those it has chosen to consider undisputed for want of a proper response or reply and any that cannot be genuinely disputed despite a procedurally proper response or reply--it must determine the legal consequences of these facts and permissible inferences from them.

Subdivision (e)(4) recognizes that still other orders may be appropriate. The choice among possible orders should be designed to encourage proper presentation of the record. Many courts take extra care with pro se litigants, advising them of the need to respond and the risk of losing by summary judgment if an adequate response is not filed. And the court may seek to reassure itself by some examination of the record before granting summary judgment against a pro se litigant.

**Subdivision (f).** Subdivision (f) brings into Rule 56 text a number of related procedures that have grown up in practice. After giving notice and a reasonable time to respond the court may grant summary judgment for the nonmoving party; grant a motion on legal or factual grounds not raised by the parties; or consider summary judgment on its own. In many cases it may prove useful first to invite a motion; the invited motion will automatically trigger the regular procedure of subdivision (c).

**Subdivision (g).** Subdivision (g) applies when the court does not grant all the relief requested by a motion for summary judgment. It becomes relevant only after the court has applied the summary-judgment standard carried forward in subdivision (a) to each claim, defense, or part of a claim or defense, identified by the motion. Once that duty is discharged, the court may decide whether to apply the summary-judgment standard to dispose of a material fact that is not genuinely in dispute. The court must take care that this determination does not interfere with a party's ability to accept a fact for purposes of the motion only. A nonmovant, for example, may feel confident that a genuine dispute as to one or a few facts will defeat the motion, and prefer to avoid the cost of detailed response to all facts stated by the movant. This position should be available without running the risk that the fact will be taken as established under subdivision (g) or otherwise found to have been accepted for other purposes.

If it is readily apparent that the court cannot grant all the relief requested by the motion, it may properly decide that the cost of determining whether some potential fact disputes may be eliminated by summary disposition is greater than the cost of resolving those disputes by other means, including trial. Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established. The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event.

**Subdivision (h).** Subdivision (h) carries forward former subdivision (g) with three changes. Sanctions are made discretionary, not mandatory, reflecting the experience that courts seldom invoke the independent Rule 56 authority to impose sanctions. *See* Cecil & Cort, Federal Judicial Center Memorandum on Federal Rule of Civil Procedure 56(g) Motions for Sanctions (April 2, 2007). In addition, the rule text is expanded to recognize the need to provide notice and a reasonable time to respond. Finally, authority to impose other appropriate sanctions also is recognized.

Notes of Decisions (5481)

Fed. Rules Civ. Proc. Rule 56, 28 U.S.C.A., FRCP Rule 56
Including Amendments Received Through 1-1-2026

United States Code Annotated
  Federal Rules of Evidence (Refs & Annos)
    Article II. Judicial Notice

Federal Rules of Evidence Rule 201, 28 U.S.C.A.

Rule 201. Judicial Notice of Adjudicative Facts

Currentness

**(a) Scope.** This rule governs judicial notice of an adjudicative fact only, not a legislative fact.

**(b) Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it:

  **(1)** is generally known within the trial court's territorial jurisdiction; or

  **(2)** can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

**(c) Taking Notice.** The court:

  **(1)** may take judicial notice on its own; or

  **(2)** must take judicial notice if a party requests it and the court is supplied with the necessary information.

**(d) Timing.** The court may take judicial notice at any stage of the proceeding.

**(e) Opportunity to Be Heard.** On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard.

**(f) Instructing the Jury.** In a civil case, the court must instruct the jury to accept the noticed fact as conclusive. In a criminal case, the court must instruct the jury that it may or may not accept the noticed fact as conclusive.

**CREDIT(S)**

(Pub.L. 93-595, § 1, Jan. 2, 1975, 88 Stat. 1930; Apr. 26, 2011, eff. Dec. 1, 2011.)

**ADVISORY COMMITTEE NOTES**
**1972 Proposed Rules**

**Note to Subdivision (a).** This is the only evidence rule on the subject of judicial notice. It deals only with judicial notice of "adjudicative" facts. No rule deals with judicial notice of "legislative" facts. Judicial notice of matters of foreign law is treated in Rule 44.1 of the Federal Rules of Civil Procedure and Rule 26.1 of the Federal Rules of Criminal Procedure.

The omission of any treatment of legislative facts results from fundamental differences between adjudicative facts and legislative facts. Adjudicative facts are simply the facts of the particular case. Legislative facts, on the other hand, are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body. The terminology was coined by Professor Kenneth Davis in his article An Approach to Problems of Evidence in the Administrative Process, 55 Harv.L.Rev. 364, 404-407 (1942). The following discussion draws extensively upon his writings. In addition, see the same author's Judicial Notice, 55 Colum.L.Rev. 945 (1955); Administrative Law Treatise, ch. 15 (1958); A System of Judicial Notice Based on Fairness and Convenience, in Perspectives of Law 69 (1964).

The usual method of establishing adjudicative facts is through the introduction of evidence, ordinarily consisting of the testimony of witnesses. If particular facts are outside the area of reasonable controversy, this process is dispensed with as unnecessary. A high degree of indisputability is the essential prerequisite.

Legislative facts are quite different. As Professor Davis says:

"My opinion is that judge-made law would stop growing if judges, in thinking about questions of law and policy, were forbidden to take into account the facts they believe, as distinguished from facts which are 'clearly * * * within the domain of the indisputable.' Facts most needed in thinking about difficult problems of law and policy have a way of being outside the domain of the clearly indisputable." A System of Judicial Notice Based on Fairness and Convenience, *supra,* at 82.

An illustration is *Hawkins v. United States,* 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958), in which the Court refused to discard the common law rule that one spouse could not testify against the other, saying, "Adverse testimony given in criminal proceedings would, we think, be likely to destroy almost any marriage." This conclusion has a large intermixture of fact, but the factual aspect is scarcely "indisputable." See Hutchins and Slesinger, Some Observations on the Law of Evidence--Family Relations, 13 Minn.L.Rev. 675 (1929). If the destructive effect of the giving of adverse testimony by a spouse is not indisputable, should the Court have refrained from considering it in the absence of supporting evidence?

"If the Model Code or the Uniform Rules had been applicable, the Court would have been barred from thinking about the essential factual ingredient of the problems before it, and such a result would be obviously intolerable. What the law needs at its growing points is more, not less, judicial thinking about the factual ingredients of problems of what the law ought to be, and the needed facts are seldom 'clearly' indisputable." Davis, *supra,* at 83.

Professor Morgan gave the following description of the methodology of determining domestic law:

"In determining the content or applicability of a rule of domestic law, the judge is unrestricted in his investigation and conclusion. He may reject the propositions of either party or of both parties. He may consult the sources of pertinent data to which they refer, or he may refuse to do so. He may make an independent search for persuasive data or rest content with what he has or what the parties present. * * * [T]he parties do no more than to assist; they control no part of the process." Morgan, Judicial Notice, 57 Harv.L.Rev. 269, 270-271 (1944).

This is the view which should govern judicial access to legislative facts. It renders inappropriate any limitation in the form of indisputability, any formal requirements of notice other than those already inherent in affording opportunity to hear and be heard and exchanging briefs, and any requirement of formal findings at any level. It should, however, leave open the possibility of introducing evidence through regular channels in appropriate situations. See *Borden's Farm Products Co. v. Baldwin,* 293 U.S.

Add-99

194, 55 S.Ct. 187, 79 L.Ed. 281 (1934), where the cause was remanded for the taking of evidence as to the economic conditions and trade practices underlying the New York Milk Control Law.

Similar considerations govern the judicial use of non-adjudicative facts in ways other than formulating laws and rules. Thayer described them as a part of the judicial reasoning process.

"In conducting a process of judicial reasoning, as of other reasoning, not a step can be taken without assuming something which has not been proved; and the capacity to do this with competent judgment and efficiency, is imputed to judges and juries as part of their necessary mental outfit." Thayer, Preliminary Treatise on Evidence 279-280 (1898).

As Professor Davis points out, A System of Judicial Notice Based on Fairness and Convenience, in Perspectives of Law 69, 73 (1964), every case involves the use of hundreds or thousands of non-evidence facts. When a witness in an automobile accident case says "car," everyone, judge and jury included, furnishes, from non-evidence sources within himself, the supplementing information that the "car" is an automobile, not a railroad car, that it is self-propelled, probably by an internal combustion engine, that it may be assumed to have four wheels with pneumatic rubber tires, and so on. The judicial process cannot construct every case from scratch, like Descartes creating a world based on the postulate *Cogito, ergo sum.* These items could not possibly be introduced into evidence, and no one suggests that they be. Nor are they appropriate subjects for any formalized treatment of judicial notice of facts. See Levin and Levy, Persuading the Jury with Facts Not in Evidence: The Fiction-Science Spectrum, 105 U.Pa.L.Rev. 139 (1956).

Another aspect of what Thayer had in mind is the use of non-evidence facts to appraise or assess the adjudicative facts of the case. Pairs of cases from two jurisdictions illustrate this use and also the difference between non-evidence facts thus used and adjudicative facts. In People v. Strook, 347 Ill. 460, 179 N.E. 821 (1932), venue in Cook County had been held not established by testimony that the crime was committed at 7956 South Chicago Avenue, since judicial notice would not be taken that the address was in Chicago. However, the same court subsequently ruled that venue in Cook County was established by testimony that a crime occurred at 8900 South Anthony Avenue, since notice would be taken of the common practice of omitting the name of the city when speaking of local addresses, and the witness was testifying in Chicago. *People v. Pride,* 16 Ill.2d 82, 156 N.E.2d 551 (1951). And in *Hughes v. Vestal,* 264 N.C. 500, 142 S.E.2d 361 (1965), the Supreme Court of North Carolina disapproved the trial judge's admission in evidence of a state-published table of automobile stopping distances on the basis of judicial notice, though the court itself had referred to the same table in an earlier case in a "rhetorical and illustrative" way in determining that the defendant could not have stopped her car in time to avoid striking a child who suddenly appeared in the highway and that a nonsuit was properly granted. *Ennis v. Dupree,* 262 N.C. 224, 136 S.E.2d 702 (1964). See also *Brown v. Hale,* 263 N.C. 176, 139 S.E.2d 210 (1964); *Clayton v. Rimmer,* 262 N.C. 302, 136 S.E.2d 562 (1964). It is apparent that this use of non-evidence facts in evaluating the adjudicative facts of the case is not an appropriate subject for a formalized judicial notice treatment.

In view of these considerations, the regulation of judicial notice of facts by the present rule extends only to adjudicative facts.

What, then, are "adjudicative" facts? Davis refers to them as those "which relate to the parties," or more fully:

"When a court or an agency finds facts concerning the immediate parties--who did what, where, when, how, and with what motive or intent--the court or agency is performing an adjudicative function, and the facts are conveniently called adjudicative facts. * * *

"Stated in other terms, the adjudicative facts are those to which the law is applied in the process of adjudication. They are the facts that normally go to the jury in a jury case. They relate to the parties, their activities, their properties, their businesses." 2 Administrative Law Treatise 353.

Add-100

**Note to Subdivision (b).** With respect to judicial notice of adjudicative facts, the tradition has been one of caution in requiring that the matter be beyond reasonable controversy. This tradition of circumspection appears to be soundly based, and no reason to depart from it is apparent. As Professor Davis says:

"The reason we use trial-type procedure, I think, is that we make the practical judgment, on the basis of experience, that taking evidence, subject to cross-examination and rebuttal, is the best way to resolve controversies involving disputes of adjudicative facts, that is, facts pertaining to the parties. The reason we require a determination on the record is that we think fair procedure in resolving disputes of adjudicative facts calls for giving each party a chance to meet in the appropriate fashion the facts that come to the tribunal's attention, and the appropriate fashion for meeting disputed adjudicative facts includes rebuttal evidence, cross-examination, usually confrontation, and argument (either written or oral or both). The key to a fair trial is opportunity to use the appropriate weapons (rebuttal evidence, cross-examination, and argument) to meet adverse materials that come to the tribunal's attention." A System of Judicial Notice Based on Fairness and Convenience, in Perspectives of Law 69, 93 (1964).

The rule proceeds upon the theory that these considerations call for dispensing with traditional methods of proof only in clear cases. Compare Professor Davis' conclusion that judicial notice should be a matter of convenience, subject to requirements of procedural fairness. *Id.,* 94.

This rule is consistent with Uniform Rule 9(1) and (2) which limit judicial notice of facts to those "so universally known that they cannot reasonably be the subject of dispute," those "so generally known or of such common notoriety within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute," and those "capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy." The traditional textbook treatment has included these general categories (matters of common knowledge, facts capable of verification), McCormick §§ 324, 325, and then has passed on into detailed treatment of such specific topics as facts relating to the personnel and records of the court, *Id.* § 327, and other governmental facts, *Id.* § 328. The California draftsmen, with a background of detailed statutory regulation of judicial notice, followed a somewhat similar pattern. California Evidence Code §§ 451, 452. The Uniform Rules, however, were drafted on the theory that these particular matters are included within the general categories and need no specific mention. This approach is followed in the present rule.

The phrase "propositions of generalized knowledge," found in Uniform Rule 9(1) and (2) is not included in the present rule. It was, it is believed, originally included in Model Code Rules 801 and 802 primarily in order to afford some minimum recognition to the right of the judge in his "legislative" capacity (not acting as the trier of fact) to take judicial notice of very limited categories of generalized knowledge. The limitations thus imposed have been discarded herein as undesirable, unworkable, and contrary to existing practice. What is left, then, to be considered, is the status of a "proposition of generalized knowledge" as an "adjudicative" fact to be noticed judicially and communicated by the judge to the jury. Thus viewed, it is considered to be lacking practical significance. While judges use judicial notice of "propositions of generalized knowledge" in a variety of situations: determining the validity and meaning of statutes, formulating common law rules, deciding whether evidence should be admitted, assessing the sufficiency and effect of evidence, all are essentially nonadjudicative in nature. When judicial notice is seen as a significant vehicle for progress in the law, these are the areas involved, particularly in developing fields of scientific knowledge. See McCormick 712. It is not believed that judges now instruct juries as to "propositions of generalized knowledge" derived from encyclopedias or other sources, or that they are likely to do so, or, indeed, that it is desirable that they do so. There is a vast difference between ruling on the basis of judicial notice that radar evidence of speed is admissible and explaining to the jury its principles and degree of accuracy, or between using a table of stopping distances of automobiles at various speeds in a judicial evaluation of testimony and telling the jury its precise application in the case. For cases raising doubt as to the propriety of the use of medical texts by lay triers of fact in passing on disability claims in administrative proceedings, see *Sayers v. Gardner,* 380 F.2d 940 (6th Cir.1967); *Ross v. Gardner,* 365 F.2d 554 (6th Cir.1966); *Sosna v. Celebrezze,* 234 F.Supp. 289 (E.D.Pa.1964); *Glendenning v. Ribicoff,* 213 F.Supp. 301 (W.D.Mo.1962).

**Notes to Subdivisions (c) and (d).** Under subdivision (c) the judge has a discretionary authority to take judicial notice, regardless of whether he is so requested by a party. The taking of judicial notice is mandatory, under subdivision (d), only when

Add-101

a party requests it and the necessary information is supplied. This scheme is believed to reflect existing practice. It is simple and workable. It avoids troublesome distinctions in the many situations in which the process of taking judicial notice is not recognized as such.

Compare Uniform Rule 9 making judicial notice of facts universally known mandatory without request, and making judicial notice of facts generally known in the jurisdiction or capable of determination by resort to accurate sources discretionary in the absence of request but mandatory if request is made and the information furnished. But see Uniform Rule 10(3), which directs the judge to decline to take judicial notice if available information fails to convince him that the matter falls clearly within Uniform Rule 9 or is insufficient to enable him to notice it judicially. Substantially the same approach is found in California Evidence Code §§ 451-453 and in New Jersey Evidence Rule 9. In contrast, the present rule treats alike all adjudicative facts which are subject to judicial notice.

**Note to Subdivision (e).** Basic considerations of procedural fairness demand an opportunity to be heard on the propriety of taking judicial notice and the tenor of the matter noticed. The rule requires the granting of that opportunity upon request. No formal scheme of giving notice is provided. An adversely affected party may learn in advance that judicial notice is in contemplation, either by virtue of being served with a copy of a request by another party under subdivision (d) that judicial notice be taken, or through an advance indication by the judge. Or he may have no advance notice at all. The likelihood of the latter is enhanced by the frequent failure to recognize judicial notice as such. And in the absence of advance notice, a request made after the fact could not in fairness be considered untimely. See the provision for hearing on timely request in the Administrative Procedure Act, 5 U.S.C. § 556(e). See also Revised Model State Administrative Procedure Act (1961), 9C U.L.A. § 10(4) (Supp.1967).

**Note to Subdivision (f).** In accord with the usual view, judicial notice may be taken at any stage of the proceedings, whether in the trial court or on appeal. Uniform Rule 12; California Evidence Code § 459; Kansas Rules of Evidence § 60-412; New Jersey Evidence Rule 12; McCormick § 330, p. 712.

**Note to Subdivision (g).** Much of the controversy about judicial notice has centered upon the question whether evidence should be admitted in disproof of facts of which judicial notice is taken.

The writers have been divided. Favoring admissibility are Thayer, Preliminary Treatise on Evidence 308 (1898); 9 Wigmore § 2567; Davis, A System of Judicial Notice Based on Fairness and Convenience, in Perspectives of Law, 69, 76-77 (1964). Opposing admissibility are Keeffe, Landis and Shaad, Sense and Nonsense about Judicial Notice, 2 Stan.L.Rev. 664, 668 (1950); McNaughton, Judicial Notice--Excerpts Relating to the Morgan-Whitmore Controversy, 14 Vand.L.Rev. 779 (1961); Morgan, Judicial Notice, 57 Harv.L.Rev. 269, 279 (1944); McCormick 710-711. The Model Code and the Uniform Rules are predicated upon indisputability of judicially noticed facts.

The proponents of admitting evidence in disproof have concentrated largely upon legislative facts. Since the present rule deals only with judicial notice of adjudicative facts, arguments directed to legislative facts lose their relevancy.

Within its relatively narrow area of adjudicative facts, the rule contemplates there is to be no evidence before the jury in disproof. The judge instructs the jury to take judicially noticed facts as established. This position is justified by the undesirable effects of the opposite rule in limiting the rebutting party, though not his opponent, to admissible evidence, in defeating the reasons for judicial notice, and in affecting the substantive law to an extent and in ways largely unforeseeable. Ample protection and flexibility are afforded by the broad provision for opportunity to be heard on request, set forth in subdivision (e).

Authority upon the propriety of taking judicial notice against an accused in a criminal case with respect to matters other than venue is relatively meager. Proceeding upon the theory that the right of jury trial does not extend to matters which are beyond reasonable dispute, the rule does not distinguish between criminal and civil cases. People v. Mayes, 113 Cal. 618, 45 P. 860

Add-102

(1896); *Ross v. United States,* 374 F.2d 97 (8th Cir.1967). Cf. *State v. Main,* 94 R.I. 338, 180 A.2d 814 (1962); *State v. Lawrence,* 120 Utah 323, 234 P.2d 600 (1951).

**Note on Judicial Notice of Law.** By rules effective July 1, 1966, the method of invoking the law of a foreign country is covered elsewhere. Rule 44.1 of the Federal Rules of Civil Procedure; Rule 26.1 of the Federal Rules of Criminal Procedure. These two new admirably designed rules are founded upon the assumption that the manner in which law is fed into the judicial process is never a proper concern of the rules of evidence but rather of the rules of procedure. The Advisory Committee on Evidence, believing that this assumption is entirely correct, proposes no evidence rule with respect to judicial notice of law, and suggests that those matters of law which, in addition to foreign-country law, have traditionally been treated as requiring pleading and proof and more recently as the subject of judicial notice be left to the Rules of Civil and Criminal Procedure.

**1974 Enactment**

Rule 201(g) as received from the Supreme Court provided that when judicial notice of a fact is taken, the court shall instruct the jury to accept that fact as established. Being of the view that mandatory instruction to a jury in a criminal case to accept as conclusive any fact judicially noticed is inappropriate because contrary to the spirit of the Sixth Amendment right to a jury trial, the Committee adopted the 1969 Advisory Committee draft of this subsection, allowing a mandatory instruction in civil actions and proceedings and a discretionary instruction in criminal cases. House Report No. 93-650.

**2011 Amendments**

The language of Rule 201 has been amended as part of the restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility.

Notes of Decisions (978)

Fed. Rules Evid. Rule 201, 28 U.S.C.A., FRE Rule 201
Including Amendments Received Through 1-1-2026

**End of Document**     © 2026 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Federal Rules of Evidence (Refs & Annos)
    Article IV. Relevance and Its Limits

Federal Rules of Evidence Rule 401, 28 U.S.C.A.

## Rule 401. Test for Relevant Evidence

Currentness

Evidence is relevant if:

**(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and

**(b)** the fact is of consequence in determining the action.

**CREDIT(S)**

(Pub.L. 93-595, § 1, Jan. 2, 1975, 88 Stat.1931; Apr. 26, 2011, eff. Dec. 1, 2011.)

**ADVISORY COMMITTEE NOTES**
**1972 Proposed Rules**

Problems of relevancy call for an answer to the question whether an item of evidence, when tested by the processes of legal reasoning, possesses sufficient probative value to justify receiving it in evidence. Thus, assessment of the probative value of evidence that a person purchased a revolver shortly prior to a fatal shooting with which he is charged is a matter of analysis and reasoning.

The variety of relevancy problems is coextensive with the ingenuity of counsel in using circumstantial evidence as a means of proof. An enormous number of cases fall in no set pattern, and this rule is designed as a guide for handling them. On the other hand, some situations recur with sufficient frequency to create patterns susceptible of treatment by specific rules. Rule 404 and those following it are of that variety; they also serve as illustrations of the application of the present rule as limited by the exclusionary principles of Rule 403.

Passing mention should be made of so-called "conditional" relevancy. Morgan, Basic Problems of Evidence 45-46 (1962). In this situation, probative value depends not only upon satisfying the basic requirement of relevancy as described above but also upon the existence of some matter of fact. For example, if evidence of a spoken statement is relied upon to prove notice, probative value is lacking unless the person sought to be charged heard the statement. The problem is one of fact, and the only rules needed are for the purpose of determining the respective functions of judge and jury. See Rules 104(b) and 901. The discussion which follows in the present note is concerned with relevancy generally, not with any particular problem of conditional relevancy.

Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case. Does the item of evidence tend to prove the matter sought to be proved? Whether the relationship exists depends upon principles evolved by experience or science, applied logically to the situation at hand. James, Relevancy, Probability and the Law, 29 Calif.L.Rev. 689, 696, n. 15 (1941), in Selected Writings on Evidence and Trial 610,

Add-104

615, n. 15 (Fryer ed. 1957). The rule summarizes this relationship as a "tendency to make the existence" of the fact to be proved "more probable or less probable." Compare Uniform Rule 1(2) which states the crux of relevancy as "a tendency in reason," thus perhaps emphasizing unduly the logical process and ignoring the need to draw upon experience or science to validate the general principle upon which relevancy in a particular situation depends.

The standard of probability under the rule is "more * * * probable than it would be without the evidence." Any more stringent requirement is unworkable and unrealistic. As McCormick § 152, p. 317, says, "A brick is not a wall," or, as Falknor, Extrinsic Policies Affecting Admissibility, 10 Rutgers L.Rev. 574, 576 (1956), quotes Professor McBaine, " * * * [I]t is not to be supposed that every witness can make a home run." Dealing with probability in the language of the rule has the added virtue of avoiding confusion between questions of admissibility and questions of the sufficiency of the evidence.

The rule uses the phrase "fact that is of consequence to the determination of the action" to describe the kind of fact to which proof may properly be directed. The language is that of California Evidence Code § 210; it has the advantage of avoiding the loosely used and ambiguous word "material." Tentative Recommendation and a Study Relating to the Uniform Rules of Evidence (Art. I. General Provisions), Cal.Law Revision Comm'n, Rep., Rec. & Studies, 10-11 (1964). The fact to be proved may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action. Cf. Uniform Rule 1(2) which requires that the evidence relate to a "material" fact.

The fact to which the evidence is directed need not be in dispute. While situations will arise which call for the exclusion of evidence offered to prove a point conceded by the opponent, the ruling should be made on the basis of such considerations as waste of time and undue prejudice (see Rule 403), rather than under any general requirement that evidence is admissible only if directed to matters in dispute. Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding. Charts, photographs, views of real estate, murder weapons, and many other items of evidence fall in this category. A rule limiting admissibility to evidence directed to a controversial point would invite the exclusion of this helpful evidence, or at least the raising of endless questions over its admission. Cf. California Evidence Code § 210, defining relevant evidence in terms of tendency to prove a disputed fact.

**2011 Amendments**

The language of Rule 401 has been amended as part of the restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility.

Notes of Decisions (597)

Fed. Rules Evid. Rule 401, 28 U.S.C.A., FRE Rule 401
Including Amendments Received Through 10-1-24

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Add-105

United States Code Annotated
  Federal Rules of Evidence (Refs & Annos)
    Article IV. Relevance and Its Limits

Federal Rules of Evidence Rule 402, 28 U.S.C.A.

Rule 402. General Admissibility of Relevant Evidence

Currentness

Relevant evidence is admissible unless any of the following provides otherwise:

• the United States Constitution;

• a federal statute;

• these rules; or

• other rules prescribed by the Supreme Court.

Irrelevant evidence is not admissible.

**CREDIT(S)**

(Pub.L. 93-595, § 1, Jan. 2, 1975, 88 Stat. 1931; Apr. 26, 2011, eff. Dec. 1, 2011.)

**ADVISORY COMMITTEE NOTES**
**1972 Proposed Rules**

The provisions that all relevant evidence is admissible, with certain exceptions, and that evidence which is not relevant is not admissible are "a presupposition involved in the very conception of a rational system of evidence." Thayer, Preliminary Treatise on Evidence 264 (1898). They constitute the foundation upon which the structure of admission and exclusion rests. For similar provisions see California Evidence Code §§ 350, 351. Provisions that all relevant evidence is admissible are found in Uniform Rule 7(f); Kansas Code of Civil Procedure § 60-407(f); and New Jersey Evidence Rule 7(f); but the exclusion of evidence which is not relevant is left to implication.

Not all relevant evidence is admissible. The exclusion of relevant evidence occurs in a variety of situations and may be called for by these rules, by the Rules of Civil and Criminal Procedure, by Bankruptcy Rules, by Act of Congress, or by constitutional considerations.

Succeeding rules in the present article, in response to the demands of particular policies, require the exclusion of evidence despite its relevancy. In addition, Article V recognizes a number of privileges; Article VI imposes limitations upon witnesses and the manner of dealing with them; Article VII specifies requirements with respect to opinions and expert testimony; Article VIII excludes hearsay not falling within an exception; Article IX spells out the handling of authentication and identification; and Article X restricts the manner of proving the contents of writings and recordings.

The Rules of Civil and Criminal Procedure in some instances require the exclusion of relevant evidence. For example, Rules 30(b) and 32(a)(3) of the Rules of Civil Procedure, by imposing requirements of notice and unavailability of the deponent, place limits on the use of relevant depositions. Similarly, Rule 15 of the Rules of Criminal Procedure restricts the use of depositions in criminal cases, even though relevant. And the effective enforcement of the command, originally statutory and now found in Rule 5(a) of the Rules of Criminal Procedure, that an arrested person be taken without unnecessary delay before a commissioner or other similar officer is held to require the exclusion of statements elicited during detention in violation thereof. *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); 18 U.S.C. § 3501(c).

While congressional enactments in the field of evidence have generally tended to expand admissibility beyond the scope of the common law rules, in some particular situations they have restricted the admissibility of relevant evidence. Most of this legislation has consisted of the formulation of a privilege or of a prohibition against disclosure. 8 U.S.C. § 1202(f), records of refusal of visas or permits to enter United States confidential, subject to discretion of Secretary of State to make available to court upon certification of need; 10 U.S.C. § 3693, replacement certificate of honorable discharge from Army not admissible in evidence; 10 U.S.C. § 8693, same as to Air Force; 11 U.S.C. § 25(a)(10), testimony given by bankrupt on his examination not admissible in criminal proceedings against him, except that given in hearing upon objection to discharge; 11 U.S.C. § 205(a), railroad reorganization petition, if dismissed, not admissible in evidence; 11 U.S.C. § 403(a), list of creditors filed with municipal composition plan not an admission; 13 U.S.C. § 9(a), census information confidential, retained copies of reports privileged; 47 U.S.C. § 605, interception and divulgence of wire or radio communications prohibited unless authorized by sender. These statutory provisions would remain undisturbed by the rules.

The rule recognizes but makes no attempt to spell out the constitutional considerations which impose basic limitations upon the admissibility of relevant evidence. Examples are evidence obtained by unlawful search and seizure. *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); incriminating statement elicited from an accused in violation of right to counsel. *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

**1974 Enactment**

Rule 402 as submitted to the Congress contained the phrase "or by other rules adopted by the Supreme Court". To accommodate the view that the Congress should not appear to acquiesce in the Court's judgment that it has authority under the existing Rules Enabling Acts to promulgate Rules of Evidence, the Committee amended the above phrase to read "or by other rules prescribed by the Supreme Court pursuant to statutory authority" in this and other Rules where the reference appears. House Report No. 93-650.

**2011 Amendments**

The language of Rule 402 has been amended as part of the restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility.

Notes of Decisions (614)

Fed. Rules Evid. Rule 402, 28 U.S.C.A., FRE Rule 402
Including Amendments Received Through 10-1-24

End of Document      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
    Federal Rules of Evidence (Refs & Annos)
        Article IV. Relevance and Its Limits

Federal Rules of Evidence Rule 403, 28 U.S.C.A.

Rule 403. Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons

Currentness

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

**CREDIT(S)**

(Pub.L. 93-595, § 1, Jan. 2, 1975, 88 Stat. 1932; Apr. 26, 2011, eff. Dec. 1, 2011.)

**ADVISORY COMMITTEE NOTES**
**1972 Proposed Rules**

The case law recognizes that certain circumstances call for the exclusion of evidence which is of unquestioned relevance. These circumstances entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme. Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission. Slough, Relevancy Unraveled, 5 Kan.L.Rev. 1, 12-15 (1956); Trautman, Logical or Legal Relevancy--A Conflict in Theory, 5 Van.L.Rev. 385, 392 (1952); McCormick § 152, pp. 319-321. The rules which follow in this Article are concrete applications evolved for particular situations. However, they reflect the policies underlying the present rule, which is designed as a guide for the handling of situations for which no specific rules have been formulated.

Exclusion for risk of unfair prejudice, confusion of issues, misleading the jury, or waste of time, all find ample support in the authorities. "Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.

The rule does not enumerate surprise as a ground for exclusion, in this respect following Wigmore's view of the common law. 6 Wigmore § 1849. Cf. McCormick § 152, p. 320, n. 29, listing unfair surprise as a ground for exclusion but stating that it is usually "coupled with the danger of prejudice and confusion of issues." While Uniform Rule 45 incorporates surprise as a ground and is followed in Kansas Code of Civil Procedure § 60-445, surprise is not included in California Evidence Code § 352 or New Jersey Rule 4, though both the latter otherwise substantially embody Uniform Rule 45. While it can scarcely be doubted that claims of unfair surprise may still be justified despite procedural requirements of notice and instrumentalities of discovery, the granting of a continuance is a more appropriate remedy than exclusion of the evidence. Tentative Recommendation and a Study Relating to the Uniform Rules of Evidence (Art. VI. Extrinsic Policies Affecting Admissibility), Cal.Law Revision Comm'n, Rep., Rec. & Studies, 612 (1964). Moreover, the impact of a rule excluding evidence on the ground of surprise would be difficult to estimate.

In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction. See Rule 106 [now 105] and Advisory Committee's Note thereunder. The availability of other means of proof may also be an appropriate factor.

**2011 Amendments**

The language of Rule 403 has been amended as part of the restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility.

Notes of Decisions (3099)

Fed. Rules Evid. Rule 403, 28 U.S.C.A., FRE Rule 403
Including Amendments Received Through 10-1-24

End of Document
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Add-109

United States Code Annotated
    Federal Rules of Evidence (Refs & Annos)
        Article VII. Opinions and Expert Testimony

Federal Rules of Evidence Rule 702, 28 U.S.C.A.

## Rule 702. Testimony by Expert Witnesses [Rule Text & Notes of Decisions subdivisions I, II]

### Currentness

<Notes of Decisions for 28 USCA Federal Rules of Evidence Rule 702 are displayed in multiple documents.>

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)** the testimony is based on sufficient facts or data;

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the expert has reliably applied the principles and methods to the facts of the case.

**CREDIT(S)**

(Pub.L. 93-595, § 1, Jan. 2, 1975, 88 Stat. 1937; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 26, 2011, eff. Dec. 1, 2011.)

**ADVISORY COMMITTEE NOTES**
**1972 Proposed Rules**

An intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge. The most common source of this knowledge is the expert witness, although there are other techniques for supplying it.

Most of the literature assumes that experts testify only in the form of opinions. The assumption is logically unfounded. The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts. Since much of the criticism of expert testimony has centered upon the hypothetical question, it seems wise to recognize that opinions are not indispensable and to encourage the use of expert testimony in non-opinion form when counsel believes the trier can itself draw the requisite inference. The use of opinions is not abolished by the rule, however.

Add-110

It will continue to be permissible for the experts to take the further step of suggesting the inference which should be drawn from applying the specialized knowledge to the facts. See Rules 703 to 705.

Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Ladd, Expert Testimony, 5 Vand.L.Rev. 414, 418 (1952). When opinions are excluded, it is because they are unhelpful and therefore superfluous and a waste of time. 7 Wigmore § 1918.

The rule is broadly phrased. The fields of knowledge which may be drawn upon are not limited merely to the "scientific" and "technical" but extend to all "specialized" knowledge. Similarly, the expert is viewed, not in a narrow sense, but as a person qualified by "knowledge, skill, experience, training or education." Thus within the scope of the rule are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called "skilled" witnesses, such as bankers or landowners testifying to land values.

**2000 Amendments**

Rule 702 has been amended in response to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and to the many cases applying *Daubert*, including *Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167 (1999). In *Daubert* the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in *Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testimony based on science. *See also Kumho*, 119 S.Ct. at 1178 (citing the Committee Note to the proposed amendment to Rule 702, which had been released for public comment before the date of the *Kumho* decision). The amendment affirms the trial court's role as gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony. Consistently with *Kumho*, the Rule as amended provides that all types of expert testimony present questions of admissibility for the trial court in deciding whether the evidence is reliable and helpful. Consequently, the admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171 (1987).

*Daubert* set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony. The specific factors explicated by the *Daubert* Court are (1) whether the expert's technique or theory can be or has been tested---that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. The Court in *Kumho* held that these factors might also be applicable in assessing the reliability of non-scientific expert testimony, depending upon "the particular circumstances of the particular case at issue." 119 S.Ct. at 1175.

No attempt has been made to "codify" these specific factors. *Daubert* itself emphasized that the factors were neither exclusive nor dispositive. Other cases have recognized that not all of the specific *Daubert* factors can apply to every type of expert testimony. In addition to *Kumho*, 119 S.Ct. at 1175, *see Tyus v. Urban Search Management*, 102 F.3d 256 (7th Cir. 1996) (noting that the factors mentioned by the Court in *Daubert* do not neatly apply to expert testimony from a sociologist). *See also Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 809 (3d Cir. 1997) ( holding that lack of peer review or publication was not dispositive where the expert's opinion was supported by

**Add-111**

"widely accepted scientific knowledge"). The standards set forth in the amendment are broad enough to require consideration of any or all of the specific *Daubert* factors where appropriate.

Courts both before and after *Daubert* have found other factors relevant in determining whether expert testimony is sufficiently reliable to be considered by the trier of fact. These factors include:

**(1)** Whether experts are "proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995).

**(2)** Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (noting that in some cases a trial court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered").

**(3)** Whether the expert has adequately accounted for obvious alternative explanations. *See Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994) (testimony excluded where the expert failed to consider other obvious causes for the plaintiff's condition). *Compare Ambrosini v. Labarraque*, 101 F.3d 129 (D.C. Cir. 1996) (the possibility of some uneliminated causes presents a question of weight, so long as the most obvious causes have been considered and reasonably ruled out by the expert).

**(4)** Whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting." *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997). *See Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1176 (1999) (*Daubert* requires the trial court to assure itself that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").

**(5)** Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give. *See Kumho Tire Co. v. Carmichael*, 119 S.Ct.1167, 1175 (1999) (*Daubert's* general acceptance factor does not "help show that an expert's testimony is reliable where the discipline itself lacks reliability, as for example, do theories grounded in any so-called generally accepted principles of astrology or necromancy."). *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998) (en banc) (clinical doctor was properly precluded from testifying to the toxicological cause of the plaintiff's respiratory problem, where the opinion was not sufficiently grounded in scientific methodology); *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188 (6th Cir. 1988) (rejecting testimony based on "clinical ecology" as unfounded and unreliable).

All of these factors remain relevant to the determination of the reliability of expert testimony under the Rule as amended. Other factors may also be relevant. *See Kumho*, 119 S.Ct. 1167, 1176 ("[W]e conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). Yet no single factor is necessarily dispositive of the reliability of a particular expert's testimony. *See, e.g., Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 155 (3d Cir. 1999) ("not only must each stage of the expert's testimony be reliable, but each stage must be evaluated practically and flexibly without bright-line exclusionary (or inclusionary) rules."); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317, n.5 (9th Cir. 1995) (noting that some expert disciplines "have the courtroom as a principal theatre of operations" and as to these disciplines "the fact that the expert has developed an expertise principally for purposes of litigation will obviously not be a substantial consideration.").

A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule. *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in*

*Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). As the Court in *Daubert* stated: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595. Likewise, this amendment is not intended to provide an excuse for an automatic challenge to the testimony of every expert. *See Kumho Tire Co. v. Carmichael*, 119 S.Ct.1167, 1176 (1999) (noting that the trial judge has the discretion "both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises.").

When a trial court, applying this amendment, rules that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable. The amendment is broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise. *See, e.g., Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 160 (3d Cir. 1999) (expert testimony cannot be excluded simply because the expert uses one test rather than another, when both tests are accepted in the field and both reach reliable results). As the court stated in *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994), proponents "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable.... The evidentiary requirement of reliability is lower than the merits standard of correctness." *See also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995) (scientific experts might be permitted to testify if they could show that the methods they used were also employed by "a recognized minority of scientists in their field."); *Ruiz-Troche v. Pepsi Cola*, 161 F.3d 77, 85 (1st Cir. 1998) ("*Daubert* neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance.").

The Court in *Daubert* declared that the "focus, of course, must be solely on principles and methodology, not on the conclusions they generate." 509 U.S. at 595. Yet as the Court later recognized, "conclusions and methodology are not entirely distinct from one another." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Under the amendment, as under *Daubert*, when an expert purports to apply principles and methods in accordance with professional standards, and yet reaches a conclusion that other experts in the field would not reach, the trial court may fairly suspect that the principles and methods have not been faithfully applied. *See Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). The amendment specifically provides that the trial court must scrutinize not only the principles and methods used by the expert, but also whether those principles and methods have been properly applied to the facts of the case. As the court noted in *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994), "*any* step that renders the analysis unreliable ... renders the expert's testimony inadmissible. *This is true whether the step completely changes a reliable methodology or merely misapplies that methodology*."

If the expert purports to apply principles and methods to the facts of the case, it is important that this application be conducted reliably. Yet it might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case. For example, experts might instruct the factfinder on the principles of thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports, without ever knowing about or trying to tie their testimony into the facts of the case. The amendment does not alter the venerable practice of using expert testimony to educate the factfinder on general principles. For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony "fit" the facts of the case.

As stated earlier, the amendment does not distinguish between scientific and other forms of expert testimony. The trial court's gatekeeping function applies to testimony by any expert. *See Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1171 (1999) ("We conclude that *Daubert's* general holding--setting forth the trial judge's general

'gatekeeping' obligation--applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."). While the relevant factors for determining reliability will vary from expertise to expertise, the amendment rejects the premise that an expert's testimony should be treated more permissively simply because it is outside the realm of science. An opinion from an expert who is not a scientist should receive the same degree of scrutiny for reliability as an opinion from an expert who purports to be a scientist. *See Watkins v. Telsmith, Inc.,* 121 F.3d 984, 991 (5th Cir. 1997) ("[I]t seems exactly backwards that experts who purport to rely on general engineering principles and practical experience might escape screening by the district court simply by stating that their conclusions were not reached by any particular method or technique."). Some types of expert testimony will be more objectively verifiable, and subject to the expectations of falsifiability, peer review, and publication, than others. Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise. The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded. *See, e.g.*, American College of Trial Lawyers, Standards and Procedures for Determining the Admissibility of Expert Testimony after *Daubert,* 157 F.R.D. 571, 579 (1994) ("[W]hether the testimony concerns economic principles, accounting standards, property valuation or other non-scientific subjects, it should be evaluated by reference to the 'knowledge and experience' of that particular field.").

The amendment requires that the testimony must be the product of reliable principles and methods that are reliably applied to the facts of the case. While the terms "principles" and "methods" may convey a certain impression when applied to scientific knowledge, they remain relevant when applied to testimony based on technical or other specialized knowledge. For example, when a law enforcement agent testifies regarding the use of code words in a drug transaction, the principle used by the agent is that participants in such transactions regularly use code words to conceal the nature of their activities. The method used by the agent is the application of extensive experience to analyze the meaning of the conversations. So long as the principles and methods are reliable and applied reliably to the facts of the case, this type of testimony should be admitted.

Nothing in this amendment is intended to suggest that experience alone--or experience in conjunction with other knowledge, skill, training or education--may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony. *See, e.g., United States v. Jones,* 107 F.3d 1147 (6th Cir. 1997) (no abuse of discretion in admitting the testimony of a handwriting examiner who had years of practical experience and extensive training, and who explained his methodology in detail); *Tassin v. Sears Roebuck,* 946 F.Supp. 1241, 1248 (M.D.La. 1996) (design engineer's testimony can be admissible when the expert's opinions "are based on facts, a reasonable investigation, and traditional technical/mechanical expertise, and he provides a reasonable link between the information and procedures he uses and the conclusions he reaches"). *See also Kumho Tire Co. v. Carmichael,* 119 S.Ct. 1167, 1178 (1999) (stating that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it." *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert,* that's not enough."). The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable. *See O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090 (7th Cir. 1994) (expert testimony based on a completely subjective methodology held properly excluded). *See also Kumho Tire Co. v.*

*Carmichael*, 119 S.Ct. 1167, 1176 (1999) ("[I]t will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable.").

Subpart (1) of Rule 702 calls for a quantitative rather than qualitative analysis. The amendment requires that expert testimony be based on sufficient underlying "facts or data." The term "data" is intended to encompass the reliable opinions of other experts. See the original Advisory Committee Note to Rule 703. The language "facts or data" is broad enough to allow an expert to rely on hypothetical facts that are supported by the evidence. *Id.*

When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on " sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

There has been some confusion over the relationship between Rules 702 and 703. The amendment makes clear that the sufficiency of the basis of an expert' s testimony is to be decided under Rule 702. Rule 702 sets forth the overarching requirement of reliability, and an analysis of the sufficiency of the expert's basis cannot be divorced from the ultimate reliability of the expert's opinion. In contrast, the "reasonable reliance" requirement of Rule 703 is a relatively narrow inquiry. When an expert relies on inadmissible information, Rule 703 requires the trial court to determine whether that information is of a type reasonably relied on by other experts in the field. If so, the expert can rely on the information in reaching an opinion. However, the question whether the expert is relying on a *sufficient* basis of information--whether admissible information or not--is governed by the requirements of Rule 702.

The amendment makes no attempt to set forth procedural requirements for exercising the trial court's gatekeeping function over expert testimony. *See* Daniel J. Capra, *The Daubert Puzzle*, 38 Ga.L.Rev. 699, 766 (1998) [*sic*, should be "32 Ga.L.Rev. 699, 766 (1998)"] ("Trial courts should be allowed substantial discretion in dealing with *Daubert* questions; any attempt to codify procedures will likely give rise to unnecessary changes in practice and create difficult questions for appellate review."). Courts have shown considerable ingenuity and flexibility in considering challenges to expert testimony under *Daubert*, and it is contemplated that this will continue under the amended Rule. *See, e.g., Cortes-Irizarry v. Corporacion Insular*, 111 F.3d 184 (1st Cir. 1997) (discussing the application of *Daubert* in ruling on a motion for summary judgment); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 736, 739 (3d Cir. 1994) (discussing the use of *in limine* hearings); *Claar v. Burlington N.R.R.*, 29 F.3d 499, 502-05 (9th Cir. 1994) (discussing the trial court's technique of ordering experts to submit serial affidavits explaining the reasoning and methods underlying their conclusions).

