Nos. 25-3552, 25-3800

# In the United States Court of Appeals
# for the Ninth Circuit

DALE L. MIESEN,

*Plaintiff-Appellant,*

v.

R. JOHN TAYLOR, CONNIE TAYLOR HENDERSON, JAMES BECK, MICHAEL W. CASHMAN, SR., CROP USA INSURANCE AGENCY, INC., CROP USA INSURANCE SERVICES, LLC, AIA SERVICES CORPORATION, AND AIA INSURANCE, INC.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Idaho
Honorable David C. Nye, Presiding

## APPELLEES' BRIEF

Daniel Loras Glynn (ISB # 5113)
JONES WILLIAMS FUHRMAN GOURLEY, P.A.
225 N. 9th St., Ste. 820
Boise, ID 83701
(208) 331-1170
dglynn@idalaw.com
*Attorney for Defendants-Appellees*
James Beck, Michael Cashman, Connie
Henderson, John Taylor, Crop USA
Insurance Agency, Inc., and Crop USA
Insurance Services, LLC

Kim J. Trout (ISB #2468)
Alyssa R. Jones (ISB #12181)
TROUT & JONES, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID 83703
(208) 577-5755
service@trout-law.com
*Attorneys for Defendants-Appellees*
AIA Services Corporation & AIA Insurance, Inc.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant/Appellees AIA Insurance, Inc. and AIA Services Corporation, by and through its undersigned counsel, Alyssa R. Jones, hereby identifies its parent corporation and any publicly held corporation owning 10% or more of its stock as follows:

AIA Insurance Inc.'s parent corporation is AIA Services Corporation, which no publicly held corporation owns 10% or more of its stock.

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant/Appellees Crop USA Insurance Services, LLC and Crop USA Insurance Agency, Inc., by and through its undersigned counsel, Daniel Loras Glynn, hereby identifies its parent corporation and any publicly held corporation owning 10% or more of its stock as follows:

Crop USA Insurance Services, LLC's parent corporation is Crop USA Insurance Agency, Inc., and no publicly held corporation owns 10% or more of its stock.

/s/ Alyssa R. Jones
Attorneys for Appellees AIA Insurance, Inc. and AIA Services Corporation.

/s/ Daniel Loras Glynn
Attorneys for Appellees Crop USA Insurance Services, LLC and Crop USA Insurance Agency, Inc.

i

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS ...............................................................................ii

TABLE OF AUTHORITIES ........................................................................iv

APPELLEES' BRIEF ................................................................................ 1

    JURISDICTIONAL STATEMENT ........................................................... 1

    ISSUES PRESENTED FOR REVIEW ...................................................... 1

    STATEMENT OF THE CASE ................................................................ 1

    SUMMARY OF THE ARGUMENT ...................................................... 10

    STANDARD OF REVIEW ................................................................. 11

    ARGUMENT ................................................................................ 13

      A. Judge Nye did not err because Miesen's derivative demands failed under the Idaho law and were inadequate. ................................ 13

        i. July 2008 Demand................................................................ 16

        ii. April 2012 Demand .............................................................. 18

        iii. July 2012 Demand................................................................ 19

        iv. June 2016 and August 2016 Demands ............................................ 20

        v. All Demands are Insufficient........................................................ 21

        1. Judge Nye did not err by referring to Munding. ............................... 21

        2. Judge Dale's prior findings were interlocutory and did not bind Judge Nye. .............................................................. 25

      B. Judge Nye did not err by dismissing Miesen's direct claims, because he failed to plead any direct claims. ..................................... 27

      C. McDermott was properly excluded under *Daubert* and Rule of Evidence 403................................................................. 32

      D. Miesen was not excused from making any demands. ......................... 37

      E. Judge Nye properly excluded evidence outside of the pleadings.......... 40

      F. Assignment of a new judge would be improper................................. 42

    CONCLUSION ............................................................................. 45

CERTIFICATE OF COMPLIANCE ........................................................ 46

CERTIFICATE OF SERVICE ................................................................ 47

iii

## Table of Authorities

Page

**Cases:**

*Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.*
970 P.2d 1273 (1998) ................................................................ 38

*Bakalian v. Cent. Bank of Republic of Turkey*
932 F.3d 1229 (9th Cir. 2019) ................................................ 12

*City of L.A., Harbor Div. v. Santa Monica Baykeeper*
254 F.3d 882 (9th Cir. 2001) .................................................. 26

*City of Pomona v. Sqm N. Am. Corp.*
750 F.3d 1036 (9th Cir. 2014) ................................................ 12

*Daubert v. Merrell Dow Pharms.*
509 U.S. 579 (1993) ................................................................ 33

*Dickenson v. Benewah Cnty. Sheriff*
530 P.3d 691 (Idaho 2023) ..................................................... 42

*Diviero v. Uniroyal Goodrich Tire Co.*
114 F.3d 851 (9th Cir. 1997) .................................................. 33

*Doleman v. Meiji Mut. Life Ins. Co.*
727 F.2d 1480 (9th Cir. 1984) ................................................ 29

*Durham v. Durham*
871 A.2d 41 (N.H. 2005) ......................................................... 38

*Elliot v. Versa CIC, L.P.*
349 F. Supp. 3d 1004 (S.D. Cal. 2018) .................................. 35

*Elosu v. Middlefork Ranch Inc.*
26 F.4th 1017 (9th Cir. 2022) ................................................. 12

*Golden W. Holdings, LLC v. BBT HOldings, LLC*
2010 Wl 4853301 (D. Idaho Nov. 22, 2010) .......................... 41

*Greenspun v. Del E. Webb Corp.*
634 F.2d 1204 (9th Cir. 1980) ................................................ 11

*Griggs v. Pace Am. Grp., Inc.*
170 F.3d 877 (9th Cir. 1999) .................................................. 25

iv

*Gross v. Burggraf Const. Co.*
  53 F.3d 1531 (10th Cir. 1995) ............................................................... 42

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*
  896 F.2d 1542 (9th Cir. 1989) ............................................................... 13

*Harris v. Cnty. Of Orange*
  682 F.3d 1126 (9th Cir. 2012) ............................................................... 13

*Henderson v. Oregon*
  203 F. App'x 45 (9th Cir. 2006) ........................................................... 40

*In re Silicon Graphics Inc. Sec. Litig.*
  183 F.3d 970 (9th Cir. 1999) ................................................................ 11

*Kaplan v. Peat, Marwick, Mitchell & Co.*
  540 A.2d 726 (Del. 1988) ..................................................................... 39

*Kennedy v. Collagen Corp.*
  161 F.3d 1226 (9th Cir. 1998) .............................................................. 12

*Kugler v. Nelson*
  374 P.3d 571 (2016) .............................................................. 37, 38, 39

*Kumho Tire Co. v. Carmichael*
  526 U.S. 137 (1999) ............................................................................. 33

*Lippe v. Bairnco Corp.*
  288 B.R. 678 (S.D.N.Y. 2003) ............................................................. 35

*Manley v. Rowley*
  847 F.3d 705 (9th Cir. 2017) ............................................................... 43

*Mannos v. Moss*
  143 Idaho 927 (2007) ........................................................................... 29

*Mannos v. Moss*
  155 P.3d 1166 (Idaho 2007) ........................................................... 14, 19

*McCann v. McCann (McCann II)*
  275 P.3d 824 (Idaho 2011) .................................................................. 28

*McCann v. McCann*
  61 P.3d 585 (Idaho 2022) ...................... 14, 18, 19, 27, 28, 29, 38

*McKown v. Simon Prop. Grp., Inc.*
  689 F.3d 1086 (9th Cir. 2012) ............................................................. 37

*Miesen v. Munding*
  822 F. App'x 546 (9th Cir. 2020) ..................................... 11, 17, 20, 22, 23, 24

*Oliver v Sealaska Corp.*
  192 F.3d 1220 (9th Cir. 1999) ........................................................ 13

*Orrock v. Appleton*
  213 P.3d 398 (2009) ....................................................................... 37

*Potter v. Hughes*
  546 F.3d 1051 (9th Cir. 2008) .................................................... 11, 14

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*
  442 F.3d 741 (9th Cir. 2006) ........................................................ 42

*Rodriguez v. Disner*
  688 F.3d 645 (9th Cir. 2012) ........................................................ 12

*Rosenbloom v. Pyott*
  765 F.3d 1137 (9th Cir. 2014) .............................................. 11, 12, 27

*Schumacher v. Schumacher*
  469 N.W.2d 793 (N.D. 1991) .................................................... 28, 39

*Stetson v. Grissom*
  821 F.3d 1157 (9th Cir. 2016) ...................................................... 12

*Taylor v. AIA Servs. Corp.*
  151 Idaho 552 (2011) ..................................................................... 3

*Taylor v. Taylor*
  163 Idaho 910 (2018) ................................................................... 44

*U.S. v. Gartenlaub*
  No. 22–55799
  2024 WL 4987258 (9th Cir. Dec. 5, 2024) ............................... 25, 26

*U.S. v. Jingles*
  702 F.3d 494 (9th Cir. 2012) ........................................................ 26

