Nos. 25-3552, 25-3800

# In the United States Court of Appeals
# for the Ninth Circuit

DALE L. MIESEN,

*Plaintiff-Appellant,*

v.

R. JOHN TAYLOR, CONNIE TAYLOR HENDERSON, JAMES BECK, MICHAEL W. CASHMAN, SR., CROP USA INSURANCE AGENCY, INC., CROP USA INSURANCE SERVICES, LLC, AIA SERVICES CORPORATION, AND AIA INSURANCE, INC.,

*Defendants-Appellees,*

AND
REED J. TAYLOR, AN INDIVIDUAL,

*Third-Party Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Idaho
Hon. David Nye

## SUPPLEMENTAL EXCERPTS OF RECORD

Daniel Loras Glynn (ISB # 5113)
JONES WILLIAMS FUHRMAN GOURLEY, P.A.
225 N. 9th St., Ste. 820
Boise, ID 83701
(208) 331-1170
dglynn@idalaw.com
*Attorney for Defendants-Appellees*
James Beck, Michael Cashman, Connie Henderson, John Taylor, Crop USA Insurance Agency, Inc., and Crop USA Insurance Services, LLC

Kim J. T rout (ISB #2468)
Alyssa R. Jones (ISB #12181)
TROUT & JONES, PLLC
3778 N. Plantation River Dr., Ste. 101
Boise, ID 83703
(208) 577-5755
service@trout-law.com
*Attorneys for Defendants-Appellees*
AIA Services Corporation & AIA Insurance, Inc.

**Volume 2 (of 2)**
**Pages 221–470**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA  98004
Telephone: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Attorney for Plaintiff

UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.;<br><br>Plaintiff,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation; CROP USA INSURANCE SERVICES, LLC; an Idaho limited liability company; and GEMCAP LENDING I, LLC, a Delaware limited liability company,<br><br>Defendants. | Civil No. 1:10-cv-00404-CWD<br><br>THIRD AMENDED COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

THIRD AMENDED COMPLAINT - i

# Exhibit - A

## TABLE OF CONTENTS

I.     STATEMENT OF JURISDICTION.......................................................................... 1

II.    STATEMENT OF VENUE .................................................................................... 1

III.   PARTIES AND DEFINITIONS OF THE PARTIES........................................... 1

IV.    FACTS .................................................................................................................. 6

A.    The Background Facts Regarding AIA Services and AIA Insurance.................................. 6

B.    John, Connie, Beck and Cashman Take Operational Control of AIA and AIA Authorizes the Issuance of Series C Preferred Shares and Additional Restrictions in Its Amended Articles of Incorporation .................................... 8

C.    AIA Forms CropUSA and the Controlling AIA Defendants Unlawfully Transfer CropUSA to Themselves ...................................... 11

D.    The Hawley Troxell Defendants Aid and Abet the Controlling AIA Defendants in Taking CropUSA from AIA and Having AIA Fund CropUSA ................................... 15

E.    The Controlling AIA Defendants Unlawfully Transfer $1,510,693 From AIA to Fund CropUSA and Then They Use $634,269 of Those Funds to Repay a Debt that CropUSA Owed to AIA—thereby Resulting in a $2,144,962 Fraud Against AIA.......... 17

F.    The Controlling AIA Defendants Continue to Unlawfully Fund, Subsidize and Operate CropUSA Using AIA's Funds, Assets, Labor and Financial Wherewithal ......... 21

G.    The Controlling AIA Defendants Continue to Unlawfully Use AIA's Funds and Financial Wherewithal with the Improper Assistance from the Hawley Troxell Defendants ...................................... 23

H.    The Controlling AIA Defendants Enter Into Tolling Agreements, but Those Tolling Agreements Do Not Save the Hawley Troxell Defendants from the Unwaivable Conflicts of Interest ...................................... 24

I.    The Controlling AIA Defendants Continue Unlawfully Using Funds from AIA and Intentionally Committing Torts against AIA with the Assistance of the Hawley Troxell Defendants—Even While This Lawsuit Was Pending............................ 30

THIRD AMENDED COMPLAINT - ii

# Exhibit - A

J.      The Controlling AIA Defendants, with GemCap Aiding and Abetting Them, Illegally Had AIA Guarantee Loans Made to CropUSA by GemCap, Concealed the Guarantees from AIA, Illegally Entered into Settlement Agreements with GemCap, Concealed the Settlement Agreements from AIA, and Unlawfully Transferred Property to GemCap Thereby Damaging AIA. ................................................................. 35

K.      John Unlawfully Transfers Certain Real Property to AIA and Requires AIA to Pay the Liabilities on the Property and He Alleges that AIA Owes Him $545,563 in Accrued Salary. ........................................................................................................ 43

L.      John Unlawfully Amends AIA Services and AIA Insurance's Bylaws and Issues Himself Series A Preferred Shares in AIA Services. ............................................. 44

M.      There Is a Laundry List of the Unlawful Acts, Self-Dealing, Malfeasance and Intentional Torts Committed by the Controlling AIA Defendants ................................... 45

V.      CERTIFICATE OF COMPLIANCE WITH IDAHO CODE SECTION 30-1-742 .......... 53

VI.     COUNT I—BREACH OF FIDUCIARY DUTIES ............................................................. 56

VII.    COUNT II—AIDING AND ABETTING BREACHES OF FIDUCIARY DUTIES ....... 60

VIII.   COUNT III—LEGAL MALPRACTICE ............................................................. 60

IX.     COUNT IV—FRAUD/FRAUDULENT CONCEALMENT/ ......................................... 62

X.      COUNT V—AIDING AND ABETTING AND CONSIPIRACY OF FRAUD ............... 66

XI.     COUNT VI—BREACH OF CONTRACT ........................................................... 67

XII.    COUNT VII—DECLARATORY JUDGMENT ............................................................. 68

XIII.   COUNT VIII—STATUTORY RELIEF (INCLUDING FOR ULTRA VIRES) .............. 70

XIV.    COUNT IX—CORPORATE WASTE/EXCESSIVE COMPENSATION ....................... 71

XV.     COUNT X—VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT ....... 73

XVI.    COUNT XI—ACCOUNT STATED ............................................................. 74

XVII.   JURY DEMAND ............................................................. 75

THIRD AMENDED COMPLAINT - iii

# Exhibit - A

XVIII.   PRAYER FOR RELIEF ................................................................................... 75

VERIFICATION OF DALE L. MIESEN ....................................................................... 79

CERTIFICATE OF SERVICE ....................................................................................... 80

THIRD AMENDED COMPLAINT - iv

# Exhibit - A

**2 SER 225**

Plaintiff Dale L. Miesen alleges cumulatively, or when necessary and where applicable in the alternative, as follows:

## I.    STATEMENT OF JURISDICTION

1.    This Court has jurisdiction over the subject matter of this lawsuit under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and this action is between citizens of different states.

2.    This Court has personal jurisdiction pursuant to I.C. § 5-514 because the defendants: (a) committed torts within the state of Idaho (including conspiring to commit, covering up, and aiding in the commission of torts committed within the state of Idaho), which injured AIA in Idaho; and/or (b) transacted business within the state of Idaho and engaged in transactions within the state of Idaho in an effort to obtain a pecuniary benefit and/or enhance their investment in Idaho corporations named as defendants in this Third Amended Complaint. Examples of the specific facts supporting personal jurisdiction are set forth in certain of the paragraphs below.

## II.    STATEMENT OF VENUE

3.    Venue is proper in the District of Idaho under 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the acts, errors and omissions giving rise to the claims asserted in this Third Amended Complaint (and the torts committed against AIA Services Corporation and AIA Insurance, Inc.) occurred in the District of Idaho and certain of the defendants are citizens and residents of the District of Idaho.

## III.    PARTIES AND DEFINITIONS OF THE PARTIES

4.    Plaintiff Dale L. Miesen ("Plaintiff" or "Miesen") is a citizen and resident of Colleyville, Texas.  Plaintiff is, and has been, a common shareholder of AIA Services Corporation ("AIA Services") during all relevant times and specifically at the time of the transactions, acts, omissions, malfeasance, and damages at issue in this lawsuit. Plaintiff is also presently a creditor

THIRD AMENDED COMPLAINT - 1

# Exhibit - A

of AIA Services.

5.     Plaintiff is bringing this derivative action as a shareholder and on behalf of AIA Services. In addition, Plaintiff is bringing this action as a double derivative action on behalf of AIA Insurance, Inc. ("AIA Insurance"), which is a wholly-owned subsidiary of AIA Services. AIA Services and AIA Insurance are collectively referred to as "AIA" in this Third Amended Complaint. The definition of "AIA" includes AIA Services and/or AIA Insurance for purposes of pleading in the alternative, and includes the Plaintiff to the extent he is required to support any cause of action and/or any of the relief requested in this Third Amended Complaint.

6.     Defendant AIA Services is a citizen of Idaho because it is an Idaho corporation, its principal place of business is in Lewiston, Idaho, and its primary purported officer, John Taylor, resides in Lewiston, Idaho. During all relevant times, AIA Services is or has been the parent corporation of AIA Insurance.

7.     Defendant AIA Insurance is a citizen of Idaho because it is an Idaho corporation, its principal place of business is in Lewiston, Idaho, and its primary purported officer, John Taylor, resides in Lewiston, Idaho.  During all relevant times, AIA Insurance has been a wholly-owned subsidiary of AIA Services.

8.     Plaintiff's assertions as to AIA Services' and/or AIA Insurance's board of directors and/or officers in this Third Amended Complaint is not intended to be an admission or an acknowledgement that the board of directors or officers were properly seated and elected or that the necessary quorum was present, and Plaintiff asserts that such was not the case for a number of years.

9.     Defendant CropUSA Insurance Agency, Inc. ("CropUSA") is a citizen of Idaho because it is an Idaho corporation, its principal place of business is in Lewiston, Idaho, and its

THIRD AMENDED COMPLAINT - 2

# Exhibit - A

primary purported officer, John Taylor, resides in Lewiston, Idaho. CropUSA was formerly known as AIA Crop Insurance, Inc.

10.    Defendant CropUSA Insurance Services, LLC ("CropUSA Insurance Services") is a citizen of Idaho because it is an Idaho limited liability company, its principal place of business is in Lewiston, Idaho, and its manager, John Taylor, is a resident of Lewiston, Idaho.

11.    CropUSA and CropUSA Insurance Services are referred to collectively and/or individually when pleading in the alternative as "CropUSA" in this Third Amended Complaint.

12.    Defendant R. John Taylor ("John" or "John Taylor") is a citizen and resident of Lewiston, Idaho. During all times relevant to this lawsuit, John served on the Board of Directors of AIA Services, AIA Insurance, and CropUSA and continues to serve on those boards. John also served as President of each of these corporations during all times relevant to this lawsuit. John is also licensed to practice law in the state of Idaho. John is a common shareholder of AIA Services and a common shareholder of CropUSA (although Plaintiff asserts those shares were unlawfully issued to him). John also owns shares or ownership interests in other entities that have engaged in inappropriate transactions with AIA and/or which have improperly benefitted from AIA during all relevant times.

13.    Defendant James Beck ("Beck") is a citizen and resident of the state of Minnesota. Beck served on the Board of Directors of AIA Services and AIA Insurance during certain relevant times. Beck was a common and/or preferred shareholder of AIA Services during certain relevant times and a common shareholder of CropUSA (although Plaintiff maintains that his common shares in AIA Services and CropUSA were unlawfully issued).

14.    Defendant Michael Cashman, Sr. ("Cashman") is a citizen and resident of the state of Minnesota. Cashman served on the Board of Directors of AIA Services during certain relevant

THIRD AMENDED COMPLAINT - 3

# Exhibit - A

times. Cashman was a common and/or preferred shareholder of AIA Services during certain relevant times and a common shareholder of CropUSA (although Plaintiff maintains that his common shares in AIA Services and CropUSA were unlawfully issued).

15.    Defendant Connie Taylor Henderson ("Connie") is a citizen and resident of the state of Washington. Connie served on the Board of Directors of AIA Services and AIA Insurance during certain relevant times until she resigned in 2014. Connie jointly owns with John the common shares of AIA Services held in John's name. Connie has actively asserted community ownership of those shares and specifically did so before the district court and on appeal in *Taylor v. AIA Services*.

16.    Defendant JoLee K. Duclos ("Duclos") is a citizen and a resident of Washington, or, alternatively, upon information and belief, she is now a citizen and a resident of the state of Idaho. Duclos has served as Secretary of AIA Services, AIA Insurance, CropUSA and other entities partially or wholly owned by John during certain relevant times. Duclos served on the Board of Directors of AIA Services and AIA Insurance during certain relevant times until she resigned in 2007. Duclos also served as a director of CropUSA curing certain relevant times. Duclos is a common shareholder of CropUSA (although Plaintiff maintains that those shares were unlawfully issued). Duclos has knowledge of the law by and through her training and performing the duties of a paralegal. Duclos has served as John's "lieutenant" during all relevant times.

17.    John, Beck, Cashman, Connie and Duclos are collectively referred to herein as the "Controlling AIA Defendants." The Controlling AIA Defendants have acted in concert and assisted one another in committing various torts described in this Third Amended Complaint and covering up and/or concealing those torts. The definition of "Controlling AIA Defendants" includes the acts and/or omissions of one or more of John, Beck, Connie, Cashman and/or Duclos

THIRD AMENDED COMPLAINT - 4

# Exhibit - A

2 SER 230

for purposes of pleading in the alternative.

18.     Defendant Gary D. Babbitt ("Babbitt") is a citizen and resident of the state of Idaho and was an attorney practicing law in the state of Idaho with and on behalf of Hawley Troxell. Upon information and belief, Babbitt began representing AIA and CropUSA in 2007.

19.     Defendant Richard A. Riley ("Riley") is a citizen and resident of the state of Idaho and is an attorney in the state of Idaho with and on behalf of Hawley Troxell. Riley represented AIA and/or CropUSA from time to time from 1995 through the present time.

20.     Defendant D. John Ashby ("Ashby") is a citizen and resident of the state of Idaho and is an attorney in the state of Idaho with and on behalf of Hawley Troxell. Upon information and belief, Ashby began representing AIA and CropUSA in 2007.

21.     Defendant Hawley Troxell Ennis & Hawley LLP ("Hawley Troxell") is a citizen of the state of Idaho because it is an Idaho limited liability partnership in the business of practicing law, with its principal place of business in Boise, Idaho, and its principal officers or managers reside in the state of Idaho. Hawley Troxell has no office in the state of Washington. None of the individual partners of Hawley Troxell are residents of Washington. Hawley Troxell, though its attorneys, acted as counsel for AIA Services, AIA Insurance and CropUSA during certain relevant times and in certain lawsuits. Hawley Troxell is also named herein as it is vicariously liable for the acts and/or omissions of Babbitt, Riley, Ashby and its other attorneys.

22.     Babbitt, Ashby, Riley, other Hawley Troxell attorneys, and Hawley Troxell are collectively referred to as the "Hawley Troxell Defendants" in this Third Amended Complaint. The definition of "Hawley Troxell Defendants" includes the acts and/or omissions of one or more of Babbitt, Ashby, Riley, other attorneys at Hawley Troxell and/or Hawley Troxell for purposes of pleading in the alternative. The Hawley Troxell Defendants conducted business from their office

THIRD AMENDED COMPLAINT - 5

# Exhibit - A

in Boise, Idaho.

23.     Defendant GemCap Lending I, LLC ("GemCap") is a Delaware limited liability company and it conducts business throughout the United States, including in Nez Perce County, Idaho with CropUSA and CropUSA Insurance Services, respectively, both of which have principal places of business in Lewiston, Idaho. GemCap is a citizen of California because its principal place of business is in Malibu, California and its primary officers, Richard Ellis and David Ellis, are residents of the state of California. However, AIA conducts no business in California.

24.     Donna J. Taylor ("Donna Taylor"), a non-party to this lawsuit, is and has been the sole Series A Preferred Shareholder of AIA Services during all relevant times, and she never authorized any of the transactions at issue in this lawsuit from 1995 through the present time. While John alleges to have "purchased" 7,500 Series A Preferred Shares in 2016, Plaintiff maintains that the purchase was unauthorized and improper, and that Donna Taylor remains the sole Series A Preferred Shareholder of AIA Services.

## IV.     FACTS

### A.  The Background Facts Regarding AIA Services and AIA Insurance

25.     In 1983, AIA Services was formed as a closely-held Idaho corporation for the purpose of acting as a holding company for various other wholly-owned subsidiaries. AIA's business model was to work with farmers and growers to form trusts and/or related cooperatives through various growers and farmers' associations and sell insurance products to the members of those associations also becoming members of the trusts and/or cooperatives.

26.     AIA created the Grain Growers Membership & Insurance Trust, the National Contract Poultry Grower's Membership & Insurance Trust, and other, similar trusts. By way of its relationships with these various organizations, AIA held contracts for the exclusive right to market health insurance (*e.g.*, Group Universal Health Policies) and other insurance products to the

THIRD AMENDED COMPLAINT - 6

# Exhibit - A

members of the various trusts and associations.

27.     In 1987, Donna Taylor and Reed Taylor, non-parties to this lawsuit, were issued Series A Preferred Shares in AIA Services in connection with their divorce. Pursuant to the dissolution of their marriage, Donna Taylor was issued 200,000 shares of Series A Preferred shares on or about February 12, 1988, and has held those shares ever since, less those shares which have been redeemed in part over the years. (*See* Dkt. 67-1 and 67-2.)

28.     In connection with the issuance of the Series A Preferred Shares to Donna Taylor, AIA Services' shareholders adopted amendments to its articles of incorporation with restrictions on the manner in which AIA Services and its subsidiaries could conduct business. (*See* Dkt. 67-3.) AIA Services' amended articles of incorporation included, without limitation, the restrictions that: (a) barred AIA Services and AIA Insurance from guaranteeing any loans for any individual or entities which were not wholly-owned subsidiaries; (b) barred certain transactions with shareholders and affiliates; and (c) required AIA Services to comply with certain financial covenants. (*Id.*)  These amendments were expressly adopted to protect AIA from precisely the type of acts, omissions, guarantees, loans and transactions at issue in this lawsuit.

29.     In addition, AIA Services' amended articles of incorporation also provided Donna Taylor with the unqualified right, as the Series A Preferred Shareholder, to appoint a person, to be determined in her sole discretion, to the Board of Directors of AIA Services. (*See* Dkt. 67-3.)

30.     The Controlling AIA Defendants and the Hawley Troxell Defendants were fully aware of the restrictions under AIA Services' amended articles of incorporation and bylaws.

31.     Donna Taylor's Series A Preferred Shares have not been fully redeemed to this day, and the restrictions under AIA Services' amended articles of incorporation remain in full force and effect to this day and fully applicable. (*See* Dkt. 67-42, pp. 10-11 ¶ 19.)

THIRD AMENDED COMPLAINT - 7

# Exhibit - A

**B.** **John, Connie, Beck and Cashman Take Operational Control of AIA and AIA Authorizes the Issuance of Series C Preferred Shares and Additional Restrictions in Its Amended Articles of Incorporation**

32.     In 1995, the Controlling AIA Defendants, other than Duclos (although she did assist the Controlling AIA Defendants as an employee and officer (assistant secretary) of AIA), spearheaded a transaction to redeem Reed Taylor's majority common stock interest in AIA Services. (*See* Dkt. 67-5 and 67-6.)

33.     As part of the redemption, Beck and Cashman acquired Series C Preferred Shares in AIA Services, through an Investment Agreement, which was entered into with AIA Services and transmitted to AIA Services in Idaho and involved the transaction to redeem Reed Taylor's common shares in Idaho. When AIA Services amended its articles of incorporation to allow the issuance of the Series C Preferred Shares, AIA Services included additional restrictions in its articles of incorporation. Riley assisted in drafting and/or approving these restrictions and he was fully aware of them.

34.     Under the new and additional restrictions in AIA Services' amended articles of incorporation (these restrictions were in addition to others adopted in connection with the issuance of Donna Taylor's Series A Preferred Shares), AIA Services was barred from engaging in a number of corporate actions, including, but not limited to: (a) AIA Services could not acquire any common shares from any shareholders unless all dividends due on the Series C Preferred Shares had been paid (10% dividend per year) or those funds were set aside; (b) the Series C Preferred Shareholders had the right to elect one director to AIA Services' Board of Directors; and (c) if any Series C Preferred Shares were redeemed, such redemptions must be equally from all shareholders. (*See* Dkt. 67-3.)

THIRD AMENDED COMPLAINT - 8

# Exhibit - A

35.    Although the Series C Preferred Shares held by Beck, Cashman and their friends were eventually unlawfully and effectively redeemed by AIA, other Series C Preferred Shares were later issued to the AIA Services 401(k) Plan and those shares remain issued and outstanding to this day and no dividends have been paid as required since approximately 1997. As a result, these new restrictions under AIA Services amended articles of incorporation were in place for the benefit of AIA Services and the Series C Preferred Shares, which have remained in full force and effect to this day.  The Controlling AIA Defendants and the Hawley Troxell Defendants were fully aware of the additional restrictions under AIA Services' amended articles of incorporation.

36.    Upon the redemption of Reed Taylor's majority common shares, Beck, Cashman, John and Connie directly or indirectly became the majority common shareholders of AIA Services. (*See* Dkt. 67-5.) In addition, Beck, Cashman and John entered into a Voting Agreement to ensure that they would maintain control of AIA Services' Board of Directors, which was signed by Beck and Cashman and transmitted by them to Idaho. As a result, the Controlling AIA Defendants have maintained operational control of AIA from 1995 through the present time. Beck and Cashman attended certain board and shareholder meetings for AIA Services in person in Idaho and via telephone from Minnesota for meetings held in Idaho.

37.    In connection with the redemption of Reed Taylor's shares, John entered into an Executive Officer's Agreement with AIA Services, which guaranteed him certain salary payments and other compensation for three years; that agreement also contained non-compete and non-solicitation provisions. (*See* Dkt. 67-8.) John's salary after the first three years was required to be determined by AIA Services' Board of Directors, which was never done after the first three years.

38.    From 1999-2012, John improperly paid himself millions of dollars pursuant to his Executive Officer's Agreement for his and Connie's benefit (the amount of which in itself was

THIRD AMENDED COMPLAINT - 9

# Exhibit - A

improper based on AIA's business prospects and John's inability to do anything for the benefit of AIA), while he intentionally and repeatedly violated the non-compete and non-solicitation provisions of his Executive Officer's Agreement.

39. In connection with the redemption of Reed Taylor's shares in August 1995, AIA Services contributed funds to The Universe Life Insurance Company, which was a wholly-owned subsidiary of AIA Services, in order to make AIA Insurance, which was then a wholly-owned subsidiary of The Universe Life Insurance Company, a subsidiary of AIA Services. After that transaction, AIA Insurance became a wholly-owned subsidiary of AIA Services.

40. As a result, from August 1995 through all relevant times, AIA Insurance was a wholly-owned subsidiary through which AIA Services derived its commissions and administrative fees from insurance policies, which accounted for the bulk of AIA's revenues and profits.

41. From 1995 through 2005, AIA Insurance generated over $65 million in revenues from commissions (over $33 million) and administrative fees (over $27 million), and it continued to generate revenues thereafter.

42. From 1995 through all relevant times, each of the Controlling AIA Defendants has served at various times on the Board of Directors for AIA Services, AIA Insurance and/or CropUSA, while John has continuously served as the President of AIA and Duclos has continuously served as the Secretary of AIA.

43. From 1999 through certain relevant times, the Controlling AIA Defendants have also served from time to time on purported "advisory board" of CropUSA, which actually made the decisions on behalf of AIA and CropUSA. Specifically, Cashman, Beck and John served on the "advisory board" of CropUSA from 1999 through certain relevant times. Certain of the so-called "advisory board" meetings were conducted via telephone originating in Idaho and in person

THIRD AMENDED COMPLAINT - 10

# Exhibit - A

in Idaho.

**44.** The Controlling AIA Defendants intentionally concealed from AIA and AIA Services' minority shareholders of the existence and authority of the "advisory board" of CropUSA.

**C. AIA Forms CropUSA and the Controlling AIA Defendants Unlawfully Transfer CropUSA to Themselves**

**45.** By 1998, AIA's ability to sell health insurance had been impaired by undercapitalization in its underwriting subsidiary, The Universe Life Insurance Company. Accordingly, the company considered proposals to sell other forms of insurance, and in particular crop insurance, to be underwritten by other insurance companies. At a 1998 Board of Directors meeting, AIA Services' Board of Directors specifically discussed selling crop insurance and elected to have AIA pursue selling crop insurance.

**46.** In 1999, AIA, then under the control of the Controlling AIA Defendants, began selling crop insurance through a wholly-owned subsidiary of AIA Services formed under the name "AIA Crop Insurance, Inc."

**47.** The first purported meeting of shareholders of AIA Crop Insurance, Inc. ("AIA Crop Insurance") was held on January 11, 2000. The first purported meeting of the AIA Crop Insurance's Board of Directors was held on the same day. The purported minutes of the shareholder's meeting indicate that John, not the true owner AIA Services, claimed to be the sole shareholder of AIA Crop Insurance at the time of incorporation; these facts were concealed from AIA and AIA Services' innocent minority shareholders.

**48.** Upon information and belief, at or shortly after the time of its formation, the Hawley Troxell Defendants began providing legal services to AIA Crop Insurance.

THIRD AMENDED COMPLAINT - 11

# Exhibit - A

49.     At a special meeting of the shareholders of AIA Crop Insurance held on November 13, 2000, AIA Crop Insurance was renamed CropUSA in an apparent attempt to conceal its corporate lineage and origins.

50.     The minutes of the November 13, 2000 special meeting of the shareholders also show that John continued to claim that he was the sole shareholder of CropUSA, while he was simultaneously representing in business plans provided to others that CropUSA was a subsidiary of AIA Insurance. (*See* Dkt. 67-66.)

51.     At the time CropUSA was formed, John was employed by AIA Services under an Executive Officer's Agreement, dated August 1, 1995, Dkt. 67-8, which contained express covenants not to compete. Upon information and belief, John's Executive Officer's Agreement and AIA Service's amended articles of incorporation and restated bylaws were drafted and/or approved by Riley, and he had full knowledge of the restrictions under the terms of the foregoing documents.

52.     CropUSA held its purported annual shareholder's meeting on January 10, 2001. By this time, the illegal "spin off" of CropUSA had been accomplished by having AIA Services' Series C Preferred Shareholders (primarily Beck and Cashman) exchange their Series C Preferred Shares for common shares in CropUSA (if CropUSA were in fact an independent entity, these maneuvers would have been completely unnecessary).

53.     The minutes for the shareholder meeting held on January 10, 2001 for CropUSA revealed that CropUSA had retained Hawley Troxell as its advisor and SEC counsel and, upon information and belief, the Hawley Troxell Defendants have served continuously as CropUSA's attorneys in one form or the other ever since. According to the minutes, negotiations between AIA Services and CropUSA had resulted in an agreement whereby AIA Services would no longer

THIRD AMENDED COMPLAINT - 12

# Exhibit - A

operate CropUSA as a subsidiary.

54.    However, the negotiations referred to in the January 10, 2001 shareholder meeting minutes for CropUSA did not in fact occur. There was no decision, nor has there ever been a decision, on the part of AIA Services to discontinue the subsidiary status of CropUSA. The January 10, 2001 meeting minutes for CropUSA were concealed from AIA.

55.    None of the preferred or common shareholders of AIA Services (other than those present at the January 10, 2001 meeting) were given notice of or the opportunity to approve or oppose this corporate action; instead, it was concealed from them and AIA.

56.    In spite of the fact that John asserted on January 10, 2001 that CropUSA would no longer be a subsidiary of AIA Services, John wrote in a letter dated February 27, 2001, sent on behalf of AIA to Donna Taylor, that "AIA is developing a new crop insurance program through a new company called CropUSA." The letter went on to state that "[t]he costs of putting the CropUSA program together have been paid. AIA now needs to launch five new territories next Month." This February 27, 2001 letter constituted an unambiguous representation by John to AIA (and Donna Taylor) that CropUSA was a subsidiary of AIA and was being operated for the benefit of AIA and implicitly also for AIA Services' innocent minority shareholders (which included Donna Taylor). This representation to AIA was false, and John knew it was false. Upon information and belief, the other Controlling AIA Defendants were aware of this February 27, 2001 letter and the misrepresentations contained within the letter.

57.    Notwithstanding the fact that John was obligated under the terms of his Executive Officer's Agreement that required that he not compete with AIA Services, and notwithstanding the fact that he owed fiduciary duties to the AIA and AIA Services' shareholders, John set forth his plans to exploit the assets of AIA for the benefit of CropUSA (and himself as the majority

THIRD AMENDED COMPLAINT - 13

# Exhibit - A

purported shareholder) in the purported minutes of the purported January 10, 2001 meeting.

58.    The January 10, 2001 meeting minutes reveal that CropUSA authorized its officers to execute a Master Marketing Agreement with AIA Insurance that would allow CropUSA access to all of AIA's customers and customer lists, as well as all of AIA's trade secrets. AIA received no consideration for conveying this access or to enter into these agreements.

59.    CropUSA's officers (including John) were also purportedly authorized to enter into a Management Agreement with AIA Insurance wherein AIA Insurance purportedly agreed to provide management and administrative support to CropUSA without charge. However, John has since testified under oath that AIA's Board of Directors never authorized this agreement, although the Board has acquiesced in the action.

60.    AIA itself was never given notice of the Master Marketing Agreement and the Management Agreement, nor was AIA given the opportunity to approve or reject these agreements or any subsequent ones. Each of these agreements, when executed, constituted a violation of John's Executive Officer's Agreement, which contains a strict non-compete clause. Each of these agreements also constituted a direct breach of fiduciary duty or the aiding and abetting on behalf of each of the Controlling AIA Defendants in the commission of torts against AIA.

61.    Meanwhile, in 2001, John and Connie acquired a parking lot for $8,000 using AIA's line-of-credit. Upon information and belief, AIA was required to maintain control of the parking lot as part of its lease with Washington Bank Properties. John then increased the rent that AIA paid to use the parking lot to benefit him and Connie. For example, although John and Connie paid only $8,000 for the parking lot, they subsequently charged AIA $60,750 in rent to use the parking lot from 2004 through 2006. These unfair and self-serving rental payments to John and Connie were concealed from AIA and AIA Services' innocent minority shareholders and were

THIRD AMENDED COMPLAINT - 14

# Exhibit - A

never disclosed to either of them, as was John and Connie's purchase of the parking lot.

**D.  The Hawley Troxell Defendants Aid and Abet the Controlling AIA Defendants in Taking CropUSA from AIA and Having AIA Fund CropUSA**

**62.**    Upon information and belief, certain of the Hawley Troxell Defendants were providing legal services to CropUSA and/or its board of directors as of January 10, 2001, and such providing of legal services has continued through certain relevant times.

**63.**    Upon information and belief, from January 10, 2001, and continuing through the period relevant to this lawsuit, the Hawley Troxell Defendants had knowledge of John's Executive Officer's Agreement with AIA Services, had knowledge of the conflict of interest provisions in AIA's bylaws, and had knowledge of restrictions in AIA's amended articles of incorporation, but intentionally refused to comply with them and assisted John in violating them or covering up the violations.

**64.**    The Hawley Troxell Defendants knew or should have known that the purported Master Marketing Agreement and Management Agreement constituted breaches of John's Executive Officer's Agreement, violations of AIA Service' amended articles of incorporation, violations of AIA Services' restated bylaws, and constituted breaches of John and the other Controlling AIA Defendants' fiduciary duties owed to AIA and AIA Services' minority shareholders.

**65.**    Upon information and belief, the Hawley Troxell Defendants were also representing CropUSA from January 10, 2001, through certain relevant times, and by way of that representation they breached their fiduciary duties to AIA (including their undivided duty of loyalty owed to AIA) and took steps that materially assisted John and the Controlling AIA Defendants in the commission of the various torts described in this Third Amended Complaint and assisted in the concealment of those torts.

THIRD AMENDED COMPLAINT - 15

# Exhibit - A

66.    Beginning in 1999 and continuing through the time CropUSA ceased operating, CropUSA was funded and operated with assets improperly transferred from AIA, including, but not limited to, operating capital, office space, customer lists and other trade secrets, agents and staff, goodwill and other assistance. CropUSA paid nothing for these assets.

67.    The Controlling AIA Defendants, except Duclos, were all shareholders of AIA at the time CropUSA was formed and later purportedly became shareholders of CropUSA.

68.    The Controlling AIA Defendants, except Duclos (although she improperly took part in the meetings and acted as the Secretary) and Connie, all served on a purported "advisory board" of CropUSA and/or AIA, and this advisory board exercised actual control over CropUSA and AIA. By exercising control over these entities and committing acts that benefitted CropUSA at the expense of AIA, the Controlling AIA Defendants engaged in a conspiracy to defraud AIA, which should have had the right and title to the property of CropUSA.

69.    On January 10, 2002, CropUSA purportedly entered into a Memorandum of Understanding with the Controlling AIA Defendants. Under the terms of this memorandum, Beck and Cashman were obligated to guarantee loans on behalf of CropUSA. Beck and Cashman guaranteed loans for CropUSA, an Idaho corporation, in Idaho and sent their financial information to Idaho for the guarantees.

70.    Notably, Beck and Cashman had also been obligated to guarantee over $1,000,000 in loans on behalf of AIA since 1995, but they never did. Notwithstanding this obligation, the Controlling AIA Defendants subsequently arranged for AIA to guarantee CropUSA's lines of credit, even though the guarantees were barred by AIA's amended articles of incorporation and bylaws.

THIRD AMENDED COMPLAINT - 16

# Exhibit - A

71.     In 2004, the Controlling AIA Defendants attempted to raise capital for CropUSA by selling shares in CropUSA to private investors by way of a $10,000,000 private placement. The Hawley Troxell Defendants drafted the July 15, 2004 Private Placement Memorandum, despite their knowledge of the illegal "spin-off" of CropUSA and the fiduciary duties they owed to AIA.

72.     When CropUSA began distributing the Private Placement Memorandum in 2004, the company was experiencing financial difficulties that made it difficult, if not impossible, to attract investors to purchase shares pursuant to the private placement.

73.     In addition, in 2004, CropUSA's lack of adequate funding threatened its ability to sell crop insurance. To alleviate these problems, the Controlling AIA Defendants improperly turned to AIA to obtain the necessary funding.

E.     **The Controlling AIA Defendants Unlawfully Transfer $1,510,693 From AIA to Fund CropUSA and Then They Use $634,269 of Those Funds to Repay a Debt that CropUSA Owed to AIA—Thereby Resulting in a $2,144,962 Fraud Against AIA.**

74.     In order to boost CropUSA's balance sheet for the purpose of operating the company, the Controlling AIA Defendants devised a scheme to illegally transfer $1,510,693 from AIA Insurance to CropUSA. The Controlling AIA Defendants conspired with each other in the formation and execution of this scheme to unlawfully transfer $1,510,693 of AIA's funds to CropUSA, and aided and abetted one another in carrying out the scheme and ultimately covering it up.  Upon information and belief, the Hawley Troxell Defendants provided counsel to CropUSA with respect to the unlawful transfer of funds and/or has, at a minimum, assisted in covering up the facts of this illegal transfer.

75.     The scheme involved money derived from AIA Insurance. In August 2004, AIA Insurance received a payment of $1,510,693 from Trustmark. (*See* Dkt. 67-59.) Rather than deposit the payment of $1,510,693 into the account of AIA Insurance, where it would have benefited AIA

THIRD AMENDED COMPLAINT - 17

# Exhibit - A

and its innocent shareholders, John deposited the funds into a new account entitled "AIA Insurance Inc. CropUSA." (*See* Dkt. 67-60.) The address for this account coincided with the address for John's personal residence at 2020 Broadview Drive in Lewiston, Idaho, rather than any address used by AIA. (*Id.*)

76. Shortly after diverting the $1,510,693 into the "AIA Insurance Inc. CropUSA" account, the Controlling AIA Defendants illegally transferred the funds to CropUSA. The Controlling AIA Defendants attempted to disguise this conversion of AIA Insurance's funds by characterizing the transaction as an alleged purchase by AIA Insurance of Series C Preferred Shares in its parent corporation, AIA Services. (*See* Dkt. 67-59.) Then, the Controlling AIA Defendants carried AIA Insurance's alleged investment in the Series C Preferred Shares as having a purported value of $1,510,693 when that was not the true value of the shares.

77. However, as the Controlling AIA Defendants acknowledged at the time, there was no market for the Series C Preferred Shares which were purportedly being repurchased. At the time the $1,510,693 in funds were converted by CropUSA, there was no authorization of any kind for the transaction, and the transaction was concealed from AIA.

78. In order to create a plausible explanation for the transfer of the $1,510,693, CropUSA eventually produced a document designated as a Consent in Lieu of Meeting dated August 26, 2004. (*See* Dkt. 67-61.) However, this document itself is completely fraudulent, as it was retroactively created the following year in order to deceive auditors who questioned the validity of this transaction.

79. In addition, this $1,510,693 purported repurchase of shares separately violated the terms of AIA Services' amended articles of incorporation, which required that all Series C Preferred Shares be redeemed equally and simultaneously from all shareholders. (*See* Dkt. 67-3.)

THIRD AMENDED COMPLAINT - 18

# Exhibit - A

Instead of repurchasing an equal portion of the Series C Preferred Shares from AIA Services' 401(k) Plan, the Controlling AIA Defendants intentionally only repurchased the Series C Preferred Shares held by CropUSA (which had been previously held by Beck, Cashman and their friends).

80. CropUSA was carrying these Series C Preferred Shares in AIA Services on its books with a value of $21,693, which means that CropUSA realized a gain of $1,489,000 on this purported sale of shares. (*See* Dkt. 67-59.) At that time, although the Controlling AIA Defendants had not properly accounted for all funds, assets, labor and other costs advanced from AIA for CropUSA, they had actually accounted for there being a debt of $634,269 owed by CropUSA to AIA.

81. After unlawfully transferring the $1,510,693 received by AIA Insurance to CropUSA, the Controlling AIA Shareholders had CropUSA repay the $634,269 debt owed to AIA, thereby committing a double fraud upon AIA, i.e., AIA should have the $1,510,693 in its bank account now and it should have never lent the $634,269 to CropUSA in the first place. In other words, those fraudulent transactions alone resulted in the loss of $2,144,962 in funds to AIA and thus damaged AIA in the amount of $2,144,962. The Controlling AIA Defendants have actively concealed, or covered up, these transactions from AIA with the assistance of the Hawley Troxell Defendants.

82. AIA and the innocent shareholders of AIA Services were never given notice of the 2004 stock transaction, nor were any proper board or shareholder meetings held to approve the transaction. However, as with the fraudulent document prepared on behalf of CropUSA, a fraudulent Consent in Lieu of Meeting, dated August 26, 2004, was prepared on behalf of AIA. This document was actually produced several months after the transaction and was created to deceive auditors.

THIRD AMENDED COMPLAINT - 19

# Exhibit - A

83.    Upon information and believe, the Hawley Troxell Defendants provided legal services to both AIA and CropUSA at the time of the 2004 transaction or had actual knowledge of the 2004 transaction.

84.    The Hawley Troxell Defendants at various times, as purported counsel for AIA, failed to disclose to AIA the 2004 transaction to transfer $1,510,693 to CropUSA and that the acts of the Controlling AIA Defendants constituted an intentional breach of their fiduciary duties (including the duty of loyalty) owed to AIA and a concealment of a prohibited transaction. For this reason alone, the Hawley Troxell Defendants could not reasonably rely on a tolling agreement to represent AIA, CropUSA and the interest of the Controlling AIA Defendants in later litigation.

85.    The Hawley Troxell Defendants failed to disclose to AIA, or to anyone else, that this $1,510,693 transaction was unlawful on many levels, including but not limited to the fact that it did not comply with the articles of incorporation and bylaws, caused a breach of AIA's other contracts, and could not be justified by the balance sheet of either AIA Insurance or CropUSA. Upon information and belief, the Hawley Troxell Defendants had knowledge of the back-dated Consent in Lieu of Meeting documents.

86.    On February 16, 2005, Beck sent an email to John and Cashman confirming the Controlling AIA Defendants' scheme to misappropriate CropUSA in an effort to profit at the expense of AIA: "[Cashman] and I are so convinced that CropUSA is a winner that anything standing in the way of a good result will be a crime." (Dkt. 67-54.) The crime was stealing CropUSA from AIA and then to drain AIA of its funds and assets to pursue the Controlling AIA Defendants' scheme. This was not the only email exchanged between the Controlling AIA Defendants, as they emailed one another on numerous occasions, including emails directed to recipients in Idaho.

THIRD AMENDED COMPLAINT - 20

# Exhibit - A

F. **The Controlling AIA Defendants Continue to Unlawfully Fund, Subsidize and Operate CropUSA Using AIA's Funds, Assets, Labor and Financial Wherewithal**

87.    After unlawfully taking $2,144,962 from AIA Insurance in 2004, the Controlling AIA Defendants continued to operate CropUSA with assets both tangible and intangible that rightfully belonged to AIA, continued to improperly subsidize CropUSA with AIA's assets and labor, and continued to conceal their actions from AIA and AIA Services' innocent minority shareholders.

88.    Under the management and direction of the Controlling AIA Defendants, AIA regularly failed to allocate costs to CropUSA and other entities and failed to charge markup, interest or profit on costs paid for other entities. For example, John's own salary of $250,000 was allocated entirely to AIA Services even though John's contractual right to a salary from AIA Services had expired in 1998 and had never been renewed by an authorized board. (And, further, John performed no actual work for AIA during the time in question.)

89.    John, with the knowledge and complicity of the other Controlling AIA Defendants, also performed work for other entities owned in full or in part by him while on AIA's payroll, i.e., CropUSA, Pacific Empire Radio Corp., Pacific Empire Communications Corp., Pacific Empire Holdings Corp., Radio Leasing I LLC and Radio Leasing II LLC. John also had other AIA employees work for these entities without compensation to AIA. These facts, like virtually all of the others referenced in this Third Amended Complaint, were concealed from AIA and AIA Services' innocent minority shareholders.

90.    Between its founding in 1999 and the filing of this lawsuit, CropUSA and other entities generated tens of millions of dollars of revenue (including premiums) and other benefits that would have flowed to AIA but for the unlawful and unauthorized acts of the Controlling AIA Defendants.

THIRD AMENDED COMPLAINT - 21

# Exhibit - A

91.     As of 2006, John owed AIA at least $307,000 for personal loans he had taken from AIA Services. For several years, John concealed these loans by engaging in false accounting whereby loans to him were treated as payments of principal on AIA Services' indebtedness due to Reed Taylor on his $6 million promissory note (which was later ruled to be illegal).  In 2006, John "corrected" the alleged accounting "error" by increasing the balance due on Reed Taylor's note to $6 million and reinstating John's $307,000 debt. John had still not repaid this personal loan.

92.     Over the years, John had AIA pay his personal maid, his personal credit card bills, donations, cash advances, family cell phone bills, and other personal expenses. John also had AIA purchase several vehicles from him, and he continued to drive these vehicles after the sales and purchase of other vehicles with AIA's funds to use for his benefit when there was no reason to do so. John also had AIA employees perform work on his personal residence and on other real property not owned by AIA. These acts were all committed with the knowledge and complicity of the Controlling AIA Defendants and without paying AIA the fair value of the services or expenses.

93.     At year-end 2006, AIA had improperly lent $95,000 to Pacific Empire Radio Corp., a corporation partially owned by John and Connie and in which they both served as directors at certain times. The Controlling AIA Defendants transferred that $95,000 receivable from AIA to CropUSA. By the end of 2012, AIA would lend over $1,400,000 in additional funds to Pacific Empire Radio Corp., when all such loans violated AIA Services' amended articles of incorporation and were not authorized under the circumstances by AIA Services' restated bylaws.

94.     In August 2007, AIA settled litigation with the state of Idaho whereby AIA received a mortgage worth approximately $1.5 million for the amount owed by Washington Bank Properties

THIRD AMENDED COMPLAINT - 22

# Exhibit - A

on the real property where AIA Services' headquarters was located.[1] Although AIA Insurance paid the costs of this litigation, the Controlling AIA Defendants, with the assistance of the Hawley Troxell Defendants, improperly titled the note in the name of AIA Services only, and then pledged the note to CropUSA so that the Controlling AIA Defendants could borrow money to pay their attorneys' fees and costs incurred defending in *Taylor v. AIA Services* to the Hawley Troxell Defendants.

95.    As with the 2004 transactions, the transaction pledging the mortgage owned by AIA Services to CropUSA for purportedly paying the Hawley Troxell Defendants' attorneys' fees and costs incurred representing AIA, CropUSA and the Controlling AIA Defendants was a blatant misappropriation and/or illegal pledging of AIA's assets. The loan documents and the pledge agreement were drafted by the Hawley Troxell Defendants, although they later asserted that they were only "scriveners" for the transaction. This transaction was improper and barred by AIA's amended articles of incorporation and bylaws.

G. **The Controlling AIA Defendants Continue to Unlawfully Use AIA's Funds and Financial Wherewithal with the Improper Assistance from the Hawley Troxell Defendants**

96.    On October 26, 2007, the Hawley Troxell Defendants drafted and delivered an opinion letter falsely representing that AIA Insurance was authorized to guarantee a $15,000,000 line-of-credit on behalf of CropUSA, which carried a hard-money loan with an exorbitant interest rate.

---

[1] AIA Services' headquarters was previously owned by its wholly-owned subsidiary the Universe Life Insurance Company, which had sold the building through a lease-back with an option to purchase in the 1990s. After the state of Idaho later took control of Universe Life through a receivership when the capital requirements were changed, the state of Idaho became the owner of the mortgage. Later, AIA was involved in litigation with the state of Idaho over its receivership over Universe Life. The litigation was settled and the state of Idaho transferred the mortgage back to AIA as the consideration for the settlement. AIA ultimately foreclosed on the mortgage thereby obtaining ownership of its headquarters, which was later unlawfully transferred to GemCap, as discussed below.

THIRD AMENDED COMPLAINT - 23

# Exhibit - A

97.    The Hawley Troxell Defendants' opinion letter was delivered for a loan guarantee which violated AIA Services' amended articles of incorporation, its restated bylaws and AIA Insurance's bylaws, and in violation of the duty of loyalty owed by the Hawley Troxell Defendants to AIA.

98.    Lancelot, the lender for this $15,000,000 line-of-credit was subsequently exposed as a Ponzi scheme, and its founder, Gregory Bell, pleaded guilty to criminal charges in federal court. Mr. Bell was the signee for Lancelot on the $15,000,000 line-of-credit. These facts pertaining to the $15,000,000 loan for CropUSA and AIA Insurance's guarantee of that loan, along with other transactions, were never disclosed to AIA by the Hawley Troxell Defendants or the Controlling AIA Defendants and the payment of interest on that loan was detrimental to AIA because most of CropUSA's assets could be traced directly to AIA (and the depletion of CropUSA's funds resulted in less funds available to recover).

H.    **The Controlling AIA Defendants Enter Into Tolling Agreements, but Those Tolling Agreements Do Not Save the Hawley Troxell Defendants from the Unwaivable Conflicts of Interest**

99.    In 2007, Reed Taylor filed suit against AIA and certain of the Controlling AIA Defendants, asserting claims for breaches of contract, breaches of fiduciary duties, conversion, fraud and other claims ("*Taylor v. AIA Services*"). In 2007, the Hawley Troxell Defendants appeared as counsel for AIA Services and AIA Insurance in that lawsuit. Later, Reed Taylor amended his complaint and named CropUSA as a defendant, after recognizing that millions of dollars had been transferred to it from AIA, among other improper transactions (including some of those transactions described in this Third Amended Complaint). (*See* Dkt. 82-2.) The Hawley Troxell Defendants also appeared and represented CropUSA in that lawsuit. (*Id.*) Although Riley did not formally appear as counsel in *Taylor v. AIA Services*, Riley took an active interest in *Taylor*

THIRD AMENDED COMPLAINT - 24

# Exhibit - A

*v. AIA Services* and consulted with Babbitt, Ashby and/or other attorneys at Hawley Troxell relative to that case. The scope of representation of the Hawley Troxell Defendants in *Taylor v. AIA Services* could not have included representing the interest of CropUSA or the Controlling AIA Defendants.

100.    As the purported attorneys for AIA, two entities, the Hawley Troxell Defendants owed duties of loyalty, care, and good faith to AIA and the Hawley Troxell Defendants breached their duties of care and fiduciary duties by engaging in the simultaneous representation of the Controlling AIA Defendants, AIA, CropUSA, and other parties (including Bryan Freeman) with interests adverse to the interests of AIA.

101.    The Controlling AIA Defendants, and any other former AIA directors or officers, had conflicts of interest that prevented any of them from waiving the conflicts of interest involved in the Hawley Troxell Defendants' joint representation of AIA Services, AIA Insurance and CropUSA. In addition, the Controlling AIA Defendants had conflicts of interest that prevented them from being disinterested or proper constituents or officers of AIA to direct the Hawley Troxell Defendants' representation of AIA Services, AIA Insurance and CropUSA.

102.    In 2007, Connie and Beck were purportedly appointed to the Boards of Directors of AIA Service and AIA Insurance by John. Connie and Beck were paid $5,000 per quarter to "serve" on the Boards of Directors of AIA and they also were to receive common shares for their purported "service." Beck and Connie attended certain AIA board meetings in person in Idaho or through telephone calls to Idaho, which further directed aspects of AIA's businesses and certain other transactions. Beck later testified that he serves on AIA's Boards to protect his own interests and those of his friends (the same friends who previously acquired Series C Preferred Shares in AIA Services and illegally exchanged them for common shares in CropUSA).

THIRD AMENDED COMPLAINT - 25

# Exhibit - A

103.    In 2007 and 2008, the Controlling AIA Defendants entered into written tolling agreements in connection with the various litigations directly or indirectly involving AIA. The Hawley Troxell Defendants were improperly involved with and/or facilitated the Controlling AIA Defendants entering into such tolling agreements for the purpose of allowing the Hawley Troxell Defendants to continue to represent AIA, CropUSA and directly or indirectly certain of the Controlling AIA Defendants.

104.    By tolling the statute of limitations for claims against the Controlling AIA Defendants, the Hawley Troxell Defendants sought to use the tolling agreements to authorize the waiver of their conflicts of interest representing AIA, CropUSA and the interests of the Controlling AIA Defendants in litigation that could have and should have exposed the fraud and intentional breaches of fiduciary duties committed by the Controlling AIA Defendants.

105.    The limited permissible circumstances when tolling agreements and conflict waivers may be appropriate were not present when the Hawley Troxell Defendants prepared and/or entered into agreements with AIA, CropUSA and/or the Controlling AIA Defendants. Upon information and belief, the Hawley Troxell Defendants prepared and/or entered into agreements and/or amended agreements without requiring AIA to have independent counsel and without involving disinterested and unconflicted constituents from AIA in violation of the Rules of Professional Conduct, including RPC 1.7, RPC 1.8 and RPC 1.13. Throughout the Hawley Troxell Defendants' representation of AIA and CropUSA, they failed to act in the best interests of AIA and to address the conflicts of interest and malfeasance committed against AIA with the highest unconflicted and disinterested constituents from AIA in violation of the Rules of Professional Conduct, including, RPC 1.13.

THIRD AMENDED COMPLAINT - 26

# Exhibit - A

106.    The Hawley Troxell Defendants knew or should have known that the Controlling AIA Defendants had committed intentional acts of fraud and breaches of fiduciary duties (including the duty of loyalty) owed to AIA. The Hawley Troxell Defendants knew or should have known that by allowing the Controlling AIA Defendants to continue to operate and control AIA that they would continue to conceal their past torts and likely continue to commit new torts, which is precisely what occurred here as demonstrated by the facts alleged in this Third Amended Complaint.

107.    Although these tolling agreements tolled the statute of limitations for claims AIA could assert against the Controlling AIA Defendants (which eliminates any defense they may have to assert any statute of limitations defenses), the facts set forth in this Third Amended Complaint demonstrate why such tolling agreements were improper under the circumstances as the agreements involved tolling intentional torts committed against AIA. While the claims were being tolled, the Controlling AIA Defendants continued to unlawfully use AIA's cash, resources and ability to borrow to fund other businesses and pay compensation to themselves.

108.    During the course of the litigation in *Taylor v. AIA Services*, Reed Taylor attempted to negotiate a settlement, but he insisted that any settlement must include full disclosure to, and authorization by, AIA Services' minority shareholders and to allow them to participate in CropUSA common share ownership. (*See* Dkt. 67-18.) Not only did the Controlling AIA Defendants and Hawley Troxell Defendants reject Reed Taylor's offer, but they still refused and failed to provide full disclosure to AIA and AIA Services' innocent minority shareholders of the malfeasance and torts committed against AIA. The untenable position of the Hawley Troxell Defendants was confirmed when the only person seeking to require full and fair disclosure to the shareholders and for them to rightfully participate in AIA's business was a former creditor, Reed

THIRD AMENDED COMPLAINT - 27

# Exhibit - A

Taylor. (*Id.*)

109.    During the course of *Taylor v. AIA Services*, Connie and Beck represented to Judge Brudie, the Idaho Supreme Court, and AIA that the redemption of Reed Taylor's shares should be illegal to benefit AIA Services' minority shareholders. (*See* Dkt. 67-23 and 67-25.) After Judge Brudie ruled the redemption of Reed Taylor's shares was illegal, neither Connie, Beck, the Hawley Troxell Defendants nor any of the other Controlling AIA Defendants did anything to benefit AIA or its minority shareholders nor did they ever have any intention of helping them, contrary to what they had represented to Judge Brudie and the Idaho Supreme Court.

110.    Instead of sharing equally in AIA's assets with AIA Services' innocent minority shareholders, the Controlling AIA Defendants later sought to eliminate those minority shareholders for only ten cents per share, even though Connie and John both previously valued the shares much higher even after considering the over $6 million that AIA Services owed to Reed Taylor at the time of valuation (a debt that was later ruled to be illegal and void). (*See* Dkt. 67-24 and 67-50.)

111.    Riley was an attorney at the law firm of Eberle Berlin at the time of the redemption of Reed Taylor's shares in 1995 and he breached his duty of care by advising AIA Services to enter into the illegal stock redemption transaction. *See Taylor v. AIA Servs. Corp.*, 151 Idaho 552, 261 P.3d 829 (2011). Riley concealed facts from AIA regarding the redemption.

112.    The illegal redemption of Reed Taylor's common shares ultimately led to AIA incurring over $1 million in attorneys' fees and costs litigating and resulted in AIA Services being required to report to the IRS a gain from the $6 million it never had to pay Reed Taylor.

113.    Upon information and belief, the Controlling AIA Defendants never reported the gain from the extinguished $6 million debt to Reed Taylor on AIA Services' tax return. If the

THIRD AMENDED COMPLAINT - 28

# Exhibit - A

Controlling AIA Defendants did not report the $6 million income to the IRS and AIA Services is obligated to pay taxes, penalties and interest on that gain, the Controlling AIA Defendants and Hawley Troxell Defendants are liable for those sums as well for breaching their fiduciary duties owed to AIA.

114.    Based on the intentional acts of the Hawley Troxell Defendants, AIA has been decimated because the Controlling AIA Defendants remained in control of AIA through those tolling agreements and the Hawley Troxell Defendants' ongoing representation of AIA. The end result of these tolling agreements and ongoing representation was that the Hawley Troxell Defendants improperly ensured that the Controlling AIA Defendants would retain control over AIA to the detriment of AIA and for the improper benefit to the Hawley Troxell Defendants and the Controlling AIA Defendants.

115.    In or around 2007 or 2008, AIA Insurance received a settlement of approximately $800,000 for litigation that AIA Insurance had funded for certain policy holders. Instead of utilizing or retaining AIA's portion of such funds exclusively for AIA, the Controlling AIA Defendants improperly used those funds to, *inter alia*, continue their intentional acts of funding CropUSA and to pay litigation expenses caused by them or other unauthorized uses. Upon information and belief, the Hawley Troxell Defendants had knowledge of the receipt of those funds, yet they did nothing to protect the funds even though the funds were at issue in *Taylor v. AIA Services*.

116.    In 2008, the Controlling AIA Defendants and the Hawley Troxell Defendants permitted CropUSA to sell a book of crop insurance business to Hudson Insurance for the benefit of CropUSA when approximately 75% of the business had been derived directly from AIA's agency force (i.e., agents such as Larry Whitehead). The over $15 million sale price should have

THIRD AMENDED COMPLAINT - 29

# Exhibit - A

been paid to AIA, rather than to CropUSA or to pay the debts incurred by the Controlling AIA Defendants through CropUSA. Even if the sale of this book of business rightfully occurred, AIA should have been the recipient of the sale proceeds and there should not have been any money owed to Lancelot or others because the Controlling AIA Defendants had engaged in corporate waste and other breached fiduciary duties that resulted in the sums being allegedly owed.

117.    Sometime after CropUSA sold the bulk of its assets to Hudson Insurance in 2008, which were derived primarily from AIA, the Controlling AIA Defendants obtained further funds from Hudson Insurance for Growers National Cooperative Insurance Agency, Inc. ("Growers National"), an entity formed and funded by AIA for the purpose of selling crop insurance that allowed the members to participate in the agency by receiving patronage dividends.

118.    Upon information and belief, CropUSA received over $500,000 from Hudson Insurance for Growers National. These funds should have been paid to AIA and the receipt of the funds was concealed from AIA. Plaintiff will establish the exact amount of funds that the Controlling AIA Defendants and/or CropUSA received from Hudson Insurance for Growers National at the time of trial.

I.    **The Controlling AIA Defendants Continue Unlawfully Using Funds from AIA and Intentionally Committing Torts against AIA with the Assistance of the Hawley Troxell Defendants—Even While This Lawsuit Was Pending**

119.    Upon information and belief, the Hawley Troxell Defendants have been paid the bulk of the over $2,000,000 in attorneys' fees and costs incurred and/or paid for the various lawsuits. Plaintiff will establish the exact amount of funds paid to the Hawley Troxell Defendants by AIA and/or on behalf of AIA, which Plaintiff is seeking to be disgorged and returned to AIA.

120.    From 2009 through the present time, Donna Taylor exercised her right under the amended articles of incorporation to appoint two different directors to AIA Services' Board of

THIRD AMENDED COMPLAINT - 30

# Exhibit - A

Directors, but the Controlling AIA Defendants and/or the Hawley Troxell Defendants refused to honor her unqualified right thereby resulting in all actions taken by AIA Services' Board of Directors during that period of time being unauthorized and thus a breach of the fiduciary duties of the Controlling AIA Defendants.

121.    In December 2009, Donna Taylor filed suit against AIA Services to exercise her unequivocal right to appoint her designee, Patrick Moran, to the Board of Directors of AIA Services and to appoint a receiver for AIA Services. The Hawley Troxell Defendants once again appeared in that lawsuit and successfully opposed Donna Taylor's designee being appointed to the Board of Directors or a receiver being appointed by improperly seeking a stay in the lawsuit.

122.    Had the Hawley Troxell Defendants joined Donna Taylor in having a receiver appointed for AIA Services, which the Hawley Troxell Defendants should have done in light of the countless intentional torts committed against AIA by the Controlling AIA Defendants, there is no doubt that they could have stopped the Controlling AIA Defendants from carrying out their ongoing fraud, intentional breaches of fiduciary duties and their destruction of AIA. At a minimum, the Hawley Troxell Defendants' acts and/or omissions in this regard was a substantial factor of the improper transactions, unlawful acts, and the cause of millions of dollars of damages to AIA.

123.    This lawsuit was filed by Plaintiff on August 11, 2010, and subsequently stayed at the request of the Controlling AIA Defendants and the Hawley Troxell Defendants. During that stay, inappropriate and unlawful transactions continued to occur.

124.    The Controlling AIA Defendants continued to utilize AIA's funds, assets, labor, trade secrets and borrowing ability to unlawfully assist CropUSA and other entities owned by the Controlling AIA Defendants.

THIRD AMENDED COMPLAINT - 31

# Exhibit - A

2 SER 257

125.    In March 2012, the Controlling AIA Defendants, improperly terminated AIA Services' ESOP and paid those shareholders three cents per share for their hard-earned common shares. At no time prior to or after the termination of the ESOP did the Controlling AIA Defendants disclose the facts pertaining to the malfeasance and torts existing at that time (as described in this Third Amended Complaint or otherwise) to those shareholders. (*See* Dkt. 67-30-33, 34.)  AIA Services was separately barred from purchasing or redeeming the common shares held in the ESOP.

126.    However, the Controlling AIA Defendants knew that AIA Services' amended articles of incorporation barred all stock redemptions, including any purchases of shares held by the ESOP, until the Series A Preferred Shares were all fully redeemed and the Series C Preferred Shares had been paid the over $1,000,000 in dividends owed. The repurchase of the ESOP shares for three cents per share was illegal, ultra vires and improper.

127.    Effective March 23, 2012, Beck and Cashman purportedly entered into an agreement with John to sell their purported common shares in AIA Services, which such shares had never been properly or lawfully issued in the first place. The agreement provided that Idaho law applied and, upon information and belief, Beck and Cashman entered into that agreement in connection with the failed effort to effectuate a reverse stock split to eliminate the minority shareholders.

128.    In 2012, the Controlling AIA Defendants improperly sought to effectuate a reverse stock split and to only pay AIA Services' minority common shareholders ten cents per share to repurchase those common shares (including Plaintiff's shares) without disclosing any facts and without offering full and fair compensation for the value of the shares. (*See* Dkt. 66-3, 67-48, 67-

THIRD AMENDED COMPLAINT - 32

# Exhibit - A

48.) The notice to the shareholders was signed by Duclos and the improper and unlawful reverse stock split was approved by Beck, John and Connie. (*Id*.)

129.    Fourteen shareholders objected to the alleged reverse stock split. (*See* Dkt. 67-41.) The ill-conceived reverse stock split violated AIA Services' amended articles of incorporation and the Controlling AIA Defendants did not comply with Idaho Code, including, by failing to provide the form for the shareholders to state the value that they believed should be paid for their common shares thereby further establishing the true improper purpose of the failed reverse stock split. The reverse stock split was not pursued for any proper business purpose.

130.    In response to the fourteen shareholder objections and notices of demands for payment, the Controlling AIA Defendants, without regard to the fact that they would expend tens of thousands of dollars more in funds litigating the issue rather than simply paying the shareholders the true fair value of their shares, had AIA Services file suit against the fourteen shareholders. (*See* Dkt. 83-15.) Judge Carl Kerrick dismissed the lawsuit, and further noted that it was disingenuous to seek a reverse stock split until this lawsuit was resolved. (*See* Dkt. 86-1.) Judge Kerrick later awarded attorneys' fees and costs to the shareholder defendants. That judgment in favor of those fourteen shareholders has still never been paid by the Controlling AIA Defendants or AIA, and the Controlling AIA Defendants should be required to pay that judgment on behalf of AIA.

131.    The failed reverse stock split drained AIA of significant and unnecessary attorneys' fees and costs (fees and costs which could have been paid to those shareholders or for other AIA obligations) and constituted a waste of AIA's assets. This purported reverse stock split was approved and/or acquiesced in by the Controlling AIA Defendants, which was a breach of their fiduciary duties. Upon information and belief, the Hawley Troxell Defendants were aware of the scheme to effectuate the reverse stock split to eliminate AIA Services' innocent minority

THIRD AMENDED COMPLAINT - 33

# Exhibit - A

shareholders, which would in turn eliminate common shareholder standing for this lawsuit.

132.    From 2009 through 2016, the Controlling AIA Defendants continued loaning money to, or allowed money to be lent to, Pacific Empire Radio Corporation in an amount exceeding $1,600,000 by year-end 2015 when that corporation had no ability to repay the sums owed and it benefitted John and Connie (who owned shares in that corporation at certain relevant times) as those were funds they would not have to personally provide to Pacific Empire Radio Corporation.  In 2015 and 2016, the IRS filed liens against Pacific Empire Radio Corporation in excess of $500,000 for the non-payment of employee withholding taxes, yet the Controlling AIA Defendants permitted AIA Services to lend over $1,600,000 to Pacific Empire Radio Corporation.

133.    From 1999 through 2012, the Controlling AIA Defendants concealed their ownership interests in other entities from AIA, which were derived from and/or funded by AIA, including, without limitation, CropUSA, CropUSA Insurance Services, LLC, and Pacific Empire Holdings Corp.

134.    From 1995 through 2016, John received over $2,700,000 in cash salary, compensation, benefits and property from AIA. This amount does not include any compensation, payments or other improper distributions he may have received from CropUSA and other entities funded or launched using AIA. At a minimum, John should be required to disgorge the over $2,000,000 that he received from AIA from 1999 through 2016 and other compensation, funds and benefits received from AIA since 1999, which John received while acting as a faithless fiduciary and while improperly competing against AIA through CropUSA and other entities (including Pacific Empire Holdings Corp.).

///

///

THIRD AMENDED COMPLAINT - 34

# Exhibit - A

**J.** **The Controlling AIA Defendants, with GemCap Aiding and Abetting Them, Illegally Had AIA Guarantee Loans Made to CropUSA by GemCap, Concealed the Guarantees from AIA, Illegally Entered into Settlement Agreements with GemCap, Concealed the Settlement Agreements from AIA, and Unlawfully Transferred Property to GemCap Thereby Damaging AIA.**

**135.** While the instant lawsuit was pending, the Controlling AIA Defendants sought additional funding for CropUSA. GemCap agreed to make the loan to CropUSA in Idaho for the purpose of operating its business in Idaho. On or about November 23, 2011, the Controlling AIA Defendants obtained a $5,000,000 line-of-credit from GemCap for CropUSA, which was subsequently amended on April 1, 2012, July 18, 2012, and February 4, 2013 to be a $10,000,000 line-of-credit (the original loan and all subsequent modifications and amendments are collectively the "GemCap Loan").

**136.** On November 23, 2011, the Controlling AIA Defendants, with the substantial assistance from GemCap, had AIA Services and AIA Insurance guarantee $1,113,930 of the GemCap Loan. In connection with that guarantee, John, Beck and Connie executed a board resolution for AIA Services purportedly authorizing that guarantee, even though they all had conflicts of interest that prevented them from authorizing the guarantee, AIA was separately barred from guaranteeing the loans, they did not obtain consent from Donna Taylor for the guarantee, and Donna Taylor's designee on AIA Services' Board of Directors was not provided notice of the GemCap Loan. On October 1, 2012, the Controlling AIA Defendants had AIA purportedly guaranteed the entire $10,000,000 GemCap Loan (the 2011 $1,113,930 limited guarantee executed in 2011 and the $10,000,000 unlimited guarantee executed in 2012 are collectively referred to as the "Guarantees"). Even though AIA purportedly executed the Guarantees, AIA could not borrow funds from the GemCap Loan and AIA obtained no benefit whatsoever.

THIRD AMENDED COMPLAINT - 35

# Exhibit - A

137.    Upon information and belief, GemCap was aware of the existence of this lawsuit, or should have been aware of its existence, at the time of the GemCap Loan and AIA's Guarantees (which asserted claims based on other unlawful guarantees and alleged substantial other misconduct, including claims against the assets GemCap was purportedly accepting from AIA and CropUSA). Upon information and belief, GemCap was aware or should have been aware, that AIA Services' board of directors was not fully and properly seated (including that the Controlling AIA Defendants were not honoring Donna Taylor's unequivocal right to appoint a director) and that AIA's officers were not properly elected. Upon information and belief, GemCap knew, or should have known, that AIA Services was not conducting the required annual shareholder meetings and was not lawfully complying with fundamental corporate governance procedures.

138.    When GemCap accepted the first of the Guarantees from AIA, GemCap requested and was provided with an Officer's Certificate, signed by John and Duclos, that attached copies of AIA Services' amended articles of incorporation and bylaws (both of which contained provisions barring the Guarantees). As a result, GemCap was aware, or should have been aware, that AIA, and its purported officers, were not authorized to execute the Guarantees or pledge any of its assets to GemCap. AIA received no consideration for entry into the Guarantees and most of the GemCap Loan's indebtedness was already owed as of the date of the unlimited Guarantee executed on October 1, 2012.

139.    In connection with the GemCap Loan and AIA's Guarantees of that loan, GemCap requested, and was provided with, copies of AIA Services' amended articles of incorporation and restated bylaws, which expressly barred the Guarantees because, *inter alia*, the GemCap Loan was not for a wholly-owned subsidiary of AIA Services and the Loan implicated conflicts of interest

THIRD AMENDED COMPLAINT - 36

# Exhibit - A

provisions that pertained to the Controlling AIA Defendants. As a result, GemCap was fully aware, or should have been fully aware, that AIA was not authorized to execute the Guarantees or to perform under the Guarantees.

140.    The Guarantees were signed by John Taylor, as the purported President of AIA Services and the purported President of AIA Insurance. GemCap was aware, or should have been aware with the exercise of reasonable diligence, that John Taylor had no authority to execute the Guarantees on behalf of AIA Services or AIA Insurance, and that, under the circumstances, the Guarantees were barred by AIA Services' amended articles of incorporation and AIA's bylaws. The Controlling AIA Defendants all had knowledge of the Guarantees and the fact that they were barred, and they never provided notice of the Guarantees or obtained shareholder approval from them (including, without limitation, approval from Donna Taylor, who was the sole Series A Preferred Shareholder of AIA Services). The Guarantees are illegal and/or ultra vires because they violated AIA Services' amended articles of incorporation, AIA's bylaws and numerous Idaho Code sections.

141.    On December 20, 2012, GemCap filed a UCC financing statement with the Idaho Secretary of State stating that AIA Services and AIA Insurance had pledged "All of each of Debtor's right, title and interest, whether now existing or hereafter acquired, in and to all assets of such Debtor, wherever located, whether tangible or intangible, and the proceeds and products thereof" ("Financing Statement"). The Financing Statement was not properly authorized or disclosed to AIA's shareholders, and it violated AIA Services' amended articles of incorporation and AIA's bylaws.

142.    Under the terms of the GemCap Loan, CropUSA could borrow up to $10,000,000. Upon information and belief, CropUSA owed GemCap $8,676,288.39, plus interest, attorneys'

THIRD AMENDED COMPLAINT - 37

# Exhibit - A

fees and costs, as of July 26, 2013. Under the terms of the hard-money GemCap Loan, interest accrued at 18.5% per annum and 24% upon a default.

143.     According to a document later filed in 2014 in federal court in California, from April 15, 2013 through April 19, 2013, GemCap's agent traveled to Idaho to conduct a purported audit of CropUSA, AIA, and other entities at AIA's headquarters in Lewiston, Idaho.  John was present at the purported audit. Upon information and belief, GemCap's agent discovered facts that demonstrated that AIA and other entities owned by the Controlling AIA Defendants were engaging in improper transactions. This audit further reveals that the Hawley Troxell Defendants provided further legal work for CropUSA (despite the allegations and claims in this lawsuit). Upon information and belief, GemCap's agent traveled to Idaho to conduct other audits of CropUSA and AIA in Lewiston, Idaho. GemCap and the Controlling AIA Defendants never disclosed or provided the results of any of the audits to disinterested constituents at AIA or to AIA Services' minority shareholders.

144.     Upon information and belief, Gemcap provided CropUSA and other parties a notice of default through a notice dated July 16, 2013. Upon information and belief, GemCap provided a purported notice of default and demand for payment to AIA Services and AIA Insurance of the $8,676,288.39 owed by CropUSA through a notice dated July 29, 2013.

145.     GemCap, CropUSA and the Controlling AIA Defendants failed to disclose to properly elected and unconflicted directors of AIA, the Plaintiff, or AIA Services' other innocent minority common shareholders the GemCap Loan (including its terms), AIA's Guarantees (including their terms), and the subsequent notices of default of the GemCap Loan.

146.     On July 30, 2013, GemCap filed suit against CropUSA, John and others for the default of the GemCap Loan. GemCap asserted claims for breach of contract, fraud, conversion

THIRD AMENDED COMPLAINT - 38

# Exhibit - A

and other claims. The Controlling AIA Defendants and GemCap did not provide any notice of this lawsuit to AIA Services' shareholders nor did they take any action to proceed in the best interests of AIA.

147.    After certain of AIA Services' shareholders learned of the GemCap lawsuit in California, GemCap was advised that AIA's Guarantees and the Settlement Agreements were unauthorized and illegal and that AIA was not being properly operated. Nevertheless, GemCap sought to collect from AIA based on the unauthorize and illegal Guarantees. At this point in time, GemCap had further actual knowledge of the unauthorized and illegal Guarantees and that AIA was not being operated properly (including that the Controlling AIA Defendants were breaching fiduciary duties owed to AIA), assuming that it was not aware of these facts prior to accepting AIA's Guarantees. As a result, GemCap was aware that AIA's Guarantees had been improperly and unlawfully executed.

148.    Despite complaints from AIA Services' minority shareholders and even though GemCap, AIA, CropUSA and the Controlling AIA Defendants knew that AIA was barred from executing the Guarantees and entering into any settlement agreement that required the payment of any funds or transfer of any assets from AIA. GemCap and AIA, purportedly on behalf of John, purportedly entered into a purported settlement and a written settlement agreement sometime after January 9, 2015 (collectively the "Settlement Agreement" or "Settlement Agreements"). The Settlement Agreements were concealed from AIA and its shareholders by the Controlling AIA Defendants and GemCap, and further constitute a conspiracy to defraud AIA. AIA received no consideration for the Settlement Agreements.

149.    Under the terms of the Settlement Agreements, AIA Services and AIA Insurance were require to transfer certain real property to GemCap and judgments would be entered against

THIRD AMENDED COMPLAINT - 39

# Exhibit - A

them in the amount of $12,126,584.61, which included $3,986,368.78 in interest, penalties and costs. The Settlement Agreements were barred by AIA Services' amended articles of incorporation and AIA's bylaws for the same reasons that the Guarantees were barred, and it was a breach of John's fiduciary duties owed to AIA when he executed the Settlement Agreement (which GemCap was fully aware). In addition, the Settlement Agreements illegally provided that AIA would not file for bankruptcy protection and that malpractice claims would be assigned to GemCap. The Settlement Agreements are illegal and/or ultra vires because they violated AIA Services' amended articles of incorporation, AIA's bylaws, numerous Idaho Code sections, and were the product of intentional breaches of John's fiduciary duties owed to AIA.

150.     Under the terms of the Settlement Agreements, GemCap required John and/or certain other Controlling AIA Defendants to continue to improperly and unlawfully operate AIA in the manner that AIA had been operated in the past. The Controlling AIA Defendants have continued to improperly and unlawfully operate AIA since that time by and through their direct or indirect participation, lack of action, acquiescence and covering up of the improper and unlawful operation of AIA, which further resulted in GemCap substantially assisting and acquiescing in the Controlling AIA Defendants' breaches of fiduciary duties, fraud and other malfeasance by and through the continued improper operation of AIA, including, without limitation, allowing the Controlling AIA Defendants to operate AIA without having shareholder meetings, without having proper boards of directors, and in violation of AIA's amended articles of incorporation and bylaws.

151.     Upon information and belief, the Controlling AIA Defendants were aware of the GemCap litigation and Settlement Agreements, but they and GemCap continued to aid and abet John by allowing him to unlawfully enter into the Settlement Agreements and to improperly operate AIA. The Controlling AIA Defendants and GemCap, assisted, acquiesced and assisted in

THIRD AMENDED COMPLAINT - 40

# Exhibit - A

covering up the transactions.

**152.**    According to the financial statements for AIA for 2015 (which were belatedly provided to AIA Services' shareholders in August 2016 after many demands),[2] AIA disclosed the Guarantees and Settlement Agreements for the first time to AIA Services' shareholders. However, John inaccurately stated that the "Company admitted no liability, but entered into settlement discussions and reached a confidential settlement agreement in late 2014…".   However, John failed to disclose to AIA Services' shareholders that he had agreed to allow judgments in the amount of $12,126,584.61 to be unlawfully and inappropriately entered against AIA and that any judgment against him would be delayed (i.e., he once again placed his interests above the interests of AIA, even assuming that the Settlement Agreement was legal and authorized).

**153.**    The real property located at 111 Main Street, Lewiston, Idaho (AIA Services' former headquarters) was ultimately transferred to GemCap and sold. As with the Guarantees and Settlement Agreements, the transfer of AIA Services' former headquarters to GemCap was not disclosed or authorized by AIA Services' shareholders.  According to recently provided 2015 financial statements for AIA (which were provided in August 2016), John disclosed for the first time that the real property located at 111 Main Street, Lewiston, Idaho (AIA Services' headquarters) was purportedly transferred to GemCap as a reduction of amounts allegedly owed to CropUSA, when AIA owed nothing to CropUSA and CropUSA actually owed AIA.  Upon information and belief, AIA Services' headquarters had a replacement value exceeding $7,000,000.

---

[2] Plaintiff is not alleging in this Third Amended Complaint that the applicable financial statements prepared for AIA or CropUSA are accurate. To the contrary, Plaintiff is alleging that certain financial statements were fraudulently prepared and/or approved by the Controlling AIA Defendants.

THIRD AMENDED COMPLAINT - 41

# Exhibit - A

154.    As a result of the Guarantees and Settlement Agreements, AIA paid sums for CropUSA and other entities, incurred and/or paid substantial attorneys' fees and costs, and/or were damaged. Once again, John placed his interests and the interests of the other Controlling AIA Defendants above the interests of AIA by improperly stipulating to judgments against AIA in excess of $12,000,000, but no judgment was entered against him even though he personally guaranteed the GemCap Loan, too. To the extent that the Guarantees and/or Settlement Agreements are not declared illegal or ultra vires and Plaintiff recovers all damages, the Controlling AIA Defendants are liable for all such damages not recovered and they are separately liable for any other damages caused by the ultra vires acts.

155.    GemCap knew that John had no apparent or actual authority to execute the Guarantees and Settlement Agreements on behalf of AIA, which is further supported by the fact that GemCap's attorneys were specifically advised that the Guarantees and Settlement Agreements were not authorized. GemCap knew that, by making the GemCap Loan, accepting the Guarantees and entering in the Settlement Agreements, it would be aiding and abetting and conspiring with the Controlling AIA Defendants and CropUSA by providing improper funding to the Controlling AIA Defendants and CropUSA and by assisting them in engaging in unauthorized, intra vires, ultra vires and/or illegal conduct.

156.    GemCap knew that the Controlling AIA Defendants breached their fiduciary duties owed to AIA, and/or aiding and abetting others in those breaches, by entering into the Guarantees and Settlement Agreements (and requiring AIA's assets and/or funds to be paid to GemCap or others because of GemCap (including attorneys)) and participating in, and covering up, the Controlling AIA Defendants' breaches of fiduciary duties against AIA. GemCap has aided and abetted one or more of the Controlling AIA Defendants in breaching their fiduciary duties and in

THIRD AMENDED COMPLAINT - 42

# Exhibit - A

the commission of fraud against AIA. GemCap has also aided and abetted the Controlling AIA Defendants by allowing them to maintain control over AIA when GemCap knew that they were not operating AIA in the best interests of AIA, and by concealing and covering up the Controlling AIA Defendants' breaches of fiduciary duties and fraud.

**K.**  **John Unlawfully Transfers Certain Real Property to AIA and Requires AIA to Pay the Liabilities on the Property and He Alleges that AIA Owes Him $545,563 in Accrued Salary.**

157.    Subsequent to the GemCap Loan and according to AIA Services' purported 2015 financial statements (which were belatedly provided in August 2016 after many demands), John allegedly executed quitclaim deeds purportedly transferring certain real property, held in the name of other entities John controls, to AIA with a purported book value of $820,668, and AIA was improperly required to assume a purported $393,863 in debts on the real property. These real property transfers and assumptions of debts were unauthorized and ultra vires. Upon information and belief, GemCap was involved in these real property transfers and assumption of debts, and GemCap knew that such transfers were aiding and abetting John and other Controlling AIA Defendants in the breach of their fiduciary duties owed to AIA.

158.    Even if authorized, the determination of the $820,668 purported book value of such real property was not authorized and John and the Controlling AIA Defendants had conflicts of interest that prevented any of them from making any determination of value or authorizing the alleged transfers or assumption of debts. AIA's proper Board of Directors did not authorize the transactions nor did AIA Services' shareholders.

159.    According to the same recently provided financial statements for AIA for 2015, John alleges that AIA owes him $545,563 in alleged accrued salary as of December 31, 2015, but AIA owes John nothing and he is not entitled to any compensation because he has been a faithless

THIRD AMENDED COMPLAINT - 43

# Exhibit - A

fiduciary of AIA.  Upon information and belief, at least one of the parcels of real property has already been transferred or lost as a result of foreclosure proceedings for less than the purported book value.  AIA seeks to rescind the real property transfers and assumption of debts.

**L.  John Unlawfully Amends AIA Services and AIA Insurance's Bylaws and Issues Himself Series A Preferred Shares in AIA Services.**

160.    According to the recently provided financial statements for AIA for 2015 (which were belatedly provided in 2016 after many demands), sometime in 2016, John purportedly purchased 7,500 Series A Preferred Shares in AIA Services, but those shares were improperly issued and were never authorized by a properly seated and unconflicted Board of Directors of AIA Services, as required. In addition, AIA Services' amended articles of incorporation authorized the Series A Preferred Shares to only be issued to Donna Taylor in connection with the prior restructuring of AIA Services, and not to issue more Series A Preferred Shares to John.

161.    It is unclear why John improperly issued the 7,500 Series A Preferred Shares in AIA Services when those shares were not purchased or issued for any legitimate business purposes, they were never properly authorized by AIA Services' Board of Directors or shareholders, and John had conflicts of interest that prevented him from purchasing or issuing those shares on behalf of the Board of Directors of AIA Services even if the shares were authorized to be issued under AIA Services' amended articles of incorporation (which they were not).

162.    According to the same recently provided financial statements for AIA for 2015 and the letter accompanying those financial statements, John allegedly amended the bylaws of AIA Services and AIA Insurance to provide for an award of attorneys' fees and costs for "intracompany suits" if a "claiming party does not obtain a favorable judgment on the merits of the claim." These purported amendments were never adopted for a legitimate purpose, John had conflicts of interest that prevented him from adopting the provision, and the provisions are unenforceable.

THIRD AMENDED COMPLAINT - 44

# Exhibit - A

163. According to the same recently provided financial statements for AIA for 2015, the Controlling AIA Defendants have spent over $400,000 litigating against Donna Taylor in an effort to not pay her the just over $400,000 in principal owed on her Series A Preferred Shares. This further demonstrates the breached fiduciary duties and corporate waste occurring at AIA by and through the Controlling AIA Defendants because AIA Services should have simply paid Donna Taylor the $400,000 instead of spending that money to fight her.

M. **There Is a Laundry List of the Unlawful Acts, Self-Dealing, Malfeasance and Intentional Torts Committed by the Controlling AIA Defendants**

164. Since acquiring operational control of AIA Services in 1995, the Controlling AIA Defendants have engaged in repeated acts of faithless self-dealing, transactions detrimental to AIA, committed intentional torts (including fraud and breaches of fiduciary duties), breached their fiduciary duties (including their duties of loyalty), concealed, conspired to commit intentional torts, aided and abetted in the commission of intentional torts and to cover up those torts, to the detriment of AIA in Idaho, including, but not limited to, the following intentional acts:

(a) Controlling AIA's Board of Directors and/or the decisions made by AIA's Board of Directors and intentionally refusing to act in the best interests of AIA;

(b) Violating AIA Services' restated bylaws, including but not limited to, failing to hold annual shareholder meetings, failing to provide notice or obtain proper shareholder approval for certain transactions, failing to comply with conflicts of interest provision in the bylaws and articles of incorporation which restricted many of the unlawful or improper transactions described in this Third Amended Complaint, and failing to properly comply with applicable corporate governance;

(c) Violating AIA's amended articles of incorporation thereby allowing substantial funds and assets to be depleted from AIA and obligating AIA to be liable for loans or guarantees which were barred by those amended articles of incorporation;

THIRD AMENDED COMPLAINT - 45

# Exhibit - A

(d) Diverting corporate opportunities belonging to AIA, including CropUSA and Pacific Empire Holdings Corp. (a/k/a Sound Insurance);

(e) Unlawfully conveying, encumbering, utilizing, and/or pledging AIA's assets to themselves or other entities;

(f) Inappropriately redeeming, acquiring and/or issuing shares of stock and/or making payments on put options in AIA Services, including but not limited to, issuing shares to the Controlling AIA Defendants;

(g) Inappropriately paying dividends and failing to pay dividends;

(h) Engaging in transactions and actions in direct conflict of interest with their duties owed to AIA and failing to comply with conflict of interest provisions in AIA's bylaws and the law;

(i) Guaranteeing loans for CropUSA and failing to guarantee loans for AIA;

(j) Paying excessive compensation to officers and directors, including but not limited to, paying John $250,000 per year to purportedly act as CEO and President of AIA Services after his contractual entitlement to such salary had expired, when John had conflicts of interest that barred him from determining his pay, and he had represented that he would not take salary in certain year(s);

(k) Wasting AIA's assets and making improper payments, including by paying Connie and Beck $20,000 per year to purportedly serve on the Boards of Directors of AIA and paying John compensation when he was doing nothing for the benefit of AIA;

(l) Divulging and/or utilizing AIA's trade secrets for the benefit of themselves and other entities, including CropUSA (including, without limitation, AIA's agency force and customer lists);

(m) Soliciting and transferring AIA employees to work for CropUSA;

THIRD AMENDED COMPLAINT - 46

# Exhibit - A

(n) Engaging in acts and/or decisions without making full disclosure and without obtaining the required approval of AIA Services' shareholders resulting in none of the transactions and acts referenced in this Third Amended Complaint (and any that may be at issue at or before trial) being properly ratified by AIA Services, AIA Insurance or their shareholders;

(o) Engaging in millions of dollars of transactions that resulted in AIA conveying benefits without the receipt of any consideration, without being repaid and/or without being paid any mark-up or profit;

(p) Forming and operating entities in direct competition with AIA in the insurance marketplace, including without limitation, CropUSA and Pacific Empire Holdings Corp.;

(q) Making false representations, concealing facts, and omitting material facts from AIA, including, without limitation, regarding share values, items in AIA's financial statements (including notes), assets and debts in AIA's financial statements, the true value of funds and assets (including employees and trade secrets) utilized for other entities (including CropUSA), and that AIA was being operated for the benefit of the corporation;

(r) Concealing and failing to disclose material facts to AIA pertaining to loans, transfers, and utilization of assets, including without limitation, concealing or omitting material facts, including all of the necessary facts related to virtually each and every transaction described in this Third Amended Complaint;

(s) Making false representations to AIA, including without limitation, making and certifying false and misleading financial statements to AIA and representing that AIA was being properly operated when it was instead being used to fund the lifestyle, payments and other businesses owned or partially owned by the Controlling AIA Defendants;

THIRD AMENDED COMPLAINT - 47

# Exhibit - A

(t) Inappropriately loaning AIA's funds, or guaranteeing loans, to themselves and to other entities under their control in violation of AIA's amended articles of incorporation, bylaws and fiduciary duties;

(u) Paying tens of thousands of dollars in yearly fees to purportedly serve on the Board of Directors of AIA and other compensation and benefits, when such amounts were excessive and they were violating their fiduciary duties owed to AIA and they were all acting as faithless fiduciaries;

(v) Paying attorneys' fees and costs in various legal proceedings on behalf of the Controlling AIA Defendants and others when it was clear that they had intentionally failed to act in good faith, were not entitled to indemnification or to have attorneys' fees and costs advanced on their behalf, and by failing to obtain security for repayment of said funds;

(x) Acquiring a parking lot with AIA funds and charging AIA, and making AIA pay excessive rent for use of the parking lot (John increased the rent to $15,000 per year) even though AIA did not actually use the parking lot. Later, upon information and belief, the parking lot was transferred to Jordan Taylor, John and Connie's son (who is also a lawyer), for no consideration so he could sell it for $50,000;

(y) Failing to seat the full and required Board of Directors for AIA Services and thus there was never a required quorum for AIA Services' Board to take any action and further resulting in all purported actions being unauthorized, including, without limitation, by failing to honor Donna Taylor's appointment of Patrick Moran and Paul Durant to AIA Services' Board of Directors;

(z) Improperly purchasing and transferring shares held by AIA or which should have been held by AIA to themselves, including without limitation shares in Pacific Empire Radio Corp., Pacific Empire Communications Corp., and Pacific Empire Holdings Corp. (this entity was formed

THIRD AMENDED COMPLAINT - 48

# Exhibit - A

with AIA's assets by John, improperly competed against AIA, and was later sold for $240,000);

(aa) Allowing John to profit from CropUSA's sale of assets to Hudson Insurance by improperly allowing him to retain a monthly fee of $10,000 per month when those funds should have gone to AIA;

(bb) Failing to take appropriate legal action in the interests of AIA, including by failing to bar John from being an officer and director of AIA and failing to claw back CropUSA as a subsidiary of AIA and properly operate CropUSA (which would have resulted in CropUSA being worth millions of dollars);

(cc) Removing tenants from an AIA owned building to another building owned personally by John and/or other Controlling AIA Defendants;

(dd) Improperly subsidizing CropUSA and other entities with AIA's funds, labor and assets, failing to properly allocate expenses to CropUSA and failing to have other expenses paid back at all (which have already been identified as being approximately $500,000 as of 2008 after Plaintiff's expert was able to identify certain transactions that were actually accounted for);

(ee) Selling and/or transferring assets and or/contracts belonging to AIA to others (including the contract with Growers National);

(ff) Improperly paying numerous law firms other than the Hawley Troxell Defendants hundreds of thousands of dollars representing AIA and the Controlling AIA Defendants in litigation caused by their own intentional acts and torts and when the Controlling AIA Defendants had not acted in good faith or complied with their duties of loyalty to AIA;

(gg) Paying more of AIA's funds to litigate disputes (including with Donna Taylor in the Idaho state courts) than it would have taken to simply pay the money owed;

THIRD AMENDED COMPLAINT - 49

# Exhibit - A

(hh) Failing to obtain security, failing to charge interest, and failing to collect on loans of at least $307,000 made to John;

(ii) Removing the $400,000 held in the court registry and the over $200,000 in a bank account in *Taylor v. AIA Services*, and allowing the Controlling AIA Defendants to utilize those funds when the Hawley Troxell Defendants should have ensured that those funds were kept from them;

(jj) Expending significant sums on the illegal repurchase of common shares in AIA Services, which also resulted in increasing the ownership interest of the Controlling AIA Defendants;

(kk) Allowing AIA to engage in the transactions identified in this Third Amended Complaint when no dividends had been declared or paid on the Series C Preferred Shares held in the AIA Services 401(k) Plan and those shares now have accrued dividends owed of over $1,000,000;

(ll) Wasting AIA's funds and assets (and CropUSA's) on needlessly rented office space, unneeded employees and other wasted expenditures;

(mm) Allowing Connie to represent CropUSA in litigation involving Growers National in conflict with her duties of loyalty as a director of AIA, which such litigation resulted in approximately $500,000 being transferred to CropUSA for Growers National, even though AIA created Growers National (she separately aided and abetted in CropUSA's receipt of these funds);

(nn) Allowing John to make decisions for the management and operation of AIA when he had conflicts of interest and a long-standing track record of diverting money, labor, credit, trade secrets and other assets to CropUSA and other entities that he partially or wholly owned;

THIRD AMENDED COMPLAINT - 50

# Exhibit - A

(oo) Engaging in numerous illegal, ultra vires, and intra vires acts and transactions for, or in the name of, AIA, including, without limitation, entering into the Guarantees for the $10,000,000 GemCap Loan, and later transferring property worth over $1,000,000 to GemCap;

(pp) Engaging in countless improper transactions in Idaho for the benefit of themselves, CropUSA and/or other entities partially or wholly owned by the Controlling AIA Defendants (including the other transactions and allegations set forth in this Third Amended Complaint);

(qq) Organized, operated, controlled, and conducted CropUSA as their instrumentality, agency and/or conduit to the detriment of AIA, and they have further operated CropUSA improperly without complying with proper corporate governance procedures and as a means to defraud AIA.

The Controlling AIA Defendants, CropUSA, GemCap and/or the Hawley Troxell Defendants have assisted one another and others in committing the intentional acts and torts against AIA described in this paragraph and concealing, or covering up, the facts and the intentional torts committed against AIA, including those specifically referenced in this paragraph and elsewhere in this Third Amended Complaint. The Hawley Troxell Defendants continued to conceal facts from AIA and to aid and abet the Controlling AIA Defendants and CropUSA even after any representation may have terminated when they owed the duty to AIA to not do so.

165.    At all relevant times, John was CEO, President and director of AIA Services, AIA Insurance and CropUSA and a shareholder of AIA Services at the time of all of the improper transactions with CropUSA and other improper acts identified in this Third Amended Complaint (which were also conflicts of interest), and he improperly benefited from those unlawful transactions with the assistance and/or covering up of the transactions through the Controlling AIA Defendants and the Hawley Troxell Defendants (as to certain of the transactions and malfeasance).

THIRD AMENDED COMPLAINT - 51

# Exhibit - A

In 2016, John became the sole purported director, secretary and president of AIA Services, AIA Insurance and CropUSA Insurance Agency, Inc.

166.    At all relevant times, John also owned interests in other entities who improperly benefitted directly or indirectly from AIA and CropUSA (including Green Leaf Alliance, Green Leaf Re, Reinsurance Partners and Pacific Empire Radio Corp.), which were additional conflicts of interest and proof of self-dealing. The Controlling AIA Defendants were aware of these facts.

167.    During certain relevant times, the Controlling AIA Defendants were all purported shareholders of CropUSA and either majority shareholders (as a group) or officers of AIA Services at the time of the improper transactions and malfeasance identified in this Third Amended Complaint (which were also conflicts of interest), and they improperly benefited, directly or indirectly, from those unlawful transactions with the assistance and/or covering up of the transactions through the Controlling AIA Defendants and the Hawley Troxell Defendants (as to certain of the transactions and malfeasance).

168.    As a result of the acts and omissions set forth and/or contemplated above and other acts and/or omissions which will be established at or before trial, the Controlling AIA Defendants, CropUSA, GemCap and the Hawley Troxell Defendants have committed numerous torts against AIA in Idaho thereby proximately causing AIA to incur millions of dollars in damages. Indeed, had the Hawley Troxell Defendants simply sought on behalf of AIA to immediately bar John from serving as a director and officer of AIA Services and ensured that AIA was properly operated and its assets and CropUSA properly marshalled, the GemCap Guarantees and Settlement Agreement would never had occurred and AIA would not have been damaged by millions of dollars.

169.    Because discovery has not yet commenced, Plaintiff expects to obtain additional evidence in discovery and to conduct further investigation, which will further support the causes

THIRD AMENDED COMPLAINT - 52

# Exhibit - A

of action and relief requested below.

170.    Due to the fact that the Controlling AIA Defendants have had complete control over AIA during all relevant times and have never asserted, nor would they ever assert, claims against themselves or others on behalf of AIA, the adverse dominion doctrine bars the assertion of statute of limitations defenses to all claims and relief requested in this Third Amended Complaint. *Freeland v. Enosis Corp.,* 540 F.3d 721 (7th Cir. 2008).

### V.    CERTIFICATE OF COMPLIANCE WITH IDAHO CODE SECTION 30-1-742 AND FEDERAL RULE OF CIVIL PROCEDURE 23.1

171.    As a prerequisite to filing this lawsuit under Idaho Code §§ 30-1-742, 30-29-742, and Federal Rule of Civil Procedure 23.1, Plaintiff has been a common shareholder of AIA Services during all relevant times to the transactions at issue and the claims asserted in this Third Amended Complaint.

172.    On July 21, 2008, Donna Taylor, another shareholder of AIA Services, served a written derivative demand letter on the Boards of Directors of AIA Services and AIA Insurance. (Dkt. 23-9 and 67-19.)  In accordance with the then-applicable I.C. § 30-1-742, the Plaintiff was not required to make another demand under I.C. § 30-1-742 because that statute does not require every shareholder filing suit to serve a separate demand, as confirmed by the comment: "It should be noted that the shareholder bringing suit does not necessarily have to be the person making the demand. Only one demand need be made in order for the corporation to consider whether to take corrective action."

173.    On July 23, 2008, the Hawley Troxell Defendants filed a Motion for Stay of Proceedings in *Taylor v. AIA Services* and asserted that the stay was necessary so that AIA Services and AIA Insurance could conduct an inquiry into the demands made by Donna Taylor in her letter dated July 21, 2008 (Donna Taylor was not a party to that lawsuit, however).

THIRD AMENDED COMPLAINT - 53

# Exhibit - A

174.    On August 14, 2008, in *Taylor v. AIA Services*, the Hawley Troxell Defendants filed a purported petition for a court appointed independent inquiry on behalf of AIA when they had no intention of following through with the inquiry. (*See* Dkt. 67-20.)

175.    On September 4, 2008, Reed Taylor supported the appointment of independent investigators.  However, Reed Taylor objected to the investigators proposed by the Hawley Troxell Defendants, who were purportedly representing AIA, and the Controlling AIA Defendants. (*See* Dkt. 67-21.) Reed Taylor believed totally independent people should be appointed.

176.    Although the parties had filed briefing with respect to the appointment of independent investigators in *Taylor v. AIA Services*, the Hawley Troxell Defendants never noted the motion for a hearing and the court never ruled on the request, and they intentionally abandoned the appointment of an independent inquiry.  The Hawley Troxell Defendants and Controlling AIA Defendants have never conducted a further investigation of the demands made in Donna Taylor's derivative demand letter of July 21, 2008. No action was ever taken by AIA or AIA's Boards of Directors.

177.    On April 3, 2012, Plaintiff, along with other shareholders, made another written demand on the Boards of Directors of AIA Services and AIA Insurance, which included demands to keep the $400,000 cash held in the Court registry in *Taylor v. AIA Services* to comply with AIA's amended articles of incorporation, to comply with AIA's bylaws, provide full disclosure, and to protect certain other assets. (Dkt. 67-33.) This particular demand was copied directly to Babbitt and Ashby, so they had full knowledge of it. This demand, like all the others, was ignored. (*See* Dkt. 67, p. 11 ¶ 29.)

178.    On July 16, 2012, while the instant case was stayed, the Plaintiff, along with over ten other shareholders of AIA Services, served additional written derivative demands upon the

THIRD AMENDED COMPLAINT - 54

# Exhibit - A

Boards of Directors of AIA Services and AIA Insurance. (Dkt. 67-42.) The demands requested, among other things, that AIA pursue this lawsuit with all claims as of July 16, 2012 and future claims, including punitive damages, which also provided AIA and the Board of Directors yet another opportunity to address the demands previously made by Donna Taylor in 2008 (although Plaintiff was under no obligation to do so).

179.    On June 13, 2016, in accordance with I.C. § 30-29-742, Plaintiff, along with other shareholders of AIA Services, served yet another detailed derivative demand upon the Boards of Directors of AIA Services and AIA Insurance. (*See* Dkt. 148-2.) Plaintiff demanded, *inter alia*, that additional claims be asserted against the previously named defendants (including for more recent torts and damages) and to assert claims against GemCap and CropUSA Insurance Services. AIA failed to respond to this demand within ninety days.

180.    On August 23, 2016, in accordance with I.C. § 30-29-742, Plaintiff, along with other shareholders of AIA Services, served a substantially similar demand previously provided (Dkt. 148-2) in which Plaintiff demanded further action be taken, including, without limitation, to seek, *inter alia*, further claims and damages since the last derivative demand, to seek damages against GemCap for selling AIA's property, to void the improperly and allegedly amended bylaws of AIA Services and AIA Insurance, and to rescind the Series A Preferred Shares that John improperly issued to himself. The August 23, 2016 demand was made by Plaintiff as a shareholder and as a creditor of AIA Services. AIA's purported Board of Directors, through John, responded to this demand in writing, rejected the demand, belatedly rejected the prior June 13, 2016 demand (after ninety days had already expired), and refused to have AIA pursue the claims.

181.    In addition, Plaintiff has made additional written derivative demands upon the Boards of Directors of AIA Services and AIA Insurance, but no action has ever been taken by the

THIRD AMENDED COMPLAINT - 55

# Exhibit - A

2 SER 281

purported Boards of Directors.

182.    Over ninety days have elapsed since the written derivative demands set forth above were made to AIA and its Boards of Directors, and no action has been taken by AIA whatsoever, and all of Plaintiff's claims and requested relief asserted in this lawsuit flow from those derivative demands.  AIA and its purported Boards of Directors never asked for any additional information or specificity regarding the derivative demands.

183.    As the second largest common shareholder of AIA Services (who traded a book of insurance business worth approximately $500,000 to AIA Services in exchange for his common shares), the Plaintiff fairly represents the interest of AIA and their shareholders (including the preferred shareholders, 401(k) Plan shareholders, and former ESOP shareholders) and lawful creditors (to the extent that AIA Services is deemed to be insolvent). Plaintiff has never received a return on his investment in AIA Services. Plaintiff is not pursuing this lawsuit in a collusive manner in order to obtain jurisdiction where it does not otherwise exist, but instead to only pursue *bona fide* claims on behalf of, for the benefit of, AIA and their innocent shareholders.

184.    Plaintiff is pursuing this derivative action to make AIA whole and recover the millions of dollars in damages inflicted upon it by the defendants. Upon obtaining judgment, the funds will allow AIA to continue to operate as a going concern or, alternatively, to be dissolved with the funds used to pay lawful creditors and the remaining funds to be distributed to the Series A Preferred Shareholders, the Series C Preferred Shareholders and then to the common shareholders.

### VI.    COUNT I—BREACH OF FIDUCIARY DUTIES
**(Against the Controlling AIA Defendants and the Hawley Troxell Defendants)**

185.    Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause

THIRD AMENDED COMPLAINT - 56

# Exhibit - A

of action.

186.    As members, or purported members, of the Board of Directors for AIA Services and/or AIA Insurance, the Controlling AIA Defendants, who have each served as a director of AIA Services during certain relevant times, owed fiduciary duties to AIA, including, without limitation, duties of good faith and to act in the best interests of AIA. Beck, Cashman and John continued to also serve on the board of directors of AIA Services through a so-called "advisory board," which controlled AIA and CropUSA. As corporate officers of AIA, John, as President and CEO, and Duclos, as Secretary, owed fiduciary duties to AIA, which were further elevated during the times in which they both served as directors of AIA, too (which is from 1995 to the present time for John).  During certain relevant times, Beck, Cashman, John and Connie owed fiduciary duties to AIA because they were the majority shareholders of AIA Services, including, without limitation, to use their majority control of AIA in a fair, just and equitable manner. The Controlling AIA Defendants had conflicts of interest by and through their positions as officers, directors and/or shareholders of AIA Services and CropUSA.

187.    As attorneys for AIA, the Hawley Troxell Defendants owed fiduciary duties to AIA (including the undivided duty of loyalty). If not authorized to act as attorneys for AIA, the Hawley Troxell Defendants acted with apparent authority as agents and owed fiduciary duties as a result of that agency relationship. The Hawley Troxell Defendants had conflicts of interest when they undertook to represent AIA and CropUSA, and when they improperly proceeded in the manner directed by any one or more of the Controlling AIA Defendants, thereby improperly representing the interests of the Controlling AIA Defendants, instead of the best interests of AIA. The Hawley Troxell Defendants were never retained to represent AIA and CropUSA by disinterested and unconflicted officers and directors of AIA. The Hawley Troxell Defendants placed their self-

THIRD AMENDED COMPLAINT - 57

# Exhibit - A

interests in earning in excess of $1,000,000 in fees in various lawsuits ahead of, and in direct conflict with, AIA's interests in having undivided and unconflicted representation. The Hawley Troxell Defendants knew that they were improperly retained to purportedly represent CropUSA and AIA when AIA's litigation decisions were being made by, and AIA improperly operated by, disinterested and unconflicted officers and directors who were also placing their self-interests ahead of AIA's interests, as more full discussed throughout this Third Amended Complaint.

188.    Based on any and/or all of the acts and/or omissions set forth in this Third Amended Complaint and/or those facts proven at or before the time of trial (including conflicts of interest that prevent the Controlling AIA Defendants to use the business judgment rule as a defense), the Controlling AIA Defendants and the Hawley Troxell Defendants breached their fiduciary duties owed to AIA, including, without limitation, breaching their undivided duties of loyalty, care, good faith, trust and confidence owed to AIA and/or engaging in collusive acts and behavior against AIA. In addition, Beck, Cashman, John and Connie have further breached their fiduciary duties owed to AIA as to the controlling majority shareholders of AIA Services by and through, *inter alia*, using their control of AIA in an unjust, unfair and inequitable manner to benefit themselves and other entities that they partially own or control to the detriment of AIA and Plaintiff.

189.    The Hawley Troxell Defendants have separately breached their fiduciary duties as matter of law by violating the Rules of Professional Conduct, including, without limitation, when they: (a) simultaneously represented AIA and CropUSA; (b) failed to proceed in the best interests of AIA; (c) failed to obtain information consent from authorized, unconflicted and disinterred constituents of AIA; (d) placed their interests in earning over $1,000,000 in attorneys' fees over the interests of AIA; (e) prepared and/or entered into Agreements and/or Amended Agreements involving AIA, CropUSA and/or the Controlling AIA Defendants that were not in the best interest

THIRD AMENDED COMPLAINT - 58

# Exhibit - A

of AIA and without requiring AIA to obtain independent counsel; and (f) assisting the Controlling AIA Defendants in the commission and/or covering up of fraud (including by failing to require full disclosure to AIA and AIA Services' shareholders). In addition, Riley was previously aware that CropUSA was derived from AIA (the other Hawley Troxell Defendants became aware in *Taylor v. AIA Services*) and they were further aware of the restrictions in AIA Services' amended articles of incorporation and bylaws when Riley had been aware of them, and assisted in preparing them. The Hawley Troxell Defendants have further breached their fiduciary duties as a matter of law for the violations of the Rules of Professional Conduct dealing with loyalty to a client and conflicts of interest, which separately requires disgorgement of all compensation (the over $1,000,000 in attorneys' fees and costs paid to it by and/or on behalf of AIA).

190.    As a direct and/or proximate cause of the Controlling AIA Defendants' and the Hawley Troxell Defendants' breaches of their fiduciary duties, AIA has been damaged in the amount to be proven at or before trial.

191.    In addition, each of the Controlling AIA Defendants and the Hawley Troxell Defendants is a "faithless fiduciary" as defined by law and is therefore required to disgorge all compensation and consideration received from AIA and/or CropUSA, irrespective of if they prove that they acted in AIA's interests as to any other issues. The disgorgements sought are in addition to liability caused by the breaches of fiduciary duty. In the case of the Hawley Troxell Defendants, the disgorgement includes all fees and costs received for or paid on behalf of AIA and/or CropUSA. In the case of the faithless Controlling AIA Defendants, the disgorgement includes all salary, bonuses, benefits, warrants, stock options, or stock received from AIA.

///

///

THIRD AMENDED COMPLAINT - 59

# Exhibit - A

## VII.    COUNT II—AIDING AND ABETTING BREACHES OF FIDUCIARY DUTIES
### (Against the Controlling AIA Defendants, the Hawley Troxell Defendants, CropUSA, and GemCap)

192.     Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause of action.

193.     During certain relevant times, the Hawley Troxell Defendants, the Controlling AIA Defendants, CropUSA and/or GemCap: (a) had knowledge of the other defendants' acts and/or omissions constituting the breaches of fiduciary duties owed to AIA (including duties of loyalty, good faith and proceeding in the best interests of AIA) as further described in this Third Amended Complaint and/or proven at the time of trial; (b) knew that such acts and/or omissions by other defendants constituted breaches of fiduciary duties owed to AIA; (c) substantially participated in such breaches of fiduciary duties owed to AIA; (d) did not disapprove or seek ratification or disclosure of such breaches of fiduciary duties owed to AIA; (e) took no steps to prevent such breaches of fiduciary duties owed to AIA; and/or (f) assisted in the concealment, and covering up, of such breaches of fiduciary duties owed to AIA.

194.     As a direct and/or proximate cause of the Hawley Troxell Defendants, the Controlling AIA Defendants, CropUSA and GemCap's aiding and abetting of one another and/or others in the breaches of fiduciary duties owed by other defendants to AIA, AIA has been damaged in the amount to be proven at or before trial. As aiders and abettors, the defendants are jointly and severally liable for the underlying tort committed by one or more defendants.

### VIII.    COUNT III—LEGAL MALPRACTICE
### (Against the Hawley Troxell Defendants)

195.     Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause

THIRD AMENDED COMPLAINT - 60

# Exhibit - A

**2 SER 285**

of action.

196.     The Hawley Troxell Defendants owed duties to AIA, including, without limitation, duties of care, good faith and loyalty.

197.     The Hawley Troxell Defendants have breached their duties of care, good faith and loyalty owed to AIA, including, without limitation, the breached duties attributable to the acts and omissions described in this Third Amended Complaint. The Hawley Troxell Defendants have further breached their duties of good faith, care and loyalty owed to AIA by improperly simultaneously representing AIA and CropUSA, together with directly and/or indirectly improperly representing the interests of the Controlling AIA Defendants.

198.     AIA suffered damages as a direct, foreseeable and/or proximate result of the breaches of duty and the acts of the Hawley Troxell Defendants, including, without limitation, those acts described in this Third Amended Complaint and/or proven at the time of trial (including damages and the lost profits associated with CropUSA). At a minimum, the Hawley Troxell Defendants were also a substantial factor in the harm and damages inflicted upon AIA, including, without limitation, inflicting millions of dollars of damages against AIA by the Controlling AIA Defendants and the failure of CropUSA to be a profitable and valuable subsidiary of AIA today. Had the Hawley Troxell Defendants properly discharged their duties, the Controlling AIA Defendants would never have significantly damaged AIA, and it and CropUSA would be profitable today (and CropUSA a valuable subsidiary of AIA). In addition and/or alternative, millions of dollars of AIA's funds, assets, trade secrets, labor and other valuable consideration would have been recovered and/or not unlawfully transferred and/or utilized by CropUSA, the Controlling AIA Defendants and/or other entities that they own.

THIRD AMENDED COMPLAINT - 61

# Exhibit - A

199.    As a direct and/or proximate cause of such acts and/or omissions, the Hawley Troxell Defendants are liable to AIA for damages in the amount to be proven at or before the time of trial.

### IX.    COUNT IV—FRAUD/FRAUDULENT CONCEALMENT/ CONSTRUCTIVE FRAUD
**(Against the Controlling AIA Defendants, CropUSA and GemCap)**

200.    Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause of action.

201.    The acts, omissions, decisions, contracts, transactions, allocations, investments, and/or other business dealings of the Controlling AIA Defendants that were purportedly entered into on behalf of AIA were not disclosed or approved by fully seated and disinterested Boards of Directors of AIA and, therefore, AIA had no knowledge of any such acts, omissions, decisions, contracts, transactions, allocations, investments, and/or malfeasance.

202.    The Controlling AIA Defendants are liable to AIA for fraud because: **(a)** they made representations of material fact to AIA and AIA Services' innocent minority shareholders as asserted throughout this Third Amended Complaint, including but not limited to: (i) representations that CropUSA was being operated for the benefit of AIA, (ii) representations that AIA was being properly operated (including that the Boards of Directors had properly authorized certain transactions when Donna Taylor's designee was not on the Board of AIA Services and the provisions in the amended articles of incorporation and bylaws had not been complied with), (iii) representations that the information on AIA's financial statements was true (John separately certified to auditors and others that the information contained on certain of AIA's financial

THIRD AMENDED COMPLAINT - 62

# Exhibit - A

statements was true and correct), (iv) representations that expenses, compensation, and/or loans between AIA and other entities or parties were properly entered into and accounted for (i.e., there are hundreds of thousands of dollars, if not millions of dollars, in funds and other assets used by CropUSA which were derived from AIA and never accounted for), (v) representations that they had the authority to act on behalf of AIA when they did not (including failing to disclose conflicts of interest that prevented them from acting on behalf of AIA); and (vi) other representations referenced in this Third Amended Complaint and/or proven at or before trial since discovery has not begun; **(b)** such representations were false; **(c)** such representations were material and AIA would never have entered into or approved any of the acts, conduct or transactions if AIA had been provided with full disclosure and the true representations); **(d)** they knew such representations were false; **(e)** they intended that there be reliance by AIA on such representations; **(f)** AIA was ignorant of the falsity of such representations; **(g)** AIA relied on such representations; **(h)** AIA's reliance was justified; and **(i)** injury resulted to AIA.

203.    Constructive fraud is identical to fraud, except that the Plaintiff need not prove the Controlling AIA Defendants' knowledge of the fraud and their intent that AIA rely on the representations.

204.    The Controlling AIA Defendants owed duties to AIA during certain relevant times as majority shareholders, board members and/or officers of AIA. In addition to making false representations, the Controlling AIA Defendants also concealed information from AIA and its innocent minority shareholders with knowledge that the concealed information was material and that the concealment would cause AIA to suffer otherwise avoidable damages, including without limitation, information contained in this Third Amended Complaint. The Controlling AIA Defendants' failure to disclose a fact to AIA and AIA Services' innocent minority shareholders

THIRD AMENDED COMPLAINT - 63

# Exhibit - A

where one has a duty to disclose is the legal equivalent of representing the non-existence of the fact. Where facts are fraudulently concealed, Plaintiff need not show reliance as there is nothing other than silence upon which to rely.

205.    The Controlling AIA Defendants represented to AIA Services that CropUSA was a wholly-owned subsidiary of AIA Services. Simultaneously, the Controlling AIA Defendants adopted the position, not disclosed to AIA or its innocent minority shareholders, that CropUSA was an independent entity with John as its alleged sole shareholder and subsequently failed to disclose that CropUSA was not a separate entity. These representations were false, the Controlling AIA Defendants knew of their falsity, the Controlling AIA Defendants intended that there be reliance, there was justifiable reliance by AIA and AIA Services' innocent minority shareholders, and AIA was damaged as a result.

206.    By operating CropUSA as an independent entity, and by using CropUSA as a vehicle for misappropriating and converting corporate assets, the Controlling AIA Defendants committed ongoing fraud that has persisted through the date of this Third Amended Complaint.

207.    The Controlling AIA Defendants also made misrepresentations to AIA and AIA Services' innocent minority shareholders in the form of false, misleading and fraudulent financial statements (which such financial statements also failed to disclose numerous improper and unlawful transactions and their ownership interests in CropUSA and other entities), upon which AIA and AIA Services' innocent minority shareholders reasonably relied, with that reliance being the proximate cause of AIA's damages.

208.    When the Controlling AIA Defendants transferred more than $1.5 million to CropUSA in 2004, they concealed the fact of this transaction from AIA and AIA Services' innocent minority shareholders and AIA was damaged by this concealment.

THIRD AMENDED COMPLAINT - 64

# Exhibit - A

209.    When the Controlling AIA Defendants transferred AIA corporate assets, including funds, employees, goodwill and trade secrets to CropUSA and other entities and were subsidizing CropUSA and other entities, they concealed these facts from AIA and AIA Services' innocent minority shareholders. AIA suffered damages by these concealments.

210.    When the Controlling AIA Defendants had AIA pay certain of CropUSA's corporate expenses and unfairly used AIA's employees, trade secrets and facilities for CropUSA, they concealed these facts from AIA.  AIA suffered damages as a result of these concealments.

211.    When the Controlling AIA Defendants pledged the mortgage obtained by AIA from the state of Idaho to CropUSA so that CropUSA could borrow money to pay the attorney's fees of the Hawley Troxell Defendants to facilitate covering up the AIA Defendants' fraud, they concealed these facts from AIA.  AIA suffered damages as a result of these concealments.

212.    When the Controlling AIA Defendants had AIA Insurance guarantee CropUSA's $15 million line of credit and later sold over $10,000,000 in assets derived from AIA to Hudson Insurance, they concealed the fact of this guarantee and asset sale from AIA.

213.    When the Controlling AIA Defendants finally disclosed their ownership interests in CropUSA, CropUSA Insurance Services, LLC and other entities in AIA Services' financial statements in July 2012[3] (*See* Dkt. 67-38), they continued to conceal how they obtained their ownership interest in those entities (and in the case of CropUSA that the ownership interest came from AIA) and many transactions and purported loans between the entities and AIA (loans and guarantees made by AIA which were prohibited by AIA Services' amended articles of incorporation and restated bylaws).

---

[3] While the financial statements were dated as of year-end 2011, they were not provided to AIA or its shareholders until July 2012 in connection with the failed ill-conceived reverse stock split.

THIRD AMENDED COMPLAINT - 65

# Exhibit - A

214.    The Controlling AIA Defendants, CropUSA and GemCap concealed from AIA that they had AIA unlawfully and improperly enter into the Guarantees, Settlement Agreements and related agreements and instruments, together with unlawfully transferring property and making payments under those unlawful agreements and instruments.

215.    As a direct and/or proximate cause of the Controlling AIA Defendants' fraudulent acts, AIA has been damaged in an amount to be proven at or before trial, and the ongoing fraud bars the Controlling AIA Defendants from asserting statute of limitations defenses. To the extent that the Hawley Troxell Defendants seek to assert the statute of limitations as a defense, they too are barred from doing so through their fraudulent concealment of facts from AIA.

### X.    COUNT V—AIDING AND ABETTING AND CONSIPIRACY OF FRAUD
**(Against the Controlling AIA Defendants, CropUSA, GemCap and the Hawley Troxell Defendants)**

216.    Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause of action.

217.    During certain relevant times, the Hawley Troxell Defendants, the Controlling AIA Defendants, CropUSA and/or GemCap: (a) had knowledge of the other defendants' acts and/or omissions constituting fraud upon AIA (including fraudulent concealment) as further described in this Third Amended Complaint and/or proven at the time of trial; (b) knew that such acts and/or omissions by other defendants constituted fraud upon AIA; (c) substantially participated in such fraud upon AIA; (d) did not disapprove or seek ratification or disclosure of such fraud upon AIA; (e) took no steps to prevent such fraud upon AIA; and/or (f) assisted in the concealment, and covering up, of such fraud upon AIA.

218.    In addition, through various agreements and actions, the Controlling AIA Defendants, CropUSA and/or GemCap: (a) conspired to defraud AIA and were members of the

THIRD AMENDED COMPLAINT - 66

# Exhibit - A

conspiracy at relevant times; (b) provided a substantial act and/or a substantial effect in furtherance of the conspiracy against AIA in Idaho; (c) are attributable to the acts of one another; and (d) engaged in a pattern of behavior and/or agreements to accomplish unlawful objectives and/or to accomplish a lawful objectives in an unlawful manner.

219.    As a direct and/or proximate cause of the Hawley Troxell Defendants, the Controlling AIA Defendants, CropUSA and/or GemCap's aiding and abetting of one another and/or others in the commission of fraud upon AIA, AIA has been damaged in the amount to be proven at or before trial.

## XI.    COUNT VI—BREACH OF CONTRACT
### (Against the Controlling AIA Defendants)

220.    Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause of action.

221.    On August 1, 1995, John and AIA Services entered into an Executive Officer's Agreement. (*See* Dkt. 67-8.) The Executive Officer's Agreement contains contractual provisions preventing John from doing certain acts. For example, Section 9 of the Executive Officer's Agreement sets forth express covenants not to compete. Subsection A of the covenants prohibits John from soliciting AIA customers or otherwise diverting the business of AIA customers. Subsection B prohibits John from participating in any insurance business that underwrites, markets or administers insurance products for commodity associations. Subsection C prohibits John from soliciting AIA Services employees for other employment.  Subsection D of the covenants bars John from divulging or exploiting trade secrets belonging to AIA.

222.    John has breached his contractual obligations owed to AIA, including, without limitation, by forming CropUSA as anything other than a wholly-owned subsidiary of AIA,

THIRD AMENDED COMPLAINT - 67

# Exhibit - A

competing against AIA with CropUSA and other entities (including Pacific Empire Holdings and CropUSA Insurance Services, LLC). John has breached all four subsections of Section 9 of the Executive Officer's Agreement.

223. As a direct and/or proximate cause of John's breaches of the Executive Officer's Agreement, AIA has been damaged in an amount to be proven at or before trial. Such breaches also constitute the breaches of his fiduciary duties owed to AIA.

224. Upon information and belief, certain and/or all of the Controlling AIA Defendants entered into agreements with AIA regarding the payment of certain of their attorneys' fees and costs in litigation, which such agreements were never properly presented to or approved by disinterested shareholders. Upon information and belief, such agreements required the Controlling AIA Defendants to pay back the funds advanced for their defense if it was determined that they did not act in good faith or in accordance with other required standards. Certain and/or all of the Controlling AIA Defendants breached their contracts when they failed to discharge their duties in good faith and failed to comply with all applicable standards. As a direct and/or proximate cause of such breaches, AIA has been damaged and is entitled to be paid back for all attorneys' fees and costs advanced or paid, directly or indirectly, by AIA, plus prejudgment interest.

### XII.    COUNT VII—DECLARATORY JUDGMENT
**(Against the Controlling AIA Defendants, the Hawley Troxell Defendants, CropUSA and GemCap)**

225. Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause of action.

226. Plaintiff seeks a declaratory judgment against Controlling AIA Defendants, Hawley Troxell Defendants, CropUSA, and GemCap, including, without limitation, for the following relief: (a) for a full accounting with supporting documentation of all of AIA's funds, assets, loans

THIRD AMENDED COMPLAINT - 68

# Exhibit - A

and other transactions from 1999 through the present time; (b) requiring the Controlling AIA Defendants to comply with AIA's amended articles of incorporation, bylaws and the Idaho Business Corporation Act; (c) rescinding the purchases of the shares held by the ESOP and/or ensuring that those shareholders receive fair value for their shares; (d) rescinding and/or declaring void the common shares issued to John through his Executive Officer's Agreement; (e) voiding any purported common interest or joint defense agreements, jurisdiction consent agreements and any other improper agreement pertaining to AIA Services and/or AIA Insurance; (f) declaring illegal, at a minimum as to AIA Services and AIA Insurance, the Guarantees and Settlement Agreements entered into in favor of GemCap; (g) declaring as illegal and/or setting aside any agreements between AIA Services and/or AIA Insurance and CropUSA; (h) setting aside, rescinding and/or voiding any transfers of real property or other purported asset to AIA from John (John executed quitclaim deeds to AIA for certain properties held in the names of others, did not properly value the properties, and required AIA to assume the liabilities for those properties without proper board or shareholder approval); (i) settling aside, voiding or rescinding recent purported amendments to AIA Services and AIA Insurance's bylaws, which were adopted without shareholder approval and for improper purposes (including because John had conflicts of interest); (j) setting aside, voiding and/or rescinding the 7,500 Series A Preferred Shares purportedly issued to John, including, because a proper board never authorized the issuance of those shares, the shares were not issued for legitimate purposes, and the articles of incorporation were not amended to authorize the issuance of any Series A Preferred Shares to anyone other than Donna Taylor; (k) setting aside, rescinding and/or voiding any contracts, agreements, guarantees, financing statements and/or other instruments that were illegal, intra vires, ultra vires (including transfers of real or personal property); (l) setting aside, voiding and/or rescinding the 475,000 common shares

THIRD AMENDED COMPLAINT - 69

# Exhibit - A

purportedly issued to John and/or Connie under John's Executive Officer's Agreement (which he breached countless times) and because he is a faithless fiduciary and is not entitled to any compensation; (m) rescinding the common shares issued originally to Beck, Cashman and the other Series C Preferred Shareholders, which were later transferred to John; (n) for a determination that the Controlling AIA Defendants did not act in good faith and were not entitled to have any attorneys' fees or costs paid or advanced for them by AIA; and (o) such other declaratory relief as may be requested at or before trial (including any declaratory relief related to any other acts and/or omissions described in this Third Amended Complaint or as may be contemplated by any cause of action).

227.    Plaintiff seeks a declaratory judgment against the Hawley Troxell Defendants, including, without limitation, for the following relief: (a) that the representation agreement, fee agreements and any related agreements entered into with them and AIA be declared void (including, without limitation, because such agreements violated the applicable Rules of Professional Conduct); (b) any agreements or accounts regarding any sums owed by AIA, if any, be declared void; and (c) such other relief as may be requested at or before trial (including any declaratory relief contemplated by any of the acts and/or omissions set forth in this Third Amended Complaint).

## XIII.    COUNT VIII—STATUTORY RELIEF (INCLUDING FOR ULTRA VIRES)
### (Against All Defendants)

228.    Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause of action.

229.    Plaintiff seeks all damages, equitable relief, injunctive relief and other relief available against the Defendants under applicable Idaho Code, including, but not limited to I.C. §§

THIRD AMENDED COMPLAINT - 70

# Exhibit - A

2 SER 295

30-1-304 and 30-29-304: (a) if this Court does not find the Guarantees and/or Settlement Agreements illegal as to AIA Services and AIA Insurance, Plaintiff requests a judgment that the Guarantees and/or Settlement Agreements are ultra vires and this Court should set aside the Guarantees, Settlement Agreements and related instruments (including Financing Statements and deeds) and enjoin AIA Services and AIA Insurance from complying with the Guarantees, Settlement Agreements and related instruments; (b) award damages to AIA Services and AIA Insurance for damages and losses already sustained from the Guarantees and Settlement Agreements (including attorneys' fees and costs); (c) award AIA Services and AIA Insurance anticipated lost profits and other losses, including, the lost profits and damages attributable to the money received by GemCap for the sale of AIA Services' former headquarters in Lewiston, Idaho (approximately $1,000,000) and any other damages and lost profits relating to that property and any other damage claim, and enjoin the transfer of any funds to GemCap; (d) setting aside and/or enjoining any other transfers, payments, obligations, notes, contracts, agreements, guarantees, and instruments (including deeds) which were ultra vires (including the payment of attorneys' fees and costs for any of the defendants); and (e) award all damages and relief (including setting aside any agreements) pertaining to all ultra vires acts involving AIA Services and/or AIA Insurance.

230.    To the extent that there is no cause of action under this Count VIII, then the allegations in this Count VIII are incorporated by reference to support other causes of action and relief in this Third Amended Complaint (including in Count VII and the prayer for relief below).

### XIV.    COUNT IX—CORPORATE WASTE/EXCESSIVE COMPENSATION
#### (Against the Controlling AIA Defendants)

231.    Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause of action.

THIRD AMENDED COMPLAINT - 71

# Exhibit - A

232.    The Controlling AIA Defendants have been officers and/or controlled AIA's Boards of Directors from 1995 through certain relevant times.  The Controlling AIA Defendants have lacked independence and have not acted in good faith, including, without limitation, by committing the intentional acts and/or omissions described in this Third Amended Complaint.

233.    The Controlling AIA Defendants' waste and excessive compensation, includes, without limitation: (a) the payment of excessive and unnecessary compensation to officers and employees; (b) the waste of  corporate assets during the course of managing and/or operating AIA, including, without limitation, by paying themselves excessive compensation (and practically speaking, any compensation at all based on their acts and omissions) and using millions of dollars of AIA's funds, assets, employees and property for improper and unnecessary purposes; (c) diverting millions of dollars of AIA's assets and funds to benefit CropUSA, themselves, and other entities they partially or wholly own, including Pacific Empire Radio Corp., CropUSA Insurance Services, LLC, and Pacific Empire Holdings Corp. (a/k/a Sound Insurance); (d) destroying AIA's agency force and causing them to transfer to CropUSA and ultimately Hudson Insurance and other entities; (e) diverting CropUSA's business from AIA and running that business improperly by renting needless office space, employing unnecessary persons (including high-paying executives who did nothing for the business), entering into unnecessary high-interest loans, and engaging in other improper and unnecessary transactions (some of which AIA received no consideration); and (f) impairing and destroying AIA's businesses, including CropUSA. In addition, notwithstanding the fact that the Controlling AIA Defendants are not entitled to retain any of their compensation or benefits as a faithless fiduciary, it was separately corporate waste to pay them in the first place as they have done nothing to benefit AIA.

THIRD AMENDED COMPLAINT - 72

# Exhibit - A

234.    The other transactions and malfeasance described in this Third Amended Complaint also constitute corporate waste, and none of those transactions and malfeasance were properly disclosed to all of AIA Services' shareholders nor was any authorization from them ever sought or obtained.

235.    The Controlling AIA Defendants are liable to AIA for damages caused by paying excessive compensation and otherwise diverting, wasting and needlessly depleting AIA's funds and assets for their own benefit and with disregard for AIA.

236.    As a direct and/or proximate cause of the Controlling AIA Defendants' waste and excessive compensation, AIA has been damaged in the amount to be proven at or before trial.

## XV.    COUNT X—VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT
### (Against GemCap)

237.    Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause of action.

238.    GemCap is defined as a "Person" under I.C. § 48-602(1).  GemCap knowingly had AIA enter into the written Settlement Agreements and related agreements and instruments when the transactions were one-sided in favor of GemCap and the transactions were a pattern of conduct that would outrage and offend the public conscience as provided under I.C. § 48-603C. Such unconscionable conduct includes knowingly and intentionally violating AIA Services' amended articles of incorporation, AIA's bylaws and Idaho Code sections, together with contractual provisions which violate the law and public policy without regard to AIA or their innocent minority shareholders.

239.    As described in this Third Amended Complaint and/or as proven at or before trial, GemCap engaged in misleading, false and deceptive practices when it entered into and negotiated

THIRD AMENDED COMPLAINT - 73

# Exhibit - A

the one-sided written Settlement Agreement when it knew that AIA Services' shareholders were challenging the Guarantees and they had never been presented with the facts nor were they even asked to authorize the Settlement Agreement and related agreements and instruments, including, without limitation, through illegal provisions in the Settlement Agreement barring AIA from seeking bankruptcy protection and unlawfully requiring legal malpractice claims to be assigned. The Settlement Agreements and the prior Guarantees were all entered into with GemCap.

240.    GemCap's acts and/or practices, as described above and in this Third Amended Complaint and/or as proven at or before trial, are misleading, deceptive, and unconscionable methods, acts and practices in the conduct of trade and commerce in violation of the Idaho Consumer Protection Act, I.C. § 48-602, *et seq*. Based on the ongoing flagrant violations that commenced with the original Guarantee and continued through the unlimited Guarantee and the subsequently written Settlement Agreement, the Guarantees and Settlement Agreements should be voided and GemCap should be ordered to pay punitive damages of three times the damages inflicted upon AIA, which now stand at over $1,000,000 by way of the property transferred via the written Settlement Agreement.

241.    As a direct and/or proximate cause of GemCap's violations of the Idaho Consumer Protection Act, AIA has been damaged in the amount to be proven at or before trial, including for the approximately $1,000,000 in cash proceeds unconscionably obtained by GemCap in 2016 for the sale of AIA Services' former headquarters, and all other damages incurred by AIA, and this Court should award punitive damages for all such damages.

### XVI.    COUNT XI—ACCOUNT STATED
#### (Against John)

242.    Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Third Amended Complaint to the extent necessary to support this cause

THIRD AMENDED COMPLAINT - 74

# Exhibit - A

of action.

243.    John established an account by borrowing $307,000 from AIA for his personal use. John subsequently confirmed the amount of the debt by "correcting" a purported accounting "error" when he had previously extinguished the $307,000 debt by improperly crediting the payment of Reed Taylor's $6 million promissory note after the issue arose in *Taylor v. AIA Services* so that AIA's books show that AIA is creditor and John is debtor for $307,000, i.e., the correction was only made because Reed Taylor demanded it and he was suing AIA Services for repayment of the $6 million promissory note.

244.    Upon information and belief, John has not paid any portion of this debt and the entire balance remains due and payable to AIA. John is liable to AIA for $307,000 on the account stated and/or such other amount as may be presently owed, plus prejudgment interest from the date the obligation was incurred. If John has since paid back the $307,000 or any part of the sums he owes, then Plaintiff still seeks the balance owed and prejudgment interest for the benefit of AIA, including, because John has been a faithless fiduciary who is not entitled to any interest-free loans from AIA.

### XVII.    JURY DEMAND

1.    Plaintiff, through the signature of his attorney below, hereby demands a trial by jury of no less than the maximum number of jurors permitted on all causes of action for which a jury trial is allowed by law.

### XVIII.    PRAYER FOR RELIEF

Wherefore, Plaintiff prays for the following relief:

1.    For a judgment against the defendants, jointly and severally and/or individually, for all damages in an amount to be proven for each defendant at or before trial, including, without limitation, consequential damages, incidental damages, lost profits, lost business opportunities,

THIRD AMENDED COMPLAINT - 75

# Exhibit - A

unlawful distributions, corporate waste, and all other damages, plus prejudgment interest;

2.      For a judgment or order requiring the Hawley Troxell Defendants for all damages and ordering them to disgorge all attorneys' fees and costs paid to them by AIA Services, AIA Insurance, CropUSA and by any other party on behalf of those entities in the amount to be proven at the time of trial, plus prejudgment interest;

3.      For a judgment or order requiring the Controlling AIA Defendants to disgorge all compensation received from AIA or CropUSA since 1999 for being faithless fiduciaries and breaching their fiduciary duties, including, without limitation, all stock, cash, benefits, and other cash and non-cash compensation, attorneys' fees and costs (i.e., Connie received payments for attorneys' fees and costs from AIA or from CropUSA in violation of her duties to AIA) and that John is owed no compensation by AIA;

4.      For judgment against GemCap, AIA, John and CropUSA declaring that AIA's Guarantees, the Settlement Agreements and all related agreements and instruments illegal, ultra vires, intra vires, void and/or unenforceable and awarding AIA damages;

5.      For judgment against John in the amount to be proven at the time of trial, plus prejudgment interest;

6.      For judgments against the Controlling AIA Defendants, jointly and severally, as the alter-ego of CropUSA and/or to pierce its corporate veil, for all damages incurred by AIA and attributable in whole or in part to CropUSA;

7.      For judgments against any one or more of the defendants and for any and all damages and relief available under Idaho Code (including, without limitation, I.C. §§ 30-29-304, 30-29-833 (and their predecessors), 48-608, and the common law;

THIRD AMENDED COMPLAINT - 76

# Exhibit - A

8.    For a preliminary and/or permanent injunction and/or declaratory relief against AIA enjoining them from complying with the unauthorized, improper, intra vires, and ultra vires transactions and agreements relating in any way to AIA, including, without limitation, the Guarantees, Settlement Agreements, and all agreements and instruments related to the foregoing (including from transferring any money or property and from distributing the proceeds of any property or asset sales); to set aside and void such agreements and instruments; and award damages;

9.    For declaratory judgment requiring the reissuance of the common shares in AIA Services to the ESOP participants and voiding and/or rescinding John's alleged purchase of 7,500 Series A Preferred Shares in AIA Services and the 475,000 common shares in AIA Services improperly issued to him under his Executive Officer's Agreement that he violated on countless occasions;

10.    For a declaratory judgment requiring AIA Services to reissue the common shares formerly held by the innocent ESOP participants because the Controlling AIA Defendants' improperly terminated the ESOP;

11.    For an order requiring that all funds recovered as a result of this litigation, minus fees, costs and bona fide debts, be deposited with the Court registry and distributed only after court order, and that no funds recovered from this litigation be paid to, or for the benefit of, the Controlling AIA Defendants;

12.    To the extent that GemCap is deemed to be owed any money as a creditor, for a judgment declaring any such rights or judgments to be inferior to AIA and AIA Services' innocent minority shareholders (including those holding shares through the ESOP and 401(k) Plan), under an equitable subordination theory or such other theory Plaintiff may assert at or before trial;

THIRD AMENDED COMPLAINT - 77

# Exhibit - A

**2 SER 303**

13.    For a declaratory judgment for the relief specified in this Third Amended Complaint and any other declaratory relief requested at or before trial, including, without limitation, setting aside obligations, notes, guarantees, settlement agreements, agreements, contracts, transfers of assets, amendments to AIA's bylaws, and repurchase or the issuance of shares;

14.    For an award of the attorneys' fees and costs incurred in this action as allowed by statute, contract, or recognized grounds of equity, including, under I.C. § 12-121; and

15.    For any such further relief or remedy, including preliminary and/or permanent injunctive relief, equitable subordination, or other relief Plaintiff may request and/or as this Court may find just and equitable.

DATED:  This ___ day of _____, 2016.

RODERICK BOND LAW OFFICE, PLLC


By:    */s/ Roderick C. Bond*_____
       Roderick C. Bond
       Attorney for Plaintiff

THIRD AMENDED COMPLAINT - 78

# Exhibit - A

## VERIFICATION OF DALE L. MIESEN

STATE OF TEXAS          )
                                    ) ss.
COUNTY OF TARRANT       )

I, Dale L. Miesen, being first duly sworn on oath, depose and say:

I am the Plaintiff in the above-entitled action. I have read the contents of this Third Amended Complaint, know the contents of this Third Amended Complaint, and believe that the facts set forth in this Third Amended Complaint are true and accurate to the best of my knowledge and belief.

_____
Dale L. Miesen

SUBSCRIBED AND SWORN to before me this _____ day of _____, 2016.

_____
Notary Public for Texas
Residing at: _____
My commission expires: _____

THIRD AMENDED COMPLAINT - 79

# Exhibit - A

**2 SER 305**

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the ___ day of _____, 2016, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

James D LaRue:   jdl@elamburke.com, sd@elamburke.com

Jeffrey A Thomson:    jat@elamburke.com, nlp@elamburke.com

Loren C Ipsen:    lci@elamburke.com, nlp@elamburke.com

Shawnee S Perdue:    sperdue@wielandperdue.com, admin@wielandperdue.com, tmooney@wielandperdue.com

Steven P Wieland:    swieland@wielandperdue.com, admin@wielandperdue.com, tmooney@wielandperdue.com

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants in the manner indicated:  Via first class mail, postage prepaid addressed as follows:

AIA Services Corporation
P.O. Box 538
Lewiston, ID  83501

AIA Insurance, Inc.
P.O. Box 538
Lewiston, ID  830501

_/s/ Roderick C. Bond_
Roderick C. Bond

THIRD AMENDED COMPLAINT - 80

# Exhibit - A

**2 SER 305**

RODERICK C. BOND, ISB NO. 8082
RODERICK BOND LAW OFFICE, PLLC
601 108th Ave. NE, Suite 1900
Bellevue, WA  98004
Telephone: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Attorney for Plaintiff

UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual; DONNA J. TAYLOR, an individual and the Personal representative of the Estate of Sarah Taylor; WHO ARE SHAREHOLDERS BRINGING THIS ACTION ON BEHALF OF AND/OR IN THE RIGHT OF AIA SERVICES CORPORATION AND ITS WHOLLY OWNED SUBSIDIARY AIA INSURANCE, INC.;<br><br>        Plaintiff,<br><br>   v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC.; an Idaho corporation,<br><br>        Defendants. | Civil No. 1:10-cv-00404-CWD<br><br>PLAINTIFF DALE L. MIESEN'S MOTION TO AMEND AND SUPPLEMENT COMPLAINT |

PLAINTIFF'S MOTION TO AMEND & SUPPLEMENT COMPLAINT - 1

2 SER 306

Plaintiff Dale L. Miesen ("Plaintiff") submits the following memorandum of law in support of his motion to amend and supplement his complaint in the form attached as Exhibit A:

## I.    FACTS

In order to facilitate this amendment and despite the delay caused by the Controlling AIA Defendants refusal to allow Plaintiff to inspect and copy records as previously represented to this Court at a prior scheduling conference (Dkt. 139-3, p. 3, ¶ 4), Plaintiff, along with other shareholders, served two additional derivative demand letters upon AIA Services and AIA Insurance's Boards of Directors on June 13, 2016 and August 23, 2016, respectively. (*Id.*; Ex. A, p. 48, ¶¶ 168-170.)  AIA has refused to take any action. (*Id.*)

Consequently, Plaintiff seeks to amend this complaint to clarify facts, assert additional facts and claims (including claims accruing or discovered since the Second Amended Complaint was filed), and to name two additional defendants. (*Compare* Ex. A *with* B.)  The parties are aware that GemCap Lending I, LLC ("GemCap") was a required party to this lawsuit (and the Hawley Troxell Defendants have maintained that GemCap is a necessary party), and CropUSA Insurance Services, LLC ("CropUSA Insurance Services"), another entity controlled by John Taylor, is also a necessary party to this lawsuit because it is a party to the illegal and/or ultra-vires Settlement Agreement and the $10,000,000 GemCap Loan.  (*Id.*)  On October 31, 2016, this Court entered an order setting November 4, 2016 as the deadline to add additional parties. (Dkt. 178, p. 14.)  This motion followed.

## II.    ARGUMENT AND AUTHORITIES

Plaintiff respectfully request leave to amend and supplement his complaint (Dkt. 137) to clarify facts, name two additional defendants and assert additional facts and claims. Since the defendants cannot show prejudice, undue delay, bad faith or futility, this Court should grant the

PLAINTIFF'S MOTION TO AMEND & SUPPLEMENT COMPLAINT - 2

motion and allow Plaintiff to file the Third Amended Complaint attached as Exhibit A.

"The court should freely give leave when justice so requires." **Fed. R. Civ. P. 15(a)(2)**. "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." **Fed. R. Civ. P. 15(d)**.

Within the Ninth Circuit, Fed. R. Civ. P. 15 "is to be applied extraordinary liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990). "Where there is lack of prejudice to the opposing party and the amended complaint is obviously not frivolous or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such motion." *Hurn v. Retirement Fund Trust of Plumbing, Heating & Piping Industry of So. Calif.*, 648 F.2d 1252, 1254 (9th Cir.1981).

"Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment. These factors, however, are not of equal weight in that delay, by itself, is insufficient to justify denial of leave to amend." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (citations omitted). "Where there is lack of prejudice to the opposing party and the amended complaint is obviously not frivolous or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such motion." *Hurn v. Retirement Fund Trust of Plumbing, Heating & Piping Industry of So. Calif.*, 648 F.2d 1252, 1254 (9th Cir. 1981).

Here, this Court should allow the Plaintiff to file the Proposed Third Amended Complaint in the form attached as *Exhibit A*. Plaintiff has also submitted a red-line comparison, attached as *Exhibit B*, showing the changes between the Second Amended Complaint and the Proposed Third Amended Complaint. (*See* Ex. B.) The Third Amendment Complaint is appropriate and warranted.

PLAINTIFF'S MOTION TO AMEND & SUPPLEMENT COMPLAINT - 3

For example, Plaintiff has clarified certain facts, asserted new facts, asserted new causes of action, and named two new defendants, GemCap and CropUSA Insurance Services. While Plaintiff withdrew his previous motion to amend with the intention of making slight revisions to the Proposed Third Amended Complaint, Plaintiff decided to make additional revisions and assertions in an effort to prevent or limit future challenges to the causes of action and relief requested. This has resulted in additional facts being alleged to the proposed Third Amended Complaint. (*See* Ex. A.) Thus, this Court should grant Plaintiff's motion and allow him to file his proposed Third Amended Complaint.

Plaintiff's counsel apologizes to this Court and counsel because he indicated at the last hearing that GemCap would be the only other party who needed to be named as a new defendant. Plaintiff's counsel, however, inadvertently failed to consider and advise this Court that CropUSA Insurance Services, another entity controlled by John Taylor (Ex. A, p. 3, ¶ 10), was also a party to the $10,000,000 loan with GemCap and a party to the illegal Settlement Agreement that will be at issue in this case. (*See* Dkt. 128, p. 21-57.)  While Plaintiff maintains that the Guarantees and Settlement Agreement are illegal and unenforceable as to AIA Services and AIA Insurance (*See* Dkt. 156, p. 5-13), the Guarantees and Settlement Agreement are, at a minimum, ultra-vires. In order to seek relief to set aside unauthorized contracts and instruments, all of the parties to the contract must be parties to the litigation:

> In a shareholder's proceeding under subsection (2)(a) of this section to enjoin an unauthorized corporate act, the court may enjoin or set aside the act, if equitable **and if all affected persons are parties to the proceeding**, and may award damages for loss, other than anticipated profits, suffered by the corporation...

**I.C. § 30-29-304(3)**; **I.C. § 30-1-304(3)** (emphasis added).  Consequently, CropUSA Insurance Services must be named as a defendant because it could be an "affected" party. *Id.* (Dkt. 128, p. 21-57.)  While the information known by Plaintiffs at this time indicates that CropUSA Insurance

PLAINTIFF'S MOTION TO AMEND & SUPPLEMENT COMPLAINT - 4

Services might only be an additional nominal party to this lawsuit, it must be named as an additional defendant, too, because of the illegal and ultra-vires Settlement Agreement. **I.C. § 30-29-304(3)**; **I.C. § 30-1-304(3)**. (*See* Dkt. 128, p. 21-57.)  As a result, AIA Services and AIA Insurance are also more than nominal defendants.

Moreover, there is no evidence of bad faith, undue delay, prejudice or futility in permitting the filing of the Third Amended Complaint, and the defendants will be unable to show any. Indeed, as this Court recently noted, there has not even been any discovery exchanged or a discovery plan submitted by the parties. Indeed, the defendants cannot argue that they will be prejudiced. To the contrary, it is the Plaintiff and other shareholders who have been prejudiced by the conduct of the Controlling AIA Defendants while this lawsuit has been pending. (*Compare* Ex. A *with* Ex. B *and with* Dkt. 23.) While this lawsuit was pending, the Controlling AIA Defendants have continued to misappropriate AIA's assets and enter into unauthorized and illegal contracts and transactions. If there is any delay, it has been caused the defendants.

### III.    CONCLUSION

For the reasons stated above, this Court should grant Plaintiff's Motion to Amend and Supplement Complaint, and allow him to file the Third Amended Complaint in the form attached as Exhibit A.

DATED:  This 4th day of November, 2016.

RODERICK BOND LAW OFFICE, PLLC


By:    */s/ Roderick C. Bond*
      Roderick C. Bond
      Attorney for Plaintiffs


PLAINTIFF'S MOTION TO AMEND & SUPPLEMENT COMPLAINT - 5

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on the 4th day of November, 2016, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Alyson Anne Foster    aaf@aswblaw.com, mar@aswblaw.com
James D LaRue:   jdl@elamburke.com, sd@elamburke.com

Jeffrey A Thomson:   jat@elamburke.com, nlp@elamburke.com

Loren C Ipsen:   lci@elamburke.com, nlp@elamburke.com

Shawnee S Perdue:   sperdue@wielandperdue.com, admin@wielandperdue.com, tmooney@wielandperdue.com

Steven P Wieland:   swieland@wielandperdue.com, admin@wielandperdue.com, tmooney@wielandperdue.com

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants in the manner indicated:  Via first class mail, postage prepaid addressed as follows:

AIA Services Corporation
P.O. Box 538
Lewiston, ID  83501

AIA Insurance, Inc.
P.O. Box 538
Lewiston, ID  830501

*/s/ Roderick C. Bond*
Roderick C. Bond

PLAINTIFF'S MOTION TO AMEND & SUPPLEMENT COMPLAINT - 6

Loren C. Ipsen, ISB #1767
ELAM & BURKE, P.A.
251 East Front Street, Suite 300
P.O. Box 1539
Boise, Idaho 83701
Telephone:  (208) 343-5454
Facsimile:  (208) 384-5844
lci@elamburke.com

Attorneys for Defendants Hawley Troxell, Babbitt, Ashby and Riley

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual; DONNA J. TAYLOR, an individual and the Personal Representative of the Estate of Sarah Taylor; WHO ARE SHAREHOLDERS BRINGING THIS ACTION ON BEHALF OF AND/OR IN THE RIGHT OF AIA SERVICES CORPORATION AND ITS WHOLLY OWNED SUBSIDIARY AIA INSURANCE, INC.;<br><br>        Plaintiffs,<br><br>v.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN, SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICE CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation,<br><br>        Defendants. | Case No. 1:10-cv-00404-CWD<br><br>REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1) |

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1)  - 1

2 SER 312

Defendants Hawley Troxell Ennis & Hawley, LLP ("Hawley Troxell), Gary D. Babbitt ("Babbitt"), D. John Ashby ("Ashby"), and Richard A. Riley ("Riley"), by and through their attorneys of record, Elam & Burke, P.A., hereby submit this reply in support of their motion to dismiss the plaintiff's Second Amended Complaint for lack of subject matter jurisdiction.

### INTRODUCTION

"When a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell International Corp. v. U.S.,* 549 U.S. 457, 473-74, 127 S.Ct. 1397, 1409, 167 L.Ed.2d 190 (2007). In the case at bar, the plaintiffs voluntarily amended their complaint to add both non-diverse plaintiffs and defendants, thus destroying diversity jurisdiction. The issue is whether they can amend yet again in order to fix the jurisdictional defect they themselves created. Because the remaining defendants would be prejudiced by plaintiffs' proposed amendment and a party would be dropped who claims an interest in the subject matter of the action, the motion to amend should be denied and the case dismissed without prejudice.

### ARGUMENT

**A.    Plaintiffs Have Already Amended their Complaint to Destroy Diversity.**

The diversity-spoiling Idaho plaintiff and Washington defendants were made parties to this cause pursuant to plaintiffs' Second Amended Complaint (the "SAC"). With near unanimity, the courts have held that an amendment of the complaint under F.R.Civ.Pro. 15 to add a non-diverse party destroys diversity jurisdiction. *See Curry v. U.S. Bulk Transfer, Inc.*, 462 F.3d 536, 6th Cir. 2006); *Wiltz v. Advance America*, 2011 WL 5119080 (E.D.La. Oct. 26, 2011); *Sharp v. Kmart Corp.*, 991 F.Supp. 519 (M.D.La. 1998); *F & M Distributors, Inc. v. Am. Hardware Supply Co.*, 120 F.R.D. 494 (W.D. Pa. 1990).

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1)  - 2

**2 SER 313**

Usually, the jurisdictional issue arises in the context of a motion to amend or join one or more additional parties filed by a plaintiff or defendant who seeks to destroy jurisdiction.  In such cases, the federal district court has two options: (1) it can deny the motion for joinder and retain the case, or (2) it can grant the motion and remand the case.  For example, *Abraham Natural Foods Corp. v. Mount Vernon Fire Ins. Cos*., 576 F. Supp. 421 (E.D.N.Y. 2008), involved a case originally filed in state court and then removed to federal district court on the basis of diversity.  The plaintiff moved to amend its complaint to join new, non-diverse defendants to the action.  The Court found that the plaintiff's permissive joinder of non-diverse parties after removal was allowable under F.R.Civ.Pro. 20 and held that upon such joinder, the only action available to the federal court was remand to state court.

The same result has been reached in a number of cases.  Thus, in *Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP*, 362 F.3d 136, 141-42 (1st Cir. 2004), it was held that where the plaintiff amended its complaint to add a non-diverse defendant "complete diversity is destroyed just as surely as if [the plaintiff] had the sued [the non-diverse defendant] in the first instance."  The Court noted that voluntary amendment to join a non-diverse party has resulted in dismissal in other cases:

> At least two other courts have taken a similar stance where, as here, a plaintiff has introduced a non-diverse defendant to an action by amending his or her complaint under Rule 15(a). *See* [*Estate of Alvarez v. Donaldson Co.*, 213 F.3d 993, 995–96 (7th Cir.2000)] (holding that the introduction of new parties destroyed the federal court's subject matter jurisdiction); [*Ingram v. CSX Transp., Inc.*, 146 F.3d 858, 861-62] (11th Cir.1998) (similar); *cf.* 13B Charles A. Wright et al., Federal Practice and Procedure § 3608, at 454 (2d ed. 1984 & Supp.2003) (explaining that parties joined under Rules 19 and 20 must independently satisfy applicable jurisdictional requirements).

*Am. Fiber,* 362 F.3d 136, 140–41 (1st Cir. 2004).  *See also New Cannon Clocks v. Unites States Fidelity & Guaranty*, 904 F.Supp. 621, 622 (E.D. Mich. 1995) (holding that, although

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1)  - 3

there was complete diversity of citizenship when the suit was removed from state court, the subsequent joinder of non-diverse defendants after removal destroyed complete diversity, <u>requiring</u> remand).[1]

**B.      The Remaining Defendants Would Be Prejudiced by the Dismissal of Necessary and Indispensable Parties.**

Plaintiffs argue that defendants Henderson and Duclos are joint tortfeasors who may be dismissed in order to preserve diversity.   Insofar as the Hawley Troxell defendants are concerned, this argument misconceives the nature of the relationship of the parties.  Counts VII and X of the plaintiffs' complaint allege that the Hawley Troxell defendants aided and abetted the "Controlling AIA Defendants" in breaching fiduciary duties and committing fraud.  (SAC Section IVD, ¶¶ 59-71 and Count II) The Controlling Defendants are defined as officers and directors of the AIA corporations, including Henderson and Duclos. (SAC ¶ 16)

There is no such tort as aiding and abetting.  The term only has meaning only in reference to the commission of an underlying tort by another person.   For example, "[t]he first element of aiding and abetting fraud is the existence of an underlying fraud." *Rosner v. Bank of China*, 2008 WL 5416380 at *5 (S.D.N.Y, Dec. 18, 2008).  Henderson and Duclos are necessary parties to any adjudication of whether they committed breaches of fiduciary duty and fraud.    Whether the Hawley Troxell defendants aided and abetted such acts cannot be determined in their absence.

The courts apply F.R.Civ.Pro.19 to determine whether parties sought to be dismissed are indispensable parties in whose absence the case cannot be adequately adjudicated.

---

[1]  28 USC § 1447(e) provides, "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  Since this case was not removed from state court but was originally filed in federal district court, a slightly different issue is implicated.

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1)  - 4

> The Ninth Circuit interprets Rule 19 as requiring "three successive inquiries." "First, the court must determine whether a nonparty should be joined under Rule 19(a)." "If the absentee is a necessary party under Rule 19(a), the second stage is for the court to determine whether it is feasible to order that the absentee be joined." "Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed."
>
> The first inquiry is "concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action." The Ninth Circuit says that, in determining whether a nonparty should be joined under Rule 19(a), the court uses "the term 'necessary' to describe those 'persons to be joined if feasible.' "
>
> Regarding the second inquiry, the Ninth Circuit says that "Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction."
>
> With respect to the last inquiry of whether the case should proceed without the absentee or whether the absentee is an indispensable party such that the action must be dismissed, the Ninth Circuit states, "Rule 19 uses the word 'indispensable' only in a conclusory sense, that is, a person is 'regarded as indispensable' when he cannot be made a party and, upon consideration of the factors in Rule 19(b), it is determined that in his absence it would be preferable to dismiss the action, rather than to retain it."

*Walter v. Drayson*, 496 F. Supp. 2d 1162, 1173 (D. Haw. 2007), *aff'd,* 538 F.3d 1244 (9th Cir. 2008) (citations omitted).

*Soberay Machine & Equip. Co. v. MRF Ltd., Inc*., 181 F.3d 759 (6th Cir. 1999) held that the agent for an undisclosed buyer is a necessary and indispensable party inasmuch as complete relief could not be afforded to those already parties. The Court reasoned that the undisclosed principal would be prejudiced if forced to proceed in the absence of the agent. The present case is similar. The Hawley Troxell defendants will be prejudiced if forced to proceed in the absence of parties whose allegedly tortious conduct they supposedly aided and abetted.

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1) - 5

**2 SER 316**

**C.    Defendant Connie Taylor Henderson's Interest in AIA Stock Cannot Be Litigated in Her Absence.**

The relief requested by plaintiffs in both the SAC and their proposed Third Amended Complaint ("TAC") includes, *inter alia*, that the Controlling Defendants, including John Taylor, be required to "disgorge all compensation received from AIA or CropUSA since 1999, including *stock,* cash, benefits, and other assets." (SAC, p. 52) (emphasis added)  The SAC alleges at ¶ 14, p. 3 that, "Connie jointly owns with John the common shares of AIA Services held in John's name.  Connie has actively asserted community ownership of those shares and specifically did so before the district court and on appeal in *Taylor v. AIA Services Corp., et al.*"   In other words, plaintiffs now propose to litigate the ownership interest of John and Connie Taylor (Henderson) in their AIA stock in an action to which Connie will not be a party.

Connie owns or claims an interest in AIA stock which cannot be adjudicated in her absence.  She must remain a party in order to protect that interest.  Rule19(a) provides that a person should be joined, if feasible, if (s)he claims an interest in the subject matter of an action and "is so situated that the disposition of the action will as a practical matter impair or impede [her] ability to protect that interest."   The conclusion is inescapable that Connie's ability to protect her interest in AIA stock will be impaired or impeded if she is not a party to this action.

Rule 19(b) provides that the Court must then determine whether in equity and good conscience the action should proceed in the absence of the party claiming an interest in the subject matter of the suit.  If the answer is in the negative, the absent party is "thus regarded as indispensable." F.R.Civ.Pro. 19(b)  Connie is an indispensable party because it is not feasible to adjudicate her interest in the stock of AIA if she is not joined as a party to protect her interest.  Any attempt to do so would be a complete waste of judicial resources.

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1)  - 6

**2 SER 317**

**D.    The Court Should Dismiss and Require Plaintiffs to Litigate their Action against all Defendants in One Forum**

Plaintiffs' counsel has frankly admitted his plans to file yet another amended complaint in this action to join a lender, Gem Cap Lending I, LLC ("Gem Cap"), and 13 additional lawyers and law firms.[2]   It is clear that the plaintiffs' ultimate goal is to bring derivative claims not only against the present defendants, but against a plethora of corporate officers, directors, employees and agents, including practically every lawyer and law firm that has represented the AIA corporations in connection with various matters in the past two decades.   The claims are necessarily interrelated and interdependent; it makes no sense to litigate them in different forums, thus giving the plaintiffs multiple opportunities to press their claims and exposing the defendants to multiple and possibly inconsistent adjudications.   The proposed TAC is merely a preliminary step toward the plaintiffs' impermissible objective of litigating the same issues against multiple parties in multiple forums.[3]

**E.    Plaintiffs Lack Standing to Maintain a Derivative Action.**

Mr. Bond has submitted a copy of the settlement agreement between the AIA entities and others, which discloses that AIA Services and AIA Insurance are irremediably insolvent.   As a consequence, it is now plain that the plaintiffs lack standing to bring or maintain a shareholder derivative action on behalf of the AIA entities.   A derivative action is brought on behalf of the

---

[2]   Plaintiffs' most recent derivative demand dated June 13, 2016, demands that AIA Services and AIA Insurance "pursue all possible claims" against the following additional attorneys and law firms:  John Munding, Crumb & Munding, Gordon & Rees, David Risley, Risley Law Office PLLC, Randall Blake and Cox, Clark and Feeney, Quarles and Brady, Doug Siddoway, Randall Danskin, David Gittins, Connie Taylor Henderson, and Henderson Law Firm, and "any other law firm."  The target lawyers and law firms are citizens of Idaho, Washington, Illinois and California.

[3] Plaintiffs' attorney has signaled his clients' intent to file a separate lawsuit against Connie Taylor Henderson and JoLee Duclos.  See Declaration of Roderick C. Bond dated June 15, 2016 (Dkt. 129-3), p. 3: "One or more of my clients will take action against GemCap Lending I, LLC once the ninety days has elapsed and it would be just as easy to name Connie Taylor Henderson and JoLee Duclos to that lawsuit as they were intimately involved in the unlawful $10,000.0000 guarantee by AIA Services and AIA Insurance, which is conduct and torts not subject to the

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1)  - 7

corporation and so the recovery, if any, must go to the corporation. *Gamrex v. Schultz*, 2010 WL 3943910 at *3 (D.Haw. Sep. 9, 2010). In a derivative suit, any recovery flows to the corporation and benefits the derivative plaintiff shareholders only indirectly to the extent of their claim on the corporation's assets. In the case of an insolvent corporation, the parties who stand to benefit are the creditors, not the shareholders.

Under Idaho law, standing is jurisdictional. *Martin v. Camas County*, 150 Idaho 508, 512, 248 P.3d 1243, 1247 (2011); *Koch v. Canyon County*, 145 Idaho 158, 162, 177 P.3d 372, 376 (2009). The federal rule is the same; standing is jurisdictional under Article III. *Dillard v. Chilton County Comm'n*, 495 F.3d 1324, 1330 (11th Cir. 2005). Jurisdictional issues may be raised at any time. *Henderson ex rel Henderson v. Shinseki*, 562 U.S. 428, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011); *Hansen v. Dept. of Treasury,* 528 F.3d 587 (9th Cir. 2007); *Giles v. NYLCare Plans, Inc*., 172 F.3d 332 (5th Cir. 1999); *Moodie v. Federal Reserve Bank of New Yo*rk, 861 F.Supp. 10 (S.D.N.Y. 1994). Where a corporation is insolvent, only its creditors (or bankruptcy trustee) have standing to bring a derivative action on behalf of the corporation. As the Delaware Supreme Court explained in the leading case of *North American Catholic Educational Programming Foundation, Inc. v. Gheewalla,* 930 A.2d 92, 101-02 (Del. 2007):

> When a corporation is solvent, [fiduciary] duties may be enforced by its shareholders, who have standing to bring derivative actions on behalf of the corporation because they are the ultimate beneficiaries of the corporation's growth and increased value. When a corporation is insolvent, however, its creditors take the place of the shareholders as the residual beneficiaries of any increase in value. Consequently, the creditors of an insolvent corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties. . . . Individual creditors of an insolvent corporation have the same incentive to pursue valid derivative claims on its behalf that shareholders have when the corporation is solvent.

---

Second Amended Complaint.

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1)  - 8

**2 SER 319**

*See also Trenwick Am. Litigation Trust v Ernst & Young, LLP,* 906 A.2d 168, 204, n. 96 (Del.Ch. 2006), *aff'd,* 931 A.2d 438 (Del. 2007) ("If the firm is insolvent, its residual claimants are the creditors and it is for their benefit that the directors must now manage the firm."); *Production Resources Group, LLC v. NCT Group, Inc., 863 A.2d 772, 794, n. 67 (Del.Ch. 2004)* ("Creditors also generally have no expectation that they will be able to recover against the directors or stockholders of firms with whom they contract.  Indeed, that is one reason creditors are accorded derivative standing.  Because the creditors need to look to the firm for recovery, they are the correct constituency to be granted derivative standing when the firm is insolvent, as they are the constituency with a claim on the corporation's assets, assets which could be increased by a recovery against the directors.").  The Court in *Production Resources*, *id.* at 791, stated:

> [T]he fact of insolvency does necessarily affect the constituency on whose behalf the directors are pursuing [the task of maximizing economic value]. By definition, the fact of insolvency places the creditors in the shoes normally occupied by the shareholders – that of residual risk-bearers.  Where the assets of the company are insufficient to pay its debts, and the remaining equity is underwater, whatever remains of the company's assets will be used to pay creditors, usually either by seniority of debt or on a pro rata basis among debtors of equal priority.

A corporation is insolvent under Idaho law when its liabilities exceed the reasonable market value of its assets, or when it is unable to pay its debts as they become due in the usual course of business.  Idaho Code § 55-911(1) defines insolvency, for purposes of the Uniform Fraudulent Transfer Act, as being present when the sum of a debtor's debts are greater than the sum of the debtor's assets, at a fair valuation.   Idaho Code § 55-911(2) provides that "[a] debtor who is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute is presumed to be insolvent."   The presumption imposes upon the debtor the burden of proving that it was solvent at the time of the transaction at issue. One ramification of

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1)  - 9

insolvency under Idaho law is that an insolvent corporation is prohibited from making distributions to its shareholders.  *See* Idaho Code § 30-29-640(3), providing that a corporation may not make distributions to its shareholders if "the corporation would not be able to pay its debts as they become due in the usual course of business; or the corporation's total assets would be less than the sum of its total liabilities," etc.; *cf. LaVoy Supply Co. v. Young*, 94 Idaho 129, 369 P.2d 45 (1962); *Taylor v. AIA Services Corp.*, 151 Idaho 552, 261 P.2d 829 (2011) for similar restrictions under prior law.  The plaintiffs have not pled nor proved that the AIA corporations are solvent.  To the contrary, the declaration of Mr. Bond dated April 26, 2016 (Dkt. 128) concedes that after defaulting on their indebtedness to Gem Cap, the AIA corporations entered into a settlement to pay Gem Cap over $12 million, which is outstanding and unpaid.  It cannot be doubted that the AIA corporations are hopelessly insolvent.

It inexorably follows that the plaintiffs and other shareholders of the AIA corporations lack standing to pursue a derivative action.  Only the corporations' creditors, chiefly Gem Cap, have standing.   Since the shareholders lack standing, the Court has no jurisdiction to hear the present case.  It would be a futile exercise to proceed further with the case, which would involve litigation over merely hypothetical issues of law and fact.

DATED this 9th day of August, 2016.

ELAM & BURKE, P.A.

By:    /s/ Loren C. Ipsen
        Loren C. Ipsen, Of the Firm
        Attorneys for Defendants, Hawley Troxell
        Ennis & Hawley, LLP, Gary D. Babbitt,
        Richard A. Riley, and D. John Ashby

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1)  - 10

**2 SER 321**

**2 SER 322**

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of August, 2016, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons via email:

Roderick C. Bond
rod@roderickbond.com
*Attorney for Plaintiff*

Steven P. Wieland
swieland@wielandperdue.com
Shawnee S. Perdue
sperdue@wielandperdue.com
*Attorneys for Michael W. Cashman, Sr., R. John Taylor,
and James Beck*

_____/s/ Loren C. Ipsen_____
Loren C. Ipsen

REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1) - 11



# Roderick Bond
## Law Office, PLLC

June 13, 2016

***VIA U.S. Mail and Facsimile (208) 799-9172***

Board of Directors
AIA Services Corporation
P.O. Box 538
Lewiston, ID  83501

Board of Directors
AIA Insurance, Inc.
P.O. Box 538
Lewiston, ID  83501

**Re:**   ***Shareholder Derivative Demand***

Dear Purported Boards of Directors:

As you are well aware, Dale Miesen, Jerry Legg and Donna Taylor (individually and as Personal Representative of the Estate of Sara Taylor) have all been shareholders of AIA Services Corporation since well before 1995, and this firm represents them for purposes of this shareholder derivative demand ("derivative demand").

As you know, there have been, and continues to be, extensive malfeasance, torts and illegal conduct occurring at AIA Services Corporation and AIA Insurance, Inc., and the unlawfully covering up of the foregoing acts, omissions and torts. Consequently, this letter is yet another derivative demand being provided in accordance with Idaho Code, including I.C. §§ 30-1-742 and 30-29-742 (to the extent that the former may apply to certain acts, omissions and/or torts). However, despite my prior requests to inspect documents and records on behalf of the below named shareholders in accordance with Idaho Code, you have refused to allow such inspections to take place or otherwise provide responsive documents. As a result, this derivative demand was delayed and is based only on the most recent information obtained to date.

---

601 108th Ave, Suite 1900, Bellevue, WA 98004  I  Phone: (425) 591-6903  I  Web: www.roderickbond.com
Roderick C. Bond - Attorney  I  Email: rod@roderickbond.com  I  Licensed in Washington and Idaho

**EXHIBIT A**

**2 SER 323**

Board of Directors of AIA Services Corporation
Board of Directors of AIA Insurance, Inc.
June 13, 2016
Page - 2

For purposes of this derivative demand, the following terms shall apply: (a) "AIA" means AIA Services Corporation and its wholly owned subsidiary AIA Insurance; (b) "CropUSA" means CropUSA Insurance Agency, Inc. and CropUSA Insurance Services, LLC; (c) "John" means R. John Taylor and his spouse as to any property transferred to such spouse, together with any entities partially or wholly owned by him (including Green Leaf RE, Reinsurance Partners, Weskan Agency, Pacific Empire Holdings, Sound Insurance and other entities); (d) "Connie" means Connie Taylor, Connie Taylor Henderson, and Connie Wright Henderson and her spouse as to any property transferred to such spouse; (e) "Beck" means James Beck and his spouse as to any property transferred to such spouse; (f) "Cashman" means Michael W. Cashman, Sr. and his spouse as to any property transferred to such spouse; (g) "Duclos" means JoLee K. Duclos and her spouse as to any property transferred to such spouse; (h) "Hawley Troxell" means Hawley Troxell Ennis & Hawley LLP and the applicable present and former attorneys at Hawley Troxell (including, without limitation, D. John Ashby, Gary Babbitt and Richard A. Riley); (i) "Pacific Empire Radio" means Pacific Empire Radio Corporation; (j) "GemCap" means GemCap Lending I, LLC, together with all of its applicable officer(s) and agents; (k) "Combined Defendants" means all of the foregoing parties except as to AIA (but includes attorneys, law firms and agents of AIA), but "Combined Defendants may include or not include Hawley Troxell and/or Pacific Empire Radio to the extent applicable based on certain facts and circumstances and/or when such facts and circumstance ocurred; and (l) "Controlling AIA Defendants" means John, Connie, Beck, Cashman and Duclos. For each of the foregoing terms which define more than one party, each such term shall also mean any one or more of the defined parties for purposes of demanding in the alternative.

Dale Miesen, Jerry Legg and Donna Taylor hereby demand that all possible claims and legal action be immediately taken in a court of law on behalf of AIA as follows (including claims which may be contemplated and/or related in any way to the following):[1]

1. Pursue all possible claims and defenses, and seek the maximum damages, against the Combined Defendants, including, without limitation, all possible tort claims (including, without limitation, aiding and abetting in the commission of torts against AIA), contract claims, declaratory relief, injunctive relief and punitive damages based on all acts, omissions, concealments, and failure to disclose. Without limiting the foregoing and so there is no confusion (even though you are well aware of the facts, lawsuits and legal issues as having full access to information at AIA and the most of the Combined Defendants), more specific examples are included below and demand is hereby made to take action against those parties and any of the other Combined Defendants to recover damages based on any of such specific examples.

---

[1] This derivative demand shall also be construed as being provided by any and/or all of the other innocent minority common and preferred shareholders of AIA Services Corporation. The undersigned apologizes for any spelling or grammatical errors, but he wanted to get this derivative demand submitted to AIA as soon as possible.

Board of Directors of AIA Services Corporation
Board of Directors of AIA Insurance, Inc.
June 13, 2016
Page - 3

2. Pursue all possible claims and defenses against the Combined Defendants relating in any way to all loans, guarantees, settlement agreements and any other agreements or instruments involving GemCap and AIA (including, without limitation, the loans, guarantees, security agreements, settlements, agreements and all other instruments which are the subject matter of the lawsuit *Gemcap Lending I, LLC v. CropUSA Insurance Agency, Inc., et al.*, in the U.S. District Court, Central District of California, Case No. CV 13-05504 SJO (MANx) ("California Lawsuit"). As you know, AIA was barred from guaranteeing any loans for CropUSA or entering into any settlement agreements under AIA Services' amended articles of incorporation and restated bylaws and all agreements and guarantees were not properly authorized by AIA's board of directors (i.e., Donna Taylor's board designee did not authorize the guarantees and settlements). In addition, AIA received no consideration for entering into the guarantees, security agreements or settlement agreements. As a result, demand is further made to assert all possible claims and defenses in any pending and future lawsuits to have the guarantees, instruments, all settlement agreements and judgments declared illegal, ultra-vires acts, void or voidable and thus unenforceable and to pursue all related claims against GemCap, the Controlling AIA Defendants, and any other responsible parties or parties who have aided and abetted or assisted in such acts and/or omissions.

3. Pursue all possible claims and defenses against GemCap and the other Combined Defendants to recover all property, real property and/or funds transferred or paid to it directly or indirectly from AIA (including, without limitation, the transfer of AIA Services' interest in the mortgage and real property known as the Lewis/Clark Plaza located at 111 Main Street in Lewiston, Idaho), together with all damages, attorneys' fees and costs paid or incurred by AIA based on the foregoing.

4. Pursue all possible claims and defenses against GemCap, and to the extent necessary any of the other Combined Defendants, to extricate AIA from all settlement agreements entered into with GemCap and have such agreements declared illegal and/or unenforceable as to AIA, including, without limitation, the written Settlement Agreement which was filed by Doug Siddoway in Nez Perce County District Court dated effective September 15, 2014, together with all Assignments Agreements, related agreements, related instruments and judgments relating in any way to that Settlement Agreement and any prior or subsequent settlement agreements (including amendments or modifications thereto) in the California Lawsuit.

5. Pursue all possible claims and defenses against GemCap, and to the extent necessary any of the other Combined Defendants, to vacate any judgments entered in favor of GemCap against AIA, including, without limitation the judgments entered in the California Lawsuit and any subsequently entered foreign judgments (including, upon belief, the foreign judgment recently entered against AIA Insurance in Nez Perce County District Court). Included in this demand is also the demand to assert that there was no jurisdiction over AIA in the California Lawsuit and thus the judgments should be voided.

Board of Directors of AIA Services Corporation
Board of Directors of AIA Insurance, Inc.
June 13, 2016
Page - 4

6.  Pursue all possible claims and defenses against GemCap for aiding and abetting John, Connie, Beck, Cashman, CropUSA, Pacific Empire Radio any other parties in committing torts against AIA (including assisting in breaches of fiduciary duties, fraud and other torts and covering up such breaches and torts). GemCap was aware of the malfeasance occurring at AIA when it first entered into the loans and guarantees with CropUSA and AIA, that AIA was being used improperly by the Controlling AIA Defendants to fund and/or support entities partially or wholly owned by them, and GemCap became more aware of these facts as time went on, yet GemCap continued to assist the foregoing parties committing and covering up torts against AIA (including, without limitation, breaches of fiduciary duties and fraud).

7.  Pursue all possible claims against the Combined Defendants for their torts committed against AIA (including, without limitation, breaches of fiduciary duties, fraud and any other claims contemplated or related to any of the facts or issues disclosed in this letter) and the aiding and abetting of torts committed against AIA by one or more of the Combined Defendants (including, without limitation, assisting in the commission of the torts or covering up the torts).

8.  Pursue all possible claims against Controlling AIA Defendants requiring them to disgorge all compensation, consulting fees, fees, salary, benefits or any other type of payments made to them directly or indirectly from AIA (including, based on being faithless fiduciaries and/or receiving such compensation without proper authorization from AIA) and to require them to repay any funds, expenses, fees, reimbursements, and costs incurred by AIA or paid by AIA for their benefit in any legal action or matter and to obtain damage judgments for such payments and compensation. Included in this demand is disgorgement or damages for all salary, bonuses, benefits and other compensation paid to John, Beck, Connie, Cashman and Duclos from being an officer, director or other agent of AIA and all attorneys' fees, expenses and costs paid on their behalf. This demand includes the $5,000 per quarter paid to Connie and Beck to purportedly serve on AIA's Board of Directors and all compensation paid to John and Duclos for purportedly being officers and/or directors of AIA.

9.  Pursue all possible claims against GemCap and the other responsible Combined Defendants (including the Controlling AIA Defendants) for all of the attorneys' fees, costs, expenses and damages proximately caused directly or indirectly from GemCap's loans to CropUSA and AIA's guarantees of those loans, including, without limitation, all attorneys' fees, costs and expensed incurred or paid directly or indirectly by AIA for the California Lawsuit and any other lawsuit. But for GemCap agreeing to improperly make the loans and improperly agree to accept AIA's guarantees, none of the lawsuits would have occurred.

10. Pursue all possible claims and defenses against GemCap that it was not a good faith lender, had unclean hands, and/or is not entitled to any relief against AIA.

**2 SER 326**

Board of Directors of AIA Services Corporation
Board of Directors of AIA Insurance, Inc.
June 13, 2016
Page - 5

11. Pursue all possible claims against Hawley Troxell requiring it to disgorge all compensation received or paid to Hawley Troxell directly or indirectly from AIA based on Hawley Troxell's conflicts of interest, breached fiduciary duties (including the duties of loyalty) and related malpractice, including, without limitation, all subsequent payments made by AIA to Hawley Troxell.

12. Pursue all possible claims against Pacific Empire Radio for all sums owed by it to AIA, including, without limitation, the over $1,400,000 owed as disclosed in 2015) and all amounts which have been subsequently improperly lent to Pacific Empire Radio.

13. Pursue all possible claims against the Controlling AIA Defendants for allowing any funds to be lent to Pacific Empire Radio in the first place (including without limitation, for the breaches of fiduciary duties by them as present or former officers and/or directors of AIA and the aiding and abetting in assisting and/or covering up of the improper loans to Pacific Empire Radio). As you are fully aware, these loans violated AIA's amended articles of incorporation, AIA's bylaws, constituted conflicts of interest, provided no benefit to AIA and were made when AIA was not meeting its obligations to others.

14. Pursue all possible claims against Pacific Empire Radio, the Controlling AIA Defendants and any other parties relating to any agreements and subordination agreements improperly entered into between AIA, Pacific Empire Radio and any other party, as such agreements were not authorized by AIA and were not in AIA's best interests.

15. Pursue all possible claims against the Controlling AIA Defendants for allowing John to operate AIA for his benefit and/or to assist AIA in funding and the operation of entities partially or wholly owned by the Controlling AIA Defendants without AIA receiving any benefit, proper compensation, without full disclosure to AIA, in violation of applicable conflicts of interest (including under AIA Services' amended articles of incorporation and bylaws) and without obtaining proper authorization from AIA or its innocent minority shareholders.

16. Pursue all possible claims against the Controlling AIA Defendants and any other responsible party for all damages relating to all payments made directly or indirectly from AIA to the attorneys and law firms of Hawley Troxell, Crumb & Munding, Gordon & Reese, Risley Law Office PLLC, Randall Blake and Cox, Clark and Feeney, Quarles & Brady, Randall Danskin, David Gittins, Connie Taylor (and her law firms Clark and Feeney and Henderson Law Firm) and any other law firm (including for declaratory relief that no further sums are owed by AIA to any of the foregoing and that any fee agreements or conflict waivers are void), as such payments should never have been made, were never authorized by AIA, were not properly incurred or necessary for AIA, were never authorized by AIA's shareholders after full disclosure was made, and involved the attorneys and law firms taking action or performing work not in the best interests of AIA and/or in violation

**2 SER 327**

Board of Directors of AIA Services Corporation
Board of Directors of AIA Insurance, Inc.
June 13, 2016
Page - 6

of the duty of loyalty owed to AIA. Demand is further made to pursue all possible claims, including, without limitation, for the disgorgement of all fees, costs and expenses paid or discharge of any debts allegedly owed, to any of the foregoing attorneys, law firms and/or attorneys working at such law firms to the extent that they represented AIA based on conflicts of interest, breached fiduciary duties (including the duty of loyalty), and malpractice. To the extent that any of the forgoing law firm and attorneys did not represent AIA, then demand is made to pursue all possible claims against the Controlling AIA Defendants for all sums paid and/or owed to such attorneys and law firms by AIA. In addition, demand is made to assert all possible claims against the foregoing parties for participating and/or allowing AIA to be improperly utilized to fund the defense and prosecution of lawsuits which were not in AIA's best interests, but were instead pursued based on the interests of the Controlling AIA Defendants.

17. Pursue all possible claims against the Controlling AIA Defendants, and to the extent necessary AIA or any other Combined Defendant to ensure that AIA is not bound or obligated by any act or omission of the Controlling AIA Defendants or AIA, for not honoring Donna Taylor's unqualified appointment of a designee to AIA Services' Board of Directors (Patrick Moran and Paul Durant) and for declaratory relief that all such actions purportedly taken by the Board of Directors of AIA Services without the consent or approval of Donna Taylor's designee (who would have been the only director without a conflict of interest) were the unauthorized acts of AIA, ultra-vires and void. Such acts and omissions, include, without limitation, all guarantees and settlements with GemCap, all loans to Pacific Empire Radio, all conflict waivers or other agreements with attorneys and law firms, all board resolutions (including any resolutions provided to GemCap), and all other acts of the purported Board of Directors of AIA Services.

18. Pursue all possible claims against the Controlling AIA Defendants, CropUSA and any other of the Combined Defendants or responsible parties for all payments made to any and all vendors, creditors, consultants, agents, customers or other parties owed money by CropUSA, by the Controlling AIA Defendants, any entity partially or wholly owned by any one of the Controlling AIA Defendants, or paid at the direction of any one or more of the Controlling AIA Defendants, including, without limitation, the more recent hundreds of thousands of dollars in payments AIA made to certain agents and customers of CropUSA in 2013 and any previously or subsequently paid for CropUSA and any other entity.

19. Pursue all possible claims against the Combined Defendants for taking action violating AIA's amended articles of incorporation, violating AIA's bylaws, violating statutory and common law, and committing torts against AIA, together with aiding and abetting others (including other Combined Defendants) in covering up the torts committed against AIA. Examples of the torts and the covering up of those torts are contained with the proposed Second Amended Complaint recently filed in the federal derivative lawsuit by Dale Miesen and Donna Taylor—the facts and torts alleged in that Second Amended Complaint have continued since prior demands.

Board of Directors of AIA Services Corporation
Board of Directors of AIA Insurance, Inc.
June 13, 2016
Page - 7

20. Pursue all possible claims against the Combined Defendants for failing to properly allocate costs, labor, expenses and other items between AIA and other entities, including, CropUSA, and by allowing such issues to take place in the first place, including, without limitation, based on the conflicts of interest and restrictions under AIA's amended articles of incorporation, bylaws and the undivided duties of loyalty owed by the Controlling AIA Defendants to AIA, among others, and for continuing to conceal and cover up all such issues and related issues.

21. Pursue all possible claims against the Controlling AIA Defendants for all damages, fees and costs incurred or paid by AIA for attempting to effectuate a reverse stock split to eliminate the minority common shareholders of AIA Services in violation of AIA Services' amended articles of incorporation, bylaws and Idaho Code, including, without limitation, the hundreds of thousands of dollars of attorneys' fees and costs paid to Randall Danskin for the improper reverse stock split and to purportedly represent AIA in the subsequent lawsuit against certain of AIA Services' shareholders. Demand is further made to pursue all possible claims against Doug Siddoway (and any other responsible attorney) and Randall Danskin, including, for breach fiduciary duties, conflicts of interest, and disgorgement of all attorneys' fees and costs paid to them and to have declared unlawful or uncollectable any attorneys' fees and costs allegedly owed to them by AIA, including, without limitation, based on their malpractice, breaches of duty of loyalty owed to AIA, conflicts of interest, for aiding and abetting the Controlling AIA Defendants in the commission of torts (including in that lawsuit and others), and taking action in violation of their undivided fiduciary duties of loyalty owed to AIA. To be clear, full and complete disgorgement should be sought and obtained for all fees, costs and expenses paid directly or indirectly by AIA (or by GemCap) to Randall Danskin for all work that it and its attorneys have directly or indirectly performed for AIA and for concealing from AIA the conflicts of interest, breaches of fiduciary duties and malpractice committed by Randall Danskin against AIA—Mr. Siddoway and Randall Danskin placed their interests in earning fees ahead of AIA's interests, are faithless fiduciaries and are not entitled to retain any compensation relating to AIA.

22. Pursue all possible claims against John Munding and Crumb & Munding (or such other firm Mr. Munding is operating through) for malpractice, breach of fiduciary duties and to disgorge all attorneys' fees, costs and expenses paid to them directly or indirectly by AIA for the California Lawsuit as Mr. Munding intentionally violated his duties owed to AIA, including, without limitation, his duties of loyalty owed to AIA and by taking direction and action benefitting other defendants (including John's) and placing their interests in front of AIA and by representing CropUSA, AIA and other parties when there were conflicts of interest in doing so and Mr. Munding knew that he could not properly represent AIA's interests and when he had no intention of doing so. Demand is further made to pursue all possible claims against Mr. Munding and Crumb & Munding for improperly failing to assert that the guarantees and settlement agreements entered into by AIA were not

2 SER 329

Board of Directors of AIA Services Corporation
Board of Directors of AIA Insurance, Inc.
June 13, 2016
Page - 8

authorized and were thus illegal or ultra-vires and by allowing AIA to enter into them in the first place. Mr. Munding places his interests in earning fees ahead of AIA's interests.

23. Pursue all possible claims against the Controlling Defendants, the applicable Combined Defendants and any other parties or entities to recover all sums paid directly or indirectly on behalf of any such parties (including the Controlling Defendants) by AIA, including, without limitation, loan payments (including loans paid for John and others), consulting fees (including for past and present employees and/or purported consultants for CropUSA, Sound Insurance, Weskan, AIA (to the extent unnecessary) and other entities or parties, and wages or benefits paid for the foregoing), expenses, costs, litigation expenses, commission refunds, credit card payments (made for John and others) cell phone bills, insurance payments, CropUSA commissions to agents (which was hundreds of thousands of dollars), telephone costs, advances (including to John, Weskan Agency, and others), tax payments, and other payments. As you are aware, the foregoing are easily determined by reviewing AIA's check registers and by ascertaining from John, Duclos or others regarding items not listed in the check registers, including, such information which has never been disclosed to AIA's minority shareholders or their attorneys and all subsequent ones to this demand.

24. Pursue all possible claims against the Controlling Defendants for wasting AIA's assets and funds and paying excessive compensation to any and/or all of them, including, without limitation, for the purpose of concealing and aiding and abetting in the covering up of torts committed against AIA.

25. Pursue all possible claims against the Controlling Defendants for allowing other entities partially or wholly owned by them, including CropUSA, to compete against AIA in violation of John's Executive Officer's Agreement and the undivided duty of loyalty owed to AIA by them as majority shareholders, directors, and/or officers of AIA.

26. Pursue all possible claims against John for representing AIA in any lawsuit, including, without limitation, the lawsuit that Dale Miesen, Donna Taylor and Paul Durant filed against GemCap and AIA to have the illegal guarantees and settlement agreements, which were the subject matter of the California Lawsuit, voided, including, without limitation, claims for intentional breaches of fiduciary duty and intentional malpractice for failing to represent the interests of AIA and by breaching the duty of loyalty owed to AIA.

27. Pursue all possible claims against the Combined Defendants for all damages and relief proximately caused from their acts and/or omissions in leading to the decimation of AIA and its present financial condition.

28. Pursue all possible claims against the Controlling AIA Defendants for any and all damages, tax liabilities, interest, penalties and any other source of damages causes by their acts, omissions and/or torts against AIA.

Board of Directors of AIA Services Corporation
Board of Directors of AIA Insurance, Inc.
June 13, 2016
Page - 9

29. Pursue all possible claims requiring an accounting of all funds, assets, labor, expenses, costs and the allocation of such items between or among other individuals and parties (including the Controlling AIA Defendants and any entities partially or wholly owned by any one or more them).

30. To the extent necessary, pursue all possible claims and defenses for equitable subordination, indemnification (including equitable indemnification) and all related claims and defenses against the Combined Defendants in any pending or future lawsuit.

31. Pursue all possible claims and relief to obtain an accounting from Trustmark of all payments made to AIA and the subsequent use of such funds.

32. Pursue all possible claims seeking all necessary declaratory relief to make AIA whole and its innocence minority common and preferred shareholders whole (to the extent that shares have been cancelled or redeemed).

33. Pursue all possible claims requiring Donna Taylor's designee to be appointed to the Board of Directors of AIA Services and to require that the board of directors comply with AIA's amended articles of incorporation, AIA's bylaws, statutory and common law and to ensure full disclosure is made to AIA.

34. Pursue all possible claims that CropUSA and other entities (including Pacific Empire Radio) are the alter-ego of the Controlling AIA Defendants and thus they are individually liable for all damages.

35. To the extent John or others of the Controlling AIA Defendants have transferred real or personal property to their present or former spouses or any other party, pursue all possible claims to recover such property for the benefit of AIA and to help satisfy any judgment(s) which may be entered in favor of AIA.

36. Pursue all possible claims to prevent any of the Controlling AIA Defendants from being directors or officers of AIA.

37. Pursue all possible claims to seek declaratory judgment requiring AIA's officers, directors and shareholders to comply with AIA's amended articles of incorporation, AIA's bylaws and statutory and common law.

38. Pursue all possible claims against David Riley and his law firm (including Riley Law Offices) for malpractice and breaching his fiduciary duties owed to AIA, including, without limitation, requiring the repayment of all sums paid to them directly or indirectly from AIA, for disgorgement of all attorneys' fees, costs and expenses paid to them when they breached their fiduciary duties owed to AIA (including the undivided duty of loyalty),

Board of Directors of AIA Services Corporation
Board of Directors of AIA Insurance, Inc.
June 13, 2016
Page - 10

engaged in impermissible conflicts of interest (representing the interests of the Controlling AIA Defendants over the interest of AIA), aided and abetted the Controlling AIA Defendants, and for all other damages (including, without limitation, allowing property owned by AIA to be transferred to others (including GemCap) and/or utilized by the Controlling AIA Defendants).

39. Pursue all possible claims against the Combined Defendants and any and all of the parties listed above for concealing from AIA the facts, conflicts and failing to disclose all necessary facts and claims.

40. Pursue all possible claims against John and Connie relative to litigation expenses and costs paid for other lawsuits (including the lawsuit against John and Connie in Ada County), including fees and costs paid to Connie (or her firm) and/or on behalf of her or John.

41. Pursue all possible claims against the Combined Defendants, which have not been specifically stated above, to recover all damages and money owed and/or traced directly or indirectly to AIA and/or otherwise derived from its labor, office space, trade secrets, funds, commissions, agency force, loans, guarantees, lines of credit and/or any other asset.

42. Pursue all possible claims of prejudgment interest for all sums and damages owed to AIA in the maximum amount permitted under the law.

43. Pursue all possible claims against any of the Combined Defendants or any other parties identified above to recover any attorneys' fees and costs incurred in any lawsuit or litigation directly or indirectly involving AIA.

44. To the extent that the conduct and claims discussed above continues after this derivative demand, to pursue all possible claims based on all future action based upon the same or similar acts, omissions, conduct, claims and damages.

Please note that to the extent that any of the above demands overlap or are duplicative with prior demands or may include acts and claims which occurred after one of the prior demands, Dale Miesen, Jerry Legg and Donna Taylor are not waiving any claims for such prior demands or conceding that you have the right to now address those demands nor are they waiving the right to seek relief based on irreparable harm to AIA. To the contrary, Dale Miesen and Donna Taylor are already asserting, or seeking to assert, many claims on behalf of AIA.

In addition, please note that time is of the essence on many of the above claims and to the extent that AIA is harmed based on your failure to promptly act or promptly reject this derivative demand, you and any others (including other Controlling AIA Defendants) will be held liable. The torts, facts and issues are well known to you and you are in control of the facts and documents. Thus, you bear the risk of dragging out this demand and failing to take action on behalf of AIA.

**2 SER 332**

2 SER 333

Board of Directors of AIA Services Corporation
Board of Directors of AIA Insurance, Inc.
June 13, 2016
Page - 11


Sincerely,

RODERICK BOND LAW OFFICE, PLLC

By: Roderick C. Bond

cc:  Dale Miesen
     Donna Taylor
     Jerry Legg
     Steve Wielend
     Shawnee Perdue

Loren C. Ipsen, ISB #1767
ELAM & BURKE, P.A.
251 East Front Street Suite 300
Post Office Box 1539
Boise, Idaho 83701
Telephone:  (208) 343-5454
Facsimile:  (208) 384-5844
lci@elamburke.com

Attorneys for Defendants, Hawley Troxell Ennis & Hawley, LLP,
Gary D. Babbitt, Richard A. Riley, and D. John Ashby

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual; DONNA J. TAYLOR, an individual and the Personal Representative of the Estate of Sarah Taylor; WHO ARE SHAREHOLDERS BRINGING THIS ACTION ON BEHALF OF AND/OR IN THE RIGHT OF AIA SERVICES CORPORATION AND ITS WHOLLY OWNED SUBSIDIARY AIA INSURANCE, INC.;<br><br>    Plaintiffs,<br><br>vs.<br><br>CONNIE TAYLOR HENDERSON, an individual; JOLEE K. DUCLOS, an individual; HAWLEY TROXELL ENNIS & HAWLEY, LLP, an Idaho limited liability partnership, GARY D. BABBITT, an individual; D. JOHN ASHBY, an individual; RICHARD A. RILEY, an individual; MICHAEL W. CASHMAN, SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation,<br><br>    Defendants. | Case No.  1:10-cv-00404-CWD<br><br>DECLARATION OF LOREN C. IPSEN IN SUPPORT OF REPLY IN MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1) |

I, Loren C. Ipsen, declare:

DECLARATION OF LOREN C. IPSEN IN SUPPORT OF REPLY IN MOTION TO DISMISS
PURSUANT TO F.R.C.P. 12(b)(1) - 1

1.      I am one of the attorneys of record in this action for Defendants Hawley Troxell Ennis & Hawley LLP, an Idaho limited liability partnership, Gary D. Babbitt, D. John Ashby and Richard A. Riley.  I am over 18 years of age and competent to testify in court.

2.      Attached hereto as Exhibit A true and correct copy of a new shareholder derivative demand from Plaintiffs' Counsel Roderick C. Bond dated June 13, 2016.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF IDAHO THAT THE FOREGOING IS TRUE AND CORRECT.

  August 9, 2016 at Boise, Idaho           /s/ Loren C. Ipsen
Date and City and State Signed            Loren C. Ipsen

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of August, 2016, I electronically filed the foregoing instrument with the Clerk of the Court using the EM/ECF system which sent a Notice of Electronic Filing to the following persons via email:

Roderick C. Bond                    Shawnee S. Perdue
rod@roderickbond.com                sperdue@wielandperdue.com
*Attorneys for Plaintiff*           Steven P. Wieland
                                    swieland@wielandperdue.com
                                    *Attorneys for Michael W. Cashman, Sr.,*
                                    *R. John Taylor, and James Beck*

            /s/ Loren C. Ipsen
            Loren C. Ipsen

DECLARATION OF LOREN C. IPSEN IN SUPPORT OF REPLY IN MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(1) - 2

Gary D. Babbitt ISB No. 1486
D. John Ashby ISB No. 7228
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: (208) 344-6000
Facsimile: (208) 342-3829
Email: gdb@hteh.com
         jash@hteh.com

Attorneys for Defendants/Counterclaimants AIA
Services Corporation, and AIA Insurance, Inc.

IN THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT

OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF NEZ PERCE

| | |
|---|---|
| REED J. TAYLOR, a single person, <br><br> Plaintiff, <br><br> vs. <br><br> AIA SERVICES CORPORATION, an Idaho corporation; AIA INSURANCE, INC., an Idaho corporation; R. JOHN TAYLOR and CONNIE TAYLOR, individually and the community property comprised thereof; BRYAN FREEMAN, a single person; JOLEE DUCLOS, a single person; CROP USA INSURANCE AGENCY, INC., an Idaho Corporation; and JAMES BECK and CORRINE BECK, individually and the community property comprised thereof, <br><br> Defendants | Case No. CV-07-00208 <br><br> AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL |

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 1

Exhibit B

AIA SERVICES CORPORATION, an Idaho )
corporation; and AIA INSURANCE, INC., an )
Idaho corporation, )
                    )
          Counterclaimants, )
vs. )
                    )
REED J. TAYLOR, a single person, )
                    )
          Counterdefendant. )
                    )

Defendants AIA Services Corporation and AIA Insurance Inc. (collectively, "AIA" or "these Defendants"), by and through their counsel of record, Hawley Troxell Ennis & Hawley LLP, submit this First Amended Answer to Plaintiff's Fifth Amended Complaint, Counterclaim, and Demand for Jury Trial. This amended pleading is submitted as a matter of right pursuant to I.R.C.P. 15(a) because Reed J. Taylor has not yet served a responsive pleading. These Defendants respond to Plaintiff's Fifth Amended Complaint (the "Complaint") as follows:

## FIRST DEFENSE

Plaintiff's Fifth Amended Complaint, and each and every claim and allegation thereof, fails to state a claim against these Defendants upon which relief can be granted.

## SECOND DEFENSE

Defendants deny each and every allegation contained in Plaintiff's Complaint unless expressly and specifically admitted herein.

## PARTIES, JURISDICTION, AND VENUE

1. These Defendants admit the allegations in paragraph 1.1 of the Complaint.

2. These Defendants admit the allegations in paragraph 1.2 of the Complaint.

3. These Defendants admit the allegations in paragraph 1.3 of the Complaint.

4. These Defendants admit the allegations in paragraph 1.4 of the Complaint.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 2

Exhibit B

5.    Answering paragraph 1.5 of the Complaint, these Defendants admit that R. John Taylor ("John Taylor") and Connie Taylor were husband and wife until on or about December 16, 2005, and at all relevant times were residents of Lewiston, Nez Perce County, Idaho. These Defendants deny all other allegations in paragraph 1.5 of the Complaint not otherwise specifically admitted herein.

6.    These Defendants admit the allegations in paragraph 1.6 of the Complaint.

7.    These Defendants admit the allegations in paragraph 1.7 of the Complaint.

8.    These Defendants admit the allegations in paragraph 1.8 of the Complaint.

9.    Answering paragraph 1.9 of the Complaint, these Defendants admit that James Beck and Corrine Beck are residents of the State of Minnesota and deny all other allegations in paragraph 1.9 of the Complaint not otherwise specifically admitted herein

10.    Paragraph 1.10 of the Complaint states a legal conclusion to which no response is required.

11.    Paragraph 1.11 of the Complaint states a legal conclusion to which no response is required.

## FACTUAL BACKGROUND

12.    Answering paragraph 2.1 of the Complaint, these Defendants admit that John Taylor was, at all relevant times, an officer and director of AIA Services, AIA Insurance, and Crop USA, and that he owns approximately 40% of the outstanding shares of Crop USA. These Defendants deny all other allegations in paragraph 2.1 of the Complaint not otherwise specifically admitted herein

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 3

Exhibit B

13. Answering paragraph 2.2 of the Complaint, these Defendants admit that John Taylor and Connie Taylor were divorced through an interlocutory decree on or around December 16, 2005, but these Defendants deny all other allegations in paragraph 2.2 of the Complaint

14 Paragraph 2.3 of the Complaint does not state any allegations as against these Defendants to which a response is required. To the extent a response is required, these Defendants deny the allegations in paragraph 2.3 of the Complaint.

15 These Defendants deny the allegations in paragraph 2.4 of the Complaint.

16. Answering paragraph 2.5 of the Complaint, these Defendants admit that JoLee Duclos ("Duclos") is an officer of AIA Services, AIA Insurance, and Crop USA, and that she is a shareholder in Crop USA. These Defendants deny all other allegations in paragraph 2.5 of the Complaint not otherwise specifically admitted herein.

17 Answering paragraph 2.6 of the Complaint, these Defendants admit that Bryan Freeman ("Freeman") was a director of AIA Services, AIA Insurance, and Crop USA, and that Bryan Freeman is a shareholder in Crop USA. These Defendants deny all other allegations in paragraph 2.6 of the Complaint not otherwise specifically admitted herein.

18. These Defendants admits that CropUSA cooperated with AIA pursuant to certain agreements, and deny all deny all other allegations in paragraph 2.7 of the Complaint not otherwise specifically admitted herein.

19. These Defendants admit the allegations in paragraph 2.8 of the Complaint.

20. Answering paragraph 2.9 of the Complaint, these Defendants admit that James Beck is a shareholder of AIA Services and Crop USA and that, during certain times, James Beck

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 4

Exhibit B

was a member of the boards of directors for AIA Insurance and AIA Services. These Defendants deny all other allegations in paragraph 2.9 of the Complaint not otherwise specifically admitted herein.

21. Answering paragraph 2.10 of the Complaint, these Defendants admit the first and third sentences, allege that in 1995 Reed Taylor desired to retire and have AIA Services redeem his stock, and deny each and every other allegation in paragraph 2.10 not otherwise admitted herein.

22. Answering paragraph 2.11 of the Complaint, these Defendants admit that AIA Insurance is a wholly owned subsidiary of AIA Services and that AIA Insurance is a lessee of the office building located at 111 Main Street, Lewiston, Idaho. These Defendants deny all other allegations in paragraph 2.11 of the Complaint not otherwise specifically admitted herein.

23. Answering paragraph 2.12 of the Complaint, these Defendants state that the agreements speak for themselves.

24. Answering paragraph 2.13 of the Complaint, these Defendants state that the documents speak for themselves, and deny all other allegations in paragraph 2.13 of the Complaint not otherwise specifically admitted herein.

25. Answering paragraph 2.14 of the Complaint, these Defendants admit that the Stock Redemption Agreement, Stock Pledge Agreement, and Security Agreement were authorized by the Board of Directors of AIA Services. These Defendants state that the agreements speak for themselves, and deny all other allegations in paragraph 2.13 of the Complaint not otherwise specifically admitted herein.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 5

Exhibit - B

26.    Answering paragraph 2.15 of the Complaint, these Defendants admit that in 1996 AIA Services and Plaintiff agreed to modify the Stock Redemption Agreement and executed the Stock Redemption Restructure Agreement, an Amended and Restated Stock Pledge Agreement, and an Amended and Restated Security Agreement. Those documents speak for themselves, and these Defendants deny all other allegations in paragraph 2.15 of the Complaint not otherwise specifically admitted herein

27    Answering paragraph 2.16 of the Complaint, these Defendants state that the agreements speak for themselves, the agreements were amended at a later time, and these Defendants deny all other allegations in paragraph 2.16 of the Complaint not otherwise specifically admitted herein.

28.    Answering paragraph 2 17 of the Complaint, these Defendants state that the Amended Stock Pledge Agreement speaks for itself, and these Defendants deny each and every allegation in paragraph 2.17 of the Complaint not otherwise specifically admitted herein.

29.    Answering paragraph 2 18 of the Complaint, these Defendants state that the Amended Stock Pledge Agreement speaks for itself. These Defendants admit that AIA Services did not post bonds or other security for the payment of the Promissory Note and deny all other allegations in paragraph 2.18 of the Complaint not specifically admitted herein.

30.    Answering paragraph 2.19 of the Complaint, these Defendants state that the Amended Stock Pledge Agreement speaks for itself and deny all other allegations in paragraph 2.19 of the Complaint not otherwise specifically admitted herein

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 6

Exhibit B

31. Answering paragraph 2.20 of the Complaint, these Defendants state that the Amended Stock Pledge Agreement speaks for itself and deny all other allegations in paragraph 2.20 of the Complaint not otherwise specifically admitted herein.

32. These Defendants deny the allegations in paragraph 2.21 of the Complaint.

33. Answering paragraph 2.22 of the Complaint, these Defendants admit that Plaintiff was, during certain relevant times, the largest creditor of AIA Services, and deny all other allegations in paragraph 2.22 of the Complaint not otherwise specifically admitted herein.

34. These Defendants deny the allegations in paragraph 2.23 of the Complaint.

35. These Defendants deny the allegations in paragraph 2.24 of the Complaint.

36. These Defendants deny the allegations in paragraph 2.25 of the Complaint.

37. Answering paragraph 2.26 of the Complaint, these Defendants admit that Plaintiff claimed that AIA Services was in default, and these Defendants deny all other allegations in paragraph 2.26 of the Complaint not otherwise specifically admitted herein.

38. Answering paragraph 2.27 of the Complaint, these Defendants admit that Plaintiff had never attempted to accelerate any of the indebtedness due under the Promissory Note prior to December 12, 2006, admit that AIA Services continued to make interest payments in an agreed upon amount before and after the date of Plaintiff's original complaint, and deny all other allegations in paragraph 2.27 of the Complaint not otherwise specifically admitted herein

39. Answering paragraph 2.28 of the Complaint, these Defendants state that the Amended Stock Pledge Agreement speaks for itself, and these Defendants deny each and every other allegation in paragraph 2.28 of the Complaint.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 7

Exhibit B

40. Answering paragraph 2.29 of the Complaint, these Defendants admit that Plaintiff attempted to schedule a special shareholder meeting for December 26, 2006, admit that no special shareholder meeting was held on that date, and deny each and every other allegation in paragraph 2.29 of the Complaint.

41. Answering paragraph 2.30 of the Complaint, these Defendants admit that the quoted words are part of one of the sentences of a letter from R. John Taylor to Plaintiff's legal counsel, and deny each and every allegation in paragraph 2.30 of the Complaint

42. Answering paragraph 2.31 of the Complaint, these Defendants admit that Reed Taylor demanded a special shareholder meeting for February 5, 2007, admit that no special shareholder meeting was held on that date, deny that Reed Taylor had a right to call a meeting to vote AIA Insurance Shares, and deny each and every allegation in paragraph 2.31 of the Complaint not otherwise specifically admitted herein

43. These Defendants deny the allegations in paragraph 2.32 of the Complaint.

44. Answering paragraph 2.33 of the Complaint, these Defendants admit that Reed Taylor executed a Consent in Lieu of Special Shareholder Meeting of AIA Insurance, and these Defendants deny each and every allegation in paragraph 2.33 of the Complaint not otherwise specifically admitted herein.

45. Answering paragraph 2.34 of the Complaint, these Defendants admit that AIA Insurance paid $1,510,693.00 to purchase Series C Preferred Shares in AIA Services from Crop USA. These Defendants admit that AIA Services' 401(k) Plan held Preferred C shares. These Defendants deny all other allegations in paragraph 2.34 of the Complaint not otherwise specifically admitted herein

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 8

Exhibit B

46.     Answering paragraph 2.35 of the Complaint, these Defendants admit that John Taylor purchased a parking lot and deny each and every allegation in paragraph 2.35 of the Complaint not otherwise specifically admitted herein.

47.     These Defendants deny the allegations in paragraph 2.36 of the Complaint.

48.     These Defendants deny the allegations in paragraph 2.37 of the Complaint.

49     Answering paragraph 2.38 of the Complaint, these Defendants admit that Reed Taylor executed a Consent in Lieu of Board Meeting on or around February 22, 2007 and that Defendants refused to recognize the Consent as binding on them. These Defendants deny all other allegations in paragraph 2.38 of the Complaint not otherwise specifically admitted herein.

50.     These Defendants deny the allegations in paragraph 2.39 of the Complaint.

51     Answering paragraph 2.40 of the Complaint, these Defendants admit that Freeman and Duclos resigned as members of the Board of Directors of AIA Insurance and AIA Services, admit that John Taylor, as Chairman of the Board of Directors, appointed Connie Taylor and James Beck as directors, and deny all other allegations in paragraph 2.40 of the Complaint not otherwise specifically admitted herein

52.     These Defendants deny the allegation in paragraph 2.41 of the Complaint

53.     Answering paragraph 2.42 of the Complaint, these Defendants admit that Plaintiff has an interest as provided for in the Amended and Restated Security Agreement, which agreement speaks for itself, admit that Plaintiff has demanded that no funds in which he has a security interest should be used to pay the legal fees of any Defendant, but deny all other allegations in paragraph 2.42 of the Complaint not otherwise specifically admitted herein.

54.     These Defendants deny the allegations in paragraph 2.43 of the Complaint.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 9

Exhibit B

55.     Answering paragraph 2.44, these Defendants admit that Crop USA purchased Sound Insurance and deny all other allegations in paragraph 2.44 of the Complaint not otherwise specifically admitted herein.

56.     Answering paragraph 2.45 of the Complaint, these Defendants admit that Global Travel was a tenant in AIA Insurance's office building and that Global Travel has relocated to a different office building, but these Defendants deny all other allegations in paragraph 2.45 of the Complaint not otherwise specifically admitted herein.

57.     These Defendants deny the allegations in paragraph 2.46 of the Complaint.

58      These Defendants deny the allegations in paragraph 2.47 of the Complaint.

59.     Answering paragraph 2.48 of the Complaint, these Defendants allege that AIA Service and AIA Insurance are and were being operated for the benefit of AIA Services and AIA Insurance and deny all other allegations in paragraph 2.48 of the Complaint not otherwise specifically admitted herein.

60.     These Defendants deny the allegations in paragraph 2.49 of the Complaint.

61.     These Defendants deny the allegations in paragraph 2.50 of the Complaint.

62.     These Defendants deny the allegations in paragraph 2.51 of the Complaint.

63.     These Defendants deny the allegations in paragraph 2.52 of the Complaint.

64.     These Defendants deny the allegations in paragraph 2.53 of the Complaint.

65.     These Defendants deny the allegations in paragraph 2.54 of the Complaint

66.     Answering paragraph 2.55 of the Complaint, these Defendants state that the Executive Officer's Agreement speaks for itself, and these Defendants deny all other allegations in paragraph 2.55 of the Complaint not otherwise specifically admitted herein.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 10

Exhibit B

67. These Defendants deny the allegations in paragraph 2.56 of the Complaint.

68. These Defendants deny the allegations in paragraph 2.57 of the Complaint.

69. These Defendants deny the allegations in paragraph 2.58 of the Complaint.

70. Paragraph 2.59 does not state any allegations against these Defendants to which a response is required. To the extent a response is required, these Defendants deny the allegations in paragraph 2.59 of the Complaint.

## FIRST CAUSE OF ACTION
### Breaches of Contract

71. These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs.

72. Answering paragraphs 3.2 through 3.4 of the Complaint, these defendants state that the Promissory Note, Amended Stock Pledge Agreement, Amended Security Agreement, and Restructure Agreement speak for themselves, and these defendants deny all other allegations in paragraphs 3.3 through 3.4 of the Complaint not otherwise specifically admitted herein.

## SECOND CAUSE OF ACTION
### Fraudulent Transfers

73. These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer

74. These Defendants deny all allegations in paragraphs 4.2 through 4.4 of the Complaint.

## THIRD CAUSE OF ACTION
### Misrepresentations/Fraud

75. These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 11

Exhibit B

76. These Defendants deny all allegations in paragraphs 5 2 through 5.4 of the Complaint.

## FOURTH CAUSE OF ACTION
### Conversion

77. These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer.

78 These Defendants deny all allegations in paragraphs 6 2 through 6 3 of the Complaint.

## FIFTH CAUSE OF ACTION
### Alter Ego/Piercing Corporate Veil [sic]

79. These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer.

80. These Defendants deny all allegations in paragraphs 7.2 through 7.5 of the Complaint.

## SIXTH CAUSE OF ACTION
### Constructive Trust

81. These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer.

82. These Defendants deny all allegations in paragraphs 8.2 through 8.4 of the Complaint.

## SEVENTH CAUSE OF ACTION
### Director Liability

83 These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 12

Exhibit B

84. These Defendants deny all allegations in paragraphs 9.2 through 9.4 of the Complaint.

## EIGHTH CAUSE OF ACTION
### Specific Performance

85. These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer

86. These Defendants deny all allegations in paragraphs 10.2 through 10.4 of the Complaint.

## NINTH CAUSE OF ACTION
### Breach of Fiduciary Duties

87. These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer.

88. These Defendants deny all allegations in paragraphs 11.2 through 11.4 of the Complaint.

## TENTH CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing

89. These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer.

90. These Defendants deny all allegations in paragraphs 12.2 through 12.3 of the Complaint

## ELEVENTH CAUSE OF ACTION
### Civil Conspiracy

91. These Defendants incorporate by reference their answers and denials set forth in the preceding paragraphs of this Answer

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 13

Exhibit B

92.    These Defendants deny all allegations in paragraphs 13.2 through 13.3 of the Complaint.

## PRAYER FOR RELIEF

93.    Answering paragraphs 14.1 through 14.41, these Defendants deny that Plaintiff is entitled to any of the relief prayed for in his Complaint.

## THIRD DEFENSE

On July 1, 1996, Plaintiff, AIA Services, and Donna J. Taylor entered into a Series A preferred Shareholder Agreement, which provides that no principal payments may be made by AIA Services to Plaintiff until the entire Series A Preferred Stock redemption price due Donna Taylor is paid in full. The redemption price due Donna Taylor has not been paid in full. Therefore, no principal payments are due to Plaintiff.

## FOURTH DEFENSE

At different times since the written agreements were executed, Plaintiff and these Defendants have orally modified the written agreements. The modifications include, without limitation, an agreement that the interest payable to Plaintiff from AIA Services would be paid in installments of $15,000 per month (together with the assumption of responsibility for other expenses). AIA Services has paid Plaintiff the sum of $15,000 per month and has assumed responsibility for the other agreed expenses in accordance with the modified agreements since they were entered into, and Plaintiff has accepted those payments. These Defendants are not in default of the modified agreements.

## FIFTH DEFENSE

Plaintiff's claims are barred by the applicable statute of limitations, including Idaho Code §§ 5-216, 5-218, 5-224, 5-237 and 55-918.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 14

Exhibit B

## SIXTH DEFENSE

Plaintiff is estopped from asserting his claims against these Defendants

## SEVENTH DEFENSE

Plaintiff has waived his right to assert claims against these Defendants

## EIGHTH DEFENSE

Plaintiff's claims against these Defendants are barred by the equitable doctrine of unclean

hands.

## NINTH DEFENSE

Plaintiff's claim in his THIRD CAUSE OF ACTION violates Idaho Rule of Civil

Procedure 9(b).

## TENTH DEFENSE

Plaintiff's claims are barred by the doctrine of laches.

## ELEVENTH DEFENSE

To the extent Plaintiff is attempting to state a claim against AIA Insurance, Inc. for a

shareholder's derivative action, Plaintiff's claims are barred for failure to give the required notice

pursuant to Idaho Code § 30-1-742.

## TWELFTH DEFENSE

Plaintiff's alleged damages are subject to the right of setoff.

## THIRTEENTH DEFENSE

On July 1, 1996, AIA Services Corporation ("Services") and Reed J. Taylor executed a

Stock Redemption Restructure Agreement, Amended and Restated Stock Pledge Agreement, and

related documents restating the 1995 agreements with Reed J. Taylor whereby Services acquired

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 15

Exhibit B

all his outstanding common shares (613,494) in exchange for $7.5 million and (i) three aircraft, (ii) elimination of $570,000 owed to the Company, and (iii) miscellaneous furniture and fixtures.

Revenues of Services and its subsidiaries declined sharply between 1994 and 1996: $36,200,324, $10,996,753 and $9,758,226, respectively.

The basis for the 1996 Stock Redemption Restructure Agreement and related Agreements was that Services and its subsidiaries depended on its ability to sell health and life insurance. Reed J. Taylor sold his controlling interest while Services was losing money and then continued on the Board of Directors and participated in decisions promoting the Company's decline. Neither party, in 1996, could foresee the precipitous decline of Services through government regulation and market change.

With the consent and knowledge of Reed J. Taylor as a member of the Board of Directors of Services:

(a)    The Universe Life Insurance Company ("Universe") entered into a Stipulation and Order of Rehabilitation with the Idaho Department of Insurance in the District Court of the Fourth Judicial District of the State of Idaho ("District Court") on March 5, 1996.

(b)    An Amended Plan of Rehabilitation was approved by the District Court on October 7, 1997. Effective December 1, 1997, through the Amended Plan of Rehabilitation, all of Universe's group health insurance certificate holders were transferred to Trustmark Insurance Company ("Trustmark").

(c)    On December 4, 1998, the District Court issued an Order of Liquidation and placed Universe into liquidation, with assets and liabilities estimated to be $16.1 million and

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 16

Exhibit B

$14.3 million, respectively  A liquidator was appointed to wind down business and pay certificate holders, creditors, and shareholders.

Reed J. Taylor knew and understood that the health insurance business of Services depended upon retention of the policies in Universe and Centennial that were transferred to Trustmark, as well the continued ability to write new health insurance business.

By November 2001, Trustmark determined that it would no longer underwrite individual health insurance and disallowed all new sales.

Reed J. Taylor, based on his intimate involvement with Services, knew and understood that changes in legislative and regulatory framework affecting health insurance laws had substantially and permanently damaged Services' health insurance business

While Reed J. Taylor was sales manager AIA Insurance's commissions declined every year.

Reed J. Taylor has been paid several million dollars in interest and other payments from a company that has suffered unforeseen market consequences and the loss of the consideration for the sale of his stock. Given the unforeseeable supervening consequences, the actions of Reed J. Taylor in the business and/or the substantial sums paid to him, it would be unconscionable to continue to enforce the contracts with Reed J. Taylor. Neither party could have foreseen the changes in regulation and attendant shrinking market of Services and loss of Universe and Centennial. In the alternative, Services is entitled to a setoff equal to the value of Universe at the time of signing the contract with Reed J Taylor.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 17

Exhibit B

## FOURTEENTH DEFENSE

Reed J. Taylor voluntarily relinquished and waived events of default under the Amended Security Agreement and Amended Pledge Agreement, including but not limited to, default or breaches arising from or relating to financial statements, board memberships, or insolvencies or bankruptcies.

## FIFTEENTH DEFENSE

Reed J Taylor voluntarily relinquished the payment provision of this 1996 Promissory and accepted a modified monthly interest payment of $25,000 and future payment of principal upon placement of $60,000,000 in new business evidenced by his conduct, words and acquiesces

## SIXTEENTH DEFENSE

Reed J. Taylor is estopped from claiming a default or breach of the Amended Pledge Agreement or the Amended Security Agreement, including but not limited to alleged defaults related to or arising from financial statements, board membership, or insolvency or bankruptcy, as it would be unconscionable to allow Reed J. Taylor to assert such rights to default based on his prior positions and conduct.

## SEVENTEENTH DEFENSE

Reed J. Taylor represented to AIA Services by his conduct and course of action and silence that he was excusing and waiving any breach of contract by accepting payments of $25,000 a month since 2003; AIA Services relied upon Reed J. Taylor's representation and materially changed its position to its detriment.

## EIGHTEENTH DEFENSE

Plaintiff has failed to join an indispensable party, Donna Taylor.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 18

Exhibit B

## RULE 11 STATEMENT

Defendants have considered and believe that they may have additional defenses but do not have information at this time to assert such additional defenses under Rule 11 of the Idaho Rules of Civil Procedure  Defendants do not intend to waive any such defenses and specifically assert their intention to amend this Answer if, pending research and after discovery, facts come to light giving rise to such additional defenses.

## FIRST COUNTERCLAIM
## BREACH OF FIDUCIARY DUTY

Defendants/Counterclaimants AIA Insurance, Inc. and AIA Services Corporation, by way of counterclaim against Plaintiff/Counterdefendant Reed Taylor, allege and complain as follows:

1.    In 1995, Plaintiff was the majority shareholder of AIA Services.  AIA Services was the sole shareholder of AIA Insurance

2.    In 1995, AIA Services redeemed Plaintiff's interest in AIA Services through a corporate redemption of the Plaintiff's stock.

3.    After the purchase of Plaintiff's stock, Plaintiff intentionally, as a major creditor of AIA Services, a Director of both entities, and Sales Manager of AIA Insurance, Inc., undertook a course of action which injured AIA Insurance and devalued the businesses of AIA Services.  Plaintiff's intentional course of action included intimidating and interfering with the management and inducing AIA Insurance employees and agents to terminate their employment and contracts with AIA Insurance and to accept employment and contracts with Plaintiff and/or organizations controlled by him  Plaintiff, with the former employees and former agents of AIA Insurance, engaged in business competitive with AIA Insurance which

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 19

Exhibit B

seriously damaged the business and value of AIA Insurance and the value of the businesses of AIA Services.

4. Because of Plaintiff's interference with AIA Services' business relationships, AIA Services was unable to pay Plaintiff all of the amounts of money due at times due, prior to the amendment of the agreements. Before the agreements were amended in 2003, Plaintiff threatened to sue AIA Services and to foreclose and take over AIA Insurance and threatened and coerced Defendants into employing friends and relatives of Plaintiff and paying Plaintiff's friends and relatives salaries and compensation substantially in excess of the value of their services. Plaintiff also told those friends and relatives that they were not obligated to report to or take direction from AIA's management.

5. Plaintiff has intentionally breached his fiduciary duty as a Director of AIA Services and as an Officer of AIA Insurance, Inc., damaging Defendants in amounts to be proved at trial.

6. Based on the conduct of Reed J. Taylor alleged in this First Counterclaim, Defendants will seek amendment of its prayer for relief and are entitled to punitive damages pursuant to I.C. 6-1604.

**SECOND COUNTERCLAIM**
**BAD FAITH BREACH OF IMPLIED COVENANT**
**OF GOOD FAITH AND FAIR DEALING**

1. There is implied in every contract a covenant of good faith and fair dealing.

2. On July 1, 1996, AIA Services Corporation, Reed Taylor and Donna J. Taylor executed a Stock Redemption Restructure Agreement.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 20

Exhibit B

2 SER 356

(a)    The recitals of this Agreement provided "the Series A Preferred Shareholder would have her stock in company redeemed in accordance with a specified payment plan, and that certain payments to creditor under the original document would be subordinated to the company's obligation to pay Series A Preferred Shareholder  Concurrent with this Agreement, creditor, company and Series A Preferred Shareholder have entered into an agreement ("Series A Preferred Shareholder Agreement") which supersedes and replaces the Series A Preferred Shareholder Letter Agreements."

(b)    According to Section 1.8 of the Agreement, a subordination agreement with the Series A Shareholder would be executed concurrently with the Agreement whereby Reed agreed to subordinate AIA Services' $6,000,000 Promissory Note for the redemption of Reed's stock of Services to the full payment of the Series A Preferred Stockholder, Donna J. Taylor.

(c)    The Parties executed the Series A Preferred Shareholder Agreement (Exhibit G) on July 1, 1996.

3.    Payments to the Series A Preferred Shareholder by AIA Services are continuing on a monthly basis.

4     The Series A Preferred Shareholder has not declared a default in the payments to her under the 1996 Series A Preferred Shareholder Agreement.

5.    Reed J. Taylor knew and understood in 1996 that the payment of principal to him on the $6 million Note would be subordinated in full to the company's obligation to first redeem the Series A Preferred Stock in full.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC 'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 21

Exhibit B

6.    In December 2006, Reed J. Taylor, without the consent or knowledge of AIA Services, persuaded Donna J. Taylor to execute a Subordination Agreement, whereby AIA Services' obligation owing to Donna Taylor for the redemption of the Series A Preferred Shares would be subordinated to the debt owed by AIA Services to Reed J Taylor for the redemption of his common stock.

7.    On February 22, Reed J. Taylor executed a Consent in Lieu of Special Shareholder Meeting of AIA Services and allegedly removed John Taylor, JoLee Duclos and Bryan Freeman from the Board of Directors and appointed himself as sole Board member.

8.    Reed J. Taylor then broke into the offices of AIA Services in the early morning of Sunday, February 25, 2007, and attempted to take over the offices and books and records of AIA Services.

9.    Reed J. Taylor acted in bad faith and used the 2006 Subordination Agreement with Donna Taylor in order to manufacture an alleged default of non-payment of principal under the Stock Redemption Restructure Agreement, Amended Pledge Agreement, and Amended Security Agreement of 1996 to take over AIA Services

10.    Based on the conduct of Reed Taylor alleged in this Second Counterclaim, Defendants will seek amendment of its prayer for relief and are entitled to an award of punitive damages pursuant to IC § 6-1604.

## THIRD COUNTERCLAIM
## BREACH OF CONTRACT

1.    Defendants/Counterclaimants reallege and incorporate by reference paragraphs 1-9 verbatim of the Second Counterclaim as if set forth in full herein

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 22

Exhibit B

2.    As part of the consideration for the Stock Redemption Restructure Agreement of 1996, Reed Taylor agreed to subordinate the payment of principal on the $6,000,000 Promissory Note to Reed until the Series A Preferred Shareholder is paid in full.

3.    Reed Taylor has breached the Stock Redemption Restructure Agreement and has damaged AIA Services.

4.    AIA alleges that the 2006 subordination agreement should be voided and adjudged invalid, restoring the subordination provisions of the 1996 Series A Preferred Stockholder Agreement as written.

## FOURTH COUNTERCLAIM
## INJUNCTIVE RELIEF

1.    On Sunday morning, February 25, 2007, without notice to any Defendants, Plaintiff and several other individuals entered the offices of AIA Insurance and AIA Services at 111 Main Street, Lewiston, Idaho.

2.    Accompanying Plaintiff and conspirators was a locksmith whom Plaintiff directed to begin to change the locks on the offices of AIA Services and AIA Insurance for the purpose of preventing access to those offices by their current management and employees.

3.    The action and conduct of Plaintiff and his associates constitute a trespass upon the property of AIA Services and AIA Insurance, which, if it had been successful, would have caused irreparable injury to both AIA Services and AIA Insurance.

4.    Plaintiff should be enjoined from harassing and/or interfering with the management of AIA Insurance and AIA Services. Plaintiff should be enjoined from entering upon the premises of AIA Insurance and AIA Services without the express permission of these Defendants. Plaintiff should be enjoined from acting or attempting to act as a Director or officer

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 23

Exhibit B

of AIA Insurance. Plaintiff should be enjoined from harassing or annoying, directly or indirectly, any employee of AIA Services or AIA Insurance in person, by telephone, or by written communications

## FIFTH COUNTERCLAIM
## RESCISSION OF 1996 STOCK REDEMPTION RESTRUCTURE AGREEMENT AND 1995 STOCK REDEMPTION AGREEMENT

1. On July 22, 1995, AIA Services and Reed J. Taylor executed a Stock Redemption Agreement which provided for the redemption of 613,494 shares of common stock of AIA Services Corporation ("AIA Services"), payable in the form of a short term $1,500,000 down payment note and a long term note payable to Reed in the amount of $6,000,000, subordinated however to the redemption of the Series A Preferred Stock to the preferred stockholder, Donna J. Taylor Concurrent with the execution of the Stock Redemption Agreement, thereto AIA Services and Reed Taylor executed a Promissory Note payable to Reed Taylor in the principal amount of $6 million dated August 1, 1995. This Promissory Note states:

> The Note is subordinate to the payment of the redemption obligations owed by Company to Donna Taylor pursuant to that certain Letter Agreement dated January 11, 1995, signed by Company, Payee Donna Taylor and Cumer Green

The January 11, 1995 Letter Agreement was executed by AIA Services, Reed J. Taylor and Donna J Taylor. The January 11, 1995 Letter Agreement provided:

> Further, AIA Services Corporation's Note or any note payable to Reed J. Taylor for the $6 million purchase price for his common shares will be subordinated to the redemption rights of your client so that Reed J. Taylor will receive no principal payments on said Note until Donna Taylor's stock has been properly redeemed. Reed J. Taylor will receive no interest payments on the Note payable to him if payments to Donna Taylor are in default.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 24

Exhibit "B"

The 1995 Letter Agreement was integral to and legally permitted Reed Taylor's redemption of his common stock in the 1995 Stock Redemption Agreement.

2.    On July 1, 1996, AIA Services, Reed Taylor and Donna J. Taylor executed a Stock Redemption Restructure Agreement which provided for:

(a)    Adjusting the principal amount of the down payment note, extending its maturity date and providing for interest to accrue on the principal balance of the down payment note, requiring payments of principal and interest under the down payment note, and providing for security for payment of the down payment note;

(b)    Terminating the 1995 Consulting Agreement, revising the 1995 Noncompetition Agreement, and terminating the Company's obligation to pay Reed Taylor a monthly salary;

(c)    Amending the terms of the 1995 Security Agreement and 1995 Stock Pledge Agreement;

(d)    Revising certain representations and warranties and covenants in the 1995 Stock Redemption Agreement; and

(e)    Simplifying and consolidating various default provisions.

In exchange for restructuring the Company's obligations to Reed Taylor, Reed agreed to waive and to forbear from exercising any remedies he may have for any existing defaults under the original 1995 documents. Also the parties executed a Series A Preferred Shareholder Agreement replacing the Series A Shareholder Letter Agreements.

3.    (a)    The recitals of this 1996 Restructure Agreement provided "the Series A Preferred Shareholder would have her stock in company redeemed in accordance with a

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 25

Exhibit B

specified payment plan, and that certain payments to creditor under the original document would be subordinated to AIA Services' obligation to pay Series A Preferred Shareholder  Concurrent with this Agreement, creditor, company and Series A Preferred Shareholder have entered into an agreement ("Series A Preferred Shareholder Agreement") which supersedes and replaces the Series A Preferred Shareholder Letter Agreements."

(b)     According to Section 1.8 of the 1996 Restructure Agreement, a subordination agreement with the Series A Shareholder would be executed concurrently with the Agreement.

(c)     The Parties contemporaneously executed the Series A Preferred Shareholder Agreement (Exhibit G) on July 1, 1996 subordinating the principal payments to Reed J. Taylor on the $6,000,000 Promissory Note.  Reed J Taylor agreed to complete subordination of principal payments until the Series A redemption was completed.

4.     Payments to the Series A Preferred Shareholder by AIA Services are continuing on a monthly basis

5.     The Series A Preferred Shareholder has not declared a default in the payments to her under the 1996 Series A Preferred Shareholder Agreement.

6     Reed J. Taylor knew and understood that the 1995 Stock Redemption subordinated both principal and interest payments and the 1996 Stock Redemption Restructure Agreement principal of the $6 Million Promissory Note and 1996 that the payment would be subordinated in full to the company's obligation to redeem the Series A Preferred Stock first.

7.     On December 1, 2006, Reed J. Taylor, without the consent or knowledge of AIA Services, persuaded Donna J. Taylor to execute a two party Subordination Agreement,

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 26

Exhibit B

whereby the debt owing to Donna Taylor from redemption of the Series A Preferred Shares to AIA Services would be subordinated to all the debt owed by AIA Services to Reed J. Taylor.

(a)    The Subordination Agreement executed on December 1, 2006, expressly rescinded the subordination provisions of the 1996 Series A Preferred A Shareholder Agreement, the 1996 Stock Redemption Restructure Agreement, the 1995 Stock Redemption Agreement, and the January 11, 1995 Letter Agreement incorporated into AIA Services' $6,000,000 Promissory Note payable to Reed:

> "The effect of this Agreement shall be to permit Reed to collect, litigate, obtain judgment, and/or enforce any and all rights and remedies which relate in any way to the $6 million Promissory Note, plus all accrued interest, costs, expenses and attorneys fees owed to Reed through the various agreements set forth in Section 2 below. This Agreement may result in Reed obtaining payment, assets, and/or judgments which represent some of all of the amounts owed by him, while Donna's rights <u>will be junior inferior to Reed</u> ... (emphasis supplied)

(b)    Reed J. Taylor in the December 1, 2006 Subordination Agreement expressly abrogated all of Donna Taylor's rights to priority of payment of the Series A Preferred Stock Redemption price including all prior agreements relating back to the 1996 Stock Redemption Restructure Agreement, the 1995 Stock Redemption Agreement and the January 11, 1995 Letter Agreement and expressly rescinded the Series A Preferred Shareholder Agreement of 1996:

> Donna expressly subordinates all amounts, rights, obligations and remedies owed to her in favor of (and junior to) Reed J. Taylor under the following agreements (including all claims, remedies, rights, under such agreements):
>
> (a) $6 million Promissory Note between Reed and AIA Services Corporation ("AIA Services") dated August 1, 1995; (b) Stock Redemption Restructure Agreement between Reed, Donna and

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 27

Exhibit "B"

AIA Services dated July 1, 1996; (c) Amended and Restated Stock Pledge Agreement between AIA Services and Reed dated July 1, 1996; (d) Amended and Restated Security Agreement between AIA Services, AIA Insurance, Inc., and Reed dated July 1, 1996; (e) Letter between Reed, R. John Taylor and Donna dated February 27, 2001; (f) Series A. Preferred Shareholder Agreement between AIA Services, and Reed dated July 1, 1996; and (g) Any other agreement, contract or promise of any kind or nature (emphasis supplied).

8. On February 22, Reed J. Taylor executed a Consent in Lieu of Special Shareholder Meeting of AIA Services and allegedly removed John Taylor, JoLee Duclos and Bryan Freeman from the Board of Directors and appointed himself as sole Board member.

9. Reed J. Taylor then broke into the offices of AIA Services in the early morning of Sunday, February 25, 2007, and attempted to take over the offices and books and records of AIA Services.

10 Reed J. Taylor in bad faith used the December 1, 2006 Subordination Agreement with Donna Taylor in order to manufacture an alleged default against AIA Services of non-payment of principal under the Stock Redemption Restructure Agreement, Amended Pledge Agreement, and Amended Security Agreement of 1996 to take over AIA Insurance based on a secret nullification and rescission of the Series A Shareholder Agreement of 1996 and the January 11, 1995 Shareholder Letter Agreement

11. Plaintiff asserts that the December 1, 2006 Subordination Agreement between Reed J. Taylor and Donna Taylor is effective and enforceable as against Defendants, notwithstanding that the Agreement was obtained without the knowledge or consent of AIA Services.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 28

Exhibit B

12.     The Series A Preferred Shareholder Agreement dated July 1, 1996 is an integral part of the Stock Redemption Restructure Agreement of 1996 and was material consideration for AIA Services executing the Stock Redemption Restructure Agreement of 1996   Section 8(g) of the Series A Preferred Shareholder Agreement provides in part:

> Each provision of this Agreement is interdependent with and inseparable from every other provision hereof; and each covenant is given in consideration of every other covenant herein.  If any provision of this Agreement is invalid, illegal, unenforceable or inapplicable to any person or circumstance to which it is intended to be applicable, in whole or in part this entire Agreement shall be void.

Because of the actions and conduct of Reed J. Taylor and as a result of the December 1, 2006 Agreement, an essential and inseparable provisions of the Series A Preferred Shareholder Agreement have been rescinded resulting in a failure of consideration; and by its terms the Series A Preferred Shareholder Agreement of 1996 is void.  Voiding the Series A Preferred Shareholder Agreement of 1996 by Reed J Taylor also effectively rescinds the 1995 Stock Redemption Agreement for failure of material consideration on which the Redemption Agreement was based.

13.     The January 11, 1995 Shareholder Letter Agreement was material consideration for AIA Services executing the 1995 Shareholder Redemption Agreement and was integral to the execution of the 1995 Shareholder Redemption Agreement and the delivery of the $6 million Promissory Note (Promissory Note) to Reed J. Taylor.  The Promissory Note expressly refers to and incorporates the January 11, 1995 Shareholder Letter Agreement subordination set forth in the January 11, 1995 Shareholder Letter Agreement. Reed J Taylor agreed to the complete subordination of principal and interest payments on Services' $6,000,000 Promissory Note payable to Reed until the Series A Preferred shares were redeemed completely.  Because of the

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 29

Exhibit B

actions and conduct of Reed J. Taylor, the January 11, 1995 Shareholder Letter Agreement has been nullified and rescinded by the express terms of the Subordination Agreement of December 1, 2006. The rescission of the January 11, 1995 Shareholder Letter by Reed J. Taylor effectively rescinds the 1995 Stockholder Redemption Agreement for failure of material consideration on which the Redemption Agreement was based.

14. Defendant/Counterclaimants allege and claim that the Stock Redemption Restructure Agreement in 1996, the Stock Redemption Agreement of 1995, the January 11, 1995 Letter Agreement and the $6M Note have been rescinded through the deceitful course of conduct and action by Reed J Taylor.

15. AIA Services hereby tenders to Reed J Taylor the equivalent of 613,494 shares of AIA Services Corporation common stock conditioned upon (and AIA Services hereby demands) repayment by Reed of all amounts paid to Reed or on his behalf pursuant to the rescinded agreements.

## SIXTH COUNTERCLAIM
## TRESPASS

1. In the early morning hours of Sunday, February 25, 2007, Plaintiff and several of his associates entered the offices of AIA Services and AIA Insurance without notice and without permission, which constitutes an intentional trespass on the property of AIA Services and AIA Insurance, which causes those corporations damages in amounts which will be proved at trial

2. Based on the conduct described in the preceding counterclaim Plaintiffs are entitled to an award of punitive damages and will seek permission to amend its property for relief pursuant to I.C 6-1604

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 30

Exhibit B

## ATTORNEYS' FEES

These Defendants have been required to retain the services of Hawley Troxell Ennis & Hawley LLP and are entitled to an award of attorneys' fees pursuant to Idaho Code §§ 12-120, 12-121, and/or other applicable law.

## NOTICE OF INTENT TO AMEND

These Defendants hereby give notice of their intent to amend this Answer and Counterclaim to add additional claims, defenses and counterclaims, including a claim for punitive damages, as discovery is conducted

## PRAYER FOR RELIEF

WHEREFORE, these Defendants request the Court:

1. To dismiss the Fifth Amended Complaint with prejudice;

2. To award these Defendants damages on their Counterclaims in the amounts to be proven at trial for trespass and breach of contract;

3. To enter a judgment voiding the 2006 subordination agreement;

4. To enter an injunctive relief as set forth in these Defendants' Fourth Counterclaim;

5. To enjoin this Plaintiff from harassing and/or interfering with the management of AIA Insurance and AIA Services, and to enjoin the Plaintiff from entering upon the premises of AIA Insurance and AIA Services without the express permission of these Defendants, and to enjoin the Plaintiff from acting or attempting to act as a Director or officer of AIA Insurance, and to enjoin the Plaintiff from harassing or annoying, directly or indirectly, any employee of AIA Services or AIA Insurance in person, by telephone, or by written communications.

6. To enter an order:

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 31

Exhibit B

(a)    That Reed J Taylor by executing the December 1, 2006 Subordination Agreement rescinded and nullified the 1996 Preferred Series A Shareholder Agreement, and that the 1996 Stock Redemption Restructure Agreement is void for failure of material consideration upon which the redemption was based;

(b)    That Reed Taylor by executing the December 1, 2006 Subordination Agreement rescinded the January 11, 1995 Shareholder Letter Agreement and that the 1995 Stock Redemption Agreement is void for failure of material consideration upon which the redemption was based;

(c)    That Reed J. Taylor repay to AIA Services all sums plus interest paid to him including the value of personal property transferred to him relating or incident to the 1996 Stock Redemption Restructure Agreement and the 1995 Stock Redemption Agreement; and

(d)    Upon repayment of sums in paragraph (c), the AIA Services restore all common stock formerly held by Reed J. Taylor taking into consideration stock increases or decreases.

7.    For punitive damages as may be allowed.

8    For all costs and attorney fees as provided by contract or statute, including Idaho Code § 12-120 and § 12-121 or other applicable law

9.    For such other and further relief as the Court may find just and proper in the circumstances.

## DEMAND FOR JURY TRIAL

AIA Services Corporation and AIA Insurance, Inc. hereby demand a trial by a jury of twelve (12).

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 32

Exhibit "B"

DATED THIS _07_ day of March, 2008.

HAWLEY TROXELL ENNIS & HAWLEY LLP

By_____
Gary D. Babbitt ISB No. 1486
Attorneys for Defendants AIA Services
Corporation, AIA Insurance, Inc.

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST
AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT,
COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 33

Exhibit B

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this *07* day of March, 2008, I caused to be served a true copy of the foregoing AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL by the method indicated below, and addressed to each of the following:

Roderick C. Bond
Ned A. Cannon
Smith, Cannon & Bond PLLC
508 Eighth Street
Lewiston, ID 83501
[Attorneys for Plaintiff]

_____ U.S. Mail, Postage Prepaid
_____ Hand Delivered
_____ Overnight Mail
_____ Telecopy
__✓__ Email

David A. Gittins
Law Office of David A. Gittins
P.O. Box 191
Clarkston, WA 99403
[Attorney for Defendants Duclos and Freeman]

_____ U.S. Mail, Postage Prepaid
_____ Hand Delivered
_____ Overnight Mail
_____ Telecopy
__✓__ Email

Michael E. McNichols
Clements Brown & McNichols
321 13th Street
Lewiston, ID 83501
[Attorneys for Defendant R. John Taylor]

_____ U.S. Mail, Postage Prepaid
_____ Hand Delivered
_____ Overnight Mail
_____ Telecopy
__✓__ Email

Jonathan D. Hally
Clark & Feeney
P.O. Box 285
Lewiston, ID 83501
[Attorneys for Defendants Connie Taylor, James Beck and Corrine Beck]

_____ U.S. Mail, Postage Prepaid
_____ Hand Delivered
_____ Overnight Mail
_____ Telecopy
__✓__ Email

James J. Gatziolis
Charles E. Harper
QUARLES & BRADY LLP
500 West Madison Street, Suite 3700
Chicago, Illinois 60661-2511
[Attorneys for Crop USA Insurance]

_____ U.S. Mail, Postage Prepaid
_____ Hand Delivered
_____ Overnight Mail
_____ Telecopy
__✓__ Email

Gary D. Babbitt

AIA SERVICES CORPORATION'S AND AIA INSURANCE INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT, COUNTERCLAIM, AND DEMAND FOR JURY TRIAL - 34

Exhibit B

## SHAREHOLDER DEMAND

The undersigned shareholder(s), as an owner(s) of record or beneficial holder(s) of preferred and/or common shares in AIA Services Corporation, hereby makes the following Shareholder Demand upon AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc. (collectively "Company") and the Company's Boards of Directors (this Demand also constitutes a derivative demand and double derivative demand) (collectively "Demand"):

1.      That R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, JoLee Duclos and Aimee Gordon be barred from serving as directors or officers of the Company based upon the ongoing malfeasance, conflicts of interest, failure to act in good faith, breaches of fiduciary duties (including the duties of loyalty, care and good faith) and other acts and/or omissions committed under their direction, participation and/or acquiescence, including, without limitation, those acts and/or omissions identified in the First Amended Complaint in *Donna J. Taylor v. Hawley Troxell Ennis & Hawley, R. John Taylor, Michael Cashman, James Beck, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case"), which said First Amended Complaint is incorporated by reference herein, and that legal action be taken against them.

2.      That Paul D. Durant be appointed as a director of AIA Services Corporation as requested and duly authorized and appointed by the sole Series A Preferred Shareholder of the Company, Donna J. Taylor.

3.      That Paul D. Durant be appointed as the President of AIA Services Corporation and AIA Insurance, Inc., to be duly compensated, and to operate those entities in the best interests of the corporations and their shareholders (with an emphasis on recovering damages and sums from majority shareholder R. John Taylor and Connie Taylor Henderson and others for the benefit of the corporations and their innocent shareholders) and to retain and/or terminate such employee(s) and/or officer(s) as he deems appropriate to properly operate the corporations and pursue any claims set forth in the First Amended Complaint in the Federal Court Case and similar or other claims against named and unnamed parties. Mr. Durant should also be authorized to appoint other parties to the Board of Directors to serve until the next annual meeting as provided under the Restated Bylaws.

4.      That the Company (regardless of Mr. Durant's appointment as an officer or director of the Company), and Paul D. Durant if appointed as an director and/or officer, be authorized to pursue the claims and causes of action identified in the First Amended Complaint filed in the Federal court Case through the date of this Demand and for all related acts after the date of this Demand, including, without limitation, requesting and praying for punitive damages against the parties named in the Federal Court Case and any other responsible parties named in this Demand. A copy of said First Amended Complaint is incorporated by reference herein and is already in the possession of the Company and its purported officers and purported directors (a copy can also be obtained from PACER (the online filing system for the United States District Court for the District of Idaho)).

5.      That the Company refrain from pursuing a reverse stock split (which violates Articles 4.2.9(f), 4.3.3 and 11 of the Company's amended articles of incorporation and the Company's Restated Bylaws) or any other corporate action which is not in the best interests of the Company's preferred shareholders and minority shareholders or otherwise violates the Company's articles of incorporation, restated bylaws and/or Idaho law (including oppressive conduct and breaches of fiduciary duties). That any and all shares held by R. John Taylor and/or Connie Taylor Henderson be barred and disqualified from voting on the reverse stock split since that transaction is preferential to them and is being pursued without full disclosure.

1

Exhibit 41 - Page - 1

2 SER 370

6.    That the Company demand repayment of, and refrain from paying or advancing, any sums or assets for the payment of all attorneys' fees, expert witness fees, costs and expenses paid, advanced or lent by the Company for JoLee Duclos, R. John Taylor, Connie Taylor Henderson, James Beck, Corrine Beck, Michael Cashman, Jane Doe Cashman, and CropUSA Insurance Agency, Inc.

7.    That Paul D. Durant be authorized to appoint persons to committee(s) of the Board of Directors of the Company, with each committee comprised of at least two (2) of the minority shareholders of the Company to be determined in Mr. Durant's sole discretion and at least one (1) outside and independent person (or more should Mr. Durant desire).  Said committee(s) should be used by Mr. Durant, in his discretion, to govern the Company and to maximize the value of the Company's shareholders and to wind up the affairs of the Company should no new viable businesses be obtained and the assets and funds used to pay creditors, preferred shareholders and distributed to common shareholders. Mr. Durant should be authorized to obtain approval for any acts from the Judge in the Federal Court Case or other court of competent jurisdiction to the extent required (including ultimately filing an action or taking action to dissolve the Company once all assets and funds have been identified and recovered or upon court or shareholder approval).

8.    That the Company rescind and/or revoke 818,659 of the common shares held by R. John Taylor and Connie Taylor Henderson as those shares were unlawfully issued by the Company when R. John Taylor violated his Executive Officer's Agreement with Company and they have acted as faithless fiduciaries of the Company (500,000 were granted as an option of the Executive Officers Agreement breached by R. John Taylor) and the other 318,659 shares obtained by R. John Taylor and/or Connie Taylor Henderson from Michael W. Cashman and Corrine M. Beck and/or James Beck were unlawfully issued to them and other former Series C Preferred Shareholders of the Company and are therefore not properly issued shares and those certificates and any subsequent certificates representing those common shares are illegal and void.  The foregoing shares, along with the common shares unlawfully issued to Distribution Services, Inc., Bruce E. Knutson, Charles B. Rapp, Daryl R. Verdoorn and any other commons shares unlawfully issued to the former Series C Preferred Shareholders were illegally issued and void.  The proper rescission and/or revocation of the foregoing shares increases the minority shareholder's ownership interest in the Company, instead of improperly diluting their ownership interest and increasing R. John Taylor and Connie Taylor Henderson's majority interest.

9.    That the Company terminate JoLee Duclos as the trustee of the Company's 401(k) Plan ("Plan") and appoint a disinterested party or person as the trustee of said Plan and that said person be provided full disclosure of all transactions, loans, malfeasance, redemptions, transfers and all other acts and/or omissions of R. John Taylor and JoLee Duclos as the former co-trustees of the Plan.

10.    That the Company rescind and cancel the prior payments for the recent termination of the Employee Stock Ownership Plan of the Company ("ESOP") because the value of said shares cannot be fairly ascertained until the Federal Court Case has been concluded or resolved and other matters and claims resolved by the Company. The participants in the ESOP, like the other common shareholders, should receive the benefit of a fair valuation and/or distribution at the appropriate time.

11.    That Paul D. Durant be authorized to conduct such investigations and retain such services as he deems appropriate and/or necessary pertaining to any and all past transactions, loans, encumbrances, asset sales, share sales or transfers, share redemptions, salaries, payments, exchange offers and/or any other act or omission pertaining to the operations of AIA Services Corporation and AIA Insurance, Inc. and that the Company report said findings to the appropriate authorities and/or State Bar Associations and/or to take such other actions as Mr. Durant deems appropriate and in the best interest of the corporations.

2

Exhibit 41 - Page - 2

12.     That the common shares of R. John Taylor, Connie Taylor Henderson and the other persons and entities identified in Paragraph 8 be barred from voting on any matters relative to the appointment of themselves to the Board of Directors and any other matters in which their shares have a conflict of interest by way of their participation in the malfeasance and/or covering up of the malfeasance against the Company and its other shareholders.

13.     That R. John Taylor, Connie Taylor Henderson, JoLee Duclos, James Beck and Michael Cashman be required to disgorge all compensation, directors fees, indemnification payments or cost advances, benefits, salaries, bonuses, reimbursements, and shares obtained through or from the Company (until the Federal Court Case is resolved) based of them being faithless fiduciaries of the Company.

14.     All actions and demands that are demanded to be taken by Paul Durant are also hereby demanded to be taken by the Company and/or its authorized Board of Directors to the extent persons named in this Demand or others seek to thwart any action by Paul Durant.

15.     That the Company fully disclose all transactions, obligations, loans and footnotes in the recent financial statements provided to shareholders and fully disclose how R. John Taylor, Connie Taylor Henderson and other persons identified in this Demand acquired their respective ownership interests in the entities identified in the footnotes, how the Company's ownership interests were eliminated, transferred or otherwise extinguished and how the transactions, obligations, loans, and share transfers, redemptions and issuances were authorized by the Company, the Company's amended articles of incorporation and restated bylaws.

16.     By making this Demand, the undersigned shareholder(s) does not waive any legal rights or remedies and hereby maintains and asserts that the Company is being irreparably injured and reserves the right to take legal action, without a derivative demand, based upon such irreparable injury.

17.     This Demand may be executed by counterparts and by facsimile and/or pdf attachment, which together shall constitute an original. The undersigned shareholder(s) authorize Dale Miesen or Paul Durant to deliver this Demand to the Company at the time of the shareholder meeting scheduled for July 16, 2012 or anytime before or thereafter.

18.     All further communications to the undersigned shareholder(s) regarding this Demand should be directed to Roderick C. Bond, Roderick Bond Law Office, PLLC, 800 Bellevue Way NE, Suite 400, Bellevue, WA 98004 - Tel: (425) 591-6903 - Fax (425) 321-0343 – Email: rod@roderickbond.com.

Dated this 13 day of July, 2012.

Jud R. Taylor

3

Exhibit 41 - Page - 3

2 SER 372

## SHAREHOLDER DEMAND

The undersigned shareholder(s), as an owner(s) of record or beneficial holder(s) of preferred and/or common shares in AIA Services Corporation, hereby makes the following Shareholder Demand upon AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc. (collectively "Company") and the Company's Boards of Directors (this Demand also constitutes a derivative demand and double derivative demand) (collectively "Demand"):

1.      That R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, JoLee Duclos and Aimee Gordon be barred from serving as directors or officers of the Company based upon the ongoing malfeasance, conflicts of interest, failure to act in good faith, breaches of fiduciary duties (including the duties of loyalty, care and good faith) and other acts and/or omissions committed under their direction, participation and/or acquiescence, including, without limitation, those acts and/or omissions identified in the First Amended Complaint in *Donna J. Taylor v. Hawley Troxell Ennis & Hawley, R. John Taylor, Michael Cashman, James Beck, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case"), which said First Amended Complaint is incorporated by reference herein, and that legal action be taken against them.

2.      That Paul D. Durant be appointed as a director of AIA Services Corporation as requested and duly authorized and appointed by the sole Series A Preferred Shareholder of the Company, Donna J. Taylor.

3.      That Paul D. Durant be appointed as the President of AIA Services Corporation and AIA Insurance, Inc., to be duly compensated, and to operate those entities in the best interests of the corporations and their shareholders (with an emphasis on recovering damages and sums from majority shareholder R. John Taylor and Connie Taylor Henderson and others for the benefit of the corporations and their innocent shareholders) and to retain and/or terminate such employee(s) and/or officer(s) as he deems appropriate to properly operate the corporations and pursue any claims set forth in the First Amended Complaint in the Federal Court Case and similar or other claims against named and unnamed parties. Mr. Durant should also be authorized to appoint other parties to the Board of Directors to serve until the next annual meeting as provided under the Restated Bylaws.

4.      That the Company (regardless of Mr. Durant's appointment as an officer or director of the Company), and Paul D. Durant if appointed as an director and/or officer, be authorized to pursue the claims and causes of action identified in the First Amended Complaint filed in the Federal court Case through the date of this Demand and for all related acts after the date of this Demand, including, without limitation, requesting and praying for punitive damages against the parties named in the Federal Court Case and any other responsible parties named in this Demand. A copy of said First Amended Complaint is incorporated by reference herein and is already in the possession of the Company and its purported officers and purported directors (a copy can also be obtained from PACER (the online filing system for the United States District Court for the District of Idaho)).

5.      That the Company refrain from pursuing a reverse stock split (which violates Articles 4.2.9(f), 4.3.3 and 11 of the Company's amended articles of incorporation and the Company's Restated Bylaws) or any other corporate action which is not in the best interests of the Company's preferred shareholders and minority shareholders or otherwise violates the Company's articles of incorporation, restated bylaws and/or Idaho law (including oppressive conduct and breaches of fiduciary duties). That any and all shares held by R. John Taylor and/or Connie Taylor Henderson be barred and disqualified from voting on the reverse stock split since that transaction is preferential to them and is being pursued without full disclosure.

1

Exhibit 41 - Page - 4

2 SER 373

6.      That the Company demand repayment of, and refrain from paying or advancing, any sums or assets for the payment of all attorneys' fees, expert witness fees, costs and expenses paid, advanced or lent by the Company for JoLee Duclos, R. John Taylor, Connie Taylor Henderson, James Beck, Corrine Beck, Michael Cashman, Jane Doe Cashman, and CropUSA Insurance Agency, Inc.

7.      That Paul D. Durant be authorized to appoint persons to committee(s) of the Board of Directors of the Company, with each committee comprised of at least two (2) of the minority shareholders of the Company to be determined in Mr. Durant's sole discretion and at least one (1) outside and independent person (or more should Mr. Durant desire).  Said committee(s) should be used by Mr. Durant, in his discretion, to govern the Company and to maximize the value of the Company's shareholders and to wind up the affairs of the Company should no new viable businesses be obtained and the assets and funds used to pay creditors, preferred shareholders and distributed to common shareholders. Mr. Durant should be authorized to obtain approval for any acts from the Judge in the Federal Court Case or other court of competent jurisdiction to the extent required (including ultimately filing an action or taking action to dissolve the Company once all assets and funds have been identified and recovered or upon court or shareholder approval).

8.      That the Company rescind and/or revoke 818,659 of the common shares held by R. John Taylor and Connie Taylor Henderson as those shares were unlawfully issued by the Company when R. John Taylor violated his Executive Officer's Agreement with Company and they have acted as faithless fiduciaries of the Company (500,000 were granted as an option of the Executive Officers Agreement breached by R. John Taylor) and the other 318,659 shares obtained by R. John Taylor and/or Connie Taylor Henderson from Michael W. Cashman and Corrine M. Beck and/or James Beck were unlawfully issued to them and other former Series C Preferred Shareholders of the Company and are therefore not properly issued shares and those certificates and any subsequent certificates representing those common shares are illegal and void.  The foregoing shares, along with the common shares unlawfully issued to Distribution Services, Inc., Bruce E. Knutson, Charles B. Rapp, Daryl R. Verdoorn and any other commons shares unlawfully issued to the former Series C Preferred Shareholders were illegally issued and void.  The proper rescission and/or revocation of the foregoing shares increases the minority shareholder's ownership interest in the Company, instead of improperly diluting their ownership interest and increasing R. John Taylor and Connie Taylor Henderson's majority interest.

9.      That the Company terminate JoLee Duclos as the trustee of the Company's 401(k) Plan ("Plan") and appoint a disinterested party or person as the trustee of said Plan and that said person be provided full disclosure of all transactions, loans, malfeasance, redemptions, transfers and all other acts and/or omissions of R. John Taylor and JoLee Duclos as the former co-trustees of the Plan.

10.      That the Company rescind and cancel the prior payments for the recent termination of the Employee Stock Ownership Plan of the Company ("ESOP") because the value of said shares cannot be fairly ascertained until the Federal Court Case has been concluded or resolved and other matters and claims resolved by the Company. The participants in the ESOP, like the other common shareholders, should receive the benefit of a fair valuation and/or distribution at the appropriate time.

11.      That Paul D. Durant be authorized to conduct such investigations and retain such services as he deems appropriate and/or necessary pertaining to any and all past transactions, loans, encumbrances, asset sales, share sales or transfers, share redemptions, salaries, payments, exchange offers and/or any other act or omission pertaining to the operations of AIA Services Corporation and AIA Insurance, Inc. and that the Company report said findings to the appropriate authorities and/or State Bar Associations and/or to take such other actions as Mr. Durant deems appropriate and in the best interest of the corporations.

2

Exhibit 41 - Page - 5

12.     That the common shares of R. John Taylor, Connie Taylor Henderson and the other persons and entities identified in Paragraph 8 be barred from voting on any matters relative to the appointment of themselves to the Board of Directors and any other matters in which their shares have a conflict of interest by way of their participation in the malfeasance and/or covering up of the malfeasance against the Company and its other shareholders.

13.     That R. John Taylor, Connie Taylor Henderson, JoLee Duclos, James Beck and Michael Cashman be required to disgorge all compensation, directors fees, indemnification payments or cost advances, benefits, salaries, bonuses, reimbursements, and shares obtained through or from the Company (until the Federal Court Case is resolved) based of them being faithless fiduciaries of the Company.

14.     All actions and demands that are demanded to be taken by Paul Durant are also hereby demanded to be taken by the Company and/or its authorized Board of Directors to the extent persons named in this Demand or others seek to thwart any action by Paul Durant.

15.     That the Company fully disclose all transactions, obligations, loans and footnotes in the recent financial statements provided to shareholders and fully disclose how R. John Taylor, Connie Taylor Henderson and other persons identified in this Demand acquired their respective ownership interests in the entities identified in the footnotes, how the Company's ownership interests were eliminated, transferred or otherwise extinguished and how the transactions, obligations, loans, and share transfers, redemptions and issuances were authorized by the Company, the Company's amended articles of incorporation and restated bylaws.

16.     By making this Demand, the undersigned shareholder(s) does not waive any legal rights or remedies and hereby maintains and asserts that the Company is being irreparably injured and reserves the right to take legal action, without a derivative demand, based upon such irreparable injury.

17.     This Demand may be executed by counterparts and by facsimile and/or pdf attachment, which together shall constitute an original. The undersigned shareholder(s) authorize Dale Miesen or Paul Durant to deliver this Demand to the Company at the time of the shareholder meeting scheduled for July 16, 2012 or anytime before or thereafter.

18.     All further communications to the undersigned shareholder(s) regarding this Demand should be directed to Roderick C. Bond, Roderick Bond Law Office, PLLC, 800 Bellevue Way NE, Suite 400, Bellevue, WA 98004 - Tel: (425) 591-6903 - Fax (425) 321-0343 – Email: rod@roderickbond.com.

Dated this _12_ day of July, 2012.

_Kay Planchett_
Kay Planchett

3

Exhibit 41 - Page - 6

2 SER 375

## SHAREHOLDER DEMAND

The undersigned shareholder(s), as an owner(s) of record and/or beneficial holder(s) of over $450,000 in Series A Preferred Shares (plus accrued interest and attorneys' fees and costs) and 9,296.5 common shares in AIA Services Corporation, hereby makes the following Shareholder Demand upon AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc. (collectively "Company") and the Company's Boards of Directors (this Demand also constitutes a derivative demand and double derivative demand) (collectively "Demand"):

1.      That R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, JoLee Duclos and Aimee Gordon be barred from serving as directors or officers of the Company based upon the ongoing malfeasance, conflicts of interest, failure to act in good faith, breaches of fiduciary duties (including the duties of loyalty, care and good faith) and other acts and/or omissions committed under their direction, participation and/or acquiescence, including, without limitation, those acts and/or omissions identified in the First Amended Complaint in *Donna J. Taylor v. Hawley Troxell Ennis & Hawley, R. John Taylor, Michael Cashman, James Beck, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case"), which said First Amended Complaint is incorporated by reference herein, and that legal action be taken against them.

2.      That Paul D. Durant be appointed as a director of AIA Services Corporation as requested and duly authorized and appointed by the sole Series A Preferred Shareholder of the Company, Donna J. Taylor.

3.      That Paul D. Durant be appointed as the President of AIA Services Corporation and AIA Insurance, Inc., to be duly compensated, and to operate those entities in the best interests of the corporations and their shareholders (with an emphasis on recovering damages and sums from majority shareholder R. John Taylor and Connie Taylor Henderson and others for the benefit of the corporations and their innocent shareholders) and to retain and/or terminate such employee(s) and/or officer(s) as he deems appropriate to properly operate the corporations and pursue any claims set forth in the First Amended Complaint in the Federal Court Case and similar or other claims against named and unnamed parties.  Mr. Durant should also be authorized to appoint other parties to the Board of Directors to serve until the next annual meeting as provided under the Restated Bylaws.

4.      That the Company (regardless of Mr. Durant's appointment as an officer or director of the Company), and Paul D. Durant if appointed as an director and/or officer, be authorized to pursue the claims and causes of action identified in the First Amended Complaint filed in the Federal court Case through the date of this Demand and for all related acts after the date of this Demand, including, without limitation, requesting and praying for punitive damages against the parties named in the Federal Court Case and any other responsible parties named in this Demand.  A copy of said First Amended Complaint is incorporated by reference herein and is already in the possession of the Company and its purported officers and purported directors (a copy can also be obtained from PACER (the online filing system for the United States District Court for the District of Idaho)).

5.      That the Company refrain from pursuing a reverse stock split (which violates Articles 4.2.9(f), 4.3.3 and 11 of the Company's amended articles of incorporation and the Company's Restated Bylaws) or any other corporate action which is not in the best interests of the Company's preferred shareholders and minority shareholders or otherwise violates the Company's articles of incorporation, restated bylaws and/or Idaho law (including oppressive conduct and breaches of fiduciary duties). That any and all shares held by R. John Taylor and/or Connie Taylor Henderson be barred and disqualified from voting on the reverse stock split since that transaction is preferential to them and is being pursued without full disclosure.

1

Exhibit 41 - Page - 7

**2 SER 376**

6.      That the Company demand repayment of, and refrain from paying or advancing, any sums or assets for the payment of all attorneys' fees, expert witness fees, costs and expenses paid, advanced or lent by the Company for JoLee Duclos, R. John Taylor, Connie Taylor Henderson, James Beck, Corrine Beck, Michael Cashman, Jane Doe Cashman, and CropUSA Insurance Agency, Inc.

7.      That Paul D. Durant be authorized to appoint persons to committee(s) of the Board of Directors of the Company, with each committee comprised of at least two (2) of the minority shareholders of the Company to be determined in Mr. Durant's sole discretion and at least one (1) outside and independent person (or more should Mr. Durant desire).  Said committee(s) should be used by Mr. Durant, in his discretion, to govern the Company and to maximize the value of the Company's shareholders and to wind up the affairs of the Company should no new viable businesses be obtained and the assets and funds used to pay creditors, preferred shareholders and distributed to common shareholders. Mr. Durant should be authorized to obtain approval for any acts from the Judge in the Federal Court Case or other court of competent jurisdiction to the extent required (including ultimately filing an action or taking action to dissolve the Company once all assets and funds have been identified and recovered or upon court or shareholder approval).

8.      That the Company rescind and/or revoke 818,659 of the common shares held by R. John Taylor and Connie Taylor Henderson as those shares were unlawfully issued by the Company when R. John Taylor violated his Executive Officer's Agreement with Company and they have acted as faithless fiduciaries of the Company (500,000 were granted as an option of the Executive Officers Agreement breached by R. John Taylor) and the other 318,659 shares obtained by R. John Taylor and/or Connie Taylor Henderson from Michael W. Cashman and Corrine M. Beck and/or James Beck were unlawfully issued to them and other former Series C Preferred Shareholders of the Company and are therefore not properly issued shares and those certificates and any subsequent certificates representing those common shares are illegal and void.  The foregoing shares, along with the common shares unlawfully issued to Distribution Services, Inc., Bruce E. Knutson, Charles B. Rapp, Daryl R. Verdoorn and any other commons shares unlawfully issued to the former Series C Preferred Shareholders were illegally issued and void.  The proper rescission and/or revocation of the foregoing shares increases the minority shareholder's ownership interest in the Company, instead of improperly diluting their ownership interest and increasing R. John Taylor and Connie Taylor Henderson's majority interest.

9.      That the Company, through Paul D. Durant, if the demand made to appoint him as Director and President of the Company is honored or through the Company and its duly authorized and non-conflicted Board of Directors if that demand is not honored, terminate JoLee Duclos as the trustee of the Company's 401(k) Plan ("Plan") and appoint a disinterested party as the trustee of the Plan and that said successor trustee be provided full disclosure of all transactions, loans, malfeasance, redemptions, transfers and all other acts and/or omissions of R. John Taylor and JoLee Duclos as the former co-trustees of the Plan and JoLee Duclos as former successor trustee and that said newly appointed successor trustee also vote the Series C Preferred Shares hold in the Plan to appoint a director to the Board of Directors of AIA Services to represent the interests of the Series C Preferred Shareholders in the Plan as required Article 4.3.2 of Company's Amended Articles of Incorporation. The undersigned, being a beneficial owner of tens of thousands of dollars in Series C Preferred Shares in the Company, demands that no common shares or fractional common shares be redeemed until all accrued dividends have been paid or the funds set aside as required by Article 4.3.3 of the Company's Amended Articles of Incorporation and further demands that if the value of those shares is less than the face value, plus accrued dividends, then no common shares may be redeemed under any circumstances. Further, no dividends may be paid or declared any common shares or the Series C Preferred Shares nor may any of those shares be redeemed until all of the Series A Preferred Shares have been redeemed since those payments are in arrears, as provided under Articles 4.2.9(f)-(g) & (i), 4.3.3, 4.3.4 and 4.4 of Company's Amended Articles of

2

Exhibit 41 - Page - 8

2 SER 377

Incorporation. The undersigned shareholder is not consenting, acquiescing or authorizing any modification of rights or preferences as provided under Articles 4.2.12 of Company's Amended Articles of Incorporation. As a Series A Preferred Shareholders and Common Stock Shareholder, the undersigned has and will fairly represent all classes of shares and will endeavor to not resolve any claims unless and until a settlement, resolution or judgment is obtained for all classes of Preferred Shares and Common Shares, excluding certain other shareholders (i.e., R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, etc.) who have of participated in, assisted in covering up or otherwise aiding and abetted or committed torts against the Company and/or other preferred and common shareholders.

10.    That the Company rescind and cancel the prior payments for the recent termination of the Employee Stock Ownership Plan of the Company ("ESOP") because the value of said shares cannot be fairly ascertained until the Federal Court Case has been concluded or resolved and other matters and claims resolved by the Company. The participants in the ESOP, like the other common shareholders, should receive the benefit of a fair valuation and/or distribution at the appropriate time.

11.    That Paul D. Durant be authorized to conduct such investigations and retain such services as he deems appropriate and/or necessary pertaining to any and all past transactions, loans, encumbrances, asset sales, share sales or transfers, share redemptions, salaries, payments, exchange offers and/or any other act or omission pertaining to the operations of AIA Services Corporation and AIA Insurance, Inc. and that the Company report said findings to the appropriate authorities and/or State Bar Associations and/or to take such other actions as Mr. Durant deems appropriate and in the best interest of the corporations.

12.    That the common shares of R. John Taylor, Connie Taylor Henderson and the other persons and entities identified in Paragraph 8 be barred from voting on any matters relative to the appointment of themselves to the Board of Directors and any other matters in which their shares have a conflict of interest by way of their participation in the malfeasance and/or covering up of the malfeasance against the Company and its other shareholders.

13.    That R. John Taylor, Connie Taylor Henderson, JoLee Duclos, James Beck and Michael Cashman be required to disgorge all compensation, directors fees, indemnification payments or cost advances, benefits, salaries, bonuses, reimbursements, and shares obtained through or from the Company (until the Federal Court Case is resolved) based of them being faithless fiduciaries of the Company.

14.    All actions and demands that are demanded to be taken by Paul Durant are also hereby demanded to be taken by the Company and/or its authorized Board of Directors to the extent persons named in this Demand or others seek to thwart any action by Paul Durant.

15.    That the Company fully disclose all transactions, obligations, loans and footnotes in the recent financial statements provided to shareholders and fully disclose how R. John Taylor, Connie Taylor Henderson and other persons identified in this Demand acquired their respective ownership interests in the entities identified in the footnotes, how the Company's ownership interests were eliminated, transferred or otherwise extinguished and how the transactions, obligations, loans, and share transfers, redemptions and issuances were authorized by the Company, the Company's amended articles of incorporation and restated bylaws.

16.    By making this Demand, the undersigned shareholder(s) does not waive any legal rights or remedies and hereby maintains and asserts that the Company is being irreparably injured and reserves the right to take legal action, without a derivative demand, based upon such irreparable injury.

3

Exhibit 41 - Page - 9

17.    This Demand may be executed by counterparts and by facsimile and/or pdf attachment, which together shall constitute an original. In the event that the undersigned shareholder does not attend the Company's shareholder meeting, the undersigned shareholder authorize Dale Miesen or Paul Durant to deliver this Demand to the Company at the time of the shareholder meeting scheduled for July 16, 2012 or anytime before or thereafter. This Demand is made effective, however, upon receipt by Company.

18.    Nothing in this Demand should be construed as a waiver or limitation of any claims, causes of action, and/or relief requested presently asserted by the undersigned in the First Amended Complaint in the Federal Court Case.  This Demand is intended to supplement and assert demand for action to pursue claims, causes of action, and damages asserted in the First Amended Complaint and to include causes of action, claims and damages accrued since the undersigned's last demand. By making this Demand, Donna Taylor is also asserting additional claims and relief to add to her claims in the Federal Court Case and to include the presently pled claims and other claims through the present time and/or as set forth above.  Donna Taylor asserts that her presently pled claims have all been adequately covered by her prior derivative demand letters and this Demand is not a waiver of any claims presently pled in the Federal Court Case.

19.    Special Notice Regarding Series A Preferred Shareholder Agreement and Alignment of Interests.  This also serves as notice that the undersigned asserts that the Company is not properly stating the amount owed to her for her Series A Preferred Shares, as indicated in the Company's most recent accounting of the sums owed to her for her Series A Preferred Shares in the Company's purported financial statements (the Company, through its unauthorized present management, has still failed to provide full disclosure to the shareholders). The amount owed to the undersigned exceeds $500,000, excluding attorneys' fees and costs. Notwithstanding other legal arguments, the undersigned asserts that her Series A Preferred Shareholder Agreement is not governed by I.C. § 30-1-6 because her shares are only redeemed as payments are made, and, therefore, the Series A Preferred Shareholder Agreement is governed now by I.C. § 30-1-631 and I.C. § 30-1-640, i.e., the legality is determined based upon when payments are made. Thus, the notes to the Company's year-end 2011 financial statements (which were presumably recently drafted by or through R. John Taylor and are not drafted in accordance with GAP or the disclosures required under the law) are incorrect and any reliance on purported statements from the undersigned's attorneys is misplaced, mistaken and taken out of context, as there is no such agreement that the Series A Preferred Shareholder Agreement is presently illegal. Rather, R. John Taylor and Connie Taylor asserted it was illegal before the district court in Nez Perce County District Court. The undersigned is not waiving or modifying any rights or remedies under the Series A Preferred Shareholder Agreement nor is she waiving any of the present breaches and the attorneys' fees and costs she has incurred or will incur in the future, including, without limitation, the right to demand payment of sums owed to her under the Agreement and/or pursuant to Article 4.2.3 of Company's Amended Articles of Incorporation. The undersigned expressly reserves all rights under the Series A Preferred Shareholder Agreement and the law (including, whether she desires to have the Series A Shareholder Agreement rescinded to permit her to convert the presently owed sums into common shares to maximize her return based upon the damages and punitive damages which may be recovered in the Federal Court Case. All of the innocent minority shareholders who have also asserted demands contemporaneously with this Demand against the Company and others are aware that the undersigned's Series A Preferred Shares take priority over payments and assets, followed by the Series C Preferred Shares, followed lastly by the commons shares.  The undersigned, as a common shareholder and like other innocent common shareholders, has a vested interest in recovering sufficient funds to properly pay the Series A Preferred Shares and Series C Preferred Shares to maximize the recovery received for the innocent minority common shareholders (which include the common shares held by her). The undersigned is simply focusing on recovering all assets and damages for the benefit of all the Company's innocent preferred and common shareholders and will not accept any settlement that does not include the Company's innocent

4

Exhibit 41 - Page - 10

Series C Preferred Shareholders and the innocent common shareholders and defer the determination of the amount each shareholder will receive for a court or the recipients to agree.

20.     All further communications to the undersigned shareholder(s) regarding this Demand should be directed to Roderick C. Bond, Roderick Bond Law Office, PLLC, 800 Bellevue Way NE, Suite 400, Bellevue, WA 98004 - Tel: (425) 591-6903 - Fax (425) 321-0343 – Email: rod@roderickbond.com.

Dated this ⟋5 day of July, 2012.

_____
Donna J. Taylor                    .

5

Exhibit 41 - Page - 11

**2 SER 380**

## SHAREHOLDER DEMAND

The undersigned shareholder(s), as an owner(s) of record or beneficial holder(s) of preferred and/or common shares in AIA Services Corporation, hereby makes the following Shareholder Demand upon AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc. (collectively "Company") and the Company's Boards of Directors (this Demand also constitutes a derivative demand and double derivative demand) (collectively "Demand"):

1.      That R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, JoLee Duclos and Aimee Gordon be barred from serving as directors or officers of the Company based upon the ongoing malfeasance, conflicts of interest, failure to act in good faith, breaches of fiduciary duties (including the duties of loyalty, care and good faith) and other acts and/or omissions committed under their direction, participation and/or acquiescence, including, without limitation, those acts and/or omissions identified in the First Amended Complaint in *Donna J. Taylor v. Hawley Troxell Ennis & Hawley, R. John Taylor, Michael Cashman, James Beck, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case"), which said First Amended Complaint is incorporated by reference herein, and that legal action be taken against them.

2.      That Paul D. Durant be appointed as a director of AIA Services Corporation as requested and duly authorized and appointed by the sole Series A Preferred Shareholder of the Company, Donna J. Taylor.

3.      That Paul D. Durant be appointed as the President of AIA Services Corporation and AIA Insurance, Inc., to be duly compensated, and to operate those entities in the best interests of the corporations and their shareholders (with an emphasis on recovering damages and sums from majority shareholder R. John Taylor and Connie Taylor Henderson and others for the benefit of the corporations and their innocent shareholders) and to retain and/or terminate such employee(s) and/or officer(s) as he deems appropriate to properly operate the corporations and pursue any claims set forth in the First Amended Complaint in the Federal Court Case and similar or other claims against named and unnamed parties. Mr. Durant should also be authorized to appoint other parties to the Board of Directors to serve until the next annual meeting as provided under the Restated Bylaws.

4.      That the Company (regardless of Mr. Durant's appointment as an officer or director of the Company), and Paul D. Durant if appointed as an director and/or officer, be authorized to pursue the claims and causes of action identified in the First Amended Complaint filed in the Federal court Case through the date of this Demand and for all related acts after the date of this Demand, including, without limitation, requesting and praying for punitive damages against the parties named in the Federal Court Case and any other responsible parties named in this Demand. A copy of said First Amended Complaint is incorporated by reference herein and is already in the possession of the Company and its purported officers and purported directors (a copy can also be obtained from PACER (the online filing system for the United States District Court for the District of Idaho)).

5.      That the Company refrain from pursuing a reverse stock split (which violates Articles 4.2.9(f), 4.3.3 and 11 of the Company's amended articles of incorporation and the Company's Restated Bylaws) or any other corporate action which is not in the best interests of the Company's preferred shareholders and minority shareholders or otherwise violates the Company's articles of incorporation, restated bylaws and/or Idaho law (including oppressive conduct and breaches of fiduciary duties). That any and all shares held by R. John Taylor and/or Connie Taylor Henderson be barred and disqualified from voting on the reverse stock split since that transaction is preferential to them and is being pursued without full disclosure.

1

Exhibit 41 - Page - 12

2 SER 381

6.      That the Company demand repayment of, and refrain from paying or advancing, any sums or assets for the payment of all attorneys' fees, expert witness fees, costs and expenses paid, advanced or lent by the Company for JoLee Duclos, R. John Taylor, Connie Taylor Henderson, James Beck, Corrine Beck, Michael Cashman, Jane Doe Cashman, and CropUSA Insurance Agency, Inc.

7      That Paul D. Durant be authorized to appoint persons to committee(s) of the Board of Directors of the Company, with each committee comprised of at least two (2) of the minority shareholders of the Company to be determined in Mr. Durant's sole discretion and at least one (1) outside and independent person (or more should Mr. Durant desire). Said committee(s) should be used by Mr. Durant, in his discretion, to govern the Company and to maximize the value of the Company's shareholders and to wind up the affairs of the Company should no new viable businesses be obtained and the assets and funds used to pay creditors, preferred shareholders and distributed to common shareholders. Mr. Durant should be authorized to obtain approval for any acts from the Judge in the Federal Court Case or other court of competent jurisdiction to the extent required (including ultimately filing an action or taking action to dissolve the Company once all assets and funds have been identified and recovered or upon court or shareholder approval).

8.      That the Company rescind and/or revoke 818,659 of the common shares held by R. John Taylor and Connie Taylor Henderson as those shares were unlawfully issued by the Company when R. John Taylor violated his Executive Officer's Agreement with Company and they have acted as faithless fiduciaries of the Company (500,000 were granted as an option of the Executive Officers Agreement breached by R. John Taylor) and the other 318,659 shares obtained by R. John Taylor and/or Connie Taylor Henderson from Michael W. Cashman, Corrine M. Beck, and/or others were unlawfully issued to them and other former Series C Preferred Shareholders of the Company and are therefore not properly issued shares and those certificates and any subsequent certificates representing those common shares are illegal and void. The foregoing shares, along with the common shares unlawfully issued to Distribution Services, Inc., Bruce E. Knutson, Charles B. Rapp, Daryl R. Verdoorn and any other commons shares unlawfully issued to the former Series C Preferred Shareholders were illegally issued and void. The proper rescission and/or revocation of the foregoing shares increases the minority shareholder's ownership interest in the Company, instead of improperly diluting their ownership interest and increasing R. John Taylor and Connie Taylor Henderson's majority interest.

9.      That the Company, through Paul D. Durant, if the demand made to appoint him as Director and President of the Company is honored or through the Company and its duly authorized and non-conflicted Board of Directors if that demand is not honored, terminate JoLee Duclos as the trustee of the Company's 401(k) Plan ("Plan") and appoint a disinterested party as the trustee of the Plan and that said successor trustee be provided full disclosure of all transactions, loans, malfeasance, redemptions, transfers and all other acts and/or omissions of R. John Taylor and JoLee Duclos as the former co-trustees of the Plan and JoLee Duclos as former successor trustee and that said newly appointed successor trustee also vote the Series C Preferred Shares held in the Plan to appoint a director to the Board of Directors of AIA Services to represent the interests of the Series C Preferred Shareholders in the Plan as required Article 4.3.2 of Company's Amended Articles of Incorporation. The undersigned, being a beneficial owner of tens of thousands of dollars in Series C Preferred Shares in the Company, demands that no common shares or fractional common shares be redeemed until all accrued dividends have been paid or the funds set aside as required by Article 4.3.3 of the Company's Amended Articles of Incorporation and further demands that if the value of those shares is less than the face value, plus accrued dividends, then no common shares may be redeemed under any circumstances.

10.      That the Company rescind and cancel the prior payments for the recent termination of the Employee Stock Ownership Plan of the Company ("ESOP") because the value of said shares cannot be fairly ascertained until the Federal Court Case has been concluded or resolved and other matters and

2

Exhibit 41 - Page - 13

2 SER 382

claims resolved by the Company. The participants in the ESOP, like the other common shareholders, should receive the benefit of a fair valuation and/or distribution at the appropriate time.

11.     That Paul D. Durant be authorized to conduct such investigations and retain such services as he deems appropriate and/or necessary pertaining to any and all past transactions, loans, encumbrances, asset sales, share sales or transfers, share redemptions, salaries, payments, exchange offers and/or any other act or omission pertaining to the operations of AIA Services Corporation and AIA Insurance, Inc. and that the Company report said findings to the appropriate authorities and/or State Bar Associations and/or to take such other actions as Mr. Durant deems appropriate and in the best interest of the corporations.

12.     That the common shares of R. John Taylor, Connie Taylor Henderson and the other persons and entities identified in Paragraph 8 be barred from voting on any matters relative to the appointment of themselves to the Board of Directors and any other matters in which their shares have a conflict of interest by way of their participation in the malfeasance and/or covering up of the malfeasance against the Company and its other shareholders.

13.     That R. John Taylor, Connie Taylor Henderson, JoLee Duclos, James Beck and Michael Cashman be required to disgorge all compensation, directors fees, indemnification payments or cost advances, benefits, salaries, bonuses, reimbursements, and shares obtained through or from the Company (until the Federal Court Case is resolved) based of them being faithless fiduciaries of the Company.

14.     All actions and demands that are demanded to be taken by Paul Durant are also hereby demanded to be taken by the Company and/or its authorized Board of Directors to the extent persons named in this Demand or others seek to thwart any action by Paul Durant.

15.     That the Company fully disclose all transactions, obligations, loans and footnotes in the recent financial statements provided to shareholders and fully disclose how R. John Taylor, Connie Taylor Henderson and other persons identified in this Demand acquired their respective ownership interests in the entities identified in the footnotes, how the Company's ownership interests were eliminated, transferred or otherwise extinguished and how the transactions, obligations, loans, and share transfers, redemptions and issuances were authorized by the Company, the Company's amended articles of incorporation and restated by laws.

16.     By making this Demand, the undersigned shareholder(s) does not waive any legal rights or remedies and hereby maintains and asserts that the Company is being irreparably injured and reserves the right to take legal action, without a derivative demand, based upon such irreparable injury.

17.     This Demand may be executed by counterparts and by facsimile and/or pdf attachment, which together shall constitute an original. The undersigned shareholder(s) authorize Dale Miesen or Paul Durant to deliver this Demand to the Company at the time of the shareholder meeting scheduled for July 16, 2012 or any time before or thereafter.

18.     All further communications to the undersigned shareholder(s) regarding this Demand should be directed to Roderick C. Bond, Roderick Bond Law Office, PLLC, 800 Bellevue Way NE, Suite 400, Bellevue, WA 98004 - Tel: (425) 591-6903 - Fax (425) 321-0343    Email: rod@roderickbond.com.

Dated this __13__ day of July, 2012.

Lee Ann Hostetler

3

Exhibit 41 - Page - 14

2 SER 383

## SHAREHOLDER DEMAND

The undersigned shareholder(s), as an owner(s) of record or beneficial holder(s) of preferred and/or common shares in AIA Services Corporation, hereby makes the following Shareholder Demand upon AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc. (collectively "Company") and the Company's Boards of Directors (this Demand also constitutes a derivative demand and double derivative demand) (collectively "Demand"):

1.      That R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, JoLee Duclos and Aimee Gordon be barred from serving as directors or officers of the Company based upon the ongoing malfeasance, conflicts of interest, failure to act in good faith, breaches of fiduciary duties (including the duties of loyalty, care and good faith) and other acts and/or omissions committed under their direction, participation and/or acquiescence, including, without limitation, those acts and/or omissions identified in the First Amended Complaint in *Donna J. Taylor v. Hawley Troxell Ennis & Hawley, R. John Taylor, Michael Cashman, James Beck, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case"), which said First Amended Complaint is incorporated by reference herein, and that legal action be taken against them.

2.      That Paul D. Durant be appointed as a director of AIA Services Corporation as requested and duly authorized and appointed by the sole Series A Preferred Shareholder of the Company, Donna J. Taylor.

3.      That Paul D. Durant be appointed as the President of AIA Services Corporation and AIA Insurance, Inc., to be duly compensated, and to operate those entities in the best interests of the corporations and their shareholders (with an emphasis on recovering damages and sums from majority shareholder R. John Taylor and Connie Taylor Henderson and others for the benefit of the corporations and their innocent shareholders) and to retain and/or terminate such employee(s) and/or officer(s) as he deems appropriate to properly operate the corporations and pursue any claims set forth in the First Amended Complaint in the Federal Court Case and similar or other claims against named and unnamed parties. Mr. Durant should also be authorized to appoint other parties to the Board of Directors to serve until the next annual meeting as provided under the Restated Bylaws.

4.      That the Company (regardless of Mr. Durant's appointment as an officer or director of the Company), and Paul D. Durant if appointed as an director and/or officer, be authorized to pursue the claims and causes of action identified in the First Amended Complaint filed in the Federal court Case through the date of this Demand and for all related acts after the date of this Demand, including, without limitation, requesting and praying for punitive damages against the parties named in the Federal Court Case and any other responsible parties named in this Demand. A copy of said First Amended Complaint is incorporated by reference herein and is already in the possession of the Company and its purported officers and purported directors (a copy can also be obtained from PACER (the online filing system for the United States District Court for the District of Idaho)).

5.      That the Company refrain from pursuing a reverse stock split (which violates Articles 4.2.9(f), 4.3.3 and 11 of the Company's amended articles of incorporation and the Company's Restated Bylaws) or any other corporate action which is not in the best interests of the Company's preferred shareholders and minority shareholders or otherwise violates the Company's articles of incorporation, restated bylaws and/or Idaho law (including oppressive conduct and breaches of fiduciary duties). That any and all shares held by R. John Taylor and/or Connie Taylor Henderson be barred and disqualified from voting on the reverse stock split since that transaction is preferential to them and is being pursued without full disclosure.

1

Exhibit 41 - Page - 15

2 SER 384

6.  That the Company demand repayment of, and refrain from paying or advancing, any sums or assets for the payment of all attorneys' fees, expert witness fees, costs and expenses paid, advanced or lent by the Company for JoLee Duclos, R. John Taylor, Connie Taylor Henderson, James Beck, Corrine Beck, Michael Cashman, Jane Doe Cashman, and CropUSA Insurance Agency, Inc.

7.  That Paul D. Durant be authorized to appoint persons to committee(s) of the Board of Directors of the Company, with each committee comprised of at least two (2) of the minority shareholders of the Company to be determined in Mr. Durant's sole discretion and at least one (1) outside and independent person (or more should Mr. Durant desire).  Said committee(s) should be used by Mr. Durant, in his discretion, to govern the Company and to maximize the value of the Company's shareholders and to wind up the affairs of the Company should no new viable businesses be obtained and the assets and funds used to pay creditors, preferred shareholders and distributed to common shareholders. Mr. Durant should be authorized to obtain approval for any acts from the Judge in the Federal Court Case or other court of competent jurisdiction to the extent required (including ultimately filing an action or taking action to dissolve the Company once all assets and funds have been identified and recovered or upon court or shareholder approval).

8.  That the Company rescind and/or revoke 818,659 of the common shares held by R. John Taylor and Connie Taylor Henderson as those shares were unlawfully issued by the Company when R. John Taylor violated his Executive Officer's Agreement with Company and they have acted as faithless fiduciaries of the Company (500,000 were granted as an option of the Executive Officers Agreement breached by R. John Taylor) and the other 318,659 shares obtained by R. John Taylor and/or Connie Taylor Henderson from Michael W. Cashman and Corrine M. Beck and/or James Beck were unlawfully issued to them and other former Series C Preferred Shareholders of the Company and are therefore not properly issued shares and those certificates and any subsequent certificates representing those common shares are illegal and void.  The foregoing shares, along with the common shares unlawfully issued to Distribution Services, Inc., Bruce E. Knutson, Charles B. Rapp, Daryl R. Verdoorn and any other commons shares unlawfully issued to the former Series C Preferred Shareholders were illegally issued and void.  The proper rescission and/or revocation of the foregoing shares increases the minority shareholder's ownership interest in the Company, instead of improperly diluting their ownership interest and increasing R. John Taylor and Connie Taylor Henderson's majority interest.

9.  That the Company terminate JoLee Duclos as the trustee of the Company's 401(k) Plan ("Plan") and appoint a disinterested party or person as the trustee of said Plan and that said person be provided full disclosure of all transactions, loans, malfeasance, redemptions, transfers and all other acts and/or omissions of R. John Taylor and JoLee Duclos as the former co-trustees of the Plan.

10.  That the Company rescind and cancel the prior payments for the recent termination of the Employee Stock Ownership Plan of the Company ("ESOP") because the value of said shares cannot be fairly ascertained until the Federal Court Case has been concluded or resolved and other matters and claims resolved by the Company. The participants in the ESOP, like the other common shareholders, should receive the benefit of a fair valuation and/or distribution at the appropriate time.

11.  That Paul D. Durant be authorized to conduct such investigations and retain such services as he deems appropriate and/or necessary pertaining to any and all past transactions, loans, encumbrances, asset sales, share sales or transfers, share redemptions, salaries, payments, exchange offers and/or any other act or omission pertaining to the operations of AIA Services Corporation and AIA Insurance, Inc. and that the Company report said findings to the appropriate authorities and/or State Bar Associations and/or to take such other actions as Mr. Durant deems appropriate and in the best interest of the corporations.

2

Exhibit 41 - Page - 16

2 SER 385

12.    That the common shares of R. John Taylor, Connie Taylor Henderson and the other persons and entities identified in Paragraph 8 be barred from voting on any matters relative to the appointment of themselves to the Board of Directors and any other matters in which their shares have a conflict of interest by way of their participation in the malfeasance and/or covering up of the malfeasance against the Company and its other shareholders.

13.    That R. John Taylor, Connie Taylor Henderson, JoLee Duclos, James Beck and Michael Cashman be required to disgorge all compensation, directors fees, indemnification payments or cost advances, benefits, salaries, bonuses, reimbursements, and shares obtained through or from the Company (until the Federal Court Case is resolved) based of them being faithless fiduciaries of the Company.

14.    All actions and demands that are demanded to be taken by Paul Durant are also hereby demanded to be taken by the Company and/or its authorized Board of Directors to the extent persons named in this Demand or others seek to thwart any action by Paul Durant.

15.    That the Company fully disclose all transactions, obligations, loans and footnotes in the recent financial statements provided to shareholders and fully disclose how R. John Taylor, Connie Taylor Henderson and other persons identified in this Demand acquired their respective ownership interests in the entities identified in the footnotes, how the Company's ownership interests were eliminated, transferred or otherwise extinguished and how the transactions, obligations, loans, and share transfers, redemptions and issuances were authorized by the Company, the Company's amended articles of incorporation and restated bylaws.

16.    By making this Demand, the undersigned shareholder(s) does not waive any legal rights or remedies and hereby maintains and asserts that the Company is being irreparably injured and reserves the right to take legal action, without a derivative demand, based upon such irreparable injury.

17.    This Demand may be executed by counterparts and by facsimile and/or pdf attachment, which together shall constitute an original. The undersigned shareholder(s) authorize Dale Miesen or Paul Durant to deliver this Demand to the Company at the time of the shareholder meeting scheduled for July 16, 2012 or anytime before or thereafter.

18.    All further communications to the undersigned shareholder(s) regarding this Demand should be directed to Roderick C. Bond, Roderick Bond Law Office, PLLC, 800 Bellevue Way NE, Suite 400, Bellevue, WA 98004 - Tel: (425) 591-6903 - Fax (425) 321-0343 – Email: rod@roderickbond.com.

Dated this  _/1_  day of July, 2012.

_____
Dale L. Miesen

3

Exhibit 41 - Page - 17

## SHAREHOLDER DEMAND

The undersigned shareholder(s), as an owner(s) of record or beneficial holder(s) of preferred and/or common shares in AIA Services Corporation, hereby makes the following Shareholder Demand upon AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc. (collectively "Company") and the Company's Boards of Directors (this Demand also constitutes a derivative demand and double derivative demand) (collectively "Demand"):

1.      That R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, JoLee Duclos and Aimee Gordon be barred from serving as directors or officers of the Company based upon the ongoing malfeasance, conflicts of interest, failure to act in good faith, breaches of fiduciary duties (including the duties of loyalty, care and good faith) and other acts and/or omissions committed under their direction, participation and/or acquiescence, including, without limitation, those acts and/or omissions identified in the First Amended Complaint in *Donna J. Taylor v. Hawley Troxell Ennis & Hawley, R. John Taylor, Michael Cashman, James Beck, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case"), which said First Amended Complaint is incorporated by reference herein, and that legal action be taken against them.

2.      That Paul D. Durant be appointed as a director of AIA Services Corporation as requested and duly authorized and appointed by the sole Series A Preferred Shareholder of the Company, Donna J. Taylor.

3.      That Paul D. Durant be appointed as the President of AIA Services Corporation and AIA Insurance, Inc., to be duly compensated, and to operate those entities in the best interests of the corporations and their shareholders (with an emphasis on recovering damages and sums from majority shareholder R. John Taylor and Connie Taylor Henderson and others for the benefit of the corporations and their innocent shareholders) and to retain and/or terminate such employee(s) and/or officer(s) as he deems appropriate to properly operate the corporations and pursue any claims set forth in the First Amended Complaint in the Federal Court Case and similar or other claims against named and unnamed parties.  Mr. Durant should also be authorized to appoint other parties to the Board of Directors to serve until the next annual meeting as provided under the Restated Bylaws.

4.      That the Company (regardless of Mr. Durant's appointment as an officer or director of the Company), and Paul D. Durant if appointed as an director and/or officer, be authorized to pursue the claims and causes of action identified in the First Amended Complaint filed in the Federal court Case through the date of this Demand and for all related acts after the date of this Demand, including, without limitation, requesting and praying for punitive damages against the parties named in the Federal Court Case and any other responsible parties named in this Demand.  A copy of said First Amended Complaint is incorporated by reference herein and is already in the possession of the Company and its purported officers and purported directors (a copy can also be obtained from PACER (the online filing system for the United States District Court for the District of Idaho)).

5.      That the Company refrain from pursuing a reverse stock split (which violates Articles 4.2.9(f), 4.3.3 and 11 of the Company's amended articles of incorporation and the Company's Restated Bylaws) or any other corporate action which is not in the best interests of the Company's preferred shareholders and minority shareholders or otherwise violates the Company's articles of incorporation, restated bylaws and/or Idaho law (including oppressive conduct and breaches of fiduciary duties). That any and all shares held by R. John Taylor and/or Connie Taylor Henderson be barred and disqualified from voting on the reverse stock split since that transaction is preferential to them and is being pursued without full disclosure.

1

Exhibit 41 - Page - 18

2 SER 387

6. That the Company demand repayment of, and refrain from paying or advancing, any sums or assets for the payment of all attorneys' fees, expert witness fees, costs and expenses paid, advanced or lent by the Company for JoLee Duclos, R. John Taylor, Connie Taylor Henderson, James Beck, Corrine Beck, Michael Cashman, Jane Doe Cashman, and CropUSA Insurance Agency, Inc.

7. That Paul D. Durant be authorized to appoint persons to committee(s) of the Board of Directors of the Company, with each committee comprised of at least two (2) of the minority shareholders of the Company to be determined in Mr. Durant's sole discretion and at least one (1) outside and independent person (or more should Mr. Durant desire). Said committee(s) should be used by Mr. Durant, in his discretion, to govern the Company and to maximize the value of the Company's shareholders and to wind up the affairs of the Company should no new viable businesses be obtained and the assets and funds used to pay creditors, preferred shareholders and distributed to common shareholders. Mr. Durant should be authorized to obtain approval for any acts from the Judge in the Federal Court Case or other court of competent jurisdiction to the extent required (including ultimately filing an action or taking action to dissolve the Company once all assets and funds have been identified and recovered or upon court or shareholder approval).

8. That the Company rescind and/or revoke 818,659 of the common shares held by R. John Taylor and Connie Taylor Henderson as those shares were unlawfully issued by the Company when R. John Taylor violated his Executive Officer's Agreement with Company and they have acted as faithless fiduciaries of the Company (500,000 were granted as an option of the Executive Officers Agreement breached by R. John Taylor) and the other 318,659 shares obtained by R. John Taylor and/or Connie Taylor Henderson from Michael W. Cashman and Corrine M. Beck and/or James Beck were unlawfully issued to them and other former Series C Preferred Shareholders of the Company and are therefore not properly issued shares and those certificates and any subsequent certificates representing those common shares are illegal and void. The foregoing shares, along with the common shares unlawfully issued to Distribution Services, Inc., Bruce E. Knutson, Charles B. Rapp, Daryl R. Verdoorn and any other commons shares unlawfully issued to the former Series C Preferred Shareholders were illegally issued and void. The proper rescission and/or revocation of the foregoing shares increases the minority shareholder's ownership interest in the Company, instead of improperly diluting their ownership interest and increasing R. John Taylor and Connie Taylor Henderson's majority interest.

9. That the Company terminate JoLee Duclos as the trustee of the Company's 401(k) Plan ("Plan") and appoint a disinterested party or person as the trustee of said Plan and that said person be provided full disclosure of all transactions, loans, malfeasance, redemptions, transfers and all other acts and/or omissions of R. John Taylor and JoLee Duclos as the former co-trustees of the Plan.

10. That the Company rescind and cancel the prior payments for the recent termination of the Employee Stock Ownership Plan of the Company ("ESOP") because the value of said shares cannot be fairly ascertained until the Federal Court Case has been concluded or resolved and other matters and claims resolved by the Company. The participants in the ESOP, like the other common shareholders, should receive the benefit of a fair valuation and/or distribution at the appropriate time.

11. That Paul D. Durant be authorized to conduct such investigations and retain such services as he deems appropriate and/or necessary pertaining to any and all past transactions, loans, encumbrances, asset sales, share sales or transfers, share redemptions, salaries, payments, exchange offers and/or any other act or omission pertaining to the operations of AIA Services Corporation and AIA Insurance, Inc. and that the Company report said findings to the appropriate authorities and/or State Bar Associations and/or to take such other actions as Mr. Durant deems appropriate and in the best interest of the corporations.

2

Exhibit 41 - Page - 19

12. That the common shares of R. John Taylor, Connie Taylor Henderson and the other persons and entities identified in Paragraph 8 be barred from voting on any matters relative to the appointment of themselves to the Board of Directors and any other matters in which their shares have a conflict of interest by way of their participation in the malfeasance and/or covering up of the malfeasance against the Company and its other shareholders.

13. That R. John Taylor, Connie Taylor Henderson, JoLee Duclos, James Beck and Michael Cashman be required to disgorge all compensation, directors fees, indemnification payments or cost advances, benefits, salaries, bonuses, reimbursements, and shares obtained through or from the Company (until the Federal Court Case is resolved) based of them being faithless fiduciaries of the Company.

14. All actions and demands that are demanded to be taken by Paul Durant are also hereby demanded to be taken by the Company and/or its authorized Board of Directors to the extent persons named in this Demand or others seek to thwart any action by Paul Durant.

15. That the Company fully disclose all transactions, obligations, loans and footnotes in the recent financial statements provided to shareholders and fully disclose how R. John Taylor, Connie Taylor Henderson and other persons identified in this Demand acquired their respective ownership interests in the entities identified in the footnotes, how the Company's ownership interests were eliminated, transferred or otherwise extinguished and how the transactions, obligations, loans, and share transfers, redemptions and issuances were authorized by the Company, the Company's amended articles of incorporation and restated bylaws.

16. By making this Demand, the undersigned shareholder(s) does not waive any legal rights or remedies and hereby maintains and asserts that the Company is being irreparably injured and reserves the right to take legal action, without a derivative demand, based upon such irreparable injury.

17. This Demand may be executed by counterparts and by facsimile and/or pdf attachment, which together shall constitute an original. The undersigned shareholder(s) authorize Dale Miesen or Paul Durant to deliver this Demand to the Company at the time of the shareholder meeting scheduled for July 16, 2012 or anytime before or thereafter.

18. All further communications to the undersigned shareholder(s) regarding this Demand should be directed to Roderick C. Bond, Roderick Bond Law Office, PLLC, 800 Bellevue Way NE, Suite 400, Bellevue, WA 98004 - Tel: (425) 591-6903 - Fax (425) 321-0343 – Email: rod@roderickbond.com.

Dated this 17th day of July, 2012.

_____
Jennifer Miesen
Jennifer Miesen Living Trust

3

Exhibit 41 - Page - 20

## SHAREHOLDER DEMAND

The undersigned shareholder(s), as an owner(s) of record or beneficial holder(s) of preferred and/or common shares in AIA Services Corporation, hereby makes the following Shareholder Demand upon AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc. (collectively "Company") and the Company's Boards of Directors (this Demand also constitutes a derivative demand and double derivative demand) (collectively "Demand"):

1.      That R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, JoLee Duclos and Aimee Gordon be barred from serving as directors or officers of the Company based upon the ongoing malfeasance, conflicts of interest, failure to act in good faith, breaches of fiduciary duties (including the duties of loyalty, care and good faith) and other acts and/or omissions committed under their direction, participation and/or acquiescence, including, without limitation, those acts and/or omissions identified in the First Amended Complaint in *Donna J. Taylor v. Hawley Troxell Ennis & Hawley, R. John Taylor, Michael Cashman, James Beck, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case"), which said First Amended Complaint is incorporated by reference herein, and that legal action be taken against them.

2.      That Paul D. Durant be appointed as a director of AIA Services Corporation as requested and duly authorized and appointed by the sole Series A Preferred Shareholder of the Company, Donna J. Taylor.

3.      That Paul D. Durant be appointed as the President of AIA Services Corporation and AIA Insurance, Inc., to be duly compensated, and to operate those entities in the best interests of the corporations and their shareholders (with an emphasis on recovering damages and sums from majority shareholder R. John Taylor and Connie Taylor Henderson and others for the benefit of the corporations and their innocent shareholders) and to retain and/or terminate such employee(s) and/or officer(s) as he deems appropriate to properly operate the corporations and pursue any claims set forth in the First Amended Complaint in the Federal Court Case and similar or other claims against named and unnamed parties.  Mr. Durant should also be authorized to appoint other parties to the Board of Directors to serve until the next annual meeting as provided under the Restated Bylaws.

4.      That the Company (regardless of Mr. Durant's appointment as an officer or director of the Company), and Paul D. Durant if appointed as an director and/or officer, be authorized to pursue the claims and causes of action identified in the First Amended Complaint filed in the Federal court Case through the date of this Demand and for all related acts after the date of this Demand, including, without limitation, requesting and praying for punitive damages against the parties named in the Federal Court Case and any other responsible parties named in this Demand.  A copy of said First Amended Complaint is incorporated by reference herein and is already in the possession of the Company and its purported officers and purported directors (a copy can also be obtained from PACER (the online filing system for the United States District Court for the District of Idaho)).

5.      That the Company refrain from pursuing a reverse stock split (which violates Articles 4.2.9(f), 4.3.3 and 11 of the Company's amended articles of incorporation and the Company's Restated Bylaws) or any other corporate action which is not in the best interests of the Company's preferred shareholders and minority shareholders or otherwise violates the Company's articles of incorporation, restated bylaws and/or Idaho law (including oppressive conduct and breaches of fiduciary duties). That any and all shares held by R. John Taylor and/or Connie Taylor Henderson be barred and disqualified from voting on the reverse stock split since that transaction is preferential to them and is being pursued without full disclosure.

1

Exhibit 41 - Page - 21

2 SER 390

6.      That the Company demand repayment of, and refrain from paying or advancing, any sums or assets for the payment of all attorneys' fees, expert witness fees, costs and expenses paid, advanced or lent by the Company for JoLee Duclos, R. John Taylor, Connie Taylor Henderson, James Beck, Corrine Beck, Michael Cashman, Jane Doe Cashman, and CropUSA Insurance Agency, Inc.

7.      That Paul D. Durant be authorized to appoint persons to committee(s) of the Board of Directors of the Company, with each committee comprised of at least two (2) of the minority shareholders of the Company to be determined in Mr. Durant's sole discretion and at least one (1) outside and independent person (or more should Mr. Durant desire).  Said committee(s) should be used by Mr. Durant, in his discretion, to govern the Company and to maximize the value of the Company's shareholders and to wind up the affairs of the Company should no new viable businesses be obtained and the assets and funds used to pay creditors, preferred shareholders and distributed to common shareholders. Mr. Durant should be authorized to obtain approval for any acts from the Judge in the Federal Court Case or other court of competent jurisdiction to the extent required (including ultimately filing an action or taking action to dissolve the Company once all assets and funds have been identified and recovered or upon court or shareholder approval).

8.      That the Company rescind and/or revoke 818,659 of the common shares held by R. John Taylor and Connie Taylor Henderson as those shares were unlawfully issued by the Company when R. John Taylor violated his Executive Officer's Agreement with Company and they have acted as faithless fiduciaries of the Company (500,000 were granted as an option of the Executive Officers Agreement breached by R. John Taylor) and the other 318,659 shares obtained by R. John Taylor and/or Connie Taylor Henderson from Michael W. Cashman and Corrine M. Beck and/or James Beck were unlawfully issued to them and other former Series C Preferred Shareholders of the Company and are therefore not properly issued shares and those certificates and any subsequent certificates representing those common shares are illegal and void.  The foregoing shares, along with the common shares unlawfully issued to Distribution Services, Inc., Bruce E. Knutson, Charles B. Rapp, Daryl R. Verdoorn and any other commons shares unlawfully issued to the former Series C Preferred Shareholders were illegally issued and void.  The proper rescission and/or revocation of the foregoing shares increases the minority shareholder's ownership interest in the Company, instead of improperly diluting their ownership interest and increasing R. John Taylor and Connie Taylor Henderson's majority interest.

9.      That the Company terminate JoLee Duclos as the trustee of the Company's 401(k) Plan ("Plan") and appoint a disinterested party or person as the trustee of said Plan and that said person be provided full disclosure of all transactions, loans, malfeasance, redemptions, transfers and all other acts and/or omissions of R. John Taylor and JoLee Duclos as the former co-trustees of the Plan.

10.      That the Company rescind and cancel the prior payments for the recent termination of the Employee Stock Ownership Plan of the Company ("ESOP") because the value of said shares cannot be fairly ascertained until the Federal Court Case has been concluded or resolved and other matters and claims resolved by the Company. The participants in the ESOP, like the other common shareholders, should receive the benefit of a fair valuation and/or distribution at the appropriate time.

11.      That Paul D. Durant be authorized to conduct such investigations and retain such services as he deems appropriate and/or necessary pertaining to any and all past transactions, loans, encumbrances, asset sales, share sales or transfers, share redemptions, salaries, payments, exchange offers and/or any other act or omission pertaining to the operations of AIA Services Corporation and AIA Insurance, Inc. and that the Company report said findings to the appropriate authorities and/or State Bar Associations and/or to take such other actions as Mr. Durant deems appropriate and in the best interest of the corporations.

2

Exhibit 41 - Page - 22

2 SER 391

12.     That the common shares of R. John Taylor, Connie Taylor Henderson and the other persons and entities identified in Paragraph 8 be barred from voting on any matters relative to the appointment of themselves to the Board of Directors and any other matters in which their shares have a conflict of interest by way of their participation in the malfeasance and/or covering up of the malfeasance against the Company and its other shareholders.

13.     That R. John Taylor, Connie Taylor Henderson, JoLee Duclos, James Beck and Michael Cashman be required to disgorge all compensation, directors fees, indemnification payments or cost advances, benefits, salaries, bonuses, reimbursements, and shares obtained through or from the Company (until the Federal Court Case is resolved) based of them being faithless fiduciaries of the Company.

14.     All actions and demands that are demanded to be taken by Paul Durant are also hereby demanded to be taken by the Company and/or its authorized Board of Directors to the extent persons named in this Demand or others seek to thwart any action by Paul Durant.

15.     That the Company fully disclose all transactions, obligations, loans and footnotes in the recent financial statements provided to shareholders and fully disclose how R. John Taylor, Connie Taylor Henderson and other persons identified in this Demand acquired their respective ownership interests in the entities identified in the footnotes, how the Company's ownership interests were eliminated, transferred or otherwise extinguished and how the transactions, obligations, loans, and share transfers, redemptions and issuances were authorized by the Company, the Company's amended articles of incorporation and restated bylaws.

16.     By making this Demand, the undersigned shareholder(s) does not waive any legal rights or remedies and hereby maintains and asserts that the Company is being irreparably injured and reserves the right to take legal action, without a derivative demand, based upon such irreparable injury.

17.     This Demand may be executed by counterparts and by facsimile and/or pdf attachment, which together shall constitute an original. The undersigned shareholder(s) authorize Dale Miesen or Paul Durant to deliver this Demand to the Company at the time of the shareholder meeting scheduled for July 16, 2012 or anytime before or thereafter.

18.     All further communications to the undersigned shareholder(s) regarding this Demand should be directed to Roderick C. Bond, Roderick Bond Law Office, PLLC, 800 Bellevue Way NE, Suite 400, Bellevue, WA 98004 - Tel: (425) 591-6903 - Fax (425) 321-0343 – Email: rod@roderickbond.com.

Dated this __11__ day of July, 2012.

_____
Dale L. Miesen

_____
Jonathan Eckburg Brown Jr.

_____
Jonathan Ekberg *corrected

3

Exhibit 41 - Page - 23

## SHAREHOLDER DEMAND

The undersigned shareholder(s), as an owner(s) of record or beneficial holder(s) of preferred and/or common shares in AIA Services Corporation, hereby makes the following Shareholder Demand upon AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc. (collectively "Company") and the Company's Boards of Directors (this Demand also constitutes a derivative demand and double derivative demand) (collectively "Demand"):

1.    That R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, JoLee Duclos and Aimee Gordon be barred from serving as directors or officers of the Company based upon the ongoing malfeasance, conflicts of interest, failure to act in good faith, breaches of fiduciary duties (including the duties of loyalty, care and good faith) and other acts and/or omissions committed under their direction, participation and/or acquiescence, including, without limitation, those acts and/or omissions identified in the First Amended Complaint in *Donna J. Taylor v. Hawley Troxell Ennis & Hawley, R. John Taylor, Michael Cashman, James Beck, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case"), which said First Amended Complaint is incorporated by reference herein, and that legal action be taken against them.

2.    That Paul D. Durant be appointed as a director of AIA Services Corporation as requested and duly authorized and appointed by the sole Series A Preferred Shareholder of the Company, Donna J. Taylor.

3.    That Paul D. Durant be appointed as the President of AIA Services Corporation and AIA Insurance, Inc., to be duly compensated, and to operate those entities in the best interests of the corporations and their shareholders (with an emphasis on recovering damages and sums from majority shareholder R. John Taylor and Connie Taylor Henderson and others for the benefit of the corporations and their innocent shareholders) and to retain and/or terminate such employee(s) and/or officer(s) as he deems appropriate to properly operate the corporations and pursue any claims set forth in the First Amended Complaint in the Federal Court Case and similar or other claims against named and unnamed parties. Mr. Durant should also be authorized to appoint other parties to the Board of Directors to serve until the next annual meeting as provided under the Restated Bylaws.

4.    That the Company (regardless of Mr. Durant's appointment as an officer or director of the Company), and Paul D. Durant if appointed as an director and/or officer, be authorized to pursue the claims and causes of action identified in the First Amended Complaint filed in the Federal court Case through the date of this Demand and for all related acts after the date of this Demand, including, without limitation, requesting and praying for punitive damages against the parties named in the Federal Court Case and any other responsible parties named in this Demand. A copy of said First Amended Complaint is incorporated by reference herein and is already in the possession of the Company and its purported officers and purported directors (a copy can also be obtained from PACER (the online filing system for the United States District Court for the District of Idaho)).

5.    That the Company refrain from pursuing a reverse stock split (which violates Articles 4.2.9(f), 4.3.3 and 11 of the Company's amended articles of incorporation and the Company's Restated Bylaws) or any other corporate action which is not in the best interests of the Company's preferred shareholders and minority shareholders or otherwise violates the Company's articles of incorporation, restated bylaws and/or Idaho law (including oppressive conduct and breaches of fiduciary duties). That any and all shares held by R. John Taylor and/or Connie Taylor Henderson be barred and disqualified from voting on the reverse stock split since that transaction is preferential to them and is being pursued without full disclosure.

1

Exhibit 41 - Page - 24

6.     That the Company demand repayment of, and refrain from paying or advancing, any sums or assets for the payment of all attorneys' fees, expert witness fees, costs and expenses paid, advanced or lent by the Company for JoLee Duclos, R. John Taylor, Connie Taylor Henderson, James Beck, Corrine Beck, Michael Cashman, Jane Doe Cashman, and CropUSA Insurance Agency, Inc.

7.     That Paul D. Durant be authorized to appoint persons to committee(s) of the Board of Directors of the Company, with each committee comprised of at least two (2) of the minority shareholders of the Company to be determined in Mr. Durant's sole discretion and at least one (1) outside and independent person (or more should Mr. Durant desire). Said committee(s) should be used by Mr. Durant, in his discretion, to govern the Company and to maximize the value of the Company's shareholders and to wind up the affairs of the Company should no new viable businesses be obtained and the assets and funds used to pay creditors, preferred shareholders and distributed to common shareholders. Mr. Durant should be authorized to obtain approval for any acts from the Judge in the Federal Court Case or other court of competent jurisdiction to the extent required (including ultimately filing an action or taking action to dissolve the Company once all assets and funds have been identified and recovered or upon court or shareholder approval).

8.     That the Company rescind and/or revoke 818,659 of the common shares held by R. John Taylor and Connie Taylor Henderson as those shares were unlawfully issued by the Company when R. John Taylor violated his Executive Officer's Agreement with Company and they have acted as faithless fiduciaries of the Company (500,000 were granted as an option of the Executive Officers Agreement breached by R. John Taylor) and the other 318,659 shares obtained by R. John Taylor and/or Connie Taylor Henderson from Michael W. Cashman and Corrine M. Beck and/or James Beck were unlawfully issued to them and other former Series C Preferred Shareholders of the Company and are therefore not properly issued shares and those certificates and any subsequent certificates representing those common shares are illegal and void. The foregoing shares, along with the common shares unlawfully issued to Distribution Services, Inc., Bruce E. Knutson, Charles B. Rapp, Daryl R. Verdoorn and any other commons shares unlawfully issued to the former Series C Preferred Shareholders were illegally issued and void. The proper rescission and/or revocation of the foregoing shares increases the minority shareholder's ownership interest in the Company, instead of improperly diluting their ownership interest and increasing R. John Taylor and Connie Taylor Henderson's majority interest.

9.     That the Company terminate JoLee Duclos as the trustee of the Company's 401(k) Plan ("Plan") and appoint a disinterested party or person as the trustee of said Plan and that said person be provided full disclosure of all transactions, loans, malfeasance, redemptions, transfers and all other acts and/or omissions of R. John Taylor and JoLee Duclos as the former co-trustees of the Plan.

10.     That the Company rescind and cancel the prior payments for the recent termination of the Employee Stock Ownership Plan of the Company ("ESOP") because the value of said shares cannot be fairly ascertained until the Federal Court Case has been concluded or resolved and other matters and claims resolved by the Company. The participants in the ESOP, like the other common shareholders, should receive the benefit of a fair valuation and/or distribution at the appropriate time.

11.     That Paul D. Durant be authorized to conduct such investigations and retain such services as he deems appropriate and/or necessary pertaining to any and all past transactions, loans, encumbrances, asset sales, share sales or transfers, share redemptions, salaries, payments, exchange offers and/or any other act or omission pertaining to the operations of AIA Services Corporation and AIA Insurance, Inc. and that the Company report said findings to the appropriate authorities and/or State Bar Associations and/or to take such other actions as Mr. Durant deems appropriate and in the best interest of the corporations.

2

Exhibit 41 - Page - 25

2 SER 394

12.    That the common shares of R. John Taylor, Connie Taylor Henderson and the other persons and entities identified in Paragraph 8 be barred from voting on any matters relative to the appointment of themselves to the Board of Directors and any other matters in which their shares have a conflict of interest by way of their participation in the malfeasance and/or covering up of the malfeasance against the Company and its other shareholders.

13.    That R. John Taylor, Connie Taylor Henderson, JoLee Duclos, James Beck and Michael Cashman be required to disgorge all compensation, directors fees, indemnification payments or cost advances, benefits, salaries, bonuses, reimbursements, and shares obtained through or from the Company (until the Federal Court Case is resolved) based of them being faithless fiduciaries of the Company.

14.    All actions and demands that are demanded to be taken by Paul Durant are also hereby demanded to be taken by the Company and/or its authorized Board of Directors to the extent persons named in this Demand or others seek to thwart any action by Paul Durant.

15.    That the Company fully disclose all transactions, obligations, loans and footnotes in the recent financial statements provided to shareholders and fully disclose how R. John Taylor, Connie Taylor Henderson and other persons identified in this Demand acquired their respective ownership interests in the entities identified in the footnotes, how the Company's ownership interests were eliminated, transferred or otherwise extinguished and how the transactions, obligations, loans, and share transfers, redemptions and issuances were authorized by the Company, the Company's amended articles of incorporation and restated bylaws.

16.    By making this Demand, the undersigned shareholder(s) does not waive any legal rights or remedies and hereby maintains and asserts that the Company is being irreparably injured and reserves the right to take legal action, without a derivative demand, based upon such irreparable injury.

17.    This Demand may be executed by counterparts and by facsimile and/or pdf attachment, which together shall constitute an original. The undersigned shareholder(s) authorize Dale Miesen or Paul Durant to deliver this Demand to the Company at the time of the shareholder meeting scheduled for July 16, 2012 or anytime before or thereafter.

18.    All further communications to the undersigned shareholder(s) regarding this Demand should be directed to Roderick C. Bond, Roderick Bond Law Office, PLLC, 800 Bellevue Way NE, Suite 400, Bellevue, WA 98004 - Tel: (425) 591-6903 - Fax (425) 321-0343 – Email: rod@roderickbond.com.

Dated this __11__ day of July, 2012.

_____
Jerry A. Legg

3

Exhibit 41 - Page - 26

**2 SER 395**

## SHAREHOLDER DEMAND

The undersigned shareholder(s), as an owner(s) of record or beneficial holder(s) of preferred and/or common shares in AIA Services Corporation, hereby makes the following Shareholder Demand upon AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc. (collectively "Company") and the Company's Boards of Directors (this Demand also constitutes a derivative demand and double derivative demand) (collectively "Demand"):

1.     That R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, JoLee Duclos and Aimee Gordon be barred from serving as directors or officers of the Company based upon the ongoing malfeasance, conflicts of interest, failure to act in good faith, breaches of fiduciary duties (including the duties of loyalty, care and good faith) and other acts and/or omissions committed under their direction, participation and/or acquiescence, including, without limitation, those acts and/or omissions identified in the First Amended Complaint in *Donna J. Taylor v. Hawley Troxell Ennis & Hawley, R. John Taylor, Michael Cashman, James Beck, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case"), which said First Amended Complaint is incorporated by reference herein, and that legal action be taken against them.

2.     That Paul D. Durant be appointed as a director of AIA Services Corporation as requested and duly authorized and appointed by the sole Series A Preferred Shareholder of the Company, Donna J. Taylor.

3.     That Paul D. Durant be appointed as the President of AIA Services Corporation and AIA Insurance, Inc., to be duly compensated, and to operate those entities in the best interests of the corporations and their shareholders (with an emphasis on recovering damages and sums from majority shareholder R. John Taylor and Connie Taylor Henderson and others for the benefit of the corporations and their innocent shareholders) and to retain and/or terminate such employee(s) and/or officer(s) as he deems appropriate to properly operate the corporations and pursue any claims set forth in the First Amended Complaint in the Federal Court Case and similar or other claims against named and unnamed parties. Mr. Durant should also be authorized to appoint other parties to the Board of Directors to serve until the next annual meeting as provided under the Restated Bylaws.

4.     That the Company (regardless of Mr. Durant's appointment as an officer or director of the Company), and Paul D. Durant if appointed as an director and/or officer, be authorized to pursue the claims and causes of action identified in the First Amended Complaint filed in the Federal court Case through the date of this Demand and for all related acts after the date of this Demand, including, without limitation, requesting and praying for punitive damages against the parties named in the Federal Court Case and any other responsible parties named in this Demand. A copy of said First Amended Complaint is incorporated by reference herein and is already in the possession of the Company and its purported officers and purported directors (a copy can also be obtained from PACER (the online filing system for the United States District Court for the District of Idaho)).

5.     That the Company refrain from pursuing a reverse stock split (which violates Articles 4.2.9(f), 4.3.3 and 11 of the Company's amended articles of incorporation and the Company's Restated Bylaws) or any other corporate action which is not in the best interests of the Company's preferred shareholders and minority shareholders or otherwise violates the Company's articles of incorporation, restated bylaws and/or Idaho law (including oppressive conduct and breaches of fiduciary duties). That any and all shares held by R. John Taylor and/or Connie Taylor Henderson be barred and disqualified from voting on the reverse stock split since that transaction is preferential to them and is being pursued without full disclosure.

1

Exhibit 41 - Page - 27

6.      That the Company demand repayment of, and refrain from paying or advancing, any sums or assets for the payment of all attorneys' fees, expert witness fees, costs and expenses paid, advanced or lent by the Company for JoLee Duclos, R. John Taylor, Connie Taylor Henderson, James Beck, Corrine Beck, Michael Cashman, Jane Doe Cashman, and CropUSA Insurance Agency, Inc.

7.      That Paul D. Durant be authorized to appoint persons to committee(s) of the Board of Directors of the Company, with each committee comprised of at least two (2) of the minority shareholders of the Company to be determined in Mr. Durant's sole discretion and at least one (1) outside and independent person (or more should Mr. Durant desire).  Said committee(s) should be used by Mr. Durant, in his discretion, to govern the Company and to maximize the value of the Company's shareholders and to wind up the affairs of the Company should no new viable businesses be obtained and the assets and funds used to pay creditors, preferred shareholders and distributed to common shareholders. Mr. Durant should be authorized to obtain approval for any acts from the Judge in the Federal Court Case or other court of competent jurisdiction to the extent required (including ultimately filing an action or taking action to dissolve the Company once all assets and funds have been identified and recovered or upon court or shareholder approval).

8.      That the Company rescind and/or revoke 818,659 of the common shares held by R. John Taylor and Connie Taylor Henderson as those shares were unlawfully issued by the Company when R. John Taylor violated his Executive Officer's Agreement with Company and they have acted as faithless fiduciaries of the Company (500,000 were granted as an option of the Executive Officers Agreement breached by R. John Taylor) and the other 318,659 shares obtained by R. John Taylor and/or Connie Taylor Henderson from Michael W. Cashman and Corrine M. Beck and/or James Beck were unlawfully issued to them and other former Series C Preferred Shareholders of the Company and are therefore not properly issued shares and those certificates and any subsequent certificates representing those common shares are illegal and void.  The foregoing shares, along with the common shares unlawfully issued to Distribution Services, Inc., Bruce E. Knutson, Charles B. Rapp, Daryl R. Verdoorn and any other commons shares unlawfully issued to the former Series C Preferred Shareholders were illegally issued and void.  The proper rescission and/or revocation of the foregoing shares increases the minority shareholder's ownership interest in the Company, instead of improperly diluting their ownership interest and increasing R. John Taylor and Connie Taylor Henderson's majority interest.

9.      That the Company terminate JoLee Duclos as the trustee of the Company's 401(k) Plan ("Plan") and appoint a disinterested party or person as the trustee of said Plan and that said person be provided full disclosure of all transactions, loans, malfeasance, redemptions, transfers and all other acts and/or omissions of R. John Taylor and JoLee Duclos as the former co-trustees of the Plan.

10.      That the Company rescind and cancel the prior payments for the recent termination of the Employee Stock Ownership Plan of the Company ("ESOP") because the value of said shares cannot be fairly ascertained until the Federal Court Case has been concluded or resolved and other matters and claims resolved by the Company. The participants in the ESOP, like the other common shareholders, should receive the benefit of a fair valuation and/or distribution at the appropriate time.

11.      That Paul D. Durant be authorized to conduct such investigations and retain such services as he deems appropriate and/or necessary pertaining to any and all past transactions, loans, encumbrances, asset sales, share sales or transfers, share redemptions, salaries, payments, exchange offers and/or any other act or omission pertaining to the operations of AIA Services Corporation and AIA Insurance, Inc. and that the Company report said findings to the appropriate authorities and/or State Bar Associations and/or to take such other actions as Mr. Durant deems appropriate and in the best interest of the corporations.

2

Exhibit 41 - Page - 28

2 SER 397

12.    That the common shares of R. John Taylor, Connie Taylor Henderson and the other persons and entities identified in Paragraph 8 be barred from voting on any matters relative to the appointment of themselves to the Board of Directors and any other matters in which their shares have a conflict of interest by way of their participation in the malfeasance and/or covering up of the malfeasance against the Company and its other shareholders.

13.    That R. John Taylor, Connie Taylor Henderson, JoLee Duclos, James Beck and Michael Cashman be required to disgorge all compensation, directors fees, indemnification payments or cost advances, benefits, salaries, bonuses, reimbursements, and shares obtained through or from the Company (until the Federal Court Case is resolved) based of them being faithless fiduciaries of the Company.

14.    All actions and demands that are demanded to be taken by Paul Durant are also hereby demanded to be taken by the Company and/or its authorized Board of Directors to the extent persons named in this Demand or others seek to thwart any action by Paul Durant.

15.    That the Company fully disclose all transactions, obligations, loans and footnotes in the recent financial statements provided to shareholders and fully disclose how R. John Taylor, Connie Taylor Henderson and other persons identified in this Demand acquired their respective ownership interests in the entities identified in the footnotes, how the Company's ownership interests were eliminated, transferred or otherwise extinguished and how the transactions, obligations, loans, and share transfers, redemptions and issuances were authorized by the Company, the Company's amended articles of incorporation and restated bylaws.

16.    By making this Demand, the undersigned shareholder(s) does not waive any legal rights or remedies and hereby maintains and asserts that the Company is being irreparably injured and reserves the right to take legal action, without a derivative demand, based upon such irreparable injury.

17.    This Demand may be executed by counterparts and by facsimile and/or pdf attachment, which together shall constitute an original. The undersigned shareholder(s) authorize Dale Miesen or Paul Durant to deliver this Demand to the Company at the time of the shareholder meeting scheduled for July 16, 2012 or anytime before or thereafter.

18.    All further communications to the undersigned shareholder(s) regarding this Demand should be directed to Roderick C. Bond, Roderick Bond Law Office, PLLC, 800 Bellevue Way NE, Suite 400, Bellevue, WA 98004 - Tel: (425) 591-6903 - Fax (425) 321-0343 -- Email: rod@roderickbond.com.

Dated this 12 day of July, 2012.

_Heather Miesen_

Heather Miesen
Heather Miesen Living Trust

3

Exhibit 41 - Page - 29

2 SER 398

### SHAREHOLDER DEMAND

The undersigned shareholder(s), as an owner(s) of record or beneficial holder(s) of preferred and/or common shares in AIA Services Corporation, hereby makes the following Shareholder Demand upon AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc. (collectively "Company") and the Company's Boards of Directors (this Demand also constitutes a derivative demand and double derivative demand) (collectively "Demand"):

1.      That R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, JoLee Duclos and Aimee Gordon be barred from serving as directors or officers of the Company based upon the ongoing malfeasance, conflicts of interest, failure to act in good faith, breaches of fiduciary duties (including the duties of loyalty, care and good faith) and other acts and/or omissions committed under their direction, participation and/or acquiescence, including, without limitation, those acts and/or omissions identified in the First Amended Complaint in *Donna J. Taylor v. Hawley Troxell Ennis & Hawley, R. John Taylor, Michael Cashman, James Beck, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case"), which said First Amended Complaint is incorporated by reference herein, and that legal action be taken against them.

2.      That Paul D. Durant be appointed as a director of AIA Services Corporation as requested and duly authorized and appointed by the sole Series A Preferred Shareholder of the Company, Donna J. Taylor.

3.      That Paul D. Durant be appointed as the President of AIA Services Corporation and AIA Insurance, Inc., to be duly compensated, and to operate those entities in the best interests of the corporations and their shareholders (with an emphasis on recovering damages and sums from majority shareholder R. John Taylor and Connie Taylor Henderson and others for the benefit of the corporations and their innocent shareholders) and to retain and/or terminate such employee(s) and/or officer(s) as he deems appropriate to properly operate the corporations and pursue any claims set forth in the First Amended Complaint in the Federal Court Case and similar or other claims against named and unnamed parties. Mr. Durant should also be authorized to appoint other parties to the Board of Directors to serve until the next annual meeting as provided under the Restated Bylaws.

4.      That the Company (regardless of Mr. Durant's appointment as an officer or director of the Company), and Paul D. Durant if appointed as an director and/or officer, be authorized to pursue the claims and causes of action identified in the First Amended Complaint filed in the Federal court Case through the date of this Demand and for all related acts after the date of this Demand, including, without limitation, requesting and praying for punitive damages against the parties named in the Federal Court Case and any other responsible parties named in this Demand. A copy of said First Amended Complaint is incorporated by reference herein and is already in the possession of the Company and its purported officers and purported directors (a copy can also be obtained from PACER (the online filing system for the United States District Court for the District of Idaho)).

5.      That the Company refrain from pursuing a reverse stock split (which violates Articles 4.2.9(f), 4.3.3 and 11 of the Company's amended articles of incorporation and the Company's Restated Bylaws) or any other corporate action which is not in the best interests of the Company's preferred shareholders and minority shareholders or otherwise violates the Company's articles of incorporation, restated bylaws and/or Idaho law (including oppressive conduct and breaches of fiduciary duties). That any and all shares held by R. John Taylor and/or Connie Taylor Henderson be barred and disqualified from voting on the reverse stock split since that transaction is preferential to them and is being pursued without full disclosure.

1

Exhibit 41 - Page - 30

6.      That the Company demand repayment of, and refrain from paying or advancing, any sums or assets for the payment of all attorneys' fees, expert witness fees, costs and expenses paid, advanced or lent by the Company for JoLee Duclos, R. John Taylor, Connie Taylor Henderson, James Beck, Corrine Beck, Michael Cashman, Jane Doe Cashman, and CropUSA Insurance Agency, Inc.

7.      That Paul D. Durant be authorized to appoint persons to committee(s) of the Board of Directors of the Company, with each committee comprised of at least two (2) of the minority shareholders of the Company to be determined in Mr. Durant's sole discretion and at least one (1) outside and independent person (or more should Mr. Durant desire).   Said committee(s) should be used by Mr. Durant, in his discretion, to govern the Company and to maximize the value of the Company's shareholders and to wind up the affairs of the Company should no new viable businesses be obtained and the assets and funds used to pay creditors, preferred shareholders and distributed to common shareholders. Mr. Durant should be authorized to obtain approval for any acts from the Judge in the Federal Court Case or other court of competent jurisdiction to the extent required (including ultimately filing an action or taking action to dissolve the Company once all assets and funds have been identified and recovered or upon court or shareholder approval).

8.      That the Company rescind and/or revoke 818,659 of the common shares held by R. John Taylor and Connie Taylor Henderson as those shares were unlawfully issued by the Company when R. John Taylor violated his Executive Officer's Agreement with Company and they have acted as faithless fiduciaries of the Company (500,000 were granted as an option of the Executive Officers Agreement breached by R. John Taylor) and the other 318,659 shares obtained by R. John Taylor and/or Connie Taylor Henderson from Michael W. Cashman and Corrine M. Beck and/or James Beck were unlawfully issued to them and other former Series C Preferred Shareholders of the Company and are therefore not properly issued shares and those certificates and any subsequent certificates representing those common shares are illegal and void.   The foregoing shares, along with the common shares unlawfully issued to Distribution Services, Inc., Bruce E. Knutson, Charles B. Rapp, Daryl R. Verdoorn and any other commons shares unlawfully issued to the former Series C Preferred Shareholders were illegally issued and void.   The proper rescission and/or revocation of the foregoing shares increases the minority shareholder's ownership interest in the Company, instead of improperly diluting their ownership interest and increasing R. John Taylor and Connie Taylor Henderson's majority interest.

9.      That the Company terminate JoLee Duclos as the trustee of the Company's 401(k) Plan ("Plan") and appoint a disinterested party or person as the trustee of said Plan and that said person be provided full disclosure of all transactions, loans, malfeasance, redemptions, transfers and all other acts and/or omissions of R. John Taylor and JoLee Duclos as the former co-trustees of the Plan.

10.      That the Company rescind and cancel the prior payments for the recent termination of the Employee Stock Ownership Plan of the Company ("ESOP") because the value of said shares cannot be fairly ascertained until the Federal Court Case has been concluded or resolved and other matters and claims resolved by the Company. The participants in the ESOP, like the other common shareholders, should receive the benefit of a fair valuation and/or distribution at the appropriate time.

11.      That Paul D. Durant be authorized to conduct such investigations and retain such services as he deems appropriate and/or necessary pertaining to any and all past transactions, loans, encumbrances, asset sales, share sales or transfers, share redemptions, salaries, payments, exchange offers and/or any other act or omission pertaining to the operations of AIA Services Corporation and AIA Insurance, Inc. and that the Company report said findings to the appropriate authorities and/or State Bar Associations and/or to take such other actions as Mr. Durant deems appropriate and in the best interest of the corporations.

Exhibit 41 - Page - 31

2 SER 400

12.     That the common shares of R. John Taylor, Connie Taylor Henderson and the other persons and entities identified in Paragraph 8 be barred from voting on any matters relative to the appointment of themselves to the Board of Directors and any other matters in which their shares have a conflict of interest by way of their participation in the malfeasance and/or covering up of the malfeasance against the Company and its other shareholders.

13.     That R. John Taylor, Connie Taylor Henderson, JoLee Duclos, James Beck and Michael Cashman be required to disgorge all compensation, directors fees, indemnification payments or cost advances, benefits, salaries, bonuses, reimbursements, and shares obtained through or from the Company (until the Federal Court Case is resolved) based of them being faithless fiduciaries of the Company.

14.     All actions and demands that are demanded to be taken by Paul Durant are also hereby demanded to be taken by the Company and/or its authorized Board of Directors to the extent persons named in this Demand or others seek to thwart any action by Paul Durant.

15.     That the Company fully disclose all transactions, obligations, loans and footnotes in the recent financial statements provided to shareholders and fully disclose how R. John Taylor, Connie Taylor Henderson and other persons identified in this Demand acquired their respective ownership interests in the entities identified in the footnotes, how the Company's ownership interests were eliminated, transferred or otherwise extinguished and how the transactions, obligations, loans, and share transfers, redemptions and issuances were authorized by the Company, the Company's amended articles of incorporation and restated bylaws.

16.     By making this Demand, the undersigned shareholder(s) does not waive any legal rights or remedies and hereby maintains and asserts that the Company is being irreparably injured and reserves the right to take legal action, without a derivative demand, based upon such irreparable injury.

17.     This Demand may be executed by counterparts and by facsimile and/or pdf attachment, which together shall constitute an original. The undersigned shareholder(s) authorize Dale Miesen or Paul Durant to deliver this Demand to the Company at the time of the shareholder meeting scheduled for July 16, 2012 or anytime before or thereafter.

18.     All further communications to the undersigned shareholder(s) regarding this Demand should be directed to Roderick C. Bond, Roderick Bond Law Office, PLLC, 800 Bellevue Way NE, Suite 400, Bellevue, WA 98004 - Tel: (425) 591-6903 - Fax (425) 321-0343 – Email: rod@roderickbond.com.

Dated this _____ 12 _____ day of July, 2012.

_____
Robert L. Miesen
Robert L. Miesen Living Trust

3

Exhibit 41 - Page - 32

## SHAREHOLDER DEMAND

The undersigned shareholder(s), as an owner(s) of record or beneficial holder(s) of preferred and/or common shares in AIA Services Corporation, hereby makes the following Shareholder Demand upon AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc. (collectively "Company") and the Company's Boards of Directors (this Demand also constitutes a derivative demand and double derivative demand) (collectively "Demand"):

1.      That R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, JoLee Duclos and Aimee Gordon be barred from serving as directors or officers of the Company based upon the ongoing malfeasance, conflicts of interest, failure to act in good faith, breaches of fiduciary duties (including the duties of loyalty, care and good faith) and other acts and/or omissions committed under their direction, participation and/or acquiescence, including, without limitation, those acts and/or omissions identified in the First Amended Complaint in *Donna J. Taylor v. Hawley Troxell Ennis & Hawley, R. John Taylor, Michael Cashman, James Beck, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case"), which said First Amended Complaint is incorporated by reference herein, and that legal action be taken against them.

2.      That Paul D. Durant be appointed as a director of AIA Services Corporation as requested and duly authorized and appointed by the sole Series A Preferred Shareholder of the Company, Donna J. Taylor.

3.      That Paul D. Durant be appointed as the President of AIA Services Corporation and AIA Insurance, Inc., to be duly compensated, and to operate those entities in the best interests of the corporations and their shareholders (with an emphasis on recovering damages and sums from majority shareholder R. John Taylor and Connie Taylor Henderson and others for the benefit of the corporations and their innocent shareholders) and to retain and/or terminate such employee(s) and/or officer(s) as he deems appropriate to properly operate the corporations and pursue any claims set forth in the First Amended Complaint in the Federal Court Case and similar or other claims against named and unnamed parties. Mr. Durant should also be authorized to appoint other parties to the Board of Directors to serve until the next annual meeting as provided under the Restated Bylaws.

4.      That the Company (regardless of Mr. Durant's appointment as an officer or director of the Company), and Paul D. Durant if appointed as an director and/or officer, be authorized to pursue the claims and causes of action identified in the First Amended Complaint filed in the Federal court Case through the date of this Demand and for all related acts after the date of this Demand, including, without limitation, requesting and praying for punitive damages against the parties named in the Federal Court Case and any other responsible parties named in this Demand. A copy of said First Amended Complaint is incorporated by reference herein and is already in the possession of the Company and its purported officers and purported directors (a copy can also be obtained from PACER (the online filing system for the United States District Court for the District of Idaho)).

5.      That the Company refrain from pursuing a reverse stock split (which violates Articles 4.2.9(f), 4.3.3 and 11 of the Company's amended articles of incorporation and the Company's Restated Bylaws) or any other corporate action which is not in the best interests of the Company's preferred shareholders and minority shareholders or otherwise violates the Company's articles of incorporation, restated bylaws and/or Idaho law (including oppressive conduct and breaches of fiduciary duties). That any and all shares held by R. John Taylor and/or Connie Taylor Henderson be barred and disqualified from voting on the reverse stock split since that transaction is preferential to them and is being pursued without full disclosure.

1

Exhibit 41 - Page - 33

6.     That the Company demand repayment of, and refrain from paying or advancing, any sums or assets for the payment of all attorneys' fees, expert witness fees, costs and expenses paid, advanced or lent by the Company for JoLee Duclos, R. John Taylor, Connie Taylor Henderson, James Beck, Corrine Beck, Michael Cashman, Jane Doe Cashman, and CropUSA Insurance Agency, Inc.

7.     That Paul D. Durant be authorized to appoint persons to committee(s) of the Board of Directors of the Company, with each committee comprised of at least two (2) of the minority shareholders of the Company to be determined in Mr. Durant's sole discretion and at least one (1) outside and independent person (or more should Mr. Durant desire).  Said committee(s) should be used by Mr. Durant, in his discretion, to govern the Company and to maximize the value of the Company's shareholders and to wind up the affairs of the Company should no new viable businesses be obtained and the assets and funds used to pay creditors, preferred shareholders and distributed to common shareholders. Mr. Durant should be authorized to obtain approval for any acts from the Judge in the Federal Court Case or other court of competent jurisdiction to the extent required (including ultimately filing an action or taking action to dissolve the Company once all assets and funds have been identified and recovered or upon court or shareholder approval).

8.     That the Company rescind and/or revoke 818,659 of the common shares held by R. John Taylor and Connie Taylor Henderson as those shares were unlawfully issued by the Company when R. John Taylor violated his Executive Officer's Agreement with Company and they have acted as faithless fiduciaries of the Company (500,000 were granted as an option of the Executive Officers Agreement breached by R. John Taylor) and the other 318,659 shares obtained by R. John Taylor and/or Connie Taylor Henderson from Michael W. Cashman and Corrine M. Beck and/or James Beck were unlawfully issued to them and other former Series C Preferred Shareholders of the Company and are therefore not properly issued shares and those certificates and any subsequent certificates representing those common shares are illegal and void.  The foregoing shares, along with the common shares unlawfully issued to Distribution Services, Inc., Bruce E. Knutson, Charles B. Rapp, Daryl R. Verdoorn and any other commons shares unlawfully issued to the former Series C Preferred Shareholders were illegally issued and void.  The proper rescission and/or revocation of the foregoing shares increases the minority shareholder's ownership interest in the Company, instead of improperly diluting their ownership interest and increasing R. John Taylor and Connie Taylor Henderson's majority interest.

9.     That the Company terminate JoLee Duclos as the trustee of the Company's 401(k) Plan ("Plan") and appoint a disinterested party or person as the trustee of said Plan and that said person be provided full disclosure of all transactions, loans, malfeasance, redemptions, transfers and all other acts and/or omissions of R. John Taylor and JoLee Duclos as the former co-trustees of the Plan.

10.     That the Company rescind and cancel the prior payments for the recent termination of the Employee Stock Ownership Plan of the Company ("ESOP") because the value of said shares cannot be fairly ascertained until the Federal Court Case has been concluded or resolved and other matters and claims resolved by the Company. The participants in the ESOP, like the other common shareholders, should receive the benefit of a fair valuation and/or distribution at the appropriate time.

11.     That Paul D. Durant be authorized to conduct such investigations and retain such services as he deems appropriate and/or necessary pertaining to any and all past transactions, loans, encumbrances, asset sales, share sales or transfers, share redemptions, salaries, payments, exchange offers and/or any other act or omission pertaining to the operations of AIA Services Corporation and AIA Insurance, Inc. and that the Company report said findings to the appropriate authorities and/or State Bar Associations and/or to take such other actions as Mr. Durant deems appropriate and in the best interest of the corporations.

2

Exhibit 41 - Page - 34

12.    That the common shares of R. John Taylor, Connie Taylor Henderson and the other persons and entities identified in Paragraph 8 be barred from voting on any matters relative to the appointment of themselves to the Board of Directors and any other matters in which their shares have a conflict of interest by way of their participation in the malfeasance and/or covering up of the malfeasance against the Company and its other shareholders.

13.    That R. John Taylor, Connie Taylor Henderson, JoLee Duclos, James Beck and Michael Cashman be required to disgorge all compensation, directors fees, indemnification payments or cost advances, benefits, salaries, bonuses, reimbursements, and shares obtained through or from the Company (until the Federal Court Case is resolved) based of them being faithless fiduciaries of the Company.

14.    All actions and demands that are demanded to be taken by Paul Durant are also hereby demanded to be taken by the Company and/or its authorized Board of Directors to the extent persons named in this Demand or others seek to thwart any action by Paul Durant.

15.    That the Company fully disclose all transactions, obligations, loans and footnotes in the recent financial statements provided to shareholders and fully disclose how R. John Taylor, Connie Taylor Henderson and other persons identified in this Demand acquired their respective ownership interests in the entities identified in the footnotes, how the Company's ownership interests were eliminated, transferred or otherwise extinguished and how the transactions, obligations, loans, and share transfers, redemptions and issuances were authorized by the Company, the Company's amended articles of incorporation and restated bylaws.

16.    By making this Demand, the undersigned shareholder(s) does not waive any legal rights or remedies and hereby maintains and asserts that the Company is being irreparably injured and reserves the right to take legal action, without a derivative demand, based upon such irreparable injury.

17.    This Demand may be executed by counterparts and by facsimile and/or pdf attachment, which together shall constitute an original. The undersigned shareholder(s) authorize Dale Miesen or Paul Durant to deliver this Demand to the Company at the time of the shareholder meeting scheduled for July 16, 2012 or anytime before or thereafter.

18.    All further communications to the undersigned shareholder(s) regarding this Demand should be directed to Roderick C. Bond, Roderick Bond Law Office, PLLC, 800 Bellevue Way NE, Suite 400, Bellevue, WA 98004 - Tel: (425) 591-6903 - Fax (425) 321-0343 – Email: rod@roderickbond.com.

Dated this __11th__ day of July, 2012.

Bobette N. Ruddell

3

Exhibit 41 - Page - 35

2 SER 404

## SHAREHOLDER DEMAND

The undersigned shareholder(s), as an owner(s) of record and/or beneficial holder(s) of over $300,000 in Series C Preferred Shares (plus accrues dividends) and 9,296.5 common shares in AIA Services Corporation, hereby makes the following Shareholder Demand upon AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc. (collectively "Company") and the Company's Boards of Directors (this Demand also constitutes a derivative demand and double derivative demand) (collectively "Demand"):

1.      That R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, JoLee Duclos and Aimee Gordon be barred from serving as directors or officers of the Company based upon the ongoing malfeasance, conflicts of interest, failure to act in good faith, breaches of fiduciary duties (including the duties of loyalty, care and good faith) and other acts and/or omissions committed under their direction, participation and/or acquiescence, including, without limitation, those acts and/or omissions identified in the First Amended Complaint in *Donna J. Taylor v. Hawley Troxell Ennis & Hawley, R. John Taylor, Michael Cashman, James Beck, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case"), which said First Amended Complaint is incorporated by reference herein, and that legal action be taken against them.

2.      That Paul D. Durant be appointed as a director of AIA Services Corporation as requested and duly authorized and appointed by the sole Series A Preferred Shareholder of the Company, Donna J. Taylor.

3.      That Paul D. Durant be appointed as the President of AIA Services Corporation and AIA Insurance, Inc., to be duly compensated, and to operate those entities in the best interests of the corporations and their shareholders (with an emphasis on recovering damages and sums from majority shareholder R. John Taylor and Connie Taylor Henderson and others for the benefit of the corporations and their innocent shareholders) and to retain and/or terminate such employee(s) and/or officer(s) as he deems appropriate to properly operate the corporations and pursue any claims set forth in the First Amended Complaint in the Federal Court Case and similar or other claims against named and unnamed parties. Mr. Durant should also be authorized to appoint other parties to the Board of Directors to serve until the next annual meeting as provided under the Restated Bylaws.

4.      That the Company (regardless of Mr. Durant's appointment as an officer or director of the Company), and Paul D. Durant if appointed as an director and/or officer, be authorized to pursue the claims and causes of action identified in the First Amended Complaint filed in the Federal court Case through the date of this Demand and for all related acts after the date of this Demand, including, without limitation, requesting and praying for punitive damages against the parties named in the Federal Court Case and any other responsible parties named in this Demand. A copy of said First Amended Complaint is incorporated by reference herein and is already in the possession of the Company and its purported officers and purported directors (a copy can also be obtained from PACER (the online filing system for the United States District Court for the District of Idaho)).

5.      That the Company refrain from pursuing a reverse stock split (which violates Articles 4.2.9(f), 4.3.3 and 11 of the Company's amended articles of incorporation and the Company's Restated Bylaws) or any other corporate action which is not in the best interests of the Company's preferred shareholders and minority shareholders or otherwise violates the Company's articles of incorporation, restated bylaws and/or Idaho law (including oppressive conduct and breaches of fiduciary duties). That any and all shares held by R. John Taylor and/or Connie Taylor Henderson be barred and disqualified from voting on the reverse stock split since that transaction is preferential to them and is being pursued without full disclosure.

1

Exhibit 41 - Page - 36

6.      That the Company demand repayment of, and refrain from paying or advancing, any sums or assets for the payment of all attorneys' fees, expert witness fees, costs and expenses paid, advanced or lent by the Company for JoLee Duclos, R. John Taylor, Connie Taylor Henderson, James Beck, Corrine Beck, Michael Cashman, Jane Doe Cashman, and CropUSA Insurance Agency, Inc.

7.      That Paul D. Durant be authorized to appoint persons to committee(s) of the Board of Directors of the Company, with each committee comprised of at least two (2) of the minority shareholders of the Company to be determined in Mr. Durant's sole discretion and at least one (1) outside and independent person (or more should Mr. Durant desire).  Said committee(s) should be used by Mr. Durant, in his discretion, to govern the Company and to maximize the value of the Company's shareholders and to wind up the affairs of the Company should no new viable businesses be obtained and the assets and funds used to pay creditors, preferred shareholders and distributed to common shareholders. Mr. Durant should be authorized to obtain approval for any acts from the Judge in the Federal Court Case or other court of competent jurisdiction to the extent required (including ultimately filing an action or taking action to dissolve the Company once all assets and funds have been identified and recovered or upon court or shareholder approval).

8.      That the Company rescind and/or revoke 818,659 of the common shares held by R. John Taylor and Connie Taylor Henderson as those shares were unlawfully issued by the Company when R. John Taylor violated his Executive Officer's Agreement with Company and they have acted as faithless fiduciaries of the Company (500,000 were granted as an option of the Executive Officers Agreement breached by R. John Taylor) and the other 318,659 shares obtained by R. John Taylor and/or Connie Taylor Henderson from Michael W. Cashman, Corrine M. Beck, and/or others were unlawfully issued to them and other former Series C Preferred Shareholders of the Company and are therefore not properly issued shares and those certificates and any subsequent certificates representing those common shares are illegal and void.  The foregoing shares, along with the common shares unlawfully issued to Distribution Services, Inc., Bruce E. Knutson, Charles B. Rapp, Daryl R. Verdoorn and any other commons shares unlawfully issued to the former Series C Preferred Shareholders were illegally issued and void.  The proper rescission and/or revocation of the foregoing shares increases the minority shareholder's ownership interest in the Company, instead of improperly diluting their ownership interest and increasing R. John Taylor and Connie Taylor Henderson's majority interest.

9.      That the Company, through Paul D. Durant, if the demand made to appoint him as Director and President of the Company is honored or through the Company and its duly authorized and non-conflicted Board of Directors if that demand is not honored, terminate JoLee Duclos as the trustee of the Company's 401(k) Plan ("Plan") and appoint a disinterested party as the trustee of the Plan and that said successor trustee be provided full disclosure of all transactions, loans, malfeasance, redemptions, transfers and all other acts and/or omissions of R. John Taylor and JoLee Duclos as the former co-trustees of the Plan and JoLee Duclos as former successor trustee and that said newly appointed successor trustee also vote the Series C Preferred Shares hold in the Plan to appoint a director to the Board of Directors of AIA Services to represent the interests of the Series C Preferred Shareholders in the Plan as required Article 4.3.2 of Company's Amended Articles of Incorporation. The undersigned, being a beneficial owner of over $300,000 in Series C Preferred Shares in the Company, demands that no common shares or fractional common shares be redeemed until all accrued dividends have been paid or the funds set aside as required by Article 4.3.3 of the Company's Amended Articles of Incorporation and further demands that if the value of those shares is less than the face value, plus accrued dividends, then no common shares may be redeemed under any circumstances.

10.      That the Company rescind and cancel the prior payments for the recent termination of the Employee Stock Ownership Plan of the Company ("ESOP") because the value of said shares cannot be fairly ascertained until the Federal Court Case has been concluded or resolved and other matters and claims resolved by the Company. The participants in the ESOP, like the other common shareholders, should receive the benefit of a fair valuation and/or distribution at the appropriate time.

2

Exhibit 41 - Page - 37

2 SER 406

11.    That Paul D. Durant be authorized to conduct such investigations and retain such services as he deems appropriate and/or necessary pertaining to any and all past transactions, loans, encumbrances, asset sales, share sales or transfers, share redemptions, salaries, payments, exchange offers and/or any other act or omission pertaining to the operations of AIA Services Corporation and AIA Insurance, Inc. and that the Company report said findings to the appropriate authorities and/or State Bar Associations and/or to take such other actions as Mr. Durant deems appropriate and in the best interest of the corporations.

12.    That the common shares of R. John Taylor, Connie Taylor Henderson and the other persons and entities identified in Paragraph 8 be barred from voting on any matters relative to the appointment of themselves to the Board of Directors and any other matters in which their shares have a conflict of interest by way of their participation in the malfeasance and/or covering up of the malfeasance against the Company and its other shareholders.

13.    That R. John Taylor, Connie Taylor Henderson, JoLee Duclos, James Beck and Michael Cashman be required to disgorge all compensation, directors fees, indemnification payments or cost advances, benefits, salaries, bonuses, reimbursements, and shares obtained through or from the Company (until the Federal Court Case is resolved) based of them being faithless fiduciaries of the Company.

14.    All actions and demands that are demanded to be taken by Paul Durant are also hereby demanded to be taken by the Company and/or its authorized Board of Directors to the extent persons named in this Demand or others seek to thwart any action by Paul Durant.

15.    That the Company fully disclose all transactions, obligations, loans and footnotes in the recent financial statements provided to shareholders and fully disclose how R. John Taylor, Connie Taylor Henderson and other persons identified in this Demand acquired their respective ownership interests in the entities identified in the footnotes, how the Company's ownership interests were eliminated, transferred or otherwise extinguished and how the transactions, obligations, loans, and share transfers, redemptions and issuances were authorized by the Company, the Company's amended articles of incorporation and restated bylaws.

16.    By making this Demand, the undersigned shareholder(s) does not waive any legal rights or remedies and hereby maintains and asserts that the Company is being irreparably injured and reserves the right to take legal action, without a derivative demand, based upon such irreparable injury.

17.    This Demand may be executed by counterparts and by facsimile and/or pdf attachment, which together shall constitute an original. The undersigned shareholder(s) authorize Dale Miesen or Paul Durant to deliver this Demand to the Company at the time of the shareholder meeting scheduled for July 16, 2012 or anytime before or thereafter.

18.    All further communications to the undersigned shareholder(s) regarding this Demand should be directed to Roderick C. Bond, Roderick Bond Law Office, PLLC, 800 Bellevue Way NE, Suite 400, Bellevue, WA 98004 - Tel: (425) 591-6903 - Fax (425) 321-0343 – Email: rod@roderickbond.com.

Dated this _15_ day of July, 2012.

Reed J. Taylor

3

Exhibit 41 - Page - 38

2 SER 407

## SHAREHOLDER DEMAND

The undersigned shareholder(s), as an owner(s) of record or beneficial holder(s) of preferred and/or common shares in AIA Services Corporation, hereby makes the following Shareholder Demand upon AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc. (collectively "Company") and the Company's Boards of Directors (this Demand also constitutes a derivative demand and double derivative demand) (collectively "Demand"):

1.    That R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, JoLee Duclos and Aimee Gordon be barred from serving as directors or officers of the Company based upon the ongoing malfeasance, conflicts of interest, failure to act in good faith, breaches of fiduciary duties (including the duties of loyalty, care and good faith) and other acts and/or omissions committed under their direction, participation and/or acquiescence, including, without limitation, those acts and/or omissions identified in the First Amended Complaint in *Donna J. Taylor v. Hawley Troxell Ennis & Hawley, R. John Taylor, Michael Cashman, James Beck, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case"), which said First Amended Complaint is incorporated by reference herein, and that legal action be taken against them.

2.    That Paul D. Durant be appointed as a director of AIA Services Corporation as requested and duly authorized and appointed by the sole Series A Preferred Shareholder of the Company, Donna J. Taylor.

3.    That Paul D. Durant be appointed as the President of AIA Services Corporation and AIA Insurance, Inc., to be duly compensated, and to operate those entities in the best interests of the corporations and their shareholders (with an emphasis on recovering damages and sums from majority shareholder R. John Taylor and Connie Taylor Henderson and others for the benefit of the corporations and their innocent shareholders) and to retain and/or terminate such employee(s) and/or officer(s) as he deems appropriate to properly operate the corporations and pursue any claims set forth in the First Amended Complaint in the Federal Court Case and similar or other claims against named and unnamed parties. Mr. Durant should also be authorized to appoint other parties to the Board of Directors to serve until the next annual meeting as provided under the Restated Bylaws.

4.    That the Company (regardless of Mr. Durant's appointment as an officer or director of the Company), and Paul D. Durant if appointed as an director and/or officer, be authorized to pursue the claims and causes of action identified in the First Amended Complaint filed in the Federal court Case through the date of this Demand and for all related acts after the date of this Demand, including, without limitation, requesting and praying for punitive damages against the parties named in the Federal Court Case and any other responsible parties named in this Demand. A copy of said First Amended Complaint is incorporated by reference herein and is already in the possession of the Company and its purported officers and purported directors (a copy can also be obtained from PACER (the online filing system for the United States District Court for the District of Idaho)).

5.    That the Company refrain from pursuing a reverse stock split (which violates Articles 4.2.9(f), 4.3.3 and 11 of the Company's amended articles of incorporation and the Company's Restated Bylaws) or any other corporate action which is not in the best interests of the Company's preferred shareholders and minority shareholders or otherwise violates the Company's articles of incorporation, restated bylaws and/or Idaho law (including oppressive conduct and breaches of fiduciary duties). That any and all shares held by R. John Taylor and/or Connie Taylor Henderson be barred and disqualified from voting on the reverse stock split since that transaction is preferential to them and is being pursued without full disclosure.

1

Exhibit 41 - Page - 39

2 SER 408

6.      That the Company demand repayment of, and refrain from paying or advancing, any sums or assets for the payment of all attorneys' fees, expert witness fees, costs and expenses paid, advanced or lent by the Company for JoLee Duclos, R. John Taylor, Connie Taylor Henderson, James Beck, Corrine Beck, Michael Cashman, Jane Doe Cashman, and CropUSA Insurance Agency, Inc.

7.      That Paul D. Durant be authorized to appoint persons to committee(s) of the Board of Directors of the Company, with each committee comprised of at least two (2) of the minority shareholders of the Company to be determined in Mr. Durant's sole discretion and at least one (1) outside and independent person (or more should Mr. Durant desire). Said committee(s) should be used by Mr. Durant, in his discretion, to govern the Company and to maximize the value of the Company's shareholders and to wind up the affairs of the Company should no new viable businesses be obtained and the assets and funds used to pay creditors, preferred shareholders and distributed to common shareholders. Mr. Durant should be authorized to obtain approval for any acts from the Judge in the Federal Court Case or other court of competent jurisdiction to the extent required (including ultimately filing an action or taking action to dissolve the Company once all assets and funds have been identified and recovered or upon court or shareholder approval).

8.      That the Company rescind and/or revoke 818,659 of the common shares held by R. John Taylor and Connie Taylor Henderson as those shares were unlawfully issued by the Company when R. John Taylor violated his Executive Officer's Agreement with Company and they have acted as faithless fiduciaries of the Company (500,000 were granted as an option of the Executive Officers Agreement breached by R. John Taylor) and the other 318,659 shares obtained by R. John Taylor and/or Connie Taylor Henderson from Michael W. Cashman and Corrine M. Beck and/or James Beck were unlawfully issued to them and other former Series C Preferred Shareholders of the Company and are therefore not properly issued shares and those certificates and any subsequent certificates representing those common shares are illegal and void. The foregoing shares, along with the common shares unlawfully issued to Distribution Services, Inc., Bruce E. Knutson, Charles B. Rapp, Daryl R. Verdoorn and any other commons shares unlawfully issued to the former Series C Preferred Shareholders were illegally issued and void. The proper rescission and/or revocation of the foregoing shares increases the minority shareholder's ownership interest in the Company, instead of improperly diluting their ownership interest and increasing R. John Taylor and Connie Taylor Henderson's majority interest.

9.      That the Company terminate JoLee Duclos as the trustee of the Company's 401(k) Plan ("Plan") and appoint a disinterested party or person as the trustee of said Plan and that said person be provided full disclosure of all transactions, loans, malfeasance, redemptions, transfers and all other acts and/or omissions of R. John Taylor and JoLee Duclos as the former co-trustees of the Plan.

10.      That the Company rescind and cancel the prior payments for the recent termination of the Employee Stock Ownership Plan of the Company ("ESOP") because the value of said shares cannot be fairly ascertained until the Federal Court Case has been concluded or resolved and other matters and claims resolved by the Company. The participants in the ESOP, like the other common shareholders, should receive the benefit of a fair valuation and/or distribution at the appropriate time.

11.      That Paul D. Durant be authorized to conduct such investigations and retain such services as he deems appropriate and/or necessary pertaining to any and all past transactions, loans, encumbrances, asset sales, share sales or transfers, share redemptions, salaries, payments, exchange offers and/or any other act or omission pertaining to the operations of AIA Services Corporation and AIA Insurance, Inc. and that the Company report said findings to the appropriate authorities and/or State Bar Associations and/or to take such other actions as Mr. Durant deems appropriate and in the best interest of the corporations.

2

Exhibit 41 - Page - 40

12.    That the common shares of R. John Taylor, Connie Taylor Henderson and the other persons and entities identified in Paragraph 8 be barred from voting on any matters relative to the appointment of themselves to the Board of Directors and any other matters in which their shares have a conflict of interest by way of their participation in the malfeasance and/or covering up of the malfeasance against the Company and its other shareholders.

13.    That R. John Taylor, Connie Taylor Henderson, JoLee Duclos, James Beck and Michael Cashman be required to disgorge all compensation, directors fees, indemnification payments or cost advances, benefits, salaries, bonuses, reimbursements, and shares obtained through or from the Company (until the Federal Court Case is resolved) based of them being faithless fiduciaries of the Company.

14.    All actions and demands that are demanded to be taken by Paul Durant are also hereby demanded to be taken by the Company and/or its authorized Board of Directors to the extent persons named in this Demand or others seek to thwart any action by Paul Durant.

15.    That the Company fully disclose all transactions, obligations, loans and footnotes in the recent financial statements provided to shareholders and fully disclose how R. John Taylor, Connie Taylor Henderson and other persons identified in this Demand acquired their respective ownership interests in the entities identified in the footnotes, how the Company's ownership interests were eliminated, transferred or otherwise extinguished and how the transactions, obligations, loans, and share transfers, redemptions and issuances were authorized by the Company, the Company's amended articles of incorporation and restated bylaws.

16.    By making this Demand, the undersigned shareholder(s) does not waive any legal rights or remedies and hereby maintains and asserts that the Company is being irreparably injured and reserves the right to take legal action, without a derivative demand, based upon such irreparable injury.

17.    This Demand may be executed by counterparts and by facsimile and/or pdf attachment, which together shall constitute an original. The undersigned shareholder(s) authorize Dale Miesen or Paul Durant to deliver this Demand to the Company at the time of the shareholder meeting scheduled for July 16, 2012 or anytime before or thereafter.

Dated this __11__ day of July, 2012.

_Carmen S. Taylor_

Carmen S. Taylor

3

Exhibit 41 - Page - 41

### SHAREHOLDER DEMAND

The undersigned shareholder(s), as an owner(s) of record or beneficial holder(s) of preferred and/or common shares in AIA Services Corporation, hereby makes the following Shareholder Demand upon AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc. (collectively "Company") and the Company's Boards of Directors (this Demand also constitutes a derivative demand and double derivative demand) (collectively "Demand"):

1.      That R. John Taylor, Connie Taylor Henderson, James Beck, Michael Cashman, JoLee Duclos and Aimee Gordon be barred from serving as directors or officers of the Company based upon the ongoing malfeasance, conflicts of interest, failure to act in good faith, breaches of fiduciary duties (including the duties of loyalty, care and good faith) and other acts and/or omissions committed under their direction, participation and/or acquiescence, including, without limitation, those acts and/or omissions identified in the First Amended Complaint in *Donna J. Taylor v. Hawley Troxell Ennis & Hawley, R. John Taylor, Michael Cashman, James Beck, et al.*, United States District Court for the District of Idaho, Civil No. 1:10-cv-00404-MLB (the "Federal Court Case"), which said First Amended Complaint is incorporated by reference herein, and that legal action be taken against them.

2.      That Paul D. Durant be appointed as a director of AIA Services Corporation as requested and duly authorized and appointed by the sole Series A Preferred Shareholder of the Company, Donna J. Taylor.

3.      That Paul D. Durant be appointed as the President of AIA Services Corporation and AIA Insurance, Inc., to be duly compensated, and to operate those entities in the best interests of the corporations and their shareholders (with an emphasis on recovering damages and sums from majority shareholder R. John Taylor and Connie Taylor Henderson and others for the benefit of the corporations and their innocent shareholders) and to retain and/or terminate such employee(s) and/or officer(s) as he deems appropriate to properly operate the corporations and pursue any claims set forth in the First Amended Complaint in the Federal Court Case and similar or other claims against named and unnamed parties. Mr. Durant should also be authorized to appoint other parties to the Board of Directors to serve until the next annual meeting as provided under the Restated Bylaws.

4.      That the Company (regardless of Mr. Durant's appointment as an officer or director of the Company), and Paul D. Durant if appointed as an director and/or officer, be authorized to pursue the claims and causes of action identified in the First Amended Complaint filed in the Federal court Case through the date of this Demand and for all related acts after the date of this Demand, including, without limitation, requesting and praying for punitive damages against the parties named in the Federal Court Case and any other responsible parties named in this Demand. A copy of said First Amended Complaint is incorporated by reference herein and is already in the possession of the Company and its purported officers and purported directors (a copy can also be obtained from PACER (the online filing system for the United States District Court for the District of Idaho)).

5.      That the Company refrain from pursuing a reverse stock split (which violates Articles 4.2.9(f), 4.3.3 and 11 of the Company's amended articles of incorporation and the Company's Restated Bylaws) or any other corporate action which is not in the best interests of the Company's preferred shareholders and minority shareholders or otherwise violates the Company's articles of incorporation, restated bylaws and/or Idaho law (including oppressive conduct and breaches of fiduciary duties). That any and all shares held by R. John Taylor and/or Connie Taylor Henderson be barred and disqualified from voting on the reverse stock split since that transaction is preferential to them and is being pursued without full disclosure.

1

Exhibit 41 - Page - 42

2 SER 411

6.      That the Company demand repayment of, and refrain from paying or advancing, any sums or assets for the payment of all attorneys' fees, expert witness fees, costs and expenses paid, advanced or lent by the Company for JoLee Duclos, R. John Taylor, Connie Taylor Henderson, James Beck, Corrine Beck, Michael Cashman, Jane Doe Cashman, and CropUSA Insurance Agency, Inc.

7.      That Paul D. Durant be authorized to appoint persons to committee(s) of the Board of Directors of the Company, with each committee comprised of at least two (2) of the minority shareholders of the Company to be determined in Mr. Durant's sole discretion and at least one (1) outside and independent person (or more should Mr. Durant desire). Said committee(s) should be used by Mr. Durant, in his discretion, to govern the Company and to maximize the value of the Company's shareholders and to wind up the affairs of the Company should no new viable businesses be obtained and the assets and funds used to pay creditors, preferred shareholders and distributed to common shareholders. Mr. Durant should be authorized to obtain approval for any acts from the Judge in the Federal Court Case or other court of competent jurisdiction to the extent required (including ultimately filing an action or taking action to dissolve the Company once all assets and funds have been identified and recovered or upon court or shareholder approval).

8.      That the Company rescind and/or revoke 818,659 of the common shares held by R. John Taylor and Connie Taylor Henderson as those shares were unlawfully issued by the Company when R. John Taylor violated his Executive Officer's Agreement with Company and they have acted as faithless fiduciaries of the Company (500,000 were granted as an option of the Executive Officers Agreement breached by R. John Taylor) and the other 318,659 shares obtained by R. John Taylor and/or Connie Taylor Henderson from Michael W. Cashman and Corrine M. Beck and/or James Beck were unlawfully issued to them and other former Series C Preferred Shareholders of the Company and are therefore not properly issued shares and those certificates and any subsequent certificates representing those common shares are illegal and void. The foregoing shares, along with the common shares unlawfully issued to Distribution Services, Inc., Bruce E. Knutson, Charles B. Rapp, Daryl R. Verdoorn and any other commons shares unlawfully issued to the former Series C Preferred Shareholders were illegally issued and void. The proper rescission and/or revocation of the foregoing shares increases the minority shareholder's ownership interest in the Company, instead of improperly diluting their ownership interest and increasing R. John Taylor and Connie Taylor Henderson's majority interest.

9.      That the Company terminate JoLee Duclos as the trustee of the Company's 401(k) Plan ("Plan") and appoint a disinterested party or person as the trustee of said Plan and that said person be provided full disclosure of all transactions, loans, malfeasance, redemptions, transfers and all other acts and/or omissions of R. John Taylor and JoLee Duclos as the former co-trustees of the Plan.

10.     That the Company rescind and cancel the prior payments for the recent termination of the Employee Stock Ownership Plan of the Company ("ESOP") because the value of said shares cannot be fairly ascertained until the Federal Court Case has been concluded or resolved and other matters and claims resolved by the Company. The participants in the ESOP, like the other common shareholders, should receive the benefit of a fair valuation and/or distribution at the appropriate time.

11.     That Paul D. Durant be authorized to conduct such investigations and retain such services as he deems appropriate and/or necessary pertaining to any and all past transactions, loans, encumbrances, asset sales, share sales or transfers, share redemptions, salaries, payments, exchange offers and/or any other act or omission pertaining to the operations of AIA Services Corporation and AIA Insurance, Inc. and that the Company report said findings to the appropriate authorities and/or State Bar Associations and/or to take such other actions as Mr. Durant deems appropriate and in the best interest of the corporations.

2

Exhibit 41 - Page - 43

12.    That the common shares of R. John Taylor, Connie Taylor Henderson and the other persons and entities identified in Paragraph 8 be barred from voting on any matters relative to the appointment of themselves to the Board of Directors and any other matters in which their shares have a conflict of interest by way of their participation in the malfeasance and/or covering up of the malfeasance against the Company and its other shareholders.

13.    That R. John Taylor, Connie Taylor Henderson, JoLee Duclos, James Beck and Michael Cashman be required to disgorge all compensation, directors fees, indemnification payments or cost advances, benefits, salaries, bonuses, reimbursements, and shares obtained through or from the Company (until the Federal Court Case is resolved) based of them being faithless fiduciaries of the Company.

14.    All actions and demands that are demanded to be taken by Paul Durant are also hereby demanded to be taken by the Company and/or its authorized Board of Directors to the extent persons named in this Demand or others seek to thwart any action by Paul Durant.

15.    That the Company fully disclose all transactions, obligations, loans and footnotes in the recent financial statements provided to shareholders and fully disclose how R. John Taylor, Connie Taylor Henderson and other persons identified in this Demand acquired their respective ownership interests in the entities identified in the footnotes, how the Company's ownership interests were eliminated, transferred or otherwise extinguished and how the transactions, obligations, loans, and share transfers, redemptions and issuances were authorized by the Company, the Company's amended articles of incorporation and restated bylaws.

16.    By making this Demand, the undersigned shareholder(s) does not waive any legal rights or remedies and hereby maintains and asserts that the Company is being irreparably injured and reserves the right to take legal action, without a derivative demand, based upon such irreparable injury.

17.    This Demand may be executed by counterparts and by facsimile and/or pdf attachment, which together shall constitute an original. The undersigned shareholder(s) authorize Dale Miesen or Paul Durant to deliver this Demand to the Company at the time of the shareholder meeting scheduled for July 16, 2012 or anytime before or thereafter.

18.    To the extent that any of the above-referenced demands pertain to me taking action or accepting the appointment as a director or officer of the Company, I am joining in those demands upon the request of the other shareholders who have made the same demands.

Dated this _____ day of July, 2012.

_____
Paul D. Durant

3

Exhibit 41 - Page - 44

2 SER 413

**Roderick Bond**

| | |
|---|---|
| **From:** | Roderick Bond [rod@roderickbond.com] |
| **Sent:** | Tuesday, April 03, 2012 8:16 PM |
| **To:** | 'David Risley'; 'James LaRue'; 'John Ashby'; 'Gary Babbitt' |

Counsel and Board of Directors of AIA Services and AIA Insurance:

This firm represents Donna Taylor, Dale Miesen (and his trusts), LeeAnn Hostetler, Kay Hanchett, Jerry Legg, and Bobette Ruddell.

Demand is hereby made to the board of directors of AIA Services and AIA Insurance to; (1) cease all efforts to withdraw the $400,000 in the court registry in Taylor v. AIA Services; (2) cease paying any attorneys' fees or costs for John Taylor, Michael Cashman, and James Beck; (3) secure the mortgage of the Lewis Clark Hotel; (4) cease all compensation to the foregoing individuals; (5) hold annual shareholder meetings; (6) comply with all applicable Bylaws and Articles of Incorporation of the corporations; and (7) make full disclosure to all shareholders of all of the inappropriate and illegal transactions which have occurred over the years. Obviously, complying with the Bylaws, Articles of Incorporation and Idaho law results in the present purported board members being conflicted from taking any action whatsoever, including withdrawing the $400,000 held in the court registry or taking any other funds or assets from the corporations.

My clients will be making further demands in the future.  But time is of the essence in light of the wholly inappropriate recent action.  My clients reserve the right to seek court assistance in the future without the necessity of further derivative demands based upon the ongoing malfeasance at AIA Services and AIA Insurance.

You are directed to ensure that your clients and the Boards of AIA Services and AIA Insurance receive this demand and that appropriate action is taken, including electing and naming non-conflicted board members for both corporations.  Time is of the essence.

**By: Roderick C. Bond**
**Roderick Bond Law Office, PLLC**
800 Bellevue Way NE, Suite 400
Bellevue, WA  98004
Tel: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Website: www.roderickbond.com

This email and any attachments may be attorney-client privileged, protected as attorney work product, and/or subject to any other applicable privileges.  The unauthorized viewing or dissemination of any email or attachment is prohibited.  If you have recieved this email in error or it was not intended to be delivered to you, please immediately delete this email and all attachments and contact the sender at the address indicated above. Thank you.

1

Exhibit 32 - Page - 1

**2 SER 414**

2 SER 415

LEE H. ROUSSO, ISB No. 8353
LAW OFFICES OF LEE H. ROUSSO PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA  98104
Tel: (206) 623-3818
Fax: (206) 705-1240
lee@leerousso.com

Attorneys for Plaintiff Donna Taylor

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| DONNA J. TAYLOR, a shareholder who is bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership; GARY D. BABBITT, an individual; RICHARD A. RILEY, an individual; D. JOHN ASHBY, an individual; MICHAEL W. CASHMAN SR., an individual; JAMES BECK, an individual; R. JOHN TAYLOR, an individual; CROP USA INSURANCE AGENCY, INC., an Idaho corporation; AIA SERVICES CORPORATION, an Idaho corporation; and AIA INSURANCE, INC., an Idaho corporation.<br><br>Defendants. | Case No.: 10-cv-00404-LMB<br><br>FIRST AMENDED COMPLAINT |

FIRST AMENDED COMPLAINT - 1

Plaintiff Donna J. Taylor, by and through her attorney of record, alleges as follows:

## I.   STATEMENT OF JURISDICTION

**1.1**    This Court has jurisdiction over the subject matter of this lawsuit under 28 U.S.C. § 1332(a)(1) as the amount in controversy exceeds $75,000.00 and the action is between citizens of different States.

**1.2**    This Court also has jurisdiction over the subject matter of this lawsuit under 18 U.S.C. § 1964(c), which grants federal jurisdiction to actions brought under § 1962 of the federal Racketeering and Corruption Influenced Organizations ("RICO") statute, 18 U.S.C. § 1961 *et seq.*

**1.3**    This Court has supplemental jurisdiction, 28 U.S.C. § 1367(a), over the state claims asserted herein as the state claims arise from the same common nucleus of operative facts as the federal claims.

## II.    STATEMENT OF VENUE

**2.1**    Venue is proper in the District of Idaho under 28 U.S.C. § 1391(a)(2) as a substantial part of the errors and omissions giving rise to these claims occurred in this district.

**2.2**    Venue is also proper in the District of Idaho under 18 U.S.C. § 1965(a), as this action involves a civil RICO claim under 18 U.S.C. § 1964, and certain RICO defendants reside in the District of Idaho.

## III.    PARTIES

**3.1**    Plaintiff Donna J. Taylor is a resident of Clarkston, Washington.  Donna Taylor is bringing this derivative action on behalf of the preferred and common shareholders of

FIRST AMENDED COMPLAINT - 2

**2 SER 416**

AIA Services Corporation ("**AIA Services**").  In addition, Donna Taylor also brings a double derivative on behalf of AIA Insurance, Inc. ("**AIA Insurance**"), which is a wholly owned subsidiary of AIA Services.  AIA Services and AIA Insurance are collectively referred to as "**AIA**."  AIA Services and AIA Insurance are nominal defendants because they are controlled by the Controlling Defendants (Taylor, Beck and Cashman) in this action and are therefore antagonistic to the shareholders' interest.

**3.2**    Defendant Hawley Troxell Ennis & Hawley LLP ("**Hawley Troxell**") is an Idaho limited liability partnership in the business of practicing law, with its principle place of business in Boise, Idaho.  Hawley Troxell has no office in the state of Washington. None of the individual members of Hawley Troxell are residents of Washington.  Hawley Troxell has purportedly acted as counsel for AIA Services, AIA Insurance and CropUSA Insurance Agency, Inc. ("**CropUSA**").  Hawley Troxell is named herein as it is liable for the acts and/or omissions of defendants Gary D. Babbitt, Richard Riley, and D. John Ashby.

**3.3**    Defendant Gary D. Babbitt ("**Babbitt**") is an individual residing in the state of Idaho and is an attorney practicing law in the state of Idaho with and for Hawley Troxell.

**3.4**    Defendant Richard A. Riley ("**Riley**") is an individual residing in the state of Idaho and is an attorney in the state of Idaho with and for Hawley Troxell.

**3.5**    Defendant D. John Ashby ("**Ashby**") is an individual residing in the state of Idaho and is an attorney in the state of Idaho with and for Hawley Troxell.

**3.6**    Defendant R. John Taylor ("**Taylor**") is an individual residing in the state of Idaho. At all times relevant to this lawsuit, Taylor served on the Board of Directors for AIA Services, AIA Insurance, and CropUSA and continues to serve on those boards.

FIRST AMENDED COMPLAINT - 3

Taylor also served as an officer of each of these corporations during all times relevant to this lawsuit. Taylor is licensed to practice law in the state of Idaho. Taylor is a common shareholder in AIA Services and asserts that he is a shareholder in CropUSA. Taylor also owns shares in other entities that have engaged in inappropriate transactions with AIA.

**3.7**   Defendant James Beck ("**Beck**") is an individual residing in the state of Minnesota. Beck currently serves on the Board of Directors for AIA Services and AIA Insurance and has served on those boards during certain periods relevant to this lawsuit. Beck asserts that he is a shareholder in AIA Services and CropUSA.

**3.8**   Defendant Michael Cashman, Sr. ("**Cashman**") is an individual residing in the state of Minnesota. Cashman has served on the Board of Directors for AIA Services during certain times relevant to this lawsuit. Cashman asserts that he is a shareholder in AIA Services and CropUSA. Taylor, Beck and Cashman are collectively referred to herein as the "**Controlling Defendants**."

**3.9**   Defendant AIA Services is an Idaho corporation with its principal place of business at 111 Main Street, Lewiston, Idaho, 83501. At all time relevant to this lawsuit, AIA Services is or has been the parent corporation of AIA Insurance.

**3.10**   Defendant AIA Insurance is an Idaho corporation with its principle place of business at 111 Main Street, Lewiston, Idaho, 83501. AIA Insurance is a wholly owned subsidiary of AIA Services.

**3.11**   Defendant CropUSA is an Idaho corporation with its principle place of business at 111 Main Street, Lewiston, Idaho, 83501.

## IV.   <u>FACTS</u>

**4.1**   AIA Services is a closely held Idaho corporation that was formed as a holding

FIRST AMENDED COMPLAINT - 4

company for AIA Insurance and other subsidiaries.  AIA's business model was to work with growers' associations to form trusts and/or related cooperatives through various growers and farmers associations, with the members of those associates also becoming members of the trusts and/or cooperatives. For example, AIA created the Grain Growers Membership & Insurance Trust, the National Contract Poultry Grower's Membership & Insurance Trust, and other, similar trusts.  By way of its relationships with these various organizations, AIA was able to market health insurance (*e.g.*, Group Universal Health Policies) to the members of the various associations.  Reed Taylor, a non-party to this suit, and his former wife, plaintiff Donna Taylor, were issued Series A Preferred and common shares in AIA Services.  Pursuant to the dissolution of the Reed Taylor/Donna Taylor marriage, Donna Taylor was issued 200,000 shares of Series A Preferred shares on or about February 12, 1988, and has held those shares ever since, less those shares which have been redeemed over the years.  Donna Taylor is also the beneficial owner of one half of the common shares of AIA Services held by the estate of her deceased daughter, Sara Taylor, who had owned the shares since at least 1995.

**4.2**     In 1995 the Controlling Defendants and Richard Campanaro (a non-party) sought to gain operational control of AIA Services and did in fact obtain operational control by having AIA Services enter into an agreement wherein AIA Services redeemed the common shares in AIA Services owned by Reed Taylor.  Campanaro purchased his shares with funds provided by Beck and Cashman and later transferred those shares back to Beck and Cashman.  The Controlling Defendants have maintained operational control of AIA from 1995 through the date of this complaint.

**4.3**     Since acquiring operational control of AIA Services in 1995, the Controlling

FIRST AMENDED COMPLAINT - 5

Defendants have engaged in repeated acts of faithless self-dealing, transactions detrimental to AIA, and have committed intentional torts, have conspired to commit intentional torts, and have aided and abetted in the commission of intentional torts, to the detriment of AIA and its innocent shareholders, including but not limited to: (1) controlling the Board of Directors and/or the decisions made by the Board and refusing to act in the best interests of AIA; (2) violating AIA's bylaws, including but not limited to failing to hold shareholder meetings; (3) violating AIA's articles of incorporation; (4) diverting corporate opportunities belonging to AIA; (5) conveying, encumbering, utilizing, and/or pledging corporate assets to themselves or other entities; (6) inappropriately redeeming, acquiring and/or issuing shares of stock and/or making payments on put options, including but not limited to, issuing shares to the Controlling Defendants; (7) inappropriately paying dividends; (8) intentionally failing to comply with conflict of interest provisions in AIA bylaws; (9) guaranteeing loans for CropUSA and failing to guarantee loans for AIA; (10) paying excessive compensation to officers and directors, including but not limited to, paying Taylor $250,000.00 per year to purportedly act as CEO and President of AIA Services after his contractual entitlement to such salary had expired and Taylor had represented that he would not take salary in certain years; (11) wasting corporate assets; (12) divulging and/or utilizing AIA's trade secrets for the benefit of themselves and other entities; (13) soliciting and transferring AIA employees to work for CropUSA; (14) engaging in acts and/or decisions without making full disclosure and without obtaining the required approval of shareholders; (15) engaging in millions of dollars of transactions wherein AIA conveyed benefits without the receipt of consideration; (16) forming and operating entities in direct competition with AIA in the

FIRST AMENDED COMPLAINT - 6

insurance marketplace, including without limitation, CropUSA and Pacific Empire Holdings Corp.; (17) making false representations, including, without limitation, regarding share values, omitting material facts in AIA's financial statements, falsely certifying AIA's financial statements, and that AIA was being operated for the benefit of the corporation; (18) concealing and failing to disclose material facts to AIA pertaining to loans, transfers, and utilization of assets, including without limitation; concealing or omitting material facts, including the facts related to virtually each and every transaction described herein; (19) making false representations to AIA, including without limitation, making and certifying false and misleading financial statements to AIA; (20) inappropriately loaning corporate funds to themselves and to other entities under their control; (21) failing to obtain security, failing to charge interest, and failing to collect on loans of at least $307,000.00 made to Taylor; (22) paying attorneys' fees and costs in various legal proceedings on behalf of past and present directors when it was clear that the individual past and present directors had intentionally failed to act in good faith and by failing to obtain security for repayment of said funds; (23) acquiring a parking lot with AIA funds and charging AIA, and making AIA pay, excessive rent for use of the parking lot even though AIA did not actually use the parking lot; (24) failing to seat the full and required board of directors; (25) improperly transferring shares held by AIA to themselves, including without limitation shares in Pacific Empire Radio Corp., and Pacific Empire Holding Corp., with damages occurring and set on the date of transfer; (26) failing to honor AIA contracts; (27) failing to take appropriate legal action in the interests of AIA; (28) removing a tenant from an AIA owned building to another building owned personally by Taylor; (29) failing to properly allocate expenses to CropUSA; (30)

FIRST AMENDED COMPLAINT - 7

selling assets and or/contracts belonging to AIA to others; and (31) assisting one another and others (including Hawley Troxell, Babbitt, Riley and Ashby) in committing the intentional torts described herein and concealing acts and omissions that constituted intentional torts against AIA.

**4.4**    From 1995 to the filing of this suit, each of the Controlling Defendants has served at various times on the board of directors for AIA Services, AIA Insurance and/or CropUSA.  The Controlling Defendants have also served from time to time on purported "advisory boards" that make decisions on behalf of AIA and CropUSA.  Beck receives $5,000.00 per quarter to sit on the board of AIA and also receives shares for his "service."  Beck has stated that he serves on this board to protect his own interests and those of his friends.

**4.5**    By 1998, AIA's ability to sell health insurance had been impaired by undercapitalization in its underwriting subsidiary the Universal Life.  Accordingly, the company considered proposals to sell other forms of insurance, and in particular crop insurance, to be underwritten by other insurance companies. In 1999, AIA Services, then under the control of Controlling Defendants, began selling crop insurance through a wholly owned subsidiary of AIA Services formed under the name "AIA Crop Insurance, Inc."  The first purported meeting of shareholders of AIA Crop Insurance, Inc. was held on January 11, 2000. (See *Minutes of the First Meeting of Shareholders, January 11, 2000,* which is attached as **Exhibit A**[1] to this First Amended Complaint and incorporated by reference herein.)  The first purported meeting of the AIA Crop Insurance, Inc., board of directors was held on the same day.  (See *Minutes of the First Meeting of Directors,*

---

[1] The documents attached to this First Amended Complaint as exhibits have never been provided to the disinterested shareholders and were otherwise concealed from AIA.

FIRST AMENDED COMPLAINT - 8

*January 11, 2000*, which is attached as **Exhibit B** to this First Amended Complaint and incorporated by reference herein.**)** The purported minutes of the shareholder's meeting indicate that Taylor claimed to be the sole shareholder of AIA Crop Insurance at the time of incorporation.  Upon information and belief, at the time of its formation, Riley and/or Hawley Troxell were providing legal services to AIA Crop Insurance, Inc.  At a special meeting of the shareholders of AIA Crop Insurance, Inc., held on November 13, 2000, AIA Crop Insurance, Inc., was renamed CropUSA in an apparent attempt to conceal its corporate lineage and origins.  The minutes of the November 13, 2000, special meeting of the shareholders also show that Taylor continued to claim that he was the sole shareholder of CropUSA, while he was simultaneously representing in business plans provided to others that CropUSA was a subsidiary of AIA. At the time CropUSA was formed, Taylor was employed by AIA Services under an Executive Officer's Agreement, dated August 1, 1995, which contained express covenants not to compete.  Upon information and belief, Taylor's Executive Officer's Agreement and AIA Service's Amended and Restated Articles of Incorporation and Bylaws were drafted by defendant Riley.[2]

**4.6**    CropUSA held its purported annual shareholder's meeting on January 10, 2001. By this time, the illegal "spin off" of CropUSA had been accomplished by having AIA's Preferred C shareholders (primarily the Controlling Defendants) exchange their Preferred C shares for common shares in CropUSA.[3]  (If CropUSA were in fact an independent entity, these maneuvers would have been completely unnecessary.)  The minutes for this

---

[2] As noted elsewhere in this First Amended Complaint, Hawley Troxell later wrote an improper opinion letter approving a line of $15,000,000.00 credit that was barred by the Amended and Restated Articles of Incorporation.

[3] These shares were later "repurchased" for over $1.5 million in an egregious act of corporate looting.

FIRST AMENDED COMPLAINT - 9

meeting reveal that CropUSA had retained defendant Hawley Troxell as its advisor and SEC counsel and, upon information and belief, Hawley Troxell has served continuously as counsel ever since. (See *Minutes of the Board of Directors, January 10, 2001,* which is attached as **Exhibit C** to this First Amended Complaint and incorporated by reference herein.) According to the minutes, negotiations between AIA Services and CropUSA had resulted in an agreement whereby AIA Services would no longer operate CropUSA as a subsidiary. However, the negotiations referred to in minutes did not in fact occur. There was no decision, nor has there ever been a decision, on the part of AIA Services to discontinue the subsidiary status of CropUSA. None of the preferred or common shareholders of AIA Services (other than those present at the January 10, 2001, meeting) were given notice of or the opportunity to approve this corporate action. In spite the fact that Taylor asserted on January 10, 2001 that CropUSA would no longer be a subsidiary of AIA, Taylor wrote in a February 27, 2001, letter to Donna Taylor that "AIA is developing a new crop insurance program through a new company called CropUSA." (See *February 27, 2001, Letter to Donna Taylor*, which is attached as **Exhibit D** to this First Amended Complaint and is incorporated by reference herein.) The letter went on to state that "[t]he costs of putting the CropUSA program together have been paid. *AIA* now needs to launch five new territories next Month." (emphasis added) This letter constituted an unambiguous representation by Taylor that CropUSA was a subsidiary of AIA and was being operated for the benefit of AIA. This representation was false, Taylor knew it was false, and also knew that Donna Taylor was likely to rely on this representation. She did in fact justifiably rely on this representation and was severely damaged thereby.

FIRST AMENDED COMPLAINT - 10

**4.7**    Notwithstanding the fact that Taylor was operating under an employment agreement that required that he not compete with AIA Services, and notwithstanding the fact that he owed fiduciary duties to the shareholders of AIA Services, Taylor set forth his plans to exploit the assets of AIA Services for the benefit of CropUSA (and himself as the majority purported shareholder) in the purported minutes of the purported January 10, 2001, meeting.  For example, the meeting minutes reveal that CropUSA authorized its officers to execute a Master Marketing Agreement with AIA Insurance that would allow CropUSA access to all of AIA's customers and customer lists, as well as all of AIA's trade secrets.  AIA received no consideration for conveying this access.  CropUSA's officers (including Taylor) were also purportedly authorized to enter into a Management Agreement with AIA Insurance wherein AIA Insurance purportedly agreed to provide management and administrative support to CropUSA without charge.   However, Taylor has since testified under oath that AIA's board never authorized this agreement. The innocent shareholders of AIA (nor AIA itself) were never given notice of these proposed agreements, nor were they given the opportunity to approve or reject these agreements. Each of these agreements, if executed, would constitute a violation of Taylor's Executive Officer's Agreement, which contains a strict non-compete clause.   Each of these agreements, if executed, would also constitute a direct breach of fiduciary duty or aiding and abetting same on behalf of each of the Controlling Defendants.

**4.8**    Upon information and belief, Hawley Troxell was providing legal services to CropUSA and/or its board of directors as of January 10, 2001, and such provision of services has continued through the date of this complaint.  Upon information and belief, from January 10, 2001, and continuing through the period relevant to this lawsuit,

FIRST AMENDED COMPLAINT - 11

Hawley Troxell and Riley (and later Babbitt and Ashby) had knowledge of Taylor's Executive Officer's Agreement with AIA Services, had knowledge of the conflict of interest provision in AIA's bylaws, and had knowledge of provisions in AIA's articles of incorporation, but intentionally refused to comply with them.   Hawley Troxell and Riley knew or should have known that the purported Master Marketing Agreement and Management Agreement constituted breaches of Taylor's Executive Officer's Agreement, violations of AIA's articles of incorporation, violations of AIA bylaws,  and consequently breaches of his fiduciary duties to AIA Services.  Upon information and belief, Hawley Troxell and Riley also representing CropUSA from January 10, 2001, to the present, and by way of that representation Hawley Troxell, Babbitt, Riley and/or Ashby breached their fiduciary duties to AIA (including their undivided duty of loyalty owed to AIA) and took steps that materially assisted Taylor and the Controlling Defendants in the commission of the various torts described in this complaint and assisted in the concealment of those torts.

4.9    Beginning in 1999 and continuing through the date of this Complaint, CropUSA has been funded and operated with assets improperly transferred from AIA, including, but not limited to, operating capital, customer lists and other trade secrets, agents and staff, and goodwill.  CropUSA paid nothing for these assets.

4.10    The Controlling Defendants were all shareholders of AIA at the time CropUSA was formed and later purportedly became shareholders of CropUSA.  The Controlling Defendants all served on a purported "advisory board" of CropUSA and/or AIA, and this advisory board exercised actual control over these corporations.  By exercising control over these entities and committing acts that benefitted CropUSA at the expense of AIA,

FIRST AMENDED COMPLAINT - 12

these defendants engaged in a conspiracy to defraud AIA, which have right and title to the property of CropUSA. Due to the fact that the Controlling Defendants have complete control over AIA and would never assert claims against themselves on behalf of AIA, the adverse dominion doctrine applies to all claims asserted herein, thereby barring any defense based on a statute of limitations. *Freeland v. Enosis Corp.,* 540 F.3d 721 (7th Cir. 2008).

**4.11**    On January 10, 2002, CropUSA purportedly entered into a Memorandum of Understanding with the Controlling Defendants. Under the terms of this memorandum, Beck and Cashman were obligated to guarantee loans on behalf of CropUSA. However, Beck and Cashman were also obligated to guarantee loans on behalf of AIA. Notwithstanding this obligation, the Controlling Defendants subsequently arranged for AIA to guarantee CropUSA's lines of credit even though the guarantees were barred by AIA's articles of incorporation and bylaws.

**4.12**    In 2004, the Controlling Defendants attempted to raise capital for CropUSA by selling shares in CropUSA to private investors by way of a $10,000,000.00 private placement. Upon information and belief, Hawley Troxell drafted the July 15, 2004, Private Placement Memorandum, despite its obligations to AIA.

**4.13**    When CropUSA began distributing the Private Placement Memorandum in 2004, the company was experiencing financial difficulties that made it difficult, if not impossible, to attract investors to the private placement. In addition, the company's financial difficulties threatened its ability to participate in the Federal Crop Insurance program.

**4.14**    In order to boost CropUSA's balance sheet for the purpose of operating the

FIRST AMENDED COMPLAINT - 13

**2 SER 427**

company, attracting investors and maintaining access to the Federal Crop Insurance program, the Controlling Defendants devised a scheme to illegally transfer a large sum of money from AIA Insurance to CropUSA. The Controlling Defendants conspired with each other in the formation and execution of this scheme. Upon information and belief, Hawley Troxell provided counsel to CropUSA with respect to the unlawful transfer of funds and/or has at a minimum assisted in covering up the facts of this illegal transfer.

**4.15** In August, 2004, AIA Insurance received a payment of $1,510,693 from Trustmark.

**4.16** Rather than deposit the payment of $1,510,693 into the account of AIA Insurance, where it would have benefited AIA and its innocent shareholders, Taylor deposited the funds into a new account entitled "AIA Insurance Inc. CropUSA." The address for this account coincided with the address for Taylor's personal residence at 2020 Broadview Drive in Lewiston, Idaho.

**4.17** Shortly after diverting the $1,510,693 into the "AIA Insurance Inc. CropUSA" account, AIA Insurance illegally transferred the funds to CropUSA. The Controlling Defendants attempted to disguise this conversion of funds by characterizing the transaction as a purchase of Preferred C Shares in AIA Services. However, as the Controlling Defendants acknowledged at the time, there was no market for these shares. At the time these funds were converted by CropUSA, there was no authorization of any kind for the transaction. In order to create a plausible explanation for the transfer of funds, CropUSA eventually produced a document designated as a Consent in Lieu of Meeting dated August 26, 2004. (See *Consent in Lieu of Meeting, August 26, 2004*, attached as **Exhibit E** to this First Amended Complaint and incorporated by reference

FIRST AMENDED COMPLAINT - 14

herein.)  However, this document itself is completely fraudulent, as it was retroactively created months later than the purported date in order to deceive auditors who questioned the validity of this transaction.  Furthermore, this transaction violated the terms of AIA Services' Amended and Restated Articles of Incorporation, which required that all Preferred C shares be redeemed equally and simultaneously.

**4.18**     CropUSA was carrying these shares on its books with a value of $21,693, which means that CropUSA realized a gain of $1,489,000 on this purported sale of shares. (See *CropUSA Financial Statement,* relevant pages of which attached as **Exhibit F** to this First Amended Complaint and incorporated by reference herein.)  "Corporate Theft" is an accurate description of this transaction.

**4.19**     Taylor was CEO and director of AIA Services, AIA Insurance and CropUSA at the time of the fraudulent transaction described in paragraphs 4.15 through 4.18 and other fraudulent transactions identified in this First Amended Complaint, and unlawfully benefited from those transactions.

**4.20**     The Controlling Defendants were all purported shareholders of CropUSA and benefited from the fraudulent transaction described in paragraphs 4.15 through 4.18 of this First Amended Complaint and the other unlawful transactions described herein.

**4.21**     The innocent shareholders of AIA Services were given no notice of the 2004 stock transaction, nor were any proper board meetings held to approve the transaction. However, as with the fraudulent document prepared on behalf of CropUSA, a fraudulent Consent if Lieu of Meeting, dated August 26, 2004, was prepared on behalf of AIA.  (See *Consent in Lieu of Meeting, AIA, August 26, 2004*, attached as **Exhibit G** to this First Amended Complaint and incorporated by reference herein).  This document was actually

FIRST AMENDED COMPLAINT - 15

produced several months after the transaction and was created to deceive auditors.

**4.22**    Upon information and believe, Hawley Troxell provided legal services to both AIA and CropUSA at the time of the 2004 transaction.  Hawley Troxell, Babbitt, Ashby and/or Riley at various times, as purported counsel for AIA, failed to disclose to AIA that the acts of the Controlling Defendants constituted a breach of their fiduciary duties owed to AIA.  Hawley Troxell failed to disclose to AIA, or to anyone else, that this transaction was unlawful on many levels, including but not limited to the fact that it did not comply with articles of incorporation and bylaws, caused a breach of AIA's other contracts, and could not be justified by the balance sheet of either AIA Insurance or CropUSA.  Upon information and belief, Hawley Troxell had knowledge of the back-dated Consent in Lieu of Meeting documents.

**4.23**    After robbing AIA Insurance of over $1,500,000.00 in 2004, the Controlling Defendants continued to operate CropUSA with assets both tangible and intangible that rightly belonged to AIA and continued to conceal their actions from the plaintiff and other shareholders.

**4.24**    Under the management and direction of the Controlling Defendants, AIA regularly failed to allocate costs to CropUSA and other entities and failed to charge markup, interest or profit on costs paid for other entities.  For example, Taylor's own salary of $250,000.00 was allocated entirely to AIA Services even though Taylor's contractual right to salary from AIA Services had expired in 1998 and had never been renewed by an authorized board. (And, further, Taylor performed no actual work for AIA during the time in question.)  Hawley Troxell failed to take appropriate action or to advise AIA or duly authorized disinterested constituents of AIA that the failure to

FIRST AMENDED COMPLAINT - 16

allocate costs to CropUSA constituted fraud, conversion, and breach of fiduciaries and/or aiding and abetting the breach of fiduciary duties on the part of the Controlling Defendants.   Taylor, with the knowledge and complicity of the other Controlling Defendants also performed work for other entities while on AIA's payroll, *i.e.*, Pacific Empire Radio Corp., Pacific Empire Communications Corp., Pacific Empire Holdings Corp., Radio Leasing I LLC and Radio Leasing II LLC.   Taylor also had other AIA employees work for these entities without compensation to AIA.

**4.25**     Between its founding in 1999 and the filing of this lawsuit, CropUSA and other entities generated tens of millions of dollars of revenue (including premiums) and other benefits that would have flowed to AIA  but for the unlawful and unauthorized acts of the Controlling Defendants.

**4.26**     As of 2006, Taylor owed AIA at least $307,000.00 for personal loans he had taken from the company without shareholder knowledge or approval.  For several years, Taylor concealed these loans be engaging in false accounting whereby loans to him were treated as payments of principle on AIA's indebtedness to Reed Taylor.  In 2006, Taylor "corrected" an accounting "error" by increasing the balance due on Reed Taylor's note to $6 million.  Taylor has still not repaid his unauthorized personal loans.  Taylor also had AIA pay his personal maid, his personal credit card bills, donations, cash advances, family cell phone bills, and other personal expenses.  Taylor also had AIA purchase several vehicles from him, and Taylor continued to drive these vehicles after the sales. Taylor also had AIA employees perform work on his personal residence and on other real property not owned by AIA.  These acts were all committed with the knowledge and complicity of the Controlling Defendants.

FIRST AMENDED COMPLAINT - 17

**4.27**    As the purported attorneys for AIA, two entities, Hawley Troxell, Babbitt, Ashby and/or Riley owed duties of loyalty, care, and good faith to AIA and these defendants breached these duties by engaging in the simultaneous representation of the Controlling Defendants, CropUSA, and other parties with interests adverse to AIA. In addition, and/or in the alternative, these attorney defendants have exceeded the scope of their representation and all acts taken beyond the scope of representation constitute acts of aiding and abetting exposing the lawyer defendants to liability as joint tortfeasors.

**4.28**    In August, 2007, AIA settled litigation with the state of Idaho whereby AIA received a promissory worth approximately $1.5 million. Although AIA Insurance paid the costs of this litigation, the Controlling Defendants, with the assistance of Riley and Hawley Troxell, improperly titled the note in the name of AIA Services only, and then pledged the note to CropUSA so that the Controlling Defendants could borrow money to pay their attorneys' fees to Hawley Troxell. As with the 2004 transactions (4.15-4.18), the transaction is indistinguishable from theft. Upon information and belief, the pledge agreement was drafted by Hawley Troxell and/or Riley, although they later asserted that they were only "scriveners" for the transaction.

**4.29**    On October 26, 2007, Hawley Troxell and/or Riley drafted and delivered an opinion letter falsely representing that AIA Insurance was authorized to guarantee a $15,000,000.00 line of credit on behalf of CropUSA.  (See *Hawley Troxell Opinion Letter, October 26, 2007*, which is attached as **Exhibit G** to this First Amended Complaint and is incorporated by reference herein.) This letter was delivered in violation of the Amended and Restated Articles of Incorporation of AIA Services, the bylaws of AIA Services and the restated bylaws of AIA Insurance, and in violation of the duty of

FIRST AMENDED COMPLAINT - 18

loyalty owed by Hawley Troxell to AIA.  This letter was distributed in furtherance of the scheme to enrich CropUSA at the expense of AIA and to further the RICO enterprise operated by the Controlling Defendants.  Additionally, Lancelot, the lender on this $15,000,000.00 line of credit was subsequently exposed as a Ponzi scheme, and its founder, Gregory Bell, pleaded guilty to criminal charges in federal court.  Mr. Bell was the signee for Lancelot on the $15,000,000.00 line of credit.  These facts, along with others, were never disclosed to AIA or duly authorized and disinterested constituents of AIA by Hawley Troxell or the attorney defendants.

## V.    CERTIFICATE OF COMPLIANCE WITH I.C. § 30-1-742, FED. R. CIV. P. 23.1, AND I.R.C.P.  23(1)(A) and OTHER FACTS

**5.1**    As a prerequisite to filing this lawsuit under Idaho Code § 30-1-742, Federal Rule of Civil Procedure 23.1, and Idaho Rule of Civil Procedure 23(1)(a), Donna Taylor served a derivative demand letter on the purported boards of directors of AIA Services and AIA Insurance on July 21, 2008.  (See *Derivative Demand Letter, July 21, 2008*, attached as **Demand Letter**  and incorporated by reference herein.)  RICO actions may be brought derivatively.  *Diduck v. Kaszycki & Sons, Contractors, Inc.,* 737 F. Supp. 792 (S.D.N.Y. 1990).

**5.2**    On July 23, 2008, Hawley Troxell, Babbitt, Ashby and Riley, filed a Motion for Stay of Proceedings in *Taylor v. AIA Services*, and asserted that the stay was necessary so that AIA Services and AIA Insurance could conduct an inquiry into the demands made by Donna Taylor in her letter of July 21, 2008.

**5.3**    On July 31, 2008, attorney James LaRue, representing Hawley Troxell and the attorney defendants, responded to those portions of the demand letter that asked the purported board of directors to terminate Hawley Troxell.   In this letter, LaRue

FIRST AMENDED COMPLAINT - 19

**2 SER 433**

disingenuously demanded that Donna Taylor provide the complete factual basis for each and every one of her claim when he knew that his clients and the Controlling Defendants had full knowledge of Donna Taylor's claims and unfettered access to and control of all documents relevant to claims asserted in Donna Taylor's demand letter.

5.4     On August 14, 2008, Hawley Troxell and the attorney defendants disingenuously filed a petition for a court appointed independent inquiry on behalf of AIA when they had no intention of following through with the inquiry.

5.5     On September 4, 2008, Reed Taylor responded to the petition for a court appointed independent inquiry.  Notably, Reed Taylor did not oppose the appointment of independent investigators.  Instead, he objected to the investigators proposed by Hawley Troxell, Judges Schilling and Reinhardt, as both of these judges had previous professional relationships with the defendants and their attorneys.

5.6     Although the parties had filed briefing with respect to the appointment of independent investigators, Hawley Troxell and the attorney defendants never noted the motion for a hearing and the court never ruled on the request, and they intentionally abandoned the appointment of an independent inquiry.

5.7     Upon information and belief, the defendants have never conducted a further investigation of the demands made in Donna Taylor's letter of July 21, 2008.

5.8     The defendants have not taken any of the actions demanded by Donna Taylor in her demand letter.  All of the claims made in this lawsuit were reasonably contemplated by the derivative demand letter, as it demanded that the board take all actions against all parties.

5.9     As owner of Preferred A Shares in AIA Services, and as beneficial owner

FIRST AMENDED COMPLAINT - 20

common shares in AIA Services, Donna Taylor fairly represents the interests of shareholders not named in this suit. Taylor is not pursuing this matter in a collusive manner in order to obtain jurisdiction where it does not otherwise exist but to only pursue *bona fide* claims.

### VI.    CAUSES OF ACTION

The facts alleged in paragraphs 4.1 through 4.29 and paragraphs 5.1 through 5.9 are re-alleged and restated herein to the extent necessary to maintain each cause of action herein.  Where necessary, each of the causes of action pled herein shall be construed as having been pled in the alternative.

### FIRST CAUSE OF ACTION—RICO, 18 U.S.C. § 1961 *et seq.*
### (Controlling Defendants, CropUSA,  Hawley Troxell, Riley, Babbitt and Ashby)

**6.1**    Under 18 U.S. C. § 1961(1), "racketeering activity" includes a violation of certain federal statutes, including 18 U.S.C.  § 1341, which makes it a crime to "devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses representations or promises…" with a further requirement that the fraud include the use of the mails or interstate carriers.  Racketeering activity also includes fraud committed through the use of interstate wires.  18 U.S.C. § 1343.  A "pattern or racketeering activity" includes at least two acts of racketeering occurring after the enactment of the statute, with the last act occurring within ten years of the prior act. 18 U.S.C. § 1961(5).

**6.2**    18 U.S.C. 1962(a) makes it illegal for anyone who has received income from a pattern of racketeering activity to invest any of the income received in any enterprise which is engaged in or effects interstate or international commerce.  18 U.S.C. 1962(b) makes it illegal for a person to obtain interest in or control over any enterprise engaged in

FIRST AMENDED COMPLAINT - 21

or effecting interstate or international commerce by engaging in a pattern of racketeering activity.  18 U.S.C. 1962(c) makes it illegal for employees or associates of enterprises engaged in or effecting interstate or international commerce to participate in or conduct the enterprise's affairs through a pattern of racketeering activity.  18 U.S.C. § 1962(d) makes it illegal for any person to conspire with another to violate subsections (a),(b) or (c) of the statute.  A person damaged by any violation of 18 U.S.C. § 1962 has a cause of action for treble damages under 18 U.S.C. § 1964(c).

**6.3**     CropUSA was formed by the Controlling Defendants in 2000, and was operated thereafter as a scheme or artifice to defraud AIA or to obtain money or property from AIA by means of false or fraudulent pretenses, representations, or promises, *i.e.*, as a "racketeering enterprise" under 18 U.S.C. § 1961(4).  The RICO Defendants utilized the United States mail and/or interstate wire communications in furtherance of this scheme or artifice, and their actions had an effect on interstate commerce.

**6.4**     The actions taken by CropUSA and the Controlling Defendants with respect to the purported January 10, 2001, shareholders' meeting advanced the scheme to obtain money or property by means of false or fraudulent pretenses, representations, or promises. These defendants falsely represented that negotiations had taken place and that AIA Services had authorized CropUSA to operate as an independent company, rather than as a wholly-owned subsidiary.  These defendants further acted to deprive AIA of money and property by agreeing to transfer AIA corporate assets, including trade secrets, to CropUSA, without compensation to AIA.  This scheme to deprive AIA of money and property was advanced by concealing the contents of the purported January 10, 2001 board of directors meeting from the innocent shareholders of AIA.

FIRST AMENDED COMPLAINT - 22

**6.5** From 2000 and continuing through the filing of this lawsuit, CropUSA and the Controlling Defendants further acted to fraudulently deprive AIA of money and property by arranging for AIA to pay CropUSA's expenses, including but not limited to the salaries of Taylor and Petersen, and employee benefits, as well as arranging for AIA to provide corporate infrastructure to CropUSA without compensation to AIA.

**6.6** The Controlling Defendants and CropUSA further acted to deprive AIA of money and property in 2004, when CropUSA converted over $1.5 million belonging to AIA Insurance for its own use.

**6.7** All defendants named under this cause of action further acted to deprive AIA of money and property in 2007, when the deed of trust received from the state of Idaho in settlement of a lawsuit was titled to AIA Services and subsequently pledged to CropUSA so that CropUSA could borrow money to pay the attorney's fees of Hawley Troxell, Babbitt, Ashby and Riley for providing legal services beyond their respective scopes of representation.

**6.8** A pattern of racketeering activity is established by, *inter alia*, the following acts:

a. The unlawful transfer of AIA assets to CropUSA without shareholder approval and in contradiction of express representations that CropUSA would be operated for the benefit of AIA;

b. The daily operation of CropUSA with assets unlawfully converted from AIA;

c. The unlawful transfer of $1.5 million from AIA to CropUSA in 2004, wherein AIA received consideration worth approximately $20,000;

d. The 2007 transfer of the deed of trust belonging to AIA to CropUSA, with AIA receiving no consideration for this transaction;

FIRST AMENDED COMPLAINT - 23

**2 SER 437**

e.    The use of the deed of trust acquired by AIA in 2007 to pay the personal legal fees of the Controlling Defendants.

Each of these acts is the direct and proximate cause of the damages claimed by the plaintiff in this case.

6.9    With respect to the illegal acts described in paragraphs 6.3 through 6.7, the defendants utilized the United States mail and/or interstate wires, *e.g.,* email, in furtherance of their activities, thereby establishing a predicate offense to RICO under 18 U.S. C. § 1341 and/or 18 U.S.C. § 1343. 18 U.S.C. § 1961(1).

a.    The February 27, 2001, letter to Donna Taylor, **Exhibit D,** constituted mail fraud and advanced the scheme of the racketeering enterprise.

b.    The funds obtained by AIA in 2004 (the Trustmark settlement) were fraudulently converted by CropUSA by way of a wire transfer from "AIA Insurance CropUSA" (a fictional entity) to CropUSA on or about August 26, 2004.

c.    Upon information and belief, the fraudulent documents entitled "Consent in Lieu of Meeting," which were created months later than the dates represented, were created to deceive auditors and were in fact mailed to auditors.

d.    Upon information and belief, the unlawful 2007 pledge of the mortgage belonging to AIA was accomplished through  the use of the United States mail.

6.10    The Controlling Defendants all used funds and/or assets received through a pattern of racketeering activity to invest in or obtain control of an enterprise  engaged in a pattern of racketeering activity and are liable to AIA for treble damages and attorney's fees under 18 U.S.C. § 1962(a).  Specifically, each of these defendants used money and assets obtained in 2004 and on an ongoing basis thereafter to further the continued

FIRST AMENDED COMPLAINT - 24

existence and operation of the racketeering enterprise, CropUSA.

**6.11**    Defendants Beck, Cashman and Petersen were all employees or associates (as purported board members) of CropUSA during the period of racketeering activities and participated in or controlled its affairs.  Beck and Cashman were members of CropUSA's purported "advisory board," were involved in all important financial decisions, and otherwise participated in the activities of CropUSA in furtherance of racketeering activity.  These defendants are liable to AIA under 18 U.S.C. § 1962(c) for treble damages and attorney's fees for the damages caused by their conduct.

**6.12**    All defendants named under this cause of action had knowledge of CropUSA's pattern of racketeering activity, agreed with the objectives of the racketeering activity, and took overt acts to advance the interests of CropUSA, thereby rendering each of these defendants liable to the innocent shareholders of AIA under 18 U.S.C. § 1962(d) for triple damages and attorney's fees for damages caused by their conduct.  With respect to Hawley Troxell, Babbitt, Ashby and/or Riley, a cause of action against corporate counsel of the RICO enterprise exists where the law firm communicates or disseminates the misrepresentations of the RICO enterprise or breaches fiduciary duties to clients in the course of providing representation to the RICO enterprise, which describes the conduct of these defendants in this case. See, e.g., *Design Pallets, Inc., v. GrayRobinson P.A.*, 515 F.Supp.2d 1246 (M.D. Fla. 2007).  RICO liability can also arise from nondisclosure of material facts where there is a duty to disclose, which once again describes the conduct of these defendants in this case.   *Design Pallets*, 515 F.Supp.2d at 1255.  By taking these actions to the detriment of shareholders, Hawley Troxell should be found to have undertaken the representation of the various entities in bad faith.

FIRST AMENDED COMPLAINT - 25

### SECOND CAUSE OF ACTION—BREACH OF FIDUCIARY DUTY
#### (Taylor, Beck, Cashman, Babbitt, Riley, Ashby, Hawley Troxell)

**6.13**    As members, or purported members of the board of directors for AIA Services and/or AIA Insurance, the Controlling Defendants owed fiduciary duties to the corporations.  As a corporate officer, and as an attorney, Taylor owed an elevated level of fiduciary duties to the corporations.  As AIA's retained corporate counsel, Hawley Troxell, if authorized, owed fiduciary duties to the corporations.  This duty extended to defendants Babbitt, Riley and Ashby.  If not authorized to act as counsel, Hawley Troxell acted with apparent authority as agent and owes fiduciary duties as a result of that agency relationship.  All of these defendants have breached their fiduciary duties to AIA and those breaches are the proximate cause of the damages claimed herein.

**6.14**    By using AIA corporate assets to fund, form and operate CropUSA, a competing entity, the defendants breached their fiduciary duties to the corporation.

**6.15**    Hawley Troxell represented or was retained by AIA at the time CropUSA was formed.  By failing to advise that shareholder approval of any such transaction would be necessary, and by failing to advise that the transaction constituted a breach of fiduciary duty, individually and collectively, on the part of the board members, and by failing to advise that the transaction constituted a violation of the non-compete clause in Taylor's employment contract, Hawley Troxell breached the fiduciary duties it owed to AIA and its representation was taken in bad faith.  A shareholder's allegations of a law firm's conflict of interest in representing two corporations is sufficient to state a claim for breach of fiduciary duty.  *Reis v. Barley, Snyder, Senft & Cohen LLC,* 484 F.Supp.2d 337 (E.D. Pa. 2007)

**6.16**    The defendants further breached their fiduciary duties to the corporation when

FIRST AMENDED COMPLAINT - 26

**2 SER 440**

they orchestrated the transfer of over $1.5 million to CropUSA in 2004. These defendants unlawfully funneled funds from AIA Insurance to CropUSA to enrich themselves and to artificially enhance CropUSA's balance sheet.

**6.17** The defendants on AIA's board of directors further breached their fiduciary duties to the corporation by allowing CropUSA to utilize AIA Services' corporate assets, including agents, customer lists and trade secrets.

**6.18** All defendants named under this cause of action breached their fiduciary duties to AIA when they caused the deed of trust received through the settlement of litigation with the state of Idaho to be titled with AIA Services and subsequently pledged to CropUSA so that CropUSA could borrow money to pay the attorney's fees of Hawley Troxell.

**6.19** All defendants named under this cause of action further breached their fiduciary duties to AIA when they caused AIA Insurance to guarantee a $15 million line of credit on behalf of and for the sole benefit of CropUSA, and thereafter concealed this transaction from AIA. Hawley Troxell and/or Riley violated its fiduciary duties to AIA by writing an opinion letter stating that AIA had authority to make this loan when this loan guarantee was in fact barred by the articles of incorporation and bylaws of AIA.

**6.20** The defendants named in this cause of action further breached their fiduciary duties to the corporation by failing to act on Donna Taylor's July 21, 2008 demand letter.

**6.21** Hawley Troxell and the individual lawyers have acted continuously as purported counsel for AIA and CropUSA during the period from 2001, at the latest, and through the filing of this lawsuit. As counsel, Hawley Troxell, has committed numerous acts and/or omissions that were detrimental to the interests of AIA, and, upon information and belief, was providing legal advice when the Controlling Defendants, without notice or

FIRST AMENDED COMPLAINT - 27

**2 SER 441**

authority, converted CropUSA from a wholly owned subsidiary of AIA Services into a separate corporate entity of which Taylor was purportedly the sole shareholder. These defendants provided legal advice with respect to CropUSA's Private Offering Memorandum, while at the same time representing AIA. This was akin to simultaneously representing both the thief and the victim.

**6.22** Each of these defendants is a "faithless fiduciary" as defined by law and is therefore required to disgorge all compensation and consideration received from AIA and/or CropUSA. The disgorgement is in addition to liability caused by the breaches of fiduciary duty. In the case of Hawley Troxell, the disgorgement goes to all fees received from any of the defendants. In the case of the faithless board members, the disgorgement goes to all salary, bonuses, warrants, stock options, or stock received from AIA.

**6.23** The defendants named under this cause of action are jointly and severally liable to AIA for all damages arising from their breaches of fiduciary duty.

### THIRD CAUSE OF ACTION—AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY
### (Taylor, Beck, Cashman, Hawley Troxell, Babbitt, Riley, Ashby)

**6.24** One who counsels, advises, abets or assists in the commission of an actionable wrong is responsible to the injured person for the entire loss or damage. 86 C.J.S. Torts § 105; RESTATEMENT (FIRST) OF TORTS § 876 (1939). Aiding and abetting in the commission of an actionable wrong may be inferred from the fact that one aided and abetted efforts to conceal the wrong. 86 C.J.S. Torts § 105. Liability for aiding and abetting the commission of a tort may be established by showing the person was present at the time of the actionable wrong and did not disapprove or oppose the action. Plaintiffs alleging aiding and abetting need not prove that the aiding and abetting was

FIRST AMENDED COMPLAINT - 28

necessary for the commission of the tort, only that the aiding and abetting made it easier for the tort to occur. *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 38 P.3d 12 (2002).

6.25     During certain relevant times, each of the defendants named under this cause of action had knowledge of the other defendants' act and omissions, knew that the acts or omissions constituted a breach of fiduciary duty, did not disapprove of the acts or omissions, took no steps to prevent the commission of the torts, and assisted in the concealment of the acts and omissions described herein, thereby damaging AIA.

6.26     Beck and Cashman aided and abetted the breaches of fiduciary duty committed by Taylor by assisting in and concealing the actions described in this complaint. Beck and Cashman aided and abetted the purported "spin off" of CropUSA from AIA Services, aided and abetted Taylor's scheme to divert $1.5 million from AIA Insurance in 2004, aided and abetted Taylor's failed effort to achieve a private placement for CropUSA (the "exit strategy"), aided and abetted the  2007 scheme to pledge the mortgage owned by AIA Services to CropUSA, aided and abetted the action of Taylor in having AIA Services guarantee CropUSA's line of credit when Beck and Cashman should have guaranteed the line of credit.

6.27     Hawley Troxell and each of the named attorney defendants aided and abetted in the commission of torts committed by The Controlling Defendants by assisting in and covering up the tortious acts described herein.  Hawley Troxell and the named attorneys were present at the commission of the torts and did not disapprove or oppose the acts.  To the contrary, Hawley Troxell and the named attorneys provided legal advice and/or opinion letters that facilitated the breaches of fiduciary duty by the other defendants.

FIRST AMENDED COMPLAINT - 29

Hawley Troxell was present as counsel when Taylor purportedly spun off CropUSA and failed to counsel that the conduct was improper and, in fact, concealed the impropriety from AIA.    Hawley Troxell assisted in 2004 when The Controlling Defendants engineered the illicit transfer of funds from AIA Insurance in order to prop up the proposed private placement, which Hawley Troxell also handled.    Hawley Troxell was present as counsel and issued an improper opinion letter when The Controlling Defendants arranged for AIA Services to guarantee the line of credit of CropUSA. Hawley Troxell, Babbitt, Ashby and Riley assisted when Taylor, Beck and Cashman pledged a $1.2 million mortgage belonging to CropUSA so that CropUSA could borrow money to pay Hawley Troxell's attorney's fees, and failed to counsel that the transaction was improper.

**6.28**    Each of these defendants, by aiding and abetting the acts described herein, is jointly and severally liable for all damages resulting from these breaches of fiduciary duty.

### FOURTH CAUSE OF ACTION—BREACH OF CONTRACT
#### (John Taylor)

**6.29**    On August 1, 1995, Taylor and AIA Services entered into an Executive Officer's Agreement.

**6.30**    Section 9 of the Executive Officer's Agreement sets for express covenants not to compete.  Subsection A of the covenants prohibits Taylor from soliciting AIA customers or otherwise diverting the business of AIA Services customers.  Subsection B prohibits Taylor from participating in any insurance business that underwrites, markets or administers insurance products for commodity associations.  Subsection C prohibits Taylor from soliciting AIA Services employees for other employment.  Subsection D of

FIRST AMENDED COMPLAINT - 30

the covenants bars Taylor from divulging or exploiting trade secrets belonging to AIA.

**6.31**    By forming CropUSA as anything other than a wholly-owned subsidiary of AIA, Taylor breached all four subsections of Section 9 of the Executive Officer's Agreement.

**6.32**    By continuing to operate CropUSA with assets belonging to AIA, including AIA employees, Taylor has committed an ongoing breach of all four subsections of Section 9 of the Executive Officer's Agreement.    Taylor has further breached Section 9 by operating Pacific Empire Holdings.

**6.33**    Taylor's breaches of the Executive Officer's Agreement have damaged AIA in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION—LEGAL MALPRACTICE**
**(Hawley Troxell, Babbitt, Riley, Ashby)**

**6.34**    A law firm is liable for malpractice where (1) there exists and attorney client relationship; (2) where the lawyers owe duties pursuant to the relationship; (3) where the lawyers breach their duties or negligently perform them; and (4) such breaches proximately cause damage to the plaintiffs.  *Harrigfeld v. Hancock,* 140 Idaho 134, 90 P.3d 884 (2004).  A legal malpractice claim may be brought in a derivative action. *Schulman v. Wolf & Samson, PC,* 951 A.2d 1051 (N.J. 2008).  Upon information and belief, Hawley Troxell has provided ongoing legal services to AIA from 1999 through the filing of this complaint.  An attorney-client relationship exists between AIA and Hawley Troxell as well as between AIA and the individually named attorney defendants.

**6.35**    Pursuant to the attorney-client relationship, Hawley Troxell and its lawyers owe AIA an undivided duty of loyalty.  Hawley Troxell and its lawyers, including those named in this complaint, are required at all times to provide legal advice and take action that is in the best interests of AIA.  Hawley Troxell violated this duty of loyalty by

FIRST AMENDED COMPLAINT - 31

simultaneously representing AIA and CropUSA, and by taking funds from AIA for the defense of CropUSA and the Controlling Defendants.

**6.36** Hawley Troxell and the named attorney defendants also committed legal malpractice when they breached fiduciary duties to AIA as described herein.

**6.37** AIA suffered damages as a direct, foreseeable and proximate result of the breaches of duty and the acts of malpractice described herein.

**SIXTH CAUSE OF ACTION—FRAUD/FRAUDULENT
CONCEALMENT/CONSTRUCTIVE FRAUD
(Controlling Defendants)**

**6.38** These defendants are liable to AIA for fraud because each of them (1) made representations of fact as asserted throughout this complaint, including but not limited to representations that CropUSA was being operated for the benefit of AIA; (2) which were false; (3) which were material; (4) which they knew to be false; (5) intended that there be reliance; (6) where other party was ignorant of the falsity of the statement; (7) and the other party did rely; (8) and the reliance was justified; and (9) injury resulted. *Mannos v. Moss,* 143 Idaho 927, 155 P.3d 1166 (2007)(holding that misrepresentations in financial statements precluded summary judgment). Constructive fraud is identical to fraud, except that the plaintiff need not prove speaker's knowledge of the fraud and the speaker's intent that the other party rely on the representations. 37 Am. Jur. 2d Fraud and Deceit § 9.

**6.39** In addition to making false representations, these defendants also concealed information from AIA with knowledge that the concealed information was material and that the concealment would cause AIA to suffer otherwise avoidable damages. Failure to disclose a fact where one has a duty to disclose is the legal equivalent of representing the

FIRST AMENDED COMPLAINT - 32

2 SER 447

non-existence of the fact. Where facts are fraudulently concealed, plaintiffs need not show reliance as there is nothing other than silence upon which to rely.

**6.40** The Controlling Defendants represented to AIA Services that CropUSA was a wholly owned subsidiary of AIA Services. Simultaneously, the Controlling Defendants adopted the position, not disclosed to AIA or its shareholders, that CropUSA was an independent entity with Taylor as its sole shareholder. These representations were false, the defendants knew of their falsity, these defendants intended that there be reliance, there was justifiable reliance and AIA was damaged as a result.

**6.41** By operating CropUSA as an independent entity, and by using CropUSA as a vehicle for misappropriating and converting corporate assets, the named defendants committed ongoing fraud that has persisted through the date of this complaint.

**6.42** The Controlling Defendants also made misrepresentations to AIA in the form of false, misleading and fraudulent financial statements, upon which AIA reasonably relied, with that reliance being the proximate cause of AIA's damages.

**6.43** When the Controlling Defendants transferred more than $1.5 million to CropUSA in 2004, they concealed the fact of this transaction from AIA and AIA was damaged by this concealment.

**6.44** When the Controlling Defendants transferred AIA corporate assets, including employees, goodwill and trade secrets, to CropUSA, they concealed the fact of this transfer from AIA and AIA was damaged by this concealment.

**6.45** When the Controlling Defendants had AIA pay CropUSA's corporate expenses, including the salaries of Taylor and Petersen, they concealed this fact from AIA and its innocent shareholders. AIA suffered damages as a result of this concealment.

FIRST AMENDED COMPLAINT - 33

**6.46**     When the Controlling Defendants pledged the mortgage obtained by AIA from the state of Idaho to CropUSA so that CropUSA could borrow money to pay the attorney's fees of Hawley Troxell, they concealed this fact from AIA and its innocent shareholders.  AIA suffered damages as a result of this concealment.

**6.47**     When the Controlling Defendants had AIA Insurance guarantee CropUSA's $15 million line of credit, they concealed the fact of this guarantee from AIA.

**6.48**     These defendants are jointly and severally liable to AIA for all damages arising from the fraud described herein and, further, are the ongoing fraud bars these defendants from asserting a statute of limitations defense.

### SEVENTH CAUSE OF ACTION—AIDING AND ABETTING FRAUD
#### (Controlling Defendants, Babbitt, Riley, Ashby, Hawley Troxell)

**6.49**     As discussed under the Third Cause of Action, one who aids and abets in the commission of a tort is liable with the primary tortfeasor(s) for all damages resulting from the tort.  Aiding and abetting is established where one has knowledge of the tort, does not disapprove, and takes no action to prevent the commission of the tort.  Hawley Troxell and one or more of the named lawyer defendants were providing legal representation to AIA at the time of each of the fraudulent acts alleged in this complaint. The individual non-lawyer defendants, in addition to committing individual acts of fraud, aided and abetted each other's actions.

**6.50**     Hawley Troxell and/or the individual lawyers named herein knew or should have known that the acts of the Controlling Defendants constituted fraud.  Hawley Troxell and the individual lawyers knew or should have known that these acts were detrimental to of AIA.  Hawley Troxell's silence, failure to act and intentional acts to cover up fraud upon AIA constituted aiding and abetting the fraud upon AIA.

FIRST AMENDED COMPLAINT - 34

**6.51**    Hawley Troxell and the individual lawyers knew or should have known that the transfer of AIA assets to CropUSA constituted a fraud against AIA.

**6.52**    Hawley Troxell and the individual lawyers knew or should have known that the transfer of approximately $1,500,000.00 to CropUSA in 2004 constituted a fraud on AIA.

**6.53**    Hawley Troxell and the individual lawyers knew or should have known that the practice of allocating CropUSA expenses to AIA, and otherwise failing to maintain arms' length transactions between CropUSA and AIA, constituted a fraud on AIA.

**6.54**    By knowingly providing legal cover for the fraudulent acts described herein, Hawley Troxell and the individual lawyers have aided and abetted the fraud committed by the Controlling Defendants and Petersen.

**6.56**    As aiders and abettors, Hawley Troxell and the individual lawyers are liable to the innocent shareholders of AIA Services to the same extent as the primary tortfeasors. RESTATEMENT (FIRST) OF TORTS § 876 (1939).  Likewise, Taylor, Beck, Cashman and Petersen are all liable for aiding and abetting each other in the commission of fraud.

### EIGHTH CAUSE OF ACTION—EXCESSIVE COMPENSATION/CORPORATE WASTE
#### (Taylor and Beck)

**6.57**    To support a claim for excessive compensation, plaintiff need only show that the board lacked independence and/or lacked good faith.  *In Re: Tyson Foods, Inc.*, 919 A.2d 563 (Del. 2000).  The Controlling Defendants have controlled AIA's boards from 1995 to the present.  They lack independence and have not acted in good faith.

**6.58**    The Controlling Defendants paid excessive compensation and have wasted corporate assets during the course of managing the corporations.

**6.59**    These defendants are liable to AIA for damages caused by paying excessive

FIRST AMENDED COMPLAINT - 35

compensation and otherwise wasting corporate assets.

### NINTH CAUSE OF ACTION—ACCOUNT STATED
(John Taylor)

**6.60**    John Taylor established an account by borrowing $307,000.00 from AIA for his personal use.

**6.61**    Taylor subsequently confirmed the amount of the debt by "correcting" an accounting "error" so that AIA's book show that AIA is creditor and Taylor is debtor for $307,000.00.

**6.62**    Taylor has not paid any portion of this debt and the entire balance remains due and payable to AIA.

**6.63**    Taylor is liable to AIA for $307,000.00 on the account stated, plus prejudgment interest according to statute.

### VII.    JURY DEMAND

**7.1**    Plaintiffs hereby demand a trial by jury on all causes of action for which a jury trial is allowed by law.

### VIII.    PRAYER FOR RELIEF

Wherefore Plaintiffs pray for the following relief:

1.    For a judgment jointly and severally against all defendants for damages in an amount to be proven at trial;

2.    For judgments against individual defendants in an amount to be proven at trial, where appropriate, for damages for which joint and several liability does not apply to all defendants;

3.    For a judgment of treble damages against all RICO defendants as authorized by statute;

FIRST AMENDED COMPLAINT - 36

2 SER 450

4.      For an order requiring the Hawley Troxell to disgorge all attorneys fees paid to it by AIA Services, AIA Insurance, CropUSA and any of the named defendants and judgment in favor of AIA for that amount;

5.      For an order requiring the Controlling Defendants to disgorge all compensation received from AIA or CropUSA since 1999, including stock, cash and other assets, including, without limitation, as faithless fiduciaries.

6.      For an award to plaintiffs of attorneys' fees and cost incurred in this action as allowed by statute, contract, or recognized grounds of equity;

7.      For an order requiring that all funds recovered as a result of this litigation, minus fees, costs  and bona fide debts, be deposited with the Court registry and distributed only after court order, and that no funds from this litigation be paid to faithless fiduciaries Taylor, Beck and Cashman.

8.      For judgments against Taylor, Beck and Cashman, jointly and severally, as the alter-ego of CropUSA, for all damages incurred by AIA and attributable in whole or in part to CropUSA.

9.      For any such further relief or remedy, including injunctive relief, as Plaintiffs may demand prior to or at trial or as this Court may find just and equitable.

DATED this the 18th day of November, 2010 in Seattle, Washington.

LAW OFFICE OF LEE H. ROUSSO


By: /s/ Lee H. Rousso
Lee H. Rousso, ISB # 8353
800 Fifth Avenue, Suite 4100
Seattle, Washington 98104
 (206) 623-3818
 lee@leerousso.com
 Attorneys for Donna J. Taylor


FIRST AMENDED COMPLAINT - 37

## Campbell, Bissell & Kirby, PLLC

Attorneys & Counselors at Law

Michael S. Bissell • Licensed in WA, ID & AK
Richard D. Campbell • Licensed in WA, ID & MT
Patrick J. Kirby • Licensed in WA & ID

July 21, 2008

**Via Certified Mail and**
**Regular Mail**

Board of Directors
AIA Services Corporation, Inc. and AIA Insurance, Inc.
111 Main Street
Lewiston, ID 83501

**Re:**  **Demand of Donna Taylor and Reed Taylor Pursuant to Idaho Code 30-1-742**

Dear Board Members of AIA Services Corporation and AIA Insurance Inc.:

As you know, this firm represents Donna J. Taylor ("Donna"), the Series A Preferred Shareholder in AIA Services Corporation ("AIA Services"), and Reed Taylor ("Reed"), the pledgee of AIA Insurance, Inc. ("AIA Insurance") and creditor of AIA Services who is owed over $8.5 Million.

Donna and Reed hereby make demand upon the Board of Directors of AIA Services and AIA Insurance pursuant to Idaho Code 30-1-742 to take the action described herein. Specifically, demand is made that said entities immediately take action against the law firms of Hawley Troxell Ennis & Hawley; Clements, Brown & McNichols; Quarles & Brady; together with the responsible attorneys of said firms (and any other firms which have wrongfully represented the entities) for violating applicable Rules of Professional Conduct, malpractice, breach of fiduciary duties, and aiding and abetting, including, without limitation, all acts related to or involving the following claims and/or causes of action:

1. Wrongfully simultaneously representing Crop USA Insurance Agency, Inc. ("Crop USA") and AIA Services and AIA Insurance, while knowing these entities had divergent interests;

2. Taking action against the best interests of AIA Services and/or AIA Insurance;

3. Assisting in the commission of fraud and/or illegal activities;

4. Wrongfully allowing interested directors and other interested parties to direct litigation in light of substantial claims against them;

5. Issuing inappropriate opinion letters to lenders and auditors;

6. Failing to recover moneys and/or stock in Crop USA;

509-455-7100 • Fax 509-455-7111 • www.cbklawyers.com
416 Symons Building • 7 South Howard Street • Spokane, Washington 99201

**2 SER 452**

Board of Directors
AIA Services Corporation, Inc. and AIA Insurance, Inc.
July 21, 2008
Page - 2

7. Preventing claims from being made against present and past directors, including, without limitation, R. John Taylor, Michael Cashman, James Beck and Connie Taylor;

8. Failing to take action against Crop USA to recover funds owed;

9. Failing to take action against responsible present and past directors for violating the corporate opportunity doctrine by permitting Crop USA to become a separate company from AIA;

10. Failing to take action against interested directors and parties who took part in fraud, conspiracy and other illegal activities, including, without limitation, R. John Taylor, James Beck, Michael Cashman and Connie Taylor;

11. Breaching fiduciary duties (including the duty of loyalty) owed to AIA Services and AIA Insurance;

12. Aiding and abetting R. John Taylor, James Beck, Michael Cashman, Connie Taylor, Crop USA, and other interested parties who participated in the misappropriation of assets, opportunities, and funds of AIA Services and AIA Insurance (including the $1.5 Million wrongfully transferred from AIA Insurance to Crop USA);

13. Not ensuring that separate counsel was retained for AIA Services;

14. Not ensuring that separate counsel was retained for AIA Insurance knowing that it was pledged to Reed;

15. Assisting in illegal loan guarantees by AIA Services and/or AIA Insurance;

16. Wrongfully entering into a Joint Defense Agreement knowing that such an agreement was inappropriate in light of the significant claims AIA Services and AIA Insurance have against interested individuals and Crop USA;

17. Wrongfully obtaining shareholder consent to pay the attorneys' fees of past and present directors of AIA Services and AIA Insurance without full disclosure or obtaining votes only from disinterested shareholders;

18. Permitting Michael McNichols and Clements, Brown & McNichols to remain as counsel for R. John Taylor in violation of their duty of loyalty to AIA Services and AIA Insurance;

Board of Directors
AIA Services Corporation, Inc. and AIA Insurance, Inc.
July 21, 2008
Page - 3

19. Assisting in pledging the assets of AIA Services and AIA Insurance to Crop USA for the payment of attorneys' fees and costs of interested parties and others;

20. Permitting the business and employees of AIA Insurance and AIA Services to be detrimentally effected by the actions of interested parties (e.g., transferring AIA Insurance's employees to Crop USA);

21. Failing to take action against R. John Taylor and Connie Taylor for the significant breaches of R. John Taylor's employment agreement with AIA Services;

22. Failing to comply with contractual obligations owed to Reed and Donna;

23. Failing to recover inappropriate salaries, advances, loans, benefits, and compensation paid to R. John Taylor, Connie Taylor, James Beck and others;

24. Assisting in, and failing to take action pertaining to, the improper allocation expenses, labor, rent and other expenditures inappropriately utilized for the benefit of Crop USA.

25. Accepting payments of attorneys' fees in violation of the Rules of Professional Conduct;

26. Representing AIA Services and/or AIA Insurance in making inappropriate arguments (including alleged illegality of the debt to Reed) knowing that such arguments were counter to AIA Services' obligations to Reed and Donna and knowing that Richard Riley was a witness who provided a legal opinion counter to such arguments; and

27. Accepting payment of attorneys' fees and costs which should have been allocated to other parties, including, without limitation, fees and costs that should have been paid by Crop USA, R. John Taylor, James Beck, Michael Cashman and Connie Taylor.

Based upon the above wrongful acts (and others reasonably contemplated from the above acts and other acts known only to insiders at AIA Services and/or AIA Insurance), demand is made upon you to initiate legal action against the above-referenced law firms and lawyers to recover all applicable damages and to require a disgorgement of all attorneys' fees and costs paid to them, including, without limitation, for all inappropriate transactions and the litigation involving Reed and/or Donna. Based upon the foregoing demand is also made for action against R. John Taylor, Michael Cashman, James Beck, Connie Taylor, Crop USA and all other responsible parties for the recovery of damages and the disgorgement of all compensation and attorneys' fees and costs paid to or on their behalf.

2 SER 454

**2 SER 455**

Board of Directors
AIA Services Corporation, Inc. and AIA Insurance, Inc.
July 21, 2008
Page - 4

Please note that I have sent a copy of this notice to present counsel for AIA Services and AIA Insurance, and trust that they will ensure copies of this Notice are provided to all board members and shareholders. I would appreciate it if you would let me know as soon as possible whether AIA Services and/or AIA Insurance will be taking any of the requested action. The failure to respond or to immediately take action shall be construed as a rejection of the demands made by this letter.

Nothing herein should be considered or relied upon as a waiver of Donna and Reed's right to take immediate action on behalf of AIA Services and/or AIA Insurance due to exigent circumstances.

Very truly yours,

CAMPBELL, BISSELL & KIRBY, PLLC

MICHAEL S. BISSELL

MSB:mah
cc: Gary Babbitt (via email)
    D. John Ashby (via email)
    James Gatziolis (via email)
    Charles Harper (via email)
    Michael McNichols (via email)
    David Gittins (via email)
    Jon Hally (via email)
    Roderick Bond (via email)
    Reed Taylor (via email)
    Donna Taylor (via regular mail)
Data\1312\notice.072108.doc

2 SER 456

AIA Insurance, Inc.
Board of Directors
Consent in Lieu of Meeting
August 26, 2004

Whereas, CropUSA Insurance Agency, Inc. is owner of 205,000 Class C Preferred Shares of AIA Services Corporation, Par value $10.00, which the Company acquired though an exchange offering with non-employee shareholders; and

Whereas, CropUSA desires to liquidate its investment in the Preferred Shares; and

Whereas, AIA Insurance, Inc., desires to purchase the shares; and

Whereas, the most recent appraised value for the shares is $9.39 per share; and

Whereas, the redemption value is $10.00 per share plus accumulated but undeclared dividends of approximately $551,000, or a total redemption value of $15.51 per share; and

Whereas, AIA desires to purchase the shares at a discount; and

Whereas, CropUSA desires to sell the shares for an amount less than appraised value or redemption value.

NOW, THEREFORE, be it resolved that the Company hereby authorizes the purchase of 205,000 Series C Preferred shares from CropUSA for the sum of $1,510,693.

Be it further resolved that the officers are hereby authorized to execute such documents as are necessary to effectuate this sale and to disburse such funds.

The Board adopts this resolution by unanimous consent.

_____          _____
R. John Taylor                                        JoLee K. Duclos

_____
Bryan Freeman

**Exhibit - G**

AIA0001009

2 SER 457



# CropUSA Insurance Agency, Inc.

## Financial Statements
Year Ending December 31, 2004
And Audited December 31, 2003

**Exhibit - F**

CROP001100

# CropUSA Insurance Agency, Inc.

**Balance Sheet**
*In Thousands*

| December 31, | | 2004 | | 2003 |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash | $ | 308 | $ | 4 |
| Commissions receivable | | 12 | | 32 |
| Prepaid Expenses (Note 6) | | 8 | | — |
| Agent advances, net (Note 2) | | 333 | | 275 |
| Due from Related Companies (Note 6) | | 279 | | 6 |
| Office Equipment (net of depreciation) (Note 7) | | 669 | | 6 |
| Investment in AIA Services Corporation (Note 3) | | | | 22 |
| Mortgages (net of depreciation) (Note 7) | | 2,000 | | — |
| Total assets | $ | 3,609 | $ | 345 |
| **Liabilities and Stockholders' (Deficit) / Equity** | | | | |
| **Liabilities:** | | | | |
| Bank note payable (Note 5) | $ | 560 | $ | 560 |
| Accounts payable and accrued expenses | | 60 | | 10 |
| Commissions payable | | 9 | | 40 |
| Lease (Note 7) | | 349 | | — |
| Due to related companies (Note 6) | | — | | 91 |
| Total liabilities | | 978 | | 701 |
| Commitments and Contingencies (Notes 1, 5, 6 and 8) | | — | | — |
| **Stockholders' (Deficit) / Equity:** | | | | |
| Common stock $.01 par value, 20 million shares authorized, 7,394,300 shares issued and outstanding | | 74 | | 74 |
| Common Stock Subscribed, 2 million shares (Note 7) | | 20 | | — |
| Additional paid-in capital (Note 1) | | 3,487 | | 18 |
| Accumulated deficit  (Note 1) | | (950) | | (448) |
| Total Stockholders' (Deficit) / Equity | | 2,631 | | (356) |
| Total liabilities and Stockholders' Equity | $ | 3,609 | $ | 345 |

*See accompanying summary of accounting policies and notes to financial statements.*

4

CROP001103

# CropUSA Insurance Agency, Inc.

## Statement of Changes in Stockholders' Equity (Deficit)
### In Thousands

| | Common Stock | | | Additional Paid-in Capital | Accumulated Deficit | | Total Stockholders' Equity (Deficit) |
|---|---|---|---|---|---|---|---|
| | Shares | Amount | | | | | |
| **Balance, January 1, 2003** | 7,394 | $ 74 | $ | 17 | $ (113) | $ | (22) |
| Common stock issued for | — | — | | 1 | — | | 1 |
| Common stock issued for | — | — | | — | — | | — |
| Net loss | — | — | | — | (335) | | (335) |
| **Balance, December 31, 2003** | 7,394 | $ 74 | $ | 18 | $ (448) | $ | (356) |
| Common stock | — | — | | — | — | | — |
| Sale of AIA Services Corp Stock (Investment) | | | | 1,488 | | | 1,488 |
| Common Stock Subscribed | 2,000 | 20 | | 1,980 | | | 2,000 |
| Net loss | — | — | | — | (501) | | (501) |
| **Balance, December 31, 2004** | 9,394 | $ 94 | $ | 3,486 | $ (949) | $ | 2,631 |

*See accompanying summary of accounting policies and notes to financial statements.*

6

CROP001105

# CropUSA Insurance Agency, Inc.

## Notes to Financial Statements

| | | |
|---|---|---|
| 3. | **Investment in AIA Services Corporation** | On August of 2004, the company sold its investment in AIA Services (205,000 shares) for $1,510,693 to AIA Insurance, Inc. The sale included an adjustment to Additional Paid In Capital of $1,488,843. |
| 4. | **Deferred Income Taxes** | The Company's deferred tax assets principally relate to net operating loss carry forwards that are available, within statutory annual limits, to offset future taxable income, if any. These deferred tax assets, which approximated $40,000 at December 31, 2003, were fully reserved by the use of valuation allowance for financial reporting purposes. At December 31, 2003, the Company had net operating loss carry forwards of approximately $113,758 that expire in calendar year 2023. |
| 5. | **Bank Note Payable** | The Company executed an agreement with a financial institution that was modified in January 2003 to provide for a revolving line of credit. Maximum borrowings under the facility are limited to $750,000. All outstanding borrowings accrue interest at a fixed rate of 5.25% per annum and are personally guaranteed by certain stockholders of the Company. The Company is required to service all accrued interest monthly. As of February 15, 2005 the company re-signed the agreement and extending the terms. |
| 6. | **Related Party Transactions** | For the year ending December 31, 2003, $39,564 was recognized as a receivable from AIA for payments made in excess of services rendered. On December 31, 2004 CropUSA has a recognized receivable of $274,589, which is the net of all related party transactions between AIA and CropUSA. This receivable will be off set by future salary and other expenses paid by AIA on behalf of CropUSA.

Additional inter-company disclosures include a receivable from GNCIA for $4,650 on December 31, 2004.

In addition, the company has disclosed a pre-paid amount of $7,581. This represents pre-paid rent and insurance. |

11

CROP001110

CropUSA Insurance Agency, Inc.
Board of Directors
Consent in Lieu of Meeting
August 26, 2004

Whereas, CropUSA Insurance Agency, Inc. owns 205,000 Class C Preferred Shares of AIA Services Corporation, with a par value of $10.00, which CropUSA acquired though an exchange offering with non-employee shareholders; and

Whereas, CropUSA is not allowed to carry the value of the Preferred Shares on its balance sheet at fair market value due to applicable accounting rules; and

Whereas, CropUSA desires to liquidate its investment in the Preferred Shares to provide resources for its expansion plans; and

Whereas, AIA Insurance, Inc. desires to purchase said shares; and

Whereas; the most recent appraised value for the shares is $9.39 per share; and

Whereas, the redemption value is $10.00 per share plus accumulated but undeclared dividends of approximately $551,000, or a total redemption value of $15.51 per share; and

Whereas, the marketability of the shares to a third party would be problematic; and

Whereas, CropUSA desires to sell the shares for an amount less than appraised value or redemption value.

NOW THEREFORE, be it resolved that CropUSA hereby authorizes the sale of 205,000 shares of AIA Services Corporation Series C Preferred Shares to AIA Insurance for the sum of $1,510,693.

Be it further resolved that the officers are hereby authorized to execute such documents as are necessary to effectuate this sale and to deliver the shares to AIA Insurance, Inc. upon receipt of the funds.

The Board adopts this resolution by unanimous consent.

_____          _____
R. John Taylor                      JoLee K. Duclos

_____
Bryan Freeman

**Exhibit - E**                     Crop002226

**2 SER 461**

Donna Taylor                                    February 27, 2001
3730 Nicklaus Drive
Clarkston, Wa. 99403

Dear Ms. Taylor,

AIA is developing a new crop insurance program through a new company called CropUSA. We will be filing a Form D stock registration for the agencies who join with CropUSA.

The costs of putting the CropUSA program together in Texas have been paid. AIA now needs to launch in five new territories next Month.

AIA requests it be allowed to defer the stock redemption payments to you for the next five months. Even though redemption is deferred, AIA will continue to accrue the interest on the interest payments not made.

AIA will agree to work with you to restructure your payments so your redemption payments are converted to other income so you can set up a SEP or Defined Benefit plan. When you become a consultant, we can add you to the current AIA health plan. You will have the option to convert some of your Preferred A Stock to CropUSA on the same rate as offered to the C stock

It will take a few months to set this all up. We will work with your Accountant or will introduce you to CPA's here or in Spokane who can set up the right tax plan.

Your preferred A stock has the highest priority, above the payments to Reed, the Preferred C, and the common stock.. Reed and John will guarantee the deferred payments.

Sincerely,

Reed J. Taylor                        R. John Taylor

Accepted  Donna J. Taylor

## Exhibit - D

2 SER 462

State of __Idaho__ )
                              S.S.
County of __Nez Perce__ )

On this __27th__ day of __February__ , in the year of 20 __01__ , before me

__Diane Whisner__ , a notary public, personally appeared

__Reed J. Taylor, R. John Taylor, Donna J. Taylor,__

personally known to me to be the persons whose names are subscribed to the within

instrument, and acknowledged to me that they executed the same.

_____
Notary Public
My Commission Expires on __10-4-2001__

**2 SER 463**

**2 SER 464** (top-right)

MINUTES OF THE BOARD OF DIRECTORS
Crop USA Insurance Agency, Inc.

The annual meeting was called to order on January 10, 2001, by Chairman, R. John Taylor. Others in attendance were JoLee Duclos and Paul Schrette. The minutes of the prior meeting were reviewed and approved without comment.

The Directors reviewed the business model and written business plan of the Company and authorized the President and Chairman to finalize negotiations with Great American to begin operations. Great American has been selected as the insurer through which Crop USA will market its business.

The Directors discussed the necessity for additional funding to operate the corporation. AIA Services Corporation has declined to continue to operate the company as a subsidiary of AIA and wants the Company to be independent. As part of the negotiations with AIA, the Directors believe it would be in the best interest of the company that Crop USA offer to purchase the Series C Preferred stock currently outstanding of AIA as set forth in a Master Marketing Agreement with AIA. The Directors authorized the officers to continue negotiations on Crop USA's purchase of AIA Services Corporation's outstanding Series C Preferred stock.

It was moved, seconded and unanimously passed that Crop USA enter into and its executive officers be authorized to execute the following agreements on behalf of the corporation:

1)    Crop Insurance Division Agency-Company Agreement with Great American Insurance Companies;
2)    Master Marketing Agreement with AIA Insurance, Inc. that provides Crop USA access to grower associations represented by AIA Insurance;
3)    Management Agreement in which AIA Insurance agrees to provide management and administrative support services to Crop USA;
4)    Management Agreement with Growers National Cooperative Insurance Agency, Inc. in which Crop USA agrees to provide management and administrative support services to Growers National, with the assistance of AIA Insurance; and
5)    Agency and Development Agreement with Growers National Cooperative that provides for the appointment of the cooperative as a sub-agent of Crop USA.

The Board authorized, subject to shareholder agreement, amendment of Crop USA's Articles of Incorporation to increase the authorized common stock from one million shares to twenty million shares.

**Exhibit - C**

CROP000069

**2 SER 464**

The following nominees for officers were unanimously elected:

President /CEO                      Paul D. Schrette
Vice President                      Bryan Freeman
Vice President                      Jay Taylor
Vice President/Secretary            JoLee K. Duclos
Treasurer                           R. John Taylor

The board reviewed a proposal to retain the law firm of Hawley, Troxell, Ennis & Hawley LLP of Boise, Idaho, as its advisor and SEC counsel. The motion was so made, second and approved. A copy of said agreement is attached hereto and incorporated herein by reference.

There being no further business, the meeting was adjourned.

_____
Secretary

CROP000070

**2 SER 465**

## MINUTES OF THE FIRST MEETING OF DIRECTORS

AIA Crop Insurance, Inc.

The first meeting of the Board of Directors was held at the Lewis Clark Plaza, 111 Main Street, Lewiston, Idaho, on January 11, 2000. Of the elected Directors of the corporation, the following were present:

R. John Taylor
Paul D. Schrette
JoLee K. Duclos

No Directors were absent.

The Directors unanimously elected R. John Taylor to preside as Chairman of the meeting and JoLee K. Duclos as Secretary of the meeting.

Mr. Taylor presented and read the company's Articles of Incorporation and reported that to incorporate this company the same had been filed with and accepted by the appropriate officers of the State of Idaho in the manner required by the laws of Idaho. The Articles of Incorporation were accepted, and a copy thereof was ordered to be filed in the company's Minute Book.

Mr. Taylor presented and read proposed Bylaws for the regulation and management of the affairs of the company. They were read article by article and adopted as the Bylaws of this company. An executed copy thereof was ordered to be filed in the company's minute book.

The following individuals were nominated and unanimously elected to hold office in accordance with the provisions of the Articles of Incorporation, the Bylaws, and the policies and procedures of this company:

| Name | Office |
| --- | --- |
| Paul D. Schrette | President |
| Jay R. Taylor | Vice President |
| JoLee K. Duclos | Vice President/Secretary |
| R. John Taylor | Treasurer |

The Secretary of the meeting stated that a company undertaking business operations is often required to file certain documents or be licensed under certain laws and regulations, specifically including applicable insurance laws. She requested that the President, with the advice and assistance of legal counsel, determine the filing and licensing requirements to comply with all the laws which apply to this company's operations. Upon motion duly made, seconded and unanimously carried, it was:

CROP000066

**Exhibit - B**

RESOLVED: That the President or Secretary, with the advice and assistance of legal counsel, is hereby authorized and directed to determine what actions this company is required to take under any federal, state, or local laws, ordinances, rules, or regulations which regulate or apply to the operations of this company and to take any action found necessary for this purpose.

FURTHER RESOLVED: That the President and Secretary are hereby authorized to execute and deliver such documents and take such action as may be necessary or proper for that purpose, including the appointment of a resident agent and designation of a registered office in the states in which the company chooses to do business, and otherwise take any other action that may be required by the laws of such state. The Secretary is hereby authorized to attest to any such documents executed hereunder.

Upon motion duly made, seconded and unanimously carried, it was:

RESOLVED: That the Treasurer is hereby authorized to pay all expenses and fees necessary or incidental to the organization of this company.

Upon recommendation of the chair, and motion duly made, seconded and unanimously carried, it was

RESOLVED: That the funds of this company shall be deposited in:

U.S. Bank of Clarkston, Washington

FURTHER RESOLVED: That any two of the following officers of this corporation, namely, Paul D. Schrette, President; JoLee K. Duclos, Vice President/Secretary; and R. John Taylor, Treasurer; or his/her successor in office; or any other person specifically appointed for the following purposes, be and are hereby authorized for, on behalf of, and in the name of AIA Crop Insurance, Inc. to:

a) Negotiate and procure loans from a commercial lending institution, in an unlimited amount;

b) Discount with said lending institution, commercial or other business paper belonging to this Corporation, made or drawn by or upon third parties, without limit as to amount;

c) Give security for any liabilities of this Corporation to said lending institution by pledge, assignment, or lien upon any real or personal property, tangible or intangible, of this Corporation;

d) Execute in such form as may be required by the lending institution all notes and other evidences of such loans; repurchase agreements; and all instruments of pledge, assignment or lien, and that none of the same shall be valid unless so signed or endorsed; provided, the endorsement of promissory notes discounted may be effected by any one of them; and

CROP000067

e)    Execute in such form as may be required any standard banking resolution required by such lending institution; provided, a certified copy of this resolution shall also be submitted.

RESOLVED FURTHER, that said lending institution be and it is hereby authorized and directed to pay the proceeds of any such loans or discounts as directed by the persons so authorized to sign, whether so payable to the order of any of said persons in their individual capacities or not, and whether such proceeds are deposited in the individual credit of any said persons or not;

RESOLVED FURTHER, that checks, drafts, notes, and acceptances of this company shall be honored by such bank only when signed on its behalf by two of said officers;

RESOLVED FURTHER, that this resolution shall continue in force, and said lending institution may consider the holders of said offices and their signatures, respectively, to be and continue as set forth in the certificate of the Secretary of this corporation accompanying a copy of this resolution when delivered to said lending institution or in any similar subsequent certificate, until notice to the contrary in writing is duly served on said lending institution.

RESOLVED FURTHER, the Officers of AIA Crop Insurance, Inc. are authorized to sign pre-printed bank resolutions for signature cards, custodian agreements, etc. and to sign any state required admission and reporting documents, all in the normal course of business, and to incorporate by reference the specific language required by each institution.

BE IT FURTHER RESOLVED, the corporate secretary shall be authorized to sign all certificates and affix the corporate seal as necessary to accomplish the responsibilities authorized above.

There being no further business, it was unanimously voted to adjourn.

_____
Secretary - JoLee K. Duclos

CROP000068

**2 SER 469**

## MINUTES OF THE FIRST MEETING OF SHAREHOLDERS

### AIA Crop Insurance, Inc.

The first meeting of the incorporator and the subscribers of the company's capital stock was held at the Lewis-Clark Plaza, 111 Main Street, Lewiston, Idaho, on January 11, 2000.

R. John Taylor, incorporator, was present. Also present were Paul Schrette and JoLee Duclos.

R. John Taylor represents 1,000 shares of the stock of the corporation. There are no other shareholders.

The Articles of Incorporation were read and discussed. It was determined that the Articles of Incorporation be inserted into the corporate record book and become a permanent part of the records of the corporation.

The proposed Bylaws were read and discussed. The Bylaws were inserted into the corporate record book to become a permanent part of the records of the corporation.

The following were duly elected as directors to serve until the next annual meeting:

R. John Taylor
Paul D. Schrette
JoLee K. Duclos

There being no further business, the meeting was adjourned.

R. John Taylor

## Exhibit - A

CROP000060

VERIFICATION

STATE OF IDAHO          )
                        ) ss.
COUNTY OF NEZ PERCE     )

I, Donna J. Taylor, being first duly sworn on oath, deposes and says:

I am the plaintiff in the above-entitled action. I have read the contents of this First Amended Complaint, know the contents of this First Amended Complaint, and have knowledge that the facts alleged herein are true, except those facts that have been alleged upon information and belief, and as to those matters I believe them to be true.

_____
Donna J. Taylor

SUBSCRIBED AND SWORN to before me this _18th_ day of November, 2010.

_____
Notary Public for Idaho
Residing at: _Lewiston_
My commission expires: _6/11/2014_

**2 SER 470**