The amendment continues the practice of the original Rule in referring to a qualified witness as an "expert." This was done to provide continuity and to minimize change. The use of the term "expert" in the Rule does not, however, mean that a jury should actually be informed that a qualified witness is testifying as an "expert." Indeed, there is much to be said for a practice that prohibits the use of the term "expert" by both the parties and the court at trial. Such a practice "ensures that trial courts do not inadvertently put their stamp of authority" on a witness's opinion, and protects against the jury's being "overwhelmed by the so-called 'experts'." Hon. Charles Richey, *Proposals to Eliminate the Prejudicial Effect of the Use of the Word "Expert" Under the Federal Rules of Evidence in Criminal and Civil Jury Trials*, 154 F.R.D. 537, 559 (1994) (setting forth limiting instructions and a standing order employed to prohibit the use of the term " expert" injury trials).

**GAP Report--Proposed Amendment to Rule 702**

The Committee made the following changes to the published draft of the proposed amendment to Evidence Rule 702:

**1.** The word "reliable" was deleted from Subpart (1) of the proposed amendment, in order to avoid an overlap with Evidence Rule 703, and to clarify that an expert opinion need not be excluded simply because it is based on hypothetical facts. The Committee Note was amended to accord with this textual change.

**2.** The Committee Note was amended throughout to include pertinent references to the Supreme Court's decision in *Kumho Tire Co. v. Carmichael*, which was rendered after the proposed amendment was released for public comment. Other citations were updated as well.

**3.** The Committee Note was revised to emphasize that the amendment is not intended to limit the right to jury trial, nor to permit a challenge to the testimony of every expert, nor to preclude the testimony of experience-based experts, nor to prohibit testimony based on competing methodologies within a field of expertise.

**4.** Language was added to the Committee Note to clarify that no single factor is necessarily dispositive of the reliability inquiry mandated by Evidence Rule 702.

**2011 Amendments**

The language of Rule 702 has been amended as part of the restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility.

Notes of Decisions (1394)

Fed. Rules Evid. Rule 702, 28 U.S.C.A., FRE Rule 702
Including Amendments Received Through 5-1-21

---

**End of Document**  © 2021 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 7

Add-116

United States Code Annotated
  Federal Rules of Evidence (Refs & Annos)
    Article VII. Opinions and Expert Testimony

Federal Rules of Evidence Rule 702, 28 U.S.C.A.

## Rule 702. Testimony by Expert Witnesses [Rule Text & Notes of Decisions subdivisions I, II]

Effective: December 1, 2023

Currentness

<Notes of Decisions for 28 USCA Federal Rules of Evidence Rule 702 are displayed in multiple documents.>

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)** the testimony is based on sufficient facts or data;

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

**CREDIT(S)**

(Pub.L. 93-595, § 1, Jan. 2, 1975, 88 Stat. 1937; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 26, 2011, eff. Dec. 1, 2011; Apr. 24, 2023, eff. Dec. 1, 2023.)

**ADVISORY COMMITTEE NOTES**
**1972 Proposed Rules**

An intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge. The most common source of this knowledge is the expert witness, although there are other techniques for supplying it.

Most of the literature assumes that experts testify only in the form of opinions. The assumption is logically unfounded. The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts. Since much of the criticism of expert testimony has centered upon the hypothetical question, it seems wise to recognize that opinions are not indispensable and to encourage the use of expert testimony in non-opinion form when counsel believes the trier can itself draw the requisite inference. The use of opinions is

not abolished by the rule, however. It will continue to be permissible for the experts to take the further step of suggesting the inference which should be drawn from applying the specialized knowledge to the facts. See Rules 703 to 705.

Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Ladd, Expert Testimony, 5 Vand.L.Rev. 414, 418 (1952). When opinions are excluded, it is because they are unhelpful and therefore superfluous and a waste of time. 7 Wigmore § 1918.

The rule is broadly phrased. The fields of knowledge which may be drawn upon are not limited merely to the "scientific" and "technical" but extend to all "specialized" knowledge. Similarly, the expert is viewed, not in a narrow sense, but as a person qualified by "knowledge, skill, experience, training or education." Thus within the scope of the rule are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called "skilled" witnesses, such as bankers or landowners testifying to land values.

**2000 Amendments**

Rule 702 has been amended in response to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and to the many cases applying *Daubert*, including *Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167 (1999). In *Daubert* the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in *Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testimony based on science. *See also Kumho*, 119 S.Ct. at 1178 (citing the Committee Note to the proposed amendment to Rule 702, which had been released for public comment before the date of the *Kumho* decision). The amendment affirms the trial court's role as gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony. Consistently with *Kumho*, the Rule as amended provides that all types of expert testimony present questions of admissibility for the trial court in deciding whether the evidence is reliable and helpful. Consequently, the admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171 (1987).

*Daubert* set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony. The specific factors explicated by the *Daubert* Court are (1) whether the expert's technique or theory can be or has been tested--- that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. The Court in *Kumho* held that these factors might also be applicable in assessing the reliability of non-scientific expert testimony, depending upon "the particular circumstances of the particular case at issue." 119 S.Ct. at 1175.

No attempt has been made to "codify" these specific factors. *Daubert* itself emphasized that the factors were neither exclusive nor dispositive. Other cases have recognized that not all of the specific *Daubert* factors can apply to every type of expert testimony. In addition to *Kumho*, 119 S.Ct. at 1175, *see Tyus v. Urban Search Management*, 102 F.3d 256 (7th Cir. 1996) (noting that the factors mentioned by the Court in *Daubert* do not neatly apply to expert testimony from a sociologist). *See also Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 809 (3d Cir. 1997) ( holding that lack of peer review or publication was not dispositive where the expert's opinion was supported by "widely accepted scientific knowledge"). The standards set forth in the amendment are broad enough to require consideration of any or all of the specific *Daubert* factors where appropriate.

Courts both before and after *Daubert* have found other factors relevant in determining whether expert testimony is sufficiently reliable to be considered by the trier of fact. These factors include:

**(1)** Whether experts are "proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995).

**(2)** Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (noting that in some cases a trial court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered").

**(3)** Whether the expert has adequately accounted for obvious alternative explanations. *See Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994) (testimony excluded where the expert failed to consider other obvious causes for the plaintiff's condition). *Compare Ambrosini v. Labarraque*, 101 F.3d 129 (D.C. Cir. 1996) (the possibility of some uneliminated causes presents a question of weight, so long as the most obvious causes have been considered and reasonably ruled out by the expert).

**(4)** Whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting." *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997). *See Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1176 (1999) (*Daubert* requires the trial court to assure itself that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").

**(5)** Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give. *See Kumho Tire Co. v. Carmichael*, 119 S.Ct.1167, 1175 (1999) (*Daubert's* general acceptance factor does not "help show that an expert's testimony is reliable where the discipline itself lacks reliability, as for example, do theories grounded in any so-called generally accepted principles of astrology or necromancy."), *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998) (en banc) (clinical doctor was properly precluded from testifying to the toxicological cause of the plaintiff's respiratory problem, where the opinion was not sufficiently grounded in scientific methodology); *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188 (6th Cir. 1988) (rejecting testimony based on "clinical ecology" as unfounded and unreliable).

All of these factors remain relevant to the determination of the reliability of expert testimony under the Rule as amended. Other factors may also be relevant. *See Kumho*, 119 S.Ct. 1167, 1176 ("[W]e conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). Yet no single factor is necessarily dispositive of the reliability of a particular expert's testimony. *See, e.g., Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 155 (3d Cir. 1999) ("not only must each stage of the expert's testimony be reliable, but each stage must be evaluated practically and flexibly without bright-line exclusionary (or inclusionary) rules."); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317, n.5 (9th Cir. 1995) (noting that some expert disciplines "have the courtroom as a principal theatre of operations" and as to these disciplines "the fact that the expert has developed an expertise principally for purposes of litigation will obviously not be a substantial consideration.").

A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule. *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). As the Court in *Daubert* stated: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595. Likewise, this amendment is not intended to provide an excuse for an automatic challenge to the testimony of every expert. *See Kumho Tire Co. v. Carmichael*, 119 S.Ct.1167, 1176 (1999) (noting that the trial judge has the discretion "both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises.").

Add-119

When a trial court, applying this amendment, rules that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable. The amendment is broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise. *See, e.g., Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 160 (3d Cir. 1999) (expert testimony cannot be excluded simply because the expert uses one test rather than another, when both tests are accepted in the field and both reach reliable results). As the court stated in *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994), proponents "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable.... The evidentiary requirement of reliability is lower than the merits standard of correctness." *See also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995) (scientific experts might be permitted to testify if they could show that the methods they used were also employed by "a recognized minority of scientists in their field."); *Ruiz-Troche v. Pepsi Cola*, 161 F.3d 77, 85 (1st Cir. 1998) ("*Daubert* neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance.").

The Court in *Daubert* declared that the "focus, of course, must be solely on principles and methodology, not on the conclusions they generate." 509 U.S. at 595. Yet as the Court later recognized, "conclusions and methodology are not entirely distinct from one another." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Under the amendment, as under *Daubert*, when an expert purports to apply principles and methods in accordance with professional standards, and yet reaches a conclusion that other experts in the field would not reach, the trial court may fairly suspect that the principles and methods have not been faithfully applied. *See Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). The amendment specifically provides that the trial court must scrutinize not only the principles and methods used by the expert, but also whether those principles and methods have been properly applied to the facts of the case. As the court noted in *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994), "*any* step that renders the analysis unreliable ... renders the expert's testimony inadmissible. *This is true whether the step completely changes a reliable methodology or merely misapplies that methodology*."

If the expert purports to apply principles and methods to the facts of the case, it is important that this application be conducted reliably. Yet it might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case. For example, experts might instruct the factfinder on the principles of thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports, without ever knowing about or trying to tie their testimony into the facts of the case. The amendment does not alter the venerable practice of using expert testimony to educate the factfinder on general principles. For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony "fit" the facts of the case.

As stated earlier, the amendment does not distinguish between scientific and other forms of expert testimony. The trial court's gatekeeping function applies to testimony by any expert. *See Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1171 (1999) ("We conclude that *Daubert's* general holding--setting forth the trial judge's general 'gatekeeping' obligation--applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."). While the relevant factors for determining reliability will vary from expertise to expertise, the amendment rejects the premise that an expert's testimony should be treated more permissively simply because it is outside the realm of science. An opinion from an expert who is not a scientist should receive the same degree of scrutiny for reliability as an opinion from an expert who purports to be a scientist. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997) ("[I]t seems exactly backwards that experts who purport to rely on general engineering principles and practical experience might escape screening by the district court simply by stating that their conclusions were not reached by any particular method or technique."). Some types of expert testimony will be more objectively verifiable, and subject to the expectations of falsifiability, peer review, and publication, than others. Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise. The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded. *See, e.g.*, American College of Trial Lawyers, Standards and Procedures for Determining the

Add-120

Admissibility of Expert Testimony after *Daubert*, 157 F.R.D. 571, 579 (1994) ("[W]hether the testimony concerns economic principles, accounting standards, property valuation or other non-scientific subjects, it should be evaluated by reference to the 'knowledge and experience' of that particular field.").

The amendment requires that the testimony must be the product of reliable principles and methods that are reliably applied to the facts of the case. While the terms "principles" and "methods" may convey a certain impression when applied to scientific knowledge, they remain relevant when applied to testimony based on technical or other specialized knowledge. For example, when a law enforcement agent testifies regarding the use of code words in a drug transaction, the principle used by the agent is that participants in such transactions regularly use code words to conceal the nature of their activities. The method used by the agent is the application of extensive experience to analyze the meaning of the conversations. So long as the principles and methods are reliable and applied reliably to the facts of the case, this type of testimony should be admitted.

Nothing in this amendment is intended to suggest that experience alone--or experience in conjunction with other knowledge, skill, training or education--may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony. *See, e.g., United States v. Jones*, 107 F.3d 1147 (6th Cir. 1997) (no abuse of discretion in admitting the testimony of a handwriting examiner who had years of practical experience and extensive training, and who explained his methodology in detail); *Tassin v. Sears Roebuck*, 946 F.Supp. 1241, 1248 (M.D.La. 1996) (design engineer's testimony can be admissible when the expert's opinions "are based on facts, a reasonable investigation, and traditional technical/mechanical expertise, and he provides a reasonable link between the information and procedures he uses and the conclusions he reaches"). *See also Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1178 (1999) (stating that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it." *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough."). The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable. *See O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090 (7th Cir. 1994) (expert testimony based on a completely subjective methodology held properly excluded). *See also Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1176 (1999) ("[I]t will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable.").

Subpart (1) of Rule 702 calls for a quantitative rather than qualitative analysis. The amendment requires that expert testimony be based on sufficient underlying "facts or data." The term "data" is intended to encompass the reliable opinions of other experts. See the original Advisory Committee Note to Rule 703. The language "facts or data" is broad enough to allow an expert to rely on hypothetical facts that are supported by the evidence. *Id.*

When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on " sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

There has been some confusion over the relationship between Rules 702 and 703. The amendment makes clear that the sufficiency of the basis of an expert' s testimony is to be decided under Rule 702. Rule 702 sets forth the overarching requirement of reliability, and an analysis of the sufficiency of the expert's basis cannot be divorced from the ultimate reliability of the expert's opinion. In contrast, the "reasonable reliance" requirement of Rule 703 is a relatively narrow inquiry. When an expert relies on inadmissible information, Rule 703 requires the trial court to determine whether that information is of a type reasonably relied on by other experts in the field. If so, the expert can rely on the information in reaching an opinion. However, the question

Add-121

whether the expert is relying on a *sufficient* basis of information--whether admissible information or not--is governed by the requirements of Rule 702.

The amendment continues the practice of the original Rule in referring to a qualified witness as an "expert." This was done to provide continuity and to minimize change. The use of the term "expert" in the Rule does not, however, mean that a jury should actually be informed that a qualified witness is testifying as an "expert." Indeed, there is much to be said for a practice that prohibits the use of the term "expert" by both the parties and the court at trial. Such a practice "ensures that trial courts do not inadvertently put their stamp of authority" on a witness's opinion, and protects against the jury's being "overwhelmed by the so-called 'experts'." Hon. Charles Richey, *Proposals to Eliminate the Prejudicial Effect of the Use of the Word "Expert" Under the Federal Rules of Evidence in Criminal and Civil Jury Trials*, 154 F.R.D. 537, 559 (1994) (setting forth limiting instructions and a standing order employed to prohibit the use of the term " expert" injury trials).

**GAP Report--Proposed Amendment to Rule 702**

The Committee made the following changes to the published draft of the proposed amendment to Evidence Rule 702:

**1.** The word "reliable" was deleted from Subpart (1) of the proposed amendment, in order to avoid an overlap with Evidence Rule 703, and to clarify that an expert opinion need not be excluded simply because it is based on hypothetical facts. The Committee Note was amended to accord with this textual change.

**2.** The Committee Note was amended throughout to include pertinent references to the Supreme Court's decision in *Kumho Tire Co. v. Carmichael*, which was rendered after the proposed amendment was released for public comment. Other citations were updated as well.

**3.** The Committee Note was revised to emphasize that the amendment is not intended to limit the right to jury trial, nor to permit a challenge to the testimony of every expert, nor to preclude the testimony of experience-based experts, nor to prohibit testimony based on competing methodologies within a field of expertise.

**4.** Language was added to the Committee Note to clarify that no single factor is necessarily dispositive of the reliability inquiry mandated by Evidence Rule 702.

**2011 Amendments**

The language of Rule 702 has been amended as part of the restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility.

**2023 Amendments**

Rule 702 has been amended in two respects:

(1) First, the rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule. *See* Rule 104(a). This is the preponderance of the evidence standard that applies to most of the admissibility requirements set forth in the evidence rules. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration."); *Huddleston v. United States*, 485 U.S. 681, 687 n.5 (1988) ("preliminary factual findings under Rule 104(a) are subject to the preponderance-of-the-evidence standard"). But many courts have held that the critical questions of the sufficiency of an expert's basis, and the

application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a).

There is no intent to raise any negative inference regarding the applicability of the Rule 104(a) standard of proof for other rules. The Committee concluded that emphasizing the preponderance standard in Rule 702 specifically was made necessary by the courts that have failed to apply correctly the reliability requirements of that rule. Nor does the amendment require that the court make a finding of reliability in the absence of objection.

The amendment clarifies that the preponderance standard applies to the three reliability-based requirements added in 2000-- requirements that many courts have incorrectly determined to be governed by the more permissive Rule 104(b) standard. But it remains the case that other admissibility requirements in the rule (such as that the expert must be qualified and the expert's testimony must help the trier of fact) are governed by the Rule 104(a) standard as well.

Some challenges to expert testimony will raise matters of weight rather than admissibility even under the Rule 104(a) standard. For example, if the court finds it more likely than not that an expert has a sufficient basis to support an opinion, the fact that the expert has not read every single study that exists will raise a question of weight and not admissibility. But this does not mean, as certain courts have held, that arguments about the sufficiency of an expert's basis always go to weight and not admissibility. Rather it means that once the court has found it more likely than not that the admissibility requirement has been met, any attack by the opponent will go only to the weight of the evidence.

It will often occur that experts come to different conclusions based on contested sets of facts. Where that is so, the Rule 104(a) standard does not necessarily require exclusion of either side's experts. Rather, by deciding the disputed facts, the jury can decide which side's experts to credit. "[P]roponents 'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable... The evidentiary requirement of reliability is lower than the merits standard of correctness.'" Advisory Committee Note to the 2000 amendment to Rule 702, quoting *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994).

Rule 702 requires that the expert's knowledge "help" the trier of fact to understand the evidence or to determine a fact in issue. Unfortunately, some courts have required the expert's testimony to "appreciably help" the trier of fact. Applying a higher standard than helpfulness to otherwise reliable expert testimony is unnecessarily strict.

(2) Rule 702(d) has also been amended to emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology. Judicial gatekeeping is essential because just as jurors may be unable, due to lack of specialized knowledge, to evaluate meaningfully the reliability of scientific and other methods underlying expert opinion, jurors may also lack the specialized knowledge to determine whether the conclusions of an expert go beyond what the expert's basis and methodology may reliably support.

The amendment is especially pertinent to the testimony of forensic experts in both criminal and civil cases. Forensic experts should avoid assertions of absolute or one hundred percent certainty--or to a reasonable degree of scientific certainty--if the methodology is subjective and thus potentially subject to error. In deciding whether to admit forensic expert testimony, the judge should (where possible) receive an estimate of the known or potential rate of error of the methodology employed, based (where appropriate) on studies that reflect how often the method produces accurate results. Expert opinion testimony regarding the weight of feature comparison evidence (i.e., evidence that a set of features corresponds between two examined items) must be limited to those inferences that can reasonably be drawn from a reliable application of the principles and methods. This amendment does not, however, bar testimony that comports with substantive law requiring opinions to a particular degree of certainty.

Nothing in the amendment imposes any new, specific procedures. Rather, the amendment is simply intended to clarify that Rule 104(a)'s requirement applies to expert opinions under Rule 702. Similarly, nothing in the amendment requires the court

Add-123

to nitpick an expert's opinion in order to reach a perfect expression of what the basis and methodology can support. The Rule 104(a) standard does not require perfection. On the other hand, it does not permit the expert to make claims that are unsupported by the expert's basis and methodology.

Notes of Decisions (1570)

Fed. Rules Evid. Rule 702, 28 U.S.C.A., FRE Rule 702
Including Amendments Received Through 10-1-24

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Add-124**

West's Idaho Code Annotated
    Idaho Court Rules
        Idaho Rules of Evidence
            Article VII. Opinions and Expert Testimony

Idaho Rules of Evidence (I.R.E.), Rule 704
Formerly cited as ID R REV Rule 704

## Rule 704. Opinion on an ultimate issue

Currentness

An opinion or inference is not objectionable just because it embraces an ultimate issue.

**Credits**

[Adopted March 26, 2018, effective July 1, 2018.]

Rules of Evid., Rule 704, ID R REV Rule 704
Current with amendments received through December 15, 2025. Some rules may be more current, see credits for details.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Federal Rules of Evidence (Refs & Annos)
    Article VIII. Hearsay (Refs & Annos)

Federal Rules of Evidence Rule 802, 28 U.S.C.A.

## Rule 802. The Rule Against Hearsay

Currentness

Hearsay is not admissible unless any of the following provides otherwise:

• a federal statute;

• these rules; or

• other rules prescribed by the Supreme Court.

**CREDIT(S)**

(Pub.L. 93-595, § 1, Jan. 2, 1975, 88 Stat. 1939; Apr. 26, 2011, eff. Dec. 1, 2011.)

**ADVISORY COMMITTEE NOTES**
**1972 Proposed Rules**

The provision excepting from the operation of the rule hearsay which is made admissible by other rules adopted by the Supreme Court or by Act of Congress continues the admissibility thereunder of hearsay which would not qualify under these Evidence Rules. The following examples illustrate the working of the exception:
  Federal Rules of Civil Procedure

Rule 4(g): proof of service by affidavit.

Rule 32: admissibility of depositions.

Rule 43(e): affidavits when motion based on facts not appearing of record.

Rule 56: affidavits in summary judgment proceedings.

Rule 65(b): showing by affidavit for temporary restraining order.
  Federal Rules of Criminal Procedure

Rule 4(a): affidavits to show grounds for issuing warrants.

Rule 12(b)(4): affidavits to determine issues of fact in connection with motions.

Acts of Congress

10 U.S.C. § 7730: affidavits of unavailable witnesses in actions for damages caused by vessel in naval service, or towage or salvage of same, when taking of testimony or bringing of action delayed or stayed on security grounds.

29 U.S.C. § 161(4): affidavit as proof of service in NLRB proceedings.

38 U.S.C. § 5206: affidavit as proof of posting notice of sale of unclaimed property by Veterans Administration.

**2011 Amendments**

The language of Rule 802 has been amended as part of the restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility.

Notes of Decisions (36)

Fed. Rules Evid. Rule 802, 28 U.S.C.A., FRE Rule 802
Including Amendments Received Through 10-1-24

*End of Document* © 2024 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
Federal Rules of Evidence (Refs & Annos)
Article VIII. Hearsay (Refs & Annos)

Federal Rules of Evidence Rule 803, 28 U.S.C.A.

# Rule 803. Exceptions to the Rule Against Hearsay--
## Regardless of Whether the Declarant Is Available as a Witness

Currentness

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

**(1) Present Sense Impression.** A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.

**(2) Excited Utterance.** A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.

**(3) Then-Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

**(4) Statement Made for Medical Diagnosis or Treatment.** A statement that:

**(A)** is made for--and is reasonably pertinent to--medical diagnosis or treatment; and

**(B)** describes medical history; past or present symptoms or sensations; their inception; or their general cause.

**(5) Recorded Recollection.** A record that:

**(A)** is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;

**(B)** was made or adopted by the witness when the matter was fresh in the witness's memory; and

**(C)** accurately reflects the witness's knowledge.

If admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party.