*United States ex rel. Caffaso v. Gen. Dynamics C4 Sys., Inc.*
  637 F.3d 1047 (9th Cir. 2011) ...................................................... 12

*United States v. Dunkel*
  927 F.2d 955 (7th Cir. 1991) ........................................................ 42

*United States v. Lukashov*
  694 F.3d 1107 (9th Cir. 2012) ...................................................... 12

*United States v. Quach*
  302 F.3d 1096 (9th Cir. 2002) .................................................................. 43

*United States v. Ritchie*
  342 F.3d 903 (9th Cir. 2003) .................................................................. 40

*United States v. Wolf Child*
  699 F.3d 1082 (9th Cir. 2012) .................................................................. 43

**Statutes:**

28 U.S.C. § 1291 ........................................................................................ 1
28 U.S.C. § 1332 ........................................................................................ 1
Idaho Code § 20–1–304 ........................................................................... 30
Idaho Code § 30–29–304 ..................................................................... 30, 38
Idaho Code § 30–29–742 ............................................................ 2, 13, 19, 32

**Court Rules:**

9th Cir. R. 36–3 ................................................................................... 22, 24
Fed. R. App. P. 32.1 ................................................................................ 22
Fed. R. Civ. P. 12 ................................................................................... 12
Fed. R. Civ. P. 15 ............................................................................ 7, 25, 27
Fed. R. Civ. P. 23.1 ...................................................................... 10, 11, 14, 25
Fed. R. Civ. P. 54 .................................................................................... 1
Fed. R. Evid. 403 ................................................................................... 37
Fed. R. Evid. 702 ............................................................................... 33, 37

**Other:**

18 *Moore's Federal Practice* (3d ed. 2021) ............................................... 26
19 Am. Jur. 2d *Corporations* (1986) .............................................. 14, 18, 27

**Appellees' Brief**

## JURISDICTIONAL STATEMENT

Jurisdiction was established in the district court under 28 U.S.C. section 1332. This Court has jurisdiction over this appeal pursuant to Federal Rules of Civil Procedure 54(b) and 28 U.S.C. section 1291. The district court entered its Second Amended Judgment on August 18, 2025. *See*, 1-ER-176–77.

## ISSUES PRESENTED FOR REVIEW

A. Judge Nye did not err because Miesen's derivative demands failed under Idaho law and were inadequate.

B. McDermott was properly excluded.

C. Miesen was not excused from making derivative demands.

D. Judge Nye properly excluded evidence outside the pleadings.

E. Assignment of a new judge would be improper.

## STATEMENT OF THE CASE

Rather than outlining a concise statement of the facts relevant to the issues submitted for review, the relevant procedural history and identification of the specific rulings present for review, the Appellant Dale Miesen spends the majority of his Statement of the Case outlining his still as yet unproven allegations against the

1

Individual Defendants[1] who were at various times, or in the case of John Taylor remain, shareholders and directors of AIA Services Insurance, Inc. ("AIA Services"). The Appellees would need far more than the similarly allotted space to unwind and refute the various factual assertions that Miesen, with his long-time allies Reed Taylor and Donna Taylor who all have been represented at various times by the same present counsel for Miesen, have unsuccessfully sought to establish across multiple litigations dating back to 2007. 1-SER-15 at ¶ 8.

However, what is abundantly clear is that despite the purported detail contained in Miesen's assertions of alleged corporate malfeasance in his Statement of the Case, none of this detail is contained in the original pre-suit demand for corrective action served upon the then sitting board of directors for AIA Services on or about July 21, 2008 nor in any of the four subsequent, post-filing demands made by either Miesen or one of these aligned parties. Miesen's attempt to whitewash over the failure to comply with pre-suit obligations imposed by Idaho Code § 30–29–742 with assertions of what he believes he can prove are not relevant to this appeal. Judge Nye did not allow himself to be distracted by such salacious allegations asserted subsequent to the pre-suit demands, but instead correctly focused on what was contained in these pre-suit demands and measured them against Idaho's long standing and clear law applicable to such shareholder demands as aided by this Court's guidance in the unpublished decision of *Miesen v. Munding*.

---

[1] Individual Defendants as used herein shall refer to the Defendants/Appellees James Beck, Michael Cashman, Connie Henderson and John Taylor.

That said, one erroneous assertion of fact contained with the Appellant's Statement of the Case must be addressed given the context of the case and the issues present on this appeal. This action does not, as contended by Miesen, have its origins in a purported elaborate scheme undertaken by the Individual Defendants that was allegedly set in motion in 1995 by these individuals and then carried forward over the course of at least twelve years (from 1995 to 2007) to "illegally redeem" the majority interest of Reed Taylor in AIA Services. (Appellant's Brief at page 2.) Rather, this action has its origins in Reed Taylor's decision to utilize his interest in AIA Services to (1) first secure certain debt obligations agreed to by him in his divorce proceedings with Donna Taylor by establishing her as a Series A Preferred Shareholder in AIA Services subject to priority rights of redemption which were shortly thereafter exercised by her, (2) then subsequently divest himself of ownership in AIA Services through a redemption agreement which provided for a substantial initial payment to him with remaining payments agreed to be junior to Donna Taylor's redemption rights, and then (3) engaging in a series of collusive actions with Donna Taylor to financially crippled AIA Services by reversing the priority of these agreements to enable a return of his control of AIA Services. See *Taylor v. AIA Servs. Corp.*, 151 Idaho 552, 261 P.3d 829 (2011); 1-SER-15–30 ¶¶ 4, 8, 19, 20.

It is against this backdrop, that Donna Taylor, in her capacity as a Series A Shareholder in AIA Services, and Reed Taylor, as a creditor of AIA Services, served on the AIA Services board of directors the first, and only, purported pre-suit demand dated July 21, 2008 ("July 2008 Demand"). 2-SER-452–455. It was this demand which contained the sort of "generic and conclusory" assertions of alleged wrong-

3

doing that this Court affirmed as being inadequate in the case of *Miesen v. Munding* and which Judge Nye independently evaluated with the guidance provided by this Court therein.

Two years after the service of this purported demand, Donna Taylor and Miesen filed the Complaint initiating this action on August 11, 2010. 2-ER-179–228. Significantly, the original allegations make clear that both Donna Taylor and Miesen were "bringing this derivative action on behalf of the preferred and common shareholders of AIA Services." 2-ER-179–228, ¶¶ 3.1 and 3.3. Nowhere in this initial pleading is there any assertion of a direct claim or alleged damages that were unique to either Donna Taylor and/or Miesen as opposed to those purportedly suffered by the common shareholders of AIA Services collectively. Moreover, Donna Taylor specifically alleged that she was "disregarding any potential priority for purposes of prosecuting this action and [was] pursuing all claims made in this Complaint equally and fairly on behalf of all preferred and common shareholders of AIA." 2-ER-179–228, ¶ 5.11. As the jurisdictional pre-requisite to this unquestionably derivative action, Donna Taylor certified compliance with the pre-suit demand requirements based on the July 2008 Demand. 2-ER-179–228, ¶ 5.1.

On November 22, 2010, Donna Taylor filed a First Amended Complaint which removed Miesen as a named Plaintiff, but as was the case with the original Complaint still asserted that her action was a "derivative action." 2-SER-416–417, ¶ 3.1. Once again, Donna Taylor alleged compliance with the pre-suit obligations of Idaho corporate law based on the July 2008 Demand. 2-SER-433, ¶ 5.1

4

Subsequently, on or about April 3, 2012, Appellant's counsel sent an email to the then legal counsels for AIA Services ("April 2012 Demand"). 2-SER-414. As Judge Nye rightly recognized, this purported demand was a four-paragraph email which was not served upon AIA Services itself. 1-ER-141. As also recognized by Judge Nye, this email does not direct the AIA Services board of directors to initiate action against a party for alleged wrongdoing, but instead only demands that AIA Services take certain specified actions not involving litigation. *Id.*

Thereafter, on July 13, 2012, another purported shareholder demand was served on the AIA Services board of directors ("July 2012 Demand"). 2-SER-370–413.Once again, this demand contained generic and conclusory language demanding that AIA Services take certain identified actions but, as Judge Nye also recognized, failed to identify the legal and factual basis for any assertions of claims which Appellant's counsel demanded of AIA Services. 1-ER-142–145.

On June 13, 2016, Appellant's counsel directed another correspondence to the AIA Services board of directors (June 2016 Demand). 2-SER-323–333. It is this particular demand that was the subject of the case *Miesen v. Munding* which concluded that the demand was legally insufficient. In reviewing the June 2016 Demand, Judge Nye recognized that the target defendant in the *Miesen v. Munding* matter was not one of the Defendants in the present litigation. 1-ER-127. Thus it is clear that in reaching the same conclusion as was affirmed by this Court in *Miesen v. Munding*, Judge Nye independently reviewed the adequacy of the June 2016 Demand and using this Court's prior ruling as guidance found the June 2016 Demand

to be inadequate as to the Defendants in this lawsuit as it failed to describe with particularity the legal theories that Appellant demanded to be pursued and the factual basis for those undefined claims. 1-ER-136–139.