Add-128

**(6) Records of a Regularly Conducted Activity.** A record of an act, event, condition, opinion, or diagnosis if:

**(A)** the record was made at or near the time by--or from information transmitted by--someone with knowledge;

**(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

**(C)** making the record was a regular practice of that activity;

**(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

**(E)** the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

**(7) Absence of a Record of a Regularly Conducted Activity.** Evidence that a matter is not included in a record described in paragraph (6) if:

**(A)** the evidence is admitted to prove that the matter did not occur or exist;

**(B)** a record was regularly kept for a matter of that kind; and

**(C)** the opponent does not show that the possible source of the information or other circumstances indicate a lack of trustworthiness.

**(8) Public Records.** A record or statement of a public office if:

**(A)** it sets out:

**(i)** the office's activities;

**(ii)** a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or

**(iii)** in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and

Add-129

**(B)** the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

**(9) Public Records of Vital Statistics.** A record of a birth, death, or marriage, if reported to a public office in accordance with a legal duty.

**(10) Absence of a Public Record.** Testimony--or a certification under Rule 902--that a diligent search failed to disclose a public record or statement if:

    **(A)** the testimony or certification is admitted to prove that

        **(i)** the record or statement does not exist; or

        **(ii)** a matter did not occur or exist, if a public office regularly kept a record or statement for a matter of that kind; and

    **(B)** in a criminal case, a prosecutor who intends to offer a certification provides written notice of that intent at least 14 days before trial, and the defendant does not object in writing within 7 days of receiving the notice--unless the court sets a different time for the notice or the objection.

**(11) Records of Religious Organizations Concerning Personal or Family History.** A statement of birth, legitimacy, ancestry, marriage, divorce, death, relationship by blood or marriage, or similar facts of personal or family history, contained in a regularly kept record of a religious organization.

**(12) Certificates of Marriage, Baptism, and Similar Ceremonies.** A statement of fact contained in a certificate:

    **(A)** made by a person who is authorized by a religious organization or by law to perform the act certified;

    **(B)** attesting that the person performed a marriage or similar ceremony or administered a sacrament; and

    **(C)** purporting to have been issued at the time of the act or within a reasonable time after it.

**(13) Family Records.** A statement of fact about personal or family history contained in a family record, such as a Bible, genealogy, chart, engraving on a ring, inscription on a portrait, or engraving on an urn or burial marker.

**(14) Records of Documents That Affect an Interest in Property.** The record of a document that purports to establish or affect an interest in property if:

    **(A)** the record is admitted to prove the content of the original recorded document, along with its signing and its delivery by each person who purports to have signed it;

**(B)** the record is kept in a public office; and

**(C)** a statute authorizes recording documents of that kind in that office.

**(15) Statements in Documents That Affect an Interest in Property.** A statement contained in a document that purports to establish or affect an interest in property if the matter stated was relevant to the document's purpose--unless later dealings with the property are inconsistent with the truth of the statement or the purport of the document.

**(16) Statements in Ancient Documents.** A statement in a document that was prepared before January 1, 1998, and whose authenticity is established.

**(17) Market Reports and Similar Commercial Publications.** Market quotations, lists, directories, or other compilations that are generally relied on by the public or by persons in particular occupations.

**(18) Statements in Learned Treatises, Periodicals, or Pamphlets.** A statement contained in a treatise, periodical, or pamphlet if:

**(A)** the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and

**(B)** the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice.

If admitted, the statement may be read into evidence but not received as an exhibit.

**(19) Reputation Concerning Personal or Family History.** A reputation among a person's family by blood, adoption, or marriage--or among a person's associates or in the community--concerning the person's birth, adoption, legitimacy, ancestry, marriage, divorce, death, relationship by blood, adoption, or marriage, or similar facts of personal or family history.

**(20) Reputation Concerning Boundaries or General History.** A reputation in a community--arising before the controversy--concerning boundaries of land in the community or customs that affect the land, or concerning general historical events important to that community, state, or nation.

**(21) Reputation Concerning Character.** A reputation among a person's associates or in the community concerning the person's character.

**(22) Judgment of a Previous Conviction.** Evidence of a final judgment of conviction if:

**(A)** the judgment was entered after a trial or guilty plea, but not a nolo contendere plea;

Add-131

**(B)** the conviction was for a crime punishable by death or by imprisonment for more than a year;

**(C)** the evidence is admitted to prove any fact essential to the judgment; and

**(D)** when offered by the prosecutor in a criminal case for a purpose other than impeachment, the judgment was against the defendant.

The pendency of an appeal may be shown but does not affect admissibility.

**(23) Judgments Involving Personal, Family, or General History, or a Boundary.** A judgment that is admitted to prove a matter of personal, family, or general history, or boundaries, if the matter:

**(A)** was essential to the judgment; and

**(B)** could be proved by evidence of reputation.

**(24) [Other Exceptions.]** [Transferred to Rule 807.]

**CREDIT(S)**

(Pub.L. 93-595, § 1, Jan. 2, 1975, 88 Stat. 1939; Pub.L. 94-149, § 1(11), Dec. 12, 1975, 89 Stat. 805; Mar. 2, 1987, eff. Oct. 1, 1987; Apr. 11, 1997, eff. Dec. 1, 1997; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 26, 2011, eff. Dec. 1, 2011; Apr. 13, 2013, eff. Dec. 1, 2013; Apr. 25, 2014, eff. Dec. 1, 2014; Apr. 27, 2017, eff. Dec. 1, 2017.)

**ADVISORY COMMITTEE NOTES**
**1972 Proposed Rules**

The exceptions are phrased in terms of nonapplication of the hearsay rule, rather than in positive terms of admissibility, in order to repel any implication that other possible grounds for exclusion are eliminated from consideration.

The present rule proceeds upon the theory that under appropriate circumstances a hearsay statement may possess circumstantial guarantees of trustworthiness sufficient to justify nonproduction of the declarant in person at the trial even though he may be available. The theory finds vast support in the many exceptions to the hearsay rule developed by the common law in which unavailability of the declarant is not a relevant factor. The present rule is a synthesis of them, with revision where modern developments and conditions are believed to make that course appropriate.

In a hearsay situation, the declarant is, of course, a witness, and neither this rule nor Rule 804 dispenses with the requirement of firsthand knowledge. It may appear from his statement or be inferable from circumstances. See Rule 602.

**Note to Paragraphs (1) and (2).** In considerable measure these two examples overlap, though based on somewhat different theories. The most significant practical difference will lie in the time lapse allowable between event and statement.

**Rule 803. Exceptions to the Rule Against Hearsay--Regardless of..., FRE Rule 803**

---

The underlying theory of Exception [paragraph] (1) is that substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation. Moreover, if the witness is the declarant, he may be examined on the statement. If the witness is not the declarant, he may be examined as to the circumstances as an aid in evaluating the statement. Morgan, Basic Problems of Evidence 340-341 (1962).

The theory of Exception [paragraph] (2) is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication. 6 Wigmore § 1747, p. 135. Spontaneity is the key factor in each instance, though arrived at by somewhat different routes. Both are needed in order to avoid needless niggling.

While the theory of Exception [paragraph] (2) has been criticized on the ground that excitement impairs accuracy of observation as well as eliminating conscious fabrication, Hutchins and Slesinger, Some Observations on the Law of Evidence: Spontaneous Exclamations, 28 Colum.L.Rev. 432 (1928), it finds support in cases without number. See cases in 6 Wigmore § 1750; Annot. 53 A.L.R.2d 1245 (statements as to cause of or responsibility for motor vehicle accident); Annot., 4 A.L.R.3d 149 (accusatory statements by homicide victims). Since unexciting events are less likely to evoke comment, decisions involving Exception [paragraph] (1) are far less numerous. Illustrative are *Tampa Elec. Co. v. Getrost,* 151 Fla. 558, 10 So.2d 83 (1942); *Houston Oxygen Co. v. Davis,* 139 Tex. 1, 161 S.W.2d 474 (1942); and cases cited in McCormick § 273, p. 585, n. 4.

With respect to the *time element,* Exception [paragraph] (1) recognizes that in many, if not most, instances precise contemporaneity is not possible and hence a slight lapse is allowable. Under Exception [paragraph] (2) the standard of measurement is the duration of the state of excitement. "How long can excitement prevail? Obviously there are no pat answers and the character of the transaction or event will largely determine the significance of the time factor." Slough, Spontaneous Statements and State of Mind, 46 Iowa L.Rev. 224, 243 (1961); McCormick § 272, p. 580.

*Participation* by the declarant is not required: a non-participant may be moved to describe what he perceives, and one may be startled by an event in which he is not an actor. Slough, *supra;* McCormick, *supra;* 6 Wigmore § 1755; Annot. 78 A.L.R.2d 300.

Whether *proof of the startling event* may be made by the statement itself is largely an academic question, since in most cases there is present at least circumstantial evidence that something of a startling nature must have occurred. For cases in which the evidence consists of the condition of the declarant (injuries, state of shock), see *Insurance Co. v. Mosely,* 75 U.S. (8 Wall.) 397, 19 L.Ed. 437 (1869); *Wheeler v. United States,* 93 U.S. App.D.C. 159, 211 F.2d 19 (1953), cert. denied 347 U.S. 1019, 74 S.Ct. 876, 98 L.Ed. 1140; *Wetherbee v. Safety Casualty Co.,* 219 F.2d 274 (5th Cir.1955); *Lampe v. United States,* 97 U.S.App.D.C. 160, 229 F.2d 43 (1956). Nevertheless, on occasion the only evidence may be the content of the statement itself, and rulings that it may be sufficient are described as "increasing," Slough, *supra* at 246, and as the "prevailing practice," McCormick § 272, p. 579. Illustrative are *Armour & Co. v. Industrial Commission,* 78 Colo. 569, 243 P. 546 (1926); *Young v. Stewart,* 191 N.C. 297, 131 S.E. 735 (1926). Moreover, under Rule 104(a) the judge is not limited by the hearsay rule in passing upon preliminary questions of fact.

Proof of declarant's perception by his statement presents similar considerations when declarant is identified. *People v. Poland,* 22 Ill.2d 175, 174 N.E.2d 804 (1961). However, when declarant is an unidentified bystander, the cases indicate hesitancy in upholding the statement alone as sufficient, *Garrett v. Howden,* 73 N.M. 307, 387 P.2d 874 (1963); *Beck v. Dye,* 200 Wash. 1, 92 P.2d 1113 (1939), a result which would under appropriate circumstances be consistent with the rule.

Permissible *subject matter* of the statement is limited under Exception [paragraph] (1) to description or explanation of the event or condition, the assumption being that spontaneity, in the absence of a startling event, may extend no farther. In Exception [paragraph] (2), however, the statement need only "relate" to the startling event or condition, thus affording a broader scope of subject matter coverage. 6 Wigmore §§ 1750, 1754. See *Sanitary Grocery Co. v. Snead,* 67 App.D.C. 129, 90 F.2d 374 (1937), slip-and-fall case sustaining admissibility of clerk's statement. "That has been on the floor for a couple of hours," and *Murphy Auto Parts Co., Inc. v. Ball,* 101 U.S.App.D.C. 416, 249 F.2d 508 (1957), upholding admission, on issue of driver's agency, of

---

Add-133

his statement that he had to call on a customer and was in a hurry to get home. Quick, Hearsay, Excitement, Necessity and the Uniform Rules: A Reappraisal of Rule 63(4), 6 Wayne L.Rev. 204, 206-209 (1960).

Similar provisions are found in Uniform Rule 63(4)(a) and (b); California Evidence Code § 1240 (as to Exception (2) only); Kansas Code of Civil Procedure § 60-460(d)(1) and (2); New Jersey Evidence Rule 63(4).

**Note to Paragraph (3).** Exception [paragraph] (3) is essentially a specialized application of Exception [paragraph] (1), presented separately to enhance its usefulness and accessibility. See McCormick §§ 265, 268.

The exclusion of "statements of memory or belief to prove the fact remembered or believed" is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind. *Shepard v. United States,* 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933); Maguire, The Hillmon Case--Thirty-three Years After, 38 Harv.L.Rev. 709, 719-731 (1925); Hinton, States of Mind and the Hearsay Rule, 1 U.Chi.L.Rev. 394, 421-423 (1934). The rule of *Mutual Life Ins. Co. v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892), allowing evidence of intention as tending to prove the doing of the act intended, is, of course, left undisturbed.

The carving out, from the exclusion mentioned in the preceding paragraph, of declarations relating to the execution, revocation, identification, or terms of declarant's will represents and *ad hoc* judgment which finds ample reinforcement in the decisions, resting on practical grounds of necessity and expediency rather than logic. McCormick § 271, pp. 577-578; Annot. 34 A.L.R.2d 588, 62 A.L.R.2d 855. A similar recognition of the need for and practical value of this kind of evidence is found in California Evidence Code § 1260.

**Note to Paragraph (4).** Even those few jurisdictions which have shied away from generally admitting statements of present condition have allowed them if made to a physician for purposes of diagnosis and treatment in view of the patient's strong motivation to be truthful. McCormick § 266, p. 563. The same guarantee of trustworthiness extends to statements of past conditions and medical history, made for purposes of diagnosis or treatment. It also extends to statements as to causation, reasonably pertinent to the same purposes, in accord with the current trend. *Shell Oil Co. v. Industrial Commission,* 2 Ill.2d 590, 119 N.E.2d 224 (1954); McCormick § 266, p. 564; New Jersey Evidence Rule 63(12)(c). Statements as to fault would not ordinarily qualify under this latter language. Thus a patient's statement that he was struck by an automobile would qualify but not his statement that the car was driven through a red light. Under the exception the statement need not have been made to a physician. Statements to hospital attendants, ambulance drivers, or even members of the family might be included.

Conventional doctrine has excluded from the hearsay exception, as not within its guarantee of truthfulness, statements to a physician consulted only for the purpose of enabling him to testify. While these statements were not admissible as substantive evidence, the expert was allowed to state the basis of his opinion, including statements of this kind. The distinction thus called for was one most unlikely to be made by juries. The rule accordingly rejects the limitation. This position is consistent with the provision of Rule 703 that the facts on which expert testimony is based need not be admissible in evidence if of a kind ordinarily relied upon by experts in the field.

**Note to Paragraph (5).** A hearsay exception for recorded recollection is generally recognized and has been described as having "long been favored by the federal and practically all the state courts that have had occasion to decide the question." *United States v. Kelly,* 349 F.2d 720, 770 (2d Cir.1965), citing numerous cases and sustaining the exception against a claimed denial of the right of confrontation. Many additional cases are cited in Annot., 82 A.L.R.2d 473, 520. The guarantee of trustworthiness is found in the reliability inherent in a record made while events were still fresh in mind and accurately reflecting them. *Owens v. State,* 67 Md. 307, 316, 10 A. 210, 212 (1887).

The principal controversy attending the exception has centered, not upon the propriety of the exception itself, but upon the question whether a preliminary requirement of impaired memory on the part of the witness should be imposed. The authorities

**Add-134**

are divided. If regard be had only to the accuracy of the evidence, admittedly impairment of the memory of the witness adds nothing to it and should not be required. McCormick § 277, p. 593; 3 Wigmore § 738, p. 76; *Jordan v. People,* 151 Colo. 133, 376 P.2d 699 (1962), cert. denied 373 U.S. 944, 83 S.Ct. 1553, 10 L.Ed.2d 699; *Hall v. State,* 223 Md. 158, 162 A.2d 751 (1960); *State v. Bindhammer,* 44 N.J. 372, 209 A.2d 124 (1965). Nevertheless, the absence of the requirement, it is believed, would encourage the use of statements carefully prepared for purposes of litigation under the supervision of attorneys, investigators, or claim adjusters. Hence the example includes a requirement that the witness not have "sufficient recollection to enable him to testify fully and accurately." To the same effect are California Evidence Code § 1237 and New Jersey Rule 63(1)(b), and this has been the position of the federal courts. *Vicksburg & Meridian R.R. v. O'Brien,* 119 U.S. 99, 7 S.Ct. 118, 30 L.Ed. 299 (1886); *Ahern v. Webb,* 268 F.2d 45 (10th Cir.1959); and see *N.L.R.B. v. Hudson Pulp and Paper Corp.,* 273 F.2d 660, 665 (5th Cir.1960); *N.L.R.B. v. Federal Dairy Co.,* 297 F.2d 487 (1st Cir.1962). But cf. *United States v. Adams,* 385 F.2d 548 (2d Cir.1967).

No attempt is made in the exception to spell out the method of establishing the initial knowledge or the contemporaneity and accuracy of the record, leaving them to be dealt with as the circumstances of the particular case might indicate. Multiple person involvement in the process of observing and recording, as in *Rathbun v. Brancatella,* 93 N.J.L. 222, 107 A. 279 (1919), is entirely consistent with the exception.

Locating the exception at this place in the scheme of the rules is a matter of choice. There were two other possibilities. The first was to regard the statement as one of the group of prior statements of a testifying witness which are excluded entirely from the category of hearsay by Rule 801(d)(1). That category, however, requires that declarant be "subject to cross-examination," as to which the impaired memory aspect of the exception raises doubts. The other possibility was to include the exception among those covered by Rule 804. Since unavailability is required by that rule and lack of memory is listed as a species of unavailability by the definition of the term in Rule 804(a)(3), that treatment at first impression would seem appropriate. The fact is, however, that the unavailability requirement of the exception is of a limited and peculiar nature. Accordingly, the exception is located at this point rather than in the context of a rule where unavailability is conceived of more broadly.

**Note to Paragraph (6).** Exception [paragraph] (6) represents an area which has received much attention from those seeking to improve the law of evidence. The Commonwealth Fund Act was the result of a study completed in 1927 by a distinguished committee under the chairmanship of Professor Morgan. Morgan et al., The Law of Evidence: Some Proposals for its Reform 63 (1927). With changes too minor to mention, it was adopted by Congress in 1936 as the rule for federal courts. 28 U.S.C. § 1732. A number of states took similar action. The Commissioners on Uniform State Laws in 1936 promulgated the Uniform Business Records as Evidence Act, 9A U.L.A. 506, which has acquired a substantial following in the states. Model Code Rule 514 and Uniform Rule 63(13) also deal with the subject. Difference of varying degrees of importance exist among these various treatments.

These reform efforts were largely within the context of business and commercial records, as the kind usually encountered, and concentrated considerable attention upon relaxing the requirement of producing as witnesses, or accounting for the nonproduction of, all participants in the process of gathering, transmitting, and recording information which the common law had evolved as a burdensome and crippling aspect of using records of this type. In their areas of primary emphasis on witnesses to be called and the general admissibility of ordinary business and commercial records, the Commonwealth Fund Act and the Uniform Act appear to have worked well. The exception seeks to preserve their advantages.

On the subject of what witnesses must be called, the Commonwealth Fund Act eliminated the common law requirement of calling or accounting for all participants by failing to mention it. *United States v. Mortimer,* 118 F.2d 266 (2d Cir.1941); *La Porte v. United States,* 300 F.2d 878 (9th Cir.1962); McCormick § 290, p. 608. Model Code Rule 514 and Uniform Rule 63(13) did likewise. The Uniform Act, however, abolished the common law requirement in express terms, providing that the requisite foundation testimony might be furnished by "the custodian or other qualified witness." Uniform Business Records as Evidence Act, § 2; 9A U.L.A. 506. The exception follows the Uniform Act in this respect.

The element of unusual reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation. McCormick §§ 281, 286, 287; Laughlin, Business Entries and the Like, 46 Iowa L.Rev. 276 (1961). The model statutes and rules have sought to capture these factors and to extend their impact by employing the phrase "regular course of business," in conjunction with a definition of "business" far broader than its ordinarily accepted meaning. The result is a tendency unduly to emphasize a requirement of routineness and repetitiveness and an insistence that other types of records be squeezed into the fact patterns which give rise to traditional business records. The rule therefore adopts the phrase "the course of a regularly conducted activity" as capturing the essential basis of the hearsay exception as it has evolved and the essential element which can be abstracted from the various specifications of what is a "business."

Amplification of the kinds of activities producing admissible records has given rise to problems which conventional business records by their nature avoid. They are problems of the source of the recorded information, of entries in opinion form, of motivation, and of involvement as participant in the matters recorded.

Sources of information presented no substantial problem with ordinary business records. All participants, including the observer or participant furnishing the information to be recorded, were acting routinely, under a duty of accuracy, with employer reliance on the result, or in short "in the regular course of business." If, however, the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail. An illustration is the police report incorporating information obtained from a bystander: the officer qualifies as acting in the regular course but the informant does not. The leading case, *Johnson v. Lutz,* 253 N.Y. 124, 170 N.E. 517 (1930), held that a report thus prepared was inadmissible. Most of the authorities have agreed with the decision. *Gencarella v. Fyfe,* 171 F.2d 419 (1st Cir.1948); *Gordon v. Robinson,* 210 F.2d 192 (3d Cir.1954); *Standard Oil Co. of California v. Moore,* 251 F.2d 188, 214 (9th Cir.1957), cert. denied 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148; *Yates v. Bair Transport,* Inc., 249 F.Supp. 681 (S.D.N.Y.1965); Annot., 69 A.L.R.2d 1148. Cf. *Hawkins v. Gorea Motor Express, Inc.,* 360 F.2d 933 (2d Cir.1966); *Contra,* 5 Wigmore § 1530a, n. 1, pp. 391-392. The point is not dealt with specifically in the Commonwealth Fund Act, the Uniform Act, or Uniform Rule 63(13). However, Model Code Rule 514 contains the requirement "that it was the regular course of that business for one with personal knowledge * * * to make such a memorandum or record or to transmit information thereof to be included in such a memorandum or record * * *." The rule follows this lead in requiring an informant with knowledge acting in the course of the regularly conducted activity.

Entries in the form of opinions were not encountered in traditional business records in view of the purely factual nature of the items recorded, but they are now commonly encountered with respect to medical diagnoses, prognoses, and test results, as well as occasionally in other areas. The Commonwealth Fund Act provided only for records of an "act, transaction, occurrence, or event," while the Uniform Act, Model Code Rule 514, and Uniform Rule 63(13) merely added the ambiguous term "condition." The limited phrasing of the Commonwealth Fund Act, 28 U.S.C. § 1732, may account for the reluctance of some federal decisions to admit diagnostic entries. *New York Life Ins. Co. v. Taylor,* 79 U.S.App.D.C. 66, 147 F.2d 297 (1945); *Lyles v. United States,* 103 U.S.App.D.C. 22, 254 F.2d 725 (1957), cert. denied 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067; *England v. United States,* 174 F.2d 466 (5th Cir.1949); *Skogen v. Dow Chemical Co.,* 375 F.2d 692 (8th Cir.1967). Other federal decisions, however, experienced no difficulty in freely admitting diagnostic entries. *Reed v. Order of United Commercial Travelers,* 123 F.2d 252 (2d Cir.1941); *Buckminster's Estate v. Commissioner of Internal Revenue,* 147 F.2d 331 (2d Cir.1944); *Medina v. Erickson,* 226 F.2d 475 (9th Cir.1955); *Thomas v. Hogan,* 308 F.2d 355 (4th Cir.1962); *Glawe v. Rulon,* 284 F.2d 495 (8th Cir.1960). In the state courts, the trend favors admissibility. *Borucki v. MacKenzie Bros. Co.,* 125 Conn. 92, 3 A.2d 224 (1938); *Allen v. St. Louis Public Service Co.,* 365 Mo. 677, 285 S.W.2d 663, 55 A.L.R.2d 1022 (1956); *People v. Kohlmeyer,* 284 N.Y. 366, 31 N.E.2d 490 (1940); *Weis v. Weis,* 147 Ohio St. 416, 72 N.E.2d 245 (1947). In order to make clear its adherence to the latter position, the rule specifically includes both diagnoses and opinions, in addition to acts, events, and conditions, as proper subjects of admissible entries.