Nonetheless, and even though Appellant had only served the June 2016 Demand seven days prior, on June 20, 2016, Dale Miesen returned as a Plaintiff to these proceedings with the filing of the Second Amended Complaint. 4-ER-866–923. Again, the Second Amended Complaint alleged that Donna Taylor and Miesen were "bringing this derivative action on behalf of AIA Services…" 4-ER-866–923, ¶ 7. In the Second Amended Complaint, Miesen and Donna Taylor alleged compliance with Idaho's pre-suit demand requirement based on the July 2008 Demand, the April 2012 Demand, and the July 2012 Demand but the allegations made no reference whatsoever to the June 20, 2016 Demand. 4-ER-866–923, ¶¶ 139, 146–147.

On August 23, 2016, Donna Taylor and Miesen served another letter upon the AIA Services board of directors ("August 2016 Demand"). 5-ER-1181–1193. As Judge Nye properly identified, this correspondence is in all material respects no different than the June 2016 Demand. 1-ER-145.

Moreover, with regard to both the June 2016 Demand and the August Demands, the AIA board responded to Appellant's counsel and advised Appellant that these demands were too nebulous to enable the board to investigate the alleged claims. 5-ER-1194–1195. Rather than respond to this correspondence, on November

4, 2016, Appellant simply filed his Motion to Amend and Supplement Complaint. 1-SER-123–125. The Individual Defendants, along with CropUSA Insurance Agency, Inc. ("CropUSA"), filed their Opposition to this Motion. 1-ER-1148–1166.

On April 21, 2017, Judge Dale filed her Memorandum Decision and Order, granting in part and denying in part, Appellant's Motion to Amend and Supplement Complaint under Federal Rules of Civil Procedure 15(a)(2). 1-ER-20–57.

Accordingly, on April 24, 2017, Miesen filed the Third Amended Complaint which now removed Donna Taylor as a named Plaintiff, leaving only Miesen to pursue the claims contained therein. 6-ER-1284–1367 As with all the prior Complaints, Miesen asserted only that he was bringing "this derivative action as a shareholder and on behalf of AIA Services." 6-ER-1289, ¶5. In the Third Amended Complaint's allegations certifying compliance with the pre-suit demand requirements Miesen relied upon all five of the purported demands identified above (July 2008 Demand, April 2012 Demand, July 2012 Demand, June 2016 Demand, and August 2016 Demand). 6-ER-1284–1367, ¶¶ 172, 177, 178, 179, & 180.

In the years that followed, Miesen unleashed a truly astonishing discovery practice that included (1) 24 Interrogatories and 169 Requests for Production served upon each of the AIA Entities; (2) 23 Interrogatories, 73 Requests for Admission, 169 Requests for Production on each of the CropUSA Entities; and (3) 25 Interrogatories, 231 Requests for Admission, and 194 Requests for Production on each Individual Defendant. 1-SER-6–7, at ¶ 10. In total, this discovery practice resulted in the production of over 1.5 million pages of documentation. *Id.* Additionally, Appellant undertook what ultimately was eight days of deposition question of John Taylor,

7

along with day long depositions of each of the Individual Defendants, the Hawley Troxel Ennis & Hawley Defendants, and the corporate representatives of the Defendant GemCap Lending I, LLC. *Id.*

At the conclusion of this mammoth discovery practice, various dispositive motions were filed by the Defendants. Among these dispositive motions was The Hawley Troxell Defendants' Motion to Dismiss All Claims for Failure to Satisfy Mandatory Derivative Demand Requirements ("MTD") as joined by the Individual Defendants, the AIA Entities, and the CropUSA Entities. 10-ER-2237–2256 & 10-ER-2333–2335. Also included in these motions was the Hawley Troxell Defendants' Motions to Exclude Testimony from Plaintiff's Expert Witness Richard McDermott and the Hawley Troxell Defendants' Motion to Exclude Richard McDermott Re: Expert Contingency Fee (collectively referred to as "Motions to Exclude"). 1-SER-52–53 & 1-SER-31–33.

Before addressing the MTD, Judge Nye determined to address the Motions to Exclude in recognition of the fact that the Court's rulings on the Motions to Exclude would affect the issues presented in the various dispositive Motions. 10-ER-2331–2332. Ultimately, Judge Nye found that McDermott had "assumed the improper role of an advocate masquerading as an expert in this case" and granted the Motion to Exclude on this basis. 1-ER-87–89. In view of this holding, Judge Nye determined that the Motion to Exclude McDermott on the basis of an improper contingency fee arrangement with Appellant's counsel was moot. 1-ER-92–93.

Having addressed the Motions to Exclude, Judge Nye then took up the MTD. As discussed above, with the guidance provided by this Court in *Miesen v. Munding*,

8

along with a detailed analysis of Idaho law, Judge Nye independently and thoroughly evaluated each individual purported derivative demand presented by Miesen and Donna Taylor. 1-ER-99–150. This analysis, which spanned over the course of the fifty-one page decision, ultimately resulted in the correct conclusion that these demands failed to satisfy the minimum requirements of a pre-suit demand under Idaho's corporate law and required the dismissal with prejudice of Appellant's action. *Id.*

Unfortunately, this decision did not herald the conclusion of the litigation. Rather, despite the repeated allegations in the various complaints filed over the course of this sixteen year litigation that Donna Taylor and Miesen's claims were "derivative," Miesen dramatically reversed course and asserted that he possessed direct claims entirely duplicative of the derivative claims that had been dismissed. Ultimately, on May 5, 2025, Judge Nye in another thorough and well-reasoned decision recognized that "[b]y all accounts Miesen is trying, belatedly, to frame his claims in a way other than what he originally intended. And for good reason: to save the claims. But this latent [sic] effort fails." 1-ER-171.

As the foregoing makes abundantly clear, this sixteen year litigation has had a long and tortured history, one largely of the Appellant's own making. While there may have been some delay in addressing the multitude of issues presented by the myriad of complexities raised by Appellant, in the end an analysis of Judge Nye's decisions which are the subject of the present appeal demonstrate a thoughtful, thor-

ough, and conclusive analysis of the issues which rightly resulted in the dismissal with prejudice of all claims against the Individual Defendants, the AIA Entities and the CropUSA Entities.

## SUMMARY OF THE ARGUMENT

The District Court did not err in dismissing Appellant Miesen's claims, and its Second Amended Judgment should be affirmed on all issues presented, as Miesen failed to comply with the mandatory, non-waivable pre-suit derivative demand requirements of Idaho law. For fifteen years, Miesen filed a series of five legally inadequate demands that were generic, conclusory, and failed to state with the particularity required under both Idaho law and Federal Rules of Civil Procedure 23.1.

Judge Nye correctly exercised his discretion by relying on this Court's persuasive, unpublished decision in *Miesen v. Munding*, which analyzed the exact same 2016 demand letter and found it legally insufficient under Idaho law. Judge Nye properly reconsidered a prior, interlocutory order in light of this intervening appellate guidance. Miesen cannot overcome this fatal deficiency by claiming an exception, as Idaho law explicitly rejects the futility exception to the demand requirement.

Furthermore, the District Court correctly dismissed Miesen's alleged direct claims because they fail the Idaho distinct injury test; Miesen's own pleadings acknowledge that the relief sought, damages recovered for the benefit of the AIA Entities and paid to all innocent shareholders, is an injury to the corporation as a whole, not distinct to him personally.

10

The District Court also correctly excluded evidence outside the pleadings, as the declaration Miesen attempted to introduce was subject to reasonable dispute and could not be considered on a motion to dismiss without converting it to a motion for summary judgment. Similarly, Judge Nye's decision to take judicial notice of public court records, including the *Munding* decision and the identical demand letter at issue, was entirely proper. Finally, no reassignment is warranted, as Judge Nye is highly reputable, and reassignment would cause immense waste and duplication of effort in bringing a new judge up to speed on this protracted, fifteen-year case.

## STANDARD OF REVIEW

Appellant fails to cite to the correct standard of review, and in fact, attempts to again ask this Court to overturn all precedent. *See*, *Miesen v. Munding*, 822 F. App'x 546 (9th Cir. 2020). The correct standard of review for dismissal of an action under Federal Rules of Civil Procedure 23.1 is reviewed for abuse of discretion. *Potter v. Hughes*, 546 F.3d 1051, 1056 (9th Cir. 2008); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 983 (9th Cir. 1999). *See also*, *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1210 (9th Cir. 1980) ("The district court determined that Greenspun failed to make a demand and that such a demand would not have been futile. We must affirm unless the district court abused its discretion in reaching this conclusion.").

This Court has previously ruled on whether the standard regarding Rule 23.1 should change to a *de novo* standard of review but declined. *Rosenbloom v. Pyott*, 765 F.3d 1137, 1147 (9th Cir. 2014).

> Although Plaintiffs urge us to apply a *de novo* standard, the authorities that they cite, all of which criticize the abuse of discretion standard, are not intervening, controlling precedents that would compel us to depart from *Potter* and *In re Silicon Graphics.* Accordingly, we follow *Potter* and *In re Silicon Graphics* and review the opinion below for abuse of discretion.