Problems of the motivation of the informant have been a source of difficulty and disagreement. In *Palmer v. Hoffman,* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), exclusion of an accident report made by the since deceased engineer, offered by

Add-136

defendant railroad trustees in a grade crossing collision case, was upheld. The report was not "in the regular course of business," not a record of the systematic conduct of the business as a business, said the Court. The report was prepared for use in litigating, not railroading. While the opinion mentions the motivation of the engineer only obliquely, the emphasis on records of routine operations is significant only by virtue of impact on motivation to be accurate. Absence of routineness raises lack of motivation to be accurate. The opinion of the Court of Appeals had gone beyond mere lack of motive to be accurate: the engineer's statement was "dripping with motivations to misrepresent." *Hoffman v. Palmer,* 129 F.2d 976, 991 (2d Cir.1942). The direct introduction of motivation is a disturbing factor, since absence of motive to misrepresent has not traditionally been a requirement of the rule; that records might be self-serving has not been a ground for exclusion. Laughlin, Business Records and the Like, 46 Iowa L.Rev. 276, 285 (1961). As Judge Clark said in his dissent, "I submit that there is hardly a grocer's account book which could not be excluded on that basis." 129 F.2d at 1002. A physician's evaluation report of a personal injury litigant would appear to be in the routine of his business. If the report is offered by the party at whose instance it was made, however, it has been held inadmissible, *Yates v. Bair Transport, Inc.,* 249 F.Supp. 681 (S.D.N.Y.1965), otherwise if offered by the opposite party, *Korte v. New York, N.H. & H.R. Co.,* 191 F.2d 86 (2d Cir.1951), cert. denied 342 U.S. 868, 72 S.Ct. 108, 96 L.Ed. 652.

The decisions hinge on motivation and which party is entitled to be concerned about it. Professor McCormick believed that the doctor's report or the accident report were sufficiently routine to justify admissibility. McCormick § 287, p. 604. Yet hesitation must be experienced in admitting everything which is observed and recorded in the course of a regularly conducted activity. Efforts to set a limit are illustrated by *Hartzog v. United States,* 217 F.2d 706 (4th Cir.1954), error to admit worksheets made by since deceased deputy collector in preparation for the instant income tax evasion prosecution, and *United States v. Ware,* 247 F.2d 698 (7th Cir.1957), error to admit narcotics agents' records of purchases. See also Exception [paragraph] (8), *infra,* as to the public record aspects of records of this nature. Some decisions have been satisfied as to motivation of an accident report if made pursuant to statutory duty, United States v. New York Foreign Trade Zone Operators, 304 F.2d 792 (2d Cir.1962); Taylor v. Baltimore & O.R. Co., 344 F.2d 281 (2d Cir.1965), since the report was oriented in a direction other than the litigation which ensued. Cf. Matthews v. United States, 217 F.2d 409 (5th Cir.1954). The formulation of specific terms which would assure satisfactory results in all cases is not possible. Consequently the rule proceeds from the base that records made in the course of a regularly conducted activity will be taken as admissible but subject to authority to exclude if "the sources of information or other circumstances indicate lack of trustworthiness."

Occasional decisions have reached for enhanced accuracy by requiring involvement as a participant in matters reported. *Clainos v. United States,* 82 U.S.App.D.C. 278, 163 F.2d 593 (1947), error to admit police records of convictions; *Standard Oil Co. of California v. Moore,* 251 F.2d 188 (9th Cir.1957), cert. denied 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148, error to admit employees' records of observed business practices of others. The rule includes no requirement of this nature. Wholly acceptable records may involve matters merely observed, e.g. the weather.

The form which the "record" may assume under the rule is described broadly as a "memorandum, report, record, or data compilation, in any form." The expression "data compilation" is used as broadly descriptive of any means of storing information other than the conventional words and figures in written or documentary form. It includes, but is by no means limited to, electronic computer storage. The term is borrowed from revised Rule 34(a) of the Rules of Civil Procedure.

**Note to Paragraph (7).** Failure of a record to mention a matter which would ordinarily be mentioned is satisfactory evidence of its nonexistence. Uniform Rule 63(14), Comment. While probably not hearsay as defined in Rule 801, *supra,* decisions may be found which class the evidence not only as hearsay but also as not within any exception. In order to set the question at rest in favor of admissibility, it is specifically treated here. McCormick § 289, p. 609; Morgan, Basic Problems of Evidence 314 (1962); 5 Wigmore § 1531; Uniform Rule 63(14); California Evidence Code § 1272; Kansas Code of Civil Procedure § 60-460(n); New Jersey Evidence Rule 63(14).

**Note to Paragraph (8).** Public records are a recognized hearsay exception at common law and have been the subject of statutes without number. McCormick § 291. See, for example, 28 U.S.C. § 1733, the relative narrowness of which is illustrated by its nonapplicability to nonfederal public agencies, thus necessitating resort to the less appropriate business record exception to the

Add-137

hearsay rule. *Kay v. United States,* 255 F.2d 476 (4th Cir.1958). The rule makes no distinction between federal and nonfederal offices and agencies.

Justification for the exception is the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record. *Wong Wing Foo v. McGrath,* 196 F.2d 120 (9th Cir.1952), and see *Chesapeake & Delaware Canal Co. v. United States,* 250 U.S. 123, 39 S.Ct. 407, 63 L.Ed. 889 (1919). As to items (a) and (b), further support is found in the reliability factors underlying records of regularly conducted activities generally. See Exception [paragraph] (6), supra.

**(a)** Cases illustrating the admissibility of records of the office's or agency's own activities are numerous. *Chesapeake & Delaware Canal Co. v. United States,* 250 U.S. 123, 39 S.Ct. 407, 63 L.Ed. 889 (1919), Treasury records of miscellaneous receipts and disbursements; *Howard v. Perrin,* 200 U.S. 71, 26 S.Ct. 195, 50 L.Ed. 374 (1906), General Land Office records; *Ballew v. United States,* 160 U.S. 187, 16 S.Ct. 263, 40 L.Ed. 388 (1895). Pension Office records.

**(b)** Cases sustaining admissibility of records of matters observed are also numerous. *United States v. Van Hook,* 284 F.2d 489 (7th Cir.1960), remanded for resentencing 365 U.S. 609, 81 S.Ct. 823, 5 L.Ed.2d 821, letter from induction officer to District Attorney, pursuant to army regulations, stating fact and circumstances of refusal to be inducted; *T'Kach v. United States,* 242 F.2d 937 (5th Cir.1957), affidavit of White House personnel officer that search of records showed no employment of accused, charged with fraudulently representing himself as an envoy of the President; *Minnehaha County v. Kelley,* 150 F.2d 356 (8th Cir.1945); Weather Bureau records of rainfall; *United States v. Meyer,* 113 F.2d 387 (7th Cir.1940), cert. denied 311 U.S. 706, 61 S.Ct. 174, 85 L.Ed. 459, map prepared by government engineer from information furnished by men working under his supervision.

**(c)** The more controversial area of public records is that of the so-called "evaluative" report. The disagreement among the decisions has been due in part, no doubt, to the variety of situations encountered, as well as to differences in principle. Sustaining admissibility are such cases as *United States v. Dumas,* 149 U.S. 278, 13 S.Ct. 872, 37 L.Ed. 734 (1893), statement of account certified by Postmaster General in action against postmaster; *McCarty v. United States,* 185 F.2d 520 (5th Cir.1950), reh. denied 187 F.2d 234, Certificate of Settlement of General Accounting Office showing indebtedness and letter from Army official stating Government had performed, in action on contract to purchase and remove waste food from Army camp; *Moran v. Pittsburgh-Des Moines Steel Co.,* 183 F.2d 467 (3d Cir.1950), report of Bureau of Mines as to cause of gas tank explosion; *Petition of W___,* 164 F.Supp. 659 (E.D.Pa.1958), report by Immigration and Naturalization Service investigator that petitioner was known in community as wife of man to whom she was not married. To the opposite effect and denying admissibility are *Franklin v. Skelly Oil Co.,* 141 F.2d 568 (10th Cir.1944), State Fire Marshal's report of cause of gas explosion; *Lomax Transp. Co. v. United States,* 183 F.2d 331 (9th Cir.1950), Certificate of Settlement from General Accounting Office in action for naval supplies lost in warehouse fire; *Yung Jin Teung v. Dulles,* 229 F.2d 244 (2d Cir.1956), "Status Reports" offered to justify delay in processing passport applications. Police reports have generally been excluded except to the extent to which they incorporate firsthand observations of the officer. Annot., 69 A.L.R.2d 1148. Various kinds of evaluative reports are admissible under federal statutes: 7 U.S.C. § 78, findings of Secretary of Agriculture prima facie evidence of true grade of grain; 7 U.S.C. § 210(f), findings of Secretary of Agriculture prima facie evidence in action for damages against stockyard owner; 7 U.S.C. § 292, order by Secretary of Agriculture prima facie evidence in judicial enforcement proceedings against producers association monopoly; 7 U.S.C. § 1622(h), Department of Agriculture inspection certificates of products shipped in interstate commerce prima facie evidence; 8 U.S.C. § 1440(c), separation of alien from military service on conditions other than honorable provable by certificate from department in proceedings to revoke citizenship; 18 U.S.C. § 4245, certificate of Director of Prisons that convicted person has been examined and found probably incompetent at time of trial prima facie evidence in court hearing on competency; 42 U.S.C. § 269(b), bill of health by appropriate official prima facie evidence of vessel's sanitary history and condition and compliance with regulations; 46 U.S.C. § 679, certificate of consul presumptive evidence of refusal of master to transport destitute seamen to United States. While these statutory exceptions to the hearsay rule are left undisturbed, Rule 802, the willingness of Congress to recognize a substantial measure of admissibility for evaluative reports is a helpful guide.

Factors which may be of assistance in passing upon the admissibility of evaluative reports include: (1) the timeliness of the investigation, McCormick, Can the Courts Make Wider Use of Reports of Official Investigations? 42 Iowa L.Rev. 363 (1957); (2) the special skill or experience of the official, *id.,* (3) whether a hearing was held and the level at which conducted, Franklin v. Skelly Oil Co., 141 F.2d 568 (10th Cir.1944); (4) possible motivation problems suggested by Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943). Others no doubt could be added.

The formulation of an approach which would give appropriate weight to all possible factors in every situation is an obvious impossibility. Hence the rule, as in Exception [paragraph] (6), assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present. In one respect, however, the rule with respect to evaluative reports under item (c) is very specific: they are admissible only in civil cases and against the government in criminal cases in view of the almost certain collision with confrontation rights which would result from their use against the accused in a criminal case.

**Note to Paragraph (9).** Records of vital statistics are commonly the subject of particular statutes making them admissible in evidence, Uniform Vital Statistics Act, 9C U.L.A. 350 (1957). The rule is in principle narrower than Uniform Rule 63(16) which includes reports required of persons performing functions authorized by statute, yet in practical effect the two are substantially the same. Comment Uniform Rule 63(16). The exception as drafted is in the pattern of California Evidence Code § 1281.

**Note to Paragraph (10).** The principle of proving nonoccurrence of an event by evidence of the absence of a record which would regularly be made of its occurrence, developed in Exception [paragraph] (7) with respect to regularly conducted activities, is here extended to public records of the kind mentioned in Exceptions [paragraphs] (8) and (9). 5 Wigmore § 1633(6), p. 519. Some harmless duplication no doubt exists with Exception [paragraph] (7). For instances of federal statutes recognizing this method of proof, see 8 U.S.C. § 1284(b), proof of absence of alien crewman's name from outgoing manifest prima facie evidence of failure to detain or deport, and 42 U.S.C. § 405(c)(3), (4)(B), (4)(C), absence of HEW [Department of Health, Education, and Welfare] record prima facie evidence of no wages or self-employment income.

The rule includes situations in which absence of a record may itself be the ultimate focal point of inquiry, e.g. People v. Love, 310 Ill. 558, 142 N.E. 204 (1923), certificate of Secretary of State admitted to show failure to file documents required by Securities Law, as well as cases where the absence of a record is offered as proof of the nonoccurrence of an event ordinarily recorded.

The refusal of the common law to allow proof by certificate of the lack of a record or entry has no apparent justification, 5 Wigmore § 1678(7), p. 752. The rule takes the opposite position, as to Uniform Rule 63(17); California Evidence Code § 1284; Kansas Code of Civil Procedure § 60-460(c); New Jersey Evidence Rule 63(17). Congress has recognized certification as evidence of the lack of a record. 8 U.S.C. § 1360(d), certificate of Attorney General or other designated officer that no record of Immigration and Naturalization Service of specified nature or entry therein is found, admissible in alien cases.

**Note to Paragraph (11).** Records of activities of religious organizations are currently recognized as admissible at least to the extent of the business records exception to the hearsay rule, 5 Wigmore § 1523, p. 371, and Exception [paragraph] (6) would be applicable. However, both the business record doctrine and Exception [paragraph] (6) require that the person furnishing the information be one in the business or activity. The result is such decisions as Daily v. Grand Lodge, 311 Ill. 184, 142 N.E. 478 (1924), holding a church record admissible to prove fact, date, and place of baptism, but not age of child except that he had at least been born at the time. In view of the unlikelihood that false information would be furnished on occasions of this kind, the rule contains no requirement that the informant be in the course of the activity. See California Evidence Code § 1315 and Comment.

**Note to Paragraph (12).** The principle of proof by certification is recognized as to public officials in Exceptions [paragraphs] (8) and (10), and with respect to authentication in Rule 902. The present exception is a duplication to the extent that it deals with a certificate by a public official, as in the case of a judge who performs a marriage ceremony. The area covered by the rule is, however, substantially larger and extends the certification procedure to clergymen and the like who perform marriages and other ceremonies or administer sacraments. Thus certificates of such matters as baptism or confirmation, as well as marriage,

are included. In principle they are as acceptable evidence as certificates of public officers. See 5 Wigmore § 1645, as to marriage certificates. When the person executing the certificate is not a public official, the self-authenticating character of documents purporting to emanate from public officials, see Rule 902, is lacking and proof is required that the person was authorized and did make the certificate. The time element, however, may safely be taken as supplied by the certificate, once authority and authenticity are established, particularly in view of the presumption that a document was executed on the date it bears.

For similar rules, some limited to certificates of marriage, with variations in foundation requirements, see Uniform Rule 63(18); California Evidence Code § 1316; Kansas Code of Civil Procedure § 60-460(p); New Jersey Evidence Rule 63(18).

**Note to Paragraph (13).** Records of family history kept in family Bibles have by long tradition been received in evidence. 5 Wigmore §§ 1495, 1496, citing numerous statutes and decisions. See also Regulations, Social Security Administration, 20 C.F.R. § 404.703(c), recognizing family Bible entries as proof of age in the absence of public or church records. Opinions in the area also include inscriptions on tombstones, publicly displayed pedigrees, and engravings on rings. Wigmore, *supra*. The rule is substantially identical in coverage with California Evidence Code § 1312.

**Note to Paragraph (14).** The recording of title documents is a purely statutory development. Under any theory of the admissibility of public records, the records would be receivable as evidence of the contents of the recorded document, else the recording process would be reduced to a nullity. When, however, the record is offered for the further purpose of proving execution and delivery, a problem of lack of firsthand knowledge by the recorder, not present as to contents, is presented. This problem is solved, seemingly in all jurisdictions, by qualifying for recording only those documents shown by a specified procedure, either acknowledgement or a form of probate, to have been executed and delivered. 5 Wigmore §§ 1647-1651. Thus what may appear in the rule, at first glance, as endowing the record with an effect independently of local law and inviting difficulties of an *Erie* nature under *Cities Service Oil Co. v. Dunlap,* 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196 (1939), is not present, since the local law in fact governs under the example.

**Note to Paragraph (15).** Dispositive documents often contain recitals of fact. Thus a deed purporting to have been executed by an attorney in fact may recite the existence of the power of attorney, or a deed may recite that the grantors are all the heirs of the last record owner. Under the rule, these recitals are exempted from the hearsay rule. The circumstances under which dispositive documents are executed and the requirement that the recital be germane to the purpose of the document are believed to be adequate guarantees of trustworthiness, particularly in view of the nonapplicability of the rule if dealings with the property have been inconsistent with the document. The age of the document is of no significance, though in practical application the document will most often be an ancient one. See Uniform Rule 63(29), Comment.

Similar provisions are contained in Uniform Rule 63(29); California Evidence Code § 1330; Kansas Code of Civil Procedure § 60-460(aa); New Jersey Evidence Rule 63(29).

**Note to Paragraph (16).** Authenticating a document as ancient, essentially in the pattern of the common law, as provided in Rule 901(b)(8), leaves open as a separate question the admissibility of assertive statements contained therein as against a hearsay objection. 7 Wigmore § 2145a. Wigmore further states that the ancient document technique of authentication is universally conceded to apply to all sorts of documents, including letters, records, contracts, maps, and certificates, in addition to title documents, citing numerous decisions. *Id.* § 2145. Since most of these items are significant evidentially only insofar as they are assertive, their admission in evidence must be as a hearsay exception. But see 5 *id.* § 1573, p. 429, referring to recitals in ancient deeds as a "limited" hearsay exception. The former position is believed to be the correct one in reason and authority. As pointed out in McCormick § 298, danger of mistake is minimized by authentication requirements, and age affords assurance that the writing antedates the present controversy. See *Dallas County v. Commercial Union Assurance Co.,* 286 F.2d 388 (5th Cir.1961), upholding admissibility of 58-year-old newspaper story. Cf. Morgan, Basic Problems of Evidence 364 (1962), but see *id.* 254.

For a similar provision, but with the added requirement that "the statement has since generally been acted upon as true by persons having an interest in the matter," see California Evidence Code § 1331.

**Note to Paragraph (17).** Ample authority at common law supported the admission in evidence of items falling in this category. While Wigmore's text is narrowly oriented to lists, etc., prepared for the use of a trade or profession, 6 Wigmore § 1702, authorities are cited which include other kinds of publications, for example, newspaper market reports, telephone directories, and city directories. *Id.* §§ 1702-1706. The basis of trustworthiness is general reliance by the public or by a particular segment of it, and the motivation of the compiler to foster reliance by being accurate.

For similar provisions, see Uniform Rule 63(30); California Evidence Code § 1340; Kansas Code of Civil Procedure § 60-460(bb); New Jersey Evidence Rule 63(30). Uniform Commercial Code § 2-724 provides for admissibility in evidence of "reports in official publications or trade journals or in newspapers or periodicals of general circulation published as the reports of such [established commodity] market."

**Note to Paragraph (18).** The writers have generally favored the admissibility of learned treatises, McCormick § 296, p. 621; Morgan, Basic Problems of Evidence 366 (1962); 6 Wigmore § 1692, with the support of occasional decisions and rules, *City of Dothan v. Hardy,* 237 Ala. 603, 188 So. 264 (1939); *Lewandowski v. Preferred Risk Mut. Ins. Co.,* 33 Wis.2d 69, 146 N.W.2d 505 (1966), 66 Mich.L.Rev. 183 (1967); Uniform Rule 63(31); Kansas Code of Civil Procedure § 60-460(cc), but the great weight of authority has been that learned treatises are not admissible as substantive evidence though usable in the cross-examination of experts. The foundation of the minority view is that the hearsay objection must be regarded as unimpressive when directed against treatises since a high standard of accuracy is engendered by various factors: the treatise is written primarily and impartially for professionals, subject to scrutiny and exposure for inaccuracy, with the reputation of the writer at stake. 6 Wigmore § 1692. Sound as this position may be with respect to trustworthiness, there is, nevertheless, an additional difficulty in the likelihood that the treatise will be misunderstood and misapplied without expert assistance and supervision. This difficulty is recognized in the cases demonstrating unwillingness to sustain findings relative to disability on the basis of judicially noticed medical texts. *Ross v. Gardner,* 365 F.2d 554 (6th Cir.1966); *Sayers v. Gardner,* 380 F.2d 940 (6th Cir.1967); *Colwell v. Gardner,* 386 F.2d 56 (6th Cir.1967); *Glendenning v. Ribicoff,* 213 F.Supp. 301 (W.D.Mo.1962); *Cook v. Celebrezze,* 217 F.Supp. 366 (W.D.Mo.1963); *Sosna v. Celebrezze,* 234 F.Supp. 289 (E.D.Pa.1964); and see *McDaniel v. Celebrezze,* 331 F.2d 426 (4th Cir.1964). The rule avoids the danger of misunderstanding and misapplication by limiting the use of treatises as substantive evidence to situations in which an expert is on the stand and available to explain and assist in the application of the treatise if desired. The limitation upon receiving the publication itself physically in evidence, contained in the last sentence, is designed, to further this policy.

The relevance of the use of treatises on cross-examination is evident. This use of treatises has been the subject of varied views. The most restrictive position is that the witness must have stated expressly on direct his reliance upon the treatise. A slightly more liberal approach still insists upon reliance but allows it to be developed on cross-examination. Further relaxation dispenses with reliance but requires recognition as an authority by the witness, developable on cross-examination. The greatest liberality is found in decisions allowing use of the treatise on cross-examination when its status as an authority is established by any means. Annot., 60 A.L.R.2d 77. The exception is hinged upon this last position, which is that of the Supreme Court, *Reilly v. Pinkus,* 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63 (1949), and of recent well considered state court decisions, *City of St. Petersburg v. Ferguson,* 193 So.2d 648 (Fla.App.1967), cert. denied Fla., 201 So.2d 556; *Darling v. Charleston Memorial Community Hospital,* 33 Ill.2d 326, 211 N.E.2d 253 (1965); *Dabroe v. Rhodes Co.,* 64 Wash.2d 431, 392 P.2d 317 (1964).

In Reilly v. Pinkus, *supra,* the Court pointed out that testing of professional knowledge was incomplete without exploration of the witness' knowledge of and attitude toward established treatises in the field. The process works equally well in reverse and furnishes the basis of the rule.