*Id.* (internal citations omitted).

"A district court abuses its discretion when it applies an incorrect rule of decision, or when it applies the correct rule to factual conclusions that are 'illogical, implausible, or without support in the record.'" *Stetson v. Grissom*, 821 F.3d 1157, 1163 (9th Cir. 2016) (quoting *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012). "We review evidentiary rulings for abuse of discretion and reverse if the exercise of discretion is both erroneous and prejudicial." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1023 (9th Cir. 2022) (quoting *City of Pomona v. Sqm N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014)). This standard applies to motions to exclude expert testimony. *Id.* (citing *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1227 (9th Cir. 1998). The district court's factual determinations are reviewed for clear error. *Id.* (citing *United States v. Lukashov*, 694 F.3d 1107, 1114 (9th Cir. 2012)).

The standard of review for dismissal under Federal Rules of Civil Procedure 12(b)(6) is *de novo*. *Bakalian v. Cent. Bank of Republic of Turkey*, 932 F.3d 1229, 1233 (9th Cir. 2019). The standard governing a Rule 12(c) motion for judgment on the pleadings is "functionally identical" to that governing a Rule 12(b)(6) motion. *United States ex rel. Caffaso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011). "Judgment on the pleadings is proper when the moving party

clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). If a court grants a motion for judgment on the pleadings, leave to amend should be granted unless "the Court is satisfied that an amendment could not cure the deficiency." *Harris v. Cnty. Of Orange*, 682 F.3d 1126, 1135 (9th Cir. 2012).

## ARGUMENT

**A. Judge Nye did not err because Miesen's derivative demands failed under the Idaho law and were inadequate.**

A derivative action is distinguishable from an individual action. In a derivative action, a stockholder sues to remedy wrongs allegedly done to a corporation. *Oliver v Sealaska Corp.*, 192 F.3d 1220, 1225 (9th Cir. 1999). Under Idaho Code § 30–29–742:

No shareholder may commence a derivative proceeding until:

(a) A written demand has been made upon the corporation to take suitable action; and

(b) Ninety (90) days have expired from the date delivery of the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety (90) day period.

Under Federal Rules of Civil Procedure 23.1, the stockholder must, *inter alia*, "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members . . . ." Fed. R. Civ. P. 23.1(b)(3); *see also*, *Potter v. Hughes*, 546 F.3d at 1056.

Further under Idaho law, the shareholder's demand effort must be "earnest and sincere, and not a feigned or simulated, effort to induce the directors to take remedial action." *McCann v. McCann*, 61 P.3d 585, 592 (Idaho 2022) (quoting 19 Am. Jur. 2d *Corporations* § 2278, 173–74 (1986)). The Idaho Supreme Court has made it clear, that Idaho state law does not include a futility exception to the demand requirement. *Id.* ("[T]he futility exception no longer applies to the demand requirement as set forth in the statute.") Together, a demand to simply act is insufficient. *Id.* The Idaho Supreme Court explained:

> Statements should be presented to the directors showing the wrong complained of, accompanied by sufficient responsible data which will enable the directors to determine whether litigation could be engaged in with some hope of success. The shareholder must state acts, not mere general charges and conclusions.
>
> The demand should give the directors a fair opportunity to initiate the action which the shareholder wants to undertake, and name the potential defendants, as well as the shareholder making the demand.

*Id.* (quoting 19 Am. Jur. 2d *Corporations* § 2278, 173–74 (1986)).

A written derivative demand is mandatory, and failure to comply with demand requirements under Idaho law necessitates the dismissal of a derivative action. *Mannos v. Moss*, 155 P.3d 1166, 1172–73 (Idaho 2007).

The following demands and complaints were filed in this matter:

| | DESCRIPTION | EXCERPTS OF RECORD |
|---|---|---|
| **Demand** <br> July 21, 2008 | Letter from attorney Michael Bissel on behalf of Donna Taylor addressed to the AIA Entities' board of directors. | 2-SER-452-455 |
| **Complaint** <br> August 11, 2010 | Filed by Donna Taylor and Dale Miesen | 2-ER-179-228 |
| **First Amended Complaint** <br> November 22, 2010 | Dale Miesen dropped as a plaintiff | 2-SER-415-451 |
| **Demand** <br> April 3, 2012 | Email from attorney Rod Bond to attorneys representing the AIA Entities | 2-SER-414 |
| **Demand** <br> July 16, 2012 | Demand made at shareholders' meeting | 2-SER-370-413 |
| **Demand** <br> June 13, 2016 | Letter from attorney Rod Bond on behalf of Dale Miesen addressed to the AIA Entities' board of directors | 2-SER-323-333 |

| | | |
|---|---|---|
| **Second Amended Complaint** June 20, 2016 | Miesen rejoins as a plaintiff | 4-ER-866-923 |
| **Demand** August 23, 2016 | Letter from attorney Rod Bond on behalf of Dale Miesen addressed to the AIA Entities' board of directors | 1-SER-80-92 |
| **Third Amended Complaint** April 24, 2017 | Donna Taylor dropped as a plaintiff | 6-ER-1284-1367 |

### i. July 2008 Demand

The earliest demand letter is addressed to the AIA Entities' Board of Directors, written by attorney Michael Bissell on behalf of Donna Taylor and Reed Taylor. It demanded that the Board of Directors:

> [T]ake action against the law firms of Hawley Troxell Eniss & Hawley; Clements, Brown & McNichols; Quarles & Brady; together with the responsible attorneys of said firms (and any other firms which have wrongfully represented the entities) for violating the applicable Rules of Professional Conduct, malpractice, breach of fiduciary duties, and aiding and abetting, including, without limitation, all acts related to or involving the following claims and/or causes of action: [list][2].

---

[2] Sample of the list:

. . .

2. Taking action against the best interests of AIA Services and/or AIA Insurance;

. . .

5. Issuing inappropriate opinion letters to lenders and auditors;

16

2-SER-452.

The district court held that the list "did not describe with particularity the claims for relief or the factual bases for those claims." 1-ER-139. Just as this Court held in *Munding*, this letter "cannot have been expected to provide the boards with enough information to take 'suitable action.'" *Munding*, 822 F. App'x at 548. The letter failed to allege causes of action to any particular law firm or lawyer, and failed to identify a lawyer who was purportedly liable. 1-ER-140. This demand was held to be general and conclusory, and thus inadequate under Idaho law.

---

. . .

7. Preventing claims from being made against present and past directors, including, without limitation, R. John Taylor, Michael Cashman, James Beck and Connie Taylor;

. . .

10. Failing to take action against interested directors and parties who took part in fraud, conspiracy and other illegal activities, including, without limitation, R. John Taylor, James Beck, Michael Cashman and Connie Taylor;

11. Breaching fiduciary duties (including the duty of loyalty owed to AIA Services and AIA Insurance;

. . .

22. Failing to comply with contractual obligations owed to Reed and Donna;

. . .

27. Accepting payment of attorneys' fees and costs which should have been allocated to other parties, including, without limitation, fees and costs that should have been paid by Crop USA, R. John Taylor, James Beck, Michael Cashman and Connie Taylor.

17

### ii.   April 2012 Demand

This demand was only a four paragraph email from attorney Rod Bond, on behalf of Donna Taylor, Dale Miesen, LeeAnn Hostetler, Kay Hanchett, Jerry Legg, and Bobette Ruddell, to the "Counsel and Board of Directors of AIA Services and AIA Insurance." 2-SER-414. The demand itself is a single paragraph:

> Demand is hereby made to the board of directors of AIA Services and AIA Insurance to; (1) cease all efforts to withdraw the $400,000 in the court registry in Taylor v. AIA Services; (2) cease paying any attorneys' fees or costs for John Taylor, Michael Cashman, and James Beck; (3) secure the mortgage of the Lewis Clark Hotel; (4) cease all compensation to the foregoing individuals; (5) hold annual shareholder meetings; (6) comply with all applicable Bylaws and Articles of incorporation of the corporations; and (7) make full disclosure to all shareholders of all of the inappropriate and illegal transactions which have occurred over the years. Obviously, complying with the Bylaws, Articles of Incorporation and Idaho law results in the present purported board members being conflicted from taking any action whatsoever, including withdrawing the $400,000 held in the court registry or taking any other funds or assets from the corporations.

*Id.*

Under *McCann*, this demand fails to direct the Board to initiate an action against any other party. 61 P.3d at 592. It also fails to include "[s]tatements . . . presented to the directors showing the wrong complained of, accompanied by sufficient responsible data which will enable the directors to determine whether litigation could be engaged in with some hope of success." *Id.* (quoting 19 Am. Jur. 2d Corporations § 2277, 172–73 (1986)). Further, the email was only sent to attorneys David Risely, John Ashby, Gary Babbitt, and James LaRue. The Idaho Supreme Court held

18

that demands are insufficient when delivered to a corporation's attorney and not to the directors themselves. *Id.* Therefore, the district court found this demand to be inadequate under Idaho law.

### iii.   July 2012 Demand

The district court held that this demand was also inadequate as a derivative demand under Idaho law. The Hawley Troxell Defendants were not named, and therefore did not give the AIA Entities fair opportunity to review and pursue possible claims. *See*, 1-ER-142–143.