The rule does not require that the witness rely upon or recognize the treatise as authoritative, thus avoiding the possibility that the expert may at the outset block cross-examination by refusing to concede reliance or authoritativeness. Dabroe v. Rhodes Co., *supra.* Moreover, the rule avoids the unreality of admitting evidence for the purpose of impeachment only, with an instruction

to the jury not to consider it otherwise. The parallel to the treatment of prior inconsistent statements will be apparent. See Rules 613(b) and 801(d)(1).

**Note to Paragraphs (19), (20) and (21).** Trustworthiness in reputation evidence is found "when the topic is such that the facts are likely to have been inquired about and that persons having personal knowledge have disclosed facts which have thus been discussed in the community; and thus the community's conclusion, if any has been formed, is likely to be a trustworthy one." 5 Wigmore § 1580, p. 444, and see also § 1583. On this common foundation, reputation as to land boundaries, customs, general history, character, and marriage have come to be regarded as admissible. The breadth of the underlying principle suggests the formulation of an equally broad exception, but tradition has in fact been much narrower and more particularized, and this is the pattern of these exceptions in the rule.

Exception [paragraph] (19) is concerned with matters of personal and family history. Marriage is universally conceded to be a proper subject of proof by evidence of reputation in the community. 5 Wigmore § 1602. As to such items as legitimacy, relationship, adoption, birth, and death, the decisions are divided. *Id.* § 1605. All seem to be susceptible to being the subject of well founded repute. The "world" in which the reputation may exist may be family, associates, or community. This world has proved capable of expanding with changing times from the single uncomplicated neighborhood, in which all activities take place, to the multiple and unrelated worlds of work, religious affiliation, and social activity, in each of which a reputation may be generated. *People v. Reeves,* 360 Ill. 55, 195 N.E. 443 (1935); *State v. Axilrod,* 248 Minn. 204, 79 N.W.2d 677 (1956); Mass.Stat.1947, c. 410, M.G.L.A. c. 233 § 21A; 5 Wigmore § 1616. The family has often served as the point of beginning for allowing community reputation. 5 Wigmore § 1488. For comparable provisions see Uniform Rule 63(26), (27)(c); California Evidence Code §§ 1313, 1314; Kansas Code of Civil Procedure § 60-460(x), (y)(3); New Jersey Evidence Rule 63(26), (27)(c).

The first portion of Exception [paragraph] (20) is based upon the general admissibility of evidence of reputation as to land boundaries and land customs, expanded in this country to include private as well as public boundaries. McCormick § 299, p. 625. The reputation is required to antedate the controversy, though not to be ancient. The second portion is likewise supported by authority, *id.,* and is designed to facilitate proof of events when judicial notice is not available. The historical character of the subject matter dispenses with any need that the reputation antedate the controversy with respect to which it is offered. For similar provisions see Uniform Rule 63(27)(a), (b); California Evidence Code §§ 1320-1322; Kansas Code of Civil Procedure § 60-460(y), (1), (2); New Jersey Evidence Rule 63(27)(a), (b).

Exception [paragraph] (21) recognizes the traditional acceptance of reputation evidence as a means of proving human character. McCormick §§ 44, 158. The exception deals only with the hearsay aspect of this kind of evidence. Limitations upon admissibility based on other grounds will be found in Rules 404, relevancy of character evidence generally, and 608, character of witness. The exception is in effect a reiteration, in the context of hearsay, of Rule 405(a). Similar provisions are contained in Uniform Rule 63(28); California Evidence Code § 1324; Kansas Code of Civil Procedure § 60-460(z); New Jersey Evidence Rule 63(28).

**Note to Paragraph (22).** When the status of a former judgment is under consideration in subsequent litigation, three possibilities must be noted: (1) the former judgment is conclusive under the doctrine of res judicata, either as a bar or a collateral estoppel; or (2) it is admissible in evidence for what it is worth; or (3) it may be of no effect at all. The first situation does not involve any problem of evidence except in the way that principles of substantive law generally bear upon the relevancy and materiality of evidence. The rule does not deal with the substantive effect of the judgment as a bar or collateral estoppel. When, however, the doctrine of res judicata does not apply to make the judgment either a bar or a collateral estoppel, a choice is presented between the second and third alternatives. The rule adopts the second for judgments of criminal conviction of felony grade. This is the direction of the decisions, Annot., 18 A.L.R.2d 1287, 1299, which manifest an increasing reluctance to reject *in toto* the validity of the law's factfinding processes outside the confines of res judicata and collateral estoppel. While this may leave a jury with the evidence of conviction but without means to evaluate it, as suggested by Judge Hinton, Note 27 Ill.L.Rev. 195 (1932), it seems safe to assume that the jury will give it substantial effect unless defendant offers a satisfactory explanation, a possibility not foreclosed by the provision. But see *North River Ins. Co. v. Militello,* 104 Colo. 28, 88 P.2d 567 (1939), in which the jury found for plaintiff on a fire policy despite the introduction of his conviction for arson. For supporting federal decisions see

Add-142

Clark, J., in *New York & Cuba Mail S.S. Co. v. Continental Cas. Co.,* 117 F.2d 404, 411 (2d Cir.1941); *Connecticut Fire Ins. Co. v. Farrara,* 277 F.2d 388 (8th Cir.1960).

Practical considerations require exclusion of convictions of minor offenses, not because the administration of justice in its lower echelons must be inferior, but because motivation to defend at this level is often minimal or nonexistent. *Cope v. Goble,* 39 Cal.App.2d 448, 103 P.2d 598 (1940); *Jones v. Talbot,* 87 Idaho 498, 394 P.2d 316 (1964); *Warren v. Marsh,* 215 Minn. 615, 11 N.W.2d 528 (1943); Annot., 18 A.L.R.2d 1287, 1295-1297; 16 Brooklyn L.Rev. 286 (1950); 50 Colum.L.Rev. 529 (1950); 35 Cornell L.Q. 872 (1950). Hence the rule includes only convictions of felony grade, measured by federal standards.

Judgments of conviction based upon pleas of *nolo contendere* are not included. This position is consistent with the treatment of *nolo* pleas in Rule 410 and the authorities cited in the Advisory Committee's Note in support thereof.

While these rules do not in general purport to resolve constitutional issues, they have in general been drafted with a view to avoiding collision with constitutional principles. Consequently the exception does not include evidence of the conviction of a third person, offered against the accused in a criminal prosecution to prove any fact essential to sustain the judgment of conviction. A contrary position would seem clearly to violate the right of confrontation. *Kirby v. United States,* 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890 (1899), error to convict of possessing stolen postage stamps with the only evidence of theft being the record of conviction of the thieves. The situation is to be distinguished from cases in which conviction of another person is an element of the crime, e.g. 15 U.S.C. § 902(d), interstate shipment of firearms to a known convicted felon, and, as specifically provided, from impeachment.

For comparable provisions see Uniform Rule 63(20); California Evidence Code § 1300; Kansas Code of Civil Procedure § 60-460(r); New Jersey Evidence Rule 63(20).

**Note to Paragraph (23).** A hearsay exception in this area was originally justified on the ground that verdicts were evidence of reputation. As trial by jury graduated from the category of neighborhood inquests, this theory lost its validity. It was never valid as to chancery decrees. Nevertheless the rule persisted, though the judges and writers shifted ground and began saying that the judgment or decree was as good evidence as reputation. See *City of London v. Clerke,* Carth. 181, 90 Eng.Rep. 710 (K.B. 1691); *Neill v. Duke of Devonshire,* 8 App.Cas. 135 (1882). The shift appears to be correct, since the process of inquiry, sifting, and scrutiny which is relied upon to render reputation reliable is present in perhaps greater measure in the process of litigation. While this might suggest a broader area of application, the affinity to reputation is strong, and paragraph [paragraph] (23) goes no further, not even including character.

The leading case in the United States, *Patterson v. Gaines,* 47 U.S. (6 How.) 550, 599, 12 L.Ed. 553 (1847), follows in the pattern of the English decisions, mentioning as illustrative matters thus provable: manorial rights, public rights of way, immemorial custom, disputed boundary, and pedigree. More recent recognition of the principle is found in *Grant Bros. Construction Co. v. United States,* 232 U.S. 647, 34 S.Ct. 452, 58 L.Ed. 776 (1914), in action for penalties under Alien Contract Labor Law, decision of board of inquiry of Immigration Service admissible to prove alienage of laborers, as a matter of pedigree; *United States v. Mid-Continent Petroleum Corp.,* 67 F.2d 37 (10th Cir.1933), records of commission enrolling Indians admissible on pedigree; *Jung Yen Loy v. Cahill,* 81 F.2d 809 (9th Cir.1936), board decisions as to citizenship of plaintiff's father admissible in proceeding for declaration of citizenship. *Contra,* In re Estate of Cunha, 49 Haw. 273, 414 P.2d 925 (1966).

**1974 Enactment**

**Note to Paragraph (3).** Rule 803(3) was approved in the form submitted by the Court to Congress. However, the Committee intends that the Rule be construed to limit the doctrine of *Mutual Life Insurance Co. v. Hillmon,* 145 U.S. 285, 295-300 (1892), so as to render statements of intent by a declarant admissible only to prove his future conduct, not the future conduct of another person.

Add-143

**Note to Paragraph (4).** After giving particular attention to the question of physical examination made solely to enable a physician to testify, the Committee approved Rule 803(4) as submitted to Congress, with the understanding that it is not intended in any way to adversely affect present privilege rules or those subsequently adopted.

**Note to Paragraph (5).** Rule 803(5) as submitted by the Court permitted the reading into evidence of a memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify accurately and fully, "shown to have been made when the matter was fresh in his memory and to reflect that knowledge correctly." The Committee amended this Rule to add the words "or adopted by the witness" after the phrase "shown to have been made", a treatment consistent with the definition of "statement" in the Jencks Act, 18 U.S.C. 3500. Moreover, it is the Committee's understanding that a memorandum or report, although barred under this Rule, would nonetheless be admissible if it came within another hearsay exception. This last stated principle is deemed applicable to all the hearsay rules.

**Note to Paragraph (6).** Rule 803(6) as submitted by the Court permitted a record made "in the course of a regularly conducted activity" to be admissible in certain circumstances. The Committee believed there were insufficient guarantees of reliability in records made in the course of activities falling outside the scope of "business" activities as that term is broadly defined in 28 U.S.C. 1732. Moreover, the Committee concluded that the additional requirement of Section 1732 that it must have been the regular practice of a business to make the record is a necessary further assurance of its trustworthiness. The Committee accordingly amended the Rule to incorporate these limitations.

**Note to Paragraph (7).** Rule 803(7) as submitted by the Court concerned the *absence* of entry in the records of a "regularly conducted activity." The Committee amended this Rule to conform with its action with respect to Rule 803(6).

**Note to Paragraph (8).** The Committee approved Rule 803(8) without substantive change from the form in which it was submitted by the Court. The Committee intends that the phrase "factual findings" be strictly construed and that evaluations or opinions contained in public reports shall not be admissible under this Rule.

**Note to Paragraph (13).** The Committee approved this Rule in the form submitted by the Court, intending that the phrase "Statements of fact concerning personal or family history" be read to include the specific types of such statements enumerated in Rule 803(11). House Report No. 93-650.

**Note to Paragraph (4).** The House approved this rule as it was submitted by the Supreme Court "with the understanding that it is not intended in any way to adversely affect present privilege rules." We also approve this rule, and we would point out with respect to the question of its relation to privileges, it must be read in conjunction with rule 35 of the Federal Rules of Civil Procedure which provides that whenever the physical or mental condition of a party (plaintiff or defendant) is in controversy, the court may require him to submit to an examination by a physician. It is these examinations which will normally be admitted under this exception.

**Note to Paragraph (5).** Rule 803(5) as submitted by the Court permitted the reading into evidence of a memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify accurately and fully, "shown to have been made when the matter was fresh in his memory and to reflect that knowledge correctly." The House amended the rule to add the words "or adopted by the witness" after the phrase "shown to have been made," language parallel to the Jencks Act [18 U.S.C. § 3500].

The committee accepts the House amendment with the understanding and belief that it was not intended to narrow the scope of applicability of the rule. In fact, we understand it to clarify the rule's applicability to a memorandum adopted by the witness as well as one made by him. While the rule as submitted by the Court was silent on the question of who made the memorandum, we view the House amendment as a helpful clarification, noting, however, that the Advisory Committee's note to this rule suggests that the important thing is the accuracy of the memorandum rather than who made it.

**Add-144**

The committee does not view the House amendment as precluding admissibility in situations in which multiple participants were involved.

When the verifying witness has not prepared the report, but merely examined it and found it accurate, he has adopted the report, and it is therefore admissible. The rule should also be interpreted to cover other situations involving multiple participants, e.g., employer dictating to secretary, secretary making memorandum at direction of employer, or information being passed along a chain of persons, as in *Curtis v. Bradley* [65 Conn. 99, 31 Atl. 591 (1894); see, also, *Rathbun v. Brancatella,* 93 N.J.L. 222, 107 Atl. 279 (1919); see, also, McCormick on Evidence, § 303 (2d ed. 1972) ].

The committee also accepts the understanding of the House that a memorandum or report, although barred under this rule, would nonetheless be admissible if it came within another hearsay exception. We consider this principle to be applicable to all the hearsay rules.

**Note to Paragraph (6).** Rule 803(6) as submitted by the Supreme Court permitted a record made in the course of a regularly conducted activity to be admissible in certain circumstances. This rule constituted a broadening of the traditional business records hearsay exception which has been long advocated by scholars and judges active in the law of evidence.

The House felt there were insufficient guarantees of reliability of records not within a broadly defined business records exception. We disagree. Even under the House definition of "business" including profession, occupation, and "calling of every kind," the records of many regularly conducted activities will, or may be, excluded from evidence. Under the principle of ejusdem generis, the intent of "calling of every kind" would seem to be related to work-related endeavors--e.g., butcher, baker, artist, etc.

Thus, it appears that the records of many institutions or groups might not be admissible under the House amendments. For example, schools, churches, and hospitals will not normally be considered businesses within the definition. Yet, these are groups which keep financial and other records on a regular basis in a manner similar to business enterprises. We believe these records are of equivalent trustworthiness and should be admitted into evidence.

Three states, which have recently codified their evidence rules, have adopted the Supreme Court version of rule 803(6), providing for admission of memoranda of a "regularly conducted activity." None adopted the words "business activity" used in the House amendment. [See Nev.Rev.Stats. § 15.135; N.Mex.Stats. (1973 Supp.) § 20-4-803(6); West's Wis.Stats.Anno. (1973 Supp.) § 908.03(6).]

Therefore, the committee deleted the word "business" as it appears before the word "activity". The last sentence then is unnecessary and was also deleted.

It is the understanding of the committee that the use of the phrase "person with knowledge" is not intended to imply that the party seeking to introduce the memorandum, report, record, or data compilation must be able to produce, or even identify, the specific individual upon whose first-hand knowledge the memorandum, report, record or data compilation was based. A sufficient foundation for the introduction of such evidence will be laid if the party seeking to introduce the evidence is able to show that it was the regular practice of the activity to base such memorandums, reports, records, or data compilations upon a transmission from a person with knowledge, e.g., in the case of the content of a shipment of goods, upon a report from the company's receiving agent or in the case of a computer printout, upon a report from the company's computer programmer or one who has knowledge of the particular record system. In short, the scope of the phrase "person with knowledge" is meant to be coterminous with the custodian of the evidence or other qualified witness. The committee believes this represents the desired rule in light of the complex nature of modern business organizations.

**Note to Paragraph (8).** The House approved rule 803(8), as submitted by the Supreme Court, with one substantive change. It excluded from the hearsay exception reports containing matters observed by police officers and other law enforcement personnel

Add-145

in criminal cases. Ostensibly, the reason for this exclusion is that observations by police officers at the scene of the crime or the apprehension of the defendant are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases.

The committee accepts the House's decision to exclude such recorded observations where the police officer is available to testify in court about his observation. However, where he is unavailable as unavailability is defined in rule 804(a)(4) and (a)(5), the report should be admitted as the best available evidence. Accordingly, the committee has amended rule 803(8) to refer to the provision of [proposed] rule 804(b)(5) [deleted], which allows the admission of such reports, records or other statements where the police officer or other law enforcement officer is unavailable because of death, then existing physical or mental illness or infirmity, or not being successfully subject to legal process.

The House Judiciary Committee report contained a statement of intent that "the phrase 'factual findings' in subdivision (c) be strictly construed and that evaluations or opinions contained in public reports shall not be admissible under this rule." The committee takes strong exception to this limiting understanding of the application of the rule. We do not think it reflects an understanding of the intended operation of the rule as explained in the Advisory Committee notes to this subsection. The Advisory Committee notes on subsection (c) of this subdivision point out that various kinds of evaluative reports are now admissible under Federal statutes. 7 U.S.C. § 78, findings of Secretary of Agriculture prima facie evidence of true grade of grain; 42 U.S.C. § 269(b), bill of health by appropriate official prima facie evidence of vessel's sanitary history and condition and compliance with regulations. These statutory exceptions to the hearsay rule are preserved. Rule 802. The willingness of Congress to recognize these and other such evaluative reports provides a helpful guide in determining the kind of reports which are intended to be admissible under this rule. We think the restrictive interpretation of the House overlooks the fact that while the Advisory Committee assumes admissibility in the first instance of evaluative reports, they are not admissible if, as the rule states, "the sources of information or other circumstances indicate lack of trustworthiness."

The Advisory Committee explains the factors to be considered:

* * * *

Factors which may be assistance in passing upon the admissibility of evaluative reports include: (1) the timeliness of the investigation, McCormick, Can the Courts Make Wider Use of Reports of Official Investigations? 42 Iowa L.Rev. 363 (1957); (2) the special skill or experience of the official, id.; (3) whether a hearing was held and the level at which conducted, *Franklin v. Skelly Oil Co.,* 141 F.2d 568 (19th Cir.1944); (4) possible motivation problems suggested by *Palmer v. Hoffman,* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943). Others no doubt could be added.

* * * *

The committee concludes that the language of the rule together with the explanation provided by the Advisory Committee furnish sufficient guidance on the admissibility of evaluative reports.

**Note to Paragraph (24).** The proposed Rules of Evidence submitted to Congress contained identical provisions in rules 803 and 804 (which set forth the various hearsay exceptions), admitting any hearsay statement not specifically covered by any of the stated exceptions, if the hearsay statement was found to have "comparable circumstantial guarantees of trustworthiness." The House deleted these provisions (proposed rules 803(24) and 804(b)(6)[(5) ]) as injecting "too much uncertainty" into the law of evidence and impairing the ability of practitioners to prepare for trial. The House felt that rule 102, which directs the courts to construe the Rules of Evidence so as to promote growth and development, would permit sufficient flexibility to admit hearsay evidence in appropriate cases under various factual situations that might arise.

We disagree with the total rejection of a residual hearsay exception. While we view rule 102 as being intended to provide for a broader construction and interpretation of these rules, we feel that, without a separate residual provision, the specifically

enumerated exceptions could become tortured beyond any reasonable circumstances which they were intended to include (even if broadly construed). Moreover, these exceptions, while they reflect the most typical and well recognized exceptions to the hearsay rule, may not encompass every situation in which the reliability and appropriateness of a particular piece of hearsay evidence make clear that it should be heard and considered by the trier of fact.

The committee believes that there are certain exceptional circumstances where evidence which is found by a court to have guarantees of trustworthiness equivalent to or exceeding the guarantees reflected by the presently listed exceptions, and to have a high degree of prolativeness [sic] and necessity could properly be admissible.

The case of *Dallas County v. Commercial Union Assoc. Co., Ltd.,* 286 F.2d 388 (5th Cir.1961) illustrates the point. The issue in that case was whether the tower of the county courthouse collapsed because it was struck by lightning (covered by insurance) or because of structural weakness and deterioration of the structure (not covered). Investigation of the structure revealed the presence of charcoal and charred timbers. In order to show that lightning may not have been the cause of the charring, the insurer offered a copy of a local newspaper published over 50 years earlier containing an unsigned article describing a fire in the courthouse while it was under construction. The court found that the newspaper did not qualify for admission as a business record or an ancient document and did not fit within any other recognized hearsay exception. The court concluded, however, that the article was trustworthy because it was inconceivable that a newspaper reporter in a small town would report a fire in the courthouse if none had occurred. See also *United States v. Barbati,* 284 F.Supp. 409 (E.D.N.Y.1968).

Because exceptional cases like the *Dallas County* case may arise in the future, the committee has decided to reinstate a residual exception for rules 803 and 804(b).

The committee, however, also agrees with those supporters of the House version who felt that an overly broad residual hearsay exception could emasculate the hearsay rule and the recognized exceptions or vitiate the rationale behind codification of the rules.

Therefore, the committee has adopted a residual exception for rules 803 and 804(b) of much narrower scope and applicability than the Supreme Court version. In order to qualify for admission, a hearsay statement not falling within one of the recognized exceptions would have to satisfy at least four conditions. First, it must have "equivalent circumstantial guarantees of trustworthiness." Second, it must be offered as evidence of a material fact. Third, the court must determine that the statement "is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." This requirement is intended to insure that only statements which have high probative value and necessity may qualify for admission under the residual exceptions. Fourth, the court must determine that "the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence."

It is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances. The committee does not intend to establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in rules 803 and 804(b). The residual exceptions are not meant to authorize major judicial revisions of the hearsay rule, including its present exceptions. Such major revisions are best accomplished by legislative action. It is intended that in any case in which evidence is sought to be admitted under these subsections, the trial judge will exercise no less care, reflection and caution than the courts did under the common law in establishing the now-recognized exceptions to the hearsay rule.

In order to establish a well-defined jurisprudence, the special facts and circumstances which, in the court's judgment, indicates that the statement has a sufficiently high degree of trustworthiness and necessity to justify its admission should be stated on the record. It is expected that the court will give the opposing party a full and adequate opportunity to contest the admission of any statement sought to be introduced under these subsections. Senate Report No. 93-1277.

Rule 803 defines when hearsay statements are admissible in evidence even though the declarant is available as a witness. The Senate amendments make three changes in this rule.

**Note to Paragraph (6).** The House bill provides in subsection (6) that records of a regularly conducted "business" activity qualify for admission into evidence as an exception to the hearsay rule. "Business" is defined as including "business, profession, occupation and calling of every kind." The Senate amendment drops the requirement that the records be those of a "business" activity and eliminates the definition of "business." The Senate amendment provides that records are admissible if they are records of a regularly conducted "activity."