Further, the July 2012 demand fails as a derivative demand, due to the fact that it asks for the AIA Entities to take some action not involving litigation. Four paragraphs generally discuss litigation, but it is a demand to pursue the litigation already in the Federal Case, rather than a pre-suit demand. *See*, 2-SER-370–413, ¶¶ 1, 3, 4, and 18.

Under Idaho Code § 30–29–742 and *Mannos*, "a shareholder may not commence a derivative proceeding until he makes a written demand upon the corporation to take suitable action at least ninety days prior to the commencement of the action." 155 P.3d at 1172–73. Therefore, this demand fails and is inadequate under Idaho law.

19

#### iv.    June 2016 and August 2016 Demands

This Court has found the June 2016 demand to be inadequate under Idaho law. And the August 2016 demand is ultimately a copy and paste of the June 2016 demand. 1-SER-80–92.

This Court determined that the demand letter "failed to describe with particularity the claims for relief [Miesen] sought or the factual bases for those claims." *Munding*, 822 F. App'x at 548.

The district court not only agreed with this Court, but applied it further to the Hawley Troxell Defendants and the Individual and CropUSA Defendants. 1-ER-136–137. Only two paragraphs within the demand contain specific paragraphs for the Hawley Troxell and John Munding:

> 11. Pursue all possible claims against Hawley Troxell requiring it to disgorge all compensation received or paid to Hawley Troxell directly or indirectly from AIA based on Hawley Troxell's conflicts of interest, breached fiduciary duties (including the duties of loyalty) and related malpractice, including, without limitation, all subsequent payments made by AIA to Hawley Troxell.
>
> . . .
>
> 22. Pursue all possible claims against John Munding and Crumb & Munding (or such other firm Mr. Munding is operating through) for malpractice, breach of fiduciary duties and to disgorge all attorneys' fees, costs and expenses paid to them directly or indirectly by AIA for the California Lawsuit as Mr. Munding intentionally violated his duties owed to AIA . . . .

2-SER-323–333.

20

The district court determined that there was no "instance where the allegations against the Hawley Troxell Defendants is less generic or less conclusory than the allegations against John Munding. 1-ER-138.

The paragraphs relating to CropUSA and the Combined Defendants are no different, demanding they "pursue all possible claims," which does not go beyond generic and conclusory allegations, and fails to identify specific, suitable actions for the AIA entities to consider. Therefore, these two demands fail and are inadequate under Idaho law.

### v. All Demands are Insufficient

Because Appellant failed to make adequate demands under Idaho law, the district court correctly dismissed the lawsuit. This case has been ongoing for over fifteen years, and Appellant's continued arguments are not based in reason or law. The district court appropriately exercised its discretion and dismissed Appellant's derivative claims under *Munding* and *McCann*. Further, because amending the complaint would not have remedied the inadequacies, the derivative claims were dismissed with prejudice. This Court should affirm the district court's decision.

### 1. Judge Nye did not err by referring to Munding.

It was proper for Judge Nye to look to the *Munding* decision because this Court considered the exact same June 2016 Demand in its findings, and found the

21

Demand was legally insufficient. *Munding*, 822 F. App'x at 547. Under Ninth Circuit Rule 36–3, courts are expressly allowed citation to unpublished decisions, and while not precedential, they can be persuasive. Further:

> A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like; and (ii) issued on or after January 1, 2007.

Fed. R. App. P. 32.1(a).

This Court upheld the Eastern District of Washington's dismissal due to the inadequacy of the Demand, and therefore it was proper for the district court to look to this Court's decision:

> The district court correctly concluded that Mr. Miesen's letters, as excerpted in the Amended Complaint, did not make an adequate demand on the boards because it did not sufficiently describe the action he sought to have the boards take. Mr. Miesen's excerpted letters described his proposed claims in terms of "all possible claims" or similarly generic, conclusory language. *The letters failed to describe with particularity the claims for relief he sought or the factual bases for those claims*. Such language cannot have been expected to provide the boards with enough information to take "suitable action." Without knowing the factual bases for the claims, the boards could not determine the likelihood of the lawsuit's success and would have had difficulty weighing factors like the expenses involved in litigation or whether litigation would further the AIA Entities' general business interests. These are considerations that boards were entitled to make. *See*, *Daily Income Fund, Inc. v. Fox*, 464 U.S. 423, 533 & n.9, 104 S. Ct. 831, 78 L.Ed.2d 645 (1984). The district court did not abuse its discretion by dismissing Mr. Miesen's Amended Complaint for failure to meet Rule 23.1's pleading requirements.

*Munding*, 822 F. App'x at 548–49 (emphasis added).

Here, Appellant attempts to argue that this Court applied *Munding* only to Munding and his firms. However, that could not be further from the truth, as this Court held that the demands failed to describe with particularity the claims for which relief was sought. *Id.* at 549. Further, this Court held that amendment would have been futile, because the deficiencies would not have been cured. *Id.*

> Mr. Miesen suggests that were he given leave to amend, he would "quote the entire letters or attach the letters to his amended complaint." But the omitted portions of the letters are no more specific, nor any more relevant, than the excerpts included in the Amended Complaint.

*Id.*

*Munding* is not distinguishable from this current matter. In fact, they are one in the same. The Demand analyzed in *Munding*, is the exact July 2016 Demand here. Neither the Washington Court, the Idaho Court, nor this Court, has held that any of Appellant's demands were adequate under Idaho law. No court has allowed Appellant leave to amend. The district court stated:

> Miesen filed a petition for certiorari in *Munding*, and the Supreme Court denied it. Miesen argues that the denial of certiorari does not support the merits of the Ninth Circuit's decision. (citing *Brown v. Allen*, 344 U.S. 443, 456 (1953) ("We have frequently said that the denial of certiorari imports no expression of opinion upon the merits of a case.") (cleaned up)). However, this argument ignores the practical effect of the denial of certiorari in *Munding*: in that case, there is no remaining question about the sufficiency of the demand. The decision is final that the June 2016 Demand is insufficient under Idaho law in that case. Miesen asks this Court to now find that the June 2016 Demand is sufficient under Idaho law in this case.

23

1-ER-130–131 (cleaned up).

It would be improper for this Court to hold the demand to be insufficient under Idaho law in one case, but sufficient in another. *Munding*, 822 Fed. App'x at 548 ("Applicable state law required Mr. Miesen to make a 'written demand . . . upon the corporation to take suitable action.' Idaho Code § 30–29–742."). Ultimately, Appellant attempts to take another bite of the same apple.

The district court noted further that under Ninth Circuit Rule 36–3, unpublished decisions become precedential "when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion." *Id.* at n. 17. While not raised below by the Hawley Troxell Defendants, the issue of preclusion could have been another reason for dismissal and is another reason to uphold the district court here.

It is clear that the district court did not solely rely on *Munding* in reaching its conclusion, as it also analyzed the demands under *McCann*.

> While the Ninth Circuit did not cite *McCann* directly, it did base its holding on the same law. Notably, *McCann* also holds that "[t]he shareholder must state facts, not mere general charges and conclusions" and that the shareholder must name the potential defendants. 61 P.3d at 591–92. The purpose of stating facts and claims, even if not the precise claims, is to "give the directors a fair opportunity to initiate the action which the shareholder wants to undertake." *Id. Munding* holds the same.

1-ER-133–134.

Therefore, while *Munding* was persuasive to the district court, as the decision came from the court of appeals over the district, had the same plaintiff, and reviewed

the exact same evidence, it analyzed the demands under Rule 23.1 and *McCann*. This Court should affirm the district court's decision. The Demands were insufficient under Idaho law.

### 2. Judge Dale's prior findings were interlocutory and did not bind Judge Nye.

Judge Dale did not find that the 2016 demands were adequate to proceed forward, but rather determined whether Appellant should be given leave to amend under Federal Rules of Civil Procedure 15.

Under Rule 15, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). And, "this determination should be performed with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). Judge Dale found the demands were adequate under the liberal standard of Rule 15. *See*, 1-ER-20–57.

Even so, Judge Nye was not bound by Judge Dale's Order; the outcome of his Order did not undo or ratify Judge Dale's Order allowing amendment. *See*, 1-ER-128–129.[3]

Here, Appellant attempts to argue that Judge Nye's review of the demand letters was improper under the "law of the case doctrine." "Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *U.S. v. Gartenlaub,*

---

[3]   Judge Boyle's 2011 Order did not address the demand letters, and could not have mentioned any except the July 2008 Demand. Therefore, that Order did not impede Judge Nye's decision from concluding that the demand letters were inadequate.

No. 22–55799, 2024 WL 4987258, at \*1 (9th Cir. Dec. 5, 2024) (quoting *U.S. v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012)). "For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in the previous disposition." *Id.*

Further, "[w]hen a court applies the law of the case doctrine to its own prior decisions (or those of a coordinate or equal court), the traditional formulations of the doctrine must be conceived as rules of thumb and not as straightjackets on the informed discretion and sound practical judgment of the judge." 18 *Moore's Federal Practice*, § 134.21[1] (3d ed. 2021). Also, "[t]he doctrine simply does not impinge a district court's power to reconsider its own interlocutory order . . . ." *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001).