The Conference adopts the House provision that the records must be those of a regularly conducted "business" activity. The Conferees changed the definition of "business" contained in the House provision in order to make it clear that the records of institutions and associations like schools, churches and hospitals are admissible under this provision. The records of public schools and hospitals are also covered by Rule 803(8), which deals with public records and reports.

**Note to Paragraph (8).** The Senate amendment adds language, not contained in the House bill, that refers to another rule that was added by the Senate in another amendment ([proposed] Rule 804(b)(5)--Criminal law enforcement records and reports [deleted]).

In view of its action on [proposed] Rule 804(b)(5) (Criminal law enforcement records and reports) [deleted], the Conference does not adopt the Senate amendment and restores the bill to the House version.

**Note to Paragraph (24).** The Senate amendment adds a new subsection, (24), which makes admissible a hearsay statement not specifically covered by any of the previous twenty-three subsections, if the statement has equivalent circumstantial guarantees of trustworthiness and if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

The House bill eliminated a similar, but broader, provision because of the conviction that such a provision injected too much uncertainty into the law of evidence regarding hearsay and impaired the ability of a litigant to prepare adequately for trial.

The Conference adopts the Senate amendment with an amendment that provides that a party intending to request the court to use a statement under this provision must notify any adverse party of this intention as well as of the particulars of the statement, including the name and address of the declarant. This notice must be given sufficiently in advance of the trial or hearing to provide any adverse party with a fair opportunity to prepare to contest the use of the statement. House Report No. 93-1597.

**1987 Amendment**

The amendments are technical. No substantive change is intended.

**1997 Amendment**

The contents of Rule 803(24) and Rule 804(b)(5) have been combined and transferred to a new Rule 807. This was done to facilitate additions to Rules 803 and 804. No change in meaning is intended.

**GAP Report on Rule 803.** The words "Transferred to Rule 807" were substituted for "Abrogated."

**2000 Amendment**

The amendment provides that the foundation requirements of Rule 803(6) can be satisfied under certain circumstances without the expense and inconvenience of producing time-consuming foundation witnesses. Under current law, courts have generally required foundation witnesses to testify. *See, e.g., Tongil Co., Ltd. v. Hyundai Merchant Marine Corp., 968 F.2d 999 (9th Cir. 1992)* (reversing a judgment based on business records where a qualified person filed an affidavit but did not testify). Protections are provided by the authentication requirements of Rule 902(11) for domestic records, Rule 902(12) for foreign records in civil cases, and 18 U.S.C. § 3505 for foreign records in criminal cases.

**GAP Report--Proposed Amendment to Rule 803(6)**

The Committee made no changes to the published draft of the proposed amendment to Evidence Rule 803(6).

**2011 Amendments**

The language of Rule 803 has been amended as part of the restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility.

**2013 Amendments**

Rule 803(10) has been amended in response to *Melendez-Diaz v. Massachusetts,* 557 U.S. 305 (2009). The *Melendez-Diaz* Court declared that a testimonial certificate could be admitted if the accused is given advance notice and does not timely demand the presence of the official who prepared the certificate. The amendment incorporates, with minor variations, a "notice-and-demand" procedure that was approved by the *Melendez-Diaz* Court. See Tex. Code Crim. P. Ann., art. 38.41.

**Changes Made After Publication and Comment**

No changes were made to the proposed amendment or Committee Note as they were issued for public comment.

**2014 Amendments**

**[Subdivision (6)]** The Rule has been amended to clarify that if the proponent has established the stated requirements of the exception--regular business with regularly kept record, source with personal knowledge, record made timely, and foundation testimony or certification--then the burden is on the opponent to show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. While most courts have imposed that burden on the opponent, some have not. It is appropriate to impose this burden on the opponent, as the basic admissibility requirements are sufficient to establish a presumption that the record is reliable.

The opponent, in meeting its burden, is not necessarily required to introduce affirmative evidence of untrustworthiness. For example, the opponent might argue that a record was prepared in anticipation of litigation and is favorable to the preparing party without needing to introduce evidence on the point. A determination of untrustworthiness necessarily depends on the circumstances.

**Changes Made After Publication and Comment**

In accordance with a public comment, a slight change was made to the Committee Note to better track the language of the rule.

**[Subdivision (7)]** The Rule has been amended to clarify that if the proponent has established the stated requirements of the exception--set forth in Rule 803(6)--then the burden is on the opponent to show that the possible source of the information or

other circumstances indicate a lack of trustworthiness. The amendment maintains consistency with the proposed amendment to the trustworthiness clause of Rule 803(6).

**Changes Made After Publication and Comment**

In accordance with a public comment, a slight change was made to the Committee Note to better track the language of the rule.

**[Subdivision (8)]** The Rule has been amended to clarify that if the proponent has established that the record meets the stated requirements of the exception--prepared by a public office and setting out information as specified in the Rule--then the burden is on the opponent to show that the source of information or other circumstances indicate a lack of trustworthiness. While most courts have imposed that burden on the opponent, some have not. Public records have justifiably carried a presumption of reliability, and it should be up to the opponent to "demonstrate why a time-tested and carefully considered presumption is not appropriate." *Ellis v. International Playtex, Inc.*, 745 F.2d 292, 301 (4th Cir. 1984). The amendment maintains consistency with the proposed amendment to the trustworthiness clause of Rule 803(6).

The opponent, in meeting its burden, is not necessarily required to introduce affirmative evidence of untrustworthiness. For example, the opponent might argue that a record was prepared in anticipation of litigation and is favorable to the preparing party without needing to introduce evidence on the point. A determination of untrustworthiness necessarily depends on the circumstances.

**Changes Made After Publication and Comment**

In accordance with a public comment, a slight change was made to the Committee Note to better track the language of the rule.

**2017 Amendments**

The ancient documents exception to the rule against hearsay has been limited to statements in documents prepared before January 1, 1998. The Committee has determined that the ancient documents exception should be limited due to the risk that it will be used as a vehicle to admit vast amounts of unreliable electronically stored information (ESI). Given the exponential development and growth of electronic information since 1998, the hearsay exception for ancient documents has now become a possible open door for large amounts of unreliable ESI, as no showing of reliability needs to be made to qualify under the exception.

The Committee is aware that in certain cases--such as cases involving latent diseases and environmental damage--parties must rely on hardcopy documents from the past. The ancient documents exception remains available for such cases for documents prepared before 1998. Going forward, it is anticipated that any need to admit old hardcopy documents produced after January 1, 1998 will decrease, because reliable ESI is likely to be available and can be offered under a reliability-based hearsay exception. Rule 803(6) may be used for many of these ESI documents, especially given its flexible standards on which witnesses might be qualified to provide an adequate foundation. And Rule 807 can be used to admit old documents upon a showing of reliability-- which will often (though not always) be found by circumstances such as that the document was prepared with no litigation motive in mind, close in time to the relevant events. The limitation of the ancient documents exception is not intended to raise an inference that 20-year-old documents are, as a class, unreliable, or that they should somehow not qualify for admissibility under Rule 807. Finally, many old documents can be admitted for the non-hearsay purpose of proving notice, or as party-opponent statements.

The limitation of the ancient documents hearsay exception is not intended to have any effect on authentication of ancient documents. The possibility of authenticating an old document under Rule 901(b)(8)--or under any ground available for any other document--remains unchanged.

The Committee carefully considered, but ultimately rejected, an amendment that would preserve the ancient documents exception for hardcopy evidence only. A party will often offer hardcopy that is derived from ESI. Moreover, a good deal of old information in hardcopy has been digitized or will be so in the future. Thus, the line between ESI and hardcopy was determined to be one that could not be drawn usefully.

The Committee understands that the choice of a cut-off date has a degree of arbitrariness. But January 1, 1998 is a rational date for treating concerns about old and unreliable ESI. And the date is no more arbitrary than the 20-year cutoff date in the original rule. *See* Committee Note to Rule 901(b)(8) ("Any time period selected is bound to be arbitrary.").

Under the amendment, a document is "prepared" when the statement proffered was recorded in that document. For example, if a hardcopy document is prepared in 1995, and a party seeks to admit a scanned copy of that document, the date of preparation is 1995 even though the scan was made long after that--the subsequent scan does not alter the document. The relevant point is the date on which the information is recorded, not when the information is prepared for trial. However, if the content of the document is *itself* altered after the cut-off date, then the hearsay exception will not apply to statements that were added in the alteration.

Notes of Decisions (2381)

Fed. Rules Evid. Rule 803, 28 U.S.C.A., FRE Rule 803
Including Amendments Received Through 10-1-24

**End of Document**                                           © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

United States Code Annotated
  Federal Rules of Evidence (Refs & Annos)
    Article VIII. Hearsay (Refs & Annos)

Federal Rules of Evidence Rule 804, 28 U.S.C.A.

## Rule 804. Exceptions to the Rule Against Hearsay--When the Declarant Is Unavailable as a Witness

Currentness

**(a) Criteria for Being Unavailable.** A declarant is considered to be unavailable as a witness if the declarant:

**(1)** is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;

**(2)** refuses to testify about the subject matter despite a court order to do so;

**(3)** testifies to not remembering the subject matter;

**(4)** cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or

**(5)** is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:

**(A)** the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or

**(B)** the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4).

But this subdivision (a) does not apply if the statement's proponent procured or wrongfully caused the declarant's unavailability as a witness in order to prevent the declarant from attending or testifying.

**(b) The Exceptions.** The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:

**(1) Former Testimony.** Testimony that:

**(A)** was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

**(B)** is now offered against a party who had--or, in a civil case, whose predecessor in interest had--an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

**(2) Statement Under the Belief of Imminent Death.** In a prosecution for homicide or in a civil case, a statement that the declarant, while believing the declarant's death to be imminent, made about its cause or circumstances.

**(3) Statement Against Interest.** A statement that:

**(A)** a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

<[Text of paragraph (b)(3)(B) effective until December 1, 2024, absent contrary Congressional action.]>

**(B)** is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

<[Text of paragraph (b)(3)(B) effective December 1, 2024, absent contrary Congressional action.]>

**(B)** if offered in a criminal case as one that tends to expose the declarant to criminal liability, is supported by corroborating circumstances that clearly indicate its trustworthiness after considering the totality of circumstances under which it was made and any evidence that supports or undermines it.

**(4) Statement of Personal or Family History.** A statement about:

**(A)** the declarant's own birth, adoption, legitimacy, ancestry, marriage, divorce, relationship by blood, adoption, or marriage, or similar facts of personal or family history, even though the declarant had no way of acquiring personal knowledge about that fact; or

**(B)** another person concerning any of these facts, as well as death, if the declarant was related to the person by blood, adoption, or marriage or was so intimately associated with the person's family that the declarant's information is likely to be accurate.

**(5) [Other Exceptions.]** [Transferred to Rule 807.]

**(6) Statement Offered Against a Party That Wrongfully Caused the Declarant's Unavailability.** A statement offered against a party that wrongfully caused--or acquiesced in wrongfully causing--the declarant's unavailability as a witness, and did so intending that result.

**CREDIT(S)**

(Pub.L. 93-595, § 1, Jan. 2, 1975, 88 Stat. 1942; Pub.L. 94-149, § 1(12), (13), Dec. 12, 1975, 89 Stat. 806; Mar. 2, 1987, eff. Oct. 1, 1987; Pub.L. 100-690, Title VII, § 7075(b), Nov. 18, 1988, 102 Stat. 4405; Apr. 11, 1997, eff. Dec. 1, 1997; Apr. 28, 2010, eff. Dec. 1, 2010; Apr. 26, 2011, eff. Dec. 1, 2011; Apr. 2, 2024, eff. Dec. 1, 2024, absent contrary Congressional action.)

**ADVISORY COMMITTEE NOTES**
**1972 Proposed Rules**

As to firsthand knowledge on the part of hearsay declarants, see the introductory portion of the Advisory Committee's Note to Rule 803.

**Note to Subdivision (a).** The definition of unavailability implements the division of hearsay exceptions into two categories by Rules 803 and 804(b).

At common law the unavailability requirement was evolved in connection with particular hearsay exceptions rather than along general lines. For example, see the separate explications of unavailability in relation to former testimony, declarations against interest, and statements of pedigree, separately developed in McCormick §§ 234, 257, and 297. However, no reason is apparent for making distinctions as to what satisfies unavailability for the different exceptions. The treatment in the rule is therefore uniform although differences in the range of process for witnesses between civil and criminal cases will lead to a less exacting requirement under item (5). See Rule 45(e) of the Federal Rules of Civil Procedure and Rule 17(e) of the Federal Rules of Criminal Procedure.

Five instances of unavailability are specified:

**(1)** Substantial authority supports the position that exercise of a claim of privilege by the declarant satisfies the requirement of unavailability (usually in connection with former testimony). *Wyatt v. State,* 35 Ala.App. 147, 46 So.2d 837 (1950); *State v. Stewart,* 85 Kan. 404, 116 P. 489 (1911); Annot., 45 A.L.R.2d 1354; Uniform Rule 62(7)(a); California Evidence Code § 240(a)(1); Kansas Code of Civil Procedure § 60-459(g)(1). A ruling by the judge is required, which clearly implies that an actual claim of privilege must be made.

**(2)** A witness is rendered unavailable if he simply refuses to testify concerning the subject matter of his statement despite judicial pressures to do so, a position supported by similar considerations of practicality. *Johnson v. People,* 152 Colo. 586, 384 P.2d 454 (1963); *People v. Pickett,* 339 Mich. 294, 63 N.W.2d 681, 45 A.L.R.2d 1341 (1954). *Contra, Pleau v. State,* 255 Wis. 362, 38 N.W.2d 496 (1949).

**(3)** The position that a claimed lack of memory by the witness of the subject matter of his statement constitutes unavailability likewise finds support in the cases, though not without dissent. McCormick § 234, p. 494. If the claim is successful, the practical effect is to put the testimony beyond reach, as in the other instances. In this instance, however, it will be noted that the lack of memory must be established by the testimony of the witness himself, which clearly contemplates his production and subjection to cross-examination.

**(4)** Death and infirmity find general recognition as grounds. McCormick §§ 234, 257, 297; Uniform Rule 62(7)(c); California Evidence Code § 240(a)(3); Kansas Code of Civil Procedure § 60-459(g)(3); New Jersey Evidence Rule 62(6)(c). See also the provisions on use of depositions in Rule 32(a)(3) of the Federal Rules of Civil Procedure and Rule 15(e) of the Federal Rules of Criminal Procedure.

**(5)** Absence from the hearing coupled with inability to compel attendance by process or other reasonable means also satisfies the requirement. McCormick § 234; Uniform Rule 62(7)(d) and (e); California Evidence Code § 240(a)(4) and (5); Kansas Code of Civil Procedure § 60-459(g)(4) and (5); New Jersey Rule 62(6)(b) and (d). See the discussion of procuring attendance of witnesses who are nonresidents or in custody in *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).

If the conditions otherwise constituting unavailability result from the procurement or wrongdoing of the proponent of the statement, the requirement is not satisfied. The rule contains no requirement that an attempt be made to take the deposition of a declarant.

**Note to Subdivision (b).** Rule 803, *supra,* is based upon the assumption that a hearsay statement falling within one of its exceptions possesses qualities which justify the conclusion that whether the declarant is available or unavailable is not a relevant factor in determining admissibility. The instant rule proceeds upon a different theory: hearsay which admittedly is not equal in quality to testimony of the declarant on the stand may nevertheless be admitted if the declarant is unavailable and if his statement meets a specified standard. The rule expresses preferences: testimony given on the stand in person is preferred over hearsay, and hearsay, if of the specified quality, is preferred over complete loss of the evidence of the declarant. The exceptions evolved at common law with respect to declarations of unavailable declarants furnish the basis for the exceptions enumerated in the proposal. The term "unavailable" is defined in subdivision (a).

**Exception (1).** Former testimony does not rely upon some set of circumstances to substitute for oath and cross-examination, since both oath and opportunity to cross-examine were present in fact. The only missing one of the ideal conditions for the giving of testimony is the presence of trier and opponent ("demeanor evidence"). This is lacking with all hearsay exceptions. Hence it may be argued that former testimony is the strongest hearsay and should be included under Rule 803, supra. However, opportunity to observe demeanor is what in a large measure confers depth and meaning upon oath and cross-examination. Thus in cases under Rule 803 demeanor lacks the significance which it possesses with respect to testimony. In any event, the tradition, founded in experience, uniformly favors production of the witness if he is available. The exception indicates continuation of the policy. This preference for the presence of the witness is apparent also in rules and statutes on the use of depositions, which deal with substantially the same problem.

Under the exception, the testimony may be offered (1) against the party *against* whom it was previously offered or (2) against the party *by* whom it was previously offered. In each instance the question resolves itself into whether fairness allows imposing, upon the party against whom now offered, the handling of the witness of the earlier occasion. (1) If the party against whom now offered is the one against whom the testimony was offered previously, no unfairness is apparent in requiring him to accept his own prior conduct of cross-examination or decision not to cross-examine. Only demeanor has been lost, and that is inherent in the situation. (2) If the party against whom now offered is the one *by* whom the testimony was offered previously, a satisfactory answer becomes somewhat more difficult. One possibility is to proceed somewhat along the line of an adoptive admission, i.e. by offering the testimony proponent in effect adopts it. However, this theory savors of discarded concepts of witnesses' belonging to a party, of litigants' ability to pick and choose witnesses, and of vouching for one's own witnesses. Cf. McCormick § 246, pp. 526-527; 4 Wigmore § 1075. A more direct and acceptable approach is simply to recognize direct and redirect examination of one's own witness as the equivalent of cross-examining an opponent's witness. Falknor, Former Testimony and the Uniform Rules: A Comment, 38 N.Y.U.L.Rev. 651, n. 1 (1963); McCormick § 231, p. 483. See also 5 Wigmore § 1389. Allowable techniques for dealing with hostile, double-crossing, forgetful, and mentally deficient witnesses leave no substance to a claim that one could not adequately develop his own witness at the former hearing. An even less appealing argument is presented when failure to develop fully was the result of a deliberate choice.

The common law did not limit the admissibility of former testimony to that given in an earlier trial of the same case, although it did require identity of issues as a means of insuring that the former handling of the witness was the equivalent of what would now be done if the opportunity were presented. Modern decisions reduce the requirement to "substantial" identity. McCormick § 233. Since identity of issues is significant only in that it bears on motive and interest in developing fully the testimony of the witness, expressing the matter in the latter terms is preferable. *Id.* Testimony given at a preliminary hearing was held in *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), to satisfy confrontation requirements in this respect.

As a further assurance of fairness in thrusting upon a party the prior handling of the witness, the common law also insisted upon identity of parties, deviating only to the extent of allowing substitution of successors in a narrowly construed privity. Mutuality

Add-155

as an aspect of identity is now generally discredited, and the requirement of identity of the offering party disappears except as it might affect motive to develop the testimony. Falknor, *supra,* at 652; McCormick § 232, pp. 487-488. The question remains whether strict identity, or privity, should continue as a requirement with respect to the party against whom offered. The rule departs to the extent of allowing substitution of one with the right and opportunity to develop the testimony with similar motive and interest. This position is supported by modern decisions. McCormick § 232, pp. 489-490; 5 Wigmore § 1388.

Provisions of the same tenor will be found in Uniform Rule 63(3)(b); California Evidence Code §§ 1290-1292; Kansas Code of Civil Procedure § 60-460(c)(2); New Jersey Evidence Rule 63(3). Unlike the rule, the latter three provide either that former testimony is not admissible if the right of confrontation is denied or that it is not admissible if the accused was not a party to the prior hearing. The genesis of these limitations is a caveat in Uniform Rule 63(3) Comment that use of former testimony against an accused may violate his right of confrontation. *Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), held that the right was not violated by the Government's use, on a retrial of the same case, of testimony given at the first trial by two witnesses since deceased. The decision leaves open the questions (1) whether direct and redirect are equivalent to cross-examination for purposes of confrontation, (2) whether testimony given in a different proceeding is acceptable, and (3) whether the accused must himself have been a party to the earlier proceeding or whether a similarly situated person will serve the purpose. Professor Falknor concluded that, if a dying declaration untested by cross-examination is constitutionally admissible, former testimony tested by the cross-examination of one similarly situated does not offend against confrontation. Falknor, *supra,* at 659-660. The constitutional acceptability of dying declarations has often been conceded. *Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 39 L.Ed. 409 (1895); *Kirby v. United States,* 174 U.S. 47, 61, 19 S.Ct. 574, 43 L.Ed. 890 (1899); *Pointer v. Texas,* 380 U.S. 400, 407, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

**Exception (2).** The exception is the familiar dying declaration of the common law, expanded somewhat beyond its traditionally narrow limits. While the original religious justification for the exception may have lost its conviction for some persons over the years, it can scarcely be doubted that powerful psychological pressures are present. See 5 Wigmore § 1443 and the classic statement of Chief Baron Eyre in Rex v. Woodcock, 1 Leach 500, 502, 168 Eng.Rep. 352, 353 (K.B.1789).

The common law required that the statement be that of the victim, offered in a prosecution for criminal homicide. Thus declarations by victims in prosecutions for other crimes, e.g. a declaration by a rape victim who dies in childbirth, and all declarations in civil cases were outside the scope of the exception. An occasional statute has removed these restrictions, as in Colo.R.S. § 52-1-20, or has expanded the area of offenses to include abortions, 5 Wigmore § 1432, p. 224, n. 4. Kansas by decision extended the exception to civil cases. *Thurston v. Fritz,* 91 Kan. 468, 138 P. 625 (1914). While the common law exception no doubt originated as a result of the exceptional need for the evidence in homicide cases, the theory of admissibility applies equally in civil cases and in prosecutions for crimes other than homicide. The same considerations suggest abandonment of the limitation to circumstances attending the event in question, yet when the statement deals with matters other than the supposed death, its influence is believed to be sufficiently attenuated to justify the limitation. Unavailability is not limited to death. See subdivision (a) of this rule. Any problem as to declarations phrased in terms of opinion is laid at rest by Rule 701, and continuation of a requirement of firsthand knowledge is assured by Rule 602.

Comparable provisions are found in Uniform Rule 63(5); California Evidence Code § 1242; Kansas Code of Civil Procedure § 60-460(e); New Jersey Evidence Rule 63(5).

**Exception (3).** The circumstantial guaranty of reliability for declarations against interest is the assumption that persons do not make statements which are damaging to themselves unless satisfied for good reason that they are true. *Hileman v. Northwest Engineering Co.,* 346 F.2d 668 (6th Cir.1965). If the statement is that of a party, offered by his opponent, it comes in as an admission, Rule 803(d)(2) [sic; probably should be "Rule 801(d)(2)"], and there is no occasion to inquire whether it is against interest, this not being a condition precedent to admissibility of admissions by opponents.