The district court reasoned:

> The Court is not faced with reconsidering Judge Dale's order allowing amendment of the complaint–that is, the outcome of this decision will not undo or ratify the order allowing amendment. Rather, the Hawley Troxell Defendants ask the Court to make findings that are contrary to Judge Dale's findings upon which she relied, at least in part, in her decision allowing amendment. The Court does not undertake this exercise lightly; however, since Judge Dale's order over four years ago, the Ninth Circuit has issued its *Munding* ruling, which conflicts with Judge Dale's order. What's more, the Court is not bound by this prior order. Accordingly, the Court will review the demand letters consistent with *Munding* and reassess whether they are adequate under Idaho law.

1-ER-128–129.

Judge Dale also did not review each allegation, as Judge Nye did. *See*, 1-ER-39. Judge Dale *generally* reviewed the demands, considered them in the light

26

of Rule 15, but had she had the analysis from *Munding*, the outcome would have been different. It is reasonable for Judge Nye to have reconsidered the issues based on this Court's guidance. In fact, Judge Nye knew that Judge Dale would have been overturned. The district court clarified:

> Although Judge Dale originally found the letters to be adequate, the Court now has the benefit of a Ninth Circuit case on this exact matter. Furthermore, Judge Dale's ruling was interlocutory. While the law of the case doctrine strives for consistency, it also allows for changed circumstances. Said differently, even had this been brought as a motion for partial reconsideration of Judge Dale's prior findings, the Court could have come to the same conclusion it did today.

1-ER-148.

Finally, Appellant's attempt to have this Court create a new rule to review a derivative demand *de novo* is unfounded. Under *Rosenbloom*, this Court has already considered the issue, and therefore Appellant's argument is futile. 765 F.3d at 1147.

### B. Judge Nye did not err by dismissing Miesen's direct claims, because he failed to plead any direct claims.

Derivative actions are brought by one or more stockholders of a corporation to enforce a corporate right or remedy a wrong if the corporation has failed to take appropriate action. *McCann*, 61 P.3d at 590 (quoting 19 AM.JUR.2D *Corporations* § 2250, 151–52 (1986)). Conversely, direct actions are actions a stockholder may maintain:

> [I]n his own right for an injury directly affecting him, although the corporation also may have a cause of action growing out of the same

27

wrong, where it appears that the injury to the stockholder resulted from the violation of some special duty owed to the stockholder by the wrongdoer and having its origin in circumstances independent of the plaintiff's status as a shareholder.

*McCann*, 61 P.3d at 590.

If both direct and derivative claims stem from the same wrong, the shareholder must allege harm to himself that is distinct from the harm suffered by other shareholders. *McCann v. McCann*, 275 P.3d 824, 831 (Idaho 2011) *(McCann II)* (citing *Schumacher v. Schumacher*, 469 N.W.2d 793, 798 (N.D. 1991) (citations omitted)). The claims asserted must have effect on the pleading shareholder "above and beyond" every other shareholder that hurts the pleading shareholder *specifically. Id.* at 832.

Accordingly,

A stockholder's derivative action is an action brought by one or more stockholders of a corporation to enforce a corporate right or remedy a wrong to the corporation in cases where the corporation, because it is controlled by the wrongdoers or for other reasons fails and refuses to take appropriate action for its own protection.

An action brought by a shareholder is derivative if the gravamen of the complaint is the injury to the corporation or to the whole body of its stock or property and not injury to the plaintiff's individual interest as a stockholder.

*McCann*, 61 P.3d at 590.

Against these standards, the Idaho Supreme Court affirmed the trial court's determination that the gravamen of the Plaintiff's complaint in *McCann* was deriv-

ative in nature as the claims asserted were generalized allegations of wrongdoing against those who controlled the corporation. *Id.* Thus, the characterization of the claims as derivative was affirmed because "[e]ven if there is some potential injury to [Plaintiff], [Plaintiff's] alleged injuries appear to be dependent on his status as a shareholder, and solely an injury to the corporation but not to him personally as an individual." *Id. See also*, *Mannos v. Moss*, 143 Idaho 927, 933, 155 P.3d 1166, 1172 (2007) (holding that "[a]ny claim that [Plaintiff] has regarding the Defendant's depletion of corporate assets can only be pursued by him through a derivative action.").

Here, Appellant attempts to save his case based on the dismissal of his derivative claims, which have been recast as "direct" claims. *See*, *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1485 (9th Cir. 1984) (holding "a shareholder cannot change a derivative cause of action into a direct cause of action simply by alleging some injury to the minority shareholders. For a direct cause of action to exist, the injury to the minority shareholders may not be incidental to the corporation's injury.").

Appellant's attempt to claim ultra vires relief to save his alleged direct claims fails. Appellant asserted, despite the all-inclusive dismissal of the derivative claims:

> Miesen's direct statutory and declaratory relief claims for ultra vires/ unauthorized act/contracts under I.C. §§ 30–1-304 & 30–29–304, together with his injunctive relief, request to set aside the act/contracts and request for related damages *for the AIA Entities*, still need to be adjudicated, as provided under I.C. §§ 30–1-304(2)(a) & (3) and 30–29–304(2)(a) & (3). (See, e.g., Dkt. 211 at 49–55, 72–75, 79–82.) These claims include, without limitation, the failure to comply with the

29

> AIA Entities' amended articles of incorporation and bylaws. (See, e.g., Dkts. 1131–10, 1079–20.) The direct claims also include millions of dollars in damages. (See Dkt. 211.)

*See*, 17-ER-4310 (emphasis added).

However, in a footnote in the same pleading, as well as his Appellate Brief in front of this Court, Appellant acknowledged that the conduct upon which he was relying for his direct claims was the very same as that which formed the basis for his derivative claims, and that his damages for any alleged direct claims would be recovered for AIA and paid directly to the innocent shareholders. *See*, 17-ER-4310, n.2; Appellant's Opening Brief, p. 55. For a direct claim to survive, the plaintiff individually must be harmed. Instead, Appellant admits that the claims are the same as they are for the shareholders, and that the damages would be paid to the shareholders. This directly proves the claims are derivative.

Appellant's attempted claim to survive under Idaho Codes §§ 20–1-304 and 30–29–304 is nonsensical. The district court considered this:

> A plain and ordinary reading of the statute indicates a shareholder can sue the corporation directly or derivatively to enjoy an ultra vires act and obtain money damages under sections (b)(1) and (c). It is less clear to the Court where Miesen finds support for his argument that bringing a statutory direct claim under these sections does not require an assertion of unique personal harm to himself. It is well-established that the very difference between direct and derivative claims hinges on what types of harms are asserted. In other words, whether the corporation and the shareholders are suffering together, or whether one specific shareholder is taking the brunt of any injury.

1-ER-167–168.

30

The district court also looked directly to the TAC, and held:

First, in the paragraphs proceeding[sic] the sections setting forth his Courts, Miesen states all of his claims and requested relief flow from the derivative demands he had made to AIA and its Board of Directors. He states he "fairly represents the interest of AIA and their shareholders" and he is pursuing "*bona fide* claims on behalf of, for the benefit of, AIA and their innocent shareholders." Dkt. 211, at 60.

Second, the Court looks to the individual causes of action as to each Defendant. Counts I, VI, and IX apply to all Individual Defendants. Counts II, IV, V, and VII apply to both Individual Defendants and CropUSA Defendants. Count X applies specifically to Individual Defendant Taylor. Count VIII applies to AIA Defendants, Individual Defendants, and CropUSA Defendants. In *every single one* of the aforementioned Counts, Miesen speaks of duties "owed to AIA," liability to AIA, damages to AIA, and seeking balances owed for "the benefit of AIA." *Id.* at 62, 64, 66, 71, 75, 79. Not once, in any paragraph or any allegation, does Miesen assert he has been harmed directly or distinctly from other shareholders. There are no allegations that he has been "frozen-out." There are no allegations that the other shareholders with whom he shares status harmed him. There are no allegations whatsoever that he has suffered any unique harm other than the same ones suffered by all other shareholders in AIA.

1-ER-169–170.

Regarding any burden shifting to prove direct claims, the district court instructed the parties to file a status report addressing which claims and which motions remained. *See,* 1-ER-151. The court instructed that further briefing was needed, and that the moving parties (the Individual Defendants, CropUSA Defendants, and AIA

31

Entities) were to file the opening brief explaining why the Complaint should be dismissed. *Id.* at p. 4. Therefore, the burden of proof rested on Appellees, not Appellant.

Appellant has no viable direct claims. He has no individual damages. This is simply an attempt to create an alternative argument to save his claims from dismissal. Under Idaho law and statute, this Court should affirm the district court. These claims should remain as dismissed with prejudice against the Individual Defendants, CropUSA Defendants, and AIA Defendants.