The common law required that the interest declared against be pecuniary or proprietary but within this limitation demonstrated striking ingenuity in discovering an against-interest aspect. Higham v. Ridgway, 10 East 109, 103 Eng.Rep. 717 (K.B.1808); Reg. v. Overseers of Birmingham, 1 B. & S. 763, 121 Eng.Rep. 897 (Q.B.1861); McCormick, § 256, p. 551, nn. 2 and 3.

The exception discards the common law limitation and expands to the full logical limit. One result is to remove doubt as to the admissibility of declarations tending to establish a tort liability against the declarant or to extinguish one which might be asserted by him, in accordance with the trend of the decisions in this country. McCormick § 254, pp. 548-549. Another is to allow statements tending to expose declarant to hatred, ridicule, or disgrace, the motivation here being considered to be as strong as when financial interests are at stake. McCormick § 255, p. 551. And finally, exposure to criminal liability satisfies the against-interest requirement. The refusal of the common law to concede the adequacy of a penal interest was no doubt indefensible in logic, see the dissent of Mr. Justice Holmes in *Donnelly v. United States,* 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820 (1913), but one senses in the decisions a distrust of evidence of confessions by third persons offered to exculpate the accused arising from suspicions of fabrication either of the fact of the making of the confession or in its contents, enhanced in either instance by the required unavailability of the declarant. Nevertheless, an increasing amount of decisional law recognizes exposure to punishment for crime as a sufficient stake. *People v. Spriggs,* 60 Cal.2d 868, 36 Cal.Rptr. 841, 389 P.2d 377 (1964); *Sutter v. Easterly,* 354 Mo. 282, 189 S.W.2d 284 (1945); Band's Refuse Removal, Inc. v. Fairlawn Borough, 62 N.J.Super. 522, 163 A.2d 465 (1960); *Newberry v. Commonwealth,* 191 Va. 445, 61 S.E.2d 318 (1950); Annot., 162 A.L.R. 446. The requirement of corroboration is included in the rule in order to effect an accommodation between these competing considerations. When the statement is offered by the accused by way of exculpation, the resulting situation is not adapted to control by rulings as to the weight of the evidence, and hence the provision is cast in terms of a requirement preliminary to admissibility. Cf. Rule 406(a). The requirement of corroboration should be construed in such a manner as to effectuate its purpose of circumventing fabrication.

Ordinarily the third-party confession is thought of in terms of exculpating the accused, but this is by no means always or necessarily the case: it may include statements implicating him, and under the general theory of declarations against interest they would be admissible as related statements. *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), and *Bruton v. United States,* 389 U.S. 818, 88 S.Ct. 126, 19 L.Ed.2d 70 (1968), both involved confessions by codefendants which implicated the accused. While the confession was not actually offered in evidence in *Douglas,* the procedure followed effectively put it before the jury, which the Court ruled to be error. Whether the confession might have been admissible as a declaration against penal interest was not considered or discussed. *Bruton* assumed the inadmissibility, as against the accused, of the implicating confession of his codefendant, and centered upon the question of the effectiveness of a limiting instruction. These decisions, however, by no means require that all statements implicating another person be excluded from the category of declarations against interest. Whether a statement is in fact against interest must be determined from the circumstances of each case. Thus a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest. See the dissenting opinion of Mr. Justice White in *Bruton.* On the other hand, the same words spoken under different circumstances, e.g., to an acquaintance, would have no difficulty in qualifying. The rule does not purport to deal with questions of the right of confrontation.

The balancing of self-serving against dissenting aspects of a declaration is discussed in McCormick § 256.

For comparable provisions, see Uniform Rule 63(10); California Evidence Code § 1230; Kansas Code of Civil Procedure § 60-460(j); New Jersey Evidence Rule 63(10).

**Exception (4).** The general common law requirement that a declaration in this area must have been made *ante litem motam* has been dropped, as bearing more appropriately on weight than admissibility. See 5 Wigmore § 1483. Item (i)[(A)] specifically disclaims any need of firsthand knowledge respecting declarant's own personal history. In some instances it is self-evident (marriage) and in others impossible and traditionally not required (date of birth). Item (ii)[(B)] deals with declarations concerning the history of another person. As at common law, declarant is qualified if related by blood or marriage. 5 Wigmore § 1489. In addition, and contrary to the common law, declarant qualifies by virtue of intimate association with the family. *Id.,*

Add-157

§ 1487. The requirement sometimes encountered that when the subject of the statement is the relationship between two other persons the declarant must qualify as to both is omitted. Relationship is reciprocal. *Id.,* § 1491.

For comparable provisions, see Uniform Rule 63(23), (24), (25); California Evidence Code §§ 1310, 1311; Kansas Code of Civil Procedure § 60-460(u), (v), (w); New Jersey Evidence Rules 63-23), 63(24), 63(25).

**1974 Enactment**

**Note to Subdivision (a)(3).** Rule 804(a)(3) was approved in the form submitted by the Court. However, the Committee intends no change in existing federal law under which the court may choose to disbelieve the declarant's testimony as to his lack of memory. See *United States v. Insana,* 423 F.2d 1165, 1169-1170 (2nd Cir.), cert. denied, 400 U.S. 841 (1970).

**Note to Subdivision (a)(5).** Rule 804(a)(5) as submitted to the Congress provided, as one type of situation in which a declarant would be deemed "unavailable", that he be "absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means." The Committee amended the Rule to insert after the word "attendance" the parenthetical expression "(or, in the case of a hearsay exception under subdivision (b)(2), (3), or (4), his attendance or testimony)". The amendment is designed primarily to require that an attempt be made to depose a witness (as well as to seek his attendance) as a precondition to the witness being deemed unavailable. The Committee, however, recognized the propriety of an exception to this additional requirement when it is the declarant's former testimony that is sought to be admitted under subdivision (b)(1).

**Note to Subdivision (b)(1).** Rule 804(b)(1) as submitted by the Court allowed prior testimony of an unavailable witness to be admissible if the party against whom it is offered or a person "with motive and interest similar" to him had an opportunity to examine the witness. The Committee considered that it is generally unfair to impose upon the party against whom the hearsay evidence is being offered responsibility for the manner in which the witness was previously handled by another party. The sole exception to this, in the Committee's view, is when a party's predecessor in interest in a civil action or proceeding had an opportunity and similar motive to examine the witness. The Committee amended the Rule to reflect these policy determinations.

**Note to Subdivision (b)(2).** Rule 804(b)(3) as submitted by the Court (now Rule 804(b)(2) in the bill) proposed to expand the traditional scope of the dying declaration exception (i.e. a statement of the victim in a homicide case as to the cause or circumstances of his believed imminent death) to allow such statements in all criminal and civil cases. The Committee did not consider dying declarations as among the most reliable forms of hearsay. Consequently, it amended the provision to limit their admissibility in criminal cases to homicide prosecutions, where exceptional need for the evidence is present. This is existing law. At the same time, the Committee approved the expansion to civil actions and proceedings where the stakes do not involve possible imprisonment, although noting that this could lead to forum shopping in some instances.

**Note to Subdivision (b)(3).** Rule 804(b)(4) as submitted by the Court (now Rule 804(b)(3) in the bill) provided as follows:

*Statement against interest.*--A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest or so far tended to subject him to civil or criminal liability or to render invalid a claim by him against another or to make him an object of hatred, ridicule, or disgrace, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to exculpate the accused is not admissible unless corroborated.

The Committee determined to retain the traditional hearsay exception for statements against pecuniary or proprietary interest. However, it deemed the Court's additional references to statements tending to subject a declarant to civil liability or to render invalid a claim by him against another to be redundant as included within the scope of the reference to statements against pecuniary or proprietary interest. See *Gichner v. Antonio Triano Tile and Marble Co.,* 410 F.2d 238 (D.C.Cir.1968). Those additional references were accordingly deleted.

**Add-158**

The Court's Rule also proposed to expand the hearsay limitation from its present federal limitation to include statements subjecting the declarant to criminal liability and statements tending to make him an object of hatred, ridicule, or disgrace. The Committee eliminated the latter category from the subdivision as lacking sufficient guarantees of reliability. See *United States v. Dovico,* 380 F.2d 325, 327 nn. 2, 4 (2nd Cir.), cert. denied, 389 U.S. 944 (1967). As for statements against penal interest, the Committee shared the view of the Court that some such statements do possess adequate assurances of reliability and should be admissible. It believed, however, as did the Court, that statements of this type tending to exculpate the accused are more suspect and so should have their admissibility conditioned upon some further provision insuring trustworthiness. The proposal in the Court Rule to add a requirement of simple corroboration was, however, deemed ineffective to accomplish this purpose since the accused's own testimony might suffice while not necessarily increasing the reliability of the hearsay statement. The Committee settled upon the language "unless corroborating circumstances clearly indicate the trustworthiness of the statement" as affording a proper standard and degree of discretion. It was contemplated that the result in such cases as *Donnelly v. United States,* 228 U.S. 243 (1912), where the circumstances plainly indicated reliability, would be changed. The Committee also added to the Rule the final sentence from the 1971 Advisory Committee draft, designed to codify the doctrine of *Bruton v. United States,* 391 U.S. 123 (1968). The Committee does not intend to affect the existing exception to the *Bruton* principle where the codefendant takes the stand and is subject to cross-examination, but believed there was no need to make specific provision for this situation in the Rule, since in that event the declarant would not be "unavailable". House Report No. 93-650.

**Note to Subdivision (a)(5).** Subdivision (a) of rule 804 as submitted by the Supreme Court defined the conditions under which a witness was considered to be unavailable. It was amended in the House.

The purpose of the amendment, according to the report of the House Committee on the Judiciary, is "primarily to require that an attempt be made to depose a witness (as well as to seek his attendance) as a precondition to the witness being unavailable."

Under the House amendment, before a witness is declared unavailable, a party must try to depose a witness (declarant) with respect to dying declarations, declarations against interest, and declarations of pedigree. None of these situations would seem to warrant this needless, impractical and highly restrictive complication. A good case can be made for eliminating the unavailability requirement entirely for declarations against interest cases. [Uniform rule 63(10); Kan.Stat.Anno. 60-460(j); 2A N.J.Stats.Anno. 84-63(10).]

In dying declaration cases, the declarant will usually, though not necessarily, be deceased at the time of trial. Pedigree statements which are admittedly and necessarily based largely on word of mouth are not greatly fortified by a deposition requirement.

Depositions are expensive and time-consuming. In any event, deposition procedures are available to those who wish to resort to them. Moreover, the deposition procedures of the Civil Rules and Criminal Rules are only imperfectly adapted to implementing the amendment. No purpose is served unless the deposition, if taken, may be used in evidence. Under Civil Rule (a)(3) the Criminal Rule 15(e), a deposition, though taken, may not be admissible, and under Criminal Rule 15(a) substantial obstacles exist in the way of even taking a deposition.

For these reasons, the committee deleted the House amendment.

The committee understands that the rule as to unavailability, as explained by the Advisory Committee "contains no requirement that an attempt be made to take the deposition of a declarant." In reflecting the committee's judgment, the statement is accurate insofar as it goes. Where, however, the proponent of the statement, with knowledge of the existence of the statement, fails to confront the declarant with the statement at the taking of the deposition, then the proponent should not, in fairness, be permitted to treat the declarant as "unavailable" simply because the declarant was not amenable to process compelling his attendance at trial. The committee does not consider it necessary to amend the rule to this effect because such a situation abuses, not conforms to, the rule. Fairness would preclude a person from introducing a hearsay statement on a particular issue if the person taking the deposition was aware of the issue at the time of the deposition but failed to depose the unavailable witness on that issue.

**Note to Subdivision (b)(1).** Former testimony.--Rule 804(b)(1) as submitted by the Court allowed prior testimony of an unavailable witness to be admissible if the party against whom it is offered or a person "with motive and interest similar" to his had an opportunity to examine the witness.

The House amended the rule to apply only to a party's predecessor in interest. Although the committee recognizes considerable merit to the rule submitted by the Supreme Court, a position which has been advocated by many scholars and judges, we have concluded that the difference between the two versions is not great and we accept the House amendment.

**Note to Subdivision (b)(3).** The rule defines those statements which are considered to be against interest and thus of sufficient trustworthiness to be admissible even though hearsay. With regard to the type of interest declared against, the version submitted by the Supreme Court included inter alia, statements tending to subject a declarant to civil liability or to invalidate a claim by him against another. The House struck these provisions as redundant. In view of the conflicting case law construing pecuniary or proprietary interests narrowly so as to exclude, e.g., tort cases, this deletion could be misconstrued.

Three States which have recently codified their rules of evidence have followed the Supreme Court's version of this rule, i.e., that a statement is against interest if it tends to subject a declarant to civil liability. [Nev.Rev.Stats. § 51.345; N.Mex.Stats. (1973 Supp.) § 20-4-804(4); West's Wis.Stats.Anno. (1973 Supp.) § 908.045(4).]

The committee believes that the reference to statements tending to subject a person to civil liability constitutes a desirable clarification of the scope of the rule. Therefore, we have reinstated the Supreme Court language on this matter.

The Court rule also proposed to expand the hearsay limitation from its present federal limitation to include statements subjecting the declarant to statements tending to make him an object of hatred, ridicule, or disgrace. The House eliminated the latter category from the subdivision as lacking sufficient guarantees of reliability. Although there is considerable support for the admissibility of such statements (all three of the State rules referred to supra, would admit such statements), we accept the deletion by the House.

The House amended this exception to add a sentence making inadmissible a statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both himself and the accused. The sentence was added to codify the constitutional principle announced in *Bruton v. United States,* 391 U.S. 123 (1968). Bruton held that the admission of the extrajudicial hearsay statement of one codefendant inculpating a second codefendant violated the confrontation clause of the sixth amendment.

The committee decided to delete this provision because the basic approach of the rules is to avoid codifying, or attempting to codify, constitutional evidentiary principles, such as the fifth amendment's right against self-incrimination and, here, the sixth amendment's right of confrontation. Codification of a constitutional principle is unnecessary and, where the principle is under development, often unwise. Furthermore, the House provision does not appear to recognize the exceptions to the *Bruton* rule, e.g. where the codefendant takes the stand and is subject to cross examination; where the accused confessed, see *United States v. Mancusi,* 404 F.2d 296 (2d Cir.1968), cert. denied 397 U.S. 942 (1907); where the accused was placed at the scene of the crime, see *United States v. Zelker,* 452 F.2d 1009 (2d Cir.1971). For these reasons, the committee decided to delete this provision.

**Note to Subdivision (b)(5).** See Note to Paragraph (24), Notes of Committee on the Judiciary, Senate Report No. 93-1277, set out as a note under rule 803 of these rules. Senate Report No. 93-1277.

Rule 804 defines what hearsay statements are admissible in evidence if the declarant is unavailable as a witness. The Senate amendments make four changes in the rule.

**Note to Subdivision (a)(5).** Subsection (a) defines the term "unavailability as a witness". The House bill provides in subsection (a)(5) that the party who desires to use the statement must be unable to procure the declarant's attendance by process or other

Add-160

reasonable means. In the case of dying declarations, statements against interest and statements of personal or family history, the House bill requires that the proponent must also be unable to procure the declarant's *testimony* (such as by deposition or interrogatories) by process or other reasonable means. The Senate amendment eliminates this latter provision.

The Conference adopts the provision contained in the House bill.

**Note to Subdivision (b)(3).** The Senate amendment to subsection (b)(3) provides that a statement is against interest and not excluded by the hearsay rule when the declarant is unavailable as a witness, if the statement tends to subject a person to civil or criminal liability or renders invalid a claim by him against another. The House bill did not refer specifically to civil liability and to rendering invalid a claim against another. The Senate amendment also deletes from the House bill the provision that subsection (b)(3) does not apply to a statement or confession, made by a codefendant or another, which implicates the accused and the person who made the statement, when that statement or confession is offered against the accused in a criminal case.

The Conference adopts the Senate amendment. The Conferees intend to include within the purview of this rule, statements subjecting a person to civil liability and statements rendering claims invalid. The Conferees agree to delete the provision regarding statements by a codefendant, thereby reflecting the general approach in the Rules of Evidence to avoid attempting to codify constitutional evidentiary principles.

**Note to Subdivision (b)(5).** The Senate amendment adds a new subsection, (b)(6) [now (b)(5) ], which makes admissible a hearsay statement not specifically covered by any of the five previous subsections, if the statement has equivalent circumstantial guarantees of trustworthiness and if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

The House bill eliminated a similar, but broader, provision because of the conviction that such a provision injected too much uncertainty into the law of evidence regarding hearsay and impaired the ability of a litigant to prepare adequately for trial.

The Conference adopts the Senate amendment with an amendment that renumbers this subsection and provides that a party intending to request the court to use a statement under this provision must notify any adverse party of this intention as well as of the particulars of the statement, including the name and address of the declarant. This notice must be given sufficiently in advance of the trial or hearing to provide any adverse party with a fair opportunity to prepare to contest the use of the statement. House Report No. 93-1597.

**1987 Amendments**

The amendments are technical. No substantive change is intended.

**1997 Amendments**

**Subdivision (b)(5).** The contents of Rule 803(24) and Rule 804(b)(5) have been combined and transferred to a new Rule 807. This was done to facilitate additions to Rules 803 and 804. No change in meaning is intended.

**Subdivision (b)(6).** Rule 804(b)(6) has been added to provide that a party forfeits the right to object on hearsay grounds to the admission of a declarant's prior statement when the party's deliberate wrongdoing or acquiescence therein procured the unavailability of the declarant as a witness. This recognizes the need for a prophylactic rule to deal with abhorrent behavior "which strikes at the heart of the system of justice itself." *United States v. Mastrangelo,* 693 F.2d 269, 273 (2d Cir.1982), *cert. denied,* 467 U.S. 1204 (1984). The wrongdoing need not consist of a criminal act. The rule applies to all parties, including the government.

Every circuit that has resolved the question has recognized the principle of forfeiture by misconduct, although the tests for determining whether there is a forfeiture have varied. *See, e.g., United States v. Aguiar*, 975 F.2d 45, 47 (2d Cir.1992); *United States v. Potamitis*, 739 F.2d 784, 789 (2d Cir.), *cert. denied*, 469 U.S. 918 (1984); *Steele v. Taylor*, 684 F.2d 1193, 1199 (6th Cir.1982), *cert. denied*, 460 U.S. 1053 (1983); United States v. Balano, 618 F.2d 624, 629 (10th Cir.1979), *cert. denied*, 449 U.S. 840 (1980); *United States v. Carlson*, 547 F.2d 1346, 1358-59 (8th Cir.), *cert. denied*, 431 U.S. 914 (1977). The foregoing cases apply a preponderance of the evidence standard. *Contra United States v. Thevis*, 665 F.2d 616, 631 (5th Cir.) (clear and convincing standard), *cert. denied*, 459 U.S. 825 (1982). The usual Rule 104(a) preponderance of the evidence standard has been adopted in light of the behavior the new Rule 804(b)(6) seeks to discourage.

**GAP Report on Rule 804(b)(5).** The words "Transferred to Rule 807" were substituted for "Abrogated."

**GAP Report on Rule 804(b)(6).** The title of the rule was changed to "Forfeiture by wrongdoing." The word "who" in line 24 was changed to "that" to indicate that the rule is potentially applicable against the government. Two sentences were added to the first paragraph of the committee note to clarify that the wrongdoing need not be criminal in nature, and to indicate the rule's potential applicability to the government. The word "forfeiture" was substituted for "waiver" in the note.

### 2010 Amendments

**Subdivision (b)(3).** Rule 804(b)(3) has been amended to provide that the corroborating circumstances requirement applies to all declarations against penal interest offered in criminal cases. A number of courts have applied the corroborating circumstances requirement to declarations against penal interest offered by the prosecution, even though the text of the Rule did not so provide. *See, e.g., United States v. Alvarez*, 584 F.2d 694, 701 (5th Cir. 1978) ("by transplanting the language governing exculpatory statements onto the analysis for admitting inculpatory hearsay, a unitary standard is derived which offers the most workable basis for applying Rule 804(b)(3)"); *United States v. Shukri*, 207 F.3d 412 (7th Cir. 2000) (requiring corroborating circumstances for against-penal-interest statements offered by the government). A unitary approach to declarations against penal interest assures both the prosecution and the accused that the Rule will not be abused and that only reliable hearsay statements will be admitted under the exception.

All other changes to the structure and wording of the Rule are intended to be stylistic only. There is no intent to change any other result in any ruling on evidence admissibility.

The amendment does not address the use of the corroborating circumstances for declarations against penal interest offered in civil cases.

In assessing whether corroborating circumstances exist, some courts have focused on the credibility of the witness who relates the hearsay statement in court. But the credibility of the witness who relates the statement is not a proper factor for the court to consider in assessing corroborating circumstances. To base admission or exclusion of a hearsay statement on the witness's credibility would usurp the jury's role of determining the credibility of testifying witnesses.

### 2011 Amendments

The language of Rule 804 has been amended as part of the general restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility.

No style changes were made to Rule 804(b)(3), because it was already restyled in conjunction with a substantive amendment, effective December 1, 2010.

<[Effective December 1, 2024, absent contrary Congressional action.]>

**2024 Amendments**

Rule 804(b)(3)(B) has been amended to require that in assessing whether a statement is supported by "corroborating circumstances that clearly indicate its trustworthiness," the court must consider not only the totality of the circumstances under which the statement was made, but also any evidence supporting or undermining it. While most courts have considered evidence independent of the statement, some courts have refused to do so. The rule now provides for a uniform approach and recognizes that the existence or absence of independent evidence supporting the statement is relevant to, but not necessarily dispositive of, whether a statement that tends to expose the declarant to criminal liability should be admissible under this exception when offered in a criminal case. A court evaluating the admissibility of a third-party confession to a crime, for example, must consider not only circumstances such as the timing and spontaneity of the statement and the third-party declarant's likely motivations in making it. The court must also consider information, if any, supporting the statement, such as evidence placing the third party in the vicinity of the crime. Courts must also consider evidence that undermines the declarant's account.

Although it utilizes slightly different language to fit within the framework of Rule 804(b)(3), the amendment is consistent with the 2019 amendment to Rule 807 that requires courts to consider corroborating evidence in the trustworthiness inquiry under that provision. The amendment is also supported by the legislative history of the corroborating circumstances requirement in Rule 804(b)(3). *See* 1974 House Judiciary Committee Report on Rule 804(b)(3) (adding "corroborating circumstances clearly indicate the trustworthiness of the statement" language and noting that this standard would change the result in cases like *Donnelly v. United States*, 228 U.S. 243 (1913), that excluded a third-party confession exculpating the defendant despite the existence of independent evidence demonstrating the accuracy of the statement).

Notes of Decisions (860)

Fed. Rules Evid. Rule 804, 28 U.S.C.A., FRE Rule 804
Including Amendments Received Through 10-1-24

End of Document　　　　　　　　　　　　　　　© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Add-163