### C. McDermott was properly excluded under *Daubert* and Rule of Evidence 403.

The foregoing establishes that Judge Nye correctly determined that Miesen and/or Donna Taylor failed, without cause or legal justification, to satisfy the pre-suit demand requirements of Idaho Code § 30–29–742. As such, this Court should affirm the decision of Judge Nye which affirmance renders moot any further need to address whether Judge Nye erred by excluding Miesen's expert witness Richard McDermott. Nonetheless, even if this Court were to somehow find that Judge Nye did abuse his discretion with regard to the significant deficiencies in the various demands, this Court should nonetheless find that Judge Nye did not abuse his discretion with regard to the exclusion of McDermott.

Both Miesen and Appellees agree that the Court's role with regard to expert testimony is to act as a gatekeeper. In deciding the admissibility of expert testimony, the district court serves an important gatekeeping function "to ensure that the testi-

mony is reliable and will help the trier of fact." *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997); see also *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–49 & 158 (1999) (determining reliability "in light of the particular facts and circumstances"). This gatekeeping function is grounded in the recognition that expert testimony can be "powerful and quite misleading." *Daubert,* at 595. Therefore, a court "weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Id.*

This gatekeeping function applies equally to scientific as well as non-scientific evidence. *See*, *Kumho Tire*, 526 U.S. at 147–49; Fed. R. Evid. 702 advisory committee's note (a nonscientific opinion "should receive the same degree of scrutiny for reliability" as a purported scientist's opinion). Importantly, among the many factors that a court should consider when evaluating the admissibility of expert testimony is whether an expert "developed their opinions expressly for purposes of testifying," versus developing them naturally while engaged in their expertise. *Daubert,* 43 F.3d at 1317.

Miesen seeks to excuse the highly charged and evident advocacy of McDermott's proffered testimony on the basis that he "felt strongly" and sounded like an attorney because he is an attorney. (Appellant's Brief at page 44.) However, as Judge Nye correctly concluded, McDermott's faults do not lie in the fact that he is an attorney or sounds like an attorney, but rather because he repeatedly demonstrated that he was actually acting as an attorney advocate for Miesen's cause. Judge Nye identified repeated instances in which McDermott expressed opinions that are properly

characterized as legal advocacy rather than expert testimony. 1-ER-87. Specifically, Judge Nye identified the following instances where McDermott crossed the line into advocacy:

1. McDermott submitted an Affidavit in support of Miesen's Third Amended Complaint wherein he argued for the sufficiency of the Appellant's prior demands, opined as to the subjective bad faith of certain named defendants and opined that the Third Amended Complaint should be permitted as it was appropriate and necessary for the claims presented. 1-ER-87; 6-ER-1262–1270.

2. In support of a Motion to Continue, McDermott submitted a declaration that instructed the Court on the subject of waiver of the attorney-client privilege. 1-ER-87; 8-ER-1903–1920.

3. In support of a Motion to Compel, McDermott argued about the gross unfairness to permit the Defendants' assertion of attorney client privilege and work product protections. 1-ER-87; 8-ER-1926–1949.

4. In another declaration, McDermott argued that the parties' submissions of privilege logs were inappropriate. 1-ER-88; 8-ER-1920–1954.

5. On multiple occasions McDermott's declarations read more like legal briefs submitted by an attorney for Miesen rather than that of an independent unbiased expert witness. 1-ER-88.

6. McDermott himself even stated in a declaration that "he" was pursuing Miesen's claims. 1-ER-88. Likewise, McDermott also submitted a declaration in which he asserted a need to receive certain information in discovery "[i]n order for me and Mr. Miesen to fully and fairly present his claims." 2-SER-336–369 at ¶ 60.

34

As Judge Nye also noted, even more troubling about McDermott's purported testimony is that he willingly provided opinions that "evidence he had not yet obtained and had never reviewed would 'likely further support,' 'likely confirm,' 'likely establish,' and 'likely reveal' information supporting the claims asserted..." by Miesen. 1-ER-88. Finally, although not noted in Judge Nye's decision, on this point it cannot be overlooked that McDermott testified in his deposition that he had "no reason to doubt any statement that comes from Rod Bond" and that his relationship with him is "as trustworthy a relationship as I could imagine having with someone." 10-ER-2318 at 456:2 – 10-ER-2322 at 470:25 and 10-ER-2300 at 58: 11–12.

Miesen seeks to frame these issues as matters of credibility. Judge Nye rightly disagreed recognizing that "[w]here an expert becomes an advocate for a cause, he. . . departs from the ranks of an objective expert witness, and any resulting testimony would be unfairly prejudicial and misleading." *Elliot v. Versa CIC, L.P.*, 349 F. Supp. 3d 1004, 1006–07 (S.D. Cal. 2018) (cleaned up); 1-ER-86. While Miesen seeks to distinguish Judge Nye's identification of the case of *Lippe v. Bairnco Corp.*, 288 B.R. 678 (S.D.N.Y. 2003) and hence argue error based on its application, a review of Judge Nye's decision reveals that his ultimate conclusion was in reliance on a number of cases which affirmed the exclusion of an expert witness who had moved from objective witness to partisan. 1-ER-86. Moreover, Judge Nye himself in discussing *Lippe* acknowledged that "the expert in *Lippe* had arguably more compelling reasons to be excluded, the reasons listed above for excluding McDermott as an expert witness meet the standard." 1-ER-90.

Nonetheless, even granting Miesen's argument about the presence of a singular distinguishing characteristic in *Lippe* that the proffered expert therein had previously been a retained attorney for the subject party whereas McDermott had only undertaken advocacy activities couched as expert services, there can be no doubt that the same concerns that were applicable in *Lippe* were applicable to McDermott's testimony. Given McDermott's unquestionable extensive involvement in Miesen's litigation as identified above there could be little doubt that his testimony at trial would be little more than "a summation from the witness stand." 1-ER-86.

For these reasons alone Judge Nye properly recognized that the totality of these circumstances required the conclusion McDermott had "assumed the improper role of an advocate masquerading as an expert in this case." 1-ER-87. However, it should be noted that in reaching this conclusion, Judge Nye also noted that there were substantial concerns that McDermott had improperly agreed to a contingency fee arrangement with Appellant's counsel for his expert services. In particular, McDermott acknowledged that he has accrued an unpaid six-figure bill. 1-ER-89. Despite this acknowledgement, in his deposition McDermott made the astonishing admission that his arrangement was not actually on a time and hour basis, but rather one that would be resolved between he and Appellant's counsel when the case is concluded. Specifically, McDermott testified that, "at the conclusion of this matter," he would determine what his expert witness services are worth and render a bill for whatever amount he concluded his fee should be. 10-ER-2300–2301 at 59:1–3, 59:22 – 60:2, 62:24–63:1, 65:3–8, 65:13–16.

36

Judge Nye's decision recognized that Idaho's Rule of Professional Conduct 3.4, comment 4 provides that "it is improper to pay an expert witness a contingency fee." 1-ER-92. However, as the Court had already determined to exclude McDermott on the basis of Federal Rules of Evidence 403 and 702 for improper advocacy by an expert witness, the Court determined that the fact of McDermott's contingency arrangement with Appellant was a moot issue. 1-ER-92–93.

Thus, given the abundance of evidence demonstrating that McDermott had inappropriately crossed the line from expert to advocate in rendering services to Miesen under a highly suspect fee arrangement, issues concerning McDermott's purported qualifications or asserted reliability are not relevant. McDermott's testimony was, as Judge Nye held, of no aid to the jury but rather highly prejudicial in view of their evident advocacy. 1-ER-89–90. Accordingly, Judge Nye properly excluded the testimony of McDermott and this Court should affirm that determination.

### D. Miesen was not excused from making any demands.

Judge Nye did not err by failing to predict how the Idaho Supreme Court would decide the issues. Judge Nye applied the existing case law in rendering his decisions. *See*, *McKown v. Simon Prop. Grp., Inc.*, 689 F.3d 1086, 1091 (9th Cir. 2012).

"Idaho law does not recognize the futility exception to the demand requirement." *Kugler v. Nelson*, 374 P.3d 571, 578 (2016). In *Kugler*, the Idaho Supreme Court distinguished *Orrock*, which was a case that directly applied Delaware law, and therefore futility was analyzed. *Orrock v. Appleton*, 213 P.3d 398 (2009). *Ku-*

37

*gler* distinguished this decision, as Idaho law applied to the facts of the case, and therefore, futility was not an exception. *Kugler*, at 578. Demands were required under *McCann. Id.* (citing *McCann I*, 138 Idaho at 236). Here, Idaho law applies, and therefore, no futility exception applies. Appellant erroneously attempts to assert that *Kugler* acknowledges exceptions to the prelitigation demand. It does not.

As argued *supra*, Appellant is also not saved by attempting to argue the challenged transactions as ultra vires acts. These claims are nonsensical, and Appellant fails to cite any controlling law. In fact, under Idaho Code section 30–29–304, Idaho has removed exceptions, and does not recognize ultra vires challenges to a corporation.

Appellant's argument that a close corporation exception is unfounded, as no "exception" exists. Appellant cites to *Durham*, in which the court in New Hampshire considered whether members of a close corporation could bring direct claims rather than derivative. *Durham v. Durham*, 871 A.2d 41, 45 (N.H. 2005).[4] However, as argued *supra*, Appellant here did not have any direct claims, as he sought remedies to be paid directly back to the shareholders. Under Idaho law, no such exemption exists. Contrarily, *Kugler*, calls out that a member

> in a closely held corporation . . . may bring a direct action, rather than a derivative action, if the shareholder alleges *harm to himself distinct from that suffered by other shareholders of the corporation or breach of a special duty owed by the defendant to the shareholder*.

---

[4]  Appellant also cites to *Aurora Credit Servs., Inc. v. Liberty West Dev., Inc.*, which discusses no such close corporation "exception." 970 P.2d 1273 (Utah 1998).

*Kugler*, 374 P.3d at 577 (quoting *Schumacher v. Schumacher*, 469 N.W.2d at 798) (emphasis in original). Further, Appellant's claim that allowing a 15-year-old case to proceed holds no risks is simply untrue. Appellant has continued to attempt to keep this case alive over multiple different matters, which have all been finally and adversely determined against him. It is time for this case to end.

Finally, Appellant's argument that AIA never objected or challenged the adequacy of the demands is a red herring, as again, under *McCann I* and other established Idaho case law argued *supra*, there is no exception to the derivative requirement. A third party may challenge the derivative demands. *Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 730 (Del. 1988).

The Hawley Troxell Defendants were alleged to have aided and abetted in the malfeasance, and therefore individually had standing to raise the issue that the derivative demands were inadequate. The Defendants joined in the argument. The district court appropriately held that the demands were fatal to the Appellant's lawsuit.

Appellant has continually, over the course of fifteen years, made the AIA Defendants and any counsel that represented the AIA Defendants adversaries. Any attorney who fails to agree with Appellant suddenly is "unable to remain neutral in the adjudication" in the representation of the AIA Defendants. *See*, *Munding*. The AIA Defendants have continually had to take positions contrary to Appellant to be consistent with the underlying case law regarding derivative demands and corporate governance. *See*, 17-ER-4331–4339; 18-ER-4575–4585. Therefore, this Court

should affirm the district court. There were no exceptions to the derivative demand requirements, Appellant did not plead direct claims, and therefore it would be improper to remand the case with directions to reinstate the derivative demands.

### E. Judge Nye properly excluded evidence outside of the pleadings.

A district court generally may not consider evidence outside of the pleadings when ruling on a motion to dismiss without converting the motion to a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Certain materials, such as documents attached to a complaint, documents incorporated by reference in the complaint, or matters of judicial notice may be considered without converting the motion to dismiss into a motion for summary judgment. *Id.* at 908.

Appellant sought to have the district court consider documents that were subject to reasonable dispute. "[A]djudicative facts appropriate for judicial notice are typically different from facts found in affidavits supporting litigation positions, which often present facts subject to dispute." *Henderson v. Oregon*, 203 F. App'x 45, 52 (9th Cir. 2006). Appellant here attempted to have the district court take judicial notice of a declaration. While a declaration of a Defendant, John Taylor, it still fell under a document subject to reasonable dispute. 1-ER-115. Therefore, it was proper for the district court to not consider it under the motion to dismiss.

Further, the district court determined that any evidence to determine the knowledge of the directors' awareness in the motion to dismiss stage could be determined by the allegations in the TAC. Any additional information would have been duplicative. 1-ER-116.

Most importantly, the Defendants objected to the introduction of this evidence through judicial notice. *See*, 17-ER-4212–4215. "Plaintiff's request for judicial notice inappropriately argues inferences that Plaintiff wants the Court to draw from the information and his arguments invite the Court to speculate about Defendants' subjective understanding of the allegations." *Id.* The district court concluded: "Judicial notice under Fed. R. Evid. 201 is appropriate to take judicial notice of adjudicative facts. To the extent that [the request] presents additional argument . . . , Rule 201 does not provide authority for the Court to consider the arguments. . . ." *Golden W. Holdings, LLC v. BBT HOldings, LLC*, 2010 Wl 4853301, at \*11 (D. Idaho Nov. 22, 2010). 1-ER-116.

Appellant attempts to state that taking notice of *Munding* means that the motion converted to one of summary judgment and his own evidence should have been considered. This argument is ludicrous, an outlandish position, and a ridiculous argument. The district court must consider the case law established, and to say otherwise, is truly ridiculous. Court decisions are not only public record, but the law the district court must follow. It was also proper from the district court to take judicial notice of the June 2016 Demand letter in *Munding*, because it was the exact same

letter in the present matter. Even so, a court "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006).

Under *Henderson* and *Golden W. Holdings*, these were not documents or pieces of evidence that the district court could take judicial notice of. Even so, the derivative demands were so inadequate, the notice of these documents would not have changed the outcome. The district court must be affirmed.

As far as this Court taking judicial notice of the court records cited in Appellant's brief and Excerpts of Record, the Record speaks for itself. However, Appellees make it clear that multiple disputes have arisen over the span of fifteen years of litigation, and therefore it is erroneous to state there is no dispute as to the authenticity of the records or what is stated in them. Appellees object heavily to Appellant's briefing. This Court may consider what is properly in front of it, and is not tasked with searching the record to find the answer Appellant so desperately attempts to find. "Judges are not like pigs, hunting for truffles buried in briefs." *Dickenson v. Benewah Cnty. Sheriff*, 530 P.3d 691, 697 (Idaho 2023) (quoting *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995)) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

### F. Assignment of a new judge would be improper.

This Court should affirm the district court, and therefore this argument is moot.

Reassignment occurs only under "unusual circumstances or when required to preserve the interests of justice." *United States v. Wolf Child*, 699 F.3d 1082, 1102 (9th Cir. 2012). This Court considers:

> 1. Whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected,

> 2. Whether reassignment is advisable to preserve the appearance of justice, and

> 3. Whether reassignment would entail waste and duplication out of proportion to any gain in preserving appearance of fairness.

*Manley v. Rowley*, 847 F.3d 705, 712 (9th Cir. 2017) (quoting *United States v. Quach*, 302 F.3d 1096, 1103 (9th Cir. 2002)).

Here, Judge Nye would not have difficulty following any direction from this Court and is highly reputable. Further, it would be a huge undertaking to get another judge up to speed on a fifteen year case with over 1300 main dockets. Appellant's request that the case be removed from Idaho for consideration of potential exacerbation of and appearance of impropriety is preposterous, and would be highly burdensome on Appellees. Under *Manley*, there is no reason to assign a new judge to this matter.

43

Unfortunately, Appellant's request for the assignment of a new trial judge on appeal from an adverse ruling is not new. Appellant's made the same request in the case of *Taylor v. Taylor*, 163 Idaho 910, 920, 422 P.3d 1116, 1126 (2018). The Idaho Supreme Court rejected the request stating:

> Donna requests that if this case is remanded a new judge be appointed. Donna contends that because this case has been ongoing for nearly ten years, a new judge would "bring a fresh perspective" and "eliminate any possible concern of potential bias." Donna cites to *Capstar Radio Operating Company v. Lawrence*, 153 Idaho 411, 422, 283 P.3d 728, 739 (2012) which dealt with a motion to disqualify for cause. In this case, Donna did not file a motion to disqualify for cause, nor has Donna cited any instances of bias by Judge Brudie. Accordingly, a new judge need not be appointed.

This Court should affirm the district court, and therefore, this argument need not be considered.

44

**CONCLUSION**

For the foregoing reasons, Appellees respectfully request that this Court affirm the district court. This fifteen year long case must come to an end.

|  |  |  |
|---|---|---|
|  | JONES WILLIAMS FUHRMAN GOURLEY, P.A. | |
|  | Respectfully submitted, | |
| Dated: April 8, 2026 | By: | /s/ Daniel Loras Glynn |
|  |  | Daniel Loras Glynn |

*Attorney for Defendants-Appellees*
James Beck, Michael Cashman,
Connie Henderson, John Taylor,
Crop USA
Insurance Agency, Inc., and Crop
USA Insurance Services, LLC


|  |  |  |
|---|---|---|
|  | TROUT & JONES, PLLC | |
|  | Respectfully submitted, | |
| Dated: April 8, 2026 | By: | /s/ Alyssa R. Jones |
|  |  | Alyssa R. Jones |

*Attorneys for Defendants-Appellees*
AIA Services Corporation & AIA
Insurance, Inc.

45

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **10,843 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, **14-pt Times New Roman**, using TypeLaw.com's legal text editor.

Jones Williams Fuhrman Gourley, P.A.

Respectfully submitted,

Dated: April 8, 2026                    By: /s/ Daniel Loras Glynn

46

## Certificate of Service

I hereby certify that I electronically filed the foregoing **APPELLEES'
BRIEF** with the Clerk of the Court by using the Appellate CM/ECF system on
**April 8, 2026**. I further certify that all participants in the case are registered CM/
ECF users and that service will be accomplished by the appellate CM/ECF system.

Jones Williams Fuhrman Gourley,
P.A.

Respectfully submitted,

Dated: April 8, 2026          By: /s/ Daniel Loras Glynn

*Attorney for Defendants - Appellees*

47